| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10095 | Petta v. ABC Ins. Co., 2005 WI 18 | 366+1 | It has long been recognized that subrogation rests upon principles of equity. Equity generally grants that "one (other than a volunteer) who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he [or she] has paid, and be subject to the defenses of the wrongdoer." Ruckel, 253 Wis.2d 280, 14, 646 N.W.2d 11. However, the purpose of subrogation is to prevent an injured party from being unjustly enriched by obtaining double payment. Garrity v. Rural Mut. Ins. Co., 77 Wis.2d 537, 541, 253 N.W.2d 512 (1977). Thus, subrogation ordinarily does not arise until the underlying debt or loss has been fully paid. Ruckel, 253 Wis.2d 280, 16, 646 N.W.2d 11; Rimes, 106 Wis.2d at 271, 316 N.W.2d 348; Garrity, 77 Wis.2d at 541, 253 N.W.2d 512. This "antisubrogation rule" is commonly known as the Rimes made-whole doctrine. See Ruckel, 253 Wis.2d 280, 16, 646 N.W.2d.11. | The purpose of subrogation is to prevent an injured party from being unjustly enriched by obtaining double payment. | Is the purpose of subrogation to prevent an injured party from being unjustly enriched by obtaining double payment? | Subrogation - Memo # 606 - C - SA.docx | ROSS-003287171-ROSS-003287172 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10096 | Ohio Cas. Ins. Co. v. Harbor Ins. Co., 259 Cal. App. 2d 207 | 217+2923 | Although a coinsurer may be required to share in the costs of defense (Continental Cas. Co. v. Zurich Ins. Co., 57 Cal.2d 27, 37, 17 Cal.Rptr. 12, 366 P.2d 455; Meritplan Ins. Co. v. Universal Underwriters Ins. Co., 247 Cal.App.2d 451, 464"465, 55 Cal.Rptr. 561), the doctrine of equitable subrogation on which such obligation is based does not apply unless both insurers cover the same risk. (Utica Mut. Ins. Co. v. Monarch Ins. Co. of Ohio, 250 Cal.App.2d "-, 58 Cal.Rptr. 639.) We have concluded that Harbor and Ohio are Nor coinsurers since each indemnifies distinctly separate insurable interests. No obligation to share expenditures for defense can arise merely by virtue of their position as insurers. | Although a coinsurer may be required to share in the costs of defense, the doctrine of equitable subrogation on which such obligation is based does not apply unless both insurers cover the same risk. | When does equitable subrogation not apply? | Subrogation - Memo # 618 - C - SU.docx | ROSS-003323540-ROSS-003323541 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 10097 | Kenney v. United States, 458 F.3d 1025 | 366+1 | It is apparent that there are two methods of calculation that arrive at the same result. Under one method of calculation, Kenney's payments of $166,826 are deducted from the net proceeds of $307,244 for a balance of $140,418. Donna's half of those proceeds would be $70,209, to which the Government is entitled. The other method is the one used by the district court in the instant case. The total net proceeds of $307,244 are divided, leaving Donna with her share of $153,622. From that is deducted one-half the payments made by Kenney ($83,413). This deduction leaves an identical final balance of $70,209 to which the Government is entitled. It is obvious that the full $166,826 Kenney paid should not be deducted from Donna's share because one-half of that amount is applicable to his share. It is equally obvious that it is inequitable to deduct only half of the payments, $83,413, from the total net proceeds before dividing them, as the Government contends, because this would leave Kenney recovering only one-half of the payments he made for Donna. Equitable subrogation "is not a fixed and inflexible rule" and its development is "the natural consequence of a call for the application of justice and equity to particular situations." In re Johnson's Estate, 240 Cal.App.2d 742, 50 Cal.Rptr. 147, 149 (1966) (internal quotation omitted). | Equitable subrogation is not a fixed and inflexible rule of California law, and its development is the natural consequence of a call for the application of justice and equity to particular situations. | Is equitable subrogation a fixed and inflexible rule of law? | Subrogation - Memo # 656 - C - SA.docx | ROSS-003315318-ROSS-003315319 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 10098 | Cont'l Cas. Co. v. Ryan Inc. E., 974 | 366+7(1) | The Second District premised its award of attorney's fees on equitable subrogation, which is a remedy commonly associated with surety relationships. As we explained in Transamerica Insurance Co. v. Barnett Bank of Marion County, 540 So.2d 113, 116 (Fla.1989) (quoting Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)), a surety "who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." In the context of a surety relationship, the key to equitable subrogation lies in the surety's right to indemnification. Because a surety who pays a judgment on behalf of its principal is entitled to indemnification by its principal, it has the right to be subrogated to any rights the principal has against its liability insurer if that judgment is covered by the principal's liability policy. See Western World, 358 So.2d at 604. | A surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed. | "Under the doctrine of ""equitable subrogation,"" is a surety who pays the debt of another entitled to all the rights of the person he paid to enforce his right to be reimbursed?" | Subrogation - Memo # 659 - C - NO.docx | ROSS-003287201-ROSS-003287202 | Condensed | 0.86 | 0 | 1 | 0 | 0 | |
| 10099 | Progressive Elec. Servs. v. Task Force Const., 327 Ga. App. 608 | 309+185 | TFC also asserts that it had a legal obligation to GAIC under OCGA " 10"7"56, which provides that "[a] surety who has paid the debt of his principal shall be subrogated, both at law and in equity, to all the rights of the creditor and, in a controversy with other creditors, shall rank in dignity the same as the creditor whose claim he paid." But TFC fails to explain how that statute creates an obligation between a principal and surety. See Fabian v. Dykes, 214 Ga.App. 792, 794, 449 S.E.2d 305 (1994) (on motion for reconsideration)("subrogation by which a guarantor takes rights of the creditor [under OCGA " 10"7"56] is not the same thing as a guarantor's right to recoup payment of a debt from his principal"), overruled in part on other grounds, Continental Ins. Co. v. State Farm Mut. Ins. Co., 212 Ga.App. 839, 841"842(1), 443 S.E.2d 509 (1994). Accordingly, we fail to see how OCGA " 10"7"56 imposes a legal requirement for TFC to pay GAIC. | Statute subrogating surety who has paid debt of his principal to rights of the creditor does not impose obligation on principal to indemnify surety for amounts paid creditor. West's Ga.Code Ann. S 10-7-56. | Does a statute subrogating a surety who has paid the debt of his principal to the rights of the creditor impose obligation on principal to indemnify the surety for amounts paid to the creditor? | 044041.docx | LEGALEASE-00121671-LEGALEASE-00121672 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10100 | In re Doctors Hosp. of Hyde Park, 474 F.3d 421 | 366+7(1) | LaSalle takes issue with several of the bankruptcy court's conclusions. First, LaSalle argues that Desnick's forfeiture of his claim for the Daiwa loan is worthless. LaSalle insists that when Desnick paid the Daiwa loan, the loan was extinguished and Desnick obtained no subrogation rights. LaSalle cites no law to support this argument, and the position is not defensible. When a guarantor pays a debt, he is subrogated to the rights of a creditor against the corporation on whose behalf he paid the debt. Weissman v. Weener, 12 F.3d 84, 87 (7th Cir.1993); Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi., 877 F.2d 1333, 1336 (7th Cir.1989); see also Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank, 265 F.3d 601, 626 (7th Cir.2001) ("[S]ubrogation can arise simply from the fact of payment."). LaSalle suggests that any subrogation claim would be subject to equitable subordination based on Desnick's conduct, but it does not develop the argument. In any event, the point is immaterial because the bankruptcy court did not assume the value of the released claim to be worth $9 million to the estate. Rather, the court assumed that, if nothing else, the released claim saved the estate the expense of litigating to determine whether the claim was valid. That is not error. | When a guarantor pays a debt, he is subrogated to the rights of a creditor against the corporation on whose behalf he paid the debt. | "When a guarantor pays a debt, is he subrogated to the rights of a creditor against the corporation on whose behalf he paid the debt?" | Subrogation - Memo # 719 - C - NO.docx | ROSS-003300924-ROSS-003300926 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 10101 | Dimeo v. Gesik, 195 Or. App. 362 | 366+1 | Two further points support our conclusion that the bank had an objectively reasonable basis for its claim. First, because the doctrine of equitable subrogation is "founded on principles of equity and benevolence," McBride v. McBride, 148 Or. 478, 483, 36 P.2d 175 (1934), it necessarily is a flexible concept. For that reason, it is a rare case in which a party that has even some evidence to support the claim can be said to have no "objectively reasonable basis" for doing so. Second, in evaluating whether a party has an objectively reasonable basis for asserting a claim, the temporal focus should be on the time that the claim is asserted. In this case, the evidence included the conversations between the bank's branch manager and the escrow agent. That the evidence at trial turns out to be weaker"in this case weak enough that the trier of fact rejected the claim"is not properly part of the inquiry. | Because the doctrine of equitable subrogation is founded on principles of equity and benevolence, it necessarily is a flexible concept. | "Because the doctrine of equitable subrogation is founded on principles of equity and benevolence, is it necessarily a flexible concept?" | Subrogation - Memo # 885 - ES.docx | ROSS-003297548-ROSS-003297549 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 10102 | In re Vertis Holdings, 536 B.R. 589 | 386+6 | Defendants are correct in stating that generally, under New Jersey law, a cognizable claim for trespass exists "when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it." Defendants are also correct in asserting that Plaintiff failed to plead that is has been deprived of tangible property. | Generally, under New Jersey law, a cognizable claim for trespass exists when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it. | At what instance can a cognizable claim for trespass exist? | Trespass - Memo 127 - AKA.docx | ROSS-003314336-ROSS-003314337 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 10103 | In re Mintze, 434 F.3d 222 | 25T+121 | The FAA's mandate can, however, be overridden. If a party opposing arbitration can demonstrate that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue," the FAA will not compel courts to enforce an otherwise applicable arbitration agreement. McMahon, 482 U.S. at 227, 107 S.Ct. 2332.To overcome enforcement of arbitration, a party must establish congressional intent to create an exception to the FAA's mandate with respect to the party's statutory claims. Congressional intent can be discerned in one of three ways: (1) the statute's text, (2) the statute's legislative history, or (3) "an inherent conflict between arbitration and the statute's underlying purposes." McMahon, 482 U.S. at 227, 107 S.Ct. 2332 (citing Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 628, 632"37, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). | Congressional intent to preclude waiver of judicial remedies for particular statutory rights, as required for the Federal Arbitration Act (FAA) to not compel courts to enforce an otherwise applicable arbitration agreement, may be discerned in one of three ways: (1) the statute's text, (2) the statute's legislative history, or (3) an inherent conflict between arbitration and the statute's underlying purposes. 9 U.S.C.A. S 1 et seq. | How do courts determine whether there was congressional intent to create an exception to the FAAs mandate with respect to a party's statutory claims? | 007076.docx | LEGALEASE-00122420-LEGALEASE-00122421 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 10104 | Baker v. Goldsmith, 582 S.W.2d 404 | 228+335(1) | A bill of review is an independent equitable action brought by a party to a former action seeking to set aside a judgment, which is no longer appealable or subject to motion for new trial. See McEwen v. Harrison, 162 Tex. 125, 131-32, 345 S.W.2d 706, 709-10 (1961); Comment, Setting Aside Judgments Against the Absent Defendant, 37 Texas L.Rev. 208, 221 (1958). Rule 329b(b) of the Texas Rules of Civil Procedure provides that: "After the expiration of thirty (30) days from the date the judgment is rendered or motion for new trial overruled, the judgment cannot be set aside except by bill of review for Sufficient cause, filed within the time allowed by law." Tex.R.Civ.P. 329b(5) (emphasis added). The rules do not define "sufficient cause," but Texas courts have enunciated several requirements that must be satisfied. In Alexander v. Hagedorn, 148 Tex. 565, 568, 226 S.W.2d 996, 998 (1950), this court stated that in order to be successful upon a bill of review the complainant must "allege and prove: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of his own." Accord, Texas Machinery & Equipment Co. v. Gordon Knox Oil & Exploration Co., 442 S.W.2d 315, 317-18 (Tex.1969); Gracey v. West, 422 S.W.2d 913, 915 (Tex.1968). The second requirement of Hagedorn, however, has been qualified in later cases. To the extent there is reliance on the erroneous official information given by an official court functionary preventing the filing of a motion for new trial, the bill of review plaintiff is excused from showing the wrongful conduct, fraud or accident of the opposite party. Gracey v. West, 422 S.W.2d 913, 915-16 (Tex.1968) (citing Hanks v. Rosser, 378 S.W.2d 31, 34 (1964)). | A bill of review is an independent equitable action brought by a party to a former action seeking to set aside a judgment, which is no longer appealable or subject to motion for new trial. Rules of Civil Procedure, rule 329b, subd. 5. | What is bill of review? | Appeal And Error - Memo 25 - BP.docx | ROSS-003310496-ROSS-003310497 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10105 | Almota Farmers Elevator & Warehouse Co. v. United States, 409 U.S. 470 | 148+122 | The Fifth Amendment provides that private property shall not be taken for public use without "just compensation." "And "just compensation" means the full monetary equivalent of the property taken. The owner is to be put in the same position monetarily as he would have occupied if his property had not been taken.' United States v. Reynolds, 397 U.S. 14, 16, 90 S.Ct. 803, 805, 25 L.Ed.2d 12 (footnotes omitted). See also United States v. Miller, 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336. To determine such monetary equivalence, the Court early established the concept of "market value": the owner is entitled to the fair market value of his property at the time of the taking. New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 26, 60 L.Ed. 143. See also United States v. Reynolds, supra, 397 U.S., at 16, 90 S.Ct., at 805; United States v. Miller, supra, 317 U.S., at 374, 63 S.Ct., at 280. And this value is normally to be ascertained from "what a willing buyer would pay in cash to a willing seller." Ibid. See United States v. Virginia Electric & Power Co., 365 U.S. 624, 633, 81 S.Ct. 784, 790, 5 L.Ed.2d 838. | "Just compensation," within meaning of constitutional provision that private property shall not be taken for public use without just compensation, means the full monetary equivalent of the property taken; the owner is to be put in the same position monetarily as he would have occupied if his property had not been taken. U.S.C.A.Const. Amend. 5. | Does the full monetary equivalent of the taken property constitute just compensation? | Eminent Domain - Memo 191 - GP.docx | ROSS-003298921-ROSS-003298922 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10106 | Mounts v. Evansville Redevelopment Comm'n, 831 N.E.2d 784 | 148+2.2 | Next, the property owners allege that the trial court erred in finding that the adoption of the Resolution, which placed certain properties on the ERC's acquisition list, did not constitute a compensible taking. We disagree. "[T]he process of declaring an area blighted and adding property to the acquisition list does not result in the taking of property. Rather, only after proceeding with these preliminary steps may the Commission begin the process of actually acquiring property by eminent domain." Reel Pipe & Valve Co., Inc., 633 N.E.2d at 279. The trial court's decision that placing the property owners' properties on their acquisition list did not constitute a compensible taking was not clearly erroneous. | The process of declaring an area blighted and adding property to an acquisition list does not result in the taking of property; rather, only after proceeding with these preliminary steps may a redevelopment commission begin the process of actually acquiring property by eminent domain. | Does the process of declaring an area blighted and adding property to the acquisition list result in the taking of property? | Eminent Domain - Memo 195 - GP.docx | ROSS-003283338-ROSS-003283339 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 10107 | Am. Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387 | 29T+22 | Under section 43(a), two categories of actionable statements exist: (1) literally false factual commercial claims; and (2) literally true or ambiguous factual claims "which implicitly convey a false impression, are misleading in context, or [are] likely to deceive consumers." United Indus., 140 F.3d at 1180. Besides actionable statements, a category of non-actionable statements exists. Id. Many statements fall into this category, popularly known as puffery. Id. Puffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority. Pizza Hut, 227 F.3d at 496-97; United Indus., 140 F.3d at 1180. | "Puffery," nonactionable as false advertising under Lanham Act, consists of exaggerated statements of bluster or boast upon which no reasonable consumer would rely, or vague or highly subjective claims of product superiority, including bald assertions of superiority. Lanham Trade-Mark Act, S 43(a), 15 U.S.C.A. S 1125(a). | What is puffery? | 021064.docx | LEGALEASE-00122221-LEGALEASE-00122222 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 10108 | Warberg Opportunistic Trading Fund L.P. v. GeoResources, 151 A.D.3d 465 | 278+10 | The elements of a novation are a previously valid obligation, agreement of the parties to the new obligation, extinguishment of the old contract, and a valid new contract (see Citigifts, Inc. v. Pechnik, 112 A.D.2d 832, 492 N.Y.S.2d 752 [1st Dept.1985], affd. 67 N.Y.2d 774, 500 N.Y.S.2d 643, 491 N.E.2d 1100 [1986]; Old Oak Realty v. Polimeni, 232 A.D.2d 536, 537, 648 N.Y.S.2d 665 [2d Dept.1996] ). "A novation will not discharge obligations created under a prior agreement unless it was so intended, and this question may be determined from the writings and conduct of the parties or, in certain cases, from the documents exclusively" (Water St. Dev. Corp. v. City of New York, 220 A.D.2d 289, 290, 632 N.Y.S.2d 544 [1st Dept.1995] [internal citations omitted], lv. denied 88 N.Y.2d 809, 647 N.Y.S.2d 714, 670 N.E.2d 1346 [1996]; Blair & Co. v. Otto, 5 A.D.2d 276, 280, 171 N.Y.S.2d 203 [1st Dept.1958] ). The party claiming a novation has the burden of proof of establishing that it was the intent of the parties to effect a novation (see Ventricelli v. DeGennaro, 221 A.D.2d 231, 232, 633 N.Y.S.2d 315 [1st Dept.1995], lv. denied 87 N.Y.2d 808, 641 N.Y.S.2d 829, 664 N.E.2d 895 [1996] ). | A novation will not discharge obligations created under a prior agreement unless it was so intended; this question may be determined from the writings and conduct of the parties or, in certain cases, from the documents exclusively. | "Is novation unlikely to be found upon the mere issuance of a new security, without any affirmative indication that the parties were changing the terms underlying the warrant being transferred?" | 021766.docx | LEGALEASE-00122391-LEGALEASE-00122392 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10109 | State ex rel. L.M., 57 So. 3d 518 | 307A+3 | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. Heller v. Nobel Insurance Group, 2000"0261 (La.2/2/00), 753 So.2d 841; Taylor v. Dowling Gosslee & Associates, Inc., 44,654 (La.App.2d Cir.10/7/09), 22 So.3d 246, writ denied, 2009"2420 (La.2/5/10), 27 So.3d 299. This great discretion extends to the trial court's assessment of the probative value of evidence. Taylor, supra; Green v. Claiborne Elec. Co-op., Inc., 28,408 (La.App.2d Cir.6/26/96), 677 So.2d 635. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or waste of time. LSA"C.E. art. 403. | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. | Does a motion in limine present an evidentiary matter that is subject to the great discretion of the trial court? | 024033.docx | LEGALEASE-00121952-LEGALEASE-00121953 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 10110 | Guski v. Raja, 409 Ill. App. 3d 686 | 307A+3 | A court's evidentiary rulings are unreviewable on appeal if they have not been properly preserved. Thornton v. Garcini, 237 Ill.2d 100, 106, 340 Ill.Dec. 557, 928 N.E.2d 804 (2009). When the court makes its rulings before trial pursuant to the parties' motions in limine, the rulings are interlocutory and remain subject to reconsideration by the court throughout the trial. Cetera v. DiFilippo, 404 Ill.App.3d 20, 40, 343 Ill.Dec. 182, 934 N.E.2d 506 (2010).Consequently, denial of the complaining party's pretrial motion to exclude evidence is not sufficient to preserve the issue for appeal. Simmons v. Garces, 198 Ill.2d 541, 569, 261 Ill.Dec. 471, 763 N.E.2d 720 (2002); Cetera, 404 Ill.App.3d at 40, 343 Ill.Dec. 182, 934 N.E.2d 506. The complaining party must also make a contemporaneous objection at trial when the evidence is introduced to allow the court the opportunity to revisit its earlier ruling. Simmons, 198 Ill.2d at 569, 261 Ill.Dec. 471, 763 N.E.2d 720. Failure to object at trial results in forfeiture of the issue on appeal. Simmons, 198 Ill.2d at 569, 261 Ill.Dec. 471, 763 N.E.2d 720; Cetera, 404 Ill.App.3d at 40, 343 Ill.Dec. 182, 934 N.E.2d 506. | When trial court makes its evidentiary rulings before trial pursuant to the parties' motions in limine, the rulings are interlocutory and remain subject to reconsideration by the court throughout the trial. | Are rulings on motions in limine considered interlocutory in nature subject to reconsideration at trial? | 028064.docx | LEGALEASE-00122094-LEGALEASE-00122095 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10111 | Citibank, N.A. v. McGladrey & Pullen, LLP, 2011 IL App (1st) 102427 | 307A+3 | Evidentiary motions, such as motions in limine, are within the trial court's discretion and are reviewed under an abuse of discretion standard. Petraski v. Thedos, 382 Ill.App.3d 22, 26, 320 Ill.Dec. 244, 887 N.E.2d 24 (2008). The trial court abuses its discretion when the ruling is arbitrary or unreasonable or no reasonable person would agree with the position taken by the court. Petraski, 382 Ill.App.3d at 26"27, 320 Ill.Dec. 244, 887 N.E.2d 24. The decision of whether to admit expert testimony is also subject to an abuse of discretion standard. Petraski, 382 Ill.App.3d at 27, 320 Ill.Dec. 244, 887 N.E.2d 24. | Evidentiary motions, such as motions in limine, are within the trial court's discretion and are reviewed under an abuse of discretion standard; the trial court abuses its discretion when the ruling is arbitrary or unreasonable or no reasonable person would agree with the position taken by the court. | "Are evidentiary motions, such as motions in limine, within the trial court's discretion and are reviewed under an abuse of discretion standard?" | Pretrial Procedure - Memo # 266 - C - MLS.docx | ROSS-003285212-ROSS-003285213 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 10112 | Babikian v. Mruz, 2011 IL App (1st) 102579 | 30+242(4) | A court's evidentiary rulings may not be challenged on appeal if they have not been properly preserved. See generally Thornton v. Garcini, 237 Ill.2d 100, 106, 340 Ill.Dec. 557, 928 N.E.2d 804 (2009). Rulings on motions in limine are interlocutory and remain subject to reconsideration by the court throughout the trial. Cetera v. Di Filippo, 404 Ill.App.3d 20, 40, 343 Ill.Dec. 182, 934 N.E.2d 506 (2010). Consequently, an adverse ruling on pretrial motion to exclude evidence is not sufficient to preserve the issue for appeal. Simmons v. Garces, 198 Ill.2d 541, 569, 261 Ill.Dec. 471, 763 N.E.2d 720 (2002); Cetera, 404 Ill.App.3d at 40, 343 Ill.Dec. 182, 934 N.E.2d 506. The moving party must also make a contemporaneous objection at trial when the evidence is introduced in order to allow the court the opportunity to revisit its earlier ruling. Simmons, 198 Ill.2d at 569, 261 Ill.Dec. 471, 763 N.E.2d 720. Failure to object at trial results in forfeiture of the issue on appeal. Simmons, 198 Ill.2d at 569, 261 Ill.Dec. 471, 763 N.E.2d 720; Cetera, 404 Ill.App.3d at 40, 343 Ill.Dec. 182, 934 N.E.2d 506. Also, the failure to object to allegedly improper comments during closing argument operates as a forfeiture of the objection. Velarde v. Illinois Central R.R. Co., 354 Ill.App.3d 523, 543"44, 289 Ill.Dec. 529, 820 N.E.2d 37 (2004). | Rulings on motions in limine are interlocutory and remain subject to reconsideration by the court throughout the trial, and consequently, an adverse ruling on pretrial motion to exclude evidence is not sufficient to preserve the issue for appeal. | Are rulings on motions in limine interlocutory and therefore remain subject to reconsideration by the court throughout the trial? | Pretrial Procedure - Memo # 439 - C - TJ.docx | ROSS-003302472-ROSS-003302474 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10113 | Romanek-Golub & Co. v. Anvan Hotel Corp., 168 Ill. App. 3d 1031 | 307A+3 | A motion in limine merely presents an issue of admissibility of evidence which is likely to arise at trial, in a pretrial setting. As such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial. (Beasley v. Huffman Mfg. Co. (1981), 97 Ill.App.3d 1, 5, 52 Ill.Dec. 560, 422 N.E.2d 241.) "When a motion in limine is made, the trial judge must exercise his discretion in granting the motion or in denying it, thereby leaving to the unsuccessful movant the procedure of specially objecting to the evidence when it is offered at trial." People v. McClain (1978), 60 Ill.App.3d 320, 324, 17 Ill.Dec. 628, 376 N.E.2d 774, citing Department of Public Works & Buildings v. Roehrig (1976), 45 Ill.App.3d 189, 195, 359 N.E.2d 752. | Motion in limine, like any other interlocutory order, remains subject to reconsideration by court throughout trial. | Are rulings on motions in limine interlocutory and therefore remain subject to reconsideration by the court throughout the trial? | 030850.docx | LEGALEASE-00122178-LEGALEASE-00122180 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 10114 | Rush v. Wallace, 23 Ark. App. 61 | 307A+16 | The trial court has a wide latitude of discretion in matters pertaining to discovery, and the appellate court will not reverse the chancellor's exercise of discretion in the absence of an abuse of discretion that is prejudicial to the appealing party. Marrow v. State Farm Insurance Co., 264 Ark. 227, 570 S.W.2d 607 (1978). The goal of all discovery is to permit a litigant to obtain whatever information he may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. Marrow, supra. Furthermore, the trial court has a duty in lengthy and complex cases where the possibility of abuse is present to protect parties and witnesses from annoyance, excessive expense, and harassment. Dolgow v. Anderson, 53 F.R.D. 661 (E.D.N.Y.1971); Balistrieri v. Holtzman, 52 F.R.D. 23 (E.D.Wis.1971). | Goal of all discovery is to permit litigant to obtain whatever information he may need to prepare adequately for issues that may develop without imposing onerous burden on his adversary; furthermore, trial court has duty in lengthy and complex cases where possibility of abuse is present to protect parties and witnesses from annoyance, excessive expense, and harassment. | What is the goal of discovery? | Pretrial Procedure - Memo # 472 - C - SB.docx | ROSS-003288558-ROSS-003288559 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 10115 | Halpin v. Frankenberger, 231 Kan. 344 | 366+7(1) | A surety, on paying the debt of the principal, is entitled to be subrogated to the rights of the creditor in all or any of the securities, means or remedies which the creditor has for enforcing payment against his principal. The creditor is entitled to full payment of his debt before subrogation can be invoked." p. 767, 241 P. 259. | Surety or guarantor, on paying debt of principal, is entitled to be subrogated to rights of creditor in all or any of securities, means or remedies which creditor has for enforcing payment against principal debtor or against other sureties or guarantors. | Is a surety who pays a creditor of the principal subrogated to all of the rights that creditor has to collect the debt from the principal? | 044148.docx | LEGALEASE-00121799-LEGALEASE-00121800 | Condensed, SA | 0.24 | 0 | 1 | 0 | 1 | |
| 10116 | White v. Household Fin. Corp., 158 Ind. App. 394 | 366+7(1) | Household Finance Corporation contends that the signature of Mr. White on the title to the 1968 Dodge Charger was a consent to release of the insurance proceeds. At common law and under I.C.1971, 26-1-3-606(1), supra, consent to the release of collateral operates as a waiver of a right to discharge. The consent may be given in advance by a consent to release of collateral provision in the instrument5 or it may be given after the release of collateral. However, there was no advance consent to release of collateral provision in the promisory note signed by the Whites and Rickey Butzin. Also, there was no subsequent consent to release of collateral by the Whites. We cannot agree that the signature of Mr. White on the title to the 1968 Charger was an implied release of the insurance proceeds. As accommodation makers, the Whites are entitled to a right of subrogation to any rights in the collateral that the creditor obtains from the principal debtor. | Accommodation makers are entitled to right of subrogation to any rights in collateral that creditor obtains from principal debtor. IC 1971, 26-1-3-606, Burns' Ind.St.Ann. S 19-3-606. | Are accommodation makers entitled to a right of subrogation to any rights in collateral that a creditor obtains from a principal debtor? | Subrogation - Memo # 904 - C - VA.docx | ROSS-003316066-ROSS-003316067 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 10117 | In re QC Piping Installations, 225 B.R. 553 | 366+7(1) | Pittsburgh"Westmoreland Coal Co. v. Kerr, 220 N.Y. 137, 143, 115 N.E. 465, 467 (N.Y.1917) (quoting Pease v. Egan, 131 N.Y. 262, 272, 30 N.E. 102, 104 (1892)).The doctrine has been repeatedly applied in cases involving sureties on construction contracts, and it is now irrefutable that a surety, after satisfying its obligations under either a payment or performance bond, is subrogated to the rights of the party he paid. In re John's Insulation, Inc., 221 B.R. 683 (Bankr.E.D.N.Y.1998) (Feller, B.J.). | Under New York law, surety that satisfies its obligations under payment or performance bond is subrogated to rights of party that he paid. | Is a surety that satisfies its obligations under payment or performance bond subrogated to rights of party that he paid? | Subrogation - Memo # 916 - C - CAR.docx | ROSS-003325212-ROSS-003325213 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10118 | Matter of Estates of Hibbard, 118 Wash. 2d 737 | 241+95(1) | The general rule in ordinary personal injury actions is that a cause of action accrues at the time the act or omission occurs. "In certain torts, .. injured parties do not, or cannot, know they have been injured; in [those] cases, a cause of action accrues at the time the plaintiff knew or should have known all of the essential elements of the cause of action." This is an exception to the general rule and is known as the "discovery rule."This court first adopted the discovery rule in Ruth v. Dight. That was a medical malpractice case in which a plaintiff, alleging that her doctor had negligently left a surgical sponge in her abdomen, brought an action against the doctor 23 years after he had performed surgery on her. During those 23 years, plaintiff had sought the help of various physicians who treated her for recurrent pain. However, the sponge was not discovered until she underwent exploratory surgery just a year before she filed suit. The court recognized the practical and policy considerations underlying statutes of limitations, observing that stale claims may be spurious and generally rely on untrustworthy evidence. The court further observed that society benefits when it can be assured that a time comes when one is freed from the threat of litigation. The court also recognized the remedial goal of the justice system, stating that "when an adult person has a justiciable grievance, [that person] usually knows it and the law affords [the person] ample opportunity to assert it in the courts", but that that goal is balanced by recognition that compelling one to answer a stale claim is in itself a substantial wrong. The court resolved these competing interests-where neither party is responsible for the delay in discovery of the asserted action-by tolling the statute of limitations and by preserving the remedy. Thus, this court has held that in medical malpractice cases asserting negligence in leaving foreign substances or articles in a surgical wound and which remain in the body after the | "Discovery rule," which states that cause of action accrues at time plaintiff knew or should have known of all essential elements of cause of action, applies in certain torts where injured parties do not or cannot know that they have been injured. | Does a cause of action accrue at the time the act or omission occurs? | 05178.docx | LEGALEASE-00084917-LEGALEASE-00084918 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 10119 | Fetzer v. Wood, 211 Ill. App. 3d 70 | 13+61 | In addition, we feel compelled to point out that too much reliance by defendants on the "discovery rule" is misplaced. First, statutes of limitations, like other statutes, must be viewed in light of their objectives. (Geneva Construction Co. v. Martin Transfer & Storage Co. (1954), 4 Ill.2d 273, 289, 122 N.E.2d 540.) The purpose of the statute of limitations is certainly not to shield a wrongdoer; rather, it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions. (Del Bianco, 73 Ill.App.3d at 746, 29 Ill.Dec. 563, 392 N.E.2d 120.) Second, the discovery rule concerns charging a plaintiff with knowledge of an injury and its wrongful cause for purposes of the running of a statute of limitations. Such is not at issue here. Rather, this case concerns if and when facts existed to support a cause of action for purposes of determining the applicability of the modified comparative negligence statute. Moreover, the discovery rule does not actually provide for new accrual rules; it instead tolls the running of the statute of limitations, until a plaintiff's "discovery," of an existing cause of action. | Discovery rule does not actually provide for new accrual rules and, instead, tolls the running of the statute of limitations until plaintiff's discovery of an existing cause of action. | Does discovery rule provide for new accrual rules? | Action - Memo # 146 - C CS.docx | ROSS-003284684-ROSS-003284685 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10120 | Dunlap v. Travelers Ins. Co., 223 S.C. 150 | 13+61 | "In actions brought for the payment of installments, as required by a contract, as each installment becomes due a new cause of action arises. The holdings of our Court in the Dunlap and Cannon cases are not to the contrary. The Court determined that under the terms of the policy, upon which a recovery had been had in the former actions, that if the permanent total disability of the plaintiff continued to exist, upon failure of defendant to make the installments when due, the plaintiff could sue for those installments and that the only defense to be interposed by the defendant was that the disability no longer continued and that an improvement in the condition of the plaintiff had come about removing the disability. However, the Court determined that the burden would then be upon the defendant to prove any improvement in the physical condition of the plaintiff that would show that the disability no longer existed. | In actions brought for payment of installments required by contract, as each installment becomes due, a new cause of action arises. | Does a new cause of action arise as each contractual installment becomes due in actions brought for payment of installments? | Action - Memo # 160 - C CS.docx | ROSS-003281739-ROSS-003281740 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10121 | Bonita Oil Co. v. Wrather, 461 S.W.2d 451 | 13+61 | The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued. Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716. | "Accrual" of a cause of action means the right to initiate and maintain a suit, and whenever one person may sue another the cause of action has accrued. | "Does ""Accrual"" mean the right to initiate and maintain a suit?" | Action - Memo # 176 - C CS.docx | ROSS-003299522-ROSS-003299524 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10122 | Last Chance Ranch Co. v. Erickson, 82 Utah 475 | 241+43 | However, should we be in error as to all this, we further are of the opinion that the action was barred. It is urged by the appellant, and it is conceded by the respondent, that the action was required to be commenced within four years after the cause of action accrued. "It is a rule of universal application," said this court in the case of Sweetser v. Fox, 43 Utah, 40, at page 48, 134 P. 599, 602, 47 L. R. A. (N. S.) 145, Ann. Cas. 1916C, 620, "that a cause or right of action arises the moment an action may be maintained to enforce it and that the statute of limitations is then set in motion." The same doctrine is stated in 17 R. C. L. 748, " 116. It also is well recognized that, where an agreement is absolute and unconditional, the general rule is that no demand for performance is necessary before action may be brought thereon. 13 C. J. 660, " 740. All that is conceded by the respondent. Accepting the testimony of the secretary of the plaintiff that several days before the deed was made on October 9, 1922, the defendant orally agreed to assign and transfer the shares of stock to plaintiff, that the assignment and transfer in effect were to be made contemporaneously with the execution of the deed-to be assigned and transferred "at once" as testified to by him- yet more than five years and three months elapsed before the action on January 11, 1928, was commenced. The oral agreement as testified to by him as far as it went was absolute and unconditional. No demand for performance was necessary before action could be brought thereon. Not anything is pleaded or testified to, to show that an action could not have been brought immediately, at least within a few days or a few weeks, after the execution of the deed and upon the failure of the defendant to assign and transfer the shares. The secretary of the plaintiff testified that, "I spoke to Mrs. Erickson a number of times about the transfer of this stock at Mr. Dunlap's request but she kept putting it off. Nothing was said | Cause or right of action arises the moment action may be maintained to enforce it, and statute of limitations is then set in motion. Comp.Laws 1917, SS 6445, 6467, 6474. | Does a cause or right of action arise the moment action may be maintained to enforce it? | Action - Memo # 181 - C CS.docx | ROSS-003298617-ROSS-003298619 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 10123 | Matter of Swift, 129 F.3d 792 | 241+95(1) | Again, this case is analyzed in terms of discovery of the injury. Discovery is relevant to the determination of when the statute of limitations begins to run, but it is not an element necessary for the cause of action to accrue for purposes beyond the statute of limitations. | Under Texas law, discovery is relevant to determination of when statute of limitations begins to run, but it is not element necessary for cause of action to accrue for purposes beyond statute of limitations. | Is discovery of an injury relevant to the determination of when a cause of action accrues? | Action - Memo # 26 - C - LK.docx | ROSS-003300569-ROSS-003300570 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 10124 | In re Cantu, 784 F.3d 253 | 13+61 | We now turn to the more difficult task in this case: applying the accrual approach. "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." In re Swift, 129 F.3d at 795 (quoting Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 721 (1946)); see also Apex Towing Co. v. Tolin, 41 S.W.3d 118 (Tex.2001) (explaining that a claim accrues "when facts have come into existence that authorize a claimant to seek a judicial remedy"). | Cause of action accrues when there is a right to institute and maintain suit; whenever one person may sue another, a cause of action has accrued. | Does a cause of action accrue only when one has the right to institute a suit? | Action - Memo # 42 - C - LK.docx | ROSS-003287526-ROSS-003287527 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 10125 | Williams v. Stewart, 137 N.M. 420 | 241+95(1) | The discovery rule provides that "the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." Id. at 255, 837 P.2d at 449. There has been no suggestion that Plaintiffs had actual knowledge of their claims more than three years before the complaint was filed. Instead, the parties dispute whether Plaintiffs "should have discovered" their claims at an earlier date. | The discovery rule provides that the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists. | Does a cause of action arise when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists? | Action - Memo # 44 - C - LK.docx | ROSS-003284689-ROSS-003284690 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 10126 | E.E.O.C. v. Woodmen of World Life Ins. Soc., 479 F.3d 561 | 25T+121 | We review de novo the district court's denial of Woodmen's motion to compel arbitration. Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc., 468 F.3d 523, 525 (8th Cir.2006). Under the Federal Arbitration Act (FAA), "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. "[T]he FAA's purpose [was] "to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." " Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (ellipses in original)). The federal policy manifested by the FAA "is at bottom a policy guaranteeing the enforcement of private contractual arrangements." Mitsubishi Motors v. Soler Chrysler"Plymouth, 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (internal marks omitted). Arbitration agreements encompassing federal statutory claims are enforceable as long as the potential litigant can effectively vindicate her statutory rights through arbitration. Green Tree, 531 U.S. at 90, 121 S.Ct. 513; see also Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir.2001) ("Title VII claims are subject to individual consensual agreements to arbitrate."). In the Civil Rights Act of 1991, Congress encouraged the use of alternative dispute resolution, including arbitration, "to resolve disputes arising under the Acts or provisions of Federal law amended by this title," including Title VII. See Civil Rights Act of 1991, Pub.L. No. 102"166, " 118, 105 Stat. 1071, 1081 (Congressional Note on the interpretation of Title VII contained within the 1991 | Arbitration agreements encompassing federal statutory claims are enforceable as long as the potential litigant can effectively vindicate her statutory rights through arbitration. | Are arbitration agreements encompassing federal statutory claims enforceable? | Alternative Dispute Resolution - Memo 401 - RK.docx | ROSS-003302936-ROSS-003302937 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10127 | Harrington v. Upchurch, 331 So. 2d 506 | 113+1 | We believe the trial judge correctly and adequately charged the jury as to custom. In the absence of a statute, custom is a rule of action having the force of law resulting from a long series of actions constantly repeated, which, by uninterrupted acquiescence, acquires its force by common consent. Lewis v. Success, 18 La.Ann. 1 (1966). Though custom may acquire the force of and become a part of the law of the land, Tyson v. Laidlaw, 18 La. 380 (1841), a statutory rule of law cannot be changed nor its applicability affected by any local custom. Robertson v. Western Marine & Fire Insurance Company, 19 La. 227 (1841); Devlin v. His Creditors, 2 La. 361 (1831). While custom does possess a niche in our Louisiana law of torts, its application is limited to consideration in determining whether sufficient care has been exercised in a particular case. Landry v. News-Star-World Publishing Corporation, 46 So.2d 140 (La.App.2d Cir. 1950); Tete, The Code, Custom and the Courts: Note Toward a Louisiana Theory of Precedent, 48 Tul.L.Rev. 1, page 15. The trial jduge accurately applied this rule. | In absence of statute, "custom" is a rule of action having force of law resulting from a long series of actions constantly repeated which, by uninterrupted acquiescence, acquires its force by common consent. | "In absence of a statute, what is custom defined as?" | 014264.docx | LEGALEASE-00123909-LEGALEASE-00123910 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10128 | Fry v. Guillote, 577 S.W.2d 346 | 113+12(1) | The only evidence presented of such a custom was that brought out by the appellant Richard Fry in his testimony. We do not believe this is sufficient to establish that this custom was so established and well known in the industry as to automatically become an implied part of any contract between a real estate broker and his agents. In order to establish a custom and usage that would be included in a contract without being expressed therein it is necessary to show that it is a custom generally known to the parties or that the parties contracted with reference thereto. Flagg Realtors, Inc. v. Harvel, 509 S.W.2d 885, 889 (Tex.Civ.App. Amarillo 1974, writ ref'd n. r. e.). We do not believe that appellant's testimony about there being such a well known custom is sufficient to support this contention. Appellee testified to the contrary that she did not become aware of this custom until after she had left her employment with American Executive Realty and tried to collect her commissions. We find that the judge did not err in enforcing the contract according to its plain language. Appellant's second point of error is also overruled and the judgment of the trial court is affirmed. | To establish custom and usage that would be included in contract without being expressed therein, it is necessary to show that it is a custom generally known to parties or that parties contracted with reference thereto. | "In order to establish custom and usage, what is necessary?" | 014268.docx | LEGALEASE-00123921-LEGALEASE-00123922 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 10129 | Osman v. Osman, 285 Va. 384 | 203+530 | Murder is the unlawful killing of another with malice. Wood v. Commonwealth, 140 Va. 491, 494, 124 S.E. 458, 459 (1924). Malice, in a legal sense, means any wrongful act done willfully or purposely. See Avent v. Commonwealth, 279 Va. 175, 202, 688 S.E.2d 244, 259 (2010). In Virginia, all murder other than capital murder and murder in the first degree is murder of the second degree. Code " 18.2"32. To be found guilty of murder, a person must have acted maliciously; in other words, he must possess the necessary mens rea. Mens rea is defined as "criminal intent." Black's Law Dictionary 1075 (9th ed. 2009). It is often referred to as "guilty mind." Id. | To be found guilty of murder, a person must have acted maliciously; in other words, he must possess the necessary mens rea. West's V.C.A. S 18.2-32. | Should a person possess necessary mens rea to be found guilty of murder? | 019347.docx | LEGALEASE-00123474-LEGALEASE-00123475 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 10130 | United States v. Louisiana, 470 U.S. 93 | 405+2652 | The term "historic bay" is not defined in the Convention, and there is no complete accord as to its meaning. The Court has stated that a historic bay is a bay "over which a coastal nation has traditionally asserted and maintained dominion with the acquiescence of foreign nations." United States v. California, 381 U.S., at 172, 85 S.Ct., at 1419. See also United States v. Alaska, 422 U.S., at 189, 95 S.Ct., at 2246; Louisiana Boundary Case, 394 U.S., at 23, 89 S.Ct., at 781. The Court also has noted that there appears to be general agreement that at least three factors are to be taken into consideration in determining whether a body of water is a historic bay: (1) the exercise of authority over the area by the claiming nation; (2) the continuity of this exercise of authority; and (3) the acquiescence of foreign nations. See United States v. Alaska, 422 U.S., at 189, 95 S.Ct., at 2246; Louisiana Boundary Case, 394 U.S., at 23-24, n. 27, 89 S.Ct., at 781-782, n. 27. An authoritative United Nations study concludes that these three factors require that "the coastal State must have effectively exercised sovereignty over the area continuously during a time sufficient to create a usage and have done so under the general toleration of the community of States." Juridical Regime of Historic Waters, Including Historic Bays 56, U.N. Doc. A/CN.4/143 (1962) (hereinafter Juridical Regime). In addition, there is substantial agreement that a fourth factor to be taken into consideration is the vital interests of the coastal nation, including elements such as geographical configuration, economic interests, and the requirements of self-defense. See id., at 38, 56-58; 1 Shalowitz, at 48-49. See also Fisheries Case (U.K. v. Nor.), 1951 I.C.J. 116, 142. In the present case, the facts establish that the United States effectively has exercised sovereignty over Mississippi Sound as inland waters from the time of the Louisiana Purchase in 1803 until 1971, and has done so without protest by foreign nations. | An "historic bay" is a bay over which a coastal nation has traditionally asserted and maintained dominion with acquiescence of foreign nations. | Are historic bay bays over which a coastal nation has traditionally asserted and maintained dominion with the acquiescence of foreign nations? | International Law - Memo # 148 - C - CAR.docx | ROSS-003312135-ROSS-003312136 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 10131 | Mathews v. Halford, 374 F. Supp. 1003 | 221+138 | When a ship enters the territorial limits of another country, she subjects herself to the jurisdiction of the foreign sovereign. Cunard Steamship Co. v. Mellon, 262 U.S. 100, 43 S.Ct. 504, 67 L.Ed. 894 (1923). The master of a vessel owes a very high duty of care and protection to his crew and is charged with the duty of caring for the safety of the crew at all times whether or not they ask for such protection. The standard of whether or not the master of the crew has met this duty is that of a reasonable man under the same or similar circumstances. Zanca v. Delta Steamship Lines,246 F.Supp. 127 (E.D.La., 1965). | When ship enters territorial limits of another country, she subjects herself to jurisdiction of the foreign sovereign. | "When a ship enters territorial limits of another country, does she subject herself to jurisdiction of the foreign sovereign?" | International Law - Memo # 152 - C - CAR.docx | ROSS-003324653-ROSS-003324654 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10132 | United States v. Smith, 680 F.2d 255 | 221+134 | Under international law a state does not have jurisdiction to enforce a rule of law enacted by it unless it has jurisdiction to prescribe the conduct in question. Rivard v. United States, 375 F.2d 882 (5th Cir. 1967), cert. den. sub nom. Groleau et al. v. United States, 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181 (1967). International law recognizes five general principles whereby a sovereign may exercise this prescriptive jurisdiction: (1) territorial, wherein jurisdiction is based on the place where the offense is committed; (2) national, wherein jurisdiction is based on the nationality or national character of the offender; (3) protective, wherein jurisdiction is based on whether the national interest is injured; (4) universal, which amounts to physical custody of the offender; and (5) passive personal, wherein jurisdiction is based on the nationality or national character of the victim. See Rivard v. United States, supra; United States v. Pizzarusso, 388 F.2d 8, 10-11 (2nd Cir. 1968), cert. den., 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968); Rocha v. United States, 288 F.2d 545 (9th Cir. 1961). Our courts have also developed a sixth basis for prescriptive jurisdiction which is referred to as the objective territorial principle. United States v. Pizzarusso, supra. This principle has been defined as including acts done outside a geographic jurisdiction, but which produce detrimental effects within it. Those circumstances support the proscription and punishment of the cause of the harm as if it had been physically present where the effect takes place. Strassheim v. Daily, 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911). The objective territorial principle is distinct from the protective theory in that in the latter all the elements of the crime occur in the foreign country, and jurisdiction exists because these actions have a potentially adverse effect upon security or governmental functions, with no actual effect taking place in the country as would be required under | Under international law a state does not have jurisdiction to enforce a rule of law enacted by it unless it has jurisdiction to prescribe conduct in question. | "Under international law, does a state have jurisdiction to enforce rule of law prescribed by it if it has jurisdiction to prescribe conduct in question?" | International Law - Memo # 176 - C - PHS.docx | ROSS-003309582-ROSS-003309584 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 10133 | Gov't of Dominican Republic v. AES Corp., 466 F. Supp. 2d 680 | 221+342 | The Court denies the Defendants' motion to dismiss because the act of state doctrine does not apply to this case. "[I]nternational comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations" provide the foundation for the act of state doctrine. W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Intern., 493 U.S. 400, 408, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990). See Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 697, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976). In order for the act of state doctrine to apply, the outcome of the case must turn upon the act at issue. W.S. Kirkpatrick, 493 U.S. at 406, 110 S.Ct. 701. The Court must be required "to declare invalid an official act of a foreign sovereign performed within its own territory." Id. at 405, 110 S.Ct. 701. In the Eastern District of Virginia, the act of state doctrine applies when: (1) the act undertaken by the foreign state is public, and (2) the foreign state completes the act within the its territory. Eckert, 834 F.Supp. at 171 (ruling that the act of state doctrine did not apply because there was no public act involved, but rather a commercial one). The act of state doctrine does not cover private and commercial acts of sovereign states. Id. at 171. | Act of state doctrine, which precludes judicial review of the acts of a foreign government, applies when: (1) the act undertaken by the foreign state is public, and (2) the foreign state completes the act within the its territory. | "Does the act of state doctrine apply when the act undertaken by the foreign state is public, and the foreign state completes the act within its territory?" | International Law - Memo # 220 - C - MLS.docx | ROSS-003289657-ROSS-003289658 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10134 | Guar. Tr. Co. of New York v. United States, 304 U.S. 126 | 221+134 | It is not denied that, in conformity to generally accepted principles, the Soviet Government could not maintain a suit in our courts before its recognition by the political department of the government. For this reason access to the federal and state courts was denied to the Soviet Government before recognition. The Penza, D.C., 277 F. 91; The Rogdai, D.C., 278 F. 294; Russian Socialist F. S. Republic v. Cibrario, supra; Preobazhenski v. Cibrario, Sup., 192 N.Y.S. 275. But the argument ignores the principle controlling here and recognized by the courts of New York that the rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it, The Sapphire, supra, 11 Wall. 164, 168, 20 L.Ed. 127, and that suit in its behalf may be maintained in our courts only by that government which has been recognized by the political department of our own government as the authorized government of the foreign state. Jones v. United States, 137 U.S. 202, 212, 11 S.Ct. 80, 34 L.Ed. 691; Russian Government v. Lehigh Valley R. Co., D.C., 293 F. 133, 135, aff'd sub nom. Lehigh Valley R. Co. v. State of Russia, 2 Cir., 21 F.2d 396, 409; Matter of Lehigh Valley R. Co., 265 U.S. 573, 44 S.Ct. 460, 68 L.Ed. 1186; Russian S.F.S.R. v. Cibrario, supra; Moore, International Law Digest, ss 75, 78. | The rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent the state. | "Are the rights of a sovereign state vested in the state, rather than in any particular government which may purport to represent the state?" | 020083.docx | LEGALEASE-00123345-LEGALEASE-00123346 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 10135 | Employers Mut. Cas. Co. v. Samuels, 407 S.W.2d 839 | 221+136 | A little more than 500 years ago it was frequently contended that the sea could be appropriated by a nation to the exclusion of all others. Vague and exaggerated claims were made by nations over portions of the sea, but gradually these "vain and extravagant pretensions," as they were called by Chief Justice Cockburn in Regina v. Keyn (1876), 2 Exch.Div. 175, were abandoned. See Hall, Treatise on International Law (8th ed., 1924), p. 189. Today, the generally accepted doctrine may be summed up as follows: The high sea does not form part of the territory of any nation. No nation can have over it any right of ownership, sovereignty or jurisdiction. At least in times of peace, no nation can claim to dictate laws for the high seas. The Mariana Flora, 1 Wheat.(U.S.) 1, 43, 6 L.Ed. 405; United States v. States of Louisiana, etc., 363 U.S. 1, 33, 80 S.Ct. 961, 4 L.Ed.2d 1025, 34th Report, Institute of International Law, pp. 101 et seq. | High sea does not form part of the territory of any nation, and no nation can have over it any right of ownership, sovereignty or jurisdiction. | "Does the high sea form part of the territory of any nation and can any nation have any right of ownership, sovereignty or jurisdiction over it?" | 020105.docx | LEGALEASE-00123151-LEGALEASE-00123152 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10136 | Bolmer v. Edsall, 90 N.J. Eq. 299 | 221+137 | The jurisdiction of nations extends into the ocean to one marine league from low-water mark on the shore. 12 Cyc. 214; Manchester v. Commonwealth, 139 U. S. 240, 11 Sup. Ct. 559, 35 L. Ed. 159, 164. In English-speaking countries, a league is estimated at three miles. Webster's New Int. Dic. 1227. The rivers, havens, bays, and other arms of the sea extending into a state or country are within the jurisdiction of such state or country. 12 Cyc. 215; Manchester v. Commonwealth, supra; Attorney General v. Hudson County Water Co., 76 N. J. Eq. 543, 76 Atl. 560. But, the high seas being common to all mankind, vessels afloat upon it are regarded as parts of the territory of the nations whose flag they fly and to which they belong, and crimes committed on such vessels on the high seas are exclusively within the jurisdiction of that nation. 12 Cyc. 215. And, moreover, the ships of a nation, wherever they may be, are considered a part of its territory. Benedict's Admiralty (4th Ed.) " 2, citing The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264, which was not a government vessel, but a merchantman; s. c. sub. nom. Old Dom. Steamship Co. v. Gilmore, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264, 270. | The rivers, havens, bays, and other arms of the sea extending into a state or country are within the jurisdiction of such state or country. | "Are the rivers, havens, bays, and other arms of the sea extending into a state or country within the jurisdiction of such state or country?" | International Law - Memo # 441 - C - MLS.docx | ROSS-003296052-ROSS-003296053 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 10137 | Canada S. Ry. Co. v. Gebhard, 109 U.S. 527 | 221+146 | There is no constitutional prohibition in Canada against the passage of laws impairing the obligation of contracts, and the parliament of the dominion had, in 1878, exclusive legislative authority over the corporation, and the general subjects of bankruptcy and insolvency in that jurisdiction. As to all matters within its authority, the dominion parliament has "plenary legislative powers as large and of the same nature as those of the imperial parliament." City of Fredericton v. The Queen, 3 Can. Sup. Ct. 559. On the twentieth of August, 1867, the parliament of Great Britain passed the "railway companies act, 1867." 2 St. 1332; 30, 31, Vict. c. 127. This act provides, among other things, for the preparation of "schemes of arrangement" between railway companies unable to meet their engagements and their creditors, which can be filed in the court of chancery, accompanied by a declaration in writing, under the seal of the company and verified by the oaths of the directors, to the effect that the company is unable to meet its engagements with its creditors. Notice of the filing of such a scheme must be published in the Gazette, and the scheme is to be deemed assented to by the holders of mortgages. bonds, debenture stock, rent-charges, and preference shares, when assented to in writing by the holders of three-fourths in value of each class of security, and by the ordinary shareholders when assented to at an extraordinary general meeting specially called for that purpose. Provision is then made for an application to the court by the company for a confirmation of the scheme. Notice of this application must be published in the Gazette, and, after hearing, the court, if satisfied that no sufficient objection to the scheme has been established, may confirm it. | As to all matters within its authority, the Parliament of the Dominion of Canada has plenary legislative powers as large and of the same nature as those of the imperial parliament. | "Does a state, as to all matters within its authority, have plenary legislative powers as large and of the same nature as those of the imperial parliament?" | 020380.docx | LEGALEASE-00123739-LEGALEASE-00123740 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 10138 | Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V., 61 F. Supp. 3d 372 | 221+342 | "[T]he act of state doctrine [ ] concerns foreign governments' conduct within their own territory: it holds that generally "the courts of this country [will not] inquir[e] into the validity of the public acts [of] a recognized foreign sovereign power committed within its own territory." " However, it is black-letter law that the doctrine "does not prevent examination of the validity of an act of a foreign state with respect to a thing located, or an interest localized, outside of its territory." While " "the situs of intangible property is about as intangible a concept as is known to the law," " "[g]enerally courts have viewed the situs of the right to use a trademark or to market products "to be in that nation granting the marketing rights or the right to use the trademark itself rather than in that nation in which the person or company who was given the right to use the trademark or who manufactures the product is located." "Therefore, the doctrine does not apply to international trademark disputes in which a foreign government declares, through a formal decree, an act, directive, or otherwise, U.S. trademark rights to be its own property, or that of another foreign or U.S. entity. | Act of state doctrine does not prevent examination of validity of foreign state's act with respect to thing located, or interest localized, outside of its territory. | Will the considerations underlying the act of state doctrine still be present when acts of foreign states affect property outside of its territory? | 020785.docx | LEGALEASE-00123661-LEGALEASE-00123663 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10139 | Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909 | 106+512 | However, there are limitations to the application of comity. When the foreign act is inherently inconsistent with the policies underlying comity, domestic recognition could tend either to legitimize the aberration or to encourage retaliation, undercutting the realization of the goals served by comity. No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum. Thus, from the earliest times, authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act. Case law on the subject is extensive and recognizes the current validity of this exception to comity. | International comity does not impose unremitting obligation upon any nation to enforce foreign interests fundamentally prejudicial to those of the domestic forum, and case law on subject is extensive and recognizes current validity of this exception to comity. | A nation is not under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum? | 020822.docx | LEGALEASE-00124073-LEGALEASE-00124074 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 10140 | Miller v. United States, 921 F. Supp. 494 | 221+342 | The Government also argues that the act-of-state doctrine requires dismissal of plaintiffs' complaint. The act-of-state doctrine precludes United States courts from reviewing the acts of foreign sovereigns. W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., 493 U.S. 400, 405, 110 S.Ct. 701, 704, 107 L.Ed.2d 816 (1990). Therefore, if plaintiffs' complaint challenged seizure by the Netherlands and sale of the contents of the safe deposit box, this court could not adjudicate plaintiffs' claim. | Act-of-state doctrine precludes United States courts from reviewing acts of foreign sovereigns. | Does the act-of-state doctrine preclude United States courts from reviewing acts of foreign sovereigns? | 020855.docx | LEGALEASE-00124175-LEGALEASE-00124177 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10141 | Ellison v. Parts Distributors, 302 S.C. 299 | 388+250 | It is well settled that jury instructions should be confined to the issues raised by the pleadings and supported by the evidence and where an issue is implicitly suggested by the pleadings and supported by the evidence, the trial judge is obligated to instruct the jury concerning it. Mouzon v. Moore & Stewart, Inc. 282 S.C. 233, 317 S.E.2d 756 (Ct.App.1984). In order to warrant reversal for refusal of the trial judge to give requested jury instructions, refusal must have been both erroneous and prejudicial. Ballou v. Sigma Nu General Fraternity, 291 S.C. 140, 352 S.E.2d 488 (Ct.App.1986) | Jury instructions should be confined to issues raised by pleadings and supported by evidence and, where issue is implicitly suggested by pleadings and supported by evidence, trial judge is obligated to instruct jury concerning it. | Should jury instructions be confined to the issues raised by the pleadings? | 022961.docx | LEGALEASE-00123506-LEGALEASE-00123507 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 10142 | Brandy Hills Estates v. Reeves, 237 S.W.3d 307 | 307A+3 | A motion in limine is an interim ruling. Ede v. Atrium S. OB"GYN, Inc., 71 Ohio St.3d 124, 642 N.E.2d 365, 366 (1994). In addition, Black's Law Dictionary defines "in limine" as "preliminary." Black's Law Dictionary (8th ed.). The nature of a motion in limine is a temporary, non-steadfast, interim ruling that is subject to modification before or during the trial. An "interim order is one that adjudicates an issue preliminarily; while a final order fully and completely defines the parties' rights with regard to the issue, leaving nothing else for the trial court to do." Hoalcraft v. Smithson, 19 S.W.3d 822, 827 (Tenn.Ct.App.1999) (citations omitted). Until a judgment is final, the rulings of the trial court are subject to modification. Id. | The nature of a motion in limine is a temporary, non-steadfast, interim ruling that is subject to modification before or during the trial. | "Is the nature of a motion in limine a temporary, non-steadfast, interim ruling that is subject to modification before or during the trial?" | Pretrial Procedure - Memo # 199 - C - CRB.docx | ROSS-003284744-ROSS-003284745 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10143 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | In addition to the Hyundai defendants' failure to renew their objections to the evidence they now insist was erroneously introduced, there is an even more basic reason to uphold the trial court's denial of the Hyundai defendants' motion in limine. A motion in limine is not the proper vehicle to use to attempt to preclude a claim or defense. It is not equivalent to or a substitute for a motion to dismiss or a motion for summary judgment. | A motion in limine is not the proper vehicle by which to attempt to preclude a claim or defense; it is not equivalent to, or a substitute for, a motion to dismiss or a motion for summary judgment. | Is a motion in limine an equivalent to or a substitute for a motion to dismiss or a motion for summary judgment? | 05220.docx | LEGALEASE-00084912-LEGALEASE-00084914 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 10144 | Headley v. Williams, 162 N.C. App. 300 | 307A+3 | In this case, the trial court found that the probative value as to the credibility of defendant from the evidence that defendant was convicted of DWI in an unrelated matter subsequent to the accident was substantially outweighed by its prejudicial nature. We conclude the trial court did not abuse its discretion. We note, however, that a trial court's ruling on a motion in limine is not final, but rather interlocutory and subject to modification. Nunnery v. Baucom, 135 N.C.App. 556, 566, 521 S.E.2d 479, 486 (1999). | A trial court's ruling on a motion in limine is not final, but rather interlocutory and subject to modification. | Is a trial court's ruling on a motion in limine final or rather interlocutory and subject to modification? | PreTrial Procedure - Memo - 74 - C - SK.docx | ROSS-003298857-ROSS-003298859 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10145 | Bartlett Milling Co. v. Walnut Grove Auction & Realty Co., 192 N.C. App. 74 | 307A+3 | Defendants first argue that the trial court erred in denying their motion in limine to exclude any evidence relating to their refusal to place into escrow funds received from the sale of the Collateral. Defendant's motion was, in part, based upon the fact that the trial court previously had denied plaintiff's motion to compel defendants to escrow the proceeds. Therefore, defendants contend, the trial court not only allowed evidence of their decision not to escrow the proceeds through the trial, but also denied the opportunity to present evidence that such decision was lawful. We note that defendants do not direct this Court to the trial court's order denying plaintiff's motion to compel the escrow of the funds, and our review of the record fails to disclose that order. It is the defendants' duty to make sure the record contains all evidence relevant to its appeal, and its duty to direct this Court to that evidence in its brief. N.C. R.App. P., Rules 9 and 28(b)(6). Defendants contend that because a prior judge had denied plaintiff's motion to escrow the funds, the issue had been decided, and as a matter of law, defendants were allowed to disburse the proceeds in the manner they chose. Defendants direct this Court to no evidence that the denial of plaintiff's motion constituted a final disposition of that issue. It was a motion in limine. A motion in limine is interlocutory, and by its nature subject to being revisited by the trial court, as circumstances warrant. See DOT v. Olinger, 172 N.C.App. 848, 850, 616 S.E.2d 672, 674 (2005). Defendants further fail to cite any authority in their brief for their proposition, which is a violation of Rule 28(b)(6) of our Rules of Appellate Procedure. This violation subjects defendants argument to dismissal. In fact, the only legal citations in this argument are to Rules 402 and 403 of the North Carolina Rules of Evidence concerning relevant evidence and prejudice. Defendants argue evidence of their refusal to escrow the funds was irrelevant, based upon | A motion in limine is interlocutory, and by its nature subject to being revisited by the trial court, as circumstances warrant. | "Is a motion in limine interlocutory, and by its nature subject to being revisited by the trial court, as circumstances warrant?" | 029263.docx | LEGALEASE-00123103-LEGALEASE-00123105 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 10146 | Columbia Mut. Ins. Co. v. Long, 258 S.W.3d 469 | 30+4179 | The first of those actions is the trial court's grant of a pre-trial motion in limine, ordering that the parties not refer to the disputed language. The grant of a motion in limine is an interlocutory order, and therefore not a potential source of reversible error. See, e.g., State v. Purlee, 839 S.W.2d 584, 592 (Mo. banc 1992). The rationale of this rule is amply demonstrated by the subsequent progress of the trial in this case. Despite initially granting the Long's motion, the trial court ultimately allowed the admission of evidence concerning the policy exclusions at trial. Columbia cannot now claim any prejudice flowing from the interlocutory grant of a motion to exclude that evidence. | Grant of a motion in limine is an interlocutory order and therefore not a potential source of reversible error. | Is the grant of a motion in limine an interlocutory order and therefore not a potential source of reversible error? | Pretrial Procedure - Memo # 333 - C - ANC.docx | ROSS-003285412-ROSS-003285413 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10147 | Rogers v. Hester ex rel. Mills, 334 S.W.3d 528 | 307A+3 | Because the trial court's docket entry following the evidentiary hearing held June 11, 2009, was not a judgment, it was not an appealable ruling and amounted to nothing more than an in limine indication of how the trial court would likely handle the matter at trial. "The grant of a motion in limine is an interlocutory order, and therefore not a potential source of reversible error." Columbia Mut. Ins. Co. v. Long, 258 S.W.3d 469, 474 (Mo.App. W.D.2008). When a motion in limine is granted so as to exclude evidence from trial, the party offering the evidence must still offer it at trial in order to preserve the issue for review on appeal. Henderson v. Fields, 68 S.W.3d 455, 469 (Mo.App. W.D.2001); Portis v. Greenhaw, 38 S.W.3d 436, 447 (Mo.App. W.D.2001). "A motion in limine, by itself, preserves nothing for appeal." Hancock v. Shook, 100 S.W.3d 786, 802 (Mo. banc 2003). Here, because the court's docket entry did not constitute a judgment and Defendant did not attempt to offer evidence concerning the release during the jury trial, the matter was not preserved for appeal. | The grant of a motion in limine is an interlocutory order, and therefore not a potential source of reversible error. | "Is the grant of a motion in limine an interlocutory order, and therefore not a potential source of reversible error?" | Pretrial Procedure - Memo # 524 - C - RY.docx | ROSS-003298743-ROSS-003298744 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 10148 | Lederer v. Dir. of Div. of Aging, 865 S.W.2d 682 | 307A+684 | A motion to dismiss for lack of subject matter jurisdiction should be granted whenever it appears, by a preponderance of the evidence, that the court is without jurisdiction. Crofts v. Harrison, 772 S.W.2d 901, 902 (Mo.App.1989). The decision to dismiss for lack of subject matter jurisdiction is left to the sound discretion of the trial court, id., and will not be reversed on appeal absent an abuse of that discretion. | Motion to dismiss for lack of subject matter jurisdiction should be granted whenever it appears, by preponderance of evidence, that court is without jurisdiction, and decision is left to sound discretion of trial court and will not be reversed on appeal absent abuse of that discretion. | Is a dismissal for lack of subject matter jurisdiction proper whenever it appears? | Pretrial Procedure - Memo # 541 - C - CRB.docx | ROSS-003288318-ROSS-003288319 | Condensed, SA | 0.32 | 0 | 1 | 0 | 1 | |
| 10149 | ADP Marshall v. Brown Univ., 784 A.2d 309 | 307A+3 | In refusing to correct the trial justice's error, we remind the parties that a decision on a motion in limine need not be taken as a final determination of the admissibility of the evidence referred to in the motion. See State v. Fernandes, 526 A.2d 495, 500 (R.I.1987). A trial justice's decision regarding a motion in limine may be preliminary or absolute in nature. See id. (citing State v. Bennett, 122 R.I. 276, 286, 405 A.2d 1181, 1187 (1979)). In this case, the trial justice specifically told the parties that he would reconsider the admissibility of the evidence during trial. It was then up to Brown to reassert its objection at the appropriate time. Brown's failure to do so was fatal. | A decision on a motion in limine need not be taken as a final determination of the admissibility of the evidence referred to in the motion. | Does a decision on a motion in limine need not be taken as a final determination of the admissibility of the evidence referred to in the motion? | Pretrial Procedure - Memo # 941 - C - MLS.docx | ROSS-003328283-ROSS-003328284 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10150 | Drakeford v. Univ. of Chicago Hosps., 2013 IL App (1st) 111366 | 307A+3 | "A motion in limine is addressed to the trial court's inherent power to admit or exclude evidence." Beehn v. Eppard, 321 Ill.App.3d 677, 680, 254 Ill.Dec. 598, 747 N.E.2d 1010 (2001). "[A] denial of a motion in limine does not preserve an objection to disputed evidence later introduced at trial." Brown v. Baker, 284 Ill.App.3d 401, 406, 219 Ill.Dec. 754, 672 N.E.2d 69 (1996). "When a motion in limine is denied, a contemporaneous objection to the evidence at the time it is offered is required to preserve the issue for review." Id. "Absent the requisite objection, the right to raise the issue on appeal is waived." Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co., 163 Ill.2d 498, 502, 206 Ill.Dec. 644, 645 N.E.2d 896 (1994). | A motion in limine is addressed to the trial court's inherent power to admit or exclude evidence. | Is a motion in limine addressed to the trial court's inherent power to admit or exclude evidence? | Pretrial Procedure - Memo 351 - TH.docx | ROSS-003298233-ROSS-003298234 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10151 | Colella v. JMS Trucking Co. of Illinois, 403 Ill. App. 3d 82 | 307A+3 | The next issue raised by the appellants is the trial court's limitation of their questioning of Benchmark's employees at trial. They contend that it was error for the trial court to grant Benchmark's motion in limine barring them from questioning Benchmark employees regarding their opinions on the basis that those opinions were not properly disclosed. We conclude that this argument by appellants is essentially waived and ultimately fails to support their motion for a new trial. A trial court maintains broad discretion in both the admission of and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. Todd W. Musburger, Ltd. v. Meier, 394 Ill.App.3d 781, 801"02, 333 Ill.Dec. 383, 914 N.E.2d 1195 (2009). | A trial court maintains broad discretion in both the admission of evidence and in ruling upon a motion in limine, and a decision on a motion in limine will not be disturbed absent an abuse of that discretion. | Does a trial court have broad discretion in determining whether to grant a motion in limine? | 041140.docx | LEGALEASE-00124003-LEGALEASE-00124004 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 10152 | Residential Util. Consumer Office v. Arizona Corp. Comm'n, 238 Ariz. 8 | 317A+124 | Arizona is a regulated monopoly state. Ariz. Corp. Comm'n v. Ariz. Water Co., 111 Ariz. 74, 76, 523 P.2d 505, 507 (1974). "The monopoly is tolerated only because it is to be subject to vigilant and continuous regulation by the Corporation Commission." Davis v. Corp. Comm'n, 96 Ariz. 215, 218, 393 P.2d 909, 911 (1964). One important component of the Commission's "vigilant and continuous" regulatory role is determining and using fair value when setting a monopolistic utility's rates. In discussing the fair value determination requirement more than a century ago, our supreme court stated:In order that the Corporation Commission might act intelligently, justly, and fairly between the public service corporations doing business in the state and the general public, section 14 was written into the Constitution.... The "fair value of the property" of public service corporations is the recognized basis upon which rates and charges for services rendered should be made, and it is made the duty of the Commission to ascertain such value, not for legislative use, but for its own use, in arriving at just and reasonable rates and charges....State v. Tucson Gas, Elec., Light & Power Co., 15 Ariz. 294, 303, 138 P. 781, 784"85 (1914); see also Simms v. Round Valley Light & Power Co., 80 Ariz. 145, 151, 294 P.2d 378, 382 (1956) ("It is clear ... that under our constitution as interpreted by this court, the commission is required to find the fair value of the company's property and use such finding as a rate base for the purpose of calculating what are just and reasonable rates."). | The constitutional requirement that the Corporation Commission determine the fair value of a utility's property when setting rates is intended to avoid the harsh extremes of the rate spectrum and to ensure that both consumers and public service corporations are treated fairly. A.R.S. Const. Art. 15, S 14. | What is the fair value of the property of public service corporations? | 042226.docx | LEGALEASE-00122602-LEGALEASE-00122604 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10153 | Jones v. Ohio Edison Co., 2014-Ohio-5466 | 317A+111 | Further, the issue of whether Ohio Edison provided faulty service resulting in a power surge is expressly governed by Ohio Edison's tariff on file with and approved by PUCO. The General Assembly has given PUCO statutory authority to review and approve tariffs. Migden"Ostrander v. Pub. Util. Comm., 102 Ohio St.3d 451, 2004-Ohio-3924, 812 N.E.2d 955, " 8, fn. 5. "Public utility tariffs are books or compilations of printed materials filed by public utilities with, and approved by, [PUCO] that contain schedules of rates and charges, rules and regulations, and standards for service." Id | "Public utility tariffs" are books or compilations of printed materials filed by public utilities with, and approved by, the public utilities commission that contain schedules of rates and charges, rules and regulations, and standards for service. | What are public utility tariffs? | 042254.docx | LEGALEASE-00123639-LEGALEASE-00123640 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 10154 | Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 897 N.W.2d 821 | 13+61 | This brings us to the pivotal question: did Savoie have a claim for legal malpractice against Larkin Hoffman while he was alive? Security Bank argues that a legal-malpractice claim accrued before Savoie's death and that as personal representative, it should be allowed to pursue that claim. We therefore examine Minnesota caselaw regarding the time for accrual of a claim based on malpractice. In so doing, we are mindful that "[a] cause of action accrues when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim." Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 832 (Minn. 2011). | A cause of action "accrues" when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim. | Does cause of action accrue when all essential elements forming basis for claim have occurred? | 005373.docx | LEGALEASE-00124602-LEGALEASE-00124603 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 10155 | Meracle v. Children's Serv. Soc. of Wisconsin, 149 Wis. 2d 19 | 241+43 | We find that in 1981, while the Meracles had learned of CSS's negligence, they had suffered no injury which would support a cause of action. As this court held in Barry v. Minahan, 127 Wis. 570, 573, 107 N.W. 488 (1906), "[a] cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." We defined "cause of action" similarly in Holifield v. Setco Industries, Inc., 42 Wis.2d 750, 754, 168 N.W.2d 177 (1969), stating, "a person has a "cause of action" when he can come into court, plead and prove certain facts and secure the relief requested." In 1981, the Meracles did not have a claim which they could have enforced in court either for pecuniary damages or for emotional distress. | A cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has present right to enforce it. | Does a cause of action accrues when there exists a claim capable of present enforcement? | 005818.docx | LEGALEASE-00124900-LEGALEASE-00124901 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10156 | P & A Real Estate v. Am. Bank of Texas, 323 S.W.3d 618 | 30+5 | A party who did not participate"either in person or through counsel"in the hearing that resulted in the judgment complained of and who did not timely file a post-judgment motion or notice of appeal, may file a notice of restricted appeal within six months after the judgment is signed. Tex.R.App. P. 30. However, when a party files a timely post-judgment motion, we lack jurisdiction over a restricted appeal. See Laboratoty Corp. of Am. v. Mid"Town Surgical Center, Inc., 16 S.W.3d 527, 528 (Tex.App.-Dallas 2000, no pet.). | When a party files a timely post-judgment motion, the appellate court lacks jurisdiction over a restricted appeal. Rules App.Proc., Rule 30. | When a party files a timely post-judgment motion does the appellate court lacks jurisdiction over a restricted appeal? | 008158.docx | LEGALEASE-00125088-LEGALEASE-00125090 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10157 | United States v. Keen, 676 F.3d 981 | 63+1(1) | We review de novo the District Court's denial of the motion for judgment of acquittal based on the sufficiency of the evidence, viewing the evidence in the light most favorable to the government, Tampas, 493 F.3d at 1297"98, and conclude that the argument of Mr. Driggers and Mr. Land lacks merit. This Court has made it clear that " 666(a)(1)(B) does not require the government to prove a specific official act for which a bribe was received. See United States v. McNair, 605 F.3d 1152, 1188 (11th Cir.2010) ("Simply put, the government is not required to tie or directly link a benefit or payment to a specific official act by that County employee."). Rather, the government must show only that Mr. Driggers and Mr. Land "corruptly" accepted "anything of value" with the intent "to be influenced or rewarded in connection with any business, transaction, or series of transactions" of the Board. See id. (quoting 18 U.S.C. " 666(a)(1)(B)). That is precisely what the government did when it presented evidence that Commissioners Driggers and Land accepted bribes from Agent Quinn with the understanding that they would facilitate the approval of zoning changes benefitting the fictitious company of "Sean Michaels." Further, by showing that the value of the bribes each received by Commissioners Driggers and Land exceeded $5,000, the government presented sufficient evidence to establish that the value of the transaction met the statutory minimum of $5,000. See United States v. Townsend, 630 F.3d 1003, 1011"12 (11th Cir.2011) (recognizing that "the value of an intangible in the black market of corruption" may be "set at the monetary value of what a willing bribe-giver gives and what a willing bribe-taker takes in exchange for the intangible"). Consequently, the District Court did not err in denying the motion for judgment of acquittal. | Statute prohibiting bribery of a government official does not require government to prove a specific official act for which a bribe was received. 18 U.S.C.A. S 666(a)(1)(B). | Does Statute prohibiting bribery of a government official require the government to prove a specific official act for which a bribe was received? | 011002.docx | LEGALEASE-00124341-LEGALEASE-00124343 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 10158 | United States v. Ring, 706 F.3d 460 | 63+1(1) | Ring's position is foreclosed by the text and structure of the federal bribery statute, which both parties agree serves as the benchmark for honest-services bribery, as well as by binding precedent. The bribery statute expressly criminalizes a mere "offer" of something of value with the intent to influence an official act. 18 U.S.C. " 201(b)(1). That the official need not accept that offer for the act of bribery to be complete is evident from the structure of the statute, which defines two separate crimes: the act of offering a bribe and the act of soliciting or accepting a bribe. See id. " 201(b)(1)"(2). Confirming this interpretation, the Supreme Court held in United States v. Brewster, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), that, with respect to a bribe payee, the "acceptance of the bribe is the violation of the statute." Id. at 526, 92 S.Ct. 2531. The parallel proposition in the context of a bribe payor is straightforward: the offer of the bribe is the violation of the statute. Indeed, we have made clear that the quid pro quo need not be "fully executed for the act to be considered a bribe." Orenuga, 430 F.3d at 1166. | That the official need not accept an offer of something of value with the intent to influence an official act for the act of bribery to be complete is evident from the structure of the statute, which defines two separate crimes: the act of offering a bribe and the act of soliciting or accepting a bribe. 18 U.S.C.A. S 201(b)(1, 2). | Is offering a bribe and receiving a crime two different crimes? | 011007.docx | LEGALEASE-00125415-LEGALEASE-00125416 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10159 | Weiner v. State, 273 A.D.2d 95 | 79+66 | The normal work of a court clerk who participates in the processing of legal proceedings is generally viewed as "quasi-judicial", thereby cloaking the clerk with judicial immunity (see, Welch v. State of New York, 203 A.D.2d 80, 81, 610 N.Y.S.2d 21). | The normal work of a court clerk who participates in the processing of legal proceedings is generally viewed as "quasi-judicial", thereby cloaking the clerk with judicial immunity. | Is a clerk of court a quasi-judicial officer protected by judicial immunity? | 013348.docx | LEGALEASE-00124912-LEGALEASE-00124913 | Condensed, SA | 0.26 | 0 | 1 | 0 | 1 | |
| 10160 | Westside Quik Shop v. Stewart, 341 S.C. 297 | 148+107 | It has long been settled that injury to a business dependent on confiscated property is not compensable under the Fifth Amendment. United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946); Mitchell v. United States, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644 (1925); Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167 (1923); cf. Kimball Laundry Co. v. United States, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949) (where government has taken business for continued operation by government entity, Fifth Amendment requires compensation for going-concern value); see also United States v. 57.09 Acres of Land, 757 F.2d 1025 (9th Cir.1985); Hooten v. United States, 405 F.2d 1167 (5th Cir.1969); United States v. Becktold Co., 129 F.2d 473 (8th Cir.1942); cf. Yachts America, Inc. v. United States, 779 F.2d 656 (Fed.Cir.1985) (destruction of business not compensable as separate element although value of business may be indirectly considered in valuation of land). The Fifth Amendment Takings Clause concerns itself solely with the owner's relation to the physical thing and not with consequential damages. United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945). Collateral damages, which include lost business profits and goodwill, are not recoverable on a federal takings claim. Id.; Mibbs v. South Carolina Dep't of Revenue, 337 S.C. 601, 524 S.E.2d 626 (1999); Carolina Power & Light Co. v. Copeland, 258 S.C. 206, 188 S.E.2d 188 (1972). | Collateral damages, which include lost business profits and goodwill, are not recoverable on a federal or state takings claim. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 13. | "Are collateral damages, including lost business profits, recoverable on a takings claim?" | Eminent Domain - Memo 239 - GP.docx | ROSS-003282729-ROSS-003282730 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 10161 | Mibbs v. S.C. Dep't of Revenue, 337 S.C. 601 | 148+81.1 | Moreover, an interest that depends totally upon regulatory licensing is not a property interest that is compensable under the takings clause. Mitchell Arms, Inc. v. United States, 7 F.3d 212 (Fed.Cir.1993). Mitchell involved the federal government's revocation of import permits for certain assault weapons after the plaintiff had signed contracts with a foreign government to purchase such weapons for resale in this country. The plaintiff claimed its investment-backed reliance on the permits constituted a compensable property interest under the takings clause. The court found the plaintiff's right to sell the weapons was not inherent in its ownership of them because any sale depended upon government import permits. Similarly, Mibbs's contractual right to the profits from cash payouts depends totally upon regulatory licensing and is not inherent in its right to possess the machines. Mibbs's interest in the contracts is therefore not a property interest that is compensable as a taking. | An interest that depends totally upon regulatory licensing is not a "property interest" that is compensable under the takings clause. U.S.C.A. Const.Amend. 5. | Is an interest that depends totally upon regulatory licensing a property interest that is compensable under the takings clause? | Eminent Domain - Memo 240 - GP.docx | ROSS-003288588-ROSS-003288589 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 10162 | Fowler Irrevocable Tr. 1992-1 v. City of Boulder, 17 P.3d 797 | 148+143 | Temporary takings require payment of just compensation. See First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 318, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250, 266 (1987). The basic measure of compensation in a temporary taking case is the fair rental value of the property during the period of the taking. See Kimball Laundry Co. v. United States, 338 U.S. 1, 7, 69 S.Ct. 1434, 1438, 93 L.Ed. 1765, 1773 (1949); 9 Julius L. Sackman, Nichols on Eminent Domain " 34.03[3], at 34-60 (rev.3d ed.2000) [hereinafter Sackman]. | The basic measure of compensation in a temporary taking case is the fair rental value of the property during the period of the taking. West's C.R.S.A. Const. Art. 2, S 15. | "Is the measure of compensation for a temporary taking, the fair rental value of the property for the period of the taking?" | Eminent Domain - Memo 244 - GP.docx | ROSS-003283954-ROSS-003283955 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 10163 | In re Fresh & Process Potatoes Antitrust Litig., 834 F. Supp. 2d 1141 | 221+351 | Plaintiffs raise a concern about whether UPGC can assume the status of the member agencies in this case. But that makes no difference. The first element of the Act of State Doctrine is whether there is an official act of a foreign sovereign performed within its own territory, not whether the named defendant is the foreign sovereign who performed that official act. It makes no difference that the member agencies are not the named defendants in this case. The Act of State Doctrine prevents Plaintiffs from attacking the member agencies' sovereign supply-control decisions through UPGC. Unlike the FSIA, the relevant acts include any governmental acts whose validity would be called into question by adjudication of the suit, not just the acts of the defendants. Spectrum Stores, 632 F.3d at 954; see also IAM v. OPEC, 649 F.2d 1354, 1359 (9th Cir.1981). Moreover, "[t]he Act of State Doctrine is not diluted by the commercial activity exception which limits the doctrine of sovereign immunity." IAM, 649 F.2d at 1360; see also Honduras Aircraft Registry, Ltd. v. Honduras, 129 F.3d 543, 550 (11th Cir.1997) ("[T]here is no commercial exception to the Act of State Doctrine as there is under the FSIA.") | Act of state doctrine is not diluted by commercial activity exception which limits doctrine of sovereign immunity. | Is the act of state doctrine diluted by the commercial activity exception which limits the doctrine of sovereign immunity? | 019722.docx | LEGALEASE-00125180-LEGALEASE-00125182 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 10164 | Drexel Burnham Lambert Grp. Inc. v. Galadari, 610 F. Supp. 114 | 221+342 | The court will next consider defendants' argument that the act of state doctrine requires this court to honor the Dubai decree. Although the act of state doctrine is not jurisdictional, Allied Bank International v. Banco Credito Agricola de Cartago, 757 F.2d 516, 520 (2d Cir.1985), it does preclude a court from examining the validity of a foreign act. Therefore, if it applies in this case, the court would be prevented from deciding whether or not the acts of Dubai deserved the protection of international comity. | Although act of state doctrine is not jurisdictional, it does preclude a court from examining validity of a foreign act. | "Although the act of state doctrine is not jurisdictional, does it preclude a court from examining the validity of a foreign act?" | 020418.docx | LEGALEASE-00124242-LEGALEASE-00124243 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 10165 | Williams v. Curtiss-Wright Corp., 694 F.2d 300 | 221+422 | The act of state doctrine is a policy of judicial abstention from inquiry into the validity of an act by a foreign state within its own territory and within the scope of its sovereignty. Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d at 1292. Because the doctrine may be invoked by private litigants, it differs from sovereign immunity, which may be pleaded only by the foreign state itself. Restatement (Second) of Foreign Relations Law of the United States " 41, comment e (1965). The doctrine also differs from the defense of governmental compulsion, which is available only when the offending action was mandated by a foreign sovereign. See Interamerican Refining Corp. v. Texaco Maracaibo, Inc., 307 F.Supp. 1291 (D.Del.1970). | Act of state doctrine is policy of judicial abstention from inquiry into validity of act by foreign state within its own territory and within scope of its sovereignty and, because doctrine may be invoked by private litigants, it differs from sovereign immunity, which may be pleaded only by foreign state itself, and also differs from defense of governmental compulsion, which is available only when offending action was mandated by foreign sovereign. | In invoking act-of-state doctrine must a litigant establish that what is involved is a public act committed by a recognized foreign power exclusively within its own territory? | International Law - Memo # 499 - C - NC.docx | LEGALEASE-00014567-LEGALEASE-00014568 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10166 | The Sapphire, 78 U.S. 164 | 221+134 | The next question is, whether the suit has become abated by the recent deposition of the Emperor Napoleon. We think it has not. The reigning sovereign represents the national sovereignty, and that sovereignty is continuous and perpetual, residing in the proper successors of the sovereign for the time being. Napoleon was the owner of the Euryale, not as an individual, but as sovereign of France. This is substantially averred in the libel. On his deposition the sovereignty does not change, but merely the person or persons in whom it resides. The foreign state is the true and real owner of its public vessels of war. The reigning Emperor, or National Assembly, or other actual person or party in power, is but the agent and representative of the national sovereignty. A change in such representative works no change in the national sovereignty or its rights. The next successor recognized by our government is competent to carry on a suit already commenced and receive the fruits of it. A deed to or treaty with a sovereign as such enures to his successors in the government of the country. If a substitution of names is necessary or proper it is a formal matter, and can be made by the court under its general power to preserve due symmetry in its forms of proceeding. No allegation has been made that any change in the real and substantial ownership of the Euryale has occurred by the recent devolution of the sovereign power. The vessel has always belonged and still belongs to the French nation. | Each nation is the true and real owner of its public vessels of war and the emperor or party in power in the nation is but the "agent" and "representative" of the national sovereignty. | Is each nation the true and real owner of its public vessels of war? | 020453.docx | LEGALEASE-00125258-LEGALEASE-00125259 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 10167 | In re Refined Petroleum Prod. Antitrust Litig., 649 F. Supp. 2d 572 | 221+387 | The burden of proving that the court should apply the act of state doctrine is on the party asserting its applicability. See Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 96 S.Ct. 1854, 1860"61, 48 L.Ed.2d 301 (1976). | Burden of proving that the court should apply the act of state doctrine is on the party asserting its applicability. | Is the burden of proving that the court should apply the act of state doctrine on the party asserting its applicability? | International Law - Memo # 779 - C - NO.docx | ROSS-003285345-ROSS-003285346 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 10168 | United States v. Pizdrint, 983 F. Supp. 1110 | 221+334 | Moreover, the Government makes other persuasive arguments under 18 U.S.C. " 7(8). That subsection provides that the term special maritime and territorial jurisdiction of the United States includes "[t]o the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States." Defendant concedes that Daniel Paulesc is a national of the United States, however, disputes that jurisdiction is "permitted by international law." Generally, under international law, vessels are under the exclusive jurisdiction of the countries whose flag they fly. See United States v. Marino"Garcia, 679 F.2d 1373, 1380 (11th Cir.1982). Nevertheless, there are five (5) exceptions to the exclusive jurisdiction rule. See Id; United States v. Vasquez"Velasco, 15 F.3d 833, 840 (9th Cir.1994). Although all of Government's arguments have merit, the Court will only address the issue of the objective territorial exception. | Generally, under international law, vessels are under the exclusive jurisdiction of the countries whose flag they fly. | "Generally, under international law, are vessels under the exclusive jurisdiction of the countries whose flag they fly?" | 020641.docx | LEGALEASE-00125095-LEGALEASE-00125097 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 10169 | Kadic v. Karadzic, 70 F.3d 232 | 221+120 | The customary international law of human rights, such as the proscription of official torture, applies to states without distinction between recognized and unrecognized states.See Restatement (Third) "" 207, 702. It would be anomalous indeed if non-recognition by the United States, which typically reflects disfavor with a foreign regime"sometimes due to human rights abuses"had the perverse effect of shielding officials of the unrecognized regime from liability for those violations of international law norms that apply only to state actors. Appellants' allegations entitle them to prove that Karadz?i?'s regime satisfies the criteria for a state, for purposes of those international law violations requiring state action. Srpska is alleged to control defined territory, control populations within its power, and to have entered into agreements with other governments. It has a president, a legislature, and its own currency. These circumstances readily appear to satisfy the criteria for a state in all aspects of international law. Moreover, it is likely that the state action concept, where applicable for some violations like "official" torture, requires merely the semblance of official authority. The inquiry, after all, is whether a person purporting to wield official power has exceeded internationally recognized standards of civilized conduct, not whether statehood in all its formal aspects exists. | Customary international law of human rights, such as proscription of official torture, applies without distinction between recognized and unrecognized states. Restatement (Third) of Foreign Relations SS 207, 702. | "To allege state action for purpose of claim under the Alien Tort Statute, must the challenged conduct be official conduct?" | 020837.docx | LEGALEASE-00124979-LEGALEASE-00124980 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 10170 | Kadic v. Karadzic, 70 F.3d 232 | 221+118 | The Restatement (Third) of the Foreign Relations Law of the United States (1986) ("Restatement (Third) ") proclaims: "Individuals may be held liable for offenses against international law, such as piracy, war crimes, and genocide." Restatement (Third) pt. II, introductory note. The Restatement is careful to identify those violations that are actionable when committed by a state, Restatement (Third) " 702,3 and a more limited category of violations of "universal concern," id. " 404,4 partially overlapping with those listed in section 702.Though the immediate focus of section 404 is to identify those offenses for which a state has jurisdiction to punish without regard to territoriality or the nationality of the offenders, cf. id. " 402(1)(a), (2), the inclusion of piracy and slave trade from an earlier era and aircraft hijacking from the modern era demonstrates that the offenses of "universal concern" include those capable of being committed by non-state actors. Although the jurisdiction authorized by section 404 is usually exercised by application of criminal law, international law also permits states to establish appropriate civil remedies, id. " 404 cmt. b, such as the tort actions authorized by the Alien Tort Act. Indeed, the two cases invoking the Alien Tort Act prior to Fil"rtiga both applied the civil remedy to private action. See Adra v. Clift, 195 F.Supp. 857 (D.Md.1961); Bolchos v. Darrel, 3 F.Cas. 810 (D.S.C.1795) (No. 1,607). | Law of nations, as understood in modern era for purposes of action brought under Alien Tort Claims Act, does not confine its reach to state action, in that certain forms of conduct violate law of nations whether undertaken by those acting under auspices of state or only as private individuals, such as piracy, slave trade, and war crimes. 28 U.S.C.A. S 1350; Restatement (Third) of the Foreign Relations S 404; note preceding S 201. | "To determine whether state action has been alleged in action under the Alien Tort Statute for human rights violations, does a district court consider tests contained in Restatement section and ""under color of law"" jurisprudence of 1983?" | International Law - Memo 478 - TH.docx | LEGALEASE-00014728-LEGALEASE-00014729 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10171 | Fed. Republic of Germany v. Elicofon, 358 F. Supp. 747 | 221+342 | further find that the order granting the Weimar Art Collection a juristic personality was designed by the GDR to avoid the obstacle erected against a non-recognized power for the purpose of this litigation. The acts of an unrecognized power are normally given effect where it pertains to rights within its own borders. We are not obliged to give effect to acts of non-recognized powers that grant rights here in derogation of the authority of the President of the United States in foreign affairs. Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 433 F.2d 686, 699 (2d Cir. 1970). | The acts of an unrecognized power are normally given effect where it pertains to rights within its own borders but United States courts are not obliged to give effect to acts of nonrecognized powers that grant rights in derogation of authority of the President of the United States in foreign affairs. | Are the acts of an unrecognized power normally given effect where it pertains to rights within its own borders? | International Law - Memo 614 - TH.docx | ROSS-003312200-ROSS-003312202 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 10172 | Dominicus Americana Bohio v. Gulf & W. Indus., 473 F. Supp. 680 | 221+342 | In the extreme case, a lawsuit that challenges the validity Per se of an act of a foreign government is non-justiciable. Alfred Dunhill of London, Inc. v. Republic of Cuba, supra, 425 U.S. at 697, 96 S.Ct. 1854; Hunt v. Mobil Oil Corp., supra, at 77. Some commentators have argued that this should be the only situation covered by the act of state doctrine, and that private acts aimed at instigating government action to restrain trade should not be immune from judicial scrutiny. See e. g., Davidow, Antitrust, Foreign Policy, and International Buying Cooperation, 84 Yale L.J. 268, 282-83 (1974). It has been persuasively argued that any broader application of the act of state doctrine would invite antitrust conspirators to involve foreign governments in the anticompetitive scheme in order to procure the virtual immunity that would result. Note, Supra, 77 Colum.L.Rev. at 1260. | In the extreme case, a lawsuit that challenges the validity per se of an act of foreign government is nonjusticiable under the act of state doctrine. | "In the extreme case, is a lawsuit that challenges the validity per se of an act of foreign government non-justiciable under the act of state doctrine?" | International Law- Memo # 775 - C - SU.docx | ROSS-003310871-ROSS-003310872 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10173 | Junkins v. Branstad, 448 N.W.2d 480 | 307A+2 | Application for Adjudication of Law Points and Motion for Summary Judgment. An application for adjudication of law points and a motion for summary judgment are appropriate only when the issue in question should be decided by the court as a matter of law rather than presented to the factfinder. Kriv v. Northwestern Sec. Co., 237 Iowa 1189, 1195, 24 N.W.2d 751, 754 (1946). At issue in this case is whether Senate File 570 should be considered an appropriation bill so to make it subject to the governor's item veto power. | Application for adjudication of law points and motion for summary judgment are appropriate only when issue in question should be decided by court as matter of law rather than presented to fact finder. | Is the motion for summary judgment a matter of law? | Pretrial Procedure - Memo # 602 - C - SSB.docx | ROSS-003285663-ROSS-003285664 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 10174 | In re Marriage of Dunn-Kato & Dunn, 103 Cal. App. 4th 345 | 307A+1 | Informality can only be stretched so far. We have written at length about the importance to litigants of "preserving a process that not only is just, but also appears to be just. In spite of the need for efficiency, courts should not lose sight of the need that parties be given their "day in court." " (Medix Ambulance Service, Inc. v. Superior Court (2002) 97 Cal.App.4th 109, 112, 118 Cal.Rptr.2d 249.) Medix delineated the circumstances in which trial courts are required to hear oral argument on pending motions. Litigants are entitled to oral argument where called for by the context of a statute referring to a "hearing" or where there are "critical pretrial matters" involving a "real and genuine dispute." (Id. at p. 114, 118 Cal.Rptr.2d 249; see also TJX Companies, Inc. v. Superior Court (2001) 87 Cal.App.4th 747, 754, 104 Cal.Rptr.2d 810 [order denying attorney-client privilege]; Titmas v. Superior Court (2001) 87 Cal.App.4th 738, 741, 104 Cal.Rptr.2d 803 [order involving class action status]; Mediterranean Construction Co. v. State Farm Fire & Casualty Co. (1998) 66 Cal.App.4th 257, 77 Cal.Rptr.2d 781 [summary judgment].) | Litigants are entitled to oral argument where called for by the context of a statute referring to a "hearing" or where there are critical pretrial matters involving a real and genuine dispute. | Are litigants entitled to oral argument? | Pretrial Procedure - Memo # 512 - C - LK.docx | ROSS-003296206-ROSS-003296207 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10175 | Boyd v. State, 564 N.E.2d 519 | 110+632(4) | The granting of a motion in limine is not a final ruling upon the admissibility of evidence. The purpose of a motion in limine is to prevent the proponent of potentially prejudicial matter from presenting such matter to the jury before the trial court has had a chance to rule upon its admissibility in the context of the trial itself. Lagenour v. State (1978), 268 Ind. 441, 376 N.E.2d 475. No issue is raised on appeal regarding an alleged violation of a motion in limine. Taylor v. State (1986), Ind., 496 N.E.2d 561. Appellate review in this instance would have to be based on the trial court's exclusion of evidence at trial. The record, however, shows that there were no objections to any of the testimony proferred by Londo or Brown. Further, appellant does not cite to any specific infringements upon the witnesses' testimony. Thus, we find that the testimony of Londo and Brown was not unnecessarily constrained. Any vestigial restraint upon defense counsel at trial from the prior ruling would be no more impermissible than the restraint imposed by the rules of evidence and the readiness of the trial judge to enforce them. | Purpose of motion in limine is to prevent proponent of potentially prejudicial matter from presenting such matter to jury before trial court has had chance to rule upon its admissibility in context of trial itself. | What is a motion in limine designed to prevent? | Pretrial Procedure - Memo # 817 - C - SK.docx | ROSS-003310717-ROSS-003310718 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10176 | Gunter v. Murphy's Lounge, 141 Idaho 16 | 307A+3 | Trial courts have broad discretion when ruling on a motion in limine. Sun Valley Potato Growers, Inc. v. Texas Refinery Corp., 139 Idaho 761, 767, 86 P.3d 475, 481 (2004). This Court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard. Id. at 768, 86 P.3d at 482. The trial court may deny the motion and wait until trial to determine if the evidence should be admitted or excluded. Lanham v. Idaho Power Co., 130 Idaho 486, 492, 943 P.2d 912, 918 (1997). If the trial court defers a ruling on the motion a party must reassert an objection at the time of the offer in order to preserve the issue. State v. Hester, 114 Idaho 688, 760 P.2d 27 (1988). "However, evidentiary rulings involving relevancy are not discretionary matters, and as such, are reviewed de novo on appeal." Loza v. Arroyo Dairy, 137 Idaho 764, 766, 53 P.3d 347, 349 (Ct.App.2002). | The trial court may deny the motion in limine and wait until trial to determine if the evidence should be admitted or excluded. | If a trial court denies a motion in limine can it wait until trial to determine if the evidence should be admitted or excluded? | Pretrial Procedure - Memo # 830 - C - KA.docx | ROSS-003297027-ROSS-003297028 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10177 | Ayala v. Lee, 215 Md. App. 457 | 307A+3 | An evidentiary ruling on a motion in limine "is left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion." Malik v. State, 152 Md.App. 305, 324, 831 A.2d 1101 (2003). The determination of relevancy and admission of evidence at trial is also reviewed for an abuse of discretion. Martin v. State, 364 Md. 692, 705, 775 A.2d 385 (2001). | An evidentiary ruling on a motion in limine is left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion. | Will a reviewing court reverse a trial courts motion in limine if the trial courts discretion was not abused? | 036863.docx | LEGALEASE-00125187-LEGALEASE-00125188 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10178 | Drago v. Tishman Const. Corp. of New York, 4 Misc. 3d 354 | 307A+3 | In either instance, a moving party must interpose a motion in limine seeking a preliminary order excluding the introduction of anticipated evidence. A motion in limine challenges evidence which is claimed to be inadmissible, immaterial, or prejudicial, or requests a limitation on the use of evidence (State of New York v. Metz, 241 A.D.2d 192, 198, 671 N.Y.S.2d 79 [1st Dept.1998] ). | A "motion in limine" challenges evidence which is claimed to be inadmissible, immaterial, or prejudicial, or requests a limitation on the use of evidence. | Does a motion in limine challenge evidence which is claimed to be inadmissible or requests a limitation on the use of evidence? | Pretrial Procedure - Memo # 927 - C - TJ.docx | ROSS-003327962-ROSS-003327963 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 10179 | Warren v. Sharp, 139 Idaho 599 | 307A+3 | Motion in limine seeks an advance ruling on the admissibility of evidence. State v. Young, 136 Idaho 113, 120, 29 P.3d 949, 956 (2001). The motion in limine is based upon an alleged set of facts rather than the actual testimony in order to for the trial court to make its ruling and therefore is not a final order. Id. The trial court may reconsider the issue at any time, including when the actual presentation of facts is made. Id. There is nothing in the record to suggest that the district court acted outside the boundaries of its discretion in denying the motion in limine. This Court holds that the district court did not err in denying Sharp's motion in limine. | The motion in limine is based upon an alleged set of facts rather than the actual testimony in order to for the trial court to make its ruling and therefore is not a final order. | Does a motion in limine seek an advance ruling on the admissibility of evidence? | Pretrial Procedure - Memo 561 - RK.docx | ROSS-003326234-ROSS-003326236 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 10180 | In re Filing Requirements for Complaints & Applications Filed Under Michigan Telecommunications Act, 210 Mich. App. 681 | 317A+161 | Appellants' arguments often trade on an ambiguity in the word "regulate." It is undisputed that the PSC's regulatory authority is less under the new act than it was under previous acts, in the sense that the PSC is not empowered to set rates or otherwise control the provision of certain services. However, appellants appear to believe that "regulate" also includes the oversight and information-gathering functions of the PSC. We do not agree. Although appellants may wish to be free from inquiries by the PSC regarding any services but regulated ones, and only those regulated services for which they are requesting a rate increase, the PSC is within its authority in requesting information regarding both regulated and unregulated services when reviewing a request to alter the rates for a regulated service. Midland Cogeneration, supra. | Public Service Commission (PSC) is within its authority in requesting information regarding both regulated and unregulated services when reviewing request to alter rates for regulated service. | Does the Public Service Commission (PSC) have the authority to request information about unregulated affiliates or services? | 042300.docx | LEGALEASE-00125477-LEGALEASE-00125478 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 10181 | Sw. Bell Tel. Co. v. Pub. Util. Comm'n of Texas, 745 S.W.2d 918 | 317A+111 | In any event, we should follow the Commission's construction of PURA"the regulatory statute it is required to administer toward effectuating important legislative objectives"provided the agency's construction does not contradict the "plain language" of the statute and provided it is a reasonable construction. Clarke v. Securities Industry Ass'n., 479 U.S. 338, """" " """", 107 S.Ct. 750, 759"60, 93 L.Ed.2d 757, 771"72 (1987). In that regard, we observe that the Supreme Court, in its Coahoma opinion, explicitly stated that Article VII of PURA is ambiguous in its definitions of "public utility" and "retail public utility." 626 S.W.2d at 490. That being the case, we may not conclude that the Commission's construction of those definitions, and the limiting scope that construction implies, contradicts the "plain language" of the two definitions in PURA " 49. Moreover, it is readily apparent from our discussion in Southwestern Bell Telephone Company v. The Public Utility Commission of Texas, 735 S.W.2d at 663, that the Commission is required to apply and harmonize the various statutory definitions in complex technical circumstances and under a statutory framework assigning the agency very difficult tasks indeed. The agency has, not unreasonably, chosen an evolutionary approach to the problems presented in this class of controversy. Id.; see also NLRB v. Weingarten, Inc., 420 U.S. 251, 267, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975). We conclude the Commission's construction is reasonable in the circumstances. | Court will follow Public Utility Commission's construction of Public Utility Regulatory Act provided agency's construction does not contradict plain language of statute and provided it is reasonable construction. Vernon's Ann.Texas Civ.St. art. 1446c, S 1 et seq. | Can the construction of the Public Utility Regulatory Act (PURA) contradict the plain language of the statute? | 042308.docx | LEGALEASE-00125596-LEGALEASE-00125597 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10182 | Kroeker v. State Farm Mut. Auto. Ins. Co., 466 S.W.2d 105 | 366+1 | Subrogation originated as a creature of the common law.Basically, it is classified as either legal or conventional. Legal subrogation arises out of a condition or relationship by operation of law, whereas conventionalsubrogation arises by act or agreement of the parties. Cole v. Morris, Mo.Sup., 409 S.W.2d 668. Subrogation is founded on principles of justice and its operation is governed by principles of equity. It rests on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential and perfect justice between all parties without regard to form. 83 C.J.S. Subrogation s 2 a; Cole v. Morris, Mo.Sup., 409 S.W.2d 668. "As a general rule, any person who, pursuant to a legal obligation to do so, has paid even indirectly, for a loss or injury resulting from the wrong or default of another will be subrogated to the rights of the creditor or injured person against the wrongdoer or defaulter, persons who stand in the shoes of the wrongdoer, or others who, as the payor, are primarily responsible for the wrong or default." 83 C.J.S. Subrogation s 16. An important distinction between subrogation and assignment is that subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who made the payment under circumstances entitling him to contribution or indemnity, while assignment necessarily contemplates the continued existence of the debt or claim assigned. 6 C.J.S. Assignments s 2 b(12); Remsen v. Midway Liquors, Inc., 30 Ill.App.2d 132, 174 N.E.2d 7. As simply stated by the Supreme Court of South Carolina, "(S)ubrogation is the machinery by which the equity of one man is worked out through the legal rights of another". American Surety Co. v. Hamrick Mills, 194 S.C. 221, 9 S.E.2d 433. | "Subrogation" originated as a creature of the common law; basically, it is classified as either legal or conventional; "legal subrogation" arises out of a condition or relationship by operation of law, whereas "conventional subrogation" arises by act or agreement of the parties. | How is subrogation classified under the law? | 044281.docx | LEGALEASE-00124638-LEGALEASE-00124640 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10183 | In re Monaco, 514 B.R. 477 | 366+1 | Like Tag, SARMECO's right to assert claims against the Debtors would be dependent upon equitable subrogation. The equitable subrogation doctrine "essentially allows a subsequent lienholder to take the lien-priority status of a prior lienholder." Bank of Am. v. Babu, 340 S.W.3d 917, 925 (Tex.App."Dallas 2011, pet. denied); see also LaSalle Bank Nat'l Ass'n v. White, 246 S.W.3d 616, 619 (Tex.2007) (stating "[t]he doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor"). In the context of equitable subrogation, the term standing explains the ability of "one party to stand in the shoes of another as a plaintiff...." Frymire, 259 S.W.3d at 142 n. 4. Texas courts interpret the doctrine of equitable subrogation liberally and apply it "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Id. at 142 (quoting Mid"Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.2007)). The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor that owed the debt being paid. First Nat'l Bank of Kerrville v. O'Dell, 856 S.W.2d 410, 415 (Tex.1993). | Under Texas law, the general purpose of equitable subrogation is to prevent unjust enrichment of the debtor that owed the debt being paid. | Is equitable subrogation used to prevent unjust enrichment of the debtor that owed the debt being paid? | Subrogation - Memo 1006 -- C- CAT.docx | ROSS-003328109-ROSS-003328110 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 10184 | Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765 | 366+1 | There are two types of subrogation. See id. at 551. Contractual (or conventional) subrogation is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss, while equitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. Argonaut Ins. Co. v. Allstate Ins. Co., 869 S.W.2d 537, 542 (Tex.App.-Corpus Christi 1993, writ denied); see also Lee R. Russ & Thomas F. Segalla, 16 Couch on Insurance " 223:1 (3d ed.2005). In either case, the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party, subject to any defenses held by the third party against the insured. See Interstate Fire Ins. Co. v. First Tape, Inc., 817 S.W.2d 142, 145 (Tex.App.-Houston [1st Dist.] 1991, writ denied); 775 Int'l Ins. Co. v. Med.-Prof'l Bldg. of Corpus Christi, 405 S.W.2d 867, 869 (Tex.Civ.App.-Corpus Christi 1966, writ ref'd n.r.e.); see also 16 Couch on Insurance " 222:5. Privity of contract between the insurers is not necessary. Phipps v. Fuqua, 32 S.W.2d 660, 663 (Tex.Civ.App.-Amarillo 1930, writ ref'd). | "Equitable subrogation," i.e., "legal subrogation" does not depend on contract, but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. | Is contractual subrogation created by agreement? | Subrogation - Memo 1014 - C- CAT.docx | ROSS-003316326-ROSS-003316327 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 10185 | San Diego Metro. Transit Dev. Bd. v. Handlery Hotel, 73 Cal. App. 4th 517 | 148+45 | We recognize the power of eminent domain extends beyond real property, to personal and even intangible property. (City of Oakland v. Oakland Raiders (1982) 32 Cal.3d 60, 68, 183 Cal.Rptr. 673, 646 P.2d 835.) However, to be a protectable property interest, the interest must be more substantial than a mere unilateral expectation of continued rights or benefits. (Ruckelshaus v. Monsanto Co. (1984) 467 U.S. 986, 1005, 104 S.Ct. 2862, 81 L.Ed.2d 815; Bagford v. Ephraim City, supra, 904 P.2d at p. 1099.) Without a vested, legally enforceable property interest, there is no basis for compensation in an inverse condemnation proceeding for loss of future business. (Ibid.) Here, Handlery's right or interest in operating the golf course was entirely dependent upon extending its lease for the property with Chevron/PDR. Without an option to *533 renew, Handlery had no legally protectable property interest in the continued operation of the course after the 50"year lease term expired naturally. Handlery's mere expectation is not one which is compensable in an inverse condemnation proceeding. | Power of eminent domain extends beyond real property, to personal and even intangible property. West's Ann.Cal. Const. Art. 1, S 19. | "Does the power of eminent domain extend beyond real property, to personal and even intangible property?" | 017550.docx | LEGALEASE-00125602-LEGALEASE-00125603 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10186 | Parks v. State, 254 Ga. 403 | 203+657 | Intent to kill is an essential element of both murder and voluntary manslaughter. OCGA "" 16"5"1 and 16"5"2. Provocation, or the lack thereof, is what distinguishes the two offenses. Proof of the absence of provocation may not substitute for proof of intent to kill, as the court's charge erroneously implied. See Davis v. State, 237 Ga. 279(2), 227 S.E.2d 249 (1976) | Intent to kill is essential element of both murder and voluntary manslaughter; provocation, or lack thereof, is what distinguishes the two offenses. O.C.G.A. SS 16-5-1, 16-5-2. | Is intent to kill considered as essential element of both murder and voluntary manslaughter? | 019380.docx | LEGALEASE-00125743-LEGALEASE-00125745 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 10187 | Appeal of Easton, 125 N.H. 205 | 317A+111 | In support of its position, each party cites the same three New Hampshire cases. These cases, rather than providing definitive support for either position, attempt to strike a balance between the commission's authority and management's prerogatives. It is clear that although the scales tip in favor of one or the other depending upon the specific facts and issues of each case, the PUC has a role in determining whether a proposed financing is in the public good, and that role encompasses considerations beyond merely the terms of the proposed financing. | Public Utilities Commission has a role in determining whether proposed financing on part of utility is in the public good and that role encompasses considerations beyond merely terms of proposed financing. | Does the Public Utilities Commission (PUC) have a duty to determine whether a proposed financing is in the public good? | 042310.docx | LEGALEASE-00125600-LEGALEASE-00125601 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10188 | Jamgotchian v. Slender, 170 Cal. App. 4th 1384 | 386+6 | "Though not amounting to conversion, the defendant's interference must, to be actionable, have caused some injury to the chattel or to the plaintiff's rights in it. Under California law, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." (Thrifty"Tel, Inc. v. Bezenek (1996) 46 Cal.App.4th 1559, 1566[, 54 Cal.Rptr.2d 468], italics added.) In cases of interference with possession of personal property not amounting to conversion, "the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use." (Zaslow v. Kroenert [(1946) ] 29 Cal.2d [541,] 551[, 176 P.2d 1], italics added; accord, Jordan v. Talbot (1961) 55 Cal.2d 597, 610[, 12 Cal.Rptr. 488, 361 P.2d 20].) In modern American law generally, "[t]respass remains as an occasional remedy for minor interferences, resulting in some damage, but not sufficiently serious or sufficiently important to amount to the greater tort" of conversion." (Prosser & Keeton, Torts, supra, " 15, p. 90, italics added.) | Under California law, trespass to chattels lies where an intentional interference with the possession of personal property has proximately caused injury. Restatement (Second) of Torts S 218. | Does a claim of trespass to chattels require that an injury be proximately caused by intentional interference? | 047181.docx | LEGALEASE-00125782-LEGALEASE-00125783 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 10189 | Intel Corp. v. Hamidi, 30 Cal. 4th 1342 | 386+6 | The Court of Appeal (quoting 7 Speiser et al., American Law of Torts (1990) Trespass, " 23:23, p. 667) referred to " "a number of very early cases [showing that] any unlawful interference, however slight, with the enjoyment by another of his personal property, is a trespass." " But while a harmless use or touching of personal property may be a technical trespass (see Rest.2d Torts, " 217), an interference (not amounting to dispossession) is not actionable, under modern California and broader American law, without a showing of harm. As already discussed, this is the rule embodied in the Restatement (Rest.2d Torts, " 218) and adopted by California law (Zaslow v. Kroenert, supra, 29 Cal.2d at p. 551, 176 P.2d 1; Thrifty"Tel, Inc. v. Bezenek, supra, 46 Cal.App.4th at p. 1566, 54 Cal.Rptr.2d 468). | While a harmless use or touching of personal property may be a technical trespass, an interference, not amounting to dispossession, is not actionable, without a showing of harm. Restatement (Second) of Torts SS 217, 218. | Is a trespass lacking harm actionable? | 047209.docx | LEGALEASE-00125812-LEGALEASE-00125813 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 10190 | Smith v. Minnesota Mut. Life Ins. Co., 86 Cal. App. 2d 581 | 13+61 | The term "accrue", as applied to a cause of action, means to arrive; to commence; to come into existence; to become a present enforceable demand. A cause of action accrues at the moment when the party owning it is entitled to begin and prosecute an action thereon. Los Angeles County v. Metropolitan Casualty Insurance Company, 135 Cal.App. 26, 26 P.2d 699. The reasoning applied in the case of Columbian National Life Insurance Company v. Lemmons, supra, seems quite appropriate to a proper disposition of this case. There it was said, 222 P. at page 258: The cause of action would survive to the administrator if founded on a contract. The same rule applies in actions on implied or quasi contracts, although founded upon a tort. | A cause of action "accrues" at the moment when the party owning it is entitled to begin and prosecute an action thereon. | Does a cause of action accrue at the moment when the party owning it is entitled to begin and prosecute an action thereon? | 005347.docx | LEGALEASE-00126116-LEGALEASE-00126117 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10191 | Cantonwine v. Fehling, 582 P.2d 592 | 13+61 | Before addressing ourselves to the specific problems concerning actions on promissory notes, it is important to echo several general principles relative to the accrual of causes of action. As observed in Bliler v. Boswell, supra, at 59 P. 803:" . . . A "cause of action" is defined as matter for which an action may be brought. It is said to accrue to any person when that person first comes to a right to bring an action.A cause of action implies that there is some person in existence who can bring suit, and also a person who can lawfully be sued. Again, when a wrong has been committed, or a breach of duty has occurred, the cause of action has accrued, although the claimant may be ignorant of it. A cause of action does not accrue until the existence of such a state of things as will enable a person having the proper relations to the property or persons concerned to bring an action. 1 Bouv. Law Dict. (Rawle's Revision) p. 295. The statute of limitations is never held to have commenced to run upon a note until it has become due, and the duty has devolved upon the party liable to make payment. . . . " | When a wrong has been committed, or a breach of duty has occurred, the cause of action has accrued, although claimant may be ignorant of it. | Can a cause of action accrue when a wrong has been committed or a breach of duty has occurred? | 006474.docx | LEGALEASE-00126240-LEGALEASE-00126241 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10192 | Baxter v. Danny Nicholson, 191 N.C. App. 168 | 316P+232(3) | State v. Lewis, 107 N.C. 967, 971, 12 S.E. 457, 458 (1890). "[A]n officer de facto ... although irregular, ... is not a mere usurper...." Commissioners of Trenton v. McDaniel, 52 N.C. 107, 113 (1859) (per curiam). "[T]here is no difference between the acts of de facto and de jure officers so far as the public and third persons are concerned." Staton, 73 N.C. at 551. "A usurper is one who takes possession without authority. His acts are utterly void, unless he continues to act so long a time or under such circumstances as to afford presumption of his right to act." Van Amringe v. Taylor, 108 N.C. 196, 201, 12 S.E. 1005, 1007 (1891); see also Whitehead v. Pittman, 165 N.C. 89, 90, 80 S.E. 976, 976 (1914) (after vacating his office, the commissioner's act of voting for the commission was not that of "one holding an office under color of title, and therefore a de facto officer ... [h]e was a mere usurper, whose acts were utterly void."). | There is no difference between the acts of de facto and de jure officers so far as the public and third persons are concerned. | Is there any difference between the acts of a de facto officer and a de jure officer as far as the public and third persons are concerned? | 013499.docx | LEGALEASE-00126313-LEGALEASE-00126314 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10193 | United States v. Ibarguen-Mosquera, 634 F.3d 1370 | 221+334 | These international law principles, however, only apply to laws that govern the conduct of flagged vessels. In the past we have held that the objective, protective, and territorial principles "have no applicability in connection with stateless vessels" because such vessels are "international pariahs" that have "no internationally recognized right to navigate freely on the high seas." Marino-Garcia, 679 F.2d at 1382. Indeed, the law "places no restrictions upon a nation's right to subject stateless vessels to its jurisdiction." Id. (emphasis added); see also United States v. Rendon, 354 F.3d 1320, 1325 (11th Cir.2003) ("Because stateless vessels do not fall within the veil of another sovereign's territorial protection, all nations can treat them as their own territory and subject them to their laws." (citation and internal quotation marks omitted)); United States v. Rubies, 612 F.2d 397, 403 (9th Cir.1979); United States v. Dominguez, 604 F.2d 304, 307-09 (4th Cir.1979). "We conclude, therefore, that international law permits any nation to subject stateless vessels on the high seas to its jurisdiction.... Jurisdiction exists solely as a consequence of the vessel's status as stateless." Marino-Garcia, 679 F.2d at 1383. Because extraterritorial jurisdiction is proper, we conclude that the enactment of the VIA does not offend the Due Process Clause of the Constitution. | The law places no restrictions upon a nation's right to subject stateless vessels to its jurisdiction. | Does the law place restrictions upon a nation's right to subject stateless vessels to its jurisdiction? | International Law - Memo # 805 - C - KI.docx | ROSS-003300250-ROSS-003300252 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 10194 | Webster v. Rushing, 316 So. 2d 111 | 302+427 | The purpose of pleading a special defense is to give fair and adequate notice of the nature of the defense so that plaintiff is not surprised. Here, no mention of this defense was made in either defendants' answer (general denial) or in the pretrial order. The question as to the applicability of the prohibition of R.S. 51:715(F) was thus not put at issue. During cross- examination of plaintiff, defense counsel for the first time attempted to raise this issue by asking Webster if he were registered or licensed with the commissioner of securities. Plaintiff replied that he was not. Objection was immediately made to this line of questioning, which was sustained, and no further questioning was permitted on the issue. The general rule established by the jurisprudence is that pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any other issue raised by the pleadings and, hence, would have been excluded if objected to timely. Further, article 1154 of the Code of Civil Procedure provides: 'When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. ." Here, the statutory defense, not raised by the pleadings, was not tried either by the express or implied consent of the parties. In other words, the pleadings were not enlarged by the evidence to include this defense as a result of plaintiff's timely objection. | General rule is that pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any other issue raised by pleadings and, hence, would have been excluded if objected to timely. LSA-C.C.P. art. 1154. | Can pleadings be enlarged by evidence adduced? | Pleading - Memo 174 - RMM.docx | ROSS-003298687-ROSS-003298688 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10195 | Drago v. Tishman Const. Corp. of New York, 4 Misc. 3d 354 | 307A+3 | In either instance, a moving party must interpose a motion in limine seeking a preliminary order excluding the introduction of anticipated evidence. A motion in limine challenges evidence which is claimed to be inadmissible, immaterial, or prejudicial, or requests a limitation on the use of evidence (State of New York v. Metz, 241 A.D.2d 192, 198, 671 N.Y.S.2d 79 [1st Dept.1998] ). | A "motion in limine" challenges evidence which is claimed to be inadmissible, immaterial, or prejudicial, or requests a limitation on the use of evidence. | Does a motion in limine challenge evidence which is claimed to be immaterial or request a limitation on the use of such evidence? | Pretrial Procedure - Memo # 869 - C - TJ.docx | ROSS-003313101-ROSS-003313102 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 10196 | Rohrkaste v. City of Terre Haute, 470 N.E.2d 738 | 307A+3 | While the trial court's authority to grant motions in limine emanates from its inherent power to exclude evidence, Burrus v. Silhavy (1973), 155 Ind.App. 558, 293 N.E.2d 794, 799, its usefulness need not be restricted to evidentiary matters. See Moore v. State (1982), Ind., 440 N.E.2d 1092, 1093 and Ohio Valley Gas, Inc. v. Blackburn (1983), Ind.App., 445 N.E.2d 1378, 1381 (in both cases, the trial court granted a motion in limine prohibiting reference to certain matters during voir dire ). A court may grant such a motion any time there is a need to protect the jury from possibly objectionable questions and statements the prejudicial effect of which might not be curable by the court's admonishment of the jury. Burrus v. Silhavy, supra 293 N.E.2d at 796-797. The grant of a motion in limine is nothing more than a preliminary order requiring counsel to alert the court during trial to any proposed reference to a matter covered by the granted motion so that the court can make its final ruling on the propriety of the line of questioning. In Lagenour v. State (1978), 268 Ind. 441, 376 N.E.2d 475, the Supreme Court explained that the purpose of the motion in limine is:"... to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself. Baldwin v. Inter City Contractors Service, Inc. (1973), 156 Ind.App. 497, 297 N.E.2d 831." | Trial court may grant a motion in limine any time there is a need to protect the jury from possibly objectionable questions and statements the prejudicial effect of which might not be correctible by admonition of the jury. | If a motion in limine is designed to prevent potential prejudice can it have the effect of suppressing evidence? | Pretrial Procedure - Memo # 874 - C - SK.docx | LEGALEASE-00016087-LEGALEASE-00016088 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10197 | State v. Richmond, 708 So. 2d 1272 | 352H+101 | LSA"R.S. 14:89 A(2) defines crime against nature as: "The solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation." To support a conviction for crime against nature the State must prove that defendant solicited another person with the intent to engage in unnatural carnal copulation for compensation. State v. Wallace, 466 So.2d 714 (La.App. 4th Cir.1985). The trier of fact is entitled to rely upon common knowledge and experience in determining whether the prosecution proved essential elements of the crime beyond a reasonable doubt. State v. Pruitt, 482 So.2d 820 (La.App. 4th Cir.1986), writ denied, 488 So.2d 1018 (La.1986). The question of credibility of witnesses lies within the sound discretion of the trier of fact. State v. Klar, 400 So.2d 610 (La.1981). | To support conviction for crime against nature State must prove that defendant solicited another person with intent to engage in unnatural carnal copulation for compensation. LSA-R.S. 14:89, subd. A(2). | Is solicitation an element in crime against nature? | 042932.docx | LEGALEASE-00126252-LEGALEASE-00126253 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10198 | Wint v. Alabama Eye & Tissue Bank, 675 So. 2d 383 | 386+6 | Because "[t]he difference between trespass to chattels and conversion is immaterial when there is a "wrongful taking and carrying away of the property of another," " there is no need to treat the trespass to chattels and conversion claims separately. Roberts and Cusimano, Alabama Tort Law Handbook, " 29.0, p. 598 (1990) (citing Roberson v. Harris, 45 Ala.App. 537, 233 So.2d 96 (1970)). In order to recover from Alabama Eye & Tissue Bank under either of her theories, Mrs. Wint must prove that someone from the eye bank took or carried away Leroy Wint's eyes. | There is no material difference between conversion and trespass to chattels when there is wrongful taking and carrying away of property of another; thus, there is no need to treat conversion and trespass to chattels claims separately. | Should conversion and trespass to chattels claims be treated separately? | 047236.docx | LEGALEASE-00126032-LEGALEASE-00126033 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 10199 | Bradley v. Fed. Life Ins. Co., 216 Ill. App. 602 | 13+61 | A declaration which fails to state a "cause" of action is insufficient to support a judgment. (Walters v. City of Ottawa, 240 Ill. 259.) Does a declaration which fails to state a "right" of action, as does the one in this case, fail to state a "cause" of action? This question is discussed and disposed of as follows in the case last referred to: "'Cause of action' includes every fact necessary for the plaintiff to prove to entitle him to succeed--every fact that the defendant would havea right to traverse. It has been said to be the right to prosecute an action with effect. (Patterson v. Patterson, 59 N. Y. 574.) The terms 'right of action' and 'cause of action' are equivalent expressions. (Clark v. Southard's Heirs, 16 Ohio St. 408.) 'By this phrase (cause of action) is understood the right to bring an action, which implies that there is some person in existence who can assert and also a person who can lawfully be sued. There is no cause of action until the claimant can legally sue. (Bouvier's Dict. title "Cause of action.") If he have no legal right to sue, he has not merely a bad cause of action, but no cause of action.' (Parker v. Enslow, 102 Ill. 272.) A cause of action accrues when facts exist which authorize one party to maintain an action against another. (Davis v. Munie, 235 Ill. 620.) It is not possible for one at the same time to have a cause of action and not to have the right to sue." It must follow, under the authorities above cited, that the declaration in this case fails to state a "cause" of action and is insufficient to support the judgment, consequently it was error to overrule the motion in arrest ofjudgment, and because of that error the judgment should be reversed. | A cause of action accrues when facts exist which authorize one party to maintain an action against another. | Can a cause of action accrue when facts exist which authorize one party to maintain an action against another? | Action - Memo # - C 317-TJ.docx | ROSS-003326186-ROSS-003326187 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 10200 | Ohio-Sealy Mattress Mfg. Co. v. Sealy, 669 F.2d 490 | 13+38(4) | In the context of a continuing scheme to violate the antitrust laws, a cause of actionaccrues to the plaintiff each time the defendant engages in antitrust conduct that harms the plaintiff. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); Lawlor v. National Screen Service Corp., 349 U.S. 322, 328, 75 S.Ct. 865, 868, 99 L.Ed. 1122, reh. denied, 401 U.S. 1015, 91 S.Ct. 1250, 28 L.Ed.2d 552 (1955). At the time of accrual, the plaintiff is entitled to recover all damages caused by the antitrust conduct, including damages that will be suffered during and after trial. Zenith Radio Corp. v. Hazeltine Reseach, Inc., 401 U.S. at 339, 91 S.Ct. at 806. If, however, future damages that might be suffered after trial are speculative or their nature and amount unprovable at the time of trial, the cause of action for these damages has not yet accrued, and the plaintiff may thereafter sue the defendant to recover these future damages when they accrue. Id. On the other hand, if the future damages are not speculative at the time of trial, the plaintiff'scause of action concerning those damages has accrued and he must seek to recover them at trial. Res judicata bars the plaintiff from splitting his cause of action; once he sues, he must seek all the damages that have then accrued as a result of the defendant's antitrust conduct. Id | In context of a continuing scheme to violate antitrust laws, cause of action accrues to plaintiff each time defendant engages in antitrust conduct that harms plaintiff. | Does cause of action accrue when plaintiff suffers an actionable harm? | 005494.docx | LEGALEASE-00126389-LEGALEASE-00126390 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10201 | Cantonwine v. Fehling, 582 P.2d 592 | 13+61 | Before addressing ourselves to the specific problems concerning actions on promissory notes, it is important to echo several general principles relative to the accrual of causes of action. As observed in Bliler v. Boswell, supra, at 59 P. 803:A 'cause of action' is defined as matter for which an action may be brought. It is said to accrue to any person when that person first comes to a right to bring an action. A cause of action implies that there is some person in existence who can bring suit, and also a person who can lawfully be sued. Again, when a wrong has been committed, or a breach of duty has occurred, the cause of action has accrued, although the claimant may be ignorant of it. A cause of action does not accrue until the existence of such a state of things as will enable a person having the proper relations to the property or persons concerned to bring an action. 1 Bouv. Law Dict. (Rawle's Revision) p. 295. The statute of limitations is never held to have commenced to run upon a note until it has become due, and the duty has devolved upon the partyliable to make payment. | When a wrong has been committed, or a breach of duty has occurred, the cause of action has accrued, although claimant may be ignorant of it. | Does the cause of action accrue when a wrong has been committed or a breach of duty has occurred? | Action - Memo # 261 - C ES.docx | ROSS-003303347-ROSS-003303348 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10202 | Crosby v. Georgia Realty Co., 138 Ga. 746 | 13+62 | A cause of action must have existed at the time of the institution of the suit; and the fact that, pending the suit, the time arrived for the execution of a conveyance by the seller, and that he thereafter continued to repudiate the contract, would not authorize the action to proceed for the relief sought. | A cause of action must exist at the institution of a suit, and the fact that, pending the suit, the time arrives for performance, does not authorize the action to proceed for the relief sought. | Is existence of a cause of action necessary at the time of the institution of the suit? | 006363.docx | LEGALEASE-00126456-LEGALEASE-00126457 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10203 | Polizos v. Nationwide Mut. Ins. Co., 255 Conn. 601 | 13+61 | Against this background, we turn to General Statutes " 52-576(a), which provides in relevant part that, "[n]o action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues...." The question we must answer in the present case, then, is when the right of action for uninsured motorist benefits accrued under the plaintiff's contract with the defendant. "Applied to a cause of action, the term to accrue means to arrive; to commence; to come into existence; to becomea present enforceable demand." Coelho v. ITT Hartford, supra, 251 Conn. at 111, 752 A.2d 1063; D'Occhio v. Real Estate Commission, 189 Conn. 162, 182, 455 A.2d 833 (1983); Eising v. Andrews, 66 Conn. 58, 64, 33 A. 585 (1895); cf. Vaughn v. State Farm Mutual Automobile Ins. Co., 445 So.2d 224, 226 (Miss. ("[A] cause of action 'accrues' when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested.... [A] cause of action must be complete before it can be said to have 'accrued.' " [Internal quotation marks omitted.] ). "While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time when the plaintiff first could have successfully maintained an action." (Internal quotation marks omitted.) Coelho v. ITT Hartford, supra, at 111, 752 A.2d 1063; Engelman v. Connecticut General Life Ins. Co., 240 Conn. 287, 294 n. 7, 690 A.2d 882 (1997). | Applied to a cause of action, the term "to accrue" means to arrive, to commence, to come into existence, or to become a present enforceable demand. | What does the term accrue mean when applied to a cause of action? | Action memo# 295 C-PC.docx | ROSS-003298431-ROSS-003298432 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 10204 | Smyth v. Strader, 45 U.S. 404 | 8.30E+04 | The statutes of Alabama require the negotiability and character of bills of exchange, foreign and inland, and promissory notes, payable in bank, to be governed by the general commercial law. | Under the statutes of Alabama, the negotiability of bills of exchange, foreign and inland, and promissory notes payable in bank, depends on the general commercial law. | Should the negotiability and character of bills of exchange be governed by the general commercial law? | 010691.docx | LEGALEASE-00126434-LEGALEASE-00126435 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 10205 | McKenzie v. City of White Hall, 112 F.3d 313 | 148+2.2 | Although the district court cited regulatory taking cases when voicing its concern about jurisdiction, we agree with the McKenzies that this case involves a physical taking rather than a regulatory one. Appropriation of a public easement across a landowner's property is the taking of a property interest rather than a mere restriction on the land's use. See Nollan v. California Coastal Comm'n, 483 U.S. 825, 831, 107 S.Ct. 3141, 3145"46, 97 L.Ed.2d 677 (1987). The City's easement for a public right-of-way gives rise to future physical occupation of the McKenzies' land. See Yee v. City of Escondido, 503 U.S. 519, 527, 112 S.Ct. 1522, 1528, 118 L.Ed.2d 153 (1992); W.J. Jones Ins. Trust, 731 F.Supp. at 913. When the City took the conditional easement, the McKenzies lost their right to exclude the City from possession and use of the land should contingencies beyond their control arise. See Hall, 833 F.2d at 1277. | Appropriation of public easement across landowner's property is taking of property interest rather than mere restriction on land's use. U.S.C.A. Const.Amend. 5. | Is appropriation of a public easement across a landowner's property a taking? | 017613.docx | LEGALEASE-00126477-LEGALEASE-00126478 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10206 | Constance v. State Through Dep't of Transp. & Dev. Office of Highways, 626 So. 2d 1151 | 148+2.19(1) | Furthermore, it has long been recognized that a public body has the right, under its police power, to divert traffic without subjecting itself to liability. Ramelli v. City ofNew Orleans, 233 La. 291, 96 So.2d 572, 574 (1957). While recognizing that commercial property owners were inconvenienced by the narrowing of a major traffic artery to construct an overpass and by the diversion of traffic some 3000 feet, the Ramelli Court noted that the inconvenience was common to all property owners within the same vicinity. Accordingly, the Court affirmed the ruling of the trial court that the plaintiffs had sustained a loss without an injury in the legal sense. Similarly, other jurisdictions have concluded that a property owner has no protectable interest in such traffic flow, as opposed to access. William B. Stoebuck, Nontrespassory Takings in Eminent Domain 70 (1977). | Public body has right, under its police power, to divert traffic without subjecting itself to liability in inverse condemnation action. LSA-Const. Art. 1, S 4. | "Does a public body have the right, under its police power, to divert traffic without subjecting itself to liability?" | Eminent Domain - Memo 287 - GP.docx | ROSS-003285119-ROSS-003285120 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10207 | McGhee v. Witcher, 81 Ark. App. 255 | 414+1778 | Appellants correctly assert that waiver is an affirmative defense that must be specifically pled in one's answer or other responsive pleading, see Ward v. Russell, 32 Ark.App. 86, 796 S.W.2d 588 (1990), and it is true that appellees did not raise the issue in their initial responsive pleading, or even before the hearing on the merits, but instead first mentioned their theory of waiver in a letter to the court some time after that hearing had been concluded. However, at a posttrial hearing on the issue of waiver, appellants never objected to the untimely manner in which the waiver issue was raised, and therefore acquiesced in it. While we will not imply consent merely because evidence relevant to a properly pled issue incidentally tends to establish an unpled one, a party who knowingly acquiesces in the introduction of evidence relating to issues that are outside the pleadings is in no position to oppose a motion to conform. Id. Consequently, we cannot say that the trial court erred in considering the issue of waiver. | Landowners who sought to enjoin neighbors from operating a day care center out of their home acquiesced to introduction of neighbors' argument that landowners waived right to assert bill of assurance prohibiting commercial use of property, by failing to assert it until three years after they were notified that neighbors had filed for a permit to operate a day care in their home, even though neighbors did not raise the waiver issue in their initial responsive pleading, or even before the hearing on the merits, but instead first mentioned the theory in a letter to the court some time after the hearing had been concluded, where landowners never objected at a posttrial hearing to the untimely manner in which the waiver issue was raised. | Should waiver be specifically plead? | 023048.docx | LEGALEASE-00126698-LEGALEASE-00126699 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 10208 | Hickory Springs Mfg. Co. v. Evans, 541 S.W.2d 97 | 366+7(1) | The doctrine of subrogation is an equitable one, and it is recognized that the payment of an obligation by a surety entitles him to stand in the place of the creditor and be substituted to all of the rights of the creditor against the principal. Payne v. Standard Acc. Ins. Co., 259 S.W.2d 491 (Ky. 1952); Restatement of Security s 141; 73 Am.Jur.2d, Subrogation s 53. | The doctrine of subrogation is an equitable one and it is recognized that payment of an obligation by a surety entitles him to stand in the place of the creditor and be substituted to all of the rights of the creditor against the principal. | Can a surety paying the debt of his principal be entitled to stand in the condition of the creditor? | 043970.docx | LEGALEASE-00126489-LEGALEASE-00126490 | Condensed, SA | 0.35 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,944 | 14,873 | 21,876 | 9,029 |
| 10209 | Archer v. Utah State Land Bd., 15 Utah 3d 321 | 361+1551 | There are two additional matters that need to be mentioned. It is suggested that the Land Board is powerless to carry out the doctrine of sovereign immunity. Wilkinson v. State, 42 Utah 483, 134 P. 626, is cited to us as authority for this proposition. But this was action for damages and could have no application here where all that is sought is an order to have the Board comply with its statutory duty. We find no merit in this contention as applied to a mandamus proceeding. Finally, it is pointed out that during the interim between the filing of the original and the amended complaint that the amendment made by the 1961 legislature to Sec. 65-1-79 became effective whereby the Land Board became vested with authority to conduct hearings, make findings of fact, conclusions of law, and enter its orders thereon. Therefore, we are told, the district court lost jurisdiction because of this amendment to our statute. This question can best be resolved by stating that ordinarily the facts in any given lawsuit are to be applied as of the date of the filing of the original complaint. We see no good reason for departing from that basic rule in this case. | Ordinarily, facts and law in a given lawsuit are to be applied as of date of filing of original complaint. | "Ordinarily, are facts and law in a given lawsuit to be applied as of date of the filing of the original complaint?" | Action - Memo #169-C KBM.docx | GSSLGSLEGE0185859-N0SS-00338040 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 10210 | Nearing v. Golden State Foods Corp., 52 Wash. App. 748 | 241+52(2) | That section reads "Failing of statute? Actions, when deemed commenced for purposes or not commenced. For the purpose of tolling any statute of limitations and of staking this complaint is filed or summons is served, an action shall be deemed commenced when this complaint is filed or summons is served whenever occurs first, if service has not been had on the defendant prior to the expiration of the prescribed statute in conflict one or more of the defendants to be served personally, or commence publication within ninety days from the date of filing the complaint. If the action is commenced by service on one or more of the defendants or by publication, the plaintiff shall file the summons and complaint within ninety days from the date of service. If following service, the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations (italics ours.) | Statute providing that action shall be deemed commenced for purposes of tolling statute of limitations when complaint is filed or summons is served, whichever occurs first, has not been superseded by Superior Court rule governing commencement of actions or amended or impliedly repealed by housekeeping legislation that repealed statutes in conflict with rules. West's RCWA 2.04.190, 2.04.200, 4.16.170, CR 3, 81(b), RAP 1.1(g). West's RCWA Const. Art. 2, § 37. | Is the statute of limitations tolled by commencement of action? | Action - Memo #172-C KBM.docx | LEGALEASE-00016743-LEGALEASE-00016744 | Condensed, SA, SA | 0.49 | | 0 | 0 | 1 | |
| 10211 | Darrisaw v. Bd. of Higher Educ. of City of New York, 306 N.Y. 532 | 141E+440 | Section 903 is imperative that the teacher give either an affirmative or negative answer to the question posed even though the answer be false. The effect of an answer on the teacher's fitness to continue teaching is for the board of education or of higher education, and those bodies only, to say. Section 903 has no application only to the teacher who refuses to answer upon the ground that the answer would tend to incriminate him or her. The teacher also postpones the power to bring the statute into play. The assertion of the privilege against self-incrimination is equivalent to resignation, for in a Board of Education of City of New York, 197 Misc. 257, 95 N.Y.S.2d 398, affd. 278 App.Div. 343, 104 N.Y.S.2d 469, affd. 303 N.Y. 420; People ex rel. (Case cited.) They should work in the school system upon their own terms. (Case cited.) They may work in the school system upon the reasonable terms laid down by the proper authorities of New York. If they do not choose to work on such terms, they are at liberty to retain their present associations and give elsewhere." And, many years ago justice Holmes in McAuliffe v. City of New Bedford, 155 Mass. 216, 220, 29 N.E. 517 said similarly: "The petitioner (a policeman) may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. There are few employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as of idleness by the implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him. On the same principle, the city may impose any reasonable condition upon holding offices within its control | Larger parcel that requires that landowner establish that parcel being condemned is part of single tract, and that such three elements: unity of ownership, unity of use, and contiguity; determination is for jury unless it finds that all three elements are present. West's RCWA Const. Art. 1, § 16 as amended by Amend. 9. | What are the requirements of the larger parcel test under the taking laws? | 0176779.docx | LEGALEASE-00127269-LEGALEASE-00127270 | SA, Sub | 0.94 | | 0 | 0 | 1 | |
| 10212 | State v. Wandermere Co., 89 Wash. App. 369 | 148+137 | The larger parcel test that a landowner establish that the parcel being condemned is part of a single tract. The test has three elements: unity of ownership, unity of use, and contiguity (State v. Loney, 81 Wash.App. 543, 545, 911 P.2d 1230 (1975). Significantly, Taylor discussion, the determination is for the jury unless reasonable minds could not differ. West's RCWA 8.04.010 [4] 69(4) Loney, 8 Wash App. at 546, 507 P.2d 1206. | Clearly, the larger parcel test, if the test, but if the test, of public rights-of-way which obstructs the travel of an individual, the obstruction is to any way of abatement. The distinct judge found that what was a nuisance per se to the public rights-of-way is an individual, the trial court did not err in dismissing the State's criminal action against Deines. | What are requirements of the larger parcel test? | 0176779.docx | LEGALEASE-00127269-LEGALEASE-00127270 | Condensed, SA | 0.22 | | 1 | 0 | 1 | |
| 10213 | State v. Deines, 268 Kan. 432 | 200+158 | Clearly, Kansas case law dealing with public rights-of-way which obstructs the travel of an individual. The distinct judge found that what public right-of-way which obstructs the travel of an individual, the obstruction by way of abatement. So, as the nuisance per se, and the affected individual may remove the obstruction by way of abatement. The distinct judge found that what was a nuisance per se to the public right-of-way did not constitute the crime of criminal damage to property. Under these circumstances, the trial court did not err in dismissing the State's criminal action against Deines. | Where there is an obstruction across a public right-of-way which obstructs the travel of an individual, the obstruction is a nuisance per se and the affected individual may remove the obstruction by way of abatement. | Can an individual remove the obstruction by way of abatement which obstructs his travel across a highway? | 0180814.docx | LEGALEASE-00126990-LEGALEASE-00180991 | Condensed, SA | 0.7 | | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10214 | Estate of Djeljaj, 38 Misc. 3d 618 | 308+66 | Although the movant correctly notes that General Obligations Law " 5-1510 governs attorney-in-fact accounting proceedings, he is incorrect in contending that, because he was neither the decedent's attorney-in-fact nor a duly appointed fiduciary of the decedent's estate, he may not be compelled to account to the beneficiaries of the decedent's estate. Although not every agency relationship entails a duty to account, an agent who receives money or other things on behalf of a principal has a duty to keep and render to the principal an account for such transactions (Annotation, Availability of Equitable Remedy of Accounting Between Principal and Agent, 3 ALR2d 1310, " 5). Under the common law, even though an agent is not a trustee in the technical meaning of the word, where a court finds that the transactions are complicated, a fiduciary or trust relation exists, and there is a need for discovery, a court has the equitable power to compel an accounting by the agent (see Marvin v Brooks, 94 NY 71 [1883]; Talmudic Literature Publs., Inc. v Lewin, 226 App Div 1 [1929]). With regard to surrogate's court practice, it is well settled that those persons who undertake duties and responsibilities ordinarily performed by a fiduciary, even though they are not a court appointed fiduciary, may be classified as the de facto fiduciary of an estate or trust, and in that capacity, compelled to account to the beneficiaries of an estate or trust (see Matter of Sakow, 219 AD2d 479 [1995], affg in part and modfg in part on other grounds 160 Misc 2d 703 [1994], citing Matter of King, 194 AD2d 726 [1993]; Matter of Behr, 191 AD2d 431 [1993]; see also Matter of Donner, 82 NY2d 574 [1993]; Matter of Buxton, 1 Misc 3d 903[A], 2003 NY Slip Op 51492[U] [2003]). | Although not every agency relationship entails a duty to account, an agent who receives money or other things on behalf of a principal has a duty to keep and render to the principal an account for such transactions. | Is an agent obligated to maintain an account for funds collected on behalf of principal? | 041864.docx | LEGALEASE-00127166-LEGALEASE-00127167 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10215 | In re Monaco, 514 B.R. 477 | 366+41(6) | The party seeking to establish a right to equitable subrogation bears the burden of proof to show that the right exists. Babu, 340 S.W.3d at 925"26. Placing this burden on the party seeking to invoke the doctrine is consistent with the concept that the party seeking to invoke a court's jurisdiction has the burden to prove standing. See Alvarado Land Dev., Inc. v. Sewell (In re Sewell), 413 B.R. 562, 568 (Bankr.E.D.Tex.2009). Thus, Tag had the burden to demonstrate that SARMECO (1) involuntarily (2) paid a debt primarily owed by another (3) in a situation that favors equitable relief to prevent unjust enrichment. See Frymire, 259 S.W.3d at 142. | Under Texas law, the party seeking to establish a right to equitable subrogation bears the burden of proof to show that the right exists. | "Who bears the burden of proof to show the existence of the right to equitable subrogation, under law?" | 044251.docx | LEGALEASE-00127106-LEGALEASE-00127107 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10216 | McIndoe v. Dep't of Labor & Indus., 144 Wash. 2d 252 | 413+1 | In this state, injured workers' rights to benefits are statutory. Washington's workers' compensation law was enacted in 1911, the result of a compromise between employers and workers such that "sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy." RCW 51.04.010. Workers receive less than full tort damages but are spared the expense and uncertainty of litigation. See Dennis v. Dep't of Labor & Indus., 109 Wash.2d 467, 469-70, 745 P.2d 1295 (1987). The Industrial Insurance Act mandates that its provisions be "liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. Courts, therefore, are to resolve doubts as to the meaning of the IIA in favor of the injured worker. Kilpatrick v. Dep't of Labor & Indus., 125 Wash.2d 222, 230, 883 P.2d 1370, 915 P.2d 519 (1994). | Under the Industrial Insurance Act, injured workers receive less than full tort damages but are spared the expense and uncertainty of litigation. West's RCWA 51.04.010. | Are workers receiving less than full tort damages spared with the expense and uncertainty of litigation? | 048052.docx | LEGALEASE-00126966-LEGALEASE-00126967 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10217 | Turner v. Hunt, 131 Tex. 492 | 13+63 | The question is not strictly one of delay in instituting suit after the accrual of the cause of action, which is usually determinable by the period of limitation fixed by statute. Here the delay is in asserting the right by making selection of the particular acre. Turner waited nearly nine years and a half to select the one acre and gave no explanation of the delay. In Dull v. Blum, 68 Tex. 299, 301, 4 S.W. 489, it was held that a similar right was lost by an unexplained delay of twenty years in making choice of the land. It is our opinion that Turner's delay, a little less than ten years, though long and unexplained, cannot be held sufficient to defeat his right because the facts as to the effects of the delay have not been developed. Except in case of extreme delay like that in Dull v. Blum, supra, delay, which works no injury or no disadvantage to another, is not such laches as will bar a right. Coleman v. Zapp, 105 Tex. 491, 496, 151 S.W. 1040; Ross' Estate v. Abrams, Tex.Civ.App., 239 S.W. 705, 709; Abrams v. Ross' Estate, Tex.Com.App., 250 S.W. 1019; Tomahagen v. Sarber, Tex.Civ.App., 29 S.W.2d 438; Brady v. Garrett, Tex.Civ.App., 66 S.W.2d 502; 27 Tex.Jur. p. 29, " 12. It is said in Terry v. Prairie Oil & Gas Company, 5 Cir., 83 F.2d 843, that the plea of laches is not controlled by mere passage of time and always presents a question of fact. | The plea of laches is not controlled by mere passage of time and always presents a question of fact. | Is the plea of laches controlled by mere passage of time and always presents a question of fact? | Action - Memo # 648 - C KA.docx | ROSS-003312697-ROSS-003312698 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,544 | 14,873 | 21,876 | 9,079 |
| 102118 | Jones v. Foote, 165 Conn. 516 | 134+5 | The issuance of an injunction, which is an extraordinary remedy, requires, in a proceeding under General Statutes 44-5(?), allegations and proof that the plaintiffs are aggrieved and that their aggrievement constitutes a justiciable interest, in the controversy in question, one that, if it exists, is founded on the imminence of substantial and irreparable injury. Bendell v. Johnson, 153 Conn. 48, 51, 212 A.2d 199. The granting of an injunction rests on the sound discretion of the court and cannot be demanded as a matter of right. Glendora v. Mazza, 149 Conn. 502, 505, 182 A.2d 4. The unattacked findings of fact, including those that the plaintiffs had successfully completed their schooling, had graduated and had been licensed by the state, support the conclusion of the court that they did not suffer irreparable injury. A court will grant equitable relief, injunctive or otherwise, only on the situation or on a basis at the time of trial. Grievance Committee v. Dacey, 154 Conn. 129, 133-34, 222 A.2d 339; appeal dismissed, 386 U.S. 683, 87 S. Ct. 1325, 18 L.Ed.2d 404; Stavnezer v. Bratti Co. v. East Granby, 152 Conn. 319, 323, 201 A.2d 656; Hoxie v. Wisneger, 145 Conn. 106, 115, 139 A.2d 353. | A court will grant equitable relief, injunctive or otherwise, only on a situation or on a basis at the time of trial? | "Does the court grant equitable relief, injunctive or otherwise, on a situation as it exists at the time of trial?" | Action - Memo #155 C TM.docx | LEGALEASE 0017215-LEGALEASE 0017216 | Condensed_SA | 0.91 | 0 | | | 1 | |
| 102119 | Hawkins v. N. Carolina Dental Soc., 230 F. Supp. 805 | 134+5 | The determinations of fact and conclusions of law applicable to the plaintiff's request for a mandatory injunction are to be made from the facts and the law as they exist at the present, that is at the closing of the evidence in the case (Tennessee Nagin Scenic Directors Association v. Board of Directors of Trustees and Members of State Park assn.) 260 F. Supp. 365, 169 F. Supp. 241 (1955). | Determination of fact and conclusions of law applicable to the plaintiff's request for a mandatory injunction are to be made from facts and law as they exist at closing of evidence in case. | Are determinations of fact and conclusions of law applicable to a request for mandatory injunction? | 003905.docx | LEGALEASE 0017613-LEGALEASE 0017612 | Condensed_SA | 0.56 | 0 | | | 1 | |
| 102120 | State v. Ole Olsen, Ltd., 38 A.D.2d 967 | 134+5 | Moreover, in a nuisance action, the court may hold the relief to be granted to the exigencies of the case as they exist at the close of the trial, with reference to the facts, the law and the equities then existing (Matter of Golwyn, 1 A.D.2d 280, 295, 149 N.Y.S.2d 541; affd, 1 N.Y.2d 721, 177 N.Y.2d 708, 152 N.E.2d 666; Lightfoot v. Davis, 198 N.Y. 261, 273; 91 N.E. 582, 586). At bar, in our view, it is within the equitable power of the trial court, at the close of the trial, shall have determined that appellants created dangerous and unhealthy condition constituting a nuisance and that they should abate same, the other defendants (innocent purchasers of the properties and sufferers from the nuisance) will, at the court's discretion, permit appellants to enter into the present question-in order that the defective sewage disposal condition be immediately equitable. In that event, the court could direct in appeal or abate defendant to this action they could be compelled to cooperate with the abatement of the nuisance. | Court may, in equity action, model relief to be granted to exigencies of case as they exist at close of trial, with reference to facts, law and equities then existing. | Will equity administer such relief as exigencies of a case demand at the close of the trial? | Action - Memo #771 C SK.docx | LEGALEASE 0017322-LEGALEASE 0017321 | Order_SA | 0.84 | 1 | | | 1 | |
| 102121 | Full v. Turek, 38 Del. Ch. 182 | 134+5 | Defendant argues that if the Chancellor refuses in his discretion to give any form of preliminary relief, but nevertheless instructs the parties to proceed with the action but to dismiss the complaint and leave the parties to their remedy at law. The argument is fundamentally opposed to the generally accepted principle of equity jurisprudence that one equity has acquired jurisdiction of a cause, it will retain that jurisdiction to give final relief to end the controversy. This remains true even though circumstances have arisen after the filing of the complaint which made the equitable relief prayed for impracticable. 10 Del C. s 342. Chancellor expressly found that the defendant had no defense to the plaintiff's cause but that the passage of time after the filing of suit, in his opinion, made the award of equitable relief inappropriate. We note that further passage of time after the judgment was entered has made the granting of purely equitable relief not only inappropriate but improper. Nevertheless, despite his finding, the Vice-Chancellor retained jurisdiction to compensate the plaintiff for the damages occasioned by the defendant's breach of the contract. We think he was correct to so doing. | Once equity has acquired jurisdiction of a cause, it will retain that jurisdiction to give final relief to end the controversy? | "Once equity has acquired jurisdiction of a cause, will it retain that jurisdiction to give final relief to end the controversy?" | 000364.docx | LEGALEASE 0017610-LEGALEASE 0017611 | Condensed_SA | 0.79 | 0 | | | 1 | 1 |
| 102122 | Town of Huntington v. Mazzucoli, 133 Conn. 146 | 134+5 | In so far as the plaintiff sought injunctive relief, its right to it should have been determined as of the date of trial. Loew's Enterprises, Inc., v. International Alliance of T.S.E., 127 Conn. 415, 419, 17 A.2d 525. An action for a declaratory judgment is statutory and not equitable, Silberman v. McLaughlin, 129 Conn. 273, 276, 27 A.2d 634; nevertheless, it is intrinsically equitable in its nature that rights should be determined upon the facts in existence when the case is tried, and particularly is this so when it is sought as a basis for injunctive relief. Under the present General Statutes, certain distinctions as regards applications for original permits and application for renewal permits, the controlling provision is that a permit is good for one year after issuance, General Statutes, Cum. Sup. 1935, s 1606e; Sup 1941, s 824e renewal is not an extension of the term of the original permit, but the issuance of a new permit; and if an applicant cannot legally qualify for a permit when he applies for its renewal it is of no consequence that he could legally qualify when the original permit was issued. | In action for declaratory judgment, rights should be determined as of time when case is tried? | "In action for declaratory judgment, rights should be determined upon the facts in existence when the case is tried?" | Action - Memo #302 C TM.docx | ROSS-003290383-ROSS-003290384 | Condensed_SA, Sub 0.9 | 0.9 | 0 | | 1 | 1 | |

Appendix D

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10223 | People v. Montoya, 7 Cal. 4th 1027 | 67+3 | The crime of burglary consists of an act-unlawful entry-accompanied by the "intent to commit grand or petit larceny or any felony." (" 459.) One may be liable for burglary upon entry with the requisite intent to commit a felony or a theft (whether felony or misdemeanor), regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed. People v. Devlin (1904) 143 Cal. 128, 129-130, 76 P. 900; People v. Shaber (1867) 32 Cal. 36, 38; People v. Ravenscroft (1988) 198 Cal.App.3d 639, 643, 243 Cal.Rptr. 827; People v. Morales (1968) 263 Cal.App.2d 211, 214, 69 Cal.Rptr. 553; People v. Walters (1967) 249 Cal.App.2d 547, 550, 57 Cal.Rptr. 484; People v. Mitchell (1966) 239 Cal.App.2d 318, 328, 48 Cal.Rptr. 533; People v. Murphy (1959) 173 Cal.App.2d 367, 373, 343 P.2d 273; People v. Novo (1936) 12 Cal.App.2d 525, 528, 55 P.2d 915; 2 Witkin & Epstein, Cal.Criminal Law (2d ed. 1988) Crimes Against Property, " 663, p. 746. | One may be liable for burglary upon entry with the requisite intent to commit felony or theft, regardless of whether the felony or theft committed is different than that contemplated at time of entry or whether any felony or theft is actually committed. West's Ann.Cal.Penal Code S 459. | Does burglary require a theft to be committed? | Burglary - Memo 5 - RK.docx | ROSS-003326931-ROSS-003326932 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 10224 | Univ. Interscholastic League v. Midwestern Univ., 152 Tex. 124 | 1.41E+30 | Nobody can question that the public schools of this state "are quasi public entities and are subject to direct statutory control" by the Legislature. But it would be impracticable, if not impossible, for the Legislature to resolve all the minute problems inevitably arising in the operation and management of public schools; so, as the District recognizes in its Topical Contention (3), supra, it has delegated those duties to the local trustees by such enactments as Art. 2780, supra, including (as to District's trustees) the discretionary power to say who shall use Coyote Stadium and for what purpose. We are in accord with that proposition as well as the holding in Southwestern Broadcasting Co. v. Oil Center Broadcasting Co., Tex.Civ.App., 210 S.W.2d 230, error refused, N.R.E., cited by the District in support, that an independent school district, as a quasi municipal corporation, has the right to seek a profit out of football games played on its premises; in the exercise of which it has the same freedom as a private person or corporation in putting on the games, when that freedom is exercised to further the interests of the district. | Public schools of state are quasi public entities and are subject to direct statutory control by Legislature. Vernon's Ann.Civ.St. arts. 2656, 2780. | Are public schools of state quasi public entities and subject to direct statutory control by Legislature? | 016898.docx | LEGALEASE-00127588-LEGALEASE-00127589 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10225 | Baird v. United States, 5 Cl. Ct. 324 | 148+2.1 | Plaintiffs must also prove "an intent on the part of the defendant to take plaintiff's property or an intention to do an act the natural consequence of which was to take its property." Columbia Basin Orchard v. United States, 132 Ct.Cl. at 450, 132 F.Supp. 707; see also Bettini v. United States, at 760; Berenholz v. United States, 1 Cl.Ct. 620, 626"28 (1982), aff'd, 723 F.2d 68 (Fed.Cir.1983). The government's "intent * * * to appropriate the property to the use of the public, or to deprive the owner of the beneficial use of it for the benefit of the public," see Columbia Basin Orchard v. United States, 132 Ct.Cl. at 452, 132 F.Supp. 707, may be inferred. As Bettini and Berenholz note, it is the "likelihood of the outcome" of the government's action that distinguishes its takings from its torts. Bettini v. United States, at 760; Berenholz v. United States, 1 Cl.Ct. at 628. | Plaintiffs must prove an intent on part of defendant to take plaintiffs' property or an intention to do an act the natural consequence of which was to take property to establish compensable taking. | "For a taking to occur should there be an intent on the part of defendant to take plaintiffs' property, or an intention to do an act the natural consequence of which was to take their property?" | 017690.docx | LEGALEASE-00127364-LEGALEASE-00127365 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 10226 | Harris v. Shotwell, 490 S.W.2d 860 | 307A+517.1 | Plaintiffs moved for a non-suit. Without necessity of citation of law we have taken note that for plaintiffs to obtain a non-suit of their affirmative action is an absolute right, and, where as in the instant case there is no affirmative relief sought to be obtained by the defendant such plaintiffs' action operates to force and effect a dismissal of the entire case. The termination of suit which results is without prejudice to the right of the same plaintiffs, by a subsequently filed suit, to come back into court and seek the identical relief which was their objective in the non-suited action. Were such done it would probably be necessary for the defendant to again obtain depositions taxable as costs in that case (though initially at her own expense as in the case originally brought) in preparation of a defense. | Plaintiffs have absolute right to obtain a nonsuit of their affirmative action, and where there is no affirmative relief sought to be obtained by defendant, such nonsuit operates as a dismissal of the entire case. | Do plaintiffs have an absolute right to obtain a nonsuit of their affirmative action? | 026123.docx | LEGALEASE-00127990-LEGALEASE-00127991 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 10227 | Delta Elec. Power Ass'n v. Mississippi Power & Light Co., 250 Miss. 482 | 317A+113 | Prior decisions interpreting the Public Utility Act have established two propositions: (1) Awards by the Commission of grandfather certificates under Section 5 are made on an area rather than a facility basis; (2) A certificate of convenience and necessity issued by the Commission is a valuable right which is entitled to protection by the courts. | Awards by public service commission of grandfather certificates under Public Utility Act are made on area rather than facility basis. Laws 1956, c. 372, S 5(b). | Are awards of grandfather certificates under Section 5 made on area rather than facility basis? | Public Utilities - Memo 223 - AM.docx | ROSS-003298788-ROSS-003298789 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 10228 | S. Bell Tel. & Tel. Co. v. City of Meridian, 241 Miss. 678 | 317A+113 | Appellant's rights were not lost because its predecessors obtained franchises from Meridian and other municipalities. The making of such agreements is not inconsistent with the claim of a contractual right to use the streets. The city can regulate under its police power, and a utility has a right to maintain cooperative relationships with a municipality without waiving its rights under a statutory grant. Northwestern Tel. Exchange Co. v. City of Minneapolis, 81 Minn. 140, 86 N.W. 69, 53 L.R.A. 175, 188; (1900); Traverse City v. Consumers Power Co., supra; State ex rel. Larimer v. Chariton Tel. Co., 1916, 173 Iowa 497, 155 N.W. 968. Moreover, these acts, and the use of eminent domain powers subsequent to the 1890 Constitution do not constitute a waiver by appellant of its franchise, under Miss. Constitution Sec. 179. Sec. 16, the contract clause, is of equal dignity with and must be read along with Sec. 179. Where abandonment or waiver of a vested property right is claimed, the intention to abandon or waive it must be shown by "full and clear" evidence. There is no evidence to that effect here. See Columbus and Greenville Railway Co. v. Dunn, 184 Miss. 706, 185 So. 583 (1939). | A utility may maintain cooperative relationship with municipality without waiving its rights under statutory grant. | Does a utility have a right to maintain cooperative relationships with a municipality without waiving its rights under a statutory grant? | 042454.docx | LEGALEASE-00127490-LEGALEASE-00127491 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10229 | Ed & F Man Biofuels Ltd. v. MV FASE, 728 F. Supp. 2d 862 | 386+8 | A trespass to chattels is a wrongful interference with or injury to property that causes actual damage to the property or deprives the owner of its use for a substantial period of time. Omnibus Int'l, Inc. v. AT & T, Inc., 111 S.W.3d 818, 826 (Tex.App.-Dallas 2003, pet. granted, remanded by agreement); Zapata v. Ford Motor Credit Co., 615 S.W.2d 198, 201 (Tex.1981). Trespass to chattel is distinguished from conversion in Texas: "Texas classifies an interference with a chattel that "compels the defendants to pay the full value of the thing with which he has interfered" as conversion; but, if the interference with chattel does not require the defendant to pay full value, it "may constitute trespass to chattels." " Omnibus, 111 S.W.3d at 826, quoting Prosser & Keeton on Torts " 14, at 85"86 (5th ed.1984). | Under Texas law, a trespass to chattels is a wrongful interference with or injury to property that causes actual damage to the property or deprives the owner of its use for a substantial period of time. | Is wrongful interference with the property of another a trespass to chattels? | 047293.docx | LEGALEASE-00128032-LEGALEASE-00128033 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 10230 | Birklid v. Boeing Co., 127 Wash. 2d 853 | 413+1 | Our formulation here of the deliberate intention to injure exception to exclusivity is narrowly focused to deter just such wrongful workplace behavior. The grand compromise of 1911 established in Washington's Industrial Insurance Act remains intact. Although the court in Stertz v. Indus. Ins. Comm'n, 91 Wash. 588, 590"91, 158 P. 256 (1916), may have been correct in stating that in 1916 everyone "agreed that the blood of the workman was a cost of production," that statement no longer reflects the public policy or the law of Washington. | Statement "blood of the workman is a cost of production" no longer reflects the public policy or law of Washington. | Does the statement blood of the workman is a cost of production reflect a states public policy or law? | 048471.docx | LEGALEASE-00127368-LEGALEASE-00127369 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10231 | Bradshaw v. Park, 29 Cal. App. 4th 1267 | 413+1 | In construing a statute, a court should ascertain the legislative intent in order to carry out the purpose of the law. (DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382, 387, 20 Cal.Rptr.2d 523, 853 P.2d 978.) The underpinnings of the workers' compensation system rest upon the employer's obligation to secure payment of workers' compensation. (Self"Insurers' Security Fund v. ESIS, Inc. (1988) 204 Cal.App.3d 1148, 1156, 251 Cal.Rptr. 693.) This statutory obligation begins with the inception of the status as employer and does not depend upon the making of a claim. (Ibid.) | Underpinnings of workers' compensation system rest upon employer's obligation to secure payment of workers' compensation. | Do the underpinnings of the workers compensation system rest upon the employers obligation to secure payment of workers compensation? | 048514.docx | LEGALEASE-00127455-LEGALEASE-00127456 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10232 | Werber v. Atkinson, 84 A.2d 111 | 13+65 | A plaintiff's right to recover depends upon his right at the inception of the suit, and the non-existence of a cause of action when the siut was begun is a fatal defect which can not be cured by the accrual of a cause of action pending suit. If a plaintiff at the time he files his complaint has no cause of action, he can not by amendment or supplemental complaint introduce a cause of action that accrues thereafter even though it arises out of the same transaction that is the subject of the original complaint. A suit which is prematurely brought can not be maintained, even if the cause of action has accrued by the time the cause is called for trial, nor can an amended petition in such a case set up a cause of action which has not accrued at the time the original petition was filed. A complaint in a suit at law can not properly be amended to embrace a cause of action arising since the suit was begun. An amendment dates back to the time of the filing of the original complaint. In cases thus prematurely brought, the proper procedure is to dismiss the action without prejudice to the bringing of another action when the cause of action actually accrues. | A plaintiff's right to recover depends upon his right at inception of suit, and nonexistence of a cause of action when suit was begun is a fatal defect which cannot be cured by accrual of a cause of action pending suit. | Is the nonexistence of a cause of action when suit is commenced fatal? | 005995.docx | LEGALEASE-00128289-LEGALEASE-00128290 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10233 | Deas v. Sammons, 126 Ga. 431 | 13+65 | When the common-law form of ejectment is adopted, the plaintiff may lay as many demises as he pleases, and, if he show title under any one of them, he may recover. He may also add new demises by way of amendment at any time when it is necessary to maintain his suit. When the plaintiff does not adopt the common-law form of ejectment, he is required to attach to his petition an abstract of the title relied on. This abstract is treated, for many purposes, as containing what would be the demises under the common-law form. It may be amended by adding different and other muniments of title under which the plaintiff claims. Willis v. Meadors, 64 Ga. 721. The general rule is that there can be no recovery unless the plaintiff had a complete cause of action at the time the suit is filed. A cause of action accruing pending the suit will not entitle the plaintiff to recover. Baker v. Tillman, 84 Ga. 402, 11 S. E. 355; Wadley v. Jones, 55 Ga. 329; Gentry v. Walker, 101 Ga. 123, 28 S. E. 607; Harris v. Moss, 112 Ga. 95, 37 S. E. 123 (3). This rule is applicable both to the common-law form of ejectment and the action to recover land authorized by the Code. The English Court of King's Bench would not suffer a demise to be laid subsequent to the day of the delivery of the declaration, on the ground that this would be to give to the lessor of the plaintiff a right of action which did not subsist at the time of the commencement of the action. Tyler on Ejectment, 402. The same rule has been announced in this country in numerous cases. 15 Cyc. 29. In Johnston v. Jones, 66 U. S. 224, 17 L. Ed. 117, Mr. Justice Swayne remarked: "In ejectment the plaintiff must recover, if at all, upon the state of his title as it subsisted at the commencement of his suit. Evidence of any after-acquired title is wholly inadmissible." And the same justice, in McCool v. Smith, 66 U. S. 470, 17 L. Ed. 218, said: "The rule of the common law is inflexible that a party can recover only upon a title which subsisted in him at the time of | The general rule is that there can be no recovery unless the plaintiff had a complete cause of action at the time the suit was filed. A cause of action accruing pending the suit will not entitle the plaintiff to recover. | Can there be a recovery unless the plaintiff has a complete cause of action at the time suit is filed? | 006113.docx | LEGALEASE-00128247-LEGALEASE-00128248 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10234 | Texas State Optical v. Optical Workers Union, 257 S.W.2d 493 | 13+65 | The right to temporary relief ordinarily is determined as of the time the trial court hears the prayer for that relief. See: Evans v. Santana Live Stock & Land Company, 81 Tex. 622 at page 625, 17 S.W. 232; Allen v. Abernethy, Tex.Civ.App., 151 S.W. 348; Ross v. Veltmann, Tex.Civ.App., 161 S.W. 1073; Easter Oil Corp. v. Wilbarger County, Tex.Civ.App., 30 S.W.2d 438; Polk v. Holland Texas Hypotheek Bank, Tex.Civ.App., 66 S.W.2d 1112, at page 1116 (Hn. 6); Doughty v. De Fee, Tex.Civ.App., 152 S.W.2d 404, at page 409 (Hn. 14); Davis v. Upshur County, Tex.Civ.App., 191 S.W.2d 524; 28 Am.Jur. 201 (Sec. 8); 43 C.J.S., Injunctions, ss 29, 198, 217, pp. 460, 912, 955. And if the picketing were solely for a lawful object when the trial court acted, we think this rule of decision should have been applied. The first branch of plaintiffs' argument is accordingly overruled. | The right to temporary relief ordinarily is determined as of the time the trial court hears the prayer for that relief. | Is the right to temporary relief ordinarily determined as of the time the trial court hears the prayer for that relief? | 006125.docx | LEGALEASE-00128314-LEGALEASE-00128315 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10235 | Gibreal Auto Sales v. Missouri Val. Mach. Co., 186 Neb. 763 | 13+65 | It is true that the plaintiff returned the tractor to Welty after instituting this replevin action. However, that fact is not a relevant consideration for determination of this case since, under our law, facts that transpire after the institution of a replevin action are immaterial in the consideration and determination of the merits of the case. Alliance Loan & Investment Co. v. Morgan, 154 Neb. 745, 49 N.W.2d 593 (1951). | Facts that transpire after institution of replevin action are immaterial in consideration and determination of merits of the case. | Are facts that transpire after the institution of a replevin action immaterial in consideration and determination of merits of the case? | 006134.docx | LEGALEASE-00128403-LEGALEASE-00128404 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 10236 | Encore Prods. v. Promise Keepers, 53 F. Supp. 2d 1101 | 25T+210 | Under the federal common law of arbitrability, an arbitration provision in a contract is held to survive the termination of that contract unless there is clear evidence that the parties intended to override this presumption. See Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union, 430 U.S. 243, 255, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) ("where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication."); Riley, 157 F.3d at 781.Even if the Termination Agreement effectively terminated the entire Service Contract, including its arbitration provision, "when a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute. This is so even if the facts of the dispute occurred after the contract expired." Riley, 157 F.3d at 781; see also Hinson v. Jusco Co., 868 F.Supp. 145, 148 (D.S.C.1994) (the subsequent agreement did not supersede the arbitration clause and the dispute, "whether said to have arisen under the [subsequent agreement], the [original agreement containing the arbitration clause], or some mixture of the two, is within the scope of the arbitration clause contained in the [original contract]"). | When a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute, even if the facts of the dispute occurred after the contract expired. | Can courts order arbitration when the contract requiring arbitration has expired? | Alternative Dispute Resolution - Memo 460 - RK.docx | LEGALEASE-00018090-LEGALEASE-00018091 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10237 | Richter v. United States, 181 F.2d 591 | 34+20.1(1) | In advance of his principal argument, appellant contends that Congress has no constitutional power to raise a peacetime army by conscription. There is no merit to this claim. The government has the right to the military service of all of its able-bodied citizens, and may, when an emergency arises, justly exact that service from all. In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636. The power to raise and support armies is not limited to time of war. Congress has the power to compel military service of a citizen in peacetime or wartime, whenever it declares that it is necessary or that an emergency exists requiring the raising of an army. United States v. Herling, 2 Cir., 120 F.2d 236; United States v. Garst, D.C., 39 F.Supp. 367; United States v. Lambert, 3 Cir., 123 F.2d 395. | Congress can compel military service for all able-bodied citizens in peacetime or wartime, whenever it declares that it is necessary or that emergency exists requiring raising of army. Selective Service Act, S 1 et seq., 50 U.S.C.A.Appendix, S 451 et seq. | Does Congress have the power to compel military service in peacetime? | Armed Forces - Memo 20 - RK.docx | ROSS-003300742-ROSS-003300743 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 10238 | Easley v. Hunter, 209 F.2d 483 | 34+1 | Furthermore we agree with the District Court that the allegations of the petition and the record of the court-martial trial did not invoke its jurisdiction. Prior to the adoption of the Uniform Code of Military Justice, the Congress acting under Article 1, Sec. 8, Clause 14 of the Constitution, enacted regulations known as the Articles of War, 10 U.S.C.A. " 1471 et seq., for the government and regulation of the land and naval forces of the United States. From early times, our courts have recognized that the Constitution confers upon Congress, and not the courts, the power to provide for the trial and disposition of offenses committed by those in the armed forces and that the civil courts are limited to a consideration of the jurisdiction of courts-martial and that they have no supervisory or correcting power over their decisions. Hiatt v. Brown, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691; In re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499; United States v. Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636. It has been indicated in a number of cases that the power of Congress in the government of the land and naval forces of the United States are not affected by any of the constitutional amendments. Hiatt v. Brown, supra; Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255; Ex parte Quirin, 317 U.S. 1, 63 S.Ct. 1, 87 L.Ed. 3; Ex parte Milligan, 4 Wall. 2, 71 U.S. 2, 138, 18 L.Ed. 281. The Articles of War and the Uniform Code of Military Justice both provide that the decisions of the appellate military tribunals shall be final and binding upon the courts. 10 U.S.C.A. " 1521(h); 50 U.S.C.A. " 663. These statutory provisions do not deprive civil courts of jurisdiction of habeas corpus jurisdiction in proper cases. Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508; Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146. | Power of Congress in government of land and naval forces of United States is not affected by any of constitutional amendments. U.S.C.A.Const. Amends. 5, 6, 8. | Is the power of congress to govern the land and naval forces affected by any constitutional amendments? | 008324.docx | LEGALEASE-00128610-LEGALEASE-00128611 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10239 | Jacobsen v. Ragsdale, 160 Ill. App. 3d 656 | 307A+501 | As has been stated often in recent decisions of this court, the voluntary dismissal statute grants plaintiffs the absolute privilege to dismiss regardless of the circumstances or motive. Rohr v. Knaus (5th Dist.1987), 153 Ill.App.3d 1013, 106 Ill.Dec. 834, 506 N.E.2d 634; Kern v. Peabody Coal Co. (5th Dist.1987), 151 Ill.App.3d 807, 104 Ill.Dec. 662, 502 N.E.2d 1322; Russ v. Gandhy (5th Dist.1986), 149 Ill.App.3d 660, 102 Ill.Dec. 931, 500 N.E.2d 1032; Davis v. International Harvester Co. (5th Dist.1985), 139 Ill.App.3d 264, 93 Ill.Dec. 718, 487 N.E.2d 385; Bailey v. State Farm Fire & Casualty Co. (5th Dist.1985), 137 Ill.App.3d 155, 92 Ill.Dec. 7, 484 N.E.2d 522. | Voluntary dismissal statute grants plaintiffs absolute privilege to dismiss regardless of circumstances or motive. S.H.A. ch. 110, P 2-1009. | Do the voluntary dismissal statute grant plaintiffs the absolute privilege to dismiss regardless of the circumstances or motive? | 038996.docx | LEGALEASE-00128219-LEGALEASE-00128220 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10240 | Page v. Holiday Inns, 245 Ga. 12 | 307A+501 | A voluntary dismissal under Code Ann. s 81A-141(a) is a matter of right and terminates the action. It is not a judgment of the court but it is an order in the case byvirtue of the statute. Code Ann. s 81A-160(g) provides, "(c) lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court... ." In our opinion a voluntary dismissal is an "order" within the meaningof Code Ann. s 81A-160(g), and subject to correction as provided therein. | A voluntary dismissal is a matter of right and terminates the action; it is not a judgment of the court but is order in the case by virtue of statute. Code, SS 81A-141(a). | Is voluntary dismissal of an action a matter of right and terminates the action? | Pretrial Procedure - Memo # 964 - C - TJ.docx | ROSS-003286878-ROSS-003286879 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 10241 | James v. Calkins, 446 S.W.3d 135 | 307A+501 | The Supreme Court reversed. Although typically parties have an absolute right to a nonsuit, the decision to nonsuit does not affect a non-moving party's independent claims for affirmative relief, which may include a motion for sanctions. Id. at 469"70. "Whether a particular sanction is considered a claim for affirmative relief that survives a nonsuit for later enforcement or appeal depends on the purpose of the sanction." Id. at 470. The Supreme Court reasoned: Allowing defendants to seek sanctions under the MLIIA for attorney's fees and dismissal with prejudice deters claimants from filing meritless suits. Removing a defendant's ability to appeal a denial of a motion for sanctions after a nonsuit frustrates this purpose; a claimant could simply nonsuit a meritless claim and later re-file the claim with impunity. Therefore, because the purpose of the sanctions under the MLIIA survived Trejo's nonsuit of her claims, we hold that Villafani's motion was for sanctions that survive a nonsuit and could be the subject of an appeal. | Although typically parties have an absolute right to a nonsuit, the decision to nonsuit does not affect a non-moving party's independent claims for affirmative relief, which may include a motion for sanctions. | "Can a party nonsuit a cause of action, a claim, or a party?" | 039174.docx | LEGALEASE-00128312-LEGALEASE-00128313 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10242 | Cook v. Nacogdoches Anesthesia Grp., L.L.P., 167 S.W.3d 476 | 307A+501 | The movant may choose to take a nonsuit as to some parties and claims without nonsuiting the rest of the parties and claims. See Tex.R. Civ. P. 162, 163; see Mainland Sav. Ass'n v. Wilson, 545 S.W.2d 491, 493 (Tex. App.-Houston [1st Dist.] 1976, no writ). A plaintiff may take a nonsuit at anytime before the trial court grants a summary judgment. Leon Springs Gas Co. v. Rest. Equip. Leasing Co., 961 S.W.2d 574, 577 (Tex.App.-San Antonio 1997, no pet.); Taliaferro v. Smith, 804 S.W.2d 548, 550 (Tex. App.-Houston [14th Dist.] 1991, no writ). [(The party requesting a nonsuit has an absolute right to a nonsuit at the moment the motion is filed with the clerk, so long as the motion is timely filed. See Hooks v. Fourth Court of Appeals, 808 S.W.2d 56, 59 (Tex.1991); BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 840 (Tex.1990). | The party requesting a nonsuit has an absolute right to a nonsuit at the moment the motion is filed with the clerk, so long as the motion is timely filed. | Does the party requesting a nonsuit have an absolute right to a nonsuit at the moment the motion is filed with the clerk? | Pretrial Procedure - Memo # 977 - C - SB.docx | ROSS-003327363-ROSS-003327364 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10243 | Travelers Ins. Co. v. Hartford Acc. & Indem. Co., 222 Pa. Super. 546 | 366+35 | The court below is correct in citing our adherence to the time-honored principle that an injured party must consolidate into a single action against a wrongdoer all damages arising out of a tort. Fields v. Philadelphia Rapid Transit Co., 273 Pa. 282, 117 A. 59 (1922); Moltz, to Use of Royal Indem. Co., v. Sherwood Bros., Inc., 116 Pa.Super. 231, 176 A. 82 (1935). As a subrogee derives his right to recovery from the injured party, the prohibition against splitting of actions is no less binding where the interest of a subrogee is involved. Moltz, to Use of Royal Indem. Co., v. Sherwood Bros., Inc., supra; Spinelli v.Maxwell, 430 Pa. 478, 243 A.2d 425 (1968). The trial court is also correct in concluding that, despite language to the contrary in an early case, more recent precedents indicate that the right of subrogation is not self-executing once payment has been made to, or on behalf of, the legal plaintiff and notice has been given to the defendant; but that the subrogee must exercise "reasonable diligence" to protect its interest. Saber v. Supplee-Wills-Jones Milk Co., 181 Pa.Super. 167, 124 A.2d 620 (1956); Moltz, to Use of Royal Indem. Co., v. Sherwood Bros., Inc., supra. | Right of subrogation is not self-executing once payment has been made to, or on behalf of, legal plaintiff, and notice has been given to defendant; subrogee must exercise reasonable diligence to protect his interest. | Can subrogation be self-executing? | 043268.docx | LEGALEASE-00128407-LEGALEASE-00128408 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10244 | In re Hussain, 508 B.R. 417 | 83E+658 | First, the Debtor essentially negotiated the checks to the Maliks. The checks were negotiable instruments. See Cal. Com.Code " 3104; Spencer v. Sterling Bank, 63 Cal.App.4th 1055, 1058, 74 Cal.Rptr.2d 576 (1998). As the checks were signed by the Debtor without a payee, they were payable to bearer and, thus, enforceable by any person in possession of the checks. See Cal. Com.Code "" 3109; 3205; 3301. | Under California law, checks that were signed without a payee were payable to bearer and, thus, were enforceable by any person in possession of the checks. West's Ann.Cal.Com.Code SS 3109, 3205, 3301. | Are checks signed without a payee enforceable by any person in possession of them? | 009358.docx | LEGALEASE-00129010-LEGALEASE-00129011 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 10245 | In re Judiciary Tower Associates, 175 B.R. 796 | 289+821 | The Trustee asserts that the "bulk" of the Suburban Glass claim arose while Bramlett was a general partner, and that in any event Bramlett is liable for the entire claim pursuant to D.C.Code " 41"135. Under " 41"135(a) the dissolution of the partnership does not in and of itself discharge the existing liability of any partner. Under " 41"135(b), a former partner will be released by agreement, express or implied, of the former partner, the creditor and the partnership. Under " 41"135(c), a former partner will be released by the consent of the creditor to a material alteration in the nature or time of payment of the obligation. Thus, where a partner withdraws from a partnership under an agreement with his former partners, and the remaining partners continue the business, the departing partner remains liable for partnership obligations incurred prior to his withdrawal unless the creditor modifies the obligation or agrees to release the partner. See White v. Brown, 292 F.2d 725 (D.C.Cir.1961). | Where partner withdraws from partnership under agreement with former partners, and remaining partners continue business, departing partner remains liable for partnership obligations incurred prior to his withdrawal, under District of Columbia law, unless creditor modifies obligation or agrees to release partner. D.C.Code 1981, S 41-135. | Will a retiring partner be discharged from liabilities if the creditor consents to it? | Partnership - Memo 223 - RK.docx | LEGALEASE-00018681-LEGALEASE-00018682 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10246 | Second Measure v. Kim, 143 F. Supp. 3d 961 | 289+945 | The fiduciary duties imposed by statute include the duty to account to the partnership for profits and for benefits "derived from a use by [a] partner of partnership property or information, including the appropriation of a partnership opportunity." Cal. Corp. Code " 16404(b)(1). As described with respect to Counterclaims 1 and 3, these fiduciary duties persist after dissolution of the partnership such that a partner may not "divert partnership opportunities for his personal benefit to the detriment of his former partners or...exclude the ex-partner from the benefits of an existing partnership opportunity." Crouse v. Brobeck, Phleger & Harrison, 67 Cal.App.4th 1509, 1551, 80 Cal.Rptr.2d 94 (1998) (citations omitted). | The continuing fiduciary duty which survives dissolution of the partnership under California law is breached if the ex-partner attempts to divert partnership opportunities for his personal benefit to the detriment of his former partners or when the remaining partners exclude the ex-partner from the benefits of an existing partnership opportunity. | Do partners continue to have a fiduciary duty after the dissolution of a partnership? | 022026.docx | LEGALEASE-00128952-LEGALEASE-00128954 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 10247 | Lampert Lumber Co. v. Joyce, 405 N.W.2d 423 | 307A+587 | In this case, Joyce has not abused the litigation process. She has not refused tofollow the rules or any directives of the court. No sanction is warranted. Joyce says because her cross-claim failed to state a claim, she "failed to comply" with Rule 12.02 and, therefore, the trial court may dismiss her claim. But the need to comply with Rule 12 is Joyce's need, not a need ofthe trial court in managing its docket. Failure to plead or prove a case goes to the substantive legitimacy of the case itself and is not the kind of procedural problem to be resolved by a Rule 41.02(1) dismissal. | Failure to plead or prove case goes to substantive legitimacy of case itself and is not kind of procedural problem to be resolved by dismissal under rule permitting trial court on its own motion, or upon motion of party, to dismiss action or claim for failure to prosecute or to comply with rules or court order. 48 M.S.A., Rules Civ.Proc., Rule 41.02(1). | Does a failure to plead or prove a case go to a substantive legitimacy of a case itself? | Pretrial Proceedure - Memo # 1141 - C - TJ.docx | ROSS-003313695-ROSS-003313696 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 10248 | Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218 | 25T+143 | Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that "is on its face within the purview of the clause," or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Rochdale Vill., Inc. v. Pub. Serv. Employees Union, 605 F.2d 1290, 1295 (2d Cir.1979); see also Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 64 (2d Cir.1983). Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. See Cornell Univ. v. UAW Local 2300, 942 F.2d 138, 140 (2d Cir.1991). Where the arbitration clause is broad, "there arises a presumption of arbitrability" and arbitration of even a collateral matter will be ordered if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under it." Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir.1995) | Under narrow arbitration clause, dispute is subject to arbitration only if it is over issue that is on its face within purview of clause, or over collateral issue that is somehow connected to main agreement that contains arbitration clause, and collateral matter will generally be beyond its purview. | How do courts construe narrow arbitration clauses? | 007310.docx | LEGALEASE-00129101-LEGALEASE-00129102 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 10249 | State ex rel. Yale Univ. v. Sartorius, 349 Mo. 1039 | 250+4(1) | The point is urged that relator has an adequate remedy under Section 1189, R.S.'39, Mo.R.S.A. " 1189, in relation to special appeals, or by suing out a writ of error, underSection 1200, R.S. '39, Mo.R.S.A. " 1200, and, therefore, mandamus will not lie. But thedifficulty with this position is this: If respondent is correct in its assertion that relator is not entitled to a review of the decree in question because it is not aggrieved thereby, then, by the same token, it follows that it would not be entitled to review by special appeal or writ of error. A writ of error is a writ of right, and issues as of course [Section **985 1200, R.S. '39], but it has been held that it must contain on its face the evidence of the right of the plaintiff in error to a review. Fidelity Trust Co. v. Mexico, S.F. & P. Traction Co., 270 Mo. 487, 194 S.W. 52. It cannot be successfully maintained that relator's bare legal right to the issuance of a writ of error would constitute an adequate remedy under the facts here involved. Moreover, theallowance of an appeal by special order under Section 1189, supra, is only permissive anddiscretionary, and conditioned upon error (against the party applying) affirmatively appearing from an inspection of the record. There is no such burden under the ordinary procedure invoked by relator. It is well-settled that a party cannot pursue both remedies, appeal and writ of error, simultaneously, so ifa party is entitled to an appeal, we would not be disposed to deny mandamus to compel theallowance thereof because of his failure to take the further step suggested. | A party cannot simultaneously pursue both the remedies of appeal and writ of error, and, if a party is entitled to an appeal, Supreme Court will not deny mandamus to compel allowance thereof because of his failure to apply for a special appeal under statute or to sue out a writ of error. R.S.1939, SS 1189, 1200 (V.A.M.S. SS 512.101 note, 512.060, 512.080). | Can a party pursue an appeal and a writ of error simultaneously? | Appeal and error - Memo 44 - RK.docx | ROSS-003327527-ROSS-003327529 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 10250 | Koota v. Parkway Gen. Hosp., 346 So. 2d 124 | 30+307.1 | The threshold issue which we are confronted with prior to considering this question is whether the judicial referee of a medical mediation panel may properly certify a question of law to a district court of appeal. We hold that the judicial referee has no such authority and decline to answer the certified question.Fla.App. Rule 4.6(a) provides as follows:"When it shall appear to a judge of the lower court that there is involved in any cause pending before him questions or propositions of law that are determinative of the cause and are without controlling precedent in this state and that instruction from the Court will facilitate the proper disposition of the cause, said judge, on his own motion or on motion of either party, may certify said question or proposition of law to the Court for instruction." (Emphasis added) | Judicial referee of medical mediation panel was not a "judge of a lower court" within meaning of rule providing that judge of lower court may certify question or proposition of law for instruction and had no authority to certify question to the District Court of Appeal, which therefore declined to answer certified question and remanded cause to referee to proceed in accordance with his general statutory authority to supervise and direct mediation proceedings. 32 West's F.S.A. Florida Appellate Rules, rules 4.6, 4.6, subd. a; West's F.S.A. SS 768.44, 768.44(2)(g). | Can certified questions of law be submitted for review to courts of appeal? | 008209.docx | LEGALEASE-00129091-LEGALEASE-00129092 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 10251 | State ex rel. D.L.S., 446 S.W.3d 506 | 30+23 | Subject-matter jurisdiction is fundamental to this Court's authority to dispose of cases, and we may raise the issue sua sponte at any time. Juarez v. Tex. Ass'n of Sporting Officials El Paso Chapter, 172 S.W.3d 274, 277"78 (Tex.App.-El Paso 2005, no pet.). Mootness defeats a court's subject-matter jurisdiction over a particular controversy. Beltran v. Beltran, 324 S.W.3d 107, 110 (Tex.App.-El Paso 2010, no pet.). As a threshold matter, we note that as the result of continuances requested by both parties on appeal, Appellant's involuntary commitment orders have already expired, and Appellant appears to have returned back to Colorado. We nevertheless retain jurisdiction over this case, as the mootness doctrine does not apply to temporary mental health orders due to the collateral consequences and stigma that flow from an involuntary commitment order. State v. K.E.W., 315 S.W.3d 16, 20 (Tex.2010). | Subject-matter jurisdiction is fundamental to the court's authority to dispose of cases, and the Court of Appeals may raise the issue sua sponte at any time. | Is subject-matter jurisdiction fundamental to a courts authority to dispose of cases? | 008219.docx | LEGALEASE-00129105-LEGALEASE-00129106 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10252 | Silviera-Francisco v. Bd. of Educ. of City of Elizabeth, 224 N.J. 126 | 30+21 | Finally, no party may confer jurisdiction on an appellate tribunal simply by filing a notice of appeal. No agreement between or among parties may confer jurisdiction on the Appellate Division in the absence of a final order, Hudson v. Hudson, 36 N.J. 549, 553,178 A.2d 202 (1962), and the Appellate Division has repeatedly admonished parties for attempting to disguise an interlocutory order or orders as final for purposes of pursuing an appeal as of right, see Grow Co. v. Chokshi, 403 N.J.Super. 443, 461, 959 A.2d 252 (App.Div.2008); CPC Int'l, Inc. v. Hartford Accident & Indem. Co., 316 N.J.Super. 351, 365-66, 720 A.2d 408 (App.Div.1998), certif. denied, 158 N.J. 73, 726 A.2d 937 (1999). To that end, an appellate tribunal always has the authority to question whether its jurisdiction has been properly invoked. See R. 2:8-2. When an appellate tribunal identifies a pending appeal that may be from an interlocutory order for which leave has not been granted, the better practice is always to notify the parties and to permit them to comment on the issue rather than dismissing the appeal or declining to reviewafully briefed issue without notice to the parties of thejurisdictional issue. Office of Emp. Relations, supra, 154 N.J. at 108, 711 A.2d 300. | No agreement between or among parties may confer jurisdiction on the Appellate Division in the absence of a final order. | Can an agreement between parties confer jurisdiction on the Appellate Division in the absence of a final order? | Appeal and error - Memo 66 - RK.docx | ROSS-003286577-ROSS-003286579 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 10253 | Sluss v. State, 436 N.E.2d 907 | 67+41(2) | It is desirable to first establish the corpus delicti before showing a confession or statement against interest by the defendant, but such is not necessary; the matter of order of proof is within the sound discretion of the trial court. Lee v. State, (1976) 169 Ind.App. 470, 349 N.E.2d 214. Specifically, in order to establish the corpus delicti of burglary, it is necessary to show a breaking and entering into a dwelling house of another with an intent to commit a felony therein. Berry v. State, (1972) 153 Ind.App. 387, 287 N.E.2d 557. A person has "entered" a structure of another when he has essentially put himself in a position to commit a felony within the confines of the structure. Cissna v. State, (1976) 170 Ind.App. 437, 352 N.E.2d 793. Lee, supra; Penman v. State, (1975) 163 Ind.App. 583, 325 N.E.2d 478. It is not necessary to show forcible entry, only that some physical act was used to gain entry. Gooch v. State, (1975) 165 Ind.App. 162, 331 N.E.2d 467. | In order to establish corpus delicti of burglary, it is necessary to show breaking and entering into dwelling house of another with intent to commit felony therein. | How can the corpus delicti of burglary be established? | 013234.docx | LEGALEASE-00129647-LEGALEASE-00129648 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10254 | Kilhafner v. Harshbarger, 245 Ill. App. 3d 227 | 79+6 | Second, we note that the plaintiff's employment as a deputy clerk reduces her likelihood of success on the merits because the Clerks of Courts Act gives the circuit clerk the power to hire and fire deputies. (Ill.Rev.Stat.1991, ch. 25, par. 9.) Pertinent case law reveals that although the chief judge may exercise general control over the circuit clerk's office and although the county board may control the pay of the deputies, the circuit clerk is the employer of the deputies. (County of Kane v. Carlson (1987), 116 Ill.2d 186, 107 Ill.Dec. 569, 507 N.E.2d 482; Kotche v. County Board (1980), 87 Ill.App.3d 1127, 42 Ill.Dec. 886, 409 N.E.2d 501.) Further, the fact that the statutory provision allowing for creation of the automation fund was placed in the Clerks of Courts Act is significant in that it implies the intention of the legislature to bring the day-to-day functioning of this fund under the control of the circuit clerk. Thus, it also implies the power of the circuit clerk to assign deputies to automation fund tasks as he/she would assign deputies to other tasks in his/her office. We find in the statute's grant of coextensive power over expenditures from the automation fund no legislative intent to confer on the chief judge any power to make staffing decisions with regard to which deputies will be assigned to automation fund tasks. Therefore, we find that the plaintiff has little likelihood of success on the merits of her claim. | Although chief judge may exercise general control over circuit clerk's office, and although county board may control pay of deputy clerks, it is circuit clerk who employs deputies. | Is the chief judge the employer of deputy clerks? | 013360.docx | LEGALEASE-00129679-LEGALEASE-00129681 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10255 | Estep v. Commissioners of Boundary Cty., 122 Idaho 345 | 79+6 | The only exception to the separation of powers doctrine occurs where the exercise of another branch's power is expressly directed or permitted by the constitution. Article 18, " 6 of the Idaho Constitution, in addition to providing that the clerk is the ex officio auditor and recorder for her respective county, provides that "the clerk of the district court shall be empowered by the county commissioners to appoint such deputies and clerical assistants as the business of their office shall require, said deputies and clerical assistants to receive such compensation as may be fixed by the county commissioners." See also I.C. " 31-3107.2 Far from being an express authorization of the Commissioners' action, this clause authorizes the clerk of the court to hire deputy clerks. The Court heretofore has stated that art. 18, " 6 precludes interference by the other two branches of state government in the matter of hiring practices of the county clerk: At first blush, this provision appears to give the county commissioners more power than they actually have. The county commissioners' power, at least with respect to the clerk of the district court, is limited and cannot be exercised to override every hiring decision. Upon a showing to the proper tribunal that a deputy or clerical assistant is needed, the county commissioners must authorize the appointment. Dukes v. Board of County Commissioners, 17 Idaho 736, 107 P. 491 (1910) (commissioners were ordered to authorize an appointment upon a district court's finding that the business of the office of the clerk of the district court needed a deputy.)Crooks, 112 Idaho at 317, 732 P.2d at 286. Adhering to our reasoning in | Constitutional provision that clerk of district court shall be empowered by county commissioners to appoint deputies and clerical assistants who shall receive compensation fixed by commissioners does not authorize commissioners to order hiring policies to govern clerk, but authorizes clerk to hire deputy clerks. Const. Art. 18, S 6. | Can clerks of the district court appoint deputy clerks? | 013363.docx | LEGALEASE-00129682-LEGALEASE-00129683 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10256 | Crooks v. Maynard, 112 Idaho 312 | 79+65 | Although we have concluded that the hiring and firing of deputy clerks is within the province of the clerk of the district court, and that the administrative district judge and/or district judge is not empowered to decide who shall be hired or appointed to serve as deputy clerks, we recognize that the function of the court may be jeopardized should a clerk hire or appoint an incompetent, unqualified, irresponsible or untrusty person as a deputy to perform court-related duties. By statute, the clerk is liable on his official bond to any person injured by a deputy's wrongful act or omission to perform any duty imposed by law. LC. " 1-1003. But the smooth, efficient and proper operation of the court system itself may be nonetheless severelyimpaired or adversely affected depending upon the conduct of the court-related personnel. [(Therefore, the district judge, in the exercise of his supervisory power over the clerical activities of the clerk of the district court, controls the assignment of persons hired by the clerk. Ifthe clerk makes an assignment of personnel to a judicial function which the judge finds unacceptable, he can refuse to accept that assignment. Consequently, the district judge has the power to require a reassignment of personnel to assist in judicial-related functions. | District judge in exercise of supervisory power over clerical activities of district court clerk may set guidelines for hiring deputy clerks that perform judicial functions, control assignment of persons hired by clerk, and refuse assignment of personnel considered unacceptable for judicial function. Act March 3, 1863, 12 Stat. 808; Const. Art. 2, S 1; Art. 5, SS 1 et seq., 16; Art. 18, S 6; I.C. SS 1-1002, 31-3107. | Can a district judge control the assignment of persons hired by the clerk? | Clerks of court - Memo 108 - RK.docx | ROSS-003287279-ROSS-003287280 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 10257 | Giesler v. City of Omaha, 175 Neb. 706 | 307A+502 | The right of plaintiffs and interveners to dismiss their petitions before final submission of the case to the court is controlled by section 25-601, R.R.S.1943, which provides in part: "An action may be dismissed without prejudice to a future action (1) by the plaintiff, before the final submission of the case to the jury, or to the court where the trial is by the court;" It is a statutory right and not a matter of judicial grace or discretion. Duffy v. Cody, 129 Neb. 737, 262 N.W. 828. The trial court properly dismissed the actions by virtue of this statutory provisions. The defendant contends that the trial court properly retained the case for trial under section 25-603, R.R.S.1943, which provides: "In any case where a set-off or counter-claim has been presented, the defendant shall have the right of proceeding to the trial of his claim, although the plaintiff may have dismissed the action or failed to appear." The nature of the pleadings filed by the defendant to the petitions of plaintiffs and interveners is of controlling importance in determining the correctness of the court's order in retaining the case for trial. | Right of plaintiff to dismiss cause of action before submission to court is statutory and is not matter of judicial grace or discretion. R.R.S.1943, S 25-601. | Is the right of a plaintiff to dismiss an action without prejudice as a matter of right at any time before final submission a statutory right? | 024005.docx | LEGALEASE-00129478-LEGALEASE-00129479 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10258 | Sink v. Hire, 210 N.C. 402 | 307A+501 | No rights of the defendants having attached by plea, decretal order, verdict, or otherwise, it would seem the court's refusal to allow the plaintiffs to suffer a voluntary nonsuit is at variance with the practice established by a number of decisions. Southern Cotton Oil Co. v. Shore, 171 N.C. 51, 87 S.E. 938; Olmsted v. Smith, 133 N.C. 584, 45 S.E. 953; Pass v. Pass, 109 N.C. 484, 13 S.E. 908; Bynum v. Powe, 97 N.C. 374, 2 S.E. 170; Graham v. Tate, 77 N.C. 120. In the absence of some right attaching which the defendant is entitled to have determined in the action, it is generally understood that "the plaintiff can take a nonsuit, as a matter of right, at any time before verdict." Piedmont Mfg. Co. v. Buxton, 105 N.C. 74, 11 S.E. 264, 265; Campbell v. Washington Light & Power Co., 166 N.C. 488, 82 S.E. 842; Cahoon v. Brinkley, 168 N.C. 257, 84 S.E. 263; Carpenter, Baggott & Co. v. Hanes, 167 N.C. 551, 83 S.E. 577; Caldwell v. Caldwell, 189 N.C. 805, 128 S.E. 329; People's Bank v. Stewart, 93 N.C. 402. | Plaintiff can take a nonsuit, as a matter of right, at any time before verdict, in absence of some right attaching which defendant is entitled to have determined in the action. | "Can a plaintiff take a nonsuit, as a matter of right, at any time before verdict?" | Pre-trial Procedure - Memo # 1054 - C - KG.docx | ROSS-003313869-ROSS-003313870 | Condensed, Order, SA | 0.83 | 1 | 1 | 0 | 1 | 1 |
| 10259 | Brockman v. Turin, 130 A.D.2d 616 | 307A+501 | Absent prejudice to a substantial right of the defendant or some other inequity, a motion for leave to discontinue an action should be granted (Shaffer v. Best Farms No. 3, 107 A.D.2d 745, 746, 484 N.Y.S.2d 107; County of Westchester v. Becket Assoc., 102 A.D.2d 34, 49, 478 N.Y.S.2d 305, affd. 66 N.Y.2d 642, 495 N.Y.S.2d 364, 485 N.E.2d 1029). | Absent prejudice to substantial right of defendant or some other inequity, plaintiff is entitled to leave to discontinue action. McKinney's CPLR 3217(b). | "Absent prejudice to substantial right of the defendant or some other inequity, is a plaintiff entitled to leave to discontinue an action?" | 025270.docx | LEGALEASE-00129569-LEGALEASE-00129570 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 10260 | Rills v. Shell Petroleum Corp., 177 La. 906 | 302+8(11) | An allegation of heirship without stating the kinship of the pleader to the person through whom he claims title to real estate, by inheritance, does not, in itself, allege a cause of action, nor is the situation improved by alleging other mere conclusions of law. This seems to be the settled jurisprudence, not only of this state, but of this country. State v. Hackley, Hume & Joyce, 124 La. 854, 50 So. 772; Arent v. Liquidating Commissioners, etc., 133 La. 134, 62 So. 602; Hubbard et al. v. Urton et al. (C. C.) 67 F. 419; Craig v. Welch-Hackley Coal & Oil Co., 74 S. W. 1097, 25 Ky. Law Rep. 232; Fite v. Orr's Assignee, 1 S. W. 582, 8 Ky. Law Rep. 349; Cohen v. Doran, 58 Fla. 418, 51 So. 282; Toler's Heirs v. Toler, 110 S. W. 388, 33 Ky. Law Rep. 594; Combs v. Cardwell, 164 Ky. 542, 174 S. W. 1009; Bond v. McFarland et al., 217 Ala. 651, 117 So. 63; West v. Reynolds, 35 Fla. 317, 17 So. 740; Allen v. Gates, 145 Ga. 652, 89 S. E. 821; Moroney v. Haas, 277 Ill. 467, 115 N. E. 648; Kerlee v. Corpening, 97 N. C. 330, 2 S. E. 664; Long v. Dufur, 58 Or. 162, 113 P. 59; Buttles v. DeBaun, 116 Wis. 323, 93 N. W. 5. | Allegation of heirship, without stating pleader's kinship to person through whom he claims title to realty by inheritance, does not state cause of action for recovery thereof. | "Does allegation of heirship, without stating pleader's kinship, allege a cause of action?" | 023145.docx | LEGALEASE-00129829-LEGALEASE-00129830 | Condensed, Order, SA | 0.84 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10261 | Harris v. Ward Greenberg Heller & Reidy LLP, 151 A.D.3d 1808 | 307A+501 | Addressing first the order in appeal No. 1, we conclude that the court erred in determining that plaintiff's notices of discontinuance were untimely. When interpreting a statute, " "[t]he starting point is always to look to the [statutory] language itself" " (Pultz v. Economakis, 10 N.Y.3d 542, 547, 860 N.Y.S.2d 765, 890 N.E.2d 880). CPLR 3217 provides, in relevant part, that "[a]ny party asserting a claim may discontinue it without an order ... by serving upon all parties to the action a notice of discontinuance at any time before a responsive pleading is served or, if no responsive pleading is required, within twenty days after service of the pleading asserting the claim and filing the notice with proof of service with the clerk of the court" (CPLR 3217[a][1] [emphasis added] ). Thus, the statute provides a plaintiff with "an "absolute and unconditional" right to discontinue an action prior to the service of a responsive pleading" (minkow v. metelkA, 46 a.d.3d 864, 864, 848 n.y.s.2d 706). this method of discontinuing an action requires no intervention from the court (see McMahon v. McMahon, 279 A.D.2d 346, 348, 718 N.Y.S.2d 353; Chandler v. Chandler, 108 A.D.2d 1035, 1036, 485 N.Y.S.2d 604). | Plaintiff has an absolute and unconditional statutory right to discontinue an action prior to the service of a responsive pleading, which requires no intervention from the court. McKinney's CPLR 3217(a)(1). | Does a plaintiff have an absolute and unconditional statutory right to discontinue an action prior to the service of a responsive pleading? | Pretrial Procedure - Memo # 1281 - C - KS.docx | ROSS-003314630-ROSS-003314632 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10262 | La Plante v. Implement Dealers Mut. Fire Ins. Co., 73 N.D. 159 | 307A+742.1 | A pre-trial conference is not a special proceeding. It can scarcely be termed a remedy. It is incidental to a remedy; an episode in an ordinary proceeding. West Branch Pants Co. v. Gordon, 51 N.D. 742, 200 N.W. 908. It takes place within an action as the result of a statutory digression from established practice, provided by the legislature for the purpose of clearing away legalistic debris prior to the trial. An effective pre-trial conference should result in narrowing issues, settling pleadings, limiting the number of witnesses, and in general, shorten the actual period of trial. It is hoped that in many cases settlements will be promoted and no trial at all will be necessary. | An effective pre-trial conference should result in narrowing issues, settling pleadings, limiting number of witnesses, and in general shortening the actual period of trial. Laws 1943, c. 216. | What should an effective pre-trial conference result in? | 026311.docx | LEGALEASE-00129766-LEGALEASE-00129767 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 10263 | Bertschy v. McLeod, 32 Wis. 205 | 307A+501 | The following propositions must, we think, be conceded: 1st. At the common law, a plaintiff had the absolute right to discontinue his action before or after issue joined, and without leave of court. 2nd. In suits in equity, under the former practice, the plaintiff might, in like manner, dismiss his bill, but such dismissal did not carry with it a cross bill interposed by the defendant. Barb. Ch. Pr., 128 and cases cited. 3d. The right of discontinuance is not affected by the code, but remains the same, both in legal and equitable actions, as under the former practice. | The right of discontinuance is not affected by the code, but remains the same as under the former practice, both in legal and equitable actions. | "Is the right of discontinuance affected by the code, but remains the same as under the former practice, both in legal and equitable actions?" | 026319.docx | LEGALEASE-00129803-LEGALEASE-00129804 | Order, SA | 0.75 | 1 | 0 | 0 | 1 | |
| 10264 | Riley v. Carter, 22 Tenn. 230 | 307A+501 | There is no doubt that at common law a party plaintiff has a right to dismiss his suit whenever he may choose. He is the only party seeking a remedy. He alone asks the action of the court. The defendant stands in the attitude of resistance. He opposes the action of his adversary and endeavors to defeat the suit. If the plaintiff voluntarily comes and withdraws his suit, it is all the defendant can ask. Everything is accomplished that would be attained by his successful defence. | By the common law, a party plaintiff has a right to dismiss his suit whenever he may choose. | "At common law, does a party plaintiff has a right to dismiss his suit whenever he may choose?" | 026331.docx | LEGALEASE-00129907-LEGALEASE-00129908 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10265 | Herring v. Poritz, 6 Ill. App. 208 | 307A+501 | Blackstone says: "If the plaintiff neglects to deliver a declaration for two terms after defendant appears, or is guilty of other delays or defaults against the rules of law in any subsequent stage of the action, he is adjudged not to follow or pursue his remedy as he ought to do, and thereupon a nonsuit or non prosequitur is entered, and he is said to be non pros'd. A retraxit differs from a nonsuit, in that one is negative and the other positive; the nonsuit is a mere default and neglect of the plaintiff, and therefore he is allowed to begin his suit again upon payment of costs; but a retraxit is an open and voluntary renunciation of his suit in court, and by this he forever loses his action." 3 Com. 296. Bouvier says: "Nonsuit--the name of a judgment given against the plaintiff when he is unable to prove his case, or when he refuses or neglects to proceed to the trial of a cause after it has been put at issue, without determining such issue." 2 Law Dict. 233. He divides these judgments into two classes--the voluntary and involuntary. The former arises from an abandonment of the cause, by the plaintiff absenting himself by failing to answer when called upon to hear the verdict. Jeptha v. Railroad Co. 1 Dutch. N. J. .556 An involuntary nonsuit takes place when the plaintiff, on being called when his cause is before the court for trial, neglects to appear, or when he has given no evidence on which a jury may find a verdict. Pratt v. Hull, 13 Johns. 334. See, also, 7 Bac. Abr. Tit. Nonsuit, 214; 2 Tomlin's Law Dict. same title. | A "nonsuit" is the name of a judgment given against the plaintiff when he is unable to prove his case, or when he refuses or neglects to proceed to the trial of a cause after it has been put at issue, without determining such issue. | Is an instance where the plaintiff does not proceed to trial be a non-suit? | 026586.docx | LEGALEASE-00129899-LEGALEASE-00129900 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 10266 | Norton Farms v. Anadarko Petroleum Corp., 32 Kan. App. 2d 899 | 307A+742.1 | The essential purpose of pretrial conference procedure is to prevent surprise and enable the parties to prepare for trial with the assurance that contentions, issues, and evidence will not be moving targets. See Herrell v. Maddux, 217 Kan. 192, 194"95, 535 P.2d 935 (1975); Tillotson v. Abbott, 205 Kan. 706, 709, 472 P.2d 240 (1970); Trimble, Administrator v. Coleman Co., Inc., 200 Kan. 350, 358"59, 437 P.2d 219 (1968). Under these circumstances, we conclude that the district court did not abuse its discretion in denying the motion to amend the pretrial order. | The essential purpose of pretrial conference procedure is to prevent surprise and enable the parties to prepare for trial with the assurance that contentions, issues, and evidence will not be moving targets. | What is not the function of trial court at pretrial conference? | 026607.docx | LEGALEASE-00130013-LEGALEASE-00130014 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10267 | Show & Tell of New Orleans v. Fellowship Missionary Baptist Church, 156 So.3d 1234 | 307A+747.1 | Thus our law necessarily affords trial judges great discretion and power over the control of proceedings in their respective courtrooms: "A court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." La. C.C.P. art. 1631. Trial courts are also given discretion to hold pretrial conferences for purposes of simplifying the issues of a case, determining whether pleadings should be amended, determining what material facts are truly disputed, identifying witnesses, documents, and exhibits, and, importantly for our purposes, "such other matters as may aid in the disposition of the action." La. C.C.P. art. 1551 A(10); Gutierrez v. Baldridge, 10"1528, pp. 5"6 (La.App. 3 Cir. 5/11/11); 65 So.3d 251, 254. A court that holds such a conference must render an order memorializing the actions taken at the conference. See La. C.C.P. art. 1551 B; Gutierrez, 10"1528, p. 6, 65 So.3d at 254. The law affords trial courts wide discretion to implement pretrial orders and insure that their terms are enforced. See La. C.C.P. art. 1551; Robertson v. Lafayette Ins. Co., 11"0975, p. 5 (La.App. 4 Cir. 2/8/12); 85 So.3d 186, 189. That order controls the subsequent course of the action and trial, unless modified at the trial to prevent manifest injustice. See Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc., 00"1930, p. 24 (La.App. 1 Cir. 9/28/01); 809 So.2d 1040, 1055. The law provides that an orderly disposition of each case and the avoidance of surprise are inherent in the theory of pre-trial procedure and are sufficient reasons for allowing the trial judge to require adherence to the pre-trial order in the conduct of an action. | Trial courts have wide discretion to implement pretrial orders and insure that their terms are enforced. LSA-C.C.P. art. 1551. | Does the trial court have wide discretion to implement a pretrial order and insure that its terms are enforced? | 026625.docx | LEGALEASE-00130251-LEGALEASE-00130252 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 10268 | Waffle House v. Williams, 314 S.W.3d 1 | 307A+742.1 | If a proponent offers evidence that the trial court excludes, to preserve error the proponent must present a formal bill of exception to the trial court unless the substance of the excluded evidence was apparent from the context within which the questions were asked. A party cannot rely on a ruling on a motion in limine to preserve error. There is, however, a distinction between a motion in limine and a pretrial ruling on admissibility. A trial court may conduct a pretrial hearing to consider written trial objections to a party's exhibits and "such other matters as may aid in the disposition of the action." At the hearing, the court can issue an order that controls "the subsequent course of the action, unless modified at the trial to prevent manifest injustice." The rule "does not suggest that it is necessary to go through the same procedure during the course of the trial." | A trial court may conduct a pretrial hearing to consider written trial objections to a party's exhibits and such other matters as may aid in the disposition of the action, and at the hearing, the court can issue an order that controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice; this rule does not suggest that it is necessary to go through the same procedure during the course of the trial. | When can a trial court conduct a pretrial hearing? | Pretrial Procedure - Memo # 1643 - C - PB.docx | ROSS-003287676-ROSS-003287678 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 10269 | Jordan v. Cent. Piedmont Cmty. Coll., 124 N.C. App. 112 | 413+51 | The broad intent of the Workers' Compensation Act is to provide compensation for employees who sustain an injury arising out of and in the course of their employment.The Act is to be liberally construed and no technical or strained construction should be given to defeat this purpose. Abels v. Renfro Corp., 108 N.C.App. 135, 141, 423 S.E.2d 479, 482 (1992), affirmed in part, reversed in part on other grounds, 335 N.C. 209, 436 S.E.2d 822 (1993); See also Johnson v. Hosiery Company, 199 N.C. 38, 40, 153 S.E. 591, 593 (1930). When construing a statute, the words are given their ordinary meaning, unless it appears from the context that they should be used in a different sense. Transportation Service v. County of Robeson, 283 N.C. 494, 500, 196 S.E.2d 770, 770"71 (1973) | Broad intent of Workers' Compensation Act is to provide compensation for employees who sustain injury arising out of and in course of their employment; the Act is to be liberally construed and no technical or strained construction should be employed to defeat this purpose. Workers' Compensation Act. | Are technical excuses for denying workmens compensation favored by law? | 047818.docx | LEGALEASE-00130137-LEGALEASE-00130138 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 10270 | Popper v. Monroe, 673 F. Supp. 1228 | 25T+143 | The crucial question in this case is the relationship of the alleged defamation to the arbitration agreement between the parties. See Coudert v. Paine Webber Jackson & Curtis, 705 F.2d 78, 82 (2d Cir.1983); Feinberg v. Oppenheimer & Co., 658 F.Supp. 892, 893 (S.D.N.Y.1987). If the alleged defamation arose directly out of a dispute regarding the terms of the parties contractual relation, Coudert, supra, 705 F.2d at 81"82, or if the defamatory statements are integrally linked to the contractual relation between the parties, McMahon v. RMS Electronics, Inc., 618 F.Supp. 189, 192 (S.D.N.Y.1985), arbitration must be compelled. Similarly, if the defamatory statements arise from performance of the contract, arbitration must also be compelled. Tac Travel America Corp. v. World Airways, Inc., 443 F.Supp. 825, 828 (S.D.N.Y.1978). Any doubts regarding the scope of arbitable issues involving 9 U.S.C. " 1 et seq. should be resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). | If alleged defamation arose directly out of dispute regarding terms of parties contractual relationship, if defamatory statements were integrally linked to contractual relationship between parties, or if defamatory statements arose from performance of contract, under arbitration clause of agreement, arbitration must be compelled. 9 U.S.C.A. SS 1 et seq., 3. | Can defamation claims be settled through arbitration? | 007401.docx | LEGALEASE-00131362-LEGALEASE-00131363 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10271 | Bruton v. Carnival Corp., 916 F. Supp. 2d 1262 | 170B+2556 | One well recognized application of this narrow doctrine is the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due the attorneys for work performed in the lawsuit. See, e.g., Gottlieb v. GC Financial Corp., 97 F.Supp.2d 1310 (S.D.Fla.1999) and Zaklama v. Mount Sinai Medical Center, 906 F.2d 650 (11th Cir.1990) (both adjudicating post-judgment attorneys' fees disputes under Florida law charging liens); see also Rivera-Domenech v. Calvesbert Law Offices PSC, 402 F.3d 246, 250 (1st Cir.2005) ("Courts have rested the exercise of jurisdiction over [attorney-client] fee disputes related to proceedings before them on the doctrine of ancillary jurisdiction."); Garcia v. Teitler, 443 F.3d 202, 207-09 (2nd Cir.2006) (federal courts have ancillary jurisdiction to address attorney fee disputes in ongoing criminal cases); Garrick v. Weaver, 888 F.2d 687, 690 (10th Cir.1989) (quoting Jenkins, 670 F.2d at 918: "It is well established that '[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.' "); Foster, 771 F.Supp. at 1120 ("Courts have exercised ancillary jurisdiction over disputes between attorneys and clients over the proper amount of attorneys' fees due to the attorneys for work performed in the underlying litigation."). | Federal district court lacked ancillary jurisdiction over fee dispute between plaintiff and her former attorney in personal injury action, where attorney never appeared as counsel of record in case, his claims arose out of legal relationship that pre-dated and was terminated prior to litigation, court would be unable to resolve fee dispute without substantial new fact-finding, discharge of any untimely equitable charging lien would not dispose of or adjudicate any such claim attorney or his firm might have in another jurisdiction, and resolution of dispute was not necessary to protect integrity of underlying litigation or to insure that its disposition was not frustrated. 28 U.S.C.A. S 1367. | How do court exercise jurisdiction over attorney client fee disputes? | Alternative Dispute Resolution - Memo 543 - RK.docx | ROSS-003286531-ROSS-003286532 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 10272 | United States v. Sweet, 372 F. Supp. 72 | 34+20.6(3) | There is no constitutional right in a conscientious objector to avoid service; it is merely a privilege Congress chose to extend to registrants meeting its criteria. Under these circumstances, however much he may dislike the system, a registrant must exercise some modicum of self-help. Appeal boards exist to correct mistakes. It is one thing to afford relief by way of a defense to an induction order when the draft board's lack of articulation may have prejudiced his appeal, see United States v. Edwards, ante, 450 F.2d at 52; or if its mistake resulted in a reasonable, but erroneous, inference that the board had not yet acted on his claim, see United States v. Newmann, 8 Cir., 1973, 478 F.2d 829. But the entire purpose of administrative review would be frustrated if a registrant could simply bypass it, as defendant now contends, whenever a lower echelon errs. There is no assurance that a personal appearance, or an appeal, would not have prompted the local board itself, or the appeal board, to correct the local board's error. It would be entirely disruptive, for no adequate reason, to hold that a registrant could turn his back on the very procedures Congress established to correct mistakes to protect both him and others, as well as the orderly process of recruitment. Cf. McGee v. United States, 1971, 402 U.S. 479, 485, 91 S.Ct. 1565, 29 L.Ed.2d 47; United States v. Quattrucci, 1 Cir., 1972, 454 F.2d 58, cert. denied 406 U.S. 960, 92 S.Ct. 2071, 32 L.Ed.2d 347, reh. denied 409 U.S. 900, 93 S.Ct. 187, 34 L.Ed.2d 160; United States v. Powers, 1 Cir., 1969, 413 F.2d 834, cert. denied 396 U.S. 923, 90 S.Ct. 256, 24 L.Ed.2d 205; Dunn v. United States, 1 Cir., 1967, 383 F.2d 357, cert. denied 390 U.S. 982, 88 S.Ct. 1103, 19 L.Ed.2d 1280. For a well-articulated statement see Judge Friendly in McGee, below, 2 Cir., 1970, 426 F.2d 691, at 700. | Conscientious objector has no constitutional right to avoid military service; conscientious objector status is merely a privilege extended to registrants meeting criteria established by Congress. | Does a conscientious objector have a constitutional right to avoid military service? | 008480.docx | LEGALEASE-00131429-LEGALEASE-00131430 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 10273 | United States v. Dimora, 750 F.3d 619 | 63+1(1) | Gabor and Dimora both claim that the court failed to instruct the jury sufficiently on the difference between gifts given in friendship and bribes given in exchange for official acts. No error occurred. The jurors heard that "effort[s] to buy favor or generalized goodwill" do not necessarily amount to bribery, that official acts may come in the guise of formal and informal influence, and that gifts exchanged solely to cultivate friendship are not bribes. R. 1044 at 48"51. On the other side of the coin, the jurors heard that bribery and kickbacks involve "the intent to ... exchange ... money or other thing[s] of value in return for official action." Id. at 49. These instructions fairly trace the line between permissible gifts and impermissible bribes. See United States v. Terry, 707 F.3d 607, 612"14 (6th Cir.2013). | Official acts may come in the guise of formal and informal influence, and gifts exchanged solely to cultivate friendship are not bribes. | Are gifts exchanged solely to cultivate friendship bribes? | 011081.docx | LEGALEASE-00130387-LEGALEASE-00130388 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10274 | State v. Davis, 160 Conn. App. 251 | 63+1(1) | We begin our analysis with the language of the statute at issue. Section 53a"149 (a) provides: "A person is guilty of bribery of a witness if he offers, confers or agrees to confer upon a witness any benefit to influence the testimony or conduct of such witness in, or in relation to, an official proceeding."The state, therefore, was required to establish the following: (1) that the defendant offered, conferred or agreed to confer a benefit, (2) to a witness, (3) with the intent of influencing the witness' testimony or conduct in relation to an official proceeding. | The state was required to establish the following in trial for bribery of a witness: (1) that the defendant offered, conferred or agreed to confer a benefit, (2) to a witness, (3) with the intent of influencing the witness' testimony or conduct in relation to an official proceeding. C.G.S.A. SS 53a-146, 53a-149(a). | When is a person guilty of bribery of a witness? | 011108.docx | LEGALEASE-00130623-LEGALEASE-00130624 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10275 | Fenton v. Thompson, 352 Mo. 199 | 307A+509 | We think the right to voluntarily dismiss without prejudice was controlled by Sec. 1111, supra, and that plaintiff lost that right when she voluntarily submitted her cause to the jury. 27 C.J.S., Dismissal and Nonsuit, s 20, p. 175. The facts here fall squarely under the statute. See National Bank of Commerce v. Butler, supra, 163 Mo.App. 380, 385, 143 S.W. 1117. By Sec. 1111, supra, a voluntary dismissal, after submission, was denied by the statute and a judgment on the merits was required. Only such a judgment would bar the further prosecution of the cause. Dahlberg v. Fisse, 328 Mo. 213, 40 S.W.2d 606, 611; State ex rel. National Lead Co. v. Smith, Mo.App., 134 1061, 1067, 1068. Plaintiff, by filing her 'written voluntary nonsuit' and withdrawing from the case after submission, waived her right to a verdict by the jury. She, in effect, recognized that the verdict would be adverse to her and was unwanted by her, and by her conduct she authorized a dismissal 'with prejudice' in lieu thereof. By force of the statute, supra, a judgment of dismissal with prejudice to future action was required, such being the only kind of dismissal then possible on the record as made. A dismissal with prejudice, under such circumstances where plaintiff has the burden of proof, does no violence to the constitutional right of trial by jury. See Hineline v. Minneapolis Honeywell Regulator Co., 8 Cir., 78 F.2d 854; Baltimore & Carolina Line, Inc., v. Redman, 295 U.S. 654, 55 890, 79 L.Ed. 1636. The cases of State ex rel. Motz v. Killoren, supra, and Suess v. Motz, supra, in so far as they hold to the contrary, are overruled. | The plaintiff's right to voluntarily dismiss without prejudice was controlled by statute, and plaintiff lost that right when she voluntarily submitted her cause to the jury. V.A.M.S. SS 510.130, 510.150. | "When a cause is voluntarily submitted to the jury, will a plaintiff lose his right to voluntarily dismiss without prejudice?" | Pretrial Procedure - Memo # 1279 - C - PC.docx | ROSS-003313929-ROSS-003313930 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 10276 | Succession of Harrell v. Erris-Omega Plantation, 2012-696 (La. App. 3 Cir | 307A+747.1 | Accordingly, a trial court has wide discretion to provide for pretrial orders and to ensure that the terms of the order are enforced. Russell v. H & H Metal Contractors, Inc., 11"27 (La.App. 3 Cir. 6/1/11), 65 So.3d 806. | Trial court has wide discretion to provide for pretrial orders and to ensure that the terms of the order are enforced. LSA-C.C.P. art. 1551. | Does a trial court have wide discretion to provide for pretrial orders and to ensure that the terms of the order are enforced? | Pretrial Procedure - Memo # 1453 - C - PC.docx | ROSS-003314011-ROSS-003314012 | Condensed, SA | 0.36 | 0 | 1 | 0 | 1 | |
| 10277 | Clouser v. Spaniol Ford, 522 P.2d 1360 | 307A+747.1 | Because of the resemblance and the recognition that summary judgment or partial summary adjudication is in the nature of a pretrial order we find some cases arising in this court with regard to pretrial orders persuasive. A pretrial order supersedes the pleadings and thus controls the course of the action. We have heretofore mentioned that a pretrial order should be entered sufficiently ahead of time to allow for litigants to prepare for the trial. Although not reversing the case upon that ground, this court has suggested the impropriety of setting a case immediately after a pretrial. To have allowed alteration of the so-called partial summary judgment order by amendment at the beginning of this trial would have been clearly violate of the rationale of these cases. | A pretrial order should be entered sufficiently ahead of time to allow litigants time to prepare for trial. | Should a pretrial order be entered sufficiently ahead of time to allow litigants time to prepare for trial? | 026657.docx | LEGALEASE-00130400-LEGALEASE-00130401 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10278 | Blackford v. Boone Cty. Area Plan Comm'n, 43 N.E.3d 655 | 307A+717.1 | Continuances to allow time for additional preparation are generally disfavored and require a showing of "good cause" and how "it is in the interests of justice." Williams v. State, 681 N.E.2d 195, 202 (Ind.1997). See also Clodfelder v. Walker, 234 Ind. 219, 125 N.E.2d 799, 800 (1955) (explaining that a motion for continuance should be made at the earliest practicable time after knowledge of the necessity for a continuance). Furthermore, "[a] continuance requested for the first time on the morning of trial is not favored." Lewis v. State, 512 N.E.2d 1092, 1094 (Ind.1987). | Continuances to allow time for additional preparation are generally disfavored and require a showing of good cause and how it is in the interests of justice; furthermore, a continuance requested for the first time on the morning of trial is not favored. Trial Procedure Rule 53.5. | Are continuances to allow time for additional preparation generally disfavored by the court? | Pretrial Procedure - Memo # 1603 - C - PC.docx | ROSS-003300599-ROSS-003300600 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 10279 | Hirsch v. Gen. Motors Corp., 266 N.J. Super. 222 | 379+316 | Dismissal of a plaintiff's complaint may be proper for willful noncompliance with a court order to preserve evidence. See Merck & Co., Inc. v. Biorganic Laboratories, Inc., supra. For the destruction of evidence to be intentional, it need not rise to the level of a malicious or "evil minded act." See Viviano v. CBS, Inc., supra, intent can be inferred "where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action[,]" Fire Ins. Exchange v. Zenith Radio Corp., supra, 747 P.2d at 914 (citations omitted), and fails to do so. | For destruction of evidence to be intentional, it need not rise to level of malicious or evil minded act; intent can be inferred where action has not been commenced and there is only a potential for litigation, litigant is under duty to preserve evidence which it knows or reasonably should know is relevant to the action, and litigant fails to do so. | Is a defendant under a duty to preserve evidence which it knows or reasonably should know is relevant to the action? | 026826.docx | LEGALEASE-00130621-LEGALEASE-00130622 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 10280 | Livernois v. Brandt, 225 Cal. App. 2d 301 | 307A+749.1 | It is the general rule that a plaintiff must recover, if at all, upon the cause of action set forth in the complaint and not upon some other cause which may be developed by the proofs. (Reed v. Norton, 99 Cal. 617, 34 P. 333; Northern Railway Co. v. Jordan, 87 Cal. 23, 25 P. 273; Tobola v. Wholey, 75 Cal.App.2d 351, 170 P.2d 952.) In People ex rel. Dept. Public Works v. Valley Drive-in Theater Corp., 206 Cal.App.2d 309, 23 Cal.Rptr. 626, this court held that the pretrial order supersedes the issues raised by the pleadings and controls the subsequent course of the case as long as it remains unmodified. The parties and the court are bound by the agreed statement of the facts and issues and are not authorized to make findings contrary thereto without proper modification of the agreement and the pretrial order. See Rule 216, California Rules of Court. No request was here made for amendment of the pleadings nor for amendment of the pretrial order. | The pretrial order supersedes issues raised by pleadings and controls subsequent course of case as long as it remains unmodified. Cal.Rules of Court, rule 216. | Does an issue raised in a pretrial order supersede an issue raised in the pleadings? | Pretrial Procedure - Memo # 1705 - C - DA.docx | LEGALEASE-00020688-LEGALEASE-00020689 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10281 | Murcott v. Best W. Int'l, 198 Ariz. 349 | 307A+749.1 | We find that Best Western has waived the good faith argument. A joint pre-trial statement controls the subsequent course of litigation and may amend the pleadings. See Carlton v. Emhardt, 138 Ariz. 353, 355, 674 P.2d 907, 909 (App.1983) (a joint pre-trial memorandum that omitted a lack of personal jurisdiction defense removed the defense from the case). In a case paralleling Carlton, we held that the appellant waived an argument about whether the appellee had become a licensee because the record did not indicate that the appellee's status was squarely raised in the motion for directed verdict. See Van Dever v. Sears, Roebuck & Co., 129 Ariz. 150, 152, 629 P.2d 566, 568 (App.1981). In analyzing the waiver issue, we stated, "Appellant reference to the issue in a trial memorandum is not enough to preserve the issue for appeal under the circumstances presented here." Id. Likewise, we conclude here that Best Western has waived the good faith issue, and therefore we cannot consider it on appeal. See id.; see also Westin Tucson Hotel Co. v. State Dept of Revenue, 188 Ariz. 360, 364, 936 P.2d 183, 187 (App.1997) (questions not directly raised in the trial court cannot be considered on appeal). | A joint pre-trial statement controls the subsequent course of litigation and may amend the pleadings. | Does a joint pre-trial statement control the subsequent course of litigation and may amend the pleadings? | 026932.docx | LEGALEASE-00130453-LEGALEASE-00130454 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 10282 | Ridley v. Turner, 335 Ga. App. 108 | 307A+750 | OCGA " 9"11"16(b) provides, in pertinent part, a pretrialorder "controls the subsequent course of the action unlessmodified at the trial to prevent manifest injustice." "[I]t generally is recognized that, unless the pretrialorder is modified at or beforetrial, a party may not advancetheories or offerevidence that violate the terms of the pretrialorder." (Footnotes omitted) Dept. of Human Resources v. Phillips, 268 Ga. 316, 318(1), 486 S.E.2d 851 (1997). Whether to allow the testimony of a witness not named in a pretrialorder lies within the discretion of the trial court. See Nease v. Buelvas, 198 Ga.App. 302, 401 S.E.2d 320 (1991). | Generally, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order. West's Ga.Code Ann. S 9-11-16(b). | "Can a party advance theory or offer evidence that violate the terms of a pretrial order, unless the pretrial order is modified at or before trial?" | 026959.docx | LEGALEASE-00130776-LEGALEASE-00130778 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10283 | Schowalter v. Washington Mut. Bank, 275 Ga. App. 182 | 307A+750 | To analyze this contention, we start with the premise that "[a] claim or issue, though previously raised in pleadings, is waived when it is omitted from the pretrial order." (Punctuation omitted.) Williams v. Safeway Ins. Co. The rationale is that the purpose of the pretrial order "is to determine which of the claims pleaded will actually be tried. The claims, issues, and evidence are limited by the order and the course of the action is thereby narrowed to expedite the proceeding." (Punctuation omitted.) Id. Where a court excludes claims due to their omission from the pretrial order, we will reverse that ruling only if the trial court abused its discretion. Jamal v. Hussein. | Claim or issue, though previously raised in pleadings, is waived when it is omitted from the pretrial order. | "Does a claim or issue get waived if it is omitted from a pretrial order, though previously raised in pleadings?" | Pretrial Procedure - Memo # 1768 - C - PC.docx | ROSS-003301227-ROSS-003301228 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10284 | Chapital v. Orleans Par. Sch. Bd., 780 So. 2d 1110 | 307A+749.1 | Pretrial conferences reduce unnecessary proof of inconsequential facts at trial, and prevent the creation of traps or surprises that one party might spring on another. Because the conference is an invaluable tool for promoting a fair and speedy trial, pretrial orders should be strictly adhered to by the parties. Benware v. Means, 99"1410, p. 6 (La.1/19/2000), 752 So.2d 841, 845. La. C.C.P. art. 1551A(4) and (7) provide for the trial court's discretion to consider proof, stipulations regarding authenticity of documents, and identification of witnesses, documents and exhibits. La. C.C.P. art. 1551B provides that the trial court shall render an order reciting the action taken at the pretrial conference, which order controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. | Pretrial conference is an invaluable tool for promoting a fair and speedy trial, and thus pretrial orders should be strictly adhered to by the parties. | Is pretrial conference an invaluable tool for promoting a fair and speedy trial? | 026989.docx | LEGALEASE-00131223-LEGALEASE-00131224 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 10285 | Bump v. Firemens Ins. Co. of Newark, N.J., 221 Neb. 678 | 307A+750 | In their second assignment of error, Bumps assail the trial court's eliminating the second cause of action alleged in their petition. The record fails to disclose the precise procedural scalpel used to excise the second cause of action from Bumps' petition. Assuming that the allegations of the second cause of action did state facts sufficient to constitute a cause of action, the trial court, nevertheless, removed from trial any issue raised by the second cause of action. Pretrial conferences are conducted to simplify and narrow issues presented in a case. Priest v. McConnell, 219 Neb. 328, 363 N.W.2d 173 (1985). Issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. See Olson v. England, 206 Neb. 256, 292 N.W.2d 48 (1980). Generally, issues delineated in an unaltered pretrial order supplant the issues raised in the pleadings. See Marotta v. Iroquois Realty Co., 412 N.E.2d 797 (Ind.App.1980). | Pretrial conferences are conducted to simplify and narrow issues presented in a case, and issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. | "Do issues specified at pretrial conference, control issues on which case is tried?" | 027360.docx | LEGALEASE-00130559-LEGALEASE-00130560 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 10286 | Elwood v. Panhandle Concrete Co., 236 Neb. 751 | 307A+750 | We have held that a pretrial conference is conducted to simplify and narrow the issues to be presented in a case. ""Issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. [Citation omitted.] Generally, issues delineated in an unaltered pretrial order supplant the issues raised in the pleadings. [Citation omitted.]" " Bituminous Casualty Corp. v. Deyle, 234 Neb. 537, 540, 451 N.W.2d 910, 913 (1990), quoting Bump v. Firemens Ins. Co., 221 Neb. 678, 380 N.W.2d 268 (1986). | Issues specified at pretrial conference control course of action and, unless altered by court, constitute issues on which case is tried. | "Do the issues specified at a pretrial conference, control the course of an action?" | 027362.docx | LEGALEASE-00130988-LEGALEASE-00130989 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 10287 | Dunlop v. Dist. Court of Greene Cty., 214 Iowa 389 | 307A+331 | Furthermore, the statutory proceeding for the production of material papers is "analogous to the equity practice" under a bill of discovery. Grand Lodge, A. O. U. W. v. District Court (150 Iowa, 398), supra, local citation, 401, 130 N. W. 117. Whether, in view of the statutory procedure, there is any other method by which the books and papers might be obtained, we do not now decide, for it is enough to say that Holden does not bring himself within any such contemplated rule. | Statutory proceeding for production of material papers is analogous to equity practice under bill of discovery (Code 1931, SS 11129, 11316, 11317). | Is the statutory proceeding for production of material papers analogous to equity practice under a bill of discovery? | 027370.docx | LEGALEASE-00130689-LEGALEASE-00130690 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10288 | Carle Found. v. Illinois Dep't of Revenue, 396 Ill. App. 3d 329 | 361+1384 | Again, the only limitation that subsection (e) of section 23"25 (35 ILCS 200/23"25(e) (West 2006)) removes is the limitation expressed in subsection (a) (35 ILCS 200/23"25(a) (West 2006)). Because subsection (a) says nothing about the doctrine of election of remedies, that doctrine is not one of the limitations that subsection (e) removes. Skinner and Oasis were in existence when the legislature drafted section 23"25(e). ""Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law." " Burrell v. Southern Truss, 176 Ill.2d 171, 176, 223 Ill.Dec. 457, 679 N.E.2d 1230, 1233 (1997), quoting Hickman, 163 Ill.2d at 262, 206 Ill.Dec. 94, 644 N.E.2d at 1153. If the legislature had intended to make an exception to the doctrine of election of remedies, it easily could have said so, but it did not say so, and therefore we presume it had no such intention. "It is a general rule [,] in the construction of statutes, that they are not to be presumed to alter the common law further than they expressly declare. Statutes are to be construed in reference to the principles of the common law; and it is not to be presumed [ ] that the legislature intends to make any innovation upon the common law further than the case ab [s]olutely requires."Mackin v. Haven, 187 Ill. 480, 493, 58 N.E. 448, 452 (1900). | Statutes are to be construed in reference to the principles of common law and it is not to be presumed that the legislature intends to make any innovation upon the common law further than the case absolutely requires. | Are exposition statutes to be construed in reference to the principles of the common law? | 027373.docx | LEGALEASE-00130743-LEGALEASE-00130744 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10289 | In re Marcucci, 256 B.R. 685 | 371+2001 | Taxes are generally defined as "pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." Feiring, 313 U.S. at 285, 61 S.Ct. 1028. See also New Jersey v. Anderson, 203 U.S. 483, 492, 27 S.Ct. 137, 51 L.Ed. 284 (1906). The Supreme Court's recent decision in CF & I further refines the definition of tax as defined in Feiring and Anderson. In CF & I, the Court's approach to determining whether a particular state exaction was a tax focused on (1) determining whether the exaction meets the general description of a tax and (2) whether it possesses other "tax characteristics" such that the exaction operates as a tax (as distinct from a debt or penalty) for the purpose of setting the priority of a claim under the bankruptcy laws. CF & I, 518 U.S. at 220, 116 S.Ct. 2106; Workers' Comp. Tr. Fund v. Saunders, 234 B.R. 555, 563 (D.Mass.1999). | "Taxes" are generally defined as pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it. | Do taxes have a regard to an individual's consent? | 044523.docx | LEGALEASE-00130986-LEGALEASE-00130987 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10290 | Hennepin Cty. v. Fed. Nat. Mortg. Ass'n, 933 F. Supp. 2d 1173 | 371+2001 | Such a conclusion is supported by Congress's stated intent for creating the Enterprises. As already discussed, the Enterprises were formed with the goal of stabilizing the secondary mortgage market, "and one of the ways Congress attempted to accomplish that was to make operating in those markets somewhat less expensive." Hamer, 2013 WL 591979, at (collecting cases). Under Hennepin County's interpretation, the tax exemption would be almost meaningless, as only three forms of direct taxes exist: taxes upon real property; taxes upon personal property; and capitations, which are "taxes paid by every person, without regard to property, profession, or any other circumstance." Nat'l Fed'n of Indep. Bus. v. Sebelius, --U.S. , 132 S.Ct. 2566, 2598-99, 183 L.Ed.2d 450 (2012) (citation and internal quotation marks omitted). The Exemption Statute already excludes taxes on "realproperty," which would leave personal property and capitations as the only direct taxes exempted by the "all taxation" language. As the Hager court noted, such a construction would lead to near absurdity. It would leave the statutory provisions, so sweeping in their language, virtually meaningless.... The entities' day-to-day operations would be subject to the full panoply of taxation. If that were all Congress meant to accomplish, surely it would have done so with a narrowly phrased provision rather than the sweeping "all taxation" formulation it chose here. | "Capitations" are taxes paid by every person, without regard to property, profession, or any other circumstance. | "Are ""capitations"" taxes paid by every person, without regard to property, profession, or any other circumstance?" | Taxation - Memo # 111 - C - CK.docx | ROSS-003328873-ROSS-003328875 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 10291 | Am. Life & Acc. Ins. Co. of Kentucky v. Com., 173 S.W.3d 910 | 371+2001 | The character of a tax is determined by its operation, effect, and incidents, not by the label the legislature appends in the statute. Reynolds Metal Co. v. Martin, 269 Ky. 378, 107 S.W.2d 251, 259 (1937); City of Lebanon Junction v. Cellco Partnership, Ky.App., 80 S.W.3d 761, 764 (2001); Circle "C" Coal Co., Inc. v. Commonwealth, Ky.App., 628 S.W.2d 883, 885 (1981). KRS 136.320 does not specifically identify what type of tax is being imposed so we must determine whether it is an ad valorem tax from its operation and effect. | The character of a tax is determined by its operation, effect, and incidents, not by the label the legislature appends in the statute. | "Is the character of a tax determined by its operation, effect, and incidents, not by the label the legislature appends in the statute?" | 044741.docx | LEGALEASE-00130919-LEGALEASE-00130920 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 10292 | In re George, 361 F.3d 1157 | 371+2001 | A final award that is "the subject of a demand on the [Trust] Fund ... shall constitute a liquidated claim for damages against an employer." The terminology the state uses to define the money does not control the federal-bankruptcy-law question of whether the debt is discharged by bankruptcy. In United States v. Reorganized CF & I Fabricators of Utah, Inc., the Supreme Court held that even a federal statutory denotation of the amount as a "tax" did not make it a tax for bankruptcy discharge purposes. Federal courts apply a "functional examination" to the exaction, regardless of how it is labeled, to determine whether it is a tax, a penalty, a debt, or something else. "[A] tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government," as distinguished from a penalty, which is "an exaction imposed by statute as punishment for an unlawful act." Even though the money in Reorganized CF & I Fabricators would go to the United States Treasury and was termed a"tax" in the federal statute imposing the obligation, it was not a "tax," and thus not an "excise tax," because it was in substance a 100% penalty on pension plan funding deficiencies. Reorganized CF & I Fabricators does not really give us an answer for this case, because the amount the Georges owe the Trust Fund is not so obviously penal. | "Tax" is a pecuniary burden laid upon individuals or property for the purpose of supporting the government, as distinguished from a "penalty," which is an exaction imposed by statute as punishment for an unlawful act. | Is penalty an exaction? | 044762.docx | LEGALEASE-00130976-LEGALEASE-00130978 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10293 | United States v. Reorganized CF & I Fabricators of Utah, 518 U.S. 213 | 51+2954.1 | Anderson and New York applied the same test in determining whether an exaction was a tax under " 64(a), or a penalty or debt: "a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government." Anderson, 203 U.S., at 492, 27 S.Ct., at 140; New York, 315 U.S., at 515, 62 S.Ct., at 714-715; accord, Feiring, 313 U.S., at 285, 61 S.Ct., at 1029 ("" 64 extends to those pecuniary burdens laid upon individuals or their property ... for the purpose of defraying the expenses of government or of undertakings authorized by it"). Or, as the Court noted in a somewhat different context, "[a] tax is an enforced contribution to provide for the support of government; a penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act." United States v. La Franca, 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931). | For priority purposes, when determining whether exaction is tax, or penalty or debt, "tax" is enforced contribution to provide for support of government while "penalty" is exaction imposed by statute as punishment for unlawful act. | Is penalty an exaction imposed by statute as punishment for an unlawful act? | 044765.docx | LEGALEASE-00130992-LEGALEASE-00130993 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10294 | Silicon Valley Taxpayers Ass'n v. Santa Clara Cty. Open Space Auth., 44 Cal. 4th 431 | 371+2061 | "A tax, on the other hand, is very different. Unlike a special assessment, a tax can be levied " "without reference to peculiar benefits to particular individuals or property." " [Citations.] Indeed, "[n]othing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied." [Citations.]...."Therefore, while a special assessment may, like a special tax, be viewed in a sense as having been levied for a specific purpose, a critical distinction between the two public financing mechanisms is that a special assessment must confer a special benefit upon the property assessed beyond that conferred generally." (Knox, supra, 4 Cal.4th at pp. 141"142, 14 Cal.Rptr.2d 159, 841 P.2d 144.). | Unlike a special assessment, a tax can be levied without reference to peculiar benefits to particular individuals or property. | Can a tax be levied without reference to peculiar benefits to particular individuals or property? | 046117.docx | LEGALEASE-00130740-LEGALEASE-00130742 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 10295 | Mediterranean Enterprises v. Ssangyong Corp., 708 F.2d 1458 | 25T+143 | Counts 1, 2 and 4, alleging breach of the Agreement and breach of the fiduciary duty created by the Agreement, clearly fall within the scope of the arbitration clause and are thus proper subjects for arbitration. However, counts 7, 8 and 9 appear to raise issues that are either primarily or wholly outside the scope of the arbitration clause | Counts alleging breach of agreement and breach of fiduciary duty created by agreement clearly fell within scope of arbitration clause providing for arbitration of "any disputes arising hereunder," and thus were proper subjects for arbitration. | Can claims of breach of contract and breach of fiduciary duty be subject to arbitration? | 007440.docx | LEGALEASE-00131811-LEGALEASE-00131812 | SA, Sub | 0.28 | 0 | 0 | 1 | 1 | |
| 10296 | Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship, 784 F. Supp. 1223 | 95+179 | The Magistrate held at the August 26, 1991 hearing that the documents were complete and unambiguous; therefore the Plaintiffs could not offer evidence of negotiations that preceded the written agreement or any evidence of alleged contemporaneous oral agreements that materially alter, vary or add to the terms of the written documents. Nor could any parol evidence be admitted to show an agency relationship between Rezak and Lederman and the named Defendants. The Letter Agreement is drafted on Rezak's personal letterhead. Rezak and Lederman signed their own names without indicating that they acted on behalf of any entity. Under New York law, where a contract is signed by an individual who does not indicate therein that he is signing as an agent on behalf of a disclosed principal, the individual is deemed to be contracting on his own behalf. Beck v. Suro Textiles, Ltd., 612 F.Supp. 1193, 1194 (S.D.N.Y.1985). Since no agency was alleged within the four corners of any of the three documents, no parol evidence regarding agency can be introduced and the Defendants cannot be held to be parties to the agreement. See Kashfi v. Phibro"Salomon, Inc., 628 F.Supp. 727, 732 (S.D.N.Y.1986). | Under New York law, where contract is signed by individual who does not indicate that individual is signing as agent on behalf of disclosed principal, individual is deemed to be contracting on individual's own behalf. | Is an agent deemed to be contracting on his own behalf when he does not indicate that he is signing as an agent on behalf of a disclosed principal? | Alternative Dispute Resolution - Memo 570 - RK.docx | ROSS-003312536-ROSS-003312537 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 10297 | Aktepe v. USA, 105 F.3d 1400 | 34+3(1) | In a related manner, the political branches of government are accorded a particularly high degree of deference in the area of military affairs. Owens v. Brown, 455 F.Supp. 291, 299 (D.D.C.1978). The Constitution emphatically confers authority over the military upon the executive and legislative branches of government. U.S. Const. art. I, " 8, cls. (granting Congress the power to declare war and to provide for, organize, arm, maintain, and govern the military); U.S. Const. art. II, " 2 (providing the President shall be the Commander-in-Chief of the armed forces); see also United States v. Stanley, 483 U.S. 669, 682, 107 S.Ct. 3054, 3063, 97 L.Ed.2d 550 (1987) (noting the insistence with which the Constitution granted authority over the Army, Navy, and militia to the political branches). The Supreme Court has generally declined to reach the merits of cases requiring review of military decisions, particularly when those cases challenged the institutional functioning of the military in areas such as personnel, discipline, and training. See, e.g., Chappell v. Wallace, 462 U.S. 296, 304, 103 S.Ct. 2362, 2368, 76 L.Ed.2d 586 (1983) (concluding that unique disciplinary structure of the military establishment precluded enlisted military personnel from seeking to recover fromtheir superior officers for alleged constitutional violations); Gilligan v. Morgan, 413 U.S. 1, 5- 13, 93 S.Ct. 2440, 2443-47, 37 L.Ed.2d 407 (1973) (refusing to review and assert continuing regulatory control over the training of the Ohio National Guard); Orloff v. Willoughby, 345 U.S. 83, 90-92, 73 S.Ct. 534, 538-39, 97 L.Ed. 842 (1953) (holding that commissioning of officers in the Army was a matter of discretion within the province of the President). | Political branches of government are accorded particularly high degree of deference in area of military affairs. | Are the political branches of government accorded a higher degree of deference in the area of military affairs? | Armed Services - Memo 83 - RK.docx | ROSS-003286623-ROSS-003286624 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10298 | Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston, 678 So.2d 765 | 46H+160 | We agree with the reasoning of the New York Court of Appeals, and we affirm the trial court's holding that Paragraph 13 of the partnership agreement does not concern retirements benefits in the manner contemplated by DR 2"109(A). There is sound logic for such reasoning. Under Alabama partnership law, unless a partnership agreement provides otherwise, the withdrawal of a partner constitutes a dissolution of the partnership. " 10"8"90 et seq., Ala.Code 1975. Partnership agreements, such as the agreement in this case, avoid the automatic dissolution of a firm upon the withdrawal of a partner, by fixing the amount of deferred compensation the partner will be allowed upon withdrawal. Otherwise, the partnership would automatically dissolve upon the withdrawal of the partner, and he or she would be entitled to an accounting for the amount of his or her interest in the dissolved partnership. Cohen, 75 N.Y.2d at 102"03, 550 N.E.2d at 414, 551 N.Y.S.2d at 160. | Partnership agreements, such as law firm partnership agreement, avoid automatic dissolution of firm upon withdrawal of a partner by fixing the amount of deferred compensation the partner will be allowed upon withdrawal; otherwise, partnership would automatically dissolve upon withdrawal of partner and he would be entitled to an accounting for the amount of his interest in the dissolved partnership. | Does the withdrawal of a partner constitute an automatic dissolution? | 022195.docx | LEGALEASE-00132493-LEGALEASE-00132494 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 10299 | Indep. Tr. Corp. v. Stan Miller, 796 P.2d 483 | 307A+749.1 | Pretrial conferences and orders are tools for simplifying the issues with an eye toward ultimately resolving lawsuits on the merits, not methods for avoiding trials altogether. See Padovani v. Bruchhausen, 293 F.2d 546, 548 (2d Cir.1961)'3; Glisan v. Kurth, 153 Colo. 102, 108, 384 P.2d 946, 949 (1963). The rule governing summary judgment is Rule 56 and the affidavit filed by WSF by itself did not entitle WSF to judgment as a matter of law on the matter of late charges. See Ginter v. Palmer & Co., 196 Colo. 203, 206, 585 P.2d 583, 585 (1978). Summary judgment was proper, therefore, only if the district court had the power to modify the requirements of Rule 56 through the pretrial order entered pursuant to Rule 16, either inherently or with the consent of ITC. | Pretrial conferences and orders are tools for simplifying issues with eye toward ultimately resolving lawsuits on the merits, not methods for avoiding trials altogether. | "What are pretrial conferences and orders, tools for?" | Pretrial Procedure - Memo # 1482 - C - ES.docx | ROSS-003328291-ROSS-003328292 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10300 | Ingbretson v. Louisiana-Pac. Corp., 272 Mont. 294 | 307A+750 | The pretrial order should be liberally construed to permit any issues at trial that are "embraced within its language." Nentwig v. United Industry, Inc. (1992), 256 Mont. 134, 139, 845 P.2d 99, 102. In the pretrial order, Louisiana"Pacific's first contention was its defense that Ingbretson was discharged for cause. It is disingenuous for Louisiana"Pacific to now claim surprise that the merits of Ingbretson's discharge were considered by the court. Because this issue was raised in the pretrial order, we conclude the court did not abuse its discretion by considering it. | Pretrial order should be liberally construed to permit any issues at trial that are embraced within its language. | Should a Pretrial order be liberally construed to permit any issues at trial that are embraced within its language? | 027244.docx | LEGALEASE-00131864-LEGALEASE-00131865 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10301 | Bass-Davis v. Davis, 122 Nev. 442 | 307A+331 | Generally, in cases based on negligently lost or destroyed evidence, an adverse inference instruction is tied to a showing that the party controlling the evidence had notice that it was relevant at the time when the evidence was lost or destroyed. In other words, when presented with a spoliation allegation, the threshold question should be whether the alleged spoliator was under any obligation to preserve the missing or destroyed evidence. The duty to preserve springs from a variety of sources, including ethical obligations, statutes, regulations, and common law. Courts, including this court, that adhere to a common-law duty to preserve evidence have held that a party is required to preserve documents, tangible items, and information relevant to litigation that are reasonably calculated to lead to the discovery of admissible evidence. Thus, the prelitigation duty to preserve evidence is imposed once a party is on "notice" of a potential legal claim. While few courts have expounded on the concept of notice, those that have conclude that a party is on notice when litigation is reasonably foreseeable. | The prelitigation duty to preserve evidence is imposed once a party is on notice of a potential legal claim. | Is the prelitigation duty to preserve evidence imposed once a party is on notice of a potential legal claim? | 027246.docx | LEGALEASE-00131883-LEGALEASE-00131884 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 10302 | Jabbia v. Sanders, 499 So. 2d 1070 | 307A+717.1 | The granting of a continuance is discretionary with the trial court except when the mover demonstrates that one of the premptory grounds set forth in C.C.P. art. 1602 is present. Art. 1602 provides: "A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance." In order to be entitled to a mandatory continuance, it is not enough that a material witness has absented himself; the mover must also demonstrate the materiality of the testimony of the missing witness. Gallin v. Travelers Insurance Co., 323 So.2d 908 (La.App. 4 Cir.1975), writ denied, 329 So.2d 452 (La.1976); Sather v. White, 388 So.2d 402 (La.App. 1 Cir.1980). In the present case, although the attorney for defendants did claim that he believed the testimony of Mr. Sanders would be material to the question of plaintiff's injuries, he did not specify in what manner it would be so. Mr. Sanders was not involved in the accident, nor was he present when the accident occurred. We conclude that defendants failed to show that Mr. Sanders' testimony was material and, therefore, were not entitled to a mandatory continuance. Additionally, it appears that the granting of a continuance would have served no purpose. At the time of trial, Mr. Sanders was unavailable to testify because he was hospitalized and seriously ill with cancer. Because of the seriousness of Mr. Sanders' condition, there apparently was little likelihood that he would ever be able to testify. Given these facts and the failure of defendants to show in what respect Mr. Sanders' testimony would be material to the case, the trial court's decision not to grant the continuance was correct. | Party moving for continuance, to be entitled to mandatory continuance, may not merely show that material witness has absented himself, but must also demonstrate materiality of testimony of missing witness. LSA-C.C.P. art. 1602. | "To be entitled to a mandatory continuance, must a mover demonstrate the materiality of the testimony of the missing witness?" | 027422.docx | LEGALEASE-00131998-LEGALEASE-00131999 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10303 | Mobile Cab & Baggage Co. v. Busby, 277 Ala. 292 | 307A+717.1 | There is no question but that the granting of a continuance is discretionary with the trial court, and also that the movant must show that the testimony of the absent witness would be more than cumulative. Knowles v. Blue, 209 Ala. 27, 95 So.481; Pate Lumber Company v. Davis, 215 Ala. 547, 112 So. 124. The refusing of a continuance because of an absent witness, where it is not shown what the witness would say if present, is not an abuse of the court's discretion. Authorities, supra. | To warrant continuance because of absence of witness movant must show that testimony of absent witness would be more than cumulative. | "To warrant continuance because of the absence of a witness, must a movant show that testimony of an absent witness would be more than cumulative?" | 027467.docx | LEGALEASE-00132284-LEGALEASE-00132285 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10304 | Stephens v. Bi-State Dev. Agency, 439 S.W.2d 252 | 307A+717.1 | This Court has heretofore rule every intendment is in favor of the trial court's ruling on a motion to continue. Krieber v. Krieber, Mo.App., 420 S.W.2d 376. Supreme Court Rule 65.04(2) requires from the applicant for a continuance 'facts showing reasonable grounds of belief that the attendance or testimony of such witness will be procured within a reasonable time.' It should be observed the Pulliam affidavit is totally devoid of this requirement. As a general rule in order for the absence of a witness to be grounds for a continuance there must be a probability the testimony can be obtained at a certain future time or within a reasonable time. 17 C.J.S. s 46, page 423. | Generally, in order for absence of a witness to be grounds for a continuance there must be a probability the testimony can be obtained at a certain future time or within a reasonable time. V.A.M.R. Civil Rule 65.04(2, 3). | When will the absence of a witness be grounds for a continuance? | Pretrial Procedure - Memo # 2243 - C - SKG.docx | ROSS-003301629-ROSS-003301630 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 10305 | J & J Container Mfg. v. Cintas-R U.S., 516 S.W.3d 635 | 307A+517.1 | Crofts v. Court of Civil Appeals for Eighth Supreme Judicial Dist., 362 S.W.2d 101, 104 (Tex. 1962); Waterman Steamship Corp. v. Ruiz, 355 S.W.3d 387, 398 (Tex. App."Houston [1st Dist.] 2011, pet. denied). Cintas, however, used its nonsuit to abandon its affirmative claim for relief while keeping the money it collected by executing on the default judgment that was later reversed. Though J & J had not yet filed a pleading requesting the return of the $19,288"or any other relief"when Cintas nonsuited its claim, J & J asserted in its motion for new trial that Cintas could not keep the money consistent with due process unless Cintas prevailed on its contract claim in a new trial. Because the new-trial motion sufficed to inform the trial court that J & J sought the return of its money if Cintas did not press and prevail on its contract claim, we hold that the trial court abused its discretion by denying the motion. | Nonsuits and dismissals other than those made on the merits put the parties in the positions they occupied before suit was filed. | Do nonsuits and dismissals other than those made on the merits put the parties in the positions they occupied before suit was filed? | 027625.docx | LEGALEASE-00132372-LEGALEASE-00132374 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10306 | Fox v. Hinderliter, 222 S.W.3d 154 | 198H+805 | The Hinderliters argue that since Dr. Dollinger's report was timely filed, Fox is not entitled to seek attorney's fees under section 74.351(b) because of the potential for a 30"day extension under subsection (c); therefore, Fox's motion was not one seeking "sanctions, attorney's fees or other costs," and did not survive their nonsuit. We disagree. The mere possibility that the trial court may grant a 30"day extension does not deprive Fox of the right to have his motion heard, and does not alter the character of the motion as one for statutory sanctions. Rule 162 provides that a dismissal has "no effect" on a pending motion for sanctions, attorney's fees and costs, indicating that the motion remains pending and must therefore be heard and ruled on, but not that it must necessarily be granted. See Tex.R. Civ. P. 162. | Trial court had duty to determine whether expert's report met statutory requirements in medical malpractice action and to determine whether defendant physician was entitled to costs, attorney fees, and sanctions for inadequate report after patient filed motion for nonsuit, given that motion for nonsuit had no effect on physician's motion under procedural rules, and physician properly renewed his request for ruling on his original motion. V.T.C.A., Civil Practice & Remedies Code S 74.351(b). | "Although rule regarding nonsuits allows the trial court to hold hearings and enter orders affecting costs, attorney fees, and sanctions after a nonsuit is filed, does the rule forestall the nonsuit's effect of rendering the merits of the case moot?" | 027666.docx | LEGALEASE-00132311-LEGALEASE-00132312 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 10307 | A.T. ex rel. T.T. v. Cohen, 445 N.J. Super. 300 | 307A+515.1 | The decision whether to dismiss a matter without prejudice under Rule 4:37"1(b) lies within the judge's sound discretion. Mack Auto Imports, Inc. v. Jaguar Cars, Inc., 244 N.J.Super. 254, 258, 581 A.2d 1372 (App.Div.1990). "In exercising that discretion, the court is chiefly required to protect "the rights of the defendant." " Shulas v. Estabrook, 385 N.J.Super. 91, 97, 895 A.2d 1234 (App.Div.2006) (quoting Burke v. Cent. R. Co., 42 N.J.Super. 387, 397, 126 A.2d 903 (App.Div.1956)). In Shulas, supra, 385 N.J.Super. at 101"02, 895 A.2d 1234, we instructed that "an examination into the propriety of a voluntary dismissal without prejudice requires an investigation into the reasons why the order was sought as well as the actions or inactions of the parties that preceded its entry." | The decision whether to dismiss a matter without prejudice under the rule authorizing a voluntary dismissal of an action by an order of the court lies within the judge's sound discretion. N.J. Ct. R. 4:37-1(b). | "When a party moves to voluntarily dismiss an action, what are all the matters that lie within the court's sound discretion?" | 027676.docx | LEGALEASE-00132325-LEGALEASE-00132326 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10308 | Vargas v. Chavez ex rel. Chavez, 327 S.W.3d 338 | 307A+517.1 | Having sustained Issue Three, it is not necessary to address the merits of Appellants' motion to dismiss as presented in Issues One and Two. Those issues are overruled as moot. Still, given the disposition of Issue Three, we must still determine how to properly dispose of the appeal. As a general matter, a court has no subject matter jurisdiction to consider a case in which no actual case or controversy exists between the parties. See Lincoln Prop. Co. v. Kondos, 110 S.W.3d 712, 715 (Tex.App.-Dallas 2003, no pet). However, as the Texas Supreme Court has recently recognized, in cases where a previously live controversy is extinguished by a non-suit, the court retains "limited authority to dispose of the case."Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 865 (Tex.2010). This limited jurisdiction includes the power to consider a defendant's motion for certain types of sanctions. See Joachim, 315 S.W.3d at 864, citing Scott & White Mem'l Hosp. v. Schexnider, 940 S.W.2d 594, 596 (Tex.1996)(per curiam)(holding that the trial court's authority to consider a defendant's motion for sanctions under Texas Rules of Civil Procedure 13 survived plaintiff's non-suit). In this case, there is no record of such a sanctions motion in this case, and the parties do not argue that any such claims survived the non-suit. Accordingly, there was no controversy remaining between the parties, and the case should have been dismissed. See Kondos, 110 S.W.3d at 715. | After a nonsuit, a trial court retains jurisdiction to consider defendant's motion for certain types of sanctions. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "After a nonsuit, does a trial court retain jurisdiction to consider defendant's motion for certain types of sanctions?" | 027733.docx | LEGALEASE-00131871-LEGALEASE-00131872 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10309 | CHCA Woman's Hosp. v. Lidji, 369 S.W.3d 488 | 307A+517.1 | Texas Rule of Civil Procedure 162 provides, "At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." Tex.R. Civ. P. 162. A party has an "absolute right" to file a nonsuit. Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex.2010). A voluntary nonsuit "extinguishes a case or controversy from the moment the motion for nonsuit is filed or an oral motion is made in open court" and it "renders the merits of the nonsuited case moot." Id. (quoting Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98, 100 (Tex.2006) (per curiam) and citing Villafani v. Trejo, 251 S.W.3d 466, 469 (Tex.2008)). Section 74.351 does not address what effect, if any, a claimant's nonsuit has on the 120"day time period for serving expert reports, nor does it expressly allow for tolling of the 120"day time period. | A voluntary nonsuit extinguishes a case or controversy from the moment the motion for nonsuit is filed or an oral motion is made in open court, and it renders the merits of the nonsuited case moot. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a nonsuit render the merits of the nonsuited case moot? | Pretrial Procedure - Memo # 2345 - C - KG.docx | ROSS-003313500-ROSS-003313501 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 10310 | J.G. v. Gavigan, 487 S.W.3d 509 | 307A+517.1 | Here, Respondent did not file motions to terminate the protective orders but moved to dismiss both actions without prejudice. As opposed to a motion to terminate, which merely cuts off the duration of an order of protection, a dismissal of the action without prejudice would necessarily extinguish the order of protection at its inception, as though it had never been filed or granted. It is well settled in the law that once a plaintiff files a voluntary dismissal of his or her petition: "nothing remains before the court upon which it can act; even an order reinstating the case on the trial docket at the plaintiffs request is a nullity. The legal situation is as though the suit had never been brought. No steps can be taken, and any step attempted in the dismissed suit is a nullity.'"Richman v. Coughlin, 75 S.W.3d 334, 338 (Mo.App.W.D.2002) (quoting Samland v. J. White Transp. Co., Inc., 675 S.W.2d 92, 96 (Mo.App.W.D.1984)). In effect, it would be as if the order of protection never existed. | When a plaintiff has voluntarily dismissed his or her petition, the legal situation is as though the suit had never been brought; no steps can be taken, and any step attempted in the dismissed suit is a nullity. | "When a plaintiff has voluntarily dismissed his or her petition, is the legal situation as though the suit had never been brought?" | Pretrial Procedure - Memo # 2361 - C - VP.docx | ROSS-003301694-ROSS-003301695 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10311 | Joachim v. Travelers Ins. Co., 279 S.W.3d 812 | 307A+517.1 | A nonsuit extinguishes a case or controversy the moment it is filed with the court clerk or requested in open court. Shadowbrook Apts. v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990). While the date a trial court signs an order dismissing the suit is the "starting point for determining when a trial court's plenary power expires," a nonsuit is effective when filed. In re Bennett, 960 S.W.2d 35, 38 (Tex.1997). Under Rule 162, a trial court retains authority after a nonsuit is filed and during the period of its plenary power to consider costs, attorney's fees and sanctions, matters "collateral" to the merits. Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon, 195 S.W.3d 98, 101 (Tex.2006); In re Bennett, 960 S.W.2d at 38. But it is without discretion to deny a nonsuit. See In re Bennett, 960 S.W.2d at 38; Hooks v. Fourth Court of Appeals, 808 S.W.2d 56, 59 (Tex.1991) (party requesting a nonsuit has absolute right to nonsuit at moment notice is timely filed); Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982) (granting nonsuit is merely a ministerial act).Here, at the time Joachim filed a nonsuit in cause number 99"507,018, Travelers did not have on file a claim for affirmative relief, attorney's fees, or sanctions. The trial court was not empowered to adjudicate the merits of Joachim's claim after he filed a nonsuit. | A nonsuit extinguishes a case or controversy the moment it is filed with the court clerk or requested in open court. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a nonsuit extinguish a case or controversy the moment it is filed with the court clerk or requested in open court? | Pretrial Procedure - Memo # 2382 - C - TM.docx | ROSS-003286604-ROSS-003286606 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10312 | Bryant v. Williams, 161 N.C. App. 444 | 307A+517.1 | The consent orders provide, in part, that both parties' claims for domestic violence orders "shall be dismissed." Where the complaint is voluntarily dismissed, plaintiff is returned "to the legal position enjoyed prior to filing of the complaint." Augur v. Augur, 356 N.C. 582, 590, 573 S.E.2d 125, 131 (2002)(citing Brisson v. Kathy A. Santoriello, M.D., P.A., 351 N.C. 589, 593, 528 S.E.2d 568, 570 (2000)). Accordingly, no allegation of domestic violence remained. Although our District Courts are empowered to enter protective orders or approve consent agreements under Chapter 50B, these orders are authorized only "to bring about a cessation of acts of domestic violence." N.C. Gen.Stat. " 50B"3(a) (2001). The court's authority to enter a protective order or approve a consent agreement is dependent upon finding that an act of domestic violence occurred and that the order furthers the purpose of ceasing acts of domestic violence. See Brandon v. Brandon, 132 N.C.App. 646, 654, 513 S.E.2d 589, 595 (1999) (where a protective order does not contain a conclusion of law supported by adequate findings of fact that domestic violence occurred, the "conclusion [of law] cannot provide grounds for issuance of the DVPO [Domestic Violence Protective Order]"); Augur, 356 N.C. at 590, 573 S.E.2d at 131 (where the court concludes there was no act of domestic violence, the court may not enter a protective order and the court's decision "ha[s] the effect of leaving defendant exactly where he was prior to the filing of plaintiff's complaint"); Story v. Story, 57 N.C.App. 509, 291 S.E.2d 923 (1982) (Chapter 50B authorizes the trial court to enter protective orders only where there is an act of domestic violence occurring on or after the effective date of the statute). Although the concurring opinion states these cases do not arise from mutual domestic violence protective orders, we find this distinction between cases arising from mutual claims for domestic violence and claims by only one party is | Where the complaint is voluntarily dismissed, plaintiff is returned to the legal position enjoyed prior to filing of the complaint. | "Where the complaint is voluntarily dismissed, is the plaintiff returned to the legal position enjoyed prior to filing of the complaint?" | Pretrial Procedure - Memo # 2385 - C - TM.docx | ROSS-003288235-ROSS-003288237 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10313 | Kelly v. Colston, 977 So. 2d 692 | 307A+517.1 | The effect of a voluntary dismissal prior to submission is immediate, final, and irreversible. It terminates the litigation and instantaneously divests the court of its jurisdiction to enter further orders. See Randle-E. Ambulance Serv., Inc. v. Vasta, 360 So.2d 68 (Fla.1978). This is equally true when the dismissal is taken in a dissolution action. See Hayden v. Hayden, 373 So.2d 436, 438 (Fla. 3d DCA 1979) (holding a dissolution action may be dismissed without leave of the court and, once taken, the court loses jurisdiction and power to exercise discretion or adjudicate the action in any way). A dismissal is effective, even though the best interests of the minor children might be affected. See Nathanson v. Nathanson, 693 So.2d 1061, 1062 (Fla. 4th DCA 1997). Consequently, if the petitioner files a voluntary dismissal before "submission" occurs, any further orders are null and void. | If the petitioner files a voluntary dismissal before "submission" of case to the court occurs, any further orders are null and void. West's F.S.A. RCP Rule 1.420. | "If the petitioner files a voluntary dismissal before ""submission"" of case to the court occurs, are any further orders null and void?" | Pretrial Procedure - Memo # 2406 - C - ES.docx | ROSS-003314960-ROSS-003314961 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 10314 | Bldg. Indus. Ass'n of the Bay Area v. City of San Ramon, 4 Cal. App. 5th 62, 85ΓÇô86, 208 Cal. Rptr. 3d 320 | 371+2001 | Courts have analyzed Proposition 218's distinction between special and general taxes and concluded that, "[t]he essence of a special tax "is that its proceeds are earmarked or dedicated in some manner to a specific project or projects." (Neecke v. City of Mill Valley (1995) 39 Cal.App.4th 946, 956 [46 Cal.Rptr.2d 266][.] )" (Bay Area Cellular, supra, 162 Cal.App.4th at p. 696, 75 Cal.Rptr.3d 839.) "[A] tax is special whenever expenditure of its revenues is limited to specific purposes; this is true even though there may be multiple specific purposes for which revenues may be spent. (Monterey Peninsula Taxpayers Assn. v. County of Monterey (1992) 8 Cal.App.4th 1520, 1535 [11 Cal.Rptr.2d 188].) A tax is general only when its revenues are placed into the general fund and are available for expenditure for any and all governmental purposes. (Ibid.)" (Howard Jarvis Taxpayers Assn. v. City of Roseville (2003) 106 Cal.App.4th 1178, 1185, 132 Cal.Rptr.2d 1 (City of Roseville).). | A tax is a "special tax" under state constitution whenever expenditure of its revenues is limited to specific purposes; this is true even though there may be multiple specific purposes for which revenues may be spent. Cal. Const. art. 13C, S 1(d). | Do special taxes provide revenue for a specific or limited purpose? | 044653.docx | LEGALEASE-00131532-LEGALEASE-00131533 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 10315 | City of Pasadena v. Chamberlain, 1 Cal. App. 2d 125 | 268+426 | It is suggested that the holders of other land in the district would be deprived of their property without due process of law, contrary to Amendment 14, Constitution of the United States, if the city by its mere entry upon sucha parcel of land were to absolve it of assessments theretofore levied against it, by shifting that burden onto other property in the district, or that such a course would impair the obligation of the contract of the holders of such improvement bonds by reducing the security for their bonds, contrary to article 1, " 10, Constitution of the United States. The true and fundamental reason why the property remains subject to the assessments levied against it until paid, even though the city enters and devotes the land to public use, lies in the fact that the improvement acts cited expressly subject the land within the district to the assessments levied to pay instalments due on improvement bonds. Where there is legislative authority therefor, property owned by a municipality and devoted to public use may be liable for special assessments for public improvements. This was pointed out by the court in City of Inglewood v. County of Los Angeles, supra. | Where there is legislative authority therefor, property owned by municipality and devoted to public use may be liable for special assessment for public improvements. | "Is legislative authority essential for a ""special assessment"" made on a public property?" | Taxation - Memo # 307 - C - CK.docx | ROSS-003286860-ROSS-003286861 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10316 | Com. v. Thomas Heavy Hauling, 889 S.W.2d 807 | 371+2001 | A distinction exists between a fee and a tax, but it is one that is not always observed with precisional nicety in judicial opinions. The designation given a particular monetary burden by the legislature is not conclusive in determining whether or not it is a tax. The permit fee, as provided in KRS 189.270, equates itself to a "license fee" and may be defined to mean that there has been conferred on a person the right to do something which otherwise he would not have the right to do"a special privilege rather than a right common to all persons. It imports regulation. A "license fee" implies the imposition or exaction on the right to exercise a business privilege. We agree with the trial court's determination that the statutory permit charge constitutes a fee(s). The permit fee is a charge for exercising the privilege of operating an overweight and/or overdimensional vehicle on Kentucky's highways. City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248 (1948); see also Dickson v. Jefferson County Board of Education, 311 Ky. 781, 225 S.W.2d 672 (1949). | Designation given particular monetary burden by legislature is not conclusive in determining whether it is a tax. | "Is a designation given to a particular monetary burden by the legislature, conclusive in determining whether it is a tax?" | 044990.docx | LEGALEASE-00132169-LEGALEASE-00132170 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 10317 | United States v. McDonnell, 792 F.3d 478 | 63+1(1) | We observe, first, that the federal bribery statute, 18 U.S.C. " 201(b), from which the honest-services wire fraud statute draws meaning, criminalizes the act of "corruptly demand[ing], seek[ing], receiv [ing], accept[ing], or agree[ing] to receive or accept" a thing of value in return for influence. 18 U.S.C. " 201(b)(2). The solicitation or acceptance of the bribe completes the crime, regardless of whether the recipient completes, or even commences, the "official act" the bribe payor sought to influence. See Howard v. United States, 345 F.2d 126, 128 (1st Cir.1965) ("[I]t has been long established that the crime of bribery is complete upon the acceptance of a bribe regardless of whether or not improper action is thereafter taken."). The same is true of a Hobbs Act extortion charge. See Evans, 504 U.S. at 268, 112 S.Ct. 1881 (recognizing that the crime of extortion under color of official right is "completed at the time when the public official receives a payment in return for his agreement to perform specific official acts"); United States v. Loftus, 992 F.2d 793, 797 (8th Cir.1993). In either case, when prosecuting a bribe recipient, the Government need only prove that he or she solicited or accepted the bribe in return for performing, or being influenced in, some particular official act. Of importance, the consummation of an "official act" is "not an element of the offense." Evans, 504 U.S. at 268, 112 S.Ct. 1881 | The solicitation or acceptance of a bribe completes the crime, regardless of whether recipient completes, or even commences, the "official act" the bribe payor sought to influence. 18 U.S.C.A. S 201(b)(2). | Is bribery of a public official complete when the bribe is solicited or accepted? | Bribery - Memo #247 - C - LB.docx | ROSS-003285753-ROSS-003285754 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10318 | United States v. Tomblin, 46 F.3d 1369 | 63+1(1) | Under the bribery statutes, the government must prove a quid pro quo, that is, that the official took money in return for an exercise of his official power. McCormick v. United States, 500 U.S. 257, 269"73, 111 S.Ct. 1807, 1815"16, 114 L.Ed.2d 307 (1991). In order to convict a briber, the government must prove that the accused intended to bribe the official. Intending to make a campaign contribution does not constitute bribery, even though many contributors hope that the official will act favorably because of their contributions. See United States v. Allen, 10 F.3d 405, 411 (7th Cir.1993) ("[A]ccepting a campaign contribution does not equal taking a bribe unless the payment is made in exchange for an explicit promise to perform or not perform an official act. Vague expectations of some future benefit should not be sufficient to make a payment a bribe."); United States v. Biaggi, 909 F.2d 662, 695 (2d Cir.1990) ("There is a line between money contributed lawfully because of a candidate's positions on issues and money contributed unlawfully as part of an arrangement to secure or reward official action, though its location is not always clear."), cert. denied, 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991). Accordingly, a jury instruction must adequately distinguish between the lawful intent associated with making a campaign contribution and the unlawful intent associated with bribery. See United States v. Taylor, 993 F.2d 382, 385 (4th Cir.) ("Any payment to a public official, whether it be a legitimate campaign contribution or a bribe, is made because of the public office he holds. Evans makes clear that the public official must obtain "a payment to which he was not entitled, knowing that the payment was made in return for official acts." " (quoting Evans v. United States, 504 U.S. 255, """", 112 S.Ct. 1881, 1889, 119 L.Ed.2d 57 (1992)) (emphasis added)), cert. denied, """ U.S. """", 114 S.Ct. 249, 126 L.Ed.2d 202 (1993). The instructions requested by Tomblin | Intending to make campaign contribution does not constitute bribery, even though many contributors hope that official will act favorably because of their contributions. 18 U.S.C.A. S 201. | Does intending to make a campaign contribution constitute bribery? | 011416.docx | LEGALEASE-00133296-LEGALEASE-00133297 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 10319 | United States v. Peleti, 576 F.3d 377 | 63+1(1) | To commit bribery, the public official must receive the money "corruptly." United States v. Arroyo, 581 F.2d 649, 657 (7th Cir.1978). An officer can act corruptly without intending to be influenced; the officer need only "solicit or receive the money on the representation that the money is for the purpose of influencing his performance of some official act." Id. at 652; see also United States v. Myers, 692 F.2d 823, 841-42 (2nd Cir.1982) (noting that " "being influenced" does not describe the [recipient's] true intent, it describes the intention he conveys to the briber in exchange for the bribe" and holding that an official commits bribery if he gives "false promises of assistance to people he believed were offering him money to influence his official actions"). Peleti acknowledges in his brief that if "he misled the bribepayor to believe he was going to do a specific official act in exchange for something in value," then he committed bribery. Peleti argues, however, that he did no such thing and that there exists no factual basis for finding otherwise. | Public official can act "corruptly," as would support conviction for bribery, without intending to be influenced; officer need only solicit or receive the money on the representation that the money is for the purpose of influencing his performance of some official act. 18 U.S.C.A. S 201(b)(2)(A). | Is it possible for a public official to corrupt bribery statute without intending to be influenced? | 011453.docx | LEGALEASE-00133060-LEGALEASE-00133061 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 10320 | Handelsman v. Bedford Village Associates Ltd. Partnership, 213 F.3d 48 | 289+741(1) | Second, the district court also erred insofar as it treated the limited partners (represented by Kronman as Partner Representative) as dispensable parties to the litigation. In this regard, we are not persuaded as a matter of law that Kronman in his individual capacity could act as a surrogate for the limited partners' interests. Under New York law, "a partnership cause of action belongs only to the partnership itself or the partners jointly, and [ ] an individual member of the partnership may only sue and recover on a partnership obligation on the partnership's behalf." Gmerek v. Scrivner, Inc., 221 A.D.2d 991, 634 N.Y.S.2d 299, 299 (4th Dep't 1995) (citing Stevens v. St. Joseph's Hosp., 52 A.D.2d 722, 381 N.Y.S.2d 927, 928 (4th Dep't 1976)); see also D'Ippolito v. Cities Serv. Co., 374 F.2d 643, 647 (2d Cir.1967) ( "[A] partner may still sue on "a debt due the partnership" but "must bring the action on behalf of and for the benefit of the partnership and may not recover on such an obligation individually." ") (citing Kirschbaum v. Merchants Bank, 272 A.D. 336, 71 N.Y.S.2d 79, 80 (1st Dep't 1947)); Poley v. Sony Music Entertainment, Inc., 222 A.D.2d 308, 636 N.Y.S.2d 10, 10 (1st Dep't 1995) (holding that a partner lacked standing to prosecute claim for breach of contract in his individual capacity); Shea v. Hambro Am. Inc., 606 N.Y.S.2d 198, 199 (1st Dep't 1994) (holding that a partner lacked standing to bring individual claims to recover debts allegedly owed to partnership). Thus, the distinction between a suit by Kronman as Partner Representative and a suit by Kronman in his individual capacity is not merely semantic, but substantive. Cf. Squibb, 160 F.3d at 937 n. 26 ("The distinction between a suit against a representative and a suit against an individual"a judgment for or against whom binds others by contract"is not merely formal."). | Under New York law, a partnership cause of action belongs only to the partnership itself or the partners jointly, and an individual member of the partnership may only sue and recover on a partnership obligation on the partnership's behalf. | Does a partnership cause of action belong only to the partnership itself? | Partnership - Memo 252 - RK.docx | ROSS-003287349-ROSS-003287350 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10321 | U.S. v. Wilson, 59 F.2d 97 | 23H+731 | A partner or a principal is not liable for the criminal acts of his associates, or of the agent, unless within the scope of the business or employment (8 R. C. L. 27); nor does mere relation of principal and agent or partnership, of itself, make the partner or principal liable for the criminal act of the associate or agent (16 Corpus Juris, 23); but, where the agent is employed to sell a compound containing qualities and substances designed or intended for use in the manufacture of alcoholic liquors, or is popularly known to contain such qualities and is used for the purpose, the principal must see that such compound is sold by the agent in harmony with, and not antagonistic to, or against, the sovereign will. The sovereign will or national law enters into and becomes a part of the contract of agency and employment, and the principal is bound to know the properties and elements of the article sold, and that it is not sold for the purpose of transgressing the solvereign will. | On employing agent to sell compound, containing, or popularly known to contain, qualities and substances designed for use in manufacturing alcoholic liquors, and so used must see that it is sold in harmony with sovereign will. | Will a partner or a principal be liable for the criminal acts of his associates or agent? | 022137.docx | LEGALEASE-00133543-LEGALEASE-00133544 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10322 | Life Ins. Co. of Ga. v. Chenault, 252 S.W.2d 851 | 302+8(15) | The averments in the amended answer that the insured "induced the defendant to enter into the contract of insurance by false and fraudulent statements concerning her physical and mental condition and history", are but conclusions of the pleader. Therefore, the court properly sustained a general demurrer to this pleading. The mere averments of fraud and misrepresentation, without statement of facts showing wherein and how they were committed, is only the conclusion of the pleader. The facts constituting the fraud or misrepresentation must be alleged to sustain a cause of action or defense. Edward Brockhaus & Co. v. Gilson, 263 Ky. 509, 92 S.W.2d 830, and the many authorities there cited. | Mere averments of fraud and misrepresentation, without statement of facts showing wherein and how they were committed, is only the conclusion of the pleader, and facts constituting the fraud or misrepresentation must be alleged to sustain a cause of action or defense. | "Is an averment of fraud and misrepresentation, without statement of facts, only the conclusion of the pleader?" | 023251.docx | LEGALEASE-00133138-LEGALEASE-00133139 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 10323 | Carroll v. Pfeffer, 262 F.3d 847 | 170A+1935.1 | Carroll begins her appeal by challenging the district court's sua sponte order directing Officer Pfeffer to file an answer after the pretrial conference was held and after the pretrial order had been entered. The district court realized, shortly before trial was to begin, that Officer Pfeffer had never filed an answer or raised any defenses. The district court determined that this omission was plain error and that the case should not be allowed to proceed because it had not met even the most basic pleading requirements. Although an order on a final pretrial conference normally controls the subsequent course of action, the order can be modified to prevent manifest injustice. Fed.R.Civ.P. 16(e). "A pretrial order will be modified only if there is no substantial injury or prejudice to the opponent." Hale v. Firestone Tire & Rubber Co., 756 F.2d 1322, 1335 (8th Cir.1985).There was no substantial injury or prejudice to Carroll in allowing Officer Pfeffer to file a late answer in this case. Had the case proceeded to trial, Carroll likely would have been the party prejudiced, as she would have had to put on her entire case-in-chief only to have it later dismissed by the district court for failure to establish a submissible claim. Not allowing Officer Pfeffer to file his answer and raise his defense of qualified immunity would have been a manifest injustice. Here, the district court acted in the interests of fair play while at the same time recognizing the need to conserve judicial resources. We find no error in the district court's decision to modify the pretrial order. | Although an order on a final pretrial conference normally controls the subsequent course of action, the order can be modified to prevent manifest injustice. Fed.Rules Civ.Proc.Rule 16(e), 28 U.S.C.A. | Does a pretrial order control subsequent course of action? | 027146.docx | LEGALEASE-00133166-LEGALEASE-00133167 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 10324 | Walters v. First Fed. Sav. & Loan Ass'n of Phoenix, 131 Ariz. 321 | 307A+750 | 16 A.R.S. Rules of Civil Procedure, Rule 16(a), provides that the pretrial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." The purpose of the pretrial order and statement is to simplify the issues after the parties have completed discovery and to shorten trial time. Arizona State Highway Department v. Becktold, 105 Ariz. 125, 460 P.2d 179 (1969). Most importantly, the order acts to limit the issues to be tried. Because of this function, the trial court may refuse to give an instruction to the jury on an issue not embodied in the pretrial order. See 6 Wright & Miller, Federal Practice and Procedure, s 1527 (1971). Here, the trial judge acted within his discretion in refusing to give the requested instruction on constructive fraud since it was not comprised within the pretrial order. Because of the related litigation which preceded this action, plaintiffs were well aware of the factual and legal issues they were to encounter in the present lawsuit. Under these circumstances, liberal construction of the procedural rules does not require the trial court to consider a new legal theory which was not disclosed in the pretrial statement and order. | Trial court may refuse to give an instruction to jury on an issue not embodied in pretrial order. 16 A.R.S. Rules Civ.Proc., Rule 16(a). | Can a court refuse to give an instruction to jury on an issue not embodied in pretrial order? | Pretrial Procedure - Memo # 1910 - C - SJ.docx | ROSS-003301499-ROSS-003301500 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 10325 | Dean v. Gainesville Stone Co., 120 Ga. App. 315 | 307A+331 | Under the discovery provisions of the Civil Practice Act, a trial judge is authorized to direct parties to an action to produce pertinent documents for inspection, copying or photographing. Code Ann. s 81A-134(a). A broad discretionary power is given to the judges by the Act to assure safeguards against oppressive and unfair questions and demands. Conversely, a very broad discretion is granted judges in applying sanctions against disobedient parties in order to assure compliance with the orders of the courts. By Code Ann. s 81A-137(b)(2)(iii) the courts are specifically granted the discretion to dismiss complaints or to render default judgments against disobedient parties. This applies to the disobeying of an order to produce. Historically it has been the policy of the Georgia appellate courts to refuse to interfere with a trial court's exercise of its discretion in absence of abuse. This policy is applicable to a trial judge's exercise of the broad discretionary powers authorized under the discovery provisions of the Civil Practice Act. Williamson v. Lunsford, 119 Ga.App. 240, 166 S.E.2d 622. Under the facts in this case, we cannot say the trial judge abused his discretion. | Under Civil Practice Act, trial judge is authorized to direct parties to action to produce pertinent documents for inspection, copying or photographing. Code, S 81A-134(a). | Can an inspection of books and papers of a party be obtained through a proceeding or authorization for such inspection? | 027167.docx | LEGALEASE-00133103-LEGALEASE-00133104 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10326 | Sanders v. City of Kansas City, 18 Kan. App. 2d 688 | 307A+331 | A party to a lawsuit may request another party to produce documents which are within the scope of discovery and "which are in the possession, custody or control of the party upon whom the request is served." K.S.A.1992 Supp. 60"234(a)(1). If the party fails to respond to such a request, the district court in which the action is pending may upon motion dismiss the action. K.S.A. 60"237(b)(2)(C); (d)(3)."The sanction of dismissal with prejudice is the most severe sanction a court can apply and its use must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited." Beal v. Rent"A"Center of America, Inc., 13 Kan.App.2d 375, Syl. 5, 771 P.2d 553, rev. denied 245 Kan. 782 (1989). | Party to lawsuit may request another party to produce documents which are within scope of discovery and which are in possession, custody, or control of party upon whom request is served, and if party fails to respond to such request district court in which action is pending may upon motion dismiss action. Rules Civ.Proc., K.S.A. 60-234(a)(1), 60-237(b)(2)(C), (d)(3). | "Can a party be required to produce only those items which are in its possession, custody or control?" | Pretrial Procedure - Memo # 1955 - C - VA.docx | ROSS-003286422-ROSS-003286424 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10327 | City of Dallas v. Albert, 354 S.W.3d 368 | 307A+517.1 | Under litigation rules applicable to ordinary litigants, and thus to the City once it filed its counterclaim, the City was entitled to nonsuit its counterclaims. See Tex.R. Civ. P. 162 (providing that a party may nonsuit a claim at any time before all its evidence is introduced at trial except for rebuttal evidence). If a claim is timely nonsuited, the controversy as to that claim is extinguished, the merits become moot, and jurisdiction as to the claim is lost. See Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex.2010); Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98, 100 (Tex.2006) (per curiam). But a nonsuit is not allowed to prejudice the right of an adverse party to be heard on a pending claim for affirmative relief. Tex.R. Civ. P. 162; see Villafani v. Trejo, 251 S.W.3d 466, 469 (Tex.2008). Because the Officers had affirmative claims pending when the City nonsuited its counterclaim, the trial court retained jurisdiction over the Officers' claims to the extent it had acquired it. See Villafani, 251 S.W.3d at 469. | If a claim is timely nonsuited, the controversy as to that claim is extinguished, the merits become moot, and jurisdiction as to the claim is lost. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "If a claim is timely nonsuited, is the controversy as to that claim extinguished, the merits become moot, and jurisdiction as to the claim is lost? " | Pretrial Procedure - Memo # 2421 - C - SHS.docx | LEGALEASE-00022864-LEGALEASE-00022865 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10328 | Roberts v. Wells Fargo Bank, N.A., 406 S.W.3d 702 | 307A+517.1 | When nonsuit is filed after an unfavorable partial summary judgment has been entered against the claimant, the nonsuit is with prejudice as to those claims of which the judgment has disposed. Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 854 (Tex.1995); see also Epps, 351 S.W.3d at 868 n. 7. This concept promotes judicial efficiency, protects parties from multiple lawsuits, and prevents inconsistent judgments through the preclusion of matters that have already been decided or which could have been litigated in a prior suit. See In re Team Rocket, L.P., 256 S.W.3d 257, 260 (Tex.2008); see also Epps, 351 S.W.3d at 870 (recognizing that nonsuit filed for the purpose of circumventing unfavorable legal restrictions or rulings are disfavored); Yazdchi v. Bank One, Tex., N.A., 177 S.W.3d 399, 408 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (a party may not escape the effects of an unfavorable ruling on the merits by taking a nonsuit of its claims). | When nonsuit is filed after an unfavorable partial summary judgment has been entered against a claimant, the nonsuit is with prejudice as to those claims of which the judgment has disposed; this concept promotes judicial efficiency, protects parties from multiple lawsuits, and prevents inconsistent judgments through the preclusion of matters that have already been decided or which could have been litigated in a prior suit. Vernon's Ann.Texas Rules Civ.Proc., Rules 162, 166a(c). | "When a claimant nonsuits after an unfavorable partial summary judgment, is the nonsuit with prejudice as to the claims disposed of by the judgment?" | Pretrial Procedure - Memo # 2423 - C - SHS.docx | ROSS-003287516-ROSS-003287517 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 10329 | Herrell v. Maddux, 217 Kan. 192 | 307A+749.1 | In Thompson v. Aetna Life Ins. Co., 201 Kan 296, 300, 440 P.2d 548, 552, we said that under K.S.A. 60-216 the pretrial order entered by the court in that case "in effect, may be said to have superseded and replaced the pleadings."It is generally accepted that a pretrial order which specifies the issues to be tried supersedes the pleadings in such respect. (In re Estate of Wurtz, 214 Kan. 434, 520 P.2d 1308.) | Generally, a pretrial order which specifies the issues to be tried supersedes and replaces the pleadings. Rules of Civil Procedure, rule 16, K.S.A. 60-216. | "Generally, does a pretrial order which specifies the issues to be tried supersede and replace the pleadings?" | 027944.docx | LEGALEASE-00132658-LEGALEASE-00132659 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 10330 | Bevard v. Kelly, 15 Neb. App. 960 | 307A+517.1 | In State v. Dorcey, 256 Neb. 795, 592 N.W.2d 495 (1999), the Nebraska Supreme Court held that the district court had no jurisdiction over the State's appeal from county court filed after the State voluntarily dismissed the county court proceedings. In Smith v. Lincoln Meadows Homeowners Assn., 267 Neb. 849, 678 N.W.2d 726 (2004), the Nebraska Supreme Court held that a trial court acted beyond its authority when it granted a plaintiff's motion to dismiss her action without prejudice and allowed the plaintiff to reserve her right to appeal from a partial summary judgment in the defendant's favor. In short, when a case is voluntarily dismissed by a party, the controversy between the parties upon which a court may act ends.Id. | When a case is voluntarily dismissed by a party, the controversy between the parties upon which a court may act ends. | "When a case is voluntarily dismissed by a party, may the controversy between the parties upon which a court act ends?" | 028001.docx | LEGALEASE-00133368-LEGALEASE-00133369 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10331 | Syufy Enterprises v. City of Oakland, 104 Cal. App. 4th 869 | 336H+85 | After the Appellate Division remanded the unlawful detainer case, the Port voluntarily dismissed the entire action "without prejudice." By definition, a voluntary dismissal without prejudice is not a final judgment on the merits. (Associated Convalescent Enterprises v. Carl Marks & Co. (1973) 33 Cal.App.3d 116, 121, 108 Cal.Rptr. 782; cf. Torrey Pines Bank v. Superior Court (1989) 216 Cal.App.3d 813, 823, 265 Cal.Rptr. 217.) Therefore, we may not accord the Appellate Division's ruling collateral estoppel effect. Perhaps attempting to avoid this result, or to bind the Port to the ruling by the doctrine of retraxit (see Torrey Pines Bank v. Superior Court, supra, at p. 822, 265 Cal.Rptr. 217), Syufy filed a motion to convert the Port's dismissal into a dismissal "with prejudice." The trial court denied Syufy's motion, and the Appellate Division denied Syufy's petition for review. Although Syufy makes the argument again in this appeal, we agree it has no merit. The Port had a right to dismiss its case without prejudice "at any time before the actual commencement of trial...." (Code Civ. Proc., " 581, subd. (b)(1); see also Code Civ. Proc., " 581, subd. (c).) The voluntary dismissal statute defines commencement of trial as the beginning of opening statement or, absent an opening statement, the administration of an oath or affirmation to the first witness, or the first introduction of evidence. (Code Civ. Proc., " 581, subd. (a)(6).) Clearly, given this statutory definition, trial had not yet commenced. Though the consequences proved unfortunate for Syufy, the Port had a right to dismiss its unlawful detainer action without prejudice. | Master lessor's voluntary dismissal without prejudice of its unlawful detainer action against subtenant, before commencement of trial on remand from Appellate Division of Superior Court, was not a final judgment on the merits, and thus, master lessor was not collaterally estopped from relitigating the issue of whether, after master lessee was deemed to have rejected the nonresidential real estate lease in bankruptcy, subtenant had right to remain in possession of the property. West's Ann.Cal.C.C.P. S 581. | Is a voluntary dismissal without prejudice a final judgment on the merits? | Pretrial Procedure - Memo # 2506 - C - RY.docx | ROSS-003288068-ROSS-003288069 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10332 | Skevofilax v. Aventis Pasteur, 167 Md. App. 1 | 307A+517.1 | Rule 2-506(b) clearly states that, absent a request to dismiss prior to the filing of an answer or a summary judgment motion or a stipulation of the parties, "a plaintiff may dismiss an action only by order of court and upon such terms and conditions as the court deems proper." Id. (emphasis added). Whether to grant a motion for voluntary dismissal is within the court's discretion and will not be overturned absent a showing of an abuse of that discretion. Owens-Corning Fiberglas Corp. v. Fibreboard Corp., 95 Md.App. 345, 349-50, 620 A.2d 979 (1993). "A motion for voluntary dismissal may be granted with or without prejudice, a decision that is discretionary with the court." Id. at 350, 620 A.2d 979. | A plaintiff's motion for voluntary dismissal may be granted with or without prejudice, a decision that is discretionary with the trial court. Md.Rule 2-506(b). | "Can a motion for voluntary dismissal be granted with or without prejudice, a decision that is discretionary with the trial court?" | Pretrial Procedure - Memo # 2555 - C - NS.docx | ROSS-003301563-ROSS-003301564 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10333 | State ex rel. Richard v. Cuyahoga Cty. Bd. of Commrs., 100 Ohio App. 3d 592 | 307A+517.1 | A voluntary dismissal is effective upon filing, and no further entry by the court is necessary to trigger the end of the litigation. Civ.R. 41(A)(1); Goldstein, 50 Ohio App.3d at 7, 552 N.E.2d at 231; Clay Hyder Trucking Lines, Inc. v. Riley (1984), 16 Ohio App.3d 224, 16 OBR 240, 475 N.E.2d 183; Frysinger v. Leech (1983), 10 Ohio App.3d 150, 10 OBR 202, 460 N.E.2d 1161. The filing of a voluntary dismissal immediately divests the trial court of jurisdiction to go forward in the matter. Sturm, 63 Ohio St.3d at 676, 590 N.E.2d at 1217"1218; State ex rel. Hunt v. Thompson (1992), 63 Ohio St.3d 182, 586 N.E.2d 107; Goldstein, 50 Ohio App.3d at 5"7, 552 N.E.2d at 229"232. | Filing of voluntary dismissal immediately divests trial court of jurisdiction to go forward in matter. Rules Civ.Proc., Rule 41(A)(1). | Does the filing of a voluntary dismissal immediately divest a trial court of jurisdiction to go forward in a matter? | 028364.docx | LEGALEASE-00132706-LEGALEASE-00132707 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 10334 | Leon Springs Gas Co. v. Rest. Equip. Leasing Co., 961 S.W.2d 574 | 307A+517.1 | At oral argument, appellant cited to our opinion in De La Rosa v. Kaples which has recognized cases where attorney's fees are awarded in defense of a contract suit even though the jury awarded no damages. In such cases, however, the successful defendant filed a counterclaim for actual damages and sought attorney's fees both for defending and prosecuting the contract claim. See De La Rosa v. Kaples, 812 S.W.2d 432, 433 (Tex.App."San Antonio 1991, writ denied). We stated:Although Article 2226 and " 38.001 do not provide for attorney's fees for the pure defense of a claim, "there is an exception to the general rule of law for cases in which the matters encompassed by the claim and counterclaim are indistinguishable, where they arose from the same transactions, where the same facts required to prosecute the claim are required to defend against the counterclaim"; under these circumstances, attorney's fees are appropriate. at 434 (quoting Veale v. Rose, 657 S.W.2d 834, 841 (Tex.App."Corpus Christi 1983, writ ref'd n.r.e.). Rudy's affirmative defenses may very well have formed the basis of a counterclaim for damages, however, they had not been presented in such form prior to the filing of plaintiff's nonsuit. The nonsuit rendered moot the matters raised in Rudy's pending motion for partial summary judgment as of October 25, 1996. The portion of Appellant's point of error which deals with Rudy's affirmative defenses, as well as points of error three, six and seven are overruled. | Nonsuit rendered moot matters raised in pending motion for partial summary judgment. | Does a nonsuit render moot matters raised in pending motion for partial summary judgment? | 028391.docx | LEGALEASE-00132884-LEGALEASE-00132885 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 10335 | Rakes v. Fulcher, 210 Va. 542 | 307A+359 | We interpret good cause as used in our Rule 4:9 to mean that before any party is entitled to the production of documents or other tangible things, such as are involved in this case, there must be a showing of some special circumstances in addition to relevancy. Discovery procedures were not intended to open an attorney's files to opposing counsel; nor were they intended to afford an attorney the luxury of having opposing counsel investigate his case for him. | Discovery procedures were not intended to open an attorney's files to opposing counsel; nor were they intended to afford an attorney the luxury of having opposing counsel investigate his case for him. Supreme Court of Appeals Rules, rule 4:9. | Are discovery procedures not intended to open an attorney's files to opposing counsel? | 028609.docx | LEGALEASE-00133164-LEGALEASE-00133165 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 10336 | Stubbs v. Strickland, 129 Nev. Adv. Op. 15 | 307A+517.1 | In this special motion to dismiss was neither filed nor granted before Mr. Strickland voluntarily dismissed the alleged SLAPP suit. A plaintiff may voluntarily dismiss an action "at any time before service by the adverse party of an answer or of a motion for summary judgment." NRCP 41(a)(1)(i). After a plaintiff files a notice of voluntary dismissal, the file is closed and a defendant may not revive the action. Harvey L. Lerer, Inc. v. District Court, 111 Nev. 1165, 1170, 901 P.2d 643, 646 (1995) (citing Federal Sav. & Loan Ins. Corp. v. Moss, 88 Nev. 256, 259, 495 P.2d 616, 618 (1972)). Therefore, the anti-SLAPP suit remedy was unavailable to Mr. Stubbs after Mr. Strickland's voluntary dismissal. | After plaintiff files a notice of voluntary dismissal, the file is closed and defendant may not revive the action. Rules Civ.Proc., Rule 41(a)(1)(i). | "After plaintiff files a notice of voluntary dismissal, is the file closed and a defendant may not revive the action?" | 028611.docx | LEGALEASE-00132980-LEGALEASE-00132981 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10337 | Molczyk v. Molczyk, 285 Neb. 96 | 307A+517.1 | An order of dismissal or dismissal by operation of law divests a court of jurisdiction to take any further action in the matter. But in civil cases, a court of general jurisdiction has inherent power to vacate or modify its own judgment at any time during the term in which the court issued it. A court treats a motion to reinstate a case after an order of dismissal as a motion to vacate the order,and we have recognized that a court normally has jurisdiction over a motion to vacate an order of dismissal and reinstate a case. | An order of dismissal or dismissal by operation of law divests a court of jurisdiction to take any further action in the matter. | Does an order of dismissal or dismissal by operation of law divest a court of jurisdiction to take any further action in the matter? | 028613.docx | LEGALEASE-00132984-LEGALEASE-00132985 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 10338 | Ilagan v. McAbee, 634 N.E.2d 827 | 307A+517.1 | We believe that the common law should govern voluntary dismissals by a plaintiff proceeding before a medical review panel: "As a rule, in the absence of statute or court rule, the question as to taking a voluntary dismissal or nonsuit, or discontinuing an action is controlled by the common law as announced or modified by legal decisions." I.L.E., Dismissal " 11, p. 4. Under the common law a plaintiff had a right to dismiss his action at any time before verdict. Moore-Mansfield Construction Co. v. Marion, Bluffton & Eastern Traction Co. (1913), 52 Ind.App. 548, 101 N.E. 15. Where an action is voluntarily dismissed without prejudice the situation is as though no action had ever been brought. I.L.E. Dismissal " 18, p. 18; Burnett v. Camden (1970), 253 Ind. 354, 254 N.E.2d 199. | Under common law, where action is voluntarily dismissed without prejudice situation is as though no action had ever been brought. Trial Procedure Rule 41(A)(1). | "Under common law, where action is voluntarily dismissed without prejudice, is the situation as though no action had ever been brought?" | 028627.docx | LEGALEASE-00133036-LEGALEASE-00133037 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 10339 | Rondeau v. State, 48 N.E.3d 907 | 307A+486 | "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." T.R. 36(B). "[T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him." Id. Whether to grant a request to withdraw or amend admissions is a matter within the trial court's discretion. Larson v. Karagan, 979 N.E.2d 655, 660 (Ind.Ct.App.2012). We will reverse the court's decision only upon an abuse of that discretion. Id. Even where an abuse of discretion has occurred, we will not reverse the judgment where that error is harmless, that is, where the error has not prejudiced the substantial rights of the parties. T.R. 61. | Whether to grant a request to withdraw or amend admissions, including in a postconviction proceeding, is a matter within the trial court's discretion. Trial Procedure Rule 36(B). | Is the question of whether to grant a request for leave to withdraw admissions a matter committed to the sound discretion of the trial court? | Pretrial Procedure - Memo # 2857 - C - NS.docx | ROSS-003286738-ROSS-003286739 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10340 | Coastal Oil & Gas Corp. v. Garza Energy Tr., 268 S.W.3d 1 | 386+7 | See Lyle v. Waddle, 144 Tex. 90, 188 S.W.2d 770, 773 (1945). As already noted, this case does not involve a trespass against a possessory interest, which does not require actual injury to be actionable and may result in an award of nominal damages. See McDaniel Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex.Civ.App."Beaumont 1934, writ ref'd) ("[E]very unauthorized entry upon land of another is a trespass even if no damage is done or injury is slight, and gives a cause of action to the injured party."); see also Restatement (Second) of Torts " 163 (1965) ( "One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land [or] its possessor...."). | A trespass against a possessory interest does not require actual injury to be actionable and may result in an award of nominal damages. | Can nominal damages be awarded for a trespass against a possessory interest without an actual injury? | 047308.docx | LEGALEASE-00133253-LEGALEASE-00133254 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10341 | State v. Christensen, 517 S.W.3d 60 | 386+10 | We agree with the overwhelming majority of jurisdictions that have addressed the issue that signs admonishing "No Trespassing," in and of themselves, are rarely going to be sufficient to revoke the implied license allowing persons to approach a front door and knock. The term "No Trespassing" is not so clear and unambiguous as the Defendant and the dissent claim. See Carloss, 818 F.3d at 995 (stating that no trespassing signs "by themselves, do not have the talismanic quality [the defendant] attributes to them"). Black's Law Dictionary defines the term "trespass" as "[a]n unlawful act committed against the person or property of another; especially, wrongful entry on another's real property." Black's Law Dictionary 1503 (10th ed. 2014) (emphases added). This definition implies clearly that some entries onto another's real property are neither unlawful nor wrongful and, therefore, are not trespasses. Indeed, this Court recognized over one hundred and fifty years ago that, "[i]n law every entry upon the soil of another, in the absence of a lawful authority, without the owner's license, is a trespass."Norvell v. Gray's Lessee, 31 Tenn. 96, 103 (1851) (emphasis added); see also, e.g., City of Townsend v. Damico, No. E2013-01778-COA-R3-CV, 2014 WL 2194453, at (Tenn. Ct. App. 2014) (recognizing that "[t]he courts of this state have ... defined the tort of trespass as an unauthorized entry upon the land of another") (citing Norvell, 31 Tenn. at 103); Holmes, 143 F.Supp.3d at 1265 (stating that "the plain meaning of "No Trespassing" is that it prohibits what people ordinarily think of as trespassing, and does not alter the character of an entry that one would not otherwise think to be a trespass, such as the implied license to approach the homeowner's door to knock and talk") (citing Oliver, 466 U.S. at 183 n.15, 104 S.Ct. 1735). | In law every entry upon the soil of another, in the absence of a lawful authority, without the owner's license, is a trespass. | Is the entry upon the soil of another without the owner's license regarded as a trespass? | 047346.docx | LEGALEASE-00133444-LEGALEASE-00133445 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 10342 | Jewell v. United States, 274 F. Supp. 381 | 413+1 | The subject of compensation of injured prisoners has gone through a process of evolution in recent years. The decision in Demko reflects a determination that 18 U.S.C.A. " 4126 finally provides an adequate system of compensation and the exclusive remedy for most injured prisoners. Language in Demko, 385 U.S. at 153-154, 87 S.Ct. 382 indicates that a few cases may still fall outside 18 U.S.C.A. " 4126 and require the use of the Federal Tort Claim Act. Thus, the inquiry is whether plaintiff has made a sufficiently strong showing that his situation rests outside the broad scope of 18 U.S.C.A. " 4126 and within the narrow area still available in the Federal Tort Claims Act. Plaintiff argues that such a showing has been made in that although the actual injury resulted while he was working, the proximate cause of the accident, i.e., the negligence of the medical personnel, occurred outside of his work. This argument is not without its appeal, yet the compensation laws look not to the cause of the injury nor to the negligence involved but to the actual injury, the damage to the workman. Emphasis is placed upon the certainty of recovery and removal of many of the formal obstacles that previously existed in the legal system. Given this shift in emphasis, this Court is very reluctant to allow recovery under the now limited coverage of the Federal Tort Claims Act, unless circumstances are alleged which clearly make such provisions applicable. If plaintiff's concern is for the recovery of damages, then his remedy lies within the provisions of 18 U.S.C.A. " 4126. On the other hand, if plaintiff's concern is for the punishment of negligent acts and relief from unsafe practices, he must look to other remedies, but not to the Federal Tort Claims Act. | The compensation laws look not to the cause of the injury nor to the negligence involved but to the actual injury, the damage to the workman. 18 U.S.C.A. § 4126. | "Do compensation laws look to the cause of the injury and the negligence involved, or to the actual injury, being the damage to the workman?" | 047854.docx | LEGALEASE-00132892-LEGALEASE-00132893 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 10343 | Deauville v. Hall, 188 Cal. App. 2d 535 | 413+1 | The Workmen's Compensation Act provides an exclusive and complete system of compensation for injuries to employees arising out of and in the course of their employment (Fitzpatrick v. Fidelity & Casualty Co., 7 Cal.2d 230, 60 P.2d 276); neither strictly in tort nor in contract, liability is imposed under the Act incident to the status of employment. Quong Ham Wah Co. v. Industrial Accident Commission, 184 Cal. 26, 192 P. 1021, 12 A.L.R. 1190; Noe v. Travelers Ins. Co., 172 Cal.App.2d 731, 342 P.2d 976. By his complaint appellant submits that even though insured, the employer is not exempt from giving an injured employee proper medical treatment, and that the latter should be permitted an independent action where, through the employer's negligence the original compensable injury was aggravated by the carelessness of an unqualified doctor; and specifically argues in his opening brief that the negligent act of the employer's first aid man in "diagnosing" his symptoms "like a doctor" gives Walt Disney Prods. a status separate and apart from that of the employer, transforming it into a "third person" justifying the application of the rule of Duprey v. Shane, 39 Cal.2d 781, 249 P.2d 8. | Under Workmen's Compensation Act, liability is imposed, neither strictly in tort nor in contract, incident to the status of employment. | "Under the Workmens Compensation Act, is the liability imposed incident to the status of employment?" | 047895.docx | LEGALEASE-00133086-LEGALEASE-00133087 | Order, SA, Sub | 0.89 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10344 | Stover v. Washington Cty., 63 Idaho 145 | 413+1 | The administration of the Workmen's Compensation Law, Code 1932, " 43-901 et seq. and benefits accruing thereunder to workmen and employees has become a fixed principle of public policy of the state. Sec. 43-902, I.C.A.: Olson v. Union Pacific R. Co., 62 Idaho 423, 112 P.2d 1005, 1007; Close v. General Construction Co., 61 Idaho 689, 694, 106 P.2d 1007; Lebak v. Nelson, 62 Idaho 96, 107 P.2d 1054, 1060. This court is also committed to the rule of liberal construction of the compensation act in favor of employees. Olson v. Union Pacific Railroad Co., 62 Idaho 423, 112 P.2d 1005, 1006, and cases there cited. | The administration of Workmen's Compensation Law and benefits accruing thereunder to workmen and employees is a fixed principle of public policy of Idaho. Code 1932, S 43-902. | Does the administration or enactment of workmens compensation laws demonstrate the public policy of the various states? | 047967.docx | LEGALEASE-00133430-LEGALEASE-00133431 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 10345 | Employers' Liab. Assur. Corp. v. Matlock, 151 Kan. 293 | 413+1 | The workmen's compensation law is a comprehensive act and covers every phase of a workman's right to compensation and the procedure for obtaining it. | The Compensation Act is a comprehensive act and covers every phase of a workman's right to compensation and the procedure for obtaining it. Gen.St.1935, 44-501 et seq. | Is the Workers Compensation Act a comprehensive act that covers every phase of a workmans right to compensation and the procedure for obtaining it? | 047973.docx | LEGALEASE-00133452-LEGALEASE-00133453 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 10346 | Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44 | 25T+213(5) | We take no issue with the District Court's decision to determine the relationship between the claims and the scope of the contract containing the arbitration clause. See Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 23 (2d Cir.1995) ("the task of determining whether a claim or a set of claims "arises out of or relates to" the particular contract in which the arbitration clause is found" is a task properly done by the district court); Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 63 (2d Cir.1983) ("The question of whether a dispute between the parties is covered by the arbitration agreement is for the courts to decide."). But, we disagree with the court's resolution of that issue. | Court of Appeals reviews de novo district court's determination of whether claims are within scope of arbitration clause, either because claims arise under contract containing broad arbitration clause, or because they relate to contract containing the clause. | Does the question of whether a claim or a set of claims arises out of or relates to the particular contract in which the arbitration clause is found comes under the purview of courts? | 007538.docx | LEGALEASE-00133630-LEGALEASE-00133631 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 10347 | Werths v. Dir., Div. of Child Support Enf't, 95 S.W.3d 136 | 307A+517.1 | DCSE's role in the posture of this case, representing Ms. Werths under " 454.425 where there was no state debt, was purely nominal and derivative of the interests of Ms. Werths. Even if we were to assume that DCSE were to have some interest in both the constitutionality of the administrative process and whether the petition for review should have been granted, that interest disappeared when Ms. Werths dismissed her claim for modification. At that point, Mr. Bradley had obtained all the relief (apart from the issue of fees and costs) that he had sought. Nothing else remained for determination by the trial court. A voluntary dismissal under Rule 67.02 is effective when filed and needs no order or judgment of the court confirming the dismissal. Samland v. J. White Transp. Co., 675 S.W.2d 92, 96 (Mo.App.1984). Nor is this a situation where the party filing the dismissal sought that it be set aside. See generally, Richman v. Coughlin, 75 S.W.3d 334 (Mo.App.2002). The litigation on the motion to modify terminated favorably to Mr. Bradley on the date when Ms. Werths filed her voluntary dismissal, and that disposition was final. | Voluntary dismissal of an action is effective when filed and needs no order or judgment of the court confirming the dismissal. V.A.M.R. 67.02. | Is a voluntary dismissal of an action effective when filed and needs no order or judgment of the court confirming the dismissal? | Pretrial Procedure - Memo # 2606 - C - KA.docx | ROSS-003302959-ROSS-003302960 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 10348 | Saddle Signs v. Adrian, 272 Ill. App. 3d 132 | 307A+501 | Plaintiff is generally entitled to voluntarily dismiss his case at any time before trial or hearing begins. (Riblet Products Corp. v. Starr National (1993), 242 Ill.App.3d 988, 183 Ill.Dec. 215, 611 N.E.2d 68; But see Gibellina v. Handley (1989), 127 Ill.2d 122, 129 Ill.Dec. 93, 535 N.E.2d 858 (a trial court may hear and decide a motion which has been filed prior to a section 2"1009 motion when that motion, if favorably ruled on by the court, could result in a final disposition of the case.) Plaintiffs' motivations for utilizing this rule are irrelevant. (Estate of Jackson v. Smith (1987), 183 Ill.App.3d 663, 133 Ill.Dec. 679, 541 N.E.2d 1117.) Furthermore, plaintiffs' absolute right to voluntary dismissal without prejudice is not affected by any hardship to the defendant. (Kendle v. Village of Downers Grove (1987), 156 Ill.App.3d 545, 109 Ill.Dec. 62, 509 N.E.2d 723.) Finally, we note the most common uses for this rule are to enable plaintiffs to correct technical errors in their pleadings. (Kern v. Peabody Coal Co. (1987), 151 Ill.App.3d 807, 104 Ill.Dec. 662, 502 N.E.2d 1322) (plaintiff who waives his right to jury trial by failing to file a timely jury demand has an absolute right to voluntarily dismiss his case without prejudice and refile with a jury demand.) | Plaintiff's absolute right to voluntary dismissal without prejudice is not affected by any hardship to defendant. S.H.A. 735 ILCS 5/2-1009. | Is the plaintiff's absolute right to a voluntary dismissal without prejudice affected by any hardship to a defendant? | 028257.docx | LEGALEASE-00133614-LEGALEASE-00133615 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 10349 | State ex rel. Melbourne Hotel Co. v. Hostetter, 344 Mo. 472 | 413+1 | In the opinion on motion for rehearing the Court of Appeals inveighs against the rulings we have just referred to on the ground of practicality in the application of the Compensation Act. It seems that the term "remand" under our former decisions in this respect has accomplished results of equal practicality to that which the opinion here under review seeks to accomplish by specific directions on remand. The opinion now under consideration constitutes the law of the case on the evidence reviewed, and a general remand means, in effect, the same as if it contained a general direction "to proceed in accordance with the conclusions stated above." In other words, a general direction adds nothing to the remand. Creason v. Harding et al., Mo.Sup., banc., 126 S.W.2d 1179, not yet reported [in State Report]. It would seem that our previous rulings just referred to are essentially based upon a consideration of the source from which the Court of Appeals' authority upon review proceeds. And the theory of the Court of Appeals' opinion, in its specific directions on remand, of necessity would be based upon the provisions of the General Code pertaining to the courts of appeals, Article 2, c. 9, " 1914, R.S.Mo. 1929, Mo.St.Ann. " 1914, p. 2587, which is as follows: "The various courts of appeals of Missouri shall have jurisdiction of appeals and writs of error in all cases where the amount in dispute, exclusive of costs, shall not exceed the sum of seventy-five hundred dollars." Our said holdings, on the other hand, are evidently based upon the theory that "the Workmen's Compensation Act is a complete code governing all questions of substantive right under its terms."Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909. If so, it follows that but for the provisions therein pertaining to review there would be no specific review provided for by law. We therefore re-affirm our holdings last above referred to. | The Workmen's Compensation Act is a complete code governing all questions of substantive right under its terms. V.A.M.S. S 287.010 et seq. | Is the workmens compensation act a complete code governing all questions of substantive rights under its terms? | Workers Compensation - Memo #259 ANC.docx | ROSS-003290992-ROSS-003290993 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10350 | Owens v. Brown, 455 F. Supp. 291 | 34+3(1) | To be sure, a high degree of deference is owed to the political branches of government in the area of military affairs. This is so for obvious and compelling reasons. To begin with, there are few "area(s) of government activity in which the courts have less competence" to act than in the highly specialized field of military decisionmaking. Gilligan v. Morgan, 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973). Oversight of military operations typically involves "complex, subtle and professional" judgments that are best left to those steeped in the pertinent learning. Id. Moreover, defense decisions arise in the context of an area of national concern unparalleled in importance to the nation as a whole and thus are of the sort customarily entrusted to the political branches of government. "In framing policies relating to the great issues of national defense, the people are and must be, in a sense, at the mercy of their elected representatives." Pauling v. McNamara, 118 U.S.App.D.C. 50, 53, 331 F.2d 796, 799 Cert. denied, 377 U.S. 933, 84 S.Ct. 1336, 12 L.Ed.2d 297 (1964). Beyond that, there are essential differences between the military and civilian communities that counsel strongly in favor of executive autonomy in military matters subject to legislative guidance. By contrast to the relationship between the government and employees and citizens, the defense establishment relates to military personnel as "employer, landlord, provisioner and lawgiver rolled into one." Parker v. Levy, 417 U.S. 733, 751, 94 S.Ct. 2547, 2559, 41 L.Ed.2d 439 (1974). This all-encompassing relationship is one that is largely unfamiliar to the courts and, coupled with the peculiar demands of military discipline and duty, adds impetus to the idea that military judgments deserve an especially high degree of respect. | A high degree of deference is owed to the political branches of government in the area of military affairs. U.S.C.A.Const. art. 1, S 8, cl. 14; art. 2, S 2, cl. 1. | Is a high degree of deference owed to the political branches of government in the area of military affairs? | 008376.docx | LEGALEASE-00133742-LEGALEASE-00133744 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 10351 | United States v. Haese, 162 F.3d 359 | 63+1(1) | Unlike the Singleton court, it is evident to this Court that Congress did not intend for section 201(c)(2) to be used when prosecutors offer lenity for a witness' truthful testimony. To interpret section 201(c)(2) in any other way would apply shackles to the government in its pursuit to enforce the law. See United States v. Hammer, 25 F.Supp.2d 518, 535"36 (M.D.Pa.1998) (noting that the Singleton opinion makes a criminal out of nearly every federal prosecutor, accomplices out of district judges, suppresses highly relevant evidence and cripples the enforcement of federal criminal law). | Statute prohibiting the giving, offering, or promising anything of value to witness for or because of his testimony is not intended to be used when prosecutors offer lenity for witness' truthful testimony; to interpret statute in any other way would apply shackles to government in its pursuit to enforce the law. 18 U.S.C.A. S 201(c)(2). | Does leniency in exchange for testimony of a co-conspirator violate the anti-bribery statute? | 011196.docx | LEGALEASE-00133844-LEGALEASE-00133845 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 10352 | United States v. King, 351 F.3d 859 | 110+772(5) | King also challenges the deliberate ignorance instruction given to the jury. We review the district court's decision to give a jury instruction under the abuse of discretion standard. United States v. Woodard, 315 F.3d 1000, 1003 (8th Cir.2003). A deliberate ignorance instruction essentially " "allows the jury to impute knowledge to [the defendant] of what should be obvious to him, if it [finds], beyond a reasonable doubt, a conscious purpose to avoid enlightenment." " United States v. Barnhart, 979 F.2d 647, 651 (8th Cir.1992) (first alteration in original) (quoting United States v. Zimmerman, 832 F.2d 454, 458 (8th Cir.1987) (per curiam)). We are cognizant of the risk, however, that a deliberate ignorance instruction might lead the jury to employ a negligence standard and convict a defendant on the impermissible ground that he should have known an illegal act was taking place. Barnhart, 979 F.2d at 651. | A deliberate ignorance jury instruction allows the jury to impute knowledge to the defendant of what should be obvious to him, if it finds, beyond a reasonable doubt, a conscious purpose to avoid enlightenment. | What is a deliberate ignorance jury instruction? | 011204.docx | LEGALEASE-00133872-LEGALEASE-00133874 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 10353 | Keeler v. Gen. Prod., 137 Conn. 247 | 308+116(1) | Oral objections were made to the charge at its close in accordance with " 156 of the Practice Book. In commenting on the first count, the court had defined an express warranty in the exact language of the statute. " 6627. It went on to point out that the burden rested on the plaintiffs to prove that an authorized agent of the defendant gave the warranty, if, in fact, one was given. In referring to Stabile, the court discussed the subject of apparent authority as applied to agency. The oral objection to this phase of the charge was that the court should have instructed the jury that one cannot be clothed with apparent authority unless he has been granted express authority. This is not the law. Wright v. McCormack, 99 Conn. 145, 153, 121 A. 467; Quint v. O'Connell, 89 Conn. 353, 357, 94 A. 288. The aim of the courts in formulating and developing rules as to apparent authority has been to protect, under proper circumstances, a third person in his dealings with an agent who lacks express authority. Fireman's Fund Indemnity Co. v. Longshore Beach & Country Club, Inc., 127 Conn. 493, 497, 18 A.2d 347; Zazzaro v. Universal Motors, Inc., 124 Conn. 105, 110, 197 A. 884. Indeed, if the agent is within the apparent scope of his authority, the principal is bound even though the former acts contrary to the latter's instructions. Supreme Lodge v. Kenny, 198 Ala. 332, 340, 73 So. 519, L.R.A.1917C, 469; Lake Shore & M. S. Ry. Co. v. Foster, 104 Ind. 293, 314, 4 N.E. 20, 54 Am.Rep. 319; Restatement, 1 Agency " 161; see Son v. Hartford Ice Cream Co., 102 Conn. 696, 700, 129 A. 778. | If agent is within apparent scope of his authority, principal is bound even though agent acts contrary to instructions of principal. | "If an agent acts within the scope of his authority, will principal be liable for acts that are contrary to his instructions?" | 042136.docx | LEGALEASE-00133745-LEGALEASE-00133746 | Order, SA | 0.92 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10354 | Cty. of Westchester v. Town of Harrison, 201 Misc. 211 | 371+2001 | There exists a broad and clear line of distinction between taxes or general taxes and special taxes or special assessments. The former are imposed for the support of government generally. In return the government's benefits are general in character and for the common welfare. A great French jurist more than two hundred years ago stated the problem succinctly in the following language: "The public revenues are a portion that each subject gives of his property in order to secure or enjoy the remainder." In that sense they do not include special assessments or special taxes imposed upon property in a specified limited area for the payment of improvements that enhance or purport to enhance the value of the property in such area. Litchfield v. Vernon, 41 N.Y. 123. It would seem to follow, that where such a distinction exists the assessors, while they may legally assess the property within the limited area for cost of local improvements, whether such cost is assured as a direct benefit upon a front foot or area basis, Board of Education of Union Free School Dist. No. Six of Town of Greenburgh v. Town of Greenburgh, 277 N.Y. 193, 13 N.E.2d 768 or upon ad valorem basis, People ex rel. New York School for Deaf v. Townsend, supra are without authority to assess such property for general taxes where the statute expressly exempts such property from general taxes as is the case here. Tax Law, " 4, subd. 3. | "General taxes" are those imposed for general support of government and in return for government's benefits which are general in character and for the common welfare. Real Property Law, S 500 et seq.; Tax Law, S 4, subd. 3. | Are taxes or general taxes those imposed for general support of government and in return for government's benefits that are general in character and for the common welfare? | 045123.docx | LEGALEASE-00133902-LEGALEASE-00133903 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10355 | Mayor & City Council of Baltimore v. Perrin, 178 Md. 101 | 371+2411 | An owner of property in the city on October 1st, holds it from that time subject to the exaction of a proportionate contribution to the expenses of government during the next calendar year. "The liability for taxes is an incident to property, and essential to the support of the government." Bonaparte v. State, 63 Md. 465, 471. It is a liability undetermined only in amount. The assessment and levy determine that, and by January 1st there is a liability definitely fixed, and unescapable, and payment from and after that date is prepared for and expected. Section 53 of the charter provides that the City Collector shall complete the tax bills for the coming year, "and shall have them ready for payment by the taxpayers on the first day of January next ensuing said levy." The inducements to early payment, the penalties for late payment, and other enforcement measures, all belong to collection, which is to be regarded separately, and as distinct from the imposition of the tax. Gautier v. Ditmar, 204 N.Y. 20, 26, 97 N.E. 464, Ann.Cas.1913C, 960; Dunn v. Harris, 144 Ga. 157, 162, 86 S.E. 556. Whether liability may be said exactly to date from the previous October 1st need not be considered; when the taxpayer's share is reduced to a definite amount, and made ready for payment, there is nothing lacking to a complete obligation. The fact that time is allowed by law for the payment, and enforcement delayed until July 1st, does not suspend the existence of this fixed obligation for six months. "It [taxation] consists of two distinct processes"the one relating to the levying or imposition of the taxes on persons or property; the other the collection of the taxes levied. The first is constituted of the provisions of law which determine or work out the determination of the persons or property to be taxed, the sum or sums to be thus raised, the rate thereof and the time and manner of levying and receiving and collecting the taxes. It definitely and conclusively establishes the sum to be paid by each person taxed, or | The "levying" or "imposition" of taxes is constituted of the provisions of law which determine or work out the determination of the persons or property to be taxed, the sums to be raised, the rate, and the time and manner of levying, receiving, and collecting, and it conclusively establishes the sum to be paid by each person taxed or to be borne by property specially assessed, creates a fixed demand in favor of the state or a subordinate governmental agency, and a definite obligation, and prescribes the manner of its voluntary or enforced fulfillment. | What does levying of taxes constitute? | 045128.docx | LEGALEASE-00133891-LEGALEASE-00133892 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 10356 | Banks v. United States, 119 Fed. Cl. 254 | 34+5(6) | Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Thus, the complaint must state a right for which this Court can provide a remedy, and also must plausibly suggest an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Rights conferred by the Military Pay Act are limited: they are governed by statute and regulation, and are not based upon a contract of enlistment. Bell v. United States, 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); Sonnenfeld v. United States, 62 Fed.Cl. 336, 338 (2004). When reviewing a pay claim pursuant to that statute, the voluntariness of a plaintiff's discharge must be examined. In Metz v. United States, 466 F.3d 991 (Fed.Cir.2006), the Federal Circuit instructed that a plaintiff seeking relief under the Military Pay Act "must assert and ultimately establish that his separation was involuntary in order to fit within the scope of, and take advantage of, the money-mandating status of " 204, or else his claim falls for failure to state a claim upon which relief can be granted." Id. at 998. Where a member of the military resigns or retires, his decision is presumed to be voluntary. House v. United States, 99 Fed.Cl. 342, 347 (2011) (citing Moyer v. United States, 190 F.3d 1314, 1320 (Fed.Cir.1999), Tippett v. United States, 185 F.3d 1250, 1255 (Fed.Cir.1999), and Moody v. United States, 58 Fed.Cl. 522, 524 (2003)). To overcome the presumption of voluntary separation from service, "[i]t is a plaintiff's burden to demonstrate otherwise, essentially showing that his decision was not freely made." House, 99 Fed.Cl. at 347. A plaintiff may show his separation was involuntary as a result of government misrepresentation, coercion, or duress. Murphy v. United States, 69 Fed.Cl. 593, 604 (2006), aff'd on other grounds, 223 Fed.Appx. 966 (Fed.Cir.2007). | Where a member of the military resigns or retires, his decision is presumed to be voluntary, so that his case does not fit within the scope of the Military Pay Act, and to overcome this presumption of voluntary separation from service, it is a plaintiff's burden to demonstrate otherwise, essentially showing that his decision was not freely made, which may be accomplished by showing that his separation was a result of government misrepresentation, coercion, or duress. 37 U.S.C.A. S 204. | Who has the burden of proving otherwise that a decision to resign or retire was not voluntary? | 008453.docx | LEGALEASE-00134102-LEGALEASE-00134103 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10357 | United States v. Butler, 637 F.3d 519 | 34+5(3) | 10 U.S.C. " 1168(a) (emphasis added). The general prerequisites for discharge are "delivery of a valid discharge certificate ... a final accounting of pay made" and "the "clearing" process required under appropriate service regulations."United States v. King, 27 M.J. 327, 329 (C.M.A.1989); see also United States v. Howard, 20 M.J. 353, 354 (C.M.A.1985) (rejecting Government's argument that the military judiciary retained personal jurisdiction over a personnel member even after the delivery of his discharge certificate, explaining "[d]ischarge is effective upon delivery of the discharge certificate" because that delivery "shows that the transaction is complete, that full rights have been transferred, and that the consideration for the transfer has been fulfilled"). But, the delivery requirement is not absolute. The purpose of the statute's documentation requirement, as recounted in Hamon v. United States, is "to ensure adequate administration of veterans' disability claims and to hasten discharge of those uncooperative in the process." 10 Cl.Ct. 681, 683 (Cl.Ct.1986). Indeed, the Code of Federal Regulations specifically provides, "DD Forms 214 are not intended to have any legal effect on termination of the member's service." 32 C.F.R. " 45.3(b). | The general prerequisites for military discharge are delivery of a valid discharge certificate, a final accounting of pay made, and the clearing process required under appropriate service regulations. 10 U.S.C.A. S 1168(a). | What are the general perquisites of a valid military discharge? | 008455.docx | LEGALEASE-00134112-LEGALEASE-00134113 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10358 | Alhassan v. Hagee, 424 F.3d 518 | 34+5(4) | A conscientious objector has no constitutional or statutory right to be discharged from active service after voluntary enlistment. Roby v. United States Dep't of the Navy, 76 F.3d 1052, 1055 (9th Cir.1996); Sanger v. Seamans, 507 F.2d 814, 817 (9th Cir.1974); DeWalt v. Commanding Officer, 476 F.2d 440, 442 (5th Cir.1973). Service members' rights to request conscientious objector status derive from military regulations. See Parisi v. Davidson, 405 U.S. 34, 38 n. 2, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). The Department of Defense ("DOD") has implemented procedures for service members to apply for conscientious objector status. 32 C.F.R. " 75. As such, the Marine Corps has promulgated a regulation that executes the DOD procedures. Marine Corps Order 1306.16E, supra note 1. As described earlier, under Marine Corps Order 1306.16E, Alhassan must show first that he is conscientiously opposed to participation in war in any form. Second, that this opposition is based on religious training and beliefs, and third, that his position is sincere and deeply held. Id. | A conscientious objector has no constitutional or statutory right to be discharged from active service after voluntary enlistment. | Does a conscientious objector have a constitutional or statutory right to be discharged from active service after voluntary enlistment? | 008474.docx | LEGALEASE-00134206-LEGALEASE-00134207 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10359 | Mason v. Blayton, 119 Ga. App. 203 | 172H+593 | We reverse. A check executed and delivered is a contract in writing by which the drawer contracts with the payee that the bank will pay to the latter or his order the amount designated, on presentation. Haynes v. Wesley, 112 Ga. 668(2), 37 S.E. 990, 81 Am.St.Rep. 72. Code Ann. s 109A-3-104. "(T)here is little difference between a check and a demand note. Both are acknowledgments of indebtedness and an unconditional promise to pay." Diemar& Kirk Co. v. Smart Styles, Inc., 261 N.C. 156, 134 S.E.2d 134. It imports a consideration. Deal v. Atlantic C.L.R. Co., 225 Ala. 533, 538, 144 So. 81, 86 A.L.R. 455. "It is elemental that a check is a written contract to be performed at the place where is located the banking house or place of business of the person on whom it is drawn." Permenter v. Bank of Green Cove Springs, (Fla.App.) 136 So.2d 377, 380. "The drawer of a check has the right, at any time prior to acceptance by the bank, to stop its payment. However, his revocation of the bank's authority to pay the check does not discharge his liability to the payee or holder. 10 C.J.S. Bills & Notes s 35 (pp. 455, 456). The situation becomes the same as if the check had been dishonored and notice thereof given to the drawer. Flynn v. Currie, 130 Me. 461, 157 A. 310; Annot., 14 A.L.R. 562." Diemar& Kirk Co. v. Smart Styles, Inc., 261 N.C. 156, 134 S.E.2d 134, supra. | Drawer of check has right, at any time prior to acceptance by bank, to stop payment, but stopping of payment does not discharge drawer's liability to payee or holder. | Is therevocation of the bank's authority to pay the check discharge the drawers liability to the payee or holder? | 010217.docx | LEGALEASE-00133956-LEGALEASE-00133957 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 10360 | United States v. Terry, 707 F.3d 607 | 63+1(1) | Yet these adjectives do not add a new element to these criminal statutes but signal that the statutory requirement must be met"that the payments were made in connection with an agreement, which is to say "in return for" official actions under it. So long as a public official agrees that payments will influence an official act, that suffices. What is needed is an agreement, full stop, which can be formal or informal, written or oral. As most bribery agreements will be oral and informal, the question is one of inferences taken from what the participants say, mean and do, all matters that juries are fully equipped to assess. "[M]otives and consequences, not formalities," are the keys for determining whether a public official entered an agreement to accept a bribe, and the trier of fact is "quite capable of deciding the intent with which words were spoken or actions taken as well as the reasonable construction given to them by the official and the payor." Evans v. United States, 504 U.S. 255, 274, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992) (Kennedy, J., concurring in part and concurring in the judgment); see also McCormick, 500 U.S. at 270, 111 S.Ct. 1807 ("It goes without saying that matters of intent are for the jury to consider."); Ring, 706 F.3d at 468 (noting that intent "distinguishes criminal corruption from commonplace political and business activities"); United States v. Wright, 665 F.3d 560, 569 (3d Cir.2012) ("We rely on the good sense of jurors ... to distinguish intent from knowledge or recklessness where the direct evidence [of a quid pro quo] is necessarily scanty."). | As most bribery agreements will be oral and informal, the question of whether alleged bribery of a public official involves the requisite payments in connection with an agreement is one of inferences taken from what the participants say, mean, and do, all matters that juries are fully equipped to assess. 18 U.S.C.A. S 201(b)(2). | Can bribery agreements be oral and informal? | 011232.docx | LEGALEASE-00134031-LEGALEASE-00134033 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10361 | United States v. Ganim, 510 F.3d 134 | 63+14 | Here, it was not clear or obvious that using the word "reward" was error, particularly because the phrase "influenced or rewarded" is contained in the statute itself. 18 U.S.C. " 666(a)(1)(B). Moreover, it is unlikely that including the word had any effect at all, much less one "affect[ing] the outcome of the district court proceedings." Olano, 507 U.S. at 734, 113 S.Ct. 1770. That is, we cannot conclude that the charge as given permitted the jury to convict on a gratuities theory. A jury would not have understood the word "reward" to have any particular legal meaning beyond that ascribed to it in the instructions, and the district court plainly instructed the jury that to convict Ganim of federal programs bribery, it would have to find a "specific quid pro quo." As Sun"Diamond explained, what distinguishes a bribe from a gratuity is its intent element: only bribery requires "the specific intent to give or receive something of value in exchange for an official act." Sun"Diamond, 526 U.S. at 404"05, 119 S.Ct. 1402 (emphasis in original). Because the jury was required to find that element, it necessarily convicted Ganim of bribery under 18 U.S.C. " 666, rather than the lesser included offense of receiving illegal gratuities. Thus, to the extent there was error in the " 666 jury instruction, it was not plain error. | Although inclusion of word "rewarded" in jury instruction for bribery involving programs receiving federal funds introduced unnecessary ambiguity, by possibly implying illegal gratuity theory not pursued by government, it was not clear or obvious that using word "reward" was error, particularly when phrase "influenced or rewarded" appeared in statute, and, in light of requirement that jury find "specific quid pro quo," jury necessarily convicted defendant of bribery, rather than lesser included offense of receiving illegal gratuities, and therefore any error was not "plain error" warranting reversal. 18 U.S.C.A. S 666. | Is gratuity a lesser-included offense of bribery? | 011268.docx | LEGALEASE-00134367-LEGALEASE-00134368 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 10362 | Tom Green Cty. v. Moody, 116 Tex. 299 | 200+121 | The case of Fallbrook Irrigation District v. Bradley, 164 U. S. 176, 177, 17 S. Ct. 56, 41 L. Ed. 369, is decisive of the proposition that the Legislature has full discretion to adopt the method of taxing all properties in a county at assessed values for the cost of a highway to be improved within the county. | Legislature has full discretion to adopt method of taxing all properties in county at assessed values for cost of highway to be improved within it. | Can the Legislature tax the properties at assessed values for road improvement? | Highways-Memo 97-DB.docx | ROSS-003290623-ROSS-003290624 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 10363 | Rook v. Pub. Sch. Ret. Sys. of City of St. Louis, 593 S.W.2d 905 | 302+1 | Missouri Supreme Court Rule 55.05 requires that a pleading which set forth a claim for relief "shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled."The purpose of pleadings is "to present, define and isolate the controverted issues so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits." Walker v. Kansas City Star Company, 406 S.W.2d 44, 54 (Mo.1966), quoting Johnson v. Flex O-Lite Manufacturing Corporation, 314 S.W.2d 75, 79 (Mo.1958). The petition must state a claim upon which relief can be granted. Eilers v. Kodner Development Corporation, 513 S.W.2d 663, 665 (Mo.App.1974). | Purpose of pleadings is to present, define and isolate controverted issues so as to advise trial court and parties of issues to be tried and expedite trial of cause on merits. | Does pleading expedite the trial of a cause on the merits? | 023287.docx | LEGALEASE-00134661-LEGALEASE-00134662 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10364 | Long v. Bellamy, 296 Ga. App. 263 | 307A+517.1 | We now turn to the substance of Long's defenses of insufficient service of process and expiration of the statute of limitation.OCGA " 9-2-61(a) provides that a plaintiff may refile an action she previously dismissed within the original applicable statute of limitation or within six months after the dismissal, whichever is later. A renewed lawsuit under OCGA " 9-2-61(a) is an action de novo; therefore, the procedural requirements of filing a new complaint and perfecting service must be met anew. Diligence in perfecting service in a renewal action must be measured from the time of filing the renewed suit. Because service of the renewal action in this case was not perfected within the six-month renewal period, [Bellamy] [had] the burden of showing that she acted in a reasonable and diligent manner in attempting to ensure that proper service was made as quickly as possible. | A renewed lawsuit is an action de novo; therefore, the procedural requirements of filing a new complaint and perfecting service must be met anew. West's Ga.Code Ann. S 9-2-61(a). | Is the lawsuit that has been renewed after having been discontinued or dismissed by plaintiff an action de novo? | Pretrial Procedure - Memo # 2713 - C - PC.docx | ROSS-003304105-ROSS-003304106 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 10365 | Paselk v. Rabun, 293 S.W.3d 600 | 307A+517.1 | Paselk argues, in her second point of error, that the trial court erred in granting her nonsuit without written notice of a hearing. A nonsuit is effective upon filing; the order dismissing the suit"while the "starting point for determining when a trial court's plenary power expires""is purely a ministerial act. Blackmon, 195 S.W.3d at 100 (quoting Shadowbrook Apts. v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990)). Because the act of signing the order dismissing Paselk's claims was purely ministerial, there is no requirement that written notice be provided or that a hearing be held. The trial court did not err in failing to provide Paselk notice of signing the order dismissing her claims at her request. We overrule Paselk's second point of error. | A nonsuit is effective upon filing; the order dismissing the suit, while the starting point for determining when a trial court's plenary power expires, is purely a ministerial act. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Is a nonsuit effective upon the date of its filing? | 028449.docx | LEGALEASE-00134442-LEGALEASE-00134443 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 10366 | Crockett v. Cassels, 95 Fla. 851 | 307A+69.1 | Statutes respecting taking of depositions must be substantially complied with; no material deviation from statutes respecting taking of depositions will be allowed, except by parties' agreement or waiver. Statutes respecting the taking of depositions must be substantially complied with and no material deviation therefrom will be allowed, except by the agreement or waiver of the parties. | Statutes respecting taking of depositions must be substantially complied with; no material deviation from statutes respecting taking of depositions will be allowed, except by parties' agreement or waiver. Statutes respecting the taking of depositions must be substantially complied with and no material deviation therefrom will be allowed, except by the agreement or waiver of the parties. | Should statutes respecting the taking of depositions be substantially complied with? | Pretrial Procedure - Memo # 2915 - C - NS.docx | ROSS-003316532 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 10367 | Cont'l Carbon Co. v. Sea-Land Serv., 27 S.W.3d 184 | 307A+486 | Second, along with its original petition, Sea"Land served Continental with a request for admissions. Continental failed to answer the request for admissions in the time required under the rules. See tex.R. Civ. P. 198.2(a). When a party fails to answer a request for admissions, the matters therein are deemed admitted. See tex.R. Civ. P. 198.2(c).Such admissions are "conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission."tex. R. Civ. P. 198.3. Deemed admissions are judicial admissions and may not be controverted with testimony. See Marshall v. Vise, 767 S.W.2d 699, 700 (Tex.1989). Although Continental filed a motion to withdraw the admissions, the court never ruled on Continental's motion. Therefore, the matters addressed in Sea"Land's request for admissions are deemed admitted and conclusively established as to Continental. See tex.R. Civ. P. 198.3. | Matters addressed in plaintiff's request for admissions were deemed admitted and conclusively established as to defendant, even though defendant filed a motion to withdraw the admissions, where defendant failed to answer request for admissions within time required under the rules, and trial court never ruled on its motion to withdraw. Vernon's Ann.Texas Rules Civ.Proc., Rules 198.2(a, c), 198.3. | Are matters admitted are conclusively established unless the court on motion permits withdrawal or amendment of the admission? | 028723.docx | LEGALEASE-00134810-LEGALEASE-00134811 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10368 | Stocum v. Oakley, 185 N.C. App. 56 | 307A+517.1 | As to the dismissal based on alleged Rule 11 violations, plaintiffs argue that any of the purported violations occurred before plaintiffs moved for voluntary dismissal under Rule 41(a), and as such, those violations are wholly irrelevant to the current action. We disagree. Plaintiffs correctly state the general rule that when a party has earlier taken a voluntary dismissal, refiling the action begins the case anew. Tompkins v. Log Systems, Inc., 96 N.C.App. 333, 335, 385 S.E.2d 545, 547 (1989), disc. review denied, 326 N.C. 366, 389 S.E.2d 819 (1990). It is "as if the suit had never been filed." Id. | Generally, when a party has earlier taken a voluntary dismissal, refiling the action begins the case anew; it is as if the suit had never been filed. Rules Civ.Proc., Rule 41(a), West's N.C.G.S.A. S 1A-1. | "Where a party is granted a voluntary dismissal in an original claim, is it as if refiling the action begins the case anew?" | Pretrial Procedure - Memo # 2939 - C - SK.docx | ROSS-003317662-ROSS-003317663 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 10369 | Osborne Truck Lines v. Langston, 454 So. 2d 1317 | 363+17(1) | Agreements and stipulations made in a pre-trial order are binding on the parties and control the subsequent course of the action. Watson v. McGee, 348 So.2d 461 (Ala.1977); Rule 16, A.R.Civ.P. Defendants argue that the issue of whether Sonny was driving was tried by implied consent, see Rule 15(b), but the evidence they cite mainly describes the positions of Sonny and Tommy after the wreck. This was sufficiently within the proof of the issues properly before the court that we cannot say Rule 15(b) overrode the admissions in the pre-trial order. The trial court did not err in directing a verdict on the defense of contributory negligence of Sonny Langston. | Agreements and stipulations made in a pretrial order are binding on the parties and control the subsequent course of the action. Rules Civ.Proc., Rule 16. | "Agreements made in pretrial order are binding on parties, and do they order control subsequent course of action?" | Pretrial Procedure - Memo # 2987 - C - AP.docx | ROSS-003317676-ROSS-003317677 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 10370 | Tank v. Munstedt, 504 N.W.2d 866 | 307A+486 | At the outset, we view Munstedt motion to permit late filing of their answers to the requests for admissions as tantamount to a motion for withdrawal or amendment of the admissions. See, Warren v. International Broth. of Teamsters, Etc., 544 F.2d 334 (8th Cir.1976) (allowing late filing of answers to request for admissions equivalent to allowing party to withdraw admissions made by operation of Rule 36 (a)). In that regard, SDCL 15-6-36 (b) provides in pertinent part:Subject to the provisions of 15-6-16 governing amendment of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be sub served thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. (emphasis added). | Civil defendants' motion to permit late filing of answers to requests for admissions, which was tantamount to motion for withdrawal or amendment of admissions, should not have been denied on grounds that defendants failed to strictly comply with rules of procedure; presentation of merits of action would have been served by permitting withdrawal of admissions inasmuch as admissions resulted in summary judgment for plaintiffs, and cost, time, and delay that would be occasioned by plaintiffs being required to prove items otherwise admitted was not type of prejudice justifying denial of motion. SDCL 15-6-36(b). | Does the Supreme Court views motions to permit a late filing of answers to the requests for admissions as tantamount to a motion for withdrawal or amendment of the admissions? | 028832.docx | LEGALEASE-00134467-LEGALEASE-00134468 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 10371 | Roberts v. Ausable Chasm Co., 47 A.D.2d 979 | 307A+69.1 | Just prior to jury selection, the trial court allowed a witness for defendant to correct the transcript of his testimony at an examination before trial held in 1971. A witness may make changes in substance as well as form in an examination before trial (CPLR 3116, subd. (a)). While the better procedure would be a motion under CPLR 3116, nevertheless, the trial court has the discretion to allow a party to object to any alleged error in the transcript even though there was a failure to follow proper procedure (CPLR 3103, subd. (a)). | A witness may make changes in substance as well as form in the transcript of an examination before trial. CPLR 3116(a). | Can a witness make changes in substance as well as form in the transcript of an examination before trial? | 028864.docx | LEGALEASE-00133940-LEGALEASE-00133941 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 10372 | State ex rel. Lucas v. Moss, 498 S.W.2d 289 | 102+154 | The court holds that a party is permitted to utilize videotape at deposition if done in addition to the traditional recording and transcription method. The expense of the videotape will be borne by the party utilizing it. Of course, the parties may agree to dispense with the traditional recording method and utilize videotape alone and may stipulate with respect to taxable costs. | Party is permitted to utilize videotape at deposition if done in addition to traditional recording and transcription method, but expense of videotape will be borne by party utilizing it; parties may agree to dispense with traditional recording method and utilize videotape alone and may stipulate with respect to taxable costs. V.A.M.R. Civil Rules 57.03, 57.21, 57.22, 57.29, 57.29(a). | Is a party permitted to utilize videotape at deposition and the expense of the videotape borne by the party utilizing it? | 028869.docx | LEGALEASE-00134003-LEGALEASE-00134004 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 10373 | Turner v. Mize, 280 Ga. App. 256 | 307A+486 | Pursuant to the two-prong test set forth by OCGA " 9"11"36(b), the trial court may permit the withdrawal of admissions "[ (1) ] when the presentation of the merits of the action will be subserved thereby and [ (2) ] the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." The burden as to the first prong is on the movant seeking to withdraw the admissions, and the burden as to the second prong is on the nonmovant/respondent. Intersouth Properties v. Contractor Exchange, 199 Ga.App. 726, 727(1), 405 S.E.2d 764 (1991). "The first prong of the test is not perfunctorily satisfied ... and the desire to have a trial, standing alone, is not sufficient to satisfy the test." Id. at 727"728(1), 405 S.E.2d 764. "If the burden of proof on the subject matter of the request for admission is on the requestor, the movant is required to show the admitted request either can be refuted by admissible evidence having a modicum of credibility or is incredible on its face, and the denial is not offered solely for purposes of delay." Id. at 728(1), 405 S.E.2d 764. If the movant fails to make the required showing to satisfy the first prong of the test, then the trial court is authorized to deny the motion to withdraw the admissions. Id. See also Brown v. Morton, 274 Ga.App. 208, 210, 617 S.E.2d 198 (2005). | If a movant to withdraw or amend admissions that have resulted from failure to answer or object to requests for admission fails to make the required showing to satisfy the first prong of the test, that presentation of the merits of the action will be subserved by withdrawal or amendment, then the trial court is authorized to deny the motion to withdraw the admissions. West's Ga.Code Ann. S 9-11-36(b). | Will the trial court permit the withdrawal of admissions when the presentation of the merits of the action is subserved? | 028877.docx | LEGALEASE-00134042-LEGALEASE-00134043 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 10374 | City of Muncie v. Peters, 709 N.E.2d 50 | 307A+486 | In the context of T.R. 36(B), "prejudice" does not mean that the party who has obtained the admission will lose the benefit of the admissions; rather, it means that the party has suffered a detriment in the preparation of his case. Corby, 670 N.E.2d at 1326. For example, prejudice under the rule may be shown where the party obtaining the admission is unable to produce key witnesses or present important evidence. Id.; see also Gutting v. Falstaff Brewing Corp., 710 F.2d 1309, 1313"1314 (8th Cir.1983) (prejudice contemplated by rule relates to the difficulty a party may face proving its case because of sudden need to obtain evidence required to prove matter that had been admitted). | "Prejudice" to a party who has obtained admissions which the admitting party is seeking to withdraw does not mean that the obtaining party will lose the benefit of the admissions; rather, it means that the obtaining party has suffered a detriment in the preparation of his case. Trial Procedure Rule 36(B). | Does prejudice mean that the obtaining party has suffered a detriment in the preparation of his case? | 028926.docx | LEGALEASE-00134325-LEGALEASE-00134326 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10375 | Smith v. Loftis Bros. & Co., 43 Ga. App. 354 | 307A+69.1 | Where depositions are taken without commission and upon notice, under the provisions of the Civil Code 1910, " 5905 et seq., the testimony of the witness should be reduced to writing by the officer taking the deposition, or by the witness in the presence of the officer; but the officer may employ a disinterested stenographer to take down and write out the testimony. In either case the testimony, after it has been reduced to writing, should be subscribed by the deponent. Woodward v. Fuller, 145 Ga. 252 (6), 88 S. E. 974. Every such deposition "shall be retained by the officer taking it until he delivers it with his own hands into the court for which it is taken; or it shall, with a certificate of the reasons for taking it, and of the want of interest of the officer, and of the stenographer if one be employed, and with the notice, if any be given to the adverse party, be sealed up and directed to such court, and remain under his seal until opened in court." Civil Code 1910, " 5909. In the instant case it appears from the certificate of the officer taking the deposition of a witness for the plaintiff that the answers of the witness were reduced to writing, in the presence of the officer, by a stenographer, and no certificate of the lack of interest of the stenographer accompanied the deposition. Consequently, it was not returned in the manner provided by law and was not admissible in evidence. Since the testimony of this witness was material to the issue involved, and since the verdict in favor of the plaintiff, although authorized, was not demanded by the evidence, the error of the court in admitting the deposition over objection necessitates a new trial. | Testimony taken by deposition should be reduced to writing by officer or disinterested stenographer and subscribed by deponent (Civ.Code 1910, S 5905 et seq.). | Should testimony taken by a deposition be reduced to writing by an officer or disinterested stenographer and subscribed by a deponent? | 029031.docx | LEGALEASE-00134208-LEGALEASE-00134209 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 10376 | Bueb v. Dreessen, 104 Ill. App. 409 | 307A+69.1 | The fact that the attendance fee (129.02?) is small, is immaterial. It is as consequential as though the fee for attendance prescribed by the statute was 6451.01? per day. The party that gave the notice to take the depositions did not fail to take them according to the notice; on the contrary, they were taken upon the day appointed, although at a later hour than that designated. A commissioner appointed to take depositions has within reasonable limits and for reasonable cause, power to adjourn the taking of depositions, as was done in this case, from ten o'clock in the morning until four o'clock in the afternoon. | A commissioner appointed to take depositions has, within reasonable limits and for reasonable cause, power to adjourn the taking of depositions. | "Does a commissioner appointed to take depositions have, within reasonable limits and for reasonable cause, the power to adjourn the taking of depositions?" | 029055.docx | LEGALEASE-00134355-LEGALEASE-00134356 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 10377 | Faber v. Loveless, 249 Iowa 593 | 371+2001 | Section 5, Article VII, Constitution of Iowa, provides "such law shall impose and provide for the collection of a direct annual tax,." While the name given a tax by the legislature is not determinative, such legislative designation is an important factor in determining the character of the tax, 84 C.J.S. Taxation " 3-b. Section 11 of the Act definitely states the tax, as to both classes of property is a direct tax. | While the name given a tax by the legislature is not determinative, such legislative designation is an important factor in determining the character of the tax. | "Is a legislative designation an important factor in determining the character of the tax, while the name given a tax by the legislature is not determinative?" | 045045.docx | LEGALEASE-00134298-LEGALEASE-00134300 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 10378 | Carr v. Town of Fleming, 122 A.D.2d 540 | 148+2.1 | The complaint also alleges a de facto appropriation. A de facto taking is similar to a trespass in that both require a physical entry. However, a trespass is temporary in nature, and a de facto taking is a permanent ouster of the owner or permanent interference with his physical use, possession and enjoyment of the property by one having condemnation powers (City of Buffalo v. Clement Co., 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895; Mickel v. State of New York, 77 A.D.2d 794, 430 N.Y.S.2d 741; Hylan Flying Serv., Inc. v. State of New York, 54 A.D.2d 278, 388 N.Y.S.2d 444). An entry cannot be both a trespass and a taking because, in the latter instance, the condemnor acquires ownership. The lean record before us does not permit a determination that the Town's entry was permanent, and the issue of whether the entry was a trespass or taking must be resolved at trial. We do note, however, that any claim for damages resulting from a de facto taking is time-barred. Such a claim would have accrued in this instance when the condemnor physically entered upon the property and installed the sewer line (Rymkevitch v. State of New York, 42 Misc.2d 1021, 249 N.Y.S.2d 514; see also, 509 Sixth Ave. Corp. v. New York City Tr. Auth., supra, 15 N.Y.2d 51, 255 N.Y.S.2d 89, 203 N.E.2d 486). | Entry cannot be both trespass and taking in that trespass is temporary, while de facto taking is permanent ouster of owner or permanent interference with his physical use, possession and enjoyment of property by one having condemnation powers. | Is the nature of a defacto taking more permanent than that of a trespass? | 047350.docx | LEGALEASE-00134826-LEGALEASE-00134827 | Condensed, Order, SA | 0.81 | 1 | 1 | 0 | 1 | 1 |
| 10379 | City of Evanston v. Texaco, 19 F. Supp. 3d 817 | 386+11 | Evanston's trespass claim also survives dismissal. "A trespass is an invasion in the exclusive possession and physical condition of land." Lyons v. State Farm Fire & Cas. Co., 349 Ill.App.3d 404, 285 Ill.Dec. 231, 811 N.E.2d 718, 725 (Ill.App.2004); see also Muscarello, 610 F.3d at 425; Helping Others Maintain Envtl. Standards, 346 Ill.Dec. 789, 941 N.E.2d at 367. Chevron argues that the amended complaint does not state a viable trespass claim because it fails to allege the alleged environmental contamination completely deprived Evanston the use of its land. Doc. 30 at 14 (arguing that the amended complaint "does not allege that the streets are not usable by Evanston or the public"). But a trespass claim does not require the plaintiff to allege and show total deprivation of the use of its land. See Millers Mut. Ins. Ass'n of Ill. v. Graham Oil Co., 282 Ill.App.3d 129, 218 Ill.Dec. 60, 668 N.E.2d 223, 230 (Ill.App.1996) ("Thus, as the Pipefitters [Welfare Education Fund v. Westchester Fire Insurance Co., 976 F.2d 1037, 1041 (7th Cir.1992),] court recognized, one need not intend to take possession of the encroached-upon premises or deprive occupants of their right to possess those premises to have committed a trespass under Illinois law."). Instead, a trespass claim may be premised on the defendant having caused "a thing ... to enter the land of another ... through a negligent act." Ibid. As the amended complaint alleges, the negligently leaked contaminants entered Evanston's property, interfering with its otherwise exclusive possession thereof. See Zimmer v. Vill. of Willowbrook, 242 Ill.App.3d 437, 182 Ill.Dec. 840, 610 N.E.2d 709, 714"15 (Ill.App.1993) (citing cases) (holding that water flowing onto adjacent land constitutes trespass); Vill. of Roxana v. Shell Oil Co., 2013 WL 4510164, at (C.D.Ill. Aug. 26, 2013) (holding that pollution flowing onto the plaintiff's land is a trespass). That is all the amended complaint needs to do to plead a trespass claim. | Under Illinois law, trespass claim does not require plaintiff to allege and show total deprivation of the use of its land; instead, trespass claim may be premised on defendant having caused a thing to enter the land of another through a negligent act. | Does a trespass claim require plaintiff to allege and show total deprivation of the use of its land? | 047407.docx | LEGALEASE-00134816-LEGALEASE-00134817 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10380 | People v. Rissman, 154 Cal. App. 2d 265 | 63+9 | Defendant first asserts the corpus delicti was not established as to either count charging solicitation of a bribe. He says the corpus delicti consists of the asking, the intent, and the contemplated overt act. The People say the first two elements comprise the corpus delicti. The People are right. Defendant asserts proof of the specific intent and of the contemplated overt act are wanting. When any person solicits another to offer or join in the offer of a bribe, the solicitor has committed the offense described in section 653f. People v. Woodward, 136 Cal.App. 149, 151"152, 28 P.2d 36. The gist of the offense is the solicitation to offer or join in the offer of a bribe, and not the commission of bribery. People v. Humphrey, 27 Cal.App.2d 631, 637, 81 P.2d 588; People v. Haley, 102 Cal.App.2d 159, 164"165, 227 P.2d 48. The intent may be gathered from the surrounding circumstances. People v. Megladdery, 40 Cal.App.2d 748, 784, 106 P.2d 84. A contemplated overt act is not an essential element of the offense denounced by section 653f. The offense "is complete when the solicitation is made, and it is immaterial that the object of the solicitation is never consummated, or that no steps are taken toward its consummation." People v. Burt, 45 Cal.2d 311, 314, 288 P.2d 503, 505, 51 A.L.R.2d 948; Annotation; 51 A.L.R.2d 953, 956. The intent of defendant to solicit another to offer and to join in the offer of a bribe to obtain liquor licenses as charged in Counts I and III was clearly established. | The intent essential to commission of offense of soliciting another to offer or join in the offer of a bribe may be gathered from the surrounding circumstances. West's Ann.Pen.Code, S 653f. | Can the intent of soliciting another to join in an offer of a bribe be gathered from surrounding circumstances? | 011512.docx | LEGALEASE-00135508-LEGALEASE-00135509 | Condensed, Order, SA | 0.88 | 1 | 1 | 0 | 1 | 1 |
| 10381 | United States v. Hood, 343 U.S. 148 | 63+1(1) | 18 U.S.C. s 215, 18 U.S.C.A. s 215, makes it a crime to solicit or receive political contributions on the basis of a promise to help "any person" obtain "any appointive office or place under the United States * * *." The Government argues that this statute makes it criminal to promise to help someone get an "office or place" even though there is no such office or place in existence. Apparently sensing that such an extraordinary expansion of this criminal statute might not be accepted, the Government argues for a lesser expansion sufficient to include an "office or place" if there is a "substantial possibility" that it may be "set up in the near future." The Court's construction is apparently the same although there are slight verbal variations. It reads the statute as punishing promises made to use "influence in connection with an office which had been authorized by law and which, at the time of the sale, might reasonably be expected to be established." The words used in this statute convey no such meaning to me. I think that any person reading the words "office or place" would immediately think of them as applying to an actual, existing "office or place". This surely would be a fair construction of the language used, and I think it is the construction that should be compelled in connection with this criminal statute. It requires considerable straining to say that Congress "plainly and unmistakably", United States v. Gradwell, 243 U.S. 476, 485, 37 S.Ct. 407, 411, 61 L.Ed. 857, made it a crime to use influence in connection with an "office or place" that did not exist. See United States v. Halseth, 342 U.S. 277, 72 S.Ct. 275. As a matter of fact, the "reasonably to be expected" office or place here talked about was not only nonexistent at the time the alleged promise was made"it has not been "set up" yet. We should not stretch this statute to cover conduct which is not prohibited on the theory that Congress would have done so had it thought about it. United States v. Weitzel, 246 U.S. 533, 543, 38 | Statute prohibiting receipt or solicitation of thing of value in consideration for promise of support or use of influence in obtaining appointive office or place under United States for any person was directed at evil of purchased influence in determining occupants of federal office, and outlawed solicitation of such purchase thereto for reason that sale of influence in anticipation of job may be as equally damaging to proper operation of federal service. 18 U.S.C.A. S 215. | Is it a crime to solicit or receive political contributions for a promise to help any person obtain any appointive office or place under the United States? | Bribery - Memo #373 - C-CSS.docx | ROSS-003303984-ROSS-003303985 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 10382 | Stouper v. Jones, 284 F.2d 240 | 296+2 | It is well settled that a pension granted by the Government confers no right which cannot be revised, modified or recalled by subsequent legislation. United States ex rel. Burnett v. Teller, 1882, 107 U.S. 64, 2 S.Ct. 39, 27 L.Ed. 352. The question is whether that is also true under statutory arrangements for annuities to retired employees who have been required to contribute to the retirement fund by means of payroll deductions. | Pension granted by government confers no right which cannot be revised, modified or recalled by subsequent legislation. | "Can a pension granted by government confer a right which can be revised, modified or recalled by subsequent legislation?" | 022786.docx | LEGALEASE-00135755-LEGALEASE-00135756 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 10383 | In re Sewell, 472 S.W.3d 449 | 307A+486 | Under Rule 198 of the Texas Rules of Civil Procedure, if a party does not timely respond to a request for admissions, "the request is considered admitted without the necessity of a court order." Tex. R. Civ. P. 198.2(c). Further, any matter deemed admitted "is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." Tex. R. Civ. P. 98.3. To obtain permission to withdraw deemed admissions, a party must show (1) good cause, (2) that the other party will not be unduly prejudiced, and (3) that the presentation of the merits of the lawsuit will be served by the withdrawal. See id.; Wheeler v. Green, 157 S.W.3d 439, 443 n. 2 (Tex.2005) (per curiam). Generally, a party demonstrates "good cause" by showing that his failure to respond "was accidental or the result of a mistake, rather than intentional or the result of conscious indifference." Stelly v. Papania, 927 S.W.2d 620, 622 (Tex.1996) (per curiam). "Undue prejudice depends on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." Wheeler, 157 S.W.3d at 443 (citing Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687 (Tex.2002)); Stelly, 927 S.W.2d at 622; see also Wal"Mart Stores, Inc. v. Deggs, 968 S.W.2d 354, 357 (Tex.1998) (per curiam) (finding no undue prejudice from withdrawal of deemed admissions where plaintiff had already deposed withdrawing party). Finally, "[t]he burden of proof on all three requirements [of Rule 198.3] is on the party seeking withdrawal." Morgan v. Timmers Chevrolet, Inc., 1 S.W.3d 803, 807 (Tex.App."Houston [1st Dist.] 1999, pet. denied). | The burden of proof on all three requirements of rule allowing for withdrawal of deemed admissions is on the party seeking withdrawal. Tex. R. Civ. P. 198.3. | Is the burden of proof on all three requirements of rule allowing for withdrawal of deemed admissions on the party seeking withdrawal? | Pretrial Procedure - Memo # 2778 - C - DA.docx | ROSS-003290311-ROSS-003290312 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10384 | Jankelson v. Cisel, 3 Wash. App. 139 | 307A+716 | The withdrawal of an attorney in a civil case or his discharge does not give the party an absolute right of continuance. Grunewald v. Missouri Pacific R.R., 331 F.2d 983 (8th Cir. 1964); Annot., 48 A.L.R.2d 1155 (1956). The rationale for this rule is that if a contrary rule should prevail, all a party desiring a continuance, under such circumstances, would have to do would be to discharge his counsel or induce him to file a notice of withdrawal. Peterson v. Crockett, 158 Wash. 631, 291 P. 721 (1930). | The withdrawal of an attorney in a civil case or his discharge does not give party an absolute right of continuance. | Does the withdrawal of an attorney in a civil case or his discharge give a party an absolute right of continuance? | 029260.docx | LEGALEASE-00135741-LEGALEASE-00135742 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 10385 | Chapman v. St. Louis Cty. Bank, 649 S.W.2d 920 | 307A+716 | The mere fact that an attorney withdraws from a case does not give a party an absolute right to continuance. Harms v. Simpkin, 322 S.W.2d 930, 933[4] (Mo.App.1959); Annot., 48 ALR2d 1155 (1956). Where the trial court does not abuse its discretion its refusal of the continuance shall not be disturbed on appeal. Here the Chapmans had actual knowledge that the case was set for trial four weeks in advance. Absent a showing that appellants had not had such knowledge long enough to enable them to properly prepare with or without counsel, they are not entitled to a continuance. In each case this is a question for the discretion of the trial court. Harms v. Simpkin, 322 S.W.2d at 933. Only in extreme cases where it clearly appears that the moving party, in this case, plaintiffs, is free of any dereliction will this court disturb the trial court's decision. | Mere fact that attorney withdraws from case does not give party an absolute right to a continuance. | Does the mere fact that attorney withdraws from case not give party an absolute right to a continuance? | 029554.docx | LEGALEASE-00135386-LEGALEASE-00135387 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10386 | Rhodes v. Blair, 919 S.W.2d 561 | 307A+483 | Plaintiffs correctly point out that a party admits the matters contained in a request for admissions by failing to respond to it. Rule 59.01(a). Matters admitted pursuant to Rule 59.01 are conclusively established unless the court permits withdrawal or amendment of the admissions. Rule 59.01(c); Research Hosp. v. Williams, 651 S.W.2d 667, 669 (Mo.App.W.D.1983). Such admissions compare with admissions contained in pleadings and eliminate the need for further proof of those matters. Dana Commercial Credit Corp. v. Cukjati, 880 S.W.2d 612, 615 (Mo.App.S.D.1994); Killian Const. Co. v. Tri"City Const. Co., 693 S.W.2d 819, 827 (Mo.App.W.D.1985). See also N.R. v. A.D., 655 S.W.2d 733, 736 (Mo.App.E.D.1983). The consequences of failing to respond to requests for admissions apply even though, as here, the party appears pro se. Research Hosp. v. Williams, 651 S.W.2d at 669. | Admissions by party to civil action by failure to respond to request for admissions compare with admissions contained in pleadings and eliminate need for further proof of those matters. V.A.M.R. 59.01(a, c). | "Do admissions by the party to a civil action by failure to respond to a request for admissions, like admissions in pleadings, eliminate any need to further prove such matters?" | Pretrial Procedure - Memo # 3536 - C - SK.docx | ROSS-003318657-ROSS-003318658 | Condensed, Order, SA, Sub | 0.76 | 1 | 1 | 1 | 1 | 1 |
| 10387 | Martin v. Wyatt, 243 Ga. App. 31 | 307A+716 | Nothing in this record shows that any of these criteria for granting a continuance due to counsel's illness were met. " "Continuances because of the absence of counsel are not favored, and a strict compliance with the law is required, particularly since the matter rests within the sound discretion of the trial judge." " Chappelaer v. Gen. GMC Trucks, 130 Ga.App.664, 666(2), 204 S.E.2d 326 (1974). | Continuances because of the absence of counsel are not favored, and a strict compliance with the law is required, particularly since the matter rests within the sound discretion of the trial judge. O.C.G.A. S 9-10-155. | Is continuance because of the absence of counsel not favored? | 029683.docx | LEGALEASE-00135077-LEGALEASE-00135078 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 10388 | Robbins v. Allstate Ins. Co., 362 Ill. App. 3d 540 | 307A+483 | Quite simply, the failure to respond to a request for admission results in the admission of the facts contained in the request. Walker v. Valor Insurance Co., 314 Ill.App.3d 55, 61, 246 Ill.Dec. 835, 731 N.E.2d 363 (2000). Such an admission may properly form the basis of a grant of summary judgment. Glasco v. Marony, 347 Ill.App.3d 1069, 1074, 283 Ill.Dec. 819, 808 N.E.2d 1107 (2004). A party having admitted a fact under Rule 216 may not later deny it at trial. In re Yamaguchi, 118 Ill.2d 417, 424, 113 Ill.Dec. 928, 515 N.E.2d 1235 (1987). Indeed, an admission made pursuant to the rule is considered a judicial admission and is thus incontrovertible, even at the summary judgment stage. Moy v. Ng, 341 Ill.App.3d 984, 988, 276 Ill.Dec. 160, 793 N.E.2d 919 (2003); see also Ellis v. American Family Mutual Insurance Co., 322 Ill.App.3d 1006, 1010, 255 Ill.Dec. 902, 750 N.E.2d 1287 (2001) ("Admissions pursuant to requests to admit constitute judicial admissions, which are binding upon the party making them; they may not be controverted at trial or in a motion for summary judgment"). | A party having admitted a fact for failure to respond to a request for admission may not later deny it at trial. Sup.Ct.Rules, Rule 216(a). | May a party having admitted a fact for failure to respond to a request for admission not later deny it at trial? | 029712.docx | LEGALEASE-00135477-LEGALEASE-00135478 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 10389 | Ruge v. Posey, 114 Idaho 890 | 307A+485 | We first discuss the Rule 37(a) issue. The rule provides, in pertinent part, as follows:If a party fails to admit ... the truth of any matter as requested under Rule 36 and if the party requesting the admissions thereafter proves ... the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit. [Emphasis added.]. | Judge may not refuse to award reasonable expenses for failure to admit solely because expenses of proving matter contained in requests for admission might also have been incurred with respect to another issue. Rules Civ.Proc., Rule 37(c). | "If a party fail to admit the truth of any matter requested, should the party requesting the admissions prove the truth of the matter to apply to the court for an order requiring the other party to pay the reasonable expenses and reasonable attorney's fees?" | Pretrial Procedure - Memo # 3576 - C - SS.docx | LEGALEASE-00025504-LEGALEASE-00025505 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 10390 | Estate of DePew, 511 S.W.3d 420 | 30+3259 | "Awarding costs and expenses is within the sound discretion of the trial court and should not be reversed absent a showing that the trial court abused its discretion." Trimble v. Pracna, 167 S.W.3d 706, 716 (Mo. banc 2005). Rule 77.01 provides: "In civil actions, the party prevailing shall recover his costs against the other party, unless otherwise provided in these rules or by law." Section 514.060 provides: "In all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law." Just such a provision is contained in section 514.090, which provides: "Where there are several counts in any petition, and any one of them be adjudged insufficient, or a verdict, or any issue joined thereon, shall be found for the defendant, costs shall be awarded at the discretion of the court." "This statute affords the trial court discretion to apportion an award of costs in favor of a defendant who prevails on some but not all claims asserted by a plaintiff." Riggs v. State Dep't of Soc. Services, 473 S.W.3d 177, 183 (Mo. App. W.D. 2015). | Awarding costs and expenses is within the sound discretion of the trial court and should not be reversed absent a showing that the trial court abused its discretion. | Is awarding costs and expenses within the sound discretion of the trial court? | Pretrial Procedure - Memo # 3633 - C - CK.docx | ROSS-003331399-ROSS-003331400 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10391 | Treadwell v. Greene, 89 A.D. 60 | 307A+69.1 | While, ordinarily, the court will reserve all questions upon the settlement of interrogatories and cross-interrogatories until the trial, yet in this case the right to cross-examine is so grossly abused that the court is compelled in justice to restrict the examination to that which is properly cross-examination, and for that reason the following cross-interrogatories are disallowed:In the third cross-interrogatory the words "all the particulars in connection with each in chronological order"; the 6th, 8th, 9th, 11th, 12th, 14th, 15th, 19th, 23d, and 27th cross-interrogatories; in the 37th cross-interrogatory the words, "and in what manner did you use or distribute such payment, and to whom did you pay it or any portion thereof"; from the 39th to the 87th cross-interrogatories, both inclusive; in the 88th cross-interrogatory the words, "and confer with him with reference to said settlement and the ratification thereof"; the 102d, 103d, 104th, 105th, 106th, 109th, 110th, 111th, and 112th cross-interrogatories; the first cross-interrogatory numbered 114; the 115th, 116th, 117th, 118th, and 132d cross-interrogatories. | While ordinarily, the court will reserve questions on the settlement of interrogatories and cross-interrogatories until trial, where the right to cross-examine has been abused the court will on motion restrict the examination to a proper cross-examination. | Will the court reserve questions on the settlement of interrogatories and cross-interrogatories until trial? | 029865.docx | LEGALEASE-00135208-LEGALEASE-00135209 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 10392 | In re Estate of Leichman, 2016-Ohio-4592 | 307A+483 | Civ.R. 36 governs requests for admissions. Specifically, pursuant to Civ.R. 36 A) (1), "the matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service of the request or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party attorney." As this court has stated previously, "when a party fails to timely respond to a request for admissions, the admissions become facts of record, which the court must recognize." January Invests., LLC v. Ingram, 12th Dist. Warren No. CA2009 09 127, 2010 Ohio 1937, 2010 WL 1757940. However, this court has also determined that "a trial court may permit the withdrawal or amendment even if the admission is the result of a party untimely failure to respond." Baron v. Buckner, 12th Dist. Warren No. CA90"10"071, 1991 WL 69355, (Apr. 29, 1991). This is because Civ.R. 36 "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." Cleveland Trust Co. v. Willis, 20 Ohio St.3d 66, 67, 485 N.E.2d 1052 (1985). | When a party fails to timely respond to a request for admissions, the admissions become facts of record, which the court must recognize. Rules Civ.Proc., Rule 36(A)(1). | "Where a party fails to timely respond to the request for admissions, do those admissions become fact?" | Pretrial Procedure - Memo # 3663 - C - NE.docx | ROSS-003290871-ROSS-003290873 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10393 | City of San Antonio v. Bynum, 937 S.W.2d 596 | 307A+483 | Davis sent Handley requests for admissions that were not answered within thirty days of service. By operation of law, these requests were deemed admitted. See Ruiz v. Nicolas Trevino Forwarding Agency, Inc., 888 S.W.2d 86, 88 (Tex.App."San Antonio 1994, no writ). The second request stated "[t]hat at all times made the basis of this lawsuit, OFFICER KENNETH DAVIS acted in "good faith." " This statement was sufficient to support summary judgment. See State v. Carrillo, 885 S.W.2d 212, 214 (Tex.App."San Antonio 1994, no writ). | Requests for admissions that were not answered within 30 days of service were deemed admitted by operation of law. | Are requests for admissions that are not answered within 30 days of service deemed admitted by operation of law? | 029914.docx | LEGALEASE-00135613-LEGALEASE-00135614 | Condensed, Order, SA | 0.78 | 1 | 1 | 0 | 1 | 1 |
| 10394 | State Bd. of Assessors v. State, 48 N.J.L. 146 | 371+3400 | Railroad and canal property being peculiar property, which cannot, in justice to its owner, be valued in the same way as other property of a like nature, the legislature was bound to provide a proper method of valuing it justly for the purposes of taxation. Such method must be a peculiar one. The machinery provided for the purpose by the act"a state board of assessors"is appropriate, and such as is necessary in view of the peculiar character of the property. If, by the method adopted, the companies are required to bear no more than their just share of the public burden of taxation, they surely have no ground of complaint. Whether the tax which they pay is appropriated to state purposes alone, or to state and county municipal purposes, is a matter which does not concern them. All taxes, whether levied for state, county, or municipal purposes, are state taxes; they can be imposed by no other authority than that of the state. The state appropriates the proceeds to what purposes it sees fit; but, however the proceeds may be appropriated, every tax is a state tax.Camden & A. R. R. v. Commissioners of Appeal, 18 N. J. Law, 71; State v. Cook, 32 N. J. Law, 338; State v. Jersey City, 43 N. J. Law, 135. If the legislative provision for the taxation of the property of railroad and canal companies is not in contravention of the constitution, it will stand. The apportionment of the proceeds of the taxation cannot affect the assessment. | All taxes, whether levied for state, county or municipal purposes, are state taxes; they can be imposed by no other authority than that of the state, and the state appropriates the proceeds to whatever purposes it sees fit. | "Are all taxes, whether levied for state, county, or municipal purposes, ""state taxes""?" | 045219.docx | LEGALEASE-00135911-LEGALEASE-00135912 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10395 | Aberdeen Apartments v. Cary Campbell Realty All., 820 N.E.2d 158 | 386+12 | The question of whether a landlord must have exclusive possession of the common areas of an apartment community before he or she may sue for trespass to those areas has not been addressed in this state; therefore, we will consider how courts in other states have resolved this or similar issues. Initially, we note that in a trespass claim a plaintiff must prove that "he was in possession of the land and that "the defendant entered the land without right." " Indiana Michigan Power Co. v. Runge, 717 N.E.2d 216, 227 (Ind.Ct.App.1999) (quoting Lever Bros. Co. v. Langdoc, 655 N.E.2d 577, 581"82 (Ind.Ct.App.1995)). By our own enunciation of the elements of a trespass claim, a plaintiff need only prove that he or she is in possession, rather than exclusive possession, of the land in question to succeed. But we have also abided by the "traditional rule that an action for trespass to real estate "cannot be maintained for an invasion of a right of way or easement." " Runge, 717 N.E.2d at 227 (quoting State ex rel. Green v. Gibson Circuit Court, 246 Ind. 446, 449, 206 N.E.2d 135, 137 (1965)). This traditional rule " "is based upon the principle that trespass actions are possessory actions and that the right interfered with is the plaintiff's right to the exclusive possession of a chattel or land." " Id. The traditional rule then seems to muddy the waters by suggesting that for a plaintiff to prevail in a trespass claim he or she must prove exclusive possession of the land in question. | In a civil claim for trespass, a plaintiff must prove that he was in possession of the land and that the defendant entered the land without right. | Is the plaintiff required to prove the defendant entered the land without right for a claim of trespass? | Trespass - Memo 259 - JS.docx | ROSS-003291315-ROSS-003291316 | Order, SA | 0.9 | 1 | 0 | 0 | 1 | |
| 10396 | United States v. Varner, 13 F.3d 1503 | 83E+801 | Third, the provision in the note stating that it was subject to the regulations of the FmHA does not have the effect of making the note a conditional promise to pay. See generally, Matter of Ascot Mortg., Inc., 153 B.R. 1002, 1013 (Bankr.N.D.Ga.1993). Mere production of a note establishes prima facie authenticity and is sufficient to make a promissory note admissible. United States v. Carriger, 592 F.2d 312, 316"17 (6th Cir.1979). Accordingly, in the absence of any evidence to support Appellant's general denial, Appellee sufficiently authenticated the promissory notes for admission by their production. | Under the Uniform Commercial Code (UCC), mere production of note establishes its prima facie authenticity and is sufficient to make note admissible. U.C.C. S 3-307 (1989). | Does the mere production of a note establish prima facie authenticity and is sufficient to make a promissory note admissible? | Bills and Notes- Memo 236-VP.docx | ROSS-003302593-ROSS-003302594 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 10397 | United States v. Dimora, 879 F. Supp. 2d 718 | 63+1(1) | Moreover, it is well settled that "official acts" are not limited to those acts performed pursuant to the public official's actual power. It is enough that the person for whom the acts are performed has a reasonable expectation that the public official had that power. See Carter, 530 F.3d at 574"75 (sufficient that victim reasonably believed that the defendant public official could deliver on his promise); United States v. Rivera Rangel, 396 F.3d 476, 485 (1st Cir.2005) ("[I]t is irrelevant that Rivera lacked (and that Ventura knew she lacked) the ultimate authority to issue permits or otherwise affect his government business; Rivera, in her official capacity, had the power to facilitate Ventura's government business, and it was that power that Ventura paid her to exercise."); United States v. Farley, 2 F.3d 645, 651 n. 3 (6th Cir.1993) (sale of nonexistent honorary deputy sheriff commissions constituted official acts); United States v. Loftus, 992 F.2d 793, 796 (8th Cir.1993) ("Actual authority over the end result"rezoning"is not controlling if Loftus, through his official position, had influence and authority over a means to that end."). | For purposes of a prosecution for bribery, "official acts" are not limited to those acts performed pursuant to the public official's actual power; it is enough that the person for whom the acts are performed has a reasonable expectation that the public official had that power. 18 U.S.C.A. S 201. | Should the action of an official be considered as an official act if the person for whom the acts are performed has a reasonable expectation that the public official had that power? | Bribery - Memo #209 - C JL.docx | ROSS-003302651-ROSS-003302653 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 10398 | Perez v. United States, 274 F. Supp. 2d 330 | 63+1(1) | As to the claim of government enticement of witnesses, Perez again did not state cause or prejudice, or a fundamental miscarriage of justice. Perez cited a Tenth Circuit case, United States v. Singleton, 144 F.3d 1343 (10th Cir.1998), and asked this Court to adopt it. However, the Tenth Circuit withdrew its initial opinion and granted a rehearing, at which the court reversed its initial decision. See Singleton, 165 F.3d 1297 (10th Cir.1999). Singleton now stands for the proposition, presumably well-established previously, that the government, particularly the United States Attorney's office, may offer an accomplice leniency in exchange for truthful testimony. Id. Thus, not only is Perez's claim moot, but he has not shown the requisite cause and prejudice or fundamental miscarriage of justice necessary to invoke review of his claim. Accordingly, the Court will not review his claim regarding government enticement of witnesses. | Government, particularly the United States Attorney's office, may offer an accomplice leniency in exchange for truthful testimony without improperly enticing witnesses. | Can the government offer leniency in exchange for truthful testimony without being considered guilty of bribery? | 011695.docx | LEGALEASE-00136552-LEGALEASE-00136553 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 10399 | White v. Edwards, 222 Mich. 321 | 48A+221 | Numerous decisions of courts of last resort hold, and we think they should be followed, that one injured while momentarily standing in the highway and when not in motion is not per se guilty of contributory negligence, and that the offending party is not exonerated from all duty and from liability by the fact that he is not in motion. Among them see Dervin v. Frenier, 91 Vt. 398, 100 Atl. 760; Wells v. Shepard, 135 Ark. 466, 205 S. W. 806; Kathmeyer v. Mehl (N. J. Sup.) 60 Atl. 40; Deitchler v. Ball, 99 Wash. 483, 170 Pac. 123; Bursaw v. Plenge, 144 Minn. 459, 175 N. W. 1004; Kaminski v. Fournier, 235 Mass. 51, 126 N. E. 279; Walden v. Stone (Mo. App.) 223 S. W. 136; Reisinger v. McConnell, 265 Pa. 565, 109 Atl. 280; Regan v. Los Angeles Ice & Cold Storage Co., 46 Cal. App. 513, 189 Pac. 474; Posener v. Long (Tex. Civ. App.) 156 S. W. 591; Humes v. Schaller, 39 R. I. 519, 99 Atl. 55, L. R. A. 1917B, 316. | One injured while momentarily standing in the highway and when not in motion is not per se guilty of contributory negligence, and the offending party is not exonerated from all duty and liability by the fact that he is not in motion. | Can an offender be exonerated from liability if he was not in motion when the accident occurred? | 019250.docx | LEGALEASE-00136834-LEGALEASE-00136835 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 10400 | Mora v. Ferguson, 145 Tex. 498 | 307A+716 | We think these authorities fully support the statement in 22 C.J.S., Criminal Law, s 484, p. 747, that "where, however, there are statutes providing for continuance of cases where an attorney is in attendance on his duties as a member of the state legislature, and where the case falls within the purview of such a statute, it has been held mandatory on the court to grant a continuance." | Statute requiring a court to continue a cause where a party or his attorney is a member of the legislature, makes it mandatory on court to grant a continuance. Vernon's Ann.Civ.St. art. 2168a. | "Does the statute requiring a court to continue a cause where a party or his attorney is a member of the legislature, make it mandatory on court to grant a continuance?" | 029420.docx | LEGALEASE-00136260-LEGALEASE-00136261 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10401 | Bibbins v. City of New Orleans, 2002-1510 (La. App. 4 Cir. 5/21/03) | 307A+483 | When a party receives a request for admissions and fails to respond to the request by any means, facts are deemed admitted. Tandy v. Pecan Shoppe of Minden, Inc., 34,578 (La.App. 2 Cir. 4/4/01), 785 So.2d 111. Failure to answer a requested admission of fact within the prescribed delay constitutes conclusive admission of those facts. Hoskins v. Caplis, 431 So.2d 846 (La.App. 2 Cir.1983). | When a party receives a request for admissions and fails to respond to the request by any means, facts are deemed admitted. | "When a party receives a request for admissions and fails to respond to the request by any means, are facts deemed admitted?" | Pretrial Procedure - Memo # 3612 - C - VP.docx | ROSS-003290504-ROSS-003290505 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 10402 | Bibbins v. City of New Orleans, 2002-1510 (La. App. 4 Cir. 5/21/03) | 307A+483 | When a party receives a request for admissions and fails to respond to the request by any means, facts are deemed admitted. Tandy v. Pecan Shoppe of Minden, Inc., 34,578 (La.App. 2 Cir. 4/4/01), 785 So.2d 111. Failure to answer a requested admission of fact within the prescribed delay constitutes conclusive admission of those facts.Hoskins v. Caplis, 431 So.2d 846 (La.App. 2 Cir.1983). | Failure to answer a requested admission of fact within the prescribed delay constitutes conclusive admission of those facts. | Does failure to answer a requested admission of fact within the prescribed delay a constitute conclusive admission of those facts? | 029784.docx | LEGALEASE-00136615-LEGALEASE-00136616 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 10403 | Deloge v. Cortez, 131 Idaho 201 | 307A+483 | We decline to adopt such a tortured interpretation of the admissions. The interpretation urged by Deloge is especially implausible when the admissions are viewed as a whole. Admission No. 4 reads: "Admit that at the time of the incident alleged in the Complaint, you came onto the Cortez residence with purpose of confronting Federico Cortez." The incident alleged in the complaint was the injuries sustained by Deloge, particularly the injury to his left ear. Therefore, when Deloge's admission that Cortez used reasonable force in self-defense is read in light of admission No. 4, it becomes clear that Cortez's "response" included any and all physical reactions by Cortez, not just Cortez's very first reaction. "When there is a dispute as to the meaning of an admission, we will not contort the plain wording of the admission to favor either party's interpretation." Airco Indus. Gases, Inc. v. Teamster's Welfare Pension Fund, 850 F.2d 1028, 1036 (3rd Cir.1988). The admissions here cannot fairly be construed as urged by Deloge; under Rule 36(b) they are "conclusively established," and not open to an agonizingly implausible interpretation. The conclusiveness of matters admitted pursuant to Rule 36(b) applies equally to admissions made affirmatively and those made by default. Quiring v. Quiring, 130 Idaho 560, 944 P.2d 695 (1997), citing, American Auto. Ass'n v. AAA Legal Clinic, 930 F.2d 1117, 1120 (5th Cir.1991). | Conclusiveness of matters admitted pursuant to a request for admissions applies equally to admissions made affirmatively and those made by default. Rules Civ.Proc., Rule 36(a). | Does conclusiveness of matters apply equally to admissions made affirmatively pursuant to a request for admissions? | 029959.docx | LEGALEASE-00136242-LEGALEASE-00136244 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 10404 | Norrell v. Giles, 343 Ark. 504 | 307A+483 | In interpreting Rule 36, this court has consistently held that when a party fails to timely answer requests for admission, or otherwise fails to object to them, the requested matters are deemed admitted. See, e.g., Borg"Warner Acceptance Corp. v. Kesterson, 288 Ark. 611, 708 S.W.2d 606 (1986); Womack v. Horton, 283 Ark. 227, 674 S.W.2d 935 (1984); Beck v. Merritt, 280 Ark. 331, 657 S.W.2d 549 (1983); Barnett Restaurant Supply, Inc. v. Vance, 279 Ark. 222, 650 S.W.2d 568 (1983). Appellant does not deny that he failed to timely answer the requests for admission, nor does he challenge the propriety of the trial court's determination that the matters were then deemed admitted under Rule 36. Instead, he argues that those deemed admissions lost their effectiveness upon his being granted a voluntary dismissal without prejudice, pursuant to Rule 41(a). We agree. | When a party fails to timely answer requests for admission, or otherwise fails to object to them, the requested matters are deemed admitted. Rules Civ.Proc., Rule 36(a). | Does the trial court have no discretion whether to deem matters admitted when party fails to answer request for admission by the deadline? | 029985.docx | LEGALEASE-00136654-LEGALEASE-00136655 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10405 | Medbury v. Walsh, 190 Mich. App. 554 | 307A+483 | Thus, where a party served with a request for admissions neither answers nor objects to the request, the matters in the request are deemed admitted. Further, the admissions resulting from a failure to answer a request for admissions may form the basis for summary disposition. Janczyk v. Davis, 125 Mich.App. 683, 690, 337 N.W.2d 272 (1983). | If party served with request for admissions neither answers nor objects to request, matters in request are deemed admitted. | "If a party served with a request for admission neither answers nor objects to request, are the matters in the request deemed admitted?" | Pretrial Procedure - Memo # 3913 - C - RF.docx | ROSS-003289884-ROSS-003289885 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 10406 | Culp v. Hawkins, 711 S.W.2d 726 | 307A+483 | Appellant's failure to timely answer the requests for admissions, to timely file written objections, or to timely file a motion to file late answers resulted in each request for admission being deemed admitted pursuant to TEX.R.CIV.P. 169. Laycox v. Jaroma, 709 S.W.2d 2 (Tex.App."Corpus Christi, 1986, no writ); Cantu-Johnston Pools, Inc. v. Solis, 705 S.W.2d 299 (Tex.App."San Antonio, 1986, no writ). There is no longer a necessity to obtain an order deeming requests admitted. Under Rule 169, the requests for admissions are automatically deemed admitted after thirty days. The trial court had no discretion to exercise. Point of error number one is overruled. | Defendant's failure to timely answer requests for admissions, to timely file written objections, or to timely file motion to file late answers resulted in each request for admission being deemed admitted. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | Is a request for admission automatically deemed admitted if it is not timely answered? | 030183.docx | LEGALEASE-00136722-LEGALEASE-00136723 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 10407 | Smith v. Home Indem. Co., 683 S.W.2d 559 | 307A+483 | Before considering the points of error raised on this appeal, we deem it necessary to comment on the effect of appellant unanswered requests for admissions, some sixteen admissions having been deemed by the court because of his failure to answer. Smith erroneously argues that his deposition testimony contradicts his deemed admissions, thereby creating a fact question. Such is just not the case. TEX.R.CIV.P. 169 specifically states in part that any matter admitted under this rule is conclusively established as to the party making the admission unless the court on motion permits withdrawal or amendment of the admission. Smith totally ignored the requests for admissions and they went unanswered, without a motion to extend time for answering, or any other limiting motion, right up through the trial of this case. Neither did he move the court to withdraw or amend the admissions after they had been deemed by the court. Admissions, once made or deemed by the court, may not be contradicted by any evidence, whether in the form of live testimony or summary judgment affidavits. Henke Grain Co. v. Keenan, 658 S.W.2d 343, 347 (Tex.App. Corpus Christi 1983, no writ); American Title Company v. Smith, 445 S.W.2d 807, 809 (Tex.Civ.App. Houston 1st Dist. 1969, no writ). Where a party fails to respond to a request for admissions, "he will be precluded from offering summary judgment proof contradictory to those admissions." Henke, 658 S.W.2d at 347. | Admissions, once made or deemed admitted by the court, may not be contradicted by any evidence, whether in the form of live testimony or summary judgment affidavits. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | Can deemed admissions not be contradicted by other summary judgment evidence? | Pretrial Procedure - Memo # 3919 - C - NE.docx | ROSS-003290946-ROSS-003290947 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10408 | Lucas v. Casady, 12 Iowa 567 | 307A+723.1 | The plaintiff under the provisions of section 3016 of the Revision, filed written objections to the defendant's motion for a continuance, and among others is the following, viz: "The affidavit was not filed until the third day of the term; no reason is given why it was not filed in proper time." Section 3014 of the Revision provides, "that a motion for a continuance must be filed on the second day of the term, and if made after the second day of the term the affidavit must state facts constituting an excuse for the delay in making it." It appears from the record that the defendant's motion was not filed until the third day of the term, and no facts are stated in the affidavit in excuse for such delay. This provision of the law is direct and positive, and unless such motion is made on the second day of the term, the court can exercise no discretion in the matter unless an excuse is offered for the delay. We cannot say that this is an error without prejudice. The plaintiff is as a matter of right entitled to a showing for such delay, and if none is made, the motion should not be sustained. For this cause the judgment is reversed and cause remanded. | Under section 3014, an application for a continuance should be overruled if not made the second day of the term, or does not state facts constituting a sufficient excuse for the delay in making it. | Should an application for a continuance be overruled if not made the second day of the term? | 030245.docx | LEGALEASE-00136832-LEGALEASE-00136833 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10409 | City of Brownsville v. Crixell, 275 S.W. 430 | 307A+720 | If an amendment clearly sets up a new and different cause of action, upon request, it is the duty of the court as a matter of law to permit the defendant to withdraw his announcement of ready for trial on the ground of surprise, and grant a postponement or continuance as the case may be. | Court must permit defendant to withdraw announcement of ready, and grant postponement or continuance, if amendment sets up different cause of action. | Should a court permit a defendant to withdraw an announcement of ready? | 030329.docx | LEGALEASE-00136414-LEGALEASE-00136415 | Condensed, Order, SA | 0.48 | 1 | 1 | 0 | 1 | 1 |
| 10410 | City of Brownsville v. Crixell, 275 S.W. 430 | 307A+720 | It is apparent here that the amendment is not a new cause of action at all; it merely more definitely alleges the damages done and suffered, just as the original petition did generally. Perhaps it may be said that it was so changed as to more correctly state the correct measure of damage in such cases, in accordance with the rule of law. If that had not been done, the court in its charge, as a matter of law, would have been required to do it anyway, for there was but one way in which to measure the damages.A defendant should never be required to proceed to the trial of a case where the pleadings are so materially changed as to require new pleadings and other or different testimony than would be required to meet the issues presented, in the first instance, by the original case. | Defendant should not be required to proceed to trial, where pleadings are so materially changed as to require new pleadings and different testimony. | "Should a defendant be not required to proceed to trial, where pleadings are so materially changed as to require new pleadings and different testimony?" | 030357.docx | LEGALEASE-00136597-LEGALEASE-00136598 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10411 | Clodfelder v. Walker, 234 Ind. 219 | 307A+723.1 | The general rule with regard to the time for filing motions for continuance has been stated as follows: "An application or motion for a continuance should be made at the earliest practicable time after knowledge of the necessity for a continuance is acquired. Accordingly, unless a good reason appears for allowing it thereafter, where a party has not been diligent in seeking a continuance prior thereto, a motion for a continuance after a case has been called for trial, (or) after actual trial has commenced, is not timely made. " 17 C.J.S., Continuances, " 87, pp. 256, 257. | An application or motion for continuance should be made at the earliest practicable time after knowledge of necessity for a continuance is acquired, and unless a good reason appears for allowing it thereafter, where a party has not been diligent in seeking continuance prior thereto, a motion for continuance after a case has been called for trial, or after trial has been commenced, is not timely. Burns' Ann.St. S 2-1301. | Should an application or motion for continuance be made at the earliest practicable time after knowledge of necessity for a continuance is acquired? | Pretrial Procedure - Memo # 4055 - C - SU.docx | ROSS-003304099-ROSS-003304100 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 10412 | Hoskins v. Caplis, 431 So. 2d 846 | 307A+483 | We agree with Hoskins that under the plain language of the 1976 revision of our discovery articles the failure to answer a requested admission of fact within the prescribed delay constitutes a conclusive admission of that fact. The critical question here is: did the trial judge abuse his discretion in failing to afford Caplis the opportunity to withdraw that admission as to his residence on the date in question-the central factual issue in the nullity suit. We answer in the affirmative. | Failure to answer requested admission of fact within prescribed delay constitutes conclusive admission of that fact. LSA-C.C.P. arts. 1467, 1468. | Does failure to answer a requested admission of fact within a prescribed delay constitute a conclusive admission of that fact? | Pretrial Procedure - Memo # 4097 - C - ES.docx | ROSS-003317985-ROSS-003317986 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 10413 | Davis v. Barnes, 158 Ga. App. 89 | 388+26 | The continuance or postponement of a case is a discretionary matter and will not be controlled unless manifestly abused. The absence of a plaintiff's counsel, without leave, to attend proceedings in other courts is no ground for continuance or postponement.Bloodworth v. Caldwell, 150 Ga.App. 443, 444(1), 258 S.E.2d 64.Although no continuance was requested in this case a delay or postponement at the beginning of trial was requested and to some extent granted by the trial court in allowing plaintiff W. H. Davis time to contact plaintiffs' counsel. We find no abuse of discretion in the trial court's refusal to grant a further postponement of the commencement of the trial. Furthermore, there was no compliance with the statutory requirements of Code s 81-1413. Austin v. State, 160 Ga. 509(1a), 128 S.E. 791 | Absence of a plaintiff's counsel, without leave, to attend proceeding in other court is no ground for continuance or postponement of a case. | Is absence of counsel without leave to attend trial of cases pending in other courts no ground for continuance? | 030768.docx | LEGALEASE-00136201-LEGALEASE-00136202 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10414 | Lyles v. Com., 21 Va. App. 187 | 307A+723.1 | "Whether to grant or deny a continuance of a trial is a matter that lies within the sound discretion of a trial court, and its ruling will not be reversed on appeal unless it is plainly wrong." Cardwell v. Commonwealth, 248 Va. 501, 508, 450 S.E.2d 146, 151 (1994), cert. denied, 514 U.S. 1097, 115 S.Ct. 1826, 131 L.Ed.2d 747 (1995). A trial court is not prevented from granting an appropriate continuance even after jeopardy has attached and the trial has begun. See Bennett v. Commonwealth, 236 Va. 448, 459-62, 374 S.E.2d 303, 310-12 (1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989). | Trial court is not prevented from granting appropriate continuance even after jeopardy has attached and trial has begun. | Is a trial court prevented from granting an appropriate continuance even after jeopardy has attached and trial has begun? | Pretrial Procedure - Memo # 4348 - C - NA.docx | ROSS-003290004 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10415 | Swanson's v. Scott, 578 S.W.2d 345 | 307A+723.1 | Defendant claims the trial court erred in denying an oral request for a continuance. The request for a continuance was not in writing as required by Rule 65.03 and contained no affidavit. In the absence of compliance with this rule, there can be no abuse of discretion in denying a continuance. Searles v. Searles, 495 S.W.2d 759 (Mo.App.1973). In the brief, defendant has argued the reasons submitted to the trial court for continuance that she had obtained an expert witness who was unable to be present and that she had been unable to obtain counsel. The record does not support those claims. The case was set pursuant to a written request for continuance in writing by the defendant, consented to by the plaintiff, and granted by the court on or about July 25, when the court advised her to obtain counsel. The case was filed originally in the magistrate court in October, 1973, and the defendant discharged her counsel two days before a default was rendered in the magistrate court and approximately six months elapsed after the magistrate court judgment before the setting of the circuit court. There is no basis to find that the trial court abused its discretion in failing to grant a continuance. | In absence of compliance with rule requiring that request for continuance be in writing, there can be no abuse of discretion in denying continuance. V.A.M.R. Civil Rule 65.03. | "In absence of compliance with requirements of a rule governing a request for continuance, can there be no abuse of discretion in denying continuance?" | 030784.docx | LEGALEASE-00136407-LEGALEASE-00136408 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 10416 | State ex rel. Houser v. Goodman, 406 S.W.2d 121 | 307A+91 | We now oscillate our attention to the last sentence of respondent's order wherein he "Ordered that no deposition shall be taken of plaintiff concerning any matter covered by these interrogatories." Rule 57.01(a), V.A.M.R., states that "Any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both such purposes. After commencement of the action the deposition may be taken without leave of court. The authority granted by this rule (and under similar statutes) to take depositions has been held to be a "right" or "privilege" of a party to the litigation.. | Authority granted by rule of civil procedure to take depositions is a "right" or "privilege" of party to litigation. V.A.M.R. Civil Rule 57.01(a). | "Is the authority granted by rule of civil procedure to take depositions a ""right"" or ""privilege"" of a party to litigation?" | 030917.docx | LEGALEASE-00136940-LEGALEASE-00136941 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 10417 | Del Vecchio v. Danielle Assocs., 94 A.D.3d 941 | 157+219.50 | CPLR 3101(a) requires full disclosure of all evidence material and necessary in the prosecution or defense of an action (see Giordano v. New Rochelle Mun. Hous. Auth., 84 A.D.3d 729, 730"731, 922 N.Y.S.2d 518; Kooper v. Kooper, 74 A.D.3d 6, 10, 901 N.Y.S.2d 312). "Evidence of subsequent repairs and remedial measures is not discoverable or admissible in a negligence case unless there is an issue of maintenance or control" (Cleland v. 60"02 Woodside Corp., 221 A.D.2d 307, 308, 633 N.Y.S.2d 529; see Hughes v. Cold Spring Constr. Co., 26 A.D.3d 858, 859, 809 N.Y.S.2d 751; Niemann v. Luca, 214 A.D.2d 658, 625 N.Y.S.2d 267; Cacciolo v. Port Auth. of N.Y. & N.J., 186 A.D.2d 528, 530, 588 N.Y.S.2d 350; Klatz v. Armor El. Co., 93 A.D.2d 633, 637, 462 N.Y.S.2d 677). | Evidence of subsequent repairs and remedial measures is not discoverable or admissible in a negligence case unless there is an issue of maintenance or control. McKinney's CPLR 3101(a). | Is evidence of subsequent repairs generally not discoverable or admissible in a negligence case? | Pretrial Procedure - Memo # 4555 - C - SU.docx | ROSS-003303570-ROSS-003303571 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 10418 | Maria E. v. 599 W. Assocs., 188 Misc. 2d 119 | 307A+36.1 | However, there are exceptions to the general rule. Evidence of subsequent repairs is widely held to be discoverable if there are issues of control and maintenance. Klatz v. Armor Elevator, 93 A.D.2d 633, 462 N.Y.S.2d 677 supra. As Associates admits that it owned and controlled the premises, there are no issues of control and maintenance. Nevertheless, plaintiff argues that evidence of subsequent repairs is discoverable to prove that a dangerous condition existed and cites to dicta, in her only appellate authority, Steinel v. 131/93 Owners Corporation, 240 A.D.2d 301, 658 N.Y.S.2d 314 (1st Dept.1997) to buttress her argument. However, plaintiff has not provided any factual foundation to support the necessity, in this case, to deviate from the general rule that evidence of subsequent repairs is not discoverable. Plaintiff also demands records of subsequent repairs for purposes of proving notice. As further evidence of notice would not necessarily be cumulative and unnecessary, plaintiff's motion is granted to the limited extent of directing Associates to provide plaintiff with any repair requests made by Associates for a period of six months prior to the time of the incident, to the extent not already provided. Shvets v. Sandor Landau, 121 Misc.2d 34, 467 N.Y.S.2d 139 (Sup.Ct.1984). | Evidence of subsequent repairs is widely held to be discoverable in negligence case if there are issues of control and maintenance. | Is evidence of subsequent repairs widely held to be discoverable in negligence case if there are issues of control and maintenance? | Pretrial Procedure - Memo # 4566 - C - SU.docx | ROSS-003290078-ROSS-003290079 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 10419 | Pierce v. Morris, 192 A.D. 502 | 307A+91 | Sections 870 to 886, inclusive, of the Code of Civil Procedure, provide the procedure governing examination before trial, and were intended to eliminate the pitfalls and technicalities which existed under the old practice upon that subject. An interesting and exhaustive history of the development of the law upon the subject is contained in an opinion of Justice De Angelis in the case of Akhurst v. National Starch Co., 64 Misc. Rep. 445, 119 N. Y. Supp. 561, affirmed 148 App. Div. 898, 132 N. Y. Supp. 1120. Upon compliance with the provisions of sections 870 and 871 of the Code of Civil Procedure and with rule 82 of the General Rules of Practice, an order for the examination of a party before trial is usually granted. | Upon compliance with Code Civ.Proc. SS 870, 871, and with General Rules of Practice, rule 82, an order for the examination of a party before trial is usually granted. | Is an order for the examination of a party before trial usually granted? | Pretrial Procedure - Memo # 4752 - C - SB.docx | ROSS-003331527-ROSS-003331528 | Condensed, Order, SA | 0.77 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10420 | Keon v. New York Traprock Corp., 228 A.D. 795 | 307A+91 | Order reversed upon the law and the facts, with $10 costs and disbursements, and motion granted, with $10 costs, to the extent of providing for an examination of the defendants before trial through their officers as to the matters specified in the order to show cause contained in subdivisions (a), (b), (c), (d), (e), (f), (j), and (k) of paragraph 1 thereof, and in subdivisions (a), (b), (c), (d), and (h) of paragraph 2 thereof, and also providing for a discovery and inspection of the books and papers specified in paragraph 1 of the order to show cause relating to such discovery and inspection. Examination to proceed on five days' notice. An order for the examination of a party before trial and an order for the discovery and inspection of books and papers may be combined in one order where the party seeking the same proceeds in the first instance by an order for the examination and not by a mere notice. Fey v. Wisser, 206 App. Div. 520, 202 N. Y. S. 30. The plaintiffs are not entitled to examine the defendants as to their profits, etc., nor to have a discovery and inspection of their books generally. Settle order on notice. | Order for examination of parties before trial and for discovery and inspection of books and papers may be combined. | May an order for examination of parties before trial and for discovery and inspection of books and papers be combined? | Pretrial Procedure - Memo # 4791 - C - BP.docx | ROSS-003289401-ROSS-003289402 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 10421 | Lake v. Premier Transp., 246 S.W.3d 167 | 308+142 | With regard to their liability on corporate contracts, officers of corporations are in the same position as agents of private individuals. See Burch v. Hancock, 56 S.W.3d 257, 261 (Tex.App.-Tyler 2001, no pet.). In order for an agent to avoid personal liability on a contract entered into by the agent on behalf of the principal, the agent must disclose (1) the fact that the agent is acting in a representative capacity and (2) the identity of the principal. Id. The party with whom the agent deals has no duty to discover the principal. Id. It is properly inferred that the agent is a party to the contract until the agent gives such complete information concerning the principal's identity that the principal can be readily distinguished. Id. If the other party has no reasonable means of ascertaining the principal, the inference prevails unless the parties have agreed otherwise. Id.; see also Restatement (Second) of Agency " 321 cmt. a (1958). In other words, disclosure of an agency is incomplete for the purpose of relieving an agent from personal liability unless it included the name of the principal. Burch, 56 S.W.3d at 261; see A to Z Rental Ctr. v. Burris, 714 S.W.2d 433, 435 (Tex.App.-Austin 1986, writ ref'd n.r.e.). Furthermore, the use of a trade name is generally an insufficient disclosure of the principal's identity and the fact of agency so as to protect the agent against personal liability. Burch, 56 S.W.3d at 261"62. An agent cannot claim immunity from personal liability merely because the party with whom the agent dealt had a means of discovering the agent's representative capacity. Id. at 262. The test of disclosure is the other party's knowledge, or reasonable grounds to know of the principal's existence or identity, irrespective of the source from which the other party obtains it. Id.; see Burris, 714 S.W.2d at 435. The other party's actual knowledge of the principal, not just the other party's suspicion, is the test. Burris, 714 S.W.2d at 435. | The use of a trade name is generally an insufficient disclosure of the principal's identity and the fact of agency so as to protect the agent against personal liability. | Is the use of a trade name sufficient for disclosure of the principals identity? | Principal and Agent - Memo 97 - KC.docx | ROSS-003318266-ROSS-003318267 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 10422 | Koszdin v. State Comp. Ins. Fund, 186 Cal. App. 4th 480 | 413+2 | Pursuant to the plenary power granted by Article XIV, section 4 of the California Constitution, the Legislature enacted a comprehensive statutory scheme governing compensation given to employees for injuries sustained in the course and scope of their employment. (" 3200 et seq.) The right to receive workers' compensation benefits "is wholly statutory and is not derived from common law." (DuBois v. Workers' Comp. Appeals Bd., supra, 5 Cal.4th at p. 388, 20 Cal.Rptr.2d 523, 853 P.2d 978; see also Vierra v. Workers' Comp. Appeals Bd. (2007) 154 Cal.App.4th 1142, 1147, 65 Cal.Rptr.3d 423 ["The workers' compensation system enacted by the Legislature "is exclusive of all other statutory and common law remedies, and substitutes a new system of rights and obligations for the common law rules governing liability of employers for injuries to their employees." "].) "The right to receive attorney fee awards for securing compensation on behalf of workers is also within the broad authority vested in the Legislature over the complete workers' compensation system...." (Longval v. Workers' Comp. Appeals Bd. (1996) 51 Cal.App.4th 792, 800, 59 Cal.Rptr.2d 463.) Because injured workers are limited to these statutory remedies for all injuries caused by wrongful delays or refusals to pay, lien claimants are limited to the same. (Vacanti v. State Comp. Ins. Fund (2001) 24 Cal.4th 800, 816, 102 Cal.Rptr.2d 562, 14 P.3d 234.) As a result, "claims seeking compensation for services rendered to an employee in connection with his or her workers' compensation claim fall under the exclusive jurisdiction of the WCAB. [Citations.]" (Id. at p. 815, 102 Cal.Rptr.2d 562, 14 P.3d 234; see also Greener v. Workers' Comp. Appeals Bd. (1993) 6 Cal.4th 1028, 1038"1039, 25 Cal.Rptr.2d 539, 863 P.2d 784 [" "Proceedings which in any manner concern the recovery of compensation, or any right or liability "arising out of or incidental thereto" are to be instituted solely | The right to receive workers' compensation benefits is wholly statutory and is not derived from common law. West's Ann.Cal.Labor Code S 3200 et seq. | "Is the right to receive workers compensation benefits wholly statutory, or is it derived from common law?" | 048016.docx | LEGALEASE-00136971-LEGALEASE-00136973 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 10423 | Hathaway Lighting v. Indus. Claim Appeals Office, 143 P.3d 1187 | 413+2 | Statutorily created benefits such as workers' compensation exist only to the extent provided by the applicable statutes. Statutory limits on such benefits merely define the extent of the benefits provided, and, therefore, do not deprive affected persons of constitutionally protected property interests. Moland v. Indus. Claim Appeals Office, 111 P.3d 507 (Colo.App.2004); see Whiteside v. Smith, 67 P.3d 1240 (Colo.2003) (when a statute provides benefits, there is a constitutionally protected property interest in those benefits). | Statutorily created benefits such as workers' compensation exist only to the extent provided by the applicable statutes. | Do statutorily created benefits such as a workers compensation exist only to the extent provided or allowed by the applicable statutes? | 048082.docx | LEGALEASE-00136990-LEGALEASE-00136991 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10424 | Kurti v. Maricopa Cty., 201 Ariz. 165 | 92+3072 | In both Sudomir and Cid, the state statutes were subjected only to rational basis scrutiny because the state statutes and regulations at issue were consistent with and adopted the federal classifications. Sudomir, 767 F.2d at 1464, 1466; Cid, 598 N.W.2d at 892. Under rational basis scrutiny, federal classifications distinguishing among groups of aliens are valid unless "wholly irrational." Sudomir, 767 F.2d at 1464 (citing Mathews, 426 U.S. at 83, 96 S.Ct. 1883); see also Kenyon v. Hammer, 142 Ariz. 69, 78, 688 P.2d 961, 970 (1984) (noting that under the rational basis test, "equal protection is violated "only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective." ") (quoting McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)). | Under rational basis scrutiny, when challenging the constitutionality of a federal law on equal protection grounds, federal classifications distinguishing among groups of aliens are valid unless wholly irrational. U.S.C.A. Const.Amend. 14. | Are federal classifications distinguishing or differentiating among groups of aliens valid? | Aliens_Immigration and Citizenship_Memo 10 - GP.docx | ROSS-003331948-ROSS-003331949 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 10425 | Application of Tavlos, 429 F.2d 859 | 34+20.6(3) | Claims of conscientious objection are to be viewed by the same standards whether made before or after entering military service. Thus the District Court was required to determine if there was any basis in fact for the Army's denial of Tavlos' request for discharge. Our standard of review of the District Court is the same as in a case of pre-induction claim of conscientious objector status, Pitcher v. Laird, supra. | Claims of conscientious objection are to be viewed by the same standards whether made before or after entering military service. Military Selective Service Act of 1967, S 6(j), 50 U.S.C.A. App. S 456(j). | Should claims of conscientious objection be viewed by the same standards whether made before or after entering military service? | Armed Services - Memo 158 - JS.docx | ROSS-003303770-ROSS-003303771 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 10426 | Hillyer v. Hillyer, 59 S.W.3d 118 | 134+893(6) | This appeal involves issues relating to military retirement pay. Federal law authorizes state courts to treat the "disposable retired pay [of a service member] ... either as property solely of the member or as property of the member and his spouse," 10 U.S.C. " 1408(c)(1),1 thus allowing division of such retirement benefits as marital property upon the dissolution of a marriage. However, "disposable retired pay" does not include amounts deducted from that pay "as a result of a waiver of retired pay ... in order to receive compensation under ... title 38 [disability pay]." 10 U.S.C. " 1408(a)(4)(B). In order to receive disability pay, a former service member must waive a corresponding portion of his or her retirement pay. 38 U.S.C. " 5305. Disability pay is exempt from federal, state and local taxation, and this exemption provides an incentive for a former service member to make the waiver which otherwise would have no economic impact. Mansell v. Mansell, 490 U.S. 581, 583"84, 109 S.Ct. 2023, 2026, 104 L.Ed.2d 675(1989). | Former husband's post-divorce waiver of military retirement pay in order to receive a corresponding amount of tax-free disability benefits, which cut off former wife's receipt of her portion of retirement pay which had been awarded to her in distribution of marital property in divorce proceeding, was an impermissible modification, by former husband rather than by the court, of court decree under which former wife had obtained vested right to 40 percent of former husband's gross military retirement benefits. 38 U.S.C.A. S 5305; 10 U.S.C. (2000 Ed.) S 1408(a)(4)(B), (c)(1). | "Should a former service member waive a corresponding portion of his or her retirement pay to avoid double payment, in order to receive Veterans Affairs disability pay?" | 008506.docx | LEGALEASE-00137375-LEGALEASE-00137376 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 10427 | Econ. Fuse & Mfg. Co. v. Standard Elec. Mfg. Co., 359 Ill. 504 | 8.30E+186 | A check as contemplated under the Negotiable Instruments Act is a draft or order upon a bank or banking house, purporting to be drawn upon a deposit of funds, for the payment at all events of a certain sum of money to a certain person therein named, or to him or order, or to bearer, and payable instantly on demand. Equitable Trust Co. v. Harger, 258 Ill. 615, 102 N. E. 209; Ridgely Nat. Bank v. Patton & Hamilton, 109 Ill. 479; 3 Daniel on Neg. Inst. (7th Ed.) " 1748. An essential characteristic of a check is that it is payable on demand. Merchants' Nat. Bank v. Ritzinger, 118 Ill. 484, 8 N. E. 834. Notations or memoranda placed on the back of a check contemporaneously with the execution of the instrument, with intention of making them a part of the contract for payment of money, constitute as much a part of the instrument as though incorporated in the body thereof. Scholbe v. Schuchardt, 292 Ill. 529, 127 N. E. 169, 13 A. L. R. 247; Van Zandt v. Hopkins, 151 Ill. 248, 37 N. E. 845. In the absence of evidence concerning the intention of the maker in placing such notation on the back of a check it will be presumed to have been made contemporaneously with the instrument and as a part of it, and will be given effect as if made in the body thereof. Van Zandt v. Hopkins, supra. If the notation be intended merely to identify the instrument, it will not affect its immediate operation. 1 Daniel on Neg. Inst. (7th Ed.) " 168. It must be determined from the instrument itself whether it is negotiable, and such fact cannot be made to depend upon extrinsic facts. Sturgis Nat. Bank v. Harris Trust & Savings Bank, 351 Ill. 465, 184 N. E. 589; Pflueger v. Broadway Trust & Savings Bank, 351 Ill. 170, 184 N. E. 318; Equitable Trust Co. v. Harger, supra. The requirement placed on the back of a check that the indorsement thereof constitutes a receipt for the sum named on the face of the check does not affect its negotiability, nor does a mere recital of the transaction out of which the check arose. This check meets | Memoranda placed on back of check contemporaneously with execution thereof, or with intention of making memoranda part of contract for payment of money, constitute part of check as though incorporated therein. S.H.A. ch. 98, S 21, subds. 2, 3; SS 24, 147, 206, 207. | Is a memorandum written contemporaneously with the execution of the note form a part of the contract? | 010842.docx | LEGALEASE-00137846-LEGALEASE-00137849 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10428 | United States v. Neville, 82 F.3d 1101 | 63+1(2) | If the second reading is correct, and only employees in "an [ ] official function" qualify, we must consider whether Neville performs an "official function" for the District of Columbia government. Without venturing a comprehensive definition of "official function," we have no doubt that Neville performs such a role. Protecting the public from incarcerated criminals is a quintessentially sovereign function, carrying with it a significant measure of public trust, which the Supreme Court unanimously recognizes as the touchstone for determining whether an individual is a public official. Dixson, 465 U.S. at 496, 104 S.Ct. at 1179"80 (majority opinion); id. at 502, 104 S.Ct. at 1183 (O'Connor, J., dissenting) ("[T]he purpose of the statute was undoubtedly to proscribe bribery of all those who carry out a federal trust." (emphasis added)). | Defendant, a District of Columbia corrections officer, was "public official" subject to conviction under federal bribery statute, whether such statute was read to encompass all District employees or only those acting in an official function; defendant was permanently employed by District government, protecting public from incarcerated criminals was quintessentially sovereign and governmental function carrying with it significant measure of public trust, and no blanket requirement existed that in order to be subject to conviction under federal bribery statute District government employee must have made policy or spending decisions. 18 U.S.C.A. S 201(a)(1) | Should a public official's function carry with it a significant measure of public trust? | 011787.docx | LEGALEASE-00138013-LEGALEASE-00138014 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |
| 10429 | United States v. Bonito, 57 F.3d 167 | 63+1(2) | We shall not attempt to chart the outermost bounds of " 666 here. It is sufficient to say that we consider "business" as something different from, and often broader than, "transaction." For present purposes, we would define it to include the dealings of a government official in connection with a discrete transaction. This complements the sense of "transact" and "transaction," which imply a concluded business agreement. American Heritage Dictionary 1362 (1973). | Under federal statute proscribing bribery of officials of public and private entities receiving federal funds, in connection with any "business, transaction or series of transactions" of such entities involving at least $5,000, term "business" means something different from, and often broader than, "transaction" and includes dealings of government official in connection with discrete transaction, as such definition complements the sense of "transaction," which implies concluded business agreement. 18 U.S.C.A. S 666(a)(2). | Does business mean the dealings of a government official in connection with a discrete transaction? | 011794.docx | LEGALEASE-00137991-LEGALEASE-00137992 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10430 | United States v. Scruggs, 916 F. Supp. 2d 670 | 63+1(1) | The evidence further shows that the possibility of being recommended for a federal judgeship made DeLaughter feel that his ultimate desire was within his grasp. "[T]he requirement of value is satisfied if the thing has sufficient value in the mind of the person concerned so that his actions are influenced." McDonald, 329 So.2d at 587"88 (Ala.App.1975), cert. denied, 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99 (1976). To DeLaughter, the possibility of a federal judgeship nomination was doubtless "a thing of value," and a weak spot for him, that would influence him to preview motions and provide ex parte feedback to the Scruggs team during the pendency of the Wilson litigation, and that would eventually persuade him to chisel the Wilson case down to a worthless attempt to collect from Scruggs. The evidence further shows that Scruggs had the tools to at least convince DeLaughter that this possibility was within reach if he fulfilled his end of the deal"given Scruggs' well-known relationship with his brother-in-law, former Senator Lott, and the actions of Scruggs' team in the Wilson litigation to persuade DeLaughter. The case sub judice is similar to United States v. Barraza, 655 F.3d 375 (5th Cir.2011), in which the Fifth Circuit affirmed the conviction of a state court judge who used his position to obtain sexual favors in exchange for assisting a criminal defendant. For all the foregoing reasons, the Court finds that Petitioner's conviction for honest services fraud should be sustained. | In bribery cases, corruption of office occurs when the officeholder agrees to misuse his office in the expectation of gain, whether or not he has correctly assessed the worth of the bribe; the requirement of value is satisfied if the thing has sufficient value in the mind of the person concerned so that his actions are influenced. 18 U.S.C.A. SS 201(b), 666(a)(2). | Is the value requirement satisfied if the thing has sufficient value in the mind of the person concerned so that his actions are influenced? | 011828.docx | LEGALEASE-00137664-LEGALEASE-00137665 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 10431 | Reuille v. Bowers, 409 N.E.2d 1144 | 48A+244(21) | Indiana law is now well established that proof by a party of violation of a motor vehicle safety statute is "prima facie evidence of negligence, subject to being overcome by proof to the contrary..." Larkins v. Kohlmeyer, 229 Ind. at 400, 98 N.E.2d at 900. Not quite as settled in Indiana is what proof the party rebutting the presumption of negligence need present. Larkins and its forerunners establish that in order to rebut the presumption of negligence the party must show "that under the circumstances of the particular case, the violation was justifiable or excusable." Larkins v. Kohlmeyer, 229 Ind. at 398, 98 N.E.2d at 899. Generally, in these earlier cases excuse or justification was found only when it was impossible for the individual to comply with the statute because of either: | Proof of violation of motor vehicle safety statute is prima facie evidence of negligence, subject to being overcome by proof to the contrary. | Can proof of violation of a motor vehicle statute be an evidence of negligence? | 018880.docx | LEGALEASE-00137792-LEGALEASE-00137793 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10432 | People ex rel. Vance v. Ross, 275 Ill. 70 | 200+121 | The right to levy a hard road tax is not inherent in the voters of a township. The power and authority to levy such a tax is granted by act of the Legislature, and this power must be strictly construed. The only power conferred upon the voters of a town to impose a tax for hard roads is found in the Road and Bridge Act of 1913. By section 108 of that act it is provided that on petition of a certain per cent. of the landowners who are legal voters of the town, addressed to the town clerk in counties under township organization or to the district clerk of road districts in counties not under township organization, the clerk shall, when giving notice of the time and place of holding the next annual town meeting or road district election, also give notice that a vote will be taken for or against an annual tax in the township or road district for the purpose of constructing and maintaining hard roads. The section provides that the petition shall state the location and route of the proposed road, and also the annual rate per cent., not exceeding $1 on each $100, and the number of years, not exceeding five, for which said tax shall be levied. It further provides that if in any such petition a special election shall be requested for such purpose it shall be called in the manner provided for in the act. Section 110 provides that if the result of the election shall be in favor of a special tax, it shall be the duty of the commissioners of highways or towns or road districts to levy an annual tax in accordance with the vote, and certify the same to the county clerk; that the county clerk shall cause such levy to be extended on the tax books for the current year and for each succeeding year, as stated in the certificate, provided the length of time to which the special tax levied shall continue shall not exceed five years. Nowhere in the act is any power or authority given to the voters of a town to impose such a special tax to begin in the future. On the other hand, the language of the act plainly indicates that the town shall be | The power to levy a hard road tax is not inherent in the voters of a township, but is granted by act of the Legislature, and must be strictly construed. | Do the voters of a road district or township have power to levy tax? | 019206.docx | LEGALEASE-00137820-LEGALEASE-00137821 | Condensed, Order, SA | 0.95 | 1 | 1 | 0 | 1 | 1 |
| 10433 | Bell v. Nat'l Life & Acc. Ins. Co., 41 Ala. App. 94 | 302+9 | This contention is without merit. "It is sometimes permissible and necessary for a pleader to draw conclusions where facts are alleged that tend to support the conclusion. Birmingham Ry., Light & Power Co. v. Gonzalez, 183 Ala. 273, 61 So. 81, Ann.Cas.1916A, 543. It is only "mere conclusions' or "bald conclusions," without supporting facts which are objectionable in pleading.' Roberts v. State ex rel. Cooper, 253 Ala. 565, 46 So.2d 5, 7; See also White v. State, 253 Ala. 645, 46 So.2d 413; Preston v. LaSalle Apartments, 241 Ala. 540, 3 So.2d 411; Poole v. William Penn Fire Ins. Co., 264 Ala. 62, 84 So.2d 333; Sauls v. Leath, 213 Ala. 664, 106 So. 133. The pleas were not subject to the ground of demurrer insisted upon in brief. | It is sometimes permissible and necessary for a pleader to draw conclusions where facts are alleged that tend to support such conclusion, and it is only "mere conclusions" or "bald conclusions" without supporting facts which are objectionable in pleading. | Can a pleader draw his conclusion from the facts alleged? | Pleading - 302-1-8 - Memo 352 - RMM - 11.09.17.docx | ROSS-003302909-ROSS-003302910 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 10434 | Brown's Ex'r v. Faulk's Adm'r, 12 La. 598 | 307A+716 | The defendant having filed an exception denying the plaintiff's right to sue as executor, one of the counsel of the latter objected to going into the trial on the day it was called up for argument, on the ground that it was not regularly set down for hearing on that day. The objection being overruled, he moved for a continuance, on the ground that the other counsel was the principal one in the cause, and was absent. The continuance was refused, the case was heard, the exception sustained, and judgment given dismissing the suit. The plaintiff appealed after an unsuccessful attempt to obtain a new trial. | The voluntary absence in another court of party's counsel, especially if not in possession of important papers that cannot be obtained from him, and where other counsel is engaged and attending, is no ground for a continuance. A party, by requesting his principal counsel to absent himself, might otherwise always obtain a continuance. | "Is the voluntary absence in another court of party's counsel, especially if not in possession of important papers that cannot be obtained from him, and where other counsel is engaged and attending, ground for a continuance?" | 030134.docx | LEGALEASE-00137379-LEGALEASE-00137381 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10435 | Sinea v. Denman Tire Corp., 135 Ohio App. 3d 44 | 307A+485 | The decision whether to grant sanctions pursuant to Civ.R. 37(C) rests within the sound discretion of the trial court. Itskin v. Restaurant Food Supply (1982), 7 Ohio App.3d 127, 129, 7 OBR 161, 162"163, 454 N.E.2d 583, 586"587. An appellate court will not reverse the decision of the trial court in this regard absent an abuse of discretion. Id. | The decision whether to grant sanctions to a party for establishing at trial the truth of matters that the opposing party had denied in a pretrial request for admissions rests within the sound discretion of the trial court. Rules Civ.Proc., Rule 37(C). | Does the decision whether to grant sanctions to a party rest within the sound discretion of the court? | Pretrial Procedure - Memo # 3881 - C - BP.docx | ROSS-003331446-ROSS-003331447 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 10436 | Judd v. Ladd & Co., 1 Haw. 11 | 307A+724 | Though notice could have been given, and copy of affidavit served in this case, nothing of the kind has been done, and on this ground alone the Court would be justified in denying the motion. Moreover the motion itself is a faulty one, as it states no definite time of postponement, but asks that the trial be put off until the absent witnesses return, which may be one year, two years, or never. It is necessary that some specific time be mentioned in a motion to postpone trial; and one of the three great essentials of an affidavit founding such a motion, is, that it state that the witnesses can be had at the time to which the trial is to be deferred. Vide Graham's Practice, 246. 3 Burrows's Rep., 1514. | Some specific time should be mentioned in a motion to postpone trial because of absence of material witnesses, and affidavit on which motion is founded should state that witnesses can be had at the time to which the trial is to be deferred. | Should some specific time be mentioned in a motion to postpone trial because of the absence of material witnesses? | Pretrial Procedure - Memo # 4029 - C - DA.docx | ROSS-003290606-ROSS-003290607 | Condensed, Order, SA, Sub | 0.66 | 1 | 1 | 1 | 1 | 1 |
| 10437 | Columbus Tr. Co. v. Upper Hudson Elec. & R. Co., 190 N.Y.S. 737 | 307A+91 | It is further urged that an examination before trial taken by the notice prescribed in section 290 of the Civil Practice Act is unworkable and revolutionary. This objection is not well taken. For many years similar proceedings have been conducted under the Revised Statutes of the United States and have been found to be satisfactory. | The provisions of the Civil Practice Act, S 290, for the examination of witnesses before trial on notice by counsel are not unworkable or revolutionary, since similar proceedings have been conducted under United States statutes and have been found satisfactory. | "Are the provisions of the Civil Practice Act, for the examination of witnesses before trial on notice by counsel, not unworkable or revolutionary?" | 030990.docx | LEGALEASE-00137363-LEGALEASE-00137364 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 10438 | In re Glasgow's Estate, 121 Misc. 613 | 307A+91 | 23 Section 347 of the Civil Practice Act was not intended to abrogate the principle in the law of evidence that, where a party calls a witness and examines him, the other party may call out the whole of the communication or transaction. In every discovery proceeding, the petitioner opens the door as to any transaction concerning which he examines the respondent. Nay v. Curley, 113 N. Y. 575, 21 N. E. 698; Cole v. Sweet, 187 N. Y. 488, 80 N. E. 355; Matter of Benioff, 73 Misc. Rep. 493"495, 133 N. Y. Supp. 413. | In every discovery proceeding, petitioner opens the door as to any transaction concerning which he examines respondent. | "In every discovery proceeding, does the petitioner open the door as to any transaction concerning the examination of the respondent?" | 031020.docx | LEGALEASE-00137753-LEGALEASE-00137754 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 10439 | State ex rel. King v. Turpin, 581 S.W.2d 929 | 307A+91 | The right to take a deposition is absolute excepting as provided in Rule 56.01. Norkunas v. Norkunas, 480 S.W.2d 92, 94 (Mo.App.1972); State ex rel. Chandler v. Scott, 427 S.W.2d 759, 762 (Mo.App.1968); and State ex rel. Houser v. Goodman, 406 S.W.2d 121, 125 (Mo.App.1966). | Right to take deposition is absolute excepting as provided in rule specifying general provisions governing discovery. (Per Crist, J., with one Judge concurring in result only.) V.A.M.R. Civil Rule 56.01. | Is the right to take deposition absolute except as provided in rule specifying general provisions governing discovery? | 031022.docx | LEGALEASE-00137757-LEGALEASE-00137758 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 10440 | Young Circle Garage LLC v. Koppel, 916 So. 2d 22 | 307A+36.1 | We reject Young Circle's claim that the discovery order constitutes a departure from the essential requirements of law because it compels the production of information which is irrelevant to the lawsuit. That ordered discovery is irrelevant is not, without more, a basis for granting certiorari relief. See Allstate Ins. Co., 655 So.2d at 94. Young Circle has demonstrated neither that the disclosure of materials will reasonably cause material injury of an irreparable nature, nor that responding to the requested discovery will constitute an undue burden. See Topp Telecom, Inc. v. Atkins, 763 So.2d 1197 (Fla. 4th DCA 2000). To the claim that the discovery order violates a right of privacy, we note that a "party's finances, if relevant to the disputed issues of the underlying action, are not excepted from discovery under [a] rule of relevancy, and courts will compel production of personal financial documents and information if shown to be relevant by the requesting party." Friedman v. Heart Inst. of Port St. Lucie, 863 So.2d 189, 194 (Fla.2003). The trial court's determination of relevancy was within its broad discretion so that certiorari relief is not appropriate. | A party's finances, if relevant to the disputed issues of the underlying action, are not excepted from discovery under a rule of relevancy. | "Are a party's finances, if relevant to the disputed issues of the underlying action, not excepted from discovery under a rule of relevancy?" | 031254.docx | LEGALEASE-00137219-LEGALEASE-00137220 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10441 | Slatten v. City of Chicago, 12 Ill. App. 3d 808 | 307A+91 | The right of any party to a discovery deposition is basic and fundamental in today's adversary system, and, accordingly, the right of one party imposes a duty on the other party. That duty cannot be avoided by technical maneuvers or other conduct which results in destroying the purpose of modern discovery principles. | Right of any party to discovery deposition is basic and fundamental to adversary system and accordingly the right of one party imposes a duty on the other which cannot be avoided by technical maneuvers or other conduct which results in destroying purpose of modern discovery principles. Supreme Court Rules, rules 201, 202, 212(b), S.H.A. ch. 110A, SS 201, 202, 212(b). | Is the right of any party to discovery deposition basic and fundamental to an adversary system? | 031435.docx | LEGALEASE-00137466-LEGALEASE-00137467 | Condensed, SA | 0.14 | 0 | 1 | 0 | 1 | |
| 10442 | Madden v. Kaiser Found. Hosps., 17 Cal. 3d 699 | 308+102(3) | We therefore conclude that an agent or other fiduciary who contracts for medical treatment on behalf of his beneficiary retains the authority to enter into an agreement providing for arbitration of claims for medical malpractice. | Agent or other fiduciary who contracts for medical treatment on behalf of his beneficiary retains the authority to enter into an agreement providing for arbitration of claims for medical malpractice. West's Ann.Civ.Code, SS 2319, 2330. | Does an agent have the authority to arbitrate malpractice claims? | Principal and Agent - Memo 72 - KC.docx | ROSS-003317900-ROSS-003317901 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 10443 | Moss v. First Premier Bank, 835 F.3d 260 | 25T+149 | Appellants try to distinguish Salomon on the ground that, in that case, NYSE "exercise[d] its discretion" not to accept the arbitration, whereas, here, NAF is unavailable because it cannot accept consumer arbitrations pursuant to a consent decree. Appellants' Br. at 18. We do not find this to be a meaningful distinction. Under Salomon, the dispositive factor is not why the designated arbitral forum is unavailable, but rather whether the designated forum was "exclusive." Where the forum is exclusive, the district court may not "use [Section] 5 to circumvent the parties' designation of an exclusive arbitral forum." Salomon, 68 F.3d at 561. | Where the arbitral forum agreed upon by the parties is exclusive, but is unavailable, the district court may not use the section of the Federal Arbitration Act (FAA) governing a lapse in naming an arbitrator to circumvent the parties' designation of an exclusive arbitral forum. 9 U.S.C.A. S 5. | Can the court use Section 5 to circumvent the parties designation of an exclusive arbitral forum where the forum is exclusive? | 007584.docx | LEGALEASE-00138975-LEGALEASE-00138976 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10444 | Torres v. United Healthcare Servs., 920 F. Supp. 2d 368 | 25T+124 | The Second Circuit has not yet addressed the issue of whether an employee's right to participate in an FLSA collection action is a substantive right that cannot be waived in an arbitration agreement. Moreover, the few district courts from within this Circuit that have confronted the issue thus far have reached divergent results. Compare Cohen v. UBS Fin. Servs., Inc., 2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012) (finding that "it would be inconsistent with the FAA for the Court to find as a matter of law that class waivers are per se unenforceable"); LaVoice, 2012 WL 124590 (same); Pomposi v. GameStop, Inc., 2010 WL 147196 (D.Conn. Jan. 11, 2010) ("[T]he right to bring a collective action under the FLSA is a right that can be waived.") with Raniere, 827 F.Supp.2d at 314 (concluding that "a waiver of a right to proceed collectively under the FLSA is unenforceable as a matter of law" given that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by statute") (internal quotation marks and alteration omitted). | Employment arbitration agreement's collective action waiver did not prevent employees from vindicating their statutory rights under FLSA; neither plain language of FLSA nor its relevant legislative history evidenced a congressional intent to preclude employees from waiving their right to bring their FLSA claims as part of a collective action. 9 U.S.C.A. S 2; Fair Labor Standards Act of 1938, S 16(b), 29 U.S.C.A. S 216(b). | Can the right to proceed collectively under the Fair Labor Standards Act (FLSA) waived in an arbitration agreement? | 007599.docx | LEGALEASE-00138997-LEGALEASE-00138998 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 10445 | In re Mason's Estate, 194 Misc. 308 | 8.30E+76 | A check is a mere order for the payment of money. The authority of the payee as agent of the maker is revoked by the death of the maker prior to the time the check is cashed, Glennan v. Rochester Trust & Safe Deposit Co., 209 N.Y. 12, 102 N.E. 537, 52 L.R.A.,N.S., 302, Ann.Cas.1915A, 441; Curry v. Powers, 70 N.Y. 212, 26 Am.Rep. 577; Harris v. Clark, 3 N.Y. 93, 51 Am.Dec. 352; Matter of Mead, 90 Misc. 263, 154 N.Y.S. 667, affirmed 173 App.Div. 982, 159 N.Y.S. 1128, affirmed 221 N.Y. 645, 117 N.E. 1076. Consequently, no claims against the estate can be based on a check itself. However, the claim of which the check is evidence may still be enforceable against the estate. Matter of Ludlam's Estate, 158 Misc. 283, 285 N.Y.S. 597; Matter of Pierce's Will, Sur., 56 N.Y.S.2d 778; Matter of Ehler's Estate, 132 Misc. 910, 231 N.Y.S. 16. The execution and delivery of a check if unexplained raises the presumption that it was given in payment of a debt. Nay v. Curley, 113 N.Y. 575, 21 N.E. 698; Koehler v. Alder, 78 N.Y. 287. The rule that the validity of a contract is governed by the law of the place where the contract is made is applicable to a check. Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 19 N.E.2d 992. | A check is a mere order for payment of money and authority of payee as agent of maker is revoked by death of maker prior to time check is cashed. | Does the authority of the payee as agent of the maker is revoked by the death of the maker? | Bills and Notes -Memo 199 -DB.docx | ROSS-003302583-ROSS-003302584 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 10446 | In re Anonymous Online Speakers, 661 F.3d 1168 | 92+1498 | The right to speak, whether anonymously or otherwise, is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue. Given the importance of political speech in the history of this country, it is not surprising that courts afford political speech the highest level of protection. Meyer v. Grant, 486 U.S. 414, 422, 425, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988) (describing the First Amendment protection of "core political speech" to be "at its zenith"). Commercial speech, on the other hand, enjoys "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values," Bd. of Trustees of SUNY v. Fox, 492 U.S. 469, 477, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), as long as "the communication is neither misleading nor related to unlawful activity." Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 564, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). And some speech, such as fighting words and obscenity, is not protected by the First Amendment at all. See, e.g., Chaplinsky v. New Hampshire, 315 U.S. 568, 571"72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). | The right to speak, whether anonymously or otherwise, is not unlimited, under the First Amendment, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue. U.S.C.A. Const.Amend. 1. | Is right to speak protected by the First Amendment? | 014428.docx | LEGALEASE-00138746-LEGALEASE-00138747 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 10447 | Phelps v. Gilbreth, 68 So. 2d 360 | 302+9 | It is a rule of construction of pleadings that specific statements of fact will control over a general statement, and that conclusions of law contained in a pleading will be construed as drawn from the facts plead. In a suit in equity between partners concerning their interstitial rights and liabilities the pleading should allege the names of the partners, the term of the partnership and the rights and interest of the partners. Since the counterclaim is deficient in averments as to these matters the allegations as to a partnership will be construed as drawn from the terms of the leases which fail to show a partnership. | It is rule of construction of pleadings that specific statements of facts will control over general statement, and that conclusions of law contained in pleading will be construed as drawn from facts plead. | It is a rule of pleadings that specific statements of facts will control over general statement? | 023381.docx | LEGALEASE-00138535-LEGALEASE-00138537 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 10448 | Morgan v. Crowley, 91 Ga. App. 58 | 302+208 | 5. Several of the plaintiff's original demurrers attack the plea and answer on the ground that certain paragraphs thereof are irrelevant and immaterial and show no defense to the issues in the cause of action, or because they are irrelevant, immaterial, and prejudicial and state no issuable defense. These grounds of demurrer are insufficient to present any question for the consideration of the court. As has been frequently said: A demurrer being a critic must itself be free from imperfection, and a special demurrer must, as it were, put its finger upon the exact weakness which it seeks to point out. Southern States Portland Cement Co. v. Helms, 2 Ga.App. 308, 314, 315(1), 58 S.E. 524; Douglas, A. & G. Ry. Co. v. Swindle, 2 Ga.App. 550, 556(4), 59 S.E. 600; Charleston & W. C. Ry. Co. v. Boyd, 5 Ga.App. 137, 62 S.E. 714; Seaboard AirLine Ry. Co. v. Stoddard, 82 Ga.App. 743, 750(3), 62 S.E.2d 620. Accordingly, the special demurrers number V(4), IX, X, and XI, which, as special demurrers were subject to the foregoing criticism, were improperly sustained. | A demurrer must itself be free from imperfection, and a special demurrer must put its finger upon exact weakness which it seeks to point out. | Must a special demurrer put its finger on the exact point of weakness? | Pleading - Memo 356 - RMM.docx | ROSS-003289473-ROSS-003289474 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10449 | Reserve Life Ins. Co. v. Gay, 99 Ga. App. 661 | 307A+725 | The first portion of the order of January 8, 1959, revokes a prior order granting the continuance upon the grounds set forth above. It should first be observed that there is no legal requirement in this State whereby prior notice of intention to apply for the continuance of any matter must be given to the opposing party or his counsel. This being true, a trial judge has authority to grant a continuance ex parte if he desires, although the exercise of such authority is manifestly a matter of judicial discretion. Once such a continuance is granted, however, such grant is not subject to revocation for the mere reason that it was ex parte and without prior notice to opposing counsel. | Prior notice of intention to apply for continuance of any matter need not be given to opposing party or his counsel, trial judge has authority to grant a continuance ex parte if he desires, but exercise of such authority is manifestly a matter of judicial discretion, and once such a continuance is granted, such grant is not subject to revocation for mere reason that it was ex parte and without notice to opposing counsel. | Should prior notice of intention to apply for continuance of any matter be given to opposing party or his counsel? | 030838.docx | LEGALEASE-00138645-LEGALEASE-00138646 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |
| 10450 | Loomis v. Marsh, 215 A.D. 691 | 307A+91 | Order directing examination of third party before trial, in so far as appealed from, affirmed, with $10 costs and disbursements. We think plaintiff has presented a case of special circumstances justifying the examination of the witness sought to be examined under Civil Practice Act, " 288. The record shows a refusal by defendants to furnish the plaintiff with information in their possession to which the courts have decided plaintiff is entitled. Kelly, P. J., and Rich, Manning, Young, and Kapper, JJ., concur. Settle order on notice. | A plaintiff is entitled to examine a witness under Civil Practice Act, S 288, where the record shows a refusal by the defendants to furnish the plaintiff with information in their possession to which he is entitled. | Is a plaintiff entitled to examine a witness where the record shows a refusal by the defendants to furnish the plaintiff with information in their possession to which he is entitled? | 031082.docx | LEGALEASE-00138314-LEGALEASE-00138315 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 10451 | Friedman v. Heart Inst. of Port St. Lucie, 863 So. 2d 189 | 307A+36.1 | In exercising its discretion to prevent injury through abuse of the action or the discovery process within the action, trial courts are guided by the principles of relevancy and practicality. Clearly, "the disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant." Straub v. Matte, 805 So.2d 99, 100 (Fla. 4th DCA 2002); see also Mogul v. Mogul, 730 So.2d 1287, 1290 (Fla. 5th DCA 1999). As noted by this Court, "As appropriate, the trial court may conduct an in-camera inspection of the subject records. In that context, the trial court may balance (on an ad hoc basis) "the right to privacy and the right to know." " Alterra Healthcare Corp. v. Estate of Shelley, 827 So.2d 936, 945-46 (Fla.2002); (quoting Montana Human Rights Div. v. City of Billings, 199 Mont. 434, 649 P.2d 1283, 1290 (1982)); see also Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley, P.A. v. Mullin, 602 So.2d 955, 955 (Fla. 3d DCA 1991). Additionally, Florida's trial courts are endowed with the authority to require the proponent of a claim to post bond. See, e.g., Med. Facilities Dev., Inc. v. Little Arch Creek Props., Inc., 675 So.2d 915, 918 (Fla.1996). | The disclosure of personal financial information during discovery may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant. | Can the disclosure of a party's financial or confidential business information in discovery cause irreparable harm where the information is irrelevant to any pending matter? | 031099.docx | LEGALEASE-00138409-LEGALEASE-00138411 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 10452 | Show & Tell of New Orleans v. Fellowship Missionary Baptist Church, 156 So.3d 1234 | 307A+747.1 | Thus our law necessarily affords trial judges great discretion and power over the control of proceedings in their respective courtrooms: "A court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." La. C.C.P. art. 1631. Trial courts are also given discretion to hold pretrial conferences for purposes of simplifying the issues of a case, determining whether pleadings should be amended, determining what material facts are truly disputed, identifying witnesses, documents, and exhibits, and, importantly for our purposes, "[s]uch other matters as may aid in the disposition of the action." La. C.C.P. art. 1551 A(10); Gutierrez v. Baldridge, 10"1528, pp. 5"6 (La.App. 3 Cir. 5/11/11); 65 So.3d 251, 254. A court that holds such a conference must render an order memorializing the actions taken at the conference. See La. C.C.P. art. 1551 B; Gutierrez, 10"1528, p. 6, 65 So.3d at 254. The law affords trial courts wide discretion to implement pretrial orders and insure that their terms are enforced. See La. C.C.P. art. 1551; Robertson v. Lafayette Ins. Co., 11"0975, p. 5 (La.App. 4 Cir. 2/8/12); 85 So.3d 186, 189. That order controls the subsequent course of the action and trial, unless modified at the trial to prevent manifest injustice. See Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc., 00"1930, p. 24 (La.App. 1 Cir. 9/28/01); 809 So.2d 1040, 1055. The law provides that an orderly disposition of each case and the avoidance of surprise are inherent in the theory of pre-trial procedure and are sufficient reasons for allowing the trial judge to require adherence to the pre-trial order in the conduct of an action. Id. | Trial courts have wide discretion to implement pretrial orders and insure that their terms are enforced. LSA-C.C.P. art. 1551. | Do courts have wide discretion to implement pre-trial orders and insure that their terms are enforced? | Pretrial Procedure - Memo # 4534 - C - VA.docx | ROSS-003303562-ROSS-003303564 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 10453 | Petition of B & F Towing & Salvage Co., 551 A.2d 45 | 307A+36.1 | The amount of information which will be reasonable and necessary to value shares of stock will be determined by facts about the corporation itself. A stock holding in a large publicly traded corporation may not require any disclosure of books and records as the litigants may use the market price as a gauge of value. When there is no external source of information as in small, family-owned or closely-held corporations, much of the information needed to determine value of a stock holding must come from the corporation. | Amount of information which will be reasonable and necessary to value shares of stock and which may be ordered is to be determined by facts and circumstances about corporation itself. 8 Del.C. S 220. | Is the amount of information which will be reasonable and necessary to value shares of stock will be determined by facts about a corporation itself? | Pretrial Procedure - Memo # 4824 - C - BP.docx | ROSS-003291775-ROSS-003291776 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10454 | Yeboah v. Gaines Serv. Leasing, 250 A.D.2d 453 | 307A+36.1 | t is settled that "a defendant who has served a notice of appearance is entitled to notice of the assessment, to appear and cross-examine the plaintiff's witnesses, and to offer testimony upon the question of damages" (McClelland v. Climax Hosiery Mills, 252 N.Y. 347, 351, 169 N.E. 605). Similarly, CPLR 3215 has been construed to afford to a defendant with "five days' notice of the application (subd. [f] ), as well as a full opportunity to cross-examine witnesses, give testimony and offer proof in mitigation of damages" (Reynolds Sec. v. Underwriters Bank and Trust Co., 44 N.Y.2d 568, 572, 406 N.Y.S.2d 743, 378 N.E.2d 106). However, if the brief notice period of the statute leaves any doubt (see, Ayala v. Boss, 120 Misc.2d 430, 466 N.Y.S.2d 128), the Reynolds decision makes it clear that the pursuit of discovery on the question of damages is exclusively the prerogative of the plaintiff because, "as a result of his default, the defendant has now forfeited his right to take the plaintiff's deposition" (supra, at 573, 406 N.Y.S.2d 743, 378 N.E.2d 106). Therefore, it is error to permit a defaulting defendant to conduct discovery of the plaintiff in preparation for an appearance at inquest. | It is error to permit a defaulting defendant to conduct discovery of the plaintiff in preparation for an appearance at inquest. McKinney's CPLR 3215. | Is it error to permit a defaulting defendant to conduct discovery of the plaintiff in preparation for an appearance at inquest? | 031631.docx | LEGALEASE-00138454-LEGALEASE-00138455 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 10455 | Nixon v. Harris, 31 Ill. App. 3d 204 | 307A+716 | Defendant places considerable significance on the fact that defense counsel was engaged in another trial on October 30, 1970. Although, for the reasons earlier stated, defendant was not entitled to a later date continuance as a matter of right, defense counsel's engagement elsewhere was a circumstance to be considered in connection with the motion to vacate. In determining the propriety of a continuance due to counsel's absence, an important, if not determinative, factor is the degree of due diligence exercised by the party seeking the continuance. (Adcock v. Adcock, 339 Ill.App. 543, 91 N.E.2d 99.) For continuances which are sought merely to delay the administration of justice are not countenanced by the law. We are all vividly aware of the number and backlog of cases which confront the circuit court each year and the consumption of court time when cases are sought to be continued on the date set for trial. (See Gray v. Gray, 6 Ill.App.2d 571, 128 N.E.2d 602.) As reiterated in Davies v. Infragnia, 54 Ill.App.2d 299, 305, 203 N.E.2d 725, 728:Litigants and their attorneys owe a duty to the court to be ready to proceed with trials in their cases when reached on the trial calendar. That is particularly true today with the great number of pending cases and because of the efforts being made, both by the assignment judge and trial judges, to cut down the backlog of pending cases. | In determining propriety of continuance due to counsel's absence, important if not determinative factor was degree of due diligence exercised by party seeking continuance. Supreme Court Rules, rules 231, 231(f), S.H.A. ch. 110A, SS 231, 231(f); S.H.A. ch. 110, S 59. | What is an important factor in determining the propriety of a continuance due to counsel's actions? | 031657.docx | LEGALEASE-00138728-LEGALEASE-00138729 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 10456 | Henderson v. Williams, 57 S.C. 1 | 307A+74 | As to exceptions relating to the admission of testimony: The first, second, and fifth exceptions relate to certain depositions used in the case. Three objections were interposed: (1) That the names of the witnesses were not placed on the envelope containing the depositions; (2) that the notice of taking such testimony was insufficient in not stating that the testimony was to be taken de bene esse, under the statute; (3) that the certificate of the officer taking the depositions was defective, in not stating the reason why the testimony was so taken. As to the first objection, while there may be some reason, as a matter of practice and convenience, for stating the names of the witnesses on the outside of the envelope containing the depositions, the statute does not expressly so require, and the depositions ought not to be rejected on that ground. | Placing of the names of the witnesses on envelopes containing depositions is a matter of practice and convenience only, and failure to do so did not affect the admissibility of the depositions. | Is placing of the names of the witnesses on envelopes containing depositions a matter of practice and convenience only or does the failure to do so affect the admissibility of the depositions? | 031817.docx | LEGALEASE-00138513-LEGALEASE-00138514 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 10457 | StreetScenes v. ITC Entm't Grp., 103 Cal. App. 4th 233 | 307A+36.1 | When that second phase was ready to begin, ITC suddenly reversed its direction, arguing it was not ITC's burden (1) to prove its net worth or (2) to authenticate the documents. As to the first reason, it may not be a defendant's burden to prove its net worth, but if it is ordered to produce that evidence it is under an obligation to do so. (Civ.Code, " 3295, subd. (c).) Once the court makes the order there is no justification for not specifically following that order. (See People v. Glass (1975) 44 Cal.App.3d 772, 781"782, 118 Cal.Rptr. 797.) If counsel has problems with the court's orders, he or she may seek a pretrial writ or argue the validity of that ruling on appeal. (Mike Davidov Co. v. Issod, supra, 78 Cal.App.4th 597, 609, 92 Cal.Rptr.2d 897.) Here, there was no error in ordering ITC to bring evidence of its financial condition to court. | Though it may not be a defendant's burden to prove its net worth following a determination of liability for punitive damages, if it is ordered to produce that evidence it is under an obligation to do so. West's Ann.Cal.Civ.Code S 3295(c). | "Though it cannot be a defendant's burden to prove its net worth, if it is ordered to produce that evidence, is it under an obligation to do so?" | Pretrial Procedure - Memo # 5057 - C - CK.docx | ROSS-003331585-ROSS-003331586 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 10458 | Chambarry v. Mount Sinai Hosp., 161 Misc. 2d 1000 | 307A+36.1 | Item number 6 requests all documents related to other cases or allegations of HIV-infected blood transfused at Mount Sinai between 1981 and the present. According to defendant, this request is overbroad, irrelevant and non-discoverable. To the contrary, a plaintiff is entitled to disclosure of information regarding incidents giving rise to claims similar to his or her own. (Manning v. Pathmark, Inc., 191 A.D.2d 319, 595 N.Y.S.2d 45 [1st Dept.1993]; Alexson Mechanical Contracting, Inc. v. Honeywell, Inc., 101 A.D.2d 796, 797, 475 N.Y.S.2d 452 [2nd Dept.1984] ). However, any such documents must be redacted by the hospital to excise the names and addresses of particular patients in order to prevent any breach of its duty of confidentiality in accordance with the Public Health Law and the concerns addressed by the court in Roth v. New York Blood Center, supra. | Plaintiff is entitled to disclosure of information regarding incidents giving rise to claims similar to his or her own. | Is a plaintiff entitled to disclosure of information regarding incidents giving rise to claims similar to his or her own? | Pretrial Procedure - Memo # 5071 - C - SN.docx | ROSS-003291264-ROSS-003291265 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10459 | State ex rel. Newman v. O'Malley, 54 S.W.3d 695 | 307A+36.1 | We concur with the reasoning of Kubatzky that a party claiming punitive damages is entitled to reasonable discovery of the opposing party's financial status. We also agree that that discovery cannot be forestalled until the requesting party has made a submissible case at trial. To adopt a contrary approach would deprive the requesting party a meaningful attempt to review that information and investigate its veracity. | A party claiming punitive damages is entitled to reasonable discovery of the opposing party's financial status. | Is a party claiming punitive damages entitled to reasonable discovery of the opposing party's financial status? | Pretrial Procedure - Memo # 5101 - C - CK.docx | ROSS-003291196-ROSS-003291197 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10460 | Colton v. Rupert, 60 Mich. 318 | 307A+74 | The objections were properly overruled. The law does not require the copy of the notice to be served by an officer, or by the defendant or his attorney, nor does it require the copy to be verified. The notice served was signed by the attorney for the defendant, and proof was made that a true copy of the notice was served upon the attorney for the plaintiff in the cause. The certificate attached to the depositions purported to be the certificate of Robert B. Foote, clerk of Erie county, New York, and of the courts thereof being courts of record. It was in due form and substance, and was signed by J.E. Ewell, deputy-clerk, and was under the seal of the court. In effect, it was the certificate of Robert B. Foote, clerk, by J.E. Ewell, deputy-clerk. We think it was a sufficient authentication under the statute. | A certificate purporting to be that of the clerk of the county in which a deposition is taken, and of the courts thereof under the seal of the court, but signed "J. E. W., Deputy Clerk," is in effect the certificate of the clerk by such deputy and is a sufficient authentication under How.Ann.St. S 7475. | Is a certificate purporting to be that of the clerk of the county in which a deposition is taken in effect the certificate of the clerk by such deputy? | 032379.docx | LEGALEASE-00138884-LEGALEASE-00138885 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 10461 | Carbide & Carbon Chemicals Corp. v. Cook, 304 Ky. 63 | 307A+202 | Section 585 of the Civil Code of Practice follows: "No deposition shall be read on a trial, unless, before the commencement thereof, it be filed with the papers of the case." This provision of the Code has been followed strictly. Ohio Valley Mills v. Louisville R. Co., 168 Ky. 758, 182 S.W. 955; City of Louisville v. Laufer, 140 Ky. 457, 131 S.W. 192. It is significant also that it was the appellee and not the Corporation who filed it. Certainly the Corporation could not have filed it, and we know of no rule whereby one whose deposition has been so taken could require its filing in violation of section 585 of the Civil Code of Practice. | The provision of Civil Code of Practice prohibiting reading of a deposition on trial unless filed with papers of case before commencement of trial must be strictly followed. Civ.Code Prac. S 585. | "Shall depositions not be read on a trial, unless filed with the papers in the suit before its commencement?" | Pretrial Procedure - Memo # 5354 - C - SS.docx | ROSS-003302757-ROSS-003302759 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 10462 | In re Mountain Glacier LLC, 564 B.R. 314 | 308+163(1) | The Arbitration Claim is not barred by ratification. "Ratification" is defined in Black's Law Dictionary as, among other things, "A person's binding adoption of an act already completed but either not done in a way that originally produced a legal obligation, or done by a third party having at the time no authority to act as the person's agent." Ratification, Black's Law Dictionary (10th ed. 2014). This theory does not make sense under these facts since no prior actions have been alleged to have been taken by the Debtor to bar the Arbitration Claim for which the Plan would ratify. | "Ratification" is a person's binding adoption of an act already completed but either not done in a way that originally produced a legal obligation, or done by third party having at the time no authority to act as the person's agent. | What does the term Ratification encompasses? | 041353.docx | LEGALEASE-00138566-LEGALEASE-00138567 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 10463 | Zeese v. Siegel's Estate, 534 P.2d 85 | 308+175(1) | If there were confusion as to the authority of Eva Siegel to act in behalf of the defendant, her exercise of the option was ratified, by the acts and conduct of the defendant, the principal. Even if Eva's act were deemed unauthorized, plaintiffs right to withdraw from the transaction was only prior to the time that it was ratified by the principal, thereafter, they were bound. Ratification relates back to the time when the unauthorized act was done; and although the act may have done without any precedent authority, ratification creates the relation of principal and agent. Eva exercised the option in June, 1969; plaintiffs did not challenge the validity of her act until June 1973; during the interim, the acts and the conduct of plaintiffs indicated an acceptance of the notice as an effective exercise of this contract right. For a period of four years plaintiffs dealt with defendant as the lessee, they are estopped by this conduct to take the inconsistent position that defendant did not have a leasehold interest. | Ratification relates back to time when unauthorized act was done and though act may have been done without any precedent authority, ratification creates relation of principal and agent. | Does ratification of an act relate back to the time the unauthorized act had occurred? | 041358.docx | LEGALEASE-00138594-LEGALEASE-00138595 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 10464 | Caughman v. Columbia Y.M.C.A., 212 S.C. 337 | 413+2 | Having stated the foregoing general rules of construction, we now turn to the purpose sought to be accomplished by this legislation. It was stated in Marchbanks v. Duke Power Co. et al., 190 S.C. 336, 2 S.E.2d 825, 836, that workmen's compensation acts "are in derogation of, or departures from, the common law, and are not amendatory, cumulative or supplemental thereto, nor declaratory thereof, but wholly substitutional in character." In Tedars et al. v. Savannah River Veneer Co. et al., 202 S.C. 363, 25 S.E.2d 235, 243, 147 A.L.R. 914, the Court said: "To great extent the whole scheme of workmen's compensation is to place the economic burden of industrial accidents upon industry rather than upon the workers and their dependents, and as to the latter thereby rendered indigent, upon the State." It was said in Cokeley et al. v. Robert Lee, Inc., 197 S.C. 157, 14 S.E.2d 889, 893, that compensation laws "were enacted primarily for the benefit, protection and welfare of working men and their dependents, to relieve them of the uncertainties of a trial in a suit for damages, to cast upon the industry in which they are employed a share of the burden resulting from industrial accidents, and to prevent the burden of injured employees and their dependents becoming charges on society." These statements of the purposes of compensation acts are largely in accord with those given in other jurisdictions. See 71 C.J., Workmen's Compensation Acts, Section 15. | Workmen's Compensation Acts are in derogation of, or departures from, the common law, and are not amendatory, cumulative or supplemental thereto, nor declaratory thereof, but wholly substitutional in character. | Is it true that workers compensation statutes are in derogation of common law? | Workers' Compensation Memo #284 ANC.docx | ROSS-003291824-ROSS-003291825 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10465 | Tracy v. Jefferson Par. Through Dep't of Pub. Works, 523 So. 2d 266 | 388+62(1) | The trial judge has discretion in conducting a trial. He is required to do so in an orderly, expeditious manner and to control the proceedings so that justice is done. LSA"C.C.P. art. 1631. His discretion includes the order of presentation of witnesses, LSA"C.C.P. art. 1632, as well as the admissibility of a witness' testimony whether that witness is brought in rebuttal or one that was not listed on the pre-trial order. LSA"C.C.P. art. 1551; see: O'Bannon v. Azar, 435 So.2d 1144 (La.App. 4 Cir.1983); Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5 Cir.1983). Further, rebuttal witnesses are not required to be listed on the pre-trial order. Brown v. Hawkins, 244 So.2d 896 (La.App. 1 Cir.1971), writ denied 258 La. 572, 247 So.2d 393 (1971). | Trial court's discretion in conducting trial includes the order of presentation of witnesses as well as the admissibility of witness' testimony, whether the witness is brought in rebuttal or as one not listed on the pretrial order. LSA-C.C.P. arts. 1551, 1631, 1632. | Are rebuttal witnesses required to be listed on the pre-trial order? | Pretrial Procedure - Memo # 1356 - C - TJ.docx | ROSS-003288572-ROSS-003288573 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10466 | Shankle v. Shankle, 289 N.C. 473 | 307A+725 | Further, before ruling on a motion to continue the judge should hear the evidence pro and con, consider it judicially and then rule with a view to promoting substantial justice. The rule has been well stated as follows:"In passing on the motion the trial court must pass on the grounds urged in support of it, and also on the question whether the moving party has acted with diligence and in good faith. In reaching its conclusion the court should consider all the facts in evidence, and not act on its own mental impression or facts outside the record, although . . . it may take into consideration facts within its judicial knowledge. . . . The motion should be granted where nothing in the record controverts a sufficient showing made by the moving party, but since motions for continuance are generally addressed to the sound discretion of the trial court . . . a denial of the motion is not an abuse of discretion where the evidence introduced on the motion for a continuance is conflicting or insufficient. . . . The chief consideration to be weighed in passing upon the application is whether the grant or denial of a continuance will be in furtherance of substantial justice." Id. s 97. | Before ruling on motion to continue, judge should hear evidence pro and con, consider it judicially and then rule with a view to promoting substantial justice. Rules of Civil Procedure, rule 40(b), G.S. S 1A-1. | Should a judge find out whether moving party has acted with diligence and in good faith and then rule with a view to promoting substantial justice? | 031554.docx | LEGALEASE-00139197-LEGALEASE-00139198 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10467 | Donelson v. Fritz, 70 P.3d 539 | 307A+36.1 | The right of parties to discover such evidence, while broad, is not unlimited. The need for discovery must be balanced against the right of the party from whom discovery is sought to privacy and protection from harassment. Silva v. Basin Western, Inc., 47 P.3d 1184 (Colo.2002); see also C.R.C.P. 45(b) (upon timely motion, court may quash or modify subpoena for production of documentary evidence if it is unreasonable and oppressive); Leidholt v. District Court, 619 P.2d 768 (Colo.1980). | The right of parties to discover evidence of bias or prejudice in a witness, while broad, is not unlimited; the need for discovery must be balanced against the right of the party from whom discovery is sought to privacy and protection from harassment. Rules Civ.Proc., Rule 45(b). | "Is the right of parties to discover evidence, while broad, unlimited?" | Pretrial Procedure - Memo # 5003 - C - CK.docx | ROSS-003302171 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 10468 | Herbster v. N. Am. Co. for Life & Health Ins., 150 Ill. App. 3d 21 | 46H+432 | Moreover, because of the confidential nature of the relationship, a client has exclusive control over the subject matter of the litigation and may dismiss or settle a cause of action regardless of the attorney's advice (7 Am.Jur.2d Attorneys at Law sec. 179 (1980)) or objections (7 Am.Jur.2d Attorneys at Law sec. 181 (1980)). The litigant, despite a contingent fee contract and the service of an attorney's lien, can dismiss his lawsuit at will, and the attorney has no cause of action absent proof of settlement. A lawyer can not compel continuation of litigation to protect his lien rights which are inferior to the client's right to dismiss his action. (Marcus v. Wilson (1973), 16 Ill.App.3d 724, 732, 306 N.E.2d 554; Anastos v. O'Brien (1972), 3 Ill.App.3d 1015, 1021, 279 N.E.2d 759.) A client has the right to compromise his cause in order to avoid the anxiety resulting from it. If a lawyer attempts to draw a contract whereby the client is prevented from settling or continuing his own suit, the contract is void. Cameron v. Boeger (1902), 200 Ill. 84, 92, 65 N.E. 690. | Because of confidential nature of attorney-client relationship, client has exclusive control over subject matter of litigation and may dismiss or settle cause of action regardless of attorney's advice; client, despite contingent fee contract and service of attorney's lien, can dismiss his lawsuit at will, and attorney has no cause of action absent proof of settlement. | "Does a client have a right to dismiss his suit at will, even if he had a contingent-fee agreement with his lawyer and the lawyer had served notice of his attorney's lien?" | 032227.docx | LEGALEASE-00139077-LEGALEASE-00139078 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 10469 | Lewis C. Nelson & Sons v. Lynx Iron Corp., 174 Cal. App. 4th 67 | 307A+501 | The question of whether a plaintiff's voluntarily dismissal is timely under section 581 depends upon"and must remain tethered to"a reasonable construction and application of the statutory term "commencement of trial." (Franklin, supra, 148 Cal.App.4th at p. 207, 55 Cal.Rptr.3d 424 ["any consideration of when the statutory right to voluntary dismissal terminates must be rationally connected to the statutory phrase "commencement of trial" "].) Hence, a plaintiff's subjective lack of good faith in seeking a dismissal does not, by itself, terminate the statutory right to dismiss. (Ibid.; see also Gogri v. Jack in the Box, Inc., supra, 166 Cal.App.4th at p. 265, fn. 8, 82 Cal.Rptr.3d 629 [the timeliness of a section 581 dismissal is based on an "objective, not a subjective, standard"].) | A plaintiff's subjective lack of good faith in seeking a dismissal does not, by itself, terminate the statutory right to dismiss. West's Ann.Cal.C.C.P. S 581. | Does plaintiff's subjective lack of good faith in seeking a dismissal terminate the statutory right to dismiss? | Pretrial Procedure - Memo # 5501 - C - SB.docx | ROSS-003302807-ROSS-003302808 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 10470 | Slowke v. Altermatt, 293 Mich. 360 | 307A+501 | Because there has been a material change in Court Rule No. 38 since our decision in Pear v. Graham, 258 Mich. 161, 241 N.W. 865, that case, which was at issue before plaintiff moved to discontinue, is not controlling. The rule as formerly worded is quoted in the opinion in the Pear case; and reference to the old rule discloses that the time within which a plaintiff might discontinue his suit was limited by the phrase "before answer filed". This limitation is not in the revised rule No. 38, 1939. The pertinent limitation in the present rule is that plaintiff may not discontinue "where a defendant shall have entered upon his defense in open court, unless with the consent of the defendant." The clear import of our former decisions is that a defendant has "entered upon his defense in open court by putting in his testimony upon the merits". Mintz v. Soule, 200 Mich. 9, 166 N.W. 491. But this case was clearly decided upon the Court's holding that after a plaintiff had introduced his proofs and rested, and the defendants before offering any testimony made a motion for a directed verdict, they did not by making such motion enter upon their defense. Both in the Mintz case and in Justice Wiest's opinion in Pear v. Graham, supra, the common law right of a plaintiff to dismiss or submit to a voluntary nonsuit is noted. The right still exists except as modified by statute or court rule. At the time plaintiff's motion was made in the instant case his right to a nonsuit was not curtailed by any existing statutory or rule provision. It follows that plaintiff's motion for nonsuit should have been granted. | A plaintiff's common law right to dismiss action or submit to voluntary nonsuit still exists, except as modified by statute or court rule. | Does a common-law right of a plaintiff to submit to nonsuit at any time before verdict still exist? | 039519.docx | LEGALEASE-00139091-LEGALEASE-00139092 | Condensed, Order, SA | 0.91 | 1 | 1 | 0 | 1 | 1 |
| 10471 | Ward v. United States, 133 Fed. Cl. 418 | 34+5(7) | "Although courts afford great deference to the decisions of boards for the correction of military records, that deference is not absolute. Correction boards are obligated to examine relevant data and articulate a satisfactory explanation for their decisions." See Rominger v. United States, 72 Fed.Cl. 268, 273 (2006) (internal citation and quotation marks omitted). "[C]orrection boards are required to make rational connections between the facts found and the choices made." Id. (internal citation and quotation marks omitted). In the event a correction board "fails to support its decision with a reasoned explanation of an important issue, a remand is appropriate." Id. | Military correction boards are required to make rational connections between the facts found and the choices made. | Are the Military correction boards required to make rational connections between the facts found and the choices made? | 008518.docx | LEGALEASE-00139377-LEGALEASE-00139378 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10472 | Martin v. Sec'y of Army, 455 F. Supp. 634 | 34+21.1 | Contrary to plaintiff's contention, the appropriate response to this litany of error is not recharacterization, an award of back pay, or indeed any decision as to the merits of his substantive claim. The regulatory standards for determining when separation is justified and what type of discharge is warranted are broad and undoubtedly informed by military practices and interpretations of which the Court is unfamiliar. Resolution of plaintiff's substantive claims, involving as they do matters of personnel management is, in the first instance, for the military. See generally Knehans v. Alexander, 566 F.2d 312, at 314 (D.C. Cir. 1977); Robinson v. Resor, 152 U.S.App.D.C. 204, 212 n. 22, 469 F.2d 944, 952 n. 22 (1972); Carter v. United States, No. 360-75, slip op. at 5 (Ct.Cl. Mar. 4, 1977). Precedent dictates that the case be remanded to the Secretary of the Army for the entry of findings upon which the Court can base its review. Van Bourg v. Nitze, 128 U.S.App.D.C. 301, 388 F.2d 557 (1967); Olenick v. Brucker, 107 U.S.App.D.C. 5, 6, 273 F.2d 819, 820 (1959); See NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). | Resolution of soldier's substantive claims, involving as they did matters of personnel management, was, in first instance, for military. | "Is the resolution of plaintiff's substantive claims, involving matters of personnel management is, in the first instance, for the military?" | Armed Services - Memo 225 - SB.docx | ROSS-003288707-ROSS-003288708 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 10473 | United States v. Strand, 574 F.2d 993 | 63+1(1) | To be guilty under s 201(c)(3), Strand must have "corruptly" accepted the $800 from the Customs agent for himself or some other person in return for knowingly violating his official duty. The requisite "corrupt" intent has been defined as "incorporating a concept of the bribe being the prime mover or producer of the official act." United States v. Brewster, 165 U.S.App.D.C. 1, 21, 506 F.2d 62, 82 (1974). It is this element of quid pro quo that distinguishes the heightened criminal intent requisite under the bribery sections of the statute from the simple mens rea required for violation of the gratuity sections. See id., 165 U.S.App.D.C. at 11, 506 F.2d at 72; United States v. Alessio, 528 F.2d 1079, 1082 (9th Cir.), cert. denied, 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976). | Under bribery sections of statute, heightened criminal intent, i. e., "corrupt" intent, was required, as opposed to simple mens rea required for violation of the gratuity sections of the statute. 18 U.S.C.A. S 201(c)(3). | "Under bribery sections of statute, what heightened criminal intent is required to prove a case of bribery?" | Bribery - Memo #622 - C-JL.docx | ROSS-003290900-ROSS-003290902 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 10474 | In re 2111 Associates-Chicago, 580 F.2d 705 | 289+530 | We are confused as to how and why the bankruptcy court applied Case v. Beauregard under the facts as hereto stated. There is clearly no suggestion that Womack even transferred his interest to Carlton, much less for a valuable consideration. The same is true as to Lanahan. As stated in In re Jercyn Dress Shop, supra, n. 5, "(a)ny conversion of partnership property into property of an individual partner, for example, must have been Bona fide, and without intent to hinder, delay, or defraud creditors." | Any conversion of partnership property into property of an individual partner must be bona fide and without intent to hinder, delay, or defraud creditors. | Can a partnership property be converted into property of an individual partner by a transfer as long as it is bona fide in nature? | 022308.docx | LEGALEASE-00139546-LEGALEASE-00139548 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 10475 | Booth v. Attorneys' Title Guaranty Fund, 20 P.3d 319 | 289+457 | MTLP's articles for limited partnership provide that "[t]he Partnership shall not be dissolved by the death, withdrawal, bankruptcy, or adjudication of insanity or incompetency of an individual General Partner." Partners may make any agreement between themselves so long as it is not in violation of public policy or the common law, and their agreement generally controls as to matters between them. See 59A Am.Jur.2d Partnership " 1279, at 875 (1987); see also, e.g., Knutson v. Lauer, 627 P.2d 66, 68 (Utah 1981) (holding that general rule concerning remuneration applies unless partnership agreement or any other agreement between partners provides otherwise); Jackson v. Caldwell, 18 Utah 2d 81, 85, 415 P.2d 667, 670 (1966) (holding that general rule concerning good will applies unless parties have provided otherwise in partnership agreement). Therefore, Rose's bankruptcy did not cause the dissolution of MTLP, and the statutes Booth and Tevini relied on are inapplicable. | Partners may make any agreement between themselves so long as it is not in violation of public policy or the common law, and their agreement generally controls as to matters between them. | Can partners make an agreement between themselves regarding partnership as long as it does not violate public policy? | 022332.docx | LEGALEASE-00139622-LEGALEASE-00139623 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10476 | Doe v. Bd. of Regents of Univ. of Nebraska, 280 Neb. 492 | 307A+554 | The defendants contend that the court's conclusion that the State's sovereign immunity barred some of Doe's claims meant that the court lacked subject matter jurisdiction for those claims. But we have interpreted exceptions to the State's waiver of immunity under both the State Tort Claims Act and the Political Subdivisions Tort Claims Act as affirmative defenses that the State must plead and prove. The U.S. Supreme Court has not decided whether 11th Amendment immunity is a jurisdictional issue. But under its current view, states can waive 11th Amendment immunity, and, following the Court's lead in some cases, federal courts often decide the merits of a claim without addressing sovereign immunity. So we conclude that a trial court may properly address a claim of sovereign immunity under a 12(b)(6) motion. We next determine whether the record shows sufficient process and service before considering whether Doe stated claims for which a court could grant relief. The defendants do not dispute that Doe perfected service on the Board, UNMC, and the UNMC faculty members in their official capacities. But they contend that Doe did not perfect service on the UNMC faculty members in their individual capacities. | A trial court may properly address a claim of sovereign immunity under a motion to dismiss for failure to state a claim. Neb. Ct. R. Pldg. S 6-1112(b)(6). | Can a trial court properly address a claim of sovereign immunity under a motion to dismiss for failure to state a claim? | Pretrial Procedure - Memo # 5554 - C - PB.docx | ROSS-003302830-ROSS-003302831 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 10477 | Shatswell v. Shatswell, 758 F. Supp. 662 | 34+34.2(1) | Upon the court's own motion, this case shall be dismissed. The provisions of the Soldiers and Sailors Relief Act may be applied by federal and state courts. 50 U.S.C.App. " 512(1). But, the Act does not empower this court to collaterally review, vacate or impede the decisions of a state court. See Scheidegg v. Department of Air Force, 715 F.Supp. 11, 13"14 (D.N.H.1989); Sarfaty v. Sarfaty, 534 F.Supp. 701, 704 n. 4 (E.D.Pa.1982); Davidson v. General Finance Corp., 295 F.Supp. 878, 882 (N.D.Ga.1968); Runge v. Fleming, 181 F.Supp. 224 (N.D.Iowa 1960); Radding v. Ninth Federal Savings & Loan Ass'n, 55 F.Supp. 361 (S.D.N.Y.1944). Judgments made in violation of the Act are subject to attack only in the courts which rendered the judgments. See 50 U.S.C.App. " 520(4). | Provisions of Soldiers' and Sailors' Civil Relief Act may be applied by federal and state courts. Soldiers' and Sailors' Civil Relief Act of 1940, S 102(1), 50 U.S.C.A.App. S 512(1). | Can the provisions of Soldiers and Sailors Civil Relief Act be applied by federal and state courts? | Armed Services - Memo 197 - SNJ.docx | ROSS-003287088-ROSS-003287089 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10478 | Talbot v. United States, 40 Fed. Cl. 801 | 393+996 | The United States enjoys immunity from suit unless Congress expressly provides otherwise. See Brown v. United States, 30 Fed.Cl. 227, 229 (1993), aff'd, 26 F.3d 139 (Fed.Cir.1994). "When Congress authorizes suit against the United States, the terms of the statute waiving sovereign immunity define the extent of the court's jurisdiction and must be strictly construed." Brown, 30 Fed.Cl. at 229; see Block v. North Dakota ex rel. Board of Univ. & Sch. Lands, 461 U.S. 273, 287, 103 S.Ct. 1811, 1819"20, 75 L.Ed.2d 840 (1983). The Tucker Act, 28 U.S.C. " 1491, serves as the general congressional consent to suit in this court. See Aetna Cas. & Sur. Co. v. United States, 228 Ct.Cl. 146, 655 F.2d 1047, 1051 (1981); Brown, 30 Fed.Cl. at 229. If a service member's separation was involuntary and improper, the service member's statutory right to pay as a member of a uniformed service was not extinguished and thus can serve as a basis for Tucker Act jurisdiction. See Adkins v. United States, 68 F.3d 1317, 1321 (Fed.Cir.1995); Nickerson v. United States, 35 Fed.Cl. 581, 586 (1996), aff'd, 113 F.3d 1255 (Fed.Cir.1997); West v. United States, 35 Fed.Cl. 226, 230 (1996). If a service member's separation from the military was voluntary, however, the service member retained no statutory entitlement to compensation, and therefore no money-mandating provision would support Tucker Act jurisdiction over the claim. See Adkins, 68 F.3d at 1321; West, 35 Fed.Cl. at 230. To determine whether a separation was voluntary or involuntary, the court must examine all the surrounding facts and circumstances to test the ability of the service member to exercise free choice. See Covington v. Department of Health & Human Servs., 750 F.2d 937, 941"42 (Fed.Cir.1984); Shrader v. United States, 38 Fed.Cl. 788, 798 (1997); McIntyre v. United States, 30 Fed.Cl. 207, 211 (1993). The fact that a service member is faced with inherently unpleasant alternatives does not make the service member's separation | Fact that a service member is faced with inherently unpleasant alternatives does not make the service member's separation involuntary, for purpose of ascertaining whether Tucker Act jurisdiction exists over member's pay claim. 28 U.S.C.A. S 1491. | Does the fact that a service member is faced with inherently unpleasant alternatives make the service member's separation involuntary? | 008558.docx | LEGALEASE-00140045-LEGALEASE-00140046 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 10479 | Diemar & Kirk Co. v. Smart Styles, 261 N.C. 156 | 8.30E+76 | The drawer of a check has the right, at any time prior to acceptance by the bank, to stop its payment. In re Will of Winborne, 231 N.C. 463, 57 S.E.2d 795; First-Citizens Bank & Trust Co. v. Raynor, 243 N.C. 417, 90 S.E.2d 894. However, his revocation of the bank's authority to pay the check does not discharge his liability to the payee or holder. 10 C.J.S. Bills and Notes s 35. The situation becomes the same as if the check had been dishonored and notice thereof given to the drawer. Flynn v. Currie, 130 Me. 461, 157 A. 310; Annot., 14 A.L.R. 562. | Revocation by drawer of check of authority of bank to pay check does not discharge drawer's liability to payee or holder, and situation becomes same as if check had been dishonored and notice thereof given to drawer. | Is the drawer liable to the holder of the check when the drawer has stopped the payment or had the check been dishonored? | 009074.docx | LEGALEASE-00140086-LEGALEASE-00140087 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 10480 | Com. v. Albert, 310 Mass. 811 | 63+3 | One inquiry is whether such a payment made in compliance with the request of the defendant would constitute a request for a gift or gratuity by the defendant within the meaning of the statute. G.L. (Ter.Ed.) c. 268, " 8. Of course, if Simons received the money for the use of the defendant, or if the latter was entitled to a part of it, then the conduct of the defendant would be violative of the statute.The collection of a bribe through an intermediary makes the public officer just as liable under the statute as if he personally received it.Dolan v. Commonwealth, 304 Mass. 325, 339, 23 N.E.2d 904; Commonwealth v. Connolly, 308 Mass. 481, 489, 33 N.E.2d 303. Simons testified that the defendant never requested any part of the commission and that he never made any payment to him on account of the commission. The defendant testified that he never knew until the first trial that any commission had been paid to Simons. There is no direct evidence that the defendant had any proprietary or pecuniary interest in the commission. The circumstances are suspicious and call for careful scrutiny. We are concerned not with the weight of the evidence, but as to whether there is any evidence, including the permissible inferences from the established facts, that will sustain a finding that the defendant has been shown beyond reasonable doubt to have had such an interest in the commission. A careful examination of the record discloses nothing more than speculation, conjecture or surmise upon which such a finding could be based. This is insufficient to sustain the burden resting upon the Commonwealth. Commonwealth v. Merrill, 14 Gray 415, 77 Am.Dec. 336; Commonwealth v. Stone, 300 Mass. 160, 14 N.E.2d 158; Commonwealth v. O'Brien, 305 Mass. 393, 26 N.E.2d 235; Commonwealth v. Carter, 306 Mass. 141, 27 N.E.2d 690. | The collection of a bribe through an intermediary makes the public officer just as liable under statute as if he personally received it. G.L.(Ter.Ed.) c. 268, S 8 (M.G.L.A.). | Does the collection of a bribe through an intermediary makes the public officer as liable under the statute as if he personally receives it? | 012089.docx | LEGALEASE-00140694-LEGALEASE-00140695 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 10481 | Word of Faith World Outreach Ctr. Church v. Oechsner, 669 S.W.2d 364 | 119+53 | When a road or street is dedicated to the public, the governmental entity exercising jurisdiction over the street ordinarily acquires only an easement in the street. Pittman v. City of Amarillo, 598 S.W.2d 941, 944 (Tex.Civ.App."Amarillo 1980, writ ref'd n.r.e.); Humble Oil and Refining Co. v. Blankenburg, 149 Tex. 498, 235 S.W.2d 891, 893 (1951). Unless the dedication states otherwise, the abutting landowner owns the fee simple title to the center of the street subject to the public easement. City of Fort Worth v. Southwest Magazine, 358 S.W.2d 139, 141 (Tex.Civ.App."Fort Worth 1962, writ ref'd n.r.e.), cert. denied, 372 U.S. 914, 83 S.Ct. 730, 9 L.Ed.2d 722 (1963). The promoter of a subdivision therefore owns the fee in the highway only so long as he owns the lots abutting thereon. Riley v. Davidson, 196 S.W.2d 557, 560 (Tex.Civ.App."Galveston 1946, writ ref'd n.r.e.). Once lots that abut the public highway or street are sold, the general rule in Texas is that such a conveyance carries with it the fee to the center of the road, unless the inference that it was so intended is rebutted by the express terms of the grant. Cox v. Campbell, 135 Tex. 428, 143 S.W.2d 361 (1940). While Oechsner concedes that this is the general rule in Texas, he argues that the facts of this case fall within an exception to the general rule as found in Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912 (1940). | When a road or street is dedicated to the public, the governmental entity exercising jurisdiction over the street ordinarily acquires only an easement in the street. | "When a street is dedicated to the public, does a governmental entity exercising jurisdiction over the street acquires only easement in the street?" | Highways -Memo 159 - DB.docx | ROSS-003304525-ROSS-003304526 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10482 | Com. v. Funk, 323 Pa. 390 | 48A+5(1) | It must be treated as elementary law that public roads are laid out and opened for the use of all persons on equal terms; that is, to all who comply with the reasonable regulations of the duly constituted authorities. The right to use a public highway for travel or in the transportation of merchandise is not unrestricted.Com. v. Dennison, 48 Pa.Super. 293. It is for the commonwealth, acting through the Legislature, to direct the conditions under which this limited right shall be exercised. City of Allegheny v. Zimmerman, 95 Pa. 287, 40 Am.Rep. 649; Com. v. Doughty, 55 Pa.Super. 88. It alone has the power to regulate the manner and circumstances under which automobiles may be operated upon the highways of the commonwealth. This power is vested in the Legislature, and is based, not only upon its right to control and regulate the use of the highways, but is buttressed by the inherent police power of the state. | Legislature, in exercise of right to regulate use of highways and of inherent police power of state alone, has power to regulate circumstances under which automobiles may be operated upon highways of commonwealth. | Who has the right to prescribe on what may be operated in a highway? | 019027.docx | LEGALEASE-00140212-LEGALEASE-00140213 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 10483 | In re Whittington, 530 B.R. 360 | 289+548 | Under Texas law, Whittington's duty to disclose encompassed all material facts concerning the Challenged Transactions. "[P]artners owe each other a duty to make full disclosure of all material facts within their knowledge relating to partnership affairs." Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex.1997) (citing Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786, 787"88 (1938)); see also Montgomery v. Kennedy, 669 S.W.2d 309, 313 (Tex.1984) (articulating this principle); Willis v. Maverick, 760 S.W.2d 642, 645 (Tex.1988) (applying principle in attorney-client context); Dernick Res., Inc. v. Wilstein, 312 S.W.3d 864, 877 (Tex.App.-Houston [1st Dist.] 2009, no pet.) ("A fiduciary relationship imposes a duty on the fiduciary to render full and fair disclosure of facts material to the relationship giving rise to the duty."). | Under Texas law, partners owe each other a duty to make full disclosure of all material facts within their knowledge relating to partnership affairs. | Does a partner have the right to disclose all material facts within his knowledge relating to partnership affairs? | 022287.docx | LEGALEASE-00140155-LEGALEASE-00140156 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10484 | Bd. of Trustees of Policemen's & Firemen's Ret. Fund v. Cardwell, 400 So. 2d 402 | 316P+381 | Although the trial court's order which would allow the pension benefits to continue to be paid to these children throughout most of their minority has a certain appeal, that order supplies a requirement which the legislature did not include. As we stated earlier, the right to a pension is purely statutory, Cox v. Dunn, supra. For that reason the courts of this state do not have the power to grant benefits to classes of people not included by the legislature, but merely to determine whether it was constitutional for the legislature to exclude them. Since we have determined that the section in question was constitutional, the order of the trial court which found that section to be unconstitutional must be, and is hereby, reversed and remanded. | Since right to pension is purely statutory, courts do not have power to grant benefits to classes of people not included as beneficiaries by legislature, but merely to determine whether it was constitutional for legislature to exclude them. | Is a right to a pension statutory? | 022804.docx | LEGALEASE-00140572-LEGALEASE-00140573 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 10485 | Dolman v. Saltzman, 100 R.I. 327 | 307A+725 | In that case on the third day of trial a motion was made to pass the case. The motion was granted immediately, but subsequently a formal order was entered by the court which included the award of a counsel fee. We held there that the court had exceeded its authority in awarding a counsel fee under the circumstances, stating that conditions imposed on the grant of a continuance "to be valid and binding, must be made by the trial justice at the time the motion for such a continuance is granted, and cannot be made thereafter." The rule as thus stated rests upon obviously sound reason, that is, that a decision of the court when made in an exercise of its authority, even interlocutory in nature, should have some finality to the end that the administration of justice should be conducted in a rational and orderly manner. | Conditions imposed on grant of continuance must be made by trial justice at time motion for continuance is granted, and cannot be made thereafter. | Should conditions imposed on grant of continuance be made by trial justice at time motion for continuance is granted? | Pretrial Procedure - Memo # 4672 - C - SU.docx | ROSS-003302153-ROSS-003302154 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10486 | Eisenmeyer v. Sauter, 77 Ill. 515 | 307A+74 | A deposition taken before a master in chancery, and reported by him, but not signed by the witness, should, on motion, be stricken from the record. This was a bill in equity, by John Sauter against Andrew J. Eisenmeyer, to correct a mistake in the award of arbitrators. The opinion of the court states the facts of the case. The deposition of one of the arbitrators, taken before the master and reported by him, was not signed by the witness. The court below reformed the award, and decreed payment of the sum found to be due the complainant on the same as corrected, from which decree the defendant appealed. | A deposition taken before a master in chancery, and reported by him, but not signed by the witness, should, on motion, be stricken from the record. | "Should a deposition taken before a master in chancery, and reported by him, but not signed by the witness, upon motion be stricken from the record?" | Pretrial Procedure - Memo # 5285 - C - TM.docx | ROSS-003288774-ROSS-003288775 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 10487 | Conboy v. State, 292 Conn. 642 | 106+39 | Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. Gordon v. H.N.S. Management Co., 272 Conn. 81, 92, 861 A.2d 1160 (2004) ("[w]hen issues of fact are necessary to the determination of a court's jurisdiction ... due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross examine adverse witnesses" [internal quotation marks omitted] ); Schaghticoke Tribal Nation v. Harrison, 264 Conn. 829, 833, 826 A.2d 1102 (2003) (same). Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. Lampasona v. Jacobs, 209 Conn. 724, 728, 553 A.2d 175 ("[i]n some cases ... it is necessary to examine the facts of the case to determine whether it is within a general class that the court has power to hear"), cert. denied, 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 590 (1989). An evidentiary hearing is necessary because "a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." Coughlin v. Waterbury, 61 Conn.App. 310, 315, 763 A.2d 1058 (2001). | If the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. | "If the question of jurisdiction is intertwined with the merits of the case, can a court resolve the jurisdictional question on a motion to dismiss for lack of subject matter jurisdiction without a hearing to evaluate those merits?" | 032753.docx | LEGALEASE-00139739-LEGALEASE-00139740 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10488 | Ex parte Gregory, 947 So. 2d 385 | 307A+36.1 | In the earlier case of Ex parte Troncalli Chrysler Plymouth Dodge, Inc., supra, the Court concluded that a plaintiff, upon a sufficient showing, might be entitled to discovery in an attempt to prove that a defendant resisting personal jurisdiction was subject to it." " "It is well established that a court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction." " Andersen v. Sportmart, Inc., 179 F.R.D. 236, 241 (N.D.Ind.1998) (quoting Ellis v. Fortune Seas, Ltd., 175 F.R.D. 308, 311 (S.D.Ind.1997)). "However, it is also well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case." Id. "[T]o be permitted jurisdictional discovery, plaintiff must at least allege facts that would support a colorable claim of jurisdiction." Schenck v. Walt Disney Co., 742 F.Supp. 838, 840 n. 1 (S.D.N.Y.1990) (emphasis added). See also Ellis v. Fortune Seas, Ltd., 175 F.R.D. 308, 312 (S.D.Ind.1997); Hansen v. Neumueller GmbH, 163 F.R.D. 471, 475 (D.Del.1995); Daval Steel Prods. v. M.V. Juraj Dalmatinac, 718 F.Supp. 159, 162 (S.D.N.Y.1989); Rich v. KIS California, Inc., 121 F.R.D. 254, 259 (M.D.N.C.1988). | A plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case; to be permitted jurisdictional discovery, plaintiff must at least allege facts that would support a colorable claim of jurisdiction. | Does a plaintiff not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case? | 032780.docx | LEGALEASE-00139989-LEGALEASE-00139990 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10489 | Gold v. Rowland, 296 Conn. 186 | 307A+554 | We begin our analysis with the appropriate standard of review. "The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction.... [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. When a ... court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light.... In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.... The motion to dismiss ... admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Citation omitted; internal quotation marks omitted.) Cogswell v. American Transit Ins. Co., 282 Conn. 505, 516, 923 A.2d 638 (2007). "The complaint, to survive the defense of sovereign immunity, must allege sufficient facts to support a finding of a taking of [property] in a constitutional sense...." Horak v. State, 171 Conn. 257, 261, 368 A.2d 155 (1976) | A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. | "Does a motion to dismiss test whether, on the face of the record, the court is without jurisdiction?" | 032850.docx | LEGALEASE-00139937-LEGALEASE-00139938 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 10490 | Mayer v. Biafore, Florek & O'Neill, 245 Conn. 88 | 13+6 | A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. Kleinman v. Marshall, 192 Conn. 479, 484, 472 A.2d 772 (1984). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute ... (2) that the interests of the parties be adverse ... (3) that the matter in controversy be capable of being adjudicated by judicial power ... and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) Pamela B. v. Ment, 244 Conn. 296, 311, 709 A.2d 1089. (1998). | Justiciability requires: (1) that there be an actual controversy between or among the parties to the dispute; (2) that the interests of the parties be adverse; (3) that the matter in controversy be capable of being adjudicated by judicial power; and (4) that the determination of the controversy will result in practical relief to the complainant. | Should a case that is non-justiciable be dismissed for lack of subject matter jurisdiction? | Pretrial Procedure - Memo # 5668 - C - SN.docx | ROSS-003304807-ROSS-003304808 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 10491 | Town of Trumbull v. Palmer, 104 Conn. App. 498 | 307A+531 | "Generally speaking, a nonsuit is the name of a judgment rendered against a party in a legal proceeding upon his inability to maintain his cause in court, or when he is in default in prosecuting his suit or in complying with orders of the court."(Internal quotation marks omitted.) Segretario v. Stewart"Warner Corp., 9 Conn.App. 355, 359, 519 A.2d 76 (1986). "The nonsuit forecloses the plaintiff from further prosecution of the action." Id. | Generally speaking, a nonsuit is the name of a judgment rendered against a party in a legal proceeding upon his inability to maintain his cause in court, or when he is in default in prosecuting his suit or in complying with orders of the court. | What is a nonsuit? | 033269.docx | LEGALEASE-00140704-LEGALEASE-00140705 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 10492 | Audubon Ins. Co. v. Bernard, 434 So. 2d 1072 | 371+2001 | It is well settled generally and in Louisiana that not every imposition of a charge or fee by the government constitutes a demand for money under its power to tax. If the imposition has not for its principal object the raising of revenue, but is merely incidental to the making of rules and regulations to promote public order, individual liberty and general welfare, it is an exercise of the police power. City of Lake Charles v. Wallace, 247 La. 285, 170 So.2d 654 (1965); Ewell v. Board of Supervisors, Etc., 234 La. 419, 100 So.2d 221 (1958); 4 Cooley, The Law of Taxation, " 1784 (4th Ed.1924). In similar fashion, the police power may be exercised to charge fees to persons receiving grants or benefits not shared by other members of society. Southern Pacific Transp. Co. v. Parish of Jefferson, 315 So.2d 619 (La.1975); City of Lake Charles v. Wallace, supra; Louisiana Ry. & Navigation Co. v. Madere, 124 La. 635, 50 So. 609 (1909); Griggsby Constr. Co. v. Freeman, 108 La. 435, 32 So. 399 (1902); Cf. National Cable Television Ass'n, Inc. v. United States, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974); Cooley, supra. But if revenue is the primary purpose for an assessment and regulation is merely incidental, or if the imposition clearly and materially exceeds the cost of regulation or conferring special benefits upon those assessed, the imposition is a tax. Acorn v. City of New Orleans, 407 So.2d 1225 (La.1981); Ewell v. Board of Supervisors, Etc., supra; City of New Orleans v. Heymann, 182 La. 738, 162 So. 582 (1935); State v.Wilson & Co., Inc. of Louisiana, 179 La. 648, 154 So. 636 (1934). | Not every imposition of a charge or fee by government constitutes demand for money under its power to tax. LSA-Const. Art. 3, S 2; Art. 5, S 5(D)(1); Art. 7, SS 1, 2. | Does every imposition of a charge or fee by government constitute a demand for money under its power to tax? | 044867.docx | LEGALEASE-00140241-LEGALEASE-00140242 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 10493 | Crenshaw v. Jackson, 6 Ga. 509 | 352+22(1) | These notes were made payable to bearer, and were transferred, by delivery. Now, it is generally true, that where a promissory note is payable to bearer, and it is transferred by mere delivery, without any indorsement, the person making the transfer ceases to be a party, and is not responsible thereon to the transferee, or any subsequent holder. Story on Prom. Notes, "117. Ib. on Bills, "109 and note. Chitty on Bills, 8 ed. p. 268, 269. | Upon the transfer of a note payable to bearer, by delivery, the transferer ceases to be a party to it, and is not, generally, responsible thereon to the transferee, or any subsequent holder; but if he undertake to guarantee the payment of the note, he will be liable to the transferee on that special contract, and it is a proper matter of set-off. | Does the person making the transfer ceases to be a party when a promissory note payable to bearer is transferred by mere delivery? | Bills and Notes - Memo 172 - PR.docx | ROSS-003290807 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10494 | Thweatt v. Jackson, 838 S.W.2d 725 | 83E+481 | Second, it is axiomatic that an assignee of a promissory note stands in the shoes of the assignor and obtains the rights, title, and interest that the assignor had at the time of the assignment. See Kirby Forest Indus., Inc. v. Dobbs, 743 S.W.2d 348, 354 (Tex.App.1987, writ denied); State Fidelity Mortgage Co. v. Varner, 740 S.W.2d 477, 480 (Tex.App.1987, writ denied); Travelers Indem. Co. v. Snyder Nat'l Bank, 361 S.W.2d 926, 928"29 (Tex.Civ.App.1962, writ ref'd n.r.e.); 6A C.J.S. Assignments "" 73, 88 (1975). Moreover, the assignee of a debt ordinarily obtains all remedies which were available to the assignor against the debtor for the enforcement of the obligation. See J.W.D., Inc. v. Federal Ins. Co., 806 S.W.2d 327, 329 (Tex.App.1991, no writ); 6A C.J.S. Assignments " 89 (1975). | Assignee of promissory notes stands in shoes of assignor and obtains rights, title, and interest that assignor had at time of assignment. | Does an assignee of a promissory note obtain the title as that of the assignor at the time of assignment? | Bills and Notes -Memo 489 -DB.docx | ROSS-003288097-ROSS-003288098 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10495 | Citizens Nat. Bank v. Waltman, 344 So. 2d 725 | 8.30E+274 | At the time of the last renewal, Mrs. Waltman was well aware of the facts constituting the alleged fraud. She knew that the Bank's alleged assurance that her land was needed only as interim security had been proven false. She knew that Mr. Mann's stock, which the Bank allegedly had assured her was valuable, had proven worthless. She knew or was charged with the knowledge that the Bank had used the original loan to pay off earlier debts of Mr. Mann. She knew that the Bank had required her to assume his later debts in the renewal of November 24, 1972. Our law is clear that the execution of a renewal note with full knowledge of the facts constituting a defense to the original note waives that defense as to the renewal. Justice Griffith explained this doctrine in Gay v. First Nat'l Bank, 172 Miss. 681, 686, 160 So. 904, 905 (1935) | Execution of a renewal note with full knowledge of the facts constituting defense to the original note waives such defense as to the renewal. | Does execution of a renewal note with full knowledge of the facts constituting a defense to the original note waive all defenses? | Bills and Notes- Memo 593-IS.docx | ROSS-003288811-ROSS-003288812 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10496 | State v. Pounds, 522 So. 2d 1119 | 63+6(1) | However, in State v. Gainey, 376 So.2d 1240, 1244 (La.1979), the Louisiana Supreme Court stated: "[T]he indictment itself need not set out the detailed facts constituting the violation, since those facts can be given to the defendant by answers to a bill of particulars. If the indictment sufficiently identifies the conduct charged and the statute violated, a motion to quash will not be sustained." Therefore, we conclude that the failure of the bill of information to state that the defendant was a public employee was not a fatal defect. | Failure of bill of information charging defendant with public bribery to state that defendant was a public employee was not a fatal defect. LSA-R.S. 14:118; LSA-C.Cr.P. art. 472. | "In charge of bribery, is the failure of the bill of information to state that the defendant was a public employee a fatal defect?" | 012125.docx | LEGALEASE-00141146-LEGALEASE-00141147 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 10497 | State v. Soukup, 656 N.W.2d 424 | 129+127 | Minnesota law defines disorderly conduct as follows:Whoever does any of the following in a public or private place, including on a school bus, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:(1) Engages in brawling or fighting; or(2) Disturbs an assembly or meeting, not unlawful in its character; or(3) Engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others. Minn.Stat. " 609.72 (2000). The trial court found that appellant violated parenthetical (1), relating to brawling and fighting. To prove disorderly conduct, the state must show that an offender "knew or should have known that his conduct would alarm, anger or disturb others or would provoke an assault or breach of the peace." State v. Ackerman, 380 N.W.2d 922, 925 (Minn.App.1986). Actual commotion need not occur, rather "[i]t is sufficient if defendant's conduct is likely to annoy, disturb, or arouse anger." City of St. Paul v. Azzone, 287 Minn. 136, 139"40, 177 N.W.2d 559, 561"62 (1970). | To prove disorderly conduct, the state must show that an offender knew, or should have known, that his conduct would alarm, anger or disturb others or would provoke an assault or breach of the peace. M.S.A. S 609.72. | "To convict a person of disorderly conduct, should there be an actual commotion?" | 014445.docx | LEGALEASE-00141041-LEGALEASE-00141042 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 10498 | Tarr v. Timberwood Park Owners Ass'n Inc., 510 S.W.3d 725 | 108+49 | We also agree with Munson that the term "residence" "generally requires both physical presence and an intention to remain." Munson, 948 S.W.2d at 816. Thus, "[i]f a person comes to a place temporarily, without any intention of making that place his or her home, that place is not considered the person's residence." Id. at 817. Instead, those persons are using a home for transient purposes. Id. And, as in Munson, we draw a distinction between "residential" purposes and "transient" purposes. See id. at 816"17. One leasing his home to be used for transient purposes is not complying with the restrictive covenant that it be used solely for residential purposes. See also Benard v. Humble, 990 S.W.2d 929, 931"32 (Tex. App."Beaumont 1999, pet. denied) (holding that homeowner's short term rental of home violated deed restriction that home could be used only for "single-family residence purposes"). | When interpreting a restrictive covenant, if a person comes to a place temporarily, without any intention of making that place his or her home, that place is not considered the person's residence; instead, those persons are using a home for transient purposes. | Is a place considered a person's residence if a person comes to a place temporarily without any intention of making that place his or her home? | 014544.docx | LEGALEASE-00140730-LEGALEASE-00140731 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 10499 | Ouachita Watch League v. Henry, 59 F. Supp. 3d 922 | 149E+595(5) | The BLM and Forest Service exercise legal control over the issuance and approval of oil and gas leases and permits because their roles in the issuance of a lease and approval of an APD and SUPA are condition precedents to the entirety of an oil and gas project on national forest land. They also exercise discretion in fulfilling these roles. Accordingly, their roles are not essentially ministerial, and this Court may reasonably infer that, based on the factual allegations in OWL's complaint, there remains major federal actions to occur under the 2005 LRMP, which amounts to the first step in any oil and gas project in the Forest. See Goos, 911 F.2d at 1295"96. Even if the Forest Service has given up its authority to reject individual SUPOs in the 2005 LRMP, which is not entirely clear from OWL's allegations in the complaint, the BLM's role, as alleged in OWL's complaint, still constitutes federal major actions. See Wyo. Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 49 (D.C.Cir.1999) (reiterating that "[i]f the [Forest Service] chooses not to retain authority to preclude all surface disturbing activities, an EIS must be prepared when the leases are issued" (alterations in original) (citation omitted) (internal quotation marks omitted)). | Allegation that United States Forest Service and Bureau of Land Management (BLM) were continuing to issue and approve oil and gas leases and permits in national forest, following updated Reasonably Foreseeable Development Scenario (RFDS) and Changed Conditions Analysis (CCA), were sufficient to state a National Environmental Policy Act (NEPA) claim under Administrative Procedure Act (APA) to compel agency action unlawfully withheld or unreasonably delayed; allegations sufficiently allowed inference that agencies were taking major Federal action requiring preparation of environmental impact statement (EIS). 5 U.S.C.A. S 706(1); National Environmental Policy Act of 1969, S 2, 42 U.S.C.A. S 4321. | if the Forest Service chooses not to retain authority to preclude all surface disturbing activities must an EIS (Environmental Impact Statement) be prepared when the leases are issued? | Mines and Minerals - Memo # 107- C - EB.docx | LEGALEASE-00030875-LEGALEASE-00030876 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10500 | Shearer v. Allegheny Land & Mineral Co., 152 W. Va. 616 | 260+73.1(2) | We are unable to agree with these contentions. This Court has consistently held that a lessee under an oil and gas lease has a mere right of exploration, and, therefore, no estate vests in the lessee until the discovery of oil or gas in paying quantities. Carper v. United Fuel Gas Company, 78 W.Va. 433, 440, 89 S.E. 12, 15, L.R.A.1971A, 171; Lowther Oil Company v. Miller-Sibley Oil Company, 53 W.Va. 501, pt. 1 syl., 44 S.E. 433. In South Penn Oil Company v. Snodgrass, 71 W.Va. 438, 450, 76 S.E. 961, 966, 43 L.R.A., N.S., 848, this Court stated: "Discovery of oil within the term vests an estate, and terminates the mere right of exploration. It creates the relation of landlord and tenant until the end of the fixed term beyond question." | Discovery of oil within term vests an estate, terminates mere right of exploration, and creates relation of landlord and tenant until end of fixed term. | Does discovery of oil within the term vest an estate and terminate the mere right of exploration? | 021147.docx | LEGALEASE-00140816-LEGALEASE-00140817 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 10501 | Arnold v. Morton, 529 F.2d 1101 | 260+5.1(2) | We also reject plaintiffs' contention that this court should issue an order directing the Secretary to give plaintiffs the leases they request. It is quite evident that the Secretary has no obligation to issue any lease on public lands. In Udall v. Tallman, 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616 (1965), the Supreme Court said that even though the Mineral Lands Leasing Act "directed that if a lease were issued on such a tract, it had to be issued to the first qualified applicant, it left the Secretary discretion to refuse to issue any lease at all on a given tract." See also, Burglin v. Morton, 527 F.2d 486 (9th Cir. 1976). A mere application for a lease vests no rights in the applicant, Haley v. Seaton, 108 U.S.App.D.C. 257, 281 F.2d 620 (1960), except the right to have the application fairly considered under the applicable statutory criteria.Schraier v. Hickel, 136 U.S.App.D.C. 81, 419 F.2d 663, 667 (1969). But even where an application for a lease is both first in time9 and filed in response to a government notice that it will receive offers, no legal claim against the Government arises. Id. The result is the same where offers were filed long before a determination by the Secretary not to lease. McDade v. Morton, 353 F.Supp. 1006 (D.D.C.1973), aff'd, 161 U.S.App.D.C. 237, 494 F.2d 1156 (1974). The plaintiffs cannot bind the Secretary when it was the clear intent of Congress to give him discretion. | A mere application for a mineral lease of public land vests no right in the applicant except the right to have the application fairly considered under applicable statutory criteria. Mineral Lands Leasing Act, S 1 et seq., 30 U.S.C.A. S 181 et seq. | Does a mere application for a lease vest no rights in the applicant except the right to have the application fairly considered under the applicable statutory criteria? | 021271.docx | LEGALEASE-00141166-LEGALEASE-00141167 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 10502 | In re Guardian Tr. Co., 260 B.R. 404 | 170A+1686 | Rule 36(b) of the Federal Rules of Civil Procedure provides in relevant part that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits...." The two-pronged test of Rule 36(b) directs the court to consider the effect upon the litigation and the prejudice to the resisting party, rather than focusing on the moving party's excuses for having made an erroneous admission. FDIC v. Prusia, 18 F.3d 637, 640 (8th Cir.1994). | In deciding whether to allow party to withdraw his or her admissions, court must consider effect upon litigation and prejudice to opposing party, rather than focus on moving party's excuses for having made erroneous admission. Fed.Rules Civ.Proc.Rule 36(b), 28 U.S.C.A. | Will a court focus on a moving partys excuses for an erroneous admission? | Pretrial Procedure - Memo # 3243 - C - PB.docx | ROSS-003287735-ROSS-003287736 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10503 | Arvedson v. Luby, 498 S.W.2d 253 | 307A+723.1 | Rule 251, Texas Rules of Civil Procedure, requires that continuance be granted only "for sufficient cause supported by affidavit . . ." Appellant's application for continuance on November 21, the day of trial, did not comply with the Rule, since the motion was neither verified nor supported by affidavit. Before the trial court may exercise its discretion there must be a motion presented in confomity with Rule 251. Drake v. State, 488 S.W.2d 534, 535 (Tex.Civ.App. Dallas 1972, writ ref. n.r.e.). Since the Rule was not complied with, this Court will presume that the trial court did not abuse its discretion in denying continuance, absent a showing to the contrary. Watson v. Godwin, 425 S.W.2d 424, 430 (Tex . Civ.App. Amarillo 1968, writ ref. n.r.e.). | Before trial court may exercise its discretion on motion for continuance, there must be a motion presented in conformity with rule. Rules of Civil Procedure, rule 251. | "Before a trial court may exercise its discretion on a motion for continuance, should there be a motion presented in conformity with the rule?" | 030703.docx | LEGALEASE-00141366-LEGALEASE-00141367 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 10504 | Dijkstra v. Millar Elevator Indus., 228 A.D.2d 469 | 307A+36.1 | A party is entitled to "full disclosure of all evidence material and necessary in the prosecution or defense of an action" (CPLR 3101[a] ). The words "material" and "necessary" are to be liberally interpreted (Johantgen v. Hobart Mfg. Co., 64 A.D.2d 858, 407 N.Y.S.2d 355) and a defendant in a products liability action is entitled to know which parts of a product are claimed to be defective and the nature of the alleged defects (see, Wiseman v. American Motors Sales Corp., 101 A.D.2d 859, 475 N.Y.S.2d 885). Accordingly, Millar's responses to interrogatories 8, 12 through 16, 25, 28 through 31, and 67 through 71, as propounded by Emerson, were insufficient. If Millar intends to limit its claims to only one particular object or piece of equipment, it should provide a sworn statement to that effect. Otherwise, it should answer the interrogatories as written. | Products liability defendant is entitled to know which parts of product are claimed to be defective and nature of alleged defects. McKinney's CPLR 3101(a). | Is a products liability defendant entitled to know which parts of product are claimed to be defective and nature of alleged defects? | 032149.docx | LEGALEASE-00141356-LEGALEASE-00141357 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10505 | Kern v. Gleason, 840 S.W.2d 730 | 307A+36.1 | Absent a privilege or specific exception, a party is entitled to discover any relevant material. Discovery is not restricted to facts that will only be admissible at trial; certain fishing expeditions are permissible. To enhance the prospect that all pertinent evidence will be disclosed and brought before the trier of fact, facts are discoverable if they are reasonably calculated to lead to the discovery of material evidence. Jampole v. Touchy, 673 S.W.2d 569, 573 (Tex.1984) (orig. proceeding). In an action where exemplary damages may be recovered, a party's net worth is relevant and discoverable. Lunsford v. Morris, 746 S.W.2d 471, 473 (Tex.1988) (orig. proceeding). | In action where exemplary damages may be recovered, party's net worth is relevant and discoverable. | "In action where exemplary damages may be recovered, is a party's net worth relevant and discoverable?" | Pretrial Procedure - Memo # 5194 - C - SN.docx | ROSS-003288741-ROSS-003288742 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10506 | Cleland v. 60-02 Woodside Corp., 221 A.D.2d 307 | 157+219.50 | Evidence of subsequent repairs and remedial measures is not discoverable or admissible in a negligence case unless there is an issue of maintenance or control (see, Niemann v. Luca, Jr., 214 A.D.2d 658, 625 N.Y.S.2d 267; Cacciolo v. Port Auth. of N.Y. & N.J., 186 A.D.2d 528, 588 N.Y.S.2d 350; Klatz v. Armor El. Co., 93 A.D.2d 633, 462 N.Y.S.2d 677). In their appellate brief, the defendants admit control of the subject premises. Accordingly, the information which the plaintiffs sought regarding repair work performed on the stairway and/or stoop subsequent to the accident was not material or relevant to prosecuting the action (see, CPLR 3101) and the failure on the part of the defendants to provide the plaintiffs with this information did not warrant the issuance of an order of preclusion regarding the condition of the stairway and/or stoop at the time of the accident.Case 2: Watson v. FHE Servs., Inc., 257 A.D.2d 618. | Evidence of subsequent repairs and remedial measures is not discoverable or admissible in negligence case unless there is issue of maintenance or control. | Is evidence of subsequent repairs not discoverable or admissible in a negligence case? | Pretrial Procedure - Memo # 5209 - C - AC.docx | ROSS-003289239-ROSS-003289240 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10507 | Williams v. Richardson, 12 S.C. 584 | 307A+74 | The only exception in this case raises the question whether the return to a commission to take testimony is invalid where the commissioners fail to return the form of oath taken by them, with their signatures and jurat thereto. We not pointed to any statute rendering the return of the form of oath requisite, and therefore cannot hold that there has been any failure to comply with the requirements of the statute in this respect. It appears by the return of the commissioners that they were duly qualified in the manner prescribed by the commission, each administering the oath to the other. This was all that the statute or the terms of the commission required, and the commission must be regarded as fully executed and the return competent as testimony in the case. | Where commissioners to take testimony certify, in their return, that under the instructions contained in the commission, they have qualified each other and also the witness, whose signature is appended to his deposition, the commission is competent testimony, although the form of the oath taken by the commissioners and witness, and their signatures thereto, and the jurat, are omitted. | "Should commissioners to take testimony certify, in their return, that they have qualified each other and also the witness?" | 032560.docx | LEGALEASE-00141706-LEGALEASE-00141707 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 10508 | In re R.M., 234 S.W.3d 619 | 307A+684 | This Court reviews a decision to dismiss for lack of subject matter jurisdiction pursuant to an abuse of discretion standard. In re J.M.Z., 983 S.W.2d 573, 574 (Mo.App. E.D.1998). Dismissal for lack of subject matter jurisdiction is proper when it appears, by a preponderance of the evidence, that the court is without jurisdiction. Id. Under this standard, even accepting the court disregard for Grandmother version of the facts, the record does not supply a preponderance of evidence that the court lacked jurisdiction. While we caution grandparents from seeking judicial recourse prematurely, we reject the trial court suggestion that the statute requires documentation of requests or denials. The record contains ample evidence, based on undisputed actions of the parties and Mother own testimony, that Mother objective was to insulate Child from Father and Grandmother during the months prior to the adoption petition, and any attempts to obtain visits were, or would have been, futile. The trial court finding that Grandmother was not denied visitation was against the weight of the evidence. As such, the court's refusal of jurisdiction was an abuse of discretion. | Dismissal for lack of subject matter jurisdiction is proper when it appears, by a preponderance of the evidence, that the court is without jurisdiction. | "Is a dismissal for lack of subject matter jurisdiction proper when it appears, by a preponderance of the evidence?" | 033336.docx | LEGALEASE-00140903-LEGALEASE-00140904 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10509 | Forth v. Allstate Indem. Co., 151 S.W.3d 732 | 307A+554 | Implicit in the concept of subject-matter jurisdiction, standing is a prerequisite to maintaining a suit. It "stems from two limitations on subject matter jurisdiction: the separation of powers doctrine and, in Texas, the open courts provision." Brown v. Todd, 53 S.W.3d 297, 302 (Tex.2001); Tex. Ass'n of Bus., 852 S.W.2d at 443"44. As such, standing is essential to the authority of a court to decide a case, identifies those suits appropriate for judicial resolution, and cannot be waived. Brown, 53 S.W.3d at 305; Tex. Ass'n of Bus., 852 S.W.2d at 443, 445"46. If a plaintiff lacks standing, the trial court has no jurisdiction and must dismiss the entire case. M.D. Anderson Cancer Ctr. v. Novak, 52 S.W.3d 704, 707"08 (Tex.2001); Am. Nat'l Ins. Co. v. Cannon, 86 S.W.3d 801, 806 (Tex.App.-Beaumont 2002, no pet.). | If a plaintiff lacks standing, the trial court has no jurisdiction and must dismiss the entire case. | "If a plaintiff lacks standing, does the trial court have no jurisdiction and must dismiss the entire case?" | 033350.docx | LEGALEASE-00140953-LEGALEASE-00140954 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10510 | Thomas v. Long, 207 S.W.3d 334 | 307A+554 | Relying on Speer v. Stover, Long argues that the trial court properly denied Thomas's plea because the Department conceded that the trial court had jurisdiction over at least one claim. 685 S.W.2d 22 (Tex.1985). In Speer, this Court held that a trial court's order sustaining a misnomered plea in abatement, which challenged the trial court's subject matter jurisdiction, was a final and appealable order. 685 S.W.2d at 23. Comparing the effect of the two pleas, the Court stated that "[s]ustaining a plea to the jurisdiction requires dismissal; sustaining a plea in abatement requires that the claim be abated until removal of some impediment." Id. Long argues this means if the trial court lacks jurisdiction over some claims but not others, it must deny the plea. We disagree. As we recognized in American Motorists Insurance Company v. Fodge, it is proper for a trial court to dismiss claims over which it does not have subject matter jurisdiction but retain claims in the same case over which it has jurisdiction. 63 S.W.3d 801, 805 (Tex.2001) (holding that the trial court erred in dismissing all claims but the court of appeals erred in requiring the reinstatement of all claims); see also Tex. Highway Dept. v. Jarrell, 418 S.W.2d 486, 488 (Tex.1967) ("As applied to a pending claim for relief or cause of action, a plea to the jurisdiction, if sustained, would require a dismissal ...."). A trial court is not required to deny an otherwise meritorious plea to the jurisdiction or a motion for summary judgment based on a jurisdictional challenge concerning some claims because the trial court has jurisdiction over other claims. See Fodge, 63 S.W.3d at 805. To the extent some courts of appeals have held otherwise, we disapprove of those holdings. See Aledo Indep. Sch. Dist. v. Choctaw Props., L.L.C., 17 S.W.3d 260, 262"63 (Tex.App."Waco 2000, no pet.); Harris County Flood Control Dist. v. PG & E Tex. Pipeline, L.P., 35 S.W.3d 772, 773 (Tex.App."Houston [1st Dist.] 2000, pet. dism'd w.o.j.), disavowed on | It is proper for a trial court to dismiss claims over which it does not have subject matter jurisdiction but retain claims in the same case over which it has jurisdiction. | Is it proper for a trial court to dismiss claims over which it does not have subject matter jurisdiction but retain claims in the same case over which it has jurisdiction? | Pretrial Procedure - Memo # 6023 - C - VP.docx | ROSS-003289737-ROSS-003289738 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10511 | Tompkins v. Williams, 19 Ga. 569 | 307A+74 | A discrepancy between the name of the witness in the interrogatories and to the depositions, will not exclude the testimony, it being conceded that the opposite party knew what person was intended to be examined, and directed his cross-questions accordingly. Where a witness is questioned in the direct interrogatory, as to a conversation which he had with one of the parties; and upon the cross-examination, is requested to state who was present when the conversation transpired, and he testifies, in answer to the direct interrogatory, to two conversations instead of one; and upon his cross-examination, only states who was present at one of the conversations, the testimony will be excluded. | A deposition is not excluded by a discrepancy as to the witness' name between the interrogatories and the deposition, if the opposite party knew what person was intended to be examined, and directed his cross-examination accordingly. | Is a deposition not excluded by a discrepancy as to the witness' name between the interrogatories and the deposition? | Pretrial Procedure - Memo # 6083 - C - AP.docx | ROSS-003303243-ROSS-003303244 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 10512 | In re Peplinski's Estate, 155 Pa. Super. 564 | 268+405 | If we construe literally the words in the Act of 1941, 72 P.S. " 5878d""to the respective taxing authorities in proportion to their tax and municipal claims'"they do not necessarily mean that taxes and municipal claims shall have the same status or rank and thus participate pro rata. Municipal claims are mentioned after taxes; and they are in a separate category from taxes. Although municipal liens are a species of taxation (Hammett v. Philadelphia, 65 Pa. 146, 150, 3 Am.Rep. 615; Erie v. Piece of Land, 339 Pa. 321, 327, 14 A.2d 428; City of Johnstown v. Dibert, 88 Pa.Super. 117, 121), they are not taxes in a strict sense of the word for two reasons: first, they are not assessed for governmental purposes, and, second, they are based on a theory of special benefit to the property against which the assessments are levied. "General taxation is enforced to serve the necessary purposes of government, while local assessments are enforced to serve mere local convenience, and for the additional benefit of private property holders. | General taxation is enforced to serve the necessary purposes of government, while local assessments are enforced to serve mere local convenience and for additional benefit of private property holders. | What is general taxation enforced to serve? | 045134.docx | LEGALEASE-00140840-LEGALEASE-00140842 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10513 | In re Peplinski's Estate, 155 Pa. Super. 564 | 268+405 | If we construe literally the words in the Act of 1941, 72 P.S. " 5878d""to the respective taxing authorities in proportion to their tax and municipal claims'"they do not necessarily mean that taxes and municipal claims shall have the same status or rank and thus participate pro rata. Municipal claims are mentioned after taxes; and they are in a separate category from taxes. Although municipal liens are a species of taxation (Hammett v. Philadelphia, 65 Pa. 146, 150, 3 Am.Rep. 615; Erie v. Piece of Land, 339 Pa. 321, 327, 14 A.2d 428; City of Johnstown v. Dibert, 88 Pa.Super. 117, 121), they are not taxes in a strict sense of the word for two reasons: first, they are not assessed for governmental purposes, and, second, they are based on a theory of special benefit to the property against which the assessments are levied. "General taxation is enforced to serve the necessary purposes of government, while local assessments are enforced to serve mere local convenience, and for the additional benefit of private property holders. | General taxation is enforced to serve the necessary purposes of government, while local assessments are enforced to serve mere local convenience and for additional benefit of private property holders. | What are local assessments enforced to serve? | Taxation - Memo # 402 - C- NA.docx | ROSS-003288768-ROSS-003288769 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10514 | Nw. Mut. Life Ins. Co. v. State Bd. of Equalization, 73 Cal. App. 2d 548 | 268+405 | It is appellant's theory that in providing for deduction of "taxes' the Constitution uses the word "taxes' in a broad and all-inclusive sense. Appellant claims that its position is strengthened by the use of the word "any" in conjunction with "taxes." The word "any," as used, might well be defined as "all or every." It is true that in this and other jurisdictions the word "taxes' often includes some form of assessments. To that extent the words have often been used synonymously. "The terms "tax" and "assessment," except in the case of specific taxation, both include the idea of some ratio or rule of apportionment.' 24 Cal.Jur., p. 38, sec. 22; see, also, Holley v. Orange County, 106 Cal. 420, 39 P. 790; Neary v. Peterson, 1 Cal.2d 703, 37 P.2d 82. | The terms "tax" and "assessment" except in the case of specific taxation both include the idea of some ratio or rule of apportionment. | Do the terms tax and assessment both include the idea of some ratio or rule of apportionment? | 045209.docx | LEGALEASE-00141216-LEGALEASE-00141217 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10515 | Leo Feist, v. Young, 46 F. Supp. 622 | 371+2005 | Nonetheless, plaintiffs ask me to avoid this conclusion on the theory that I should nullify Chapter 177 of the Wisconsin statutes. This for the reason that they contend it does violence to the Federal Constitution. There can be no doubt that Ascap, the real party plaintiff here, is and has been doing business in the State of Wisconsin in such a way as to entitle that State to enact a franchise tax statute, compliance with which is a condition precedent to the transaction of business in the State. International Harvester Company v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Eastern Livestock Co-operative Marketing Ass'n, Inc., v. Dickenson, 4 Cir., 107 F.2d 116; Vilter Mfg. Co. v. Rolaff, 8 Cir., 110 F.2d 491; Street Railway Advertising Co. v. Lavo Co. of America, 184 Wis. 395, 198 N.W. 595. A state has the power to levy a tax against corporations or associations transacting business within its borders. State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229. "The state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society." State of Wisconsin v. J. C. Penney Co., supra, 311 U.S.page 444, 61 S.Ct.page 249. The nullification of legislation on constitutional grounds is a most delicate function not to be indulged in by the court except when compelling considerations leave no other choice. State Tax Commission of Utah v. Aldrich, 62 S.Ct. 1008, 86 L.Ed. . . . , 139 A.L.R. 1436, decided April 27, 1942. A tax measured by the gross receipts from the business of licensing others to multiply performances of copyrighted compositions is not levied against an instrumentality of the Federal Government. Fox Film Corp. v. Doyal, 286 U.S. 123, 52 S.Ct. 546, 76 L.Ed. 1010. | A state has the power to levy a tax against corporations or associations transacting business within its borders. | Does a state have the power to levy a tax against corporations or associations transacting business within its borders? | Taxation - Memo # 564 - C - ES.docx | ROSS-003288845-ROSS-003288846 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10516 | City of Los Angeles v. Tannahill, 105 Cal. App. 2d 541 | 371+2135 | It is an inherent quality of a state to possess the power to tax and to select its subjects of taxation. It is not bound to tax every member of a class or none.Carmichael v. Southern Coal & Coke Company, 301 U.S. 495, 508, 57 S.Ct. 868, 81 L.Ed. 1245. An ordinance must be clearly obnoxious as unreasonable and oppressive to justify nullifying it by judicial decree. Since it is the right of a city to regulate its municipal affairs the courts must uphold such regulations unless it is manifest that the ordinance transcends the power of the municipality and violates the rights secured to the citizen by the constitution or the statutes. Ex parte Lemon, supra, 143 P. at page 563, 77 P. at page 455, 65 L.R.A. 946. | It is inherent quality of a state to possess power to tax and to select its subjects of taxation, and it is not bound to tax every member of a class or none. | Is a state bound to tax every member of a class? | 045445.docx | LEGALEASE-00141380-LEGALEASE-00141381 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10517 | Shannon v. Streckfus Steamers, 279 Ky. 649 | 371+2005 | We think it safely may be said that unless it is clearly shown that there is some particular, direct and substantial not merely incidental or fortuitous interference with a federal right, a state is free to exercise its taxing power. Section 374, Cooley, Taxation. We are of the opinion that the excise tax under consideration did not burden the coastwise traffic in which these excursion boats were engaged. As held in Streckfus Steamers v. Fox, supra, the tax is not upon navigation but a sales tax upon the business of affording entertainment conducted within the state and enjoying the protection of state laws. It is an excise tax for revenue only. Hence, that the imposition and collection of the tax were authorized. | A state is free to exercise its taxing power unless there is some direct and substantial, and not merely incidental or gratuitous, interference with a federal right. | Can a state exercise its taxing power when there is direct interference with a federal right? | 045465.docx | LEGALEASE-00141559-LEGALEASE-00141560 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 10518 | Holland Furnace Co. v. City of Chaffee, 279 S.W.2d 63 | 268+956(1) | "In ruling the point in the Siemens case [Siemens v. Shreeve, 317 Mo. 736, 296 S.W. 415] the court pointed out that a city has no inherent power to tax; that such power rests primarily in the state, but may be delegated by constitutional provision or by statutory enactment; that the authority for a city to tax must be expressly granted or necessarily incident to the powers conferred and in case of doubt the power to tax is denied. | The city has no inherent power to tax, and such power rests primarily in state but state may delegate power by constitutional provision or by statutory enactment. Section 94.110 RSMo 1949, V.A.M.S. | Can the power to tax be delegated by constitutional provision or by statutory enactment? | 045538.docx | LEGALEASE-00141801-LEGALEASE-00141802 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |
| 10519 | Joslin v. Regan, 63 A.D.2d 466 | 371+2060 | An ad valorem tax is one that is assessed upon the value of property "at a certain rate" (Ampco Print.-Advs. Corp. v. City of N. Y., 14 N.Y.2d 11, 22, 247 N.Y.S.2d 865, 870, 197 N.E.2d 285, 288; 58 N.Y.Jur.Revised, Taxation, s 6) or at a "fixed proportion" (71 Am.Jur.2d, State and Local Taxation, s 20). The fees established in section 2402 are broken down into seven categories based upon ranges of estate value varying from $10,000 to $500,000 or more. They are modest in amount and are graded to a maximum of $450, regardless of the value of the estate in excess of $500,000. The fee schedule is not one based upon a fixed percentage of the value of the estate. If it were, a fee imposed, however labeled, would be susceptible to characterization as a tax (see In Re Zoller's Estate, 3 Storey 448, 53 Del. 448, 171 A.2d 375). | An "ad valorem tax" is one that is assessed on the value of property at a certain rate or at a fixed proportion. Const. art. 16, S 3. | "Is ""ad valorem tax"" the one that is assessed on the value of property at a certain rate or at a fixed proportion?" | 045556.docx | LEGALEASE-00142013-LEGALEASE-00142014 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10520 | Sunshine Towing v. Fonseca, 933 So. 2d 594 | 413+45 | Workers' compensation is purely a creature of statute and, as such, is subject to the basic principles of statutory construction. McDade v. Palm Beach County Sch. Dist., 898 So.2d 126, 128 (Fla. 1st DCA 2005) (citing Travelers Ins. Co. v. Sitko, 496 So.2d 920, 921 (Fla. 1st DCA 1986)). Where the legislature has used a term in one section of a statute but omitted the term in another section, the court will not read the term into the sections where it was omitted. Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So.2d 911, 914 (Fla.1995). | Workers' compensation is purely a creature of statute and, as such, is subject to the basic principles of statutory construction. | "Is workers compensation purely a creature of statute and, as such, is it subject to the basic principles of statutory construction?" | 048098.docx | LEGALEASE-00141049-LEGALEASE-00141050 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 10521 | Sease v. PaineWebber, 697 F. Supp. 1190 | 25T+154 | Once the court is satisfied that a contract calls for arbitration and the parties do not contest the validity of that contract, the court must give the clause a broad interpretation and refer to arbitration all disputes or controversies arising between the customer and brokerage house. Houston General Ins. Co. v. Realex Group, N.V., 776 F.2d 514 (5th Cir.1985). Even if there was some doubt as to whether the customers' claims against Painewebber were related to "transactions or controversies" within the scope of the arbitration agreement, all doubts are to be resolved in favor of arbitration. Mitsubishi Motors Corp. v. Sole's Chrysler Plymouth Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Moses H. Cohn Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Ruby"Collins, Inc. v. City of Huntsville, 748 F.2d 573 (11th Cir.1984). The United States Court of Appeals for the Eleventh Circuit has upheld arbitration of claims including breach of fiduciary duty, negligence, and fraud. See Driscoll v. Smith Barney Harris Upham and Co., 815 F.2d 655 (11th Cir.1987); Blumberg v. Berlin, 678 F.2d 1068 (11th Cir.1982). A plaintiff cannot avoid broad language agreeing to arbitration by pleading a cause of action in tort. Shearson Hayden Stone, Inc. v. Scrivener, 671 F.2d 680 (2d Cir.1982); Stern v. Mitsui Bussan Kaisha, Ltd., 385 F.2d 158 (2d Cir.1967).The court therefore finds any dispute arising from any of these accounts are arbitrable under the various customer agreements. | Plaintiff cannot avoid broad language agreeing to arbitration by pleading cause of action in tort. | Can a plaintiff avoid broad language agreeing to arbitration by pleading a cause of action in tort? | 007637.docx | LEGALEASE-00143351-LEGALEASE-00143352 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 10522 | Pierson v. Dean, Witter, Reynolds, 742 F.2d 334 | 25T+155 | As we know, arbitration clauses are regarded with favor. Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 558 F.2d 831, 833 (7th Cir.1977). Where less than all the alleged claims are arbitrable, and here the Rule 10b"5 claims is concededly not arbitrable, the court may proceed with the non-arbitrable claims, but the court is obliged to honor the arbitration clause agreed to by the parties and to lay aside the arbitrable claims. See Dickinson v. Heinold Securities, Inc., 661 F.2d 638, 644 (7th Cir.1981). | Where less than all alleged claims are arbitrable, court may proceed with nonarbitrable claims, but is obliged to honor arbitration clause agreed to by parties and to lay aside arbitrable claims. | May a court proceed with non-arbitrable claims if all the claims alleged in the civil action are not arbitrable? | 007641.docx | LEGALEASE-00143361-LEGALEASE-00143362 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10523 | Miletic v. Holm & Wonsild, 294 F. Supp. 772 | 25T+155 | A strict construction of the arbitration clause here would work unfortunate consequences. Although the two causes of action (breach of charter and warranty) are separate, they arise essentially out of the same occurrences. Unless the claims are resolved by one tribunal, the parties will be put to the expense and duplication occasioned by arbitration of one claim before one tribunal and trial of the other in this Court. Such a consequence is to be avoided if possible. Accordingly, in keeping with our policy in favor of arbitration, the clause here is to be construed as encompassing both claims as disputes between the parties arising out of the single maritime venture or transaction that was initiated by the charter party. In re Canadian Gulf Line, 98 F.2d 711 (2d Cir. 1938). | Putting party to expense of pursuing arbitration of one claim before arbitration tribunal and trial of another claim in court should be avoided if possible. 9 U.S.C.A. S 3. | Should pursuing arbitration of one claim before an arbitration tribunal and trial of another claim in court be avoided? | 007643.docx | LEGALEASE-00143363-LEGALEASE-00143364 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 10524 | United States v. Redzic, 569 F.3d 841 | 63+1(1) | To prove the payment of an illegal bribe, the government must present evidence of a quid pro quo, but an illegal bribe may be paid with the intent to influence a general course of conduct. It was not necessary for the government to link any particular payment to any particular action undertaken by Parr. Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action.... The quid pro quo requirement is satisfied so long as the evidence shows a "course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor." | To prove the payment of an illegal bribe, the government must present evidence of a quid pro quo, but an illegal bribe may be paid with the intent to influence a general course of conduct. 18 U.S.C.A. S 666(a)(2). | Is it necessary for the government to link any particular payments to any particular action in bribery? | 012057.docx | LEGALEASE-00142603-LEGALEASE-00142604 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 10525 | United States v. Hernandez, 731 F.2d 1147 | 282+105 | We recognize, of course, that Section 201 is to be broadly construed in order to effectuate its legislative purpose of deterring corruption. | Witness bribery statute is to be broadly construed in order to effectuate its legislative purpose of deterring corruption. 18 U.S.C.A. S 201. | "In order to effectuate its legislative purpose of deterring corruption, should witness bribery statute be broadly construed?" | 012170.docx | LEGALEASE-00142382-LEGALEASE-00142383 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 10526 | United States v. Lipscomb, 299 F.3d 303 | 63+1(1) | In reviewing Marmolejo, under the caption Salinas v. United States,20 the Supreme Court asked whether " 666 is "limited to cases in which the bribe has a demonstrated effect upon federal funds."21 The Court stated that "[t]he statute's plain language fails to provide any basis" for such a limitation and that the legislative history forecloses it. The Court thus agreed with our Marmolejo holding that federal funds need not be directly involved in a violation of " 666. The Court nonetheless obliquely suggested that there might be obstacles to applying " 666 to different facts: | Federal funds need not be directly affected by local official's acceptance of bribe in order for acceptance to constitute violation of federal programs bribery statute. 18 U.S.C.A. S 666(a)(1)(B). | Should the federal funds be directly affected by local official's acceptance of bribe in order to constitute violation of federal programs bribery statute? | Bribery - Memo #789 - C - JL.docx | LEGALEASE-00032112-LEGALEASE-00032113 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 10527 | Garman v. Conoco, 886 P.2d 652 | 260+73 | "The fundamental purpose of an oil and gas lease is to provide for the exploration, development, production and operation of the property for the mutual benefit of the lessor and lessee." Davis v. Cramer, 808 P.2d 358, 360 (Colo.1991). | Fundamental purpose of oil and gas lease is to provide for exploration, development, production, and operation of property for mutual benefit of lessor and lessee. | What is the fundamental purpose of an oil and gas lease? | 021323.docx | LEGALEASE-00142595-LEGALEASE-00142596 | Condensed, SA | 0.31 | 0 | 1 | 0 | 1 | |
| 10528 | Rankin v. Naftalis, 557 S.W.2d 940 | 390+102(1) | It is true that in Warner the contracts expressly provided that they were the full and complete agreement of the parties. We do not regard that distinction as significant. What is significant is the underlying relationship of the parties as limited joint venturers.5 The scope of the fiduciary duties raised by such a relationship does not extend past the development of the particular lease and activities incident to that development. "The mere existence of a . . . joint venture of concurrent ownership does not, however, require one party to share the benefits of his own enterprise with another. It must also appear that the interest acquired was within the scope of the fiduciary duty." Williams & Meyers, Oil and Gas Law s 442.1 (1975). As the Supreme Court of Kansas has said in an analogous situation, "The fiduciary relationship created by a joint drilling venture does not forbid further acquisition and development of leases in the general area by individual venturers so long as these leases are not embraced within the scope of the enterprise or are not a natural outgrowth therefrom." | While relationship between parties in oil and gas lease was fiduciary in character, the fiduciary duties extended only to dealings within scope of underlying relationship of parties, that of joint venturers for development of particular lease; and, though joint enterprise extended to paying production costs of wells on lease and sharing benefits derived proportionately, no impropriety as by one party's appropriating operating expense account to purchase land in his own name occurred within scope of those activities, no breach of fiduciary relationship between parties occurred so as to require imposition of a resulting or constructive trust to escape application of unquestioned general rule that land titles must not rest in parol. Vernon's Ann.Civ.St. arts. 7425b-2, 7425b-7. | Does the fiduciary relationship created by a joint drilling venture forbid further acquisition and development of leases in the general area by individual ventures if these leases are not embraced within the scope of the enterprise? | Mines and Minerals - Memo #152 - C - CSS.docx | ROSS-003289102-ROSS-003289103 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 10529 | Bays Expl. v. PenSa, 771 F. Supp. 2d 1289 | 184+7 | As Bays points out, however, the Oklahoma courts have repeatedly held that an operator does not owe its non-operating working interest owners a fiduciary obligation; instead, the duties imposed by a joint operating agreement are contractual obligations:In Oklahoma, oil and gas operators have no fiduciary duty to non-operators arising solely from contracts such as leases, communitization agreements, or joint operating agreements. Howell v. Texaco Inc. (Howell), 2004 OK 92, 112 P.3d 1154, 1160"1161, and Tarrant v. Capstone Oil and Gas Co. (Tarrant), 2008 OK CIV APP 17, 178 P.3d 866, 870"871. An operator's breach of duties under such agreements gives rise to a breach of contract claim, not a breach of fiduciary duty claim. Tarrant, 178 P.3d at 871. | Under Oklahoma law, joint operating agreements between operator of jointly owned oil and gas wells and non-operator did not create fiduciary obligations on part of operator toward non-operator, where the agreements expressly provided that the parties to the agreements were not considered fiduciaries; rather, any duties imposed by the agreements were contractual obligations. | "Do oil and gas operators have a fiduciary duty to non-operators arising solely from contracts such as leases, communitization agreements, or joint operating agreements?" | 021335.docx | LEGALEASE-00142740-LEGALEASE-00142741 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 10530 | McCulloh v. Dashiell's Adm'r, 1 H. & G. 96 | 289+711 | But were not this the fact, this court would have no difficulty in saying, that the complainant should be postponed to the separate creditors; and that whether there was any joint estate or not, he should not be permitted to divide with the separate creditors a fund insufficient to pay them. We are, therefore, disposed to adopt the ancient rule as more consonant to equity and justice, that the joint creditors can only look to the surplus, after the payment of the separate debts; and on the other hand, that the separate creditors can only seek indemnity from the surplus of the joint fund after the satisfaction of the joint creditors. | Creditors of a partnership can only look to the surplus of the separate estate of the members of the firm after the payment of the separate debts, and separate creditors can only seek indemnity from the surplus of the joint fund after the satisfaction of the joint creditors. | Can the joint creditors of a partnership look to the surplus of the separate estates of the partners after payment of the separate debts? | Partnership - Memo 425 - JK.docx | ROSS-003288997-ROSS-003288998 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 10531 | Richardson v. Adler, Goldman & Co., 46 Ark. 43 | 163+61 | The members of an insolvent firm are not entitled to the exemptions, allowed by law, out of the partnership property after it has been seized to satisfy the demands of creditors of the firm. This proposition is well settled both upon reason and authority. The interest of each partner in the partnership assets is his portion of the residuum after all the liabilities of the firm are liquidated and discharged. Property belonging to the firm cannot be said to belong to either partner as his separate property. It is contingent and uncertain whether any of it will belong to him on the winding up of the business and the settlement of his accounts with the firm. | The members of an insolvent firm are not entitled to the exemptions allowed by law, out of the partnership property, after it has been seized to satisfy the demands of the creditors of the firm. | Is a member of an insolvent firm entitled to exemptions out of the partnership property? | Partnership - Memo 427 - JK.docx | ROSS-003291138-ROSS-003291139 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10532 | People v. Northbrook Sports Club, 53 Ill. App. 3d 331 | 302+9 | By dismissing the complaint with prejudice, the court here in effect declared that even construing all facts well-pleaded as true, they did not constitute a cause of action for which there would be a remedy. We disagree. While the complaint did allege the conclusion of the "unreasonableness" of the interference with the life and lawful activities of the residents of the area, it also alleged the supporting facts that the Gun Club has allowed the emission of sound beyond its boundaries for a certain period of time, that the sounds interfere with legitimate recreational activities, offend the senses, endanger the emotional and physical health of residents and depress property values. Whether such disturbances should in fact be characterized as unreasonable and a violation of the statute or a common law nuisance would remain to be determined by the evidence presented at trial. But since "allegations of legal conclusions and allegations of evidence constitute merely formal defects and not defects of substance" (Browning v. Heritage Insurance Co. (1975), 33 Ill.App.3d 943, 947, 338 N.E.2d 912, 915), a conclusory allegation does not impair the informational function or sufficiency of the pleading. Consequently, we find that the complaint alleged facts sufficient to state a cause of action and was improperly dismissed. In light of our decision, we find it unnecessary to consider the propriety of the court's refusal to grant the plaintiff's motion to vacate the dismissal and for leave to file an amended complaint. | Allegations of legal conclusions and allegations of evidence constitute merely formal defects and not defects of substance in pleadings; thus conclusory allegation does not impair informational function or sufficiency of pleading. S.H.A. ch. 110, SS 1-94, 33(1, 3), 42(2). | Do allegations of evidence constitute defects of substance? | Pleading - Memo 403 - RMM.docx | ROSS-003291176-ROSS-003291177 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10533 | Powers v. Delnor Hosp., 135 Ill. App. 3d 317 | 302+41 | With respect to Count I, the governing law is well established, though its application to a particular case is not always clear. The drafter of a complaint must strike a balance between the inclusion of too little and too much factual detail. If too little factual detail is included, the complaint is objectionable for stating conclusions. (Pfendler v. Anshe Emet Day School (1980), 81 Ill.App.3d 818, 822, 37 Ill.Dec. 1, 3, 401 N.E.2d 1094, 1096.) On the other hand, if too much detail is included the complaint improperly pleads evidence. (O'Brien v. Matual (1957), 14 Ill.App.2d 173, 144 N.E.2d 446.) What the drafter must plead are ultimate facts. (Ingram v. Little Company of Mary Hospital (1982), 108 Ill.App.3d 456, 459, 63 Ill.Dec. 831, 833, 438 N.E.2d 1194, 1196.) It is not always easy to differentiate between conclusions, ultimate facts and evidence for pleading purposes, in part because the law takes the pragmatic view that the classification of an allegation is to some extent dependent upon the context of the particular case in which it is made. Van Dekerkhov v. City of Herrin (1972), 51 Ill.2d 374, 376, 282 N.E.2d 723, 725; Ingram v. Little Company of Mary Hospital (1982), 108 Ill.App.3d 456, 459, 63 Ill.Dec. 831, 833, 438 N.E.2d 1194, 1196. | Drafter of a complaint must strike a balance between inclusion of too little and too much factual detail; if too little factual detail is included, complaint is objectionable for stating conclusions, but if too much detail is included, complaint improperly pleads evidence. | Must the drafter of a complaint strike a balance between inclusion of too little and too much factual detail? | Pleading - Memo 406 - RMM.docx | ROSS-003288552-ROSS-003288553 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 10534 | Oravek v. Cmty. Sch. Dist. 146, 264 Ill. App. 3d 895 | 302+11 | Plaintiff's allegation that defendant "had specific knowledge of the presence of [the] skateboard on the situs of Kruse School" is not conclusory. The allegation of a defendant's knowledge is one of ultimate fact, not a conclusion, and thus plaintiff need not plead the evidentiary facts upon which such statement is based. Ward, 243 Ill.App.3d at 974, 184 Ill.Dec. 901, 614 N.E.2d 102. | Allegation of defendant's knowledge is allegation of ultimate fact, not a conclusion, and thus plaintiff need not plead evidentiary facts upon which such statement is based. | Is a statement of a defendant's knowledge an allegation of ultimate fact? | 023500.docx | LEGALEASE-00143112-LEGALEASE-00143113 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 10535 | Georgetown Steel Corp. v. Chaffee, 519 N.E.2d 574 | 307A+485 | Here, again Georgetown refused to admit or deny a relatively simple factual statement. While these two examples may be among the most egregious, they are not unique examples of Georgetown's failure to adequately shoulder its duty to answer the requests for admission without equivocation or evasion. Thus it cannot be said that the trial court erred in its tacit holding that Georgetown was not substantially justified in its opposition to the motion to compel. | Defendant failed duty to answer requests for admission without equivocation or evasion, and thus was not substantially justified in its opposition to motion to compel and was subject to payment of plaintiffs' expenses. Trial Procedure Rules 37, 37(A)(4); Fed.Rules Civ.Proc.Rule 37, 28 U.S.C.A. | "Will a defendant be subject to payment of plaintiffs' expenses, if he fails duty to answer requests for admission without equivocation or evasion?" | 030663.docx | LEGALEASE-00142818-LEGALEASE-00142819 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 10536 | Fisk v. Tank, 12 Wis. 276 | 307A+74 | A deposition should not be suppressed or excluded for want of a venue, or statement of the place where it was taken, either in its caption or in the certificate of the commissioner before whom it was taken. | A deposition should not be suppressed or excluded for want of a venue or statement of the place where it was taken, either in its caption or in the certificate of the commissioner before whom it was taken. | Should a deposition not be suppressed or excluded for want of a venue or statement of the place where it was taken? | 032506.docx | LEGALEASE-00142270-LEGALEASE-00142271 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 10537 | Glidden v. Moore, 14 Neb. 84 | 307A+74 | The objection to this certificate is technical. It is strange that a notary should neglect or fail to place the common and perfunctory words called the venue at the head of the certificate; but it has, we think, always been held sufficient, where the venue appeared in the body of the certificate, as it does here. The trouble with the certificate in Payne v. Briggs was that it nowhere appeared that the notary signing the certificate was appointed by the authority of or resided within the jurisdiction of the state of Colorado, where the deposition was to have been taken according to the notice. | A certificate of a notary public to a deposition which omits the "venue" at the head thereof is not thereby invalidated when the same (state and county) appears in the body of the certificate. | "Is a certificate of a notary public to a deposition which omits the ""venue"" at the head thereof not thereby invalidated when the same state and county appears in the body of the certificate?" | Pretrial Procedure - Memo # 5420 - C - SN.docx | ROSS-003288825-ROSS-003288826 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 10538 | Texas Educ. Agency v. Am. YouthWorks, 496 S.W.3d 244 | 307A+554 | If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. If the pleadings affirmatively negate the existence of jurisdiction, we may render judgment dismissing the plaintiffs' case without an opportunity to amend. | If the pleadings affirmatively negate the existence of jurisdiction, court may grant plea to the jurisdiction and render judgment dismissing the plaintiffs' case without an opportunity to amend. | "If the pleadings or record affirmatively negate the existence of jurisdiction, should the suit be dismissed?" | Pretrial Procedure - Memo # 5703 - C - VA.docx | ROSS-003289417-ROSS-003289419 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 10539 | Steward v. Green, 189 N.C. App. 131 | 15A+2161 | When a party has not exhausted administrative remedies, the case should be dismissed for lack of subject matter jurisdiction. See Vass v. Bd. of Trustees, 324 N.C. 402, 379 S.E.2d 26 (1989) (concluding that the trial court was without subject matter jurisdiction where plaintiff had not exhausted administrative remedies available to him under the Administrative Procedure Act (APA)). "[Q]uestions of subject matter jurisdiction may properly be raised at any [time]." Forsyth County Bd. of Social Services v. Division of Social Services by Everhart, 317 N.C. 689, 692, 346 S.E.2d 414, 416 (1986). | When a party has not exhausted administrative remedies, the case should be dismissed for lack of subject matter jurisdiction. | "When a party has not exhausted administrative remedies, should the case be dismissed for lack of subject matter jurisdiction?" | Pretrial Procedure - Memo # 6060 - C - AP.docx | ROSS-003316736-ROSS-003316737 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10540 | MMMG v. Seminole Tribe of Florida, 196 So. 3d 438 | 307A+554 | A motion to dismiss is a proper procedural vehicle to challenge jurisdiction based on sovereign immunity. See Houghtaling, 611 So.2d at 1236; Seminole Police Dep't v. Casadella, 478 So.2d 470 (Fla. 4th DCA 1985); see also Venetian Salami Co. v. Parthenais, 554 So.2d 499, 503 (Fla.1989) (recognizing the necessity of a "limited evidentiary hearing in order to determine the jurisdiction issue," in case involving question of personal jurisdiction). | A motion to dismiss is a proper procedural vehicle to challenge jurisdiction based on sovereign immunity. | Is a motion to dismiss a proper procedural vehicle to challenge jurisdiction based on sovereign immunity? | Pretrial Procedure - Memo # 6107 - C - KG.docx | ROSS-003329560-ROSS-003329561 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 10541 | Montgomery Trading Co. v. Cho, 193 Misc. 2d 468 | 307A+560 | Where a notice of petition fails to specify the details with respect to the place of the hearing, the petition fails "in its essential purpose of apprising respondent...that, at a stated time and place, it must appear...." See Matter of Common Council of City of Gloversville v. Town Bd. of Town of Johnstown, 144 A.D.2d 90, 536 N.Y.S.2d 881 (3rd Dept.1989). Failure to specify the "time and place of the hearing on the petition" is a jurisdictional defect requiring dismissal. Matter of Lincoln Plaza Tenants Corp. v. Dinkins, 171 A.D.2d 577, 567 N.Y.S.2d 447 (1st Dept.1991). Further, the failure to provide respondents with the information as required by the statutes deprives this court of personal jurisdiction over respondents. See Common Council of City of Gloversville v. Town Bd. of Town of Johnstown, supra at 92, 536 N.Y.S.2d 881; Ferrito v. Dickson, 148 Misc.2d 101, 559 N.Y.S.2d 627 (Civ.Ct., Richmond County 1990). Since such an omission is a defect which cannot be cured, respondents' motion is granted to the extent that this proceeding is dismissed. See Common Council of City of Gloversville v. Town Bd., supra; Tamburo v. P & C Food Markets, Inc., 36 A.D.2d 1017, 321 N.Y.S.2d 487 (4th Dept.1971); Chalfonte Realty Corp. v. Streator, Inc., 142 Misc.2d 501, 537 N.Y.S.2d 980 (Civ.Ct., N.Y. County 1989); Union Hosp. of Bronx v. Henry, 132 Misc.2d 1049, 506 N.Y.S.2d 395 (Civ.Ct., Bronx County 1986). | Failure to specify the time and place of hearing on a petition is a jurisdictional defect requiring dismissal. McKinney's CPLR 3211(a), par. 7. | Is failure to specify the time and place of hearing on a petition a jurisdictional defect requiring dismissal? | Pretrial Procedure - Memo # 6277 - C - NS.docx | ROSS-003289141-ROSS-003289142 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 10542 | Reecy v. Reecy, 132 Ill. App. 2d 1024 | 307A+726 | Upon review we can be guided only by the record and the record is barren of any information that the plaintiff voluntarily changed counsel, but on the contrary her prior counsel was granted leave to withdraw on his own motion. It is true that defendant's motion to modify the decree of divorce had been pending since February 6, 1969, and the hearing was finally scheduled for August 28, 1970, but the record reveals no delays brought about by the plaintiff. However, the fact that there had been one previous continuance does not indicate an intention to delay the administration of justice. Nor did the fact that the case was set for trial by agreement estop a party from seeking a continuance for just cause. See St. Louis & S.E. Ry. Co. v. Teters, 68 Ill. 144. While the courts are cognizant that continuances will be sought merely to delay the administration of justice they have zealously guarded the right of a party to a day in court with counsel and a jury trial when it has been conscientiously sought. Stephens v. Kasten, 383 Ill. 127, 48 N.E.2d 508; Weiss v. Berkovitz, 282 Ill.App. 502. | Fact that there has been one previous continuance does not indicate intention of party seeking second continuance to delay administration of justice. | "If there has been one previous continuance, would it indicate the intention of the party seeking a second continuance to delay administration of justice?" | 033795.docx | LEGALEASE-00142167-LEGALEASE-00142168 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 10543 | Taylor v. Margo, 508 S.W.3d 12 | 307A+554 | A plaintiff must have standing to bring a lawsuit. Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 848 (Tex.2005). A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. See Heckman v. Williamson County, 369 S.W.3d 137, 150"51 (Tex.2012); see also Thomas v. Long, 207 S.W.3d 334, 338 (Tex.2006) (a trial court properly dismisses claims over which it has no subject matter jurisdiction); Lovato, 171 S.W.3d at 849; Tex. Ass'n of Bus., 852 S.W.2d at 443. Therefore, if a plaintiff is without standing to assert one of his claims, the court lacks jurisdiction over that claim and is required to dismiss it. See Heckman, 369 S.W.3d at 150"51 (also noting that plaintiffs whole action must be dismissed for want of jurisdiction if plaintiff lacks standing to bring any of his claims); DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex.2008); Noell v. Air Park Homeowners Ass'n, Inc., 246 S.W.3d 827, 832 (Tex.App.-Dallas 2008, pet. denied). | If a plaintiff is without standing to assert one of his claims, the court lacks jurisdiction over that claim and is required to dismiss it. | "If a plaintiff lacks standing to assert one of his claims, does the court lack jurisdiction over that claim and must dismiss it?" | 033828.docx | LEGALEASE-00142722-LEGALEASE-00142723 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10544 | Kramer v. Crout, 279 S.W.2d 932 | 307A+726 | Contestants' 5th point complains of the refusal of the Trial Court to grant their second motion for continuance. This motion was predicated primarily on the desire to give C. Gordon Martin, a handwriting expert, more time to examine and analyze the will. The record reflects that the will had been withdrawn for examination by Mr. Martin. Instead of Mr. Martin appearing and testifying, contestants filed this second motion for continuance. There was no showing then or on the motion for new trial what, if anything, the handwriting expert could testify to helpful to contestants. Further, the granting or refusing of a second motion for continuance is a matter in the discretion of the Trial Court, which will not be disturbed in the absence of a clear showing of an abuse of such discretion. No such abuse is here shown. | Granting or refusing of second motion for continuance is matter in discretion of trial court, which will not be disturbed in absence of clear showing of abuse of discretion. | Would it be within the sound discretion of the court to grant or refuse a second application for a continuance? | 033857.docx | LEGALEASE-00143492-LEGALEASE-00143493 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10545 | Houston Transp. Co. v. Paine, 193 S.W. 188 | 307A+726 | A tender of witness fees is necessary in order to show diligence upon a second application for continuance. T. & P. Ry. Co. v. Hall, 83 Tex. 675, at page 679, 19 S. W. 121. It appears from the motion that the witness Fayle was sick on the day the case was called for trial, and had advised defendants of that fact; therefore it may be said that defendants cannot be charged with a want of diligence in failing to have his testimony at the trial. But we think that if it be conceded that diligence to procure the attendance of said witnesses was shown by the motion, still there was no error committed by the court in overruling the motion, because the testimony expected from said witness was immaterial to any defense that defendants had the legal right to interpose against plaintiff's right to recover in this suit. | Tender of witness fees is necessary to show diligence in an application for a second continuance to secure attendance of such witness. | Is the tender of witness fees necessary to show diligence in an application for a second continuance to secure attendance of such witness? | 033893.docx | LEGALEASE-00142254-LEGALEASE-00142255 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10546 | State Farm Fire & Cas. Co. v. Smith, 39 So. 3d 1172 | 307A+560 | Accordingly, we conclude that Rule 4(b), Ala. R. Civ. P., allows 120 days for service of process and that an action may not be dismissed for insufficient service before the expiration of the 120-day period. In this case, the trial court granted Smith's motion to dismiss for insufficient service only 77 days after the complaint had been filed. Therefore, the trial court erred in dismissing the action before the expiration of the 120-day period. | Under the rule permitting a 120-day period for service of process, an action may not be dismissed for insufficient service before the expiration of the 120-day period. Rules Civ.Proc., Rule 4(b). | "Can an action be dismissed for insufficient service before the expiration of a 120-day period, under the rule permitting the period for service of process?" | Pretrial Procedure - Memo # 6390 - C - CK.docx | ROSS-003301787-ROSS-003301788 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 10547 | Jimenez v. DeRosa, 109 Conn. App. 332 | 313+78 | The legal principles that guide our resolution of the plaintiffs' claims are equally well established. "[T]he Superior Court ... may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) Kim v. Magnotta, 249 Conn. 94, 101"102, 733 A.2d 809 (1999). "[W]hen a particular method of serving process is set forth by statute, that method must be followed.... Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction." (Citations omitted; internal quotation marks omitted.) Commissioner of Transportation v. Kahn, 262 Conn. 257, 272, 811 A.2d 693 (2003). "A proper officer serving process must comply with the provisions of [General Statutes] " 52"57(a), which require that process be served by leaving it with the defendant, or at his usual place of abode.... Abode service is not effective if it is left at an address that is not the usual address of the party to be served, and an action commenced by such improper service must be dismissed." (Citation omitted; internal quotation marks omitted.) Hibner v. Bruening, 78 Conn.App. 456, 463, 828 A.2d 150 (2003); see also Practice Book " 10"13. | Abode service of process is not effective if it is left at an address that is not the usual address of the party to be served, and an action commenced by such improper service must be dismissed. C.G.S.A. S 52-57(a); Practice Book 1998, S 10-13. | Should an action be dismissed if it was commenced by improper service of process? | Pretrial Procedure - Memo # 6426 - C - NS.docx | ROSS-003316668-ROSS-003316670 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10548 | Chris Keefe Builders v. Hazzard, 71 A.D.3d 1599 | 307A+746 | There is no dispute that courts have the discretion to issue appropriate sanctions for a party's failure to comply with a scheduling order (see Matter of SDR Holdings v. Town of Fort Edward, 290 A.D.2d 696, 697, 735 N.Y.S.2d 656; see generally Kihl v. Pfeffer, 94 N.Y.2d 118, 123, 700 N.Y.S.2d 87, 722 N.E.2d 55). We conclude, however, that plaintiff's attorney established a "lack of awareness of the deadline" in the scheduling order and good cause for the delay in seeking leave to renew (Town of Kinderhook v. Slovak, 47 A.D.3d 1093, 849 N.Y.S.2d 707). Thus, we cannot conclude that plaintiff's failure to comply with the scheduling order in a timely manner is the result of " "a deliberately evasive, misleading and uncooperative course of conduct or a determined strategy of delay that would be deserving of the most vehement condemnation" " (Altu v. Clark, 20 A.D.3d 749, 751, 798 N.Y.S.2d 775; see Pangea Farm, Inc. v. Sack, 51 A.D.3d 1352, 1354, 858 N.Y.S.2d 477; cf. O'Brien v. Occidental Chem. Corp. [appeal No. 3], 266 A.D.2d 915, 698 N.Y.S.2d 200). "Weighed against the merits of the claim and the lack of prejudice to defendants, [any] neglect [on the part of plaintiff's attorney] is inconsequential" (Ball v. Sano, 282 A.D.2d 330, 331, 723 N.Y.S.2d 644). | Courts have the discretion to issue appropriate sanctions for a party's failure to comply with a scheduling order. | Do courts have the discretion to issue appropriate sanctions for a party's failure to comply with a scheduling order? | Pretrial Procedure - Memo # 6437 - C - AP.docx | ROSS-003289689-ROSS-003289690 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 10549 | Lunding v. New York Tax Appeals Tribunal, 522 U.S. 287 | 371+2005 | Because state legislatures must draw some distinctions in light of "local needs," they have considerable discretion in formulating tax policy. Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). Thus, "where the question is whether a state taxing law contravenes rights secured by [the Federal Constitution], the decision must depend not upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed." Shaffer, supra, at 55, 40 S.Ct., at 226; see also St. Louis Southwestern R. Co. v. Arkansas, 235 U.S. 350, 362, 35 S.Ct. 99, 102, 59 L.Ed. 265 (1914) ("[W]hen the question is whether a tax imposed by a State deprives a party of rights secured by the Federal Constitution, .. [w]e must regard the substance, rather than the form, and the controlling test is to be found in the operation and effect of the law as applied and enforced by the State"). In short, as this Court has noted in the equal protection context, "inequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a [tax] system that is not arbitrary in its classification, are not sufficient to defeat the law." Maxwell, supra, at 543, 40 S.Ct., at 7. | State legislatures must draw some distinctions in light of local needs, and they therefore have considerable discretion in formulating tax policy; thus, where question is whether state taxing law contravenes rights secured by Federal Constitution, decision must depend not upon any mere question of form, construction, or definition, but upon practical operation and effect of tax imposed. | Do the State legislatures have considerable discretion in formulating tax policy? | Taxation - Memo # 496 - C - SKG.docx | ROSS-003290167-ROSS-003290168 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10550 | Revenue Cabinet v. Estate of Field, 864 S.W.2d 930 | 371+3302 | Ad valorem taxes are clearly distinguishable from inheritance taxes: the former are direct taxes on property based upon the value of the property, while the latter are taxes imposed not on property, but upon the privilege or right of succession thereto. Because this is a case involving an inheritance, or excise tax, Section 172A, which limits the applicability of Sections 171, 172 and 174 and which deals exclusively with ad valorem taxes, simply does not apply. | "Ad valorem taxes" are direct taxes on property based upon value of property, while "inheritance taxes" are imposed not on property, but upon privilege or right of succession thereto. | "Is an ""ad valorem tax"" direct tax on property based upon value of property?" | 045569.docx | LEGALEASE-00142219-LEGALEASE-00142220 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 10551 | State ex rel. Tillman v. Dist. Court of Tenth Judicial Dist. in & for Fergus Cty., 101 Mont. 176 | 371+2005 | While our Constitution deals with the subject of taxation, its provisions in this regard constitute a limitation upon the legislative power and not a grant of power, as the power is inherent in the sovereign state. McCulloch v. Maryland, 4 Wheat. 316, 428, 4 L.Ed. 607. The power of taxing officials exists only by virtue of the statutes empowering them to act. 26 R.C.L. 25. The purpose of taxation is to raise the necessary revenue for the support of the government and the consequent security of the people in the possession of their property. Cruse v. Fischl, 55 Mont. 258, 175 P. 878. A tax is an enforced contribution from the people for this purpose, in accordance with some reasonable rule of apportionment equalizing the burdens upon the people benefited. State ex rel. Pierce v. Gowdy, 62 Mont. 119, 203 P. 1115. | Constitutional provisions with regard to taxation constitute limitation upon legislative power and not grant of power, since such power is inherent in sovereign state. | Do Constitutional provisions with regard to taxation constitute limitation on legislative power rather than grant of power? | Taxation - Memo # 667 - C - KBM.docx | ROSS-003303584-ROSS-003303585 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10552 | State ex rel. Vill. of Leipsic v. Moenter, 99 Ohio St. 110 | 371+2060 | By the language of the statute it will be seen that the latter is not only an assessment in expressed terms, but is so in fact, and based upon proportional benefits to the real estate, while the former, the levy upon the grand duplicate of the county upon the taxable property of the township, is made irrespective of whether benefit accrues or not, and is upon the entire property of the township, both real and personal. The distinctionbetween the two is well stated in the first proposition of the syllabus in Lima v. Cemetery Association, 42 Ohio St. 128, 51 Am. Rep. 809, which is as follows:"In a general sense, a tax is an assessment, and an assessment is a tax; but there is a well-recognized distinctionbetween them, an assessment being confined to local impositions upon property for the payment of the cost of public improvements in its immediate vicinity, and levied with reference to specialbenefits to the property assessed." | In a general sense a tax is an "assessment" and an assessment is a "tax," but there is a well-recognized distinction between them, an assessment being confined to local imposition upon property to pay cost of public improvement in its immediate vicinity, and levied with reference to special benefits to property assessed. | "Is there a distinction between a ""tax"" and an ""assessment""?" | 045587.docx | LEGALEASE-00142467-LEGALEASE-00142468 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 10553 | Centorino v Tewksbury Twp., 18 N.J. Tax 303 | 371+2060 | Inherent in local property tax law is the principle espoused by our Supreme Court that "[i]n dealing with the public, government must "turn square corners." " F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426, 495 A.2d 1313 (1985). In balancing the equities, the fault was clearly on the part of the municipality while the taxpayer did nothing wrong. As a result of the assessor's failure to correct his tax assessment list prior to the issuance of the Chapter 75 notices even though he had actual knowledge of the purchase, the taxpayer did not timely receive a notice of her 1998 assessment, which the Legislature felt was important enough to mandate by statute. Consequently, she did not file an appeal by April 1, 1998. | Inherent in local property tax law is principle that, in dealing with the public, government must turn square corners. | "Must the government ""turn square corners"", when dealing with the public regarding tax disputes?" | Taxation - Memo # 676 - C - KBM.docx | ROSS-003303586-ROSS-003303587 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10554 | Alabama Warehousing Co. v. State, 227 Ala. 258 | 371+2005 | The power to tax for revenue is an attribute of sovereignty, and Congress had no authority by the exercise of the police power to impinge or destroy such power inherent in the state over legitimate subjects of taxation within its jurisdiction. To concede such power would make the continued existence of the state depend upon the will of Congress. State v. Wright, 224 Ala. 357. 140 So. 584. No such authority has ever been granted to or assumed by Congress. Western Union Tel. Co. v. City of Decatur, 16 Ala. App. 679, 81 So. 199; Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am. St. Rep. 143; Postal Telegraph Cable Co. v. City Council of Charleston, 153 U. S. 692, 14 S. Ct. 1094, 38 L. Ed. 871. | Congress cannot, by exercise of police power, impinge or destroy state's power over legitimate subjects of taxation within its jurisdiction. | Can the police power of congress destroy the state's power of taxation within its jurisdiction? | 10071.docx | LEGALEASE-00096198-LEGALEASE-00096199 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10555 | Cassinos v. Union Oil Co., 14 Cal. App. 4th 1770 | 260+51(1) | In particular, causing subsurface migration of fluids into a mineral estate without consent constitutes a trespass. (See generally Tidewater Oil Company v. Jackson (10th Cir.1963) 320 F.2d 157, 163, holding oil and gas lessee liable for intentional, non-consensual flooding operations which caused damage to neighbor's lease; see also Hancock Oil Co. v. Meeker"Garner Oil Co. (1953) 118 Cal.App.2d 379, 257 P.2d 988, holding that slant drilling which drains a pool of oil owned by another on adjacent parcel constitutes subsurface trespass.) | Causing subsurface migration of fluids into a mineral estate without consent constitutes trespass. | Can causing subsurface migration of fluids into a mineral estate without consent constitute a trespass? | 047424.docx | LEGALEASE-00142616-LEGALEASE-00142617 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10556 | Dallas v. Cips, 402 Ill. App. 3d 307 | 413+2 | "Proceedings under the Workers' Compensation Act are purely statutory, and courts can obtain jurisdiction only in the manner provided by that Act." Beasley v. Industrial Comm'n, 198 Ill.App.3d 460, 464, 144 Ill.Dec. 653, 555 N.E.2d 1172, 1174 (1990); see also Kavonius v. Industrial Comm'n, 314 Ill.App.3d 166, 169, 247 Ill.Dec. 279, 731 N.E.2d 1287, 1290 (2000) (noting that circuit courts exercise special statutory jurisdiction in workers' compensation proceedings and strict compliance with the statute is required to vest the court with subject-matter jurisdiction). Section 19(g) of the Act gives circuit courts the authority to render judgment in accordance with an award or decision of the Commission when a certified copy of the decision is presented to the court. Ahlers v. Sears, Roebuck Co., 73 Ill.2d 259, 264, 22 Ill.Dec. 731, 383 N.E.2d 207, 209 (1978). Section 19(g) provides as follows: "Except in the case of a claim against the State of Illinois, either party may present a certified copy of the award of the [a]rbitrator, or a certified copy of the decision of the Commission when the same has become final, when no proceedings for review are pending, providing for the payment of compensation according to this Act, to the Circuit Court of the county in which such accident occurred or either of the parties are residents, whereupon the court shall enter a judgment in accordance therewith. In a case where the employer refuses to pay compensation according to such final award or such final decision upon which such judgment is entered[,] the court shall in entering judgment thereon, tax as costs against him the reasonable costs and attorney fees in the arbitration proceedings and in the court entering the judgment for the person in whose favor the judgment is entered, which judgment and costs taxed as herein provided shall, until and unless set aside, have the same effect as though duly entered in an action duly tried and determined by the court, and shall with like effect, | Proceedings under the Workers' Compensation Act are purely statutory, and courts can obtain jurisdiction only in the manner provided by that Act. S.H.A. 820 ILCS 305/19(g). | "Are proceedings under the Workers Compensation Act purely statutory, and how can courts obtain jurisdiction?" | 048019.docx | LEGALEASE-00143332-LEGALEASE-00143333 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 10557 | Curtis v. G.E. Capital Modular Space, 155 S.W.3d 877 | 413+2 | The right to workers' compensation benefits is a unique concept in the law, derived solely from statutory provisions rather than from the common law. | The right to workers' compensation benefits is a unique concept in the law, derived solely from statutory provisions, rather than from the common law. | "Are workers compensation benefits a unique concept, and where is it solely derived from?" | 048134.docx | LEGALEASE-00142088-LEGALEASE-00142089 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 10558 | Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156 | 25T+178 | It is true that "waiver of arbitration is not to be lightly inferred," PPG Indus., 128 F.3d at 107 (quotation marks omitted). But a litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the District Court. See Welborn Clinic v. MedQuist, Inc., 301 F.3d 634, 637 (7th Cir.2002) ("[W]e do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration."). Because of the delay and expense incurred between LSED's commencement of its lawsuit and its motion to compel arbitration, and because of the procedural and substantive prejudice MLPFS would face if it were forced to arbitrate LSED's claims, we hold that LSED waived its arbitration rights. | A litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the district court. | Can litigants use arbitration as a means of aborting a suit that does not proceed as planned in court? | Alternative Dispute Resolution - Memo 686 - RK.docx | ROSS-003290736-ROSS-003290737 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10559 | Cabinetree of Wisconsin v. Kraftmaid Cabinetry, 50 F.3d 388 | 25T+182(1) | Our decision in St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co., 969 F.2d 585 (7th Cir.1992), establishes four principles that frame our analysis in this case: 1. Review of a finding that a party has waived its contractual right to invoke arbitration is for clear error only; it is not plenary. 2. Such a waiver can be implied as well as express. 3. In determining whether a waiver has occurred, the court is not to place its thumb on the scales; the federal policy favoring arbitration is, at least so far as concerns the interpretation of an arbitration clause, merely a policy of treating such clauses no less hospitably than other contractual provisions. 4. To establish a waiver of the contractual right to arbitrate, a party need not show that it would be prejudiced if the stay were granted and arbitration ensued. | To establish waiver of contractual right to arbitrate, party need not show that it would be prejudiced if stay were granted and arbitration ensued. | Does a party have to show prejudice to establish a waiver of the contractual right to arbitrate? | 007699.docx | LEGALEASE-00144814-LEGALEASE-00144815 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10560 | White v. Sunoco Inc., 189 F. Supp. 3d 486 | 25T+182(1) | Finally, estoppel does not require Plaintiff to arbitrate his dispute with Sunoco. Under the "alternative estoppel" theory, a non-signatory may seek enforcement when it can show: 1) there is a close relationship between it and a signatory; and 2) the alleged wrongs are related to a non-signatory's contractual obligations and duties. See DuPont, 269 F.3d at 199 (citing Thomson"CSF, S.A. v. American Arbitration Assoc., 64 F.3d 773, 778 (2d Cir.1995)). To satisfy the second prong, the moving party must show that the claims are "intimately founded in and intertwined with the underlying contract obligations." See id.; Miron, 342 F.Supp.2d at 333 ("The more appropriate theory of estoppel in this case is "alternative estoppel," which will bind a signatory to arbitrate at a non-signatory's insistence."). Courts will also invoke estoppel to "prevent a [non-signatory"]...from relying on [a] contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration." Aluminium Bahrain B.S.C., 17 F.Supp.3d at 470; cf. DuPont, 269 F.3d at 199 (describing how, in the inverse, "courts have held non-signatories to an arbitration clause where the non-signatory knowingly exploits the agreement"). Neither theory applies here. | For the alleged wrongs to be related to a non-signatory's contractual obligations and duties, as required to apply the "alternative estoppel" theory for a non-signatory third-party to compel arbitration against a signatory, the moving party must show that the claims are intimately founded in and intertwined with the underlying contract obligations. | What is alternative estoppel theory? | Alternative Dispute Resolution - Memo 698 - RK.docx | ROSS-003301933-ROSS-003301935 | Condensed, Order, SA | 0.73 | 1 | 1 | 0 | 1 | 1 |
| 10561 | Noble Drilling Servs. v. Certex USA, 620 F.3d 469 | 25T+182(1) | Courts have applied direct benefits estoppel to bind a non-signatory to an arbitration agreement when the non-signatory knowingly exploits the contract containing the arbitration clause and obtains a direct benefit from that contract. See Hellenic, 464 F.3d at 517"18 (stating that direct benefits estoppel applies to non-signatories who knowingly embrace and exploit a contract for their benefit). To satisfy the knowledge requirement, the case law requires that the non-signatory have had actual knowledge of the contract containing the arbitration clause. See Hellenic, 464 F.3d at 515"16, 519 (applying direct benefits estoppel to a non-signatory that knew of the contract to which it was later bound); Bridas, 345 F.3d at 361"62; see also Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1064 (2d Cir.1993) (finding that a non-signatory was bound when it received a copy of the agreement containing an arbitration clause). | For direct benefits estoppel to bind a non-signatory to an arbitration agreement, the non-signatory must have had actual knowledge of the contract containing the arbitration clause. | Does the non-signatory need to have actual knowledge of the contract containing the arbitration clause to satisfy the knowledge requirement for direct benefits estoppel? | 007743.docx | LEGALEASE-00145005-LEGALEASE-00145006 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10562 | United States v. Turner, 421 F.2d 1251 | 34+20.8(1) | More than a decade ago this court laid down the principle that "Registrants are not to be treated as though they were engaged in formal litigation assisted by counsel." United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3 Cir. 1953). Applying this principle the courts have held that when a registrant indicates, no matter how unclearly, a desire for a procedural right, it is the duty of the board to construe it in favor of the registrant and if need be to obtain clarification from him. The supply to a registrant of a requested Form 150 is a mandatory duty of the board and the failure to perform this duty will vitiate a conviction for failure to report for induction. Here the failure of the board to provide defendant with a new Form 150 did not follow from a specific request, but the circumstances which were made known to the board required it to treat the case in the same manner as if a specific request had been made. | It is mandatory duty of draft board to supply registrant with requested form for making claim for conscientious objector status, and failure to perform such duty will vitiate conviction for failure to report for induction. | Is supplying registrants with requested forms a mandatory duty of the board? | Armed Services - Memo 264 - RK.docx | ROSS-003288520-ROSS-003288521 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 10563 | United States v. Goodman, 439 F.2d 810 | 34+20.8(1) | The purpose of a medical interview is to screen and disqualify those registrants who have obvious physical defects. 32 C.F.R. " 1628.1. The right to a medical interview at the registrant's request only exists before the registrant has had an Armed Forces physical examination. Operations Memorandum No. 327; United States v. Smith, 423 F.2d 559 (9th Cir. 1970). | Purpose for a medical interview of selective service registrant is to screen and disqualify those registrants who have obvious physical defects, and right to a medical interview at registrant's request only exists before registrant has had an armed forces physical examination. | Does the right to a medical interview at the registrant's request exist before the registrant has had an Armed Forces physical examination? | Armed Services - Memo 276 - RK.docx | ROSS-003290801-ROSS-003290802 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10564 | United States v. Terry, 707 F.3d 607 | 63+1(1) | That a bribe doubles as a campaign contribution does not by itself insulate it from scrutiny. No doubt, a contribution is more likely to be a duty-free gift than a bribe because a contribution has a legitimate alternative explanation: The donor supports the candidate's election for all manner of possible reasons. See Buckley v. Valeo, 424 U.S. 1, 21, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). But the prosecution may rebut that alternative explanation, and context may show that an otherwise legitimate contribution is a bribe. Take Evans. In that case, the Court permitted a jury to convict a state legislator who attempted to claim the payment he received was a campaign contribution. See 504 U.S. at 257"59, 112 S.Ct. 1881. Take as well the Fifth Circuit's decision in Whitfield. Two state judges argued that the loan guarantees they received were made in the context of their electoral campaigns and thus required special protection, but the court upheld a finding that the payments were bribes. 590 F.3d at 353. If an official receives money "through promises to improperly employ his public influence," he has accepted a bribe. Abbey, 560 F.3d at 519. A donor who gives money in the hope of unspecified future assistance does not agree to exchange payments for actions. No bribe thus occurs if the elected official later does something that benefits the donor. On the other hand, if a donor (like Russo) makes a contribution so that an elected official will "do what I asked him to do," 2 Trial Tr. 290, and the official (like Terry) accepts the payment with the same understanding, the donor and the official have formed a corrupt bargain. That agreement marks the difference between a run-of-the-mine contribution and a bribe. | If a public official receives money through promises to improperly employ his public influence, he has accepted a bribe. 18 U.S.C.A. S 201(b)(2). | "If a public official receives money through promises to improperly employ his public influence, has he accepted a bribe?" | 012223.docx | LEGALEASE-00143810-LEGALEASE-00143811 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 10565 | Hearts With Haiti v. Kendrick, 192 F. Supp. 3d 181 | 135+1 | Here, the crucial question is domicile, which must be determined from the time the suit was filed. Padilla"Mangual, 516 F.3d at 31 (citations omitted). "Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence." Garc"a P"rez, 364 F.3d at 350 (citing Bank One, 964 F.2d at 50). "A person's domicile "is a place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning."" Padilla"Mangual, 516 F.3d at 31 (quoting Rodr"guez"D"az v. Sierra"Mart"nez, 853 F.2d 1027, 1029 (1st Cir.1988)). Significantly, "[w]hile a person may have more than one residence, he can only have one domicile." One Bank, 964 F.2d at 53; see also Valent"n v. Hosp. Bella Vista, 254 F.3d 358, 366 (1st Cir.2001) ("A party only can have one domicile at a time") (citing Bank One, 964 F.2d at 53). There are two requirements for domicile: (1) "physical presence in a place" and (2) "the intent to make that place one's home." Valent"n, 254 F.3d at 366 (citing Rodr"guez"D"az, 853 F.2d at 1029). | A person's domicile is a place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning. | "Is a person's domicile a place where he has his true, fixed home and principal establishment?" | Domicile - Memo # 23 - C - SA.docx | ROSS-003300891-ROSS-003300892 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 10566 | Padilla-Mangual v. Pavia Hosp., 516 F.3d 29 | 135+1 | Federal jurisdiction based on diversity of citizenship requires that the matter in controversy be between citizens of different states. 28 U.S.C. " 1332(a)(1) (2006). For purposes of diversity, a person is a citizen of the state in which he is domiciled. Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir.1991); Rodr"guez"D"az v. Sierra"Mart"nez, 853 F.2d 1027, 1029 (1st Cir.1988); Valed"n Mart"nez v. Hospital Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir.1986). "A person's domicile "is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning."" Rodr"guez"D"az, 853 F.2d at 1029 (quoting Charles Allen Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure " 3612 (2d ed.1984)). Domicile is determined as of the time the suit is filed. Lundquist, 946 F.2d at 10; Valed"n Mart"nez, 806 F.2d at 1132; Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir.1979). | Person's domicile is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning. 28 U.S.C.A. S 1332(a)(1). | "Is a person's domicile a place where he has his true, fixed home and principal establishment?" | 014498.docx | LEGALEASE-00144441-LEGALEASE-00144442 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 10567 | Altman v. Blake, 712 S.W.2d 117 | 260+55(2) | There are five essential attributes of a severed mineral estate: (1) the right to develop (the right of ingress and egress), (2) the right to lease (the executive right), (3) the right to receive bonus payments, (4) the right to receive delay rentals, (5) the right to receive royalty payments. R. Hemmingway, Law of Oil and Gas "" 2.1"2.5 (1971). By its express terms, the 1938 Blake deed reserves to the grantor attributes (2) and (4): the right to lease and the right to receive rentals. | Five essential attributes of severed mineral estate are right to develop, right to lease, right to receive bonus payments, right to receive delay rentals, and right to receive royalty payments. | what are the five essential attributes of a mineral estate? | 021494.docx | LEGALEASE-00145027-LEGALEASE-00145028 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 10568 | Sivigliano v. Harrah's N. Kansas City Corp., 188 S.W.3d 46 | 302+370 | We disagree. In Missouri, a "pleading that sets forth a claim for relief ... shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief[.]" Rule 55.05. "The purpose of fact-pleading is to present, define[,] and isolate the controverted issues so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits. The pleadings limit and define the issues of the case." Luethans v. Wash. Univ., 894 S.W.2d 169, 171"72 (Mo. banc 1995) (citations and internal quotation marks omitted). However, to satisfy Rule 55.05, the pleading need not label the plaintiff's theory of recovery. Empiregas, Inc. of Rolla v. Whitson, 902 S.W.2d 347, 348 (Mo.App.1995). To survive a motion to dismiss, Sivigliano "must plead ... the elements of a cause of action under an exception to the employment-at-will doctrine." Adolphsen, 907 S.W.2d at 335 (Mo.App.1995). In Adolphsen the plaintiff, a corporate pilot, alleged that he was fired for whistle-blowing about Hallmark's violation of unspecified FAA regulations. Id. There we held that "the specific facts on which liability is based must be pleaded with particularity" where the defendant's actions fall within a category generally not considered actionable such as discharge of an at-will employee. Id. at 338. | The purpose of fact-pleading is to present, define, and isolate the controverted issues so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits; the pleadings limit and define the issues of the case. V.A.M.R. 55.05. | "Does fact-pleading present, define and isolate the contested issues?" | 023524.docx | LEGALEASE-00144423-LEGALEASE-00144424 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10569 | Texas Educ. Agency v. Am. YouthWorks, 496 S.W.3d 244 | 307A+554 | If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. If the pleadings affirmatively negate the existence of jurisdiction, we may render judgment dismissing the plaintiff case without an opportunity to amend. | If the pleadings affirmatively negate the existence of jurisdiction, court may grant plea to the jurisdiction and render judgment dismissing the plaintiffs' case without an opportunity to amend. | Should the suit be dismissed if pleadings or record affirmatively negate the existence of jurisdiction? | 032912.docx | LEGALEASE-00143814-LEGALEASE-00143815 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 10570 | Coast to Coast Mktg. Co. v. G & S Metal Prod. Co., 130 Ariz. 506 | 307A+683 | Arizona courts are authorized to exercise personal jurisdiction over nonresident defendants who have "caused an event to occur in this state out of which the claim which is the subject of the complaint arose." Northern Propane Gas Co. v. Kipps, 127 Ariz. 522, 622 P.2d 469 (1981). When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff, or in this case appellant, has the burden of establishing that such jurisdiction is proper. Pegler v. Sullivan, 6 Ariz.App. 338, 432 P.2d 593 (1967); Maloof v. Raper Sales, Inc., 113 Ariz. 485, 557 P.2d 522 (1976). When reviewing the grant of a motion to dismiss, we will look at the pleadings and affidavits in support of and in opposition to the motion. Maloof v. Raper Sales, Inc., supra. Having done so, we hold that the trial court did not err in granting appellees' motion. | When defendant moves to dismiss complaint for lack of personal jurisdiction, plaintiff has burden of establishing that such jurisdiction is proper. | "Once the defendant has moved for dismissal for lack of jurisdiction, does the plaintiff have the burden of establishing that jurisdiction is proper?" | 033103.docx | LEGALEASE-00144067-LEGALEASE-00144068 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10571 | City of W. St. Paul v. Krengel, 748 N.W.2d 333 | 307A+554 | A case is moot if there is no justiciable controversy. Kahn v. Griffin, 701 N.W.2d 815, 821 (Minn.2005); State ex rel. Sviggum v. Hanson, 732 N.W.2d 312, 321 (Minn.App.2007). A justiciable controversy is one that "involves definite and concrete assertions of right," J.V., 741 N.W.2d at 614, and "allows for specific relief by a decree or judgment of a specific character as distinguished from an advisory opinion predicated on hypothetical facts," Sviggum, 732 N.W.2d at 321 (citing Holiday Acres No. 3 v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis, 271 N.W.2d 445, 447 (Minn.1978)). Appellate courts "decide only actual controversies and avoid advisory opinions." In re McCaskill, 603 N.W.2d 326, 327 (Minn.1999). Thus, when there is "no injury that a court can redress, the case must be dismissed for lack of justiciability," except in certain "narrowly-defined circumstances." Sviggum, 732 N.W.2d at 321. | When there is no injury that a court can redress, the case must be dismissed for lack of justiciability, except in certain narrowly-defined circumstances. | "When there is no injury that a court can redress, must the case be dismissed for lack of justiciability?" | 033237.docx | LEGALEASE-00144460-LEGALEASE-00144461 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10572 | Krinitt v. Idaho Dep't of Fish & Game, 398 P.3d 158 | 307A+746 | "Upon motion or on its own initiative, the district court may impose sanctions for failure to obey a scheduling or pre-trial order." McKim v. Horner, 143 Idaho 568, 571, 149 P.3d 843, 846 (2006) (citing I.R.C.P. 16(i)). Such sanctions "shall require the party or the attorney representing him or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees...." I.R.C.P. 16(i). "It is within the district court's discretion whether to impose such sanctions, and we will not overturn such a decision absent a manifest abuse of that discretion." Lepper, 160 Idaho at 109, 369 P.3d at 887. | Upon motion or on its own initiative, a district court may impose sanctions for failure to obey a scheduling or pretrial order. Idaho R. Civ. P. 16(i) (2015). | Can courts impose sanctions for a party's failure to obey a scheduling or pretrial order? | Pretrial Procedure - Memo # 6143 - C - AP.docx | ROSS-003329576-ROSS-003329577 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 10573 | Giemme USA v. La Sala Grp., 92 So. 3d 920 | 307A+746 | This record demonstrates neither the extreme misconduct by the defendants nor the express findings of a trial court required to support the severe relief granted as a result of the defendants' non-attendance at the case management conference. If a party fails to attend a noticed case management conference, "the court may dismiss the action, strike the pleadings, limit proof or witnesses, or take any other appropriate action." Fla. R. Civ. P. 1.200(c). "A finding that the party's conduct was willful and contumacious is necessary for entering a default under rule 1.200(c)." Zeigler v. Huston, 626 So.2d 1046, 1047 (Fla. 4th DCA 1993) (citations omitted). The trial court must make the finding in the subject order; failure to do so constitutes reversible error. See Townsend v. Feinberg, 659 So.2d 1218, 1219 (Fla. 4th DCA 1995). "[N]o "magic words' are required but rather only a finding that the conduct upon which the order is based was equivalent to willfulness or deliberate disregard." Commonwealth Fed. Sav. & Loan Ass'n v. Tubero, 569 So.2d 1271, 1273 (Fla.1990). The trial court's finding must be supported by the record. See Bank One, N.A. v. Harrod, 873 So.2d 519, 521 (Fla. 4th DCA 2004). | To order a default based on a party's failure to attend a case management conference, the court must find in its order that the party's conduct was willful and contumacious, and the failure to do so constitutes reversible error. West's F.S.A. RCP Rule 1.200(c). | Is a finding that the party's conduct was willful and contumacious necessary for entering a default based on the party's failure to attend a case management conference? | Pretrial Procedure - Memo # 6157 - C - PC.docx | ROSS-003289584-ROSS-003289585 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 10574 | Israel v. Flick Mortg. Inv'rs, 23 So. 3d 1196 | 307A+560 | Even if the manner of service of process is a defense to recognition and enforcement of a foreign money-judgment under section 55.605, we nonetheless would reverse the order on appeal because Flick waived the defense through its actions in the Israeli proceedings. When the plaintiffs initiated the underlying action against Flick in the Israeli court, Flick challenged only the foreign court's exercise of personal jurisdiction over it for reasons wholly unrelated to any claim that service of process by registered mail was insufficient. Claims of lack of personal jurisdiction are, of course, not the same as a claim that service of process is insufficient: A motion to dismiss for lack of jurisdiction based on insufficiency of service of process lies when the service effected does not comport with the requirements of the statute pertaining to the manner in which such service is to be effected. P.S.R. Associates v. Artcraft-Heath, 364 So.2d 855 (Fla. 2d DCA 1978). A motion to dismiss based on lack of jurisdiction over the person lies when the service effected ... although proper in manner, is not authorized by [a statute] which confers jurisdiction. | A motion to dismiss based on lack of jurisdiction over the person lies when the service of process effected, although proper in manner, is not authorized by a statute that confers jurisdiction. | "Does a court lack jurisdiction over a defendant, where there is no valid service of process?" | 033586.docx | LEGALEASE-00143784-LEGALEASE-00143785 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10575 | Jimenez v. DeRosa, 109 Conn. App. 332 | 313+78 | The legal principles that guide our resolution of the plaintiffs' claims are equally well established. "[T]he Superior Court ... may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) Kim v. Magnotta, 249 Conn. 94, 101"102, 733 A.2d 809 (1999). "[W]hen a particular method of serving process is set forth by statute, that method must be followed.... Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction." (Citations omitted; internal quotation marks omitted.) Commissioner of Transportation v. Kahn, 262 Conn. 257, 272, 811 A.2d 693 (2003). "A proper officer serving process must comply with the provisions of [General Statutes] " 52"57(a), which require that process be served by leaving it with the defendant, or at his usual place of abode.... Abode service is not effective if it is left at an address that is not the usual address of the party to be served, and an action commenced by such improper service must be dismissed." (Citation omitted; internal quotation marks omitted.) Hibner v. Bruening, 78 Conn.App. 456, 463, 828 A.2d 150 (2003); see also Practice Book " 10"13. For service pursuant to " 52"57(a), the "usual place of abode" presumptively is the defendant's home at the time when service is made. | Abode service of process is not effective if it is left at an address that is not the usual address of the party to be served, and an action commenced by such improper service must be dismissed. C.G.S.A. S 52-57(a); Practice Book 1998, S 10-13. | Should an action commenced by improper service be dismissed? | Pretrial Procedure - Memo # 6165 - C - AP.docx | ROSS-003303281-ROSS-003303282 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 10576 | Moyers v. Moyers, 284 S.W.3d 182 | 307A+554 | However, the trial court should have dismissed the cause without prejudice. Missouri Soybean, 102 S.W.3d at 29. No prejudice attaches when a court dismisses an action because it lacks jurisdiction. See id. And a dismissal based on forum non conveniens is necessarily a dismissal without prejudice. Chandler, 163 S.W.3d at 548. We enter such judgment as the court ought to have given and modify the judgment of dismissal so that it is without prejudice. Rule 84.14; Missouri Soybean, 102 S.W.3d at 29; Chandler, 163 S.W.3d at 548. | No prejudice attaches when a court dismisses an action because it lacks jurisdiction; and a dismissal based on forum non conveniens is necessarily a dismissal without prejudice. | Does prejudice attach when a court dismisses an action because it lacks jurisdiction? | 033877.docx | LEGALEASE-00143796-LEGALEASE-00143797 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 10577 | TBF Fin. v. Houston, 298 Ga. App. 657 | 228+17(1) | TBF argues that Houston waived any defense as to defective service by failing to file a traverse or any other response to the affidavit of garnishment. "Garnishment proceedings are governed by the pleading and practice provisions of the Civil Practice Act ["CPA"]. OCGA " 18"4"1." (Citation and punctuation omitted.) St. Paul Reinsurance Co. v. Ross, 276 Ga.App. 135, 143(2), 622 S.E.2d 374 (2005). And TBF is correct that under the CPA, the failure to file a responsive pleading raising a defect in service waives any defense on that ground. See Sidwell v. Sidwell, 237 Ga.App. 716, 717(1), 515 S.E.2d 634 (1999); Taylor v. Bentley, 166 Ga.App. 887(1), 305 S.E.2d 617 (1983). But even under the CPA, "[w]here there has been no legal service on the defendant and no waiver of service, the court has no jurisdiction to enter any judgment in the case unless it be one dismissing the case for lack of jurisdiction." (Citation omitted.) De Jarnette Supply Co. v. F.P. Plaza, Inc., 229 Ga. 625(2), 193 S.E.2d 852 (1972). See also Denny v. Croft, 195 Ga.App. 871, 872(2), 395 S.E.2d 72 (1990) ("In the absence of proper service, no jurisdiction over the defendant is obtained by the court."). | The failure to file a responsive pleading raising a defect in service waives any defense on that ground; however, where there has been no legal service on the defendant and no waiver of service, the court has no jurisdiction to enter any judgment in the case unless it be one dismissing the case for lack of jurisdiction. West's Ga.Code Ann. S 18-4-1. | Does the failure to file a responsive pleading raising a defect in service waive any defense on that ground? | 034194.docx | LEGALEASE-00144718-LEGALEASE-00144719 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 10578 | State ex rel. Armstrong v. McNoughton, 183 La. 697 | 307A+726 | It appears to us also that it was impossible for the father to get ready for the trial within the time allowed him, as all his witnesses, as well as necessary court records and documents, were in the state of Texas several hundred miles away. Additional time was granted to Mr. and Mrs. McNoughton from the 14th to the 19th, but they are not the real parties at interest. The father, who lost no time after being notified of the proceedings, arrived at Minden only two days before the date set for the hearing. He had to consult counsel, who needed some time to prepare his intervention and answer. Neither respondent nor counsel appear to have been guilty of laches. | In mother's proceeding to obtain custody of child from persons into whose custody she was placed by father who was awarded custody by Texas juvenile court, refusal to grant further time to procure court records, affidavits, and testimony from Texas after continuance had once been granted to enable father to appear held error, where father did not bring child to Louisiana to place it beyond reach of mother or to evade processes of Texas courts and it was impossible for father to get ready for trial within time allowed. Code Prac. art. 468. | "Will the court grant additional time to get ready for the trial as all witnesses, court records and documents, were in another State?" | 034377.docx | LEGALEASE-00144051-LEGALEASE-00144052 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 10579 | Virginia Dep't of State Police v. Elliott, 48 Va. App. 551 | 307A+552 | Advisory opinions represent an attenuate exercise of judicial power, one in which the Virginia judiciary "traditionally declines to participate." v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998). We see it as our duty "not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Hankins v. Town of Virginia Beach, 182 Va. 642, 644, 29 S.E.2d 831, 832 (1944) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)). So, when it appears (as all concede it does here) thatthere is no actual controversy between the litigants, or that, if it once existed it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case. It is not the office of courts to give opinions on abstract propositions of law, or to decide questions upon which no rights depend, and where no relief can be afforded. Only real controversies and existing rights are entitled to invoke the exercise of their powers. Id. at 643-44, 29 S.E.2d at 832 (quoting Franklin v. Peers, 95 Va. 602, 603, 29 S.E. 321, 321 (1898)); see also Najera v. Chesapeake Div. of Soc. Servs., 48 Va.App. 237, 629 S.E.2d 721 (2006); Baldwin v. Commonwealth, 43 Va.App. 415, 421, 598 S.E.2d 754, 757 (2004) | When it appears that there is no actual controversy between the litigants, or that, if it once existed it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case. | What should a court do when it appears that there is no actual controversy between the litigants? | Pretrial Procedure - Memo # 6715 - C - SK.docx | ROSS-003302802-ROSS-003302803 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10580 | Palmer v. Hofman, 745 N.W.2d 745 | 307A+560 | Rule 1.302(5) "requires service within ninety days and requires the plaintiff to take affirmative action to obtain an extension or directions from the court if service cannot be accomplished." Meier v. Senecaut, 641 N.W.2d 532, 543 (Iowa 2002) (emphasis added). When there is no service within ninety days and no order extending the time for service, the delay is presumptively abusive. Id. at 542. Once a determination of good cause has been accepted or rejected, the district court has no discretion and is required to either extend the time for service for an appropriate period or dismiss the action without prejudice. Id. at 541-42. The sole issue before this court is whether substantial evidence supports the district court's conclusion that Palmer demonstrated good cause for the delay in service. Id. | When there is no service within 90 days after filing of the petition and no order extending the time for service, the delay is presumptively abusive under rule providing for dismissal for failure to timely serve original notice. I.C.A. Rule 1.302(5). | "When there is no service within ninety days after filing of the petition and no order extending the time for service, is the delay presumptively abusive?" | Pretrial Procedure - Memo # 6740 - C - SK.docx | ROSS-003302818-ROSS-003302819 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10581 | Roehrdanz v. Brill, 668 N.W.2d 217 | 307A+560 | Minn. R. Civ. P. 4.05 (emphasis added). "Rule 4.05 requires strict compliance to procedure in order to perfect service." Coons v. St. Paul Cos., 486 N.W.2d 771, 776 (Minn.App.1992), review denied (Minn. July 16, 1992). "Service of process in a manner not authorized by the rule is ineffective service." Turek, 618 N.W.2d at 611 (quotations omitted). When service of process is invalid, the district court lacks jurisdiction to consider the case, and the case is properly dismissed. Lewis v. Contracting Northwest, Inc., 413 N.W.2d 154, 157 (Minn.App.1987). | When service of process is invalid, the district court lacks jurisdiction to consider the case, and the case is properly dismissed. | "When service of process is invalid, does the district court lack jurisdiction to consider the case?" | Pretrial Procedure - Memo # 6747 - C - ES.docx | ROSS-003328946-ROSS-003328947 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 10582 | Willis v. RCA Corp., 12 Ohio App. 3d 1 | 307A+746 | Dismissal with prejudice for nonappearance is a drastic remedy which should be used sparingly and in extreme situations. The court has a wide variety of lesser sanctions available, including (1) a reprimand by the court; (2) a finding of contempt; (3) an order prohibiting the party or attorney from appearing in that court without different counsel in the future; and (4) a dismissal without prejudice. See Dismissal for Failure to Attend a Pretrial Conference and the Use of Sanctions at Preparatory Stages of Litigation (1962), 72 Yale L.J. 819. The power of the trial court to prevent undue delays and to control its calendars must be weighed against the policy which favors disposition of litigation on the merits. Link v. Wabash RR. Co. (1962), 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734. | Dismissal with prejudice for nonappearance at pretrial hearing is drastic remedy which should be used sparingly and in extreme situations. Rules Civ.Proc., Rule 41(B). | Is dismissal with prejudice for nonappearance at a pretrial hearing a drastic remedy which should be used sparingly and in extreme situations? | 034602.docx | LEGALEASE-00143983-LEGALEASE-00143984 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10583 | Hastings v. Estate of Hastings, 960 So. 2d 798 | 307A+563 | Even if the motion for leave to amend with its attachment were viewed as a violation of the trial court's earlier order, dismissal of the instant action with prejudice would be too drastic a sanction. While a trial court may, without doubt, dismiss an action as a sanction for violation of a court order, it should do so "only in extreme circumstances." Clay v. City of Margate, 546 So.2d 434, 435 (Fla. 4th DCA 1989); see Fla. R. Civ. P. 1.420(b) ("Any party may move for dismissal of an action ... for failure of an adverse party to comply with these rules or any order of court."); Kozel v. Ostendorf, 629 So.2d 817, 817 (Fla.1994) (noting that "the trial court has the discretionary power to dismiss a complaint if the plaintiff fails to timely file an amendment"); Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 500 (Fla. 4th DCA 2001) (finding that rule 1.420(b) permits dismissal of an action as a sanction for "failure to comply with orders of the court to amend a complaint to state a cause of action"). | Although a trial court may dismiss an action as a sanction for violation of a court order, it should do so only in extreme circumstances. West's F.S.A. RCP Rule 1.420(b). | "Although a trial court can dismiss an action as a sanction for violation of a court order, should it do so only in extreme circumstances?" | 035415.docx | LEGALEASE-00145039-LEGALEASE-00145040 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10584 | Thorkelson v. NY Pizza & Pasta Inc., 956 So. 2d 542 | 413+2 | "Misconduct" is a statutory term. "Workers' compensation is purely a creature of statute and, as such, is subject to the basic principles of statutory construction." Sunshine Towing, Inc. v. Fonseca, 933 So.2d 594, 594 (Fla. 1st DCA 2006). The Legislature added language, effective October 1, 2003, so that section 440.15(4)(e) of the Workers' Compensation Law provided on the date of her accident (as it still provides): (4) Temporary Partial Disability.- .... (e).... If the employee is terminated from postinjury employment based on the employee's misconduct, temporary partial disability benefits are not payable as provided for in this section.... | Workers' compensation is purely a creature of statute and, as such, is subject to the basic principles of statutory construction. West's F.S.A. S 440.01 et seq. | "Is workers compensation purely a creature of statute, and, as such, is subject to the basic principles of statutory construction?" | 048070.docx | LEGALEASE-00144137-LEGALEASE-00144138 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 10585 | Yakowich v. Dep't of Consumer & Indus. Servs., 239 Mich. App. 506 | 92+2340 | Worker's compensation proceedings are purely statutory, Hebert v. Ford Motor Co., 285 Mich. 607, 610, 281 N.W. 374 (1938), and "[i]t is the sole prerogative of the Legislature to alter or modify a provision of the WDCA." Feld v. Robert & Charles Beauty Salon, 435 Mich. 352, 364, 459 N.W.2d 279 (1990) (Riley, C.J.). The Legislature authorized the board (now the director of the DCIS) to promulgate and enforce rules of procedure. MCL 418.213(7); MSA 17.237(213)(7). See Greer v. John E Green Plumbing & Heating Co., 75 Mich.App. 451, 453, n. 2, 255 N.W.2d 17 (1977), remanded 406 Mich. 896, 276 N.W.2d 456 (1979) (the worker's compensation bureau has a statutory responsibility to promulgate and enforce reasonable rules of procedure). Plaintiffs' underlying premise, that only the Supreme Court may promulgate a rule such as Rule 5, is incorrect. Thus, their claim, which is predicated on that premise, must fail. The circuit court properly granted defendants' motion for summary disposition. | Workers' compensation proceedings are purely statutory, and it is the sole prerogative of the legislature to alter or modify a provision of the Worker's Disability Compensation Act (WDCA). M.C.L.A. S 418.101 et seq. | Is workers compensation the sole prerogative of the Legislature to alter or modify a provision of the statute? | Workers Compensation - Memo #415 ANC.docx | ROSS-003289008-ROSS-003289009 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10586 | Adkins v. R & S Body Co., 58 S.W.3d 428 | 413+11 | The Workers' Compensation Act is social legislation,the purpose of which is to compensate workers who are injured in the course of their employment for necessary medical treatment and for a loss of wage-earning capacity, without regard to fault. Unlike the common law remedy for personal injury, the statutory remedy for injured workers is not predicated on redressing a tortious act. Chapter 342 requires no proof of negligence and provides a right of recovery that is not subject to tort defenses. Any rights that a worker acquires to a remedy under Chapter 342 are purely statutory and, therefore, do not come within the ambit of Section 14 of the Kentucky Constitution or the jural rights doctrine. See Shamrock Coal Co. v. Maricle, Ky., 5 S.W.3d 130 (1999); Mullins v. Manning Coal Corp., Ky., 938 S.W.2d 260 (1997), cert. denied, 521 U.S. 1119, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997). Likewise, the principles that control the admissibility of evidence in a personal injury action and that were at issue in O'Bryan v. Hedgespeth, supra, do not apply to workers' compensation proceedings. | The Workers' Compensation Act is social legislation, the purpose of which is to compensate workers who are injured in the course of their employment for necessary medical treatment and for a loss of wage-earning capacity, without regard to fault. KRS 342.0011 et seq. | Is an employee or workers right to workers compensation benefits purely statutory and does it come within or under the ambit of the Constitution? | 048187.docx | LEGALEASE-00144219-LEGALEASE-00144220 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 10587 | Reynolds Metals v. Rogers, 157 Or. App. 147 | 413+2 | Insurers' argument is further deflated by the fact that ORS 12.140 does not apply to workers' compensation claims. Instead, the Workers' Compensation Act is the "complete statement of the parties' rights and obligations, and they are sui generis." | Workers' Compensation Act is complete statement of parties' rights and obligations, and they are sui generis. ORS 656.001 et seq. | "Is the Workers Compensation Act the complete statement of the parties rights and obligations, and are they sui generis?" | Workers Compensation - Memo #424 ANC.docx | ROSS-003303403 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 10588 | Woods v. Harry B. Woods Plumbing Co., 967 S.W.2d 768 | 413+2 | The primary purpose of our Workers' Compensation Act ("Act") is to afford workers compensation for job-related injuries regardless of fault. See generally Tenn.Code Ann. " 50"6"103; Partee v. Memphis Concrete Pipe Co., 155 Tenn. 441, 295 S.W. 68 (1927). The Act has further been interpreted as providing for a speedy trial so as to assure quick and efficient benefits to injured workers. Stovall v. General Shoe Corp., 204 Tenn. 358, 321 S.W.2d 559 (1959). Moreover, the Act is based on a mutual renunciation of common law rights and defenses. Tenn.Code Ann. " 50"6"108; see Liberty Mutual Insurance Co., v. Stevenson, 212 Tenn. 178, 368 S.W.2d 760 (1963) (noting Act is complete substitute for previous remedies in tort) | Workers' Compensation Act is based on a mutual renunciation of common law rights and defenses. West's Tenn.Code, S 50-6-108 | Is the Workers Compensation Act based on a mutual renunciation of common law rights and defenses? | 048200.docx | LEGALEASE-00144259-LEGALEASE-00144260 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 10589 | Taylor Timber Co. v. Baker, 226 Ga. App. 211 | 413+51 | The Workers' Compensation Act, OCGA " 34-9-1 et seq., is a legislative act and is in complete derogation of common law. Therefore, the provisions of such act must be strictly construed. | Workers' Compensation Act is legislative act in complete derogation of common law, and its provisions must be strictly construed. O.C.G.A. S 34-9-1 et seq. | What is the Workers Compensation Act in derogation of and how must the provisions be construed? | 048223.docx | LEGALEASE-00144325-LEGALEASE-00144326 | Order, SA | 0.16 | 1 | 0 | 0 | 1 | |
| 10590 | Wilson v. Waverlee Homes, 954 F. Supp. 1530 | 25T+179 | In summary, Waverlee, in its various legal briefs and responses to the plaintiffs' arguments, aside from McBro and a few factually similar equitable estoppel cases that don't apply here, has failed to cite a single authority challenging the assertion that "An entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration." Britton, 4 F.3d at 744. Because none of the exceptions discussed above applies, the court must conclude that Waverlee is not entitled to compel the plaintiffs to arbitrate their claims. | Under Alabama law, entity that is neither party to, nor agent for, nor beneficiary of contract lacks standing to compel arbitration of contractual dispute. | Does an entity that is neither party nor agent for the beneficiary of a contract lack standing to compel arbitration? | 007753.docx | LEGALEASE-00146412-LEGALEASE-00146413 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 10591 | Fox v. Merrill Lynch & Co., 453 F. Supp. 561 | 25T+178 | If it is not practical to separate a party's arbitrable and nonarbitrable claims, it may be appropriate to deny arbitration of any of the claims, or to defer arbitration until after adjudication of the nonarbitrable disputes. Sibley v. Tandy Corp., 543 F.2d 540, 543 (5th Cir. 1976), Cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977) (dictum); See American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821, 828 (2d Cir. 1968); Shapiro v. Jaslow, 320 F.Supp. 598, 560 (S.D.N.Y.1970). However, if the arbitrable and nonarbitrable portions of the controversy are separable, it is proper to stay judicial proceedings pending arbitration. Sibley v. Tandy Corp., supra, at 542-44; See Tepper Realty Co. v. Mosaic Tile Co., 259 F.Supp. 688, 693 (S.D.N.Y.1966) (semble). | If it is not practical to separate a party's arbitrable and nonarbitrable claims, it may be appropriate to deny arbitration of any of the claims, or to defer arbitration until after adjudication of nonarbitrable disputes; however, if arbitrable and nonarbitrable portions of controversy are separable, it is proper to stay judicial proceedings pending arbitration. | Is it proper to stay judicial proceedings pending arbitration if the arbitrable and non arbitrable portions of the controversy are separable? | 007757.docx | LEGALEASE-00146416-LEGALEASE-00146417 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 10592 | United States v. Allen, 459 F.2d 563 | 34+20.8(4) | Because the rights to a personal appearance and to an administrative appeal are crucial to the fairness of the process, Mulloy v. United States, supra, the board may not, by arbitrarily refusing to reopen, deny those rights to a registrant. Petrie v. United States, 407 F.2d 267 (9th Cir. 1969); United States v. Turner, 421 F.2d 1251 (3d Cir. 1970). Rather, where the board is presented with a prima facie claim for reclassification, the board must reopen, thereby preserving the registrant's right to a personal appearance, a substantive evaluation of the merits of his claim, and an appeal. Mulloy v. United States, supra. | Because rights to a personal appearance and to an administrative appeal are crucial to fairness of selective service process, a local board may not, by arbitrarily refusing to reopen, deny those rights to a registrant; rather, where board is presented with a prima facie claim for reclassification, board must reopen, thereby preserving registrant's right to a personal appearance, a substantive evaluation of merits of his claim, and an appeal. | Can the board arbitrarily refuse to reopen a registrant's classification? | Armed Services - Memo 283 - JK.docx | ROSS-003287078-ROSS-003287079 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 10593 | Ex parte Beaver, 271 F. 493 | 197+522.1 | Much of the law is well settled. A minor of the authorized enlistment age cannot, after having enlisted, obtain his release from military service by writ of habeas corpus. If he is within the age requiring the consent of parents or guardian, and enlists without such consent, the parents or guardian may, by a timely application, obtain his release. If, however, in the meantime and before they shall apply for the minor's release, he has committed an offense triable by court-martial and punishable by military law, their right to his custody and service is subordinate to the right of the military authorities to hold him to answer for such an offense. This much is conceded. See In re Morrissey, 137 U.S. 157, 11 Sup.Ct. 57, 34 L.Ed. 644; Ex parte Dostal (D.C.) 243 Fed. 665, in which the authorities are collected and reviewed. | A minor of the authorized enlistment age cannot, after having enlisted, obtain his release from military service by a writ of habeas corpus; but nonconsenting parents may by timely application secure his release. | Does the ability to obtain release from enlistment for a minor exist only in the absence of the consent of the parents to the enlistment? | 008606.docx | LEGALEASE-00146521-LEGALEASE-00146522 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10594 | Lucey v. Prudential Ins. Co. of America, 783 F.Supp.2d 207 | 13+3 | See Hubbert v. Prudential Ins. Co. of Am., No. 2:06"cv"260, 2007 WL 1031638, (W.D.Mich. Apr. 3, 2007) ("Federal courts have held that a cause of action exists under the SGLIA for a beneficiary of a life insurance policy to pursue a claim against the insurer for the proceeds of that policy."); Cotton ex rel. Boynton v. Prudential Ins. Co. of Am., No. 3:05"cv"46"RS, 2006 WL 212016, (N.D.Fla. Jan. 27, 2006) (In case regarding withheld proceeds, the court held "that an implied cause of action is granted to beneficiaries under the SGLI statute against the OSGLI."); Parker v. Office of Servicemembers' Group Life Ins., 91 F.Supp.2d 820, 825 (E.D.Pa.2000) ("[T]he overall structure and purpose of the statute convince us that Congress intended to create a right of action which allows a beneficiary of a life insurance policy issued under the SGLIA to pursue a federal claim against the insurer for proceeds withheld."). However, the Tenth Circuit was presented with a more nuanced issue and, after substantial analysis, determined that the SGLIA confers a private right of action on beneficiaries with no apparent limitations. Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240 (10th Cir.2001). | The Servicemembers Group Life Insurance Act (SGLIA) confers a private right of action on beneficiaries of life insurance policies with no apparent limitations. 38 U.S.C.A. S 1970; 38 C.F.R. S 9.13. | Does the Servicemembers Group Life Insurance Act confer a private right of action on beneficiaries of life insurance policies without limitations? | 008699.docx | LEGALEASE-00146541-LEGALEASE-00146542 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 10595 | United States v. Orenuga, 430 F.3d 1158 | 63+3 | 11 At the conclusion of the trial, the District Court judge instructed the jury that "[i]t is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act." Tr. at 16 (4/8/04). Orenuga argues that this is an erroneous construction of 18 U.S.C. " 201(b)(2)(A), for, in his view, the public official must perform a quid pro quo in order to fall within the ambit of the statute. In the absence of evidence suggesting that he ultimately altered the businesses' liability, Orenuga contends that his crimes were not bribery, but more precisely "defraud[ing] the two businesses by falsely convincing them that they were receiving some concession for their money." Br. of Appellant at 19. | Possible lawful and proper performance of act by public official had there been no bribe was not defense to crime of bribery. 18 U.S.C.A. S 201(b)(2)(A). | Is it a defense to crime of bribery where possible lawful and proper performance of act will be done by public official had there been no bribe? | 012295.docx | LEGALEASE-00145401-LEGALEASE-00145402 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 10596 | Scholastic v. Harris, 259 F.3d 73 | 289+942 | Under New York law joint ventures are governed by the same legal rules as partnerships, see Tehran"Berkeley Civil & Envtl. Eng'rs v. Tippetts"Abbett"McCarthy"Stratton, 888 F.2d 239, 243 (2d Cir.1989), because a joint venture is essentially a partnership for a limited purpose, Gramercy Equities Corp. v. Dumont, 72 N.Y.2d 560, 565, 534 N.Y.S.2d 908, 531 N.E.2d 629 (1988).The statute governing partnerships in New York draws a distinction between the dissolution of a partnership, occurring when a partner ceases to be associated with the partnership, and the partnership's ultimate termination, which occurs when the partnership is wound-up. Dissolution is not termination; instead the partnership "continues" until the winding-up of its affairs is completed. See N.Y. Partnership Law "" 60, 61 (McKinney 1988). But the word "continues" in " 61 is not a statutory prolongation of the business life of an otherwise unviable entity. Pastor v. State Tax Comm'n, 115 A.D.2d 144, 146, 495 N.Y.S.2d 515 (3d Dep't 1985). | The statute governing partnerships in New York draws a distinction between the dissolution of a partnership, occurring when a partner ceases to be associated with the partnership, and the partnership's ultimate termination, which occurs when the partnership is wound-up; dissolution is not termination, instead the partnership "continues" until the winding-up of its affairs is completed. N.Y.McKinney's Partnership Law SS 60, 61. | Is there a distinction between the dissolution of a partnership and the partnership's ultimate termination? | 022454.docx | LEGALEASE-00146347-LEGALEASE-00146348 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 10597 | Teamsters Pension Trust Fund of Philadelphia v. Brigadier Leasing Associates, 880 F.Supp. 388 | 289+950 | The Court agrees with defendants and the Connors court that a partnership does not incur MPPAA withdrawal liability triggered by the withdrawal of another organization where the withdrawal occurs after the dissolution of the partnership and where the partnership's business after the dissolution date is limited to winding up the affairs of the partnership. Under the Pennsylvania Uniform Partnership Act, a dissolved partnership "ceases ... in the carrying on, as distinguished from the winding up, of the business." 59 Pa.C.S. " 351 reenacted at 15 Pa.C.S.A. " 8351; Uniform Partnership Act " 29. Thus, the sole business of a dissolved partnership is the winding up of its affairs. A dissolved partnership remains liable for its preexisting debts, but after the dissolution it generally does not incur liability unrelated to the winding up process. See North Star Coal Co. v. Eddy, 442 Pa. 583, 277 A.2d 154, 156 (1971) ("In general a dissolution operates only with respect to future transactions....") (citation omitted); Connors, 699 F.Supp. at 4. Applying these principles of partnership law, the Court concludes that a dissolved partnership is not a trade or business for the purposes of the ERISA definition of a controlled group. Thus a partnership that has dissolved and thereby ceased to carry on business other than the winding up of its affairs and that is not itself the contributing employer is not liable under MPPAA as a member of a controlled group. | Under Pennsylvania law, a dissolved partnership remains liable for its preexisting debts, but after the dissolution it generally does not incur liability unrelated to winding up process. | Can the partnership incur liability unrelated to the winding up process after dissolution? | 022459.docx | LEGALEASE-00146358-LEGALEASE-00146359 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 10598 | Rodriguez v. Yenawine, 556 S.W.2d 410 | 302+18 | In defining fair notice and in measuring the adequacy of a pleading against that standard, Texas courts consistently indicate that to force a party to plead his entire case, with exactness, is not concordant with the spirit of the Rules governing pleading. The party excepting to a pleading has the burden to show that fair notice of the facts upon which the pleading is based has not been given the party excepting, and the burden is greater because the Rules of pleading uniformly condemn forcing a plaintiff to plead the evidence upon which plaintiff relies to prove the allegations of the pleadings. King v. Harris County Flood Control Dist., 210 S.W.2d 438 (Tex.Civ.App. Galveston 1948, writ ref'd n. r. e.); Andrews v. Daniel, 240 S.W.2d 1018, 1021 (Tex.Civ.App. Austin 1951, writ dism'd). | To force a party to plead his entire case, with exactness, is not concordant with spirit of rules governing pleading. Rules of Civil Procedure, rules 45, 47. | Is it concordant with the spirit of the rules governing pleading to force a party to plead his entire case with exactness? | 023551.docx | LEGALEASE-00145723-LEGALEASE-00145724 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10599 | George v. George, 274 So. 2d 494 | 307A+726 | This was wife's fourth request for a continuance based on emergency hospitalization. The trial court's refusal to grant a final motion for continuance is entirely supported by the record. A continuance may be granted in any case if there is good ground therefor. LSA-C.C.P. Art. 1601. The granting of a continuance under this article is left to the sound discretion of the trial judge, and his judgment should not be disturbed absent a clear abuse of discretion. Gossett v. Nealy, 230 So.2d 671 (La.App. 3 Cir. 1970); Wall v. Wall, 230 So.2d 420 (La.App. 1 Cir. 1969); Manley v. Manley, 203 So.2d 832 (La.App. 2 Cir. 1967). | Where wife who was sued for, and reconvened for, separation was granted three continuances on ground that she was receiving emergency treatment in hospital and, in connection with request for fourth continuance, her counsel offered memorandum from two doctors, one indicating she needed hospitalization and the other indicating she did not, refusal to grant the fourth request, based on emergency hospitalization, was not abuse of discretion. | Would the refusal to grant the fourth request for continuance based on emergency hospitalization be an abuse of discretion? | 033129.docx | LEGALEASE-00146110-LEGALEASE-00146111 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 10600 | State Farm Fire & Cas. Co. v. Smith, 39 So. 3d 1172 | 307A+560 | Accordingly, we conclude that Rule 4(b), Ala. R. Civ. P., allows 120 days for service of process and that an action may not be dismissed for insufficient service before the expiration of the 120-day period. In this case, the trial court granted Smith's motion to dismiss for insufficient service only 77 days after the complaint had been filed. Therefore, the trial court erred in dismissing the action before the expiration of the 120-day period. | Under the rule permitting a 120-day period for service of process, an action may not be dismissed for insufficient service before the expiration of the 120-day period. Rules Civ.Proc., Rule 4(b). | "Under the rule permitting a 120-day period for service of process, can an action not be dismissed for insufficient service before the expiration of the 120-day period?" | Pretrial Procedure - Memo # 6169 - C - DHA.docx | ROSS-003315142-ROSS-003315144 | Order, SA | 0.56 | 1 | 0 | 0 | 1 | |
| 10601 | Long v. Swofford, 805 So. 2d 882 | 307A+551 | A trial court has a duty and an obligation to dismiss a cause of action based upon fraud. See Hogan v. Dollar Rent A Car Systems, Inc., 783 So.2d 1211 (Fla. 4th DCA 2001) (trial court's dismissal of personal injury action was warranted because of plaintiff's fraud regarding medical history); Desimone v. Old Dominion Ins. Co., 740 So.2d 1233 (Fla. 4th DCA 1999) (trial court's dismissal of action was justified because of plaintiff's fraud during discovery). Here, the plaintiff concealed her pre-existing back injury, during her deposition, by stating she had not received medical treatment for her back prior to the accident. See Baker v. Myers Tractor Services, Inc., 765 So.2d 149 (Fla. 1st DCA 2000) (trial court's dismissal of personal injury claim, based upon injury to plaintiff's right knee, was justified because plaintiff had lied about a pre-existing injury to his right knee); Metropolitan Dade County v. Martinsen, 736 So.2d 794 (Fla. 3d DCA 1999) (trial court's failure to dismiss the plaintiff's action was not justified because the plaintiff had given untruthful testimony in a deposition). The plaintiff's false or misleading statement given under oath concerning issues central to her case amounted to fraud. See Cox v. Burke, 706 So.2d 43, 47 (Fla. 5th DCA 1998). | A trial court has a duty and an obligation to dismiss a cause of action based upon fraud. | Does a trial court have a duty and an obligation to dismiss a cause of action based upon fraud? | Pretrial Procedure - Memo # 6502 - C - SK.docx | ROSS-003302691-ROSS-003302692 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 10602 | Kiser v. Caudill, 210 W. Va. 191 | 307A+44.1 | In formulating the appropriatesanction, a courtshall be guided by equitableprinciples. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriatesanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case. | In formulating the appropriate sanction, a court shall be guided by equitable principles; initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction, and the court must explain its reasons clearly on the record if it decides a sanction is appropriate. Rules Civ.Proc., Rule 37(b). | "In formulating appropriate sanction, shall a court be guided by equitable principles?" | 034080.docx | LEGALEASE-00145234-LEGALEASE-00145235 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 10603 | Brew v. Stern, 254 N.J. Super. 237 | 307A+560 | R.4:4-1 provides The plaintiff, his attorney or the clerk of the court may issue the summons. If the summons is not issued within 10 days after the filing of the complaint the case may be dismissed in accordance with R.4:37-2(a). Separate or additional summonses may issue against any defendants. R.4:37-2(a) allows the dismissal of a complaint in the court's discretion for failure to issue a summons within ten days. Ordinarily, in the absence of demonstrable prejudice to defendant, a complaint should not be dismissed because of untimely issuance of a summons. Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 346, 476 A.2d 250 (1984); State v. One 1986 Subaru, 120 N.J. 310, 315, 576 A.2d 859 (1990). In determining whether prejudice exists we are primarily concerned with the impairment of defendant's ability to defend on the merits. | Ordinarily, in absence of demonstrable prejudice to defendant, complaint should not be dismissed because of untimely issuance of summons; in determining whether prejudice exists, court is primarily concerned with impairment of defendant's ability to defend on merits. R. 1:13-7; R. 4:37-2(a). | "In absence of demonstrable prejudice to defendant, should a complaint not be dismissed because of an untimely issuance of a summons?" | 034157.docx | LEGALEASE-00145486-LEGALEASE-00145487 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 10604 | In re Blansett's Estate, 28 Ill. App. 3d 552 | 307A+552 | A motion to dismiss a bill to construe a will lies when the record shows that no question of construction exists (Binger v. Ackerman, 15 Ill.App.2d 35, 145 N.E.2d 277). Such is the case here. The trial court properly allowed the motion to dismiss. | Motion to dismiss a bill to construe a will lies when record shows that no question of construction exists. | Does a motion to dismiss a bill to construe a will lie when record shows that no question of construction exists? | 034706.docx | LEGALEASE-00146240-LEGALEASE-00146241 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 10605 | Smith v. Alabama Dry Dock & Shipbuilding Co., 293 Ala. 644 | 307A+552 | There must be a bona fide existing controversy of a justiciable character or the court is without jurisdiction. City of Mobile v. Scott, 278 Ala. 388, 178 So.2d 545. Thus, the lack of a justiciable controversy may be raised either by a motion to dismiss, Rule 12 ARCP, or a motion for summary judgment, Rule 56 ARCP. | Lack of a justiciable controversy may be raised either by a motion to dismiss or a motion for summary judgment. Rules of Civil Procedure, rules 12, 56. | Can a lack of a justiciable controversy be raised either by a motion to dismiss or a motion for summary judgment? | 034712.docx | LEGALEASE-00146254-LEGALEASE-00146255 | Order, SA | 0.52 | 1 | 0 | 0 | 1 | |
| 10606 | Marchand v. Dir., U. S. Prob. Office, 421 F.2d 331 | 307A+552 | Moreover, while we recognize the desirability of judicial determinations of important questions, we think that this interest, standing alone, does not prevent a case from being dismissed as moot. The case or controversy requirement and its corollary, the mootness doctrine, serve to assure that courts will decide such questions only after the vigorous development of the issues which is the goal of the adversary system. To proceed to decide questions without the assistance which the system provides entails the risk of ill-considered judgments which would ultimately be detrimental to the interests urged upon us as justifying such action. This is the fundamental constitutional policy and we therefore cannot retain jurisdiction on this ground. | Desirability of judicial determination of important questions, standing alone, does not prevent case from being dismissed as moot. | Does desirability of judicial determination of important questions prevent case from being dismissed as moot? | 034750.docx | LEGALEASE-00145113-LEGALEASE-00145114 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10607 | Smith v. Alabama Dry Dock & Shipbuilding Co., 293 Ala. 644 | 307A+552 | There must be a bona fide existing controversy of a justiciable character or the court is without jurisdiction. City of Mobile v. Scott, 278 Ala. 388, 178 So.2d 545. Thus, the lack of a justiciable controversy may be raised either by a motion to dismiss, Rule 12 ARCP, or a motion for summary judgment, Rule 56 ARCP. | Lack of a justiciable controversy may be raised either by a motion to dismiss or a motion for summary judgment. Rules of Civil Procedure, rules 12, 56. | Can the lack of a justiciable controversy be raised either by a motion to dismiss or a motion for summary judgment? | Pretrial Procedure - Memo # 6989- C - NC.docx | ROSS-003288574-ROSS-003288575 | Order, SA | 0.52 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10608 | Fulton v. Van Slyke, 447 N.E.2d 628 | 307A+563 | It is thus settled in this jurisdiction that lesser sanctions should be imposed on parties unless there has been contumacious disregard of the court or lesser sanctions have not been effective. For example, in Farinelli v. Campagna, (1975) 166 Ind.App. 587, 338 N.E.2d 299, the case was over four and one-half years old, there had been repeated failures to obey discovery orders, the plaintiff had not supplied the names of doctors to be used as witnesses and the plaintiff had not even listed the charges of negligence he planned to litigate. When the court ordered a statement of the alleged negligent conduct of the defendant and a list of medical witnesses be furnished, the plaintiff furnished various allegations of misconduct but for the list of witnesses attached only a "photocopy of five pages from the yellow page section of the telephone directory listing the names of some three hundred nine physicians" noting plaintiff would be able to select from this list. Id. at 596, 338 N.E.2d at 305. After considering the entire record and circumstances our court held the trial court did not abuse its discretion by dismissing the suit. Nevertheless, we stated the severity of this sanction "should not be lightly indulged in," and concluded under different circumstances a lesser sanction would have sufficed. Id. at 594, 338 N.E.2d at 304. | Lesser sanctions than dismissal or default should be imposed on parties unless there has been contumacious disregard for court or lesser sanctions have not been effective. | Should lesser sanctions than dismissal or default be imposed on parties unless there has been contumacious disregard for court or lesser sanctions have not been effective? | 035213.docx | LEGALEASE-00145863-LEGALEASE-00145864 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 10609 | TransAmerican Nat. Gas Corp. v. Powell, 811 S.W.2d 913 | 307A+44.1 | Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. | Court must consider availability of less stringent discovery sanction and whether such lesser sanction would fully promote compliance. Vernon's Ann.Texas Rules Civ.Proc., Rule 215. | Will the requirement that sanctions for violations of pre-trial orders not be excessive requires trial courts to consider whether the imposition of lesser sanctions promote compliance? | Pretrial Procedure - Memo # 7275 - C - KG.docx | LEGALEASE-00035982-LEGALEASE-00035983 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 10610 | In re Peoples, 296 N.C. 109 | 307A+552 | Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action. If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action. Allen v. Georgia, 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949 (1897); People ex rel. Wallace v. Labrenz, 411 Ill. 618, 104 N.E.2d 769, Cert. denied 344 U.S. 824, 73 S.Ct. 24, 97 L.Ed. 642 (1952); 20 Am.Jur.2d Courts s 81 (1965). | Unlike question of jurisdiction, issue of mootness is not determined merely by examining facts in existence at commencement of action, for if issues before court or administrative body become moot at any time during course of proceedings, usual response should be to dismiss the action. | Should the action be dismissed if issues become moot at any time during the proceedings? | Pretrial Procedure - Memo # 7279 - C - NS.docx | ROSS-003303505-ROSS-003303506 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 10611 | Jones v. Otero, 156 Cal. App. 3d 754 | 307A+563 | An order imposing monetary sanctions may be enforced under the Enforcement of Judgments Law (Code Civ.Proc., " 680.010 et seq.). (See Code Civ.Proc., "" 680.230, 680.270.) Whether dismissal could ever be an appropriate remedy for a party's noncompliance with a discovery order imposing monetary sanctions is not before us. However, dismissal can never be an appropriate remedy for an attorney's noncompliance with an order imposing monetary sanctions. We so hold. | Dismissal can never be appropriate remedy for attorney's noncompliance with an order imposing monetary sanctions on the attorney. | Can dismissal never be appropriate remedy for an attorney's noncompliance with an order imposing monetary sanctions on the attorney? | Pretrial Procedure - Memo # 7384 - C - ES.docx | ROSS-003330522-ROSS-003330523 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 10612 | Young v. Curgil, 358 So. 2d 58 | 307A+552 | The law is clear that a trial court has the inherent authority to dismiss actions based on fraud and collusion as well as to strike sham pleadings. Such a power is indispensible to the proper administration of justice because no litigant has a right to trifle with the courts. It is a power, however, which should be cautiously and sparingly exercised and only upon the most blatant showing of fraud, pretense, collusion or other similar wrongdoing. Rhea v. Hackney, 117 Fla. 62, 157 So. 190 (1934); Horjales v. Loeb, 291 So.2d 92 (Fla.3d DCA 1974); Parham v. Kohler, 134 So.2d 274 (Fla.3d DCA 1961). | Trial court has inherent authority to dismiss actions based on fraud and collusion as well as to strike sham pleadings; however, such power should be cautiously and sparingly exercised and only on the most blatant showing of fraud, pretense, collusion or other similar wrongdoing. | Does a trial judge have the inherent authority to dismiss actions based on collusion? | 035484.docx | LEGALEASE-00146186-LEGALEASE-00146187 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 10613 | Weaver v. ZeniMax Media, 175 Md. App. 16 | 307A+563 | Dismissal is clearly the ultimate sanction and there is always "a preference for a determination of claims on their merits." Holly Hall Publ'ns, Inc. v. County Banking and Trust Co., 147 Md.App. 251, 267, 807 A.2d 1201 (2002). The rules and the courts "do not favor imposition of the ultimate sanction absent clear support." Id. The Court of Appeals has said:The dismissal of a claim ... is among the gravest of sanctions, and as such, is warranted only in cases of egregious misconduct such as "wil[l]ful or contemptuous" behavior, "a deliberate attempt to hinder or prevent effective presentation of defenses or counterclaims," or "stalling in revealing one's own weak claim or defense."Manzano v. S. Maryland Hosp., Inc., 347 Md. 17, 29"30, 698 A.2d 531 (1997) (quoting Rubin v. Gray, 35 Md.App. 399, 400"01, 370 A.2d 600 (1977)) (other citations omitted). | The rules and the courts do not favor imposition of the ultimate sanction of dismissal for misconduct absent clear support. Md.Rule 1-101 et seq. | Do the rules and the courts not favor imposition of the ultimate sanction of dismissal for misconduct absent clear support? | 035492.docx | LEGALEASE-00146319-LEGALEASE-00146320 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 10614 | Vaughan v. Swift Transp. Co., 14-208 (La. App. 5 Cir. 10/29/14), 164 So. 3d 235 | 13+70 | Whether an action has been abandoned is a question of law and is therefore subject to de novo review on appeal. See Eweni v. Skate World, Inc., 12"0338 (La.App. 4 Cir. 7/18/12), 100 So.3d 862, 864, writ denied, 12"1869 (La.11/9/12), 100 So.3d 839. La. C.C.P. art. 561 provides that an action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years. Abandonment is self-executing; it occurs automatically upon the passing of three-years without a step being taken by either party, and it is effective without court order. Giovingo v. Dunn, 11"781 (La.App. 5 Cir. 3/13/12), 90 So.3d 1098, 1101, writ denied, 12"0831 (La.5/25/12), 90 So.3d 418. To avoid abandonment, it is required (1) that a party take some "step" in the prosecution or defense of the action; (2) that it be done in the trial court and, with the exception of formal discovery, on the record of the suit; and (3) that it be taken within three years of the last step taken by either party. Id. Taking an action "before the court," so as to have taken a "step" in the prosecution or defense of a case, for purposes of abandonment statute, means that the step must appear in the court record. | To avoid abandonment, it is required (1) that a party take some step in the prosecution or defense of the action; (2) that it be done in the trial court and, with the exception of formal discovery, on the record of the suit; and (3) that it be taken within three years of the last step taken by either party, and in this context, taking an action "before the court," so as to have taken a "step" in the prosecution or defense of a case, means that the step must appear in the court record. LSA-C.C.P. art. 561. | "To avoid dismissal of a claim based on abandonment, should a step in the prosecution of a claim or defense must be evident from the record?" | 035550.docx | LEGALEASE-00146337-LEGALEASE-00146338 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10615 | Miranda v. Volvo N.A. Corp., 763 So. 2d 536 | 307A+590.1 | In Hall v. Metropolitan Dade County, 760 So.2d 1051 (Fla. 3d DCA 2000), this court reiterated the well-settled principle that filing a notice of deposition constitutes record activity sufficient to defeat a motion to dismiss for lack of prosecution. See Hall, 760 So.2d at 1052, and cases cited therein. Such a notice is more than "a mere passive effort to keep the suit on the docket." Del Duca v. Anthony, 587 So.2d 1306, 1309 (Fla.1991)(quoting Eastern Elevator, Inc. v. Page, 263 So.2d 218, 220 (Fla.1972)). Therefore, we hold that the trial court abused its discretion in dismissing this case. | A notice of deposition is more than a mere passive effort to keep a suit on the docket, got purpose of motion to dismiss for lack of prosecution. West's F.S.A. RCP Rule 1.420(e). | Is a notice of deposition more than a mere passive effort to keep a suit on the docket? | Pretrial Procedure - Memo # 7470 - C - DHA.docx | ROSS-003316584-ROSS-003316585 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 10616 | Olcott v. Fond du Lac Cty., 83 U.S. 678 | 371+2005 | The meaning of no provision of the State constitution was considered or declared. What was considered was the uses for which taxation generally, taxation by any government, might be authorized, and particularly whether the construction and maintenance of a railroad, owned by a corporation, is a matter of public concern. It was asserted (what nobody doubts), that the taxing power of a State extends no farther than to raise money for a public use, as distinguished from private, or to accomplish some end public in its nature, and it was decided that building a railroad, if it be constructed and owned by a corporation, though built by authority of the State, is not a matter in which the public has any interest, of such a nature as to warrant taxation in its aid. For this reason it was held that the State had no power to authorize the imposition of taxes to aid in the construction of such a railroad, and therefore that the statute giving Fond du Lac County power to extend such aid was invalid. | The taxing power of a State extends no farther than to raise money for public use, as distinguished from a private use. | Can the taxing power of a State extend farther than to raise money for public use? | 11411.docx | LEGALEASE-00094765-LEGALEASE-00094766 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10617 | 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581 | 371+2001 | Traditionally, the differences between an assessment and a tax include: an assessment supports local improvements, while a tax finances general operations; an assessment is a one-time charge, while a tax is annual; and an assessment requires that the benefit be direct, while a tax requires no such direct benefit. 5 Richard R. Powell, Powell on Real Property, " 39.03[1] (1998). The improvement must benefit the assessed property, and that benefit must be special and local, that is, the benefit to the specific property must be substantially greater than to the public in general. Id. at " 39.03[2]. The benefit can be measured by increased market value or by the overall economic effect of the improvement. Ibid. Lastly, the benefit must be certain rather than speculative, although it may arise in the future. Ibid. These salient features of the special assessment are codified by statute. N.J.S.A. 40:56"1 authorizes municipalities to impose special assessments for local improvements such as sewage, paving, and water. See, e.g. Meglino v. Township Comm. of Eaglewood, 103 N.J. 144, 510 A.2d 1134 (1986) (addressing special assessment for construction of water and sewer lines); Ridgewood Country Club v. Borough of Paramus, 55 N.J. 62, 259 A.2d 218 (1969) (addressing special assessment for sewer); City of Paterson v. Fargo Realty, Inc., 174 N.J.Super. 178, 415 A.2d 1210 (App.Div.1980) (involving demolition of nuisance). | Traditionally, differences between assessment and tax include: assessment supports local improvements, while tax finances general operations; assessment is one-time charge, while tax is annual; and assessment requires that benefit be direct, while tax requires no such direct benefit. | What are the differences between assessment and tax? | 11419.docx | LEGALEASE-00094533-LEGALEASE-00094534 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10618 | Amos v. Mathews, 99 Fla. 1 | 104+190.1 | Constitution contemplates that exclusively state purpose be accomplished by state taxation, and exclusively county purpose, in which state has no sovereign interest or responsibility, by county taxation; purposes of dual nature, as state or county purpose, may be accomplished by taxation appropriate thereto (Const. art. 9, "" 2, 5). Our Constitution contemplates that an exclusively state purpose shall be accomplished by state taxation; an exclusively county purpose, in which the state has no sovereign concern or responsibility, by county taxation. Purposes of a dual nature may be accomplished by taxation appropriate to the purpose. | Constitution contemplates that exclusively county purpose, in which state has no sovereign interest or responsibility, shall be accomplished by county taxation. F.S.A. Const. art. 9, SS 2, 5. | Does the constitution contemplate that exclusively state purpose be accomplished by state taxation? | Taxation - Memo # 823 - C - CK.docx | ROSS-003317277-ROSS-003317278 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 10619 | Employers Ins. of Wausau v. Plaid Pantries, 10 F.3d 605 | 413+2 | The workers' compensation system is designed to provide benefits to victims of work related injuries. Those benefits are generally funded by insurance, the premiums for the insurance are paid by the employers, and the costs are passed on in the form of lower wages and higher prices. Those benefits are a form of compensation offered to workers in exchange for the labor that they perform. While the insurance is often statutorily-as opposed to contractually-mandated, the workers' compensation system is nonetheless a plan of compensation available to workers, and the employer's payment of insurance premiums fund it. Indeed, Plaid does not argue that statutorily required premiums are not "contributions" under Section 507(a)(4). | Although workers' compensation system is often statutorily, rather than contractually, mandated, system is nonetheless plan of compensation available to workers, and employer's payment of insurance premiums funds it. | "While the insurance is often statutorily-as opposed to contractually-mandated, is the workers compensation system nonetheless a plan of compensation available to the workers?" | 048266.docx | LEGALEASE-00145633-LEGALEASE-00145634 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 10620 | State v. Labor & Indus. Review Comm'n, 136 Wis. 2d 281 | 413+2 | We start with the basic proposition that worker's compensation benefits derive solely from legislative enactments. Those enactments create new rights; only if rights and benefits are specifically conferred by the worker's compensation act can it be said that they exist. See, Mulder v. Acme-Cleveland Corp., 95 Wis.2d 173, 290 N.W.2d 276 (1980). Mulder makes it clear that the quasi-contractual status of the worker in relation to the employer is the result of a legislatively imposed social compact by which an employee acquires rights not recognized by the common law and the employer and its insurer are subject to only limited or scheduled liability. Only rights expressly conferred and liabilities expressly imposed are contemplated by the legislative intent of the compensation act. | Worker's compensation benefits derive solely from legislative enactments, and only if rights and benefits are specifically conferred by Worker's Compensation Act can it be said that they exist. W.S.A. 102.01 et seq. | When does the rights and benefits under workers compensation act said to exist? | 11478.docx | LEGALEASE-00094508-LEGALEASE-00094509 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 10621 | Ryan v. Travelers Ins. Co., 715 S.W.2d 172 | 413+2 | The Worker's Compensation Act has greatly modified the rights of workers and employers under the English common law, so that the rights and obligations of the parties in a suit brought under this statute are entirely controlled by the statute, except for those matters of form and procedure that are not prescribed. See Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521 (Tex.1960). | Rights and obligations of parties in suit brought under Worker's Compensation Act are entirely controlled by statute, except for those matters of form and procedure that are not prescribed. Vernon's Ann.Texas Civ.St. art. 8306 et seq. | Has the Worker's Compensation Act greatly modified the rights of workers and employers under the English common law? | 11486.docx | LEGALEASE-00094121-LEGALEASE-00094122 | Condensed, Order, SA | 0.41 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10622 | Hair v. Morton, 36 So. 3d 766 | 307A+683 | The burden of proving that a party's conduct warrants dismissal rests with the party alleging the fraudulent conduct. See Villasenor, 991 So.2d at 436; v. Pumpco, Inc., 910 So.2d 324, 327 (Fla. 4th DCA 2005). The evidence of fraud, however, must be clear and convincing to warrant dismissal. See Ibarra v. Izaguirre, 985 So.2d 1117, 1119 (Fla. 3d DCA 2008). "Meeting that burden will almost always require an evidentiary hearing." Villasenor, 991 So.2d at 436. In this case, the trial court conducted a non-evidentiary hearing, and relied solely on Hair's interrogatory responses, Hair's deposition, and Dr. Rodriguez's deposition (and exhibit 1 to said deposition). | The burden of proving that a party's conduct warrants dismissal based on fraud rests with the party alleging the fraudulent conduct. | Does the burden of proving that a party's conduct warrants dismissal based on fraud rest with the party alleging the fraudulent conduct? | Pretrial Procedure - Memo # 7044 - C - DHA_58299.docx | ROSS-003282695-ROSS-003282696 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 10623 | Landise v. Mauro, 141 A.3d 1067 | 307A+563 | Super. Ct. Civ. R. 41(b) provides in relevant part that "[f]or failure of the plaintiff to prosecute or to comply with these Rules or any order of Court, a defendant may move for dismissal of an action or of any claim against the defendant." This court has explained that "a dismissal for failure to prosecute "generally rests within the broad discretion of the trial judge, to be disturbed only in case of obvious abuse." " Dobbs v. Providence Hosp., 736 A.2d 216, 219"20 (D.C.1999) (quoting Taylor v. Washington Hosp. Ctr., 407 A.2d 585, 590 (D.C.1979), cert. denied, 446 U.S. 921, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980)). At the same time, we have recognized that dismissal under Rule 41(b) is "an extreme sanction which should be granted only sparingly or in extraordinary circumstances": Among the factors which the trial court should consider are: (1) the nature of the party's conduct, including whether it was willful; (2) the length of any delay in complying with the court's order; (3) the reasons for the delay; and (4) any prejudice to the opposing party. Dismissal should not be imposed where the failure of a party to comply with the order is inadvertent or excusable. | Dismissal should not be imposed as a sanction for failing to comply with a court order where the failure of a party to comply with the order is inadvertent or excusable. Civil Rule 41(b). | Should a dismissal for failure to comply with court order not be imposed where failure of party is inadvertent or excusable? | 034932.docx | LEGALEASE-00146794-LEGALEASE-00146795 | Condensed, Order, SA, Sub | 0.84 | 1 | 1 | 1 | 1 | 1 |
| 10624 | Chevron Oil Co. v. Traigle, 436 So. 2d 530 | 307A+590.1 | Article 561 of the Code of Civil Procedure provides in pertinent part: An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of five years. This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person, the trial court shall enter a formal order of dismissal as of the date of abandonment. | Abandonment of action article requires plaintiff, to avoid dismissal for want of prosecution, to take some "step" in prosecution of lawsuit, to do so in trial court, and to do so within five years of last "step" taken by either party. LSA-C.C.P. art. 561. | "To preclude abandonment of action, should a plaintiff take some ""step"" in prosecution of lawsuit?" | 11040.docx | LEGALEASE-00094805-LEGALEASE-00094806 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 10625 | Outlaw v. United States, 293 F. Supp. 935 | 34+60 | A suit cannot be maintained to compel the issuance of a valid contract of National Service Life Insurance. The courts have consistently ruled that jurisdiction is lacking under the Consent to Suit Statute, " 784 of Title 38 U.S.C.A., to review the decisions of the Administrator of Veterans' Affairs rejecting applications for insurance and to compel their issuance or reinstatement. Meadows v. United States, 281 U.S. 271, 50 S.Ct. 279, 74 L.Ed. 852 (1930); United States v. Fitch, 185 F.2d 471 (10 Cir. 1950); Rowan v. United States, 211 F.2d 237 (3 Cir. 1954); Skovgaard v. United States, 92 U.S.App.D.C. 70, 202 F.2d 363 (1953) cert. den., 345 U.S. 994, 73 S.Ct. 1134, 97 L.Ed. 1401. In the present case, it appears that a valid contract of insurance was never entered into between the veteran and the Veterans Administration, or a valid contract issued, even though a certificate of insurance was released through error on August 31, 1965. It is clear that this certificate was released through error because the Veterans Administration had rejected the application internally by June 28, 1965 and by formal notice to claimant on July 20, 1965. | A suit cannot be maintained to compel issuance of valid contract of national service life insurance. 38 U.S.C.A. S 784. | Can a suit be maintained to compel issuance of valid contract of National Service Life Insurance? | Armed Services - Memo 303 - RK_57612.docx | ROSS-003281330-ROSS-003281331 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 10626 | Wilson v. United States, 230 F.2d 521 | 63+1(2) | Even though at the time herein involved, Wilson was no longer directly in the chain of supervision of the regulation of insurance sales, he was free and able to make any recommendation he might see fit to make to the Commanding General or to his friend Dean or to any other officer. Regardless of his actual authority, it was still within his practical power to influence the regulation of insurance sales as it had formerly been, particularly with the illegal assistance of his co-conspirator Dean as Post Insurance Officer. It was at least possible that he might be reassigned as Adjutant General, or to some position from which he could bring his influence to bear upon the regulation of insurance sales within the period of time contemplated by the briber Mason.On these facts, we think, under the cited cases, Wilson clearly came within the group of persons who are covered by the terms of 18 U.S.C.A. " 202. It is immaterial either that he may not have had actual authority to carry out his commitments under the bribery scheme, or that he may have taken no affirmative action to perform his part of his corrupt bargain. | Where defendant was still an officer on active duty with the Army and was a close personal friend of the current insurance officer, defendant could be convicted of bribery in connection with the sale of life insurance to military personnel even though defendant was no longer directly in the chain of supervision of the regulation of insurance sales, where it was still within his practical power to influence the regulation thereof; it being immaterial that he had no actual authority to carry out his commitments under the bribery scheme, or that he may have taken no affirmative action to perform his part of his corrupt bargain. 18 U.S.C.A. S 202. | "If the public official does not have the authority to grant or deny the requested action in exchange for something, is the defendant still guilty of bribery?" | 012003.docx | LEGALEASE-00147676-LEGALEASE-00147677 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 10627 | People ex rel. Koehler v. Cleveland, C., C. & St. L. Ry. Co., 354 Ill. 342 | 200+127(1) | The filing of a proper certificate, properly executed, for the levy of the road and bridge taxes with the county clerk was jurisdictional. Without such certificate the county clerk had no authority to extend the tax. The certificate of this same road district before this court in the case of People v. Cleveland, Cincinnati, Chicago & St. Louis Railway Co., supra, was signed by three of the persons who were the city commissioners and the person who was the mayor of the city. A district road tax is invalid where the district clerk, under the Road and Bridge Act before the present amendment, files with the county clerk the original certificate of levy made by the commissioners instead of certifying the levy himself, and the irregularity cannot be cured upon the application for judgment of sale by allowing the district clerk to make and file a proper certificate. Illinois Southern Railway Co. v. People, 215 Ill. 123, 74 N. E. 97. | Filing of proper certificate, properly executed, of levy of road and bridge taxes, with county clerk, is jurisdictional, and clerk cannot extend tax without such certificate. S.H.A. ch. 121, S 62. | Does the county clerk have authority to extend the road and bridge tax? | 10805.docx | LEGALEASE-00094151-LEGALEASE-00094152 | Order, SA | 0.79 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10628 | Loser v. Bd. of Managers of Soldiers' Home, 92 Mich. 633 | 296+9 | It is insisted that this rule is in violation of Act No. 152, Laws 1885, of this state, establishing the home, and of an act of the United States congress, approved February 28, 1883, making void any pledge, mortgage, sale, assignment, or transfer of any right, claim, or interest in any pension. The answer asserts the validity of the rule; that it is within the power of the board; is made necessary by experience, and contains the following statement: "These respondents state that if said relators, and the other members or inmates of the said soldiers' home, are permitted to receive and use as they please the entire amount of the pension money received by them from the government of the United States, without such use being controlled and guarded by rules and regulations adopted by said board of managers, and enforced by said commandant, the effect of such use will be to destroy and subvert all discipline and good order in said soldiers' home, and will seriously, if not wholly, impair the usefulness of said soldiers' home for the purpose for which it was established, and is now maintained; that it is the experience of said board of managers, while they have been charged with the control, government, and management thereof, that, unless prevented in some way, a large per cent. of the inmates waste their pension money for intoxicating liquors and other purposes, injurious alike to the health of said inmates or members and to the order, discipline, and usefulness of said home." | Rule 14 adopted by the board of management of the soldiers' home, providing: 1. Every pensioner residing at the home shall turn over to the commander, on receipt of his quarterly pension check, any sum in excess of five dollars per month, the same to be held subject to the disposal of the board. 3. In cases where improper use is made of the allowance of five dollars per month leading to misconduct, the allowance shall be suspended. 5. It shall be competent to admit any ex-soldier, etc., now eligible under the law, who may be willing to pay into the home treasury all pension received by him over five dollars per month,-does not constitute an assignment or transfer of a pension, within the meaning of Act Cong. Feb. 28, 1883, S 2, 22 Stat. 432, which makes void any "pledge, mortgage, sale, assignment, or transfer of any right, claim, or interest in any pension." | Is the assignment of a pension interest void? | 022858.docx | LEGALEASE-00147858-LEGALEASE-00147859 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 10629 | Impey v. Hart, 471 S.W.3d 776 | 228+181(6) | Pretrial dismissal on an affirmative defense lies only by summary judgment, subject to a narrow exception when the defense appears from the face of the petition. Evans v. Empire District Electric Co., 346 S.W.3d 313, 317 (Mo.App. 2011). Defendants urged this exception below with seeming success,4 but we review de novo. Smith, 235 S.W.3d at 580. Without knowing what the prior injunction said, see note 2 supra, we cannot declare Impey's petition self-barred for mentioning it. | Pretrial dismissal on an affirmative defense lies only by summary judgment, subject to a narrow exception when the defense appears from the face of the petition. | Does pretrial dismissal on an affirmative defense lie by summary judgment? | 035591.docx | LEGALEASE-00147525-LEGALEASE-00147526 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 10630 | Am. Eagle v. Employers' Liab. Assur. Corp., 389 So. 2d 1339 | 307A+590.1 | If the post-trial conference was a "step in the prosecution" by a party, the motion to dismiss the action as abandoned should be denied. The term "step in the prosecution" consistently has been defined by Louisiana courts as some formal action before the court intended to hasten the suit to judgment. DeClouet v. Kansas City Southern Railway Company, 176 So.2d 471 (La.App.3d Cir. 1965), writs denied 248 La. 383, 178 So.2d 662; Marchand v. Gene Thorpe Finance, Inc., 225 So.2d 485 (La.App. 4th Cir. 1969), writs denied 254 La. 848, 227 So.2d 592; Evergreen Plantation, Inc. v. Zunamon, 272 So.2d 414 (La.App.2d Cir. 1973), writ denied La., 274 So.2d 708; Melancon v. Wood, 303 So.2d 222 (La.App. 4th Cir. 1974). A post-trial conference whose purpose is to facilitate completion of a transcript so that briefs could be filed and a decision rendered most certainly is a "step in the prosecution" of the matter. | Term "step in the prosecution," within statute governing dismissal for abandonment by failure to take any step in the prosecution for five years, is formal action before the court that is intended to hasten the suit to judgment. LSA-C.C.P. art. 561. | Is a term step in the prosecution a formal action before the court that is intended to hasten the suit to judgment? | Pretrial Procedure - Memo # 7487 - C - ES_57526.docx | ROSS-003282009 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 10631 | Tiffany v. Brenton State Bank of Jefferson, 508 N.W.2d 87 | 307A+590.1 | On August 5, 1991, Tiffany filed, pro se, a motion to continue. The rule 215.1 deadline was September 1, 1991. The mere filing of a motion for continuance before the rule 215.1 deadline for trial fails to stay the dismissal of the case. See Schimerowski v. Iowa Beef Packers, Inc., 196 N.W.2d 551, 554 (Iowa 1972); see also Fankell v. Schober, 350 N.W.2d 219, 222 (Iowa App.1984). | Mere filing of motion for continuance before mandatory dismissal date fails to stay dismissal of case. Rules Civ.Proc., Rule 215.1. | Does a mere filing of a motion for continuance before the mandatory dismissal date fail to stay dismissal of a case? | Pretrial Procedure - Memo # 7493 - C - NE_57531.docx | ROSS-003282744-ROSS-003282745 | Order, SA, Sub | 0.66 | 1 | 0 | 1 | 1 | 1 |
| 10632 | Utz v. Aureguy, 109 Cal. App. 2d 803 | 307A+552 | In Helvey v. Security etc. Bank, 99 Cal.App.2d 149, 151, 221 P.2d 257, the court said: "No record of the evidence before the trial court has been supplied to this Court. Therefore, it must be presumed that the evidence supports the order. Vieth v. Klett, 88 Cal.App.2d 23, 198 P.2d 314; Lucich v. Lucich, 75 Cal.App.2d 890, 172 P.2d 73. The Superior Court has inherent power to dismiss actions which are made to appear fictitious and sham. Cunha v. Anglo California National Bank, 34 Cal.App.2d 383, 93 P.2d 572." | Superior Court has inherent power to dismiss action which is made to appear fictitious and sham. | Does a Superior Court have inherent power to dismiss action which is made to appear fictitious and sham? | Pretrial Procedure - Memo # 7513 - C - KG.docx | ROSS-003299692-ROSS-003299693 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 10633 | Pac. Ins. Co. v. Botelho, 891 So. 2d 587 | 307A+561.1 | The purpose of a motion to dismiss is to test the legal sufficiency of the complaint. Barbado v. Green & Murphy, P.A., 758 So.2d 1173, 1174 (Fla. 4th DCA 2000). Unlike a motion for summary judgment, when ruling on a motion to dismiss, "a court may not go beyond the four corners of the complaint in considering the legal sufficiency of the allegations." Barbado, 758 So.2d at 1174; see also Patriotcom, Inc. v. Vega, 821 So.2d 1261 (Fla. 4th DCA 2002). Further, a motion to dismiss cannot be granted based on an affirmative defense unless the defense appears upon the face of a pleading. Ramos v. Mast, 789 So.2d 1226 (Fla. 4th DCA 2001); Beach Roundhouse Town Corp. v. Skinner, 356 So.2d 881 (Fla. 3d DCA 1978). | A motion to dismiss cannot be granted based on an affirmative defense unless the defense appears upon the face of a pleading. | Will the motion to dismiss be granted based on an affirmative defense which appears on the face of pleading? | 035713.docx | LEGALEASE-00147335-LEGALEASE-00147336 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10634 | Holder v. Orange Grove Med. Specialties, P.A., 54 So. 3d 192 | 307A+581 | We employ an abuse-of-discretion standard when reviewing a trial court's dismissal for failure to prosecute pursuant to Rule 41(b). Am. Tel. & Tel. v. Days Inn of Winona, 720 So.2d 178, 180 (Miss.1998) (citing Wallace v. Jones, 572 So.2d 371, 375 (Miss.1990)). "Because the law favors a trial of the issues on the merits, a dismissal for lack of prosecution is employed reluctantly." Miss. Dep't of Human Servs. v. Guidry, 830 So.2d 628, 632 (Miss.2002) (citing Am. Tel. & Tel., 720 So.2d at 180; Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986)). | Because the law favors a trial of the issues on the merits, a dismissal for lack of prosecution is employed reluctantly. Rules Civ.Proc., Rule 41(b). | Is dismissal for lack of prosecution employed reluctantly as law favors a trial of the issues on the merits? | 035743.docx | LEGALEASE-00147650-LEGALEASE-00147651 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10635 | Doe v. Univ. of Chicago Med. Ctr., 2015 IL App (1st) 133735 | 307A+686.1 | But there are critical differences between a section 2"619 motion and a motion for summary judgment. Most importantly, a party may not rely solely on her complaint to oppose a properly-supported motion for summary judgment. Forsberg v. Edward Hospital & Health Services, 389 Ill.App.3d 434, 441, 329 Ill.Dec. 531, 906 N.E.2d 729 (2009). In contrast, as .we have noted above, a section 2"619 motion admits the allegations of the complaint, as well as admitting that the complaint states a viable cause of action. Patrick Engineering, 2012 IL 113148, 364 Ill.Dec. 40, 976 N.E.2d 318; Sandholm, 2012 IL 111443, 356 Ill.Dec. 733, 962 N.E.2d 418. If defendant's evidence in support of a section 2"619(a)(9) motion does nothing more than refute the well-pleaded allegations of the complaint, the complaint trumps that evidence, and dismissal is improper. Smith, 231 Ill.2d at 121, 324 Ill.Dec. 446, 896 N.E.2d 232. "Section 2"619(a)(9) is not a proper vehicle to contest factual allegations; nor does it authorize a fact-based "mini-trial" on whether plaintiff can support his allegations." Reynolds, 2013 IL App (4th) 120139, 370 Ill. Dec. 628, 988 N.E.2d 984. | While a motion for involuntary dismissal and a motion for summary judgment share similarities and may, in certain circumstances, be functionally equivalent, there are critical differences between the two; most importantly, a party may not rely solely on her complaint to oppose a properly-supported motion for summary judgment, while a motion for involuntary dismissal admits allegations of complaint, as well as admitting that complaint states a viable cause of action. S.H.A. 735 ILCS 5/2-619. | "Will a motion for involuntary dismissal admit allegations of complaint, as well as admit that complaint states a viable cause of action?" | 035750.docx | LEGALEASE-00147746-LEGALEASE-00147747 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 10636 | In re Marriage of Baumgartner, 2014 IL App (1st) 120552 | 307A+679 | A section 2"619.1 motion allows a litigant to file a motion to dismiss raising both pleading defects and affirmative defenses. All well-pleaded facts are taken as true, and all reasonable inferences from those facts will be construed in favor of the nonmoving party. Morris v. Harvey Cycle & Camper, Inc., 392 Ill.App.3d 399, 402, 331 Ill.Dec. 819, 911 N.E.2d 1049 (2009). We do not agree with the trial court that an indirect criminal contempt petition was not a basis for Susan's allegations against Craig. However, our review of a court's dismissal pursuant to section 2"619.1 of the Code is de novo. Morris, 392 Ill.App.3d at 402, 331 Ill.Dec. 819, 911 N.E.2d 1049. Therefore, we are not bound by the trial court's reasons for its rulings. | A combined motion with respect to the pleadings, for involuntary dismissal, and for summary judgment allows a litigant to file a motion to dismiss raising both pleading defects and affirmative defenses; all well-pleaded facts in such a motion are taken as true, and all reasonable inferences from those facts will be construed in favor of the nonmoving party. S.H.A. 735 ILCS 5/2-619. | Can a litigant be allowed to file a motion to dismiss raising both pleading defects and affirmative defenses? | 11010.docx | LEGALEASE-00094665-LEGALEASE-00094666 | Order, SA, Sub | 0.48 | 1 | 0 | 1 | 1 | 1 |
| 10637 | Jones v. Montgomery Ward & Co., 103 N.M. 45 | 307A+590.1 | Although discovery alone is not sufficient to avert dismissal under 41(e), Carter Farms Co. v. Hoffman-LaRoche, Inc., 91 N.M. 132, 571 P.2d 124 (Ct.App.1977), discovery should be considered along with other factors indicating activity to bring litigation to a final determination. Reynolds v. Molybdenum Corp. of America. Through February, 1982 plaintiff had engaged in substantial discovery and other trial preparation. Discovery included almost 1,000 pages of deposition testimony. Expert witnesses were retained. Plaintiff's counsel made arrangements with local counsel for trying the New Mexico case. In addition, counsel informed the court by letter dated November 26, 1980 that the case would be tried at the court's direction although counsel preferred to proceed with the Texas matter first | Although discovery alone is not sufficient to avert dismissal under Rule 41(e) governing failure to prosecute, discovery should be considered along with other factors indicating activity to bring litigation to a final determination. Rules Civ.Proc., Rule 41(e). | Is discovery alone sufficient to avert a dismissal? | 11305.docx | LEGALEASE-00094577-LEGALEASE-00094578 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 10638 | Com. v. Marzilli, 457 Mass. 64 | 352H+48 | An indecent assault and battery is "an intentional, unprivileged and indecent touching of the victim." Commonwealth v. Mosby, 30 Mass.App.Ct. 181, 184, 567 N.E.2d 939 (1991), quoting Commonwealth v. Perretti, 20 Mass.App.Ct. 36, 43"44, 477 N.E.2d 1061 (1985). Thus, to prove the intent element, the Commonwealth must prove that the defendant intended"had a conscious purpose, see Commonwealth v. Gunter, 427 Mass. 259, 268"269, 692 N.E.2d 515 (1998)"to commit an indecent or offensive touching of the complainant without her consent. See Commonwealth v. Burke, supra at 482"484, 457 N.E.2d 622. We can discern no logical or theoretical bar to the Commonwealth's ability to do so. Contrast Commonwealth v. Hebert, 373 Mass. 535, 537, 368 N.E.2d 1204 (1977) (crime of attempted involuntary manslaughter logically impossible, because attempt to commit crime requires proof of intent to commit that particular crime and involuntary manslaughter is homicide unintentionally caused). | To prove intent, as an element of indecent assault and battery, the Commonwealth must prove that the defendant intended, or had a conscious purpose, to commit an indecent or offensive touching of the complainant without her consent. | Is indecent touching an element of indecent assault and battery? | Sex Offence - Memo 1 - RK.docx | LEGALEASE-00037727-LEGALEASE-00037728 | Condensed, Order, SA | 0.76 | 1 | 1 | 0 | 1 | 1 |
| 10639 | Jimenez v. State, 507 S.W.3d 438 | 211+1753(2) | A child victim's outcry statement alone can be sufficient to sustain a conviction for a sexual offense. Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); Salda"a v. State, 287 S.W.3d 43, 60 (Tex. App."Corpus Christi 2008, pet ref'd); Kimberlin v. State, 877 S.W.2d 828, 831 (Tex. App."Fort Worth 1994, pet. ref'd). And when such statements are recanted by the victim and the outcry witness, the jury as the sole judge of the credibility of the witnesses is entitled to determine whether to believe the prior statements or the recantations. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); Salda"a, 287 S.W.3d at 60 ("Furthermore, when a witness recants prior testimony, it is up to the fact finder to determine whether to believe the original statement or the recantation. A fact finder is fully entitled to disbelieve a witness's recantation."); Jackson v. State, 110 S.W.3d 626, 631 (Tex. App."Houston [14th Dist.] 2003, pet. ref'd) ("[A] criminal conviction, which requires proof beyond a reasonable doubt, may rest on hearsay despite the lack of the complainant's testimony or even the complainant's recantation."). That is, a complainant's recantation of an earlier outcry statement does not destroy the probative value of the statement. Chambers, 805 S.W.2d at 461. | A child victim's outcry statement alone can be sufficient to sustain a conviction for a sexual offense. | Is a child victim's outcry statement alone sufficient to sustain a conviction for sexual offenses? | 042956.docx | LEGALEASE-00147937-LEGALEASE-00147938 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10640 | Diego v. Sessions, 857 F.3d 1005 | 352H+16 | We have provided two definitions of "sexual abuse of a minor." First, "for purposes of " 1101(a)(43)(A), Congress has enumerated the elements of the offense of "sexual abuse of a minor" at 18 U.S.C. " 2243." Pelayo"Garcia v. Holder, 589 F.3d 1010, 1013 (9th Cir. 2009) (internal quotation marks omitted). Under " 2243, a person commits sexual abuse of a minor if a person "knowingly engages in a sexual act" with another person who is at least 12 years old, but less than 16, and at least four years younger than the defendant. Id. Second, a crime "may qualify as the federal generic offense of "sexual abuse of a minor" if: (1) the conduct prohibited by the criminal statute is sexual, (2) the statute protects a minor, and (3) the statute requires abuse." Id. at 1014. For purposes of this second definition, we have defined "abuse as physical or psychological harm in light of the age of the victim in question." United States v. Medina"Villa, 567 F.3d 507, 513 (9th Cir. 2009) (internal quotation marks omitted). | A person commits the federal offense of sexual abuse of a minor if a person knowingly engages in a sexual act with another person who is at least 12 years old, but less than 16, and at least four years younger than the defendant. 18 U.S.C.A. S 2243. | Is it illegal to have sex with a minor? | Sex Offence - Memo 5 - RK.docx | LEGALEASE-00037778-LEGALEASE-00037779 | Order, SA, Sub | 0.76 | 1 | 0 | 1 | 1 | 1 |
| 10641 | State v. Barefoot, 241 N.C. 650 | 352H+46 | The indictment for rape upon which the defendant was tried and acquitted was drawn under G.S. s 14-21. The indictment in this case was drawn under G.S. s 14-26. The two offenses are separate and distinct. The constituent elements are not identical. If the victim in a prosecution for rape is over 12 years of age, the intercourse must be by force and against her will. Her former chastity is immaterial. Her consent is a complete defense. In a prosecution for carnally knowing and abusing a female child over 12 and under 16 years of age, her former chastity is a material part of the charge and must be proved. Her consent is not a defense. The crimes are different. The prosecution for one is not a bar to a prosecution for the other, even though they are related in character and grow out of one transaction. State v. Hall, 214 N.C. 639, 200 S.E. 375. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. State v. Dills, 210 N.C. 178, 185 S.E. 677; State v. Nash, 86 N.C. 650; State v. Gibson, 170 N.C. 697, 86 S.E. 774. "'To support a plea of former acquittal, it is not sufficient that the two prosecutions should grow out of the same transaction, but they must be for the same offense; the same, both in fact and in law.' " State v. Malpass, 189 N.C. 349, 127 S.E. 248, 252; State v. Taylor, 133 N.C. 755, 46 S.E. 5; State v. Williams, 94 N.C. 891. If two statutes are violated even by a single act and each offense "requires proof of an additional act which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." State v. Stevens, 114 N.C. 873, 19 S.E. 861, 862; State v. Robinson, 116 N.C. 1046, 21 S.E. 701. The rationale of the rule seems to be: If the facts alleged in the second indictment when offered in evidence, would be sufficient to sustain a conviction under the first indictment, jeopardy attaches, otherwise it does not. State v. Hicks, | An indictment for rape under section 14-21 and under section 14-26 involves separate and distinct offenses, in that under the former if the victim is over twelve years of age the intercourse must be by force and against her will and her former chastity is immaterial and her consent is a complete defense while in the latter her former chastity is a material part of a charge and must be proved and her consent is not a defense. G.S. SS 14-21, 14-26. | Is chastity a defense for rape? | 043061.docx | LEGALEASE-00147892-LEGALEASE-00147893 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 10642 | WorldSource Coil Coating v. McGraw Const. Co., 946 F.2d 473 | 25T+182(1) | Parties can, however, modify the general waiver rule by mutual agreement either in the contract or by contractually designating arbitration rules that speak to waiver. Kostakos v. KSN Joint Venture No. 1, 142 Ill.App.3d 533, 96 Ill.Dec. 862, 866, 491 N.E.2d 1322, 1326 (1986).Although this contract is silent as to waiver, the ICC arbitration rules do address the issue. McGraw, under the ICC arbitration rules, as has been seen, could apply to a court for "interim or conservatory measures" without waiving arbitration. This ICC rule contemplates that a party may need to seek "interim or conservatory" relief that could not be provided through arbitration because of time constraints. Seeking relief beyond that required by the emergency, however, would constitute a waiver. Furthermore, this "interim or conservatory" relief authorized by the ICC arbitration rules was obviously intended only to maintain the status quo until arbitration could occur. | Parties can modify general waiver rule by mutual agreement either in contract or by contractually designating arbitration rules that speak to waiver. | Can parties modify the general waiver rule by mutual agreement? | 007880.docx | LEGALEASE-00148935-LEGALEASE-00148936 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10643 | S & R Co. of Kingston v. Latona Trucking, 159 F.3d 80 | 25T+182(2) | Although an issue of first impression for this circuit, we agree with those courts and authorities that have interpreted this "no waiver" clause as intended to permit parties to seek provisional remedies or other judicial proceedings that would not function to displace arbitration on the underlying dispute. See, e.g., Shay v. 746 Broadway Corp., 96 Misc.2d 346, 409 N.Y.S.2d 69, 71 (N.Y.Sup.1978) ("the intent [of the "no waiver" provision is] to permit provisional statutory remedies in court without affecting the agreement to arbitrate the underlying dispute"); Seidman & Seidman v. Wolfson, 50 Cal.App.3d 826, 835, 123 Cal.Rptr. 873 (Cal.App.1975) ("no waiver" clause "has been interpreted to apply only to provisional remedies such as attachments or injunctions that through judicial relief may be available in arbitration" (citing Domke on Commercial Arbitration " 26.03) (1968, 1974 Supp.)); Alison C. Wauk, Comment, Preliminary Injunctions in Arbitrable Disputes: The Case for Limited Court Jurisdiction, 44 U.C.L.A. L.Rev.2061, 2088 (1997) ("no waiver" clause "allow[s] parties to go to courts for interim relief without waiving their right to arbitration"); Catherine McGuire & Robert Love, Dispute Resolution Between Investors and Broker"Dealers in the United States Securities Markets, 14 Hastings Int'l & Comp. L.Rev. 431, 449 (1991) ("no waiver" rule allows parties "recourse in the courts for provisional remedies, such as temporary restraining orders or injunctions .... without waiving one's contractual right to arbitrate").Thus, the fact that an arbitration agreement incorporates such a clause would not prevent a court from finding that a party has waived arbitration by actively participating in protracted litigation of an arbitrable dispute. See, e.g., Home Gas Corp. v. Walter's of Hadley, Inc., 403 Mass. 772, 532 N.E.2d 681, 684"85 (1989) ("no waiver" clause did not prevent finding of waiver where party engaged in one year of discovery and a fourteen-day | "No waiver" clause in contractual arbitration provision was intended to permit parties to seek provisional remedies or other judicial proceedings that would not function to displace arbitration on underlying dispute, and incorporation of such clause did not prevent court from finding that party had waived arbitration by actively participating in protracted litigation of an arbitrable dispute; presence of "no waiver" clause did not alter ordinary analysis undertaken to determine if party had waived its right to arbitration. 9 U.S.C.A. S 4. | What is the purpose of a no waiver clause? | 007893.docx | LEGALEASE-00148954-LEGALEASE-00148955 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10644 | Crosby v. Roub, 16 Wis. 616 | 83E+435 | The only question remaining is, whether the fact that it was on another paper attached to the note, prevents this effect. This must depend upon the question whether there is any inflexible rule of the mercantile law requiring the indorsement to be on the identical paper on which the note was originally written. That there is any such, certainly cannot be maintained. All the cases where the question is raised, and all elementary writers, concur in saying that an indorsement may be made on another paper attached to and made a part of the note. Such paper is called an allonge. And it is true that the usual reason stated for using such a paper is, that there is no longer room on the note to make the indorsement. But this does not mean that there must be an actual physical impossibility to write the indorser's name on the original paper. On the contrary, the usage of the mercantile law is, as Chief Justice MARSHALL says, "founded in convenience." And all that its spirit or its letter requires is, that when it is inconvenient to write on the back of the note the real contract between the vendor and the vendee, which, if so written, would pass the title, it may be written on another paper and attached to it with like effect. | An indorsement of a note may be on another paper attached to and made a part of the note, called an "allonge"; and it is not essential that there should have been a physical impossibility of writing the indorsement on the note, but it may be on another paper attached to the note, whenever necessity or the convenience of the parties requires it. | Can an indorsement or transfer of a promissory note be on another paper attached to and made a part of the note? | 010410.docx | LEGALEASE-00148681-LEGALEASE-00148682 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 10645 | Zuendt v. Doerner, 101 Mo. App. 528 | 8.30E+270 | In respect to the plea of the want of consideration, the evidence is all one way- that the note of March 4, 1892, was surrendered up and canceled in consideration of the new note and Zuendt's check or draft for $100 to make up the difference between the two. The surrender and cancellation of the old note was a good and sufficient consideration for the giving of the new one in lieu thereof. Meyers v. Van Wagoner, 56 Mo. 115; Siemans & Halske Electric Co. v. Ten Broek (Mo. App.) 70 S. W. 1092. In Wilton v. Eaton, 127 Mass. 174, the defendant, Annie Eaton, administered on her husband's estate in 1871. On July 9, 1873, she filed her final account as administratrix, which was allowed by the probate court, and by which it appeared that the estate was solvent, and that after the payment of debts she had paid the next of kin their distributive shares thereof. No new assets afterwards came into her hands. Some time in 1875 the plaintiff produced a promissory note for $1,000, dated January, 1867, payable on demand, and signed by the intestate (Mrs. Eaton's husband), and given by him to plaintiff for money loaned, and requested the defendant to pay the same. | The surrender and cancellation of an old note is sufficient consideration for the execution of a new one given in lieu thereof. | Is the surrender and cancellation of the old note a good and sufficient consideration for the giving of new ones in lieu thereof? | 010420.docx | LEGALEASE-00148456-LEGALEASE-00148457 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 10646 | Dunnington v. Bank of Crewe, 144 Va. 36 | 8.30E+05 | Moreover, it seems to us that the Negotiableinstrumentslaw, Code, sections 5563-5757, inclusive, is likewise decisive. That this statute was enacted to secure uniformity and solve doubts is of course generally accepted, and that it will be held to solve all questions with reference to negotiable paper which it undertakes to settle is well indicated in this from Chief Justice Rugg in Union Trust Co. v. McGinty, 212 Mass. 205, 93 N.E. 679, 28 Ann. Cas. 1913C, 526: "While it does not cover the whole field of negotiable instrument law, it is decisive as to all matters comprehended within its terms. It ought to be interpreted in such a way as to give effect to the beneficent design of the legislature in passing an act for the promotion of harmony upon an important branch of the law. Simplicity and clearness are ends especially to be sought. | The negotiable instruments law (Code of 1919, secs. 5563-5757) was enacted to secure uniformity and solve doubts, and it will be held to solve all questions with reference to negotiable paper which it undertakes to settle. | Was Negotiable Instruments Law enacted to secure uniformity in law? | 010499.docx | LEGALEASE-00148167-LEGALEASE-00148168 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 10647 | Phelps v. Sargent, 69 Minn. 118 | 195+32 | The defendants further claim that the guaranty was personal to Hewit, and did not pass to the plaintiff with the note. Such is not the character of the guaranty. It is not personal and restricted to Hewit, but is a general guaranty of the payment of the note, and passed with the assignment and delivery of the note upon which it was written. This is not an open question in this state. It was expressly held in the case of Harbord v. Cooper, 43 Minn. 466, 45 N. W. 860, that a general guaranty of the payment of a negotiable promissory note written thereon passed with the assignment and delivery of the note to the holder. Whether this rule applies to a nonnegotiable promissory note, or to a mere chose in action, we do not decide. | A general guaranty by the payee of the payment of a negotiable note, written thereon, passes with the assignment and delivery of the note to the holder thereof. | Can a general guaranty of payment of a negotiable promissory note pass with the assignment and delivery of the note to the holder? | Bills and Notes- Memo 611-IS_57882.docx | ROSS-003282604-ROSS-003282605 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10648 | United States v. Fernandez, 722 F.3d 1 | 63+1(1) | Thus, the bribe can be "anything of value""it need not be worth $5,000. The $5,000 element instead refers to the value of the "business" or "transaction" sought to be influenced by the bribe. "In other words, the subject matter of the bribe must be valued at $5,000 or more; the bribe itself need only be "anything of value." " Robinson, 663 F.3d at 271. | The $5,000 value transactional element of the federal bribery statute refers to the value of the business, transaction, or series of transactions sought to be influenced by the bribe, not the value of the bribe actually offered or paid; in other words, the subject matter of the bribe must be valued at $5,000 or more, and the bribe itself need only be "anything of value." 18 U.S.C.A. S 666(a)(1)(B), (a)(2). | "Should the subject matter of the bribe be valued at $5,00 or more, the bribe itself only being anything of value?" | Bribery - Memo #956 - C - CSS_57741.docx | ROSS-003293537-ROSS-003293538 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 10649 | Cracker Barrel Old Country Store v. Epperson, 284 S.W.3d 303 | 156+68(2) | Although this Court agrees that a party may be estopped from contradicting a sworn statement previously made or from gaining an unfair advantage by taking inconsistent positions in a legal proceeding, we do not agree with the Court of Appeals' conclusion that the doctrine of judicial estoppel should be applied in both instances. Instead, we take this opportunity to clarify that the doctrine of judicial estoppel is applicable only when a party has attempted to contradict by oath a sworn statement previously made. See Allen v. Neal, 217 Tenn. 181, 396 S.W.2d 344, 346 (1965) (noting that "[j]udicial estoppels arise from sworn statements made in the course of judicial proceedings, generally in a former litigation, and are based on public policy upholding the sanctity of an oath and not on prejudice to adverse party by reason thereof, as in the case of equitable estoppel"). In those instances where no oath is involved but the party is attempting to gain an unfair advantage by maintaining inconsistent legal positions, the doctrine of equitable estoppel should be applied. | While the doctrine of judicial estoppel is applied to prohibit a party from taking a position that is directly contrary to or inconsistent with a position previously taken by the party, the doctrine generally only applies to sworn statements made in the course of judicial proceedings. | Does judicial estoppel arise from sworn statements made in the course of judicial proceedings? | Estoppel - Memo #6 - C - CSS_58264.docx | ROSS-003280742-ROSS-003280743 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10650 | New York State Public Employees Federation, AFL-CIO v. City of Albany, 269 A.D.2d 707 | 48A+4 | The Court of Appeals has made clear that the right to use public highways rests "with the whole people of the State" (New York State Pub. Empls.Fedn., AFL"CIO v. City of Albany, 72 N.Y.2d 96), and municipalities cannot grant proprietary rights to the use thereof to their residents in priority to the general public (People v. Speakerkits Inc., 83 N.Y.2d 814; People v. Grant, 306 N.Y. 258). It cannot be gainsaid that the ordinance at issue discriminates against nonresidents, inasmuch as they are required to pay an annual fee more than 50 times that charged to residents. The fact that there may be a reasonable basis for such disparate treatment, as claimed by defendants, is of no moment, because the Legislature simply has not conferred upon the City the authority to discriminate in such a manner (People v. Randazzo, 60 N.Y.2d 952). Accordingly, plaintiffs have established a likelihood of success on the merits justifying Supreme Court's grant of preliminary relief. | Right to use public highways rests with the whole people of the State, and municipalities cannot grant proprietary rights to the use thereof to their residents in priority to the general public. | What are the rights provided to the public for the use of state highways? | Highways-Memo 251-IS_57973.docx | ROSS-003307674-ROSS-003307675 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10651 | Ionno v. Glen-Gery Corp., 2 Ohio St. 3d 131 | 260+68(1) | This court has long adhered to the general principle that absent express provisions to the contrary, a mineral lease includes an implied covenant to reasonably develop the land. Beer v. Griffith (1980), 61 Ohio St.2d 119, 399 N.E.2d 1227 [15 O.O.3d 157], paragraph two of the syllabus; Venedocia Oil & Gas Co. v. Robinson (1905), 71 Ohio St. 302, 314, 73 N.E. 222; Harris v. Ohio Oil Co. (1897), 57 Ohio St. 118, 127, 48 N.E. 502. Thus, where a lease fails to contain any specific reference to the timeliness of development, the law will infer a duty to operate with reasonable diligence. See, generally, 60 A.L.R. 901; 76 A.L.R.2d 721; 87 A.L.R.2d 1076 and cases cited therein. Inasmuch as the lease in question contains no express disclaimer of the covenant to develop within a reasonable time, the instant case clearly falls within this general rule. | Absent express provisions to the contrary, a mineral lease includes an implied covenant to reasonably develop the land. | Does a mineral lease include an implied covenant to reasonably develop the land? | 021588.docx | LEGALEASE-00148207-LEGALEASE-00148208 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10652 | Babcock Coal & Coke Co. v. Brackens Creek Coal Land Co., 128 W. Va. 676 | 260+70(3) | These provisions are classified: (1) Those requiring payment of minimum royalty regardless of the amount of minerals mined, and (2) those requiring that a stipulated amount of minerals shall be mined. If the stipulation is of the first class a lessee is liable for the payment of minimum royalty although no minerals are or could be mined; if of the second class and the lessee did not assume the risk of the exhaustion of the minerals, his obligation to pay the minimum royalty is discharged if the minerals do not exist. Ridgely v. Conewago Iron Co., C.C., 53 F. 988; 1 Barringer and Adams on The Law of Mines and Mining, 89; 3 Williston on Contracts, Section 1567. For illustrations see 2 Restatement of the Law of Contracts, page 861, et seq. | Where coal mining lease requires that a stipulated amount of minerals shall be mined and does not require lessee to assume risk of exhaustion of minerals, lessee's obligation to pay minimum royalty designated in lease is discharged if no minerals exist. | Is an obligation to pay the minimum royalty discharged if the minerals do not exist? | 021616.docx | LEGALEASE-00148180-LEGALEASE-00148181 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 10653 | Ivy v. Walker, 58 Miss. 253 | 289+604 | It is well settled that no action at law can be maintained by one partner against his associate for money arising out of and connected with partnership business, until there has been a settlement of the partnership accounts. This results from the principle that a partner's interest in the partnership effects is not his aliquot part thereof, or of any particular portion of them, but is his proper share in the balance or surplus remaining after the payment of the partnership debts and after a settlement of the accounts between the several partners. A debt due by the firm to one of the partners is a partnership liability, and must be paid, like other debts, before a division of the surplus among the partners can been forced by judicial proceedings. The remedy of a partner to reach this surplus where no settlement of the accounts has taken place, is by bill in equity. | An action at law cannot be maintained by one partner against his copartner, to recover moneys alleged to be due him on account of partnership transactions, where no settlement of the accounts and business has been had. | Can an action at law be maintained by one partner against his associate for money arising out of and connected with partnership business before there had been a settlement of the partnership accounts? | Partnership - Memo 473 - JK_58158.docx | ROSS-003298849-ROSS-003298850 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 10654 | Loch Sheldrake Beach & Tennis Inc. v. Akulich, 141 A.D.3d 809 | 83T+64 | We agree with plaintiff that Supreme Court erred in granting defendant leave to amend her answer to add breach of fiduciary duty as an additional counterclaim. Leave to amend a pleading "should be freely granted in the absence of prejudice or surprise resulting from the delay except in situations where the proposed amendment is wholly devoid of merit" (Edwards & Zuck, P.C. v. Cappelli Enters., Inc., 124 A.D.3d 181, 183, 999 N.Y.S.2d 565 [2014] [internal quotation marks and citation omitted]; see CPLR 3025[b]; see also Ferran v. Williams, 281 A.D.2d 819, 820"821, 722 N.Y.S.2d 307 [2001], lv. dismissed 97 N.Y.2d 653, 737 N.Y.S.2d 53, 762 N.E.2d 931 [2001]; Konrad v. 136 E. 64th St. Corp., 246 A.D.2d 324, 325, 667 N.Y.S.2d 354 [1998] ). To prevail on a breach of fiduciary duty claim, the cause of action must allege the existence of a fiduciary relationship, misconduct by the individual board members and damages directly caused by a board member's misconduct (see Parekh v. Cain, 96 A.D.3d 812, 816, 948 N.Y.S.2d 72 [2012]; Konrad v. 136 E. 64th St. Corp., 246 A.D.2d at 326, 667 N.Y.S.2d 354), and it must be pleaded with the requisite specificity under CPLR 3016(h) (see Theaprin Pharms., Inc. v. Conway, 137 A.D.3d 1254, 1255, 29 N.Y.S.3d 401 [2016] ). | To prevail on a breach of fiduciary duty claim against residential cooperative board members, the cause of action must allege the existence of a fiduciary relationship, misconduct by the individual board members, and damages directly caused by a board member's misconduct. | Should a breach of fiduciary duty be plead with specificity? | 023602.docx | LEGALEASE-00148524-LEGALEASE-00148525 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 10655 | Kinship Inspection Serv. v. Newcomer, 231 Wis. 2d 559 | 307A+581 | Wisconsin courts have discretion to sanction parties for their refusal to comply with court orders and for failure to prosecute an action. See Johnson v. Allis Chalmers Corp., 162 Wis.2d 261, 273"74, 470 N.W.2d 859, 863 (1991). A trial court's decision to dismiss an action is discretionary and will not be disturbed unless the party claiming to be aggrieved by the decision establishes that the trial court has misused its discretion. See id. at 273, 470 N.W.2d at 863. A discretionary decision will be sustained if the court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. See Loy v. Bunderson, 107 Wis.2d 400, 414"15, 320 N.W.2d 175, 184 (1982). The issue is not whether an appellate court as an original matter would have dismissed the action; it is whether the trial court exceeded its discretion in doing so. See Johnson, 162 Wis.2d at 273, 470 N.W.2d at 863. | Courts have discretion to sanction parties for their refusal to comply with court orders and for failure to prosecute an action. | Do courts have discretion to sanction parties for their refusal to comply with court orders and for failure to prosecute an action? | Pretrial Procedure - Memo # 7105 - C - KBM_57779.docx | ROSS-003279858-ROSS-003279859 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10656 | Fin. Freedom Acquisition v. Standard Bank & Tr. Co., 2014 IL App (1st) 120982 | 307A+561.1 | A motion to dismiss pursuant to section 2"619 of the Code admits the legal sufficiency of a plaintiff's complaint but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or which are established by external submissions acting to defeat the complaint's allegations. 735 ILCS 5/2"619 (West 2010); Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 115, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993); Russell v. Kinney Contractors, Inc., 342 Ill.App.3d 666, 670, 276 Ill.Dec. 987, 795 N.E.2d 340 (2003). In contrast, a motion to dismiss pursuant to section 2"615 of the Code attacks the legal sufficiency of a complaint by alleging defects on the face of the complaint. 735 ILCS 5/2"615 (West 2010); Vitro v. Mihelcic, 209 Ill.2d 76, 81, 282 Ill.Dec. 335, 806 N.E.2d 632 (2004). | A motion to dismiss pursuant to statute governing involuntary dismissal based upon certain defects or defenses admits the legal sufficiency of a plaintiff's complaint but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or which are established by external submissions acting to defeat the complaint's allegations; in contrast, a motion to dismiss pursuant to statute governing motions with respect to pleadings attacks the legal sufficiency of a complaint by alleging defects on the face of the complaint. S.H.A. 735 ILCS 5/2-615, 5/2-619. | Will a motion to dismiss attack the legal sufficiency of a complaint by alleging defects on the face of the complaint? | Pretrial Procedure - Memo # 7597 - C - SKG_57805.docx | ROSS-003296357-ROSS-003296358 | Order, SA, Sub | 0.29 | 1 | 0 | 1 | 1 | 1 |
| 10657 | Weirton Sav. & Loan Co. v. Cortez, 157 W. Va. 691 | 8.30E+200 | On a matter preliminary to its instant contention, the loan company makes particular moment that Cortez executed the note as an accommodation maker. The Negotiable Instruments Law defines an accommodationparty Inter alia, as one who has executed an instrument ". . . without receiving value therefor, and for the purpose of lending his name to some other person." Code 1931, 46-2-6 (NIL). Other than for technical classification purposes, we need not be concerned with the question of whether Cortez is an original maker or an accommodationparty. In either event he would be primarily liable to a holder for value on a defaulted note, if the note was proved to have been properly executed and delivered in the first instance. Marshall v. Fonner, 113 W.Va. 451, 168 S.E. 375 (1933). | Whether signer of promissory note was the original maker or an accommodation party he would be primarily liable to holder for value on defaulted note if note was proved to have been properly executed and delivered in the first instance. Code 1931, 46-1-15, 46-1-16. | Is an accommodation party liable to the holder? | 009661.docx | LEGALEASE-00149688-LEGALEASE-00149689 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 10658 | In re AppOnline.com, 321 B.R. 614 | 8.30E+10 | The general rule is that the laws of the state where a note is executed and payable govern the interpretation of that note. See United States v. Guaranty Trust Co., 293 U.S. 340, 346"47, 55 S.Ct. 221, 79 L.Ed. 415 (1934); United States v. Pearson, No. 60 CV 690, 1967 U.S. Dist. LEXIS 10762, at (S.D.N.Y. May 18, 1967). When a note is executed in one state and payable in another, it is governed as to its nature, validity, interpretation and effect by the laws of the state where it is made payable. (citing Beadall v. Moore, 199 A.D. 531, 533"34, 191 N.Y.S. 826 (1st Dep't 1922)); see also Farmers' Trust Co. v. Bradshaw, 137 Misc. 203, 205, 242 N.Y.S. 598 (N.Y.City Ct.1930). Therefore, since both of the mortgage notes in question are payable in New York, the New York State UCC applies. | Under New York choice-of-law rules, when promissory note is executed in one state and payable in another, it is governed, as to its nature, validity, interpretation, and effect, by laws of state where it is made payable. | Does the law of the place where the note is made payable govern a note executed in another place? | Bills and Notes - Memo 779 -KC_58625.docx | ROSS-003295528-ROSS-003295529 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 10659 | Hopple v. Cleveland Disc. Co., 25 Ohio App. 138 | 83E+481 | Whether the certificates be treated as intangible choses in action or as personal property, the record is convincing that their nature was such that the title was subject to transfer. Where an instrument is of the nature of a chose in action, a bona fide purchaser takes it free from collateral equities, notwithstanding he may be subject to defenses by the obligor to which the original owner was subject. | Bona fide purchaser of instrument in nature of chose in action takes free from collateral equities, though subject to obligor's defenses against original owner. | What happens to a bonafide purchaser of instrument of a chose in action? | 010650.docx | LEGALEASE-00149651-LEGALEASE-00149652 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 10660 | Becker v. Dean, 854 So. 2d 864 | 135+8 | It is well settled that the terms residence and domicile are not synonymous, and, while a person can have several residences, he can have only one domicile. La. C.C. art. 38; Russell, 00"2595 at p. 5, 780 So.2d at 1051; Messer v. London, 438 So.2d 546 (La.1983). An individual's domicile is the principal establishment wherein he habitually resides. Russell,00"2595 at p. 5, 780 So.2d at 1051. Domicile consists of two elements, residence and intent to remain. Id. The question of domicile is one of intention as well as fact, and where it appears domicile has been assumed in another location, the party seeking to show it has been changed must overcome the legal presumption that it has not been changed. Id. The opposing party must overcome this legal presumption "by positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile." Id. When there is no declaration that a person has changed his domicile, proof of his intention depends upon circumstances. Id. There is a presumption against change of domicile. Id. | The question of domicile is one of intention as well as fact, and where it appears domicile has been assumed in another location, the party seeking to show it has been changed must overcome the legal presumption that it has not been changed; the opposing party must overcome this legal presumption by positive and satisfactory proof of establishment of domicile as a matter of fact with the intention of remaining in the new place and of abandoning the former domicile. LSA-C.C. art. 38. | Does domicile essentially consist of two elements? | 014528.docx | LEGALEASE-00149317-LEGALEASE-00149318 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 10661 | Best Foods v. Mitsubishi Shoji Kaisha, 224 A.D. 24 | 302+20 | While the plaintiff was clearly entitled, under sections 211 and 213 of the Civil Practice Act, to plead in the alternative against the various defendants, the branch of the pleading which deals with each defendant must show some basis of liability against such defendant. With respect to the breach of a duty by the seller, all that this complaint alleges is that the leakage was caused by a defect in the construction of the car, or by the defective condition of the car. This would be a breach of obligation by the seller only if it was under an absolute duty as an insurer to deliver a good tank car in good condition. The seller was not such an insurer. The order appealed from should be reversed, with $10 costs and disbursements, and the motion on the pleadings to dismiss the complaint under section 476 of the Civil Practice Act and rule 112 of the Rules of Civil Practice granted, with $10 costs, with leave to the plaintiff to serve an amended complaint upon payment of said costs. | Under Civil Practice Act, SS 211, 213, entitling plaintiff to plead in alternative against various defendants, branch of pleading which deals with each defendant must show some basis of liability against such defendant. | Can a plaintiff plead in the alternative? | 023630.docx | LEGALEASE-00149362-LEGALEASE-00149363 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 10662 | Nalen v. Jenkins, 113 Idaho 79 | 302+20 | The first such standard is that, under modern pleading practice, the plaintiff may advance alternative theories relating to an alleged set of facts. Associates Northwest, Inc. v. Beets, supra. The trial court should not narrowly view each theory as an island of unique facts. Such restrictive characterization of theories misconstrues the practice of advancing multiple theories, which may only represent different ways to obtain one specific recovery"a single claim. Clearly, several theories may draw upon a common nucleus of facts which give rise to a single claim. Here, for example, the Nalens maintained four theories of recovery for a single claim against Jenkins. They also sought an additional claim for punitive damages. It is important to keep in mind the distinction between multiple "claims" and multiple "theories." | Under modern pleading practice, plaintiff may advance alternative theories relating to an alleged set of facts. | Can the plaintiff advance alternative theories relating to an alleged set of facts? | 023646.docx | LEGALEASE-00149742-LEGALEASE-00149743 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10663 | Temple v. Guideone Specialty Mut. Ins. Co., 330 S.W.3d 318 | 307A+581 | A dismissal for want of prosecution is not intended to be an adjudication of the merits of the case or the rights of the parties; it merely returns the parties to the position that they were in before suit was filed. In rendering judgment dismissing a lawsuit for want of prosecution, a trial court must refrain from rendering judgment on the merits of the lawsuit. If the order dismissing for want of prosecution purports to make any disposition on the merits, it is error. Accordingly, we hold that the inclusion of the Mother Hubbard clause and the allocation of costs in the instant case was error. We sustain the church's third issue and modify the trial court's judgment to delete the allocation of costs in favor of Guideone and the phrase, "All relief not expressly granted herein is denied." | In rendering judgment dismissing a lawsuit for want of prosecution, a trial court must refrain from rendering judgment on the merits of the lawsuit; if the order dismissing for want of prosecution purports to make any disposition on the merits, it is error. | "Should a court refrain from rendering judgment on the merits of the lawsuit, in rendering judgment dismissing a lawsuit for want of prosecution?" | 036400.docx | LEGALEASE-00149406-LEGALEASE-00149407 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 10664 | Ray v. Greer, 212 N.C. App. 358 | 307A+581 | The trial court must consider lesser sanctions before imposing the "most severe sanction" available; after considering lesser sanctions, the trial court may determine the appropriate sanction in its discretion. See Foy v. Hunter, 106 N.C.App. 614, 620, 418 S.E.2d 299, 303 (1992) ("Before dismissing an action with prejudice, the trial court must make findings and conclusions which indicate that it has considered these less drastic sanctions. If the trial court undertakes this analysis, its resulting order will be reversed on appeal only for an abuse of discretion."); see also Rivenbark v. Southmark Corp., 93 N.C.App. 414, 420, 378 S.E.2d 196, 200 (1989) (noting "that a party's motion for dismissal because the opposing party has violated a rule or court order is directed to the trial court's discretion"). | The trial court must consider lesser sanctions before imposing the most severe sanction available for failure to prosecute or violation of court order; after considering lesser sanctions, the trial court may determine the appropriate sanction in its discretion. Rules Civ.Proc., Rule 41(b), West's N.C.G.S.A. S 1A-1. | Can the court determine the appropriate sanction in its discretion after considering lesser sanctions? | 036461.docx | LEGALEASE-00149137-LEGALEASE-00149138 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 10665 | Holder v. Orange Grove Med. Specialties, P.A., 54 So. 3d 192 | 307A+581 | We employ an abuse-of-discretion standard when reviewing a trial court's dismissal for failure to prosecute pursuant to Rule 41(b). Am. Tel. & Tel. v. Days Inn of Winona, 720 So.2d 178, 180 (Miss.1998) (citing Wallace v. Jones, 572 So.2d 371, 375 (Miss.1990)). "Because the law favors a trial of the issues on the merits, a dismissal for lack of prosecution is employed reluctantly." Miss. Dep't of Human Servs. v. Guidry, 830 So.2d 628, 632 (Miss.2002) (citing Am. Tel. & Tel., 720 So.2d at 180; Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986)). | Because the law favors a trial of the issues on the merits, a dismissal for lack of prosecution is employed reluctantly. Rules Civ.Proc., Rule 41(b). | "Is a dismissal for lack of prosecution employed reluctantly, because the law favors a trial of the issues on the merits?" | 036480.docx | LEGALEASE-00149199-LEGALEASE-00149200 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 10666 | Ridgell v. McDermott, 427 S.W.3d 310 | 307A+622 | A motion to dismiss for failure to state a cause of action attacks the adequacy of the plaintiff's pleadings. Bosch v. St. Louis Healthcare Network, 41 S.W.3d 462, 463 (Mo. banc 2001). It assumes that all of the pleaded facts are true and liberally grants to the plaintiff all reasonable inferences therefrom. Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 768 (Mo. banc 2007) (internal citations omitted). " "[T]he petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in [the] case." " Bosch, 41 S.W.3d at 464. (quoting Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 306 (Mo. banc 1993)). The dismissal of a petition for failure to state a cause of action is reviewed de novo. Hess, 220 S.W.3d at 768. | A motion to dismiss for failure to state a cause of action attacks adequacy of plaintiff's pleadings. | Does a motion to dismiss for failure to state a cause of action attack adequacy of a plaintiff's pleadings? | Pretrial Procedure - Memo # 8147 - C - SKG_58749.docx | ROSS-003292438-ROSS-003292439 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10667 | Zeeb v. Atlas Powder Co., 32 Del. Ch. 486 | 308+92(1) | Except as to acts so peculiarly personal that their performance may not be delegated, or except as to acts regulated by statute which are required to be performed personally, as a general rule an individual may do all acts through an agent which he could do himself. 2 C.J.S., Agency, " 11, p. 1039. The court recognized this rule to be applicable in Re Universal Pictures Co., supra, when it held that there was no requirement of Section 61 that the acts to be performed by a dissenting stockholder be done in person, and that, accordingly, an objection in writing could be made by a stockholder through an agent. The result of this holding, which we think was correct, was to make applicable the ordinary rules of agency. These rules impose, in ordinary circumstances, no obligation on the principal to exhibit proof of the delegation of authority to his agent at the time the act is done. Since it is permissible under Section 61 for the stockholder to deal through an agent with the corporation, the law of agency casts the burden on the corporation to determine the scope of the purported agent's authority if it has doubt of that fact, unless there is some special consideration which would require otherwise. 2 Am.Jur., Agency, "" 95, 97. | Except as to acts so peculiarly personal that their performance may not be delegated, or except as to acts regulated by statute which are required to be performed personally, generally an individual may do all acts through an agent which he could do himself. | Can acts which are required to be performed personally by statute be delegated? | 041391.docx | LEGALEASE-00149847-LEGALEASE-00149848 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10668 | United States v. Stefanik, 674 F.3d 71 | 3.77E+13 | A person "may be convicted for making a threat if "he should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made." " United States v. Nishnianidze, 342 F.3d 6, 16 (1st Cir.2003) (quoting United States v. Fulmer, 108 F.3d 1486, 1491 (1st Cir.1997)). The ultimate standard is objective""whether a reasonable person would understand the statement to be threatening." Id. Nonetheless, "the fact-finder may consider other evidence, including the effect of the statement on the recipient." Id. | Person may be convicted for making a threat if he should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made; the ultimate standard is objective, asking whether a reasonable person would understand the statement to be threatening, but the fact-finder may consider other evidence, including the effect of the statement on the recipient. 18 U.S.C.A. S 115(a)(1)(B). | Can a defendant be convicted for making a threat if he should have reasonably foreseen that the statement would be taken as a threat? | 046748.docx | LEGALEASE-00149764-LEGALEASE-00149765 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10669 | In re Interest of Jeffrey K., 273 Neb. 239 | 3.77E+05 | In determining that Nebraska's stalking statutes must be construed objectively when considering the experience of the victim, we are aware that the language of the stalking statutes in other states differs from that of Nebraska and that some states apply a subjective standard, such that under these statutes, it must be shown that the victim was actually placed in fear by the perpetrator's actions. See 2 Wayne R. LaFave, Substantive Criminal Law " 16.4(d) and n. 110 (2d ed.2003). Nevertheless, given the language of Nebraska's stalking statutes and the purpose announced by the Legislature for enacting the statutes, we conclude that an objective construction is appropriate and that the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. Compare U.S. v. Smith, 973 F.2d 603, 604 (8th Cir.1992) (stating, in appeal involving crime of bank robbery, that "[i]ntimidation is conduct "reasonably calculated to put another in fear," " and "[u]nder this test "the subjective courageousness or timidity of the victim is irrelevant; the acts of the defendant must constitute an intimidation to an ordinary, reasonable person," " quoting U.S. v. Higdon, 832 F.2d 312 (5th Cir.1987)). | Given the language of stalking statute, an objective construction is appropriate, and the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. Neb.Rev.St. S 28-311.02. | "Given the language of stalking statutes, what type of construction is appropriate? " | 047088.docx | LEGALEASE-00149553-LEGALEASE-00149555 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10670 | Colantuno v. A. Tenenbaum & Co., 23 P.3d 708 | 8.30E+208 | The promissory note at issue in this case contractually imposed joint and several liability on the debtors. Thus, upon default, Tenenbaum could have sought full payment on the note from one or all of the debtors. See Bohrer v. DeHart, 961 P.2d 472, 475 (Colo.1998) (noting that under the common law rule of joint and several liability, any one responsible party may be liable for all losses incurred by a plaintiff). As the court of appeals correctly noted, however, the joint and several liability contractually imposed on the defendants by the promissory note was severed by operation of law when Tenenbaum released Isham from liability. " 13-50-102; Tenenbaum, 3 P.3d at 458-59. Thus, the remaining debtors were no longer jointly liable, but were only liable for their "proportionate shares" of the debt. " 13-50-103. The Act, however, did not provide for a method of calculating the proportionate shares. | Where promissory note imposed joint and several liability on debtors, creditor could have sought full payment on note from one or all debtors upon default; however, such contractual joint and several liability was severed by operation of law when creditor released one debtor from liability, and remaining debtors were only liable for their "proportionate shares" of debt. West's C.R.S.A. SS 13-50-102, 13-50-103. | Can a party recover its liability from one or only some of the debtors? | 010982.docx | LEGALEASE-00150440-LEGALEASE-00150441 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 10671 | Tobin v. Univ. of Maine Sys., 59 F. Supp. 2d 87 | 141E+1168 | Plaintiff contends that a contract arose between himself and the Law School when (i) the Law School "offered" to consider his application, (ii) he "accepted" that offer by submitting an application, and (iii) he paid "consideration" in the form of an application fee. Defendants acknowledge that contracts may be formed between students and universities. See Mangla v. Brown Univ., 135 F.3d 80, 83 (1st Cir.1998) ("The terms of the contract may include statements provided in student manuals and registration materials."). Although they suggest that the relationship between an applicant and a university should be distinguished from the relationship between a student and a university, Defendants do not pursue the theory that no contract existed between the parties in this case. Rather, they argue that even assuming the existence of a contract that implied a duty of good faith and fair dealing in the evaluation of Plaintiff's application, Plaintiff's averments do not come close to supporting a finding of breach. The Court agrees. | Even if submission of law school application gave rise to contractual relationship under Maine law, imposing on school implied duty of good faith and fair dealing, such duty was not breached by school's consideration of applicant's 30-year-old college grade point average rather than more recent grade point average he had achieved in legal technology program. | Do Law Schools owe students a duty of good faith and fair dealing? | 017024.docx | LEGALEASE-00150072-LEGALEASE-00150073 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 10672 | Silver Lake Consol. Sch. Dist. v. Parker, 238 Iowa 984 | 141E+913 | The word "all", as used in various parts of school laws, does not embrace pupils of both public and private schools, since school laws refer only, except where otherwise stated, to public schools. | The word "all", as used in various parts of school laws, does not embrace pupils of both public and private schools, since school laws refer only, except where otherwise stated, to public schools. Code 1946, SS 257.1 to 305.11. | "Does the word ""schools"" in statutes refer to public or private schools?" | 017026.docx | LEGALEASE-00150106-LEGALEASE-00150107 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 10673 | Univ. of Utah v. Shurtleff, 144 P.3d 1109 | 141E+990 | As a corporate entity engaged in the enterprise of higher education, the University is distinct from an administrative agency that may exert authority over an entire industry or occupation. Indeed, the University's firearms policy appears in the University's personnel policies and in its code of student conduct. The policy does not purport to apply to the population at large or even to the entire category of higher education students or staff, but only to those students enrolled at and those faculty and staff employed by the University itself. And the policy applies only to these individuals because of their contractual or quasi-contractual relationships with the University, not because the University has jurisdiction over a particular geographic area or a particular field of endeavor. See Piacitelli v. S. Utah State Coll., 636 P.2d 1063, 1066 (Utah 1982) (holding that the school's policy manual created only a "contractual obligation" and did not create "statutory or constitutional rights"); Logan City Sch. Dist. v. Kowallis, 94 Utah 342, 77 P.2d 348, 354 (1938) (indicating that children are admitted to public schools outside of their home districts under a contractual right). | As a corporate entity engaged in the enterprise of higher education, the University of Utah is distinct from an administrative agency that may exert authority over an entire industry or occupation. | Can a university exert policy and authority over an industry? | 017044.docx | LEGALEASE-00150436-LEGALEASE-00150437 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 10674 | Perkins v. Kerby, 308 So. 2d 914 | 156+21 | Equitable estoppels have been and are the subject of many definitions. Their substance is the inducement of another to act to his prejudice. An estoppel by deed is depicted as a bar precluding a party from denying the truth of his deed. We stated in Cook v. Farley, 195 Miss. 638, 15 So.2d 352 (1943), that a distinct and precise assertion or admission of fact in necessary to constitute such an estoppel. Hence, an estoppel by deed or similar instrument was held to arise only where a party has conveyed a precise or definite legal estate or right by a solemn assurance that he will not be permitted to vary or deny. | An estoppel by deed or similar instrument arises only where a party has conveyed a precise or definite legal estate or right by a solemn assurance that he will not be permitted to vary or deny. | Is a distinct and precise assertion or admission of fact necessary for an estoppel by deed? | 017988.docx | LEGALEASE-00150616-LEGALEASE-00150617 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10675 | Stephen L. Winternitz v. Nat'l Bank of Monmouth, 289 Ill. App. 3d 753 | 302+53(1) | We now consider counts II and III, plaintiff's quantum meruit claims. Plaintiff argues that it is entitled to plead these counts in the alternative, in the event that it fails to establish that an express brokerage contract existed between plaintiff and defendant. We agree. "It is permissible to argue in the alternative, even though such arguments are based upon inconsistent facts." Hillblom v. Ivancsits, 76 Ill.App.3d 306, 311, 32 Ill.Dec. 172, 175, 395 N.E.2d 119, 122 (1979). On remand, plaintiff may establish that the contract between defendant and Safeskin was a valid, binding, and enforceable agreement. If so, plaintiff will have demonstrated that it rendered valuable services from which defendant derived some financial benefit. "[A] plaintiff may recover under quantum meruit where he fails to establish the express contract but does show that services were rendered. (Emphasis added.)" Business Development Services, Inc., 96 Ill.App.3d at 843, 52 Ill.Dec. at 413, 422 N.E.2d at 94. In light of our analysis, we reinstate counts II and III of the complaint. | It is permissible to argue claims in the alternative, even though such arguments are based upon inconsistent facts. | "Is it permissible to argue in the alternative, even though such arguments are based upon inconsistent facts?" | 023664.docx | LEGALEASE-00150592-LEGALEASE-00150593 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 10676 | Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771 | 307A+624 | Terre Du Lac Ass'n v. Terre Du Lac, Inc., 737 S.W.2d 206, 211 (Mo.App.E.D.1987) (citation omitted). A court may not dismiss a petition for failure to state a claim unless it appears plaintiff can prove no set of facts in support of his claim entitling him to relief. Id. However, a motion to dismiss for failure to state a cause of action is well taken where facts essential to recovery are not pleaded. Berkowski v. St. Louis County, 854 S.W.2d 819, 823 (Mo.App.E.D.1993). The petition must contain allegations of fact in support of each essential element of the cause pleaded. Id. If the petition offers only conclusions and does not contain the ultimate facts or any allegations from which to infer those facts, a motion to dismiss is properly granted. Id. | Court may not dismiss petition for failure to state claim unless it appears plaintiff can prove no set of facts in support of his claim entitling him to relief. | Should the petition state allegations of fact in support of each essential element of the cause pled? | Pretrial Procedure - Memo # 8234 - C - BP_58807.docx | ROSS-003292687-ROSS-003292688 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10677 | Missisippi Dept. of Human Services v. Guidry, 830 So. 2d 628 | 307A+581 | It has been well established in reviewing a trial court's decision under Rule 41(b), this Court may only reverse if it finds the trial court abused its discretion. Am. Tel. & Tel., 720 So.2d at 180; Wallace, 572 So.2d at 375 (citing Morris v. Ocean Sys., Inc., 730 F.2d 248, 251 (5th Cir.1984)); Watson, 493 So.2d at 1279. Because the law favors a trial of the issues on the merits, a dismissal for lack of prosecution is employed reluctantly. Am. Tel. & Tel., 720 So.2d at 180; Watson, 493 So.2d at 1278.There is no set time limit on the prosecution of an action once it has been filed, and dismissal for failure to prosecute will be upheld only "where the record shows that a plaintiff has been guilty of dilatory or contumacious conduct." Watson, 493 So.2d at 1279. This Court is mindful of the fact that "dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases." Wallace, 572 So.2d at 376 (citing Rogers v. Kroger Co., 669 F.2d 317 (5th Cir.1982)). What constitutes failure to prosecute depends on the facts of the particular case. Id. Am. Tel. & Tel., 720 So.2d at 180-81. | Because law favors trial of issues on merits, dismissal for lack of prosecution is employed reluctantly. Rules Civ.Proc., Rule 41(b). | Is dismissal for lack of prosecution employed reluctantly because the law favors trial of issues on the merits? | 037013.docx | LEGALEASE-00150674-LEGALEASE-00150675 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 10678 | Giles v. Gen. Motors Corp., 344 Ill. App. 3d 1191 | 307A+561.1 | Because the material facts are largely undisputed, our review of this matter is limited to whether the dismissal was proper as a matter of law. See Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116"17, 189 Ill.Dec. 31, 619 N.E.2d 732, 735 (1993). The facts and evidence must be viewed in the light most favorable to the nonmoving party. Saxon Mortgage, Inc. v. United Financial Mortgage Corp., 312 Ill.App.3d 1098, 1104, 245 Ill.Dec. 455, 728 N.E.2d 537, 541 (2000). A section 2"619 motion to dismiss should not be granted when it cannot be determined with reasonable certainty that the movant's alleged defense exists. Saxon Mortgage, Inc., 312 Ill.App.3d at 1104, 245 Ill.Dec. 455, 728 N.E.2d at 541. | A motion to dismiss under statute governing involuntary dismissal based upon defects or defenses should not be granted when it cannot be determined with reasonable certainty that movant's alleged defense exists. S.H.A. 735 ILCS 5/2-619. | Should a motion to dismiss be granted when it cannot be determined with reasonable certainty that movant's alleged defense exists? | Pretrial Procedure - Memo # 8430 - C - SHB_59129.docx | ROSS-003292620-ROSS-003292622 | Order, SA, Sub | 0.67 | 1 | 0 | 1 | 1 | 1 |
| 10679 | Silver v. Halifax Cty. Bd. of Commissioners, 805 S.E.2d 320 | 307A+689 | And although the trial court, and this Court, must take the factual allegations of the complaint as true, the courts do not accept allegations of legal conclusions as correct for a motion to dismiss under Rule 12(b)(6). [T]he sufficiency of a claim to withstand a motion to dismiss is tested by its success or failure in setting out a state of facts which, when liberally considered, would entitle plaintiff to some relief. In testing the legal sufficiency of the complaint the well pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of facts are not admitted. In [Sutton v. Duke, 277 N.C. 94, 102-03, 176 S.E.2d 161, 166 (1970) ], the Supreme Court quoted the following passage from 2A Moore's Federal Practice " 12.08 (2d ed. 1968) in stating the rule as to when dismissal is proper: " "A [complaint] may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim." " (Emphasis added). | Although courts must take the factual allegations of the complaint as true when considering a motion to dismiss for failure to state a claim, the courts do not accept allegations of legal conclusions as correct. N.C. R. Civ. P. 12(b)(6). | Do the courts accept allegations of legal conclusions as correct? | 037118.docx | LEGALEASE-00150744-LEGALEASE-00150745 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10680 | Galion Iron Works & Mfg. Co. v. J.D. Adams Mfg. Co., 128 F.2d 411 | 25T+182(2) | Assuming the binding effect of the agreement to arbitrate, plaintiff did not see fit originally to avail itself of that remedy. Rather it brought suit. A right to arbitration arising out of mutual agreement, like any other contractual right, may be waived, amended or altered. The Belize, D.C., 25 F.Supp. 663, appeal dismissed 2 Cir., 101 F.2d 1005; Radiator Specialty Co. v. Cannon Mills, Inc., 4 Cir., 97 F.2d 318, 117 A.L.R. 299; La Nacional Platanera v. North American F. & S. S. Corp., 5 Cir., 84 F.2d 881. Commencement of a suit in court rather than reliance upon arbitration, with answer by the opposing party upon the merits, is a waiver of the right to arbitrate by both parties. The Belize, D.C., 25 F.Supp 663; McKenna Process Co. v. Blatchford Corp., 304 Ill.App. 101, 25 N.E.2d 916. The plaintiff brought suit to recover unpaid royalties which defendant claimed it did not owe. It had a clear right to have the dispute arbitrated. This right was abandoned by suit; in that abandonment defendant acquiesced by answer on the merits. Plaintiff could have sought arbitration but it exercised its option of bringing suit. By its election, it waived its right to arbitration. | Commencement of an action in court rather than a reliance on arbitration, with answer by the opposing party on the merits, is a "waiver" of the right to arbitrate by both parties. | Is commencement of a suit in court followed by an answer by the opposing party upon the merits considered a waiver of the right to arbitrate by both parties? | Alternative Dispute Resolution - Memo 797 - RK_59482.docx | ROSS-003294066-ROSS-003294068 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 10681 | In re Lopez, 486 B.R. 221 | 172H+117 | The Debtors claim that the Defendants violated TILA and the MCCCDA by failing to provide the Debtors with a total of four Notices of Right to Cancel ("Notices") as required under those statutes. Even were the Debtors' claim not time barred, as the Defendants assert, the First Circuit Court of Appeals has now clarified that, so long as a borrower receives one Notice, the rescission period may not be extended under either statute. See McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 216 (1st Cir.2012); Cromwell v. Countrywide Home Loans, Inc., 483 B.R. 36, 43"44 (D.Mass.2012). | So long as a borrower receives one notice of right to cancel, the rescission period may not be extended under either the Truth in Lending Act (TILA) or the Massachusetts Consumer Credit Cost Disclosure Act (MCCCDA). Consumer Credit Protection Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq.; M.G.L.A. c. 140D, S 10 et seq. | Is the rescission period extended as long as the borrower received one notice of right to cancel? | 014003.docx | LEGALEASE-00150974-LEGALEASE-00150975 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 10682 | Am. Viscose Corp. v. City of Roanoke, 205 Va. 192 | 371+2510 | We may assume, without deciding, that the sale of the property, in July, 1961, was relevant evidence of its fair market value as of the date on which the assessment complained of became effective. But such sale was not conclusive evidence of its fair market value. It was merely one of the factors to be taken into consideration by the lower court in determining whether the assessment fixing the value at $1,664,965 was excessive. See Washington County Nat. Bank v. Washington County, supra, 176 Va., at page 222, 10 S.E.2d, at page 518; Skyline Swannanoa, Inc. v. Nelson County, 186 Va. 878, 887, 44 S.E.2d 437, 441. As is said in 84 C.J.S., Taxation, " 576-c, pp. 1147, 1148, "evidence of the purchase price of the assessed property while not conclusive is to be accorded substantial weight on the issue of 'fair market value.'" | Evidence of purchase price of assessed property is to be accorded substantial weight on issue of fair market value of property for tax purposes. | Should the evidence of the recent sale of the properties be accorded substantial weight on the issue of fair market value? | 018348.docx | LEGALEASE-00151002-LEGALEASE-00151003 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 10683 | Monette Rd. Imp. Dist. v. Dudley, 144 Ark. 169 | 200+121 | The functions of the board of assessors in assessing benefits and the board of commissioners in adjusting them on complaint of the property owners is not judicial in the ordinary sense, but it is in the nature of a legislative power. Pine Bluff Water & Light Co. v. City of Pine Bluff, 62 Ark. 196, 35 S. W. 227; Mo. Pac. Ry. Co. v. Izard County Highway Improvement District, 220 S. W. 452. | Under Road Laws 1919, vol. 1, p. 105, creating the Monette Road Improvement District, as amended at January, 1920, special session, the functions of the board of assessors in assessing benefits, and of the board of commissioners in adjusting them, on the complaint of the property owners, is not judicial in the ordinary sense, but is in the nature of a legislative power. | Are the assessments by the commissioners judicial in nature? | 019161.docx | LEGALEASE-00151010-LEGALEASE-00151011 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 10684 | Aldrich v. Collins, 3 S.D. 154 | 200+130 | No power seems to have been, by any provisions of the statute, conferred upon the town supervisors to appropriate or expend any money upon highways other than the money derived from the two sources above specified, unless money for such purposes shall be raised by the vote of the electors,-which will be discussed under our second point. Whether or not the funds in the hands of the town treasurer included any delinquent highway labor and road tax or surplus money paid over by the overseers of highways does not appear from the returns, and hence we must presume no such funds were included. As the statute provides that the ordinary highway labor and road tax shall be expended under the supervision of road overseers, and within their respective road districts, and that the money paid as a commutation for such labor shall be collected and expended by the road overseers within their respective districts, the town supervisors have no power to appropriate and expend such taxes, or any part thereof, on any particular highway, except such part as may be returned as delinquent, and collected by the county treasurer, or as may remain as surplus, and be paid over to the supervisors by the road overseers. And it cannot be seriously contended that the supervisors can divert the funds raised and collected for incidental town expenses to the improvement of highways, as funds raised "by taxation, loan, or assessment for one purpose shall not be diverted to any other." Section 2, art. 10, Const.; Dill. Mun. Corp. (3d Ed.) " 603, and cases there cited. The supervisors are not authorized to contract any debt against the town for the purpose of improving the highways, except in the manner pointed out in article 22, Pol. Code, (sections 829-836, Comp. Laws.) No proceedings seem to have been taken under these sections. Our conclusions are, therefore, that the town supervisors did not possess the power to make the appropriation in | Under Comp. Laws, S 772, town supervisors have charge of such affairs "as are not by law committed to other town officers." Section 1272 provides for the assessment of a road tax, whose collection and expenditure, under section 1266, are under the control of road supervisors. Const. art. 10, S 2, provides that funds raised by "taxation, loan, or assessment for one purpose shall not be diverted to any other." Held, that the supervisors have no authority to appropriate the ordinary town funds to the improvement of highways. | Can the funds raised by taxation for one purpose diverted for another purpose? | Highways -Memo 380 - DB.docx | LEGALEASE-00040758-LEGALEASE-00040759 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10685 | Cochran v. Securitas Sec. Servs. USA, 2016 IL App (4th) 150791 | 307A+561.1 | "A section 2"619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter defeating the plaintiff's claim." Skaperdas v. Country Casualty Insurance Co., 2015 IL 117021, " 14, 390 Ill.Dec. 94, 28 N.E.3d 747. "Section 2"619(a)'s purpose is to provide litigants with a method of disposing of issues of law and easily proved issues of fact relating to the affirmative matter early in the litigation." Hascall v. Williams, 2013 IL App (4th) 121131, " 16, 375 Ill.Dec. 112, 996 N.E.2d 1168. The supreme court has defined the term "affirmative matter" as follows:" "[A] type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusion of material fact unsupported by allegations of specific fact contained [in] or inferred from the complaint * * * [not] merely evidence upon which defendant expects to contest an ultimate fact stated in the complaint." " Smith v. Waukegan Park District, 231 Ill.2d 111, 121, 324 Ill.Dec. 446, 896 N.E.2d 232, 238 (2008) (quoting 4 Richard A. Michael, Illinois Practice " 41.7, at 332 (1989)). | Rule governing motion to dismiss complaint when motion admitted legal sufficiency of plaintiff's complaint and required assertion of affirmative defense did not apply to motion to dismiss complaint against provider of security services for morgue for wrongful interference with mother's right to possession of her son's remains, where provider did not identify any affirmative matter that would defeat mother's claim, and provider argued that underlying facts were insufficient to state claim. S.H.A. 735 ILCS 5/2-619(a). | Will a motion to dismiss based upon certain defects or defenses admit the legal sufficiency of the complaint? | 037035.docx | LEGALEASE-00150968-LEGALEASE-00150969 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 10686 | Belcher Ctr. LLC v. Belcher Ctr., 883 So. 2d 338 | 307A+561.1 | When considering an order granting a motion to dismiss, the de novo standard of review applies. Al-Hakim v. Holder, 787 So.2d 939, 941 (Fla. 2d DCA 2001). On a motion to dismiss for failure to state a cause of action, a trial court is confined to the four corners of the complaint, and the material allegations of the complaint must be taken as true. Davidson v. Iona-McGregor Fire Prot. & Rescue Dist., 674 So.2d 858, 859 (Fla. 2d DCA 1996). If the court is required to consider matters outside of the four corners of the complaint, then the cause is not subject to dismissal on the basis of an affirmative defense. Value Rent-A-Car, Inc. v. Grace, 794 So.2d 619, 621 (Fla. 2d DCA 2001). | If the court is required to consider matters outside of the four corners of the complaint, then the cause is not subject to dismissal on the basis of an affirmative defense. | When is the cause subject to dismissal on the basis of an affirmative defense? | 037252.docx | LEGALEASE-00151022-LEGALEASE-00151023 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 10687 | Fenlon v. Union Elec. Co., 266 S.W.3d 852 | 307A+679 | Review of a circuit court's order granting a motion to dismiss is de novo. Gibbons v. J. Nuckolls, Inc., 216 S.W.3d 667, 669 (Mo.2007) (en banc). A motion to dismiss for failure to state a claim assumes that all averments in plaintiff's petition are true and tests only the adequacy of plaintiff's petition. Reynolds v. Diamond Foods & Poultry, Inc., 79 S.W.3d 907, 909 (Mo.2002).We assume the factual allegations contained in the petition are true and make no attempt to weigh their credibility or persuasiveness. Rychnovsky v. Cole, 119 S.W.3d 204, 208 (Mo.App. W.D.2003). "It is not the function of the trial court on a motion to dismiss or of this court on appeal from a judgment of dismissal to determine on the merits whether Appellant is entitled to relief." Moore v. Missouri Highway & Transp. Comm'n, 169 S.W.3d 595, 599 (Mo.App. S.D.2005). | A motion to dismiss for failure to state a claim assumes that all averments in plaintiff's petition are true and tests only the adequacy of plaintiff's petition. | Are all factual allegations contained in the petition assumed to be true on a motion to dismiss for failure to state a claim? | 037274.docx | LEGALEASE-00150796-LEGALEASE-00150797 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10688 | Providence Volunteer Fire Dep't v. Town of Weddington, 800 S.E.2d 425 | 307A+554 | In this first category where neither party submits evidence, "[t]he allegations of the complaint must disclose jurisdiction although the particulars of jurisdiction need not be alleged." Bruggeman v. Meditrust Acquisition Co., 138 N.C.App. 612, 615, 532 S.E.2d 215, 217 (2000) (citations omitted). If, however, the defendant submits supportive evidence"for example an affidavit"along with the motion to dismiss, the complaint's allegations "can no longer be taken as true or controlling and [the] plaintiff[ ] cannot rest on the allegations of the complaint." Id. at 615-16, 532 S.E.2d at 218 (citation omitted). In this instance, the court must consider "(1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence)." Banc of Am., 169 N.C.App. at 693-94, 611 S.E.2d at 182-83 (citations omitted). | If a defendant moving to dismiss for lack of personal jurisdiction submits supportive evidence, for example an affidavit, along with the motion to dismiss, the complaint's allegations can no longer be taken as true or controlling and the plaintiff cannot rest on the allegations of the complaint. | When can the complaint's allegations no longer be taken as true or controlling? | 037294.docx | LEGALEASE-00150830-LEGALEASE-00150831 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 10689 | Fillmore v. Taylor, 80 N.E.3d 835 | 307A+679 | We answer that question de novo, taking the well-pleaded facts or specific factual allegations of the complaint to be true and disregarding any conclusory allegations unsupported by well-pleaded facts. Simpkins v. CSX Transportation, Inc., 2012 IL 110662, 26, 358 Ill.Dec. 613, 965 N.E.2d 1092; Primax Recoveries, Inc. v. Atherton, 365 Ill. App. 3d 1007, 1010, 303 Ill.Dec. 452, 851 N.E.2d 639 (2006). Not only will we assume the well-pleaded facts in the complaint to be true, but we will regard those facts in the light most favorable to plaintiff. See Johannesen, 2011 IL App (2d) 110108, 27, 357 Ill.Dec. 663, 963 N.E.2d 1061. If, from the well-pleaded facts, a reasonable inference could be drawn in plaintiff's favor"which is to say, in favor of the legal sufficiency of the complaint"we will draw that inference. See id. "Dismissal pursuant to section 2-615 is only proper where, when construing the allegations of the complaint in the light most favorable to plaintiff, it clearly appears that no set of facts can be proved under the pleadings which will entitle the plaintiff to recover." Armstrong v. Snyder, 336 Ill. App. 3d 567, 568-69, 270 Ill.Dec. 801, 783 N.E.2d 1101 (2003). | Dismissal with respect to pleadings is only proper where, when construing the allegations of the complaint in the light most favorable to plaintiff, it clearly appears that no set of facts can be proved under the pleadings which will entitle the plaintiff to recover. 735 Ill. Comp. Stat. Ann. 5/2-615. | When is a dismissal with respect to pleadings only proper? | 037382.docx | LEGALEASE-00151212-LEGALEASE-00151213 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 10690 | Mechanics' Bank of Alexandria v. Bank of Columbia, 18 U.S. 326 | 308+92(1) | It is by no means true, as was contended in argument, that the acts of agents derive their validity from professing, on the face of them, to have been done in the exercise of their agency. In the more solemn exercise of derivative powers, as applied to the execution of instruments known to the common law, rules of form have been prescribed. But in the diversified exercise of the duties of a general agent, the liability of the principal depends upon the facts, 1. That the act was done in the exercise, and, 2. Within the limits of the powers delegated. These facts are necessarily inquirable into by a Court and jury; and this inquiry is not confined to written instruments, (to which alone the principle contended for could apply,) but to any act with, or without writting, within the scope of the power or confidence reposed in the agent; as, for instance, in the case of money credited in the books of a teller, or proved to have been deposited with him, though he omits to credit it. | The liability of the principal depends on whether the act of his agent was done in the exercise and within the limits of the powers delegated. The profession on their face that an agent's acts were in the exercise of his agency does not give them their validity. | Does the liability of the principal depend on whether the act was done in the exercise of powers delegated? | 041426.docx | LEGALEASE-00151176-LEGALEASE-00151177 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10691 | Kasson v. Noltner, 43 Wis. 646 | 308+92(1) | The rule of law which controls the decision of this case is, that "a principal is responsible, either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to the agent his authority." This rule, says Professor Parsons, may be called the foundation of the law of agency. 1 Pars. on Con., 44. And Judge Story, in his commentaries on the law of agency, lays down the same rule more elaborately, and says it is founded in the maxim of natural justice, that he who has, although innocently, enabled any person to do an act which might be injurious to himself or to another innocent party, shall himself suffer the injury, rather than the innocent party who has placed confidence in him. " 127. | A principal is responsible for the act of his agent when he has either given the agent authority to do the act, or justified the party dealing with the agent in believing that the latter had such authority. | Is a principal responsible for an agents act if he justified the party dealing with the agent in believing that he has given the agent authority? | 041465.docx | LEGALEASE-00151312-LEGALEASE-00151314 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10692 | British Am. & E. Co. v. Wirth Ltd., 592 F.2d 75 | 308+92(1) | Although the district court indicated in its review of Wirth's libel claim that Sunley was an independent contractor and not an agent, we hold that in his dealings with Non-Ferrous Sunley acted as Wirth's agent. An agent serves under the control and supervision of his principal; so long as he acts within the ambit of his authority to represent his principal, he binds him. Such was the case with Sunley's dealings with Non-Ferrous once his agreement with Wirth took effect. The trial record indicates that Sunley was empowered to take orders from Non-Ferrous and from other customers for Wirth's account.2 This is the essence of the agency relation. See Restatement of Agency 2d ss 1, 302 (1958). Indeed, Sunley handled customer relations on Wirth's behalf in a number of ways, as he was hired to do, from assessing their supply needs to informing them of changes in the way Wirth planned to handle import duties. As Wirth's agent, Sunley also had supervisory authority over Wirth's secretarial staff. Accordingly, if Sunley accepted payments from Non-Ferrous designed to influence the way in which he fulfilled his duties as Wirth's agent, Wirth is entitled to recover those payments and Sunley is barred from recovering on the contract. | An agent serves under the control and supervision of his principal; so long as he acts within the ambit of his authority to represent his principal, he binds the principal. | Can an agent bind his principal if he acts within the ambit of his authority to represent his principal? | Principal and Agent - Memo 192 - KC_59473.docx | ROSS-003285747-ROSS-003285748 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 10693 | Hage v. United States, 35 Fed. Cl. 147 | 316H+106 | Contrary to plaintiffs' argument, the inclusion of a "contract number" to identify each grazing permit does not metamorphize the permit into a contract. Plaintiffs have not provided any documentation to support their position that the Forest Service had the requisite authority to enter into a grazing contract with plaintiffs. "Government's agents cannot contract to do that which they do not have a legal right to do." Clawson v. United States, 24 Cl.Ct. 366, 371 (1991); see also Osborne v. United States, 145 F.2d 892, 896 (9th Cir.1944). Even if plaintiffs believed the permit to be a contract and relied on the permit as a contract, Forest Service personnel cannot contractually bind the government without the proper legal authority. | Forest Service personnel cannot contractually bind United States without proper legal authority. | Can the Forest Service personnel contractually bind United States without proper legal authority? | Woods and Forest - Memo 21 - ANM_59391.docx | ROSS-003293519-ROSS-003293520 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10694 | Envtl. Barrier Co. v. Slurry Sys., 540 F.3d 598 | 25T+171 | 760 F.2d at 175. "If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it." Id. (citing cases from the Ninth, Fifth, and Second Circuits); see also CUNA Mut. Ins. Soc'y v. Office and Prof'l Employees Int'l Union, Local 39, 443 F.3d 556, 563 (2006) ("[T]here was not a true question of arbitrability in this case. Instead, CUNA dresses up its arguments about the scope of the arbitrator's authority in arbitrability clothing." (internal quotation marks omitted)); cf. Flender, 953 F.2d at 278 ("We reiterate "this circuit's caution against allowing a party to use issues of the arbitrator's authority as a ruse to obtain judicial review of the merits of an arbitral award." " (quoting Burkart Randall v. Lodge No. 1076, 648 F.2d 462, 467 (7th Cir.1981))). SSI's professed challenge to arbitrability comes too late. By freely submitting to the arbitration of its claims without preserving a challenge to the arbitrator's authority, SSI missed the chance to come back later, before a court, and deny that an agreement to arbitrate existed. | If party voluntarily and unreservedly submits issue to arbitration, he cannot later argue that arbitrator had no authority to resolve it. | Can a party who voluntarily and unreservedly submits an issue to arbitration later argue that the arbitrator had no authority to resolve it? | 007958.docx | LEGALEASE-00151421-LEGALEASE-00151423 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10695 | Martin v. Yasuda, 829 F.3d 1118 | 25T+182(2) | There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate. We have stated, however, that a party's extended silence and delay in moving for arbitration may indicate a "conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims," which would be inconsistent with a right to arbitrate. Van Ness Townhouses v. Mar Indus. Corp., 862 F.2d 754, 759 (9th Cir. 1988) (quoting Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, 821 F.2d 772, 777 (D.C. Cir. 1987)). We find this element satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court. See id. at 756, 759 (finding waiver when party answered complaints, moved to dismiss the action, and did not claim a right to arbitration in any of the pleadings); Kelly v. Pub. Util. Dist. No. 2, 552 Fed.Appx. 663, 664 (9th Cir. 2014) (finding this element satisfied when the parties "conducted discovery and litigated motions, including a preliminary injunction and a motion to dismiss"); see also Plows v. Rockwell Collins, Inc., 812 F.Supp.2d 1063, 1067"68 (C.D. Cal. 2011) (finding this element satisfied when the defendant actively litigated the case by removing it to federal court, seeking a venue transfer, participating in meetings and scheduling conferences, negotiating and entering into a protective order, and participating in discovery that would not have been available under the arbitration agreement). A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver. See In Re Mirant Corp. v. Castex Energy, Inc., 613 F.3d 584, 591 (5th Cir. 2010) ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court."); Hooper v. Advance Am., Cash Advance Ctrs. of Missouri, Inc., 589 F.3d 917, 923 (8th Cir. | A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver. | Is a statement made by a party in pleadings or motions that it has a right to arbitration enough to defeat a claim of waiver? | 008020.docx | LEGALEASE-00151495-LEGALEASE-00151497 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10696 | Thompson v. Irwin Home Equity Corp., 300 F.3d 88 | 25T+182(1) | As an alternative ground for avoiding arbitration, the Thompsons point to the following language in the arbitration agreement: Nothing contained in this Alternative Dispute Resolution provision shall limit the right of any party to this Agreement to exercise self-help remedies such as setoff or to obtain provisional or ancillary remedies from a court of competent jurisdiction before, after, or during the pendency of any arbitration or other proceeding. The exercise of a remedy does not waive the right of either party to resort to arbitration. The Thompsons take the view that rescission is a "self-help remedy" under TILA, and is therefore not subject to arbitration. | Although loan agreement indicated that arbitration provision did not limit parties' right to exercise self-help remedies, borrowers' attempt to exercise right to rescind transaction did not affect lender's right to have arbitrator decide whether grounds for rescission existed in light of additional language providing that "exercise of a remedy does not waive the right of either party to resort to arbitration." | Does Alternative Dispute Resolution limit the right of any party to exercise self-help remedies? | Alternative Dispute Resolution - Memo 841 - RK_59526.docx | ROSS-003282028-ROSS-003282029 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 10697 | United States v. Andrews, 530 F.3d 1232 | 108H+14 | The Lathrops contend that they are distinguishable from the other victims because Andrews's fraud on them was not part of the scheme of which she was convicted. We are inclined to disagree with this contention; the scheme alleged in the information appears to encompass the Lathrops' transaction, in both time and content. But we need not rely on that being the case. Even if the Lathrops are correct that their fraud was not part of the scheme alleged in the information, this does not necessarily distinguish them from the other fraud victims, who also became involuntary creditors of Andrews. The district court acted within the boundaries of sound discretion in deciding that the other victims would not be unjustly enriched by sharing in the money recovered from their defrauder. That Andrews spent their money first does not make their share of the recovery unjust. As we have previously recognized, a court should not employ an equitable fiction "to elevate [one] claim over the claims of other creditors if those creditors are similarly situated." Hill v. Kinzler (In re Foster), 275 F.3d 924, 928 (10th Cir.2001) (addressing lowest-intermediate-balance rule). | Court should not employ an equitable fiction to elevate one claim over the claims of other creditors if those creditors are similarly situated. | Can a court employ an equitable fiction to elevate one claim over the claims of other creditors if those creditors are similarly situated? | 014085.docx | LEGALEASE-00151542-LEGALEASE-00151543 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10698 | Bolin Farms v. Am. Cotton Shippers Ass'n, 370 F. Supp. 1353 | 95+2 | Federal courts apply the conflicts of law rule of the forum. Klaxon Company v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Louisiana Civil Code Article 10 states: "The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed."From this provision has developed the general rule that validity and construction of a contract is determined by the lex loci contractus and the remedy according to lex fori. Bologna Bros. v. Morrissey, 154 So.2d 455 (La.App. 2nd Cir. 1963). | Codal article relating to governing law for public and private written instruments has developed general rule that validity and construction of contract is determined by lex loci contractus and the remedy according to lex fori. LSA-C.C. art. 10. | Is the validity and construction of a contract determined by lex loci contractus? | Bills and Notes - Memo 926 - RK_59558.docx | ROSS-003320524-ROSS-003320525 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 10699 | Castrillo v. Am. Home Mortg. Servicing, 670 F. Supp. 2d 516 | 172H+1362 | The three year limitation has not run with respect to Castrillo's attempted rescission of the February 2008 Loan Modification Agreement. Official Staff Interpretation, Supp. I to 12 C.F.R. " 226.20(a). Nonetheless, Castrillo has failed to allege that the Loan Modification Agreement is subject to the TILA rescission provisions. By its terms, the Loan Modification Agreement does not "satisfy" and "completely replace" the 2005 mortgage and note but rather "amends and supplements" them. (R. Doc. 20"4, "2008 Loan Modification"; R. Doc. 25, Ex. D.) The agreement expressly provides that it is not a "satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged...." (Id.) Nor does the Loan Modification Agreement add a variable-rate feature; indeed, it includes a fixed interest rate of 6.50%. (Id.) Thus, as its terms suggest, the Loan Modification Agreement is a mere modification of an existing debt and not a "refinancing" by a different creditor. It therefore does not give rise to disclosure requirements or rescission rights under TILA. See Official Staff Interpretation, Supp. I to 12 C.F.R. " 226.20(a), " 1. Accordingly, Castrillo's claims under TILA are futile, and his motion to amend them to his complaint must be DENIED. Defendants' motion to dismiss Castrillo's TILA claims is GRANTED. | Mortgagor's loan modification agreement constituted a mere modification of mortgagor's existing debt and not a "refinancing" by a different creditor, such that it did not give rise to disclosure requirements or rescission rights under Truth in Lending Act (TILA). Truth in Lending Act, S 125(b), 15 U.S.C.A. S 1635(b). | Will a mortgagor's loan modification agreement constitute a mere modification of mortgagor's existing debt or a refinancing by a different creditor? | 013884.docx | LEGALEASE-00151568-LEGALEASE-00151569 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 10700 | Chamness v. Mays, 2014 IL App (5th) 130381 | 200+75 | An established public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute or abandoned. Hart v. Town of Shafter, 348 Ill.App.3d 713, 715, 284 Ill.Dec. 699, 810 N.E.2d 489 (2004). Nonuse of the road alone is insufficient to establish abandonment by the public. Abandonment will be found only where the public has acquired the legal right to another road or where the necessity for another road has ceased to exist. For the presumed necessity for the road to cease to exist some circumstance must change. This additional burden is imposed because a road is an indispensible public necessity that the public would not abandon without replacing. | An established public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute or abandoned. | How does an established public highway lose its character as a public road? | Highways - Memo 297 - RK_59590.docx | ROSS-003297023-ROSS-003297024 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 10701 | Powers v. Aberdeen Golf & Country Club, 886 So. 2d 312 | 307A+561.1 | Turning to Powers' issues on appeal, if on remand the trial court again rules that Aberdeen assumed Shea Homes' liability, Aberdeen is barred from asserting a statute of limitations defense. Aberdeen did not assert this affirmative defense in its responsive pleading. Florida Rule of Civil Procedure 1.110(d) specifically requires that the affirmative defense of the statute of limitations shall be asserted in the responsive pleading. "Generally, [affirmative] defenses ... are not properly considered on a motion to dismiss." U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc., 861 So.2d 74, 76 (Fla. 4th DCA 2003) (citations omitted). However, "[a]ffirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b)." Fla. R. Civ. P. 1.110(d). | Affirmative defenses are not properly considered on a motion to dismiss; however, affirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense. West's F.S.A. RCP Rule 1.110(d). | Can affirmative defenses appearing on the face of a prior pleading be asserted as grounds for a motion or defense? | Pretrial Procedure - Memo # 8609 - C - DA_59681.docx | ROSS-003280109-ROSS-003280110 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10702 | Henderson v. Johnson, 97 So. 3d 946 | 307A+678 | This leaves the issue of the sufficiency of the complaint when restricting review to the four corners of the document. See Varnes v. Dawkins, 624 So.2d 349, 350 (Fla. 1st DCA 1993) (holding "[i]n determining the sufficiency of the complaint, the trial court may not look beyond the four corners of the complaint, consider any affirmative defenses raised by the defendant, nor consider any evidence likely to be produced by either side."). "Whether a complaint is sufficient to state a cause of action is an issue of law. Consequently, a ruling on a motion to dismiss for failure to state a cause of action is reviewable on appeal by the de novo standard of review." Sarkis v. Pafford Oil Co., Inc., 697 So.2d 524, 526 (Fla. 1st DCA 1997). | Whether a complaint is sufficient to state a cause of action and survive a motion to dismiss is an issue of law. | "Is whether a complaint is sufficient to state a cause of action an issue of law, on motion to dismiss?" | 037735.docx | LEGALEASE-00151787-LEGALEASE-00151788 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 10703 | Barrie v. Hosts of Am., 94 Wash. 2d 640 | 21+2 | Pursuant to CR 56(e), supporting and opposing affidavits shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence. As we noted in Meadows v. Grant's Auto. Brokers, Inc., 71 Wash.2d 874, 880, 431 P.2d 216 (1967), an attorney is not disqualified from making an affidavit based upon his or her personal knowledge of the facts set forth therein. "(S)uch an affidavit is entitled to the same consideration as that of any other affidavit based upon testimonial knowledge." | An attorney is not disqualified from making an affidavit based upon his or her personal knowledge of the facts set forth therein. | Can an attorney make an affidavit based upon his personal knowledge of the facts? | Affidavits - Memo 39 - _1W1JcTDzlbW5DMRIqmY-YzfjAPPiuXfDe.docx | ROSS-000000174-ROSS-000000175 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 10704 | Raven v. Panama Canal Co., 583 F.2d 169 | 92+3072 | Plaintiff also argues that the Equal Protection Clause of the United States Constitution requires extension of all Privacy Act rights to Panamanian employees of the Canal Zone Government. We cannot accept the plaintiff's argument. The United States Supreme Court has recognized that Acts of Congress may treat aliens differently than citizens without such treatment being considered "invidious" or in violation of the Equal Protection clause. A legitimate distinction exists between citizens and aliens to warrant different treatment. Mathews v. Diaz, 426 U.S. 67, 7879, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). | Acts of Congress may treat aliens differently than citizens without such treatment being considered "invidious" or in violation of the equal protection clause. U.S.C.A.Const. Amend. 14. | Is it invidious when aliens are treated differently from citizens? | 006866.docx | LEGALEASE-00152544-LEGALEASE-00152545 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 10705 | Mathews v. Diaz, 426 U.S. 67 | 24+116 | The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogeneous legal classification. For a host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other; and the class of aliens is itself a heterogeneous multitude of persons with a wide-ranging variety of ties to this country. | A legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other. | Can distinctions between citizens and aliens justify attributes and benefits for one class not accorded to the other? | "Aliens, Immigration and Citizenship -Memo 41 - RK_60120.docx" | ROSS-003307455-ROSS-003307456 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10706 | Drill Masters-Eldorado Tool v. PCC Specialty Prod., 49 F. Supp. 3d 188 | 8.30E+183 | "A promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies .... Where there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law." Fid. Bank v. Krenisky, 72 Conn.App. 700. | Under Connecticut law, a promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies; where there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. | Is contract law applicable to promissory notes? | 009721.docx | LEGALEASE-00152564-LEGALEASE-00152565 | SA, Sub | 0.08 | 0 | 0 | 1 | 1 | |
| 10707 | Bank of New York v. Raftogianis, 418 N.J. Super. 323 | 83E+426 | How does one become a holder of a negotiable note? In addressing that question it is necessary to distinguish between "transfer" and "negotiation." It is also necessary to distinguish between the handling of notes payable "to order" and notes payable "to bearer." In this particular case, it is also necessary to recognize that a note initially made payable "to order" can become a bearer instrument, if it is endorsed in blank.See N.J.S.A. 12A:3"109(c), providing that an instrument payable to an identified person may become payable to bearer if it is endorsed in blank. See also N.J.S.A. 12A:3"205(b) (describing what qualifies as a blank endorsement); and Miller & Harrell, The Law of Modern Payment Systems and Notes " 2.02 at 77"78 (2002) (noting that an instrument bearing the endorsement "Pay to the order of ___________" is a bearer instrument). Such a bearer note can be both transferred and negotiated by delivery alone. See Corporacion Venezolana de Fomento v. Vintero Sales, 452 F.Supp. 1108, 1117 (S.D.N.Y.1978). | A note initially made payable "to order" that becomes a bearer instrument by being endorsed in blank can be both transferred and negotiated by delivery alone. N.J.S.A. 12A:3-109(c). | Can a note initially made payable to order become a bearer instrument if it is endorsed in blank? | 010830.docx | LEGALEASE-00152311-LEGALEASE-00152312 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 10708 | Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114 | 172H+1322 | Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. " 1601. To effectuate TILA's purpose, a court must construe "the Act's provisions liberally in favor of the consumer" and require absolute compliance by creditors. In re Ferrell, 539 F.3d 1186, 1189 (9th Cir.2008); see also Jackson v. Grant, 890 F.2d 118, 120 (9th Cir.1989) ("Even technical or minor violations of the TILA impose liability on the creditor."). | A court must construe TILA's provisions liberally in favor of the consumer and require absolute compliance by creditors. Truth in Lending Act, S 102, 15 U.S.C.A. S 1601. | "To effectuate the purpose of TILA, do courts construe its provisions liberally in favor of the consumer?" | Consumer Credit -Memo 100-SB_60168.docx | ROSS-003321780-ROSS-003321781 | Order, SA | 0.75 | 1 | 0 | 0 | 1 | |
| 10709 | Fin. Freedom Acquisition v. Standard Bank & Tr. Co., 2014 IL App (1st) 120982 | 172H+1555 | Although the counterclaim was timely filed, Standard Bank is not entitled to rescind the loan transaction because it is not an "obligor." Neither TILA nor Regulation Z defines "obligor." Black's Law Dictionary defines "obligor" as "[o]ne who has undertaken an obligation; a promisor or debtor." Black's Law Dictionary 1181 (9th ed. 2009). "The right to rescind may be exercised only by the obligor, i.e. the person to whom credit is extended. [Citation.] Thus, an individual who is not named on the Note executed by his or her spouse is not an "obligor" and does not have a right to rescind."Ferreira v. Mortgage Electronic Registration Systems, Inc., 794 F.Supp.2d 297, 302"03 (D.Mass.2011). | The right to rescind a loan transaction under the Truth in Lending Act (TILA) may be exercised only by the obligor, that is, the person to whom credit is extended; thus, an individual who is not named on the promissory note executed by his or her spouse is not an obligor, and does not have a right to rescind. Truth in Lending Act, S 125(a), 15 U.S.C.A. S 1635(a). | Can the right to rescind be exercised only by the person whom credit is extended to? | 013998.docx | LEGALEASE-00152615-LEGALEASE-00152616 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10710 | Walker v. Atwood Chevrolet-Olds, 189 F. Supp. 2d 594 | 360+18.19 | First, this court notes that, even if TILA had been asserted by the plaintiff in this case, Congress specifically has reserved the prerogative of states to enforce the requirements of TILA, and has not displaced state law in this area completely. See Greer v. MAJR Financial Corporation, 105 F.Supp.2d 583, 590 (S.D.Miss.2000), citing Hart v. Bayer Corporation, 199 F.3d 239, 244 (5th Cir.2000). In Hart the Fifth Circuit noted that in order for complete preemption to exist the federal statute must (1), contain a civil enforcement provision; (2), include a specific grant of federal subject matter jurisdiction; and (3), reflect a clear manifestation of congressional intent to make preempted state-law claims removable to federal court. Based on the statute's preservation of a state's prerogative to enforce, and based on the absence of these three factors, TILA clearly is not a federal statute which completely preempts state law. | Congress specifically has reserved the prerogative of states to enforce the requirements of the Truth-in-Lending Act (TILA), and has not displaced state law in this area completely. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Has Congress specifically reserved prerogative of states to enforce the requirements of TILA? | Consumer Credit -Memo 95-SB_60173.docx | ROSS-003309205-ROSS-003309206 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 10711 | Norfolk & W. Ry. Co. v. Gee, 104 Va. 806 | 320+305(1) | In Piollet v. Simmers, 106 Pa. 95, 51 Am. Rep. 496, where numerous cases are cited and the question quite fully discussed, the horse of a traveler took fright at a small barrel mounted on wheels, which the owners of the property through which the highway ran were using in whitewashing their fences, and which they moved from time to time as the work progressed. They left it standing covered over with a white cloth, and having a shovel projecting a short distance above the top, all day Sunday on one side of the beaten highway track. In an action for damages thus caused it was held that unless there was something of an unusual or extraordinary character in the structure and appearance of the apparatus, which would naturally tend to frighten horses of ordinary gentleness and training, it was not negligence to use it; and its reasonable use for no longer a time than was naturally required on the highway in whitewashing the fence of defendants would not subject them to liability, although some horses might and did take fright at seeing it. | In an action against a railroad company for negligently frightening plaintiff's horse at a public crossing, it is not sufficient to charge that the defendant negligently placed a hand-car with long projecting arms at or so near the crossing as to render it unsafe for the travelling public in vehicles drawn by horses to cross on the highway, and that, in consequence thereof, the plaintiff's horse took fright and caused the injury declared on in the declaration. Nor is a count good which makes similar charges and adds that defendant's servants, negligently hung wearing apparel and bright tin buckets on the arms of the hand-car, and that these objects caused the plaintiff's horse to take fright. In each instance it was necessary to aver that the hand-car was, under the circumstances stated, an object of such unusual or extraordinary appearance as to have a natural tendency to frighten horses of ordinary gentleness and training, although that was a question to be determined by the jury from all the circumstances of the case, under proper instructions from the court. | "Can liability be subjective, if one uses apparatus for a reasonable time in a highway and if it frightens the horse?" | 019127.docx | LEGALEASE-00152634-LEGALEASE-00152636 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 10712 | Rolle v. Cold Stone Creamery, 212 So. 3d 1073 | 307A+681 | We review de novo a trial court's order granting a motion to dismiss. See Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So.3d 1081, 1089 (Fla. 3d DCA 2014). The purpose of a motion to dismiss is "to test the legal sufficiency of the complaint, not to determine factual issues." See Fla. Bar v. Greene, 926 So.2d 1195, 1199 (Fla. 2006). Unlike a motion for summary judgment, when ruling on a motion to dismiss, " "[a] court may not go beyond the four corners of the complaint in considering the legal sufficiency of the allegations." " See Pacific Ins. Co., Ltd., v. Botelho, D.O., 891 So.2d 587, 590 (Fla. 3d DCA 2004) (quoting Barbado v. Green & Murphy, P.A., 758 So.2d 1173, 1174 (Fla. 4th DCA 2000)). Additionally, all allegations must be taken as true, and "any reasonable inferences drawn from the complaint must be construed in favor of the non-moving party." Minor v. Brunetti, 43 So.3d 178, 179 (Fla. 3d DCA 2010). | Unlike a motion for summary judgment, when ruling on a motion to dismiss, a court may not go beyond the four corners of the complaint in considering the legal sufficiency of the allegations. | Does a motion to dismiss test the legal sufficiency of the complaint and not determine a factual issue? | 037639.docx | LEGALEASE-00152095-LEGALEASE-00152096 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10713 | Pennsylvania Life Ins. Co. v. Simoni, 641 N.W.2d 807 | 307A+680 | Review of a district court's ruling on a motion to dismiss is for correction of errors at law. McCormick v. Meyer, 582 N.W.2d 141, 144 (Iowa 1998). "A motion to dismiss is sustainable only when it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claims asserted." Haupt v. Miller, 514 N.W.2d 905, 911 (Iowa 1994). For purposes of ruling on a motion to dismiss, we accept as true the facts alleged in the pleading sought to be dismissed. Id. at 907. Where the facts pertinent to the determinative issue in a motion to dismiss are disputed, the case usually cannot be resolved on such a motion. Hayden v. Ameristar Casino Council Bluffs, Inc., 641 N.W.2d 723, 724 (Iowa 2002). | Where the facts pertinent to the determinative issue in a motion to dismiss are disputed, the case usually cannot be resolved on such a motion. | "Where the facts pertinent to the determinative issue in a motion to dismiss are disputed, can the case usually be resolved on such a motion?" | Pretrial Procedure - Memo # 8790 - C - NC_59789.docx | ROSS-003282564-ROSS-003282565 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10714 | Total Access v. Caddo Elec. Co-op., 9 P.3d 95 | 307A+680 | We will review a disposition by dismissal under a de novo standard. Patel v. OMH Medical Center, Inc., 1999 OK 33, 987 P.2d 1185. "The purpose of a motion to dismiss is to test the legal sufficiency of the pleadings, not to evaluate the underlying facts. The question before us is hence whether, taking all of plaintiff's allegations as true, [it] is precluded from recovering as a matter of law." Id. A motion to dismiss is the proper method for testing a party's standing. In re Estate of Geller, 1999 OK CIV APP 45, 980 P.2d 665, 668. Total's standing does not depend on the merits of its contention Caddo's conduct is illegal; the proper inquiry is whether Total alleges injury to a legally protected interest as contemplated by statutory or constitutional provisions. Independent School Dist. No. 9 of Tulsa County v. Glass, 1982 OK 2, 639 P.2d 1233, 1237. | Purpose of a motion to dismiss is to test the legal sufficiency of the pleadings, not to evaluate the underlying facts. | "Is the purpose of a motion to dismiss to test the legal sufficiency of the pleadings, not to evaluate the underlying facts?" | Pretrial Procedure - Memo # 8799 - C - RY_59798.docx | ROSS-003281343-ROSS-003281344 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10715 | Davis By & Through Davis v. Bell, 705 So. 2d 108 | 307A+680 | The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not to determine issues of fact. See Davidson, 674 So.2d at 860. It is not a substitute for a motion for summary judgment. See Lowery v. Lowery, 654 So.2d 1218, 1219 (Fla. 2d DCA 1995). The trial court abused its discretion when it dismissed the case against Bell based on its resolution of a factual question. We reverse and remand with instructions to reinstate the Davises' action against Bell. | Purpose of motion to dismiss is to test legal sufficiency of complaint, not to determine issues of fact. | Is the purpose of a motion to dismiss to test legal sufficiency of complaint and not to determine issues of fact? | Pretrial Procedure - Memo # 8807 - C - NS_59806.docx | ROSS-003294863-ROSS-003294864 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10716 | Chicago City Day Sch. v. Wade, 297 Ill. App. 3d 465 | 307A+561.1 | We begin our analysis by noting that a motion to dismiss under section 2-615 challenges the legal sufficiency of the complaint. Urbaitis v. Commonwealth Edison, 143 Ill.2d 458, 475, 159 Ill.Dec. 50, 575 N.E.2d 548 (1991). The relevant inquiry is whether sufficient facts are contained in the pleadings which, if proved, would entitle a plaintiff to relief. Urbaitis, 143 Ill.2d at 475, 159 Ill.Dec. 50, 575 N.E.2d 548. Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint. Bryson v. News America Publications, 174 Ill.2d 77, 86, 220 Ill.Dec. 195, 672 N.E.2d 1207 (1996). Upon review of an order granting a section 2-615 motion, all well-pleaded facts are taken as true. Boyd v. Travelers Insurance Co., 166 Ill.2d 188, 195, 209 Ill.Dec. 727, 652 N.E.2d 267 (1995). In making this determination, the reviewing court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. McGrath v. Fahey, 126 Ill.2d 78, 90, 127 Ill.Dec. 724, 533 N.E.2d 806 (1988). In reviewing orders on a motion to dismiss, we apply a de novo standard of review. Dace International, Inc. v. Apple Computer, Inc., 275 Ill.App.3d 234, 237, 211 Ill.Dec. 591, 655 N.E.2d 974 (1995). | Motion to dismiss does not raise affirmative factual defenses, but alleges only defects on face of complaint. S.H.A. 735 ILCS 5/2-615. | Will a motion to dismiss raise affirmative factual defenses and allege defects on face of complaint? | 037825.docx | LEGALEASE-00152039-LEGALEASE-00152040 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 10717 | Stein v. Chiera, 130 A.D.3d 912 | 307A+679 | On a motion to dismiss a complaint for failure to state a cause of action, the complaint is to be afforded a liberal construction. The facts alleged in it are presumed to be true and are to be accorded every favorable inference. If they fit within any cognizable legal theory, the motion to dismiss should be denied (see East Hampton Union Free School Dist. v. Sandpebble Bldrs., Inc., 66 A.D.3d 122, 125, 884 N.Y.S.2d 94, affd. 16 N.Y.3d 775, 919 N.Y.S.2d 496, 944 N.E.2d 1135). If, however, the allegations do not fit within any cognizable legal theory even after they are accorded every favorable inference, the motion to dismiss should be granted (see Fisher v. DiPietro, 54 A.D.3d 892, 894"895, 864 N.Y.S.2d 532). | On a motion to dismiss a complaint for failure to state a cause of action, the complaint is to be afforded a liberal construction; the facts alleged in it are presumed to be true and are to be accorded every favorable inference. | "On a motion to dismiss a complaint for failure to state a cause of action, is the complaint to be afforded a liberal construction?" | Pretrial Procedure - Memo # 8924 - C - TM_60377.docx | ROSS-003278579-ROSS-003278580 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 10718 | Zeeb v. Atlas Powder Co., 32 Del. Ch. 486 | 308+92(1) | Except as to acts so peculiarly personal that their performance may not be delegated, or except as to acts regulated by statute which are required to be performed personally, as a general rule an individual may do all acts through an agent which he could do himself. 2 C.J.S., Agency, " 11, p. 1039. The court recognized this rule to be applicable in Re Universal Pictures Co., supra, when it held that there was no requirement of Section 61 that the acts to be performed by a dissenting stockholder be done in person, and that, accordingly, an objection in writing could be made by a stockholder through an agent. | Except as to acts so peculiarly personal that their performance may not be delegated, or except as to acts regulated by statute which are required to be performed personally, generally an individual may do all acts through an agent which he could do himself. | Can a principal delegate an act which is regulated by the statute to be performed personally? | 041499.docx | LEGALEASE-00152259-LEGALEASE-00152260 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 10719 | Hidden Brook Air v. Thabet Aviation Int'l Inc., 241 F. Supp. 2d 246 | 308+99 | An agent's authority may be actual or apparent. Actual authority exists when an agent has the power "to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestation to him." Minskoff v. American Exp. Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir.1996) (quoting Restatement (Second) of Agency " 7 cmt. a (1958)). Actual authority may be express or implied. The distinction between express and implied actual authority turns on the nature of the representation by which the principal delegates authority to that agent. Express authority is "[a]uthority distinctly, plainly expressed, orally or in writing." Nationwide Life Ins. Co. v. Hearst/ABC"Viacom Entm't Servs., 1996 WL 263008, at *8 (S.D.N.Y. May 17, 1996) (quoting Black's Law Dictionary 521 (5th ed.1979)), while implied authority exists "when verbal or other acts by a principal reasonably give the appearance of authority to the agent." 99 Commercial St., Inc. v. Goldberg, 811 F.Supp. 900, 906 (S.D.N.Y.1993). In addition, as Judge Weinfeld explained, under New York law,"Implied authority" has also been defined as "a kind of authority arising solely from the designation by the principal of a kind of agent who ordinarily possesses certain powers." The general rule in New York with regard to implied authority is that "an agent employed to do an act is deemed authorized to do it in the manner in which business entrusted to him is usually done." | "Actual authority" exists when an agent has the power to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestation to him. Restatement (Second) of Agency S 7 comment. | Does authority exist when an agent has the power to do an act on account of the principal? | Principal and Agent - Memo 226 - KC_60112.docx | ROSS-003293427-ROSS-003293428 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10720 | James L. Gang & Assocs. v. Abbott Labs., 198 S.W.3d 434 | 228+185.1(4) | Conclusory statements in an affidavit unsupported by facts are insufficient to support or defeat summary judgment. Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex.1997). A conclusory statement is one that does not provide the underlying facts to support the conclusion. Rizkallah v. Conner, 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no writ). | Conclusory statements in an affidavit unsupported by facts are insufficient to support or defeat summary judgment. | Are conclusory statements in an affidavit unsupported by facts insufficient to support or defeat summary judgment? | Affidavit - Memo 64 - _1eYZDGzXeCaZlNmcy5HPr1CWtMpZLCmcx.docx | ROSS-000000166-ROSS-000000167 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 10721 | Waldron v. Harring, 28 Mich. 493 | 38+121 | By a statute passed in 1863 (Comp. L., " 5775), it was provided that the assignee of any chose in action not negotiable might sue and recover upon it in his own name, subject to any equities arising before notice of the assignment. | Under Comp.Laws S 5775, providing that the assignee of any chose in action not negotiable may sue and recover on it in his own name, subject to any equities arising before notice of the assignment, the holder may sue in his own name, but an allegation of the transfer of the cause of action would be required. | Can the assignee of a chose in action sue and recover upon it in his own name? | 009742.docx | LEGALEASE-00153039-LEGALEASE-00153040 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 10722 | In re AppOnline.com, 321 B.R. 614 | 8.30E+10 | The general rule is that the laws of the state where a note is executed and payable govern the interpretation of that note. See United States v. Guaranty Trust Co., 293 U.S. 340, 346"47, 55 S.Ct. 221, 79 L.Ed. 415 (1934); United States v. Pearson, No. 60 CV 690, 1967 U.S. Dist. LEXIS 10762, at (S.D.N.Y. May 18, 1967). When a note is executed in one state and payable in another, it is governed as to its nature, validity, interpretation and effect by the laws of the state where it is made payable. (citing Beadall v. Moore, 199 A.D. 531, 533"34, 191 N.Y.S. 826 (1st Dep't 1922)); see also Farmers' Trust Co. v. Bradshaw, 137 Misc. 203, 205, 242 N.Y.S. 598 (N.Y.City Ct.1930). Therefore, since both of the mortgage notes in question are payable in New York, the New York State UCC applies. | Under New York choice-of-law rules, when promissory note is executed in one state and payable in another, it is governed, as to its nature, validity, interpretation, and effect, by laws of state where it is made payable. | Is a note goverened according to its nature when it is executed in one state and payable in another? | Bills and Notes - Memo 895 - RK_60694.docx | ROSS-003294465-ROSS-003294466 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10723 | Richmond Cedar Works v. West, 152 Va. 533 | 156+27(2) | Privies, or those who derive title from or through the parties, ordinarily stand in the same position as the parties, and are bound by every estoppel that would have been binding on the parties. | Privies, or those who derive title from or through the parties, ordinarily stand in the same position as the parties, and are bound by every estoppel that would have been binding on the parties. | Are those who derive title from or through the parties bound by every estoppel that would have been binding on the parties? | Estoppel - Memo #53 - C - CSS_60345.docx | ROSS-003291882-ROSS-003291883 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 10724 | Whitaker v. McMinn Cty., 491 S.W.2d 844 | 156+32(1) | Although a grantor is estopped by the recital in his deed from denying the consideration expressed, yet he is not estopped from showing there was another consideration other than the one expressed in the deed and the other consideration may be shown by parol evidence. Perry v. Central Southern Rail Road Co., 5 Cold 138, 45 Tenn. 138 (1867). | Although a grantor is estopped by recital in his deed from denying consideration expressed, he is not estopped from showing there was another consideration other than one expressed in deed and other consideration may be shown by parol evidence. | "While a grantor is estopped from denying consideration, is he estopped from denying another consideration?" | 018035.docx | LEGALEASE-00152925-LEGALEASE-00152926 | Condensed, SA | 0.29 | 0 | 1 | 0 | 1 | |
| 10725 | London v. Adams, 1998 S.D. 41 | 307A+581 | Second, a dismissal of an action for failure to prosecute is an extreme remedy and should be used only when there is an unreasonable and unexplained delay. Opp, 458 N.W.2d at 356; Schwartzle, 429 N.W.2d at 71; Holmoe, 403 N.W.2d at 31; Duncan, 382 N.W.2d at 427; Simkins, 192 N.W.2d at 732; Chicago & Northwestern R. Co. v. Bradbury, 80 S.D. 610, 129 N.W.2d 540, 542 (S.D.1964). An unreasonable and unexplained delay has been defined as an omission to do something "which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights." Bradbury, 129 N.W.2d at 542 [ (citation omitted) ]. | Dismissal of an action for failure to prosecute is an extreme remedy and should be used only when there is an unreasonable and unexplained delay. SDCL 15-6-41(b), 15-11-11. | Is dismissal of an action for failure to prosecute an extreme remedy and to be used only when there is an unreasonable and unexplained delay? | 037926.docx | LEGALEASE-00153267-LEGALEASE-00153268 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10726 | Kilburg v. Mohiuddin, 2013 IL App (1st) 113408 | 307A+624 | We must construe the complaint liberally and dismiss only when it appears that plaintiff cannot recover under any set of facts. Sheffler v. Commonwealth Edison Co., 399 Ill.App.3d 51, 59, 338 Ill.Dec. 110, 923 N.E.2d 1259 (2010). Our standard of review is de novo. Neppl, 316 Ill.App.3d at 583, 249 Ill.Dec. 736, 736 N.E.2d 1174. | The court must construe the complaint liberally and dismiss only when it appears that plaintiff cannot recover under any set of facts. S.H.A. 735 ILCS 5/2-615. | Should the court construe the complaint liberally and dismiss only when it appears that a plaintiff cannot recover under any set of facts? | Pretrial Procedure - Memo # 8945 - C - DA_60398.docx | ROSS-003280672 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 10727 | Coughlin v. City of Waterbury, 61 Conn. App. 310 | 307A+678 | A motion to dismiss may ... raise issues of fact and would, therefore, require a ... hearing [to determine the facts].... | A motion to dismiss may raise issues of fact and would, therefore, require a hearing to determine the facts, and affidavits are insufficient to determine the facts unless, like the summary judgment, they disclose that no genuine issue as to a material fact exists. | Can a motion to dismiss raise issues of fact and would require a hearing to determine the facts? | 038161.docx | LEGALEASE-00153059-LEGALEASE-00153060 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 10728 | Otte v. City of Ste. Genevieve, 926 S.W.2d 559 | 307A+680 | In considering a motion to dismiss the trial court must treat all facts alleged in the petition as true and construe all allegations most favorable to the plaintiff. Shapiro v. Columbia Union National Bank & Trust, 576 S.W.2d 310, 312 (Mo. banc 1978); Best v. Schoemehl, 652 S.W.2d 740, 741 (Mo.App.1983). We recite the facts with this standard in mind. | In considering motion to dismiss, trial court must treat all facts alleged in petition as true and construe all allegations most favorably to plaintiff. | "Are all facts alleged in a petition are regarded as true, for purposes of a motion to dismiss?" | Pretrial Procedure - Memo # 9030 - C - PC_60436.docx | ROSS-003292422-ROSS-003292423 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 10729 | 25 Bay Terrace Assocs. v. Pub. Serv. Mut. Ins. Co., 144 A.D.3d 665 | 307A+681 | "On a motion to dismiss a complaint pursuant to CPLR 3211(a)(7), the pleading is afforded a liberal construction, and the court must give the plaintiff the benefit of every possible favorable inference, accept the facts alleged in the complaint as true, and determine only whether the facts as alleged fit within any cognizable legal theory" (Gutierrez v. Government Empls. Ins. Co., 136 A.D.3d 975, 976, 25 N.Y.S.3d 625; see AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co., 5 N.Y.3d 582, 591, 808 N.Y.S.2d 573, 842 N.E.2d 471; Leon v. Martinez, 84 N.Y.2d 83, 87"88, 614 N.Y.S.2d 972, 638 N.E.2d 511)."Any deficiencies in the complaint may be amplified by supplemental pleadings and other evidence" (AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co., 5 N.Y.3d at 591, 808 N.Y.S.2d 573, 842 N.E.2d 471; see Rovello v. Orofino Realty Co., 40 N.Y.2d 633, 635"636, 389 N.Y.S.2d 314, 357 N.E.2d 970). | On a motion to dismiss for failure to state a cause of action, any deficiencies in the complaint may be amplified by supplemental pleadings and other evidence. McKinney's CPLR 3211(a)(7). | "On a motion to dismiss for failure to state a cause of action, can any deficiencies in the complaint be amplified by supplemental pleadings and other evidence?" | Pretrial Procedure - Memo # 9052 - C - MS_60457.docx | ROSS-003282886-ROSS-003282887 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 10730 | Rychnovsky v. Cole, 119 S.W.3d 204 | 307A+681 | While the defendants may dispute their responsibility for the sewer lines, the trial court could not consider any evidence or defenses in determining whether the petition stated a viable claim. Consideration of a motion to dismiss must be based solely on the sufficiency of the facts appearing on the face of the petition. Wheeler, 65 S.W.3d at 570. The issue is not whether the plaintiff is entitled to a judgment in his favor, rather it is whether he is entitled to be heard on his claim. The trial court erred in dismissing Count II because it properly pled facts to establish that the defendants' failure to repair or remedy the sewage line leaks unreasonably interfered with Rychnovsky's use and enjoyment of his property. Taken as true, the allegations state a claim for nuisance. The judgment of dismissal is reversed and remanded on Count II. | Consideration of a motion to dismiss for failure to state a claim must be based solely on the sufficiency of the facts appearing on the face of the petition; the issue is not whether the plaintiff is entitled to a judgment in his favor, rather it is whether he is entitled to be heard on his claim. | Is an issue on a motion to dismiss not whether the plaintiff is entitled to a judgment in his favor? | 038234.docx | LEGALEASE-00153213-LEGALEASE-00153214 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 10731 | Doe No. 3 v. Nur-Ul-Islam Acad., 217 So. 3d 85 | 307A+561.1 | "If the face of the complaint contains allegations which demonstrate the existence of an affirmative defense then such defense can be considered on motion to dismiss. Otherwise an affirmative defense may not be considered on motion to dismiss a complaint." Frank v. Campbell Prop. Mgmt., Inc., 351 So.2d 364, 364"65 (Fla. 4th DCA 1977) (citations omitted); see also Fla. R. Civ. P. 1.110(d) ("Affirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b) [.]"). Thus, our analysis begins with whether the date of the accrual of the cause of action was established within the four corners of the complaint, as a predicate for a statute of limitations defense. | If the face of the complaint contains allegations which demonstrate the existence of an affirmative defense then such defense can be considered on motion to dismiss; otherwise an affirmative defense may not be considered on motion to dismiss a complaint. Fla. R. Civ. P. 1.110(d). | Should defenses be considered only if the allegations of the complaint demonstrate the existence of an affirmative defense? | Pretrial Procedure - Memo # 9190 - C - NS_60499.docx | ROSS-003285059-ROSS-003285060 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 10732 | Kennedy v. Microsurgery & Brain Research Inst., 18 S.W.3d 39 | 241+180(2) | Our review of the dismissal of a petition as being time-barred by the expiration of the applicable statute of limitations requires an examination of the pleadings, allowing them their broadest intendment, regarding all facts alleged as true, and construing the allegations in favor of the plaintiff. Dice v. Darling, 974 S.W.2d 641, 643 (Mo.App.1998). When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. Id. For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleadings. Lehnig v. Bornhop, 859 S.W.2d 271, 272 (Mo.App.1993). | When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. | Can a motion to dismiss be sustained if the defense is irrefutably established by the petition? | 038407.docx | LEGALEASE-00152955-LEGALEASE-00152956 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10733 | Papa John's Int'l v. Cosentino, 916 So. 2d 977 | 307A+561.1 | Res judicata and collateral estoppel are affirmative defenses. If the face of the complaint contains allegations which demonstrate the existence of an affirmative defense, then such a defense may be considered on a motion to dismiss. See Fla. R. Civ. P. 1.110(d); Palmer v. McCallion, 645 So.2d 131, 133 (Fla. 4th DCA 1994); Vaswani v. Ganobsek, 402 So.2d 1350, 1351 (Fla. 4th DCA 1981). Otherwise an affirmative defense may not be considered on a rule 1.140(d) motion to dismiss. See Swafford v. Schweitzer, 906 So.2d 1194, 1195 (Fla. 4th DCA 2005). | If the face of the complaint contains allegations which demonstrate the existence of an affirmative defense, then such a defense may be considered on a motion to dismiss, otherwise, affirmative defenses may not be considered. West's F.S.A. RCP Rule 1.110(d). | Can affirmative defense be considered if the allegations demonstrate the existence of affirmative defense on the face of the complaint? | 038437.docx | LEGALEASE-00153342-LEGALEASE-00153343 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 10734 | Bolz v. State Farm Mut. Auto. Ins. Co., 679 So. 2d 836 | 307A+680 | State Farm sought to have Ms. Bolz's claim dismissed on the ground that it was barred by the doctrine of res judicata. A motion to dismiss is designed to test the legal sufficiency of a complaint, not to determine issues of fact. Lowery v. Lowery, 654 So.2d 1218 (Fla. 2d DCA 1995). In considering a motion to dismiss, the trial court is required to confine itself to the allegations contained within the four corners of the complaint. City of Clearwater v. United States Steel Corp., 469 So.2d 915 (Fla. 2d DCA 1985); see Livingston v. Spires, 481 So.2d 87 (Fla. 1st DCA 1986). | Motion to dismiss is designed to test legal sufficiency of complaint, not to determine issues of fact. | "Is a motion to dismiss designed to test legal sufficiency of a complaint, not to determine issues of fact?" | Pretrial Procedure - Memo # 9306 - C - VA_60885.docx | ROSS-003278900-ROSS-003278901 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 10735 | Cameron Cty. Sav. Ass'n v. Stewart Title Guar. Co., 819 S.W.2d 600 | 308+96 | We next determine whether the facts shown on summary judgment in this case raise a fact question on whether the abstract company was the title insurer's agent for the closing of the entire real estate transaction, rather than just to close the assurance of title. A principal is liable for his agent's acts which the agent has actual or apparent authority from the principal to do, and for acts which the principal ratifies. See Currey v. Lone Star Steel Co., 676 S.W.2d 205, 209 (Tex.Civ.App."Fort Worth 1984, no writ) (actual and apparent authority); Little v. Clark, 592 S.W.2d 61, 64 (Tex.Civ.App."Fort Worth 1979, writ ref'd n.r.e.) (ratification). "Actual" authority includes both express and implied authority and usually denotes that authority which a principal a) intentionally confers upon an agent, b) intentionally allows the agent to believe that he possesses, or c) by want of due care allows the agent to believe that he possesses. Currey, 676 S.W.2d at 209"10; Behring Int'l Inc. v. Greater Houston Bank, 662 S.W.2d 642, 649 (Tex.App."Houston [1st Dist.] 1983, writ dism'd). Implied actual authority can exist only with express actual authority. Behring, 662 S.W.2d at 649. This is so because implied authority is that which is proper, usual and necessary to the exercise of the authority that the principal expressly delegates. Employers Casualty Co. v. Winslow, 356 S.W.2d 160, 168 (Tex.Civ.App."El Paso 1962, writ ref'd n.r.e.); see Behring, 662 S.W.2d at 649. | "Actual authority" includes both express and implied authority and usually denotes that authority which principal intentionally confers upon agent, intentionally allowed agent to believe that he possesses or, by want of due care, allows agent to believe that he possesses. | What is an actual authority in the context of a principal-agent relationship? | 041564.docx | LEGALEASE-00153119-LEGALEASE-00153120 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 10736 | Landmark Inv. Grp. v. Chung Family Realty P'ship, 125 Conn. App. 678 | 308+92(1) | "[I]t is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal." Ackerman v. Sobol Family Partnership, LLP, 298 Conn. 495, 508, 4 A.3d 288 (2010). "Agents who lack authority to bind their principals to contracts nevertheless often have authority to negotiate or to transmit or receive information on their behalf." 1 Restatement (Third), Agency " 1.01, comment (c), p. 19 (2006). It is well settled that "[t]he nature and extent of an agent's authority is a question of fact for the trier where the evidence is conflicting or where there are several reasonable inferences which can be drawn [therefrom].... Accordingly, we review the [trial] court's findings with regard to agency and an agent's [apparent] authority under the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) LeBlanc v. New England Raceway, LLC, 116 Conn.App. 267, 273"74, 976 A.2d 750 (2009). | Agents who lack authority to bind their principals to contracts nevertheless may have authority to negotiate or to transmit or receive information on their behalf. Restatement (Third) of Agency S 1.01 comment. | "Do agents lacking authority to bind their principals to contract, have authority to negotiate on behalf of the principal?" | 041577.docx | LEGALEASE-00153291-LEGALEASE-00153292 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10737 | Bank of Nova Scotia v. San Miguel, 214 F.2d 102 | 8.30E+11 | Nor can we agree with the plaintiff's contention that the draft was an inland bill of exchange, to be governed by New York law and, under that law, not requiring protest on dishonor. Under the conflict of laws rule of Puerto Rico the questions as to the execution, the interpretation and the validity of a negotiable instrument are to be determined by the law of the place where it is made. Royal Bank of Canada v. Balle, 1925, 33 P.R.R. 944. It has heretofore been assumed in the present case that the draft here in question was drawn in the Dominican Republic. Our previous opinion was based upon that premise, then undisputed. Upon the second trial, however, the plaintiff contended, as alleged in its amended complaint, that the draft was drawn in New York. The trial judge, nonetheless, ruled that it was a foreign bill drawn in the Dominican Republic. We are satisfied that this ruling was right. For, although the form of draft was signed by the defendant in New York and mailed by him from New York to the plaintiff's Trujillo City branch, it is clear that it was not complete or intended to be so when it was mailed. On the contrary two things remained to be done to give the draft vitality. The form of draft which was already date-lined Trujillo City, D.R., had to be dated and the documents specified by the letter of credit against which it was drawn had to be attached. Both of these final necessary acts were performed in Trujillo City on October 15th, two days after the signed draft form was mailed by the defendant from New York. We think that it was then, and not until then, that the draft was drawn and that the place of drawing was, therefore, the Dominican Republic. This question of characterization is also one of Puerto Rican conflict of laws but we have not been referred to any decision of the Supreme Court of Puerto Rico contrary to our conclusion which we are satisfied reflects the law of that Commonwealth. It follows that the draft was a foreign bill governed by | Under the conflict of laws rule of Puerto Rico, the questions as to the execution, the interpretation and the validity of a negotiable instrument are to be determined by the law of the place where it is made. | Under what law is the interpretation and validity of a negotiable instrument determined? | Bills and Notes - Memo 1009 - RK_61288.docx | ROSS-003309686-ROSS-003309687 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10738 | Nat'l Leasing Corp. v. Williams, 80 F.R.D. 416 | 8.30E+10 | It appears that plaintiff is a Pennsylvania corporation with its principal place ofbusiness in the forum state. The promissory note agreed to by the defendant was entered into pursuant to the Pennsylvania Uniform Commercial Code. Thus, Pennsylvania law was chosen to apply to the note. Also, the performance of the agreement was to be in Pennsylvania, the designated place of payment. The obligations of the maker of a note are determined by the law of the state designated on the instrument as the place of payment. Restatement Conflicts of Law, s 214. | Obligations of maker of note are determined by law of state designated on instrument as place of payment. | Are the obligations of the maker of a note determined by the law of the state designated on the instrument as the place of payment? | Bills and Notes - Memo 6 - KC_62136.docx | ROSS-003293779 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10739 | Anderson v. Stayton State Bank, 82 Or. 357 | 95+184 | A joint and several contract is with each promisor and also with all jointly, with the result that they are all liable together on the joint obligation, and each individual is liable upon his separate obligation, and they may be sued jointly or severally as the promisee may elect. 9 Cyc. 657. A joint contract, however, is with all the promisors together, with the result that all must be sued jointly if either promisor objects to a suit or action brought against less than all; but if a judgment be obtained without objection against less than all who are jointly liable, the entire debt is merged in that judgment. Ryckman v. Manerud, 68 Or. 350, 136 Pac. 826, Ann. Cas. 1915C, 522. Ordinarily a release of one frees all. 9 Cyc. 654. Although a promisee may sue all or only one of two or more joint and several promisors, nevertheless a judgment obtained against joint and several promisors does not give to the judgment creditor any rights for the collection of the debt which are not possessed by the owner of a judgment against persons who are merely joint debtors and who have been served with summons. The owner of a judgment against persons who are jointly and separately liable may seize the property of all or the property of each if he chooses, and he is not obliged to look to one before he calls upon the other for payment. If all the promisors on a joint obligation are served with summons and a judgment secured against them, then the owner of the judgment is not obliged to exhaust the joint property before seizing the separate property of the individual promisors because he may do as he chooses (Godfrey v. Gibbons, 22 Wend. [N. Y.] 569; West Duluth Land Co. v. Bradley, 75 Minn. 275, 77 N. W. 964; Low v. Adams, 6 Cal. 277; 17 Cyc. 1082), for the reason that in a joint, as well as in a joint and several, obligation each obligor who is bound at all is liable in solido for the whole debt. 9 Cyc. 653; Allin v. Shadburne's Executor, 1 Dana (Ky.) 68, 25 Am. Dec. 121; Ripley v. Crooker, 47 Me. 370, 74 Am. | A joint and several contract is with each promisor, and also with all jointly, with result that they are all liable jointly, and each individual is liable upon his separate obligation, and that they may be sued jointly or severally as promisee elects. | Can parties be sued jointly or severally when they are jointly liable? | Bills and Notes -Memo 971 - RK_61276.docx | ROSS-003292007-ROSS-003292008 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10740 | Foren v. Dealey, 4 Or. 92 | 302+354 | The argument of the respondent assumes that the court can decide upon the truth of the plea, and declare an answer sham upon mere probabilities. Thus he claims that the allegations in regard to the accounting render it improbable that the account was settled, or that no money was due to the plaintiff, and that the defendant's assertion, made at the time he signed the note, that he would not pay it, renders it improbable that he was intimidated, or that he signed the note through fear of arrest; but I think this assumption untenable. When an answer is objected to as false, and therefore sham, the court should not proceed upon probabilities; but to justify striking out an answer on this ground, it must be obviously false, or it must be shown to be false and in bad faith. "Sham answers are such as are good in form, but false in fact, and pleaded in bad faith." (Gostorfs v. McCahill & Co., 18 Cal. 385; Piercy v. Sabin, 10 Cal. 22.) None of the numerous authorities cited by the respondent justify a court in striking out an answer, and rendering a judgment on the merits, upon a mere suspicion of untruth; nor in rejecting an answer as contradictory, and thus terminating the case, unless the statements alleged to be contradictory are entirely inconsistent with the truth of the defense that is well pleaded. It cannot safely be asserted from an inspection of this answer that it could not have been established on the trial that the note was without consideration. If the truth of the matter rested on probabilities, this entitled the party to a trial. It was therefore error to render a final judgment for the plaintiff. | To justify striking out an answer as false and, therefore, sham, it must be obviously false, or it must be shown to be false and in bad faith, and court should not proceed on mere probabilities. | "To justify striking out an answer as sham, should it be obviously false?" | Pleading - Memo 529- RMM_61217.docx | ROSS-003294785-ROSS-003294786 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 10741 | Zamouski v. Gerrard, 1 Ill. App. 3d 890 | 302+34(1) | Defendants' status as attorneys might justify the interference, but justification is an affirmative defense, not to be considered as supporting the trial court's grant of a motion to dismiss unless it appears on the face of the complaint. 45 Am.Jur.2d, Interference, Sec. 55. (See also Herron v. State Farm Mut. Ins. Co., 56 Cal.2d 202, 14 Cal.Rptr. 294, 363 P.2d 310, 312 (1961)). We cannot say that justification appears on the face of the complaint here. However, Count III was otherwise insufficient to state a cause of action. While pleadings are to be liberally construed and formal or technical allegations are unnecessary, still the complaint must allege facts necessary to state a cause of action. Fanning v. LeMay, 38 Ill.2d 209, 211, 230 N.E.2d 182 (1967). A motion to dismiss admits facts well pleaded, but not conclusions of law or fact unsupported by allegations of specific facts upon which such conclusions rest. Count III merely concludes that the named defendants carried on a series of systematic and intentional activities to induce the repudiation of the alleged settlement contract, and the only item which could be considered an allegation of fact would be the letter attached to the complaint. We find nothing in this exhibit which can be construed as an inducement to anyone to breach the settlement agreement. Count III is, therefore, insufficient to set forth a cause of action for wrongfully inducing a breach of contract and was properly dismissed by the court. | Pleadings are to be liberally construed and formal or technical allegations are unnecessary; still, the complaint must allege facts necessary to state a cause of action. | Are formal or technical allegations unnecessary in a pleading? | Pleading - Memo 540 - RM_61960.docx | ROSS-003280962-ROSS-003280963 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10742 | Birge v. Town of Linden, 57 N.E.3d 839 | 307A+622 | We review de novo the trial court's grant or denial of a motion to dismiss based on Trial Rule 12(B)(6). Kitchell v. Franklin, 997 N.E.2d 1020, 1025 (Ind.2013). "A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it." Id. In conducting our review, we accept as true the facts alleged in the complaint. Trail v. Boys & Girls Clubs of Nw. Ind., 845 N.E.2d 130, 134 (Ind.2006). "[W]e view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor." Babes Showclub, Jaba, Inc. v. Lair, 918 N.E.2d 308, 310 (Ind.2009). A complaint may not be dismissed for failure to state a claim "unless it is clear on the face of the complaint that the complaining party is not entitled to relief." Charter One Mortg. Corp. v. Condra, 865 N.E.2d 602, 605 (Ind.2007). | A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. Trial Procedure Rule 12(B)(6). | "Does a motion to dismiss for a failure to state a claim test the legal sufficiency of the pleading, and not the facts which support it?" | Pretrial Procedure - Memo # 8999 - C - SKG_61348.docx | ROSS-003280367-ROSS-003280368 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 10743 | McCann v. Lakewood, 95 Ohio App. 3d 226 | 30+78(4) | The common pleas court dismissed McCann's appeal from the administrative decision in the boatdock case pursuant to Civ.R. 41(B)(1) for failure to prosecute. A dismissal for failure to prosecute is an involuntary dismissal and is deemed to be a dismissal upon the merits and, thus, a final appealable order unless the court expressly states otherwise. The common pleas court dismissed McCann's appeal in the boatdock case without prejudice. When an original action is dismissed without prejudice in a trial court, the plaintiff may generally refile the original action at some later date provided the statute of limitations has not expired or, if so, the "Savings Statute," R.C. 2305.19, is applicable. | Dismissal for failure to prosecute is involuntary dismissal and is deemed to be dismissal on the merits and thus is a final appealable order unless court expressly states otherwise. Rules Civ.Proc., Rule 41(B)(1). | Is the dismissal for failure to prosecute deemed to be the dismissal on the merits? | 038445.docx | LEGALEASE-00154515-LEGALEASE-00154516 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 10744 | Weil & Assocs. v. Urban Renewal Agency of Wichita, 206 Kan. 405 | 307A+687 | In Robertson v. McCune, 205 Kan. 696, 472 P.2d 215, we considered the scope of a motion to dismiss and said:"When a motion to dismiss under K.S.A. 60-212(b)(6) * * * raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. The motion in such case may be treated as the modern equivalent of a demurrer." (p. 700, 472 P.2d p. 219.) | Legal sufficiency of claim for relief must be decided from well-pleaded facts of petition; when motion to dismiss raises issue concerning legal sufficiency, it may be treated as modern equivalent of demurrer. K.S.A. 60-208(a), 60-212(b) (6). | Is the legal sufficiency of claim determined from well-pled facts in a petition? | 038511.docx | LEGALEASE-00154352-LEGALEASE-00154353 | Condensed, Order, SA | 0.42 | 1 | 1 | 0 | 1 | 1 |
| 10745 | Hoffman v. Paracelsus Health Care Corp., 752 So. 2d 1030 | 307A+583 | "[T]he power to dismiss an action for want of prosecution is part of a trial court's inherent authority." Wallace v. Jones, 572 So.2d 371, 375 (Miss.1990). This power is "a means necessary to the orderly expedition of justice and the court's control of its own docket." American Tel. & Tel. Co. v. Days Inn of Winona, 720 So.2d 178 (Miss.1998), quoting Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986). | The power to dismiss an action for want of prosecution is part of a trial court's inherent authority. | Is the power to dismiss an action for want of prosecution part of a trial court's inherent authority? | Pretrial Procedure - Memo # 9326 - C - PB_60904.docx | ROSS-003293318 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 10746 | Hoff v. Goyer, 160 So. 3d 768 | 307A+681 | Although the defendants filed motions to dismiss, "the trial court had before it materials outside the pleadings, and it did not expressly decline to consider those materials in making its ruling. Therefore, the motion[s] to dismiss [were] converted into ... motion[s] for a summary judgment. " "When materials outside the pleadings accompany a motion to dismiss, the trial court is "not bound to limit itself to the pleadings." | When materials outside the pleadings accompany a motion to dismiss, the trial court is not bound to limit itself to the pleadings. | "When materials outside the pleadings accompany a motion to dismiss, is the trial court not bound to limit itself to the pleadings?" | 038620.docx | LEGALEASE-00154567-LEGALEASE-00154568 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 10747 | Doe 30's Mother v. Bradley, 58 A.3d 42 | 307A+681 | Generally, the "universe of facts" considered in a motion to dismiss are those plead within the confines of the complaint. Rule 12(b) contemplates, however, that parties may submit "matters outside the pleading" when presenting or opposing a motion to dismiss. When such extraneous matters are considered by the Court in deciding the motion, "the motion shall be treated as one for summary judgment" under Rule 56. In connection with the motions sub judice, the parties have included matters extraneous to the amended complaint in support of and/or opposition to the motions. Accordingly, the Court must determine whether the motions to dismiss may be adjudicated as styled or whether they must be adjudicated under the summary judgment standard of review. | Generally, the universe of facts considered in a motion to dismiss are those plead within the confines of the complaint; however, parties may submit matters outside the pleading when presenting or opposing a motion to dismiss. Superior Court Civil Rule 12(b). | "Generally, is the universe of facts considered in a motion to dismiss those pleaded within the confines of the complaint?" | Pretrial Procedure - Memo # 9385 - C - PB_60923.docx | ROSS-003295021-ROSS-003295022 | Order, SA | 0.66 | 1 | 0 | 0 | 1 | |
| 10748 | Succession of Knox, 579 So. 2d 1164 | 307A+581 | A suit for nullity of a judgment of possession is not a succession proceeding as described in LSA-C.C.P. Art. 561(A) and is subject to the five year abandonment rule. See and compare Succession of Kinchen, 391 So.2d 1278 (La.App. 1st Cir.1980), in which a petition filed after rendition of a judgment of possession in an intestate succession was dismissed as abandoned under the provisions of LSA-C.C.P. Art. 5612. In Succession of John Everett Overton, Sr., 422 So.2d 1356 (La.App. 1st Cir.1982), an action to set aside a sale to one of decedent's children as a donation in disguise and to return the property to the mass of the father's estate was dismissed under LSA-C.C.P. Art. 561 for failure to prosecute even though it related to a succession proceeding. | Suit for nullity of judgment of possession is not "succession proceeding," and thus is subject to five-year abandonment rule. LSA-C.C.P. art. 561, subd. A. | Is suit for nullity of judgment of possession subject to the five-year abandonment rule? | 038782.docx | LEGALEASE-00153986-LEGALEASE-00153987 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10749 | Bishop v. Wollyung, 705 S.W.2d 312 | 307A+581 | Bishop, as the prevailing party in the original action, had the burden to ensure that a judgment was entered. Wollyung's predecessors were empowered to require the court to enter its judgment. Thus both parties acquiesced in the 10 year delay in entering a final judgment. The decision to dismiss an action for want of prosecution lies within the discretion of the trial court. Dolenz v. Continental National Bank of Fort Worth, 620 S.W.2d 572 (Tex.1981). As such, its decision will be reversed only upon a showing of an abuse of that discretion. Brown v. Prairie View A & M University, 630 S.W.2d 405 (Tex.App."Houston [14th Dist.] 1982, writ ref'd n.r.e.). The court is entitled to consider the history of the suit in determining whether a dismissal should be granted. Gaebler v. Harris, 625 S.W.2d 5 (Tex.App."San Antonio 1981, writ ref'd n.r.e.). Since neither party took action to have the judgment entered, we can not perceive an abuse of the court's discretion in refusing to dismiss the lawsuit. We find no error in the trial court's refusal to dismiss the lawsuit. | Trial court is entitled to consider history of suit in determining whether a dismissal should be granted for want of prosecution. | Is the court entitled to consider history of suit in determining whether a dismissal should be granted for want of prosecution? | Pretrial Procedure - Memo # 9460 - C - SPB_60952.docx | ROSS-003280318-ROSS-003280319 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10750 | In re Marriage of Dague, 136 Ill. App. 3d 297 | 307A+581 | The determination that there has been a lack of diligent prosecution warranting dismissal is within the sound discretion of the trial court and should not be disturbed on appeal unless there has been an abuse of that discretion. (In re Marriage of Hanlon (1980), 83 Ill.App.3d 629, 39 Ill.Dec. 282, 404 N.E.2d 873.) Dismissal for want of prosecution, however, is error unless the party has been guilty of inexcusable delay in prosecuting the suit. (Crawford v. Crawford (1976), 39 Ill.App.3d 457, 350 N.E.2d 103; Polowick v. Meredith Construction Co. (1975), 29 Ill.App.3d 1092, 332 N.E.2d 17.) Moreover, a dismissal for want of prosecution should be set aside where a satisfactory explanation of the apparent delay has been given, there has been no intentional or wilful disregard of any directions of the court and it does not appear that further postponement of the controversy on its merits would result in prejudice or hardship to any of the parties. Polowick; see also Sherman v. Sherman (1979), 74 Ill.App.3d 451, 30 Ill.Dec. 412, 393 N.E.2d 67. | Dismissal for want of prosecution is error unless party has been guilty of inexcusable delay in prosecuting that suit. | Is dismissal for want of prosecution error unless party has been guilty of inexcusable delay in prosecuting that suit? | 038806.docx | LEGALEASE-00154087-LEGALEASE-00154088 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 10751 | Harris v. Cleveland, 979 So. 2d 78 | 307A+581 | However, as Burdeshaw also notes, "[t]he entry of a judgment for a defendant as a matter of law for want of prosecution is a drastic sanction," and because dismissal "is such a drastic sanction, it is to be used only in extreme situations"; thus, an appellate court "carefully scrutinizes any order terminating an action for want of prosecution, and it does not hesitate to set one aside when an abuse of discretion is found." Id. With particular reference to a judgment of dismissal with prejudice for lack of prosecution, our court has held that such a dismissal is proper "only where there is a clear record of delay or contumacious conduct by the plaintiff or a serious showing of willful default." Burton v. Allen, 628 So.2d 814, 815 (Ala.Civ.App.1993). | The entry of a judgment of dismissal for a defendant as a matter of law for want of prosecution of a civil action is a drastic sanction, only to be used in extreme situations. Rules Civ.Proc., Rule 41(b). | Is dismissal for lack of prosecution a drastic sanction to be applied only in extreme situations? | 039025.docx | LEGALEASE-00154785-LEGALEASE-00154786 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10752 | Kawaguchi v. Gainer, 361 Ill. App. 3d 229 | 307A+686.1 | When supporting affidavits have not been challenged or contradicted by counteraffidavits or other appropriate means, the facts contained in the supporting affidavits are deemed admitted. Raintree Homes, Inc. v. Village of Long Grove, 209 Ill.2d 248, 262, 282 Ill.Dec. 815, 807 N.E.2d 439 (2004); see also Miller v. Highway Commissioner of North Otter Township Road District, 344 Ill.App.3d 1157, 1166, 279 Ill.Dec. 925, 801 N.E.2d 599 (2003) ("A court will accept as true those evidentiary facts in a defendant's supporting affidavit if the plaintiff fails to refute those facts in a counteraffidavit, notwithstanding contrary, unsupported allegations in the plaintiff's complaint"). With this in mind, we review de novo the dismissal of a claim pursuant to section 2"619. See Northwest Millwork Co. v. Komperda, 338 Ill.App.3d 997, 1000, 273 Ill.Dec. 90, 788 N.E.2d 399 (2003). The question on appeal is whether there exists a genuine issue of material fact that should have precluded judgment in favor of the moving party. Carroll v. Paddock, 199 Ill.2d 16, 22, 262 Ill.Dec. 1, 764 N.E.2d 1118 (2002). | When affidavits supporting a motion to dismiss have not been challenged or contradicted by counteraffidavits or other appropriate means, the facts contained in the supporting affidavits are deemed admitted. | "When a supporting affidavit has not been refuted by a counter-affidavit or other appropriate means on a motion for involuntary dismissal, are the facts in that supporting affidavit deemed admitted?" | Pretrial Procedure - Memo # 9808 - C - SN_61425.docx | ROSS-003293755-ROSS-003293756 | Order, SA | 0.81 | 1 | 0 | 0 | 1 | |
| 10753 | Trendmark Homes v. Bank of N. Georgia, 314 Ga. App. 886 | 157+420(7) | Further, the promissory notes contain clauses whereby Trendmark Homes waived its right to require the Bank to demand payments due or provide notice of nonpayment, and Trendmark Homes agreed that if the Bank failed to declare an event a default, the Bank did not waive its right to later consider the event a default if it continued or repeated. Moreover, the loan documents, by their express terms, cannot be modified except as agreed to by the Bank in writing, and Rose's guaranties are absolute and unconditional, and they include waivers of all defenses of Trendmark. Trendmark does not assert any ambiguity in the loan documents, nor any modification in writing. "It is well established that [such] a promissory note may not be modified by the imposition of conditions not apparent on its face The note being an unconditional promise, the contract is complete as written; parol evidence may not be used to impose conditions which are not apparent from the face of the note." | Because a promissory note is an unconditional promise, and the contract is complete as written, parol evidence may not be used to impose conditions which are not apparent from the face of the note. | Can a promissory note be modified by imposition of conditions which are not apparent on its face? | Bills and Notes - Memo 18 - KC_61942.docx | ROSS-003296733-ROSS-003296734 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 10754 | Beaudry v. TeleCheck Services , 579 F.3d 702 | 172H+1649 | Courts have reached a like conclusion in considering other statutes that contain similar statutory damages provisions. "[A]ny actual damage[s] sustained by [a consumer] as a result of [a] failure" to comply with the Fair Debt Collection Protection Act are available as an alternative to the recovery of statutory damages, suggesting that such damages are not a necessary precondition to suit. See Fed. Home Loan Mortgage Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir.2007) (noting that the availability of statutory damages under the Fair Debt Collection Protection Act, see 15 U.S.C. " 1692k(a), means that "a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages"). In considering a claim that the anti-wiretapping provisions of 18 U.S.C. " 2520 had been violated, the Seventh Circuit reasoned that, because the statute permits the recovery of "actual damages ... or statutory damages of not less than $50 and not more than $500," 18 U.S.C. " 2520(c)(1)(A), "the plaintiff need not prove any actual harm," Apampa v. Layng, 157 F.3d 1103, 1105 (7th Cir.1998). We have reached the same conclusion when construing the Truth in Lending Act, 15 U.S.C. " 1640(a), which allows recovery of "any actual damage sustained ... as a result of the failure" or "twice the amount of any finance charge," see Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 800 (6th Cir.1996) (holding that a consumer did not need to show that she "suffered actual monetary damages" or that she "was actually misled or deceived" in order to prevail on a TILA claim for statutory damages and attorney's fees); accord Edwards v. Your Credit, Inc., 148 F.3d 427, 441 (5th Cir.1998); see also Martinez v. Shinn, 992 F.2d 997 (9th Cir.1993) (reaching the same *707 conclusion with respect to the Migrant and Seasonal Agricultural Worker Protection Act, which allows the recovery of "actual damages, or statutory damages," 29 U.S.C. " 1854(c)(1)). | Any actual damages sustained by a consumer as a result of a failure to comply with the Fair Debt Collection Practices Act are available as an alternative to the recovery of statutory damages. Fair Debt Collection Practices Act, S 813(a), 15 U.S.C.A. S 1692k(a). | Is the Fair Debt Collection Protection Act (FDCPA) a statute for which damages are a necessary precondition to suit? | 013729.docx | LEGALEASE-00155732-LEGALEASE-00155734 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10755 | Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895 | 172H+1561 | By far, the majority of Courts to address the issue recently have required that borrowers allege an ability to tender the principal balance of the subject loan in order to state a claim for rescission under TILA. See, e.g., Kratz v. Countrywide Bank, No. CV08"01233, 2009 U.S. Dist. LEXIS 86479, 2009 WL 3063077 (C.D.Cal., Sept. 21, 2009); Pesayco v. World Savings, Inc., CV 09"3926, 2009 U.S. Dist. LEXIS 73299 (C.D.Cal., July 29, 2009); ING Bank v. Korn, No. C09"124Z, 2009 U.S. Dist. LEXIS 73329, 2009 WL 1455488 (W.D.Wash., May 22, 2009) (dismissing, with leave to amend to state, subject to Rule 11's requirements, that the borrowers have the ability to tender principal); Reganit v. Kay"Co. Invs., No. 2:09"cv"01120, 2009 U.S. Dist. LEXIS 34883 (E.D.Cal., Apr. 24, 2009) (finding, in denying an application for a temporary restraining order, that success was unlikely in part because "Plaintiff has not indicated she is able to tender the requisite loan proceeds."); Garza v. American Home Mortgage, NO. CV F 08"1477, 2009 U.S. Dist. LEXIS 7448, 2009 WL 188604, (E.D.Cal., Jan. 27, 2009) ("The complaint fails to hint that Ms. Garza is able to fulfill her obligations under 15 U.S.C. " 1635(b) and 12 C.F.R. " 226.23(d). Rescission is an empty remedy without Ms. Garza's ability to pay back what she has received ... [so][t]he complaint lacks a necessary element of Ms. Garza's TILA rescission claim. As such, the TILA rescission claim is dismissed with leave to amend to allege, subject to F.R.Civ.P. 11(b) requirements, that Ms. Garza has the ability to tender and pay back what she has received."); Alcaraz v. Wachovia Mortg. FSB, NO. CV F 08"1640, 2009 U.S. Dist. LEXIS 34009, 2009 WL 160308 (E.D.Cal., Jan. 21, 2009) | A borrower must allege an ability to tender the principal balance of the subject loan in order to state a claim for rescission under TILA. Truth in Lending Act, S 125(a, b), 15 U.S.C.A. S 1635(a, b); 12 C.F.R. S 226.23(d)(3). | What is required to be alleged by borrowers in order to state a claim for rescission under TILA? | Consumer Credit - Memo 184 - RK.docx | LEGALEASE-00044659-LEGALEASE-00044660 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 10756 | King v. Long Beach Mortg. Co., 672 F. Supp. 2d 238 | 172H+1556 | Under 12 C.F.R. " 226.23(b)(1), "a creditor shall deliver two copies of the notice of the right to rescind to each consumer...." Even so, the rescission right is extended to three years only "if the required notice or material disclosures are not delivered." 12 C.F.R. " 226.23(a)(3) (emphasis added). Significantly, the word "notice" appears in the singular. Elsewhere in Regulation Z, the Federal Reserve Board has used the terms "notices" or "two copies of the notice" whenever it wished to convey that more than one notice is required. (See e.g. 12 C.F.R. " 226.19(b)(2)(xi) ("The type of information that will be provided in notices of adjustments and the timing of such notices.") (emphasis added)). By deliberately choosing to use the singular form "notice" instead of the plural form "notices" or "two copies of the notice," the Federal Reserve Board intended that delivery of a single copy of the Notice would not trigger an extension of the rescission right. In light of this deliberate choice of words, the default rule of construction that "[w]here appropriate, the singular form of a word includes the plural form and plural includes singular," 12 C.F.R. " 226.2(b)(1), is not appropriate in this context. | Delivery of a single copy of the notice does not trigger extension of rescission right to three years under Truth in Lending Act (TILA). 12 C.F.R. S 226.23(a)(3), (b)(1). | Does the delivery of a single copy of the notice trigger an extension of the right to rescission? | 013785.docx | LEGALEASE-00155514-LEGALEASE-00155515 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 10757 | Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178 | 172H+1536 | 15 U.S.C. s 1601. The public benefits from enforcement of TILA because it creates a system of disclosure that improves the bargaining posture of all borrowers. To ensure the realization of this goal, Congress granted consumers a minimum recovery, plus costs and reasonable attorney's fees, without having to prove actual damages. 15 U.S.C. s 1640(a). This type of remedy provides a deterrent comparable to exemplary damages because it encourages individuals to bring TILA actions and discourages noncompliance. Strict technical compliance, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. See Smith v. Chapman, 614 F.2d 968, 971 (5th Cir. 1980); Williams v. Public Finance Corp., 598 F.2d 349, 356 (5th Cir. 1979). | Strict technical compliance with the Truth in Lending Act, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Does the standardization of credit terms benefit just the individual claimant? | Consumer Credit - Memo 208 - RK_61870.docx | ROSS-003308805-ROSS-003308806 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 10758 | Domico v. Rapides Par. Sch. Bd., 675 F.2d 100 | 141E+740 | Moreover, as we read the case law, this Circuit has established a bright line applicable to hairstyle regulation cases: at the public college level, hairstyle regulations cannot, absent exceptional circumstances, be justified by the school's asserted educational and disciplinary needs, while in the public elementary and secondary schools, such regulations are always justified by the school's needs.. | At public college level, hairstyle regulations cannot, absent exceptional circumstances, be justified by school's asserted educational and disciplinary needs, while in public elementary and secondary schools, such regulations are always justified by school's needs. U.S.C.A.Const.Amends. 5, 14. | Can college impose hairstyle regulations? | 016860.docx | LEGALEASE-00155853-LEGALEASE-00155854 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 10759 | Woolam v. Tussing, 54 S.W.3d 442 | 302+34(1) | The purpose of pleadings is to give the adverse parties notice of each party's claims and defenses, as well as notice of the relief sought. Perez v. Briercroft Serv. Corp., 809 S.W.2d 216, 218 (Tex.1991); Kissman v. Bendix Home Sys., 587 S.W.2d 675, 677 (Tex.1979); Gonzalez v. City of Harlingen, 814 S.W.2d 109, 111"12 (Tex.App.-Corpus Christi 1991, writ denied). Pleadings provide "fair notice" of the claim involved, when an opposing attorney of reasonable competence could examine the pleadings and ascertain the nature and basic issues of the controversy and the relevant testimony. State Fidelity Mortgage Co. v. Varner, 740 S.W.2d 477, 478 (Tex.App.-Houston [1st Dist.] 1987, writ denied). In determining whether a cause of action was pleaded, the plaintiff's pleadings must be adequate for the court to be able, from an examination of the pleadings alone, to ascertain with reasonable certainty and without resorting to information from another source, the elements of the plaintiff's cause of action and the relief sought with sufficient information on which to base a judgment. Stoner v. Thompson, 578 S.W.2d 679, 683 (Tex.1979); Henderson v. Henderson, 694 S.W.2d 31, 35"36 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.). The general rule is that pleadings will be construed as favorably as possible to the pleader. Gulf, C. & S.F. Ry. Co. v. Bliss, 368 S.W.2d 594, 599 (Tex.1963); Henderson, 694 S.W.2d at 36. "The court will look to the pleader' s intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged. Every fact will be supplied that can reasonably be inferred from what is specifically stated." Bliss, 368 S.W.2d at 599. | Pleadings will generally be construed as favorably as possible to the pleader; the court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged, and every fact will be supplied that can reasonably be inferred from what is specifically stated. | Will the pleading be upheld even if some element of a cause of action has not been specifically alleged? | 023771.docx | LEGALEASE-00155424-LEGALEASE-00155425 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10760 | State ex rel. Missouri Highway & Transp. Comm'n v. Moulder, 726 S.W.2d 812 | 307A+581 | These cases do not hold that delay alone mandates the sustaining of a motion to dismiss for failure to prosecute, but that delay in prosecution, without a valid excuse, requires that the motion to dismiss be sustained. In suggestions in opposition to the Commission's motion, Jerry Reynolds, the attorney for Charles Reynolds, who took the case after Charles Shafer, Jr. withdrew, listed the following as reasons for the lengthy delay: 1) difficulty in obtaining the case file from Shafer, due to Shafer's insistence that he was owed an attorney fee based on a firm settlement offer of $20,000, which statement and offer was denied by the Commission, 2) failure by Shafer to return to Reynolds documents, reports, maps, and aerial photographs which were a vital part of Reynolds' evidence, and which resulted in Reynolds having to reconstruct a file, which was an expensive and time consuming effort, 3) the Commission had never asked for a trial setting prior to the filing of its motion to dismiss, and 4) that the only times Reynolds had ever requested continuances was due to his illness, and the death of his wife. These reasons were not refuted by the record, and evidently believed by the trial court. | Delay alone does not mandate sustaining of motion to dismiss for failure to prosecute but delay in prosecution without valid excuse requires that motion be sustained. | Does delay alone mandate sustaining of motion to dismiss for failure to prosecute? | Pretrial Procedure - Memo # 9636 - C - MS_61389.docx | ROSS-003281876-ROSS-003281877 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 10761 | State ex rel. Missouri Highway & Transp. Comm'n v. Moulder, 726 S.W.2d 812 | 307A+581 | These cases do not hold that delay alone mandates the sustaining of a motion to dismiss for failure to prosecute, but that delay in prosecution, without a valid excuse, requires that the motion to dismiss be sustained. In suggestions in opposition to the Commission's motion, Jerry Reynolds, the attorney for Charles Reynolds, who took the case after Charles Shafer, Jr. withdrew, listed the following as reasons for the lengthy delay: 1) difficulty in obtaining the case file from Shafer, due to Shafer's insistence that he was owed an attorney fee based on a firm settlement offer of $20,000, which statement and offer was denied by the Commission, 2) failure by Shafer to return to Reynolds documents, reports, maps, and aerial photographs which were a vital part of Reynolds' evidence, and which resulted in Reynolds having to reconstruct a file, which was an expensive and time consuming effort, 3) the Commission had never asked for a trial setting prior to the filing of its motion to dismiss, and 4) that the only times Reynolds had ever requested continuances was due to his illness, and the death of his wife. These reasons were not refuted by the record, and evidently believed by the trial court. | Delay alone does not mandate sustaining of motion to dismiss for failure to prosecute but delay in prosecution without valid excuse requires that motion be sustained. | Does delay in prosecution without valid excuse require that motion be sustained? | 039055.docx | LEGALEASE-00154958-LEGALEASE-00154959 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10762 | Esworthy v. Williams, 100 Nev. 212 | 307A+583 | The only issue in this case is whether the district court abused its discretion by dismissing the action. A trial court may dismiss an action for failure to comply with the rules or orders of the court. NRCP 41. In addition, the court has inherent power, independent of statute or court rule, to dismiss a case for failure to prosecute or to comply with its orders. The court may exercise this power within the bounds of sound judicial discretion. Moore v. Cherry, 90 Nev. 390, 393, 528 P.2d 1018, 1020 (1974). | In addition to statutory authority to dismiss action for failure to comply with rules or orders of court, trial court has inherent power to dismiss case for failure to prosecute or to comply with its order, and court may exercise such power within bounds of sound judicial discretion. Rules Civ.Proc., Rule 41. | Does court have inherent power to dismiss case for failure to prosecute or to comply with its order? | 039082.docx | LEGALEASE-00155152-LEGALEASE-00155153 | SA, Sub | 0.39 | 0 | 0 | 1 | 1 | |
| 10763 | Preston v. Kaiser Found. Hosps., 126 Cal. App. 3d 402 | 307A+581 | The policy of our law is to require a plaintiff to expedite the resolution of his or her claim and courts should not enforce claims unless the parties claiming them act in a timely fashion. (Martin v. Cook, 68 Cal.App.3d 799, 137 Cal.Rptr. 434; Lockhart-Mummery v. Kaiser Foundation Hospitals, 103 Cal.App.3d 891, 163 Cal.Rptr. 325.) Code of Civil Procedure section 583 is a codification of that policy and simply declares that two years is generally a reasonable time to bring a case to trial and that a delay of five years raises a strong presumption that a plaintiff has failed to exercise reasonable diligence. | Policy of law is to require a plaintiff to expedite resolution of his or her claim and court should not enforce claims unless plaintiff acts in timely fashion. West's Ann.C.C.P. S 583. | Is policy of law to require a plaintiff to expedite resolution of his or her claim? | 039103.docx | LEGALEASE-00155309-LEGALEASE-00155310 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 10764 | The Florida Bar v. O'Connor, 945 So. 2d 1113 | 46H+984 | Finally, Florida Rule of Civil Procedure 1.420(e), which governs dismissal of civil claims for failure to prosecute, has been held to require some affirmative action and to not be self-executing. See, e.g., Pollock v. Pollack, 116 So.2d 761 (Fla.1959); Mitchell v. Coker Fuel, Inc., 511 So.2d 344 (Fla. 2d DCA 1987); City of Miami v. Katz, 498 So.2d 635 (Fla. 3d DCA 1986); Peterzell v. James Urbach, M.D., P.A., 497 So.2d 921 (Fla. 5th DCA 1986); Barnes v. Escambia County Employees Credit Union, 488 So.2d 879 (Fla. 1st DCA 1986); Fla. E. Coast Ry. Co. v. Russell, 398 So.2d 949 (Fla. 4th DCA 1981). | Attorney's emergency suspension from practice of law was not automatically dissolved when 60-day deadline passed without state bar filing a formal complaint against him, as time limit of bar rule was not self-executing; bar rule was silent with regard to effect of failure by state bar to file formal complaint within 60 days, cases in which Supreme Court had dismissed attorney disciplinary proceedings for undue delay by state bar were initiated by motion to dismiss or motion to cease and desist, and rule of civil procedure governing dismissal of civil claims for failure to prosecute had been held to require some affirmative action and not to be self-executing. West's F.S.A. Bar Rules 3-5.2(d), 3-7.11(a), 3-7.16; West's F.S.A. RCP Rule 1.420(e). | Does the rule governing dismissal for failure to prosecute self-executing? | 039227.docx | LEGALEASE-00155273-LEGALEASE-00155274 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 10765 | GMAC Mortg. v. Bisceglie, 109 A.D.3d 874 | 266+1798 | In the instant case, Bisceglie's unrefuted allegation that the plaintiff's affidavit in support of its motion for summary judgment, purportedly based upon personal knowledge, was in fact signed by a limited signing officer who had no personal knowledge of the facts, was a proper basis upon which to set aside the determination awarding summary judgment to the plaintiff (see CPLR 5015[a][3]; James v. U.S. Bank Natl. Assn., 272 F.R.D. 47 [D.Me.2011]; HSBC Mtge. Corp. [USA ] v. Gerber, 100 A.D.3d 966, 955 N.Y.S.2d 131), and to preclude any successive motions for summary judgment (see Sutter v. Wakefern Food Corp., 69 A.D.3d 844, 845, 892 N.Y.S.2d 764). Hence, the Supreme Court properly granted that branch of Bisceglie's motion which was, in effect, to vacate the order dated May 13, 2013, inter alia, granting that branch of the plaintiff's motion which was for summary judgment on the complaint insofar as asserted against her. Nonetheless, where a motion for summary judgment is based solely upon an affidavit of someone with no personal knowledge of the facts, that circumstance generally presents only a ground for the denial of summary judgment (see HSBC Mtge. Corp. [USA ] v. Gerber, 100 A.D.3d 966, 955 N.Y.S.2d 131), not a ground to dismiss the action. | Mortgagor's unrefuted allegation that mortgagee's affidavit in support of its motion for summary judgment, purportedly based upon personal knowledge, was in fact signed by limited signing officer who had no personal knowledge of facts, was proper basis upon which to set aside determination awarding summary judgment to mortgagee in foreclosure action, and to preclude any successive motions for summary judgment, but did not warrant dismissal with prejudice in favor of mortgagor. McKinney's CPLR 5015(a)(3). | "Where a motion for summary judgment is based solely upon an affidavit of someone with no personal knowledge of the facts, does that circumstance generally present only a ground for the denial of summary judgment?" | Pretrial Procedure - Memo # 9846 - C - UG_61441.docx | ROSS-003292381-ROSS-003292382 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10766 | Booker v. United Am. Ins. Co., 700 So. 2d 1333 | 308+54 | 3 C.J.S. Agency " 265 (1973). See 3 Am.Jur.2d Agency "" 157, 162, 163 (1986). That is, a principal will be bound by the acts of a purported subagent only if: (1) the agent had express authority to appoint the subagent; (2) the agent had implied authority to appoint the subagent; or (3) the principal ratified the appointment. See Consolidated 6 Underwriters Ins. Co. v. Landers, 285 Ala. 677, 681, 235 So.2d 818, 822 (1970); Eagle Motor Lines v. Hood, 256 Ala. 395, 398, 55 So.2d 126, 129 (1951); Butler v. Standard Life Ins. Co. of the South, 232 Ala. 238, 167 So. 307, 309"10 (1936); Schloss Bros. & Co. v. Gibson Dry Goods Co., 6 Ala.App. 155, 60 So. 436, 437 (1912).3 | Principal is bound by acts of purported subagent only if (1) agent had express authority to appoint subagent; (2) agent had implied authority to appoint subagent; or (3) principal ratified appointment. | Is a principal liable for the act of a purported agent if the agent had implied or express authority to appoint the subagent? | 041638.docx | LEGALEASE-00155686-LEGALEASE-00155687 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 10767 | Diehl v. Ohio Dep't of Agric., 102 Ohio St. 3d 50 | 178+3 | There is some discussion in the briefs whether the assessment is a fee or a tax. State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow (1991), 62 Ohio St.3d 111, 579 N.E.2d 705, answers the question. In Withrow, we stated, "A fee is a charge imposed by a government in return for a service it provides; a fee is not a tax." Id. at 113, 579 N.E.2d 705. Since the assessment is collected to fund the inspections, we find that it is a fee. | Ohio Department of Agriculture's (ODA's) milk inspection fee, which required Ohio milk processors to pay an assessment calculated on the total amount of raw milk received without regard to the state of origin, was a fee rather than a tax; fees were charges imposed by government in return for a service provided, and the assessment was collected to fund milk inspections. R.C. S 917.031. | "Is a fee, which is imposed by a government in return for a service it provides, a tax?" | Taxation - Memo # 979 - C - JL_61813.docx | ROSS-003283218 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 10768 | Stoner v. Howard Sober, 128 Ind. App. 371 | 413+9 | Carl Hagenbeck& Great Wallace Shows Co. v. Lappert, 1917, 66 Ind.App. 261, 117 N.E. 531; Rogers v. Rogers, 1919, 70 Ind.App. 659, 122 N.E. 778; Clark v. Woods, 1933, 95 Ind.App. 530, 183 N.E. 804; Calkins v. Service Spring Co., 1937, 103 Ind.App. 257, 7 N.E.2d 54; Warren v. Indiana Telephone Co., 1940, 217 Ind. 93, 26 N. E.2d 399; Elkhart Sawmill Co. v. Skinner, 1942, 111 Ind.App. 695, 42 N.E.2d 412; Mid-Continent Petroleum Corp. v. Vicars, 1943, 221 Ind. 387, 47 N.E.2d 972; Railway Express Agency v. Harrington, 1949, 119 Ind.App. 593, 88 N.E.2d 175, 88 N.E.2d 915; Sollitt Construction Co. v. Walker, Ind.App., 135 N.E.2d 623. The provisions of the Workmen's Compensation Act, as enacted and amended, Burns' Ann.St. " 40"1201 et seq., form and become the terms of the contract voluntarily adopted by the employer and employee and are binding on them and their dependents.The decedent, having agreed as one of the provisions of his contract with appellee that his common-law wife should be excluded as a presumptive dependent unless such common-law marriage relationship shall have existed openly and notoriously for a period of not less than five years immediately preceding his death, would be in no position to challenge his own voluntary agreement as depriving him of his constitutional rights; and, as appellant acquires any rights she may possess as a dependent of the decedent solely under and by virtue of his said contract, she, too, is in no position to challenge said contract as depriving her of the asserted constitutional right. | The provisions of Workmen's Compensation Act form and become terms of contract voluntarily adopted by employer and workmen and are binding on them and their dependents; and therefore deceased workman's common-law wife was in no position to challenge statutory requirement (that common-law marriage relationship have existed for five years) as violative of her constitutional right to equal protection of laws. Burns' Ann.St. SS 40-1201 et seq., 40-1403(a); U.S.C.A.Const. Amend. 14; Const. art. 1, S 13. | Is the Compensation Act binding? | 048440.docx | LEGALEASE-00155132-LEGALEASE-00155133 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 10769 | Gerlich v. Leath, 861 F.3d 697 | 92+2007 | If a state university creates a limited public forum for speech, it may not"discriminate against speech on the basis of its viewpoint." Rosenberger, 515 U.S. at 829, 115 S.Ct. 2510. A university "establish[es] limited public forums by opening property limited to use by certain groups or dedicated solely to the discussion of certain subjects." Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez, 561 U.S. 661, 679 n.11, 130 S.Ct. 2971, 177 L.Ed.2d 838 (2010) (internal quotation marks and citation omitted). A university's student activity fund is an example of a limited public forum. See Rosenberger, 515 U.S. at 823"27, 829"30, 115 S.Ct. 2510. ISU created a limited public forum when it made its trademarks available for student organizations to use if they abided by certain conditions. | If a state university creates a limited public forum for speech, it may not discriminate against speech on the basis of its viewpoint. U.S. Const. Amend. 1. | "f a state university creates a limited public forum for speech, can it discriminate against speech on the basis of its viewpoint?" | Education - Memo # 279 - C - KS.docx | LEGALEASE-00045652-LEGALEASE-00045653 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 10770 | Buttny v. Smiley, 281 F. Supp. 280 | 141E+1025 | We are not convinced that because there may be borderline cases the University officials must be denied the goals and protection they seek. Where there is doubt as to the nature of a student's activity we cannot assume that the disciplinary bodies will not accord them full protection. Regulations and rules which are necessary in maintaining order and discipline are always considered reasonable. See Dickey v. Alabama State Board of Education, 273 F.Supp. 613 (M.D.Ala.1967). We are persuaded that the "Hazing" rule is not on its face a prior restraint on the right to freedom of speech and the right to assemble. The language is clear; it authorizes discipline for "any interference with the public or private rights of citizens." Since the "Hazing" rule is not constitutionally vague, it is not necessary for us to make a specific finding regarding the other rules involved. Certainly their language is broad; however, we are unable to find any cases, nor were any called to our attention, which have held university regulations such as these to be invalid because they are so vague as to deny due process of law. In fact the recent cases have not denied the validity and reasonableness of some very broad disciplinary regulations. In addition, it cannot be denied that university authorities have an inherent general power to maintain order on campus and to exclude those who are detrimental to its well being. Goldberg v. Regents, supra; Morris v. Nowotny, Tex.Civ.App., 323 S.W.2d 301 (1959). | University authorities have inherent general power to maintain order on campus and to exclude those who are detrimental to its well-being. | Do university authorities have an inherent general power to maintain order on campus and to exclude those who are detrimental to its wellbeing? | Education - Memo # 283 - C - KS.docx | LEGALEASE-00045654-LEGALEASE-00045655 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 10771 | McCune v. Kilpatrick, 53 F. Supp. 80 | 402+1095 | This question must be determined from all the facts and circumstances of the case, and in the light of the perils and weapons of the existing war. A military voyage for the purpose of transporting army troops and supplies during the present war is, in my opinion, clearly a military expedition "in the field". Such a voyage is necessary for the maintenance of supplies for the troops in the combat area, and for the transportation of replacements, and is fraught with grave dangers from the land, the sky and the sea. | A military voyage for the purpose of transporting army troops and supplies during present war is a military expedition "in the field" within Articles of War relating to persons subject to military law. Articles of War, art. 2(d), 10 U.S.C.A. S 1473(d). | Is a military voyage for the purpose of transporting army troops and supplies during war is a military expedition? | Neutrality Laws - Memo 3 - KC_62360.docx | ROSS-003294536-ROSS-003294537 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10772 | Ruwe v. Farmers Mut. United Ins. Co., 238 Neb. 67 | 302+34(2) | With respect to the pleading requirements at issue, Neb.Rev.Stat. " 25-804(2) (Reissue 1989) requires a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition. A petition is sufficient if, from the statement of facts set forth in the petition, the law entitles a plaintiff to recover. Dixon v. Reconciliation, Inc., 206 Neb. 45, 291 N.W.2d 230 (1980); Cagle, Inc. v. Sammons, 198 Neb. 595, 254 N.W.2d 398 (1977). "[I]t is the facts well pleaded, not the theory of recovery or legal conclusions, which state a cause of action. [Citations omitted.]" Moore v. Puget Sound Plywood, 214 Neb. 14, 18, 332 N.W.2d 212, 215 (1983). "Pleadings frame the issues upon which a cause is to be tried and advise the adversary as to what he must meet. [Citation omitted.]" Id. In actions not involving extraordinary remedies, general pleadings are to be liberally construed in favor of the pleader. Hutmacher v. City of Mead, 230 Neb. 78, 430 N.W.2d 276 (1988). | In actions not involving extraordinary remedies, general pleadings are to be liberally construed in favor of pleader. Neb.Rev.St. S 25-804(2). | "In actions not involving extraordinary remedies, are general pleadings liberally construed in favor of the pleader?" | Pleading - Memo 563 - RMM_62371.docx | ROSS-003281866-ROSS-003281867 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 10773 | Volkman v. Hanover Investments, 843 N.W.2d 789 | 307A+685 | Once a defendant challenges jurisdiction, "the burden is on the plaintiff to prove that sufficient contacts exist with the forum state." Juelich v. Yamazaki Mazak Optonics Corp., 682 N.W.2d 565, 569"70 (Minn.2004). "[I]f a motion to dismiss is supported by affidavits, the nonmoving party cannot rely on general statements in [her] pleading." Hoff v. Kempton, 317 N.W.2d 361, 363 n. 2 (Minn.1982) (quotation omitted). | If a motion to dismiss for lack of personal jurisdiction is supported by affidavits, the nonmoving party cannot rely on general statements in her pleading. M.S.A. S 543.19. | "If a motion to dismiss is supported by affidavits, can the nonmoving party rely on general statements in her pleading?" | Pretrial Procedure - Memo # 10037 - C - DA_62053.docx | ROSS-003281192 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 10774 | New Bedford Educators Ass'n v. Chairman of Massachusetts Bd. of Elementary & Secondary Educ., 83 N.E.3d 166 | 13+13 | "Standing is an issue of subject matter jurisdiction that is properly challenged by way of a motion to dismiss under rule 12(b) (1)." Indeck Maine Energy, LLC v. Commissioner of Energy Resources, 454 Mass. 511, 516, 911 N.E.2d 149 (2009) (Indeck). See Ginther v. Commissioner of Ins., 427 Mass. 319, 322, 693 N.E.2d 153 (1998), quoting from Tax Equity Alliance v. Commissioner of Rev., 423 Mass. 708, 715, 672 N.E.2d 504 (1996) ("[O]nly persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of government"). | Standing is an issue of subject matter jurisdiction that is properly challenged by way of a motion to dismiss. Mass. R. Civ. P. 12(b)(1). | Is standing an issue of subject matter jurisdiction that is properly challenged by way of motion to dismiss? | Pretrial Procedure - Memo # 10068 - C - AC_62398.docx | ROSS-003294724 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 10775 | Seip v. Rogers Raw Materials Fund, 408 Ill. App. 3d 434 | 307A+685 | We note that the December 2005 redemption values, and subsequent disbursements, were derived from affidavits provided by Goodman. These values were never said to be objectionable and plaintiffs never filed a counteraffidavit. As we have held before, facts contained in an affidavit in support of a motion to dismiss which are not contradicted by a counteraffidavit must be taken as true for purposes of the motion. Atkinson v. Affronti, 369 Ill.App.3d 828, 835, 308 Ill.Dec. 186, 861 N.E.2d 251 (2006). Nevertheless, plaintiffs argue that account statements prepared by Beeland subsequent to November 2005 contradict Goodman's affidavit. | Facts contained in an affidavit in support of a motion to dismiss which are not contradicted by a counteraffidavit must be taken as true for purposes of the motion. | "When the facts alleged in an affidavit are not contradicted, are those facts taken as true for purposes of a motion to dismiss?" | 024529.docx | LEGALEASE-00156216-LEGALEASE-00156217 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 10776 | Bourke v. Grey Wolf Drilling Co., LP, 2013 WY 93 | 307A+694 | However, the district court also dismissed Bourke's complaint based on failure to state a claim upon which relief could be granted under W.R.C.P. 12(b)(6). Under W.R.C.P. 41(b)(1), a dismissal for failure to state a claim is a dismissal on the merits, and it is with prejudice, unless the court otherwise specifies. The district court entered a judgment against Bourke, and we believe the court clearly intended to rule on the merits and to dismiss with prejudice. Bourke could not therefore simply refile in the correct venue as he could have under the savings statute if the dismissal had been without prejudice based only upon improper venue. | Dismissal for failure to state a claim is a dismissal on the merits, and it is with prejudice, unless the court otherwise specifies. Rules Civ.Proc., Rules 12(b)(6), 41(b)(1). | "Is a dismissal for failure to state a claim a dismissal on the merits, and it is with prejudice, unless the court otherwise specifies?" | 024693.docx | LEGALEASE-00155970-LEGALEASE-00155971 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10777 | Olson v. Alick's Drugs, 863 N.E.2d 314 | 307A+690 | "A dismissal for failure to prosecute or to comply with our Trial Rules pursuant to Trial Rule 41(E) is a dismissal with prejudice unless the trial court provides otherwise." Indiana Ins. Co. v. Insurance Co. of North America, 734 N.E.2d 276, 278 (Ind.Ct.App.2000), reh'g denied, trans. denied (quoting Browning v. Walters, 620 N.E.2d 28, 32 (Ind.Ct.App.1993)). Consequently, a motion made under Trial Rule 41(E) to reinstate a cause after a dismissal must be made pursuant to Trial Rule 60(B).2 Id. | A dismissal for failure to prosecute is a dismissal with prejudice unless the trial court provides otherwise, and consequently, reinstatement must be sought pursuant to a motion for relief from judgment. Trial Procedure Rules 41(E, F), 60(B). | Is a dismissal for failure to prosecute a dismissal with prejudice unless the trial court provides otherwise? | 024733.docx | LEGALEASE-00156118-LEGALEASE-00156119 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 10778 | State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, 387 N.J. Super. 469 | 307A+690 | A motion to dismiss a complaint for failure to state a cause of action must be denied if the claim has been made out. Printing Mart-Morristown, supra, 116 N.J. at 746, 563 A.2d 31. The motion should be granted only in rare instances, ordinarily without prejudice. Id. at 772, 563 A.2d 31; Fazilat v. Feldstein, 180 N.J. 74, 78, 848 A.2d 761 (2004). | A motion to dismiss a complaint for failure to state a cause of action should be granted only in rare instances, ordinarily without prejudice. | "Should a motion to dismiss a complaint for failure to state a cause of action be granted only in rare instances, ordinarily without prejudice?" | Pretrial Procedure - Memo # 10359 - C - BP_62084.docx | ROSS-003279883-ROSS-003279884 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10779 | Nw. Mut. Life Ins. Co. v. State Bd. of Equalization, 73 Cal. App. 2d 548 | 371+2002 | "There is a broad and well-recognized distinction between a tax levied for general governmental or public purposes, and a special assessment levied for improvements made under special laws of a local character." City of Inglewood v. Los Angeles County, 207 Cal. 697, 702, 280 P. 360, 363; see, also, San Diego v. Linda Vista Irr. Dist., 108 Cal. 189, 41 P. 291, 35 L.R.A. 33; City Street Imp. Co. v. Regents, etc., 153 Cal. 776, 96 P. 801, 18 L.R.A.,N.S., 451; Holley v. Orange County, supra. "Moreover, the law recognizes a distinction between property impressed with a public purpose and property of an agency not so impressed, for in the latter instance the property may be sold for delinquent special assessments levied by other agencies or may be affected by adverse possession and other burdens of private property." La Mesa, etc., Irr. Dist. v. Hornbeck, 216 Cal. 730, 738, 17 P.2d 143, 147. "While the power of assessment comes from the general powers of taxation it must not be confounded with it, for as we have seen in Emery v. San Francisco Gas Co. [28 Cal. 345], the words "taxation" and "assessment" are employed in the Constitution to represent different modes of exercising the general power of taxation, and also as indicating different objects and purposes in aid of which a resort to the taxing power may be had. In their origin and legal or constitutional complexion they are the same; but in the mode of their exercise, and in the effect of such exercise upon the property of the taxpayer, they are essentially different.' Taylor v. Palmer, 31 Cal. 240, 251. | There is a broad and well recognized distinction between a tax levied for general governmental or public purposes, and a special assessment levied for improvements made under special laws of a local character. | Is there a broad distinction between a tax and a special assessment? | Taxation - Memo # 1008 - C - JL_62480.docx | ROSS-003292615-ROSS-003292617 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10780 | State v. Chung, 75 Haw. 398 | 3.77E+12 | Hawaii Revised Statutes (HRS) " 707"715 (1985) identifies the conduct proscribed by the offense of terroristic threatening, inter alia, as a threat to cause bodily injury to another person; the same statute identifies terrorization as the result of the conduct proscribed. With respect to the latter, the statute alternatively enumerates "intent" or "reckless disregard" (i.e., "recklessness") as the requisite states of mind. Although the statute is silent as to the requisite state of mind applicable to the proscribed conduct, no purpose to apply different states of mind plainly appears. | Conduct proscribed by the offense of terroristic threatening is a threat to cause bodily injury to another person and terrorization as the result of the proscribed conduct; with respect to the latter, statute alternatively enumerates intent or reckless disregard as the requisite state of mind and, although statute is silent as to the requisite state of mind applicable to the proscribed conduct, no purpose plainly appears to apply a different state of mind. HRS S 707-715. | What is the conduct proscribed by the offense of terroristic threatening? | 046669.docx | LEGALEASE-00156484-LEGALEASE-00156485 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 10781 | Rodriguez ex rel. Rodriguez v. United States, 169 F.3d 1342 | 24+101 | In this case, we agree with the defendants that Congress' decision to reduce the number of aliens eligible for SSI and food stamps by providing that only the aliens in the fourteen categories specified in 1351 " 1612(a)(2) are eligible for those benefits is rationally related to the legitimate purpose of reducing the cost of those welfare programs. The plaintiffs do not contend that " 1612's limitations on the number of aliens eligible for those benefits will not achieve cost savings. Instead, they argue that cost savings is not a legitimate interest for Congress to pursue under its sovereign immigration power. That argument is foreclosed by Mathews where the Supreme Court recognized that one of Congress' purposes in restricting the number of aliens eligible for Medicare benefits was "to maintain the fiscal integrity of the Medicare Part B program." By upholding the exclusion of aliens from Medicare benefits for that purpose, the Court implicitly endorsed cost considerations as a legitimate interest for Congress to consider in exercising its immigration powers. Part and parcel of Congress' power to regulate immigration is the power to control the effects of immigration, one of which is the cost it imposes on the nation's welfare system. Where Congress makes a judgment that immigration is creating, or adding to, financial burdens, it lies within Congress' plenary sovereign power over immigration to take action to alleviate such burdens. | Where Congress makes a judgment that immigration is creating, or adding to, financial burdens, it lies within Congress's plenary sovereign power over immigration to take action to alleviate such burdens. | Is the Congress power to regulate immigration plenary? | Aliens Immigration and_1alhtr2BgI77qc0JZf UwYbEnbMnKGMdSI.docx | ROSS-000000276-ROSS-000000277 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10782 | Greater Kansas City Baptist & Cmty. Hosp. Ass'n v. Businessmen's Assur. Co., 585 S.W.2d 118 | 38+31 | Missouri has the view of 6 A.C.J.S., Assignments, P 49, p. 664, that "any language, however informal or poorly expressed, if it shows the intention of the owner of the property or chose in action to transfer it, clearly and unconditionally, and sufficiently identifies the subject matter will be sufficient to vest the property therein in the assignee".See Halvorson v. Commerce Trust Co., 222 S.W. 897, 898(1) (Mo.App.1920). | Any language which clearly evidences intent of owner of property or chose in action to transfer it clearly and unconditionally and which sufficiently identifies subject matter will be sufficient to constitute assignment. | Is the intention of the owner sufficient to identify the subject matter? | 009089.docx | LEGALEASE-00157145-LEGALEASE-00157146 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 10783 | Snow Ingredients v. SnoWizard, 833 F.3d 512 | 307A+690 | Our precedent makes clear that dismissal " "[w]ithout prejudice" indicates that the suit is dismissed without a decision on the merits and is not conclusive of the rights of the parties." Rivera v. PNS Stores, Inc., 647 F.3d 188, 194 (5th Cir. 2011) (quoting Poulos v. Reda, 165 Ill.App.3d 793, 117 Ill.Dec. 465, 520 N.E.2d 816, 822 (1987)). Without a bona fide favorable termination, Southern Snow cannot support a claim for malicious prosecution. | Dismissal without prejudice indicates that a suit is dismissed without a decision on the merits, and is not conclusive of the rights of the parties, and thus does not count as a bona fide termination required for a Louisiana-law malicious prosecution claim. | "Does a dismissal without prejudice indicate that a suit is dismissed without a decision on the merits, and is not conclusive of the rights of the parties?" | 024916.docx | LEGALEASE-00157351-LEGALEASE-00157352 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 10784 | Hug v. James, 197 P.3d 22 | 307A+690 | James argues that this dismissal for failure to prosecute does not constitute a dismissal "otherwise than upon the merits." By statute, all " 683 dismissals are to be without prejudice. Points v. Oklahoma Publ'g Co., 1983 OK 62, n. 2, 672 P.2d 1146. As stated in Points, the termination of a case cannot be both a judgment on the merits and a dismissal without prejudice-it must be one or the other. Id. at 4, 672 P.2d at 1147. The term "merits" means "the real or substantial grounds of action or defense as distinguished from matters of practice, procedure or form." Flick v. Crouch, 1967 OK 131, 15, 434 P.2d 256, 261. It is clear to us that dismissals pursuant to " 683 cannot and do not address the merits of an action, particularly with the legislative directive that such dismissals are to be without prejudice. | Dismissals under statute permitting dismissals without prejudice for failure to prosecute cannot and do not address the merits of an action, particularly with the legislative directive that such dismissals are to be without prejudice. 12 Okl.St.Ann. S 683. | Can dismissals under statute permitting dismissals without prejudice for failure to prosecute not address the merits of an action? | 025001.docx | LEGALEASE-00157584-LEGALEASE-00157585 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10785 | Sepulveda v. Cty. of El Paso, 170 S.W.3d 605 | 307A+690 | Finally, in Issue Three, Appellants argue that the trial court should have given them an opportunity to re-plead. We will address this contention as it applies to Issue One. As a general rule, a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect. | As a general rule, a dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect; however, dismissal with prejudice is appropriate when the pleadings affirmatively negate the existence of jurisdiction because of sovereign immunity bar. | "As a general rule, is a dismissal with prejudice improper when the plaintiff is capable of remedying the jurisdictional defect?" | Pretrial Procedure - Memo # 10534 - C - SJ_62434.docx | ROSS-003279137-ROSS-003279138 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10786 | Whitaker v. Wright, 100 Fla. 282 | 307A+693.1 | After a plaintiff has suffered a nonsuit or dismissed his cause, the parties are out of court for all purposes other than to carry the order into effect or to vacate or modify the same. | Parties after nonsuit or dismissal are out of court for all purposes other than to carry order into effect or to vacate or modify same. | Are parties after nonsuit or dismissal out of court for all purposes other than to carry an order into effect or to vacate or modify the same? | Pretrial Procedure - Memo # 10697 - C - SN_62676.docx | ROSS-003295900-ROSS-003295901 | SA, Sub | 0.27 | 0 | 0 | 1 | 1 | |
| 10787 | Texas Parks & Wildlife Dep't v. Garland, 313 S.W.3d 920 | 307A+554 | Garland's pleadings affirmatively negate the existence of subject matter jurisdiction. See Miranda, 133 S.W.3d at 227. Therefore, the trial court erred by denying TPWD's plea to the jurisdiction. Accordingly, we sustain TPWD's sole issue. Generally, the proper remedy when a court lacks subject matter jurisdiction is to dismiss the case without prejudice, but when a dispositive defect cannot be remedied, dismissal with prejudice is proper. Cf. Hickman v. Adams, 35 S.W.3d 120, 124 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Therefore, the trial court should have granted the plea and dismissed these claims with prejudice. Accordingly, we reverse the order of the trial court denying TPWD's plea to the jurisdiction and dismiss Garland's action, with prejudice, for lack of subject matter jurisdiction. See Sykes, 136 S.W.3d at 639 (requiring dismissal with prejudice where plaintiff previously had opportunity to amend); see also Tex.R.App. P. 43.2 (authorizing court of appeals to reverse the trial court's judgment and render the judgment the trial court should have rendered). | Generally, the proper remedy when a court lacks subject matter jurisdiction is to dismiss the case without prejudice, but when a dispositive defect cannot be remedied, dismissal with prejudice is proper. | "When a dispositive defect cannot be remedied, is dismissal with prejudice proper?" | Pretrial Procedure - Memo # 10895 - C - RF_63893.docx | ROSS-003280488-ROSS-003280489 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10788 | Kendrick v. Earl's Inc., 987 So. 2d 589 | 307A+690 | The employer and the individual defendants argue that the employee failed to make any motion or file any pleadings in the action when it was pending in the Montgomery Circuit Court awaiting the entry of an order transferring the case to the Elmore Circuit Court. See note 1, supra. The record reflects that the Montgomery Circuit Court had indicated orally that the case was due to be transferred but that it had failed to enter an order to that effect. The resulting 15-month period of inactivity, the employer and individual defendants contend, would support the trial court's ultimate decision to dismiss this case. However, as noted above, a period of inactivity followed by resumed activity in a case is not a sufficient basis for a dismissal with prejudice. Smith, 365 So.2d at 661. The employer filed, and the employee responded to, a motion for a summary judgment after the case was transferred to the Elmore Circuit Court, thus indicating that the employee was actively prosecuting his case at the time of the motions to dismiss. | A period of inactivity followed by resumed activity in a case is not a sufficient basis for a dismissal with prejudice. | Is a period of inactivity followed by resumed activity in a case not a sufficient basis for a dismissal with prejudice? | 025627.docx | LEGALEASE-00157630-LEGALEASE-00157631 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 10789 | Calhoun v. Supreme Court of Ohio, 61 Ohio App. 2d 1 | 302+350(10) | The instant case is distinguishable from Bruckman, in that a judgment on the pleadings is generally a decision on the merits, while a dismissal for a failure to state a claim constitutes a finding that the statement of the claim for relief is insufficient on its face. Wright & Miller, Federal Practice and Procedure, Sections 1349, 1367 (1969). The Bruckman court seemingly recognized this distinction when it stated, at 362, 21 N.E.2d at 481: "The court in the instant case wrote a very comprehensive and, in our opinion, accurate decision upon the merits of the plaintiff's contention, finding against him. If such findings had been incorporated in a judgment after proper pleadings, the rights of the plaintiff in the matter would have been properly considered." (Emphasis added.). | A judgment on pleadings is generally a decision on merits, while dismissal for failure to state a claim constitutes a finding that statement of claim for relief is insufficient on its face. Civ.R. 12(C), 57. | Is a judgment on pleadings generally a decision on merits? | 025825.docx | LEGALEASE-00157660-LEGALEASE-00157661 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 10790 | Van Arsdale v. Caswell, 311 S.W.2d 404 | 307A+693.1 | An order of dismissal is final and after the term at which it is entered [now after ten days], the court loses jurisdiction of the cause. Combs v. Deaton, 199 Ky. 477, 251 S.W. 638. | An order of dismissal is final ten days after it is entered and the court loses jurisdiction of the cause. | Is an order of dismissal final ten days after it is entered and the court loses jurisdiction of the cause? | Pretrial Procedure - Memo # 11039 - C - PC_63428.docx | ROSS-003294117 | SA, Sub | 0.41 | 0 | 0 | 1 | 1 | |
| 10791 | Barlage v. Valentine, 210 Ariz. 270 | 308+1 | 16 Similarly relying on Snow, Valentine argues that, because she did notpersonally sign the receipt, the attempted service by certified mail was ineffective under Rule 4.2(c). That argument and the trial court's ruling, however, overlook basic principles of agency law. "[A]n agent is 'one who acts on behalf of another.'" ' Southeast Ariz. Med. Ctr. v. Ariz. Health Care Cost Containment Sys., 188 Ariz. 276, 282, 935 P.2d 854, 860 (App.1996), quoting In re John W. Murphey & Helen G. Murphey Trust, 169 Ariz. 443, 444, 819 P.2d 1029, 1030 (App.1991). "An essential element of the principal-agent relationship which carries a fiduciary responsibility is the ability of the agent to act on behalf of his principal with third parties." Equitable Life & Cas. Ins. Co. v. Rutledge, 9 Ariz.App. 551, 555, 454 P.2d 869, 873 (1969), citing Valley Nat'l Bank v. Milmoe, 74 Ariz. 290, 248 P.2d 740 (1952). As our supreme court has stated, "The law of agency is based on the principle of qui facit per alium, facit per se, i.e., one acting by another is acting for himself." Gustafson v. Rajkovich, 76 Ariz. 280, 284, 263 P.2d 540, 543 (1953); see also In re Coupon Clearing Serv., Inc., 113 F.3d 1091, 1099 (9th Cir.1997) ("One of the chiefcharacteristics of an agency relationship is the 'authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties."quoting Violette v. Shoup, 16 Cal.App.4th 611, 20 Cal. 358, 363 (1993). Thus, whenan agent acts, as Valentine's agent did here, it is as if the principal herself has acted. | The law of agency is based on the principle of qui facit per alium, facit per se, i.e., one acting by another is acting for himself; thus, when an agent acts, it is as if the principal herself has acted. | "Is the law of agency based on the principle of qui facit per alium, facit per se?" | Principal and Agent - Memo 435 - RK_63555.docx | ROSS-003284508-ROSS-003284509 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10792 | Hollister v. Thomas, 110 Conn. App. 692 | 308+1 | Further, there were scant facts alleged that elaborate on the relationship between Thomas Janesky and Brown other than the use of the labels "agent" and "subcontractor." As stated, "the labels used by the parties in referring to their relationship are not determinative; rather, a court must look to the operative terms of their agreement or understanding." Wesley v. Schaller Subaru, Inc., supra, 277 Conn. at 543"44, 893 A.2d 389. The operative complaint as to Brown was the plaintiff's fourth amended complaint; the plaintiff availed himself of several opportunities to amend his pleadings. It is telling that throughout the course of those pleadings, the plaintiff did not take advantage of those opportunities to allege further facts delineating the alleged agency relationship between Brown and Thomas Janesky. Accordingly, we conclude, as a matter of law, that the plaintiff failed to allege an agency relationship between Brown and Thomas Janesky. | The labels used by the parties in referring to their relationship are not determinative of an agent/principal relationship; rather, a court must look to the operative terms of their agreement or understanding. | Are the labels used by the parties in referring to their agency relationship determinative? | Principal and Agent - Memo 436 - RK_63556.docx | ROSS-003294672-ROSS-003294673 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 10793 | Johnson v. LeBonheur Children's Med. Ctr., 74 S.W.3d 338 | 231H+25 | Moreover, an agent may serve two masters simultaneously when the objectives of the dual masters are not contrary. "A person may be the servant of two masters, not joint employers, at one time as to one act, if the service does not involve abandonment of the service to the other." (quoting Restatement (Second) of Agency, " 226 cmt. b.). Two parties "may agree to employ a servant together or to share the services of a servant. If there is one agreement with both of [the parties], the actor is the servant of both [when] the servant is subject to joint control." Restatement of the Law, Second, Agency, " 226. Thus, a person serving two masters may subject both to liability for the same act "if the act is within the scope of employment for both." White, 33 S.W.3d at 725 (quoting Restatement (Second) of Agency, " 226 cmt. a.). We hold, therefore, that a physician resident may be the agent of both the State and a private hospital. Whether an agency relationship exists is determined by the trier of fact. See Harris v. St. Mary's Med. Ctr., Inc., 726 S.W.2d 902, 906 (Tenn.1987). | A person may be the servant of two masters, not joint employers, at one time as to one act, if the service does not involve abandonment of the service to the other. Restatement (Second) of Agency, S 226, comment b. | Can a person be the servant of two masters if the service does not involve abandonment of the service to the other? | Principal and Agent - Memo 445 - RK_63565.docx | ROSS-003293780-ROSS-003293781 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 10794 | Bd. of Overseers of The Bar v. Lee, 422 A.2d 998 | 371+2002 | A tax, as our Court observed more than a century ago, is a charge either to raise money for public purposes or to accomplish some governmental end. Brewer Brick Co. v. Brewer, 62 Me. 62, 70 (1873). When the exactions, however, are not imposed for the main purpose of revenue, but are imposed in the exercise of a police power and as part of a program for the regulation of a particular business, occupation or profession, the levies are license fees and not taxes. Utter v. State, 571 S.W.2d 934, 937 (Tex.Cr.App., 1978); Pittsburgh Milk Co. v. City of Pittsburgh, 360 Pa. 360, 62 A.2d 49, 52 (1948); Brackman v. Kruse, 122 Mont. 91, 199 P.2d 971, 977 (1948); City of Coos Bay v. Aerie No. 538 of Fraternal Order of Eagles, 179 Or. 83, 170 P.2d 389, 396 (1946). | "Tax" is a charge either to raise money for public purposes or to accomplish some governmental end; exactions, which are not imposed for main purpose of revenue but are imposed in exercise of police power and as a part of a program for regulation of a particular business, occupation or profession, are "license fees" and not taxes. | Is tax a charge either to raise money for public purposes or to accomplish some governmental end? | Taxation - Memo # 1019 - C - JL_63297.docx | ROSS-003305867-ROSS-003305868 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 10795 | Safety Net for Abused Persons v. Segura, 692 So. 2d 1038 | 371+2002 | Although the statute refers to the charge as a "fee," we find that it is in reality a tax. A charge that has as its primary purpose the raising of revenue, as opposed to the regulation of public order, is a tax. Moreover, a tax is a charge that is unrelated to or materially exceeds the special benefits conferred upon those assessed.Audubon Insurance Co. v. Bernard, 434 So.2d 1072, 1074 (La.1983); 4 Cooley, The Law of Taxation, Ch. 29, " 1784 (4th ed.1924). The money collected pursuant to La. R.S. 13:1906 goes, not to court services nor to any other entity associated with the judicial system, but to a private, nonprofit corporation to be used at its discretion for domestic violence programs. The charge is thus not a fee assessed to defray the expenses of litigation or to support the court system. Rather, it is a revenue raising measure designed to fund a particular social program. Therefore, the question before us is whether the legislature may impose a tax on litigants that is collected by the judiciary to go directly to a private non-profit corporation to fund a social welfare program for victims of domestic abuse | "Tax" is charge that is unrelated to or materially exceeds special benefits conferred upon those assessed. | Is a tax a charge that is unrelated to or materially exceeds the special benefits conferred upon those assessed? | 044525.docx | LEGALEASE-00157391-LEGALEASE-00157392 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 10796 | Torao Takahashi v. Fish & Game Comm'n, 334 U.S. 410 | 92+3250 | The protection of this section has been held to extend to aliens as well as to citizens. Consequently the section and the Fourteenth Amendment on which it rests in part protect "all persons' against state legislation bearing unequally upon them either because of alienage or color. See Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847. The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide "in any state" on an equality of legal privileges with all citizens under non-discriminatory laws. | Statute providing that all persons within jurisdiction of United States shall have same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws, and the Fourteenth Amendment, protect all persons against state legislation bearing unequally on them either because of alienage or color. 8 U.S.C.A. S 41; U.S.C.A.Const. Amend. 4. | Does the Fourteenth Amendment protect all persons against state legislation bearing unequally upon them because of alienage? | "Aliens, Immigration, and Citizenship - Memo 55 - RK_63923.docx" | ROSS-003320188-ROSS-003320189 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 10797 | Heffron v. Hanaford, 40 Mich. 305 | 289+673 | Plaintiff was a witness on his own behalf, and his counsel put to him the question: "At the time Webber endorsed the note did he state any reason to you why he endorsed it in this shape?" Also, "What did he state was the consideration?" Both questions were overruled. The ruling was correct. Heffron knew he was taking the endorsement of the firm for a debt of a third person, and if Webber had stated at the time that his firm was to or did receive some consideration for the endorsement, it could not have bound Hanaford. A partner's declarations may bind his associates in partnership matters, but not in concerns foreign to the partnership; and he cannot by his mere admission or declaration bring a transaction within the scope of the business when upon the facts in proof it appears to have no connection. Webber would have been a competent witness to establish a partnership interest, but his declaration would, as to Hanaford, have been mere hearsay. His authority to speak for his associates must first be shown, and then, perhaps, what he says may bind or affect them. | A partner's declarations will not bind his associates in matters foreign to the partnership, nor will his mere admission or declaration bring a transaction within the scope of the partnership business. | Does a partners declaration about concerns foreign to the partnership bind his associates? | 022631.docx | LEGALEASE-00158739-LEGALEASE-00158740 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10798 | Barnard v. Lapeer & P.H. Plank Road Co., 6 Mich. 274 | 289+776 | And the knowledge and assent required to bind the copartner must be established by evidence affirmatively showing it, or from which it may be clearly inferred. This is sought to be established from the fact that assessments were made, and their payment demanded of the firm, which were unresponded to; and it is urged that it was Barnard's duty, upon such demands, to repudiate any interest in the company, and that his silence should be construed into a recognition of his relation as a stockholder. Now, a demand either through the mail, or personal, is sufficient to bind a stockholder, but not to create one. | Knowledge and assent to bind a partner as to contract of a copartner must be established by evidence affirmatively showing it, or from which it may be clearly inferred. | Is the knowledge and assent required to bind the copartner needed to be established by evidence affirmatively showing it? | 022633.docx | LEGALEASE-00158741-LEGALEASE-00158742 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10799 | Waterford Exec. Grp., Ltd. v. Clark/Bardes, 261 Ill. App. 3d 338 | 307A+561.1 | Section 2"619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2"619(a)(9) (West 1992)) provides for the dismissal of a complaint when the underlying claim is barred by an affirmative matter. An affirmative matter includes something in the nature of a defense that completely negates the alleged cause of action. (Meyers v. Rockford Systems, Inc. (1993), 254 Ill.App.3d 56, 61, 192 Ill.Dec. 761, 625 N.E.2d 916.) | For purposes of statute providing for dismissal of complaint when underlying claim is barred by affirmative matter, "affirmative matter" includes something in nature of defense that completely negates alleged cause of action. S.H.A. 735 ILCS 5/2-619(a)(9). | What does an affirmative matter include for the purpose of providing for dismissal of complaint when underlying claim is barred? | 025420.docx | LEGALEASE-00158050-LEGALEASE-00158051 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |
| 10800 | Amos v. Amos, 282 Ark. 532 | 307A+561.1 | Although the preferred method to assert an affirmative defense such as res judicata is in an answer and not in a motion to dismiss, see Hurst v. Hurst, 255 Ark. 936, 504 S.W.2d 360 (1974); and May v. Edwards, 258 Ark. 871, 529 S.W.2d 647 (1975), we have, in a similar situation, treated such a motion as if it were properly raised and decided it on the merits. Narisi v. Narisi, 233 Ark. 525, 345 S.W.2d 620 (1961); See also Hurst v. Hurst, supra; Smith v. Smith, 241 Ark. 465, 409 S.W.2d 317 (1966). | Although preferred method to assert affirmative defense such as res judicata is in an answer and not a motion to dismiss, when raised in motion to dismiss it may be treated as if it were properly raised. | What would be the preferred method to assert affirmative defense? | 025440.docx | LEGALEASE-00158184-LEGALEASE-00158185 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 10801 | Harrison v. Allied Mut. Cas. Co., 253 Iowa 728 | 307A+687 | The weakness in plaintiff's case and the defense thereto upon which the court's ruling is based do not appear in plaintiff's petition. A motion to dismiss assumes the truth of facts well pleaded in the pleading attacked but is not a proper vehicle for the submission of affirmative defenses. The trial court, in an obvious and ordinarily commendable effort to reach an ultimate decision, went beyond the boundary of the limited problem involved. While we approve of prompt disposition of ultimate issues, we cannot sanction disregard of proper methods in determining controverted facts. | A motion to dismiss assumes truth of facts well pleaded in pleading attacked but is not a proper vehicle for submission of affirmative defenses. | Is a motion to dismiss a proper vehicle for submission of affirmative defenses? | 025477.docx | LEGALEASE-00158510-LEGALEASE-00158511 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 10802 | Binner v. Limestone Cty., 129 S.W.3d 710 | 307A+699 | [The motion to reinstate is the failsafe to prevent cases that fall into any of the three categories from being improperly dismissed. It essentially provides an opportunity for the dismissed plaintiff to explain the failure to appear at any hearing, if applicable, the failure to prosecute the case with due diligence, and to request the court to reconsider its decision to dismiss, in much the same manner as a motion for a new trial. See Stromberg Carlson Leasing Corp., 750 S.W.2d at 866. But Rule 165a(3)'s reinstatement standard, "conscious indifference," only applies to cases dismissed for failure to appear. Cf. Shook v. Gilmore, 951 S.W.2d 294, 297 (Tex.App.-Waco 1997, writ denied)(Where a dismissal order specifically stated that the dismissal was due to the party's failure to appear at a pretrial hearing, the party was only required to prove that failure to appear was not intentional or the result of conscious indifference). In this case, the court's notice required Binner to show more. It required a showing of "... good cause ... as to why these causes should not be dismissed." | Motion to reinstate is the failsafe to prevent improper dismissal of cases for failure to appear, for failure to dispose of case within Supreme Court's time standards for disposition, and for failure to diligently prosecute case. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a, subds. 1, 2. | Is a motion to reinstate the failsafe to prevent improper dismissal of cases for failure to appear? | 025520.docx | LEGALEASE-00158854-LEGALEASE-00158855 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 10803 | In re Strickland, 2002 WL 58482 | 307A+699 | An unverified reinstatement motion, however, does not extend plenary power beyond 30 days from dismissal. See McConnell, 800 S.W.2d at 194; Dardari, 961 S.W.2d at 469. Salazar's unverified motion thus did not extend plenary power. | An unverified reinstatement motion does not extend trial court's plenary power beyond 30 days from dismissal. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(3, 4). | Does an unverified reinstatement motion not extend a trial court's plenary power beyond 30 days from dismissal? | Pretrial Procedure - Memo # 10832 - C - SN_64095.docx | ROSS-003293757-ROSS-003293758 | SA, Sub | 0.3 | 0 | 0 | 1 | 1 | |
| 10804 | Obenschain v. Williams, 750 So. 2d 771 | 307A+622 | Dismissal of a complaint with prejudice is a severe sanction which should be granted only when the pleader has failed to state a cause of action, and it conclusively appears that there is no possible way to amend the complaint to state a cause of action. Madison County v. Foxx, 636 So.2d 39, 51 (Fla. 1st DCA 1994); Gowan v. Bay County, 744 So.2d 1136 (Fla. 1st DCA 1999). Instead, the pleader should be given an opportunity to amend the defective pleading. Gowan, supra. A court should not dismiss a complaint with prejudice if it is actionable on any ground. Wilson v. News-Press Publishing Co., 738 So.2d 1000 (Fla. 2d DCA 1999); Dockery v. Florida Democratic Party, 719 So.2d 9 (Fla. 2d DCA 1998). Dismissal with prejudice is an abuse of discretion where a pleader may be able to allege additional facts to support its cause of action or support another cause of action under a different legal theory. Kapley v. Borchers, 714 So.2d 1217 (Fla. 2d DCA 1998); Harper Companies v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A., 656 So.2d 627 (Fla. 4th DCA 1995). The opportunity to amend a complaint should be liberally given and should not be denied unless the privilege has been abused. Gowan, supra; Gladstone v. Smith, 729 So.2d 1002, 1003 (Fla. 4th DCA 1999); Gamma Dev. Corp. v. Steinberg, 621 So.2d 718 (Fla. 4th DCA 1993) | Dismissal with prejudice is an abuse of discretion where a pleader may be able to allege additional facts to support its cause of action or support another cause of action under a different legal theory. | Should a court dismiss a complaint with prejudice if it is actionable on any ground? | 025545.docx | LEGALEASE-00158516-LEGALEASE-00158517 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 10805 | Rohlwing v. Myakka River Real Properties, 884 So. 2d 402 | 307A+690 | The trial court's orders of dismissal contain nothing from which we can determine that the Kozel factors were considered. Because a dismissal with prejudice is the ultimate sanction in the civil justice system, it is reserved for the most aggravating circumstances.Id. This policy transcends the principles relevant to amending civil complaints and has been applied in other areas including the failure to comply with discovery requirements, Commonwealth Fed. Sav. & Loan Ass'n v. Tubero, 569 So.2d 1271 (Fla.1990), and the failure to comply with a pretrial order, Greenhill v. Shands Teaching Hosp. & Clinics, Inc., 834 So.2d 896 (Fla. 1st DCA 2002). If the Rohlwings' case is an example of the most egregious or aggravating circumstances, the order of dismissal with prejudice must so state. | Because a dismissal with prejudice is the ultimate sanction in the civil justice system, it is reserved for the most aggravating circumstances. | "Because a dismissal with prejudice is the ultimate sanction in the civil justice system, is it reserved for the most aggravating circumstances?" | 025663.docx | LEGALEASE-00158108-LEGALEASE-00158109 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10806 | Hager v. City of Devils Lake, 2009 ND 180 | 307A+693.1 | In re C.M., 532 N.W.2d 381, 382"83 (N.D.1995). As we further explained in Albrecht v. Metro Area Ambulance, 1998 ND 132, 13, 580 N.W.2d 583, "[a]fter a court enters an order of dismissal without prejudice, the action is ended, and there is no longer an action pending before the court." | After a court enters an order of dismissal without prejudice, the action is ended, and there is no longer an action pending before the court. | "After a court enters an order of dismissal without prejudice, is the action ended, and is it no longer pending before the court?" | Pretrial Procedure - Memo # 10964 - C - SKG.docx | LEGALEASE-00048429-LEGALEASE-00048430 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 10807 | Pratt v. Staton, 147 N.C. App. 771 | 307A+693.1 | The dispositive issue on appeal is whether the respective orders are properly before this Court for review. Although neither party has raised and addressed the interlocutory nature of plaintiffs' appeals, we raise the issue of appealability on our own motion. See Bailey v. Gooding, 301 N.C. 205, 208, 270 S.E.2d 431, 433 (1980). "Where a trial court's order ... fails to resolve all issues between all parties in an action, the order is not a final judgment, but rather is interlocutory." Howard v. Oakwood Homes Corp., 134 N.C.App. 116, 118, 516 S.E.2d 879, 881 (1999). An order, such as the orders sub judice, granting a motion to dismiss certain claims in an action, while leaving other claims in the action to go forward, is plainly an interlocutory order. See Thompson v. Newman, 74 N.C.App. 597, 328 S.E.2d 597 (1985). | An order granting a motion to dismiss certain claims in an action, while leaving other claims in the action to go forward, is plainly an interlocutory order. | Is an order granting a motion to dismiss certain claims in an action plainly an interlocutory order? | 025768.docx | LEGALEASE-00158798-LEGALEASE-00158799 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 10808 | Silvagnoli v. Consol. Edison Employees Mut. Aid Soc., 112 A.D.2d 819 | 307A+693.1 | This court lacks jurisdiction to entertain defendants' appeal. Special Term had no jurisdiction to rule upon defendants' motions to dismiss for failure to prosecute in the first instance, and its order was a nullity. Dorney v. Reddy, 45 A.D.2d 754, 755, 357 N.Y.S.2d 21 (2d Dept., 1974). | Special term had no jurisdiction to rule on motions to dismiss for failure to prosecute after plaintiff's death, but before legal representative was substituted and, thus, its order denying those motions was a nullity. McKinney's CPLR 1015(a), 3216. | Does a special term have no jurisdiction to rule on motions to dismiss for failure to prosecute after a plaintiff's death? | 025817.docx | LEGALEASE-00158506-LEGALEASE-00158507 | SA, Sub | 0.13 | 0 | 0 | 1 | 1 | |
| 10809 | Harrigan v. Mason & Winograd, 121 R.I. 209 | 307A+693.1 | Particularly, when a motion made by one or more defendants is not joined in by the other defendants and the complaint is dismissed without specifying that it is dismissed only as to the moving defendants, it will ordinarily be construed as a dismissal only as to those moving defendants. Attorney General v. Pomeroy, supra; Caruthers v. Davis,153 Ark. 200, 239 S.W. 763 (1922); Paulson v. New Jersey & New York Railroad, 54 A.D. 189, 66 N.Y.S. 364 (1900). | When a motion made by one or more defendants is not joined in by other defendants and complaint is dismissed without specifying that it is dismissed only as to moving defendants, it will ordinarily be construed as a dismissal only as to those moving defendants. | "When a motion made by one or more defendants is not joined in by other defendants, will it ordinarily be construed as a dismissal?" | 025821.docx | LEGALEASE-00158502-LEGALEASE-00158503 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 10810 | Cooney v. Chicago Pub. Sch., 407 Ill. App. 3d 358 | 307A+561.1 | We review de novo a dismissal under sections 2"615 and 2"619 of the Code. Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill.2d 558, 578"79, 304 Ill.Dec. 369, 852 N.E.2d 825 (2006). A complaint is properly dismissed under section 2"615 of the Code where there is no set of facts that if proven would entitle the plaintiff to recovery. Marshall v. Burger King Corp., 222 Ill.2d 422, 429, 305 Ill.Dec. 897, 856 N.E.2d 1048 (2006). A complaint is properly dismissed under section 2"619 of the Code where no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law. Doyle v. Holy Cross Hospital, 186 Ill.2d 104, 109"10, 237 Ill.Dec. 100, 708 N.E.2d 1140 (1999). | A complaint is properly dismissed based on certain defects or defenses where no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law. S.H.A. 735 ILCS 5/2-619. | Can a complaint be dismissed when no genuine issue of material fact exists? | Pretrial Procedure - Memo # 11069 - C - BP_63456.docx | ROSS-003280058-ROSS-003280059 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 10811 | Cooney v. Chicago Pub. Sch., 407 Ill. App. 3d 358 | 307A+561.1 | We review de novo a dismissal under sections 2"615 and 2"619 of the Code. Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill.2d 558, 578"79, 304 Ill.Dec. 369, 852 N.E.2d 825 (2006). A complaint is properly dismissed under section 2"615 of the Code where there is no set of facts that if proven would entitle the plaintiff to recovery. Marshall v. Burger King Corp., 222 Ill.2d 422, 429, 305 Ill.Dec. 897, 856 N.E.2d 1048 (2006). A complaint is properly dismissed under section 2"619 of the Code where no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law. Doyle v. Holy Cross Hospital, 186 Ill.2d 104, 109"10, 237 Ill.Dec. 100, 708 N.E.2d 1140 (1999). | A complaint is properly dismissed based on certain defects or defenses where no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law. S.H.A. 735 ILCS 5/2-619. | Can a complaint be dismissed when the defendant is entitled to judgment as a matter of law? | Pretrial Procedure - Memo # 11070 - C - BP_63457.docx | ROSS-003280381-ROSS-003280382 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 10812 | Duk Hea Oh v. Natl Capital Revitalization Corp., 7 A.3d 997 | 307A+561.1 | This court jurisprudence instructs that "a motion to strike a defense as insufficient will be denied if the defense fairly presents a question of law or fact which the court ought to hear." Franco I, 930 A.2d at 166 (quoting Securities & Exchange Commn v. Gulf & Western Indus., Inc., 502 F.Supp. 343, 345 (D.D.C.1980)). Thus, a court should not grant a motion to strike "if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." Franco I, 930 A.2d at 166"67 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3D 1381, at 427"28 (2004)). Our case law makes clear, however, that for an affirmative defense to stand (in the sense of entitling the defendant to proceed with discovery as to the defense), facts establishing the elements of the defense "must be particularized in some detail." Patterson v. Walker Thomas Furniture Co., 277 A.2d 111, 114 (D.C.1971). Unless facts supporting an affirmative defense are particularized in an answer or are detailed on the face of the complaint, an affirmative defense expressed only as a legal conclusion is insufficient. Patterson, 277 A.2d at 114; Whitener v. Washington Metro. Area Transit Auth., 505 A.2d 457, 460 (D.C.1986) (citing authority that a conclusory statute-of-limitations defense may stand where the defense is "apparent from the face of the complaint"); see also Shechter v. Comptroller of City of New York, 79 F.3d 265, 270 (2d Cir.1996) ("affirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy.") (citation and internal quotation marks omitted); Barnidge v. United States, 101 F.2d 295, 297 (8th Cir.1939) ( "Admitting the facts pleaded in answer, but not condemnee conclusions of law."). | For an affirmative defense to stand in the sense of entitling the defendant to proceed with discovery as to the defense, facts establishing the elements of the defense must be particularized in some detail. | Why should the facts establishing the element of defense be particularized in detail? | Pretrial Procedure - Memo # 11073 - C - NE_63460.docx | ROSS-003283815-ROSS-003283816 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 10813 | St. Louis Univ. v. Hesselberg Drug Co., 35 S.W.3d 451 | 30+3889 | Collateral estoppel is an affirmative defense. Rule 55.08. Sustaining a motion to dismiss based on an affirmative defense requires that the defense be irrefutably established by the pleadings. Ryan v. Ford, 16 S.W.3d 644, 648 (Mo.App. W.D.2000), citing Murray v. Fleischaker, 949 S.W.2d 203, 205 (Mo.App. S.D.1997). When reviewing the trial court's dismissal of a cause of action, we examine "the pleadings, allowing them their broadest intendment, treating all facts alleged as true, and construing the allegations favorably to the pleader." Bellos v. Winkles, 14 S.W.3d 653, 655 (Mo.App. E.D.2000) (citation omitted) | When reviewing the trial court's dismissal of a cause of action, Court of Appeals examines the pleadings, allowing them their broadest intendment, treating all facts alleged as true, and construing the allegations favorably to the pleader. | Will a motion to dismiss be sustained if the defense is irrefutably established by the pleadings? | 025936.docx | LEGALEASE-00158252-LEGALEASE-00158253 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10814 | Peters v. M & O Const., 119 Ariz. 34 | 307A+693.1 | We reject this contention and hold that the filing of the original complaint did not toll the statute of limitations. If a complaint is dismissed without prejudice, the general rule is that the situation is the same as if the suit had never been brought, unless there is a statute to the contrary. Bomer v. Ribicoff, 304 F.2d 427 (6th Cir. 1962); Humphreys v. United States, 272 F.2d 411 (9th Cir. 1959). Arizona has no such statute and therefore the defective commencement of the action does not toll the statute. The legislature has provided conditions which do toll the statute but defective service is not such a condition. See ARS ss 12-501, 12-502 and 12-507. Moreover, even if we assume that the filing of the complaint did toll the statute, it would not change the outcome of this case. As previously mentioned, the plaintiff had one year to file a complaint or two years to negotiate an assignment with the carrier to protect his right of action. | If complaint is dismissed without prejudice, general rule is that situation is the same as if the suit had never been brought. | "If a complaint is dismissed without prejudice, is the general rule that the situation is the same as if the suit had never been brought?" | Pretrial Procedure - Memo # 11118 - C - VP_63776.docx | ROSS-003280300-ROSS-003280301 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 10815 | Turman v. Turman, 46 S.W.2d 447 | 307A+693.1 | In the latter class of cases the judgment of dismissal is not conclusive and does not constitute a bar to a reinstatement of the suit. George v. Taylor, 55 Tex. 97; Southern Pac. Co. v. Oil & Fuel Co. (Tex. Civ. App.) 151 S. W. 1161; Harrison v. Land Co. (Tex. Civ. App.) 85 S. W. 821; 18 C. J. " 60, p. 1171. And whenever, as here, the dismissal order is not based upon a settlement of the cause, the way is open to the plaintiff to bring a new action or to proceed to have the dismissal order vacated upon timely showing of sufficient grounds or good cause therefor. 18 C. J. " 146, p. 1208; 15 Tex. Jur. "" 27, 48, pp. 269, 291. Looking to the facts which the record discloses, it is believed that the plaintiff could not be reasonably denied redress from the effect of the voluntary dismissal of the cause. The effect of the order made and entered of reinstatement was to leave the cause subject to trial on the merits, after due notice to defendant of the order of reinstatement, either at the same or a succeeding term of court. | Whenever dismissal order is not based on settlement of cause, plaintiff may bring new action. | "Whenever a dismissal order is not based on settlement of cause, can a plaintiff bring a new action?" | 026011.docx | LEGALEASE-00158400-LEGALEASE-00158401 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 10816 | Bushendorf v. Freightliner Corp., 13 F.3d 1024 | 308+3(1) | The district judge erred in allowing the case to go to the jury even if we indulge the dubious proposition that Schamer's statement "a 425 is a 425" is a promise concerning the horsepower at the wheels. According to Bushendorf, the context of the statement was Bushendorf's inquiring whether a Detroit Diesel engine would work well in a Freightliner semi-tractor and the statement itself meant that it would work as well as any 425 horsepower engine could be expected to work, which means delivering at least 361 horsepower to the wheels. Although skeptical, we cannot pronounce this an impossible interpretation. But even if Schamer's statement was therefore a warranty of performance, it was a warranty issued by River States, the dealer (assuming that Schamer was acting with at least apparent authority in issuing it), not by Freightliner, the manufacturer. Such a warranty might well provide a basis for a suit for breach of warranty against River States, but Bushendorf has not filed such a suit; he hasn't sued River States at all. An agent can of course bind his principal with representations made within the scope of his employment, but an automobile dealer or other similar type of dealer, who like River States merely buys goods from manufacturers or other suppliers for resale to the consuming public, is not his supplier's agent. Transurface Carriers, Inc. v. Ford Motor Co., 738 F.2d 42, 47 (1st Cir.1984); Conte v. Dwan Lincoln"Mercury, Inc., 172 Conn. 112, 374 A.2d 144, 149"50 (1976); Funk v. Montgomery AMC/Jeep/Renault, 66 Ohio App.3d 815, 586 N.E.2d 1113, 1117 (1990) (per curiam); Hunter Mining Laboratories, Inc. v. Management Assistance, Inc., 104 Nev. 568, 763 P.2d 350 (1988) (per curiam); Restatement (Second) of Agency " 14j and comment e (1958). | Automobile dealer or other similar type of dealer who merely buys goods from manufacturers or other suppliers for resale to consuming public is not his supplier's agent. | Is an automobile dealer who merely buys goods from a supplier considered the suppliers agent? | 041695.docx | LEGALEASE-00158907-LEGALEASE-00158909 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 10817 | Jones v. Royal Admin. Servs., 866 F.3d 1100 | 308+1 | We have previously clarified that "a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." Gomez v. Campbell-Ewald Co., 768 F.3d 871, 878 (9th Cir. 2014), aff'd sub nom. Campbell-Ewald Co. v. Gomez, U.S., 136 S.Ct. 663, 674, 193 L.Ed.2d 571 (2016) ("[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations."). "Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Mavrix Photographs, LLC v. LiveJournal, Inc., 853 F.3d 1020, 1029 (9th Cir. 2017) (quoting Restatement (Third) Of Agency " 1.01 (Am. Law Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and "the person represented must have a right to control the actions of the agent." " Id. (quoting Restatement (Third) Of Agency " 1.01 cmt. c). One theory of agency, actual authority, "arises through "the principal's assent that the agent take action on the principal's behalf." "3 Id. (quoting Restatement (Third) Of Agency " 3.01). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." | Under California law, "agency" is the fiduciary relationship that arises when one person, a principal, manifests assent to another person, an agent, that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act. | Is an agency a fiduciary relationshiip? | Principal and Agent - Memo 404 - RK_63959.docx | ROSS-003309402-ROSS-003309403 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10818 | Meyers v. Matthews, 270 Wis. 453 | 308+1 | Agency may be of a general or special character, and soliciting agents are agents of a special nature. An agent having authority only to solicit applications and forward them to the home office is a "soliciting agent." 39 Words and Phrases, Soliciting Agent, p. 621; Rozgis v. Missouri State Life Ins. Co., 271 Ill.App. 155, 157. An agency is created by contract, express or implied. "The relation arises when one is authorized to represent another in bringing or to aid in bringing the latter in contractual relation with a third party, however such authority may be conferred." 2 Words and Phrases, Agency, p. 725; Keyser v. Hinkle, 127 Mo.App. 62, 106 S.W. 98, 100. | An agency is created by contract, express or implied, and the relation arises when one is authorized to represent another in bringing, or aiding in bringing, latter into contractual relation with a third party, however, such authority may be conferred. | Who is a soliciting agent? | 041858.docx | LEGALEASE-00158458-LEGALEASE-00158459 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 10819 | Anita's New Mexico Style Mexican Food v. Anita's Mexican Foods Corp., 201 F.3d 314 | 308+1 | Under the law of agency in Virginia, the power of control is ordinarily a determinative factor in ascertaining the alleged agent's status. Texas Co. v. Zeigler, 177 Va. 557, 14 S.E.2d 704, 706 (Va.1941). The Supreme Court of Virginia, in a context similar to that present here, examined whether a principal-agent relationship existed under Va.Code " 8.01"328.1 in John G. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 180 S.E.2d 664, 667 (Va.1971). In determining whether a company fell within the reach of the long-arm statute, the court held that an agency relationship exists when the agent acts "under the authority and direction of" the principal. Kolbe, 180 S.E.2d at 667. Thus, the court held that the manufacturer fell within the long-arm statute when a manufacturer's local representative, acting under the authority and direction of the company, secured the signature of a distributor in Virginia. Kolbe, 180 S.E.2d at 667. In denying Anita's California's motion to dismiss, the district court in the case before us implicitly found that Anita's California acted in Virginia. Queen International sold Mexican food products in Virginia under the authority and direction of Anita's California. Queen International was the production facility for the foods sold by Anita's California. In the stipulated judgment, Anita's California admits that Queen International is its trademark licensee and that it controlled the goods sold by Queen International under the ANITA'S trademark. In light of the evidence that Queen International acted under the authority and direction of Anita's California, the district court properly held that Anita's California fell within the reach of Va.Code " 8.01"328.1(A)(1). | Under the law of agency in Virginia, the power of control is ordinarily a determinative factor in ascertaining the alleged agent's status. | Is power of control a determinative factor in ascertaining an alleged agent's status? | Principal and Agent - Memo 482 - RK_63967.docx | ROSS-003293742-ROSS-003293743 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 10820 | Washington Mut. Bank v. Chiappetta, 584 F. Supp. 2d 961 | 308+1 | The degree of control, though, cannot simply be presumed in order to create a principal-agent relationship between the lender and the title company. As discussed in Creative Hardwood Floors, Inc. v. Schafer:The relationship of principal and agent exists only when one party exercises the right of control over the actions of another, and those actions are directed toward an attainment of an objective which the principal seeks. Mayfield v. Boy Scouts of America (1994), 95 Ohio App.3d 655, 660, 643 N.E.2d 565, citing Hanson v. Kynast (1986), 24 Ohio St.3d 171, 173, 494 N.E.2d 1091. The basic test is whether the principal has the right of control over the manner and means of the work being done. Duke v. Sanymetal Products Company (1972), 31 Ohio App.2d 78, 82, 286 N.E.2d 324. | Under Ohio law, the relationship of principal and agent exists only when one party exercises the right of control over the actions of another, and those actions are directed toward an attainment of an objective which the principal seeks; the basic test is whether the principal has the right of control over the manner and means of the work being done. | When does the relationship of a principal and an agent exist? | Principal and Agent - Memo 522 - RK_63980.docx | ROSS-003281252-ROSS-003281253 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 10821 | Scott v. Ford Motor Credit Corp., 706 S.W.2d 453 | 308+1 | Ford and Scott both correctly point out the critical element which establishes the existence of an agency relationship, to wit, the right to control the physical conduct of the agent in the performance of the service for the principal. See Restatement (Second) of the Law of Agency, " 2 (1958). It is the element of control and the extent of that control which must be shown to establish an agency. | The critical element which establishes the existence of an agency relationship is the right to control the physical conduct of the agent in the performance of the service for the principal. | What critical element establishes the existence of an agency relationship? | Principal and Agent - Memo 536 - RK_63994.docx | ROSS-003321247-ROSS-003321248 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 10822 | Am. Envtl. v. 3-J Co., 222 Ill. App. 3d 242 | 308+1 | An agency relationship is a fiduciary one. (Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1979), 68 Ill.App.3d 75, 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) An attorney, broker, auctioneer, and other persons similarly employed for a single transaction or for a series of transactions are agents, although as to their physical activities they are independent contractors. (Protective Insurance Co. v. Coleman (1986), 144 Ill.App.3d 682, 98 Ill.Dec. 914, 494 N.E.2d 1241.) An insurance broker's employment in each case is that of a special agent for a single objective. (Penrod, 68 Ill.App.3d at 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) Once the limited purpose of the broker's agency is accomplished, the broker no longer owes any on-going fiduciary duty to the ex-principal. (Penrod, 68 Ill.App.3d at 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) Whether the relationship has ceased is a question of fact; however, a complaint must still allege specific facts regarding the circumstances from which the existence of the relationship can be inferred in order to survive a motion to dismiss. See HPI Health Care Services, Inc., 131 Ill.2d at 163, 137 Ill.Dec. 19, 545 N.E.2d 672. | Attorney, broker, auctioneer, and other persons similarly employed for single transaction or for series of transactions are agents, although as to their physical activities they are independent contractors. | Are persons employed for a single transaction agents? | Principal and Agent - Memo 539 - RK_63997.docx | ROSS-003320746-ROSS-003320747 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10823 | Am. Envtl. v. 3-J Co., 222 Ill. App. 3d 242 | 308+1 | An agency relationship is a fiduciary one. (Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1979), 68 Ill.App.3d 75, 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) An attorney, broker, auctioneer, and other persons similarly employed for a single transaction or for a series of transactions are agents, although as to their physical activities they are independent contractors. (Protective Insurance Co. v. Coleman (1986), 144 Ill.App.3d 682, 98 Ill.Dec. 914, 494 N.E.2d 1241.) An insurance broker's employment in each case is that of a special agent for a single objective. (Penrod, 68 Ill.App.3d at 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) Once the limited purpose of the broker's agency is accomplished, the broker no longer owes any on-going fiduciary duty to the ex-principal. (Penrod, 68 Ill.App.3d at 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) Whether the relationship has ceased is a question of fact; however, a complaint must still allege specific facts regarding the circumstances from which the existence of the relationship can be inferred in order to survive a motion to dismiss. See HPI Health Care Services, Inc., 131 Ill.2d at 163, 137 Ill.Dec. 19, 545 N.E.2d 672. | Attorney, broker, auctioneer, and other persons similarly employed for single transaction or for series of transactions are agents, although as to their physical activities they are independent contractors. | Are persons employed for a series of transactions considered agents? | Principal and Agent - Memo 540 - RK_63998.docx | ROSS-003319339-ROSS-003319340 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10824 | Am. Envtl. v. 3-J Co., 222 Ill. App. 3d 242 | 308+1 | An agency relationship is a fiduciary one. (Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1979), 68 Ill.App.3d 75, 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) An attorney, broker, auctioneer, and other persons similarly employed for a single transaction or for a series of transactions are agents, although as to their physical activities they are independent contractors. (Protective Insurance Co. v. Coleman (1986), 144 Ill.App.3d 682, 98 Ill.Dec. 914, 494 N.E.2d 1241.) An insurance broker's employment in each case is that of a special agent for a single objective. (Penrod, 68 Ill.App.3d at 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) Once the limited purpose of the broker's agency is accomplished, the broker no longer owes any on-going fiduciary duty to the ex-principal. (Penrod, 68 Ill.App.3d at 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) Whether the relationship has ceased is a question of fact; however, a complaint must still allege specific facts regarding the circumstances from which the existence of the relationship can be inferred in order to survive a motion to dismiss. See HPI Health Care Services, Inc., 131 Ill.2d at 163, 137 Ill.Dec. 19, 545 N.E.2d 672. | Attorney, broker, auctioneer, and other persons similarly employed for single transaction or for series of transactions are agents, although as to their physical activities they are independent contractors. | Is an attorney employed for a single transaction an agent? | Principal and Agent - Memo 541 - RK_63999.docx | ROSS-003294111-ROSS-003294112 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10825 | Illinois Publ'g& Printing Co. v. Indus. Comm'n, 299 Ill. 189 | 413+101 | The present compulsory law is based squarely upon the police power of the state (Grand Trunk Western Railway Co. v. Industrial Com., 291 Ill. 167, 125 N. E. 748), and does not depend in any way upon the contractual relation of master and servant. In People v. Elerding, 254 Ill. 579, 98 N. E. 982, 40 L. R. A. (N. S.) 893, we had under consideration the act regulating and limiting the hours of employment of females in hotels and other places. The object of the law was to preserve the health, strength, and vigor of the women of the state. It was contended that the work in Elerding's hotel was light, and that the female employees suffered no ill effects because they were on duty longer than 10 hours a day. We held that the act was not separable, but was general, in its application and embraced all hotels and their female employees. The principles announced in that case are applicable to the case at bar. This Compulsory Compensation Act is general in its application and embraces all employers and their employees engaged in businesses or enterprises declared by the statute to be extrahazardous. The language of the act is clear and is not open to construction. It means just what it says-the provisions of this act shall apply automatically and without election to all employers and their employees engaged in enterprises or businesses declared to be extrahazardous -and the court has no right to read into the statute words that are not found therein, either by express inclusion or by fair implication. The plain and obvious meaning of the language used by the Legislature is generally the safest guide to follow in construing any act. Seeking hidden meanings at variance with the language used is a perilous undertaking, which is as apt to lead to an amendment of a law by judicial construction as to arrive at the actual thought in the legislative mind. | Workmen's Compensation Act, S 3, S.H.A. ch. 48, S 139, providing that its terms shall apply to all employers and their employees engaged in any of the enterprises or businesses declared extrahazardous, is not separable, but general, and includes all the employees of an employer engaged in an extrahazardous business. | Do the provisions of the Compensation Act apply automatically and without election to all employers and their employees engaged in enterprises or businesses declared to be extrahazardous? | 048646.docx | LEGALEASE-00158220-LEGALEASE-00158221 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 10826 | Bologna v. City & Cty. of San Francisco, 192 Cal. App. 4th 429 | 268+727 | Enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, title 8 United States Code section 1373(a) invalidates all restrictions on the voluntary exchange of immigration information between federal, state and local government entities and officials and federal immigration authorities. It provides: "Notwithstanding any other provision of Federal, State, or local law, a Federal, State or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." Plaintiffs' claim that title 8 United States Code section 1373(a) provides a basis for liability under Government Code section 816.5 and Evidence Code section 669 fails for the same reason as their Health and Safety Code section 11369 claim"the federal statute was not designed or intended to prevent the type of harm that plaintiffs suffered. | An incident in which an illegal immigrant fatally shot three motorists who were stopped in traffic was not the particular kind of injury that Congress sought to prevent by enacting the statute invalidating all restrictions on the voluntary exchange of immigration information between government officials and immigration authorities, and thus no statutory cause of action was available to motorists' family members against city based on negligence per se or a public entity's violation of a mandatory duty, for city's "sanctuary" policy of shielding immigrants from deportation. Illegal Immigration Reform and Immigrant Responsibility Act of 1996, S 642(a), 8 U.S.C.A. S 1373(a); West's Ann.Cal.Evid.Code S 669; West's Ann.Cal.Gov.Code S 815.6. | Can the sending of information to a local governmental entity regarding the immigration status of an individual be prohibited by a state? | 006830.docx | LEGALEASE-00160382-LEGALEASE-00160383 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10827 | Fonseca v. Fong, 167 Cal. App. 4th 922 | 360+18.43 | As previously noted (see discussion, ante, at p. 572"73, fn. 8) the INA prohibits any state or local governmental entity or official from prohibiting "or in any way restrict[ing], any governmental entity or official from sending to, or receiving from, the [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." (8 U.S.C. " 1373(a).) Additionally, the INA prohibits any person or agency from prohibiting or in any way restricting a state or local government entity from "doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual: ["] (1) Sending such information to, or requesting or receiving such information from, the [ICE]. ["] (2) Maintaining such information. ["] (3) Exchanging such information with any other Federal, State, or local government entity." (8 U.S.C. " 1373(b).) Finally, the INA requires ICE to respond to any inquiry by a state or local government agency "seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." (8 U.S.C. " 1373(c).) | State statute requiring an arresting agency to notify the appropriate federal agency having charge of deportation matters when there is reason to believe that any person arrested for a violation of a specified drug offense may not be a citizen of the United States did not stand as an obstacle to the accomplishment and execution of the Immigration and Nationality Act (INA), but rather furthered the purposes and objectives of the INA, which prohibited any state from restricting information to or from federal immigration authorities regarding citizenship or immigration status, and thus INA did not preempt the state statute. U.S.C.A. Const. Art. 6, cl. 2; 8 U.S.C.A. S 1373; West's Ann.Cal.Health & Safety Code S 11369. | Can a state or local governmental entity or official prohibit or restrict any governmental entity or official from sending federal immigration authorities information regarding the immigration status of any individual? | "Aliens, Immigration and Citizenship - Memo 140 - RK_64779.docx" | ROSS-003310535-ROSS-003310536 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 10828 | In re Mario S., 38 Misc. 3d 444 | 24+179 | "In 1997 ... Congress amended " 1101(a)(27)(J) to require that a court, in its order, determine that the juvenile (1) is eligible for long-term foster care due to abuse, neglect, or abandonment; and (2) has been declared a dependent of a juvenile court or committed or placed with a state agency" (Erick M. at 347, 820 N.W.2d 639; see also, Yeboah at 221"222). "Under the 2008 amendment, the eligibility requirements under [8 USC " 1101(a)(27)(J)(i) ] hinge primarily on a reunification determination. The amendment expanded eligibility to include juvenile immigrants whom a court has committed to or placed in the custody of an individual or state-appointed entity"not just those whom a court has committed to or placed with a state agency or department. In addition, Congress removed the requirement that a state juvenile court find that a juvenile is eligible for long-term foster care because of abuse, neglect, or abandonment. Finally, Congress removed the requirement that a state juvenile court find that a juvenile is eligible for long-term foster care because of abuse, neglect, or abandonment. Instead, a court must find that reunification is not possible because of abuse, neglect, or abandonment" (Erick M. at 346, 820 N.W.2d 639). | Juvenile court's function in deciding motion for special findings which would permit juvenile to file application for adjustment of status as a special immigrant juvenile (SIJ) is limited in scope: court must determine whether, under state law, juvenile is under age 21, unmarried, dependent upon court through order of placement or other court order, whether reunification with one or both parents is not possible due to abuse, neglect, or abandonment, and whether it would be contrary to juvenile's best interest to be returned to his or her previous country of nationality, and court need not determine any other issues, such as juvenile's motivation in moving for required findings, whether allowing particular child to remain in the country might pose threat to public safety, or whether United States Customs and Immigration Services (USCIS), the federal agency charged with enforcing immigration laws, may or may not grant juvenile's application for adjustment of status as a SIJ. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J); 8 C.F.R. S 204.11(c). | "Did Congress require that a court must find that reunification is not possible because of abuse, neglect, or abandonment?" | "Aliens, Immigration and Citizenship - Memo 150 - RK_64788.docx" | ROSS-003307261-ROSS-003307262 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 10829 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+330 | A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime. 8 U.S.C. "" 1302, 1306, 1325. The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain. See 8 U.S.C. "" 1251, 1252(b); Bugajewitz v. Adams, 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978 (1913); Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 1028, 37 L.Ed. 905 (1893). | A deportation proceeding is a purely civil action to determine eligibility to remain in country, not to punish unlawful entry, though entering or remaining unlawfully in country is itself a crime. Immigration and Nationality Act, SS 262, 266, 275, 8 U.S.C.A. SS 1302, 1306, 1325. | Is entering or remaining unlawfully in the country a crime? | "Aliens, Immigration and Citizenship - Memo 62 - RK_64796.docx" | ROSS-003282678-ROSS-003282679 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 10830 | Arizona v. United States, 567 U.S. 387 | 360+18.43 | Federal law makes a single sovereign responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders. If " 3 of the Arizona statute were valid, every State could give itself independent authority to prosecute federal registration violations, "diminish[ing] the [Federal Government]'s control over enforcement" and "detract[ing] from the "integrated scheme of regulation" created by Congress." Wisconsin Dept. of Industry v. Gould Inc., 475 U.S. 282, 288"289, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986). Even if a State may make violation of federal law a crime in some instances, it cannot do so in a field (like the field of alien registration) that has been occupied by federal law. See California v. Zook, 336 U.S. 725, 730"731, 733, 69 S.Ct. 841, 93 L.Ed. 1005 (1949); see also In re Loney, 134 U.S. 372, 375"376, 10 S.Ct. 584, 33 L.Ed. 949 (1890) (States may not impose their own punishment for perjury in federal courts). | Even if State may make violation of federal law a crime in some instances, it cannot do so in field, like field of alien registration, that has been occupied by federal law. U.S.C.A. Const. Art. 6, cl. 2. | Can a State make a violation of alien registration a crime? | 006967.docx | LEGALEASE-00160260-LEGALEASE-00160261 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10831 | Barlow v. Cornwell, 125 A.2d 63 | 289+692 | It is true, as appellant says, that generally notice to, or knowledge of, an acting partner with respect to any matter relating to a transaction within the ordinary scope of the firm's business is notice or knowledge as to all the partners. This rule however is not without exception. It has been held that "Where one member is acting beyond his power, or is conducting a fraud on his partners, or is the person whose duty it is to give his firm notice of what he himself has done, in all such cases notice on his part is not equivalent to notice by them." Bienenstok v. Ammidown, 155 N.Y. 47, 49 N.E. 321, 324, quoting from Lindley on Partnership. When Frost requested appellant to mark his claim paid or satisfied, Frost was acting primarily in his own interest and not in the interest of the partnership. He was seeking the means of taking over the business and disclosure of the true facts to appellee would have defeated Frost's scheme. Under these circumstances Frost's knowledge cannot be imputed to appellee. | Generally notice to, or knowledge of, an acting partner with respect to any matter relating to a transaction within the ordinary scope of firm's business is notice or knowledge as to all the partners, however where one member is acting beyond his power, or is conducting a fraud on his partners, or is the person whose duty it is to give his firm notice of what he himself has done, notice on his part is not equivalent to notice by all partners. | Is knowledge to one partner with respect to any matter relating to the partnership knowledge to all partner? | 022570.docx | LEGALEASE-00160180-LEGALEASE-00160181 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10832 | Venn-Severin Mach. Co. v. John Kiss Sons Textile Mills, 2 F.R.D. 4 | 170A+631 | In answering this objection, the court holds, that the defendant will be required to make its election, but it can do so during the trial. The Federal Rules of Civil Procedure are based on the theory of a rather general form of pleading. They employ simplicity, conciseness and directness and technical forms are eschewed. The requirement of consistency is done away with and inconsistent claims are allowed. All refinements of pleadings are subordinated to one aim: the achievement of substantial justice, and courts are urgently charged to interpret pleadings in that spirit. | The Federal Rules of Civil Procedure require simplicity, conciseness and directness in pleading, and technical forms are eschewed. Fed.Rules Civ.Proc., rules 8(e), (1)(2), 8(f), 28 U.S.C.A. | "Do the Federal Rules of Civil Procedure require simplicity, conciseness and directness in pleading?" | 023844.docx | LEGALEASE-00159356-LEGALEASE-00159357 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 10833 | Cain v. Am. Nat. Bank & Tr. Co. of Chicago, 26 Ill. App. 3d 574 | 307A+561.1 | However, defenses which are factual in their nature rather than legal are not available to defendants on a motion to dismiss, but should be set forth in their answer. (Vrooman v. Hawbaker, 387 Ill. 428, 56 N.E.2d 623; Dorin v. Occidental Life Ins. Co. of California, 132 Ill.App.2d 387, 270 N.E.2d 515.) Thus, defendants could not challenge the facts as alleged by plaintiffs, but rather, their motion to dismiss admitted all facts well pleaded. This being so, plaintiffs' complaint properly alleged the expected violation of the Chicago Building Code by defendants and consequently, it was error to dismiss Count II for failure to state a claim upon which relief could be granted. | Defenses which are factual in their nature rather than legal are not available to defendants on a motion to dismiss but should be set forth in their answer. S.H.A. ch. 110, S 45. | Are defenses which are factual rather than legal available to defendants on a motion to dismiss? | Pretrial Procedure - Memo 11149 - C - KG_64211.docx | ROSS-003291898 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 10834 | Sierra Madre Dev. v. Via Entrada Townhouses Ass'n, 20 Ariz. App. 550 | 302+360 | Affirmative defenses, such as privilege, may be raised and determined on a motion to dismiss where the facts constituting the defense appear, as they do here, on the face of the complaint or counterclaim. Ross v. Ross, 96 Ariz. 249, 393 P.2d 933 (1964); Industrial Commission v. Superior Court, 5 Ariz.App. 100, 423 P.2d 375 (1967). | Affirmative defenses, such as privilege, may be raised and determined on a motion to dismiss, where facts constituting the defense appear on face of complaint or counterclaim. | When are affirmative defenses raised and determined on a motion to dismiss? | Pretrial Procedure - Memo 11150 - C - KG_64212.docx | ROSS-003312542 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 10835 | Sierra Madre Dev. v. Via Entrada Townhouses Ass'n, 20 Ariz. App. 550 | 302+360 | Affirmative defenses, such as privilege, may be raised and determined on a motion to dismiss where the facts constituting the defense appear, as they do here, on the face of the complaint or counterclaim. Ross v. Ross, 96 Ariz. 249, 393 P.2d 933 (1964); Industrial Commission v. Superior Court, 5 Ariz.App. 100, 423 P.2d 375 (1967). | Affirmative defenses, such as privilege, may be raised and determined on a motion to dismiss, where facts constituting the defense appear on face of complaint or counterclaim. | When can an affirmative defense be raised and determined on a motion to dismiss? | Pretrial Procedure - Memo 11155 - C - KG_64368.docx | ROSS-003307662 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 10836 | Dorin v. Occidental Life Ins. Co. of Cal., 132 Ill. App. 2d 387 | 302+354 | There is no affirmative showing that the amount paid in settlement was in any way related to a return of premiums and such a construction of the naked act of settlement is nor warranted. Defenses which are in their nature factual rather than legal do not constitute grounds for a motion to dismiss, but must be set forth in an answer to the plaintiff's pleading. Vrooman v. Hawbaker, 387 Ill. 428, 56 N.E.2d 623. The trial court properly denied defendant's motion to dismiss. | Defenses which are in their nature factual rather than legal do not constitute grounds for a motion to dismiss, but must be set forth in an answer to plaintiff's pleading. | What defenses do not constitute grounds for a motion to dismiss? | 039584.docx | LEGALEASE-00159489-LEGALEASE-00159490 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 10837 | Price v. Firestone Tire & Rubber Co., 700 S.W.2d 730 | 307A+699 | An application for reinstatement is addressed to the trial court's discretion, and the trial court's ruling will not be disturbed absent abuse of discretion. Wyatt v. Texas Oklahoma Express, Inc., 693 S.W.2d 731, 732 (Tex.App."Dallas 1985, no writ); Wm. T. Jarvis Co., Inc. v. Wes-Tex Grain Co., 548 S.W.2d 775, 778 (Tex.Civ.App."Waco 1977, writ ref'd n.r.e.). | Application for reinstatement is addressed to trial court's discretion, and trial court's ruling will not be disturbed absent abuse of discretion. | "Is an application for reinstatement addressed to a trial court's discretion, and trial court's ruling will not be disturbed absent abuse of discretion?" | Pretrial Procedure - Memo 11196 - C - KS_64404.docx | ROSS-003280715 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 10838 | Brazinsky v. Brazinsky, 610 N.W.2d 707 | 307A+693.1 | A dismissal with prejudice is a final judgment that ends the case and leaves nothing further to be resolved between the parties. Foothills Meadow v. Myers, 832 P.2d 1097, 1098 (Colo.Ct.App.1992). After a judgment of dismissal with prejudice is entered, the district court has no jurisdiction over the subject matter of the case and is powerless to act further in the matter. Elwess v. Elwess, 73 N.M. 400, 389 P.2d 7, 9 (1964). | A dismissal with prejudice is a final judgment that ends the case and leaves nothing further to be resolved between the parties. | Is a dismissal with prejudice a final judgment that ends the case and leaves nothing further to be resolved between the parties? | 039856.docx | LEGALEASE-00159607-LEGALEASE-00159608 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 10839 | Carinha v. Carinha, 178 Misc. 2d 635 | 307A+693.1 | Once a motion is made pursuant to that rule, subdivision of CPLR 3211 extends the time to reply to the cause of action until ten days after service of entry of the order hereon, if plaintiff is not otherwise in default. The fact that the main action has been dismissed, either on the merits or voluntarily, does not prevent an adjudication on the counterclaim. | Fact that main action has been dismissed, either on merits or voluntarily, does not prevent adjudication on counterclaim. McKinney's CPLR 3018(a). | "Does a fact that a main action has been dismissed, either on merits or voluntarily, not prevent adjudication on a counterclaim?" | Pretrial Procedure - Memo 11365 - C - SHB_64432.docx | ROSS-003295354-ROSS-003295355 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 10840 | Young v. Jones, 140 Ga. App. 66 | 307A+693.1 | Nevertheless, it seems clear that the rule-markers never intended this restrictive construction. Moreover . . . the courts generally have proceeded to render judgment on any counterclaims or cross-claims remaining after the original claim is disposed of on nonjurisdictional grounds." 6 Wright & Miller, Federal Practice and Procedure: Civil, 195, s 1437. Thus, a counterclaim is not subject to dismissal simply because the main action has been dismissed. Weems v. Weems, 225 Ga. 19, 21, 165 S.E.2d 733. And where a counterclaim can be adjudicated without regard to the main claim, it should be judicially considered even though the main claim has been dismissed. Employers Liab. Assurance Corp. v. Berryman, 123 Ga.App. 71, 73, 179 S.E.2d 646. Accordingly, the trial court erred in dismissing the defendant's counterclaim on the ground that summary judgment had been rendered on behalf of the individual defendant in the main action. | A counterclaim is not subject to dismissal simply because main action has been dismissed; where counterclaim can be adjudicated without regard to main claim, it should be judicially considered even though main claim has been dismissed. Code, S 81A-113(i). | Is a counterclaim not subject to dismissal simply because a main action has been dismissed? | Pretrial Procedure - Memo 11367 - C - UG_64434.docx | ROSS-003283790-ROSS-003283791 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 10841 | Armstrong v. Armstrong, 117 R.I. 83 | 307A+693.1 | The plaintiff does not dispute the principles that summary judgment is the proper vehicle for disposing of an action barred by res judicata, that a judgment may be given res judicata effect even though that judgment is the subject of an appeal, that a judgment, if final and rendered on the merits in a prior proceeding, is conclusive not only on the issues raised and determined, but also on every issue which might properly have been litigated and decided therein. A judgment dismissing an action because of lack of subject matter jurisdiction is not considered a judgment upon the merits, and that the doctrine of res judicata is not rendered inapplicable because the action wherein the claim is invoked was commenced before the rendition of the judgment or before the commencement of the action in which the judgment was rendered. | Judgment dismissing action because of lack of subject matter jurisdiction is not considered judgment upon the merits. | Is judgment dismissing an action because of lack of subject matter jurisdiction not considered judgment upon the merits? | 039875.docx | LEGALEASE-00159681-LEGALEASE-00159682 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10842 | Se. Integrated Med., P.L. v. N. Florida Women's Physicians, P.A., 50 So. 3d 21 | 307A+561.1 | However, because privilege to interfere with a contract is a matter to be raised as an affirmative defense, it was improper for the trial court to consider North Florida's motives in recruiting Dr. Carroccio on a motion to dismiss. See Londono v. Turkey Creek, Inc., 609 So.2d 14, 19 n. 4 (Fla.1992) (noting that the consideration of defenses is premature on a motion to dismiss); Abele v. Sawyer, 750 So.2d 70, 75 (Fla. 4th DCA 1999) ("Justification or privilege to interfere with a contract is a defense to a tortious interference action."); Melbourne Med. Lab., Inc. v. Lab Corp. of America, 722 So.2d 962, 964 (Fla. 5th DCA 1998) ("[C]ompetition or economic privilege is an affirmative defense to a tortious interference claim."). And while an affirmative defense that appears on the face of the complaint may be considered by the trial court in a motion to dismiss, see Abele, 750 So.2d at 75; Linafelt v. Bev, Inc., 662 So.2d 986, 990 (Fla. 1st DCA 1995), that is not the case here. | An affirmative defense that appears on the face of the complaint may be considered by the trial court in a motion to dismiss. | Can an affirmative defense that appears on the face of the complaint be considered by court in a motion to dismiss? | 039889.docx | LEGALEASE-00159756-LEGALEASE-00159757 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 10843 | Solak v. Sarowitz, 153 A.3d 729 | 307A+562 | Defendants argue that the Complaint should be dismissed because plaintiff has come to Court with unclean hands on the theory that his "only possible motivation for this lawsuit" is to facilitate a future violation of Paylocity's exclusive-forum bylaw. It is inappropriate to dismiss a complaint based on an affirmative defense unless "plaintiff can prove no set of facts to avoid it:" Because the Court generally is limited to the facts appearing on the face of the pleadings in ruling on a motion to dismiss, affirmative defenses, such as laches, are not ordinarily well-suited for disposition on such a motion. Thus, unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate. | Because the Court generally is limited to the facts appearing on the face of the pleadings in ruling on a motion to dismiss, affirmative defenses, such as laches, are not ordinarily well-suited for disposition on such a motion. | Why are affirmative defenses not well suited for treatment when deciding a motion to dismiss? | 039916.docx | LEGALEASE-00159559-LEGALEASE-00159560 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 10844 | Vicencio v. Ramirez, 211 Mich. App. 501 | 307A+697 | This notice not only states, but emphasizes, that it is not a notice of trial. In contrast, the section governing divorce actions states explicitly that it is a notice of trial. Moreover, the notice states that its recipients should bring a scheduling calendar to set the date of trial. Under all the circumstances, this notice was misleading and was not reasonably calculated to apprise plaintiff of the pendency of the action. Trussell, supra, at p. 324, 382 N.W.2d 778. Accordingly, it did not satisfy the due process requirement to provide notice of the date of trial. Id. Where a party has not received adequate notice before dismissal of a lawsuit, reinstatement of the case is a matter of right. Belt v. Davis & Randall, Inc., 62 Mich.App. 315, 319, 233 N.W.2d 268 (1975). | Where party has not received adequate notice for dismissal of lawsuit, reinstatement of case is matter of right. | "Where a party has not received adequate notice for dismissal of the lawsuit, is the reinstatement of a case a matter of right?" | Pretrial Procedure - Memo 11496 - C - DA_64690.docx | ROSS-003291980-ROSS-003291981 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 10845 | Anthony v. City of Omaha, 283 Neb. 868 | 238+1 | The most fundamental distinction between a sales tax and an occupation tax is the "legal incidence" of the tax. The legal incidence test requires a determination of who the law declares has the ultimate burden of the tax. The legal incidence of a sales tax falls upon the purchaser, because it is a tax upon the privilege of buying tangible personal property. The legal incidence of an occupation tax falls upon the retailer, because it is a tax upon the act or privilege of engaging in business activities. While sales taxes and occupation taxes often have "a similar appearance and effect," they are "substantively distinct," because of the distinct identities of the taxpayers upon whom the tax is levied. | The "legal incidence test," as applied to distinguish between occupation taxes and sales taxes, requires a determination of who the law declares has the ultimate burden of the tax: the legal incidence of a sales tax falls upon the purchaser, because it is a tax upon the privilege of buying tangible personal property, while the legal incidence of an occupation tax falls upon the retailer, because it is a tax upon the act or privilege of engaging in business activities. | "Does the application of ""legal incidence test"" requires a determination of who the law declares has the ultimate burden of the tax?" | 046179.docx | LEGALEASE-00160134-LEGALEASE-00160135 | Order, SA, Sub | 0.33 | 1 | 0 | 1 | 1 | 1 |
| 10846 | Am. Beverage Ass'n v. City of Chicago, 404 Ill. App. 3d 682 | 238+1 | A tax on tangible personal property is not considered an occupation tax when the ordinance enacting it declares its legal incidence falls on the purchaser, rather than the seller. Archer Daniels Midland Co. v. City of Chicago, 294 Ill.App.3d 186, 191, 228 Ill.Dec. 520, 689 N.E.2d 392 (1997). In the present case, the five-cent tax on each bottle of water purchased at retail is a tax on the sale of tangible personal property. The ordinance enacting it expressly declares "[t]his tax shall be paid by the purchaser" (Chicago Municipal Code " 3"43"030 (2008)) and "[t]he ultimate incidence and liability for payment of the tax is to be borne by the purchaser" (Chicago Municipal Code " 3"43"040 (2008)). As such, the tax on bottled water is a sales tax and not an occupation tax. | A tax on tangible personal property is not considered an "occupation tax" when the ordinance enacting it declares its legal incidence falls on the purchaser, rather than the seller. S.H.A. Const. Art. 7, S 6(e)(2). | "Is a tax on tangible personal property an ""occupation tax""?" | 046200.docx | LEGALEASE-00159768-LEGALEASE-00159769 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 10847 | Music City Ctr. Mgmt. v. Dir. of Revenue, 295 S.W.3d 465 | 371+3646 | The "sale for resale" exemption avoids multiple taxation of the same property as it passes through the chain of commerce. Sipco, Inc. v. Dir. of Revenue, 875 S.W.2d 539, 541 (Mo. banc 1994). The resale exemption complies with "[t]he purpose of Missouri's sales tax system[, which] is to tax property once and not at various stages in the stream of commerce, regardless of who is receiving the benefit of the property."Six Flags Theme Parks, Inc. v. Dir. of Revenue, 102 S.W.3d 526, 530 (Mo. banc 2003). Just as the resale exemption exists to secure that the "tax system [ ] tax[es] property [only] once and not at various stages in the stream of commerce," ICC Mgmt., Inc., 290 S.W.3d at 702" (quoting Westwood Country Club, 6 S.W.3d at 888) (emphasis added), it is equally important that the tax system seeks to tax property no less than once. Consistent with this purpose, "[t]he resale exemption applies only where the item purchased is later subject to a taxable sale at retail." ICC Mgmt., 290 S.W.3d at 700. | The resale exemption from sales tax complies with the purpose of Missouri's sales tax system, which is to tax property once and not at various stages in the stream of commerce, regardless of who is receiving the benefit of the property. V.A.M.S. SS 144.010(1)(10), 144.020(1)(2). | What is the purpose of state's sales tax system? | 046243.docx | LEGALEASE-00159860-LEGALEASE-00159861 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10848 | Globe Life & Acc. Ins. Co. v. Oklahoma Tax Comm'n, 913 P.2d 1322 | 371+3602 | In the same year (1937) a use tax also was imposed with the intent that tangible personal property purchased outside Oklahoma should be subject to taxation if (1) this property was used or consumed here and (2) it would have been subject to a sales tax if it had been purchased in this state. While the Sales Tax and Use Tax Codes are complementary and supplementary to one another, they are neither identical nor coterminous. The Sales Tax Code provides for a sales tax on tangible and intangible personal property and certain services identified in the statute. The Use Tax Code imposes a tax solely on tangible personal property purchased outside Oklahoma and brought into the state. Neither intangible personal property nor services fall within the current scope of the Use Tax Code. | Sales tax code provides for sales tax on tangible and intangible personal property and certain services identified in statute. 68 Okl.St.Ann. S 1350 et seq. | Does the sales tax code provide for sales tax on tangible and intangible personal property? | 046273.docx | LEGALEASE-00159911-LEGALEASE-00159912 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 10849 | Walgreen Co. v. Charnes, 819 P.2d 1039 | 371+3602 | The use and sales taxes are part of a comprehensive legislative scheme to equally tax the purchase of goods.Changing the appellate procedures for one and not the other would therefore create an absurd incongruity. Colorado consumers challenging use taxes assessed on goods purchased out-of-state would be required to comply with appellate procedures different than those imposed on goods purchased in-state. See, e.g., Matthews, 193 Colo. at 46"47, 562 P.2d at 417"18 ("[T]he state cannot structure the tax system to discriminate against out-of-state purchases.") (citing Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937)). | Use and sales taxes are part of a comprehensive legislative scheme to equally tax the purchase of goods. | Are use and sales taxes part of a comprehensive legislative scheme to equally tax the purchase of goods? | 046286.docx | LEGALEASE-00160152-LEGALEASE-00160153 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10850 | Holmes v. State, 291 Ga. App. 196 | 3.77E+35 | In addition to the communication sent directly by Holmes, Holmes also admitted to indirectly sending letters to his wife while he was incarcerated in the Chatham County Detention Center. The letters were addressed to his three-year-old daughter and sent from an inmate unknown to the wife but who was housed with Holmes. Holmes further admitted receiving notice prohibiting contact with his wife or her family and testified that he knew it would be a violation of the court order to have any contact with his wife. OCGA " 16"5"90(a)(1) provides that a person commits the offense of stalking when he follows, places under surveillance, or contacts another person without the consent of the other person for the purpose of harassing and intimidating the other person. A person commits the offense of aggravated stalking when he does the above-described behavior in violation of a protective order or restraining order. Overt threats of bodily harm are not required. | Overt threats of bodily harm are not required for a person to commit the offense of aggravated stalking. West's Ga.Code Ann. SS 16-5-90(a)(1), 16-5-91(a). | Are overt threats of bodily harm required for a person to commit the offense of aggravated stalking? | 046904.docx | LEGALEASE-00160286-LEGALEASE-00160287 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 10851 | Stewart v. Citizens & S. Nat. Bank, 138 Ga. App. 209 | 8.30E+27 | While a check is merely an order upon a bank to pay from the drawer's account, it may be revoked at any time by the drawer before it has been certified, accepted, or paid by the bank, and may be revoked by operation of law upon the death of the drawer. See Aiken Bag Corporation v. McLeod,89 Ga.App. 737, 81 S.E.2d 215; Bank of Hamilton v. Williams, 146 Ga. 96, 90 S.E. 718; see also Code Ann. s 109A-4-405; Lambeth v. Lewis, 114 Ga.App. 191, 150 S.E.2d 462. | Check is merely an order on bank to pay from drawer's account, and may be revoked at any time by the drawer before it has been certified, accepted, or paid by the bank, and may be revoked by operation of the law on the death of the drawer. Code, S 109A-4-405. | Can a check be revoked before it has been paid by the bank? | Bills and Notes -Memo 62-DB_65108.docx | ROSS-003293214-ROSS-003293215 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 10852 | White v. Gen. Motors Corp., 908 F.2d 675 | 170A+2829 | Ability to pay. The offender's ability to pay must also be considered, not because it affects the egregiousness of the violation, but because the purpose of monetary sanctions is to deter attorney and litigant misconduct. Thomas, 836 F.2d at 881; Doering, 857 F.2d at 196. Because of their deterrent purpose, Rule 11 sanctions are analogous to punitive damages. It is hornbook law that the financial condition of the offender is an appropriate consideration in the determination of punitive damages. Annotation, Excessiveness or Inadequacy of Punitive Damages Awarded in Personal Injury or Death Cases, 35 A.L.R. 4th 441, 459"61 (1985) (citing cases); cf. Cotner v. Hopkins, 795 F.2d 900, 903 (10th Cir.1986) (considering financial status of offender in evaluating effect of fine imposed under Rule 11). Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status. | Parties claiming inability to pay Rule 11 sanctions have burden to come forward with evidence of financial status. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A. | Is it the burden of the parties being sanctioned to come forward with evidence of their financial status in order to demonstrate an inability to pay? | 012549.docx | LEGALEASE-00161425-LEGALEASE-00161426 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 10853 | Talley Indus. Inc. v. C.I.R., 116 F.3d 382 | 135H+25 | Under the Double Jeopardy Clause, civil penalties generally are considered "to do no more than make the Government whole...." United States v. Halper, 490 U.S. 435, 449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989); see also Hess, 317 U.S. at 551-52, 63 S.Ct. at 388 (double damages were "chosen to make sure that the government would be made completely whole"). A civil penalty may constitute a "second punishment" if the penalty "bears no rational relation to the goal of compensating the Government for its loss...." Halper, 490 U.S. at 449, 109 S.Ct. at 1892. | Under double jeopardy clause, civil penalties generally are considered to do no more than make government whole, and civil penalty may constitute "second punishment" if penalty bears no rational relation to goal of compensating the government for its loss. U.S.C.A. Const.Amend. 5. | "Under double jeopardy clause, are civil penalties generally considered to do no more than make government whole?" | 015215.docx | LEGALEASE-00160602-LEGALEASE-00160603 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 10854 | People ex rel. Hoffmaster v. La Duc, 329 Mich. 716 | 200+167 | 12 Under the record before us, we hold that plaintiff would be the owner of the fee title to the land within the boundaries of this highway, even though it were subject to the right of the public to maintain and use the highway as such. The State obtained its title by a quitclaim deed from the Federal Government. The deed recites that the grantor "does by these presents, release, remise and forever quitclaim unto said party of the second part, its successors or assigns (the property through which this highway passes), subject to all existing rights of way for public highway", and certain other specified easements not material in this suit. There is nothing contained in the record before us that is at all material to our decision herein which limits or restricts the fee title of the state to the property involved, except as just above noted. "By the Common law, the fee in the soil remains in the original owner, where a public road is established over it; but the use of the road is in the public. The owner parts with this use only". Barclay v. Howell's Lessee, 6 Pet. 498, 31 U.S. 498, 8 L.Ed. 477. | By the common law, fee in soil remains in original owner where public road is established over it, but the use of the road is in the public, and the owner parts with the use only. | Does the fee in the soil remain with the original owner when a public road is established over it? | 018819.docx | LEGALEASE-00161647-LEGALEASE-00161648 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10855 | McGrath v. Stevenson, 194 Wash. 160 | 200+77(2) | Each of the terms "reside," "residing," "resident," and "residence" is elastic. To interpret the sense in which such a term is used, we should look to the object or purpose of the statute in which the term is employed. A man can have only one place of residence for voting purposes and certain other purposes, but there is no reason why, within the meaning of the vacation statute, Rem.Rev.Stat. " 6503, he may not have more than one place of residence. | A man may have more than one place of "residence," within meaning of statute authorizing vacation of county road on petition of freeholders residing in the vicinity, though he can have only one place of residence for voting and other purposes. Rem.Rev.Stat. S 6503. | Can a person have more than one place of residence for the purpose of a signing a petition for a road vacation? | 018852.docx | LEGALEASE-00161747-LEGALEASE-00161748 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 10856 | In re Pub. Roads in E. Fallowfield&NewlinTps., 183 Pa. Super. 426 | 200+77(2) | On the contrary, it clearly appears to have been intended that the jurisdiction of the court should from time to time be evoked by a petition for a single road." Since proceedings for the vacation of the roads in question shall be by view in the same manner as provided for the laying out of public roads and highways, it follows that the principle enunciated in the Sadsbury case is applicable here. The rule, however, is not inflexible.It has been held proper to join in one petition the request for vacation of a road and the request for its relocation over a more satisfactory route (In re Ottercreek Township Road, 104 Pa. 261, 263, 264); to join in one petition the request for vacation of two roads which are physically connected and in essence but one road (In re Paradise Twp. Road, 29 Pa. 20, 22); to petition for the laying out of a road and the vacation of a road which will thereby be made useless (In re Bristol Township Road, 49 Pa.Super. 549, 552, 553). | It is proper to join in one petition the request for vacation of a public road, and the request for its relocation over a more satisfactory route, to join in one petition, the request for vacation of two roads which are physically connected and in essence but one road, and to petition for the laying out of a road and the vacation of a road which will thereby be made useless. | Is it proper to join in one petition the request for vacation of a road and the request for its relocation over a more satisfactory route? | Highways - Memo 472 - RK_66372.docx | ROSS-003281639-ROSS-003281640 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 10857 | Wayne v. Staples, 135 Cal. App. 4th 466 | 217+1001 | Insurance Code section 22 defines insurance as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Section 22 has been interpreted as requiring two elements: shifting one party's risk of loss to another party and distributing that risk among similarly situated persons. (AFG, supra, 114 Cal.App.4th at p. 851, 7 Cal.Rptr.3d 912; Truta, supra, 193 Cal.App.3d at p. 812, 238 Cal.Rptr. 806.) The mere fact a contract involves shifting and distributing risk of loss, however, " "does not necessarily mean the agreement constitutes an insurance contract for purposes of statutory regulation." " (Title Ins. Co. v. State Bd. of Equalization (1992) 4 Cal.4th 715, 726, 14 Cal.Rptr.2d 822, 842 P.2d 121; Sweatman v. Department of Veterans Affairs (2001) 25 Cal.4th 62, 74, 104 Cal.Rptr.2d 602, 18 P.3d 29.) | Statute defining insurance requires two elements: shifting one party's risk of loss to another party and distributing that risk among similarly situated persons. West's Ann.Cal.Ins.Code S 22. | What are the two elements that are required by statute defining insurance? | Insurance - Memo 85 - SNJ_65575.docx | ROSS-003294094-ROSS-003294095 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 10858 | Fellhauer v. Alhorn, 361 Ill. App. 3d 792 | 217+1001 | As one New Jersey appellate court found:"[S]o-called self-insurance is not insurance at all. It is the antithesis of insurance. The essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer. The essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract." American Nurses Ass'n v. Passaic General Hospital, 192 N.J.Super. 486, 491, 471 A.2d 66, 69 (1984). | So-called "self-insurance" is not insurance at all, but rather is the antithesis of insurance; the essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer, while the essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract. | What is the essence of self-insurance? | 019632.docx | LEGALEASE-00161851-LEGALEASE-00161852 | SA, Sub | 0.26 | 0 | 0 | 1 | 1 | |
| 10859 | Brown Leasing v. Stone, 284 Ill. App. 3d 1035 | 307A+690 | Even in cases where an original complaint is arguably deficient and subject to being stricken, error occurs if a trial court abuses its discretion in denying the plaintiff leave to amend. Bowe v. Abbott Laboratories, Inc., 240 Ill.App.3d 382, 181 Ill.Dec. 150, 608 N.E.2d 223 (1992). If a plaintiff can state a cause of action by amending its complaint, a dismissal with prejudice on the pleadings should not be granted. Bowe, 240 Ill.App.3d at 389, 181 Ill.Dec. 150, 608 N.E.2d 223 | If plaintiff can state cause of action by amending its complaint, dismissal with prejudice on the pleadings should not be granted. | "Should dismissal with prejudice on the pleadings be granted, if a plaintiff can state a cause of action by amending its complaint?" | 023875.docx | LEGALEASE-00160761-LEGALEASE-00160762 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 10860 | Phillips v. Bradshaw, 859 S.W.2d 232 | 30+193(9) | A default judgment should not be entered for a party if his petition fails to state a cause of action. Jones v. Williams, 357 Mo. 531, 209 S.W.2d 907, 910 (1948). A pleading which states no cause of action confers no subject matter jurisdiction on a court and is subject to dismissal. Sisco v. James, 820 S.W.2d 348, 351[4] (Mo.App.S.D.1991); Wright v. Mullen, 659 S.W.2d 261, 263[4] (Mo.App.W.D.1983). The only power a court without subject matter jurisdiction possesses is the power to dismiss the action. Rule 55.27(g)(3); Sisco, 820 S.W.2d at 351[4]; Wells v. Noldon, 679 S.W.2d 889, 891[7] (Mo.App.E.D.1984); Gaslight Real Estate Corp. v. Labor and Industrial Relations Commission, 604 S.W.2d 818, 820[4] (Mo.App.W.D.1980). Inasmuch as failure to state a cause of action is jurisdictional, the issue may properly be raised anytime during the proceedings, even for the first time on appeal from a default judgment. Harding v. State Farm Mutual Automobile Ins. Co., 448 S.W.2d 5, 7"8[4] (Mo. banc 1969); Eilers v. Kodner Development Corp., 513 S.W.2d 663, 665[1] (Mo.App.1974). Defendant's first point thus requires us to determine whether Plaintiff's petition pled a cause of action. | Failure to state cause of action is jurisdictional, and may be raised at any time during proceedings, even for first time on appeal from default judgment. | Can failure to state a cause of action be raised at any time during the proceedings? | 023877.docx | LEGALEASE-00161154-LEGALEASE-00161155 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 10861 | Boyles v. Sullivan, 230 Pa. Super. 453 | 307A+699 | The criteria for opening a judgment of non-pros are: 1) the petition must be timely filed; 2) the reason for the default reasonably explained or excused; and, 3) the facts constituting grounds for the cause of action be alleged. Goldstein v. Graduate Hospital of the University of Pennsylvania, 441 Pa. 179, 272 A.2d 472 (1971); Thorn v. Clearfield Borough, 420 Pa. 584, 218 A.2d 298 (1966). In the instant case, neither was the petition timely filed nor was the default reasonably explained or excused. | Criteria for opening a judgment of non pros are: (1) the petition must be timely filed, (2) the reason for the default reasonably explained or excused and (3) the facts constituting grounds for the cause of action be alleged. | What are the criteria for opening a judgment of non-pros? | Pretrial Procedure - Memo 11213 - C - KG.docx | LEGALEASE-00050918-LEGALEASE-00050919 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 10862 | Sturmthal v. All Transp., 22 A.D.2d 863 | 307A+699 | Order, entered on July 10, 1964, granting motion to open default unanimously reversed on the facts and the law and in the exercise of discretion, with $30 costs and disbursements to appellant, and motion denied. Plaintiff defaulted on a motion to dismiss for lack of prosecution and a judgment of dismissal resulted. It is elementary that a proper affidavit of merits is an essential to open such a default. The affidavit submitted completely lacked evidentiary matter. In view of the difficulty plaintiff has had in supplying particulars of his claim, we cannot deem the failure to supply a proper affidavit of merits inadvertent. | A proper affidavit of merits is an essential to open a default on a motion to dismiss for lack of prosecution. | Is a proper affidavit of merits an essential to open a default on a motion to dismiss for lack of prosecution? | Pretrial Procedure - Memo 11226 - C - PC_65258.docx | ROSS-003280766-ROSS-003280767 | Order, SA, Sub | 0.83 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10863 | Adams Eng'g Co. v. Constr. Prod. Corp., 156 So. 2d 497 | 307A+699 | Upon review of the numerous cases arising under this statute, we conclude that there existed heretofore a material conflict in the decision defining the nature of an order of dismissal or reinstatement under this provision, and stating the principles controlling review of such orders. While the decision here, applying the ordinary standard or appellate review, has some support in the cases, it conflicts with what we believe to be the better principle embodied in the cases holding that the ruling of a trial court in these premises must be regarded as discretionary. The statutory standard of "good cause shown" requires the exercise of a judicial discretion based upon evidence rather than arbitrary in character. We now hold that such an order is subject to attack only upon the ground that it constitutes an abuse of discretion, and this heavy burden must be borne by the losing party. That charge cannot, in our opinion, be sustained in the case at bar | Determination of whether good cause has been shown for reinstatement of a cause of action that has been dismissed for lack of prosecution requires the exercise of a judicial discretion based upon evidence and not judicial discretion of an arbitrary character. F.S.A. S 45.19. | Does the statutory standard of good cause for reinstatement require the exercise of a sound judicial discretion which is not arbitrary? | 039682.docx | LEGALEASE-00160622-LEGALEASE-00160623 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 10864 | Maierhofer v. Gerhardt, 29 Ill. App. 2d 45 | 307A+699 | The objection to the sufficiency of the petition was waived by the defendant as it was not raised in nor passed on by the trial court (Ill.Rev.Stat., 1959, Chapt. 110, Sec. 42(3) and is thus not before us for review. While the petition must be filed in the same proceedings in which the order, decree or judgment attacked was entered, "it is not a continuation" of the original suit. The proceedings is, in legal effect, the institution of a new suit with the petition standing in lieu of a complaint. By foregoing a motion attacking the sufficiency of the petition and answering on the merits the defendant "waived any question as to its sufficiency, and it will be treated as properly stating a cause of action." Smyth v. Fargo, 307 Ill. 300, 138 N.E. 610, 612. He cannot for the first time in this Court question the sufficiency of the petition. Bremer v. Bremer, 4 Ill.2d 190, 122 N.E.2d 794; Fisher v. Illinois Terminal R. Co., 350 Ill.App. 555, 113 N.E.2d 344. | While petition to vacate order of dismissal must be filed in proceeding in which order was entered, it is not continuation of original suit, but is institution of new suit with petition standing in lieu of complaint. S.H.A. ch. 110, S 50(6). | "While a petition to vacate an order of dismissal must be filed in a proceeding in which an order was entered, is it not a continuation of an original suit?" | Pretrial Procedure - Memo 11245 - C - DA_65267.docx | ROSS-003293458-ROSS-003293459 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 10865 | Jepson v. New, 164 Ariz. 265 | 307A+583 | Also, 60 (c) relief requires satisfaction of certain criteria that the statute does not. The provisions of Rule 60 (c) (1) through (5) specify that the request for relief may be based on mistake, inadvertence, surprise or excusable neglect; newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial; fraud, misrepresentation or other misconduct of an adverse party; a void judgment; and, the fact that the judgment has been satisfied, released or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or when it is no longer equitable to apply the judgment prospectively. Rule 60 (c) (6) is a catchall, providing relief for "any other reason justifying relief from the operation of the judgment." As we have stated, in order to obtain relief under Rule 60 (c) (6), a party must show extraordinary circumstances of hardship or injustice. Davis v. Davis, supra. Where Rule 60 (c) (6) relief is sought from a Rule V dismissal for lack of prosecution, the litigant must show that the cause was prosecuted vigorously and diligently, that reasonable steps were taken to inform the court of the status of the case, and that substantial prejudice will result unless relief is granted. Gorman, supra, 152 Ariz. at 183, 731 P.2d at 78. Where relief is sought under any of the provisions of Rule 60 (c), the litigant must also establish that relief was sought promptly and that a meritorious claim or defense existed. Id. | In exercising its discretion to grant continuance of case on inactive calendar, trial court considers the same conditions that permit relief from judgment of dismissal, provided that good cause required by rule governing continuance on inactive calendar is shown; thus, litigant must first establish any bases under rule for relief and where basis is any other reason must show extraordinary circumstances of hardship or injustice justifying relief. 16 A.R.S. Rules Civ.Proc., Rule 60(c); 17B A.R.S. Super.Ct.Uniform Prac.Rules, Rule 5(e). | "To obtain relief from judgment for ""any other reason justifying relief from the operation of the judgment,"" should a plaintiff show extraordinary circumstances of hardship?" | Pretrial Procedure - Memo 11515 - C - NE_65331.docx | ROSS-003296502-ROSS-003296503 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 10866 | Life Gen. Sec. Ins. Co. v. Horal, 667 So. 2d 967 | 302+233.1 | We acknowledge that the court's decision to permit or refuse amendment to pleadings should not be disturbed on appeal in the absence of an abuse of discretion. Horacio O. Ferrea N. Am. Div., Inc. v. Moroso Performance Prods., Inc., 553 So.2d 336 (Fla. 4th DCA 1989). However, leave to amend should not be denied unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile. Spradley v. Stick, 622 So.2d 610 (Fla. 1st DCA 1993). In this case, we find that amendment should have been permitted, and therefore reverse. | Leave to amend pleading should not be denied unless privilege has been abused, there is prejudice to opposing party, or amendment would be futile. West's F.S.A. RCP Rule 1.190(a). | "Can leave to amend be denied where there is prejudice to the opposing party, or an amendment would be futile?" | Pretrial Procedure - Memo 11612 - C - TJ_65349.docx | ROSS-003310218 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 10867 | Kouba v. Febco, 543 N.W.2d 245 | 307A+695 | The manner in which the trial court dismissed Kouba's complaint, dismissal without prejudice, is inconsistent with the ground the court stated for dismissing the complaint, failure to state a claim upon which relief can be granted (12)(b)(5)). A dismissal without prejudice neither precludes a subsequent action nor addresses the merits of an action. E.g., Community Homes of Bismarck v. Clooten, 508 N.W.2d 364, 365 (N.D.1993); Runck v. Brakke, 421 N.W.2d 487, 488 (N.D.1988). Conversely, a 12(b)(5) dismissal bars a subsequent action and generally involves the merits of an action. See Smith v. City of Grand Forks, 478 N.W.2d 370, 372 (N.D.1991) (quoting Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2nd Cir.1963)); 2A J. Moore, Moore's Federal Practice 12.07[2.-5] (2d ed.1995); but see McLean v. Kirby Co., 490 N.W.2d 229, 233 (N.D.1992). "[A] dismissal for failure to state a claim upon which relief can be granted is with prejudice." Arrowsmith, 320 F.2d at 221. | Dismissal for failure to state claim bars subsequent action and generally involves merits of action. Rules Civ.Proc., Rule 12(b)(5). | Does a dismissal for failure to state claim bar a subsequent action and generally involves merits of action? | 040297.docx | LEGALEASE-00160927-LEGALEASE-00160928 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 10868 | Mehlman v. Gold, 183 A.D.2d 634 | 307A+695 | Plaintiff was given leave to move to replead a cause of action under Judiciary Law " 487 pursuant to CPLR 3211(e). Leave to replead should not be granted unless a party has good ground to support the cause of action. | Leave to replead should not be granted unless party has good grounds to support the cause of action. McKinney's CPLR 3211(e). | Should leave to replead not be granted unless a party has good grounds to support the cause of action? | 040328.docx | LEGALEASE-00161086-LEGALEASE-00161087 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10869 | Wheeler v. Eftink, 507 S.W.3d 598 | 307A+583 | While exercising sound judicial discretion, trial courts have an inherent power to dismiss a case for failure to prosecute with due diligence. Shirrell v. Missouri Edison Co., 535 S.W.2d 446, 448 (Mo. banc 1976). We acknowledge the trial court is in a superior position to determine who caused the delay and if such delay was prejudicial to the defendant. State ex rel. Missouri Highway & Transp. Comm'n v. Moulder, 726 S.W.2d 812, 813 (Mo. App. S.D. 1987) (explaining that the trial court has "intimate knowledge of all aspects of the case[.]"). Accordingly, we give great deference to the trial court, and its dismissal will not be disturbed unless we find an abuse of discretion. Shirrell, 535 S.W.2d at 448. We presume the trial court's ruling is correct, and the appellant bears the burden of showing the court abused its discretion. Id. at 449 | While exercising sound judicial discretion, trial courts have an inherent power to dismiss a case for failure to prosecute with due diligence. | Is the ultimate determination regarding a motion to dismiss for lack of diligence within the sound discretion of the trial court? | 040380.docx | LEGALEASE-00160547-LEGALEASE-00160548 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 10870 | Oversole v. Manci, 216 P.3d 621 | 307A+583 | The dismissal of an action for failure to prosecute lies within the sound discretion of the trial court. Cullen v. Phillips, 30 P.3d 828, 834 (Colo.App.2001). That discretion, however, is not without bounds: when evaluating a motion to dismiss for failure to prosecute, "a trial court must bear in mind that courts exist primarily to afford a forum to settle litigable matters between disputing parties." Cornelius v. River Ridge Ranch Landowners Assn, 202 P.3d 564, 570 (Colo.2009) (quoting Lake Meredith Reservoir Co. v. Amity Mut. Irrigation Co., 698 P.2d 1340, 1344 (Colo.1985)). "Dismissal with prejudice is a drastic sanction to be applied only in extreme situations." Nelson v. Blacker, 701 P.2d 135, 137 (Colo.App.1985). | The dismissal of an action for failure to prosecute lies within the sound discretion of the trial court. | Does the dismissal of an action for failure to prosecute lie within the sound discretion of the trial court? | Pretrial Procedure - Memo 11721 - C - NE_65438.docx | ROSS-003293793-ROSS-003293794 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10871 | Jimenez v. Walgreens Payless, 106 N.M. 256 | 307A+583 | We thus conclude that the court of appeals was in error to hold in its memorandum opinion that, "[t]he trial court has inherent power to dismiss a cause for failure to prosecute independent of any statute or rule." To the extent that such a proposition is based on the ruling in Pettine v. Rogers, it is at odds with Reynolds, and thus invalidated by our holding in that case. | Trial court does not possess inherent power to dismiss for failure to prosecute, independent of any statute or rule. SCRA 1986, Rule 1-041, subd. E. | "Does the court possess inherent power to dismiss for failure to prosecute, independent of any statute or rule?" | 040531.docx | LEGALEASE-00161567-LEGALEASE-00161568 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 10872 | Stone v. Bd. of Review of Pike Cty., 354 Ill. 286 | 371+2003 | It is a general rule of law, adopted in this and most of the states, that, as expressed by Cooley in his work on Taxation (2d Ed. p. 15), "the obligation of the citizen to pay taxes is clearly a statutory creation, and taxes can be levied, assessed and collected only in the modes pointed out by express statutes." This quotation from Cooley was adopted by this court as a correct statement of the law in Illinois, in People v. Sears, supra. | Citizen's obligation to pay taxes is clearly statutory creation, and taxes can be levied, assessed, and collected only in modes pointed out by express statutes. | Is the obligation of the citizen to pay taxes a statutory creation? | 046316.docx | LEGALEASE-00160789-LEGALEASE-00160790 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 10873 | Anderson v. Dep't of Labor & Indus., 173 Wash. 483 | 413+105 | It will be observed that in each of those sections mill or mills are described or defined as a place where "machinery is used."Whether an occupation in law is extrahazardous depends upon whether the act has so declared it, or it has been so found by the Department of Labor and Industries. Guerrieri v. Industrial Insurance Commission, 84 Wash. 266, 146 P. 608; Parker v. Pantages Theater Co., 143 Wash. 176, 254 P. 1083. Extrahazardous industries, however, or employments are not all within the act. Barney v. Anderson, 116 Wash. 352, 199 P. 452; Edwards v. Dept. of Labor & Industries, 146 Wash. 266, 262 P. 973. | Whether occupation is extrahazardous, and so within compensation act, depends on whether act has so declared it, or it has been so found by Department of Labor and Industries. Rem.Rev.Stat. S 7674. | "Is whether an occupation is extrahazardous depends on whether the act has so declared it, or it has been so found by the Department of Labor and Industry?" | 048701.docx | LEGALEASE-00161289-LEGALEASE-00161290 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 10874 | Handy v. Anchor Mortg. Corp., 464 F.3d 760 | 172H+1581 | "The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer." Rivera v. Grossinger Autoplex, Inc., 274 F.3d 1118, 1121-22 (7th Cir.2001) (citing Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327-28 (7th Cir.1999)). As a result, Anchor's argument that "[t]he most illuminating fact demonstrating the clarity of Anchor's Notice is that the Plaintiff simply was not confused" misses the point. Whether a particular disclosure is clear for purposes of TILA is a question of law that "depends on the contents of the form, not on how it affects any particular reader." Smith v. Check-N-Go of Ill., Inc., 200 F.3d 511, 515 (7th Cir.1999). | Whether a particular disclosure is clear for purposes of TILA is a question of law that depends on the contents of the form, not on how it affects any particular reader. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Do the contents of the form determine whether a disclosure is clear for purposes of TILA? | 013831.docx | LEGALEASE-00162614-LEGALEASE-00162615 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 10875 | United States v. Bergquam, 911 F. Supp. 453 | 135H+25 | Under recent Ninth Circuit decisions, jeopardy does not attach where a potential claimant fails to assert a claim in administrative forfeiture proceedings. United States v. Sanchez"Cobarruvias, 65 F.3d 781 (9th Cir.1995); United States v. Cretacci, 62 F.3d 307 (9th Cir.1995). Bergquam argues strenuously that these cases were wrongly decided. However, they are the law of the Ninth Circuit, and must be applied by this court. Accordingly, I find that Bergquam's conviction did not violate the Double Jeopardy Clause. | Jeopardy does not attach where potential claimant fails to assert claim in administrative forfeiture proceedings. U.S.C.A. Const.Amend. 5. | Does jeopardy not attach where a potential claimant fails to assert a claim in administrative forfeiture proceedings? | Double Jeopardy - Memo 123 - C - BP_65902.docx | ROSS-003295057-ROSS-003295058 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 10876 | W. Pac. Mut. Ins. Co. v. Davies, 267 Ga. App. 675 | 95+205.30 | Davis v. United American Life Ins. Co., 215 Ga. 521, 527(2), 111 S.E.2d 488 (1959); accord First Ga. Ins. Co. v. Goodrum, supra at 315, 370 S.E.2d 162. Thus, a contract or warranty that is worded to exclude virtually all risk of loss or that fails to provide protection from loss would cease to be a contract of insurance or warranty.Thus, this ambiguous limited warranty must be construed liberally in favor of the homeowner, because the meaning of the insurance contract must be determined "from a consideration of all the evidence, just what the purpose, intention and design of the parties were." (Punctuation omitted.) Taylor v. Estes, supra at 718, 70 S.E.2d 82. "[I]nsurance contracts are to be read in accordance with the reasonable expectations of the insured where possible." Home Ins. Co. v. Sunrise Carpet Indus., supra at 271(1), 493 S.E.2d 641. | A contract or warranty that is worded to exclude virtually all risk of loss or that fails to provide protection from loss ceases to be a contract of insurance or warranty. | Is a contract that excludes all risk of loss or that fails to provide protection from loss a contract of insurance? | 019640.docx | LEGALEASE-00161990-LEGALEASE-00161991 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 10877 | Recreational Data Services v. Trimble Navigation Limited, 404 P.3d 120 | 289+502 | Trimble contends that the evidence did not support two of the key elements that define a partnership: associational intent and co-ownership of a business. Associational intent requires "an agreement to combine the [partners'] property, money, effects, skill and knowledge to carry out a business enterprise." If there is no written partnership agreement, "the existence of a partnership must be proven by credible evidence," which may include " "the transactions, conduct and declarations' of the parties." Co-ownership of a business "is evidenced by shared management authority and profit-sharing." | If there is no written partnership agreement, the existence of a partnership must be proven by credible evidence, which may include the transactions, conduct and declarations of the parties; co-ownership of a business is evidenced by shared management authority and profit-sharing. Alaska St. S 32.06.202(a). | "Can the existence of a partnership be proven by transactions, conduct and declarations?" | 022684.docx | LEGALEASE-00162196-LEGALEASE-00162197 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10878 | Estate of Dormaier ex rel. Dormaier v. Columbia Basin Anesthesia, P.L.L.C., 177 Wash. App. 828 | 302+48 | A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." CR 8(a). We construe a complaint liberally so as to do substantial justice. CR 8(f); State v. Adams, 107 Wash.2d 611, 620, 732 P.2d 149 (1987). "If a complaint states facts entitling the plaintiff to some relief, it is immaterial by what name the action is called." Adams, 107 Wash.2d at 620, 732 P.2d 149. But a complaint should adequately alert the defendant of the claim's general nature. State v. Ralph Williams' Nw. Chrysler Plymouth, Inc., 87 Wash.2d 298, 315, 553 P.2d 423 (1976). While a complaint may contain inexpert pleading, it may not contain insufficient pleading. Lewis v. Bell, 45 Wash.App. 192, 197, 724 P.2d 425 (1986). A complaint is insufficient if it does not give the defendant " fair notice of what the claim is and the ground upon which it rests." Williams v. W. Sur. Co., 6 Wash.App. 300, 305"06, 492 P.2d 596 (1972). Thus, a complaint must identify the legal theory upon which the plaintiff seeks relief. Dewey v. Tacoma Sch. Dist. No. 10, 95 Wash.App. 18, 23, 25"26, 974 P.2d 847 (1999). | A complaint is insufficient if it does not give the defendant fair notice of what the claim is and the ground upon which it rests. CR 8. | "Is a complaint insufficient, if it does not give the defendant a fair notice of what the claim is and the ground upon which it rests?" | Pleading - Memo 623-RMM_66423.docx | ROSS-003278315-ROSS-003278316 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 10879 | Smalls v. Wells Fargo Bank, N.A., 180 So. 3d 910 | 13+13 | " " " "[W]hen standing is at issue, the court asks whether the plaintiffs are the proper parties to bring the action." " ' " Ex parte BAC Home Loans Servicing, LP, 159 So.3d at 31 (quoting Steele v. Federal Nat'l Mortg. Ass'n, 69 So.3d 89, 91 n. 2 (Ala.2010), quoting in turn other cases). | When standing is at issue, the court asks whether the plaintiffs are the proper parties to bring the action. | "When standing is at issue, does the court ask whether the plaintiffs are the proper parties to bring the action?" | 023913.docx | LEGALEASE-00162332-LEGALEASE-00162333 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 10880 | Waters v. Smith, 586 So. 2d 22 | 307A+583 | Generally, a party, whether represented by counsel or acting pro se, has a duty to keep abreast of the status of his case, and no duty rests on the court or opposing parties to advise him of the trial date. Bowman v. Slade, 501 So.2d 1236 (Ala.Civ.App.1987). Moreover, the dismissal of a case for lack of prosecution and the subsequent refusal to reinstate it are discretionary with the trial court. Bowman v. Slade. | Dismissal of case for lack of prosecution and subsequent refusal to reinstate it are discretionary with the trial court. | Are dismissal of case for lack of prosecution and subsequent refusal to reinstate it discretionary with the trial court? | 040569.docx | LEGALEASE-00162488-LEGALEASE-00162489 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 10881 | McPherson v. Scher Rental & Leasing Enterprises, 541 So. 2d 1356 | 307A+697 | From the record, no such letter is found. The matter came on for consideration by the trial court. The trial court denied the motion to reinstate and this appeal ensued. We affirm. We find no abuse of discretion. The non-record activity is not sufficient to demonstrate that the trial court erred in its order declining to reinstate and we affirm. See Tosar v. Sladek, 393 So.2d 61 (Fla. 3d DCA 1981); American Eastern Corporation v. Henry Blanton, Inc., 382 So.2d 863 (Fla. 2d DCA 1980); F.M.C. Corporation v. Chatman, 368 So.2d 1307 (Fla. 4th DCA 1979); Conklin v. Boyd, 189 So.2d 401 (Fla. 1st DCA 1966). | Nonrecord activity consisting of efforts to serve one defendant was not sufficient to require trial court to reinstate action after dismissal for failure to prosecute. West's F.S.A. RCP Rule 1.420(e). | Is non-record activity consisting of efforts to serve one defendant not sufficient to require a trial court to reinstate action after dismissal for failure to prosecute? | 040589.docx | LEGALEASE-00162328-LEGALEASE-00162329 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 10882 | Pheasant Lane Realty Tr. v. City of Nashua, 143 N.H. 140 | 371+2003 | Because the power to tax arises solely by statute, see Olson v. Town of Fitzwilliam, 142 N.H. 339, 342, 702 A.2d 318, 320 (1997); Opinion of the Justices, 76 N.H. 609, 612, 85 A. 757, 758 (1913), "the right to tax must be found within the letter of the law and is not to be extended by implication." Grady v. Commissioner of Revenue, 421 Mass. 374, 657 N.E.2d 751, 753 (Mass.1995) (brackets and quotation omitted). As such, mistaken property tax valuations can be corrected only through legislatively authorized remedies. See First Security Mortgage Co. v. Salt Lake County, 866 P.2d 1250, 1252 (Utah Ct.App.1993). | Because the power to tax arises solely by statute, the right to tax must be found within the letter of the law and is not to be extended by implication. | Must the right to tax be found within the letter of the law? | 046348.docx | LEGALEASE-00161978-LEGALEASE-00161979 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 10883 | Haavik v. Alaska Packers' Ass'n, 263 U.S. 510 | 371+2003 | The tax was upon an individual actually within the territory; there was no attempt to reach something in a mere state of transit or beyond the borders. Some general rules touching the taxation of property were pointed out in Brown v. Houston, 114 U. S. 622, 632, 633, 5 Sup. Ct. 1091, 29 L. Ed. 257, and Pullman's Palace Car Company v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613. No more stringent ones should be applied when poll taxes are questioned. Unless restrained by constitutional provision, the sovereign has power to tax all persons and property actually within its jurisdiction and enjoying the benefit and protection of its laws. Cooley on Taxation (3d Ed.) p. 22. | Unless restrained by constitutional provision, the sovereign has power to tax all persons and property actually within its jurisdiction and enjoying the benefit and the protection of its laws. | What can restrain a sovereigns power to tax? | Taxation - Memo 1177 - C -JL_65994.docx | ROSS-003296331-ROSS-003296332 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 10884 | Excel v. Clayton, 269 N.C. 127 | 371+3602 | Excel manufactures textile handling equipment and other tangible property at its plant in Lincolnton, North Carolina, for sale as a retailer both in North Carolina and outside of the State. A sales tax is a tax on the freedom of purchase, and, when applied to interstate transactions, is a tax on the privilege of doing interstate commerce, creates a burden on interstate commerce and runs counter to the commerce clause of the Federal Constitution. McLeod v. J. E. Dilworth Co., 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304; Johnston v. Gill, Comr. of Revenue, 224 N.C. 638, 32 S.E.2d 30. | A sales tax is a tax on the freedom of purchase, and, when applied to interstate transactions, is a tax on the privilege of doing interstate commerce, and creates a burden on interstate commerce, and runs counter to the commerce clause of the Federal Constitution. U.S.C.A. Const. Art. 1, S 8, cl. 3. | "Is ""sales tax"" a tax on the freedom of purchase?" | 046411.docx | LEGALEASE-00162520-LEGALEASE-00162521 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 10885 | Arlan's Dep't Store of Huntington v. Conaty, 162 W. Va. 893 | 307A+699 | Consequently, we hold that a court is without jurisdiction to reinstate a case where all parties to the action are not given notice of the reinstatement motion. | Court is without jurisdiction to reinstate case where all parties to action are not given notice of reinstatement motion. R.C.P. rule 41(b). | Is a court without jurisdiction to reinstate a case where all parties to action are not given notice of a reinstatement motion? | 040989.docx | LEGALEASE-00162729-LEGALEASE-00162730 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 10886 | Dewey v. Merrill, 124 Idaho 201 | 413+186 | Dewey argues that Merrill was acting for the sake of pecuniary gain because he saved ten percent on the cost of building his home by acting as his own contractor. We disagree. Pecuniary gain is not determined by whether a party makes a profit or loses money on certain transactions. See Dillard v. Jones, 58 Idaho 273, 72 P.2d 705 (1937); Modlin v. Twin Falls Canal Co., 49 Idaho 199, 206, 286 P. 612, 614 (1930). In addressing the issue of pecuniary gain, the Court considers whether a party is supplying a service and receiving remuneration for it. Modlin, 49 Idaho at 206, 286 P. at 614. | Whether employer was acting for sake of pecuniary gain, and thus is not within exemption to worker's compensation law, is not determined by whether party makes profit or loses money on certain transactions; in addressing issue of pecuniary gain, what is considered is whether party is supplying service and receiving remuneration for it. | "In addressing pecuniary gain, do courts consider whether one is supplying a service and receiving remuneration for it?" | 048736.docx | LEGALEASE-00162693-LEGALEASE-00162694 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10887 | United States v. Goland, 897 F.2d 405 | 135H+96 | In certain circumstances, the defendant does go free when a mistrial occurs, provided he neither requested nor consented to the mistrial. United States v. Dinitz, 424 U.S. 600, 606-08, 96 S.Ct. 1075, 1078-80, 47 L.Ed.2d 267 (1976); United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). However, if "manifest necessity" justifies a mistrial, even though neither requested nor consented to by the defendant, the defendant can be retried. See Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); Wade, 336 U.S. at 689, 69 S.Ct. at 837; United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). The "classic" case of manifest necessity occurs when a trial judge believes "that the jury is unable to reach a verdict." Washington, 434 U.S. at 509, 98 S.Ct. at 832; see also Richardson v. United States, 468 U.S. 317, 324-26, 104 S.Ct. 3081, 3085-3087, 82 L.Ed.2d 242 (1984) ("we have constantly adhered to the rule that a retrial following a "hung jury" does not violate the Double Jeopardy Clause"; a jury failure to reach a verdict does not terminate jeopardy); Oregon v. Kennedy, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982) (the hung jury is the "prototypical example" of manifest necessity). | In certain circumstances, defendant goes free when mistrial occurs, provided defendant neither requested nor consented to mistrial; however, if manifest necessity justifies mistrial, even though neither requested nor consented to by defendant, defendant can be retried. U.S.C.A. Const.Amend. 5. | "In certain circumstances, does a defendant go free when a mistrial occurs, provided a defendant neither requested nor consented to the mistrial?" | Double Jeopardy - Memo 343 - C - NE_66533.docx | ROSS-003294577-ROSS-003294578 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 10888 | People v. Hohensee, 251 Cal. App. 2d 193 | 135H+95.1 | The dismissal of the juror and her replacement by an alternate did not constitute a discharge of the jury. There was, therefore, no double jeopardy (Pen.Code, s 1089; People v. Hess, 104 Cal.App.2d 642, 680, 234 P.2d 65; People v. Burns, 84 Cal.App.2d 18, 189 P.2d 868). Any error in the manner in which the trial court dismissed the juror was cured by our reversal, for other reasons, of the judgment entered after that trial (People v. Burns, supra, 84 Cal.App.2d 18, 189 P.2d 868). The instant trial court properly rejected the plea of once in jeopardy without admitting the offered evidence. | Dismissal of juror and replacement by alternate did not constitute discharge of jury for double jeopardy purposes. West's Ann.Pen.Code, S 1089. | Does dismissal of a juror and replacement by an alternate constitute discharge of jury for double jeopardy purposes? | 015566.docx | LEGALEASE-00162861-LEGALEASE-00162862 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 10889 | Dellaporta v. United States, 27 F. Supp. 839 | 34+79(3.1) | This court had no jurisdiction to entertain the original petition. Both the capacity to sue and a disagreement between the Veterans' Bureau and a claimant having an interest in the policy are deemed indispensible pre-requisites to jurisdiction of the District Court over controversies arising from contracts of war risk insurance. United States. Mills, 6 Cir., 91 F.2d 487; Smallwood v. United States, 4 Cir., 91 F.2d 287. | A disagreement between the Veterans' Bureau and the claimant having an interest in the policy are indispensable prerequisites to jurisdiction of the District Court over controversies arising from contracts of was risk insurance. | Is disagreement an indispensable prerequisite to commencement of an action for benefits under a war risk policy? | 008828.docx | LEGALEASE-00163889-LEGALEASE-00163890 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 10890 | United States v. Wilfore, 66 F.2d 255 | 34+79(28) | But the government is not liable on this policy for a total disability occurring subsequent to its lapse, even though it be shown that the total disability was caused by conditions which arose while the policy was in force (United States v. Lumbra (C.C.A.) 63 F.(2d) 796; United States v. McLaughlin (C.C.A.) 53 F.(2d) 450; Tomlinson v. United States (D.C.) 18 F.(2d) 795); and the fact that a disability arising during military service is found to be incurable, long after the policy has lapsed, while some evidence of conditions existing at the date of lapse, is not of itself evidence from which a jury can find that the ailment was in fact incurable at the earlier date (United States v. Clapp (C.C.A.) 63 F.(2d) 793; Eggen v. United States (C.C.A.) 58 F.(2d) 616). The insured must show that at the time of the lapse, his disability was based upon conditions which rendered it reasonably certain that it would continue throughout his life. We think that there is a total failure of such evidence in the present case. It is noteworthy that in September, 1920, he applied for life insurance and then stated in his application that his health was good, and that he worked continuously from October, 1919, to October, 1920. | Fact that disability arising during military service is found to be incurable long after war risk policy has lapsed, while some evidence of conditions existing at date of lapse, would not of itself warrant finding that ailment was incurable at earlier date. | Is the government liable for a total disability occurring subsequent to the lapse of an insurance policy? | Armed Services - Memo 357 - RK_66877.docx | ROSS-003294209-ROSS-003294210 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10891 | Jarrell v. Nicholson, 20 Vet. App. 326 | 34+136 | Once the Board has jurisdiction over a claim, however, it has the authority to address all issues related to that claim, even those not previously decided by the RO. See Bernard, 4 Vet.App. at 392 (distinguishing between questions or issues in a matter or claim and the matter or claim itself, and holding that the Board has authority "to decide all questions presented on the record before it that were necessary to its decision on the matter" on appeal (citing 38 U.S.C. " 7104(a))). To exercise this authority with regard to questions or issues not previously addressed by an RO in the first instance, however, the Board must secure a waiver from a claimant or otherwise determine that there would be no prejudice to the claimant by proceeding to adjudicate the question or issue; otherwise remand is appropriate. See Bernard, 4 Vet.App. at 394 (Board must either obtain waiver or determine whether a claimant will be prejudiced by the Board's adjudication of a question or issue in an appeal not otherwise decided by the RO, otherwise it must remand for the RO to decide the question in the first instance). | Once the Board of Veterans Appeals (BVA) has jurisdiction over a claim, it has the authority to address all issues related to that claim, even those not previously decided by the regional officer (RO). 38 U.S.C.A. SS 7104(a), 7105(a). | Does the Board of Veterans Appeals (BVA) have authority to address all issues related to a claim once it has jurisdiction? | Armed Services - Memo 366 - RK_66886.docx | ROSS-003279318-ROSS-003279319 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10892 | Friedman v. Schneider, 238 Mo. App. 778 | 38+97 | A total want or failure of consideration may always be insisted on to avoid a contract of sale, and if the thing sold be of no value to anyone, it cannot be the basis of a bargain. Brown v. Weldon & Langford, 27 Mo.App. 251. In the absence of an express warranty, the assignor of a chose in action, for a valuable consideration, impliedly warrants to the assignee that the chose assigned is a valid, subsisting obligation in his favor against the debtor to the extent to which it purports to be such, and as a general rule the assignor of a claim impliedly warrants that it is valid and that the debtor or obligator is liable to pay it, and if in fact the claim is invalid, the assignor is liable to the assignee for the amount paid for the assignment. After stating and following these general principles of law, a recovery of the purchase price paid for invalid special taxbills was upheld in the case of Miners' Bank v. Burress, 164 Mo.App. 690, 147 S.W. 1110, 1111, and the court said: "As a general rule, the assignor of a claim impliedly warrants that it is valid, and that the debtor or obligor is liable to pay it; and if in fact the claim is invalid, the assignor is liable to the assignee for the amount paid for the assignment. 2 Am. and Eng.Ency.Law, 1090; Daskam v. Ullman, 74 Wis. 474, 43 N.W. 321. | In absence of express warranty, the assignor of a chose in action for valuable consideration impliedly warrants that the chose is a valid subsisting obligation in his favor against debtor to extent to which it purports to be such. | Does an assignor warrant that the assignment of a written instrument is valid? | 009314.docx | LEGALEASE-00162967-LEGALEASE-00162968 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10893 | U.S. v. Jackson, 904 F. Supp. 118 | 92+1170 | The Court notes that there has not been a single court that has interpreted McCormick to mandate a quid pro quo element in any state law bribery statute. There is, however, significant authority to the contrary. See United States v. Jackson, 72 F.3d 1370, 1376 (9th Cir.1995), cert. denied, 517 U.S. 1157, 116 S.Ct. 1546, 134 L.Ed.2d 649 (1996) (holding, after McCormick, that "[b]ecause the First Amendment does not imply an explicit quid pro quo element into every state bribery offense, and California bribery law does not require an explicit quid pro quo instruction, the absence of one here cannot constitute error."); Daniel Hays Lowenstein, Campaign Contributions and Correction: Comments on Strauss and Cain, 1995 U. Chi. Legal F. 163, 192 ("[i]n general, a quid pro quo does not seem to be required under state [bribery] statutes."). See also, Allen, 10 F.3d at 411"12 (discussing the potential impact of McCormick on the Indiana bribery statute but declining to rule on the issue). | First Amendment does not imply explicit quid pro quo element into every state bribery offense. U.S.C.A. Const.Amend. 1. | Does the First Amendment imply an explicit quid pro quo elementstate law bribery statute? | 012574.docx | LEGALEASE-00162903-LEGALEASE-00162904 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 10894 | Certification from the United States Dist. Court for the E. Dist. of Washington in Crossler v. Hille, 136 Wash. 2d 287 | 104+48 | Absent specific authority to the contrary, a board of county commissioners has no authority to interfere with an elected official's hiring decision. Osborn v. Grant County, 130 Wash.2d 615, 623, 926 P.2d 911 (1996). In Osborn, the board of commissioners argued it should have some say in the irresponsible hiring decisions of elected officials and pointed to RCW 36.16.070 to support its argument. The board argued RCW 36.16.070 expressly required the elected official to seek the consent of the Grant County Commissioners before making hiring decisions. We did not agree and held once the board creates and funds the positions, the county officer is the party who names the individuals to fill those positions. Osborn, 130 Wash.2d at 622, 926 P.2d 911; see also Thomas v. Whatcom County, 82 Wash. 113, 124, 143 P. 881 (1914) (once the board has authorized the hiring of deputies in a county office, "the officer in whose office the deputies are to serve, being responsible on his bond for their conduct, has the absolute right to determine the personnel of such deputies...."); Jackson v. Thurston County, 127 Wash. 41, 43"44, 219 P. 840 (1923) (the sheriff, being responsible on his official bond for the acts of his deputies, had the right of appointment). The commissioners have the ability to authorize and fund a position, but this authority does not extend to specific personnel decisions. As we stated, "[i]f an official makes a poor hiring decision, the official is accountable not to the board of commissioners, but to the public." Osborn, 130 Wash.2d at 624, 926 P.2d 911. | Absent specific authority to the contrary, a board of county commissioners has no authority to interfere with an elected official's hiring decision. | Do county commissioners have the authority to interfere with the hiring decisions of an elected official? | 013583.docx | LEGALEASE-00164088-LEGALEASE-00164089 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 10895 | Crabtree Investments v. Merrill Lynch, Pierce, Fenner & Smith, 577 F. Supp. 1466 | 83H+1 | Crabtree Investments, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 577 F. Supp. 1466Great Quote 1: Section 4d of the Commodity Exchange Act, does require a futures commission merchant to separately account for its customers' funds which must be treated as belonging to the customers. But Section 4d does allow investment of customer funds in government and government-guaranteed instruments and, also permits the Commission to regulate the use of these segregated accounts. A futures commission merchant is permitted to retain interest from the authorized investment of customer funds. 17 C.F.R. " 1.29. | Provision of Commodity Exchange Act which requires futures commission merchant to separately account for its customers' funds which must be treated as belonging to the customers allows investment of customer funds in government and government-guaranteed instruments and also permits the Commission to regulate use of these segregated accounts, and permits futures commission merchant to retain interest from authorized investment of customer funds. Commodity Exchange Act, S 4d, 7 U.S.C.A. S 6d. | Is a Futures Commission Merchant (FCM) permitted to retain interest from the authorized investment of customer funds? | 013640.docx | LEGALEASE-00164162-LEGALEASE-00164163 | SA, Sub | 0.19 | 0 | 0 | 1 | 1 | |
| 10896 | State v. Leroy, 604 N.W.2d 75 | 135H+59 | Jeopardy attaches in a jury trial when the jury is empanelled and sworn. See Crist v. Bretz, 437 U.S. 28, 36, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). It continues, absent an interim order terminating the trial, until there is a verdict. Cf. United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). In Minnesota, verdict completion is defined by Minn.Stat. " 631.17 (1998) which provides that if, after filing and reading the verdict no disagreement is expressed by the jury, the verdict is complete. | Jeopardy attaches in a jury trial when the jury is empaneled and sworn and continues, absent an interim order terminating the trial, until there is a verdict. U.S.C.A. Const.Amend. 5; M.S.A. Const. Art. 1, S 7. | Will jeopardy attach when there is a verdict even though an interim order terminating the trial is absent? | 014792.docx | LEGALEASE-00163946-LEGALEASE-00163947 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10897 | United States v. Ursery, 518 U.S. 267 | 135H+25 | In the second stage of our analysis, we looked to " "whether the statutory scheme was so punitive either in purpose or effect as to negate" Congress' intention to establish a civil remedial mechanism," 465 U.S., at 365, 104 S.Ct., at 1106, quoting United States v. Ward, 448 U.S. 242, 248-249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). Hence, we found that the gun owner had "failed to establish by the "clearest proof" that Congress has provided a sanction so punitive as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." " 89 Firearms, supra, at 366, 104 S.Ct., at 1107, quoting Rex Trailer Co. v. United States, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956). We concluded our decision by restating that civil forfeiture is "not an additional penalty for the commission of a criminal act, but rather is a separate civil sanction, remedial in nature." 89 Firearms, supra, at 366, 104 S.Ct., at 1107. | Civil forfeitures do not impose "punishment" for double jeopardy purposes; in rem civil forfeiture is not additional penalty for commission of criminal act, but rather is separate civil sanction, remedial in nature. U.S.C.A. Const.Amend. 5. | Is in rem civil forfeiture an additional penalty for commission of a criminal act? | 015145.docx | LEGALEASE-00163465-LEGALEASE-00163466 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 10898 | United States v. Levine, 905 F. Supp. 1025 | 135H+25 | Further, the Court finds that jeopardy did not attach from the two prior civil forfeiture proceedings. Jeopardy "attaches" in a civil forfeiture proceeding "at the beginning of the hearing, when evidence is first presented to the trier of fact." United States v. Torres, 28 F.3d 1463, 1465 (7th Cir.1994) (citing Crist v. Bretz, 437 U.S. 28, 31"37, 98 S.Ct. 2156, 2159"61, 57 L.Ed.2d 24 (1978)). Jeopardy does not attach when the defendant does not make a claim and thus, does not become a party to the forfeiture. Id. Further, there is no jeopardy when there is no trial and the property sought to be forfeited is indeed forfeited without opposition. Id. In the case sub judice, there were actually two civil forfeiture proceedings. The Defendant filed a claim against the $2,417,570 but not the $3,547,670. Regardless, default judgments were entered against both sums of money because the Defendant chose to become a fugitive. | Jeopardy attaches in civil forfeiture proceeding at beginning of hearing, when evidence is first presented to trier of fact; jeopardy does not attach when defendant does not make claim and thus does not become party to forfeiture, nor does it attach when there is no trial and property sought to be forfeited is forfeited without opposition. U.S.C.A. Const.Amend. 5. | "For double jeopardy purposes, does jeopardy not attach when a defendant does not make a claim?" | 015177.docx | LEGALEASE-00163533-LEGALEASE-00163534 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 10899 | United States v. Barber, 906 F. Supp. 424 | 135H+25 | The last two determinations are not in issue in the present case. There is a question, however, of whether any of the prior proceedings constitute "punishment" implicating double jeopardy. In order for a previous forfeiture proceeding to constitute "punishment," the defendant must have been a party to the proceeding, United States v. Torres, 28 F.3d 1463 (7th Cir.1994), jeopardy must have attached to the proceeding, Serfass v. United States, 420 U.S. 377, 389, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975), and the forfeiture must not have been solely remedial in nature,2 Austin v. United States, 509 U.S. 602, """", 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993). | In order for previous civil forfeiture proceeding to constitute "punishment" for purposes of double jeopardy, defendant must have been party to forfeiture proceeding, jeopardy must have attached to proceeding, and forfeiture must not have been solely remedial in nature. U.S.C.A. Const.Amend. 5. | "Can civil forfeiture sometimes constitute ""punishment"" for purposes of double jeopardy?" | 015179.docx | LEGALEASE-00163537-LEGALEASE-00163538 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 10900 | State v. Espinoza, 233 Ariz. 176 | 135H+59 | In Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the Supreme Court addressed this very question. There, the jury was instructed that it could find the defendant guilty of either first-degree or second-degree murder. Id. at 185, 78 S.Ct. 221. The jury found the defendant guilty of second-degree murder but was silent as to first-degree murder. Id. at 186, 78 S.Ct. 221. After the defendant's conviction for second-degree murder was reversed, he was tried again for first-degree murder and raised the defense of double jeopardy. Id. The Court concluded, "[A] defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again." Id. at 188, 78 S.Ct. 221. | Defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again. U.S.C.A. Const.Amend. 5. | Is a defendant placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again? | 015203.docx | LEGALEASE-00163641-LEGALEASE-00163642 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 10901 | People v. Hicks, 447 Mich. 819 | 135H+95.1 | Despite the concern for repeated prosecutions, it is axiomatic that retrial is not automatically barred whenever circumstances compel the discharge of a factfinder before a verdict has been rendered. One exception to the double jeopardy bar arises when a defendant moves for or consents to a mistrial. In United States v. Dinitz, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079-1080, 47 L.Ed.2d 267 (1976), the Supreme Court held that "where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." | Retrial is not automatically barred by prohibition against double jeopardy whenever circumstances compel discharge of fact finder before verdict has been rendered. U.S.C.A. Const.Amend. 5; M.C.L.A. Const. Art. 1, S 15. | Does double jeopardy automatically bar retrial whenever circumstances compel the discharge of a factfinder before a verdict has been rendered? | 015253.docx | LEGALEASE-00163129-LEGALEASE-00163130 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10902 | United States v. Allen, 984 F.2d 940 | 135H+96 | The Fifth Amendment to the United States Constitution establishes that no person shall twice be put in jeopardy for the same offense. U.S. Const.Amend. V. The double jeopardy clause generally does not preclude reprosecution when a defendant requests or consents to a mistrial. United States v. Martin, 561 F.2d 135, 138 (8th Cir.1977). When a mistrial has been declared without a defendant's consent, however, double jeopardy precludes a retrial unless there exists manifest necessity to declare the mistrial. United States v. Jorn, 400 U.S. 470, 481, 91 S.Ct. 547, 555, 27 L.Ed.2d 543 (1971). In the present case, Allen did not consent to or request a mistrial. We therefore must test the propriety of the court's decision by the manifest necessity standard. | Double jeopardy clause does not generally preclude reprosecution if defendant requests or consents to mistrial. U.S.C.A. Const.Amend. 5. | Does a double jeopardy clause not generally preclude reprosecution if a defendant requests or consents to mistrial? | Double Jeopardy - Memo 316 - C - TJ_66610.docx | ROSS-003292674-ROSS-003292675 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10903 | United States v. Nichols, 977 F.2d 972 | 135H+96 | "[T]he double jeopardy clause is not an absolute bar to reprosecution once the jury has been empaneled and sworn." U.S. v. Bauman, 887 F.2d 546, 549 (5th Cir.1989), cert. denied, 493 U.S. 1077, 110 S.Ct. 1128, 107 L.Ed.2d 1034 (1990). Double jeopardy may be waived by consent; also, "a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution." Id. (citations omitted). Moreover, "a retrial following a sua sponte declaration of mistrial over a defendant's objection is not prohibited under the fifth amendment where there exists "manifest necessity" for a mistrial." Id. (citation omitted). | Motion by defendant for mistrial is ordinarily assumed to remove any double jeopardy barrier to reprosecution. U.S.C.A. Const.Amend. 5. | Is a motion by a defendant for mistrial ordinarily assumed to remove any double jeopardy barrier to reprosecution? | Double Jeopardy - Memo 318 - C - TJ_66612.docx | ROSS-003296465-ROSS-003296466 | Order, SA, Sub | 0.79 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10904 | State v. Reid, 166 Wis. 2d 139 | 135H+96 | A mistrial was further necessary because a party cannot benefit from defrauding the court. The right to have a trial continued to judgment must sometimes be subordinated to the public interest in fair trials designed to end in just judgments. State v. Duckett, 120 Wis.2d 646, 650, 358 N.W.2d 300, 302 (Ct.App.1984). The public interest in fair trials and just judgments will not tolerate a defendant benefiting from defrauding the court. Thus, the common law establishes that a fraud does not bar a second trial. See McFarland v. State, 68 Wis. 400, 402, 32 N.W. 226, 227 (1887). | Public's interest in fair trials and just judgment will not tolerate defendant benefiting from defrauding court and, therefore, common-law establishes that fraud does not bar second trial. | Will the public interest in fair trials and just judgment not tolerate a defendant benefiting from defrauding a court? | 015346.docx | LEGALEASE-00163336-LEGALEASE-00163337 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 10905 | Harrison v. State, 772 S.W.2d 556 | 135H+96 | If Harrison consented to the mistrial, double jeopardy did not bar his retrial. See Harrison, at 806. Harrison's consent need not be expressed, but may be implied from the totality of the circumstances attendant to the declaration of the mistrial. Id.; Torres v. State, 614 S.W.2d 436, 441 (Tex.Crim.App. [Panel Op.] 1981). Given the brevity of the record of the circumstances attendant to the declaration of the mistrial, the only circumstance suggesting consent is Harrison's failure to object to the trial court's action. Before such failure constitutes an implied consent to the mistrial, however, Harrison must have been given an adequate opportunity to object. See Torres, 614 S.W.2d at 441"42. | Defendant's consent to mistrial need not be expressed, but may be implied from totality of circumstances attendant to declaration of mistrial. U.S.C.A. Const.Amend. 5. | "Should a defendant's consent to mistrial not be expressed, but may be implied from the totality of circumstances attendant to the declaration of a mistrial?" | Double Jeopardy - Memo 350 - C - MS_66628.docx | ROSS-003295131-ROSS-003295132 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 10906 | Pohle v. Cheatham, 724 N.E.2d 655 | 156+52.10(3) | Waiver is an intentional relinquishment of a known right, requiring both knowledge of the existence of the right and intention to relinquish it. Matter of S.L., 599 N.E.2d 227, 229 (Ind.Ct.App.1992). Moreover, waiver may be shown either by express or implied consent, and, thus, the right may be lost by a course of conduct which estops its assertion. See Continental Optical Co. v. Reed, 119 Ind.App. 643, 649, 86 N.E.2d 306, 309 (1949). However, waiver is an affirmative act and mere silence, acquiescence or inactivity does not constitute waiver unless there was a duty to speak or act. See American Nat'l Bank & Trust Co. v. St. Joseph Valley Bank, 180 Ind.App. 546, 554, 391 N.E.2d 685, 687 (1979). Further, any waiver of an individual's right to privacy justifies an invasion only to the extent warranted by the circumstances which brought about the waiver. Continental Optical, 119 Ind.App. at 650, 86 N.E.2d at 309. | "Waiver" is affirmative act and mere silence, acquiescence or inactivity does not constitute waiver unless there was duty to speak or act. | "Does mere silence, acquiescence, or inactivity constitute waiver if there was no duty to speak or act?" | 018208.docx | LEGALEASE-00162963-LEGALEASE-00162964 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 10907 | State v. Andrews, 665 So. 2d 454 | 203+558 | The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, 414 So.2d 741 (La.1982). Although a specific intent to inflict great bodily harm may support a conviction for murder, the specific intent to inflict great bodily harm will not support a conviction of attempted murder. State v. Martin, 638 So.2d 411 (La.App. 5th Cir.1994); State v. Odom, 511 So.2d 1214 (La.App. 2nd Cir.1987), writ denied, 515 So.2d 446 (La.1987). | Though specific intent to inflict great bodily harm may support conviction for murder, specific intent to inflict great bodily harm will not support conviction for attempted murder. LSA-R.S. 14:27, 14:30.1. | Is specific intent to inflict great bodily harm considered sufficient to support a murder conviction? | 019387.docx | LEGALEASE-00164048-LEGALEASE-00164049 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 10908 | Com. v. Cargill, 357 Pa. 510 | 203+1380 | We said in Commonwealth v. Colandro, 231 Pa. 343, 350, 80 A. 571, 574: "Voluntary manslaughter is a homicide intentionally committed under the influence of passion." The use of the word and phrases italicized above in the definition of the learned trial judge was at most, under the facts of this case, harmless error. We have frequently held that a charge must be considered in its entirety and that reversible error cannot be predicated on certain isolated excerpts. Commonwealth v. Moyer, 357 Pa. 181, 187, 53 A.2d 736. Considering the charge in its entirety the jury was clearly and fully instructed as to voluntary manslaughter. It must have understood the vital difference between that degree of homicide and first-degree murder; that in the former there must be heat of passion and in the latter the cool depravity and hardness of heart which in law is called malice. Having been fully charged, the important question for the jury was whether this admittedly intentional killing was done in malice, heat of passion of in self-defense. The verdict of guilty of first-degree murder was a clear and unequivocal answer to that question. | Where jury in murder prosecution must have understood from charge on voluntary manslaughter the vital difference between that degree of homicide and first-degree murder and that in former there must be heat of passion and in latter the cool depravity and hardness of heart constituting legal "malice", instruction was adequate. | Does malice include hardness of heart? | Homicide - Memo 181 - RK.docx | LEGALEASE-00053483-LEGALEASE-00053484 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 10909 | Wright v. Brush, 115 F.2d 265 | 260+79.1(2) | While the terms "royalty," "overriding royalty," and "bonus" are sometimes loosely used, they have a well defined and generally understood and accepted meaning. The ordinary and legal meaning of the word "royalty" as applied to an existing oil and gas lease is the compensation provided in the lease to the owner of the premises for the privilege of drilling and producing oil and gas therefrom, and consists of a share in the oil and gas produced. Bellport v. Harrison, 123 Kan. 310, 255 P. 52. An "overriding royalty" is generally defined as an interest carved out of the lessee's share of the oil, also called the working interest, as distinguished from the owner's interest or royalty interest. Robinson et al. v. Jones, 119 Kan. 609, 240 P. 957. A "bonus" is a consideration in addition to or in excess of that which would ordinarily be given. Payne v. United States, 50 App.D.C. 219, 269 F. 871; Kenicott v. Wayne County, 16 Wall. 452, 83 U.S. 452, 21 L.Ed. 319. In many instances where leases have considerable value, one seeking a lease from an owner is willing to pay in addition to the usual royalty reserved in the lease, something more. This is called a bonus. It has been defined as a consideration for the lease over and above the usual royalty reservation, and it is immaterial whether the additional consideration is paid in money or out of oil, so long as it does not come out of the usual and ordinary royalty reservation to the landowner. Sheppard v. Stanolind Oil & Gas Co., Tex. Civ. App., 125 S.W.2d 643 | An "overriding royalty", as applied to an existing oil and gas lease, means an interest carved out of the lessee's share of the oil, also called the "working interest", as distinguished from the "owner's interest," or "royalty interest". | Can an overriding royalty be carved out of a working interest in an oil and gas lease? | 021681.docx | LEGALEASE-00163282-LEGALEASE-00163283 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10910 | Wright v. Brush, 115 F.2d 265 | 260+79.1(2) | While the terms "royalty," "overriding royalty," and "bonus" are sometimes loosely used, they have a well defined and generally understood and accepted meaning. The ordinary and legal meaning of the word "royalty" as applied to an existing oil and gas lease is the compensation provided in the lease to the owner of the premises for the privilege of drilling and producing oil and gas therefrom, and consists of a share in the oil and gas produced. Bellport v. Harrison, 123 Kan. 310, 255 P. 52. An "overriding royalty" is generally defined as an interest carved out of the lessee's share of the oil, also called the working interest, as distinguished from the owner's interest or royalty interest. Robinson et al. v. Jones, 119 Kan. 609, 240 P. 957. A "bonus" is a consideration in addition to or in excess of that which would ordinarily be given. Payne v. United States, 50 App.D.C. 219, 269 F. 871; Kenicott v. Wayne County, 16 Wall. 452, 83 U.S. 452, 21 L.Ed. 319. In many instances where leases have considerable value, one seeking a lease from an owner is willing to pay in addition to the usual royalty reserved in the lease, something more. This is called a bonus. It has been defined as a consideration for the lease over and above the usual royalty reservation, and it is immaterial whether the additional consideration is paid in money or out of oil, so long as it does not come out of the usual and ordinary royalty reservation to the landowner. Sheppard v. Stanolind Oil & Gas Co., Tex. Civ. App., 125 S.W.2d 643. | An "overriding royalty", as applied to an existing oil and gas lease, means an interest carved out of the lessee's share of the oil, also called the "working interest", as distinguished from the "owner's interest," or "royalty interest". | "Is an overriding interest an interest carved out of the lessees share of the oil, as distinguished from the owners share?" | 021696.docx | LEGALEASE-00163331-LEGALEASE-00163332 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 10911 | Smith v. Otis Eng'g Corp., 670 S.W.2d 750 | 413+208 | The borrowed servant doctrine has introduced some uncertainty into workers' compensation law because the employer, for purposes of Texas workers' compensation, is the entity with the right to control the employee at the time of the accident. See Nations, "Resolving Independent Contractor and Borrowed Servant Issues under Texas Workers' Compensation Law," 19 S.Tex.L.J. 445, 453 (1978). In a situation where one entity "borrows" the employee of another, there may be some division of authority between the parties as to the right to control the employee's performance of the particular task; however, the law continues to require that one party be named the employer and all others be classified as third parties outside the purview of the workers' compensation law. See, e.g. Assoc. Indem. Co. v. Hartford Acc. & Indem. Co., 524 S.W.2d 373, 376 (Tex.Civ.App."Dallas 1975, no writ). | "Employer" for purposes of workers' compensation, is the entity with the right to control the employee at the time of the accident. Vernon's Ann.Texas Civ.St. art. 8306 et seq. | Is the entity with the right to control the employee at the time of the accident the employer for workers compensation purposes? | 048759.docx | LEGALEASE-00164142-LEGALEASE-00164143 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 10912 | CD Partners v. Grizzle, 424 F.3d 795 | 25T+179 | A nonsignatory can enforce an arbitration clause against a signatory to the agreement in several circumstances. One is when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir.1999) (quoting Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423, 1432 (M.D.Ala.1997)). Another is "when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory." Id. (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993)). "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." Id. (internal quotations omitted). | A nonsignatory can enforce an arbitration clause against a signatory to the agreement when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided. | When can a non-signatory enforce an arbitration clause against a signatory? | 008055.docx | LEGALEASE-00164991-LEGALEASE-00164992 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 10913 | Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411 | 25T+141 | Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties. For example, in J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320"21 (4th Cir.1988), we explained that when allegations against "a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." We further explained that "[t]he same result has been reached under a theory of equitable estoppel." Id.; see also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993) (holding that because claims against nonsignatory parent were "intimately founded in and intertwined with" a contract containing an arbitration clause, signatory was estopped from refusing to arbitrate those claims); Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836, 840"41 (7th Cir.1981) (finding signatory equitably estopped from repudiating arbitration clause in agreement on which suit against nonsignatory was based). Moreover, the Second Circuit recently noted that it had recognized that five theories "aris[ing] out of common law principles of contract and agency law" could provide a basis "for binding nonsignatories to arbitration agreements: 1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." Thomson"CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir.1995) (citing cases); see also Bel"Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 440"43 (3d Cir.1999); Amoco Transport Co. v. Bugsier Reederei & Bergungs, A.G. (In re Oil Spill by the "Amoco Cadiz" ), 659 F.2d 789, 795"96 (7th Cir.1981). | In an appropriate case, a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties. | "Can a nonsignatory enforce, or be bound by, an arbitration provision within a contract executed by other parties?" | 008072.docx | LEGALEASE-00165028-LEGALEASE-00165030 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10914 | Rush v. Oppenheimer & Co., 779 F.2d 885 | 25T+182(2) | Given this dominant federal policy favoring arbitration, waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated. Demsey & Associates, Inc. v. S.S. Sea Star, 461 F.2d 1009, 1018 (2d Cir.1972); Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir.1968). "Waiver * * * is not to be lightly inferred, and mere delay in seeking a stay of the proceedings without some resultant prejudice to a party * * * cannot carry the day." Id. (citation omitted); see also Weight Watchers of Quebec Ltd. v. Weight Watchers International, Inc., 398 F.Supp. 1057, 1058"59 (E.D.N.Y.1975). | Waiver of right to compel arbitration due to participation in litigation may be found only when prejudice to other party is demonstrated. | Under what circumstances is the waiver of the right to compel arbitration due to participation in litigation found? | 008083.docx | LEGALEASE-00165021-LEGALEASE-00165022 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10915 | PPG Indus. v. Webster Auto Parts, 128 F.3d 103 | 25T+182(2) | Nonetheless, a party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party. See Doctor's Assocs., 107 F.3d at 131; Cotton v. Slone, 4 F.3d 176, 179 (2d Cir.1993); Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir.1991). "[P]rejudice as defined by our cases refers to the inherent unfairness"in terms of delay, expense, or damage to a party's legal position"that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." Doctor's Assocs., 107 F.3d at 134. Incurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver. See id. (citing Leadertex, 67 F.3d at 26). Thus, we have found that a party waived its right to arbitration where it engaged in extensive pre-trial discovery and forced its adversary to respond to substantive motions, see Com"Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1576"77 (2d Cir.1991), delayed invoking arbitration rights by filing multiple appeals and substantive motions while an adversary incurred unnecessary delay and expense, see Kramer, 943 F.2d at 179, and engaged in discovery procedures not available in arbitration, see Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp., 996 F.2d 1478, 1480 (2d Cir.1993) (per curiam). | Prejudice, in context of waiver of right to arbitration, refers to inherent unfairness, in terms of delay, expense, or damage to party's legal position, that occurs when party's opponent forces it to litigate issue and later seeks to arbitrate that same issue. | What does the term prejudice mean when used in the context of arbitration? | 008085.docx | LEGALEASE-00165023-LEGALEASE-00165025 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 10916 | Cotton v. Slone, 4 F.3d 176 | 25T+182(2) | We have emphasized that there is a strong presumption in favor of arbitration, see Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir.1985), and that waiver of the right to arbitration "is not to be lightly inferred." Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir.1968). To avoid waiver, however, it is not enough merely to assert a right without taking appropriate steps to secure it. Waiver will be inferred when a party engages in protracted litigation that results in prejudice to the opposing party. Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir.1991) (citing Com"Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1576 (2d Cir.1991)); see Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 263 (2d Cir.1990). Sufficient prejudice to infer waiver has been found when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, Liggett & Myers Inc. v. Bloomfield, 380 F.Supp. 1044, 1047"48 (S.D.N.Y.1974), makes motions going to the merits of an adversary's claims, Com"Tech, 938 F.2d at 1576, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense, Kramer, 943 F.2d at 179. The waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright line rules. Id. | Waiver of right to arbitration will be inferred when party engages in protracted litigation that results in prejudice to opposing party. | Can waiver of the right to arbitration be inferred when a party engages in protracted litigation that results in prejudice to opposing party? | 008088.docx | LEGALEASE-00165079-LEGALEASE-00165080 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 10917 | Cornell & Co. v. Barber & Ross Co., 360 F.2d 512 | 25T+182(2) | The right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right. Once having waived the right to arbitrate, that party is necessarily "in default in proceeding with such arbitration.' | A party waives right to arbitrate when he actively participates in lawsuit or takes other action inconsistent with that right. 9 U.S.C.A. S 3. | Has a party waived its right to arbitrate when it actively participates in a lawsuit or takes other action inconsistent with that right? | Alternative Dispute Resolution - Memo 874 - RK_67479.docx | ROSS-003281789-ROSS-003281790 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 10918 | Bhatia v. Johnston, 818 F.2d 418 | 25T+184 | The Arbitration Act clearly established a federal policy in favor of arbitration, and sought to ameliorate perceived judicial hostility to arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Dean Witter Reynolds, Inc. v. Byrd. By its express terms the Arbitration Act dispels any suggestion that the district courts are vested with discretion to order arbitration for it "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Byrd, 470 U.S. at 218, 105 S.Ct. at 1241, 84 L.Ed.2d at 163 (emphasis in original). | Federal district courts do not have discretion to order arbitration under Arbitration Act, as Act mandates that district courts "shall" direct parties to proceed to arbitration on issues as to which arbitration agreement has been signed. 9 U.S.C.A. SS 1-14. | Do courts have the discretion to order arbitration under the Federal Arbitration Act (FAA)? | 008127.docx | LEGALEASE-00165038-LEGALEASE-00165039 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 10919 | Dreyling v. Comm'r of Revenue, 711 N.W.2d 491 | 135+2 | "Domicile" means bodily presence in a place coupled with an intent to make that place one's home. Miller's Estate v. Comm'r of Taxation, 240 Minn. 18, 19, 59 N.W.2d 925, 926 (1953). Once established, a domicile is presumed to continue until the contrary is shown. Minn. R. 8001.0300, subp. 2. As a result, one may live in another state for a period of time without affecting one's Minnesota domicile. See Comm'r of Revenue v. Stamp, 296 N.W.2d 867, 870 (Minn.1980). | One may live in another state for a period of time without affecting one's Minnesota domicile. Minnesota Rules, part 8001.0300, subp. 2. | Can one live in another state for a period of time without affecting one's domicile? | Domicile - Memo 57 - C - MV_67136.docx | ROSS-003278816-ROSS-003278817 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 10920 | Brogan v. Brogan, 59 Mass. App. Ct. 398 | 135+2 | (a) Domicile. The question of the testatrix's domicile does not touch on the validity of the will; it bears on the jurisdiction of the Probate Court in Plymouth County to consider whether the will should be allowed.3 There is no dispute that the will was executed in Mattapoisett. General Laws c. 215, " 3, as appearing in St.1975, c. 400, " 53, provides that "[p]robate courts shall have jurisdiction of probate of wills ... of persons who at the time of their decease were inhabitants of or residents in their respective counties...." The words "inhabitant" and "resident" are not synonymous. Harvard College v. Gore, 22 Mass. 370, 5 Pick 370, 372"373, 1827 WL 2157 (1827). "Inhabitant" imports domicile; "resident" imports making a home in a place for purposes of employment or to live with a child, without necessarily giving up another, more permanent, abode. | "Inhabitant" imports domicile; "resident" imports making a home in a place for purposes of employment or to live with a child, without necessarily giving up another more permanent abode. | "Does ""inhabitant"" import domicile?" | Domicile - Memo 65 - C - NK_67144.docx | ROSS-003283101-ROSS-003283102 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10921 | People v. White Eagle, 48 Cal. App. 4th 1511 | 135H+30 | Although his status as a repeat offender subjects him to harsher punishment under section 667, subdivision (e), and service of the prison term results in an enhancement of that term, he is not being punished for the 1981 robbery conviction. Recidivist statutes do not impose a second punishment for the first offense in violation of the Double Jeopardy Clause. (Moore v. Missouri (1895) 159 U.S. 673, 677, 16 S.Ct. 179, 181, 40 L.Ed. 301.). | Recidivist statutes do not impose second punishment for first offense in violation of double jeopardy. U.S.C.A. Const.Amend. 5. | Do recidivist statutes impose second punishment for first offense in violation of double jeopardy? | Double Jeopardy - Memo 1245 - C - NE_67382.docx | ROSS-003281224 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 10922 | Raulerson v. State, 609 So. 2d 1301 | 350H+1216 | On appeal, the district court found that a sentence for committing a first-degree felony punishable by life may be enhanced under section 775.084, Florida Statutes (1989), and also expressly found that the violent habitual felony offender provisions of section 775.084 do not violate the constitutional prohibitions against double jeopardy and ex post facto laws. | Habitual violent felony offender statute did not violate constitutional prohibition against ex post facto laws. West's F.S.A. S 775.084; U.S.C.A. Const. Art. 1, SS 9, cl. 3, 10, cl. 1. | Does the habitual violent felony offender statute violate the constitutional prohibitions against double jeopardy? | Double Jeopardy - Memo 1256 - C - CK_67558.docx | ROSS-003291992 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 10923 | S.K. v. Anoka-Hennepin Indep. Sch. Dist. No. 11, 399 F. Supp. 2d 963 | 141E+741 | School board's weapons policies, as enacted under Minnesota law, were not impermissibly vague as applied to middle school students expelled due to BB gun shooting incident. Students' conduct in calling victim away from bus stop and over to their house, where they shot him in back with BB gun, was clearly proscribed by policies at issue, which provided that school board would not tolerate weapons on school property or in school zone. M.S.A. " 121A.45. | School board's weapons policies, as enacted under Minnesota law, were not impermissibly vague as applied to middle school students expelled due to BB gun shooting incident; students' conduct in calling victim away from bus stop and over to their house, where they shot him in back with BB gun, was clearly proscribed by policies at issue, which provided that school board would not tolerate weapons on school property or in school zone. M.S.A. S 121A.45. | What constitutes a weapon under school districts' rule prohibiting the possession of weapons on school property? | 017303.docx | LEGALEASE-00164339-LEGALEASE-00164340 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 10924 | Mattingly's Ex'r v. Brents, 155 Ky. 570 | 233+531 | A lease is but a conveyance of an estate in realty. It divests the owner, for a given time, of a certain estate in the realty, leaving in him the reversion. In a sense, therefore, the lessee is as much the owner of the right of possession of the leased premises as the grantee in a deed is the owner of the freehold, and in either case it is the duty of the grantor to place the grantee in possession of the property. It is not denied by the appellant O'Sullivan that by the terms of the lease in question he conveyed to appellee his right of possession of the property in controversy for the term specified in the lease; nor is it claimed that the lessor could not have required the appellant Brown to vacate the leased premises either by the summary remedy of a forcible detainer proceeding or by an action in ejectment; and, what the lessor as landlord might thus have done voluntarily in obtaining a delivery to the lessee of the possession of the property, he can by an action in equity, as here attempted, to which he and the former tenant are made parties, be compelled to do in furtherance of the obligation imposed upon him by the terms of the lease. | A "lease" is a conveyance of an estate in realty and divests the owner for a given time of a certain estate therein leaving in him the reversion. | Does a lease divest the owner of a certain estate for a given time leaving him in the reversion? | 021030.docx | LEGALEASE-00164969-LEGALEASE-00164970 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 10925 | People v. Mata, 217 Ill. 2d 535 | 284+21 | The Illinois Constitution provides, in pertinent part, that "[t]he Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper." Ill. Const.1970, art. V, " 12. In People ex rel. Madigan v. Snyder, 208 Ill.2d 457, 281 Ill.Dec. 581, 804 N.E.2d 546 (2004), this court examined the Governor's constitutional authority to commute sentences and concluded that the Governor's power in this regard is extremely broad. People ex rel. Madigan, 208 Ill.2d at 473, 281 Ill.Dec. 581, 804 N.E.2d 546. The clemency power granted by the Illinois Constitution is not subject to control by the courts or the legislature, but can be controlled only by the Governor's conscience and sense of public duty. People ex rel. Madigan, 208 Ill.2d at 473, 281 Ill.Dec. 581, 804 N.E.2d 546, quoting People ex rel. Smith v. Jenkins, 325 Ill. 372, 374, 156 N.E. 290 (1927). We concluded that the only recognized restriction on the clemency power is that the Governor may not change a defendant's conviction of one crime into a conviction of another. People ex rel. Madigan, 208 Ill.2d at 475, 281 Ill.Dec. 581, 804 N.E.2d 546. | The clemency power granted by the Illinois Constitution to the Governor is not subject to control by the courts or the legislature, but can be controlled only by the Governor's conscience and sense of public duty. S.H.A. Const. Art. 5, S 12. | Can the Governors clemency power be controlled by the legislature or the courts? | 021774.docx | LEGALEASE-00164923-LEGALEASE-00164924 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10926 | Gen. Elec. Co. v. Bucyrus-Erie Co., 563 F. Supp. 970 | 101+2052 | We are also unpersuaded that GEC's derivative standing is undermined by itsprayer for money damages for itself and not for Ruston. Usually, damages won in a derivative suit do accrue to the corporation on whose behalf the action was brought. See e.g., Ross v. Bernhard, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). However, failure to pray for the proper relief is not fatal to the validity of a complaint, since the court, if judgment is entered, is capable of fashioning the correct relief. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959); New AmsterdamCasualty Co. v. Waller, 323 F.2d 20, 24-25 (4th Cir.1963), cert. denied, 376 U.S. 963, 84 S.Ct.1124, 11 L.Ed.2d 981 (1964). Further, although we need not decide now whether such anapproach would make sense in our case, there is ample precedent for distributing damages won in a derivative suit directly to deserving shareholders. E.g., Perlman v. Feldmann, 219 F.2d 173, 178 (2d Cir.1955). See generally, Gordon v. Fundamental Investors, Inc., 362 F.Supp. 41, (S.D.N.Y.1973); Note, "Individual Pro Rata Recovery in Stockholders' Derivative Suits," 69 Harv.L.Rev., 1314 (1956). Finally, we note that GEC has prayed for "such other and furtherrelief as may be just and proper." Obviously this prayer would be consistent with our ordering damages paid to Ruston directly, should that appear appropriate. | Where corporate shareholder in its complaint prays for money damages for itself and not for corporation in which it holds shares, any failure to pray for proper relief is not fatal to validity of complaint since court, if judgment is entered, is capable of fashioning correct relief. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A. | Is the failure to pray for the proper relief fatal to a complaint? | Pleading - Memo 659 - RMM_68614.docx | ROSS-003280597-ROSS-003280598 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 10927 | Ex parte Arenivas, 6 S.W.3d 631 | 135H+1 | Although Appellee has not been punished a second time, the Double Jeopardy Clause protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being twice put in jeopardy for such punishment. Witte v. U.S., 515 U.S. 389, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995). Thus, the Double Jeopardy Clause "prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." Id.,quoting Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). | Double jeopardy clause protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being twice put in jeopardy for such punishment. | Can a criminal defendant be put in jeopardy twice for the same offense? | 041028.docx | LEGALEASE-00164395-LEGALEASE-00164396 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10928 | Missisippi Dept. of Human Services v. Guidry, 830 So. 2d 628 | 307A+583 | "[T]he power to dismiss an action for want of prosecution is part of a trial court's inherent authority." Am. Tel. & Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 180 (Miss.1998) (quoting Wallace v. Jones, 572 So.2d 371, 375 (Miss.1990)). This power is "a means necessary to the orderly expedition of justice and the court's control of its own docket." Id. (quoting Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986)) (citing Link v. Wabash R.R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). | Power to dismiss action for want of prosecution is part of trial court's inherent authority. | Is the power to dismiss action for want of prosecution a part of trial court's inherent authority? | 041080.docx | LEGALEASE-00164595- LEGALEASE-00164596 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 10929 | Veteto v. Swanson Servs. Corp., 886 So. 2d 756 | 307A+583 | A dismissal for want of prosecution " "is a matter within the discretion of the trial court, and its judgment will be reversed on appeal only if there is an abuse of that discretion." "Feagin, supra, 837 So.2d at 860 (quoting M.J.F. v. J.W., 680 So.2d 302, 303 (Ala.Civ.App.1996)). This Court has held likewise in a number of cases, observing that a trial court has the inherent power to dismiss a cause for a want of prosecution and that the dismissal will be reversed only if it is shown that the trial court exceeded its discretion in dismissing the cause. Riddlesprigger v. Ervin, 519 So.2d 486 (Ala.1987); and Burdeshaw v. White, 585 So.2d 842 (Ala.1991). We conclude that the trial judge did not exceed his discretion in dismissing Veteto's claims against Swanson for want of prosecution at the scheduled trial date, given the state of the record at that time. | A dismissal for want of prosecution is a matter within the discretion of the trial court, and its judgment will be reversed on appeal only if there is an abuse of that discretion. | Does a dismissal for want of prosecution a matter within the discretion of the trial court? | 041108.docx | LEGALEASE-00164941- LEGALEASE-00164942 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10930 | Hillsborough Cty. v. Kortum, 585 So. 2d 1029 | 371+2311 | When a road right-of-way easement encumbers the property, the owners of the realty still are responsible for the property taxes. Groff v. Moses, 344 So.2d 951, 952 (Fla. 2d DCA 1977). "[T]he levy and assessment is on the realty itself, at its full cash value, regardless of the existence of estates in it." Bancroft Inv. Corp. v. City of Jacksonville, 157 Fla. 546, 27 So.2d 162, 167 (1946) (citing Wolfson v. Heins, 149 Fla. 499, 6 So.2d 858 (1942)). "[A]n easement will not per se reduce the assessment value of land simply because the owner has been divested of some proprietary interest ... [but is] one factor among many the assessor must consider in determining the just value of the property to be taxed." | When road right-of-way easement encumbers property, owners of realty still are responsible for property taxes. | "When a road right-of-way easement encumbers property, are owners of realty still responsible for property taxes?" | 046466.docx | LEGALEASE-00164651- LEGALEASE-00164652 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 10931 | Utah State Ret. Office v. Salt Lake Cty., 780 P.2d 813 | 371+2315 | Article XIII, section 2 of the Utah Constitution and Utah Code Ann. " 59-2-1 exempt from taxation property of the state, school districts, public libraries, counties, cities, towns, special districts, and all other political subdivisions of the state. In Springville v. Johnson, 10 Utah 351, 37 P. 577 (1894), this Court held that the exemption from taxes for property owned by a governmental entity is based solely upon the ownership of the property and not upon its use. Therefore, real estate owned by the state or any of its political subdivisions is exempt from ad valorem property taxes. | Real estate owned by state or any of its political subdivisions is exempt from ad valorem property taxes. Const. Art. 13, S 2. | Is a real estate owned by state or any of its political subdivisions exempt from ad valorem property taxes? | 046468.docx | LEGALEASE-00164671- LEGALEASE-00164672 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10932 | Abbott v. State, 190 Md. App. 595 | 3.77E+18 | Of import here, "[a] threat may be considered a "true threat" even if it is premised on a contingency." United States v. Bellrichard, 994 F.2d 1318, 1322 (8th Cir.), cert. denied, 510 U.S. 928, 114 S.Ct. 337, 126 L.Ed.2d 282 (1993); see United States v. Kosma, 951 F.2d 549, 554 n. 8 (3d Cir.1991) (recognizing that conditional threats could still be considered "true threats"); Dysart, 705 F.2d at 1256 (" "A statement may constitute a threat even though it is subject to a possible contingency in the maker's control" ") (quoting trial court's jury instructions with approval). Cf. Moosavi, 355 Md. at 664, 736 A.2d 285 (construing former Art. 27, " 9, which provided that "a person may not threaten ... to: (1) Set fire to or burn a structure," and stating that the statute "does not look to the truth or falsity of the statement; rather, it punishes statements which constitute communicated intentions to do harm"). Nor is the government required to prove the present ability or intent to carry out the threat. Roberts, 915 F.2d at 890; Dysart, 705 F.2d at 1256; see United States v. Armel, 585 F.3d 182, 185 (4th Cir.2009) ("defendant's inability to carry out specific threats does not render them unthreatening or harmless"). Moreover, the statement may be a threat even if it was never communicated to the intended recipient. 2 L. Sand,et al., Modern Federal Jury Instructions"Criminal, " 31"4 (2009) ( "MFJI"). Nor must the intended recipient testify at a later trial. See Roberts, 915 F.2d at 891 ("While a relevant consideration is whether "an ordinary reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury," [United States v.] Maisonet, 484 F.2d [1356, 1358 (4th Cir.1973), cert. denied, 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974) ], there is no requirement that the actual recipient testify.") | A threat may be considered a true threat, for purposes of threatening to injure a State official, even if it is premised on a contingency. West's Ann.Md.Code, Criminal Law, S 3-708. | Can a threat be considered a true threat for purposes of threatening to injure a state official even if it is premised on a contingency? | 047049.docx | LEGALEASE-00164583- LEGALEASE-00164584 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 10933 | Allen v. Phinney Oil Co., 241 S.C. 173 | 92+2528 | In determining jurisdictional questions, the basic purpose of the Workmen's Compensation Act is inclusion of employers and employees within its coverage and not their exclusion, and doubts of jurisdiction will be resolved in favor of inclusion rather than exclusion. See also Adams v. Davison-Paxon Company, 230 S.C. 532, 96 S.E.2d 566. However, the Courts are without authority to enlarge the meaning of the terms of the act or to extend by construction its scope so as to include persons not embraced by its terms, and one who seeks to avail himself of the act must come within its terms. McDowell v. Stilley Plywood Company et al., 210 S.C. 173, 41 S.E.2d 872. | Courts may not enlarge meaning of terms of Workmen's Compensation Act or extend by construction its scope so as to include persons not embraced by its terms. | "In workmens compensation, may the courts enlarge the meaning of the terms in the law?" | Workers Compensation - Memo 765 - C - ANC.docx | LEGALEASE-00054837- LEGALEASE-00054838 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10934 | Baldwin v. Wrecking Corp. of Am., 464 F. Supp. 185 | 413+203 | This court has no difficulty in finding that the clear language of Section 65.1-106, taken in conjunction with Sections 65.1-103, 104, and 105, demands that Every employer insure the compensation of employees; the mere fact that plaintiff had a statutory employer who has complied with the Act does not excuse a subcontractor employer from its duty to secure insurance. The court finds that this conclusion is buttressed by Section 65.1-9, which states that "(n)othing in this Act shall be construed to relieve Any employer . . . from penalty for failure or neglect to perform any statutory duty." Va.Code Ann. s 65.1-9 (Repl.Vol.1973). (Emphasis added.) The Act plainly directs Every employer to insure compensation payments and penalizes Any employer who fails to do so. Such strong statutory language indicates a Virginia legislative policy decision that all employers subject to the Act must comply with the insurance requirements, and it is beyond the pale of this court's authority to question the wisdom of the Act or deviate from its unambiguous language. | Under Virginia law, mere fact that employee had statutory employer, a general contractor, who complied with Workmen's Compensation Act did not excuse subcontractor employer from its duty to secure insurance. Code Va.1950, SS 65.1-103 to 65.1-106. | Does the Act demand that every employer insure the compensation of its employees? | 048789.docx | LEGALEASE-00164341-LEGALEASE-00164342 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 10935 | United States v. Feldman, 879 F. Supp. 2d 231 | 135H+59 | The protections provided by the Double Jeopardy Clause do not "alter the fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy." Id. at 393, 95 S.Ct. at 1065. As jeopardy does not attach until a defendant is put before the trier of fact, the constitutional prohibitions cannot be applied to judicial proceedings where no prosecution occurs. Id. at 389, 95 S.Ct. at 1063 (holding that jeopardy did not attach when the judge dismissed indictment because case was not put to fact finder and court did not make determination of guilt); United States v. Dionisio, 503 F.3d 78, 79 (2d Cir.2007) (holding that in order for a pre-trial dismissal to trigger the protections of the Double Jeopardy Clause, there must be an adjudication of elements of the offense charged, in a way that reflected a genuine risk of conviction). | As jeopardy does not attach until a defendant is put before the trier of fact, the constitutional prohibitions against double jeopardy cannot be applied to judicial proceedings where no prosecution occurs. U.S.C.A. Const.Amend. 5. | When will the constitutional prohibitions against double jeopardy not be applied to judicial proceedings? | Double Jeopardy - Memo 1018 - C - KG_67634.docx | ROSS-003283398-ROSS-003283399 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 10936 | St. John v. State, 529 N.E.2d 371 | 135H+30 | Double jeopardy principles are not invoked under the circumstances of this case. Indiana courts have recognized that sentence enhancements based on prior criminal convictions do not constitute multiple punishment in violation of the double jeopardy clause. Wise v. State (1980), 278 Ind. 498, 400 N.E.2d 114, 117; Finney v. State (1986), Ind.App., 491 N.E.2d 1029, 1032. In addition, the record reveals that the trial court based the enhancement on three aggravating factors: (1) that St. John was on probation at the time of the second offense, (2) that St. John might commit another crime, and (3) that suspension of the sentence would depreciate the seriousness of the offense. Any one of these factors could serve as the basis for sentence enhancement. Thus, St. John sentence was not improperly enhanced. Neither his 1978 or 1980 sentences violate double jeopardy principles. Thus, the trial court did not err in denying St. John petition for post-conviction relief. | Sentence enhancements based on prior criminal convictions do not invoke principles of double jeopardy and do not constitute multiple punishment in violation of double jeopardy clause. U.S.C.A. Const.Amend. 5. | Do enhancement allegations based on defendant prior convictions constitute double jeopardy? | 014948.docx | LEGALEASE-00165481-LEGALEASE-00165482 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10937 | Harrison v. Gillespie, 640 F.3d 888 | 135H+100.1 | Thus, in a jury trial, an "acquittal," whether express or implied, occurs only when the jury renders a verdict as to all or some of the charges against a defendant. Accordingly, since acquittals are the "touchstone for double-jeopardy protection in capital-sentencing proceedings," Sattazahn, 537 U.S. at 109, 123 S.Ct. 732, then jury verdicts are an essential element in finding double jeopardy as well. " "[A] jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered." " United States v. Nelson, 692 F.2d 83, 84"85 (9th Cir.1982) (quoting United States v. Taylor, 507 F.2d 166, 168 (5th Cir.1975)); see also United States v. Rastelli, 870 F.2d 822, 834 (2d Cir.1989) (noting that this rule is "well established") (collecting cases). | Since acquittals are the touchstone for double-jeopardy protection in capital-sentencing proceedings, jury verdicts are an essential element in finding double jeopardy. U.S.C.A. Const.Amend. 5. | Are acquittals the touchstone for double-jeopardy protection in capital-sentencing proceedings? | 015626.docx | LEGALEASE-00166110-LEGALEASE-00166111 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 10938 | State v. Tabone, 292 Conn. 417 | 135H+1 | We begin our analysis by setting forth the legal principles that govern the resolution of the defendant's claim and the appropriate standard for our review. Our rules of practice permit "[t]he judicial authority [to] at any time correct an illegal sentence...." Practice Book " 43"22. "An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory"; (internal quotation marks omitted) State v. Tabone, supra, 279 Conn. at 534, 902 A.2d 1058; and, following a successful challenge to the legality of a sentence, the case may be remanded for resentencing. Id. | An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. U.S.C.A. Const.Amend. 5; C.G.S.A. Const. Art. 1, S 8; Practice Book 1998, S 43-22. | What is an illegal sentence? | 016013.docx | LEGALEASE-00165732-LEGALEASE-00165733 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 10939 | People v. Sienkiewicz, 208 Ill. 2d 1 | 135H+1 | The double jeopardy clause of the fifth amendment, made applicable to the states through the fourteenth amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amends. V, XIV. The same protection is afforded to the citizens of this state by the Illinois Constitution. See Ill. Const.1970, art. I, " 10. The prohibition against double jeopardy " "protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." " People v. Henry, 204 Ill.2d 267, 283, 273 Ill.Dec. 374, 789 N.E.2d 274 (2003), quoting People v. Placek, 184 Ill.2d 370, 376"77, 235 Ill.Dec. 44, 704 N.E.2d 393 (1998). | The prohibition against double jeopardy protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. U.S.C.A. Const.Amend. 5; S.H.A. Const. Art. 1, S 10. | Does the double jeopardy clause protect the defendant from a second prosecution after a conviction? | 016066.docx | LEGALEASE-00165813-LEGALEASE-00165814 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10940 | Llorens v. State, 520 S.W.3d 129 | 135H+1 | The "Double Jeopardy Clause protects criminal defendants from three things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense." Ex parte Milner, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013). "When a defendant is convicted of two or more crimes in a single trial, only the third of these protections is implicated." Duvall v. State, 59 S.W.3d 773, 777 (Tex. App."Austin 2001, pet. ref'd). "A double jeopardy claim based on multiple punishments arises when the State seeks to punish the same criminal act twice under two distinct statutes under circumstances in which the Legislature intended the conduct to be punished only once." Shelby v. State, 448 S.W.3d 431, 435 (Tex. Crim. App. 2014). "While double jeopardy precludes a defendant from being punished twice for the same offense, it does not prevent a second punishment for the same conduct." McCrary v. State, 327 S.W.3d 165, 178 (Tex. App."Texarkana 2010, no pet.). | The Double Jeopardy Clause protects criminal defendants from three things: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense; and when a defendant is convicted of two or more crimes in a single trial, only the third of these protections is implicated. U.S. Const. Amend. 5. | Does double jeopardy protect criminal defendants? | Double Jeopardy - Memo 702 - C - VA_67915.docx | ROSS-003295002-ROSS-003295003 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 10941 | Ex Parte Milner, 394 S.W.3d 502 | 135H+5.1 | The protections afforded by the Double Jeopardy Clause of the Fifth Amendment were extended to state criminal prosecutions through the Due Process Clause of the Fourteenth Amendment. The Double Jeopardy Clause protects criminal defendants from three things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense. When a double-jeopardy violation has occurred, a writ of habeas corpus is a proper venue through which to challenge the error. Here, applicant claims that his second conviction for Cause No. 2405 violates both the second and third protections; he was convicted in two separate criminal trials for a single violation of the same penal statute and was assessed two separate and cumulative terms of life imprisonment. Applicant asserts that the two convictions offend the prohibition against convicting a defendant "of more offenses than the legislature intended." | The Double Jeopardy Clause protects criminal defendants from three things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | Does double jeopardy protect criminal defendants? | 016084.docx | LEGALEASE-00165831-LEGALEASE-00165832 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 10942 | Garfias v. State, 424 S.W.3d 54 | 135H+134 | There are three types of double jeopardy claims: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.17 A multiple-punishments violation can arise either in the context of lesser-included offenses, where the same conduct is punished under a greater and a lesser-included offense, and when the same conduct is punished under two distinct statutes where the Legislature only intended for the conduct to be punished once. Garfias asserts that the latter has occurred in this case. | A multiple-punishments double jeopardy violation can arise either in the context of lesser-included offenses, where the same conduct is punished under a greater and a lesser-included offense, and when the same conduct is punished under two distinct statutes where the Legislature only intended for the conduct to be punished once. U.S.C.A. Const.Amend. 5. | What are the distinct types of double jeopardy claims? | 016092.docx | LEGALEASE-00165841-LEGALEASE-00165842 | SA, Sub | 0.41 | 0 | 0 | 1 | 1 | |
| 10943 | United States v. Deninno, 103 F.3d 82 | 135H+25 | United States v. Deninno, 103 F.3d 82. | Civil forfeiture does not constitute punishment for purposes of Fifth Amendment's prohibition on double jeopardy. U.S.C.A. Const.Amend. 5. | Does civil forfeiture not constitute punishment for purposes of a Fifth Amendment's prohibition on double jeopardy? | Double Jeopardy - Memo 747 - C - VP.docx | LEGALEASE-00055297-LEGALEASE-00055298 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 10944 | State v. Thomas, 124 So. 3d 1049 | 135H+1 | There is no doubt the double jeopardy issue had merit. Both the Fifth Amendment to the United States Constitution and Article 1, " 15 of the Louisiana Constitution guarantee that no person shall be twice placed in jeopardy for the same offense. In addition to the constitutional prohibition, the Louisiana Code of Criminal Procedure provides statutory protections from double jeopardy. Double jeopardy exists in a second trial when the charge in that trial is for the same offense for which defendant was in jeopardy in the first trial and acquitted. | Double jeopardy exists in a second trial when the charge in that trial is for the same offense for which defendant was in jeopardy in the first trial and acquitted. U.S.C.A. Const.Amend. 5. | Does double jeopardy exist in the second trial when the charge in that trial is for the same offense for which defendant was in jeopardy in the first trial and acquitted? | 016444.docx | LEGALEASE-00165239-LEGALEASE-00165240 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 10945 | State v. Schubert, 212 N.J. 295 | 135H+1 | An individual's right against being placed in jeopardy twice for the same offense is both a common law and a constitutional right. State v. Laird, 25 N.J. 298, 305, 135 A.2d 859 (1957). A core principal of " "the jurisprudence of England and America ... is that no man can be twice lawfully punished for the same offense." " Ibid. (quoting Ex parte Lange, 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872, 876 (1874)). The constitutional protection against double jeopardy is contained in both the Fifth Amendment to the United States Constitution and Article I, paragraph 11 of the New Jersey Constitution. | A core principal of the jurisprudence of England and America is that no man can be twice lawfully punished for the same offense. | Is the core principal of the jurisprudence of England and America that no man can be twice lawfully punished for the same offense? | 016467.docx | LEGALEASE-00165267-LEGALEASE-00165268 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 10946 | People v. Cross, 114 P.3d 1 | 135H+1 | The state and federal Double Jeopardy Clauses protect individuals against multiple punishments for the same offense. Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); Deutschendorf v. People, 920 P.2d 53 (Colo.1996). | State and federal Double Jeopardy Clauses protect individuals against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5; West's C.R.S.A. Const. Art. 2, S 18. | Does State and federal Double Jeopardy Clauses protect individuals against multiple punishments for the same offense? | Double Jeopardy - Memo 960 - C - SKG_67834.docx | ROSS-003305850-ROSS-003305851 | SA, Sub | 0.28 | 0 | 0 | 1 | 1 | |
| 10947 | In re Gateway Ethanol, 415 B.R. 486 | 349A+10 | When the bright line test is not satisfied, UCC " 1"201(37) requires the court to consider "the facts of each case." This consideration is guided by the fact that the drafters of amended UCC " 1"201(37) sought to "preserve common law principles," under which the "central feature of a true lease is the reservation of an economically meaningful interest to the lessor at the end of the lease term." | Under Illinois law, when the bright-line test for whether a transaction in the form of a lease creates a security interest is not satisfied, the court must consider "the facts of each case." S.H.A. 810 ILCS 5/1-201(37) (2005). | "When the bright-line test for whether a transaction in the form of a lease creates a security interest is not satisfied, should the court consider ""the facts of each case""?" | 042766.docx | LEGALEASE-00165936-LEGALEASE-00165937 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 10948 | State v. Kelley, 168 Wash. 2d 72 | 135H+30 | We hold that imposition of a firearm enhancement does not violate double jeopardy when an element of the underlying offense is use of a firearm. The decisions in Apprendi, Blakely, Ring, and Sattazahn do not alter the double jeopardy analysis. The Court of Appeals is affirmed. | The decisions in Apprendi, Blakely, Ring, and Sattazahn, allegedly requiring sentencing factors to be treated as elements under the Blockburger test for determining whether multiple punishments are for the same offense, did not alter the double jeopardy analysis that imposition of a firearm enhancement does not violate double jeopardy when an element of the underlying offense is use of a firearm. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, S 9. | Does imposition of a firearm enhancement violate double jeopardy when an element of the underlying offense is use of a firearm? | 014881.docx | LEGALEASE-00166236-LEGALEASE-00166237 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 10949 | People v. Barnum, 217 P.3d 908 | 135H+30 | Although the federal constitution's prohibition on double jeopardy does not apply to habitual criminal proceedings, the Colorado Constitution provides double jeopardy protection in such proceedings. People v. Valencia, 169 P.3d 212, 222 (Colo.App.2007) (citing Monge v. California, 524 U.S. 721, 727"28, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998), and People v. Quintana, 634 P.2d 413, 419 (Colo.1981)). | Although the Federal Constitution's prohibition on double jeopardy does not apply to habitual criminal proceedings, the Colorado Constitution provides double jeopardy protection in such proceedings. U.S.C.A. Const.Amend. 5; West's C.R.S.A. Const. Art. 2, S 18. | Does federal constitutional double jeopardy protections apply to habitual-criminal proceedings? | 014915.docx | LEGALEASE-00166210-LEGALEASE-00166211 | SA, Sub | 0.35 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10950 | State v. Mazique, 951 So. 2d 1182 | 135H+30 | The court took judicial notice of the records in the prior offenses. However, the State did not introduce those records into evidence at the hearing. While the trial court had the benefit of reviewing the plea agreement with its accompanying waiver of rights, as well as the record of Mazique's conviction, this Court does not have any such advantage. We are, thus, precluded from reviewing all of the evidence upon which the trial court based its determination that Mazique was a third felony offender. In the present case, Mazique contests not only his identification, but also alleges a violation of his constitutional rights in the prior plea agreement. The failure of the State to introduce those records, under the present circumstances, was error. We are, therefore, obliged to vacate Mazique's adjudication as an habitual offender as well as his enhanced sentence and remand the matter to the trial court.In so doing, we note that Mazique's original sentence has never been vacated and is still valid. In addition, in such cases a defendant can be retried on a multiple offender bill since double jeopardy does not attach to multiple offender hearings.] | A defendant can be retried on a multiple offender bill since double jeopardy does not attach to multiple offender hearings. U.S.C.A. Const.Amend. 5. | Can a defendant be retried on a multiple offender bill since double jeopardy does not attach to multiple offender hearings? | 014929.docx | LEGALEASE-00166196-LEGALEASE-00166197 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 10951 | Brock v. State, 955 N.E.2d 195 | 135H+95.1 | The constitutional protection against double jeopardy has several features. In this case, because the first trial ended in a mistrial, we deal with the defendant's "valued right to have his trial completed by a particular tribunal," Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949), which means that the defendant has a right to have his trial completed by the first jury impaneled to try him, Oregon v. Kennedy, 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Valued though this right may be, it "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Wade, 336 U.S. at 689, 69 S.Ct. 834; see also United States v. Jorn, 400 U.S. 470, 483"84, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion). Accordingly, unlike a trial that has ended with a judgment on the merits, declaration of a mistrial does not automatically bar retrial. Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). | Unlike a trial that has ended with a judgment on the merits, declaration of a mistrial does not automatically bar retrial. U.S.C.A. Const.Amend. 5. | "Unlike a trial that has ended with a judgment on the merits, does a declaration of a mistrial not automatically bar retrial?" | Double Jeopardy - Memo 501 - C - SN_68280.docx | ROSS-003278964-ROSS-003278965 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 10952 | State v. Akin, 484 S.W.3d 257 | 135H+1 | We begin by generally outlining the current state of the law concerning these doctrines. Double jeopardy and collateral estoppel are related, but distinct in terms of the relief they offer. Ex parte Watkins, 73 S.W.3d 264, 268 (Tex.Crim.App.2002). Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. State v. Stevens, 235 S.W.3d 736, 740 (Tex.Crim.App.2007). By contrast, double jeopardy is most commonly associated with forms of relief that bar the prosecution of a suit entirely.Ex parte Watkins, 73 S.W.3d at 268. Thus, double jeopardy most often bars any retrial of a criminal offense, while collateral estoppel bars any retrial of specific and discrete facts that have been fully and fairly adjudicated. Id. at 267. For this reason, double jeopardy is sometimes called "claim preclusion," while collateral estoppel is called "issue preclusion." | Double jeopardy is most commonly associated with forms of relief that bar the prosecution of a suit entirely. U.S. Const. Amend. 5. | Is Double jeopardy most commonly associated with forms of relief that bar the prosecution of a suit entirely? | 015958.docx | LEGALEASE-00166315-LEGALEASE-00166316 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 10953 | Magee v. State, 189 So. 3d 658 | 135H+1 | "The three primary purposes of the Double Jeopardy Clause are that (1) it protects against a second prosecution for the same offense after an acquittal, (2) it protects against a second prosecution for the same offense after a conviction, and (3) it protects against multiple punishments for the same offense." Rush, 749 So.2d at 1026 (8). But "Mississippi has long recognized that separate offenses, though committed under a common nucleus of operative fact, [do] not present a legal impediment to multiple prosecutions under the [D]ouble [J]eopardy [C]lause...." Johnston v. State, 172 So.3d 756, 759 (8) (Miss.Ct.App.2012) (citing Henley v. State, 749 So.2d 246, 249 (12) (Miss.Ct.App.1999)). | The three primary purposes of the double jeopardy clause are that (1) it protects against a second prosecution for the same offense after an acquittal, (2) it protects against a second prosecution for the same offense after a conviction, and (3) it protects against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | What are the three primary purposes of double jeopardy clause? | 015967.docx | LEGALEASE-00166324-LEGALEASE-00166326 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 10954 | State v. Velez, 829 N.W.2d 572 | 135H+1 | In contrast, the Federal Double Jeopardy Clause protects against three types of offenses: protection against a second prosecution after acquittal; protection against a second prosecution after conviction; and protection against multiple punishments for the same offense. Franzen, 495 N.W.2d at 716. | Federal Double Jeopardy Clause protects against a second prosecution after acquittal, a second prosecution after conviction, and multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | Does federal Double Jeopardy Clause protect against a second prosecution after acquittal? | 015986.docx | LEGALEASE-00166341-LEGALEASE-00166342 | Condensed, SA | 0.34 | 0 | 1 | 0 | 1 | |
| 10955 | State v. Picchini, 463 So. 2d 714 | 135H+5.1 | This constitutional safeguard against double jeopardy protects a defendant in a criminal proceeding from repeated prosecutions for the same offense, and it prevents repeated convictions and punishments for the same offense. C.Cr.P. Art. 591. State v. Simpson, supra. There are however, certain statutorily prescribed exceptions to the rule that a person shall not be twice put in jeopardy of life or liberty for the same offense. C.Cr.P. Arts. 591, 595. More particularly, where a mistrial is legally ordered under La.Code of Criminal Procedure Article 775, double jeopardy does not attach. | Constitutional safeguard against double jeopardy protects a defendant in a criminal proceeding from repeated prosecutions for the same offense, and prevents repeated convictions and punishments for the same offense. LSA-C.Cr.P. art. 591; U.S.C.A. Const.Amend. 5. | Is Double jeopardy constitutionally created safeguard for criminal proceedings? | 016007.docx | LEGALEASE-00166361-LEGALEASE-00166362 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10956 | OP Sols. v. Crowell & Moring, LLP, 72 A.D.3d 622 | 13+27(1) | It is well settled that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated" (Clark"Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 [1987]; see also New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 [1995] ). Here, in addition to the fraud cause of action not being pleaded with sufficient detail (CPLR 3016[b] ), plaintiff's causes of action for fraud and negligent misrepresentation are not separate and apart from its claim for breach of contract. The claims are predicated upon precisely the same purported wrongful conduct as is the claim for breach of contract inasmuch as they all involve defendant's disclosure of plaintiff's purported proprietary and confidential information to a consultant (see Greenman"Pedersen, Inc. v. Levine, 37 A.D.3d 250, 829 N.Y.S.2d 107 [2007] ). The claim for negligent misrepresentation is also defective in the absence of a special relationship of confidence and trust between the parties (cf. Fresh Direct v. Blue Martini Software, 7 A.D.3d 487, 489, 776 N.Y.S.2d 301 [2004] ). | A simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. | Is a simple breach of contract not to be considered a tort unless a legal duty independent of the contract itself has been violated? | Action - Memo 966 - C _1wXpkZ8C7LacahsxQ1I y76rn40lxcnr3_.docx | ROSS-000000057-ROSS-000000058 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 10957 | United States v. Schwimmer, 924 F.2d 443 | 63+14 | Schwimmer also argues that the court's instruction with regard to Local 810, that compensation must be disclosed in order to fall within section 1954's "bona fide" compensation exception, was erroneous. In the jury charge, the court defined "bona fide" to mean "in good faith or without deceit or fraud." Later, in response to a jury request for clarification of the law governing Schwimmer's commissions on Local 810's investment activities, the court instructed that a fiduciary must disclose the actual commission he is charging in order to qualify for the bona fide compensation exception. | Instruction, in prosecution of defendant for receiving illegal payments to influence operations of employee benefit plans, regarding "bona fide" compensation exception, defining bona fide to mean "in good faith or without deceit or fraud" and that fiduciary must disclose actual commission he is charging, was supported by the evidence; evidence indicated that plan defendant was advising did not know that defendant was receiving compensation from financial institutions, and statute was meant to reach defendant's intentional failure to inform trustees that he was extracting commission from placement of their investments. 18 U.S.C.A. S 1954. | Does the court correctly instruct the jury about bribery by defining bona fide to mean in good faith or without deceit or fraud? | 012585.docx | LEGALEASE-00167007-LEGALEASE-00167008 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 10958 | Ricci v. Chicago Mercantile Exch., 409 U.S. 289 | 83H+1 | As to the first, premise, the argument that the Commodity Exchange Act to some extent limits the applicability of the antitrust laws, and may limit them in this case, is plainly substantial. Repeal of the antitrust laws is not to be lightly assumed. United States v. Philadelphia National Bank, 374 U.S. 321, 350, 83 S.Ct. 1715, 1734, 10 L.Ed.2d 915 (1963); Silver v. New York Stock Exchange, supra, 373 U.S. at 357, 83 S.Ct. at 1257; California v. FPC, 369 U.S. 482, 485, 82 S.Ct. 901, 903, 8 L.Ed.2d 54 (1962); Georgia v. Pennsylvania R. Co., 324 U.S. 439, 456"457, 65 S.Ct. 716, 725"726, 89 L.Ed. 1051 (1945); United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939). But here the express will of Congress is that to deal in commodity futures one must either be, or deal through, a member of a board of trade having specified qualifications and carrying official designation as a contract market. The Act clearly contemplates a membership organization and hence the existence of criteria for the acquisition, transfer, and loss of membership.The Chicago Mercantile Exchange has such membership rules, and it had the statutory duty to enforce them to the extent that they constituted or were related to "trading requirements', 7 U.S.C. s 7a(8). If the transfer of Ricci's membership was pursuant to a valid rule, the immediate question for the antitrust court is whether the rule itself and Ricci's exclusion under it are insulated from antitrust attack. The question has substance, for the Commodity Exchange Act, like the Securities Exchange Act, contemplates that the Exchange and its members will "engage in restraints of trade which might well be unreasonable absent sanction" by the Act. Silver v. New York Stock Exchange, supra, 373 U.S., at 360, 83 S.Ct., at 1258. See Board of Trade of the City of Chicago v. United States, 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918). On the other hand, if, as Ricci alleges, loss of his membership was contrary to Exchange rules, the | Commodity Exchange Act contemplates membership organization and existence of criteria for acquisition, transfer, and loss of membership. Commodity Exchange Act, S 1 et seq. as amended 7 U.S.C.A. S 1 et seq. | "Does Commodity Exchange Act contemplate a membership organization and existence of criteria for acquisition, transfer, and loss of membership?" | 013609.docx | LEGALEASE-00167063-LEGALEASE-00167064 | Condensed, Order, SA, Sub | 0.91 | 1 | 1 | 1 | 1 | 1 |
| 10959 | Birenbaum v. Bache & Co., 555 S.W.2d 513 | 83+62.4 | Under this statute, the jurisdiction of the Commodities Futures Trading Commission over futures is exclusive, and the Securities and Exchange Commission and state securities agencies are precluded from regulating commodity futures accounts. State v. Monex International Ltd., 527 S.W.2d 804, 806 (Tex.Civ.App. Eastland 1975, writ ref'd); (1975) I Bromberg, Securities Fraud at 82.142; Bromberg, Commodities Law and Securities Law Overlaps and Pre-emptions, 1 J.Corp.L. 217, 303 (1976). | Under section of Commodity Exchange Act, Jurisdiction of Commodity Futures Trading Commission over futures is exclusive, and Securities and Exchange Commission and state securities agencies are precluded from regulating commodity futures accounts. Commodity Exchange Act, SS 1-10, 2(a) as amended 7 U.S.C.A. SS 1-17, 2. | What government agency has the exclusive jurisdiction to regulate commodity futures accounts? | 013652.docx | LEGALEASE-00166995-LEGALEASE-00166996 | SA, Sub | 0.34 | 0 | 0 | 1 | 1 | |
| 10960 | United States v. 817 N.E. 29th Drive, Wilton Manors, Fla., 175 F.3d 1304 | 135H+25 | In addition to his Eighth Amendment argument, Howerin also argues that the forfeiture action violated the Double Jeopardy Clause of the Fifth Amendment because of his previous trial for the drug offenses in state court. The Fifth Amendment, however, does not bar two prosecutions for the same conduct by separate sovereigns"in this case, the State of Florida and the United States.13 See Heath v. Alabama, 474 U.S. 82, 88"89, 106 S.Ct. 433, 437"38, 88 L.Ed.2d 387 (1985). Furthermore, despite holding that civil forfeitures can be punitive for Eighth Amendment purposes, the Supreme Court continues to hold to the view that civil in rem forfeiture actions are nonpunitive for Fifth Amendment purposes; therefore, a forfeiture action cannot serve as the basis for a claim under the Double Jeopardy Clause. See United States v. Ursery, 518 U.S. 267, 287, 116 S.Ct. 2135, 2147, 135 L.Ed.2d 549 (1996); see also Bajakajian, 524 U.S. at """", 118 S.Ct. at 2035 (reaffirming Ursery ). Consequently, Howerin's Fifth Amendment claim fails. | Civil in rem forfeiture action cannot serve as basis for claim under double jeopardy clause. U.S.C.A. Const.Amend. 5. | Can a civil in rem forfeiture action serve as a basis for a claim under a double jeopardy clause? | 015720.docx | LEGALEASE-00166441-LEGALEASE-00166442 | Condensed, Order, SA | 0.89 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10961 | Lukkason v. 1993 Chevrolet Extended Cab Pickup, 590 N.W.2d 803 | 135H+25 | Finally, Lukkason argues that forfeiture of his vehicle is equivalent to an $11,534.923 criminal penalty, which violates both the Double Jeopardy and Excessive Fines Clauses of the Minnesota and United States Constitutions. Constitutional analysis of civil forfeiture under the Double Jeopardy Clause is separate and distinct from that under the Excessive Fines Clause. Ursery, 518 U.S. at 286"87, 116 S.Ct. at 2146"47.4 To determine whether a civil forfeiture constitutes "punishment" for double jeopardy purposes, courts follow the two-step test articulated in Ursery, 518 U.S. at 288, 116 S.Ct. at 2147. Under that test, courts must first examine the governing statute to determine whether forfeiture was intended to be, or by its nature, necessarily is, criminal and punitive rather than civil and remedial. Id. If the legislature designates forfeiture as civil, the court presumes that forfeiture does not implicate double jeopardy concerns. Id. at 289 n. 3, 116 S.Ct. at 2148 n. 3. The Supreme Court next requires a showing by the "clearest proof" that a forfeiture under the statutory scheme is so punitive in form and effect as to render it criminal. Id. at 290, 116 S.Ct. at 2148. | If the legislature designates forfeiture as civil, the court presumes that forfeiture does not implicate double jeopardy concerns. U.S.C.A. Const.Amend. 5. | "If the legislature designates forfeiture as civil, does the court presume that forfeiture does not implicate double jeopardy concerns?" | Double Jeopardy - Memo 528 - C - DHA_68307.docx | ROSS-003293803-ROSS-003293804 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 10962 | Farrell v. State, 364 Md. 499 | 135H+100.1 | In holding that an intentionally rendered verdict of "not guilty" is final and precludes, under Maryland common law, any further prosecution for the same offense, this Court in Pugh v. State, supra, 271 Md. at 705, 319 A.2d at 544, stated: "From the earliest days, it has been clear that once a verdict of not guilty has been rendered at the conclusion of a criminal trial, that verdict is final and cannot be set aside. Any attempt to do so by the prosecutor is barred by what at common law was the plea of autrefois acquit. Thus, in State v. Shields, 49 Md. 301, 303 (1878), our predecessors declined to construe a statute as permitting the State to appeal a verdict of acquittal, saying: "It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor be set aside." | An intentionally rendered verdict of not guilty is final and precludes, under common law, any further prosecution for the same offense. | "Is an intentionally rendered verdict of not guilty final and precludes, under common law, any further prosecution for the same offense?" | Double Jeopardy - Memo 545 - C - KG_68324.docx | ROSS-003283353-ROSS-003283354 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10963 | People v. Dawson, 431 Mich. 234 | 135H+95.1 | The double jeopardy provisions of the Michigan and federal constitutions protect an accused from being twice put in jeopardy for the same offense. "Being twice put in jeopardy" includes being subjected to a retrial after the initial prosecution ends in a mistrial. An exception to the double jeopardy bar has been made, and retrials allowed, where the prosecutorial or judicial errors requiring the mistrial appear to have been innocent or were beyond the prosecutor's control. | Being twice put in jeopardy includes being subjected to retrial after initial prosecution ends in mistrial. U.S.C.A. Const.Amend. 5; M.C.L.A. Const. Art. 1, S 15. | Does being twice put in jeopardy include being subjected to a retrial after initial prosecution ends in mistrial? | 015776.docx | LEGALEASE-00166496-LEGALEASE-00166497 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 10964 | Bravo-Fernandez v. United States, 137 S. Ct. 352 | 135H+100.1 | The doctrine of claim preclusion instructs that a final judgment on the merits "forecloses successive litigation of the very same claim." New Hampshire v. Maine, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 2001; see Restatement Second of Judgments 19, p. 161 1980 hereinafter Restatement. So instructing, the doctrine serves to "avoid multiple suits on identical entitlements or obligations between the same parties." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure 4402, p. 9 2d ed. 2002 hereinafter Wright & Miller. Long operative in civil litigation, Restatement, at 2, claim preclusion is also essential to the Constitution prohibition against successive criminal prosecutions. No person, the Double Jeopardy Clause states, shall be "subject for the same offense to be twice put in jeopardy of life or limb." Amdt. 5. The Clause "protects against a second prosecution for the same offense after conviction"; as well, "it protects against a second prosecution for the same offense after acquittal." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). "A verdict of acquittal in our justice system is final," the last word on a criminal charge, and therefore operates as "a bar to a subsequent prosecution for the same offense." Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). | A verdict of acquittal is final, the last word on a criminal charge, and therefore operates as a bar under the Double Jeopardy Clause to a subsequent prosecution for the same offense. U.S.C.A. Const.Amend. 5. | Is a verdict of acquittal final and the last word on a criminal charge? | 015861.docx | LEGALEASE-00166667-LEGALEASE-00166668 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 10965 | In re Greenville Auto Mall, 278 B.R. 414 | 349A+10 | Under the revised definition of "security interest," the primary focus is on the economic realities of the transaction rather than the intent of the parties. In Banterra Bank v. Subway Equipment Leasing Corporation (In re Taylor), 209 B.R. 482 (Bankr.S.D.Ill., 1997), the Illinois definition of "security interest" was applied by a bankruptcy court which found as follows: Under this approach, the lease will be construed as a security interest as a matter of law if the debtor cannot terminate the lease and one of the enumerated requirements [i.e., " 1"201(37)(b)(i), (ii), (iii), or (iv) ] is satisfied. (citation omitted) If the court determines that the transaction is not a disguised security agreement per se, it must then look at the specific facts of the case to determine whether the "economics of the transaction" suggest such a result. | Under Illinois' revised definition of security interest, the primary focus is on the economic realities of the transaction rather than the intent of the parties. S.H.A. 810 ILCS 5/1-201(37). | When is the primary focus on the economic realities of the transaction rather than the intent of the parties? | Secured Transactions - Memo 102 - C - SHB_68735.docx | ROSS-003295240-ROSS-003295241 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 10966 | State v. City of Hudson, 231 Minn. 127 | 371+2275 | Exemption from taxation of privately owned property is a public grant in the nature of a favor justifiable upon grounds of public policy. Immunity from taxation is an attribute of sovereignty, and, because such is its nature, it is presumed that the sovereign would not tax itself. As held in Foster v. City of Duluth, 120 Minn. 484, 140 N.W. 129, 48 L.R.A., N.S., 707, there is a clear distinction between Exemption and Immunity, in that Exemption from taxation involves the supposition that the property so exempted otherwise would be subject to taxation, and Immunity from taxation involves the thought that, absent a constitutional or statutory provision for exemption, the property would not be subject to taxation because of its public nature. | There is a distinction between "exemption" and "immunity" from taxation in that "exemption" involves supposition that property so exempted otherwise would be subject to taxation, and "immunity" involves the idea that, absent a constitutional or statutory provision, property would not be subject to taxation because of its public nature. | "What is the distinction between ""exemption"" and ""immunity"" from taxation?" | 046533.docx | LEGALEASE-00166765-LEGALEASE-00166766 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10967 | Baldwin Union Free Sch. Dist. v. County of Nassau, 9 N.E.3d 351 | 371+2016 | Indeed, "[t]he power of taxation, being a State function, the delegation of any part of that power to a subdivision of the State must be made in express terms," and the delegation of any form of taxation authority "cannot be inferred" (County Sec., 278 N.Y. at 37, 15 N.E.2d 179). So, too, " "[t]he authority of a municipality to abrogate State law is never implied or inferred," " but rather arises only from an " "express grant, never from a general grant of power" " by the State (County of Westchester, 282 N.Y. at 232, 26 N.E.2d 27, quoting Jewish Consumptives' Relief Socy. v. Town of Woodbury, 230 A.D. 228, 234, 243 N.Y.S. 686 [2d Dept.1930] ; see Matter of Kress & Co. v. Department of Health, 283 N.Y. 55, 60, 27 N.E.2d 431 [1940] ). | Delegation to a subdivision of the state of any part of state's power of taxation must be made in express terms and cannot be inferred. McKinney's Const. Art. 16, S 1. | Should the delegation to a subdivision of the state of any part of state's power of taxation be made in express terms? | 046552.docx | LEGALEASE-00166516-LEGALEASE-00166517 | Condensed, Order, SA | 0.78 | 1 | 1 | 0 | 1 | 1 |
| 10968 | City of Harrisburg v. Sch. Dist. of City of Harrisburg, 675 A.2d 758 | 371+2016 | The fact that a particular tax is not mentioned in section 2 of the LTEA does not automatically negate a taxing authority's power to impose such a tax. F.J. Busse Co. v. City of Pittsburgh, 443 Pa. 349, 279 A.2d 14 (1971). However, where the General Assembly delegates the right to tax, the grant of such right is to be strictly construed, and not extended by implication. Hanek v. Cities of Clairton, 24 Pa.Cmwlth. 69, 354 A.2d 35 (1976). | If General Assembly delegates right to tax, grant of such right is to be strictly construed, and not extended by implication. | Is the grant of right to tax delegated by the General Assembly strictly construed or extended by implication? | Taxation - Memo 1323 - C - AD_68517.docx | ROSS-003279815-ROSS-003279816 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 10969 | Joe Hatton v. Conner, 240 So. 2d 145 | 371+2016 | It is contended that since assessments under the Marketing Order are considered to be taxes under our decision in Conner v. Joe Hatton, Inc., 203 So.2d 154 (Fla.1967), the Legislature has unconstitutionally delegated its power to tax to the Commissioner of Agriculture. We disagree. The legislative power to tax may be exercised through subordinate governmental agencies within definite limitations fixed by law. Stewart v. Daytona & New Smyrna Inlet Dist., 94 Fla. 859, 114 So. 545 (1927). | Legislative power to tax may be exercised through subordinate governmental agencies within definite limitations fixed by law. | Should the Legislative power to tax be exercised through subordinate governmental agencies? | 046624.docx | LEGALEASE-00166807-LEGALEASE-00166808 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 10970 | Merrill Lynch, Pierce, Fenner & Smith v. Chem. Bank, 57 N.Y.2d 439 | 172H+622 | Our analysis may well begin with the observation that section 3"405 (subd. [1], par. [c] ) bespeaks an exception to the general rule governing the responsibility of a bank to its customers. For it is basic that ordinarily a drawee bank may not debit its customer's account when it pays a check over a forged indorsement. This is because the underlying relationship between a bank and its depositor is the contractual one of debtor and creditor(Brigham v. McCabe, 20 N.Y.2d 525, 285 N.Y.S.2d 294, 232 N.E.2d 327), implicit in which is the understanding that the bank will pay out is customer's funds only in accordance with the latter's instructions (Tonelli v. Chase Manhattan Bank, N.A., 41 N.Y.2d 667, 670, 394 N.Y.S.2d 858, 363 N.E.2d 564). Thus, absent contrary instruction or legislative exception, when a drawer issues a check in the name of a particular payee, the drawee bank is to apply funds from the drawer's account to its payment only upon receiving the payee's authorized indorsement. In this perspective, a forged indorsement, since it is an unauthorized signature (Uniform Commercial Code, " 1"201, subd. [43]), in and by itself would be "wholly inoperative" (Uniform Commercial Code, " 3"404, subd. [1] ). | Ordinarily, drawee bank may not debit its customer's account when it pays check over forged indorsement because underlying relationship between bank and its depositor is contractual one of debtor and creditor, implicit in which is understanding that bank will pay out its customer's funds only in accordance with customer's instructions. McKinney's Uniform Commercial Code S 3-405(1)(c). | Is the relationship between a bank and its depositor one of a debtor- creditor? | 03627.docx | LEGALEASE-00077157-LEGALEASE-00077160 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 10971 | Gilbride v. Trunnelle, 620 N.W.2d 244 | 21+1 | In its ruling granting the motion for partial summary judgment, the district court noted that Hudson stated at the hearing that all of the defendants, including the appellants, had agreed to the settlement. Hudson's statement to the court was a professional statement. A professional statement "means a statement of fact presented to the court by an attorney in connection with a matter then before such court, verified in effect by the oath of such attorney, and designed or calculated to aid or influence the court in the determination of a given cause or issue."State v. Williams, 315 N.W.2d 45, 53 (Iowa 1982) (quoting Cogley v. Hy"Vee Food Stores, Inc., 257 Iowa 1381, 1386"87, 137 N.W.2d 310, 313 (1965)). | "Professional statement" is statement of fact presented to the court by an attorney in connection with a matter then before such court, verified in effect by the oath of such attorney, and designed or calculated to aid or influence the court in the determination of a given cause or issue. | How is a professional statement defined? | 07313.docx | LEGALEASE-00077637-LEGALEASE-00077638 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 10972 | Williams v. Dan River Mills, 286 Ala. 703 | 21+18 | Where it appears from the face of an affidavit that the affiant had no personal knowledge of the matters to which he deposed and that he must have secured his information concerning those matters from others, then the affidavit is based on hearsay and should not be admitted. | Where it appears from face of affidavit that affiant had no personal knowledge of matters to which he deposed and that he must have secured his information concerning those matters from others, then affidavit is based on hearsay and should not be admitted. | Can the contents of an affidavit become inadmissible hearsay in the absence of allegation of personal knowledge? | 03743.docx | LEGALEASE-00078285-LEGALEASE-00078286 | SA, Sub | 0.07 | 0 | 0 | 1 | 1 | |
| 10973 | Kuehner v. Dickinson & Co., 84 F.3d 316 | 25T+113 | The FAA provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. The FAA not only reversed the judicial hostility to the enforcement of arbitration contracts, but also created a rule of contract construction favoring arbitration. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24"25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (FAA manifests a "liberal federal policy favoring arbitration agreements"); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941"42, 74 L.Ed.2d 765 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). | Federal Arbitration Act (FAA) not only reversed judicial hostility to enforcement of arbitration contracts, but also created rule of contract construction favoring arbitration. 9 U.S.C.A. S 1 et seq. | Did the Federal Arbitration Act (FAA) reverse judicial hostility to arbitration agreements? | 06658.docx | LEGALEASE-00080932-LEGALEASE-00080933 | Order, SA | 0.78 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10974 | People v. Burke, 400 Ill. 24 | 207+6 | The last contention of plaintiff in error is that the indictment fails to describe the act committed, and fails to allege the address where the incest took place. Section 156 of division 1 of the Criminal Code (Ill.Rev.Stat.1945, chap. 38, par. 374), defining the crime of incest of father with daughter, provides as follows: "If a father shall rudely and licentiously cohabit with his own daughter, the father shall be imprisoned in the penitentiary for a term of not less than one year and not exceeding twenty years." Count 1 of the indictment here complained of recites that on May 6, 1943, in the county of Cook, in the State of Illinois, Victor Burke, father of Dorothy Burke, did "unlawfully, feloniously, rudely and licentiously cohabit with and have carnal knowledge of the body of said Dorothy Burke," etc. Count 2 describes the crime in the same language except the words "and have carnal knowledge of the body of the said" were omitted therefrom. Plaintiff in error seeks to invoke the rule followed by this court in People v. Rice, 383 Ill. 584, 50 N.E.2d 711, People v. Green, 368 Ill. 242, 13 N.E.2d 278, 115 A.L.R. 348, and Johnson v. People, 113 Ill. 99, wherein we held that where language of a statute creating a new offense does not describe the act or acts constituting such offense, an indictment under the statute is bound to set them forth specifically. The indictment here charges plaintiff in error with having "cohabited" with his daughter, and with having "carnal knowledge" of her body. The term "cohabit" is defined as living together as man and wife within a common dwelling. When used in connection with a charge of incest it has been construed to mean living together as man and wife, and to mean any sexual intercourse, whether within a common dwelling or elsewhere. Simon v. State, 32 Tex.Cr.R. 186, 20 S.W. 399, 716, 37 Am.St.Rep. 802, State v. Spurling, 115 La. 789, 40 So. 167. The term "carnal knowledge" has, from early times in law, as in common speech, | The term "cohabit," when used in connection with charge of incest, means living together as man and wife and any sexual intercourse, whether within common dwelling or elsewhere. S.H.A. ch. 38, S 374. | What is cohabitation under incest laws? | 15012.docx | LEGALEASE-00083525-LEGALEASE-00083527 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 10975 | Citizens State Bank v. Raven Trading Partners, 786 N.W.2d 274 | 366+1 | Under equitable subrogation, when a person has discharged the debt of another with respect to real property, that person may, "when justice requires, ... be substituted in place of a prior encumbrancer and treated as an equitable assignee of the lien." First Nat'l Bank of Menahga v. Schunk, 201 Minn. 359, 363, 276 N.W. 290, 292"93 (1937). In other words, that person may be substituted to the rights and position of the prior creditor. "Although [equitable] subrogation is a highly favored doctrine, it is not an absolute right, but rather, one that depends on the equities and attending facts and circumstances of each case." Universal Title Ins. Co. v. United States, 942 F.2d 1311, 1315 (8th Cir.1991); accord Am. Sur. Co. v. State Farm Mut. Auto. Ins. Co., 274 Minn. 81, 85, 142 N.W.2d 304, 307 (1966). Equitable subrogation will not be applied when the parties' equities are equal or rights are unclear. S. Sur. Co. v. Tessum, 178 Minn. 495, 502, 228 N.W. 326, 329 (1929). We have also said that equitable subrogation "will be applied in the interest of substantial justice ... where one party has provided funds used to discharge another's obligations if (a) the party seeking subrogation has acted under a justifiable or excusable mistake of fact and (b) injury to innocent parties will otherwise result." Carl H. Peterson Co. v. Zero Estates, 261 N.W.2d 346, 348 (Minn.1977). | Although equitable subrogation is a highly favored doctrine, it is not an absolute right, but rather, one that depends on the equities and attending facts and circumstances of each case; equitable subrogation will not be applied when the parties' equities are equal or rights are unclear. | Is equitable subrogation an absolute right? | Subrogation - Memo 222 - MS C.docx | ROSS-003285044-ROSS-003285045 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 10976 | Rodriguez ex rel. Rodriguez v. United States, 169 F.3d 1342 | 24+101 | In this case, we agree with the defendants that Congress' decision to reduce the number of aliens eligible for SSI and food stamps by providing that only the aliens in the fourteen categories specified in 1351 " 1612(a)(2) are eligible for those benefits is rationally related to the legitimate purpose of reducing the cost of those welfare programs. The plaintiffs do not contend that " 1612's limitations on the number of aliens eligible for those benefits will not achieve cost savings. Instead, they argue that cost savings is not a legitimate interest for Congress to pursue under its sovereign immigration power. That argument is foreclosed by Mathews where the Supreme Court recognized that one of Congress' purposes in restricting the number of aliens eligible for Medicare benefits was "to maintain the fiscal integrity of the Medicare Part B program." By upholding the exclusion of aliens from Medicare benefits for that purpose, the Court implicitly endorsed cost considerations as a legitimate interest for Congress to consider in exercising its immigration powers. Part and parcel of Congress' power to regulate immigration is the power to control the effects of immigration, one of which is the cost it imposes on the nation's welfare system. Where Congress makes a judgment that immigration is creating, or adding to, financial burdens, it lies within Congress' plenary sovereign power over immigration to take action to alleviate such burdens. | Where Congress makes a judgment that immigration is creating, or adding to, financial burdens, it lies within Congress's plenary sovereign power over immigration to take action to alleviate such burdens. | Does Congress have plenary power over immigration? | 00807.docx | LEGALEASE-00083948-LEGALEASE-00083949 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 10977 | Feigenbaum v. Guaracini, 402 N.J. Super. 7 | 366+1 | Secondly, the judge mistakenly failed to adhere to the purpose of equitable subrogation when he ordered Wakefern to reimburse the Guaracinis. The doctrine is only appropriately imposed against the "one who in good conscience ought to pay" the debt.Here, Vineland was the primary defaulting party, and as such, was the party who ought to have paid. Unfortunately, Vineland is no longer a viable entity. | Doctrine of equitable subrogation is only appropriately imposed against the one who in good conscience ought to pay the debt. | Is the doctrine of equitable subrogation only appropriately imposed against the one who in good conscience ought to pay the debt? | 00842.docx | LEGALEASE-00083958-LEGALEASE-00083959 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 10978 | Am. Agr. Chem. Co. v. Thomas, 206 S.C. 355 | 13+62 | Generally, an action cannot properly be commenced until all of the essential elements of the cause of action are in existence"that is, until the cause of action is complete, the subsequent occurrence of a material fact will not avail in maintaining it.The rights and liabilities of the parties, that is, their rights to an action for judgment or relief, depend upon the facts as they existed at the time of the commencement of the action, and not at the time of trial. 1 Am.Jur. " 59, p. 451. | Generally, an action cannot properly be commenced until all essential elements of cause of action are in existence, and subsequent occurrence of a material fact will not avail in maintaining action. | Can an action properly be commenced until all essential elements of a cause of action are in existence? | 01670.docx | LEGALEASE-00092022-LEGALEASE-00092023 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10979 | Florida Lime Growers v. Bloomer Plastics, 665 So. 2d 1151 | 307A+563 | The severity of the sanction must be commensurate with the violation, and dismissal of an action should be imposed upon a party only in extreme situations for flagrant or aggravated cases of disobedience. Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983); Summit Chase Condominium Ass'n, Inc. v. Protean Investors, Inc., 421 So.2d 562, 564 (Fla. 3d DCA 1982). Based upon our review of the record, the imposition of this ultimate sanction by the court below was far too severe a response to the appellants' transgressions. See, e.g., Turano v. Michael Pirates World, Inc., 659 So.2d 1275 (Fla. 3d DCA 1995); Coppola v. McNab, 540 So.2d 242 (Fla. 4th DCA 1989). | Severity of sanction must be commensurate with violation, and dismissal of action should be imposed upon party only in extreme situations for flagrant or aggravated cases of disobedience. | Should the severity of sanction be commensurate with a violation? | 10941.docx | LEGALEASE-00094394-LEGALEASE-00094395 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 10980 | Brown v. United States, 65 F.2d 65 | 34+62 | The obligation of the United States, however, is measured and recovery under a war risk insurance policy is governed by the federal statute which provides that: "In cases when the estate of an insured would escheat under the laws of the place of his residence the insurance shall not be paid to the estate but shall escheat to the United States. * * *" Act, Mar. 4, 1925, c. 553, " 14, 43 Stat. 1310, 38 USCA " 514. | Obligation of United States under war risk insurance policy is governed by federal statute. 38 U.S.C.A. S 750. | Is the obligation of the United States under a war risk insurance policy governed by federal statute? | 09397.docx | LEGALEASE-00095859-LEGALEASE-00095860 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 10981 | Estate of Paulk v. Lott, 217 So. 3d 747 | 307A+581 | Our Supreme Court has emphasized that the threshold question "is whether there is "a clear record of delay or contumacious conduct by the plaintiff[.]" " Holder, 54 So.3d at 198 (quoting Cox, 976 So.2d at 875). Thus, " "[d]elay alone may suffice" for a dismissal under Rule 41(b). "Factors other than delay are not required." " Id. (citationomitted) (quoting Cox, 976 So.2d at 875). The trial court and this Court may also consider "aggravating factors" such as "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of prejudice to the defendant, and whether the delay was the result of intentional conduct." State ex rel. Hood v. Louisville Tire Ctr., Inc., 204 So.3d 1250, 1256 (Miss. 2016) (quoting AT&T v. Days Inn of Winona, 720 So.2d 178, 181 (Miss. 1998)). | The threshold question in determining whether to dismiss for failure to prosecute is whether there is a clear record of delay or contumacious conduct by the plaintiff. | Is the central question whether there is a clear record of delay or contumacious conduct by the plaintiff in determining whether to dismiss a lawsuit? | 09638.docx | LEGALEASE-00096038-LEGALEASE-00096039 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 10982 | Adkins Ltd. P'ship v. O St. Mgmt., 56 A.3d 1159 | 25T+501 | But even assuming Adkins has not forfeited this argument, we do not believe it was improper for the trial court to instruct the appraiser to value the leased fee interest in the O Street property. Ordinarily, a trial court's role in reviewing an appraisal is limited, as is its role in reviewing arbitration awards. When the parties have agreed only for the appraisal of a specific thing and the contract does not provide for an appraiser to settle a particular dispute, however, an appraiser's role is more limited than the role of an arbitrator, i.e., the appraiser's task is "merely [that] of fixing value." Marceron v. Chevy Chase Servs., Inc., 258 F.2d 155, 158 & n. 4 (D.C.Cir.1958) (citing City of Omaha v. Omaha Water Co., 218 U.S. 180, 194, 30 S.Ct. 615, 54 L.Ed. 991 (1910)("An arbitration implies a difference, a dispute, and involves ordinarily a hearing and all thereby implied.... But when, as here, the parties had agreed that one should sell and the other buy a specific thing, and the price should be a valuation fixed by persons agreed upon, it cannot be said that there was any dispute or difference.Such an arrangement precludes or prevents difference, and is not intended to settle any which has arisen. This seems to be the distinction between an arbitration and an appraisement, though the first term is often used when the other is more appropriate.")). | Ordinarily, a trial court's role in reviewing an appraisal is limited, as is its role in reviewing arbitration awards; however, when the parties have agreed only for the appraisal of a specific thing and the contract does not provide for an appraiserto settle a particular dispute, an appraiser's role is more limited than the role of an arbitrator, i.e., the appraiser's task is merely that of fixing value. | c | 004227.docx | LEGALEASE-00115616-LEGALEASE-00115617 | Order, SA | 0.7 | 1 | 0 | 0 | 1 | |
| 10983 | Davidson Cty. Broad. Co. Inc. v. Iredell Cty., 790 S.E.2d 663 | 414+1345 | Petitioners argue that the Board's denial of petitioners' application for a special use permit was error as a matter of law, and was also arbitrary and capricious. Petitioners contend that there was a legal presumption the proposed tower would be in harmony with the area and that there was no evidence to support the Board's finding to the contrary. We disagree.It is a settled principle, essential to the right of self-preservation in every organized community, that however absolute may be the owner's title to his property, he holds it under the implied condition "that its use shall not work injury to the equal enjoyment and safety of others, who have an equal right to the enjoyment of their property, nor be injurious to the community."City of Durham v. Eno Cotton Mills, 141 N.C. 615, 639, 54 S.E. 453, 461 (1906). "For the purpose of promoting health, safety, morals, or the general welfare, a county may adopt zoning and development regulation ordinances." N.C. Gen.Stat. " 153A"340(a) (2015). "The regulations may ... provide that the board of adjustment ... may issue special use permits ... in accordance with the principles, conditions, safeguards, and procedures specified therein and may impose reasonable and appropriate conditions and safeguards upon these permits." Id. " 153A"340(c1). Zoning ordinances and special use permits also act as limitations to "forbid arbitrary and unduly discriminatory interference with property rights in the exercise of [a municipality's delegated authority]."Heaton v. City of Charlotte, 277 N.C. 506, 513, 178 S.E.2d 352, 356 (1971) (citation omitted). A special use permit allows uses which the zoning ordinance authorizes under stated conditions upon proof that those conditions, as detailed in the ordinance, exist. Mann Media, Inc., 356 N.C. at 10, 565 S.E.2d at 15. | Zoning ordinances and special use permits act as limitations to forbid arbitrary and unduly discriminatory interference with property rights in the exercise of a municipality's delegated authority. West's N.C.G.S.A. S 153A-340(a, c). | Why are limitations imposed on the zoning power by the enabling statute? | 000303.docx | LEGALEASE-00115732-LEGALEASE-00115733 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10984 | Green v. Superior Court (1974) 10 Cal.3d 61 | 233+1444 | The transformation which the residential lease has undergone since the Middle Ages, however, has completely eroded the underpinnings of the "independent covenant" rule. Today the habitability of the dwelling unit has become the very essence of the residential lease; the landlord can as materially frustrate the purpose of such a lease by permitting the premises to become uninhabitable as by withdrawing the use of a portion of the premises. (See fn. 20, supra.) Thus, in keeping with the contemporary trend to analyze urban residential leases under modern contractual principles, we now conclude that the tenant's duty to pay rent is "mutually dependent" upon the landlord's fulfillment of his implied warranty of habitability. (See Medico-Dental etc. Co. v. Horton & Converse (1942) 21 Cal.2d 411, 419-421 [132 P.2d 457].)21 Such was essentially the holding of the Court of Appeal inHinson v. Delis (26 Cal.App.3d at p. 71) as well as a number of the out-of-state cases which have recently adopted the implied warranty of habitability rule. (See pp. 631, 632, ante.) As the Supreme Judicial Court of Massachusetts stated most recently: "The old common law treatment of the lease as a property conveyance and the independent covenants rule which stems from his treatment have outlived their usefulness." (Boston Housing Authority v. Hemingway (1973) ___ Mass. ___ [293 N.E.2d 831, 841].) | Tenant's duty to pay rent is mutually dependent upon landlord's fulfillment of his implied warranty of habitability. | Is the tenants duty to pay rent dependent on implied warranty of habitability? | 001092.docx | LEGALEASE-00118673-LEGALEASE-00118674 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 10985 | Sluss v. Commonwealth, 450 S.W.3d 279 | 48A+354(13) | It is abundantly evident that the issue of causation in homicide cases is framed in terms "of whether or not the result as it occurred was either foreseen or foreseeable by the defendant as a reasonable probability." Lofthouse v. Commonwealth, 13 S.W.3d 236, 239 (Ky.2000) (quoting Robert Lawson and William Fortune, Kentucky Criminal Law " 2"4(d)(3), at 74 (1998)). The matter of whether a victim was wearing a seatbelt at the time of an accident or the functionality of the air bag in a victim's vehicle is not relevant to whether the defendant was able to foresee the result of his conduct. | Evidence of whether victim was wearing a seatbelt at the time of a fatal vehicular collision and evidence of the functionality of the airbag in victim's vehicle was irrelevant to the issue of causation at a trial for vehicular homicide; the evidence did not go to whether defendant was able to foresee the result of his conduct. | Is foreseeability by the defendant necessary to constitute causation of homicide? | 002234.docx | LEGALEASE-00119288-LEGALEASE-00119289 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 10986 | Biosafe-One v. Hawks, 639 F. Supp. 2d 358 | 386+6 | Plaintiffs claim defendants' theft of their intellectual property constitutes trespass to chattels. To prevail on a claim of trespass to chattels, plaintiffs must prove the following four elements: (1) defendants acted with intent, (2) to physically interfere with (3) plaintiffs' lawful possession, and (4) harm resulted. See Sweeney v. Bruckner Plaza Assoc. LP, No. 23941/00, 21 Misc.3d 1129(A), 2004 WL 5644706, at, 2004 N.Y. Misc. LEXIS 3172, at (N.Y.Sup.Ct. July 12, 2004). As to the intent element, "the defendant must act with the intention of interfering with the property or with knowledge that such interference is substantially certain to result." Sch. of Visual Arts v. Kuprewicz, 3 Misc.3d 278, 771 N.Y.S.2d 804, 808 (N.Y.Sup.Ct.2003). Here, there is no evidence from which a reasonable jury could conclude that defendants acted "with the intention of interfering" with plaintiffs' property. The only evidence in the record suggests that defendants' copying of plaintiffs' website was inadvertent, not intentional. Biosafe"One, Inc., 524 F.Supp.2d at 460"61; see also Hawks Dep. at 15"17; Skierkowski Dep. at 32"34. Accordingly, this claim is dismissed. | Under New York law, on the intent element of a trespass to chattels claim, the defendant must act with the intention of interfering with the property or with knowledge that such interference is substantially certain to result. | Does the defendant have to act with the intention of interfering with property for a trespass to chattel claim to be successful? | 047167.docx | LEGALEASE-00125756-LEGALEASE-00125757 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 10987 | State v. Ole Olsen, Ltd., 38 A.D.2d 967 | 13+65 | Moreover, in an equity action, the court may hold the relief to be granted to the exigencies of the case as they exist at the close of the trial, with reference to the facts, the law and the equities then existing (Matter of Galewitz, 3 A.D.2d 280, 295, 160 N.Y.S.2d 564, 580, affd. 5 N.Y.2d 721, 177 N.Y.S.2d 708, 152 N.E.2d 666; Lightfoot v. Davis, 198 N.Y. 261, 273, 91 N.E. 582, 586). At bar, in our view, it is a reasonable assumption that if the trial court, at the close of the trial, shall have determined that appellants created a dangerous and unhealthy condition constituting a nuisance and that they should abate same, the other defendants (innocent purchasers of the properties and sufferers from the nuisance) will, at the court's direction, permit appellants to enter into the homes in question in order that the defective sewage disposal condition will be remedied by appellants. In any event, since the purchasers are parties defendant to this action they could be compelled to cooperate with the abatement of the nuisance. | Court may, in equity action, mold relief to be granted to exigencies of case as they exist at close of trial, with reference to facts, law and equities then existing. | Will equity administer such relief as exigencies of a case demand at the close of trial? | 006062.docx | LEGALEASE-00127596-LEGALEASE-00127597 | Condensed, Order, SA | 0.84 | 1 | 1 | 0 | 1 | 1 |
| 10988 | Battle v. Wichita Falls Jr. Coll. Dist., 101 F. Supp. 82 | 1.41E+13 | The right and power of the state to regulate the method of providing for the education of its youth at public expense, is clear. And the decision to separate the races is within the discretion of the state in regulating its public schools and does not conflict with the 14th Amendment. Gong Lum v. Rice, 275 U.S. 78, 85, 48 S.Ct. 91, 72 L.Ed. 172. | State has right and power to regulate method of providing for education of its youth at public expense. Vernon's Ann.St.Const. art. 7, S 7; Vernon's Ann.Civ.St. art. 2900. | Does a state have right and power to regulate the method of providing for the education of its youth at public expense? | 016943.docx | LEGALEASE-00128815-LEGALEASE-00128816 | Order, SA, Sub | 0.51 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10989 | S. Ry. Co. v. Kay, 62 S.C. 28 | 200+121 | We will next consider whether the levy was authorized by act of 1896 (22 St. at Large, p. 238, " 26). His honor the circuit judge ruled that section 26 of the act of 1896 authorized the board of county commissioners to levy annually a sum not exceeding one mill in the respective counties, and that the general assembly, by the act of 1899, itself levied a tax of one mill for road purposes; that the act of 1899 necessarily had the effect of repealing and limiting the powers of the board of county commissioners. Section 26 of the act of 1896 is as follows: "Sec. 26. That the county board of commissioners of said counties be, and they are hereby, authorized to levy annually a sum not exceeding one mill on all the taxable property of the respective counties, which shall constitute a part of the county road fund, to be expended by the said board in the same manner as is provided by law for the use and expenditure of the commutation tax in lieu of road duty; and such tax shall be collected at the same time and in the same manner as is provided by law for the collection of taxes levied for ordinary county purposes: provided, that the provisions of this section shall not apply to Orangeburg county." The words of the act entitled "An act to raise supplies and make appropriations for the fiscal year, commencing January 1st, 1899" (23 St. at Large, p. 138). by which the levy of one-half of one mill for road purposes for Oconee county, are, "For roads, one-half of one mill "." The legislature, by section 26 of the act of 1896, vested the board of county commissioners of Oconee county with power to levy annually a sum not exceeding one mill, which should constitute a part of the county road fund, but this did not prevent the general assembly from levying an additional tax for the same purpose.The two acts are consistent, and there was error, therefore, in ruling that the act of 1899 repealed, by implication, section 26 of the act of 1896. | The board of county commissioners of O. county have the power, under Const. art. 10, and Act 1896, 22 St. at Large, p. 238, authorizing county commissioners to levy annually a sum not exceeding one mill for road purposes, to levy such taxes, which was not taken away by the appropriation act of 1899, authorizing a levy not exceeding one-half of one mill for road purposes for such county. | Can a board of county commissioners levy taxes ? | 019165.docx | LEGALEASE-00129045-LEGALEASE-00129048 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 10990 | Hoerner v. ANCO Insulations, 2000-2333 (La. App. 4 Cir. 1/23/02), 812 So. 2d 45 | 157+546 | A trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous. Becnel v. Lafayette Insurance Co., 99"2966, p. 7"8 (La.App. 4 Cir. 11/17/00), 773 So.2d 247, 251, writ denied, 2000"3458 (La.02/09/01), 785 So.2d 827. That discretion includes the right to determine the admissibility of a witness' testimony, whether that witness is brought in rebuttal or one that was not listed on the pre-trial order. Abadie v. Metropolitan Life Insurance Co., 00"352, p. 7 (La.App. 5 Cir. 4/11/01), 804 So.2d 11, 17, writ denied, 2001"1543 (La.12/14/01), 804 So.2d 643, citing La. C.C.P. art. 1551. Further, rebuttal witnesses are not required to be listed on the pre-trial order. Id. Accordingly, we find no manifest error in the trial judge's decision to admit the testimony of Dr. Millette in the instant case. | Discretion of a trial judge to determine whether to allow a witness to testify as an expert includes the right to determine the admissibility of a witness' testimony, whether that witness is brought in rebuttal or one that was not listed on the pre-trial order. LSA-C.C.P. art. 1551. | Are rebuttal witnesses required to be listed on a pre-trial order? | 026450.docx | LEGALEASE-00130479-LEGALEASE-00130480 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 10991 | Patterson v. Allstate Ins. Co., 884 So. 2d 178 | 307A+501 | In Florida, the right has been limited by Florida Rule of Civil Procedure 1.420(a) which gives plaintiffs the right to voluntarily dismiss their action at any time "before a hearing on motion for summary judgment, or if none is served or if the motion is denied, before retirement of the jury in a case tried before a jury or before submission of a nonjury case to the court." Until the line drawn by this rule is crossed, the plaintiff's right to a voluntary dismissal is "absolute." Fears v. Lunsford, 314 So.2d 578 (Fla.1975) (allowing a voluntary dismissal when the motion was made after the trial court granted the defendant's motion for a directed verdict but before the directed verdict was announced to the jury); see also Ambory v. Ambory, 442 So.2d 1087 (Fla. 2d DCA 1983) (approving a voluntary dismissal when the motion was made after the trial court orally granted the defendant's motion to dismiss with prejudice but before the court entered a written order); Romar Int'l, Inc. v. Jim Rathman Chevrolet/Cadillac, Inc., 420 So.2d 346 (Fla. 5th DCA 1982) (approving a voluntary dismissal after the defendant moved for sanctions pursuant to Florida Rule of Civil Procedure 1.310(g)(1) because the plaintiff noticed a deposition and failed to attend); Bevan v. D'Alessandro, 395 So.2d 1285 (Fla. 2d DCA 1981) (approving a voluntary dismissal after the defendant moved to dismiss for failure to prosecute and the time had lapsed for the plaintiff to show cause why the action should not be dismissed). | Until the line drawn by rule limiting right to voluntarily dismiss action is crossed, the plaintiff's right to a voluntary dismissal is absolute. West's F.S.A. RCP Rule 1.420(a). | Is a plaintiff's right to take a nonsuit or voluntary dismissal under a rule providing that an action may be dismissed by a plaintiff without an order of a court by service before trial absolute? | 026068.docx | LEGALEASE-00130701-LEGALEASE-00130702 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 10992 | Wildman v. Rider, 23 Conn. 172 | 307A+501 | It is no valid objection to a motion to erase a cause from the docket of a court, that such motion is made by the party who brought the cause to such court. | It is no valid objection to a motion to erase a cause from the docket of a court that such motion is made by the party who brought the cause to such court. | Is it a no valid objection to a motion to erase a cause from the docket of a court that such motion is made by the party who brought the cause to such court? | Pretrial Procedure - Memo # 1443 - C - PC.docx | ROSS-003287804-ROSS-003287805 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 10993 | State ex rel. City of Seattle v. Dep't of Pub. Utilities of Wash., 33 Wash. 2d 896 | 371+2001 | This court spoke as plainly as possible in holding that, all the taxes charged to the company, including occupation taxes, and use-of-the-streets tax, should be passed on to the company's subscribers by the rate-making process. We repeat, a tax is an enforced contribution of money, assessed or charged by authority of soverign government for the benefit of the state or the legal taxing authorities. It is not a debt or contract in the ordinary sense, but it is an exaction in the strictest sense of the word. Taxes, of whatever kind or nature, are part of operating expenses and of necessity must be taken into consideration in fixing rates to be charged by public utilities. | A "tax" is an enforced contribution of money assessed or charged by authority of sovereign government for the benefit of the state or the legal taxing authorities and it is not a debt or contract in the ordinary sense but it is an exaction in the strictest sense of the word. | Is tax a debt? | 044627.docx | LEGALEASE-00131187-LEGALEASE-00131188 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 10994 | Boydston v. Bd. of Regents for State of Kan., 242 Kan. 94 | 307A+743 | The unsettled and confused status of this case on the day of trial was due in large part to the failure to hold a pretrial conference and file a subsequent pretrial order. Counsel failed to agree on the proposed pretrial order prior to trial. Both counsel and the trial court must share the responsibility for the breakdown in the pretrial procedure and resulting confusion: counsel, for not requesting a pretrial conference or court intervention when the proposed pretrial order could not be agreed to; the trial court, in failing to hold a pretrial conference or in making sure that counsel submitted an agreed-to pretrial order within a reasonable time prior to trial. The primary purposes of a pretrial conference are to reduce, if not eliminate, surprise from the trial and to determine exactly what issues are to be tried and what procedures are to be followed. In Tillotson v. Abbott, 205 Kan. 706, 709, 472 P.2d 240 (1970), this court stated: "The pre-trial conference and the order entered thereon are an important part of the procedural process. They are provided to acquaint each party in advance of trial with the factual contentions of the opposite parties as to matters in dispute. The opportunity for maneuver and surprise during the trial is reduced. As a result of the pre-trial conference all parties are better able to prepare their testimony on the issues to be tried." (Emphasis added.) | Primary purposes of pretrial conference are to reduce, if not eliminate, surprise from trial and to determine exactly what issues are to be tried and what procedures are to be followed. | How will the pretrial conference procedure help to eliminate the element of surprise at trials? | 026874.docx | LEGALEASE-00131250-LEGALEASE-00131251 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 10995 | Town of Amherst v. Brewster Mews Hous. Co., 133 A.D.3d 1317 | 371+2001 | We further conclude that plaintiff has no cause of action for breach of an implied contract. Although a municipality may be a party to an implied contract under some circumstances, e.g., where it provides a utility to the public (see Matter of Bond St. & Weatherbest Slip Boathouse Owners v. City of N. Tonawanda, 62 A.D.2d 1136, 1136"1137, 404 N.Y.S.2d 463), we reject plaintiff's contention that a breach of an implied contract cause of action lies in the circumstances present here. "Taxes do not rest upon contract, express or implied. They are obligations imposed upon citizens to pay the expenses of government.They are forced contributions, and in no way dependent upon the will or contract, express or implied, of the persons taxed" (City of Rochester v. Bloss, 185 N.Y. 42, 47"48, 77 N.E. 794). | Taxes do not rest upon contract, express or implied; they are obligations imposed upon citizens to pay the expenses of government. | Are taxes obligations imposed upon citizens to pay the expenses of government? | 046049.docx | LEGALEASE-00132144-LEGALEASE-00132146 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 10996 | Long v. Bellamy, 296 Ga. App. 263 | 307A+517.1 | We now turn to the substance of Long's defenses of insufficient service of process and expiration of the statute of limitation. OCGA " 9-2-61(a) provides that a plaintiff may refile an action she previously dismissed within the original applicable statute of limitation or within six months after the dismissal, whichever is later. A renewed lawsuit under OCGA " 9-2-61(a) is an action de novo; therefore, the procedural requirements of filing a new complaint and perfecting service must be met anew. Diligence in perfecting service in a renewal action must be measured from the time of filing the renewed suit. Because service of the renewal action in this case was not perfected within the six-month renewal period, [Bellamy] [had] the burden of showing that she acted in a reasonable and diligent manner in attempting to ensure that proper service was made as quickly as possible. | A renewed lawsuit is an action de novo; therefore, the procedural requirements of filing a new complaint and perfecting service must be met anew. West's Ga.Code Ann. S 9-2-61(a). | Is a renewed lawsuit an action de novo? | 027853.docx | LEGALEASE-00132202-LEGALEASE-00132203 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 10997 | Fireman's Fund Ins. Co. v. Whirlpool Corp,2002 WL 228208 | 307A+485 | As to the second section of this exception, that "a response to [a request for admissions] was waived under subdivision (l )," we first note that there is no duty on the propounding party to seek an order forcing the responding party to respond. Instead, the propounding party may move to compel a further response if the initial response is incomplete or evasive, or if an objection to a particular request is without merit or too general. (" 2033, subd. (l ).) If the propounding party fails to notice a motion to compel further responses within 45 days of the service of the response, the propounding party waives only the right to compel further responses to a request for admission. (Ibid.) All that is waived is the right to compel a further response; the right to seek an award of reasonable expenses pursuant to section 2033, subdivision (o) is not waived.. | Plaintiff did not waive its right to attorney fees for defendant's failure to respond to requests for admissions by not moving to compel defendant to properly respond, where defendant responded with blunt denials and boilerplate objections, not evasive or incomplete responses. West's Ann.Code Civ.Proc. S 2033(l)(1), (o) | Will a plaintiff be waiving his right to attorney fees for defendant's failure to respond to requests for admissions by not moving to compel defendant to properly respond? | 030072.docx | LEGALEASE-00135055-LEGALEASE-00135056 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 10998 | Belliveau v. Bozoian, 46 R.I. 83 | 48A+216 | It is well established that pedestrians have in general, and under reasonable restrictions as to exercise of care by them, a right to travel anywhere upon a public highway, and it is negligence for a driver of a vehicle upon a public highway to recklessly run upon a pedestrian who is standing or walking with his back toward him. Berry, Automobiles (2d Ed.) " 220; Hall v. Albertie, 140 Md. 673, 118 A. 189; State v. Disalvo (Del. O. & T.) 121 A. 661; Emery v. Miller, 231 Mass. 243, 120 N. E. 655. A pedestrian using the public highways, and exercising ordinary care for his own safety, may assume, until he has knowledge or notice to the contrary, that the drivers of automobiles will exercise reasonable care to avoid injuring him, and that they will observe the law. He is not negligent in acting upon this assumption and regulating his conduct accordingly.Berry, Automobiles (2d Ed.) " 219; Benoit v. Miller (R. I.) 67 A. 87. Section 12, chapter 86, General Laws 1909, in force at the time plaintiff was injured, provides, among other things, that "upon approaching any person walking in the traveled portion of any public highway and also in passing such person the person operating the motor vehicle shall have the same under control and shall reduce its speed to a reasonable and proper rate." And section 11 of said chapter provides that "no person shall operate a motor vehicle on the public highways of this state so as to endanger the life or limb of any person. | A pedestrian using highway, and exercising ordinary care for his own safety, may assume until he has knowledge or notice to contrary, that drivers of automobiles will exercise reasonable care to avoid injuring him, and that they will observe law. | Can a person walking on a street assume vehicles will be driven safely? | 019231.docx | LEGALEASE-00137929-LEGALEASE-00137930 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 10999 | Ex parte Covell, 63 Okla. Crim. 256 | 63+3 | In the case of Ex parte Winters, 10 Okl.Cr. 592, 140 P. 164, 51 L.R.A.,N.S., 1087, this court held: "A person who holds himself out as an officer under color of authority, and who solicits and accepts a bribe, has no right to defend and be discharged on the ground that, as a matter of law, he had no right to act as such officer." | A person who holds himself out as an officer under color of authority, and who solicits and accepts a bribe, cannot defend on ground that, as a matter of law, he had no right to act as such officer. 21 Okl.St.Ann. S 381. | Can a person holding himself out as an officer defeat a charge of bribery on the ground that he had no legal right to act in the capacity he assumed? | 012116.docx | LEGALEASE-00141124-LEGALEASE-00141125 | Condensed, SA | 0.34 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11000 | Pelouze v. City of Richmond, 183 Va. 805 | 371+2392 | "In Commonwealth v. Richmond, 116 Va. 69, at p. 77, 81 S.E. 69, L.R.A. 1915A, 1118, our court said: "'Judge Cooley, in his work on Taxation, (3rd ed.) pp. 263-4, said: "Before noticing the exemptions expressly made by law, it will be convenient to speak of some which rest upon implication. Some things are always presumptively exempted from the operation of general tax laws, because it is reasonale to suppose they were not wihin the intent of the legislature in adopting them. Such is the case with property belonging to the State and its municipalities, and which is held by them for governmental purposes. All such property is taxable, if the State shall see fit to tax it; but to levy a tax upon it would render necessary new taxes to meet the demand of this tax, and thus the public would be taxing itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless tax. It cannot be supposed that the legislature would ever purposely lay such a burden upon public property, and it is, therefore, a reasonable conclusion that, however, general may be the enumeration of property for taxation, the property held by the State and by all its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact."" | The state and its municipalities' property, held for governmental purposes, are presumptively exempted from operation of general tax laws, though taxable if state sees fit. | Are the state and its municipalities' property exempted from operation of general tax laws ? | 045502.docx | LEGALEASE-00141768-LEGALEASE-00141770 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 11001 | Gulf, C. & S.F. Ry. Co. v. Brown, 75 S.W. 807 | 307A+726 | No error was committed in overruling the second application for a continuance. It was not properly verified, the attorney who swore to it merely stating "that the facts set forth in the foregoing application for continuance are true, to the best of his information and belief." Rev. St. 1895, art. 1276; Graham v. McCarty, 69 Tex. 324, 7 S. W. 342; Spinks v. Mathews, 80 Tex. 374, 15 S. W. 1101. Furthermore, being a second application, and not in strict compliance with the statute, it was addressed to the sound discretion of the court, and we are of opinion that such discretion was not abused. | A second application for a continuance, not made in strict compliance with the statute, is addressed to the sound discretion of the court. | "Can a second application for a continuance, not made in strict compliance with the statute, be addressed to the sound discretion of the court?" | 033779.docx | LEGALEASE-00142871-LEGALEASE-00142872 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 11002 | Whitbeck v. Minch, 48 Ohio St. 210 | 294+88 | A party who pays an illegal assessment upon his property cannot recover it back in a suit against the treasurer, unless the payment was an involuntary one. To constitute the payment an involuntary one, it must appear that the treasurer was about to levy a distress upon the property of the party charged with the assessment. A simple pro test against the validity of the assessment, with notice to the treasurer that the party intends to bring suit to recover it back, is not sufficient. In such case the general rule applies that, if litigation is intended, it must precede payment, where, as in such cases, the party has a plain remedy provided by statute, (section 5848,1 Rev. St.,) and may resort to the same, and thereby avoid a distress of his property. Judgments of both courts reversed, and cause remanded to the common pleas for further proceedings. | Since Rev.St. S 5848 (See Gen.Code, S 12075), provides for enjoining the assessment or collection of illegal taxes and for the recovery of such taxes paid, to entitle one to recover such taxes after payment it must appear that the treasurer was about to levy on his property; payment with a simple protest against the validity of the assessment, and notice to the treasurer that action would be brought to recover it back, not being sufficient. | Can an alleged illegal assessment be recovered unless involuntarily paid? | 019120.docx | LEGALEASE-00148699-LEGALEASE-00148700 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 11003 | Hoch v. Doughty, 224 A.2d 54 | 48A+170(2) | If at a corner or bend or on a straight road one car can see the other, it is a statutory duty to "seasonably turn" to the right. A fortiori should it be a statutory duty to so turn, at a blind corner, or turn in the road, when legally bound to anticipate that an approaching car may at any moment appear.' (Emphasis ours) Bragdon v. Kellogg, (1919) 118 Me. 42, 48, 105 A. 433, 436. | It should be statutory duty to seasonably turn to right at blind corner, or turn in road, when motorist is legally bound to anticipate that approaching vehicle may at any moment appear. 29 M.R.S.A. S 941. | What is the nature of the duty to seasonably turn to the right while travelling on a road? | 019053.docx | LEGALEASE-00148701-LEGALEASE-00148702 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 11004 | Overton v. Hardin, 46 Tenn. 375 | 83E+467 | An indorser for value, has no remedy against the maker, for costs incurred by him in his own defense. An accommodation indorser, however, may recover from the maker, the costs incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement: 1 Parsons on Con., 33; Sedgwick on Dam., 297, 335. | An indorser for value, has no remedy against the maker for costs incurred by him in his own defense, but an accommodation indorser may recover from the maker the cost incurred in resisting, in good faith and upon reasonable grounds, a recovery against him upon his indorsement. | Can an accommodation indorser recover the cost incurred upon his indorsement? | 009695.docx | LEGALEASE-00150484-LEGALEASE-00150485 | Condensed, SA | 0.18 | 0 | 1 | 0 | 1 | |
| 11005 | Schmuck v. Hartman, 222 Pa. 190 | 371+2001 | The appellee has undoubtedly withheld from the commonwealth a large sum which he ought to have paid for taxes, and his moral duty unquestionably now is to pay it, but he cannot be compelled to perform that duty unless there is a right in the commonwealth to enforce it as a legal one. All taxation is statutory, and, while it is the duty of every citizen to bear his just proportion of the burden of supporting national, state and local government, he cannot be compelled to do so except in a way provided by a statute. Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings unless a statute so provides. They can be collected in no other way than that pointed out by the statute, and cannot be collected until they have first been assessed according to the statute. | Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings, unless the statute so provides. | Does liability to pay taxes arise from contractual relation? | 045948.docx | LEGALEASE-00150506-LEGALEASE-00150507 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 11006 | Pitman Place Dev. v. Howard Investments, 330 S.W.3d 519 | 308+99 | A principal is responsible for the acts and agreements of its agent, but only if the agent acts with authority"either actual authority, which may be express or implied, or apparent authority. Lynch v. Helm Plumbing and Elec. Contractors, Inc., 108 S.W.3d 657, 660 (Mo.App. W.D.2002). In the absence of actual authority, an agent's acts may still be binding on a principal if the acts are performed with "apparent authority." Id. "Apparent authority" exists when a principal, either by its acts or representations, has led third persons to believe authority has been conferred upon an agent. Id. To establish apparent authority, a party must show: "(1) the principal manifested his consent to the exercise of such authority or knowingly permitted the agent to assume the exercise of such authority; (2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority; and (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal." Id.; see also IOS Capital, LLC v. Allied Home Mortgage Capital Corp., 150 S.W.3d 148, 153 (Mo.App. E.D.2004). | "Apparent authority" exists when a principal, either by its acts or representations, has led third persons to believe authority has been conferred upon an agent. | To establish apparent authority should a third person have reason to believe that the agent possessed that authority? | 041443.docx | LEGALEASE-00151182-LEGALEASE-00151183 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11007 | Gardner v. Universal Life & Acc. Ins. Co., 164 S.W.2d 582 | 378+5 | Also, in 62 C.J., p. 970, " 18, the rule is stated that: "Where "month," as employed in a statute, judicial proceeding, or contract, means calendar month, a period of a month or months is to be computed not by counting days, but by looking at the calendar, and it runs from a given day in one month to a day of the corresponding number in the next or specified succeeding month" The same doctrine is announced in 24 Tex.Jur., " 141, p. 868, as follows: "The running of the thirty-day period of grace for the payment of an annual premium commences on the anniversary of the date upon which the policy became effective." | A "month" as employed in a statute, judicial proceeding, or contract is not to be computed by counting days but by looking at the calendar and it runs from a given day in one month to a corresponding number in the next or specified succeeding month. V.A.T.S., Insurance Code, art. 3.44. | What is the interpretation of the word month? | 010447.docx | LEGALEASE-00152425-LEGALEASE-00152426 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 11008 | Wiele v. Bd. of Assessment Appeals of City of Bridgeport, 119 Conn. App. 544 | 156+52(1) | Applying this standard of review, we conclude that the finding of the court that the defendant waived its statute of limitations defense is clearly erroneous. The issue is whether the defendant intentionally relinquished or abandoned the statute of limitations defense available in " 12"119. "Waiver is the intentional relinquishment or abandonment of a known right or privilege.... As a general rule, both statutory and constitutional rights and privileges may be waived.... Waiver is based upon a species of the principle of estoppel and where applicable it will be enforced as the estoppel would be enforced.... Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed.... Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied.... In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Citations omitted; internal quotation marks omitted.) Rosado v. Bridgeport Roman Catholic Diocesan Corp., 292 Conn. 1, 57, 970 A.2d 656, cert. denied sub nom. *550 Bridgeport Roman Catholic Diocesan Corp. v. New York Times Co., """ U.S. """", 130 S.Ct. 500, 175 L.Ed.2d 348 (2009). | Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed. | Does estoppel have its roots in equity? | Estoppel - Memo #96 - C - CSS_61547.docx | ROSS-003298865-ROSS-003298866 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 11009 | Rudisell v. Fifth Third Bank, 622 F.2d 243 | 172H+1561 | The statute clearly does not require the debtor to tender first. See Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935, 944 (9th Cir. 1975); Palmer v. Wilson, 502 F.2d 860, 861 (9th Cir. 1974). It contemplates the creditor tendering first. But upon the creditor fulfilling its obligations under the statute, the debtor then must tender. Gerasta v. Hibernia National Bank, 575 F.2d 580, 584 (5th Cir. 1978); Mitchell v. Security Investment Corp. of Palm Beaches, 464 F.Supp. 650 (S.D.Fla.1979). Since rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of property to the creditor. See Powers v. Sims & Levin, 542 F.2d 1216, 1220-22 (4th Cir. 1976); LaGrone v. Johnson, 534 F.2d 1360, 1361-62 (9th Cir. 1976); Palmer v. Wilson, 502 F.2d 860, 862 (9th Cir. 1974). | Rescission under provision of Truth in Lending Act is an equitable remedy and court may condition return of monies to debtor upon return of property to creditor. Truth in Lending Act, S 125 as amended 15 U.S.C.A. S 1635. | Can the court condition the return of monies to the debtor upon return of property to the creditor? | 013748.docx | LEGALEASE-00155631-LEGALEASE-00155632 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 11010 | Gerlich v. Leath, 861 F.3d 697 | 92+2007 | If a state university creates a limited public forum for speech, it may not"discriminate against speech on the basis of its viewpoint." Rosenberger, 515 U.S. at 829, 115 S.Ct. 2510. A university "establish[es] limited public forums by opening property limited to use by certain groups or dedicated solely to the discussion of certain subjects." Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez, 561 U.S. 661, 679 n.11, 130 S.Ct. 2971, 177 L.Ed.2d 838 (2010) (internal quotation marks and citation omitted). A university's student activity fund is an example of a limited public forum. See Rosenberger, 515 U.S. at 823"27, 829"30, 115 S.Ct. 2510. ISU created a limited public forum when it made its trademarks available for student organizations to use if they abided by certain conditions. | If a state university creates a limited public forum for speech, it may not discriminate against speech on the basis of its viewpoint. U.S. Const. Amend. 1. | "If a state university creates a limited public forum for speech, can it discriminate against speech on the basis of its viewpoint?" | 016826.docx | LEGALEASE-00156200-LEGALEASE-00156201 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 11011 | Creek v. Clark, 91 Ill. App. 3d 429 | 307A+693.1 | Notwithstanding the fact that there had been no factual determination, the consequences that flow from the dismissal of a charge "with prejudice" are equal to that of trial and acquittal. The term "with prejudice" has a well-recognized legal import; it is the converse of the term "without prejudice" and is as conclusive of the rights of the parties as if the suit had been prosecuted to a conclusion adverse to the complainant. (Gonzalez v. Gonzalez (1955), 6 Ill.App.2d 310, 127 N.E.2d 673; see also In re Estate of Crane (1951), 343 Ill.App. 327, 99 N.E.2d 204.) The phrase "dismissed with prejudice" is doubtless a contraction of the expanded phrase "dismissed with prejudice to the right to commence the action anew." Black's Law Dictionary, (Fifth Ed. 1979 at 421), defines "dismissed with prejudice" as follows: "An adjudication on the merits, and final disposition, barring the right to bring or maintain an action on the same claim or cause." | Dismissal of a charge "with prejudice" is as conclusive of the rights of the parties as if the suit has been prosecuted to a conclusion adverse to the complainant. | "Is a dismissal of a charge ""with prejudice"" as conclusive of the rights of the parties as if the suit has been prosecuted to a conclusion adverse to the complainant ?" | 025258.docx | LEGALEASE-00156855-LEGALEASE-00156856 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11012 | People v. Trujillo, 62 P.3d 1034 | 135H+96 | However, a defendant may waive constitutionally protected rights. A defendant's motion for a mistrial is generally a waiver of protection from retrial under the Double Jeopardy Clause. See People v. Baca, 193 Colo. 9, 562 P.2d 411 (1977); People v. Ball, 821 P.2d 905 (Colo.App.1991). | A defendant's motion for a mistrial is generally a waiver of protection from retrial under the Double Jeopardy Clause. U.S.C.A. Const.Amend 5; West's C.R.S.A. Const. Art. 2, S 18. | Is a defendant's motion for a mistrial generally a waiver of protection from retrial under the Double Jeopardy Clause? | 015251.docx | LEGALEASE-00163125-LEGALEASE-00163126 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11013 | People v. Burnham, 176 Cal. App. 3d 1134 | 352H+191 | For the affirmative defense to prevail, the defendant has the burden of proving "he had a bona fide and reasonable belief" the victim consented. (People v. Mayberry, supra, 15 Cal.3d at p. 157, 125 Cal.Rptr. 745, 542 P.2d 1337.) The belief must be "reasonable" (CALJIC Nos. 10.23, 10.40.1, 10.50.1 and 4.35). That is, even though the defendant actually believed the victim consented, was that belief reasonable under the circumstances? Also, it must be "bona fide" (ibid.); in other words, honestly held. "In People v. Mayberry [supra, 15 Cal.3d 143, 125 Cal.Rptr. 745, 542 P.2d 1337] ..., the Supreme Court used the terms "good faith," "genuinely," and "bona fide" interchangeably to require the belief be honestly held." (People v. Trapps (1984) 158 Cal.App.3d 265, 269, 204 Cal.Rptr. 541.) The concepts of a reasonable and a bona fide belief are not totally separate, for a defendant may be "aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith." (People v. Stewart (1976) 16 Cal.3d 133, 140, 127 Cal.Rptr. 117, 544 P.2d 1317.) Penal Code section 267 does not refer to either reasonableness or good faith, but the Supreme Court requires these two elements to coexist for the defense of mistake of fact to prevail. (People v. Hernandez (1964) 61 Cal.2d 529, 534"536, 39 Cal.Rptr. 361, 393 P.2d 673; People v. Mayberry, supra, 15 Cal.3d at pp. 155"157, 125 Cal.Rptr. 745, 542 P.2d 1337.) As to the degree of proof necessary to prevail, the defendant is "only required to raise a reasonable doubt as to whether he had such a belief." (Id., at p. 157, 125 Cal.Rptr. 745, 542 P.2d 1337.) It is the exclusive province of the jury to determine whether the defendant had a reasonable and good faith belief the victim consented. | For affirmative defense of consent to prevail, defendant accused of rape has burden of proving that he had bona fide and reasonable belief that victim consented. | Does the defendant have the burden of proving the victims consent in order to prevail on the affirmative defense of consent? | 043147.docx | LEGALEASE-00164068-LEGALEASE-00164069 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 11014 | Com. v. Cumming, 466 Mass. 467 | 135H+1 | "[T]he constitutional guarantee against double jeopardy protects a defendant not only against a second prosecution for the same offense after acquittal or conviction but also against "multiple punishments for the same offense." "Commonwealth v. Goodwin, supra at 19, 933 N.E.2d 925, quoting Aldoupolis v. Commonwealth, 386 Mass. 260, 271"272, 435 N.E.2d 330, cert. denied, 459 U.S. 864, 103 S.Ct. 142, 74 L.Ed.2d 120 (1982), S.C., 390 Mass. 438, 457 N.E.2d 268 (1983). In this manner, "[t]he double jeopardy clause ""represents a constitutional policy of finality for the defendant's benefit" in criminal proceedings." " Commonwealth v. Goodwin, supra, quoting Aldoupolis v. Commonwealth, supra at 274, 435 N.E.2d 330. | The double jeopardy clause represents a constitutional policy of finality for the defendant's benefit in criminal proceedings. U.S.C.A. Const.Amend. 5. | Does double jeopardy represent a constitutional policy of finality for the defendant's benefit in criminal proceedings? | 016402.docx | LEGALEASE-00165199-LEGALEASE-00165200 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11015 | State v. Joyner, 255 Conn. 477 | 135H+100.1 | Although "[a]n appellant cannot ordinarily claim error in the action of the trial court which he has induced," an exception exists when "a party consents to the entry of a judgment against him when it is the only logical result at which the court could arrive given its previous rulings." Id. at 47-48, 454 A.2d 266. It would be unfair to force the state to proceed with a case for which it has insufficient evidence to prove guilt because of a suppression order, inasmuch as the state would then be precluded by double jeopardy from seeking subsequent review of that order. The federal constitutional guarantee against double jeopardy "protects against a second prosecution for the same offense after acquittal." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). "[T]he Double Jeopardy Clause of the Fifth Amendment is applicable to the States through the Fourteenth Amendment...." Benton v. Maryland, 395 U.S. 784, 787, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). | The federal constitutional guarantee against double jeopardy protects against a second prosecution for the same offense after acquittal. U.S.C.A. Const.Amend. 5. | Does the federal constitutional guarantee against double jeopardy protect against a second prosecution for the same offense after acquittal | 015764.docx | LEGALEASE-00166484-LEGALEASE-00166485 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 11016 | McAfee v. Agilysys, 316 S.W.3d 820 | 308+1 | McAfee alleged the fiduciary relationship arose because "Agilysys agreed to act as McAfee's agent to ... arrange for Barrister (or some other party) to provide the work required to fulfill Extended Warranties." An agent is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. Townsend v. Univ. Hosp.-Univ. of Colo., 83 S.W.3d 913, 921 (Tex.App.-Texarkana 2002, pet. denied); see Berge v. Columbus Cmty. Cable Access, 136 Ohio App.3d 281, 736 N.E.2d 517, 531 (1999). The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. Townsend, 83 S.W.3d at 921; see Berge, 736 N.E.2d at 531. | The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. | What is the critical element of agency relationship? | Principal and Agent - Memo 534 - RK_63992.docx | ROSS-003278729-ROSS-003278731 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 11017 | In re Shurtz's Will, 242 Iowa 448 | 371+2001 | There is a distinction between "taxes' and "assessments." A tax is a charge to pay the cost of government without regard to special benefits conferred. The word "assessment," in the field of taxation, is used in two senses: (1) the method of imposing a tax and (2) a special tax to pay the cost of a local improvement according to the supposed benefits therefrom. When used in the first sense, the term used is "the assessment of taxes." When used in the second sense only the word "assessment" is used or the words "special assessment." The term is widely used and understood in the second of these senses. | A "tax" is a charge to pay the cost of government without regard to special benefits conferred. | Is tax a charge to pay the cost of government without regard to special benefits conferred? | Taxation - Memo # 933 - C - JL_61485.docx | ROSS-003279048-ROSS-003279049 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11018 | Bus. Servs. of Am. II v. WaferTech LLC, 174 Wash. 2d 304 | 307A+583 | The dismissal of an action for want of prosecution is in the discretion of the court in the absence of a guiding statute or rule of court. Snohomish County v. Thorp Meats, 110 Wash.2d 163, 167, 750 P.2d 1251 (1988) (citing State ex rel. Dawson v. Superior Court, 16 Wash.2d 300, 304, 133 P.2d 285 (1943)). However, dismissal is mandatory if CR 41(b)(1) applies. Id. at 167, 168"69, 750 P.2d 1251. The rule states in full: Any civil action shall be dismissed, without prejudice, for want of prosecution whenever the plaintiff, counterclaimant, cross claimant, or third party plaintiff neglects to note the action for trial or hearing within 1 year after any issue of law or fact has been joined, unless the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss. Such motion to dismiss shall come on for hearing only after 10 days' notice to the adverse party. If the case is noted for trial before the hearing on the motion, the action shall not be dismissed. | The dismissal of an action for want of prosecution is in the discretion of the court in the absence of a guiding statute or rule of court. | Is the dismissal of an action for want of prosecution in the discretion of the court in the absence of a guiding statute or rule of court? | Pretrial Procedure - Memo 11694 - C - SKG_65413.docx | ROSS-003280123-ROSS-003280124 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11019 | Cockrell v. Taylor, 347 Mo. 1 | 83E+481 | Appellant next attacks the foreclosure on the ground that the Farm Mortgage Holding Company was not the owner and holder of the note and deed of trust at that time. " 3094, R.S.Mo.1929, Mo.St.Ann. "3094, p. 1918, makes the recitals in a trustee's deed prima facie evidence of the truth of the matters therein set out, and this deed did recite that at the date of foreclosure the Holding Company held the note and deed of trust. There is a distinction between the endorsement of a note and its assignment. Both endorsement and assignment transfer title to the assignee or endorsee; but the endorsement, if made before maturity, confers upon him the special rights of a holder in due course. While an endorsement must be made by written signature on the back of the instrument itself, an assignment of a note or mortgage may be by separate instrument or even by parol. Bishop v. Chase, 156 Mo. 158, 56 S.W. 1080, 79 Am.St.Rep. 515; O'Connor v. Slatter, 48 Wash. 493, 93 P. 1078. Here the assignments of the mortgage from the original mortgagee down to the Holding Company were all in writing and were duly acknowledged and recorded. The acknowledgment and recordation are prima facie evidence of due execution and delivery. Keener v. Williams, 307 Mo. 682, 271 S.W. 489. | While "endorsement of note" must be made by written signature on back of instrument itself, "assignment of note or mortgage" may be by separate instrument, or even by parol. | Can an assignment of a note be made by separate instrument or parol? | Bills and Notes - Memo 1261 - RK_62557.docx | ROSS-003280261-ROSS-003280262 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 11020 | Ash v. Royal Caribbean Cruises Ltd., 991 F. Supp. 2d 1214 | 308+1 | In order to show an agency relationship, the plaintiff must show: "1) acknowledgment by the principal that the agent will act for it; 2) the agent's acceptance of the undertaking; and 3) control by the principal over the action of the agent." E & H Cruises, Ltd. v. Baker, 88 So.3d 291, 295 (Fla.Dist.Ct.App.2012), reh'g denied (May 30, 2012), review denied, 107 So.3d 403 (Fla.2012). Here, as in E & H, the agreement between RCCL and Dutch Tours specifically states that Dutch Tours is an independent contractor and that the parties are not each other's agent respectively. [See D.E. 61"3, Tour Operator Agreement, Section 9]. Additionally, under Florida law, the mere fact that tickets to an excursion are sold in Florida through RCCL is insufficient to constitute "[o]perating, conducting, engaging in, or carrying on a business or business venture" as required by section 48.193(1)(a). E & H Cruises, Ltd. v. Baker, 88 So.3d at 295. Unable to demonstrate either a principal/agent or joint venture relationship between RCCL and Dutch Tours, the plaintiffs' argument for personal jurisdiction under section 48.193(1)(a) fails. | In order to show an agency relationship, under Florida law, the plaintiff must show: (1) acknowledgment by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the action of the agent. | Can acknowledgment by the principal that the agent will act on his or her behalf establish the agency relationship? | Principal and Agent - Memo 549 - RK_64007.docx | ROSS-003280484-ROSS-003280485 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 11021 | Kingsley Capital Mgmt. v. Sly, 820 F. Supp. 2d 1011 | 25T+179 | However, the "dispute at issue" must be a "dispute between the parties [to the contract containing the arbitration clause]." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir.1999). The arbitration clause here covers only disputes "among or between Member(s), the Manager and/or the Company." No Defendant is a member of Oxygen, with the possible exception of Sly (discussed further below), and thus no Defendant has an explicit right to demand arbitration. Nonetheless, those who have not signed a contract containing an arbitration clause may sometimes benefit from it through doctrines such as assumption, agency, veil-piercing/alter ego, and estoppel. See Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1045 (9th Cir.2009). Here, Defendants variously assert a right to compel arbitration through agency and estoppel. | Those who have not signed a contract containing an arbitration clause may sometimes benefit from it through doctrines such as assumption, agency, veil-piercing/alter ego, and estoppel. | Is it possible for parties who have not signed a contract containing an arbitration clause to benefit from it? | Alternative Dispute Resolution - Memo 787 - RK_58120.docx | ROSS-003282628-ROSS-003282629 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 11022 | Shen v. Japan Airlines, 918 F. Supp. 686 | 221+343 | Even if the court had jurisdiction over plaintiffs' claims against JAL, JAL would be entitled to summary judgment under the act of state doctrine. "The act of state doctrine .. requires that .. the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." W.S. Kirkpatrick v. Environmental Tectonics, 493 U.S. 400, 409, 110 S.Ct. 701, 707, 107 L.Ed.2d 816 (1990). Thus, "The act of state doctrine precludes the courts of this country "from inquiring into the validity of the public acts a recognized foreign power committed within its own territory." " Galu v. Swissair: Swiss Air Transport Co., Ltd., 873 F.2d 650, 653 (2d Cir.1989) (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964)). A party may assert the act of state doctrine where its conduct has been compelled by a foreign government. O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A., 830 F.2d 449, 453 (2d Cir.1987), cert. denied, 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988). | Party may assert act of state doctrine where its conduct has been compelled by foreign government. | May a party assert the act of state doctrine where its conduct has been compelled by a foreign government? | International Law - Memo # 573 - TH.docx | ROSS-003282847-ROSS-003282848 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11023 | People v. Cook, 186 A.D.2d 879 | 37+120 | The elements of assault with a firearm, under section 245, subdivision (a)(2) include (1) an assault, which requires the intent to commit a battery, and (2) the foreseeable consequence of which is the infliction of great bodily injury upon the subject of the assault. (See People v. Smith (1997) 57 Cal.App.4th 1470, 1484, 67 Cal.Rptr.2d 604.) Murder is the killing of a human being with the intent unlawfully to kill. ("" 187, 188; People v. Bobo (1990) 229 Cal.App.3d 1417, 1433, 3 Cal.Rptr.2d 747.) Consequently, when murder is alleged to have been committed by means of a firearm, it cannot be so committed without also committing an assault with a firearm. | The elements of assault with a firearm include (1) an assault, which requires the intent to commit a battery, and (2) the foreseeable consequence of which is the infliction of great bodily injury upon the subject of the assault. West's Ann.Cal.Penal Code S 245(a)(2). | What are the elements of assault with a firearm? | Homicide - Memo 110 - RK.docx | ROSS-003284289-ROSS-003284290 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 11024 | Bass v. Bass, 814 S.W.2d 38 | 289+453 | Moreover, the existence of a partnership depends upon the intention of the parties, and the controlling intention in this regard is that ascertainable from the acts of the parties. Wyatt v. Brown, 39 Tenn.App. 28, 281 S.W.2d 64, 67 (1955). Although a contract of partnership, either express or implied, is essential to the creation of partnership status, it is not essential that the parties actually intend to become partners. Wyatt, 281 S.W.2d at 67. The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts. Roberts, 779 S.W.2d at 795"96. It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship. Wyatt, 281 S.W.2d at 67. Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money. | Although contract of partnership, either express or implied, is essential to creation of "partnership" status, it is not essential that parties actually intend to become partners. T.C.A. SS 61-1-105(a), 61-1-106(4), (4)(A-E). | Is an express or implied partnership contract essential to the creation of a partnership? | Partnership - Memo 151 - JS.docx | ROSS-003284840-ROSS-003284841 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 11025 | Nationwide Mut. Fire Ins. Co. v. T & N Master Builder & Renovators, 2011 IL App (2d) 101143 | 366+1 | We further note that this is an action in subrogation. As the Supreme Court explained in Dix, subrogation is an action in chancery. Dix, 149 Ill.2d at 319, 173 Ill.Dec. 648, 597 N.E.2d 622. It is "designed to place the ultimate responsibility for the loss upon the one on whom in good conscience it ought to fall and to reimburse the innocent party who is compelled to pay." Reich v. Tharp, 167 Ill.App.3d 496, 118 Ill.Dec. 248, 521 N.E.2d 530 (1987). As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. Dix, 149 Ill.2d at 319, 173 Ill.Dec. 648, 597 N.E.2d 622. Subrogation is not allowed against a tenant where the tenant is considered a coinsured under the landlord's insurance policy. Reich, 167 Ill.App.3d at 501, 118 Ill.Dec. 248, 521 N.E.2d 530. With these principles in mind, we now turn to the issues raised by plaintiff. | As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. | Can a claim be subrogated only in order to prevent injustice as an action in equity? | Subrogation - Memo 221 - RM C.docx | ROSS-003285676-ROSS-003285677 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11026 | Estate of Underwood v. Nat'l Credit Union Admin., 665 A.2d 621 | 413+1 | The WCA provides a comprehensive scheme for compensating private sector employees for their work-related injuries. It makes the employer liable without fault if the employee's occupational injury or death falls within the scope of the Act, see D.C.Code " Grillo v. National Bank of Washington, 540 A.2d 743, 748 (D.C.1988), but as a quid pro quo for such automatic liability the Act provides the employee's exclusive remedy-an administrative remedy-against the employer for injuries within its reach. See id. " 36-304(a); Grillo, 540 A.2d at 748. The issue, therefore, is whether appellant's emotional distress claim is compensable under the WCA and thus is not eligible for a lawsuit in court. | Workers' Compensation Act provides comprehensive scheme for compensating private sector employees for their work-related injuries. D.C.Code 1981, S 36-303. | Does the workers' compensation act provide a comprehensive scheme for compensating private sector employees for their work-related injuries? | Workers Compensation - Memo #65 ANC.docx | ROSS-003286925-ROSS-003286926 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 11027 | United States v. Teller, 107 U.S. 64 | 92+2632 | The relator does not claim that there is anything due him under the pension laws prior to June 4, 1872. It appears from the answer of the secretary of the interior, and there is no evidence to the contrary, that since June 4, 1872, the relator has received every cent that is due him under the general pension laws. The special act of March 3, 1879, declared that the pension of $50 thereby granted should be in lieu of the pension the relator was then receiving, and, at least, cut off all claim to arrears of pensions under that act. All, therefore, that is left of his case is his contention that he is entitled not only to the pension of $72 per month allowed him by the general act of June 16, 1880, and which has been paid him, but in addition thereto the pension of $50 per month granted him by name by the special act of March 3, 1879. It appears from the answer of the secretary of the interior that the relator was, under the advice of the department of justice, paid both pensions from March 3, 1879, to June 4, 1882. The complaint of the relator is that the payment of double pensions is not continued, and it is for the purpose of enforcing his right to his special pension of $50, in addition to the general pension of $72, that he asks that the secretary of the interior may be compelled to return the certificate issued to him under the special act. The right of the relator to double pensions, if he ever had such right, has been effectually cut off by section 5 of the act of July 25, 1882, which declares "that no person who is now receiving or shall hereafter receive a pension under a special act shall be entitled to receive, in addition thereto, a pension under the general law, unless the special act expressly states that the pension granted thereby is in addition to the pension which said person is entitled to receive under the general law." | Pensioners of the United States have no vested legal rights to their pensions, and it was competent for congress by Act July 25, 1882, c. 349, S 5, 38 U.S.C.A. S 29, to provide that no person receiving a pension under a special act should receive in addition a pension under the general law. | Can a person receiving a pension under a special act receive an additional pension under the general law? | Pension - Memo 17 - SB.docx | ROSS-003288514-ROSS-003288515 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 11028 | Kouba v. E. Joliet Bank, 135 Ill. App. 3d 264 | 308+1 | An attorney, broker, auctioneer and similar persons employed for a single transaction or for a series of transactions are agents, although as to their physical activities they are independent contractors. (Hoffman v. Morton Co. (1962), 35 Ill.App.2d 97, 181 N.E.2d 821; Restatement (second) of Agency, explanatory notes " 1 comment e; at 11 (1957).) Thus, even if we agreed with the plaintiffs that the repossessors were the Bank's agents, it is clear that in regard to their physical activities, the repossessors were independent contractors. | Attorney, broker, auctioneer and similar persons employed for single transaction or series of transactions are "agents," although as to their physical activities they are "independent contractors." | Is a broker employed for a single transaction an agent? | Principal and Agent - Memo 524 - RK_63982.docx | ROSS-003293821-ROSS-003293822 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11029 | Bavand v. OneWest Bank, F.S.B., 176 Wash. App. 475 | 307A+622 | Under CR 12(b)(6), a motion to dismiss for failure to state a claim "should be granted only if the plaintiff cannot prove any set of facts which would justify recovery." " "[A]ny hypothetical situation conceivably raised by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support plaintiff's claim." " Such motions "should be granted only "sparingly and with care." ". | Any hypothetical situation conceivably raised by a complaint defeats a motion to dismiss for failure to state a claim if it is legally sufficient to support the plaintiff's claim. CR 12(b)(6). | Should motions to dismiss for failure to state a claim be granted only sparingly and with care? | Pretrial Procedure - Memo # 8193 - C - KBM_58768.docx | ROSS-003296380-ROSS-003296381 | Order, SA, Sub | 0.51 | 1 | 0 | 1 | 1 | 1 |
| 11030 | St. John v. State, 529 N.E.2d 371 | 135H+30 | Double jeopardy principles are not invoked under the circumstances of this case. Indiana courts have recognized that sentence enhancements based on prior criminal convictions do not constitute multiple punishment in violation of the double jeopardy clause. Wise v. State (1980), 278 Ind. 498, 400 N.E.2d 114, 117; Finney v. State (1986), Ind.App., 491 N.E.2d 1029, 1032. In addition, the record reveals that the trial court based the enhancement on three aggravating factors: (1) that St. John was on probation at the time of the second offense, (2) that St. John might commit another crime, and (3) that suspension of the sentence would depreciate the seriousness of the offense. Any one of these factors could serve as the basis for sentence enhancement. Thus, St. John's sentence was not improperly enhanced. Neither his 1978 or 1980 sentences violate double jeopardy principles. Thus, the trial court did not err in denying St. John's petition for post-conviction relief. | Sentence enhancements based on prior criminal convictions do not invoke principles of double jeopardy and do not constitute multiple punishment in violation of double jeopardy clause. U.S.C.A. Const.Amend. 5. | Do sentencing enhancements for prior criminal conduct constitute multiple punishments for the prior offenses? | Double Jeopardy - Memo 1172 - C - SHB_68246.docx | ROSS-003296681-ROSS-003296682 | Order, SA, Sub | 0.79 | 1 | 0 | 1 | 1 | 1 |
| 11031 | Gunter v. Murphy's Lounge, 141 Idaho 16 | 307A+3 | Trial courts have broad discretion when ruling on a motion in limine. Sun Valley Potato Growers, Inc. v. Texas Refinery Corp., 139 Idaho 761, 767, 86 P.3d 475, 481 (2004). This Court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard. Id. at 768, 86 P.3d at 482. The trial court may deny the motion and wait until trial to determine if the evidence should be admitted or excluded. Lanham v. Idaho Power Co., 130 Idaho 486, 492, 943 P.2d 912, 918 (1997). If the trial court defers a ruling on the motion a party must reassert an objection at the time of the offer in order to preserve the issue. State v. Hester, 114 Idaho 688, 760 P.2d 27 (1988). "However, evidentiary rulings involving relevancy are not discretionary matters, and as such, are reviewed de novo on appeal." Loza v. Arroyo Dairy, 137 Idaho 764, 766, 53 P.3d 347, 349 (Ct.App.2002). | The trial court may deny the motion in limine and wait until trial to determine if the evidence should be admitted or excluded. | Can the trial court deny the motion in limine and wait until trial to determine if the evidence should be admitted or excluded? | Pretrial Procedure - Memo # 22 - C - KA.docx | ROSS-003297214-ROSS-003297216 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 11032 | Sch. of Visual Arts v. Kuprewicz, 3 Misc. 3d 278 | 386+6 | Judged by these standards, the Court concludes that the only viable cause of action pleaded in the complaint is defendant SVA's claim for common law trespass to chattels. To establish a trespass to chattels, SVA must prove that Kuprewicz intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in SVA's possession, and that SVA was harmed thereby. PJI 3:9. Thus, one who intentionally interferes with another's chattel is liable only if there results in harm to "the [owner's] materially valuable interest in the physical condition, quality, or value of the chattel, or if the [owner] is deprived of the use of the chattel for a substantial time". Restatement (Second) of Torts " 218, com. e. Furthermore, to sustain this cause of action, the defendant must act with the intention of interfering with the property or with knowledge that such interference is substantially certain to result. Buckeye Pipeline Co., Inc. v. Congel"Hazard, Inc., 41 A.D.2d 590, 340 N.Y.S.2d 263 (4th Dept.1973); 2 N.Y. PJI 2d 86 (2003). | To establish trespass to chattels, plaintiff must prove that defendant intentionally, and without justification or consent, physically interfered with use and enjoyment of personal property in plaintiff's possession, and that plaintiff was harmed thereby. | What constitutes a trespass to chattel? | Trespass - Memo 112 - JS.docx | ROSS-003297728-ROSS-003297729 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 11033 | Grosch v. Tunica Cty., Mississippi, 569 F. Supp. 2d 676 | 386+7 | "The difference between trespass to chattels and conversion is primarily one of degree. Trespass to chattels in modern tort law involves interference or damage that is of a less serious or substantial nature. Conversion claims involve substantial interference or damage. Otherwise the elements are the same. Conversion is by far the more important of the two torts." Encyclopedia of Mississippi Law, " 41:77. To prevail on a claim of trespass to chattels, a plaintiff "must establish that there has been an unauthorized interference with his possession of personal property, or an unauthorized use of his personal property." Awad v. United States, 2001 WL 741638 (N.D.Miss.2001). "If the interference is of such a substantial nature that the defendant can justly be compelled to pay the entire value of the chattel, the plaintiff's remedy is an action for conversion." Encyclopedia of Mississippi Law, " 41:78. "[T]here is a conversion only when there is an "intent to exercise dominion or control over goods which is inconsistent with the true owner's right." While intent is necessary, it need not be the intent of a wrongdoer." Wilson v. General Motors Acceptance Corp., 883 So.2d 56, 68 (Miss.2004). | Under Mississippi law, difference between trespass to chattels and conversion is primarily one of degree; trespass to chattels involves interference or damage that is of less serious or substantial nature, but conversion claims involve substantial interference or damage. | What is the difference between trespass to chattels and conversion? | Trespass - Memo 122 - RK.docx | ROSS-003298458-ROSS-003298459 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 11034 | Able v. United States, 863 F. Supp. 112 | 34+2 | The Act and Regulations are "void for vagueness" only if they fail to (1) "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" or (2) "provide explicit standards for those who apply them." Grayned v. City of Rockford, 408 U.S. 104, 108"09, 92 S.Ct. 2294, 2298"99, 33 L.Ed.2d 222 (1972). Furthermore, where military regulation is at issue "Congress is permitted to legislate with both greater breadth and with greater flexibility" than in the civilian context. Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561"62, 41 L.Ed.2d 439 (1974). | When military regulation is at issue Congress is permitted to legislate with both greater breadth and with greater flexibility, than in civilian context, before statute can be declared void for vagueness. | Is Congress permitted to legislate with both greater breadth and with greater flexibility when military regulation is at issue? | Armed Forces - Memo 43 - RK.docx | ROSS-003299165-ROSS-003299166 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11035 | Dix Mut. Ins. Co. v. LaFramboise, 149 Ill. 2d 314 | 366+1 | The doctrine of subrogation is a creature of chancery. It is a method whereby one who has involuntarily paid a debt or claim of another succeeds to the rights of the other with respect to the claim or debt so paid. (34 Ill.L. &Prac. Subrogation " 2 (1958).) The right of subrogation is an equitable right and remedy which rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall. (34 Ill.L. &Prac. Subrogation " 2 (1958).) Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. (34 Ill.L. &Prac. Subrogation " 6 (1958).) There is no general rule which can be laid down to determine whether a right of subrogation exists since this right depends upon the equities of each particular case. See 34 Ill.L. &Prac. Subrogation " 6 (1958). | There is no general rule to determine whether right of subrogation exists since right depends upon equities of each particular case. | Is there a general rule to determine whether a right of subrogation exists? | Subrogation - Memo 267 - ANG C.docx | ROSS-003299401-ROSS-003299402 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11036 | McCarthy v. Azure, 22 F.3d 351 | 25T+112 | We start with bedrock: "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352"53, 4 L.Ed.2d 1409 (1960). Thus , a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate some claims. | Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit; thus, party seeking to substitute in arbitral forum or judicial forum must show, at a bare minimum, that protagonists have agreed to arbitrate some claims. | What should a party seeking to substitute arbitral forum or judicial forum prove? | Alternative Dispute Resolution - Memo 81 - AKA.docx | ROSS-003299413-ROSS-003299414 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 11037 | JPMorgan Chase Bank v. Howell, 883 N.E.2d 106 | 366+1 | Equity One, however, contends that in light of the undisputed facts, the trial court should have given its mortgage priority over Bank One's mortgage based on the doctrine of equitable subrogation, which we have described as "a highly favored doctrine, which is to be given a liberal application." Osterman v. Baber, 714 N.E.2d 735, 738 (Ind.Ct.App.1999), trans. denied. "Subrogation arises from the discharge of a debt and permits the party paying off a creditor to succeed to the creditor's rights in relation to the debt." Bank of New York v. Nally, 820 N.E.2d 644, 651 (Ind.2005). "[T]he application of the doctrine of equitable subrogation depends on the equities and attending facts and circumstances of each case." at 654. | The application of the doctrine of equitable subrogation depends on the equities and attending facts and circumstances of each case. | Does the application of the doctrine of equitable subrogation depend on the equities and attending facts and circumstances of each case? | Subrogation - Memo # 482 - C - SA.docx | ROSS-003299545-ROSS-003299546 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11038 | Gen. Motors Corp. v. Pamela Equities Corp., 146 F.3d 242 | 25T+111 | Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard. Rodolphe J.A. de Seife, Practice Guide " 3.02, in Gabriel M. Wilner, 2 Domke On Commercial Arbitration (Rev. ed. 1997) (citing Black's Law Dictionary (5th ed. 1979); The Plain Language Law Dictionary (Rothenberg, ed. 1981); Dictionary of Law (Coughlin, ed. 1982); Britton, The Arbitration Guide, (1982)). See alsoLa.Civ.Code art. 3099. Parties may agree to the submission to arbitration of existing controversies without any previous contract to do so. Executone Info. Systems, Inc. v. Davis, 26 F.3d 1314, 1323 (5th Cir.1994). Parties may also agree upon the use of arbitration at the commencement of a contractual relationship to settle future disputes by including an arbitration clause in their contract. 1 Domke, supra " 1:01, at 2. | "Arbitration" is the reference of a particular dispute to an impartial third person chosen by the parties to the dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard. LSA-C.C. art. 3099. | What is arbitration? | Alternative Dispute Resolution - Memo 24 - JS.docx | ROSS-003299631-ROSS-003299632 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 11039 | In re Frankum, 399 B.R. 498 | 366+1 | "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." Dan B. Dobbs, Law of Remedies " 4.3 at 404 (2d ed.1993). The right to assert those rights is not automatic and courts must look to the particular facts and circumstances of a case to determine if subrogation is appropriate. In re Co"Build Companies, Inc. 21 B.R. 635, 636 (Bankr.E.D.Pa.1982). Subrogation may arise in two different contexts: (1) when a person who is not liable for a debt pays a creditor and seeks reimbursement from the debtor for the monies paid to that creditor; or (2) when a person is liable for the debt as a codebtor, surety or guarantor, and seeks reimbursement of the debt he has paid. See 3 Collier on Bankruptcy " 54.02 (Matthew Bender 15th Ed. Rev.). | "Subrogation" simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against defendant. | Does subrogation simply mean substitution of one person for another? | Subrogation - Memo 323 - RM C.docx | ROSS-003302845-ROSS-003302846 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 11040 | Acuity v. McGhee Eng'g, 297 S.W.3d 718 | 366+1 | Traughber asserts that summary judgment was appropriate as to Acuity's claims against Traughber because the equities favor Traughber. Under Tennessee law, equitable subrogation "will not be enforced where the equities are equal, or the rights are not clear, or where it will prejudice the legal or equitable rights of others." Collins, 124 S.W.3d at 579; (quoting Castleman, 432 S.W.2d at 675). A balancing of the equities, however, is necessarily a fact-intensive inquiry, and as will be discussed more fully below, there remain significant factual disputes in the present case. | Equitable subrogation will not be enforced where the equities are equal, or the rights are not clear, or where it will prejudice the legal or equitable rights of others. | "Will equitable subrogation be enforced where the equities are equal, or the rights are not clear, or where it will prejudice the legal or equitable rights of others? " | Subrogation - Memo # 437 - C - SU.docx | ROSS-003309732-ROSS-003309734 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 11041 | Phillippe v. State, 458 N.E.2d 1159 | 135H+100.1 | A distinction is drawn between retrial after dismissal or mistrial, and retrial after acquittal; whether rendered by a jury, directed by the court, or reversed on the basis of insufficiency of the evidence. In the last instance, acquittal is an absolute shield protecting the defendant from a retrial, even if the acquittal is on a defective charging instrument. Tibbs v. Florida, (1982) 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; United States v. Ball, (1896) 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300; Hudson v. Louisiana, (1981) 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30. However, retrial is not barred after reversal based on a judgment on the evidence which was improperly granted. State v. Lewis, (1981) Ind., 429 N.E.2d 1110. | Acquittal is absolute shield protecting defendant from retrial even if acquittal is on defective charging instrument. IC 35-41-4-3 (1982 Ed.); Const. Art. 1, S 14; U.S.C.A. Const.Amend. 14. | Is an acquittal an absolute shield protecting a defendant from retrial even if an acquittal is on a defective charging instrument? | Double Jeopardy - Memo 809 - C - SKG_67926.docx | ROSS-003310240-ROSS-003310241 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11042 | Trendmark Homes v. Bank of N. Georgia, 314 Ga. App. 886 | 157+420(7) | Further, the promissory notes contain clauses whereby Trendmark Homes waived its right to require the Bank to demand payments due or provide notice of nonpayment, and Trendmark Homes agreed that if the Bank failed to declare an event a default, the Bank did not waive its right to later consider the event a default if it continued or repeated. Moreover, the loan documents, by their express terms, cannot be modified except as agreed to by the Bank in writing, and Rose's guaranties are absolute and unconditional, and they include waivers of all defenses of Trendmark. Trendmark does not assert any ambiguity in the loan documents, nor any modification in writing. "It is well established that [such] a promissory note may not be modified by the imposition of conditions not apparent on its face. The note being an unconditional promise, the contract is complete as written; parol evidence may not be used to impose conditions which are not apparent from the face of the note." Therefore, even to the extent that the Bank discussed accepting a lowered payoff amount, such negotiations not reduced to a writing executed by the Bank did not alter the written promissory notes or their enforceability.4 In short, Trademark's response to the summary judgment motion provides no evidence that the agreement was altered, nor any evidence supporting the defenses of estoppel, waiver, or mutual departure. Under these circumstances, the trial court did not err by granting summary judgment to the Bank. | Because a promissory note is an unconditional promise, and the contract is complete as written, parol evidence may not be used to impose conditions which are not apparent from the face of the note. | Can a promissory note be modified by the imposition of conditions which are not apparent on its face? | Bills and Notes - Memo 18 - RK.docx | ROSS-003310621-ROSS-003310622 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11043 | Grosch v. Tunica Cty., Mississippi, 569 F. Supp. 2d 676 | 386+7 | "The difference between trespass to chattels and conversion is primarily one of degree. Trespass to chattels in modern tort law involves interference or damage that is of a less serious or substantial nature. Conversion claims involve substantial interference or damage. Otherwise the elements are the same. Conversion is by far the more important of the two torts." Encyclopedia of Mississippi Law, " 41:77. To prevail on a claim of trespass to chattels, a plaintiff "must establish that there has been an unauthorized interference with his possession of personal property, or an unauthorized use of his personal property." Awad v. United States, 2001 WL 741638 (N.D.Miss.2001). "If the interference is of such a substantial nature that the defendant can justly be compelled to pay the entire value of the chattel, the plaintiff's remedy is an action for conversion." Encyclopedia of Mississippi Law, " 41:78. "[T]here is a conversion only when there is an "intent to exercise dominion or control over goods which is inconsistent with the true owner's right." While intent is necessary, it need not be the intent of a wrongdoer." Wilson v. General Motors Acceptance Corp., 883 So.2d 56, 68 (Miss.2004). | Under Mississippi law, difference between trespass to chattels and conversion is primarily one of degree; trespass to chattels involves interference or damage that is of less serious or substantial nature, but conversion claims involve substantial interference or damage. | Is there a difference between trespass to chattel and conversion? | Trespass - Memo 119 - RK.docx | ROSS-003311012-ROSS-003311013 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 11044 | Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank, 265 F.3d 601 | 366+1 | The right of subrogation originated in equity. Dix Mut. Ins. Co. v. LaFramboise, 149 Ill.2d 314, 173 Ill.Dec. 648, 597 N.E.2d 622, 624 (1992). It allowed a person who was compelled to pay someone else's claim or debt to succeed to that person's rights, so that the payor could recover from the individual whose conduct gave rise to the claim or debt. See id. In this way, courts sought to achieve substantial justice, "by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall." Id.; see also Schultz v. Gotlund, 138 Ill.2d 171, 149 Ill.Dec. 282, 561 N.E.2d 652, 653 (1990); Riggs Nat'l Bank, 646 A.2d at 968. Subrogation can arise from an agreement (express or implied) between the subrogor and subrogee, in which case it is often referred to as conventional or contractual subrogation. Schultz, 149 Ill.Dec. 282, 561 N.E.2d at 653. But the right to subrogation does not invariably depend on the existence of an agreement; equitable subrogation can arise simply from the fact of payment. Riggs Nat'l Bank, 646 A.2d at 968; Federal Ins. Co. v. Arthur Andersen & Co., 75 N.Y.2d 366, 553 N.Y.S.2d 291, 552 N.E.2d 870, 872 (1990); Liberty Mut. Ins. Co. v. Thunderbird Bank, 113 Ariz. 375, 555 P.2d 333, 335 (1976); see also Schultz, 149 Ill.Dec. 282, 561 N.E.2d at 653. | Under Illinois law, right to subrogation does not invariably depend upon existence of agreement; rather, right of equitable subrogation can arise simply from fact of payment. | Do equitable subrogation claims depend on the existence of an agreement and arise simply from the fact of payment? | Subrogation - Memo 236- VG C.docx | ROSS-003311019-ROSS-003311021 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11045 | City of Quincy v. Diamond Const. Co., 327 Ill. App. 3d 338 | 307A+3 | A trial court has broad discretion to grant or deny a motion in limine as part of its inherent power to admit or exclude evidence. As such, we will not reverse the trial court's decision to grant or deny a motion in limine absent a clear abuse of discretion. people v. williams, 188 Ill.2d 365, 369, 242 Ill.Dec. 260, 721 N.E.2d 539, 542 (1999). | A trial court has broad discretion to grant or deny a motion in limine as part of its inherent power to admit or exclude evidence. | Is it within the discretion of the trial judge to grant or deny a motion in limine? | Pretrial Procedure - Memo # 955 - C - MLS.docx | ROSS-003311185-ROSS-003311186 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 11046 | AT&T Mobility LLC v. Concepcion, 563 U.S. 333 | 360+18.15 | When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. Preston v. Ferrer, 552 U.S. 346, 353, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration. In Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), for example, we noted that the FAA's preemptive effect might extend even to grounds traditionally thought to exist " "at law or in equity for the revocation of any contract." " Id., at 492, n. 9, 107 S.Ct. 2520 (emphasis deleted). We said that a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what ... the state legislature cannot." Id., at 493, n. 9, 107 S.Ct. 2520. | When state law prohibits outright the arbitration of a particular type of claim, the conflicting state rule is displaced by the Federal Arbitration Act (FAA). 9 U.S.C.A. S 2. | Will the Federal Arbitration Act (FAA) displace a state rule that prohibits arbitration? | Alternative Dispute Resolution - Memo 333 - RK.docx | ROSS-003311347-ROSS-003311348 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 11047 | Brokamp v. Mercy Hosp. Anderson, 132 Ohio App. 3d 850 | 307A+3 | A motion in limine "is a tentative, interlocutory, precautionary ruling by a trial court reflecting its anticipatory treatment of an evidentiary issue. In virtually all circumstances finality does not attach when the motion is granted." The power to grant a motion in limine lies within the sound discretion of the trial court. | Power to grant a motion in limine lies within the sound discretion of the trial court. | Does the power to grant a motion in limine lie within the sound discretion of the trial court? | Pretrial Procedure - Memo # 951 - C - MLS.docx | ROSS-003314331-ROSS-003314332 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11048 | Lake Cty. Tr. Co. v. Lane, 478 N.E.2d 684 | 320+82(5) | It is the law in Indiana that the owner of property whereon a public highway lies holds the property in fee, subject only to the public's easement. Magee v. Overshiner (1898), 150 Ind. 127, 49 N.E. 951; The Terre Haute and Southeastern Railroad Company v. Rodel (1883), 89 Ind. 128; Hagaman v. Moore et al. (1882), 84 Ind. 496; Board of Com'rs of Vanderburgh Cty. v. Joeckel (1980), Ind.App., 407 N.E.2d 274. Applying this rule to the present case, there can be no doubt that the Montgomerys are the adjacent and adjoining landowners to the east of the abandoned railroad right of way. Thus, the trial court erred in this determination and the cause is hereby remanded to enter judgment for the Montgomerys. | In view of rule that owner of property whereon public highway lies holds property in fee, subject only to public's easement, owners of property that abutted county road on the east, rather than the county, were owners to whom one half of abandoned railroad right-of-way easement reverted where the east edge of the right-of-way met the abutting property at approximately the outerline of the highway. | "Does the owner of a property, whereon public highway lies, hold property in fee, subject only to publics easement? " | Highways -Memo 157 - DB.docx | ROSS-003314371-ROSS-003314372 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 11049 | Acuity v. McGhee Eng'g, 297 S.W.3d 718 | 366+1 | Traughber asserts that summary judgment was appropriate as to Acuity's claims against Traughber because the equities favor Traughber. Under Tennessee law, equitable subrogation "will not be enforced where the equities are equal, or the rights are not clear, or where it will prejudice the legal or equitable rights of others." Collins, 124 S.W.3d at 579; (quoting Castleman, 432 S.W.2d at 675). A balancing of the equities, however, is necessarily a fact-intensive inquiry, and as will be discussed more fully below, there remain significant factual disputes in the present case. | Equitable subrogation will not be enforced where the equities are equal, or the rights are not clear, or where it will prejudice the legal or equitable rights of others. | "Will subrogation or equitable subrogation be enforced where the equities are equal, or the rights are not clear, or where it will prejudice the legal or equitable rights of others?" | Subrogation - Memo 324 - VP.docx | ROSS-003314825-ROSS-003314826 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 11050 | Horvath v. Bank of New York, N.A., 641 | 83E+426 | The upshot of these provisions is clear. Negotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it. With these principles in mind, we turn to evaluating Horvath's claims | Under Virginia law, negotiable instruments like mortgage notes that are endorsed in blank may be freely transferred; whoever possesses an instrument endorsed in blank has full power to enforce it. West's V.C.A. SS 8.3A-104, 8.3A-201(b), 8.3A-203(b), 8.3A-205(b). | Can negotiable instruments like mortgage notes that are endorsed in a bank be transferred for nine-tenth of the possession? | Bills and Notes- Memo 347-PR_60210.docx | ROSS-003320794 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 11051 | Kouba v. E. Joliet Bank, 135 Ill. App. 3d 264 | 308+1 | An attorney, broker, auctioneer and similar persons employed for a single transaction or for a series of transactions are agents, although as to their physical activities they are independent contractors. (Hoffman v. Morton Co. (1962), 35 Ill.App.2d 97, 181 N.E.2d 821; Restatement (second) of Agency, explanatory notes " 1 comment e; at 11 (1957).) Thus, even if we agreed with the plaintiffs that the repossessors were the Bank's agents, it is clear that in regard to their physical activities, the repossessors were independent contractors. | Attorney, broker, auctioneer and similar persons employed for single transaction or series of transactions are "agents," although as to their physical activities they are "independent contractors." | Is an auctioneer employed for a single transaction an agent? | Principal and Agent - Memo 543 - RK_64001.docx | ROSS-003322430-ROSS-003322431 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 11052 | Kamm's Estate v. C.I.R., 349 F.2d 953 | 308+15 | The taxpayers also argue that Unger was an "escrowee", rather than an agent, because he was charged with making certain disbursements before remitting the net proceeds to the taxpayers. But this argument misconceives the nature of an escrow.Such an arrangement involves an intermediary with obligations to parties on both sides of the transaction, Commissioner of Internal Revenue v. Tyler, 3d Cir. 1934, 72 F.2d 950, as distinguished from an agent acting exclusively in the interest of and pursuant to the authority and direction of the seller. Of course, the fact that an agent represents several sellers, who have given various instructions concerning the disposition of their several shares in the proceeds, does not derogate from the individual agency relation between each seller and the common agent. Minnie R. Ebner, 1956, 26 T.C. 962; O. D. Bratton, 1959, 31 T.C. 891, 900, aff'd per curiam, 6th Cir. 1960, 283 F.2d 257, cert. denied, 1961, 366 U.S. 911, 81 S.Ct. 1084, 6 L.Ed.2d 235. | Fact that an agent represents several sellers who have given various instructions concerning disposition of their several shares and proceeds does not derogate from individual agency relation between each seller and common agent. | Can an agent represent multiple sellers or principals? | Principal and Agent - Memo 9 -RK.docx | ROSS-003323456-ROSS-003323457 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 11053 | State Bar of California v. Statile, 168 Cal. App. 4th 650 | 366+2 | "Subrogation, a legal fiction, is broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right. It is a right which is purely derivative and it permits a party who has been required to satisfy a loss created by a third party's wrongful act to step into the shoes of the loser and pursue recovery from the responsible wrongdoer. Stated another way, it is a substitution of one person in place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to a debt or claim, and its rights, remedies, or securities." (73 Am.Jur.2d (2001) Subrogation, " 1, pp. 541"542, fns. omitted.) " "Statutory subrogation," as its name suggests, arises by an act of the legislature that vests a right of subrogation with a party or category of parties, and it is governed by the terms of the statute under which it is claimed as a matter of statutory construction." (Id. at pp. 544"545, 216 Cal.Rptr. 367, 702 P.2d 525, fns. omitted.) " "The nature of subrogation and its prohibition against double recovery make it abundantly clear that subrogation involves succession to the rights of others. Rights under subrogation are derivative rights, and succession to another's rights, like water, cannot rise higher than its source." " (Board of Administration v. Glover (1983) 34 Cal.3d 906, 915, 196 Cal.Rptr. 330, 671 P.2d 834, quoting Ventura County Employees' Retirement Association v. Pope (1978) 87 Cal.App.3d 938, 952, 151 Cal.Rptr. 695.) "The "true nature of subrogation" is that " "it is applied in all cases in which "one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter." " ' " (Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc. (1997) 52 Cal.App.4th 553, 558, 60 Cal.Rptr.2d 591.) It is abundantly clear here that Statile was primarily answerable for any loss suffered by the applicants and, in equity and good conscience, should | The true nature of subrogation is that it is applied in all cases in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter. | What is the true nature of subrogation? | Subrogation - Memo 303 - RM C.docx | ROSS-003324542-ROSS-003324543 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11054 | Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V., 61 F. Supp. 3d 372 | 221+342 | [T]he act of state doctrine [ ] concerns foreign governments' conduct within their own territory: it holds that generally "the courts of this country [will not] inquir[e] into the validity of the public acts [of] a recognized foreign sovereign power committed within its own territory." " However, it is black-letter law that the doctrine "does not prevent examination of the validity of an act of a foreign state with respect to a thing located, or an interest localized, outside of its territory." While " "the situs of intangible property is about as intangible a concept as is known to the law,"[g]enerally courts have viewed the situs of the right to use a trademark or to market products "to be in that nation granting the marketing rights or the right to use the trademark itself rather than in that nation in which the person or company who was given the right to use the trademark or who manufactures the product is located." " Therefore, the doctrine does not apply to international trademark disputes in which a foreign government declares, through a formal decree, an act, directive, or otherwise, U.S. trademark rights to be its own property, or that of another foreign or U.S. entity. | Act of state doctrine does not prevent examination of validity of foreign state's act with respect to thing located, or interest localized, outside of its territory. | "Does the act of state doctrine prevent examination of validity of foreign state's act with respect to thing located, or interest localized, outside of its territory?" | International Law - Memo # 138 - C - SA.docx | ROSS-003326152-ROSS-003326153 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 11055 | Alemayehu v. Abere, 199 F. Supp. 3d 74 | 9+1 | "An accounting is "a detailed statement of the debits and credits between parties arising out of a contract or a fiduciary relation.""Bates v. Nw. Human Servs., Inc., 466 F.Supp.2d 69, 103 (D.D.C.2006) (quoting Union Nat'l Life Ins. Co. v. Crosby, 870 So.2d 1175, 1178 n. 2 (Miss.2004)); see also Haynes v. Navy Fed. Credit Union, 825 F.Supp.2d 285, 293 (D.D.C.2011). An accounting may be appropriate "when a plaintiff is unable "to determine how much, if any, money is due him from another."" Bates, 466 F.Supp.2d at 103 (quoting Bradshaw v. Thompson, 454 F.2d 75, 79 (6th Cir.1972)). | An accounting is a detailed statement of the debits and credits between parties arising out of a contract or a fiduciary relation; such relief may be appropriate when a plaintiff is unable to determine how much, if any, money is due him from another. | What is accounting? | 01477.docx | LEGALEASE-00077038-LEGALEASE-00077039 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 11056 | State v. Wooderd, 20 Iowa 541 | 181+1 | The making or alteration of any writing with a fraudulent intent, whereby another may be prejudiced, is forgery. It is not essential that any person should be actually injured. | The making or alteration of any writing, with a fraudulent intent, whereby another may be prejudiced, is forgery; it is not essential that any person should be actually injured. | "In forgery, is it essential that the person must be actually injured?" | Forgery - Memo 15 - RM.doc | ROSS-003288691-ROSS-003288692 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 11057 | State v. White, 115 Wis. 2d 696 | 181+19 | For the most part, what has already been said disposes of defendant's complaint that since he had been acquitted of the forgery charge, the trial court should not have admitted evidence he had written the check in question. As indicated earlier, the state in the present trial was required to prove the check was forged, and it was entitled to use whatever evidence it had tending to establish that element of the uttering offense. The mere fact that the jury at his first trial did not find defendant guilty of forgery did not preclude use of some of the same evidence at his second trial. The crimes of forgery and attempting to utter a forged instrument are separate and distinct offenses; conviction of one is not dependent upon conviction of the other. (See, State v. Murphy, supra; 22 C.J.S. Criminal Law s 289.) | Crimes of forgery and attempting to utter a forged instrument are separate and distinct offenses; conviction of one is not dependent upon conviction of other. K.S.A. 21-621. | Are forgery and uttering forged instrument two separate crimes? | Forgery - Memo 9 - RMM.docx | ROSS-003281708-ROSS-003281709 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 11058 | Fallarino v. Fallarino, 56 Misc. 3d 67 | 315+185 | "A life estate is more than merely a right of enjoyment. Rather, a life tenant is entitled to possession, control, and enjoyment of the property for the duration of his or her life' (56 N.Y. Jur. 2d, Estates, Powers, and Restraints on Alienation " 35). The substance of a life estate consists in the life tenant's right to exclude all others from the possession of the subject property for the duration of his or her own life' (Torre v. Giorgio, 51 A.D.3d 1010, 1011 [858 N.Y.S.2d 765] [2008] [internal quotation marks and citation omitted] ). Because the life tenant has the exclusive right to the property during his or her life, the remainderman or reversioner has no right to possession or any present right of enjoyment, or tangible or physical ownership, of the land' during the term of the life tenancy (56 N.Y. Jur. 2d, Estates, Powers, and Restraints on Alienation " 186). Therefore, as a remainderman, petitioner has no right to possession of the premises for the duration of the [mother's] life and, thus, no standing to bring this summary proceeding to recover possession" (Novakovic v. Novakovic, 25 Misc.3d 94, 95"96 [890 N.Y.S.2d 758] [App.Term, 2d Dept., 2d, 11th & 13th Jud.Dists.2009]; see also Kurek v. Luszcyk, 51 Misc.3d 19, 20 [28 N.Y.S.3d 550] [App.Term, 2d Dept., 2d, 11th & 13th Jud.Dists.2015] ). | Because the life tenant has the exclusive right to the property during his or her life, the remainderman or reversioner has no right to possession or any present right of enjoyment, or tangible or physical ownership, of the land' during the term of the life tenancy. | What is the substance of right conferred on a life tenant? | Life Estates - Memo 2 - RM.docx | ROSS-003295180-ROSS-003295182 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 11059 | Melnick v. Pennsylvania Co. for Banking & Trusts, 180 Pa. Super. 441 | 38+31 | The contention that there was an effective, irrevocable assignment of the right to possession of the certificate of title is also in error. A legal assignment has been defined as ""a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel, or other thing"."In re Purman's Estate, 358 Pa. 187, 190, 56 A.2d 86, 88, 175 A.L.R. 1129. An analysis of the writing in question discloses that Tooks merely wrote that "I * * * hereby authorize and empower you * * * to transfer and assign the title certificate to said truck to (plaintiff) * * * upon full and complete payment by me or by the said (plaintiff) to you of the entire amount of said encumbrance or the balance thereof due you." These words indicate no present intent to transfer or divest oneself from the right to demand possession of the certificate of title at the time it would normally be returned to the debtor. The most we can construe from this writing is an authorization from Tooks to defendant to turn over the certificate of title to plaintiff. In other words Tooks stated that if plaintiff paid off the encumbrance and defendant delivered the certificate of title to plaintiff, Tooks would have no redress against defendant. However, such did not occur. Instead Tooks paid off the encumbrances one year later, after having executed a clear and concise revocation of the authorization. Since there was no legal assignment, but only a written permission to do something, that permission could be and was properly revoked. | A "legal assignment" is a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel or other thing. | What is an assignment? | Assignments - Memo 3 - MS.docx | LEGALEASE-00000459-LEGALEASE-00000460 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11060 | Joule v. Simmons, 459 Mass. 88 | 25T+112 | Even where there is a clear and unmistakable provision in an employment agreement requiring arbitration of discrimination claims, however, it would not affect the MCAD's authority under G.L. c. 151B, " 5. "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it "does not require parties to arbitrate when they have not agreed to do so".... "Arbitration under the [FAA] is a matter of consent, not coercion." " EEOC v. Waffle House, Inc., 534 U.S. 279, 293, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (Waffle House ), quoting Volt Info. Sciences, Inc. v. Trustees of Leland Stanford Jr. Univ., 489 U.S. at 478, 479, 109 S.Ct. 1248. The MCAD is not a party to the employment agreement at issue here, has not agreed to arbitration of Simmons's MCAD complaint, and cannot be bound by the agreement's arbitration provision. "[T]he proarbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to do so." Waffle House, supra at 294, 122 S.Ct. 754. Accordingly, assuming the validity of the agreement's arbitration provision, nothing in it precludes the MCAD from proceeding with its investigation and resolution of Simmons's discrimination complaint"including, if the evidence warrants, granting relief specific to Simmons. | Federal Arbitration Act (FAA) directs courts to place arbitration agreements on equal footing with other contracts, but it does not require parties to arbitrate when they have not agreed to do so; arbitration under the FAA is a matter of consent, not coercion. 9 U.S.C.A. S 1 et seq. | What is the basic precept of arbitration imposed by Federal Arbitration Act (FAA)? | 003717.docx | LEGALEASE-00115756-LEGALEASE-00115758 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11061 | Nat'l Football League Players Ass'n on behalf of Peterson v. Nat'l Football League, 831 F.3d 985 | 231H+1576 | The Association first asserts that Arbitrator Henderson was "evidently partial," because he demonstrated "such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives." Dow Corning Corp. v. Safety Nat'l Cas. Corp, 335 F.3d 742, 750 (8th Cir.2003) (quotation omitted). In Williams v. National Football League, 582 F.3d 863 (8th Cir.2009), an NFL player raised a virtually identical challenge to the League's general counsel serving as an arbitrator in a dispute arising under the previous collective bargaining agreement. We held that the Association had "waived its objection to [the general counsel] serving as arbitrator by agreeing in the CBA that the Commissioner's designee ... could serve as arbitrator." Id. at 885"86. Allowing the Commissioner or the Commissioner's designee to hear challenges to the Commissioner's decisions may present an actual or apparent conflict of interest for the arbitrator. But the parties bargained for this procedure, and the Association consented to it. See CBA art. 46 " 2(a). It was foreseeable that arbitration under the Agreement sometimes would involve challenges to the credibility of testimony from Goodell or other League employees. When parties to a contract elect to resolve disputes through arbitration, a grievant "can ask no more impartiality than inheres in the method they have chosen." Winfrey v. Simmons Foods, Inc., 495 F.3d 549, 551 (8th Cir.2007) (quotation omitted). The Association's challenge to Henderson's service as arbitrator is thus foreclosed by Williams, and a remand is unnecessary. Accord Nat'l Football League Mgmt. Council v. Nat'l Football Players Ass'n, 820 F.3d 527, 548 (2d Cir.2016). | When parties to a labor contract elect to resolve disputes through arbitration, a grievant can ask no more impartiality than inheres in the method they have chosen. Labor Management Relations Act, 1947 S 301, 29 U.S.C.A. S 185. | Can parties to arbitration ask for more impartiality than inheres in the method they have chosen? | 003725.docx | LEGALEASE-00115748-LEGALEASE-00115750 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11062 | Saint John Marine Co. v. United States, 92 F.3d 39 | 393+986 | At one time, the Court construed the Anti"Assignment Act strictly, but "[t]he rigor of this rule was very early relaxed in cases which were thought not to be productive of the evils which the statute was designed to obviate." Aetna Casualty, 338 U.S. at 373, 70 S.Ct. at 212. The Anti"Assignment Act now generally prohibits the "voluntary assignment of demands against the government," Erwin v. United States, 97 U.S. 392, 397, 24 L.Ed. 1065 (1878); see also Shannon, 342 U.S. at 292, 72 S.Ct. at 284; Aetna Casualty, 338 U.S. at 374"75, 70 S.Ct. at 212"13, but does not prohibit assignments or transfers of claims against the United States that occur involuntarily by operation of law, Erwin, 97 U.S. at 397; United States v. Gillis, 95 U.S. 407, 416, 24 L.Ed. 503 (1877). This is true without regard to whether an assignment by operation of law produces some of the inconveniences sought to be avoided by the Anti"Assignment Act. Aetna Casualty, 338 U.S. at 375"76, 70 S.Ct. at 212"213 (rejecting Government's theory that "an assignment by operation of law is not always exempt from the bar of [the Anti"Assignment Act], but that in addition the assignment must be of a kind that will not involve the Government in the procedural difficulties previously referred to"). Moreover, "[t]hat an assignment is voluntary is not an end to the matter." Shannon, 342 U.S. at 292, 72 S.Ct. at 284. The Supreme Court has held that some transfers are valid under the Anti"Assignment Act even though they are intentional and volitional, because they are so closely analogous in effect and design to transfers that occur by operation of law. Thus, a testamentary transfer of a claim, which is voluntary, may burden the Government by multiplying the number of claimants, but no lesser burden is caused when the transfer is by intestacy, Aetna Casualty, 338 U.S. at 375 n. 12, 70 S.Ct. at 212 n. 12, and "[i]t would be unwise to make a distinction" between these two transfers solely for purposes of the | Anti-Assignment Act generally prohibits voluntary assignment of demands against the government, but does not prohibit assignments or transfers of claims against the United States that occur involuntarily by operation of law, without regard to whether assignment by operation of law produces some of the inconveniences sought to be avoided by the Act. 31 U.S.C.A. S 3727. | Does the Anti- Assignments Act prohibit voluntary assignments? | Assignments - Memo 14 JS.docx | ROSS-003284584-ROSS-003284586 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 11063 | Hall v. Elrac, 79 A.D.3d 427 | 21+15 | We find that the IAS court properly considered the affidavit of defendant Elrac's senior account manager in the damage unit in concluding that defendant's disposal of the vehicle in question was not done in bad faith. Initially, plaintiff's claim that the affidavit was not in admissible form because it was signed outside New York State but notarized by a New York notary, without providing a certificate of conformity as required by CPLR 2309(c) and Real Property Law " 299"a is unpreserved (see Matapos Tech. Ltd. v. Compania Andina de Comercio Ltda, 68 A.D.3d 672, 673, 891 N.Y.S.2d 394 [2009]; P.T. Bank Cent. Asia v. Chinese Am. Bank, 229 A.D.2d 224, 229, 654 N.Y.S.2d 117 [1997] ). In any event, as long as the oath is duly given, authentication of the oathgiver's authority can be secured later, and given nunc pro tunc effect if necessary (Matapos Tech. Ltd., 68 A.D.3d at 673, 891 N.Y.S.2d 394). | As long as the oath for a foreign affidavit is duly given, authentication of the oathgiver's authority can be secured later, and given nunc pro tunc effect if necessary. McKinney's CPLR 2309(c); McKinney's Real Property Law S 299-a. | Can the authentication of the oathgivers authority be secured later? | 003775.docx | LEGALEASE-00115824-LEGALEASE-00115825 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11064 | In re Strange's Estate, 164 Misc. 929 | 38+9 | Generalizing this result, the court added that: "Courts of equity will support assignments * * * of contingent interests and expectations * * * provided the agreements are fairly entered into, and it would not be against public policy to uphold them." (Italics supplied.) In Kimball v. Farmers' & Mechanics' Nat. Bank of Buffalo, 138 N.Y. 500, 506, 34 N.E. 337, 20 L.R.A. 497, the rule is reasserted. | Equity courts will support post-obit agreements assigning contingent interests, provided agreements are fairly entered into, and it would not be against public policy to uphold them, and no special type of agreement need be present to support such contracts. | Does equity uphold assignments of contingent interests? | Assignments - Memo 21 AKA.docx | ROSS-003297046-ROSS-003297048 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |
| 11065 | Keese v. Zerbst, 88 F.2d 795 | 181+10 | Erasing words from an instrument or severing a portion thereof so that its effect is changed is a material alteration and constitutes forgery at common law.State v. Stratton, 27 Iowa, 420, 1 Am.Rep. 282; State v. Mitton, 37 Mont. 366, 96 P. 926, 127 Am.St.Rep. 732; Bishop on Criminal Law (9th Ed.) Vol. 2, Sec. 578-2. One side of the note contained the promise of the American National Bank of Austin to pay the bearer Five Dollars on demand and recited that the note was redeemable in lawful money of the United States at the United States Treasury or at the American National Bank of Austin, Texas. A severance of this portion of the note from the reverse side, which contained no such promise or recital, changed the effect of the note and constituted a material alteration. | Erasing words from instrument or severing portion thereof so that its effect is changed is material alteration and constitutes "forgery" at common law. | Does erasing words from an instrument constitute forgery? | 003938.docx | LEGALEASE-00115941-LEGALEASE-00115942 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 11066 | Howard Univ. v. Metro. Campus Police Officer's Union, 512 F.3d 716 | 25T+112 | First, arbitration is a matter of consent; if a party submits to arbitration without objecting to the arbitrator's jurisdiction, then it may fairly be said to have consented to the arbitration, and the other party, having gone forward with the proceeding, may fairly be said to have relied upon that consent. See United Indus. Workers, 987 F.2d at 168 ("Once the parties have mutually agreed to refer a matter to an arbitrator, they are bound by his decision and may not later challenge his authority to resolve the claim").) | Arbitration is a matter of consent; if a party submits to arbitration without objecting to the arbitrator's jurisdiction, then it may fairly be said to have consented to the arbitration, and the other party, having gone forward with the proceeding, may fairly be said to have relied upon that consent. | When can the court infer that parties have consented to the arbitration? | 005236.docx | LEGALEASE-00115872-LEGALEASE-00115874 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 11067 | Complaint of Valley Towing Services, 629 F. Supp. 139 | 16+1(2) | The Court has authority to apportion the fault in the way it deems appropriate upon consideration of the evidence. Valley Towing Service, Inc. v. S/S American Wheat, Freighters, Inc., 618 F.2d 341, 346 (5th Cir.1980). Admiralty is essentially the law of equity and courts are privileged to exercise flexibility and award what is fair. The hands of the court are not tied by the rigidity of common law. Pizani v. M/V COTTON BLOSSOM, 669 F.2d 1084, 1089 (5th Cir.1982). As three quarters of the damage to the power plant was the result of a pre-existing condition, this Court determines that Valley Towing is only liable for one quarter of the damage to the power plant, or for $36,995.00. Liability for damages among parties is clearly allocated proportionately according to the degree of fault. United States v. Reliable Transfer Co., Inc., 421 U.S. 397, 411, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251 (1975); Moran Towing & Transportation Co., Inc. v. City of New York, 620 F.2d 356, 358"59 (2d Cir.1980). Thus, an award of $36,995.00 is fair and reasonable and within this Court's authority to award plaintiffs for damage to the power plant. | Admiralty is essentially the law of equity, and courts are privileged to exercise flexibility and award what is fair; hands of court are not tied by the rigidity of common law. | Does an admiralty court have the privilege to exercise flexibility? | Admiralty Law - Memo 8 - JS.docx | ROSS-003329512-ROSS-003329514 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 11068 | Ellis v. Riverport Enterprises, 957 F. Supp. 105 | 16+17.1 | Because Ellis's incident occurred on Riverport's dock and was not caused by a ship or other vessel on navigable water, he can satisfy neither the express language of 46 U.S.C.Appx. " 740 nor the location element of the Supreme Court's admiralty jurisdiction test. Victory Carriers, Inc., 404 U.S. at 212, 92 S.Ct. at 425 (noting that injuries inflicted on piers and docks are not compensable under maritime law); Chapman, 385 F.2d at 962 (holdingtort that occurred on dock was outside of admiralty jurisdiction); Wiper, 340 F.2d at 730 (holding where plaintiff fell on dock and then rolled into navigable waters and drowned, tort was complete when plaintiff hit dock and therefore was consummated on land outside of admiralty jurisdiction). Therefore, Ellis's claims fall outside of this court's admiralty jurisdiction and are controlled by Kentucky tort law. | Plaintiff seeking to invoke admiralty tort jurisdiction must show: that the tort occurred on navigable water or if the injury occurred on land, that it was caused by vessel on navigable water; and that the general character of the incident had a potentially disruptive impact on maritime commerce and a substantial relationship to traditional maritime activity. | Does a tort claim for an injury that occurred at the dock of a vessel come under admiralty jurisdiction? | 04995.docx | LEGALEASE-00078095-LEGALEASE-00078096 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 11069 | State v. Mitton, 37 Mont. 366 | 181+10 | After receiving this instrument the defendant cut out of the order the note, and transferred it to Armstrong. It is claimed by the appellant that the cutting of this note away from the remaining portion of the order was not a material alteration of the instrument, and subdivision 2, " 3, c. 121, p. 238, Laws 1903, is invoked in aid of this contention. That subdivision, with the introductory clause, is as follows: "An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with *** (2) A statement of the transaction which gives rise to the instrument" But we are not able to agree with counsel in his conclusion. The subdivision above clearly refers to such memorandum, placed on the note, as will indicate the particular property for which payment is to be made, or something of a like nature, but is not intended to authorize the changing of the very nature of the instrument itself. The paper signed by French, Orr, and Johnson was an order or contract for goods, and a promise to pay for them. If the note be detached, there is not any longer an order for goods at all. The signatures are to the order, as well as the promise to pay. Taken as a whole, as it must be, the instrument is not a promissory note at all; but detached, there is created at once, not only a promissory note, but a negotiable one at that. Upon principle we hold that the changing of a writing from a nonnegotiable instrument into a negotiable promissory note is such a material alteration of the original instrument that, if done with the criminal intent, it will constitute forgery. We think this is the doctrine held generally. A leading case upon the subject is State v. Stratton, 27 Iowa, 420, 1 Am. Rep. 282. While there is some language employed by the court in Palmer v. Largent, 5 Neb. 223, 25 Am. Rep. 479, relied upon by appellant, which would seem to indicate a contrary view, we think, on the whole, that case is not an exception to the general rule which we have announced. | Changing a writing from a nonnegotiable instrument into a negotiable note is such a material alteration as constitutes forgery, where done with a criminal intent. | Is a change of a writing from a non-negotiable instrument into a negotiable instrument a material alteration of the original instrument? | 004007.docx | LEGALEASE-00115999-LEGALEASE-00116000 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11070 | Kiefer Specialty Flooring v. Tarkett, 174 F.3d 907 | 25T+112 | The Federal Arbitration Act ("FAA") provides that an arbitration clause in a "contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. Whether a particular issue is subject to arbitration is a matter of contract interpretation, because "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Notwithstanding this qualification, strong support for the federal policy favoring arbitration exists. The Supreme Court has explained that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also Miller v. Flume, 139 F.3d 1130, 1136 (7th Cir.1998) ("[O]nce it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration."). To this end, a court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation Co., 363 U.S. at 582"83. With these considerations in mind, we review de novo a district court's decision with respect to a motion to compel arbitration. See Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 53 (7th Cir.1995); Kresock v. Bankers Trust Co., 21 F.3d 176, 177"78 (7th Cir.1994). | Whether particular issue is subject to arbitration is matter of contract interpretation, because party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. | Is an issue subject to arbitration a matter of contract interpretation? | Alternative Dispute Resolution - Memo 65-JS.docx | ROSS-003284635-ROSS-003284636 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 11071 | World Rentals & Sales v. Volvo Const. Equip. Rents, 517 F.3d 1240 | 25T+182(1) | Under federal law, arbitration is "a matter of consent, not coercion." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Accordingly, a party ordinarily will not be "compelled to arbitrate unless that party has entered into an agreement to do so." Employers Ins. of Wausau v. Bright Metal Specialties, 251 F.3d 1316, 1322 (11th Cir.2001). We have recognized, however, that "common law principles of contract and agency law" allow a signatory (such as World Rentals) to bind a non-signatory (such as Volvo Finance) to an arbitration agreement under any of five distinct theories: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." Id. The World Parties rely primarily on incorporation by reference, but they also argue that Volvo Finance can be compelled to arbitrate under theories of agency, veil-piercing, and estoppel. None of these arguments is persuasive. | Party ordinarily is not compelled to arbitrate unless that party has entered into agreement to do so; however, signatory may bind non-signatory to arbitration agreement under theories of: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel. | Do common law principles of contract and agency law allow a signatory to bind a non-signatory to an arbitration agreement? | 003750.docx | LEGALEASE-00116152-LEGALEASE-00116153 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 11072 | Parvataneni v. E*Trade Fin. Corp., 967 F. Supp. 2d 1298 | 25T+210 | When a court construes an arbitration agreement, it "must give effect to the contractual rights and expectations of the parties." Stolt"Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (quoting Volt, 489 U.S. at 479, 109 S.Ct. 1248). Parties are free to structure their agreements as they see fit; the primary role of the Court in interpreting an arbitration agreement is "to give effect to the intent of the parties." Id. at 684, 130 S.Ct. 1758. Thus, the Supreme Court has held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Id. (emphasis in original). It is impermissible for the Court to presume the parties agreed to class arbitration simply because an arbitration agreement exists. Id. at 685, 130 S.Ct. 1758. Therefore, if an arbitration agreement is silent as to whether class arbitration is permitted, it should not be presumed that the parties agreed to submit to class arbitration.Id. at 687, 130 S.Ct. 1758; see also id. at 685, 130 S.Ct. 1758 ("[C]lass action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it simply by agreeing to submit their disputes to an arbitrator."). | It is impermissible for the Court to presume the parties agreed to class arbitration simply because an arbitration agreement exists; therefore, if an arbitration agreement is silent as to whether class arbitration is permitted, it should not be presumed that the parties agreed to submit to class arbitration. | If there is no contract can parties be submitted to class arbitration? | Alternative Dispute Resolution - Memo 53-JS.docx | LEGALEASE-00001447-LEGALEASE-00001448 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11073 | Oasis Int'l Waters v. United States, 110 Fed. Cl. 87 | 311H+156 | In order to determine whether defendant's motion should be granted, the court must first determine whether the attorney-client privilege applies to the contents of the four passages defendant seeks to redact, and, if applicable, whether defendant previously had waived the privilege. In general, "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (citing 8 Wigmore, Evidence " 2292 (McNaughton rev. ed.1961)); see also Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed.Cir.1997). The purpose of the attorney-client privilege is "to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." " Swidler & Berlin v. United States, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). The privilege, however, " "does not shield all information that a client divulges to an attorney, or vice versa, but rather is limited to instances where legal advice is sought or rendered." " Deseret Mgmt. Corp. v. United States, 76 Fed.Cl. 88, 90 (2007) (quoting Pac. Gas & Elec. Co. v. United States, 69 Fed.Cl. 784, 810, recons. denied, Nos. 04"74C, 04"75C, 2006 WL 6735871 (Fed.Cl.2006)); see also Upjohn Co. v. United States, 449 U.S. at 390, 101 S.Ct. 677 (The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." (citations omitted)). The privilege is not limited to the attorney-client communications of private litigants. See Deseret Mgmt. Corp. v. United States, 76 Fed.Cl. at 91 (It is understood that, "[c]ommunications by the Department of Justice to a client agency | The attorney-client privilege protects an attorney's communication to a client only when it reveals, directly or indirectly, the substance of a confidential communication by the client made for the purpose of obtaining legal advice. | What protection is afforded under an attorney-client privilege? | 005300.docx | LEGALEASE-00116209-LEGALEASE-00116211 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 11074 | Kevin Messina v. John A. White (In re Kevin Messina), 574 F.3d 119 | 354+80 | Second, "[s]eaworthiness is a relative term depending upon its application to the type of vessel and the nature of the voyage. The general rule is that the vessel must be staunch, strong, well equipped for the intended voyage and manned by a competent and skillful master of sound judgment and discretion." Tug Ocean Prince, 584 F.2d at 1155 (emphasis added). Thus, a vessel being operated by an incompetent captain or crew is considered unseaworthy. See, e.g., id.; Potomac Transport, Inc. v. Ogden Marine, Inc., 909 F.2d at 47; Guglielmo, 897 F.2d at 61. Further, "[i]t is hornbook law that when a moving vessel strikes a stationary object an inference of negligence arises and the owner of the vessel then has the burden of rebutting such inference." Tug Ocean Prince, 584 F.2d at 1159 (internal quotation marks omitted). | "Seaworthiness" is a relative term depending upon its application to the type of vessel and the nature of the voyage; the general rule is that the vessel must be staunch, strong, well equipped for the intended voyage, and manned by a competent and skillful master of sound judgment and discretion. | Is a vessel operated by an incompetent crew considered seaworthy? | Admiralty Law - Memo 26 - JS.docx | ROSS-003297679-ROSS-003297681 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 11075 | Nannie Lee's Strawberry Mansion v. City of Melbourne, 877 So. 2d 793 | 414+1575 | The circuit court also applied the correct law in determining whether a constitutional challenge to a zoning ordinance could be raised in a certiorari petition. The circuit court held that constitutional challenges to a zoning ordinance must be raised in an original declaratory judgment action or other equitable proceeding in circuit court, not in a certiorari petition in a reviewing court. See, e.g., First Baptist Church of Perrine v. Miami-Dade County, 768 So.2d 1114, 1115 n. 1 (Fla. 3d DCA 2000), rev. den., 790 So.2d 1103 (Fla.2001); Nostimo, Inc. v. City of Clearwater, 594 So.2d 779, 782 (Fla. 2d DCA 1992) (holding review of denial of zoning variance was properly brought as a declaratory judgment action in circuit court rather than by certiorari, where action was challenging not only the application of a zoning code section but also its very validity or constitutionality); Bama Investors, Inc. v. Metropolitan Dade County, 349 So.2d 207 (Fla. 3d DCA 1977), rev. den., 359 So.2d 1217 (Fla.1978); Harris v. Goff, 151 So.2d 642 (Fla. 1st DCA 1963) (finding suits in equity seeking injunctive relief against a zoning ordinance on the ground that it is arbitrary, capricious, confiscatory, or impinges on some constitutional right has long been the traditional method of assaulting the validity of zoning ordinances). It would likewise be improper for this court in a second-tier certiorari proceeding to determine the constitutionality of the City's zoning code. See Miami-Dade County v. Omnipoint Holdings, Inc., 863 So.2d 195 (Fla.2003) (holding district court in a second-tier certiorari proceeding cannot sua sponte determine the constitutionality of a statute or ordinance). | Landowners were required to bring any constitutional challenges to zoning ordinance approving developer's site plan in an original declaratory judgment action or other equitable circuit court proceeding, and could not raise such challenges in a certiorari proceeding. | Can a zoning ordinance be challenged by certiorari? | 004262.docx | LEGALEASE-00116340-LEGALEASE-00116342 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 11076 | May v. May, 214 W. Va. 394 | 134+706 | West Virginia. In our examination of the three views on the issue of goodwill in a professional practice, we believe the majority view represents the soundest legal approach. Therefore, we hold that "enterprise goodwill" is an asset of the business and may be attributed to a business by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business. Additionally, we hold that "personal goodwill" is a personal asset that depends on the continued presence of a particular individual and may be attributed to the individual owner's personal skill, training or reputation. | For purposes of equitable distribution analysis in dissolution proceedings, "enterprise goodwill" is an asset of the business and may be attributed to a business by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business. | How does one define enterprise goodwill? | Good Will - Memo 5 - SK.docx | ROSS-003288432-ROSS-003288433 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11077 | In re Mississippi Valley Livestock, 745 F.3d 299 | 50+1 | Under Illinois law, "bailment is "the delivery of goods for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled [the goods] shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept till he reclaims them." " Kirby v. Chi. City Bank & Trust Co., 82 Ill.App.3d 1113, 38 Ill.Dec. 489, 403 N.E.2d 720, 723 (1980) (quoting Knapp, Stout & Co. v. McCaffrey, 178 Ill. 107, 52 N.E. 898 (1899)); see also Berglund v. Roosevelt Univ., 18 Ill.App.3d 842, 310 N.E.2d 773, 775 (1974) ("Bailment is defined as the rightful possession of goods by one who is not an owner."). Although bailment takes many forms, the "characteristics common to every bailment are the intent to create a bailment, delivery of possession of the bailed items, and the acceptance of the items by the bailee." Id. at 775"76. | Although bailment takes many forms, the characteristics common to every bailment under Illinois law are the intent to create a bailment, delivery of possession of the bailed items, and the acceptance of the items by the bailee. | Does a creation of a bailment require intent to create a bailment? | 07375.docx | LEGALEASE-00079087-LEGALEASE-00079089 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 11078 | Innoviant Pharmacy v. Morganstern, 390 F. Supp. 2d 179 | 95+116(2) | "An employer's right to protect, by a covenant not to compete, interest in customer goodwill acquired through the efforts of an employee is well-established in Pennsylvania." Sidco Paper Co., 465 Pa. 586, 351 A.2d at 253"54. "The reason for this policy is a refusal to allow the employee to profit, at the expense of his former employer, from his wrongful and inequitable conduct." Id. at 255.The type of interests that have been recognized in the context of a non-competition covenant include trade secrets or confidential information, unique or extraordinary skills, customer good will, and investments in an employee specialized training program. In contrast, a post-employment covenant that merely seeks to eliminate competition per se to give the employer an economic advantage is generally not enforceable. The presence of a legitimate, protectable business interest of the employer is a threshold requirement for an enforceable non-competition covenant. Wellspan Health v. Bayliss, 869 A.2d 990, 996"97 (Pa.Super.2005) (citations omitted). The goodwill of a business is an interest protectable by a restrictive covenant, even when that goodwill has been acquired with the assistance, or through the efforts, of the employee whose activities are sought to be restrained. Id. at 997. An employer's confidential information or trade secrets are also generally subject to protection through the use of a restrictive covenant, although information which can be obtained or replicated through legitimate sources may not be shielded by such a covenant. Id. | Under Pennsylvania law, goodwill of business is interest protectable by restrictive covenant, even when that goodwill has been acquired with assistance, or through efforts, of employee whose activities are sought to be restrained. | Is goodwill protectable by a restrictive covenant? | 004389.docx | LEGALEASE-00116663-LEGALEASE-00116664 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 11079 | City of Santa Barbara v. Superior Court, 41 Cal. 4th 747 | 272+233 | We begin by defining the terms that underlie the issue presented. "Ordinary negligence""an unintentional tort"consists of a failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm. (See, e.g., Donnelly v. Southern Pacific Co. (1941) 18 Cal.2d 863, 869, 118 P.2d 465 (Donnelly ).) | "Ordinary negligence," an unintentional tort, consists of a failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm. | What is Ordinary Negligence? | 10823.docx | LEGALEASE-00089272-LEGALEASE-00089273 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |
| 11080 | Zissu v. IH2 Prop. Illinois, 157 F. Supp. 3d 797 | 50+1 | "A bailment occurs when goods, or other personal property, are delivered to another, who under contract either express or implied has agreed to accept delivery and deal with the property in a particular way." Liddle v. Salem Sch. Dist. No. 600, 249 Ill.App.3d 768, 188 Ill.Dec. 905, 619 N.E.2d 530, 531 (1993). To recover under a bailment theory, the plaintiff must allege: (1) an express or implied agreement to create a bailment, (2) delivery of the property, (3) the bailee's acceptance of the property, and (4) the bailee's failure to return the property or the bailee's delivery of the property in a damaged condition. See Am. Ambassador Cas. Co. v. City of Chi., 205 Ill.App.3d 879, 150 Ill.Dec. 755, 563 N.E.2d 882, 884 (1990). | A bailment occurs under Illinois law when goods, or other personal property, are delivered to another, who under contract either express or implied has agreed to accept delivery and deal with the property in a particular way. | When does a bailment occur? | Bailment - Memo 4 - JS.docx | ROSS-003297943-ROSS-003297944 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 11081 | People v. Tostado, 92 Ill. App. 3d 837 | 210+869 | The elements to be proved in cases of criminal homicide are proof of death and criminal agency causing death. (People v. Benson (1960), 19 Ill.2d 50, 58, 166 N.E.2d 80, 84; People v. Carbona (1975), 27 Ill.App.3d 988, 1006, 327 N.E.2d 546, 563, cert. denied (1976), 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319.) The identity of the victim as charged in the indictment must be proved by the State so that a defendant can prepare his defense and also to avoid double jeopardy problems.(People v. Rettig (3d Dist. 1970), 131 Ill.App.2d 687, 690, 264 N.E.2d 835, 837, aff'd (1972), 50 Ill.2d 317, 278 N.E.2d 781, cert. denied (1972), 409 U.S. 895, 93 S.Ct. 186, 34 L.Ed.2d 152.) Proof of death and the identity of the deceased may be established by circumstantial evidence. (People v. Sullivan (1977), 48 Ill.App.3d 555, 560, 6 Ill.Dec. 393, 397, 362 N.E.2d 1313, 1317; People v. Carbona, 27 Ill.App.3d at 1006, 327 N.E.2d 546.) A review of the instant record reveals sufficient circumstantial evidence excluding the pathologist's testimony to establish that Jose Martinez died as a result of defendant's acts. The record also clearly demonstrates that the body examined by the pathologist was the same body which Officer Ruiz transported and was that of Jose Martinez. | Identity of victim as charged in criminal homicide indictment must be proved by State so that defendant can prepare his defense and also to avoid double jeopardy problems. S.H.A. ch. 38, S 9-3; U.S.C.A.Const. Amend. 5. | Is proof of identity of the decedent a necessity in the case of a homicide? | 004572.docx | LEGALEASE-00116560-LEGALEASE-00116561 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 11082 | Gen Ads v. Breitbart, 435 F. Supp. 2d 1116 | 253+901 | At the outset, the court notes that although community property can be held liable for an obligation incurred by one spouse for the benefit of the community, the marital community is not a separate legal entity from the spouses. Cf. Bortle v. Osborne, 155 Wash. 585, 285 P. 425, 427 (1930). ( "[W]e have never held that a partnership or a marital community is a legal person separate and apart from the members composing the partnership or community."). Under California law, jurisdiction over one spouse binds the community assets. Cal. Fam.Code " 910 ("community estate is liable for debt incurred by either spouse ... regardless of whether one or both spouses are parties ... to a judgment for the debt."). Thus, it is unnecessary to discuss personal jurisdiction as it relates to the marital community; rather, the court assesses each spouse's contacts with the forum state. | Although community property can be held liable for an obligation incurred by one spouse for the benefit of the community, the marital community is not a separate legal entity from the spouses. | Is the marital community a separate legal entity? | Marriage and Cohabitation - Memo 22 - RK.docx | ROSS-003281705-ROSS-003281707 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11083 | Pettingell v. Moede, 129 Colo. 484 | 272+275 | The demarcation between ordinary negligence, and willful and wanton disregard, is that in the latter the actor was fully aware of the danger and should have realized its probable consequences, yet deliberately avoided all precaution to prevent disaster.A failure to act in prevention of accident is but simple negligence; a mentally active restraint from such action is willful. Omitting to weigh consequences is simple negligence; refusing to weigh them is willful. Performance of a dangerous act willfully, under certain circumstances, as in an emergency, is permissible, and will not subject the actor to liability even under the guest statute; hence, it is provided that to be actionable under that statute the conduct of the driver of the vehicle must be both willful and wanton, because a wanton act is never excusable.] | A failure to act in prevention of accident, or omitting to weigh consequences of conduct, is "simple negligence," but a mentally active restraint from preventing accident or refusing to weigh consequences of conduct is "willful negligence". '35 C.S.A. c. 16, S 371. | How do the courts differentiate between simple negligence and willful act? | 004436.docx | LEGALEASE-00116633-LEGALEASE-00116634 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 11084 | St. Cloud Newspapers v. Dist. 742 Cmty. Sch., 332 N.W.2d 1 | 15A+1067(1) | The Minnesota Open Meeting Law does not apply to chance or social gatherings. It does not prohibit meetings of affected public bodies; it merely requires that such meetings be open to the public. As the Illinois court stated in People ex rel. Difanis v. Barr, 83 Ill.2d 191, 46 Ill.Dec. 678, 414 N.E.2d 731 (1980):We conclude that the General Assembly has adopted reasonable regulations with regard to public officials' rights of speech and assembly when those rights are balanced against the extremely important governmental interest of the public's right of access to public information. The Open Meetings Act does not prohibit political discussions between or among members of public bodies; thus there is no chilling effect upon political discussion.83 Ill.2d at 209, 46 Ill.Dec. at 686, 414 N.E.2d at 739. The Minnesota Open Meeting Law is also a reasonable regulation of public officials' rights of free speech and association. | Minnesota Open Meeting Law does not apply to chance or social gatherings, nor does it prohibit meetings of affected public bodies; it merely requires that such meetings be open to public. M.S.A. S 471.705. | Does Open Meetings Act prohibit political discussions between or among members of public bodies? | 004602.docx | LEGALEASE-00117029-LEGALEASE-00117031 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 11085 | S. Indiana Gas & Elec. Co. v. City of Boonville, 215 Ind. 552 | 148+4 | The basis of the authority of the state to provide for the forced taking of utility property by the municipality, whether under the act of 1933, c. 190, the act of 1913, c. 76, or the act of 1905, c. 48, was the same, namely, the doctrine of eminent domain. The law recognizes no other justification for the forcible taking of private property for public use. The power of eminent domain is an attribute of sovereignty and inures in every independent state. It cannot be surrendered, and, if attempted to be contracted away, it may be resumed at will. It is superior to all property rights, and extends to all property within the jurisdiction of the state. Every contract, whether made between the state and an individual, or between individuals only, must yield to it whenever necessity for its exercise shall occur. Every contract is made in subordination to it. The existence of this power must be presumed to be known and recognized by all, and need never be carried into express stipulations, for this would add nothing to its force. West River Bridge v. Dix, 1848, 6 How. 507, 12 L.Ed. 535; Georgia v. City of Chattanooga et al., 1924, 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 796. The obligation of the contract created by the surrender of the franchise and the acceptance of the indeterminate permit, has not been impaired by the change in the statutory provisions with reference to the manner of determining the necessity of acquiring appellants' property, or by the modification of the method of ascertaining its value for that purpose. | The power of eminent domain is an attribute of sovereignty which inures in every independent state and cannot be surrendered, and if attempted to be contracted away it may be resumed at will. | Can the power of eminent domain be surrendered? | Eminent Domain - Memo 25 - AKA.doc | LEGALEASE-00002819-LEGALEASE-00002820 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 11086 | Greer v. City of Memphis, 356 S.W.3d 917 | 30+3801 | Moreover, we have conducted our own independent review of the record to determine if the evidence presented at trial would support a finding that the City acted willfully in not producing the requested records within the statutory time period. After reviewing the record, we find that the facts contained therein would not support a finding of willfulness in the instant case. We first note that the record is very sparse, consisting only of the Technical Record, which contains Mr. Greer's petition, and the City's response, along with the attached affidavit of Ms. Handy"Clay. There is also a three-and-one-half page transcript of the January 11, 2010 hearing; however, the transcript is comprised only of the respective arguments of the parties' attorneys as neither party attempted to introduce any testimony at the hearing. It is well settled that allegations contained in pleadings are not evidence. Hillhaven Corp. v. State ex rel. Manor Care, Inc., 565 S.W.2d 210, 212 (Tenn.1978). Also, the arguments of counsel and the recitation of facts contained in a brief, or a similar pleading, are not evidence. Price v. Mercury Supply Co., Inc., 682 S.W.2d 924, 929 n. 5 (Tenn.Ct.App.1984). The same is true of statements made by counsel during the course of a hearing, trial, or argument in this Court. Trotter v. State, 508 S.W.2d 808, 809 (Tenn.Crim.App.1974); Davis v. State, 673 S.W.2d 171, 173 (Tenn.Crim.App.1984). | The arguments of counsel and the recitation of facts contained in a brief, or a similar pleading, are not evidence; the same is true of statements made by counsel during the course of a hearing, trial, or argument in the Court of Appeals. | Are arguments of a counsel evidence? | Pleading - Memo 16 - VP.docx | ROSS-003297836-ROSS-003297838 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11087 | DDJ Mgmt. v. Rhone Grp. L.L.C., 78 A.D.3d 442 | 302+18 | CPLR 3016(b) "imposes a more stringent standard of pleading than the generally applicable notice of transaction rule of CPLR 3013" (Edison Stone Corp. v. 42nd St. Dev. Corp., 145 A.D.2d 249, 257, 538 N.Y.S.2d 249 [1989] [internal quotation marks and citations omitted] ). Moreover, where allegations of fraud are based on information and belief, the source of such information must be revealed (see Kanbar v. Aronow, 260 A.D.2d 182, 688 N.Y.S.2d 28 [1999]; Wall St. Transcript Corp. v. Ziff Communications Co., 225 A.D.2d 322, 638 N.Y.S.2d 640 [1996]; Belco Petroleum Corp. v. AIG Oil Rig, 164 A.D.2d 583, 598"599, 565 N.Y.S.2d 776 [1991] ). However, at this early stage of the litigation, plaintiffs are entitled to the most favorable inferences, including inferences arising from the positions and responsibilities of defendants (see Pludeman v. Northern Leasing Sys., Inc., 40 A.D.3d 366, 367"368, 837 N.Y.S.2d 10 [2007], affd. 10 N.Y.3d 486, 860 N.Y.S.2d 422, 890 N.E.2d 184 [2008] ), and plaintiffs need only set forth sufficient information to apprise defendants of the alleged wrongs (see Bernstein v. Kelso & Co., 231 A.D.2d 314, 320"321, 659 N.Y.S.2d 276 [1997] ). Moreover, the pleading requirements should not be narrowly construed, and a plaintiff alleging an aiding-and-abetting fraud claim may plead actual knowledge generally, particularly at the prediscovery stage, so long as such intent may be inferred from the surrounding circumstances (see Oster v. Kirschner, 77 A.D.3d 51, 905 N.Y.S.2d 69 [2010] ). | Plaintiff alleging aiding-and-abetting fraud claim may plead actual knowledge generally, particularly at prediscovery stage, so long as such intent may be inferred from surrounding circumstances. McKinney's CPLR 3016(b). | Are pleading requirements narrowly construed? | 004847.docx | LEGALEASE-00116970-LEGALEASE-00116971 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11088 | Rojas-Buscaglia v. Taburno-Vasarhelyi, 199 F. Supp. 3d 520 | 50+1 | Pursuant to the Puerto Rico Civil Code, a depositum contract is "a contract whereby one person (the depositor) hands a piece of personal property to another person (the depositary) for the sole purpose of having the depositary keep, conserve, and return the property." Jewelers Mut. Ins. Co. v. N. Barquet, Inc., 410 F.3d 2, 12 (1st Cir.2005). The depositary is presumed to perform his or her services gratuitously "unless there is an agreement to the contrary." P.R. Laws Ann. tit. 31, " 4641. A depositum contract is constituted "from the time [the depositary] receives a thing belonging to [the depositor] with the obligation of keeping and returning it." Id. " 4621; see Jewelers Mut. Ins., 410 F.3d 2 at 13 (noting that the Puerto Rico Supreme Court focuses on whether the depositary received the thing to determine whether the parties formed a depositum contract). | Under Puerto Rico law, a "depositum contract" is a contract whereby one person, the depositor, hands a piece of personal property to another person, the depositary, for the sole purpose of having the depositary keep, conserve, and return the property. 31 L.P.R.A. S 4641. | What is a depositum? | Bailment - Memo 44 - RK.docx | ROSS-003311753-ROSS-003311754 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 11089 | People v. Beaver, 186 Cal. App. 4th 107 | 146+10 | The People contend the trial court was not required to instruct on theft by false pretenses, because the prosecution chose to proceed on a theory of theft by embezzlement. However, the present matter does not involve embezzlement, which is defined in section 503 as "the fraudulent appropriation of property by a person to whom it has been intrusted." The elements of theft by embezzlement are the owner entrusted property to the defendant, the owner did so because he or she trusted the defendant, the defendant fraudulently converted the property for his or her own benefit and, in doing so, the defendant intended to deprive the owner of its use. "The crime of embezzlement requires the existence of a "relation of trust and confidence," similar to a fiduciary relationship, between the victim and the perpetrator." (People v. Wooten (1996) 44 Cal.App.4th 1834, 1845, 52 Cal.Rptr.2d 765.) | The crime of embezzlement requires the existence of a relation of trust and confidence, similar to a fiduciary relationship, between the victim and the perpetrator. | Does embezzlement require the existence of trust and confidence between the victim and perpetrator? | 005009.docx | LEGALEASE-00117105-LEGALEASE-00117106 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11090 | Horizon Health Corp. v. Tyler-Holmes Mem'l Hosp., 284 F. Supp. 2d 439 | 25T+141 | Finally, the court notes that Tyler"Holmes does not contest that the Trustees and Supervisors can be compelled to arbitrate as well under traditional agency principles. Horizon notes that Supervisors grant Trustees broad powers to govern community hospitals. Trustees in turn are authorized to employ administrators, such as Greg Mullen, the hospital administrator who signed the agreements in the case sub judice. Because arbitration is a creature of contract law, when asked to enforce an arbitration agreement against a non-signatory, courts should ask "whether ... she is bound by that agreement under traditional principles of contract and agency law." Mississippi Fleet Card, LLC v. Bilstat, Inc., 175 F.Supp.2d 894, 901 (S.D.Miss.2001) (citation omitted). See also Fleetwood Enterprises, Inc. v. Gaskamp, 280 F.3d 1069, 1076 (5th Cir.2002) (quoting Thomson"CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d. Cir.1995)) (Stating there are several "theories under "common law principles of contract and agency law" that provide a basis "for binding non-signatories to arbitration agreements." "). As such, the court finds that Horizon's arguments are well taken, and Plaintiff's motion to compel arbitration shall be granted against all Defendants. | Because arbitration is a creature of contract law, when asked to enforce an arbitration agreement against a non-signatory, courts should ask whether she is bound by that agreement under traditional principles of contract and agency law. | What is the determining factor in enforcing an arbitration agreement against a non-signatory to the contract? | 005214.docx | LEGALEASE-00116871-LEGALEASE-00116873 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11091 | Rader v. Levenson, 290 Ga. App. 227 | 302+1 | Our Civil Practice Act does not require any technical forms of pleadings, and a pleading will be deemed sufficient if it provides a party with fair notice of a claim asserted against her. However, even the most generous interpretation of Levenson's second petition does not suggest that he intended Post as a respondent. This is evidenced by the fact that the relief sought involved only Rader, Cooke, and their law firm. Accordingly, Post was not a party to the transferred action. To the extent Levenson attempted to include Post as a defendant in the amended complaints filed in the superior court, we note that a party may not be added by amendment without leave of court, which was not sought in this case. Without Post, venue is improper in the Douglas County Superior Court because it lacks jurisdiction over nonresident defendants unless a resident co-defendant is liable in the action. | The Civil Practice Act does not require any technical forms of pleadings, and a pleading will be deemed sufficient if it provides a party with fair notice of a claim asserted against her. West's Ga.Code Ann. S 9-11-1 et seq. | Are technical forms of pleading required? | 004828.docx | LEGALEASE-00116774-LEGALEASE-00116775 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11092 | Adkins v. Labor Ready, 303 F.3d 496 | 25T+113 | The FAA reflects "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. Hightower v. GMRI, Inc., 272 F.3d 239, 241 (4th Cir.2001). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468, 475"76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). | Federal Arbitration Act (FAA) reflects a liberal federal policy favoring arbitration agreements; underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. 9 U.S.C.A. S 1 et seq. | Is arbitration a more efficient dispute resolution process than litigation? | 004923.docx | LEGALEASE-00117169-LEGALEASE-00117171 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 11093 | Valentino v. Cty. of Tompkins, 45 A.D.3d 1235 | 15A+1861 | We find merit in respondents' argument that this proceeding was not timely commenced as to the fees imposed in 2004 and 2005 because petitioners' claims as to them were not timely interposed in a CPLR article 78 proceeding. Fee setting by municipal agencies was once deemed a legislative act and declaratory judgment was the proper means of review (see e.g. Matter of Torsoe Bros. Constr. Corp. v. Board of Trustees of Inc. Vil. of Monroe, 49 A.D.2d 461, 463, 375 N.Y.S.2d 612 [1975] ). Now, however, fee setting is correctly viewed as a quasi-legislative act of an administrative agency and the proper review procedure depends on the nature of the challenge raised (see New York City Health & Hosps. Corp. v. McBarnette, 84 N.Y.2d 194, 204"205, 616 N.Y.S.2d 1, 639 N.E.2d 740 [1994]; Matter of Grand Manor Nursing Home Health Related Facility, Inc. v. Novello, 39 A.D.3d 1062, 1064, 835 N.Y.S.2d 473 [2007], lv. denied 9 N.Y.3d 812, 846 N.Y.S.2d 602, 877 N.E.2d 652 [2007]; Trager v. Town of Clifton Park, 303 A.D.2d 875, 877"878, 756 N.Y.S.2d 669 [2003] ). Here, petitioners' claim was upheld by Supreme Court on the ground that the sliding scale feature of respondents' fee schedule is illegal because it has not been shown to be reasonably related to the services provided to SCLIWC. Since such a claim comes under CPLR 7803(3), petitioners were required, but failed, to contest the 2004 and 2005 fees in a timely CPLR article 78 proceeding. | Fee setting by municipal agencies is correctly viewed as a quasi-legislative act of an administrative agency, and the proper review procedure depends on the nature of the challenge raised. | "Is anAdministrative agency's decision to impose a fee, charge, or other exaction a quasi-legislative act?" | 000383.docx | LEGALEASE-00117417-LEGALEASE-00117419 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11094 | Roxfort Holding Co. v. United States, 176 F. Supp. 587 | 233+709 | It has been argued in instances of this sort that the plaintiff may recover because the Government became a tenant at sufferance. United States v. Whipple Hardware Co., 3 Cir., 1911, 191 F. 945, 946. There the Government condemned premises which the defendant was occupying as a tenant. The defendant held over and resisted a Government claim for use and occupation on the ground that it was a trespasser and not a tenant at sufferance. Recovery was allowed, the court saying: "The law implies a contract to pay rent from the mere fact of occupation, unless the occupancy be such as to negative the existence of a tenancy," citing New Jersey cases. While local law governs the nature and extent of interests in real property, the matter of liability of the federal government is to be determined by federal law. Cf. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454; and Heiser v. Woodruff, 327 U.S. 726, 732, 66 S.Ct. 853, 90 L.Ed. 970. State law cannot impose liability in contravention to the Tucker Act. A tenant at sufferance is one who had a possessory interest in land by virtue of a conveyance and wrongfully remains in possession after the termination of his estate without claiming a superior title. In some jurisdictions this class of possessors is turned into tenants at the election of the owner; in other jurisdictions a tenancy by agreement is imposed. 1 American Law of Property "" 3.32-3.33 (Casner ed. 1952). In either case, there is no tenancy under an agreement implied in fact but rather one imposed by law, and there therefore may not be recovery under the Tucker Act, apart from the fact that it is impossible to treat the Government here as a possessor holding over. | A "tenant at sufferance" is one who has a possessory interest in land by virtue of a conveyance and wrongfully remains in possession after termination of his estate without claiming a superior title. | What is a tenant at sufferance? | Landlord and Tenant - Memo 18 - RK.docx | ROSS-003298090-ROSS-003298091 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 11095 | In re Valenti, 178 Cal. App. 3d 470 | 350H+594 | A felon is uniquely burdened by a diverse collection of statutorily imposed disabilities long after his release from prison. (Sovereign v. People (1983) 144 Cal.App.3d 143, 148, 192 Cal.Rptr. 469: Note, The Revolving Door: The Effect of Employment Discrimination Against Ex-Prisoners (1975) 26 Hastings L.J. 1403, 1432.) For example, he is denied the right to vote during the period of his parole. (Cal.Const., art. II, " 4; Elec.Code, "" 701, 707.) Moreover, a felon may not "... engage in certain businesses (Bus. & Prof. Code " 480); must register with local law enforcement authorities if his offense related to certain sex charges (" 290; but see In re Reed (1983) 33 Cal.3d 914 [191 Cal.Rptr. 658, 663 P.2d 216] ); loses the right to possess arms (" 12021); and, if he testifies in court, may be impeached on the basis of his prior felony conviction (Evid. Code, " 788)...." (Ayala v. Superior Court (1983) 146 Cal.App.3d 938, 944, 194 Cal.Rptr. 665.) | Compelling state interest in protecting its law-abiding citizens by discouraging criminal element from repeatedly violating its laws would be advanced by not applying statute limiting consecutive felony sentences, West's Ann.Cal.Penal Code S 1170.1, to misdemeanants, and thus, unavailability of such statute as bar to unlimited consecutive misdemeanor sentences does not violate equal protection, in light of fact that misdemeanant completes sentence with neither further obligation nor disability, while typical felon is uniquely burdened by diverse collection of statutorily imposed disabilities long after release from prison. West's Ann.Cal.Penal Code S 1170.1(a, g); U.S.C.A. Const.Amend. 14. | Are convicted felons burdened by statutorily imposed disabilities? | 004979.docx | LEGALEASE-00117311-LEGALEASE-00117313 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 11096 | Buckholts v. Buckholts, 251 Ga. 58 | 93+33 | In line with these cases, we find it necessary in the context of divorce and alimony cases to depart from the general rule that a contempt action must be brought in the offended court.We now hold that where a superior court other than the superior court rendering the original divorce decree acquires jurisdiction and venue to modify that decree, it likewise possesses the jurisdiction and venue to entertain a counterclaim alleging the plaintiff is in contempt of the original decree. Such a change is necessary to ensure that in the bitter battles which too often follow divorce, neither spouse is legally left at the mercy of the other. | Where superior court other than superior court rendering original divorce decree has acquired jurisdiction and venue to modify decree, it also has jurisdiction and venue to entertain counterclaim alleging plaintiff is in contempt of original decree. | "Are questions as to which superior court may properly consider a case, one of venue or subject matter jurisdiction?" | 005169.docx | LEGALEASE-00117287-LEGALEASE-00117288 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11097 | Lindeman v. Lesnick, 268 Va. 532 | 237+36 | Well-established principles guide our initial consideration of the issue presented in this appeal concerning absolute privilege to publish defamatory statements. As the designation of the rule suggests, the maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false. Spencer v. Looney, 116 Va. 767, 774, 82 S.E. 745, 747 (1914). Absolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body. Penick v. Ratcliffe, 149 Va. 618, 628, 140 S.E. 664, 667 (1927). If the communication is made in such a judicial proceeding, it need only be relevant and pertinent to the case to be protected by the privilege. Donohoe Construction Co. v. Mount Vernon Assocs., 235 Va. 531, 539, 369 S.E.2d 857, 861 (1988). "The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation." Id. at 537, 369 S.E.2d at 860. In addition, absolute privilege is extended to statements made in the course of judicial proceedings because of the safeguards that exist in such proceedings, including liability for perjury and the applicability of the rules of evidence. Lockheed Information Management Systems Co. v. Maximus, Inc., 259 Va. 92, 101, 524 S.E.2d 420, 424-25 (2000) | Absolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body. | What ae the statements to which absolute judicial privilege applies? | 000542.docx | LEGALEASE-00117458-LEGALEASE-00117459 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11098 | Tennant v. Chase Home Fin., 187 So. 3d 1172 | 386+23 | We next consider the summary judgment on the trespass-to-real-estate claim asserted by the Tennants. "A trespass to property is a wrong against the right of possession or entry." Boyce v. Cassese, 941 So.2d 932, 945 (Ala.2006). In order to be actionable, the entry on the land of another must not be authorized; that is, "[i]f a party enters property ... under a legal right, entry ... pursuant to that right cannot constitute a trespass." Boyce, 941 So.2d at 945. Chase argued in support of its summary-judgment motion that it had a right under Section 9 of the mortgage agreement to enter the house to secure it upon Wade's default of the mortgage agreement. | In order to be actionable, the entry on the land of another must not be authorized; that is, if a party enters property under a legal right, entry pursuant to that right cannot constitute a "trespass." | Is trespass to property a wrong against the right of both possession and entry? | Trespass - Memo 8 - RK.docx | ROSS-003287092-ROSS-003287093 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 11099 | Bouquett v. Ohio State Med. Bd., 123 Ohio App. 3d 466 | 92+4262 | The Due Course Clause, Section 16, Article I, Ohio Constitution, is equivalent to the Due Process Clause of the Fourteenth Amendment. Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 422, 633 N.E.2d 504, 510-511. "Notice and hearing are necessary to comply with due process in an administrative proceeding which revokes an individual's license to practice a profession." Korn v. Ohio State Med. Bd. (1988), 61 Ohio App.3d 677, 684, 573 N.E.2d 1100, 1105, citing Jewell v. McCann (1917), 95 Ohio St. 191, 116 N.E. 42. Determination of the type of hearing that minimally comports with due process requires a balancing of the governmental and individual interests at stake. Korn, supra, at 684, 573 N.E.2d at 1104-1105. Where a physician is fully apprised of the violations being considered by the board and is given a full opportunity to respond before an impartial board, due process has been satisfied. Id.; Vaughn v. Ohio St. Med. Bd. (Nov. 30, 1995), Franklin App. No. 95APE-645, unreported, 1995 WL 704753. | Notice and hearing are necessary to comply with due process in an administrative proceeding which revokes an individual's license to practice a profession. U.S.C.A. Const.Amend. 14; Const. Art. 1, S 16. | Are the due process rights of notice and hearing required in an administrative proceeding? | Administrative Law - Memo 58 - RK.docx | ROSS-003296726-ROSS-003296728 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 11100 | People v. Hardy, 128 A.D.3d 1453 | 203+503 | Defendant first contends that the evidence is not legally sufficient because, pursuant to the above statutory scheme, a child who is less than 24 weeks of gestational age is not a person. That contention is without merit. Penal Law " 125.00 uses the disjunctive "or" in defining who may be the victim of a homicide, and it is a well-settled rule of statutory interpretation that "[u]se of the conjunction "or" in a statute usually indicates that the language is to be construed in an alternative sense" (McKinney's Cons. Laws of N.Y., Book 1, Statutes " 235; see McSweeney v. Bazinet, 269 App.Div. 213, 216, 55 N.Y.S.2d 558, affd. 295 N.Y. 797, 66 N.E.2d 580; People v. Cubiotti, 4 Misc.2d 44, 46, 157 N.Y.S.2d 784). Therefore, a victim who is born alive may be a person for the purposes of a homicide pursuant to section 125.00, regardless of whether he or she is less than 24 weeks of gestational age. | A victim who is born alive may be a person for the purposes of a homicide pursuant to homicide statute, regardless of whether he or she is less than 24 weeks of gestational age. McKinney's Penal Law S 125.00. | Is a fetus who is born alive but later dies due to injuries inflicted before birth a victim of homicide? | Homicide - Memo 16 - RK.docx | LEGALEASE-00004369-LEGALEASE-00004370 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 11101 | People v. Taylor, 32 Cal. 4th 863 | 203+503 | "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (People v. Hansen (1994) 9 Cal.4th 300, 307, 36 Cal.Rptr.2d 609, 885 P.2d 1022 (Hansen ); " 187, subd. (a).) "[V]iability is not an element of fetal homicide under section 187, subdivision (a)," but the state must demonstrate "that the fetus has progressed beyond the embryonic stage of seven to eight weeks." (People v. Davis (1994) 7 Cal.4th 797, 814"815, 30 Cal.Rptr.2d 50, 872 P.2d 591.) | Viability is not an element of fetal homicide, but the state must demonstrate that the fetus has progressed beyond the embryonic stage of seven to eight weeks. West's Ann.Cal.Penal Code S 187(a). | Is viability an element of fetal homicide? | 000427.docx | LEGALEASE-00117740-LEGALEASE-00117741 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 11102 | Haller v. State, 217 Ark. 646 | 207+1 | Incest is a statutory offense which has been defined generally by the authorities as consisting of sexual intercourse, either habitual or in a single instance, and either under a form of marriage or without it, between persons too closely related to intermarry. Bishop's Statutory Crimes, " 727; 27 Am.Jur., Incest, " 1; 42 C.J.S., Incest, " 1; Underhill's Criminal Evidence, 4th Ed., " 650. The rule that one offense only can be charged in one count of an indictment or information does not preclude the charge in the same count of several acts relating to the same transaction and together constituting only one connected charge or offense. 27 Am.Jur., Indictments and Informations, " 124. While it is true that each act of sexual intercourse may be made a separate offense, the effect of the information in the instant case is to charge appellant with but one offense of incest committed by a series of acts amounting to habitual sexual intercourse with his daughter over the three-year period stated in the information. We conclude that the trial court did not err in overruling the demurrer to the information. | "Incest" is statutory offense consisting of sexual intercourse, either habitual or in a single instance, either under form of marriage or without it, between persons too closely related to intermarry. | Is incest a statutory crime? | 000448.docx | LEGALEASE-00117732-LEGALEASE-00117733 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11103 | Thiokol Chem. Corp. v. Morris Cty. Bd. of Taxation, 41 N.J. 405 | 233+522 | In the final analysis whether a particular agreement is a lease depends upon the intention of the parties as revealed by the language employed in establishing their relationship, and, where doubt exists, by the circumstances surrounding its making as well as by their course of operation under it. 51 C.J.S. Landlord & Tenant s 202e. And, in situations where the ambiguity or doubt gives rise to a factual question as to the intention of the parties, the burden is on the party asserting it to demonstrate existence of the lessor-lessee relationship. Moreover, in the resolution of ambiguity or doubt, absence of (1) a stipulation for rent as such, or other consideration regarded by the parties as constituting payment for the transfer of possession, and (2) a term; and presence of (1) limitations on exclusive possession and control of the premises, and (2) a right in the owner to revoke the permit to use at any time, are factors militating against the existence of a lease. In this connection, as an early case said:"* * * (R)ent is not essential to a lease; for, from favor, or valuable consideration, the tenant may have a lese without any render. Yet that must be in a case where a lease was clearly intended. When, upon construction, it be doubtful whether a lease was intended or not, then it constitutes a very important circumstance, that rent was not reserved, Eo nomine or substantially." State v. Page, 1 Spears' Law 408, 40 Amer.Dec. 608 (S.C.A. & E.1843). | If ambiguity or doubt as to whether a particular agreement is a lease gives rise to a factual question as to intention of the parties, burden is on the party asserting it to demonstrate existence of lease. | "When ambiguity arises, is the burden on the party asserting to demonstrate the existence of the lease?" | 000527.docx | LEGALEASE-00117621-LEGALEASE-00117623 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11104 | Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323 | 237+51(1) | With regard to the second element of a defamation claim, New York recognizes a qualified common interest privilege when the allegedly defamatory statement is made between persons who share a common interest in the subject matter. At the pleadings stage, a plaintiff can overcome the common interest privilege by alleging that the defamatory statement was motivated solely by [common law or constitutional] malice. "Common-law malice mean[s] spite or ill will, and will defeat the privilege only if it is the one and only cause for the publication." "Constitutional or actual malice means publication with [a] high degree of awareness of [the publication's] probable falsity or while the defendant in fact entertained serious doubts as to the truth of [the] publication." ""Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege." | Under New York law of defamation, "constitutional malice" or "actual malice" means publication with a high degree of awareness of the publication's probable falsity or while the defendant in fact entertained serious doubts as to the truth of the publication. | What does the term constitutional malice mean? | 000574.docx | LEGALEASE-00117667-LEGALEASE-00117668 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 11105 | Milner v. Milner, 361 S.W.3d 615 | 315+782 | The legal dictionary broadly defines "beneficial interest" as "[a] right or expectancy in something (such as a trust or an estate), as opposed to legal title to that thing." Black's Law Dictionary 885 (9th ed.2009). Similarly, we have said that " "beneficial interest" is profit, benefit or advantage resulting from contract or ownership of estate as distinct from legal ownership or control." Satterlee v. Gulf Coast Waste Disposal Auth., 576 S.W.2d 773, 777 (Tex.1978) (citing Christiansen v. Dep't of Soc. Sec., 15 Wash.2d 465, 131 P.2d 189 (1942)). Record title, on the other hand, typically refers to legal evidence of a person's ownership rights in property. See Longoria v. Lasater, 292 S.W.3d 156, 165 (Tex.App.-San Antonio 2009, pet. denied) (citing Black's Law Dictionary 1523 (8th ed.2004)). "Beneficial ownership" is defined as "[a] beneficiary's interest in trust property" or "a corporate shareholder's power to buy or sell the shares, though the shareholder is not registered on the corporation's books as the owner." Black's Law Dictionary 1215 (9th ed.2009). The term "beneficial ownership interest" that titled the MSA's exhibits does not appear in the legal dictionary nor does Texas law provide a clear definition. Thus, the MSA's references to both "beneficial interest and record title" and "beneficial ownership," standing alone, are consistent with either an assignment of the partnership interest or the transfer of full limited partnership rights. | "Record title" typically refers to legal evidence of a person's ownership rights in property. | Does record title refer to legal evidence of a person's ownership rights in property? | Property - Memo 27 - TH.docx | ROSS-003312480-ROSS-003312481 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 11106 | Landshire Food Serv. v. Coghill, 709 S.W.2d 509 | 48A+20 | The next issue is whether Hyken was a bona fide purchaser under the facts of this case. Where fraud in the original transfer is shown, a subsequent purchaser has the burden of proving that he was in fact a bona fide purchaser. This proof is necessary because, in Missouri, a certificate of title to a motor vehicle is not conclusive proof of the ownership of such vehicle but is only prima facie evidence of ownership, capable of being rebutted by other evidence.Skates v. Lippert, 595 S.W.2d 22, 24 (Mo.App.1979). | Certificate of title to motor vehicle is not conclusive proof of ownership of such vehicle, but is only prima facie evidence of ownership, capable of being rebutted by other evidence. | Can a certificate of title be prima facie evidence of vehicle ownership? | Property - Memo 28 - TH.docx | LEGALEASE-00004655-LEGALEASE-00004656 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 11107 | Coggins v. Gregorio, 97 F.2d 948 | 233+508 | Counsel for Coggins contends that the relation was that of lodginghouse keeper and lodger rather than landlord and tenant. The principal distinction between the two relations is that the tenant acquires an interest in the real estate and has the exclusive possession of the leased premises, while the lodger acquires no estate and has merely the use without the actual or exclusive possession. The trial court found that Coggins and his wife had sole and exclusive right to possession of the apartment under the rental agreement | The principal distinction between the relation of lodging house keeper and lodger and landlord and tenant is that the "tenant" acquires an interest in the realty and has the exclusive possession of the leased premises, whereas the "lodger" acquires no estate and has merely the use without the actual or exclusive possession. | What is the distinction between a tenant and a lodger? | Landlord and Tenant - Memo 23 - TH.docx | ROSS-003296600-ROSS-003296601 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 11108 | Choctaw & Chickasaw Nations v. Bd. of Cty. Comm'rs of Love Cty., Okl., 239 F. Supp. 650 | 260+55(1) | The Tenth Amendment gives to the States the exclusive right to legislate concerning state lands within their borders. Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259, affirming 10 Cir., 287 F. 468. The transfer, control, and disposition of land is subject to the exclusive jurisdiction of the state. In the State of Oklahoma it is the law that "every estate in land which shall be granted, conveyed or demised by deed or will shall be deemed an estate in fee simple and of inheritance, unless limited by express words." 16 Okl.St.Ann. " 29. | Under Oklahoma statute providing that every estate in land "granted, conveyed or demised by deed or will" shall be deemed estate in fee simple and of inheritance unless limited by express words, recital in deed that land was conveyed "for cemetery purposes only" did not reserve minerals, nor did any title or estate remain in grantor. 16 Okl.St.Ann. S 29. | "Are tenure, transfer, control, and disposition of land subject to the exclusive jurisdiction of a state?" | 000673.docx | LEGALEASE-00118007-LEGALEASE-00118008 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11109 | Keymer v. Mgmt. Recruiters Int'l, 169 F.3d 501 | 25T+113 | The FAA's primary purpose is to ensure that agreements to arbitrate are enforced according to their terms and that parties are free to structure their arbitration agreements as they wish. See Mastrobuono, 514 U.S. at 57, 115 S.Ct. 1212. Although federal policy favors arbitration, it does not disregard the intent of the contracting parties as evidenced by their agreement. We are bound to interpret this Agreement in accordance with the intentions of both MRI and Keymer as expressed in the Agreement, even if the result is to preclude arbitration. We agree with the District Court that Keymer, never having agreed to arbitrate his age discrimination claims, is entitled to pursue his lawsuit. | Although federal policy favors arbitration, it does not disregard the intent of the contracting parties as evidenced by their agreement. | Does the federal policy favoring arbitration disregard the intent of the contracting parties? | 001019.docx | LEGALEASE-00118020-LEGALEASE-00118021 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 11110 | Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775 | 25T+213(5) | We review de novo a district court's order denying a stay of a federal suit pending arbitration pursuant to 9 U.S.C. " 3. See Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir.1997). This review requires us to evaluate whether the district court correctly found that no valid and enforceable agreement to arbitrate the parties' dispute exists. See Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1513 (10th Cir.1995). Because the district court rendered its decision on the pleadings, for the purposes of this appeal we must accept Riley's factual averments in its complaint as true. See Lee v. Gallup Auto Sales, Inc., 135 F.3d 1359, 1362 (10th Cir.1998) | The Court of Appeals reviews de novo a district court's order denying a stay of a federal suit pending arbitration pursuant to the Federal Arbitration Act. 9 U.S.C.A. S 3. | What standard of review is used by the court when hearing the appeal of a district court's denial of a motion to stay pending arbitration? | Alternative Dispute Resolution - Memo 166 - RK.docx | LEGALEASE-00004902-LEGALEASE-00004903 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 11111 | Chavarria v. Ralphs Grocery Co., 733 F.3d 916 | 25T+113 | If state law could not require some level of fairness in an arbitration agreement, there would be nothing to stop an employer from imposing an arbitration clause that, for example, made its own president the arbitrator of all claims brought by its employees. Federal law favoring arbitration is not a license to tilt the arbitration process in favor of the party with more bargaining power. California law regarding unconscionable contracts, as applied in this case, is not unfavorable towards arbitration, but instead reflects a generally applicable policy against abuses of bargaining power. The FAA does not preempt its invalidation of Ralphs' arbitration policy. | Federal law favoring arbitration is not a license to tilt the arbitration process in favor of the party with more bargaining power. 9 U.S.C.A. S 1 et seq. | Does federal law tilt the arbitration process in favor of the party with more bargaining power? | 001034.docx | LEGALEASE-00118035-LEGALEASE-00118036 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11112 | Flanagan v. State, 675 S.W.2d 734 | 203+505 | The specific intent to kill may be inferred from the use of a deadly weapon, Bell v. State, 501 S.W.2d 137 (Tex.Cr.App.1973), and a shotgun is a deadly weapon per se, Stallings v. State, 476 S.W.2d 679 (Tex.Cr.App.1972), unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result, Medford v. State, 86 Tex.Cr.R. 237, 216 S.W. 175, 177 (1919); Hatton v. State, 31 Tex.Cr.R. 586, 21 S.W. 679 (1893). For example, in Scott v. State, 46 Tex.Cr.R. 315, 81 S.W. 952 (1904), where the defendant fired a shotgun loaded with bird or squirrel shot at the complainant who was some 125 to 200 yards away, this Court held that it was not possible that any serious injury could have been inflicted and thus the shotgun was not in the manner of its use a deadly weapon. See also, Barnes v. State, 172 Tex.Cr.R. 303, 356 S.W.2d 679 (1961); and Hargrove v. State, 501 S.W.2d 878 (Tex.Cr.App.1973). | Shotgun is a deadly weapon per se, unless in manner of its use it is reasonably apparent that death or serious bodily injury could not result. V.T.C.A., Penal Code S 19.02(a)(2). | Is a shotgun considered a deadly weapon per se? | 001074.docx | LEGALEASE-00118074-LEGALEASE-00118075 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11113 | Covington v. State, 262 Ind. 636 | 203+505 | This Court has also held instrumentalities that are harmless in their general usage may, nevertheless be regarded as lethal when utilized in a harmful manner, as in Corbin v. State (1968), 250 Ind. 147, 234 N.E.2d 261, 237 N.E.2d 376, where we affirmed a conviction of second degree murder on evidence that a father inflicted fatal injuries upon his twenty-one month old daughter by blows with his hand and again in Stice v. State (1950), 228 Ind. 144, 89 N.E.2d 915, where we affirmed a conviction of second degree murder on evidence that the appellant had killed the victim with his fist. In Stice we stated that although the general rule is that a blow with the fist does not ordinarily imply malice or intent to kill, from the circumstances in the case, the use of the fist was such that the fist was a deadly weapon. In Corbin we stated that malice as a legal inference could be deducted from a perpetration of any cruel act and that the law presumes that an individual intends the consequences of his act. In Wahl v. State (1951), 229 Ind. 521, at 530, 98 N.E.2d 671, at 675, we stated, "Malice may be inferred from any deliberate or cruel act by one person against another." Several cases are there cited in support of that proposition. | Instrumentalities that are harmless in their general usage may, nevertheless, be regarded as lethal when utilized in a harmful manner. IC 1971, 35-1-54-1, Burns' Ind.St.Ann. S 10-3404. | Can instrumentalities that are harmless in their general usage be considered as lethal when utilized in a harmful manner? | 001076.docx | LEGALEASE-00118076-LEGALEASE-00118077 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11114 | Smith v. People, 142 Colo. 523 | 203+909 | Generally malice is implied only when the homicide is committed by the use of a deadly weapon or instrument in such a manner that death would probably result. McAndrews v. People, 71 Colo. 542, 208 P. 486, 24 A.L.R. 655. Ordinarily hands or fists are not classed as deadly weapons since they are not means likely to produce death unless used in such a manner and under such circumstances as are reasonably calculated to produce death.26 A.J. 361, State v. Cobo, 90 Utah 89, 60 P.2d 952; People v. Crenshaw, 298 Ill. 412, 131 N.E. 576, 15 A.L.R. 671; People v. Munn, 65 Cal. 211, 3 P. 650. | Generally malice is implied only when a homicide is committed by use of a deadly weapon or instrument in such a manner that death would probably result, and ordinarily, fists are not classified as deadly weapons since they are not means likely to produce death unless used in such a manner and under such circumstances as are reasonably calculated to produce death. | Are fists or hands classified as deadly weapons? | Homicide - Memo 32 - RK.docx | ROSS-003285048-ROSS-003285049 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |
| 11115 | Norber v. Marcotte, 134 S.W.3d 651 | 289+449 | Section 358.060.1, RSMo 20002 defines a partnership as "an association of two or more persons to carry on as co-owners [of] a business for profit." Fischer v. Brancato, 937 S.W.2d 379, 382 (Mo.App. E.D.1996). "Partnership is defined by the courts as a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." Id. A partnership agreement may be oral or written, express or implied, from the acts and conduct of the parties; however, the primary criteria in determining the creation of a partnership is the intention of the parties. Id. It is not necessary that the parties have the intent to form a partnership, only that they have the intent to enter into a relationship constituting a partnership in law. Id. | A partnership agreement may be oral or written, express or implied, from the acts and conduct of the parties; however, the primary criteria in determining the creation of a partnership is the intention of the parties. | Can the partnership agreement be an oral agreement? | 000617.docx | LEGALEASE-00118288-LEGALEASE-00118289 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11116 | Tomasek v. State, 196 Or. 120 | 148+1 | Though the power of eminent domain is inherent in the state, it lies dormant until called into existence by express legislative authority, but this legislative authority is always subject to constitutional limitations. State ex rel. Olcott v. Hawk, 105 Or. 319, 208 P. 709, 209 P. 607. | The state's inherent power of eminent domain lies dormant until called into existence by express legislative authority, subject to constitutional limitations. ORS Const. art. 1, S 18. | Until when does the power of eminent domain stays dormant under the law? | 001255.docx | LEGALEASE-00118332-LEGALEASE-00118333 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 11117 | Morton Grove Park Dist. v. Am. Nat. Bank & Tr. Co., 78 Ill. 2d 353 | 148+1 | Under the interpretation given to this statutory scheme by the appellate court, a government entity is entitled to condemn private property and then pay the awarded just compensation into the hands of another government entity for the benefit of the public while the private individual exercises his constitutional right to appeal what he may feel to be an unjust award. It is not just that the loss of income should be cast on the owner and the public be granted a windfall. The law by which the loss is occasioned is no act of the owner but an act of government that the owner has no power to repeal or modify so as to avoid the loss. (Moll v. Sanitary District (1907), 228 Ill. 633, 637, 81 N.E. 1147.) Here the owners were deprived of their property and deprived of the use of the award which stood in place of the property taken for 30 months while they exercised the constitutional right to appeal. During that time the award earned $92,357.08. We hold that to deprive the owners of these earnings would violate their constitutional rights as discussed below. | Law by which loss by condemnation is occasioned is no act of owner of property but act of government that owner has no power to repeal or modify so as to avoid loss. U.S.C.A.Const. Amends. 5, 14. | Does the owner have power to repeal or modify condemnation to avoid loss? | Eminent Domain - Memo 39 - RK.docx | ROSS-003301220-ROSS-003301222 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 11118 | Egiazaryan v. Zalmayev, 880 F. Supp. 2d 494 | 237+6(1) | To qualify as opinion, the statement must be accompanied by a recitation of the accurate facts on which it is based. Steinhilber v. Alphonse, 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901, 501 N.E.2d 550 (1986). When a statement of opinion implies that it is based on unstated facts that justify the opinion, the opinion becomes an actionable "mixed opinion." Id. If the predicate facts are stated but are themselves false, to a degree that the difference between the stated facts and the actual truth would cause a reader to question the validity of the opinion, then that opinion may be an actionable "defamatory opinion." Silsdorf v. Levine, 59 N.Y.2d 8, 15"16, 462 N.Y.S.2d 822, 449 N.E.2d 716 (1983) (reinstating defamation claim based on letter accusing former mayor of corruption because listed facts demonstrating corruption were allegedly false); see Como v. Riley, 287 A.D.2d 416, 731 N.Y.S.2d 731, 731 (1st Dep't 2001). | Under New York law, if the predicate facts are stated but are themselves false, to a degree that the difference between the stated facts and the actual truth would cause a reader to question the validity of the opinion, then that opinion may be an actionable defamatory opinion. | Are opinions actionable as defamation? | 001316.docx | LEGALEASE-00118253-LEGALEASE-00118254 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 11119 | Schweihs v. Burdick, 96 F.3d 917 | 241+95(6) | The courts seem to apply the discovery rule in situations where the defamatory material is published in a manner likely to be concealed from the plaintiff, such as credit reports or confidential memoranda. In these situations, the injustice that results from the expiration of the limitations period before discovery of the plaintiff's injury is more likely to occur. See, e.g., Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 821 (Tenn.1994); McKown v. Dun & Bradstreet, Inc., 744 F.Supp. 1046, 1049 (D.Kan.1990); Clark v. Airesearch Manufacturing Company of Arizona, Inc., A Division of Garrett, 138 Ariz. 240, 242, 673 P.2d 984, 986 (Ariz.Ct.App.1983); Rinsley v. Brandt, 446 F.Supp. 850, 853 (D.Kan.1977); Kelley v. Rinkle, 532 S.W.2d 947, 949 (Tex.1976).2 This is the approach that the Illinois Supreme Court alluded to in Tom Olesker's, and we believe it is the approach that court would adopt in the present situation. | Under Illinois law, discovery rule could not apply so as to save prisoner's otherwise untimely defamation suit against publishers of book; in context of defamation, discovery rule applied only when defamatory material was published in manner likely to be concealed from plaintiff, such as in credit reports or confidential memoranda. | When is the discovery rule applied by Courts in defamation suits? | Libel and Slander - Memo - 96 - JS.docx | ROSS-003283664-ROSS-003283665 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 11120 | Bautista v. Jones, 25 Cal. 2d 746 | 92+4260 | The right to work, either in employment or independent business, is fundamental and, no doubt, enjoys the protection of the personal liberty guarantee of the Fourteenth Amendment to the federal Constitution, as well as the more specific provisions of our state Constitution. Cal. Const. art. I, ss 1, 13; see Suckow v. Alderson, 182 Cal. 247, 187 P. 965; Angelopulos v. Bottorff, 76 Cal.App. 621, 245 P. 447. But this right, like others equally fundamental, is not absolute. It is safe-guarded from legislative action which discriminates against a person or class of persons in respect of opportunities to obtain work or enter into business (Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Abe v. Fish & Game Commission, 9 Cal.App.2d 300, 49 P.2d 608); and it is also protected in some degree against arbitrary action by private organizations, including employers and labor unions. James v. Marinship Corp., supra. But it is subject to many legislative restrictions familiar to all, such as statutory limitations on working hours, minimum wages, age limits for employment, licensing acts, safety regulations, and a host of others. It is equally subject to peaceful, economic pressure by labor organizations seeking legitimate ends, such as conditions of work, collective rather than individual bargaining, seniority privileges and other methods of advancement, and the union or closed shop. See McKay v. Retail Auto. S. L. Union No. 1067, 16 Cal.2d 311, 106 P.2d 373; C. S. Smith Metropolitan Market Co. v. Lyons, 16 Cal.2d 389, 106 P.2d 414; Shafer v. Registered Pharmacists Union, 16 Cal.2d 379, 106 P.2d 403; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855. | The right to work, either in employment or independent business, is fundamental and enjoys the protection of the personal liberty guarantee of the Fourteenth Amendment and of State Constitution. Const.Cal. art. 1, SS 1, 13; U.S.C.A.Const. Amend. 14. | Is the right to work absolute? | 001385.docx | LEGALEASE-00118438-LEGALEASE-00118439 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11121 | Am. Fed'n of Labor v. Reilly, 113 Colo. 90 | 231H+998 | The courts of the United States for many years, and generally without regard to statute, have recognized the right of workmen to organize in labor or trade unions for the purpose of promoting their common welfare by lawful means. See American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360. This right has been declared to be a "fundamental" one (National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Texas & N. O. R. Co. v. Brotherhood, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034), existing independently, and prior to the authorization for formation of the National Labor Relations Board. Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738. See, also, 31 Am.Jur., p. 851, " 32; National Labor Relations Board v. Jones & Laughlin Steel Corp., supra; Iron Molders' Union v. Allis-Chalmers Co., 7 Cir., 166 F. 45, 20 L.R.A.,N.S., 315. See, also, Pickett v. Walsh, 192 Mass. 572, 78 N.E. 753, 6 L.R.A.,N.S., 1067, 116 Am.St.Rep. 272, 7 Ann.Cas. 638. Mr. Justice Stone (now, Chief Justice), in his opinion in Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 968, 83 L.Ed. 1423, expressed that the guarantees of free speech and assembly under the First Amendment extended protection against attempts of the authorities under a Jersey City ordinance to prevent the labor organizations involved "from holding meetings and disseminating information whether for the organization of labor unions or for any other lawful purpose." The specific purposes of such meetings, according to the opinion of Justice Stone, were "to organize labor unions in various industries in order to secure to workers thebenefits of collective bargaining with respect to betterment of wages, hours of work and other terms and conditions of employment." An injunction against the city officials was sustained under the First Amendment, and the rights of the | In absence of statute, workmen have right to organize in labor or trade unions for purpose of promoting their common welfare by lawful means. | Do laborers have a right to organize as labor unions to promote their welfare? | 001394.docx | LEGALEASE-00118462-LEGALEASE-00118463 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 11122 | Miadeco Corp. v. Miami-Dade Cty., 249 F. Supp. 3d 1296 | 148+2.1 | The U.S. Constitution prohibits "private property" from being "taken" for public use without just compensation. U.S. Const. amend. V. Just compensation is required not only for "physical" takings, but also for "regulatory" takings, in which government regulation of private property is "so onerous that its effect is tantamount to a direct appropriation." See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). | Just compensation is required not only for physical takings, but also for regulatory takings, in which government regulation of private property is so onerous that its effect is tantamount to a direct appropriation. U.S. Const. Amend. 5. | Is just compensation required for regulatory takings? | Eminent Domain -Memo 60- VP.docx | ROSS-003286067-ROSS-003286068 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 11123 | Rooney v. Murphy, 62 S.W.2d 659 | 401+68 | Two separate and distinct causes of action are shown by the pleadings and evidence; one being for malicious prosecution instituted in Pecos county, and the other being for illegal arrest and false imprisonment in Angelina county. The venue of a suit for malicious prosecution lies in the county where the prosecution was begun, and before appellee could maintain venue over the appellants in Angelina county in face of their pleas of privilege to be sued in the county of their residence, it was necessary for him to show prima facie at least that they instigated, participated in, or in some manner ratified the illegal acts committed in Angelina county. Smith v. Rogers (Tex. Civ. App.) 34 S.W.(2d) 312; Hubbard v. Lord, 59 Tex. 384; Hilliard Bros. v. Wilson, 76 Tex. 180, 13 S. W. 25; Leach v. Stone (Tex. Civ. App.) 264 S. W. 620; Warwick v. First State Bank of Temple (Tex. Civ. App.) 296 S. W. 348; Wettermark v. Campbell, 93 Tex. 517, 56 S. W. 331. There is no showing whatever that either Moore, Sibley, or Potts had anything to do with the sending of the telegram which caused the arrest of appellee. The testimony is undisputed that neither knew that any such telegram had been sent until citation in this suit was served upon them. | Plaintiff, in suit for malicious prosecution to maintain venue over defendants in county other than of their residence, must show prima facie that defendants instigated, participated in, or ratified illegal acts which were committed in county of suit. Vernon's Ann.Civ.St. art. 1995, subds. 4, 9. | Which is the proper venue for a malicious prosecution action? | 001495.docx | LEGALEASE-00118653-LEGALEASE-00118654 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 11124 | Brown v. Gulf Television Co., 157 Tex. 607 | 401+1.5 | The directions in both Article 1995, s 14 and Article 4656 are stated in mandatory terms. They need not be and have not been construed as conflicting. Whenever it can properly be said from the pleadings that the issuance of an injunction is merely ancillary to a judgment awarding a recovery of lands or quieting the title thereto, Article 1995, s 14 has application. Uvalde Rock Asphalt Co. v. Asphalt Belt Ry. Co., Tex.Com.App., 267 S.W. 688 (upon rehearing). On the other hand where the petition discloses that the issuance of a perpetual injunction is the primary and principal relief sought, the special venue provisions of Article 4656 control. "Where the venue depends on the nature of the suit, such venue is ordinarily determined by the nature of the principal right asserted and the relief sought for the breach thereof." Lone Star Mutual Life Association v. Bruno, Tex.Civ.App., 101 S.W.2d 1059, 1060; Page v. Kilgore, Tex.Civ.App., 181 S.W.2d 730; Body v. Crabb, Tex.Civ.App., 205 S.W.2d 606; Miller v. Howell, Tex.Civ.App., 234 S.W.2d 925. | Where the venue depends on the nature of the suit, such venue is ordinarily determined by the nature of the principal right asserted and the relief sought for the breach thereof. Vernon's Ann.Civ.St. art. 1995. | "Do the facts alleged in the plaintiffs petition, the rights asserted and the relief sought have any bearing on the nature of the suit?" | 001527.docx | LEGALEASE-00118544-LEGALEASE-00118546 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11125 | McCarthy v. Azure, 22 F.3d 351 | 25T+113 | This imperative is in no way inconsistent with the acknowledged "federal policy favoring arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); see also Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). The federal policy presumes proof of a preexisting agreement to arbitrate disputes arising between the protagonists. Once that agreement has been proven and the protagonists identified, cases such as Cone and McMahon instruct courts to use a particular hermeneutical principle for interpreting the breadth of the agreement; that is, if the contract language chosen by the parties is unclear as to the nature of the claims to which an agreement to arbitrate extends, a "healthy regard" for the federal policy favoring arbitration requires that "any doubts concerning the scope of an arbitrable issue be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24"25, 103 S.Ct. at 941. The federal policy, however, does not extend to situations in which the identity of the parties who have agreed to arbitrate is unclear. See Painewebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir.1990) (holding that "[a]s a matter of contract, no party can be forced to arbitrate unless that party has entered into an agreement to do so"). Thus, requiring that arbitration rest on a consensual foundation is wholly consistent with federal policy. | Federal policy favoring arbitration does not extend to situations in which identity of parties who have agreed to arbitrate is unclear. | Does federal policy in favor of arbitration extend to situations in which the identity of the parties who have agreed to arbitrate is unclear? | Alternative Dispute Resolution - Memo 207 - RK.docx | ROSS-003284005-ROSS-003284007 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 11126 | In re Cooley, 362 B.R. 514 | 25T+113 | It is well settled that under the mandate of the FAA, there is a strong federal policy favoring arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Valid arbitration agreements must be enforced unless it can be determined Congress intended to create an exception to the FAA's mandate for a particular claim. Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Such an exception should be found from (1) the statute's text, (2) the statute's legislative history, or (3) "an inherent conflict between arbitration and the statute's underlying purposes." Id. | There is strong federal policy favoring arbitration, and valid arbitration agreements must be enforced unless it can be determined that Congress intended to create an exception to the mandate of the Federal Arbitration Act (FAA) for a particular claim. 9 U.S.C.A. S 1 et seq. | When may a valid arbitration agreement not be enforced? | 001659.docx | LEGALEASE-00118703-LEGALEASE-00118704 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 11127 | Dobbins v. Hawk's Enterprises, 198 F.3d 715 | 25T+113 | Congress passed the FAA which mandated the enforcement of arbitration provisions, and declared a strong national policy in favor of arbitration. See Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1983). From this strong policy flows a "broad principle of enforceability" of arbitration provisions. Id. at 11, 104 S.Ct. 852. To enforce an arbitration clause under the FAA, the arbitration provision must be a part of a written "maritime contract" or a contract evidencing a commercial transaction, and an arbitration agreement must be enforceable under the principles of contract law. See 9 U.S.C. " 2; see also Barker v. Golf U.S.A., Inc., 154 F.3d 788, 790 (8th Cir.1998) | Federal Arbitration Act (FAA) expresses strong national policy in favor of arbitration, and from this strong policy flows a broad principle of enforceability of arbitration provisions. 9 U.S.C.A. S 1 et seq. | Does the national policy in favor of arbitration create a broad principle of enforceability of arbitration provisions? | 001683.docx | LEGALEASE-00118727-LEGALEASE-00118728 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 11128 | Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655 | 25T+113 | The Federal Arbitration Act, 9 U.S.C. "" 1 et seq., establishes a liberal policy in favor of arbitration, see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), as a means to reduce "the costliness and delays of litigation." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir.1987) (citing H.R.Rep. No. 96, at 1, 2 (1924)). Moreover, "[t]he federal policy favoring arbitration is even stronger in the context of international transactions." Deloitte Noraudit v. Deloitte Haskins & Sells, 9 F.3d 1060, 1063 (2d Cir.1993) (citations omitted). | Federal Arbitration Act establishes liberal policy in favor of arbitration, as means to reduce costliness and delays of litigation. 9 U.S.C.A. S 1 et seq. | Was the Federal Arbitration Act enacted as a means to reduce the cost and delays of litigation? | 001709.docx | LEGALEASE-00118753-LEGALEASE-00118754 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 11129 | Mashpee Tribe v. Sec'y of Interior, 820 F.2d 480 | 209+174 | The dispositive issue on this appeal can be stated simply. Have the appellants shown that the entities whose rights they seek to assert-the Mashpees, Christiantowns, Chappaquiddicks, Herring Ponds, and Troys-were in fact tribes in the late 1860s when the Massachusetts statutes were enacted and (presumably) the relevant ancestors tried to convey title? It is well established that the most important statute the appellants invoke-the Indian Nonintercourse Act, 25 U.S.C. " 177-allows recovery only if plaintiffs show they are or properly represent entities that 1) were tribes at the time the land was alienated and 2) remain tribes at the time of suit. See James v. Watt, 716 F.2d 71, 72 (1st Cir.1983); Epps v. Andrus, 611 F.2d 915 (1st Cir.1979); Mashpee Tribe v. New Seabury Corp., 592 F.2d 575, 581 (1st Cir.1979), cert. denied, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979); Joint Tribal Council of the Passamaquoddy Tribe v. Morton, 528 F.2d 370, 378 (1st Cir.1975). Alternative legal authority upon which appellants base their claims, namely federal common law and the Indian Commerce Clause, also (at best) protect a tribe 's title to land. See U.S. Const. art. 1, " 8 (empowering Congress to "regulate Commerce ... with the Indian tribes"); Oneida II, supra (permitting a tribe to assert a claim under federal common law); Canadian St. Regis Band of Mohawk Indians v. New York, 573 F.Supp. 1530 (N.D.N.Y.1983) ("To the extent that the individual plaintiffs purport to maintain an ejectment action under federal common law, ... the individual plaintiffs lack standing because they lack title."). Appellants can assert only tribal claims and must therefore show that the allegedly invalid conveyances made sometime subsequent to the 1869 and 1870 statutes were conveyances of title by entities existing as tribes. | Indian Nonintercourse Act permits recovery, in form of recognition of aboriginal title to land, only if plaintiffs show they are or properly represent entities that were tribes at time land was alienated and remain tribes at time of suit. 25 U.S.C.A. S 177. | When does a Plaintiff have standing to bring a claim under the Indian Nonintercourse Act? | Indians - Memo 21 - TH.doc | LEGALEASE-00006243-LEGALEASE-00006244 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11130 | Fauntleroy v. Rainbow Marketers, 888 So. 2d 1045 | 231H+33 | The employer-employee relationship is contractual in nature. Quebedeaux v. Dow Chemical Co., 01-2297 (La.6/21/02), 820 So.2d 542."As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy." Id. at 545. When they have not effected an employment contract, the Louisiana Civil Code defines the default relationship as at-will employment. Id. Article 2747 states:A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for doing so. The servant is also free to depart without assigning any cause. | The employer-employee relationship is contractual in nature, and as such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy. | Is an employer-employee relationship contractual in nature? | 001416.docx | LEGALEASE-00118922-LEGALEASE-00118923 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 11131 | San Antonio Water Sys. v. Overby, 429 S.W.3d 716 | 148+266 | The constitution's takings clause prohibits a governmental entity from exercising its governmental powers to take, damage, or destroy a person's property without either providing adequate compensation or obtaining the owner's consent. See Tex. Const. art. I, " 17; Gen. Servs. Comm'n v. Little"Tex Insulation Co., 39 S.W.3d 591, 598 (Tex.2001); see also Jennings, 142 S.W.3d at 313"14. In effect, the takings clause waives governmental immunity for certain taking claims.2 VSC, LLC, 347 S.W.3d at 236; State v. Holland, 221 S.W.3d 639, 643 (Tex.2007). To prevail on a taking claim, the plaintiff must prove the "governmental actor acted intentionally to take or damage property for a public use." Holland, 221 S.W.3d at 643; accord Little"Tex, 39 S.W.3d at 598. Specifically, the plaintiff must provethe governmental entity physically damage[d] [the plaintiff's] property in order to confer a public benefit ... [and] (1) [knew] that [its] specific act [was] causing identifiable harm; or (2) [knew] that the specific property damage [was] substantially certain to result from an authorized government action-that is, that the damage [was] "necessarily an incident to, or necessarily a consequential result of" the government's action.Jennings, 142 S.W.3d at 314; accord City of San Antonio v. Pollock, 284 S.W.3d 809, 821 (Tex.2009). Evidence of the governmental entity's failure to avoid preventable damage may be evidence of negligence, but it is not necessarily evidence of the entity's intent to damage the plaintiff's property. See Pollock, 284 S.W.3d at 821; Jennings, 142 S.W.3d at 314. | To prevail on a takings claim under the state constitution, the plaintiff must prove the governmental actor acted intentionally to take or damage property for a public use. Vernon's Ann.Texas Const. Art. 1, S 17. | What should be proved by the plaintiff to prevail on a taking claim? | 001535.docx | LEGALEASE-00118971-LEGALEASE-00118972 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11132 | AAA Pharmacy v. United States, 112 Fed. Cl. 387 | 148+2.1 | "[R]egulatory takings jurisprudence ... is characterized by "essentially ad hoc, factual inquiries," [Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) ], designed to allow "careful examination and weighing of all the relevant circumstances." [Palazzolo v. Rhode Island, 533 U.S. 606, 636, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (O'Connor, J. concurring)." Tahoe"Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 322, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002). Here, Plaintiff alleges that the action which took its business was the delay in scheduling and holding a hearing before a neutral officer"a hearing that ultimately resulted in the reinstatement of its Medicare billing privileges. Pl.'s Resp. Summ. J. ("Pl.'s Resp.") 4"8, Mar. 27, 2013. On the other hand, Defendant argues that a "[d]elay in the regulatory process cannot give rise to ... temporary taking liability unless the delay is extraordinary." Def.'s Mot. 18. Defendant argues that even delays of several years have not supported takings liability, and as such, the alleged delay of approximately three months cannot constitute an extraordinary delay. | Regulatory takings jurisprudence is characterized by essentially ad hoc, factual inquiries designed to allow careful examination and weighing of all the relevant circumstances. U.S. Const. Amend. 5. | How is regulatory taking jurisprudence characterized? | 001540.docx | LEGALEASE-00118998-LEGALEASE-00118999 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11133 | Potomac Dev. Corp. v. D.C., 28 A.3d 531 | 148+2.1 | The general rule that post-announcement delay does not ordinarily result in a taking, however, is not absolute, and the character of the government's delay may give rise to a taking claim under Penn Central. "Delay in the regulatory process cannot give rise to takings liability unless the delay is extraordinary" and "[i]f the delay is extraordinary, the question of temporary regulatory takings liability is to be determined using the Penn Central factors." Appolo Fuels v. United States, 381 F.3d 1338, 1351 (Fed.Cir.2004); see Agins, 447 U.S. at 263 n. 9, 100 S.Ct. 2138 ("extraordinary delay" may give rise to a taking claim). | Delay in the regulatory process cannot give rise to takings liability unless the delay is extraordinary; if the delay is extraordinary, the question of temporary regulatory takings liability is to be determined by analyzing the factors for whether a regulatory taking has occurred. | Can extraordinary delays give rise to takings liability? | 001542.docx | LEGALEASE-00119002-LEGALEASE-00119003 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |
| 11134 | Smith v. City of League City, 338 S.W.3d 114 | 148+2.1 | Governmental immunity does not shield a municipality from an action for compensation under the takings clause. Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth., 282 S.W.3d 59, 61 (Tex.2009). The takings clause provides: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. 1, " 17(a). Hence, to establish a takings claim, a claimant must show a governmental actor (1) intentionally (2) took or damaged property (3) for a public use. State v. Holland, 221 S.W.3d 639, 643 (Tex.2007). Of course, the plaintiff must also have a compensable interest in the property at issue. Brownlow v. State, 251 S.W.3d 756, 760 (Tex.App.-Houston [14th Dist.] 2008), aff'd, 319 S.W.3d 649 (Tex.2010). Whether particular facts are sufficient to constitute a taking is a question of law. Id. | To establish a takings claim, a claimant must show a governmental actor: (1) intentionally; (2) took or damaged property; (3) for a public use. Vernon's Ann.Texas Const. Art. 1, S 17. | What should a claimant show in order to establish a takings claim? | Eminent Domain -Memo 78-VP.docx | LEGALEASE-00006730-LEGALEASE-00006731 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11135 | Litz v. Maryland Dep't of Env't, 446 Md. 254 | 148+266 | A difficulty with Ms. Litz's claim of a "taking" fitting neatly within conventional thinking about inverse condemnation is that her allegations focus predominantly on the inaction of Respondents, rather than any affirmative action by those parties. There is no controlling Maryland law that we could find that sheds light on this wrinkle. Thus, we look outside our borders for guidance. Upon this review, it seems appropriate (and, in this case, fair and equitable, at least at the pleading stage of litigation) to recognize an inverse condemnation claim based on alleged "inaction" when one or more of the defendants has an affirmative duty to act under the circumstances. Therefore, we hold, as a matter of Maryland law, that an inverse condemnation claim is pleaded adequately where a plaintiff alleges a taking caused by a governmental entity's or entities' failure to act, in the face of an affirmative duty to act. | An inverse condemnation claim is pleaded adequately where a plaintiff alleges a taking caused by a governmental entity's or entities' failure to act, in the face of an affirmative duty to act. West's Ann.Md. Const. Art. 3, S 40. | Can the governments inaction support a claim for inverse condemnation? | 001554.docx | LEGALEASE-00119008-LEGALEASE-00119009 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 11136 | Englewood v. Miami Valley Lighting, 182 Ohio App. 3d 58 | 317A+101 | The Supreme Court has considered numerous factors in determining whether a good or service qualifies as a public utility. First, a public utility provides "an essential good or service to the general public which has a legal right to demand or receive this good or service." Id. at 387, 596 N.E.2d 423. Second, the good or service must be provided " "generally and indiscriminately." " St. Marys at " 57, quoting S. Ohio Power Co. v. Pub. Util. Comm. (1924), 110 Ohio St. 246, 143 N.E. 700, paragraph two of the syllabus. The provider must have an obligation to provide the good or service that cannot be arbitrarily or unreasonably withdrawn. A & B Refuse Disposers at 387, 596 N.E.2d 423. Together, these factors have been referred to as the "public service" requirement. | A public utility provides an essential good or service to the general public which has a legal right to demand or receive this good or service, which must be provided generally and indiscriminately. | Should the goods and services by a public utility be provided generally and indiscriminately to the general public? | 001603.docx | LEGALEASE-00119013-LEGALEASE-00119014 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11137 | People v. Ryan, 125 A.D.3d 695 | 203+507 | In order to be held criminally liable for a person's death, a defendant must have engaged in conduct that "actually contribute[d]" to that person's death (People v. DaCosta, 6 N.Y.3d 181, 184, 811 N.Y.S.2d 308, 844 N.E.2d 762), by setting in motion the events that resulted in the death (see People v. Matos, 83 N.Y.2d 509, 511, 611 N.Y.S.2d 785, 634 N.E.2d 157). The defendant's actions need not be the sole cause of death and, indeed, the defendant need not have committed the fatal act to be liable (see id. at 511"512, 611 N.Y.S.2d 785, 634 N.E.2d 157). The test is, instead, whether it may be reasonably foreseen that the defendant's actions would result in the victim's death; if so, the defendant's actions may, under the criminal law, constitute a "sufficiently direct cause" of the death to warrant criminal liability for it (People v. Kibbe, 35 N.Y.2d 407, 412, 362 N.Y.S.2d 848, 321 N.E.2d 773; see People v. DaCosta, 6 N.Y.3d at 186, 811 N.Y.S.2d 308, 844 N.E.2d 762; People v. Matos, 83 N.Y.2d at 512, 611 N.Y.S.2d 785, 634 N.E.2d 157). | In order to be held criminally liable for a person's death, a defendant must have engaged in conduct that actually contributed to that person's death. | Must defendant's actions have been an actual contributory cause of death of victim to be held criminally liable for homicide? | 001739.docx | LEGALEASE-00118856-LEGALEASE-00118857 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11138 | Cheyenne River Sioux Tribe v. Jewell, 205 F. Supp. 3d 1052 | 209+124 | When interpreting provisions of a treaty between a tribe and the United States, the Indian law canons of construction require that the treaty "be construed liberally in favor of the Indians with ambiguous provisions interpreted for their benefit." County of Oneida, 470 U.S. at 247, 105 S.Ct. 1245. Courts, therefore, interpret treaties to give the effect to the treaty's terms that the Indians themselves would have had at the time the treaty was made. See Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 196, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999); see also Commercial Passenger, 443 U.S. at 676, 99 S.Ct. 3055 (stating that treaties must "be construed, not according to the technical meaning of its words to learned lawyers, but in the sense in which they would naturally be understood by the Indians") (citing Jones v. Meehan, 175 U.S. 1, 11, 20 S.Ct. 1, 44 L.Ed. 49 (1899)). The Indian canons of construction also require courts to "look beyond the written words to the larger context that frames the Treaty, including "the history of the treaty, the negotiations, and the practical construction adopted by the parties." " Mille Lacs Band, 526 U.S. at 196, 119 S.Ct. 1187 (quoting Choctaw Nation v. United States, 318 U.S. 423, 432, 63 S.Ct. 672, 87 L.Ed. 877 (1943)). | When interpreting provisions of a treaty between an Indian tribe and the United States, the Indian law canons of construction require that the treaty be construed liberally in favor of the Indians with ambiguous provisions interpreted for their benefit. | How should courts interpret Indian treaties? | 001785.docx | LEGALEASE-00118843-LEGALEASE-00118844 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 11139 | Reinoehl v. Trinity Universal Ins. Co., 130 Ohio App. 3d 186 | 249+16 | The lack of probable cause generally becomes the essence of a claim for malicious prosecution for the reason that malice may be inferred if probable cause was not present. Fair. Probable cause is defined as a " "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person is guilty of the offense with which he is charged." " Id., quoting Huber v. O'Neill (1981), 66 Ohio St.2d 28, 30, 20 O.O.3d 17, 19, 419 N.E.2d 10, 12. The return of an indictment by a grand jury raises a rebuttable presumption that probable cause exists. Mayes v. Columbus (1995), 105 Ohio App.3d 728, 737"738, 664 N.E.2d 1340, 1345"1347. "In order to rebut this presumption, plaintiff was required to produce "substantial" evidence that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise "significantly" irregular." Fair. | Lack of probable cause generally becomes the essence of a claim for malicious prosecution for the reason that malice may be inferred if probable cause was not present. | When is malice inferred in a malicious prosecution claim? | Malicious Prosecution - Memo 13 - MS.docx | ROSS-003281774-ROSS-003281775 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11140 | Sundeen v. Kroger, 355 Ark. 138 | 249+24(3) | Here, Sundeen argues that, because the charges against him were previously nolle prossed in circuit court, there is no evidence of a criminal conviction in the lower district court. While it is true that the entry of a nolle prosequi is a sufficiently favorable termination of a proceeding in favor of the accused, see Crockett Motor Sales, Inc. v. London, 283 Ark. 106, 671 S.W.2d 187 (1984), it is not, standing alone, evidence that probable cause was lacking. See, e.g., Owens v. Shoe Tree of Fayetteville, Inc., 252 Ark. 775, 480 S.W.2d 936 (1972) (citing McNeal v. Millar, 143 Ark. 253, 220 S.W. 62 (1920) (acquittal does not necessarily show a want of probable cause in the prosecution)); Kansas & Texas Coal Co. v. Galloway, 71 Ark. 351, 74 S.W. 521 (1903). | While the entry of a nolle prosequi is a sufficiently favorable termination of a proceeding in favor of the accused, it is not, standing alone, evidence that probable cause for prosecution was lacking in context of claim for malicious prosecution. | "Does an order of nolle prosequi, by itself, establish a lack of probable cause?" | 001815.docx | LEGALEASE-00118943-LEGALEASE-00118944 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11141 | Cox v. Superior Court of Amador County, 205 Cal.Rptr.3d 188 | 302+4 | "The label given a petition, action or other pleading is not determinative; rather, the true nature of a petition or cause of action is based on the facts alleged and remedy sought in that pleading. [Citations.]" (Escamilla v. Department of Corrections & Rehabilitation (2006) 141 Cal.App.4th 498, 511, 46 Cal.Rptr.3d 408.) Accordingly, in Escamilla, the court treated a petition for writ of habeas corpus as a petition for writ of mandate seeking recovery of personal property or its value. (Id. at pp. 509, 511"512, 46 Cal.Rptr.3d 408; see also People v. Picklesimer, supra, 48 Cal.4th at p. 340, 106 Cal.Rptr.3d 239, 226 P.3d 348 ["Assuming the pleading that has been filed meets or can be amended to meet the prerequisites for a petition for writ of mandate, a court in its discretion may treat a motion or a petition for a different writ as a mislabeled petition for writ of mandate"]; In re Cregler (1961) 56 Cal.2d 308, 309, 14 Cal.Rptr. 289, 363 P.2d 305 [stipulation to construe petition for writ of prohibition as habeas corpus petition]; In re Stier (2007) 152 Cal.App.4th 63, 83, 61 Cal.Rptr.3d 181 [acknowledging authority of court to treat habeas corpus petition as petition for writ of mandate]; Fuller v. Superior Court (2004) 125 Cal.App.4th 623, 625, 23 Cal.Rptr.3d 204 [deeming habeas corpus petition to be petition for writ of prohibition]; cf. Villery v. Department of Corrections & Rehabilitation (2016) 246 Cal.App.4th 407, 200 Cal.Rptr.3d 896 [trial court erred in sustaining demurrer to inmate's petition for writ of mandate on ground habeas corpus was a more appropriate remedy].) | The label given a petition, action, or other pleading is not determinative; rather, the true nature of a petition or cause of action is based on the facts alleged and remedy sought in that pleading. | How is the nature of a cause of action determined? | 001869.docx | LEGALEASE-00118880-LEGALEASE-00118882 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11142 | Rhodes v. Jones, 351 F.2d 884 | 13+1 | A "cause of action" is a situation or state of facts which entitles a party to sustain an action and gives him the right to seek judicial interference in his behalf.Under the Federal Rules of Civil Procedure, the word "claim" denotes the same thing, i.e. "the aggregate of operative facts which give rise to a right enforceable in the courts." Dery v. Wyer, 2 Cir., 265 F.2d 804, 807. | "Cause of action" is situation or state of facts which entitles party to sustain action and gives him right to seek judicial interference in his behalf. | Does a cause of action include a right to judicial interference? | 002036.docx | LEGALEASE-00119245-LEGALEASE-00119247 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 11143 | Angio-Med. Corp. v. Eli Lilly & Co., 720 F. Supp. 269 | 237+130 | With respect to the seventh claim in the Amended Complaint, namely the trade libel claim, we grant Lilly's motion to dismiss. Trade libel or product disparagement is an action to recover for words or conduct which tend to disparage or negatively reflect upon the condition, value or quality of a product or property. 44 N.Y.Jur.2d, supra, " 175, at 189"90. The elements of a trade libel claim which must be proven are:(1) falsity of the statement,(2) publication to a third person,(3) malice (express or implied), and(4) proven special damages.44 N.Y.Jur.2d, supra, " 178, at 192; see Drug Research, 7 N.Y.2d at 440, 166 N.E.2d at 322, 199 N.Y.S.2d at 37. | Elements of trade libel claim which must be proved are falsity of statement, publication to third person, express or implied malice, and proven special damages. | What are the elements of trade libel? | Libel and Slander - Memo 121 - ANG.docx | ROSS-003283680-ROSS-003283682 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 11144 | Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459 | 145+4 | KUA had the authority of the City of Kissimmee to enter into contracts for municipal services, including this crossing agreement, which ensured access to the power plant. As discussed above, CSX granted KUA a license to construct, use, and maintain a private road grade crossing across CSX's railroad tracks. In recognition of the increased risks associated with the use of CSX's property, tracks, and right-of-way and as part of the "consideration" for receiving this license, KUA agreed to assume all risk of loss and damage to its own property and also agreed to defend and indemnify CSX against any loss. Crossing Agreement "" 14.1"14.2. The indemnification provision was part and parcel of the Crossing Agreement, a contract between KUA and CSX "fairly authorized" by Florida law. Thus, the indemnification agreement is binding and enforceable. Accordingly, we conclude that a municipal agency like KUA has the inherent authority to contract with private parties and enter into an indemnification agreement as part of a contract with a private party and may not invoke sovereign immunity to defeat its obligations under the contract. | Crossing agreement that required municipal electric utility to indemnify railroad was binding and enforceable as a contract fairly authorized by state law. | Is a crossing agreement that requires a municipal electric utility to indemnify a railroad binding and enforceable? | Electricity - Memo 29 - RK.docx | LEGALEASE-00007518-LEGALEASE-00007519 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11145 | Sluss v. Commonwealth, 450 S.W.3d 279 | 203+507 | It is abundantly evident that the issue of causation in homicide cases is framed in terms "of whether or not the result as it occurred was either foreseen or foreseeable by the defendant as a reasonable probability." Lofthouse v. Commonwealth, 13 S.W.3d 236, 239 (Ky.2000) (quoting Robert Lawson and William Fortune, Kentucky Criminal Law " 2"4(d)(3), at 74 (1998)). The matter of whether a victim was wearing a seatbelt at the time of an accident or the functionality of the air bag in a victim's vehicle is not relevant to whether the defendant was able to foresee the result of his conduct. | Issue of causation in homicide cases is framed in terms of whether or not the result as it occurred was either foreseen or foreseeable by the defendant as a reasonable probability. | Is foreseeability by the defendant necessary to constitute causation of homicide? | Homicide - Memo 47 - JS.docx | LEGALEASE-00007524-LEGALEASE-00007525 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 11146 | Hostler v. Green Park Dev. Co., 986 S.W.2d 500 | 386+2 | The essence of an action for trespass is violation of possession, not challenge to title. Meeker v. Grissum, 970 S.W.2d 345, 347 (Mo.App.1998). To support an action for trespass, the party making the claim must have the legal right to possession. Id. Liability for trespass exists whether or not done in good faith and with reasonable care, in ignorance or under mistake of law or fact. Kitterman v. Simrall, 924 S.W.2d 872, 879 (Mo.App.1996). Point denied. | Liability for trespass exists whether or not done in good faith and with reasonable care, in ignorance or under mistake of law or fact. | Can a liability for trespass exist when acts are done in good faith? | Trespass - Memo 68 - JS.docx | ROSS-003297368-ROSS-003297369 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 11147 | Roberts v. City of Cranston Zoning Bd. of Review, 448 A.2d 779 | 15A+1058 | Given its ordinary and customary meaning, the term "judicial proceedings" is not limited to only those proceedings that occur in a court of law. Instead, the term incompasses "[a]ny proceeding wherein judicial action is invoked and taken." Black's Law Dictionary 762 (5th ed. 1979). The Attorney General argues that only a member of the judicial branch of the government can perform a judicial act. This argument lacks merit. | Term "judicial proceedings" is not limited to only those proceedings that occur in court of law, but rather, term incompasses any proceeding wherein judicial action is invoked and taken. | Is the term judicial proceeding limited to proceedings that occur in a court of law? | Administrative Law - Memo 168 - RK.docx | ROSS-003285042-ROSS-003285043 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11148 | Citizens Concerned for Kids v. Yellow Med. E. Indep. Sch. Dist. No. 2190, 703 N.W.2d 582 | 15A+1059 | To be reviewable by certiorari, a school board decision must be "quasi-judicial" in nature. Minn. Chapter of Associated Builders & Contractors, Inc. v. Bd. of Educ. of Minnetonka Indep. Sch. Dist. No. 276, 567 N.W.2d 761, 763 (Minn.App.1997), review denied (Minn. Aug. 26, 1997). The three indicia of quasi-judicial actions are "(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim." Minn. Ctr. for Envtl. Advocacy v. Metro. Council, 587 N.W.2d 838, 842 (Minn.1999) (MCEA). Certiorari is not available when the acts sought to be reviewed are of a legislative or administrative character. W. Area Business & Civic Club v. Duluth Sch. Bd. Indep. Dist. No. 709, 324 N.W.2d 361, 364 (Minn.1982). | The three indicia of administrative agency's quasi-judicial actions are: (1) investigation into a disputed claim and weighing of evidentiary facts, (2) application of those facts to a prescribed standard, and (3) a binding decision regarding the disputed claim. | What are the three indicia of quasi judicial actions? | Administrative Law - Memo 172 - RK.docx | ROSS-003309111-ROSS-003309112 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 11149 | Morrison v. Labor and Indus. Relations Com'n, 23 S.W.3d 902 | 289+501 | The burden of proving a partnership is on the party asserting the existence of the partnership. The law never presumes that a partnership exists, but rather the burden is upon the party asserting its existence to establish all elements of a partnership by clear, cogent and convincing evidence. Nesler v. Reed, 703 S.W.2d 520, 523 (Mo.App. E.D.1985). This burden is met if evidence is presented which establishes " "a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." " Id. (quoting Kielhafner v. Kielhafner, 639 S.W.2d 288, 289 (Mo.App.1982)). | The law never presumes that a partnership exists, but rather the burden is upon the party asserting its existence to establish all elements of a partnership by clear, cogent and convincing evidence. | Can the existence of a partnership be presumed? | 002425.docx | LEGALEASE-00119520-LEGALEASE-00119521 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 11150 | Cortiza v. Rosenblat, 291 So.2d 425 | 289+701 | Whether the partnership is ordinary or commercial depends on the intention of the parties and the nature of the business conducted by it. Since a commercial partnership is exclusively confined to dealing in movables, it has been held that a partnership which has as its purpose the sale or rental of immovable property is by nature an ordinary partnership. Rosenblat and Fuksman were engaged in a partnership dedicated exclusively to the purchase and rental of immovable property. As such a partnership is regarded judicially as ordinary rather than commercial in nature, the trial court's judgment must be amended to limit the liability of Rosenblat to his virile share of the partnership debt. | Since a commercial partnership is exclusively confined to dealing in movables, a partnership which has as its purpose the sale or rental of immovable property is by nature an ordinary partnership and its partners are not bound in solido for debts of partnership. LSA-C.C. arts. 2872, 2873. | Is a commercial partnership confined to movable property? | 002435.docx | LEGALEASE-00119530-LEGALEASE-00119531 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 11151 | Campus Lodge of Columbia, Ltd. v. Jacobson, 319 S.W.3d 549 | 233+574 | A lease in Missouri acts as both a conveyance and a contract, and a damaged party has available the usual contract remedies in the event a provision of a lease is breached "including damages, reformation and rescission of the contract." Premier Golf Mo., LLC v. Staley Land Co., LLC, 282 S.W.3d 866, 873 (Mo.App. W.D.2009). We review the court's interpretation of the lease de novo. R & J Rhodes, LLC v. Finney, 231 S.W.3d 183, 187 (Mo.App. W.D.2007). | A lease in Missouri acts as both a conveyance and a contract, and a damaged party has available the usual contract remedies in the event a provision of a lease is breached, including damages, reformation, and rescission of the contract. | Is a lease a contract and also a conveyance? | 001933.docx | LEGALEASE-00119628-LEGALEASE-00119629 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 11152 | Hous. Auth. & Urban Redevelopment Agency of City of Atl. City v. Taylor, 171 N.J. 580 | 233+590 | A court must enforce a lease as it is written, absent some superior contravening public policy. Marini v. Ireland, 56 N.J. 130, 143, 265 A.2d 526 (1970); Fargo Realty, Inc. v. Harris, 173 N.J.Super. 262, 265"66, 414 A.2d 256 (App.Div.1980); Mury v. Tublitz, 151 N.J.Super. 39, 44, 376 A.2d 547 (App.Div.1977). In the absence of such public policy, the parties are free to define the terms of the lease agreement, including "rent." Fargo Realty, supra, 173 N.J.Super. at 266, 414 A.2d 256. New Jersey courts long have held that parties to a residential lease may treat attorneys' fees and other costs related to an eviction as "additional rent." Community Realty Mgmt., Inc. v. Harris, 155 N.J. 212, 234, 714 A.2d 282 (1998); Fargo Realty, supra, 173 N.J.Super. at 266, 414 A.2d 256; see also Vineland Shopping Ctr., Inc. v. DeMarco, 35 N.J. 459, 471, 173 A.2d 270 (1961) (holding that sewerage charges may be characterized in lease as "rent"); University Court v. Mahasin, 166 N.J.Super. 551, 553"54, 400 A.2d 133 (App.Div.1979) (observing that attorneys' fees may be treated as "rent"); Mury, supra, 151 N.J.Super. at 44, 376 A.2d 547 (same); Housing Auth., City of Trenton v. Green, 118 N.J.Super. 544, 545"46, 289 A.2d 264 (App.Div.), certif. denied, 61 N.J. 159, 293 A.2d 389 (1972) (same). | A court must enforce a lease as it is written, absent some superior contravening public policy. | Must a court enforce a lease as it is written if it does not violate a superior contravening public policy? | Landlord and Tenant - Memo 65 - ANG.docx | ROSS-003297010-ROSS-003297012 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 11153 | United States v. City of Philadelphia, 482 F. Supp. 1274 | 170A+1788.6 | The rule is well established in this circuit that complaints in civil rights cases must be pleaded with factual specificity. Vague and conclusory allegations will not survive a motion to dismiss. Rather, the claim for relief must be supported by specific factual averments. Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir. 1978); Rotolo v. Borough of Charleroi, 532 F.2d 920, 922 (3d Cir. 1976); Curtis v. Everette, 489 F.2d 516, 521 (3d Cir. 1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); Esser v. Weller, 467 F.2d 949, 950 (3d Cir. 1972); Marnin v. Pinto, 463 F.2d 583, 584 (3d Cir. 1972); Robinson v. McCorkle, 462 F.2d 111, 114 (3d Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); Carr v. Sharp, 454 F.2d 271, 273 (3d Cir. 1972); Marcedes v. Barrett, 453 F.2d 391, 392 (3d Cir. 1972); United States ex rel. Birnbaum v. Dolan, 452 F.2d 1078, 1079 n. 1 (3d Cir. 1971); Fletcher v. Hook, 446 F.2d 14, 16 (3d Cir. 1971); Moore v. Buck, 443 F.2d 25, 26 & n. 1 (3d Cir. 1971); Oliver v. Governor of Pennsylvania, 442 F.2d 1347, 1348 (3d Cir.), cert. denied, 404 U.S. 1002, 92 S.Ct. 570, 30 L.Ed.2d 555 (1971); Gaito v. Ellenbogen, 425 F.2d 845, 849 (3d Cir. 1970); Kauffman v. Moss, 420 F.2d 1270, 1275-76 & n. 15 (3d Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); Winkler v. Pringle, 387 F.2d 380, 382 n. 3 (3d Cir. 1967); Negrich v. Hohn, 379 F.2d 213 (3d Cir. 1967); Mayberry v. Somner, 480 F.Supp. 833, 836 (E.D.Pa.1979); Trader v. Fiat Distributors, Inc., 476 F.Supp. 1194, 1197-98 (D.Del.1979); Kedra v. City of Philadelphia, 454 F.Supp. 652, 675 (E.D.Pa.1978); Valley v. Maule, 297 F.Supp. 958, 960-61 (D.Conn.1968), quoted with approval in Kauffman v. Moss, supra, 420 F.2d at 1276 n. 15. | In civil rights cases, vague and conclusory allegations will not survive a motion to dismiss; rather, the claim for relief must be supported by specific factual averments. Fed.Rules Civ.Proc. Rule 12(b), 28 U.S.C.A. | Should facts in a complaint be plead with specificity? | 00797.docx | LEGALEASE-00081562-LEGALEASE-00081563 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11154 | Petition of Boston & Maine Corp., 109 N.H. 324 | 317A+141 | The establishment of the Public Utilities Commission was for the purpose of providing comprehensive provisions for the establishment and control of public utilities in the state. "It created the public service commission (now public utilities commission) as a state tribunal imposing upon it important judicial duties and endowing it with large administrative and supervisory powers." Parker-Young Co. &c. v. State, 83 N.H. 551, 556, 145 A. 786, 789; Lorenz v. Stearns, 85 N.H. 494, 161 A. 205; State v. New Hampshire Gas & Electric Co., 86 N.H. 16, 163 A. 724. | The Public Utilities Commission was established, with important judicial duties and large administrative and supervisory powers, for the purpose of providing comprehensive provisions for the establishment and control of public utilities in the state. RSA 362:2, 362:3, 365:22, 373:3, 373:7, 373:8, 373:10, 373:22, 373:23, 541:1 et seq. | Was the Public Utilities Commission (PUC) established to provide comprehensive provisions for the control of public utilities in the State? | Public utilities - Memo 26 - RM.docx | ROSS-003287312-ROSS-003287313 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 11155 | Page v. Town of Newbury, 113 Vt. 336 | 401+4 | However, we are not concerned here with what may have been the common law rule as to the trial of local actions because, in this respect, that rule has been superseded by our statutes, regulating the places where actions shall be brought, and none are local unless made so by statute. University of Vermont v. Joslyn, 21 Vt. 52, 59; June and wife v. Conant, 17 Vt. 656, 658. General jurisdiction of our county courts over civil actions is conferred by P.L. 1366 and so far as here material is as follows: "Each county court within the several counties shall have original and exclusive jurisdiction of all original civil actions, except those made cognizable by a justice or municipal court, ***." | The statutes regulating the places where actions shall be brought supersede the common law rule as to the trial of local actions, and no options are local unless made so by statute. P.L. 1366, 1565. | Can actions be local unless made so by statute? | Venue - Memo 58 - ANG.docx | ROSS-003287581-ROSS-003287583 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 11156 | Iberia Credit Bureau v. Cingular Wireless LLC, 379 F.3d 159 | 360+18.15 | 9 U.S.C. " 2 (emphasis added). That is, as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts. Therefore, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening " 2." Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (emphasis added). But a state court or legislature may not invalidate arbitration agreements on the basis of a rule of law that applies only to such agreements, such as by declaring them invalid unless they contain a special notice on the front page. Id.] | While generally applicable contract defenses may be applied to invalidate arbitration agreements without contravening Federal Arbitration Act, state court or legislature may not invalidate arbitration agreements on basis of rule of law that applies only to such agreements. 9 U.S.C.A. S 2. | Can a state court or legislature invalidate arbitration agreements based on rule of law? | 002764.docx | LEGALEASE-00119699-LEGALEASE-00119700 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 11157 | Salsman v. State, 244 Ind. 180 | 207+1 | "Sexual intercourse," which is necessary to the crime of incest [Acts 1907, ch. 74, " 1, p. 101, being " 10-4206, Burns' 1956 Repl.], is defined as "carnal copulation of male and female implying actual penetration of the organs of the latter." Black's Law Dictionary, 4th Ed. p. 1541. | "Sexual intercourse," necessary to the crime of incest, means carnal copulation of male and female implying actual penetration of the organs of the latter. Burns' Ann.St. S 10-4206. | What is sexual intercourse under incest laws? | Incest - Memo 64 - JS.docx | ROSS-003312295-ROSS-003312296 | Condensed, SA | 0.35 | 0 | 1 | 0 | 1 | |
| 11158 | Jones v. Americar, 283 Ala. 638 | 386+46(1) | We see no good purpose to be served by outlining and detailing the evidence in this case. We are convinced, after carefully considering all the evidence, that it is insufficient to show any such force, actual or constructive, to constitute the action of trespass. Therefore, we are of the opinion that the general affirmative charge should have been given for the defendant under count two. | Evidence, in action arising out of defendant's refusal, upon cancellation of franchise agreement for operation of automobile rental agencies, to give up possession of automobiles leased to him by plaintiff pursuant to agreement, was insufficient to show any such force, actual or constructive, to constitute action of trespass, and therefore general affirmative charge should have been given for defendant under count seeking damages for wrongful taking of automobiles. | Should force be proved to maintain an action for trespass? | 002964.docx | LEGALEASE-00119807-LEGALEASE-00119808 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 11159 | Broughton v. State, 37 N.Y.2d 451 | 168+2 | The action for false imprisonment is derived from the ancient common-law action of trespass and protects the personal interest of freedom from restraint of movement. Whenever a person unlawfully obstructs or deprives another of his freedom to choose his own location, that person will be liable for that interference (Restatement, 2d, Torts, s 35, comment H). To establish this cause of action the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged (Restatement, 2d, Torts, s 35; but see Prosser, Torts (4th ed.), s 11, which rejects the requirement that the plaintiff must be conscious of the confinement). The great weight of authority, including New York, recognizes the rule that neither actual malice nor want of probable cause is an essential element of an action for false imprisonment (Marks v. Townsend, 97 N.Y. 590; Malice and want of probable cause as element or factor of action for false imprisonment, Ann., 19 A.L.R. 671; Ann., 137 A.L.R. 504; 32 Am.Jur., False Imprisonment, s 27). This is in direct contrast with the elements comprising a malicious prosecution action. | Action for false imprisonment is derived from ancient common-law action of trespass and protects personal interest of freedom from restraint of movement. | Are assault and false imprisonment including false arrest derived from the ancient action of trespass? | 002971.docx | LEGALEASE-00119795-LEGALEASE-00119796 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11160 | Wall v. Brim, 138 F.2d 478 | 37+704 | It is settled law in Georgia, as well as generally elsewhere, that a physician or surgeon does not guarantee the results of a treatment or operation, and that proof alone that an operation is different in its outturn from that expected, or is followed by disastrous instead of beneficial results, neither establishes, nor supports an inference of want of proper care, skill or diligence. In view, therefore, of the absence of expert opinion evidence that defendant did not, and the presence of such evidence that he did possess and exercise reasonable care and skill both, in making the correct diagnosis before he actually physically performed, and in physically performing, the operation, we should, if the record presented no other issue as to defendant's breach of his obligation as a physician, feel compelled to order a reversal with directions to enter judgment for defendant notwithstanding the verdict. For neither the statement "Uh, uh, I have done the wrong thing", nor the statement that he was in a hurry and late to a golf game, attributed to defendant, and on which plaintiff asked for a verdict, was sufficient to supply the critical absence of expert opinion evidence. But though not specifically presented by the pleadings and apparently not submitted to the jury, the record, in the light of Rule 15(b) authorizing the amendment of pleadings to conform to the evidence definitely presented another issue which should have been developed before, and submitted to, the jury. This was whether the defendant did not breach the obligation which as a surgeon he owed plaintiff when, after making the incision and ascertaining that the operation would be not the absolutely simple one he had secured plaintiff's consent to perform, but a serious and difficult one fraught with possible, if not probable dangers, he went ahead without making full disclosure of the difficulties attending, and the possible dangers of, the operation and securing her consent to go forward under the new found | An operation cannot be performed without patient's consent, and one performed without consent, express or implied, is a technical battery or trespass for which surgeon is liable. | Can an operation performed without a patient's consent be considered as a battery or trespass? | 002973.docx | LEGALEASE-00119792-LEGALEASE-00119794 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 11161 | Briere v. Greater Hartford Orthopedic Grp., P.C | 241+127(11.1) | "With reference to the original complaint, our inquiry as to whether the plaintiffs' proposed amendment related back centers on whether the proposed amendment set forth new causes of action.... A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief.... A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute a cause of action.... A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action.... It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but where an entirely new and different factual situation is presented, a new and different cause of action is stated." (Emphasis added; internal quotation marks omitted.) Miller v. Fishman, 102 Conn.App. 286, 299, 925 A.2d 441 (2007), cert. denied, 285 Conn. 905, 942 A.2d 414 (2008). | For purposes of inquiry as to whether a plaintiff's proposed amendment relates back, centering on whether the proposed amendment set forth new causes of action, the facts which establish the existence of a right of action and a delict that invades that right constitute a "cause of action." | "When does a ""right of action"" arise?" | Action - Memo 36 - ANG.docx | ROSS-003283708-ROSS-003283710 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 11162 | In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class, 868 F.3d 132 | 13+2 | The Supreme Court has explained that "[t]he existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation." Id. at 62, 113 S.Ct. 1920. In selecting "probable cause" as the standard by which to judge objective baselessness, the Court said that it was drawing from "[t]he notion of probable cause, as understood and applied in the common law tort of wrongful civil proceedings[.]" Id. A litigant has probable cause to initiate a suit if the litigant has "a reasonable belief that there is a chance that a claim may be held valid upon adjudication." Id. at 62-63, 113 S.Ct. 1920 (internal citations, quotation, and alterations omitted); see also Restatement (Second) of Torts " 675. In other words, the essential question is not whether the suit succeeds, but whether the suit was a sham at the time it was filed. See PRE, 508 U.S. at 60 n.5, 113 S.Ct. 1920 (cautioning that "when the antitrust defendant has lost the underlying litigation, a court must resist the ... temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation" (internal quotations omitted)). | A litigant has probable cause to initiate a suit if the litigant has a reasonable belief that there is a chance that a claim may be held valid upon adjudication. | When does a litigant have probable cause to initiate a suit? | Action - Memo 44 - MS.docx | ROSS-003328525-ROSS-003328527 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 11163 | Doe #1 v. Indiana Dep't of Child Servs., 81 N.E.3d 199 | 13+3 | The parties agree that Section 2 does not expressly provide a private right of action; they dispute only whether it implies one. This is purely a question of legislative intent, not judicial preference: did the General Assembly intend Section 2 to create a right of action, despite not saying so expressly? See Alexander v. Sandoval, 532 U.S. 275, 286"87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). We have "long been reluctant" to infer this unwritten intent, since the legislature often creates rights of action using clear language. See F.D. v. Ind. Dep't of Child Servs., 1 N.E.3d 131, 143"44 (Ind. 2013) (Rush, J., concurring in part and dissenting in part). This reluctance to invade the legislature's purview has developed into a two-part rule: we usually will not infer a private right of action when the statute (1) primarily protects the public at large and (2) contains an independent enforcement mechanism. See, e.g., Gordon, 952 N.E.2d at 187 (citing Estate of Cullop v. State, 821 N.E.2d 403 (Ind. Ct. App. 2005)); LTV Steel Co. v. Griffin, 730 N.E.2d 1251, 1260 (Ind. 2000). We address each part in turn. | The court will usually not infer a statutory private right of action when a statute (1) primarily protects the public at large and (2) contains an independent enforcement mechanism. | When will a court not infer a private right of action? | 05239.docx | LEGALEASE-00082098-LEGALEASE-00082099 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11164 | Am. Ins. Co. v. City of Milwaukee, 51 Wis. 2d 346 | 366+1 | In the Interstate Case, this court held that the "Subrogation" clause of the standard fire insurance policy did not authorize recovery by insurers from an innocent person or party who did not cause the loss or damages involved. The element of "wrongful act of another," not being present, as it usually is in subrogation claims in insurance cases, the insurers, seeking equitable relief as "legal subrogees," were held not entitled to subrogation against the city. The reasoning and result are no different with the insurers returning as "conventional subrogees' seeking the same reimbursement on an identical set of facts. Subrogation is recognized or denied upon equitable principles, without differentiation between "legal subrogation," arising by application of equity, or "conventional subrogation," arising from contracts or acts of the parties. | Subrogation is recognized or denied on equitable principles, without differentiation between legal subrogation, arising by application of equity, or conventional subrogation, arising from contracts or acts of the parties. | Is subrogation applied or denied on equitable principles? | Subrogation - Memo 20 - VP.docx | ROSS-003283529-ROSS-003283530 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11165 | AJJ Enterprises, LLP v. Jean-Charles, 160 Conn. App. 375 | 366+2 | "Subrogation is a doctrine which equity borrowed from the civil law and administers so as to secure justice without regard to form or mere technicality.... It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter. It is a legal fiction through which one who, not as a volunteer or in his own wrong and where there are no outstanding and superior equities, pays the debt of another, is substituted to all the rights and remedies of the other, and the debt is treated in equity as still existing for his benefit." (Citation omitted; internal quotation marks omitted.) Home Owners' Loan Corp. v. Sears, Roebuck & Co., 123 Conn. 232, 238, 193 A. 769 (1937). | Subrogation is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter. | What is subrogation intended to do? | 07776.docx | LEGALEASE-00081899-LEGALEASE-00081901 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 11166 | Daniczek v. Spencer, 156 F. Supp. 3d 739 | 249+32 | In Virginia, "malice" means "any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." [Hudson v. Lanier, 255 Va. 330, 332, 497 S.E.2d 471, 473 (1998)]... In Virginia, under certain circumstances, the want of probable cause alone can serve as legally sufficient evidence to support an inference of malice. See [Giant of Va., Inc. v. Pigg, 207 Va. 679, 152 S.E.2d 271, 276 (1967)]; see also Oxenham v. Johnson, 241 Va. 281, 402 S.E.2d 1, 2 (1991). In these instances, "there [i]s such a want of probable cause" that an inference of legal malice is warranted. Pigg, supra, 152 S.E.2d at 276 (emphasis added) (The malicious prosecution defendant's "disregard of information communicated to him constituted an aggravated circumstance which supports the finding of the jury that there was such a want of probable cause as warranted an inference of legal malice."); Oxenham, supra, at 2, (The defendant's "lack of probable cause [alone] was sufficient to support an inference of [the defendant's] legal malice" where the defendant had "caused [an] arrest warrant to issue" against the plaintiff solely because the plaintiff had refused to let the defendant search the plaintiff's residence without a search warrant.). | In Virginia, under certain circumstances, the want of probable cause alone can serve as legally sufficient evidence to support an inference of malice. | Can lack of probable cause alone infer malice for malicious prosecution? | 003362.docx | LEGALEASE-00120258-LEGALEASE-00120259 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 11167 | Boyd v. Hodson, 117 Ind. App. 296 | 249+33 | The fact that an indictment was returned against the appellant "by the grand jury was in itself presumptive evidence of probable cause, though subject to be rebutted by proof that it was induced by false testimony or other improper means." Miller v. Willis, 1920, 189 Ind. 664, 128 N.E. 831, 833. See also Terre Haute & Indianapolis Railroad Company v. Mason, 1897, 148 Ind. 578, 46 N.E. 332, Scotten v. Longfellow, 1872, 40 Ind. 23. The fact that the appellant prior to her indictment had lead an exemplary life and identified herself with respected and worthwhile activities in the community in which she lived, is no proof that the grand jury acted upon false testimony or was influenced by other improper means. The record is silent as to what evidence the grand jury had before it, as to who the witnesses were; and as to all other matters that transpired during its deliberations. Under such circumstances we are bound to presume that there was probable cause for the indictment returned by the grand jury and we find no evidence tending to rebut that presumption. It is true that on June 23, 1942, a motion to quash said indictment was sustained and such action terminated the prosecution in the appellant's favor. It is the law of this state, however, that the termination of a prosecution in favor of the accused is not prima facie evidence that the prosecution was malicious or without probable cause. Helwig v. Beckner, supra; Sasse v. Rogers, 1907, 40 Ind.App. 197, 81 N.E. 590. | Termination of a prosecution in favor of the accused is not prima facie evidence that the prosecution was malicious or without probable cause. | Does the termination of a prosecution in favor of the accused create a prima facie evidence of malicious prosecution? | 003364.docx | LEGALEASE-00120260-LEGALEASE-00120261 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11168 | Dade Coal Co. v. Haslett, 83 Ga. 549 | 384+1 | There was a general demurrer to the declaration filed by the defendant in error against the plaintiff in error, which was overruled by the court, and the plaintiff in error insists that this was error, because, as it appeared that the plaintiff in the court below had been convicted of a felony, and that the injury he complained of was received by him while he was in confinement in the penitentiary, he was civiliter mortuus, and could not maintain an action for the injury, although he had received a pardon, and had been thereby restored to all his rights of citizenship, before the commencement of this action. We do not think that this position of the learned counsel for the plaintiff in error is sound. We are aware that at the common law, when one was convicted of felony or treason, he forfeited all his rights of citizenship, and that he was deemed to be civiliter mortuus; but, as these consequences do not follow in this state by conviction of felony, it would seem that he might maintain an action for the injuries he received, even though at the time of receiving the same he was a felon, and in confinement. In the case of Cannon v. Windsor, 1 Houst. 143, it was held that "the maxim of civiliter mortuus, on a conviction for felony, does not apply in this state," (Delaware,) and that, against one who had been convicted of the crime of murder, and was under sentence of death, an action could be maintained for the support and maintenance of his minor children. It is stated as a principle of the common law that a person convicted of felony "may sue for any personal wrong done to him before or after the commencement of the period of his disability, e. g., for an assault." Dicey, Parties, 3, citing Barnard's Case, Owen, 22; Com. Dig. "Forfeiture." B, 2. "A right of action for damages is not forfeited to the crown upon a conviction for felony." Flemming v. Smith, 12 Ir. C. L. 404; Mews, Com; Law Dig. "Forfeiture." Besides, in Ex parte Garland, 4 Wall. 380, the supreme court of the United States held | At common law, one convicted of treason forfeited all rights of citizenship and was deemed to be civiliter mortuus. | Will a person convicted of treason forfeit all his rights of citizenship and be deemed to be civiliter mortuus? | 003660.docx | LEGALEASE-00120268-LEGALEASE-00120269 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 11169 | Egiazaryan v. Zalmayev, 880 F. Supp. 2d 494 | 237+6(1) | In order to support a defamation claim a statement must be one of fact, not opinion. "Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, "it follows that only statements alleging facts can properly be the subject of a defamation action."" Gross v. N.Y. Times Co., 82 N.Y.2d 146, 153, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993) (quoting 600 W. 115th St. Corp. v. Von Gutfeld, 80 N.Y.2d 130, 139, 589 N.Y.S.2d 825, 603 N.E.2d 930 (1992)). Statements of opinion, on the other hand, are not proper subjects of a defamation action; instead, they receive "absolute protection" under the New York Constitution. Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 178 (2d Cir.2000). | Since falsity is a necessary element of a defamation cause of action under New York law, and only facts are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action. | Is falsity an element of defamation? | Libel and Slander - Memo 149 - RK.docx | ROSS-003285288-ROSS-003285289 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 11170 | In re Perry, 423 B.R. 215 | 237+4 | A defendant need only act in a negligent manner when making statements about a private individual to be liable for defamation. WFAA"TV, 978 S.W.2d at 571 (citing Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.1989)). Texas courts have defined negligence in the defamation context as the "failure to investigate the truth or falsity of a statement before publication, and [the] failure to act as a reasonably prudent [person]." Marathon Oil Co. v. Salazar, 682 S.W.2d 624, 631 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.) (citing El Paso Times, Inc. v. Trexler, 447 S.W.2d 403, 406 (Tex.1969)). | Under Texas law, "negligence" may be defined, in defamation context, as a failure to investigate truth or falsity of statement prior to publication, and a failure to act as reasonably prudent person. | How is negligence defined in the context of defamation? | Libel and Slander - Memo 157 - RK.docx | ROSS-003324262-ROSS-003324263 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 11171 | In re Jackson, 28 B.R. 559 | 289+449 | The Bankruptcy Code does not define the term "partnership". Therefore, we shall look to Pennsylvania law to determine its meaning. Pennsylvania, like most states, has adopted the Uniform Partnership Act, wherein a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." 59 Pa.C.S.A. " 311(a). According to Pennsylvania case law, a partnership is created by a contract, express or implied. The partnership agreement need not be in writing, but, whether in writing or not, or whether express or implied, must be composed of the clear, mutual assent on the part of two or more persons. Murphy v. Burke, 454 Pa. 391, 395, 311 A.2d 904 (1973). The burden of proof lies with the party or parties seeking to prove the existence of a partnership. Zuback v. Bakmaz, 346 Pa. 279, 282, 29 A.2d 473 (1943); Fed.R.Evid. 302. | Although, under Pennsylvania law, partnership is created by contract, express or implied, partnership agreement need not be in writing but, whether in writing or not, or whether express or implied, must be composed of clear, mutual assent on part of two or more persons. 59 Pa.C.S.A. SS 301 et seq., 311(a). | Is it required for a partnership agreement to be in writing? | 003449.docx | LEGALEASE-00120658-LEGALEASE-00120659 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 11172 | UGI Utilities v. City of Lancaster, 125 A.3d 858 | 317A+102 | Summary relief is appropriate where there are no genuine issues of material fact and the right to relief is clear as a matter of law. Pa.R.A.P. 1532(b); Hospital & Healthsystem Association of Pennsylvania. A century of case law has firmly established that the General Assembly's intent in enacting the Code and its predecessor statute was to provide for the uniform, statewide regulation of public utilities and public utility facilities. Indeed, this Court has expressly held that "the legislature intended the Public Utility Code to preempt the field of public utility regulation." Township of Upper Dublin, 922 A.2d at 1005. For the reasons stated above, we conclude that sections 263B"2, 263B"3, and 263B"4(9) of the City's Ordinance are preempted by the Code, and, hence, are invalid. However, we conclude that section 263B"5 of the City's Ordinance, by which the City imposes an annual right-of-way maintenance fee, is not a public utility regulation and, hence, is neither preempted by the Code nor invalid. | The General Assembly's intent in enacting the Public Utility Code and its predecessor statute was to provide for the uniform, statewide regulation of public utilities and public utility facilities. 66 Pa.C.S.A. S 101 et seq. | What is the intent of the General Assembly concerning public utilities? | 003493.docx | LEGALEASE-00120319-LEGALEASE-00120320 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11173 | Kroeker v. State Farm Mut. Auto. Ins. Co., 466 S.W.2d 105 | 366+1 | Subrogation originated as a creature of the common law.Basically, it is classified as either legal or conventional. Legal subrogation arises out of a condition or relationship by operation of law, whereas conventionalsubrogation arises by act or agreement of the parties. Cole v. Morris, Mo.Sup., 409 S.W.2d 668. Subrogation is founded on principles of justice and its operation is governed by principles of equity. It rests on the principle that substantial justice should be attained regardless of form, that is, its basis is the doing of complete, essential and perfect justice between all parties without regard to form. 83 C.J.S. Subrogation s 2 a; Cole v. Morris, Mo.Sup., 409 S.W.2d 668. "As a general rule, any person who, pursuant to a legal obligation to do so, has paid even indirectly, for a loss or injury resulting from the wrong or default of another will be subrogated to the rights of the creditor or injured person against the wrongdoer or defaulter, persons who stand in the shoes of the wrongdoer, or others who, as the payor, are primarily responsible for the wrong or default." 83 C.J.S. Subrogation s 16. An important distinction between subrogation and assignment is that subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who made the payment under circumstances entitling him to contribution or indemnity, while assignment necessarily contemplates the continued existence of the debt or claim assigned. 6 C.J.S. Assignments s 2 b(12); Remsen v. Midway Liquors, Inc., 30 Ill.App.2d 132, 174 N.E.2d 7. As simply stated by the Supreme Court of South Carolina, "(S)ubrogation is the machinery by which the equity of one man is worked out through the legal rights of another". American Surety Co. v. Hamrick Mills, 194 S.C. 221, 9 S.E.2d 433. | "Subrogation" originated as a creature of the common law; basically, it is classified as either legal or conventional; "legal subrogation" arises out of a condition or relationship by operation of law, whereas "conventional subrogation" arises by act or agreement of the parties. | How is subrogation classified? | 003599.docx | LEGALEASE-00120407-LEGALEASE-00120409 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11174 | Velazquez v. Serrano, 43 So. 3d 82 | 366+1 | We review an order granting summary judgment de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Equitable subrogation is generally defined as follows:Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. Subrogation arises by operation of law, where one having a liability or a right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid.Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645 (1916). Subrogation "is not allowed if it works any injustice to the rights of others." Fed. Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883, 885 (1933); see also Brannon v. Hills, 111 Fla. 491, 149 So. 556, 557 (1933); Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n, 508 So.2d 1323 (Fla. 3d DCA 1987). A party's entitlement to subrogation therefore "depends upon the equities and attending facts of each case." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So.2d 328, 332 (Fla. 3d DCA 1999). | Equitable subrogation is not allowed if it works any injustice to the rights of others; a party's entitlement to subrogation therefore depends upon the equities and attending facts of each case. | Is a party's entitlement to subrogation dependent upon the equities and attendant facts of each case? | 003653.docx | LEGALEASE-00120471-LEGALEASE-00120472 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 11175 | Cobell v. Norton, 240 F.3d 1081 | 209+119 | The federal government has substantial trust responsibilities toward Native Americans. This is undeniable. Such duties are grounded in the very nature of the government-Indian relationship. "[A] fiduciary relationship necessarily arises when the Government assumes ... elaborate control over forests and property belonging to Indians." United States v. Mitchell ("Mitchell II"), 463 U.S. 206, 225, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). It is equally clear that the federal government has failed time and again to discharge its fiduciary duties. Here, there is no dispute that appellants, as trustee-delegates of the federal government, have failed to discharge fully their fiduciary obligations. The issue we confront is whether the district court properly delineated the contours of the obligations owed by the Interior Secretary, Treasury Secretary and other officials, and whether such officials have been so derelict in their obligations to justify the relief ordered by the district court. | The federal government has substantial trust responsibilities toward Native Americans; such duties are grounded in the very nature of the government-Indian relationship. | What is the basis of the trust responsibility the federal government owes to the Native Americans? | 003220.docx | LEGALEASE-00120717-LEGALEASE-00120718 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 11176 | Wilmot v. Tracey, 938 F. Supp. 2d 116 | 249+30 | As noted above, among the elements that Wilmot has to establish in order to recover for malicious prosecution under Massachusetts law are that there was no probable cause to initiate the criminal charge and that the defendants acted maliciously. Santiago, 891 F.2d at 387. For the reasons detailed above, Wilmot has failed to allege sufficient facts to support a finding that there was no probable cause to initiate the charges against him. Moreover, there are no factual allegations to establish that the police acted maliciously toward him. "The malice element of malicious prosecution requires that the accuser knew there was no probable cause for the commencement of the action, and that the accuser acted with an improper motive." Gouin v. Gouin, 249 F.Supp.2d 62, 71 (D.Mass.2003), and cases cited. The conclusory allegations of the Complaint that the defendants acted maliciously, without any factual allegations to support an improper motive, are insufficient to state a claim. See Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950, 129 S.Ct. 1937. Therefore, this claim should be dismissed. | Arrestee's conclusory allegations that town police officers acted maliciously in connection with his being charged with abusing his two minor adoptive daughters, without any factual allegations to support improper motive, were insufficient to state malice element of malicious prosecution claim against officers under Massachusetts law. | Are conclusory allegations that defendant acted with malice sufficient to allege malice for malicious prosecution claim? | 003393.docx | LEGALEASE-00120766-LEGALEASE-00120767 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11177 | Coffee Bay Investors v. W.O.G.C. Co., 878 So.2d 665 | 226H+1 | A joint venture has been defined as "a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 19, 262 So.2d 350, 355 (1972), citing Daily States Publishing Company v. Uhalt, 169 La. 893, 901, 126 So. 228, 231 (1930). Generally, the object and the motive behind a joint venture are the anticipated profits derived from a specific business enterprise. See Hayes v. Muller, 245 La. 356, 367, 158 So.2d 191, 195 (1963); Williamson v. Roberts, 103 So.2d 499, 504 (La.App. 2nd Cir.1958). The existence or nonexistence of a joint venture is a question of fact, although what constitutes a joint venture is a question of law. Grand Isle Campsites, 262 La. at 24, 262 So.2d at 357. | A "joint venture" is a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation; the object and the motive behind a joint venture are the anticipated profits derived from a specific business enterprise. | Does a joint venture have a partnership designation? | 003399.docx | LEGALEASE-00120839-LEGALEASE-00120840 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 11178 | Massey v. State, 955 N.E.2d 247 | 203+938 | We have previously considered an ineffective assistance claim involving trial counsels failure to ensure that the jury received the correct law pertaining to voluntary manslaughter. In Eichelberger v. State, 852 N.E.2d 631 (Ind.Ct.App.2006), trans. denied, another panel of this Court noted, "It is well settled in Indiana that [the existence of] sudden heat is not an element of voluntary manslaughter." Id. at 636 (citing Boesch v. State, 778 N.E.2d 1276, 1279 (Ind.2002) (emphasis added)); see also Isom v. State, 651 N.E.2d 1151, 1152 (Ind.1995); Palmer v. State, 573 N.E.2d 880, 880 (Ind.1991), opinion on reh'g; Wilcoxen v. State, 705 N.E.2d 198, 203 (Ind.Ct.App.1999), trans. denied; Bane v. State, 587 N.E.2d 97, 100 (Ind.1992). Therefore, "[a]n instruction [on voluntary manslaughter] assigning the burden of affirmatively proving sudden heat to the State is erroneous as a matter of law." Id. However, "once a defendant presents evidence of sudden heat, [to obtain a conviction for murder rather than voluntary manslaughter,] the State bears the burden of disproving its existence beyond a reasonable doubt." Id. (emphasis added). The United States Supreme Court has held that the Due Process clause " "requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." " Id. at 638 (quoting Sanders v. Cotton, 398 F.3d 572, 581 (7th Cir.2005)). In addition, " "the complete failure to give any jury instruction on an essential element of the offense charged, under circumstances indicating that the jury was not otherwise informed of the necessity of proof of the element, is a violation of due process." " Id. (quoting Sanders, 398 F.3d at 581"82). | If there is no evidence of sudden heat, the State is not required to prove the absence of sudden heat beyond a reasonable doubt to obtain a murder conviction; only when evidence of sudden heat is presented does the State assume the burden of proving the absence of sudden heat to obtain a murder conviction. West's A.I.C. 35-42-1-1. | Does the state bearthe burden of disproving the existence of sudden heat beyond a reasonable doubt? | 003155.docx | LEGALEASE-00120751-LEGALEASE-00120752 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 11179 | Norkin v. U. S. Fire Ins. Co., 237 Cal. App. 2d 435 | 302+8(15) | Initially it is to be noted that "It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which amount to mere conclusions." (Hannon v. Madden, 214 Cal. 251, 267, 5 P.2d 4, 11.)"The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, i. e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.' (2 Witkin, Summary of California Law, p. 1372.) It is not necessary to consider whether plaintiff has sufficiently pleaded the latter four elements of fraud, for it is clear that he has not sufficiently alleged the first element, namely, a false representation. | Fraud must be pleaded in specific language descriptive of the acts relied upon to constitute fraud, and it is not sufficient to allege fraud in general terms or terms amounting to mere conclusions. | Is there a cardinal rule of pleading in actions for fraud? | 003470.docx | LEGALEASE-00120931-LEGALEASE-00120932 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 11180 | Cty. Concrete Corp. v. Town of Roxbury, 442 F.3d 159 | 148+277 | The second prong of the Williamson ripeness test states that "if a State provides an adequate procedure for seeking just compensation," the plaintiff must have exhausted this procedure in order for his or her Takings claim to be ripe for federal adjudication. Williamson, 473 U.S. at 194"95, 105 S.Ct. 3108. Of course, "there is no requirement that a plaintiff exhaust administrative remedies before bringing a " 1983 action." Id. at 192, 105 S.Ct. 3108 (citing Patsy v. Board of Regents of the State of Florida, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)). Instead of being a true "exhaustion of state remedies" requirement, however, the second prong of Williamson' s ripeness test merely addresses a unique aspect of Just Compensation Takings claims. Because the Fifth Amendment bars not just the "taking" of property, but the taking of property "without just compensation," a plaintiff "cannot claim a violation of the Just Compensation Clause until" he or she has exhausted a state's "procedure for seeking just compensation." Id. at 194"95 & 194 n. 13, 105 S.Ct. 3108. Only then can a Takings claimant allege that he or she has actually been denied just compensation, and, thus, only then is his or her Takings claim ripe. Id. at 195, 105 S.Ct. 3108. We, therefore, will apply the second prong of Williamson's ripeness test to appellants' various constitutional claims. | Because the Fifth Amendment bars not just the "taking" of property, but the taking of property "without just compensation," a plaintiff cannot claim a violation of the Just Compensation Clause until he or she has exhausted a state's procedure forseeking just compensation; only then can a takings claimant allege that he or she has actually been denied just compensation, and, thus, only then is his or her takings claim ripe. U.S.C.A. Const.Amend. 5. | Should there be an exhaustion of the states procedure for seeking just compensation in takings? | 017373.docx | LEGALEASE-00120965-LEGALEASE-00120967 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11181 | Purolator Courier Corp. v. Com., Pub. Util. Comm'n, 13 Pa. Cmwlth. 444 | 317A+102 | Rather, the issue in question must be resolved by consideration of other provisions of the ACJA from which we must conclude that the provisions of Section 1101 of the Public Utility Law relating to the event from which the time for appeal is to be computed or measured, being in conflict with Section 502, ACJA, have been repealed. In our opinion, this conclusion is inescapable; by application of fundamental principles of statutory construction, Section 509 of the ACJA as originally enacted, after repealing absolutely enumerated sections of particular statutes (vastly expanded in the so-called Housekeeping Act of June 3, 1971, P.L. 118), contains in subsection (f) a general repealer which provides that "all other acts and part of acts are hereby repealed in so far as inconsistent with this act." It is well settled that these are words of express repeal of all previous inconsistent legislation. See Commonwealth ex rel. A. C. Braughler v. John Weir, 165 Pa. 284, 30 A. 835 (1895) and Bourguignon Building Association v. Commonwealth, 98 Pa. 54, 1 Penny. 193 (1881). | Provisions of Public Utility Law relating to event from which time for appeal is to be computed or measured and requiring that appeals be taken within 30 days "after service of the order by the commission" conflict with provision of Appellate CourtJurisdiction Act requiring that an appeal from any order be filed "within 30 days of its entry" and have been repealed. 17 P.S. SS 211.502, 211.509; 66 P.S. SS 1101 et seq., 1431. | "Was Section 1101 of the Public Utility Law, being in conflict with Section 502, ACJA, repealed?" | 042555.docx | LEGALEASE-00120913-LEGALEASE-00120914 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 11182 | Lewiston, Greene & Monmouth Tel. Co. v. New England Tel. & Tel. Co., 299 A.2d 895 | 317A+183 | We hold that, within the foregoing general contours indicated by Professor Jaffe and as subject to further development on a case by case basis to meet individualized combinations of circumstances, there is operative, in relation to the jurisdiction reposed in the Law Court under Section 305, a principle of "ripeness' by which the Law Court may control the appropriateness of its judicial intervention into proceedings before the Public Utilities Commission; and this principle of "ripeness' functions not to prescribe a lack of jurisdiction in the Law Court but as a guide, deriving from judicial self-restraint, to the Law Court's exercise of a jurisdiction avowedly existing under Section 305. | Before jurisdiction of the law court may be invoked to review order of the public utilities commission on claim of constitutional infirmity, it is necessary that the claim be "ripe" for judicial consideration and action. 35 M.R.S.A. SS 303, 305. | Does the Court review the proceedings of the Public Utilities Commission only when it is ripe for judicial consideration and action? | 042559.docx | LEGALEASE-00120927-LEGALEASE-00120928 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 11183 | Watkins v. Debusk, 286 S.W.3d 58 | 30+2 | However, we liberally construe the rules of appellate procedure to protect a party's right to appeal. Verburgt v. Dorner, 959 S.W.2d 615, 616"17 (Tex.1997). A court of appeals has jurisdiction over any appeal in which the appellant files an instrument in a bona fide attempt to invoke the appellate court's jurisdiction. Linwood v. NCNB Texas, 885 S.W.2d 102, 103 (Tex.1994); Grand Prairie Indep.Sch. Dist. v. Southern Parts Imports, Inc., 813 S.W.2d 499, 500 (Tex.1991). In Linwood, the appellant appealed from the district court to the court of appeals. The appellant filed a notice of appeal but failed to include the cost bond that was required at that time. Linwood, 885 S.W.2d at 102"03. The Supreme Court of Texas held that the timely filing of a notice of appeal was a bona fide attempt to invoke the appellate court's jurisdiction, and that even though the appellant later filed the cost bond fifty-three days after judgment, that court still had jurisdiction over the appeal. Id. at 103. The same situation was existent in the Grand Prairie case where the Supreme Court held that the appellate court was required to give the appellant an opportunity to correct the error by filing an appeal bond. Grand Prairie, 813 S.W.2d at 500. | Courts liberally construe the rules of appellate procedure to protect a party's right to appeal. | Do Courts liberally construe the rules of appellate procedure to protect a party's right to appeal? | Appeal And Error - Memo 8 - BP.docx | ROSS-003285325-ROSS-003285326 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 11184 | Mar-Jac Poultry v. Katz, 773 F. Supp. 2d 103 | 92+2165 | There is no wholesale constitutional protection for expressions of opinion; opinions are actionable when a reasonable trier of fact could interpret the statement to imply an assertion of objective fact that is defamatory. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 18"19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). To ensure space for "imaginative expression" and "rhetorical hyperbole," a statement of opinion is actionable only if it implies an explicit or implicit factual foundation and therefore is "objectively verifiable." Id. at 20"22, 110 S.Ct. 2695; see also Washington v. Smith, 80 F.3d 555, 556 (D.C.Cir.1996); White, 909 F.2d at 522 ("Assertions of opinion on a matter of public concern only receive full constitutional protection if they do not contain a provably false factual connotation."). | There is no wholesale First Amendment protection for expressions of opinion; opinions are actionable when a reasonable trier of fact could interpret the statement to imply an assertion of objective fact that is defamatory. U.S.C.A. Const.Amend. 1. | Are all opinions protected against defamation by the First Amendment of the Constitution? | 021046.docx | LEGALEASE-00121664-LEGALEASE-00121666 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 11185 | In re Marriage of Martin, 641 N.W.2d 203 | 307A+2 | An adjudication of law points is confined to a determination of legal matters on uncontroverted pleadings. Iowa R. Civ. P. 116; Mortensen v. Heritage Mut. Ins. Co., 590 N.W.2d 35, 38 (Iowa 1999). Our review is for a correction of errors at law. Mortensen, 590 N.W.2d at 38; In re Marriage of Gallagher, 539 N.W.2d 479, 480 (Iowa 1995). | Adjudication of law points is confined to a determination of legal matters on uncontroverted pleadings. Rules Civ.Proc., Rule 116. | Is the adjudication of law points confined to a determination of legal matters on uncontroverted pleadings? | Pretrial Procedure - Memo # 3 - C - SU.docx | ROSS-003310082-ROSS-003310083 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 11186 | State ex rel. Utilities Comm'n v. Gen. Tel. Co. of Se., 285 N.C. 671 | 317A+102 | Pursuant to G.S. s 62"110, the State, through the Utilities Commission, has granted to General a monopoly upon the business of rendering telephone service to the public within its several service areas in North Carolina. The primary purpose of Chapter 62 of the General Statutes is not to guarantee to the stockholders of a public utility constant growth in the value of and in the dividend yield from their investment, but is to assure the public of adequate service at a reasonable charge. It became evident long ago that the attainment of this primary objective is endangered both by unrestrained competition and by the creation of a "complacent monopoly" in the public utility business. Consequently, Chapter 62 provides for the granting of a monopoly and for the regulation of its service and its charges by the Utilities Commission. The entire chapter is a single, integrated plan. Its several provisions must be construed together so as to accomplish its primary purpose. Its provisions, such as G.S. s 62"133, designed to assure the utility of adequate revenues, are in the nature of corollaries to the basic proposition that the public is entitled to adequate service at reasonable rates and safeguards against administrative action which would violate constitutional protections by confiscation of the utility's property. Without such assurance, the owners of capital would not invest it in the utility's bonds or stock and the utility could not provide the plant necessary for the rendering of adequate service. | Primary purpose of the Public Utilities Act is not to guarantee to stockholders of public utility constant growth in value of and in dividend yield from their investment, but is to assure public of adequate service at reasonable charge. G.S. SS 62-1 et seq., 63-32(b), 62-94(c), 62-110, 62-131, 62-133, 62-133(e), 62-135. | What is the primary purpose of Chapter 62 of the General Statutes? | Public Utilities - Memo 64 - AM.docx | ROSS-003285027-ROSS-003285029 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11187 | Simpson Cty. Water Dist. v. City of Franklin, 872 S.W.2d 460 | 317A+121 | Benzinger v. Union Light, Heat & Power Co., 293 Ky. 747, 170 S.W.2d 38 (1943), considered the intention of the legislature as stated in Section 4(n) of the PSC act to the effect that it was expressly stated that the intention was to confer jurisdiction only over the matter of rates and service. Peoples Gas, supra, and Benzinger indicate that the original Section 4(n), now KRS 278.200 and 278.040(2), created an exception to the authority of cities to regulate the rates of a utility for services rendered inside the city limits. There is nothing in the statutory language which creates an exception to the exemption of city-owned utilities from PSC jurisdiction. The PSC jurisdiction was limited to the rates and services of a utility. | Rates and service exception to city's exemption from Public Service Commission (PSC) regulatory jurisdiction is not avoidable by contract; thus, where contracts have been executed between utility and city, statute prohibiting change of rate or service standard, or any contract franchise or agreement affecting it, until hearing has been had before PSC is applicable and requires that by so contracting city relinquishes PSC exemption and is rendered subject to PSC rates and service regulation. KRS 278.010(3), 278.040(2), 278.200. | Does the Public Service Commission (PSC) have jurisdiction over city-owned utilities? | 042609.docx | LEGALEASE-00121767-LEGALEASE-00121768 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 11188 | Citizens State Bank v. Raven Trading Partners, 786 N.W.2d 274 | 366+1 | We recognize that if we do not apply equitable subrogation, Raven will receive a windfall because Raven anticipated that its mortgage on the property would have second priority. If we apply equitable subrogation and give the Citizens mortgage priority over the Raven mortgage, Raven would be in no worse position. But we need not apply equitable subrogation merely to prevent a party from obtaining a windfall or unjust enrichment.See Wentworth, 53 Minn. at 398, 55 N.W. at 545. | Equitable subrogation need not be applied merely to prevent a party from obtaining a windfall or unjust enrichment. | Should equitable subrogation be applied merely to prevent a party from obtaining a windfall? | 043667.docx | LEGALEASE-00121156-LEGALEASE-00121157 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 11189 | Star Ins. Co. v. Cont'l Res., 89 F. Supp. 3d 1015 | 366+1 | "Subrogation is an equitable remedy that provides for an adjustment between the parties to secure the ultimate discharge of a debt by the person who, in equity and good conscience, ought to pay for it." St. Paul Fire & Marine Ins. Co. v. Amerada Hess Corp., 275 N.W.2d 304, 308 (N.D.1979). Equitable subrogation is founded on principles of equity and justice and is intended to protect the rights of one who has paid an obligation which should be imposed on another. State Farm Mut. Ins. Co. v. Wee, 196 N.W.2d 54, 59"60 (N.D.1971); Am. Commercial Lines, Inc. v. Valley Line Co., 529 F.2d 921, 924 (8th Cir.1976). The doctrine permits a party who is not a volunteer or intermeddler to stand in the shoes of another with reference to all lawful claims and rights. BancInsure, Inc. v. BNC Nat. Bank, N.A., 263 F.3d 766, 772"73 (N.D.2001). Equitable subrogation rests on the principle that no one should be enriched by another's loss. In re Yanke, 230 B.R. 374, 377 (8th Cir.1999). The doctrine is highly favored and is to be given a liberal application. Id. at 379. | Under North Dakota law, "subrogation" is an equitable remedy that provides for an adjustment between parties to secure the ultimate discharge of a debt by the person who, in equity and good conscience, ought to pay for it. | Is subrogation an equitable remedy? | Subrogation - Memo # 515 - C - SU.docx | ROSS-003284370-ROSS-003284371 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 11190 | Sapiano v. Williamsburg Nat. Ins. Co., 28 Cal. App. 4th 533 | 366+1 | "Legal" or "equitable" subrogation has its source in equity and arises by operation of law. "Conventional" subrogation arises by contract of the parties. (Century Indemnity Co. v. London Underwriters (1993) 12 Cal.App.4th 1701, 1708, fn. 6, 16 Cal.Rptr.2d 393.) | "Legal or equitable subrogation" has its source in equity and arises by operation of law, while "conventional subrogation" arises by contract of parties. | Does legal or equitable subrogation has its source in equity and arises by operation of law? | Subrogation - Memo # 520 - C - SU.docx | ROSS-003324308-ROSS-003324309 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 11191 | Corley v. Wichita Elec. Co., 163 F.R.D. 12 | 366+1 | Subrogation is a creature of equity invented to prevent a failure of justice and is broad enough to include every instance in which one party is required to pay a debt for which another is primarily responsible. Western Surety Co. v. Loy, 3 Kan.App.2d 310, 312, 594 P.2d 257 (1979). Subrogation contemplates one person stepping into the shoes of another person. Allied Mutual Insurance Co. v. Gordon, 248 Kan. 715, 727, 811 P.2d 1112 (1991); Halpin v. Frankenberger, 231 Kan. 344, 350, 644 P.2d 452 (1982). Subrogation is an equitable doctrine that allows a person or entity which pays the loss or satisfies the claim of another under a legally cognizable obligation or interest to step into the shoes of the other person and assert that person's rights. Educators Mutual Insurance Association v. Allied Property and Casualty Insurance Co., 890 P.2d 1029, 1030 (Utah 1995); In re Guardianship and Conservatorship of Bloomquist, 246 Neb. 711, 523 N.W.2d 352, 359 (1994); High v. General American Life Insurance Co., 619 So.2d 459, 460 (Fla.Dist.Ct.App.), rev. denied, 629 So.2d 133 (Fla.1993). The doctrine of subrogation is a creature of chancery. It is a method whereby one who has involuntarily paid a debt or claim of another succeeds to the rights of the other with respect to the claim or debt so paid. One who asserts a right of subrogation must step into the shoes of, or be substituted for, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce. Dix Mutual Insurance Co. v. LaFramboise, 149 Ill.2d 314, 173 Ill.Dec. 648, 650, 597 N.E.2d 622, 624 (1992). | Under Kansas law, doctrine of subrogation is creature of chancery; it is method whereby one who has involuntarily paid debt or claim of another succeeds to rights of other with respect to claim or debt so paid. | Is the doctrine of subrogation a creature of chancery? | Subrogation - Memo # 521 - C - SU.docx | ROSS-003310996-ROSS-003310997 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11192 | Sav. Bank of Manchester v. Kane, 35 Conn. Supp. 82 | 366+4 | It would be absurd to suppose that a person not a creditor should have rights against the debtor's property since any such rule would operate to the injury of other creditors and would deprive them of their legal right to have their debtor's property applied to their debts. Annot., 36 A.L.R. 553, 588. The obligation of an accommodation maker is a primary obligation and each comaker is equally liable on the note. Westville & Hamden Loan Co. v. Pasqual, 109 Conn. 110, 114, 145 A. 758. A comaker's right of subrogation cannot be enforced until the whole debt is paid and until the creditor is wholly satisfied. Haley v. Brewer, 220 Ark. 511, 249 S.W.2d 128. The entry of a judgment in favor of the third-party plaintiff at this time would constitute a substantial interference with the rights of the holder to collect the full amount of its debt from either or both judgment debtors in whatever manner and in such proportions as it sees fit. | A comaker's right of subrogation cannot be enforced until whole debt is paid and until creditor is fully satisfied. | Can a comaker's right of subrogation be enforced until whole debt is paid and until creditor is fully satisfied? | 043918.docx | LEGALEASE-00121195-LEGALEASE-00121196 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11193 | Chem. Bank v. Meltzer, 245 A.D.2d 214 | 366+7(1) | We are in agreement with the decision of the motion court and its determination that it would not be equitable to permit defendant to be subrogated to plaintiff's rights under the subject bond and first mortgage (see, King v. Pelkofski, 20 N.Y.2d 326, 333, 282 N.Y.S.2d 753, 229 N.E.2d 435), since plaintiff, who also holds a second mortgage on the property, would have to pay defendant the amount necessary to redeem an assigned first mortgage were defendant to foreclose on it, in order to protect its second mortgage, which would effectively nullify the guarantee defendant gave to plaintiff. "The obligation assumed by a surety runs to the creditor and subrogation may not in any way defeat the creditor's rights." (Winkelmann v. Excelsior Ins. Co., 85 N.Y.2d 577, 582, 626 N.Y.S.2d 994, 650 N.E.2d 841). We have considered defendant's remaining arguments and find them to be without merit. | Obligation assumed by surety runs to creditor and subrogation may not in any way defeat creditor's rights. | Can an obligation assumed by a surety run to the creditor and subrogation in any way defeat creditor's rights? | Subrogation - Memo # 649 - C - SA.docx | ROSS-003299230-ROSS-003299231 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11194 | In re Gibbs, 11 B.R. 320 | 366+7(1) | The great weight of authority in these cases is that regardless of agreements of indemnity, the surety is subrogated to the rights of the creditor whose claim it pays and that the surety's right to reimbursement is of the same character as the creditor's claim. See, for example, In re Columbia Tobacco Co., 121 F.2d 641 (2nd Cir. 1941), where the surety paid tax claims and was held to have a priority claim by subrogation against debtor for the amount of those payments. See also In re Rogers, 101 F.Supp. 555 (S.D.Cal.1951). | Regardless of agreements of indemnity, surety is subrogated to rights of creditor whose claim it pays, and surety's right to reimbursement is of the same character as the creditor's claim. | Does a surety subrogate to the rights of a creditor whose claim it pays? | 043982.docx | LEGALEASE-00121274-LEGALEASE-00121275 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 11195 | In re Darosa, 318 B.R. 871 | 366+1 | "In general terms, subrogation is the substitution of one party in place of another with reference to a lawful claim, demand or right. It is a derivative right, acquired by satisfaction of the loss or claim that a third party has against another." Hamada v. Far East Nat'l Bank (In re Hamada), 291 F.3d 645, 649 (9th Cir.2002). When the doctrine of subrogation applies, the party paying the loss or claim (the subrogee) steps into the shoes of the person who suffered the loss (the subrogor), thereby allowing the subrogee to succeed to the legal rights and claims of the subrogor with respect to the loss or claim. Id. | "Subrogation" is derivative right, that is acquired by satisfaction of loss or claim that third party has against another. | "Is subrogation a derivative right, that is acquired by satisfaction of loss or claim that third party has against another?" | Subrogation - Memo # 863 - ES.docx | ROSS-003282036-ROSS-003282037 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 11196 | In re Ryan N., 92 Cal. App. 4th 1359 | 368+3 | In the leading case, our Supreme Court has explained that the key to distinguishing between homicide and the crime of aiding, advising, or encouraging a suicide "is the active or passive role of the defendant in the suicide. If the defendant merely furnishes the means, he is guilty of aiding a suicide; if he actively participates in the death of the suicide victim, he is guilty of murder." (In re Joseph G., supra, 34 Cal.3d at p. 436, 194 Cal.Rptr. 163, 667 P.2d 1176.) Any statute dealing with assisted suicide as a crime less than murder " "... does not contemplate active participation by one in the overt act directly causing death. It contemplates some participation in the events leading up to the commission of the final overt act, such as furnishing the means for bringing about death,"the gun, the knife, the poison, or providing the water, for the use of the person who himself commits the act of self-murder. But where a person actually performs, or actively assists in performing, the overt act resulting in death, such as shooting or stabbing the victim, administering the poison, or holding one under water until death takes place by drowning, his act constitutes murder, and it is wholly immaterial whether this act is committed pursuant to an agreement with the victim, such as a mutual suicide pact." "(People v. Matlock, supra, 51 Cal.2d at p. 694, 336 P.2d 505, quoting from and relying on People v. Bouse (1953) 199 Or. 676, 702"703, 264 P.2d 800, 812, overruled on other grounds in State v. Fischer (1962) 232 Or. 558, 376 P.2d 418, 421.) | Nothing in the statute defining the crime of aiding, advising or encouraging a suicide indicates that actual accomplishment of the intended suicide is not a necessary element of the crime, or that mere intent to assist a suicide and participation in bringing about a suicide attempt are by themselves sufficient for conviction; rather, the crime requires active and intentional participation in events leading to the commission of an actual, overt act of suicide. West's Ann.Cal.Penal Code S 401. | Do suicide statutes require active participation by one in the overt act directly causing death of a person? | 044456.docx | LEGALEASE-00121125-LEGALEASE-00121126 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 11197 | Foster v. Vilsack, 820 F.3d 330 | 23+3.1 | In 1985, Congress passed the Food Security Act of 1985 which contains "Swampbuster provisions authoriz[ing] the USDA to make determinations as to whether certain lands qualify as wetlands and whether wetlands that have been manipulated qualify as converted wetlands." Clark v. United States Dept. of Agric., 537 F.3d 934, 935 (8th Cir.2008). Swampbuster was passed "[i]n order to combat the disappearance of wetlands through their conversion into crop lands[.]" Gunn v. United States Dep't of Agric., 118 F.3d 1233, 1235 (8th Cir.1997). Significantly, "a person determined to have converted wetlands may become ineligible to receive farm program payments" from the federal government. Clark, 537 F.3d at 935. | Substantial evidence supported determination by the United States Department of Agriculture (USDA) that portion of farmland had requisite hydrology to qualify as a wetland, as required to support decision that it was protected under the Swampbuster provisions of the Food Security Act, which prohibited conversion of wetlands into crop lands; unchallenged expert testimony of agricultural engineer established that aerial photographs showed that the site in question displayed 10 wetness signatures, and that such signatures were found in seven out of ten years in which the area had normal rainfall. Food Security Act of 1985, S 1201(a)(27), 16 U.S.C.A. S 3801(a)(27); 7 C.F.R. S 12.2. | What are the Swampbuster provision of the Food Security Act of 1985? | 006743.docx | LEGALEASE-00121984-LEGALEASE-00121985 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 11198 | Ciago v. Ameriquest Mortg. Co., 295 F. Supp. 2d 324 | 25T+210 | "It is well settled that federal statutory claims can be the subject of arbitration, absent a contrary Congressional intent.... The burden of showing such legislative intent lies with the party opposing arbitration." Oldroyd, 134 F.3d at 77 (citations omitted). Plaintiff argues that the Arbitration Agreement is invalid because "an employee cannot be held to have waived a judicial forum as guaranteed by the FLSA." (Pl. Mem. Opp. Mot. Dismiss at 16.) Plaintiff does not, however, point to anything in the text of the FLSA that indicates Congress intended to preclude compulsory arbitration of FLSA claims nor does she establish that there is an " "inherent conflict" between arbitration and the" policies underlying the FLSA. Gilmer, 500 U.S. at 26, 111 S.Ct. 1647. In Gilmer the Supreme Court held that claims under the Age Discrimination and Employment Act ("ADEA") may be subject to compulsory arbitration. Id. at 27, 111 S.Ct. 1647. We agree with the view recently set forth by the Fourth Circuit that because of the similar remedial purpose and enforcement mechanisms shared by the ADEA and FLSA, the reasoning in Gilmer dictates that claims under the FLSA may also be subject to compulsory arbitration provisions. Adkins v. Labor Ready, Inc., 303 F.3d 496, 506 (4th Cir.2002); see Bailey, 346 F.3d at 824 (compelling arbitration of FLSA claims); Steele v. L.F. Rothschild & Co., Inc., 701 F.Supp. 407, 408 (S.D.N.Y.1988) (same). | Federal statutory claims can be subject of arbitration, absent contrary Congressional intent, and burden of showing such legislative intent lies with party opposing arbitration. | Are federal statutory claims arbitrable? | Alternative Dispute Resolution - Memo 375 - RK.docx | ROSS-003286038-ROSS-003286039 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11199 | Ball v. Iowa Dep't of Job Serv., 308 N.W.2d 54 | 392T+450 | The right of judicial review is conferred by statute, and the procedures prescribed to obtain such review must be followed to confer jurisdiction in the district court. A failure to comply with applicable statutory requirements, accordingly, deprives the court of jurisdiction for judicial review. See Kerr v. Iowa Public Service Co., 274 N.W.2d 283, 287 (Iowa 1979). When jurisdiction is wanting for lack of compliance with procedures prescribed by statute, it is the court's duty to refuse to entertain an appeal. These principles apply in this case, and lead us to conclude that Ball's petition for judicial review is fatally defective. | Right of judicial review in unemployment compensation case is conferred by statute and procedures prescribed to obtain such review must be followed to confer jurisdiction on district court. | Is it necessary to follow the statutorily prescribed procedure where a right to judicial review is statutory? | 008146.docx | LEGALEASE-00121808-LEGALEASE-00121809 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 11200 | Rosin v. Lawrence Byars Used Car Post, 30 Ala. App. 576 | 8.30E+76 | So that, if Mr. Rosin had simply received the check in question from the man to whom Mr. Byars had delivered it-the man endorsing it by the name in which he had procured it-and had paid cash for it (or "cashed" it) without any notice of any defect in it, or defense that Byars might have had against its payment, Mr. Byars would have had to reimburse Mr. Rosin for the amount of same. This because of the principle that "the drawer's right to countermand the payment of a check (and Byars had the undoubted right to so countermand the payment of the check in question upon discovery of the hoax perpetrated upon him by Hopper) can be exercised only at his own risk, and ordinarily its exercise does not discharge his liability to the holder. Michie on Banks and Banking Vol. 5 p. 398. | The drawer's right to countermand payment of a check can be exercised only at his own risk, and ordinarily its exercise does not discharge his liability to the holder. | Does the drawer's right to revoke or countermand the payment of check discharge his liability towards the holder? | Bills and Notes - Memo 35 - DB.docx | ROSS-003298017-ROSS-003298018 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11201 | United States v. Lemons, 67 F. Supp. 985 | 8.30E+11 | Under said statute a forged indorsement passes no title to a subsequent holder of a negotiable instrument. Dowling v. Grand Avenue Bank of St. Louis, 216 Mo.App. 86, 267 W.W. 1. It is also the law of said state that where a note is forged by having defendant's name signed thereto by another, without his authority or subsequent ratification, it is wholly inoperative and void, whether the holder is an innocent or guilty purchaser. German-American Bank v. Barnes, Mo. App., 185 S.W. 1194, Scott v. First Nat. Bank in St. Louis, 343 Mo. 77, 119 S.W.2d 929. The law of the state in which a check, or negotiable instrument, is executed, determines the formality and essential validity thereof, and the incidents of the obligation of such instrument. United States v. Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651. | The law of the state in which a check or negotiable instrument is executed determines the formality and essential validity thereof, and the incidents of the obligation of such instrument. | Which law determines the validity of a check or negotiable instrument? | 06960.docx | LEGALEASE-00085350-LEGALEASE-00085351 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 11202 | Pucinski v. Cty. of Cook, 192 Ill. 2d 540 | 104+137 | These requirements were not met here. Although clerks of the circuit courts are nonjudicial officers of the judicial branch of state government and not employees of the counties (Ill. Const.1970, art. VI, " 18(b); County of Kane v. Carlson, 116 Ill.2d 186, 200, 107 Ill.Dec. 569, 507 N.E.2d 482 (1987)), responsibility for maintaining the clerks' offices belongs to the counties, not the state. The county boards provide the necessary rooms and office furniture for the clerks, and the cost is paid from the county treasuries. 705 ILCS 105/20 (West 1998). The county boards provide the clerks' compensation and the "amount necessary for clerk hire, stationery, fuel and other expenses." 705 ILCS 105/27.3 (West 1998). The county boards bear the expense of establishing and maintaining automated record keeping systems and document storage systems in the clerks' offices (705 ILCS 105/27.3a, 27.3c (West 1998)), and the clerks' offices are subject to annual audits by the county boards (705 ILCS 105/27.8 (West 1998)). | Although clerks of the circuit courts are nonjudicial officers of the judicial branch of state government, and not employees of the counties, responsibility for maintaining the clerks' offices belongs to the counties, not the state. S.H.A. Const. Art. 6, S 18(b); S.H.A. 705 ILCS 105/20, 27.3, 27.3a, 27.3c, 27.8. | Are clerks of the court nonjudicial members of the court? | Clerks of Court - Memo 2 - RK.docx | ROSS-003315999-ROSS-003316001 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 11203 | Walcek v. United States, 49 Fed. Cl. 248 | 148+2.1 | The first criterion-the economic impact of the regulation-is "intended to ensure that not every restraint imposed by government to adjust the competing demands of private owners would result in a takings claim." Loveladies Harbor, 28 F.3d at 1176. See also Pennsylvania Coal, 260 U.S. at 413, 43 S.Ct. 158 ("Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law."). The focus of this factor is on the change in the fair market value of the subject property caused by the regulatory imposition-in other words, the court must "compare the value that has been taken from the property with the value that remains in the property." Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 497, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). See also Penn Central, 438 U.S. at 130-31, 98 S.Ct. 2646; Florida Rock, 18 F.3d at 1567. As will be seen, this prong of the Penn Central inquiry actually involves several tiers of analysis. | The focus of the "economic impact" factor of regulatory takings analysis is on the change in the fair market value of the subject property caused by the regulatory imposition; thus, the court must compare the value that has been taken from the property with the value that remains in the property. U.S.C.A. Const.Amend. 5. | How does the court analyze the economic impact of the regulatory action? | 017457.docx | LEGALEASE-00122225-LEGALEASE-00122226 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 11204 | State v. Richard, 525 So. 2d 1097 | 203+1146 | The severity of the attack on the victim, in which she was stabbed 19 times, indicates that the defendant had the specific intent to kill or to inflict great bodily harm when he stabbed the victim. See State v. Segura, 464 So.2d 1116 (La.App. 3 Cir.1985), writ denied 468 So.2d 1203. | Evidence was sufficient to establish defendant had specific intent to kill or to inflict great bodily harm when he stabbed victim, so as to support second-degree murder conviction; victim was stabbed 19 times, and severity of attack permitted finding intent to kill or inflict great bodily harm. LSA-R.S. 14:10(1), 14:30.1, 15:445. | Can the severity of an attack indicate the defendant's specific intent to kill? | 019333.docx | LEGALEASE-00122452-LEGALEASE-00122453 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 11205 | Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030 | 221+342 | Act of State: Pursuant to the act of state doctrine, this nation's courts will not "sit in judgment on the acts of" another country. Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897). Even in private suits, American courts will not resolve issues requiring "inquiries .. into the authenticity and motivation of the acts of foreign sovereigns." Occidental Petroleum Corp. v. Buttes Gas & Oil Co., 331 F.Supp. 92, 110 (C.D.Cal.1971), aff'd, 461 F.2d 1261 (9th Cir.), cert. denied, 409 U.S. 950, 93 S.Ct. 272, 34 L.Ed.2d 221 (1972). Id. | Pursuant to act of state doctrine, American courts will not sit in judgment on acts of another country. | "Pursuant to act of state doctrine, will American courts sit in judgment on acts of another country?" | International Law - Memo # 497 - C - SB.docx | ROSS-003311415-ROSS-003311416 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11206 | Fortson v. Colangelo, 434 F. Supp. 2d 1369 | 237+6(1) | Here, Fortson argues that the complained of words are false statements of fact, whereas Colangelo and the Post argue that the words are not statements of fact, but rather expressions of opinion, more specifically, pure opinion and/or rhetorical hyperbole. "Pure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public." From v. Tallahassee Democrat, Inc., 400 So.2d 52, 57 (Fla. 1st DCA 1981); see also Restatement (Second) of Torts " 566 (1977) (describing pure opinion as "a comment as to the plaintiff's conduct, qualifications or character"). "Pure opinion is sometimes characterized as "rhetorical hyperbole." " Laura G. Pula et al., Florida Torts " 25.03 (2006). The Supreme Court has used various phrases to describe "rhetorical hyperbole," including "imaginative expression" and "loose, figurative, or hyperbolic language." Although rhetorically hyperbolic statements may "at first blush appear to be factual[,] ... they cannot reasonably be interpreted as stating actual facts about their target." Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman, 55 F.3d 1430, 1438 (9th Cir.1995); accord Milkovich, 497 U.S. at 20, 110 S.Ct. 2695 (noting protection accorded "statements that cannot "reasonably [be] interpreted as stating actual facts' about an individual"). Where rhetorical hyperbole is employed, the language itself "negate[s] the impression that the writer was seriously maintaining that [the plaintiff] committed the [particular act forming the basis of the alleged defamation]." Id. at 21, 110 S.Ct. 2695. The distinction between fact and pure opinion/rhetorical hyperbole is a critical one; to be actionable, a defamatory publication must convey to a reasonable reader the impression that it describes actual facts about the plaintiff or the activities in which he participated. See Ford v. | "Pure opinion," in the context of analyzing a defamation claim, under Florida law, occurs when the defendant makes a comment or opinion based on facts which are set forth in a publication or which are otherwise known or available to the reader or listener as a member of the public. | What is a pure opinion? | 021055.docx | LEGALEASE-00122151-LEGALEASE-00122153 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11207 | Ratajack v. Brewster Fire Department of the Brewster-Southeast Joint Fire District, 178 F.Supp.3d 118 | 237+36 | With regard to the first of these elements, under New York law, " "pure opinion" ... is not actionable because "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation."" Davis v. Boeheim, 24 N.Y.3d 262, 998 N.Y.S.2d 131, 22 N.E.3d 999, 1004 (2014) (quoting Mann v. Abel, 10 N.Y.3d 271, 856 N.Y.S.2d 31, 885 N.E.2d 884, 885"86 (2008)); see also Levin v. McPhee, 119 F.3d 189, 196 (2d Cir.1997) ("[E]xpressions of opinion are not actionable ...."); Gross v. N.Y. Times Co., 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d 1163, 1166 (1993) (noting that "expressions of opinion ... are not actionable," but that "assertions of fact ... may form the basis of a viable libel claim"). "Distinguishing between fact and opinion is a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean." Davis, 998 N.Y.S.2d 131, 22 N.E.3d at 1004"05 (internal quotation marks omitted); Restis v. Am. Coal. Against Nuclear Iran, Inc., 53 F.Supp.3d 705, 718 (S.D.N.Y.2014) ("Whether a statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court." (alteration and internal quotation marks omitted)). "The dispositive inquiry is whether a reasonable reader could have concluded that the statements were conveying facts about the plaintiff." Davis, 998 N.Y.S.2d 131, 22 N.E.3d at 1005 (alterations and internal quotation marks omitted); see also Celle, 209 F.3d at 178 ("The "essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were ... written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." ") (alteration in original) (quoting Steinhilber v. Alphonse, 68 N.Y.2d 283, 508 N.Y.S.2d 901, 501 N.E.2d 550, 552"53 | Under New York law, pure opinion is not actionable as libel, because expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation. | Are pure opinions actionable as defamation? | 021058.docx | LEGALEASE-00122169-LEGALEASE-00122171 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 11208 | High v. Batte, 18 Tenn. 335 | 150+167 | As to the second point, the practice of the court of chancery in England requires that a defendant shall plead the fact of his being an innocent purchaser, but such has not been the practice of our courts, and we are not willing now to adopt it. But, allowing that an answer may stand for a plea in such cases, yet all the certainty required in the plea must be contained in the answer. Among many other requisites, not now necessary to be noticed, in order to constitute a good plea, the averment that the consideration money was bona fide and truly paid is absolutely necessary, and that the recital in the deed cannot be received in lieu thereof is well settled. 2 Atk. 244; 3 Id. 394, 814. What shall constitute a good averment of the payment of the purchase money? Shall it be, as in this case, that a full and fair consideration has been paid? We think not. What constitutes a fair and valuable consideration must be judged of by the court, not by the defendant; he must state what he has paid, and then the court can judge whether he is a purchaser for a valuable consideration. Any other mode of proceeding would be to introduce a loose and unsafe form of equity pleading, and would be submitting too much to the unchecked consciences of men. | A plea of purchase for valuable consideration without notice, must aver that the consideration money was bona fide and truly paid; a recital of that fact in the deed is not sufficient. | "Is the averment that the consideration money was bona fide and truly paid, necessary to constitute a good plea?" | 022917.docx | LEGALEASE-00121890-LEGALEASE-00121891 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11209 | Morrow v. McDaniel, 70 S.W.2d 329 | 83E+855 | Defendants having pleaded a total failure of consideration for the execution of the three notes, the burden was upon them to prove such failure. Gutta Percha & Rubber Mfg. Co. v. City of Cleburne, 102 Tex. 36, 38, 112 S. W. 1047. However, under the plea of total failure of consideration, defendants could prove partial failure, but the proof must show the extent of such failure. Undoubtedly, it being undisputed that the 1927 policy covered damage to property, if any, growing out of the erection of the Wilson Hardware building, and said policy bound plaintiff, not only to defend any suit or suits, whether well founded or not, against defendants growing out of the erection of said building, and Dr. Wilson having brought such suit, and it being without dispute that plaintiff has failed to defend said suit, and confesses that it will not be able to discharge the judgment, if any, that may be ultimately rendered against defendants, at least a partial failure of the consideration for the notes is shown, but not the amount of same. Appellants assign error against the judgment complaining that appellees failed to meet the burden of proof of failure of consideration, either total or partial. This assignment must be sustained. | Though under plea of total failure of consideration for notes sued upon, defendants could prove partial failure, proof must show extent thereof. | Can a defendant prove partial failure under the plea of total failure of consideration? | 022922.docx | LEGALEASE-00121959-LEGALEASE-00121961 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 11210 | Hedrick v. Graham, 245 N.C. 249 | 302+34(1) | It is familiar learning that a demurrer admits the truth of factual averments well stated and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader, and that we are required to construe the pleading challenged by a demurrer liberally with a view to substantial justice between the parties and to make every reasonable intendment in favor of the pleader. G.S. s 1-151; McKinley v. Hinnant, 242 N.C. 245, 87 S.E.2d 568; McKinney v. City of High Point, 237 N.C. 66, 74 S.E.2d 440. | Where defendants have demurred to complaint, court is required to liberally construe pleading challenged with a view to substantial justice between the parties and to make every reasonable intendment in favor of the pleader. G.S. S 1-151. | Should pleadings challenged by a demurrer be liberally construed? | 022938.docx | LEGALEASE-00122223-LEGALEASE-00122224 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 11211 | Chicago Exhibitors Corp. v. Jeepers! of Illinois, 376 Ill. App. 3d 599 | 307A+3 | "A motion in limine is addressed to the trial court's inherent power to admit or exclude evidence," and, generally, this "court will not disturb the trial court's ruling on a motion in limine absent a clear abuse of discretion." Beehn v. Eppard, 321 Ill.App.3d 677, 680, 254 Ill.Dec. 598, 747 N.E.2d 1010 (2001), citing People v. Williams, 188 Ill.2d 365, 369, 242 Ill.Dec. 260, 721 N.E.2d 539 (1999)."However, a trial court must exercise its discretion within the bounds of the law." Beehn, 321 Ill.App.3d at 680, 254 Ill.Dec. 598, 747 N.E.2d 1010. Where a trial court's exercise of discretion relies on an erroneous conclusion of law, as the Swentos claim, our review is de novo. Beehn, 321 Ill.App.3d at 680"81, 254 Ill.Dec. 598, 747 N.E.2d 1010. | In ruling on a motion in limine, a trial court must exercise its discretion within the bounds of the law. | "In ruling on a motion in limine, must a trial court exercise its discretion within the bounds of the law?" | 024105.docx | LEGALEASE-00121966-LEGALEASE-00121967 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11212 | Conagra v. Strother, 340 Ark. 672 | 307A+3 | We have noted that a motion in limine is a threshold motion. Nolen v. State, 278 Ark. 17, 643 S.W.2d 257. 278 Ark. 17, 643 S.W.2d 257 (1982). We have also held that the trial judge is at liberty to reconsider his or her prior rulings during the course of a single trial. Davis v. State, 325 Ark. 96, 925 S.W.2d 768 (1996); Hill v. State, 276 Ark. 300, 634 S.W.2d 120 (1982). Thus, the trial court's initial ruling on Conagra's motion in limine was a threshold ruling subject to reconsideration and change as the evidence was more fully developed at trial. Clearly, the trial court was convinced by the presentation of evidence to modify its earlier ruling and allow testimony about the daily presence of greasy water on the floor and the presence of safety mats for the limited purpose of establishing that Conagra had prior notice that such a condition existed. We will not reverse a trial court's ruling on the admission of evidence absent an abuse of discretion. Edwards v. Stills, 335 Ark. 470, 984 S.W.2d 366 (1998); Smith v. Galaz, 330 Ark. 222, 953 S.W.2d 576 (1997). We cannot say that the trial court abused its discretion when it admitted the testimony for the limited purpose of establishing that Conagra had prior notice that the floor outside the breakroom would become wet and slick upon removal of the safety mats. | A motion in limine is a threshold motion, and thus, the trial judge is at liberty during the course of the trial to reconsider his or her ruling on such motion. | "Is a motion in limine a threshold motion, and thus, the trial judge is at liberty during the course of the trial to reconsider his or her ruling on such motion?" | Pretrial Procedure - Memo # 175 - C - AP.docx | ROSS-003282505-ROSS-003282506 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 11213 | Poff v. Elkins, 2014 Ark. App. 663 | 307A+3 | The appellant is barred from arguing that this ruling was in error. When a party opens the door to a line of questioning, the opposing party may introduce testimony on that issue. Pursley v. Price, 283 Ark. 33, 34, 670 S.W.2d 448, 449 (1984). The appellant argues that the circuit court's ruling on the motion in limine forced her to introduce this evidence on direct examination. This argument is not persuasive. A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. Conagra, Inc. v. Strother, 68 Ark.App. 120, 126, 5 S.W.3d 69, 73 (1999). As such, it is subject to reconsideration and change by the court during the course of the trial, as the evidence in the trial is fully developed. Id. | A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. | Is a trial court's decision to grant or deny a motion in limine an interlocutory and preliminary order? | 024234.docx | LEGALEASE-00121860-LEGALEASE-00121861 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 11214 | Romanek-Golub & Co. v. Anvan Hotel Corp., 168 Ill. App. 3d 1031 | 307A+3 | A motion in limine merely presents an issue of admissibility of evidence which is likely to arise at trial, in a pretrial setting. As such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial. (Beasley v. Huffman Mfg. Co. (1981), 97 Ill.App.3d 1, 5, 52 Ill.Dec. 560, 422 N.E.2d 241.) "When a motion in limine is made, the trial judge must exercise his discretion in granting the motion or in denying it, thereby leaving to the unsuccessful movant the procedure of specially objecting to the evidence when it is offered at trial." People v. McClain (1978), 60 Ill.App.3d 320, 324, 17 Ill.Dec. 628, 376 N.E.2d 774, citing Department of Public Works & Buildings v. Roehrig (1976), 45 Ill.App.3d 189, 195, 359 N.E.2d 752. | Motion in limine, like any other interlocutory order, remains subject to reconsideration by court throughout trial. | Are in limine orders interlocutory and do they remain subject to reconsideration throughout the trial? | Pretrial Procedure - Memo # 425 - C - SHS.docx | ROSS-003288248-ROSS-003288249 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 11215 | Ayala v. Lee, 215 Md. App. 457 | 307A+3 | An evidentiary ruling on a motion in limine "is left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion." Malik v. State, 152 Md.App. 305, 324, 831 A.2d 1101 (2003). The determination of relevancy and admission of evidence at trial is also reviewed for an abuse of discretion. Martin v. State, 364 Md. 692, 705, 775 A.2d 385 (2001). | An evidentiary ruling on a motion in limine is left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion. | Does a trial judge have discretion in granting a motion in limine? | 027707.docx | LEGALEASE-00122319-LEGALEASE-00122320 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11216 | Gerken v. Hy Vee, 11 Neb. App. 778 | 307A+3 | A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. McCune v. Neitzel, 235 Neb. 754, 457 N.W.2d 803 (1990). It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. Molt v. Lindsay Mfg. Co., 248 Neb. 81, 532 N.W.2d 11 (1995). Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court. McCune v. Neitzel, supra. By the same token, in order to preserve any error before an appellate court, the party opposing a motion in limine which was granted must make an offer of proof outside the presence of the jury unless the evidence is apparent from the context within which the questions were asked. See, Thrift Mart v. State Farm Fire & Cas. Co., 251 Neb. 448, 558 N.W.2d 531 (1997), overruled on other grounds, Hornig v. Martel Lift Systems, 258 Neb. 764, 606 N.W.2d 764 (2000); Neb.Rev.Stat. " 27"103(1)(b) (Reissue 1995). | It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. | Is it the purpose of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence? | 027979.docx | LEGALEASE-00121950-LEGALEASE-00121951 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 11217 | Ayala v. Lee, 215 Md. App. 457 | 307A+3 | An evidentiary ruling on a motion in limine "is left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion." Malik v. State, 152 Md.App. 305, 324, 831 A.2d 1101 (2003).The determination of relevancy and admission of evidence at trial is also reviewed for an abuse of discretion. Martin v. State, 364 Md. 692, 705, 775 A.2d 385 (2001). | An evidentiary ruling on a motion in limine is left to the sound discretion of the trial judge and will only be reversed upon a clear showing of abuse of discretion. | Can a trial court make an evidentiary ruling as part of motion in limine? | 028314.docx | LEGALEASE-00122066-LEGALEASE-00122067 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 11218 | Cty. of Monroe v. Raytheon Co., 156 Misc. 2d 445 | 366+7(1) | In making its Statute of Limitations argument, Bell relies primarily on the case Seven Sixty Travel v. American Motorists Ins. Co., 98 Misc.2d 509, 414 N.Y.S.2d 254, affd. 73 A.D.2d 761, 423 N.Y.S.2d 458. However, that case is significantly different. As a rule, a surety is subrogated to the rights of both the party it pays and the party on whose behalf it makes the payments. In Seven Sixty Travel, involving an insurance policy (not a performance bond), the subrogation involved was that of the insurance company to the rights of the plaintiff in the main action where the insurance company had no contractual relationship with the tour company that actually wronged the plaintiff; and that tour company had no rights against anyone else to which the surety could be subrogated. The insurance company simply sought to recover from the party which caused the loss to its insured. Thus, it had no better rights than the plaintiff insured against the third-party defendant, and the third-party action was not one for implied indemnification, but was simply derivative, arising from subrogation. Consequently, the insurance company had to sue within the six-year 748 period that plaintiff itself could have used to sue the third-party defendant wrongdoer directly. | As a rule, surety is subrogated to rights of both party it pays and party on whose behalf it makes the payments. | Is a surety subrogated to the rights of both the party it pays and party on whose behalf it makes the payments? | Subrogation - Memo # 909 - C - CAR.docx | ROSS-003283602-ROSS-003283603 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 11219 | Ferro Corp. v. Solutia Inc., 588 F. Supp. 2d 1022 | 13+61 | Under New York law, "a breach of contract cause of action accrues at the time of the breach." Ely"Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985, 986 (1993). "A cause of action for breach of contract accrues .. when the breach occurs or when a party to the agreement fails to perform an obligation." Ross Network, Inc. v. RSM McGladrey, Inc., 11 Misc.3d 1089(A), 819 N.Y.S.2d 851, 2006 WL 1160007, at (N.Y.Sup. May 1, 2006). Further, a party is liable for breach of contract only insofar as that party has a contractual obligation to perform. "[I]f there is no contractual obligation to perform an act, the failure to perform the act cannot be a breach of the contract." Havana Cent. NY2 LLC v. Lunney's Pub, Inc., 49 A.D.3d 70, 852 N.Y.S.2d 32, 37 (N.Y.Sup.2007) (citing Stratton Group, Ltd. v. Sprayregen, 458 F.Supp. 1216, 1218 (S.D.N.Y.1978) ("Clearly a breach [of contract] can only occur when one is under an obligation to perform in the first instance.")). | Under New York law, a cause of action for breach of contract accrues when the breach occurs or when a party to the agreement fails to perform an obligation. | Does a breach of contract cause of action accrue at the time of breach? | Action - Memo # 96 - C - NO.docx | ROSS-003297167-ROSS-003297169 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 11220 | Memphis Const. v. Vill. of Moravia, 59 A.D.2d 646 | 13+61 | In the circumstances of this case, it is unnecessary to reach the issue of equitable estoppel. We affirm on the ground that plaintiff's action is timely. Plaintiff's vouchers or work orders had never been audited and rejected prior to the institution of this action. Section 5-524 of the Village Law precludes the defendant from paying plaintiff's claims until they have been approved by the appropriate Village officer. Plaintiff's cause of action did not accrue "until it possesse(d) the legal right to be paid and to enforce its right to payment in court" (City of New York v. State of N.Y., 40 N.Y.2d 659, 668, 389 N.Y.S.2d 332, 339, 351 N.E.2d 988, 995; see also Reuter v. Town of Babylon 40 A.D.2d 710, 336 N.Y.S.2d 674). | Contractor's cause of action against village did not accrue until it possessed the legal right to be paid and to enforce the right to payment, which did not occur until the vouchers and work orders were audited and rejected by the village. Village Law S 5-524. | Does a claimant's cause of action accrue before the claimant possesses the legal right to be paid? | 005534.docx | LEGALEASE-00123865-LEGALEASE-00123866 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 11221 | Mobile Infirmary v. Delchamps, 642 So. 2d 954 | 241+55(3) | The limitations period of " 6-5-482 commences with the accrual of a cause of action. Street v. City of Anniston, 381 So.2d 26 (Ala.1980); Bowlin Horn v. Citizens Hosp., 425 So.2d 1065 (Ala.1983); Ramey v. Guyton, 394 So.2d 2 (Ala.1981). A cause of action "accrues" under " 6-5-482 when the act complained of results in legal injury to the plaintiff. Grabert v. Lightfoot, 571 So.2d 293, 294 (Ala.1990); Colburn v. Wilson, 570 So.2d 652, 654 (Ala.1990). The statutory limitations period begins to run whether or not the full amount of damages is apparent at the time of the first legal injury. Garrett v. Raytheon Co., 368 So.2d 516, 518 (Ala.1979). When the wrongful act or omission and the resulting legal injury do not occur simultaneously, the cause of action accrues and the limitations period of " 6-5-482 commences when the legal injury occurs. Moon v. Harco Drugs, Inc., 435 So.2d 218, 219 (Ala.1983); Ramey v. Guyton, 394 So.2d 2, 4-5 (Ala.1981). | Cause of action accrues under two-year statute of limitations for commencing actions against health care providers when act complained of results in legal injury to plaintiff. Code 1975, S 6-5-482. | Does a cause of action accrue when the act complained of results in legal injury to the plaintiff? | Action - Memo # 41 - C - LK.docx | ROSS-003314255-ROSS-003314256 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11222 | Kruse v. AFLAC Int'l, 458 F. Supp. 2d 375 | 25T+121 | The Sixth Circuit has yet to rule specifically that claims arising under the Equal Pay Act should not be subject to arbitration. However, the Seventh Circuit has determined that there was no congressional intent to exempt Equal Pay Act claims from arbitration. Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361, 365 (7th Cir.1999), cert. denied, 528 U.S. 811, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999) (Equal Pay Act claims are arbitrable) The Court finds Koveleskie persuasive. There is no indication that Congress intended claims under the Equal Pay Act to be exempt from arbitration under the FAA. Therefore, plaintiff's claims arising under the Equal Pay Act are subject to arbitration. | Equal Pay Act (EPA) claims are subject to arbitration, absent indication that Congress intended them to be exempt from arbitration under Federal Arbitration Act (FAA). 9 U.S.C.A. S 1 et seq.; Equal Pay Act of 1963, S 3(d), 29 U.S.C.A. S 206(d). | Are claims under the Equal Pay Act (EPA) exempt from arbitration under the FAA? | 007124.docx | LEGALEASE-00123858-LEGALEASE-00123859 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 11223 | United States v. Terry, 707 F.3d 607 | 63+1(1) | That a bribe doubles as a campaign contribution does not by itself insulate it from scrutiny. No doubt, a contribution is more likely to be a duty-free gift than a bribe because a contribution has a legitimate alternative explanation: The donor supports the candidate's election for all manner of possible reasons. See Buckley v. Valeo, 424 U.S. 1, 21, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). But the prosecution may rebut that alternative explanation, and context may show that an otherwise legitimate contribution is a bribe. Take Evans. In that case, the Court permitted a jury to convict a state legislator who attempted to claim the payment he received was a campaign contribution. See 504 U.S. at 257"59, 112 S.Ct. 1881. Take as well the Fifth Circuit's decision in Whitfield. Two state judges argued that the loan guarantees they received were made in the context of their electoral campaigns and thus required special protection, but the court upheld a finding that the payments were bribes. 590 F.3d at 353. If an official receives money "through promises to improperly employ his public influence," he has accepted a bribe. Abbey, 560 F.3d at 519. A donor who gives money in the hope of unspecified future assistance does not agree to exchange payments for actions. No bribe thus occurs if the elected official later does something that benefits the donor. On the other hand, if a donor (like Russo) makes a contribution so that an elected official will "do what I asked him to do," 2 Trial Tr. 290, and the official (like Terry) accepts the payment with the same understanding, the donor and the official have formed a corrupt bargain. That agreement marks the difference between a run-of-the-mine contribution and a bribe. | If a public official receives money through promises to improperly employ his public influence, he has accepted a bribe. 18 U.S.C.A. S 201(b)(2). | Has a public official accepted bribe if he accepts money through promises to improperly employ his public influence? | 011032.docx | LEGALEASE-00123250-LEGALEASE-00123252 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 11224 | Jones v. Jitney Jungle Stores of Am., 730 So. 2d 555 | 113+1 | " 8. We found that evidence of custom and usage can be a relevant consideration in determining negligence. Jaquith, 224 So.2d at 222. However, we have clearly established that while relevant, custom and usage evidence is disfavored and recognized as dangerous. Meridian Star v. Kay, 211 Miss. 536, 543"44, 52 So.2d 35, 37 (1951); Magnolia Lumber Corp. v. Czerwiec Lumber Co., 207 Miss. 738, 746, 43 So.2d 204, 205 (1949); Robinson v. Turfitt, 192 Miss. 160, 164, 4 So.2d 884, 885(1941). The danger is that the jury will define negligence simply by a departure from custom. For custom and usage evidence to be admissible, its relevancy and probative value must be clearly shown and must outweigh its prejudicial effect. Robinson, 192 Miss. at 164, 4 So.2d at 885. We review the trial judge's decisions based on relevancy under an abuse of discretion standard. Sperry"New Holland v. Prestage, 617 So.2d 248, 263 (Miss.1993). | For custom and usage evidence to be admissible, its relevancy and probative value must be clearly shown and must outweigh its prejudicial effect. | What must be shown for custom and usage evidence to be admissible? | 014255.docx | LEGALEASE-00122627-LEGALEASE-00122628 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 11225 | Welcker v. Welcker, 342 So. 2d 251 | 113+1 | Significantly, the French civil law acknowledges the legitimacy of custom Praeter legem (i.e. custom as to a matter not covered by legislation) as a source of law. See Loussouarn, The Relative Importance of Legislation, Custom, Doctrine and Precedent in French Law, 18 La.L.Rev. 235, 248, 251. | The French civil law acknowledges the legitimacy of custom "praeter legem," i. e., custom as to a matter not covered by legislation, as a source of law. | Does civil law acknowledge the legitimacy of custom praeter legem? | 014263.docx | LEGALEASE-00123896-LEGALEASE-00123897 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 11226 | United States v. Keller, 451 F. Supp. 631 | 221+134 | But the mere physical presence of Defendants before this Court, which has the effect of granting us personal jurisdiction, does not necessarily give us jurisdiction over the subject matter of the offense. Under international law a state does not have jurisdiction to enforce (i. e. exercise its power) a rule of law prescribed by it unless it has jurisdiction to prescribe the conduct in question. Rivard v. U. S., 375 F.2d 882 (C.A. 5, 1967), cert. den. sub nom. Groleau v. U. S., 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181 (1967). The law of nations permits the exercise of criminal jurisdiction by a nation under five general principles: territorial, wherein jurisdiction is based on the place where the offense is committed; national, wherein jurisdiction is based on the nationality or national character of the offender; protective, wherein jurisdiction is based on whether the national interest is injured; universal, which amounts to physical custody of the offender; and passive personal, wherein jurisdiction is based on the nationality or national character of the victim. See Rivard v. U. S.,supra; U. S. v. Pizzarusso, 388 F.2d 8, 10-11 (C.A. 2, 1968); cert. denied 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968). | Under international law, state does not have jurisdiction to enforce rule of law prescribed by it unless it has jurisdiction to prescribe conduct in question. | "Under international law, does a state have jurisdiction to enforce a rule if it had jurisdiction to prescribe the conduct in question?" | International Law - Memo # 192 - C - PHS.docx | ROSS-003300763-ROSS-003300764 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11227 | Streine v. Comm'rs of Campbell Courthouse Dist., 149 Ky. 641 | 302+8(6) | There is an attempt to plead that the commissioners had incurred an indebtedness of $6,103 in a previous year beyond the income for said year, without the assent of two-thirds of the voters of the district, and that this debt was paid out of the levy for the year 1910, and was therefore a diversion of the funds for that year. The petition in this respect is not good. It simply pleads a legal conclusion. We have repeatedly held that it is necessary in such a case to allege facts showing that the municipality had incurred an indebtedness in excess of the revenue and income provided for the year without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose. City of Louisville v. Gosnell, 61 S. W. 476, 22 Ky. Law Rep. 1524 | The allegation of the petition that the courthouse district commission was indebted in a certain sum for an indebtedness incurred during a previous year beyond the income of the year, and without the assent of two-thirds of the voters of the district, voting at an election held for that purpose, so that their payment thereof out of the levy for a subsequent year was a diversion, is simply a legal conclusion, instead of the necessary allegation of facts. | Should facts be alleged to show municipality indebtedness? | 022949.docx | LEGALEASE-00123490-LEGALEASE-00123491 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11228 | Bacon v. Wahrhaftig, 97 Cal. App. 2d 599 | 302+204(1) | A special demurrer should not be sustained when the allegations of the complaint are sufficiently clear to apprise the defendant of the issues which he is to meet. Lord v. Garland, 27 Cal.2d 840, 853, 168 P.2d 5. Such a demurrer for uncertainty is not intended to reach the failure to incorporate sufficient facts in the pleading, but is directed at the uncertainty existing in the allegations actually made. People v. Lim, 18 Cal.2d 872, 882, 118 P.2d 472. A demurrer which attacks an entire pleading should be overruled if one of the counts therein is not vulnerable to the objection. Lord v. Garland, supra, 27 Cal.2d page 850, 168 P.2d 5. As was said in Merlino v. West Coast Macaroni Mfg. Co., supra, 90 Cal.App.2d at page 108, 202 P.2d at page 750: "A demurrer for uncertainty will not lie where the ambiguous facts alleged are presumptively within the knowledge of the demurring party. Corum v. Hartford Acc. & Indem. Co., 67 Cal.App.2d 891, 155 P.2d 710; Swasey v. de L'Etanche, 17 Cal.App.2d 713, 62 P.2d 753. A special demurrer should not be sustained if the allegations are sufficiently clear to apprise the defendant of the issues that must be met, even if the allegations of the complaint may not be as clear and as detailed as might be desired. People v. Lim, 18 Cal.2d 872, 118 P.2d 472. Moreover, a demurrer for uncertainty will not lie as to even uncertain and ambiguous allegations, if such allegations refer to immaterial matters. In such event, they will be treated as surplusage and disregarded. Swasey v. de L'Etanche, supra; Aronson v. Bank of America, 42 Cal.App.2d 710, 109 P.2d 1001; Penziner v. West American Finance Co., 133 Cal.App. 578, 24 P.2d 501. Tested by these standards, we think it was error to have sustained the demurrer." Applying these rules to the complaint before us, we think it was error to have sustained the demurrers. | A demurrer which attacks an entire pleading should be overruled if one of the counts therein is not vulnerable to the objection. | Should a demurrer which attacks an entire pleading be overruled if one of the counts is not vulnerable to the objection? | 022972.docx | LEGALEASE-00123526-LEGALEASE-00123527 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 11229 | Jessen v. Jessen, 450 S.W.3d 425 | 228+300 | "Rule 75.01 gives the circuit court inherent power to amend a judgment upon a finding of good cause during the thirty-day period after entry of judgment." Gill Const., Inc. v. 18th & Vine Authority, 157 S.W.3d 699, 711 (Mo.App.2004)."The circuit court is vested with considerable discretion in ruling on a motion to amend judgment, and the court of appeals will not reverse a circuit court's decision on the motion to amend the judgment unless there is abuse of discretion." Id. | Circuit court is vested with considerable discretion in ruling on a motion to amend judgment, and Court of Appeals will not reverse a circuit court's decision on motion to amend judgment unless there is abuse of discretion. V.A.M.R. 75.01. | Is the circuit court vested with broad discretion to grant a motion in limine as part of its inherent power to admit or exclude evidence? | 024171.docx | LEGALEASE-00122863-LEGALEASE-00122864 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 11230 | Austin v. Shampine, 948 S.W.2d 900 | 307A+3 | In short, no Texas court has ever reversed a case because of a violation of a motion in limine that was not met by an objection. Such a reversal would not be logical. By granting a motion in limine, a trial judge does not exclude evidence. Instead, he defers ruling on admissibility until such time as a party wishes to introduce the evidence. At that time, the party must obtain a ruling on the evidence before introducing it. The purpose of this procedure is to prevent the presentation of potentially prejudicial information before a ruling can be obtained. Keene Corp. v. Kirk, 870 S.W.2d 573, 580"81 (Tex.App."Dallas 1993, no writ). In short, by subjecting evidence to a motion in limine, a court makes no determination of the actual prejudicial effect of the evidence. When no objection is made to a violation of a motion in limine, the trial court may assume the moving party has determined not to oppose the introduction of the evidence. At any rate, the moving party in this situation has not lost its opportunity to have prejudicial information excluded. Instead, the party has lost only the opportunity to be notified before the prejudicial information is introduced. As a result, when a party complains on appeal that incurably prejudicial information was placed before the jury, the party should not bring an appellate point complaining about the violation of a motion in limine. A jury cannot be inflamed by a procedural error. Instead, the party should bring an appellate point complaining that the information introduced was incurably prejudicial. Because Austin and Big Boy did not bring such a point of error, point of error six is overruled . | In granting motion in limine, trial judge does not exclude evidence, but instead defers ruling on admissibility until such time as party wishes to introduce the evidence, and at that time, party must obtain ruling on evidence before introducing it; purpose of procedure is to prevent presentation of potentially prejudicial information before ruling can be obtained. | Is the purpose of filing a motion in limine to prevent the presentation of potentially prejudicial information in front of a jury before a ruling can be obtained? | 024196.docx | LEGALEASE-00123120-LEGALEASE-00123121 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 11231 | Junkins v. Branstad, 448 N.W.2d 480 | 307A+2 | Application for Adjudication of Law Points and Motion for Summary Judgment. An application for adjudication of law points and a motion for summary judgment are appropriate only when the issue in question should be decided by the court as a matter of law rather than presented to the factfinder. Kriv v. Northwestern Sec. Co., 237 Iowa 1189, 1195, 24 N.W.2d 751, 754 (1946). At issue in this case is whether Senate File 570 should be considered an appropriation bill so to make it subject to the governor's item veto power. | Application for adjudication of law points and motion for summary judgment are appropriate only when issue in question should be decided by court as matter of law rather than presented to fact finder. | When is the application for separate adjudication of law points properly considered? | 041132.docx | LEGALEASE-00123938-LEGALEASE-00123939 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 11232 | In re Commitment of Kelley, 2012 IL App (1st) 110240 | 307A+3 | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. People v. Nelson, 235 Ill.2d 386, 420, 337 Ill.Dec. 479, 922 N.E.2d 1056 (2009). An abuse of discretion occurs only when the trial court's ruling is "arbitrary, fanciful, or unreasonable or where no reasonable [person] would take the view adopted by the trial court." (Internal quotation marks omitted.) People v. Santos, 211 Ill.2d 395, 401, 286 Ill.Dec. 102, 813 N.E.2d 159 (2004). | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | "Is the admission of evidence, including a ruling on a motion in limine, a matter resting within the sound discretion of the trial court?" | 041142.docx | LEGALEASE-00124025-LEGALEASE-00124026 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11233 | Jefferson v. Lyon Sheet Metal Works, 376 S.W.3d 37 | 307A+3 | As an initial matter, plaintiff's use of motions in limine to preclude Lyon from presenting its defense at trial was improper. This is not the function of a motion in limine. "Ordinarily, a motion in limine is used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory." Cass Bank & Trust Co. v. Mestman, 888 S.W.2d 400, 404 (Mo.App.1994). "It is appropriate when the mere asking of an improper question in front of a jury may be so prejudicial that a party will be denied a right to a fair trial." However, a motion in limine "is not a substitute for a summary judgment motion.""Nor should it "ordinarily [be] employed to choke off an entire claim or defense." " (quoting Lewis v. Buena Vista Mutual Ins. Ass'n, 183 N.W.2d 198, 201 (Iowa 1971)). Therefore, the trial court procedurally erred in granting plaintiff's motions in limine to preclude Lyon from litigating a defense at trial. | Ordinarily, a motion in limine is used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory; it is appropriate when the mere asking of an improper question in front of a jury may be so prejudicial that a party will be denied a right to a fair trial. | Should a motion in limine be used as a substitute for a dispositive motion such as a motion for summary judgment? | 041173.docx | LEGALEASE-00124095-LEGALEASE-00124096 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 11234 | Residential Util. Consumer Office v. Arizona Corp. Comm'n, 238 Ariz. 8 | 317A+124 | Arizona is a regulated monopoly state. Ariz. Corp. Comm'n v. Ariz. Water Co., 111 Ariz. 74, 76, 523 P.2d 505, 507 (1974). "The monopoly is tolerated only because it is to be subject to vigilant and continuous regulation by the Corporation Commission." Davis v. Corp. Comm'n, 96 Ariz. 215, 218, 393 P.2d 909, 911 (1964). One important component of the Commission's "vigilant and continuous" regulatory role is determining and using fair value when setting a monopolistic utility's rates. In discussing the fair value determination requirement more than a century ago, our supreme court stated: In order that the Corporation Commission might act intelligently, justly, and fairly between the public service corporations doing business in the state and the general public, section 14 was written into the Constitution.... The "fair value of the property" of public service corporations is the recognized basis upon which rates and charges for services rendered should be made, and it is made the duty of the Commission to ascertain such value, not for legislative use, but for its own use, in arriving at just and reasonable rates and charges....State v. Tucson Gas, Elec., Light & Power Co., 15 Ariz. 294, 303, 138 P. 781, 784"85 (1914); see also Simms v. Round Valley Light & Power Co., 80 Ariz. 145, 151, 294 P.2d 378, 382 (1956) ("It is clear ... that under our constitution as interpreted by this court, the commission is required to find the fair value of the company's property and use such finding as a rate base for the purpose of calculating what are just and reasonable rates."). | The State Constitution's requirement that the Corporation Commission ascertain the fair value of property when it sets rates is an imperative; the Commission is charged with an affirmative duty to act. A.R.S. Const. Art. 15, S 14. | Was Section 14 written into the Constitution for the Corporation Commission to act intelligently between public service corporations doing business in the state and the public? | 042229.docx | LEGALEASE-00122607-LEGALEASE-00122608 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11235 | Gregg v. Laird, 121 Md | 372+926 | It is a well-recognized rule that all statutes upon the same subject-matter are to be harmonized as far as possible, and this is true whether the acts relating to the same subject were passed at different dates, separated by long or short intervals. They are all to be compared, harmonized if possible, and, if not susceptible of a construction which will make all their provisions harmonize, they are made to operate together so far as possible, consistent with the evident intent of the latest enactment. Sutherland on Statutory Construction, " 283. This rule of construction is applied even when the constitutionality of a statute is called in question. Chief Justice White has expressed it as follows in U. S. v. Del. & Hudson Co., 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836: "The duty of this court, in construing a statute which is reasonably susceptible of two constructions, one of which would render it unconstitutional and the other valid, to adopt that construction which saves its constitutionality (Knights Templar v. Jarman, 187 U. S. 197 [23 Sup. Ct. 108, 47 L. Ed. 139]) includes the duty of avoiding a construction which raises grave and doubtful constitutional questions, if the statute can be reasonably construed so as to avoid such questions. Harriman v. Int. St. Com. Comn., 211 U. S. 407 [29 Sup. Ct. 115, 53 L. Ed. 253]. " Bearing this rule in mind, and looking to the manifest intent of the Legislature, it is perfectly apparent that the purpose was to place all corporations handling public utilities under the supervision and control of the Public Service Commission, and with power in the commission to regulate the rates charged for service, but that until the commission did so regulate the charge, any act or acts in force respecting them should remain unimpaired. | The purpose of Acts 1910, c. 180, creating the Public Service Commission, and giving it the power to regulate the prices of public service corporations, was to place all public service corporations under the control of the commission, but Acts 1892, c. 387, fixing telephone rates, as amended by Acts 1894, c. 207, should remain unimpaired and in force until the commission acted. | Should all public utilities be placed under the supervision and control of the Public Service Commission? | Public Utilities -Memo 122 - AM.docx | ROSS-003283839-ROSS-003283841 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 11236 | Loyal Order of Moose, Lodge 1785 v. Cavaness, 1977 OK 70 | 13+61 | The Oklahoma statute of limitations of 12 O.S.1971 s 95 provides: "Civil actions . . . can only be brought within the following periods, after the cause of action Shall have accrued." Generally a cause of action accrues at the moment the party owning it has a legal right to sue. 109 may bar A right of action before it accrues or even arises; discovery of damage or injury from a defect is immaterial. A true statute of limitations works on the Remedy rather than the Right and governs the time within which a legal proceeding must be instituted after a Cause of action accrues. The contested statute therefore is not a true statute of limitation but rather an absolute bar to a cause of action ever arising. | Generally, cause of action accrues at moment party owning it has legal right to sue. | Does a cause of action accrue at the moment party owning it has a legal right to sue? | 006355.docx | LEGALEASE-00124326-LEGALEASE-00124327 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11237 | United States v. O'Brien, 994 F. Supp. 2d 167 | 63+1(1) | In order to prove a bribery offense under " 666, the government must prove that the bribe-giver intended to effect a quid pro quo. See Fernandez, 722 F.3d at 19; United States v. Mariano, 983 F.2d 1150, 1159 (1st Cir.1993) (noting in a " 666 case that "[t]he essential difference between a bribe and an illegal gratuity is the intention of the bribe-giver to effect a quid pro quo"); see also United States v. Ganim, 510 F.3d 134, 148 (2d Cir.2007). Although the language in " 201 and " 666 differ somewhat, it appears that both statutes require an "exchange""that is, a payment for an official act, or course of action, such as a particular vote on a particular piece of legislation. See Fernandez, 722 F.3d at 22"24; Jennings, 160 F.3d at 1019. | In order to prove a bribery offense, government must prove that the bribe giver intended to effect a quid pro quo. 18 U.S.C.A. S 666. | Must the Government present evidence of a quid pro quo to prove the payment of an illegal bribe? | 012589.docx | LEGALEASE-00124334-LEGALEASE-00124335 | Order, SA | 0.82 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11238 | Weber City Sanitation Comm'n v. Craft, 196 Va. 1140 | 268+589 | As was said by Justice Harlan in C.B. & Q.R. Co. v. Illinois, 200 U.S. 561, 26 S.Ct. 341, 349, 50 L.ed. 596:"We hold that the police power of a State embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety." | The police power embraces regulations designed to promote public convenience or general prosperity, as well as regulations designed to promote public health, public morals or public safety. | Do a State need to compensate a property owner for the effects of reasonable regulations designed to protect the public health and safety? | 017510.docx | LEGALEASE-00124556-LEGALEASE-00124557 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 11239 | Sharon v. Time, 599 F. Supp. 538 | 221+342 | Neither Sharon's alleged acts, nor the findings of the Commission, nor Israel's alleged participation in this suit constitutes an act of state within the meaning of the doctrine. With respect to the alleged actions of General Sharon by which Time claims he approved or condoned the massacre, Time does not claim that General Sharon was authorized by the State of Israel to perform such acts; to the contrary, Time has alleged throughout the litigation that Sharon went beyond his authority in the campaign in Lebanon and intentionally misled Prime Minister Begin and the Cabinet into expanding the war. Although actions by military officers are often considered acts of state, see Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897), they are acts of state only because they are officially authorized. The actions of an official acting outside the scope of his authority as an agent of the state are simply not acts of state. In no sense are such acts designed to give effect to a State's public interests. See Restatement (Second) of Foreign Relations Law " 41 (1962). As the Second Circuit stated in Filartiga v. Pena-Irata, 630 F.2d 876, 889 (2d Cir.1980): "[W]e doubt whether action by a state official in violation of the Constitution and laws of the Republic of Paraguay, and wholly unratified by that nation's government, could properly be characterized as an act of state. | Actions of official acting outside scope of his authority as an agent of state are not acts of state within meaning of act of state doctrine. | Are actions of official acting outside the scope the authority of an agent of state are not acts of state within meaning of act of state doctrine? | 020442.docx | LEGALEASE-00125213-LEGALEASE-00125215 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 11240 | DeRoburt v. Gannett Co., 733 F.2d 701 | 221+342 | The act of state doctrine, however, is not an "inflexible and all encompassing rule." Sabbatino, supra, 376 U.S. at 428, 84 S.Ct. at 940. Rather, it is a balancing test with the critical element being the potential for interference with our foreign relations. See Timberlane, supra, 549 F.2d at 607. As such, the courts should seek to avoid passing on the validity of foreign acts and similarly abstain from "challeng[ing] .. the wisdom of its policy, or the integrity and motivation of its action." Id. at 607. | Act of state doctrine is balancing test with critical element being potential for interference with foreign relations. | Is the act of state doctrine a balancing test with a critical element being potential for interference with foreign relations? | International Law - Memo # 562 - C - SA.docx | ROSS-003297463-ROSS-003297464 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 11241 | Tucker v. Interarms, 186 F.R.D. 450 | 313+62 | Moreover, as suggested in Kreimerman itself, principles of international comity impact the requirements for service of process. The doctrine of international comity teaches that, when possible, foreign law "should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations." Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 937 (D.C.Cir.1984). By giving effect to Brazil's apparent preference that letters rogatory be used to effectuate service of process, "[t]he interests of both forums are advanced"the foreign [state] because its laws and policies have been vindicated; the domestic country because international cooperation and ties have been strengthened. The rule of law is also encouraged, which benefits all nations." Id. | Principles of international comity impact requirements for service of process where one of defendants is domiciled in foreign country. | Do principles of international comity impact requirements for service of process where one of the defendants is domiciled in a foreign country? | International Law - Memo 345 - SB.docx | ROSS-003310748-ROSS-003310749 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 11242 | Airline Pilots Ass'n, Int'l, AFL-CIO v. Taca Int'l Airlines, S.A., 748 F.2d 965 | 221+342 | Under the act of state doctrine our courts will not question the validity of the actions of foreign governments within their own borders. The doctrine was elucidated in Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897): Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.The act of state doctrine is not mandated by international law or the Constitution. The doctrine does, however, rest on " "constitutional" underpinnings." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 938, 11 L.Ed.2d 804 (1964). The purpose of the doctrine is to avoid judicial interference with the role of the executive branch in international affairs. As we noted in Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1380 (5th Cir.1980). | Under act of state doctrine, courts will not question the validity of actions of foreign governments within their own borders. | Will US courts question the validity of actions of foreign governments within their own borders? | International Law - Memo 611 - TH.docx | ROSS-003314674-ROSS-003314675 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 11243 | Duci v. Daily Gazette Co., 102 A.D.2d 940 | 237+123(2) | Although the chief concern on a motion under CPLR 3211 (subd. [a], par. 7) is whether the pleading itself states a cause of action rather than the ultimate determination of the facts (see Stukuls v. State of New York, 42 N.Y.2d 272, 397 N.Y.S.2d 740, 366 N.E.2d 829; Rovello v. Orofino Realty Co., 40 N.Y.2d 633, 389 N.Y.S.2d 314, 357 N.E.2d 970), we, nevertheless, conclude that the complaint herein is insufficient in law and, accordingly, reverse Special Term. In determining whether a published article is libelous, it is the role of the court to decide, as a matter of law, whether the words complained of are susceptible of the defamatory meaning ascribed to them (James v. Gannett Co., 40 N.Y.2d 415, 386 N.Y.S.2d 871, 353 N.E.2d 834). The instant alleged libel action involves not only a public official, but a matter of public interest as well. | In determining whether published article is libelous, it is role of court to decide, as matter of law, whether words complained of are susceptible of defamatory meaning ascribed to them. | How is it determined if an article is libelous per se? | 021104.docx | LEGALEASE-00125475-LEGALEASE-00125476 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11244 | Cortiza v. Rosenblat, 291 So.2d 425 | 289+701 | Whether the partnership is ordinary or commercial depends on the intention of the parties and the nature of the business conducted by it. Since a commercial partnership is exclusively confined to dealing in movables, it has been held that a partnership which has as its purpose the sale or rental of immovable property is by nature an ordinary partnership. Rosenblat and Fuksman were engaged in a partnership dedicated exclusively to the purchase and rental of immovable property. As such a partnership is regarded judicially as ordinary rather than commercial in nature, the trial court's judgment must be amended to limit the liability of Rosenblat to his virile share of the partnership debt. | Since a commercial partnership is exclusively confined to dealing in movables, a partnership which has as its purpose the sale or rental of immovable property is by nature an ordinary partnership and its partners are not bound in solido for debts of partnership. LSA-C.C. arts. 2872, 2873. | Are commercial partnerships confined to movable property? | 021875.docx | LEGALEASE-00124854-LEGALEASE-00124855 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 11245 | State Farm Mut. Auto. Ins. Co. v. Berg, 70 Or. App. 410 | 307A+1 | Berg's argument has validity. A fundamental purpose of ORCP 21 is to curb the excessive use of motions for purposes of harassment and delay, and litigants should not be permitted to disregard its provisions with impunity. In the furtherance of judicial economy, however, we are reluctant to use ORCP 21F as the basis for reversal of the judgment. To do so would require a remand of this entire action, because all claims then would not be adjudicated. See ORCP 67B. This is not a case in which State Farm has waived all right to raise the defense contained in the motion to dismiss by its failure to consolidate it with the motion to strike. If the trial court had denied the motion to dismiss, State Farm could have reasserted that defense by a motion for judgment on the pleadings or at trial under ORCP 21G(3). | Fundamental purpose of rule governing pretrial motions is to curb the excessive use of motions for purposes of harassment and delay, and litigants should not be permitted to disregard its provisions with impunity. Rules Civ.Proc., Rules 21, 21, subds. F, G(3). | What is the fundamental purpose of the rule governing pretrial motion? | 024293.docx | LEGALEASE-00124861-LEGALEASE-00124862 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 11246 | Junkins v. Branstad, 448 N.W.2d 480 | 307A+2 | Application for Adjudication of Law Points and Motion for Summary Judgment. An application for adjudication of law points and a motion for summary judgment are appropriate only when the issue in question should be decided by the court as a matter of law rather than presented to the factfinder. Kriv v. Northwestern Sec. Co., 237 Iowa 1189, 1195, 24 N.W.2d 751, 754 (1946). At issue in this case is whether Senate File 570 should be considered an appropriation bill so to make it subject to the governor's item veto power. | Application for adjudication of law points and motion for summary judgment are appropriate only when issue in question should be decided by court as matter of law rather than presented to fact finder. | When is the motion for summary judgment appropriate? | Pretrial Procedure - Memo # 600 - C - SSB.docx | ROSS-003312047-ROSS-003312048 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 11247 | Oliver v. Martin, 460 A.2d 594 | 307A+1 | First, Martin objects to being defaulted. Maine Rule of Civil Procedure 16 generally requires a party to file a responsive pre-trial memorandum within 20 days after service of the other party's pre-trial memorandum. Failure to file a responsive pre-trial memorandum is grounds for the imposition of sanctions, including default, M.R.Civ.P. 16(a)(1), and such imposition of a default is reviewable only for abuse of discretion. Reeves v. Travelers Insurance Co., 421 A.2d 47, 48n.2 & 49-50 (Me.1980); see Sheepscot Land Corp. v. Gregory, 383 A.2d 16, 20 (Me.1978). | Failure to file responsive pretrial memorandum is grounds for imposition of sanctions, including default, and such imposition of default is reviewable only for abuse of discretion. Rules Civ.Proc., Rule 16(a)(1). | Is failure to file a responsive pre-trial memorandum grounds for imposition of sanctions? | 031242.docx | LEGALEASE-00125315-LEGALEASE-00125316 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 11248 | Reese v. Proppe, 3 Ohio App. 3d 103 | 307A+1 | The record in this case reveals that the court never journalized a date certain on which trial would commence. The last entry relative to trial set the case for trial the "week of 1-21-80." This entry merely indicated a general period of time during which trial would commence, but did not notify appellant or her counsel of any specific trial date on which an appearance would be required. Absent the setting of a specific trial date by journal entry, no sanction may be imposed upon a litigant for failure to appear at trial. Similarly, since the trial memorandum was to be submitted seven days prior to the trial date, because no specific trial date was set and journalized, appellant was uninformed of the date by which the trial memorandum was actually due. Therefore no sanction could be imposed for appellant's failure to submit a trial memorandum. | No sanction could be imposed for defendant's failure to submit a trial memorandum, which was ordered to be submitted seven days prior to trial date, where court never journalized a date certain on which trial would commence. | Could a sanction be imposed for the failure to submit a trial memorandum? | 031529.docx | LEGALEASE-00124840-LEGALEASE-00124841 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 11249 | Chacon v. Jones-Schilds, 904 N.E.2d 286 | 307A+3 | The granting or denying of a motion in limine is within the sound discretion of the trial court. Perry v. Gulf Stream Coach, Inc., 871 N.E.2d 1038, 1047 (Ind.Ct.App.2007)."The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence." Id.We will not reverse the trial court's decision to admit evidence absent an abuse of discretion. Safe Auto Ins. Co. v. Am. Family Mut. Ins. Co., 890 N.E.2d 737, 741 (Ind.Ct.App.2008). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court or it misinterprets the law. | The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | Is the granting or denying of a motion in limine within the sound discretion of the trial court as an adjunct of the trial courts inherent power? | 036716.docx | LEGALEASE-00125464-LEGALEASE-00125465 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11250 | Chacon v. Jones-Schilds, 904 N.E.2d 286 | 307A+3 | The granting or denying of a motion in limine is within the sound discretion of the trial court. Perry v. Gulf Stream Coach, Inc., 871 N.E.2d 1038, 1047 (Ind.Ct.App.2007). "The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence." Id. We will not reverse the trial court's decision to admit evidence absent an abuse of discretion. Safe Auto Ins. Co. v. Am. Family Mut. Ins. Co., 890 N.E.2d 737, 741 (Ind.Ct.App.2008). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court or it misinterprets the law. Id. | The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. | Is the granting of a motion in limine an adjunct of the inherent power of trial courts which will not be reversed absent an abuse of discretion? | Pretrial Procedure - Memo # 820 - C - KA.docx | ROSS-003287571-ROSS-003287572 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11251 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | In addition to the Hyundai defendants' failure to renew their objections to the evidence they now insist was erroneously introduced, there is an even more basic reason to uphold the trial court's denial of the Hyundai defendants' motion in limine. A motion in limine is not the proper vehicle to use to attempt to preclude a claim or defense. It is not equivalent to or a substitute for a motion to dismiss or a motion for summary judgment. | A motion in limine is not the proper vehicle by which to attempt to preclude a claim or defense; it is not equivalent to, or a substitute for, a motion to dismiss or a motion for summary judgment. | Should a motion in limine be used as a vehicle to preclude a claim or defense? | 036762.docx | LEGALEASE-00125489-LEGALEASE-00125490 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11252 | Castaneda v. Texas Dep't of Protective & Regulatory Servs., 148 S.W.3d 509 | 30+4179 | A motion in limine is designed solely to require an offering party to approach the bench and inquire into the admissibility of the evidence at issue before introducing that evidence to the jury. See Hartford Accident & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex.1963); Trevino v. Texas Department of Protective and Regulatory Services, 893 S.W.2d 243, 249 (Tex.App.-Austin 1995, no writ). The grant or denial of a motion in limine has no bearing on the ultimate admissibility of the evidence and is never reversible error. Trevino, 893 S.W.2d at 249. Thus, the error, if any, relates to the discussion of this evidence during voir dire. | The grant or denial of a motion in limine has no bearing on the ultimate admissibility of the evidence and is never reversible error. | Does the grant or denial of a motion in limine have any bearing on the ultimate admissibility of the evidence? | Pretrial Procedure - Memo # 917 - C - TJ.docx | ROSS-003301672-ROSS-003301673 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11253 | Stoehr v. Natatorium Co., 34 Idaho 217 | 317A+111 | It was said in Allen v. Railroad Commission, supra, 179 Cal. at page 85, 175 Pac. at page 473, 8 A. L. R. at page 259, that: "To hold that property has been dedicated to a public use is 'not a trivial thing' (San Francisco v. Grote, 120 Cal. 60, 41 L. R. A. 335, 65 Am. St. Rep. 155, 52 Pac. 127), and such dedication is never presumed 'without evidence of unequivocal intention' (Niles v. Los Angeles, 125 Cal. 572, 58 Pac. 190)." | Dedication of the property of a corporation to public use is never presumed without evidence of unequivocal intention. | Is the dedication of the property of a corporation to public use presumed without evidence of unequivocal intention? | Public Utilities - Memo 153 - AM.docx | ROSS-003300169-ROSS-003300172 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 11254 | Wilhite v. Schendle, 92 F.3d 372 | 366+1 | As an alternative theory of recovery, Wilhite argues that if the obligation is "joint and divisible," Wilhite should still be able to recover through the theory of subrogation, or the substitution of one person for the rights of another. Under Louisiana law, subrogation may occur either by "conventional" or "legal" means. "Conventional" subrogation occurs when an obligee receives performance from a third person and in express terms subrogates that person to the rights of the obligee, even without the obligor's consent. "Legal" subrogation takes place by operation of law in favor of an obligor who pays a debt he owes with others and who has recourse against those others as a result of the payment. | Under Louisiana law, "conventional subrogation" occurs when obligee receives performance from third person and in express terms subrogates that person to rights of obligee, even without obligor's consent; "legal subrogation" takes place by operation of law in favor of obligor who pays debt he owes with others and who has recourse against those others as result of the payment. LSA-C.C. arts. 1825, 1827, 1829. | When does subrogation take place as a matter of law? | 044279.docx | LEGALEASE-00124623-LEGALEASE-00124624 | SA, Sub | 0.41 | 0 | 0 | 1 | 1 | |
| 11255 | Chase v. Ameriquest Mortg. Co., 155 N.H. 19 | 366+1 | Equitable subrogation, in particular, is a broad doctrine, which is given liberal application. Id. " 5. "It applies where one who has discharged the debt of another may, under certain circumstances, succeed to the rights and position of the satisfied creditor." Id. In order for equitable subrogation to apply, we hold that all of the following conditions must be met: (1) the subrogee cannot have acted as a volunteer; (2) the subrogee must have paid a debt upon which it was not primarily liable; (3) the subrogee must have paid the entire debt; and (4) subrogation may not work any injustice to the rights of others. See id. Although the trial court held that equitable subrogation required satisfaction of a fifth element, namely, that payment by the subrogee have been made to protect its own interest, we conclude that the definition of "volunteer," set forth below, adequately takes this consideration into account. Therefore, inclusion of this fifth element in the test for equitable subrogation is unnecessary. | Equitable subrogation applies where one who has discharged the debt of another may, under certain circumstances, succeed to the rights and position of the satisfied creditor. | When does subrogation or equitable subrogation apply to a debt? | 044290.docx | LEGALEASE-00124715-LEGALEASE-00124716 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11256 | Suffolk Const. Co. v. Benchmark Mech. Sys., 475 Mass. 150 | 366+32 | Implied "[s]ubrogation is an equitable adjustment of rights that operates when a creditor ... is entitled to recover from two sources, one of which bears a primary legal responsibility. If the secondary source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the creditor, ... called the subrogor) against the third, primarily responsible party." (Emphases added.) Frost v. Porter Leasing Corp., 386 Mass. 425, 426"427, 436 N.E.2d 387 (1982). The underlying principle of implied subrogation is to prevent an unwarranted windfall, something disfavored in the law. Id. at 428. | "Implied subrogation" is an equitable adjustment of rights that operates when a creditor is entitled to recover from two sources, one of which bears a primary legal responsibility; if the secondary source, the subrogee, pays the obligation, it succeeds to the rights of the party it has paid, the subrogor, against the third, primarily responsible party. | Is implied subrogation an equitable adjustment? | 044314.docx | LEGALEASE-00124872-LEGALEASE-00124873 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |
| 11257 | XL Specialty Ins. Co. v. Com., Dep't of Transp., 47 Va. App. 424 | 366+1 | When statutory language abrogating sovereign immunity in other instances is compared with Code " 33.1"192.1, it is clear that there is no waiver of sovereign immunity in the instant case where the claim is not based on a direct contract between the Commonwealth and the claimant but is rather equitable in nature. "The right of subrogation is not founded on contract. It is a creation of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties." Aetna Life Insurance Co. v. Middleport, 124 U.S. 534, 550, 8 S.Ct. 625, 630, 31 L.Ed. 537 (1888) (citation omitted).Code " 2.2"4364(E) grants a right: "a contractor may bring an action." (Emphasis added). The Virginia Tort Claims Act proclaims the liability of the Commonwealth: "the Commonwealth shall be liable for claims." Code " 8.01"195.3 (emphasis added). Administrative agencies are subject to suit in particular circumstances: "[a]ny person affected by and claiming the unlawfulness of any regulation ... shall have a right to the direct review thereof by an appropriate and timely court action." Code " 2.2"4026 (emphasis added). On the other hand, Code " 33.1"192.1 simply describes a procedure that must be followed: "[n]o suit or action shall be brought ... unless the claimant shall have exhausted the review process provided by " 33.1"386." | The right of subrogation is not founded on contract; it is a creation of equity, is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | Is equitable subrogation administered in the furtherance of justice? | 044322.docx | LEGALEASE-00125032-LEGALEASE-00125034 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11258 | Washington Mut. Bank v. Chiappetta, 584 F. Supp. 2d 961 | 366+1 | WaMu's fallback argument is that Infinity and ODOT will be unjustly enriched. However, state law does not appear to make a distinction between unjust enrichment and equitable subrogation. Unjust enrichment under state law is part of the doctrine of equitable subrogation, not a separate doctrine.Equitable subrogation has been described as a theory of unjust enrichment, preventing parties from receiving that to which they are not entitled. Williams v. Erie Ins. Group (1993), 86 Ohio App.3d 660, 665, 621 N.E.2d 770, 772"773. The right to equitable subrogation depends upon the facts and circumstances of each case, and the basis for the claim must be readily apparent. Jones, supra, 61 Ohio St.2d at 102, 15 O.O.3d at 133"134, 399 N.E.2d at 1217"1218.State Sav. Bank v. Gunther, 127 Ohio App.3d 338, 346, 713 N.E.2d 7, 13 (Ohio App. 3 Dist.,1998). | Under Ohio law, the right to equitable subrogation depends upon the facts and circumstances of each case, and the basis for the claim must be readily apparent. | Does the doctrine of equitable subrogation depend upon facts? | Subrogation - Memo 977 - C- CAT.docx | ROSS-003311871-ROSS-003311872 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11259 | Coserv Liab. Corp. v. Sw. Bell Tel. Co., 350 F.3d 482 | 25T+125 | Thus, compulsory arbitration under " 252 begins with a request by a CLEC to negotiate with an ILEC regarding its obligations under " 251. An ILEC is required by the Act to negotiate about those duties listed in " 251(b) and (c). During negotiations, however, the parties are free to make any agreement they want without regard to the requirements of " 251(b) and (c). To that extent, the parties are free to include interconnection issues that are not listed in " 251(b) and (c) in their negotiations. If the voluntary negotiations result in only a partial agreement, or in no agreement at all, either party can petition for compulsory arbitration of any open issue. | If voluntary negotiations between competitive local exchange carrier (CLEC) and incumbent local exchange carrier (ILEC) regarding ILEC's obligations under the Telecommunications Act result in only a partial agreement, or in no agreement at all, either party can petition for compulsory arbitration of any open issue. Communications Act of 1934, SS 251, 252, as amended, 47 U.S.C.A. SS 251, 252. | When can a party petition for compulsory arbitration of any open issue? | 007144.docx | LEGALEASE-00125644-LEGALEASE-00125645 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 11260 | Stewart v. Citizens & S. Nat. Bank, 138 Ga. App. 209 | 8.30E+27 | While a check is merely an order upon a bank to pay from the drawer's account, it may be revoked at any time by the drawer before it has been certified, accepted, or paid by the bank, and may be revoked by operation of law upon the death of the drawer. See Aiken Bag Corporation v. McLeod,Bank of Hamilton v. Williams, see also Code Ann. s 109A-4-405; Lambeth v. Lewis, 114 Ga.App. 191, 150 S.E.2d 462. | Check is merely an order on bank to pay from drawer's account, and may be revoked at any time by the drawer before it has been certified, accepted, or paid by the bank, and may be revoked by operation of the law on the death of the drawer. Code, S 109A-4-405. | Can a check be revoked at anytime by the drawer? | Bills and Notes - Memo 37 - DB.docx | ROSS-003284471-ROSS-003284472 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |
| 11261 | King v. Richmond Cty., Ga., 331 F.3d 1271 | 79+1 | Applying this approach to the present case, Appellees have articulated a plausible secular purpose for the design of the Seal. They claim that, in the context of authenticating legal documents, using a pictograph of the Ten Commandments intertwined with the sword helps viewers recognize the legal validity of documents. The District Court's findings support Appellees' proposed justification. The court found that during the 1870s the outline of the Ten Commandments presumably would have enabled illiterate citizens to recognize the legal validity of documents displaying the Seal. Appellees' proffered secular justification satisfies the initial burden under the purpose prong. Because there is no evidence of the purpose in adopting the Seal's design and because Appellants have not shown that the articulated secular purpose is implausible, we conclude that Appellees have satisfied the first prong of the Lemon test.Of course, this analysis applies only when there is no evidence of governmental intent for adopting a practice.When evidence shows that endorsement or promotion of religion was a primary purpose for the challenged practice, the inquiry ends, as the practice violates the Establishment Clause. See Edwards, 482 U.S. at 585, 107 S.Ct. 2573 (holding that Louisiana's Balanced Treatment for Creation"Science and Evolution"Science in Public School Instruction Act was unconstitutional because the act's primary purpose was the promotion of a particular religious belief); Wallace v. Jaffree, 472 U.S. 38, 57"59, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (holding that Alabama's moment-of-silence statute was unconstitutional because legislative history showed that the statute's primary purpose was to promote prayer and religion) | In absence of evidence of original purpose in adopting design of superior court clerk's seal which included a sword and an outline of stone tablets representing the Ten Commandments, state's proffered secular justification that, in the context of authenticating legal documents, using a pictograph of the Ten Commandments intertwined with the sword helped viewers, many of whom were illiterate at the time the seal was adopted, recognize the legal validity of documents, was plausible and therefore satisfied the secular purpose prong of the Lemon test for determining whether a governmental practice violates the Establishment Clause. U.S.C.A. Const.Amend. 1. | Does an outline of the Ten Commandments enable illiterate citizens to recognize the legal validity of documents displaying the seal? | 013394.docx | LEGALEASE-00125723-LEGALEASE-00125724 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 11262 | Lewis v. Smith, 198 Ark. 244 | 79+2 | We hold that county clerks, as ex-officio clerks of the probate court, continue as such under Constitutional Amendment 24 (see Acts 1937, p. 1400), until otherwise provided by the General Assembly. | Under constitutional amendment providing that the county clerk shall be ex-officio clerk of the probate court, unless otherwise provided by the General Assembly, county clerks continue as ex-officio clerks of the probate court until otherwise provided by the General Assembly. Const. Amend. 24, see Acts 1937, p. 1400. | Are county clerks ex officio clerks of other courts? | 013407.docx | LEGALEASE-00125731-LEGALEASE-00125732 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 11263 | Gerawan Farming v. Kawamura, 33 Cal. 4th 1 | 92+1615 | Indeed, the effect of the Court of Appeal's holding would be to conclude that a government interest becomes unimportant or less important when decisions about how to accomplish that interest are delegated to those most affected by those decisions. Not only is there no authority for that position, but it is inconsistent with this court's long recognition of the legitimacy of such delegation. (See Brock v. Superior Court (1937) 9 Cal.2d 291, 299, 71 P.2d 209 [predecessor of the CMA "not invalid merely because it provides for consent of interested persons to the contemplated regulation" We therefore conclude that the partial delegation of authority for the creation of generic advertising programs to agricultural producers does not by itself constitutionally invalidate such programs. Of course, the government must still show that the marketing program, as presently constituted, serves a substantial public interest and not merely private interests. | Partial delegation of authority for creation of generic advertising programs, under California Marketing Act (CMA), to agricultural producers does not by itself constitutionally invalidate such programs as interference with dissenting growers' free speech rights; that program must be approved by majority of producers does not preclude finding of valid governmental interest. U.S.C.A. Const.Amend. 1; West's Ann.Cal. Const. Art. 1, S 2(a); West's Ann.Cal.Food & Agric.Code S 58601 et seq. | Whether the partial delegation of authority by itself constitutionally invalidates generic advertising programs? | Agriculture - Memo 16- SB.docx | ROSS-003289982-ROSS-003289983 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 11264 | Kaley v. Musgrave, 26 Ill. App. 509 | 13+61 | Conceding the presumption to be that a note sued on, offered in evidence at the trial, indorsed by the payee, was assigned before its maturity, for a valuable consideration, to the plaintiff in this case, such presumption is overcome by the proof of the facts mentioned. Holderman was examined as a witness for plaintiff, and when asked, on cross-examination, whether he ever sold or transferred the note to Kaley or anyone else, was not permitted to answer, but an objection to the question as not proper cross-examination was sustained, and no attempt was made on behalf of plaintiff to show when the assignment to Kaley was in fact made, but the jury were left without evidence that shed light on the transaction other than that furnished by defendants, and were justified in finding from it, the assignment, if made at all, was not made to plaintiff until after the commencement of the suit, and hence he had not at that time a right of action against defendants. It would be superfluous to cite authorities in support of the proposition that a plaintiff must have a right of action against defendants at the time he commences suit, to entitle him to recover. The verdict of the jury was right, and was supported by the evidence. In the view we take of the case it is unnecessary to discuss or pass on the rulings of the court below objected to by appellant and assigned for error. The judgment of the County Court is affirmed. | A plaintiff must have a right of action against defendant at the time he commences suit to entitle him to recover. | Should a plaintiff have a right of action against defendant at the time he commences suit to entitle him to recover? | 005340.docx | LEGALEASE-00126084-LEGALEASE-00126085 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11265 | Hart v. Guardian Tr. Co., 75 N.E.2d 570 | 13+61 | The cardinal rule of damages is full compensation to the injured party. This includes consequential damages, if such damages are direct, not remote or speculative, and are properly pleaded. Consequential damages usually arise after the original injury or loss is sustained, but no new cause of action arises when such consequential damage accrues. | Consequential damages usually arise after original injury or losses sustained, but no new cause of action arises when such consequential damages accrue. | Does consequential damage arise after the original injury or sustaining loss? | Action- memo # - PC335.docx | ROSS-003316975 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 11266 | Casey v. United States, 8 Cl. Ct. 234 | 34+2 | It is clear, however, that regulations that are promulgated by the Army must be in accord with those promulgated by the Department of Defense. Simmons v. Brown, supra, 497 F.Supp. at 178. To the extent that Army regulations conflict with those of the Department of Defense, the service regulations must give way. | Army regulations must be in accordance with those promulgated by the Department of Defense, and to extent that Army regulations conflict with those of DOD, the service regulations must give way. 10 U.S.C.A. S 1169. | Does a service regulation give way when it conflicts with a Department of Defense regulation? | 008853.docx | LEGALEASE-00126292-LEGALEASE-00126293 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 11267 | United States v. Synowiec, 333 F.3d 786 | 63+1(1) | Synowiec's view of what is necessary for an "offer" under the bribery statute is too rigid and formalistic. It is not necessary for a briber to be familiar with Williston on Contracts in order to make an illegal offer. Under the statute, it is sufficient if a "defendant expresses an ability and a desire to pay the bribe." United States v. Rasco, 853 F.2d 501, 505 (7th Cir.1988). This can be done in the often clandestine atmosphere of corruption with a simple wink and a nod if the surrounding circumstances make it clear that something of value will pass to a public official if he takes improper, or withholds proper, action. And we think Synowiec's actions and statements, both on February 24 and in the earlier discussion when he rubbed his thumb and index finger together in a universally understood gesture implying money, passes the test. The requirement that a defendant expresses "an ability and desire to pay a bribe" in order to satisfy the bribery statute is a less demanding requirement than what the civil law requires for an enforceable offer. Under Rasco, Synowiec would be guilty of offering a bribe if he told Agent Derewonko "I am willing and able to pay you to make Ms. Nieweglowska's case go away" even though that statement would not meet all the formal requirements for a binding offer under civil law. | Statute prohibiting bribery of a public official is satisfied if a defendant expresses an ability and a desire to pay the bribe. 18 U.S.C.A. S 201(b). | Is the term offer under the statute prohibiting bribery of a public official satisfied if a defendant expresses an ability and a desire to pay the bribe? | 011053.docx | LEGALEASE-00126056-LEGALEASE-00126057 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 11268 | Baxter v. Danny Nicholson, 191 N.C. App. 168 | 316P+231 | "A de jure officer is one who is regularly and lawfully elected or appointed and inducted into office and exercises the duties as his right." People ex rel. Norfleet v. Staton, 73 N.C. 546, 550 (1875). In contrast, a de facto officer is "one who goes in under color of authority...." Id. | A "de jure officer" is one who is regularly and lawfully elected or appointed and inducted into office and exercises the duties as his right; in contrast, a "de facto officer" is one who goes in under color of authority. | What is the difference between a de facto officer and a de jure officer? | 013501.docx | LEGALEASE-00126311-LEGALEASE-00126312 | Condensed, SA | 0.22 | 0 | 1 | 0 | 1 | |
| 11269 | United States v. Martinez, 599 F. Supp. 2d 784 | 221+393 | Defendant also argues that an extraterritorial application of " 2423 violates principles of international law. The Court notes initially that "international law," qua law, is not a fixed set of legal mandates or legally cognizable statutes with independent authority in United States courts. Indeed, there is no authority in international law that United States national courts must recognize, except insomuch as Congress or the President incorporates some part of it through constitutional channels into national law. See, e.g., Medellin v. Texas, 552 U.S. 491, 128 S.Ct. 1346, 1357, 170 L.Ed.2d 190 (2008) (neither decisions of the International Court of Justice nor non-self-executing treaties create domestically enforceable law); Hamdan v. Rumsfeld, 548 U.S. 557, 610, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) (applying protections recognized by customary international law only as they have been adopted and incorporated into federal law), superseded by statute on other grounds as stated in Boumediene v. Bush, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008); see also United States v. Davis, 905 F.2d 245, 248 (9th Cir.1990) ( "International law principles, standing on their own, do not create substantive rights or affirmative defenses for litigants in United States courts."). Moreover, "[i]n enacting statutes, Congress is not bound by international law.... If it chooses to do so, it may legislate with respect to conduct outside the United States, in excess of limits posed by international law." United States v. Pinto"Mejia, 720 F.2d 248, 259 (2d Cir.1983); see also Rainey v. United States, 232 U.S. 310, 316, 34 S.Ct. 429, 58 L.Ed. 617 (1914). Nevertheless, when "determining whether a statute applies extraterritorially, [courts] presume that Congress did not intend to violate principles of international law." United States v. Vasquez"Velasco, 15 F.3d 833, 839 (9th Cir.1994) (citing McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 21"22, 83 | When determining whether a statute applies extraterritorially, courts presume that Congress did not intend to violate principles of international law. | Does the extraterritorial application of a statute violate principles of international law? | 020587.docx | LEGALEASE-00126018-LEGALEASE-00126019 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 11270 | Gordon v. Dino De Laurentiis Corp., 141 A.D.2d 435 | 95+337(2) | The first cause of action alleges a breach of the confidentiality agreement and seeks damages in the amount of $35 million, apparently representing the lost opportunity of obtaining Embassy. The amended complaint alleges in boilerplate fashion that defendant disclosed confidential information to Coca-Cola and that as a consequence plaintiffs were damaged in the sum of $35 million. These vague and conclusory allegations are insufficient to sustain a breach of contract cause of action. Plaintiffs have not identified any confidential information imparted to defendant other than the specifics of their prior proposal to Coca-Cola and the financial due diligence with respect to Embassy. This information cannot be classified as confidential or secret since it was already in Coca-Cola's possession before plaintiffs disclosed it to defendant. Moreover, the complaint is fatally deficient because it does not demonstrate how the defendant's alleged breach of the confidentiality agreement caused plaintiffs any injury. The complaint contains only boilerplate allegations of damage. In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint, and the pleadings must set forth facts showing the damage upon which the action is based. (E.g., 4 Carmody-Wait 2d " 29:25; Ryan Ready Mixed Concrete v. Coons, 25 A.D.2d 530, 267 N.Y.S.2d 627; Reade v. Sullivan, 259 A.D. 229, 18 N.Y.S.2d 841.) Since the plaintiffs' first cause of action is deficient in this regard, it must be dismissed. | Allegations by group of investors who had sought to acquire corporation's subsidiary, that successful purchaser disclosed confidential information to corporation in violation of agreement investors and purchaser had entered when unsuccessfully attempting to form joint venture, and that investors were damaged in sum of $35 million as result, were insufficient to sustain breach of contract cause of action; investors did not identify any confidential information imparted to successful purchaser other than specifics of prior proposal to corporation and financial due diligence with respect to subsidiary, and such information was already in corporation's possession before investors disclosed it to successful purchaser. | Are vague and conclusory allegations sufficient to sustain a breach of contract cause of action? | Pleading - Memo 172 - RMM.docx | ROSS-003286640-ROSS-003286641 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11271 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | In addition to the Hyundai defendants' failure to renew their objections to the evidence they now insist was erroneously introduced, there is an even more basic reason to uphold the trial court's denial of the Hyundai defendants' motion in limine. A motion in limine is not the proper vehicle to use to attempt to preclude a claim or defense. It is notequivalent to or a substitute for a motion to dismiss or a motion for summary judgment. | A motion in limine is not the proper vehicle by which to attempt to preclude a claim or defense; it is not equivalent to, or a substitute for, a motion to dismiss or a motion for summary judgment. | Should a motion in limine not be used as a vehicle to preclude a claim or defense? | Pretrial Procedure - Memo # 879 - C - KA.docx | ROSS-003299658-ROSS-003299659 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 11272 | Seely v. State, 191 So. 2d 78 | 352H+100(1) | The final argument proposed by appellant is that the evidence is insufficient to sustain the verdict. "* * * The gravamen of the crime of assault with intent to commit rape is that the intent of the accused was to consummate the act regardless of resistance and want of consent. * * * " Manning v. State, 93 So.2d 716 (Fla.1957). The Manning case, supra, is similar to the instant case, and, while appellant asserts there was no evidence of the use of any unusual physical force, it is clear from the decision in Manning that such force is not a necessary element if the intent of the accused was to consummate the act regardless of resistance. Furthermore, one may be guilty of assault to commit rape even though the female who first resists subsequently gives her consent and intercourse is achieved.Gadsden v. State, 77 Fla. 627, 82 So. 50 (1919); Manning v. State, supra. | "Assault with intent to commit rape" may be committed even though female who at first resists subsequently gives her consent and intercourse is achieved. | Will it become assault to commit rape if the victim consented after resistance? | 042930.docx | LEGALEASE-00126242-LEGALEASE-00126243 | Order, SA, Sub | 0.82 | 1 | 0 | 1 | 1 | 1 |
| 11273 | In re Vertis Holdings, 536 B.R. 589 | 386+6 | Defendants are correct in stating that generally, under New Jersey law, a cognizable claim for trespass exists "when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it." Defendants are also correct in asserting that Plaintiff failed to plead that is has been deprived of tangible property. | Generally, under New Jersey law, a cognizable claim for trespass exists when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it. | When does a cognizable claim for trespass occur? | Trespass - Memo 151 - RK.docx | ROSS-003326874-ROSS-003326875 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 11274 | Nationwide Mut. Ins. Co. v. Marcinko, 436 N.E.2d 551 | 13+61 | A cause of action does not "accrue" until suit may be legally instituted upon it, that is, when it becomes immediately enforceable. That principle hardly requires case authority. And the essential elements for contribution in a tort action are a common liability of joint tort-feasors to an injured party and payment by one of the tort-feasors of more than his share of that liability. And in Minnesota, the common liability requirement is subject to modification if necessary to achieve an equitable result. See Hart v. Cessna Aircraft Co., 276 N.W.2d 166 (Minn.1979). Note that Ohio's very statutes on contribution urge adjustment. | A cause of action does not "accrue" until suit may be legally instituted upon it, that is, when it becomes immediately enforceable. | Does a cause of action accrue until suit may be legally instituted upon it? | 005466.docx | LEGALEASE-00126340-LEGALEASE-00126341 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11275 | In re Cantu, 784 F.3d 253 | 13+61 | We now turn to the more difficult task in this case: applying the accrual approach. "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." In re Swift, 129 F.3d at 795 (quoting Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 721 (1946)); see also Apex Towing Co. v. Tolin, 41 S.W.3d 118 (Tex.2001) (explaining that a claim accrues "when facts have come into existence that authorize a claimant to seek a judicial remedy"). | Cause of action accrues when there is a right to institute and maintain suit; whenever one person may sue another, a cause of action has accrued. | Does a cause of action accrue when right to maintain suit arises? | 005699.docx | LEGALEASE-00126454-LEGALEASE-00126455 | Order, SA, Sub | 0.74 | 1 | 0 | 1 | 1 | 1 |
| 11276 | Kleinwort v. Klingender, 14 La. Ann. 96 | 13+61 | It appears that the objection is well taken. Mere insolvency is not sufficient to render a debt due, which, by its terms, is payable at a future day. An actual surrender, voluntary or forced, is required to annihilate the term fixed by the contract for the payment of a debt. C. C. 2049; Millaudon v. Foucher, 8 L. R. 582: Funes v. Bank U. S. 10 Rob. 533. | Mere insolvency is not sufficient to render a debt due which by its terms is payable at a future day. | Is insolvency sufficient to render a debt due which by its terms is payable at a future day? | 006349.docx | LEGALEASE-00126479-LEGALEASE-00126480 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 11277 | Bame v. City of Del Mar, 86 Cal. App. 4th 1346 | 268+592(1) | In determining whether the District's contractors are exempt from local regulations under the doctrine of sovereign immunity, the relevant inquiry is whether the District acts within its governmental capacity in contracting with these entities. The City's "home rule" authority is not pertinent to this analysis. (Hall v. City of Taft (1956) 47 Cal.2d 177, 183, 302 P.2d 574; Laidlaw, supra, 43 Cal.App.4th at p. 638, 50 Cal.Rptr.2d 824.) "State agencies ... enjoy immunity from local regulation unless the state, through statute or provision of the California Constitution, has consented to waive such immunity. [Citation.] ... "Because the "state's immunity from local regulations is merely an extension of the concept of sovereign immunity" [citation], the consent to waive the immunity must be stated in "express words" [citation] in a statute [citation]." [Citation.]" (Laidlaw, supra, 43 Cal.App.4th at p. 635, 50 Cal.Rptr.2d 824.) The issue of sovereign immunity is distinct from that of preemption. As this court explained in Laidlaw, "state agencies are indeed immune from ... local regulation absent an express legislative or constitutional waiver of that immunity. Since the question is one of immunity, not preemption, it makes no difference whether the local governmental entity is a charter city as opposed to some other form of local government. The sovereign immunity of a state agency from local regulation does not depend upon the source of the local governmental entity's authority to make regulations, it depends upon whether consent to regulation has been expressly stated by the Legislature or in the state Constitution." (Id. at p. 638"639, 50 Cal.Rptr.2d 824.) | State agencies enjoy immunity from local regulation unless the state, through statute or provision of the California Constitution, has consented to waive such immunity; consent to waive the immunity must be stated in express words in a statute. | Can a state waive its right to sovereign immunity? | Agriculture - Memo 18-SB.docx | ROSS-003312817-ROSS-003312818 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11278 | Graham v. White-Phillips Co., 296 U.S. 27 | 8.30E+05 | As with other enactments, the Negotiable Instrument Law must be interpreted in view of the intended end-here, the free circulation of negotiable paper- and the meaning attributed by the courts to the language employed. | Negotiable Instrument Law must be interpreted in view of intended end, such as free circulation of negotiable paper, and meaning attributed by courts to language employed. S.H.A. ch. 98, SS 72, 76. | How should the Negotiable Instrument Law be interpreted? | Bills and Notes - Memo 105 - ANG.docx | ROSS-003312867-ROSS-003312868 | Condensed, SA | 0.1 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11279 | People ex rel. Vanderburg v. Brady, 275 Ill. 261 | 79+1 | The Civil Service Act provides for the classification of all the offices and places of employment in the state service, with certain specific exceptions, which do not include the position of the petitioner. It provides for the examination of applicants for the offices or places so classified, and for the making of a register by the civil service commission of persons eligible to appointment to the various positions in the classified service in the order of their relative excellence as determined by the examination. Whenever a position in the classified service is to be filled, the act requires the appointment of the person standing highest on this register, except in the case of laborers. The civil service commission, by the making of the list and its certification to the appointing officer, thus names the person appointed to each place in the classified service of the state. The Constitution provides for the election of a clerk of the Supreme Court. A clerk of a court is an officer of the court who has charge of the clerical part of its business and keeps its records and seal, issues process, enters judgments and orders, makes certified copies from the record, etc. Such an officer manifestly belongs to the judicial department of the state. He has no duties in connection with the legislative or executive department. It is therefore insisted that to make the appointment or removal of the deputy of such an officer dependent on the action of an officer in the executive department is an encroachment upon the power properly belonging to the judicial department. | "Clerk of court" is officer of court, belonging to judicial department of state, who has charge of clerical part of its business and keeps its records and seal, issues process, etc. | Is the clerk of a court in charge of the clerical part of the courts business? | 013481.docx | LEGALEASE-00126804-LEGALEASE-00126805 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 11280 | Hale v. Colorado River Mun. Water Dist., 818 S.W.2d 537 | 148+2.1 | Although the State may take, damage, or destroy private property for public use, it must compensate the owner for its taking of, or interference with, the property. State v. Hale, 136 Tex. 29, 146 S.W.2d 731, 736 (1941). The manner in which the State interferes with the property does not affect the owner's right to compensation, id., and compensable takings may result from burdensome governmental restrictions on property use. San Antonio River Auth. v. Garrett Brothers, 528 S.W.2d 266, 273 (Tex.Civ.App.1975, writ ref'd n.r.e.). A person's property may be "taken, damaged or destroyed," so as to invoke the constitutional requirement of compensation, by injury resulting not only from the construction of public works, but also from their subsequent maintenance and operation. Hidalgo County Water Improvement Dist. No. 2 v. Holderbaum, 11 S.W.2d 506, 507 (Tex.Comm'n App.1928, judgm't adopted). Even a temporary taking of a vested right must be compensated. San Antonio River Auth., 528 at 274. | Compensable takings may result from burdensome governmental restrictions on property use, including not only the construction of public works, but also their subsequent maintenance and operation. Vernon's Ann.Texas Const. Art. 1, S 17. | Can there be a claim of compensation if an injury results from either the construction of public works or their subsequent maintenance and operation? | Eminent Domain - Memo 279 - GP.docx | ROSS-003286545-ROSS-003286546 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 11281 | Tobias v. Pletzke, 933 F. Supp. 2d 892 | 386+6 | "The gist of trespass to personalty, also known as trespass to chattels, is an injury to, or interference with, possession, unlawfully, with or without the exercise of physical force." 2 Linda Miller Atkinson et al., Torts: Michigan Law and Practice " 13.53 (ICLE 2011 supp.) (quotation marks omitted) (quoting 22 Michigan Law and Practice 178 (1958)). | Gist of "trespass to personalty," also known as "trespass to chattels," under Michigan law, is injury to, or interference with, possession, unlawfully, with or without the exercise of physical force. | Is gist of trespass to personalty an injury to its possession? | 047269.docx | LEGALEASE-00126361-LEGALEASE-00126362 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 11282 | Echostar Satellite Corp. v. Gen. Elec. Co., 797 F. Supp. 855 | 25T+134(3) | Federal policy favors arbitration. Peterson v. Shearson/American Express Inc., 849 F.2d 464, 465 (10th Cir.1988). A claim of fraud in the inducement of the entire contract containing an arbitration clause is properly referred to arbitration pursuant to " 3 of the Federal Arbitration Act. Meyer v. Dans un Jardin, S.A., 816 F.2d 533, 538 (10th Cir.1987). However, "allegations of fraud in the inducement relating specifically to an arbitration provision may suspend application of such a provision." Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835, 837 (10th Cir.1988). A plaintiff attempting to avoid an arbitration clause on the basis of fraud must plead fraud with the specificity required by Fed.R.Civ.P. 9(b). Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953 (10th Cir.1992). Issues regarding the scope of arbitrable issues "should be resolved in favor of arbitration." Coffey v. Dean Witter Reynolds, Inc., 891 F.2d 261, 262 (10th Cir.1989) (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). | Allegations of fraud in the inducement relating specifically to arbitration provision may suspend application of provision. | Can allegations of fraud in the inducement relating specifically to an arbitration provision suspend application of such a provision? | 007229.docx | LEGALEASE-00127225-LEGALEASE-00127226 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 11283 | Nat'l Union Fire Ins. Co. Pittsburgh, Pa. v. Proskauer Rose Goetz & Mendelsohn, 165 Misc. 2d 539 | 83E+416 | A certificate of deposit is in effect a loan to a bank by the depositor for an agreed period of time at a stated rate of interest (Murray Director Affiliates v. Laventman, 70 Misc.2d 571, 334 N.Y.S.2d 192 [Civ.Ct. N.Y. County 1972] ), whereby the relation of debtor and creditor between the bank and the depositor is created (see generally, Michie on Banks and Banking, Vol 5B, " 313 et seq. [hereinafter cited as Michie ] ). The certificate of deposit, even if nonnegotiable, can be assigned (Michie, op. cit., at 385), it can also be passed by delivery without indorsement by the person to whose order it is made payable (Michie, op. cit., " 321 at 401). | Certificate of deposit, even if nonnegotiable, can be assigned and can be passed by delivery without endorsement by person to whose order it is made payable. | Can a certificate of deposit be assigned by delivery without endorsement? | 009134.docx | LEGALEASE-00126944-LEGALEASE-00126945 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11284 | United Accounts v. Dachtler, 100 N.W.2d 93 | 104+1 | A "public corporation" has been defined as one created by the State for political purposes, to act as an agency in the administration of civil government, "such as a county, city, town, or school district." Black's Law Dictionary, 3d Ed., p. 439.Not only do our statutes define "counties' as "bodies corporate for civil and political purposes," but the Legislative Assembly has construed the term "public corporation" in connection with our law on deposit of public funds. In Section 21"0401, subd. 1, North Dakota Revised Code of 1943, "public corporation" is defined as follows:"Public corporation' shall include a county, city, village, township, school district, and any body corporate except a private corporation;'This court has said that a public corporation is one created by the State for political purposes, and to act as an agency in the administration of civil government within a particular territory or subdivision of the State, such as a county, city, town, or school district. Kiner v. Well, N.D., 71 N.W.2d 743, 749; Hart v. Bye, N.D., 76 N.W.2d 139, 144; Harding v. City of Dickinson, 76 N.D. 71, 33 N.W.2d 626. | A "public corporation" is one created by the State for political purposes, to act as an agency in administration of civil government, such as a county, city, town, or school district. | What is a public corporation? | 016731.docx | LEGALEASE-00127138-LEGALEASE-00127140 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 11285 | United States of America V.S. W.H.I., and Michael and Virginia McGee, 855 F.Supp. 1207 | 200+79.2 | Abandonment is ordinarily a question of fact to be resolved by the trial court. Shively v. Board of County Comm'rs of Eagle County, 159 Colo. 353, 411 P.2d 782, 785 (1966). Whether a road has been abandoned "involves the question of intent and the acts of the public. Nonuser is not enough, unless coupled with affirmative evidence of a clear intention to abandon."" Koenig v. Gaines, 165 Colo. 371, 440 P.2d 155, 157 (1968) (quoting Sterlane v. Fleming, 236 Iowa 480, 18 N.W.2d 159, 162 (1945)). Because it is undisputed that the Road has been blocked to public use since 1960, the issue is whether the county commissioners clearly intended to abandon or vacate the Road. | Whether road has been abandoned involves question of intent and acts of public, and nonuse is not enough, unless coupled with affirmative evidence of clear intention to abandon. West's C.R.S.A. S 43-2-106. | Is intent to abandon necessary to prove abandonment of a public road? | 018680.docx | LEGALEASE-00127064-LEGALEASE-00127065 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 11286 | United States v. Best, 172 F. Supp. 2d 656 | 221+397 | Unlike cases involving forcible abduction or alleged violations of extradition treaties relied on by the United States, see, e.g., United States v. Alvarez"Machain, 504 U.S. 655, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992), the seizure of the M/V Cordeiro de Deus in the contiguous zone beyond the twelve-mile territorial sea of the United States was subject to established international law of the high seas universally recognized by all civilized nations including the United States. See United States v. Romero"Galue, 757 F.2d 1147, 1149 n. 1 (11th Cir.1985) ( "The high seas lie seaward of a nation's territorial sea, which is the band of water that extends up to [twelve miles] out from the coast. No nation may assert sovereignty over the high seas."). The contiguous zone does not expand the territorial limit of the United States. See United States v. McRary, 665 F.2d 674, 676 (5th Cir.1982) (correcting the trial judge's mistaken belief that the contiguous zone expanded the territorial limit of the United States and stating that "[the contiguous zone] is part of the high seas"). Vessels sailing on the high seas are "not subject to interference" unless the ship "(1) is engaged in piracy, slave trade, or unauthorized broadcasting; (2) is without nationality; or (3) though flying a foreign flag or refusing to show its flag, is in fact of the same nationality as the warship or law enforcement ship." RESTATEMENT " 522(2). | Seizure of vessel in the contiguous zone beyond the twelve-mile territorial sea of the United States was subject to established international law of the high seas. | Is the power of the United States over foreign vessels in the contiguous zone limited to the preservation of specific interests? | 019872.docx | LEGALEASE-00127040-LEGALEASE-00127041 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 11287 | Moseley v. City of Mountain Grove, 524 S.W.2d 444 | 302+8(9) | An allegation that plaintiffs have no adequate remedy at law is itself a mere legal conclusion and is not, standing along, a sufficient allegation of an inadequacy of a remedy at law. State ex rel. Janus v. Ferriss, 344 S.W.2d 656, 659(1) (Mo.App.1961). | An allegation, in a suit for injunction, that plaintiffs have no adequate remedy at law is itself a mere legal conclusion and is not, standing alone, a sufficient allegation of the inadequacy of a remedy at law. | Is an allegation that the plaintiffs have no adequate remedy at law a mere legal conclusion? | 023070.docx | LEGALEASE-00126896-LEGALEASE-00126897 | SA, Sub | 0.17 | 0 | 0 | 1 | 1 | |
| 11288 | State ex rel. Utilities Comm'n v. Gen. Tel. Co. of Se., 281 N.C. 318 | 92+2621 | The record does not indicate that Automatic carries on any operations in North Carolina. Furthermore, it is not a public utility within the definition contained in G.S. s 62-3(23)a. It is not the parent of or a subsidiary of General, as those terms are defined in G.S. s 55-2. Consequently, it is not brought within the definition of "public utility" by the provisions of G.S. s 62-3(23)c. Neither the Commission nor the courts may add to the types of business defined by the Legislature as public utilities. State ex rel. Utilities Commission v. Carolina Telephone & Telegraph Co., 267 N.C. 257, 268, 148 S.E.2d 100. Consequently, the Commission may not fix or control prices which Automatic charges its customers for its products. The Commission may, however, in a proper case, refuse to allow General to include in its rate base, or in its operating expenses, the full price General actually paid Automatic for equipment and supplies. | Neither the Utilities Commission nor the courts may add to the types of business defined by the legislature as public utilities. G.S. S 62-3(23)c. | Do the courts add to the types of business defined by the Legislature as public utilities? | 042436.docx | LEGALEASE-00127052-LEGALEASE-00127053 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 11289 | Citizens State Bank v. Raven Trading Partners, 786 N.W.2d 274 | 366+38 | In Minnesota, a party seeking equitable subrogation has the burden of establishing that equities weigh in the party's favor, which also requires that no injury to innocent third parties will result if subrogation is applied. See Peterson, 261 N.W.2d at 348. There is no injury to a party if the party's position remains unchanged or the party received that for which the party bargained. See, e.g., Hirleman, 193 Minn. at 58, 258 N.W. at 16 ("She bargained for and secured a second mortgage.... She has just that now. She is entitled to nothing more."); Gerdine, 41 Minn. at 421, 43 N.W. at 93 ("He had paid nothing, and his position remained unchanged."). Because Citizens is the party seeking equitable subrogation, Citizens has the burden of establishing that equities weigh in its favor. | A party seeking equitable subrogation has the burden of establishing that equities weigh in the party's favor, which also requires that no injury to innocent third parties will result if subrogation is applied; there is no injury to a party if the party's position remains unchanged or the party received that for which the party bargained. | "Who bears the burden of proving the applicability of the ""equitable subrogation"" doctrine?" | Subrogation - Memo # 988 - C - SKG.docx | LEGALEASE-00017111-LEGALEASE-00017112 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11290 | City Council of City of N. Miami Beach v. Trebor Const. Corp., 277 So. 2d 852 | 13+65 | As to the first point on appeal, we find the lower court to be correct in holding applicable the building codes, ordinances and resolutions that existed on July 17, 1969, the date of the filing of the subject lawsuit. It is well established in Florida that in a law action the right of a plaintiff to recover must be measured by the facts as they existed when the suit was instituted. Voges v. Ward, 98 Fla. 304, 123 So. 785 (1929). The same rule is applicable in equity proceedings. Meredith v. Long, 96 Fla. 719, 119 So. 114 (1928); Hasam Realty Corp. v. Dade County, Fla.App.1965, 178 So.2d 747. The above rules were reaffirmed in City of Coral Gables v. Sakolsky, Fla.App.1968, 215 So.2d 329, wherein the City of Coral Gables was ordered to issue a building permit to Sakolsky. | In law action, right of plaintiff to recover must be measured by facts as they existed when suit was instituted. | Should right of a plaintiff to recover be measured by the facts as they existed when the suit was instituted? | 005873.docx | LEGALEASE-00127392-LEGALEASE-00127393 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11291 | Don Medow Motors v. Grauman, 446 N.E.2d 651 | 30+4619 | In addressing Medow Motors' contention, this Court is bound to apply the standard of clear and convincing proof in regard to punitive damages as declared by our Supreme Court in Travelers Indemnity. Generally, enunciations of the common law through judicial opinions rendered in civil cases have retrospective as well as prospective effect, except where the enunciation would impair contracts made, or vested rights acquired, in reliance on an earlier decision. Center School Township v. State ex rel. Board of School Commissioners of the City of Indianapolis (1898), 150 Ind. 168, 173"174, 49 N.E. 961, 963; Gramm v. Armour and Company (1971), 132 Ill.App.2d 1011, 1014, 271 N.E.2d 52, 55; Cf. Gross v. Board of Commissioners of Whitley County (1902), 158 Ind. 531, 535, 64 N.E. 25, 27; Stephenson v. Boody (1894), 139 Ind. 60, 66, 38 N.E. 331, 333; Haskett v. Maxey (1893), 134 Ind. 182, 188, 33 N.E. 358, 359. In theory the law has not changed; the last judicial decision is said to have enunciated the law as it had always existed. Center School Township, supra, 150 Ind. at 173, 49 N.E. at 962"963; Stephenson, supra, 139 Ind. at 66, 38 N.E. at 333. Thus, a civil case is determined on the common law as it stands when the judgment is to be rendered and not as it stood when the suit was brought. This is the rule even where the case is pending before an intermediate court. Gramm, supra, 132 Ill.App.2d at 1014, 271 N.E.2d at 55. Therefore, the standard of clear and convincing proof applies to Grauman. | A civil case is determined on the common law as it stands when the judgment is to be rendered and not as it stood when suit was brought even where the case is pending before an intermediate court. | Is a case determined on law as it stands when judgment is rendered and not when suit is brought? | Action - Memo # 660 - C TM.docx | ROSS-003303358-ROSS-003303360 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 11292 | Walton v. Kern Cty., 39 Cal. App. 2d 32 | 13+65 | The general rule is that where an action is prematurely brought, and the original complaint must fall, a supplemental complaint has no place as a pleading. Morse v. Steele, 132 Cal. 456, 64 P. 690; Lewis v. Fox, 122 Cal. 244, 54 P. 823. Ordinarily, a plaintiff's cause of action must have arisen before the filing of the complaint and he may not recover in a cause of action arising after the suit is filed. Kirk v. Culley, 202 Cal. 501, 261 P. 994. In Bank of Italy, etc., Ass'n v. Bentley, 217 Cal. 644, 20 P.2d 940, 945, the court said: "Every complaint is predicated upon the theory that the plaintiff therein is entitled to judgment at the time of its filing." | Ordinarily, the plaintiff's cause of action must have arisen before filing of complaint, and he may not recover in a cause of action arising after suit is filed. | Must the plaintiff's cause of action have arisen before the filing of a complaint? | 005885.docx | LEGALEASE-00127502-LEGALEASE-00127503 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 11293 | Calhoun v. Edwards, 202 Ga. 95 | 13+65 | The question, therefore, arises as to whether a petition in an equity case may be amended by setting forth matters that occurred subsequently to the filing of the petition. Ordinarily the status of a suit becomes fixed at the time the action is instituted, and therefore, when there is no cause of action at the commencement of the suit, there can be no recovery, although one may accrue respecting the same subject-matter while the suit is pending. Wadley v. Jones, 55 Ga. 329(1); Deas v. Sammons, 126 Ga. 431, 55 S.E. 170, 7 Ann.Cas. 1124; Kelly v. Cherry & Ziegler, 40 Ga.App. 178, 149 S.E. 81. However, this court held in Becker v. Donalson, 133 Ga. 864(7), 67 S.E. 92, 96: "Since the adoption of the uniform procedure act of 1887 (Acts 1887, p. 64), the provisions of which are set forth in part in the [Code, " 37"901], where the plaintiffs institute suit for specific performance of an alleged contract for the conveyance of land, for cancellation of deeds, for injunction, and for damages, founded upon their alleged right to the land, the defendants may in their answer assert a right to affirmative relief, such as damages alleged to result from trespass by the plaintiffs upon the land in dispute, and may afterwards by amendment to their plea assert a right to such damages which occurred subsequently to the filing of the original plea." The above decision was followed in Hogan v. Cowart, 182 Ga. 145(7), 184 S.E. 884, 886, where it was held: "Paragraph 18 of the petition as amended on October 12, 1934, alleges damages in the sum of $176, accrued since institution of the suit, as the value of stated quantities of corn and fodder which the land would have produced during the year, but had not produced on account of the alleged trespass in closing the ditch. The Code of 1933, " 105"1406, providing: "Damages for a continuing trespass are limited to those which have occurred before action is commenced. Subsequent damages flowing from a continuance of the trespass give a new cause of action," applies to | Ordinarily, status of suit becomes fixed when it is instituted, so that there can be no recovery therein when there is no cause of action at commencement of suit, though such a cause may accrue respecting same subject matter while suit is pending. | Does the status of a suit become fixed when it is instituted? | 005922.docx | LEGALEASE-00127726-LEGALEASE-00127727 | Order, SA | 0.9 | 1 | 0 | 0 | 1 | |
| 11294 | Heisig v. Uvalde Rock Asphalt Co., 48 S.W.2d 1109 | 13+65 | Appellant's first two propositions urge that the suit was prematurely brought because at the time the suit was filed he was not in default in any of his payments"nothing was due and unpaid, and that, appellee not having amended its petition after appellant became in default, there was no basis for the judgment. The assignments will have to be sustained. The above"stated facts show the suit was filed eight days before the third installment became due and appellee did not afterwards amend its petition. A suit cannot be maintained upon a cause of action that does not exist at the time the suit is commenced, and the cause of action arising subsequent to the commencement of the suit, and not declared on after it has arisen, cannot furnish a basis for a recovery. Moore v. Marland Oil Co. (Tex. Com. App.) 7 S.W.(2d) 59. | Cause of action arising subsequent to commencement of suit, and not declared on, cannot furnish basis for recovery. | Can a cause of action arising subsequent to commencement of suit furnish basis for recovery? | 006037.docx | LEGALEASE-00127323-LEGALEASE-00127324 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11295 | People ex rel. Voltz v. Metro. Disposal Co., 345 Ill. App. 570 | 13+65 | Whatever may have been the conditions prevalent in the dump in past years, it is clear that when the decree was entered the passage of time and the consequent radical change of conditions in the dump during the pendency of the proceeding fully justified the abatement of the nuisance in the manner prescribed by the decree. The rule is well settled that equity grants relief as circumstances require not at the time of the inception of the litigation but at the time the decree is entered. Town of Kaneville v. Meredith, 361 Ill. 556, 198 N.E. 857; Baker v. Salzenstein, 314 Ill. 226, 145 N.E. 355; Darmstadt v. Horwitz, 298 Ill.App. 523, 19 N.E.2d 105. | Equity grants relief as circumstances require, not at the time of the inception of the litigation, but at time of entry of decree. | "Does equity grant relief as circumstances require i.e not at the time of the inception of the litigation, but at time of entry of decree?" | 006054.docx | LEGALEASE-00127511-LEGALEASE-00127512 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 11296 | Knapp-Monarch Co. v. Casco Prod. Corp., 342 F.2d 622 | 13+65 | Finally, because Langenfeld, prior to the suit, lacked knowledge of the alleged infringement by Casco, its Solicitation of orders cannot be said to have been active "inducement" of infringement in violation of the patent laws. Fromberg, Inc. v. Thornhill, 315 F.2d 407 (5th Cir. 1963). Concerning solicitation activity by Langenfeld subsequent to the filing of the suit as constituting active inducement to infringe, we are of the opinion that this activity, if any, should be treated in the same manner as the two sales were treated by the district court, that is, de minimis. Moreover, plaintiff is precluded from urging violations alleged to have occurred after filing of this complaint as evidence of charges contained therein. "(A) cause of action is to be tested as of the time of the filing of the complaint and if no act of infringement occurred prior to the filing of the complaint, it is fatally defective and cannot be cured by infringement occurring subsequent to the filing of the complaint." Minnesota Mining & Mfg. Co. v. Plymouth Rubber Co., 178 F.Supp. 591, 596 (D.C.Ill.1959) | Plaintiff in patent infringement action was precluded from urging violations alleged to have occurred after filing of complaint. | Is a plaintiff in a patent infringement action precluded from urging violations alleged to have occurred after filing of the complaint? | 006070.docx | LEGALEASE-00127688-LEGALEASE-00127689 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 11297 | People v. Bryant, 31 A.D.2d 934 | 350H+591 | Defendant's contention is that the imposition of consecutive sentences constitutes 'double punishment' in violation of section 1938 of the former Penal Law (1909). In our opinion, burglary and robbery are separate and distinct criminal acts for which cumulative punishment may properly be imposed (Penal Law (1909), s 406; People ex rel. Hardin v. Jackson, 8 A.D.2d 575, 183 N.Y.S.2d 385, lv. to app. den. 6 N.Y.2d 707, 188 N.Y.S.2d 1026, 159 N.E.2d 707; see, also, People v. Baker, 27 A.D.2d 269, 278 N.Y.S. 309; People v. Ody, 13 A.D.2d 569, 212 N.Y.S.2d 378, cert. den. 368 U.S. 858, 82 S.Ct. 94, 7 L.Ed.2d 55; People ex rel. Cannata v. Jackson, 6 A.D.2d 919, 175 N.Y.S.2d 945). | Burglary and robbery are separate and distinct criminal acts for which cumulative punishment may properly be imposed; imposition of consecutive sentences for such crimes does not constitute double punishment in violation of statute. Penal Law 1909, SS 406, 1938. | Are burglary and robbery separate acts? | Burglary - Memo 6 - RK.docx | ROSS-003313582-ROSS-003313584 | Order, SA | 0.62 | 1 | 0 | 0 | 1 | |
| 11298 | Wyland v. W. Shore Sch. Dist., 52 A.3d 572 | 1.41E+30 | The District asserts that the "Rule" is really the policy of PDE. We recognize that a court generally should not interfere with a school district's discretion regarding educational policy. Unionville-Chadds Ford Sch. Dist. Nonetheless, a school district does not have the discretion to disregard a statutory mandate, as the District has done here. | A court generally should not interfere with a school district's discretion regarding educational policy; nonetheless, a school district does not have the discretion to disregard a statutory mandate. | Does a school district have the discretion to disregard a statutory mandate? | Education - Memo # 34 - C - SU.docx | ROSS-003330558-ROSS-003330559 | Condensed, SA | 0.44 | 0 | 1 | 0 | 1 | |
| 11299 | Poorbaugh v. United States, 27 Fed. Cl. 628 | 148+2.1 | In their third allegation, plaintiffs contended that defendant allowed or encouraged grazing permit holders to use their land for grazing. For a taking to occur, there must be an intent on the part of defendant to take plaintiffs' property, or an intention to do an act the natural consequence of which was to take their property. United States v. North American Transp. & Trading Co., 253 U.S. 330, 333, 40 S.Ct. 518, 519, 64 L.Ed. 935 (1920); NBH Land Co. v. United States, 576 F.2d 317, 319, 217 Ct.Cl. 41 (1978); Barnes v. United States, 538 F.2d 865, 871, 210 Ct.Cl. 467 (1976). However, the record indicates that defendant's only intended action was to incorporate the property it purchased from plaintiffs into an existing grazing allotment. While plaintiffs may argue that cattle wandering or being driven on their property is the natural consequence of surrounding plaintiffs' property with National Forest land subject to grazing rights, "[m]erely making property 'accessible to third parties' does not rise to the level ofa taking." Brown v. United States, 3 31, 48 (1983), affd, 741 F.2d 1374 (Fed.Cir.1984). Further, New Mexico law places the burden on landowners to erect a fence to keep livestock from trespassing on their property and specifically denies the right of recovery for trespassing animals on unfenced lands. See N.M. Stat.Ann. "" 77-16-1, 3 (Michie 1992); Kinsolving v. Reed, 74 N.M. 284, 393 P.2d 20, 20-21 (1964). Because plaintiffs' allegations do not showa direct and substantial interference with their property rights, plaintiffs' "takings" claim for their entire property must fail. | For taking to occur, there must be intent on part of United States to take plaintiffs' property, or intention to do an act the natural consequence of which was to take their property. U.S.C.A. Const.Amend. 5. | "For a taking to occur should there be an intent on the part of defendant to take plaintiffs' property, or an intention to do an act the natural consequence of which was to take their property?" | Eminent Domain - Memo 321 - GP.docx | ROSS-003290146-ROSS-003290147 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11300 | White v. Nat'l Bondholders Corp., 191 Misc. 536 | 307A+501 | Motion granted. In the absence of special circumstances a defendant cannot compel the plaintiff to prosecute an action against his will; it is only when substantial rights of a defendant have accrued that the court will refuse plaintiff a discontinuance of the action. This rule is well established. | In absence of special circumstances, a defendant cannot compel plaintiff to prosecute an action against his will, and it is only when substantial rights of a defendant have accrued that the court will refuse plaintiff a discontinuance of the action. | Can a defendant compel a plaintiff to prosecute the action against his will? | Pretrial Procedure - Memo # 1253 - C - SKG.docx | ROSS-003287506-ROSS-003287507 | Condensed, SA | 0.17 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11301 | Petition of Pub. Serv. Coordinated Transp., 103 N.J. Super. 505 | 48A+83 | Although they produced no witnesses in opposition, appellants urge that the order should be set aside because the applicants' proofs, while adequate to demonstrate that the proposed through service would be a "convenience" to the traveling public, failed to establish that it was a "necessity." In general, the words "necessary and proper" mean appropriate and adapted to carrying into effect a given object. Cf. Martin's Executors v. Martin, 20 N.J.Eq. 421, 428 (Ch.1870). In the case of service changes such as the one here proposed the test is public convenience and necessity. In re New Jersey & New York R. Co., 12 N.J. 281, 289, 96 A.2d 526 (1953). However, necessity need not be shown in the sense of essential or absolutely indispensable but the predominating and controlling element is the factor of public need for the proposed service. Cf. Pennsylvania R. Co. v. Bd. of Public Utility Com'rs, 11 N.J. 43, 51, 93 A.2d 339 (1952). It is sufficient if the proposed service be found to be reasonably requisite to serve the public convenience, Abbott v. Public Utilities Comm., 48 R.I. 196, 136 A. 490 (Sup.Ct.1927), and conserves the public interests. R.S. 48:2"14, N.J.S.A. | Predominating and controlling element in determining "necessity" for consolidation of two bus routes into one through route is factor of public need for proposed service and necessity need not be shown in sense of absolutely indispensable element. R.S. 48:2-14, N.J.S.A. | Should public necessity be shown as essential or absolutely indispensible? | 042443.docx | LEGALEASE-00127292-LEGALEASE-00127293 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 11302 | Colonial Hill Co. v. Mortg. Bond & Tr. Co., 174 Ga. 204 | 366+41(6) | Person paying off prior lien must show unequivocal agreement for subrogation, or facts from which agreement will be implied.Estoppel certificate by which debtor asserted security deed was first lien held insufficient to constitute agreement for creditor's subrogation to lien paid with proceeds of loan. | Person paying off prior lien must show unequivocal agreement for subrogation, or facts from which agreement will be implied. | Should a person paying off a prior lien show an unequivocal agreement for subrogation? | 043380.docx | LEGALEASE-00127986-LEGALEASE-00127987 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 11303 | In Matter of CUA Autofinder, 387 B.R. 906 | 366+35 | The right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. Waiver of the right of subrogation is a question of intention. 83 C.J.S. Subrogation " 21 (2008). See Brookside Communities, LLC v. Lake Dow North Corp., 268 Ga.App. 785, 603 S.E.2d 31, 32"33 (2004) (guarantor unambiguously waived any claims it might have had). In the case at bar, Movant used his personal funds to pay Debtor's obligation under the Escrow Agreement. Movant contends that he made the escrow payment under his personal guarantee of Debtor's obligations. Movant contends he made the payments as guarantor under his Unconditional Guaranty of Payment And Performance.14 Trustee contends that Movant was not legally obligated to make the escrow payment and that Movant was a mere volunteer who is not entitled to equitable subrogation. | Under Georgia law, right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. | Can a right to subrogation be modified or extinguished by contract or waived either expressly or by implication? | 043547.docx | LEGALEASE-00127762-LEGALEASE-00127763 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 11304 | Gary Friedrich Enterprises v. Marvel Enterprises, 713 F. Supp. 2d 215 | 386+7 | Under Illinois law, trespass to chattels differs from conversion because trespass to chattels does not require "substantial interference" with the right to possession. Sotelo v. DirectRevenue, LLC, 384 F.Supp.2d 1219, 1229-30 (N.D.Ill.2005). Under New York law, a trespass to chattels is defined as an intentional use or "intermeddling with a chattel in the possession of another" where "the chattel is impaired as to its condition, quality, or value." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir.2004) (quoting Restatement (Second) of Torts "" 217(b), 218(b) (1965)). Again, this does not differ significantly from Illinois law, which also requires a diminution in value for a trespass to chattels claim. See In re StarLink Corn Products Liability Litigation, 212 F.Supp.2d 828, 844 (N.D.Ill.2002). Thus, there is no conflict of law on the trespass to chattels claim. | Under New York law, a "trespass to chattels" is an intentional use or intermeddling with a chattel in the possession of another where the chattel is impaired as to its condition, quality, or value. Restatement (Second) of Torts SS 217(b), 218(b). | Does intermeddling with chattel in the possession of another constitute a trespass to chattel? | Trespass - Memo 221 - RK.docx | ROSS-003312395-ROSS-003312396 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 11305 | Intel Corp. v. Hamidi, 30 Cal. 4th 1342 | 386+7 | Though not amounting to conversion, the defendant's interference must, to be actionable, have caused some injury to the chattel or to the plaintiff's rights in it. Under California law, trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." (Thrifty-Tel, Inc. v. Bezenek (1996) 46 Cal.App.4th 1559, 1566, 54 Cal.Rptr.2d 468, italics added.) In cases of interference with possession of personal property not amounting to conversion, "the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use." (Zaslow v. Kroenert, supra, 29 Cal.2d at p. 551, 176 P.2d 1, italics added; accord, Jordan v. Talbot (1961) 55 Cal.2d 597, 610, 12 Cal.Rptr. 488, 361 P.2d 20.) In modern American law generally, "[t]respass remains as an occasional remedy for minor interferences, resulting in some damage, but not sufficiently serious or sufficiently important to amount to the greater tort" of conversion. (Prosser & Keeton, Torts, supra, " 15, p. 90, italics added.) | Though not amounting to conversion, the defendant's interference must, to be actionable as trespass to chattels, have caused some injury to the chattel or to the plaintiff's rights in it. | Is injury to chattel or to the plaintiff's rights in it required for a trespass to chattel to be actionable? | Trespass - Memo 223 - RK.docx | ROSS-003299893-ROSS-003299894 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 11306 | Ellis v. Am. Fed'n of Labor, 48 Cal. App. 2d 440 | 13+65 | The action was not prematurely brought. The very purpose of a suit for injunctive relief is to prevent threatened action. The fact that it developed on the hearing that a part of the feared action had been taken in the suspension of the charter without notice or hearing only strengthened the plaintiff's right to relief. "In an action for injunction the issues are to be determined on the basis of the situation as it exists at the time of the trial, not at the time of bringing the action." Collins v. Sargent, 89 Cal.App. 107, 114, 264 P. 776, 779. | In an action for injunction the issues are to be determined on the basis of the situation as it exists at the time of the trial, not at the time of bringing the action. | Should the issues in an action for injunction be determined on the basis of the situation as it exists at the time of the trial? | 006101.docx | LEGALEASE-00128145-LEGALEASE-00128146 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 11307 | Fairfield-Noble Corp. v. Pressman-Gutman Co., 475 F. Supp. 899 | 25T+135 | As judicially construed in New York, the law applicable to the issue at bar, under Section 2-207 of the Code the unilateral insertion of an arbitration clause constitutes a Per se material alteration of a contract. Marlene Industries Corp. v. Carnac Textile, Inc., 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (1978). See also Supak & Sons Mfg. Co., Inc. v. Pervel Industries, Inc., 593 F.2d 135 (4th Cir. 1979). Indeed, in Marlene the Court held that since an arbitration clause as an additional term constitutes a material alteration, it becomes part of the agreement "only if it is expressly assented to by both parties." 45 N.Y.2d at 334, 408 N.Y.S.2d at 414, 380 N.E.2d at 242. | Unilateral insertion of arbitration clause constitutes per se material alteration of contract. Uniform Commercial Code N.Y. S 2-207. | Is a unilateral insertion of an arbitration clause a per se material alteration of a contract? | Alternative Dispute Resolution - Memo 461 - RK.docx | ROSS-003287179-ROSS-003287180 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11308 | Winchester Homes v. Osmose Wood Preserving, 37 F.3d 1053 | 307A+517.1 | What remains to be considered is the effect Winchester's nonsuit has on the state court's prior rulings, such as the dismissal with prejudice of the claims based on Winchester's standing in its own right for tort, warranty, fraud, and violation of the Virginia Consumer Protection Act. In Virginia, a party may take a nonsuit within the statutory limitations of Va.Code " 8.01"380. Section 8.01"380(A) provides, in relevant part:A party shall not be allowed to suffer a nonsuit as to any cause of action or claim, or any other party to the proceeding, unless he does so before ... the action has been submitted to the court for decision.An action is defined in " 8.01"2 as "all civil proceedings whether at law, in equity, or statutory in nature and whether in circuit courts or district court."However, "cause of action" is defined in Virginia as "a set of operative facts which, under the substantive law, may give rise to a right of action." See Roller v. Basic Construction Co., 238 Va. 321, 384 S.E.2d 323, 326 (1989). Therefore, a party may nonsuit either a cause of action, a claim, or a party, and the nonsuit... does not operate as a bar to a subsequent suit between the same parties on the same cause of action. Payne v. Buena Vista Extract Co., 124 Va. 296, 98 S.E. 34 (1919). The only effect of a nonsuit is to put an end to the pending litigation without prejudice to either party. Cf. Thomas Gemmell, Inc. v. Svea Fire & Life Ins. Co., 166 Va. 95, 184 S.E. 457 (1936) (later suit in State court); Popp v. Archbell, 203 F.2d 287 (4th Cir.1953) (later suit in federal court.) | Under Virginia law, party may nonsuit either cause of action, claim, or party, and nonsuit does not operate as bar to subsequent suit between same parties on same cause of action. | Does nonsuit operate as bar to a subsequent suit between the same parties on the same cause of action? | 039155.docx | LEGALEASE-00128283-LEGALEASE-00128284 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 11309 | City of Philippi v. Tygarts Valley Water Co., 99 W. Va. 473 | 317A+113 | Thus it will be seen that the city was acting within its authority when the ordinance hereinbefore set out was enacted. The powers granted are broad and ample, the object being to secure pure water, free from infectious germs and disease, for the needs of the municipality and its people. Courts uniformly refuse to enforce purely private contracts by mandamus. But where the public interests are involved, the contract may be thus enforced. As long as a public service corporation maintains its franchise it must fulfill the obligations to the public directly or impliedly arising from the same. Town of Gassaway v. Gassaway Gas Co., 75 W. Va. 60, 83 S. E. 189. The function of a writ of mandamus is to enforce the performance of duties growing out of the discharge of public functions, or imposed by statute, or in some respects involving a trust or official duty. Richmond Railway & Electric Co. v. Brown, 97 Va. 26, 32 S. E. 775; Railway Co. v. Board of Sup'rs of Scott County, 109 Va. 34, 63 S. E. 412; Portsmouth Water Co. v. Portsmouth, 112 Va. 158, 70 S. E. 529; Vinton-Roanoke Water Co. v. Roanoke, 110 Va. 661, 66 S. E. 835. | Public service corporation must fulfill obligations to public directly or impliedly arising from franchise as long as it maintains such franchise. | Should a public corporation or utility fulfill the obligation to the public arising from a franchise it maintains? | 042481.docx | LEGALEASE-00128257-LEGALEASE-00128258 | Order, SA | 0.87 | 1 | 0 | 0 | 1 | |
| 11310 | Sw. Bell Tel. v. Emmett, 459 S.W.3d 578 | 317A+114 | Under the common law, a utility company must relocate facilities located in a public right-of-way at its own expense. Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth., 282 S.W.3d 59, 62 (Tex.2009) (citing Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co., 464 U.S. 30, 34, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983)). However, the common law only controls in the absence of legislative action. Cf. State v. City of Austin, 160 Tex. 348, 331 737, 741 (1960) (recognizing that absent the State's assumption of part of the expense, utility owners bear the financial burden of relocating facilities on public rights-of-way). | Under the common law, a utility company must relocate facilities located in a public right-of-way at its own expense. | Should a utility company relocate facilities located in a public right-of-way at its own expense? | Public Utilities - Memo 245 - AM.docx | ROSS-003286781-ROSS-003286783 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 11311 | Ray v. Donohew, 177 W. Va. 441 | 366+35 | Subrogation, being a creation of equity, will not be allowed except where the subrogee has a clear case of right and no injustice will be done to another." Syl. Pt. 6, Fuller, 304 S.E.2d 347 (quoting Syllabus, Buskirk, 113 W.Va. 764, 169 S.E. 738). Furthermore, "[e]quity will not enforce subrogation "in the face of a contract that negatives the idea of subrogation." An agreement for "another and different" security "negatives the existence of any agreement for subrogation." " Buskirk, 113 W.Va. at 767, 169 S.E. at 739 (citations omitted). Thus, the right of subrogation can either be modified or extinguished through express contractual language, or by an action of the surety which is inconsistent with the right of subrogation, such as taking a different and independent security with the intent to rely on that security in the event of default by the principal.However, we feel that this holding of Buskirk is limited to the extent that the act must actually be inconsistent with subrogation, and the separate security must have been intended to provide an exclusive remedy to the surety. See 73 Am.Jur.2d Subrogation "" 8, 9 and 11 (1974); 83 C.J.S. Subrogation "" 3b and 51 (1953 & Supp.1986). | Right of subrogation may be modified or extinguished through express contractual language or by action of surety inconsistent with right of subrogation, such as surety's taking of different and independent security as exclusive remedy in event of principal's default. | Can a right to subrogation be waived either expressly or by implication? | 043404.docx | LEGALEASE-00128259-LEGALEASE-00128260 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11312 | Calhoun v. Edwards, 202 Ga. 95 | 13+65 | The question, therefore, arises as to whether a petition in an equity case may be amended by setting forth matters that occurred subsequently to the filing of the petition.Ordinarily the status of a suit becomes fixed at the time the action is instituted, and therefore, when there is no cause of action at the commencement of the suit, there can be no recovery, although one may accrue respecting the same subject-matter while the suit is pending. Wadley v. Jones, 55 Ga. 329(1); Deas v. Sammons, 126 Ga. 431, 55 S.E. 170, 7 Ann.Cas. 1124; Kelly v. Cherry & Ziegler, 40 Ga.App.178, 149 S.E. 81. However, this court held in Becker v. Donalson, 133 Ga. 864(7), 67 S.E. 92, 96: "Since the adoption of the uniform procedure act of 1887 (Acts 1887, p. 64), the provisions of which are set forth in part in the [Code, " 37"901], where the plaintiffs institute suit for specific performance of an alleged contract for the conveyance of land, for cancellation of deeds, for injunction, and for damages, founded upon their alleged right to the land, the defendants may in their answer assert a right to affirmative relief, such as damages alleged to result from trespass by the plaintiffs upon the land in dispute, and may afterwards by amendment to their plea assert a right to such damages which occurred subsequently to the filing of the original plea." The above decision was followed in Hogan v. Cowart, 182 Ga. 145(7), 184 S.E. 884, 886, where it was held: "Paragraph 18 of the petition as amended on October 12, 1934, alleges damages in the sum of $176, accrued since institution of the suit, as the value of stated quantities of corn and fodder which the land would have produced during the year, but had not produced on account of the alleged trespass in closing the ditch. The Code of 1933, " 105"1406, providing: "Damages for a continuing trespass are limited to those which have occurred before action is commenced. Subsequent damages flowing from a continuance of the trespass give a new cause of action," applies to | Ordinarily, status of suit becomes fixed when it is instituted, so that there can be no recovery therein when there is no cause of action at commencement of suit, though such a cause may accrue respecting same subject matter while suit is pending. | "When there is no cause of action at the commencement of suit, can there be recovery?" | 006160.docx | LEGALEASE-00128678-LEGALEASE-00128679 | Order, SA | 0.9 | 1 | 0 | 0 | 1 | |
| 11313 | In re Richmond, 534 B.R. 479 | 266+711 | Under Maine law, a party seeking foreclosure by civil action must be "the mortgagee or any person claiming under the mortgagee," and must "produce evidence of ... all assignments ... of the ... mortgage." 14 M.R.S. " 6321. "Unlike a note, a mortgage, is not a negotiable instrument," and, therefore, possession alone, without proof of all assignments, is insufficient to establish standing under Maine law. Greenleaf, 2014 ME 89, " 12, 96 A.3d at 706. U.S. Bank has produced the Mortgage, executed by the Debtor and New Century, as well as an assignment of the Mortgage on behalf of New Century to U.S. Bank, as trustee of the Trust. | Under Maine law, unlike a note, a mortgage, is not a negotiable instrument, and therefore, possession alone, without proof of all assignments, is insufficient to establish standing in a foreclosure action. | Is a mortgage a negotiable instrument? | Bills and Notes - Memo 144 - RK.docx | ROSS-003285702-ROSS-003285703 | Order, SA, Sub | 0.68 | 1 | 0 | 1 | 1 | 1 |
| 11314 | Bank of New York Mellon v. Deane, 41 Misc. 3d 494 | 83E+417 | Perhaps as a result, the meaning of terms that have particular effect in negotiable instruments law can become blurred. For example, in a recent opinion the Second Department held that the plaintiff "failed to establish how or when it became the lawful holder of the note either by delivery or valid assignment." (See Citimortgage, Inc. v. Stosel, 89 A.D.3d 887, 888, 934 N.Y.S.2d 182 [2d Dept. 2011]; see also Deutsche Bank Nat. Trust Co. v. Rivas, 95 A.D.3d 1061, 945 N.Y.S.2d 328 [2d Dept. 2012]; Morrison v. Schmeman, 166 A.D. 264, 266, 151 N.Y.S. 607 [1st Dept. 1915] ["plaintiff holds the bond and mortgage by written assignment"].) Whatever the rights of a person to enforce an instrument by reason of delivery or assignment, a person is not a "holder" by reason of delivery or assignment alone, unless delivery is made of a bearer instrument. | Whatever the rights of a person to enforce an instrument by reason of delivery or assignment, a person is not a "holder" by reason of delivery or assignment alone, unless delivery is made of a bearer instrument. | Does a person become a holder by reason of delivery or assignment alone? | Bills and Notes - Memo 156 - RK.docx | ROSS-003286635-ROSS-003286637 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 11315 | Hunt v. Westlake City Sch. Dist., 100 Ohio App. 3d 233 | 141E+443 | With regard to plaintiffs' claim that the board did not properly notify Hunt of its final decision, and the time within which to perfect an appeal has not therefore began to run, we initially note that R.C. Chapter 3319 is remedial legislation which must be construed liberally in favor of teachers. Kiel v. Green Local School Dist. Bd. of Edn., supra, 69 Ohio St.3d at 149"150, 630 N.E.2d at 717. We further note that pursuant to R.C. 3319.11(G)(7), a teacher may appeal the final "order" of the board, "affirming" the previous decision to nonrenew, within thirty days of the date on which the teacher receives the written decision. From this statute, it is clear that deficiencies in providing notice of the board's intention would not alter the essential character of the remedy to be employed and would not authorize the initiation of an original action in the court of common pleas, but would extend the time within which to commence an appeal. See R.C. 3319.11(G)(7). | Statutory chapter governing teachers is remedial legislation which must be construed liberally in favor of teachers. R.C. S 3319.01 et seq. | Is statutory chapter governing teachers a remedial legislation which must be construed liberally in favor of teachers? | 016956.docx | LEGALEASE-00128832-LEGALEASE-00128833 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11316 | Stone v. First Wyoming Bank N. A., Lusk, 625 F.2d 332 | 226H+53 | As a general rule the substantive law of partnerships is applicable in determining the rights and liabilities of joint venturers and third parties. Wood v. Western Beef Factory, Inc., 378 F.2d 96, 99 (10th Cir.); see also P & M Cattle Co. v. Holler, 559 P.2d 1019, 1021 (Wyo.). We have also found elementary the proposition that one joint venturer can bind another joint venturer in matters that are within the scope of the joint enterprise, but that a joint venturer who acts in contravention of a restriction on his authority cannot bind the other joint venturers to persons who have knowledge of the restriction. Wood v. Western Beef Factory, Inc., supra, 378 F.2d at 98-99. See generally Wyo.Stat. s 17-13-301. Equally important in evaluating this theory of recovery is the principle that the existence of a joint venture is "a question of fact and preeminently one for the finder of fact." P & M Cattle Co. v. Holler, supra, 559 P.2d at 1024. Moreover, since the joint venture is a contractual relationship, the intent of the parties is controlling and is to be gleaned, in the absence of an express agreement, from the conduct, the surrounding circumstances, and the transactions between the parties. Id. at 1022. See also Freese v. United States, 455 F.2d 1146, 1151 (10th Cir.), cert. denied, 407 U.S. 879, 93 S.Ct. 85, 34 L.Ed.2d 134. | As a general rule, the substantive law of partnerships is applicable in determining rights and liabilities of joint venturers and third parties. | Is the substantive law of partnership applicable to joint ventures? | 022036.docx | LEGALEASE-00128962-LEGALEASE-00128963 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11317 | Watkins v. Fairfax Cty. Dep't of Family Servs., 42 Va. App. 760 | 30+422 | Our holding today is not inconsistent with our decision in Hughes, nor is it inconsistent with our holding in M.G. In Hughes, where we first declared "the guardian ad litem representing the interests of the children is an indispensable party to the appeal of the final decree" terminating parental rights, 36 Va.App. at 26, 548 S.E.2d at 238, we held thatwhere the certificate accompanying the notice of appeal does not list the name and address of the guardian ad litem and "[t]he record reflects that [the] appellant failed to provide the guardian ad litem with the notice of appeal or the opening brief[,][t]he guardian ad litem was not ... made a party to the appeal," and the appeal must be dismissed.M.G., 41 Va.App. at 177, 583 S.E.2d at 764 (quoting Hughes, 36 Va.App. at 25"26, 548 S.E.2d at 238"39). We did not hold in Hughes that a party who entirely omits an indispensable party from his or her notice of appeal or accompanying certificate of service, and fails to cure that defect within the mandatory 30"day filing period, may correct that omission by subsequently providing the indispensable party with a copy of the defective notice and certificate of service, or by providing the indispensable party with a copy of the opening brief. Indeed, notice, in and of itself that an appeal has been taken is insufficient to confer an appellate court with "jurisdiction over the indispensable party against whom no appeal has been properly perfected." Asch, 251 Va. at 93, 465 S.E.2d at 819. | Notice, in and of itself, that an appeal has been taken is insufficient to confer an appellate court with jurisdiction over the indispensable party against whom no appeal has been properly perfected. West's V.C.A. SS 8.01-675.3, 17.1-407, 17.1-408; Sup.Ct.Rules, Rule 5A:16(a). | Does an appellate court acquire jurisdiction over an appeal if a party fails to properly perfect it? | Appeal and error - Memo 28 - RK.docx | LEGALEASE-00018888-LEGALEASE-00018889 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 11318 | Wills v. Wills, 104 Tenn. 382 | 30+4 | This is a petition for writ of error coram nobis in the circuit court of Gibson county. Its object is to annul, avoid, and vacate a judgment for divorce pronounced in that court in the case of Zela E. Wills against H. M. Wills at the September term, 1899. By that judgment divorce was granted to the wife, as well as the custody of two minor children. The petition was filed within a year after the rendition of the decree complained of.[(Errors were assigned, and a motion to dismiss was made and sustained, upon the ground that a writ of error coram nobis would not lie to correct errors committed in a proceeding for divorce. This ruling of the learned trial judge was based upon the provisions of the statute (Shannon's Code, " 4890) in the following words: "In divorce cases an appeal shall be the only mode of revising errors,"- and upon the further ground that the writ contradicted the record of the former suit and was insufficient in law. The principal allegations of the petition upon which the right to relief is based are that the petitioner and defendant thereto were married in 1894; that he was then, and had ever since been, a citizen of Indiana, and not a citizen or resident of Tennessee, though he had been in Tennessee for some two years teaching, but all the while intending to return to Indiana; that he did return to that state in September, 1896, his wife returning with him, and there they continued to reside until April, 1899, when she left him, and came to Tennessee, and at once filed her bill for divorce. It was charged that the wife had not been a citizen of Tennessee two whole years before bringing the suit, but in fact for only 22 days; that petitioner had no actual notice of the proceeding for divorce; that it was fraudulently brought and prosecuted, and he was prevented from appearing and making defense by want of notice; that, if he had been allowed to make defense, he would have shown the want of residence of defendant in Tennessee for the period required by law; that the charges | A writ of error coram nobis, one of the means prescribed by Shannon's Code, S 4834, for correcting errors, is within the prohibition of section 4890 that, "in divorce cases, an appeal shall be the only mode of revising errors." | Is an appeal the only mode of revising errors in divorce cases? | Appeal and error - Memo 39 - RK.docx | ROSS-003300021-ROSS-003300022 | Order, SA | 0.91 | 1 | 0 | 0 | 1 | |
| 11319 | Mastercraft Wayside Furniture Co. v. Sightmaster Corp., 332 Mass. 383 | 30+6 | The general rule is that the appeal brings before us only rulings of law by the judge and the action of the Appellate Division thereon. In Muir Brothers Co. v. Sawyer Construction Co., 328 Mass. 413, at pages 414"415, 104 N.E.2d 160, at page 162, we said, "Ordinarily the question of the correctness of a general finding or decision cannot be raised by an exception or claim of report. The reason is that exceptions or claims of report lie only to questions of law, and where there is a general finding, without more, fact and law are interwoven to such an extent that no question of law is presented." This rule of law is supported by decisions of this court too numerous to recite. The defendant, however, argues that its claims that it is aggrieved by the findings of facts and by the finding for the plaintiff bring before this court the question whether such findings are warranted by the evidence. It relies upon cases like Leshefsky v. American Employers' Ins. Co., 293 Mass. 164, 169, 199 N.E. 395, 103 A.L.R. 1388, and the Muir Brothers Co. case, supra. In those cases subsidiary facts were admitted, stipulated, or found sufficient to demonstrate whether the ultimate finding was arrived at by the application of correct principles of law. That is not the case here. "The determination of the weight to be given to the evidence of a witness who has testified in an action at law is the exclusive function of the trier of fact and findings of fact on oral evidence are not reviewable on an appeal from an order of the Appellate Division." Codman v. Beane, 312 Mass. 570, 573, 45 N.E.2d 948, 950. | Ordinarily, question of correctness of a general finding or decision cannot be raised by an exception or claim of report, which lies only to questions of law. | Can the question of correctness of a general finding be raised by an exception or claim of report? | 008211.docx | LEGALEASE-00129093-LEGALEASE-00129094 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11320 | Turner v. Hunt, 131 Tex. 492 | 13+63 | The question is not strictly one of delay in instituting suit after the accrual of the cause of action, which is usually determinable by the period of limitation fixed by statute. Here the delay is in asserting the right by making selection of the particular acre. Turner waited nearly nine years and a half to select the one acre and gave no explanation of the delay. In Dull v. Blum, 68 Tex. 299, 301, 4 S.W. 489, it was held that a similar right was lost by an unexplained delay of twenty years in making choice of the land. It is our opinion that Turner's delay, a little less than ten years, though long and unexplained, cannot be held sufficient to defeat his right because the facts as to the effects of the delay have not been developed. Except in case of extreme delay like that in Dull v. Blum, supra, delay, which works no injury or no disadvantage to another, is not such laches as will bar a right. Coleman v. Zapp, 105 Tex. 491, 496, 151 S.W. 1040; Ross' Estate v. Abrams, Tex.Civ.App., 239 S.W. 705, 709; Abrams v. Ross' Estate, Tex.Com.App., 250 S.W. 1019; Tomahagen v. Sarber, Tex.Civ.App., 29 S.W.2d 438; Brady v. Garrett, Tex.Civ.App., 66 S.W.2d 502; 27 Tex.Jur. p. 29, " 12. It is said in Terry v. Prairie Oil & Gas Company, 5 Cir., 83 F.2d 843, that the plea of laches is not controlled by mere passage of time and always presents a question of fact. | Except in case of extreme delay, a delay which works no injury or no disadvantage to another is not such "laches" as will bar a right. | Can a delay which works no injury or no disadvantage to another is laches that bar a right? | Action - Memo # 924 - C KA.docx | ROSS-003300620-ROSS-003300621 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 11321 | Branch Banking & Tr. Co. v. Eid, 114 A.3d 955 | 30+21 | The Eids argue that BB & T failed to preserve this issue for appeal and conceded that the court could grant the motion to vacate. The Eids' contentions are misplaced for several reasons. First, BB & T sufficiently raised this issue in its briefing before the Superior Court in response to the Eids' motion to vacate. Second, BB & T's response to the Superior Court's inquiry was not a binding judicial admission, but rather, a conclusion of law to which we do not defer. Third, and perhaps most importantly, parties cannot waive issues regarding appellate jurisdiction and cannot confer jurisdiction on this Court by agreement. Accordingly, we reverse the Superior Court's grant of the motion to vacate the final judgment order, reinstate the Superior Court's March 20, 2014, order, and dismiss the Eids' cross-appeal as untimely. Because we dismiss the appeal on jurisdictional grounds, we do not reach the other issues presented. | Parties cannot waive issues regarding appellate jurisdiction and cannot confer jurisdiction on the Supreme Court by agreement. | Can parties waive issues regarding appellate jurisdiction and confer jurisdiction on the Supreme Court by agreement? | Appeal and error - Memo 67 - RK.docx | ROSS-003300724-ROSS-003300726 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11322 | Casillas v. Cano, 79 S.W.3d 587 | 30+331.1 | The only remaining issue is whether this appeal is mooted by Casillas' death. Death of a party can render an appeal moot. See Olson v. Commission for Lawyer Discipline, 901 S.W.2d 520, 524 (Tex.App.-El Paso 1995, no writ). "When there has ceased to be a controversy between the litigating parties due to events occurring after judgment has been rendered by the trial court, the decision of an appellate court would be a mere academic exercise and the court may not decide the appeal." Id. at 522. That is, "if a judgment cannot have a practical effect on an existing controversy, the case is moot." Id. Accordingly, an appeal is not permitted to proceed under Rule 7 after the death of a party unless the judgment affects the property rights, as opposed to purely personal rights, of the parties. Id. (holding that, under former TEX. R. APP. P. 9, an appeal is moot after the death of a party unless the judgment affects the property rights of the parties); see also Murphy, 21 S.W.3d at 798 (noting that because no substantive change in Rule 7 and its predecessors, case law under predecessors applies to Rule 7 cases). | An appeal is not permitted to proceed after the death of a party unless the judgment affects the property rights, as opposed to purely personal rights, of the parties. Rules App.Proc., Rule 7.1. | Is an appeal permitted to proceed after the death of a party? | Appeal and error - Memo 81 - RK.docx | ROSS-003299151-ROSS-003299152 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 11323 | Dixon v. State, 43 S.W.3d 548 | 67+2 | The elements of burglary of a habitation are (1) a person enters a habitation; (2) without the effective consent of the owner; and (3) with the intent to commit a felony, theft, or assault; or (4) the person commits or attempts to commit a felony, theft, or assault. tex.Pen.Code Ann. " 30.02(a)(1), (3) (Vernon Supp. 2001). Possession of stolen property is a type of theft. tex.Pen.Code Ann. " 31.02 (Vernon 1994). The elements of theft by possession of stolen property are (1) the person appropriated property (i.e., exercised control over property other than real property, or brought about a transfer or purported transfer of title to or other nonpossessory interest in property); (2) unlawfully (i.e., without the owner's effective consent or knowing that the property was stolen by another); and (3) with intent to deprive the owner of the property. tex.Pen.Code Ann. "" 31.01(4)(B), 31.03(a), (b)(1), (2) (Vernon Supp.2001). | Elements of burglary of a habitation are: (1) a person enters a habitation, (2) without the effective consent of the owner, and (3) with the intent to commit a felony, theft, or assault, or (4) the person commits or attempts to commit a felony, theft, or assault. V.T.C.A., Penal Code S 30.02(a)(1, 3). | What are the elements of burglary of a habitation? | Burglary - Memo 54 - RK.docx | ROSS-003300895-ROSS-003300896 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 11324 | People v. Hawkins, 125 Ill. App. 3d 520 | 210+815 | In People v. King (1977), 66 Ill.2d 551, 566, 6 Ill.Dec. 891, 898, 363 N.E.2d 838, 845, the supreme court held that "when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, [multiple] convictions with concurrent sentences can be entered." The dispositive question pertinent to defendant's contention, therefore, is whether residential burglary is "by definition," a lesser included offense of home invasion. We hold that residential burglary requires a different mental element than home invasion and therefore is not a lesser included offense. This conclusion is based on the applicable law which provides that to be a lesser included offense, the greater offense must include every element in the lesser offense plus one or more elements; the lesser offense cannot have any element that is not included in the greater one. In other words, it is impossible to commit the greater offense without necessarily committing the lesser also. Depending on the facts underlying a home invasion charge, a residential burglary may or may not be simultaneously committed by an offender. | Residential burglary requires a different mental element from home invasion and therefore is not a lesser included offense. S.H.A. ch. 38, PP 12-11, 19-3. | Is residential burglary a lesser included offense of home invasion? | 013258.docx | LEGALEASE-00129669-LEGALEASE-00129670 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11325 | Harris Cty. Appraisal Dist. v. Wittig, 881 S.W.2d 193 | 307A+501 | A plaintiff has an absolute right to a non-suit of its case at the moment the plaintiff files the motion with the clerk or makes a motion in open court. BHP Pet. Co. v. Millard, 800 S.W.2d 838, 840 (Tex.1990); Shadowbrook Apts. v. Abu-Ahmad, 783 S.W.2d 210, 211 (Tex.1990); Tex.R.Civ.P. 162. The trial court loses its plenary power 30 days after it signs the order granting the non-suit (if no motion for new trial is filed), or 75 days after it signs the order (if a motion for new trial is filed). It is the order granting the non-suit, not the filing of the non-suit that triggers the appellate deadlines. | Plaintiff has absolute right to nonsuit of its case at moment plaintiff files motion with clerk or makes motion in open court. | Does a plaintiff generally have an absolute right to nonsuit at the moment a motion is filed with a clerk? | Pretrial Procedure - Memo # 1094 - C - NE.docx | ROSS-003286007-ROSS-003286009 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11326 | Bremer v. Doctor's Bldg. P'ship, 251 Va. 74 | 307A+517.1 | Finally, Bremer contends that the trial court erred in granting the nonsuit, even if there was no violation of Code " 8.01-380, because under principles of common law a plaintiff is not entitled to a nonsuit if the rights of the defendant would be prejudiced by the dismissal of the action. See, e.g., Kemper v. Calhoun, 111 Va. 428, 430-31, 69 S.E. 358, 359 (1910). The prejudice resulting from the dismissal was the inability of the defendant to pursue his claims against the plaintiff. Defenses asserted in response to a motion for judgment, such as Bremer's filed under Code " 8.01-422 seeking affirmative relief, are notbarred or otherwise lost. They may be reasserted if the motion for judgment is subsequently refiled. Furthermore, the common law considerations of prejudice were codified in Code " 8.01-380(C) by prohibiting a nonsuit if a pending counterclaim, cross claim, or third-party claim could not be independently adjudicated. Therefore, a plaintiff is entitled to one nonsuit as a matter of right if the provisions of Code " 8.01-380 are met without further analysis of prejudice to the defendant. Gilbreath v. Brewster, 250 Va. 436, 463 S.E.2d 836 (1995); Clark v. Butler Aviation, 238 Va. 506, 511, 385 S.E.2d 847, 849 (1989); Nash v. Jewell, 227 Va. 230, 237, 315 S.E.2d 825, 829 (1984). | Defenses asserted in response to motion for judgment, such as equitable defense seeking affirmative relief, are not barred or otherwise lost by reason of a nonsuit but may be reasserted if motion for judgment is subsequently refiled, and thus plaintiff is entitled to one nonsuit as a matter of right if provisions of statute governing nonsuit are met, without further analysis of prejudice to defendant. Code 1950, SS 8.01-380, 8.01-380, subd. C. | Can a plaintiff take one nonsuit as a matter of right? | 024704.docx | LEGALEASE-00129247-LEGALEASE-00129248 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 11327 | In re Cross' Estate, 309 Pa. 418 | 307A+501 | "Plaintiff has no absolute right at all times and under all circumstances to discontinue, dismiss, or take a nonsuit, but such right is often dependent upon the effect it has on the rights of defendant, or upon the application being made at the proper time, and the granting of leave to do so is often held to rest within the discretion of the court." 18 C. J. 1148, " 5. | Plaintiff has no absolute right to discontinue, dismiss, or take nonsuit; right often depending on effect on defendant's rights or timeliness of application. | "Does a plaintiff have absolute right to discontinue, dismiss, or take nonsuit?" | 024823.docx | LEGALEASE-00129552-LEGALEASE-00129553 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 11328 | In re Cross' Estate, 309 Pa. 418 | 307A+501 | "Plaintiff has no absolute right at all times and under all circumstances to discontinue, dismiss, or take a nonsuit, but such right is often dependent upon the effect it has on the rights of defendant, or upon the application being made at the proper time, and the granting of leave to do so is often held to rest within the discretion of the court." 18 C. J. 1148, " 5. | Plaintiff has no absolute right to discontinue, dismiss, or take nonsuit; right often depending on effect on defendant's rights or timeliness of application. | "Do a plaintiff has an absolute right to discontinue, dismiss, or take a nonsuit?" | 025038.docx | LEGALEASE-00129361-LEGALEASE-00129362 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 11329 | Hutchinson v. Mitchell, 143 W. Va. 280 | 307A+501 | Code, 56-8-12, provides: "Any court may, on motion, reinstate on the trial docket of the court any case dismissed, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after the order of dismissal shall have been made, or order of nonsuit entered; but any such order of reinstatement shall not be entered until the accrued costs in such case shall have been paid.' In discussing this Section, in Higgs v. Cunningham, 71 W.Va. 674, 77 S.E. 273, 274, this Court said: 'It would seem that the real purpose of this statute is to allow re-instatement within three terms. For, inherently the court had the power before this enactment to set aside a dismissal or non-suit and re-instate the cause within the term at which the dismissal or non-suit was entered. This statute does not dispense with the showing of good cause-the showing of excuse for the neglect that has disturbed orderly legal procedure. One can not refuse to prosecute or defend and then ask to do so without showing why he thus acts so inconsistently.' The right of a plaintiff to take a voluntary nonsuit comes from the common law and is not statutory. Code, 56-6-25, only places a limitation upon that right and reads as follows: 'A party shall not be allowed to suffer a nonsuit,unless he do so before the jury retire from the bar.' Upon this question, an article in 27 W.Va. Law Quarterly, Page 20, titled 'The History and Development of Nonsuit', is of interest. | The right of plaintiff to take a voluntary nonsuit comes from the common law and is not statutory. Code, 56-6-25. | Does the right of a plaintiff to take a voluntary nonsuit come from common law? | Pretrial Procedure - Memo # 1112 - C - CK.docx | ROSS-003287469-ROSS-003287470 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 11330 | Palmer v. Palmer, 212 Ga. 616 | 307A+501 | A plaintiff may always dismiss his action if no right of the defendant is prejudiced thereby. Code, " 3-510. In this case there is no prayer for permanent alimony and a prayer for temporary alimony is not one for such affirmative relief as would preclude the plaintiff in this case from dismissing his suit for divorce. Mason v. Mason, 151 Ga. 468, 107 S.E. 331. If the defendant, as she contends, has a legal right to pursue the cause for an allowance of counsel fees, the terms upon which the court permitted the plaintiff to dismiss his petition certainly do not prevent her from doing so. Accordingly, the judgment complained of is notshown by the record to be erroneous. | An action may always be dismissed by plaintiff if no right of defendant is prejudiced thereby. Code, S 3-510. | Can an action always be dismissed by a plaintiff if no right of a defendant is prejudiced thereby? | Pretrial Procedure - Memo # 1113 - C - CK.docx | ROSS-003312985-ROSS-003312987 | Order, SA | 0.84 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11331 | Goldberger v. Gallagher, 11 Misc. 448 | 307A+501 | The complaint alleges delivery of the goods in question. The answer, by not denying that material allegation, admitted it. So it was not necessary for the plaintiff to have proven delivery. Defendant's plea of former action pending was not sustained by any of the testimony submitted. In fact, the testimony of even defendant shows that the action referred to was abandoned and discontinued by express agreement of the parties thereto. A formal order of discontinuance, entered and filed in the court where said action was pending, while advisable, was not necessary. The answer of the defendant certainly admitted an indebtedness of $125, under the agreement mentioned in paragraph 111 of the answer, providing the jury believed that she refused to carry out said agreement unless she received a receipt for the money paid plaintiff under such agreement. They evidently believed that to be so. They could not well do otherwise, because the defendant so testified. Therefore, her answer, as before shown, she having admitted the making of the agreement, and her testimony showing that she refused to carry out the terms of said agreement (except to the extent of $25) unless plaintiff gave her a receipt for money paid,-something she was not in law entitled to, as a matter of right,-1is in law an admission of her indebtedness to the extent of $125; and therefore the trial justice was right in directing the jury to find a verdict for plaintiff for at least that amount. These are the only points raised by the appellant's counsel, and, as we have pointed out, they are, in our judgment, without legal merit. We have examined the appeal record to find out whether or not any error was made, and, finding none, the judgment must be affirmed, with costs. | An action may be abandoned and discontinued by express agreement of the parties, and entry of a formal order of discontinuance is not necessary. | "When an action is abandoned and discontinued by express agreement of the parties, is it necessary to have an entry of a formal order of discontinuance by court?" | Pretrial Procedure - Memo # 1312 - C - SB.docx | ROSS-003299603-ROSS-003299604 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 11332 | Tongren v. D&L Gas Mktg., Ltd., 149 Ohio App. 3d 508 | 317A+114 | There are no express provisions in R.C. Chapter 4911 that permit the OCC to bring consumer complaints in the common pleas court as breach-of-contract actions. The PUCO possesses exclusive jurisdiction over consumer complaints concerning quality of service. See R.C. 4905.26; Kazmaier Supermarket, Inc. v. Toledo Edison Co. (1991), 61 Ohio St.3d 147, 573 N.E.2d 655. Phrasing allegations in a consumer complaint to sound in tort or contract is not sufficient to confer jurisdiction upon a trial court where the basic claim is one relating to service, a claim which only the PUCO has jurisdiction to resolve. Higgins v. Columbia Gas of Ohio, Inc. (2000), 136 Ohio App.3d 198, 202, 736 N.E.2d 92. | The Public Utilities Commission of Ohio (PUCO) possesses exclusive jurisdiction over consumer complaints concerning quality of service. R.C. S 4905.26. | Does the Public Utilities Commission (PUC) possess exclusive jurisdiction over quality of service consumer complaints? | 042514.docx | LEGALEASE-00129197-LEGALEASE-00129198 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 11333 | Whitlow v. California, 203 F. Supp. 3d 1079 | 212+1044 | The Court notes, however, that Plaintiffs' delay in filing this case undercuts any assertion of "urgency and irreparable harm." Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1377 (9th Cir. 1985). Although Plaintiffs dispute the effective date of SB 277, the law was approved by the Governor on June 30, 2015, and stated PBEs would not be accepted on or after January 1, 2016. "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." Blanchette v. Connecticut Gen. Ins. Corps., 419 U.S. 102, 143, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." Pennsylvania v. West Virginia, 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923). Here, Plaintiffs waited until July 1, 2016, to file the present case. That delay appears to have beenatactical decision, and weighs against the issuance ofa preliminary injunction in this case. | One does not have to await the consummation of threatened injury to obtain preventive relief; if the injury is certainly impending, that is enough. | Should one await the consummation of the threatened injury to obtain preventive relief? | Action - Memo # 930 - C SPB.docx | ROSS-003286471-ROSS-003286472 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11334 | Dobson v. Crews, 164 So. 2d 252 | 307A+501 | Prior to the adoption of these rules the right of a plaintiff to take a nonsuit was determined by the common law and by Section 54.09, F.S. 1963, F.S.A. The Florida statute is but a recognition of the existence of the common law right of a plaintiff to be nonsuited. This statute provides that "No plaintiff shall take a nonsuit on trial unless he do so before the jury retire from the bar," and under it the case law of Florida has established the rule that a plaintiff is entitled, as of right, to take not only a voluntary nonsuit but also a compulsory or "involuntary" nonsuit, that is, one which is prompted by an adverse ruling of the court which is preclusive of a recovery by the plaintiff in the case at bar (Crews et al. v. Woods et al. Fla., 59 So.2d 526, and cases cited therein). | Statute relating to nonsuit is but recognition of existence of common law right of plaintiff to be nonsuited. F.S.A. S 54.09. | Is a statute relating to a nonsuit a recognition of the existence of a common law right of a plaintiff to be nonsuited? | 025289.docx | LEGALEASE-00129874-LEGALEASE-00129875 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 11335 | White v. Nat'l Bondholders Corp., 191 Misc. 536 | 307A+501 | Motion granted. In the absence of special circumstances a defendant cannot compel the plaintiff to prosecute an action against his will; it is only when substantial rights of a defendant have accrued that the court will refuse plaintiff a discontinuance of the action. This rule is well established. | In absence of special circumstances, a defendant cannot compel plaintiff to prosecute an action against his will, and it is only when substantial rights of a defendant have accrued that the court will refuse plaintiff a discontinuance of the action. | When can the court refuse a plaintiff a discontinuance of the action? | Pretrial Procedure - Memo # 1184 - C - VA.docx | ROSS-003287480-ROSS-003287482 | Condensed, SA | 0.17 | 0 | 1 | 0 | 1 | |
| 11336 | Atl. Oil Producing Co. v. Jackson, 116 Tex. 570 | 307A+501 | We have no doubt that the right conferred on a plaintiff by article 2182 of the Revised Statutes to take a voluntary nonsuit in a case tried without a jury "at any time before the decision is announced," is not lost by the filing of an uncontested plea of privilege under articles 2007 and 2008. Hence the action of the trial court in granting the nonsuit instead of being void was entirely correct | Right of plaintiff to take voluntary nonsuit in court where action was instituted, in case tried without jury, at any time before announcement of decision under Rev. St. 1925, art. 2182, held not lost by filing by defendant of uncontested plea of privilege under articles 2007 and 2008. | May a plaintiff at any time take a nonsuit and dismiss the cause of action asserted by him? | 026148.docx | LEGALEASE-00130110-LEGALEASE-00130111 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11337 | Garfield Tr. Co. v. Teichmann, 24 N.J. Super. 519 | 307A+742.1 | The pretrial order, in addition to particularizing the legal positions of therespective parties, provided that 'the issues in this case are to be tried upon the pleadings as filed and as herein amended.' At the time of the trial Rule 3:16, as amended on June 7, 1951, was effective and provided that the pretrial order with the pleadings 'controls the subsequent course of action, unless modified at the trial to prevent manifest injustice." The ground upon which the trial court dismissed the complaint was based upon a construction of the guaranty agreements and a determination that all of the loans upon which Garfield instituted its action were made by way of an extension of credit to Roco-Tex, and not to Paramount; that under the guaranty agreements the defendants' liability for obligations of Paramount to the bank could be enforcedonly with respect to such loans as were made directly by the bank to Paramount. We fail to see the force of the appellant's argument that the pretrial order, not having specifically set forth the defense upon which the complaint was dismissed, is controlling in that it was filed later than the answers. In view of the answers filed denying liability under the guaranty agreements, it iselementary that it became the duty of the plaintiff to prove a prima facie case that the obligations sued upon were within the contemplation of the guaranty agreements. We know of no rule that, where the issue has been created, would relieve the plaintiff of its responsibility to prove a primafacie case. The question was not a new issue raised for the first time at the trial; liability was denied in the pleadings and appellant being charged with that knowledge, it was its duty to prove a prima facie case of liability. A pretrial conference is, of course, designed to prevent surprise and eliminate maneuvering, but it was never intended to be used to establish a case of liability where, as here, no liability initially appears under the terms of the contract in issue. See Woodhouse v. Woodhouse, | Pretrial conference is designed to prevent surprise and eliminate maneuvering, but it should not be used to establish a case of liability where no liability initially appears under terms of contract in issue. Rule 3:16. | What is pretrial conference is designed to do? | Pretrial Procedure - Memo # 1347 - C - TJ.docx | ROSS-003328225-ROSS-003328226 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 11338 | Peterson v. McCawley, 135 Idaho 282 | 307A+747.1 | For purposes of this appeal, we will accept the district court's view that the deadline 284 for the status reports was June 23, 1999, and that the Petersons' report was therefore eight days late. IDAHO RULE OF CIVIl proCedure 16(a) empowers trial courts to fashion pretrial orders for efficient case management. Fish Haven Resort, Inc. v. Arnold, 121 Idaho 118, 121, 822 P.2d 1015, 1018 (Ct.App.1991). Permissible sanctions include those outlined in Rule 37(b)(2) for violation of discovery orders, and the imposition of sanctions under Rule 16(i) is subject to the same standards as sanctions for discovery violations. See Fish Haven Resort, supra. The use of such sanctions is discretionary with the trial court. Ashby v. Western Council, Lumber Production and Indus. Workers, 117 Idaho 684, 686, 791 P.2d 434, 436 (1990); Southern Idaho Prod. Credit Ass'n v. Astorquia, 113 Idaho 526, 528, 746 P.2d 985, 987 (1987); Devault v. Steven L. Herndon, a Prof'l Ass'n, 107 Idaho 1, 2, 684 P.2d 978, 979 (1984); Kleine v. Fred Meyer, Inc., 124 Idaho 44, 47, 855 P.2d 881, 884 (Ct.App.1992); Fish Haven Resort, Inc., supra. When such a discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. Sun Valley Shopping Ctr. v. Idaho Power Co., 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991); Roe v. Doe, 129 Idaho 663, 666, 931 P.2d 657, 660 (Ct.App.1996); Kleine, supra . | Rule governing scheduling of pretrial conferences empowers trial courts to fashion pretrial orders for efficient case management. Rules Civ.Proc., Rule 16(a). | Are trial courts empowered to fashion pretrial orders for efficient case management? | Pretrial Procedure - Memo # 1383 - C - MS.docx | LEGALEASE-00019826-LEGALEASE-00019827 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 11339 | Meyers v. Ackerlund, 224 Ill. App. 417 | 307A+501 | Nor do we know of any authority for an appeal by a plaintiff from an order of voluntary nonsuit. If a plaintiff is present and does not wish to proceed with the prosecution of a case, he must elect either to suffer a nonsuit or the case should go to the jury. Delano v. Bennett, 61 Ill. 83. | If a plaintiff is present and does not want to proceed with the prosecution of the case, he must elect either to suffer a nonsuit or the case should go to the jury. | "If a plaintiff does not want to proceed with the prosecution of the case, should he suffer a nonsuit or should the case go to the jury?" | Pretrial Procedure - Memo # 1385 - C - DA.docx | ROSS-003287779 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 11340 | Ransom v. Robinson, 249 N.C. 634 | 307A+742.1 | The case on appeal refers to the hearing as a pre-trial hearing. "Unless otherwise provided by stipulation, only the documents constituting the record proper are before the court at pretrial conference. " Reid v. Holden, 242 N.C. 408, 412, 88 S.E.2d 125, 128. The record, under the caption "Plaintiff's Evidence," shows certain documents identified as plaintiff's exhibits. Exhibit A is judgment No. 27593, entered in prior action by Wade H. Robinson, plaintiff, v. Ernest R. Ashley, defendant, and attached map purporting to show the contentions of the respective parties. Exhibit B is the answer filed by Ernest R. Ashley in said prior action. Exhibit C is deed dated December 9, 1947, registered in Book 179, page 441, from D. W. Thompson to E. R. Ashley. Exhibit D is deed dated July 12, 1957, registered in Book 212, page 31, from Ernest R. Ashley and wife, Itlean Ashley, to Herbert Ransom. While the judgment indicates the complaint in said prior action was considered by Judge Seawell, that complaint is not in the record nor does it appear that it was identified as an exhibit. | Unless otherwise provided by stipulation, only the documents constituting the record proper are before the court at pretrial conference. | What documents are filed before the court at pretrial conference unless otherwise provided by stipulation? | 026556.docx | LEGALEASE-00129701-LEGALEASE-00129702 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11341 | Gestetner Holdings, PLC v. Nashua Corp., 784 F. Supp. 78 | 25T+143 | Chung makes it clear that where claims may be understood to raise an arbitrable issue, arbitration must be compelled, even if the claims can also be characterized another way.][] Here, the question is not even close. Gestetner's objections are objections to the Closing Date Net Book Value. Section 1.5 of the Purchase Agreement certainly may be understood to make such objections arbitrable. Section 1.5(b) provides that disputes over Gestetner's objections are to be submitted to Peat Marwick and in no way limits the nature of objections Gestetner may bring. Thus, not only may Gestetner's objections be understood to be arbitrable, but also Gestetner's objections appear, after facial consideration, to be clearly within the scope of the arbitration agreement, notwithstanding Nashua's attempt to portray them otherwise. Here, as in Chung, respondent's arguments relate to the merits of Gestetner's objections-whether they are defective under the Purchase Agreement itself-and are thus more appropriately brought before the arbitrator. | Where claims may be understood to raise an arbitrable issue, arbitration must be compelled even if claims can also be characterized another way. | Can arbitration be compelled if claims can be characterized in another way? | Alternative Dispute Resolution - Memo 533 - RK.docx | ROSS-003287230-ROSS-003287231 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11342 | Apollo Computer v. Berg, 886 F.2d 469 | 25T+143 | We do not reach any of these arguments because we find that the parties contracted to submit issues of arbitrability to the arbitrator. There is no question that this contract falls under the aegis of the Federal Arbitration Act, 9 U.S.C. " 1, et seq. See 9 U.S.C. " 2; Societ" Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co., 643 F.2d 863, 867 (1st Cir.1981). Both parties agree that under the Federal Arbitration Act, the general rule is that the arbitrability of a dispute is to be determined by the court. See Necchi v. Necchi Sewing Machine Sales Corp., 348 F.2d 693, 696 (2d Cir.1965) (Marshall, J.), cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966); Domke on Commercial Arbitration " 12.01, at 152; see also AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (reaffirming this general rule in the labor arbitration context); Mobil Oil Corp. v. Local 8"766, 600 F.2d 322, 324"25 (1st Cir.1979) (same). Parties may, however, agree to allow the arbitrator to decide both whether a particular dispute is arbitrable as well as the merits of the dispute. See Necchi, 348 F.2d at 696; see also Local 369, Utility Workers Union v. Boston Edison Co., 588 F.Supp. 800, 804"05 (D.Mass.) (recognizing same rule in labor arbitration context), aff'd, 752 F.2d 1 (1st Cir.1984). | Parties may agree to allow arbitrator to decide both whether particular dispute is arbitrable as well as merits of dispute. 9 U.S.C.A. S 1 et seq. | Can parties agree to allow an arbitrator to decide both the arbitrability of a dispute as well as the merits of the dispute? | 007421.docx | LEGALEASE-00131382-LEGALEASE-00131383 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 11343 | State v. Robertson, 511 So. 2d 1237 | 67+41(1) | In order to prove the crime of aggravated burglary, the state must prove beyond a reasonable doubt that the defendant made an unauthorized entry of a structure with the intent to commit a theft or a felony. Additionally, the state must prove beyond a reasonable doubt one of the three aggravating circumstances listed in LSA-R.S. 14:60, which provides: [(Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with intent to commit a felony or any theft therein, if the offender, (1) Is armed with a dangerous weapon; or (2) After entering arms himself with a dangerous weapon; or (3) Commits a battery upon any person while in such place, or in entering or leaving such place. | To prove crime of aggravated burglary, State must prove beyond reasonable doubt that defendant made unauthorized entry of structure with intent to commit theft or felony and must prove beyond reasonable doubt one of the aggravating circumstances listed in statute: that defendant is armed with dangerous weapon, or after entering arms himself with dangerous weapon, or commits battery upon any person while in such place or in entering or leaving such place. LSA-R.S. 14:60. | What is aggravated burglary? | Burglary - Memo 35 - RK.docx | ROSS-003285807-ROSS-003285808 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |
| 11344 | Pena v. Minidoka Cty., 133 Idaho 222 | 104+113(6) | Before the commissioners can legally empower the appointment of a deputy by a county officer, they must first determine whether a new deputy is necessary. Taylor v. Canyon County, 6 Idaho 466, 470, 56 P. 168, 169"70 (1899) (as applicable to county officers named in Article XVIII, " 6). Upon a showing to the proper tribunal that a deputy or clerical assistant is needed, the county commissioners must authorize the appointment. Crooks v. Maynard, 112 Idaho 312, 317, 732 P.2d 281, 282 (1987). The county commissioners' power, however, is limited and cannot be exercised to override every hiring decision, id., or to impose qualifications in the hiring process. Estep v. Comm'rs of Boundary County, 122 Idaho 345, 834 P.2d 862 (1992). | Power of county commissioners is limited, and cannot be exercised to override every hiring decision, or to impose qualifications in the hiring process. | Is the county commissioners power to override hiring decisions limited? | 013527.docx | LEGALEASE-00131256-LEGALEASE-00131257 | Order, SA | 0.79 | 1 | 0 | 0 | 1 | |
| 11345 | People v. Brooks, 396 P.3d 480 | 2.31E+22 | In assessing the defendant's claim of error, Mayberry first looked to Penal Code section 26, which provides that a person committing a charged act or omission under a mistake of fact that disproves any criminal intent is not criminally liable for that offense. (" 26, par. Three.) As Mayberry explained, the word ""intent"" means ""wrongful intent,"" and the requirement of a union of act and wrongful intent is a necessary element in nearly every crime, including the crimes of kidnapping and rape. (Mayberry, supra, 15 Cal.3d at p. 154, 125 Cal.Rptr. 745, 542 P.2d 1337; see id. at pp. 155"156, 125 Cal.Rptr. 745, 542 P.2d 1337.) Relying on the requisite union of act and wrongful intent, and decisions finding a mistake of fact defense available for crimes such as unlawful sexual intercourse and bigamy, Mayberry held that "if a defendant entertains a reasonable and bona fide belief that [the alleged victim] voluntarily consented to accompany [the defendant] and to engage in sexual intercourse, it is apparent he does not possess the wrongful intent that is a prerequisite [to a conviction of either kidnapping or rape]." (Id. at p. 155, 125 Cal.Rptr. 745, 542 P.2d 1337.) If believed by the fact finder, a defendant's honest and reasonable, albeit mistaken, belief in the victim's consent is a complete defense to a charge of kidnapping or rape. (Ibid.; see also People v. Isitt (1976) 55 Cal.App.3d 23, 28, 127 Cal.Rptr. 279.) | If believed by the fact finder, defendant's honest and reasonable, albeit mistaken, belief in the victim's consent is a complete defense to a charge of kidnapping or rape. Cal. Penal Code S 207. | Is consent a defense to kidnapping? | Kidnapping - Memo 11 - SB.docx | ROSS-003286815-ROSS-003286816 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11346 | Reagan v. Dyrenforth, 87 Colo. 126 | 307A+509 | The motion for judgment on the pleadings was not made before, but during, the trial. The trial had actually begun, and the plaintiff was not entitled to dismiss as a matter of right, but only as a matter of favor. In the case of Empire, etc., Co. v. Herrick, 22 Colo. App. 394, 398, 399, 124 P. 748, 749, it was held that plaintiff had the right of dismissal before but not during, the trial. The following language was used by the court in the Empire, etc., Co. v. Herrick Case, supra, concerning nonsuits, and is equally applicable to dismissals:"We think the appellant had no right under the Code to move for a nonsuit upon the trial, or during the course of the trial, and the court should have denied its motion. The phrase "before trial," as used in the first subdivision of section 183, Rev. Code, does not mean before the conclusion of the trial, but before the commencement of the trial.' | Withdrawal of juror and declaration of mistrial to permit amendment of complaint after denial of judgment on pleadings did not entitle plaintiffs to dismiss action (Code Civ. Proc. 1921, S 184). Plaintiffs moving for judgment on pleadings after jury was sworn, and granted permission to withdraw juror and declaration of mistrial on their statement that they desired only to amend complaint after adverse ruling on such motion, held not entitled, as matter of right, to dismiss action under Code Civ. Proc. 1921, S 184; trial having begun before motion was made. | "Is a plaintiff entitled to dismiss his action as a matter of right after the trial has begun, but only as a matter of favor?" | Pretrial Procedure - Memo # 1211 - C - MS.docx | ROSS-003287488-ROSS-003287489 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 11347 | Nat'l Bank of Commerce v. Jupiter Mortg. Corp., 890 So. 2d 553 | 307A+501 | In cases such as this, where a plaintiff intends to dismiss only one of several parties, rule 1.250(b) is the appropriate vehicle for dropping a party. See Biggers v. Town of Davie, 674 So.2d 938, 939 (Fla. 4th DCA 1996). If, however, there is only one defendant or if the plaintiff intends to dismiss the action as to all defendants, rule 1.420(a)(1) is the operative rule. Bay View Inn, Inc. v. Friedman, 545 So.2d 417, 418 (Fla. 3d DCA 1989). Thus, "[a]n essential distinction between a notice of dropping a party and a voluntary dismissal is that the former concludes the action as to the dropped party while the latter is generally utilized to conclude the action in its entirety." Carter v. Lake County, 840 So.2d 1153, 1155 (Fla. 5th DCA 2003). | Rule governing dropping parties is appropriate vehicle to drop a party where plaintiff intends to dismiss only one of several parties; however, if there is only one defendant or if plaintiff intends to dismiss action as to all defendants, operative rule is rule governing voluntary dismissal by parties. West's F.S.A. RCP Rules 1.250(b), 1.420(a)(1). | Is there a rule to drop a party where a plaintiff intends to dismiss only one of several parties? | Pretrial Procedure - Memo # 1275 - C - PC.docx | LEGALEASE-00020464-LEGALEASE-00020465 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 11348 | Straub v. Smith, No. 31955, 2006 WL 1982878 | 307A+501 | A stipulation to dismiss an action made pursuant to I.R.C.P. 41(a)(1) is considered a voluntary dismissal by all parties. Wilhelm v. Idaho State Bar, 140 Idaho 30, 36, 89 P.3d 870, 876 (2004). A voluntary dismissal under Rule 41(a)(1) is a matter of right and does not require the consent or permission of the district court so long as a notice of dismissal or a signed stipulation to dismiss is filed with the district court. State, Dept. of Health and Welfare v. Housel, 140 Idaho 96, 102, 90 P.3d 321, 327 (2004); Rohr v. Rohr, 118 Idaho 689, 692, 800 P.2d 85, 88 (1990). In contrast, a plaintiff who seeks dismissal after the defendant has served an answer or filed a motion for summary judgment and where the defendant will not stipulate to a dismissal, may only obtain a dismissal through an order of the court. I.R.C.P. 41(a)(2). | A voluntary dismissal is a matter of right and does not require the consent or permission of the district court so long as a notice of dismissal or a signed stipulation to dismiss is filed with the district court. Rules Civ.Proc., Rule 41(a)(1). | Is a voluntary dismissal a matter of right and terminates the action? | 026491.docx | LEGALEASE-00131137-LEGALEASE-00131138 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 11349 | Johnson v. Sikorski, 100 P.3d 420 | 30+3273 | The decision to allow amendment to pleadings is vested within the sound discretion of the district court and is, therefore, subject to reversal only for an abuse of discretion. Ekberg v. Sharp, 2003 WY 123, 76 P.3d 1250 (Wyo.2003). A decision involving whether to require adherence to pretrial orders is also a matter left to the district court's discretion. Casteel v. News"Record, Inc., 875 P.2d 21, 23 (Wyo.1994). Thus, we have said a trial court has discretion to waive the requirements contained in its pretrial order and we will not overturn such a ruling absent an abuse of discretion. Contreras v. Carbon County School District # 1, 843 P.2d 589, 592 (Wyo.1992). However, we have also recognized that adherence to scheduling orders is critical in maintaining the integrity of judicial proceedings and so the trial court has extensive authority to enforce such pretrial orders. Carroll v. Bergen, 2002 WY 166, 57 P.3d 1209, (Wyo.2002). | The decision to allow amendment to pleadings is vested within the sound discretion of the district court and is, therefore, subject to reversal only for an abuse of discretion. | When is the decision to allow amendment to pleadings reversed? | 026637.docx | LEGALEASE-00130305-LEGALEASE-00130306 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11350 | Campbell v. Lee, 12 Tenn. App. 293 | 307A+501 | The plaintiff's right to take voluntary non-suit is absolute, and cannot be denied him when applied within the time prescribed by Section 4689, which provides: "The plaintiff may, at any time before the jury retires, take a non-suit or dismiss his action as to any one or more defendants, but if the defendant has pleaded a set-off or counterclaim, he may elect to proceed on such counterclaim in the capacity of a plaintiff." It appears that there is no question made as to the plaintiff's right to take a non-suit and that the present suit was filed within the time allowed for the bringing of another suit. | The plaintiff's right to take a voluntary non-suit is absolute, and cannot be denied him when applied for within the time prescribed by section 4689. | Is the plaintiff's right to take a voluntary non-suit absolute? | 026647.docx | LEGALEASE-00130336-LEGALEASE-00130337 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 11351 | Senseley v. First Nat. Life Ins. Co., 205 La. 61 | 307A+501 | From a mere reading of the Act, it is apparent that it applies only to the voluntary dismissals of suits and reconventional demands. A plaintiff in a suit has control of it and has the right to discontinue or dismiss it at any time except where the rights of the defendant are prejudiced. C.P., Article 491; St. Bernard Trappers' Ass'n v. Michel, 162 La. 366, 110 So. 617. Insofar as a reconventional demand is concerned, the defendant takes the position of plaintiff. Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869. However, if the dismissal of either of the demands, principal or in reconvention, would prejudice the rights of other parties to the suit, the suit could only be dismissed with the consent of the parties so prejudiced. In either event, the discontinuance or dismissal would be accomplished by the voluntary withdrawal of the suit or demand and not by operation of law. | Plaintiff has control of a suit and the right to discontinue or dismiss it at any time except where rights of defendant are prejudiced, and as respects a reconventional demand the defendant has similar control and rights. Code Prac. art. 491. | "Can a plaintiff discontinue a suit at any time, unless there is a re-conventional demand or prejudice to a defendant's rights?" | 026765.docx | LEGALEASE-00130321-LEGALEASE-00130322 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 11352 | Herrell v. Maddux, 217 Kan. 192 | 307A+749.1 | In Thompson v. Aetna Life Ins. Co., 201 Kan 296, 300, 440 P.2d 548, 552, we said that under K.S.A. 60-216 the pretrial order entered by the court in that case "in effect, may be said to have superseded and replaced the pleadings." It is generally accepted that a pretrial order which specifies the issues to be tried supersedes the pleadings in such respect. (In re Estate of Wurtz, 214 Kan. 434, 520 P.2d 1308.) | Generally, a pretrial order which specifies the issues to be tried supersedes and replaces the pleadings. Rules of Civil Procedure, rule 16, K.S.A. 60-216. | Does a pretrial order which specifies the issues to be tried supersede and replace the pleading? | 026886.docx | LEGALEASE-00130331-LEGALEASE-00130332 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11353 | Siegel v. Kepa Homes Corp., 2000 Mass. App. Div. 170 | 363+17(1) | A pretrial conference report is designed to "define, simplify and limit the issues to be decided, reduce error, prevent surprise, promote judicial economy and encourage settlement." Slade v. Slade, 43 Mass.App.Ct. 376, 378, 682 N.E.2d 1385 (1997). The pretrial report narrows and simplifies issues for trial primarily through admissions or stipulations by counsel. Mitchell v. Walton Lunch Co., 305 Mass. 76, 80, 25 N.E.2d 151 (1939). It has long been settled in this Commonwealth, even prior to the promulgation of Mass. R. Civ. P. 16 which now governs pretrial reports, that trial should be confined to the issues disclosed in a pretrial report, and that the admissions or stipulations of counsel in pretrial conferences and memoranda are binding on the parties. Slade v. Slade, supra at 376, n. 13, 682 N.E.2d 1385. See Whitcomb v. Hearst Corp., 329 Mass. 193, 201, 107 N.E.2d 295 (1952); Lynch v. Kaufman, 329 Mass. 762, 105 N.E.2d 848 (1952); Donnelly v. Larkin, 327 Mass. 287, 295, 98 N.E.2d 280 (1951); DeLuca v. Cleary, 47 Mass.App.Ct. 50, 52, 710 N.E.2d 1027 (1999); Norton v. Vaughan, 13 Mass.App.Ct. 1075, 1076, 435 N.E.2d 634 (1982). The obvious rationale for the rule is the elimination of what resulted in this case; namely, unfair surprise to the court and opposing party by raising an issue for the first time mid-trial.2 The defendant did not argue in the trial court or before this Division that the stipulation should be vacated as "improvident or not conducive to justice." See Atlantic Pipe Corp. v. R.J. Longo Const. Co., 35 Mass.App.Ct. 459, 464"465, 622 N.E.2d 279 (1993). The stipulation that Kepa Homes built the plaintiffs' house thus remained binding and the defendant cannot now disclaim its responsibility by suggesting that the wrong party was sued. | Trial should be confined to the issues disclosed in a pretrial report, and the admissions or stipulations of counsel in pretrial conferences and memoranda are binding on the parties. Rules Civ.Proc., Rule 16, 43A M.G.L.A. | Should the trial be confined to the issues disclosed in a pretrial report? | 026936.docx | LEGALEASE-00130487-LEGALEASE-00130488 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 11354 | Awanderlust Travel v. Kochevar, 21 P.3d 876 | 307A+749.1 | When no objection is made to a pre-trial order, the matters determined by the order have the force and effect of a stipulation among the parties. Stan Miller, Inc. v. Breckenridge Resort Associates, Inc., 779 P.2d 1365 (Colo.App.1989), aff'd in part and rev'd in part on other grounds, Independent Trust Corp. v. Stan Miller, Inc., 796 P.2d 483 (Colo.1990). | When no objection is made to a pre-trial order, the matters determined by the order have the force and effect of a stipulation among the parties. | Do the matters determined by the order have the force and effect of a stipulation among the parties? | Pretrial Procedure - Memo # 1779 - SKG.docx | ROSS-003287245-ROSS-003287246 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 11355 | Reinhardt v. Bennett, 45 Mich. App. 18 | 307A+743 | The pretrial conference is conducted to simplify and narrow the issues of the case for expeditious trial and to avoid traps and surprises. Applebaum v. Wechsler, 350 Mich. 636, 87 N.W.2d 322 (1957). It is patent that these objectives can only be reached if both sides in a contested civil action participate in the conference. | Pretrial conference is conducted to simplify and narrow issues of case for expeditious trial and to avoid traps and surprises. GCR 1963, 301.1. | Are pretrial conferences conducted to simplify and narrow issues presented in a case? | 027041.docx | LEGALEASE-00131064-LEGALEASE-00131065 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 11356 | Keon v. New York Traprock Corp., 228 A.D. 795 | 307A+91 | Order reversed upon the law and the facts, with 650.25? costs and disbursements, and motion granted, with 650.25? costs, to the extent of providing for an examination of the defendants before trial through their officers as to the matters specified in the order to show cause contained in subdivisions (a), (b), (c), (d), (e), (f), (j), and (k) of paragraph 1 thereof, and in subdivisions (a), (b), (c), (d), and (h) of paragraph 2 thereof, and also providing for a discovery and inspection of the books and papers specified in paragraph 1 of the order to show cause relating to such discovery and inspection. Examination to proceed on five days' notice. An order for the examination of a party before trial and an order for the discovery and inspection of books and papers may be combined in one order where the party seeking the same proceeds in the first instance by an order for the examination and not by a mere notice. Fey v. Wisser, 206 App. Div. 520, 202 N. Y. S. 30. The plaintiffs are not entitled to examine the defendants as to their profits, etc., nor to have a discovery and inspection of their books generally. Settle order on notice. | Order for examination of parties before trial and for discovery and inspection of books and papers may be combined. | Can an order for examination of parties before trial and for discovery and inspection of books and papers be combined? | 027320.docx | LEGALEASE-00130950-LEGALEASE-00130951 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 11357 | In re Mytinger, 31 F. Supp. 977 | 371+2001 | Generally speaking, a tax is a pecuniary burden laid upon individuals, or, property, to support the government. A payment exacted by legislative authority.2 In New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, it was said that Section 64, sub. a, of the Bankruptcy Law, 11 U.S.C.A. " 104, sub. a, is very broad and covers all taxes. In that case, it was also determined that while a state court may construe its own statute and define its meaning, it cannot conclusively determine that which is not a tax to be a tax within the meaning of the federal statute. That is a federal question for ultimate decision in a national court. | Generally, a "tax" is a pecuniary burden laid upon individuals or property to support the government, and is a payment exacted by legislative authority. | Is tax a payment exacted by legislative authority? | 044553.docx | LEGALEASE-00131000-LEGALEASE-00131001 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 11358 | In re Oshkosh Foundry Co., 28 F. Supp. 412 | 371+3260 | Although the Legislature did not designate the contributions as a tax, nevertheless the compulsory payments made for a public purpose come within a definition of a tax as is stated in 61 C.J. 68: "the essential characteristics of a tax are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority. "In Houck v. Little River Drainage District, 239 U.S. 254, 36 S.Ct. 58, 61, 60 L.Ed. 266, it is stated: "A tax is an enforced contribution for the payment of public expenses. It is laid by some rule of apportionment according to which the persons or property taxed share the public burden, and whether taxation operates upon all within the state, or upon those of a given class or locality, its essential nature is the same." | Under provisions of Wisconsin Unemployment Compensation Act, the contributions required by employers are a pecuniary burden imposed by authority of the state and made for a public purpose and are not a voluntary payment or donation, and although such contributions are not designated as a "tax," they come within definition of quoted term. St.Wis.1937, S 108.01 et seq. (W.S.A.). | Is tax a voluntary payment or donation? | 044565.docx | LEGALEASE-00131006-LEGALEASE-00131007 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11359 | In re Olde Florida Investments, Ltd., 272 B.R. 779 | 371+2001 | While the interpretation and construction of the term "tax" by Florida courts is not governing, it is illustrative. Florida courts long recognize the distinction between taxes and special assessments as set forth in the case of Klemm v. Davenport, 100 Fla. 627, 129 So. 904 (1930). In Klemm, the Florida Supreme Court stated: A "tax" is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A "special assessment" is like a tax in that it is an enforced contribution from the property owner, it may possess other points of similarity to a tax, but it is inherently different and governed by entirely different principles. It is imposed upon the theory that a portion of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefited, is not governed by uniformity, and may be determined legislatively or judicially. | Under Florida law, a "tax" is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. | What is the purpose of a tax under state laws? | Taxation - Memo # 126 - C - CK.docx | ROSS-003290524-ROSS-003290525 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 11360 | In re George, 361 F.3d 1157 | 371+2001 | A final award that is "the subject of a demand on the [Trust] Fund ... shall constitute a liquidated claim for damages against an employer." The terminology the state uses to define the money does not control the federal-bankruptcy-law question of whether the debt is discharged by bankruptcy. In United States v. Reorganized CF & I Fabricators of Utah, Inc., the Supreme Court held that even a federal statutory denotation of the amount as a "tax" did not make it a tax for bankruptcy discharge purposes. Federal courts apply a "functional examination" to the exaction, regardless of how it is labeled, to determine whether it is a tax, a penalty, a debt, or something else. "[A] tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government," as distinguished from a penalty, which is "an exaction imposed by statute as punishment for an unlawful act." Even though the money in Reorganized CF & I Fabricators would go to the United States Treasury and was termed a"tax" in the federal statute imposing the obligation, it was not a "tax," and thus not an "excise tax," because it was in substance a 100% penalty on pension plan funding deficiencies. Reorganized CF & I Fabricators does not really give us an answer for this case, because the amount the Georges owe the Trust Fund is not so obviously penal. | "Tax" is a pecuniary burden laid upon individuals or property for the purpose of supporting the government, as distinguished from a "penalty," which is an exaction imposed by statute as punishment for an unlawful act. | What is a penalty? | 044711.docx | LEGALEASE-00130826-LEGALEASE-00130828 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11361 | City & Cty. of San Francisco v. Flying Dutchman Park, 122 Cal. App. 4th 74 | 371+2001 | No other method of taxing property per se is allowed in this state, other than the prescribed constitutional method. (Flynn v. San Francisco, supra, 18 Cal.2d 210, 115 P.2d 3; City of Oakland v. Digre, supra, 205 Cal.App.3d at p. 104, 252 Cal.Rptr. 99.) However, an important distinction is made between the taxation of real estate ownership on an ad valorem basis, and a tax on the use of that real property. It has long been recognized that a tax on the separate use of the property, known as an excise tax, is permissible, and does not constitute double taxation. (City of Berkeley v. Cukierman (1993) 14 Cal.App.4th 1331, 18 Cal.Rptr.2d 478.) "The mere fact that the state (or local authority) imposes one excise tax upon one activity does not prevent the state or local authority from imposing another excise tax upon the same privilege for the same period. (Fox etc. Corp. v. City of Bakersfield (1950) 36 Cal.2d 136, 140 [222 P.2d 879 [citation.) To put it another way, the constitutional prohibition against double taxation applies only to ad valorem property taxes, and property tax and excise tax can be imposed simultaneously. (Pesola v. City of Los Angeles (1975) 54 Cal.App.3d 479, 485"486 [126 Cal.Rptr. 580 [citation.)" (City of Berkeley v. Cukierman, supra, 14 Cal.App.4th at pp. 1340"1341, 18 Cal.Rptr.2d 478.). | A distinction is made between the taxation of real estate ownership on an ad valorem basis, and a tax on the use of that real property; a tax on the separate use of the property, known as an "excise tax," is permissible, and does not constitute double taxation. West's Ann.Cal. Const. Art. 13, S 1. | "Does a tax on the separate use of the property, known as an ""excise tax,"" constitute double taxation?" | 044747.docx | LEGALEASE-00130935-LEGALEASE-00130936 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 11362 | Klingenschmitt v. United States, 119 Fed. Cl. 163 | 34+5(8) | Finally, the Court turns to Dr. Klingenschmitt's contention that the decision not to recertify him as a chaplain after he lost his ecclesiastical endorsement was arbitrary, capricious and/or contrary to law. Pl.'s Mot. 39. In addressing this challenge, the Court is again mindful of the Federal Circuit's admonition that the decisions of military officials regarding which individuals are fit to serve and in what capacity "are not for the courts to decide." Lewis, 458 F.3d at 1377. Thus, in order to secure relief here, Dr. Klingenschmitt must demonstrate that the failure to recertify him and the decision to separate him violated a law, rule, or regulation. Id. It is clear that Dr. Klingenschmitt has failed to make this demonstration. | The decisions of military officials regarding which individuals are fit to serve and in what capacity are not for the courts to decide. | Is it for the courts to decide the decisions of military officials regarding which individuals are fit to serve? | 008914.docx | LEGALEASE-00132433-LEGALEASE-00132434 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11363 | State v. Perez, 147 Conn. App. 53 | 63+1(1) | We begin by setting forth the statutory language. Section 53a"148 (a) provides: "A public servant or a person selected to be a public servant is guilty of bribe receiving if he solicits, accepts or agrees to accept from another person any benefit for, because of, or as consideration for his decision, opinion, recommendation or vote." Simply put, "[a] public servant is guilty of bribe receiving ... if he [accepts, agrees to accept or] solicits a benefit as consideration for his decision, opinion, recommendation or vote." State v. Fox, 22 Conn.App. 449, 456, 577 A.2d 1111 (1990); see also State v. Bergin, 214 Conn. 657, 668, 574 A.2d 164 (1990). | A public servant is guilty of bribe receiving if he accepts, agrees to accept, or solicits a benefit as consideration for his decision, opinion, recommendation, or vote. C.G.S.A. S 53a-148(a). | When is a public servant guilty of bribe receiving? | 011131.docx | LEGALEASE-00131484-LEGALEASE-00131485 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 11364 | Veale v. Rose, 657 S.W.2d 834 | 289+560 | The misappropriation by one partner to his own use of property of the partnership is considered in law as constructive if not actual fraud on the partnership, and is actionable. See Jewell v. Jewell, 602 S.W.2d 315 (Tex.Civ.App."Texarkana 1980, no writ); Smith v. Bolin, 261 S.W.2d 352 (Tex.Civ.App."Fort Worth 1953), aff'd in part, rev'd in part on other grounds, 153 Tex. 486, 271 S.W.2d 93 (Tex.1954). | Misappropriation by one partner to his own use of property of the partnership is considered in law as constructive if not actual fraud on the partnership and is actionable. | Does misappropriation by a partner for his own use of partnership property lead to constructive fraud? | 022191.docx | LEGALEASE-00132497-LEGALEASE-00132498 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11365 | Gill v. Caribbean Home Remodeling Co., 73 A.D.2d 609 | 302+18 | In our opinion, plaintiffs' first cause of action for fraud fails to comply with the requirement of particularity set forth in CPLR 3016 (subd. (b)). Bare allegations of fraud without any allegation of the details constituting the wrong are clearly not sufficient to sustain such a cause of action (see Knowles v. City of New York, 176 N.Y. 430, 68 N.E. 860; Biggar v. Buteau, 51 A.D.2d 601, 377 N.Y.S.2d 788; Meltzer v. Klein, 29 A.D.2d 548, 285 N.Y.S.2d 920; 3 Weinstein-Korn-Miller, N.Y.Civ.Prac., par. 3016.04). As a result of the failure of plaintiffs' complaint to be sufficiently particular (see CPLR 3013), appellant would be substantially prejudiced in preparing a defense (see CPLR 3026; Meltzer v. Klein, supra ). Thus, e. g., plaintiffs' allegation in opposition to appellant's motion that "contracts and other documents" were forged should be pleaded with particularity. | Bare allegations of fraud without any allegation of the details constituting the wrong are clearly not sufficient to sustain such a cause of action. CPLR 3016(b). | Are bare allegations of fraud sufficient to sustain a cause of action? | Pleading - Memo 262 - RMM.docx | ROSS-003300853-ROSS-003300854 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11366 | SNA Nut Co. v. Haagen-Dazs Co., 302 F.3d 725 | 170A+1939 | HD also claims that it preserved its "mend-the-hold" defense in the pretrial order. We have previously noted that a pretrial conference and a pretrial order are vital parts of the procedural scheme created by the Federal Rules of Civil Procedure. See Gorlikowski v. Tolbert, 52 F.3d 1439, 1443 (7th Cir.1995). Further, "[b]ecause the parties rely on the pretrial conference to inform them precisely what is in controversy, the pretrial order is treated as superceding the pleadings and establishes the issues to be considered at trial." Id. at 1443"44. Moreover, the whole purpose of pretrial conferences and orders "is to clarify the real nature of the dispute at issue[;] a claim or theory not raised in the pretrial order should not be considered by the fact-finder." Id. at 1444 (quotations omitted). While this result may seem harsh, pretrial orders help to prevent protracted litigation due to changing theories and arguments such as those that we are encountering in this case. | Because the parties rely on the pretrial conference to inform them precisely what is in controversy, the pretrial order is treated as superceding the pleadings and establishes the issues to be considered at trial. | What do parties rely on pretrial conferences for? | 026544.docx | LEGALEASE-00131891-LEGALEASE-00131892 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 11367 | Structural Pres. Sys. v. Petty, 927 A.2d 1069 | 307A+750 | We consider first Structural's procedural claim that the trial court erred in rejecting its argument that Petty should be required to apportion his pre-existing injuries because it was not raised in its pre-trial statement and included in the pre-trial order. The pre-trial order limits the issues for trial and controls the subsequent course of the action, thereby precluding the interjection of new issues, absent modification of the order upon good cause. See Habtu v. Woldemichael, 694 A.2d 846, 849 (D.C.1997) (citations omitted); see also Super. Ct. Civ. R. 16(g) (setting forth the general subject of the pre-trial order and stating that it controls further proceedings unless subsequently modified). However, we cannot say on this record that Structural did not raise the apportionment issue pre-trial. Although not expressly characterized as such, Structural cited cases upon which it relied that address the issue, specifically, Williams v. Patterson, 681 A.2d 1147, 1150"51 (D.C.1996) (holding the lack of expert medical evidence to be fatal to plaintiff's proof where the case involved a complicated medical question due to pre-existing medical condition), and Baltimore, supra, 545 A.2d at 1231"32. It also disputed that Petty's alleged damages were proximately caused by its alleged negligence. The causation issue bears a reasonable relationship to the apportionment argument. The question of whether Petty's pre-existing hip injury caused his back pain, rather than the trip-and-fall, falls squarely within the causation analysis. Thus, Structural's claim that Petty should be required to prove that his injuries were caused by his accident, rather than some prior condition, can be inferred reasonably from the parties' joint pre-trial statement, which was incorporated into the pre-trial order. Therefore, the trial court erred in holding that Structural's apportionment argument was barred procedurally by the pre-trial order. | The pre-trial order limits the issues for trial and controls the subsequent course of the action, thereby precluding the interjection of new issues, absent modification of the order upon good cause. | What does a pretrial order do? | 027081.docx | LEGALEASE-00131486-LEGALEASE-00131487 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 11368 | Olson v. England, 206 Neb. 256 | 307A+749.1 | The purpose of a pretrial conference is to simplify the issues; amend the pleadings, when necessary; and avoid unnecessary proof of facts at the trial. . . . The subsequent course of an action is controlled by the agreements made at pretrial conference so long as they remain unmodified." Long v. Magnolia Petroleum Co., 166 Neb. 410, 418, 89 N.W.2d 245, 251 (1958). See, also Western Pipe and Supply, Inc. v. Heart Mountain Oil Co., Inc., 179 Neb. 858, 140 N.W.2d 813 (1966). | Subsequent course of an action is controlled by agreements made at pretrial conference so long as they remain unmodified. | Is a subsequent course of an action controlled by agreements made at pretrial conference? | Pretrial Procedure - Memo # 1922 - C-BP.docx | ROSS-003287302-ROSS-003287303 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 11369 | Dillard Dep't Stores v. Hall, 909 S.W.2d 491 | 307A+331 | As presently postured, this is a simple false arrest case. Parker admits that he wants the document production to explore whether he can in good faith allege racial discrimination. This is the very kind of "fishing expedition" that is not allowable under rule 167 of the Texas Rules of Civil Procedure. Loftin v. Martin, 776 S.W.2d 145, 148 (Tex.1989). Unlike depositions and interrogatories, requests for document production may not be used simply to explore. Id. | Unlike depositions and interrogatories, requests for document production may not be used simply to explore. Vernon's Ann.Texas Rules Civ.Proc., Rule 167. | "Unlike depositions and interrogatories, can requests for document production be used simply to explore?" | 027211.docx | LEGALEASE-00132305-LEGALEASE-00132306 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 11370 | Banks ex rel. Banks v. Sunrise Hosp., 120 Nev. 822 | 307A+331 | When a potential for litigation exists, " "the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." " Here, James's cardiac arrest while under anesthesia and his subsequent persistent vegetative state put Sunrise on notice that an error may have occurred in the operating room, whether caused by the physicians or the equipment and, therefore, that litigation was foreseeable. Consequently, Sunrise had a duty to preserve information relating to the attending physicians and the equipment. | When a potential for litigation exists, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. | "When a potential for litigation exists, is the litigant under a duty to preserve evidence which it knows or reasonably should know is relevant to the action?" | 027254.docx | LEGALEASE-00132061-LEGALEASE-00132062 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11371 | Scott Paper Co. v. Griffin, 409 So. 2d 1375 | 307A+749.1 | Next, appellants theorize that because a pretrial order governs the course of further action, it was error for the trial court to allow the sale for division pursuant to s 35-6-100 without amending it. We agree that a pretrial order may govern the future course of litigation in the action before the trial court. Currie v. Great Central Insurance Company, 374 So.2d 1330 (Ala.1979); Hardy v. Sawyer, 352 So.2d 1104 (Ala.1977). The problem with appellants' reasoning is that as the pretrial order stood, it lacked a provision for the manner of sale of the properties. Clearly, a further order of the trial court was necessary. When the trial court ruled favorably to appellees' motions to invoke s 35-6-100, over appellants' objections, it provided a means for effecting the sale through its order. Because we have decided already that appellees could invoke s 35-6-100, we find no error in the trial court's order allowing them to invoke it. Nevertheless, appellants argue further that the trial court's order allowing s 35-6-100 to be applied to this case was erroneous because it did not actually amend the existing pretrial order. Assuming, without deciding, that it was necessary to formally amend the existing pretrial order, we still cannot agree with appellants' contention that reversible error occurred. If it was error not to formally amend the pretrial order, it was merely an error in a matter of form and harmless error under the facts of this case. The record fails to show, and no one could contend seriously, that such an alleged error in form prejudiced any party. We, therefore, find appellants' arguments on this issue to be without merit. | A pretrial order may govern the future course of litigation in the action before the trial court. | Could a pretrial order govern the future course of litigation in the action before the trial court? | 027261.docx | LEGALEASE-00132227-LEGALEASE-00132228 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 11372 | Harris v. Ward Greenberg Heller & Reidy LLP, 151 A.D.3d 1808 | 307A+517.1 | With respect to appeal No. 2, because plaintiff's voluntary notices of discontinuance were timely, the action was discontinued and "it is as if it had never been; everything done in the action is annulled and all ... order[s] in the case are nullified" (Newman v. Newman, 245 A.D.2d 353, 354, 665 N.Y.S.2d 423). Thus, the order in appeal No. 2 is a nullity and plaintiff's appeal from that order is academic. | When plaintiff's voluntary notice of discontinuance is timely, the action is discontinued and it is as if it had never been; everything done in the action is annulled and all orders in the case are nullified. McKinney's CPLR 3217(a). | Can an action be discontinued if a plaintiff's voluntary notice of discontinuance is timely? | 027561.docx | LEGALEASE-00131803-LEGALEASE-00131804 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 11373 | U.S. Bank Nat. Ass'n v. Anthony-Irish, 204 So. 3d 57 | 106+30 | Flaws in a court's procedural jurisdiction arise in a number of contexts. If a court enters an order prior to the filing of proper pleadings, the court is said to lack jurisdiction. Lovett v. Lovett, 93 Fla. 611, 112 So. 768, 775"76 (1927). Likewise, if a court grants relief beyond the scope of the pleadings, it acts in excess of its jurisdiction. See Fine v. Fine, 400 So.2d 1254, 1255 (Fla. 5th DCA 1981) ("The jurisdiction of the court can be exercised only within the scope of the pleadings...."). The court is said to act outside of its jurisdiction if it enters additional orders after a voluntary dismissal or a final judgment that did not reserve jurisdiction for the specific purpose of entering those orders. Paulucci v. Gen. Dynamics Corp., 842 So.2d 797, 803 (Fla.2003); Davidson v. Stringer, 109 Fla. 238, 147 So. 228, 229 (1933). In all of these cases, it is clear that the court retains "subject-matter jurisdiction""the power to decide matters within a general category of cases"yet the court loses power over the specific dispute. Stephens, supra note 3, at 10. | Though a court may lack procedural jurisdiction, losing power over a specific dispute by entering an order prior to the filing of proper pleadings, granting relief beyond the scope of the pleadings, or entering additional orders after a voluntary dismissal or a final judgment, it retains "subject-matter jurisdiction," the power to decide matters within a general category of cases. | Does a court lack procedural jurisdiction if it enters additional orders after a voluntary dismissal? | 028040.docx | LEGALEASE-00131805-LEGALEASE-00131806 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 11374 | White v. Tariq, 299 S.W.3d 1 | 307A+517.1 | First, the trial court properly applied the 2005 amendments to Section 538.225 to Plaintiffs' 2007 petition. Section 538.305 provides that the 2005 amendments to Section 538.225 apply "to all causes of action filed after August 28, 2005." Mo.Rev.Stat. " 538.300 (Cum.Supp.2005). Although Plaintiffs filed their original action in 2000, Plaintiffs voluntarily dismissed that action without prejudice. voluntary dismissal without prejudice renders that cause of action a nullity; it is treated as never having been filed." Wittman v. Nat'l Supermarkets, Inc., 31 S.W.3d 517, 520 (Mo.App. E.D.2000). Plaintiffs filed their second action in 2007 pursuant to the "savings" statute of Section 516.230, which extends the time to "commence a new action" one year after a plaintiff suffers a "nonsuit." Mo.Rev.Stat. " 516.230 (2000); Kirby v. Gaub, 75 S.W.3d 916, 918 (Mo.App. S.D.2002) (voluntary dismissal without prejudice is a "species of nonsuit" under Section 516.230). Because Plaintiffs' "new action" was filed after August 28, 2005, the trial court did not err in applying the 2005 amendments to Section 538.225. | A voluntary dismissal without prejudice renders that cause of action a nullity; it is treated as never having been filed. | Does a voluntary dismissal without prejudice render that cause of action a nullity? | Pretrial Procedure - Memo # 2518 - C-BP.docx | ROSS-003300107-ROSS-003300108 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 11375 | Orbison v. Welsh, 242 Ind. 385 | 371+2750 | As was the case with the Toll Road Act, supra, nowhere in the instant statute is there any provision for the assessment of taxes. The payment of a tax is compulsory and not optional, and it entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens alike. Yourison, d. b. a., v. State of Del., p. b. r. (1927), 3 W.W.Harr. 577, 579, 33 Del. 577, 579, 140 A. 691, 692; Northern Counties Investment Trust v. Sears (1895), 30 Or. 388, 401, 41 P. 931, 935, 35 L.R.A. 188, 194. Under this statute the tolls, rentals, and fees are to be paid by the users of the port or its facilities, but this is merely compensation for the use of the property and the improvements of the port and can in no sense be considered a tax. | The payment of a tax is compulsory and not optional, and it entitles taxpayer to receive nothing in return, other than rights of government which are enjoyed by all citizens alike. | What does a tax entitle the taxpayer to receive in return? | Taxation - Memo # 140 - C - KBM.docx | ROSS-003288215-ROSS-003288216 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11376 | Efros v. Russo, 68 N.J. Super. 110 | 268+405 | "Taxes," as the term is generally used, are annual, recurring, pecuniary burdens imposed by legislative authority upon individuals or property to support the government. The word "taxes' brings to mind annual exactions to defray ordinary expenses of the government in the promotion of the general welfare of the municipality, county, state or country. "Assessments' are those special and local impositions upon property in the immediate vicinity of the municipal improvements which are necessary to pay for the improvement and are laid with reference to the special benefit which the property is supposed to have derived therefrom. Cirasella v. Village of South Orange, 57 N.J.Super. 522, 155 A.2d 134 (App.Div.1959). | "Assessments" are special and local impositions upon property in the immediate vicinity of municipal improvements which are necessary to pay for improvement, and are laid with reference to special benefit which property is supposed to have derived therefrom. | What do differences between assessment and tax include? | 044662.docx | LEGALEASE-00131570-LEGALEASE-00131571 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11377 | Wright v. Steers, 179 N.E.2d 721 | 371+2001 | It is contended that although the Act in question calls the tax an "excise" and "license" tax, at no place therein does it define the use or privilege for which the tax is levied. It does not fix the purpose for which the proceeds from the tax shall be applied. It is further pointed out that the amount of tax in each instance is based upon the value of the property, and not related to the extent of the use made. It is true that the nature of the tax must be determined by its operation and incidence, rather than by its title or designation made by the legislature. In other words, the legislature may not change a factual situation by giving it a different name or designation. However, none of these factors are decisive of the question here. 51 Am.Jur., Taxation, " 28, pp. 56, 57; Miles v. Dept. of Treasury, supra; Flint v. Stone Tracy Co. (1911), 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389; Nicol v. Ames (1899), 173 U.S. 509, 19 S.Ct. 522, 43 L.Ed. 786. | The nature of tax must be determined by its operation and incidence, rather than by its title or designation made by the legislature. | Is the nature of a tax determined by its operation and incidence rather than by legislative title or designation? | 044788.docx | LEGALEASE-00131493-LEGALEASE-00131494 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11378 | Gross v. Ocean Twp., 184 N.J. Super. 144 | 371+2001 | The essential characteristic of a tax is a compulsory contribution to the support of government, imposed upon individuals or property pursuant to legislative authority. See Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 309, 81 A.2d 485 (1951); In re Oshkosh Foundry Co., 28 F.Supp. 412, 414 (E.D.Wis.1939). Regulations requiring a license to engage in certain activity apply generally to all persons engaged in a particular business, trade, profession or calling, and the license fee is ordinarily aimed at defraying the expense fairly attributable to the cost of regulation. See Bellington v. East Windsor Tp., 17 N.J. 558, 564, 112 A.2d 268 (1955); N.J.S.A. 40:52"1 and N.J.S.A. 40:52"2. Here the township imposed no charge by way of a tax or license fee on all towers operating within the municipality. Towers were not required to submit a bid or to bid any minimum amount. Likewise, the regulatory aspects of the bid specifications were binding only on the successful bidder; all others could provide towing services in the township without regulation. In short, the township did not regulate the towing business generally. However, for the privilege of being called upon by the township to tow various vehicles, the successful bidder was required to accept the terms and specifications prescribed by the township. The township did not "tax" any towing company for the advantage of being called by the township police department to perform towing services for the township; it simply granted the privilege to the highest bidder. | Essential characteristic of a tax is a compulsory contribution to the support of government, imposed upon individuals or property pursuant to legislative authority. | Is tax a compulsory contribution to support the government? | 044844.docx | LEGALEASE-00131630-LEGALEASE-00131631 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 11379 | Golden State Bank v. Dolan, 37 Colo. App. 29 | 371+2001 | "[T]he nature of a tax must be Determined by its operation rather than by particular descriptive language that may have been applied to it.' Educational Films Corp. v. Ward, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400; (emphasis added) See also Walker v. Bedford, 93 Colo. 400, 26 P.2d 1051. Thus, whether or not former section 55 is characterized as a franchise tax or income tax, the availability of section 59 to a bank taxed under former section 55 is to be determined on the basis of the legislative intent. The fundamental rule of statutory construction is that "the legislative intent is to be ascertained and given effect, if possible." Alvarez v. District Court, Colo., 525 P.2d 1131; People v. Marques, Colo., 520 P.2d 113. | Nature of a tax must be determined by its operation rather than by the particular descriptive language that may have been applied to it. | Should the nature of a tax be determined by its operation rather than its particular descriptive language? | 044877.docx | LEGALEASE-00131887-LEGALEASE-00131888 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11380 | State, ex rel. Emrick, v. Wasson, 62 Ohio App. 3d 498 | 268+405 | Although "tax" and "assessment" are similar concepts in that they are government imposed financial burdens for a public or quasi-public purpose, Ohio maintains a functional distinction between the two. A tax is a burden levied on citizens for the general operation of the government. By contrast, an assessment is a narrower burden levied on specific property owners to cover the cost of benefits bestowed on the property by public improvements. As stated in Lima v. Cemetery Association (1884), 42 Ohio St. 128, at paragraph one of the syllabus: "In a general sense, a tax is an assessment, and an assessment is a tax; but there is a well-recognized distinction between them, an assessment being confined to local impositions upon property for the payment of the cost of public improvements in its immediate vicinity, and levied with reference to special benefits to the property assessed." (Emphasis added.). | Although "tax" and "assessment" are similar concepts in that they are government-imposed financial burdens for public or quasi-public purpose, functional distinction exists between the two; tax is burden levied on citizens for general operation of government, and assessment is narrower burden levied on specific property owners to cover costs of benefits bestowed on property by public improvements. | "Does a functional distinction exist between a ""tax"" and an ""assessment""?" | Taxation - Memo # 288 - C - KBM.docx | ROSS-003301951-ROSS-003301952 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 11381 | Reed v. City of New Orleans, 593 So. 2d 36 | 371+2001 | The nature of a tax is determined not by its title, but by its incidents, attributes and operational effect. The realities and substance of the tax must be examined, not its form. City of New Orleans v. Scramuzza, supra; City of New Orleans v. Christian, 229 La. 855, 87 So.2d 6 (1956); Fleischmann Co. v. Conway, 168 La. 547, 122 So. 845 (1929); Lionel's Cigar Store v. McFarland, 162 La. 956, 111 So. 341 (1927). | Nature of tax is determined not by its title, but by its incidents, attributes, and operational effect; realities and substance of tax must be examined, not its form. LSA-Const. Art. 6, S 29. | Should the nature of a tax be determined by its attributes and operational effect? | 044992.docx | LEGALEASE-00132188-LEGALEASE-00132189 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 11382 | Hecht v. Components Int'l, 22 Misc. 3d 360 | 386+7 | It appears that the CFAA is not intended to preempt state law claims based on unauthorized access to a computer such as trespass to chattel, conversion, or fraud. See, Pacific Aerospace & Electronics v. Taylor, 295 F.Supp.2d 1188, 1194 (E.D.Wash.2003). The tort of trespass to chattel consists of intentionally dispossessing another of the chattel or using or intermeddling with a chattel in another's possession. Restatement (Second) of Torts " 217. Liability will attach if the possessor is dispossessed of the chattel; the chattel is impaired as to condition, quality, or value; or the possessor is deprived of the use of the chattel for a substantial time. Id. at " 218. Dispossession may be committed in a variety of ways, including taking the chattel from the possession of another without the other person's consent or destroying the chattel while it is in the other person's possession. Id. at " 221. If the dispossession is without consent, it is immaterial that the actor reasonably, but mistakenly believes that he is also entitled to possession. Id. Comment on clause a. If the dispossession seriously interferes with the right of the other to control the chattel, the actor may be subject to liability for conversion. Id. at " 222. Harmless intermeddling with a chattel is not actionable. Id. at " 228; Comment on clauses b and c | For tort of trespass to chattel, dispossession of the chattel may be committed in a variety of ways, including taking the chattel from the possession of another without the other person's consent or destroying the chattel while it is in the other person's possession. Restatement (Second) of Torts S 221. | How can dispossession of chattel be committed for the tort of trespass to chattel? | 047301.docx | LEGALEASE-00132489-LEGALEASE-00132490 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11383 | Calvert v. Indus. Claim Appeals Office, 155 P.3d 474 | 92+4186 | Because receipt of workers' compensation benefits does not implicate a fundamental right, our review under a substantive due process analysis is governed by the rational basis standard. Alexander v. Indus. Claim Appeals Office, 42 P.3d 46 (Colo.App.2001). | Because receipt of workers' compensation benefits does not implicate a fundamental right, a review under a substantive due process analysis is governed by the rational basis standard. U.S.C.A. Const.Amend. 14. | Is workmens compensation a fundamental right? | 047790.docx | LEGALEASE-00131744-LEGALEASE-00131745 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 11384 | Wolfe v. Sibley, Lindsay & Curr Co., 36 N.Y.2d 505 | 413+1910 | Furthermore by seeking to apply the tort concept of foreseeability the respondents disregard the basic policy of workmen's compensation which is that if the injury was accidental and arose in the course of employment then recovery should be allowed (1 Larson, Workmen's Compensation Law, s 2). This is not to say that liability should be extended indefinitely, we must consider the record before us in light of the commonsense viewpoint of the average man (Matter of Masse v. Robinson Co., 301 N.Y. 34, 92 N.E.2d 56). It is enough to say that the claimant was an active participant in the tragedy and as a result suffered disablement, albeit psychological, for which she should be compensated. | Workmen's compensation liability should not be extended indefinitely and court must consider record before it in light of commonsense viewpoint of average man. | Should workmens liability be extended indefinitely and from what viewpoint should the court consider the record before it? | 047807.docx | LEGALEASE-00131721-LEGALEASE-00131722 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11385 | People v. Ginsberg, 80 Misc. 2d 921 | 63+1(1) | At common law both the giver of a bribe and its recipient committed the crime of Bribery. It originated as an offense against public justice which occurred when a judge or other individual concerned with the administration of justice took any undue reward to influence his behavior in office. (4 Blackstone's Comm. 139; see also, Bishop, New Criminal Law 468 (subd. 3), Perkins, Criminal Law, 2d ed., at 469). The former Penal Law also merged the giving and receiving into a single offense which was defined in terms of a public officer and influence upon the exercise of the powers or functions of office. (Penal Law of 1901, s 378). Thus, a traditional element of the crime of bribery is a promised or actual influence upon official powers or duties. "The gist of the crime of bribery is the wrong done to the people by corruption In the public service." (People v. Chapman, 13 N.Y.2d 97, 101, 242 N.Y.S.2d 200, 202, 192 N.E.2d 160, 161) (emphasis supplied). | A traditional element of the crime of bribery is a promised or actual influence on official powers or duties. Penal Law 1965, SS 10.00, subd. 15, 200.10. | Is a promised or actual influence upon official powers or duties a traditional element of bribery? | 011352.docx | LEGALEASE-00133269-LEGALEASE-00133270 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 11386 | People v. Wallace, 57 Ill. 2d 285 | 63+1(1) | Section 33-1 of the Criminal Code is a comprehensive statute which details vaious situations involving bribery. As applicable to this appeal, the offeror violates the bribery provisions of section 33-1 when he promises or tenders to a public official property the official is unauthorized to accept, with intent to influence the conduct of that official, or he promises or tenders such property to any person with the intent to have that person influence the official. (Ill.Rev.Stat.1963, ch. 38, par. 33-1(a) and (c).) There is no explicit statutory requirement that the official accept the property in order to charge the offeror with bribery. The mere offer or promise with the requisite intent is sufficient to constitute the completed offense of bribery. This is in accord with the Lyons decision. The defendants' conduct in this case, which is comparable to the conduct in Lyons and Peters, is squarely within the prohibition of section 33-1(a). | Mere offer or promise with requisite intent is sufficient to constitute the completed offense of bribery. S.H.A. ch. 38, S 33-1(a, c). | Is the mere offer or promise with requisite intent sufficient to constitute the completed offense of briber? | Bribery - Memo #255 - C-CSS.docx | ROSS-003300632-ROSS-003300633 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11387 | United States v. Jennings, 160 F.3d 1006 | 63+11 | Direct evidence of intent is unnecessary, however. To prove bribery under " 201, the government is not required to prove an expressed intention (or agreement) to engage in a quid pro quo. Such an intent may be established by circumstantial evidence. See United States v. Massey, 89 F.3d 1433, 1439 (11th Cir.1996); United States v. Biaggi, 909 F.2d 662, 684 (2d Cir.1990). Also, the government need not show that the defendant intended for his payments to be tied to specific official acts (or omissions). Bribery requires the intent to effect an exchange of money (or gifts) for specific official action (or inaction), but each payment need not be correlated with a specific official act. See Arthur, 544 F.2d at 734. Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action. See id. In other words, the intended exchange in bribery can be "this for these" or "these for these," not just "this for that." Further, it is not necessary for the government to prove that the payor intended to induce the official to perform a set number of official acts in return for the payments. The quid pro quo requirement is satisfied so long as the evidence shows a "course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor." Id. (internal quotation omitted). Thus, all that must be shown is that payments were made with the intent of securing a specific type of official action or favor in return. For example, payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf. See id. This sort of "I'll scratch your back if you scratch mine" arrangement constitutes bribery because the payor made payments with the intent to exchange them for specific official action. | Government is not required to prove an expressed intention or agreement to engage in a quid pro quo in order to prove bribery of public official; such an intent may be established by circumstantial evidence. 18 U.S.C.A. S 201(b)(1)(A). | How can the prosecution prove the intent element in a bribery case? | 011402.docx | LEGALEASE-00133180-LEGALEASE-00133181 | Order, SA | 0.88 | 1 | 0 | 0 | 1 | |
| 11388 | State v. Italiano, 18 Ohio St. 3d 38 | 63+1(1) | Defendant's argument in support of these first two propositions of law is premised upon an overly restrictive view of the role of the police officers at a pretrial. He asserts that their only role is that of witnesses, and cites the officers' testimony and a Cleveland Police Department manual outlining the officers' duties as proof of this assertion. For purposes of a prosecution for bribery of a public official, however, an official duty can arise from usage as well as from a written rule or regulation. United States v. Birdsall (1914), 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930; Kable v. State (1973), 17 Md.App. 16, 299 A.2d 493, certiorari denied (1973), 268 Md. 750. | For purposes of prosecution for bribery of a public official, official duty can arise from usage as well as from a written rule or regulation. R.C. S 2921.02. | "When can a public official's ""official duties"" arise from for purposes of prosecution for bribery of a public official?" | Bribery - Memo #283 - C - LB.docx | ROSS-003286690-ROSS-003286691 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11389 | Small v. Fritz Companies, 30 Cal. 4th 167 | 302+34(1) | Ideally, what is needed is some device to separate meritorious and nonmeritorious cases, if possible in advance of trial. California's requirement for specific pleading in fraud cases serves that purpose (Committee on Children's Television, Inc. v. General Foods Corp., supra, 35 Cal.3d at pp. 216"217, 197 Cal.Rptr. 783, 673 P.2d 660). "In California, fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.] "Thus " "the policy of liberal construction of the pleadings ... will not ordinarily be invoked to sustain a pleading defective in any material respect." " [Citation.] This particularity requirement necessitates pleading facts which "show how, when, where, to whom, and by what means the representations were tendered." ' "(Lazar v. Superior Court, supra, 12 Cal.4th at p. 645, 49 Cal.Rptr.2d 377, 909 P.2d 981.) | The policy of liberal construction of the pleadings will not ordinarily be invoked to sustain a pleading defective in any material respect. | Will the policy of liberal construction of the pleadings be invoked to sustain a pleading defective in any material respect? | 023243.docx | LEGALEASE-00132964-LEGALEASE-00132965 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 11390 | Arizona State Highway Dep't v. Bechtold, 105 Ariz. 125 | 307A+750 | The admitted purpose of the pre-trial order is to simplify issues and shorten trial time. But such orders are not absolute and do not completely jell issues in an action. Zuniga v. City of Tucson, 5 Ariz.App. 220, 425 P.2d 122 (1967). "(A)s with all rules problems, the dominant purpose of the courts must be to do justice rather than to vindicate procedural rules." 1A Barron & Holtzoff, Federal Practice and Procedure, s 473, at 851 (Wright ed. 1960). Rule 16, itself provides that the trial judge may modify the pretrial order at the trial to prevent manifest injustice to the litigants. Loya v. Fong, 1 Ariz.App. 482, 404 P.2d 826 (1965). Additionally, "(f)ailure formally to amend the pre-trial order is not error where the court admits evidence to the same effect as if the order had been amended." 3 Moore, Federal Practice 16.20 at 1138 (2d ed. 1968). | Purpose of pretrial order is to simplify issues and shorten trial time, but such orders are not absolute and do not completely jell issues in action. | Are pretrial orders that simplify issues and shorten trial time absolute? | 027083.docx | LEGALEASE-00132808-LEGALEASE-00132809 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 11391 | Rust-Oleum Corp. v. Fitz, 801 N.E.2d 754 | 307A+749.1 | The law is well settled that a pre-trial order shall control the proceedings once it is entered. Webber v. Miller, 731 N.E.2d 476, 478 (Ind.Ct.App.2000). The express purpose of T.R. 16 is to provide for a pre-trial conference to simplify the issues raised by the pleadings and to define these issues within a pre-trial order. N. Miami Consol. Sch. Dist. v. State ex rel. Manchester Cmty. Sch., 261 Ind. 17, 20, 300 N.E.2d 59, 62 (1973). Although we recognize the binding effect of a pre-trial order, this does not mean that it must be rigidly and pointlessly adhered to at trial. Whisman v. Fawcett, 470 N.E.2d 73, 76 (Ind.1984). | Binding effect of pretrial order does not mean that order must be rigidly and pointlessly adhered to at trial. Trial Procedure Rule 16(J). | Does the binding effect of pretrial order mean that order must be rigidly and pointlessly adhered to at trial? | Pretrial Procedure - Memo # 1891 - C - VP.docx | ROSS-003287291-ROSS-003287292 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 11392 | Grammas v. Colasurdo, 48 N.J. Super. 543 | 388+251(1) | We are of the opinion that defendants' attorney's opening to the jury, plaintiff's anticipation of the defense, and the extensive testimony on behalf of the defendants as to the length of time during which the stream over plaintiff's land had pursued the same course and as to the incident in 1937, when to clean out the ditch the defendants admittedly blew out the stream with dynamite, require the conclusion that the issue of a right to an easement by prescription was tried by consent of the parties. While we have concluded that the question of whether or not the defendants have a prescriptive easement by virtue of water running from their uplands through the ditch on plaintiff's property was properly brought in issue, it is our opinion that the question of whether or not the defendants have a right of natural drainage was never defined or squarely recognized by the parties. This issue was not stated in the pretrial order and may be deemed to be waived. The trial judge is not required to instruct the jury concerning matters not within the scope of the pretrial order, Jenkins v. Devine Foods, Inc., 3 N.J. 450, 70 A.2d 736, 22 A.L.R.2d 593 (1950); Schlossberg v. Jersey City Sewerage Authority, 15 N.J. 360, 370, 104 A.2d 662 (1954); Lertch v. McLean, supra, 18 N.J. 68, 72, 73, 112 A.2d 735; where the issue was not tried by consent. The issue of natural watercourse was not clearly recognized or tried in this case. | Trial judge is not required to instruct jury concerning matters not within scope of pretrial order where issue is not tried by consent. | Can a court refuse to give an instruction to jury on an issue not embodied in pretrial order? | 027159.docx | LEGALEASE-00133123-LEGALEASE-00133124 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 11393 | Lydon v. Eagle Food Centers, 297 Ill. App. 3d 90 | 307A+517.1 | Section 13-217 provides that, if the time to initiate an action is limited, and if the plaintiff voluntarily dismisses the action or the court dismisses the action for want of prosecution, "then, whether or the time limitation for bringing such action expires during the pendency of such action, the plaintiff may commence a new action within one year or within the remaining period of limitation, whichever is greater." 735 ILCS 5/13-217 (West 1994) (Public Act 89-7, " 15, eff. March 9, 1995, amended section 13-217 to prohibit refilings after a voluntary dismissal or a dismissal for want of prosecution unless the refiling occurs within the original limitation period. The amendment does not apply to plaintiff's claim, however, because her cause of action accrued before the effective date of the amendment. See Public Act 89-7, " 15, eff. March 9, 1995. Moreover, the supreme court has recently declared Public Act 89-7 void in its entirety. Best v. Taylor Machine Works, 179 Ill.2d 367, 467, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997).) Section 13-217 provides a plaintiff with the absolute right to refile a complaint within one year or within the remaining limitation period, whichever is greater. Timberlake v. Illini Hospital, 175 Ill.2d 159, 163, 221 Ill.Dec. 831, 676 N.E.2d 634 (1997). A plaintiff can refile the action only once, however. Timberlake, 175 Ill.2d at 163, 221 Ill.Dec. 831, 676 N.E.2d 634. | Plaintiff who voluntarily dismisses action can refile action only once under statute creating absolute right to refile complaint within one year or within remaining limitation period, whichever is greater. S.H.A. 735 ILCS 5/13-217. | Can a plaintiff dismiss an action that originally was filed within the statute of limitations and then refile the action after the statute of limitations ordinarily would have expired? | Pretrial Procedure - Memo # 2297 - C - SK.docx | ROSS-003313471-ROSS-003313472 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11394 | Geo. C. Christopher & Son v. Kansas Paint & Color Co., 215 Kan. 185 | 307A+749.1 | Defendant claims error in the trial court's failing to admit an exhibit in the form of a daily inspection report written by the U. S. Corps of Engineers, which disclosed the structural steel was not well cleaned prior to painting. This exhibit was offered by defendant without anyone present to testify as to its authenticity. Defendant's complaint with regard to the trial court's rule on this exhibit was that the plaintiff, having listed the exhibit on the pretrial order, should not be allowed to object on an alleged lack of authenticity. The listing of exhibits by parties at a pretrial conference is for identification purposes only. Their authenticity must be provided at the time of trial. The trial court did not err in refusing to admit this exhibit. | Listing of exhibits by parties at a pretrial conference is for identification purposes only, and authenticity of exhibits must be provided at time of trial. | Is a listing of exhibits by parties at a pretrial conference for identification purposes only? | Pretrial Procedure - Memo # 2529 - C - PB.docx | ROSS-003288295-ROSS-003288296 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 11395 | CHCA Woman's Hosp. v. Lidji, 369 S.W.3d 488 | 307A+517.1 | Texas Rule of Civil Procedure 162 provides, "At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." Tex.R. Civ. P. 162. A party has an "absolute right" to file a nonsuit. Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex.2010). A voluntary nonsuit "extinguishes a case or controversy from the moment the motion for nonsuit is filed or an oral motion is made in open court" and it "renders the merits of the nonsuited case moot." Id. (quoting Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98, 100 (Tex.2006) (per curiam) and citing Villafani v. Trejo, 251 S.W.3d 466, 469 (Tex.2008)). Section 74.351 does not address what effect, if any, a claimant's nonsuit has on the 120"day time period for serving expert reports, nor does it expressly allow for tolling of the 120"day time period. | A voluntary nonsuit extinguishes a case or controversy from the moment the motion for nonsuit is filed or an oral motion is made in open court, and it renders the merits of the nonsuited case moot. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a nonsuit become effective from the moment the motion for nonsuit is filed? | 028579.docx | LEGALEASE-00132752-LEGALEASE-00132753 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 11396 | Israel v. Carpenter, 120 F.3d 361 | 307A+517.1 | In gauging the preclusive effect of the stipulation of dismissal, the district court (citing Duncan I) correctly decided that the question is controlled by principles of Massachusetts contract law. See Summary Judgment Order at ("Massachusetts applies the principles of contract law to the interpretation of a stipulated dismissal.") (citing Duncan I, 1995 WL 96954, at ). Massachusetts law evidently allows and requires inquiry into the intended scope and effect of such a stipulation; in Massachusetts, "[t]he circumstances surrounding the making of [an] agreement must be examined to determine the objective intent of the parties." Edmonds v. United States, 642 F.2d 877, 881 (1st Cir.1981) (citing Louis Stoico, Inc. v. Colonial Dev. Corp., 369 Mass. 898, 902, 343 N.E.2d 872 (1976)). Unremarkably, "[i]n the first instance, it is for the court ... to determine if a written document is or is not ambiguous." Boston Edison Co. v. Federal Energy Regulatory Comm'n, 856 F.2d 361, 365 (1st Cir.1988). But "[i]n the search for plain meaning," the court should consider the clause at issue in light of "all the other phraseology contained in the instrument," and should also direct its interpretation "to the meaning of the terms of the writing or writings in the light of the circumstances of the transaction." Id. (internal quotations and citations omitted) (emphasis added). | Massachusetts law allows and requires inquiry into intended scope and effect of stipulation of dismissal. | Does law allows and requires inquiry into the intended scope and effect of stipulation of dismissal? | 028583.docx | LEGALEASE-00132766-LEGALEASE-00132767 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 11397 | Veillion v. Knapp & E., 158 So. 2d 336 | 413+1 | "I can readily understand how an employer, who finds an employee, to whom he is paying workmen's compensation, working on another job as an ironworker without any restrictions so far as his job referral is concerned, would find it hard to understand why he should continue to pay such a man workmen's compensation. This is particularly true inasmuch as compensation, in principle, is supposed to cover a loss of earnings resulting to an employee during the time of his disability, and charge such loss to industry as an ordinary business expense. It is not necessarily designed to make him whole again.Its original purpose was simply to offset the employee's loss of earnings to some degree, and provide him an income until he could return to work. However, our appellate courts have taken a somewhat different view in this type of case, and this Court is obliged to follow the jurisprudence, regardless of its own views as to whether it is right or wrong to require an employer to pay compensation to an employee for an injury when in fact he is engaged in the same type of work at a greater wage. Certainly, the law is clear under our jurisprudence that if a worker is obliged to perform his duties with pain, or increased hazard to himself or his co-workers, he is totally disabled within the meaning of the Workmen's Compensation Act. | Workmen's compensation is supposed to cover loss of earnings resulting to employee during time of his disability and it is not necessarily designed to make him whole again. LSA-R.S. 23:1021 et seq. | What is workmens compensation supposed to cover and what is it not necessarily designed to do? | 047879.docx | LEGALEASE-00132962-LEGALEASE-00132963 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11398 | Tampa Aluminum Prod. Co. v. Watts, 132 So. 2d 414 | 413+1 | Under the facts in the Dibbs case we find no objection to the interim fee since other benefits may have to be determined later and an additional fee awarded. As determined by the deputy commissioner we find these objections to the fee awarded: (1) It is based on an abstract formula that we cannot relate to the testimony or the record in the case. (2) Workmen's compensation cases, like other lawsuits, must generally be determined by their peculiar facts and the facts in these cases do not warrant the amount awarded. (3) Tampa Aluminum Products Company, Inc., is a small company, employing a small force, not exceeding five men and the amount would impose an inordinate burden on the company. (4) We fail to find support in the record for addition of the $850, representing $150 per hour for hearing time and $600 for incidentals to the fee allowed. (5) The fee of $600 allowed Watts' attorney was excessive in that the benefits were shown to not exceed $1,200, liability to Watts was admitted, then the cases were tried together and were controlled by the same testimony, as well as other factual circumstances. (6) In awarding the fees in this case it is quite evidence that the deputy commissioner did not take into account some of the factors pointed out in this opinion. (7) The workmen's compensation act was pitched on the theory that the claimant could litigate his own cause but we are aware that in many cases this is not practical; the Dibbs case is in this class but the record does not exceed 375 pages and we fail to find other factors that would warrant the fee allowed. (8) Another thing, workmen's compensation deals with the problems of the laboring man and his relation to society. Benefits are measured on the basis of compensation. Attorney's fees are incident to benefits and if not measured by the factors pointed out herein, they are liable to grow and grow until they kill the goose that laid the golden eggs. | Workmen's compensation cases, like other lawsuits, must generally be determined by their peculiar facts. | "Should workmens compensation cases, like other lawsuits, generally be determined by their peculiar facts?" | 047891.docx | LEGALEASE-00133056-LEGALEASE-00133057 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 11399 | Shelter Mut. Ins. Co. v. Vulgamott, 96 S.W.3d 96 | 307A+517.1 | Rule 67.02(a)4 provides that "a civil action may be dismissed by the plaintiff without order of the court anytime prior to the introduction of evidence at the trial." Appellant is correct that a plaintiff's voluntary dismissal of his or her cause under Rule 67.02(a) is effective as of the date it is filed, and "after a case is dismissed, the trial court may take no further action and any step attempted is viewed as a nullity." Freeman v. Leader Nat'l Ins. Co., 58 S.W.3d 590, 595 (Mo.App. E.D.2001). "In other words, the trial court loses jurisdiction as of the date of dismissal." Id. " "Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, it is as if the suit were never brought." " In re Estate of Klaas, 8 S.W.3d 906, 909 (Mo.App. S.D.2000) (quoting Curators of Univ. of Mo. v. St. Charles County, 985 S.W.2d 810, 814 (Mo.App. E.D.1998)). | Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, it is as if the suit were never brought. | "Once a plaintiff voluntarily dismisses a claim prior to the introduction of evidence, is it as if the suit were never brought?" | 028243.docx | LEGALEASE-00133596-LEGALEASE-00133597 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11400 | Liberman v. Liberman, 844 S.W.2d 79 | 307A+517.1 | This court has stated that a motion for attorney's fees under " 452.355 is not an independent action like a motion to modify. Potter v. Desloge, 625 S.W.2d 927, 930[4] (Mo.App.1981). Rather, the language "from time to time" has been interpreted consistently with the language "pending the suit" under the old law, " 452.070, RSMo 1969. Id. In Brucker, this court allowed the respondent to recover attorney's fees for her appeal. Brucker, 607 S.W.2d at 445[1]. However, the court specifically pointed out that the divorce case was still pending upon disposition of the appeal. Id. at 444. In the case at hand, the suit is no longer pending. When a plaintiff voluntarily dismisses an action without prejudice before introduction of evidence at trial, the trial court loses jurisdiction as of the date of dismissal. Division of Family Services v. Coholan, 706 S.W.2d 569, 570[1] (Mo.App.1986); J.S. Samland, 675 S.W.2d at 97[5]. In this case, that date was July 8, 1991. Husband filed his motion on August 29, 1991. Therefore, the trial court was without jurisdiction to entertain Husband's motion | When plaintiff voluntarily dismisses action without prejudice before introduction of evidence at trial, trial court loses jurisdiction as of date of dismissal. V.A.M.R. 67.01. | Does the trial court lose jurisdiction as of the date of dismissal of a case? | 028269.docx | LEGALEASE-00133632-LEGALEASE-00133633 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 11401 | Brye v. Brakebush, 32 F.3d 1179 | 307A+517.1 | Where, as here, the dismissal is voluntary, Wisconsin law presumes that the dismissal is not on the merits "[u]nless otherwise specified in the order" Wis.Stat. " 805.04(2). See also Marshall-Wisconsin Co. v. Juneau Square Corp., 139 Wis.2d 112, 406 N.W.2d 764, 773 (1987). "It is undoubtedly the law of this state that a seasonable voluntary dismissal by plaintiff of his cause of action, or a dismissal pursuant to a stipulation, is no bar to the bringing of a subsequent action for the same cause and between the same parties"). In dismissing Brye's petition, the Circuit Court did not expressly state that the dismissal was on the merits. The dismissal order did, however, provide that the dismissal of the petition was "with prejudice" at least with respect to any "further proceedings in regards to the charge of discrimination made before the Equal Rights Division...." Seizing on this "with prejudice" language, the defendants and the district court concluded that the state court's dismissal must be afforded preclusive effect because under Wisconsin law, a dismissal with prejudice is tantamount to a judgment on the merits. M.T.H., 412 N.W.2d at 165; In re Paternity of C.M.G., 166 Wis.2d 1052, 481 N.W.2d 708 (Ct.App.1992). Cf. 9 Charles Wright & Arthur Miller, Federal Practice and Procedure: Civil " 2367 (1971 & Supp.1989). | Under Wisconsin law, where dismissal is voluntary, it is presumed that dismissal is not on the merits unless otherwise specified in order. W.S.A. 805.04(2). | "Under the law, where dismissal is voluntary, is it presumed that dismissal is not on the merits unless otherwise specified in an order?" | 028287.docx | LEGALEASE-00133650-LEGALEASE-00133651 | Order, SA | 0.88 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11402 | Univ. of Texas Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98 | 307A+517.1 | Under the Texas Rules of Civil Procedure, "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." Tex. R. Civ. P. 162. Rule 162 applies in this case because Shultz filed the nonsuit while this matter was pending on interlocutory appeal from UTMB's pretrial plea to the jurisdiction. Under these circumstances, the nonsuit extinguishes a case or controversy from "the moment the motion is filed" or an oral motion is made in open court; the only requirement is "the mere filing of the motion with the clerk of the court." Shadowbrook Apts. v. Abu"Ahmad, 783 S.W.2d 210, 211 (Tex.1990); see also Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). While the date on which the trial court signs an order dismissing the suit is the "starting point for determining when a trial court's plenary power expires," a nonsuit is effective when it is filed. In re Bennett, 960 S.W.2d 35, 38 (Tex.1997); Tex. R. Civ. P. 329b. The trial court generally has no discretion to refuse to dismiss the suit, and its order doing so is ministerial. In re Bennett, 960 S.W.2d at 38; Shadowbrook, 783 S.W.2d at 211. | When a nonsuit is filed while a matter was pending on interlocutory appeal from a pretrial plea to the jurisdiction, the nonsuit extinguishes a case or controversy from the moment the motion is filed or an oral motion is made in open court; the only requirement is the mere filing of the motion with the clerk of the court. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a nonsuit terminate a case from the moment the motion is filed? | 028291.docx | LEGALEASE-00133654-LEGALEASE-00133655 | Order, SA | 0.7 | 1 | 0 | 0 | 1 | |
| 11403 | Ethredge v. Hail, 56 F.3d 1324 | 34+4 | Contrary to Ethredge's assertion, military officials need not demonstrate actual harm before implementing a regulation restricting speech. See Greer, 424 U.S. at 840, 96 S.Ct. at 1218 ("There is nothing in the Constitution that disables a military commander from acting to avert what he perceives to be a clear danger to the loyalty, discipline, or morale of troops on the base under his command."). See also Cornelius, 473 U.S. at 810, 105 S.Ct. at 3453 ("[T]he government need not wait until havoc is wreaked to restrict access to a nonpublic forum."). Thus, officials at RAFB had a right to promulgate the order in response to their evaluation that Ethredge's sign constituted a clear danger to military order and morale. The government submitted evidence that the installation commanders made such an evaluation. | Military officials need not demonstrate actual harm before implementing regulation restricting speech. U.S.C.A. Const.Amend. 1. | Do military officials demonstrate actual harm before implementing regulation restricting speech? | Armed Services - Memo 107 - JS.docx | ROSS-003290266-ROSS-003290267 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 11404 | Walls v. United States, 582 F.3d 1358 | 34+4 | We think Walls misunderstands the purpose of the PEB process. That process is designed to identify individuals who should be separated or retired for disability because of a permanent disabling medical condition"not to identify those individuals requiring further treatment for a temporarily disabling condition. Section 3710 of SECNAVINST 1850.4D states that "10 U.S.C. " 640 applies," and this statute provides for deferment of retirement or separation "if the evaluation of the physical condition of the officer and determination of the officer's entitlement to retirement or separation for physical disability require hospitalization or medical observation that cannot be completed before the date on which the officer would otherwise be required to retire or be separated." 10 U.S.C. " 640 (2000) (effective through December 27, 2001) (emphasis added). The legislative history of this provision further indicates that such a deferral is not for treatment but for disability evaluation. The House Report accompanying " 640 states that the statute allows, "in the event hospitalization or medical observation is necessary to determine entitlement ... to retirement or separation for physical disability ... retirement or separation can be deferred by the secretary concerned." H.R.Rep. No. 96"1462, at 78 (1980), U.S.Code Cong. & Admin.News 1980, pp. 6333 . The reference to 10 U.S.C. " 640 in SECNAVINST 1850.4D, " 3710, thus confirms that deferral of a mandatory transfer is not for medical treatment but is instead for evaluating disability separation or retirement. | The Physical Evaluation Board (PEB) process is designed to identify individuals who should be separated or retired for disability because of a permanent disabling medical condition, not to identify those individuals requiring further treatment for a temporarily disabling condition. 10 U.S.C.A. S 640. | Is the question of disability regarding a service member decided by the Physical Evaluation Board (PEB)? | 008392.docx | LEGALEASE-00133790-LEGALEASE-00133791 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11405 | Rodriguez v. Dep't of Def., 236 F. Supp. 3d 26 | 34+5(1) | The MWPA is a statute designed "to provide a degree of protection [from retaliation] to military personnel who report information on improper or illegal activities by other military personnel." Hisgen v. Fanning, No. 14-1204 (RMC), 208 F.Supp.3d 186, 194, 2016 WL 5108011, at (D.D.C. Sept. 20, 2016) (internal quotation marks and citation omitted). Generally speaking, an aggrieved veteran may complain of retaliatory conduct to the Inspector General ("IG"), see 10 U.S.C. " 1034(c), and if the IG's investigation substantiates the allegation, the veteran can petition the ABCMR "to correct an error or remove an injustice" from his or her military personnel record, id. " 1552(a)(1), or seek a "recommend[ation] to the Secretary of the Army that disciplinary or administrative action be taken against" those responsible for the reprisal, 32 C.F.R. " 581.3(c)(2)(ii). Apparently, Rodriguez submitted such a petition to the ABCMR in October of 2009, and in 2010, his request for relief was substantially denied. (See Administrative Record Index, Ex. 2 to Def.'s Mot., ECF No. 18"4, at 6, 8; see also Compl. " 3.) Rodriguez then launched an administrative appeal from the ABCMR's denial, and Pasquale Tamburrino"the then"Chief of Staff of DOD's Office of the Under Secretary of Defense, Personnel and Readiness ("OUSD(P&R)")"reviewed his appeal in April of 2013, affirming the agency's denial. (See Compl. " 3; see also Def.'s Mem. at 1.) | The Military Whistleblower Protection Act (MWPA) is a statute designed to provide a degree of protection from retaliation to military personnel who report information on improper or illegal activities by other military personnel. 10 U.S.C.A. S 1034. | What is the purpose of the Military Whistleblower Protection Act (MWPA)? | 008408.docx | LEGALEASE-00133814-LEGALEASE-00133815 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11406 | Baker v. United States, 34 Fed. Cl. 645 | 34+3(1) | The United States Constitution grants the President, as chief executive, the position of "Commander in Chief" of the United States Military. U.S. CONST. art. II " 2. In addition, the Constitution gives Congress "an explicit grant of plenary authority ... "[t]o make Rules for the Government and Regulation of the land and naval Forces." " Chappell v. Wallace, 462 U.S. 296, 301, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983) (quoting U.S. CONST. art. I " 8). Consequently, "judges are not given the task of running the [military].... The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate ... [military] matters as the [military] must be scrupulous not to intervene in judicial matters." Orloff v. Willoughby, 345 U.S. 83, 93"94, 73 S.Ct. 534, 539"40, 97 L.Ed. 842 (1953). Thus, decisions by Congress and the Executive regarding the needs of the military must be accorded considerable deference. See, e.g., Goldman v. Weinberger, 475 U.S. 503, 507"08, 106 S.Ct. 1310, 1313"14, 89 L.Ed.2d 478 (1986). | Decisions by Congress and the Executive regarding the needs of the military must be accorded considerable deference. U.S.C.A. Const. Art. 1, S 8, cl. 14; Art. 2, S 2, cl. 1. | Should the decisions by Congress and the Executive regarding the needs of the military be accorded considerable deference? | Armed Services - Memo 95 - JS.docx | ROSS-003289092-ROSS-003289093 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 11407 | Fisher v. Carolina Door Prod., 286 S.C. 5 | 83E+670 | And the fact that the note was antedated is of no importance. The Commercial Code is dispositive. Section 36"3"114, Code of Laws of South Carolina (1976), in effect, provides that the antedating of a promissory note does not affect its negotiability and further that where an instrument is antedated, the time when it is payable is determined by the stated date if the instrument is payable at a fixed period after date. This statute also provides that the date of an instrument is presumed to be correct. Section 36"1"201(31), Code of Laws of South Carolina (1976), defines the word "presumed" as meaning that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence . | Antedating of promissory note does not affect its negotiability, and time when antedated note is payable is determined by stated date if instrument is payable at fixed period after date. Code 1976, SS 36-1-201(31), 36-3-114. | "If a promissory note is predated or antedated, does it affect its validity? " | Bills and Notes - Memo 290 -DB.docx | LEGALEASE-00023855-LEGALEASE-00023856 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 11408 | York Motor Exp. Co. v. State, for Use of Hawk, 195 Md. 525 | 48A+168(8) | Further, we have the testimony as to the foggy atmospheric condition and the slippery condition of the road and the inability of the truck driver to explain how the tractor and trailer became disconnected. Evidence of bad atmospheric conditions existing at the time of an accident, such as fog, is admissible as bearing upon the range and extent of visibility as well as upon the degree of care and caution that should be exercised by motorists under such conditions. While the skidding of an automobile is not of itself so unusual as to furnish evidence of the driver's negligence, nevertheless the speed of the automobile prior to the skidding and the care in handling it, particularly in the application of the brakes, are factors to be considered in determing whether or not there was an exercise of due care. The driver of a car must exercise unusual care to keep it under control on a slippery road, so as not to cause injury to any other vehicle by skidding into it, particularly where the car is being driven on a grade or curve, or where it is traveling at a considerable speed. The degree of care to be exercised by a motorist in a fog varies with the conditions of the fog, the highway, and the traffic, and may be affected by the type, size and weight of the vehicle. Peasley v. White, 129 Me. 450, 152 A. 530, 73 A.L.R. 1017. | Degree of care to be exercised by motorist in fog varies with conditions of fog, the highway, and the traffic, and may be affected by the type, size and weight of vehicle. | What is the standard of the degree of care that is required to be exercised by a driver or a motorist? | 019235.docx | LEGALEASE-00134732-LEGALEASE-00134733 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 11409 | Corby v. Swank, 670 N.E.2d 1322 | 307A+474 | The party seeking withdrawal has the burden of demonstrating that the presentation of the merits will be subserved by withdrawal; however, the party who has obtained the admissions has the burden of demonstrating that it will be prejudiced if the trial court permits withdrawal. T.R. 36(B); Eads v. Hill (1990) Ind.App., 563 N.E.2d 625, 629, trans. denied; see also Royalty Vans, Inc. v. Hill Bros. Plumbing and Heating, Inc. (1993) Ind.App., 605 N.E.2d 1217, 1221, reh'g denied; Stewart v. Stewart (1987) Ind. App., 506 N.E.2d 1132, 1134; Liberty Mutual Ins. Co. v. Matuga (1984) Ind.App., 471 N.E.2d 737, 738. In this context, "prejudice" does not mean that the party who has obtained the admissions will lose the benefit of the admissions; rather, it means that the party has suffered a detriment in the preparation of his case. See Gary Mun. Airport Auth. v. Peters, supra, 550 N.E.2d at 831 (per Staton, J., with one judge concurring in result). For example, "prejudice" of this sort may be shown where the party obtaining the admission "is unable to produce key witnesses or present important evidence." Id. (citing Brook Village North Associates v. General Elec. Co. (1982) 1st Cir., 686 F.2d 66, 64 A.L.R.Fed. 730); see also General Motors Corp., supra, 573 N.E.2d at 889 (upholding trial court denial of motion to withdraw admissions where defendant seeking withdrawal had waited until only two months remained prior to trial to request withdrawal, which had effect of depriving plaintiff of three months time to develop proof). Unless a trial court finds both that the presentation of the merits will be subserved by permitting withdrawal and that the party who has obtained the admissions will not suffer prejudice (as that term applies in T.R. 36), the trial court may not permit withdrawal. General Motors Corp., supra. When the trial court does find that both conditions have been satisfied, it may, in its discretion, permit withdrawal. Id.; Stewart, supra, 506 N.E.2d at 1134. | Party seeking withdrawal of admission has burden of demonstrating that presentation of merits will be subserved by withdrawal; however, party who has obtained admissions has burden of demonstrating that it will be prejudiced if trial court permits withdrawal. Trial Procedure Rule 36(B). | Does the party seeking to have the admissions enforced must show that it will have difficulty proving its case as a result of the withdrawal of the admissions? | 028417.docx | LEGALEASE-00133948-LEGALEASE-00133949 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 11410 | Yarbrough v. Magbee Bros. Lumber & Supply Co, 189 Ga. App. 299 | 307A+486 | OCGA " 9"11"36(b) provides: "Any matter admitted under this Code section is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. Subject to Section 9"11"16 governing amendment of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining [the] action or defense on the merits." (Emphasis supplied.) Thus, any attempt to withdraw or amend admissions must be accompanied by a showing that the merits of the case will be subserved. | Any attempt to withdraw or amend admissions must be accompanied by showing that merits of case will be subserved. O.C.G.A. SS 9-11-16, 9-11-36(b). | Should any attempt to withdraw or amend admissions be accompanied by showing that merits of case will be subserved? | Pretrial Procedure - Memo # 2949- C - SK.docx | ROSS-003304271-ROSS-003304272 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11411 | Tucker v. McQuery, 107 Ohio Misc. 2d 31 | 307A+486 | Implicit in this rule is that the trial court has the discretion to permit a party to amend an answer deemed admitted. See, e.g., Tabor v. Westfield Cos. (Feb. 27, 1998), Gallia App. No. 97CA05, unreported, 1998 WL 90899; Buckeye Union Ins. Co. v. Regional Transit Auth. (1983), 14 Ohio Misc.2d 11, 16, 471 N.E.2d 885, 891. | Trial court has the discretion to permit a party to amend an answer deemed admitted. Rules Civ.Proc., Rule 36(B). | Does a trial court have the discretion to permit a party to amend an answer deemed admitted? | 028891.docx | LEGALEASE-00134090-LEGALEASE-00134091 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 11412 | Motor Car Classics v. Abbott, 316 S.W.3d 223 | 307A+486 | "Good cause" is established when the failure to respond is accidental or the result of a mistake, rather than intentional or the result of conscious indifference.Stelly, 927 S.W.2d at 622. Under his sworn pleadings, Weiss maintained that the lack of the transmission of the request for admissions to his attorney was inadvertent, due to a mistake on Weiss's part. It would appear that Weiss met the requirement of showing good cause. | Good cause necessary to obtain relief from deemed admissions is established when the failure to respond to the request for admissions is accidental or the result of a mistake, rather than intentional or the result of conscious indifference. Vernon's Ann.Texas Rules Civ.Proc., Rule 198.3. | Is good cause necessary to obtain relief from deemed admissions? | Pretrial Procedure - Memo # 3120 - C - MS.docx | LEGALEASE-00024426-LEGALEASE-00024427 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 11413 | Appeal of News Pub. Co., 12 Kan. App. 2d 328 | 371+2016 | The entire matter of taxation is legislative and does not exist apart from statute. The legislature is empowered to provide the means and agencies for carrying out its responsibilities in matters of taxation. Joseph v. McNeive, 215 Kan. 270, 271, 524 P.2d 765 (1974). Where a statute is clear and unambiguous, the court must give effect to the legislative intent therein expressed rather than make a determination of what the law should or should not be. Capital Electric Line Builders, Inc. v. Lennen, 232 Kan. 379, 383, 654 P.2d 464 (1982); Randall v. Seemann, 228 Kan. 395, 397, 613 P.2d 1376 (1980). Sales tax statutes are penal in nature and must be strictly construed in favor of the taxpayer. J.G. Masonry, Inc. v. Department of Revenue, 235 Kan. 497, 500, 680 P.2d 291 (1984). When there is reasonable doubt as to the meaning of a taxation statute, the statute will be construed in a manner most favorable to the taxpayer. See Fleming Company v. McDonald, 212 Kan. 11, 16, 509 P.2d 1162 (1973); Equitable Life Assurance Society v. Hobbs, 154 Kan. 1, 13, 114 P.2d 871 (1941). | Entire matter of taxation is legislative and does not exist apart from statute; legislature is empowered to provide means and agencies for carrying out its responsibilities in matter of taxation. | Does the matter of taxation exist apart from statute? | 045009.docx | LEGALEASE-00134517-LEGALEASE-00134518 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11414 | City of Lake Elmo v. 3M Co., 237 F. Supp. 3d 877 | 386+10 | 3M also argues that the Complaint fails to state a claim for trespass because invasion by a particulate matter does not constitute a trespass under Minnesota law. "In Minnesota, a trespass is committed where a plaintiff has the right of possession to the land at issue and there is a wrongful and unlawful entry upon such possession by defendant."Johnson v. Paynesville Farmers Union Coop. Oil Co., 817 N.W.2d 693, 701 (Minn. 2002) (internal quotations omitted). Trespass claims differ from nuisance claims in that "trespass claims address tangible invasions of the right to exclusive possession of land, and nuisance claims address invasions of the right to use and enjoyment of land." Id. at 705. | Under Minnesota law, a "trespass" is committed where a plaintiff has the right of possession to the land at issue, and there is a wrongful and unlawful entry upon such possession by defendant. | Can trespass be committed only when a plaintiff has the right of possession to the land? | 047354.docx | LEGALEASE-00134855-LEGALEASE-00134856 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 11415 | Envtl. Processing Sys., L.C. v. FPL Farming Ltd., 457 S.W.3d 414 | 386+10 | A handful of courts of appeals have stated that consent is an affirmative defense to be pleaded and proven by the defendant, but the issue is far from settled. There is no pattern jury charge for a trespass to real property cause of action in Texas. At least one court of appeals has approved of a proposed charge definition and question that included lack of consent as an element of trespass. See Watson, 918 S.W.2d at 645"46.8 And although other courts of appeals have stated that "consent is an affirmative defense to a cause of action for trespass," e.g., Gen. Mills Rests., Inc., 12 S.W.3d at 835, the more precise statement from the courts of appeals' case law is that "consent to enter the property is sufficient to defeat the cause of action for trespass," e.g., Carr, 893 S.W.2d at 623, because only one court of appeals has given more than cursory treatment to the present issue of whether consent is an affirmative defense to a trespass claim. See Stone Res., Inc., 661 S.W.2d at 151. There, the court of appeals held, without citing any authority for the proposition, that: | Consent, or lack thereof, is an element of the trespass cause of action rather than an affirmative defense; otherwise, a trespass cause of action would require plaintiffs to prove only an entry onto their property, which ignores the well-established definition that the entry is actionable only if it is unauthorized or without consent; abrogating Stone Res., Inc. v. Barnett, 661 S.W.2d 148, Carr v. Mobile Video Tapes, Inc., 893 S.W.2d 613, Ward v. NE. Tex. Farmers Co-op. Elevator, 909 S.W.2d 143, Cain v. Rust Indus. Cleaning Servs., Inc., 969 S.W.2d 464, Gen. Mills Rests., Inc. v. Tex. Wings, Inc., 12 S.W.3d 827, and Stukes v. Bachmeyer, 249 S.W.3d 461. | Does consent to enter defeat the cause of action for trespass? | 047391.docx | LEGALEASE-00134789-LEGALEASE-00134790 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 11416 | Whiteman v. Chesapeake Appalachia, 729 F.3d 381 | 386+10 | As noted above, the district court below granted summary judgment in favor of Chesapeake as to the Whitemans' common law trespass claim only. In West Virginia, common law trespass is "an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property." Hark v. Mountain Fork Lumber Co., 127 W.Va. 586, 591"92, 34 S.E.2d 348, 352 (1945) (emphasis added). A continuing trespass occurs, for example, when one person leaves on the land of another, with a duty to remove it, "a structure, chattel, or other thing." Restatement (Second) of Torts " 160 (1965). Regarding remedies for actions in trespass, the general rule in West Virginia is that "a mere trespass to real estate will not be enjoined when the injury ... is susceptible of complete pecuniary compensation and for which the injured person has an adequate legal remedy." Wiles v. Wiles, 134 W.Va. 81, 91, 58 S.E.2d 601, 606 (1950). Nevertheless, in West Virginia, "[a] court of equity has jurisdiction to enjoin a continuing trespass." Tate v. United Fuel Gas Co., 137 W.Va. 272, 278"79, 71 S.E.2d 65, 69"70 (1952). Notwithstanding the above, a claim for trespass under West Virginia common law can only lie if one's entry upon the land of another"or one's leaving a "thing" upon the land of another"is "without lawful authority." Hark, 34 S.E.2d at 352. | Under West Virginia law, a continuing trespass occurs when one person leaves on the land of another, with a duty to remove it, a structure, chattel, or other thing. Restatement (Second) of Torts S 160. | When does a continuing trespass occur? | Trespass - Memo 276 - SB.docx | ROSS-003291318-ROSS-003291319 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 11417 | Fox v. Sheriff, Clark Cty., 86 Nev. 21 | 63+1(1) | NRS 199.240 requires an agreement or understanding between the giver of the bribe and the receiver. If the giver makes an offer and he reasonably believes that the receiver has accepted, then there is an "understanding" between the parties. Ex parte Jang, 25 Cal.App.2d 529, 78 P.2d 250 (1938); People v. Schultz, 18 Cal.App.2d 485, 64 P.2d 440 (1937); People v. McAllister, 99 Cal.App. 37, 277 P. 1082 (1929); cf. State v. Ferraro, 67 Ariz. 397, 198 P.2d 120 (1948). | Statute making it unlawful to bribe a witness to influence his testimony requires an agreement or understanding between the giver of the bribe and the receiver; if the giver makes an offer and he reasonably believes that the receiver has accepted, then there is an understanding between the parties. N.R.S. 199.240. | Is an agreement or understanding between the giver of the bribe and the receiver required? | 011483.docx | LEGALEASE-00135889-LEGALEASE-00135890 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11418 | U.S. v. Jackson, 904 F. Supp. 118 | 92+1170 | In Freeman, the appellant argued that the RICO statute was unconstitutional as applied in that case "because it chills the exercise of First Amendment rights, namely solicitation of campaign funds." Id. at 597. Relying on McCormick, we rejected the as applied challenge. Unlike the jury in McCormick, the jury in Freeman was instructed to find quid pro quo. Id. at 594. Freeman cited McCormick for the proposition that the First Amendment does not protect political contributions made in return for an explicit promise by the official to perform an official act. Freeman did not hold the converse, that a failure to require proof of a quid pro quo would violate the First Amendment, and we decline to read such a requirement into First Amendment jurisprudence today. Because the First Amendment does not imply an explicit quid pro quo element into every state bribery offense, and California bribery law does not require an explicit quid pro quo instruction, the absence of one here cannot constitute error. | First Amendment does not imply explicit quid pro quo element into every state bribery offense. U.S.C.A. Const.Amend. 1. | Is quid pro quo required to be an element in a state bribery offense? | Bribery - Memo #349 - C-JL.docx | ROSS-003303978-ROSS-003303979 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11419 | United States v. Dorr, 636 F.2d 117 | 110+2077 | The test in determining the existence of prosecutorial misconduct regarding closing arguments is whether the remarks were improper and whether they prejudicially affected substantial rights of the defendants. United States v. Garza, 608 F.2d 659, 663 (5th Cir. 1979). A prosecutor's duty in closing arguments is to be scrupulous and to avoid all efforts to obtain a conviction by going beyond the evidence before the jury or by putting the sanction of his office behind the testimony of the witnesses.United States v. Rodriguez, 585 F.2d 1234, 1243 (5th Cir. 1978), aff'd in part, rev'd in part on other grounds, 612 F.2d 906 (5th Cir. 1980) (en banc). The sole purpose of closing argument is to assist the jury in analyzing, evaluating and applying the evidence. United States v. Herberman, 583 F.2d 222, 229 (5th Cir. 1978). | Test in determining existence of prosecutorial misconduct regarding closing argument is whether the remarks were improper and whether they prejudicially affected substantial rights of defendant. | What is the test for evaluating allegations of prosecutorial misconduct? | 011587.docx | LEGALEASE-00135095-LEGALEASE-00135096 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11420 | Shockley v. State, 695 S.W.2d 754 | 67+41(3) | At the outset, we point out that the offense of burglary arises when a person enters a building or habitation with the intent to commit a felony or theft. TEX. PENAL CODE ANN. " 30.02 (Vernon 1974). Nothing in our burglary statute indicates that a presumption arises with regard to proof of intent. Intent, as an essential element of the offense of burglary, must be proved by the State beyond a reasonable doubt; it may not be left simply to speculation and surmise. Greer v. State, 437 S.W.2d 558, 559-60 (Tex. Crim. App. 1969). As a question of fact for the jury, however, intent may be inferred from surrounding circumstances. Ortega v. State, 626 S.W.2d 746, 749 (Tex.Crim. App.1982) ; Mauldin v. State, 628 S.W.2d 793, 795 (Tex.Crim.App.1982). | Intent, as an essential element of burglary, must be proved by state beyond a reasonable doubt; it may not be left simply to speculation and surmise; however, as a question of fact for jury, intent may be inferred from surrounding circumstances. V.T.C.A., Penal Code S 30.02. | Does burglary require proof beyond a reasonable doubt? | Burglary - Memo 112-jS.docx | ROSS-003305053-ROSS-003305054 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 11421 | People v. Lewis, 2002 WL 18325 | 203+598 | The felony-murder rule was enacted to protect the public, not to benefit criminals. (People v. Chavez (1951) 37 Cal.2d 656, 669-670, 234 P.2d 632.) For the purpose of the felony-murder rule, a burglary committed by more than one person continues during the burglars' escape until all burglars reach a place of temporary safety. (People v. Bodely (1995) 32 Cal.App.4th 311, 314, 38 Cal.Rptr.2d 72 (hereafter Bodely ); People v. Fuller (1978) 86 Cal.App.3d 618, 150 Cal.Rptr. 515 (hereafter Fuller ), cited in People v. Cooper (1991) 53 Cal.3d 1158, 1169, 282 Cal.Rptr. 450, 811 P.2d 742.) This rule concerning the duration of a burglary is referred to as the "escape rule." " '[T]he escape rule serves the legitimate public policy considerations of deterrence and culpability' by extending felony-murder liability beyond the technical completion of the crime. [Citation.]" (Bodely, supra, at pp. 313-314, 38 Cal. 72.) | Under the "escape rule" extending felony-murder liability, a burglary committed by more than one person continues during the burglars' escape until all burglars reach a place of temporary safety. | Does a burglary continue until the burglar reaches a place of safety? | Burglary - Memo 114 - JS.docx | ROSS-003329761-ROSS-003329763 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 11422 | Shankle v. Shankle, 289 N.C. 473 | 307A+716 | Although in Abernethy v. Trust Co., supra, the motion to continue involved the presence of the party plaintiff at her trial, its rationale may be equally applicable to the absence of the party's attorney. In this regard, the general rule is that an attorney's withdrawal on the eve of the trial of a civil case is not Ipso facto grounds for a continuance. See Annot.; " Withdrawal or discharge of counsel in civil case as a ground for continuance," 48 A.L.R.2d 1155 (1956); 17 C.J.S. Continuances s 23 (1963). In accordance with the established principles hereinbefore outlined, the decision whether to grant a continuance because the moving party's attorney has withdrawn from the case on the day of trial rests in the trial judge's discretion, to be exercised after he has determined from the facts and circumstances of the particular case, whether immediate trial or continuance will best serve the ends of justice. | General rule is that attorney's withdrawal on eve of trial of civil case is not ipso facto grounds for continuance. Rules of Civil Procedure, rule 40(b), G.S. S 1A-1. | Is the withdrawal of counsel on eve of trial not ipso facto grounds for continuance? | 029294.docx | LEGALEASE-00135202-LEGALEASE-00135203 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 11423 | Guzman v. Carnevale, 964 S.W.2d 311 | 307A+483 | Much of Mamaloca's argument on appeal centers on the alleged bad faith and evasiveness of Guzman's attorney in denying certain requests that Mamaloca contends should have been admitted without controversy. An evasive or incomplete answer may be treated by the trial court as a deemed admission. TEX. R. CIV. P. 215(4)(a); State v. Carrillo, 885 S.W.2d 212, 215 (Tex.App."San Antonio 1994, no writ); U.S. Fire Ins. Co. v. Maness, 775 S.W.2d 748, 749"51 (Tex.App."Houston [1st Dist.] 1989, writ ref'd). However, Mamaloca's motion for summary judgment does not argue that it was entitled to summary judgment because Guzman's denials were a bad faith evasion of the requests for admission. A summary judgment cannot be issued on grounds not expressly set out in the motion. TEX. R. CIV. P. 166a(c); Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex.1993). Therefore, the failure of Mamaloca to assert its bad faith evasion argument in its motion for summary judgment prevents it from relying on that argument on appeal. Id. | Evasive or incomplete answer to request for admissions may be treated by trial court as deemed admission. Vernon's Ann.Texas Rules Civ.Proc., Rule 215, subd. 4, par. a. | May an evasive or incomplete answer to a request for admissions be treated by the trial court as a deemed admission? | Pretrial Procedure - Memo # 3548 - C - KA.docx | ROSS-003290485-ROSS-003290486 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11424 | Riggin v. Rea Riggin & Sons, 738 N.E.2d 292 | 307A+716 | The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court. Robertson v. Board of Zoning Appeals, Town of Chesterton (1998), Ind.App., 699 N.E.2d 310, 319. We will reverse the trial court only for an abuse of that discretion. Id. An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion. Id.; Ind. Trial Rule 53.5. However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial. Id. The withdrawal of legal counsel does not entitle a party to an automatic continuance, Danner v. Danner (1991), Ind.App., 573 N.E.2d 934, 937, trans. denied, and the moving party must show diligence in procuring counsel. Fetner v. Maury Boyd & Associates (1990), Ind.App., 563 N.E.2d 1334, 1338, trans. denied. | The withdrawal of legal counsel does not entitle a party to an automatic pretrial continuance, and the moving party must show diligence in procuring counsel. Trial Procedure Rule 53.5. | Does the withdrawal of legal counsel does not entitle a party to an automatic continuance? | 029693.docx | LEGALEASE-00135190-LEGALEASE-00135191 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 11425 | Duff v. Spearman, 322 S.W.3d 869 | 92+3986 | A trial court's discretion in deeming a request to have been admitted is limited by due process. Wheeler, 157 S.W.3d at 443. "When requests for admissions are used as intended"addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents"deeming admissions by default is unlikely to compromise presentation of the merits." Id. (citation omitted). Nevertheless, "[d]ue process concerns arise when a party uses deemed admissions to preclude presentation of the merits of a case." Thomas v. Select Portfolio Servicing, Inc., 293 S.W.3d 316, 320 (Tex.App.-Beaumont 2009, no pet.) (citing Wheeler, 157 S.W.3d at 443). | A trial court's discretion in deeming a request for admissions to have been admitted is limited by due process. U.S.C.A. Const.Amend. 14; Vernon's Ann.Texas Rules Civ.Proc., Rule 198.3. | Is a trial court's discretion in deeming a request for admissions to have been admitted limited by due process? | 029752.docx | LEGALEASE-00135980-LEGALEASE-00135982 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 11426 | Gonzales v. Surplus Ins. Servs., 863 S.W.2d 96 | 307A+483 | In examining the record before us, appellant failed to timely answer request for admissions, or to file written objections, or to file a motion to file answers late, resulting in the appellee's admissions being deemed. Appellant admits receiving the request for admissions on May 23, 1991 and based on Rule 169 and Rule 21a admissions would be deemed by operation of law on June 26, 1991. The record reflects that appellant made no response to anything until July 19, 1991, and summary judgment was granted July 23, 1991. Admissions, once deemed admitted, are judicial admissions and appellant may not then introduce controverting testimony in any legal proceeding related to the instant action. Shaw v. National County Mut. Fire Ins. Co., 723 S.W.2d 236, 238 (Tex.App."Houston [1st Dist.] 1986, no writ). Deemed admissions may be employed as summary judgment proof, Elkins v. Jones, 613 S.W.2d 533, 534 (Tex.Civ.App."Austin 1981, no writ); and once admissions are deemed admitted by operation of law and where said admissions fully support each element of appellee's motion for summary judgment, notice to appellant of any proceedings with regard to the motion for summary judgment would appear moot. | Admissions, once deemed admitted, are judicial admissions, and party against whom admissions are deemed admitted may not then introduce controverting testimony in any legal proceeding related to action. Vernon's Ann.Texas Rules Civ.Proc., Rules 21a, 169. | " Are deemed admissions, resulting from a party's failure to answer a request for admissions, judicial admissions and may not be controverted with testimony?" | Pretrial Procedure - Memo # 3625 - C - KBM.docx | LEGALEASE-00025535-LEGALEASE-00025536 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 11427 | Dodd v. Cowgill, 85 Nev. 705 | 307A+716 | And where the party whose attorney is ill is represented by other counsel, denial of a continuance may be justified. Joseph v. Norton Co., supra; Jackson v. Jackson, 201 Okl. 292, 205 P.2d 297, 7 A.L.R.2d 1410 (1949); Whiteley v. Clegg, 120 Ga. 1038, 48 S.E. 406 (1904). | Where party whose attorney is ill is represented by other counsel, denial of continuance may be justified. | "Where a party whose attorney is ill is represented by other counsel, is denial of continuance be justified?" | Pretrial Procedure - Memo # 3649 - C - SN.docx | ROSS-003289811-ROSS-003289812 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 11428 | Schleimer v. Winter, 2002 WL 120561 | 307A+485 | A trial court has broad discretion to determine the amount of a reasonable fee. (PLCM Group, Inc. v. Drexler (2000) 22 Cal.4th 1084, 1095, 1096, 95 Cal.Rptr.2d 198, 997 P.2d 511.) " "The experienced trial judge is the best judge of the value of professional services rendered in his court.." " " (Id. at p. 1095, 95 Cal.Rptr.2d 198, 997 P.2d 511.) " "The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." [Citation.]" (Id. at p. 1096, 95 Cal.Rptr.2d 198, 997 P.2d 511.). | A trial court has broad discretion to determine amount of a reasonable attorney fee on motion for costs of proof. West's Ann.Cal. C.C.P. S 2033, subd. o. | Does a court have broad discretion to determine amount of a reasonable attorney fee on motion for costs of proof? | Pretrial Procedure - Memo # 3825 - C - DA.docx | ROSS-003290927-ROSS-003290928 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 11429 | City of Austin v. Nalle, 102 Tex. 536 | 148+1 | First, it is maintained that the charge of $1,163.50 made against the property is not taxation, but the exercise of the right of eminent domain. But this is, in our opinion, a radical misconception of the law. Eminent domain is defined to be: "The sovereign power vested in the state to take private property for the public use, providing first a just compensation therefor." 15 Cyc. 557. "Taxes are defined to be burthens, or charges, imposed by the legislative power of a state upon persons or property, to raise money for public purposes." Clegg v. State, 42 Tex. 608. The former takes specific property (not money) upon paying compensation therefor. The other takes money, the only compensation being that it will be appropriated according to law. In this case there is no direct attempt to take the lots by virtue of which the assessment is made; but it is the mere levy of an imposition upon the owner of a sum of money to pay his part of the costs of the improvement which is proposed to be made, and which is proportioned to him upon principles the justice of which cannot be gainsaid. From these considerations we think it follows that this is not the taking of property under the law of eminent domain. This principle is recognized in the following cases, to which many others might be added: Woodbridge v. Detroit, 8 Mich. 274; People v. Brooklyn, 4 N. Y. 419, 55 Am. Dec. 266; Macon v. Patty, 57 Miss. 378, 34 Am. Rep. 451; Martin v.Dix, 52 Miss. 53, 24 Am. Rep. 661; Davies v. Los Angeles, 86 Cal. 37, 24 Pac. 771; Lexington v. McQuillan Heirs, 9 Dana (Ky.) 513, 35 Am. Dec. 159. | "Eminent domain" is the sovereign power in the state to take private property for public use, providing first a just compensation therefor. | "Does the exercise of the power of ""eminent domain"" take property?" | 045217.docx | LEGALEASE-00135961-LEGALEASE-00135962 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11430 | Alabama Power Co. v. Fed. Power Comm'n, 134 F.2d 602 | 371+2001 | Turning to construction costs, those expended by Interstate (except taxes prior to July 1, 1922) were allowed and are not in dispute. Property taxes during construction, and for a year preceding commencement of work, were allowed as part of the cost of the project, pursuant to the system of accounting of the Commission put out in 1922. It is contended that taxes for the time before that, during which Interstate owned and was holding the lands, ought to be added. Taxes are the annual compensation paid to government for annual protection and for the current support of government, and are generally an expense and not an investment. Only from the date that property included in a project is definitely committed to it and cannot be otherwise used, are taxes fairly a cost of the project under construction. They are certainly not a part of the original price paid for the land. No principle of law requires a more generous allowance of taxes than was made. | "Taxes" are annual compensation paid to government for annual protection and for current support of government and are generally an "expense" and not an "investment". | Are taxes the annual compensation paid to government for annual protection and for the current support of government? | 045246.docx | LEGALEASE-00135061-LEGALEASE-00135062 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11431 | People v. Siciliano, 4 Ill. 2d 581 | 63+1(1) | The gist of the offense of bribery is the giving to and receiving or accepting money or other valuable thing by a public officer to influence him with respect to the performance of his official duty. People v. Patillo, 386 Ill. 566, 54 N.E.2d 548, 158 A.L.R. 316. In proving the charges laid in the indictments it was incumbent upon the People to prove that Evans was a public officer; that money or other valuable thing was given by plaintiff in error to Evans and accepted by him and that the payments were for the purpose of influencing him in the performance of his official duties. The fact that the payments were made as testified by Evans is nowhere denied nor is it denied that at the times in question Evans was a public officer charged with the duties as set forth above. But plaintiff in error contends that the evidence falls short of proving that the payments were made to influence Evans in the performance of those duties, particularly in view of the fact that there was no evidence of any specific agreement by Evans to do or to refrain from doing anything relating to the duties of his office. Though there is no evidence of a specific agreement between Evans and plaintiff in error it seems abundantly clear that the payments made to Evans and accepted by him were calculated to influence him and that they accomplished their purpose as indicated by the uncontradicted evidence that no food samples were taken from the plant and no reports made. This, coupled with the testimony that plaintiff in error asked Evans to go along with him and told him he would be paid well for what he did, makes out a clear case of bribery. It is not suggested that plaintiff in error could have had any other reason for making payments of any sort to Evans, and the testimony of Evans that the payments were, in fact, made stands uncontradicted. The weight and credibility of that testimony were matters for the jury. If believed by them, it was ample to establish, beyond a reasonable doubt, the charges | Gist of offense of "bribery" is giving to and receiving or accepting money or other valuable thing by a public officer to influence him with respect to performance of his official duty. | What is the gist of the offense of bribery? | 011645.docx | LEGALEASE-00136198-LEGALEASE-00136200 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 11432 | United States v. Gallo, 863 F.2d 185 | 63+1(1) | Whether or not there was a federal official to whom bribes were actually paid is not determinative of the issue of intent. As we have stated, 18 U.S.C. " 201(b) "makes attempted bribery a crime, and so long as a bribe is "offered or promised" with the requisite intent "to influence any official act" the crime is committed." United States v. Jacobs, 431 F.2d 754, 760 (2d Cir.1970) (emphasis in original), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971). To find such intent, the public official who is the target of the bribe need not be aware of the bribe, United States v. Johnson, 621 F.2d 1073, 1076 (10th Cir.1980), and, in fact, need not even exist. See United States v. Rosner, 485 F.2d 1213, 1216 (2d Cir.1973) (affirming conviction where defendant attempted to funnel money to fictitious official), cert. denied, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974). Armone and Gallo argue that payment of money to a "contact in Washington" could easily be understood to mean payment to a lobbyist or attorney. Evidence at trial, however, showed that defendants talked in codes, covered their "paper trail," and otherwise went to great lengths to keep secret their payments to a "connection" to buy such "favors" as the transfer of federal prisoners. Based on this evidence, a rational jury could fairly have concluded beyond a reasonable doubt that Armone and Gallo intended to bribe a public official. | Whether there was a federal official to whom bribes were actually paid was not determinative of the issue of defendants' intent to bribe a public official. 18 U.S.C.A. S 201(b). | Is the actual payment to a federal officer determinative of the issue of defendants' intent to bribe a public official? | 011864.docx | LEGALEASE-00136041-LEGALEASE-00136043 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 11433 | Blackmon v. State, 2002 WL 31627094 | 210+815 | The State proceeded only under the second count of the four-count indictment, which was burglary of a habitation with intent to commit aggravated assault. The trial court charged the jury on both that offense and the offense of burglary of a habitation with intent to commit assault, which is a lesser-included offense (and which was also the first count of the indictment). Tex.Code Crim. Proc. Ann. art. 37.09(1) (Vernon 1981). It has been held that aggravated assault is not a lesser-included offense of burglary of a habitation with intent to commit aggravated assault because the evidence showing a completed aggravated assault is not part of the facts legally required to show burglary with intent to commit aggravated assault. Jacob v. State, 892 S.W.2d 905, 909 (Tex.Crim.App.1995). | Aggravated assault is not a lesser-included offense of burglary of a habitation with intent to commit aggravated assault, since evidence showing a completed aggravated assault is not part of the facts legally required to show burglary with intent to commit aggravated assault. V.T.C.A., Penal Code S 30.02(a)(1). | Is aggravated assault a lesser included offense than burglary? | Burglary - Memo 135 - JS.docx | ROSS-003305055-ROSS-003305057 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 11434 | Forrest v. Masters, 158 Neb. 506 | 48A+245(72) | To sustain his contention for an instructed verdict defendant's first position is that deceased was guilty of negligence as a matter of law barring recovery because he was walking down the road with, and not against, the movement of traffic. As to that the rule is: "* * * in the absence of restrictive applicable statutes or ordinances, a pedestrian has a right to walk longitudinally in a street or highway, and is not as a matter of law guilty of contributory negligence in doing so." Floyd v. Edwards, 150 Neb. 41, 33 N.W.2d 555, 559, and cases there cited. | In absence of restrictive applicable statutes or ordinances, a pedestrian has a right to walk longitudinally in a street or highway, and is not, as a matter of law, contributorily negligent in doing so. | Does a pedestrian have a right to walk longitudinally in the highway? | Highways - Memo 93- VP.docx | ROSS-003302795-ROSS-003302796 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11435 | Matter of Cupples, 952 S.W.2d 226 | 289+592 | A partner's fiduciary duty includes the duty to be candid concerning business opportunities, the duty to be fair, the duty not to put self-interests before the interests of the partnership, and the duty not to compete with the partnership in the business of the partnership. Johnson, supra, at 100. In the context of a withdrawing lawyer, these duties have been applied to lawyers who solicit clients before withdrawing from the firm, who withhold business opportunities from the partnership, and who secrete files from the firm. See, e.g., In re Silverberg, 81 A.D.2d 640, 438 N.Y.S.2d 143, 144 (1981) ("The solicitation of a firm's client by one partner for his own benefit, prior to any decision to dissolve the partnership, is a breach of the fiduciary obligation owed to each other and the partnership...."); Meehan v. Shaughnessy, 404 Mass. 419, 535 N.E.2d 1255, 1265 (1989) ("[The departing lawyers] excluded their partners from effectively presenting their services as an alternative to those of [the departing attorneys]."); In re Smith, supra, at 452 (noting that attorney violated ethical rules implicit obligation to be candid and fair with partners by secreting files). | Partner's fiduciary duty includes duty to be candid concerning business opportunities, duty to be fair, duty not to put self-interests before interests of partnership, and duty not to compete with partnership in the business of partnership. | Do partners have a duty to not compete with the partnership in the business of partnership? | 022281.docx | LEGALEASE-00136396-LEGALEASE-00136397 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 11436 | Time Savers v. LaSalle Bank, N.A., 371 Ill. App. 3d 759 | 302+18 | In count III, TSI alleged common-law fraud. The elements of common-law fraud are: (1) a false statement of material fact; (2) the defendant knew the statement was false; (3) the defendant intended that the statement induce the plaintiff to act; (4) the plaintiff relied upon the truth of the statement; and (5) the plaintiff suffered damages from his reliance on the statement. Connick v. Suzuki Motor Co., 174 Ill.2d 482, 496, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996). A complaint for common-law fraud "must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." Connick, 174 Ill.2d at 496"97, 221 Ill.Dec. 389, 675 N.E.2d 584. "Conclusionary allegations will not substitute for well-pled facts." Small v. Sussman, 306 Ill.App.3d 639, 646, 239 Ill.Dec. 366, 713 N.E.2d 1216 (1999). | A complaint for common-law fraud must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made. | Will conclusionary allegations of fraud substitute for well-pled facts with specificity and particularity? | Pleading - Memo 325 - RMM.docx | ROSS-003305093-ROSS-003305094 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 11437 | State Highway Dep't v. Hewitt Contracting Co., 115 Ga. App. 606 | 302+8(2) | Paragraph 25, which sought damages resulting from the refusal of the resident engineer in charge of the project to allow plaintiff to crush 261,000 tons of rock removed from excavations on the job for use as base and paving material was held subject to demurrer because of the failure to allege that the decision was made in bad faith or through failure to exercise honest judgment, and to contain allegations showing this to be the case. State Hwy.Dept. v. Hewitt, supra, 113 Ga.App. p. 695, 149 S.E.2d 499. The amendment to this paragraph alleges that at the time the engineer refused plaintiff's request he knew (a) that the rock was a proper material for use for this purpose, although he stated otherwise, and (b) that because of defendant's errors in elevations shown by the contour lines on designated plat sheets, he also knew there would be several hundred thousand cubic yards of waste, at a time when he insisted that there would not in fact be sufficient waste to make the required fills. "Allegations stating the knowledge and intention of the opposite party usually constitute allegations of fact rather than conclusions, even as against a special demurrer." Beavers v. Johnson, 112 Ga.App. 677, 679, 145 S.E.2d 776, 777, and cit. Paragraph 25 sets out a cause of action for $195,750 damages entailed because of increased costs connected with the double hauling. | Allegations stating knowledge and intention of opposite party usually constitute allegations of fact rather than conclusions, even as against special demurrer. | Is the allegation of knowledge of the opposite party a conclusion? | 023328.docx | LEGALEASE-00136316-LEGALEASE-00136317 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11438 | Nance v. Nance, 880 S.W.2d 341 | 307A+716 | Whether to allow trial counsel to withdraw is within the sound discretion of the trial court. Moore Enterprises, Inc., v. Franklin Newspapers, Inc., 716 S.W.2d 907, 908[4"6] (Mo.App.1986). Although that discretion is judicial in nature and reviewable on appeal, every intendment is in favor of the trial court's ruling. Id. at 909. The fact that an attorney withdraws from a case does not give a party an absolute right to a continuance. Id. | Fact that attorney withdraws from case does not automatically give party an absolute right to continuance. | Does the fact that an attorney withdraws from a case not automatically give party an absolute right to continuance? | 029456.docx | LEGALEASE-00136444-LEGALEASE-00136445 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 11439 | Duff v. Spearman, 322 S.W.3d 869 | 307A+483 | A trial court's discretion in deeming a request to have been admitted is limited by due process. Wheeler, 157 S.W.3d at 443. "When requests for admissions are used as intended"addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents"deeming admissions by default is unlikely to compromise presentation of the merits." Id. (citation omitted). Nevertheless, "[d]ue process concerns arise when a party uses deemed admissions to preclude presentation of the merits of a case." Thomas v. Select Portfolio Servicing, Inc., 293 S.W.3d 316, 320 (Tex.App.-Beaumont 2009, no pet.) (citing Wheeler, 157 S.W.3d at 443). | When requests for admissions are used as intended, i.e., addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents, deeming admissions by default is unlikely to compromise presentation of the merits; nevertheless, due process concerns arise when a party uses deemed admissions to preclude presentation of the merits of a case. U.S.C.A. Const.Amend. 14; Vernon's Ann.Texas Rules Civ.Proc., Rule 198.3. | "When a party relies on merit-preclusive deemed admissions, may due process concerns arise?" | 029991.docx | LEGALEASE-00136686-LEGALEASE-00136687 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 11440 | Mosley v. Bridges, 65 Ga. App. 64 | 307A+723.1 | In order to show cause for a continuance on the ground that a party is providentially prevented from attending the trial, it must not only appear that the party is providentially hindered and prevented from being present, but also that counsel cannot safely go to trial without the presence of such absent party. Code, " 81-1412; Cauthen v. Barnesville Savings Bank, 69 Ga. 767. In the case at bar it was not error for the court to refuse to grant a continuance, counsel stating in his place only that his client "was ill and unable to appear in court." It was not error for the court to deny the motion to set aside the verdict the ground of which was that the court erred in not continuing the case. | Where counsel, requesting continuance on ground that his client, was providentially prevented from attending trial, stated only that client "was ill and unable to appear in court," court did not err in refusing continuance and denying motion to set aside verdict on ground of error in denying continuance. Code, S 81-1412. | "Can an attorney, in case of illness of his client, make a showing for a continuance of a case?" | 030365.docx | LEGALEASE-00136646-LEGALEASE-00136647 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11441 | Texas Utilities Co. v. Clark, 269 S.W. 903 | 30+3276 | The allegations in the trial amendment contain an amplification of the facts and a more specific description of the alleged defects in the trough or chute and the action of the chain belt, but do not set up a new cause of action. Appellant filed no affidavit, showing it was not prepared to proceed with the trial. Texas & N. O. Ry. Co. v. Goldberg, 68 Tex. 685, 5 S. W. 824. And the granting of leave to file a trial amendment and the granting or refusing a continuance on account thereof are matters within the discretion of the trial court and will be reviewed by an appellate court only, if it is made to appear by the complaining party that such discretion has been abused. The record fails to disclose any injury to appellant by the filing of the trial amendment, and these assignments are overruled. El Paso Electric Ry. Co. v. Buttrey (Tex. Civ. App.) 260 S. W. 897; People's Guaranty State Bank v. Hill et al. (Tex. Civ. App.) 256 S. W. 683; St. Louis B. & M. Ry. Co. et al. v. Lane (Tex. Civ. App.) 248 S. W. 59; Osage Oil & Refining Co. v. Lee (Tex. Civ. App.) 230 S. W. 518; Millers' Indemnity Underwriters v. Green et al. (Tex. Civ. App.) 237 S. W. 979; Holden v. Evans (Tex. Civ. App.) 231 S. W. 146; Boyd v. Hurd (Tex. Civ. App.) 207 S. W. 339 | Action of court in granting leave to file trial amendment, or in refusing continuance on account thereof, will be reviewed on appeal only if abuse of discretion is shown. | Is the refusal of continuance on account of trial amendment discretionary with a court? | 030379.docx | LEGALEASE-00136698-LEGALEASE-00136699 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11442 | Pancake v. Hite, 105 W. Va. 366 | 307A+720 | And in Adams v. Adams, 79 W. Va. 546, 92 S. E. 463, this court said:"A declaration may be amended at the trial of an action, to make the allegation correspond to the proof offered, if substantial justice will be thereby promoted, and such amendment does not entitle the defendant to a continuance, unless he shows to the satisfaction of the court that a continuance is necessary to enable him to make his defense." Nothing appears in this case which would satisfy the trial court that a continuance was necessary for a complete defense. The motion was general, based on the fact of amendment alone. The last assignment of error is that there was no plea to or issue made upon the declaration as amended. The original declaration being sufficient, and the amendment being perfunctory, we can see no necessity for making a new issue under the amendment. Defendants' rights were in no way prejudiced. | Amendment of declaration at trial to make it correspond to proof does not require continuance, except on showing of necessity to enable defendant to make defense (Code, c. 131, S 8). | Does an amendment of declaration at trial to make it correspond to proof not require continuance? | Pretrial Procedure - Memo # 4070 - C - KBM.docx | ROSS-003290985-ROSS-003290986 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 11443 | Brown v. Abilene Nat. Bank, 70 Tex. 750 | 307A+723.1 | On January 25, 1886, the Abilene National Bank brought an action against B. M. Daugherty on several promissory notes, and sued out a writ of attachment that was levied on property belonging to Daugherty. On March 9, 1886, the appellant filed a plea in intervention, in which he alleged that he had also brought an action against Daugherty, and caused a writ of attachment to be levied on the property, which the appellee had first caused to be attached. The intervenor set up several grounds on which he claimed that precedence should be given to the lien acquired through the attachment sued out by him. On March 12, 1886, a judgment was rendered in favor of the appellee against Daugherty, whereby the attachment lien was foreclosed, and the proceeds of the attached property, the same having been sold and deposited with the clerk, was directed to be paid to the appellee. By that judgment no disposition of the intervention was made. On April 2, 1886, the appellee announced ready for trial on the matters set up in the intervention, and the intervenor made an application for continuance, which was by the court overruled, and a judgment was then rendered in favor of the appellee against the intervenor, who offered no evidence. The action of the court in refusing a continuance is assigned as error. The ruling of the court refusing a continuance was on the ground that the intervenor could not delay the appellee in the assertion and collection of his claim against Daugherty. In view of the grounds on which the continuance was sought, it is unnecessary to inquire whether an intervenor in any case is entitled to a continuance whereby a plaintiff will be delayed in the collection of a judgment against a defendant, or, if so entitled, to determine on what terms a continuance upon sufficient showing should be granted. The application for continuance was based on the absence of witnesses, and it showed that subpoenas for them were obtained by the intervenor on the | Under Rev.St. art. 1277, providing that an applicant for continuance for want of testimony shall state "that he has used due diligence to procure the same, stating such diligence," such an application, which does not show when the subpoenas for the absent witnesses were placed in the hands of an officer for service, or when they were served, is properly refused. | "Does a failure by an applicant for continuance for want of testimony to state ""that he has used due diligence to procure the same, stating such diligence,"" leave the matter of continuance to the discretion of the court?" | 030817.docx | LEGALEASE-00136858-LEGALEASE-00136859 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 11444 | First Nat. Bank v. Yakey, 253 Ill. App. 128 | 8.30E+05 | The object of the adoption of the Negotiable Instrument Act by a number of the States of this country was not only to codify the law merchant but to establish a uniformity as to the rights and liabilities of parties to negotiable instruments. In our opinion, the intention of the legislature was to fix, by law, the status of an indorser in blank upon the back of a negotiable note as that of an indorser and that parol evidence is not admissible to change its character nor can such character be changed by alleging in the declaration that such an indorsement, was, in fact, made as a maker. | The object of the adoption of Negotiable Instruments Act by number of states was to codify the law merchant and to establish a uniformity as to the rights and liabilities of parties to negotiable instruments. S.H.A. ch. 98 S 21 et seq. | What is the object of the Negotiable Instruments Act? | 009419.docx | LEGALEASE-00137731-LEGALEASE-00137732 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 11445 | Tallahassee Bank & Tr. Co. v. Raines, 125 Ga. App. 263 | 83E+405 | "Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement . An indorsement must be written on the instrument or on a paper so firmly affixed thereto as to become a part thereof." Code Ann. s 109A-3-202. This means that a separate paper pinned or clipped to an instrument is an insufficient indorsement. The paper must be "so firmly affixed to the instrument as to become an extension or part of it.Such a paper is called an allonge." Comment 3 to s 3-202 of the 1962 Official Text of the Uniform Commercial Code. Both Black's Law Dictionary and C.J.S. define an allonge as a paper attached to a bill or note for the purpose of writing indorsements when there is no room on the instrument itself. | Separate paper pinned or clipped to an instrument is an insufficient indorsement, but rather paper must be so firmly affixed to instrument as to become an extension or part of it. Code, S 109A-3-202. | Whether a separate paper pinned or clipped to an instrument is considered as a sufficient indorsement? | 009425.docx | LEGALEASE-00138033-LEGALEASE-00138034 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11446 | Shapleigh Inv. Co. v. Miller, 193 S.W.2d 931 | 266+1133 | Plaintiff's promise to pay interest for three years, and its relinquishment of the right to pay the entire principal before the extended maturity, constituted sufficient consideration for the extension agreement. Feldmann v. Riegel, Mo.App., 39 S.W.2d 452; Baade v. Cramer, 278 Mo. 516, 213 S.W. 121; Stillwell v. Aaron, 69 Mo. 539, 33 Am.Rep. 517; Russell v. Wyant, 214 Mo.App. 377, 253 S.W. 790. | Promise of owner of realty subject to trust deed to pay interest on debt secured thereby for three years and relinquishment of right to pay entire principal before extended maturity constituted sufficient consideration for agreement extending loan three years. | Is promise to pay interest a valid consideration? | 010240.docx | LEGALEASE-00137828-LEGALEASE-00137829 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 11447 | Rogowski v. Brill, 131 N.Y.S. 589 | 83E+413 | It is conclusively established by the evidence that the note was indorsed by defendant at the request of plaintiff, without consideration, and solely for the accommodation of the plaintiff. It further appears that the original note, of which the note in suit was a renewal, was given for a pre-existing debt. In order to constitute consideration for such a note, the holder must show that he has parted with something; that he has given up the original debt, or the right to sue upon it. "The taking of the debtor's note raises no presumption that it is in payment of the debt, and there was here no circumstance or suggestion that the plaintiff extended the time of payment, or did any other act which would have precluded him from surrendering the note and resorting to the original indebtedness." Roseman v. Mahony, 86 App. Div. 377, 83 N. Y. Supp. 749. | In order for a pre-existing debt to constitute consideration for an indorsement of a note, the holder must show that he has parted with something, that he has given up the original debt, or the right to sue on it. | When does a pre-existing debt constitute a consideration? | 010242.docx | LEGALEASE-00137944-LEGALEASE-00137945 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 11448 | State v. Hazellief, 148 So. 2d 28 | 63+1(1) | "Payola" probably is not regarded as an authentic word, but this lately coined expression is peculiarly descriptive. It denotes to the public the unsavory practice of making gifts to receptive representatives of powerful governmental agencies as a means of currying favor and enhancing prospects of economic or other advantages. Although generally such practices have not been forbidden under penalty of law, they are widely condemned as unethical and offensive to good government. | "Payola" denotes unsavory practice of making gifts to receptive representatives of powerful governmental agencies as means of currying favor and enhancing prospects of economic or other advantages. | "What is the definition of ""payola"" in regards to bribery?" | 011836.docx | LEGALEASE-00137633-LEGALEASE-00137634 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 11449 | People v. Shaffer, 130 A.D.2d 431 | 63+1(1) | On a motion to dismiss an indictment or counts thereof the burden falls upon the defendant to demonstrate that the evidence before the grand jury, if unexplained and uncontradicted, would not warrant a conviction by a trial jury. People v. Sullivan, 68 N.Y.2d 495, 510 N.Y.S.2d 518, 503 N.E.2d 74 (1986). On such a motion, the evidence is to be viewed in the light most favorable to the prosecution. People v. Warner-Lambert Co., 51 N.Y.2d 295, 434 N.Y.S.2d 159, 414 N.E.2d 660 (1980). Section 215.00 of the Penal Law provides that "[a] person is guilty of bribing a witness when he confers, or offers or agrees to confer, any benefit upon a witness ... upon an agreement or understanding that (a) the testimony of such witness will thereby be influenced...." All that is required for a bribery to be complete is the offer or agreement to confer a benefit upon the defendant's agreement or understanding that the witness' testimony will thereby be influenced. There is no requirement that the benefit actually be conferred or that the testimony actually be influenced. | All that is required for bribery of witness to be complete is offer or agreement to confer benefit upon defendant's agreement or understanding that testimony will thereby be influenced; there is no requirement that benefit actually be conferred or that testimony actually be influenced. McKinney's Penal Law S 215.00. | What is required for the crime of bribery of a witness to be complete? | 011850.docx | LEGALEASE-00137524-LEGALEASE-00137525 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 11450 | Thayer v. King Cty., 46 Wash. App. 734 | 92+2580 | This issue can be decided by referring to the present statutory scheme for the vacation of roads. That procedure was followed in the present case. Moreover, the power to vacate streets is a political function; in the absence of collusion, fraud, or the interference with a vested right, this function will not be judicially reviewed. Capitol Hill Methodist Church v. Seattle, 52 Wash.2d 359, 324 P.2d 1113 (1958). Appellants have failed to make this showing. | Power of county to vacate streets is a political function and in the absence of collusion, fraud, or interference with vested rights, such function will not be judicially reviewed. West's RCWA 36.87.030, 36.87.040. | Can the vacation of a street be reviewed in the absence of fraud or collusion? | 019317.docx | LEGALEASE-00137736-LEGALEASE-00137737 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 11451 | Hutchinson v. Des Moines Hous. Corp., 248 Iowa 1121 | 302+9 | We will first consider the motion to strike of defendant Ceretti. It pertains only to paragraph 9(a), which alleges Ceretti, with the other defendants, was negligent "by failing to conduct and maintain a fire department and adequate fire protection and inspection". This is a conclusion and plaintiff made no allegations of fact concerning Ceretti on which to base this conclusion. In order to constitute proper and effective pleading a conclusion concerning negligence must be based upon proper and pertinent facts.Taylor County Farm Bureau v. Board of Supervisors, 218 Iowa 937, 252 N.W. 498; Benton v. Morningside College, 202 Iowa 15, 209 N.W. 516; 71 C.J.S. Pleading "" 17 and 18; Townsend v. Armstrong, 220 Iowa 396, 260 N.W. 17; Andrew v. Hartford Accident & Indemnity Co., 207 Iowa 652, 223 N.W. 529, 535; Ceretti was a tenant in the recreation building renting a small section in which he conducted a tavern. It is impossible to conceive of any duty or obligation on his part to maintain a fire department on behalf of his co-tenants, the Tedrows, or anyone in privity through them. R.C.P. 113 provides: "Improper or unnecessary matter in a pleading may be stricken out on motion of the adverse party." The ruling of the trial court was proper under this rule as well as under the citations set out. | To constitute proper and effective pleading a conclusion concerning negligence must be based on proper and pertinent facts. | Should a conclusion be based on proper and pertinent facts to constitute a proper and effective pleading? | 023377.docx | LEGALEASE-00137763-LEGALEASE-00137764 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 11452 | Mermigis v. Servicemaster Indus., 437 N.W.2d 242 | 307A+725 | Neither is the denial of prejudgment interest a lawful assignment of costs under our general continuance rules. See Iowa R.Civ.P. 182-184. Rule 184 in part provides that every continuance shall be at the cost of the moving party unless otherwise ordered by the court. In Roeder v. Nolan, 321 N.W.2d 1, 4 (Iowa 1982), we held that a continuance could not be conditioned upon payment by the movant of the non-moving party's travel expenses. There we stated that "costs" in the context of our continuance rules did not include such expenses or attorney fees. Id. Prejudgment interest is similarly not a "cost" but rather is an element of plaintiff's recovery. See Baculis, 430 N.W.2d at 401 (generally, prejudgment interest reflects the lost value of the money awarded). Thus, the denial of prejudgment interest is not a cost that the district court may assess in granting a continuance. | Denial of prejudgment interest is not "cost" that district court may assess in granting continuance to plaintiff. Rules Civ.Proc., Rule 184; I.C.A. S 535.3. | Is the denial of prejudgment interest a cost that the court may assess in granting continuance? | 030859.docx | LEGALEASE-00137320-LEGALEASE-00137321 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11453 | Levine v. Behn, 169 Misc. 601 | 307A+91 | Finally, it is urged by the plaintiffs that this motion should not be entertained until they have had an opportunity to examine Mr. Rentschler and other officers or directors of The National City Bank before trial. An examination along these lines was stayed pending the determination of this motion. Ordinarily, the courts exercise the greatest liberality with respect to the allowance and the scope of examination before trial and dismiss without comment the objections so frequently interposed that such examinations are "fishing expeditions' and not sought in good faith. If ever there was a case, however, where it is clear beyond doubt that the examination is not sought in good faith, will accomplish no useful purpose, but is sought solely for the purpose of annoying and harassing the defendants, this is that case. There is nothing to be gained by an examination before trial. The suit here is utterly without merit; there is no real substantial issue to be tried. The plaintiffs have no just claim or grievance. As this court had occasion to observe in another case a motion by a defendant for summary judgment, "the controversy is not one of the defendant's choosing; he is forced into the legal arena. Why should he be harassed and inconvenienced, and perhaps damaged in his business and credit if it clearly appears that the plaintiff can entertain no hope of success? True, the defendant will prevail at the trial, but he will have been subjected to considerable expense by way of attorney's fees and preparation for trial, for which, under our present system, he will not be compensated by the costs imposed. What better way is there for doing away with the multiplicity of unfounded and worthless suits with which our calendars are clogged? What more effective method is there of discouraging so-called "strike suits," brought for the most part for their nuisance value?' Pross v. Foundation Properties Company, Inc., 158 Misc. 304, 308, 285 N.Y.S. 796, 800. | Ordinarily the courts exercise the greatest liberality with respect to the allowance and the scope of examination before trial. | Do the courts exercise the greatest liberality with respect to the allowance and the scope of examination before trial? | 030995.docx | LEGALEASE-00137537-LEGALEASE-00137538 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 11454 | Mellon v. Beebe, 51 N.Y.S.2d 142 | 307A+91 | The privilege of examining defendants has been much extended and permitted, rather than hampered by technical rules, provided the inquiry is directed to relevant issues. The information sought in the case at bar would seem to be relevant. The examination should not be denied on the ground of irregularity. A denial of the examination would only be justified if made without prejudice. An examination of the complaint and the character of the information sought would seem to justify the allegations on information and belief, as made in the complaint. | The privilege of examining defendants before trial has been much extended and is permitted, rather than hampered by technical rules, if inquiry is directed to relevant issues. | Is the privilege of examining defendants before trial permitted? | Pretrial Procedure - Memo # 4475 - C - NC.docx | ROSS-003318127-ROSS-003318129 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 11455 | Fulton v. Nat'l Aniline & Chem. Co., 214 A.D. 846 | 307A+91 | 23 Under the circumstances of this case, we think that Justin F. Wait is a proper person to be examined under section 289 of the Civil Practice Act. According to the moving papers he was not an ordinary employee, who in no way represented his corporate employer, but he was an employee with discretion and control, and represented the corporation in directing the construction of the machines in question. This court has consistently held that a liberal construction should be placed on the provisions of the Civil Practice Act, permitting the examination of an adverse party or his assignor. Sands v. Comerford, 211 App. Div. 406, 207 N. Y. S. 398. Within the rule repeatedly followed, the defendant is entitled to part of the examination sought. | A liberal construction should be placed on Civil Practice Act, SS 288, 289, permitting examination of adverse party or his assignor. | Should a liberal construction be placed permitting examination of an adverse party or his assignor? | 031050.docx | LEGALEASE-00138062-LEGALEASE-00138064 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 11456 | Mazzenga v. Dorfman, 272 Pa. Super. 379 | 307A+725 | In light of the Pennsylvania Supreme Court cases, Budget Laundry, supra; Nerkowski v. Yellow Cab, 436 Pa. 306, 259 A.2d 171 (1969); and Bierstein v. Whitman, 355 Pa. 515, 50 A.2d 334 (1943), we believe the instant case to be one of those situations requiring special consideration in the interest of justice to the litigants in having this matter adjudicated on the merits. We are mindful of the lower court's concern with respect to the backlog on trial calendars in the Commonwealth. However, we believe that the imposition of an appropriate sanction would be a more appropriate device to employ to insure the speedy disposition of cases. | Imposition of an appropriate sanction is a more appropriate device than denial of continuance to employ to ensure the speedy disposition of cases. | Is imposition of an appropriate sanction a more appropriate device than denial of continuance to employ to ensure the speedy disposition of cases? | Pretrial Procedure - Memo # 4580 - C - RF.docx | ROSS-003291755-ROSS-003291756 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 11457 | Soto v. BorgWarner Morse TEC Inc., 239 Cal. App. 4th 165, 191 Cal. Rptr. 3d 263 | 307A+36.1 | A defendant records may be the only source of information regarding its financial condition. (See Mike Davidov Co. v. Issod (2000) 78 Cal.App. 4th 597, 609, 92 Cal.Rptr.2d 897 (Mike Davidov Co.).) Although Civil Code section 3295, subdivision (c), seeks to safeguard the privacy of those records (Kerner v. Superior Court (2012) 206 Cal.App.4th 84, 120, 141 Cal.Rptr.3d 504) by prohibiting the plaintiff from seeking pretrial discovery of a defendant financial condition or profits "unless the court enters an order permitting such discovery pursuant to this subdivision" (Civ.Code, 3295, subd. (c)), the plaintiffs have several discovery tools at their disposal. To obtain the order described in Civil Code section 3295, the plaintiff must follow the procedure set forth in the statute: "Upon motion by the plaintiff supported by appropriate affidavits and after a hearing, if the court deems a hearing to be necessary, the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 [ ("Exemplary damages; when allowable; definitions") ]." (Civ.Code, " 3295, subd. (c).) The plaintiff may make the motion any time during the proceedings, and the court may issue its order at any time, including after a finding of liability has been made. (Mike Davidov Co., supra, 78 Cal.App.4th at p. 609, 92 Cal.Rptr.2d 897.) | The plaintiff may make a motion for discovery regarding the defendant's financial condition, as required for punitive damages, at any time during the proceedings, and the court may issue its order at any time, including after a finding of liability has been made. Cal. Civ. Code S 3295. | Can the plaintiff make a motion for discovery regarding the defendant financial condition? | 031230.docx | LEGALEASE-00137159-LEGALEASE-00137160 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11458 | Jack v. P & A Farms, Ltd., 822 N.W.2d 511 | 307A+726 | It was well within the discretion of the district court to decline to grant a seventh continuance in a case that had been on file for over four years. Hawkeye Bank & Trust, 463 N.W.2d at 26 ("Given the broad discretion vested in district courts to grant or deny continuances, we will reverse only when that discretion is abused.").However, we find that the court's entry of a default judgment dismissing Jack's case was based on an erroneous interpretation of rule 1.971(3). We believe our interpretation of rule 1.971(3) is consistent with our general policy in this jurisdiction " "to allow a determination of controversies on their merits rather than on the basis of nonprejudicial inadvertence or mistake." " Brandenburg v. Feterl Mfg. Co., 603 N.W.2d 580, 584 (Iowa 1999) (quoting Whitehorn v. Lovik, 398 N.W.2d 851, 853 (Iowa 1987)); Paige v. City of Chariton, 252 N.W.2d 433, 437 (Iowa 1977); Wharff v. Iowa Methodist Hosp., 219 N.W.2d 18, 21 (Iowa 1974) ("The general policy in this jurisdiction has been to allow trial on the merits."); Sawyer v. Sawyer, 261 Iowa 112, 117, 152 N.W.2d 605, 608 (1967) ( "[T]rials upon the merits are favored and defaults avoided if fairly possible."); see also McQuillen v. City of Sioux City, 306 N.W.2d 789, 791 (Iowa 1981) ("[T]he drastic action of dismissal should not be ordered in the absence of willfulness, bad faith or fault."). | Denial of request by employee's counsel for a continuance of trial in negligence action against employer, when employee failed to appear personally for trial, was not abuse of discretion, where case had been continued six times and had been on file for four years. | "Would it be an abuse of discretion if a request by employee's counsel is denied for a continuance of trial in negligence action against employer, when employee failed to appear personally for trial?" | 031262.docx | LEGALEASE-00137242-LEGALEASE-00137243 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 11459 | Hulton v. Phaneuf, 85 R.I. 406 | 307A+720 | The defendants took exception to a ruling of the trial justice permitting plaintiff to amend his bill of particulars during the trial of the case. Under the amendment, evidence was introduced concerning an injury to plaintiff's ear. While a party may not as of right amend the pleadings after trial has begun, it is well settled that the matter of amendment in such circumstances rests in the discretion of the court. Sachem Co. v. Allen, 58 R.I. 311, 312, 192 A. 478. If a defendant's ability to defend is impaired by such amendment, he may move that the case be passed. Sarcione v. Outlet Co., 53 R.I. 76, 163 A. 741.The defendants here did not so move and thus the only question presented is whether the trial justice abused his discretion in allowing the amendment. We do not think that he did, and the exception is overruled. | If a defendant's ability to defend is impaired by amendment to pleadings after trial has begun, he may move that the case be passed and where he does not do so, only question presented is whether trial justice abused discretion in allowing amendment. | "If a defendant's ability to defend is impaired by amendment to pleadings after trial has begun, may he move that the case be passed?" | 031297.docx | LEGALEASE-00137400-LEGALEASE-00137401 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 11460 | Brake v. Murphy, 693 So. 2d 663 | 307A+725 | Under Flea Market USA, Inc. v. Cohen, 490 So.2d 210 (Fla. 3d DCA 1986) there is no abuse of discretion in conditioning an eve of trial continuance on payment of attorney's fees caused by delay. Here, however, the amount to be paid, $1000, was not determined based on any evidence of the costs incurred due to the delay. Also, in Flea Market USA it was the party seeking the delay, not counsel, who was ordered to pay the costs associated with the continuance. Thus we conclude that under the instant circumstances that part of the order granting a continuance which levied a $1000 fine cannot stand. | Trial court does not abuse its discretion in conditioning eve of trial continuance on payment of attorney fees caused by delay. | Will an eve-of-trial motion for continuance be granted by the court which conditioned payment of attorneys fees caused by the delay? | 031360.docx | LEGALEASE-00137561-LEGALEASE-00137562 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 11461 | Odom v. Williams, 74 Wash. 2d 714 | 307A+725 | Against the background of these circumstances and facts, defendant belated "morning of the trial" motion for continuance and his deliberate absence from the proceedings bespeaks neither due diligence nor good faith. To have granted the untimely motion would have worked an unjustified hardship on plaintiffs and their witnesses, entailed unnecessary inconvenience to the visiting trial judge and the assembled panel of jurors, incurred unwarranted expense to the state and county, and added unpredictable further delay to an already overly extended proceeding. The trial judge before passing upon the motion, and with an eye to the physician concern about a "long or suspenseful" trial, ascertained from counsel that the trial would not be a protracted or difficult one. He also ascertained that defendant counsel could make no firm prediction when his client would be available for a trial in the future. We are satisfied the trial judge carefully exercised his discretion in considering the defendant motion and did not abuse that discretion in denying the motion. Cf. Conner v. Zanuzoski, 36 Wash.2d 458, 218 P.2d 879 (1950), and McInnes v. Sutton, 35 Wash. 384, 77 P. 736 (1904). | Deliberate absence from proceedings of movant seeking continuance bespeaks neither due diligence nor good faith. | Does a defendants deliberate absence from the proceedings on a motion for continuance bespeak due diligence or good faith? | 031362.docx | LEGALEASE-00137577-LEGALEASE-00137578 | Order, SA | 0.91 | 1 | 0 | 0 | 1 | |
| 11462 | Knapp v. Vill. of Beaver City, 273 Neb. 156 | 307A+517.1 | The Village also argues that dismissal without prejudice under " 48"177 would circumvent the requirements of Neb. Workers' Comp. Ct. R. of Proc. 8 (2006). Rule 8 states that "[a] continuance, under any circumstances, may be granted if good cause is shown; however, no continuance shall be granted within two weeks of the date of hearing unless an emergency arises." The Village contends that even though Knapp was previously denied a continuance, her dismissal without prejudice serves the same purpose. We are not persuaded by this argument. A dismissal without prejudice and a continuance are not the same. The former removes the case from the court's docket and subjects the plaintiff to the running of a limitations period, while the latter does not. We note that a plaintiff in a civil action may seek a continuance under Neb.Rev.Stat. " 25"1148 (Reissue 1995), which continuance is discretionary with the court, and if denied, the plaintiff may dismiss the action without prejudice under " 25"601. | A dismissal without prejudice and a continuance are not the same; the former removes the case from the court's docket and subjects the plaintiff to the running of a limitations period, while the latter does not. | Is dismissal without prejudice and a continuance the same? | Pretrial Procedure - Memo # 4716 - C - ES.docx | ROSS-003290767-ROSS-003290768 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11463 | Garza v. Serrato, 699 S.W.2d 275 | 307A+91 | It is well settled that the taking of testimony by deposition is a departure from the common law rules of evidence and that the right to so take a deposition depends entirely upon statutory provisions therefor. Thus, the rule in Texas is that the right to take the deposition of a witness depends entirely on the statutes, and the provisions of the statutes must be strictly complied with. Ex parte Stiles, 136 Tex. 211, 150 S.W.2d 234 (1941). | Right to take deposition of witness depends entirely on statutes and provisions of statutes must be strictly complied with. Vernon's Ann.Texas Civ.St. art. 3746; art. 3744 et seq. (Repealed); Vernon's Ann.Texas Rules Civ.Proc., Rules 202, 203; Rules 193, 194 (Repealed). | Does the right to take deposition of witness depend entirely on statutes? | Pretrial Procedure - Memo # 4734 - C - PC.docx | ROSS-003291194-ROSS-003291195 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11464 | Wolfe v. Decker, 221 Iowa 600 | 307A+720 | Complaint is also made of the action of the court in permitting certain amendments to the petition filed at or about the time the trial commenced and of the action of the court in overruling a motion for continuance because of the filing of the amendments. These are matters resting largely in the discretion of the trial court, and from a careful examination of the record we are satisfied there was no abuse of this discretion and that the defendant was in no way injured or deprived of any right because of the action of the court. | Whether continuance should be allowed because of filing of amendment to pleading rests largely in discretion of trial court. | Does the question of whether continuance should be allowed because of filing of amendment to pleading rest largely in discretion of trial court? | 031488.docx | LEGALEASE-00137124-LEGALEASE-00137126 | Order, SA | 0.77 | 1 | 0 | 0 | 1 | |
| 11465 | City of Santa Cruz v. Superior Court, 40 Cal. App. 4th 1146 | 92+2487 | We stayed the depositions on City's application for a writ of mandate/prohibition, to permit further consideration of the issues raised in the petition. As will appear, we agree with City that discovery into the subjective motives or mental processes of legislators is forbidden, and that this proscription may not be circumvented by deposing others about the factors that may have led to the legislators' votes. Accordingly, we have determined that the writ of prohibition should issue to prohibit the depositions of Celia Scott, Jeff Ringold, and Peter Katzlberger. | Discovery into subjective motives or mental processes of legislators is forbidden and this proscription may not be circumvented by deposing others about factors that may have lead to legislators' votes. | Is discovery into the subjective motives or mental processes of city council members prohibited? | 031517.docx | LEGALEASE-00137244-LEGALEASE-00137245 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 11466 | Record v. Indem. Ins. Co. of N. Am., 103 Cal. App. 2d 434 | 413+1 | Futhermore, the reasoning in the Savitt case is clearly applicable. In California the liability under the Workmen's Compensation Act is incident to the status of employment and is neither in tort nor in contract. Quong Ham Wah Co. v. Industrial Acc. Comm., 184 Cal. 26, 192 P. 1021, 12 A.L.R. 1190. Regardless of what this basic relationship is termed, the employer's right to reimbursement, credit, or lien does not attach until the employee effects a settlement or recovers a judgment against a third party. Until then any theoretical contingent "rights' are at best inchoate. It is the recovery which fixes the employee's obligation to reimburse and, under the situations described in the amendment, the employer's duty to contribute"just as, under the Aetna case, it is the date of injury which fixes and defines the employer's obligation to compensate. | Liability under Workmen's Compensation Act is incident to status of employment and is neither in tort nor in contract. | "Is liability under the Workmens Compensation Act incident to the status of employment, not in tort or in contract?" | 047918.docx | LEGALEASE-00137161-LEGALEASE-00137163 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11467 | State v. Hebert, 402 So. 2d 675 | 63+1(1) | As we read the statute it proscribes both the giving and the offering to give without a provision that the offer and the taking shall together constitute a single offense. Defendant relies on State v. Ponthier, 391 So.2d 1138 (La.1980) in which the court held that the offer to give $700.00 to influence the officer's conduct in two matters and the payment of several installments constituted only two offenses. We distinguish the Ponthier case by pointing out that the payments to the officer were installments on a set price for the "fixing" of a DWI charge and a simple battery charge. The specific intent was to influence the officer in only two respects. Hebert was to receive continuing help with anything that might arise. The gravamen of the charges was not represented by one charge, two charges or even three charges. | Bribery statute proscribes both giving and offering to give without provision that offer and taking shall together constitute single offense. LSA-R.S. 14:118. | "According to bribery statute, should offering and taking of bribes constitute single offense?" | 011881.docx | LEGALEASE-00138572-LEGALEASE-00138573 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11468 | Bragdon v. Kellogg, 118 Me. 42 | 268+706(3) | The law of the road was established many years ago, before electric roads or automobiles were heard of yet it provided that even slow-moving vehicles like teams, upon approaching to meet on a way should "seasonably turn to the right of the middle of the traveled part of it, so far that they can pass each other without interference." R. S. c. 26, " 2. As the word "team" now includes an automobile, this statute is applicable now to this class of vehicles. This statute is mandatory when it says travelers must "seasonably turn to the right." It means that they must turn in season to prevent a collision, and the one who fails to obey this mandate is prima facie guilty of negligence, and must sustain the burden of excusing his presence upon the wrong side of the road. | One failing to obey the mandate of Rev.St. c. 26, S 2, that persons with a team approaching to meet on a way shall seasonably turn to the right of the middle of the traveled part, is prima facie guilty of negligence, and has the burden of excusing his presence on the wrong side. | What does the phrase seasonably turn mean under the statute? | 019258.docx | LEGALEASE-00138890-LEGALEASE-00138891 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 11469 | Landeche v. McSwain, 96-0959 (La. App. 4 Cir. 2/5/97), 688 So. 2d 1303 | 307A+44.1 | A trial court is endowed with the inherent power to enforce its lawful pre-trial orders and to attach sanctions for non-compliance and is vested with much discretion in selecting the appropriate sanctions. Allwein v. Horn, 558 So.2d 810 (La.App. 5th Cir.1990). Where a party fails to follow a court's pre-trial order, the burden is on that party to show why he failed to so comply. Id. | Trial court is endowed with inherent power to enforce its lawful pretrial orders and to attach sanctions for noncompliance and is vested with much discretion in selecting appropriate sanctions. | Do courts have powers to enforce pre-trial orders? | Pretrial Procedure - Memo # 4413 - C - ES.docx | ROSS-003302135-ROSS-003302136 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 11470 | Soto v. BorgWarner Morse TEC Inc., 239 Cal. App. 4th 165, 191 Cal. Rptr. 3d 263 | 307A+36.1 | It is the province of the trial court to ensure that both parties comply with the letter and spirit of these discovery provisions. (See Mike Davidov Co., supra, 78 Cal.App.4th at p. 609, 92 Cal.Rptr.2d 897; I"CA, supra, 235 Cal.App.4th at pp. 283"284, 185 Cal.Rptr.3d 24.) "[I]t may not be a defendant's burden to prove its net worth, but if it is ordered to produce that evidence it is under an obligation to do so." (StreetScenes v. ITC Entertainment Group, Inc. (2002) 103 Cal.App.4th 233, 243, 126 Cal.Rptr.2d 754.) The consequences for a disobedient or reluctant defendant can be dire. On at least two occasions, the Court of Appeal has upheld awards of punitive damages where the dearth of evidence of the defendant's financial condition is attributable to the defendant's failure to comply with discovery obligations or orders. (Mike Davidov Co., supra, 78 Cal.App.4th at pp. 609"610, 92 Cal.Rptr.2d 897; Green v. Laibco, LLC (2011) 192 Cal.App.4th 441, 453"454, 121 Cal.Rptr.3d 415.) Likewise, a plaintiff's "lack of diligence and preparation in failing to raise this discovery issue until the eve of the punitive damages phase of trial" may fatally undermine an otherwise valid claim for punitive damages. (I"CA, supra, 235 Cal.App.4th at pp. 282, 284, 185 Cal.Rptr.3d 24; see Kelly v. Haag (2006) 145 Cal.App.4th 910, 919"920, 52 Cal.Rptr.3d 126 (Kelly ).). | It may not be a defendant's burden to prove its net worth when the plaintiff seeks punitive damages, but if it is ordered to produce that evidence it is under an obligation to do so. Cal. Civ. Code S 3295. | Can it be a defendant's burden to prove its net worth when the plaintiff seeks punitive damages? | 030940.docx | LEGALEASE-00138946-LEGALEASE-00138947 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 11471 | Stone v. Jarbalo State Bank of Jarbalo, 107 Kan. 332 | 307A+74 | Depositions, by leave of court, may be withdrawn from the files and be returned to the officer before whom they were taken for proper certification. | Depositions, by leave of court, may be withdrawn from the files and be returned to the officer before whom they were taken for proper certification. | Could depositions be withdrawn from the files and returned to the officer before whom they were taken for proper certification? | 031671.docx | LEGALEASE-00138655-LEGALEASE-00138656 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11472 | Ft. Worth & D.C. Ry. Co. v. Walker, 48 Tex. Civ. App. 86 | 307A+74 | The return on a deposition envelope serves the purpose only to preserve the purity of the return of the deposition, and is a matter properly for the court, and not for the jury, as evidence. The reading of the indorsements on the deposition envelope was irregular and immaterial; yet we cannot hold it to be in this case such error as to require reversal. In the argument of this case appellee's attorney, in his opening argument to the jury, alluded to the return on the deposition envelope in connection with the deposing witness's testimony. The appellant's attorney answered the allusion in his speech, as well as commented upon the deposing witness's testimony. The appellee's attorney in his closing speech further replied to the appellant's speech. | The return on a deposition envelope serves the purpose only to preserve the purity of the return of the deposition, and is a matter properly for the court, and not for the jury, as evidence. | Does the return on a deposition envelope serve the purpose only to preserve the purity of the return of the deposition? | 031705.docx | LEGALEASE-00138429-LEGALEASE-00138430 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 11473 | McFaddin v. Sims, 43 Tex. Civ. App. 598 | 307A+74 | A different question is presented by the second objection to the deposition.Article 2284, Rev. St. 1895, requires the officer taking the deposition to certify that the witness signed and swore to the answers before him. This fact does not appear from the certificate above set out either in express words or by necessary implication from the language use. The certificate recites that the witness was sworn by the officer before the interrogatories were propounded to him, and that his answers were reduced to writing, and subscribed and sworn to by him. This is not a statement, as required by the statute, that the answers of the witness were signed and sworn to by him before the officer. The failure of the certificate to show that the depositions were signed and sworn to by the witness before the officer was a fatal defect, and the motion to suppress on this ground should have been sustained. Chapman v. Allen, 15 Tex. 278; Carroll v. Welch, 26 Tex. 147; Bush v. Barron, 78 Tex. 8, 14 S. W. 238. | Rev.St.1895, art. 2284, Rules of Civil Procedure, rule 196, requires the officer taking a deposition to certify that the witness signed and swore to the answers "before" him. Held, that a certificate reciting that the witness was sworn by the officer before the interrogatories were propounded to him, and that his answers were reduced to writing and subscribed and sworn to by him, was defective. | Is the officer taking a deposition required to certify that the witness signed and swore to the answers before him? | 031728.docx | LEGALEASE-00138113-LEGALEASE-00138114 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 11474 | Blades v. Woods, 107 Md. App. 178 | 307A+36.1 | Unnecessary discovery limitations must be avoided in race discrimination cases. Trevino v. Celanese Corp., 701 F.2d 397, 405 (5th Cir.1983); Miles v. Boeing Co., 154 F.R.D. 117, 119 (E.D.Pa.1994). Comparative information that may demonstrate a pattern of discriminatory conduct is relevant. Lieberman v. Gant, 630 F.2d 60, 68 (2d Cir.1980). Discovery should, however, be restricted to the practices at issue in the case, applied to employees in similar circumstances to determine if the employer treats all of its employees under those circumstances in the same manner, or whether it treats employees similarly circumstanced differently and there is some basis for concluding that the difference in treatment is predicated on race.Flanagan, 111 F.R.D. at 46"47, (quoting Hardrick v. Legal Services Corp., 96 F.R.D. 617, 619 (D.D.C.1983)) (emphasis in original). | Comparative information that may demonstrate pattern of discriminatory conduct is relevant in race discrimination cases, but discovery should be restricted to practices at issue in case, and applied to employees in similar circumstances. Md.Rule 2-402(a). | Is comparative information that may demonstrate pattern of discriminatory conduct relevant in race discrimination cases? | 031740.docx | LEGALEASE-00138211-LEGALEASE-00138212 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 11475 | Heit & Weisenthal v. Licht, 218 A.D. 753 | 410+297(4.1) | This court has consistently held that the claim that an examination before trial ought not to be had because it might result in compelling the witness to give evidence against himself is not a proper ground for denying the examination. The right to refuse to incriminate oneself is a personal right and must be claimed at the time the questions are asked. Niehoff v. Star Co., 134 App. Div. 473, 119 N. Y. S. 247; Bioren v. Canadian Mines Co., 140 App. Div. 523, 125 N. Y. S. 392; Peterson v. Fowler, 143 App. Div. 282, 128 N. Y. S. 505; Ryan v. Reagan, 46 App. Div. 590, 62 N. Y. S. 39. | That examination before trial may result in compelling witness to give evidence against himself is no ground for denying examination, since right to refuse to incriminate one's self is personal, and must be claimed when questions are asked. | Is that the examination before trial may compel a witness to give evidence against himself ground for denying examination? | 031745.docx | LEGALEASE-00138217-LEGALEASE-00138218 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 11476 | Krstulja v. Krstulja, 200 Misc. 186 | 307A+91 | There seems to be no doubt that the plaintiff is entitled to the particulars demanded within reason. See Arguimbau v. Arguimbau, 263 App.Div. 871, 32 N.Y.S.2d 190, where the Court held that approximate date or dates of the alleged acts are sufficient. To the same effect is Boelsen v. Boelsen, Sup., 45 N.Y.S.2d 556. It is also true that as a general rule a party will not be allowed to obtain an examination before trial prior to furnishing a bill of particulars. Zecchini v. Mayer, 195 App.Div. 423, 184 N.Y.S. 959. It is the duty of the Court, however, to appreciate the realities in the case at bar. Although the abandonment took place in Jugoslavia in 1928, it was not until twenty-two years later that this action was instituted. Accordingly the events set forth in the answer are twenty-two years old and took place in a foreign country, which is under a totalitarian regime. Defendant claims that he will be more fully able to comply with the demand for a bill of particulars after return of the letters rogatory. Shall this Court before the return of the letters bar the defendant from producing his version of this domestic controversy? The locus of this case is not within this Country and accordingly is beyond the reach of subpoena powers of the State. While the plaintiff must not be surprised at the trial and is entitled to be afforded a fair opportunity before the trial to defend herself against the defendant's charges, by receiving particulars of those charges, justice would be perverted under the circumstances if the defendant were, at this stage of the proceedings, precluded from presenting his defense, see Boelsen v. Boelsen, supra. | Generally, a party will not be allowed to obtain an examination before trial prior to furnishing a bill of particulars. | Will a party not be allowed to obtain an examination before trial prior to furnishing a bill of particulars? | 031759.docx | LEGALEASE-00138324-LEGALEASE-00138325 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 11477 | Davis v. Rose, 278 Ky. 752 | 307A+74 | It is contended by appellants that the court erred in permitting depositions for appellees to be filed because they were taken after the time fixed by the court for appellees to take proof but under the showing made that was a matter within the discretion of the court and we are not prepared to say that there was any abuse of discretion. | Permitting depositions for plaintiffs to be filed after time fixed by trial court for plaintiffs to take proof was discretionary. | Is permitting depositions for plaintiffs to be filed after the time fixed by the trial court for plaintiffs to take proof discretionary? | 031838.docx | LEGALEASE-00138722-LEGALEASE-00138723 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11478 | StreetScenes v. ITC Entm't Grp., 103 Cal. App. 4th 233 | 307A+36.1 | When that second phase was ready to begin, ITC suddenly reversed its direction, arguing it was not ITC's burden (1) to prove its net worth or (2) to authenticate the documents. As to the first reason, it may not be a defendant's burden to prove its net worth, but if it is ordered to produce that evidence it is under an obligation to do so. (Civ.Code, " 3295, subd. (c).) Once the court makes the order there is no justification for not specifically following that order. (See People v. Glass (1975) 44 Cal.App.3d 772, 781"782, 118 Cal.Rptr. 797.) If counsel has problems with the court's orders, he or she may seek a pretrial writ or argue the validity of that ruling on appeal. (Mike Davidov Co. v. Issod, supra, 78 Cal.App.4th 597, 609, 92 Cal.Rptr.2d 897.) Here, there was no error in ordering ITC to bring evidence of its financial condition to court. | Following a determination of liability for punitive damages, once the court orders defendant to produce evidence of financial condition, there is no justification for not specifically following that order; if counsel has problems with the court's orders, he or she may seek a pretrial writ or argue the validity of that ruling on appeal. West's Ann.Cal.Civ.Code S 3295(c). | "Following a determination of liability for punitive damages, once the court orders defendant to produce evidence of financial condition, is there no justification for not specifically following that order?" | Pretrial Procedure - Memo # 5079 - C - CK.docx | ROSS-003291266-ROSS-003291267 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 11479 | In re House of Yahweh, 266 S.W.3d 668 | 307A+36.1 | Johnson has alleged gross negligence claims against relators. Exemplary damages are recoverable for gross negligence claims. See Tex. Civ. Prac. & Rem.Code Ann. " 41.003(a)(3) (Vernon 2008). Information regarding net worth is discoverable in cases in which exemplary damages may be awarded. Lunsford v. Morris, 746 S.W.2d 471, 473 (Tex.1988) (orig.proceeding), overruled on other grounds by Walker, 827 S.W.2d at 842; In re W. Star Trucks US, Inc., 112 S.W.3d 756, 763 (Tex.App.-Eastland 2003, orig. proceeding). A party seeking discovery of net worth information is not required to make a prima facie showing of a right to recover exemplary damages before discovery is permitted. Lunsford, 746 S.W.2d at 473; Al Parker Buick Co. v. Touchy, 788 S.W.2d 129, 131 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding). Therefore, we reject relators' contention that Johnson should be required to make a prima facie showing of a right to recover exemplary damages before obtaining discovery of their net worth. Based on Lunsford and its progeny, Johnson is entitled to discover net worth information based on the gross negligence allegations in his petition. | Information regarding net worth is discoverable in cases in which exemplary damages may be awarded. V.T.C.A., Civil Practice & Remedies Code S 41.003. | Can information regarding net worth discoverable in cases in which exemplary damages be awarded? | 032015.docx | LEGALEASE-00138233-LEGALEASE-00138235 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11480 | Dufresne v. Duemler, 108 A.D.2d 1102 | 307A+36.1 | There should be an affirmance of the order entered February 14, 1984. We concur with the legal holding enunciated in Rupert v. Sellers, 48 A.D.2d 265, 368 N.Y.S.2d 904 that, in respect to compensatory damages, the financial resources of either party are irrelevant. Even where the complaint seeks punitive damages, such evidence is not discoverable before trial (see also Vollertsen Assoc., Inc. v. John T. Nothnagle, Inc., 48 A.D.2d 1007, 369 N.Y.S.2d 267). | Financial resources of either party to civil suit are not discoverable before trial, even where complaint seeks punitive damages. | Are financial resources of either party to a civil suit not discoverable before trial? | 032057.docx | LEGALEASE-00138414-LEGALEASE-00138415 | Order, SA, Sub | 0.72 | 1 | 0 | 1 | 1 | 1 |
| 11481 | Greener v. Workers' Comp. Appeals Bd., 6 Cal. 4th 1028 | 413+13 | Such an exemption would be a permissible exercise of the Legislature's plenary power over workers' compensation only if it were necessary to the effectiveness of the system of workers' compensation. (See Hustedt v. Workers' Comp. Appeals Bd. (1981) 30 Cal.3d 329, 342"343, 178 Cal.Rptr. 801, 636 P.2d 1139.) | Exemption of Workers' Compensation Appeals Board from constitutional provision prohibiting administrative agencies from determining constitutional validity of statutes would be permissible exercise of legislature's plenary power over workers' compensation only if it were necessary to effectiveness of system of workers' compensation. West's Ann.Cal. Const. Arts. 3, S 3.5, 14, S 4. | When is the exercise of the Legislatures plenary powers over workers compensation permissible? | Workers' Compensation Memo #291 ANC.docx | ROSS-003291004-ROSS-003291005 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 11482 | United States v. Robinson, 663 F.3d 265 | 63+1(1) | Without excluding other possible methods of valuation, we agree that the amount of the bribe may suffice as a proxy for value; at least it provides a floor for the valuation question. Here, the government relied only in part on this evidence of value. Robinson made an open-ended offer to pay Weyforth $1,000 a week to divert police attention from his drug-trafficking activities. The government argued that Robinson's willingness to pay $1,000 a week on an ongoing basis was evidence that the subject matter of the bribe was worth at least $5,000. As the government seemed to recognize, however, this argument was weakened by the fact that Robinson paid far less than that amount. Perhaps this accounts for the government's primary focus on evidence of the officers' salaries and also the profit Robinson stood to realize from unfettered cocaine trafficking, using the controlled transaction as a measure. We see nothing objectionable in these alternative methods of proof; both easily exceeded the $5,000 threshold. Accordingly, we conclude that the evidence was sufficient to permit a rational juror to find that the government carried its burden of proof on the transactional element of the " 666(a) offense. | For purposes of establishing threshold amount to support charge for violating statute prohibiting bribery intended to influence an organization that received federal funds in excess of $10,000 in one-year period, amount of bribe may suffice as proxy for value. 18 U.S.C.A. S 666(a). | Can the amount of a bribe suffice as a proxy for value for purposes of establishing the threshold amount to support a charge of federal funds bribery? | 011889.docx | LEGALEASE-00139319-LEGALEASE-00139320 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 11483 | United States v. Zwick, 199 F.3d 672 | 63+1(1) | Thus, we hold that " 666 requires that the government prove a federal interest is implicated by the defendant's offense conduct. In so holding, we part ways with the Sixth Circuit's holding in Dakota and agree with the result reached by the Second Circuit, as expressed most recently in Santopietro, and the District Court for the Southern District of California in its pre-Salinas Frega decision. | A highly attenuated implication of a federal interest will suffice to prove that a federal interest is implicated by a defendant's offense conduct, as required for a conviction for the acceptance or solicitation of bribes by an agent of a local government that is receiving federal funds. 18 U.S.C.A. S 666(a)(1)(B). | Is the government required to prove that a federal interest has been implicated by the defendants conduct in order to prosecute him for violation of 666? | Bribery - Memo #572 - C - LB.docx | ROSS-003329117-ROSS-003329118 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 11484 | Rice v. State, 861 S.W.2d 925 | 135H+144 | Appellant's conviction on the burglary charge following his conviction on the theft charge is not barred under Blockburger because the burglary and the theft offenses contain an element the other does not contain. The theft charge requires the State to prove appropriation of property without the owner's effective consent; the burglary charge does not. Compare Section 31.03 with Section 30.02(a)(1). The burglary charge requires the State to prove entry into a building not open to the public without effective consent of the owner; the theft charge does not. Compare Section 30.02(a)(2) with Section 31.03. | Defendant's prior conviction for theft did not bar, under double jeopardy clause, his subsequent conviction for burglary of building with intent to commit theft, even though both convictions arose out of same transaction; theft charge required state to prove appropriation of property without owner's effective consent, while burglary charge did not, and burglary charge required state to prove entry into building not open to public without effective consent of owner, while theft charge did not. V.T.C.A., Penal Code SS 30.02(a)(1), 31.03; U.S.C.A. Const.Amend. 5. | Does burglary require proof of entry without consent? | Burglary - Memo 201 - KNR.docx | ROSS-003301735-ROSS-003301736 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11485 | Universal Underwriters Ins. Co. v. Superior Court for Los Angeles Cty., 250 Cal. App. 2d 722 | 307A+742.1 | The action involved here was filed in November 1964. Under rule 210, California Rules of Court, it was incumbent on all parties to complete all discovery proceedings before the pretrial conference. Pacific accordingly served its interrogatories on Universal in April 1965 pursuant to section 2030, Code of Civil Procedure. One purpose of pretrial discovery is "to simplify and narrow the issues." (Greyhound Corp. v. Superior Court, 56 Cal.2d 355, 376, 15 Cal.Rptr. 90, 99, 364 P.2d 266, 275.) As the court said in Pulse v. Hill, 217 Cal.App.2d 301, 304, 31 Cal.Rptr. 765, 767, "The principal purposes of pretrial are to find out what the lawsuit is about, to simplify and define the issues to be litigated, and to determine how the trial may proceed most expeditiously. It is also to give notice of matters not necessarily revealed by the pleadings where such matters may be issues in the case." | Principal purposes of pretrial are to find out what lawsuit is about, to simplify and define issues to be litigated, and to determine how trial may proceed most expeditiously; and another purpose is to give notice of matters not necessarily revealed by pleadings where such matters may be issues in case. Cal. Rules of Court, rules 210, 216; West's Ann.Code Civ.Proc. SS 473, 2030. | Is principal purpose of a pretrial in a lawsuit to determine what the lawsuit is about? | 026355.docx | LEGALEASE-00139025-LEGALEASE-00139026 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 11486 | Peter Polly Togs v. Silverman, 169 Misc. 780 | 307A+91 | The limitations prevailing in an examination before trial in a negligence suit do not apply to an action to recover damages for fraud. | The limitations prevailing in regard to an examination before trial in a negligence suit do not apply to an action for fraud. | Do the limitations prevailing in regard to an examination before trial in a negligence suit not apply to an action for fraud? | 030963.docx | LEGALEASE-00139153-LEGALEASE-00139154 | Condensed, SA | 0.07 | 0 | 1 | 0 | 1 | |
| 11487 | Syken v. Elkins, 644 So. 2d 539 | 307A+36.1 | For the foregoing reasons, discovery of an opposing medical expert for impeachment is limited by the following criteria:1. The medical expert may be deposed either orally or by written deposition.2. The expert may be asked as to the pending case, what he or she has been hired to do and what the compensation is to be.3. The expert may be asked what expert work he or she generally does. Is the work performed for the plaintiffs, defendants, or some percentage of each?4. The expert may be asked to give an approximation of the portion of their professional time or work devoted to service as an expert. This can be a fair estimate of some reasonable and truthful component of that work, such as hours expended, or percentage of income earned from that source, or the approximate number of IME's that he or she performs in one year. The expert need not answer how much money he or she earns as an expert or how much the expert's total annual income is.5. The expert may be required to identify specifically each case in which he or she has actually testified, whether by deposition or at trial, going back a reasonable period of time, which is normally three years. A longer period of time may be inquired into under some circumstances.56. The production of the expert's business records, files, and 1099's may be ordered produced only upon the most unusual or compelling circumstance.7. The patient's privacy must be observed.68. An expert may not be compelled to compile or produce nonexistent documents.7 | In discovery, opposing medical expert witness may be asked as to the pending case, what he or she has been hired to do and what the compensation is to be. | "In discovery, may opposing medical expert witness be asked as to the pending case?" | 031880.docx | LEGALEASE-00139228-LEGALEASE-00139230 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 11488 | In re Tecore, 371 S.W.3d 603 | 307A+501 | Texas Rule of Civil Procedure 162 provides that "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." Tex.R. Civ. P. 162. "The plaintiff's right to take a nonsuit is unqualified and absolute as long as the defendant has not made a claim for affirmative relief."]BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 840 (Tex.1990) (emphasis in original). Neither party has claimed that AirWalk had any claim for affirmative relief in the case filed by relators. Instead, AirWalk's argument is that a non-suit cannot be taken while the case has been stayed by the trial court. We disagree. Relators' right to take a non-suit was "unqualified and absolute" *605 and could not be prevented by a stay order entered by the trial court. That court simply had "no discretion to deny a nonsuit unless the defendant ha[d] filed pleadings seeking some form of affirmative relief." United Oil & Minerals, Inc. v. Costilla Energy, Inc., 1 S.W.3d 840, 846 (Tex.App.-Corpus Christi 1999, pet. dism'd) ("a plaintiff who follows Rule 162 is not prevented from dismissing claims or taking a nonsuit during the existence of an abatement"). | The plaintiff's right to take a nonsuit is unqualified and absolute, as long as the defendant has not made a claim for affirmative relief. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Is a plaintiff's right to take a non-suit unqualified and absolute? | Pretrial Procedure - Memo # 5212 - C - KBM.docx | LEGALEASE-00029085-LEGALEASE-00029086 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11489 | Fritz v. Resurgent Capital Services, LP, 955 F.Supp.2d 163 | 289+1174 | Alegis does not dispute the allegations that it is a "debt collector" and the general partner of Resurgent LP. "The basic premise of limited partnership law is that general partners are personally liable for partnership obligations but limited partners are not." In re LJM2 Co"Inv., L.P., 866 A.2d 762, 772 (Del.Ch.2004). That rule makes a general partner liable for the FDCPA violations of the partnership. See Pollice, 225 F.3d at 405 n. 9 (holding general partner liable "where the limited partnership meets the definition of "debt collector" "). | Under Delaware law, the basic premise of limited partnership law is that general partners are personally liable for partnership obligations but limited partners are not. | Is the basic premise of a limited partnership that the general partners are personally liable for partnership obligations and limited partners are not? | 022306.docx | LEGALEASE-00139544-LEGALEASE-00139545 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 11490 | Gilcrease v. Gilcrease, 438 So. 2d 658 | 307A+748 | La.C.C.P. Art. 1551 outlines pre-trial conference procedure in Louisiana. The theory inherent in pre-trial procedure is to avoid surprise and to allow orderly disposition of the case. The pre-trial order, or as in this case the pre-trial agreement, controls the subsequent course of the action but can be modified at trial to prevent substantial injustice. La.C.C.P. Art. 1551; Austrum v. City of Baton Rouge, 282 So.2d 434 (La.1973). | Theory inherent in pretrial procedure is to avoid surprise and to allow orderly disposition of case; accordingly, pretrial order or agreement controls subsequent course of action, though it can be modified at trial to prevent substantial injustice. LSA-C.C.P. art. 1551. | Is the theory inherent in pretrial procedure to avoid surprise and to allow orderly disposition of case? | Pretrial Procedure - Memo # 2471 - C - SJ.docx | ROSS-003318186-ROSS-003318187 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 11491 | Lenoir v. Marino, 469 S.W.3d 669 | 307A+554 | Here, the motions to dismiss raised the issue of immunity. See id.; see also Franka v. Velasquez, 332 S.W.3d 367, 371 n. 9 (Tex.2011) (stating that Section 101.106 confers immunity in some instances to employees of governmental units). If immunity applies, the trial court lacks subject-matter jurisdiction over the case. See Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex.2004); see also Univ. of Tex. Health Sci. Ctr. at San Antonio v. Webber"Eells, 327 S.W.3d 233, 240 (Tex.App."San Antonio 2010, no pet.). Subject-matter jurisdiction is a question of law which we review de novo. Miranda, 133 S.W.3d at 226. Likewise, matters of statutory construction are reviewed under a de novo standard. City of San Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex.2003); see Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex.2009). | If governmental immunity applies on a motion to dismiss, the trial court lacks subject matter jurisdiction over the case. | "If governmental immunity applies on a motion to dismiss, does the trial court lack subject matter jurisdiction over the case?" | Pretrial Procedure - Memo # 5578 - C - BP.docx | ROSS-003291334-ROSS-003291335 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11492 | Joslyn v. United States, 90 Fed. Cl. 161 | 34+5(8) | Even if plaintiff's request to withdraw his resignation had been timely, the Army acted within its wide discretion to accept or reject his request. In the military pay context, "strong policy reasons compel courts "to allow the widest possible latitude to the armed services in their administration of personnel matters." " Voge v. United States, 844 F.2d 776, 782 (Fed.Cir.1988) (quoting Sanders, 594 F.2d at 813). "The Secretary [of the Army] can exercise discretion to accept [a resignation] or not, and allow the withdrawal [of a resignation] or not, and his decision will be sustained if not arbitrary and capricious and contrary to law." Cole, 689 F.2d at 1041.The Army's decision of whether or not to accept a withdrawal of a resignation "must be granted substantial deference." Brown, 30 Fed.Cl. at 231. In this case, the Army did not summarily refuse Mr. Joslyn's request to withdraw his resignation. See Cunningham, 423 F.2d at 1384 (holding plaintiff's resignation involuntary where plaintiff timely submitted a request to withdraw her resignation and was denied without any demonstrable exercise of discretion). Nor did the Army unreasonably exercise its discretion in denying Mr. Joslyn's request to withdraw his resignation. His request was "reviewed as an exception to policy and not favorably considered" because "the reasons presented did not justify approval of the request." AR 1. Mr. Joslyn's commanders had indicated that they did not agree with his request to withdraw his resignation, in part because he was under consideration for UCMJ adverse action for failure to keep appointments and report for duty. See AR 3, 620"31; supra note 9. Mr. Joslyn's request to withdraw his resignation was processed in accordance with Army regulations, including appropriate consideration of the input from his chain of command. See Army Reg. 600"8"24, " 3"2; AR 1. The Army was within its discretion and did not act arbitrarily or capriciously when it denied Mr. Joslyn's November 2008 request to | The Army's decision of whether to accept a withdrawal of a service member's resignation must be granted substantial deference. | Should the Armys decision of whether or not to accept a withdrawal of a resignation be granted substantial deference? | 008552.docx | LEGALEASE-00139731-LEGALEASE-00139732 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 11493 | Pauls v. Sec'y of Air Force, 457 F.2d 294 | 34+7(1) | We shall first consider the issue of our jurisdiction to entertain the appeal. Courts of appeal have only such jurisdiction as is conferred upon them by statute. Two attacks on our jurisdiction are made. The first attack, made by the Government, is that the trial court lacks subject matter jurisdiction to entertain the present case. It is well-established law that military officers serve at the pleasure of the President and have no constitutional right to be promoted or retained in service and that the services of an officer may be terminated with or without reason. Reaves v. Ainsworth, 219 U.S. 296, 306, 31 S.Ct. 230, 55 L.Ed. 225; Orloff v. Willoughby, 345 U.S. 83, 93-94, 73 S.Ct. 534, 97 L.Ed.2d 842; Cortright v. Resor, 2 Cir., 447 F.2d 245, 253-254; Arnheiter v. Chafee, 9 Cir., 435 F.2d 691; Muldonian v. United States, 432 F.2d 443, 447, 193 Ct.Cl. 99; Payson v. Franke, 108 U.S.App.D.C. 368, 282 F.2d 851, 854. | Military officers serve at pleasure of the President and have no constitutional right to be promoted or retained in service and the services of an officer may be terminated with or without reason. | Can a military officer be terminated with or without reason? | 008578.docx | LEGALEASE-00139821-LEGALEASE-00139822 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11494 | Delta Loan Co. v. Riley, 199 So. 671 | 83E+839 | The judgment appealed from is erroneous. Plaintiff alleges that it is the holder of the promissory note which is attached to its petition; that it acquired the note from the payee, Delta Loan Company, Inc., before maturity and that the obligation of the defendants is past due and unpaid. It is true that the note has not been endorsed by the payee, Delta Loan Company, but this is not necessary in order for the plaintiff to have a cause of action as assignee of the chose in action. It is the well settled law of this State that a promissory note need not be transferred by endorsement or written assignment; that mere delivery of the instrument is sufficient and that such delivery may be shown by parol evidence subject, of course, to the restrictions contained in Article 2277 of the Civil Code respecting obligations for the payment of money exceeding $500.00. See Gaines v. Fitzgibbons, 168 La. 260, 121 So. 763; Maddox v. Robbert, 165 La. 694, 115 So. 905; Crowley Lumber Co. v. Plaffer, 4 La.App. 606; Griffin & Dawson v. Cowan et al., 15 La.Ann. 487; and Jones v. Elliott, 4 La.Ann. 303. | Where note has been transferred by delivery, delivery may be shown by parol evidence subject to restrictions contained in statute respecting obligations for payment of money exceeding $500. Civ.Code, art. 2277. | Are promissory notes transferable by mere delivery? | Bills and Notes - Memo 399 - RK.docx | LEGALEASE-00029558-LEGALEASE-00029559 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11495 | Thweatt v. Jackson, 838 S.W.2d 725 | 38+90 | Second, it is axiomatic that an assignee of a promissory note stands in the shoes of the assignor and obtains the rights, title, and interest that the assignor had at the time of the assignment. See Kirby Forest Indus., Inc. v. Dobbs, 743 S.W.2d 348, 354 (Tex.App.1987, writ denied); State Fidelity Mortgage Co. v. Varner, 740 S.W.2d 477, 480 (Tex.App.1987, writ denied); TravelersIndem. Co. v. Snyder Nat'l Bank, 361 S.W.2d 926, 928"29 (Tex.Civ.App.1962, writ ref'dn.r.e.); 6A C.J.S. Assignments "" 73, 88 (1975). Moreover, the assignee of a debt ordinarily obtains all remedies which were available to the assignor against the debtor for the enforcement of the obligation. See J.W.D., Inc. v. Federal Ins. Co., 806 S.W.2d 327, 329 (Tex.App.1991, no writ); 6A C.J.S. Assignments " 89 (1975). | Assignee of debt ordinarily obtains all remedies which were available to assignor against debtor before enforcement of obligation. | Does the assignee of a debt obtain all remedies which were available to the assignor against the debtor for the enforcement of any obligation? | Bills and Notes - Memo 512 - RK.docx | ROSS-003302022-ROSS-003302023 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 11496 | Betz v. Bank of Miami Beach, 95 So. 2d 891 | 8.30E+05 | Florida has adopted the Uniform Negotiable Instruments Law, Chapter 674, F.S.1955, F.S.A. There can be little question that the prime intention of the draftsmen of this law was to clear up confusion in, and to fix with certainty the rights and liabilities of holders, makers and endorsers of negotiable instruments. It seems quite reasonable that such was the intention of our legislature in enacting the law. | The intention of the legislature in enacting the Uniform Negotiable Instruments Law was to clear up the confusion in, and to fix with certainty the rights and liabilities of holders, makers and endorsers of negotiable instruments. F.S.A. S 674.01 et seq. | What was the legislative intent behind the Uniform Negotiable Instruments Act? | 009584.docx | LEGALEASE-00140538-LEGALEASE-00140539 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 11497 | Darby v. Chambers, 70 Ohio App. 287 | 8.30E+05 | The law on the subject of the burden of proof on want of or failure of consideration was in great confusion as found in the case law of the different states. There was conflict on many other phases of negotiable instrument law. The Uniform Negotiable Instruments Act, as its title indicates, was not intended as a mere codification of existing law. Where there was a conflict in the law of the different states the "uniform" act was intended to make a change, so as to create uniformity. Rockfield v. First Nat. Bank, 77 Ohio St. 311, 329, 83 N.E. 392, 14 L.R.A.,N.S., 842. | The Uniform Negotiable Instruments Act was not intended as a mere codification of existing law, but, where there was a conflict in the law of the different states, the act was intended to make a change so as to create uniformity. Gen.Code, S 8106 et seq. | What is the purpose of the Uniform Negotiable Instruments Act? | Bills and Notes - Memo 569 - RK.docx | ROSS-003302024-ROSS-003302025 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11498 | Parkinson v. Caldwell, 126 Cal. App. 2d 548 | 83E+481 | So in 4 Corbin on Contracts, " 872, p. 486 the author says:"In any case, it is quite possible for the parties to show by apt words that rights created by the contract shall not be assignable. It is obvious that they mean exactly this and nothing else in case the contract is unilateral from the beginning. So if A lends money to B, receiving from B a note that expressly declares that it is not assignable, there is no doubt that they mean A's right to the money to be nonassignable." | Parties to contract may show by apt words therein that rights created thereby shall not be assignable, and provision of note for money loaned maker by payee that note is not assignable means that payee's right to money loaned is nonassignable. | Is it possible for the parties to show by apt words that rights created by the contract shall not be assignable? | Bills and Notes -Memo 425 -DB.docx | ROSS-003288089-ROSS-003288090 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 11499 | Perrin v. United States, 444 U.S. 37 | 63+1(1) | We hold that Congress intended "bribery . . . in violation of the laws of the State in which committed" as used in the Travel Act to encompass conduct in violation of state commercial bribery statutes. Accordingly, the judgment of the Court of Appeals is Affirmed. | Bribery of private employee prohibited by state criminal statute violates the Travel Act which makes it a federal offense to travel or to use any facility in interstate commerce to commit "bribery * * * in violation of the laws of the State in which committed." 18 U.S.C.A. S 1952. | Does bribery of private employee prohibited by state criminal statute violate the Travel Act? | Bribery - Memo #609 - C-JL.docx | LEGALEASE-00029754-LEGALEASE-00029755 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 11500 | State v Ackerman, 380 N.W.2d 922 | 129+131 | Abusive language and behavior that is directed at police officers may constitute disorderly conduct. In City of St. Paul v. Azzone, 287 Minn. 136, 177 N.W.2d 559 (1970), defendants chanted and directed obscenities at police officers while waiting to be booked. The court upheld their convictions for disorderly conduct and noted that:While it is obvious that not every abusive epithet directed toward police officers would be sufficiently disturbing or provocative to justify arrest for disorderly conduct, there is no sound reason why officers must be subjected to indignities that go far beyond what any other citizen might reasonably be expected to endure. Azzone, 287 Minn. at 141, 177 N.W.2d at 562 (quoting City of St. Paul v. Morris, 258 Minn. 467, 468-69, 104 N.W.2d 902, 903 (1960)). See also State v. White, 292 N.W.2d 16 (Minn.1980); City of Minneapolis v. Larsen, 354 N.W.2d 82 (Minn.Ct.App.1984). | Abusive language and behavior directed at police officers may constitute disorderly conduct. M.S.A. S 609.72, subd. 1(1, 3). | Does abusive language and behavior directed at police officers constitute disorderly conduct? | 014443.docx | LEGALEASE-00140133-LEGALEASE-00140134 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11501 | Luf v. Town of Southbury, 188 Conn. 336 | 200+80 | The existence of East Hill Road as a public highway before its discontinuance in 1977 is undisputed. Under our law, such a highway creates no interests in fee, the presumption being that the landowners whose lands abut the highway continue to be the owners of the soil to the middle of the highway. Antenucci v. Hartford Roman Catholic Diocesan Corporation, 142 Conn. 349, 355-56, 114 A.2d 216 (1955); Newton v. New York, N.H. & H.R. Co., 72 Conn. 420, 426-27, 44 A. 813 (1899); Peck v. Smith, 1 Conn. 103, 132, 6 Am. Dec. 216 (Swift, J.) (1814); 2 Nichols, The Law of Eminent Domain (3d Ed. Rev. 1981) " 6.32[2]. Instead of creating a fee, the taking of the highway creates two easements: the public easement of travel, that permits the general traveling public to pass over the highway at will, and the private easement of access, that permits landowners who abut the highway to have access to the highway and to the connecting system of public roads. Antenucci v. Hartford Roman Catholic Diocesan Corporation, supra; Knothe v. Zinzer, 96 Conn. 709, 713-15, 115 A. 477 (1921); Park City Yacht Club v. Bridgeport, 85 Conn. 366, 371-72, 82 A. 1035 (1912); Cullen v. New York, N.H. & H.R. Co., 66 Conn. 211, 226, 33 A. 910 (1895); see 2 Elliott, The Law of Roads and Streets (4th Ed. 1926) " 1180; 10 McQuillin, The Law of Municipal Corporations (3d Ed. Rev. 1981) 30.54. Our principal concern is with the abutter's private easement of access. | Public highway creates no interest in fee, the presumption being that landowners whose lands abut highway continue to be owners of soil to middle of roadway. | Does the public highway create no interest in fee? | 019017.docx | LEGALEASE-00140376-LEGALEASE-00140377 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 11502 | Paso Robles War Mem'l Hosp. Dist. v. Negley, 29 Cal. 2d 203 | 198H+233 | The levy imposed by the Local Hospital District Law is an ad valorem levy on all real and personal property within the district. Health & Safety Code, ss 32200 to 32205. A levy imposed on all of the property in a district, both real and personal, according to its value and not upon the basis of special benefit, is a general tax and not a special assessment. Anaheim Sugar Co. v. County of Orange, 181 Cal. 212, 216, 217, 183 P. 809; American Co. v. City of Lakeport, 220 Cal. 548, 32 P.2d 622; People v. Whyler, 41 Cal. 351, 354; Williams v. Corcoran, 46 Cal. 553, 555, 556; Joint Highway District No. 13 v. Hinman, 220 Cal. 578, 586, 587, 32 P.2d 144. | The Local Hospital District Law, in imposing an ad valorem levy on all real and personal property within district, not upon basis of special benefit, imposes a "general tax" and not a "special assessment". Health and Safety Code, SS 32200-32205. | Are special assessments levied only on specific property benefited in the district? | 019029.docx | LEGALEASE-00140221-LEGALEASE-00140222 | Order, SA | 0.62 | 1 | 0 | 0 | 1 | |
| 11503 | Interstate Busses Corp. v. Blodgett, 276 U.S. 245 | 200+121 | That appellant is already contributing to highway maintenance is not in itself significant, for the state does not exceed its constitutional power by imposing more than one form of tax as a charge for the use of its highways in interstate commerce. It is for appellant to show that the aggregate charge bears no reasonable relation to the privilege granted. | State may impose more than one form of tax on use of highways in interstate commerce, if aggregate charge bears reasonable relation to privilege granted. | Can the State impose more than one form of tax on use of highways in interstate commerce? | Highways-Memo 19-DB.docx | ROSS-003288365-ROSS-003288366 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 11504 | Hozer v. State, Dep't of Treasury, Consol. Police & Firemen's Pension Fund Comm'n, 95 N.J. Super. 196 | 296+2 | A pension is a bounty springing from the apoppreciation and graciousness of the sovereign; it is an inducement to conscientious, efficient and honorable service. Ballurio v. Castellini, 29 N.J.Super. 383, 389, 102 A.2d 662 (App.Div.1954). It is axiomatic that one of the fundamental purposes of the pensioning of civil servants is to secure good behavior and the maintenance of reasonable standards of discipline during service. Plunkett v. Board of Pension Comm'rs of City of Hoboken, 113 N.J.L. 230, 232"233, 173 A. 923 (Sup.Ct.1934), affirmed 114 N.J.L. 273, 176 A. 341 (E. & A. 1935). These general pension characteristics and purposes are peculiarly applicable to a police officer, who "occupies a unique position in our society" in that he "stands in the public eye as an upholder of that which is morally and legally correct." Fromm v. Board of Directors of Police, etc. Retirement System, 81 N.J.Super. 138, 142"143, 195 A.2d 32, 34 (App.Div.1963). Recognizing this, the Legislature in the above-cited statute required that a municipal policeman who sought a retirement pension for age and service "(should) have served honorably." | One fundamental purpose of the pensioning of civil servants is to secure good behavior and the maintenance of reasonable standards of discipline during service. | What is the fundamental purpose of the pensioning of civil servants? | Pension - Memo 21 - SB.docx | ROSS-003288516-ROSS-003288517 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11505 | Knapp v. Vill. of Beaver City, 273 Neb. 156 | 307A+517.1 | The Village also argues that dismissal without prejudice under " 48"177 would circumvent the requirements of Neb. Workers' Comp. Ct. R. of Proc. 8 (2006). Rule 8 states that "[a] continuance, under any circumstances, may be granted if good cause is shown; however, no continuance shall be granted within two weeks of the date of hearing unless an emergency arises." The Village contends that even though Knapp was previously denied a continuance, her dismissal without prejudice serves the same purpose. We are not persuaded by this argument. A dismissal without prejudice and a continuance are not the same. The former removes the case from the court's docket and subjects the plaintiff to the running of a limitations period, while the latter does not. We note that a plaintiff in a civil action may seek a continuance under Neb.Rev.Stat. " 25"1148 (Reissue 1995), which continuance is discretionary with the court, and if denied, the plaintiff may dismiss the action without prejudice under " 25"601. | A dismissal without prejudice and a continuance are not the same; the former removes the case from the court's docket and subjects the plaintiff to the running of a limitations period, while the latter does not. | Is a dismissal without prejudice and a continuance the same? | 028034.docx | LEGALEASE-00139759-LEGALEASE-00139760 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11506 | State ex rel. Nichols v. Killoren, 285 S.W.2d 38 | 307A+63 | The right of a party litigant to take the deposition of any witness in a suit at law is of statutory origin. RSMo 1825, p. 323. The word deposition in legal terminology has been defined as "the testimony of a witness, taken in writing, under oath or affirmation, before some judicial officer, in answer to interrogatories, oral or written." 26 C.J.S. Depositions, " 1, p. 807. This right of deposition is in a sense an absolute right, but the manner of taking the deposition of a witness is dependent upon circumstances. The Court is clothed with wide discretion in controlling the manner in which a deposition may be taken. The privilege of examining a witness in a pending suit by written interrogatories, is likewise of long standing in this state, RSMo 1825 p. 324, and the law as now enacted specifically states that the interrogatories shall be taken upon such terms as the Court to whom application for their taking has been made, shall think proper. Section 492.220 RSMo 1949, V.A.M.S. In an early case the trial court granted a commission to examine witnesses by interrogatories and at the same time allowed the adverse party time to file cross-interrogatories, which he refused to do, demanding the right of oral cross-examination. It was held in that case that the trial court had large discretion as to the terms upon which it will grant the commission and that the adverse party was not entitled to exercise the right of cross-examination but should have filed cross-interrogatories. Shepard v. Missouri Pac.Ry. Co., 85 Mo. 629. In 58 Amer.Jur. Sec. 555, p. 309, referring to the general powers of a trial court in regard to the examination of witnesses, it is said: "The trial judge is vested with considerable discretion in regulating the manner of examination of witnesses and his exercise of that discretion will not be disturbed unless it has been abused or substantial harm has been done to the complaining party. (Conner v. State, 25 Ga. 515, 71 Am.Dec. 184; State v. Brady, 100 | The right of deposition is, in a sense, an absolute right, but manner of taking deposition of a witness is dependent on circumstances, and court is clothed with wide discretion in controlling manner in which deposition may be taken. Section 492.080 RSMo 1949, V.A.M.S. | Is the right of a party litigant to take the deposition of any witness an absolute right and is the manner of taking deposition dependent upon circumstances? | Pretrial Procedure - Memo # 3218 - C - NS.docx | ROSS-003289323-ROSS-003289324 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 11507 | Corby v. Swank, 670 N.E.2d 1322 | 307A+486 | This is not a "self-executing" test, however. As stated, the party who has been deemed to have admitted whatever was requested has the burden of making a motion for withdrawal. Pathman Constr. Co., supra, 402 N.E.2d at 6; see also Snell v. Snell (1991) Ind.App., 581 N.E.2d 463, 464; Hosts, Inc. v. Wells (1982) Ind.App., 443 N.E.2d 319, 320. In this regard, T.R. 36 is neither difficult to understand nor unduly onerous, as a party in Swank's position has both the opportunity to obtain an extension of time prior to the expiration of time within which he has been requested to answer, and an opportunity to petition the trial court for relief from answers inadvertently or improvidently made. Thus, we find Swank's protestations that Corby and Farmers Group "[n]owhere in their brief ... show why [they are] entitled to a favorable decision pursuant to the standards set forth in T.R. 36(B)", (Br. of Appellant at 20) to be irrelevant. Because Swank never moved the trial court to obtain relief from the effect of his admissions, the test under T.R. 36(B) was never implicated in this case, and Corby and Farmers Group were entitled at trial to have those admissions entered into evidence at trial and deemed conclusively established. Wellington Village Apartments, supra, 594 N.E.2d at 528"29. The trial court's ruling denying Corby and Farmers Group this was error. | Party deemed to have admitted matter in response to request for admissions has burden of making motion for withdrawal of admission; test for withdrawal of admission is not self-executing. Trial Procedure Rule 36. | Does the party who is deemed to have admitted matter in response to request for admissions have the burden of making a motion for withdrawal of admission? | Pretrial Procedure - Memo # 3227 - C - SHS.docx | ROSS-003302568-ROSS-003302570 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11508 | Bell v. Toluca Coal Co., 272 Ill. 576 | 30+3239 | When appellee secured permission during the trial to file additional counts the appellant asked for a continuance, on the ground of surprise, until 9 o'clock the following morning. The court refused this motion and required counsel to plead at once. Section 42 of chapter 110 provides that no amendment shall be cause for continuance unless the party affected files an affidavit that he is unprepared. Our statute on amendments permitted the filing of the amended counts. The affidavit for continuance was on information and belief, and stated that appellant was not prepared to proceed with the trial on account of the lack of evidence to meet the cause of action set out in count 9, but not stating what evidence it could produce. The affidavit should state facts from which the court can see that by reason of the amendment the defendant is unprepared for trial. Mills v. Bland, 76 Ill. 381. Furthermore, counsel argue that the ninth count for the first time charges as negligence "an unsafe place to work." The third count charged the same thing in effect. The ninth count in most respects was a revision of the sixth count, except that, instead of alleging that the curve and condition of the track made a dangerous place, it alleged that the portion of the entry, with the rock projecting at the upper part was an unsafe place and in a dangerous condition. There was nothing in the ninth count which would require other or different evidence from what would be required by the third and sixth additional counts. The allowance of an amendment to the pleadings during the trial is a matter of discretion with the court (Gordon v. Reynolds, 114 Ill. 118, 28 N. E. 455; Booth v. Wiley, 102 Ill. 84), as well as the granting or refusing of time to prepare an affidavit for a continuance on account of such amendment, and the ruling of the court cannot be assigned for error unless the discretion has been abused (Knickerbocker Ins. Co. v. McGinnis, 87 Ill. 70; Fisher v. Greene, 95 Ill. 94). On this record | The discretion of the court as to the granting or refusing of time to prepare an affidavit for continuance on account of amendment of pleading will not be disturbed unless abused. | Is the matter of granting continuance because of amendment to the pleadings within a trial court's discretion? | 031332.docx | LEGALEASE-00140708-LEGALEASE-00140709 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 11509 | Garvin v. Jennerson, 20 Kan. 371 | 378+9(1.5) | It is assigned as error, that the deposition of a material witness on the part of defendant in error was read upon the trial against the objection of plaintiff in error in violation of section 361 of the civil code, which provides, that "every deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial." The trial of the case commenced at 9 o'clock A. M. of November 12th 1875; and the deposition was filed in the court at 11 o'clock A. M. of the 11th of November. This assignment of error must be sustained, because the statute requiring at least one day before the day of trial, means one clear day; and both the day on which the deposition was filed and the day of the trial must be excluded. With this construction the deposition ought not to have been read. Dougherty v. Porter, 18 Kas. 206; Walsh, Trustee, v. Boyle, 30 Md. 266; O'Connor v. Towns, 1 Texas, 107. | Under Civ.Code, S 361, providing that "every deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial," one entire day must elapse between the day of filing and the day of trial. To properly compute the time within such statute, both the day of filing and the day of trial should be excluded. | Are depositions inadmissible unless they have been filed one entire day before the commencement of the trial? | 032324.docx | LEGALEASE-00139817-LEGALEASE-00139818 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 11510 | Firmes v. Chase Manhattan Auto. Fin. Corp., 50 A.D.3d 18 | 307A+36.1 | As a general rule, discovery of collateral source issues is to be conducted prior to the filing of a note of issue, and posttrial discovery is disallowed (see Bongiovanni v. Staten Is. Med. Group, 188 Misc.2d at 366, 728 N.Y.S.2d 345; Hoffman v. S.J. Hawk, Inc., 177 Misc.2d 305, 308"309, 676 N.Y.S.2d 448). However, a court may, in the exercise of its discretion, permit posttrial collateral source discovery if the defendant can demonstrate prejudice not of its own making, such as where benefits became payable after the filing of a note of issue (see Hoffman v. S.J. Hawk, Inc., 177 Misc.2d at 308"309, 676 N.Y.S.2d 448). | As a general rule, discovery of collateral source issues is to be conducted prior to the filing of a note of issue, and post-trial discovery is disallowed. McKinney's CPLR 4545(c). | Is discovery of collateral source issues to be conducted prior to the filing of a note of issue? | Pretrial Procedure - Memo # 5391 - C - KG.docx | ROSS-003301399-ROSS-003301400 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 11511 | Simek v. Nolan, 64 N.E.3d 1237 | 307A+554 | Simek contends that the trial court erred in denying her motion to reconsider her motion to dismiss for lack of personal jurisdiction pursuant to Indiana Trial Rule 12(B)(2). A motion to dismiss pursuant to Trial Rule 12(B)(2) is a proper method for challenging the personal jurisdiction of a trial court. LinkAmerica Corp. v. Cox, 857 N.E.2d 961, 965 (Ind.2006). The existence of personal jurisdiction is a question of law that we review de novo. Id. While we do not defer to a trial court's legal conclusion regarding the existence of personal jurisdiction, whether "personal jurisdiction exists turns on facts, namely the extent of a defendant's contacts with the forum, and ordinarily a trial court's factual findings on that point would be reviewed for clear error." Wolf's Marine, Inc. v. Brar, 3 N.E.3d 12, 15 (Ind.Ct.App.2014). | A motion to dismiss is a proper method for challenging the personal jurisdiction of a trial court. Trial Procedure Rule 12(B)(2). | Is a motion to dismiss a proper method of challenging the personal jurisdiction of a trial court? | Pretrial Procedure - Memo # 5594 - C - ES.docx | ROSS-003289589-ROSS-003289590 | Order, SA | 0.85 | 1 | 0 | 0 | 1 | |
| 11512 | State v. Oral H., 125 Conn. App. 276 | 110+752.5 | "A motion to dismiss ... properly attacks the jurisdiction of the court, essentially asserting that the [state] cannot as a matter of law and fact state a cause of action that should be heard by the court.... A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction.... [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to deny] ... the motion to dismiss will be de novo." (Citation omitted; internal quotation marks omitted.) State v. Courchesne, 296 Conn. 622, 668, 998 A.2d 1 (2010). | A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the state cannot as a matter of law and fact state a cause of action that should be heard by the court. | Does court has jurisdiction to hear the case of motion to dismiss tests on the face of the record? | Pretrial Procedure - Memo # 5597 - C - NC.docx | ROSS-003302850-ROSS-003302851 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 11513 | Ex parte Gregory, 947 So. 2d 385 | 307A+36.1 | "A request for jurisdictional discovery must offer the court "more than conjecture and surmise in support of [the] jurisdictional theory." Crist v. Republic of Turkey, 995 F.Supp. 5, 13 (D.D.C.1998). "[The] standard is quite low, but a plaintiff's discovery request will nevertheless be denied if it is only based upon "bare," "attenuated," or "unsupported" assertions of personal jurisdiction, or when a plaintiff's claim appears to be "clearly frivolous." " Andersen, 179 F.R.D. at 242." | A request for jurisdictional discovery must offer the court more than conjecture and surmise in support of the jurisdictional theory. | Should a request for jurisdictional discovery offer the court more than conjecture and surmise in support of the jurisdictional theory? | 032803.docx | LEGALEASE-00139703-LEGALEASE-00139704 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 11514 | Finks v. Middleton, 795 S.E.2d 789 | 13+13 | "Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss." Fuller v. Easley, 145 N.C.App. 391, 395, 553 S.E.2d 43, 46 (2001) (citations omitted). "We review Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction de novo and may consider matters outside the pleadings." Harris v. Matthews, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007). | Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a motion to dismiss for lack of jurisdiction. N.C. R. Civ. P. 12(b)(1). | Does standing concern the trial court's subject matter jurisdiction? | 032862.docx | LEGALEASE-00139973-LEGALEASE-00139974 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11515 | Reliance Nat. Indem. Co. v. Gen. Star Indem. Co., 72 Cal. App. 4th 1063 | 217+3512 | Second, contrary to Reliance's assertion otherwise, the Supreme Court's decision in Rossmoor did not establish that in all cases where a contract for indemnification exists an insurer is entitled to bring a subrogation action on the agreement. No doubt, Rossmoor concluded the owner's insurer in the case before it was subrogated to the rights of its insured under the indemnification contract. However, Rossmoor did not purport to establish a general rule that a contractual indemnification agreement between an insured and a third party takes precedence over well-established general rules of primary and excess coverage in an action between insurers repeatedly articulated by California appellate courts. This is particularly true in this case because General Star's policy specifically states: "Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance, reinsurance or indemnity." | There is no general rule that where contract for indemnification exists between insured and third party an insurer is entitled to bring a subrogation action on agreement based on rights of its insured. | "Where a contract for indemnification exists, is an insurer entitled to bring a subrogation action on the agreement?" | Subrogation - Memo # 1252 - C - RY.docx | ROSS-003289649-ROSS-003289650 | Order, SA | 0.79 | 1 | 0 | 0 | 1 | |
| 11516 | In Matter of CUA Autofinder, 387 B.R. 906 | 366+35 | The right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. Waiver of the right of subrogation is a question of intention. 83 C.J.S. Subrogation " 21 (2008). See Brookside Communities, LLC v. Lake Dow North Corp., 268 Ga.App. 785, 603 S.E.2d 31, 32"33 (2004) (guarantor unambiguously waived any claims it might have had). | Under Georgia law, right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. | "Can a right to subrogation be modified or extinguished by contract, waived either expressly or by implication?" | Subrogation - Memo # 1263 - C - SJ.docx | ROSS-003290128-ROSS-003290129 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 11517 | In re Marriage of Bradley, 282 Kan. 1 | 34+34.2(3) | Interpretation of a statute is a question of law over which an appellate court has unlimited review. Cooper v. Werholtz, 277 Kan. 250, 252, 83 P.3d 1212 (2004). Additionally, the Servicemembers Civil Relief Act, 50 U.S.C.A.App. " 501 et seq. (2003), is to be liberally construed to prevent the civil rights of a servicemember from being adversely affected while serving in the military. Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 87 L.Ed. 1587 (1943); Lenser v. McGowan, 358 Ark. 423, 429, 191 S.W.3d 506, 2004 WL 2064892 (2004). | The federal Servicemembers Civil Relief Act is to be liberally construed to prevent the civil rights of a servicemember from being adversely affected while serving in the military. Servicemembers Civil Relief Act, S 1(a) et seq., 50 App.U.S.C.A. S 501 et seq. | Should the Service Members Civil Relief act be construed liberally? | 008641.docx | LEGALEASE-00141638-LEGALEASE-00141639 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 11518 | Salisbury v. New York Cent. R. Co., 220 A.D. 491 | 113+3 | "A binding custom must be certain, definite, uniform, and known, or so notorious that it would have been known to any person of reasonable prudence who dealt with its subject with the exercise of ordinary care." Chicago, M. & St. P. R. R. Co. v. Lindeman (C. C. A.) 143 F. 946. See, also, Walls v. Bailey, 49 N. Y. 464, 10 Am. Rep. 407; Dickinson v. City of Poughkeepsie, 75 N. Y. 65; Cassin v. Stillman-Delehanty-Ferris Co., 185 App. Div. 63, 172 N. Y. S. 754. | A binding "custom" must be certain, definite, uniform, and known, or so notorious that it would have been known to any person of reasonable prudence, who dealt with its subject, with the exercise of ordinary care. | What is required for a custom to become binding? | 014138.docx | LEGALEASE-00141728-LEGALEASE-00141729 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 11519 | New York, N. H. & H. R. Co. v. First Nat. Bank, 105 Conn. 33 | 113+3 | One reason for the rule, as stated in Morse on Banks and Banking, " 221, is that the fact that one deals with a bank without taking the trouble to inquire as to its system will raise the implication that he either already knows and is satisfied with that system or voluntarily trusts to the wisdom of the bank at his own risk as to its sufficiency; the bank is not bound to thrust upon him a statement of its intended course. Another consideration is the practical necessity of adhering to the uniform methods of transacting business as established by local usage unless otherwise specifically instructed. As held in Skiff v. Stoddard, supra, the custom must not be "unlawful, unreasonable, contrary to the express agreement of the parties, nor such as to change the intrinsic character of the undertaking," but we do not see that the custom here under consideration manifests either of these faults. The fundamental and controlling characteristic evinced by the provision in the draft for payment 30 days after arrival was to pass possession of the goods to the buyer before payment and to grant it credit, to the extent indicated, beyond the time of such change of possession. The vendee could, of course, obtain the full extent of this credit by deferring acceptance until arrival, but there is no unreason in a custom permitting it to waive this right, treat acceptance as an admission of arrival and the date of such acceptance as determining maturity, and, in return for this concession, obtain the bill of lading, as might often be desirable, for the purposes of resale and perhaps, as incident thereto, diversion of the shipment to another point. | Local usage or customs of banks in transacting business must not be unlawful, unreasonable, contrary to express agreement of parties, or change intrinsic character of undertaking. | May local usage or custom change the intrinsic character of an undertaking? | 014142.docx | LEGALEASE-00141732-LEGALEASE-00141733 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 11520 | Smith v. U.S. Shipping Bd. Emergency Fleet Corp., 2 F.2d 390 | 113+3 | "Before a custom or usage can acquire the force of law, it must appear that it is general and uniform in the business to be affected by it, and that it has been peaceably acquiesced in without dispute for a long period of time." | Custom or usage, to acquire force of law, must be general and uniform in business affected, and have been peaceably acquiesced in for long time. | Must a custom or usage have been peaceably acquiesced to in order to be effective? | 014149.docx | LEGALEASE-00141740-LEGALEASE-00141741 | Condensed, SA | 0.37 | 0 | 1 | 0 | 1 | |
| 11521 | W. Petroleum Co. v. Tidal Gasoline Co., 284 F. 82 | 113+3 | A usage, in order to change the plain import of language, must be general, certain, uniform, and of sufficient duration to justify an inference that the parties had it in view in making their contract. Its existence is a matter of fact, to be proved as any other matter of fact. It is competent for a witness experienced in the trade to state whether or not the usage existed, and, as long as he does not testify as to its effect, he is merely speaking as to a fact, and not stating a conclusion. Wigmore on Evidence, Secs. 379, 1954; 17 Corpus Juris, 498, and cases there cited. The usage being established, those engaged in the trade will be presumed to have contracted with reference to it, and actual knowledge of it need not be proved. Silverstein v. Michau, 221 Fed. 55, 137 C.C.A. 79; Steidtmann v. Joseph Lay Co., 234 Ill. 84, 84 N.E. 640. | A usage, in order to change the plain import of language, must be general, certain, uniform, and of sufficient duration to justify an inference that the parties had it in view in making their contract. | "When a general custom exists in a particular trade, is it presumed that all those engaged in that trade are familiar with its existence and requirements?" | 014155.docx | LEGALEASE-00141746-LEGALEASE-00141747 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 11522 | Jacobs v. Shorey, 48 N.H. 100 | 113+3 | In general, a custom of merchants must be reasonable in itself, well known, and so well established, and uniformly acted upon, and so well settled, as to raise a fair presumption, that it is generally known by all contracting under its operation. 1 Greenleaf's Evid. secs. 292, 293, and notes; Foye v. Leighton, 22 N. H. 75; Rogers v. Allen, 47 N. H.; Homer v. Dorr, 10 Mass. 29, Shorey v. Bliss, 6 Met. 393. | A custom of merchants is valid, where it is shown to be reasonable in itself, and is well established, and uniformly acted on, so as to raise a fair presumption that it is generally known. | Is a custom of merchants valid where it is shown to be reasonable in itself and uniformly acted on? | 014209.docx | LEGALEASE-00141898-LEGALEASE-00141899 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11523 | In re Orshansky, 804 A.2d 1077 | 135+1 | Ms. Orshansky was unquestionably a domiciliary of the District of Columbia"and, of course, was physically in the District"at the time she was hospitalized and the petition in this case filed and served on her. She had resided in the District for some forty years without interruption, she owned her apartment here, and while she also owned an apartment in New York City, she had not moved there. "Residence in fact is an essential element of domicile," District of Columbia v. Woods, 465 A.2d 385, 387 (D.C.1983) (citations omitted), and "the place where a [person] lives is properly taken to be [her] domicile until facts adduced establish the contrary." In re Estate of Derricotte, 744 A.2d 535, 538 (D.C.2000) (quoting District of Columbia v. Murphy, 314 U.S. 441, 455, 62 S.Ct. 303, 86 L.Ed. 329 (1941)). Thus, when the petition was filed, the probate court had jurisdiction pursuant to both subsections (1) and (4) of D.C.Code " 21"2021. | The place where a person lives is properly taken to be her domicile until facts adduced establish the contrary. | "Is the place where a person lives, taken to be his domicile until facts adduced establish the contrary?" | 014480.docx | LEGALEASE-00141091-LEGALEASE-00141092 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11524 | State of Cal. By & Through Brown v. Watt, 668 F.2d 1290 | 260+5.1(3) | The Secretary must prepare and maintain the program consistent with four basic principles: (1) Management of the outer Continental Shelf shall be conducted in a manner which considers economic, social, and environmental values of the renewable and nonrenewable resources contained in the outer Continental Shelf, and the potential impact of oil and gas exploration on other resource values of the outer Continental Shelf and the marine, coastal, and human environments. (2) Timing and location of exploration, development, and production of oil and gas among the oil- and gas-bearing physiographic regions of the outer Continental Shelf shall be based on a consideration of- (A) existing information concerning the geographical, geological, and ecological characteristics of such regions; (B) an equitable sharing of developmental benefits and environmental risks among the various regions; (C) the location of such regions with respect to, and the relative needs of, regional and national energy markets; (D) the location of such regions with respect to other uses of the sea and seabed, including fisheries, navigation, existing or proposed sealanes, potential sites of deepwater ports, and other anticipated uses of the resources and space of the outer Continental Shelf; (E) the interest of potential oil and gas producers in the development of oil and gas resources as indicated by exploration or nomination; (F) laws, goals, and policies of affected States which have been specifically identified by the Governors of such States as relevant matters for the Secretary's consideration; (G) the relative environmental sensitivity and marine productivity of different areas of the outer Continental Shelf; and (H) relevant environmental and predictive information for different areas of the outer Continental Shelf. (3) The Secretary shall select the timing and location of leasing, to the maximum extent practicable, so as to obtain a proper balance between the | Secretary of the Interior properly interpreted Outer Continental Shelf Lands Act provision that location of oil and gas leasing be designed to obtain proper balance between potential for environmental damage, potential for discovery of oil and gas, and potential for adverse impact on coastal zone to mean that area should be included within the program for further consideration when its potential benefits exceed its potential costs; it was reasonable to conclude that within section's "proper balance" there was some notion of "costs" and "benefits." Outer Continental Shelf Lands Act, S 18(a)(3) as amended 43 U.S.C.A. S 1344(a)(3). | "Does the Secretary select the timing and location of leasing, to the maximum extent practicable?" | Mines and Minerals - Memo # 109- C - EB.docx | ROSS-003288853-ROSS-003288854 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 11525 | Ross v. Justice, 229 So. 2d 756 | 302+237(8) | Although we find no abuse of discretion by the trial court (in refusing to allow plaintiff to file the amended petition), under the circumstances of this case, the interest of justice requires that plaintiff be granted an opportunity to have her day in court on the issue of simulation. LSA-C.C.P. Art. 2164, Keller Construction Corp . v. George W. McCoy & Co., 239 La. 522, 119 So.2d 450, 463 (1960); Bradford v. Griffin, 193 So.2d 862 (La.App.3d Cir. 1967); Turpin v. Turpin, 175 So.2d 357 (La.App.2d Cir. 1965).Judge Albert Tate, Jr.''s article Amendment of Pleadings, 43 T.L.R. 211, considers this problem. | Where divorced wife originally averred that divorced husband's sale to brother-in-law of property acquired during coverture was a simulation but subsequently amended petition to allege fraud and evidence admitted on issue of fraud substantially supported simulation contention, interests of justice required that wife have her day in court on simulation issue and to so amend pleadings, on condition of prior payment of all court costs related to issue of fraud and to pay defendants a reasonable sum to cover their added personal expense in returning to Louisiana, notwithstanding refusal to allow petition to be amended on date of trial to reallege simulation was not abuse of discretion. LSA-C.C.P. art. 2164. | Is it no abuse of discretion to refuse plaintiff's application for a continuance to file an amended petition and take proof thereunder? | 030682.docx | LEGALEASE-00141521-LEGALEASE-00141522 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 11526 | Decesare v. Lembert, 144 Cal. App. 3d 20 | 307A+725 | A court faced with a motion for continuance is not limited to taxable costs in awarding costs as a condition under Code of Civil Procedure section 1024. (Fraser v. Fraser, supra, 39 Cal App. 467, 470, 179 P. 427.). | A court faced with motion for continuance is not limited to taxable costs in awarding costs as condition under Code of Civil Procedure section providing, inter alia, that when application is made to postpone trial, payment of costs occasioned by postponement may be imposed as condition of granting same. West's Ann.Cal.C.C.P. S 1024. | Does the rule relating to motion for continuance require the payment of taxable costs for continuance of the case? | 031328.docx | LEGALEASE-00140718-LEGALEASE-00140719 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 11527 | Lazar v. Black & White Cab Co., 50 Ga. App. 567 | 307A+74 | Among other requirements for the admission in evidence of depositions, it must appear that they were properly transmitted to the court where the legal proceeding in which they were taken was pending. Findlay v. Mineralized Rubber Co., 98 Ga. 275, 25 S. E. 456; Johnstone v. Etowah Milling Co., 8 Ga. App. 807 (2), 809, 70 S. E. 180. Even though properly sworn to by the witness and properly executed, not only can they not be admitted in evidence, but they cannot be treated as having the force and effect of evidence in the case, until thus properly transmitted. In the instant case, the depositions never having been properly transmitted to the court and having been lost, the court properly allowed oral testimony as to what the interrogated persons said before the court commissioner, not for the purpose of establishing their previous testimony given in the case, but merely for the purpose of proving alleged previous contradictory statements, and properly permitted counsel for the defendants to refer to what purported to be a carbon copy of the previous questions and answers, in questioning the witnesses in order to lay a foundation for their impeachment and in testifying himself as to what answers were previously given, counsel at last testifying from his own recollection after having his memory thus refreshed. Code of 1933, "" 38-1803, 38-1707; Shrouder v. State, 121 Ga. 615 (2), 49 S. E. 702. | Depositions cannot be admitted in evidence or treated as having force and effect of evidence, unless it appears that they were properly transmitted to court in which legal proceeding was pending. | Can depositions be admitted in evidence or treated as having force and effect of evidence? | 032161.docx | LEGALEASE-00141429-LEGALEASE-00141430 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11528 | Webb v. Carpenter, 168 Ga. 398 | 307A+725 | We do not think that Mrs. Mamie Smith should have been required, under the evidence produced as to the character of the sickness of her daughter, to leave her even for the length of time that would have been required for her to go to Marietta, attend the trial, and return to Atlanta. If there had been any prior continuance of the case on account of the sickness of this daughter, it might be that the court would have been authorized to refuse a further continuance; but it does not appear that there had been any other continuance of the case. In view of the rulings made above, and the evidence submitted to the court, the error of the court in overruling the motion for a continuance affected all the subsequent proceedings and rendered them nugatory, including the verdict rendered, and the verdict must therefore be set aside and a new trial granted. | Error in overruling motion for continuance rendered subsequent proceedings and verdict nugatory and void. | Can an error in overruling motion for continuance render subsequent proceedings and verdict nugatory and void? | 032171.docx | LEGALEASE-00141463-LEGALEASE-00141464 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 11529 | Ford v. Cheever, 105 Mich. 679 | 307A+74 | Objection was made to the introduction of the testimony of one Orrin T. Lane, taken by deposition, but we think the objection is without force. It is contended that the return of the commissioner does not show that the oath was publicly administered, as required by section 7439, How Ann. St., but the return does make it appear that the testimony was taken at the office of the commissioner, and after having taken the oath prescribed by the instructions annexed to the commission. The instructions annexed to the commission require an oath publicly administered, and we think the return sufficient. | Where the instructions annexed to a commission to take testimony required an oath to be publicly administered, the commissioner's return showing that the testimony was taken at his office, after the oath "prescribed by the instructions annexed to the commission" had been given, sufficiently shows that the oath was publicly administered, as required by How.Ann.St. S 7439. | "Where the instructions annexed to a commission to take testimony required an oath to be publicly administered, when is it sufficiently shown that the oath was publicly administered?" | 032546.docx | LEGALEASE-00141908-LEGALEASE-00141909 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 11530 | Pelamourges v. Clark, 9 Iowa 1 | 307A+74 | This objection, however, could only have been taken by the plaintiff; and as he waived the same by offering the deposition in evidence, it could not be relied on by defendants; and to render the same of any avail, the objection should have been made before the trial commenced, on a motion to exclude the deposition. Section 2464. When a deposition is taken on interrogatories propounded by both parties, and is returned and filed in the court, it may be used by either party. It is required to be filed by the clerk in his office, and neither party has the right to withdraw the same. Code, section 2459. It is no sufficient reason for refusing permission to either party to read the deposition in the District Court, that it was not used by the party taking the same in the County Court. We cannot go back and enquire whether it was used there or not. It is sufficient that the deposition appears to have been regularly taken to be used on the trial of this cause in the County Court, and was returned to said court, and was opened and filed by the clerk, as appears by his certificate in the return to the writ of certiorari. We have deemed it necessary to say thus much for the purpose of settling the rule of practice, at least, in such cases. The question whether any prejudice has resulted to the plaintiff, from the ruling of the court in excluding the deposition, remains to be considered. | When a deposition is taken upon interrogatories propounded by both parties, and is returned and filed in the clerk's office, neither party has a right to withdraw it, and either may use it in evidence. | "When a deposition is taken upon interrogatories propounded by both parties, does neither party have a right to withdraw it?" | 032601.docx | LEGALEASE-00141362-LEGALEASE-00141363 | Order, SA | 0.86 | 1 | 0 | 0 | 1 | |
| 11531 | Ashmore v. Mississippi Auth. on Educ. Television, 148 So. 3d 977 | 307A+531 | Trial courts are afforded broad discretion in discovery matters, and this Court will not overturn a trial court's decision unless there is an abuse of discretion:The decision to impose sanctions for discovery abuse is vested in the trial court's discretion. The provisions for imposing sanctions are designed to give the court great latitude.The power to dismiss is inherent in any court of law or equity, being a means necessary for orderly expedition of justice and the court's control of its own docket. Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances. | The power to dismiss is inherent in any court of law or equity, being a means necessary for orderly expedition of justice and the court's control of its own docket. | Is the power to dismiss inherent in any court of law or equity? | 033289.docx | LEGALEASE-00140732-LEGALEASE-00140733 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 11532 | Simek v. Nolan, 64 N.E.3d 1237 | 307A+554 | Simek contends that the trial court erred in denying her motion to reconsider her motion to dismiss for lack of personal jurisdiction pursuant to Indiana Trial Rule 12(B)(2). A motion to dismiss pursuant to Trial Rule 12(B)(2) is a proper method for challenging the personal jurisdiction of a trial court. LinkAmerica Corp. v. Cox, 857 N.E.2d 961, 965 (Ind.2006). The existence of personal jurisdiction is a question of law that we review de novo. Id. While we do not defer to a trial court's legal conclusion regarding the existence of personal jurisdiction, whether "personal jurisdiction exists turns on facts, namely the extent of a defendant's contacts with the forum, and ordinarily a trial court's factual findings on that point would be reviewed for clear error." Wolf's Marine, Inc. v. Brar, 3 N.E.3d 12, 15 (Ind.Ct.App.2014). | A motion to dismiss is a proper method for challenging the personal jurisdiction of a trial court. Trial Procedure Rule 12(B)(2). | Is a motion to dismiss a proper method for challenging the personal jurisdiction of a trial court? | Pretrial Procedure - Memo # 5957 - C - KA.docx | ROSS-003289713-ROSS-003289714 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11533 | Pullar v. Cappelli, 148 A.3d 551 | 307A+554 | For reasons that we explicated at length in Hall v. Kuzenka, 843 A.2d 474, 478 (R.I. 2004), a defendant may move to dismiss for lack of personal jurisdiction so long as the defendant previously raised that defense in an answer. See also Rule 12(b)(2); Collins v. Fairways Condominiums Association, 592 A.2d 147, 148 (R.I. 1991) ("A strict interpretation of the timing language [of Rule 12(b) ] leads to the conclusion that the court must deny any motion made after a responsive pleading as being too late. However, courts have allowed untimely motions if the defense has been previously included in the answer." (quoting 5C Wright & Miller, Federal Practice and Procedure: Civil 2d " 1361 at 445"46 (3d ed. 2016))). Therefore, to evade the jurisdictional reach of this state, a defendant must raise the defense in the answer. Hall, 843 A.2d at 478. | Defendant may move to dismiss for lack of personal jurisdiction so long as the defendant previously raised that defense in an answer. R.I. Super. Ct. R. Civ. P. 12(b)(2). | When can a defendant move to dismiss lack of personal jurisdiction? | 033367.docx | LEGALEASE-00141033-LEGALEASE-00141034 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11534 | Texas Parks & Wildlife Dep't v. Garland, 313 S.W.3d 920 | 307A+554 | The reviewing court accords the trial court's decision no deference. See Schade, 150 S.W.3d at 549 (citing Quick, 7 S.W.3d at 116). When a conclusion of law is erroneous, but the trial court reached the right result, the erroneous conclusion of law does not require reversal. See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.2002). If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. See Thomas v. Long, 207 S.W.3d 334, 339 (Tex.2006). | If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. | "If a trial court lacks jurisdiction over some claims but not others, should the trial court dismiss those claims over which it does not have subject matter jurisdiction?" | 033375.docx | LEGALEASE-00141043-LEGALEASE-00141044 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 11535 | Walbridge v. Kibbee, 20 Vt. 543 | 307A+74 | The first objection made to the regularity of the trial in this case is, that the deposition of Jared H. Kibbee was not properly filed,--the wrapper not being attached to the deposition, and the filing of the clerk being upon the wrapper. The question of the identity of the deposition was one of fact, to be determined by the county court; and their determination is final. | Where a deposition is not attached to its wrapper, and the filing of the clerk was indorsed upon the wrapper, which is lost, the question of the identity of the deposition is one of fact, to be determined by the county court, and their determination is final. | "Where a deposition is not attached to its wrapper, is the question of the identity of the deposition one of fact to be determined by the county court?" | Pretrial Procedure - Memo # 6089 - C - DHA.docx | ROSS-003318349-ROSS-003318350 | SA, Sub | 0.31 | 0 | 0 | 1 | 1 | |
| 11536 | 260 N. 12th St. v. State of Wisconsin Dep't of Transportation, 338 Wis. 2d 34 | 307A+746 | A party's failure to follow a scheduling order is grounds for sanctions at the circuit court's discretion. Wis. Stat. " 802.10(7); Hefty, 312 Wis.2d 530, 76, 752 N.W.2d 820. Wisconsin Stat. " 802.10(7) provides, in relevant part, that violations of a scheduling order are subject to Wis. Stat. "" 804.12 and 805.03. Wisconsin Stat. " 804.12(2)(a) 2. grants a circuit court discretionary authority, inter alia, to prohibit a party "from introducing designated matters in evidence" for the failure to obey a scheduling order. Wisconsin Stat. " 805.03 grants a circuit court even broader discretionary authority to make such orders "as are just" for the failure to obey an order of the court. See also Hefty, 312 Wis.2d 530, 74, 752 N.W.2d 820. This court has recognized that "[a] court's discretionary sanction for violation of a scheduling order is generally well grounded when a scheduling conference has taken place at which all interested parties were present to be heard." Id., 33. Active participation in a scheduling conference ensures knowledge of deadlines and hence leaves little room for tardiness or claimed ignorance. Id. | A party's failure to follow a scheduling order is grounds for sanctions at the circuit court's discretion. W.S.A. 802.10(7). | Is a party's failure to follow a scheduling order grounds for sanctions at the trial court's discretion? | 033787.docx | LEGALEASE-00142059-LEGALEASE-00142060 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 11537 | People ex rel. Manifold v. Wabash Ry. Co., 386 Ill. 149 | 371+2413 | The presumption is that school directors, in levying a tax for the year, properly discharge their duties, and the burden rests upon the objector to show that they did not. Gates v. Sweitzer, 347 Ill. 353, 179 N.E. 837, 79 A.L.R. 1151; People ex rel. Smith v. Hassler, 262 Ill. 133, 104 N.E. 177. It is recognized that taxes are levied only for the purpose of defraying the necessary expenses of government and not to enrich the public treasury, and that any unnecessary accumulation of such funds is unjust and unwise.This court, in People ex rel. Clark v. Baltimore & O. S. W. R. Co., 353 Ill. 492, 187 N.E. 463, 464, said: "A tax levy largely in excess of the amount required for the purpose for which it is made, with the intention of creating a surplus to be used for another purpose, is not a legal tax levy, even though the rate is within the limit fixed by statute. People v. Illinois Central R. Co., 266 Ill. 636, 107 N.E. 803. But the burden rests upon an objector to sustain his objection to a tax, and the courts will not interfere with the decision of taxing bodies on the question of the amount of taxes to be levied where it does not clearly appear that they have abused the discretion vested in them. People v. N. J. Sandberg Co., 277 Ill. 567, 115 N.E. 741." | Taxes are levied only to defray necessary expenses of government and not to enrich the public treasury, and any unnecessary accumulation of such funds is unjust and unwise. | Are unnecessary accumulations of taxes unjust and unwise? | 045201.docx | LEGALEASE-00141202-LEGALEASE-00141203 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11538 | Leathers v. Active Realty, 317 Ark. 214 | 371+2005 | We first note the cardinal rule in construing tax legislation: a tax cannot be imposed except by express words indicating that purpose, and where there is ambiguity or doubt it must be resolved in favor of the taxpayer. Pledger v. The Grapevine, Inc., 302 Ark. 18, 786 S.W.2d 825 (1990). The agency claiming a right to tax has the burden of proving that the tax law applies to the item sought to be taxed. A & B Dirt Movers, 311 Ark. 320, 844 S.W.2d 314. Another rule of tax law construction is that express designation of one thing may properly be understood to exclude another. Id. | Tax cannot be imposed except by express words indicating that purpose and where there is ambiguity or doubt, it must be resolved in favor of taxpayer. | Can a tax be imposed by express statutory words indicating that purpose? | 045364.docx | LEGALEASE-00141350-LEGALEASE-00141351 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11539 | Cota v. McDermott, 73 N.D. 459 | 371+2013 | The power to tax is a sovereign power inherent in the state. It is vested in the Legislature, which can exercise the power as it sees fit, subject only to constitutional limitations.Aubol v. Engeseth, 66 N.D. 63, 262 N.W. 338, 100 A.L.R. 853; Davis v. McLean County, 52 N.D. 857, 204 N.W. 459, and authorities cited. The owner of land is charged with notice that it is subject to taxation and is taxed and of all proceedings providing for the collection of the tax. Nind v. Myers et al., 15 N.D. 400, 109 N.W. 335, 8 L.R.A.,N.S., 157; Beggs v. Paine, 15 N.D. 436, 109 N.W. 322. And it is the duty of the land owner to pay his taxes when they become due. Keely v. Sanders, 99 U.S. 441, 25 L.Ed. 327; Webster v. Auditor General, 121 Mich. 668, 80 N.W. 705; Yates v. Hawkins, 46 N.Mex. 249, 126 P.2d 476; 51 Am.Juris. 830. The Legislature may provide that in case of default in payment land charged with a tax may be sold to satisfy the same. Nind v. Myers, supra; Beggs v. Paine, supra; 3 Cooley on Taxation, 4th Ed., "" 1350 and 1382. And the right of redemption is wholly statutory. It is not an absolute right but is accorded as a matter of legislative favor and grace. Keely v. Sanders, supra; Baker v. State Land Office Board, 294 Mich. 587, 293 N.W. 763; 51 Am.Juris. p. 953 et seq., and cases cited. And the right to notice of expiration of the period of redemption stands on no different ground. So, in the absence of statutory requirement, no notice need be given. 51 Am.Juris. 964. As we said in Beggs v. Paine, supra [15 N.D. 436, 109 N.W. 329]: "Under such a taxing system as ours there is no necessity for service of notice personally or by publication. The law itself is ample notice to comply with the requirements of due process." Nor has a delinquent taxpayer a vested right in any existing made of collecting taxes. There is no contract between him and the taxing authority that the latter will not vary the mode of collection. Allen v. Peterson, 38 | The power to tax is a proper power inherent in the state, and it is vested in the Legislature, which can exercise the power as it sees fit, subject only to constitutional limitations. | Can the state exercise its power to tax as it sees fit without any limitations? | 045416.docx | LEGALEASE-00140988-LEGALEASE-00140990 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11540 | Bessemer Theatres v. City of Bessemer, 261 Ala. 632 | 371+2010 | We do not in any respect question the nature of the business as being useful and harmless. But the rule is that "the only limitation on license taxation (for revenue) seems to be that it must not be so unreasonable as to show a purpose to prohibit a business which is not in itself injurious to public health or morals." Mayor & Aldermen of City of Birmingham v. Goldstein, 151 Ala. 474, 477, 44 So. 113, 114, 12 L.R.A.,N.S., 568.If it is prohibitive of a useful and harmless sort of business, its purpose is not to raise revenue and is not an exercise of the taxing power, as said in the Fox case, supra. | If tax is prohibitive of a useful and harmless sort of business, its purpose is not to raise revenue and it is not legitimate exercise of taxing power. | "Is prohibition of a useful or harmless business, a legitimate exercise of taxing power?" | 045437.docx | LEGALEASE-00141029-LEGALEASE-00141030 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 11541 | Otterberg v. Farm Bureau Mut. Ins. Co., 696 N.W.2d 24 | 413+2084 | In this case, our legislature has adopted the workers' compensation system. This system supplants the common law, and we no longer recognize a cause of action for negligence by an employee against the employer or co-employee. Kesterson v. Wallut, 157 S.W.3d 675, 686 (Mo.Ct.App.2004) (citations omitted). Thus, Otterberg never had any legal right to recover against the driver of the ambulance. | The workers' compensation system supplants the common law, and a cause of action for negligence by an employee against the employer or co-employee is no longer recognized. | Does workers compensation supplant common law? | Workers Compensation - Memo #374 ANC.docx | ROSS-003288989-ROSS-003288990 | Order, SA | 0.57 | 1 | 0 | 0 | 1 | |
| 11542 | Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 723 F.2d 155 | 361+1520 | Soler argues that the arbitration clause is of no effect because Puerto Rican law does not recognize any arbitration agreement that "obligates a dealer to ... arbitrate ... any controversy ... regarding [the] dealer's contract outside of Puerto Rico, or under foreign law or rule of law". 10 L.P.R.A. " 278b"2. For several reasons, we reject Soler's argument. | Puerto Rico arbitration statute, which allegedly did not recognize any arbitration agreement that "obligates a dealer to * * * arbitrate * * * any controversy * * * regarding (the) dealer's contract outside of Puerto Rico, or under foreign law or rule of law," was preempted by federal law declaring arbitration agreements valid and enforceable. 9 U.S.C.A. S 2; 10 L.P.R.A. S 278b-2. | Do courts reject the argument that arbitration clauses which provide for arbitration of controversies under foreign law should be void? | 007486.docx | LEGALEASE-00143083-LEGALEASE-00143084 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 11543 | Wal-Mart Stores v. Helferich Patent Licensing, 51 F. Supp. 3d 713 | 25T+210 | The FAA permits a federal district court to compel arbitration when there is: (1) a written agreement to arbitrate; (2) a dispute covered by or within the scope of a valid arbitration agreement; and (3) a refusal to arbitrate. Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 687 (7th Cir.2005). Parties may only be compelled to arbitrate those issues they have agreed to arbitrate. Kiefer Specialty Flooring, Inc. v. Tarkett, Inc., 174 F.3d 907, 909 (7th Cir.1999) (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). If the Court is satisfied that the parties agreed to arbitrate the issues presented, it must promptly compel arbitration. 9 U.S.C. " 4. The party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration. See Green Tree Fin. Corp."Ala. v. Randolph, 531 U.S. 79, 91"92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Once a court is satisfied with its determination that the parties have agreed to arbitrate the issues at hand, the court must compel arbitration and "shall on application of one of the parties stay the trial of action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. " 3. A request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am., 363 U.S. at 582"83, 80 S.Ct. 1347. | In an action to compel arbitration under the Federal Arbitration Act (FAA), party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration. 9 U.S.C.A. S 4. | Who bears the burden of demonstrating that the arbitration agreement is unenforceable? | 007523.docx | LEGALEASE-00143254-LEGALEASE-00143256 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 11544 | Remy Amerique v. Touzet Distribution, S.A.R.L., 816 F. Supp. 213 | 25T+139 | In the case at bar, the contract between the parties provides in pertinent part as follows: Arbitration. (a) Any controversy or claim arising out of, or relating to this Agreement or the breach thereof shall be settled by three (3) arbitrators pursuant to the Rules of Conciliation and Arbitration of the International Chamber of Commerce. The arbitration hearing will be held in The Hague, Holland, except that, to the extent that the dispute pertains to the local market, business practices, or requires evidence primarily obtainable in the Licensed Territory, the parties authorize the arbitrators to conduct all or part of the proceedings in the Licensed Territory. All reasonably incurred travel and boarding costs of the parties, their counsel and witnesses shall be treated as part of the arbitration costs and as such shall be subject to award by the arbitrators. (b) The parties may seek from the Arbitration Tribunal and from any judicial courts of proper jurisdiction equitable relief by way of temporary and permanent injunctions. There is no dispute that this arbitration agreement falls within the Convention. | Under distributorship contract providing for arbitration of any controversy or claim arising out of or relating to the agreement or breach thereof, distributor's claims that producers and marketers of wine products at issue had repudiated and breached contract was arbitrable even though distributor sought equitable relief of specific performance and despite contract provision allowing parties to seek from courts equitable relief by way of temporary and permanent injunctions, in that any ambiguity in agreement had to be resolved in favor of arbitration. | Can a party seek equitable relief by way of temporary and permanent injunction from any judicial courts of proper jurisdiction? | Alternative Dispute Resolution - Memo 674 - RK.docx | ROSS-003287044-ROSS-003287045 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 11545 | Murray Oil Prod. Co. v. Mitsui & Co., 146 F.2d 381 | 25T+156 | Different considerations govern that part of it which refused to vacate the attachment. The strength of the defendant's argument here lies in fact that if the attachment stands, the plaintiff will have profited by its refusal to arbitrate, which was a breach of its contract. Since the defendant was willing to do so, the plaintiff could by hypothesis have arbitrated the claim and, either sued upon the award or entered judgment upon it by motion under Sec. 9, if as it contends, that course was open to it in spite of the absence of such a provision in the contract. It did neither for two reasons: it denied that the contract contained such a clause; and it wished to attach the defendant's property. As to the first, it seems to us that there is as much reason for allowing an action to be brought to test the existence of an arbitration clause, as to test the factum of the contract in which the clause occurs. Kulukundis, etc., Corp. v. Amtorg, etc., 2 Cir., 126 F.2d 978. Conceivable, there might be an exception- so far as concerns provisional remedies- if the promisee challenged the existence of the clause, or of the contract, in bad faith, and only to avail himself of attachment, the right to which he would not otherwise have. Since this was a summary judgment and the defendant at least suggests that the plaintiff challenged the existence of an arbitration clause in bad faith, we will assume that such an exception exists, and that the plaintiff's first reason for bringing its action was bad. However, the second was good, because, we think, an arbitration clause does not deprive a promisee of the usual provisional remedies, even when he agrees that the dispute is arbitrable. | The existence of an arbitration clause in contract did not deprive promisee of the usual provisional remedies, including right to attachment, even if promisee had agreed that dispute was arbitrable. Arbitration Act S 1 et seq., and SS 3, 9, 9 U.S.C.A. S 1 et seq., and SS 3, 9. | Does the existence of an arbitration clause in a contract deprive a promisee of usual provisional remedies? | Alternative Dispute Resolution - Memo 675 - RK.docx | LEGALEASE-00031957-LEGALEASE-00031958 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11546 | Dameron v. Brodhead, 345 U.S. 322 | 34+34.10 | Nor do we see any distinction between those cases and this. Surely, the respondents may not rely on the fact that petitioner here is not a business contractor. He is not the less engaged in a function of the Federal Government merely because his relationship is not entirely economic. We have, in fact, generally recognized the especial burdens of required service with the armed forces in discussing the compensating benefits Congress provides. Le Maistre v. Leffers, 333 U.S. 1, 68 S.Ct. 371, 92 L.Ed. 429; Boone v. Lightner, 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. 1587. Cf. Board of Commissioners of Creek County v. Seber, 318 U.S. 705, 63 S.Ct. 920, 87 L.Ed. 1094. Petitioner's duties are directly related to an activity which the Constitution delegated to the national government, that "To declare War," U.S.Const. Art. I, s 8, cl. 11, and "To raise and support Armies'. Ibid., cl. 12. Since this is so, congressional exercise of a "necessary and proper" supplementary power such as this statute must be upheld. Pittman v. Home Owners' Loan Corp., 308 U.S. 21, 32"33, 60 S.Ct. 15, 17"18, 84 L.Ed. 11; Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 102"104, 62 S.Ct. 1, 5"6, 86 L.Ed. 65; Carson v. Roane-Anderson Co., supra, 342 U.S. at page 234, 72 S.Ct. at page 258. What has been said in no way affects the reserved powers of the states to tax. For this statute merely states that the taxable domicile of servicemen shall not be changed by military assignments. This we think is within the federal power. | Supreme Court would not be justified in establishing condition that state of serviceman's original residence must have imposed a property tax before Soldiers' and Sailors' Civil Relief Act provision that taxable domicile of servicemen shall not be changed by military assignments should become applicable, in absence of suggestion in such Act that Congress intended to establish such condition. Soldiers' and Sailors' Civil Relief Act of 1940, SS 1 et seq., 514 as amended 50 U.S.C.A.App. SS 501 et seq., 574; 28 U.S.C.A. S 1257(3); U.S.C.A.Const. art. 1, S 8, cls. 11, 12. | Can the taxable domicile of servicemen be changed by military assignments according to the Soldiers' and Sailors' Civil Relief Act? | Armed Services - Memo 249 - JS.docx | ROSS-003302177-ROSS-003302178 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 11547 | United States v. Frega, 933 F. Supp. 1536 | 63+1(1) | Accordingly, the Court concludes that the legislative history of " 666 demonstrates that Congress intended a broad reach for the statute, but only as to the protection of federal funds. In this case, the indictment does not allege that federal funds were corruptly administered, were in danger of being corruptly administered, or even could have been corruptly administered. Although the alleged conduct of the defendants is troubling, it does not appear to have threatened, either directly or indirectly, federal funds. For that reason, the Court dismisses Count 1 of the indictment. | Federal bribery statute did not apply to prosecution of California Superior Court judges and attorney, based on allegation that attorney gave gifts, which judges accepted, with intent to influence or reward judges in cases that they presided over and in which attorney was counsel of record; indictment did not allege that federal funds were corruptly administered, were in danger of being corruptly administered, or even could have been corruptly administered. 18 U.S.C.A. S 666. | "Under the federal bribery statute, is it necessary to allege in the indictment that federal funds were corruptly administered?" | 011527.docx | LEGALEASE-00142284-LEGALEASE-00142285 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 11548 | State v. Hingle, 677 So. 2d 603 | 63+1(1) | One of the essential elements of public bribery is a conscious knowing intent to influence a person's conduct. Louisiana State Bar Association v. Pitard, 462 So.2d 178 (La.1985). Specific intent is a state of mind and need not be proved as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant.State v. Graham, 420 So.2d 1126 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.), writ denied, 544 So.2d 398 (La.1989). Specific intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. A court reviewing the correctness of such a finding should consider the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable fact finder of the defendant's guilt beyond a reasonable doubt. State v. Huizar, 414 So.2d 741 (La.1982). | One of essential elements of public bribery is conscious knowing intent to influence person's conduct. LSA-R.S. 14:118. | Is an intent to influence a person's conduct an essential element of public bribery? | 011563.docx | LEGALEASE-00142547-LEGALEASE-00142548 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 11549 | Dixson v. United States, 465 U.S. 482 | 63+1(2) | By finding petitioners to be public officials within the meaning of section 201(a), we do not mean to suggest that the mere presence of some federal assistance brings a local organization and its employees within the jurisdiction of the federal bribery statute or even that all employees of local organizations responsible for administering federal grant programs are public officials within the meaning of section 201(a). To be a public official under section 201(a), an individual must possess some degree of official responsibility for carrying out a federal program or policy. | To be a "public official" under terms of federal bribery statute, an individual must possess some degree of official responsibility for carrying out a federal program or policy; mere presence of some federal assistance does not bring a local organization and its employees within jurisdiction of statute, nor are all employees of local organizations responsible for administering federal grant programs "public officials" within meaning of statute. 18 U.S.C.A. SS 201, 201(a). | What is the requirement for an individual to be a public official under terms of federal bribery statute? | 012186.docx | LEGALEASE-00142451-LEGALEASE-00142452 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 11550 | Geosearch v. Andrus, 508 F. Supp. 839 | 260+5.1(1) | The Mineral Leasing Act of 1920, as amended, and its implementing regulations set up a system to lease lands subject to disposition under the Act.The purpose of the Act is to promote the orderly development of oil and gas deposits in publicly owned lands of the United States through private enterprise. Harvey v. Udall, 384 F.2d 883 (10th Cir. 1967). | Purpose of Mineral Leasing Act, which sets up system to lease land subject to disposition under the Act, is to promote orderly development of oil and gas deposits in publicly owned lands of the United States by private enterprise. Mineral Leasing Act, S 1 et seq. as amended 30 U.S.C.A. S 181 et seq. | What is the purpose of the Mineral Leasing Act of 1920? | 021243.docx | LEGALEASE-00143248-LEGALEASE-00143249 | Order, SA | 0.15 | 1 | 0 | 0 | 1 | |
| 11551 | MacDonald v. Follett, 142 Tex. 616 | 260+79.1(0.5) | By the term "overriding royalty" as used herein is meant a given percentage of the gross production carved from the working interest but, by agreement, not chargeable with any of the expenses of operation. | The term "overriding royalty" as used in oil and gas lease agreement meant a given percentage of the gross production carved from the working interest but, by agreement, not chargeable with any of the expenses of operation. | "What does the term ""overriding royalty"" mean?" | 021321.docx | LEGALEASE-00142587-LEGALEASE-00142588 | SA, Sub | 0.1 | 0 | 0 | 1 | 1 | |
| 11552 | Piper Jaffray & Co. v. Severini, 443 F. Supp. 2d 1016 | 334+94 | However, there is another manner in which a plaintiff can waive its objection to removal. A plaintiff can waive its objection to removal by acquiescing in the federal court's jurisdiction. A plaintiff acquiesces to the federal court's jurisdiction when it undertakes affirmative action in such a court. Lanier v. Am. Bd. of Endodontics, 843 F.2d 901, 904 (6th Cir.1988)(citing In re Moore, 209 U.S. 490, 28 S.Ct. 706, 52 L.Ed. 904 (1908); Harris v. Edward Hyman Co., 664 F.2d 943 (5th Cir.1981)). However, a district court has broad discretion in deciding whether a plaintiff has waived its right to object to procedural irregularities in removal proceedings. Id. at 905 (citations omitted). The Court finds that plaintiff has not waived its objection to removal by undertaking affirmative action in this Court. | A district court has broad discretion in deciding whether a plaintiff has waived its right to object to procedural irregularities in removal proceedings. | "Where a continuance was granted as to one of defendants, has the plaintiff waived the right to object to the irregularity of the continuance?" | 030681.docx | LEGALEASE-00142903-LEGALEASE-00142904 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11553 | Grant v. Espiritu, 470 S.W.3d 198 | 13+13 | Standing is a constitutional prerequisite to suit. Heckman, 369 S.W.3d at 150; see Sw. Bell Tel. Co. v. Mktg. on Hold Inc., 308 S.W.3d 909, 915 (Tex.2010). A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. Heckman, 369 S.W.3d at 150; DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex.2008). Thus, if a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it. Heckman, 369 S.W.3d at 150; see Andrade v. NAACP of Austin, 345 S.W.3d 1, 14 (Tex.2011) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (Quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008)). Similarly, if the plaintiff lacks standing to bring any of his claims, the court must dismiss the whole action for want of jurisdiction. Heckman, 369 S.W.3d at 150"51; see Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 392 (Tex.2000) (holding that plaintiff had standing on some claims but not others, and dismissing only those claims for which it lacked standing). | If a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it. | "If a plaintiff is without standing to assert one of his claims, does the court lack jurisdiction over that claim and is required to dismiss it?" | 033287.docx | LEGALEASE-00142531-LEGALEASE-00142532 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 11554 | Olson v. City of Golden, 53 P.3d 747 | 371+2005 | The term "local government" is not defined by TABOR. As a result, we must rely on general rules of statutory construction in interpreting its meaning. In construing this term, we must give effect to the electorate's intent in enacting TABOR. The objective of TABOR is to prevent state and local government from enacting taxing and spending increases above TABOR's limits without voter approval. Campbell v. Orchard Mesa Irrigation District, 972 P.2d 1037 (Colo.1998). | The objective of Taxpayers' Bill of Rights (TABOR) is to prevent state and local government from enacting taxing and spending increases above TABOR's limits without voter approval. West's C.R.S.A. Const. Art. 10, S 20. | What is the objective of the Taxpayers' Bill of Rights (TABOR)? | 045311.docx | LEGALEASE-00142632-LEGALEASE-00142633 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 11555 | United States v. State of Md., 471 F. Supp. 1030 | 371+2005 | Although the meaning and intent of the 1971 Act is not nearly as clear as that of the 1974 Act, this Court is satisfied that the earlier enactment like the later one also did not require electric companies to pass this exaction on to their customers. In construing the awkwardly drafted statutory provisions, this Court has been guided by the principle recognized by the Supreme Court in Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 483, 59 S.Ct. 595, 600, 83 L.Ed. 927 (1939), that "the implied immunity of one government and its agencies from taxation by the other should as a principle of statutory construction be narrowly restricted." In the earlier versions of both s 54B(c) and of s 3-302, like the later versions, the Public Service Commission is also directed to impose the surcharge "by authorizing" the electric companies to add the amount of the surcharge to customers' bills. Passing the exaction on to customers is therefore permissive rather than mandatory. Having intended that the word "authorize" should have a permissive connotation in the 1974 Act, the Legislature could hardly have intended a completely contradictory meaning three years before. The same word "authorize" (or a derivative thereof) was used in the same legislation, and had the Legislature wished to make it mandatory that the exaction be passed on, the word "require" or the words "by requiring" would have been used in either or both statutes. | The implied immunity of one government and its agencies from taxation by other should as a principle of statutory construction be narrowly restricted. | Should the implied immunity of one government and its agencies from taxation by other be narrowly restricted? | Taxation - Memo # 509 - C - NS.docx | ROSS-003317163-ROSS-003317165 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 11556 | City of Fairmont v. Pitrolo Pontiac-Cadillac Co., 172 W. Va. 505 | 371+2061 | We do not view the absence of a provision for a lien right in the ordinance to be controlling in identifying whether the ordinance is a property tax. Nor do we believe that a critical distinction can be made over the fact that only buildings are assessed under the ordinance rather than the entire fee. The essential characteristic of an ad valorem tax, as its name suggests, is that the tax is levied according to the value of the property. Also, assessment on a regular basis is a common characteristic. How or who determines the value of the property is not a critical element in analyzing whether the tax is an ad valorem tax. | Essential characteristic of ad valorem tax is that tax is levied according to value of property, and assessment on regular basis is common characteristic. | Is assessment on regular basis a common characteristic of ad valorem tax? | 045708.docx | LEGALEASE-00142118-LEGALEASE-00142119 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 11557 | Manion v. Nagin, 2003 WL 21459680 | 25T+156 | Qualifying contractual language is "language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute." Peabody, 36 F.3d at 47, n. 3.The terms of the contract in Peabody provided that performance of obligations under it "shall be continued in full by the parties during the dispute resolution process," and this court concluded that the contract required continued performance during arbitration, entitling the movant to an injunction. Id. at 47"48. Under the FAA, courts are to issue orders "directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. at 48 (emphasis supplied). Where a "contract clearly requires continued performance during the arbitration process," the result is consistent with the congressional purpose to avoid court delays and does not implicate concerns of courts becoming impermissibly entangled in the merits of the underlying dispute. Id. (emphasis supplied). | In a case involving the Federal Arbitration Act (FAA), courts should not grant injunctive relief unless there is qualifying contractual language which permits it, that is, language which provides the court with clear grounds to grant relief without addressing the merits of the underlying arbitrable dispute. 9 U.S.C.A. S 1 et seq. | How is the term qualifying contractual language used in arbitration? | 007673.docx | LEGALEASE-00144703-LEGALEASE-00144704 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 11558 | E.A.S.T. of Stamford, Conn. v. M/V Alaia, 673 F. Supp. 796 | 25T+178 | The Federal Arbitration Act, 9 U.S.C. "" 1 et seq. (1982), does not of itself create any independent federal jurisdiction. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983); see also 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction " 3569, at 170"72 (2d ed. 1984). Specifically with respect to maritime actions, section 8 of the Act, 9 U.S.C. " 8, does not of itself confer an in rem right against a vessel. Metropolitan World Tanker, Corp. v. P.N. Pertambangan Minjakdangas Bumi Nasional, 427 F.Supp. 2, 3"4 (S.D.N.Y.1975).To proceed in rem under section 8 of the Act, there must exist an independent in rem admiralty claim. Id. at 4. | With respect to maritime actions, section 8 of the Federal Arbitration Act does not of itself confer an in rem right against vessel, and to proceed in rem under that section there must exist an independent in rem admiralty claim. 9 U.S.C.A. SS 1 et seq., 8. | Do provisions of Federal Arbitration Act (FAA) confer an in rem right against a vessel? | 007682.docx | LEGALEASE-00144755-LEGALEASE-00144756 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11559 | Florida v. Seminole Tribe of Florida, 181 F.3d 1237 | 209+235 | The district court in this case, however, concluded that Ross and Maxam were wrongly decided. We agree. The Supreme Court has made it plain that waivers of tribal sovereign immunity cannot be implied on the basis of a tribe's actions, but must be unequivocally expressed. The State's argument that the Tribe's gaming activities constitute a waiver of sovereign immunity is patently inconsistent with this rule. Although the Ross court claimed that such gaming activities could constitute an express waiver, we find this claim to be no more than a misuse of the word "express." See Black's Law Dictionary 580 (6th ed.1990) (defining express as "[m]anifested by direct and appropriate language, as distinguished from that which is inferred from conduct."). We hold, therefore, that the Tribe did not expressly and unequivocally waive its immunity from this suit by electing to engage in gaming under IGRA. | Waivers of tribal sovereign immunity cannot be implied on the basis of a tribe's actions, but must be unequivocally expressed. | Can the waiver of tribal sovereign immunity be implied on the basis of a tribe's actions? | 007696.docx | LEGALEASE-00144809-LEGALEASE-00144811 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11560 | United States v. Sisson, 294 F. Supp. 515 | 34+40.1(1) | Defendant states it "will offer evidence to show he reasonably believed the Vietnam war to be illegal." The indictment charges him with wilfully refusing to perform a duty under the Military Selective Service Act of 1967. U.S.C. Title 50 App. " 451 et seq. "Wilfully" as used in the indictment means intentionally, deliberately, voluntarily. If the Government proves defendant intentionally refused to comply with an order of his draft board, in accordance with the statute, to submit to induction, it is not open to defendant to offer as an excuse that he regarded the war as illegal, that is, contrary to either domestic Constitutional law or international law. Whatever may be the availability of the issues of political belief, good faith, and like innocent motivation as defenses to an indictment charging conspiracy, and whatever may be the requirement imposed upon a prosecution in a conspiracy trial to show bad faith or awareness of illegality, and whatever may be in a conspiracy trial the relevance of a contention that the defendants therein were exercising their political rights of free speech which, by virtue of the First Amendment to the Constitution, are not subject to laws made by Congress," in a prosecution for wilfully refusing to obey an induction order, evidence with respect to belief is admissible only to the extent it bears upon the issue of intent, as distinguished from motive or good faith. | "Wilfully", within statute penalizing wilful refusal to perform duty under Military Selective Service Act, means intentionally, deliberately, or voluntarily. Universal Military Training and Service Act, S 1 et seq. as amended 50 U.S.C.A. App. S 451 et seq. | What does the word willfully mean under the Selective Service Act? | 008661.docx | LEGALEASE-00144637-LEGALEASE-00144638 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 11561 | United States v. Christensen, 828 F.3d 763 | 63+1(1) | Arneson's database inquiries also involved "matter[s] then pending, or that may [have been] brought before him...." Cal. Penal Code " 68. California law "does not require any specific action to be pending on the date the bribe is received." People v. Gaio, 81 Cal.App.4th 919, 929, 97 Cal.Rptr.2d 392 (Ct. App. 2000) (citation and internal quotation marks omitted). As this court has explained, "[t]he use of the word "may" " in " 68 indicates that "payments designed to alter the outcome of any matter that could conceivably come before the official are within the prohibition of the statute." Frega, 179 F.3d at 805 (citation and internal quotation marks omitted) (concluding that "a bribe ... intended to influence, generally, a judge's future actions with respect to matters that may come before him, falls within the statute's prohibitions"). Hence, the matter of whether to "enforce the law against social vices is always before" a police officer like Arneson. Gaio, 81 Cal.App.4th at 930, 97 Cal.Rptr.2d 392. So too is the matter of whether to use his position as an LAPD officer to investigate someone in the Los Angeles area. Cf. Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (describing law enforcement as the "competitive enterprise of ferreting out crime"). Arneson's use of his office to investigate someone, via confidential databases or otherwise, necessarily involved a classic type of police "matter""investigation. See Gaio, 81 Cal.App.4th at 931, 97 Cal.Rptr.2d 392 (holding that evidence was sufficient to support bribery convictions because evidence established that payment was given to influence "any one or more instances, types, or courses of official action"). | California law does not require any specific action to be pending on date that bribe is received in order to convict official of bribery. West's Ann.Cal.Penal Code S 68. | Does law require any specific action to be pending on the date that the bribe is received for bribery of a public official? | 012198.docx | LEGALEASE-00143641-LEGALEASE-00143642 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 11562 | People v. Boose, 139 Ill. App. 3d 471 | 67+3 | (274 Ill., at 558, 113 N.E. 926.) Similarly, in the instant case, there is no evidence as to the intent with which Boose entered Marshall Field's. Indeed, the evidence supports an inference that Boose formulated the intent to take the items sometime after entering the store. (See People v. Fisher (1980), 83 Ill.App.3d 619, 39 Ill.Dec. 268, 404 N.E.2d 859.) A criminal intent formulated after a lawful entry will satisfy the offenses of larceny (retail theft) or burglary by illegally remaining. It will not, however, satisfy the offense of burglary by illegal entry. (Weaver, 41 Ill.2d 434, 243 N.E.2d 245; Baker, 59 Ill.App.3d 100, 16 Ill.Dec. 545, 375 N.E.2d 176; Housewright, 9 Ill.App.3d 803, 293 N.E.2d 911.) We therefore hold that the State failed to prove beyond a reasonable doubt that Boose possessed the requisite intent at the time he entered the store. | Criminal intent formulated after lawful entry will satisfy offenses of larceny, i.e., retail theft, or burglary by illegally remaining; it will not, however, satisfy the offense of burglary by illegal entry. S.H.A. ch. 38, P 19-1(a). | Does criminal intent formed after a lawful entry satisfy the burglary statute? | Burglary - Memo 221 - SB.docx | ROSS-003288277-ROSS-003288280 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11563 | United States v. Matchett, 802 F.3d 1185 | 350H+1285 | Although the definition of a crime of violence specifically includes the crime of "burglary of a dwelling," U.S.S.G. " 4B1.2(a)(2), the Florida offense of burglary of an unoccupied dwelling, Fla. Stat. " 810.02(1)(b), (3)(b), does not fall under that definition. The Florida offense includes burglary of "the curtilage" of the dwelling. Fla. Stat. " 810.011(2). "[T]he inclusion of curtilage takes Florida's underlying offense of burglary outside the [federal] definition of "generic burglary" ..., which requires an unlawful entry into, or remaining in, "a building or other structure." " James v. United States, 550 U.S. 192, 212, 127 S.Ct. 1586, 1599, 167 L.Ed.2d 532 (2007) (emphasis omitted) (quoting Taylor v. United States, 495 U.S. 575, 598, 110 S.Ct. 2143, 2158, 109 L.Ed.2d 607 (1990)), overruled in part by Johnson, 135 S.Ct. 2551. Here, the government presented no evidence that the "charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." United States v. Matthews, 466 F.3d 1271, 1275 (11th Cir.2006) (quoting Taylor, 495 U.S. at 602, 110 S.Ct. at 2160) (internal quotation marks omitted). Matchett's previous convictions are not burglaries of a dwelling under the guidelines. | Although the definition of a crime of violence under federal sentencing guidelines specifically includes the crime of burglary of a dwelling, the Florida offense of burglary of an unoccupied dwelling does not fall under that definition; the inclusionof curtilage takes Florida's underlying offense of burglary outside the federal definition of generic burglary, which requires an unlawful entry into, or remaining in, a building or other structure. U.S.S.G. S 4B1.2(a)(2), 18 U.S.C.A.; West's F.S.A. S 810.02(1)(b), (3)(b). | Is burglary of a dwelling a crime of violence? | Burglary - Memo 232 - SB.docx | ROSS-003315963-ROSS-003315966 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 11564 | Nat'l Am. Ins. Co. of California v. Certain Underwriters at Lloyd's London, 93 F.3d 529 | 113+8 | First, the Underwriters have not pointed to a single California case where a court applied this principle to preclude evidence of custom and usage contrary to common law. Instead, the cases deal mainly with usages contrary to "positive" statutory law. See, e.g., Hayward Tamkin & Co. v. Carpenteria Inv. Co., 265 Cal.App.2d 617, 624, 71 Cal.Rptr. 462 (1968); Kohn v. Sacramento Elec. Gas & Ry. Co., 168 Cal. 1, 7, 141 P. 626 (1914). The rationale for applying such a rule to statutes is imminently defensible: courts should not use evidence of custom and usage to evade a legislative enactment. Crocker Nat'l Bank v. Byrne & McDonnell, 178 Cal. 329, 334, 173 P. 752 (1918). | Under California law, court should not use evidence of custom and usage to evade legislative enactment, but principle that custom or usage could not overcome rule of law applies with less force when law derives from common law, not statute. | Should a court use evidence of custom and usage to evade legislative enactment? | Customs & Usage - Memo 276 - TB.docx | ROSS-003302259-ROSS-003302260 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 11565 | In re Estate of Slaughter, 305 S.W.3d 804 | 260+47 | All land in Texas is comprised of separate corporeal estates in the minerals and in the surface. Bagby v. Bredthauer, 627 S.W.2d 190 (Tex.App.-Austin 1981, no writ). As to the separate estate known as the mineral estate, it is well settled that such estate is comprised of five separate and distinct parts. "A mineral estate consists of five interests: 1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, 4) the right to receive delay rentals, and 5) the right to receive royalty payments." French v. Chevron U.S.A., 896 S.W.2d 795, 797 (Tex.1995) (citing Altman v. Blake, 712 S.W.2d 117, 118 (Tex.1986)); see Veterans Land Bd. v. Lesley, 281 S.W.3d 602, 615 (Tex.App.-Eastland 2009, pet. filed). When a mineral estate is conveyed, all interests are transferred unless they are specifically reserved to the grantor. Lesley, 281 S.W.3d at 616; French v. Chevron U.S.A., Inc., 871 S.W.2d 276, 278 (Tex.App.-El Paso 1994), aff'd, 896 S.W.2d 795 (Tex.1995); Prairie Producing Co. v. Schlachter, 786 S.W.2d 409, 412 (Tex.App.-Texarkana 1990, writ denied). | A "mineral estate" consists of five interests: (1) the right to develop, (2) the right to lease, (3) the right to receive bonus payments, (4) the right to receive delay rentals, and (5) the right to receive royalty payments. | What are the five interests that a mineral estate consists of? | 021365.docx | LEGALEASE-00144053-LEGALEASE-00144054 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11566 | Townsend v. Feinberg, 659 So. 2d 1218 | 307A+563 | It is uniformly held that dismissal is a drastic remedy which courts should employ only in extreme situations. Clay v. City of Margate, 546 So.2d 434 (Fla. 4th DCA 1989). Prior to exercising its discretion to grant dismissal based on failure to comply with a court order, the court must make a finding that the failure to comply was willful or contumacious. In the case at bar, there was no finding in the order of dismissal that appellant's failure to attend her IME or her deposition was "willful or contumacious" or that appellant's action, or non-action, resulted in prejudice to appellee. The failure to make the requisite findings in the order of dismissal constitutes reversible error. See Commonwealth Federal Savings and Loan Assn. v. Tubero, 569 So.2d 1271 (Fla.1990); In re the Forfeiture of Twenty Thousand Nine Hundred Dollars ($20,900) U.S. Currency, 539 So.2d 14 (Fla. 4th DCA 1989).We do not mean to imply that the mere inclusion of the "magic words" in the order of dismissal would have cured the error in this case. To the contrary, there is nothing in the record which indicates that appellant willfully failed to comply with the court's orders. We therefore reverse the dismissal with prejudice and direct the trial court to proceed with a trial on the merits. | Prior to exercising its discretion to grant dismissal based on failure to comply with court order, court must make finding that failure to comply was willful or contumacious, and failure to make requisite findings in order of dismissal constitutes reversible error, and inclusion of "magic words" does not necessarily cure error. | "In the requisite written finding of wilfulness, are magic words required or only a finding that the conduct upon which the order is based was equivalent to wilfulness or deliberate disregard?" | 033118.docx | LEGALEASE-00144267-LEGALEASE-00144268 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 11567 | Blair v. Collins, 15 La. Ann. 683 | 307A+74 | The caption and process-verbal show that the witnesses were duly sworn, and state where, when, and by what authority the commission was executed. This was held to be sufficient in the case of Ferriber v. Latting, 9 An. 169. | It is sufficient, in the execution of a commission to take testimony, if the caption and proc├¿s verbal show that the witnesses were duly sworn and where, when, and by what authority the commission was executed, and it is not necessary that it would appear by whom the depositions was written. | "Is it sufficient, in the execution of a commission to take testimony, if the caption shows that the witnesses were duly sworn?" | 033548.docx | LEGALEASE-00143649-LEGALEASE-00143650 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 11568 | Barrow v. Gen. Motors Corp., 172 Ga. App. 287 | 401+32(1) | OCGA " 9-11-8(a)(2) requires that the "original complaint shall contain facts upon which the court's venue depends..." Where the complaint fails to set forth facts establishing venue it is subject to dismissal. Chancey v. Hancock, 225 Ga. 715, 716, 171 S.E.2d 302; Jones v. Woods, 158 Ga.App. 391, 280 S.E.2d 418 and cases therein cited. Since the complaint here did not allege facts which would establish venue in Evans County but merely that General Motors did business in the State of Georgia, it was vulnerable to a motion to dismiss. | Where complaint fails to set forth facts establishing venue it is subject to dismissal. O.C.G.A. S 9-11-8(a)(2). | "Where the complaint fails to set forth facts establishing venue, is it subject to dismissal?" | Pretrial Procedure - Memo # 6152 - C - KG.docx | ROSS-003303062-ROSS-003303063 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 11569 | Verploegh v. Gagliano, 396 Ill. App. 3d 1041 | 307A+560 | The plaintiff has the burden to prove reasonable diligence to obtain service of process. Segal v. Sacco, 136 Ill.2d 282, 286, 144 Ill.Dec. 360, 555 N.E.2d 719, 720 (1990). We review a decision to grant a motion to dismiss pursuant to Supreme Court Rule 103(b) for an abuse of discretion. Segal, 136 Ill.2d at 286, 144 Ill.Dec. 360, 555 N.E.2d at 720. | In response to motion to dismiss, the plaintiff has the burden to prove reasonable diligence to obtain service of process. Sup.Ct.Rules, Rule 103(b). | "In response to motion to dismiss, does the plaintiff have the burden to prove reasonable diligence to obtain service of process?" | Pretrial Procedure - Memo # 6248 - C - DHA.docx | ROSS-003289822-ROSS-003289823 | Order, SA | 0.57 | 1 | 0 | 0 | 1 | |
| 11570 | Hunt ex rel. Chiovari v. Dart, 612 F. Supp. 2d 969 | 307A+560 | ""The standard for determining reasonable diligence is an objective one, and plaintiffs have the burden of showing that they exercised such diligence in their efforts to obtain service." " Polites, 361 Ill.App.3d at 86, 296 Ill.Dec. 718, 836 N.E.2d at 141"142 (quoting Parker v. Piskur, 258 Ill.App.3d 344, 347, 196 Ill.Dec. 540, 630 N.E.2d 475 (3rd Dist.1994)). | Standard for determining reasonable diligence, under Illinois alias summons rule permitting dismissal for lack of diligence, is an objective one, and plaintiffs have the burden of showing that they exercised such diligence in their efforts to obtain service. Ill.Sup.Ct.Rules, Rule 103(b). | "In response to motion to dismiss, does the plaintiff have the burden to prove reasonable diligence to obtain service of process?" | 033716.docx | LEGALEASE-00144429-LEGALEASE-00144430 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11571 | Sullivan-Sanford Lumber Co. v. Cooper, 59 Tex. Civ. App. 536 | 307A+726 | The appellant made an application for continuance. Appellees filed a contest to the application, and the court, after hearing evidence, overruled the application, and to the action of the court in denying a continuance appellant assigns error. The application for continuance must be held, we think, in the case as a second, and not a first, application; and, as a second application, it does not meet the requirements of the statute, in that it fails to allege that the testimony to be elicited from the witnesses "could not be procured from any other source." Article 1278, Rev.St.; Campian v. Alger, 16 Tex. 93, 245; Rowland v. Wright, 64 Tex. 261. Failing in its sufficiency in statutory requirement, as it does, then the application rested for ruling in the sound discretion of the court; and, looking to the application and the evidence heard by the court, we do not feel warranted in holding that the court abused his discretion when he denied the continuance. It further appears in the record that the witnesses on account of whose absence the continuance was sought had testified fully on previous trials of the case, their testimony had been taken and transcribed by the official stenographer of the court, and on the instant trial appellant, with the consent of appellees, was allowed to introduce the testimony of such witnesses given upon former trials. In the absence of a statutory showing as in this case no reversible error could be predicated, we think, on the court's action, as all the witnesses could have testified to, if personally present, it appears was in evidence before the jury. | A second application for continuance for want of testimony, failing to allege, as required by Rev.St.1895, art. 1278, Vernon's Ann.Civ.St. art. 2168, that the testimony sought to be elicited from the absent witnesses "cannot be obtained from any source," ruling thereon rests in the sound discretion of the trial court. | "To meet the requirements of the statute for a second application for continuance, is it required to allege that the testimony to be elicited from the witnesses could not be procured from any other source?" | Pretrial Procedure - Memo # 6483 - C - SU.docx | ROSS-003289211-ROSS-003289212 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 11572 | Gerbino v. Isle of Paradise B, 149 So. 3d 69 | 307A+563 | After considering these factors, if a sanction less severe than dismissal of the suit is a viable alternative, then the court should employ such an alternative. Id.; accord Kruger, 124 So.3d at 1034"35; Smith, 951 So.2d at 960; Sekot, 585 So.2d at 287; SPS Dev. Co. v. DS Enters. of the Palm Beaches, Inc., 970 So.2d 495, 497 (Fla. 4th DCA 2007); Town of Manalapan v. Fla. Power & Light Co., 815 So.2d 670, 672 (Fla. 4th DCA 2002). In this case, the court failed to consider these factors in dismissing the appellant's complaint with prejudice. | After considering the Kozel factors for determining if the ultimate sanction of dismissal should be imposed on a client for an attorney's neglect, if a sanction less severe than dismissal of the suit is a viable alternative, then the court should employ such an alternative. | "If a sanction is less severe than dismissal of the suit, should the court employ an alternative?" | 034234.docx | LEGALEASE-00144753-LEGALEASE-00144754 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 11573 | Dillion v. Mabbutt, 265 Neb. 814 | 307A+560 | At the time the court dismissed the case, " 25-217 provided that an "action shall stand dismissed without prejudice as to any defendant not served within six months from the date the petition was filed." In overruling the motion for a new trial, the court noted that more than 6 months had passed since Dillion had filed her petition and questioned whether, given its previous ruling that service had been ineffective, it had jurisdiction. | At the time trial court sustained defendant's special appearance due to improper service in personal injury action, more than six months had passed since plaintiff had filed her petition, and thus trial court's ruling triggered statute providing for dismissal of unserved petitions, and order sustaining special appearance had the effect of formalizing dismissal of case. Neb.Rev.St. S 25-217. | Is statutory language providing that an action shall stand dismissed without prejudice as to any defendant not served within six months from the date the complaint was filed self-executing and mandatory? | 034437.docx | LEGALEASE-00143733-LEGALEASE-00143734 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |
| 11574 | Landise v. Mauro, 141 A.3d 1067 | 307A+563 | Among the factors which the trial court should consider are: (1) the nature of the party's conduct, including whether it was willful; (2) the length of any delay in complying with the court's order; (3) the reasons for the delay; and (4) any prejudice to the opposing party. Dismissal should not be imposed where the failure of a party to comply with the order is inadvertent or excusable. | Dismissal should not be imposed as a sanction for failing to comply with a court order where the failure of a party to comply with the order is inadvertent or excusable. Civil Rule 41(b). | Should a dismissal be imposed as a sanction for failing to comply with a court order where the failure of a party to comply with the order is inadvertent or excusable? | Pretrial Procedure - Memo # 6777 - C - NS.docx | ROSS-003302837-ROSS-003302838 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 11575 | Stuckey v. The Provident Bank, 912 So. 2d 859 | 307A+747.1 | Part of the relief requested by the Stuckeys is that the case be reversed and remanded to allow them "discovery and a trial on the issues raised." However, again in referring to the chancellor's scheduling order, the Stuckeys were allowed from January 28, 2003, until December 2, 2003, to complete discovery-almost a year. We emphasize again, as we did in Bowie, that attorneys and parties must take seriously the deadlines established in the pre-trial orders entered by our trial courts. Attorneys and parties should not complain about the consequences when they consciously fail to adhere to our trial judges' orders. | Attorneys and parties must take seriously the deadlines established in pre trial orders; they should not complain about the consequences when they consciously fail to adhere to trial judges' orders. | Must attorneys and parties take the deadlines established in pre-trial orders seriously? | 034542.docx | LEGALEASE-00144617-LEGALEASE-00144618 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 11576 | Bachmeier v. Wallwork Truck Centers, 507 N.W.2d 527 | 307A+44.1 | The trial court has broad discretion in determining when sanctions are appropriate, and what sanctions to impose. See Benedict v. St. Luke's Hospitals, 365 N.W.2d 499, 504 (N.D.1985).Similar to Rule 37 sanctions, we believe inherent power sanctions require case-by-case analysis of all the circumstances presented in the case. Vorachek v. Citizens State Bank of Lankin, 421 N.W.2d 45, 51 (N.D.1988) ( Rule 37). Valid considerations include, but are not limited to: the culpability, or state of mind, of the party against whom sanctions are being imposed; a finding of prejudice against the moving party, and the degree of this prejudice, including the impact it has on presenting or defending the case;and, the availability of less severe alternative sanctions. See Dillon, 986 F.2d at 267-68; Computer Associates Int'l, Inc., 133 F.R.D. at 169; Nevada Power v. Fluor Illinois, 108 Nev. 638, 837 P.2d 1354 (1992); Stubli v. Big D Int'l Trucks, Inc., et al., 107 Nev. 309, 810 P.2d 785 (1991). | Inherent power sanctions require case-by-case analysis of all circumstances presented in case, including culpability of party against whom sanctions are being imposed, finding of prejudice against moving party, degree of prejudice, including impact it has on presenting or defending case, and availability of less severe alternative sanctions. (Per Neumann, J., with one Judge concurring and two Judges concurring in the result.) | "When using courts inherent power to sanction a party, is a case-by-case analysis of all the circumstances presented in the case required?" | 034583.docx | LEGALEASE-00144319-LEGALEASE-00144320 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11577 | Trinity Broad. of Denver v. City of Westminster, 848 P.2d 916 | 307A+682.1 | A motion to dismiss for lack of subject matter jurisdiction is governed by C.R.C.P. 12(b)(1). Our version of Rule 12(b)(1) is identical to Fed.R.Civ.P. 12(b)(1), and C.R.C.P. 12(b)(5) is identical to Fed.R.Civ.P. 12(b)(6). Accordingly, we look to federal authorities for guidance in construing our rules. Lucas v. District Court, 140 Colo. 510, 517, 345 P.2d 1064, 1067 (1959). If the motion is a factual attack on the jurisdictional allegations of the complaint, such as the timeliness of the notice involved in this case, the trial court may receive any competent evidence pertaining to the motion. See 2A James W. Moore & Jo Desha Lucas, Moore's Federal Practice 12.07[2."1] at 12"47 (2d ed. 1992). Fed.R.Civ.P. 12(b)(1) differs from Fed.R.Civ.P. 12(b)(6) (motion to dismiss for failure to state a claim) because a trial court may consider evidence pursuant to Fed.R.Civ.P. 12(b)(1) without converting the motion to a summary judgment motion as it would be required to do if it considered matters outside the pleadings under a Fed.R.Civ.P. 12(b)(6) motion. Under Fed.R.Civ.P. 12(b)(1):Any factual dispute upon which the existence of jurisdiction may turn is for the court alone, and not a jury to determine. Appellate review of such a factual determination is on a clearly erroneous basis. | Trial court may receive any competent evidence pertaining to motion to dismiss for lack of subject matter jurisdiction, if motion is factual attack on jurisdictional allegations of complaint including claim of untimeliness of required notice. | Must a district court consider competent evidence pertaining to a motion to dismiss for lack of jurisdiction over the subject matter without converting the motion into a motion for summary judgment? | 034626.docx | LEGALEASE-00144977-LEGALEASE-00144978 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 11578 | Laguna Auto Body v. Farmers Ins. Exch., 231 Cal. App. 3d 481 | 307A+563 | A prerequisite to the imposition of the dismissal sanction is that the party has willfully failed to comply with a court order. (Young v. Rosenthal, supra, 212 Cal.App.3d at p. 114, 260 Cal.Rptr. 369.) Here, the motion to compel answers was granted by the court on September 22, 1989. Appellants contend they ultimately complied on September 29. However, the responses consisted of several objections, not answers. | Prerequisite to imposition of dismissal sanction is that party has willfully failed to comply with court order. West's Ann.Cal.C.C.P. S 2023. | Is a prerequisite to imposition of a dismissal sanction that a party has willfully failed to comply with a court order? | 035036.docx | LEGALEASE-00144545-LEGALEASE-00144547 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 11579 | Olavarrieta v. St. Pierre, 902 So. 2d 566 | 13+70 | Article 561 of the Louisiana Code of Civil Procedure provides, in pertinent part:A. (1) An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years.(2) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been taken for a period of three years in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. The sheriff shall serve the order in the manner provided in Article 1314, shall execute a return pursuant to Article 12 | Statute governing abandonment of action imposes three requirements on plaintiffs to avoid abandonment: (1) plaintiffs must take some step towards prosecution of lawsuit, and in this context, a "step" is defined as taking formal action before the court which is intended to hasten suit toward judgment, or the taking of a deposition with or without formal notice; (2) the step must be taken in the proceeding and, with exception of formal discovery, must appear in record of suit; and (3) the step must be taken within the legislatively prescribed time period of the last step taken by either party, and sufficient action by either plaintiff or defendant will be deemed a step. LSA-C.C.P. art. 561. | Is an action abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years? | Pretrial Procedure - Memo # 7117 - C - SN.docx | LEGALEASE-00034637-LEGALEASE-00034638 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 11580 | Fox v. Merrill Lynch & Co., 453 F. Supp. 561 | 25T+178 | If it is not practical to separate a party's arbitrable and nonarbitrable claims, it may be appropriate to deny arbitration of any of the claims, or to defer arbitration until after adjudication of the nonarbitrable disputes. Sibley v. Tandy Corp., 543 F.2d 540, 543 (5th Cir. 1976), Cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977) (dictum); See American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821, 828 (2d Cir. 1968); Shapiro v. Jaslow, 320 F.Supp. 598, 560 (S.D.N.Y.1970).However, if the arbitrable and nonarbitrable portions of the controversy are separable, it is proper to stay judicial proceedings pending arbitration. Sibley v. Tandy Corp., supra, at 542-44; See Tepper Realty Co. v. Mosaic Tile Co., 259 F.Supp. 688, 693 (S.D.N.Y.1966) (semble). | If it is not practical to separate a party's arbitrable and nonarbitrable claims, it may be appropriate to deny arbitration of any of the claims, or to defer arbitration until after adjudication of nonarbitrable disputes; however, if arbitrable and nonarbitrable portions of controversy are separable, it is proper to stay judicial proceedings pending arbitration. | Is it appropriate to deny arbitration if it is not practical to separate a partys arbitrable and non arbitrable claims? | 007759.docx | LEGALEASE-00146418-LEGALEASE-00146419 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 11581 | In re Kellogg Brown & Root, 166 S.W.3d 732 | 25T+182(1) | Under "direct benefits estoppel," a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. R.J. Griffin & Co. at 160"61; Bailey, 364 F.3d at 268; Int'l Paper Co., 206 F.3d at 418 ("[T]he doctrine recognizes that a party may be estopped from asserting that the lack of his signature precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him."); Thomson"CSF, 64 F.3d at 778. Thus, a non-signatory plaintiff may be compelled to arbitrate if it seeks to enforce terms of a contract containing an arbitration provision. See R.J. Griffin & Co., 384 F.3d at 161"64; Bailey, 364 F.3d at 268; Bridas, 345 F.3d at 361"62 ("Direct benefits estoppel applies when a nonsignatory "knowingly exploits the agreement containing the arbitration clause." ") (quoting E.I. DuPont de Nemours & Co., 269 F.3d at 199); Int'l Paper Co., 206 F.3d at 418.For example, if a non-signatory's breach-of-warranty and breach-of-contract claims are based on certain terms of a written contract, then the non-signatory cannot avoid an arbitration provision within that contract. See Int'l Paper Co., 206 F.3d at 418. If, however, a non-signatory's claims can stand independently of the underlying contract, then arbitration generally should not be compelled under this theory. See, e.g., R.J. Griffin & Co., 384 F.3d at 164; Bridas, 345 F.3d at 362. | Under "direct benefits estoppel," a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. | When does direct benefits estoppel apply in arbitration? | 007781.docx | LEGALEASE-00146440-LEGALEASE-00146441 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11582 | McDonnell v. United States, 136 S. Ct. 2355 | 63+1(1) | In sum, an "official act" is a decision or action on a "question, matter, cause, suit, proceeding or controversy." The "question, matter, cause, suit, proceeding or controversy" must involve a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific and focused that is "pending" or "may by law be brought" before a public official. To qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding or controversy," or agree to do so. That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official. Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)"without more"does not fit that definition of "official act." | To qualify as an "official act," for purposes of the federal bribery statute, which makes it a crime for a public official to demand anything of value in return for being influenced in the performance of any official act, the public official must make a decision or take an action on a question, matter, cause, suit, proceeding or controversy, or agree to do so; that decision or action may include using his official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act by another official. 18 U.S.C.A. SS 201(a)(3), (b)(2). | "What qualifies as an ""official act""?" | Bribery - Memo #864 - C - LB.docx | ROSS-003288940-ROSS-003288941 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11583 | In re DeFelice, 172 B.R. 130 | 135+4(2) | To be entitled to the exemptions provided under Florida law, a person must be domiciled in Florida for the greater part of 180 days immediately preceding the date of the filing of the petition. In re Dixson, 153 B.R. 594 (Bankr.M.D.Fla.1993). A person is domiciled in Florida if "he has voluntarily fixed his abode, not for a mere special or temporary purpose, but with a present intention of making it his permanent home."Minickv.Minick, 111Fla.469,149So.483,487 (1933) (quoting 19 Corpus Juris 392). The Florida Supreme Court in Minick also quotes to Corpus Juris to distinguish the difference between "domicile" and "residence":[Domicile] is of more extensive signification and includes, beyond mere physical presence at the particular locality, positive or presumptive proof of an intention to constitute it a permanent abiding place. "Residence" is of a more temporary character than "domicile." "Residence" simply indicates the place of abode, whether permanent or temporary; "domicile" denotes a fixed, permanent residence, to which, when absent, one has the intention of returning. | Under Florida law, person is "domiciled" in Florida if he has voluntarily fixed his abode in that state, not for mere special or temporary purpose, but with present intention of making it his permanent home. | When is a person domiciled in a state under state law? | 014511.docx | LEGALEASE-00145918-LEGALEASE-00145919 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 11584 | Greer v. Shook, 503 S.W.3d 571 | 260+64 | The Court in Hysaw also discussed a related issue in double-fraction cases, known as the "estate misconception" doctrine, which applies to the mineral estate that a landowner retains when he leases his land to an operator, known as the possibility of reverter. Hysaw, 483 S.W.3d at 10. When a landowner leases his land to an operator, it is typically through a conveyance of fee simple determinable with a possibility of reverter in the entire mineral estate, which does not become a possessory right until the lease expires. Jupiter Oil v. Snow, 819 S.W.2d 466, 468 (Tex. 1991). The possibility of a reverter under a lease is a separate estate, and just like any other mineral interest or estate, the landowner may then convey his possibility of reverter, or a fraction thereof, to a third party. Id. ("Texas courts have long recognized that the owner of a mineral estate can sell or assign the possibility of reverter."). | The possibility of a reverter under a mineral lease is a separate estate, and just like any other mineral interest or estate, the landowner may then convey his possibility of reverter, or a fraction thereof, to a third party. | Can the owner of a mineral estate sell or assign the possibility of reverter? | Mines and Minerals - Memo #230 - C - CSS.docx | ROSS-003287541-ROSS-003287542 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 11585 | Brady v. Sec. Home Inv. Co., 640 S.W.2d 731 | 260+55(1) | [The Moody, Kobs, and Hawkins II deeds conveyed several different types of interests in land"some described by lot and block or by metes and bounds, some described as mineral interests, and some described as royalty interests. A grantor may reserve mineral rights and may also reserve royalties, bonuses and rentals, either one, more, or all. Schlitter v. Smith, 128 Tex. 628, 101 S.W.2d 543, 544 (Tex.Comm'n.App.1937, opinion adopted). While a reservation or grant of minerals or mineral rights without limitation would include royalties, bonuses, and rentals, a reservation or grant of only royalty rights does not include bonuses or rentals but encompasses only an interest in oil, gas or minerals paid, received, or realized as "royalty." Id; Guess v. Harmonson, 4 S.W.2d 124 (Tex.Civ.App."Fort Worth 1928, no writ). Viewing the instruments as a whole, in our opinion the particular descriptions of the "royalty interest" in the property in dispute clearly demonstrate without uncertainty or ambiguity an intention to limit the grant to the royalty interest. The mere recital of grantor's source of title does not enlarge the grant of the specified royalty interest. See: Coffee v. Manly, 166 S.W.2d 377 (Tex.Civ.App."Eastland 1942, writ ref'd). | Grantor may reserve mineral rights and may also reserve royalties, bonuses and rentals, either one, more, or all. | "Can a grantor reserve minerals or mineral rights and also royalties, bonuses, and rentals?" | Mines and Minerals - Memo #239 - C - CSS.docx | ROSS-003289137-ROSS-003289138 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 11586 | Caldwell v. Fulton, 31 Pa. 475 | 260+55(1) | The minerals beneath the surface of a tract of land may be conveyed by deed, distinct from the right to the surface. | The minerals beneath the surface of a tract of land may be conveyed by deed, distinct from the right to the surface. | "Can minerals beneath the surface of a tract of land be conveyed by deed, distinct from the right to the surface?" | Mines and Minerals - Memo #243 - C - CSS.docx | LEGALEASE-00035125-LEGALEASE-00035126 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 11587 | MacLeod v. Fernandez, 101 F.2d 20 | 296+2 | The unquestioned rule is that a pension granted by the public authorities is not a contractual obligation but a gratuitous allowance, in the continuance of which the pensioner has no vested right; and that a pension is accordingly terminable at the will of the grantor, either in whole or in part. It is, however, conceded that where any particular payment under a pension has become due, the pensioner has a vested right to it. In some instances pension funds are maintained in part by compulsory contributions of the beneficiaries thereof. This is generally true where the beneficiaries are policemen or firemen; and in such a case the statute creating the fund ordinarily authorizes the proper official to retain weekly or monthly a certain per cent of the prospective pensioner's pay. By the great weight of authority the fact that a pensioner has made such compulsory contribution does not give him a vested right in the pension. In such cases the amount retained, though called part of the officer's compensation, he never received or controlled, nor could he prevent its appropriation to the fund. | A "pension" granted by public authorities is not a contractual obligation but a gratuitous allowance, in the continuance of which the pensioner has no vested right, and the pension is terminable at the will of the grantor, either in whole or in part. | Are pensions terminable at the will of the grantor? | Pension - Memo 40 - MS.docx | ROSS-003289028 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11588 | State, to Use of Mosher v. Bennett, 31 Mo. 462 | 307A+726 | When a second application is made for the continuance of a cause on account of the absence of a material witness, the affidavit must state the facts the absent witness is expected to prove more specifically than in a pleading. The affidavit must also show that due diligence has been used to procure the testimony of the witness, or some excuse therefor. Appeal from St. Louis Court of Common Pleas. | The affidavit must also show that due diligence has been used to procure the testimony of the witness, or some excuse for the want of it. | Should an affidavit show that due diligence has been used to procure the testimony of the witness? | 033135.docx | LEGALEASE-00146036-LEGALEASE-00146037 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11589 | Larus v. Bank of Commerce & Tr. Co., 149 Tenn. 126 | 307A+726 | Some six weeks after this appeal had been perfected by contestant to the Court of Civil Appeals, he proposed a compromise of the case with the defendant John Erskine, one of the principal devisees of the will of November 27, 1917, and a compromise was finally effected by the contestant being paid the sum of $1,500, and the surrender of a note of $1,200, which the testatrix held against Humphreys at the time of her death. This settlement was later reported to Mrs. Annie Gavin Traylor, the mother of the original complainants to the present action. The executor of the will was not a party to this compromise, and did not undertake to distribute the estate until the appeal to the Court of Civil Appeals was disposed of, which was on February 12, 1920. On that date the case was finally reached by the Court of Civil Appeals on its docket, and no assignments of error having been filed by the contestant, or other parties interested, the judgment of the circuit court was affirmed, and the court remained in session thereafter until April 21, 1920, without any effort being made by anyone to set aside the judgment of affirmance, or without making application to be allowed to file assignments of error. The Court of Civil Appeals adjourned on April 21, 1920, and though the time for filing a writ of error did not expire until June 14, 1921, no such writ was ever applied for. The undisputed proof, therefore, shows that contestant was given ample opportunity to prosecute his contest in the circuit court. The case had been reset in that court for his accommodation, and in order that he might procure the testimony of the witness Gavin, which he did not attempt to do, and it was agreed that the case would be tried on the date to which it had been postponed. The court was therefore within its rights when it refused to grant contestant a second continuance on account of the absence of the witness Gavin; and, when the court declined to grant contestant another continuance or | Where a will contest had been once reset for accommodation of contestant, and in order that he might procure the testimony of a witness, which he did not attempt to do, held, that the court properly refused to grant contestant a second continuance on account of the absence of such witness. | "Will the court grant a second continuance due to absence of witness so that he might procure the testimony of a witness, which he did not attempt to do?" | Pretrial Procedure - Memo # 5850 - C - NS.docx | ROSS-003288995-ROSS-003288996 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 11590 | Masons Concrete of Crystal River v. Corbin Well Pump & Supply, 364 So. 2d 824 | 307A+746 | As we have stated before, when a party fails to comply with a pretrial order "the sanction imposed must be commensurate with the offense." Travelers Insurance Co. v. Rodriquez, 357 So.2d 464, 465 (Fla. 2d DCA 1978). In Hart v. Weaver, 364 So.2d 524, at 525 (Fla. 2d DCA 1978) we similarly said: The imposition of the most severe sanctions contemplated by the rules should be reserved for those occasions where the violation is flagrant, persistent or willful or otherwise aggravated. There are many alternatives available to the trial court in securing proper respect for and compliance with its orders; i. e., imposition of costs or attorney's fees or other demonstrable damages to the opposite party. | When party fails to comply with pretrial order, the sanction imposed must be commensurate with the offense. | "When a party fails to comply with a pretrial order, must sanctions be commensurate with offense?" | Pretrial Procedure - Memo # 6554 - C - SKG.docx | ROSS-003304877-ROSS-003304879 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11591 | Landeche v. McSwain, 96-0959 (La. App. 4 Cir. 2/5/97), 688 So. 2d 1303 | 307A+44.1 | A trial court is endowed with the inherent power to enforce its lawful pre-trial orders and to attach sanctions for non-compliance and is vested with much discretion in selecting the appropriate sanctions. Allwein v. Horn, 558 So.2d 810 (La.App. 5th Cir.1990). Where a party fails to follow a court's pre-trial order, the burden is on that party to show why he failed to so comply. Id. | Trial court is endowed with inherent power to enforce its lawful pretrial orders and to attach sanctions for noncompliance and is vested with much discretion in selecting appropriate sanctions. | "Where a party fails to follow a trial court's pretrial order, is it the burden of that party to show why he failed to comply it?" | Pretrial Procedure - Memo # 6991 - C - CK.docx | ROSS-003331855-ROSS-003331856 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 11592 | In re Estate of Gordon, 222 Mich. App. 148 | 307A+560 | The personal representative alternatively maintains that petitioner's pleading should have been dismissed because she failed to serve a summons with a complaint in the manner prescribed by MCR 2.105. Generally, defective service of process will not warrant dismissal of a party's pleading unless the service failed to notify the defendant of the action "within the time prescribed for service." MCR 2.105(J)(3). However, a complete failure of service, e.g., failure to serve the summons with the complaint within the time for service, warrants dismissal for improper service of process. Holliday v. Townley, 189 Mich.App. 424, 426, 473 N.W.2d 733 (1991). Still, a party who enters a general appearance and contests a cause of action on the merits submits to the court's jurisdiction and waives service of process objections. Penny v. ABA Pharmaceutical Co (On Remand), 203 Mich.App. 178, 181, 511 N.W.2d 896 (1993). | Complete failure of service, such as failure to serve summons with complaint within time for service, warrants dismissal for improper service of process. | Does complete failure of service warrant dismissal for improper service of process? | Pretrial Procedure - Memo # 7068 - C - AP.docx | ROSS-003288582-ROSS-003288583 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 11593 | Eckman v. Centennial Sav. Bank, 757 S.W.2d 392 | 307A+483 | When Eckman, Nicholson and Hutchison failed to answer the request for admissions or move for more time to answer, they were deemed admitted by operation of Rule 169. Elkins v. Jones, 613 S.W.2d 533 (Tex.Civ.App."Austin 1981, no writ). No motion to deem unanswered requests for admissions admitted need be filed. Packer v. First Texas Savings Assoc., 567 S.W.2d 574 (Tex.Civ.App."Eastland 1978, writ ref'd n.r.e.).This is so whether or not the court signed an order deeming the requests admitted. Elkins at 534. | No motion to deem unanswered requests for admissions admitted need be filed, regardless of whether court signed order deeming requests admitted. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | Should no motion to deem unanswered requests for admissions admitted be filed? | 035209.docx | LEGALEASE-00145798-LEGALEASE-00145799 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 11594 | Lindquist v. Mid-Am. Orthopaedic Surgery, 325 S.W.3d 461 | 307A+552 | The trial court's November 23, 2009 judgment amends and corrects its July 24, 2009 judgment, in response to and in accordance with Respondent's motion to amend, and therefore Appellant's second and third points on appeal, asserting error in the July 24, 2009 judgment, are moot. If the trial court amends its judgment, the amended judgment becomes the new judgment for all purposes. Koppenaal v. Director of Revenue, 987 S.W.2d 446, 449 (Mo.App. W.D.1999). A case must be dismissed as moot whenever an event occurs that renders a decision unnecessary. Two Pershing Square, L.P. v. Boley, 981 S.W.2d 635, 638 (Mo.App. W.D.1998). Points II and III are thus denied as moot. | A case must be dismissed as moot whenever an event occurs that renders a decision unnecessary. | "Should a case be dismissed as moot, whenever an event occurs that renders a decision unnecessary?" | Pretrial Procedure - Memo # 7238 - C - SK.docx | ROSS-003330465-ROSS-003330466 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11595 | Thomas v. N. Carolina Dep't of Human Res., 124 N.C. App. 698 | 170B+2109 | For over a century, both the courts of this State and the federal courts have generally refrained from addressing questions deemed moot. See, e.g., Crawley v. Woodfin, 78 N.C. 4, 4 (1878); Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 132"33, 40 L.Ed. 293, 293"94 (1895). In State court, the exclusion of moot questions is considered "a principle of judicial restraint ...," N.C. Council of Churches v. State of North Carolina, 120 N.C.App. 84, 88, 461 S.E.2d 354, 357 (1995), aff'd, 343 N.C. 117, 468 S.E.2d 58 (1996), while in federal court the mootness doctrine is considered to have constitutional jurisdictional underpinnings. E.g., Honig v. Doe, 484 U.S. 305, 317"18, 108 S.Ct. 592, 600"02, 98 L.Ed.2d 686, 703 (1988). Despite this difference in origin, the limits of the mootness doctrine are articulated almost identically in the federal courts and the courts of this State. E.g., In re Jackson, 84 N.C.App. 167, 170"71, 352 S.E.2d 449, 452 (1987) (citing Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494"95, 23 L.Ed.2d 1, 4 (1969)). If anything, the mootness doctrine is less restrictive in the courts of North Carolina than in the federal courts. See, e.g., Matthews v. Dept. of Transportation, 35 N.C.App. 768, 770, 242 S.E.2d 653, 654 (1978). | In state court, exclusion of moot questions is considered principle of judicial restraint, while in federal court mootness doctrine is considered to have constitutional jurisdictional underpinnings. | When does exclusion of moot questions in state courts apply? | 035259.docx | LEGALEASE-00145981-LEGALEASE-00145982 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 11596 | Stewart v. Butler, 27 Misc. 708 | 13+9 | This is an action for ejectment. The defendants move--First, that the plaintiff's attorneys be required to produce and file written evidence of their authority to commence this action; and, secondly, that the complaint be dismissed, because the action is vexatious and clearly without merit, and not brought in good faith, but solely as an endeavor to extract money from the defendants as the price of peace, and because of the irresponsibility of the plaintiff. So far as the first branch of the motion is concerned, it is expressly authorized by sections 1512 and 1513 of the Code of Civil Procedure, and must be granted, the plaintiff's proceedings being stayed until such authority is produced. | Plaintiff claims to be the heir of a person alleged to have died intestate in 1876, leaving a widow who died in 1886. In 1891 plaintiff brought ejectment to recover possession of certain premises owned by the deceased at his death, and the complaint was twice dismissed on the ground that plaintiff had not proved that he was an heir of the deceased. An appeal was taken, but not prosecuted, and plaintiff never paid any of the costs awarded against him, and is irresponsible. At the time of beginning the ejectment suit at bar, plaintiff began several other similar actions against persons owning and holding real estate which was owned by the deceased at his death. In his motion to dismiss the action, defendant alleges, and plaintiff does not deny, that the suit is brought in bad faith, without any reasonable expectation of success, with full information of the want of relationship between plaintiff and the deceased, and that the deceased died testate, and his will was probated, and that the action is to compel defendant to buy peace. Counsel for plaintiff do not make affidavit that they believe plaintiff has a cause of action, nor is it shown how the 20-year statute of limitations is to be avoided. It is not alleged that plaintiff has any other or further evidence as to his status as heir than that produced at the trial in 1891. Held, that the action is vexatious and harassing. | Can a complaint be dismissed on motion where litigation is vexatious and clearly without merit? | 035281.docx | LEGALEASE-00145482-LEGALEASE-00145483 | Order, SA | 0.5 | 1 | 0 | 0 | 1 | |
| 11597 | Birdo v. Schwartzer, 883 S.W.2d 386 | 307A+552 | Trial courts have broad discretion in dismissing frivolous or malicious in forma pauperis actions. Thomas v. Texas Dept. of Criminal Justice, Inst. Div., 848 S.W.2d 797, 798 (Tex.App."Houston [14th Dist.] 1993, writ denied). We review a dismissal under section 13.001 by determining whether the court abused its discretion. See Tex.Civ.Prac. & Rem.Code Ann. " 13.001; Johnson v. Peterson, 799 S.W.2d 345, 347 (Tex.App."Houston [14th Dist.] 1990, no writ). Abuse of discretion is determined by whether the court acted without reference to any guiding principles. Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). Stated another way: Was the act of the court arbitrary or unreasonable? Smithson v. Cessna Aircraft Co., 665 S.W.2d 439, 443 (Tex.1984); Landry v. Travelers Insurance Co., 458 S.W.2d 649, 651 (Tex.1970). | Trial courts have broad discretion in dismissing frivolous or malicious in forma pauperis actions. V.T.C.A., Civil Practice & Remedies Code S 13.001. | Do courts have broad discretion in dismissing frivolous or malicious in forma pauperis actions? | Pretrial Procedure - Memo # 7292 - C - TM.docx | ROSS-003290020-ROSS-003290021 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 11598 | Vieira v. Doe, 813 So. 2d 1030 | 307A+563 | We recognize that " "where a party perpetrates a fraud on the court which permeates the entire proceedings, dismissal of the entire case is proper." "Desimone v. Old Dominion Ins. Co., 740 So.2d 1233, 1234 (Fla. 4th DCA 1999)(quoting Savino v. Fla. Drive In Theatre Mgmt., Inc., 697 So.2d 1011, 1012 (Fla. 4th DCA 1997)). This power, however, "should be exercised cautiously and sparingly, and only upon a clear showing of fraud, pretense, collusion, or similar wrongdoing." Tri Star Invs., Inc. v. Miele, 407 So.2d 292, 293 (Fla. 2d DCA 1981). The standard of appellate review is whether the trial court abused its discretion in dismissing the case with prejudice. See Hogan v. Dollar Rent A Car Sys., Inc., 783 So.2d 1211, 1212 (Fla. 4th DCA 2001). | Where a party perpetrates a fraud on the court which permeates the entire proceedings, dismissal of the entire case is proper; this power should be exercised cautiously and sparingly, and only upon a clear showing of fraud, pretense, collusion, or similar wrongdoing. | Is dismissal of the entire case proper where a party perpetrates a fraud on the court which permeates the entire proceedings? | 035340.docx | LEGALEASE-00145729-LEGALEASE-00145730 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 11599 | A.D. v. State, 736 N.E.2d 1274 | 307A+552 | The long-standing rule in Indiana has been that a case is deemed moot when no effective relief can be rendered to the parties before the court. Matter of Lawrance, 579 N.E.2d 32, 37 (Ind.1991). When the controversy at issue in a case "has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved, the case will be dismissed." Dunn v. State, 163 Ind. 317, 321, 71 N.E. 890, 891 (1904). Although Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies, the Indiana Constitution does not contain any similar restraint. Matter of Lawrance, 579 N.E.2d at 37. However, Indiana appellate courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of "great public interest." Id. Cases found to fall within this exception typically contain issues likely to recur. Id. | When the controversy at issue in a case has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved, the case will be dismissed. | Will a case be dismissed when the controversy at issue in a case has been ended or settled? | Pretrial Procedure - Memo # 7379 - C - VA.docx | ROSS-003290053-ROSS-003290054 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11600 | Cherubino v. Fenstersheib & Fox, P.A., 925 So. 2d 1066 | 307A+563 | Trial courts have "the right and obligation to deter fraudulent claims from proceeding in court." Savino v. Fla. Drive In Theatre Mgmt., Inc., 697 So.2d 1011, 1012 (Fla. 4th DCA 1997). This is because "[o]ur courts have often recognized and enforced the principle that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve [its] ends." Hanono v. Murphy, 723 So.2d 892, 895 (Fla. 3d DCA 1998). To this end, ""where a party perpetrates a fraud on the court which permeates the entire proceedings, dismissal of the entire case is proper." "Desimone v. Old Dominion Ins. Co., 740 So.2d 1233, 1234 (Fla. 4th DCA 1999) (quoting Savino ). | Where a party perpetrates a fraud on the court which permeates the entire proceedings, dismissal of the entire case is proper. | "Where a party perpetrates a fraud on the court which permeates the entire proceedings, is a dismissal of the entire case proper?" | 035469.docx | LEGALEASE-00145841-LEGALEASE-00145842 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 11601 | Allwein v. Horn, 558 So. 2d 810 | 307A+746 | Although our jurisprudence is scant in discussing the appropriateness of dismissal as a sanction for failure to comply with orders given pursuant to article 1551, we do find guidance in jurisprudence pertaining to sanctions imposed for non-compliance with discovery orders. See Landry v. LeMaire, 527 So.2d 595 (La.App. 3d Cir.1988); Smith v. Allied Chemical Corp., 517 So.2d 250 (La.App. 1st Cir.1987), writ denied, 518 So.2d 510 (La.1988); Fulgham v. An Unknown Police Officer, 480 So.2d 417 (La.App. 4th Cir.1985). As with discovery sanctions, we find that the trial court is vested with much discretion in selecting the appropriate sanctions and its choice will not be reversed absent a clear showing that it abused that discretion. We are likewise cognizant that dismissal with prejudice is a severe penalty; thus it should be imposed only in extreme circumstances where the plaintiff is clearly aware that his non-compliance will result in dismissal of his action. However, where a party fails to follow a court's pre-trial order, the burden is on that party to show why he failed to so comply. | Dismissal with prejudice is a severe penalty and should be imposed only in extreme circumstances where plaintiff is clearly aware that his noncompliance with statutory provision outlining pretrial procedure and empowering district court with discretion to order pretrial conference and issue orders concerned therewith will result in dismissal of action. LSA-C.C.P. art. 1551. | Is dismissal with prejudice a severe penalty and should be imposed only in extreme circumstances? | Pretrial Procedure - Memo # 7440 - C - CK.docx | ROSS-003288698-ROSS-003288699 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 11602 | Livingston v. State, Dep't of Corr., 481 So. 2d 2 | 307A+563 | Pretrial procedure is governed by Fla.R.Civ.P. 1.200. The use of dismissal as a sanction is specifically permitted only for failure to attend the pretrial conference, Rule 1.200(c), an offense not alleged herein, but a court may dismiss a case as a sanction for failure to comply with any legitimate order. Lifeguard Corp. v. U.S. Home Corp., 429 So.2d 94 (Fla.2d DCA 1983). While the exercise of this authority is discretionary, it must be kept in mind that dismissal is a drastic remedy which should be used only in extreme situations. Lifeguard, supra, citing Flaska v. Little River Marine Construction Co., 389 F.2d 885 (5th Cir.1968), cert. den. 392 U.S. 928, 885 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). | Court may dismiss case as sanction for failure to comply with any legitimate order. West's F.S.A. RCP Rule 1.200. | Can a court dismiss case as sanction for failure to comply with any legitimate order? | Pretrial Procedure - Memo # 7451 - C - RF.docx | ROSS-003302158 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 11603 | S. Gum Co. v. Laylin, 66 Ohio St. 578 | 371+2005 | A domestic corporation is given life and continued existence by the state, and this life and existence, with their accompanying powers, constitute the franchise; and, this franchise being valuable and given by the state, the state may impose a franchise tax thereon to the amount of the value thus conferred and continued, the same as, in taxation by assessment, the public first bestows a special benefit upon the property, and then takes back, by way of assessment, a part or all it has thus conferred. Walsh v. Barron, 61 Ohio St. 15, 55 N. E. 164, 76 Am. St. Rep. 354. A foreign corporation can do business in this state only upon such terms and conditions as the state may impose, and therefore a franchise tax may be imposed upon a foreign corporation for the privilege of doing business in this state. It therefore follows that a franchise tax may be imposed on both domestic and foreign corporations alike. An excise tax may also be imposed on corporations to compensate the state for the additional burden sustained by the state and the people by reason of property being held by artificial bodies, the persons comprising such bodies being exempt from liability to a great extent for the debts thereof. This ground of excise taxation was recognized in Adler v. Whitbeck, 44 Ohio St. 539, 9 N. E. 672, and was there applied to the liquor traffic, because that business was there shown to impose additional burdens upon the state. So the aggregation of capital by corporations imposes additional burdens, and requires regulations not applicable to individuals. | Franchise tax may be imposed by general assembly on corporations, both foreign and domestic, doing business in state. | Can franchise tax be imposed by general assembly on both foreign and domestic corporations that are doing business in the state? | 045863.docx | LEGALEASE-00146281-LEGALEASE-00146282 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 11604 | State ex rel. Owen v. Donald, 160 Wis. 21 | 371+2005 | In making the fundamental law a government was created with limited functions, specified expressly or by necessary inference, and the power of taxation limited to carry out such functions.The purpose for which the power of taxation may be used is covered in general terms by section 5, Art. VIII, of the constitution and is denominated "expenses of the state."The power to appropriate money out of the state treasury is limited by the power of taxation to create a fund to appropriate from. | In making the fundamental law a government was created with limited functions, specified expressly or by necessary inference, and the power of taxation limited to carry out such functions. | Was the government created with limited functions towards taxation? | 045879.docx | LEGALEASE-00146299-LEGALEASE-00146300 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 11605 | Long v. Silver, 248 F.3d 309 | 25T+179 | A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract. For example, in J.J. Ryan & Sons, 863 F.2d 315 (4th Cir.1988), we explained that when allegations against "a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." See id. at 320"21; see also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993) (holding that because claims against the non-signatory were "intimately founded in and intertwined with" a contract containing an arbitration clause, signatory was estopped from refusing to arbitrate those claims (internal quotation marks omitted)); Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836, 840"41 (7th Cir.1981) (finding a signatory equitably estopped from repudiating arbitration clause in agreement on which suit against non-signatory was based). | A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract. | Can a non-signatory invoke an arbitration clause under ordinary state-law principles of agency or contract? | Alternative Dispute Resolution - Memo 748 - RK.docx | ROSS-003285943-ROSS-003285944 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11606 | Wilson v. Harris, 304 S.W.3d 824 | 307A+561.1 | "A complaint is subject to dismissal under rule 12.02(6) for failure to state a claim if an affirmative defense clearly and unequivocally appears on the face of the complaint." Anthony v. Tidwell, 560 S.W.2d 908, 909 (Tenn.1977). | A complaint is subject to dismissal for failure to state a claim if an affirmative defense clearly and unequivocally appears on the face of the complaint. Rules Civ.Proc., Rule 12.02(6). | Will a defense be available on a motion to dismiss for failure to state a claim? | 036199.docx | LEGALEASE-00146860-LEGALEASE-00146861 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 11607 | Niewiadomski v. United States, 159 F.2d 683 | 34+58(3) | The appellant's final contention is that the United States is estopped under the facts and circumstances of this case from denying that the appellant stood in loco parentis toward the insured. She relies particularly upon the long period which elapsed after issuance of the insurance contract without the insured being advised that the designated beneficiary was not a permitted one, the fact that the insured acted in good faith and with no intent to defraud, and the fact that the United States had collected and retained all of the premiums due and payable under the contract. No authority is cited or found to support the claim that the Administrator of Veteran Affairs owed any duty to the insured to verify the fact that the relationship of the beneficiary was actually as claimed by the insured. The certificate of insurance provides on its face that it is granted "under the authority of the National Service Life Insurance Act of 1940, and subject in all respects to the provisions of such Act, of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted. * * * " The Act limited to specific relationships those who were eligible as beneficiaries. It is not enough that the insured acted in good faith. In order to create estoppel it is necessary that misrepresentation be made by the party sought to be estopped. It is not shown that any officer or agent of the United States misrepresented any fact to the insured. He knew the facts; they didn't. In any event, it appears well settled that in matters of his kind the United States is neither bound nor estopped by the acts of its officers and agents in entering into an agreement to do what the law does not permit. Government officers may not waive the provisions of the National Service Life Insurance Act. Wilber National Bank of Oneonta, New York v. United States, 294 U.S. 120, 123, 55 S.Ct. 362, 79 L.Ed. 798; Coleman v. United States, 6 Cir., 100 F.2d 903, 905; United States v. Valndza, 6i Cir., 81 F.2d | Government officers may not waive the provisions of the National Service Life Insurance Act. National Service Life Insurance Act of 1940, SS 601-618, 601(f), 602(g), 38 U.S.C.A. SS 801-818, 801(f), 802(g). | Can government officers waive the provisions of the National Service Life Insurance Act? | 008727.docx | LEGALEASE-00148018-LEGALEASE-00148019 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 11608 | United States v. Rucker, 435 F.2d 950 | 34+20.10(2) | It should be noted that the language of this regulation is mandatory"the registrant who refuses to be inducted must be warned of the felonious nature of his act and the penalties attached to it. Of course, this requirement is not part of the Selective Service Act itself. Nevertheless, because of its mandatory language, the Ninth Circuit has held that failure to comply with the regulation, where such failure is not caused by the actions of the registrant, is a valid defense to a charge of failing to submit to induction. Chernekoff v. United States, 219 F.2d 721, 725 (9th Cir. 1955); Parrott v. United States, 370 F.2d 388, 395 (9th Cir. 1966), cert. denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967); accord, United States v. Kroll, 402 F.2d 221 (3d Cir. 1968), cert. denied, 393 U.S. 1043, 89 S.Ct. 672, 21 L.Ed.2d 592 (1969). We have found no other cases which have directly passed on this question, although it has been raised in two other circuits. See Ashton v. United States, 404 F.2d 95 (8th Cir. 1968), cert. denied, 394 U.S. 960, 89 S.Ct. 1308, 22 L.Ed.2d 561 (1969); United States v. Kurki, 384 F.2d 905 (7th Cir. 1967), cert. denied, 390 U.S. 926, 88 S.Ct. 861, 19 L.Ed.2d 987 (1968). | Registrant who refuses to be inducted must be warned of felonious nature of his act and penalties attached to it. Military Selective Service Act of 1967, S 12, 50 U.S.C.A. App. S 462. | Does a registrant who refuses to be inducted have to be warned of the felonious nature of his act and the penalties attached to it? | 008742.docx | LEGALEASE-00147992-LEGALEASE-00147993 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11609 | United States v. Jennings, 160 F.3d 1006 | 63+11 | Direct evidence of intent is unnecessary, however. To prove bribery under " 201, the government is not required to prove an expressed intention (or agreement) to engage in a quid pro quo. Such an intent may be established by circumstantial evidence. See United States v. Massey, 89 F.3d 1433, 1439 (11th Cir.1996); United States v. Biaggi, 909 F.2d 662, 684 (2d Cir.1990). Also, the government need not show that the defendant intended for his payments to be tied to specific official acts (or omissions). Bribery requires the intent to effect an exchange of money (or gifts) for specific official action (or inaction), but each payment need not be correlated with a specific official act. See Arthur, 544 F.2d at 734. Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action. See id. In other words, the intended exchange in bribery can be "this for these" or "these for these," not just "this for that." Further, it is not necessary for the government to prove that the payor intended to induce the official to perform a set number of official acts in return for the payments. The quid pro quo requirement is satisfied so long as the evidence shows a "course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor." Id. (internal quotation omitted). Thus, all that must be shown is that payments were made with the intent of securing a specific type of official action or favor in return. For example, payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf. See id. This sort of "I'll scratch your back if you scratch mine" arrangement constitutes bribery because the payor made payments with the intent to exchange them for specific official action. | Government is not required to prove an expressed intention or agreement to engage in a quid pro quo in order to prove bribery of public official; such an intent may be established by circumstantial evidence. 18 U.S.C.A. S 201(b)(1)(A). | "Is the government, in a bribery prosecution, obligated to prove a specific intent or quid pro quo?" | 011996.docx | LEGALEASE-00147562-LEGALEASE-00147564 | Order, SA | 0.88 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11610 | Williams v. Christian, 335 So. 2d 358 | 63+1(1) | The elements of the offense of bribery are as follows: 1) knowledge on the part of the accused of the official capacity of the person to whom the bribe is offered, 2) the offering of a thing of value, and 3) the intent to influence the official action of the person to whom the bribe is offered. The offense of bribery as punished in this state applied to the one who Corruptly offers, gives, or receives anything of value to influence the receiver's action. Section 7486, while infected with the element of bribery, Is much broader in scope than bribery statutes. It reaches only the acceptor of the bribe, but it also includes the crime of extortion and affects the officer if he accepts a bribe for the performance or nonperformance, or violation of any act, rule or regulation that he may be called on to perform. | Elements of offense of bribery are: knowledge on part of accused of official capacity of person to whom bribe is offered; offering of thing of value; and intent to influence official action of person to whom bribe is offered. West's F.S.A. S 838.012. | What are the elements of the offense of bribery? | 09438.docx | LEGALEASE-00096441-LEGALEASE-00096442 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 11611 | United States v. Rooney, 37 F.3d 847 | 63+2 | In beginning our analysis, it is important to understand the context in which " 666 was enacted. Section 666 was originally enacted in 1984 in response to several federal appellate decisions that held that state and local government officials and members of private organizations that distribute federal monies did not fall within the definition of a "public official" subject to the provisions of the federal bribery statute, 18 U.S.C. " 201. See S.Rep. No. 225, 98th Cong., 2d Sess. 369 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3510. According to the Senate Report, " 666 was enacted "to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a Federal program." Id. The provision, modeled after the bribery statute, 18 U.S.C. " 201, expanded the class of individuals subject to federal penalties for prohibited conduct to virtually anyone who either receives federal funds or participates in a federal program that meets the jurisdictional threshold. Congress intended the terms of the statute to be "construed broadly, consistent with the purpose of this section to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery." Id. at 3511. Thus, as is evident from the circumstances surrounding its adoption, " 666's manifest purpose is to safeguard finite federal resources from corruption and to police those with control of federal funds. See generally, United States v. Crozier, 987 F.2d 893, 898"900 (2d Cir.), cert. denied, 510 U.S. 880, 114 S.Ct. 222, 126 L.Ed.2d 177 (1993). | Manifest purpose of statute prohibiting theft or bribery concerning programs receiving federal funds is to safeguard finite federal resources from corruption and to police those with control of federal funds. 18 U.S.C.A. S 666. | Is safeguarding finite federal resources from corruption one of federal bribery statutes purposes? | Bribery - Memo #915 - C-JL_57453.docx | ROSS-003296627-ROSS-003296629 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 11612 | Patterson v. Twp. Bd. of Ravenna Twp., 229 Mich. 133 | 200+77(1) | That the stockholders of the power company were financially interested in the action taken, there can be no doubt. It clearly appears that a large sum must be expended in raising the bridge and its approaches if the 29-foot head is to be maintained. There can be no question but that the interest of the three members of the board who voted in favor of discontinuance disqualified them from acting in the matter. Wilson v. Township Board, 87 Mich. 240, 49 N. W. 572; Locke v. Highway Commissioner, 107 Mich. 631, 65 N. W. 558; Smith v. Hubbell, 142 Mich. 637, 106 N. W. 547; In re Rochester, 208 N. Y. 188, 101 N. E. 875, 47 L. R. A. (N. S.) 151. The action of the board was therefore a nullity.] | Where members of township board were interested as stockholders in power corporation for whose benefit portion of highway was discontinued, board's action thereon was a nullity. | "Will the interest of members of the board as stockholders in Power Corporation for whose benefit portion of the highway was discontinued, make its actions a nullity?" | 10809.docx | LEGALEASE-00094135-LEGALEASE-00094136 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 11613 | Neff v. Brady, 527 S.W.3d 511 | 302+16 | Even where another jurisdiction's substantive law applies, Texas law governs matters of remedy and procedure in Texas courts. Moonlight Invs., Ltd. v. John, 192 S.W.3d 890, 894 (Tex. App."Eastland 2006, pet. denied). In Texas, a party who wishes to complain about a defect or obscurity in a pleading is required to identify the defect or obscurity in writing and to bring the special exception to the trial court's attention before a judgment is signed. See Tex. R. Civ. P. 90, 91; Friesenhahn v. Ryan, 960 S.W.2d 656, 658 (Tex. 1998); Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 405 (Tex. App."Houston [1st Dist.] 2005, pet. denied) ("A special exception is a proper method to determine whether a plaintiff has pleaded a cause of action."). Texas follows a fair notice standard for pleading, which looks to whether the opposing party can ascertain from the pleadings the nature and basic issues of the controversy and what type of evidence might be relevant. Low v. Henry, 221 S.W.3d 609, 612 (Tex. 2007); see also Tex. R. Civ. P. 45 (requirements for pleadings). Pleadings must provide the opposing party with enough information to enable him to prepare a defense. In re Lipsky, 460 S.W.3d 579, 590 (Tex. 2015). The purpose of a special exception is to compel the clarification of the opposing party's pleading if it is not sufficiently specific or fails to plead a cause of action. See Baylor Univ. v. Sonnichsen, 221 S.W.3d 632, 635 (Tex. 2007). | Pleadings must provide the opposing party with enough information to enable him to prepare a defense. Tex. R. Civ. P. 45. | Should pleadings provide the opposing party with enough information to enable him to prepare a defense? | 023586.docx | LEGALEASE-00147748-LEGALEASE-00147749 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 11614 | Yeager v. Yeager, 228 N.C. App. 562 | 307A+552 | Although defendant did not indicate which subsection of Rule 12(b) he was relying on, he did properly raise mootness as an issue of subject matter jurisdiction. Because a moot claim is not justiciable, and a trial court does not have subject matter jurisdiction over a non-justiciable claim, mootness is properly raised through a motion under N.C. Gen.Stat. " 1A"1, Rule 12(b)(1). See McAdoo v. University of North Carolina at Chapel Hill, N.C.App. 736 S.E.2d 811, 814"15, disc. rev. denied, N.C. ,740 S.E.2d 465 (2013); Sharpe v. Park Newspapers of Lumberton, Inc., 317 N.C. 579, 585"86, 347 S.E.2d 25, 30 (1986). | Because a moot claim is not justiciable, and a trial court does not have subject matter jurisdiction over a non-justiciable claim, mootness is properly raised through a motion to dismiss for lack of subject matter jurisdiction. Rules Civ.Proc., Rule 12(b)(1), West's N.C.G.S.A. S 1A-1. | Does the court have subject matter jurisdiction over a non-justiciable claim? | 10066.docx | LEGALEASE-00095688-LEGALEASE-00095689 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11615 | Paternostro v. Falgoust, 2003-2214 | 307A+590.1 | Article 561 has been construed as imposing three requirements on plaintiffs. First, plaintiffs must take some "step" towards prosecution of their lawsuit. In this context, a "step" is defined as taking formal action before the court, which is intended to hasten the suit toward judgment, or the taking of a deposition with or without formal notice. Second, the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit. Third, the step must be taken within the legislatively prescribed time period of the last step taken by either party. Clark, 00-3010, pp. 5-6 (La.5/15/01), 785 So.2d at 784. | To avoid dismissal of an action as abandoned, plaintiff must: (1) take some "step" such as formal action before the court, which is intended to hasten suit toward judgment, or take deposition with or without formal notice, (2) step must be taken in proceeding and, with exception of formal discovery, must appear in record of suit, and (3) step must be taken within the legislatively prescribed time period of last step taken by either party. LSA-C.C.P. art. 561. | When does a party take a step in court? | 035587.docx | LEGALEASE-00147698-LEGALEASE-00147699 | Order, SA | 0.29 | 1 | 0 | 0 | 1 | |
| 11616 | Davis v. Kewanee Hosp., 2014 IL App (2d) 130304 | 307A+561.1 | Dr. Davis appeals the dismissal of his complaint under section 2"619(a)(9) of the Code (735 ILCS 5/2"619(a)(9) (West 2012)). A section 2"619(a)(9) motion admits the legal sufficiency of the complaint but asserts some affirmative matter that avoids the legal effect of or defeats the claim. Dewan v. Ford Motor Co., 363 Ill.App.3d 365, 368, 299 Ill.Dec. 719, 842 N.E.2d 756 (2005). An affirmative matter is a type of defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. Id. We review a dismissal under section 2"619(a)(9) de novo. Smith v. Waukegan Park District, 231 Ill.2d 111, 115, 324 Ill.Dec. 446, 896 N.E.2d 232 (2008). | An "affirmative matter," for purposes of a motion to dismiss on ground that a claim is barred by other affirmative matter, is a type of defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. S.H.A. 735 ILCS 5/2-619(a)(9). | What is an affirmative matter? | 035601.docx | LEGALEASE-00147574-LEGALEASE-00147575 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 11617 | Estate of Paulk v. Lott, 217 So. 3d 747 | 307A+581 | "The presence of an aggravating factor may serve to bolster or strengthen the case for a dismissal ." Holder, 54 So.3d at 200 (31). However, neither "contumacious conduct" nor an "aggravating factor" is required to support a Rule 41(b) dismissal.Louisville Tire Ctr., 204 So.3d at 1254 n.2 & (9). | The presence of an aggravating factor may serve to bolster or strengthen the case for a dismissal; however, neither contumacious conduct nor an aggravating factor is required to support a dismissal for failure to prosecute under the rules of civil procedure. Miss. R. Civ. P. 41(b). | Is contumacious conduct or an aggravating factor required to support a dismissal for failure to prosecute under law? | 10968.docx | LEGALEASE-00094087-LEGALEASE-00094088 | SA, Sub | 0.05 | 0 | 0 | 1 | 1 | |
| 11618 | Speedy Gonzalez Landscaping v. O.C.A. Const., 385 Ill. App. 3d 699 | 307A+561.1 | Dismissal of a cause of action pursuant to section 2"619(a)(9) is proper where the claim against defendant is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 2000). A section 2"619(a)(9) motion to dismiss admits the legal sufficiency of the complaint, but asserts an affirmative defense or other legal matter effectively defeating the claim. Van Meter v. Darien Park District, 207 Ill.2d 359, 367, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003). The trial court's order granting defendant's section 2"619 motion to dismiss is reviewed de novo. Van Meter, 207 Ill.2d at 368, 278 Ill.Dec. 555, 799 N.E.2d 273. | A motion to involuntarily dismiss an action based upon certain defects or defenses admits the legal sufficiency of the complaint, but asserts an affirmative defense or other legal matter effectively defeating the claim. S.H.A. 735 ILCS 5/2-619(a)(9). | Will a motion for involuntary dismissal assert a defense defeating the claim? | Pretrial Procedure - Memo # 7584 - C - KBM_57568.docx | ROSS-003293946-ROSS-003293947 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 11619 | Niesner v. Kusch, 186 Cal. App. 3d 291 | 307A+590.1 | Thus we conclude that if an action is referred to arbitration or if arbitration is pending during the six-month period preceding a section 583 deadline, as here, the tolling provision of section 1141.17, as amended effective January 1, 1984, is applicable. | If action is referred to arbitration or if arbitration is pending during six-month period preceding five-year deadline for bringing an action to trial, provision allowing tolling of five-year period due to judicial arbitration is applicable. West's Ann.Cal.C.C.P. S 1141.17; S 583 (Repealed). | Is the limitations period for bringing action to trial after action is commenced not tolled if a case is sent to arbitration? | 10290.docx | LEGALEASE-00094974-LEGALEASE-00094975 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 11620 | Sellers v. Rudert, 395 Ill. App. 3d 1041 | 307A+679 | With a section 2"619 motion to dismiss, the movant admits the legal sufficiency of the plaintiff's complaint but raises an affirmative defense or other matter that avoids or defeats the plaintiff's claim. DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229, 236 (2006). "In ruling on such a motion, the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." Melena v. Anheuser"Busch, Inc., 219 Ill.2d 135, 141, 301 Ill.Dec. 440, 847 N.E.2d 99, 103 (2006). A section 2"619 motion presents a question of law, and thus our review of the trial court's ruling on the motion is de novo. DeLuna, 223 Ill.2d at 59, 306 Ill.Dec. 136, 857 N.E.2d at 236. | In ruling on a motion to dismiss based on certain defects or defenses, the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. S.H.A. 735 ILCS 5/2-619. | When will all pleadings and supporting documents be interpreted most favourable to the non-moving party? | 11110.docx | LEGALEASE-00094174-LEGALEASE-00094176 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 11621 | Wilson v. Molda, 396 Ill. App. 3d 100 | 307A+561.1 | "For a motion to be properly brought under section 2"619, the motion (1) must be filed "within the time for pleading," and (2) must concern one of nine listed grounds." River Plaza Homeowner's Ass'n v. Healey, 389 Ill.App.3d 268, 275, 328 Ill.Dec. 592, 904 N.E.2d 1102 (2009), quoting 735 ILCS 5/2"619(a) (West 2006). | For a motion to be properly brought under statute governing involuntary dismissal based on certain defects or defenses, the motion must be filed within the time for pleading, and must concern one of nine listed grounds. S.H.A. 735 ILCS 5/2-619. | What are the factors involved for a motion to dismiss to be properly filed? | 11140.docx | LEGALEASE-00094539-LEGALEASE-00094540 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 11622 | Tate v. Dep't of Transp., 261 Ga. App. 192 | 307A+593 | Here the court entered no orders following the appointment of the process servers on February 19, 1997, until five and one-half years later when it ordered that the case stood dismissed for want of prosecution. Thus, the case stood automatically dismissed once the five years had passed. Tate argues that she relied upon the DOT's counsel to have the court enter a consent order to continue the discovery period near the end of the five years. No competent evidence or court finding in the record substantiates this allegation. Moreover, we note that an agreement to continue the case is insufficient to prevent an automatic dismissal; only a written from the court that is actually entered in the record suffices. | An agreement to continue the case is insufficient to prevent an automatic dismissal; only a written order from the court that is actually entered in the record suffices. West's Ga.Code Ann. SS 9-2-60(b), 9-11-41(e). | Is an agreement to continue the case insufficient to prevent an automatic dismissal? | Pretrial Procedure - Memo # 7726 - C - SK.docx | ROSS-003313514-ROSS-003313515 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 11623 | Voisin v. Int'l Companies & Consulting, 924 So. 2d 277 | 307A+581 | There are two exceptions to the abandonment rule set forth in LSA-C.C.P. art. 561. The first exception is based on the concept of contra non valentem, and it is applicable in situations where the plaintiff is prevented by circumstances beyond his control from prosecuting the case. The second exception is applicable when the defendant waives the right to assert abandonment by taking actions inconsistent with the intent to treat the case as abandoned. Clark, 785 So.2d at 784-85. The jurisprudence has uniformly held that LSA-C.C.P. art. 561 is to "be liberally construed in favor of maintaining a plaintiff's suit." Id. at 785. Additionally, the supreme court has declined to allow suits to be dismissed as abandoned based on technical formalities. Id. at 786. Any action or step taken to move the case toward judgment should be considered. LSA-C.C.P. art. 561 was not intended to dismiss those cases in which the plaintiff has clearly demonstrated that he does not intend to abandon the action. Jones v. Phelps, 95-0607 (La.App. 1 Cir. 11/9/95), 665 So.2d 30, 34, writ denied, 95-2907 (La.2/2/96), 666 So.2d 1104. | Article on abandonment of actions is to be liberally construed in favor of maintaining plaintiff's suit. LSA-C.C.P. art. 561. | Is the article governing abandonment of an action to be liberally construed in favor of maintaining a plaintiff's suit? | 11220.docx | LEGALEASE-00094267-LEGALEASE-00094268 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11624 | In re Scarlett Z.-D., 2015 IL 117904 | 134+10 | A motion to dismiss under section 2"615 of the Code of Civil Procedure (735 ILCS 5/2"615 (West 2012)) tests the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2"619 (735 ILCS 5/2"619 (West 2012)) admits the legal sufficiency of the plaintiff's claim, but asserts certaindefects or defenses outside the pleading that defeat the claim. Patrick Engineering, Inc. v. City of Naperville, 2012 IL 113148, 364 Ill.Dec. 40, 976 N.E.2d 318; Wallace v. Smyth, 203 Ill.2d 441, 447, 272 Ill.Dec. 146, 786 N.E.2d 980 (2002). A section 2"619 motion to dismissmust be brought "within the time for pleading." 735 ILCS 5/2"619(a) (West 2012). Lack of standing is an affirmative matter that is properly raised under section 2"619. Glisson v. City of Marion, 188 Ill.2d 211, 220, 242 Ill.Dec. 79, 720 N.E.2d 1034 (1999).Specifically, lack of standing under section 601(b)(2) of the Marriage Act is an affirmative defense that is forfeited unless raised in a motion to dismiss during the time of the pleadings. In re Custody of K.P.L., 304 Ill.App.3d 481, 486, 238 Ill.Dec. 78, 710 N.E.2d 875 (1999) (collecting cases). | Lack of standing under the Marriage and Dissolution of Marriage Act is an affirmative defense that is forfeited unless raised in a motion to dismiss during the time of the pleadings. S.H.A. 750 ILCS 5/601(b)(2). | Can lack of standing be raised in a motion to dismiss based upon certain defects or defenses? | 11329.docx | LEGALEASE-00094089-LEGALEASE-00094090 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 11625 | Vanguard Energy Servs. v. Shihadeh, 2017 IL App (2d) 160909, 11, 82 N.E.3d 1284 | 307A+686.1 | " "A motion to dismiss, pursuant to section 2-619 admits the legal sufficiency of the complaint, but asserts an affirmative defense or matter that avoids or defeats the claim." " Eighteen Investments, Inc. v. NationsCredit Financial Services Corp., 376 Ill. App. 3d 527, 532, 315 Ill.Dec. 506, 876 N.E.2d 1096 (2007) (quoting DeLuna v. Burciaga, 223 Ill. 2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229 (2006)). In considering a motion to dismiss under section 2-619, a court must interpret all pleadings and supporting materials in favor of the nonmoving party. In re Chicago Flood Litigation, 176 Ill. 2d 179, 189, 223 Ill.Dec. 532, 680 N.E.2d 265 (1997). | A motion to dismiss based on defect or defense admits the legal sufficiency of the complaint, but asserts an affirmative defense or matter that avoids or defeats the claim. 735 Ill. Comp. Stat. Ann. 5/2-619. | What are the purposes of a motion to dismiss based upon certain defects and defenses? | 036224.docx | LEGALEASE-00147545-LEGALEASE-00147546 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 11626 | Am. Family Mut. Ins. Co. v. Tyler, 2016 IL App (1st) 153502 | 307A+561.1 | A motion pursuant to section 2"619 of the Code of Civil Procedure (735 ILCS 5/2"619 (West 2012)) "admits the legal sufficiency of the plaintiff's complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim." Relf v. Shatayeva, 2013 IL 114925, 20, 375 Ill.Dec. 726, 998 N.E.2d 18; DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229 (2006). "Affirmative matter" includes any defense other than a negation of an essential allegation of plaintiff's cause of action.Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 115, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). A municipality's assertion that it is immune from suit is an appropriate subject of a motion under section 2"619. Smith v. Waukegan Park District, 231 Ill.2d 111, 115, 324 Ill.Dec. 446, 896 N.E.2d 232 (2008); Brooks v. Daley, 2015 IL App (1st) 140392, 14, 390 Ill.Dec. 838, 29 N.E.3d 1108. We review the trial court's ruling on a section 2"619 motion de novo. Smith, 231 Ill.2d at 115, 324 Ill.Dec. 446, 896 N.E.2d 232; DeLuna, 223 Ill.2d at 59, 306 Ill.Dec. 136, 857 N.E.2d 229. | "Affirmative matter," as basis for a motion to dismiss based on certain defects or defenses, includes any defense other than a negation of an essential allegation of plaintiff's cause of action. S.H.A. 735 ILCS 5/2-619. | What does affirmative matter for a motion to dismiss based on certain defects or defenses include? | 036317.docx | LEGALEASE-00147622-LEGALEASE-00147623 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 11627 | State v. Owen, 133 N.C. App. 543 | 352H+26 | An aider or abettor is defined as a "person who is actually or constructivelypresent at the scene of the crime and who aids, advises, counsels, instigates or encouragesanother to commit the offense." State v. Barnette, 304 N.C. 447, 458, 284 S.E.2d 298, 305(1981). A person who is present, aiding and abetting in a rape actually perpetrated by another isequally guilty with the actual perpetrator of the crime. State v. Martin, 17 N.C.App. 317, 318,194 S.E.2d 60, 61 (1973). Even though a woman is physically incapable of committingrape upon another woman, she may still be convicted of rape if she aids and abets a maleassailant in the rape of another woman. Id. | Even though a woman is physically incapable of committing rape upon another woman, she may still be convicted of rape if she aids and abets a male assailant in the rape of another woman. G.S. S 14-27.2(a)(1). | Can a woman be convicted of rape? | Sex Offence - Memo 8 - RK_57684.docx | ROSS-003283095-ROSS-003283096 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 11628 | People v. Dancy, 102 Cal. App. 4th 21 | 352H+30 | Unlike a man who engages in an act of sexual intercourse with a conscious woman under the reasonable but mistaken impression that the woman consents (People v. Mayberry (1975) 15 Cal.3d 143, 125 Cal.Rptr. 745, 542 P.2d 1337) or a man who engages in sex with a conscious minor under the reasonable but mistaken impression that the minor is an adult (People v. Hernandez (1964) 61 Cal.2d 529, 39 Cal.Rptr. 361, 393 P.2d 673), a man who intentionally engages in sexual intercourse with a woman he knows to be unconscious is clearly aware that he is wrongfully depriving the woman of her right to withhold her consent to the act at the time of penetration. Since a woman may withdraw her consent to a sex act even after the initiation of sexual intercourse (People v. Roundtree (2000) 77 Cal.App.4th 846, 851, 91 Cal.Rptr.2d 921), neither a woman's actual "advance consent" nor a man's belief in "advance consent" could possibly eliminate the wrongfulness of the man's conduct in knowingly depriving the woman of her freedom of choice both at the initiation of and during sexual intercourse. Consequently, a person who commits the prohibited act necessarily acts with a "wrongful" intent. Thus, rape of an unconscious person is not a strict liability offense because it has not just one but two separate mens rea requirements. A defendant may be convicted of rape of an unconscious person only if he had both knowledge of the person's unconsciousness and the wrongful intent to engage in an act of sexual intercourse with an unconscious person.] | Rape of an unconscious person is not a strict liability offense, because it has not just one, but two separate mens rea requirements; a defendant may be convicted of rape of an unconscious person only if he had both knowledge of the person's unconsciousness and the wrongful intent to engage in an act of sexual intercourse with an unconscious person. West's Ann.Cal.Penal Code S 261(a)(4). | Can a person be convicted of rape if he had sexual intercourse with a person who was unconscious? | 043099.docx | LEGALEASE-00147898-LEGALEASE-00147899 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11629 | United States v. Babcock, 339 F. Supp. 1281 | 34+20.6(6) | It has been held that a registrant seeking to present a prima facie showing of qualification for a IV-D classification must show that the ministry is his vocation rather than merely an avocation. It is also necessary that he show he regularly conducts religious activities and that he have recognized standing as a minister to a congregation. McCoy v. United States, 403 F.2d 896 (5th Cir. 1968), Wiggins v. United States, 261 F.2d 113 (5th Cir. 1958), cert. denied, 359 U.S. 942, 79 S.Ct. 723, 3 L.Ed.2d 676 (1959). The IV-D classification is intended only for the leaders of religious faiths and not for all the members generally. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). The burden of establishing a prima facie showing of qualification for the IV-D classification is upon the registrant. Camp v. United States, 413 F.2d 419 (5th Cir. 1969), cert. denied, 396 U.S. 968, 90 S.Ct. 451, 24 L.Ed.2d 434 (1969). Although the courts have had difficulty in dealing with the IV-D classification as it might be applied to Jehovah's Witnesses, it seems the determination of qualification turns on the result of a balancing of the secular against the religious interests and activities of the registrant. Wiggins, supra. The cases, particularly Camp and McCoy, indicate that it has been the position of the Jehovah's Witnesses that the society would not seek ministerial classification except for those who qualify as "Pioneers" and as "Congregation Servants" and for those who devote sufficient time to their ministry to claim that it is their vocation rather than their avocation. Under the facts as these were presented to the local board concerning the amount of time registrant spent on his work as a cement finisher in relation to the amount of time he spent on his ministry and in light of registrant's statement to the local board that he did not in fact perform the ceremonies of his religion, it seems clear that registrant did not make a prima facie showing of entitlement to the IV-D | Registrant seeking to present prima facie showing of qualification for IV-D classification must show that the ministry is his vocation rather than merely an avocation and must show he regularly conducts religious activities and that he had recognized standing as a minister to a congregation. | Will a registrant qualify for a ministerial classification if ministry is his vocation? | 008760.docx | LEGALEASE-00148822-LEGALEASE-00148823 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 11630 | State Fid. Mortg. Co. v. Varner, 740 S.W.2d 477 | 38+90 | The trial court properly concluded that the Bank's only assignable interest was in the deficiency remaining after Ford's collateral was applied to the appellee's indebtedness. An assignee obtains only the right, title, and interest of his assignor at the time of his assignment, and no more. Houchins v. Scheltz, 590 S.W.2d 745, 751 (Tex.Civ.App."Houston [14th Dist.] 1979, no writ); Carter v. Associates Discount Corp., 550 S.W.2d 399, 401 (Tex.Civ.App."Amarillo 1977, no writ). Accordingly, an assignee may recover only those damages potentially available to his assignor. See Houchins v. Scheltz, 590 S.W.2d at 751; Carter v. Associates Discount Corp., 550 S.W.2d at 401. The trial record shows that the Bank had already foreclosed on the note's collateral when it assigned the promissory note to appellant. At the time of the assignment sale to appellant, the Bank had an interest only in the balance between the value of the note and the value it received upon sale of the collateral. Accordingly, since the Bank assigned its interest in the balance to appellant, appellant may recover for only that balance due in its capacity as the Bank's assignee. | Assignee obtains only right, title and interest of his assignor at time of assignment and thus, may recover only those damages potentially available to assignor. | What rights does an assignee obtain from the assignor at the time of assignment? | Bills and Notes -Memo 608 -DB_57856.docx | ROSS-003280151-ROSS-003280152 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11631 | Green v. Burrows, 47 Mich. 70 | 195+76 | Our statute provides that "the guaranty of the payment or of the collection of any promissory note shall hereafter be negotiable, and shall pass to the holder of the note, whether indorsed thereon, or written or printed upon a separate paper; and the assignment, indorsement or transfer of any promissory note, the payment or collection of which shall have been guarantied, shall operate as and be an assignment of all guaranties of any such note; and the holder of such note may maintain an action upon any and all such guaranties in his own name, subject to all equities existing between the guarantor and the person to whom such guaranty was made." Comp.Laws, " 1564. The bank after selling to the plaintiff executed to him a written assignment, but this was not important. Waldron v. Harring, 28 Mich. 493. The guaranty was an indorsement as well; and the note after the indorsement would pass by mere delivery. A joint suit against all the parties is expressly authorized by the statute. Comp.Laws, " 4160. | Under Comp.Laws, S 1564, so providing, a guaranty of the payment of a note is negotiable, and an assignment of the note operates as an assignment of the guaranty, and allows the holder to sue in his own name on such guaranty, subject only to the equities between the guarantor and the person to whom it was given. | Can a general guaranty of payment of a negotiable promissory note pass with the assignment and delivery of the note to the holder? | 010526.docx | LEGALEASE-00148506-LEGALEASE-00148507 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 11632 | Triffin v. Pomerantz Staffing Servs., 370 N.J. Super. 301 | 83E+521 | A holder in due course is "one who takes an instrument for value, in good faith, and without notice of dishonor or any defense against or claim to it on the part of any person." Triffin v. Quality Urban Hous. Partners, 352 N.J.Super. 538, 541, 800 A.2d 905, 907 (App.Div.2002). Of particular importance is N.J.S.A. 12A:3-302(a)(1), which further defines "holder in due course" as "the holder of an instrument if ... the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity." | A "holder in due course" is one who takes an instrument for value, in good faith, and without notice of dishonor or any defense against or claim to it on the part of any person. N.J.S.A. 12A:3-302, subd. a(1). | Who is a holder in due course? | 010567.docx | LEGALEASE-00148711-LEGALEASE-00148712 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 11633 | Nat'l Bank of La Crosse v. Funke, 215 Wis. 541 | 309+128(1) | "A person secondarily liable on the instrument is discharged by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved." | Provision in Negotiable Instruments Law that release of principal debtor releases person secondarily liable on the instrument unless the holder's right of recourse against party secondarily liable is expressly reserved held to have changed common-law rule that consent by the surety to release of the principal leaves surety bound (St.1933, S 117.38(5)). | Can holder retain right of action against person secondarily liable? | 010577.docx | LEGALEASE-00148496-LEGALEASE-00148497 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11634 | O'Gasapian v. Danielson, 284 Mass. 27 | 83E+412 | The findings do not bear out the contention that the defendant's interest in the note was not assigned by him to the intervener. The assignment was in statutory form, G. L. (Ter. Ed.) c. 183, appendix, form (9), was under seal and purported to assign the note as well as the mortgage. See Merritt v. Harris, 102 Mass. 326, 327, 328. The intention to assign the note was clearly manifested. See Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N. E. 827. Such an assignment was effective to transfer to the intervener the defendant's interest in the note even if the note was not endorsed (Westminster National Bank v. Graustein, 270 Mass. 565, 574, 170 N. E. 621) or delivered. Strong v. Jackson, 123 Mass. 60, 62, 25 Am. Rep. 19; Herman v. Connecticut Mutual Life Ins. Co., 218 Mass. 181, 185, 105 N. E. 450, Ann Cas. 1916A, 822; Ingram v. Mandler (C. C. A.) 56 F.(2d) 994, 996; Watson v. Goldstein, 176 Minn. 18, 24, 222 N. W. 509. Since the assignment was under seal it was valid and irrevocable by the assignor even without actual consideration. Williston on Contracts, " 440. And, as between the assignee and the maker of the note, neither consideration nor notice to the maker was essential to an assignment. Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N. E. 827. See G. L. (Ter. Ed.) c. 107, " 72; Brannan's Negotiable Instruments Law (5th Ed.) 472, 473. It follows, therefore, that the defendant had no equitable interest in the note or mortgage. | Assignment of note and mortgage under seal held valid and irrevocable by assignor even without consideration. G.L.(Ter.Ed.) c. 183, appendix, form (9). | Can assignment of note and mortgage under seal held valid and irrevocable by assignor even without consideration? | Bills and Notes- Memo 680-PR_57910.docx | ROSS-003292242-ROSS-003292243 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 11635 | Austin, Nichols & Co. v. Gross, 98 Conn. 782 | 8.30E+05 | The decision must be based upon the terms of G. S. " 4378, which is a part of and identical with section 20 of the Negotiable Instruments Law as drafted by the commissioners. We should give to the sections of this law a liberal construction so as to secure to them a reasonable meaning and to effectuate the intention of its framers and to make it workable and serviceable to the important business to which it relates.It is a codification of the law upon this subject and embraces all of the law upon this subject to which its terms expressly or by necessary implication may be held to relate. Its framers sought to adopt the best rule prevailing in this country. Occasionally they have departed from their primary purpose and sought the rule elsewhere. Section 20 (G. S. 4378) was copied from the German Exchange Act, and some of its provisions are a departure from the prevailing rule in this country. This section has been subjected to severe criticism, but it has outlived it, due to the fact that the business world approves of it because it increases the negotiability of commercial paper and simplifies the proof in the recovery. Article by Charles L. McKeehan, published in Brannan's Negotiable Instrument Law. | The Negotiable Instruments Law should be given a liberal construction so as to secure to its sections a reasonable meaning and to effectuate the intention of its framers to codify the law upon the subject and to adopt therein the best rule prevailing in this country, or occasionally a rule adopted from another country contrary to the rule in this country. | Should Negotiable Instruments Law be given liberal construction? | 010608.docx | LEGALEASE-00148745-LEGALEASE-00148746 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 11636 | Robertson Banking Co. v. Brasfield, 202 Ala. 167 | 172H+622 | It is settled law that a bank, which pays out the funds of a depositor on a forged check or indorsement, does so at its peril, and the depositor can recover the amount so paid, unless the bank can show that the payment was made as the proximate result of the conduct or negligence of the depositor; and this rule applies to a forged indorsement of a fictitious payee in the same way as it does to the forged indorsement of a real or existing payee. Michie on Banks, pp. 1095, 1096; Jordan-Marsh Co. v. Nat. Bank, 201 Mass. 397, 87 N.E. 740, 22 L.R.A. (N.S.) 250; Armstrong v. Nat. Bank, 46 Ohio St. 512, 22 N.E. 866, 6 L.R.A. 625, 15 Am.St.Rep. 655; Shipman v. Bank of New York, 126 N.Y. 318, 27 N.E. 371, 12 L.R.A. 791, 22 Am.St.Rep. 821; Chism v. Bank, 96 Tenn. 641, 36 S.W. 387, 32 L.R.A. 778, 54 Am.St.Rep. 863; Harmon v. Old Detroit Bank, 153 Mich. 73, 116 N.W. 617, 17 L.R.A. (N.S.) 514, 126 Am.St.Rep. 467; Hatton v. Holmes, 97 Cal. 208, 31 Pac. 1131; U.S. v. Nat. Bank, 205 Fed. 433, 123 C.C.A. 501; Vaglian Brothers v. Bank of England, 23 Q.B.D. 243. | Rule that bank paying depositor's check on forged indorsement is liable to him, unless payment was proximate result of his conduct or negligence, applies to check payable to fictitious person, unless it was so payable to drawer's knowledge, making it, under Code 1907, S 4966, subd. 3, payable to bearer. | When is the payment made upon forged indorsements are at the peril of the bank? | 010623.docx | LEGALEASE-00148735-LEGALEASE-00148736 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 11637 | State v. Adcox, 312 Mo. 55 | 63+1(1) | The general rule, laid down in Corpus Juris, vol. 9, p. 404, is as follows: "In order to bribe an officer, he must be in the discharge of a legal or official duty; in other words, there can be no bribery of any official to do a particular act, unless the law requires or imposes upon him the duty of acting. A moral duty is insufficient." | There can be no bribery of any official to do particular act unless law requires or imposes upon him duty of acting. | Can there be bribery of a public official to do a particular act if the law does not require or impose upon him a duty of acting? | 012434.docx | LEGALEASE-00148242-LEGALEASE-00148243 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 11638 | United States v. Evans, 572 F.2d 455 | 316P+1056 | Evans makes much of the lack of any evidence that he actually performed an "official act" for Tate in his position with H.E.W. He contends that he committed no offense because his duties were related to the FISL program, not the NDSL program, and that it was thus impossible for an "official act" to flow from Evans to Tate in return for the payment from Tate to Evans. However, the statutes upon which Evans' convictions under counts eleven, thirteen and fourteen are based, in general, prohibit the acceptance by a government official of any extraneous compensation or thing of value for official conduct. More specifically, it is not necessary that the official actually engage in identifiable conduct or misconduct nor that any specific quid pro quo be contemplated by the parties nor even that the official actually be capable of providing some official act as quid pro quo at the time. As a prefatory premise, we note that both the conflict of interest statute, 18 U.S.C.A. s 203, and the unlawful gratuity statute,18 U.S.C.A. s 201, must be broadly construed in order to accomplish the legislative purpose which they manifest. See United States v. Anderson, 509 F.2d 312, 333 (D.C.Cir.1974), cert. denied, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975); Parks v. United States, 355 F.2d 167, 168 (5th Cir. 1965). | Both conflict of interest statute and unlawful gratuity statute must be broadly construed in order to accomplish legislative purpose which they manifest. 18 U.S.C.A. SS 201(g), 203(a). | "Why should 201, prohibiting bribery of public officials and witnesses, be broadly construed?" | 012460.docx | LEGALEASE-00148642-LEGALEASE-00148643 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11639 | People v. Rodriguez, 1 Misc. 3d 8 | 67+6 | California law deems first degree burglary a serious felony for the purpose of sentencing enhancements. ("" 667, subd. (d)(1), 1192.7, subd. (c).) Burglary is defined as entry into a building or certain structures and vehicles "with intent to commit grand or petit larceny or any felony." (" 459.) First degree burglary is defined as "burglary of an inhabited dwelling house, vessel, ... which is inhabited and designed for habitation, floating home, ... or trailer coach, ... or the inhabited portion of any other building ..." (" 460, subd. (a).) Section 459 defines "inhabited" as "currently being used for dwelling purposes, whether occupied or not." "[I]nhabited dwelling house" means a structure where people ordinarily live and which is currently being used for dwelling purposes. [Citation.]" (People v. Fleetwood (1985) 171 Cal.App.3d 982, 987, 217 Cal.Rptr. 612.) CALJIC No. 14.52 provides that an "inhabited dwelling house" is "a structure which is currently used as a dwelling whether occupied or not." | "Inhabited dwelling house," under first degree burglary statute, is a structure where people ordinarily live and which is currently being used for dwelling purposes. West's Ann.Cal.Penal Code SS 459, 460. | What are inhabited dwelling houses in the context of burglary? | Burglary - Memo 259 - RK.docx | LEGALEASE-00038287-LEGALEASE-00038288 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 11640 | LaRouche v. Fed. Election Comm'n, 28 F.3d 137 | 156+1 | Having concluded that the Commission had not enunciated a new rule, we move on to petitioners' invocation of the doctrine of estoppel. Specifically, they note that the financial information submitted with their requests for post-DOI matching payments provided the Commission with full information as to the amount of their NOCO and of their post-DOI contributions. They then argue that because the Commission certified the matching payments it is now trying to recover, petitioners were warranted in accepting the payments as properly made and in acting in reliance on that understanding. A private party asserting estoppel against the United States Government must demonstrate, however, that the latter has engaged in "affirmative misconduct," Conax Florida Corp. v. United States, 824 F.2d 1124, 1131 (D.C.Cir.1987) (citing INS v. Miranda, 459 U.S. 14, 17, 103 S.Ct. 281, 282"83, 74 L.Ed.2d 12 (1982)). None is alleged here. | Private party asserting estoppel against United States Government must demonstrate that the latter has engaged in affirmative misconduct. | Should a party asserting estoppel against the government show affirmative misconduct? | 017902.docx | LEGALEASE-00149015-LEGALEASE-00149016 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11641 | Brown v. Novak, 17 Conn. Supp. 76 | 200+77(1) | Originally the claim of discontinuance was as of 1868, which was later changed to 1923. In discontinuing a highway, the statutory method must be strictly followed; Greist v. Amrhyn, 80 Conn. 280; and the approbation of the town must be of the precise act of discontinuance made by the selectmen. This approbation "might be given before or after action by the selectmen." New London v. N. Y. N. H. & H. R. Co., 85 Conn. 595. | Under statute providing that public highway can be discontinued by action of town selectmen and approbation of the town, in discontinuing a highway, the statutory method must be strictly followed, and the approbation of the town must be of the precise act of discontinuance made by the selectmen, and this approbation might be given before or after action by the selectmen. Gen.St.1949, S 2147 (C.G.S.A. S 13-31). | Should the approbation of the town be of the precise act of discontinuance of highway? | Highway- Memo 195-ANM_57957.docx | ROSS-003278561 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |
| 11642 | State v. State Highway Comm'n, 129 Kan. 192 | 200+146 | Under chapter 225 of the Laws of 1929, relating to the construction, improvement, and maintenance of a state highway system wherein provision is made for reimbursement to taxpayers of the assessments made upon their lands for roads in the state highway system, built under the benefit district plan, the state highway commission in making reimbursement is not authorized to pay interest on assessments made or upon bonds issued for deferred payments of assessments payable in installments at fixed times. | Highway commission in making reimbursement for assessments held not authorized to pay interest on assessments or on bonds. Laws 1929, c. 225, SS 17, 18. | Is the state highway commission authorized to pay interest on reimbursement of assessments? | Highways -Memo 337 - DB_58277.docx | ROSS-003319872-ROSS-003319873 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 11643 | Champlin Ref. Co. v. Corp. Comm'n of State of Okl., 286 U.S. 210 | 260+92.2 | In Oklahoma, as generally elsewhere, landowners do not have absolute title to the gas and oil that may permeate below the surface. These minerals, differing from solids in place such as coal and iron, are fugacious and of uncertain movement within the limits of the pool. Every person has the right to drill wells on his own land and take from the pools below all the gas and oil that he may be able to reduce to possession including that coming from land belonging to others, but the right to take and thus to acquire ownership is subject to the reasonable exertion of the power of the state to prevent unnecessary loss, destruction, or waste. And that power extends to the taker's unreasonable and wasteful use of natural gas pressure available for lifting the oil to the surface, and the unreasonable and wasteful depletion of a common supply of gas and oil to the injury to others entitled to resort to and take from the same pool. Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 77, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Bandini Co. v. Superior Court, Los Angeles County, Cal., 284 U. S. 8, 19 et seq., 52 S. Ct. 103, 76 L. Ed. 136; Brown v. Spilman, 155 U. S. 665, 669, 15 S. Ct. 245, 39 L. Ed. 304; Walls v. Midland Carbon Co., 254 U. S. 300, 323, 41 S. Ct. 118, 65 L. Ed. 276; Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 3 A. L. R. 352; People v. Associated Oil Co., 211 Cal. 93, 100 et seq., 294 P. 717. | State's power to prevent unnecessary waste of oil and gas extends to taker's unreasonable and wasteful use of natural gas pressure and to unreasonable and wasteful depletion of common supply to injury of others. | Does every person have the right to drill wells on his own land and take from the pools below all the oil that he may be able to reduce to possession? | Mines and Mineral - Memo #46 - C - CSS_57751.docx | ROSS-003282279-ROSS-003282280 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 11644 | Multiple Use v. Morton, 353 F. Supp. 184 | 260+17(1) | In 1968, in Coleman, supra, the United States Supreme Court discussed the standard of Castle v. Womble. The Court unanimously approved, as complementary to its prudent-man test, the so-called "marketability" test under which in order to qualify as "valuable mineral deposits" under 30 U.S.C. " 23, it must be shown that the mineral can be "extracted, removed, and marketed at a profit." Coleman at 600, 88 S.Ct. at 1329. This test is applicable to all minerals. Converse v. Udall, supra, 399 F.2d at 621. The "marketability" and "prudent man" tests are not distinct standards, but rather are complementary in that the former is a refinement of the latter: "Under the mining laws Congress has made public lands available to people for the purpose of mining valuable mineral deposits and not for other purposes. The obvious intent was to reward and encourage the discovery of minerals that are valuable in an economic sense. Minerals which no prudent man will extract because there is no demand for them at a price higher than the cost of extraction and transportation are hardly economically valuable. Thus, profitability is an important consideration in applying the prudent-man test, and the marketability test which the Secretary has used here merely recognizes this fact." Coleman 390 U.S. at 602-603, 88 S.Ct. at 1330. | "Marketability" and "prudent man" test applicable in determining whether there has been discovery of valuable deposits so as to permit patent of mining claim are not distinct standards, but rather are complementary in that former is refinement of latter. 30 U.S.C.A. SS 22, 23. | Are the prudent-man test and the marketability test distinct standard or are they complementary? | 021183.docx | LEGALEASE-00148219-LEGALEASE-00148220 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11645 | Vogel v. Warsing, 146 F. 949 | 260+21(4) | It is contended that the court erred in denying the injunction pendente lite, for the reason that it appeared from the pleadings and the affidavits of the appellants that the Happy Four claim was located on January 1, 1901, on vacant unappropriated public land, and that the locations under which defendants claim the right to mine were made subsequent to that date, excepting that of the Panorama claim, and that, as to that claim, the location of the original locators was void for two reasons: First, that no affidavit of discovery of gold therein is shown by the record; and, second, that the location notice is defective for the lack of a proper reference to a natural object or permanent monument, as required by section 2324 of the Revised Statutes (U.S. Comp. St. 1901, p. 1426). The appellees, who claim to won the Panorama claim, are Clum, Cochran, and Briggs. They claim to be owners as purchasers, and not as locators. As the original locator and his witness were absent from Alaska, their affidavits could not be obtained. The validity of the location had been unchallenged for more than five years and up to the time of the commencement of the present action. It has been held that under such circumstances the certificate of location creates a presumption of discovery of mineral and of a valid location. Harris v. Equator Mining & Smelting Co. (C.C.) 8 Fed. 863, 5 McCrary, 14; Cheesman v. Shreeve (C.C.) 40 Fed. 791; Cheesman v. Hart (C.C.) 42 Fed. 98.Especially should such a presumption be indulged in a summary proceeding instituted at the beginning of a suit where the granting or withholding of an injunction depends upon facts presented by affidavits and rests largely in the discretion of the trial court, and where a subsequent locator attacks the title of the prior locator or that of his successor in interest. In view of these considerations, we are not authorized to say that the court erred in denying the injunction sought for, on the ground that the location notice failed to mention the discovery | Where the validity of a location had been unchallenged for more than five years up to the commencement of ejectment, and the original locators were absent from the country, the certificate of location created a presumption of discovery of mineral and of a valid location, especially on an application for a preliminary injunction depending on affidavits in which plaintiff appeared as a subsequent locator and attached the title of the prior locator and that of his successor in interest. | "Where mining claims have passed out of the hands of the original owners and have stood unchallenged for years, can the certificate of location be deemed presumptive evidence of discovery of a valid location?" | 021596.docx | LEGALEASE-00148188-LEGALEASE-00148190 | Order, SA | 0.8 | 1 | 0 | 0 | 1 | |
| 11646 | Sexual Minorities Uganda v. Lively, 960 F. Supp. 2d 304 | 221+103 | A variety of sources can be used to determine the content of international law: treaties, judicial decisions of the "courts of justice of appropriate jurisdictions," and controlling legislative or executive decisions. The Paquete Habana, 175 U.S. 677, 700, 20 S.Ct. 290, 44 L.Ed. 320 (1900); see also Sosa, 542 U.S. at 734, 124 S.Ct. 2739. In the absence of these controlling authorities, the Supreme Court has counseled that the existence and content of international law may be derived by reference to:the customs and usages of civilized nations; and, as evidence of these, to the works of jurists and commentators, who by years of labor, research and experience, have made themselves peculiarly well acquainted with the subjects of which they treat. Such works are resorted to by judicial tribunals, not for the speculations of their authors concerning what the law ought to be, but for trustworthy evidence of what the law really is. | Treaties, judicial decisions of the courts of justice of appropriate jurisdictions, and controlling legislative or executive decisions are among the variety of sources that can be used to determine the content of international law. | Are treaties a part of law? | 021747.docx | LEGALEASE-00148492-LEGALEASE-00148493 | Order, SA | 0.75 | 1 | 0 | 0 | 1 | |
| 11647 | Buchanan v. Gen. Cas. Co., 191 Wis. 2d 1 | 307A+563 | The sanction of dismissal is appropriate only when a party has not complied with a court's order and such conduct is egregious. Johnson, 162 Wis.2d at 276, 470 N.W.2d at 864. The party attempting to show that a dismissal is an erroneous exercise of discretion "must demonstrate "a clear and justifiable excuse" for the delay in prosecuting the case or for the failure to comply with procedure statutes under ["] 805.03, Stats." Englewood, 119 Wis.2d at 40, 349 N.W.2d at 719 (quotation omitted). | Sanction of claim dismissal is appropriate only when party has not complied with court order and such conduct is egregious. | Is a sanction of claim dismissal appropriate only when party has not complied with court order and such conduct is egregious? | 035019.docx | LEGALEASE-00148099-LEGALEASE-00148100 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 11648 | State ex rel. W. Virginia Secondary Sch. Activities Comm'n v. Oakley, 152 W. Va. 533 | 307A+552 | However, even where there is no actual controversy existing in a case it will not be dismissed as moot where there is anything further to be done in connection with it. West Virginia Board of Dental Examiners v. Storch, 146 W.Va. 662, 122 S.E.2d 295. In the case at bar contempt proceedings are still pending before the Circuit Court of Logan County and must be disposed of in this proceeding. | Even if there is no actual controversy existing in the case it will not be dismissed as moot where there is anything further to be done in connection with it. | Will a case be dismissed as moot if there is no actual controversy existing and where there is anything further to be done in connection with it? | Pretrial Procedure - Memo # 7129 - C - KG_58022.docx | ROSS-003281520 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 11649 | Carlson v. Hannah, 6 N.J. 202 | 308+92(1) | Attorneys in fact created by formal letters of attorney are merely agents and their authority and the manner of its exercise are governed by the principles of the law of agency. 2 Am.Jur. (Agency), s 26, p. 29. The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. Baurhenn v. Fidelity, etc. of Maryland, 114 N.J.L. 99, 104, 176 A. 137 (E. & A. 1934). Such actual authority may be express or implied. Implied authority may be inferred from the nature or extent of the function to be performed, the general course of conducting the business, or from the particular circumstances of the case. Implication is but another term for meaning and intention; express authority given to an agent includes by implication, whether the agency be general or special, unless restricted to the contrary, all such powers as are proper and necessary as a means of effectuating the purposes for which the agency was created. Sibley v. City Service Transit Co., 2 N.J. 458, 463, 66 A.2d 864 (1949); 2 Am.Jur. (Agency) s 86, p. 70. Accordingly, it is well settled that, unless otherwise agreed, the authority of an agent to manage a business extends no further than the direction of the ordinary operations of the business, including authority to make contracts which are incidental to such business, are usually made in it, or are reasonably necessary in conducting it. But Prima facie, authority to manage a business does not include authority to dispose of it in whole or in part. Restatement (Agency) s 73, Title F. | The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. | Is the power of an agent to bind his principal with his acts within his actual or apparent authority? | Principal and Agent - Memo 134 - KC_58048.docx | ROSS-003323684-ROSS-003323685 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 11650 | Zeeb v. Atlas Powder Co., 32 Del. Ch. 486 | 308+92(1) | Except as to acts so peculiarly personal that their performance may not be delegated, or except as to acts regulated by statute which are required to be performed personally, as a general rule an individual may do all acts through an agent which he could do himself. | Except as to acts so peculiarly personal that their performance may not be delegated, or except as to acts regulated by statute which are required to be performed personally, generally an individual may do all acts through an agent which he could do himself. | Can peculiarly personal acts be delegated through an agent? | 041375.docx | LEGALEASE-00148618-LEGALEASE-00148619 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |
| 11651 | United States v. H. B. Gregory Co., 502 F.2d 700 | 178+5 | In Wiesenfeld, supra, 376 U.S. at 91-92, 84 S.Ct. at 564, the Court explicitly declares that " 331(k) prohibits any act which results in adulteration of the product, and that food is adulterated if it has been held "under insanitary conditions whereby it may have become contaminated with filth." | Federal Food, Drug, and Cosmetic Act prohibits any act which results in adulteration of the product, and food is adulterated if it has been held under insanitary conditions whereby it may have become contaminated with filth. Federal Food, Drug, and Cosmetic Act, SS 1 et seq., 301(k), 21 U.S.C.A. SS 301 et seq., 331(k). | Does law prohibit food contaminated with filth? | 006562.docx | LEGALEASE-00149348-LEGALEASE-00149349 | SA, Sub | 0.07 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11652 | United States v. Maxwell, 254 F.3d 21 | 34+40(5) | We accept Maxwell's premise: "purpose" is indeed an element of a section 1382 offense. But the case law is consentient that an unauthorized entry itself can constitute the prohibited purpose necessary to sustain a conviction under section 1382. See Parrilla Bonilla, 648 F.2d at 1377; United States v. Mowat, 582 F.2d 1194, 1203"04 (9th Cir.1978); United States v. Floyd, 477 F.2d 217, 225 (10th Cir.1973); see also Sharpton, 252 F.3d at 538"39 (accepting rule sub silentio ). | Unauthorized entry itself can constitute prohibited purpose necessary to sustain conviction under statute proscribing entry upon naval reservation for purpose prohibited by law. 18 U.S.C.A. S 1382. | Does unauthorized entry itself constitute the prohibited purpose necessary to sustain a conviction under Section 1382? | Armed Services - Memo 329 - RK.docx | LEGALEASE-00038851-LEGALEASE-00038852 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 11653 | United States v. Cottier, 759 F.2d 760 | 34+40(5) | Where entry alone is the basis of the violation, knowledge that the entry is unauthorized is an essential element of a section 1382 offense. United States v. Patz, 584 F.2d at 929; United States v. Hall, 742 F.2d at 1155. The importance of this knowledge arises in that only innocent trespassers are excluded from purview of 18 U.S.C. " 1382. | Where entry alone is basis for prosecution for unlawful entry into military installation, knowledge that entry is unauthorized is essential element of such offense. 18 U.S.C.A. S 1382. | Is knowledge that entry is unauthorized an essential element of a prosecution for unlawful entry into a military installation under Section 1382? | 008788.docx | LEGALEASE-00149768-LEGALEASE-00149769 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 11654 | R.A. Brown & Co. v. Chancellor, 61 Tex. 437 | 83E+675 | Prior to the act of January 11, 1862 (Pasch. Dig., 234; R. S., 276), and subsequently to the act of March 20, 1848, there could have been no doubt on this question, unless the paper evidenced a contract between merchant and merchant, their factors and agents; for, from the passage of the last named act, days of grace were allowed only on paper between such persons. O. & W., 99; Oliphant v. Dallas, 15 Tex., 141; Moore v. Hollomans, 25 Tex. Sup., 82; Campbell v. Lane, 25 Tex. Sup., 94. | One of the leading objects of Act January 11, 1862 (Pasch.Dig. 234, Rev.St. 276), which was amendatory of Act March 20, 1848, was to place on the same footing such negotiable paper as was therein contemplated, whether made between merchant and merchant, their factors and agents, or between other persons, in so far as allowing days of grace thereon was concerned. | Is days of grace allowed in contracts between merchant and merchant? | 010674.docx | LEGALEASE-00149730-LEGALEASE-00149731 | Order, SA | 0.25 | 1 | 0 | 0 | 1 | |
| 11655 | Dillard v. Thomasville Auto Sales, 221 F. Supp. 3d 677 | 172H+1344 | The relevant portion of TILA and its implementing "Regulation Z" require a lender to disclose "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. 1638(a)(6); see 12 C.F.R. 226.18(g). The adequacy of a lender's disclosure is determined on an objective standard, regardless of what the consumer actually believes the form means. See Larrabee, 714 F.Supp.2d at 567"68 (collecting cases and applying a "reasonable-consumer" standard). If a reasonable consumer could plausibly interpret a TILA disclosure in more than one way, the lender has not complied with TILA. See id. at 568 (citing Handy v. Anchor Mortg. Corp., 464 F.3d 760, 764 (7th Cir. 2006)). | Car dealership's used car loan disclosure form, on which payment amount and dates were slightly misaligned, such that number of payments, amount of payments, and dates of first and last payments were printed on line separating rows, was sufficiently clear to satisfy dealership's obligation under Truth-in-Lending Act (TILA) to disclose the number, amount, and due dates or period of payments scheduled to repay the total of payments; no reasonable consumer could have construed form as requiring first 19 payments to be made weekly, with the final monthly payment to be made 15 months later, and only plausible interpretation was that two lines in question belonged in rows in which characters' lower halves sat, such that first 19 payments were to be made monthly beginning one month after closing. Truth in Lending Act S 128, 15 U.S.C.A. S 1638(a)(6); 12 C.F.R. S 226.18(g). | Is a creditor required to disclose the due dates or periods of payments scheduled under the federal law? | 013933.docx | LEGALEASE-00149539-LEGALEASE-00149540 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 11656 | E. Cleveland v. Landingham, 97 Ohio App. 3d 385 | 135+1 | Domicile has been defined as a place where a person lives, or has his home, a place where an individual has his true, fixed, permanent home and principal residence established, a place to which the individual intends to return whenever he is absent, and from which he has no present intent to move. See Sturgeon v. Korte, supra. As held by the United States Supreme Court in Williams v. N. Carolina (1944), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, "Domicil implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance." Id. at 229, 65 S.Ct. at 1095, 89 L.Ed. at 1581. | "Domicile" implies such nexus between person and place of permanence as to control creation of legal relations and responsibilities of the utmost significance. | Does domicile imply a nexus between a person and a place of permanence? | 014536.docx | LEGALEASE-00149337-LEGALEASE-00149338 | Order, SA | 0.75 | 1 | 0 | 0 | 1 | |
| 11657 | Masgas v. Anderson, 310 S.W.3d 567 | 156+12 | Masgas further claims that, even if the 1994 agreement is not a deed, then it is enforceable as a contract pursuant to TEX. PROP.CODE ANN. " 5.002 (Vernon 2004). Section 5.002 states that "[a]n instrument intended as a conveyance of real property or an interest in real property that, because of this chapter, fails as a conveyance in whole or in part is enforceable to the extent permitted by law as a contract to convey the property or interest." A deed based on a valuable consideration but ineffectual to operate as a conveyance is treated in equity as a contract to convey. Magee v. Young, 145 Tex. 485, 198 S.W.2d 883, 886 (1946). Unlike the document in Magee, the 1994 agreement does not show an intent to convey an interest in real property; it merely references interests already owned by Masgas. Masgas further claims ownership of the disputed working interests pursuant to estoppel by contract. Estoppel by deed or contract precludes parties to a valid instrument from denying its force and effect. Angell v. Bailey, 225 S.W.3d 834, 841 (Tex.App.-El Paso 2007, no pet.); Schroeder v. Tex. Iron Works, Inc., 769 S.W.2d 625, 628"29 (Tex.App.-Corpus Christi 1989), aff'd on other grounds, 813 S.W.2d 483 (Tex.1991). Estoppel by deed is the product of a good and valid deed. Angell, 225 S.W.3d at 842; Powers v. Wallis, 258 S.W.2d 360, 362"63 (Tex.Civ.App.-Eastland 1953, writ ref'd n.r.e.). The effect of the doctrine is to prevent a party to the deed from denying the truth of the recitals in a valid deed. Freeman v. Stephens Prod. Co., 171 S.W.3d 651, 654 (Tex.App.-Corpus Christi 2005, pet. denied). Because the 1994 agreement is not a valid deed, this doctrine does not apply. | Estoppel by deed or contract precludes parties to a valid instrument from denying its force and effect. | Does estoppel by contract preclude parties to a valid instrument from denying its force and effect? | Estoppel - Memo #28 - C - CSS_58260.docx | ROSS-003292385-ROSS-003292386 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 11658 | Chaput v. Clarke, 26 Conn. App. 785 | 200+167 | Existence of public highway creates public easement of travel permitting general traveling public to pass over highway, and private easement of access permitting landowners who abut highway to have access to highway and to connecting system of public roads. Where a highway runs along the boundary between the parties' land, they continue to be owners of the underlying soil to the middle of the way. Luf v. Southbury, 188 Conn. 336; Antenucci v. Hartford Roman Catholic Diocesan Corporation, 142 Conn. 349. The existence of the public highway creates two easements: (1) the public easement of travel that permits the general traveling public to pass over the highway at will; and (2) the private easement of access that permits the landowners who abut the highway to have access to the highway and to the connecting system of public roads. Luf v. Southbury, supra; Antenucci v. Hartford Roman Catholic Diocesan Corporation, supra. | Existence of public highway creates public easement of travel permitting general traveling public to pass over highway, and private easement of access permitting landowners who abut highway to have access to highway and to connecting system of public roads. | What are the two easements of a public highway? | 019063.docx | LEGALEASE-00149237-LEGALEASE-00149238 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11659 | Barry v. The D.M. Drennen & Emma Houston Drennen & Drennen Mem'l Tr. of Saint Mary's Church, 982 So. 2d 478 | 268+657(2) | Because there was a prohibition against vacation of a public road at common law, statutes authorizing such a vacation are in derogation of the common law and therefore must be strictly construed. Holland v. City of Alabaster, 624 So.2d 1376, 1378 (Ala.1993); Bownes v. Winston County, 481 So.2d 362 (Ala.1985). Applying this principle, we conclude that the 30"day appeal limitation in " 23"4"5 cannot be applied to an abutting landowner who never received the notice required by " 23"4"2 to be given to abutting landowners by United States mail. | Because there was a prohibition against vacation of a public road at common law, statutes authorizing such a vacation are in derogation of the common law and therefore must be strictly construed. | Should statutes authorizing road vacation be strictly construed? | Highways-Memo 219-ANM_58283.docx | ROSS-003279336-ROSS-003279337 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 11660 | Anzalone v. Admin. Office of Trial Court, 457 Mass. 647 | 228+250 | "Modern rules of pleading permit alternative pleading." Matter of Hilson, 448 Mass. 603, 613, 863 N.E.2d 483 (2007). See Mass. R. Civ. P. 8(e)(2), 365 Mass. 749 (1974). Relief may be granted if one of the alternative grounds pleaded is sufficient, despite the insufficiency of any remaining alternative grounds. Id. Here, the judge made clear that he considered dismissal proper under either rule 12(c) or rule 56. Rule 12(c) provides that if matters outside the pleadings are presented in a motion for judgment on the pleadings, the motion is to be treated as a motion for summary judgment. On our de novo review we shall treat the motion as such and consider whether "the successful [parties have] demonstrated that there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." Souza v. Sheriff of Bristol County, 455 Mass. 573, 576"577, 918 N.E.2d 823 (2010). | Modern rules of pleading permit alternative pleading; relief may be granted if one of the alternative grounds pleaded is sufficient, despite the insufficiency of any remaining alternative grounds. | Do modern rules of pleading permit alternative pleading? | 023634.docx | LEGALEASE-00149583-LEGALEASE-00149584 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11661 | Nelson v. Mercy Health Ctr., 241 P.3d 276 | 307A+581 | In granting a dismissal, a court should be mindful that public policy encourages the disposition of actions on their merits. Fischer v. Baptist Health Care of Okla., 2000 OK 91, 7-8, 14 P.3d 1292, 1293-94; Boston v. Buchanan, 2003 OK 114,17-18, 89 P.3d 1034, 1040-41. A dismissal for failure to prosecute should not be used against the momentarily negligent, but should be used to prod attorneys to bring cases to trial and to dismiss the truly dormant cases. Buchanan at 19, 89 P.3d at 1041. | A dismissal for failure to prosecute should not be used against the momentarily negligent, but should be used to prod attorneys to bring cases to trial and to dismiss the truly dormant cases. | Should a dismissal for failure to prosecute be used against the momentarily negligent? | 036376.docx | LEGALEASE-00149115-LEGALEASE-00149116 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 11662 | In re Ernesto H., 125 Cal. App. 4th 298 | 3.77E+06 | The purpose of the statute is to prevent threatening communications to public officers or employees designed to extort their action or inaction. (People v. Zendejas (1987) 196 Cal.App.3d 367, 376, 241 Cal.Rptr. 715.) The essential elements under Penal Code section 71 are: " "(1) A threat to inflict an unlawful injury upon any person or property; (2) direct communication of the threat to a public officer or employee; (3) the intent to influence the performance of the officer or employee's official duties; and (4) the apparent ability to carry out the threat." " (People v. Hopkins (1983) 149 Cal.App.3d 36, 40"41, 196 Cal.Rptr. 609; see also People v. Walker (1988) 47 Cal.3d 605, 639, 253 Cal.Rptr. 863, 765 P.2d 70 [citing Hopkins with approval].) | Purpose of statute prohibiting threats against public officers and employees is to prevent threatening communications to public officers or employees designed to extort their action or inaction. West's Ann.Cal.Penal Code S 71. | Does the penal code prevent threatening communications to public officers or employees? | 047070.docx | LEGALEASE-00149746-LEGALEASE-00149747 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 11663 | Bell v. Kelso Oil Co., 597 S.W.2d 731 | 413+2 | In this endeavor, the relation of the employment to the injury is the essential point of inquiry, liability for workmen's compensation is not based upon any act or omission of the employer. Thus, the law of tort causation, wherein liability is predicated upon fault and nullified by contributory fault, is not applicable in workmen's compensation cases. | Law of tort causation, wherein liability is predicated upon fault and nullified by contributory fault, is not applicable in workmen's compensation cases. | Does the law of tort causation apply in workmens compensation? | Workers Compensation - Memo #546 - C - ANC_58928.docx | ROSS-003281292-ROSS-003281293 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 11664 | XTO Energy Inc. v. Nikolai, 357 S.W.3d 47 | 322H+49 | A "recital" in a deed is a "statement ... that is used to explain the reasons upon which the transaction is based. The recital of facts binds both the parties to the deed and their privies." Angell, 225 S.W.3d at 842 (citation omitted); see also Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908 (Tex.1982) ("It is well settled that "a purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims." "); Williams v. Hardie, 85 Tex. 499, 506, 22 S.W. 399, 401 (1893) ("A recital or allegation in a deed ... which is certain in its terms, and relevant to the matter in hand, will ... be conclusive between the parties in any controversy growing out of ... the transaction in which it was executed."); Kimbro v. Hamilton, 28 Tex. 560, 567 (1866) (explaining that a recital in a deed "is not offered as secondary but as primary evidence, which cannot be averred against, and which forms a muniment of title"). "The doctrine of an estoppel by deed is ... founded upon the theory that the parties have contracted upon the basis of the recited facts." Williams, 85 Tex. at 506, 22 S.W. at 401. | A "recital" in a deed is a statement that is used to explain the reasons upon which the transaction is based; the recital of facts binds both the parties to the deed and their privies. | Does the recital of facts bind both the parties to the deed and their privies? | Estoppel - Memo #42 - C - CSS_59031.docx | ROSS-003279038-ROSS-003279039 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11665 | Virginia Elec. & Power Co. v. Buchwalter, 228 Va. 684 | 156+25 | It is well established that a party who purports to convey an estate is estopped as against his grantee from asserting anything in derogation thereof. That is to say, a grantor cannot deny his title to the prejudice of his grantee. See School Board v. Smith, 134 Va. 98, 104, 113 S.E. 868, 869 (1922). Similarly, " "those who derive title from or through the parties, ordinarily stand in the same position as the parties, and are bound by every estoppel that would have been binding on the parties." " Richmond Cedar Works v. West, 152 Va. 533, 543, 147 S.E. 196, 199 (1929). | Party who purports to convey estate is estopped as against his grantee from asserting anything in derogation thereof; grantor cannot deny his title to prejudice of his grantee. | Is a party who purports to convey an estate estopped from asserting anything in derogation thereof? | 018002.docx | LEGALEASE-00150632-LEGALEASE-00150633 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11666 | Wilder v. Wilder, 146 N.C. App. 574 | 307A+581 | Rule 41(b) provides that a claim may be dismissed for one of three reasons: failure to comply with the rules, failure to comply with a court order, or failure to prosecute. Most of the cases cited in the plaintiff's brief specifically concern dismissals under Rule 41(b) for failure to "comply with these rules or any order of court," and not dismissals for failure to prosecute. See Foy v. Hunter, 106 N.C.App. 614, 418 S.E.2d 299 (1992)(consideration of lesser sanctions than dismissal with prejudice under Rule 41(b) for violation of Rule 8(a)(2)); Daniels v. Montgomery Mut. Ins. Co., 81 N.C.App. 600, 344 S.E.2d 847 (1986) (consideration of lesser sanctions than dismissal for failure to comply with court order). These cases require that a trial court consider lesser sanctions before dismissing a claim pursuant to Rule 41(b). Although the general rule stated in Goss supports this Court's holding, no North Carolina cases specifically state that lesser sanctions must be considered by a trial court before dismissing a claim pursuant to Rule 41(b) for failure to prosecute. Because we believe that the cases on Rule 41(b) point most logically in this direction, we hold that the trial court must also consider lesser sanctions when dismissing a case pursuant to Rule 41(b) for failure to prosecute. | Trial court must consider lesser sanctions before dismissing a case for failure to prosecute. Rules Civ.Proc., Rule 41(b), G.S. S 1A-1 | Should court consider lesser sanctions before dismissing a case for failure to prosecute? | Pretrial Procedure - Memo # 8070 - C - RY_58747.docx | ROSS-003279088-ROSS-003279089 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 11667 | Lamka v. KeyBank, 250 Or. App. 486 | 307A+622 | On a pretrial motion to dismiss under ORCP 21 A, "the trial court can dismiss only if the pleading on its face fails to state a claim." | On a pretrial motion to dismiss, under the rule governing defenses and objections to pleadings, the trial court can dismiss only if the pleading on its face fails to state a claim. Rules Civ.Proc., Rule 21. | "On a pre-trial motion to dismiss, can the trial court dismiss only if the pleading on its face fails to state a claim?" | Pretrial Procedure - Memo # 8213 - C - SKG_58788.docx | ROSS-003279679 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 11668 | Silicon Valley Taxpayers Ass'n v. Santa Clara Cty. Open Space Auth., 44 Cal. 4th 431 | 371+2061 | "A tax, on the other hand, is very different. Unlike a special assessment, a tax can be levied " "without reference to peculiar benefits to particular individuals or property." " [Citations.] Indeed, "[n]othing is more familiar in taxation than the imposition of a tax upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not responsible for the condition to be remedied." [Citations.].... | Unlike a special assessment, a tax can be levied without reference to peculiar benefits to particular individuals or property. | Must a tax be levied with reference to peculiar benefits to particular individuals or property? | 045946.docx | LEGALEASE-00150502-LEGALEASE-00150503 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 11669 | Aboye v. United States, 121 A.3d 1245 | 3.77E+12 | "A person is guilty of the offense of threats under D.C.Code " 22"407 if he or she: (1) uttered words to another person, (2) those words "were of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer," and (3) he or she "intended to utter the words that constitute the threat." " An ordinary hearer is "one aware of all the surrounding circumstances, including what the actual hearer knew." Whether a particular statement constitutes a threat is a question of fact. Especially because the answer to that question may turn on nuance and context, the determination of the trier of fact is entitled to substantial deference. | An "ordinary hearer," within meaning of statute governing the offense of threats to do bodily harm, is one aware of all the surrounding circumstances, including what the actual hearer knew. D.C. Official Code, 2001 Ed. S 22-407. | "Who is an ""ordinary hearer"" within the meaning of the statute governing the offense of threats to do bodily harm?" | 046837.docx | LEGALEASE-00150348-LEGALEASE-00150349 | Order, SA | 0.65 | 1 | 0 | 0 | 1 | |
| 11670 | THI of New Mexico at Vida Encantada v. Lovato, 848 F. Supp. 2d 1309 | 25T+182(2) | There is "no set rule as to what constitutes a waiver or abandonment of the arbitration agreement." Id. at 772. The Tenth Circuit, however, has instructed that a party should not be permitted to demand arbitration where it has waived its right to arbitrate in the narrow sense of waiver, i.e., where there has been an "intentional relinquishment or abandonment of a known right." Id. at 773. Further, "[a]n important consideration in assessing waiver is whether the party now seeking arbitration is improperly manipulating the judicial process." Id. Evidence of such manipulation includes "a delay in suggesting arbitration until substantial discovery has been completed, ... or until the eve of trial." Id. at 774. Another important consideration is whether ordering arbitration would be inefficient, such as where there has already been substantial progress in the litigation, where trial is imminent, or where there has been a substantial use of discovery procedures. Id. "The final consideration in the waiver analysis is prejudice to the party opposing arbitration." Id. | An important consideration in assessing waiver of the right to arbitration is whether the party now seeking arbitration is improperly manipulating the judicial process; evidence of such manipulation includes a delay in suggesting arbitration until substantial discovery has been completed, or until the eve of trial. | Is improperly manipulating the judicial process considered when assessing waiver? | 007927.docx | LEGALEASE-00151390-LEGALEASE-00151391 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 11671 | Strickler v. Marx, 246 Va. 384 | 83E+416 | Under the provisions of the U.C.C. effective at the time of this controversy, the right of a party to payment of an instrument depended "upon his status as a holder. Code " 8.3-301." Lambert v. Barker, 232 Va. 21, 24, 348 S.E.2d 214, 216 (1986). (" 8.3-301 has been replaced by " 8.3A-301.) The U.C.C. defined "Holder " as "a person who is in possession of ... an instrument ... drawn, issued or indorsed to him or to his order or to bearer or in blank." Former Code " 8.1-201(20) (now amended). "A transferee may become a holder of order paper only by "negotiation," that is, by indorsement and delivery, and the indorsement must be by or on behalf of a person who is himself a holder." Becker v. Nat'l Bank & Trust Co., 222 Va. 716, 720, 284 S.E.2d 793, 795 (1981) (interpreting former Code " 8.3-202(1) now, with changes, " 8.3A-201). "A transfer of an order instrument without a necessary indorsement is not a negotiation." Virginia Comment to former Code " 8.3-202(1), citing Citizens Bank and Trust Co. v. Chase, 151 Va. 65, 69, 144 S.E. 464, 465 (1928). | Transferee may become holder of order paper only by "negotiation," that is by endorsement and delivery, and endorsement must be by or on behalf of person who is himself holder. Code 1950, S 8.1-201(20) (1991). | Can a transferee become a holder of an order paper only by negotiation? | 010783.docx | LEGALEASE-00151276-LEGALEASE-00151277 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11672 | Robinson v. Gentry, 106 S.W.2d 913 | 83E+429 | The rule with respect to restrictive indorsements is usually applied in cases in which it might be necessary for the maker of a note to protect himself against the demands of two or more persons claiming to be the owners of such a note, but we think that under the facts in the case at bar that rule is not applicable. There is no doubt that the indorsement on the note in question is a restrictive indorsement. The general rule is that the transfer of a negotiable promissory note which has been indorsed "for collection" does not pass title in the instrument to an indorsee. Such a restrictive indorsement does not authorize the indorsee to sell or to indorse the note to another, and any person buying such a note with such a restrictive indorsement from such an indorsee does not receive title to the note. Jackson v. Johnson, 248 Mo. 680, 154 S.W. 759; Cairo National Bank of Cairo, Illinois, v. Blanton Co. (Mo.App.) 287 S.W. 839; 3 R.C.L. " 206, p. 996; 8 C.J. " 547, p. 366; 11 A.L.R. pages 1046, 1047. | Generally, transfer of negotiable promissory note which has been indorsed "for collection" does not pass title to indorsee nor authorize indorsee to sell or indorse note to another, and purchaser from indorsee does not get title. | Is the transfer of a negotiable promissory note which has been indorsed for collection pass title in the instrument to an indorsee? | 010785.docx | LEGALEASE-00151306-LEGALEASE-00151307 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 11673 | Auerbach v. Parker, 544 So. 2d 943 | 200+79.1 | The statutory method of abandonment of Ala.Code 1975, "" 23-4-1 et seq., is inapplicable; Montgomery County did not apply to close and vacate the road, and the failure of county authorities to keep the road in repair did not work an abandonment. See Purvis v. Busey, 260 Ala. 373, 71 So.2d 18 (1954). Further, we cannot say that the road has not been used for a period of 20 years. The fact that travel on the road may have decreased does not work an abandonment so long as it is open for use by the public generally and is being used by those who desire, or have the occasion, to use it. 39A C.J.S. Highways, " 131(a) (1976). Although testimony indicates that the Auerbachs in recent times have used the road mainly on weekends for recreation, the game warden and Auerbach employees also use the road to reach the Auerbach property. Thus, the road is open for use, albeit infrequently. | Fact that travel on the road may have decreased did not work an abandonment so long as the road remained open for use by the public generally and was being used by those who desired or had occasion to use it. Code 1975, S 23-4-1 et seq. | Is a public road considered to be abandoned when it is open for use by the public? | 019182.docx | LEGALEASE-00151062-LEGALEASE-00151063 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 11674 | Scarborough v. Hunter, 288 Ga. 687 | 200+76 | The function of the Board was to determine whether the road served a substantial public purpose. If the Board determines that a road has ceased to be used by the public to the extent that no substantial public purpose is served by it, then the Board may exercise its discretion to close the road. The function of the trial court in a mandamus action is to decide if the Board's action was a gross abuse of discretion. | Under statute permitting a county to close a public road, the function of county board of commissioners is to determine whether the road serves substantial public purpose; if the board determines that the road has ceased to be used by public to the extent that no substantial public purpose is served by it, the board may exercise its discretion to close the road. West's Ga.Code Ann. S 32-7-2(b)(1). | Can a board exercise discretion to close the road? | 019305.docx | LEGALEASE-00151317-LEGALEASE-00151318 | SA, Sub | 0.04 | 0 | 0 | 1 | 1 | |
| 11675 | Piggly Wiggly Operators' Warehouse v. Piggly Wiggly Operators' Warehouse Indep. Great Truck Drivers Union, Local No. 1, 611 F.2d 580 | 25T+316 | Judicial deference to arbitration, however, does not grant carte blanche approval to any decision an arbitrator might make. Machinists, Local 2003 v. Hayes Corp., 5 Cir. 1961, 296 F.2d 238, 243, Aff'd on rehearing, 5 Cir. 1963, 316 F.2d 90. The arbitrator's authority is circumscribed by the arbitration agreement, and he can bind the parties only on issues that they have agreed to submit to him. Whether an arbitrator has exceeded these bounds is an issue for judicial resolution. Torrington Co. v. Metal Products Workers, Local 1645, 2 Cir. 1966, 362 F.2d 677, 680. For that reason, an arbitrator who derives his power solely from the contract cannot hold that charter to be legally ineffective. International Ladies' Garment Workers' Union v. Ashland Industries, Inc., 5 Cir. 1974, 488 F.2d 641, Cert. denied, 1975, 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68; an arbitrator's award must draw "its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. 1361, 4 L.Ed.2d at 1428; Safeway Stores v. American Bakery & Confectionery Workers, 5 Cir. 1968, 390 F.2d 79, 81; Local Union No. 787, International Union of Electrical Radio and Machine Workers v. Collins Radio Co., 5 Cir. 1963, 317 F.2d 214, 216. | Judicial deference to arbitration does not grant carte blanche approval to any decision an arbitrator might make; arbitrator's authority is circumscribed by the arbitration agreement, and he can bind parties only on issues that they have agreed to submit to him, and whether an arbitrator has exceeded those bounds is an issue for judicial resolution. | Does judicial deference to arbitration grant carte blanche approval to any decision an arbitrator makes? | 007955.docx | LEGALEASE-00151418-LEGALEASE-00151420 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 11676 | Siam Feather & Forest Prod. Co. v. Midwest Feather Co., 503 F. Supp. 239 | 25T+182(2) | In view of the case law which has deemed even greater participation in litigation than we have here to be insufficient to constitute a waiver of a right to arbitrate, the Court finds no support for the contention that Midwest has waived its right to arbitrate. For example, a party may file an answer to a complaint, e. g., ITT World Communications, Inc. v. Communications Workers of America, 422 F.2d 77 (2d Cir. 1970); or even file an answer and a counterclaim without waiving its right to arbitration, e. g., General Guaranty Ins. Co. v. New Orleans General Agency, Inc., 427 F.2d 924 (5th Cir. 1970). See generally 98 A.L.R.3d 767.Midwest's minimal participation in this suit has not been inconsistent with its request for arbitration or prejudiced plaintiff's claim. | Party may file answer to complaint, or even file answer and counterclaim without waiving its right to arbitration. | Can a party file an answer to a complaint without waiving its right to arbitration? | 008018.docx | LEGALEASE-00151493-LEGALEASE-00151494 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11677 | Kreps v. C. I. R., 351 F.2d 1 | 108H+9 | Before we can reach the contention that a cash-basis taxpayer's accounts receivable should be considered in determining whether the taxpayer was insolvent as of a certain date we must decide whether the question of insolvency is to be dealt with in the bankruptcy or the equity sense of the term. The Internal Revenue Code provides no guidance, and most courts have simply announced, without pausing to consider in which sense they used the term, that the Commissioner must prove the taxpayer-transferor was insolvent. Indeed, this seems to have been the approach of the lower court in the present case. Which of these insolvency tests should be imported into the interpretive gloss on the transferee liability sections of the Code largely depends on the purpose these sections were designed to serve. The equity test of insolvency equates insolvency with a lack of liquid funds, or the inability to pay one's debts in the ordinary course of business as the debts mature.This test normally has the lower threshold of compliance; it may be met by companies in temporary financial difficulty which are not on the verge of failure. The bankruptcy test of insolvency, on the other hand, focuses on the balance sheet of a company at discreet intervals of time in order to determine whether the company's liabilities exceed its assets; it will typically be met by companies in serious financial difficulty. | The equity test of "insolvency" equates insolvency with a lack of liquid funds, or the inability to pay one's debts in the ordinary course of business as the debts mature. | What does the equity test of insolvency equate insolvency to? | 014067.docx | LEGALEASE-00151526-LEGALEASE-00151527 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11678 | Case v. Beauregard, 101 U.S. 688 | 108H+14 | But, without pursuing this subject further, it may be said that whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies. Tappan v. Evans, 11 N. H. 311; Holt v. Bancroft, 30 Ala. 193.Indeed, in those cases in which it has been held that obtaining a judgment, and issuing an execution, is necessary before a court of equity can be asked to set aside fraudulent dispositions of a debtor's property, the reason given is that a general creditor has no lien. And when such bills have been sustained without a judgment at law, it has been to enable the creditor to obtain a lien, either by judgment or execution. But when the bill asserts a lien, or a trust, and shows that it can be made available only by the aid of a chancellor, it obviously makes a case for his interference. | Whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting his remedy at law. | When can a creditor go into equity without exhausting legal processes or remedies? | 014069.docx | LEGALEASE-00151528-LEGALEASE-00151529 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11679 | Pickett v. Bank of Ellijay, 182 Ga. 540 | 83E+426 | The Civil Code of 1910, " 5796, provides that "blank endorsements of negotiable paper may always be explained between the parties themselves, or those taking with notice of dishonor or of the actual facts of such indorsements." This provision appeared for the first time in the Code of 1863, and was embodied in each of the subsequent Codes. Following this section are many decisions of this court applying its provisions. Hardy v. White, 60 Ga. 454; Neal v. Wilson, 79 Ga. 736, 5 S.E. 54; James v. Calder, 7 Ga.App. 707, 67 S.E. 1125; Taff v. Larey, 29 Ga.App. 631, 116 S.E. 866; Seymour v. Bank of Thomasville, 157 Ga. 99, 121 S.E. 578; Sanders v. Ayers, 155 Ga. 630, 117 S.E. 651. In 1924 the General Assembly passed the Negotiable Instruments Law, which appears in the Code of 1933. Ga.Laws 1924, pp. 126, 139. Section 63 of that act (Code 1933, " 14-604) is as follows: "A person placing his signature upon an instrument other than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." | Statute providing that blank indorsements of negotiable paper may always be explained between parties themselves, or those taking with notice of dishonor or of actual facts of indorsements, and Negotiable Instruments Act provision that person placing signature on instrument other than as maker, drawer, or acceptor is deemed to be indorser, unless he clearly indicates contrary intention, must be construed in pari materia so as to make parol evidence admissible to explain blank indorsement as between parties themselves, or those taking with notice of dishonor or of actual facts but not as between third persons or those taking without notice (Code 1933, SS 14-604, 14-605, 38-114, 38-509). | How do blank endorsements of negotiable paper be explained? | 009715.docx | LEGALEASE-00151768-LEGALEASE-00151769 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 11680 | Haberl v. Bigelow, 855 P.2d 1368 | 8.30E+299 | The Bigelow note is a negotiable instrument, as it contains both an unconditional promise to pay and a fixed date of payment. Bank of Kimball v. Rostek, 161 Colo. 584, 423 P.2d 579 (1967). As such, transactions involving the note are governed by article 3 of the Code, "" 4-3-101 to -805, 2 C.R.S. (1992). Capital Investors Co. v. Executors of Estate of Morrison, 484 F.2d 1157, 1160 (4th Cir.1973) (promissory notes secured by a real estate mortgage are negotiable instruments governed by legal principles unique to such instruments); Payne v. Mundaca Inv. Corp., 562 N.E.2d 51, 55 (Ind.App.1990) ("[a] promissory note is a negotiable instrument.... The note's character as a negotiable instrument is not stripped from it even though it is collateralized by a mortgage."); In re Cambridge Mortgage Corp., 92 B.R. 145, 149 (Bankr.D.S.C.1988) ("[n]egotiable notes are governed by the Uniform Commercial Code ... as adopted in South Carolina and other states. It makes no difference that *1373 the note is secured by an interest in real estate...."); Hughes v. Tyler, 485 So.2d 1026, 1029 (Miss.1986) ("while the U.C.C. does not apply to security interest in realty, the promissory note is not a security interest in realty. The note does not cease to be negotiable even though it is secured by a mortgage."); see 6A R. Anderson, Anderson on the Uniform Commercial Code " 3-606:7 at 353 (3d ed. 1993). | Promissory note secured by deed of trust on real property, and containing both unconditional promise to pay and fixed date of payment, was "negotiable instrument," such that transactions involving the note were governed by Commercial Code. West's C.R.S.A. SS 4-3-101 to 4-3-805. | Is a note containing an unconditional promise to pay a fixed sum on a definite date a negotiable instrument? | 009886.docx | LEGALEASE-00151604-LEGALEASE-00151605 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11681 | Cockrell v. Taylor, 347 Mo. 1 | 83E+481 | Appellant next attacks the foreclosure on the ground that the Farm Mortgage Holding Company was not the owner and holder of the note and deed of trust at that time. " 3094, R.S.Mo.1929, Mo.St.Ann. "3094, p. 1918, makes the recitals in a trustee's deed prima facie evidence of the truth of the matters therein set out, and this deed did recite that at the date of foreclosure the Holding Company held the note and deed of trust. There is a distinction between the endorsement of a note and its assignment. Both endorsement and assignment transfer title to the assignee or endorsee; but the endorsement, if made before maturity, confers upon him the special rights of a holder in due course. While an endorsement must be made by written signature on the back of the instrument itself, an assignment of a note or mortgage may be by separate instrument or even by parol. Bishop v. Chase, 156 Mo. 158, 56 S.W. 1080, 79 Am.St.Rep. 515; O'Connor v. Slatter, 48 Wash. 493, 93 P. 1078. Here the assignments of the mortgage from the original mortgagee down to the Holding Company were all in writing and were duly acknowledged and recorded. The acknowledgment and recordation are prima facie evidence of due execution and delivery. Keener v. Williams, 307 Mo. 682, 271 S.W. 489. | While "endorsement of note" must be made by written signature on back of instrument itself, "assignment of note or mortgage" may be by separate instrument, or even by parol. | Can an assignment of a note be made by a separate instrument? | 009931.docx | LEGALEASE-00151829-LEGALEASE-00151830 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11682 | Bologna Bros. v. Morrissey, 154 So. 2d 455 | 83E+433(1) | The rule is the same for promissory notes. Their legal effect is governed by the law of the country where they were executed and delivered. Kuenzi & Co., v. Elvers, Boje & Co., 14 La.Ann. 391, 74 Am.Dec. 434 (1859); Walsh v. Walsh, La.App., 11 Orl.App. 205 (1914); aff. 137 La. 157, 68 So. 392 (1915); Stevens v. Gaude, 9 La.App. 664, 120 So. 79, 80 (1st Cir. 1928); Restatement of Conflict of Laws, Sec. 336. Accommodation papers are no exception to this rule. It is settled in Louisiana that every endorsement, accommodation or otherwise, is essentially an original contract, equivalent to a new note or bill in favor of the holder and that accommodation paper is governed by the same rules as other paper. Crane v. Trudeau, 19 La.Ann. 307 (1867); James Trabue & Co. v. R. H. Short & Co., 18 La.Ann. 257, 258 (1866); G. F. Connely v. A. Bourg, et al., 16 La.Ann. 108, 109, 79 Am.Dec. 568 (1861). The obligation of an endorser or accommodation party is governed by the lex loci contractus. James Trabue & Co. v. R. H. Short & Co., supra; Duncan v. Sparrow, 3 Rob. 167, 168 (1942). | Every endorsement, accommodation or otherwise, is essentially original contract, equivalent to new note or bill in favor of holder, and accommodation paper is governed by same rules as other paper. | Is an accommodation paper governed by the same laws as other paper? | 009728.docx | LEGALEASE-00152582-LEGALEASE-00152583 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11683 | Deutsche Bank Nat. Tr. Co. v. Monica, 131 A.D.3d 737 | 83E+426 | "[W]here [a] plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears special indorsement payable to the order of the plaintiff," such party is a holder of the note and entitled to enforce the instrument (Wells Fargo Bank, NA v. Ostiguy, 127 A.D.3d at 1376, 8 N.Y.S.3d 669; see Nationstar Mtge., LLC v. Davidson, 116 A.D.3d 1294, 1296, 983 N.Y.S.2d 705 [2014], lv. denied 24 N.Y.3d 905, 2014 WL 4637016 [2014]; see also Hartford Acc. & Indem. Co. v. American Express Co., 74 N.Y.2d 153, 159, 544 N.Y.S.2d 573, 542 N.E.2d 1090 [1989] ). Here, Battin's affidavit established that, prior to the commencement of the action, plaintiff possessed the underlying note indorsed in blank by AHMA (compare Bank of Am., N.A. v. Kyle, 129 A.D.3d at 1169, 13 N.Y.S.3d 253). Defendants, in turn, have failed to raise any question of fact as to whether plaintiff continued to retain possession. As such, we conclude that Supreme Court properly found that plaintiff had standing to bring the instant foreclosure action (see Aurora Loan Servs., LLC v. Taylor, 25 N.Y.3d at 361"362, 12 N.Y.S.3d 612, 34 N.E.3d 363; Nationstar Mtge., LLC v. Davidson, 116 A.D.3d at 1296, 983 N.Y.S.2d 705; HSBC Bank USA, N.A. v. Sage, 112 A.D.3d at 1127"1128, 977 N.Y.S. 2d 446). | Where a plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears special indorsement payable to the order of the plaintiff, such party is a holder of the note and entitled to enforce the instrument. | Who can be a holder of a note? | Bills and Notes- Memo 1104- ANM_60030.docx | ROSS-003280629-ROSS-003280630 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11684 | In re AppOnline.com, 321 B.R. 614 | 83E+335 | Appellant relies on a provision in the notes stating that amounts to be paid under the notes "shall be applied to principal, interest and other items in the order described in the Security Instrument." However, as stated in the Official Commentary to UCC " 3"105, mere recitals of the existence of the separate agreement or references to it for information, such as this provision, do not affect negotiability. In general, the existence of "a separate agreement does not affect the negotiability of an instrument." N.Y. UCC " 3"119 (McKinney 2001). | Under New York law, mere recitals in a promissory note of existence of separate agreement, or references to it for information, do not affect note's negotiability. N.Y.McKinney's Uniform Commercial Code SS 3-105, 3-119. | "Do mere recitals of the existence of a separate agreement, or references to it for information, affect note's negotiability ?" | 010690.docx | LEGALEASE-00152574-LEGALEASE-00152575 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 11685 | Harry H. White Lumber Co. v. Crocker-Citizens Nat. Bank, 253 Cal. App. 2d 368 | 172H+622 | "The Cober case, supra, was a suit between the maker of a note and a joint payee who had received no benefit from a performance in kind which one of his other joint payees had received in lieu of money from the maker. No question of negotiation5 of the instrument was there involved. Here, the collecting bank was not a party to the sale of lumber products to the subcontractor, joint payee Timberline Roofing Company. The defendant bank's rights, if any, came only through negotiation of the checks. Hence, it is our view that the statutory provisions here applicable are Civil Code, sections 3122 and 3104, rather than sections 3200, subdivision (4), and 1475. "Section 3122 (U.N.I.A., s 41) provided: "Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others." "Section 3104 provided: "When a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." | Where checks were payable to two joint payees, and indorsement of first joint payee was forged on checks by second joint payee, and collecting bank paid the checks, and first joint payee sued collecting bank, applicable sections of Civil Code were those dealing with effect of forged signature and indorsement where instrument is payable to two or more persons, and not section dealing with discharge of negotiable instrument by any act which will discharge simple contract for payment of money, and section providing that obligation in favor of several persons is extinguished by performance rendered to any one of them, except in case of deposit made by owners in common, or in joint ownership. West's Ann.Civ.Code, SS 1475, 3104, 3122, 3200(4). | Should all indorse when an instrument is payable to the order of two or more payees? | Bills and Notes-Memo 1089-IS_60058.docx | ROSS-003294593-ROSS-003294594 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11686 | Stone v. Mehlberg, 728 F. Supp. 1341 | 83E+524 | The Stones accordingly prevail on their TILA rescission claim, unless the Mehlbergs can assert an effective defense. The Mehlbergs first assert that they are protected by the U.C.C.'s holder in due course doctrine (HDC). This defense is irrelevant to the Mehlbergs' obligation to discharge the security interest they hold in the Stones' home. The mortgage at issue is not payable to order or bearer, and is thus not a negotiable instrument. See M.C.L.A. " 440.3104(1)(d). | A mortgage which was not payable to order or bearer was not a negotiable instrument and thus assignees of the mortgagee were not protected by the UCC's holder in due course doctrine. U.C.C. S 3-101 et seq. | "Is mortgage a negotiable instrument, when it is not payable to the bearer or order?" | 010807.docx | LEGALEASE-00151877-LEGALEASE-00151878 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 11687 | Brown v. ACMI Pop Div., 375 Ill. App. 3d 276 | 307A+680 | When proceeding under a section 2"619 motion, the movant concedes all well-pleaded facts set forth in the complaint but does not admit conclusions of law. Employers Mutual Cos. v. Skilling, 256 Ill.App.3d 567, 569, 196 Ill.Dec. 301, 629 N.E.2d 1145 (1994). A section 2"619 motion should be granted only when it raises an affirmative matter, which negates the plaintiff's cause of action completely or refutes critical conclusions of law or conclusions of material, but unsupported fact. The court must deny the motion if there is a material and genuine disputed question of fact. 735 ILCS 5/2"619(c) (West 2002); Samansky v. Rush"Presbyterian"St. Luke's Medical Center, 208 Ill.App.3d 377, 383, 153 Ill.Dec. 428, 567 N.E.2d 386 (1990). | The trial court must deny a motion to dismiss if there is a material and genuine disputed question of fact. S.H.A. 735 ILCS 5/2-619(c). | Should the trial court deny a motion to dismiss if there is a material and genuine disputed question of fact? | Pretrial Procedure - Memo # 8762 - C - NS_59763.docx | ROSS-003319596-ROSS-003319597 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 11688 | LaChance v. U.S. Smokeless Tobacco Co., 156 N.H. 88 | 307A+622 | Against this backdrop, we turn to the case at hand. As referenced above, the superior court granted judgment on the pleadings, holding that Minuteman applied to consumer protection claims and that the plaintiffs therefore could not pursue their claims. In general, a motion seeking judgment based solely on the pleadings is in the nature of a motion to dismiss for failure to state a claim. Jenks v. Menard, 145 N.H. 236, 239, 761 A.2d 462 (2000). In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, we assume the truth of the facts alleged by the plaintiffs and construe all reasonable inferences in the light most favorable to them. Paul v. Sherburne, 153 N.H. 747, 749, 903 A.2d 1011 (2006). If the facts do not constitute a basis for legal relief, we will uphold the granting of the motion to dismiss. Id. | A motion seeking judgment based solely on the pleadings is generally in the nature of a motion to dismiss for failure to state a claim. | Is a motion to dismiss for failure to state a claim based on pleadings? | 037831.docx | LEGALEASE-00152045-LEGALEASE-00152046 | Order, SA | 0.84 | 1 | 0 | 0 | 1 | |
| 11689 | Skarin Custom Homes v. Ross, 388 Ill. App. 3d 739 | 307A+561.1 | On appeal, the plaintiff argues that the trial court erred in dismissing (1) its claims for breach of the Disclosure Act and breach of contract contained in its amended complaint; and (2) its claim for common-law fraud contained in its original complaint. With respect to the plaintiff's claims in its amended complaint for breach of the Disclosure Act and breach of contract, a motion to dismiss pursuant to section 2"619(a)(9) should be granted only where the claim asserted by the plaintiff is barred by an affirmative matter defeating the claim. 735 ILCS 5/2"619(a)(9) (West 2006). The purpose of a section 2"619 dismissal "is to dispose of issues of law and easily proved issues of fact early in the litigation." Czarobski v. Lata, 227 Ill.2d 364, 369, 317 Ill.Dec. 656, 882 N.E.2d 536 (2008). We review section 2"619 dismissals de novo. Czarobski, 227 Ill.2d at 369, 317 Ill.Dec. 656, 882 N.E.2d 536. | A motion to dismiss based on other affirmative matter should be granted only where the claim asserted by the plaintiff is barred by an affirmative matter defeating the claim. S.H.A. 735 ILCS 5/2-619(a)(9). | Can a motion to dismiss be granted when the claim asserted is barred by some affirmative matter defeating the claim? | 037857.docx | LEGALEASE-00152122-LEGALEASE-00152123 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 11690 | Lane v. Oustalet, 873 So. 2d 92 | 308+177(1) | The law of agency generally imputes knowledge and information received by an agent in conducting the business of a principal to the principal, even where that knowledge or information is not communicated by the agent to the principal. Pittman v. Home Indem. Co., 411 So.2d 87, 89 (Miss.1982) (citing Home Ins. Co. of N.Y. v. Thornhill, 165 Miss. 787, 796, 144 So. 861, 863 (1932)). See also Weathersby v. Gore, 556 F.2d 1247, 1251 (5th Cir.1977) (applying Mississippi law). This general principle is fundamental to commerce; without the ability to rely on communications through representatives most trade would halt. The Court of Appeals relied on this principle in holding that, as a matter of law, the seller here satisfied his contractual obligation to the buyers by relying on the agents to communicate with them. | The law of agency generally imputes knowledge and information received by an agent in conducting the business of a principal to the principal, even where that knowledge or information is not communicated by the agent to the principal. | Does law of agency impute knowledge of an agent to principal? | Principal and Agent - Memo 203 - KC_59871.docx | ROSS-003281977-ROSS-003281978 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 11691 | Power Travel Int'l v. Am. Airlines, 257 F. Supp. 2d 701 | 360+18.15 | Power Travel's claim for breach of contract and the covenant of good faith and fair dealing is not preempted by the Airline Deregulation Act ("ADA"). | Airline Deregulation Act (ADA), preempting state law relating to price, route, or service or air carrier, did not bar suit by travel agents claiming that airlines breached covenant or good faith and fair dealing, under laws of Virginia and Texas, when they ceased paying any commissions to agents booking flights. 49 U.S.C.A. S 41713(b)(1). | What does the Airline Deregulation Act state with respect to breach of contract claims? | 042018.docx | LEGALEASE-00152243-LEGALEASE-00152244 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 11692 | Morton v. J.I. Case Threshing Mach. Co., 99 Mo. App. 630 | 308+86 | It is the well-settled rule of law in this state that where an agent introduces the purchaser or discloses his name to the seller, and through such introduction or disclosure negotiations are opened and the sale of the property is effected, the agent is entitled to his commissions, though the sale is made by the owner.Tyler v. Parr, 52 Mo. 249; Timberman v. Craddock, 70 Mo. 638; Gelatt v. Ridge, 117 Mo. 560, 23 S. W. 882, 38 Am. St. Rep. 683; Lipscomb & Russ v. Cole, 81 Mo. App. 53. The evidence in the present case certainly had a tendency to show that the plaintiff had disclosed the name of a purchaser to the defendant, and that the sale to Borst would not have been effected but for such disclosure; and to that extent, at least, the plaintiff was the procuring cause of the sale. We think the evidence was sufficient to carry the case to the jury, and that the trial court did not err in denying the defendant's demurrer. | Where a sale of property is effected owing to an agent having introduced the purchaser to the owner or disclosed the name of the purchaser to the owner, the agent is entitled to his commissions, though the sale is actually made by the owner. | Is an agent entitled to get commission for a sale he initiated or introduced to principal even though he has not completed the sale process? | 042095.docx | LEGALEASE-00152261-LEGALEASE-00152262 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11693 | In re Mason's Estate, 194 Misc. 308 | 8.30E+76 | A check is a mere order for the payment of money. The authority of the payee as agent of the maker is revoked by the death of the maker prior to the time the check is cashed (Glennan v. Rochester Trust & Safe Deposit Co. 209 N. Y. 12; Curry v. Powers, 70 N. Y. 212; Harris v. Clark, 3 N. Y. 93; Matter of Mead, 90 Misc. 263, affd. 173 App. Div. 982, affd. 221 N. Y. 645). Consequently, no claims against the estate can be based on a check itself. However, the claim of which the check is evidence may still be enforcible against the estate (Matter of Ludlam, 158 Misc. 283; Matter of Pierce, 56 N. Y. S. 2d 778; Matter of Ehlers, 132 Misc. 910). The execution and delivery of a check if unexplained raises the presumption that it was given in payment of a debt (Nay v. Curley, 113 N. Y. 575; Koehler v. Alder, 78 N. Y. 287). The rule that the validity of a contract is governed by the law of the place where the contract is made is applicable to a check (Swift & Co. v. Bankers Trust Co., 280 N. Y. 135). | A check is a mere order for payment of money and authority of payee as agent of maker is revoked by death of maker prior to time check is cashed. | Does the death of a principal revoke the authority of an agent to collect the check? | 010680.docx | LEGALEASE-00153445-LEGALEASE-00153446 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11694 | Com. v. Weiner, 230 Pa. Super. 245 | 129+110 | In addition, for noise to constitute disorderly conduct, it must be "unseemly." "Unseemly" has been defined as "not fitting or proper in respect to the conventional standards of organized society, or a legally constituted community." 410 Pa. at 113, 189 A.2d at 143. | For noise to constitute disorderly conduct under statute, it must be "unseemly," that is, it must be not fitting or proper in respect to the conventional standards of organized society or a legally constituted community. 18 P.S. S 4406. | Does noise constitute disorderly conduct? | 014393.docx | LEGALEASE-00153451-LEGALEASE-00153452 | SA, Sub | 0.1 | 0 | 0 | 1 | 1 | |
| 11695 | Torres-Serrant v. Dep't of Educ. of Puerto Rico, 100 F. Supp. 3d 138 | 141E+890 | The resolution of this issue is guided by the fact that "Congress enacted the IDEA pursuant to the Spending Clause." U.S. Const. art. I, " 8, cl. 1; see Schaffer v. Weast, 546 U.S. 49, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). The IDEA grants federal funds to assist state and local agencies in educating children with disabilities "and conditions such funding upon a State's compliance with extensive goals and procedures." Rowley, 458 U.S. at 179, 102 S.Ct. 3034. Congress has broad power to set the terms on which it disburses federal money to the states. Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 295"96, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006); see South Dakota v. Dole, 483 U.S. 203, 206"207, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). Congress did just that by conditioning the state's eligibility to receive federal funding under IDEA to the establishment of a plan which ensures that the state, in this case the Commonwealth, "has in effect policies and procedures to ensure that [it] meets" certain conditions. 20 U.S.C. " 1412(a). Thus, to qualify for federal funding under IDEA, the states must ensure all children with disabilities and their families a free appropriate public education (FAPE) and guarantee the procedural safeguards required under 20 U.S.C.A. " 1415, such as the parents' right to challenge adverse administrative decisions. 20 U.S.C. "" 1400(c), 1412(a)(1).] | Department of Education of Puerto Rico, rather than the parents of student who filed an IDEA action seeking judicial review of the administrative decision, was responsible for the costs of translating from Spanish to English relevant parts of the administrative record that were necessary for District Court to conduct its judicial review; the IDEA granted aggrieved party the right to file for judicial review in either state or federal court, all proceedings in District Court were required to be conducted in English, the Commonwealth waived its sovereign immunity by applying for and accepting federal funds under the IDEA, and requiring parents to pay translation costs would be inconsistent with the IDEA. U.S.C.A. Const.Amend. 11; Individuals with Disabilities Education Act, S 615(c), (i)(2), 20 U.S.C.A. S 1415(c), (i)(2); 48 U.S.C.A. S 864. | What is the take of Congress on Parent's rights under Individuals with Disabilities Education Act? | Education - Memo #164 - C - BR.docx | LEGALEASE-00042745-LEGALEASE-00042746 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 11696 | Lawrence v. Cain, 144 Ind. App. 210 | 141E+990 | In appellant's brief he cites Webster's New Collegiate Dictionary as listing nine definitions of the word, any one of which would include "college", but he failed to set out the definitions. With this contention we must disagree, as the word "school" by common usage, is considered local school corporations and does not generally include higher seats of learning which are usually referred to as colleges or universities. | By common usage, "school" is considered local school corporations and does not generally include higher seats of learning such as colleges or universities. | "Under common usage, does ""school"" include colleges and universities?" | 017099.docx | LEGALEASE-00153736-LEGALEASE-00153737 | Order, SA | 0.62 | 1 | 0 | 0 | 1 | |
| 11697 | Barrett v. Hand, 158 Neb. 273 | 200+77(2) | We have said: "A public highway, while being used as such, can only be vacated by the county board in the manner prescribed by law; a proper petition for that purpose being necessary. Rev.St.1913, " 2857; McNair v. State, 26 Neb. 257, 41 N.W. 1099."State ex rel. Enerson v. County Com'rs, 102 Neb. 199, 166 N.W. 554, 555. See, also, Barry v. Deloughrey,; Letherman v. Hauser, 77 Neb. 731, 110 N.W. 745; Koch v. County of Dakota, 151 Neb. 506, 38 N.W.2d 397; Wright v. Loup River Public Power Dist., 133 Neb. 715, 277 N.W. 53; Feuerstein v. Saunders County, 110 Neb. 121, 193 N.W. 256; McNair v. State, 26 Neb. 257, 41 N.W. 1099. | A public highway, while being used as such, can only be vacated by county board in the manner prescribed by law, and a proper petition for such purpose is necessary. R.R.S.1943, SS 39-102, 39-105. | Is a proper petition necessary for the vacating of a public highway? | 019302.docx | LEGALEASE-00153639-LEGALEASE-00153640 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 11698 | Diaz v. Bell MicroProducts-Future Tech, 43 So. 3d 138 | 302+308 | Here, the plaintiff's claim against Diaz was based on the dishonored checks issued by USA Direct and the alleged "Garantia Personal" signed by Diaz. Although the plaintiff attached the four dishonored checks and the "Garantia Personal," it failed to attach an English translation of the "Garantia Personal." As "pleadings are required to be in the English language," 40 Fla. Jur.2d Pleadings " 13 (2010), the attachment of the untranslated "Garantia Personal" does not satisfy the requirements of rule 1.130(a), and therefore, it is as if the plaintiff failed to attach to the complaint the written contract that formed the basis of its claim for relief against Diaz. As such, the plaintiff's complaint failed to state a cause of action against Diaz, see Safeco Ins. Co. of Am. v. Ware, 401 So.2d 1129, 1130 (Fla. 4th DCA 1981) ("In the case of a complaint based on a written instrument it does not state a cause of action until the instrument or an adequate portion thereof is attached to or incorporated in the pleading in question."), and therefore, the trial court erred by entering final summary judgment in favor of the plaintiff on the issue of Diaz's liability. Accordingly, we reverse the final summary judgment entered in favor of the plaintiff and against Diaz, and we remand for further proceedings. Upon remand, the plaintiff is directed to file the translated personal guaranty as an attachment to the complaint. | Creditor's attachment, to its complaint seeking to hold individual personally liable for certain dishonored checks issued by debtor, of an untranslated Spanish-language document purporting to be individual's personal guaranty of debtor's obligations was insufficient to satisfy procedural rule requiring a written contract or document that forms the basis of a claim for relief to be attached to or incorporated in the pleading; absence of an English translation of the document was equivalent to complete failure to attach the document. West's F.S.A. RCP Rule 1.130. | Are pleadings required to be in the English language? | Pleading - Memo 526-RMM_61214.docx | ROSS-003294014-ROSS-003294015 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 11699 | Coleman v. City of Mesa, 230 Ariz. 352 | 307A+624 | Dismissal is appropriate under Rule 12(b)(6) only if "as a matter of law [ ] plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." Fid. Sec. Life Ins. Co. v. State Dep't of Ins., 191 Ariz. 222, 224 " 4, 954 P.2d 580, 582 (1998). Because questions of law are reviewed de novo, e.g., Wilmot v. Wilmot, 203 Ariz. 565, 569 " 10, 58 P.3d 507, 511 (2002), the grant of a dismissal under Rule 12(b)(6) is reviewed de novo. | Dismissal is appropriate for failure to state claim only if, as a matter of law, plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof. 16 A.R.S. Rules Civ.Proc., Rule 12(b)(6). | When is a dismissal under Rule 12(b)(6) for failure to state a claim appropriate? | 037969.docx | LEGALEASE-00152915-LEGALEASE-00152916 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11700 | Dee v. Rakower, 112 A.D.3d 204 | 307A+624 | On a motion to dismiss a complaint pursuant to CPLR 3211(a)(7), the court must accept the facts alleged by the plaintiff as true and liberally construe the complaint, according it the benefit of every possible favorable inference (see Campaign for Fiscal Equity v. State of New York, 86 N.Y.2d 307, 318, 631 N.Y.S.2d 565, 655 N.E.2d 661; see also Sokoloff v. Harriman Estates Dev. Corp., 96 N.Y.2d 409, 414, 729 N.Y.S.2d 425, 754 N.E.2d 184; Leon v. Martinez, 84 N.Y.2d 83, 87"88, 614 N.Y.S.2d 972, 638 N.E.2d 511). The role of the court is to "determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v. Martinez, 84 N.Y.2d at 87"88, 614 N.Y.S.2d 972, 638 N.E.2d 511). Therefore, a complaint is legally sufficient if the court determines that a plaintiff would be entitled to relief on any reasonable view of the facts stated (see Campaign for Fiscal Equity v. State of New York, 86 N.Y.2d at 318, 631 N.Y.S.2d 565, 655 N.E.2d 661). "Whether a plaintiff can ultimately establish [his or her] allegations is not part of the calculus" (EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 19, 799 N.Y.S.2d 170, 832 N.E.2d 26). | A complaint is legally sufficient, on a motion to dismiss for failure to state a cause of action, if the trial court determines that the plaintiff would be entitled to relief on any reasonable view of the facts stated. McKinney's CPLR 3211(a)(7). | "On a motion to dismiss a complaint pursuant to CPLR 3211(a)(7) for failure to state a cause of action, should the court accept the plaintiff's allegations as true and construe the allegations liberally?" | 037971.docx | LEGALEASE-00152917-LEGALEASE-00152918 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 11701 | Bryson v. News Am. Publications, 174 Ill. 2d 77 | 307A+561.1 | We first consider whether the trial court properly dismissed counts I through IV of the plaintiff's complaint, which attempt to state a cause of action for defamation against the defendants. As previously noted, the defendants moved to dismiss these counts pursuant to section 2"615 of the Code of Civil Procedure (735 ILCS 5/2"615 (West 1994)). A section 2"615 motion attacks the legal sufficiency of a complaint. Such a motion does not raise affirmative factual defenses but alleges only defects on the face of the complaint. Urbaitis v. Commonwealth Edison, 143 Ill.2d 458, 475, 159 Ill.Dec. 50, 575 N.E.2d 548 (1991). In ruling on a section 2"615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom. McGrath v. Fahey, 126 Ill.2d 78, 90, 127 Ill.Dec. 724, 533 N.E.2d 806 (1988); Schaffer v. Zekman, 196 Ill.App.3d 727, 731, 143 Ill.Dec. 916, 554 N.E.2d 988 (1990). | Motion to dismiss for failure to state claim does not raise affirmative factual defenses but alleges only defects on face of complaint. S.H.A. 735 ILCS 5/2-615. | Does a motion to dismiss not raise affirmative factual defenses but alleges only defects on the face of the complaint? | 038164.docx | LEGALEASE-00153065-LEGALEASE-00153066 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 11702 | Robin v. Bellsouth Advert. & Pub. Co., 221 Ga. App. 360 | 307A+680 | Robin does not allege he was refused access to this advertising service; rather, he contends BAPCO's method of communicating the telephonic advertisements damaged him. He alleges that because the attorney advertisements included in the "consumer tips" messages do not reveal that attorneys paid for the ads, BAPCO creates the impression that the featured attorneys are more qualified or that BAPCO endorses them. His claims are based on that allegation. We take as true all the factual allegations of his complaint, as required when determining the merits of a motion to dismiss.Morgan v. Vitrified Brick & Clay Co., 196 Ga.App. 779, 780(1), 397 S.E.2d 49 (1990). | Court takes as true all factual allegations of complaint when determining merits of motion to dismiss. | Does a court take as true all factual allegations of complaint when determining merits of a motion to dismiss? | Pretrial Procedure - Memo # 9043 - C - MS_60449.docx | ROSS-003279056-ROSS-003279057 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11703 | Gens v. Casady Sch., 2008 OK 5 | 307A+624 | Generally, motions to dismiss are viewed with disfavor. This court reviews the dismissal de novo considering the legal sufficiency of the petition and taking all allegations in the plaintiff's petition as true. The function of a motion to dismiss is to test the law of the claims, not the facts supporting them. No dismissal for failure to state a claim upon which relief may be granted should be allowed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle relief. Plaintiffs need neither identify a specific theory of recovery nor set out the correct remedy or relief to which they may be entitled.If any set of facts can be established which is consistent with the allegations, a motion to dismiss should be denied. Dismissal is appropriate only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable theory. Where not all claims appear to be frivolous on their face or without merit, dismissals for failure to state a claim upon which relief may be granted are premature. The movant bears the substantial burden of demonstrating any insufficiency. Only under these standards may we uphold Gens' dismissal. | No dismissal for failure to state a claim upon which relief may be granted should be allowed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle relief; plaintiffs need neither identify a specific theory of recovery nor set out the correct remedy or relief to which they may be entitled. | Is a plaintiff required to identify a specific theory of recovery? | 038421.docx | LEGALEASE-00153077-LEGALEASE-00153078 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 11704 | Baske v. Burke, 125 Cal. App. 3d 38 | 307A+531 | Burke contends the trial court lacked jurisdiction to make an order vacating this judgment. This contention is not sound. The law favors trial on the merits and looks with disfavor upon a party who seeks to take advantage of the excusable mistake or neglect of his adversary. ( Daher v. American Pipe and Construction Co., 257 Cal.App.2d 816, 819, 65 Cal.Rptr. 259; Weitz v. Yenkosky, 63 Cal.2d 849, 854, 48 Cal.Rptr. 620, 409 P.2d 700.) The discretion of the court to be exercised in setting aside a default judgment should be in conformity with the spirit of the law as expressed above. (See Benjamin v. Dalmo Manufacturing Co., 31 Cal.2d 523, 526, 190 P.2d 593.). | Law favors trial on the merits and looks with disfavor upon party who seeks to take advantage of excusable mistake or neglect of his adversary. | Does law favor trial on the merits? | Pretrial Procedure - Memo # 9202 - C - BP_60509.docx | ROSS-003279807-ROSS-003279808 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11705 | Hartford Elevator v. Lauer, 94 Wis. 2d 571 | 308+60 | It is clear that the agent is liable for damages in the event of a breach of duty and that any losses he caused may be offset against any claim he may have for compensation. However we do not adopt the rigid, mechanical rule urged by the employer that compensation is automatically denied to the agent during the period in which he has committed a willful and significant breach of duty of loyalty. | An agent is liable for damages in the event of breach of duty to his principal and any losses he causes may be offset against any claim he may have for compensation. | Can any loss caused by an agent offset any claim he may have for compensation? | 041558.docx | LEGALEASE-00152990-LEGALEASE-00152991 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11706 | Morton v. J.I. Case Threshing Mach. Co., 99 Mo. App. 630 | 308+86 | It is the well-settled rule of law in this state that where an agent introduces the purchaser or discloses his name to the seller, and through such introduction or disclosure negotiations are opened and the sale of the property is effected, the agent is entitled to his commissions, though the sale is made by the owner.Tyler v. Parr, 52 Mo. 249; Timberman v. Craddock, 70 Mo. 638; Gelatt v. Ridge, 117 Mo. 560, 23 S. W. 882, 38 Am. St. Rep. 683; Lipscomb & Russ v. Cole, 81 Mo. App. 53. The evidence in the present case certainly had a tendency to show that the plaintiff had disclosed the name of a purchaser to the defendant, and that the sale to Borst would not have been effected but for such disclosure; and to that extent, at least, the plaintiff was the procuring cause of the sale. We think the evidence was sufficient to carry the case to the jury, and that the trial court did not err in denying the defendant's demurrer. | Where a sale of property is effected owing to an agent having introduced the purchaser to the owner or disclosed the name of the purchaser to the owner, the agent is entitled to his commissions, though the sale is actually made by the owner. | "Is an agent entitled to a commission if he introduces the purchaser and through such introduction, a property is sold?" | 041560.docx | LEGALEASE-00153087-LEGALEASE-00153088 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 11707 | Morton v. J.I. Case Threshing Mach. Co., 99 Mo. App. 630 | 308+86 | It is the well-settled rule of law in this state that where an agent introduces the purchaser or discloses his name to the seller, and through such introduction or disclosure negotiations are opened and the sale of the property is effected, the agent is entitled to his commissions, though the sale is made by the owner.Tyler v. Parr, 52 Mo. 249; Timberman v. Craddock, 70 Mo. 638; Gelatt v. Ridge, 117 Mo. 560, 23 S. W. 882, 38 Am. St. Rep. 683; Lipscomb & Russ v. Cole, 81 Mo. App. 53. The evidence in the present case certainly had a tendency to show that the plaintiff had disclosed the name of a purchaser to the defendant, and that the sale to Borst would not have been effected but for such disclosure; and to that extent, at least, the plaintiff was the procuring cause of the sale. We think the evidence was sufficient to carry the case to the jury, and that the trial court did not err in denying the defendant's demurrer. | Where a sale of property is effected owing to an agent having introduced the purchaser to the owner or disclosed the name of the purchaser to the owner, the agent is entitled to his commissions, though the sale is actually made by the owner. | Can an agent be entitled to a commission even if the sale is made by the owner? | 041562.docx | LEGALEASE-00153099-LEGALEASE-00153100 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 11708 | Amarillo Nat. Bank v. Dilday, 693 S.W.2d 38 | 8.30E+184 | We find all of these authorities persuasive. We also note the well-established principle in Texas that the rules of construction governing contracts are applicable to bills and notes, and a bill or note must be construed as a whole so as to give effect, if possible, to every part of such instrument. Greiner v. Rogers, 450 S.W.2d 665. Moreover, memoranda on a bill or note placed thereon contemporaneously with the intention that they become a part of the instrument become a substantive part thereof. Weaver v. Weaver, 171 S.W.2d 898. | Rules of construction governing contracts are applicable to bills and notes, and bill or note must be construed as whole so as to give effect, if possible, to every part of such instrument. V.T.C.A., Bus. & C. S 3.104(a). | Does a note have to be construed as a whole? | 008990.docx | LEGALEASE-00154703-LEGALEASE-00154704 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 11709 | Amarillo Nat. Bank v. Dilday, 693 S.W.2d 38 | 8.30E+184 | We find all of these authorities persuasive. We also note the well-established principle in Texas that the rules of construction governing contracts are applicable to bills and notes, and a bill or note must be construed as a whole so as to give effect, if possible, to every part of such instrument. Greiner v. Rogers, 450 S.W.2d 665. Moreover, memoranda on a bill or note placed thereon contemporaneously with the intention that they become a part of the instrument become a substantive part thereof. Weaver v. Weaver, 171 S.W.2d 898. | Rules of construction governing contracts are applicable to bills and notes, and bill or note must be construed as whole so as to give effect, if possible, to every part of such instrument. V.T.C.A., Bus. & C. S 3.104(a). | Should notes be construed as a whole? | Bills and Notes - Memo 1001 - IS RK_61279.docx | ROSS-003323714-ROSS-003323715 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 11710 | Thornton v. Crowther, 24 Mo. 164 | 83E+481 | There is no error in this record. Although the legal ownership of the note was not transferred--the assignment being on a separate paper and not on a note, as required by the statute--yet the beneficial ownership passed, and the assignee became the real party in interest, and entitled as such to sue upon the note in his own name. | An assignment of a promissory note, written on a separate paper, although not transferring the legal ownership, transfers the beneficial ownership in the note, so as to enable the assignee to sue on it in his own name. | Does a note written on a separate instrument enable the assignee to sue upon it in his own name? | 009953.docx | LEGALEASE-00153782-LEGALEASE-00153783 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 11711 | Rubio v. Capital One Bank, 613 F.3d 1195 | 172H+1344 | By contrast, TILA and Regulation Z do require a Schumer Box to disclose credit card APRs. 15 U.S.C. " 1637(c)(1)(A)(i)(I); 12 C.F.R. " 226.5a(b)(1). This disclosure must be clear and conspicuous, 15 U.S.C. " 1632(a); 12 C.F.R. " 226.5(a)(1), which, for purposes of credit card solicitations, is defined in the official staff commentary to Regulation Z as "in a reasonably understandable form and readily noticeable to the consumer." 12 C.F.R. pt. 226 supp. I, para. 5a(a)(2), cmt. 1; see also Barrer v. Chase Bank USA, N.A., 566 F.3d 883, 887 & n. 4 (9th Cir.2009) (noting that the official staff commentary is owed deference). Thus, Regulation Z prohibits a Schumer Box from making "misleading" APR disclosures, where "misleading" means a disclosure that a reasonable consumer will either not understand or not readily notice. See Barrer, 566 F.3d at 892 (adopting "reasonable cardholder" standard). Put differently, an APR disclosure that is not "clear and conspicuous" is ipso facto "misleading." | Truth in Lending Act (TILA) and its regulation Z prohibited a Schumer Box in a credit card solicitation from making misleading annual percentage rate (APR) disclosures, where "misleading" meant a disclosure that a reasonable consumer would either not understand or not readily notice. Truth in Lending Act, S 127(c)(1)(A)(i)(I), 15 U.S.C.A. S 1637(c)(1)(A)(i)(I); 12 C.F.R. S 226.5a(b)(1). | Do disclosures required under TILA have to be clear and conspicuous? | 013942.docx | LEGALEASE-00153921-LEGALEASE-00153922 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 11712 | Smith v. C. I. R., 537 F.2d 972 | 220+3179 | To determine whether a transaction is a sale or exchange a court any look to the intent of the parties as well as to what was actually done. See Alderson v. C.I.R., supra; Coastal Terminals, Inc. v. United States, 320 F.2d 333 (4th Cir. 1963). | To determine whether a transaction is a sale or exchange a court may look to the intent of the parties as well as to what was actually done. 26 U.S.C.A. (I.R.C.1954) S 1031(a). | Does the intent of the parties determine whether the transaction constituted a sale or an exchange of property? | 018303.docx | LEGALEASE-00154621-LEGALEASE-00154622 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 11713 | Myers v. City of Palmyra, 355 S.W.2d 17 | 302+48 | In determining whether or not a petition states a claim upon which relief may be granted the averments therein are to be given a liberal construction, and are to be accorded their reasonable and fair intendment. A petition is not to be held insufficient merely because of a lack of definiteness or certainty in allegation or because of informality in the statement of an essential fact. Hiltner v. Kansas City, Mo., 293 S.W.2d 422, 424; Zuber v. Clarkson Construction Company, 363 Mo. 352, 251 S.W.2d 52. Plaintiff asserts in his brief that there was "a general condition of deep snow in the City of Palmyra," that there were "dangerous accumulations and banks or piles of snow on the streets of Palmyra constituting a hazard to vehicular and pedestrian traffic and rendering the streets impassable," and that the snow was "piled, banked and drifted to great depths in many places on the streets." We shall assume that it is reasonable to infer these facts from the more general allegations of the petition. | Petition is not to be held insufficient merely because of lack of definiteness or certainty in allegation or because of informality in statement of essential fact. | Will a petition be held insufficient for lack of definiteness or certainty in allegation? | 023738.docx | LEGALEASE-00154322-LEGALEASE-00154323 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11714 | Williams v. Mueller Copper Tube Co., 149 So. 3d 527 | 307A+681 | Our analysis of this issue is hobbled by the parties' failure to recognize the fundamental difference between motions to dismiss under Rules 12 and 56. "Rule 12(b)(6) tests the legal sufficiency of a complaint, and provides that dismissal shall be granted to the moving party where the plaintiff has failed to state a claim upon which relief can be granted."Chalk v. Bertholf, 980 So.2d 290, 293 (Miss.Ct.App.2007). A Rule 12(b)(6) motion to dismiss must be decided on the face of the pleadings alone. | Trial court was precluded from considering Workers' Compensation Commission's file regarding employee's death when deciding employer's motion to dismiss for failure to state a claim upon which relief can be granted in action in which employee's estate asserted that employer failed to provide safe working environment, where file was outside the pleadings. Rules Civ.Proc., Rule 12(b)(6). | Should a motion to dismiss for failure to state a claim be decided on the face of the pleadings alone? | 038570.docx | LEGALEASE-00153947-LEGALEASE-00153948 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 11715 | In re Paternity of G.W., 983 N.E.2d 1193 | 307A+556.1 | Mother brought her initial motion to dismiss under the province of Indiana Trial Rule 12(B)(6), failure to state a claim, as well as pursuant to the claim that R.M. lacks standing. Motions to dismiss for lack of standing may be brought under Trial Rule 12(B)(6) for failure to state a claim on which relief can be granted. Thomas v. Blackford Co. Area Bd. of Zoning Appeals, 907 N.E.2d 988, 990 (Ind.2009). If the motion is presented under Rule 12(B)(6), the allegations of the complaint are required to be taken as true. Id. A successful 12(B)(6) motion alleging lack of standing requires that the lack of standing be apparent on the face of the complaint. Id. However, if on a 12(B)(6) motion matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Ind. T.R. 56 See T.R. 12. In this case, the trial court conducted an evidentiary hearing and both parties tendered briefs in support of their respective positions. As such, we shall proceed under the summary judgment standard of review. | A successful motion to dismiss alleging lack of standing requires that the lack of standing be apparent on the face of the complaint; however, if, on a motion to dismiss for lack of standing, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. Trial Procedure Rules 12(B)(6), 56. | Does a successful 12(B)(6) motion to dismiss alleging lack of standing require that the lack of standing be apparent on the face of the complaint? | 038643.docx | LEGALEASE-00154022-LEGALEASE-00154023 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 11716 | K.R. Exch. Servs. v. Fuerst, Humphrey, Ittleman, PL, 48 So. 3d 889 | 307A+681 | Addressing the substance of the allegations themselves, we hold that the complaint does not state a cause of action for legal malpractice against FHI and Ittleman. First, K.R.-Israel has failed to properly allege that it has standing to bring this action. Conceding that it is not in privity with FHI, K.R.-Israel contends that the complaint alleges that K.R.-Israel fits within a narrow exception to this requirement-it is an intended third-party beneficiary of FHI's legal representation of K.R.-USA. See Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner, 612 So.2d 1378, 1379 (Fla.1993); Angel, Cohen & Rogovin v. Oberon Inv., N.V., 512 So.2d 192, 194 (Fla.1987). This contention is without merit as the retainer agreement attached to the complaint is inconsistent with those allegations. It is well settled that the court must consider an exhibit attached to the complaint together with the complaint's allegations, and that the exhibit controls when its language is inconsistent with the complaint's allegations. See Blue Supply Corp. v. Novos Electro Mech., Inc., 990 So.2d 1157 (Fla. 3d DCA 2008); Ginsberg v. Lennar Fla. Holdings, Inc., 645 So.2d 490, 494 (Fla. 3d DCA 1994); Harry Pepper & Assocs., Inc. v. Lasseter, 247 So.2d 736, 736 (Fla. 3d DCA 1971). | On a motion to dismiss, the court must consider an exhibit attached to the complaint together with the complaint's allegations, and the exhibit controls when its language is inconsistent with the complaint's allegations. | "On a motion to dismiss, do the exhibit control when its language is inconsistent with the complaint's allegations?" | 038681.docx | LEGALEASE-00154030-LEGALEASE-00154031 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11717 | O.S.G. by L.G. v. G.B., Jr., 805 S.W.2d 704 | 307A+581 | In deciding whether to order dismissal for failure to prosecute, a trial court may consider not only the length of delay, but attendant circumstances. State ex rel. Mo. Highway and Transportation Comm'n. v. Kersey, 663 S.W.2d 364, 367[4] (Mo.App.1983); State ex rel. State Highway Comm'n. v. Milnes, 573 S.W.2d 727, 728 (Mo.App.1978). Whether an action has been diligently prosecuted must be decided on a case-by-case basis. Knight v. Kitchen, 733 S.W.2d 864, 865[2] (Mo.App.1987); Kralik v. Mortgage Syndicate, Inc., 673 S.W.2d 448, 449[2] (Mo.App.1984). | In deciding whether to order dismissal for failure to prosecute, trial court may consider not only the length of the delay but attendant circumstances. | What should the court consider in determining whether to dismiss for want of prosecution? | 05802.docx | LEGALEASE-00096739-LEGALEASE-00096740 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 11718 | Utah Oil Co. v. Harris, 565 P.2d 1135 | 307A+581 | The foregoing clearly appears to have been enacted to safeguard a litigant who finds himself without counsel and prevents further proceedings until he again has counsel or chooses to proceed pro se. It is not a court directive nor does it exact any penalty against the litigant who fails for one reason or another to engage new counsel since, by its own terms, it affords him the alternative of appearing in person. Consequently, when a litigant does fail to engage new counsel, that, in and of itself, is not an adequate basis to default him or to dismiss as against him with prejudice. | Statute providing for notice to appoint successor attorney is not a court directive nor does it exact any penalty against litigant who fails for one reason or another to engage in counsel; consequently, when a litigant does fail to engage new counsel, that, in and of itself, is not an adequate basis to default him or to dismiss as against him with prejudice. U.C.A.1953, 78-51-36; Rules of Civil Procedure, rule 41(b). | "Is a failure to engage a new council by litigant, an adequate basis to default him or to dismiss as against him with prejudice?" | Pretrial Procedure - Memo # 9517 - C - NC_61108.docx | ROSS-003294624-ROSS-003294625 | Condensed, SA | 0.28 | 0 | 1 | 0 | 1 | |
| 11719 | Arriola v. Time Ins. Co., 296 Ill. App. 3d 303 | 307A+561.1 | Here, plaintiff has appealed the granting of defendant's section 2"619 motion to dismiss under Supreme Court Rule 301 (134 Ill.2d R. 301). A section 2"619 motion to dismiss allows for an involuntary dismissal of a claim based on certain defects or defenses. The basis of the motion must go to an entire claim or demand. Illinois Graphics Co. v. Nickum, 159 Ill.2d 469, 485, 203 Ill.Dec. 463, 639 N.E.2d 1282 (1994). Section 2"619(a) additionally provides that if the grounds for the motion do not appear on the face of the pleading attached, the motion shall be supported by affidavit. 735 ILCS 5/2"619(a)(West 1994). Here, defendant supported its motion to dismiss with an affidavit of an employee stating that there were only two possible members of the class remaining in Illinois. | Motion for involuntary dismissal under the statute authorizing such dismissal based on certain enumerated defects or defenses must go to an entire claim or demand. S.H.A. 735 ILCS 5/2-619. | Should a motion for involuntary dismissal go to an entire claim or demand under the statute authorizing such dismissal? | 038978.docx | LEGALEASE-00154523-LEGALEASE-00154524 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11720 | Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 | 170B+2791 | We review de novo the district court's determination that it does not have personal jurisdiction over Fred Martin. Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir.2001). Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir.1990).Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." Id. In such cases, "we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir.1995). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," Amba Marketing Systems, Inc. v. Jobar International, Inc., 551 F.2d 784, 787 (9th Cir.1977), uncontroverted allegations in the complaint must be taken as true. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir.1996). | Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, plaintiff bears burden of demonstrating that jurisdiction is appropriate. | "When a defendant supports its motion to dismiss for lack of personal jurisdiction with affidavits, is the burden on a plaintiff to make a prima facie showing of personal jurisdiction over a defendant?" | 039291.docx | LEGALEASE-00154765-LEGALEASE-00154766 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11721 | Berman v. Griggs, 145 Me. 258 | 308+92(1) | It appears from the record that defendant Agger, under whose direction the information with respect to the proposed reconveyance of the real estate referred to above was communicated to the creditors, was admittedly the Attorney not only of the corporation but of the two defendants, Griggs and Christianson, and it very frequently happens when an attorney acts within the scope of his authority, the principal is estopped from repudiating such acts as his attorney, clothed with authority, may have taken. Burgess v. Stevens, 76 Me. 559, 562. This court said in Beale v. Swasey, 106 Me. 35, 37, 75 A. 134, 135: "An attorney within the scope of his authority represents his client. His acts of omission, as well as commission, are to be regarded as the acts of the party he represents. The neglect of the attorney is equivalent to the neglect of the party himself." | Attorney within scope of authority represents client, and his acts of omission as well as of commission are regarded as acts of party he represents. | Do attorneys acts of omission and commission regard as acts of the party he represents? | Principal and Agent - Memo 247 - KC_61128.docx | ROSS-003281571-ROSS-003281572 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 11722 | Bank of U.S. v. Daniel, 37 U.S. 32 | 8.30E+26 | Whether a bill of exchange, drawn in one state of this Union, payable in another, is a foreign bill, involves political considerations of some delicacy, although, we apprehend, of no intrinsic difficulty, at this day. The respective states are sovereign within their own limits, and foreign to each other, regarding them as local governments. 2 Peters, 586. Kentucky and Louisiana, as political communities, being distinct and sovereign, and consequently foreign to each other in regard to the regulation of contracts, it follows, a bill drawn in one, payable in other, is a foreign bill: and so this Court adjudged in the cause of Buckner v. Finley and Van Lear 2 Peters, 586. The bill, in that case, was drawn at Baltimore, by citizens of Maryland, on Stephen Dever, at New Orleans; whereas, the one in this case, was drawn and accepted in Kentucky, but payable at a bank in New Orleans. | Kentucky and Louisiana, as political communities, being distinct and sovereign, are foreign to each other in regard to the regulation of contracts, so that a bill drawn in one payable in the other is a "foreign bill." | "Is a bill of exchange drawn in one of the states of the United States, payable in another, a foreign bill?" | 008983.docx | LEGALEASE-00155458-LEGALEASE-00155459 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 11723 | Palmer v. Champion Mortg., 465 F.3d 24 | 172H+1342 | This emphasis on objective reasonableness, rather than subjective understanding, is also appropriate in light of the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer"a consumer who is neither particularly sophisticated nor particularly dense. See Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327"28 (7th Cir.1999) (explaining that TILA disclosures should be viewed from the perspective of an ordinary consumer, not a federal judge); see also Edmondson v. Allen"Russell Ford, Inc., 577 F.2d 291, 296 (5th Cir.1978) ("We must assess the adequacy of disclosure ... by the audience for which disclosure was intended."). Thus, we turn to the question of whether the average consumer, looking at the Notice objectively, would find it confusing. We conclude that she would not. | Courts must evaluate the adequacy of Truth in Lending Act (TILA)disclosures from the vantage point of a hypothetical average consumer, a consumer who is neither particularly sophisticated nor particularly dense. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Can a person who is particularly sophisticated be considered an average consumer? | Consumer Credit - Memo 171 - RK_61833.docx | ROSS-003306602-ROSS-003306603 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 11724 | Rudisell v. Fifth Third Bank, 622 F.2d 243 | 172H+1556 | TILA provides a right to rescind a transaction involving a security interest on the residence of the debtor until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required regarding the right to rescind and all other material disclosures, whichever is later. 15 U.S.C. s 1635.4 If the disclosures are never made, the debtor has a continuing right to rescind. See Sosa v. Fite, 498 F.2d 114, 117-18 (5th Cir. 1974); Eby v. Reb Realty, Inc., 495 F.2d 646, 648 (9th Cir. 1974); Pedro v. Pacific Plan of California, 393 F.Supp. 315, 323 (N.D.Cal.1975). The right to rescind is not dependent upon the one year statute of limitations period for a claim for damages. See Littlefield v. Walt Flanagan & Co., 498 F.2d 1133, 1136 (10th Cir. 1974).5 Thus, appellants may have a right to rescind even though their claim for damages is barred by the statute of limitations in 15 U.S.C. s 1640(e). | Right to rescind for violation of terms of Truth in Lending Act is not dependent upon one-year statute of limitations period for claim for damages. Truth in Lending Act, SS 125, 130(e) as amended 15 U.S.C.A. SS 1635, 1640(e). | Is the right to rescind dependent upon the one-year statute of limitations period for a claim for damages under TILA? | 013758.docx | LEGALEASE-00155484-LEGALEASE-00155485 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 11725 | Telles v. Dewind, 140 A.D.3d 1701 | 129+107 | We reject respondent's contention that the evidence did not support the finding that he committed the family offense of disorderly conduct because he did not intend to create a public disturbance. A person is guilty of disorderly conduct "when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [h]e engages in fighting or in violent, tumultuous or threatening behavior" (Penal Law " 240.20[1] ). The conduct does not have to take place in public, so long as the person recklessly creates a risk of a public disturbance (see Matter of McLaughlin v. McLaughlin, 104 A.D.3d 1315, 1315"1316, 961 N.Y.S.2d 838). | Conduct does not have to take place in public in order for a person to be found guilty of disorderly conduct, so long as the person recklessly creates a risk of a public disturbance. McKinney's Penal Law S 240.20(1). | Does the conduct have to take place in public in order for a person to be found guilty of disorderly conduct? | 014300.docx | LEGALEASE-00155474-LEGALEASE-00155475 | Order, SA | 0.67 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11726 | Univ. of Med. & Dentistry of New Jersey v. Univ. of Med. & Dentistry of New Jersey, Council of Am. Ass'n of Univ. Professors Chapters, 223 N.J. Super. 323 | 141E+990 | Public institutions of higher education are creatures of the State and can exercise only those powers granted to them by legislation, either expressly or by necessary implication. Fair Lawn Ed. Ass'n, supra, 79 N.J. at 579, 401 A.2d 681. N.J.S.A. 18A:64G"1 et seq. authorizes UMDNJ to operate a "program of medical and dental education" and in carrying out this mandate, to appoint and fix the terms of faculty members needed to operate the education programs in the most "efficient and economical manner." N.J.S.A. 18A:64G"2 and "6. Similar statutory provisions exist that authorize State colleges to appoint, remove and transfer staff as may be needed to carry out their mandated purpose of providing higher education facilities. See, e.g., N.J.S.A. 18A:64"6. The decision as to what retirement policy will allow a public institution to best fulfill its mandated purpose is, in the absence of any legislation to the contrary, properly left as a non-negotiable management prerogative. | Public institutions of higher education are creatures of the State and can exercise only those powers granted to them by legislation, either expressly or by necessary implication. | Are institutions of higher education creatures of the State? | Education - Memo #252 - C - ATS_61344.docx | ROSS-003294555-ROSS-003294556 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11727 | Atl. Cmty. Coll. v. Civil Serv. Comm'n, 59 N.J. 102 | 141E+990 | Turning to the first contention, we are not persuaded that county colleges are agencies of county government. Rather, we believe that they are separate political subdivisions which serve a separate purpose and operate apart from the governing bodies of the counties in which they are situated. Examination of the statutory scheme is demonstrative of this conclusion. | County colleges are not agencies of county government but, rather, are separate political subdivisions which serve separate purpose and operate apart from governing bodies of counties in which they are situated. N.J.S.A. 18A:64A-3, 4, 7 to 9, 15. | Is a college a separate political subdivision of government? | 017108.docx | LEGALEASE-00155267-LEGALEASE-00155268 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |
| 11728 | Roberts v. Clark, 188 S.W.3d 204 | 156+52(1) | A non-movant asserting an affirmative defense has the burden of presenting proof raising a fact issue as to each element of his defensive claim. McCall v. Trucks of Texas, Inc., 535 S.W.2d 791, 794 (Tex.Civ.App.Houston [1st Dist.] 1976, writ ref'd n.r.e.). Estoppel is defined in general as conduct which causes the other party to materially alter his position in reliance on that conduct. Braugh v. Phillips, 557 S.W.2d 155, 158 (Tex.Civ.App.Corpus Christi 1977, writ ref'd n.r.e.). To invoke the doctrine of estoppel, all the necessary elements of estoppel must be present. Douglas v. Aztec Petroleum Corp., 695 S.W.2d 312, 317 (Tex.App.Tyler 1985, no writ). One of its essential requisites is a reasonable or justified reliance on the conduct or statements of the person sought to be estopped by the person seeking the benefit of the doctrine. Id. The purpose of estoppel is for the protection of those who have been misled by that which upon its face was fair. Id. A person may not assert estoppel for the purpose of shielding himself from the results of his own dereliction of duty. Id. | "Estoppel" is defined in general as conduct which causes the other party to materially alter his position in reliance on that conduct. | Is estoppel defined as conduct which causes the party to materially alter his position in reliance on that conduct? | Estoppel - Memo #116 - C - CSS_61684.docx | ROSS-003278875-ROSS-003278876 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 11729 | Klaas v. Haueter, 49 Wash. App. 697 | 253+922 | Generally, the signatures of both spouses are required to transfer community real property. The joinder requirement extends to an agreement to list community real property for sale with a broker. Whiting v. Johnson, 64 Wash.2d 135, 141, 390 P.2d 985 (1964). If one spouse enters into a contract to sell, lease, or list for sale community realty without the other spouse joining, and the nonjoining spouse either (1) authorizes such or consents thereto, or (2) subsequently sanctions or ratifies the signing spouse's act, neither the nonsigning spouse nor the community may thereafter disaffirm it. Whiting, at 141, 390 P.2d 985. | Signatures of both spouses are required to transfer community real property; joinder requirement extends to agreement to list community real property for sale with broker. | Does the law require joinder of both spouses for contracts to convey or transfer community property? | 018408.docx | LEGALEASE-00155034-LEGALEASE-00155035 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 11730 | Bush v. Murray, 209 A.D. 563 | 302+38 | The fourth objection to the complaint relates to some of the allegations of the complaint, and asserts that, because they do not in themselves state facts sufficient to constitute a cause of action, the whole complaint should be dismissed. Part of a complaint may not be attacked for insufficiency as a cause of action, unless a separate cause of action is claimed by the pleader to be set forth. Since there is but one cause, a part may not be so attacked. A part of a cause of action may not be singled out and dismissed, on the ground that that part fails to state facts sufficient to constitute a cause of action. Hollingsworth v. Spectator Co., 53 App. Div. 291, 65 N. Y. Supp. 812; Toplitz v. Toplitz, 54 App. Div. 630, 66 N. Y. Supp. 386; Fliess v. Hoy, 150 App. Div. 555, 135 N. Y. Supp. 44. Either the complaint as a whole states a cause of action or it does not. | Part of a complaint may not be attacked for insufficiency as a cause of action, unless a separate cause of action is claimed by pleader to be set forth. | Can part of a complaint be attacked for insufficiency as a cause of action? | 023759.docx | LEGALEASE-00155235-LEGALEASE-00155236 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11731 | Avon Hardware Co. v. Ace Hardware Corp., 2013 IL App (1st) 130750 | 307A+679 | In ruling on a section 2"615 motion, the complaint's factual allegations are to be interpreted in the light most favorable to the plaintiff. Id. We review a dismissal under section 2"615 de novo. Performance Electric, Inc. v. CIB Bank, 371 Ill.App.3d 1037, 1039, 309 Ill.Dec. 538, 864 N.E.2d 779 (2007). | In ruling on a motion to dismiss, the complaint's factual allegations are to be interpreted in the light most favorable to the plaintiff. S.H.A. 735 ILCS 5/2-615. | "In ruling on a motion to dismiss, are the complaint's factual allegations to be interpreted in the light most favorable to the plaintiff? " | Pretrial Procedure - Memo # 10018 - C-AC.docx | LEGALEASE-00044966-LEGALEASE-00044967 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 11732 | Fitzgerald v. Bixler, 350 Mich. 688 | 302+354 | Since the record before us fails to disclose that any amended answer was timely filed raising or incorporating any such defenses, it is plain that both the motion to dismiss and the motion for new trial attempting to raise the same or new defensive grounds should have been denied. Passing now to the propriety of the court's action in entering judgment for the defendant notwithstanding the verdict. We find that the record before us fails also to disclose that any motion for a directed verdict was made by the defendant during the trial. | Where defendant filed answer of general denial in which he failed to raise defenses of election of remedies, waiver, estoppel and res judicata and where no amended answer was timely filed raising or incorporating such defenses, motion to dismiss and motion for new trial attempting to raise such defenses should have been denied. Michigan Court Rules, rule No. 18. | When will a motion to dismiss and motion for new trial be denied? | Pretrial Procedure - Memo # 9645 - C - KS_61398.docx | ROSS-003280078 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11733 | St. Clair Area Sch. Dist. Bd. of Educ. v. E.I. Assocs., 733 A.2d 677 | 307A+585.1 | A grant of a judgment of non pros, however, is based on the equitable principle of laches and not upon a statute of limitations. Jacobs. Laches applies when a defendant is so prejudiced by the passage of time and inexcusable delay that it would be unjust to allow the plaintiff to assert a claim. Id. Although statutes of limitation do not apply to the Commonwealth, laches may be imputed to the Commonwealth and its municipalities, as well as to an individual. Weinberg v. State Board of Examiners of Public Accountants, 509 Pa. 143, 501 A.2d 239 (1985); Stahl v. First Pennsylvania Banking and Trust Co., 411 Pa. 121, 191 A.2d 386 (1963). In Commonwealth ex rel. Hensel v. Philadelphia B. & B.M. Turnpike Co., 153 Pa. 47, 25 A. 1105 (1893), Chief Justice Paxson explained: Were the complainant here a private individual we would not hesitate to say that his laches was a bar to this proceeding. Is the commonwealth in any better position? We think not. It is true, the statute of limitations does not run against the commonwealth. But this is not a question of the statute of limitations. It is a question of laches and laches may be imputed to the commonwealth as well as to an individual. Id. at 53, 25 A. at 1106 (emphasis added). | A grant of a judgment of non pros is based on the equitable principle of laches and not upon a statute of limitations. | "Is granting of non pros. founded on equitable principle of laches, and not statute of limitations?" | 039237.docx | LEGALEASE-00155390-LEGALEASE-00155391 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 11734 | Olson v. Accessory Controls & Equip. Corp., 54 Conn. App. 506 | 307A+687 | Practice Book " 10-30 governs motions to dismiss. "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." Carl J. Herzog Foundation, Inc. v. University of Bridgeport, 41 Conn.App. 790, 793, 677 A.2d 1378 (1996), rev'd on other grounds, 243 Conn. 1, 699 A.2d 995 (1997). "A ruling on a motion to dismiss is neither a ruling on the merits of the action . nor a test of whether the complaint states a cause of action. Motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted.) Discover Leasing, Inc. v. Murphy, 33 Conn.App. 303, 306-307, 635 A.2d 843 (1993). | Motion to dismiss admits all facts well-pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. | "In addition to admitting all facts well pleaded, does a motion to dismiss invoke any record that accompanies the motion?" | Pretrial Procedure - Memo # 9852 - C - SHB.docx | LEGALEASE-00045345-LEGALEASE-00045346 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11735 | Piser v. State Farm Mut. Auto. Ins. Co., 405 Ill. App. 3d 341 | 307A+685 | If the defendant satisfies its initial burden of proof on a motion to dismiss based on affirmative matter avoiding the legal effect of a claim, the burden shifts to the plaintiff to show that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. Callaghan v. Village of Clarendon Hills, 401 Ill.App.3d 287, 290"91, 340 Ill.Dec. 757, 929 N.E.2d 61, 67 (2010). In order to refute evidentiary facts contained in the defendant supporting affidavits, the plaintiff must provide a counter affidavit. Callaghan, 401 Ill.App.3d at 291, 340 Ill.Dec. 757, 929 N.E.2d at 67, citing Kedzie & 103rd Currency Exchange, Inc., 156 Ill.2d at 116, 189 Ill.Dec. 31, 619 N.E.2d at 735. | If the defendant satisfies its initial burden of proof on a motion to dismiss based on affirmative matter avoiding the legal effect of a claim, the burden shifts to the plaintiff to show that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven; to refute evidentiary facts contained in the defendant's supporting affidavits, the plaintiff must provide a counteraffidavit, and the failure to do so results in the facts of the defendant's affidavits being deemed admitted. S.H.A. 735 ILCS 5/2-619(a)(9); Sup.Ct.Rules, Rule 191. | "To refute evidentiary facts contained in the defendants supporting affidavits, should the plaintiff provide a counter affidavit?" | 039419.docx | LEGALEASE-00155587-LEGALEASE-00155588 | SA, Sub | 0.19 | 0 | 0 | 1 | 1 | |
| 11736 | Bankmark of Florida v. Star Fin. Card Servs., 679 N.E.2d 973 | 21+9 | Under T.R. 56(E), affidavits supporting or opposing a summary judgment motion must be made upon the personal knowledge of the affiant, must affirmatively show that the affiant is competent to testify as to the matters covered in the affidavit and must set forth facts which would be admissible in evidence. L.K.I. Holdings, Inc. v. Tyner, 658 N.E.2d 111, 117 (Ind.Ct.App.1995), trans. denied. As a general rule, a court should disregard any inadmissible information contained in the affidavit. LeMaster v. Methodist Hospital, Inc., 601 N.E.2d 373, 376 (Ind.Ct.App.1992). However, a party complaining that an affidavit is defective has a duty to direct this complaint to the trial court, and the failure to do so constitutes waiver. Id. | Party complaining that affidavit is defective has a duty to direct this complaint to trial court, and failure to do so constitutes waiver. Trial Procedure Rule 56(E). | Will a complaining partys failure to raise a defective affidavit constitute waiver? | Affidavits - Memo 69 -_1suDGcJXF-YJF49JSQQaeEcfRjNOnJ9w.docx | ROSS-000000233-ROSS-000000234 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 11737 | United States v. Sun-Diamond Growers of California, 526 U.S. 398 | 63+1(1) | The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a quid pro quo-a specific intent to give or receive something of value in exchange for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken. The punishments prescribed for the two offenses reflect their relative seriousness: Bribery may be punished by up to 15 years' imprisonment, a fine of $250,000 ($500,000 for organizations) or triple the value of the bribe, whichever is greater, and disqualification from holding government office. See 18 U.S.C. "" 201(b) and 3571. Violation of the illegal gratuity statute, on the other hand, may be punished by up to two years' imprisonment and a fine of $250,000 ($500,000 for organizations). See "" 201(c) and 3571. | To convict under federal bribery statute, there must be a quid pro quo, a specific intent to give or receive something of value in exchange for an official act, while illegal gratuity may constitute merely a reward for some future act that public official will take and may already have determined to take, or for a past act that he has already taken. 18 U.S.C.A. S 201(b)(1, 2), (c). | Does bribery require a specific intent to perform a quid pro quo? | Bribery-Memo#1009-C-SG_62016.docx | ROSS-003295227-ROSS-003295228 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 11738 | Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812 | 360+18.51 | ERISA preempts state claims based on equitable estoppel. Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1095 (9th Cir.1985). Some circuits have held that federal common law equitable estoppel-based theories cannot be applied to a claim under ERISA. See Rodrigue v. Western and S. Life Ins. Co., 948 F.2d 969, 970"72 (5th Cir.1991) (citing the Seventh, Eighth, Tenth and Eleventh Circuits). This court, however, has recognized that federal equitable estoppel principles can, in certain circumstances, apply to some claims arising under ERISA. See Davidian v. Southern Cal. Meat Cutters Union and Food Employees Benefit Fund, 859 F.2d 134, 136 (9th Cir.1988); Ellenburg, 763 F.2d at 1096. | ERISA preempts state claims based on equitable estoppel. Employee Retirement Income Security Act of 1974, S 514(a), as amended, 29 U.S.C.A. S 1144(a). | Does Employee Retirement Income Security Act (ERISA) preempt state claims based on equitable estoppel? | 017777.docx | LEGALEASE-00156158-LEGALEASE-00156159 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 11739 | Bethesda Lutheran Church v. Twin City Const. Co., 356 N.W.2d 344 | 156+52(1) | Equitable estoppel is a doctrine designed to prevent a party from taking unconscionable advantage of his own actions. To invoke this doctrine plaintiff must show that defendant made representations or inducements upon which plaintiff reasonably relied that will cause plaintiff harm if estoppel is not applied. Northern Petrochemical Co. v. U.S. Fire Insurance Co., 277 N.W.2d 408, 410 (Minn.1979). | Equitable estoppel is a doctrine designed to prevent a party from taking unconscionable advantage of its own actions. | Is equitable estoppel designed to prevent a party from taking unconscionable advantage of his own actions? | 017795.docx | LEGALEASE-00156262-LEGALEASE-00156263 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11740 | O'Brien & Gere Engineers v. City of Salisbury, 222 Md. App. 492 | 307A+680 | We can quickly dispose of OBG's first two arguments. OBG is correct that in ruling on a motion to dismiss, the circuit court is not to make factual findings. See Magnetti v. Univ. of Md., 171 Md.App. 279, 284, 909 A.2d 1101 (2006) (motion to dismiss is decided based upon "allegations" not upon "evidence"). However, the record does not support its assertion that the court made factual findings in ruling on the motion to dismiss. | In ruling on a motion to dismiss for failure to state a claim, the circuit court is not to make factual findings. | "In ruling on a motion to dismiss for failure to state a claim, is the circuit court not to make factual findings?" | Pretrial Procedure - Memo # 10029 - C-AC_61701.docx | ROSS-003279441-ROSS-003279442 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 11741 | Pusakulich v. City of Ironwood, 247 Mich. App. 80 | 228+185(3) | Although the trial court did not state under which subsection of MCR 2.116 it was granting summary disposition, it is apparent from the record that the trial court utilized subsection C(7) because it reviewed documents outside the pleadings and granted summary disposition on the basis of immunity granted by law, i.e., governmental immunity. In analyzing a motion for summary disposition pursuant to MCR 2.116(C)(7), the contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant. Maiden v. Rozwood, 461 Mich. 109, 119, 597 N.W.2d 817 (1999); Novak v. Nationwide Mut. Ins. Co., 235 Mich.App. 675, 681, 599 N.W.2d 546 (1999). If a party supports a motion under MCR 2.116(C)(7) by submitting affidavits, depositions, admissions, or other documentary evidence, those materials must be considered. MCR 2.116(G)(5); Maiden, supra. The substance or content of the supporting materials must be admissible into evidence. Maiden, supra. We review de novo a trial court's grant of summary disposition. | Before trial court may review documents outside the pleadings in ruling on motion for summary disposition, substance or content of the supporting materials must be admissible into evidence. MCR 2.116(C)(7), (G)(5). | "If a party supports a motion for summary disposition by submitting affidavits, depositions, admissions, or other documentary evidence, should the substance or content of the supporting materials be admissible into evidence?" | 024525.docx | LEGALEASE-00156204-LEGALEASE-00156205 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 11742 | Olson v. Accessory Controls & Equip. Corp., 54 Conn. App. 506 | 307A+687 | Practice Book " 10-30 governs motions to dismiss. "A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." Carl J. Herzog Foundation, Inc. v. University of Bridgeport, 41 Conn.App. 790, 793, 677 A.2d 1378 (1996), rev'd on other grounds, 243 Conn. 1, 699 A.2d 995 (1997). "A ruling on a motion to dismiss is neither a ruling on the merits of the action ... nor a test of whether the complaint states a cause of action....Motions to dismiss are granted solely on jurisdictional grounds." (Citations omitted.) Discover Leasing, Inc. v. Murphy, 33 Conn.App. 303, 306-307, 635 A.2d 843 (1993). | Motion to dismiss admits all facts well-pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. | Does a motion to dismiss admit all facts well pleaded and invokes any record that accompanies a motion? | Pretrial Procedure - Memo # 10178 - C - NC.docx | LEGALEASE-00045918-LEGALEASE-00045919 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11743 | Atkins v. Jester, 309 S.W.3d 418 | 30+78(3) | A dismissal without prejudice may nevertheless operate to preclude the party from bringing another action for the same cause, and may nevertheless be res judicata of what the judgment actually decided. Douglas v. Thompson, 286 S.W.2d 833, 834 (Mo.1956). When the effect of the order is to dismiss the plaintiff's action and not the pleading merely, then the judgment entered is final and appealable. White v. Sievers, 359 Mo. 145, 221 S.W.2d 118, 122 (banc 1949). The dismissal without prejudice for failure of the petition to state a claim, when the party elects not to plead further, amounts to a determination that the plaintiff has no action.In such a case, the judgment of dismissal"albeit without prejudice"amounts to an adjudication on the merits and may be appealed.Hasemeier v. Smith, 361 S.W.2d 697, 699 (Mo. banc 1962); Nicholson v. Nicholson, 685 S.W.2d 588, 589 (Mo.App.1985). This train of exceptions serves to preserve to a plaintiff rights that otherwise would be lost from a dismissal, which, although without prejudice, becomes res judicata of what that judgment actually decides. Healy v. Atchison, Topeka & Santa Fe R.R. Co., 287 S.W.2d 813, 815 (Mo.1956); Douglas v. Thompson, 286 S.W.2d [833,] 834 [ (Mo.1956) ]. | A dismissal without prejudice for failure to state a claim upon which relief can be granted can be tantamount to a determination that the plaintiff has no cause of action and can result in a final, appealable judgment. | "Does the dismissal without prejudice for failure of the petition to state a claim, when the party elects not to plead further, amount to a determination that the plaintiff has no action?" | 024699.docx | LEGALEASE-00155978-LEGALEASE-00155979 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 11744 | Univ. of Texas at El Paso v. Herrera, 281 S.W.3d 575 | 360+191.1 | When a lawsuit is barred by sovereign immunity, the trial court lacks subject matter jurisdiction, and dismissal with prejudice is proper.City of Austin v. L.S. Ranch, Ltd., 970 S.W.2d 750, 752 (Tex.App."Austin 1998, no pet.).A plea to the jurisdiction is a dilatory plea by which a party contests the trial court's authority to determine the subject matter of the cause of action. City of Saginaw v. Carter, 996 S.W.2d 1, 2 (Tex.App."Fort Worth 1999, pet. dism'd w.o.j.); State v. Benavides, 772 S.W.2d 271, 273 (Tex.App."Corpus Christi 1989, writ denied). | When a lawsuit is barred by sovereign immunity, the trial court lacks subject-matter jurisdiction, and dismissal with prejudice is proper. | Is a dismissal with prejudice appropriate when trial court lacks subject matter jurisdiction because of a sovereign immunity bar? | 024735.docx | LEGALEASE-00156122-LEGALEASE-00156123 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 11745 | Johnson v. Com., 221 Va. 872 | 67+9(1) | The principles controlling our decision on the burglary assignment are well settled. In Davis v. Commonwealth, 132 Va. 521, 523, 110 S.E. 356, 357 (1922), it was held:Breaking, as an element of the crime of burglary, may be either actual or constructive. There is a constructive breaking when an entrance has been obtained by threat of violence, by fraud, or by conspiracy. Minn.Syn.Cr.Law, page 92; Clarke v. Commonwealth, 25 Gratt. (66 Va.) 912....Actual breaking involves the application of some force, slight though it may be, whereby the entrance is effected. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime. See the authorities cited, supra. But a breaking, either actual or constructive, to support a conviction of burglary, must have resulted in an entrance contrary to the will of the occupier of the house. | Actual breaking, as an element of crime of burglary, involves application of some force, slight though it may be, whereby entrance is obtained; merely turning key, lifting latch, opening door or resorting to other slight physical force is sufficient to constitute this element of burglary. Code 1950, S 18.2-92. | Does an actual breaking in burglary involve use of force? | 013071.docx | LEGALEASE-00156446-LEGALEASE-00156447 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 11746 | Gayoso Sav. Inst. v. Fellows, 46 Tenn. 467 | 83E+481 | If the instrument was filed in the court as evidence in a pending suit, so that it could not be withdrawn and actual delivery made, notice to the attorney having the control of the suit and the responsibility of the collection, and his undertaking, express or implied, to pay over the money to the assignee, or to act as his attorney in the collection, would be sufficient. If the debt in the present case, was represented at the time of the assignment, by the original note, then the delivery actually made was all that the case admitted, or that it was possible to make, and was sufficient, and no notice to the debtor was necessary. | If the instrument transferred was filed in a court, as evidence in a pending suit, so that it could not be withdrawn and actual delivery made, notice to the attorney having the control of the suit, and the responsibility of the collection, and his undertaking, express or implied, to pay over the money to the assignee, or to act as his attorney in the collection, would be sufficient; especially where the instrument or note, at the time of the assignment, had not ripened into a judgment; then the delivery in this case was all that it was possible to make, and was sufficient; and no notice to the debtor was necessary. | Is it necessary to give notice to a debtor of a debt if it was represented at the time of the assignment by the original note? | 009063.docx | LEGALEASE-00156512-LEGALEASE-00156513 | SA, Sub | 0.02 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11747 | Cockrell v. Taylor, 347 Mo. 1 | 83E+481 | Appellant next attacks the foreclosure on the ground that the Farm Mortgage Holding Company was not the owner and holder of the note and deed of trust at that time. " 3094, R.S.Mo.1929, Mo.St.Ann. "3094, p. 1918, makes the recitals in a trustee's deed prima facie evidence of the truth of the matters therein set out, and this deed did recite that at the date of foreclosure the Holding Company held the note and deed of trust. There is a distinction between the endorsement of a note and its assignment. Both endorsement and assignment transfer title to the assignee or endorsee; but the endorsement, if made before maturity, confers upon him the special rights of a holder in due course. While an endorsement must be made by written signature on the back of the instrument itself, an assignment of a note or mortgage may be by separate instrument or even by parol. Bishop v. Chase, 156 Mo. 158, 56 S.W. 1080, 79 Am.St.Rep. 515; O'Connor v. Slatter, 48 Wash. 493, 93 P. 1078. Here the assignments of the mortgage from the original mortgagee down to the Holding Company were all in writing and were duly acknowledged and recorded. The acknowledgment and recordation are prima facie evidence of due execution and delivery. Keener v. Williams, 307 Mo. 682, 271 S.W. 489. | While "endorsement of note" must be made by written signature on back of instrument itself, "assignment of note or mortgage" may be by separate instrument, or even by parol. | May assignment of a note be done by separate instrument? | 010066.docx | LEGALEASE-00156621-LEGALEASE-00156622 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11748 | State v. Gerard, 627 So. 2d 174 | 67+24 | Taken out of context, the trial court's instruction correctly stated the law.Date and time are not essential elements of burglary, and a bill of information charging that the offense occurred "on or about" a certain date is valid, State v. Guillot, 200 La. 935, 9 So.2d 235 (1942), especially when a date "reasonably near is established." United States v. Nersesian, 824 F.2d 1294, 1323 (2d Cir.1987), cert. denied, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); see also United States v. Reed, 887 F.2d 1398 (11th Cir.1989); United States v. Creamer, 721 F.2d 342 (11th Cir.1983). In many jurisdictions, proof that the offense has occurred at any time within the statutory limits on prosecution and before the filing of the indictment appears sufficient to sustain the validity of the indictment, no matter what date the state has alleged in its formal charge. See 3 C.E. Torcia, Wharton's Criminal Procedure, " 511 (12th ed. 1975). | Date and time are not essential elements of burglary, and bill of information charging that offense occurred "on or about" a certain date is valid, especially when a date reasonably near is established. | Is time an element of burglary? | 013084.docx | LEGALEASE-00156567-LEGALEASE-00156568 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 11749 | People v. Wilson, 11 Cal. App. 4th 1483 | 67+9(2) | Appellant's chief contention on appeal is that the verdict is contrary to the evidence because he could not harbor the necessary intent to commit burglary due to intoxication. Although appellant testified that he had been drinking, and the store manager and another witness testified that the appellant had a bottle, there was also considerable testimony that the appellant was not "drunk", and that his actions and speech were coherent. Penal Code, section 22, provides that while voluntary intoxication is no excuse for a crime, the jury may consider the fact of intoxication determining purpose, motive or intent. Under this section intoxication is not a defense to burglary. People v. Ramirez, 101 Cal.App.2d 50, 224 P.2d 878. Any witness may express his opinion as to intoxication. People v. Clark, 106 Cal.App.2d 271, at page 279, 235 P.2d 56, at page 60. The statute clearly leaves to the jury the question of whether intoxication precluded a defendant from forming the necessary intent. People v. Murphy, 1 Cal.2d 37, 32 P.2d 633. Here there is ample evidence to support their conclusion that it did not, and that the appellant entered the store with the intent to commit larceny. People v. Henderson, 138 Cal.App.2d 505, 292 P.2d 267. One who enters a store with the intent of committing larceny is guilty of burglary although the entry was made through the public entrance during business hours. People v. Barry, 94 Cal. 481, 29 P. 1026. | One who enters a store with intent of committing larceny is guilty of burglary although entry was made through public entrance during business hours. West's Ann.Pen.Code, S 666, subd. 3. | Does entry during business hours constitute burglary? | Burglary - Memo 310 - RK_62312.docx | ROSS-003283552-ROSS-003283554 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 11750 | State v. Stagnitta, 74 Conn. App. 607 | 67+9(2) | To enter unlawfully means to accomplish an entry by unlawful means, while to remain unlawfully means that the initial entering of the building ... was lawful but the presence therein became unlawful because the right, privilege or license to remain was extinguished. When either of these situations is established, the threshold element of burglary is present." State v. Edwards, 10 Conn.App. 503, 511, 524 A.2d 648, cert. denied, 204 Conn. 808, 528 A.2d 1155 (1987). | For purposes of statute providing that person is guilty of burglary in the first degree when he enters or remains unlawfully in building with intent to commit a crime therein, to "enter unlawfully" means to accomplish an entry by unlawful means, while to "remain unlawfully" means that the initial entering of the building was lawful but the presence therein became unlawful because the right, privilege or license to remain was extinguished. C.G.S.A. SS 53a-100(b), 53a-101(a). | What is unlawful entry in the context of burglary? | 013160.docx | LEGALEASE-00156595-LEGALEASE-00156596 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 11751 | Pardue v. State, 571 So. 2d 333 | 67+10 | Michael R. Pardue was convicted of second-degree escape, first-degree theft, second-degree theft, and first-degree burglary. He was sentenced as a habitual offender to 10 years' imprisonment on the escape conviction, to life imprisonment on the first-degree theft conviction, to 20 years on the second-degree theft conviction, and to life without parole on the burglary conviction. The Court of Criminal Appeals affirmed the conviction and sentence as to the escape conviction; vacated one of the theft convictions, ordering the court to set aside either the first- or the second-degree theft conviction and to resentence accordingly; and reversed and remanded as to the burglary conviction, directing the court to set aside the first-degree burglary conviction, to find Pardue guilty of third-degree burglary, and to sentence him accordingly. After its application for rehearing was overruled, the State filed a petition for a writ of certiorari, which we granted in order to consider whether a burglar is "armed with ... a deadly weapon" in accordance with Ala.Code 1975, " 13A"7"5(a), if he acquires a gun as loot during the burglary but does not use it or possess it for the purpose of its use or potential use as a weapon. | Burglar who acquired firearm as loot during course of burglary was "armed with deadly weapon," within meaning of first-degree burglary statute, even though he did not use or possess firearm for purpose of its use or potential use as weapon; overruling Buchannon v. State, 554 So.2d 477. Code 1975, S 13-7-5(a). | When is a person armed with a deadly weapon under the burglary statute? | Burglary - Memo 321 - RK_62321.docx | ROSS-003283639-ROSS-003283640 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11752 | Clear Channel Outdoor v. Mayor & City Council of Baltimore, 153 F. Supp. 3d 865 | 371+2001 | "The nebulous line between tax and fee is determined by federal law." Brittingham, 2013 WL 398098, at *3 (citing Folio, 134 F.3d at 1217). As a general matter, when evaluating whether a particular charge is a tax or a fee, a court should assess "whether the charge is for revenue raising purposes, making it a "tax," or for regulatory or punitive purposes, making it a "fee." " Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130, 134 (4th Cir.2000). All charges fall on a spectrum with a "classic tax" on one end and a "classic fee" on the other. San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of P.R., 967 F.2d 683, 685 (1st Cir.1992). "The "classic tax" is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large." Valero, 205 F.3d at 134 (citing San Juan Cellular, 967 F.2d at 685). "The "classic fee" is imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise "money placed in a special fund to defray the agency's regulation-related expenses." " Id. (quoting San Juan Cellular, 967 F.2d at 685). | The "classic tax" is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large. | Is a classic tax imposed by the legislature upon a large segment of society? | Taxation - Memo # 995 - C - JL.docx | LEGALEASE-00046401-LEGALEASE-00046402 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11753 | People v. Adams, 19 Cal. App. 4th 412 | 3.77E+10 | Giving effect then to the plain and ordinary meaning of the words and phrases contained in the statute, we conclude that, for purposes of the felony menacing statute, the General Assembly intended that the word "use" would necessarily include the physical possession of a deadly weapon at the time of the crime. See People v. Hines, 780 P.2d 556 (Colo.1989) (The term "use" in " 18"3"206 is broad enough to include the act of holding the weapon in the presence of another, without pointing the firearm at that person, in a manner that causes the other person to fear for his or her safety.).Our conclusion finds additional support from the language employed in other statutory provisions pertaining to criminal offenses. See " 16"11"309(2)(a)(I), C.R.S. (1992 Cum.Supp.) (" "Crime of Violence" means a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon...."); " 18"18"407(1)(f) (1992 Cum.Supp.) (sentencing an offender who "used, displayed, possessed or had available for use a deadly weapon"). These statutes confirm that, in order to use a deadly weapon, more is required than access | Under statute proscribing menacing committed by use of deadly weapon, word "use" includes physical possession of deadly weapon at time of crime. West's C.R.S.A. S 18-3-206. | "Under the statute proscribing menacing by use of a deadly weapon, what does the word ""use"" include?" | 046671.docx | LEGALEASE-00156480-LEGALEASE-00156481 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 11754 | Cockrell v. Taylor, 347 Mo. 1 | 83E+481 | Appellant next attacks the foreclosure on the ground that the Farm Mortgage Holding Company was not the owner and holder of the note and deed of trust at that time. " 3094, R.S.Mo.1929, Mo.St.Ann. "3094, p. 1918, makes the recitals in a trustee's deed prima facie evidence of the truth of the matters therein set out, and this deed did recite that at the date of foreclosure the Holding Company held the note and deed of trust. There is a distinction between the endorsement of a note and its assignment. Both endorsement and assignment transfer title to the assignee or endorsee; but the endorsement, if made before maturity, confers upon him the special rights of a holder in due course. While an endorsement must be made by written signature on the back of the instrument itself, an assignment of a note or mortgage may be by separate instrument or even by parol. Bishop v. Chase, 156 Mo. 158, 56 S.W. 1080, 79 Am.St.Rep. 515; O'Connor v. Slatter, 48 Wash. 493, 93 P. 1078. Here the assignments of the mortgage from the original mortgagee down to the Holding Company were all in writing and were duly acknowledged and recorded. The acknowledgment and recordation are prima facie evidence of due execution and delivery. Keener v. Williams, 307 Mo. 682, 271 S.W. 489. | While "endorsement of note" must be made by written signature on back of instrument itself, "assignment of note or mortgage" may be by separate instrument, or even by parol. | Can the assignment of a note or mortgage be made by parol? | 009108.docx | LEGALEASE-00157177-LEGALEASE-00157178 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11755 | Sterling & Snapp v. Bender, 7 Ark. 201 | 83E+426 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. Chit. on bills 253. By the indorsement the payee divests himself of the legal interest in the bill or note, and it is vested by the delivery in the holder. Wilkinson v. Nicklin, 2 Dall. Rep. 296. An endorsement in blank constitutes a complete and perfect transfer of the interest in the bill or note, and without the addition of any other words, will vest the right of action and all other rights in the transferee and subsequent holders: though if the transferee be a mere agent, his principal may interfere, and a blank indorsement is now considered as prima facie a transfer of the interest until the contrary be established by showing that it was a mere deposit, and is of itself sufficient to transfer the right of action to any bona fide holder. Chitty on Bills, 255. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | Whether indorsement in blank makes the bill or note payable to bearer? | Bills and Notes-Memo 1278-ANM_63204.docx | ROSS-003283332-ROSS-003283333 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11756 | Martin Glennon v. First Fid. Bank, N.A., 279 N.J. Super. 48 | 83E+452 | We start with the propositions that under N.J.S.A. 12A:3"419(1)(c) an instrument is converted when it is paid on a forged endorsement, and a depository bank warrants to the drawees that all signatures are genuine N.J.S.A. 12A:3"417(2), also making it liable to the drawer for conversion. Defendant, however, claims that the defense described in N.J.S.A. 12A:3"419(3) applies. This section provides a defense to a depository bank to conversion beyond the amount of the funds still in the hands of the bank if the bank has dealt with the instrument "in good faith and in accordance with the reasonable commercial standards applicable to the [bank's] business...." Although defendant contends that the issue of commercial reasonableness is one of fact which should not be determined on a motion for summary judgment, in this instance it is actually one of law. There is no question that the bank knew that and treated Russo's "S.S. Koppe" account as a personal account. There is also no question that it permitted Russo to deposit into the account checks clearly made payable to a corporation and then to withdraw the funds. Reasonable commercial standards in such a case are defined by law, and there is a series of cases in New Jersey clearly stating that it is negligent for a bank to permit the deposit of a check payable to a corporation into an individual account. See, e.g., Singer Sewing Machine Co. v. Citizens Nat'l Bank & Trust Co., 111 N.J.L. 199, 168 A. 32 (Sup.Ct.1933), aff'd o.b., 112 N.J.L. 497, 171 A. 796 (E. & A.1934); Budelman v. White's Express & Transfer Co., 49 N.J.Super. 511, 140 A.2d 552 (App.Div.1958); Silver v. Commonwealth Trust Co., 22 N.J.Super. 604, 92 A.2d 152 (Law Div.1952). Thus, the bank's actions in clear violation of this established law could not be found to have been "in accordance with the reasonable commercial standards applicable to the [bank's] business. | Under statutes, instrument is converted when it is paid on a forged endorsement, and depository bank warrants to the drawees that all signatures are genuine, also making it liable to the drawer for conversion. N.J.S.A. 12A:3-417(2), 12A:3-419(1)(c). | When does conversion of an instrument take place under the UCC? | 010969.docx | LEGALEASE-00157870-LEGALEASE-00157871 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 11757 | Atl. Bank of New York v. Israel Disc. Bank Ltd., 108 Misc. 2d 342 | 172H+820 | While section 4"207's warranty is phrased in absolute terms, an equitable exception crucial to this case has been developed by the courts. Where the proceeds of a forged check reach the intended payee, there can as a general rule be no cause of action by anyone on the forged endorsement. The payee cannot sue in conversion since he has suffered no damage"he has, after all, received the monies intended for him (Hillsley v. State Bank of Albany, 24 A.D.2d 28, 263 N.Y.S.2d 578 [1st Dept., 1965]). The drawer may not sue the drawee-payor bank for an improper charge on his account because, again, no damage has been suffered as the funds have been put to their proper use. And in a decision of this court (Bank Leumi Trust Co. of N.Y. v. Marine Midland, 93 Misc.2d 41, 402 N.Y.S.2d 111 [App. Term, 1st Dept., 1977]), it was held that where the payee has received funds on a check bearing his forged endorsement, the payor bank may not sue the collecting banks for breach of warranty under 4"207. Being immune from suit once the payee has received his funds, the payor bank has suffered no damage from the forgery and hence cannot reap undeserved benefits from the collecting banks. | Where proceeds of forged check reach intended payee, there can, as general rule, be no cause of action by anyone on forged instrument. Uniform Commercial Code, SS 4-207, 4-401. | Will there be a cause of action if the proceeds of a forged check reach the intended payee? | 010971.docx | LEGALEASE-00157872-LEGALEASE-00157873 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 11758 | Simon v. Pettit, 687 P.2d 1299 | 200+9 | Section 43"2"201(1)(c), 17 C.R.S. (1973), provides: "(1) The following are declared to be public highways: ... (c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years...." This statute codifies the common law method by which the public can obtain title by adverse use. See Mahnke, 170 Colo. at 67, 458 P.2d at 750; People ex rel. Mayer v. San Luis Valley Land & Cattle Co., 90 Colo. 23, 5 P.2d 873 (1931). If the public uses a road adversely, under a claim of right, and without interruption for the statutory period of twenty years, and the landowner knows of but does not object to the use, the requirements of section 43"2"201(1)(c) are satisfied and the road assumes the character of a public highway. Board of County Commissioners v. Flickinger, 687 P.2d 975 (Colo.1984); Mayer, 90 Colo. at 25"26, 5 P.2d at 874; Board of County Commissioners v. Ogburn, 38 Colo.App. 212, 554 P.2d 700 (1976). An initial question, and the first issue to be resolved here, is whether the two footpaths in this case come within the definition of a "road" and thus may be declared to be a public highway under the statute. | Two 18-inch footpaths over private land in populated, residential, urban area were not roads within purview of statute providing all roads over private lands that have been used adversely without interruption or objection on part of owners of such lands for 20 consecutive years are public highways. C.R.S. 43-2-201(1)(c). | What is a public highway? | Highways - In genral-Memo 6 - AM_62578.docx | ROSS-003307280-ROSS-003307281 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 11759 | In re Atkins, 67 Ohio App. 3d 783 | 307A+587 | It is settled that where a party fails to appear on the date set for a hearing, the court may order a dismissal under Civ.R. 41(B)(1). Allstate Ins. Co. v. Rule (1980), 64 Ohio St.2d 67, 69, 18 O.O.3d 299, 300, 413 N.E.2d 796, 798. However, such authority in the court is coupled with the caveat that an indispensable prerequisite to the dismissal is that plaintiff's counsel, or plaintiff if the proceeding is pro se, be given notice of the intended dismissal. Perotti v. Ferguson (1983), 7 Ohio St.3d 1, 2, 7 OBR 256, 256-257, 454 N.E.2d 951, 951-952 | Where a party fails to appear on the date set for a hearing, court may order a dismissal. Rules Civ.Proc., Rule 41(B)(1). | "Where a party fails to appear on the date set for a hearing, can a court order a dismissal?" | 024809.docx | LEGALEASE-00157504-LEGALEASE-00157505 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 11760 | Hubbard v. Mercantile Bank of Kansas City, 773 S.W.2d 517 | 307A+551 | Rule 55.27(a)(10) and its statutory counterpart, section 509.290.1(8), RSMo 1986, preserve as a defense the plea in abatement when "there is another action pending between the same parties for the same cause in this state." Mullen v. Fridley, 600 S.W.2d 125, 127 (Mo.App.1980). However, pendency of a prior action is not ground for dismissal with prejudice, but ground only to stay or abate the later action.See Brunton v. Floyd Withers, Inc., 716 S.W.2d 823, 825 (Mo.App.1986). We do not mean to hold that Hubbard's action against Mercantile should be stayed or abated under Rule 55.27(a)(10). We do not reach that question. | Pendency of prior action is not ground for dismissal with prejudice, but ground only to stay or abate later action. V.A.M.R. 55.27(a)(10); V.A.M.S. S 509.290, subd. 1(8). | "Is pendency of a prior action not ground for dismissal with prejudice, but ground only to stay or abate the later action?" | 024886.docx | LEGALEASE-00157119-LEGALEASE-00157120 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11761 | Reilly v. Reid, 45 N.Y.2d 24 | 336H+17 | The policy against relitigation of adjudicated disputes is strong enough generally to bar a second action even where further investigation of the law or facts indicates that the controversy has been erroneously decided, whether due to oversight by the parties or error by the courts (see Deposit Bank v. Frankfort, 191 U.S. 499, 510-511, 24 S.Ct. 154, 48 L.Ed. 276. Kiker v. Hefner, 5 Cir., 409 F.2d 1067, 1068-1069). Considerations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation. Afterthoughts or after discoveries however understandable and morally forgivable are generally not enough to create a right to litigate anew. | Considerations of judicial economy as well as fairness to parties mandate, at some point, an end to litigation, and afterthoughts or after discoveries, however understandable and morally forgivable, are generally not enough to create a right to litigate anew. | Does the considerations of judicial economy as well as fairness to the parties mandate an end to litigation? | Pretrial Procedure - Memo # 10455 - C - KG_64148.docx | ROSS-003280994 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 11762 | Adams v. Bear, 87 Ariz. 172 | 307A+694 | There is a further reason to conclude that the trial court did not intend to render judgment on the merits which is indicated by the court specifically stating in the judgment that "plaintiff's (Bear) complaint be dismissed without prejudice". It is a general rule that dismissals "without prejudice" indicate that such judgment or dismissals affect no right or remedy of the parties and that there has been no decision of the case upon the merits. | Generally, dismissals "without prejudice" indicate that dismissals affect no right or remedy of the parties and that there has been no decision of the case on the merits. | "Does a dismissal ""without prejudice,"" mean that no right or remedy of the parties is affected?" | Pretrial Procedure - Memo # 10574 - C - KI_62611.docx | ROSS-003310212-ROSS-003310213 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 11763 | Keim v. Kalbfleisch, 57 Ill. App. 3d 621 | 336H+117 | If a court approves a settlement, it merges all included claims and causes of action and is a bar to further proceedings. Wessel v. Gleich, 33 Ill.App.3d 204, 208, 337 N.E.2d 743, 746 (1st Dist. 1975); Knoll v. Swanson, 92 Ill.App.2d 398, 404, 234 N.E.2d 543, 546 (4th Dist. 1968). Furthermore, a dismissal "with prejudice" is as conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. Bank of America v. Jorjorian, 303 Ill.App. 184, 185, 24 N.E.2d 896, 897 (1st Dist. 1940). We hold that the dismissal with prejudice of plaintiff's first complaint, pursuant to a settlement agreement, is a final judgment on the merits. | A dismissal "with prejudice" is as conclusive of rights of parties as if suit had been prosecuted to a final adjudication adverse to plaintiffs. | Is dismissal with prejudice deemed to be as conclusive of rights of parties as if a matter had proceeded to trial and been resolved by final judgment adverse to a plaintiff? | 025209.docx | LEGALEASE-00157291-LEGALEASE-00157292 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 11764 | Governale v. Nw. Cmty. Hosp., 147 Ill. App. 3d 590 | 307A+693.1 | It is axiomatic that when a case is dismissed, "the parties are out of court and any further proceedings are unauthorized until the judgment of dismissal is vacated and the cause reinstated." (People v. Bristow (1945), 391 Ill. 101, 112, 62 N.E.2d 545, 552, quoting Davis v. Robinson (1940), 374 Ill. 553, 30 N.E.2d 52; Bettenhausen v. Guenther (1945), 388 Ill. 487, 58 N.E.2d 550; Chicago Title & Trust Co. v. Tilton (1912), 256 Ill. 97, 99 N.E. 897.) However, an exception to the general rule arises where the parties actively participate in further proceedings or where the party in whose favor dismissal was entered otherwise conducts himself in a manner inconsistent with the order of dismissal. (Gentile v. Hansen (1985), 131 Ill.App.3d 250, 86 Ill.Dec. 515, 475 N.E.2d 894.) Such action operates to nullify the order of dismissal and revests the trial court with jurisdiction.Johnson v. Empire Mutual Insurance Co. (1979), 70 Ill.App.3d 780, 27 Ill.Dec. 79, 388 N.E.2d 1042; see generally, Gentile v. Hansen and cases cited therein. | When case is dismissed, parties are out of court and any further proceedings are unauthorized until judgment of dismissal is vacated and cause reinstated, except where parties actively participate in further proceedings or where party in whose favor dismissal was entered otherwise conducts himself in manner inconsistent with order of dismissal; such action operates to nullify order of dismissal and revests trial court with jurisdiction. | "When case is dismissed, does such action operate to nullify an order of a dismissal and revests a trial court with jurisdiction?" | 025221.docx | LEGALEASE-00157307-LEGALEASE-00157308 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 11765 | Bryan v. Smith, 174 F.2d 212 | 307A+518 | If the rule is that dismissal leaves the situation as if the suit had never been filed, what right of procedure could possibly stem from something that never existed? If this suit had never been brought, how could this ancillary proceeding ever have been started? To ask the question answers it. The interlocutory order of January 2, 1942, decided nothing as to who was entitled to the real estate in question and by its own terms it was intended only to maintain the status quo during the pendency of the suit. Nothing was ever decided as to the title to the real estate until this ancillary proceeding was started for the purpose of enforcing the interlocutory order in the suit that was dismissed. Then for the first time it was decided that the plaintiffs were the owners of the real estate, and that the defendants must convey it to the plaintiffs. There can be no ancillary proceeding to enforce an interlocutory order made in a suit that has been dismissed, as long as the judgment of dismissal remains on the record. The District Court undertook to do by the ancillary proceeding what it had not originally undertaken, namely, to decide that the plaintiffs were the owners of the 32.78 acres of land, and ordered the defendants to convey it to them. | Ancillary proceeding could not be had to enforce interlocutory order made in a suit that was later voluntarily dismissed, as long as judgment of dismissal remained on record. | Can there be no ancillary proceeding to enforce an interlocutory order where a suit has been dismissed? | 025247.docx | LEGALEASE-00156815-LEGALEASE-00156816 | Order, SA, Sub | 0.86 | 1 | 0 | 1 | 1 | 1 |
| 11766 | Mills v. Berry, 395 S.W.2d 228 | 307A+693.1 | We are not unmindful of the fact that defendant admitted certain sums were due and owing to plaintiff and since plaintiff's cause of action was dismissed without prejudice he may still prosecute his cause of action if he cares to do so. | Inasmuch as plaintiff's cause of action was dismissed without prejudice, he might still prosecute his cause of action if he cared to do so. | "Inasmuch as plaintiff's cause of action was dismissed without prejudice, can he still prosecute his cause of action if he cared to do so?" | 025299.docx | LEGALEASE-00157005-LEGALEASE-00157006 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 11767 | Klineline v. Klineline, 481 S.W.3d 551 | 241+180(7) | When marital property is omitted from a final dissolution judgment due to fraud, accident or mistake, the aggrieved party has a right to bring a separate equitable action to divide the omitted property. Doss v. Doss, 822 S.W.2d 427, 428 (Mo. banc 1992); Chrun v. Chrun, 751 S.W.2d 752, 755 (Mo. banc 1988). Kennedy v. Microsurgery & Brain Research Inst., 18 S.W.3d 39 (Mo.App.2000), summarizes the applicable standard of review for this appeal:Our review of the dismissal of a petition as being time-barred by the expiration of the applicable statute of limitations requires an examination of the pleadings, allowing them their broadest intendment, regarding all facts alleged as true, and construing the allegations in favor of the plaintiff. When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleadings. | When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. | Can affirmative defense be sustained upon motion to dismiss? | Pretrial Procedure - Memo # 10735 - C - KI_63390.docx | ROSS-003281550-ROSS-003281551 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11768 | McLeod v. Marion Labs., 600 S.W.2d 656 | 307A+561.1 | For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleading.Fiandaca v. Niehaus, 570 S.W.2d 714, 717 (Mo.App.1978); International Plastics Development, Inc. v. Monsanto Co., 433 S.W.2d 291 (Mo. banc 1968). This is but the corollary of the accepted rule that the burden of proof of an affirmative defense rests upon the one asserting the defense. | For affirmative defense to be sustained upon bare motion to dismiss, defense must be irrefutably established by plaintiff's pleading. V.A.M.R. Civil Rule 55.27(a)(1). | Can affirmative defense be sustained upon motion to dismiss? | 025385.docx | LEGALEASE-00157974-LEGALEASE-00157975 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 11769 | Klineline v. Klineline, 481 S.W.3d 551 | 241+180(7) | When marital property is omitted from a final dissolution judgment due to fraud, accident or mistake, the aggrieved party has a right to bring a separate equitable action to divide the omitted property. Doss v. Doss, 822 S.W.2d 427, 428 (Mo. banc 1992); Chrun v. Chrun, 751 S.W.2d 752, 755 (Mo. banc 1988). Kennedy v. Microsurgery & Brain Research Inst., 18 S.W.3d 39 (Mo.App.2000), summarizes the applicable standard of review for this appeal: Our review of the dismissal of a petition as being time-barred by the expiration of the applicable statute of limitations requires an examination of the pleadings, allowing them their broadest intendment, regarding all facts alleged as true, and construing the allegations in favor of the plaintiff. When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleadings. | When an affirmative defense is asserted, such as a statute of limitations, the petition may not be dismissed unless it clearly establishes on its face, and without exception, that the action is barred. | Can affirmative defense be established by plaintiffs' pleadings? | 025387.docx | LEGALEASE-00157976-LEGALEASE-00157977 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11770 | Mettler v. Ellen Tracy, 648 So. 2d 253 | 307A+561.1 | A motion to dismiss should not be granted on the basis of affirmative defenses unless the affirmative defenses appear on the face of the pleading. Attias v. Faroy Realty Co., 609 So.2d 105 (Fla. 3d DCA 1992); Board of County Com'rs of Polk County, Fla. v. Aetna Cas. & Sur. Co., 604 So.2d 850 (Fla. 2d DCA), review denied, 613 So.2d 2 (Fla.1993). | Motion to dismiss for failure to state cause of action should not be granted on basis of affirmative defenses unless affirmative defenses appear on face of pleading. | Will a motion to dismiss be granted on basis of affirmative defenses that appear on face of pleading? | Pretrial Procedure - Memo # 10755 - C - TJ_63397.docx | ROSS-003282337-ROSS-003282338 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 11771 | Johnson v. LeBonheur Children's Med. Ctr., 74 S.W.3d 338 | 231H+25 | Moreover, an agent may serve two masters simultaneously when the objectives of the dual masters are not contrary. "A person may be the servant of two masters, not joint employers, at one time as to one act, if the service does not involve abandonment of the service to the other." (quoting Restatement (Second) of Agency, " 226 cmt. b.). Two parties "may agree to employ a servant together or to share the services of a servant. If there is one agreement with both of [the parties], the actor is the servant of both [when] the servant is subject to joint control." Restatement of the Law, Second, Agency, " 226. Thus, a person serving two masters may subject both to liability for the same act "if the act is within the scope of employment for both." White, 33 S.W.3d at 725 (quoting Restatement (Second) of Agency, " 226 cmt. a.). We hold, therefore, that a physician resident may be the agent of both the State and a private hospital. Whether an agency relationship exists is determined by the trier of fact. See Harris v. St. Mary's Med. Ctr., Inc., 726 S.W.2d 902, 906 (Tenn.1987). | A person may be the servant of two masters, not joint employers, at one time as to one act, if the service does not involve abandonment of the service to the other. Restatement (Second) of Agency, S 226, comment b. | When can a person be the servant of two masters at one time? | Principal and Agent - Memo 412 - RK_63532.docx | ROSS-003281080-ROSS-003281081 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 11772 | Clinton v. Miller, 124 Mont. 463 | 308+1 | The relation of attorney and client is a relation of agency. The maxim, "qui facit per alium, facit per se," i. e. "He who does an act through another is deemed in law to do it himself" applies and enunciates the general doctrine on which the law relative to the rights and liabilities of principal and agent depends. The one for whom the action is taken is the principal and the one who is to act is the agent. Restatement of the Law of Agency, sec. 1, p. 7. | The maxim, "qui facit per alium, facit per se," enunciates the general doctrine on which the law relative to rights and liabilities of principal and agent depends. | "What does the principle qui facit per alium, facit per se mean?" | Principal and Agent - Memo 416 - RK_63536.docx | ROSS-003292691-ROSS-003292692 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 11773 | Bunger v. Demming, 40 N.E.3d 887 | 308+1 | [11] The trial court's determination that Underwood and Demming had an agency relationship is not clearly erroneous. An agency relationship is one that results from a "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Turner v. Bd. of Aviation Comm'rs, 743 N.E.2d 1153, 1163 (Ind.Ct.App.2001) (quoting Dep't ofTreasury v. Ice Serv. Inc., 220 Ind. 64, 67"68, 41 N.E.2d 201, 203 (1942)), trans. denied.It arises from the consent of the parties in the form of a contractual agreement, but it is not necessary that the contract or the authority of the agent to act be in writing. It is necessary that the agent be subject to the control of the principal with respect to the details of the work. | An agency relationship arises from the consent of the parties in the form of a contractual agreement, but it is not necessary that the contract or the authority of the agent to act be in writing. | Is it necessary that the authority of the agent to act be in writing? | 041798.docx | LEGALEASE-00157876-LEGALEASE-00157877 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 11774 | Columbia Univ. Club v. Higgins, 23 F. Supp. 572 | 308+1 | Examining the background of this plaintiff, I find that it is a social club, organized under the Membership Corporations Law of the State of New York, Consol.Laws, c. 35, and is estopped under the provisions of this law from engaging in any activity or business for pecuniary profit. It operates for the benefit and convenience of its members only. In addition, it maintains a theatre ticket service exclusively for its members. Whether or not the plaintiff is the agent of its members in procuring these theatre tickets is a matter of intention between the parties, as manifested by their acts and from all the surrounding circumstances. While innumerable definitions and interpretations of the term "agency" may be found in the law reports and law digests, I think that the statement found in the case of S. B. McMaster, Inc., v. Chevrolet Motor Co., D.C., 3 F.2d 469, 474, is sufficiently clear to merit quotation. It is there stated in part: "Without undertaking to review in detail all the various definitions that have been made of the term, I think it may be safely asserted that they all recognize two distinctly essential elements. The first is that the agent is a representative and acts, not for himself, but for another. The second is that his acts within the scope of his authority must be binding upon his principal." | Two essential elements of "agency" are that the agent is a representative and acts not for himself but for another and that his acts within the scope of his authority are binding on his principal. | Are the acts of the agent within the scope of his authority binding on the principal? | Principal and Agent - Memo 440 - RK_63560.docx | ROSS-003306278-ROSS-003306279 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 11775 | Durias v. Boswell, 58 Wash. App. 100 | 308+24 | An agency relationship exists when one agrees to act for another under the latter's direction and control. Agency is usually a factual question for the jury. ITT Rayonier, Inc. v. Puget Sound Freight Lines, 44 Wash.App. 368, 377, 722 P.2d 1310 (1986). | Agency relationship exists when one agrees to act for another under latter's direction and control; agency is usually factual question for jury. West's RCWA 19.52.030(2). | Can an agency relationship exist when one agrees to act for another under the latter's direction? | Principal and Agent - Memo 457-PR_63471.docx | ROSS-003292461-ROSS-003292462 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11776 | Roberson Advert. Serv. v. Winnfield Life Ins. Co., 453 So. 2d 662 | 308+1 | Under Louisiana law, an agency relationship is created by either express appointment of a mandatory under Civil Code Article 2985 or by implied appointment arising from apparent authority, Lou-Ark Equipment Rentals Co. v. Hong Ah-Fong, 355 So.2d 1019 (La.App. 4th Cir.1978). The record is clear that if any agency relationship existed between James Dulaney and Winnfield Insurance regarding Dulaney's capacity to bind Winnfield, it was terminated effective April 7, 1978. It is settled law in this State that an agency relationship cannot be presumed, it must be clearly established. The record does not support the implication of apparent authority. | Under Louisiana law, an agency relationship is created by either express appointment of a mandatory under statute or by implied appointment arising from apparent authority. LSA-C.C. art. 2985. | Can an agency relationship be created by implied appointment? | 041910.docx | LEGALEASE-00157371-LEGALEASE-00157372 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 11777 | Jones v. Royal Admin. Servs., 866 F.3d 1100 | 308+1 | "Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Mavrix Photographs, LLC v. LiveJournal, Inc., 853 F.3d 1020, 1029 (9th Cir. 2017) (quoting Restatement (Third) Of Agency " 1.01 (Am. Law Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and "[t]he person represented [must have] a right to control the actions of the agent." " (quoting Restatement (Third) Of Agency " 1.01 cmt. c). One theory of agency, actual authority, "arises through "the principal's assent that the agent take action on the principal's behalf." " (quoting Restatement (Third) Of Agency " 3.01). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) Of Agency " 2.01. | Under California law, "agency" is the fiduciary relationship that arises when one person, a principal, manifests assent to another person, an agent, that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act. | What is agency? | Principal and Agent - Memo 494 - KK_63273.docx | ROSS-003319902-ROSS-003319903 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 11778 | Bowman v. Benouttas, 519 S.W.3d 586 | 308+1 | The most indicative factor in determining whether a principal-agent relationship exists is the right of the principal to control the conduct of the work of the agent. Tucker, 180 S.W.3d at 120. The extent of control over the manner in which work is performed is one of the most significant differences between an agent and an independent contractor. McInturff, 2009 WL 4878614, at 3; see also Powell v. Va. Constr. Co., 88 Tenn. 692, 13 S.W. 691, 692 (1890) ("[a]n independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work."). | The most indicative factor in determining whether a principal-agent relationship exists is the right of the principal to control the conduct of the work of the agent. | What factors determine whether a principal-agent relationship exists? | Principal and Agent - Memo 500 - KK_63279.docx | ROSS-003306504-ROSS-003306505 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 11779 | Case v. St. Mary's Bank, 164 N.H. 649 | 308+1 | The plaintiff argues, in the alternative, that the Bank acted as Marcelin's agent. "[T]he existence of an agency relationship is a question of fact." Bouffard v. State Farm Fire & Cas. Co., 162 N.H. 305, 311, 27 A.3d 682 (2011). The necessary factual elements to establish agency are: "(1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control over the agent's actions.". "Control by the principal does not mean actual or physical control at every moment; rather, it turns upon the principal manifesting some continuous prescription of what the agent shall or shall not do." at 312"13, 27 A.3d 682. Here, as the trial court correctly concluded, there were no facts to establish that Marcelin had any control over the Bank's actions. Accordingly, the Bank was not Marcelin's "agent" as a matter of law. | Control by the principal, as required to establish agency, does not mean actual or physical control at every moment; rather, it turns upon the principal manifesting some continuous prescription of what the agent shall or shall not do. | Does control by the principal mean physical control? | Principal and Agent - Memo 567-SB_63583.docx | ROSS-003320577-ROSS-003320578 | Order, SA, Sub | 0.75 | 1 | 0 | 1 | 1 | 1 |
| 11780 | In re NetBank, 459 B.R. 801 | 308+1 | At a minimum, Plaintiff argues that the language in section 9(c) that each member of the Consolidated Group irrevocably appoints the Debtor as its "agent and attorney-in-fact" does not create a true principal-agent relationship between the Debtor and the Bank such that the Debtor's interest in the Tax Refund is limited to bare legal title held for the benefit of the Bank. As the Court previously noted, the substance of a transaction determines whether a true agency relationship has been created between parties to a contract whether or not one of the parties to the contract is described in the contract as an agent of the other. Shulman Transport, 744 F.2d at 295. An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control. The Court finds that the language in 9(c) does not subject the Debtor to the direction or control of any member of the Consolidated Group and does not establish a principal-agent relationship between the members of the Consolidated Group and the Debtor. | Essential characteristic of agency relationship is that agent acts subject to principal's direction and control. | Is it an essential characteristic of agency relationship that the agent acts are subject to principal's control? | 042070.docx | LEGALEASE-00157854-LEGALEASE-00157855 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 11781 | Roberson Advert. Serv. v. Winnfield Life Ins. Co., 453 So. 2d 662 | 308+1 | Under Louisiana law, an agency relationship is created by either express appointment of a mandatory under Civil Code Article 2985 or by implied appointment arising from apparent authority, Lou-Ark Equipment Rentals Co. v. Hong Ah-Fong, 355 So.2d 1019 (La.App. 4th Cir.1978). The record is clear that if any agency relationship existed between James Dulaney and Winnfield Insurance regarding Dulaney's capacity to bind Winnfield, it was terminated effective April 7, 1978. It is settled law in this State that an agency relationship cannot be presumed, it must be clearly established. The record does not support the implication of apparent authority. | Under Louisiana law, an agency relationship is created by either express appointment of a mandatory under statute or by implied appointment arising from apparent authority. LSA-C.C. art. 2985. | Can an agency relationship be created by express appointment? | Principal and Agent - Memo 576-SB_63592.docx | ROSS-003309490-ROSS-003309491 | Order, SA | 0.71 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11782 | CX Reinsurance Co. Ltd. v. Leader Realty Co., 252 F. Supp. 3d 439 | 308+177(1) | Thus, Defendants' preferred blanket rule that notice to an agent is notice to a principal is not reflected in the more nuanced analysis by the Maryland courts on the subject. An agent is not necessarily an agent for all intents and purposes; instead, an agent is an agent for the limited purposes entrusted to him by the principal. Knowledge gained by the agent that is material to the performance of the agent's duties within the scope of the agent's authority can be considered knowledge of the principal. The burden is upon the party seeking to rely upon the agency to provide evidence of the existence of agency and the nature and scope of the agent's duties. Kennedy v. Mut. Life Ins. Co., 162 Md. 340, 159 A. 780, 782 (1932) ("But the existence of such authority is ordinarily a subject of proof rather than of presumption. Its possession by a claim agent or his assistant is not necessarily inferable merely from that designation of his position."). Notice must be within the scope of the agent's authority or it is not notice to the principal. | Under Maryland law, an agent is an agent for the limited purposes entrusted to him by the principal; knowledge gained by the agent that is material to the performance of the agent's duties within the scope of the agent's authority can be considered knowledge of the principal. | "Is an agent an agent for all intents and purposes, or is an agent an agent for the limited purposes entrusted to him by the principal?" | 042173.docx | LEGALEASE-00157580-LEGALEASE-00157581 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11783 | State v. Commercial Loan Co., 251 Ala. 672 | 371+2002 | The foregoing Alabama authorities demonstrate that the word tax, unless expressly defined, is inclusive of both levies for revenue purposes and levies for regulatory purposes.In other words license fees are commonly called taxes even though strictly speaking they may be a charge or fee rather than a tax. | The word "tax", unless expressly defined, is inclusive of both levies for revenue purposes and levies for regulatory purposes, and thus license fees are commonly called taxes, though strictly speaking they may be a charge or fee rather than a tax. | "Without expressly defined, can the word tax be inclusive of both levies for revenue purposes and levies for regulatory purposes?" | 044537.docx | LEGALEASE-00157454-LEGALEASE-00157455 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 11784 | Gorney v. City of Madison Heights, 211 Mich. App. 265 | 371+2002 | This Court has previously distinguished fees from taxes. In Foreman v. Oakland Co. Treasurer, 57 Mich.App. 231, 226 N.W.2d 67 (1974), the Court instructed that, in order for a fee to be deemed a tax, there must be no reasonable relationship between the fee and the expense of the service provided. Id. at 238, 226 N.W.2d 67. However, where revenue generated by a regulatory "fee" exceeds the cost of regulation, the "fee" is actually a tax in disguise. Iroquois Properties v. East Lansing, 160 Mich.App. 544, 563"564, 408 N.W.2d 495 (1987). | If revenue generated by regulatory "fee" exceeds cost of regulation, "fee" is actually "tax" in disguise, which must comport with constitutional tax provisions. M.C.L.A. Const. Art. 4, S 32; Art. 9, S 3. | "If revenue generated by a regulatory fee exceeds the cost of regulation, is the fee actually a tax?" | 044549.docx | LEGALEASE-00157552-LEGALEASE-00157553 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 11785 | In re C.S.G., 241 Ga. App. 37 | 3.77E+11 | Contrary to C.S.G.'s assertion, displaying a handgun to another under threatening circumstances may constitute an act constituting a terroristic threat if committed by an adult. Heaton v. State, 214 Ga.App. 460, 448 S.E.2d 49. A person commits the offense of a terroristic threat when he threatens to commit any crime of violence with the purpose of terrorizing another person. OCGA " 16"11"37(a). In the case sub judice, the victim testified that C.S.G. and an accomplice attacked and physically assaulted him as he was walking to school, and that C.S.G. finished the assault by displaying a handgun and then warning him"" "watch [your] back." " The victim also testified that his "jaw was swollen" after the attack. This testimony was corroborated by an eyewitness who did not see C.S.G. display a handgun, but who saw C.S.G. strike the victim and heard C.S.G. threaten the victim during the assault.1 This evidence is sufficient to authorize the juvenile court's finding, beyond a reasonable doubt, that C.S.G. is a delinquent child based on his commission of acts constituting the offenses of a battery in violation of OCGA " 16"5"23.1(a) and a terroristic threat in violation of OCGA " 16"11"37(a) if committed by an adult. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; In the Interest of J.M., 237 Ga.App. 298(1), 513 S.E.2d 742. Slight corroboration of the circumstances during which a terroristic threat is uttered is all that is necessary to satisfy OCGA " 16"11"37(a)'s requirement that the victim's account of the terroristic threat be corroborated. See Sampson v. State, 209 Ga.App. 213, 215(1), 433 S.E.2d 136. This is so because, if there is any evidence of corroboration, this Court will not second-guess the factfinder and pass on the corroborating evidence's probative value. In the Interest of J.L.W, 213 Ga.App. 630(1), 445 S.E.2d 575. | Displaying a handgun to another under threatening circumstances may constitute an act constituting a terroristic threat. O.C.G.A. S 16-11-37(a). | Can displaying a handgun to another under threatening circumstances be considered an act constituting a terroristic threat? | 046880.docx | LEGALEASE-00157696-LEGALEASE-00157697 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 11786 | Sykes v. State, 578 N.W.2d 807 | 3.77E+48 | The terroristic threat statute, under which Sykes was charged, provides that an individual is guilty of a felony if he or she threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another or * * * to cause serious public inconvenience, or in a reckless disregard of the risk of causing such terror or inconvenience * * *. Minn.Stat. " 609.713, subd. 1 (1996). This section requires that the "defendant utter the threat with the purpose of terrorizing another." State v. Schweppe, 306 Minn. 395, 400, 237 N.W.2d 609, 614 (1975). "Purpose in this context means aim, objective, or intention [and][t]errorize means to cause extreme fear by use of violence or threats." Id. (citations omitted). The effect of a terroristic threat is not an essential element of the offense, but the victim's reaction to the threat is circumstantial evidence relevant to the element of intent. Id. at 401, 237 N.W.2d at 614. "Intent * * * is a subjective state of mind usually established only by reasonable inference from surrounding circumstances." Id. | Effect of a terroristic threat is not an essential element of the offense, but the victim's reaction to the threat is circumstantial evidence relevant to the element of intent. M.S.A. S 609.713, subd. 1. | "In regards to the offense of terroristic threats, what is the victim's reaction circumstantial evidence of?" | "Threats, Stalking and Harassment - Memo #147 - C - LB_63322.docx" | ROSS-003293612-ROSS-003293613 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11787 | Postell v. United States, 282 A.2d 551 | 3.77E+13 | Appellant contends, however, that these threats being conditional are not within the purview of the statute. That argument, admittedly, could be well taken under different facts where by virtue of the nature of the condition the threat becomes so remote as not to connote a menace or to create alarm. We think that contention is inapposite here. It would seem that a "threat" that is not conditional would be an assault. It is necessary only that the threats impart the expectation of bodily harm, thereby inducing fear and apprehension in the person threatened. State v. Schultheis, 113 N.J.Super. 11, 272 A.2d 544, 547 (1971). A statement of an intention to inflict harm on another, conditioned upon a future happening would tend to generate fear in direct proportion to the likelihood of the condition coming to pass. Of course a threat on a condition that the victim believes will never occur cannot be actionable. However, the mere fact that the infliction of the harm is upon condition does not by any means preclude it from being a threat within the meaning of the Code. The fact that the threats made were conditioned upon the officers locking up appellant's "girls' again does not make them any less real. The threats were of such a nature as to indicate they were intended to be activated when the condition occurred. See State v. Schultheis, supra, 272 A.2d at 547; State v. Hamre, supra, 429 P.2d at 808. A threat that is to be activated if the intended victim carries out some act that is his legal or moral duty to perform is very real indeed and certainly cannot be deemed to be remote. | To sustain conviction for a threat to do bodily harm, it is necessary only that threats impart expectation of bodily harm thereby inducing fear and apprehension in person threatened. D.C.C.E. S 22-507. | "To sustain a conviction for a threat to do bodily harm, what is necessary for the threat to impart?" | 046890.docx | LEGALEASE-00157345-LEGALEASE-00157346 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11788 | In re C.S.G., 241 Ga. App. 37 | 377E+48(2) | This evidence is sufficient to authorize the juvenile court's finding, beyond a reasonable doubt, that C.S.G. is a delinquent child based on his commission of acts constituting the offenses of a battery in violation of OCGA " 16"5"23.1(a) and a terroristic threat in violation of OCGA " 16"11"37(a) if committed by an adult. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; In the Interest of J.M., 237 Ga.App. 298(1), 513 S.E.2d 742. Slight corroboration of the circumstances during which a terroristic threat is uttered is all that is necessary to satisfy OCGA " 16"11"37(a)'s requirement that the victim's account of the terroristic threat be corroborated. See Sampson v. State, 209 Ga.App. 213, 215(1), 433 S.E.2d 136. This is so because, if there is any evidence of corroboration, this Court will not second-guess the factfinder and pass on the corroborating evidence's probative value. In the Interest of J.L.W, 213 Ga.App. 630(1), 445 S.E.2d 575. | Slight corroboration of the circumstances during which a terroristic threat is uttered is all that is necessary to satisfy requirement that the victim's account of the terroristic threat be corroborated. O.C.G.A. S 16-11-37(a). | What is necessary to satisfy the requirement that the victim's account of the terroristic threat be corroborated? | 047064.docx | LEGALEASE-00157704-LEGALEASE-00157705 | Order, SA | 0.77 | 1 | 0 | 0 | 1 | |
| 11789 | Baskin v. State ex rel. Worker's Comp. Div., 722 P.2d 151 | 413+102 | In his initial contention Baskin urges the proposition that the exception for "ranching or agriculture" should not be applied in his instance because his work primarily was different from traditional ranching or agricultural activities. Baskin is misguided in presenting this argument, however, because in the law of worker's compensation, determinations of whether an employee is or is not engaged in extra-hazardous employment are made by reference to the employer's business. 1C Larson, Law of Workmen's Compensation, " 53.31, p. 9"153 (1986). In this instance there is no real dispute over the fact that the employer's business is an agricultural enterprise. The district court found that the sod delivery in which Baskin was engaged at the time of the accident resulting in his injuries was an integral part of that agricultural enterprise. We perceive Baskin's argument as a contest of this factual determination, but we have held that whether the claimant was involved in an extra-hazardous occupation is a fact question for the trial court. Randell v. Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division, Wyo., 671 P.2d 303 (1983). We also held in that case that the determination of the trial court is to be upheld if it is supported by substantial evidence. | In law of worker's compensation, determinations of whether employee is engaged in extrahazardous employment are made by reference to employer's business. W.S.1977, S 27-12-106(a), (a)(xviii, xix). | "Under Worker's Compensation Act, what determines whether an employee is engaged in extrahazardous employment?" | Worker's Compensation Memo #631 - C - ANC_63491.docx | ROSS-003293498-ROSS-003293499 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 11790 | Baskin v. State ex rel. Worker's Comp. Div., 722 P.2d 151 | 413+102 | In his initial contention Baskin urges the proposition that the exception for "ranching or agriculture" should not be applied in his instance because his work primarily was different from traditional ranching or agricultural activities. Baskin is misguided in presenting this argument, however, because in the law of worker's compensation, determinations of whether an employee is or is not engaged in extra-hazardous employment are made by reference to the employer's business. 1C Larson, Law of Workmen's Compensation, " 53.31, p. 9"153 (1986). In this instance there is no real dispute over the fact that the employer's business is an agricultural enterprise. The district court found that the sod delivery in which Baskin was engaged at the time of the accident resulting in his injuries was an integral part of that agricultural enterprise. We perceive Baskin's argument as a contest of this factual determination, but we have held that whether the claimant was involved in an extra-hazardous occupation is a fact question for the trial court. Randell v. Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division, Wyo., 671 P.2d 303 (1983). We also held in that case that the determination of the trial court is to be upheld if it is supported by substantial evidence. | In law of worker's compensation, determinations of whether employee is engaged in extrahazardous employment are made by reference to employer's business. W.S.1977, S 27-12-106(a), (a)(xviii, xix). | Are determinations of whether an employee is engaged in extra-hazardous employment made by reference to the employers business? | Workers' Compensation Memo 669 - C - ANC_64587.docx | ROSS-003293448-ROSS-003293449 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11791 | Bonhiver v. State Bank of Clearing, 29 Ill. App. 3d 794 | 83E+481 | It is our opinion that a time certificate of deposit is transferable by assignment.(See State Bank v. Central Mercantile Bank (1928), 246 N.Y. 428, 162 N.E. 475.) The bank's obligation is to pay the payee or assignee, and the assignee stands in no better position than his assignor when demand for payment is made. (People's Sav. Bk. v. Smith (1930), 210 Iowa 136, 230 N.W. 565.) The courts of this State have often held that an assignment of a promissory note may not be effected through a separate instrument. (Barrett et al. v. Hinckley (1888), 124 Ill. 32, 14 N.E. 863; Bouton v. Cameron (1903), 205 Ill. 50, 68 N.E. 800.) And the legislature has provided specifically that promissory notes shall be assignable "by endorsement thereon." (Ill.Rev.Stat.1971, ch. 98, pars. 1 and 2.) | A nonnegotiable time certificate of deposit is transferable by assignment; the bank's obligation is to pay the payee or assignee but the assignee stands in no better position than his assignor when demand for payment is made. | Is a bank is obliged to pay the payee when demand for payment is made? | 009289.docx | LEGALEASE-00158214-LEGALEASE-00158215 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 11792 | Rankin v. Colman, 476 So. 2d 234 | 307A+561.1 | Colman next argues that he is entitled to complete sovereign immunity under the facts alleged in the third amended complaint. Although the defense of sovereign immunity is an affirmative defense, where an affirmative defense appears on the face of a pleading, it may be argued as a basis for a motion to dismiss. Fla.R.Civ.P. 1.110(d). Here, the third amended complaint specifically asserted that the defendant was not entitled to claim sovereign immunity, so the defendant could properly argue it as a basis for a motion to dismiss. | Where an affirmative defense appears on face of a pleading, it may be argued as basis for motion to dismiss. | Can an affirmative defense that appears on face of a pleading be argued as basis for motion to dismiss? | Pretrial Procedure - Memo # 10769 - C - NC_63411.docx | ROSS-003295135-ROSS-003295136 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 11793 | Sanchez v. Mercy Hosp., 386 So. 2d 42 | 307A+561.1 | Only affirmative defenses appearing on the face of a prior pleading may be asserted in a motion to dismiss. Fla.R.Civ.P. 1.110(d); Kansas City Mortgage Company v. Burgess, 306 So.2d 161 (Fla. 4th DCA 1975); Stern v. First National Bank of South Miami, 275 So.2d 58 (Fla. 3d DCA 1973). | Only affirmative defenses appearing on face of prior pleading may be asserted in motion to dismiss. 30 West's F.S.A. Rules of Civil Procedure, Rule 1.110(d). | Will affirmative defenses appearing on face of prior pleading be asserted in motion to dismiss? | Pretrial Procedure - Memo # 10784 - C - NS_63651.docx | ROSS-003280006-ROSS-003280007 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 11794 | Whitfield v. Whitfield, 161 So. 2d 256 | 302+354 | The inquiry on the hearing on motion to dismiss should have been confined to the facts alleged in the complaint. Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 So. 356; Rudman v. Baine, Fla.App.1961, 133 So.2d 760. Affirmative defenses should be pleaded in answer to a complaint, and are not properly presented for trial on a hearing on motion to dismiss. Hough v. Menses, Fla.1957, 95 So.2d 410; Stone v. Stone, Fla.App.1957, 97 So.2d 352; Fletcher v. Williams, Fla.App.1963, 153 So.2d 759. | Affirmative defenses should be pleaded in answer to complaint and are not properly presented for trial on hearing on motion to dismiss. | Are affirmative defenses properly presented for trial on hearing on motion to dismiss? | 025475.docx | LEGALEASE-00158508-LEGALEASE-00158509 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 11795 | Palladium Holdings v. Zuni Mortg. Loan Tr. 2006-OA1, 775 N.W.2d 168 | 228+392(2) | The district court's discretion is also limited by factors applied in Finden v. Klaas, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964), which are used to analyze rule 60.02 motions. Id. (citing Hinz v. Northland Milk & Ice Cream Co., 237 Minn. 28, 30, 53 N.W.2d 454, 456 (1952), which states factors quoted in Finden ). Under the Finden factors, the court should grant relief under rule 60 where the defendant: (1) has a reasonable defense on the merits; (2) has a reasonable excuse for his failure or neglect to answer; (3) has acted with due diligence after notice of the entry of the judgment; and (4) shows that no substantial prejudice will result to the other party. 268 Minn. at 271, 128 N.W.2d at 750. The moving party bears the burden of showing that the Finden factors are satisfied, and a weak showing on one factor may be offset by a strong showing on the other factors. Imperial Premium Fin., Inc. v. GK Cab Co., 603 N.W.2d 853, 857 (Minn.App.2000). | The party moving for relief from judgment bears the burden of showing that Finden v. Klaas factors, governing relief under the rule, are satisfied, and a weak showing on one factor may be offset by a strong showing on other factors. 48 M.S.A., Rules Civ.Proc., Rule 60.02. | Can a weak showing on one factor in a motion to vacate a dismissal be offset by strong showing on other factors? | 025580.docx | LEGALEASE-00158294-LEGALEASE-00158295 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 11796 | Murray v. Fleischaker, 949 S.W.2d 203 | 307A+561.1 | Our scope of review of an order dismissing a cause of action was set forth in Herch v. Cronen, D.O., 904 S.W.2d 453, 454 (Mo.App.1995): In reviewing the dismissal of a petition, the pleading is allowed its broadest intendment, all facts alleged are treated as true, and all allegations are construed favorably to the plaintiff. Furthermore, bar of a statute of limitations is an affirmative defense and when a petition does not show on its face that it is barred by limitations, a motion to dismiss should not be sustained. Id.(citations omitted).For an affirmative defense to be sustained merely upon a motion to dismiss, the defense must be irrefutably established by plaintiffs' pleadings. | For affirmative defense to be sustained merely upon motion to dismiss, defense must be irrefutably established by plaintiffs' pleadings. | Will a motion to dismiss be sustained if the defense is irrefutably established by the pleadings? | Pretrial Procedure - Memo # 11088 - C - KS.docx | LEGALEASE-00048585-LEGALEASE-00048586 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 11797 | Duk Hea Oh v. Natl Capital Revitalization Corp., 7 A.3d 997 | 307A+561.1 | This court jurisprudence instructs that "a motion to strike a defense as insufficient will be denied if the defense fairly presents a question of law or fact which the court ought to hear." Franco I, 930 A.2d at 166 (quoting Securities & Exchange Commn v. Gulf & Western Indus., Inc., 502 F.Supp. 343, 345 (D.D.C.1980)). Thus, a court should not grant a motion to strike "if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." Franco I, 930 A.2d at 166"67 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3D 1381, at 427"28 (2004)). Our case law makes clear, however, that for an affirmative defense to stand (in the sense of entitling the defendant to proceed with discovery as to the defense), facts establishing the elements of the defense "must be particularized in some detail." Patterson v. Walker"Thomas Furniture Co., 277 A.2d 111, 114 (D.C.1971). Unless facts supporting an affirmative defense are particularized in an answer or are detailed on the face of the complaint, an affirmative defense expressed only as a legal conclusion is insufficient. Patterson, 277 A.2d at 114; Whitener v. Washington Metro. Area Transit Auth., 505 A.2d 457, 460 (D.C.1986) (citing authority that a conclusory statute-of-limitations defense may stand where the defense is "apparent from the face of the complaint"); see also Shechter v. Comptroller of City of New York, 79 F.3d 265, 270 (2d Cir.1996) ("affirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy.") (citation and internal quotation marks omitted); Barnidge v. United States, 101 F.2d 295, 297 (8th Cir.1939) ( "Admitting the facts pleaded [in answer], but not condemnee conclusions of law.") | Unless facts supporting an affirmative defense are particularized in an answer or are detailed on the face of the complaint, an affirmative defense expressed only as a legal conclusion is insufficient. | When is an affirmative defense expressed as a legal conclusion only sufficient? | 039879.docx | LEGALEASE-00159041-LEGALEASE-00159042 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11798 | Pinkerton v. Gilbert, 22 Ill. App. 568 | 308+92(1) | The doctrine of respondeat superior applies only to acts performed by an agent within the scope of his employment. As Atkins' authority, therefore, did not include within its scope the power to institute or prosecute suits, or to delegate to another the power to do so, the company was in no way responsible for the prosecution of said suit or for the imprisonment of the plaintiff on execution. There being no evidence in the case tending to charge said company with any responsibility for the trespasses complained of, the court properly instructed the jury to find said company not guilty. | The doctrine of respondeat superior applies only to acts performed by an agent within scope of his employment. | Does the doctrine of respondeat superior apply only when the agent has acted within the scope of his employment? | 041744.docx | LEGALEASE-00158973-LEGALEASE-00158974 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11799 | In re RnD Eng'g, 546 B.R. 738 | 308+48 | "There are certain well-defined duties and liabilities which the agent owes to the principal. The agent is a fiduciary and owes to his principal the duty of good faith and loyalty. The agent is under the duty to use care, skill and diligence, and to obey the instructions of his principal." Burton v. Burton, 332 Mich. 326, 51 N.W.2d 297, 302"03 (1952). "A corollary of [the law of agency] is that the law will not permit an agent to act in a dual capacity in which his interest conflicts with his duty, without a full disclosure of the facts to his principal." Sweeney & Moore, Inc. v. Chapman, 295 Mich. 360, 294 N.W. 711, 712"13 (1940) (internal quotes omitted). | Under Michigan law, an agent is a fiduciary and owes to his principal the duty of good faith and loyalty, and the agent is under the duty to use care, skill and diligence, and to obey the instructions of his principal. | Does an agent owe a fiduciary duty to his principal? | Principal and Agent - Memo 517 - RK_63976.docx | ROSS-003306693-ROSS-003306694 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 11800 | Moblard v. Klippenstein, 239 F. Supp. 274 | 308+1 | "An agent is a "business representative whose function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons'." 1 Mich. Law and Practice 304, " | Under Michigan law, an agent is a business representative whose function it is to bring about, modify, effect, accept performance of, or terminate contractual obligations between his principal and third persons. | What is the function of an agent who is a business representative? | Principal and Agent - Memo 529 - RK_63987.docx | ROSS-003280418-ROSS-003280419 | SA, Sub | 0.06 | 0 | 0 | 1 | 1 | |
| 11801 | Jones v. Royal Admin. Servs., 866 F.3d 1100 | 308+1 | We have previously clarified that "a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." Gomez v. Campbell-Ewald Co., 768 F.3d 871, 878 (9th Cir. 2014), aff'd sub nom. Campbell-Ewald Co. v. Gomez, """ U.S. """", 136 S.Ct. 663, 674, 193 L.Ed.2d 571 (2016) ("[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations."). "Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Mavrix Photographs, LLC v. LiveJournal, Inc., 853 F.3d 1020, 1029 (9th Cir. 2017) (quoting Restatement (Third) Of Agency " 1.01 (Am. Law Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and "[t]he person represented [must have] a right to control the actions of the agent." " (quoting Restatement (Third) Of Agency " 1.01 cmt. c). One theory of agency, actual authority, "arises through "the principal's assent that the agent take action on the principal's behalf." " (quoting Restatement (Third) Of Agency " 3.01). "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) Of Agency " 2.01. | Under California law, for an agency relationship to exist, an agent must have authority to act on behalf of the principal and the person represented must have a right to control the actions of the agent. | Does an agent have authority to act on behalf of the principal? | Principal and Agent - Memo 545 - RK_64003.docx | ROSS-003295588-ROSS-003295589 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 11802 | In re Hughes, 513 S.W.3d 28 | 308+1 | An agency is generally a consensual relationship in which the agent consents to the control of another, the principal, and the principal manifests consent that the agent shall act for the principal. Camp Mystic, Inc. v. Eastland, 399 S.W.3d 266, 279 (Tex.App."San Antonio 2012, no pet.). An essential element of an agency relationship is the principal's right to control the actions of the agent. Sendjar v. Gonzalez, 520 S.W.2d 478, 481 (Tex.Civ.App."San Antonio 1975, no writ). For an agency relationship to exist, there must be (1) a meeting of the minds between the parties to establish the relationship, and (2) some act constituting the appointment of the agent. Toka Gen. Contractors v. Wm. Rigg Co., No. 04"12"00474"CV, 2014 WL 1390448, at 8 (Tex.App."San Antonio Apr. 9, 2014, pet. denied) (mem. op.). Here, however, Hughes (as principal) has no control over Peachtree (as her agent). See Camp Mystic, 399 S.W.3d at 279 (noting that agency relationship requires principal's right to control agent's actions). The Purchase Contract is devoid of any language indicating that Hughes has any right to control Peachtree | For an agency relationship to exist, there must be (1) a meeting of the minds between the parties to establish the relationship, and (2) some act constituting the appointment of the agent. | Should there be some act constituting the appointment of an agent for an agency relationship to exist? | 042012.docx | LEGALEASE-00159097-LEGALEASE-00159098 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11803 | In re Kobayashi, 44 Haw. 584 | 371+3403 | The General Excise Tax Law, set out in Revised Laws of Hawaii 1955 as chapter 117, imposes a tax upon the privilege of doing business. The tax is applied to gross income at rates varying according to the occupation or activity of the taxpayer. For the purposes of the law, the term "contractor" is defined by " 117-7 to include "every person engaging in the business of contracting to erect, construct, repair or improve buildings or structures, of any kind or description." By " 117-14(c)(1) it is provided that "Upon every person engaging or continuing within the Territory in the business of contracting, the tax shall be equal to two and one-half per cent of the gross income of the business." Among other exemptions, " 117-3 provides that the words "gross income" shall not be construed to include receipts "from the sale of real property.' | General Excise Tax Law imposes tax on privilege of doing business and is applied to gross income at rates varying according to occupation or activity of taxpayer. R.L.H.1955, SS 117-7, 117-14(c)(1) and S 117-3 as amended by Laws 1957, Sp.Sess., c. 1. | What is a General Excise Tax (GET)? | Taxation - Memo 1070 - C - KI_64710.docx | ROSS-003292767-ROSS-003292768 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 11804 | Adams v. Hicks Co., 149 So. 242 | 413+105 | "It seems to be well settled, however, under the jurisprudence, that the Compensation Law only applies: (1) To those businesses specially named in the act; (2) those that have elected to come under the terms of the act; and (3) those determined in advance by the courts to be of a hazardous nature. See section 1, subsec. 3 of Act No. 20 of 1914; also, Smith v. Marine Oil Company, 10 La. App. 674, 121 So. 782. | Compensation Law only applies to businesses specially named therein, those electing to come under its terms, and those determined hazardous in advance by courts. Act No. 20 of 1914, S 1, subsec. 3, LSA-R.S. 23:1035. | "The compensation laws only apply to, what?" | Worker's Compensation Memo #608 - C - ANC_63486.docx | ROSS-003278444-ROSS-003278445 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11805 | McAllister v. Peoples Homestead &Sav. Ass'n, 171 So. 130 | 413+101 | While it is true that the work as a plumber, which was being done by plaintiff at the time of the accident and his injury, is hazardous, it makes little difference, for the nature of the trade, business, or occupation of the defendant, and not the particular duty or service of the employee, the plaintiff, determines the right to compensation. DeLony v. Lane (La.App.) 155 So. 476; Kern v. Southport Mill, 174 La. 432, 141 So. 19; Charity Hospital of Louisiana v. Morgan (La.App.) 143 So. 508; Blane v. Iglehart, 5 La.App. 17; Lay v. Pugh, 9 La.App. 183, 119 So. 456; White v. Equitable Real Estate Co., supra; Jarrell v. Ewing, 7 La.App. 502; Ham v. Domill Const. Co., 8 La.App. 797; Shipp v. Bordelon, 152 La. 795, 94 So. 399; Horrell v. Gulf & Valley Oil Co., 15 La.App. 603, 131 So. 709; Bradley v. Blakely (La.App.) 154 So. 415. | Nature of trade, business, or occupation of employer and not particular duty of or service of employee determines right to compensation. Act No. 20 of 1914, S 1, subd. 2, LSA-R.S. 23:1035. | "Does the nature of the business, and not the duty or service of the employee determine the right to compensation?" | Workers' Compensation Memo #617 - C - ANC_63839.docx | ROSS-003278549-ROSS-003278550 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11806 | Brown v. Underwood Lumber Co., 172 Or. 261 | 413+112 | It is the nature and character of the employee's work, while acting within the scope of his employment, that determines the classification of the employment under the statute. The mere fact that the principal business of the Warner Mountains Lumber Company was buying and selling timber is not conclusive so far as determining the question as to whether it was, at the time in question, subject to the act. Hardenbrook v. State Industrial Accident Commission, 148 Or. 661, 38 P.2d 696; Bates v. Shaffer, 216 Mich. 689, 185 N.W. 779. The principal business of an employer may be non-hazardous but if it departs therefrom and engages in a hazardous occupation, so declared by the Workmen's Compensation Law, it is subject to the act. In the Hardenbrook case, the principal business of the Western Motor Transportation Company was the transportation of apples by truck from Hood River to Portland. An electric conveyor was used in loading the apples onto the trucks from the plant at Hood River. An employee of the transportation company operated the electric switch that controlled the conveyor. Hardenbrook, the plaintiff, was crushed between the boxes loaded on the truck and the line of boxes moved by the conveyor. The court, in sustaining compensation for the injured workman, said [148 Or. 661, 38 P.2d 697]: "It is conceded that the trucking business is not one of the hazardous occupations enumerated in the Workmen's Compensation Law | The principal business of an employer may be nonhazardous, but, if it departs therefrom and engages in an occupation declared hazardous by the Compensation Act the employer is subject to the act. ORS 656.002 et seq., 656.026, 656.030, 656.082, 656.084, 656.152, 656.154. | When is the principal business of an employer subject to the Workmen's Compensation Act? | 048664.docx | LEGALEASE-00158903-LEGALEASE-00158904 | Order, SA, Sub | 0.81 | 1 | 0 | 1 | 1 | 1 |
| 11807 | League of United Latin Am. Citizens v. Wilson, 908 F. Supp. 755 | 24+103 | The question of whether provisions of Proposition 187 are preempted by federal law is governed by the Supreme Court's decision in De Canas v. Bica, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976) (California statute prohibiting an employer from knowingly employing an alien who is not entitled to lawful residence in the United States held not preempted under federal law). In De Canas, the Supreme Court set forth three tests to be used in determining whether a state statute related to immigration is preempted. Pursuant to De Canas, if a statute fails any one of the three tests, it is preempted by federal law.Under the first test, the Court must determine whether a state statute is a "regulation of immigration." Since the "[p]ower to regulate immigration is unquestionably exclusively a federal power," id. at 354, 96 S.Ct. at 936, any state statute which regulates immigration is "constitutionally proscribed." Id. at 356, 96 S.Ct. at 936. | Since power to regulate immigration is unquestionably exclusively federal power, any state statute which regulates immigration is constitutionally proscribed. | Are state statutes that regulate immigration per se preempted because of the exclusivity of federal power to regulate in this area under the United States Constitution? | 006842.docx | LEGALEASE-00160392-LEGALEASE-00160393 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11808 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+330 | A deportation hearing is held before an immigration judge. The judge's sole power is to order deportation; the judge cannot adjudicate guilt or punish the respondent for any crime related to unlawful entry into or presence in this country. Consistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a deportation hearing. The respondent must be given "a reasonable opportunity to be present at [the] proceeding," but if the respondent fails to avail himself of that opportunity the hearing may proceed in his absence. 8 U.S.C. " 1252(b). In many deportation cases the INS must show only identity and alienage; the burden then shifts to the respondent to prove the time, place, and manner of his entry. See 8 U.S.C. " 1361; Matter of Sandoval, 17 I. & N.Dec. 70 (BIA 1979). A decision of deportability need be based only on "reasonable, substantial, and probative evidence," 8 U.S.C. " 1252(b)(4). The BIA for its part has required only "clear, unequivocal and convincing" evidence of the respondent's deportability, not proof beyond a reasonable doubt. 8 CFR " 242.14(a) (1984). | Consistent with civil nature of a deportation proceeding, various protections that apply in context of a criminal trial do not apply in a deportation hearing. | Do protections which apply in the context of a criminal trial apply in a deportation hearing? | 006927.docx | LEGALEASE-00160216-LEGALEASE-00160217 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11809 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+330 | A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime. 8 U.S.C. "" 1302, 1306, 1325. The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain. See 8 U.S.C. "" 1251, 1252(b); Bugajewitz v. Adams, 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978 (1913); Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 1028, 37 L.Ed. 905 (1893). | A deportation proceeding is a purely civil action to determine eligibility to remain in country, not to punish unlawful entry, though entering or remaining unlawfully in country is itself a crime. Immigration and Nationality Act, SS 262, 266, 275, 8 U.S.C.A. SS 1302, 1306, 1325. | Are deportation proceedings civil actions? | "Aliens, Immigration and Citizenship - Memo 77 - RK_64811.docx" | ROSS-003280184-ROSS-003280185 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 11810 | Mathews v. Diaz, 426 U.S. 67 | 92+3921 | There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law. Wong Yang Sung v. McGrath, 339 U.S. 33, 48-51, 70 S.Ct. 445, 453-455, 94 L.Ed. 616, 627-629; Wong Wing v. United States, 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140, 143; see Russian Fleet v. United States, 282 U.S. 481, 489, 51 S.Ct. 229, 231, 75 L.Ed. 473, 476. Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection. Wong Yang Sung, supra ; Wong Wing, supra. | Even one whose presence in the United States is unlawful, involuntary, or transitory is entitled to protection, under the Fifth and Fourteenth Amendments, from deprivation of life, liberty or property without due process of law. U.S.C.A.Const. Amends. 5, 14. | Are aliens entitled to protection under the Fifth Amendment? | "Aliens, Immigration and Citizenship - Memo 82 - RK_64815.docx" | ROSS-003292552-ROSS-003292553 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11811 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+340 | A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime. 8 U.S.C. "" 1302, 1306, 1325. The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain. See 8 U.S.C. "" 1251, 1252(b); Bugajewitz v. Adams, 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978 (1913); Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 1028, 37 L.Ed. 905 (1893). | Deportation hearing looks prospectively to alien's right to remain in country in future; past conduct is relevant only insofar as it may shed light on alien's right to remain. Immigration and Nationality Act, SS 241, 242(b), 8 U.S.C.A. SS 1251, 1252(b). | Is a respondents right to remain in the future determined in deportation proceedings? | "Aliens, Immigration and Citizenship - Memo 96 - RK_64829.docx" | ROSS-003294888-ROSS-003294889 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 11812 | Schafer v. City of Los Angeles, 237 Cal. App. 4th 1250, 188 Cal. Rptr. 3d 655 | 156+52(8) | Schafer v. City of Los Angeles, 237 Cal. App. 4th 1250, 188 Cal. Rptr. 3d 655.Great Quote 1: Particularly in land use cases, "[c]ourts have severely limited the application of estoppel ... by expressly balancing the injustice done to the private person with the public policy that would be supervened by invoking estoppel to grant development rights outside of the normal planning and review process. [Citation.] The overriding concern "is that public policy may be adversely affected by the creation of precedent where estoppel can too easily replace the legally established substantive and procedural requirements for obtaining permits." [Citation.] Accordingly, estoppel can be invoked in the land use context in only "the most extraordinary case where the injustice is great and the precedent set by the estoppel is narrow." [Citation.]" (Toigo v. Town of Ross (1998) 70 Cal.App.4th 309, 321, 82 Cal.Rptr.2d 649 (Toigo ).) | Estoppel can be invoked in the land use context in only the most extraordinary case where the injustice is great and the precedent set by the estoppel is narrow. | Can estoppel be invoked in the land use context only in the most extraordinary case? | 017932.docx | LEGALEASE-00160030-LEGALEASE-00160031 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11813 | Burton v. Nat'l Bank of Commerce of Dallas, 679 S.W.2d 115 | 156+52.10(1) | Waiver is a unilateral act performed solely by a party in whom a legally enforceable right exists; estoppel arises when his adversary acts in accordance therewith, to his detriment. See Tex-Craft Builders, Inc. v. Allied Constructors of Houston, Inc., 465 S.W.2d 786 (Tex.Civ.App."Tyler 1971, writ ref'd n.r.e.); Graham v. San Antonio Mach. & Supply Corp., 418 S.W.2d 303 (Tex.Civ.App."San Antonio 1967, writ ref'd n.r.e.). It has been held that the broad concept embodied in the doctrine of estoppel is that a person who by his speech or conduct has induced another to act in a particular manner ought not to be permitted to adopt an inconsistent position, attitude, or course of conduct to the loss or injury of such other. First State Bank of Riesel v. Dyer, 248 S.W.2d 785, *118 affirmed 151 Tex. 650, 254 S.W.2d 92 (1953). | Waiver is a unilateral act performed solely by a party in whom a legally enforceable right exists; estoppel arises when his adversary acts in accordance therewith, to his detriment. | Is waiver a unilateral act? | Estoppel - Memo #224 - C - CSS_64622.docx | ROSS-003280641-ROSS-003280642 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 11814 | Greater Wilmington Transp. Auth. v. Kline, 285 A.2d 819 | 183+2 | As generally stated a franchise is a special privilege conferred by government on individuals, which does not belong to a citizen by common right. It is essential that a franchise should be created by a grant from the sovereign authority. 37 C.J.S. Franchises s 10; 17 Words and Phrases, "Franchise", p. 714; State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S.W.2d 394, Anno. 89 A.L.R. 607 (1932). at common law a franchise may owe its existence to prescription or long standing use, though this too presupposes a grant. Blue Bird Air Service v. City of Chicago, 376 Ill. 272, 33 N.E.2d 456 (1941). The granting of franchises to operate a public utility is an exercise of the legislative function of the sovereign, which may be delegated by statute to a duly designated agency or commission.37 C.J.S. Franchises s 14. In the absence of a constitutional or statutory provision providing therefor, a public utility commission has no power to grant a franchise to a public utility. 73 C.J.S. Public Utilities s 42; Commissioners of Cambridge v. Eastern Shore P.S. Co., 192 Md. 333, 64 A.2d 151 (1949). The powers of the Public Service Commission of Delaware are entirely statutory. Smith v. Delaware Coach Co., 31 Del.Ch. 256, 70 A.2d 257 (1949). | Granting of franchises to operate a public utility is an exercise of legislative function of the sovereign, which may be delegated by statute to a duly designated agency or commission. | Is granting of a franchise a legislative act? | 018492.docx | LEGALEASE-00159925-LEGALEASE-00159926 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11815 | Koester v. Weber, Cohn & Riley, 193 Ill. App. 3d 1045 | 307A+561.1 | Plaintiff's allegations of an oral agreement for the use of his photograph for one time only could not be considered by the trial court because the Model Release explicitly barred any claims based on those allegations.Dismissal of plaintiff's complaint under section 2-619(a)(9) of the Illinois Code of Civil Procedure (Ill.Rev.Stat.1987, ch. 110, par. 2-619(a)(9)) by defendant's written motion supported by an affidavit was correct because "affirmative matter" includes defenses that defeat a cause of action completely. Perkaus v. Chicago Catholic High School (1986), 140 Ill.App.3d 127, 134-45, 94 Ill.Dec. 624, 488 N.E.2d 623. | Term "affirmative matter" within meaning of rule allowing involuntary dismissal of claims when they are barred by such affirmative matter included defenses that defeat cause of action completely. S.H.A. ch. 110, P 2-619(a)(9). | Does affirmative matter include defenses that defeat cause of action completely? | Pretrial Procedure - Memo 11139 - C - TM_64201.docx | ROSS-003283215 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 11816 | A.F.P. Enterprises v. Crescent Pork, 243 Ill. App. 3d 905 | 307A+680 | The primary purpose of a section 2-619 motion to dismiss is to provide a means to dispose of issues of law or easily proved issues of fact. However, if it cannot be determined with reasonable certainty that the alleged defense exists, the motion should be denied. (Cobelcomex, 149 Ill.App.3d at 703, 103 Ill.Dec. 135, 501 N.E.2d 156.) Although similar to a summary judgment motion, a section 2-619 motion differs in that the court may, in its discretion, decide questions of fact upon the hearing of the motion. (Cobelcomex, 149 Ill.App.3d at 703, 103 Ill.Dec. 135, 501 N.E.2d 156.) | Although similar to summary judgment motion, motion to dismiss differs in that court may, in its discretion, decide questions of fact upon hearing of motion, but, in deciding merits of motion, trial court cannot determine disputed factual issues solely upon affidavits and counteraffidavits; if affidavits present disputed facts, parties must be afforded opportunity to have evidentiary hearing. Ill.Rev.Stat.1991, ch. 110, P 2-619. | Will a motion to dismiss be allowed if it cannot be determined with certainty that alleged defense exists? | Pretrial Procedure - Memo 11147 - C - TM_64209.docx | ROSS-003282568-ROSS-003282569 | Condensed, SA | 0.26 | 0 | 1 | 0 | 1 | |
| 11817 | Reid v. Spazio, 970 A.2d 176 | 307A+561.1 | In ruling on a motion to dismiss under Court of Chancery Rule 12(b)(6), the Court is generally limited to facts appearing on the face of the pleadings. Accordingly, affirmative defenses, such as laches, are not ordinarily well-suited for treatment on such a motion. Unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate. | Unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate when deciding a motion todismiss for failure to state a claim upon which relief can be granted. Chancery Court Rule 12(b)(6). | When will the dismissal of a complaint be considered inappropriate? | 039920.docx | LEGALEASE-00159573-LEGALEASE-00159574 | Condensed, Order, SA | 0.29 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11818 | Anderson v. Beach, 386 Ill. App. 3d 246 | 307A+561.1 | We review de novo a trial court's dismissal of a complaint under section 2"619 of the Code (735 ILCS 5/2"619 (West 2006)). Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill.2d 558, 579, 304 Ill.Dec. 369, 852 N.E.2d 825 (2006). A motion to dismiss under section 2"619 concedes that the plaintiff's claim is legally sufficient but argues that defects or affirmative defenses defeat the claim. Solaia Technology, LLC, 221 Ill.2d at 579, 304 Ill.Dec. 369, 852 N.E.2d 825. | A motion to dismiss based on certain defects or defenses concedes that the plaintiff's claim is legally sufficient but argues that defects or affirmative defenses defeat the claim. S.H.A. 735 ILCS 5/2-619. | Will a motion to dismiss concede that plaintiff's claim is legally sufficient? | 039926.docx | LEGALEASE-00159593-LEGALEASE-00159594 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 11819 | McCoy v. Martinez, 480 S.W.3d 420 | 307A+561.1 | Official immunity is an affirmative defense that protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts. Davis v. Lambert"St. Louis Intern. Airport, 193 S.W.3d 760, 763 (Mo. banc 2006). Dismissal based on an affirmative defense may be appropriate if the petition clearly establishes "on its face and without exception" that the claim is barred. Richardson v. City of St. Louis, 293 S.W.3d 133, 139 (Mo.App.E.D.2009) (quoting Int'l Plastics Dev., Inc. v. Monsanto Co., 433 S.W.2d 291, 294 (Mo. banc 1968)). "When determining the sufficiency of the allegations setting forth a defendant's affirmative defense, we may look to the responsive pleadings as a whole." Woods v. Ware, 471 S.W.3d 385, 391 (Mo.App.W.D.2015). | Dismissal based on an affirmative defense may be appropriate if the petition clearly establishes on its face and without exception that the claim is barred. | When can a dismissal based on an affirmative defense be considered appropriate? | 039931.docx | LEGALEASE-00159601-LEGALEASE-00159602 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11820 | Ex parte Beck, 988 So. 2d 950 | 307A+561.1 | We adopt the Court of Civil Appeals' reasoning in Waite, and we hold that a trial court errs when it dismisses a case on the basis of an affirmative defense not asserted by the defendant. Therefore, we must reverse that portion of the Court of Civil Appeals' judgment affirming the trial court's order dismissing Beck's complaint as to Ashley and Moore, who failed to assert the affirmative defense of res judicata in their motions to dismiss. | A trial court errs when it dismisses a case on the basis of an affirmative defense not asserted by the defendant. Rules Civ.Proc., Rule 8(c). | Can a court err when it dismisses a case on the basis of an affirmative defense not asserted by the defendant? | Pretrial Procedure - Memo 11404 - C - MS_64457.docx | ROSS-003283312-ROSS-003283313 | Order, SA | 0.68 | 1 | 0 | 0 | 1 | |
| 11821 | O'Halloran v. PricewaterhouseCoopers LLP, 969 So. 2d 1039 | 307A+561.1 | Florida Rule of Civil Procedure 1.110(d) provides that "[a]ffirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion [to dismiss] under rule 1.140(b)." Accordingly, a complaint may be dismissed if its allegations show the existence of an affirmative defense to the claims asserted in the complaint. See Boca Burger, Inc. v. Forum, 912 So.2d 561, 568"69 (Fla.2005). | A complaint may be dismissed if its allegations show the existence of an affirmative defense to the claims asserted in the complaint. West's F.S.A. RCP Rule 1.110(d). | Can a complaint be dismissed if its allegations show the existence of an affirmative defense to the claims asserted in the complaint? | Pretrial Procedure - Memo 11410 - C - MS_64463.docx | ROSS-003279717-ROSS-003279718 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 11822 | Licking v. Hays Lumber Co., 146 Neb. 240 | 371+3249 | "An excise tax, using the term in its broad meaning as opposed to a property tax, includes taxes sometimes designated by statute or referred to as privilege taxes, license taxes, occupation taxes, and business taxes." 1 Cooley, Taxation (4th ed.), sec. 45, p. 129. | An excise tax, using the term in its broad meaning as opposed to a property tax, includes taxes sometimes designated by statute as privilege taxes, license taxes, occupation taxes, and business taxes. | "Are occupation taxes and sales taxes ""excise taxes?" | 046190.docx | LEGALEASE-00159744-LEGALEASE-00159745 | Condensed, SA | 0.24 | 0 | 1 | 0 | 1 | |
| 11823 | Anthony v. City of Omaha, 283 Neb. 868 | 371+3602 | But sales taxes and occupation taxes tax different kinds of acts. An occupation tax is a tax upon the privilege of doing business in a particular jurisdiction or upon the act of exercising, undertaking, or operating a given occupation, trade, or profession. A sales tax, on the other hand, is a tax upon the sale, lease, rental, use, storage, distribution, or other consumption of all tangible personal property in the chain of commerce. | A "sales tax" is a tax upon the sale, lease, rental, use, storage, distribution, or other consumption of all tangible personal property in the chain of commerce. | "Is a ""sales tax"" a tax on the sale of tangible personal property?" | 046199.docx | LEGALEASE-00159762-LEGALEASE-00159763 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 11824 | People v. Zieg, 841 P.2d 342 | 3.77E+25 | Menacing, whether a misdemeanor or a felony, is a general intent crime; it requires only that the defendant be aware that his conduct is practically certain to cause the result. Section 18"1"501(6), C.R.S. (1986 Repl.Vol. 8B); People v. Crump, 769 P.2d 496 (Colo.1989). Although it is not necessary to prove actual subjective fear on the part of the victim, nonetheless, what the victim saw or heard and his reactions thereto are relevant considerations in determining whether the defendant had the requisitemens rea to commit this offense. See People v. Gagnon, 703 P.2d 661 (Colo.App.1985) | Menacing, whether misdemeanor or felony, is general intent crime that requires only that defendant be aware that his conduct is practically certain to cause result. West's C.R.S.A. SS 18-1-501(6), 18-3-206. | "Is ""menacing"" a general intent crime?" | 046900.docx | LEGALEASE-00160284-LEGALEASE-00160285 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 11825 | Com. v. Elliffe, 47 Mass. App. Ct. 580 | 3.77E+10 | The defendant first argues that the Commonwealth's evidence, as presented, was fatally lacking, specifically, that nothing in his conduct constituted a threat of future harm. We disagree. The word "threatened" is not defined in G.L. c. 275, " 2. In law, "threatened" has universally been interpreted to require more than the mere expression of intention. "The elements of threatening a crime include an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat." Commonwealth v. Robicheau, 421 Mass. 176, 183, 654 N.E.2d 1196 (1995). Commonwealth v. Ditsch, 19 Mass.App.Ct. 1005, 1005, 475 N.E.2d 1235 (1985), citing Robinson v. Bradley, 300 F.Supp. 665, 668 (D.Mass.1969). See Commonwealth v. Chalifoux, 362 Mass. 811, 816, 291 N.E.2d 635 (1973). While in this case the words "drop the charges" of themselves do not constitute "an expression of intention to do bodily harm or to inflict any other evil, injury or damage," they must be interpreted in the context of the actions and demeanor which accompanied them; when viewed together they may constitute the requisite expression, and may indicate additionally, in the circumstances, ability and apprehension. | Elements of threatening a crime include an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat. | What are the elements of threatening a crime? | 046918.docx | LEGALEASE-00160300-LEGALEASE-00160301 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11826 | Kroncke v. Caddo Par. Sch. Bd., 183 So. 86 | 413+103 | We therefore conclude that the rules of law applicable to tort actions do not apply in compensation cases and that an employee of a school board has a right and cause of action against it for compensation, if injured while in its employ, and, under the authority above cited, it is immaterial whether or not the functions of the school board are entirely governmental or not, nor does it matter whether its business is hazardous or non-hazardous. | An employee of a school board has a right and cause of action against the school board for compensation for injuries received while in the employ of the board, and it is immaterial whether the functions of the school board are entirely governmental or whether its business is hazardous or nonhazardous. Act No. 20 of 1914, as amended, LSA-R.S. 23:1021 et seq. | Can school employees have a right to compensation? | 048670.docx | LEGALEASE-00160182-LEGALEASE-00160183 | Order, SA, Sub | 0.2 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11827 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+330 | A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry, though entering or remaining unlawfully in this country is itself a crime. 8 U.S.C. "" 1302, 1306, 1325. The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain. See 8 U.S.C. "" 1251, 1252(b); Bugajewitz v. Adams, 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978 (1913); Fong Yue Ting v. United States, 149 U.S. 698, 730, 13 S.Ct. 1016, 1028, 37 L.Ed. 905 (1893). | A deportation proceeding is a purely civil action to determine eligibility to remain in country, not to punish unlawful entry, though entering or remaining unlawfully in country is itself a crime. Immigration and Nationality Act, SS 262, 266, 275, 8 U.S.C.A. SS 1302, 1306, 1325. | Are deportation proceedings conducted to provide punishment for unlawful entry? | 006997.docx | LEGALEASE-00161257-LEGALEASE-00161258 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 11828 | Guernsey v. Imperial Bank of Canada, 188 F. 300 | 8.30E+14 | The court below held that the notice was good and rendered a judgment against the indorser. The latter's counsel insist that this ruling is error on the ground that the sufficiency of the notice is governed by the law of the place of indorsement and not by the law of the place of payment. To this contention there is a short and conclusive answer. The place of the indorsement was the state of Illinois. The law of that state was, when the indorsement was made, and it still is, that when commercial paper is indorsed in one jurisdiction and is payable in another the law of the place where it is payable governs the time and mode of presentment for payment, the manner of protest, and the time and manner of giving notice of dishonor, and the law of the place of indorsement is inapplicable to them. Wooley v. Lyon, 117 Ill. 248, 250, 6 N.E. 885, 886, 57 Am.Re. 867. If, therefore, as counsel contend, the law of the place where the indorsement was made, the law of Illinois, governs the sufficiency of the notice of dishonor in this case, that notice was good, for it was sufficient under the law of Canada where the note was payable, and the law of Illinois was that in a case of this character the law of the place where the note was payable governed the time and manner of giving the notice of dishonor. | The law of the place where commercial paper is payable governs the time and manner of presentment, demand and the protest, and notice of dishonor. | "When commercial paper is indorsed in one jurisdiction and is payable in another, which law governs the time and mode of presentment for payment?" | 009640.docx | LEGALEASE-00161239-LEGALEASE-00161240 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 11829 | United States v. Lemons, 67 F. Supp. 985 | 8.30E+11 | Under said statute a forged indorsement passes no title to a subsequent holder of a negotiable instrument. Dowling v. Grand Avenue Bank of St. Louis, 216 Mo.App. 86, 267 W.W. 1. It is also the law of said state that where a note is forged by having defendant's name signed thereto by another, without his authority or subsequent ratification, it is wholly inoperative and void, whether the holder is an innocent or guilty purchaser. German-American Bank v. Barnes, Mo. App., 185 S.W. 1194, Scott v. First Nat. Bank in St. Louis, 343 Mo. 77, 119 S.W.2d 929. The law of the state in which a check, or negotiable instrument, is executed, determines the formality and essential validity thereof, and the incidents of the obligation of such instrument. United States v. Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed.415, 95 A.L.R. 651. | The law of the state in which a check or negotiable instrument is executed determines the formality and essential validity thereof, and the incidents of the obligation of such instrument. | Which law determines the formal and essential validity of a check? | Bills and Notes -Memo 1374- JK_66277.docx | ROSS-003310041-ROSS-003310042 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 11830 | People v. Prospect, 50 A.D.3d 1064 | 63+14 | The Supreme Court's jury charge regarding bribe receiving in the second degree was proper, as it was in accordance with the language contained in the pattern jury instructions (see People v. Mateo, 2 N.Y.3d 383, 416 n. 20, 779 N.Y.S.2d 399, 811 N.E.2d 1053, cert. denied 542 U.S. 946, 124 S.Ct. 2929, 159 L.Ed.2d 828; People v. Lubrano, 43 A.D.3d 829, 844 N.Y.S.2d 319; People v. McDonald, 283 A.D.2d 592, 593, 724 N.Y.S.2d 899; People v. Dering, 140 A.D.2d 538, 539, 528 N.Y.S.2d 622). The court also provided a meaningful response to a note from the jury (see CPL 310.30; People v. Malloy, 55 N.Y.2d 296, 449 N.Y.S.2d 168, 434 N.E.2d 237). | Trial court's jury charge, in prosecution for, inter alia, second-degree bribe receiving, regarding that offense, was proper; charge was in accordance with the language in the pattern jury instructions. | Was the courts second degree bribery charge proper and in accordance with the language in the pattern jury instructions? | 012523.docx | LEGALEASE-00161493-LEGALEASE-00161494 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 11831 | State v. Nunez, 129 N.M. 63 | 135H+25 | We hold that civil forfeiture under the Controlled Substances Act is punishment for double-jeopardy purposes under the New Mexico Constitution. | Civil forfeiture under the Controlled Substances Act is punishment for double-jeopardy purposes under the state constitution, and thus all forfeiture complaints and criminal charges for violations of the Act may both be brought only in a single, bifurcated proceeding. Const. Art. 2, S 15; NMSA 1978, SS 30-1-10, 30-31-34. | Is civil forfeiture under the Controlled Substances Act punishment for double-jeopardy purposes under the state constitution? | 014954.docx | LEGALEASE-00160560-LEGALEASE-00160561 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 11832 | Nat'l Life Real Estate Holdings v. Scarlato, 2017 IL App (1st) 161943, 83 N.E.3d 44 | 156+52.10(2) | " 42 Again finding a dearth of Illinois law on this subject, we look to One CW, LLC v. Cartridge World North America, LLC, 661 F.Supp.2d 931, 936 (N.D. Ill. 2009), in which the court recognized that a citation respondent or garnishee who seeks to assert a right to set-off "also must comply with the duties of a garnishee." Here, we have found that IBC failed to comply with the citation's restraining provision and thus did not fulfill its duties, similar to the respondent in One CW, LLC. However, we further find that until its response to National Life's motion for entry of judgment, IBC did not assert its right to set-off. Its original answer to the citation did not contain any reference thereof and neither did any subsequent supplemental answers. In One CW, LLC, the court stated that the garnishee "has claimed a right to set-off, but has failed to take any steps to actually exercise this right." Id. We find this case to be similar where IBC failed to take any steps to assert its right to set-off outside of its response to the motion for judgment, and so any right of set-off has been forfeited. Although the parties here and the court in One CW, LLC, use the term "waiver," we find that National Life actually forfeited its set-off claim. "[W]aiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right." (Internal quotation marks omitted.) Gallagher v. Lenart, 226 Ill. 2d 208, 229, 314 Ill.Dec. 133, 874 N.E.2d 43 (2007). Conversely, forfeiture is the "failure to make the timely assertion of the right." (Internal quotation marks omitted.) Id. at 229"30, 314 Ill.Dec. 133, 874 N.E.2d 43. Here, National Life failed to timely assert its purported right to set-off, thus forfeiture applies. | Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right; conversely, forfeiture is the failure to make the timely assertion of the right. | Does waiver arise from an affirmative act? | Estoppel - Memo 237 - C - CSS_65213.docx | ROSS-003294530-ROSS-003294531 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11833 | People v. Borriello, 155 Misc. 2d 261 | 360+18.87 | Penal Law " 170.20 provides as follows:"A person is guilty of criminal possession of a forged instrument in the third degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses a forged instrument."Penal Law " 170.20 focuses on the falsity of an instrument. The required element that there be a "forged instrument" deals with any instrument in general, not specifically an instrument that is copyrightable. Standing alone the fact that the copyrighted labels were forged does not in and of itself make this Penal Law a copyright infringement statute (see, People ex rel. Calderon v. Russi, 182 A.D.2d 794, 582 N.Y.S.2d 766).These counts are essentially a false labelling activity which seek to protect the consumer from fraud. Section 301 is not intended to preempt such a common law protection even where the subject matter involved comes within the scope of the copyright statute(see, Meyers v. Waverly Fabrics, 65 N.Y.2d 75, 78, 489 N.Y.S.2d 891, 479 N.E.2d 236). | State regulation or statute is preempted by Federal Copyright Revision Act if right is equivalent to any of those exclusive rights within general scope of copyright provided by Act, and if state law applies to work of authorship within subject matter of copyright as defined in Act. 17 U.S.C.A. S 301. | Is state common law protection in fraudulent activities preempted under 17 USCA 301 if the subject matter comes within the federal copyright statute? | 018456.docx | LEGALEASE-00161892-LEGALEASE-00161893 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 11834 | Burtchell v. Willey, 147 Me. 339 | 48A+168(8) | It is not necessarily negligence to drive an automobile in heavy fog. The driver of an automobile passing through fog has the right to proceed at a reasonable speed, consistent with the existing conditions. The question of due care is one of fact. Cole v. Wilson, 127 Me. 316, 143 A. 178; Peasley v. White, 129 Me. 450, 152 A. 530, 73 A.L.R. 1017. | One driving an automobile in heavy fog has the right to proceed at a reasonable speed consistent with the existing conditions. | Will the driver of an automobile in heavy fog be held liable for negligence if he proceeds at a reasonable speed consistent with the existing conditions? | Highways - Memo 389 - RK_66319.docx | ROSS-003281165-ROSS-003281166 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 11835 | State v. Muolo, 119 Conn. 323 | 200+80 | Under the law of this state, the owner of land abutting upon a highway is presumed, in the absence of evidence to the contrary, to own the fee of the land to the center of the highway; the highway is but an easement for public travel and such uses as are incident thereto; the abutter retains all rights in the land not incompatible with the public easement; any person making a use of it beyond the scope of that easement commits a wrong against the owner of the fee, unless, indeed, he acts under legislative authority either in the furtherance of a public use and with compensation made or under a proper exercise by the state of its police power; and for one otherwise to maintain a place of private business in the highway in front of another's property is to commit a wrong against the owner of the fee. Peck v. Smith, 1 Conn. 103, 6 Am. Dec. 216; Read v. Leeds, 19 Conn. 182, 187; Imlay v. Union Branch R. R., 26 Conn. 249, 68 Am. Dec. 392; Woodruff v. Neal, 28 Conn. 165, 167; Canastota Knife Co. v. Newington Tramway Co., 69 Conn. 146, 36 A. 1107; Cadwell v. Connecticut Co., 85 Conn. 401, 404, 83 A. 215, 444, 40 L. R. A. (N. S.) 253, Ann. Cas. 1913C, 401; Knothe v. Zinzer, 96 Conn. 709, 713, 115 A. 477. The owner of the fee holds his estate subject to the right of the public to the full enjoyment of the easement, under the changing conditions of life, and subject to such control as the Legislature may exercise under its police power. Canastota Knife Co. v. Newington Tramway Co., supra, pages 151, 156, of 69 Conn., 36 A. 1107; New York, N. H. & H. R. Co. v. Bridgeport Traction Co., 65 Conn. 410, 432, 32 A. 953, 29 L. R. A. 367. "Two rights are to be guarded with equal care,"that of the individual landowner, and that of the public at large; but his estate is the servient tenement." Canastota Knife Co. v. Newington Tramway Co., supra, page 158 of 69 Conn., 36 A. 1107, 1111. | Abutting owner is presumed, in absence of contrary evidence, to own fee to center of highway, subject to an easement for public travel and such uses as are incident thereto. | Does an abutting owner have all the rights incompatible with a public easement? | Highways - Memo 398 - RK_66327.docx | ROSS-003279005-ROSS-003279007 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 11836 | Barrett v. Hand, 158 Neb. 273 | 200+77(2) | We have said: "A public highway, while being used as such, can only be vacated by the county board in the manner prescribed by law; a proper petition for that purpose being necessary. Rev.St.1913, " 2857; McNair v. State, 26 Neb. 257, 41 N.W. 1099."State ex rel. Enerson v. County Com'rs, 102 Neb. 199, 166 N.W. 554, 555. See, also, Barry v. Deloughrey,; Letherman v. Hauser, 77 Neb. 731, 110 N.W. 745; Koch v. County of Dakota, 151 Neb. 506, 38 N.W.2d 397; Wright v. Loup River Public Power Dist., 133 Neb. 715, 277 N.W. 53; Feuerstein v. Saunders County, 110 Neb. 121, 193 N.W. 256; McNair v. State, 26 Neb. 257, 41 N.W. 1099. | A public highway, while being used as such, can only be vacated by county board in the manner prescribed by law, and a proper petition for such purpose is necessary. R.R.S.1943, SS 39-102, 39-105. | Is a proper petition necessary for vacating a public highway? | 018847.docx | LEGALEASE-00161741-LEGALEASE-00161742 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 11837 | Farm Bureau Lumber Corp. v. State, for Use of Saline Cty., 211 Ark. 95 | 200+182 | What is such violation? Section 1 prohibits "the using, driving or operating upon any improved hard-surfaced public highway of this State of any tractor, truck, automobile or other vehicle having corrugated, spiked, joined or other rough-surfaced metal tires' without license. The license permits "use or operation" of such vehicles, not the right to damage public property. It is true that by Sec. 5 civil liability is made cumulative as to the person convicted of violating the prohibitory portions of the Act; but the criminal liability created by Sec. 4, Pope's Dig. " 7154, arises when one without authority makes use of a hard-surfaced public highway, irrespective of damage to the road. | Conviction for violation of statute prohibiting use of tractors, trucks, etc., having corrugated, spiked or other rough-surfaced metal tires, on improved hard-surfaced public highway without license, is not condition precedent to civil liability under same statute for damages caused by such violation, as criminal liability arises from such use of highway without authority irrespective of damage thereto. Pope's Dig. SS 7151, 7154. | Are spiked tires prohibited on a highway? | Highways - Memo 453 - RK_66353.docx | ROSS-003325544-ROSS-003325545 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 11838 | Chamness v. Mays, 2014 IL App (5th) 130381 | 200+75 | An established public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute or abandoned. Hart v. Town of Shafter, 348 Ill.App.3d 713, 715, 284 Ill.Dec. 699, 810 N.E.2d 489 (2004). Nonuse of the road alone is insufficient to establish abandonment by the public. Abandonment will be found only where the public has acquired the legal right to another road or where the necessity for another road has ceased to exist., 284 Ill.Dec. 699, 810 N.E.2d 489. For the presumed necessity for the road to cease to exist some circumstance must change. 284 Ill.Dec. 699, 810 N.E.2d 489. This additional burden is imposed because a road is an indispensible public necessity that the public would not abandon without replacing. 284 Ill.Dec. 699, 810 N.E.2d 489. | An established public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute or abandoned. | Can a public highway lose its character as a public road? | Highways - Memo 471 - RK_66371.docx | ROSS-003295864-ROSS-003295865 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11839 | Phillips v. Bradshaw, 859 S.W.2d 232 | 307A+622 | A default judgment should not be entered for a party if his petition fails to state a cause of action. Jones v. Williams, 357 Mo. 531, 209 S.W.2d 907, 910 (1948). A pleading which states no cause of action confers no subject matter jurisdiction on a court and is subject to dismissal. Sisco v. James, 820 S.W.2d 348, 351[4] (Mo.App.S.D.1991); Wright v. Mullen, 659 S.W.2d 261, 263[4] (Mo.App.W.D.1983). The only power a court without subject matter jurisdiction possesses is the power to dismiss the action. Rule 55.27(g)(3); Sisco, 820 S.W.2d at 351[4]; Wells v. Noldon, 679 S.W.2d 889, 891[7] (Mo.App.E.D.1984); Gaslight Real Estate Corp. v. Labor and Industrial Relations Commission, 604 S.W.2d 818, 820[4] (Mo.App.W.D.1980). Inasmuch as failure to state a cause of action is jurisdictional, the issue may properly be raised anytime during the proceedings, even for the first time on appeal from a default judgment. Harding v. State Farm Mutual Automobile Ins. Co., 448 S.W.2d 5, 7"8[4] (Mo. banc 1969); Eilers v. Kodner Development Corp., 513 S.W.2d 663, 665[1] (Mo.App.1974). Defendant's first point thus requires us to determine whether Plaintiff's petition pled a cause of action. | Pleading which states no cause of action confers no subject matter jurisdiction on court and is subject to dismissal. | Can a pleading which states no cause of action confer subject matter jurisdiction on a court? | Pleading - Memo 612 - RMM_65797.docx | ROSS-003292526-ROSS-003292527 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 11840 | St. Louis Univ. v. Hesselberg Drug Co., 35 S.W.3d 451 | 307A+561.1 | Collateral estoppel is an affirmative defense. Rule 55.08. Sustaining a motion to dismiss based on an affirmative defense requires that the defense be irrefutably established by the pleadings. Ryan v. Ford, 16 S.W.3d 644, 648 (Mo.App. W.D.2000), citing Murray v. Fleischaker, 949 S.W.2d 203, 205 (Mo.App. S.D.1997). When reviewing the trial court's dismissal of a cause of action, we examine "the pleadings, allowing them their broadest intendment, treating all facts alleged as true, and construing the allegations favorably to the pleader." Bellos v. Winkles, 14 S.W.3d 653, 655 (Mo.App. E.D.2000) (citation omitted). | Sustaining a motion to dismiss based on an affirmative defense requires that the defense be irrefutably established by the pleadings. | Would a motion to dismiss be sustained based on an affirmative defense which requires that the defense be established by the pleadings? | 039962.docx | LEGALEASE-00160877-LEGALEASE-00160878 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11841 | Rabos v. R & R Bagels & Bakery, 100 A.D.3d 849 | 307A+695 | Turning to those branches of the plaintiff's motion which were pursuant to CPLR 3211(e) for leave to replead the second and fifth causes of action, "the standard to be applied on a motion for leave to replead pursuant to CPLR 3211(e) is consistent with the standard governing motions for leave to amend pursuant to CPLR 3025" (Janssen v. Incorporated Vil. of Rockville Ctr., 59 A.D.3d 15, 27, 869 N.Y.S.2d 572). "Namely, motions for leave to amend pleadings should be freely granted absent prejudice or surprise to the opposing party, unless the proposed amendment is devoid of merit or palpably insufficient" (id.). | Standard on a motion for leave to replead, to defeat a motion to dismiss, is consistent with the standard governing motions for leave to amend, i.e., that motions for leave to amend pleadings should be freely granted absent prejudice or surprise to the opposing party, unless the proposed amendment is devoid of merit or palpably insufficient. McKinney's CPLR 3025, 3211(e). | Is the standard to be applied for granting a motion for leave to replead pursuant to a motion to dismiss consistent with the standard governing motions for leave to amend? | 040181.docx | LEGALEASE-00161355-LEGALEASE-00161356 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 11842 | In re Gen. Motors Corp., 296 S.W.3d 813 | 307A+583 | We are unpersuaded by Landmark argument that the district court had the power to dismiss Landmark claims for lack of jurisdiction, but lacked power to dismiss them for want of prosecution. Every court has power, in the absence of statutory prohibition, to dismiss a suit for want of prosecution. Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85, 87 (1957) (quoting First Natl Bank v. Fox, 121 Tex. 7, 39 S.W.2d 1085, 1086 (1931)). A court power to dismiss for want of prosecution arises from two sources: (1) rule 165a of the Texas Rules of Civil Procedure, and (2) the court inherent power. Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999). A trial court may dismiss under rule 165a when any party seeking affirmative relief fails to appear for any hearing or trial of which the party had notice or when a case is not disposed within the time standards promulgated by the supreme court. Tex.R. Civ. P. 165a (1), (2). Additionally, common law vests the trial court with inherent power, independent of the rules of procedure, to move its docket by dismissing cases that are not prosecuted with due diligence. Villarreal, 994 S.W.2d at 630; Rizk v. Mayad, 603 S.W.2d 773, 776 (Tex.1980). | Every court has power, in the absence of statutory prohibition, to dismiss a suit for want of prosecution. | "Does a court have the power, in the absence of statutory prohibition, to dismiss a suit for want of prosecution?" | Pretrial Procedure - Memo 11718 - C - NE_65435.docx | ROSS-003282837-ROSS-003282838 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 11843 | Villarreal v. San Antonio Truck & Equip., 974 S.W.2d 275 | 307A+582 | The trial court's authority to dismiss for want of prosecution stems from two sources: (1) Rule 165a of the Texas Rules of Civil Procedure, and (2) the court's inherent power. See Veterans' Land Bd. v. Williams, 543 S.W.2d 89, 90 (Tex.1976); Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85, 87 (1957). A trial court may dismiss under Rule 165a on "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice," tex.R. Civ. P. 165a(1), or when a case is "not disposed of within the time standards promulgated by the Supreme Court...." tex.R. Civ. P. 165a(2).3 In addition, the common law vests the trial court with the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence. See Rizk v. Mayad, 603 S.W.2d 773, 776 (Tex.1980); Williams, 543 S.W.2d at 90. | In addition to the trial court's authority to dismiss a case for want of prosecution provided by the rules of civil procedure, the common law vests the trial court with the inherent power to dismiss independently of the rules of procedure when a plaintiff fails to prosecute his or her case with due diligence. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does a court have inherent power to dismiss a case for want of prosecution? | 040459.docx | LEGALEASE-00161174-LEGALEASE-00161175 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 11844 | Nall v. Woolfolk, 451 S.W.2d 389 | 307A+583 | The power of dismissal for want of prosecution is an inherent power in the courts and necessary to preserve the judicial process. This power exists independent of CR 41.02. City of Hazard v. Baker, Ky., 419 S.W.2d 535. | Power of dismissal for want of prosecution is a power inherent in the courts and necessary to preserve the judicial process, and power exists independent of statute. CR 41.02. | Is the power of dismissal for want of prosecution an inherent power in the courts? | 040471.docx | LEGALEASE-00161221-LEGALEASE-00161222 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 11845 | Brymerski v. City of Great Falls, 195 Mont. 428 | 307A+583 | It is also well established in Montana law that it is within the sound discretion of the trial court to dismiss an action for failure of the plaintiff to prosecute.Calaway, supra, and cases therein cited. We agree with the Colorado Court of Appeals, however, in that "(the trial court's) discretion is not without bounds ... and it must be borne in mind that courts "exist primarily to afford a forum to settle litigable matters between disputing parties." " Farber v. Green Shoe Mfg. Co. (1979), 42 Colo.App. 255, 596 P.2d 398, citing Mizar v. Jones (1965), 157 Colo. 535, 403 P.2d 767. | It is within sound discretion of trial court to dismiss action for failure of plaintiff to prosecute. Rules Civ.Proc., Rule 41(b). | Does the decision to dismiss an action for failure to prosecute lie within the sound discretion of the trial court? | 040550.docx | LEGALEASE-00160911-LEGALEASE-00160912 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11846 | Evans v. Anderson, 78 Ill. 558 | 8.30E+10 | It is true, the note does not, on its face, purport to have been made in the State of Indiana, yet, it so appears by the plea, and the fact is not denied. The existing laws of a State at the time of making a note, form a portion of the contract, and the liability of the maker must be determined under them. Stacy, Admr. v. Baker, 1 Scam. 417; Holbrook et al. v. Vibbard et al. 2 ib. 465; Roundtree, Admr. v. Baker, Admr. 52 Ill. 241; Bradshaw v. Newman, Breese (2d Ed.), 133; Humphreys v. Collier et al..297. | The existing laws of the state at the time of making a note therein form a portion of the contract, and the liability of the maker must be determined under them. | Does the existing law of a State form a portion of a contract? | Bills and Notes - Memo 1321 - RK_66224.docx | ROSS-003296913 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 11847 | Clark v. United States, 913 F. Supp. 441 | 135H+25 | Even if Clark was a party to the civil forfeiture, his Double Jeopardy argument must still fail because a civil forfeiture pursuant to " 881(a)(6) is not "punishment" for Double Jeopardy purposes. A civil forfeiture may constitute "punishment" so as to invoke the protection of the Double Jeopardy clause. See United States v. Halper, 490 U.S. 435, 447"48, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989) ("The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law."). | Civil forfeiture may constitute punishment so as to invoke protection of double jeopardy clause. U.S.C.A. Const.Amend. 5. | Can civil forfeiture constitute punishment so as to invoke protection of a double jeopardy clause? | Double Jeopardy - Memo 110 - C - SB_65889.docx | ROSS-003322034-ROSS-003322035 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11848 | United States v. One 1989, 23 Foot, Wellcraft Motor Vessel, Puerto Rico Registration No. PR 2855GG, 910 F. Supp. 46 | 135H+25 | In conclusion, we believe that the strength of the arguments tilts the balance in favor of the position that drug proceeds are the functional equivalent of contraband and, therefore, we will follow United States v. One Assortment of 89 Firearms, supra, in holding that the civil forfeiture of drug proceeds is a remedial sanction that does not constitute punishment for double jeopardy purposes. | Civil forfeiture of drug proceeds is a remedial sanction that does not constitute punishment for double jeopardy purposes. U.S.C.A. Const.Amend. 5; Comprehensive Drug Abuse Prevention and Control Act of 1970, S 511(a)(6), 21 U.S.C.A. S 881(a)(6). | Is the civil forfeiture of drug proceeds not punishment for double jeopardy purposes? | Double Jeopardy - Memo 112 - C - BP_65891.docx | ROSS-003292718-ROSS-003292719 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 11849 | United States v. One Parcel of Real Prop. with Bldgs., Appurtenances, & Improvements, 908 F. Supp. 1070 | 135H+25 | The Clause is not limited to "life or limb" sanctions; the Clause also applies to imprisonment and monetary penalties. | Double jeopardy clause is not limited to "life or limb" sanctions; clause also applies to imprisonment and monetary penalties. U.S.C.A. Const.Amend. 5. | "Is a double jeopardy clause is not limited to ""life or limb"" sanctions?" | Double Jeopardy - Memo 119 - C - BP.docx | LEGALEASE-00051781-LEGALEASE-00051782 | SA, Sub | 0.24 | 0 | 0 | 1 | 1 | |
| 11850 | United States v. Blumberg, 903 F. Supp. 33 | 135H+25 | However, in a civil forfeiture proceeding there is no equivalent to a plea hearing. In the absence of definitive guidance from the Ninth Circuit, I stand by the rule that unless a civil forfeiture case goes to trial jeopardy attaches when a final judgment is entered. Stanwood, 872 F.Supp. at 798. In the present case, final judgment was entered in all three civil forfeiture actions on November 9, 1990, several months after jeopardy attached in the criminal case. | Jeopardy attaches in civil forfeiture proceeding when final judgment is entered, unless case goes to trial. U.S.C.A. Const.Amend. 5. | "Where a civil forfeiture case does not go to trial, does jeopardy attach at the time of final judgment?" | Double Jeopardy - Memo 122 - C - BP_65901.docx | ROSS-003282137-ROSS-003282138 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 11851 | Wood v. Phillips, 823 So.2d 648 | 289+421 | "There is no settled test for determining the existence of a partnership. That determination is made by reviewing all the attendant circumstances, including the right to manage and control the business." Vance v. Huff, 568 So.2d 745, 748 (Ala.1990). The parties here presented conflicting evidence regarding the intent to form a partnership. Phillips maintains that when he first spoke with Wood, the two men formulated a plan to apply to the FCC for the available frequency and to run the radio station as partners. Conversely, Wood contends that Phillips knew he could not apply for the frequency because he owned another radio station in Bay Minette, that Phillips encouraged Wood to apply for the license, and that Phillips never requested an ownership interest in the new station. | There is no settled test for determining the existence of a partnership; that determination is made by reviewing all the attendant circumstances, including the right to manage and control the business. | Can the existence of a partnership be determined by all the attendant circumstances? | 022686.docx | LEGALEASE-00162210-LEGALEASE-00162211 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11852 | Khan v. Valliani, 439 S.W.3d 528 | 307A+583 | A trial court has the inherent authority to manage its own docket and dismiss a case for want of prosecution. See Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999); Kadi v. New Tech Eng'g, LP, No. 14"12"00872"CV, 2013 WL 2386654, (Tex.App.-Houston [14th Dist.] May 30, 2013, pet. denied) (mem. op.). Here, however, there is no indication that Khan had abandoned her claims. | A trial court has the inherent authority to manage its own docket and dismiss a case for want of prosecution. | Does a court have the inherent authority to manage its own docket and dismiss a case for want of prosecution? | Pretrial Procedure - Memo 11833 - C - DA_66117.docx | ROSS-003293699-ROSS-003293700 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 11853 | Am. Tel. & Tel. Co. v. Days Inn of Winona, 720 So. 2d 178 | 307A+583 | "[T]he power to dismiss an action for want of prosecution is part of a trial court's inherent authority." Wallace v. Jones, 572 So.2d 371, 375 (Miss.1990). This power is "a means necessary to the orderly expedition of justice and the court's control of its own docket." Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986) (citing Link v. Wabash R.R., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). Where a motion is made, its disposition is governed by Rule 41(b), which is the same under the federal system and our own rules of civil procedure. A substantial body of law has grown up around the federal rule. It does not, of course, bind this Court as precedent, but it provides useful guidelines for our consideration. Watson, 493 So.2d at 1278. | Power to dismiss an action for want of prosecution is part of a trial court's inherent authority; this power is a means necessary to the orderly expedition of justice and the court's control of its own docket. | Is the power to dismiss an action for want of prosecution a part of a court's inherent authority? | Pretrial Procedure - Memo 11840 - C - DA_66445.docx | ROSS-003281220-ROSS-003281221 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 11854 | Phillips Petroleum Co. v. Moore, 179 Kan. 482 | 371+2431 | Did the district court have jurisdiction of cause No. 3700 insofar as Phillips was concerned? Our approach to this question is governed by the recognized rule that the power of taxation is legislative in character, Judd v. Driver, 1 Kan. 455; State ex rel. Arn v. State Commission of Revenue and Taxation, 163 Kan. 240, 249, 181 P.2d 532; State ex rel. Mitchell v. Townsend, 161 Kan. 672, 680, 171 P.2d 651, and that all matters relating to the levy, assessment and collection of taxes are statutory and do not exist apart from the statute. Constitution, Art. 11, " 1; Ness County v. Ness City Mill, Light & Ice Co., 110 Kan. 501, 204 P. 536; Sarver v. Sarver Oil Co., 141 Kan. 246, 40 P.2d 394; State ex rel. Becker v. Smith, 144 Kan. 570, 61 P.2d 897; Equitable Life Assurance Society of United States v. Hobbs, 155 Kan. 534, 127 P.2d 477; Board of County Comm'rs of Sherman County v. Alden, 158 Kan. 487, 492, 148 P.2d 509, 152 A.L.R. 881; Ray v. Board of County Comm'rs, 173 Kan. 859, 252 P.2d 899, and Board of County Comm'rs of Montgomery County v. Allen, 175 Kan. 460, 463, 264 P.2d 916. | The power of taxation is legislative in character, and all matters relating to the levy, assessment and collection of taxes are statutory and do not exist apart from statute. Const. art. 11, S 1. | Does the power of taxation still exist if it is apart from the statute? | 046354.docx | LEGALEASE-00161986-LEGALEASE-00161987 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11855 | Miller Bros. Co. v. State of Md., 347 U.S. 340 | 371+2008 | But visible territorial boundaries do not always establish the limits of a state's taxing power or jurisdiction. In the last twenty years, revenue needs have come to exceed the demands that legislatures feel it expedient to make upon accumulated wealth or property with fixed location within the state. The states therefore have turned to taxing activities connected with the movement of commerce, such as exchange and consumption. If there is some jurisdictional fact or event to serve as a conductor, the reach of the state's taxing power may be carried to objects of taxation beyond its borders. When it has the taxpayer within its power or jurisdiction, it may sometimes, through him, reach his extraterritorial income or transactions. On the other hand, if it has jurisdiction of his taxable property or transactions, it may sometimes, through these, reach the nonresident. Whether this is one of these cases we must inquire. | Visible territorial boundaries do not always establish the limits of a state's taxing power or jurisdiction, and if there is some jurisdictional fact or event to serve as a conductor, the reach of the state's taxing power may be carried to objects of taxation beyond its borders. | Do visible territorial boundaries establish the limits of a state's taxing power or jurisdiction? | 046397.docx | LEGALEASE-00162124-LEGALEASE-00162125 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 11856 | Hutton v. State, 313 S.W.3d 902 | 3.77E+29 | We see nothing in the plain meaning or common usage of the term "occasion" to require the elapse of a particular or minimum interval of time for events to occur on "more than one occasion."A fact finder could determine that all of appellant's conduct directed toward the runner on May 8 occurred on one occasion, and that his conduct on that day thus does not meet the terms of the stalking statute. But viewing the evidence in the light most favorable to the court's conclusion, we think a finder of fact rationally also could see the sequence of events as including more than one occasion of following. Specifically, we think the trial court rationally could have viewed the runner's testimony appellant made a u-turn and followed her as she ran in fear down the middle of the street spoke of one instance and her testimony that she next saw appellant's car in the church parking lot after which he drove behind her as she sprinted to the convenience store, as another instance. That appellant was out of the woman's sight for only a short time as she ran, likely under a minute, is not determinative. The evidence is legally sufficient to support appellant's conviction. | Stalking statute's requirement that events occur "on more than one occasion" does not require the elapse of a particular or minimum interval of time. V.T.C.A., Penal Code S 42.072. | "For purposes of the stalking statutes requirement that events occur on more than one occasion, is a minimum amount of time required?" | 046959.docx | LEGALEASE-00162172-LEGALEASE-00162173 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 11857 | Bologna Bros. v. Morrissey, 154 So. 2d 455 | 83E+433(1) | See also Restatement of Conflict of Laws, Sec. 322. The rule is the same for promissory notes. Their legal effect is governed by the law of the country where they were executed and delivered. Kuenzi & Co., v. Elvers, Boje & Co., 14 La.Ann. 391, 74 Am.Dec. 434 (1859); Walsh v. Walsh, La.App., 11 Orl.App. 205 (1914); aff. 137 La. 157, 68 So. 392 (1915); Stevens v. Gaude, 9 La.App. 664, 120 So. 79, 80 (1st Cir. 1928); Restatement of Conflict of Laws, Sec. 336. Accommodation papers are no exception to this rule. It is settled in Louisiana that every endorsement, accommodation or otherwise, is essentially an original contract, equivalent to a new note or bill in favor of the holder and that accommodation paper is governed by the same rules as other paper. Crane v. Trudeau, 19 La.Ann. 307 (1867); James Trabue & Co. v. R. H. Short & Co., 18 La.Ann. 257, 258 (1866); G. F. Connely v. A. Bourg, et al., 16 La.Ann. 108, 109, 79 Am.Dec. 568 (1861). The obligation of an endorser or accommodation party is governed by the lex loci contractus. James Trabue & Co. v. R. H. Short & Co., supra; Duncan v. Sparrow, 3 Rob. 167, 168 (1942). | Every endorsement, accommodation or otherwise, is essentially original contract, equivalent to new note or bill in favor of holder, and accommodation paper is governed by same rules as other paper. | Is an endorsement considered an original contract? | Bills and Notes - Memo 1370 - RK_66271.docx | ROSS-003306107-ROSS-003306108 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11858 | Holck v. Laursen, 2002 WL 31309257 | 307A+699 | Rule 1.944(6) provides that an application for reinstatement of an action shall be filed within six months from the date of dismissal. Failure to file a timely motion for reinstatement deprives the court of jurisdiction to reinstate the case. Greif v. K Mart Corp., 404 N.W.2d 151, 155 (Iowa 1987). The Holcks did not file a motion to reinstate within six months of the April 3, 2000 dismissal. The trial court therefore correctly concluded it was without jurisdiction to reinstate the case. | Failure to file a timely motion for reinstatement deprives the court of jurisdiction to reinstate a case that has been dismissed. Rules Civ.Proc., Rule 1.944(6). | Does failure to file a timely motion for reinstatement deprive the court of jurisdiction to reinstate a case that has been dismissed? | 040974.docx | LEGALEASE-00162721-LEGALEASE-00162722 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 11859 | Gutierrez v. Williams, 60 A.D.2d 827 | 307A+699 | In dismissing this case Justice Nadel noted that the case had been on the calendar forty times over a ten year period. In order to restore the action to the calendar, this court held in Weigert v. Regal Advertising Associates, 42 A.D.2d 899, 347 N.Y.S.2d 710 that "(P)laintiffs have the burden of establishing the merit of the cause of action as well as offering an acceptable excuse for the delay involved (Mingis v. Daitch Crystal Dairies, 32 A.D.2d 746, 300 N.Y.S.2d 645; Sortino v. Fisher, 20 A.D.2d 25, 245 N.Y.S.2d 186)." An affidavit of merit must allege evidentiary facts which establish a viable cause of action and here we have no such affidavit by which the court may evaluate the nature of the condition complained of, the negligence attributable to defendants, how the accident happened and the relationship of the parties. As was pointed out in Rist v. 234 East 33rd Corp., 4 A.D.2d 867, 167 N.Y.S.2d 46, "one cannot glean the nature of the accident or the manner in which it occurred, let alone determine whether there is merit to the cause of action." | Affidavit of merit must allege evidentiary facts which establish a viable cause of action. | Should an affidavit of merit allege evidentiary facts which establish a viable cause of action? | 040992.docx | LEGALEASE-00162733-LEGALEASE-00162734 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11860 | Cookson v. Knauff, Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co., Intervenor, 157 Pa. Super. 401 | 413+186 | The vital test in determining whether a workman is a servant of the person who engages him for the work is whether he is subject to the latter's control or right of control not only with regard to the work to be done also with regard to the manner of performance. Venezia v. Philadelphia Electric Co., 317 Pa. 557, 559, 177 A. 25. In McColligan v. Pennsylvania R. Co., 214 Pa. 229, 232, 63 A. 792, 6 L.R.A., N.S., 544, 112 Am.St.Rep. 739, it was said that the master and servant relationship exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done and the way and manner in which it shall be done. Under sections 103 and 104 of the Workmen's Compensation Act of 1915, as re-enacted and amended, 77 P.S. "" 21, 22, the terms "employer" and "employee" are synonymous with "master" and "servant." Harris et al. v. Seiavitch, 336 Pa. 294, 9 A.2d 375; Sechrist v. Kurtz Brothers et al., 147 Pa.Super. 214, 215, 24 A.2d 128. | Under Workmen's Compensation Act, the terms "employer" and "employee" are synonymous with "master" and "servant". 77 P.S. SS 21, 22. | "Under the Workmens Compensation Act, are the terms employer and employee synonymous with master and servant?" | Workers' Compensation Memo 729 - C - ANC_67096.docx | ROSS-003311064-ROSS-003311065 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11861 | Marshall v. Toys-R-Us Nytex, 825 S.W.2d 193 | 413+186 | In her fourth argument under her sole point of error, appellant alleges that she received neither actual nor constructive notice that Toys"R"Us was a subscriber under the worker's compensation act, and, therefore, the motion for summary judgment should not have been granted. Under the Act, an employer must provide employees with notice that the employer has provided for payment of compensation for their injuries. Ferguson v. Hospital Corporation International, Ltd., 769 F.2d 268, 270 (5th Cir.1985). Additionally, an employer's compensation insurer is required to notify the Industrial Accident Board that the insurer has provided compensation coverage for the employer. Id. The filing of notice with the Board constitutes constructive notice to the employees for purposes of the Act. Id. Labor Systems obtained and maintained insurance pursuant to its agreement with Toys"R"Us. Further, the check stubs showing that appellant collected worker's compensation benefits from the Insurance Company of North America, who intervened in this lawsuit, indicate that Labor Systems obviously gave notice to the state pursuant to the Act. Such notice inures to the benefit of Toys"R"Us, who became a subscriber through the policy by paying the premiums. Thus, when Labor Systems gave notice to the state, appellant was put on constructive notice that Toys"R"Us was a subscriber under the Act. Appellant's complaint that she failed to receive notice is without merit. Accordingly, her sole point of error is overruled. | Under Worker's Compensation Act, employer must provide employees with notice that employer has provided for payment of compensation for their injuries, and employer's compensation insurer is required to notify Industrial Accident Board that insurer has provided compensation coverage for employer. Vernon's Ann.Texas Civ.St. art. 8306, S 3. | "Under the Workers Compensation Act, must an employer provide employees with a notice that the employer has provided the payment of compensation for their injuries?" | 048749.docx | LEGALEASE-00162678-LEGALEASE-00162679 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 11862 | Reeves v. Shinseki, 682 F.3d 988 | 34+132(2) | As we explained in Rodriguez v. West, 189 F.3d 1351, 1353 (Fed.Cir.1999), any communication can qualify as an informal claim if it: (1) is in writing; (2) indicates an intent to apply for veterans' benefits; and (3) identifies the particular benefits sought. See 38 C.F.R. " 3.155. Here, Mrs. Reeves' motion for substitution, which was filed on April 14, 2011, stated that: (1) her husband, a claimant seeking VA disability benefits, had an appeal pending before this court when he died on February 18, 2011; and (2) she, as Reeves' surviving spouse, was eligible to receive the accrued benefits due as of the date of his death pursuant to 38 U.S.C. " 5121(a). Mrs. Reeves attached a certified copy of her husband's death certificate to her motion seeking substitution. Because Mrs. Reeves' motion for substitution clearly evinced an intent to obtain the benefits due and payable to her husband as of the date of his death, it qualifies as an informal claim for accrued benefits. | Any communication can qualify as an informal claim for veterans' benefits if it: (1) is in writing; (2) indicates an intent to apply for veterans' benefits; and (3) identifies the particular benefits sought. 38 C.F.R. S 3.155. | What communications will qualify as an informal claim for veterans' benefits? | 008834.docx | LEGALEASE-00163893-LEGALEASE-00163894 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 11863 | United States v. Perry, 55 F.2d 819 | 34+73(3) | The courts have quite generally adopted substantially the definition of the Treasury Department as the term "total disability," i.e., "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability." United States v. Worley (C.C.A.) 42 F.(2d) 197; United States v. Phillips (C.C.A.) 44 F.(2d) 689; Blair v. United States (C.C.A.) 47 F.(2d) 109; United States v. LeDuc (C.C.A.) 48 F.(2d) 789; McNally et al. v. United States (C.C.A.) 52 F. (2d) 440. The courts have, however, given reasonable and rational interpretation to the terms used in the Treasury Department definition. They have practically unanimously held that "total disability," as the term is used with reference to these war risk insurance cases, does not mean incapacity to work at all. The question is, not whether the party works, but whether he is able to carry on a gainful occupation. Of course, the work he does is an important factor to consider. United States v. Sligh (C.C.A.) 31 F.(2d) 735. In United States v. Acker (C.C.A.) 35 F.(2d) 646, 648, the court said: "Appellee's disability was not kept from being total by his intermittent business activities, if, without the exercise of ordinary care or prudence, they were engaged in at the risk of substantially aggravating the ailment with which he was afflicted." In United States v. Cox (C.C.A.) 24 F.(2d) 944, 946, the court said: "Ability to continuously follow a substantial, gainful occupation implies ability to compete with men of sound mind and average attainments under the usual conditions of life." United States v. Eliasson (C.C.A.) 20 F.(2d) 821; Kelley v. United States (C.C.A.) 49 F.(2d) 897. | "Total disability," as applied to war risk insurance, does not mean incapacity to do any work, and question is not whether insured works, but whether he is able to carry on gainful occupation. | Does the term total and permanent disability mean that there is proof of absolute incapacity to do any work at all? | 008842.docx | LEGALEASE-00163908-LEGALEASE-00163909 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11864 | United States v. Doyer, 907 F. Supp. 1519 | 135H+25 | Jeopardy attaches in a civil forfeiture proceeding when evidence is first presented to the trier of fact. United States v. Torres, 28 F.3d 1463, 1465 (7th Cir.1994) (citing Crist v. Bretz, 437 U.S. 28, 32"36, 98 S.Ct. 2156, 2158"59, 57 L.Ed.2d 24 (1978)), cert. denied, """ U.S. """", 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). Jeopardy does not attach when the defendant does not make a claim and thus, does not become a party to the forfeiture. Id. Further, there is no jeopardy when there is no trial and the property sought to be forfeited is in fact forfeited without opposition. Id. | For double jeopardy purposes, jeopardy attaches in civil forfeiture proceeding when evidence is first presented to the trier of fact. U.S.C.A. Const.Amend. 5. | Are forfeiture proceedings under the Uniform Controlled Substances Act criminal in nature and jeopardy attaches when evidence is first presented to the trier of fact? | 015087.docx | LEGALEASE-00163673-LEGALEASE-00163674 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 11865 | United States v. Mask, 101 F.Supp.2d 673 | 135H+25 | Double jeopardy has been frequently raised as an issue in the context of civil forfeitures. When a civil forfeiture proceeding is in personam in nature then it will be held to violate the Double Jeopardy Clause.United States v. Bajakajian, 524 U.S. 321, 331-33, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)(recognizing that the hallmark of an in personam forfeiture proceeding is one where the government proceeds directly against the person). However, when a civil forfeiture proceeding is in the nature of in rem, then it will generally not be held violative of the Double Jeopardy Clause. | When a civil forfeiture proceeding is in personam in nature, imposition can violate the Double Jeopardy Clause. U.S.C.A. Const.Amend. 5. | "When a civil forfeiture proceeding is in personam in nature, can an imposition violate the Double Jeopardy Clause?" | 015120.docx | LEGALEASE-00163794-LEGALEASE-00163795 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 11866 | Ortiz v. State, 849 S.W.2d 921 | 135H+97 | Generally, prior jeopardy does not constitute a bar to retrial when the defendant consents to a new trial. Oregon v. Kennedy, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982). In the present case, appellant requested to withdraw his plea. Thus, appellant appears to have consented to a new trial, thereby eliminating any jeopardy bar to the subsequent proceeding. | Exception to rule that, generally, prior jeopardy does not constitute bar to retrial when defendant consents to new trial, exists when governmental conduct, either by judge or prosecutor, is designed to goad defendant into moving for retrial; then, double jeopardy clause will bar reprosecution despite defendant's consent to new trial. U.S.C.A. Const.Amend. 5. | Does prior jeopardy not constitute a bar to retrial when a defendant consents to a new trial? | Double Jeopardy - Memo 314 - C - TJ_66608.docx | ROSS-003325591-ROSS-003325592 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 11867 | Torres v. State, 614 S.W.2d 436 | 135H+96 | In addition, the State argues that the appellant impliedly consented to be retried because he failed to object to the court's declaration of a mistrial. Consent need not be expressed, but may be implied from the totality of circumstances attendant to a declaration of mistrial. United States v. Gori, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); United States v. Smith, 621 F.2d 350 (9th Cir. 1980); United States v. Rich, 589 F.2d 1025 (10th Cir. 1978). But before a failure to object constitutes an implied consent to a mistrial, a defendant must be given an adequate opportunity to object to the court's motion. See United States v. Gori, supra; United States v. Smith, supra; United States v. Goldstein, 479 F.2d 1061 (2d Cir. 1973); United States v. Goldman, 439 F.Supp. 358 (D.C.N.Y.1977). | Consent to be retried need not be express but may be implied from totality of circumstances attendant to declaration of mistrial. U.S.C.A.Const. Amend. 5. | "Should a defendant's consent to mistrial not be expressed, but may be implied from the totality of circumstances attendant to the declaration of a mistrial?" | 015383.docx | LEGALEASE-00163127-LEGALEASE-00163128 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 11868 | Brenimer v. Cockburn, 254 F.2d 821 | 260+79.1(0.5) | The trial court seemed to be of the view that the working interest agreement held by Cockburn, et al., was of such a nature that they could not assign or convey anything except an interest therein. But clearly, an overriding royalty may be carved out of a working interest in an oil and gas lease, and satisfied out of the oil attributed to that working interest. Oldland v. Gray, 10 Cir., 179 F.2d 408, certiorari denied 339 U.S. 948, 70 S.Ct. 803, 94 L.Ed. 1362; Phillips Petroleum Co. v. Oldland, 10 Cir., 187 F.2d 780, certiorari denied 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617; Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971; Wright v. Brush, 10 Cir., 115 F.2d 265; Cities Service Oil Co. v. Geolograph Co., 208 Okl. 179, 254 P.2d 775; Halbert v. Hendrix, 121 Ind.App. 43, 95 N.E.2d 221; Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d 53. See also Summers, Oil and Gas, Vol. 3, "" 554, "" 555. Cockburn, et al., throughh their operating agreement, owned a 50% working interest in the production from the leasehold. Out of this interest, they could assign and convey an overriding royalty. Summers, Oil and Gas, Vol. 3, " 556; Wright v. Brush, supra. | An overriding royalty may be carved out of a working interest in an oil and gas lease and may be satisfied out of oil attributed to that working interest. | Can an overriding royalty be carved out of a working interest in an oil and gas lease? | Mines and Minerals - Memo 338 - C - ML_66663.docx | ROSS-003283491-ROSS-003283492 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11869 | Edmond v. City of Colorado Springs, 226 P.3d 1248 | 302+46 | A complaint must name a plaintiff and a defendant in order to present a claim that may be litigated. Barker v. District Court, 199 Colo. 416, 419, 609 P.2d 628, 630 (1980) (district attorney's failure to include known names of defendants in complaint required dismissal of the action). In Barker, the supreme court noted that C.R.C.P. 10(a) requires the title of the action in a complaint to include the names of the parties and also determined that if the names of the parties are unknown, those parties must be designated as unknown parties. Id. | A complaint must name a plaintiff and a defendant in order to present a claim that may be litigated. Rules Civ.Proc., Rule 10(a) . | "Should a complaint name a plaintiff and a defendant, in order to present a claim that may be litigated?" | 023953.docx | LEGALEASE-00163826-LEGALEASE-00163827 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 11870 | In re Parker, 363 B.R. 769 | 349A+10 | The determination of whether an agreement is a lease or a sale is made at the time the parties sign the agreement. See 4 James S. White & Robert S. Summers, Uniform Commercial Code " 30"3 (4th ed.2002). In these cases, Debtors bear the burden of proving that the agreements are not true leases. See In re Zaleha, 159 B.R. 581, 586 (Bankr.D.Idaho 1993). The agreements at issue may be considered security agreements, as a matter of law, if they do not provide Debtors with the right to terminate and one of four enumerated factors are present. Debtors urge the Court to determine that the agreements meet this bright line test set forth in " 1"201(37)(A) on grounds that Debtors lack a meaningful right of termination. The Court disagrees and initially finds that the agreements are not security interests under the bright line test. | Determination of whether agreement is lease or sale on credit is made at time parties sign agreement. | Is the determination of whether an agreement is a lease or sale on credit made at a time parties sign agreement? | 042805.docx | LEGALEASE-00164016-LEGALEASE-00164017 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 11871 | People v. Krawiec, 262 Ill. App. 3d 152 | 3.77E+06 | Even if the term "in furtherance" might be considered ambiguous, the legislative history of the stalking statute demonstrates that to be guilty of stalking, one need not produce, or even intend to produce, the physical harm that he has earlier threatened. The statute was intended to prevent intimidation and the infliction of reasonably grounded apprehension and fear. The aim of the legislature was not only to prevent violent attacks by outlawing those actions that served as a prelude to such an attack, but also to prevent the terror produced by harassing actions in and of themselves. See O'Reilly, Illinois' Stalking Statute: Taking Unsteady Aim at Preventing Attacks, 26 J. Marshall L.Rev. 821, 838"39 (1993) (noting that proponents of the statute emphasized instances of individuals who repeatedly followed or threatened people, thereby causing apprehension or terror without necessarily intending to inflict bodily harm). | Aim of legislature in enacting stalking statute was not only to prevent violent attacks by outlawing those actions which serve as prelude to such attacks, but to prevent terror produced by harassing actions in and of themselves. S.H.A. 720 ILCS 5/12-7.3(a)(2). | What was the aim or intent of the legislature in enacting stalking statute? | 047023.docx | LEGALEASE-00163487-LEGALEASE-00163488 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11872 | Red Cross Line v. Atl. Fruit Co., 264 U.S. 109 | 95+127(2) | 45 The federal courts"like those of the states and of England"have, both in equity and at law, denied, in large measure, the aid of their processes to those seeking to en force executory agreements to arbitrate disputes. They have declined to compel specific performance, Tobey v. County of Bristol, 3 Story, 800, 819"826, Fed. Cas. No. 14,065; or to stay proceedings on the original cause of action. Story, Equity Jurisprudence, " 670. They have not given effect to the executory agreement as a plea in bar, except in those cases where the agreement, leaving the general question of liability to judicial decision, confines the arbitration to determining the amount payable or to furnishing essential evidence of specific facts, and makes it a condition precedent to the cause of action. Hamilton v. Liverpool, London & Globe Insurance Co., 136 U. S. 242, 255, 10 Sup. Ct. 945, 34 L. Ed. 419; Martinsburg & Potomac R. R. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255. But an agreement for arbitration is valid, even if it provides for the determination of liability. If executory, a breach will support an action for damages. | An agreement for arbitration is valid, even if it provides for the determination of liability, and, if executory, a breach will support an action for damages, or, if executed and the award has been made, effect will be given to the award in an appropriate proceeding at law or in equity. | Does a breach of an arbitration agreement support an action for damages if the agreement is executory? | 008047.docx | LEGALEASE-00165014-LEGALEASE-00165015 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 11873 | United States v. Watson, 189 F.3d 496 | 350H+98 | As the Supreme Court explained in Watts, "sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." Id. at 154, 117 S.Ct. 633. For this reason, a sentencing court may consider conduct of which a defendant has been acquitted as long as that conduct has been proven by a preponderance of the evidence. Id. at 157, 117 S.Ct. 633. The government met its burden when it established that Watson had led the police on a high speed chase through a residential neighborhood. See e.g. United States v. Giacometti, 28 F.3d 698, 701 (7th Cir.1994) ("Giacometti high speed chase and the ensuing danger to bystanders is clearly the sort of reckless behavior covered by 3C1.2."). Accordingly, it was not clearly erroneous for the district court to enhance Watson sentence for reckless endangerment. | Sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction; for this reason, a sentencing court may consider conduct of which a defendant has been acquitted as long as that conduct has been proven by a preponderance of the evidence. | Do sentencing enhancements increase defendant sentence because of manner in which he committed crime of conviction? | Double Jeopardy - Memo 1238 - C - NE_67375.docx | ROSS-003294643 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 11874 | Montoya v. State, 386 P.3d 344 | 135H+1 | The United States and Wyoming constitutions guarantee that a person will not be placed twice in jeopardy of prosecution, conviction, or punishment for the same criminal offense. U.S. Const. amend. V; Wyo. Const. art. 1, " 11. Although language of the two provisions differs, "they have the same meaning and are co-extensive in application." Derrera v. State, 2014 WY 77, 23, 327 P.3d 107, 113 (Wyo. 2014) (quoting Landeroz v. State, 2011 WY 168, 17, 267 P.3d 1075, 1080 (Wyo. 2011)). The provisions of both constitutions provide an accused three protections: "1) protection against a second prosecution for the same offense following an acquittal; 2) protection against a second prosecution for the same offense after a conviction; and 3) protection against multiple punishments for the same offense." Id. (quoting Landeroz, 2011 WY 168, 17, 267 P.3d at 1080). "For double jeopardy to bar re-trial in a case where the district court grants a defense motion for a mistrial based upon prosecutorial misconduct, the defense must show prosecutorial intent to goad the defense into moving for a mistrial." Newman, 2004 WY 41, 21, 88 P.3d at 452-53 (citing Oregon v. Kennedy, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982)). | The double jeopardy provisions of federal and Wyoming constitutions provide an accused three protections: (1) protection against a second prosecution for the same offense following an acquittal; (2) protection against a second prosecution for the same offense after a conviction; and (3) protection against multiple punishments for the same offense. U.S. Const. Amend. 5; Wyo. Const. art. 1, S 11. | What protection would an accused receive through double jeopardy provision? | 016372.docx | LEGALEASE-00165141-LEGALEASE-00165142 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 11875 | State v. Shaon, 145 S.W.3d 499 | 135H+1 | In a court-tried case, jeopardy attaches when the court begins to hear the evidence. State v. Jarvis, 809 S.W.2d 460, 461 (Mo.App.1991). The constitutional protection provided by the double jeopardy clause prohibits "(1) second prosecution for the same offense after acquittal; (2) second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." Id. Here, Mr. Shaon equates the trial court's grant of the motion to suppress with an acquittal. He, then, concludes that since jeopardy has attached, the State is prohibited from seeking an appeal under section 547.200.2. Mr. Shaon, however, cites no authority for the proposition that the trial court's grant of the suppression motion is equivalent to an acquittal. More importantly, Mr. Shaon's argument is based on a mischaracterization of the trial court's ruling. In this case, the question of Mr. Shaon's guilt was never determined. | Constitutional protection provided by double jeopardy clause prohibits: (1) second prosecution for same offense after acquittal; (2) second prosecution for same offense after conviction; and (3) multiple punishments for same offense. U.S.C.A. Const.Amend. 5. | What protection does a double jeopardy clause provide? | Double Jeopardy - Memo 849 - C - PC_67638.docx | ROSS-003293281-ROSS-003293282 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 11876 | State Farm Ins. Co. v. Lofstad, 278 A.D.2d 224 | 156+53 | In response, Lofstad failed to raise an issue of fact that the notice of termination was insufficient. While the notice of termination to the DMV contained the wrong vehicle identification number, Lofstad was responsible for the error since he supplied the number to Continental on an application for insurance that he had signed, attesting to its accuracy (see, DiGrazia v. United States Life Ins. Co. in City of New York, 170 A.D.2d 246, 247, 565 N.Y.S.2d 525; Bloom v. Mutual of Omaha Ins. Co., 161 A.D.2d 1047, 1049, 557 N.Y.S.2d 614). An innocent misleading of another party may estop one from claiming the benefits of his or her deception (see, Bucon, Inc. v. Pennsylvania Mfg. Assn. Ins. Co., 151 A.D.2d 207, 211, 547 N.Y.S.2d 925). | Innocent misleading of another party may estop one from claiming the benefits of his or her deception. | Can an innocent misleading of another party estop one from claiming the benefits of his deception? | 018256.docx | LEGALEASE-00164405-LEGALEASE-00164406 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11877 | One Beacon Ins. Co. v. Old Williamsburg Candle Corp., 386 F. Supp. 2d 394 | 156+53 | One Beacon seeks to avoid the consequences of these facts by contending that it did not deliberately mislead OWC DE. That is immaterial. "An innocent misleading of another party may estop one from claiming the benefits of his or her deception." | Under New York law, an innocent misleading of another party, as well as deliberate misleading, may estop one from claiming the benefits of his or her deception. | Can an innocent misleading of another party estop one from claiming the benefits of his deception? | Estoppel - Memo 306 - C - CSS.docx | LEGALEASE-00054394-LEGALEASE-00054395 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11878 | Gaylord v. C.I.R., 153 F.2d 408 | 156+95 | In Van Antwerp v. United States, 9 Cir., 92 F.2d 871, this court declined to hold the taxpayer estopped to claim a refund even though the Government was barred by the statute of limitations, when the claim was filed, from assessing and collecting taxes due from the wife. See also Helvering v. Brooklyn City R. Co., 2 Cir., 72 F.2d 274. To constitute estoppel there must be a misrepresentation of a fact or a wrongful misleading silence with respect to a fact. Van Antwerp v. United States, supra; U.S. v. S. F. Scott & Sons, 1 Cir., 69 F.2d 728, 732. A person knowing the facts or in a position to know them can not claim the benefit of estoppel. Hull v. Com'r, 4 Cir., 87 F.2d 260. | A person knowing the facts, or in a position to know them, cannot claim benefit of estoppel, and to constitute estoppel there must be a misrepresentation of a fact or a wrongful misleading silence with respect to a fact. | Can a party knowing the facts claim the benefit of estoppel? | 018285.docx | LEGALEASE-00164443-LEGALEASE-00164444 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 11879 | State v. Martin, 505 S.W.3d 492 | 135H+1 | Three fundamental principles underlie double jeopardy: "(1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense." State v. Denton, 938 S.W.2d 373, 378"79 (Tenn. 1996) (citing Whalen v. United States, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), abrogated on other grounds by State v. Watkins, 362 S.W.3d 530 (Tenn. 2012)). The defendant's argument in this case involves the third category, multiple punishments for the same offense. | Three fundamental principles underlie the prohibition against double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense. U.S. Const. Amend. 5; Tenn. Const. art. 1, S 10. | What are the fundamental principles that underlie double jeopardy? | Pretrial Procedure - Memo 12192 - C - AC_67286.docx | ROSS-003281251 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 11880 | Namelo v. Broyles, 33 Kan. App. 2d 349 | 307A+583 | Moreover, a district court's authority to dismiss a case for lack of prosecution is not limited by a defendant's motion to dismiss. In Link, the United States Supreme Court rejected an argument that under Fed. R. Civ. Proc. 41, a court cannot, on its own initiative, dismiss a case for want of prosecution. In Link, as here, the plaintiff contended that Fed. R. Civ. Proc. 41 provided for an involuntary dismissal for failure to prosecute only upon a motion by the opposing party. | A district court's authority to dismiss a case for lack of prosecution is not limited by a defendant's motion to dismiss. Rules Civ.Proc., K.S.A. 60-241(b)(1). | Is a court's authority to dismiss a case for lack of prosecution limited by a defendant's motion to dismiss? | 041066.docx | LEGALEASE-00164559-LEGALEASE-00164560 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 11881 | Allen v. Rushing, 129 S.W.3d 226 | 307A+583 | Trial courts have inherent power to dismiss cases for want of prosecution, and courts have express authority to do so under Rule 165a of the Texas Rules of Civil Procedure. In re Marriage of Buster, 115 S.W.3d 141, 143"44 (Tex.App.-Texarkana 2003, no pet.) (citing Tex.R. Civ. P. 165a; Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999)). We review a trial court's dismissal of an inmate's civil suit for want of prosecution for abuse of discretion. Buster, 115 S.W.3d at 144. | Trial courts have inherent and express authority to dismiss cases for want of prosecution. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does the trial court have the inherent authority to dismiss any case before it for want of prosecution? | Pretrial Procedure - Memo 12209 - C - PC.docx | LEGALEASE-00054615-LEGALEASE-00054616 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 11882 | Sweed v. City of El Paso, 139 S.W.3d 450 | 307A+583 | Trial courts have inherent power to dismiss cases for want of prosecution, and courts have express authority to do so under Tex.R. Civ. P. 165a. Alexander v. Lynda's Boutique, 134 S.W.3d 845, 850 (Tex.2004). Here, as the trial court's order specifically relies upon Rule 165a, we will analyze the case under that authority. That rule states: 1. Failure to Appear. A case may be dismissed for want of prosecution on failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice.. At the dismissal hearing, the court shall dismiss for want of prosecution unless there is good cause for the case to be maintained on the docket.. Tex.R. Civ. P. 165a(1). | Trial courts have inherent power to dismiss cases for want of prosecution, and courts have express authority to do so under rule providing that a case may be dismissed for want of prosecution on failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does a trial court have the inherent power to dismiss cases for want of prosecution? | Pretrial Procedure - Memo 12210 - C - PC_67304.docx | ROSS-003296732 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 11883 | Osagie v. Peakload Temp. Services, 91 S.W.3d 326 | 307A+583 | Although the trial court did not specifically cite the rule, we deem its dismissal of Mr. Osagie's wage claim to be a dismissal for failure to prosecute under rule 41.02 of the Rules of Civil Procedure. This rule is necessary to enable the court to manage its own docket, and to protect defendants against plaintiffs who are unwilling to put their claims to the test, but determined to subject them to the continuing threat of an eventual judgment. Like the decision to grant or deny a continuance, a trial court's decision to dismiss a case for failure to prosecute is within its sound discretion, and will not be reversed unless there is abuse of that discretion. Manufacturers Consolidation Service, Inc. v. Rodell, 42 S.W.3d 846 (Tenn.Ct.App.2000); White v. College Motors, Inc., 212 Tenn. 384, 370 S.W.2d 476 (1963). | Trial court's decision to dismiss case for failure to prosecute is within its sound discretion. Rules Civ.Proc., Rule 41.02. | Is a court's decision to dismiss case for failure to prosecute within its sound discretion? | 041089.docx | LEGALEASE-00164890-LEGALEASE-00164891 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11884 | State v. Martin, 102 N.J.L. 388, 400, 132 A. 93, 98 (1926) | 352H+76 | Causing and intent to cause "bodily harm" are not essential elements of second degree sexual assault under sec. 940.225(2)(a). Rather, as noted, they are permissive elements, which may"but need not"be proved in order to convict under sec. 940.225(2)(a). They are, however, essential elements of battery under sec. 940.19(1), Stats., and thus must be proved before a defendant can be convicted of battery. Since "the lesser crime" (battery) "require[s] proof of ... statutory element[s] that [are] not necessarily ... element[s] of the greater offense" (second degree sexual assault under sec. 940.225(2)[a] ), battery is not a lesser-included offense of second degree sexual assault under sec. 940.225(2)(a). See Carrington, 134 Wis.2d at 274, 397 N.W.2d at 490. We affirm Martin's conviction for second degree sexual assault. | Causing and intent to cause "bodily harm" are not essential elements of second-degree sexual assault, but rather, they are permissive elements which may, but need not be, proved in order to convict. W.S.A. 940.225(2)(a). | Is bodily injury an element of sexual assault? | 043151.docx | LEGALEASE-00164912-LEGALEASE-00164913 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 11885 | Sacramento Mun. Util. Dist. v. County of Sonoma, 1 Cal. Rptr. 2d 99 | 371+2311 | The reasoning behind the exemption is that when a municipal corporation or public agency of the state owns real property used for the purposes of such agency, the ultimate title is in the state itself. "[T]o countenance taxation of such property would be to countenance the folly of the sovereign taxing its own property "and taking money out of one pocket to put in another." " (Smith v. City of Santa Monica (1912) 162 Cal. 221, 222, 121 P. 920; see also San Marcos Water Dist. v. San Marcos Unified School Dist. (1986) 42 Cal.3d 154, 161, 228 Cal.Rptr. 47, 720 P.2d 935; Eisley v. Mohan (1948) 31 Cal.2d 637, 642, 192 P.2d 5.) Public ownership alone confers the exemption; the exemption is not conditioned on use of the property exclusively for governmental purposes. (Anderson"Cottonwood I. Dist. v. Klukkert (1939) 13 Cal.2d 191, 196, 199, 88 P.2d 685; English v. County of Alameda (1977) 70 Cal.App.3d 226, 238, 138 Cal.Rptr. 634.) | Public ownership of property alone confers exemption from property taxation under State Constitution; exemption is not conditioned on use of property exclusively for governmental purposes. West's Ann.Cal. Const. Art. 13, S 3(a, b). | Does public ownership alone confer the exemption for taxation of public property? | 046435.docx | LEGALEASE-00164531-LEGALEASE-00164532 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11886 | Caughman v. Columbia Y.M.C.A., 212 S.C. 337 | 413+186 | "In determining what classes of employers come under a compensation act, recourse must be had to the whole scope and scheme of the act, or to its whole scope and purpose, rather than to technical definitions of particular words or to a literal construction of particular phrases therein." 71 C.J., page 394. "Courts are not always confined to the literal meaning of a statute; the real purpose and intent of the lawmakers will prevail over the literal import of the words. * * * A statute as a whole must receive a practical, reasonable and fair interpretation consonant with the purpose, design and policy of the lawmakers." Greenville Baseball, Inc. v. Bearden, Sheriff, et al., 200 S.C. 363, 20 S.E.2d 813, 815; Ashley v. Ware Shoals Mfg. Co. et al., 210 S.C. 273, 42 S.E.2d 390. Equally well settled is the rule that "the definitions of "employer" contained in the compensation acts, or statements as to who shall be deemed employers, should be broadly or liberally construed, in order to effectuate the purpose of the legislation.' 71 C.J., page 395. We have held that the basic purpose of the Act "is the inclusion of employers and employees, and not their exclusion; and * * * that doubts of jurisdiction must be resolved in favor of inclusion rather than exclusion." Yeomans v. Anheuser-Busch, Inc., 198 S.C. 65, 15 S.E.2d 833, 835, 136 A.L.R. 894; Alewine et al. v. Tobin Quarries, Inc. et al., 206 S.C. 103, 33 S.E.2d 81. | The definitions of "employer" contained in the compensation acts, or statements as to who shall be deemed employers, should be liberally construed in order to effectuate the purpose of the legislation. | How should the definition of employer in the compensation acts be construed? | 048569.docx | LEGALEASE-00164617-LEGALEASE-00164618 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11887 | Ex parte Necessary, 333 S.W.3d 782 | 135H+59 | "There is no due process basis, independent of the double jeopardy clause, for the application of collateral estoppel." Ueno, 971 S.W.2d at 562 (citing Nichols v. Scott, 69 F.3d 1255, 1269"70 (5th Cir.1995)). Therefore, to prevail on a theory of collateral estoppel, Necessary must show that his complaint would protect him from double jeopardy, which requires that he was previously placed in jeopardy. See Ueno, 971 S.W.2d at 562. Jeopardy attaches in a jury trial when the jury is empaneled and sworn, or, in the case of a bench trial, when the defendant pleads to the indictment. Ortiz v. State, 933 S.W.2d 102, 105 (Tex.Crim.App.1996). | Jeopardy attaches in a jury trial when the jury is empaneled and sworn, or, in the case of a bench trial, when the defendant pleads to the indictment. U.S.C.A. Const.Amend. 5. | Will jeopardy attach in case of bench trial when the defendant pleads to the indictment? | Double Jeopardy - Memo 1033 - C - KI_67855.docx | ROSS-003281530-ROSS-003281531 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 11888 | Kopp v. Fischer, 811 F. Supp. 2d 696 | 135H+59 | In a nonjury trial (such as Petitioner's), Double Jeopardy does not attach until the court begins to hear evidence from which a factual determination of guilt or innocence can be made. Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975) ("In a nonjury trial, jeopardy attaches when the court begins to hear evidence.") (citing McCarthy v. Zerbst, 85 F.2d 640, 642 (10th Cir.), cert. denied, 299 U.S. 610, 57 S.Ct. 313, 81 L.Ed. 450 (1936); Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 93 L.Ed. 974 (1949)). "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." United States v. Marchese, 46 F.3d 1020, 1022 (10th Cir.1995) (quotation omitted.). | In a nonjury trial, jeopardy does not attach until the court begins to hear evidence from which a factual determination of guilt or innocence can be made. U.S.C.A. Const.Amend. 5. | Does jeopardy attach when the court begins to hear evidence? | Double Jeopardy - Memo 1038 - C - KI_67860.docx | ROSS-003278481-ROSS-003278482 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11889 | State v. Bainter, 2006 WL 1527131 | 230+148(1) | Even if we were to find the authorities from other jurisdictions cited by the State to be persuasive, we are constrained to follow the precedent of the Missouri Supreme Court. As noted earlier, the Missouri Supreme Court has held in several older cases that the failure to swear the jury at all is reversible error. See State v. Berry, 195 S.W. 998 (1917); Mitchell, 97 S.W. at 561"62. Frazier did not relax this standard, but rather held that while "it is imperative that a jury be sworn to try the cause and that the record show it[,]" a defendant can waive a claim of error by failing to object to irregularities in administering the oath where there has been substantial compliance with the statute by the jury being sworn during the progress of the trial prior to deliberations. Frazier, 98 S.W.2d at 715"16. In Missouri, swearing a jury is not a mere formality. Jeopardy attaches when a jury is empanelled and sworn, and double jeopardy protection may be applicable thereafter. See Peiffer v. State, 88 S.W.3d 439, 445 (Mo. banc 2002); State v. Potts, 181 S.W.3d 228, 238 (Mo.App.2005). We believe that under controlling precedent of the Missouri Supreme Court, where the record fails to show that the jury was sworn to try the case at any point before they began to deliberate, the trial court plainly erred. See Frazier, 98 S.W.2d at 715"16; Berry, 195 S.W. 998; Mitchell, 97 S.W. at 562. This is dispositive of the case, and therefore we do not consider Defendant's other points relied on. | Swearing a jury is not a mere formality; jeopardy attaches when a jury is empaneled and sworn, and double jeopardy protection may be applicable thereafter. U.S.C.A. Const.Amend. 5. | Will double jeopardy be applicable when swearing a jury and jeopardy attaches? | 014710.docx | LEGALEASE-00165730-LEGALEASE-00165731 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 11890 | People v. Douglas, 24 A.D.3d 1019 | 135H+59 | More fundamentally, the stipulation cannot be deemed an adequate plea of guilty inasmuch as it provided no assurance of defendant's guilt or that his admissions were intelligently made (see People v. Lopez, 71 N.Y.2d 662, 666, 529 N.Y.S.2d 465, 525 N.E.2d 5 [1988] ). In addition, because no witness was ever sworn during the "nonjury trial," defendant was not " "prosecuted" for an offense" and, thus, jeopardy did not attach (CPL 40.30 [1]; see People v. Gingello, 84 Misc.2d 63, 65, 374 N.Y.S.2d 276 [1975] ). Accordingly, we must remit this matter to County Court for trial or other appropriate disposition. In view of our decision, we need not address defendant's remaining claim. | Because no witness was ever sworn during the stipulated-fact, "nonjury trial" on charge of burglary in the third degree, defendant was not "prosecuted for an offense" and, thus, jeopardy did not attach. U.S.C.A. Const.Amend. 5; McKinney's CPL S 40.30. | Will jeopardy attach when no witness was ever sworn during the stipulated-fact? | Double Jeopardy - Memo 1055 - C - BP_67877.docx | ROSS-003285073-ROSS-003285074 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 11891 | Stanley v. State, 687 So. 2d 19 | 135H+59 | It appears that defense counsel's claim of prejudice was merely a tactical ploy, since the documents provided to the defense in discovery all established the correct date of the offense. Nevertheless, Stanley's double jeopardy rights were not waived at any point in the first prosecution. The state had ample time before trial to realize the defect in the citation, and could have nolprossed the citation before trial. However the constitutional prohibition against double jeopardy prevents the state from nolprossing and refiling a criminal charge after a jury has been sworn. See State v. Stell, 407 So.2d 642 (Fla. 4th DCA 1981). | Constitutional prohibition against double jeopardy prevents state from nol prossing and refiling criminal charge after jury has been sworn. U.S.C.A. Const.Amend. 5. | Will constitutional prohibition against double jeopardy prevent state from nolprossing and refiling charge? | 014803.docx | LEGALEASE-00166054-LEGALEASE-00166055 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11892 | State v. Duplechin, 922 So. 2d 655 | 135H+30 | Enhancement proceedings such as habitual offender adjudications are generally not subject to double jeopardy considerations. State v. Dorthey, 623 So.2d 1276, 1279 (La.1993). Therefore, pursuant to the holdings in Montgomery and Washington that the recidivist portion of the DWI statute is to be treated as an enhancement device, we fail to find the State is estopped from using the 1998 predicate conviction. The trial court's ruling to the contrary is therefore reversed. | Enhancement proceedings such as habitual offender adjudications are generally not subject to double jeopardy considerations. | Are enhancement proceedings such as habitual offender adjudications not subject to double jeopardy considerations? | Double Jeopardy - Memo 1184 - C - BP_67747.docx | ROSS-003280782-ROSS-003280783 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11893 | Bullard v. Estelle, 665 F.2d 1347 | 135H+100.1 | Thus a trial verdict or an appellate ruling on insufficiency of the evidence implicates the interest of the defendant in maintaining the integrity of the acquittal and calls for the utmost protection of the double jeopardy clause. An acquittal of a defendant creates what is in most instances an absolute prohibition against retrial under the double jeopardy clause. Double Jeopardy Theory at 84. The focus of our question, considering that a finding of insufficiency of the evidence leads to an implicit acquittal, is whether such implicit acquittal is to be found when there is insufficiency of the evidence in an enhancement proceeding. | Acquittal of defendant creates what is, in most instances, absolute prohibition against retrial under double jeopardy clause. U.S.C.A. Const.Amend. 5. | Does an acquittal of a defendant create absolute prohibition against retrial under a double jeopardy clause? | 016312.docx | LEGALEASE-00165637-LEGALEASE-00165638 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 11894 | State v. Fowler, 197 N.C. App. 1 | 135H+1 | "The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." State v. Gardner, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). "It is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence, that no person can be twice put in jeopardy of life or limb for the same offense." State v. Crocker, 239 N.C. 446, 449, 80 S.E.2d 243, 245 (1954). This principle of double jeopardy, or former jeopardy, "benefits the individual defendants by providing repose; by eliminating unwarranted embarrassment, expense, and anxiety; and by limiting the potential for government harassment." Brunson, 327 N.C. at 249, 393 S.E.2d at 864. "It benefits the government by guaranteeing finality to decisions of a court and of the appellate system, thus promoting public confidence in and stability of the legal system. The objective is to allow the prosecution one complete opportunity to convict a defendant in a fair trial." Id. | The principle of double jeopardy, or former jeopardy, benefits the government by guaranteeing finality to decisions of a court and of the appellate system, thus promoting public confidence in and stability of the legal system. U.S.C.A. Const.Amend. 5; West's N.C.G.S.A. Const. Art. 1, S 19. | How does the principle of double jeopardy benefit the government? | 016513.docx | LEGALEASE-00165331-LEGALEASE-00165332 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11895 | State v. Howell, 158 N.H. 717 | 135H+1 | In general, the Double Jeopardy Clause provides that a defendant may not be twice placed in jeopardy for the same offense. N.H. CONST. pt. I, art. 16; State v. Ringuette, 142 N.H. 163, 165, 697 A.2d 507 (1997). As a corollary, "It is fundamental that ... the defendant has a valued right to have his trial completed by a particular tribunal." State v. Solomon, 157 N.H. 47, 50, 943 A.2d 819 (2008) (quotation omitted). "The right to a particular tribunal is [a defendant's] right to complete a trial with a chosen jury, once sworn, or a particular judge, once evidence has commenced." Id. | In general, the Double Jeopardy Clause provides that a defendant may not be twice placed in jeopardy for the same offense. Const. Pt. 1, Art. 16. | Does the Double Jeopardy Clause provide that a defendant may not be twice placed in jeopardy for the same offense? | Double Jeopardy - Memo 917 - C - SHB_67706.docx | ROSS-003279164-ROSS-003279165 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 11896 | State v. Nommensen, 305 Wis. 2d 695 | 135H+1 | Both the state and federal constitutions offer protection against double jeopardy. State v. Anderson, 219 Wis.2d 739, 746, 580 N.W.2d 329 (1998). Whether an individual constitutional right to be free from double jeopardy has been violated presents a question of law. Id. The double jeopardy clause protects in three areas: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. State v. Kurzawa, 180 Wis.2d 502, 515, 509 N.W.2d 712 (1994); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 802, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). This case implicates the first area of protection: a second prosecution for the same offense after acquittal. | The double jeopardy clause protects in three areas: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5; W.S.A. Const. Art. 1, S 8. | What are the three areas protected by the double jeopardy clause? | 016563.docx | LEGALEASE-00165381-LEGALEASE-00165382 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 11897 | Calamari v. Drammis, 286 Ill. App. 3d 420 | 302+236(1) | Whether to allow an amendment to a complaint is within the sound discretion of the circuit court. Regas v. Associated Radiologists, Ltd., 230 Ill.App.3d 959, 968, 172 Ill.Dec. 553, 595 N.E.2d 1223 (1992). The circuit court does not abuse its discretion in denying a party leave to amend a pleading if that amendment will not cure the defects in the original pleading. City of Elgin v. County of Cook, 257 Ill.App.3d 186, 198"99, 195 Ill.Dec. 778, 629 N.E.2d 86 (1993). In this case, the circuit court dismissed plaintiff's complaint for failure to comply with section 2"622, and plaintiff acknowledges that the physician's report she filed with her proposed amended complaint did not meet the requirements of section 2"622. Given that her proposed amendment would not have cured the defects in her pleading, the court properly rejected it. | Whether to allow amendment to complaint is within sound discretion of circuit court, and court does not abuse that discretion in denying party leave to amend pleading if that amendment will not cure defects in original pleading. | Is the decision of the circuit court to grant or deny a party leave to amend its pleadings within its sound discretion? | 040804.docx | LEGALEASE-00166072-LEGALEASE-00166073 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 11898 | Boca Burger v. Forum, 912 So. 2d 561 | 302+231 | Moreover, a motion to dismiss is not a "responsive pleading" because it is not a "pleading" under the rules. See Fla. R. Civ. P. 1.100(a) (designating permissible pleadings and providing that "[n]o other pleadings shall be allowed"); see also Vanderberg, 798 So.2d at 807 (noting that a motion to dismiss is not a pleading) (citing Forum, 788 So.2d at 1057). Therefore, the filing of a motion to dismiss does not terminate a plaintiff's absolute right to amend the complaint "once as a matter of course." | The filing of a motion to dismiss does not terminate a plaintiff's absolute right to amend the complaint once as a matter of course. West's F.S.A. RCP Rule 1.190(a). | Does the filing of a motion to dismiss not end the plaintiff's absolute right to amend the complaint once? | Pretrial Procedure - Memo 12024 - C - TM_68448.docx | ROSS-003305908-ROSS-003305909 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 11899 | In re Wade, 501 B.R. 870 | 349A+10 | Before considering the impact of " 365, we should consider whether these documents are true leases. Kan. Stat. Ann.. " 84"1"203(b) (2012 Supp.) states that for a lease to be deemed a security interest, it must not be "subject to termination" by the lessee. Paragraph 7 of the lease forms titled "Lease"Purchase Agreement (Kansas)" states: "You [the lessee] may terminate this Agreement at any time ..."The leases in question are true leases because they may be cancelled at any time by the lessee surrendering or returning the property without penalty. | Under Kansas law, lessee's furniture and television leases were true leases, rather than security interests, since leases could be cancelled at any time by lessee surrendering or returning the property without penalty. Kan. Stat. Ann. S 84-1-203(b). | Can leases be cancelled at any time by a lessee surrendering or returning the property without penalty? | 042689.docx | LEGALEASE-00165710-LEGALEASE-00165711 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11900 | State v. S.L.D., 997 So. 2d 759 | 336H+401 | As in Gremillion, the appropriateness of the habitual offender adjudication was at issue rather than the defendant's guilt or innocence of the prior offenses. Also, a habitual offender proceeding "is not a trial, legal principles such as res judicata, double jeopardy, the right to a jury trial and the like do not apply." Dorthey, 623 So.2d at 1279. Thus, we find no abuse of the trial court's discretion in its granting of the continuance as requested by the State. | A habitual offender sentencing proceeding is not a trial, and legal principles such as res judicata, double jeopardy, the right to a jury trial, and the like do not apply. U.S.C.A. Const.Amend. 5. | Is a habitual offender sentencing proceeding a trial? | 014898.docx | LEGALEASE-00166224-LEGALEASE-00166225 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 11901 | People v. Trotter, 371 Ill. App. 3d 869 | 135H+100.1 | The first fundamental difference between a general acquittal and a finding of NGRI is found in the statutorily prescribed procedure that follows a finding of NGRI. Following a general acquittal, a criminal case ends, and as the Harrison court noted, "a defendant who has been acquitted and declared not guilty may not be retried on the same offense." Harrison, 366 Ill.App.3d at 215, 303 Ill.Dec. 254, 851 N.E.2d 152. We note that although the Harrison court cites the language of section 104"25(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104"25(c) (West 2002)) that directs courts to "enter a judgment of acquittal" when a defendant is found NGRI as evidence that a finding of NGRI is the equivalent of an acquittal, section 104"25(c) is, by its own terms, relevant only to a finding of NGRI following a discharge hearing after a determination that a defendant is not fit for a trial and will not become so within one year (see 725 ILCS 5/104"23(a), 104"25(c) (West 2004)). This section does not speak at all to an NGRI finding following a trial. | Following a general acquittal, a criminal case ends, and a defendant who has been acquitted and declared not guilty may not be retried on the same offense. U.S.C.A. Const.Amend. 5. | Can a defendant who has been acquitted and declared not guilty not be retried on the same offense and his verdict cannot be reviewed? | 015687.docx | LEGALEASE-00166409-LEGALEASE-00166410 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 11902 | Neff v. State, 915 N.E.2d 1026 | 135H+100.1 | The question here, then, is whether our reversal of Neff's conviction due to improper venue is an acquittal based upon insufficient evidence or a reversal based on legal error for double jeopardy purposes. We conclude it is the latter. An acquittal is a ruling that "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." U.S. v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 1354"55, 51 L.Ed.2d 642 (1977). Venue is not an "element" of a crime. Baugh, 801 N.E.2d at 631. The State's failure here to prove venue in Hamilton County was not a failure to prove an element of the offense and "implies nothing" with respect to Neff's guilt or innocence. See Burks, 437 U.S. at 15, 98 S.Ct. at 2149. As such, we conclude Neff may be retried in Madison County. To the extent Williams and Elkins would suggest otherwise, we decline to follow them. | An acquittal is a ruling that actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged. | Is an acquittal a ruling that actually represents a resolution of some or all of the factual elements of the offense charged? | 015885.docx | LEGALEASE-00166248-LEGALEASE-00166249 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 11903 | David v. Hett, 293 Kan. 679 | 13+27(1) | Whether a claim sounds in tort or contract is determined by the nature and substance of the facts alleged in the pleadings. Nelson v. Nelson, 288 Kan. 570, 582, 205 P.3d 715 (2009); Malone, 220 Kan. at 374, 552 P.2d 885. A breach of contract claim is the failure to perform a duty arising from a contract, and a tort claim is the violation of duty imposed by law, independent of the contract. 220 Kan. at 374, 552 P.2d 885. But the fact that the parties have a contractual relationship does not necessarily control the inquiry because legal duties may arise even though the parties also have a contract, so that " "[w]here a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of circumstances surrounding or attending the transaction, the breach of the duty is a tort." " 220 Kan. at 375, 552 P.2d 885 (quoting Yeager v. National Cooperative Refinery Ass'n, 205 Kan. 504, 509, 470 P.2d 797 [1970] ). | Whether a claim sounds in tort or contract is determined by the nature and substance of the facts alleged in the pleadings. | "Is the nature of a claim, whether it sounds in tort or contracts, determined from the pleadings?" | Action - Memo 978 - C _1T2N3-a_KEn_YPnfY0ONCvA1WWDW8cpSj.docx | ROSS-000000080-ROSS-000000081 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 11904 | People v. Demes, 220 Cal. App. 2d 423 | 135H+95.1 | As noted at the outset, the present proceeding was the third time Demes stood trial for the offenses charged; he now contends that he was twice placed in jeopardy because the jury at the first trial assertedly failed to vote on his guilt or innocence and because he was denied the benefit of counsel at the second trial. There is merit to neither contention. The jeopardy defense is not available if the jury is discharged for some recognized proper cause. Section 1141 of the Penal Code provides that "the cause may be again tried" where a jury "is discharged or prevented from giving a verdict by reason of an accident or other cause"; and section 1140 of the same code declares that "the jury cannot be discharged after the cause is submitted to them unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." | Double jeopardy defense is not available if a jury is discharged prior to verdict for some recognized proper cause. | Is the double jeopardy defense not available if a jury is discharged prior to a verdict for some recognized proper cause? | 015833.docx | LEGALEASE-00166603-LEGALEASE-00166604 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 11905 | Watson v. City of Orangeburg, 229 S.C. 367 | 371+2003 | The power of taxation being an attribute of sovereignty vested in the legislature subject to constitutional restrictions, taxes can be assessed and collected only under statutory authority. 51 Am. Jur., Taxation, Section 44, p. 74. Grier v. City Council of City of Spartanburg, 203 S.C. 203, 26 S.E.2d 690. It follows that, in the absence of statute so providing, the power to collect taxes due to the municipality may not be delegated by it without express statutory authority, cf. Borough of Wilkinsburg v. School District of Wilkinsburg, 365 Pa. 254, 74 A.2d 138, and a fortiori cannot be exercised by a private citizen. | Taxes can be assessed and collected only under statutory authority, since power of taxation, being an attribute of sovereignty, has been vested in legislature, subject to constitutional restrictions. Code 1952, SS 47-241, 47-253, 65-2701 et seq.; Const. art. 8, S 8. | Can the legislature delegate the authority to assess and collect taxes to a city? | 046595.docx | LEGALEASE-00166635-LEGALEASE-00166636 | Order, SA, Sub | 0.57 | 1 | 0 | 1 | 1 | 1 |
| 11906 | Campbell v. Area Vocational Tech. Sch. No. 2, 183 Neb. 318 | 1.41E+91 | It is within the power of the Legislature to provide for the administration of school districts by appointive rather than elective boards and to authorize such an appointive board to levy taxes. This is invariably done where new districts are created and is a well-established form of procedure. The levying of taxes by such a body is not subject to challenge as "taxation without representation." This point was raised in the case of Ratigan v. Daivs, supra, wherein the court said: "Maxims of government, not contained in the Constitution, are given a very restricted meaning." | Legislature has power to provide for administration of school district by appointive rather than elective boards and to authorize such appointive board to levy taxes. | Does the legislature have power to provide for administration of school district? | Taxation - Memo 1358 - C - AB_68552.docx | ROSS-003296708-ROSS-003296709 | Order, SA | 0.71 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11907 | People ex rel. Tuohy v. City of Chicago, 399 Ill. 551 | 268+1.1 | A similar objection was made in People v. Chicago Transit Authority, 392 Ill. 77, 64 N.E.2d 1, wherein we pointed out that there was no constitutional requirement that municipal corporations be given taxing powers, and that such power was not a prerequisite to the existence of a municipal corporation. Section 9 of article IX of the constitution provides that "all municipal corporations may be vested with authority to assess and collect taxes;" etc., which provision is permissive and not mandatory. Section 10 of article IX relied upon by appellant states that: "The general assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts," etc. This section is not authority for appellant's contention that municipalities must mandatorily be given power to tax, but is obviously rather a limitation on the power of the legislature to levy taxes on municipal corporations. There is no merit to this contention. | The constitutional provision that municipal corporations "may" be vested with authority to assess and collect taxes is permissive, and taxing power is not a prerequisite to existence of municipal corporation. S.H.A. Const. art 9, S 9. | Can the Legislature vest the power to assess and collect taxes in any municipal corporation other than the one for whose corporate purpose the tax is to be levied? | Taxation - Memo 1359 - C - SD.docx | LEGALEASE-00056730-LEGALEASE-00056731 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 11908 | Florida-Georgia Chem. Co. v. Nat'l Labs., 153 So. 2d 752 | 308+39 | Agency may be revoked or terminated in any manner showing the intention of the principal to withdraw the authority. Such revocation, as far as the agent is concerned, becomes operative from the time he has actual notice thereof, but notice to third parties will not effect a revocation as to the agent. | Revocation of agency becomes operative as to agent from time he has actual notice thereof, but notice to third parties will not effect revocation as to agent. | Does revocation of agency become operative from the time the agent has actual notice? | 041402.docx | LEGALEASE-00167343-LEGALEASE-00167344 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 11909 | Monterey Bay Military Hous. v. Pinnacle Monterey LLC, 116 F. Supp. 3d 1010 | 308+33 | Interpreting the letter of the CPMB and CPCMC operating agreements, the only conclusion that the Court can reach as a matter of law is that these operating agreements do not restrain the Clark Manager's unilateral power to direct revocation of AMSC's agency at the Monterey and Irwin projects. The authority granted to the Clark Managers is broad. Moreover, given that revocation is not an "adjustment" to the terms of the PMAs, and given the breadth of the exception to the "adjustment" Major Decision, it is clear that the CPMB and CPCMC members intended that there would be little hindrance to the Clark Manager's management of CPMB's and CPCMC's "business" as managing member of MBMH and CMC. Indeed, the PMAs themselves provide that AMSC can rely on the direction or consent of the Clark Manager as the act of the Owner. Monterey PMA. As such, if AMSC is directed to vacate the premises by the Clark Manager for CPMB and CPCMC, the PMAs instruct AMSC that that is the act of the Owner. Of course, the parties are well aware that the statutory power of a principal to revoke an agency is "independent and distinguishable from a contractual right" to terminate that relationship. "If the exercise of the statutory revocation power is contractually unjustified, damages may be in order." In that respect, the Pinnacle Managers' financial interests in the PMAs are still protected. | Under California law, the statutory power of a principal to revoke an agency is independent and distinguishable from a contractual right to terminate that relationship. Cal. Civ. Code S 2356. | Is the statutory power of a principal to revoke an agency independent from a contractual right? | 041412.docx | LEGALEASE-00167345-LEGALEASE-00167346 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11910 | United States v. Heineman, 767 F.3d 970 | 92+1831 | Thus, we are facing a question of first impression in this circuit: Does the First Amendment, as construed in Black, require the government to prove in any true-threat prosecution that the defendant intended the recipient to feel threatened? We conclude that it does. At issue in Black were three state-law convictions for cross burning (or attempted cross burning) with intent to intimidate. See Black, 538 U.S. at 348"51, 123 S.Ct. 1536. On an open field on private property, defendant Black had led a Ku Klux Klan rally that ended with the participants setting flame to a large cross 300 yards or so from a road, where passersby and neighbors could see it. See id. at 348"49, 123 S.Ct. 1536. In a separate incident, defendants Elliott and O'Mara had driven a truck into the yard of an African"American family that had recently moved into the neighborhood, planted a cross 20 feet from the house, and set it on fire. Id. at 350, 123 S.Ct. 1536. | First Amendment required government to prove, in any "true-threat" prosecution, that defendant intended the recipient of speech to feel threatened. U.S.C.A. Const.Amend. 1. | "What does the First Amendment require the government to prove in any ""true-threat"" prosecution?" | Threats - Memo #68 - C - LB_61636.docx | ROSS-003283568-ROSS-003283569 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11911 | Com. v. McDonald, 462 Mass. 236 | 3.77E+25 | The criminal harassment statute proscribes "willfully and maliciously engag[ing] in a knowing pattern of conduct or series of acts over a period of time directed at a specific person." G.L. c. 265, " 43A (a ). Wilful conduct is that which is "intentional rather than accidental"; it requires no evil intent, ill will, or malevolence. See Commonwealth v. Luna, 418 Mass. 749, 753, 641 N.E.2d 1050 (1994), and cases cited. A "malicious act," as defined in Black's Law Dictionary 1043 (9th ed. 2009), is an "intentional, wrongful act done willfully or intentionally against another without legal justification or excuse." See Commonwealth v. Paton, 63 Mass.App.Ct. 215, 219, 824 N.E.2d 887 (2005), quoting Commonwealth v. York, 50 Mass. 93, 9 Met. 93, 104 (1845) (malicious acts are "done with an evil disposition, a wrong and unlawful motive or purpose; the wilful doing of an injurious act without lawful excuse"). "Conduct is wilful when the actor intends both the conduct and its harmful consequences [and] may be wilful and malicious although its harmful consequences are neither substantial nor highly likely." (Citations omitted.) Commonwealth v. Schuchardt, 408 Mass. 347, 352, 557 N.E.2d 1380 (1990). See Commonwealth v. O'Neil, 67 Mass.App.Ct. 284, 293, 853 N.E.2d 576 (2006) (defendant's conduct satisfied requirement of malice under G.L. c. 265, " 43A [a ], because it "was intentional and without justification or mitigation, and any reasonably prudent person would have foreseen the actual harm that resulted"). Furthermore, G.L. c. 265, " 43A (a ), "by its plain terms, requires the Commonwealth to establish, at the very least, that the defendant intended to target the victim with the harassing conduct on at least three occasions." Commonwealth v. Welch, 444 Mass. 80, 90, 825 N.E.2d 1005 (2005). | Conduct is wilful for purposes of criminal harassment when the actor intends both the conduct and its harmful consequences and may be wilful and malicious although its harmful consequences are neither substantial nor highly likely. M.G.L.A. c. 265, S 43A(a). | "When is conduct ""willfull"" for the purposes of criminal harassment?" | 046796.docx | LEGALEASE-00167366-LEGALEASE-00167367 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11912 | Com. v. Sholley, 432 Mass. 721 | 3.77E+11 | An oft-quoted United States District Court decision defines the word "threatened" as it appears in the statute: "It is "the expression of an intention to inflict evil, injury, or damage on another." Webster's New International Dictionary, n.1 (1966 ed. unabridged)." Robinson v. Bradley, 300 F.Supp. 665, 668 (D.Mass.1969). Massachusetts courts have referred to this definition approvingly in several cases. See Commonwealth v. Chalifoux, 362 Mass. 811, 816, 291 N.E.2d 635 (1973); Commonwealth v. Daly, 12 Mass.App.Ct. 338, 339 n. 1, 424 N.E.2d 1138 (1981); Commonwealth v. Ditsch, 19 Mass.App.Ct. 1005, 475 N.E.2d 1235 (1985). More than that, the decisional law requires that the threat be made in circumstances that would reasonably justify apprehension on the part of an ordinary person. See Commonwealth v. Corcoran, 252 Mass. 465, 482"483, 148 N.E. 123 (1925); Commonwealth v. Strahan, 39 Mass.App.Ct. 928, 929, 657 N.E.2d 234 (1995). | "Threat," as element of offense of threatening to commit a crime, must be made in circumstances that would reasonably justify apprehension on the part of an ordinary person. M.G.L.A. c. 275, S 2. | "Under what circumstances must a ""threat,"" as an element of the offense of threatening to commit a crime, be made?" | "Threats, Stalking and Harassment - Memo #139 - C - LB_63317.docx" | ROSS-003279550-ROSS-003279551 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 11913 | Matapos Tech. Ltd. v. Compania Andina de Comercio Ltda, 68 A.D.3d 672 | 21+13.1 | Defendant has not preserved its argument that the foreign affidavits were invalid for lack of the certification required by CPLR 2309(c) and Real Property Law " 299"a. In any event, the courts are not rigid about this requirement. As long as the oath is duly given, authentication of the oathgiver's authority can be secured later, and given nunc pro tunc effect if necessary (see Siegel, Practice Commentary, McKinney's Cons. Laws of NY, CPLR 2309:3). The absence of such a certificate is a mere irregularity, and not a fatal defect (see Smith v. Allstate Ins. Co., 38 A.D.3d 522, 832 N.Y.S.2d 587 [2007] ). | The absence of a certification of foreign affidavits is a mere irregularity, and not a fatal defect. McKinney's CPLR 2309(c); McKinney's Real Property Law S 299-a. | Is the absence of a certificate of conformity for a foreign affidavit a fatal defect? | 07311.docx | LEGALEASE-00077628-LEGALEASE-00077629 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 11914 | Erlandson v. Erskine, 76 Mont. 537 | 83E+489 | The above rule has been applied, with certain modifications, in Cornish v. Woolverton, 32 Mont. 456, 81 P. 4, 108 Am. St. Rep. 598, in which it is said that the rule is that- "The assignee of a nonnegotiable contract made for the "payment" of money * * * takes all the rights of the assignor, subject only to the equities and defenses existing in favor of the maker at the time of the assignment, and that matters arising out of subsequent dealings between the maker and assignor, not relating to the contract, but which would be defenses in an action"between the maker and the "assignor, are not available as against the assignee, * * * but that in order to cut off defenses arising out of dealings with relation to the contract itself between the maker and assignor after assignment-such as payment, release, etc.-notice of the assignment is necessary; so that under section 571, supra [now section 9068, Rev. Codes 1921], if the maker, without notice of the assignment, in good faith pays the assignor the amount of the debt or obligation, and takes an acquittance, this constitutes a complete defense to a suit by the assignee." | Assignee of nonnegotiable note takes subject to existing defenses in favor of maker, and to cut off subsequent defenses such as payment or release notice is necessary, in view of Rev.Codes 1921, SS 8772, 9068. | Does the assignee stand on the same footing with regard to the equities and defenses available to the maker? | 07359.docx | LEGALEASE-00077630-LEGALEASE-00077632 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 11915 | Fleming v. Fleming, 141 Ga. App. 51 | 21+16 | Although we have held the procedure here defective in that it followed the unconstitutional 1976 Act, we might mention that, even under that Act, the motion would not have been good, since the plaintiff failed in her affidavit to properly identify the judgment which formed the basis of the garnishment. A pleading styled "amendment to affidavit" sought to furnish this information, but is itself a nullity in that it is not sworn to. Since by definition an affidavit is a statement of fact confirmed by oath, it can in no event be enlarged or amended by adding other statements without verification. | Since, by definition, an "affidavit" is a statement of fact confirmed by oath, it cannot be enlarged or amended by adding other statements without verification. | Can an affidavit be enlarged or amended by adding other statements without verification? | 04997.docx | LEGALEASE-00078093-LEGALEASE-00078094 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 11916 | People v. Nesseth, 127 Cal. App. 2d 712 | 181+10 | Likewise, the rule is established in California that alteration of a document without authority with the intent to defraud may constitute forgery and that such alteration may consist of the insertion of matter in the document in question after it has been signed. (People v. McKenna, 11 Cal.2d 327, 332, 79 P.2d 1065; People v. Jones, 100 Cal.App. 550, 554, 280 P. 555.) | Alteration of a document without authority with intent to defraud, so as to constitute forgery, may consist of the insertion of matter in the document in question after it has been signed. West's Ann.Pen.Code, S 470. | Does alteration of a document without authority amount to forgery? | 05015.docx | LEGALEASE-00078107-LEGALEASE-00078108 | Condensed, SA | 0.42 | 0 | 1 | 0 | 1 | |
| 11917 | Gable v. Raftery, 65 N.Y.S.2d 513 | 277+12 | Formal parties to an action or proceeding are not always the only ones who are bound by an adjudication rendered therein. Persons notified of an action or proceeding in which they are directly interested may be required to exercise reasonable diligence to protect their interests. See Ashton v. City of Rochester, 133 N.Y. 187, 196, 30 N.E. 965, 968, 31 N.E. 334, 28 Am.St.Rep. 619, citing Robbins v. City of Chicago, 71 U.S. 657, 4 Wall. 657, 18 L.Ed. 427; Village of Port Jervis v. First Nat. Bank, 96 N.Y. 550, 557. If persons not parties wilfully shut their eyes and fail to make an effort to appear in such action or proceeding of which they receive formal notice and defend their interests therein, they should not be permitted to annul and set aside matters adjudicated therein particularly where such a result would create chaos and cause irremedial damage to a party (in this case, The Yonkers Board of Education). | Persons notified of an action or proceeding in which they are directly interested may be required to exercise reasonable diligence to protect their interests. | What is required from a person who is notified of an action or proceeding in which he is directly interested? | 05024.docx | LEGALEASE-00078111-LEGALEASE-00078112 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 11918 | State v. Union Tank Car Co., 439 So. 2d 377 | 1.49E+08 | While other regulations do provide very detailed and specific emission limitations for various other types of air pollutants, as well as providing substantial comprehensible regulations with regard to the emission technologies to be utilized, LAC 14"11:4.74 and 17.11 are generally worded and not subject to definitely ascertainable measurement. Environmental legislation is not exempt from the due process requirement of definiteness, especially where serious criminal sanctions are involved. | Environmental legislation is not exempt from due process requirement of definiteness, especially where serious criminal sanctions are involved. LSA-Const. Art. 1, SS 13, 16; U.S.C.A. Const.Amend. 14. | Is the environmental legislation exempt from the due process requirement of definiteness? | Environmental Law - Memo 14 - ANG.docx | ROSS-003301322-ROSS-003301323 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11919 | Dep't of Revenue of Montana v. Kurth Ranch, 511 U.S. 767 | 180+23(1) | Criminal fines, civil penalties, civil forfeitures, and taxes all share certain features: They generate government revenues, impose fiscal burdens on individuals, and deter certain behavior. All of these sanctions are subject to constitutional constraints. A government may not impose criminal fines without first establishing guilt by proof beyond a reasonable doubt. Cf. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). A defendant convicted and punished for an offense may not have a nonremedial civil penalty imposed against him for the same offense in a separate proceeding. United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). A civil forfeiture may violate the Eighth Amendment's proscription against excessive fines. Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). And a statute imposing a tax on unlawful conduct may be invalid because its reporting requirements compel taxpayers to incriminate themselves. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). | Criminal fines, civil penalties, civil forfeitures, and taxes all are sanctions subject to constitutional constraints. | "Are criminal fines, civil penalties, civil forfeitures, and taxes subject to constitutional constraints?" | 05510.docx | LEGALEASE-00078494-LEGALEASE-00078496 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 11920 | In re Siegal, 190 B.R. 639 | 289+946 | Thus, dissolution does not mean termination of a partnership or cessation of its business. However, because partnership is consensual and because a general partner is an agent for the partnership and derivately for the other partners, dissolution does terminate the departing partner's power to act for the partnership and to participate in further managerial decisions. The departing partner's economic interest remains intact, however, and is paid out pursuant either to state law or the partnership agreement. | Although "dissolution" does not mean termination of partnership or cessation of its business, because partnership is consensual and because general partner is agent for partnership and derivatively for other partners, dissolution terminates departing partner's power to act for partnership and to participate in further managerial decisions. | Does dissolution end the partnership? | 00795.docx | LEGALEASE-00081566-LEGALEASE-00081567 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 11921 | Maryland Cas. Co. v. Nationwide Mut. Ins. Co., 81 Cal. App. 4th 1082 | 217+3513(3) | Equitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss. (Fireman's Fund, supra, 65 Cal.App.4th at p. 1291, 77 Cal.Rptr.2d 296.) Because this doctrine shifts the entire cost burden, the moving party insurer must show the other insurer was primarily liable for the loss and that the moving party's equitable position is inferior to that of the second insurer. (Id. at pp. 1291, 1296, 77 Cal.Rptr.2d 296; see Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc. (1997) 52 Cal.App.4th 553, 556, 60 Cal.Rptr.2d 591.) This doctrine commonly applies to shift defense costs between primary and excess insurers. (See Signal Companies, Inc. v. Harbor Ins. Co. (1980) 27 Cal.3d 359, 367"368, 165 Cal.Rptr. 799, 612 P.2d 889; Reliance Nat. Indemnity Co. v. General Star Indemnity Co., supra, 72 Cal.App.4th at pp. 1080"1081, 85 Cal.Rptr.2d 627.) As between those two insurers, the primary insurer is obligated to defend the insured and must bear 100 percent of the defense costs until the primary limits have been exhausted. (See Signal Companies, Inc. v. Harbor Ins. Co., supra, 27 Cal.3d at p. 368, 165 Cal.Rptr. 799, 612 P.2d 889; Hartford Accident & Indemnity Co. v. Superior Court (1994) 23 Cal.App.4th 1774, 1779"1780, 29 Cal.Rptr.2d 32.) Thus, an excess insurer that pays defense costs will frequently obtain a full recovery against the primary insurer on an equitable subrogation theory. | "Equitable subrogation" allows an insurer who paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss. | What is the aim of equitable subrogation? | 07785.docx | LEGALEASE-00081902-LEGALEASE-00081904 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 11922 | Meas v. State Farm Fire & Cas. Co., 130 Wash. App. 527 | 366+1 | Subrogation is an equitable doctrine, the purpose of which is to provide for a proper allocation of payment responsibility. Mahler, 135 Wash.2d at 411, 957 P.2d 632. It seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, should bear it. Mahler, 135 Wash.2d at 411, 957 P.2d 632. Subrogation has two features: the right to reimbursement and the mechanism for the enforcement of that right. The right to reimbursement may arise by operation of law, termed "legal" or "equitable" subrogation, or by contract, called "conventional" subrogation. Mahler, 135 Wash.2d at 412, 957 P.2d 632. Here, State Farm's right of subrogation for its collision payment arose from Meas's insurance policy. | Subrogation has two features: the right to reimbursement and the mechanism for the enforcement of that right, which may arise by operation of law, termed "legal" or "equitable" subrogation, or by contract, called "conventional" subrogation. | What are the features to subrogation? | 05084.docx | LEGALEASE-00083730-LEGALEASE-00083731 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 11923 | R.S.B. Ventures v. Berlowitz, 211 So. 3d 259 | 13+61 | The rule of Silvestrone, however, "merely establishes a bright line for establishing when the client has suffered some loss as a consequence of the attorney's negligence." Larson & Larson, P.A. v. TSE Indus., Inc., 22 So.3d 36, 42 (Fla. 2009). "It does not require that there be a determination of the full extent of all losses suffered by the client due to the lawyer's negligence." Id. Even if collateral matters are not yet resolved, "once a judgment adverse to the client has reached the *264 point of finality, there is no justification for tolling the statute of limitations." Id. at 45. Although sanctions such as attorney's fees are collateral to the underlying judgment, "being "collateral" does not mean they are subsumed by the underlying judgment." Id. at 47. | Rule stating that, since redressable harm is not established until final judgment is rendered, a legal malpractice claim is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client merely establishes a bright line for establishing when the client has suffered some loss as a consequence of the attorney's negligence; it does not require that there be a determination of the full extent of all losses suffered by the client due to the lawyer's negligence. | Should there be a determination of the full extent of all losses suffered by the client due to the lawyer's negligence? | 05666.docx | LEGALEASE-00084988-LEGALEASE-00084989 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |
| 11924 | Caruthers v. State, 58 N.E.3d 207 | 307A+581 | The purpose of Trial Rule 41 (E) is "to ensure that plaintiffs will diligently pursue their claims" and to provide "an enforcement mechanism whereby a defendant, or the court, can force a recalcitrant plaintiff to push his case to resolution." Belcaster v. Miller, 785 N.E.2d 1164, 1167 (Ind.Ct.App.2003) (quoting Benton v. Moore, 622 N.E.2d 1002, 1006 (Ind.Ct.App.1993)), trans. denied. "The burden of moving the litigation is upon the plaintiff, not the court. It is not the duty of the trial court to contact counsel and urge or require him to go to trial, even though it would be within the court power to do so." Id. (quoting Benton, 622 N.E.2d at 1006). | It is not the duty of the trial court to contact counsel and urge or require him to go to trial, even though it would be within the court's power to do so. Trial Procedure Rule 41(E). | is it the duty of the trial court to contact a counsel and urge or require him to go to trial? | 11000.docx | LEGALEASE-00094769-LEGALEASE-00094770 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11925 | City of Baton Rouge/Par. of E. Baton Rouge v. Smuggy's Corp., 156 So. 3d 202 | 13+70 | Section 48:452.1A provides that if an owner seeking additional compensation "fails to take any step in the prosecution of that claim for a period of three years," the claim is abandoned. This language is similar to the pertinent provisions of Louisiana Code of Civil Procedure article 561A(1), the general article governing abandonment of actions, which provides that an action "is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years." Under Article 561, a party takes a "step" in the prosecution or defense of a suit when he takes formal action, before the court and on the record, intended to hasten the matter to judgment. Chevron Oil Company v. Traigle, 436 So.2d 530, 532 (La.1983); Porter v. Progressive Specialty Insurance Company, 99"2542 (La.App. 1 Cir. 11/8/00), 771 So.2d 293, 294. | A party takes a step in the prosecution or defense of a suit, as would preclude a finding of abandonment, when he takes formal action, before the court and on the record, intended to hasten the matter to judgment. (Per Crain, J., with two judges concurring in result.) LSA-C.C.P. art. 561. | "Is a proper mail of discovery request to another party, a step that can preclude a dismissal for abandonment?" | 10363.docx | LEGALEASE-00095423-LEGALEASE-00095424 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 11926 | Caltabiano v. L & L Real Estate Holdings II, 128 Conn. App. 84 | 30+154(2) | The plaintiffs' filing of the substitute revised amended complaint acted as a waiver of any claim that the court improperly had stricken counts three and four of the revised amended complaint. "After a court has granted a motion to strike, the plaintiff may either amend his pleading or, on the rendering of judgment, file an appeal.... The choices are mutually exclusive [as] [t]he filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading." (Citation omitted; internal quotation marks omitted.) St. Denis v. de Toledo, 90 Conn.App. 690, 693"94, 879 A.2d 503, cert. denied, 276 Conn. 907, 884 A.2d 1028 (2005); see also Practice Book " 10"44. Furthermore, if the allegations in a complaint filed subsequent to one that has been stricken are not materially different than those in the earlier, stricken complaint, the party bringing the subsequent complaint cannot be heard to appeal from the action of the trial court striking the subsequent complaint. See Parsons v. United Technologies Corp., 243 Conn. 66, 74, 700 A.2d 655 (1997). | If the allegations in a complaint filed subsequent to one that has been stricken are not materially different than those in the earlier, stricken complaint, the party bringing the subsequent complaint cannot be heard to appeal from the action of the trial court striking the subsequent complaint. | What are the options available to the plaintiff after a grant of motion to strike by the court? | 008167.docx | LEGALEASE-00122062-LEGALEASE-00122063 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11927 | Moore v. Serafin, 163 Conn. 1 | 212+1037 | The granting of injunctive relief in each case is within the sound discretion of the trial court exercised according to recognized principles of equity.In exercising its discretion, the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction.Adams v. Greenwich Water Co., supra; Maganini v. Hodgson, supra, 138 Conn. 196, 82 A.2d 801; Sisters of St. Joseph Corporation v. Atlas Sand, Gravel & Stone Co., 120 Conn. 168, 175, 180 A. 303; Bickell v. Moraio, 117 Conn. 176, 187, 167 A. 722; Bauby v. Krasow, 107 Conn. 109, 115, 139 A. 508; Gage v. Schavoir, 100 Conn. 652, 668, 124 A. 535; Robinson v. Clapp, 65 Conn. 365, 380, 32 A. 939; 42 Am.Jur.2d, Injunctions, ss 58, 306; 20 Am.Jur.2d , Covenants, Conditions and Restrictions, ss 313, 328. Where the granting of the injunction would cause damage to the defendant greatly disproportionate to the injury of which the plaintiff complains, it may be held inequitable to grant a mandatory injunction and the plaintiff may remitted to her remedy by way of damages.1 Waterbury Trust Co. v. G.L.D. Realty Co., 124 Conn. 191, 199, 199 A. 106; Sisters of St. Joseph Corporation v. Atlas Sand, Gravel & Stone Co., supra; Armstrong v. Leverone, 105 Conn. 464, 475-476, 136 A. 71; Bauby v. Krasow, supra, 107 Conn. 116, 139 A. 508; Hawley v. Beardsley, 47 Conn. 571. | The granting of injunctive relief in each case is within sound discretion of trial court exercised according to recognized principles of equity. | Should an injunction ordinarily issued in the sound discretion of the court be granted on the basis of the situation as it exists at the time of trial? | 006293.docx | LEGALEASE-00127983-LEGALEASE-00127985 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 11928 | Even v. Clifford, 287 F. Supp. 334 | 34+1 | Under the circumstances herein presented, there is little basis for upholding petitioner's contention that the government is strictly bound by the enlistment contract and the Statement of Understanding. Congress has the power to declare war and provide for the common defense of the nation. U.S.Const., Art. I, " 8. These powers necessarily carry with them the power to say who shall serve in the armed forces and under what circumstances. Bertelsen v. Cooney, 213 F.2d 275 (5th Cir., 1954). The of Congress to preserve the efficiency of the armed forces is not limited by the absence of a military emergency.Badger v. United States, 322 F.2d 902 (9th Cir., 1963). | Power of Congress to preserve efficiency of armed forces is not limited by absence of military emergency. U.S.C.A.Const. art. 1, S 8. | Is the power of congress to preserve the efficiency of the armed forces limited by the absence of a military emergency? | 008305.docx | LEGALEASE-00128595-LEGALEASE-00128596 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 11929 | Aranda v. Indus. Comm'n of Arizona, 195 Ariz. 403 | 413+1 | Although workers' compensation payments are property, United Riggers Erectors, 131 Ariz. at 262, 640 P.2d at 193, they are not fundamental rights in the sense of the Constitution but statutory benefits provided by and to the extent of the legislation. See Wood, 813 P.2d at 824. If this were not so, a suspension of payments would not be a matter of either legislation, e.g., A.R.S. "" 23"1026(C), 23"1047(D), or a legislative cure for a perceived ill as was made available in United Riggers Erectors, 131 Ariz. at 262, 640 P.2d at 193, and Bearden, 14 Ariz.App. at 343, 483 P.2d at 575; see Ashcraft, 472 N.E.2d at 1079; Spera, 713 P.2d at 1158; Crawford, 517 So.2d at 924. Nor would the payments be community property. Bugh v. Bugh, 125 Ariz. 190, 192, 608 P.2d 329, 331 (App.1980), citing Dawson v. McNaney, 71 Ariz. 79, 223 P.2d 907 (1950). Thus, strict scrutiny is not required. Rather, the correct standard of review is the rational basis test. "Social and economic legislation that does not involve a suspect classification or a fundamental right will be upheld when it is rationally related to a legitimate government purpose." Church v. Rawson Drug & Sundry Co., 173 Ariz. 342, 350, 842 P.2d 1355, 1363 (App.1992); see Lavine v. Milne, 424 U.S. 577, 584 n. 9, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976) (right to receive subsistence funds not fundamental); Wood, 813 P.2d at 824 (workers' compensation payments not a matter of fundamental right). To fail this test, the statute must be entirely unrelated to a legitimate legislative goal. Church, 173 Ariz. at 350, 842 P.2d at 1363. | Although workers' compensation payments are property, they are not fundamental rights in the sense of the Constitution but statutory benefits provided by and to the extent of the legislation. U.S.C.A. Const.Amend. 14. | Is the right to workers compensation a fundamental right under the constitution? | 047745.docx | LEGALEASE-00128751-LEGALEASE-00128753 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11930 | Conte v. Conte, 45 Conn. App. 235 | 30+5 | 4 In short, we find this case distinguishable from the independent proceedings that underlay both Lougee and Mongillo, and we find the intervenor cases irrelevant to this case. We discern no meaningful distinction between the appellant in the present case and the appellant in Bergeron, and we hold that where a nonparty is aggrieved by a ruling made in the context of an on-going action, that person's remedy is by writ of error rather than appeal. | Where nonparty is aggrieved by ruling made in the context of ongoing action, that person's remedy is by writ of error rather than by appeal. | What remedy is available to a nonparty who is aggrieved by a ruling made in context of an on-going action? | 008217.docx | LEGALEASE-00129099-LEGALEASE-00129100 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 11931 | Meyers v. Ackerlund, 224 Ill. App. 417 | 307A+501 | Nor do we know of any authority for an appeal by a plaintiff from an order of voluntary nonsuit. If a plaintiff is present and does not wish to proceed with the prosecution of a case, he must elect either to suffer a nonsuit or the case should go to the jury. Delano v. Bennett, 61 Ill. 83. | If a plaintiff is present and does not want to proceed with the prosecution of the case, he must elect either to suffer a nonsuit or the case should go to the jury. | "f a plaintiff does not want to proceed with the prosecution of the case, should he suffer a nonsuit or should the case go to the jury?" | 026346.docx | LEGALEASE-00130071-LEGALEASE-00130072 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 11932 | Siegel v. Kepa Homes Corp., 2000 Mass. App. Div. 170 | 363+17(1) | A pretrial conference report is designed to "define, simplify and limit the issues to be decided, reduce error, prevent surprise, promote judicial economy and encourage settlement." Slade v. Slade, 43 Mass.App.Ct. 376, 378, 682 N.E.2d 1385 (1997).The pretrial report narrows and simplifies issues for trial primarily through admissions or stipulations by counsel. Mitchell v. Walton Lunch Co., 305 Mass. 76, 80, 25 N.E.2d 151 (1939). It has long been settled in this Commonwealth, even prior to the promulgation of Mass. R. Civ. P. 16 which now governs pretrial reports, that trial should be confined to the issues disclosed in a pretrial report, and that the admissions or stipulations of counsel in pretrial conferences and memoranda are binding on the parties. Slade v. Slade, supra at 376, n. 13, 682 N.E.2d 1385. See Whitcomb v. Hearst Corp., 329 Mass. 193, 201, 107 N.E.2d 295 (1952); Lynch v. Kaufman, 329 Mass. 762, 105 N.E.2d 848 (1952); Donnelly v. Larkin, 327 Mass. 287, 295, 98 N.E.2d 280 (1951); DeLuca v. Cleary, 47 Mass.App.Ct. 50, 52, 710 N.E.2d 1027 (1999); Norton v. Vaughan, 13 Mass.App.Ct. 1075, 1076, 435 N.E.2d 634 (1982). The obvious rationale for the rule is the elimination of what resulted in this case; namely, unfair surprise to the court and opposing party by raising an issue for the first time mid-trial.2 The defendant did not argue in the trial court or before this Division that the stipulation should be vacated as "improvident or not conducive to justice." See Atlantic Pipe Corp. v. R.J. Longo Const. Co., 35 Mass.App.Ct. 459, 464"465, 622 N.E.2d 279 (1993). The stipulation that Kepa Homes built the plaintiffs' house thus remained binding, and the defendant cannot now disclaim its responsibility by suggesting that the wrong party was sued. | Trial should be confined to the issues disclosed in a pretrial report, and the admissions or stipulations of counsel in pretrial conferences and memoranda are binding on the parties. Rules Civ.Proc., Rule 16, 43A M.G.L.A. | Should trial be confined to the issues disclosed in a pretrial report? | 027524.docx | LEGALEASE-00130800-LEGALEASE-00130801 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11933 | Matter of Foreclosure of Liens for Delinquent Land Taxes By Action In Rem Collector of Revenue v. Parcels of Land Encumbered With Delinquent Tax Liens, 504 S.W.3d 880 | 307A+517.1 | Under Rule 67.02(a)(2), "a civil action may be dismissed by the plaintiff without order of the court anytime ... [i]n cases tried without a jury, prior to the introduction of evidence at the trial." In this case, the Collector was entitled to voluntarily dismiss the land tax suit with prejudice pursuant to Rule 67.02(a)(2). The circuit court's order setting aside the default judgment effectively put the parties back in the exact position they were in prior to the circuit court entering the default judgment. Thus, the Collector's voluntary dismissal was filed before the introduction of evidence at trial and expressly applied to the dismissal with prejudice of all claims. "Once all such claims have been so dismissed, the case is over and nothing remains before the [circuit] court upon which it can act." Samland v. J. White Transp. Co., Inc., 675 S.W.2d 92, 97 (Mo. App. W.D. 1984); Stearns Bank N.A., 182 S.W.3d at 626. Therefore, the circuit court lost jurisdiction on February 26, 2016, the date the Collector filed the voluntary dismissal. See Freeman v. Leader Nat'l Ins. Co., 58 S.W.3d 590, 595 (Mo. App. E.D. 2001). Accordingly, because the circuit court lacks jurisdiction, we too lack jurisdiction on appeal. | Once all claims have been voluntarily dismissed, the case is over and nothing remains before the circuit court upon which it can act. | "Once all claims have been voluntarily dismissed, is the case over and nothing remains before the circuit court upon which it can act?" | Pretrial Procedure - Memo # 2485 - C - PC.docx | ROSS-003327110-ROSS-003327111 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 11934 | Autin v. Goetz, 524 S.W.3d 617 | 307A+509 | A voluntary nonsuit to dismiss an action without prejudice must be followed by an order of voluntary dismissal signed by the court and entered by the clerk. The date of entry of the order will govern the running of pertinent time periods.Tenn. R. Civ. P. 41.01(1), (3). Consequently, "a plaintiff's right to voluntary dismissal without prejudice is subject to the exceptions expressly stated in Rule 41.01(1) as well as to an implied exception which prohibits nonsuit when it would deprive the defendant of some vested right." Lacy v. Cox, 152 S.W.3d 480, 484 (Tenn. 2004) (footnote omitted) (citing Anderson v. Smith, 521 S.W.2d 787, 790 (Tenn. 1975)). In addition,A plaintiff is further limited to taking no more than two nonsuits without prejudice, Tenn. R. Civ. P. 41.01(2), and nonsuit cannot be taken more than one year after an initial dismissal. As long as none of these exceptions and limitations serve[s] to restrict dismissal, Rule 41.01(1) affords a plaintiff the free and unrestricted right to voluntary dismissal without prejudice before the jury retires. Rickets v. Sexton, 533 S.W.2d 293, 294 (Tenn. 1976). | Subject to certain exceptions and limitations, rule of civil procedure affords a plaintiff the free and unrestricted right to voluntary dismissal without prejudice before the jury retires. Tenn. R. Civ. P. 41.01(1). | Is a voluntary dismissal a dismissal without prejudice unless it otherwise states? | 027857.docx | LEGALEASE-00132229-LEGALEASE-00132230 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11935 | United States v. Lewis, 824 F. Supp. 2d 169 | 34+3(2) | Defendant argues that trial counsel rendered ineffective assistance of counsel because he failed to move to suppress the evidence or object to the introduction of the evidence obtained by military personnel and the testimony of military personnel in violation of the PCA, 10 U.S.C. " 375. Although the PCA forbids the use of only Army or Air Force personnel in non-military law enforcement activities, the Secretary of Defense has issued regulations, authorized by 10 U.S.C. " 375, prohibiting direct participation by all military personnel including members of the Navy in any civilian search, seizure, arrest, or other similar activity unless expressly authorized by law. The Government recognizes that the NCIS is the federal law enforcement agency which investigates those felony offenses that affect the interests of the Navy and Marines; consequently, they act as agents of the Navy and are bound by the provisions of the Posse Comitatus Act. Govt. Opp'n at 25; United States v. Yunis, 924 F.2d 1086, 1094 (D.C.Cir.1991). Yunis squarely held that "[r]egulations issued under 10 U.S.C. " 375 require Navy compliance with the restrictions of the Posse Comitatus Act...." 924 F.2d at 1094. | Although the Posse Comitatus Act (PCA) forbids the use of only Army or Air Force personnel in non-military law enforcement activities, Naval Criminal Investigative Service (NCIS) acts as agents of the Navy and is bound by the provisions of the PCA. 10 U.S.C.A. S 375. | Is the Naval Criminal Investigative Service (NCIS) bound by the provisions of the PCA? | 008960.docx | LEGALEASE-00133704-LEGALEASE-00133705 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 11936 | Sargisson v. United States, 12 Cl. Ct. 539 | 34+3(1) | Heisig, 719 F.2d at 1156; Clayton v. United States, 225 Ct.Cl. 593, 595 (1980); Sanders v. United States, 219 Ct.Cl. 285, 298, 594 F.2d 804, 813 (1979); Skinner v. United States, 219 Ct.Cl. 322, 329, 594 F.2d 824, 829 (1979). The evidence profferred to show a decision is arbitrary or unsupported must be clear and convincing. See Finn v. United States, 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977). | Evidence proffered to federal court to show military decision to be arbitrary or unsupported must be clear and convincing. | Should the evidence proffered to a federal court be clear and convincing to show a decision to be arbitrary or unsupported? | 008975.docx | LEGALEASE-00133734-LEGALEASE-00133735 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 11937 | State v. Lopez, 522 So. 2d 997 | 63+1(1) | In considering a Rule 3.190(c)(4) motion, the court must construe the facts in the light most favorable to the state. State v. Horton, 442 So.2d 408 (Fla. 2d DCA 1983); State v. McCray, 387 So.2d 559 (Fla. 2d DCA 1980). We agree with the state that the bribery statute prohibits any payment intended to influence the performance of any act by a public servant. The statute is violated even when a person pays for the doing of an act that the public servant is legally bound to do. State v. Saad, 429 So.2d 757 (Fla. 3d DCA 1983).Here, at the very least, Lopez intended to influence Ramirez's work habits. He wanted Ramirez to cooperate by appearing promptly to inspect and, perhaps, to wait while a code violation was corrected instead of rejecting the job and reinspecting at a later date. | Bribery statute prohibits any payment intended to influence performance of any act by public servant, even if person pays for doing of act the public servant is legally bound to do. West's F.S.A. S 838.015(1). | Can a defendant be convicted of bribery if he pays a public official to do something the official was legally obligated to do? | 011293.docx | LEGALEASE-00134532-LEGALEASE-00134533 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11938 | People v. Giardino, 82 Cal. App. 4th 454 | 352H+62(1) | By itself, the existence of actual consent is not sufficient to establish a defense to a charge of rape. That the supposed victim actually consented to sexual intercourse disproves rape only if he or she had "sufficient capacity" to give that consent. (See People v. Mayberry (1975) 15 Cal.3d 143, 154, 125 Cal.Rptr. 745, 542 P.2d 1337; 2 Witkin & Epstein, Cal.Criminal Law (2d ed.1988) " 774, p. 873.) For example, if the victim is so unsound of mind that he or she is incapable of giving legal consent, the fact that he or she may have given actual consent does not prevent a conviction of rape. (People v. Griffin (1897) 117 Cal. 583, 585"587, 49 P. 711, overruled on others grounds by People v. Hernandez (1964) 61 Cal.2d 529, 536, 39 Cal.Rptr. 361, 393 P.2d 673.) Hence, the consent defense fails if the victim either did not actually consent or lacked the capacity to give legally cognizable consent | By itself, the existence of actual consent is not sufficient to establish a defense to a charge of rape, because the supposed victim's actual consent to sexual intercourse disproves rape only if he or she had sufficient capacity to give that consent. West's Ann.Cal.Penal Code S 261. | Is a victims consent a defense to rape? | 043007.docx | LEGALEASE-00134756-LEGALEASE-00134757 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 11939 | Hungerford v. Greate Bay Casino Corp., 213 N.J. Super. 398 | 307A+483 | In addition, through his letter of June 12th and paragraph 2 of his complaint plaintiff had already notified Greate Bay before the requests for admissions were made that in his opinion the $17 per share price was not fair and reasonable. Therefore, the only possible purpose of requesting an admission by plaintiff contrary to his previously stated opinion was the hope that he would not answer and that his failure to answer could be used to seek judgment against him. This is a patently improper use of a request for admissions. The purpose of requests for admissions is to streamline litigation by "weeding out items of fact and proof over which there is no dispute, but which are often difficult and expensive to establish by competent evidence, and thereby expedite the trial, diminish its cost, and focus the attention of the parties upon the matters in genuine controversy." Klimowich v. Klimowich, supra, 86 N.J.Super. at 452, 207 A.2d 200, quoting Hunter v. Erie R.R. Co., 43 N.J.Super. 226, 231, 128 A.2d 304 (Law Div.1956). Requests for admissions should not be used as a tactical device to trap unwary pro se litigants. | Requests for admissions may not be used as tactical device to trap unwary pro se litigants. | May requests for admissions not be used as a tactical device to trap unwary pro se litigants? | Pretrial Procedure - Memo # 3749 - C - SHB.docx | ROSS-003291012-ROSS-003291013 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 11940 | Jones v. Woods, 158 Ga. App. 391 | 307A+621 | Where a complaint does not set forth facts upon which the court's venue depends, as required by Code Ann. s 81A-108(a)(1), it is subject to dismissal. See Chancey v. Hancock, 225 Ga. 715, 716, 171 S.E.2d 302 (1969); Campbell v. Jim Walter Homes, Inc., 140 Ga.App. 435, 231 S.E.2d 450 (1976); Morgan v. Berry, 152 Ga.App. 623, 263 S.E.2d 508 (1979); Fosgate v. Amer. Mut. Liab. Ins. Co., 154 Ga.App. 510, 268 S.E.2d 780 (1980). The defendants had no burden of proving that venue was improper, and the trial court was accordingly correct in granting the motion to set aside. | Where a complaint does not set forth facts upon which court's venue depends, it is subject to dismissal. Code, S 81A-108(a)(1). | "Where the complaint fails to set forth facts establishing venue, is it subject to dismissal?" | 033576.docx | LEGALEASE-00143723-LEGALEASE-00143724 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 11941 | United States v. Bell, 476 F.2d 1046 | 34+20.8(10) | Furthermore, and more importantly, it is well established that the one-hundred-twenty (120) day limitation on postponements under Section 1632.2 does not apply to a registrant who has failed to appear for and submit to induction. United States v. Brunner, 457 F. 2d 1301, 1302 (9th Cir. 1972); United States v. White, 447 F.2d 1124, 1126 (9th Cir. 1971), cert. denied 404 U.S. 1049, 92 S.Ct. 714, 30 L.Ed.2d 740 (1972). We believe this rule to be particularly applicable where, as in the case at bar, the delay in the induction was caused by the registrant and for his own benefit. | Limitation of 120 days on postponements of induction orders does not apply to a registrant who has failed to appear for and submit to induction. Military Selective Service Act, S 12, 50 U.S.C.A. App. S 462. | Does the one-hundred-twenty (120) day limitation apply to a registrant who has failed to appear for and submit to induction? | 008740.docx | LEGALEASE-00147996-LEGALEASE-00147997 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11942 | Eisler v. United States, 170 F.2d 273 | 34+20.4(2) | Although he is an alien, appellant stood before the Committee in much the same position as does any citizen of the United States. Once an alien lawfully enters and resides in this country he becomes invested with the rights, except those incidental to citizenship, guaranteed by the Constitution to all people within our borders. See Mr. Justice Murphy, concurring, Bridges v. Wixon, 1945, 326 U.S. 135, 161, 65 S.Ct. 1443, 89 L.Ed. 2103. Correlatively, an alien resident owes a temporary allegiance to the Government of the United States, and he assumes duties and obligations which do not differ materially from those of native-born or naturalized citizens; he is bound to obey all the laws of the country, not immediately relating to citizenship, and is equally amenable with citizens for any infraction of those laws. Carlisle v. United States, 1872, 16 Wall. 147, 21 L.Ed. 426; Leonhard v. Eley, 10 Cir., 1945, 151 F.2d 409, and cases cited therein. The alien resident may be required to make contribution to the support of our Government; in Leonhard v. Eley, supra, and in United States v. Lamothe, 2 Cir., 1945, 152 F.2d 340, it was held that an alien may lawfully be inducted for national defense service in time of war. To continue exemplification of the general lack of discrimination against aliens, it has been held that an alien enemy under criminal prosecution in a United States civil court must be afforded the usual constitutional safeguards. Shinyu Noro v. United States, 5 Cir., 1945, 148 F.2d 696. | Alien resident may be required to contribute to support of United States, and may lawfully be inducted for national defense service in time of war. | Can an alien be called or inducted for the national defense of the country? | 007025.docx | LEGALEASE-00149207-LEGALEASE-00149208 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 11943 | Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242 | 308+99 | One way for State Farm to do so would be by demonstrating that Betancourt had an agency relationship with Osorio that permitted her to consent to Osorio receiving the calls, and by showing that she exercised that authority in this case by giving No. 8626 to State Farm in connection with her debt. "It is settled law that the acts of an agent, within the scope of his real or apparent authority, bind the principal." Peninsula Land Co. v. Howard, 149 Fla. 772, 6 So.2d 384, 388 (1941). Agency can be viewed as having some overlap with Gutierrez's notion of "common authority" but, unlike the "common-authority" concept connected with criminal law search and seizures, agency law developed in a civil context to handle commercial and tort disputes more analogous to the TCPA. | Acts of an agent, within the scope of his real or apparent authority, bind the principal under Florida law. | "Do the acts of an agent, within the scope of his real or apparent authority, bind the principal?" | 041299.docx | LEGALEASE-00153121-LEGALEASE-00153122 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11944 | United States v. Turner, 32 U.S. 132 | 181+5 | Upon examining the English authorities upon the subject of forgery and the utterance of counterfeit paper, they appear to us fully to justify and support a similar doctrine. It is, for instance, clearly settled, that the making of a false instrument, which is the subject of forgery, with a fraudulent intent, although in the name of a non-existing person, is as much a forgery as if it had been made in the name of a person known to exist, and to whom credit was due. 2 Russell on Crimes, b. 4, ch. 32, " 1 (2d edition), p. 327-33, and the cases there cited; Ibid. 470, 474; 2 East P. C. ch. 19, " 38, p. 940. Nor it is material, whether a forged instrument be made in such a manner, as that if, in truth, it were such as it is counterfeited for, it would be of validity or not. This was decided as long ago as Deakins's Case, 1 Sid. 142; 1 Hawk. P. C. ch. 70, " 7; 2 East P. C. ch. 19, " 43, p. 948. Nor is it any answer to the charge of forgery, that the instrument is not available, by reason of some collateral objection not appearing upon the face of it. 2 Russell on Crimes, b. 4, ch. 32, " 1 (2d edition), p. 337-41; Ibid. 470-74. | The making of a false instrument which is the subject of forgery with a fraudulent intent, although in the name of a nonexisting person, constitutes "forgery" as much as if it had been made in the name of a person known to exist and to whom credit was due. | Will a note be deemed a forgery if it is made with intent to defraud? | 009007.docx | LEGALEASE-00154717-LEGALEASE-00154718 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11945 | Chicago Title & Tr. Co. v. Tilton, 256 Ill. 97 | 150+367 | On the dismissal of a suit the parties are out of court, and all further proceedings are unauthorized until the judgment of dismissal is vacated and the cause reinstated. Goodrich v. Huntington, 11 Ill. 646; Guyer v. Wilson, 139 Ill. 392, 28 N. E. 738; 6 Ency. of Pl. & Pr. 978; 14 Cyc. 458. The order of dismissal in the consolidated cause stated that it could be set aside, on good cause shown, on or before June 30, 1903. To comply therewith an order vacating and setting aside the dismissal order must have been entered in the consolidated case under its proper title and number, and not under the title and number of the mechanic's lien suit. | On the dismissal of a suit the parties are out of court, and all further proceedings are unauthorized until the judgment of dismissal is vacated, and the cause reinstated. | "Upon dismissal of suit, are parties out of court and are no further proceedings authorized until judgment of dismissal is vacated and cause reinstated?" | 025322.docx | LEGALEASE-00157052-LEGALEASE-00157053 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11946 | Oldham v. State, 5 S.W.3d 840 | 181+44(1) | The "intent" to defraud or harm may be established by circumstantial evidence. Williams, 688 S.W.2d at 488. Proof of intent to defraud is also derivative of other elements. In the case of forgery, the culpable mental state requires proof of knowledge that the check is forged. Id. If the State proves that an actor has knowledge that a particular check is forged, proof of intent to defraud is inferred. Id. Further, if there is sufficient evidence to establish an actor's theft of the instrument ultimately forged, the evidence is deemed sufficient to show knowledge of the forgery, and therefore sufficient to show an intent to defraud or harm. Wallace v. State, 813 S.W.2d 748, 751 (Tex.App.-Houston [1st Dist.] 1991, no pet.). | Culpable mental state for offense of forgery requires proof of knowledge that instrument is forged, and if state proves that actor has knowledge that particular instrument is forged, proof of intent to defraud is inferred. V.T.C.A., Penal Code S 32.21(a). | "In the case of forgery, what does culpable mental state require? " | 018477.docx | LEGALEASE-00162035-LEGALEASE-00162036 | Order, SA, Sub | 0.65 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11947 | United States v. Ruiz, 59 F.3d 1151 | 110+772(6) | A criminal defendant has the right to have the jury instructed on her theory of defense, separate and apart from instructions given on the elements of the charged offense. United States v. Opdahl, 930 F.2d 1530 (11th Cir.1991); United States v. Lively, 803 F.2d 1124 (11th Cir.1986). A trial court may not refuse to charge the jury on a specific defense theory where the proposed instruction presents a valid defense and where there has been some evidence adduced at trial relevant to that defense. United States v. Middleton, 690 F.2d 820, 826 (11th Cir.1982), cert. denied, 460 U.S. 1051, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983). The trial court is not free to determine the existence of such a defense as a matter of law. Id. The threshold burden is extremely low: "[T]he defendant ... is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence." Perez v. United States, 297 F.2d 12, 15-16 (5th Cir.1961) (emphasis added).9 In deciding whether a defendant has met her burden, the court is obliged to view the evidence in the light most favorable to the accused. United States v. Williams, 728 F.2d 1402, 1404 (11th Cir.1984). | Criminal defendant has right to have jury instructed on her theory of defense, separate and apart from instructions given on elements of charged offense. | Does a defendant have the right to a theory of defense that explains their intent to be included in bribery jury instruction? | 012584.docx | LEGALEASE-00166967-LEGALEASE-00166968 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 11948 | In re Grubbs Const. Co., 319 B.R. 698 | 349A+10 | Thus, Revised U.C.C. 1"201(37) shifts the focus from "the intent of the parties" to the "economic realities" of a given transaction in determining whether the transaction is a true lease or a disguised security arrangement. Hanes v. Vital Products Co. (In re Vital Products Company), 210 B.R. 109, 112 (Bankr.N.D.Ohio 1997); In re Our Secret, Ltd., 282 B.R. 697, 702 (Bankr.D.N.M.2002). The Economic Realities Test as set forth in White & Summers, 1980 ed., " 22"3 at 881, states that: "If at the end of the term [of the lease], the only economically sensible course for the lessee is to exercise the option to purchase the property, then the agreement is a security agreement." QDS, 292 B.R. at 325 (citing Steele v. Gebetsberger (In re Fashion Optical, Ltd.), 653 F.2d 1385, 1389 (10th Cir.1981))(in turn, quoting Percival Constr. Co. v. Miller & Miller Auctioneers, Inc., 387 F.Supp. 882, 885 (W.D.Okla.1973), aff'd, in part, rev'd in part, 532 F.2d 166 (10th Cir.1976)). | Revised section of the Uniform Commercial Code (UCC) setting forth the process for determining whether a transaction creates a disguised security interest or a true lease shifts the focus from "the intent of the parties" to the "economic realities" of a given transaction. U.C.C. S 1-201(37). | Is the focus of the new objective test on the agreement's economic realities? | 042881.docx | LEGALEASE-00167085-LEGALEASE-00167086 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 11949 | Farrell v. Greater Houston Transp. Co., 908 S.W.2d 1 | 307A+674 | We agree that Yellow Cab lacked standing to request such relief. Hawkins v. Twin Montana, Inc., 810 S.W.2d 441, 446 (Tex.App."Fort Worth 1991, no writ). However, the trial judge did more than merely strike service upon Ogunsakin. The order recites that service upon "Felix Akinola Agunsakin [sic] is hereby STRICKEN and Plaintiffs cause of action against Felix Akinola Agunsakin [sic] is dismissed for failure to prosecute." The trial court has inherent powers to dismiss a suit for want of prosecution and may do so upon its own motion. State v. Rotello, 671 S.W.2d 507, 508"09 (Tex.1984); see Neese v. Wray, 893 S.W.2d 169, 170 (Tex.App."Houston [1st Dist.] 1995, no writ) (when a court may reinstate a case on its own motion, it has no less power to do so just because a defective motion to reinstate has been filed). Therefore, the language striking service of citation is mere surplusage. | Trial court has inherent powers to dismiss suit for want of prosecution and may do so on its own motion. | Does the trial court have inherent powers to dismiss suit for want of prosecution and do so on its own motion? | Pretrial Procedure - Memo 11769 - C - BP_65637.docx | ROSS-003280182-ROSS-003280183 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11950 | Rabos v. R & R Bagels & Bakery, 100 A.D.3d 849 | 307A+695 | Turning to those branches of the plaintiff's motion which were pursuant to CPLR 3211(e) for leave to replead the second and fifth causes of action, "the standard to be applied on a motion for leave to replead pursuant to CPLR 3211(e) is consistent with the standard governing motions for leave to amend pursuant to CPLR 3025" (Janssen v. Incorporated Vil. of Rockville Ctr., 59 A.D.3d 15, 27, 869 N.Y.S.2d 572). "Namely, motions for leave to amend pleadings should be freely granted absent prejudice or surprise to the opposing party, unless the proposed amendment is devoid of merit or palpably insufficient" (id.). Here, since the proposed amendment to the second cause of action was neither palpably insufficient nor patently devoid of merit, and there was no evidence that the amendment would prejudice or surprise the Rakhminov defendants, the Supreme Court should have granted that branch of the plaintiff's motion which was pursuant to CPLR 3211(e) for leave to replead the second cause of action (see Fusca v. A & S Constr., LLC, 84 A.D.3d 1155, 1157"1158, 924 N.Y.S.2d 463). However, since the proposed amendment to the fifth cause of action was palpably insufficient and patently devoid of merit, the Supreme Court properly denied that branch of the plaintiff's motion which was pursuant to CPLR 3211(e) for leave to replead the fifth cause of action (see Scott v. Fields, 85 A.D.3d 756, 759, 925 N.Y.S.2d 135). | Standard on a motion for leave to replead, to defeat a motion to dismiss, is consistent with the standard governing motions for leave to amend, i.e., that motions for leave to amend pleadings should be freely granted absent prejudice or surprise to the opposing party, unless the proposed amendment is devoid of merit or palpably insufficient. McKinney's CPLR 3025, 3211(e). | "Is the standard on a motion for leave to replead, to defeat a motion to dismiss consistent with the standard governing motions for leave to amend? " | Pretrial Procedure - Memo 12018 - C - TM_67051.docx | ROSS-003281001-ROSS-003281002 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11951 | United States v. Lue, 134 F.3d 79 | 24+120 | This is not to say that foreign nationals on our soil are without any protection from federal governmental action under the equal protection component of the Fifth Amendment. They do enjoy such protection; however, it is constrained in light of the responsibility of the political branches to regulate the relationship between the United States and noncitizens. See, e.g., United States v. Duggan, 743 F.2d 59, 76 (2d Cir.1984); see also Plyler v. Doe, 457 U.S. 202, 219 n. 19, 102 S.Ct. 2382, 2396 n. 19, 72 L.Ed.2d 786 (1982). "The fact that all persons, aliens and citizens alike, are protected by the [Fifth Amendment's] Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship...." Mathews, 426 U.S. at 78, 96 S.Ct. at 1890. Rather, as the Court in Mathews acknowledged, an array of constitutional and statutory provisions rests on the assumption that there are legitimate distinctions between citizens and aliens that "may justify attributes and benefits for one class not accorded the other." Id. In short, "[t]he fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is "invidious." " Id. at 80, 96 S.Ct. at 1891. | Although foreign nationals on American soil are protected from federal governmental action under equal protection component of Fifth Amendment, such protection is constrained in light of responsibility of political branches to regulate relationship between United States and noncitizens. U.S.C.A. Const.Amend. 5. | Is it the responsibility of the political branches to regulate the relationship between the United States and noncitizens? | "Aliens, Immigration and Citizenship - Memo 68 - RK_64802.docx" | ROSS-003281052-ROSS-003281053 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11952 | United States v. Frayer, 9 F.3d 1367 | 135H+132.1 | The double jeopardy bar applies only to prosecutions or convictions which cannot survive the "same elements" test. United States v. Dixon, 509 U.S. 688, ----, 113 S.Ct. 2849, 2859, 125 L.Ed.2d 556 (1993). The same elements test inquires whether each offense contains an element not contained in the other; if so, they are not the same offense and the Double Jeopardy Clause does not bar additional punishment and subsequent prosecution. Id. Perez-Murguia was convicted in Texas for possession of cocaine with intent to distribute it, in violation of 21 U.S.C. " 841(a)(1). The conviction at issue here is for conspiracy to distribute cocaine in violation of 21 U.S.C. " 846. Each of the offenses involve different elements. | Double jeopardy bar applies only to prosecutions or convictions that cannot survive "same elements" test, which inquires whether each offense contains element not contained in the other; if so, they are not same offense and double jeopardy clause does not bar additional punishment and subsequent prosecution. U.S.C.A. Const.Amends. 5, 14. | Does double jeopardy bar a subsequent prosecution? | Double Jeopardy - Memo 745 - C - VP_68058.docx | ROSS-003282079-ROSS-003282080 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 11953 | Chanslor v. State, 697 S.W.2d 393 | 203+762 | What the appellant overlooks is that aiding a suicide is a separate offense which is statutorily defined in our Penal Code. See V.T.C.A., Penal Code Sec. 22.08. It is not a defense to the crime of solicitation to commit murder or any other offense in the Penal Code. A defense by its very nature, if believed, negates the culpability of the accused. Merely being guilty of aiding suicide without more does not negate one's culpability as to anything. | Aiding a suicide is separate offense and is not defense to the crime of solicitation to commit murder. V.T.C.A., Penal Code SS 15.03, 22.08. | Is aiding a suicide a defense to the crime of solicitation to commit murder? | Suicide - Memo 26 - AKA.docx | ROSS-003283578-ROSS-003283579 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 11954 | Smith v. Lutz, 149 S.W.3d 752 | 148+2.1 | 19 Whether particular facts constitute a taking is a question of law. See Mayhew, 964 S.W.2d at 936. The supreme court has outlined a three-part test to identify a constitutional taking: (1) the State intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. Little"Tex, 39 S.W.3d at 598; Steele, 603 S.W.2d at 788"92. To meet the first prong, the State must have the requisite intent to be acting under its eminent domain powers, rather than merely withholding property or money in a contract dispute. Little"Tex, 39 S.W.3d at 598"99; Green Int'l, 877 S.W.2d at 434. "The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers." Little"Tex, 39 S.W.3d at 599; see Green Int'l, 877 S.W.2d at 434. The Little"Tex court concluded that because that dispute was a disagreement about the contractor's *761 right to additional payments under the contract, the State was merely acting under its colorable contractual rights, not taking the contractor's property under eminent domain. Little"Tex, 39 S.W.3d at 599. | The three-part test to identify a constitutional taking requires: (1) the State intentionally performed certain acts, (2) that resulted in a taking of property, (3) for public use. Vernon's Ann.Texas Const. Art. 1, S 17. | What is the three-part test for identifying a constitutional taking? | Eminent Domain - Memo 151 - RK.docx | ROSS-003283923-ROSS-003283924 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11955 | Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362 | 25T+112 | The Supreme Court has stated that the Federal Arbitration Act (FAA) "is a congressional declaration of a liberal federal policy favoring arbitration agreements," and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). But it is also true that "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." Mastrobuono v. Shearson Lehman Hutton, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). "Arbitration under the Act is a matter of consent, not coercion." Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). "[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (emphasis added). Thus, though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute. | Although the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute. 9 U.S.C.A. S 1 et seq. | Does the law require agreement between the parties if the presumption in favor of arbitration is strong? | Alternative Dispute Resolution - Memo 86 - AKA.docx | ROSS-003284808-ROSS-003284810 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11956 | Teamsters Pension Trust Fund of Philadelphia v. Brigadier Leasing Associates, 880 F.Supp. 388 | 289+950 | The Court agrees with defendants and the Connors court that a partnership does not incur MPPAA withdrawal liability triggered by the withdrawal of another organization where the withdrawal occurs after the dissolution of the partnership and where the partnership's business after the dissolution date is limited to winding up the affairs of the partnership. Under the Pennsylvania Uniform Partnership Act, a dissolved partnership "ceases ... in the carrying on, as distinguished from the winding up, of the business." 59 Pa.C.S. " 351 reenacted at 15 Pa.C.S.A. " 8351; Uniform Partnership Act " 29. Thus, the sole business of a dissolved partnership is the winding up of its affairs. A dissolved partnership remains liable for its preexisting debts, but after the dissolution it generally does not incur liability unrelated to the winding up process. See North Star Coal Co. v. Eddy, 442 Pa. 583, 277 A.2d 154, 156 (1971) ("In general a dissolution operates only with respect to future transactions....") (citation omitted); Connors, 699 F.Supp. at 4. Applying these principles of partnership law, the Court concludes that a dissolved partnership is not a trade or business for the purposes of the ERISA definition of a controlled group. Thus a partnership that has dissolved and thereby ceased to carry on business other than the winding up of its affairs and that is not itself the contributing employer is not liable under MPPAA as a member of a controlled group. | Under Pennsylvania law, a dissolved partnership remains liable for its preexisting debts, but after the dissolution it generally does not incur liability unrelated to winding up process. | Does a partnership remain liable for preexisting debts upon dissolution? | Partnership - Memo 443 - RK.docx | ROSS-003289006-ROSS-003289007 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 11957 | Ex parte Bole, 103 So. 3d 40 | 307A+554 | "When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction." State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). Under such a circumstance, the trial court has "no alternative but to dismiss the action." 740 So.2d at 1029." | When a party who lacks standing purports to commence an action, the trial court has no alternative but to dismiss the action. | "When a party who lacks standing purports to commence an action, does the trial court have no alternative but to dismiss the action?" | Pretrial Procedure - Memo # 6828 - C - KG.docx | ROSS-003289870-ROSS-003289871 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11958 | Pickett v. Bank of Ellijay, 182 Ga. 540 | 83E+426 | The Civil Code of 1910, " 5796, provides that "blank endorsements of negotiable paper may always be explained between the parties themselves, or those taking with notice of dishonor or of the actual facts of such indorsements." This provision appeared for the first time in the Code of 1863, and was embodied in each of the subsequent Codes. Following this section are many decisions of this court applying its provisions. Hardy v. White, 60 Ga. 454; Neal v. Wilson, 79 Ga. 736, 5 S.E. 54; James v. Calder, 7 Ga.App. 707, 67 S.E. 1125; Taff v. Larey, 29 Ga.App. 631, 116 S.E. 866; Seymour v. Bank of Thomasville, 157 Ga. 99, 121 S.E. 578; Sanders v. Ayers, 155 Ga. 630, 117 S.E. 651. In 1924 the General Assembly passed the Negotiable Instruments Law, which appears in the Code of 1933. Ga.Laws 1924, pp. 126, 139. Section 63 of that act (Code 1933, " 14-604) is as follows: "A person placing his signature upon an instrument other than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." | Statute providing that blank indorsements of negotiable paper may always be explained between parties themselves, or those taking with notice of dishonor or of actual facts of indorsements, and Negotiable Instruments Act provision that person placing signature on instrument other than as maker, drawer, or acceptor is deemed to be indorser, unless he clearly indicates contrary intention, must be construed in pari materia so as to make parol evidence admissible to explain blank indorsement as between parties themselves, or those taking with notice of dishonor or of actual facts but not as between third persons or those taking without notice (Code 1933, SS 14-604, 14-605, 38-114, 38-509). | How can blank endorsements of negotiable paper be explained? | Bills and Notes - Memo 221 - PR.docx | ROSS-003291561-ROSS-003291562 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 11959 | Stiles v. Farrar, 18 Vt. 444 | 83E+484 | The county court having adjudged the defendant's rejoinder insufficient and rendered judgment for the plaintiff, the case is brought to this court for revision; and the question raised by the bill of exceptions is, whether the rejoinder is sufficient. The note declared upon is not negotiable, yet the payee's interest in it might well be assigned, and, upon notice of the assignment to the maker, the equitable interest of the assignee would be protected at law. This principle is too well settled to admit of controversy. It is no longer an open question. Newell v. Adams, 1 D. Ch. 346. Strong v. Strong, 2 Aik. 373. 12 Johns. 344. 15 Johns. 406. 16 Johns. 51. | The interest of the payee in a note not negotiable may be assigned; and if assigned, and notice thereof is given to the maker, and an action is commenced upon the note in the name of the payee for the benefit of the assignee, the equitable interest of the assignee will be protected at law. This is not now an open question. | Is the equitable interest of the assignee protected by law upon his giving proper notice? | Bills and Notes - Memo 1259 - RK_62548.docx | ROSS-003292517 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 11960 | State Farm Mut. Auto. Ins. Co. v. Du Page Cty., 2011 IL App (2d) 100580 | 366+1 | Equitable subrogation is a remedial device that prevents unjust enrichment. American Family Mutual Insurance Co. v. Northern Heritage Builders, L.L.C., 404 Ill.App.3d 584, 588, 344 Ill.Dec. 617, 937 N.E.2d 323 (2010). The right of equitable subrogation arises when a party pays a debt for which another is primarily liable and that in equity and good conscience should have been discharged by the latter. See North American Insurance Co. v. Kemper National Insurance Co., 325 Ill.App.3d 477, 481, 259 Ill.Dec. 448, 758 N.E.2d 856 (2001). Like subrogation in general, it is a device where a party who pays a debt or claim of another succeeds to the rights of the other with respect to the debt or claim the party paid. See North American Insurance Co., 325 Ill.App.3d at 481, 259 Ill.Dec. 448, 758 N.E.2d 856. | The right of equitable subrogation arises when a party pays a debt for which another is primarily liable and that in equity and good conscience should have been discharged by the latter. | When does the right of equitable subrogation arise? | Subrogation - Memo 271 - ANG C.docx | ROSS-003297226-ROSS-003297228 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 11961 | Love Terminal Partners v. United States, 126 Fed. Cl. 389 | 148+2.1 | Unlike a categorical taking, a noncategorical taking "fall[s] short of eliminating all economically beneficial use of property." Consumers Energy Co. v. United States, 84 Fed.Cl. 152, 156 (2008) (citing Palazzolo, 533 U.S. at 617, 121 S.Ct. 2448). A noncategorical taking is the "consequence of a regulatory imposition that prohibits or restricts only some of the uses that would otherwise be available to the property owner, but leaves the owner with substantial viable economic use ..." Palm Beach Isles Assocs., 231 F.3d at 1357. In determining whether a noncategorical taking has occurred, courts look to the factors identified by the Supreme Court in Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978):In engaging in these essentially ad hoc, factual inquiries, the Court's decisions have identified several factors that have particular significance. The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. See Goldblatt v. Hempstead, [369 U.S. 590, 594 [82 S.Ct. 987, 8 L.Ed.2d 130] (1962) ]. So, too, is the character of the governmental action. A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government, see, e.g., United States v. Causby, 328 U.S. 256, [66 S.Ct. 1062, 90 L.Ed. 1206] (1946), than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good. | Unlike a categorical taking, a non-categorical regulatory taking falls short of eliminating all economically beneficial use of property. U.S. Const. Amend. 5. | Does a non-categorical takings fall short of eliminating all economically beneficial use of property? | Eminent Domain - Memo 170 - GP.docx | ROSS-003297290-ROSS-003297292 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11962 | Am. Sterling Bank v. Johnny Mgmt. LV, 126 Nev. 423 | 366+1 | When the material facts of a case are undisputed, the effects of the application of a legal doctrine to those facts are a question of law that this court reviews de novo. Banegas v. SIIS, 117 Nev. 222, 224, 19 P.3d 245, 247 (2001). This same standard applies in the context of an appellate court's review of equitable subrogation. Hicks v. Londre, 125 P.3d 452, 455 (Colo.2005). This standard allows an appellate court "to independently review the question of whether the doctrine of equitable subrogation applies to the circumstances present in [a particular] case." Id. However, equitable subrogation is also an equitable remedy that requires the court to balance the equities based on the facts and circumstances of each particular case. Murray v. Cadle Co., 257 S.W.3d 291, 300 (Tex.App.2008). Subrogation's purpose is to "grant an equitable result between the parties." 2 Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law " 10.6, at 26 (5th ed.2007). This court has expressly stated that district courts have full discretion to fashion and grant equitable remedies, Bedore v. Familian, 122 Nev. 5, 11"12 & n. 21, 125 P.3d 1168, 1172 & n. 21 (2006), and we will review a district court's decision granting or denying an equitable remedy for abuse of discretion. See Douglas Disposal Inc. v. Wee Haul, LLC., 123 Nev. 552, 557, 170 P.3d 508, 512 (2007) (reviewing a request for injunctive relief under an abuse of discretion standard); Jacoby v. Jacoby, 100 P.3d 852, 855 (Wyo.2004) (noting that trial courts have broad discretion to grant equitable relief). " " "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." " " Nolan v. State, 122 Nev. 363, 376, 132 P.3d 564, 572 (2006) (quoting Crawford v. State, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (quoting Jackson v. State, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001))). | Equitable subrogation is an equitable remedy that requires a court to balance the equities based on the facts and circumstances of each particular case. | "As with any equitable remedy, should the court consider the facts and circumstances of each particular case?" | Subrogation - Memo 198 - RM C.docx | ROSS-003298499-ROSS-003298501 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 11963 | Fairholme Funds v. United States, 132 Fed. Cl. 49 | 27+1 | Turning to the merits of Mr. Sammons's motion for leave to file an amicus curiae brief, the court notes that "[t]here is no right to file an amicus brief in this court; the decision whether to allow participation by amicus curiae is left entirely to the discretion of the court." Fluor Corp. & Affiliates v. United States, 35 Fed.Cl. 284, 285 (1996). In deciding whether to allow such participation, judges consider whether "[m]ovants might have a perspective that would be helpful to the court or otherwise provide information and argument that would illuminate the issues in this case." Land of Lincoln Mutual Health Ins. Co. v. United States, No. 16-744C, 2016 WL 5900196, at *1 (Fed. Cl. Oct. 7, 2016). | There is no right to file an amicus brief in the Court of Federal Claims; the decision whether to allow participation by amici curiae is left entirely to the discretion of the court. | Is filing an amicus curiae brief considered a right? | Amicus Curiae - Memo 2 - JS.docx | ROSS-003298554-ROSS-003298555 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 11964 | Muller Fuel Oil Co. v. Ins. Co. of N. Am., 95 N.J. Super. 564 | 249+15 | We are referred to no case exactly in point. The tort of malicious prosecution is Sui generis. The tortious act is committed ordinarily by the filing of a criminal complaint with malice and without probable cause. "The Essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by a malicious motive in making the charge." Earl v. Winne, 14 N.J. 119, 134, 101 A.2d 535, 543 (1953). Often, as here, the accused is arrested, required to post bail to secure his liberty pending trial, and his reputation is adversely affected. Thus, damage flows immediately from the tortious act. But the accused may not sue for any damage sustained unless and until the criminal proceeding has terminated in his favor. Ibid. In addition to the proof of the termination in his favor, "the plaintiff must adduce affirmative proof * * * tending to show the falsity of or want of probable cause for the charge laid against him, or that the defendant did not honestly believe in his guilt." Id., at p. 135, 101 A.2d, at p. 543. Thus, although a favorable termination of the criminal proceeding is a condition precedent to institution of the action, the "essence" of the tort is the wrongful conduct in making the criminal charge. Since a suit for malicious prosecution must await a favorable termination of the criminal proceeding, the statute of limitations does not begin until such termination. Lowe v. Wartman, 47 N.J.L. 413, 1 A. 489 (Sup.Ct.1885); MacLaughlin v. Lehigh Valley R.R. Co., 93 N.J.L. 263, 108 A. 309 (Sup.Ct.1919); Kearney v. Mallon Suburban Motors, Inc., 23 N.J.Misc. 83, 41 A.2d 274 (Cir.Ct.1945), affirmed 135 N.J.L. 457, 52 A.2d 692 (E. & A.1947); Mayflower Industries v. Thor Corp., 15 N.J.Super. 139, 148, 83 A.2d 246 (Ch.Div.1951), affirmed 9 N.J. 605, 89 A.2d 242 (1952). | The essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by a malicious motive in making the charge. | What is the essence of a cause of action for malicious prosecution? | Malicious Prosecution - Memo 22 - JS.docx | ROSS-003298817-ROSS-003298818 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 11965 | DuBray v. Warner Bros. Records, 236 A.D.2d 312 | 307A+501 | Plaintiffs correctly state that courts are generally reluctant to compel a party to litigate and, in the exercise of discretion, will grant a motion for discontinuance absent compelling circumstances or particular prejudice to defendants (Tucker v. Tucker, 55 N.Y.2d 378, 449 N.Y.S.2d 683, 434 N.E.2d 1050; see also, Matter of Baby Boy C., 84 N.Y.2d 91, 99, 615 N.Y.S.2d 318, 638 N.E.2d 963). It is also true, however, that a motion for discontinuance should not be used to circumvent an order of the court (Schultz v. Kobus, 15 A.D.2d 382, 384, 224 N.Y.S.2d 372), or to enable plaintiffs to "do indirectly what they are not permitted to do directly" (Katz v. Austin, 271 App.Div. 217, 218, 62 N.Y.S.2d 912, lv denied 271 App.Div. 773, 64 N.Y.S.2d 926; but see, De Laurentis v. Bercowitz, 27 A.D.2d 869, 277 N.Y.S.2d 728). This is precisely what plaintiffs appear to be doing in their admitted attempt to revive their claims under New York State law in the courts of another State. The courts of New York State have determined that New York law does not apply and that South Dakota law does; plaintiffs seek a second chance to persuade a South Dakota court to reach precisely the opposite conclusion. | Motion for discontinuance should not be used to circumvent order of court or to enable plaintiffs to do indirectly what they are not permitted to do directly. | Can motions for discontinuance be used to enable plaintiffs to do indirectly what they are not permitted to do directly? | Pretrial Procedure - Memo # 1092 - C - NE.docx | ROSS-003301100-ROSS-003301101 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11966 | People v. Beltran, 56 Cal. 4th 935 | 203+530 | Manslaughter is a lesser included offense of murder. (" 192; People v. Thomas (2012) 53 Cal.4th 771, 813, 137 Cal.Rptr.3d 533, 269 P.3d 1109.) The mens rea element required for murder is a state of mind constituting either express or implied malice. A person who kills without malice does not commit murder. Heat of passion is a mental state that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter. Heat of passion arises if, " "at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment." " (People v. Barton (1995) 12 Cal.4th 186, 201, 47 Cal.Rptr.2d 569, 906 P.2d 531.) Heat of passion, then, is a state of mind caused by legally sufficient provocation that causes a person to act, not out of rational thought but out of unconsidered reaction to the provocation. While some measure of thought is required to form either an intent to kill or a conscious disregard for human life, a person who acts without reflection in response to adequate provocation does not act with malice. | The mens rea element required for murder is a state of mind constituting either express or implied malice; a person who kills without malice does not commit murder. West's Ann.Cal.Penal Code SS 187, 188. | "Is the mens rea required for murder malice, expressed or implied? " | Homicide - Memo 179 - RK_66922.docx | ROSS-003308851-ROSS-003308852 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 11967 | Bank of Am., N.A. v. Ping, 879 N.E.2d 665 | 366+1 | Subrogation is an equitable remedy. Id. at 654. The purpose of subrogation is "to avoid an unearned windfall." Id. at 652"53. That is, subrogation should be used to prevent a junior lienholder from being elevated in priority at the expense of another lienholder. See id. Other equitable factors should also be considered by the trial court, including whether subrogation results in the absence of any prejudice to the interests of junior lienholders. Id. at 653. For example, subrogation is appropriate where a payor asserting that right is actually given a mortgage on the real estate, but in the absence of subrogation it would be subordinate to some intervening interest. See id. (quoting Restatement (Third) of Prop.: Mortgages " 7.6 cmt. e). Notably, however, "[a] volunteer or one charged with "culpable negligence" may not be entitled to equitable subrogation." Id. at 654. "Culpable negligence" focuses on the activity of the party asserting subrogation and "contemplates action or inaction which is more than mere inadvertence, mistake or ignorance." Id. (quoting Wilshire Servicing Corp. v. Timber Ridge P'ship, 743 N.E.2d 1173, 1178 (Ind.Ct.App.2001), trans. denied.) Ultimately, "[t]he key to subrogation is an equitable result" that depends on the "attending facts and circumstances of each case." Id. at 654"55. | Ultimately, the key to subrogation is an equitable result that depends on the attending facts and circumstances of each case. | Is the key to subrogation an equitable result that depends on the attending facts and circumstances of each case? | Subrogation - Memo # 410 - C - SA.docx | ROSS-003314570-ROSS-003314571 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 11968 | In re Hirsch Elec. Co., 461 B.R. 167 | 308+1 | Under New York law, an agency relationship can be either express or implied and can be established by the conduct of the parties, or by written or oral agreement. Agency can be found if it is expressly included in a contract between an owner and general contractor, or if the conduct of the parties implies an agency relationship. | Under New York law, agency relationship can be either express or implied and can be established by conduct of parties, or by written or oral agreement. | Can an agency relationship be implied by the conduct of parties? | Principal and Agent - Memo 438 - RK_63558.docx | ROSS-003319752-ROSS-003319753 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 11969 | Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638 | 366+1 | The doctrine of equitable subrogation is not created by a contract, but by the legal consequences of the acts and relationships of the parties. See Dantzler Lumber & Export Co. v. Columbia Cas. Co., 115 Fla. 541, 551, 156 So. 116, 120 (1934). Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. See Fowler v. Lee, 106 Fla. 712, 714"15, 143 So. 613, 614 (1932); Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n, 508 So.2d 1323, 1324"25 (Fla. 3d DCA 1987). As a result of equitable subrogation, the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the right and priorities of the original creditor. See Eastern Nat'l Bank, 508 So.2d at 1324. | Doctrine of equitable subrogation is not created by a contract, but by the legal consequences of the acts and relationships of the parties. | Is equitable or legal subrogation created by a contract or by the legal consequences of the acts and relationships of the parties? | Subrogation - Memo 350 - NE.docx | ROSS-003324676-ROSS-003324677 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 11970 | Essex v. Com., 228 Va. 273 | 203+656 | Malice, a requisite element for murder of any kind, is unnecessary in manslaughter cases and is the touchstone by which murder and manslaughter cases are distinguished. Moxley v. Commonwealth, 195 Va. 151, 157, 77 S.E.2d 389, 393 (1953). Malice may be either express or implied by conduct. Coleman v. Commonwealth, 184 Va. 197, 201, 35 S.E.2d 96, 97 (1945). Whether the defendant acted with malice is a question for the trier of fact. "Express malice is evidenced when "one person kills another with a sedate, deliberate mind, and formed design." .... Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation; ...." Pugh v. Commonwealth, 223 Va. 663, 668, 292 S.E.2d 339, 341 (1982) (emphasis added) (citation omitted). | Malice, a requisite element for murder of any kind, is unnecessary in manslaughter cases and is the touchstone by which murder and manslaughter cases are distinguished; malice may be either express or implied by conduct; whether defendant acted with malice is a question for the trier of fact. | Is implied or express malice required to consider a homicide as murder? | Homicide - Memo 98 - RK.docx | ROSS-003325536-ROSS-003325537 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11971 | All. for Wild Rockies v. Kruger, 950 F. Supp. 2d 1172 | 411+8 | The Forest Service adopted a site-specific amendment by exempting the Project from Standards 3 and 4(a) because it determined the Project would not prevent maintenance and improvement of elk habitat over time or preclude Montana Fish Wildlife & Parks from achieving its elk population objectives. FS: 52092-93. Forest plan amendments are permitted by statute and can modify the plan in any way if the Forest Supervisor determines the changes will be insignificant to the plan's overall objectives. 36 C.F.R. " 219.10(f) (2000)(If the change resulting from the amendment is determined not to be significant for the purposes of the planning process, the Forest Supervisor may implement the amendment following appropriate public notification and satisfactory completion of NEPA procedures); 16 U.S.C. " 1604(f)(4).The 1982 regulations provide, in relevant part, "[i]f the change resulting from the amendment is determined not to be significant for the purposes of theplanningprocess, the Forest Supervisor may implement the amendment following appropriate public notification and satisfactory completion of NEPA procedures." 36 C.F.R. " 219.10(f) (2000). The change from the amendment was determined not to be significant for this Project, so the Forest Service was required to provide appropriate public notification and complete NEPA procedures. | Forest plan amendments are permitted by National Forest Management Act (NFMA) and can modify the plan in any way if the Forest Supervisor determines the changes will be insignificant to the plan's overall objectives. National Forest Management Act of 1976, SS 6, 12(a), 16 U.S.C.A. S 1604(f)(4); 36 C.F.R. S 219.10(f) (2000). | Can Forest Plans be amended? | Woods and Forests - Memo 6 - RK.docx | ROSS-003326131-ROSS-003326132 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 11972 | Houston v. Bank of Am. Fed. Sav. Bank, 119 Nev. 485 | 366+1 | The second approach bars the application of equitable subrogation when a lien holder possesses either actual or constructive notice of an existing lien. However, precluding equitable subrogation when a mortgagee discovered or could have discovered a junior lien holder runs contrary to the purposes underlying the doctrine. Equitable subrogation is an equitable remedy to avoid a person's receiving an unearned windfall at the expense of another. If there were no subrogation, a junior lien holder would be promoted in priority, giving that creditor/lien holder an unwarranted and unjust windfall. Neither negligence nor constructive notice of an existing lien is relevant as to whether the junior lien holder will be unjustly enriched or prejudiced. The "basis for subrogation in [the mortgage] context is the lender's justified expectation of receiving [a] security" interest in the property. Even a lender with knowledge of an existing lien on the property ordinarily expects to step into the shoes of the creditor it paid off.14 Therefore, we also decline to adopt this approach. | "Equitable subrogation" is an equitable remedy to avoid a person's receiving an unearned windfall at the expense of another. | Is equitable subrogation is an equitable remedy to avoid a person's receiving an earned windfall at the expense of another? | Subrogation - Memo 231 - VG C.docx | ROSS-003328271-ROSS-003328273 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11973 | Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd., 117 F.Supp.2d 394 | 195+1 | Under New York law, guaranties are governed by the rules of contracts. See Lakhaney, 788 F.Supp. at 163. A valid guaranty must be a written instrument guaranteeing payment of another's debt, describing with precision the obligation to which the person is bound. See id. Consideration for the guaranty must be expressly or impliedly stated in the instrument, and the instrument must be delivered to, and accepted by, the guarantor. See id. | Under New York law, valid guaranty must be written instrument guaranteeing payment of another's debt, describing with precision obligation to which person is bound. | Does a valid guaranty need to be a written instrument? | Guaranty - Memo 9 - RM.docx | LEGALEASE-00000186-LEGALEASE-00000187 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 11974 | Albert J. Hoppe v. St. Louis Pub. Serv. Co., 361 Mo. 402 | 92+3974 | The question instantly before us goes deeply into the underlying principles of due process. In our system of jurisprudence reasonable notice to a litigant (when there exists even the possibility of action adverse to his interests) is deemed to be of the essence of fairness and justice. Reasonable notice to parties whose interests are at stake in a contemplated order is a prerequisite to the lawful exercise of the court's power. Opportunity for a litigant to present his views as to the matters instantly before the court which may affect his rights is the very foundation stone of our procedure. The requirement of notice can result in no hardship. Nor is it restrictive of the trial court's freedom of action in the exercise of its judicial discretion. In 66 C.J.S., Notice, " 14, p. 652, it is said: "While the view had been expressed that usually notice of summary action is not essential, it has been held or recognized that, where an act to be performed by a court or other authority will especially affect a particular individual, reasonable notice should be given to him, so that he may appear and be heard, even though the giving of notice is not required by statute, and that, where a statute confers power on a judicial or an administrative agency to render a judgment or make an order affecting rights of persons or property, and no provision is made for notice, the court will require a reasonable notice." | Reasonable notice to parties whose interests are at stake in a contemplated order is a prerequisite to lawful exercise of court's power. | What is a prerequisite to the lawful exercise of the courts power? | 04821.docx | LEGALEASE-00077089-LEGALEASE-00077091 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11975 | Murray Oil Prod. Co. v. Mitsui & Co., 146 F.2d 381 | 25T+111 | The contract was made in New York; it purported to submit all controversies to arbitration which might arise under it: "Any dispute arising out of this contract to be settled by arbitration." If this is to be construed as a condition precedent to any action upon the contract, it was illegal in New York at common law. President, etc., of Delaware & Hudson Co. v. Pennsylvania Coal Co., 50 N.Y. 250; Sandford v. Accident Association, 147 N.Y. 326, 41 N.E. 694; Meacham v. Jamestown, etc., R. R. Co., 211 N.Y. 346, 105 N.E. 653, Ann. Cas. 1915C 851; Marchant v. Mead-Morrison Mfg. Co. 252 N.Y. 284, 302, 169 N.E. 386. True, arbitration affects only the remedy (Atlantic Fruit Co. v. Red Cross Line, 2 Cir., 5 F.2d 218), and New York decision do not control, but the doctrine is general, at least in this country. Hamilton v. Home Insurance Co., 137 U.S. 370, 385, 11 S.Ct. 133, 34 .Ed. 708; Restatement of Contracts Sec. 551(1); Williston (2nd Edition) Sec. 1921A. On the other hand the clause at bar was perhaps not a condition precedent. Aktieselskabet, etc., v. Rederiaktiebolaget Atlanten, D.C., 232 F. 403, 406, affirmed sub nom. The Atlanten, 252 U.S. 313, 40 S.Ct. 332, 64 L.Ed. 586. If so, it was not a bar to a suit at common law, regardless of its legality. In either view therefore Sec. 3 did not need to remove, and did not remove, what would at common law have been a bar; on the contrary, it provided the defendant with relief- a stay- under conditions where before he would have been helpless to assert the arbitration clause at all. This was the measure of its change, so far as we can see; had it meant to go further and finally to dispose of the action, as the defendant argues, it would not have chosen the words used, for a stay presupposes that the action shall not abate; and if it does not, it must go to judgment of one kind or another. If a defendant wins before the arbitrators, he must be able to clinch his victory by a judgment; on the other hand, having invoked arbitration, he | "Arbitration" is merely a form of trial to be adopted in the action itself, in place of the trial at common law, and it is like a "reference" to a master or an "advisory trial" under federal Rule. Arbitration Act S 1 et seq., and S 3, 9 U.S.C.A. S 1 et seq., and S 3; Fed.Rules Civ.Proc. rule 39(c), 28 U.S.C.A. | Is arbitration a form of trial? | 004131.docx | LEGALEASE-00115626-LEGALEASE-00115628 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 11976 | Sims v. Clarendon Nat. Ins. Co., 336 F. Supp. 2d 1311 | 25T+110 | Admittedly, federal law recognizes judicial proceedings and arbitration proceedings as separate, albeit equally important, fora for adjudicating claims. See Weaver v. Florida Power & Light Co., 172 F.3d 771, 774 n. 7 (11th Cir.1999). In Weaver, the Eleventh Circuit addressed the differences between arbitration proceedings and legal proceedings, and the effect of the FAA as follows: The difficulty in this case arises because the proceeding to be enjoined is not a judicial proceeding but an arbitration. Remedies available through arbitration certainly are not remedies "at law" in the technical sense. We are compelled to treat such remedies as remedies at law, however, because of the Federal Arbitration Act, 9 U.S.C. "" 1"16 (1994). The Act"by ensuring the enforceability of contractual arbitration provisions and subjecting the resulting arbitrations to only a very limited degree of judicial review"embodies a federal policy favoring arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). That policy rules out any "judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals," Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985), a competence that extends to deciding issues of waiver, res judicata, and other defenses that challenge whether a matter should be arbitrated at all. See Moses H. Cone Mem'l Hosp., 460 U.S. at 24"25, 103 S.Ct. at 941. Consequently, we conclude that a remedy available through arbitration, if adequate, constitutes an adequate remedy at law such that equitable relief is improper. See Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 37 (1st Cir.1986); Merrill, Lynch, Pierce, Fenner& Smith, Inc. v. Thomson, 574 F.Supp. 1472, 1479 (E.D.Mo.1983). | Federal law recognizes judicial proceedings and arbitration proceedings as separate, albeit equally important, fora for adjudicating claims. | Is there any difference between judicial proceedings and arbitration proceedings under Federal law? | 04787.docx | LEGALEASE-00077075-LEGALEASE-00077077 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 11977 | Simitar Entm't v. Silva Entm't, 44 F. Supp. 2d 986 | 25T+113 | We look to principles of Minnesota contract law in order to determine whether the parties agreed to submit their present claims to arbitration. Maintaining, at the forefront of the analysis, "a healthy regard for the Federal policy favoring arbitration," we adhere to the Supreme Court's instruction that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., supra at 24-25, 103 S.Ct. 927. At the same time, "the FAA's pro-arbitration policy does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion." Keymer v. Management Recruiters, Inc., supra at 1157, citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Although the parties' intent is far from peripheral to the analysis, "the court must operate under a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " Daisy Mfg. Co. v. NCR Corp., supra at 395, quoting PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3rd Cir.1990) [internal quotation omitted]. | Federal Arbitration Act's proarbitration policy does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion. 9 U.S.C.A. S 1 et seq. | Doesthe pro-arbitration policy operate without the intent of the contracting parties? | Alternative Dispute Resolution - Memo 67-JS.docx | LEGALEASE-00001428-LEGALEASE-00001429 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11978 | Illinois Tool Works v. Commerce & Indus. Ins. Co., 2011 IL App (1st) 093084 | 38+4 | Plaintiff first argues that defendants had a duty to defend it or reimburse its defense costs against the Enssle lawsuit because it had been assigned the benefits of the insurance policies in section 1.2.9 of its purchase agreement with Binks. Contract interpretation is a question of law, which we review de novo. Marx Transport, Inc. v. Air Express International Corp., 379 Ill.App.3d 849, 854, 318 Ill.Dec. 158, 882 N.E.2d 1281 (2008). In that vein, assignments are governed by contract law and, therefore, reviewed de novo. Cincinnati Insurance Co. v. American Hardware Manufacturers Ass'n, 387 Ill.App.3d 85, 99, 325 Ill.Dec. 483, 898 N.E.2d 216 (2008). An assignment happens when some identifiable interest is transferred from he assignor to the assignee. Cincinnati Insurance Co., 387 Ill.App.3d at 100, 325 Ill.Dec. 483, 898 N.E.2d 216. All that is needed is a document showing the intent of the assignor to vest ownership in the assignee of the " "the whole or a part of some particular thing, debt, or chose in action" " that is described with " "sufficient particularity to render it capable of contract," " to the assignee. Cincinnati Insurance Co., 387 Ill.App.3d at 100, 325 Ill.Dec. 483, 898 N.E.2d 216 (quoting Klehm v. Grecian Chalet, Ltd., 164 Ill.App.3d 610, 616, 115 Ill.Dec. 662, 518 N.E.2d 187 (1987)). "[T]he present transfer of rights that are not yet due or may never become due is effective if it appears that there is an existing contract out of which the debt may arise." Loyola University Medical Center v. Med Care HMO, 180 Ill.App.3d 471, 479, 129 Ill.Dec. 360, 535 N.E.2d 1125 (1989) (citing Walter Jaeger, 3 Williston on Contracts " 413, at 55 (3d ed. 1960)). As with all contracts, a valid assignment requires proof of intent to make the assignment and manifestation of that intent and the assignor must have " "either actually or potentially the thing he attempts to assign." " Cincinnati Insurance Co., 387 Ill.App.3d at 100, 325 Ill.Dec. 483, 898 N.E.2d 216 (quoting Owens v. McDermott, Will & Emery, | As with all contracts, a valid assignment requires proof of intent to make the assignment and manifestation of that intent and the assignor must have either actually or potentially the thing he attempts to assign. | Does the occurrence of an assignment depend upon proof of intent? | Assignments - Memo 35 JS.docx | LEGALEASE-00001461-LEGALEASE-00001463 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 11979 | Sands v. Union Pac. R. Co., 148 F. Supp. 422 | 25T+222 | Our next problem is to determine the character of the arbitration agreement between Sands and Union Pacific. It is one which applies to future disputes generally. The designated arbitration tribunal is composed of union and railroad representatives rather than of neutral judges. However, although the members are familiar with the field of railroading generally, they are not experts or investigatorsbut decide the cases in a quasi-judicial manner on the basis of evidence after hearing both sides of the dispute. Arbitrators should be impartial, but the fact that members of the tribunal may be somewhat biased by reason of their affiliation with a union or carrier was known to the parties at the time of their agreement and therefore will not prevent enforcement of the agreement. | Although arbitrators should be impartial, fact that members of tribunal may be somewhat biased by reason of their affiliations, where such fact is known to the parties at the time of their agreement, it will not prevent enforcement of agreement to arbitrate. | What is the nature of arbitration? | Alternative Dispute Resolution - Memo 40-JS.docx | LEGALEASE-00001558-LEGALEASE-00001559 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 11980 | Martensen v. Koch, 301 F.R.D. 562 | 311H+168 | Both the attorney-client privilege and the work product doctrine provide protections for the client. Cf. In re Grant Jury Subpoenas, 561 F.3d 408, 411 (5th Cir.2009) (noting that work product protections belong to both the client and the attorney, and either may invoke those protections); Bovino v. MacMillan, """ F.Supp.3d """", """", No. 12"cv"00551"PAB"MEH, 2014 WL 1128512, at *5 n. 6 (D. Colo. Mar. 20, 2014) (the attorney-client privilege belongs to the client). A client impliedly waives the attorney-client privilege by placing privileged communications or material at issue or by disclosing the privileged information to a third party. Accord People v. Sickich, 935 P.2d 70, 73 (Colo.App.1996) ("[B]ecause defendant put in issue what advice he did or did not receive from counsel, as well as his own understanding of the proceedings, he waived the attorney-client privilege with respect to his discussions with counsel on these topics."). Moreover, "a litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." Frontier Refining, Inc. v. Gorman"Rupp Co., Inc., 136 F.3d 695, 704 (10th Cir.1998). The party seeking to overcome the attorney-client privilege carries the burden of establishing a waiver or an exception. Wesp v. Everson, 33 P.3d 191, 198 (Colo.2001). | Under Colorado law, a client impliedly waives the attorney-client privilege by placing privileged communications or material at issue or by disclosing the privileged information to a third party. | How does a party impliedly waive the attorney-client privilege? | 005321.docx | LEGALEASE-00116122-LEGALEASE-00116123 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11981 | Phillips Dev. & Realty v. LJA Eng'g, 499 S.W.3d 78 | 106+39 | As a threshold matter, LJA acknowledges that Patch's supplemental affidavit was filed shortly before the special appearance hearing. Further, we acknowledge that Tex. R. Civ. P. 120a(3) provides that any affidavits filed by the parties "shall be served at least seven days before the hearing." Tempest Broad. Corp. v. Imlay, 150 S.W.3d 861, 870 (Tex.App."Houston [14th Dist.] 2004, no pet.). However, we also recognize that Rule 120a(3) states:Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.Hence, it is apparent that the trial court has discretion to allow the opposing party to file late affidavits under Rule 120a(3) or to enter other orders as are just. See Imlay, 150 S.W.3d at 870 (citing Potkovick v. Reg'l Ventures, Inc., 904 S.W.2d 846, 850 (Tex.App."Eastland 1995, no writ) (holding that trial court does have some discretion under Rule 120a to enter other orders as are "just")). "Otherwise ... a movant under Rule 120a could wait until seven days before the hearing to file its affidavits preventing the opposition from filing controverting affidavits." Potkovick, 904 S.W.2d at 850. Here, we conclude that Phillips has failed to establish that the trial court abused its discretion in considering the late-filed affidavit. Giacomini v. Lamping, 42 S.W.3d 265, 269"70 (Tex.App."Corpus Christi 2001, no pet.); Leben v. Treen, No. 13"020309"CV, 2003 WL 22479150, at *2 (Tex.App."Corpus Christi Oct. 30, 2003, no pet.) (mem.op.) ("In a special appearance proceeding, the trial court has discretion to consider a late-filed affidavit."). | A trial court has discretion to allow the party opposing a special appearance to contest personal jurisdiction to file late affidavits or to enter other orders as are just. Tex. R. Civ. P. 120a(3). | Does a trial court have the discretion to allow late affidavits? | Affidavits- Memo 34 - JS.docx | LEGALEASE-00001856-LEGALEASE-00001858 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 11982 | Tucker v. State Farm Mut. Auto. Ins. Co., 2002 UT 54 | 361+1122 | We begin by noting that penal statutes must be construed strictly against the State and may not be enlarged beyond the fair meaning of the language used to include offenses other than those clearly defined. Bond v. State (1987), Ind., 515 N.E.2d 856, 858. At the same time, penal statutes should not be overly narrowed so as to exclude cases they fairly cover. Barger v. State (1992), Ind., 587 N.E.2d 1304, 1306, reh'g denied. "If possible, they should be allowed to perform their intended mission as shown by the existing evils intended to be remedied." Id. (quoting Morris v. State (1949), 227 Ind. 630, 632, 88 N.E.2d 328, 329). On the other hand, penal statutes cannot be construed to include anything beyond their letter, though within their spirit. Gore v. State (1983), Ind.App., 456 N.E.2d 1030, 1033. When the legislature defines a word, this Court is bound by that definition in construing the statute, even though the definition may conflict with the common meaning of the word. Consolidation Coal Co. v. Indiana Dep't of State Revenue (1991), Ind., 583 N.E.2d 1199, 1201; Spaulding v. International Bakers Services (1990), Ind., 550 N.E.2d 307. Where the legislature has not defined a word, we must attribute common and ordinary meaning to the word. Consolidation Coal Co., 583 N.E.2d at 1201. Further, where the statute is clear and unambiguous on its face, we cannot interpret the statute, but must simply give the statute its apparent or obvious meaning. Matter of Grissom (1992), Ind., 587 N.E.2d 114, 116. | Where legislature has defined a word, Court of Appeals is bound by that definition in construing statute, even though the definition may conflict with common meaning of the word; where legislature has not defined a word, Court of Appeals must attribute common and ordinary meaning to the word. | Are courts bound to follow the definition provided by the legislature? | 004528.docx | LEGALEASE-00116384-LEGALEASE-00116385 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 11983 | United States v. Aguasvivas-Castillo, 668 F.3d 7 | 174+1.3 | It is the defendant's burden, not the government's, to raise the issue of future deprivation of livelihood. Fogg, 666 F.3d at 19. Aguasvivas"Castillo neither raised the issue in the trial court nor put facts into the record on the topic. "[A] defendant's inability to satisfy a forfeiture at the time of conviction, in and of itself, is not at all sufficient to render a forfeiture unconstitutional, nor is it even the correct inquiry." Id. (quoting Levesque, 546 F.3d at 85). Even where a "defendant does not have sufficient funds to cover the forfeiture at the time of the conviction, the government may seize future assets to satisfy the order." United States v. Hall, 434 F.3d 42, 59 (1st Cir.2006); see also United States v. Katz, No. 10"1138, 2010 WL 4627872, at *1 (1st Cir. Nov. 15, 2010) (finding no plain error in district court's forfeiture order where defendant argued for the first time on appeal, without citing authority, that "excessiveness" may be established with reference to the financial burden created by the forfeiture order). | In challenging disproportionality of a forfeiture, it is the defendant's burden, not the government's, to raise the issue of future deprivation of livelihood. U.S.C.A. Const.Amend. 8. | Is it the defendants burden to raise the issue of future deprivation of livelihood to challenge the disproportionality of forfeiture? | 07077.docx | LEGALEASE-00089101-LEGALEASE-00089103 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11984 | Fodor v. Kunie, 92 N.J. Eq. 301 | 253+204 | A statute providing that a marriage may be declared void where the female is under a certain age has been held to leave the common-law rule otherwise unaltered. Bennett v. Smith, 21 Barb. (N. Y.) 439. Now, our statute (P. L. 1907, p. 474, " 1, subd. 5, supra) provides that a marriage may be annulled at the suit of the wife when she was under the age of 16 at the time, unless such marriage be confirmed by her after arriving at that age. In this state, therefore, the marriage of a girl over 12, but under 16 years of age, may be confirmed by her on arriving at 16, and, if so, it becomes indissoluble, unless for some other valid reason. Nor is the consent of a parent or guardian necessary to the validity of a minor's marriage, unless a statute expressly declares that a marriage contracted without it shall be a nullity. 26 Cyc. 834. And we have no such statutory provision. Formerly the person authorized to solemnize marriage, who married a minor without the requisite consent of parents or guardian, was liable to a penalty under the statute. Craft v. Jachetti, 47 N. J. Law, 205. But now persons cannot be married in this state without a license first had and obtained. P. L. 1912, p. 307, " 3; Comp. Stat. 1st Supp. p. 924, " 7. And a penalty is visited upon any person authorized to solemnize marriages who shall perform any marriage ceremony without the presentation of a license therefor (P. L. 1912, p. 311, " 10; Comp. Stat. 1st Supp. p. 926, " 14), except in certain cases of persons in the armed military or naval service of the United States (P. L. 1918, p. 519). And no such license shall be issued without the consent of parents or guardian to the marriage of a male under 21 or a female under 18, save in the instances excepted in the statute. P. L. 1912, p. 310, " 8; Comp. Stat. 1st Supp. p. 925, " 12. | The consent of parent or guardian is not necessary to the validity of a minor's marriage unless a statute expressly declares that a marriage contracted without it shall be void, and there is no such statute in this state. | Can minors marry without the consent of their parents? | Marriage and Cohabitation - Memo 9 - RK.docx | ROSS-003283336-ROSS-003283337 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 11985 | State v. McLean, 209 N.C. 38 | 146+5 | Embezzlement was not a common-law offense. The acts constituting the offense are set forth in the statute C.S. 4268. It has been defined by this court as "the fraudulent conversion of property by one who has lawfully acquired possession of it for the use and benefit of the owner." State v. McDonald, 133 N.C. 680, 681, 45 S.E. 582, 583.One of the necessary elements of the offense is the fraudulent intent. The fraudulent intent within the meaning of the statute is the intent to ""embezzle or otherwise wilfully and corruptly use or misapply," the money of the county for purposes other than that for which they are held." State v. Lancaster, 202 N.C. 204, 162 S.E. 367, 371. And since the criminality of the act depends upon the intent, it is incumbent on the state to show the intent to defraud beyond a reasonable *702 doubt. State v. Morgan, 136 N.C. 628, 48 S.E. 670. Such intent may be shown by direct evidence, or by evidence of facts and circumstances from which it may reasonably be inferred. State v. Lancaster, 202 N.C. 204, 162 S.E. 367; State v. Rawls, 202 N.C. 397, 162 S.E. 899; 20 C.J. 487. | Necessary element of embezzlement is fraudulent intent which, within statute, is intent to embezzle or otherwise willfully and corruptly use or misapply money of another for purposes other than that for which it is held (C.S. S 4268). | Is fraudulent or criminal intent necessary to constitute embezzlement? | 004319.docx | LEGALEASE-00116463-LEGALEASE-00116464 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 11986 | Postema v. Pollution Control Hearings Bd., 142 Wash. 2d 68 | 1.49E+17 | The Administrative Procedure Act, RCW 34.05, governs proceedings before the Pollution Control Hearings Board.Department of Ecology v. Theodoratus, 135 Wash.2d 582, 589, 957 P.2d 1241 (1998). This court sits in the same position as the superior court and reviews the Board's decision by applying the standards of review in RCW 34.05.570 directly to the agency record. Id. Agency action may be reversed where the agency has erroneously interpreted or applied the law, the agency's order is not supported by substantial evidence, or the agency's decision is arbitrary and capricious. RCW 34.05.570(3); Okanogan Wilderness League, Inc. v. Town of Twisp, 133 Wash.2d 769, 776, 947 P.2d 732 (1997). | Administrative Procedure Act governs proceedings before the Pollution Control Hearings Board. West's RCWA 34.05.010 et seq. | Does the Administrative Procedure Act govern the proceedings before the Pollution Control Hearings Board? | Environmental Law - Memo 36 - AKA.doc | ROSS-003287431-ROSS-003287432 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 11987 | Get In Shape Franchise v. TFL Fishers, 167 F. Supp. 3d 173 | 95+116(2) | Courts "will not enforce non-competition agreements meant solely to protect employers from run-of-the-mill business competition." Lombard, 729 F.Supp.2d at 439 (citing Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 310 N.E.2d 915, 920 (1974)). However, "the protection of trade secrets, other confidential information, and the good will the employer has acquired through dealings with his customers constitute legitimate business interests." Id. (internal quotation marks, alterations, and citations omitted). Customer goodwill is "a company's positive reputation in the eyes of its customers or potential customers" and "is generated by repeat business with existing customers or by referrals to potential customers." N. Am. Expositions Co. Ltd. P'ship v. Corcoran, 452 Mass. 852, 898 N.E.2d 831, 846 (2009). | Under Massachusetts law, "customer goodwill," in the context of non-compete agreements, is a company's positive reputation in the eyes of its customers or potential customers and is generated by repeat business with existing customers or by referrals to potential customers. | Is goodwill generated by repeat business with existing customers? | Goodwill - Memo 15 - ANG..docx | ROSS-003289257-ROSS-003289259 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 11988 | In re Marriage of Luckey, 73 Wash. App. 201. In re Marriage of Luckey, 73 Wash. App. 201 | 134+797 | In the second phase, valuation of existing goodwill, the Fleege factors cannot be used in isolation; one or more accepted methods of valuation must be employed, though the particular method depends on the offered proof. Hall, 103 Wash.2d at 243, 692 P.2d 175. Hall, at 243"45, 692 P.2d 175, mentioned five accounting methods in particular: straight capitalization, capitalization of excess earnings, the IRS variation of capitalized excess earnings, the market value method, and the buy/sell agreement method. | Hall methods of valuation of professional goodwill in marriage dissolution proceeding, which include straight capitalization, capitalization of excess earnings, Internal Revenue Service (IRS) variation of capitalized excess earnings, market value method, and buy/sell agreement method, are not exclusive; overall goal is to achieve just and fair evaluation of existence and value of professional's goodwill. | What are the different methods in valuing goodwill? | Goodwill - Memo 16 - ANG..docx | LEGALEASE-00002172-LEGALEASE-00002173 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 11989 | Reaves v. State, 979 So. 2d 1066 | 48A+342.1 | Vehicular homicide "is the killing of a human being ... caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another." " 782.071, Fla. Stat. (2005). Proximate causation, or a causal connection between the defendant's reckless driving and the victim's death, is an essential element of vehicular homicide. See Armenia v. State, 479 So.2d 260, 262 (Fla. 5th DCA 1985). | Proximate causation, or a causal connection between the defendant's reckless driving and the victim's death, is an essential element of vehicular homicide. West's F.S.A. S 782.071. | Is death considered to be an essential element in vehicular homicide? | 004412.docx | LEGALEASE-00116701-LEGALEASE-00116702 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11990 | Dominguez-Pulido v. Lynch, 821 F.3d 837 | 24+385 | Dominguez"Pulido's Eighth Amendment argument does not constitute a colorable constitutional claim: We held explicitly in Zamora"Mallari that a removal order is "not a "fine," and thus the Excessive Fine Clause of the Eighth Amendment does not apply." Id. at 695. Zamora"Mallari is indistinguishable from the case at hand and therefore binding on our analysis. Accordingly, we do not have jurisdiction over this claim. | Alien's argument that his removal would violate Eighth Amendment's prohibition on excessive fines was not colorable constitutional claim, and thus Court of Appeals lacked jurisdiction to consider claim in alien's proceeding seeking judicial review of removal order, which was issued following alien's conviction for crime involving moral turpitude, where Court of Appeals held in prior case that a removal order was not a fine, and prior case was indistinguishable from alien's case and therefore binding on Court of Appeals' analysis. U.S.C.A. Const.Amend. 8; Immigration and Nationality Act, S 242(a)(2)(D), 8 U.S.C.A. S 1252(a)(2)(D). | Does the Excessive Fine Clause of the Eighth Amendment apply to a removal order? | 004565.docx | LEGALEASE-00116589-LEGALEASE-00116590 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 11991 | Found. Coal Res. Corp. v. Dep't of Envtl. Prot., 993 A.2d 1277 | 1.49E+04 | DEP, as an administrative agency, may only exercise those powers vested in it by the General Assembly. Dep't of Envtl. Resources v. Butler County Mushroom Farm, 499 Pa. 509, 454 A.2d 1 (1982). An agency also has power from "a strong and necessary implication from" the express statutory language. PECO Energy Co. v. Pennsylvania Public Utility Commission, 568 Pa. 39, 46, 791 A.2d 1155, 1159 (2002). Under Section 201 of the Oil and Gas Act, DEP is authorized to issue permits for oil and gas wells. DEP is also authorized to impose conditions in the permits under Section 201(e) of the Act. That subsection specifically provides that, "[t]he department may impose such permit terms and conditions as are necessary to assure compliance with this act and other laws administered by the department." There is nothing in either the laws or the regulations which mandate that deviational and direction surveys or well logging of the coal seam must be conducted by the well permittee as a condition to being issued a permit by DEP to drill an oil or gas well. | Department of Environmental Protection (DEP), as an administrative agency, may only exercise those powers vested in it by the General Assembly. | Is the Department of Environmental Protection (DEP) limited to exercise those powers vested in it by the General Assembly? | 005278.docx | LEGALEASE-00116758-LEGALEASE-00116759 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11992 | Bd. of Health of Weehawken Twp., Hudson Cty. v. New York Cent. R. Co., 4 N.J. 293 | 92+2435 | The local boards of health in the exertion of the authority thus conferred exercise, not an administrative function, but rather a portion of the police power to serve the public health. They are "governmental agencies by which the police law of the state is locally exerted." Fredericks v. Board of Health, 82 N.J.L. 200, 82 A. 528, 529 (Sup.Ct.1912). See, also, Bradshaw v. City Council of Camden, 39 N.J.L. 416 (Sup.Ct.1877); State Board of Health of Jersey City v. Schwarz Bros. Co., 84 N.J.L. 500, 87 A. 147 (Sup.Ct.1913), affirmed sub nom. Schwarz Bros. Co. v. State Board of Health, Id., 735, 87 A. 463 (E. & A. 1913). There is a delegation to these agencies of the "lawmaking function * * * as an admitted exception to the general doctrine of constitutional legislation." Bohan v. Weehawken, 65 N.J.L. 490, 47 A. 446, 447 (Sup.Ct.1900). See, also, Fenton v. Atlantic City, supra, 90 N.J.L. 403, 103 A. 695; Borden's Condensed Milk Co. v. Board of Health, 81 N.J.L. 218, 80 A. 30 (Sup.Ct.1911); Courter v. Newark, 54 N.J.L. 325, 23 A. 949 (Sup.Ct.1892); Earruso v. Board of Health, 120 N.J.L. 463, 200 A. 755 (Sup.Ct.1938). | Under statute authorizing local boards of health to enact health ordinances, local boards exercise not an administrative function but rather a portion of the police power to serve the public health and the delegation of the law making function is an exception to the general doctrine of constitutional legislation. R.S. 26:3-64; R.S. 26:3-64, N.J.S.A. | Are functions of local boards of health an administrative function? | Administrative Law - Memo 32 - RM.docx | ROSS-003284875-ROSS-003284876 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 11993 | Mortensen v. Stewart Title Guar. Co., 149 Idaho 437 | 302+1 | This Court has already expressly rejected the notion that an unpleaded claim can be preserved for appeal merely because the district court addressed the claim's merits. Pleading is necessary to put the opposing party on notice of the claims it is facing and thereby "insure that a just result is accomplished." Seiniger Law Office, 145 Idaho at 246"47, 178 P.3d at 611"12. An unpleaded cause of action simply cannot be considered, whether on summary judgment or on appeal. Estes v. Barry, 132 Idaho 82, 86, 967 P.2d 284, 288 (1998). For example, in Beco v. City of Idaho Falls, 124 Idaho 859, 865 P.2d 950 (1993), this Court refused to consider the appellant's unpleaded breach-of-contract claim despite the fact that the district court ruled on the claim's merits. Id. at 865, 865 P.2d at 956. Mortensen therefore waived his quasi-estoppel claim regardless of whether the district court below reached the merits. | Pleading is necessary to put the opposing party on notice of the claims it is facing and thereby insure that a just result is accomplished. | Do pleadings put the opposing party on notice of the claims? | Pleading - Memo 15 - VP.docx | ROSS-003282123-ROSS-003282125 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 11994 | Major Millworks v. MAE Hardwoods, 187 So. 3d 714 | 102+208 | Parties seeking "an attorney fee bear the burden of proving their entitlement to an award and documenting their appropriately expended hours." Beal Bank, 896 So.2d at 408 (citing City of Birmingham v. Horn, supra). "[A] trial court may not order one party to pay another party's attorney's fees without first receiving evidence of the amount of those fees and then determining the reasonableness of that amount." A.B. v. J.B., 40 So.3d 723, 735 (Ala.Civ.App.2009) (reversing an order requiring wife to pay husband's attorney fees that was entered without any evidence as to the amount of fees). Even though MAE Hardwoods asserted a claim for attorney fees in its complaint, " "[i]t is well settled that "the statements of counsel in a pleading or brief are not evidence." " " Wehle v. Bradley, [Ms. 1101290, March 14, 2014] (Ala.2014)* (quoting Watson v. Whittington Real Estate, LLC, 16 So.3d 802, 809 (Ala.Civ.App.2009), quoting in turn State Dep't of Revenue v. Wells Fargo Fin. Acceptance Alabama, Inc., 19 So.3d 892, 897 (Ala.Civ.App.2008)). | A trial court may not order one party to pay another party's attorneys fees without first receiving evidence of the amount of those fees and then determining the reasonableness of that amount. | Are statements of a counsel in a pleading evidence? | 004840.docx | LEGALEASE-00116948-LEGALEASE-00116949 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 11995 | State v. Blair, 227 N.C. 70 | 146+1 | The embezzlement statute, G.S. s 14-90, creates an offense unknown at common law. It applies only to the classes of persons therein named. State v. Whitehurst, 212 N.C. 300, 193 S.E. 657, 113 A.L.R. 740; State v. Eurell, 220 N.C. 519, 17 S.E.2d 669. It does not embrace a vendor in an executory contract of purchase and sale. Hence the court below erred in denying the defendant's motion to dismiss as in case of nonsuit. | The embezzlement statute creates an offense unknown at common law and applies only to the classes of persons therein named. G.S. S 14-90. | Can an embezzlement statute be applied to persons outside its purview? | Embezzlement - Memo 33 - RK.docx | LEGALEASE-00002971-LEGALEASE-00002972 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 11996 | Waldrop v. State, 12 Md. App. 371 | 146+13 | By its terms, Md.Code, Art. 27, s 129 requires proof that: 1. the accused was employed as a cashier, servant, agent, clerk or officer by a person or body corporate, 2. that in such capacity the accused received personal property for or in the name or on account of his master or employer, and 3. the accused thereafter fraudulently converted such property. The statute does not require that the embezzled property be entrusted to the accused directly by the master; it may be entrusted by another person on his behalf. | Embezzlement statute does not require that embezzled property be entrusted to the accused directly by the master; it may be entrusted by another person on his behalf. Code 1957, art. 27, S 129. | Must embezzled property be entrusted to the accused directly by the master? | 004999.docx | LEGALEASE-00117097-LEGALEASE-00117098 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 11997 | Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362 | 25T+112 | The Supreme Court has stated that the Federal Arbitration Act (FAA) "is a congressional declaration of a liberal federal policy favoring arbitration agreements," and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). But it is also true that "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." Mastrobuono v. Shearson Lehman Hutton, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). "Arbitration under the Act is a matter of consent, not coercion." Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)."[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (emphasis added).Thus, though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute. | Although the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute. 9 U.S.C.A. S 1 et seq. | Does the law require an agreement of the parties if the presumption in favour of arbitration is strong? | 005206.docx | LEGALEASE-00116861-LEGALEASE-00116863 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 11998 | Wheat, First Sec. v. Green, 993 F.2d 814 | 25T+113 | Appellants correctly note that in enacting " 2 of the Federal Arbitration Act ("FAA"), "Congress declared a national policy favoring arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). However, the policy fostered by the FAA "does not require parties to arbitrate when they have not agreed to do so." Volt Info. Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Echoing this view, this Court has recently stated that "[s]imply put, parties cannot be forced to submit to arbitration if they have not agreed to do so." Chastain v. Robinson"Humphrey Co., 957 F.2d 851, 854 (11th Cir.1992); accord I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396, 399 (8th Cir.1986) (An arbitrator "has no independent source of jurisdiction apart from the consent of the parties."); George Day Constr. Co. v. United Brotherhood of Carpenters, Local 354, 722 F.2d 1471, 1474 (9th Cir.1984) ("[A]n arbitrator's jurisdiction is rooted in the agreement of the parties."); Par"Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir.1980) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect."). | National policy favoring arbitration, through enactment of Federal Arbitration Act, does not require parties to arbitrate without agreeing to do so. 9 U.S.C.A. S 2. | "Does the national policy favoring arbitration, require parties to arbitrate without agreeing to do so?" | 004860.docx | LEGALEASE-00117122-LEGALEASE-00117123 | Order, SA, Sub | 0.87 | 1 | 0 | 1 | 1 | 1 |
| 11999 | Harris v. Green Tree Fin. Corp., 183 F.3d 173 | 25T+210 | Originally passed in 1925, the FAA was enacted to "revers[e] centuries of judicial hostility to arbitration agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts."Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1113 (3d Cir.1993) (quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225"26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). The FAA makes agreements to arbitrate enforceable to the same extent as other contracts. Seus v. Nuveen & Co., 146 F.3d 175, 178 (3d Cir.1998). Thus, federal law presumptively favors the enforcement of arbitration agreements. In re Prudential Ins. Co. of Am. Sales Practice Litig., 133 F.3d 225, 231 (3d Cir.1998). | Federal Arbitration Act (FAA) makes agreements to arbitrate enforceable to the same extent as other contracts, and, thus, federal law presumptively favors the enforcement of arbitration agreements. 9 U.S.C.A. S 1 et seq. | Does federal law favors the enforcement of arbitration agreement? | 004901.docx | LEGALEASE-00117153-LEGALEASE-00117154 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 12000 | Ingle v. Circuit City Stores, 328 F.3d 1165 | 25T+113 | Circuit City correctly argues that the FAA articulates a strong public policy in favor of arbitration agreements. 9 U.S.C. " 2 (2002); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"). Nevertheless, this "policy is manifestly undermined by provisions in arbitration clauses [that] seek to make the arbitration process itself an offensive weapon in one party's arsenal." Kinney, 70 Cal.App.4th at 1332, 83 Cal.Rptr.2d 348. | The Federal Arbitration Act (FAA) articulates a strong public policy in favor of arbitration agreements. 9 U.S.C. S 2. | Does the Federal Arbitration Act articulate a strong public policy in favor of arbitration? | 004912.docx | LEGALEASE-00117164-LEGALEASE-00117166 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12001 | City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, 196 Ill. 2d 1 | 414+1625 | It is widely held that when a zoning ordinance, such as the one in the case at bar, reserves the power to grant or deny an application for a special use permit in a legislative body, that body acts in an administrative capacity rather than a legislative capacity when it rules on a permit application. See, e.g., K. Young, Anderson's American Law of Zoning " 21.10, at 718"19 (4th ed. 1996) ("When permit issuing authority is retained by the legislature, the granting or denial of special permits by that body is regarded by most courts as an administrative rather than a legislative function"); 83 Am.Jur.2d Zoning & Planning " 980, at 819 (1992) ("The granting or denial of special permits by the legislature is regarded by most courts as an administrative rather than a legislative function"). When a legislative body acts administratively in ruling on a permit application, its decision is subject to general principles of administrative review: "As the legislature is acting in an administrative capacity, it must follow the zoning regulations, and its actions are reviewable, and subject to judicial reversal if they are without support in the record or are otherwise arbitrary or unreasonable." K. Young, Anderson's American Law of Zoning " 21.10, at 720 (4th ed. 1996). In particular, the decision to grant or deny the permit application may be reviewed to determine whether the decision was made in compliance with any criteria listed in the zoning ordinance. K. Young, Anderson's American Law of Zoning " 21.10, at 725 (4th ed. 1996). | When a legislative body acts in a legislative capacity in ruling on a permit application, a landholder's compliance with any special use criteria listed in the zoning ordinance is merely a factor to consider, not the dispositive consideration, in determining whether the granting or denial of the permit application was arbitrary and unreasonable. | Does a board of supervisors when granting a permit under a zoning ordinance act in an administrative capacity? | 000373.docx | LEGALEASE-00117407-LEGALEASE-00117409 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 12002 | Slue v. New York Univ. Med. Ctr., 409 F. Supp. 2d 349 | 233+540 | It is undisputed that Slue never signed a written lease with the Health Center. (Slue Dep. 98.) Instead, Slue claims that his agreement with Orlin and Freedberg constituted an oral lease. (P. Mem.22.) A landlord-tenant relationship may be created orally, and such oral leases may be enforceable. Restatement (Second) of Property: Landlord & Tenant " 2.1 (1977). Nevertheless, certain essential factors must be present in the agreement to establish an oral lease under New York law, including the "area to be leased, the duration of the lease, and the price to be paid." Davis v. Dinkins, 206 A.D.2d 365, 613 N.Y.S.2d 933, 935 (2d Dep't 1994). | Landlord-tenant relationship may be created orally, and such oral leases may be enforceable. Restatement (Second) of Property: Landlord & Tenant S 2.1. | Can a Landlord Tenant relationship be created orally? | 000483.docx | LEGALEASE-00117301-LEGALEASE-00117302 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 12003 | Dargis v. Paradise Park, 354 Ill. App. 3d 171 | 233+1245 | We also find that, although there exists no special relationship between PPI and Zuro, PPI assumed a duty to protect. Generally, no special relationship exists between a landlord and a tenant, and thus a landlord has no duty to protect tenants against foreseeable third-party criminal acts. Rowe v. State Bank of Lombard, 125 Ill.2d 203, 215"16, 126 Ill.Dec. 519, 531 N.E.2d 1358 (1988). Such a duty arises, however, when a landlord, under the facts of the case, assumed the duty. Shea v. Preservation Chicago, Inc., 206 Ill.App.3d 657, 661, 151 Ill.Dec. 749, 565 N.E.2d 20 (1990). When a landlord exercises control over a portion of a leased premises, the landlord assumes a duty to exercise such control in a reasonably safe manner. Shea, 206 Ill.App.3d at 661, 151 Ill.Dec. 749, 565 N.E.2d 20. Whether this retention of control includes a duty to protect tenants against foreseeable third-party criminal acts depends upon the normal and usual function of such control and the particular circumstances of the case. Shea, 206 Ill.App.3d at 661, 151 Ill.Dec. 749, 565 N.E.2d 20. Consequently, several jurisdictions have held that a landlord assumes no duty to care for the property that a former tenant has left behind when the landlord exercises control over the premises after the tenancy has been terminated by lawful eviction. See, e.g., Banks v. Korman Assoc., 218 N.J.Super. 370, 372, 527 A.2d 933, 934 (App.Div.1987); Ringler v. Sias, 68 Ohio App.2d 230, 232, 22 O.O.3d 353, 428 N.E.2d 869, 870 (1980); Conroy v. Manos, 679 S.W.2d 124, 127 (Tex.App.1984). The exception is when the landlord chooses to care for the property. See, e.g., Christensen v. Hoover, 643 P.2d 525, 528 (Colo.1982) (en banc). In this case, however, the problem is not that PPI chose to care for Zuro's property but rather that it exercised control over the campsite via an unlawful eviction. Because the eviction was unlawful, the converse of the general principle applies, and thus the law imposes | Generally, no special relationship exists between a landlord and a tenant, and thus a landlord has no duty to protect tenants against foreseeable third-party criminal acts; such a duty arises, however, when a landlord, under the facts of the case, assumed the duty. | Does a special relationship exist between the landlord and the tenant? | 005095.docx | LEGALEASE-00117350-LEGALEASE-00117352 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12004 | In re Hooper, 555 B.R. 47 | 315+40 | Every judgment, a certificate of which has been filed ... shall be a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution[.]" ALA. CODE " 6-9-211.6 If property is not subject to levy and sale under execution, a judgment lien cannot attach to it. Vance, 538 B.R. at 865. Executions may be levied "[o]n personal property of the defendant, except things in action[.]" ALA. CODE " 6-9-40(2). The Alabama Supreme Court defines a "thing in action" as "a right to demand money or property by an action" and "there can in the nature of things be no present possession of a thing which lies merely in action." Peavy Lumber Co. v. O.E. Murchison, 272 Ala. 251, 130 So.2d 338, 340"41 (1961). In other words, a judgment lien cannot attach to a mere right to demand money or property by an action.This Court held in Vance that a judgment lien does not attach to a bank account because an account is nothing more than a debtor-creditor relationship out of which arises a right to demand money. Vance, 538 B.R. at 866. Other examples of things in action have included (1) money due under a contract, (2) damages arising from a breach of contract, (3) a check, (4) an interest in a pension and profit-sharing plan, (5) the right to receive payment under an insurance contract and the proceeds from the policy, and (6) intangible personal property such as instruments and securities for the payment of money. Id.; see also In re Head, 204 B.R. 1022, 1025 (Bankr.N.D.Ala.1997)). | Under Alabama law, a "thing in action" is a right to demand money or property by an action, and there can in the nature of things be no present possession of a thing which lies merely in action. | Can a thing in action be termed as a right to demand money or property? | Property - Memo 15 - JS.docx | ROSS-003283077-ROSS-003283079 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12005 | City of Junction City v. Cadoret, 263 Kan. 164 | 316P+129 | In the present case, the penalty provisions of 8"1567 and Junction City Ordinance 300.030 appear to be identical. However, a third or subsequent conviction of the state statute brands the violator as a felon. Felons are subject to restrictions on their civil rights, which were defined as "disabilities" by the provisions of K.S.A. 21"4615 in effect at the time of Cadoret's violation. Although those disabilities were then stated to attach when a convicted person was delivered to the Secretary of Corrections for imprisonment, the statute was amended in 1996 and the disabilities became "ineligibilities," which attached upon conviction. K.S.A.1996 Supp. 21"4615 reads as follows:"(1) A person who has been convicted in any state or federal court of a felony shall, by reason of such conviction, be ineligible to hold any public office under the laws of the state of Kansas, or to register as a voter or to vote in any election held under the laws of the state of Kansas or to serve as a juror in any civil or criminal case."(2) The ineligibilities imposed by this section shall attach upon conviction and shall continue until such person is finally discharged from parole or conditional release or is discharged from custody by reason of the expiration of the term of imprisonment to which the person was sentenced."(3) The ineligibilities imposed upon a convicted person by this section shall be in addition to such other penalties as may be provided by law." | Felons, upon conviction, are ineligible to hold public office, vote in any election, or serve as jurors in any civil or criminal case, and they are barred from possessing weapons and firearms for five years following their convictions. K.S.A. 21-4615. | Are felons prohibited from voting? | Convicts- Memo 08 - JS.docx | LEGALEASE-00004028-LEGALEASE-00004030 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 12006 | Maxwell v. Maxwell, 217 So. 3d 1227 | 253+833 | When separate and community funds are deposited into one bank account, this fact does not convert the entire account into community property. Fulco v. Fulco, 50,256 (La.App. 2 Cir. 11/18/15), 183 So.3d 573. Only when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds are all the funds characterized as community funds. Curtis v. Curtis, 403 So.2d 56 (La. 1981). | When separate and community funds are deposited into one bank account, this fact does not convert the entire account into community property. La. Civ. Code Ann. art. 2340. | Will it become a community property if separate funds and community funds are deposited in one account? | Marriage and Cohabitation- Memo 40 - JS.docx | LEGALEASE-00004045-LEGALEASE-00004046 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 12007 | Aronson v. Creditrust Corp., 7 F. Supp. 2d 589 | 237+32 | The term "special harm," in the context of alleging a claim for defamation under Pennsylvania law, requires that the plaintiff allege a direct economic or pecuniary injury.See Agriss, 334 Pa.Super. at 327, 483 A.2d at 473. See also Restatement (Second) of Torts, " 575 comment b ("[s]pecial harm ... is the loss of something having economic or pecuniary value."). Here Plaintiff has explicitly alleged that he suffered no real damages but rather, only nominal damages as a result of Defendants Sullivan and Wright's allegedly defamatory statements. Accordingly, I find that Plaintiff has not sufficiently pled special harm resulting to him from publication of the allegedly defamatory statements by Defendant Sullivan and Wright and therefore, the Defendants' Motion to Dismiss Plaintiff's defamation claims against Defendants Sullivan and Wright must be granted for failure to state a claim upon which relief can be granted. | Term "special harm," in context of alleging claim for defamation under Pennsylvania law, requires that plaintiff allege direct economic or pecuniary injury. | What is economic or pecuniary loss in defamation? | 000548.docx | LEGALEASE-00117460-LEGALEASE-00117461 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12008 | U.S. ex rel. Preece v. Coiner, 150 F. Supp. 511 | 207+1 | Incest is a statutory crime and was not a crime at common law. Therefore, whatever elements are necessary to constitute the offense of incest are prescribed wholly by the particular statute. The West Virginia statute, 61-8-12, W.Va.Code, states in part:"If any male person shall have sexual intercourse with his daughter every such person shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than five nor more than ten years." | Incest is a statutory crime, and was not a crime at common law, and therefore, whatever elements are necessary to constitute such offense are prescribed wholly by statute. | Is incest a common law crime? | Incest - Memo 12 - TH.docx | LEGALEASE-00004392-LEGALEASE-00004393 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 12009 | Salsman v. State, 244 Ind. 180 | 207+1 | "Sexual intercourse," which is necessary to the crime of incest [Acts 1907, ch. 74, " 1, p. 101, being " 10-4206, Burns' 1956 Repl.], is defined as "carnal copulation of male and female implying actual penetration of the organs of the latter." Black's Law Dictionary, 4th Ed. p. 1541. | "Sexual intercourse," necessary to the crime of incest, means carnal copulation of male and female implying actual penetration of the organs of the latter. Burns' Ann.St. S 10-4206. | How is sexual intercourse defined? | 000443.docx | LEGALEASE-00117754-LEGALEASE-00117755 | Condensed, SA | 0.35 | 0 | 1 | 0 | 1 | |
| 12010 | Stoltz, Wagner & Brown v. Duncan, 417 F. Supp. 552 | 328+16 | The second disjunctive proviso for the commencement of the top leases, namely, "to have and to hold . . . for a term of one (1) year . . . from and after the expiration of the existing oil and gas lease, whichever is the later," appears to violate the Rule Against Perpetuities. The Rule is violated when there is a possibility of vesting beyond the perpetuity period. Melcher v. Camp, supra, 435 P.2d at page 115.The top leases were taken in June of 1975 when there were existing base leases, the primary terms of which would expire in August of 1975. Hence, the possibility existed in June, 1975 that a well could be commenced before the expiration of the existing base leases, the same could be drilled to production and the ensuing life of production could possibly exceed the period permitted by the Rule. The second alternative provision in the top leases thus appears to violate the Rule unless the top leases are reformed under the foregoing statutory authority | Where top leases, which were to commence either on August 8, 1975 or from and after expiration of existing oil and gas leases as extended by drilling operations and production, whichever was later, for one-year term and which provided that if well started in base lease terms was determined not to be a producer before August 8, 1976, plaintiffs could have valid leases for remaining balance of terms of top leases, appeared to violate Oklahoma rule against perpetuities, top leases would be reformed to give effect to "general intent" of lessors by separation and elimination of proviso which offended rule under reformation power provided by Oklahoma statutes. 60 O.S.1971, SS 75-77. | What violates the rule against perpetuities ? | Landlord and Tenant - Memo 29 - TH.docx | LEGALEASE-00004429-LEGALEASE-00004430 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 12011 | Green v. Cosby, 138 F. Supp. 3d 114 | 237+32 | The "incremental harm doctrine," which some courts have described as related to the "libel-proof plaintiff doctrine," see Thomas v. Tel. Publ'g Co., 929 A.2d 993, 1002 (N.H.2007); Stern v. Cosby, 645 F.Supp.2d 258, 270 (S.D.N.Y.2009), "measures the harm "inflicted by the challenged statements beyond the harm imposed by the rest of the publication. If that harm is determined to be nominal or nonexistent, the statements are dismissed as not actionable." " Masson v. New Yorker Magazine, Inc., 960 F.2d 896, 898 (9th Cir.1992) (quoting Herbert v. Lando, 781 F.2d 298, 311 (2d Cir.1986)); see also Tel. Publ'g Co., 929 A.2d at 1002"03.20 | "Incremental harm doctrine" measures harm inflicted by allegedly defamatory statements beyond harm imposed by rest of publication, and if that harm is determined to be nominal or nonexistent, statements are dismissed as not actionable. | What is the incremental harm doctrine? | 000563.docx | LEGALEASE-00117660-LEGALEASE-00117662 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12012 | Monarch Min. Co. v. State Highway Comm'n, 128 Mont. 65 | 64+33 | "A clear distinction between taxes and tolls appears to be recognized. Taxes are levied for the support of government, and their amount is regulated by its necessities. Tolls are the compensation for the use of another's property, or of improvements made by him; their amount is determined by the cost of the property, or of the improvements, and a consideration of the return which such values or expenditures should yield. It has been stated that a tax is a demand of a sovereignty; a toll is a demand of proprietorship. Thus, there is no analogy between the imposition of taxes and the levying of tolls for inprovement of highways." 51 Am.Jur., Taxation, " 17, p. 49. Compare 11 C.J.S., Bridges, " 51, p. 1079; Sjostrum v. State Highway Commission, 124 Mont. 562, 565, 228 P.2d 238; State v. McKinney, 29 Mont. 375, 388, 74 P. 1095; Brackman v. Kruse, 122 Mont. 91, 104, 199 P.2d 971; People ex rel. Curren v. Schommer, 392 Ill. 17, 63 N.E.2d 744, 167 A.L.R. 1347 and note at p. 1356; Sands v. Manistee River Imp. Co., 123 U.S. 288, 8 S.Ct. 113, 31 L.Ed. 149. | A distinction exists between taxes and tolls, in that a tax is a demand of the sovereignty levied for support of the government, and its amount is regulated by its necessities, while "tolls" are the demands of proprietorship, exacted as compensation for use of another's property. | Does paying a road toll constitute the payment of taxes? | 000317.docx | LEGALEASE-00117969-LEGALEASE-00117970 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 12013 | Hukic v. Aurora Loan Servs., 588 F.3d 420 | 241+55(1) | The question instead seems to be whether Illinois would apply the "single publication rule." "It is the general rule that each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises." Restatement (Second) of Torts " 577A cmt. a (1977); see also Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 n.3, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) (quoting comment a to Restatement). The exception to this general rule is what is known as the "single publication rule." Illinois has enacted the Uniform Single Publication Act, pursuant to which a person has only a single cause of action for any defamation founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture.740 Ill. Comp. Stat. 165/1; see Schaffer v. Zekman, 196 Ill. App. 3d 727, 554 N.E.2d 988, 993 n.2, 143 Ill. Dec. 916 (Ill. App. Ct. 1990) (stating that Uniform Single Publication Act applies to defamation claims). When the statute applies, the cause of action accrues on the single date of first publication. Blair, 859 N.E.2d at 1193; Winrod v. MacFadden Publ'ns, 187 F.2d 180, 183 (7th Cir. 1951). By arguing that the defamation cause of action accrued only in January 2001, Aurora and Ocwen seem to be taking the position that their later communications to consumer reporting agencies would fall under the single publication rule. | When the single publication rule applies under Illinois law, as an exception to the general rule that each communication of the same defamatory matter by the same defamer is a distinct publication giving rise to a separate cause of action, a claim for defamation accrues, and one-year statute of limitations begins to run, on the single date of first publication. S.H.A. 740 ILCS 165/1. | Is the single publication rule an exception to the general rule? | 000829.docx | LEGALEASE-00117902-LEGALEASE-00117904 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 12014 | Wolfe v. Wolfe, 393 S.W.3d 42 | 106+85(1) | The rules of civil procedure "govern procedure and practice in all actions of a civil nature in the Court of Justice except for special statutory proceedings, in which the procedural requirements of the statute shall prevail over any inconsistent procedures set forth in the Rules." CR 1(2).Essentially, this makes the Civil Rules applicable to all civil actions ... while also recognizing that those rules may not be the best approach to some types of cases, namely, "special statutory proceedings." Under CR 1, the Civil Rules still apply to such proceedings, but any procedures that the General Assembly prescribes control where they conflict with the Civil Rules.C.C. v. Cabinet for Health and Family Services, 330 S.W.3d 83, 86 (Ky.2011) (emphasis in original). | The rules of civil procedure apply to special statutory proceedings, but any procedures that the General Assembly prescribes control where they conflict with the civil rules. Rules Civ.Proc., Rule 1. | Do Civil Rules apply to special statutory proceedings? | 000853.docx | LEGALEASE-00117883-LEGALEASE-00117884 | Condensed, Order, SA | 0.74 | 1 | 1 | 0 | 1 | 1 |
| 12015 | Zink v. Merrill Lynch Pierce Fenner & Smith, 13 F.3d 330 | 25T+413 | The agreement reads: "[A]ny controversy between [the parties] arising out of [plaintiff's] business or this agreement shall be submitted to arbitration" (emphasis added). In reviewing this language we are guided by the principal that arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage. See AT & T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 648-50, 106 S.Ct. 1415, 1418-19, 89 L.Ed.2d 648 (1986); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1983); Bridgestone/Firestone, Inc., 4 F.3d at 921. In this light the arbitration agreement is clearly broad enough to cover the dispute at issue despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the agreement. See Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1028 (11th Cir.1982) ("An arbitration clause covering disputes arising out of the contract or business between the parties evinces a clear intent to cover more than just those matters set forth in the contract."). Plaintiff's contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced. Such a suggestion runs contrary to contract principles which govern arbitration agreements. See Bridgestone/Firestone, Inc., 4 F.3d at 921; Belke, 693 F.2d at 1028. | Arbitration clause in account agreement between investor and securities broker applied to dispute arising from bond transactions, even though transactions occurred prior to execution of agreement; agreement stated that any controversy between parties arising out of investor's business or agreement would be submitted to arbitration, and inclusion of disputes arising out of investor's business evinced intent to cover more than just those matters set forth in agreement. | How do the Courts construe arbitration agreements? | 001012.docx | LEGALEASE-00118015-LEGALEASE-00118017 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12016 | Weeks v. Harden Mfg. Corp., 291 F.3d 1307 | 25T+113 | Although previously disfavored by the courts, arbitration agreements to resolve disputes between parties have now received near universal approval. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 626"27, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) ("[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution."). Congress demonstrated its approval of arbitration by enacting the Federal Arbitration Act ("FAA") in 1925. The FAA's purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place agreements to arbitrate on the same footing as other contracts. See Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219"220, and n. 6, 105 S.Ct. 1238, 1241"1242, and n. 6, 84 L.Ed.2d 158 (1985); Scherk v. Alberto"Culver Co., 417 U.S. 506, 510 n. 4, 94 S.Ct. 2449, 2453 n. 4, 41 L.Ed.2d 270 (1974). Its primary substantive provision states that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. | Although previously disfavored by the courts, arbitration agreements to resolve disputes between parties have now received near universal approval. | Has arbitration as an alternative dispute resolution received universal approval? | 001021.docx | LEGALEASE-00118022-LEGALEASE-00118023 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 12017 | D.R. Horton v. N.L.R.B., 737 F.3d 344 | 25T+210 | When considering whether a contrary congressional command is present, courts must remember "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26, 111 S.Ct. 1647 (quotation marks and citation omitted). The party opposing arbitration bears the burden of showing whether a congressional command exists. Id. Any doubts are resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). | When considering whether contrary congressional command is present, courts must remember that questions of arbitrability must be addressed with healthy regard for federal policy favoring arbitration; party opposing arbitration bears burden of showing whether congressional command exists, and any doubts are resolved in favor of arbitration. 9 U.S.C.A. S 1 et seq. | Question What burden is placed upon the party who opposes arbitration? | Alternative Dispute Resolution - Memo 169 - RK.docx | LEGALEASE-00004909-LEGALEASE-00004910 | Condensed, SA | 0.34 | 0 | 1 | 0 | 1 | |
| 12018 | Covalt v. High, 675 P.2d 999 | 289+564 | Except where the partners expressly agree to the contrary, it is a fundamental principle of the law of partnership that all partners have equal rights in the management and conduct of the business of the partnership. NMSA 1978, " 54"1"18(E); see also Rogers v. McDonald, 224 Ga. 599, 163 S.E.2d 719 (1968); Elle v. Babbitt, 259 Or. 590, 488 P.2d 440 (1971). As specified in the Uniform Partnership Act adopted by New Mexico, where there is a difference of opinion between the partners as to the management or conduct of the partnership business, the decision of the majority must govern. NMSA 1978, " 54"1"18(H). | Except where partners expressly agreed to contrary, all partners have equal rights in management and conduct of business of partnership, and where there is difference of opinion between partners as to management or conduct of partnership business, decision of majority must govern. N.M.S.A. 1978, S 54-1-18, subds. E, H. | Do partners in a partnership business have rights in the management and conduct of the business? | 022165.docx | LEGALEASE-00117977-LEGALEASE-00117978 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 12019 | Shaffer v. ACS Gov't Servs., 454 F. Supp. 2d 330 | 231H+1 | Here, ACS asserts that Shaffer's poor job performance was the reason for his termination. In his deposition, Plaintiff admits that on January 30, 2003 when Frank Burke called Plaintiff into his office to formally discharge him, Burke told him that "its not working out ... it's your performance." Shaffer Dep. at 132:15"22. Plaintiff had failed to close new business and had missed several opportunities. According to Charles Kelly, the then-Vice President of Human Resources at ACS, Shaffer "was not terminated for going to jury duty, he was terminated for his job performance or lack thereof." Kelly Dep. at 38:1"3. In the absence of an employment contract, an employment relationship is at-will. This means that the relationship can be terminated at any time and for any reason by either the employer or employee. The only limitation on this general rule is that the reason cannot be an illegal reason. If ACS honestly believed that Shaffer's job performance was unsatisfactory, then it was within ACS's prerogative to terminate him for that reason. Making employment decisions, even the decision to terminate someone's employment, based on employee performance, is certainly a legitimate and legal reason. Although Plaintiff may disagree with Defendant's opinion of his job performance or the wisdom of the decision to discharge him, such disagreement does not make the decision illegal or retaliatory. The Court will not pass judgment on the wisdom or fairness of an employer's legitimate business decisions. See Hawkins v. PepsiCo., Inc., 203 F.3d 274, 281 (4th Cir.2000). Therefore, Defendant has met it's burden under the McDonnell Douglas test by articulating a legitimate reason for Plaintiff's discharge. | Court will not pass judgment on wisdom or fairness of employer's legitimate employment-related business decisions. | Will the courts pass judgment on the wisdom or fairness of an employer's legitimate business decisions? | 000804.docx | LEGALEASE-00117791-LEGALEASE-00117792 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12020 | Zimmerer v. Clayton, 7 N.J.Tax 15 | 315+306 | This position has no merit. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." N.J.S.A. 42:1"6. As will be seen below, a partnership for purposes of transferring realty is a distinct legal entity. A tenancy in common, on the other hand, generally "exists whenever an estate in real or personal property is owned concurrently by two or more persons under a conveyance or circumstances which do not expressly or impliedly call for some other form of co-tenancy." Mandelbaum v. Weiss, 11 N.J.Super. 27, 30, 77 A.2d 493 (App.Div.1950). Thus, the term "partnership" describes a kind of legal entity whereas the term "tenancy in common" describes a form of property ownership. The two terms are not interchangeable. Furthermore, as defendants point out, the father and son derived certain benefits from operating as a partnership. They cannot recharacterize the form under which they do business to exempt themselves from a particular tax. Tax consequences must be determined based upon what actually occurs. General Trading Co. v. Taxation Div. Director, 83 N.J. 122, 138, 416 A.2d 37 (1980). I therefore hold that the subject transfers do not constitute a partition and are not exempt from the fee under N.J.S.A. 46:15"10(f). | "Partnership" describes kind of legal entity whereas term "tenancy in common" describes form of property ownership, and the two terms are not interchangeable. N.J.S.A. 42:1-6. | How is tenancy in common different from a partnership? | 000630.docx | LEGALEASE-00118275-LEGALEASE-00118276 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12021 | In re Bub, 528 B.R. 555 | 315+606 | Under New York case, law, title to a motor vehicle is transferred when the parties intend such transfer to occur. Potter v. Keefe, 261 A.D.2d 864, 690 N.Y.S.2d 361 (4th Dept.1999) (other citations omitted). In this case, the Debtor obtained title to the Viper at the latest, on November 10, 2011, upon submission of the application to the Department of Motor Vehicles for transfer of title. As this was prior to the Petition Date, the Debtor had legal title to the Viper as of the Petition Date. Therefore, the Viper was property of the Debtor's estate, albeit encumbered by a claim asserted by Jaylyn Sales, and in the possession of a third party at the direction of Jaylyn Sales. Because the Trustee's objections are based on this argument alone, its motion is denied. | Under New York case law, title to motor vehicle is transferred when the parties intend such a transfer to occur. | Does the title to motor vehicle get transferred when the parties intend such a transfer to occur? | Property - Memo 30 - RM.docx | ROSS-003286411-ROSS-003286413 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12022 | Booker v. Robert Half Int'l, 315 F. Supp. 2d 94 | 25T+140 | Recent federal case law confirms the propriety of severing an unenforceable limitation on punitive damages. In Morrison, the en banc Sixth Circuit concluded under Ohio law that a severability clause whose applicability was uncertain should be applied to sever unenforceable cost-splitting and remedies-limiting provisions from an otherwise enforceable arbitration agreement. See 317 F.3d at 674"75. The court was persuaded to do so because "Supreme Court precedent dictates that we resolve any doubts as to arbitrability "in favor of arbitration." " Id. at 675 (quoting Moses H. Cone Memorial Hosp., 460 U.S. at 24"25, 103 S.Ct. 927). The Morrison court followed the Eighth Circuit decision in Gannon v. Circuit City Stores, Inc. 262 F.3d 677, 680 (8th Cir.2001), which held that a severability clause reflected "an unambiguous intent by the parties to sever any terms determined to be invalid and to allow all claims to proceed to arbitration under the remaining provisions of the agreement." "[K]eeping in mind that the FAA evinces a "liberal federal policy favoring arbitration agreements," " id. at 680 (quoting Moses H. Cone Memorial Hosp., 460 U.S. at 24, 103 S.Ct. 927), the court in Gannon rejected public policy arguments similar to those raised here by plaintiff and the EEOC, concluding that "[t]he punitive damages clause represents only one aspect of their agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes," id. at 681. See also EEOC v. Astra, 94 F.3d 738 (1st Cir.1996) (severing from a settlement agreement a provision that contravened public policy); EEOC v. Cosmair, 821 F.2d 1085, 1091 (5th Cir.1987) (court may enforce remainder of agreement where one part is unenforceable as violative of public policy). | Pursuant to severability provision of employment agreement, unenforceable provision in arbitration clause of agreement excluding punitive damages as remedy in arbitration would be severed, so as to permit enforcement of clause in employment discrimination suit brought under the District of Columbia Human Rights Act (DCHRA), where there was no evidence that employer drafted the agreement, or the arbitration clause specifically, in bad faith or in an attempt to contravene public policy, and the agreement was not permeated with invalid provisions. D.C. Official Code, 2001 Ed. S 2-1401.01 et seq. | Can a punitive damage clause be severed from an arbitration agreement? | 001170.docx | LEGALEASE-00118410-LEGALEASE-00118412 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 12023 | Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110 | 25T+114 | 9 U.S.C. " 2.The FAA was enacted to "revers[e] centuries of judicial hostility to arbitration agreements" by " "plac[ing] arbitration agreements "upon the same footing as other contracts." " " Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225"26, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987), quoting Scherk v. Alberto"Culver Co., 417 U.S. 506, 510"511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974). Clearly, the Cash Management Agreements are contracts involving commerce and therefore come within the Act. | Federal Arbitration Act (FAA) was enacted to reverse centuries of judicial hostility to arbitration agreements by placing arbitration agreements upon same footing as other contracts; it was not enacted to promote expeditious resolution of claims. 9 U.S.C.A. S 2. | Did the Federal Arbitration Act (FAA) reverse judicial hostility to arbitration agreements? | 05337.docx | LEGALEASE-00080813-LEGALEASE-00080814 | Condensed, SA | 0.49 | 0 | 1 | 0 | 1 | |
| 12024 | In re Pearl Companies, 435 B.R. 742 | 51+3031 | The Union argues: (1) that the pending arbitration is not a core proceeding because it arises under the Agreement and not bankruptcy law, and; (2) that this Court therefore does not have discretion to decline to enforce the Agreement under Eleventh Circuit law. Contrary to the Union's assertion, this arbitration is a proceeding "affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship," and is therefore a core proceeding. This, however, does not end the inquiry.Bankruptcy courts should enforce arbitration agreements (even in core matters) so long as they do not conflict with the underlying purposes of the Bankruptcy Code. | Bankruptcy courts should enforce arbitration agreements, even in core matters, so long as they do not conflict with the underlying purposes of the Bankruptcy Code. | Can arbitration agreements be enforced in bankruptcy courts? | Alternative Dispute Resolution - Memo 201 - RK.docx | ROSS-003302160-ROSS-003302162 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 12025 | Atterburg v. Anchor Motor Freight, 425 F. Supp. 841 | 25T+132 | Although arbitration is a matter of contract, "(the) agreement to arbitrate a particular issue need not be express it may be implied from the conduct of the parties". Ficek v. Southern Pacific Co., 338 F.2d 655, 656 (9th Cir. 1964), cert. denied, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965). The submission of these disputes, without any protest regarding the propriety of the submission until after their final resolution, evidences a consent on the part of the parties involved to abide by the final determination. See Id. ; Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp., 274 F.2d 805, 809 (2d Cir.), cert. denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960); Island Creek Coal Sales Co. v. Indiana-Kentucky Elec. Corp., 366 F.Supp. 350, 353 (S.D.N.Y.1973). Furthermore, it has been stated that (a) claimant may not voluntarily submit his claims to arbitration, await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrators to act. Ficek v. Southern Pacific Co., supra at 657. Thus, it appears that any resolution regarding claims which were processed pursuant to the grievance/arbitration procedure are final and binding. | Although arbitration is a matter of contract, the agreement to arbitrate a particular issue need not be express; it may be implied from conduct of parties. | Can an agreement to arbitrate a particular issue be implied? | 001191.docx | LEGALEASE-00118426-LEGALEASE-00118427 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12026 | Lee v. Bankers Tr. Co., 166 F.3d 540 | 237+1.6 | Lee is domiciled in New Jersey. Even if we were inclined to ignore the lex loci delicti, New Jersey law would still apply. Under New York choice-of-law rules in defamation cases "the state of the plaintiff's domicile will usually have the most significant relationship to the case," and its law will therefore govern. Reeves v. American Broad. Co., 719 F.2d 602, 605 (2d Cir.1983). Although the preference for the plaintiff's domicile is not conclusive, " "the significant contacts [in a defamation case] are, almost exclusively, the parties' domiciles and the locus of the tort." " AroChem Int'l, Inc. v. Buirkle, 968 F.2d 266, 270 (2d Cir.1992) (quoting Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)). Under these circumstances, New York choice-of-law rules require us to apply New Jersey substantive law. See Reeves, 719 F.2d at 605. | Under New York choice-of-law rules in defamation cases, the state of the plaintiff's domicile will usually have the most significant relationship to the case, and its law will therefore govern. | What is the choice of law rule in defamation law? | 05377.docx | LEGALEASE-00080817-LEGALEASE-00080819 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12027 | Navajo Health Found.-Sage Mem'l Hosp., Inc v. Burwell, 220 F. Supp. 3d 1190 | 209+109 | The Indian canon of construction requires that courts liberally construe treaties, agreements, statutes, and executive orders in favor of American Indians. See Montana v. Blackfeet Tribe, 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985). See generally Philip P. Frickey, Marshalling Past and Present: Colonialism, Constitutionalism, and Interpretation in Federal Indian Law, 107 Harv. L. Rev. 381, 400"40 (1993)(offering a scholarly commentary on the Indian canon). Courts are to construe treaties and other agreements as the American Indians who entered into the treaties or agreements would have understood them. See, e.g., Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 196, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999)("[W]e interpret Indian treaties to give effect to the terms as the Indians themselves would have understood them.")Any ambiguity in an agreement is to be resolved in favor of American Indians.See, e.g., Carpenter v. Shaw, 280 U.S. 363, 367, 50 S.Ct. 121, 74 L.Ed. 478 (1930). | The Indian canon of construction requires that courts liberally construe treaties, agreements, statutes, and executive orders in favor of American Indians. | Will the courts construe Indian law liberally? | 019421.docx | LEGALEASE-00118231-LEGALEASE-00118232 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12028 | Swinomish Indian Tribal Cmty. v. BNSF Ry. Co., 228 F. Supp. 3d 1171 | 209+109 | As discussed above, neither the STB nor the courts view the reference to federal law in " 10501(b) as an explicit preemption of all federal law. The question, then, is whether the ICCTA contains "a clearly expressed congressional intention" to repeal the IRWA when the right of way at issue is held by a railroad. Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). "An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." Branch v. Smith, 538 U.S. 254, 273, 123 S.Ct. 1429, 155 L.Ed.2d 407 (2003). "If an apparent conflict exists between ICCTA and a federal law, then the courts must strive to harmonize the two laws, giving effect to both laws if possible." Ass'n of Am. R.R. v. S. Coast Air Quality Mgmt. Dist., 622 F.3d 1094, 1097 (9th Cir. 2010). When construing statutes that touch on Indian law, special principles of construction apply that "are rooted in the unique trust relationship between the United States and the Indians." Oneida County v. Oneida Indian Nation, 470 U.S. 226, 247, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985). At least one such canon is relevant here: that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." Mont. v. Blackfeet Tribe of Indians, 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985). | When construing statutes that touch on Indian law, special principles of construction apply that are rooted in the unique trust relationship between the United States and the Indians. | How do courts construe statutes with regard to Indian tribes? | 019429.docx | LEGALEASE-00118261-LEGALEASE-00118263 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12029 | United States v. Tarbell, 242 F. Supp. 3d 200 | 209+119 | The cigarettes the Defendant possessed are subject to the federal excise tax on cigarettes. This is true despite the fact that the Defendant is a member of the St. Regis Mohawk Tribe. It is also true despite the fact that the cigarettes appear to have been manufactured on the Akwesasne Reservation. "In the absence of a clear expression to the contrary, general acts of Congress apply to Indians, like all other citizens. As the Supreme Court held in Squire v. Capoeman, 351 U.S. 1, 6, 76 S.Ct. 611, 100 L.Ed. 883 (1956), Indians "are subject to the payment of income taxes as are other citizens. To be valid, exemptions to tax laws should be clearly expressed." Although this general rule was applied specifically to income tax, the rule applies equally to the federal excise tax in question." Cook v. United States, 86 F.3d 1095, 1097 (Fed. Cir. 1996) (citation, ellipsis, and brackets omitted) (holding that sales of diesel fuel by Native American retailers are subject to federal excise tax on diesel fuel). Nothing in 26 U.S.C. " 5701(b)(1) or Chapter 52 of the IRC suggests"much less "clearly expresse[s]," Squire, 351 U.S. at 6, 76 S.Ct. 611"that cigarettes manufactured on a Native American reservation are exempt from the federal excise tax on cigarettes.5 Thus, the Defendant may not argue that the cigarettes he possessed were not subject to federal excise tax. | In the absence of a clear expression to the contrary, general acts of Congress apply to Indians, like all other citizens. | Do the general acts of Congress apply to Indians like other citizens? | 019438.docx | LEGALEASE-00118317-LEGALEASE-00118319 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12030 | Florida Paraplegic, Ass'n v. Miccosukee Tribe of Indians of Florida, 166 F.3d 1126 | 209+235 | It is undisputed that the Miccosukee Tribe never waived sovereign immunity with respect to Title III in general or this lawsuit in particular.Thus, the Tribe retains its common law immunity from private suit unless Congress "unequivocally expressed" its intent toabrogate Indian tribes' sovereign immunity under this statute. Martinez, 436 U.S. at 58, 98 S.Ct. at 1677. Although the Supreme Court has not elaborated on this waiver standard in the context of tribal sovereign immunity, the same standard applies in determining whether Congress has abolished federal and state governments' protection from suit.11 In this broader context of sovereign immunity, the Court has held that Congress may abrogate a sovereign'simmunity "only by making its intention unmistakably clear in the language of the statute"; legislative history and "inferences from general statutory language" are insufficient. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). We see no reason to adopt a different standard for evaluating Congressional intent with respect to the waiver of tribal sovereign immunity. 12 This determination is strengthened by the Supreme Court's repeated instruction that, because of the "unique trust relationship between the United States and the Indians," where Indian rights are at issue, ambiguities in federal laws must be resolved to the Indians' advantage. Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766, 105 S.Ct. 2399, 2403, 85 L.Ed.2d 753 (1985).We conclude, therefore, that Congress abrogates tribal immunity only where the definitive language of the statute itself states an intent either to abolish Indian tribes' common law immunity or to subject tribes to suit under the act. | Where Indian tribe has not waived sovereign immunity under statute, tribe retains its common law immunity from private suit unless Congress unequivocally expressed its intent to abrogate Indian tribes' sovereign immunity under the statute. | How do Indian tribes enjoy their tribal sovereign immunity? | 019446.docx | LEGALEASE-00118311-LEGALEASE-00118313 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12031 | Ramos v. U.S., 260 F.Supp. 479 | 289+408 | The basic concept of a partnership is a group of persons having a common business interest, working together in their respective spheres toward the successful operation and conduct of that business interest. It does not connote the idea that each and every working partner must punch a clock at eight o'clock in the morning and work continuously through the day until five o'clock. Dolores devoted her energies, skill and ability toward the paper work of the partnership in all that was required of her and thereby fully performed her responsibility to the partnership. Young Ramos, after doing all he could to complete the 1955 harvest and to prepare for 1956, went into the Navy and thereafter continued to do everything he could within the limits of military service by keeping abreast of ranch affairs, giving advice on farming matters, expressing his concern over ranch operations and by working on the ranch during some of the days of his Christmas furlough. In 1957 he worked continuously on the ranch from the date of his discharge from the Navy on October 4, 1957 to the end of the year. In speaking of the arrangement with his father at the time of his enlistment, he said: "It was an understanding we had, that I had with my father, that he would take care of things while I was gone and when I came back, I would make it up, and then he could take it easy." (Tr. 464-465). | "Partnership" is group of persons having common business interests, working together in their respective spheres toward successful operation and conduct of that business interest and it is not required that each and every working partner must devote entire time and attention to partnership. | Is common interest in a business necessary to form a partnership? | 022120.docx | LEGALEASE-00118271-LEGALEASE-00118272 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 12032 | U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637 | 315+607 | Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor. See G.L. c. 183, " 3; Saint Patrick's Religious, Educ. & Charitable Ass'n v. Hale, 227 Mass. 175, 177, 116 N.E. 407 (1917). In a "title theory state" like Massachusetts, a mortgage is a transfer of legal title in a property to secure a debt. See Faneuil Investors Group, Ltd. Partnership v. Selectmen of Dennis, 458 Mass. 1, 6, 933 N.E.2d 918 (2010). Therefore, when a person borrows money to purchase a home and gives the lender a mortgage, the homeowner-mortgagor retains only equitable title in the home; the legal title is held by the mortgagee. See Vee Jay Realty Trust Co. v. DiCroce, 360 Mass. 751, 753, 277 N.E.2d 690 (1972), quoting Dolliver v. St. Joseph Fire & Marine Ins. Co., 128 Mass. 315, 316 (1880) (although "as to all the world except the mortgagee, a mortgagor is the owner of the mortgaged lands," mortgagee has legal title to property); Maglione v. BancBoston Mtge. Corp., 29 Mass.App.Ct. 88, 90, 557 N.E.2d 756 (1990). Where, as here, mortgage loans are pooled together in a trust and converted into mortgage-backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home or farm and must be treated as such. | Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor. M.G.L.A. c. 183, S 3. | Does a conveyance of an interest in land require a writing signed by the grantor? | Property - Memo 37 - RM.docx | ROSS-003283506-ROSS-003283507 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 12033 | State v. Flores, 2015 WL 5038535 | 207+2 | La.R.S. 14:78.1(B)(2) of the aggravated incest statute is also not vague. It is a general prohibition against lewd fondling or touching with the intent of arousing sexual desires of the child or the relative. The courts of this state have consistently rejected vagueness challenges to the word, "lewd" as well as to the phrase "with the intent of arousing sexual desires." State v. Holstead, 354 So.2d 493 (La.1977); State v. Free, 26,267 (La.App. 2d Cir. 09/21/94), 643 So.2d 767, writ denied 94"2846 (La. 03/10/95), 650 So.2d 1175; State v. Walters, 440 So.2d 115 (La.1983). | Provision of aggravated incest statute prohibiting lewd fondling or touching with intent of arousing sexual desires of child or relative was not unconstitutionally vague. U.S.C.A. Const.Amend. 14; LSA-R.S. 14:78.1, subd. B(2). | Does lewd fondling amount to incest? | 001284.docx | LEGALEASE-00118518-LEGALEASE-00118519 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 12034 | Boylston Hous. Corp. v. O'Toole, 321 Mass. 538 | 92+1114 | Since no individual member of Local No. 4 was bound by contract to enter the employment of the defendant Otis Elevator Company for work in installing the elevator in the plaintiff's building, no such member in the absence of circumstances hereinafter considered, had any duty to enter such employment or would be guilty of any wrong to the plaintiff in refusing to enter such employment. Each such member, not being bound by contract to enter such employment, had the right in the absence of special circumstances to refuse to enter such employment "on any ground pleasing to himself" (Armstrong Cork & Insulation Co. v. Walsh, 276 Mass. 263, 273, 177 N.E. 2, 5, including the ground that nonunion workmen were working on the building. "Every person has a legal right to dispose of his own labor as he wishes, and to work for whom he pleases. He may refuse to work with another because that person is distasteful to him, or for any other reason. Plant v. Woods, 176 Mass. 492, 498, 57 N.E. 1011, 51 L.R.A. 339, 79 Am.St.Rep. 330; Pickett v. Walsh, 192 Mass. 572, 582, 78 N.E. 753, 6 L.R.A.,N.S., 1067, 116 Am.St.Rep. 272, 7 Ann.Cas. 638." Mechanics' Foundry & Machine Co. v. Lynch, 236 Mass. 504, 505, 128 N.E. 877, 12 A.L.R. 1057. This right is not in conflict with or subordinate to the right of the defendant Otis Elevator Company, or of the plaintiff, to a "free flow of labor" for employment by the defendant Otis Elevator Company for work on the plaintiff's building. The "right to a free flow of labor" is a right "to which every member of the community is entitled for the purpose of carrying on the business in which he or it has chosen to embark" (Haverhill Strand Theatre, Inc. v. Gillen, 229 Mass. 413, 418, 118 N.E. 671, 673, L.R.A.1918C, 813, Ann.Cas.1918D, 650), that is, the right of a member of the community "at all times to hire in the labor market, and to retain in [its] employment, such workmen as [it] might choose." Folsom Engraving Co. v. McNeill, 235 Mass. 269, 277, 126 | Every person has a right to dispose of his own labor as he wishes, and to work for whom he pleases, and he may refuse to work with another because that person is distasteful to him, or for any other reason. | Does a person have a legal right to dispose of his own labor as he wishes? | Labor and Employment - Memo 26 - VP.docx | ROSS-003297081-ROSS-003297083 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 12035 | Debrincat v. Fischer, 217 So. 3d 68 | 249+40 | Accordingly, we hold that the litigation privilege does not bar the filing of a claim for malicious prosecution that was based on adding a party defendant to a civil suit. We approve the Fourth District's decision in Fischer and disapprove the Third District's decision in Wolfe to the extent it is inconsistent with this decision. | Litigation privilege does not bar the filing of a claim for malicious prosecution that was based on adding a party defendant to a civil suit; disapproving Wolfe v. Foreman, 128 So. 3d 67. | Does litigation privilege bar an action for malicious prosecution? | 001489.docx | LEGALEASE-00118618-LEGALEASE-00118619 | Condensed, SA | 0.44 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12036 | Jackson ex rel. Jackson v. Reid, 363 Ill. App. 3d 271 | 401+2 | " "Proper venue is an important statutory privilege." " Corral, 217 Ill.2d at 154, 298 Ill.Dec. 201, 839 N.E.2d at 530, quoting Bucklew v. G.D. Searle & Co., 138 Ill.2d 282, 288, 149 Ill.Dec. 722, 562 N.E.2d 186 (1990). "Statutes relating to venue reflect a legislative determination that a party should not be required to defend an action in a county that has little or no relation to the party or the transaction that is the subject of the suit." (Emphasis added.) Johnson v. Compost Products, Inc., 314 Ill.App.3d 231, 236, 247 Ill.Dec. 175, 731 N.E.2d 948, 952 (2000), abrogated on other grounds in Corral, 217 Ill.2d at 150"55, 298 Ill.Dec. 201, 839 N.E.2d at 528"31. "Venue statutes restrict proper venue to places that are convenient either to the defendant or to potential witnesses." Lake County Riverboat L.P. v. Illinois Gaming Board, 313 Ill.App.3d 943, 951, 246 Ill.Dec. 499, 730 N.E.2d 524, 530 (2000). If the defendant proves that venue is improper, the trial court must transfer the case to a proper venue. Lake County Riverboat L.P., 313 Ill.App.3d at 951, 246 Ill.Dec. 499, 730 N.E.2d at 530. | Statutes relating to venue reflect a legislative determination that a party should not be required to defend an action in a county that has little or no relation to the party or the transaction that is the subject of the suit. | What is the legislative intent behind the venue statute? | 001521.docx | LEGALEASE-00118508-LEGALEASE-00118509 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 12037 | Adamovic v. METME Corp., 961 F.2d 652 | 25T+113 | We cannot say with positive assurance which party has it right. Adamovic conceded at oral argument that the clause is hopelessly ambiguous; METME says, even so, federal policy tips the scales in its favor. It is well established, however, that the federal policy favoring arbitration does not give us license to compel arbitration absent an agreement to do so. See Mitsubishi Motors, 473 U.S. at 626, 105 S.Ct. at 3353"54. True, the scales tip in favor of arbitration when we construe an arbitration clause, see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941"42, 74 L.Ed.2d 765 (1983), but only after we find, as an initial matter, that an enforceable arbitration clause exists. Graphic Communications Union, Local No. 2 v. Chicago Tribune, 794 F.2d 1222, 1225 (7th Cir.1986). | Scales tip in favor of arbitration when Court of Appeals construes arbitration clause, but only after court finds, as initial matter, that enforceable arbitration clause exists. | Do the scales tip in favor of arbitration when courts construe an arbitration clause? | Alternative Dispute Resolution - Memo 213 - RK.docx | ROSS-003285456-ROSS-003285457 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 12038 | David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London), 923 F.2d 245 | 25T+113 | The policy in favor of arbitration is even stronger in the context of international business transactions. Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 629"31, 105 S.Ct. 3346, 3355"56, 87 L.Ed.2d 444 (1985); Scherk v. Alberto"Culver Co., 417 U.S. 506, 516"518, 94 S.Ct. 2449, 2455"57, 41 L.Ed.2d 270 (1974). Enforcement of international arbitral agreements promotes the smooth flow of international transactions by removing the threats and uncertainty of time-consuming and expensive litigation. The parties may agree in advance as to how their disputes will be expeditiously and inexpensively resolved should their business relationship sour. See Scherk, 417 U.S. at 516"17, 94 S.Ct. at 2455"56. Stability in international trading was the engine behind the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. 6997, 330 U.N.T.S. 38, (Dec. 29, 1970) ("Convention") (implemented by the Federal Arbitration Act ("Arbitration Act"), 9 U.S.C. " 201 et seq. (1988)). This treaty"to which the United States is a signatory"makes it clear that the liberal federal arbitration policy "applies with special force in the field of international commerce." Mitsubishi, 473 U.S. at 631, 105 S.Ct. at 3356 | Federal policy favoring arbitration is even stronger in context of international business transactions. | Is federal policy favoring arbitration stronger in the context of international business transactions? | 001712.docx | LEGALEASE-00118757-LEGALEASE-00118758 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 12039 | Oneida Cty., N.Y. v. Oneida Indian Nation of New York State, 470 U.S. 226 | 209+245 | There is no federal statute of limitations governing federal common-law actions by Indians to enforce property rights. In the absence of a controlling federal limitations period, the general rule is that a state limitations period for an analogous cause of action is borrowed and applied to the federal claim, provided that the application of the state statute would not be inconsistent with underlying federal policies. See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975). See also Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977). We think the borrowing of a state limitations period in these cases would be inconsistent with federal policy. Indeed, on a number of occasions Congress has made this clear with respect to Indian land claims. | Although there is no federal statute of limitations governing federal common-law actions by Indians to enforce property rights, borrowing of a state limitations period would be inconsistent with federal policy against application of state statutes of limitations in context of Indian land claims. 28 U.S.C.A. SS 2415, 2415(c); Indian Claims Limitation Act of 1982, SS 3-6, 5(c), 28 U.S.C.A. S 2415 note. | What is the general federal policy regarding statute of limitations applicable to Indian land claims? | Indians - Memo 24 - TH.doc | LEGALEASE-00006249-LEGALEASE-00006250 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 12040 | Barber v. H & H Muller Enterprises, 197 Ga. App. 126 | 168+3 | The difference between malicious prosecution and malicious arrest is that the former contains the additional element of showing that a prosecution, whatever its extent, was carried on and terminated in favor of the plaintiff. | Difference between "malicious prosecution" and "malicious arrest" is that malicious prosecution contains additional element of showing that prosecution, whatever its extent, was carried on and terminated in favor of plaintiff. O.C.G.A. S 51-7-40. | What is the difference between malicious prosecution and malicious arrest? | 001842.docx | LEGALEASE-00118807-LEGALEASE-00118808 | SA, Sub | 0.11 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12041 | Adelson v. Harris, 973 F. Supp. 2d 467 | 379+103 | This Court sits in New York and therefore applies New York choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In tort actions, New York courts apply the substantive law of the jurisdiction that has the most significant interest in "the specific issue raised in the litigation." Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 196, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985) (quoting Babcock v. Jackson, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963)). In determining the interests of a jurisdiction in a particular tort, New York courts assess whether the state laws in conflict are primarily "conduct-regulating" or "loss allocating." Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 522, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994). Conduct-regulating rules are those "governing conduct to prevent injuries from occurring," while loss allocating rules "are those which prohibit, assign, or limit liability after the tort occurs...." Id. Compare Cacciola v. Selco Balers, Inc., 127 F.Supp.2d 175, 184 (E.D.N.Y.2001) (causes of action involving the duty and standard of care applicable to manufacturers, are, for choice of law purposes, conduct-regulating), with Armstead v. Nat'l R.R. Passenger Corp., 954 F.Supp. 111, 113 (S.D.N.Y.1997) (determination of whether to apply Virginia's contributory negligence or New York's comparative negligence rule is primarily loss allocating, because both "rules significantly encourage plaintiffs to exercise due care" and "the primary difference is in how loss will be allocated after the tort occurs"). If the laws at issue are primarily conduct-regulating, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Cooney v. Osgood Mach., 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993). If they are loss allocating, the so-called "Neumeier rules" apply. See Neumeier v. Kuehner, 31 N.Y.2d 121, 129, 335 N.Y.S.2d | Under New York law, "conduct-regulating rules," for choice-of-law purposes, are those governing conduct to prevent injuries from occurring, while "loss allocating rules" are those that prohibit, assign, or limit liability after tort occurs. | What are conduct regulating rules and loss allocating rules in defamation? | 002279.docx | LEGALEASE-00118571-LEGALEASE-00118572 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 12042 | Caspar v. Lewin, 82 Kan. 604 | 231H+2769 | The protection of the factory act extends only to persons acting within the scope of some employment or labor. But the factory owner cannot evade the requirements of the act, as that belt shifters shall be provided, by means of rules or instructions relating to the use of appliances, as that belts shall be shifted only while the machinery is not in motion. | The protection of the Factory Act (Laws 1903, c. 356) extends only to persons acting within the scope of some labor or employment. | Does the protection of the Factory Act extend only to persons acting within the scope of some employment or labor? | Labor and Employment - Memo 36 - VP.docx | ROSS-003288915-ROSS-003288916 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 12043 | Sabine Pilot Serv. v. Hauck, 687 S.W.2d 733 | 231H+786 | Upon careful consideration of the changes in American society and in the employer/employee relationship during the intervening 97 years since the East Line & R.R.R. Co. v. Scott decision, we hold that the situation which led to that decision has changed in certain respects. We now hold that public policy, as expressed in the laws of this state and the United States which carry criminal penalties, requires a very narrow exception to the employment-at-will doctrine announced in East Line & R.R.R. Co. v. Scott. That narrow exception covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act. We further hold that in the trial of such a case it is the plaintiff's burden to prove by a preponderance of the evidence that his discharge was for no reason other than his refusal to perform an illegal act | Public policy requires a narrow exception to the employment-at-will doctrine for an employee who was discharged for the sole reason that the employee refused to perform an illegal act. | Is there any judicial exception to the employment-at-will doctrine? | 001422.docx | LEGALEASE-00118932-LEGALEASE-00118933 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 12044 | Stephan v. United States, 133 F.2d 87 | 384+6 | We must keep in mind that one may not be convicted of treason upon evidence of an overt act, unless such act has been laid in the indictment. Burr's Trial, United States v. Burr, 25 Fed.Cas.page 55, No. 14,693; Wharton's Crim. Law, 11th Ed., vol. 3, Sec. 2153, p. 2310. Further, although not explicitly set forth in either the constitutional or statutory provisions, an intent to give aid and comfort to the enemy is an essential element of the crime of treason. United States v. Werner, D.C., 247 F. 708, 709; United States v. Fricke, D.C., 259 F. 673, 676; cf. United States v. Burr, C.C., 25 Fed.Cas.pages 52, 54, No. 14,692h; United States v. Burr, C.C., 25 Fed.Cas.pages 55, 90, No. 14,693; see United States v. Robinson, supra. Without an intent to give aid and comfort to the enemy, there is no treason. Wimmer v. United States, 6 Cir., 264 F.11 | An intent to give aid and comfort to the enemy is an essential element of the crime of "treason", since without an intent to give aid and comfort to the enemy there is no treason. 18 U.S.C.A. S 2381; U.S.C.A. Const. art. 3, S 3, cl. 1. | Does an intent to give aid and comfort to the enemy constitute an essential element of the crime of treason? | 001640.docx | LEGALEASE-00119074-LEGALEASE-00119075 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 12045 | Reszka v. Collins, 136 A.D.3d 1299 | 249+14 | We agree with plaintiff, however, that the court erred in denying the motion with respect to the second counterclaim, alleging malicious prosecution. Where, as here, the underlying action is civil in nature, the party alleging a claim for malicious prosecution must allege a special injury (see Engel v. CBS, Inc., 93 N.Y.2d 195, 201"204, 689 N.Y.S.2d 411, 711 N.E.2d 626; Shatkin v. Drescher, 24 A.D.3d 1292, 1292"1293, 805 N.Y.S.2d 901; Molinoff v. Sassower, 99 A.D.2d 528, 529, 471 N.Y.S.2d 312). In the instant case, defendant "fail[ed] to plead that the civil proceeding involved wrongful interference with [his] person or property" (Wiener v. Wiener, 84 A.D.2d 814, 815, 444 N.Y.S.2d 130; see Belsky v. Lowenthal, 47 N.Y.2d 820, 821, 418 N.Y.S.2d 573, 392 N.E.2d 560; Galanova v. Safir, 127 A.D.3d 686, 687, 4 N.Y.S.3d 538; Molinoff, 99 A.D.2d at 529, 471 N.Y.S.2d 312). Instead, defendant alleged damages amounting to "the physical, psychological or financial demands of defending a lawsuit," which is insufficient to constitute a special injury for a claim of malicious prosecution (Engel, 93 N.Y.2d at 205, 689 N.Y.S.2d 411, 711 N.E.2d 626; see Dermigny v. Siebert, 79 A.D.3d 460, 460, 911 N.Y.S.2d 619) | Where the underlying action is civil in nature, the party asserting a claim for malicious prosecution must allege a special injury. | Is special injury or special damages an essential element in a civil malicious prosecution action? | 001798.docx | LEGALEASE-00118904-LEGALEASE-00118906 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12046 | Gem Trading Co. v. Cudahy Corp., 92 Wash. 2d 956 | 249+55 | Thus, the new statute is not material to the case at bar because if it is substantive it does not apply retroactively and if it is procedural it does not change the common law elements. We therefore do not decide the nature of the cause of action for civil malicious prosecution under RCW 4.24.350. We hold only that the common law action of civil malicious prosecution in the State of Washington requires that the appellant plead and prove both special injury and arrest of the person or seizure of property. | Common-law action of civil malicious prosecution requires that plaintiff plead and prove both special injury and arrest of person or seizure of property. | What is the requirement for malicious prosecution claim arising from a civil action? | 001844.docx | LEGALEASE-00118826-LEGALEASE-00118827 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12047 | Frazier v. CitiFinancial Corp., 604 F.3d 1313 | 25T+374(1) | 9 U.S.C. " 10(a). Under section 11, arbitration awards may be corrected and/or modified in three situations, only two of which are alleged to exist in this case: "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted," and "[w]here the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. " 11(b), (c). There is a presumption under the FAA that arbitration awards will be confirmed, and "federal courts should defer to an arbitrator's decision whenever possible." B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 909 (11th Cir.2006) | There is a presumption under the Federal Arbitration Act (FAA) that arbitration awards will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible. 9 U.S.C.A. S 1 et seq. | Is there a presumption under Federal Arbitration Act (FAA) that arbitration awards will be confirmed? | 002141.docx | LEGALEASE-00119101-LEGALEASE-00119102 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 12048 | E.E.O.C. v. Waffle House, 534 U.S. 279 | 25T+114 | The FAA was enacted in 1925, 43 Stat. 883, and then reenacted and codified in 1947 as Title 9 of the United States Code. It has not been amended since the enactment of Title VII in 1964. As we have explained, its "purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The FAA broadly provides that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). | Employment contracts, except for those covering workers engaged in transportation, are covered by the Federal Arbitration Act (FAA). 9 U.S.C.A. S 1 et seq. | Are employment contracts covering workers engaged in transportation covered by the Federal Arbitration Act (FAA)? | Alternative Dispute Resolution - Memo 253 - RK.docx | ROSS-003287475-ROSS-003287477 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 12049 | McWaters v. Gardner, 37 Ala. App. 418 | 386+3 | In the case at bar the appellant took possession of the property without the knowledge or consent of the appellee. This fact alone was not the equivalent of taking by constructive force. Street v. Sinclair, 71 Ala. 110; Burns v. Campbell, 71 Ala. 271. | The taking of property without the knowledge or consent of the possessor is not alone the equivalent of taking by constructive force, so as to constitute a trespass. | Can the taking of property without the knowledge or consent of the possessor be equivalent to taking by constructive force? | 002959.docx | LEGALEASE-00118981-LEGALEASE-00118982 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 12050 | Angio-Med. Corp. v. Eli Lilly & Co., 720 F. Supp. 269 | 237+133 | With respect to the seventh claim in the Amended Complaint, namely the trade libel claim, we grant Lilly's motion to dismiss. Trade libel or product disparagement is an action to recover for words or conduct which tend to disparage or negatively reflect upon the condition, value or quality of a product or property. 44 N.Y.Jur.2d, supra, " 175, at 189"90. The elements of a trade libel claim which must be proven are:(1) falsity of the statement,(2) publication to a third person,(3) malice (express or implied), and(4) proven special damages.44 N.Y.Jur.2d, supra, " 178, at 192; see Drug Research, 7 N.Y.2d at 440, 166 N.E.2d at 322, 199 N.Y.S.2d at 37. | Trade libel or product disparagement is action to recover for words or conduct which tend to disparage or negatively reflect upon condition, value or quality of product or property. | What is trade libel? | Libel and Slander - Memo 120 - ANG.docx | ROSS-003297910-ROSS-003297911 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 12051 | Exelon Corp. v. Dep't of Revenue, 234 Ill. 2d 266 | 145+2.1 | However, in a three-paragraph passage, this court also recounted several cases in support of its observation that the court had "at no time held electricity to be "tangible" personal property." Farrand Coal, 10 Ill.2d at 512, 140 N.E.2d 698. This passage was obiter dicta. Since this court rejected the coal company's argument that energy was "trapped" in the coal, the court had no need to"and did not"deliberately consider whether electricity is "tangible." The passage refers to People's Gas Light & Coke Co. v. Ames, 359 Ill. 152, 194 N.E. 260 (1934), in which this court *281 concluded that a "decision as to whether or not electricity was tangible personal property was expressly declined as unnecessary to a disposition of the case." Farrand Coal, 10 Ill.2d at 512, 140 N.E.2d 698. This court specifically mentioned People v. Menagas, 367 Ill. 330, 11 N.E.2d 403 (1937), in which this court held that electricity was personal property and, therefore, could be the object of larceny under the Criminal Code. The State "conceded" that electricity was intangible (Menagas, 367 Ill. at 332"33, 11 N.E.2d 403), and the court so assumed (Menagas, 367 Ill. at 338, 11 N.E.2d 403). The acknowledgment of an assumption does not constitute a holding. See 20 Am.Jur.2d Courts " 134, at 517 (2005) (stating that "a case is not binding precedent on a point of law where the holding is only implicit or assumed in the decision but is not announced"). Lastly, the passage refers to People ex rel. Mercer v. Wyanet Electric Light Co., 306 Ill. 377, 137 N.E. 834 (1922), in which this court held that "electric utility companies are neither manufacturing nor mercantile companies so as to have their capital stock assessed locally instead of by the State assessing authority." Farrand Coal, 10 Ill.2d at 512, 140 N.E.2d 698. Indeed, this holding actually comports with our modern, common understanding of electric utility companies. An electric utility company is not a purely manufacturing or mercantile company. Rather, it belongs to | An electric utility company is not a purely manufacturing or mercantile company; rather, it belongs to that unique class of corporations known as public utilities. | Is an electric utility company a manufacturing or mercantile company? | Electricity - Memo 16 - RK.docx | ROSS-003302342-ROSS-003302343 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12052 | Mosteller v. Naiman, 416 N.J. Super. 632 | 115+112 | The predominant measure of damages in cases involving the destruction or removal of trees and ornamental shrubs is the diminution-of-market-value measure. Although various other measures have been applied by courts, the law is not rigid and "ordinarily the measure of damages is the resulting depreciation in the value of the land on which the trees or shrubs stood." Kristine Cordier Karnezis, Annotation, Measure of Damages for Injury to or Destruction of Shade or Ornamental Tree or Shrub, 95 A.L.R.3d 508, " 2 (2008). "In explaining their adherence to this view, the courts typically reason that such trees are ordinarily not marketable commodities whose value can thus be measured, but that their value principally inheres in what they impart to the realty on which they stand." Ibid. | Ordinarily, the measure of damages in cases involving the destruction or removal of trees and ornamental shrubs is the resulting depreciation in the value of the land on which the trees or shrubs stood. | How are damages calculated when someone wrongfully removes or mutilates a property owners trees? | Electricity - Memo 21 - RK.docx | ROSS-003297505-ROSS-003297507 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12053 | Acuna v. Brown & Root Inc., 200 F.3d 335 | 149E+494 | The Price Anderson Act sets up an indemnification and limitation of liability scheme for public liability arising out of the conduct of the nuclear energy and weapons industries. The jurisdictional provision in question here, 42 U.S.C. " 2210(n)(2), was amended in 1988 to expand jurisdiction. Previously, only those claims arising out of an "extraordinary nuclear occurrence" were subject to automatic federal jurisdiction. The section now reads, in relevant part:(2) With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the incident takes place ... shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant ... any such action pending in any State court ... shall be removed or transferred to the United States district court having venue under this subsection.42 U.S.C. " 2210(n)(2). 42 U.S.C. " 2014 defines "nuclear incident" as encompassing any occurrence causing personal or property damage arising out of the toxic, radioactive, explosive, or other hazardous properties of atomic or byproduct materials.Plaintiffs seek to limit Price Anderson's jurisdictional grant, relying on a lengthy exposition of the history of the Act and an intricate series of interpolations from definitions elsewhere in the legislation. Taken together, their arguments would posit the following: the jurisdictional grant contained in " 2210(n)(2) is meant only to apply to singular, accidental events at a contract location subject to the indemnification portion of the Act that is not located in a state which regulates its own uranium industry pursuant to an agreement with the Nuclear Regulatory Commission [NRC]. Such a tortured interpretation is unnecessary and runs counter to the plain language of the statute as well as the Congressional intent behind the 1988 amendment of " 2210(n)(2). | Price Anderson Act sets up an indemnification and limitation of liability scheme for public liability arising out of the conduct of the nuclear energy and weapons industries. Atomic Energy Act of 1954, S 1 et seq., as amended, 42 U.S.C.A. S 2011 et seq. | What is the purpose of Price Anderson Act? | Electricity - Memo 26 - RK.docx | ROSS-003310608-ROSS-003310610 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12054 | United States v. S. California Edison Co., 300 F. Supp. 2d 964 | 145+13 | Under California law, the activities of power plants are not classified as ultrahazardous for the purposes of the strict liability doctrine. The allegation SCE's hydroelectric utility plant is an ultrahazardous activity conflicts with California law and is not supported by existing federal statutory or decisional law. SCE's motion to dismiss Plaintiff's claims for strict liability under the doctrine of ultrahazardous activity is GRANTED WITH LEAVE TO AMEND, if Plaintiff can in good faith allege facts that state a claim. | Under California law, operation of a power plant was not an ultrahazardous activity for the purposes of strict liability doctrine. | Are the activities of power plants classified as ultrahazardous for the purposes of the strict liability doctrine? | Electricity - Memo 27 - RK.docx | ROSS-003322024-ROSS-003322025 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 12055 | Gendreau v. Radtke, 68 R.I. 372 | 162+11 | To us it appears to be well settled law that under such a statutory provision it is not necessary to prove, as a prerequisite to the appointment of an administrator of the estate of a resident decedent, that he or she, at the time of death, left assets to be administered; but that the following rule of law, as stated in 21 Am.Jur. 395, " 40, applies: "The prerequisite of estate or assets upon which jurisdiction to appoint an administrator is conditioned may be satisfied by a claim of estate irrespective of its probable merits.A prima facie showing that there is an estate, or a bona fide claim that the deceased left property to be administered, is all that is necessary to authorize the granting of letters of administration *** and a claim that a transfer of property from a decedent was procured through fraud and undue influence has been held sufficient assets upon which appointment of domiciliary administrators may be based." | Under statute requiring probate court of city to grant administration on estate of decedent residing in such city at time of his death, it is not necessary to prove that such a decedent left assets to be administered as prerequisite to appointment of administrator, but prima facie showing that there is an estate or a bona fide claim that decedent left property to be administered is sufficient to authorize granting of letters. Gen.Laws 1938, c. 569, S 3. | Is it necessary to prove the time of death? | 002238.docx | LEGALEASE-00119292-LEGALEASE-00119293 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 12056 | Murawski v. Pataki, 514 F. Supp. 2d 577 | 237+28 | Plaintiff's claims against IAC are barred by the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. " 230, et seq. Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," id. " 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," id. " 230(e)(3). Section 230(c) thus immunizes internet service providers from defamation and other, non-intellectual property, state law claims arising from third-party content. See Gucci Am., Inc. v. Hall & Assocs., 135 F.Supp.2d 409, 417 (S.D.N.Y.2001) (citing legislative history of the CDA); see also Zeran v. Am. Online, Inc., 129 F.3d 327, 330 (4th Cir.1997) (holding that "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions"such as deciding whether to publish, withdraw, postpone or alter content"are barred" by the CDA); Barrett v. Rosenthal, 40 Cal.4th 33, 51 Cal.Rptr.3d 55, 146 P.3d 510, 518 n. 9 (2006) (collecting cases). | Communications Decency Act immunizes Internet service providers (ISP) from defamation and other, non-intellectual property, state law claims arising from third-party content. Communications Act of 1934, S 230(c), 47 U.S.C.A. S 230(c). | Can internet service providers be held liable for defamation? | 002287.docx | LEGALEASE-00119282-LEGALEASE-00119283 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 12057 | Borden v. City of Olympia, 113 Wash. App. 359 | 386+2 | The Bordens assert a claim for trespass. Such a claim is viable "when there is an intentional or negligent intrusion onto or into the property of another." The Bordens do not claim that water from the 1995 drainage project actually invaded their property on the surface. As they themselves acknowledge, they can only show that water from the 1995 drainage project "supercharged" the ground so that water that would otherwise have drained from their property failed to do that. These facts will not sustain their claim for trespass, and the trial court did not err by dismissing it. | A trespass claim is viable when there is an intentional or negligent intrusion onto or into the property of another. | Can a trespass claim be viable when there is an intentional or negligent intrusion onto or into the property of another? | 002324.docx | LEGALEASE-00119194-LEGALEASE-00119195 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12058 | Camp Clarke Ranch v. Morrill Cty. Bd. of Comm'rs, 17 Neb. App. 76 | 15A+1058 | It is only when an inferior board or tribunal acts judicially that a review by error proceedings is allowed. Hawkins v. City of Omaha, 261 Neb. 943, 627 N.W.2d 118 (2001). A board or tribunal exercises a judicial function if it decides a dispute of adjudicative fact or if a statute requires it to act in a judicial manner. Id. See, Kropp v. Grand Island Pub. Sch. Dist. No. 2, 246 Neb. 138, 517 N.W.2d 113 (1994); Sarpy Cty. Bd. of Comrs. v. Sarpy Cty. Land Reutil., 9 Neb.App. 552, 615 N.W.2d 490 (2000). "Adjudicative facts" are facts which relate to a specific party and are adduced from formal proof. Hawkins v. City of Omaha, supra. Adjudicative facts pertain to questions of who did what, where, when, how, why, and with what motive or intent. They are roughly the kind of facts which would go to a jury in a jury case. Id. | A board or tribunal exercises a judicial function if it decides a dispute of adjudicative fact or if a statute requires it to act in a judicial manner; "adjudicative facts" are facts that relate to a specific party and are adduced from formal proof, pertaining to questions of who did what, where, when, how, why, and with what motive or intent, and are roughly the kind of facts which would go to a jury in a jury case. | In what situation has a board or tribunal exercised a judicial function? | Administrative Law - Memo 164 - RK.docx | ROSS-003311498-ROSS-003311499 | Condensed, SA | 0.49 | 0 | 1 | 0 | 1 | |
| 12059 | Norton v. City Bank & Tr. Co., 294 F. 839 | 8.30E+67 | The plaintiffs say that, even if so much be conceded, nevertheless the order for a new trial must be reversed, because it was made upon an assumption of law which is in itself erroneous, namely, "that the evidence in the case showed the check in question to be payable to a fictitious person." Obviously, it would be unnecessary to inquire whether any such right to review an order granting a new trial exists, if in point of fact the learned judge below was right in his conclusion that the check was one which in legal intent was payable to bearer. In one sense, of course, the Cory was not fictitious. It not only was a real thing, but was a concern with which all the other parties to the transaction were more or less well acquainted. That it had an actual existence, and was well known to every one concerned, quite probably explains why it was that the point now relied on by the defendant did not earlier suggest itself, either to its learned counsel or to the court below. Nevertheless, the law is now well settled that a negotiable instrument is drawn to a fictitious payee whenever the payee named in it has no right to it, and its maker does not intend that such payee shall take anything by it. Snyder v. Corn Exchange National Bank, 221 Pa. 599, 70 Atl. 876, 128 Am.St.Rep. 780; Mueller & Martin v. Liberty Insurance Bank, 187 Ky. 44, 218 S.W. 465; Phillips v. Mercantile National Bank, 140 N.Y. 556, 35 N.E. 982, 23 L.R.A. 584, 37 Am.St.Rep. 596; American Hominy Co. v. Milliken National Bank (D.C.) 273 Fed. 550; U.S. v. Chase National Bank (C.C.A. 2d Circuit) 250 Fed. 105, 162 C.C.A. 277; Bartlett v. First National Bank of Chicago, 247 Ill. 490, 93 N.E. 337; 1 Daniel on Negotiable Instruments, Sec. 141, p. 188; Crawford, Annotated Negotiable Instruments Law, Sec. 33. As it is well said in Phillips v. Mercantile National Bank, supra:"Fictitiousness of the maker's direction to pay does not depend upon the identification of the name of the payee with some existent person, but upon the intention underlying | A negotiable instrument is drawn to a fictitious payee, whenever the payee named therein, although in existence, has no right to it, and the maker does not intend that such payee shall take anything by it; "fictitiousness" depending on the intention to pay, rather than on the payee's existence. | When can it be considered that a negotiable instrument is drawn to a fictitious payee? | 002050.docx | LEGALEASE-00119452-LEGALEASE-00119453 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 12060 | City of Houston v. Carlson, 451 S.W.3d 828 | 148+266 | Nevertheless, when regulation of private property "reaches a certain magnitude ... there must be an exercise of eminent domain and compensation to sustain the act." Mahon, 260 U.S. at 413, 43 S.Ct. 158; see also U.S. Const. amend. V (requiring "just compensation"); Tex. Const. art. I, " 17 (requiring "adequate compensation"); Hearts Bluff, 381 S.W.3d at 477 (explaining that Texas takings jurisprudence is "consistent with federal jurisprudence"). Where a property owner believes compensation is due, he may seek redress via an inverse-condemnation claim. State v. Hale, 136 Tex. 29, 146 S.W.2d 731, 735 (1941). To plead inverse condemnation, a plaintiff must allege an intentional government act that resulted in the uncompensated taking of private property. See City of Abilene v. Burk Royalty Co., 470 S.W.2d 643, 647 (Tex. 1971) (listing elements of inverse condemnation); Hale, 146 S.W.2d at 736 (requiring intent). A taking is the acquisition, damage, or destruction of property via physical or regulatory means. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex.1998); Hale, 146 S.W.2d at 736. | Where a property owner believes compensation is due for the State's exercise of eminent domain, he may seek redress via an inverse-condemnation claim. | What redress is available to a property owner who believes that compensation is due? | Eminent Domain - Memo 71 - RK.docx | ROSS-003284603-ROSS-003284604 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 12061 | Gilbert Wheeler v. Enbridge Pipelines (E. Texas), 449 S.W.3d 474 | 115+110 | This case presents various issues regarding the proper manner of compensating a landowner for the destruction of trees on his property. As a general rule, when an injury to real property is temporary, the owner is entitled to damages commensurate with the cost of restoring his property, but when an injury to the same property is permanent, the owner is entitled to damages commensurate with the loss in the fair market value to the property as a whole. In today's case, we consider whether this general rule applies when the wrongful conduct causing the injury stems from breach of contract rather than tort. Concluding that it does, we also review a common law exception to this general rule, which under certain circumstances entitles the landowner to damages in keeping with the intrinsic value of the trees that were destroyed. Because we conclude that the exception properly applies in this case, and hold that any error in the jury charge related to such damages was harmless, we reverse the judgment of the court of appeals and remand the case to that court to address the remaining issues. | Economic feasibility exception to the general rule that the cost to restore is the proper measure of damages to real property applies when the cost of required repairs or restoration exceeds the diminution in the property's market value to such a disproportionately high degree that the repairs are no longer economically feasible; in those circumstances, a temporary injury is deemed permanent, and damages are awarded for loss in fair market value. | What is the appropriate measure of damages available to the owner when property is permanently damaged? | 001888.docx | LEGALEASE-00119605-LEGALEASE-00119606 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 12062 | Application of City of Great Bend, Kan., 254 Kan. 699 | 148+131 | In Kiser, this court held that the market data approach was"the most common method of valuing real property and [that it] should be used when there have been sales of comparable properties in the same locale, near the time of the taking. When the property is so unique that there is no ascertainable market and there are no sales of reasonably similar or comparable property, the other methods"depreciated replacement cost approach or the income approach"may be used." 250 Kan. at 92, 825 P.2d 130. | Market data approach is most common method of valuing real property and should be used when there have been sales of comparable properties in same local, near time of taking; when property is so unique that there is no ascertainable market and there are no sales of reasonably similar or comparable property, other methods, i.e., depreciated replacement cost approach or income approach, may be used. | What is market data approach under eminent domain? | 001912.docx | LEGALEASE-00119636-LEGALEASE-00119637 | Condensed, SA | 0.2 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12063 | Gilbert Wheeler v. Enbridge Pipelines (E. Texas), 449 S.W.3d 474 | 115+208(1) | Because this instruction should apply with equal force in cases considering the appropriate measure of damages for injury to real property, we hold that whether an injury is temporary or permanent is a question of law for the court to decide. At the same time, we recognize that questions regarding the facts that underlie the temporary-versus-permanent distinction must be resolved by the jury upon proper request. Said another way, when the facts are disputed and must be resolved to correctly evaluate the nature of the injury, the court, upon proper request, must present the issue to the jury, relying on the definitions we have provided in this opinion. | Whether an injury to real property is temporary or permanent is a question of law for the court to decide. | Is the determination whether an injury to real property is temporary or permanent a question of law? | 001913.docx | LEGALEASE-00119638-LEGALEASE-00119639 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12064 | Richardson v. Big Indian Creek Watershed Conservancy Dist. of Gage & Jefferson Ctys., 181 Neb. 776 | 148+146 | Benefits resulting from public improvements where property is taken by condemnation are of two kinds, special and general. Special benefits are those which are peculiar to the tract taken, whereas general benefits are those which arise from the fulfillment of the public object which justified the taking. The burden of proving special benefits is on the condemner. The following from Backer v. City of Sidney, 166 Neb. 492, 89 N.W.2d 592, draws the distinction: "The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the public improvement. In other words the general benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment. The special benefits are ordinarily merely incidental and may result from physical changes in the land, from proximity to a desirable object, or in various other ways.' | Benefits resulting from public improvement where property is taken by condemnation are of two kinds, special and general. | How are benefits resulting from public improvements where property is taken by condemnation classified? | 001917.docx | LEGALEASE-00119647-LEGALEASE-00119648 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12065 | Chicago Transparent Prod. v. Am. Nat. Bank & Tr. Co. of Chicago, 337 Ill. App. 3d 931 | 233+590 | Under Illinois law, a lease is an agreement subject to the law of contracts." Towne Realty, Inc. v. Shaffer, 331 Ill.App.3d 531, 536, 265 Ill.Dec. 685, 773 N.E.2d 47 (2002). A lease must be construed as a whole to determine the parties' intent, and the words used therein must be given their plain and ordinary meaning. Towne Realty, Inc., 331 Ill.App.3d at 536, 265 Ill.Dec. 685, 773 N.E.2d 47. Where the terms are unambiguous, they should be strictly enforced as written; however, where the terms are ambiguous, the language must be construed in the lessee's favor and against the lessor. Towne Realty, Inc., 331 Ill.App.3d at 536, 265 Ill.Dec. 685, 773 N.E.2d 47. | Where the terms of lease are unambiguous, they should be strictly enforced as written; however, where the terms are ambiguous, the language must be construed in the lessee's favor and against the lessor. | Should the construction of the lease be in favor of the lessee when its terms are ambiguous? | 001945.docx | LEGALEASE-00119674-LEGALEASE-00119675 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 12066 | French-Tex Cleaners v. Cafaro Co., 893 N.E.2d 1156 | 233+590 | Towne contends that the trial court erred in granting summary judgment in favor of French"Tex on its breach of contract claim. The parties agree that under the terms of the Lease, Ohio law applies to the contract claim. Appellees' App. at 22. "Ohio courts have recognized the inherent contractual nature of lease agreements." Timber Ridge Invs. Ltd. v. Marcus, 107 Ohio App.3d 174, 178, 667 N.E.2d 1283, 1285 (Ohio Ct.App.1995). The construction of written contracts is a question of law. Long Beach Ass'n, Inc. v. Jones, 82 Ohio St.3d 574, 576, 697 N.E.2d 208, 209 (1998). In interpreting lease provisions, Ohio courts have applied traditional contract principles. Marcus, 667 N.E.2d at 1285. | Under the law of Ohio, in interpreting lease provisions, courts have applied traditional contract principles. | Do the courts apply traditional contract principles while interpreting lease provisions? | Landlord and Tenant - Memo 66 - ANG.docx | ROSS-003289557-ROSS-003289558 | Order, SA | 0.84 | 1 | 0 | 0 | 1 | |
| 12067 | Gap v. GK Dev., 843 F.3d 744 | 157+461(1) | Because the lease contains an ambiguity, the parties' intent becomes a question of fact. Kaler, 603 N.W.2d at 702. That question is answered with reference to extrinsic evidence. Id. See also N.D. Cent. Code " 9"07"12 ("A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."). "[T]he parties' conduct in the course of performance after the contract's formation can help determine the meaning of ambiguous language." Nat'l Bank of Harvey v. Int'l Harvester Co., 421 N.W.2d 799, 803 (N.D. 1988). Gap is entitled to summary judgment if a rational factfinder interpreting the facts most favorably to GK could not find for GK. See Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc); Mandan Educ. Ass'n v. Mandan Pub. Sch. Dist. No. 1, 610 N.W.2d 64, 66"67 (N.D. 2000). | When the parties' intent becomes a question of fact because a lease contains an ambiguity, that question is answered under North Dakota law with reference to extrinsic evidence. NDCC S 9-07-12. | Could extrinsic evidence be referred to for inferring intent of the parties to a lease? | 001952.docx | LEGALEASE-00119692-LEGALEASE-00119693 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 12068 | Marano v. Gibbs, 45 Ohio St. 3d 310 | 317A+101 | Research indicates that while it is important that an entity be subject to regulatory control, such regulation is not necessarily required for an entity to be considered a public utility. Ohio Power Co. v. Attica (1970), 23 Ohio St.2d 37, 40, 52 O.O.2d 90, 92, 261 N.E.2d 123, 126. | While it is important that an entity be subject to regulatory control, such regulation does not necessarily require entity to be considered a public utility. R.C. SS 519.01 et seq., 519.21, 4905.02, 4905.03, 5727.01. | Should an entity be subject to regulatory control in order to be considered as a public utility? | 001973.docx | LEGALEASE-00119660-LEGALEASE-00119661 | Condensed, SA | 0.23 | 0 | 1 | 0 | 1 | |
| 12069 | Clark v. TAP Pharm. Prod., 343 Ill. App. 3d 295 | 401+4 | It is in the best interest of the public that when a dispute arises over a product that is purchased locally, the best interests of justice are served by resolving that dispute in local courts. Golden Rule Insurance Co. v. Manasherov, 200 Ill.App.3d 961, 967"68, 146 Ill.Dec. 580, 558 N.E.2d 543 (1990). Clark purchased his Lupron medication through a Williamson County physician in Williamson County, incurring injuries from the allegedly inflated cost of Lupron in Williamson County. Although Clark's claim has developed into a class action suit involving data from parties throughout the state, and possibly throughout the country, it nevertheless has the aspect of a localized controversy with a local interest in having the controversy decided at home. See Brummett, 111 Ill.2d at 501, 95 Ill.Dec. 841, 490 N.E.2d 694. | It is in the best interest of the public that when a dispute arises over a product that is purchased locally, the best interests of justice are served by resolving that dispute in local courts. | Is it in the best interest of the public that local disputes are settled in local courts? | Venue - Memo 60 - ANG.docx | ROSS-003311728-ROSS-003311729 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12070 | KPMG LLP v. Cocchi, 565 U.S. 18 | 25T+114 | The Federal Arbitration Act reflects an "emphatic federal policy in favor of arbitral dispute resolution." Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (noting that "questions of arbitrability [must] ... be addressed with a healthy regard for the federal policy favoring arbitration"). This policy, as contained within the Act, "requires courts to enforce the bargain of the parties to arbitrate," Dean Witter, supra, at 217, 105 S.Ct. 1238, and "cannot possibly require the disregard of state law permitting arbitration by or against nonparties to the written arbitration agreement," Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630, n. 5, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) (emphasis deleted). Both parties agree that whether the claims in the complaint are arbitrable turns on the question whether they must be deemed direct or derivative under Delaware law. That question of state law is not at issue here. What is at issue is the Court of Appeal's apparent refusal to compel arbitration on any of the four claims based solely on a finding that two of them, the claim of negligent misrepresentation and the alleged violation of the FDUTPA, were nonarbitrable. | The Federal Arbitration Act reflects an emphatic federal policy in favor of arbitral dispute resolution; this policy, as contained within the Act, requires courts to enforce the bargain of the parties to arbitrate, and cannot possibly require the disregard of state law permitting arbitration by or against nonparties to the written arbitration agreement. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act reflect an emphatic federal policy in favor of arbitral dispute resolutions? | Alternative Dispute Resolution - Memo 275 - RK.docx | ROSS-003284280-ROSS-003284282 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 12071 | Ziegler v. Whale Sec. Co., 786 F. Supp. 739 | 25T+139 | The Federal Arbitration Act provides that arbitration clauses in contracts are valid and enforceable. 9 U.S.C. " 2 (1970). Under the Act, if jurisdiction is proper in this Court, save for the arbitration clause, upon application of one of the parties, this Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id. at " 3 and " 4. Thus, the Act reflects a strong federal policy in favor of arbitration which has been repeatedly recognized by the Supreme Court. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219"220, 105 S.Ct. 1238, 1241"42, 84 L.Ed.2d 158 (1985); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941"42, 74 L.Ed.2d 765 (1983). Whether the parties have agreed to arbitration is determined on the basis of ordinary contract principles. Fox v. Merrill Lynch & Co., 453 F.Supp. 561, 564 (S.D.N.Y.1978). "[W]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration" and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." Dickinson v. Heinold Securities, Inc., 661 F.2d 638, 643 (7th Cir.1981). Further, arbitration must be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Morrie Mages and Shirlee Mages Found. v. Thrifty Corp., 916 F.2d 402, 406 (7th Cir.1990) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582"83, 80 S.Ct. 1347, 1352"53, 4 L.Ed.2d 1409 (1960)). The Supreme Court has held that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agree to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 | In construing arbitration agreement, court must resolve all doubts in favor of arbitration, and party should be required to arbitrate all matters, not explicitly excluded, that reasonably fit within language used. | How do courts determine if the parties have agreed to arbitration? | 002798.docx | LEGALEASE-00119733-LEGALEASE-00119735 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 12072 | Aliments Krispy Kernels v. Nichols Farms, 851 F.3d 283 | 25T+116 | Because we look to applicable state law to determine whether the parties agreed to arbitrate, we begin with a choice-of-law analysis.To determine the applicable state law, we use the forum state's choice-of-law rule. The first step in any choice-of-law inquiry under New Jersey law requires the court to determine whether there is an actual conflict between the laws of the potential forums. "That is done by examining the substance of the potentially applicable laws to determine whether there is a distinction between them." If there is no actual conflict, "the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." If there is an actual conflict, then the court must determine "which forum has the most significant relationship with the parties and the contract." | Federal court uses the forum state's choice-of-law rule to determine the applicable state law to apply when determining whether the parties agreed to arbitrate their dispute. | How do courts determine which state's choice of law rules apply? | 002801.docx | LEGALEASE-00119736-LEGALEASE-00119738 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 12073 | Datatreasury Corp. v. Wells Fargo & Co., 522 F.3d 1368 | 25T+141 | "[F]ederal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound." Id. Applying basic principles of contract law, courts in Minnesota have held that a party is not bound by an arbitration clause unless it is a signatory to the underlying contract. See, e.g., State v. Cross Country Bank, Inc., 703 N.W.2d 562, 569 (Minn.Ct.App.2005) ("Arbitration is a matter of contract, and a party that has not agreed to arbitrate a dispute cannot be required to arbitrate."); see also Bridas S.A.P.I.C. v. Gov't of Turkm., 345 F.3d 347, 353 (5th Cir.2003) ("In order to be subject to arbitral jurisdiction, a party must generally be a signatory to a contract containing an arbitration clause."); Westmoreland v. Sadoux, 299 F.3d 462, 465 (5th Cir.2002) ("[I]t is well and good if the parties to a private agreement wish to choose an alternative dispute system, but [the Fifth Circuit] is wary of choices imposed after the dispute has arisen and the bargain has long since been struck."). | Federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead, ordinary contract principles determine who is bound. | How do courts determine the validity of an agreement to arbitrate? | 002808.docx | LEGALEASE-00119743-LEGALEASE-00119745 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12074 | Smith v. Com., 220 Va. 696 | 203+564 | While motive is not an essential element of the crime of murder, "(m)otive is usually an element relevant to establish intent when a conviction is based primarily on circumstantial evidence." Ward v. Commonwealth, 205 Va. 564, 570, 138 S.E.2d 293, 297 (1964). If we accept the uncontradicted testimony of the Secret Service Agent as to *703 Smith's own statement, Smith harbored a motive for Patricia's murder. Motive is defined in Black's Law Dictionary 914 (5th ed. 1979) as: "Cause or reason that moves the will and induces action. An inducement, or that which leads or tempts the mind to indulge a criminal act." Smith's admission that a motive existed was a circumstance which the jury had a right to consider in determining if the bludgeoning of Patricia was a willful, deliberate, and premeditated act, one prompted by a cause or reason or by an inducement which moved the will and induced the action by the defendant. Motive, in the peculiar context of this case, does assume importance because it suggests reasoned, intended, or purposeful action | While the motive is not an essential element of the crime of murder, the motive is usually an element relevant to establish intent when a conviction is based primarily on circumstantial evidence; "motive" is defined as "Cause or reason that moves the will and induces action. An inducement, or that which leads or tempts the mind to indulge a criminal act". | Is motive an essential element of murder? | 002860.docx | LEGALEASE-00119759-LEGALEASE-00119760 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 12075 | Cochran v. Hasty, 378 So. 2d 1131 | 386+3 | In answering these contentions we must once again delve into the foundations of civil liability under the common law for injuries to property. It has been said that the true distinction between trespass and trespass on the case lies in the directness or immediate character of the injury. An injury is to be regarded as immediate, and therefore a trespass, only where it is directly occasioned by, and not merely a consequence resulting from, the act complained of. Sasser v. Dixon, supra. Furthermore, to be a trespass, the act resulting in injury must come as a result of the application of direct force. "Unless there is such direct force, there can be no trespass. . . ." City of Fairhope v. Raddcliffe, 48 Ala.App. 224, 227, 263 So.2d 682, 684 (1972). | To be a trespass, the act resulting in injury must come as a result of the application of direct force. Code of Ala.1975, S 6-2-34(2). | Must the act resulting in injury come as a result of the application of direct force to constitute a trespass? | 002955.docx | LEGALEASE-00119819-LEGALEASE-00119820 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12076 | Calop Bus. Sys. v. City of Los Angeles, 984 F. Supp. 2d 981 | 231H+8 | Calop next asserts that the LWO is preempted by the RLA. The Supreme Court has cautioned that "[p]re-emption of employment standards "within the traditional police power of the State" "should not be lightly inferred." " Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (citing Fort Halifax, 482 U.S. at 21, 107 S.Ct. 2211). The RLA regulates the negotiation of collective bargaining agreements in the railway and airline industries.57 Congress passed the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." Id. It "imposes a duty on employers and employees "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions." " Air Transport Association, 266 F.3d at 1064 (citing 45 U.S.C. " 152). Unlike the Deregulation Act, the RLA does not contain an express preemption provision. Courts have interpreted the statute as preempting state law in three situations, however. "First, state laws prohibiting collective bargaining altogether by railway and airline employees are preempted because they directly conflict with the RLA's express allowance of collective bargaining. Second, state law causes of action that depend upon the interpretation of [collective bargaining agreements] are preempted because the interpretation or application of existing labor agreements are the exclusive jurisdiction of the arbitrational bodies created by the RLA.... Third, state laws that frustrate the purpose of the RLA are preempted." Id. at 1076. The RLA does not preempt state or local efforts to set minimum substantive requirements for contract terms. Id. In assessing whether a state law sets minimum substantive requirements, the Air Transport Association court stated that courts should look to cases interpreting the scope of the National Labor Relations Act's ("NLRA") preemption of state law "because the two laws | Preemption of employment standards within the traditional police power of the State should not be lightly inferred. | Is pre-emption of employment standards within the traditional police power of the state that should not be lightly inferred? | Labor and Employment - Memo 60 - VP.docx | ROSS-003285593-ROSS-003285595 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 12077 | Com. v. Lafferty, 426 Pa. 541 | 317A+101 | The actual distinction made in the exclusion is between public utilities and entities which are not public utilities. It is to this broad classification that we must look in determining the reasonableness, and hence the constitutionality, of any exclusionary differentiation. If that is proper, then the exclusion of Class D common carriers is necessarily valid, such exclusion then being incidental to the larger distinction. The distinctions between a public utility and a business entity which is not a public utility are well known. For example, a public utility holds itself out to the public generally and may not refuse any legitimate demand for service, while a private business independently determines whom it will serve. 43 Am.Jur. Public Utilities and Services, s 2 (1942); 73 C.J.S. Public Utilities s 1 (1951). If the purpose of the exclusion indeed is to prohibit tax pyramiding, it is reasonable for the Legislature, steering a course between the need for revenue and consideration for the consumer, to deem public utility customers the most appropriate beneficiaries of the exclusionary safeguard. | The distinction between a public utility and business entity which is not a "public utility" is that the public utility holds itself out to the public generally and may not refuse any legitimate demand for service whereas the private business independently determines whom it will serve. 66 P.S. S 1101 et seq. | How is a public utility distinguished from any other business entity? | Public utilities - Memo 37 - RM.docx | LEGALEASE-00008763-LEGALEASE-00008764 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12078 | In re Jones, 534 B.R. 588 | 366+1 | This brings the Court's focus to the fourth prong: whether the subrogation would work an injustice on other parties. In the instant case, there are no subordinate or intervening lien holders who would be harmed by applying subrogation. The Court thus turns its attention to the impact subrogation would have on the Plaintiffs' unsecured creditors. "Equitable subrogation ... is not simply based on whether a lender paid another's debt. It contemplates a balancing of the equities between competing claimants." In re Orcutt, 506 B.R. at 72 (citing In re Couillard, 486 B.R. 466, 478 (Bankr.W.D.Wis.2012). That impact is difficult to assess here. The Plaintiffs' confirmed Chapter 13 plan proposes payments of $400 per month for 60 months, and a total dividend to general unsecured creditors of $5,808.77, or 3.4%. But, the plan treats the Defendant's claim as wholly unsecured. If the Defendant's claim is instead allowed as partially secured, then, without any other changes to the plan, the total amount of unsecured claims will decrease and generate a corresponding increase in the dividend to this class of claimants. However, the Plaintiffs' obligation to secured creditors would increase, and thus have the likely impact of decreasing the dividend to unsecured creditors. In light of the uncertainty of this impact, and the lack of record to more thoroughly assess it, this factor is deemed to be neutral, not weighing in either party's favor. | Under Vermont law, application of equitable subrogation is not based simply on whether a lender paid another's debt; rather, it contemplates a balancing of the equities between competing claimants. | Is the application of equitable subrogation based on whether a lender paid another's debt? | Subrogation - Memo 14 - VP.docx | ROSS-003287819-ROSS-003287821 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 12079 | Ysasaga v. Nationwide Mut. Ins. Co., 279 S.W.3d 858 | 366+27 | The effect of the insurance policy is significant because it is through the policy that Nationwide obtained its ownership rights by application of the principle of subrogation. Nationwide's summary judgment was based on two types of subrogation"equitable and contractual. Contractual (or conventional) subrogation is created by an agreement or contract that grants the right in exchange for payment of a loss. Equitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. See Mid"Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.2007). Contractual subrogation clauses express the parties' intent that reimbursement should be controlled by agreed contract terms rather than external rules imposed by the courts. Fortis Benefits v. Cantu, 234 S.W.3d 642, 647"48 (Tex.2007). | Contractual subrogation clauses express the parties' intent that reimbursement should be controlled by agreed contract terms rather than external rules imposed by the courts. | How is a contractual subrogation created? | 002594.docx | LEGALEASE-00119977-LEGALEASE-00119978 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12080 | Ali v. Dist. Dir., 209 F. Supp. 3d 1268 | 221+179 | "The determination of whether a person has diplomatic immunity is a mixed question of fact and law." United States v. Al"Hamdi, 356 F.3d 564, 569 (4th Cir.2004). Pursuant to the Diplomatic Relations Act of 1978, 22 U.S.C. "" 254a"254e, the governing law in the United States on the issue of diplomatic privileges and immunities is the Vienna Convention on Diplomatic Relations ("Vienna Convention"). See Tabion v. Mufti, 73 F.3d 535, 538 (4th Cir.1996). The Vienna Convention provides diplomatic agents a broad array of privileges and immunities, most notably "absolute immunity from criminal prosecution and protection from most civil and administrative actions brought in the "receiving State," i.e., the state where they are stationed." Id. at 537. "The Vienna Convention "premise[s] diplomatic immunity upon recognition by the receiving state." " Raya, 703 F.Supp.2d at 576 (quoting United States v. Lumumba, 741 F.2d 12, 15 (2d Cir.1984)). Under Article 10 of the Vienna Convention, the first step in obtaining diplomatic immunity begins with the sending state "notify[ing] the receiving state of "the appointment of members of the mission, their arrival and their final departure or the termination of their functions with the mission." " Id. (quoting Vienna Convention, art. 10). Pursuant to Article 43 of the Vienna Convention, the function of a diplomatic agent comes to an end:(a) on notification by the sending State to the receiving State that the function of the diplomatic agent has come to an end; [or](b) on notification by the receiving State to the sending State that, in accordance with paragraph 2 of Article 9, it refuses to recognize the diplomatic agent as a member of the mission. | The determination of whether a person has diplomatic immunity is a mixed question of fact and law. | Is the determination of whether a person has diplomatic immunity a mixed question of fact and law? | 002821.docx | LEGALEASE-00119858-LEGALEASE-00119859 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 12081 | Detroit Edison Co. v. F.E.R.C., 334 F.3d 48 | 145+11(4) | Section 201(b)(1) of the Federal Power Act (FPA) grants FERC jurisdiction over "transmission of electric energy in interstate commerce [,] ... the sale of electric energy at wholesale in interstate commerce," and the facilities used for such transmissions and wholesale transactions. 16 U.S.C. " 824(b)(1) (2000). States retain jurisdiction "over facilities used in local distribution." Id. | Federal Energy Regulatory Commission (FERC) exceeded its statutory jurisdiction by accepting a tariff filing by operator of electric transmission facilities which allowed unbundled retail customers to take distribution service under a FERC tariff; section of the Federal Power Act (FPA) denies FERC jurisdiction over local distribution facilities and any unbundled retail service occurring over those facilities. Federal Power Act, S 201(b)(1), as amended, 16 U.S.C.A. S 824(b)(1). | Does the FERC have jurisdiction over the transmission of electric energy? | 002844.docx | LEGALEASE-00119952-LEGALEASE-00119953 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12082 | Beroth Oil Co. v. Whiteheart, 173 N.C. App. 89 | 249+23 | The essential elements for a malicious prosecution claim are: (1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff. Best v. Duke University, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994). In an action for malicious prosecution, the malice element may be satisfied by a showing of either actual or implied malice. Best v. Duke University, 112 N.C.App. 548, 553, 436 S.E.2d 395, 399 (1993), aff'd in part, rev'd in part on other grounds, 337 N.C. 742, 448 S.E.2d 506 (1994). Actual malice includes " "ill-will, spite, or desire for revenge, or under circumstances of insult, rudeness or oppression, or in a manner evidencing a reckless and wanton disregard of rights." " Moore v. City of Creedmoor, 120 N.C.App. 27, 43, 460 S.E.2d 899, 909 (1995) quoting Williams v. Kuppenheimer Manufacturing Co., 105 N.C.App. 198, 202"03, 412 S.E.2d 897, 901 (1992), aff'd in part, rev'd in part on other grounds, 345 N.C. 356, 481 S.E.2d 14 (1997). Implied malice, however, may be inferred from want of probable cause in reckless disregard of the plaintiff's rights. Id. at 44, 460 S.E.2d at 909. Want of probable cause may not be inferred from malice for purposes of determining whether there is a cause of action for malicious prosecution but malice may be inferred from want of probable cause. Cook v. Lanier, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966). | Want of probable cause may not be inferred from malice for purposes of determining whether there is a cause of action for malicious prosecution but malice may be inferred from want of probable cause. | Can lack of probable cause be inferred from malice in a malicious prosecution claim? | 05263.docx | LEGALEASE-00082083-LEGALEASE-00082084 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12083 | Rogers v. Brown, 986 F. Supp. 354 | 95+47 | Finally, plaintiff contends that the arbitration provision is not binding because she allegedly received no consideration for agreeing to arbitrate.Under Louisiana law, "the mere will of the parties will bind them, without what common-law courts would deem to be consideration to support a contract, so long as the parties have "lawfulcause," " which need not have any economicvalue. Under Louisiana law, no obligation can exist without lawfulcause, which is defined as "the reason why a party obligates himself." Plaintiff's cause or consideration for this contract was employment by KFC for which she was to be compensated. Plaintiff signed the agreement as a condition of employment, and "[e]mployment [is] a valid cause of [a] contract." In this case, plaintiff received consideration in the form of employment for which she was compensated, and KFC received consideration in the form of labor to be provided by plaintiff. The mutual benefits received by plaintiff and the defendant from the employment agreement were sufficient consideration to support the contract. | Under Louisiana law, mere will of parties will bind them to contract, without what common-law courts would deem to be consideration to support contract, so long as parties have lawful cause, which need not have any economic value. | Can an obligation exist without a lawful cause? | Action - Memo 30 - ANG.docx | LEGALEASE-00009169-LEGALEASE-00009170 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 12084 | Waltier v. Thomson, 189 F. Supp. 319 | 221+180 | A consular official is immune from suit when the acts complained of were performed in the course of his official duties. The Anne, 1818, 3 Wheat. 435, 445, 4 L.Ed. 428; The Sao Vicente, 1922, 260 U.S. 151, 155, 43 S.Ct. 15, 67 L.Ed. 179; Lyders v. Lund, D.C.N.D.Cal., S.D. 1929, 32 F.2d 308; Carl Byoir & Associates v. Tsune-Chi Yu, 2 Cir., 1940, 112 F.2d 885, 886; Carrera v. Carrera, 1949, 84 U.S.App.D.C. 333, 174 F.2d 496, 498; Arcaya v. Paez, D.C.S.D.N.Y.1956, 145 F.Supp. 464, 466, affirmed per curiam, 2 Cir., 1957, 244 F.2d 958; Tentative Draft No. 2, Restatement of the Foreign Relations Law of the United States, 68, 69, p. 228. Thus, if the statements allegedly made to Waltier by Thomson were uttered in pursuance of Thomson's official functions as a consular officer, then the suggestion of the Ambassador of Canada should be adopted and the defendant held immune. | A consular official is immune from suit when acts complained of were performed in course of his official duties. | Is a consular official immune form suit when the acts complained of were performed in the course of his official duties? | Ambassadors and Consuls - Memo 16 - RK.docx | ROSS-003284388-ROSS-003284389 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12085 | United States v. Archer, 51 F. Supp. 708 | 221+176 | A consulate is, ordinarily, a building owned by the Government of the United States. And although it be not owned by the United States, it is a part of the territory of the United States of America. Therefore, the United States has authority to confer upon a consul, within the limits of the consulate or embassy, the power to administer an oath.To the extent of such power, the consul becomes a magistrate. | The United States has authority to confer on a consul, within limits of consulate or embassy, power to administer oath, and, to extent of such power, consul becomes a magistrate. | Does the United States have the authority to confer on a counsel the power to administer oaths? | 003022.docx | LEGALEASE-00120537-LEGALEASE-00120538 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 12086 | State v. Rogers, 2007 MT 227 | 352H+184 | This Court has previously held that the State need not prove direct evidence of arousal, or intent to be aroused, in order to meet its burden of proving the "sexual contact" element of sexual assault. "[I]t is well-settled that the jury may infer intent of sexual arousal from the defendant's acts." State v. Skinner, 2007 MT 175, " 24, 338 Mont. 197, " 24, 163 P.3d 399, " 24 (citation omitted). In Skinner, the defendant claimed the State failed to meet the "intent" prong of "sexual contact" despite proving that he had placed his hand down the back of his eleven-year-old daughter's underwear while she was asleep. Skinner, " 23. We held that, "while there is no direct evidence of arousal, such as an erection, there is sufficient circumstantial evidence for the jury to infer arousal, or that the purpose of Skinner's act was arousal. Skinner was not casually touching T.D. during an ordinary act." Skinner, " 24. | State need not prove direct evidence of arousal, or intent to be aroused, in order to meet its burden of proving the sexual contact element of sexual assault; the jury may infer intent of sexual arousal from the defendant's acts. MCA 45-5-502. | Can the jury infer the intent of sexual arousal from the defendants acts? | 003213.docx | LEGALEASE-00120572-LEGALEASE-00120573 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 12087 | Indus. Gas Co. v. Pub. Utilities Comm'n of Ohio, 135 Ohio St. 408 | 317A+101 | The change in the purpose clause of the charter does not of itself alter the real character of appellant's business; at any rate the charter as amended permits the continuation of operations in the same way as theretofore except as to service to non-industrial users. It is what the corporation is doing rather than the purpose clause that determines whether the business has the element of public utility. State ex rel. Buchanan County Power Trans. Co. v. Baker, 320 Mo. 1146, 9 S.W.2d 589; Davis v. People ex rel. Public Utilities Commission, 79 Colo. 642, 247 P. 801; Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 60 L.Ed. 984, Ann.Cas.1916D, 765. | Whether a corporation is operating as a public utility is determined by the character of the business in which it is engaged, rather than by the purpose clause of its charter. Gen.Code, SS 614-2, 614-2a, 614-3. | Do the powers conferred upon a corporation by charter determine whether it is a public utility or not? | 003491.docx | LEGALEASE-00120317-LEGALEASE-00120318 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12088 | Washington Mut. Bank v. Chiappetta, 584 F. Supp. 2d 961 | 366+1 | WaMu's fallback argument is that Infinity and ODOT will be unjustly enriched. However, state law does not appear to make a distinction between unjust enrichment and equitable subrogation. Unjust enrichment under state law is part of the doctrine of equitable subrogation, not a separate doctrine.Equitable subrogation has been described as a theory of unjust enrichment, preventing parties from receiving that to which they are not entitled. Williams v. Erie Ins. Group (1993), 86 Ohio App.3d 660, 665, 621 N.E.2d 770, 772"773. The right to equitable subrogation depends upon the facts and circumstances of each case, and the basis for the claim must be readily apparent. Jones, supra, 61 Ohio St.2d at 102, 15 O.O.3d at 133"134, 399 N.E.2d at 1217"1218.State Sav. Bank v. Gunther, 127 Ohio App.3d 338, 346, 713 N.E.2d 7, 13 (Ohio App. 3 Dist.,1998). | Under Ohio law, the right to equitable subrogation depends upon the facts and circumstances of each case, and the basis for the claim must be readily apparent. | What does the doctrine of equitable subrogation depend upon? | Subrogation - Memo 102 - VP C.docx | ROSS-003297533-ROSS-003297534 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 12089 | In re Saenz, 516 B.R. 423 | 366+29 | As currently pled, IBC cannot sustain its subrogation claim. The Texas Supreme Court summarizes the doctrine of equitable subrogation as follows:The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing. Texas courts interpret this doctrine liberally. Although the doctrine most often arises in the insurance context, equitable subrogation applies in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter.Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd., 259 S.W.3d 140, 142 (Tex.2008) (internal citations omitted). | Under Texas law, the doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing. | Do courts interpret the doctrine of equitable subrogation liberally? | 003555.docx | LEGALEASE-00120359-LEGALEASE-00120360 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 12090 | Sun Valley Fin. Servs. of Phoenix v. Guzman, 212 Ariz. 495 | 366+1 | Equitable subrogation is the "substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Mosher v. Conway, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935); see also Lamb Excavation, 208 Ariz. at 480, 6, 95 P.3d at 544. In a practical sense, equitable subrogation works like an assignment. Cf. State Farm Fire and Cas. Co. v. Knapp, 107 Ariz. 184, 185, 484 P.2d 180, 181 (1971). It is, as the name reflects, an equitable doctrine designed to prevent injustice"the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it." Mosher, 45 Ariz. at 468, 46 P.2d at 112. Application of the doctrine depends upon the particular facts and circumstances of each case. Id. Subrogation can only be granted when an equitable result will be reached. Id.It involves three elements: (1) A valuable right; (2) a person who owns the right; and (3) a person who seeks to be substituted in that ownership. There must exist a claim or obligation against the debtor; an original right to that claim on the part of him in whose place substitution is sought, and some right belonging to him who seeks the substitution which will be protected thereby. So when one, being himself a creditor, pays another creditor, whose claim is preferable to his, it is held that the person so paying is subrogated to the rights of the other creditor. | Application of the doctrine of equitable subrogation depends upon the particular facts and circumstances of each case, and subrogation can only be granted when an equitable result will be reached. | What does the application of equitable subrogation depend upon? | Subrogation - Memo 76 - ANG C.docx | ROSS-003301438-ROSS-003301440 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12091 | Nebraska Beef, Ltd. v. Universal Sur. Co., 9 Neb. App. 40 | 366+1 | Absent an agreement, the doctrine of subrogation applies only when a party pays the debts of a third person, not as a volunteer, but either out of a legal or moral obligation to do so or to protect his or her own rights or interests or to save his or her own property. Horton v. Ford Life Ins. Co., 246 Neb. 171, 518 N.W.2d 88 (1994); Rawson v. City of Omaha, 212 Neb. 159, 322 N.W.2d 381 (1982); Cagle, Inc., supra. The doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity in the particular case under consideration. Rawson, supra. It does not rest on contract, and no general rule can be laid down which will afford a test for its application in all cases. The facts and circumstances of each case determine whether the doctrine is applicable. Id. It should be noted that as in Cagle, Inc. v. Sammons, 198 Neb. 595, 254 N.W.2d 398 (1977), Nebraska Beef has alleged that other subcontractors were retained to perform ABC's obligations, resulting in payment being made to those other subcontractors. | Doctrine of subrogation does not rest on contract, and no general rule can be laid down which will afford a test for its application in all cases; rather, the facts and circumstances of each case determine whether the doctrine is applicable. | Does the doctrine of subrogation rest on a contract? | 003643.docx | LEGALEASE-00120429-LEGALEASE-00120430 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 12092 | Amaya v. City of San Antonio, 980 F. Supp. 2d 771 | 148+81.1 | Whether a "taking" of property has occurred in violation of Article I, " 17 of the Texas Constitution is a question of law. Tex. Dep't of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 644 (Tex.2004). "[T]o recover under the constitutional takings clause, one must first demonstrate an ownership interest in the property taken." Id. A plaintiff must then prove that "(1) the government's intentional acts (2) resulted in a taking of the plaintiff's property (3) for public use." Patel v. City of Everman, 179 S.W.3d 1, 17 (Tex.App.2004). | To recover under Texas's constitutional takings clause, one must first demonstrate an ownership interest in the property taken; plaintiff must then prove that (1) the government's intentional acts (2) resulted in a taking of the plaintiff's property (3) for public use. Vernon's Ann.Texas Const. Art. 1, S 17. | What must be demonstrated to recover under the constitutional takings clause? | 003151.docx | LEGALEASE-00120817-LEGALEASE-00120818 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 12093 | First Citizens Bank & Tr. Co. v. Harrison, 181 Wash. App. 595 | 209+129 | Two key statutory construction principles apply directly to 25 U.S.C. " 410. First, "[e]xemption statutes should be liberally construed to give effect to their intent and purpose." Anthis, 173 Wash.2d at 756, 270 P.3d 574. 25 U.S.C. " 410 clearly is an exemption statute. Second, " "statutes passed for the benefit of dependent Indian tribes ... are to be liberally construed, doubtful expressions being resolved in favor of the Indians." " Bryan v. Itasca County, 426 U.S. 373, 392, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976). Also, we construe statutes to effect their purpose while avoiding absurd, strained, or unlikely consequences. Thompson v. Hanson, 168 Wash.2d 738, 750, 239 P.3d 537 (2010). These principles suggest that if the two interpretations of 25 U.S.C. " 410 are equally reasonable, the interpretation that extends the exemption and that is most favorable to Tiffany Harrison should be adopted. | Statutes passed for the benefit of dependent Indian tribes are to be liberally construed, doubtful expressions being resolved in favor of the Indians. | Will the courts construe the statutes liberally in favor of the Indians Tribes? | Indians - Memo 44 - BP.docx | ROSS-003296536-ROSS-003296537 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12094 | Martin v. O'Daniel, 507 S.W.3d 1 | 249+40 | Consistent with Rehberg, Kentucky's common law protects grand jury witnesses from civil suits predicated upon their testimony. "[I]t is a well-settled rule in practically all jurisdictions that the [false] testimony of a witness given in the course of a judicial proceeding is privileged and will not support a cause of action against him."Reed v. Isaacs, 62 S.W.3d 398, 399 (Ky.App.2000) (quoting McClarty v. Bickel, 155 Ky. 254, 159 S.W. 783, 784 (1913)). | The false testimony of a witness given in the course of a judicial proceeding is privileged and will not support a cause of action against him for malicious prosecution. | Will the testimony of a witness in a judicial proceeding privileged for malicious prosecution? | 003376.docx | LEGALEASE-00120713-LEGALEASE-00120714 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 12095 | Barrett Mobile Home Transp. v. McGugin, 530 So. 2d 730 | 249+44 | There is authority for the proposition that a cause of action for malicious prosecution accrues upon the entry of the trial court's judgment, notwithstanding a pending right to appeal. Luby, supra, 87 N.W. at 806; Gibbs v. Haight, Dickson, Brown & Bonesteel, 183 Cal.App.3d 716, 228 Cal.Rptr. 398 (1986). Nevertheless, we follow those courts that have held that the accrual of a malicious prosecution action is postponed until appeal is precluded, thus eliminating the filing of needlessly premature cases. We agree that it is "a waste of judicial resources and inequitable" to allow a malicious prosecution plaintiff to file the action while there is a right to appeal extant. Parisi v. Michigan Townships Ass'n, 123 Mich.App. 512, 332 N.W.2d 587, 591 (1983). We hold that a malicious prosecution action does not accrue until the time for filing a notice of appeal in the underlying case has expired; and, if an appeal is taken, the action for malicious prosecution will not accrue until the appeal has been finally decided. In so holding, we adopt the approach of the Florida courts on this issue, as stated in Cazares v. Church of Scientology, 444 So.2d 442, 447 (Fla.Dist.Ct.App.1983):"The statute of limitations for a malicious prosecution action would not start until the appeal was decided, or the time for taking such an appeal had expired, because the cause of action would not accrue until the last element (termination favorable to the plaintiff) occurred." | A malicious prosecution action does not accrue until time for filing notice of appeal in underlying case has expired, and, if appeal is taken, action for malicious prosecution will not accrue until appeal has been finally decided. | When does a cause of action for malicious prosecution accrue? | Malicious Prosecution - Memo 88 - AKA.docx | ROSS-003283698-ROSS-003283699 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12096 | New York Life Ins. Co. v. Hageman, 80 F.2d 446 | 289+856 | It thus appears that the interest of a deceased partner in the partnership property does not pass to his personal representative, but vests in the surviving partner or partners for purposes of liquidation and settlement. Andrews v. Stinson, 254 Ill. 111, 98 N.E. 222, Ann.Cas. 1913B, 927; Hayward v. Burke, 151 Ill. 121, 37 N.E. 846; Bauer Grocer Co. v. McKee Shoe Co., 87 Ill.App. 434.When Weiner died the dominion over his interest in the partnership was in his surviving partners; and when Hageman died, whatever interest he had in the partnership"either his own share thereof or in his relation as a surviving partner of Weiner"passed to Maton, the sole surviving partner, for settlement. And when Maton died, and no other partner remained, his interest in the partnership passed to his personal representative, charged with whatever duties or liabilities had devolved on Maton by reason of the unadjusted interests of the previously deceased partners. | Interest of deceased partner in partnership property does not pass to his personal representative, but vests in surviving partners for purposes of liquidation and settlement. S.H.A. ch. 3, SS 88-90. | "On the death of a partner, does his right in partnership property vest in the surviving partner?" | Partnership - Memo 112 - RK.docx | ROSS-003283392-ROSS-003283393 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 12097 | Chadron Energy Corp. v. First Nat. Bank of Omaha, 236 Neb. 173 | 366+2 | Subrogation is defined as the substitution of one person in the place of another with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. J.J. Schaefer Livestock Hauling v. Gretna St. Bank, 229 Neb. 580, 428 N.W.2d 185 (1988). " " "Subrogation is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other." " " (Emphasis omitted.) Id. at 591, 428 N.W.2d at 192 (quoting State Auto. & Cas. Underwriters v. Farmers Ins. Exchange, 204 Neb. 414, 282 N.W.2d 601 (1979)).The doctrine of subrogation includes every instance in which one person pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made under compulsion or for the protection of some interest of the one making the payment and in discharge of an existing liability. J.J. Schaefer Livestock Hauling v. Gretna St. Bank, supra. The doctrine applies where a party is compelled to pay the debt of a third person to protect his own rights or interest, or to save his own property. Rawson v. City of Omaha, 212 Neb. 159, 322 N.W.2d 381 (1982). Subrogation is not allowed where the debt paid is one for which the payor is primarily liable. See, J.J. Schaefer Livestock Hauling v. Gretna St. Bank, supra; Luikart v. Buck, 131 Neb. 866, 270 N.W. 495 (1936). | Doctrine of subrogation includes every instance in which one person pays debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter, so long as payment was made under compulsion or for protection of some interest of one making payment and in discharge of existing liability. | Is equitable subrogation available when one person pays debt for which another is primarily liable? | 003547.docx | LEGALEASE-00120679-LEGALEASE-00120681 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 12098 | New York State Ass'n of Enrolled Agents v. New York State Dep't of Taxation & Fin., 29 Misc. 3d 332 | 148+2.4 | Finally, plaintiff alleges that Section 32's $100 annual fee violates the takings clause of the Fifth Amendment because "Enrolled Agents do not receive any new benefit as a result of paying the New York registration fee." (Compl., " 53.) "[T]he imposition of an obligation to pay money does not constitute an unconstitutional taking of property." (Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1339"1340 [2001], cert. denied 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 [2002].) Moreover, "a reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services." (United States v. Sperry Corp., 493 U.S. 52, 63, 110 S.Ct. 387, 107 L.Ed.2d 290 [1989].) Here, the $100 annual fee is a reasonable amount for administration of the registration program, and is comparable to the registration fees that both attorneys and certified public accountants registered in New York are required to pay. Moreover, the increased confidence in the tax preparation industry resulting from this enhanced regulation confers a benefit on both enrolled agents and the general public. (See generally Kessler v. Hevesi, 45 A.D.3d 474, 475, 846 N.Y.S.2d 56 [1st Dept. 2007],appeal dismissed 10 N.Y.3d 849, 859 N.Y.S.2d 611, 889 N.E.2d 489 [2008].) Plaintiff's claim alleging an unconstitutional taking will accordingly be dismissed. | A reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services. U.S.C.A. Const.Amend. 5. | "Is reasonable user fee a taking, if it is imposed for the reimbursement of the cost of government services?" | 017363.docx | LEGALEASE-00120924-LEGALEASE-00120926 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12099 | Cummins v. Robinson Twp., 283 Mich. App. 677 | 148+2.1 | Further, the fact that plaintiffs incurred debt in excess of their equity to rebuild their home does not establish that the township's enforcing the state building code was "functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." Lingle, supra at 539, 125 S.Ct. 2074 Other than the relatively brief periods that plaintiffs' home was uninhabitable because it required structural repair or did not meet minimal health and sanitation requirements, defendants never prohibited plaintiffs from using their property for the beneficial residential use plaintiffs desired. For those periods when plaintiffs were unable to occupy their property as a residence, they dispute that a "temporary" taking occurred. Rather, plaintiffs argue that the mere fact that complying with building code requirements resulted in a negative equity denied them all economically beneficial use. This claim is without merit because even with a negative equity, plaintiffs are still able to use their property as a residence, and the property still retains some value even if its market value has declined. The fact that using their property as a residence is more costly in the face of the necessity to repair repeated flood damage does not establish a taking. "The Taking Clause does not guarantee property owners an economic profit from the use of their land." Paragon Properties Co. v. City of Novi, 452 Mich. 568, 579 n. 13, 550 N.W.2d 772 (1996), citing Sun Oil Co. v. Madison Hts., 41 Mich.App. 47, 56, 199 N.W.2d 525 (1972). | The Taking Clause does not guarantee property owners an economic profit from the use of their land. U.S.C.A. Const.Amend. 5; M.C.L.A. Const. Art. 10, S 2. | Does the Taking Clause guarantee property owners an economic profit from the use of their land? | Eminent Domain - Memo 163 - GP.docx | ROSS-003288345-ROSS-003288346 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 12100 | Nat'l Sur. Co. v. Seymour, 46 Ga. App. 109 | 360+52 | (2) We quote the last sentence of section 1780 of Park's Ann. Civ. Code (Ga. Laws 1912, p. 52): "Each Inspector shall be commissioned for a term of two years subject to the right of the Commissioner of Agriculture at any time to limit and designate the number of months any short term Inspector shall be employed within the period named in the commission, the Commissioner also having the right to discharge any Inspector for incompetence, neglect of duty, or malfeasance in office." Both this court and the Supreme Court have held that short"time fertilizer inspectors are "not subject to removal by the Commissioner of Agriculture, except upon cause shown with notice and an opportunity to be heard." Talmadge v. McDonald, 44 Ga. App. 728, 162 S. E. 856, 858; Talmadge v. Seymour, 167 Ga. 601, 146 S. E. 473; Talmadge v. Cordell, 167 Ga. 594, 146 S. E. 467. Seymour's commission must, of course, be construed in the light of the law. In this connection, see the judgment rendered by Judge Eschol Graham in the superior court of Telfair county on April 12, 1930. The assignment is not meritorious. | Short-term fertilizer inspectors are not subject to removal by commissioner of agriculture, except on cause shown, with notice and opportunity to be heard (Park's Ann.Civ.Code, S 1780). | Are fertilizer inspectors subject to removal by the commissioner of agriculture? | 019475.docx | LEGALEASE-00121252-LEGALEASE-00121253 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12101 | Pring v. Penthouse Int'l, Ltd., 695 F.2d 438 | 237+19 | The test is not whether the story is or is not characterized as "fiction," "humor," or anything else in the publication, but whether the charged portions in context could be reasonablyunderstood as describingactualfacts about the plaintiffor actualevents in which she participated. If it couldnot be so understood, the charged portions couldnot be taken literally. This is clearly the message in Greenbelt and Letter Carriers. The plaintiff urges that this constitutional doctrine should apply only to public figures, but there is no such limitation and the disposition of the several cases considered above so demonstrates. The court in Bindrim v. Mitchell, 92 Cal.App.3d 61, 155 Cal.Rptr. 29, which is discussed by both parties, considers this issue also. See also Bucher v. Roberts, 198 Colo. 1, 595 P.2d 239 (1979); and Myers v. Boston Magazine Co., Inc., 380 Mass. 336, 403 N.E.2d 376 (1980) | Test in defamation action is whether story is not characterized as "fiction," "humor," or anything else in publication, but whether charged portions in context could be reasonably understood as describing actual facts about plaintiff or actual events in which plaintiff participated. | "How are humorous, fictional publications dealt with under defamation law?" | 021037.docx | LEGALEASE-00121604-LEGALEASE-00121605 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 12102 | Clausen v. State, 622 N.E.2d 925 | 110+632(4) | A motion in limine is used as a protective order against prejudicial questions andstatements being asked during trial. Baker v. State (1981), Ind., 425 N.E.2d 98, 101. Theruling does not determine the ultimate admissibility of the evidence; that determination is made by the trial court in the context of the trial itself. Id. at 101-102. Because the pre-trial denial of a motion in limine is a preliminary ruling, this denial alone is insufficient to preserve error for an incorrect ruling on the motion. Conner, 580 N.E.2d at 220. By requiring that an objection be made during the trial at the time when the testimony is offered into evidence, the trial court is able to consider the evidence in the context in which it is being offered and is able to makea final determination on admissibility. The parties and trial court may not take it upon themselves to create a hypothetical record of what would have occurred had the appropriate objection been made at the appropriate time during the trial. By inserting the objection after the trial as a means of "cleaning-up" the record, the trial court is stripped of the opportunity to rule on the admissibility of the evidence in context. Additionally, on review, this Court will only examine what actually transpired at the trial. Consequently, a defendant is unable to resurrect an error once it is waived, even if the State acquiesces in the defendant's attempt to do so. Because Clausen failed to make a timely objection to the evidence at trial, he has waived the error on appellate review. | Ruling on motion in limine does not determine ultimate admissibility of evidence; determination as to admissibility is made by trial court in context of trial itself, and thus denial of motion in limine alone is insufficient to preserve error for incorrect ruling on motion. | Does the trial court's ruling on a motion in limine determine the ultimate admissibility of the evidence? | Pretrial Procedure - Memo # 28 - RM C.docx | ROSS-003282229-ROSS-003282230 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 12103 | Maldonado v. Kiewit Louisiana Co., 152 So. 3d 909 | 307A+3 | The trial court has great discretion in its consideration of evidentiary matters such as motions in limine. Heller v. Nobel Ins., Group, 2000"0261 (La.2/2/00), 753 So.2d 841, 841. Louisiana Code of Civil Procedure article 1635 provides: Formal exceptions to rulings or orders of the court are unnecessary. For all purposes it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him. | The trial court has great discretion in its consideration of evidentiary matters such as motions in limine. LSA-C.C.P. art. 1635. | Does the trial court have great discretion in its consideration of evidentiary matters such as motions in limine? | Pretrial Procedure - Memo # 52 - C - AP.docx | ROSS-003283810-ROSS-003283812 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12104 | Ryan v. Case New Holland, 211 So. 3d 611 | 307A+3 | The trial court is granted broad discretion in its evidentiary rulings which are not to be disturbed on appeal absent a clear abuse of discretion. Allums v. Parish of Lincoln, 44,304 (La.App. 2d Cir. 06/10/09), 15 So.3d 1117, writ denied, 2009"1938 (La. 11/20/09), 25 So.3d 803; See also, Crisler v. Paige One, Inc., 42,563 (La.App. 2d Cir. 01/9/08), 974 So.2d 125. A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. Heller v. Nobel Insurance Group, 2000"0261 (La. 02/02/00), 753 So.2d 841; Taylor v. Dowling Gosslee & Associates, Inc., 44,654 (La.App. 2d Cir. 10/07/09), 22 So.3d 246, writ denied, 2009"2420 (La. 02/05/10), 27 So.3d 299. On appeal, this court must consider whether the complained of ruling was erroneous and whether the error affected a substantial right of the party. Crisler, supra; Graves v. Riverwood Intern. Corp., 41,810 (La.App. 2d Cir. 01/31/07, 949 So.2d 576, writ denied, 2007"0630 (La. 05/04/07), 956 So.2d 621. The determination is whether the error, when compared to the record in its entirety, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove. Id. If a party's substantial right was not affected by an evidentiary ruling, a reversal is not warranted. Politz v. Politz, 49,242 (La.App. 2d Cir. 09/10/14), 149 So.3d 805. See also Hays v. Christus Schumpert N. La., 46,408 (La.App. 2d Cir. 09/21/11), 72 So.3d 955. | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. | Does the trial court have great discretion in its consideration of evidentiary matters such as motions in limine? | 032183.docx | LEGALEASE-00121140-LEGALEASE-00121141 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12105 | Patterson v. Thompson, 277 S.W.2d 314 | 317A+102 | The statute (now section 389.640 RSMo 1949, V.A.M.S.) gives the Public Service Commission power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing. We do not interpret this as giving the Commission the power or authority to exempt a railroad from complying with its duty to maintain its crossings.The Public Service Commission law was intended to supplement, not to repeal, existing law except where in direct conflict with it. Clark v. Mississippi River & B. T. R. Co., 324 Mo. 406, 23 S.W.2d 174; 74 C.J.S., Railroads, " 718, p. 1317. | Public Service Commission Law was intended to supplement, not to repeal, existing law except where in direct conflict with it. Section 389.610 RSMo 1949, V.A.M.S. | Does the Public Service Commission Law repeal the existing law in conflict with it? | 042591.docx | LEGALEASE-00121311-LEGALEASE-00121312 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 12106 | W. Cas. & Sur. Co. v. Bowling, 39 Colo. App. 357 | 38+73 | Subrogation and assignment are distinct legal concepts. Subrogation operates only to secure contribution and indemnity, whereas an assignment transfers the whole claim. As stated in 16 G. Couch, Cyclopedia of Insurance Law s 61.92 (2d ed. R. Anderson):"Subrogation is the substitution of another person in the place of the creditor, so that the person substituted will succeed to the rights of the creditor in relation to the debtor's claim, and is an act of the law growing out of the relation of the parties to the original contract of insurance, and the natural justice or equities arising from the fact that the insurer has paid the insured, rather than a right depending on the contract. On the other hand, an assignment of a right or claim is the act of the parties to the assignment, dependent upon actual intention, and necessarily contemplates the continued existence of the debt or claim, the whole of which is assigned. | Subrogation and assignment are distinct and legal concepts in that subrogation operates only to secure contribution and indemnity, whereas assignment transfers the whole claim. | Do assignment and subrogation remain distinct legal concepts? | Subrogation - Memo # 427 - C - SA.docx | ROSS-003297673-ROSS-003297674 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 12107 | Williams v. Erie Ins. Grp., 86 Ohio App. 3d 660 | 217+3513(3) | Finally, Erie Insurance argues that the doctrine of equitable subrogation requires reversal of the trial court's decision and payment of the $5,000. Equitable subrogation exists by operation of law. It inures to the insurer without any formal assignment or any expressed stipulation to that effect in the policy. Northwestern Ohio Natural Gas Co. v. First Congregational Church (App.1932), 12 Ohio Law Abs. 454. Equitable subrogation is essentially a theory of unjust enrichment wherein the insured is unjustly enriched if the amount he receives from the tortfeasor and his own insurance company exceeds the amount of his loss. Ridge Tool Co. v. Silva (1986), 33 Ohio App.3d 260, 515 N.E.2d 945. Thus, recovery may be had by the insurer despite lack of proof of an agreement, since the insured is not prejudiced thereby. | "Equitable subrogation" is essentially theory of unjust enrichment wherein insured is unjustly enriched if amount he receives from tort-feasor and his own insurance company exceeds amount of his loss and, thus, recovery may be had by insurer despite lack of proof of agreement, as insured is not prejudiced thereby. | Is unjust enrichment related to the doctrine of equitable subrogation? | Subrogation - Memo # 456 - C - NO.docx | ROSS-003283650-ROSS-003283652 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 12108 | Cont'l Cas. Co. v. Ryan Inc. E., 974 | 366+1 | Unlike conventional subrogation, which is created by an express agreement, equitable (sometimes referred to as legal) subrogation arises by operation of law. See DeCespedes, 193 So.2d at 227; 31A Fla. Jur.2d Insurance " 3295 (2002). Equitable subrogation has been defined as "the substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." Black's Law Dictionary 1467. Basically, it is an equitable remedy created "by the legal consequences of the acts and relationships of the parties." Radio Station WQBA, 731 So.2d at 646. Accordingly, equitable subrogation, "the object of which is to prevent injustice," is governed by the principles of equity. Holmes, supra, " 141.1 [C] [1]. | Basically, equitable subrogation is an equitable remedy created by the legal consequences of the acts and relationships of the parties. | Is equitable subrogation an equitable remedy created by the legal consequences of the acts and relationships of the parties? | Subrogation - Memo # 469 - C - SA.docx | ROSS-003311529-ROSS-003311530 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12109 | Kirwan v. Chicago Title Ins. Co., 9 Neb. App. 372 | 366+1 | ""[S]ubrogation is an equitable doctrine and depends upon a just resolution of a dispute under a particular set of facts." " Julson v. Federated Mut. Ins. Co., 1997 SD 43 & para 8, 562 N.W.2d 117, 120 (1997), quoting Vogt v. Schroeder, 129 Wis.2d 3, 383 N.W.2d 876 (1986). Thus, if the lender could recoup attorney fees it expended from the Kirwans, Chicago Title should be able to collect the fees it paid for the lender, since it was the entity that incurred the actual expense. In short, Chicago Title "steps into the shoes" of First Trust in terms of the right to recover the defense costs from the Kirwans. Subrogation is an equitable remedy that provides for an adjustment between the parties to secure the ultimate discharge of a debt by a person who, in equity or good conscience, ought to pay for it. St. Paul Fire & Marine v. Amerada Hess Corp., 275 N.W.2d 304 (N.D.1979), citing National Garment Co. v. New York C. and St. L.R. Co., 173 F.2d 32 (8th Cir.1949). And if the Kirwans are contractually obligated to pay the fees of First Trust, the subrogation claim takes on added strength. | Subrogation is an equitable doctrine and depends upon a just resolution of a dispute under a particular set of facts. | "As an equitable principle, does subrogation depend upon a just resolution of a dispute under a particular set of facts?" | Subrogation - Memo # 479 - C - SA.docx | ROSS-003301501-ROSS-003301503 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12110 | Wimer v. Pennsylvania Employees Benefit Tr. Fund, 595 Pa. 627 | 366+1 | Upon consideration of the foregoing arguments and the relevant case law, we agree that a subrogee must first tender payment to the subrogor in satisfaction of a debt before a right to subrogation accrues. In making this determination, we note by way of background that the doctrine of subrogation is based on principles of equity and is enforced to bring about substantial justice. Employers Ins. of Wausau v. Commonwealth, Dep't of Transp., 581 Pa. 381, 865 A.2d 825, 831"32 (2005). Subrogation is designed to place the ultimate burden of a debt on the party who in good conscience should pay it, and, as such, is generally applicable when one party pays out of his own funds a debt that is primarily payable from the funds of another. Id. at 833; see also Paxton Nat'l Ins. Co. v. Brickajlik, 513 Pa. 627, 522 A.2d 531, 532 (1987) ("Subrogation is the equity called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities which the creditor may hold against the principal debtor, and by the use of which the party paying may thus be made whole.' "), citing Appeal of Forest Oil Co., 118 Pa. 138, 12 A. 442, 443 (1888). We also note that the rights to which the subrogee succeeds are the same as, and can be no greater than those of the person for whom he is substituted. Pa. Mfrs.' Ass'n Ins. Co. v. Wolfe, 534 Pa. 68, 626 A.2d 522, 525 (1993). | Doctrine of subrogation is based on principles of equity and is enforced to bring about substantial justice. | Is the doctrine of subrogation based on principles of equity and enforced to bring about substantial justice? | Subrogation - Memo # 490 - C - SA.docx | ROSS-003311128-ROSS-003311130 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12111 | Lincoln Nat'l Health & Cas. v. Mitsubishi Motor Sales, 778 So. 2d 392 | 366+22 | The right to pursue a claim for equitable subrogation "arises when the person discharging the obligation is under a legal duty to do so or when the person discharges the obligation to protect an interest in, or a right to, the property." National Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So.2d 328, 332 (Fla. 3d DCA 1999), app'd, 765 So.2d 36 (Fla.2000). The policy behind the doctrine is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge. Kala Inv., Inc. v. Sklar, 538 So.2d 909 (Fla. 3d DCA 1989). Florida courts are "committed to a liberal application of the rule of equitable subrogation." Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 156 So. 116, 120 (1934). | The right to pursue a claim for equitable subrogation arises when the person discharging the obligation is under a legal duty to do so or when the person discharges the obligation to protect an interest in, or a right to, the property. | Is the purpose of equitable subrogation to prevent unjust enrichment by assuring that the person responsible for the debt ultimately answers for its discharge? | 043761.docx | LEGALEASE-00121589-LEGALEASE-00121590 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 12112 | In re V. Pangori & Sons, 53 B.R. 711 | 366+21 | In contradistinction to indemnity, subrogation, while it may be the subject of express contract, is, for the purposes of this discussion, a creature of equity, developed by courts for the benefit of the surety. The right of subrogation arises when the surety becomes obligated to satisfy the debts of its principal. Upon payment to the principal's creditor, there is an equitable assignment to the surety of all the rights which that creditor could assert against the principal. Simpson, Suretyship, 47 (West, 1950). The surety thus stands in the shoes of that particular creditor and may utilize any remedy against the principal which the creditor could have used. American States Ins. Co. v. Taubman Co., 352 F.Supp. 197 (E.D.Mich.1972). | Reimbursement is equitable right implied in law in favor of surety against the principal; although both subrogation and reimbursement are rights which arise at time the surety becomes obligated to pay debts on behalf of the principal, neither ripens into an enforceable cause of action until the surety is actually called upon to satisfy a claim. | Does the right of subrogation arise when a surety becomes obligated to satisfy the debts of its principal? | 043906.docx | LEGALEASE-00121106-LEGALEASE-00121107 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 12113 | In re Big Idea Prods., 372 B.R. 388 | 366+8 | A subrogated surety is entitled (1) to execution on the judgment against the principal's property for the amount of his payment, plus interest and costs." Tex. Bus. & Com.Code " 34.04(b). Moreover, a surety can be subrogated not only to the rights of the creditor, but also to the rights of the principal on whose behalf the surety paid. Interfirst Bank Dallas, N.A., 774 S.W.2d at 397"98; St. Paul Fire & Marine Ins. Co. v. United States, 370 F.2d 870, 872 (5th Cir.1967). | Under Texas law, a surety can be subrogated not only to the rights of the creditor, but also to the rights of the principal on whose behalf the surety paid. | "Can a surety be subrogated not only to the rights of the creditor, but also the rights of the principal on whose behalf the surety paid?" | 043951.docx | LEGALEASE-00121160-LEGALEASE-00121161 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 12114 | Kim v. Lee, 145 Wash. 2d 79 | 366+1 | Subrogation is fundamentally an equitable concept designed "to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it." Mahler v. Szucs, 135 Wash.2d 398, 411, 957 P.2d 632 (1998) (subrogation in auto insurance context allows insurer to recover payments made to insured from third party tortfeasor). The doctrine of subrogation is not a fixed and inflexible rule of law or of equity. Han v. United States, 944 F.2d 526, 529 (9th Cir.1991). Generally, in federal courts, equity has acted only when legal remedies were inadequate. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 508, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). | Subrogation is fundamentally an equitable concept designed to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it. | What is the concept of Subrogation? | Subrogation - Memo # 635 - C - SA.docx | ROSS-003284804-ROSS-003284805 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12115 | DePuy v. Farmer, 847 N.E.2d 160 | 366+1 | The result reached in Tippmann is produced by the common law even in the absence of the statutory right conferred by section 13. In the absence of a specific statutory provision, this subrogation right comes from the common law. Subrogation operates "in favor of persons who are legally obligated to pay for a loss caused by another's tort." Steury v. N. Ind. Pub. Serv. Co., Inc., 510 N.E.2d 213, 214 (Ind.Ct.App.1987) (citing 73 Am.Jur.2d Subrogation " 38 (1974); 83 C.J.S. Subrogation " 16 (1953)). Common law subrogation is "a doctrine of equity jurisprudence" that "arises by operation of law, that is to say it is created by the legal consequences of the acts and relationships of the parties, and thus is a legal fiction." 83 C.J.S. Subrogation "" 2, 4 at 499"500, 504 (2000) (citations omitted); accord 73 Am.Jur.2d Subrogation " 1 at 541 (West 2001). It is "designed to promote and to accomplish justice, and ... compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." 83 C.J.S. Subrogation " 3 at 502"03. The main goals of common law subrogation is to reimburse the subrogee for payments made by it, and prevent unjust enrichment of the subrogor. Bank of New York v. Nally, 820 N.E.2d 644, 653 (Ind.2005); Erie Ins. Co. v. George, 681 N.E.2d 183, 186 (Ind.1997); 73 Am.Jur.2d Subrogation " 2 at 543. The Board's decision to allow Farmer to continue his worker's compensation claim contingent upon his remitting the settlement sum to DePuy achieved these goals, and was a proper application of these common law principles. | The main goals of common law subrogation are to reimburse the subrogee for payments made by it, and prevent unjust enrichment of the subrogor. | What are the main goals of common law subrogation? | Subrogation - Memo # 711 - C - SA.docx | ROSS-003311638-ROSS-003311639 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12116 | In re Bill Heard Enterprises, 423 B.R. 771 | 366+1 | 50. The overall fairness of applying equitable subrogation should be assessed with a view to the purpose of the doctrine, which is to prevent unjust enrichment. If this goal is not accomplished, the doctrine should not be applied. See, e.g., Casstevens v. Smith, 269 S.W.3d 222, 228 (Tex.App.2008) (refusing to apply equitable subrogation where it would not prevent unjust enrichment). The rights asserted by Alphera also must be weighed against the competing equities in this case and viewed from a perspective of what Alphera as the entity seeking subrogation could have done differently in this case. ""Equity rules are not absolute and competing equities must be considered in any subrogation-restitution situation. The subrogee must have clear equity and subrogation is defeated by countervailing equities." " In re Hutchins, 400 B.R. 403, 414 (Bankr.D.Vt.2009) (quoting Norfolk & Dedham Fire Ins. Co. v. Aetna Casualty & Surety Co., 132 Vt. 341, 318 A.2d 659, 661"62 (1974)). | Equity rules are not absolute and competing equities must be considered in any subrogation-restitution situation; the subrogee must have clear equity, and subrogation is defeated by countervailing equities. | Should competing equities be considered in any subrogation-restitution situation? | Subrogation - Memo # 724 - C - NO.docx | ROSS-003295834-ROSS-003295835 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 12117 | Smith Land Co. v. Christensen, 148 F.2d 184 | 23+3.3(5) | 3 For another reason the motion was not well taken. Section 372 of the Act, 7 U.S.C.A. " 1372, provides that all penalties on surplus wheat shall be collected and remitted to the Secretary of Agriculture and be by him covered into the general fund of the Treasury of the United States; and that if a claim for refund is filed with the Secretary within one year after payment of the penalty to him, and he finds that such penalty was erroneously, illegally, or wrongfully collected and that the claimant bore the burden of its payment, the Secretary of Agriculture shall certify to the Secretary of the Treasury for payment such amount as he finds the claimant is entitled to receive. The method thus provided by Congress for obtaining refund for a penalty imposed upon surplus wheat is exclusive. It cannot be had by motion and order in a special statutory proceeding of this kind. | The provisions in Agricultural Adjustment Act establishing procedure for claim for refund of penalty on surplus wheat provides an exclusive method for obtaining refund. Agricultural Adjustment Act of 1938, S 372, as amended, 7 U.S.C.A. S 1372. | "According to the Agricultural Adjustment Act of 1938, who should collect and remit all penalties on surplus wheat?" | 006755.docx | LEGALEASE-00122389-LEGALEASE-00122390 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 12118 | Herrington v. Union Planters Bank, N.A., 113 F. Supp. 2d 1026 | 25T+121 | First, the plaintiffs maintain that they are entitled to pursue punitive or exemplary damages under the TISA and that the arbitration agreement is unenforceable because it specifically excludes such recovery. The Third Circuit rejected a similar argument by finding that a contractual waiver of punitive damages is irrelevant to the issue of whether the plaintiff's claims should be arbitrated, even if such damages are recoverable under the statute. Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 232 (3rd Cir.1997). Moreover, the United States Supreme Court has repeatedly stated that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi, supra, 473 U.S. at 628, 105 S.Ct. 3346. Thus, the Court finds that a contractual waiver of punitive damages is not a valid ground for refusing to compel arbitration. | Contractual waiver of punitive damages under statute is not valid ground for refusing to compel arbitration of statutory claim. | Is the contractual waiver of punitive damages a valid ground for refusing to compel arbitration? | 007064.docx | LEGALEASE-00122408-LEGALEASE-00122409 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12119 | CompuCredit Corp. v. Greenwood, 565 U.S. 95 | 25T+121 | Respondents suggest that the CROA's civil-liability provision, " 1679g (set forth in full in the Appendix, infra), demonstrates that the Act provides consumers with a "right" to bring an action in court. They cite the provision's repeated use of the terms "action," "class action," and "court""terms that they say call to mind a judicial proceeding. These references cannot do the heavy lifting that respondents assign them. It is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, in the context of a court suit. If the mere formulation of the cause of action in this standard fashion were sufficient to establish the "contrary congressional command" overriding the FAA, McMahon, supra, at 226, 107 S.Ct. 2332, valid arbitration agreements covering federal causes of action would be rare indeed. But that is not the law. In Gilmer we enforced an arbitration agreement with respect to a cause of action created by the Age Discrimination in Employment Act of 1967 (ADEA) which read, in part: "Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. " 626(c)(1). In McMahon we enforced an arbitration agreement with respect to a cause of action created by a provision of the Racketeer Influenced and Corrupt Organizations Act (RICO) which read, in part: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit...." 18 U.S.C. " 1964(c). And in Mitsubishi Motors we enforced an arbitration agreement with respect to a cause of action created by a provision of the Clayton Act which read, in part: "[A]ny person who shall be injured in his business or property by reason of anything forbidden in | Contractually required arbitration of claims satisfies the statutory prescription of civil liability in court. | Do arbitration claims satisfy the statutory prescription of civil liability in courts? | 007071.docx | LEGALEASE-00122413-LEGALEASE-00122415 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 12120 | State v. Kosewicz, 174 Wash. 2d 683 | 203+583 | Regarding Brown's felony murder charge, the State had the burden to prove that Brown "commit[ed] ... kidnapping in the first or second degree, ... and in the course of or in furtherance of such crime or in immediate flight therefrom, [Brown], or another participant, cause[d] the death of a person other than one of the participants." RCW 9A.32.030(1)(c). While a predicate felony, such as kidnapping in the first degree, is an element of this felony murder charge, the defendant is not actually charged with the underlying crime. State v. Whitfield, 129 Wash. 134, 139, 224 P. 559 (1924). The predicate felony merely substitutes for the mental state the State is otherwise required to prove. State v. Craig, 82 Wash.2d 777, 781, 514 P.2d 151 (1973). Therefore, Washington courts have long held that the underlying elements of the predicate felony are not essential elements of felony murder and do not have to be included in the information. State v. Hartz, 65 Wash.App. 351, 354, 828 P.2d 618 (1992) (citing State v. Anderson, 10 Wash.2d 167, 180, 116 P.2d 346 (1941); State v. Ryan, 192 Wash. 160, 164"65, 73 P.2d 735 (1937); State v. Fillpot, 51 Wash. 223, 228, 98 P. 659 (1908)). Because the elements of the predicate felony need not be pleaded, the information also does not need to specify the alternative means of committing a crime on which the State will ultimately rely. Id. at 354"55, 828 P.2d 618. | While a predicate felony is an element of felony murder charge, the defendant is not actually charged with the underlying crime, and predicate felony merely substitutes for the mental state the state is otherwise required to prove. West's RCWA 9A.32.030(1)(c). | Is kidnapping an element of murder? | 019327.docx | LEGALEASE-00122446-LEGALEASE-00122447 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12121 | Rockwell v. Allegheny Health, Educ. & Research Found., 19 F. Supp. 2d 401 | 237+6(1) | Moreover, not all of Donnelly's statements, as expressions of opinion, are clearly founded on disclosed facts. A simple non-actionable expression of opinion occurs when a person expresses a comment as to another's conduct, qualifications or character after either stating the facts on which he bases his opinion or when both parties to the communication know the facts or assume their existence. Wolgin v. Smith, 1996 WL 745285, 3 (E.D.Pa.1996) (citing Restatement 2d Torts " 566, comment b). "Pure opinion" is based on disclosed facts and is non-actionable. Opinion that is not based on disclosed facts is "mixed opinion," comprising factual statements that surpass mere expressions of opinion. "Mixed opinion" implies the existence of undisclosed facts and is therefore actionable." | Under Pennsylvania law, opinion that is not based on disclosed facts is "mixed opinion," comprising factual statements that surpass mere expressions of opinion; mixed opinion implies existence of undisclosed facts and is therefore actionable. 42 Pa.C.S.A. S 8343; Restatement (Second) of Torts S 566. | What is a mixed opinion? | 021049.docx | LEGALEASE-00122103-LEGALEASE-00122104 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 12122 | Butler v. Adecco USA Inc., 189 F. Supp. 3d 305 | 237+6(1) | "To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." White v. Blue Cross & Blue Shield of Massachusetts, Inc., 442 Mass. 64, 809 N.E.2d 1034, 1036 (2004). "[T]o be actionable, the statement must be one of fact rather than of opinion." Scholz v. Delp, 473 Mass. 242, 41 N.E.3d 38, 45 (2015). Although "[a] statement of fact is not shielded from an action for defamation by being prefaced with the words "in my opinion," ... a statement that does not contain objectively verifiable facts is not actionable." Id. (internal citations omitted). Moreover, a statement of opinion can be actionable if the "opinion "implies the allegation of undisclosed defamatory facts as' " as its basis. Yohe v. Nugent, 321 F.3d 35, 41 (1st Cir.2003) (quoting Nat'l Ass'n of Gov't Employees, Inc. v. Central Broad. Corp., 379 Mass. 220, 396 N.E.2d 996, 1000"01 (1979)). "To determine whether or not a statement is an opinion, a court "must examine the statement in its totality and in the context in which it was uttered or published," " giving " "weight to cautionary terms used by the person publishing the statement," " and considering " "all of the circumstances surrounding the statement." " Id. (quoting Lyons v. Globe Newspaper Co., 415 Mass. 258, 612 N.E.2d 1158, 1162 (1993)) (citation omitted). | Although a statement of fact is not shielded from an action for defamation under Massachusetts law by being prefaced with the words "in my opinion," a statement that does not contain objectively verifiable facts is not actionable. | Are statements that do not contain verifiable facts actionable as defamation? | 021069.docx | LEGALEASE-00122263-LEGALEASE-00122265 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 12123 | Harris v. Wallette, 538 So.2d 728 | 289+502 | We agree with Ogden and Glover that income tax returns are entitled to some evidentiary weight for the purpose of determining if the business is a partnership. | Income tax returns were entitled to some evidentiary weight for purpose of determining if business was partnership. | Are income tax returns given evidentiary weight when determining if a business is a partnership? | Partnership - Memo 102 - RK.docx | ROSS-003284243-ROSS-003284244 | Condensed, SA | 0.28 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12124 | Thompson v. U.S., 87 Fed.Cl. 728 | 289+1145 | In sum, when Congress enacted I.R.C. " 469, there was general agreement among state laws that a limited partner would lose his limited liability status if he participated in the control of the business. Stated another way, a limited partner's level of participation in the business dictated whether or not he enjoyed limited liability. But the converse is not true. Under the ULPA, a limited partner who "takes part in the control of the business" becomes "liable as a general partner." ULPA " 7 (1916). The same is true under the RULPA, which makes a limited partner "liable for the obligations of a limited partnership" if "he participates in the control of the business." See RULPA " 303(a) (1985). To be sure, the loss of limited liability under state law likely deterred many limited partners from participating in the control of their businesses, but limited liability is not the sine qua non of a limited partnership interest. | Under either the ULPA or RULPA, a limited partner would lose his limited liability status if he participated in the control of the business, that is, a limited partner's level of participation in the business dictates whether or not he enjoyed limited liability; but, the converse is not true, so that a limited partner who takes part in control of the business becomes liable as a general partner. Uniform Limited Partnership Act, S 303(a). | Does a limited partner lose his limited liability status if he participates in the control of the business? | Partnership - Memo 104 - RK.docx | ROSS-003312579-ROSS-003312580 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 12125 | Blocker Exploration Co. v. Frontier Exploration, 740 P.2d 983 | 260+97 | The three essential elements of a mining partnership are: (1) joint ownership; (2) joint operation; and (3) an express or implied agreement to share profits and losses. Mud Control Laboratories, 2 Utah 2d at 91"92, 269 P.2d at 858. This mining partnership test has been adopted in the jurisdictions which have addressed this issue. Gilroy v. White Eagle Oil Co., 201 F.2d 113 (10th Cir.1952) (applying Oklahoma law); Gilbert v. Fontaine, 22 F.2d 657, 661 (10th Cir.1927) (applying Kansas law); Edwards v. Hardwick, 350 P.2d 495, 501"02 (Okla.1960); Lyons v. Stekoll, 186 Okla. 94, 96 P.2d 60 (1939). See Fiske, Mining Partnership, 26 Inst. on Oil & Gas L. & Tax'n 187, 193 (1975). | Three essential elements of mining partnership are joint ownership, joint operation, and express or implied agreement to share profits and losses; if mining partnership exists, partners are characterized as operators and have a limited power (less than the power of a general partner) to bind other members of the partnership. | What are the essential elements of a mining partnership? | 021835.docx | LEGALEASE-00122496-LEGALEASE-00122497 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 12126 | Shalett v. Brownell-Kidd Co., 153 So.2d 425 | 289+412 | The test for determining whether or not a partnership is a commercial partnership under Article 2825 of the LSA-Civil Code or an ordinary partnership under Article 2826, depends upon the intention of the parties and the nature of the business carried on under the agreement. American National Bank of Shreveport v. Reclamation Oil Producing Association of Louisiana, 156 La. 652, 101 So. 10; Moore v. Doughtie, 14 La.App. 407, 126 So. 235, 236. | Determination of whether partnership is a commercial partnership or an ordinary partnership depends upon intention of parties and nature of business. LSA-C.C. arts. 2825, 2826. | What is the test for determining whether a partnership is a commercial or an ordinary partnership? | 021872.docx | LEGALEASE-00122538-LEGALEASE-00122539 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 12127 | Hardy v. Gen. Motors Corp., 126 Ohio App. 3d 455 | 307A+3 | A motion in limine seeks a preliminary and temporary exclusion of evidence by the trial court. State v. Grubb (1986), 28 Ohio St.3d 199, 28 OBR 285, 503 N.E.2d 142. Generally, the admission or exclusion of evidence by a trial court will not be reversed on appeal absent a clear and prejudicial abuse of discretion. O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493"494. "The term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. | Motion in limine seeks a preliminary and temporary exclusion of evidence by trial court. | Does a motion in limine seek a preliminary and temporary exclusion of evidence by trial court? | Pretrial Procedure - Memo # 165 - C - CRB.docx | ROSS-003282397-ROSS-003282398 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12128 | Taylor v. Dowling Gosslee & Assocs., 22 So. 3d 246 | 307A+3 | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. Heller v. Nobel Insurance Group, 2000-0261 (La.2/2/2000), 753 So.2d 841; Randall v. Concordia Nursing Home, 2007-101 (La.App. 3d Cir.8/22/07), 965 So.2d 559, writ denied, 2007-2153 (La.1/7/08), 973 So.2d 726. This great discretion extends to the trial court's assessment of the probative value of evidence. Green v. Claiborne Elec. Co-op., Inc., 28,408 (La.App. 2d Cir.6/26/96), 677 So.2d 635. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or waste of time. La. C.E. art. 403. | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court; this great discretion extends to the trial court's assessment of the probative value of evidence. | A motion in limine is an evidentiary matter and great discretion is given to the trial court on its rulings on such evidentiary matters. | 024107.docx | LEGALEASE-00121968-LEGALEASE-00121969 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 12129 | Ratcliff v. Sprint Missouri, 261 S.W.3d 534 | 307A+3 | The trial court's ruling on a motion in limine is interlocutory and subject to change during the course of trial. Hancock v. Shook, 100 S.W.3d 786, 802 (Mo. banc 2003). "A motion in limine, by itself, preserves nothing for appeal." ""The proponent of the evidence must attempt to present the excluded evidence at trial." (quoting State v. Cole, 71 S.W.3d 163, 175 (Mo. banc 2002)). If the trial court continues to exclude the evidence, the proponent must then make an offer of proof. Id. | Trial court's ruling on a motion in limine is interlocutory and subject to change during the course of trial. | Is a trial court's ruling on a motion in limine interlocutory and subject to change during the course of trial? | 024242.docx | LEGALEASE-00121882-LEGALEASE-00121883 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 12130 | Chacon v. Jones-Schilds, 904 N.E.2d 286 | 307A+3 | The granting or denying of a motion in limine is within the sound discretion of the trial court. Perry v. Gulf Stream Coach, Inc., 871 N.E.2d 1038, 1047 (Ind.Ct.App.2007). "The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence." Id. We will not reverse the trial court's decision to admit evidence absent an abuse of discretion. Safe Auto Ins. Co. v. Am. Family Mut. Ins. Co., 890 N.E.2d 737, 741 (Ind.Ct.App.2008). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court or it misinterprets the law. | The granting or denying of a motion in limine is within the sound discretion of the trial court. | Is the granting or denying of a motion in limine within the sound discretion of the trial court? | Pretrial Procedure - Memo # 11 - C - KA.docx | ROSS-003324512-ROSS-003324513 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12131 | Cass Bank & Tr. Co. v. Mestman, 888 S.W.2d 400 | 307A+3 | Ordinarily, a motion in limine is used to exclude evidence in a jury trial which would be unfairly prejudicial or inflammatory. It is appropriate when the mere asking of an improper question in front of a jury may be so prejudicial that a party will be denied a right to a fair trial.However, it should not be employed indiscriminately.It is not a substitute for a summary judgment motion. Nor should it "ordinarily [be] employed to choke off an entire claim or defense." Lewis v. Buena Vista Mutual Ins. Ass'n, 183 N.W.2d 198, 201 (Iowa 1971). | Motion in limine is appropriate when mere asking of improper question in front of jury may be so prejudicial that party will be denied right to fair trial. | Is a motion in limine a substitute for a summary judgment motion? | 029654.docx | LEGALEASE-00122172-LEGALEASE-00122173 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12132 | Johnson v. Chiu, 199 Cal. App. 4th 775 | 307A+3 | A motion in limine is properly "made to exclude evidence before the evidence is offered at trial, on grounds that would be sufficient to object to or move to strike the evidence. The purpose of a motion in limine is "to avoid the obviously futile attempt to "unring the bell" in the event a motion to strike is granted in the proceedings before the jury." [Citations.]" (Edwards v. Centex Real Estate Corp. (1997) 53 Cal.App.4th 15, 26 [61 Cal.Rptr.2d 518], italics omitted.) "What in limine motions are not designed to do is to replace the dispositive motions prescribed by the Code of Civil Procedure." (Amtower v. Photon Dynamics, Inc. (2008) 158 Cal.App.4th 1582, 1593 [71 Cal.Rptr.3d 361].) "[M]otions in limine deal with evidence. May this particular document be admitted? May an expert witness testify to certain facts or conclusions? An in limine motion that seeks to exclude all evidence pertaining to part or all of a cause of action based on an argument that plaintiff lacks evidence to support part or all of the cause of action is but a disguised motion for summary adjudication." (R & B Auto Center, Inc. v. Farmers Group, Inc. (2006) 140 Cal.App.4th 327, 372 [44 Cal.Rptr.3d 426] (conc. opn. of Rylaarsdam, J.).) This case presents a textbook example of the inappropriate of in limine motions. (See Amtower v. Photon Dynamics, Inc., supra, 158 Cal.App.4th at p. 1594; 71 Cal.Rptr.3d 361; R & B Auto Center, Inc. v. Farmers Group, Inc., supra, 140 Cal.App.4th at p. 371, 44 Cal.Rptr.3d 426 (conc. opn. of Rylaarsdam, J.) ["To have the sufficiency of the pleading or the existence of triable issues of material fact decided in the guise of a motion in limine is a perversion of the process."].) However, as we stated above, the issue has not been preserved and has been withdrawn. (K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc., supra, 171 Cal.App.4th at pp. 948"949, 90 Cal.Rptr.3d 247) | In limine motions are not designed to replace the dispositive motions prescribed by the Code of Civil Procedure. | Are in limine motions designed to replace the dispositive motions prescribed by the Code of Civil Procedure? | Pretrial Procedure - Memo # 367 - C - TJ.docx | ROSS-003324035-ROSS-003324036 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 12133 | Manhattan Ice & Cold Storage v. City of Manhattan, 294 Kan. 60 | 307A+3 | A multistep evidentiary analysis applies to the first factor in the motion in limine analysis. 290 Kan. at 817, 235 P.3d 436.. "Generally, when considering a challenge to a district judge's admission of evidence, an appellate court must first consider relevance. Unless prohibited by statute, constitutional provision, or court decision, all relevant evidence is admissible. K.S.A. 60"407(f). Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60"401(b). To establish relevance, there must be some material or logical connection between the asserted facts and the inference or result they are intended to establish. [Citation omitted]." " Mooney, 283 Kan. at 620, 153 P.3d 1252 (quoting State v. Gunby, 282 Kan. 39, 47, 144 P.3d 647 [2006] ). | A multistep evidentiary analysis applies to the first "admissibility of evidence" factor in the motion in limine analysis. | "Does a multistep evidentiary analysis apply to the first ""admissibility of evidence"" factor in the motion in limine analysis?" | 029900.docx | LEGALEASE-00122201-LEGALEASE-00122202 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 12134 | Hous. Auth. of Macon v. Younis, 279 Ga. App. 599 | 307A+3 | A motion in limine should be granted when "there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial." Andrews v. Wilbanks, 265 Ga. 555, 556, 458 S.E.2d 817 (1995). Although a trial court has broad discretion to determine the admissibility of evidence, irrelevant evidence that does not bear directly or indirectly on the questions being tried should be excluded. See OCGA " 24-2-1; see also Ballew v. Kiker, 192 Ga.App. 178, 179(2), 384 S.E.2d 211 (1989) (trial court properly excluded irrelevant evidence). | A motion in limine should be granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. | Should a motion in limine be granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial? | Pretrial Proceedure - Memo # 31 - C - TJ.docx | ROSS-003284192-ROSS-003284194 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 12135 | Fergus v. Songer, 150 Cal. App. 4th 552 | 30+3959 | Where, as here, the granting of a motion in limine disposes of one or more causes of action, it is the functional equivalent of the granting of a nonsuit as to those causes of action. In such circumstances, "we must view the evidence most favorably to appellants, resolving all presumptions, inferences and doubts in their favor, and uphold the judgment for respondent[ ] [on the applicable causes of action] only if it was required as a matter of law. [Citations.]" (Edwards v. Centex Real Estate Corp., supra, 53 Cal.App.4th at p. 28, 61 Cal.Rptr.2d 518.). | Where the granting of a motion in limine disposes of one or more causes of action, it is the functional equivalent of the granting of a nonsuit as to those causes of action, and in such circumstances, the appellate court must view the evidence most favorably to appellants, resolving all presumptions, inferences, and doubts in their favor, and must uphold the judgment for appellee on the applicable causes of action only if it was required as a matter of law. | Is the granting of a motion in limine the functional equivalent of the granting of a nonsuit as to those causes of action? | Pretrial Proceedure - Memo # 32 - C - TJ.docx | ROSS-003288391-ROSS-003288392 | SA, Sub | 0.18 | 0 | 0 | 1 | 1 | |
| 12136 | In re Flamingo 55, 378 B.R. 893 | 366+1 | Neither party could find any case on point. The Trustee's position has the virtue of cold logic; if the requirement is, as Caito states, that the payment have been made "by the subrogee," then subrogation cannot be found as the proposed subrogees made no payment. On the other hand, Grantham and Saba clearly suffered a change in circumstances due to the foreclosure: whereas before they had land and a debt; they now have cash and no debt, much as if, they contend, they had sold the California Property and directly paid Datacom. As Caito noted, given the equitable origins of subrogation, sometimes equitable concerns can override the stated elements of the judge-made doctrine. Caito, 20 Cal.3d at 705, 576 P.2d at 472, 144 Cal.Rptr. at 757. See also Han, 944 F.2d at 529 ("Equitable subrogation is a broad equitable remedy, not limited to circumstances where these five factors are met, but is appropriate whenever "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." "). | Under California law, given the equitable origins of subrogation, sometimes equitable concerns may override the stated elements of the judge-made doctrine. | Can equitable concerns override the stated elements of the judge-made doctrine? | Subrogation - Memo # 535 - C - NO.docx | ROSS-003297741-ROSS-003297742 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 12137 | Brooks v. Pennington, 995 So. 2d 733 | 13+61 | A cause of action accrues "when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested." American Home Prods. Corp. v. Sumlin, 942 So.2d 766 (12) (Miss.2006) (citations omitted). Specifically, a "complaint for false arrest and false imprisonment accrue[s] on the date of arrest." Parker v. Mississippi Game & Fish Comm'n, 555 So.2d 725, 727 (Miss.1989). Martin surrendered Brooks to the Rankin County Sheriff's Department on September 28, 2004. At the moment the Rankin County Sheriff's Department accepted Martin's surrender, Brooks's causes of action accrued because it was that act, accepting surrender of Brooks, that served as the genesis of the claims before the trial court. | A cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. | Does a cause of action accrue when it comes into existence as an enforceable claim? | Action - Memo # 82 - C - NO.docx | ROSS-003283172-ROSS-003283173 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12138 | Weiss v. Smulders, 313 Conn. 227 | 51+2154.1 | Despite this split of authority, we conclude that we need not resolve in the present case which approach is correct because the defendants' claim fails under both approaches. We first apply the approach that looks to applicable state law to determine whether the claim existed as of the petition date. The doctrine of promissory estoppel serves as an alternative basis to enforce a contract in the absence of competing common-law considerations. See D'Ulisse"Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987); Torringford Farms Assn., Inc. v. Torrington, 75 Conn.App. 570, 576, 816 A.2d 736, cert. denied, 263 Conn. 924, 823 A.2d 1217 (2003). "The law concerning when a breach of contract action accrues is well settled. This court has stated that [i]n an action for breach of contract .. the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted." (Internal quotation marks omitted.) Tolbert v. Connecticut General Life Ins. Co., 257 Conn. 118, 124, 778 A.2d 1 (2001); see also Engelman v. Connecticut General Life Ins. Co., 240 Conn. 287, 294"95 n. 7, 690 A.2d 882 (1997) (noting in contract action wherein defendant is claimed to have breached his obligation to pay sum of money, cause of action accrues when defendant fails to pay promised 245 sum). Therefore, it follows that a cause of action for promissory estoppel accrues when the defendant fails to fulfill its promise. See Torringford Farms Assn., Inc. v. Torrington, supra, at 577"78, 816 A.2d 736. | First specialty food business and its owner had standing to pursue their promissory estoppel claim against second specialty food business and its owner, regardless of the approach used to determine whether the promissory estoppel claim existed as of first owner's bankruptcy petition date; under the state law approach, the cause of action accrued when the defendant failed to fulfill its promise, or after the bankruptcy filing, and the claim would not have been the property of the bankruptcy estate, and under the federal approach, even if the promissory estoppel claim had some prepetition roots, any promise supporting the promissory estoppel claim did not occur until after the bankruptcy petition was filed. 11 U.S.C.A. S 541. | Does a cause of action for promissory estoppel accrue when the defendant fails to fulfill its promise? | Action - Memo # 97 - C - NO.docx | ROSS-003310736-ROSS-003310737 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 12139 | Dep't of Transp. v. Soldovere, 519 So. 2d 616 | 13+61 | A cause of action for the negligence of another accrues at the time the injury is first inflicted. See Seaboard Air Line Railroad Co. v. Ford, 92 So.2d 160 (Fla.1956); 35 Fla.Jur.2d Limitations and Laches " 48 (1982). This rule applies whether the action is against a private party or the state. See " 768.28(5), Fla.Stat. (1981). In Keith v. Dykes, 430 So.2d 502 (Fla. 1st DCA 1983), however, the district court held that causes of action against the director of the Division of Drivers Licenses did not accrue until the Department of Insurance notified claimants that their claims were denied. The court reasoned that compliance with subsection 768.28(6), Florida Statutes (1981), i.e., filing a claim and awaiting a response from the Department of Insurance, is a condition precedent to maintaining suit and that the cause of action does not accrue until the condition is fulfilled. The first district in Soldovere I felt compelled to follow its decision in Keith. | Cause of action for negligence of another accrues at time injury is first inflicted, whether action is against private party or the state. West's F.S.A. S 768.28(5). | Does cause of action for negligence of another accrues at time injury is first inflicted? | Action - Memo # 130 - C CS.docx | ROSS-003298228-ROSS-003298230 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 12140 | Gen. Motors Acceptance Corp. v. Howard, 487 S.W.2d 708 | 13+61 | The accrual of a cause of action results when facts come into existence which entitle one to institute and maintain a suit. Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 721 (1945); A. H. Belo Corporation v. Blanton, 133 Tex. 391, 129 S.W.2d 619, 621 (1939); Shamrock Oil and Gas Corporation v. Price, 364 S.W.2d 260, 262 (Tex.Civ.App., 1963, no writ). The accrual of a cause of action is not negated by a showing that it may be subject to defeat on the merits by an affirmative defense. Thus, false statements indicating that a plaintiff is bankrupt have been held to be libelous per se, even though a suit for damages therefor may be defeated on the merits by an affirmative defense of conditional privilege. Denton Publishing Company v. Boyd, 460 S.W.2d 881 (Tex.1970); Dun and Bradstreet, Inc. v. O'Neil, 456 S.W.2d 896 (Tex.1970); Thorn v. Theo H. Blue Drilling, Inc., 472 S.W.2d 535 (Tex.Civ.App., 1971, no writ). The above cases indicate that malice is not an essential element of the original cause of action, although once the defendant establishes an affirmative defense of privilege, the burden is upon the plaintiff to show, if he can, that the privilege was lost because of malice. These defenses and counter-defenses go to the merits and often, as here, involve fact issues or mixed issues of law and fact. This Court held in Boyd, supra:"Privilege is an affirmative defense in the nature of confession and avoidance; and, except where the plaintiff's petition shows on its face that the alleged libelous publication is protected by a privilege, the defendant has the burden of proving that the publication is privileged. A. H. Belo & Co. v. Looney, 112 Tex. 160, 246 S.W. 777 (1922); Dealers National Insurance Co. v. Rose, 396 S.W.2d 535 (Tex.Civ.App.1965, no writ) . . ." (460 S.W.2d at 884). | Cause of action accrues when facts come into existence which entitle one to institute and maintain a suit. | Does a cause of action accrue when facts exist which entitle one party to maintain an action against another? | 005614.docx | LEGALEASE-00124007-LEGALEASE-00124009 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 12141 | Milde v. Leigh, 75 N.D. 418 | 13+61 | "The rule is stated tersely and with many supporting authorities in 19 Am. & Eng. Ency. of Law (2d Ed.) p. 193, thus: "A cause of action does not accrue until the party owning it is entitled to begin and prosecute an action thereon; it accrues at the moment when he has a legal right to sue on it and no earlier." That covers the whole subject. Nothing can be gained by mulitplying words in respect to it. | A cause of action does not "accrue" until the party owning it is entitled to begin and prosecute an action thereon. | Does a cause of action accrue before the party owning it is entitled to begin and prosecute an action thereon? | 005632.docx | LEGALEASE-00124027-LEGALEASE-00124028 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 12142 | Milde v. Leigh, 75 N.D. 418 | 13+61 | The rule is stated tersely and with many supporting authorities in 19 Am. & Eng. Ency. of Law (2d Ed.) p. 193, thus: "A cause of action does not accrue until the party owning it is entitled to begin and prosecute an action thereon; it accrues at the moment when he has a legal right to sue on it and no earlier." That covers the whole subject. Nothing can be gained by multiplying words in respect to it. | A cause of action does not "accrue" until the party owning it is entitled to begin and prosecute an action thereon. | "Does a cause of action ""accrue"" before the party owning it is entitled to begin and prosecute action thereon?" | Action - Memo # 180 - C CS.docx | ROSS-003283741-ROSS-003283742 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12143 | In re S & D Foods, 144 B.R. 121 | 13+1 | Kunkel has asserted several counterclaims against Larsen. Larsen claims Kunkel is without standing to pursue the majority of his counterclaims because Kunkel is seeking to recover on claims, which, if they exist, belong to Pet or Protein, not to Kunkel. The Colorado Supreme Court has adopted the standing requirements outlined by the United States Supreme Court in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Wimberly v. Ettenberg, 194 Colo. 163, 570 P.2d 535 (1977). In Data Processing, the Supreme Court held that two requirements must be satisfied before a party has standing. First, the plaintiff must allege that the challenged action has caused injury in fact and, second, the interest sought to be protected must arguably be within the zone of interest to be protected or regulated by the statute in question. Id., 397 U.S. at 152"53, 90 S.Ct. at 829. Consequently, to pursue a cause of action in Colorado, a plaintiff must suffer an actual injury to a legally protected interest. See, Wimberly, supra, 570 P.2d at 539. | To pursue cause of action under Colorado law, plaintiff must suffer actual injury to legally protected interest. | Does harm to the plaintiff's legally protected interest need to be finally established for a cause of action to accrue? | 005820.docx | LEGALEASE-00123046-LEGALEASE-00123047 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 12144 | Saylor v. Hall, 497 S.W.2d 218 | 117+9 | The right of action for negligence proximately causing injury or death, which is constitutionally protected in this state, requires more than mere conduct before recovery can be attempted. Recovery is not possible until a cause of action exists. A cause of action does not exist until the conduct causes injury that produces loss or damage. The action for negligence evolved chiefly out of the old common-law form of action on the case, and it has always retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. See Prosser, Handbook of the Law of Torts, section 30, page 143 (4th Edition 1971). Indeed, the Supreme Court of New Jersey realized the relevance of this consideration in the recent case cited by the defendant builder in support of his argument on another phase of the case. See Rosenberg v. Town of North Bergen, 61 N.J. 190, 293 A.2d 662, 666 (1972). | Right of action for negligence proximately causing injury or death, which is constitutionally protected, requires more than mere conduct before recovery can be attempted; recovery is not possible until a cause of action exists, and a cause of action does not exist until the conduct causes injury that produces loss or damage. Const. SS 14, 54, 241. | Does a cause of action exist before the conduct causes injury that produces loss or damage? | Action - Memo # 40 - C - LK.docx | ROSS-003312990-ROSS-003312991 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 12145 | Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 897 N.W.2d 821 | 13+61 | As the Minnesota Supreme Court has noted, different jurisdictions have articulated three alternative thresholds for determining when a cause of action for malpractice accrues: (1) under the traditional "occurrence" rule, which assumes that nominal damages occur, the cause of action accrues, and the statute of limitations starts to run, at the time of the negligent act; (2) the "discovery" rule, under which the cause of action accrues when the plaintiff knew or should have known of the injury; and (3) the "damage" rule, under which the cause of action accrues "when "some damage has occurred as a result of the alleged malpractice." " Antone v. Mirviss, 720 N.W.2d 331, 335-36 (Minn. 2006) (quoting Herrmann v. McMenomy & Severson, 590 N.W.2d 641, 643 (Minn. 1999)). Minnesota adheres to the rule requiring "some damage" to occur for a cause of action to accrue. Id. at 338. Stated another way, "the alleged negligence .. coupled with the alleged resulting damage is the gravamen in deciding the date upon which the cause of action at law herein accrues." Dalton v. Dow Chem. Co., 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968). This rule avoids the potential pitfalls of the occurrence rule, which may encourage speculative litigation and involve wasteful economic behavior, and the discovery rule, which may open the door to open-ended liability. Antone, 720 N.W.2d at 335. We have noted, however, that " "[s]ome damage" is defined broadly, and the cause of action accrues on the occurrence of any compensable damage." Veit v. ProSource Techs., Inc., 879 N.W.2d 8, 10 (Minn. App. 2016) (quotation omitted). Thus, the cause of action exists at this point "even though the ultimate damage is unknown or unpredictable." Dalton, 280 Minn. at 154, 158 N.W.2d at 585 (quotation omitted). | Cause of action exists when some damages occurs even though the ultimate damage is unknown or unpredictable. | Does a cause of action exist even though the ultimate damage is unknown or unpredictable? | 005842.docx | LEGALEASE-00123225-LEGALEASE-00123226 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 12146 | Sierra Club v. Otter Tail Power Co., 615 F.3d 1008 | 241+43 | A claim first accrues "as soon as the right to institute and maintain a suit arises." Konecny v. United States, 388 F.2d 59, 65 (8th Cir.1967). 42 U.S.C. " 7475(a) provides that "[n]o major emitting facility may be constructed unless" it meets the various PSD requirements, and the CAA's citizen suit provision authorizes suit "against any person who proposes to construct or constructs any new or modified major emitting facility without a [PSD] permit." Id. 7604(a)(3). It is thus clear that each of Sierra Club's PSD claims first accrued upon commencement of the relevant modification at Big Stone. | A claim first accrues as soon as the right to institute and maintain a suit arises. | Does a claim or cause of action first accrue as soon as the right to institute and maintain a suit arises? | Action - Memo # 54 - C - LK.docx | ROSS-003298513 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12147 | Konecny v. United States, 388 F.2d 59 | 13+61 | The issue decided by the District Court and now being reviewed by us is when did Konecny's right of action first accrue? This Circuit has held that "generally, a cause of action is deemed to have accrued when facts exist which enable one party to maintain an action against another". Great American Ins. Co. v. Louis Lesser Enterprises, Inc.,353 F.2d 997, 1001 (8 Cir. 1965). "A cause of action accrues at the time when an action thereon can be commenced." Pettibone v. Cook County, Minn., 120 F.2d 850, 854 (8 Cir. 1941). This is in accord with the general rule expressed in 54 C.J.S. Limitations of Actions 109, that a cause of action accrues as soon as the right to institute and maintain a suit arises. | A cause of action accrues as soon as the right to institute and maintain a suit arises. | Does a claim or cause of action first accrue as soon as the right to institute and maintain a suit arises? | 005852.docx | LEGALEASE-00123285-LEGALEASE-00123286 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12148 | Monsanto Co. v. Miller, 455 N.E.2d 392 | 241+43 | Both Ind.Code 33-1-1.5-5 and Ind.Code 34-1-2-1 are accrual statutes; therefore, the date Millers' cause of action became ripe will determine which statute applies here. Both statutes begin to run when a complete cause of action has accrued or when a person becomes liable to an action. Babson Bros. Co. v. Tipstar, (1983) Ind.App., 446 N.E.2d 11. A cause of action accrues when an injury, wrongfully inflicted, causes damage. Scates v. State, (1978) 178 Ind.App. 624, 383 N.E.2d 491. It is not necessary that the extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. Shideler, supra. Failure to discover a right to bring suit does not operate to suspend the statute of limitations. Fidelity and Casualty Company of New York v. Jasper Furniture Company, (1917) 186 Ind. 566, 117 N.E. 258; French v. Hickman Moving & Storage, (1980) Ind.App., 400 N.E.2d 1384. Likewise, no new cause of action will accrue when consequential damages arise from a prior injury and damage too slight to be noticed when inflicted. City of North Vernon v. Voegler, (1885) 103 Ind. 314, 2 N.E. 821; Schmidt v. Merchants Despatch Transp. Co., (1936) 270 N.Y. 287, 200 N.E. 824. | Cause of action accrues when injury, wrongfully inflicted, causes damage; it is not necessary that extent of damage be known or even ascertainable, but only that some ascertainable damage has occurred. | Should the full extent of the damage be known for an action to accrue? | Action- Memo # 73 - C - LK.docx | ROSS-003308870-ROSS-003308871 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12149 | United States v. Kemp, 500 F.3d 257 | 372+1021 | Holck and Umbrell arrive at their conclusion that this requirement was elided by the instructions only by reading certain sections of the jury charge out of context, which "is not the way we review jury instructions, because a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." United States v. Park, 421 U.S. 658, 674, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). Read fairly, the instructions proffered by the District Court repeatedly emphasized the critical quid pro quo, explaining that "[t]o establish such bribery the government must prove beyond a reasonable doubt that there was a quid pro quo, .. that the benefit was offered in exchange for the official act." (App. at 9642.) The Court continued, "where there is a stream of benefits given by a person to favor a public official, .. it need not be shown that any specific benefit was given in exchange for a specific official act. If you find beyond a reasonable doubt that a person gave an official a stream of benefits in implicit exchange for one or more official acts, you may conclude that a bribery has occurred." (App. at 9643.) Finally, the Court explained, "[t]o find the giver of a benefit guilty, you must find that the giver had a specific intent to give .. something of value in exchange for an official act, that is, that the accused had the specific intent to engage in such a quid pro quo exchange." (App. at 9643"44.) This instruction correctly described the law of bribery, and left no danger that the jury would convict upon merely finding that Holck and Umbrell provided benefits to Kemp in a general attempt to curry favor or build goodwill. | District Court did not misstate the law when instructing jury on the bribery theory of honest services wire fraud; Court repeatedly emphasized the quid pro quo element, explained that it was not necessary to show that any specific benefit was given in exchange for any specific official act, and explained that specific intent to engage in a quid pro quo exchange was required. 18 U.S.C.A. S 1346. | Is it required to show that any specific benefit was given in exchange for a specific official act under the stream of benefits theory of bribery? | 011029.docx | LEGALEASE-00123240-LEGALEASE-00123242 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 12150 | A-1 Cigarette Vending v. United States, 49 Fed. Cl. 345 | 148+2.1 | The mere assertion of jurisdiction by an agency and the issuing of proposed regulations cannot effect a taking. See United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 126"27, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) (citing Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 293"97, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)) (the mere assertion of regulatory jurisdiction does not constitute a regulatory taking). Such proposed regulations merely provide notice of an agency's intended plans and "[m]ere candor by public officials about their plans has never been held to constitute a taking. Even "a threat of condemnation is not a taking * * *." " NBH Land, 217 Ct.Cl. at 44, 576 F.2d at 319 (quoting Hempstead Warehouse Corp. v. United States, 120 Ct.Cl. 291, 306, 98 F.Supp. 572, 573 (1951)).15 See also Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 15, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984). Similarly, the publication of final regulations, which have an effective date subsequent to publication cannot be a taking. The regulations may be repealed or modified, stayed or invalidated, or superceded by congressional act prior to actual implementation. Only a Government regulatory act that actually restricts property may effectuate a taking. See MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 348"51, 106 S.Ct. 2561, 91 L.Ed.2d 285, reh'g denied, 478 U.S. 1035, 107 S.Ct. 22, 92 L.Ed.2d 773 (1986) (requiring final agency application of regulatory restrictions before a taking will have occurred). | The mere assertion of jurisdiction by an agency and the issuing of proposed regulations cannot effect a regulatory taking. U.S.C.A. Const.Amend. 5. | Can the mere assertion of jurisdiction by an agency and the issuing of proposed regulations effect a taking? | Eminent Domain - Memo 217 - GP.docx | ROSS-003285223-ROSS-003285224 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 12151 | Cobb v. United States, 191 F.2d 604 | 221+139 | Prior to World War II, the law of Okinawa was Japanese law, administered and promulgated by the Japanese sovereign. Regardless of invasion, occupation, or cession, that law continues in force until it is changed. The parties have failed to show any change and it must be presumed that the original Japanese law is still in effect. | Regardless of invasion, occupation or cession, the law of a particular area continues in force until it is changed. | "Does the law of a particular area continue in force regardless of invasion, occupation, or cession until it is changed?" | 019910.docx | LEGALEASE-00123247-LEGALEASE-00123249 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 12152 | Theye Y Ajuria v. Pan Am. Life Ins. Co., 154 So. 2d 450 | 221+134 | It must be remembered that plaintiff is a Cuban National. It is a well-established principle of law, recognized by all appellate Court decisions, that a recognized Sovereign Nation can make laws binding upon its nationals within its bounds Chief Justice Marshall, in The Antelope, 10 Wheat. 66, 6 L.Ed. 268, said: 'No principle of general law is more universally acknowledged than the perfect equality of Nations. Russia and Geneva have equal rights. It results from this equality that no one can rightfully impose a rule on another. Each legislates for itself, but its legislation can operate on itself alone.' | Recognized sovereign nation can make laws binding upon its nationals within its bounds. | Can a recognized sovereign nation make laws binding upon its nationals within its bounds? | International Law - Memo # 149 - C - CAR.docx | ROSS-003311409 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12153 | Republic of Liberia v. Bickford, 787 F. Supp. 397 | 221+142 | It is well established that "who is the sovereign, de jure, or de facto, of a territory is not a judicial, but a political question, the determination of which by the legislative and executive departments of any government conclusively binds" the courts. Jones v. United States, 137 U.S. 202, 212, 11 S.Ct. 80, 83, 34 L.Ed. 691 (1890). Furthermore, a basic principle of international law is that a change in a government's leadership works no change in the national sovereignty or its rights. The Sapphire, 78 U.S. [11 Wall.] 164, 168, 20 L.Ed. 127 (1871). | Basic principle of international law is that change in government's leadership works no change in national sovereignty or its rights. | Does a change in a government's leadership work a change in the national sovereignty or its right? | International Law - Memo # 15 - C - LK.docx | ROSS-003311375-ROSS-003311377 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 12154 | Ricaud v. Am. Metal Co., 246 U.S. 304 | 221+359 | The answer to this question must be in the affirmative, for the reasons given and upon the authorities cited in the opinion recently announced in cases Nos. 268 and 269, Oetjen v. Central Leather Company. The fact that the title to the property in controversy may have been in an American citizen, who was not in or a resident of Mexico at the time it was seized for military purposes by the legitimate government of Mexico, does not affect the rule of law that the act within its own boundaries of one sovereign state cannot become the subject of re-examination and modification in the courts of another. Such action when shown to have been taken, becomes, as we have said, a rule of decision for the courts of this country. Whatever rights such an American citizen may have can be asserted only through the courts of Mexico or through the political departments of our government. The first and third questions will be answered in the affirmative and the second in the negative.And it is so ordered. | Action of Mexican military commander representing the Carranza government in seizing and selling bullion for military purposes held not subject to re-examination and modification in the American courts, though title was in an American citizen, who was not in or a resident of Mexico at the time. | Can an act within the boundaries of one sovereign state become the subject of re-examination and modification in the courts of another state? | 019978.docx | LEGALEASE-00123171-LEGALEASE-00123172 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 12155 | United States v. Sum of $70,990,605, 4 F. Supp. 3d 189 | 221+387 | Similarly, the party invoking the act of state doctrine bears the burden to prove its applicability. Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 971 F.Supp.2d 49, 62 (D.D.C.2013) ("[T]he party raising the defense bears the burden to affirmatively show that an act of state has occurred and "that no bar to the doctrine is applicable under the factual circumstances." " (quoting Ramirez de Arellano, 745 F.2d at 1534)). Additionally, "[a]s a substantive rather than a jurisdictional defense, the Act of State doctrine is more appropriately raised in a motion for summary judgment than in a motion to dismiss." Daventree Ltd. v. Republic of Azerbaijan, 349 F.Supp.2d 736, 755 (S.D.N.Y.2004). | Party invoking the act of state doctrine bears the burden to prove its applicability. | Does the party invoking the act of state doctrine bear the burden to prove its applicability? | International Law - Memo # 180 - C - PHS.docx | ROSS-003314033-ROSS-003314034 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12156 | Republic of Iraq v. ABB AG, 768 F.3d 145 | 221+134 | The legal relationship between the sovereign Republic of Iraq, the Hussein Regime, and the Iraqi people frames this litigation. That relationship rests on time-tested principles:" The change in governments"from the Hussein Regime; to the Coalition Provisional Authority that governed subsequent to the fall of Saddam Hussein; to the contemporary Republic"did not create an entirely new state. Rather, those changes altered the leadership and government of a continuously existing state. Therefore, the Republic of Iraq is the same sovereign entity as the one controlled by the Hussein Regime. (Iraq's Mem. in Opposition to Motion to Dismiss ("Iraq's Opp.") at 9; see Defs.' Mem. in Support of Motion to Dismiss ("Defs.' Mem.") at 12 (same).)." "[T]he rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it." Guar. Trust Co. v. United States, 304 U.S. 126, 137 [58 S.Ct. 785, 82 L.Ed. 1224] (1938). That is, Hussein, the Hussein Regime, and the Republic of Iraq are not one and the same; they are different governments over time that represent the same sovereign state. (Iraq's Opp. 9; Defs.' Mem. 12"13.)" Notwithstanding the distinction between a state and its government, a government may bind the sovereign it represents. See, e.g., The Sapphire, 78 U.S. (11 Wall) 164, 168 [20 L.Ed. 127] (1870); Lehigh Valley R.R. Co. v. Russia, 21 F.2d 396, 401 (2d Cir.1927). | Rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it; however, notwithstanding the distinction between a state and its government, a government may bind the sovereign it represents. | Are the rights of a sovereign vested in the state or any particular government which may represent it? | International Law - Memo # 20 - C - LK.docx | ROSS-003330179-ROSS-003330180 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12157 | Nat'l Coal. Gov't of Union of Burma v. Unocal, 176 F.R.D. 329 | 221+342 | Whether resolution of the pending suit turns on SLORC's official actions is a more complex question. Clearly Unocal is correct that the acts of SLORC officials are at issue in this litigation. As Unocal's liability is premised on the acts of its alleged joint venturer or implied partner, plaintiffs can only assert claims against Unocal on the basis of official actions for which SLORC could conceivably be liable were it not protected by the FSIA. The fact that a foreign sovereign has disregarded its own laws does not establish that its acts were private in nature. United States v. Merit, 962 F.2d 917, 921 (9th Cir.1992). | Fact that foreign sovereign has disregarded its own laws does not establish that its acts were private in nature, for purposes of determining applicability of act of state doctrine. | Does the fact that a foreign sovereign has disregarded its own laws establish that its acts were private in nature? | International Law - Memo # 228 - C - ES.docx | ROSS-003324869-ROSS-003324870 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 12158 | Snyder v. Motorists Mut. Ins. Co., 2 Ohio App. 2d 19 | 221+138 | From early times, it has been recognized that the sovereignty of nations bordering the seas does not stop at the shoreline, but that for some distance it extends over and under the ocean. Grotius declared, in "The Law of War and Peace," Book II, Chapter 3, Sections 13-14, that territorial rights extended over as much of the sea as could be defended from the shore. | Sovereignty of nations bordering seas does not stop at shoreline but extends over and under the ocean for some distance. | Does the sovereignty of nations bordering seas stop at shoreline or does it extend over and under the ocean for some distance? | 020115.docx | LEGALEASE-00123144-LEGALEASE-00123146 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 12159 | In re Kandu, 315 B.R. 123 | 221+136 | As a general matter, the laws of one nation do not have force or effect beyond its borders. Hilton v. Guyot, 159 U.S. 113, 163, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). The extent to which the legislative, executive, or judicial acts of one nation will be recognized and enforced within another nation, depends on what has been termed the "comity of nations." Hilton, 159 U.S. at 163, 16 S.Ct. at 144. | As a general matter, the laws of one nation do not have force or effect beyond its borders. | Do laws of one nation as a general matter have force or effect beyond its borders? | International Law - Memo # 4 - C - LK.docx | ROSS-003286081-ROSS-003286082 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12160 | Hennefeld v. Twp. of Montclair, 22 N.J. Tax 166 | 221+321 | In urging this court to recognize their same-sex marriage in Canada, the Plaintiffs cite Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895) arguing that "comity of nations" is an obligation that depends on considerations of international duty and convenience, and a preference for comity exists when the laws of the foreign nation are consistent with those of the sovereign. Id. at 163, 16 S.Ct. 139. However, "[a]s a general matter, the laws of one nation do not have force or effect beyond its borders." In re Kandu, 315 B.R. 123, 133 (Bankr.W.D.Wash.2004), citing Hilton v. Guyot, supra, 159 U.S. at 163, 16 S.Ct. 139. Furthermore, "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience Comity is voluntary. [Id., citing Hilton v. Guyot, supra, 159 U.S. at 163"65, 16 S.Ct. 139.] | As a general matter, the laws of one nation do not have force or effect beyond its borders. | Do laws of one nation as a general matter have force or effect beyond its borders? | 020300.docx | LEGALEASE-00123659-LEGALEASE-00123660 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12161 | Phillips v. Powers Discount Furniture Center, 686 So.2d 349 | 289+426(1) | Alabama has adopted the Uniform Partnership Act, codified at Ala.Code 1975, "" 10"8"1 through "103. Under that Act, a partnership is defined as an "association of two or more persons to carry on as co-owners a business for profit." " 10"8"2(7), Ala.Code 1975. A critical factor in determining whether a partnership relationship exists is the existence of a legally binding obligation to share in the losses of the business. Adderhold v. Adderhold, 426 So.2d 457 (Ala.Civ.App.1983). Furthermore, the receipt of profits from a business is prima facie evidence that the recipient is a partner. Adderhold. A partnership is not subject to federal income tax. However, it is required to file a Form 1065 with the Internal Revenue Service for purposes of reporting income. See I.R.C. " 701 (1994). | Critical factor in determining whether partnership relationship exists is existence of legally binding obligation to share in losses of business. | What is the critical factor in determining the existence of a partnership? | Partnership - Memo 172 - BP.docx | ROSS-003295161-ROSS-003295162 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12162 | Dixon v. Sol Loeb Co., 31 Ga.App. 165 | 289+961 | "The dissolution of a partnership by the retiring of an ostensible partner must be made known to creditors and to the world. The word "creditors," as thus employed in the statute (Civil Code [of 1895] " 2634), is not limited to persons who were creditors at the time of the dissolution. A person who had previously sold goods and given credit to the firm during its continuance was within its meaning. Actual notice must be given to creditors." Bush v. McCarty Co., 127 Ga. 308 (1, 2, and 3), 56 S. E. 430, 9 Ann. Cas. 240. | The word "creditors," as used in Civ.Code 1895, S 2634, declaring that the dissolution of a partnership by the retiring of an ostensible partner must be made known to the creditors and to the world, is not limited to persons who were creditors at the time of the dissolution, but a person who had previously sold goods and given credit to the firm during its continuance was within its meaning. | Is it necessary to declare the dissolution of a partnership by the retiring of an ostensible partner to the creditor and to the world? | 021900.docx | LEGALEASE-00123179-LEGALEASE-00123180 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 12163 | Peoples v. Fred's Stores of Tennessee, 38 So. 3d 1209 | 307A+3 | A motion in limine is an evidentiary matter in which the trial court is afforded great discretion. Randall v. Concordia Nursing Home, 07"101 (La.App. 3 Cir. 8/22/07), 965 So.2d 559, writ denied, 07"2153 (La.1/7/08), 973 So.2d 726. See also Heller v. Nobel Ins. Group, 00"261 (La.2/2/00), 753 So.2d 841. | A motion in limine is an evidentiary matter in which the trial court is afforded great discretion. | Is a motion in limine an evidentiary matter in which the trial court is afforded great discretion? | 024052.docx | LEGALEASE-00123007-LEGALEASE-00123008 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 12164 | Anderson v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. Louisiana State Univ. Health Sci. Ctr., 943 So. 2d 1198 | 307A+3 | The trial court has great discretion when ruling on evidentiary matters, such as motions in limine. Heller v. Nobel Insurance Group, 00-261 (La.2/2/00), 753 So.2d 841; Scott v. Dauterive Hosp. Corp., 02-1364 (La.App. 3 Cir. 4/23/03), 851 So.2d 1152, 1164, writ denied, 03-2005 (La.10/31/03), 857 So.2d 487. Considering the record before us, we find that the trial court did not abuse its discretion by granting defendant's motion in limine, and this assignment of error is without merit. | The trial court has great discretion when ruling on evidentiary matters, such as motions in limine. | "Does the trial court have great discretion when ruling on evidentiary matters, such as motions in limine?" | 024167.docx | LEGALEASE-00123231-LEGALEASE-00123232 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 12165 | Blanks v. Shaw, 171 Cal. App. 4th 336 | 307A+3 | "In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. " "The usual purpose of motions in limine is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order in limine excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters during trial. [Citation.] "The advantage of such motions is to avoid the obviously futile attempt to "unring the bell" in the event a motion to strike is granted in the proceedings before the jury." [Citation.]" ' [Citation.] What in limine motions are not designed to do is to replace the dispositive motions prescribed by the Code of Civil Procedure." (Amtower v. Photon Dynamics, Inc. (2008) 158 Cal.App.4th 1582, 1593, 71 Cal.Rptr.3d 361.)Although trial courts may exercise their inherent powers to permit non-traditional uses of motions in limine (id. at p. 1595, 71 Cal.Rptr.3d 361), when used in such fashion they become substitutes for other motions, such as summary judgment motions, thereby circumventing "procedural protections provided by the statutory motions or by trial on the merits; they risk blindsiding the nonmoving party; and, in some cases, they could infringe a litigant's right to a jury trial. (Cal. Const., art. I, " 16.)" (Amtower v. Photon Dynamics, Inc., supra, at p. 1594, 71 Cal.Rptr.3d 361.) | What in limine motions are not designed to do is to replace the dispositive motions prescribed by the Code of Civil Procedure. | Are limine motions designed to replace the dispositive motions prescribed by the Code of Civil Procedure? | 028797.docx | LEGALEASE-00122978-LEGALEASE-00122979 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12166 | Rhodes v. Blair, 919 S.W.2d 561 | 307A+3 | Additionally, Plaintiffs' attempted use of the motion in limine was to obtain a judgment prior to trial. "In limine" is defined as "in or at the beginning," and such a motion is designed to accomplish, at the beginning of litigation, some purpose which may be known only by reference to the context thereof. State v. Riggs, 586 S.W.2d 447, 449 (Mo.App.S.D.1979). It is traditionally used, however, as a form of a motion to suppress designated testimony or evidence. See Robbins v. Jewish Hosp., 663 S.W.2d 341, 348 (Mo.App.E.D.1983). | Motion in limine is traditionally used as form of motion to suppress designated testimony or evidence. | Is a motion in limine traditionally used as form of motion to suppress designated testimony or evidence? | Pretrial Procedure - Memo # 529 - C - RY.docx | LEGALEASE-00013831-LEGALEASE-00013832 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12167 | Alberswerth v. Alberswerth, 184 S.W.3d 81 | 307A+3 | The Motion to Strike Expert Witness Opinion and Testimony and the Motion in Limine were similar. Both the Motion to Strike Expert Witness Opinion and Testimony and the Motion in Limine sought to prevent Dr. Mays from rendering an expert opinion or testifying. Both motions also cited the same reasons for the request"namely, that Dr. Mays was not timely disclosed as an expert witness. In essence, the motions were identical, with different labels. "In limine" is defined as "in or at the beginning" and a motion in limine is traditionally used as a way of suppressing testimony or evidence at the beginning of litigation. Rhodes v. Blair, 919 S.W.2d 561, 563 (Mo.App. S.D.1996). When objecting at trial to the admission of the medical records, Ms. Alberswerth objected because the issue of the admissibility of the medical records "was previously addressed and covered in the Motion in Limine that was argued in this case." She, too, referred to the Motion to Strike Expert Witness Opinion and Testimony as a motion in limine. The Motion to Strike Expert Witness Opinion and Testimony was also a motion in limine. | "In limine" is defined as in or at the beginning and a motion in limine is traditionally used as a way of suppressing testimony or evidence at the beginning of litigation. | Is a motion in limine traditionally used as form of motion to suppress designated testimony or evidence? | 032304.docx | LEGALEASE-00122842-LEGALEASE-00122843 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12168 | State v. French, 1995-Ohio 32 | 307A+3 | A "motion in limine " is defined as "[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury." Black's Law Dictionary, supra, at 1013. The purpose of a motion in limine "is to avoid injection into [the] trial of matters which are irrelevant, inadmissible and prejudicial[,] and granting of [the] motion is not a ruling on evidence and, where properly drawn, granting of [the] motion cannot be error." Id. at 1013"1014. See State v. Maurer (1984), 15 Ohio St.3d 239, 259, 15 OBR 379, 396, 473 N.E.2d 768, 787. | Purpose of motion in limine is to avoid injection into the trial of matters which are irrelevant, inadmissible, and prejudicial. | Is a motion in limine designed to avoid injection into trial of potentially prejudicial matter which is not relevant and is inadmissible? | 032469.docx | LEGALEASE-00122709-LEGALEASE-00122710 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12169 | Hancock v. Shook, 100 S.W.3d 786 | 307A+3 | The court's ruling on a motion in limine is interlocutory and subject to change during the course of the trial. State v. Cole, 71 S.W.3d 163, 175 (Mo. banc 2002). A motion in limine, by itself, preserves nothing for appeal. Id. "The proponent of the evidence must attempt to present the excluded evidence at trial ...." Id. If the evidence remains excluded, the proponent must then make an offer of proof. Id.Mr. Hancock did not attempt to present the excluded evidence at trial or make an offer of proof; thus, he did not preserve the issue for appeal. Point five is denied. | The court's ruling on a motion in limine is interlocutory and subject to change during the course of the trial. | Is the court's ruling on a motion in limine interlocutory and subject to change during the course of the trial? | Pretrial Procedure - Memo # 564 - C - SU.docx | ROSS-003302755-ROSS-003302756 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12170 | Compton v. Ubilluz, 353 Ill. App. 3d 863 | 307A+3 | A motion in limine permits a party to obtain an order excluding inadmissible evidence and prohibiting comment concerning such evidence during closing argument. The moving party will thereby be protected from any prejudicial impact from the comment and the making of objections in front of the jury. However, a court is disadvantaged in ruling on a motion in limine because it is considered in a vacuum, before the presentation of the full evidence at trial that may justify admission or require exclusion. Trial judges should attempt to enter narrow in limine orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. An unclear order in limine is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion in limine before trial. Cunningham v. Millers General Insurance Co., 227 Ill.App.3d 201, 205, 169 Ill.Dec. 200, 591 N.E.2d 80 (1992). It is well settled that both the motion in limine and the resulting order should be in writing to prevent confusion and misunderstanding during trial. Stennis v. Rekkas, 233 Ill.App.3d 813, 825, 175 Ill.Dec. 45, 599 N.E.2d 1059 (1992); Cunningham, 227 Ill.App.3d at 205, 169 Ill.Dec. 200, 591 N.E.2d 80. | To prevent confusion and misunderstanding during trial, both the motion in limine and the resulting order should be in writing. | "To prevent confusion and misunderstanding during trial, should both the motion in limine and the resulting order be in writing?" | 034826.docx | LEGALEASE-00122701-LEGALEASE-00122702 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12171 | Cunningham v. Millers Gen. Ins. Co., 227 Ill. App. 3d 201 | 307A+3 | Orders in limine are potentially dangerous, but such orders are interlocutory, and remain subject to reconsideration by the court throughout the trial. (Romanek-Golub & Co. v. Anvan Hotel Corp. (1988), 168 Ill.App.3d 1031, 1040, 119 Ill.Dec. 482, 488, 522 N.E.2d 1341, 1347; Ely v. National Super Markets, Inc. (1986), 149 Ill.App.3d 752, 760, 102Ill.Dec. 498, 504, 500 N.E.2d 120, 126.) A court should make whatever correction or interpretation of an in limine order is necessary during the trial. (Crawford County State Bank v. Grady (1987), 161 Ill.App.3d 332, 341, 112 Ill.Dec. 869, 875, 514 N.E.2d 532, 538.) Where the evidence could be prejudicial, an order granting a motion in limine may be safer than an order denying it; the evidence will then be kept out until it is clear it should be admitted. Sometimes it may be appropriate not to allow comment on questionable evidence during opening statements. Still, a court should carefully analyze a motion in limine when the motion is first presented. Changed rulings destroy the desired certainty and clarity of an in limine order. It is a mistake for a court to continually shift its ruling as different evidence is presented, and never reach a firm decision. (Reidelberger, 83 Ill.2d at 551-52, 48 Ill.Dec. at 241, 416 N.E.2d at 272.) Once a motion in limine is granted, the movant must be vigilant and object when evidence is presented which may violate the order. The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap which results in a new trial if the court in retrospect determines the rule was violated. Reidelberger, 83 Ill.2d at 553, 48 Ill.Dec. at 241, 416 N.E.2d at 272. | Court should make whatever correction or interpretation of an in limine order is necessary during the trial. | Should a court make whatever correction or interpretation of an in limine order as necessary during trial? | 041161.docx | LEGALEASE-00124065-LEGALEASE-00124066 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12172 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | "Motions in limine serve fundamentally different purposes than motions for summary judgment. They are not subject to the same procedural safeguards. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069"70 (3d Cir.1990)."Thus, a motion in limine should not be used as a substitute for a dispositive motion such as a motion for summary judgment. Courts that have addressed attempts to use a motion in limine in such a manner, either explicitly or implicitly, have found such use to be in error. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d at 1069"70; Cannon v. William Chevrolet/Geo, Inc., 341 Ill.App.3d 674, 276 Ill.Dec. 593, 794 N.E.2d 843, 849 (2003); Lin v. Gatehouse Constr. Co., 84 Ohio App.3d 96, 616 N.E.2d 519, 524"25 (1992); BHG, Inc. v. F.A.F., Inc., 784 A.2d 884, 886 (R.I.2001). As several courts have noted, a motion in limine should not be used to "choke off" a party's entire claim or defense. McCracken v. Edward D. Jones & Co., 445 N.W.2d 375, 379 (Iowa Ct.App.1989); Cass Bank & Trust Co. v. Mestman, 888 S.W.2d 400, 404 (Mo.Ct.App.1994). | Motions in limine serve fundamentally different purposes than motions for summary judgment; they are not subject to the same procedural safeguards. | Do motions in limine serve different purposes than motions for summary judgment? | 041167.docx | LEGALEASE-00124077-LEGALEASE-00124078 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12173 | Sher v. Deane H. Tank, 269 Ill. App. 3d 312 | 30+3209 | Whether a motion in limine should be granted is subject to the trial judge's discretion (Madison Associates v. Bass (1987), 158 Ill.App.3d 526, 110 Ill.Dec. 513, 511 N.E.2d 690) and a reviewing court will not reverse a trial court's order allowing or excluding evidence in limine absent a clear showing of abuse of that discretion. (Cochran v. Great Atlantic and Pacific Tea Co. (1990), 203 Ill.App.3d 935, 148 Ill.Dec. 923, 561 N.E.2d 229.) We believe that the trial judge did not abuse his discretion in granting the motion in limine. | Reviewing court will not reverse trial court's order allowing or excluding evidence in limine absent clear showing of abuse of that discretion. | Is the question of whether a motion in limine should be granted subject to the trial court's discretion? | 041181.docx | LEGALEASE-00124138-LEGALEASE-00124139 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 12174 | City of Mission Hills v. Sexton, 284 Kan. 414 | 307A+3 | The specific basis for the plea for new trial relates to alleged violations of orders in limine entered after consideration of the Sextons' five in limine motions. Courts employ " "a two-part test to evaluate alleged violations of a motion in limine: (1) Was there a violation of the order in limine and (2) if the order in limine is violated, did the testimony substantially prejudice the defendant? The burden is on the [party alleging a violation of the order in limine] to show substantial prejudice." [Citations omitted.]" State v. Gleason, 277 Kan. 624, 640, 88 P.3d 218 (2004). | Courts employ a two-part test to evaluate alleged violations of a motion in limine: (1) whether there was a violation of the order in limine and (2) if the order in limine was violated, whether the testimony substantially prejudiced the defendant. | "When a party alleges that an order in limine has been violated, what must the trial court determine?" | 041183.docx | LEGALEASE-00124147-LEGALEASE-00124148 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 12175 | Sacramento Mun. Util. Dist. v. F.E.R.C., 616 F.3d 520 | 317A+111 | Imperial petitions for review, arguing the Commission's decision exceeded its statutory jurisdiction."FERC's interpretation of its own statutory jurisdiction is entitled to Chevron deference." Detroit Edison Co. v. FERC, 334 F.3d 48, 53 (D.C.Cir.2003). Governmental entities such as Imperial "are exempt from the [Federal Power Act] and therefore exempt from FERC's jurisdiction when they provide transmission services." Transmission Agency of N. Cal., 495 F.3d at 667 n. 4; see 16 U.S.C. " 824(f). According to Imperial, by approving California ISO's assessment of marginal loss charges to transactions involving Imperial's use of transmission ownership rights, FERC unlawfully "dictat[ed] rates, terms or conditions of service ... to a non-jurisdictional governmental entity's use of its own transmission facilities" and effectively "compel[led] such entity to transfer ... control over its transmission facilities to [California ISO]." Pet'rs' Br. on Tariff Charge Issues at 41"42. | Federal Energy Regulatory Commission's (FERC) interpretation of its own statutory jurisdiction is entitled to Chevron deference. | Is the Federal Energy Regulatory Commissions (FERC) interpretation of its own statutory jurisdiction entitled to Chevron deference? | 042244.docx | LEGALEASE-00123411-LEGALEASE-00123412 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12176 | Ben-Tom Supply Co. v. V. N. Green & Co., 338 F. Supp. 59 | 366+7(1) | Under such circumstances, and in view of the plain language in the Contract Bonds, this Court will not imply any condition which would require plaintiff to seek recovery from the funds held by the State prior to asserting its claims against Great American. It should further be noted that a surety paying claims of materialmen and laborers is subrogated to their rights with respect to the contractor. Capon Valley Bank v. State Road Commission, 111 W.Va. 491, 163 S.E. 44 (1932). Thus, Great American would be subrogated to any rights which the materialmen have against Green Company and Central Asphalt and, if the funds held by the State are ultimately found to be owed to the contractors, Great American could assert its subrogation claim against such funds. | A surety paying claims of materialmen and laborers is subrogated to their rights with respect to the contractor. | Is a surety paying claims of materialmen and laborers subrogated to their rights with respect to the contractor? | Subrogation - Memo # 947 - C - MLS.docx | ROSS-003295084-ROSS-003295086 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12177 | People v. Duffy, 79 N.Y.2d 611 | 368+3 | At the outset, we note that the conduct with which defendant was charged clearly fell within the scope of section 125.15(1)'s proscription against recklessly causing the death of another person. As the People aptly observe, a person who, knowing that another is contemplating immediate suicide, deliberately prods that person to go forward and furnishes the means of bringing about death may certainly be said to have "consciously disregard[ed] a substantial and unjustifiable risk" that his actions would result in the death of that person (see, Penal Law " 15.05[3]; " 125.15[1] ). Accordingly, unless the Appellate Division correctly concluded that, despite the apparent applicability of section 125.15(1), it was nevertheless specifically contemplated by the Legislature that second degree manslaughter prosecutions involving suicide-related homicides would be maintainable solely pursuant to section 125.15(3), defendant's prosecution for reckless manslaughter cannot be said to have been improper. | Defendant may be convicted of second-degree manslaughter for engaging in reckless conduct which results in another person's committing suicide. McKinney's Penal Law SS 15.05, subd. 3, 125.15, 125.15, subds. 1, 1(b), 3, 125.15 comment. | If a person intentionally causes or aids another person to commit suicide does it amount to second-degree manslaughter? | 044471.docx | LEGALEASE-00122619-LEGALEASE-00122620 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 12178 | Sanitary & Imp. Dist. No. 57 of Douglas Cty. v. City of Elkhorn, 248 Neb. 486 | 13+61 | A cause of action accrues when the aggrieved party has the right to institute and maintain suit. Central States Resources v. First Nat. Bank, 243 Neb. 538, 501 N.W.2d 271 (1993). A cause of action consists of the fact or facts which give one a right to judicial relief against another. Hoiengs v. County of Adams, 245 Neb. 877, 516 N.W.2d 223 (1994); St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co., 244 Neb. 408, 507 N.W.2d 275 (1993). A theory of recovery is not itself a cause of action. St. Paul Fire & Marine Ins. Co., supra. | Cause of action accrues when aggrieved party has right to institute and maintain suit. | Does a cause of action accrue when aggrieved party has the right to institute and maintain a suit? | Action - Memo # 215 - C - NO.docx | ROSS-003312733-ROSS-003312734 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12179 | In re Certified Questions from U.S. Court of Appeals for the Sixth Circuit, 416 Mich. 558 | 361+1559 | The general rule against retrospective application has been applied in cases where a new statute abolishes an existing cause of action. It is clear that once a cause of action accrues,"i.e., all the facts become operative and are known"it becomes a "vested right". See Connelly v. Paul Ruddy's Equipment Repair & Service Co., 388 Mich. 146, 150"152, 200 N.W.2d 70 (1972); Devlin v. Morse, 254 Mich. 113, 115, 235 N.W. 812 (1931). A new statute which abolishes an existing cause of action brings the statute within the general proscription of rule three. | Once a cause of action accrues, that is, all facts become operative and are known, it becomes a "vested right," for purposes of determining whether new statute may be applied retrospectively with respect thereto. | Does a cause of action become a vested right when it accrues? | 005391.docx | LEGALEASE-00124762-LEGALEASE-00124763 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 12180 | United States v. Lovknit Mfg. Co., 189 F.2d 454 | 13+61 | The next question is as to when the causes of action sued on accrued. In common language that means, when did all the facts exist, whether known or not, which would authorize a suit. Actions for a fraud do not ordinarily accrue till the fraud is discovered or should with diligence have been discovered. And against a cause of action which is fraudulently concealed from the plaintiff time does not run during the concealment; but neither is this case. Records were kept by the contractor of employment. There is no evidence that anything was concealed by them. All that was known when the suit was filed was actually known in substance when the detailed charge was formulated on January 8, 1947. The hearing was held on May 21 and 22, about a week after the Portal to Portal Act took effect, and there was no difficulty in proving all the facts, the evidence being in small compass. Everything that was proved had happened by the end of 1945, when the last contract was completed. Under ordinary rules the causes of action had accrued and could have been sued on at any time after the default occurred. Certainly, each contract was subject to full inspection, and to suit if in default, at the time it was completed. When the Portal to Portal Act was passed on May 14, 1947, there were allowed still 120 days to sue (absent a bar by State law). Instead the administrative hearing was continued but no action was brought till December 28, 1949, two years and seven months and two weeks after its passage. | A cause of action will "accrue" when all the facts exist, whether known or not, which will authorize a suit. | "Does a cause of action ""accrue"" when all the facts exist, whether known or not, and will authorize a suit?" | 006351.docx | LEGALEASE-00124371-LEGALEASE-00124372 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12181 | In re Gullone, 301 B.R. 683 | 13+61 | Chartwells contends that because attorneys' fees continued to accrue after the debtor filed his bankruptcy petition, the post-petition fees incurred by Chartwells and ultimately imposed on the debtor should be excluded from the pre-petition claim. This argument must be rejected. The issue of whether an obligation must be designated as a pre-petition or post-petition claim does not depend on when the damages from the harm accrued. Rather, the issue is when the cause of action arose. The cause of action arises when a cognizable "interest" arises, i.e., when "a legal relationship relevant to the purported interest from which the interest may flow" is established. Schweitzer v. Consolidated Rail Corp., 758 F.2d at 943; In re Radio"Keith"Orpheum Corp., 106 F.2d 22, 26"27 (2d Cir.1939), cert. denied, 308 U.S. 622, 60 S.Ct. 377, 84 L.Ed. 519 (1940) ("RKO").2 In Schweitzer, for example, the legal relationship between the parties which pertained to the cause of action asserted arose upon the enactment of a statute imposing liability upon the former debtor. And in RKO, discussed by the Third Circuit in Schweitzer and Penn Central, the establishment of the pre-petition legal relationship between the debtor and the claimant in the form of guarantor-guarantee was the point at which the contingent claim arose. In RKO, the post-petition default of the primary obligor did not reinstate the debtor's pre-petition guarantor obligation, which was discharged in the debtor's confirmed reorganization plan. Similarly, here, the legal relationship between the debtor and Chartwells, giving rise to Chartwells' claim for attorneys' fees, arose by operation of the New Jersey statute, N.J.S.A. 34:19"6, upon the filing of the debtor's CEPA complaint. The fact that the extent of the claim was neither liquidated nor fixed at the time the bankruptcy petition was filed does not alter the conclusion that the claim arose prepetition. 11 U.S.C. " 101(5)(A). | Cause of action arises when cognizable "interest" arises, i.e., when legal relationship relevant to purported interest from which interest may flow is established. | "Does a cause of action arise when a cognizable ""interest"" arises?" | Action - Memo #186 - C - PHS.docx | ROSS-003312404-ROSS-003312405 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12182 | Lambeth v. Lewis, 114 Ga. App. 191 | 162+221(4.1) | Being a mere order to pay which has been revoked by the death of the drawer, a check in the hands of the original payee does not constitute a debt under Code s 113-1508 for which the decedent's estate would be liable so as to authorize a suit on the check itself; but the payee "is remitted to any underlying claim he may have against the decedent." 11 Am.Jur.2d, Bills and Notes, s 590, p. 661; In re Bakri's Estate, Sur., 109 N.Y.S.2d 654. The check may in a proper action be used as evidence in support of the payee's claim of indebtedness against the decedent but not as evidence of the indebtedness itself (See Grimes v. Elliott, 40 Ga.App. 739, 151 S.E. 536); and where the check was merely a gift or otherwise without consideration, the payee would have no valid claim against the estate. Felder v. Felder, 71 Ga.App. 860, 32 S.E.2d 550. | Check is revoked by drawer's death but may in proper action be used as evidence in support of payee's claim of indebtedness against decedent but not as evidence of indebtedness itself. Code, SS 109A-3-409, 109A-4-405. | Can a check be used as evidence in support of the payees claim of indebtedness? | Bills and Notes - Memo 38 - DB VP.docx | ROSS-003284881 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 12183 | Galbraith v. Planning Dep't of City of Anderson, 627 N.E.2d 850 | 148+277 | The fact is that an action for inverse condemnation is premature until such time as the landowner can establish that there are not available avenues by which the landowner can put his property to an economically beneficial or productive use. The zoning ordinance in question requires that the Galbraiths obtain both a permit from Natural Resources and a special exception from the Board of Zoning Appeals. This means that an essential element of Galbraiths' claim for inverse condemnation is their ability to show that Natural Resources has madea final determination regarding their application for a permit which deprives them of all reasonable use of their property, or, if the final determination ofNatural Resources failed to have that effect, that a final determination which does have that effect has been made by the Board of Zoning Appeals. | Action for inverse condemnation is premature until such time as landowner can establish that there are not available avenues by which landowner can put his property to economically beneficial or productive use. | Until when is an inverse condemnation premature? | Eminent Domain - Memo 248 - GP.docx | ROSS-003286012-ROSS-003286013 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12184 | United States v. Noriega, 746 F. Supp. 1506 | 221+342 | In order for the act of state doctrine to apply, the defendant must establish that his activities are "acts of state," i.e., that they were taken on behalf of the state and not, as private acts, on behalf of the actor himself. Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 694, 96 S.Ct. 1854, 1861, 48 L.Ed.2d 301 (1976). "That the acts must be public acts of the sovereign has been repeatedly affirmed."Marcos I, 806 F.2d at 358. (emphasis in original). Though the distinction between the public and private acts of government officials may prove elusive, this difficulty has not prevented courts from scrutinizing the character of conduct in question. Id. at 359 (distinguishing deposed Philippine President Ferdinand Marcos' acts as head of state from his purely private acts); Dunhill, 425 U.S. at 695, 96 S.Ct. at 1862 (commercial activities are not acts of state); Sharon v. Time, Inc., 599 F.Supp. 538, 544"45 (S.D.N.Y.1984) (Defense Minister's alleged support of massacre was not the policy of Israeli government and therefore not an act of state); De Robert v. Gannett Co., 733 F.2d 701, 704 (9th Cir.1984) (act of statedoctrine does not apply to foreign ruler's private, unofficial acts), cert. denied, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985); Jimenez v. Aristeguieta, 311 F.2d 547, 557"58 (5th Cir.1962) (foreign dictator's financial crimes were for his own personal benefit and therefore were not publicacts sufficient to invoke act of state defense), cert. denied, 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963). | In order for act of state doctrine to apply, defendant must show that activities were taken on behalf of state and were not private acts taken on behalf of actor himself. | "In order for act of state doctrine to apply, must acts be public acts of a sovereign?" | 019837.docx | LEGALEASE-00124645-LEGALEASE-00124647 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12185 | Flatow v. Islamic Republic of Iran, 999 F. Supp. 1 | 221+342 | The Act of State Doctrine generally precludes review by United States courts of official acts by foreign states. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); Alfred Dunhill of London v. Republic of Cuba, 425 U.S. 682, 691 n. 7, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976), quoting Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897). The doctrine applies, however, only with respect to actions taken within the foreign state's own territory. Sabbatino, 376 U.S. at 423. Although the acts complained of may have occurred within the foreign state defendant's territory, such acts will not invoke the Act of State Doctrine. | Act of state doctrine applies only with respect to actions taken within foreign state's own territory; although acts complained of may have occurred within foreign state defendant's territory, such acts will not invoke act of state doctrine. | Does the Act of State doctrine apply only when the actions of the foreign state occur within that foreign state? | 020191.docx | LEGALEASE-00124305-LEGALEASE-00124307 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 12186 | S. Pac. R. Co. of Mexico v. Gonzalez, 48 Ariz. 260 | 221+324 | It is a general rule of international law that no law has any effect of its own force beyond the limits of the sovereignty from which its authority is derived. As was said by Chief Justice Marshall in the case of The Antelope, 10 Wheat. 66, 122, 6 L.Ed. 268: "No principle of general law is more universally acknowledged, than the perfect equality of nations. Russia and Geneva have equal rights. It results from this equality, that no one can rightfully impose a rule on another. Each legislates for itself, but its legislation can operate on itself alone.". | Under international law, no law has any effect of its own force beyond limits of sovereignty from which its authority is derived. | Under international law does law have any effect of its own force beyond limits of sovereignty from which its authority is derived? | International Law - Memo # 300 - C - NS.docx | ROSS-003324771-ROSS-003324772 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 12187 | Sampson v. Fed. Republic of Germany, 975 F. Supp. 1108 | 221+342 | The United States Supreme Court established the act of state doctrine in 1897 when it held that "[e]very sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of government of another done within its own territory." Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897). The act of state doctrine presumes that the official public acts of a foreign country are valid. W.S. Kirkpatrick & Co. v. Tectonics Corp., 493 U.S. 400, 409, 110 S.Ct. 701, 706"07, 107 L.Ed.2d 816 (1990); F. & H.R. Farman"Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co., 882 F.2d 281, 283 (7th Cir.1989), cert. denied, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 809 (1990); Wolf v. Federal Republic of Germany, No. 93 C 7499, 1995 WL 263471, 1995 U.S. Dist. LEXIS 5860, at (N.D.Ill. Apr. 27, 1995), aff'd, 95 F.3d 536 (7th Cir.1996), cert. denied, 520 U.S. 1106, 117 S.Ct. 1112, 137 L.Ed.2d 313 (1997). The doctrine, however, does not apply to the commercial activities of a sovereign State. Alfred Dunhill, of London Inc. v. Republic of Cuba, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976). Furthermore, the act of state doctrine is irrelevant if the court does not have subject matter jurisdiction. Siderman, 965 F.2d at 706. Therefore, if the FSIA precludes subject matter jurisdiction, the act of state doctrine does not create a cause of action. Id. | Act of state doctrine presumes that official public acts of a foreign country are valid. | Does the act of state doctrine presume that official public acts of a foreign country are valid? | International Law - Memo # 383 - C - NC.docx | ROSS-003301379-ROSS-003301381 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 12188 | United States v. Vetco Inc., 691 F.2d 1281 | 221+386 | We are not persuaded that Article 273 poses a great danger to the appellants. The party relying on foreign law has the burden of showing that such law bars production. Ohio v. Arthur Andersen & Co., 570 F.2d 1370, 1374 (10th Cir.), cert. denied, 439 U.S. 832, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978); First National City Bank of New York v. Internal Revenue Service, 271 F.2d 616, 619-20 (2d Cir. 1959), cert. denied, 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960). | Party relying on foreign law to excuse production of documents has burden of showing that such law bars production. 26 U.S.C.A. SS 6103(a), 7852(d). | Does a party relying on foreign law to excuse production of documents have the burden of showing that such law bars production? | 020425.docx | LEGALEASE-00124426-LEGALEASE-00124427 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12189 | Paraschos v. YBM Magnex Int'l, 130 F. Supp. 2d 642 | 221+162 | Many federal courts have dismissed cases solely on the basis of comity. See Fleeger v. Clarkson Co. Limited, 86 F.R.D. 388, 392 (N.D.Tex.1980) (citing Cornfeld v. Investors Overseas Services, Ltd., 471 F.Supp. 1255 (E.D.N.Y.1979), and pointing to cases cited therein at 1262). The rationale for dismissals based on comity is not based simply on a lack of familiarity with the particular foreign law, but rather is in deference to the foreign country's legal, judicial, legislative, and administrative system of handling disputes over which it has jurisdiction, in a spirit of international cooperation. Id. (citing Cornfeld, 471 F.Supp. at 1262). However, comity is not extended to foreign proceedings when doing so would be contrary to the public policy of the U.S. The deciding factor for this Court in maintaining jurisdiction of this action in its March 28, 2000 Opinion was plaintiffs' choice of law. That is, the Court chose to allow plaintiffs to maintain their action here because plaintiffs chose to bring their claims under the Exchange Act and have their claims adjudicated in a United States District Court. However, it now appears to this Court that the overwhelming evidence of Canada's interests in this action dictates that the Court defer to the Canadian legal system and dismiss the action on grounds of international comity. | Comity is not extended to foreign proceedings when doing so would be contrary to public policy of the United States. | Is comity extended to foreign proceedings when doing so would be contrary to public policy of the United States? | 020947.docx | LEGALEASE-00124480-LEGALEASE-00124481 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12190 | Spadafore v. Gardner, 330 F.3d 849 | 91+635 | The standard for proving a " 1983 conspiracy claim was set forth by this court in Hooks v. Hooks, 771 F.2d 935 (6th Cir.1985):A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.Id at 943"44. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under " 1983." Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir.1987). Furthermore, this court has acknowledged that because "[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, ... circumstantial evidence may provide adequate proof of conspiracy." Weberg v. Franks 229 F.3d 514, 528 (6th Cir.2000) (alteration in original). | Conspiracy claims must be pled with some degree of specificity and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under S 1983. 42 U.S.C.A. S 1983. | Should allegations of conspiracy be specific and nonconclusory? | 022980.docx | LEGALEASE-00125384-LEGALEASE-00125385 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12191 | Ulusal v. Lentz Eng'g, L.C., 491 S.W.3d 910 | 302+34(4) | In his remaining three issues, Ulusal argues the pleadings and the evidence are insufficient to support the judgment against him. A default judgment must be supported by a petition that states a cause of action. See Fairdale Ltd. v. Sellers, 651 S.W.2d 725, 725 (Tex.1982). The purpose of a pleading is to provide the defendant with fair notice of the cause of action and of the character of evidence that will be raised at trial, as well as to define the issues to be heard. Norman v. Giraldo, 01"13"00334"CV, 2014 WL 2538558, at *3 (Tex.App."Houston [1st Dist.] June 5, 2014, no pet.) (mem.op.). When determining whether a pleading properly includes an allegation, we must look at the pleading from the perspective of the person against whom the pleading is made. Wilson v. Bloys, 169 S.W.3d at 364, 369 (Tex.App."Austin 2005, pet. denied) (citing Erisman v. Thompson, 140 Tex. 361, 167 S.W.2d 731, 733 (1943)). A petition is sufficient if a cause of action reasonably may be inferred from what is stated in the petition, even if an element of the action is not specifically alleged. See Norman, 2014 WL 2538558, at *3. "Mere formalities, minor defects, and technical insufficiencies will not invalidate a default judgment where the petition states a cause of action and gives "fair notice" to the opposing party of the relief sought." Stoner v. Thompson, 578 S.W.2d 679, 683 (Tex.1979). | When determining whether a pleading properly includes an allegation, the court must look at the pleading from the perspective of the person against whom the pleading is made. | How do courts determine whether a pleading properly includes an allegation? | 022987.docx | LEGALEASE-00125398-LEGALEASE-00125399 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12192 | Roark v. Allen, 633 S.W.2d 804 | 302+48 | Dr. Matthews did not specially except to the Roarks' petition. When there are no special exceptions, a petition will be construed liberally in favor of the pleader. Stone v. Lawyers Title Insurance Corp., 554 S.W.2d 183, 186 (Tex.1977). Also, "(t)he court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged. Every fact will be supplied that can reasonably be inferred from what is specifically stated." Gulf, Colorado & Santa Fe Railway Co. v. Bliss, 368 S.W.2d 594, 599 (Tex.1963). A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense. Murray v. O & A Express, Inc., 630 S.W.2d 633 (Tex.1982); Castleberry v. Goolsby Building Corporation, 611 S.W.2d 665, 666 (Tex.1981); Stone v. Lawyers Title Insurance Corp., supra; Tex.R.Civ.Pro. 45 and 47. | A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. Vernon's Ann.Rules Civ.Proc., Rules 45, 47. | "If a petition gives fair and adequate notice of facts, is it sufficient?" | 022995.docx | LEGALEASE-00125423-LEGALEASE-00125424 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12193 | Hardy v. Cordero, 399 Ill. App. 3d 1126 | 307A+3 | "Once a motion in limine is granted, the movant must be vigilant and object when evidence is presented which may violate the order. The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap which results in a new trial if the court in retrospect determines the rule was violated." Cunningham v. Millers General Insurance Co., 227 Ill.App.3d 201, 206, 169 Ill.Dec. 200, 591 N.E.2d 80, 83 (1992), citing Reidelberger v. Highland Body Shop, Inc., 83 Ill.2d 545, 48 Ill.Dec. 237, 416 N.E.2d 268 (1981). "A motion to strike is required to preserve errors in the admission of evidence. [A] party opposing evidence waives any objection unless a motion to strike is made as soon [as] the objectionable nature of evidence becomes apparent." Netto v. Goldenberg, 266 Ill.App.3d 174, 178, 203 Ill.Dec. 798, 640 N.E.2d 948, 952 (1994). Plaintiff failed to object to, and never moved to strike, either nurse Rasche's or nurse Cordero's references to plaintiff's wishes to continue the IV. Plaintiff has forfeited the issue. | The purpose of an in limine order is to exclude inadmissible evidence, not to create a trap which results in a new trial if the court in retrospect determines the rule was violated. | What is the purpose of a motion in limine? | Pretrial Procedure - Memo # 413 - C - SSB.docx | ROSS-003311228-ROSS-003311229 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12194 | Dove v. Dir., State Employees Workers' Comp. Div., 857 S.W.2d 577 | 413+1946 | Where a trial court's order on a motion in limine is violated, we review the violations to see if they are curable by instructions to the jury to disregard them. See Leatherwood v. Holland, 375 S.W.2d 517, 521 (Tex.Civ.App."Fort Worth 1964, writ ref'd n.r.e.); Montgomery v. Vinzant, 297 S.W.2d 350, 356 (Tex.Civ.App."Fort Worth 1956, no writ). Here, the trial court instructed the jury after each violation to disregard the question. Nevertheless, because of the number of improper questions and their prejudicial content, which the jury heard in each case, we are unable to hold that the violations did not probably cause the rendition of an improper judgment. Tex.R.App.P. 81(b)(1). | Cumulative effect of violations by Director of State Employees Workers' Compensation Division of trial court's order granting claimant's motion in limine caused rendition of improper verdict and called for reversal of judgment denying total and permanent disability benefits for injury allegedly incurred in course and scope of claimant's employment with Department of Corrections, despite instructions to disregard given to jury, in view of number of improper questions and their prejudicial content, which jury heard in each case. Rules App.Proc., Rule 81(b)(1). | Does an appellate court review a violation of an order granting a motion in limine to see if the violation is curable by an instruction to the jury to disregard it? | Pretrial Procedure - Memo # 414 - C - SSB.docx | ROSS-003284619-ROSS-003284620 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 12195 | Weidner v. Sanchez, 14 S.W.3d 353 | 30+4582 | In their second point of error, appellants contend the trial court erred by overruling its motion for mistrial because Sanchez deliberately violated the trial court's ruling on a pretrial motion in limine. A motion in limine is a procedural device that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make. Fort Worth Hotel Ltd. Partnership v. Enserch Corp., 977 S.W.2d 746, 757 (Tex.App."Fort Worth 1998, no pet). The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. Id. The cumulative effect of repeated violations of a trial court's order in limine may be grounds for reversal. See National Union Fire Ins. Co. of Pittsburgh v. Kwiatkowski, 915 S.W.2d 662, 664 (Tex.App."Houston [14th Dist.] 1996, no writ). Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. See Dove v. Director, State Employees Workers' Compensation Div., 857 S.W.2d 577 (Tex.App."Houston [1st Dist.] 1993, writ denied). Violations of an order on a motion in limine are incurable if the instructions to the jury would not eliminate the danger of prejudice. Id. | The cumulative effect of repeated violations of a trial court's order in limine may be grounds for reversal. | Can repeated violations of a court order granting a motion in limine be grounds for reversal? | Pretrial Procedure - Memo # 568 - C - SSB.docx | ROSS-003324879-ROSS-003324880 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12196 | Weidner v. Sanchez, 14 S.W.3d 353 | 388+133.6(2) | In their second point of error, appellants contend the trial court erred by overruling its motion for mistrial because Sanchez deliberately violated the trial court's ruling on a pretrial motion in limine. A motion in limine is a procedural device that permits a party to identify, before trial, certain evidentiary rulings that the court may be asked to make. Fort Worth Hotel Ltd. Partnership v. Enserch Corp., 977 S.W.2d 746, 757 (Tex.App."Fort Worth 1998, no pet). The purpose of a motion in limine is to prevent the other party from asking prejudicial questions and introducing prejudicial evidence in front of the jury without first asking the court's permission. Id. The cumulative effect of repeated violations of a trial court's order in limine may be grounds for reversal. See National Union Fire Ins. Co. of Pittsburgh v. Kwiatkowski, 915 S.W.2d 662, 664 (Tex.App."Houston [14th Dist.] 1996, no writ). Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. See Dove v. Director, State Employees Workers' Compensation Div., 857 S.W.2d 577 (Tex.App."Houston [1st Dist.] 1993, writ denied). Violations of an order on a motion in limine are incurable if the instructions to the jury would not eliminate the danger of prejudice. Id. | Where a trial court's order on a motion in limine is violated, an appellate court reviews the violations to see if they are curable by an instruction to the jury to disregard them. | When are violations of a court order granting a motion in limine incurable? | Pretrial Procedure - Memo # 570 - C - SSB.docx | ROSS-003297300-ROSS-003297301 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12197 | City of Wichita v. Denton, 296 Kan. 244 | 307A+3 | In this case, the district court's grant of partial summary judgment led directly to its grant of the City's subsequent motion in limine, which excluded the testimony of Clear Channel's appraisal experts due to the court's conclusion that the factors on which the experts based their testimony"namely, the billboard structure and the advertising income"were not compensable in the eminent domain action. The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible evidence, prejudicial statements, and improper questions. State v. Abu"Fakher, 274 Kan. 584, 594, 56 P.3d 166 (2002). An order in limine should be granted if the trial court finds that two factors are present: (1) The questioned material or evidence would be inadmissible at a trial under the rules of evidence; and (2) the mere offer during trial concerning the material will likely prejudice the jury. State v. Horn, 278 Kan. 24, 37, 91 P.3d 517 (2004). | The purpose of an order in limine is to assure a fair and impartial trial to all parties by excluding from trial inadmissible evidence, prejudicial statements, and improper questions. | Is a motion in limine used to provide an impartial trial? | Pretrial Procedure - Memo # 614 - C - SSB.docx | ROSS-003299708-ROSS-003299709 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12198 | Brazzell v. State, 481 S.W.2d 130 | 267+66 | The appellant is here attempting to rely upon a motion In limine to preserve error to the admission of testimony which he contends was not admissible. Generally, a motion In limine will not preserve error to the admission of inadmissible evidence. The violation of a motion In limine may entitle a party to relief, but any remedies available with regard to such a violation are with the trial court. If its order has been violated, the trial court may apply the sanctions of contempt or take other appropriate action. But for error to be preserved on appeal with regard to the admission of inadmissible evidence, objection thereto should be made at the time the evidence is offered. | Violation of a motion in limine may entitle a party to relief, but any remedies available with regard to such a violation are with the trial court which may apply sanction of contempt or take other appropriate action. | Does the violation of a motion in limine entitle a party to relief? | Pretrial Procedure - Memo # 433 - C - SSB.docx | ROSS-003296266-ROSS-003296267 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 12199 | Theriot v. State Dep't of Wildlife & Fisheries, 661 So. 2d. 986 | 307A+1 | The theory inherent in pretrial procedure is to avoid surprise and to allow orderly disposition of cases. The trial court is vested with much discretion in determining when a pretrial order should be modified. However, that discretion is necessarily controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pretrial rulings or agreements and structured the preparation and presentation of their case accordingly. Day v. South Line Equipment Company, 551 So.2d 774, 779"780 (La.App. 1st Cir.), writ denied, 553 So.2d 474 (La.1989). | Theory inherent in pretrial procedure is to avoid surprise and to allow orderly disposition of cases. | Is allowing orderly disposition of cases inherent to the theory of pretrial procedure? | 031295.docx | LEGALEASE-00125335-LEGALEASE-00125336 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12200 | Fergus v. Songer, 150 Cal. App. 4th 552 | 30+3959 | Where, as here, the granting of a motion in limine disposes of one or more causes of action, it is the functional equivalent of the granting of a nonsuit as to those causes of action. In such circumstances, "we must view the evidence most favorably to appellants, resolving all presumptions, inferences and doubts in their favor, and uphold the judgment for respondent[ ] [on the applicable causes of action] only if it was required as a matter of law. [Citations.]" (Edwards v. Centex Real Estate Corp., supra, 53 Cal.App.4th at p. 28, 61 Cal.Rptr.2d 518.). | Where the granting of a motion in limine disposes of one or more causes of action, it is the functional equivalent of the granting of a nonsuit as to those causes of action, and in such circumstances, the appellate court must view the evidence most favorably to appellants, resolving all presumptions, inferences, and doubts in their favor, and must uphold the judgment for appellee on the applicable causes of action only if it was required as a matter of law. | Is the granting of a motion in limine the functional equivalent of the granting of a nonsuit as a cause of action? | Pretrial Procedure - Memo # 854 - C - TJ.docx | ROSS-003284631-ROSS-003284632 | SA, Sub | 0.17 | 0 | 0 | 1 | 1 | |
| 12201 | Headley v. Williams, 162 N.C. App. 300 | 307A+3 | In this case, the trial court found that the probative value as to the credibility of defendant from the evidence that defendant was convicted of DWI in an unrelated matter subsequent to the accident was substantially outweighed by its prejudicial nature. We conclude the trial court did not abuse its discretion. We note, however, that a trial court's ruling on a motion in limine is not final, but rather interlocutory and subject to modification. Nunnery v. Baucom, 135 N.C.App. 556, 566, 521 S.E.2d 479, 486 (1999). | A trial court's ruling on a motion in limine is not final, but rather interlocutory and subject to modification. | Is a trial court's ruling on a motion in limine interlocutory and subject to modification? | Pretrial Procedure - Memo # 909 - C - SK.docx | ROSS-003284518-ROSS-003284520 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 12202 | Sun Valley Fin. Servs. of Phoenix v. Guzman, 212 Ariz. 495 | 366+1 | Equitable subrogation is the "substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Mosher v. Conway, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935); see also Lamb Excavation, 208 Ariz. at 480, 6, 95 P.3d at 544. In a practical sense, equitable subrogation works like an assignment. Cf. State Farm Fire and Cas. Co. v. Knapp, 107 Ariz. 184, 185, 484 P.2d 180, 181 (1971). It is, as the name reflects, an equitable doctrine designed to prevent injustice"the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it." Mosher, 45 Ariz. at 468, 46 P.2d at 112. Application of the doctrine depends upon the particular facts and circumstances of each case. Id. Subrogation can only be granted when an equitable result will be reached. Id. | Application of the doctrine of equitable subrogation depends upon the particular facts and circumstances of each case, and subrogation can only be granted when an equitable result will be reached. | Does the application of the doctrine of equitable subrogation depend upon the particular facts and circumstances of each case? | Subrogation - Memo # 554 - C - TJ.docx | ROSS-003281874-ROSS-003281875 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 12203 | Leatherby Ins. Co. v. City of Tustin, 76 Cal. App. 3d 678 | 366+7(1) | The readily identifiable theory on which Leatherby was entitled to recover the contract retention is that of subrogation. When a surety pays the obligation of its principal, it is subrogated to all the rights the payees may have against others. (United States Fid. & Guar. Co. v. Oak Grove Union School Dist., 205 Cal.App.2d 226, 231, 22 Cal.Rptr. 907.) In this instance, Leatherby was entitled to the withheld funds by reason of the principle of subrogation noted, this as successor to the stop notice claimants and whatever rights to the fund they had. Accordingly, if the stop notice claimants were entitled to the entire amount of the contract retention fund, then so was Leatherby unless Tustin had a special defense or offset which it could properly assert against the stop notice claimants or against Leatherby on some direct theory. It has never been argued that the stop notice claimants would not have been entitled to recover their respective shares of the contract retention fund or that Tustin had any offsets to such rights to recover. However, Tustin has argued that it does have a defense against Leatherby on a direct theory. | When a surety pays the obligation of its principal, it is subrogated to all the rights the payees may have against others. | "When a surety pays the obligation of its principal, is it subrogated to all the rights the payees may have against others?" | Subrogation - Memo 919 - RK.docx | ROSS-003300540-ROSS-003300542 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12204 | Carrols Equities Corp. v. Villnave, 57 A.D.2d 1044 | 366+7(1) | Finally, we find no error in the court's grant ofjudgment over in favor of INA on its cross-claim against Villnave. Such judgment, however, cannot be based upon principles of indemnity, since Villnave's signature does not appear on the bond and the record does not provide sufficient basis for a finding of implied consent. Nevertheless, where a surety becomes such not with the consent of the principal but at the behest of the obligee, it is entitled by operation of law to be subrogated to the rights of the obligee against the principal (General Ry. Signal Co. v. Title Guaranty & Surety Co., 203 N.Y. 407, 96 N.E. 734; 57 N.Y.Jur. Suretyship & Guarantee s 305). Since INA, however, can only be subrogated to the rights of Carrols after it has satisfied the judgment in Carrols' favor, the judgment should be modified to provide that payment of the judgment on INA's cross-claim is conditioned upon INA satisfying the judgment against it and Villnave. | Where surety became such, not with the consent of principal, but at behest of obligee, surety was entitled to be subrogated to rights of obligee against principal after surety would satisfy judgment in obligee's favor. | Is a surety entitled to be subrogated to the rights of an obligee against a principal after the surety would satisfy judgment in the obligee's favor? | Subrogation - Memo 925 - RK.docx | ROSS-003285454-ROSS-003285455 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12205 | In re Saenz, 516 B.R. 423 | 366+29 | As currently pled, IBC cannot sustain its subrogation claim. The Texas Supreme Court summarizes the doctrine of equitable subrogation as follows:The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing. Texas courts interpret this doctrine liberally. Although the doctrine most often arises in the insurance context, equitable subrogation applies in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter.Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd., 259 S.W.3d 140, 142 (Tex.2008) (internal citations omitted). | Under Texas law, the doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing. | Do courts liberally interpret the doctrine of equitable subrogation? | Subrogation - Memo 982 - C- CAT.docx | ROSS-003324805-ROSS-003324806 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 12206 | A. Copeland Enterprises v. Slidell Mem'l Hosp., 657 So. 2d 1292 | 366+27 | In essence, subrogation is a contract between the creditor and the person who renders performance. It is subject to the general rules that govern the proof of obligations. See Planiol & Ripert Traite Elemenntaire de Droit Civil, p. 1. no. 480, at 274 (11th ed. La.St.L.Inst. trans.1959). Subrogation may be either conventional or legal. La.C.C. art. 1825. It may result from either the agreement of the obligor or the obligee or both with a third person, or directly from the operation of law. Thus, the intention of subrogation is to protect such persons who perform certain acts. Litvinoff, The Law of Obligations, 11.8 (1992). | Subrogation may result from either agreement of obligor or obligee or both with third person or directly from operation of law. LSA-C.C. art. 1825. | Will subrogation result from the agreement of the obligor or the obligee? | Subrogation - Memo 989 - C- CAT.docx | ROSS-003287253 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 12207 | In re Coats, 849 A.2d 254 | 79+1 | The office of the clerk of the orphans' court is not sui juris but is dependent on county and legislative provisions to implement its function. This statutory mandate provides as follows:42 Pa.C.S.A. " 2774. Office of the clerk of the orphans' court division(a) General rule."There shall be an office of the clerk of the orphans' court division in each county of this Commonwealth, which shall be supervised by the clerk of the orphans' court division of the county who shall, either personally, by deputy, or by other duly authorized employees or agents of the office, exercise the powers, and perform the duties by law vested in and imposed upon the clerk of the orphans' court division or the office of the clerk of the orphans' court division.(b) Facilities and services."The office of the clerk of the orphans' court division shall be provided with all necessary accommodations, goods and services pursuant to section 3722 (relating to general facilities and services furnished by county).Id. (emphasis supplied) | Office of the clerk of the orphans' court is not sui juris but is dependent on county and legislative provisions to implement its function. 42 Pa.C.S.A. S 2774. | Is the office of the clerk of the orphans' court sui juris? | 013373.docx | LEGALEASE-00125714-LEGALEASE-00125715 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12208 | State v. DeBarros, 58 Conn. App. 673 | 37+152(1) | The defendant's claim also satisfies the third prong of Golding because it is clear from the record that a constitutional violation exists. In addition to murder, which requires a specific intent, the defendant was charged with attempt to commit murder and assault in the first degree with a firearm. "[T]he specific intent to kill is an essential element of the crime of murder [and attempt to commit murder]." (Internal quotation marks omitted.) Id. Additionally, the specific intent to cause physical injury is an essential element of the crime of assault in the first degree. "To act intentionally, the defendant must have had the conscious objective to cause the death"; id.; and, with respect to assault, physical injury to the victim. | To act intentionally, as is required for conviction for first-degree assault, defendant must have had conscious objective to cause physical injury to victim. C.G.S.A. S 53a-59(a). | Does the defendant have conscious objective to cause the death of the victim to consider his act was intentional? | 019363.docx | LEGALEASE-00125654-LEGALEASE-00125655 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 12209 | City of Evansville v. S. Indiana Gas & Elec. Co., 167 Ind. App. 472 | 317A+111 | Under traditional regulatory concepts, utility company shareholders and bondholders, not the consumers, furnish the capital necessary for the operation of the business. See, e.g., Railroad Comm'n v. Cumberland Tel. & Tel. Co. (1909), 212 U.S. 414, 424, 29 S.Ct. 357, 53 L.Ed. 577; Lindheimer v. Illinois Bell Tel. Co. (1934), 292 U.S. 151, 169, 54 S.Ct. 658, 78 L.Ed. 1182. The consumer pays a fair return on the utility's capital and in addition pays the costs of operation including taxes, but it is well-established that the company's investors, not its consumers, must contribute the utility's capital. See, e.g., City of Alton v. Commerce Comm'n (1960), 19 Ill.2d 76, 165 N.E.2d 513; In re Pacific Gas & Elec. Co. (1961 Cal.Pub.Util.Comm'n), 38 P.U.R.3d 1; In re Public Serv. Co. (1960 Colo.Pub.Util.Comm'n), 34 P.U.R.3d 186; In re Washington Water Power Co. (1960 Idaho Pub.Util.Comm'n), 33 P.U.R.3d 88; In re Columbia Gas, Inc. (1959 Ky.Pub.Serv.Comm'n), 36 P.U.R.3d 401; In re Niagara Mohawk Power Corp. (1961 N.Y.Pub.Serv.Comm'n), 40 P.U.R.3d 401; In re Cincinnati Gas & Elec. Co. (1960 Ohio Pub.Util.Comm'n), 33 P.U.R.3d 1. | Under traditional regulatory concepts, the utility company shareholders and bondholders, not the consumers, furnish the capital necessary for the operation of the business. | Who furnishes the capital required for the operation of a public utility business? | 042328.docx | LEGALEASE-00125698-LEGALEASE-00125699 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12210 | Snap-on Bus. Sols. Inc. v. O'Neil & Assocs., 708 F. Supp. 2d 669 | 386+6 | As one Ohio court has noted, "[T]he interference has to amount to more than intermeddling." Dryden v. Cincinnati Bell Tel. Co., 135 Ohio App.3d 394, 734 N.E.2d 409, 416 (Ohio Ct.App.1999) (citing Restatement (Second) of Torts " 218 cmt. e (1965)). Moreover, even an electronic trespass to chattels claim must be based on some link to a physical object. YouTube, Inc., 504 F.Supp.2d at 268 (finding that computers hosting website would be sufficient physical object); see also CompuServe, 962 F.Supp. at 1021 (same as to computer system). | Even an electronic trespass to chattels claim must be based on some link to a physical object. | Does an electronic trespass to chattels claim have to be based on some link to a physical object? | Trespass - Memo 150 - RK.docx | ROSS-003287100-ROSS-003287101 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12211 | US Fax Law Ctr. v. iHire, 374 F. Supp. 2d 924 | 386+6 | Finally, to establish a cause of action in trespass to a chattel in Colorado, there must be an intentional interference with the possession or physical condition of a chattel in possession of another. See Mountain States Tel. & Tel. Co. v. Horn Tower Constr. Co., 147 Colo. 166, 363 P.2d 175, 177 (1961) (referencing Restatement (Second) of Torts " 218: liability can only be established if a defendant impaired the condition, quality or value of a chattel, or deprived the possessor of a chattel of its use for a substantial time, or caused harm to a thing in which the possessor had a legally protected interest). Plaintiff has failed to "set forth factual allegations, either direct or inferential, respecting each material element [of trespass] necessary to sustain recovery...." Gooley, 851 F.2d at 515. Therefore, I dismiss the trespass claim under Rule 12(b)(6). | To establish cause of action in trespass to chattel under Colorado law, there must be intentional interference with possession or physical condition of chattel in possession of another. | How is a cause of action for trespass to chattel established? | 047199.docx | LEGALEASE-00125802-LEGALEASE-00125803 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12212 | McCoy v. Emrich, 72 Wash. 2d 850 | 13+61 | It is the law in this jurisdiction that a cause of action for removal of lateral support arises when the damage occurs and not when the excavation is made. Smith v. City of Seattle, 18 Wash. 484, 51 P. 1057 (1898). The case was cited with approval as recently as 1949, in the case of Theurer v. Condon, 34 Wash.2d 448, 209 P.2d 311 (1949). It is cited in 1 Am.Jur.2d Adjoining Landowners s 69 (1962) at 740 (note 2), in support of that encyclopedia's statement that this is the general rule. We are also in accord with the rule stated in IV Restatement of Torts s 817, comment l at 193:Liability is for subsidence. The withdrawal of the naturally necessary lateral support (Comments C to G) subjects the actor to liability (s 5, vol. I) but does not make him liable in an action for damages unless, and until, a subsidence occurs. The statute of limitations does not begin to run until a subsidence occurs, and it runs then only for that subsidence. The actor continues subject to liability for a further distinct subsidence although it flows from the same act. | A cause of action for removal of lateral support arises when the damage occurs, not when the excavation is made. | Does a cause of action for removal of lateral support arise when the damage occurs? | Action - Memo # 140 - C - MS.docx | ROSS-003286433-ROSS-003286434 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12213 | Hart v. Guardian Tr. Co., 75 N.E.2d 570 | 13+61 | Perhaps the most satisfactory statement in Ohio in respect of the time of accrual of a cause of action, is found in Woolsey v. Trimble, 6 Cir., 18 F.2d 908, 911, wherein it is declared: A cause of action accrues when there is a demand capable of present enforcement, a suable party in existence against whom the demand may be then enforced, and a party in being who has a present right to enforce it.' | A cause of action "accrues" when there is a demand capable of present enforcement, a suing party in existence against whom the demand may be then enforced, and a party in being who has a present right to enforce it. | "Does a cause of action ""accrue"" when there is a demand capable of present enforcement?" | Action- memo # - PC333.docx | ROSS-003285875-ROSS-003285876 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 12214 | Rogers v. United States, 124 Fed. Cl. 757 | 34+2 | It is well established that the military departments, like other federal agencies, are bound by their own regulations. Wagner v. United States, 365 F.3d 1358, 1361 (Fed.Cir.2004) (citing Service v. Dulles, 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957)); Carmichael v. United States, 298 F.3d 1367, 1373"74 (Fed.Cir.2002); Voge v. United States, 844 F.2d 776, 779 (Fed.Cir.1988). As the Federal Circuit has observed, "[e]ven when Congress has given the military discretion in conducting its affairs, the military is bound to follow its own procedural regulations should it choose to promulgate them." Fisher v. United States, 402 F.3d 1167, 1177 (Fed.Cir.2005). And "[a] court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion." Id. (citation omitted); see also Adkins v. United States, 68 F.3d 1317, 1323 (Fed.Cir.1995) (observing that the Federal Circuit "has consistently recognized that, although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy" (emphasis in original)); Dodson, 988 F.2d at 1204 (observing that, although the Secretary was not required to promulgate regulations establishing criteria for determining to whom the Army would grant re-enlistment, "having done so he is bound to follow them") | Military departments, like other federal agencies, are bound by their own regulations; even when Congress has given the military discretion in conducting its affairs, the military is bound to follow its own procedural regulations should it choose to promulgate them. | Is the military bound to follow its own procedural regulations? | Armed Services - Memo 33 - RK.docx | LEGALEASE-00015850-LEGALEASE-00015851 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12215 | Indep. Guard Ass'n of Nevada, Local No. 1 v. O'Leary on Behalf of U.S. Dep't of Energy, 57 F.3d 766 | 15A+1227 | On March 10, 1992, IGAN filed a complaint seeking declaratory and injunctive relief, pending compliance with notice and comment procedures.2 The case came before the district court on cross-motions for summary judgment. The DOE invoked the "military function" exception to the APA's notice and comment provisions. This exception provides:(a) This section applies, according to the provisions thereof, except to the extent that there is involved"(1) a military or foreign affairs function of the United States;5 U.S.C. " 553(a)(1). Because the parties agreed on the material facts, the case turned on a legal question: the proper scope of this exception. | "Military function" exception to notice and comment provisions of the Administrative Procedure Act (APA) can be invoked only where activities being regulated directly involve a military function. 5 U.S.C.A. S 553(a)(1). | Are rules involving military or foreign affairs exempted from the notice and comment provisions of the Administrative Procedures Act? | 008880.docx | LEGALEASE-00126299-LEGALEASE-00126300 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 12216 | United States v. Alfisi, 308 F.3d 144 | 63+1(2) | The "corrupt" intent necessary to a bribery conviction is in the nature of a quid pro quo requirement; that is, there must be "a specific intent to give ... something of value in exchange for an official act." Sun-Diamond Growers, 526 U.S. at 404-05, 119 S.Ct. 1402 (emphasis in original). Putting it only slightly differently, bribery involves the giving of value to procure a specific official action from a public official. See United States v. Myers, 692 F.2d 823, 841 (2d Cir.1982). The element of a quid pro quo or a direct exchange is absent from the offense of paying an unlawful gratuity. To commit that offense, it is enough that the payment be a reward for a past official act or made in the hope of obtaining general good will in the payee's performance of official acts off in the future. See Sun-Diamond Growers, 526 U.S. at 405, 119 S.Ct. 1402; Biaggi, 909 F.2d at 684-85; Myers, 692 F.2d at 841. | Bribery involves the giving of value to procure a specific official action from a public official. 18 U.S.C.A. S 201(b)(1)(A). | Does bribery involve the giving of value to procure a specific official action from a public official? | 011050.docx | LEGALEASE-00126042-LEGALEASE-00126044 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12217 | United States v. Laden, 92 F. Supp. 2d 189 | 221+392 | It is well-established that Congress has the power to regulate conduct performed outside United States territory. See EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("Congress has the authority to enforce its laws beyond the territorial boundaries of the United States."). It is equally well-established, however, that courts are to presume that Congress has not exercised this power-i.e., that statutes apply only to acts performed within United States territory-unless Congress manifests an intent to reach acts performed outside United States territory. See Sale v. Haitian Ctrs. Council, Inc., 509 U.S. 155, 188, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993) ("Acts of Congress normally do not have extraterritorial application unless such an intent is clearly manifested."); Arabian Am. Oil Co., 499 US. at 248, 111 S.Ct. 1227 (quoting Foley Bros. v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575 93 L.Ed. 680 (1949)) ("It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.' This "clear manifestation" requirement does not require that extraterritorial coverage should be found only if the statute itself explicitly provides for extraterritorial application. Rather, courts should consider "all available evidence about the meaning" of the statute, e.g., its text, structure, and legislative history. Sale, 509 U.S. at 177, 113 S.Ct. 2549; See also Smith v. United States, 507 U.S. 197, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993) (examining text, structure, and legislative history). | Congress has the power to regulate conduct performed outside United States territory. | Does Congress have the power to regulate conduct performed outside United States territory? | International Law - Memo # 802 - C - RY.docx | ROSS-003299592-ROSS-003299593 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 12218 | United States v. Vasquez-Velasco, 15 F.3d 833 | 221+324 | 13 In general, international law recognizes several principles whereby the exercise of extraterritorial jurisdiction may be appropriate. These principles include the objective territorial principle, under which jurisdiction is asserted over acts performed outside the United States that produce detrimental effects within the United States, and the protective principle, under which jurisdiction is asserted over foreigners for an act committed outside the United States that may impinge on the territorial integrity, security, or political independence of the United States. See, e.g., Felix-Gutierrez, 940 F.2d at Chua Han Mow, 730 F.2d at 1311-12 (citations omitted); United States v. King, 552 F.2d 833, 851-52 (9th Cir.1976), cert. denied, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); Restatement 402. Nevertheless, an exercise of jurisdiction on one of these bases still violates international principles if it is "unreasonable". Restatement " 403 cmt. a (stating that "[t]he principle that an exercise of jurisdiction on one of the bases indicated ... is nonetheless unlawful if it is unreasonable ... has emerged as a principle of international law") | Exercise of extraterritorial jurisdiction on bases recognized by international law still violates international principles if it is unreasonable. Restatement (Third) of Foreign Relations Law of the United States S 403 comment. a. | Does exercise of jurisdiction violate international principles if it is unreasonable? | International Law Memo # C - 841- PC.docx | ROSS-003327087 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 12219 | Schaefer v. Kumar, 804 N.E.2d 184 | 307A+3 | Kumar argues the trial court properly granted summary judgment in his favor because "[a]ny evidence upon which [Schaefer] relies is suppressed by the Court's ruling granting [Kumar's] motion in limine." (Appellee's Br. at 19.) Schaefer responds that "since Schaeffer' [sic] challenge is to the Tax sale, this motion in limine is mute [sic] as it deals with the tax certificate." (Appellant's Reply Br. at 7.) However, this case did not involve a jury trial and therefore Kumar's motion in limine was improper. See Baldwin v. Inter City Contractors Serv. Inc., 156 Ind.App. 497, 297 N.E.2d 831, 834 (1973). Motions in limine are limited to jury trials and "have no place or use" in court trials. Id. The purpose of a motion in limine is to prevent the display of potentially prejudicial material to the jury until the trial court has the opportunity to rule on its admissibility. Palmer v. State, 640 N.E.2d 415, 419 (Ind.Ct.App.1994). We accordingly decline to hold the grant of the motion in limine had the effect of suppressing evidence before the court in this bench trial. | The purpose of a motion in limine is to prevent the display of potentially prejudicial material to the jury until the trial court has the opportunity to rule on its admissibility. | If a motion in limine is designed to prevent potential prejudice can it have the effect of suppressing evidence? | 037677.docx | LEGALEASE-00125993-LEGALEASE-00125994 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12220 | State ex rel. Utilities Comm'n v. Gen. Tel. Co. of Se., 281 N.C. 318 | 317A+114 | On the other hand, a public utility is under a present duty to anticipate, within reason, demands to be made upon it for service in the near future. Idaho Underground Water Users Association v. Idaho Power Co., 89 Idaho 147, 404 P.2d 859; Wisconsin Telephone Co. v. Public Service Commission, 232 Wis. 274, 343, 287 N.W. 122. Substantial latitude must be allowed the directors of the utility in making the determination as to what plant is presently required to meet the service demand of the immediate future, since construction to meet such demand is time consuming and piecemeal construction programs are wasteful and not in the best interests of either the ratepayers or the stockholders. State Public Utilities Commission ex rel. City of Springfield v. Springfield Gas & Electric Co., 291 Ill. 209, 234, 125 N.E. 891, 901; Latourneau v. Citizens' Utilities Co., 125 Vt. 38, 209 A.2d 307; State ex rel. Pacific Telephone & Telegraph Co. v. Department of Public Service, 19 Wash.2d 200, 142 P.2d 498; Wisconsin Telephone Co. v. Public Service Commission, supra; 73 C.J.S. Public Utilities s 18a. However, Commission action deleting excess plant from the rate base is not precluded by a showing that present acquisition or construction is in the best interests of the stockholders. The present ratepayers may not be required to pay excessive rates for service to provide a return on property which will not be needed in providing utility service within the reasonable future. | A public utility is under a present duty to anticipate, within reason, demands to be made on it for service in the near future; substantial latitude must be allowed the directors in making the determination as to what plant is presently required to meet the service demand of the immediate future. G.S. S 62-133. | Is a public utility obligated to anticipate future demands for its service? | Public Utilities - Memo 180 - AM.docx | ROSS-003300196-ROSS-003300198 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12221 | Miller v. CitiMortgage, 970 F. Supp. 2d 568 | 386+6 | To recover for trespass to personalty, Plaintiff must prove that Defendant, with or without the use of force, unlawfully injured or interfered with the possession Plaintiff's personal property. See Mountain States Tel. & Tel. Co. v. Vowell Const. Co., 161 Tex. 432, 436, 341 S.W.2d 148, 150 (1960). Plaintiff makes no allegations that Defendant injured or interfered with her possession of personal property. And she makes no real effort to defend this claim in her response. See Dkt. No. 28 at 23. | Under Texas law, to recover for trespass to personalty, plaintiff must prove that defendant, with or without the use of force, unlawfully injured or interfered with the possession plaintiff's personal property. | What constitutes a trespass to personalty? | 047215.docx | LEGALEASE-00126004-LEGALEASE-00126005 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 12222 | Wint v. Alabama Eye & Tissue Bank, 675 So. 2d 383 | 386+6 | Because "[t]he difference between trespass to chattels and conversion is immaterial when there is a "wrongful taking and carrying away of the property of another,"" there is no need to treat the trespass to chattels and conversion claims separately. Roberts and Cusimano, Alabama Tort Law Handbook, " 29.0, p. 598 (1990) (citing Roberson v. Harris, 45 Ala.App. 537, 233 So.2d 96 (1970)). In order to recover from Alabama Eye & Tissue Bank under either of her theories, Mrs. Wint must prove that someone from the eye bank took or carried away Leroy Wint's eyes. | There is no material difference between conversion and trespass to chattels when there is wrongful taking and carrying away of property of another; thus, there is no need to treat conversion and trespass to chattels claims separately. | Is there a difference between conversion and trespass to chattels? | Trespass - Memo 191 - RK.docx | ROSS-003314044 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 12223 | MacDonald v. Univ. of N. Carolina at Chapel Hill, 299 N.C. 457 | 13+61 | A cause of action does not accrue until a right which belongs to a person is invaded in some manner by another. Thurston Motor Lines v. General Motors Corp., 258 N.C. 323, 128 S.E.2d 413 (1962); Shearin v. Lloyd, 246 N.C. 363, 98 S.E.2d 508 (1957). A cause of action for a suit involving a breach of contract accrues as of the date of breach. See Reidsville v. Burton, 269 N.C. 206, 152 S.E.2d 147 (1967). Ordinarily, the time for performance must have expired, Kelly v. Oliver, 113 N.C. 442, 18 S.E. 698 (1893), but where an employee has been discharged by his employer, there is total breach for which only a single action lies. See 4 A. Corbin, Contracts s 958 (1951). | Cause of action does not accrue until right which belonged to person is invaded in some manner by another. | Does a cause of action accrue until right which belonged to a person is invaded in some manner by another? | 005468.docx | LEGALEASE-00126342-LEGALEASE-00126343 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 12224 | Beadle v. Bonham State Bank, 880 S.W.2d 160 | 13+61 | A cause of action accrues when facts come into existence which entitle one to institute and maintain a suit. General Motors Acceptance Corp. v. Howard, 487 S.W.2d 708, 710 (Tex.1972). Prospective or anticipated events, such as the future satisfaction of the mutual judgments at issue here, do not fall within this definition. The cause of action created by the mutual judgments accrued when the second judgment was entered in Dallas County. That is when the parties became both judgment debtors and judgment creditors and when the issue of a setoff of the parties' rights and liabilities under the two judgments arose. There is no probative evidence to support the trial court's decision that venue was proper in Fannin County. The trial court erred in denying the motion to change venue. | For venue purposes, cause of action accrues when facts come into existence which entitle one to institute and maintain suit. V.T.C.A., Civil Practice & Remedies Code S 15.001. | Can a cause of action accrue when facts exist which authorize one party to maintain an action against another? | 005473.docx | LEGALEASE-00126350-LEGALEASE-00126351 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 12225 | Giles v. Wilmott, 59 Fla. 271 | 13+61 | In ordinary actions commenced by summons, the plaintiff, in order to succeed, must show that his right of action was complete at the time the action was commenced. 1 Cyc. 744, 745; Titus v. Gunn, 69 N. J. Law, 410, 55 Atl. 735. In order to entitle a broker to recover from another broker on an agreement of the latter to divide with him the commission on the sale of certain property, the commission must have been actually received by the broker whom it is sought to charge with liability. 23 Am. & Eng. Ency. Law, p. 930. | In ordinary actions commenced by summons, plaintiff, to succeed, must show that his right of action was complete when the action was commenced. | "Should the plaintiff show that his right of action was complete when the action was commenced, in ordinary actions commenced by summons?" | Action - Memo # - C 321-TJ.docx | ROSS-003289834-ROSS-003289835 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 12226 | Boulder City v. Miles, 85 Nev. 46 | 13+61 | It is true that in most cases damages caused by the wrongful act of another occur contemporaneously with the wrongful act. But it is also true that no one has a claim against another without having incurred damages. And the reason for the rule is quite clear. Though an act may endanger the person or property of another, no actionable wrong is committed if the danger is averted. It is only the injury to a person or the damage to property arising from a wrongful or negligent act which constitutes an invasion of a personal right protected by law and, therefore, an actionable wrong. A cause of action accrues only when the forces wrongfully put in motion produce an injury. Otherwise, in certain cases, as in this case, a purported cause of action might be barred before liability arose. Adams v. Arkansas City, 188 Kan. 391, 362 P.2d 829 (1961); Durant v. Grange Silo Co., 12 A.D.2d 694, 207 N.Y.S.2d 691 (1960); City of Los Angeles v. McNeil, 160 Cal.App.2d Supp. 867, 326 P.2d 29 (1958); City of Amarillo v. Gray, 304 S.W.2d 742 (Tex.App.1957); Harper-Turner Oil Co. v. Bridge, 311 P.2d 947 (Okl.1957); Great Am. Indem. Co. v. Lapp Insulator Co., 282 App.Div. 545, 125 N.Y.S.2d 147 (1953); Schmidt v. Merchants Despatch Transp. Co., 270 N.Y. 287, 200 N.E. 824 (1936); Annot., 104 A.L.R. 450 (1936). | A cause of action accrues only when the forces wrongfully put in motion produce an injury. | Does a cause of action accrue only when the forces wrongfully put in motion produce an injury? | 005701.docx | LEGALEASE-00126458-LEGALEASE-00126459 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12227 | Royal Imperial Grp. v. Joseph Blumberg & Assocs., 240 Ill. App. 3d 360 | 13+61 | The crucial date for determining the applicability of a statute is not when the rights are asserted by filing a complaint, but rather when the cause of action accrues. (Zielnik Lodge v. Loyal Order of Moose (1988), 174 Ill.App.3d 409, 411, 123 Ill.Dec. 839, 841, 528 N.E.2d 384, 386.) The alleged wrongdoing in this case occurred during November or December 1989, prior to January 1, 1990, the effective date of the amendment. The amendment does not specify whether it is to be applied retroactively to a cause of action which arose before January 1, 1990. | Crucial date for determining applicability of statute is not when rights are asserted by filing complaint, but rather when cause of action accrues. | What date is crucial for determining applicability of statute? | 005703.docx | LEGALEASE-00126462-LEGALEASE-00126463 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 12228 | Hyde Const. Co. v. Koehring Co., 321 F. Supp. 1193 | 13+61 | More specifically, in 72 C.J.S. Process " 124 is the following passage relative to abuse of process: 'Since it need not be shown that the suit in which the process was abused has terminated, as discussed supra " 120b(2)(e), the cause of action for an abuse of process is complete as soon as the acts complained of are committed.' | Under Mississippi law, the cause of action for abuse of process is complete as soon as the acts complained of are committed. | Is the cause of action for an abuse of process complete as soon as the acts complained of are committed? | Action - Memo # 283 - C TJ.docx | ROSS-003312688-ROSS-003312689 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 12229 | Giles v. Wilmott, 59 Fla. 271 | 13+61 | In ordinary actions commenced by summons, the plaintiff, in order to succeed, must show that his right of action was complete at the time the action was commenced. 1 Cyc. 744, 745; Titus v. Gunn, 69 N. J. Law, 410, 55 Atl. 735. In order to entitle a broker to recover from another broker on an agreement of the latter to divide with him the commission on the sale of certain property, the commission must have been actually received bythe broker whom it is sought to charge with liability. 23 Am. & Eng. Ency. Law, p. 930. | In ordinary actions commenced by summons, plaintiff, to succeed, must show that his right of action was complete when the action was commenced. | "In ordinary actions commenced by summons, should the plaintiff show that his right of action was complete at the time when action was commenced?" | Action - Memo # 293 - C SHB.docx | ROSS-003284825-ROSS-003284826 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12230 | City of New Port Richey v. Fid. & Deposit Co. of Maryland, 105 F.2d 348 | 8.30E+05 | The Uniform Negotiable Instruments Law was enacted in Florida in 1897. Comp. Gen. Laws 1927, Sec. 6760 and ff. Its purpose was to establish uniform rules in the States adopting it, with acceptance of its solutions where differences had previously existed. It ought to be construed according to the meaning of its words, not bending its provisions to the former decisions. Where it makes no provision, the former law of course stands. And decisions in a State's courts since its enactment there are controlling in the federal courts as authoritative interpretations of a State statute . | The purpose of the Uniform Negotiable Instruments Law was to establish uniform rules in the states adopting it, with acceptance of its solutions where differences had previously existed. F.S.A. S 674.01 et seq. | How does the courts construe the Uniform Negotiable Instruments Law? | 010659.docx | LEGALEASE-00126393-LEGALEASE-00126394 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 12231 | Drury v. McLean Cty., 89 Ill. 2d 417 | 104+139 | Plaintiffs argue that the clerk of the circuit court is a county official and that, therefore, money received by the clerk as a county official is also received by the county. The primary issue then is whether the clerk of the circuit court of McLean County is a county official. We hold that under our constitution of 1970 the clerks of the circuit courts in this State are not county officials, but are nonjudicial members of the judicial branch of State government. This being so, the circuit clerk is not an agent of the county, and the county is not liable for fine money paid to the circuit clerk but never received in its treasury. | Under State Constitution of 1970 clerks of circuit court are not county officials, but are nonjudicial members of the judicial branch of state government; therefore, circuit clerk was not an agent of the county, and county was thus not liable for fine money paid by criminal defendants to circuit clerk but never received in its treasury for purposes of suit by those criminal defendants against the county seeking reimbursement of fine money after they had been convicted under a statute later held unconstitutional. S.H.A.Const.Art. 6, S 18(b). | Are clerks of the circuit court county officials? | 013440.docx | LEGALEASE-00126768-LEGALEASE-00126769 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 12232 | Raydon Exploration v. Ladd, 902 F.2d 1496 | 95+24 | Under Oklahoma contract law, an acceptance generally will not bind the parties and create a contract unless it is unconditional, identical to the offer, and does not modify, delete or introduce any new terms into the offer. Ollie v. Rainbolt, 669 P.2d 275, 280 (Okla. Notwithstanding this rule, an acceptance must receive a reasonable construction. Immaterial variances between the offer and acceptance will be disregarded and the mere addition of a collateral or immaterial matters will not prevent the formation of a contract. Foster v. West Publ. Co., 77 Okla. 114, 186 P. 1083, 1084 (1920), cited with approval in Price v. Oklahoma College of Osteopathic Medicine, 733 P.2d 1357, 1362 n. 8 (Okla.App.1986); see also Farmers' Produce Co. v. McAlester Storage, 48 Okla. 488, 150 P. 483, 485 (1915); Wallerius v. Hare, 200 Kan. 578, 438 P.2d 65, 68-69 (1968); and Restatement (Second) of Contracts " 61 (1979) | Under Oklahoma law, immaterial variances between offer and acceptance will be disregarded and mere addition of collateral or immaterial matters will not prevent formation of contract. | Can immaterial variances between the offer and its acceptance affect the formation of a contract? | Exchange Of Property - Memo 57 - ANG.docx | ROSS-003313000-ROSS-003313001 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 12233 | Town of Rogersville ex rel. Rogersville Water Comm'n v. Mid Hawkins Cty. Utility Dist., 122 S.W.3d 137 | 317A+113 | Where a utility district holds an exclusive franchise to construct and operate a public water system pursuant to " 301(a), the procedure to modify the franchise is a petition to the county executive of the county which originally incorporated the utility district. West Wilson Utility District of Wilson County v. Atkins, 223 Tenn. 74, 442 S.W.2d 612 (1969); City of Crossville v. Middle Tenn. Util. Dist., 208 Tenn. 268, 345 S.W.2d 865 (1961). Moreover, the sole remedy available to parties dissatisfied with a utility's service is to modify a utility district's exclusive franchise. Id.; Chandler Inv. Co. v. Whitehaven Dist., 44 Tenn.App. 1, 311 S.W.2d 603 (1957). As the Supreme Court explained in Consolidated Gray"Fordtown"Colonial Heights Util. Dist. v. O'Neill:[T]hey have the right to petition the County Court if the services are not being rendered and to show this to the county Court, then the County Court has the right to take such action as it deems necessary under the facts. Of course, the County Court in doing so will take into consideration all the facts and determine whether or not the district has been, or is, making a reasonable effort under the circumstances to furnish the citizens of the complaining districts with the utilities this utility district is allowed to furnish under the Acts, in question. | The sole remedy available to parties dissatisfied with a utility's service is to modify a utility district's exclusive franchise. West's T.C.A. S 7-82-301(a)(1). | What is the sole remedy available to parties dissatisfied with a utilitys service? | Public Utilities - Memo 198 - AM.docx | LEGALEASE-00016639-LEGALEASE-00016640 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 12234 | Berea Coll. Utilities v. City of Berea, 691 S.W.2d 235 | 405+1916 | This is an appeal by Berea College Utilities, a Department of Berea College, from a judgment of the Madison Circuit Court upholding the validity of two ordinances of the City of Berea. The ordinances, numbers 3"83 and 4"83, create franchises for the distribution of electricity and water within the City of Berea. Included among the provisions of the ordinances are requirements for (1) a minimum bid amount equal to 3% of the gross service revenues generated by the franchises within city corporate limits and (2) quarterly payment of a minimum annual franchise fee equal to 3% of gross service revenues for any utility operating without a valid franchise. On appeal, the utility argues that " 164 of the Kentucky Constitution and KRS 96.010 do not permit municipalities granting a franchise or privilege to impose a minimum bid requirement as a precondition to awarding a public utility franchise. It is also contended by appellant that the 3% franchise fee is a de facto tax which the city is prohibited from imposing upon the utility under KRS 136.120 as incorporated in KRS 92.281. We disagree with both these propositions and affirm the judgment of the lower court. | Provisions of ordinances requiring minimum bid amount equal to three percent of gross service revenues generated by franchises for distribution of electricity and water within city corporate limits were not prohibited by statute or Constitution. Const. S 164; KRS 96.010. | What is the minimum annual franchise fee for any utility operating without a valid franchise? | 042408.docx | LEGALEASE-00126814-LEGALEASE-00126815 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 12235 | Matador Serv. v. Missouri Basin Well Serv., 367 N.W.2d 749 | 317A+194 | Getter asserts that the PSC's determination that the granting of the certificate is consistent with the public convenience and necessity is not supported by the evidence in the record or by its findings of fact. The issue of public convenience and necessity is ordinarily one of fact and the determination of what is consistent with the public convenience and necessity is one which is peculiarly for the determination of the regulatory authority. Application of Crusader Coach Lines, Inc., 213 Neb. 53, 327 N.W.2d 98 (1982); Application of Schroetlin, 210 Neb. 508, 315 N.W.2d 630 (1982). | Issue of public convenience and necessity is ordinarily one of fact and determination of what is consistent with public convenience and necessity is one of which is peculiarly for determination of regulatory authority. | Is the issue of public convenience and necessity one of fact? | 042410.docx | LEGALEASE-00126816-LEGALEASE-00126817 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 12236 | Seus v. John Nuveen & Co., 146 F.3d 175 | 25T+134(6) | Seus suggests that the arbitration agreement in the Form U"4 is invalid as a contract of adhesion because of the disparity in bargaining power between her and her employer. This very argument was rejected in Gilmer, however. Unequal bargaining power is not alone enough to make an agreement to arbitrate a contract of adhesion. | Unequal bargaining power is not alone enough to make an agreement to arbitrate a contract of adhesion. | Does unequal bargaining power make an agreement to arbitrate a contract of adhesion? | 007224.docx | LEGALEASE-00127220-LEGALEASE-00127222 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12237 | Penn Sch. Dist. No. 7 v. Bd. of Ed. of Lewis-Cass Intermediate Sch. Dist. of Cass Cty., 14 Mich. App. 109 | 1.41E+34 | In attacking the provisions of section 5 the plaintiffs' brief argues, in representative part:"This method of selection does not meet with any of the standards of approved methods of selecting administrative agencies, has no recognition in any known pattern, and does not give rise to a duly constituted administrative agency. The scheme employed is novel and does not meet with any judicial approval and on the contrary affronts logic."The argument is unimpressive. Limited only by such constitutional provisions as are relevant (of which there is none cited), the manner of selection of school officials rests entirely within the discretion of the legislature. A leading case is Minsinger v. Rau (1912), 236 Pa. 327, 331, 84 A. 902, 903, wherein it was held:"The establishment, maintenance, and support of a system of common schools having been imposed upon the legislative department of the government, it must employ agencies to accomplish that object, and the manner of their selection is peculiarly within its discretion. Subject to constitutional restrictions, the state may provide any method for the selection of its agents it may see fit, and the methods employed need not be alike in all instances." | Manner of selection of school officials rests entirely within discretion of legislature. | Does the manner of selection of school officials rest entirely within discretion of the legislature? | 016734.docx | LEGALEASE-00127129-LEGALEASE-00127131 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12238 | Sisters of the Holy Child Jesus at Old Westbury v. Corwin, 51 Misc. 3d 44 | 1.41E+31 | Although defendants contend that an issue of fact exists as to whether plaintiff was able to meet their daughter's special needs, "[t]he courts are an inappropriate forum to test the efficacy of educational programs and pedagogical methods' " (Paladino v. Adelphi Univ., 89 A.D.2d 85, 90, 454 N.Y.S.2d 868 [1982], quoting Donohue v. Copiague Union Free School Dist., 64 A.D.2d 29, 35, 407 N.Y.S.2d 874 [1978] ). The quality and qualifications of teachers employed by private schools "are concerns not for the courts, but rather for the State Education Department and its commissioner" (Paladino v. Adelphi Univ., 89 A.D.2d at 93, 454 N.Y.S.2d 868, citing Education Law " 5003). The gist of defendants' claim, asserted both as a defense and as a counterclaim, that plaintiff's personnel were unqualified to address the special needs of defendants' daughter, is educational malpractice, which is not cognizable as a cause of action in New York State (see e.g. Hoffman v. Board of Educ. of City of N.Y., 49 N.Y.2d 121, 125, 424 N.Y.S.2d 376, 400 N.E.2d 317 [1979]; Introna v. Huntington Learning Ctrs., Inc., 78 A.D.3d 896, 899, 911 N.Y.S.2d 442 [2010] ), and likewise cannot serve as a defense. Since the parties' contract, which was unambiguous (see Lippman v. Orosco, 27 Misc.3d 61, 901 N.Y.S.2d 454 [App.Term, 9th & 10th Jud.Dists.2010] ), contained no specific representations as to plaintiff's ability to address the special needs of defendants' daughter (see Curley v. Nina Maria Corp., 33 Misc.3d 142[A], 2011 N.Y. Slip Op. 52211 [U], 2011 WL 6142776 [App.Term, 9th & 10th Jud.Dists.2011] ), we conclude that plaintiff was entitled to summary judgment dismissing defendants' first counterclaim, which alleged a failure to provide adequate services in the circumstances. Nor are we persuaded that there exists a material issue of fact, precluding summary judgment on the complaint, as to whether the contractual requirement, that defendants pay the full annual tuition and | The courts are an inappropriate forum to test the efficacy of educational programs and pedagogical methods. McKinney's Education Law S 5003. | Are courts an inappropriate forum to test the efficacy of educational programs and pedagogical methods? | Education - Memo # 19 - C - SU.docx | ROSS-003298546-ROSS-003298548 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 12239 | Wiemerslage Through Wiemerslage v. Maine Twp. High Sch. Dist. 207, 824 F. Supp. 136 | 1.41E+31 | Federal judicial intervention in the day to day operations of public schools is highly undesirable and requires significant restraint. Federal courts must not "intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). The court will consider the complaint with these principles in mind. | Federal judicial intervention in day to day operations of public schools is highly undesirable and requires significant restraint; federal courts must not intervene in resolution of conflicts which arise in daily operation of school systems and which do not directly and sharply implicate basic constitutional values. | Does judicial intervention or interposition in the operation of the public-school system requires restraint? | Education - Memo # 25 - C - SU.docx | ROSS-003299497-ROSS-003299498 | Condensed, SA | 0.35 | 0 | 1 | 0 | 1 | |
| 12240 | State v. Patzer, 382 N.W.2d 631 | 141E+440 | The state has the power to impose reasonable regulations as to the quality of the education and instruction furnished. In Meyer v. Nebraska, 262 U.S. 390, 400, 43 S.Ct. 625, 627, 67 L.Ed. 1042, 1045 (1923), the Supreme Court stated that "[p]ractically, education of the young is only possible in schools conducted by especially qualified persons who devote themselves thereto." While a teaching certificate is no guarantee that the holder is a competent teacher, it does guarantee that the holder has been exposed to the knowledge that a competent teacher should have. See Benton, supra. We believe that the teacher certification requirement for instructors in public, non-public, or home schools is a reasonably narrow one and is amply justified. See Jernigan v. State, 412 So.2d 1242 (Ala.Crim.App.1982). Teacher certification appears to us to be among the least personally intrusive methods now available to satisfy the state's prime interest in seeing that its children are taught by capable persons. | State has power to impose reasonable regulations as to quality of education and instruction furnished. | Does the state has the power to impose reasonable regulations as to quality of education and instruction furnished? | Education - Memo # 27 - C - NA.docx | ROSS-003313629-ROSS-003313631 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12241 | Minneapolis Post Office Rifle & Pistol Club v. United States, 32 Fed. Cl. 562 | 148+81.1 | Plaintiff argues that when defendant prevented the club from using the gun range in the Minneapolis Post Office, it constituted a taking of its property within the meaning of the Fifth Amendment of the United States Constitution. The Fifth Amendment provides that "nor shall property be taken for public use, without just compensation." A taking cannot occur unless the claimant can first demonstrate that it has a legally cognizable interest in the "property." Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573, 1580 (Fed.Cir.1993); Shanghai Power Co. v. United States, 4 Cl.Ct. 237, 240 (1983). To state a claim under the takings clause, plaintiff must establish that it owned property which the United States took for a public purpose. This determination must be made on the basis of the particular facts of each case. See United States v. Central Eureka Mining Co., 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958). "[N]ot all economic interests are "property rights'; only those economic advantages are "rights' which have the law back of them, and only when they are so recognized may courts compel others to forbear from interfering with them or to compensate for their invasion." Sharkey v. United States, 17 Cl.Ct. 643, 647 (1989) (quoting United States v. Willow River Power Co., 324 U.S. 499, 502, 65 S.Ct. 761, 763, 89 L.Ed. 1101 (1945)). Interests or rights which are not legally protected do not constitute "property" for purposes of the Fifth Amendment. See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1001"04, 104 S.Ct. 2862, 2871"73, 81 L.Ed.2d 815 (1984); United States v. Willow River Power Co., 324 U.S. at 503, 65 S.Ct. at 764. Therefore, as defendant argues, the initial inquiry made by this court must be whether plaintiff had any property interest in the gun rage which could have been taken. Hafen v. United States, 30 Fed.Cl. 470 (1994). | Interests or rights which are not legally protected do not constitute "property" for purposes of Fifth Amendment's takings clause. U.S.C.A. Const.Amend. 5. | Do the interests or rights which are not legally protected constitute property for purposes of the Fifth Amendment? | 017650.docx | LEGALEASE-00126890-LEGALEASE-00126891 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12242 | United States v. Stands, 105 F.3d 1565 | 2.31E+21 | We interpret the "or otherwise" language in the kidnapping statute broadly. See United States v. Bordeaux, 84 F.3d 1544, 1548 (8th Cir.1996). A conviction is proper if the victim was taken "for some reason that the defendant considered of sufficient benefit to him, or for "some purpose of his own."" Id. (citation omitted). The jury reasonably could have determined that Phillip's reasons for inveigling Torrez into accompanying him were to have Candida identify Torrez, and then to assault Torrez in an isolated location where detection would be unlikely. Some evidence also suggests that Phillip thought he could avoid federal prosecution by taking Torrez off the reservation for purposes of the assault. These reasons are clearly sufficient to support the kidnapping conviction. See id. (affirming conviction of kidnapping for purposes of assault and proceeding to isolated location). | Federal kidnapping statute applies to any person who kidnaps another "for ransom or reward or otherwise," and Court of Appeals interprets "or otherwise" language broadly; thus, conviction is proper if victim was taken for some reason that defendant considered of sufficient benefit to him, or for some purpose of his own. 18 U.S.C.A. S 1201(a). | Does kidnapping require the captor to receive some benefit? | 020991.docx | LEGALEASE-00127239-LEGALEASE-00127240 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 12243 | Gavin v. Swain, 113 Cal. 324 | 315+70 | The only point made by counsel for appellant is that there is no sufficient finding of facts to sustain the judgment. The court found that plaintiff's intestate, Ellen Gavin, never did, and that her estate does not now, "own or possess or have any right, title, or interest or estate in or to the real property mentioned and described in the complaint, or any part thereof, and never was, and is not now, entitled to the possession of the same, or any part thereof"; and further found that defendant's testatrix, Mary J. Gavin, "was at the commencement of this action, and since the 18th day of March, 1893, up to and at the time of her death (December 7, 1893), the owner and seised in fee and entitled to the possession of said property, and the whole thereof." It is contended that these are not findings of facts, and especially that the findings that plaintiff's intestate never owned or possessed any interest or estate in the land in question, and that defendant's testatrix was, at the commencement of this action and at the time of her death, "the owner and seised in fee" of said land, are mere conclusions, "reached by the application of rules of law to an ascertained fact or collection of facts." There is no merit in this point; and the decisions in this state overruling it are so numerous that it seems unaccountable that it should be relied upon or contended for by counsel at this time. That ownership, or (in technical language) seisin, of real property, is a fact that may be pleaded, proved, and found as a material ultimate fact in all cases involving title to real property, is unquestionable in this state. Payne v. Treadwell, 16 Cal. 244; Murphy v. Bennett, 68 Cal. 528, 9 Pac. 738; Daly v. Sorocco, 80 Cal. 367, 22 Pac. 211; Gill v. Driver, 90 Cal. 72, 27 Pac. 64. Indeed, the plaintiff has so, and not otherwise, pleaded it. It is averred in her complaint, simply, that plaintiff is "the owner and entitled to the possession of" the land in question, without any reference to the source of title, or to the manner or means of its | Ownership or seisin of real property is a fact that may be pleaded, proved, and found as a material, ultimate fact in any case involving title to the property. | Can ownership be pleaded as an ultimate fact? | 023084.docx | LEGALEASE-00127151-LEGALEASE-00127153 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12244 | Palpar v. Thayer, 82 Cal. App. 2d 578 | 302+8(11) | Respondents point to the allegation and denial of ownership and a finding of the court that it is not true that Morton and Thayer were co-owners but that Thayer was the sole owner of the tractor. While the pleading of ownership may be that of an ultimate fact (21 Cal.Jur. 37) this is not true when it appears that the allegation of ownership is based on evidentiary facts likewise pleaded, in which case it becomes a mere conclusion of law. Morel v. Morel, 203 Cal. 417, 264 P. 760; Cohn v. Klein, 209 Cal. 421, 425, 287 P. 459; Prudential Petroleum Co. v. Peck, 132 Cal.App. 4, 8, 22 P.2d 559; Davies v. Ramsdell, 40 Cal.App. 424, 430, 431, 181 P. 94; 21 Cal.Jur. 37, 38. It is clear that the allegation of co-ownership in Morton found in the complaint was the pleader's conclusions from the facts theretofore pleaded, the purchase of the tractor by Morton and Thayer under contract of conditional sale and the fact that the purchase price was fully paid; it is equally clear that Thayer's denial of co-ownership in Morton, following as it does the admission of the joint purchase by Morton and Thayer, is the pleader's conclusion from his allegation that Thayer had become owner by virtue of his performance of the alleged verbal agreement to repay Morton $1000 advanced by him. There was no finding on this affirmative allegation of Thayer's answer, and the only findings to support the conclusion that Morton was not a co-owner of the property are the findings above discussed which were either contradictory of expressly admitted facts or wholly outside the issues made by the pleadings. Under the authorities cited these findings furnish no legal support for the judgment. | Although pleading of ownership may be that of an ultimate fact, when it appears that allegation of ownership is based on evidentiary facts likewise pleaded, allegation becomes a mere conclusion of law. | Is the allegation of ownership a conclusion of law? | 023089.docx | LEGALEASE-00127156-LEGALEASE-00127157 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12245 | Stone Container Corp. v. Stapler, 263 Ala. 524 | 302+8(11) | The averment that the complainants are the owners of the homes situated on the described real estate is an averment of an ultimate fact and not a conclusion of law. Sheffield Nat. Bank v. Corinth Bank & Trust Co., 196 Ala. 275, 72 So. 127; Beall v. Folmar, 199 Ala. 596, 75 So. 172. However, the complainants' right to maintain the bill is not dependent upon ownership of the property. | Averment that complainants were owners of homes situated on described real estate was an averment of an ultimate fact and not a conclusion of law. | "Is the allegation that a party is the owner of described real estate, an allegation of an ultimate fact?" | 023091.docx | LEGALEASE-00127158-LEGALEASE-00127159 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 12246 | New World Fashions v. Lieberman, 429 So. 2d 1276 | 308+69(7) | Under the evidence presented, New World was entitled to an accounting for loss of profits as a consequence of Lieberman's breach of his duty to New World. An agent may not, without the principal's knowledge and consent, enter into any business in competition with his principal and keep for himself any profit accruing from such transaction. Singletary v. Mann, 157 Fla. 37, 24 So.2d 718, 723 (Fla.1946); 2 Fla.Jur.2d, Agency, " 70. Of course, a principal and agent may have the kind of relationship which would contemplate the agent being authorized to engage in activities in competition with the principal's business. As stated in Restatement, Second, Agency " 393, Comment a:There is no violation of the agent's duty if the principal understands that the agent is to compete; a course of dealing between the parties may indicate that this is understood. Likewise, an agent can properly act freely on his own account in matters not within the field of his agency and in matters in which his interests are not antagonistic to those of the principal ....However, in the case sub judice, there was no understanding by New World that Lieberman would be competing with New World; nor was there any course of dealing between the parties which would suggest acquiescence by New World in any competitive dealings by Lieberman. The evidence shows that as soon as New World suspected such activity by Lieberman, their agreement was terminated. | An agent may not, without principal's knowledge and consent, enter into any business in competition with his principal and keep for himself any profit accruing from such transaction. | Can an agent enter into business in competition with his principal? | 041902.docx | LEGALEASE-00127175-LEGALEASE-00127176 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12247 | Bastian v. Wausau Homes, 635 F. Supp. 201 | 366+35 | As to whether the term was unreasonable or oppressive, a waiver of subrogation clause is not necessarily unconscionable even in an adhesion contract. Rather, one looks to the specific term in a factual context to see if the term is unreasonable under the circumstances. Lloyds, 478 N.Y.S.2d at 286. See also Horizon Petroleum Co. v. Barges Dixie 162, 234 and 236, 753 F.2d 382, 385 (5th Cir.1985); Fluor Western, Inc. v. G & H Offshore Towing Co., 447 F.2d 35, 39-40 (5th Cir.1971), cert. denied 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972). Here we note that the clause extended only to claims for property damage, not personal injury. It did not require waiver of any and all claims, but rather only a waiver to the extent that claims were covered by insurance. The Bastians retained the right to be fully compensated for their losses. We cannot say that it is unconscionable as a matter of law for a party with an insurable interest in property to be asked to look first to insurance for compensation for its loss. Cf. Rutter, 510 F.2d at 1068; Fluor, 447 F.2d at 40. | Waiver of subrogation clause is not necessarily unconscionable even in adhesion contract; rather, one looks to specific term in factual context to see if the term is unreasonable under circumstances. | Is a waiver of subrogation clause necessarily unconscionable even in an adhesion contract? | Subrogation - Memo # 1061 - C - NS.docx | ROSS-003300267-ROSS-003300268 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12248 | Nat'l Freight v. Consol. Container Co., LP, 166 F. Supp. 3d 1320 | 366+41(6) | Under the Voluntary Payment Doctrine, "[t]he general rule is that an insurer's voluntary payment to its insured does not give rise to a right of subrogation." S. Mut. Church Ins. Co. v. ARS Mech., LLC, 306 Ga.App. 748, 703 S.E.2d 363, 366 (2010) (citation omitted); see also O.C.G.A. " 13"1"13. At the same time, the Voluntary Payment Doctrine does not apply when the parties have entered into a subrogation agreement. Federated Mut. Ins. Co. v. Northland Ins. Co., 254 Ga. 402, 329 S.E.2d 493, 494 (1985). "The party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply." ARS Mech., 703 S.E.2d at 366 (quoting Energy & Process Corp. v. Jim Dally & Assoc., Inc., 291 Ga.App. 772, 775(1), 662 S.E.2d 835 (Ga.Ct.App.2008). | Under Georgia law, the party seeking to recover payment through equitable subrogation bears the burden of showing the inapplicability of the voluntary payment doctrine, under which party's voluntary payment does not give rise to a right of subrogation. | "Who bears the burden of showing the inapplicability of the voluntary payment doctrine, under law?" | 044249.docx | LEGALEASE-00127095-LEGALEASE-00127096 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12249 | Green v. Hill, 954 F.2d 694 | 413+1 | The Federal Employees' Compensation Act (FECA) provides "compensation ... for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." Recovery under FECA for a covered injury is exclusive, and an employee cannot further recover against the United States for the same injury under the FTCA or otherwise. The FECA covers liability created both by negligent and intentional acts on the part of the Government. If Hill allegedly assaulted Green while performing his duties as Green's supervisor, the FECA would provide Green recovery for his damages. | Federal Employees' Compensation Act covers liability created both by negligent and intentional acts on part of government. 5 U.S.C.A. SS 8102, 8116(c). | Does the employees compensation act cover liability created both by negligent and intentional acts on the part of government? | 047725.docx | LEGALEASE-00127201-LEGALEASE-00127202 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 12250 | Janus v. Tarasewicz, 135 Ill. App. 3d 936 | 106+100(1) | Even though Haymer was decided after the deaths of Stanley and Theresa, we find that the trial court properly applied the Haymer standards under the general rule that a civil case is governed by the law as it exists when judgment is rendered, not when the facts underlying the case occur. (See GTE Automatic Electric, Inc. v. Allphin (1976), 38 Ill. App.3d 910, 913-14, 349 N_E. 2d 654, affirmed 68 Ill.2d 326, 12 Ill.Dec. 134, 369 N.E.2d 841; In Re Estate of Mertes (1975), 34 Ill. App.3d 557, 559, 340 N.E.2d 25.). The application of Haymer is not unfair since the treating physicians made brain death diagnoses at the time of the deaths, and the parties presented evidence at trial regarding brain death. | Even though case setting forth standards for determining when legal death occurs was decided after deaths in issue in action challenging disposition of life insurance proceeds, trial court properly applied those standards which existed when judgment was rendered; furthermore, application of the standards was not unfair since treating physicians had made pertinent diagnoses at time of the deaths and the parties presented evidence relevant under the standards. | Is a civil case governed by law as it exists when judgment is rendered? | Action - Memo # 698 - C NE.docx | ROSS-003286311-ROSS-003286312 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 12251 | Watkins v. Watkins, 76 Idaho 316 | 150+38 | The complaint invokes equity jurisdiction. Equity having obtained jurisdiction of the subject matter of a dispute will retain it for settlement of the entire controversy between the parties with respect thereto. Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351. The court in equity will grant all proper relief consistent with the case made and embraced within the issues whether the particular relief be prayed for or not, except in default cases. I.C. " 10-704; Stearns v. Williams, 72 Idaho 276, 240 P.2d 833; Anderson v. Whipple, supra; Sims v. Purcell, 74 Idaho 109, 257 P.2d 242; Vanek v. Foster, 74 Idaho 532, 263 P.2d 997. | Where equity has obtained jurisdiction of subject matter of dispute it will retain it for settlement of entire controversy between parties with respect thereto and will grant all proper relief consistent with case made and embraced within issues whether particular relief be prayed for or not, except in default cases. I.C. S 10-704. | "Once equity has acquired jurisdiction of a cause, will it retain that jurisdiction to give final relief to end the controversy?" | Action - Memo # 772 - C SK.docx | LEGALEASE-00017324-LEGALEASE-00017325 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 12252 | Elston v. Wilborn, 186 S.W.2d 662 | 13+65 | The issue to be tried in the chancery court was whether the plaintiffs, at the time of filing the suit, were the duly elected trustees of the church. If they were, they had the right to maintain this suit. Section 11369, Pope's Digest. Otherwise the decree should have been against them. The determination of the question should have been on the basis of the facts as they existed prior to the filing of this suit. In 1 Am.Juris. 451 the rule is stated: 'A cause of action must exist and be complete before an action can be commenced; the subsequent occurrence of a material fact will not avail in maintaining it. The rights and liabilities of the parties-that is, the rights to an action or to judgment or relief-depend upon the facts as they existed at the time of the commencement of the action, and not at the time of the trial." | The right to an action or to judgment or relief depends upon facts existing at time of commencement of the action and not at subsequent time. | Does the right to an action or to judgment or relief depend upon facts existing at the time of commencement of the action? | Action - Memo # 864 - C PC.docx | ROSS-003326834-ROSS-003326836 | Condensed, Order, SA | 0.83 | 1 | 1 | 0 | 1 | 1 |
| 12253 | Browar v. Paul Hardeman, 183 Cal. App. 2d 708 | 13+65 | Some months after Browar filed the complaint in his case, plaintiff Browar apparently made some arrangement with the plaintiff Krause so that the latter assigned to Browar a purported claim against Levin in the amount of $15,000. This seems to have been intended as a means of fortifying Browar's position in his suit against defendant. This part of the transaction took place after the complaint was filed, and without any supplemental complaint in the record. Plaintiff's cause of action must exist at the time he files his complaint and the rights of the parties must be judged by conditions existing at the time the action is commenced. | Plaintiff's cause of action must exist at time he files his complaint, and rights of parties must be judged by conditions existing at time action is commenced. | Should a cause of action exist at the time of the filing of the action? | Action - Memo # 865 - C PC.docx | ROSS-003289938-ROSS-003289940 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 12254 | Girschowitch v. DeLong, 51 N.Y.S.2d 499 | 13+63 | In this action at law to recover damages for fraud and deceit in inducing plaintiff to enter into a contract, plaintiff moves under Rule 109, R.C.P., to strike out the first, second and third defenses contained in the amended answer. The first defense is intended to be one of ratification. Ratification of a contract, after knowledge of fraud, is no defense to the action unless there is an allegation of waiver of the cause of action for damages. Otherwise an affirmance of the contract is consistent with a suit for damages for fraud. Potts v. Lambie, 138 App.Div. 144, 122 N.Y.S. 935; Driggs v. Henderson, 89 Misc. 421, 151 N.Y.S. 858. The defense of ratification is therefore insufficient and will be stricken. The second defense is that of laches. There are no allegations of any prejudice to defendant because of the alleged lapse of time. Laches would not in any event be a defense to an action at law, where a plaintiff has an absolute right to the relief demanded. See Pollitz v. Wabash R. Co., 207 N.Y. 113, 100 N.E. 721; Monroe County Sav. Bank v. Baker, 147 Misc. 522, 264 N.Y.S. 101; Harvey v. Guaranty Trust Co., 134 Misc. 417, 236 N.Y.S. 37; affirmed 229 App.Div. 774, 242 N.Y.S. 905, affirmed 256 N.Y. 526, 177 N.E. 125. In the memorandum submitted upon the motion defendant concedes the insufficiency of the second first two defenses. The second defense is stricken. In the third defense there is pleaded an oral modification of the contract alleged in the complaint, and a breach by plaintiff of a provision of the contract as modified. I fail to see how an alleged modification of the contract can in any way defeat the action for fraud, unless there are allegations of knowledge of the fraud at the time of the modification. Then a question of waiver enters. A denial of the contract alleged in the complaint would be sufficient, unless defendant believes the modification constitutes matter which may mitigate the damages. As such it must be pleaded as a partial defense. So, too, an | Laches is not a defense to an action at law where a plaintiff has an absolute right to the relief demanded. | Is laches a defense to an action at law where a plaintiff has an absolute right to the relief demanded? | 006253.docx | LEGALEASE-00127744-LEGALEASE-00127745 | SA, Sub | 0.96 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12255 | Marjon v. Altman, 120 N.J.L. 16 | 150+67 | Relator is, it seems to us, indisputably guilty of laches. He instituted no proceeding for the enforcement of his asserted right until the filing of the petition herein on July 22, 1937. While laches, in its legal signification, ordinarily connotes delay that works detriment to another, the public interest requires that the protection accorded by statutes of this class be invoked with reasonable promptitude. Inexcusable delay operates as an estoppel against the assertion of the right. It justifies the conclusion of acquiescence in the challenged action. This court has consistently frowned upon delays less glaring. Taylor v. Bayonne, 57 N.J.L. 376, 30 A. 431; Glori v. Board of Police Commissioners, 72 N.J.L. 131, 60 A. 47; Drill v. Bowden, 132 A. 499, 4 N.J.Misc.326; State v. New Jersey State HighwayCommission, 153 A. 251, 9 N.J.Misc. 186; McMichael v. South Amboy, 183 A. 477, 14 N.J.Misc. 183. | "Laches," in its legal signification, ordinarily connotes delay that works detriment to another. | "Does ""laches,"" in its legal signification, ordinarily connote a delay that works detriment to another?" | Action - Memo # 882 - C CK.docx | ROSS-003300027-ROSS-003300029 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12256 | Rodgers v. United States, 158 F. Supp. 670 | 13+65 | Thus the question of injunction is determined by facts existing at the time of trial and not at the time suit was instituted, Andersen v. Shipowner's Ass'n of the Pacific Coast, 9 Cir., 1929, 31 F.2d 539, 543. For example, a law passed after a decree by a lower court 'must be given effect in deciding the appeal, since the case involves only relief byinjunction, and this operates wholly in futuro. Duplex Printing Press Co. v. Deering, 254 U.S.443, 464, 41 S.Ct. 172, 65 L.Ed. 349.' Texas Co. v. Brown, 1921, 258 U.S. 466, 474, 42 S.Ct. 375, 378, 66 L.Ed. 721. And if an adequate remedy at law should become available after the bill for injunction since equity will not exercise jurisdiction since an action for injunctive relief speaks as of the date of its decree, Tilbrook v. Forrestal, D.C.D.C.1946, 65 F.Supp. 1, 4. | The question of injunction is to be determined by the facts existing at time of trial and not at the time the suit was instituted. | Is the question of injunction to be determined by the facts existing at time of trial and not at the time the suit was instituted? | Action - Memo # 884 - C CK.docx | ROSS-003312780-ROSS-003312782 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12257 | Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297 | 25T+134(6) | In accordance with the principles outlined above, we have previously recognized that equity may require invalidation of an arbitration agreement that is unconscionable, see Sydnor, 252 F.3d at 305; Hooters, 173 F.3d at 938, as well as an arbitration agreement that allows an employer to ignore the arbitration result, see Johnson v. Circuit City Stores, 148 F.3d 373, 378 (4th Cir.1998); O'Neil, 115 F.3d at 274-75. Indeed, in Hooters, we revoked an arbitration agreement plagued by rules and procedures which were "so one-sided that their only possible purpose [was] to undermine the neutrality of the proceeding." Hooters, 173 F.3d at 938. Among other unfair procedures, the agreement in Hooters provided that Hooters and the employee would each select an arbitrator, who would in turn select the third arbitrator. But, the employee's arbitrator and the third arbitrator were required to be selected from a list of arbitrators created exclusively by Hooters. No limits were placed on whom Hooters could put on the list, giving Hooters absolute control over the selection of the entire panel. See id. at 938-39. Such a mechanism for selecting an arbitration panel to adjudicate the employee's statutory claim, we held, was one "crafted to ensure a biased decisionmaker." Id. at 938. | Equity may require invalidation of an arbitration agreement that is unconscionable, as well as an arbitration agreement that allows an employer to ignore the arbitration result. | Can equity require invalidation of an arbitration agreement that is unconscionable? | 007222.docx | LEGALEASE-00127457-LEGALEASE-00127458 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12258 | People v. Cahill, 2 N.Y.3d 14 | 67+2 | Burglary is part of a larger category of criminal behavior that involves intrusion upon property (Penal Law art 140). The statutory hierarchy is relevant. The lowest degree of intrusion is criminal trespass (a violation), by which a person knowingly enters or remains unlawfully in or upon premises (Penal Law " 140.05). From there, a trespass becomes more serious, depending on the nature of the premises and whether the trespasser possesses certain weapons (Penal Law "" 140.10, 140.15, 140.17). The critical distinction between burglary and trespass is that a trespass in a building or dwelling is complete when a person knowingly enters or remains unlawfully in those premises. Burglary requires more. There can be no burglary unless the trespasser intends to commit a separate crime when entering or remaining unlawfully in a building (see People v. Gaines, 74 N.Y.2d 358, 547 N.Y.S.2d 620, 546 N.E.2d 913 [1989]). Burglary is thus an aggravated form of criminal trespass, in which the aggravating factor is the trespasser's intent to commit a separate crime (see People v. Henderson, 41 N.Y.2d 233, 391 N.Y.S.2d 563, 359 N.E.2d 1357 [1976]; see also CJI2d [NY] Penal Law " 140.25[1][b]). | Burglary is an aggravated form of criminal trespass, in which the aggravating factor is the trespasser's intent to commit a separate crime. (Per opinion of Rosenblatt, J., with two judges concurring, one judge concurring in result, and two judges concurring in part and dissenting in part.) McKinney's Penal Law S 140.25, subd. 1(b). | Is burglary an aggravated form of criminal trespass? | Burglary - Memo 10 - RK.docx | ROSS-003299445-ROSS-003299446 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 12259 | Lucas v. Belcher, 20 Ala. App. 507 | 79+6 | A deputy clerk, not having taken the oath of office as prescribed by law, nevertheless is a de facto officer, and his acts are valid so far as the public or third persons are concerned. Joseph v. Cawthorn, 74 Ala. 411. | Deputy clerk, who has not taken oath of office as prescribed by law, is nevertheless a de facto officer, whose acts are valid as to public or third persons. | Is a deputy clerk a de facto officer? | 013515.docx | LEGALEASE-00128022-LEGALEASE-00128023 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 12260 | Laidlaw Waste Sys. v. Bay Cities Servs., 43 Cal. App. 4th 630 | 1.41E+30 | We begin our discussion by noting that "[s]chool districts are agencies of the state for the local operation of the state school system. [Citations.]" (Hall v. City of Taft (1956) 47 Cal.2d 177, 181, 302 P.2d 574.) "The Legislature's power over the public school system has been described as exclusive, plenary, absolute, entire, and comprehensive, subject only to constitutional constraints.... The Legislature has the power to create, abolish, divide, merge, or alter the boundaries of school districts.... The state is the beneficial owner of all school properties and local districts hold title as trustee for the state.... School moneys belong to the state and the apportionment of funds to a school district does not give the district a proprietary interest in the funds...." (Hayes v. Commission on State Mandates (1992) 11 Cal.App.4th 1564, 1579, fn. 5, 15 Cal.Rptr.2d 547.) Accordingly, "[t]he public schools of this state are a matter of statewide rather than local or municipal concern...." (Hall v. City of Taft, supra, 47 Cal.2d at p. 179, 302 P.2d 574.). | Public schools of state are matter of statewide, rather than local or municipal, concern. | "Are public schools of a state matter of statewide, rather than local or municipal, concern? " | Education - Memo # 35 - C - SU.docx | LEGALEASE-00017562-LEGALEASE-00017564 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12261 | Delta Elec. Power Ass'n v. Mississippi Power & Light Co., 250 Miss. 482 | 317A+113 | Prior decisions interpreting the Public Utility Act have established two propositions: (1) Awards by the Commission of grandfather certificates under Section 5 are made on an area rather than a facility basis; (2) A certificate of convenience and necessity issued by the Commission is a valuable right which is entitled to protection by the courts. | Certificate of convenience and necessity issued by public service commission is valuable right entitled to protection by courts. Code 1942, SS 7716-01 to 7716-38. | Is a certificate of convenience and necessity granted to a utility a valuable right to be protected by the courts? | 042449.docx | LEGALEASE-00127366-LEGALEASE-00127367 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 12262 | Hanks v. Transcon. Gas Pipe Line Corp., 953 F.2d 996 | 208+30(1) | We are not so constrained in this case. Here it is undisputed by any party that the Sheehan/Transco contract was one for the construction of an intermediate segment of an interstate gas transmission pipeline. While not conclusive, those features are sufficient to eschew the required nexus with "a well" unless contrary facts are presented to create a genuine issue of fact. As nonmovants, Sheehan and Home were obliged to come forward with specific facts, along the lines of the information suggested in Transco (Lloyds), to show that there is such a genuine issue for trial. As they failed to do so, the record is devoid of any evidence that the pipeline in any way "pertained to a well." In fact, in their "Memorandum in Opposition to Motion for Summary Judgment," Sheehan and Home concede that the subject pipeline was an interstate gas transmission pipeline. But, possibly for strategic reasons, Sheehan and Home elected to depend solely on the legal interpretation of the Act, arguing that it should nevertheless apply here because "natural gas must be transported by means of, among other things, [a] natural gas pipeline from various wells to their final refinery or usage destinations." The district court rejected this overbroad argument in Clarkco Contractors, Inc. v. Texas Eastern Gas Pipeline13 as do we today in Transco (Lloyds). | Contract for construction of intermediate segment of interstate gas transmission pipeline did not "pertain to a well" within meaning of Louisiana Oilfield Anti-Indemnity Act; thus, Act did not prohibit waiver of subrogation provisions in that contract and in policy issued by workers' compensation insurer. LSA-R.S. 9:2780. | "Does a contract for construction of an intermediate segment of a pipeline ""pertain to a well""?" | 043348.docx | LEGALEASE-00127969-LEGALEASE-00127970 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 12263 | Allstate Ins. Co. v. Palumbo, 109 Conn. App. 731 | 366+1 | "As our Supreme Court has explained, [t]he right of [equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect.... The object of [equitable] subrogation is the prevention of injustice.It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it.... As now applied, the doctrine of equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Internal quotation marks omitted.) Warning Lights & Scaffold Service, Inc. v. O & G Industries, Inc., 102 Conn.App. 267, 272, 925 A.2d 359 (2007). Equitable subrogation "derives from the equitable principle against unjust enrichment...." (Internal quotation marks omitted.) Id., at 276, 925 A.2d 359. "A claimant who has established an entitlement to restitution by proving the unjust enrichment of the defendant at the claimant's expense is ordinarily entitled to a personal money judgment against the defendant for the amount of the enrichment in money." Restatement (Third), Restitution and Unjust Enrichment, ch. 7, introductory note, p. 117 (Tentative Draft No. 5, March 12, 2007). | The right of equitable subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. | Can subrogation be a contractual matter? | 043420.docx | LEGALEASE-00127671-LEGALEASE-00127672 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12264 | Hughes v. Hartford Fire Ins. Co., 17 Ill. App. 518 | 366+35 | We fully assent to this latter proposition, but are unable to see its application to the case at bar. While it is true the right of subrogation does not arise by contract, such a right, like all other legal or equitable rights, may be qualified, or extinguished by contract. We are therefore of opinion that the question presented must be determined by the construction to be given to the assignments; for whatever the original rights of the parties may have been under the doctrine of subrogation, they are now controlled and defined by the contract of assignment. | While the right of subrogation does not arise by contract, such a right like all other legal or equitable rights may be qualified or extinguished by contract. | Can right of subrogation like all other legal or equitable rights be qualified or extinguished by contract? | 043496.docx | LEGALEASE-00127633-LEGALEASE-00127634 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 12265 | Pettengill v. New Hampshire Ins. Co., 129 Vt. 23 | 366+35 | We can find nothing in the record to indicate that the defendant ever authorized Mr. O'Rourke, or any member of his firm, to compromise its right of subrogation. In essence, the plaintiff's theory of his right to recover in contract adopts the premise that the defendant's attorney agreed to surrender its right to reimbursement from Kelton to the extent of $11,348.56 for the doubtful privilege of gambling on a recovery that might be much less, with little or no opportunity for advantage. Even if the jury awarded to the full extent of the plaintiff's ad damnum of $30,000, forty percent of that amount would barely exceed the amount specified in the loan agreements. While rights of subrogation may be relinquished, they are not to be surrendered or compromised without specific authority from the subrogee. See, Hall v. Windsor Savings Bank, 97 Vt. 125, 137, 121 A. 582. | While rights of subrogation may be relinquished, they are not to be surrendered or compromised without specific authority from subrogee. | Can rights of subrogation be surrendered or compromised without specific authority from the subrogee? | 043587.docx | LEGALEASE-00127433-LEGALEASE-00127434 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12266 | Fifth Ave. Peace Parade Comm. v. Gray, 480 F.2d 326 | 118A+312.1 | Neither do we find any reason to hold that Judge Tyler abused his discretion in limiting plaintiffs' discovery. "It is the unusual and exceptional case where the determination of the trial court (in discovery of Government documents) is set aside." Brown v. Thompson, 430 F.2d 1214, 1216 (5th Cir. 1970); Swanner v. United States, 406 F.2d 716 (5th Cir. 1969). In a declaratory judgment action, "the complaint must stand or fall on its own merits and cannot be used as a vehicle for searching out and discovering a right of action." 5 C. Wright and A. Miller, Federal Practice and Procedure " 1238, at 204 (1969) (footnote omitted); Laird v. Tatum, supra, 408 U.S. at 14, 92 S.Ct. 2318. | In a declaratory judgment action, complaint must stand or fall on its own merits and cannot be used as vehicle for searching out and discovering a right of action. | Must a complaint stand or fall upon its own merits? | 006020.docx | LEGALEASE-00128457-LEGALEASE-00128458 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12267 | S. Mfg. Co. v. R.L. Moss Mfg. Co., 13 Ga. App. 847 | 13+65 | This is a brief summary of the reasons wherein, in our opinion, the petition was insufficient (after amendment of the petition by the addition of the contract) to authorize a recovery in the proceeding to foreclose a lien, and why it was not germane to such a proceeding. In order to foreclose a lien, the plaintiff must show compliance with his contract, or a novation of the contract, or a waiver of the contract amounting to such an estoppel as would prevent the defendant from setting up any of the stipulations of the contract by way of defense. "There can be no recovery unless the plaintiff has a complete cause of action at the time the suit is filed." Deas v. Sammons, 126 Ga. 431, 55 S. E. 170, 7 Ann. Cas. 1124. A plaintiff cannot set up a contractor's lien and recover thereon where the time when the final payment shall be due is stipulated in the contract, unless the time has arrived; the contract further stipulating that final payment should be due upon the completion of the work. And when it has been agreed that the question as to when the final payment shall be due, and therefore the question as to when the work is completed, is left entirely to the engineer's certificate, the plaintiff has no cause of action unless the certificate has been obtained; certainly not unless the engineer has refused to give the certificate, or by some providential reason had been prevented from doing so, or unless such a waiver as would amount to an estoppel, as to the defendant's right to have the engineers determine when the work was completed, is shown. It does not appear that in this case the facts relied upon as waiver are sufficient to work an estoppel. The fact that the defendant offered to arbitrate the difference as to the value of the extra work done, or the character of the work as a whole, or even the question as to whether the work was completed and the final payment due, raised no waiver which precluded the defendant from insisting upon the certificate of the engineer. The proposal was not | There can be no recovery unless the plaintiff has a complete cause of action at the time the suit is filed. | Can there be a recovery unless the plaintiff has a complete cause of action at the time suit is filed? | Action - Memo # 800 - C UG.docx | LEGALEASE-00018032-LEGALEASE-00018033 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 12268 | Caputo v. Bd. of Appeals of Somerville, 330 Mass. 107 | 13+65 | "Final relief in equity should be adapted to the facts existing at the time of the entry of the decree." Giles v. Giles, 293 Mass. 495, 499"500, 200 N.E. 378, 380; Bell v. Treasurer of Cambridge, 310 Mass. 484"488, 38 N.E.2d 660; MacLennan v. MacLennan, 311 Mass. 709, 712"713, 42 N.E.2d 838; Jubinville v. Jubinville, 313 Mass. 103, 109, 46 N.E.2d 533, 144 A.L.R. 1008. The leading statement by Mr. Justice Gray, formerly Chief Justice of this court, in Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293, is: "The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal." Tennessee v. Condon, 189 U.S. 64, 71, 23 S.Ct. 579, 47 L.Ed. 709; United Corp. v. Federal Trade Commission, 4 Cir., 110 F.2d 473, 476; 19 Am.Jur., Equity, " 411, 30 C.J.S., Equity, " 600. In oral argument the plaintiff stressed the inapplicability of any such rule where the defendant was at fault, as is suggested in this case by delaying its decision. It was, however, the board of alderman which initiated the rezoning. And where the public interest is involved a court of equity has greater latitude in granting or withholding relief. Virginian Railway Co. v. System Federation No. 40, Railway Employees Department of American Federation of Labor, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789; 30 C.J.S., Equity, " 599. It may in the public interest even withhold relief altogether. City of Harrisonville v. W. S. Dickey Clay Manuf. Co., 289 U.S. | Final relief in equity should be adapted to facts existing at time of entry of decree. | Should final relief in equity be adapted to facts existing at the time of entry of decree? | 006123.docx | LEGALEASE-00128328-LEGALEASE-00128329 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 12269 | Knapp-Monarch Co. v. Casco Prod. Corp., 342 F.2d 622 | 13+65 | Finally, because Langenfeld, prior to the suit, lacked knowledge of the alleged infringement by Casco, its Solicitation of orders cannot be said to have been active "inducement" of infringement in violation of the patent laws. Fromberg, Inc. v. Thornhill, 315 F.2d 407 (5th Cir. 1963). Concerning solicitation activity by Langenfeld subsequent to the filing of the suit as constituting active inducement to infringe, we are of the opinion that this activity, if any, should be treated in the same manner as the two sales were treated by the district court, that is, de minimis. Moreover, plaintiff is precluded from urging violations alleged to have occurred after filing of this complaint as evidence of charges contained therein. "(A) cause of action is to be tested as of the time of the filing of the complaint and if no act of infringement occurred prior to the filing of the complaint, it is fatally defective and cannot be cured by infringement occurring subsequent to the filing of the complaint." Minnesota Mining & Mfg. Co. v. Plymouth Rubber Co., 178 F.Supp. 591, 596 (D.C.Ill.1959). | Cause of action is to be tested as of time of filing of complaint and if no active infringement occurred before filing of complaint, it is fatally defective and cannot be cured by infringement after filing. | Must a cause of action for patent infringement be tested at the time of filing of a complaint? | 006136.docx | LEGALEASE-00128459-LEGALEASE-00128460 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12270 | Drake Bakeries v. Local 50, Am. Bakery & Confectionery Workers Int'l, AFL-CIO, 370 U.S. 254 | 25T+135 | However, this Court has prescribed no such inflexible rule rigidly linking no-strike and arbitration clauses of every collective bargaining contract in every situation. The company has not attempted, or claimed the right, either to terminate the entire contract or to extinguish permanently its obligations under the arbitration provisions. Instead, it has sued for damages for an alleged strike and, as far as this record reveals, the contract continued in effect, as did the promises of the parties to arbitrate and the promise of the union not to strike. Moreover, in this case, under this contract, by agreeing to arbitrate all claims without excluding the case where the union struck over an arbitrable matter, the parties have negatived any intention to condition the duty to arbitrate upon the absence of strikes. They have thus cut the ground from under the argument that an alleged strike, automatically and regardless of the circumstances, is such a breach or repudiation of the arbitration clause by the union that the company is excused from arbitrating, upon theories of waiver, estoppel, or otherwise. Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach; and in determining whether one party has so repudiated his promise to arbitrate that the other party is excused the circumstances of the claimed repudiation are critically important. In this case the union denies having repudiated in any respect its promise to arbitrate, denies that there was a strike, denies that the employees were bound to work on January 2 and asserts that it was the company itself which ignored the adjustment and arbitration provisions by scheduling holiday work. | Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach. | Are arbitration provisions that have not been repudiated meant to survive breaches of other parts of a contract? | 007257.docx | LEGALEASE-00128658-LEGALEASE-00128659 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12271 | Whitis v. United States, 368 F. Supp. 822 | 34+3(1) | No Court has ever suggested-and no such inference should be drawn from this decision-that all military action is beyond judicial review, or that the provisions of Article I, " 8 of the Constitution grant some form of absolute immunity to the military services against assertion of the individual freedoms protected by the Bill of Rights. As held at the outset of these conclusions, it is not a question of jurisdiction or judicial power; it is, instead, a cautious exercise of such power lest the exception become the rule. As the Court said in Anderson v. Laird, supra, 437 F.2d at 914: | Not all military action is beyond judicial review; the Constitution does not grant the military absolute immunity against assertion of individual freedoms protected by the Bill of Rights. U.S.C.A.Const. art. 1, S 8; Amend. 5. | Is the military immune to the provisions of the constitution? | 008301.docx | LEGALEASE-00128591-LEGALEASE-00128592 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 12272 | Nicholson v. Brown, 599 F.2d 639 | 34+2 | The Administrative Procedure Act, 5 U.S.C. s 552(a)(2)(A), arguably obligates the Air Force to make available for public copying and inspection any agency materials in the nature of final adjudicative opinions. Like any administrative agency, however, the Air Force may at its discretion announce and apply new rules in an adjudicative proceeding. SEC v. Chenery Corp. (Chenery II), 1947, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995. "(T)he choice between proceeding by general rule or by individual ad hoc litigation lies primarily in the informed discretion of the administrative agency." Id. at 203, 67 S.Ct. at 1580; See also Mehta v. Immigatration & Naturalization Serv., 2 Cir. 1978, 574 F.2d 701, 705; NLRB v. Beech-Nut Life Savers, Inc., 2 Cir. 1968, 406 F.2d 253, 257, Cert. denied 394 U.S. 1012, 89 S.Ct. 1624, 23 L.Ed.2d 38. If agencies are free to announce and apply new rules in adjudicative proceedings, A fortiori they are free to announce and apply interpretations of existing regulations. To be sure, the application to a case of new principles announced in the course of deciding that case may be so tinged with unfairness as to amount to an abuse of administrative discretion. See, e. g., SEC v. Chenery, supra, 332 U.S. at 203-04, 67 S.Ct. 1575. We find no abuse of discretion here. The criteria that the review panel relied upon seem to us entirely reasonable glosses on the term "community essentiality". They are not such a new departure that they could not reasonably have been foreseen. It does not appear that Nicholson attempted at any time to supplement his application with additional supporting materials. We do not perceive, moreover, how Nicholson could possibly overcome the defects in his original application. We have upheld the criteria as acceptable administrative interpretations. Nicholson's supporting matter, as we noted above, reveal on the face of it that Nicholson cannot satisfy the criteria. | Like any administrative agency, Air Force may at its discretion announce and apply new rules in an adjudicatory proceeding. 5 U.S.C.A. S 552(a)(2)(A). | Can the Air Force apply new rules in an adjudicative proceeding? | 008351.docx | LEGALEASE-00128634-LEGALEASE-00128635 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12273 | Moseley v. Behringer, 184 S.W.3d 829 | 307A+501 | he granting of a nonsuit is a ministerial act. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982) (orig.proceeding) (interpreting rule 164, rule 162's predecessor, and granting mandamus relief). "A plaintiff's right thereto exists from the moment a written motion is filed or an oral motion is made in open court unless the defendant has, prior to that time, filed pleadings seeking affirmative relief." Id. A trial court therefore has no discretion but to grant the nonsuit unless the defendant has previously sought affirmative relief. Id.; see also In re Martinez, 77 S.W.3d 462, 464 (Tex.App.-Corpus Christi 2002, orig. proceeding); In re Bridges, 28 S.W.3d 191, 195 (Tex.App.-Fort Worth, 2000, orig. proceeding). "[I]n the ordinary case, absent special statutory provisions, a plaintiff has an absolute right to take a nonsuit." Hooks v. Fourth Court of Appeals, 808 S.W.2d 56, 59 (Tex.1991) (orig.proceeding). | In the ordinary case, absent special statutory provisions, plaintiff has an absolute right to take a nonsuit. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "In ordinary case, does the plaintiff have an absolute right to take a nonsuit?" | 039031.docx | LEGALEASE-00128238-LEGALEASE-00128239 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12274 | Hoffman v. Pub. Serv. Comm'n, 99 Pa. Super. 417 | 317A+113 | The last contention which is most urgently pressed, is that the regulatory principle that destructive competition between utilities is inimical to the public interest is not applicable, and should not be applied to, taxicab service. A reading of the Public Service Company Law of this State compels the conclusion that one of the reasons for its enactment was the correction of existing methods of public utility regulation through the establishment of a body with the power to prevent competition in any particular utility field, and that the control of utilities as regulated monopolies, as opposed to destructive competition, was one of the objects to be obtained. The primary object of the public service laws is not to establish a monoply or to guarantee the security of investment in public service corporations, but first and at all times to serve the interests of the public. Unrestricted competition is ordinarily to be avoided, not because in the first place it injures the corporation against which it is directed, but because ultimately, the usual experience of man tells us, the losses ensuing are visited upon the public: Pottsville U. T. Co. v. Pub. Serv. Com., supra. The question before this court in that case was whether it was for the public interest to permit an autobus to run in competition with an electric railway line. It has been repeatedly held that the commission has power when the evidence so justifies its exercise to limit or prevent competition in the interest of the maintenance of adequate existing service. See Andrews v. Pub. Serv. Com., 88 Pa. Superior Ct. 306, and cases therein cited. The propriety of permitting competition in the same field is peculiarly one within the discretion of the Public Service Commission: Gongawere v. Pub. Serv. Com., 83 Pa. Superior Ct. 269. The argument that the order creates a monopoly of urban transportation in Philadelphia is sufficiently answered by the following statement of this court speaking through KEPHART, J., in Jenkins Township v. Pub. Serv. | Propriety of permitting competition within same field is within discretion of Public Service Commission. | Is the propriety of permitting competition in the same field within the discretion of the Public Service Commission? | 042478.docx | LEGALEASE-00128216-LEGALEASE-00128218 | Condensed, SA | 0.98 | 0 | 1 | 0 | 1 | |
| 12275 | Transamerica Ins. Co. v. Barnett Bank of Marion Cty., N.A., 524 So. 2d 439 | 366+35 | Under the U.C.C. in Florida today, a surety company, merely by first filing its earlier assignment from the contractor, can prevail against a financing bank which later acquires a security interest. If the financing bank has a security interest earlier perfected by filing, the surety company can easily ascertain this fact and protect itself by declining to issue a bond at all, or by not issuing the bond unless the bank subordinates its interests. Here the appellant surety company has failed, neglected, or refused to file and perfect its security interest under the U.C.C. and has thereby created the conflict between its interests and those of the financing bank. The remedy of equitable subrogation is customarily denied to a party who could have protected himself but who has been negligent in doing so. Equity aids the vigilant. Likewise, equitable subrogation is governed by the operation of equitable principles and is not applied where it works an injustice to third parties. Having the convenient and practical remedy of filing its security agreement under the U.C.C., the surety company is not entitled to disregard it and rely on the remedy of equitable subrogation to ambush a financing bank which has dutifully filed its security interest as provided by law. Our holding in this case is consistent with, and parallel to, Waterhouse v. McDevitt & Street Co., 387 So.2d 470 (Fla. 5th DCA 1980), in which this court held that a bank with a perfected security interest had priority over a surety which did not perfect its security interest but which claimed a superior right by virtue of the doctrine of equitable subrogation. | Remedy of equitable subrogation is customarily denied to party who could have protected himself but who had been negligent in doing so. | Is a remedy of equitable subrogation customarily denied to a party who could have protected himself but who had been negligent in doing so? | 043245.docx | LEGALEASE-00128493-LEGALEASE-00128494 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 12276 | Ford v. Jones, 174 Ky. 252 | 366+7(1) | The doctrine of subrogation is one of equity, to promote justice, and it may or may not arise from a contract. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. Where a person furnishes money to pay the debt of another, if it is equitable that he should be substituted for the creditor, it will be done. A surety on sale bonds for price at mortgage foreclosure sale, on being compelled by legal proceedings to pay the bonds, is subrogated to the rights of the mortgagee. | A surety on sale bonds for price at mortgage foreclosure sale, on being compelled by legal proceedings to pay the bonds, is subrogated to the rights of the mortgagee. | Is a surety entitled to be subrogated to the position of a mortgagee when he is compelled to pay debt? | 043254.docx | LEGALEASE-00128350-LEGALEASE-00128351 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 12277 | Archer Daniels Midland Co. v. Ralston Purina Co., 321 F. Supp. 262 | 13+65 | Also, a cause of action must be tested as of the time of the filing of the complaint and acts of infringement occurring subsequent to its filing cannot cure a complaint filed when no other acts of infringement had occurred. Knapp-Monarch Co. v. Casco Products Corp., 342 F.2d 622, 627 (7th Cir. 1965), cert. denied, 382 U.S. 828, 86 S.Ct. 64, 15 L.Ed.2d 73 (1965); Minnesota Mining & Mfg. Co. v. Plymouth Rubber Co., 178 F.Supp. 591, 595 (N.D.Ill.1959). Thus, where the court must consider acts of the defendant in an effort to determine whether there is proper venue in the district, it can generally not look to acts of selling subsequent to the complaint to establish venue with the court. | Cause of action for patent infringement must be tested at time of filing of complaint and acts of infringement occurring subsequent to its filing cannot cure complaint filed when no other acts of infringement had occurred. 28 U.S.C.A. S 1400(b). | Is a cause of action to be tested as of the time of filing of a complaint? | 006072.docx | LEGALEASE-00128676-LEGALEASE-00128677 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 12278 | Browar v. Paul Hardeman, 183 Cal. App. 2d 708 | 13+65 | Some months after Browar filed the complaint in his case, plaintiff Browar apparently made some arrangement with the plaintiff Krause so that the latter assigned to Browar a purported claim against Levin in the amount of $15,000. This seems to have been intended as a means of fortifying Browar's position in his suit against defendant. This part of the transaction took place after the complaint was filed, and without any supplemental complaint in the record. Plaintiff's cause of action must exist at the time he files his complaint and the rights of the parties must be judged by conditions existing at the time the action is commenced. Berkowitz v. Palm Springs, etc., 37 Cal.App.2d 249, 99 P.2d 372. | Plaintiff's cause of action must exist at time he files his complaint, and rights of parties must be judged by conditions existing at time action is commenced. | Are rights of parties to be determined as they existed when an action was commenced? | 006162.docx | LEGALEASE-00128734-LEGALEASE-00128736 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12279 | Integrity Tr. Co. v. Posch, 13 N.Y.S.2d 973 | 13+63 | The third separate defense alleges that the plaintiff failed to proceed with the foreclosure of the mortgage promptly, by reason of which the defendants were released from their obligation and the plaintiff is estopped from proceeding to recover any alleged deficiency. This amounts to the defense of laches, but laches is an equitable defense, and available only where the Court has discretion in granting or denying relief. Pollitz v. Wabash R. Co., 207 N.Y. 113, 130, 110 N.E. 721. The right to foreclose a mortgage is an absolute right, upon default. Monroe County Savings Bank v. Baker et al., 147 Misc. 522, 264 N.Y.S. 101. | "Laches' is an equitable defense and available only where the court has discretion in granting or denying relief. | Is laches an equitable defense and available only where the court has discretion in granting or denying relief? | 006173.docx | LEGALEASE-00128684-LEGALEASE-00128685 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 12280 | S. Ry. Co. v. Gregg, 101 Va. 308 | 13+63 | And the same evidence and circumstances fully answer the suggestion that the claim is barred by laches. There is no pretense that the justness of the demand is obscured by lapse of time, death of parties, or loss of evidence. Indeed, the pleadings do not even put in issue the question of payment, and appellee's testimony that the claim has never been paid is not denied. Laches is only permitted to defeat an acknowledged right on the ground of its affording evidence that the right has been abandoned. The doctrine can have no application, therefore, to a case where the demand is continuously asserted and as continuously acknowledged. | Laches is only permitted to defeat an acknowledged right on the ground that it affords evidence of the abandonment of the right. The doctrine, therefore, can have no application to a case where a demand has been continuously asserted and as continuously acknowledged. | Is laches only permitted to defeat an acknowledged right on the ground that it affords evidence of the abandonment of the right? | 006195.docx | LEGALEASE-00128768-LEGALEASE-00128769 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 12281 | Moncrief v. Atlanta & Lowry Nat. Bank, 36 Ga. App. 371 | 278+4 | Since the whole includes a part, and since a promise to pay a certain sum of money includes a promise to pay a part of such sum, the payment of part of the principal by the maker of a promissory note and the execution by him of a new note to the payee, in which the time of payment is extended for the balance due on the principal, at the same rate of interest, constitutes a renewal of the obligation contained in the old note, and is therefore not a novation.It follows that title to collateral placed by the debtor with the creditor to secure the original note is not divested by the renewal of the original note at a reduced amount. Partridge v. Williams, 72 Ga. 807; Lowry National Bank v. Fickett, 122 Ga. 489, 50 S. E. 396. | Part payment of principal and execution of new note extending time of payment for balance at same interest was renewal and not novation. | Does partial payment of principal and the execution of a new note amount to a novation? | 009352.docx | LEGALEASE-00129004-LEGALEASE-00129005 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 12282 | Rodgers v. RAB Investments, Ltd., 816 S.W.2d 543 | 289+924 | Every partner has the inherent power to dissolve a partnership even though the dissolution would violate the partnership agreement. Karrick v. Hannaman, 168 U.S. 328, 334"35, 18 S.Ct. 135, 138, 42 L.Ed. 484 (1897); Infusaid Corp. v. Intermedics Infusaid, Inc., 739 F.2d 661, 667 (1st Cir.1984); Woodruff v. Bryant, 558 S.W.2d 535, 539 (Tex.Civ.App."Corpus Christi 1977, writ ref'd n.r.e.). The dissolution may breach the partnership contract, but it may be accomplished nonetheless. Karrick, 168 U.S. at 335, 18 S.Ct. at 138; Woodruff, 558 S.W.2d at 539; McCollum v. McCollum, 67 S.W.2d 1055, 1056 (Tex.Civ.App."San Antonio 1934, no writ). A partner always has the power, although perhaps not the legal right, to dissolve the partnership. Woodruff, 558 S.W.2d at 539; Collins v. Lewis, 283 S.W.2d 258, 261 (Tex.Civ.App."Galveston 1955, writ ref'd n.r.e.); McCollum, 67 S.W.2d at 1056. No partner has to continue in a partnership against his will. Infusaid, 739 F.2d at 667. | Every partner has inherent power to dissolve partnership even though dissolution would violate partnership agreement; dissolution may breach partnership contract, but it may be accomplished nonetheless. | Does the power to dissolve a partnership exist when the dissolution constitutes a breach of the contract? | 022004.docx | LEGALEASE-00128929-LEGALEASE-00128930 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 12283 | Swiger v. Allegheny Energy, 540 F.3d 179 | 170B+2447 | Given that partnerships are not citizens for diversity purposes, the Supreme Court has long applied the rule of Chapman v. Barney: that courts are to look to the citizenship of all the partners (or members of other unincorporated associations) to determine whether the federal district court has diversity jurisdiction. See Lincoln Prop. Co., 546 U.S. at 84 n. 1, 126 S.Ct. 606; Carden, 494 U.S. at 196"97, 110 S.Ct. 1015; Bouligny, 382 U.S. at 151, 86 S.Ct. 272; Great S. Fire Proof Hotel, 177 U.S. at 456, 20 S.Ct. 690; Chapman, 129 U.S. at 682, 9 S.Ct. 426; see also 13B Charles Alan Wright et al., Federal Practice & Procedure " 3630 (2d ed. 1984) ("[W]henever a partnership, a limited partnership ..., a joint venture, a joint stock company, a labor union, a religious or charitable organization, a governing board of an unincorporated institution, or a similar association brings suit or is sued in a federal court, the actual citizenship of each of its members must be considered in determining whether diversity jurisdiction exists."). In Chapman, the Supreme Court, on its own motion, reversed a judgment on the grounds that the federal court did not have jurisdiction over a stock company because the record did not demonstrate that all the partners of the stock company were citizens of a state different than that of the defendant:On looking into the record, we find no satisfactory showing as to the citizenship of the plaintiff. The allegation of the amended petition is that the United States Express Company is a joint-stock company organized under a law of the state of New York, and is a citizen of that state. But the express company cannot be a citizen of New York, within the meaning of the statutes regulating jurisdiction, unless it be a corporation. [T]he company ... is, a mere partnership........ The company may been organized under the laws of the State of New York, and may be doing business in that State, and yet all the members of it may not be citizens of that State. The record does | Partnerships and other unincorporated associations, unlike corporations, are not considered "citizens" within meaning of diversity jurisdiction statute; court looks to citizenship of all partners, or members of unincorporated association, to determine whether federal district court has diversity jurisdiction. 28 U.S.C.A. S 1332. | Are partnerships considered to be citizensfor diversity purposes? | Partnership - Memo 249 - RK.docx | LEGALEASE-00018736-LEGALEASE-00018737 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12284 | Ex parte Diamond, 596 So. 2d 423 | 401+5.1 | We will first address the issue of whether the "subject matter" of the action is real estate. If it is, then venue is proper in Montgomery County. "Subject matter," within the meaning of " refers to the nature of the cause of action and of the relief sought.]] Ex parte Pratt, 514 So.2d 947 (Ala.1987); Ex parte Clardy, 460 So.2d 1273 (Ala. An allegation that "one of the parties owns real estate, or has substantial rights in real estate which are dependent upon the settlement of the controversy, is not enough to make real estate the 'subject matter' of the suit." Alabama Youth Services Board v. Ellis, 350 So.2d 405, 408 (Ala.1977). See also Wesson v. Wesson, 514 So.2d 947 (Ala.1987) ("subject matter" was real estate where the nature of the complaint and relief sought involved the determination of the validity of a conveyance of land, which in turn determined title to the property); Clark v. Smith, 191 Ala. 166, 67 So. 1000 (1915) (complaint for partition must be filed in county where part of the land is located). | "Subject matter" within meaning of venue statute for actions where real estate is subject matter refers to nature of cause of action and of relief sought. Code 1975, § 6-3-2. | Does subject matter refer to the nature of the cause of action and the nature of the relief sought? | Venue - Memo 103 - RK.docx | ROSS-003301302-ROSS-003301304 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 12285 | Reed v. City Nat. Bank of Selma, Ala., 406 So. 2d 906 | 401+4 | We cannot agree with Reed's contentions concerning the compulsoriness of his "counterclaim." At the outset, we note that Reed has not asserted a counterclaim against CNB. Reed brought CNB into the action started by Foremost Insurance Company as an additional party. Next, Reed erroneously argues that its conspiracy action becomesa local action by reason of the co-conspirators being indispensable parties pursuant to Rule 19, A.R.C.P. The distinction between local and transitory actions has been observed to be as follows: The test as to whether an action is transitory or local is not, as a general proposition, the subject causing the injury, but the object suffering the injury, or, as the distinction is otherwise stated, it exists in the nature of the subject of the injury and not in the means used or the place at which the cause of action arises. Transitory actions are universally founded on the supposed violation of rights which, in contemplation of law, have no locality. They are personal actions, that is, they are brought for the enforcement of purely personal rights or obligations. If the transaction on which the action is founded could have taken place anywhere, the action is generally regarded as transitory; but if the transaction could only have happened in a particular place, or, as it is sometimes expressed, when the cause of action could only have arisen in a particular place, the action is local. Some authorities, considering the effect of the distinction, define transitory actions as actions which may be tried wherever defendant may be found and served. 92 C.J.S. Venue s 8, at 678-9 (1955) (footnotes omitted). Long ago, this court observed that local actions "are in the nature of suits in rem ... which are to be prosecuted where the thing on which they are founded is situated." First Nat. Bank of Linden v. Alston, 231 Ala. 348 at 350, 165 So. 241 at 242 (1936) (citing Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880); Woolf v. McGaugh, 175 Ala. 299, 57 So. 754 (1911); | "Transitory actions" are universally founded on supposed violation of rights which, in contemplation of law, have no locality and are brought for enforcement of purely personal rights or obligations; if transaction on which action is founded could have taken place anywhere, action is generally regarded as "transitory", but if transaction could only have happened in a particular place, or, when cause of action could only have arisen in particular place, action is "local". | Is an action that can only arise in a particular locality a local action? | Venue - Memo 108 - RK.docx | ROSS-003314748-ROSS-003314750 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12286 | Interstate Transit v. Lindsey, 283 U.S. 183 | 83+63.15 | While a state may not lay a tax on the privilege of engaging in interstate commerce, Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45, it may impose even upon motor vehicles engaged exclusively in interstate commerce a charge, as compensation for the use of the public highways, which is a fair contribution to the cost of constructing and maintaining them and of regulating the traffic thereon. Kane v. New Jersey, 242 U. S. 160, 168, 169, 37 S. Ct. 30, 61 L. Ed. 222; Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199; Sprout v. South Bend, supra, pages 169, 170 of 277 U. S. 48 S. Ct. 502. As such a charge is a direct burden on interstate commerce, the tax cannot be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expense of regulating motor traffic. This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use, Interstate Busses Copr. v. Blodgett, 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551, or by the express allocation of the proceeds of the tax to highway purposes, as in Clark v. Poor, supra,1 or otherwise. Where it is shown that the tax is so imposed, it will be sustained unless the taxpayer shows that it bears no reasonable relation to the privilege of using the highways or is discriminatory. Hendrick v. Maryland, 235 U. S. 610, 612, 35 S. Ct. 140, 59 L. Ed. 385; Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 250-252, 48 S. Ct. 230, 72 L. Ed. 551.Compare Interstate Busses Corp. v. Holyoke Street Ry., 273 U. S. 45, 51, 47 S. Ct. 298, 71 L. Ed. 530. But the mere fact that the tax falls upon one who uses the highway is not enough to give it presumptive validity. | State may impose on motor vehicles engaged exclusively in interstate commerce charge as compensation for use of highways. | Can the State tax the use of highways in interstate commerce? | 018782.docx | LEGALEASE-00129034-LEGALEASE-00129035 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 12287 | Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773 | 25T+141 | A nonsignatory may compel arbitration against a party to an arbitration agreement when that party has entered into a separate contractual relationship with the nonsignatory which incorporates the existing arbitration clause. See Import Export Steel Corp. v. Mississippi Valley Barge Line Co., 351 F.2d 503, 505-506 (2d Cir.1965) (separate agreement with nonsignatory expressly "assum[ing] all the obligations and privileges of [signatory party] under the ... subcharter" constitutes grounds for enforcement of arbitration clause by nonsignatory); Matter of Arbitration Between Keystone Shipping Co. and Texport Oil Co., 782 F.Supp. 28, 31 Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A., 658 F.Supp. 809, 813 (if a "party's arbitration clause is expressly incorporated into a bill of lading, nonsignatories ... who are linked to that bill through general principles of contract law or agency law may be bound"). As the district court noted, E & S has not attempted to show that the Working Agreement was incorporated into any document which Thomson adopted. Thus, Thomson cannot be bound under an incorporation theory. | Nonsignatory may compel arbitration against party to arbitration agreement when that party has entered into separate contractual relationship with nonsignatory which incorporates existing arbitration clause. | When can a nonsignatory compel arbitration against a party to an arbitration agreement? | Alternative Dispute Resolution - Memo 502 - RK.docx | ROSS-003300651-ROSS-003300652 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12288 | In re Van Ingen's Will, 100 N.Y.S.2d 244 | 162+202.10 | Concerning the transfer of the personal bank account from testator to himself and wife on June 1, 1949, I reach a different conclusion. Petitioner admitted that the transfer was one of convenience, which I hold it to have been. Furthermore, if it were not one of convenience, it amounted to a transaction in fraud of creditors. At the time of the transfer and continuously thereafter until his death, testator was insolvent. The transfer resulted in depriving said creditors of some of testator's assets. Petitioner is surcharged the amount of the deposit at the date of death, to wit, $523.67. See Personal Property Law, " 19; Block v. Amsden, 108 Misc. 318, 177 N.Y.S. 604, affirmed 196 App.Div. 915, 187 N.Y.S. 927, affirmed 232 N.Y. 620, 134 N.E. 596; Matter of Weinberg's Estate, 162 Misc. 867, 296 N.Y.S. 7. Petitioner's claim that the outstanding check on said account in the sum of $31.60 should be honored in full against this fund is unsound. The check, being uncashed at testator's death, could not thereafter be honored; but the holder could present his claim against the estate for the amount thereof. Glennan v. Rochester Trust & Safe Deposit Co., 209 N.Y. 12, 102 N.E. 537; Matter of Mason's Estate, 194 Misc. 308, 310, 86 N.Y.S.2d 232, 233. | A check which was uncashed at maker's death could not thereafter be honored, but the holder could present his claim against maker's estate for the amount thereof. | Can a holder present his claim against the maker's estate after the maker's death? | 009377.docx | LEGALEASE-00129173-LEGALEASE-00129174 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 12289 | In re Bakri's Estate, 109 N.Y.S.2d 654 | 8.30E+76 | A check is a mere order upon a bank to pay from the drawer's account, and, until presented and paid, is revocable by the drawer. Aetna National Bank v. Fourth National Bank of City of New York, 46 N.Y. 82, 88; O'Connor v. Mechanics' Bank, 124 N.Y. 324, 331, 26 N.E. 816, 817; Matter of Williamson's Will, 264 App.Div. 615, 616, 35 N.Y.S.2d 1016, 1018; Mitchell v. Security Bank, 85 Misc. 360, 363, 147 N.Y.S. 470, 471. The death of the drawer operates as a revocation or countermanding of the authority of the drawee to make payment. Glenman v. Rochester Trust & S. D. Co., 209 N.Y. 12, 102 N.E. 537, 52 L.R.A.,N.S., 302; Matter of Gibbons' Will, 234 App.Div. 153, 154, 254 N.Y.S. 566, 568. The "checks may not be treated as claims' by the payee against the estate, Matter of Gibbons' Will, supra, but whatever underlying claim or claims the holder may have had against decedent may be asserted against his estate. | Death of drawer of check operates as a revocation or countermanding of authority of drawee to make payment. | Does the death of the drawer operate as a revocation or countermanding of the authority of the drawee to make payment? | 009381.docx | LEGALEASE-00129177-LEGALEASE-00129178 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12290 | Second Nat. Bank of Paintsville v. Meek Appliance Co., 244 S.W.2d 769 | 172H+593 | Stop-payment orders on checks are recognized by statute in Kentucky. KRS 287.405. The stop-payment order may be oral or in writing. Kentucky-Farmers Bank v. Staton, 314 Ky. 313, 235 S.W.2d 767; 9 C.J.S., Banks & Banking, " 344; 7 Am.Jur., Banks, Sec. 605; Sec. 128, Staley Banking Law of Kentucky. The theory upon which the rule rests is the fact of the debtor-creditor relationship between the bank and its customer and that the former has no authority to pay its obligation to its depositor otherwise than as directed by him. The Bank's demurrer admitted the truth of the statements concerning the receipt and acquiescence of the Bank to the stop-payment order involved here. In total disregard of that order the Bank paid the check, and hence was properly adjudged liable for the net loss caused the drawer of the check. | Bank which paid check to payee despite receipt and acquiescence in stop-payment order from drawer was properly adjudged liable for net loss caused to drawer of check. KRS 287.405. | Is a bank liable for payment of a check after receiving a stop payment order? | Bills and Notes - Memo 168 - RK.docx | LEGALEASE-00019088-LEGALEASE-00019089 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 12291 | Duke v. Sun Oil Co., 320 F.2d 853 | 294+21 | We may accept Lessors' contention that in the absence of express agreement, the delivery of a check to the payee is merely a conditional payment which does not become absolute until the check is actually paid by the drawee bank. A check is simply a written order on a bank, executory in nature, instructing the bank to make certain payment, and so far as the payee's rights against the drawee are concerned, this order may be revoked by the drawer at any time before the check is paid or in some manner accepted by the bank on which it is drawn. We are further in agreement with the Lessors' argument that the act of making the check on May 13 and mailing it to Lessors on that date did not at that time have the same legal effect that would result from the act of tendering $25 in currency to each of the two Lessors on May 13. | In absence of express agreement delivery of check to payee is merely conditional payment which does not become absolute until check is actually paid by drawee bank. | When does a check constitute absolute payment? | Bills and Notes - Memo 169 - RK.docx | ROSS-003300100-ROSS-003300101 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 12292 | Baucom v. Friend, 52 A.2d 123 | 8.30E+186 | We believe that the note was free from ambiguity, and hence that the trial court ruled correctly on this phase of the case. "Marginal notations' or memoranda placed on a bill or note at the time of the execution thereof with the intention of making them a part of the contract, constitute a part thereof and must be considered along with the provisions in the body of the instrument in arriving at the true intent of the parties. Bowie v. Hume, 13 App.D.C. 286, 310, 311. When in a note references to the time of payment are made both in the body of the note and by "marginal notation," it is well settled that the two will be construed together, unless the terms are so contradictory as to be irreconcilable. Thus, in cases like the present where the note contains a provision that it is payable on demand and also a provision that it is due on a specified date, the rule is that the note becomes due on the definite date indicated. Under that rule of construction, therefore, the note here in suit was due March 1, 1946, and there was no need for evidence to explain any ambiguity. | References to time of payment, made both in body of note and by marginal notation, will be construed together unless so contradictory as to be irreconcilable. | Are marginal notations on a note construed with the body of the instrument? | Bills and Notes - Memo 170 - RK.docx | LEGALEASE-00019092-LEGALEASE-00019093 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12293 | People v. Woods, 112 Cal. App. 3d 226 | 67+9(0.5) | The trial court here relied on People v. Malcolm, 47 Cal.App.3d 217, 120 Cal.Rptr. 667 (which in turn cited Toomes, supra, 148 Cal.App.2d 465, 306 P.2d 953, Massie, supra, 241 Cal.App.2d 812, 51 Cal.Rptr. 18 and Blalock, supra, 20 Cal.App.3d 1078, 98 Cal.Rptr. 231) to hold, at page 223, 120 Cal.Rptr. 667, that the "mere happenstance" of a broken wind wing latch of an otherwise locked vehicle did not preclude the application of the statute, as for "all intents and purposes the car in question was locked." More recently, Malcolm and its predecessors were summarized as follows: "An essentialelement of burglary of an automobile set forth in Penal Code section 459 is that the vehicle must be locked." (In re Charles G., 95 Cal.App.3d 62, 65, and dissent at p. 68, 156 Cal.Rptr. 832.) The "mere happenstance" that prevented the vehicle from being tightly secured in Malcolm is patently absent in the case at bench. Fontana's uncontroverted testimony indicates his deliberate intent to maintain an aperture of 51/2 inches to prevent any damage to his vehicle and to provide a basis for his testimony. Only an absurd interpretation of the statute would permit such an evasion of the requirement that the entire vehicle be secured insofar as possible.2 We must refrain from a literal interpretation that would result in absurd consequences (People v. Camp, 42 Cal.App.2d 411, 421, 183 P. 845). Thus, we conclude that a reasonable interpretation of the statute where the entry occurs through a window deliberately left open, requires some evidence of forced entry before the prosecution's burden of proof is satisfied. | Reasonable interpretation of statute defining offense of burglary of a vehicle, in a case where entry occurs through window deliberately left open, requires some evidence of forced entry before prosecution's burden of proof is satisfied. West's Ann.Pen.Code, § 459. | Is locking as an essential element of common vehicular burglary? | Burglary - Memo 46 - RK.docx | LEGALEASE-00019106-LEGALEASE-00019107 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 12294 | Blankenship v. Kootenai Cty., 125 Idaho 101 | 79+66 | The administrative judge's duty is to supervise the clerks and bailiffs in their performance of clerical functions performed for the court. I.C. " 1-907. The clerk of the district court is a judicial officer while performing judicial clerical duties for the court. Estep v. Comm'rs of Boundary County, 122 Idaho 345, 834 P.2d 862 (1992); Crooks v. Maynard, 112 Idaho 312, 732 P.2d 281 (1987). While performing clerical judicial functions for the court, the deputy clerks and bailiffs are subject to the control and direction of the administrative court judge. Id., 112 Idaho at 317, 732 P.2d at 286. The destruction of evidence is a clerical function of the court and must be performed by order of the administrative court judge. I.C.A.R. 37. | While performing clerical judicial functions for court, deputy clerks and bailiffs are subject to control and direction of administrative court judge. I.C. § 1-907. | Does an administrative judge have the authority over the assignment and supervision of deputy court clerks? | 013371.docx | LEGALEASE-00129690-LEGALEASE-00129691 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 12295 | Freeman v. Bd. of Educ. of Hempstead Sch. Dist., 205 A.D.2d 38 | 141E+574 | Furthermore, while the burden of obtaining a certificate is the primary responsibility of the teacher (see, Matter of Bd. of Educ. of Schroon Lake Central School Dist., 20 Ed Dept Rep 62), here it appears that the procrastination of the Board was at least partially responsible for any delay in the petitioner obtaining certification to teach health. In a letter dated September 12, 1991, from the New York State Education Department to the Board, the State noted that the petitioner had applied for certification in health and requested that the Board submit the proper application for a temporary license. | School nurse teacher's lack of certification in health did not necessarily preclude her from being appointed to health position, after her position as school nurse teacher was "excessed," even though lack of certification for position sought rendered it not "similar" to position abolished and section of Education Law regarding filling of existing and future vacancies when position is abolished or consolidated without creation of new position neither compelled nor authorized hiring of teacherfor position for which he or she was not certified; teacher was to be certified to teach health upon resolution of dispute regarding employment as health teacher, and thus Board of Education would not have been hiring uncertified teacher, and Board 's procrastination was at least partially responsible for delay in obtaining certification to teach health. McKinney's Education Law § 2510, subd. 3. | Is the burden of obtaining teaching certificate the primary responsibility of a teacher? | 016972.docx | LEGALEASE-00129269-LEGALEASE-00129270 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 12296 | Lombard v. Bd. of Educ. of City of New York, 645 F. Supp. 1574 | 316P+88 | The fact that plaintiff possesses a teaching license does not give him a legitimate claim of entitlement to employment. A license "confers no more than a mere expectancy of employment, and does not confer any claim to a specific position or, for that matter, to any further employment." Matter of Lowenstein, 9 Ed.Dept.Rep. 207, 209 (1970). Under New York law, only teachers who have tenure or de facto tenure have a legitimate claim of entitlement to employment. Longarzo v. Anker, 578 F.2d 469, 471 (2d Cir.1978); Gentile v. Wallen, 562 F.2d 193, 197 n. 5 (2d Cir.1977); Lombard v. Board of Education, 502 F.2d 631, 637 (2d Cir.1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975). Plaintiff was never granted tenure, as his probationary appointment was terminated in 1970, prior to the expiration of his probationary period. | Fact that plaintiff possessed teaching license did not give him legitimate claim of entitlement to employment. | Does possession of a teaching license give a legitimate claim of entitlement to employment? | 016974.docx | LEGALEASE-00129271-LEGALEASE-00129272 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12297 | Gossman v. Gossman, 52 Cal. App. 2d 184 | 388+404(2) | It is sometimes difficult to distinguish between findings of fact and conclusions of law. As pointed out in 24 Cal.Jur. at page 961, and as reiterated in many decisions, "A conclusion of law does not lose its characteristic as such because placed among the findings of fact, and a finding may be regarded as one of fact although mistakenly placed among the conclusions of law." In Levins v. Rovegno, (1886) 71 Cal. 273, at pages 275"276, 12 P. 161, at page 162, is found an able exposition of the distinction between findings of fact and conclusions of law:"The line of demarcation between what are questions of fact and conclusions of law is not one easy to be drawn in all cases. | A "conclusion of law" does not lose its character as such because placed among the findings of fact, and a "finding" may be regarded as "finding of fact" although mistakenly placed among the conclusions of law. | Will a conclusion of law lose its characteristic if placed among the findings of fact? | Pleading - Memo 227 - RMM.docx | ROSS-003287375-ROSS-003287376 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 12298 | Juen v. Juen, 12 Ill. App. 3d 284 | 307A+501 | The terms nonsuit and voluntary dismissal without prejudice are used interchangeably because there is no difference in effect between them. Gilbert v. Langbein (1951), 343 Ill App. 132, 98 N.E.2d 140; Brown v. Lawler (1906), 130Ill. App. 540. | Terms "nonsuit" and "voluntary dismissal without prejudice" are used interchangeably because there is no difference in effect between them. S.H.A. ch. 110, § 52. | "Can the terms ""nonsuit"" and ""voluntary dismissal without prejudice"" be used interchangeably?" | Pretrial Procedure - Memo # 1035 - C - KI.docx | ROSS-003287440-ROSS-003287441 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 12299 | Hartquist v. Tamiami Trail Tours, 139 Fla. 328 | 307A+501 | It is well settled that a plaintiff who institutes a civil action may voluntarily terminate same by dismissal, discontinuance or nonsuit, 17 Am.Jur., Dismissal and Discontinuance, Sec. 4, p. 59, and under certain conditions his right to take a voluntary nonsuit is an absolute one. However, as the name denotes, an involuntary nonsuit is not entered primarily at the instance of plaintiff-it is always necessitated by some adverse ruling, made or about to be made, by the court. Because it is, at times, an absolute right, a voluntary nonsuit cannot be set aside and the plaintiff be required to prosecute same without his consent. But this rule would not inflexibly apply to an involuntary nonsuit. | One instituting civil action may voluntarily terminate it by dismissal, discontinuance, or nonsuit. | "Can a plaintiff instituting a civil action voluntarily terminate it by dismissal, discontinuance, or nonsuit?" | Pretrial Procedure - Memo # 1114 - C - CK.docx | ROSS-003314586-ROSS-003314587 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12300 | Carter v. Clegg, 557 So. 2d 1187 | 307A+501 | When considering whether a dismissal should be granted, the trial court mustconsider the effects the action will have on the defendant and other plaintiffs, if there are any. Moreover, the trial court must assure fairness and protection for those affected by the dismissal. [(Since a dismissal under 41(a) is without prejudice, unless the order states otherwise, a trial court should grant a voluntary dismissal unless some legal prejudice occurs. See, S hepherd, 502 So.2d at 1191; Smith, 477 So.2d at 230. | Trial court should grant voluntary dismissal unless some legal prejudice occurs. Rules Civ.Proc., Rule 41. | Should a trial court grant a voluntary dismissal unless some legal prejudice occurs? | Pretrial Procedure - Memo # 1268 - C - PC.docx | ROSS-003299583-ROSS-003299584 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 12301 | Black Radio Network v. NYNEX Corp., 44 F. Supp. 2d 565 | 317A+114 | The FCA requires that all complaints against carriers for the recovery of damages, which are not based on overcharges, be filed with the FCC within two years after the cause of action accrues. 47 U.S.C. " 415(b). The two-year statute of limitations also applies to actions filed in court instead of with the FCC. E.q., Nordlicht v. New York Tel. Co., 617 F.Supp. 220, 228 (S.D.N.Y.1985), aff'd, 799 F.2d 859 (2d Cir.1986), cert. denied, 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987). Fraudulent concealment tolls the statute of limitations, but only until the plaintiff has notice of a possible claim. Stone v. Williams, 970 F.2d 1043, 1048"49 (2d Cir.1992), cert. denied, 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993); Rosner v. Codata Corp., 917 F.Supp. 1009, 1019 (S.D.N.Y.1996). | Federal Communications Act's (FCA) two-year statute of limitations on complaints against carriers for recovery of damages applies to actions filed either in court or with Federal Communications Commission (FCC). Communications Act of 1934, S 415(b), 47 U.S.C.A. S 415(b). | Should all complaints against carriers for the recovery of damages be filed with the Federal Communications Commission (FCC) within two years after the cause of action accrues? | 042525.docx | LEGALEASE-00129299-LEGALEASE-00129300 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 12302 | Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773 | 25T+141 | In the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate. See Gvozdenovic v. United Air Lines, Inc., 933 F.2d 1100, 1105 (2d Cir.) (flight attendants manifested a clear intention to arbitrate by sending a representative to act on their behalf in arbitration process), cert. denied, 502 U.S. 910, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991); Keystone Shipping, 782 F.Supp. at 31; In re Transrol Navegacao S.A., 782 F.Supp. 848, 851 (S.D.N.Y.1991). While Thomson was aware that the Working Agreement purported to bind it as an "affiliate" of Rediffusion, at no time did Thomson manifest an intention to be bound by that Agreement. In fact, Thomson explicitly disavowed any obligations arising out of the Working Agreement and filed this action seeking a declaration of non-liability under the Agreement. Accordingly, it cannot be said that Thomson assumed the obligation to arbitrate. | In absence of signature, party may be bound by arbitration clause if its subsequent conduct indicates that it is assuming obligation to arbitrate. | Can a party be bound by an arbitration clause in the absence of signature? | 007374.docx | LEGALEASE-00130231-LEGALEASE-00130232 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12303 | Prudential Lines v. Exxon Corp., 704 F.2d 59 | 25T+143 | If a dispute arises under a collateral agreement, arbitration of that dispute cannot be compelled merely based upon the existence of an arbitration clause in the main agreement. Rochdale Village, Inc. v. Public Serv. Employees Union, Local No. 80, 605 F.2d 1290, 1296-97 (2d Cir.1979). For example, in Rochdale, we noted that if a dispute over contract termination was based on the theory that the contract had expired by its own terms, then the dispute was arbitrable because it required an interpretation of the contract's own terms. If, however, the contract had been terminated by a separate, collateral agreement, the dispute over termination would not be arbitrable because it could not reasonably be classified as an issue arising "under" the original contract. | If a dispute arises under a collateral agreement, arbitration of that dispute cannot be compelled merely based upon existence of an arbitration clause in main agreement. 9 U.S.C.A. S 4. | Can disputes arising in a collateral agreement be compelled to arbitration? | 007384.docx | LEGALEASE-00130247-LEGALEASE-00130248 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 12304 | Serrano v. Priest, 5 Cal. 3d 584 | 1.41E+19 | We have held that the word "system," as used in article IX, section 5, implies a "unity of purpose, as well as an entirety of operation; and the direction to the legislature to provide "a" system of common schools means One system, which shall be applicable to all the common schools within the state.' (Kennedy v. Miller (1893) 97 Cal. 429, 432, 32 P. 558, 559.) However, we have never interpreted the constitutional provision to require equal school spending; we have ruled only that the educational system must be uniform in terms of the prescribed course of study and educational progression from grade to grade. (Piper v. Big Pine School Dist. (1924) 193 Cal. 664, 669, 673, 226 P. 926.). | The word "system" as used in constitutional direction to legislature to provide system of common schools means one system which shall be applicable to all common schools within state. West's Ann.Const. art. 9, S 5. | What does the word system implies with respect to a system of common schools? | 017004.docx | LEGALEASE-00129763-LEGALEASE-00129765 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 12305 | Smith v. Reynolds, 54 Conn. App. 381 | 307A+501 | The right of a plaintiff to withdraw his action before a hearing on the merits, as allowed by " 52-80, is absolute and unconditional. Under the law, the effect of a withdrawal, so far as the pendency of the action is concerned, is strictly analogous to that presented after the rendition of a final judgment or the erasure of the case from the docket." (Internal quotation marks omitted.) H.G. Bass Associates, Inc. v.Ethan Allen, Inc., 26 Conn.App. 426, 431, 601 A.2d 1040 (1992). A withdrawal 'does not need the permission of the court for cause shown if a hearing on an issue of fact has not commenced.' Baker v. Cordisco, 37 Conn.App. 515, 521, 657 A.2d 230, cert. denied, 234 Conn. 907, 659 A.2d 1207 (1995). | Statutory right of plaintiff to withdraw action before a hearing on merits is absolute and unconditional. C.G.S.A. S 52-80. | Is a statutory right of plaintiff to withdraw action before a hearing on merits absolute and unconditional? | Pretrial Procedure - Memo # 1255 - C - TM.docx | ROSS-003299578-ROSS-003299579 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12306 | Duffy v. Gross, 121 Colo. 198 | 307A+742.1 | As before stated, on this question there was sharp conflict in the testimony which was resolved against the defendants by the jury. From all of these circumstances, we do not see wherein the defendants were prejudiced by the ruling of the trial court in the pre-trial conference. [(Further discussion of the failure of the court to compel plaintiffs to disclose the specific acts of negligence upon which they relied, and which is the real basis of this assignment of error, is not necessary other than to say that the pre-trial conference rule is designed to expedite trials when certain facts may be admitted and the necessity of proof thereof obviated. The proper courtesy of the profession enables this to be done, usually in a few moments at the beginning of a trial, without pre-trial conference. Usually, obvious facts are admitted, but we see nothing in the rule that is compulsory as to the disclosure of the details of the issues to be made by the pleadings. As to whether or not a pre-trial conference is to be called, rests entirely in the discretion of the trial court and that discretion abides throughout the procedure. | The pre-trial conference rule is designed to expedite trials when certain facts may be admitted and necessity of proof thereof obviated. Rules of Civil Procedure, rule 16. | What is the pre-trial conference rule designed to do? | Pretrial Procedure - Memo # 1349 - C - TJ.docx | ROSS-003301231-ROSS-003301232 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12307 | Hunt v. Griffin, 49 Miss. 742 | 307A+501 | A discontinuance is either voluntary or involuntary. Voluntary, where the plaintiff withdraws his suit; involuntary, where in consequence of some technical omission, mispleading, or the like, the suit is regarded as out of court, as where the parties undertake to refer a suit not referrable, or omit to enter proper continuances. Graham's Practice, 493. | A discontinuance is either voluntary or involuntary,-voluntary, where the plaintiff withdraws his suit; involuntary when, in consequence of some technical omission, mispleading, or the like, the suit is regarded as out of court. | When is a discontinuance either voluntary or involuntary? | Pretrial Procedure - Memo # 1359 - C - SJ.docx | ROSS-003287765-ROSS-003287766 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 12308 | Eddings v. Gillespie, 59 Tenn. 548 | 25T+174 | This has all the appearance of an agreement made outside of the court, to arbitrate the matters in litigation; and which, upon the well-settled rule in such cases, operated as a discontinuance of the suit. | An agreement made out of court to arbitrate matters involved in a suit pending, operates as a discontinuance of the suit. | Does an agreement made out of court to arbitrate matters involved in a suit pending operate as a discontinuance of the suit? | Pretrial Procedure - Memo # 1364 - C - BP.docx | ROSS-003287042-ROSS-003287043 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 12309 | Davidson v. Fornicola, 38 N.J. Super. 365 | 307A+742.1 | It is a primary purpose of the pretrial conference preliminarily to elicit the controversial issues to be litigated, particularly those which would not otherwise be reasonably anticipated. | A primary purpose of pretrial conference is preliminarily to elicit controversial issues to be litigated, particularly those which would not otherwise be reasonably anticipated. | What is the primary purpose of pretrial conference? | Pretrial Procedure - Memo # 1630 - C - NS.docx | ROSS-003314576-ROSS-003314577 | Condensed, SA | 0.06 | 0 | 1 | 0 | 1 | |
| 12310 | Conlen Grain & Mercantile v. Texas Grain Sorghum Producers Bd., 519 S.W.2d 620 | 371+2001 | The refund option available to a producer who has paid the assessment presents a somewhat more difficult question, but we agree with appellants that the essential nature of the assessment is not altered thereby. A tax is a burden or charge imposed by the legislative power of the state upon persons or property to raise money for public purposes. See Clegg v. State, 42 Tex. 605; 1 Cooley on Taxation, 4th ed. 1924, s 1. When the state in the exercise of its power to raise revenue for public purposes exacts an enforced contribution of money to be expended by an agency of the state, the exaction must be regarded as a tax even though the taxpayer may obtain a refund upon request. Provision for refunding assessments to those who comply with refund requirements does not alter the fact that the payments are imposed upon and extracted from producers by governmental authority for a public purpose. The power of the state is used to deprive the producer of money, or the use of his money, for at least the time necessary to process an application for refund. It also appears that the primary purpose of the assessment is to raise revenue. We hold that assessments under Article 55c are taxes | "Tax" is burden or charge imposed by legislative power of state upon persons or property to raise money for public purposes. Vernon's Ann.Civ.St. art. 55c. | Are taxes imposed to raise money? | 044782.docx | LEGALEASE-00130160-LEGALEASE-00130161 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12311 | Newman v. State, 336 Ga. App. 760 | 399+3 | OCGA " 16"11"36(b) offers guidelines that a rational trier of fact may consider while pondering whether a person's conduct gave reasonable alarm, such as "the fact that the person takes flight upon the appearance of a law enforcement officer, refuses to identify himself, or manifestly endeavors to conceal himself or some object." OCGA " 16"11"36(b); Bell v. State, 252 Ga. 267, 271(1), 313 S.E.2d 678 (1984). Furthermore, OCGA " 16"11"36(b) requires that the police officer, if able, must "afford the person an opportunity to dispel any alarm or immediate concern." OCGA " 16"11"36(b). If a rational trier of fact does not think the explanation is sufficient to dispel the police officer's concern, it may find the defendant guilty of loitering. Franklin v. State, 258 Ga.App. 281, 283, 574 S.E.2d 361 (2002). | If a rational trier of fact does not think the explanation given by the person suspected of loitering or prowling, when explaining his presence and conduct to a police officer, is sufficient to dispel the police officer's concern for the safety of persons or property in the vicinity, it may find the defendant guilty of loitering. West's Ga.Code Ann. S 16-11-36(b). | What makes a person guilty of loitering? | 047439.docx | LEGALEASE-00130173-LEGALEASE-00130174 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 12312 | Acevedo v. State, 200 So. 3d 196 | 399+1 | While it is true that the officer had information that the youth had been involved in arguably suspicious behavior (looking into the woman's window while his friend tried the door) some twenty minutes before the officer saw him, the purpose of the loitering and prowling statute is "to punish a certain type of incipient criminal behavior before it ripens into the commission or attempted commission of a substantive criminal act.... The statute is forward-looking rather than backward-looking in nature." Recently, in Madge v. State, 160 So.3d 86 (Fla. 4th DCA 2015), our sister court held that a law enforcement officer's contemporaneous observation of the suspicious conduct was necessary to establish both elements of the offense: First, the officer must observe conduct "not usual for law-abiding citizens." Second, the officer must have "a justifiable or reasonable alarm or immediate concern" of future criminal activity. | The purpose of the statute criminalizing loitering and prowling is to punish a certain type of incipient criminal behavior before it ripens into the commission or attempted commission of a substantive criminal act. West's F.S.A. S 856.021. | What is the purpose of criminalizing loitering? | 047444.docx | LEGALEASE-00130177-LEGALEASE-00130178 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 12313 | Gifford v. Nottingham, 68 Idaho 330 | 413+2084 | Our Workmen's Compensation Act is a remedial and special law providing compensation for injured employees, without reference to any question of negligence, either on the part of the employer or employee. Lebak v. Nelson, 62 Idaho 96 at page 119, 107 P.2d 1054. It is purely statutory and is an express departure and innovation so far as the common law is concerned, explicitly doing away with common law actions previously applicable to controversies within the scope of the statute. Cook v. Massey, 38 Idaho 264 at page 269, 220 P. 1088, 35 A.L.R. 200. This court, commenting on Sec. 43-902, I.C.A. supra, said in Olson v. U. P. R. R. Co., 62 Idaho 423 at page 428, 112 P.2d 1005, 1007, that the legislature abolished every remedy for all injuries (negligent and non-negligent) received by a workman "in course of his employment." | Workmen's Compensation Act is a remedial law providing compensation for injured employees without reference to negligence either on part of employer or employee, explicitly does away with common law actions previously applicable to controversies within the scope of the statute and abolishes every remedy against an employer for all injuries negligent and not negligent received by a workman in course of his employment. I.C.A. S 43-902 et seq. | Is the Workers Compensation Act a remedial statute? | 047786.docx | LEGALEASE-00129929-LEGALEASE-00129930 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 12314 | Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co., 118 F.3d 619 | 25T+143 | We hold that the court misapplied the rule governing whether the arbitration clause applies to Fleet Tire's claim. While the rule established in Wilson prohibits the application of an arbitration agreement to collateral claims, it only does so when the arbitration agreement is narrow. In Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 63 (2d Cir.1983), cited in Wilson, the Second Circuit sets out the two inquiries a court must make in determining whether an arbitration clause applies: (1) whether the clause is broad or narrow; and (2) if the clause is narrow, whether the dispute involves an agreement collateral to the agreement containing the arbitration clause. The district court failed to conduct the first inquiry under Prudential; that is, the court did not determine whether the arbitration clause is broad or narrow. | In determining whether arbitration clause applies, court asks whether clause is broad or narrow, and if clause is narrow, whether dispute involves agreement collateral to agreement containing arbitration clause. | How do courts determine whether an arbitration provision applies? | 007393.docx | LEGALEASE-00131354-LEGALEASE-00131355 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12315 | Pick Quick Food v. United Food & Commercial Workers Local 342, 952 F. Supp. 2d 494 | 231H+1556(7) | In determining whether a dispute should go to the courts or to the arbitrator, the law has offered the following guidance. Where the underlying issue concerns "whether a dispute between the parties is covered by the arbitration agreement, [that] is for the courts to decide." Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 63 (2d Cir.1983). Where a contract contains a broad arbitration clause, however, courts generally hold that "a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the [arbitration] clause." Id. at 64. Indeed, where a broad arbitration clause is in play, a presumption of arbitrability attaches, and " "in the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." " AT & T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (alteration in original) (quoting Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582"85, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). When making its determination as to whether a case should proceed before the court or the arbitrator, "a court must be ever mindful of the strong national policy favoring arbitration of labor disputes." Rochdale Vill., Inc. v. Public Serv. Emp. Union, et al., 605 F.2d 1290, 1294 (2d Cir.1979). | Presumption of arbitrability, which attaches where arbitration clause is broad, is not firmly affixed; rather, party resisting arbitration bears burden of showing that disputed issue should not proceed to arbitration and may do so by showing that express provision in collective bargaining agreement (CBA) excludes particular grievance from arbitration, or by presenting forceful evidence of purpose to exclude claim from arbitration. | Do courts find a presumption of arbitrability in contracts containing broad arbitration provisions? | 007456.docx | LEGALEASE-00131425-LEGALEASE-00131426 | Condensed, Order, SA, Sub | 0.69 | 1 | 1 | 1 | 1 | 1 |
| 12316 | Klingenschmitt v. United States, 119 Fed. Cl. 163 | 34+5(1) | The existence of this comprehensive scheme establishes that Congress did not intend to provide plaintiffs with a private cause of action to enforce their rights under the MWPA in court. Soeken v. United States, 47 Fed.Cl. 430, 433 (2000) (observing that the Act "provides solely an administrative process for handling complaints of improper retaliatory personnel actions"); see also Acquisto v. United States, 70 F.3d 1010, 1011 (8th Cir.1995) (holding that comprehensive administrative scheme signals that Congress did not intend to permit service members to assert a private cause of action in federal court under the MWPA). Instead, to the extent that Dr. Klingenschmitt wished to challenge his removal under the MWPA, he was required to follow the administrative scheme set forth in that Act. Accordingly, the government's motion to dismiss under RCFC 12(b)(1) is GRANTED as to Dr. Klingenschmitt's claims that his removal violated the MWPA. | Military Whistleblower Protection Act (MWPA) does not provide plaintiffs with private cause of action to enforce their rights under the Act in court, but instead plaintiffs must follow the administrative scheme set forth in the Act. 10 U.S.C.A. S 1034(c). | Does the Military Whistleblower Act (MWPA) provide for a private cause of action? | 008421.docx | LEGALEASE-00130276-LEGALEASE-00130278 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 12317 | United States v. Whetzell, 594 F.3d 624 | 67+2 | The guidelines provide for a base offense level of twenty upon a district court's finding that the defendant previously committed a "crime of violence." U.S.S.G. " 2K2.1(a)(4)(A). Appellant's prior crime, the crime of housebreaking, occurs when "[a]ny person subject to [the Uniform Code of Military Justice] ... unlawfully enters the building or structure of another with intent to commit a criminal offense therein...." 10 U.S.C. " 930. Housebreaking is a generic burglary crime because it includes the elements of "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor, 495 U.S. at 599, 110 S.Ct. 2143. We have held that generic burglary, as defined in Taylor, is a crime of violence within the meaning of the guidelines. E.g., United States v. Stymiest, 581 F.3d 759, 769 (8th Cir.2009); LeGrand, 468 F.3d at 1082. Therefore, Appellant's conviction for housebreaking constitutes a prior crime of violence. | Housebreaking is a generic burglary crime because the offense includes the elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime. 10 U.S.C.A. S 930. | Are all the elements of housebreaking included in burglary? | 013180.docx | LEGALEASE-00131319-LEGALEASE-00131320 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 12318 | Stegmaier v. Trammell, 597 F.2d 1027 | 79+6 | While agreeing, in general, with the Finkel court and the commentaries discussed above that a confidential employee may constitutionally be discharged solely upon the basis of political affiliation when he stands in a confidential relationship to a policymaker or the policymaking process, we hold that appellant Stegmaier falls within the confidential employee exception even though the position of Deputy Circuit Clerk does not stand in a confidential relationship to a policymaker or a policymaking process. | Even though, under the Alabama judicial scheme, deputy circuit clerk did not stand in a confidential relationship to a policy maker or to a policy-making process, deputy circuit clerk fell within the "confidential employee" exception to the general proscription of patronage dismissals where, under Alabama statutes, deputy clerks were empowered to conduct all business which the elected clerk was authorized to conduct and where the clerk was statutorily subject to civil liability and fines for failure to perform statutory duties, thus making it necessary for circuit clerk to select a deputy in whom he has total trust and confidence and from whom he can expect undivided loyalty. Code of Ala.1975, SS 12-17-93, 12-17-93(2), 12-17-94, 12-17-94(b). | Can a deputy circuit clerk who is in a confidential relationship to a policymaker be discharged solely upon the basis of political affiliation? | Clerks of court - Memo 120 - RK.docx | LEGALEASE-00020326-LEGALEASE-00020327 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 12319 | Kilhafner v. Harshbarger, 245 Ill. App. 3d 227 | 79+6 | Second, we note that the plaintiff's employment as a deputy clerk reduces her likelihood of success on the merits because the Clerks of Courts Act gives the circuit clerk the power to hire and fire deputies. (Ill.Rev.Stat.1991, ch. 25, par. 9.) Pertinent case law reveals that although the chief judge may exercise general control over the circuit clerk's office and although the county board may control the pay of the deputies, the circuit clerk is the employer of the deputies. (County of Kane v. Carlson (1987), 116 Ill.2d 186, 107 Ill.Dec. 569, 507 N.E.2d 482; Kotche v. County Board (1980), 87 Ill.App.3d 1127, 42 Ill.Dec. 886, 409 N.E.2d 501.) Further, the fact that the statutory provision allowing for creation of the automation fund was placed in the Clerks of Courts Act is significant in that it implies the intention of the legislature to bring the day-to-day functioning of this fund under the control of the circuit clerk. Thus, it also implies the power of the circuit clerk to assign deputies to automation fund tasks as he/she would assign deputies to other tasks in his/her office. We find in the statute's grant of coextensive power over expenditures from the automation fund no legislative intent to confer on the chief judge any power to make staffing decisions with regard to which deputies will be assigned to automation fund tasks. Therefore, we find that the plaintiff has little likelihood of success on the merits of her claim. | Although chief judge may exercise general control over circuit clerk's office, and although county board may control pay of deputy clerks, it is circuit clerk who employs deputies. | Who is the employer of deputy clerks? | 013537.docx | LEGALEASE-00131274-LEGALEASE-00131275 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12320 | Juen v. Juen, 12 Ill. App. 3d 284 | 307A+501 | The terms nonsuit and voluntary dismissal without prejudice are used interchangeably because there is no difference in effect between them. Gilbert v. Langbein (1951), 343 Ill.App. 132, 98 N.E.2d 140; Brown v. Lawler (1906), 130 Ill.App. 540. | Terms "nonsuit" and "voluntary dismissal without prejudice" are used interchangeably because there is no difference in effect between them. S.H.A. ch. 110, S 52. | "Are ""non-suit"" and ""voluntary dismissal without prejudice"" used interchangeably because there is no difference in effect between them?" | 026070.docx | LEGALEASE-00130709-LEGALEASE-00130710 | SA, Sub | 0.31 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12321 | Stubblefield v. Seals, 485 S.W.2d 126 | 307A+501 | It can be taken as an accepted fact, recognized in our decisional law, that in most cases, wherein a plaintiff voluntarily dismisses his cause of action, he does so under some judicial compulsion or professional expediency. Such position does not, ipso facto, make the plaintiff "disobedient" or the act of dismissal improper. | That plaintiff who voluntarily dismisses his cause of action does so under some judicial compulsion or professional expediency does not, ipso facto, make plaintiff "disobedient" or act of dismissal improper. Section 510.130 RSMo 1969, V.A.M.S. | Does a plaintiff who voluntarily dismisses his cause of action do so under some judicial compulsion or professional expediency? | Pretrial Procedure - Memo # 1245 - C - SKG.docx | ROSS-003301175-ROSS-003301176 | Condensed, SA | 0.24 | 0 | 1 | 0 | 1 | |
| 12322 | Fenton v. Thompson, 352 Mo. 199 | 307A+501 | Of course, in the case at bar, the court should not have permitted the filing of the written voluntary nonsuit after submission, nor have dismissed and excused the jury and permitted the dismissal of the cause, but the court did so at the instance and request of plaintiff. "The taking of a nonsuit is essentially the act of the plaintiff rather than of the court, which records and gives sanction to the plaintiff's act." Stith v. J. J. Newberry Co., supra, 336 Mo. 467, 79 S.W.2d 447, 461. Plaintiff has not appealed and does not complain of the action of the court in permitting the nonsuit or of the discharging of the jury. She consented to it and induced the court's action and she may not, therefore, complain of the judgment the law requires in the premises. Appellant (defendant) does not complain of the voluntary dismissal or of the discharge of the jury, but of the judgment entered by the court. | The taking of a nonsuit is essentially the act of the plaintiff rather than of the court, which records and gives sanction to plaintiff's act. V.A.M.S. SS 510.130, 510.150. | Is the taking of a nonsuit an act of a plaintiff or of a court which records and gives sanction to the plaintiff's act? | Pretrial Procedure - Memo # 1278 - C - PC.docx | ROSS-003313030-ROSS-003313032 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 12323 | Herring v. Poritz, 6 Ill. App. 208 | 307A+501 | Blackstone says: "If the plaintiff neglects to deliver a declaration for two terms after defendant appears, or is guilty of other delays or defaults against the rules of law in any subsequent stage of the action, he is adjudged not to follow or pursue his remedy as he ought to do, and thereupon a nonsuit or non prosequitur is entered, and he is said to be non pros'd. A retraxit differs from a nonsuit, in that one is negative and the other positive; the nonsuit is a mere default and neglect of the plaintiff, and therefore he is allowed to begin his suit again upon payment of costs; but a retraxit is an open and voluntary renunciation of his suit in court, and by this he forever loses his action." 3 Com. 296. Bouvier says: "Nonsuit--the name of a judgment given against the plaintiff when he is unable to prove his case, or when he refuses or neglects to proceed to the trial of a cause after it has been put at issue, without determining such issue." 2 Law Dict. 233. He divides these judgments into two classes--the voluntary and involuntary. The former arises from an abandonment of the cause, by the plaintiff absenting himself by failing to answer when called upon to hear the verdict. Jeptha v. Railroad Co. 1 Dutch. N. J. .556 An involuntary nonsuit takes place when the plaintiff, on being called when his cause is before the court for trial, neglects to appear, or when he has given no evidence on which a jury may find a verdict. Pratt v. Hull, 13 Johns. 334. See, also, 7 Bac. Abr. Tit. Nonsuit, 214; 2 Tomlin's Law Dict. same title. | A "nonsuit" is the name of a judgment given against the plaintiff when he is unable to prove his case, or when he refuses or neglects to proceed to the trial of a cause after it has been put at issue, without determining such issue. | What is a nonsuit judgement? | 026440.docx | LEGALEASE-00130420-LEGALEASE-00130421 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 12324 | Trickey v. Superior Court In & For Sacramento Cty., 252 Cal. App. 2d 650 | 307A+747.1 | Code of Civil Procedure section 598 requires that the bifurcation order in a jury case be made "no later than the close of pretrial conference." The conference reaches its close only with the signing and filing of the pretrial conference order. The latter, however, may be modified. Inherent in the rule 216 notion of modification is a possible resumption of the oral discussion. After the order is filed, nothing in the rules prevents a modification which will reopen the oral phase of the conference to accommodate changed circumstances and new information. | Pretrial conference reaches its close only with the signing and filing of the pretrial conference order, and the latter may be modified. Cal. Rules of Court, rule 216. | Does a pre-trial conference reach its close only with the signing and filing of the pre-trial conference order and can the latter be modified? | 026757.docx | LEGALEASE-00130293-LEGALEASE-00130294 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 12325 | 150 Centreville v. Lin Assocs. Architects, PC, 39 Misc. 3d 513 | 307A+331 | A party has a duty to preserve, protect, and safeguard evidence when it has notice that the evidence is relevant to litigation or should have known that the evidence might be relevant to future litigation. See, e.g., VOOM HD Holdings LLC v. EchoStar Satellite, L.L.C., 93 A.D.3d 33, 939 N.Y.S.2d 321 [appellate court found that the destruction of emails for a four-month period, when a "litigation hold" should have been placed on electronically stored information, was, at a minimum, "grossly negligent"], aff'g 2010 WL 8400073, 2010 N.Y. Slip Op. 33759(U); S.B. v. U.B., 38 Misc.3d 487, 953 N.Y.S.2d 831 ["(A) party is responsible for preserving evidence when they are on notice that it may be needed for litigation. [citation omitted].This responsibility to preserve evidence may extend to items that are not in the possession of a party when that party negligently fails to take steps to assure its preservation."] | A party has a duty to preserve, protect, and safeguard evidence when it has notice that the evidence is relevant to litigation or should have known that the evidence might be relevant to future litigation. | Does a party in litigation have an affirmative duty to preserve potentially relevant evidence? | Pretrial Procedure - Memo # 1682 - C - BP.docx | LEGALEASE-00020650-LEGALEASE-00020651 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 12326 | Boydston v. Bd. of Regents for State of Kan., 242 Kan. 94 | 307A+743 | The unsettled and confused status of this case on the day of trial was due in large part to the failure to hold a pretrial conference and file a subsequent pretrial order. Counsel failed to agree on the proposed pretrial order prior to trial. Both counsel and the trial court must share the responsibility for the breakdown in the pretrial procedure and resulting confusion: counsel, for not requesting a pretrial conference or court intervention when the proposed pretrial order could not be agreed to; the trial court, in failing to hold a pretrial conference or in making sure that counsel submitted an agreed-to pretrial order within a reasonable time prior to trial. The primary purposes of a pretrial conference are to reduce, if not eliminate, surprise from the trial and to determine exactly what issues are to be tried and what procedures are to be followed. In Tillotson v. Abbott, 205 Kan. 706, 709, 472 P.2d 240 (1970), this court stated: "The pre-trial conference and the order entered thereon are an important part of the procedural process. They are provided to acquaint each party in advance of trial with the factual contentions of the opposite parties as to matters in dispute. The opportunity for maneuver and surprise during the trial is reduced. As a result of the pre-trial conference all parties are better able to prepare their testimony on the issues to be tried." (Emphasis added.) | Primary purposes of pretrial conference are to reduce, if not eliminate, surprise from trial and to determine exactly what issues are to be tried and what procedures are to be followed. | What is the primary purpose of the pretrial conference? | 026831.docx | LEGALEASE-00130656-LEGALEASE-00130657 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12327 | Livingstone v. Greater Washington Anesthesiology & Pain Consultants, P.C., 187 Md. App. 346 | 307A+749.1 | The Court of Appeals has stated that "[t]he principal function of a scheduling order is to move the case efficiently through the litigation process by setting specific dates or time limits for anticipated litigation events to occur." Dorsey v. Nold, 362 Md. 241, 255, 765 A.2d 79 (2001). In Helman v. Mendelson, 138 Md.App. 29, 47, 769 A.2d 1025, cert. denied, 365 Md. 66, 775 A.2d 1216 (2001), this Court stated that "good faith compliance with scheduling orders is important to the administration of the judicial system and providing all litigants with fair and timely resolution of court disputes." A scheduling order does not "enlarge or constrict the scope of discovery," but rather, it sets "time limits on certain discovery events." Rodriguez v. Clarke, 400 Md. 39, 60, 926 A.2d 736 (2007) (citation omitted) | A scheduling order does not enlarge or constrict the scope of discovery, but rather, it sets time limits on certain discovery events. | Does a scheduling order enlarge or constrict the scope of discovery? | 026847.docx | LEGALEASE-00130859-LEGALEASE-00130860 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12328 | King v. Zimmerman, 266 Mont. 54 | 307A+743 | The purpose of pretrial orders is to prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order. Zimmerman, 854 P.2d at 342. In Zimmerman, under the unique facts present in that case, we held that permitting the introduction of a new factual matter which had never been raised in any of the pleadings, but rather was first raised during trial, would undermine the purposes pretrial orders are intended to serve.Here, however, after reviewing the pretrial order, we find the defendants' arguments without merit. The pretrial order adequately sets forth all of King's contentions as contained in the initial pleadings. Furthermore, no theories were advanced at trial which had not already been well established in the pleadings. There is no basis for the defendants to claim that they were "surprised" by the issues raised and had not been able to prepare for trial. | Purpose of pretrial orders is to prevent surprise, simplify issues, and permit counsel to prepare their case for trial on basis of pretrial orders. | Is the purpose of a pretrial order to clarify and simplify issues to be tried? | 026863.docx | LEGALEASE-00131097-LEGALEASE-00131098 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12329 | Arfor-Brynfield v. Huntsville Mall Assocs., 479 So. 2d 1146 | 307A+745 | The pre-trial procedure established by Rule 16, A.R.Civ.P., is designed to clarify and simplify the issues to be tried. The order resulting is to control the subsequent course of the action. The drafters of the Alabama rule were mindful of the justified criticism that the federal pre-trial procedure had attracted and were committed to avoiding the wasteful and burdensome requirements of the federal pre-trial practice. Thus, the Alabama rule offers a simple procedure for defining and narrowing the issues remaining for trial. The pre-trial order is not written in stone, but it is not without meaning either. See Committee Comment, Rule 16, A.R.Civ.P. Obviously, as it is noted in the comment, pre-trial orders cannot be effective unless the judge has the right to disallow amendments to pleadings filed subsequent to the pre-trial conference, particularly where, as here, the subject matter of the proffered amendment was known to the pleader at the time of the pre-trial conference and was not then offered. | Purpose of pretrial procedure is to clarify and simplify issues to be tried and resulting pretrial order controls subsequent course of action. Rules Civ.Proc., Rule 16. | Does a pretrial order control the subsequent course of the action and trial? | 027049.docx | LEGALEASE-00131219-LEGALEASE-00131220 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 12330 | Clark v. Randalls Food, 317 S.W.3d 351 | 307A+331 | The duty to preserve evidence is not raised unless (a) a party knows or reasonably should know that there is a substantial chance a claim will be filed, and (b) evidence is relevant and material. See Johnson, 106 S.W.3d at 722. | The duty to preserve evidence is not raised unless (1) a party knows or reasonably should know that there is a substantial chance a claim will be filed, and (2) evidence is relevant and material. | When is the duty to preserve evidence not raised? | Pretrial Procedure - Memo # 2157 - C - PC.docx | ROSS-003328596 | Condensed, SA | 0.14 | 0 | 1 | 0 | 1 | |
| 12331 | Town of Tiburon v. Bonander, 180 Cal. App. 4th 1057 | 371+2001 | We begin with an overview of special assessments and Proposition 218, the 1996 initiative that added article XIII D to the California Constitution. The Supreme Court explained the nature of a special assessment in Knox v. City of Orland (1992) 4 Cal.4th 132, 14 Cal.Rptr.2d 159, 841 P.2d 144, a pre-Proposition 218 case. "[A] special assessment is 'levied against real property particularly and directly benefited by a local improvement in order to pay the cost of that improvement.' [Citation.]" (Id. at p. 142, 14 Cal. 159, 841 P.2d 144.) "[T]he essential feature of the special assessment is that the public improvement financed through it confers a special benefit on the property assessed beyond that conferred generally. [Citations.]" (Southern Cal. Rapid Transit Dist. v. Bolen (1992) 1 Cal.4th 654, 661, 3 Cal.Rptr.2d 843, 822 P.2d 875.) A tax is different from a special assessment. Unlike a special assessment, a tax may be levied without regard to whether the property or person subject to the tax receives a particular benefit. (Knox v. City of Orland, supra, 4 Cal.4th at p. 142, 14 Cal.Rptr.2d 159, 841 P.2d 144.). | Unlike a special assessment, a tax may be levied without regard to whether the property or person subject to the tax receives a particular benefit. | Is special assessment similar to tax? | Taxation - Memo # 176 - C - SS.docx | ROSS-003304029-ROSS-003304030 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12332 | NetJets Aviation v. Guillory, 207 Cal. App. 4th 26 | 371+2013 | "Every system of taxation consists of two parts: (1) the elements which enter into the imposition of the tax, and (2) the steps taken for its assessment and collection. The former is a legislative function; the latter is mere machinery, and is delegable to other than governmental agencies. [Citation.] The legislative powers include the selection of the property to be taxed, the determination of the basis for the measurement of the tax, and the definition of the purpose for which the tax shall be levied. [Citation.] On the other hand, powers which are not legislative include the power to value property for taxation pursuant to fixed rules, the power to extend, assess, and collect the taxes, and the power to perform any of the innumerable details of computation, appraisement, and adjustment. [Citation.]" (Gadd v. McGuire (1924) 69 Cal.App. 347, 364"365, 231 P. 754.). | Every system of taxation consists of two parts, which are (1) the elements which enter into the imposition of the tax, and (2) the steps taken for its assessment and collection; the former is a legislative function, while the latter is mere machinery, and is delegable to other than governmental agencies. | What parts does a system of taxation consist of? | 044769.docx | LEGALEASE-00131002-LEGALEASE-00131003 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12333 | Walton v. New York State Dep't of Corr. Servs., 13 N.Y.3d 475 | 238+7(9) | A tax is a charge that a government exacts froma citizen to defray the general costs of government unrelated to any particular benefit received by that citizen (see generally American Ins. Assn. v. Lewis, 50 N.Y.2d 617, 623, 431 N.Y.S.2d 350, 409 N.E.2d 828 [1980] ). Only legislative bodies have the power to impose taxes (see N.Y. Const, art III, " 1). Municipalities and administrative agencies engaged in regulatory activity can assess fees that need not be legislatively authorized as long as " the fees charged [are] reasonably necessary to the accomplishment of the regulatory program" (Suffolk County Bldrs. Assn. v. County of Suffolk, 46 N.Y.2d 613, 619, 415 N.Y.S.2d 821, 389 N.E.2d 133 [1979] ). In the regulatory arena, fees must bear at least "a rough correlation to the expense to which the State is put in administering its licensing procedures or to the benefits those who make the payments receive" (see American Ins. Assn., 50 N.Y.2d at 622, 431 N.Y.S.2d 350, 409 N.E.2d 828; see generally National Cable Television Assn., Inc. v. United States, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 [1974] ). Typically, fees are paid to obtain access to a government service or benefit, such as the fees paid to obtain licenses to practice professions in particular jurisdictions. | Municipalities and administrative agencies engaged in regulatory activity can assess fees that need not be legislatively authorized, as long as fees charged are reasonably necessary to accomplishment of regulatory program. | Is tax a charge that a government exacts from a citizen to defray the general costs of government unrelated to any particular benefit received by that citizen? | Taxation - Memo # 40 - C - CK.docx | ROSS-003300334-ROSS-003300335 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12334 | United States v. Flower, 452 F.2d 80 | 34+2 | To manage the internal operation of an important part of the national military establishment, and in its proprietary military capacity, the federal government, throughout history, has exercised unfettered control over areas dedicated to military purposes. Military regulations must be considered in the light of military necessity, must be geared to meet important and imperative needs of mobilization and national vigilance. There is no time for litigious interruption. Therefore, wide discretion exists in the executive department in both the formation and the application of necessary regulations as well as in their interpretation as what constitutes "for the good of the service". Noyd v. McNamara, 10 Cir., 1967, 378 F.2d 538. | Wide discretion exists in executive department in both formulation and application of military regulations, as well as in their interpretation as to what constitutes "for the good of the service." | Is wide discretion given to the military to decide what constitutes good service? | 008895.docx | LEGALEASE-00132409-LEGALEASE-00132410 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 12335 | Pramer S.C.A. v. Abaplus Int'l Corp., 76 A.D.3d 89 | 13+5 | We disagree with the dissent that the facts of this case fall within the "special facts" doctrine, which holds that absent a fiduciary relationship between parties, there is nonetheless a duty to disclose when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair (see Swersky v. Dreyer & Traub, 219 A.D.2d 321, 327, 643 N.Y.S.2d 33 [1996] ). Plaintiff sufficiently pleaded the elements of the fraudulent scheme, i.e., that Abaplus conferred a benefit on plaintiff's unfaithful employee to influence his conduct to the detriment of plaintiff. We note that the fraud cause of action based on plaintiff's bribery-related allegations arises from the common law of torts (see Sardanis v. Sumitomo Corp., 279 A.D.2d 225, 229"230, 718 N.Y.S.2d 66 [2001]; accord Niagara Mohawk Power Corp. v. Freed, 265 A.D.2d 938, 939"940, 696 N.Y.S.2d 600 [1999] [sustaining a fraud cause of action based on alleged bribery by the plaintiff's employee] ). We adhere to our prior holding in Sardanis that a private right of action is not implied under the commercial bribery provisions of the Penal Law, and the dissent does not disagree with Sardanis on this point but ignores the plain language of Sardanis that such a private right of action does exist under tort law (279 A.D.2d at 229"230, 718 N.Y.S.2d 66). | Private right of action is not implied under the commercial bribery provisions of the Penal Law. | Is a private right of action implied under the commercial bribery provisions of the penal law? | 011150.docx | LEGALEASE-00132212-LEGALEASE-00132213 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12336 | State v. Redmon, 244 N.W.2d 792 | 37+152(2) | Failure to complete the intended public offense does not negate burglary as the statute requires only intent. | Assault and battery is properly classified as general intent crime, while assault with intent to inflict great bodily injury and breaking and entering with intent to commit public offense are specific intent crimes; and this would also be true when inability to formulate the specific intent required for conviction was due to mental state produced by ingestion of drugs. I.C.A. SS 694.1, 708.1. | Does burglary require a public offense? | Burglary - Memo 107 - JS.docx | LEGALEASE-00021468-LEGALEASE-00021469 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 12337 | Wozniak v. Lucutz, 102 Cal. App. 4th 1031 | 307A+742.1 | " "One of the basic purposes of pretrial is to clarify and define the issues, and in that connection to examine the pleadings for necessary amendments. If, as in this case, the question of the sufficiency of a pleading is raised at a pretrial conference it should be resolved before the pretrial order is signed and the case set for trial. Among the ways it may be resolved are: (1) by the voluntary withdrawal as an issue, (2) by directing an appropriate amendment, and continuing the pretrial conference until the pleading issue is resolved, (3) by reformulating the issue at the pretrial conference and setting it forth in the pretrial order, or (4) by a ruling that no issue is raised with respect to the allegations in question." Here, none of the four procedures was followed, for neither was the complaint amended nor was the issue of damages reformed and set forth in the pretrial order. Therefore plaintiff is limited in his recovery to that amount prayed for in his complaint. In the absence of an amendment to conform to proof, the court may not properly award plaintiff damages in excess of the amount of damages which he claims to have sustained." (Meyer Koulish Co. v. Cannon (1963) 213 Cal.App.2d 419, 433"434, 28 Cal.Rptr. 757.) | Among the ways a question about the sufficiency of a complaint may be resolved are: (1) by the voluntary withdrawal as an issue, (2) by directing an appropriate amendment, and continuing the pretrial conference until the pleading issue is resolved, (3) by reformulating the issue at the pretrial conference and setting it forth in the pretrial order, or (4) by a ruling that no issue is raised with respect to the allegations in question. | "If the question of the sufficiency of a pleading is raised at a pretrial conference, when should it be resolved?" | Pretrial Procedure - Memo # 1507 - C - VP.docx | ROSS-003301308-ROSS-003301309 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 12338 | Eilen v. Tappin's, 14 N.J. Super. 162 | 307A+331 | Our new rules concerning discovery and inspection are liberal in spirit and should be accorded a broad construction. Further, when entered, orders for discovery and inspection should be given widest effect. Nevertheless, there must be ultimate boundaries, both in construction of the rule and execution of the order. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). | Rules concerning discovery and inspection are liberal in spirit and should be accorded a broad construction. Rules 3:30-2, 3:34-1. | Are rules concerning discovery and inspection liberal in spirit and should be accorded a broad construction? | 027285.docx | LEGALEASE-00131709-LEGALEASE-00131710 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12339 | In re Advanced Powder Sols., 496 S.W.3d 838 | 307A+331 | A person has a duty to preserve evidence "only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim."Wal"Mart Stores, 106 S.W.3d at 722 (citing Nat'l Tank Co. v. Brotherton, 851 S.W.2d 193, 204 (Tex.1993)). A "substantial chance" of litigation "does not [mean] any particular statistical probability that litigation will occur; rather, it simply means that litigation is more than merely an abstract possibility or unwarranted fear." Nat'l Tank Co., 851 S.W.2d at 204 (citation and internal quotation marks omitted). When a reasonable person would conclude from the severity of an accident or other circumstances that a substantial chance of litigation exists, a duty to preserve evidence arises. Wal"Mart Stores, 106 S.W.3d at 722 (citing Nat'l Tank Co., 851 S.W.2d at 204). | A person has a duty to preserve evidence only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim. | When does the duty to preserve evidence arise? | 027454.docx | LEGALEASE-00132128-LEGALEASE-00132129 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 12340 | MRT v. Vounckx, 299 S.W.3d 500 | 307A+331 | As a foundation for the submission of the spoliation instruction, the party requesting the instruction bears the burden of establishing that the alleged spoliator had a duty to preserve the evidence in question. See id. at 722. Such a duty arises only when a party knows or reasonably should know (1) there is a substantial chance that a claim will be filed and (2) the evidence in the party's possession or control will be material and relevant to that claim. Id. In the case before us, the first prong of the test is satisfied because it is undisputed that IMEC destroyed the backup tapes in question after appellants filed their lawsuit. To establish that IMEC had a duty to preserve, however, appellants still had to demonstrate there was evidence on the backup tapes that was material and relevant to the case. | The duty to preserve evidence arises only when a party knows or reasonably should know (1) there is a substantial chance that a claim will be filed and (2) the evidence in the party's possession or control will be material and relevant to that claim. | When does the duty to preserve evidence arise? | Pretrial Procedure - Memo # 2125 - C - NC.docx | LEGALEASE-00021689-LEGALEASE-00021690 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 12341 | Ideal Mut. Ins. Co. v. Sullivan, 678 S.W.2d 98 | 307A+749.1 | The trial court entered an extensive Order for Pre-Trial Conference which concluded: "[u]pon satisfactory completion of Pre-trial Conference, Court will enter such orders as the case may require for trial or further procedures as indicated." But, the problem for this Court is that no pretrial order was ever entered to reflect what issues were settled at the pretrial conference. Rule 11, Tex.R.Civ.P., requires agreements be in writing or entered of record. Where there has been no compliance with the rule, any agreement, even if made, is unenforceable. Texas Electric Service Company v. Yater, 494 S.W.2d 271 (Tex.Civ.App."El Paso 1973, writ ref'd n.r.e.). | Where there has been no compliance with rule requiring agreements reached at pretrial conferences to be in writing and entered of record, any agreement, even if made, is unenforceable. Vernon's Ann.Texas Rules Civ.Proc., Rule 11. | Should agreements entered at the pretrial conference be in writing or entered of record to be enforceable? | 027552.docx | LEGALEASE-00131769-LEGALEASE-00131770 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 12342 | Cole v. N. Carolina Dep't of Pub. Safety, 800 S.E.2d 708 | 307A+517.1 | Once a voluntary dismissal has been taken pursuant to N.C.G.S. " 1A-1, Rule 41(a)(1), the petitioner has "terminated the action, leaving nothing in dispute[.]"Teague v. Randolph Surgical Assocs., P.A., 129 N.C.App. 766, 773, 501 S.E.2d 382, 387 (1998). In the present case, the original action was commenced on 3 April 2014 when Petitioner filed a petition for contested case hearing. The petition was filed by Petitioner within thirty days of his receipt of the final agency decision in accordance with N.C.G.S. " 126-34.02. Before any decision was reached by OAH, Petitioner dismissed his claim without prejudice pursuant to N.C.G.S. " 1A-1, Rule 41(a)(1). At that time, the original contested case petition had been "terminated," leaving nothing in dispute and nothing for OAH to rule on within 180 days. See Brisson, 351 N.C. at 593, 528 S.E.2d at 570 (noting that "[a] Rule 41(a) dismissal strips the trial court of authority to enter further orders in the case, except" pursuant to Rule 41(d) in instances not relevant here). Petitioner's voluntary dismissal left him "exactly where he ... was before [the contested case petition] was commenced," and allowed Petitioner to recommence his case "within one year after the dismissal, even though the base period ... expired in the interim." Id. (citations omitted). | Once a voluntary dismissal has been taken, the petitioner has terminated the action, leaving nothing in dispute. N.C. R. Civ. P. 41(a)(1). | "Once a voluntary dismissal has been taken, did the petitioner terminate the action leaving nothing in dispute?" | 027564.docx | LEGALEASE-00131860-LEGALEASE-00131861 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 12343 | Antisdel v. Ashby, 279 Va. 42 | 307A+501 | Initially, we find no merit in Antisdel's assertion that the defendants did not timely object to Antisdel's standing to bring a survival action. The defendants' failure to raise that objection in the second nonsuited action does not bar their present objection. A defendant is not limited in a new action to raising only the defenses asserted in a previously nonsuited action, because the new action stands independently of any prior nonsuited action. See Daniels v. Warden, 266 Va. 399, 402, 588 S.E.2d 382, 383 (2003); see also Winchester Homes, Inc. v. Osmose Wood Preserving, Inc., 37 F.3d 1053, 1058 (4th Cir.1994) (applying Code " 8.01-380). | Defendant is not limited in a new action to raising only the defenses asserted in a previously nonsuited action; new action stands independently of any prior nonsuited action. | Does a new action stand independently of any prior nonsuited action? | Pretrial Procedure - Memo # 2215 - C - KA.docx | ROSS-003301409-ROSS-003301410 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 12344 | Life Care Ambulance v. Hosp. Auth. of Gwinnett Cty., 202 Ga. App. 864 | 307A+749.1 | Life Care Ambulance, Inc. (Life Care) sued the Hospital Authority of Gwinnett County (Gwinnett Hospital) seeking damages under three causes of action. First, Life Care alleged that Gwinnett Hospital breached a contract for convalescent ambulance services. Second, in a claim based on quantum meruit in the absence of an express contract, Life Care sought to collect the value of convalescent ambulance services rendered to Gwinnett Hospital. Additionally, Life Care claimed that Gwinnett Hospital tortiously interfered with the sale of the ambulance business to third parties. The trial court granted summary judgment in favor of Gwinnett Hospital as to all three causes of action, and Life Care appeals claiming various factual issues preclude summary judgment. Although the trial court's order grants summary judgment with respect to the three counts of the complaint in which the three causes of action were set forth, all three causes of action were subsequently embodied in the pretrial order (which recited the pending motion for summary judgment) entered prior to the grant of summary judgment. Since the pretrial order supersedes the pleadings and controls the subsequent scope and course of the action, the effect of the order granting summary judgment was to eliminate these claims from the existing pretrial order. Jacobsen v. Muller, 181 Ga.App. 382, 384, 352 S.E.2d 604 (1986). | Pretrial order supersedes pleadings and controls subsequent scope and course of action. | Does a pretrial order supersede the pleadings and controls the subsequent scope and course of the action? | 027650.docx | LEGALEASE-00132336-LEGALEASE-00132337 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12345 | Wickman v. Opper, 188 Cal. App. 2d 129 | 307A+749.1 | The defendant also contends that the trial court was not authorized to permit the filing of an amendment to the complaint after the pretrial order. In this case, the pretrial order settled the issues as of its date. However, such order did not foreclose the trial court from thereafter permitting an amendment of the pleadings. Rocky Mountain Export Co. v. Colquitt, 179 Cal.App.2d 204, 3 Cal.Rptr. 512; Atkins v. Atkins, 177 Cal.App.2d 207, 211, 2 Cal.Rptr. 104. Although a pretrial order determines the issues to be tried, it may be modified at or before the trial. Rule 8.8, Rules of Superior Courts; Crowell v. Braly, 169 Cal.App.2d 352, 355"356, 337 P.2d 211. An amendment to a pleading raising new issues would constitute such a modification. | Pretrial order did not foreclose trial court from thereafter permitting amendment of pleadings. West's Ann.Superior Court Rules, rule 8.8. | Does a pretrial order foreclose a trial court from thereafter permitting an amendment of the pleadings? | 027687.docx | LEGALEASE-00132366-LEGALEASE-00132367 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12346 | Escude ex rel. Escude v. King Cty. Pub. Hosp. Dist. No. 2, 117 Wash. App. 183 | 307A+502 | A trial court's discretion under CR 41(a)(4) to order dismissal with prejudice should only be exercised in limited circumstances where dismissal without prejudice would be pointless. That was the case in the three cases here. In each case, the trial court dismissed a number of claims with prejudice after a plaintiff moved for a voluntary dismissal pursuant to CR 41(a)(1)(B). Therefore, these three cases are consolidated for the purpose of issuing one opinion. | Upon a motion for voluntary dismissal of a claim, the trial court's discretion to order dismissal with prejudice should only be exercised in limited circumstances where dismissal without prejudice would be pointless. CR 41(a)(4). | Will a court enter a dismissal with prejudice only if a dismissal without prejudice would be pointless? | Pretrial Procedure - Memo # 2334 - C - KG.docx | ROSS-003328676 | Order, SA | 0.51 | 1 | 0 | 0 | 1 | |
| 12347 | Gogri v. Jack In The Box Inc., 166 Cal. App. 4th 255 | 307A+517.1 | Code of Civil Procedure section 5813 allows a plaintiff to voluntarily dismiss, with or without prejudice, all or any part of an action before the "actual commencement of trial." (" 581, subds. (b)(1), (c).)4 The California Supreme Court stated: "Apart from certain ... statutory exceptions, a plaintiff's right to a voluntary dismissal [before commencement of trial pursuant to section 581] appears to be absolute. [Citation.] Upon the proper exercise of that right, a trial court would thereafter lack jurisdiction to enter further orders in the dismissed action."5 (Wells v. Marina City Properties, Inc. (1981) 29 Cal.3d 781, 784, 176 Cal.Rptr. 104, 632 P.2d 217 (Wells ).) Alternatively stated, voluntary dismissal of an entire action deprives the court of both subject matter and personal jurisdiction in that case, except for the limited purpose of awarding costs and statutory attorney fees. (Shapell Industries, Inc. v. Superior Court (2005) 132 Cal.App.4th 1101, 1108, 34 Cal.Rptr.3d 149 (Shapell ); Harris v. Billings (1993) 16 Cal.App.4th 1396, 1405, 20 Cal.Rptr.2d 718 (Harris ).) "An order by a court lacking subject matter jurisdiction is void. [Citation.]" (Kyle v. Carmon (1999) 71 Cal.App.4th 901, 909, 84 Cal.Rptr.2d 303 (Kyle ).) "A section 581 dismissal "is available to [a] plaintiff as a matter of right and is accomplished by filing with the clerk a written request therefor. If in proper form, the dismissal is effective immediately." [Citation.]" (S.B. Beach Properties v. Berti (2006) 39 Cal.4th 374, 380, 46 Cal.Rptr.3d 380, 138 P.3d 713.) | If a plaintiff's written request for voluntary dismissal is in proper form, the dismissal is effective immediately. West's Ann.Cal.C.C.P. S 581. | "If a plaintiff's written request for voluntary dismissal is in proper form, is the dismissal effective immediately?" | 027840.docx | LEGALEASE-00131983-LEGALEASE-00131984 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 12348 | Bank of Am., N.A. v. Mitchell, 204 Cal. App. 4th 1199 | 307A+506.1 | Pursuant to section 581, a plaintiff may voluntarily dismiss an action, "with or without prejudice," at any time before the "actual commencement of trial." (" 581, subds. (b)(1), (c).) Further, a plaintiff may voluntarily dismiss an action with prejudice "at any time before the submission of the cause." (Estate of Somers (1947) 82 Cal.App.2d 757, 759, 187 P.2d 433.) Upon the proper exercise of the right of voluntary dismissal, a trial court " 'would thereafter lack jurisdiction to enter further orders in the dismissed action.' (Wells v. Marina City Properties, Inc. (1981) 29 Cal.3d 781, 784 [176 Cal.Rptr. 104, 632 P.2d 217].) Alternatively stated, voluntary dismissal of an entire action deprives the court of both subject matter and personal jurisdiction in that case, except for the limited purpose of awarding costs and ... attorney fees. [Citations.]' (Gogri v. Jack in the Box, Inc. (2008) 166 Cal.App.4th 255, 261 [82 Cal.Rptr.3d 629].)" (Lewis C. Nelson & Sons, Inc. v. Lynx Iron Corp. (2009) 174 Cal.App.4th 67, 76, 94 Cal.Rptr.3d 468.). | A plaintiff may voluntarily dismiss an action with prejudice at any time before the submission of the cause. West's Ann.Cal.C.C.P. S 581. | Can a plaintiff voluntarily dismiss an action with prejudice at any time before the submission of the cause? | Pretrial Procedure - Memo # 2396 - C - KS.docx | ROSS-003301505-ROSS-003301506 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12349 | Gallagher v. Fiderion Grp., 300 Ga. App. 434 | 307A+517.1 | A voluntary dismissal under OCGA " 9"11"41(a) is a matter of right and terminates the action." (Punctuation omitted.) Southwest Health & Wellness, LLC v. Work. See Mitchell v. Wyatt ("[s]uch a voluntary dismissal terminates the action"). Because the Civil Practice Act "makes no provision for the reinstatement of an action after dismissal as distinguished from a recommencement," (punctuation omitted) Southwest Health, supra, 282 Ga.App. at 622(1)(b), 639 S.E.2d 570, a trial court has no power to order reinstatement of the action after it has been voluntarily dismissed. Smith v. Mem. Med. Center. Indeed, the effect of a dismissal is so complete that "[a] suit dismissed without prejudice pursuant to OCGA " 9"11"41 leaves the situation the same as if the suit had never been brought in the first place." (Punctuation omitted.) Id. See Matthews v. Riviera Equip. Thus, it "operate[s] to divest the court of jurisdiction, after which the trial court [has] no authority to enter" additional orders, Lotman v. Adamson Contracting,6 with the possible exception of OCGA " 9"15"14 awards, which are not at issue here. See Harris v. Werner.7 See generally Lakes v. Marriott Corp.8 ("the dismissal deprived the trial court of jurisdiction over the case and left the parties in the same position as if the suit had never been filed"); Mem. Med. Center, supra, 208 Ga.App. at 28(1), 430 S.E.2d 57 ("Smith's voluntary dismissal operated to divest the court of jurisdiction"). | Effect of a voluntary dismissal of an action is so complete that situation is the same as if the action had never been brought in the first place. | Is the effect of a voluntary dismissal of an action so complete that situation is the same as if the action had never been brought in the first place? | 028094.docx | LEGALEASE-00132250-LEGALEASE-00132251 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 12350 | Hodge v. Johnson, 852 N.E.2d 650 | 307A+517.1 | Because the trial rules do not address voluntary dismissals by a plaintiff proceeding before a medical review panel, the common law governs. Ilagan v. McAbee, 634 N.E.2d 827, 829 (Ind.Ct.App.1994). Under the common law, a plaintiff has a right to dismiss an action at any time before verdict. Id. Where an action is voluntarily dismissed without prejudice the situation is as though no action had been brought. Id. An open and voluntary renunciation by a plaintiff of his suit, a retraxit, operates as a dismissal with prejudice. Id. | An open and voluntary renunciation by a plaintiff of his suit, a "retraxit," operates as a dismissal with prejudice. | "An open and voluntary renunciation by a plaintiff of his suit, does a ""retraxit,"" operate as a dismissal with prejudice?" | 028421.docx | LEGALEASE-00132176-LEGALEASE-00132177 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12351 | Citizens' Util. Ratepayer Bd. v. State Corp. Comm'n of the State of Kan., 24 Kan. App. 2d 222 | 371+2001 | CMT argues that the KUSF contribution assessed on its intrastate revenues is a tax and there is no constitutional authorization for the legislature to delegate its taxing authority to the KCC. A "tax" is a forced contribution to raise revenue for the maintenance of governmental services offered to the general public. Executive Aircraft Consulting, Inc. v. City of Newton, 252 Kan. 421, 427, 845 P.2d 57 (1993). The KUSF is not for the benefit of the general public. The monies from the KUSF are to be distributed only to certain qualifying members of the telecommunications industry. K.S.A.1996 Supp. 66"2008(c). We conclude the KUSF assessment is not a tax. | "Tax" is forced contribution to raise revenue for maintenance of governmental services offered to the general public. | "Is ""tax"" used for the maintenance of governmental services offered to the general public?" | Taxation - Memo # 128 - C - CK.docx | ROSS-003286795-ROSS-003286796 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12352 | Nw. Fire Dist. v. U.S. Home of Arizona Const. Co., 213 Ariz. 489 | 371+2001 | The entity that imposed the assessment here, the fire district, is not the legislature or the electorate but, rather, a quasi-municipal agency enabled by the legislature to perform a specific function. See Cal. Portland Cement Co. v. Picture Rocks Fire Dist., 143 Ariz. 170, 174, 692 P.2d 1019, 1023 (App.1984) (fire districts are quasi-municipal corporations). This factor weighs in favor of characterizing the assessment as a fee. See Jachimek v. State, 205 Ariz. 632, 74 P.3d 944, 948 (App.2003) (that assessment not imposed by legislature but by city or other regulatory agency of state suggests assessment is fee rather than tax). Moreover, an "assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." Bidart Bros., 73 F.3d at 931. The District has imposed the assessment on parcels of property upon which houses are being constructed within its jurisdiction, a narrow, specifically defined class. See Jachimek, 205 Ariz. 632, 74 P.3d at 948 (that assessment was only imposed on pawnbrokers suggested it was fee rather than tax). | Assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class. | s an assessment imposed upon a broad class of parties more likely to be a tax than an assessment imposed upon a narrow class? | Taxation - Memo # 214 - C - KI.docx | LEGALEASE-00022120-LEGALEASE-00022121 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12353 | Pub. Advocate & Consumers Educ. & Protective Ass'n v. City of Philadelphia, 662 A.2d 686 | 371+2001 | Second, as noted by the Third Circuit in Appelmans, the Pennsylvania Supreme Court held in Shirk v. Lancaster, 313 Pa. 158, 169 A. 557 (1933), that a municipal utility is legally entitled to a fair return including a reasonable profit on its investment in its water system and that the purpose for which profits are used is within the sound discretion of the municipal authorities. This Court has held that an imposition of charges in lieu of tax on its customers is unlawful. See, e.g., Public Advocate v. PGC; Association of Community Organizations for Reform Now v. Guarino, 99 Pa.Commonwealth Ct. 93, 512 A.2d 1312 (1986), petition for allowance of appeal denied, 514 Pa. 636, 522 A.2d 1106 (1987). A necessary predicate to the finding of an unlawful tax is a direct taking of customer funds. See, e.g., Public Advocate v. PGC. Therefore, we need not consider whether the transfer, in this case, constituted an unlawful tax unless the customers have a property interest in or entitlement to the transferred funds. The assumption (even if valid) that customers have a property interest in funds acquired from them in the form of rates does not lead to the conclusion that customers have a similar interest in excess interest on invested monies in a sinking fund reserve. Appelmans. | Necessary predicate to finding of unlawful tax is direct taking of customer funds. | "Is direct taking of customer funds, a necessary predicate to finding of unlawful tax?" | 044873.docx | LEGALEASE-00131875-LEGALEASE-00131876 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 12354 | German v. Com., 410 Mass. 445 | 371+2001 | The Justices have defined a tax as "a revenue-raising exaction imposed through generally applicable rates to defray public expense." Opinion of the Justices, 393 Mass. 1209, 1216, 471 N.E.2d 1266 (1984). When the characterization of a monetary exaction is in doubt, "the intention of the Legislature, as it may be expressed in part through its characterization ... deserves judicial respect, and especially so where the constitutionality of the exaction depends on its proper characterization." Emerson College v. Boston, 391 Mass. 415, 424, 462 N.E.2d 1098 (1984), quoting Associated Indus. of Mass., Inc. v. Commissioner of Revenue, 378 Mass. 657, 667-668, 393 N.E.2d 812 (1979). In the final analysis, however, the nature of a monetary exaction will be decided by studying its operation rather than how it has been characterized by the Legislature. Emerson, supra 391 Mass. at 424, 462 N.E.2d 1098. | "Tax" is revenue-raising exaction imposed through generally applicable rates to defray public expense; nature of monetary exaction will be decided by studying its operation rather than how it has been characterized by legislature. | Will the nature of monetary exaction be decided by studying its operation rather than how it has been characterized by legislature? | Taxation - Memo # 305 - C - CK.docx | ROSS-003287769-ROSS-003287770 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 12355 | Chicago & N. W. Transp. Co. v. Webster Cty. Bd. of Sup'rs, 880 F. Supp. 1290 | 371+2001 | Certain levies are not "taxes" raising revenues for public benefit when they are charges for use of public facilities. Courts, and it should be added, legislatures, regularly exclude from the definition of "taxes," or at least from the prohibition of anti-tax laws, charges for use of public facilities. In Northwest Airlines, Inc. v. County of Kent, Mich., 510 U.S. 355, 114 S.Ct. 855, 127 L.Ed.2d 183 (1994), the Supreme Court considered whether user fees imposed by a public airport violated the federal Anti-Head Tax Act (AHTA), 49 U.S.C. " 1513. The provisions of the AHTA in question prohibited States and their subdivisions from levying a "fee" or "other charge" "directly or indirectly" on "persons traveling in air commerce or on the carriage of persons traveling in air commerce." Northwest Airlines, 510 US. at , at 862 (citing 49 U.S.C. " 1513(a)). | Levies raising revenues for public benefit are not "taxes" when they are charges for use of public facilities. | Are levies that are charges for use of public facilities considered taxes raising revenues for public benefit? | Taxation - Memo # 317 - C - KI.docx | ROSS-003301965-ROSS-003301966 | Order, SA, Sub | 0.87 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12356 | Sellers v. Daniel Const. Co., 285 S.C. 484 | 413+1 | Section " 42-9-100 was, before its repeal, an effective part of every employment contract governed by the Worker's Compensation Act. While it existed, the statute operated to limit the total amount of compensation to be paid to an injured employee. The statute was controlling on the date of the employee's injury, but was repealed prior to the Commissioner's award of total disability benefits. The Worker's Compensation Act is concerned with substantive rights and liabilities of the employee and employer. Hamilton v. Daniel Intern. Corp., 273 S.C. 409, 257 S.E.2d 157 (1979). The employee's right to compensation benefits accrued on the date of his injury. The liability of the employer and the rights of the worker were limited to the maximum amount under the law existing on that date. An amendment to the Act subsequent to the injury does not operate to deprive either party of substantive rights fixed as of the date of injury. The date of the Commissioner's final award is of no consequence. We quote with approval the language of Grigsby v. Industrial Commission, 76 Ill.2d 528, 31 Ill.Dec. 796, 394 N.E.2d 1173 (1979): The law in effect at the time of the injury governs the rights of the parties and not the law effective at the time the award is made ... | Worker's Compensation Act is concerned with substantive rights and liabilities of employee and employer. Code 1976, S 42-1-10 et seq. | Is the Workers Compensation Act concerned with the substantive rights and liabilities of the employee and employer? | 047758.docx | LEGALEASE-00131897-LEGALEASE-00131898 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 12357 | United States v. Buenrostro, 781 F.3d 864 | 63+1(1) | The $5,000 element of " 666 pertains to "the subject matter of the bribe," which "must be valued at $5,000 or more." United States v. Robinson, 663 F.3d 265, 271 (7th Cir.2011). In other words, the " "business' or "transaction" sought to be influenced must have a value of $5,000 or more." Id., quoting 18 U.S.C. " 666(a)(2). In this case the business or transaction sought to be influenced"the subject matter of the bribe"was the fictional pharmaceutical dispensing contract. | The $5,000 element of federal bribery statute pertains to subject matter of bribe, which must be valued at $5,000 or more; in other words, the business or transaction sought to be influenced must have a value of $5,000 or more. 18 U.S.C.A. S 666(a)(2). | "What does the $5,000 element of the offense of bribery pertain to?" | 011334.docx | LEGALEASE-00133517-LEGALEASE-00133518 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 12358 | State v. Gora, 148 N.J. Super. 582 | 63+1(1) | "At common law, the money or other thing of value must be taken under color of office. That is, The service rendered, or to be rendered, Or pretended to have been rendered, must be apparently, or pretended to be, within official power or authority, and the money must be taken in such an apparent or claimed capacity." (Italics added) (State v. Weleck, supra, 10 N.J. at 372, 91 A.2d at 759.) | A conviction under statute making it a misdemeanor for a judge, magistrate or public officer to receive or take, by color of his office, any fee or reward not allowed by law for performing his duties will be sustained if the proofs show that the services rendered, or to be rendered, or even pretended to be rendered, were "apparently, or pretended to be, within official power or authority, and the money must be taken in such an apparent or claimed capacity"; it is not necessary that there be actual power or authority reposed in defendant to render such services. N.J.S.A. 2A:105-1. | What is the definition of under color of office for purposes of bribery? | 011440.docx | LEGALEASE-00132994-LEGALEASE-00132995 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 12359 | Putnam v. Shoaf, 620 S.W.2d 510 | 289+559 | First, we must discover the nature of the ownership interest of Mrs. Putnam in that which she conveyed. Under the Uniform Partnership Act, T.C.A. s 61-1-101 through s 61-1-142, et seq., her partnership property rights consisted of her (1) rights in specific partnership property, (2) interest in the partnership and (3) right to participate in management. T.C.A. s 61-1-123. The right in "specific partnership property" is the partnership tenancy possessory right of equal use or possession by partners for partnership purposes. This possessory right is incident to the partnership and the possessory right does not exist absent the partnership. The possessory right is not the partner's "interest " in the assets of the partnership. T.C.A. s 61-1-124. The real interest of a partner, as opposed to that incidental possessory right before discussed, is the partner's interest in the partnership which is defined as "his share of the profits and surplus and the same is personal property." T.C.A. s 61-1-125. Therefore, a co-partner owns no personal specific interest in any specific property or asset of the partnership. The partnership owns the property or the asset. T.C.A. s 61-1-107. The partner's interest is an undivided interest, as a co-tenant in all partnership property. T.C.A. s 61-1-124. That interest is the partner's pro rata share of the net value or deficit of the partnership. T.C.A. s 61-1-125. For this reason a conveyance of partnership property held in the name of the partnership is made in the name of the partnership and not as a conveyance of the individual interests of the partners. See T.C.A. s 61-1-107. | An individual's right in specific partnership property is the partnership tenancy possessory right of equal use or possession by partners for partnership purposes; that possessory right is incident to the partnership and the possessory right does not exist in the absence of the partnership; the possessory right is not the partner's interest in the assets of the partnership as the real interest of the partner is his share of the profits and surplus. T.C.A. SS 61-1-123 to 61-1-125. | Does each partner have equal right to possess partnership property for partnership purpose? | 022084.docx | LEGALEASE-00133482-LEGALEASE-00133483 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 12360 | Outlet Co. v. Wade, 377 So.2d 722 | 289+1110 | This may be taken to mean that a limited partnership may exist in Florida without strict compliance with the statute although the limited partnership was not recognized at common law. Such was the situation in the case at bar. | Under limited partnership statute providing that rule that statutes in derogation of common law are to be strictly construed shall have no application to limited partner statutes, limited partnership may exist in Florida without strict compliance with statute although limited partnership was not recognized at common law. West's F.S.A. S 620.28. | Are limited partnerships recognized at common law? | 022100.docx | LEGALEASE-00133501-LEGALEASE-00133502 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 12361 | In re Saunders, 155 B.R. 405 | 289+559 | Because the Property is a partnership asset, the Debtor, as a member of the partnership, could not unilaterally grant an interest in it. Property belonging to a partnership does not belong to the partner as his separate property, see Hogan v. Hogan, 234 Ark. 383, 352 S.W.2d 184, 187 (1962), nor is it assignable by a single partner, except in connection with the assignment of the rights of all the partners in the same property. TUPA " 25. Although a member of a partnership owns an interest in the partnership thereby owns an interest in its property, the partner does not hold title to any specific property belonging to the partnership. Littleton v. Littleton, 341 S.W.2d 484, 488 (Tex.Civ.App."Houston 1961, writ ref'd n.r.e.). Therefore, the Debtor could not unilaterally grant a security interest in the Property and the Rents themselves, as those are HPM partnership assets. TUPA " 27 (partner can grant lien against his partnership interest, in particular, in his rights to receive profits and surplus.); TUPA " 26 (partner's interest is personal property, and is not an interest in the specific property of the partnership). | Although member of partnership owns interest in partnership and thereby owns interest in its property, partner does not hold title to any specific property belonging to partnership, and therefore cannot unilaterally grant security interest in partnership property. Vernon's Ann.Texas Civ.St. art. 6132b, SS 25-27. | Does a member of a partnership hold title to any specific partnership property? | 022108.docx | LEGALEASE-00133509-LEGALEASE-00133510 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 12362 | Rose v. Summers, Compton, Wells & Hamburg, P.C., 887 S.W.2d 683 | 46H+627 | This is an issue of first impression for Missouri courts. We hold that an attorney representing a limited partnership owes a duty of loyalty to the limited partnership as an organization and not to the limited partners as individuals. | Attorney representing limited partnership owes duty of loyalty to limited partnership as organization and not to limited partners as individuals. | Does the duty of loyalty owed by an attorney to a limited partnership extend to the individual partners? | Partnership - Memo 278 - RK.docx | ROSS-003289397-ROSS-003289398 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12363 | In re Palilla, 493 B.R. 248 | 289+674(4) | As to vicarious liability, the Colorado Uniform Partnership Act provides that a partnership is liable for any loss or injury caused "as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership." Colo.Rev.Stat. " 7"64"305(1). The Act also contains a specific provision concerning misappropriated funds:If, in the course of the partnership's business or while acting with authority of the partnership, a partner receives or causes the partnership to receive money or property of a person not a partner, and the money or property is misapplied by a partner, the partnership is liable for the loss. Colo.Rev.Stat. " 7"64"305(2). This provision "imposes strict liability on the partnership for the misapplication of money or property received by a partner in the course of the partnership's business or otherwise within the scope of the partner's actual authority." Unif. Partnership Act " 305 (1997) cmt. to " 305(b). Partners are jointly and severally liable for all partnership obligations. Colo.Rev.Stat. " 7"64"306(1). Thus, a partner may be held liable for another partner's embezzlement of funds, despite the fact that the innocent partner had no knowledge of or participation in the guilty partner's activities. See SIPC v. Murphy (In re Selheimer & Co.), 319 B.R. 395, 406 (Bankr.E.D.Pa.2005) (holding partnership liable for partner's embezzlement of client funds); Official Comm. of Unsecured Creditors v. Ganz (In re Summit Airlines, Inc.), 160 B.R. 911 (Bankr. E.D.Pa. 1993) (same). | Under Colorado law, partner may be liable for another partner's embezzlement of funds, despite fact that innocent partner had no knowledge of or participation in guilty partner's activities. Colo. Rev. Stat. Ann. SS 7-64-305(2), 7-64-306(1). | Can a partner be held liable for the embezzlement of client funds by another partner? | 022139.docx | LEGALEASE-00133545-LEGALEASE-00133546 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 12364 | Soley v. VanKeppel, 656 N.E.2d 508 | 289+429 | A contract, whether express or implied, is essential to the formation of a partnership. Hansford v. Maplewood Station Bus. Park (1993), Ind.App., 621 N.E.2d 347, 350, reh. denied. Where a person is to share in the profits of a business, it is evidence that he is a partner in the business regardless of whether he actually receives any profits. Id. Lack of daily involvement by one partner is not per se indicative of an absence of a partnership. Johnson v. Wiley (1993), Ind.App., 613 N.E.2d 446, 451. | Lack of daily involvement by one partner is not per se indicative of absence of partnership. West's A.I.C. 23-4-1-7. | Is the lack of daily involvement by one partner per se indicative of an absence of a partnership? | Partnership - Memo 291 - RK.docx | LEGALEASE-00022581-LEGALEASE-00022582 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 12365 | Taylor v. Washington Hosp. Ctr., 407 A.2d 585 | 307A+747.1 | Thus the parties' pretrial statements are incorporated into an order which narrows the issues in order to simplify the trial. See generally 3 Moore's, Supra, P 16.01 Et seq.; Handbook for Effective Pretrial Procedure, 37 F.R.D. 255, 263-73 (1964); Proceedings of the Seminar on Procedures for Effective Judicial Administration, 29 F.R.D. 191, 315-426, 454-61 (1961). The existing pretrial procedures contemplate that fair disclosure will be made to remove cases from the realm of surprise, and both parties generally are bound by the pretrial order. All Weather Storm Windows, Inc. v. Zahn, D.C.Mun.App., 112 A.2d 496, 497 (1955). Whether to allow a party to go beyond the bounds of the pretrial order in its trial presentation is a matter left to the court's discretion to be exercised in light of Rule 16's language authorizing modification in the proper case "to prevent manifest injustice." See Manes v. Dowling, D.C.App., 375 A.2d 221, 224 (1977); Town Center Management Corp. v. Chavez, D.C.App., 373 A.2d 238, 243-44 (1977); Clarke v. District of Columbia, D.C.App., 311 A.2d 508, 511 (1973); Redding v. Capital Cab Co., D.C.App., 284 A.2d 54, 55 (1971); Manbeck v. Ostrowski, 128 U.S.App.D.C. 1, 6, 384 F.2d 970, 975 (1967), Cert. denied, 390 U.S. 966, 88 S.Ct. 1077, 19 L.Ed.2d 1170 (1968). See generally, Note, Federal Pre-Trial Practice: A Study of Modification and Sanctions, 51 Geo.L.J. 309 (1963). | Parties' pretrial statements are incorporated into an order which narrows the issues in order to simplify the trial. D.C.C.E. SCR, Civil Rule 16. | Are parties' pretrial statements incorporated into an order which narrows the issues in order to simplify the trial? | 027089.docx | LEGALEASE-00132828-LEGALEASE-00132829 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 12366 | Am. Nat. Rent-A-Car v. McNally, 8 Ariz. App. 208 | 307A+747.1 | In the absence of a proper pretrial order, minutes entered with respect to the pretrial may be binding as a formal order. Peart v. Superior Court, 6 Ariz.App. 6, 429 P.2d 498 (1967). Standing alone, the pretrial minute entry in this case would allow an inference that there was an agreement by the parties that all factual matters bearing upon Rent-A-Car's liability were to be presented to the court at the forthcoming trial so that the court could thereafter rule upon Rent-A-Car's liability as a matter of law. But any such inference is countered by the trial minute entry, which recited that the cause came on for hearing "as though by Default." | In absence of proper pretrial order, minutes entered with respect to pretrial may be as binding as formal order. | "In absence of proper pretrial order, are minutes entered with respect to pretrial binding?" | 027105.docx | LEGALEASE-00133014-LEGALEASE-00133015 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12367 | Cotton v. Ostroski, 250 Neb. 911 | 307A+749.1 | In compliance with this pretrial order, Gary's statement of elements stated that he intended to establish (1) Janice's mental capacity and (2) the fact that Janice's decision to remove her name from the certificate of deposit was motivated by Renee's undue influence. In addition, Gary listed Dr. Terry M. Himes as a witness. Gary stated that Himes would testify to, inter alia, Janice's physical and mental condition, and Himes' opinion as to Janice's mental capacity. The issues set out in a pretrial order supplant those raised in the pleadings. Engelhaupt v. Village of Butte, 248 Neb. 827, 539 N.W.2d 430 (1995); Malerbi v. Central Reserve Life, 225 Neb. 543, 407 N.W.2d 157 (1987). The purpose of a pretrial conference is to simplify the issues, to amend pleadings when necessary, and to avoid unnecessary proof of facts at trial. To that end, litigants must adhere to the spirit of the procedure and are bound by the pretrial order to which no exception has been taken. Cockrell v. Garton, 244 Neb. 359, 507 N.W.2d 38 (1993). In view of the pretrial order, Renee and Robbie cannot argue that they did not have notice that lack of mental capacity would be an issue in this case. | Purpose of pretrial conference is to simplify issues, to amend pleadings when necessary, and to avoid unnecessary proof of facts at trial; to that end, litigants must adhere to spirit of procedure and are bound by pretrial order to which no exception has been taken. | Do issues set out in pretrial order supplant those raised in pleadings? | 027120.docx | LEGALEASE-00133213-LEGALEASE-00133215 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12368 | Hannah v. Heeter, 213 W. Va. 704 | 307A+331 | We answer the first certified question in the negative, and hold that West Virginia does not recognize spoliation of evidence as a stand-alone tort when the spoliation is the result of the negligence of a party to a civil action. "It is a fundamental principle of law that a party who reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." Tracy v. Cottrell, 206 W.Va. 363, 371, 524 S.E.2d 879, 887 (1999) (citation omitted). However, we believe that when the alleged spoliator is a party to the underlying litigation, sufficient remedies already exist to compensate the party injured by the negligent spoliation. In Tracy, we concluded that under appropriate circumstances, an adverse inference instruction may be given or sanctions levied where physical evidence was destroyed by a party to an action. In Syllabus Point 2 of Tracy, we held: Before a trial court may give an adverse inference jury instruction or impose other sanctions against a party for spoliation of evidence, the following factors must be considered: (1) the party's degree of control, ownership, possession or authority over the destroyed evidence; (2) the amount of prejudice suffered by the opposing party as a result of the missing or destroyed evidence and whether such prejudice was substantial; (3) the reasonableness of anticipating that the evidence would be needed for litigation; and (4) if the party controlled, owned, possessed or had authority over the evidence, the party's degree of fault in causing the destruction of the evidence. The party requesting the adverse inference jury instruction based upon spoliation of evidence has the burden of proof on each element of the four-factor spoliation test. If, however, the trial court finds that the party charged with spoliation of evidence did not control, own, possess, or have authority over the destroyed evidence, the requisite analysis ends, and no adverse inference instruction may be given or other sanction imposed. | A party who reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. | Does a party who reasonably anticipates litigation have an affirmative duty to preserve relevant evidence? | Pretrial Procedure - Memo # 1941 - C - RY.docx | ROSS-003287824-ROSS-003287826 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 12369 | Fada Indus. v. Falchi Bldg. Co., 189 Misc. 2d 1 | 307A+331 | It is well-established that no duty to preserve arises unless the party possessing the evidence has notice of its relevance. See, Danna v. New York Telephone Co., 752 F.Supp. 594, 616 n. 9 (S.D.N.Y.1990). Where a party is on notice that litigation is likely to be commenced, the obligation to preserve evidence may even arise prior to the filing of a complaint. Turner v. Hudson Transit Lines, 142 F.R.D. 68, 73 (S.D.N.Y.1991). That such a duty to preserve exists with respect to "key" evidence was indirectly acknowledged by the Second Department in State Farm Insurance Company v. Amana Refrigeration, Inc., 266 A.D.2d 372, 698 N.Y.S.2d 300, in which the court determined that a toaster oven, which the defendants contended was an alternative cause of a fire, was not a key piece of evidence that should have been preserved. See, also, Longo v. Armor Elevator, Co., Inc., 278 A.D.2d 127, 720 N.Y.S.2d 443 [refusing to impose spoliation of evidence sanction where the missing items will not prevent a plaintiff from supporting her causes of action.]; Fairclough v. Hugo, 207 A.D.2d 707, 616 N.Y.S.2d 944 [we agree with the IAS court that the plaintiffs have failed to establish that the alleged failure to preserve evidence would make it extremely difficult or impossible for the plaintiffs to establish their claim for malpractice]; compare, Gallo v. Bay Ridge Lincoln Mercury, Inc., 262 A.D.2d 450, 691 N.Y.S.2d 316 [finding that plaintiff's failure to preserve the destroyed automobile at issue was not intentional, and that the plaintiff did not obtain any unfair advantage from the failure to preserve evidence]. Certainly, General Accident had a duty to preserve all evidence related to Koolwear's claim pertaining to its own property damage and the potential claim of other tenants for damage to their property resulting from Koolwear's leaking water heater. | No duty to preserve evidence arises unless the party possessing the evidence has notice of its relevance. | Does no duty to preserve evidence arise unless the party possessing the evidence has notice of its relevance? | Pretrial Procedure - Memo # 1944 - C - RY.docx | ROSS-003301515-ROSS-003301517 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 12370 | Green v. Spriggs, 930 So. 2d 1052 | 307A+749.1 | Green argues that the report was sent to Spriggs within the sixty-day deadline mandated by the trial court's scheduling order. Although Green's counsel may have submitted the report within sixty days of the trial court's February 6, 2004 scheduling order, we find that he has misinterpreted the order's language. The order requires the exchange of reports sixty days prior to the date of trial, not within sixty days of the order's receipt.La. C.C.P. art. 1551 gives a court wide discretion to provide for implementation of a pretrial order and to insure that the items of the pretrial order are enforced. The theory inherent in pretrial procedure is the avoidance of surprise and the allowance of the orderly disposition of the case. The pretrial order controls the subsequent course of action, though it can be modified at trial to prevent substantial injustice. Vernon v. Wade Correctional Center, 26,053 (La.App.2d Cir.8/19/94), 642 So.2d 684. The trier of fact is given broad discretion to determine whether to modify a pretrial order. This discretion is controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pretrial rulings or agreements and structured the preparation and presentation of their cases accordingly. Absent an abuse of discretion, the trier of fact's decision will be upheld. Vernon v. Wade Correctional Center, supra. | Pretrial order controls the subsequent course of action, though it can be modified at trial to prevent substantial injustice. | Does a pretrial order control the subsequent course of action? | 027228.docx | LEGALEASE-00132656-LEGALEASE-00132657 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12371 | Polansky v. Berenji, 393 S.W.3d 362 | 307A+506.1 | Although the nonsuit immediately renders the merits of the case moot, the trial court need not immediately dismiss the suit when notice of nonsuit is filed. Id. Rule 162 provides that the plaintiff's right to nonsuit "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all costs taxed by the clerk." Tex.R. Civ. P. 162; see also University of Tex. Med. Branch, 195 S.W.3d at 100. A claim for affirmative relief must allege a cause of action-independent of the plaintiff's claim-upon which the claimant could recover compensation or relief even if the plaintiff abandons or is unable to establish his cause of action. University of Tex. Med. Branch, 195 S.W.3d at 101. In addition, a dismissal "shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal." Tex.R. Civ. P. 162. | Although the nonsuit immediately renders the merits of the case moot, the trial court need not immediately dismiss the suit when notice of nonsuit is filed. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does a nonsuit render the merits of a plaintiff's claims moot? | Pretrial Procedure - Memo # 2294 - C - SK.docx | ROSS-003328446-ROSS-003328447 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 12372 | Sieben v. Sieben, 231 Kan. 372 | 307A+749.1 | Supreme Court Rule No. 140(f) states: "Should counsel object to the pretrial order, he shall state his objections in writing and forward his objections and the pretrial order to the court within ten (10) days." 228 Kan. lxxvi.In Kleibrink v. Missouri-Kansas-Texas Railroad Co., 224 Kan. 437, 442, 581 P.2d 372 (1978), we discussed the effect of the pretrial order:"As a general rule a pretrial order entered by the trial court, pursuant to K.S.A. 60-216, controls the subsequent course of action unless such order is modified at the trial to prevent manifest injustice. This proviso reposes in the trial court large discretionary powers. (Citations omitted.)"Furthermore, in Annot., 22 A.L.R.2d 599, 603 (1952), it is stated:"Where the pretrial order frames the issues to be tried, and the order is not modified, the court may, and should, refuse any request for an instruction which is inconsistent with the order or which is not within the scope of the issues stated in the order." " | Under Supreme Court rule counsel has ten days to object to a pretrial order; unless a pretrial order is modified by the trial court to prevent manifest injustice that order controls the subsequent course of litigation. | "Under Supreme Court rules, does counsel have ten days to object to a pretrial order?" | Pretrial Procedure - Memo # 2440 - C - VA.docx | ROSS-003300084-ROSS-003300085 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 12373 | Hous. Auth. of City of Wilmington v. Sparks Eng'g, PLLC, 212 N.C. App. 184 | 307A+517.1 | "It is well settled that "[a] Rule 41(a) dismissal strips the trial court of authority to enter further orders in the case[.]" ... "[T]he effect of a judgment of voluntary [dismissal] is to leave the plaintiff exactly where he [or she] was before the action was commenced." After a plaintiff takes a Rule 41(a) dismissal, "there is nothing the defendant can do to fan the ashes of that action into life[,] and the court has no role to play." " Brisson v. Kathy A. Santoriello, M.D., P.A., 351 N.C. 589, 593, 528 S.E.2d 568, 570 (2000) (quoting Walker Frames v. Shively, 123 N.C.App. 643, 646, 473 S.E.2d 776, 778 (1996); Gibbs v. Light Co., 265 N.C. 459, 464, 144 S.E.2d 393, 398 (1965); and Universidad Cent. Etc., Inc. v. Liaison C. on Med. Ed., 760 F.2d 14, 18 n. 4 (1st Cir.1985)). As a result of the fact that, "[o]nce a party voluntarily dismisses its action pursuant to N.C. Gen.Stat. " 1A"1, Rule 41(a)(1) (1990), "it [is] as if the suit had never been filed [.]" " Pine Knoll Assn. v. Cardon, 126 N.C.App. 155, 161, 484 S.E.2d 446, 449 (quoting Tompkins v. Log Systems, Inc., 96 N.C.App. 333, 335, 385 S.E.2d 545, 547 (1989), disc. review denied, 326 N.C. 366, 389 S.E.2d 819 (1990)), disc. rev. denied, 347 N.C. 138, 492 S.E.2d 26 (1997), Plaintiff's decision to voluntarily dismiss its action against Defendant effectively terminated that proceeding, barring review of any interlocutory orders that the trial court might have entered to that point, such as the denial of Defendant's dismissal motion. Given that Plaintiff's original action no longer exists, we lack jurisdiction over Defendant's challenge to the propriety of the trial court's decision to deny its dismissal motion, so that Defendant's appeal should be, and hereby is, dismissed. | A voluntary dismissal strips the trial court of authority to enter further orders in the case; the effect of a judgment of voluntary dismissal is to leave the plaintiff exactly where he or she was before the action was commenced. Rules Civ.Proc., Rule 41(a), West's N.C.G.S.A. S 1A-1. | Does a voluntary dismissal strip the trial court of authority to enter further orders in the case? | 027977.docx | LEGALEASE-00133050-LEGALEASE-00133051 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 12374 | Brumby v. Brooks, 140 Ga. App. 210 | 371+3295 | Both of these objections are without merit. The trial court correctly charged the jury on the stipulations and issue for determination as set forth in the pre-trial order. The pre-trial order controls the subsequent trial, unless objected to. Code Ann. s 81A-116. See Milton Inn, Inc. v. Spiva, 138 Ga.App. 843(1), 227 S.E.2d 525; Goolsby v. Allstate Ins. Co., 130 Ga.App. 881(1), 204 S.E.2d 789. Appellant can not now for the first time object to the specification of the issue contained in the pre-trial order. | In action brought to collect unpaid unemployment compensation taxes from person who was president of corporation at time taxes became due, trial court correctly charged jury on stipulations and issue for determination as set forth in pretrial order, despite contentions that stipulation was incomplete and prejudicial, and that instructions on issue for determination improperly stated time period; such objections could not be raised for first time on appeal; furthermore, charge clearly set forth issue and was not harmful or prejudicial. Code, SS 54-650.2, 81A-116. | "Does the pretrial order control a subsequent trial, unless objected to?" | 028060.docx | LEGALEASE-00133412-LEGALEASE-00133413 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 12375 | Jamison v. Lloyd, 51 Mich. App. 570 | 307A+749.1 | A pretrial conference is conducted before trial in order to simplify and to narrow the issues of the case and to avoid traps and surprises. Applebaum v. Wechsler, 350 Mich. 636, 87 N.W.2d 322 (1957). It is, therefore, fundamental that the pretrial summary issued by the court after the pretrial conference controls the subsequent course of the litigation. GCR 1963, 301.3.However, the trial court in its sound discretion may modify the pretrial summary either at or before trial to prevent manifest injustice. Bednarsh v. Winshall, 374 Mich. 667, 133 N.W.2d 202 (1965); Reinhardt v. Bennett, 45 Mich.App. 18, 202 N.W.2d 847 (1973). See also GCR 1963, 301.3. | Pretrial summary issued by court after pretrial conference controlled subsequent course of litigation. GCR 1963, 301.3. | Does a pretrial summary issued by a court after a pretrial conference control a subsequent course of litigation? | Pretrial Procedure - Memo # 2531 - C - PB.docx | LEGALEASE-00022952-LEGALEASE-00022953 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12376 | Bump v. Firemens Ins. Co. of Newark, N.J., 221 Neb. 678 | 307A+750 | In their second assignment of error, Bumps assail the trial court's eliminating the second cause of action alleged in their petition. The record fails to disclose the precise procedural scalpel used to excise the second cause of action from Bumps' petition. Assuming that the allegations of the second cause of action did state facts sufficient to constitute a cause of action, the trial court, nevertheless, removed from trial any issue raised by the second cause of action. Pretrial conferences are conducted to simplify and narrow issues presented in a case. Priest v. McConnell, 219 Neb. 328, 363 N.W.2d 173 (1985). Issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. See Olson v. England, 206 Neb. 256, 292 N.W.2d 48 (1980). Generally, issues delineated in an unaltered pretrial order supplant the issues raised in the pleadings. See Marotta v. Iroquois Realty Co., 412 N.E.2d 797 (Ind.App.1980). In Hasenauer v. Durbin, 216 Neb. 714, 719, 346 N.W.2d 695, 698 (1984), we stated:The purpose of a pretrial conference is to simplify the issues, to amend pleadings when necessary, and to avoid unnecessary proof of facts at trial. To that end litigants must adhere to the spirit of the procedure and are bound by the pretrial order to which no exception has been taken. | Pretrial conferences are conducted to simplify and narrow issues presented in a case, and issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. | Do issues stipulated to at a pre-trial conference constitute the issues on which the case is to be tried? | 028142.docx | LEGALEASE-00132627-LEGALEASE-00132628 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 12377 | Hobbs v. Arthur, 264 Ga. 359 | 307A+517.1 | The renewal suit is an action de novo. Granite State Ins. Co. v. Nord Bitumi U.S., Inc., 262 Ga. 502, 422 S.E.2d 191 (1992). As such, the procedural prerequisites of filing the renewed complaint and service of process must be met anew. Bell v. Figueredo, 190 Ga.App. 163(1), 378 S.E.2d 475 (1989). "Unless the case is an absolute nullity, the defective or improper suit may be used to nurse the cause of action into full life in the proper form and forum." Wilson, supra at 786, 47 S.E. at 368. Defenses which are raised in the renewal action will be adjudicated only with respect to that which occurred subsequent to refiling. Accord Granite State, supra; Patterson, supra. | Defenses which are raised in renewal action will be adjudicated only with respect to that which occurred subsequent to refiling. O.C.G.A. S 9-2-61(a). | Will defenses which are raised in renewal action be adjudicated only with respect to that which occurred subsequent to refiling? | 028625.docx | LEGALEASE-00133030-LEGALEASE-00133031 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 12378 | Ilagan v. McAbee, 634 N.E.2d 827 | 307A+517.1 | Also recognized by Indiana common law was the retraxit. A retraxit is an open and voluntary renunciation by a plaintiff of his suit in court, made when the trial is called on, by which he forever loses his action, or is barred from commencing another action for the same cause. Barnard v. Daggett (1879), 68 Ind. 305. A retraxit operates as a dismissal of the cause with prejudice. I.L.E., Dismissal " 2, p. 3. | "Retraxit" is open and voluntary renunciation by plaintiff of suit in court, made when trial is called on, by which plaintiff forever loses action, or is barred from commencing another action in same cause; retraxit operates as dismissal of cause with prejudice. | "What does the term ""retraxit"" encompasses?" | 028629.docx | LEGALEASE-00133044-LEGALEASE-00133045 | Condensed, SA | 0.35 | 0 | 1 | 0 | 1 | |
| 12379 | Hadley v. United States, 45 F.3d 1345 | 170A+1686 | The prejudice contemplated by Rule 36(b) is "not simply that the party who obtained the admission will now have to convince the factfinder of its truth.Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence" with respect to the questions previously deemed admitted. Brook Village N. Assocs. v. General Elec. Co., 686 F.2d 66, 70 (1st Cir.1982). The party who obtained the admission has the burden of proving that withdrawal of the admission would prejudice the party's case. See FDIC v. Prusia, 18 F.3d 637, 640 (8th Cir.1994). | Prejudice contemplated to prevent withdrawal of admission is not simply that party who obtained admission will now have to convince fact finder of its truth; rather, such prejudice relates to difficulty that party may face in proving its case, for example, due to unavailability of key witnesses, because of sudden need to obtain evidence with respect to questions previously deemed admitted. Fed.Rules Civ.Proc.Rule 36(b), 28 U.S.C.A. | "Does prejudice to party who initially obtained an admission, as would preclude the withdrawal of an admission, result simply because that party will now have to convince the fact finder of its truth?" | 028653.docx | LEGALEASE-00133170-LEGALEASE-00133171 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 12380 | Hoffman v. Vulcan Materials Co., 91 F. Supp. 2d 881 | 386+7 | n their complaint, plaintiffs set out their damages in a single count alleging trespass and nuisance. In their brief opposing defendant's motion for summary judgment, plaintiffs advance their trespass claims under the theory of strict liability for ultra-hazardous activity. Under both North Carolina and common law, a trespass is defined as any unauthorized entry upon the land of another. Matthews v. Forrest, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952); Loe v. Lenhardt, 362 P.2d 312, 315, 227 Or. 242, 248 (1961). Such unauthorized entry entitles the possessor to at least nominal damages. Id.; Hoaglin v. Decker, 713 P.2d 674, 676, 77 Or.App. 472, 475 (1986). The Restatement (Second) of Torts "" 158, 164, 165, 166 (1963"1964), suggests a modification of the common law so as to only impose liability for unintentional intrusions when they are a result of negligent or reckless conduct or ultrahazardous activities. One state has explicitly adopted the Restatement rationale and modified its common law. Loe, 362 P.2d at 315"17, 227 Or. at 248; Hoaglin, 713 P.2d at 676 n. 3, 77 Or.App. at 475. North Carolina is in apparent concurrence with this position. Schloss v. Hallman, 255 N.C. 686, 691, 122 S.E.2d 513, 517 (1961) (unintentional and non-negligent entry onto land is not trespass unless done through ultra-hazardous activity); Guilford Realty & Ins. Co. v. Blythe Bros. Co., 260 N.C. 69, 72, 131 S.E.2d 900, 903 (1963)(blasting can be trespass by ultra-hazardous activity regardless of negligence, adopting Restatement rule). Moreover, trespass as a result of negligent or reckless conduct or ultra-hazardous activity requires a showing of actual damages to plaintiffs or their properties. Paris v. Carolina Portable Aggregates, Inc., 271 N.C. 471, 482, 157 S.E.2d 131, 139 (1967)(citing Guilford ); Hoaglin, 713 P.2d at 676, 77 Or.App. at 476; Johnson v. Tipton, 103 Ill.App.3d 291, 296"297, 59 Ill.Dec. 179, 431 N.E.2d 464, 470"471 (1982). It is on this latter element that all plaintiffs' trespass | Under both North Carolina and common law, trespass as a result of negligent or reckless conduct or ultra-hazardous activity requires a showing of actual damages to plaintiffs or their properties. | Can trespass occur as a result of an ultrahazardous activity? | 047326.docx | LEGALEASE-00133377-LEGALEASE-00133378 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 12381 | Gary Friedrich Enterprises v. Marvel Enterprises, 713 F. Supp. 2d 215 | 97C+108 | As an initial matter, the plaintiffs have failed to state a claim for conversion or trespass to chattels because the defendants never assumed "physical control" over the intellectual property. Dowling v. United States, 473 U.S. 207, 217, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985). Nor could the defendants "wholly deprive the owner of its use." Id.; See also In re Jetblue Airways Corp. Privacy Litigation, 379 F.Supp.2d 299, 329 (E.D.N.Y.2005) (requiring actual possession for a trespass to chattels claim). Therefore, the plaintiffs' conversion and trespass to chattels claims are defective. | Owners of copyrighted material, who alleged that comic book publisher and other defendants infringed upon the owners' intellectual property rights, failed to state a claim for conversion or trespass to chattels under New York or Illinois law because the defendants never assumed "physical control" over the intellectual property. | Can trespass to chattels be committed on intellectual property? | 047332.docx | LEGALEASE-00133408-LEGALEASE-00133409 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12382 | Truck Ins. Exch. v. Cartmill, 385 S.W.2d 277 | 413+8 | Defendant's 4th contention complains that the Trial Court should have disregarded the finding that another employee of the same class earned $20 per day, and entered judgment on the finding that $23 per week was a fair weekly wage rate. Plaintiff had not worked for as much as 210 days during the year preceding his injury, so the Trial Court submitted issues as to whether another employee of the same class as plaintiff had worked 210 days in similar employment, and if so such other employee's average daily wage. The jury found affirmatively as to another employee of the same class and found his average daily wage to be $20. The Trial Court computed its judgment on such basis. Defendant's real complaint is that plaintiff did not earn but approximately $100 the previous year. The burden was on defendant to show that plaintiff's wages could not be computed under Sub-sections 1 or 2 before resort may be had to Subsection 3, Art. 8309, V.A.T.S. Texas Employers' Ins. Ass'n. v. Ford, 153 Tex. 470, 217 S.W.2d 397. Moreover, workmen's compensation benefits are paid for disability rather than for actual earnings received. Federal Underwriters Exchange v. Rattler, CCA (n. r. e), 192 S.W.2d 942; Traders & Gen. Ins. Co. v. Nored, CCA (n. r. e.) 341 S.W.2d 492. | Workmen's compensation benefits are paid for disability rather than for actual earnings received. | Are workmen's compensation benefits paid for disability rather than for actual earnings received? | 047772.docx | LEGALEASE-00132623-LEGALEASE-00132624 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12383 | Houston Gen. Ins. Co. v. Offshore Logistics, 587 F. Supp. 824 | 413+1 | The Longshoremen's Act provides a comprehensive scheme governing the rights of an injured longshoreman. If, as is generally true in cases where a longshoreman files a claim under the Act, and his employer does not contest liability, the employer must pay compensation to the disabled longshoreman within two weeks of learning of his injury, 33 U.S.C. " 914, 20 CFR 702.231"702.232, and must file an appropriate form, Form LS"206, with the Deputy Commissioner of the Department of Labor. 33 U.S.C. " 914; 20 CFR 702.234. | Longshoremen's and Harbor Workers' Compensation Act provides a comprehensive scheme governing the rights of an injured longshoreman. Longshoremen's and Harbor Workers' Compensation Act, S 1 et seq., 33 U.S.C.A. S 901 et seq. | Does the Longshoremen's Act provide a comprehensive scheme governing the rights of an injured longshoreman? | 047774.docx | LEGALEASE-00132645-LEGALEASE-00132646 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 12384 | Simpkins v. Gen. Motors Corp. Delco Moraine Div., 3 Ohio App. 3d 275 | 413+1 | As provided by Section 35, Article II of the Ohio Constitution and R.C. 4123.74, workers' compensation is the exclusive remedy against an employer for an employee's work-related injuries. The essential element of the workers' compensation legislation is the legal relationship between employer and employee. See Guy v. Arthur H. Thomas Co. (1978), 55 Ohio St.2d 183, 378 N.E.2d 488 [9 O.O.3d 138]. | The essential element of the workers' compensation legislation is the legal relationship between employer and employee. | Is the legal relationship between employer and employee the essential element of the workers compensation legislation? | 047782.docx | LEGALEASE-00132734-LEGALEASE-00132735 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 12385 | Protectu Awning Shutter Co. v. Cline, 154 Fla. 30 | 413+1 | The fact that Cline suffered from heart disease which, no doubt caused him to fall, does not preclude recovery. The chances are he might have fallen and sustained a fatal injury in his own home, yet, it is less likely had he remained in the quiet of his own home, for without the physical exertion encountered in his work by a man of his age and physical condition, the chances of his falling were less likely. Had Cline fallen onto a piece of machinery and sustained the injury an award would hardly be questioned. The fact that he chanced to fall on the floor and unfortunately lost his life should not preclude an award. It is urged that Cline was an aged and sick man and his untimely and unfortunate death was caused solely by his own ailment. In this critical war period, industry requires the services of the aged and infirm. The Compensation Law is based primarily on social responsibility of one to another. It surely cannot be said that its benefits should be extended in a less degree to those less fortunate than the average worker. The following are well-considered cases which sustain recovery in related cases. Brown's Case, 123 Me. 424, 123 A. 421, 60 A.L.R. 1293; Beck Mining Co. v. State Industrial Comm., 88 Okl. 34, 211 P. 69, 28 A.L.R. 197; Carroll v. Industrial Comm., 69 Colo. 473, 475, 195 P. 1097, 1098, 19 A.L.R. 170; Freedman v. Spicer Mfg. Corp., 97 N.J.L. 325, 116 A. 427; London Guarantee & Acc. Co. v. Hoage, 63 App.D.C. 323, 72 F.2d 191; Mausert v. Albany Builders' Supply Co., 250 N.Y. 21, 164 N.E. 729; Richey v. Union Paving Co., La.App., 151 So. 657. | Workmen's Compensation Act is based primarily on social responsibility of one to another, and its benefits should not be extended in a less degree to those less fortunate than the average worker. | What is the workmens compensation law primarily based on? | 047949.docx | LEGALEASE-00133249-LEGALEASE-00133250 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 12386 | Logsdon v. Indus. Comm'n, 67 N.E.2d 823 | 413+1 | Our Supreme Court had many times held that the sole issue in a Workmen's Compensation case is whether claimant is entitled to participate or continue to participate in the State Insurance Fund. The most recent case before this Court being Parletto v. Industrial Commission, 140 Ohio St. 12, 42 N.E.2d 153. The first paragraph of the syllabus is: "In a workmen's compensation case, the sole issue is whether the claimant is entitled to participate or to continue to participate in the state insurance fund. Section 1465"90, General Code." | In Workmen's Compensation case the sole issue is whether claimant is entitled to participate or to continue to participate in State Insurance Fund. Gen.Code, S 1465-90, 111 Ohio Laws, p. 227. | What is the sole issue in a workmens compensation case? | Workers Compensation - Memo #243 ANC.docx | ROSS-003286992-ROSS-003286993 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 12387 | Howry v. Eppinger, 34 Mich. 29 | 8.30E+186 | As we have already said, the words "secured by mortgage" formed no part of the notes.The object and intent of the parties in putting these words upon the notes was not to limit or impair their value, but to add to it. It was not to notify third parties that the mortgage contained some clause inconsistent with the notes, and which would destroy or affect their negotiable character. One object undoubtedly was, to show they were the notes referred to in the mortgage and thus connect them. But the principal one was, to show that in addition to the responsibility of the makers they were also secured by mortgage. If the makers intended to limit the effect of the notes by the terms or conditions of the mortgage securing their payment, they should have done so by language which could admit of no doubt as to its intent and meaning. We think these words were neither sufficient to inform third parties of the contents or terms of the mortgage, or to put them upon inquiry. If, however, we should hold that these words were sufficient to put Eppinger, Russell & Co. upon inquiry, or even inform them of the contents of the mortgage, still these defendants would not be benefited thereby, as there was nothing in the mortgage, even had it then been in existence, tending in any way to impair their value or render them non negotiable. | The words "secured by mortgage," written in the margin of a promissory note, form no part of the note, and do not operate to limit or impair its value; nor are they sufficient to notify third parties of the contents of the mortgage, or that it contained some clause inconsistent with the note, or to put them on inquiry. If it be the intent to limit the effect of the note by the terms or conditions of the mortgage securing its payment, language appropriate to express it must be employed. | Do words like secured by mortgage form a part of the note? | 010228.docx | LEGALEASE-00133626-LEGALEASE-00133627 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12388 | Bank of New York Mellon v. Poker Run Acquisitions, 208 So. 3d 199 | 307A+517.1 | There are some limited exceptions to the rule articulated in Pino. For example, a distinction exists between a party filing a simple voluntary dismissal with prejudice and an order by the trial court dismissing an action but reserving jurisdiction or incorporating the parties' settlement agreement. As this Court has previously explained:There is a difference between presenting a settlement agreement to the trial court for approval prior to dismissal of an action and cases where the parties voluntarily dismiss the action without an order of the court pursuant to Florida Rule of Civil Procedure 1.420. A voluntary dismissal under rule 1.420(a) divests the trial court of continuing jurisdiction over the case. However, where the parties, prior to dismissal, present a settlement agreement to the trial court for approval and the trial court enters an order of dismissal predicated on the parties' settlement agreement, the trial court retains jurisdiction to enforce the terms of the settlement agreement.Albert v. Albert, 36 So.3d 143, 147 (Fla. 3d DCA 2010) (citations omitted). | A voluntary dismissal divests the trial court of continuing jurisdiction over a case; however, where the parties, prior to dismissal, present a settlement agreement to the trial court for approval and the trial court enters an order of dismissal predicated on the parties' settlement agreement, the trial court retains jurisdiction to enforce the terms of the settlement agreement. West's F.S.A. RCP Rule 1.420(a). | Does a voluntary dismissal divest the trial court of continuing jurisdiction over the case? | 028237.docx | LEGALEASE-00133588-LEGALEASE-00133589 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 12389 | Maier v. Orr, 754 F.2d 973 | 34+18 | No one has an individual right, constitutional or otherwise, to enlist in the armed forces, the composition of those forces being within the purview of the Congress and the military. Gilligan v. Morgan, 413 U.S. 1, 6, 93 S.Ct. 2440, 2443, 37 L.Ed.2d 407 (1973); Lindenau v. Alexander, 663 F.2d 68, 72 (10th Cir.1981). Maier's counsel noted before the district court that at the time of her discharge Maier's then current enlistment extension was due to expire in eight months, i.e., in November 1977, that "an enlisted member of the service, if entitled to reinstatement, is only entitled to reinstatement up to the end of the enlistment then being served," and that "this poses real problems for my client because if that relief is granted she'd have to pay back her severance pay and she would owe the government more money than she'd get." | No one has an individual right, constitutional or otherwise, to enlist in armed forces, composition of those forces being within purview of Congress and the military. | Is composition of the armed forces a matter of Congress and military? | Armed Services - Memo 116 - JS.docx | ROSS-003289064-ROSS-003289065 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 12390 | Kurlan v. Callaway, 510 F.2d 274 | 34+5(1) | Turning to the merits, under Army Regulation AR135"300 2"38(b) Reservists (including members of the Guard) who are on active duty for training at the time when their units are called to active duty are automatically classified as being on active duty status. "Active duty" in this context denotes a formal status within the military establishment, which is not dependent on the called-up individual's activities while on such duty, as long as the definition encompasses him. Bell v. United States, 366 U.S. 393, 410, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1960). In Hornstein v. Laird, 327 F.Supp. 993 (S.D.N.Y.1971), for instance, Reservists were held to be entitled to transfer under s 269(e)(2) because they had served on active duty status within the definition set out in AR135"300, even though they had been called-up by mistake and immediately sent home upon reporting to their point of assembly. In the present case appellants would at least have been required, upon completion of their training, to join their fellow Guardsmen in handling the mails if the postal strike had lasted beyond their tour of training. | Under army regulation, automatically classifying as being on active duty status those reservists who are on active duty for training at the time their units are called to active duty, term "active duty" denotes a formal status within the military establishment which is not dependent upon called-up individual's activities while on such duty as long as the definition encompasses him. | Is active duty a formal status? | Armed Services - Memo 128 - JS.docx | ROSS-003305020-ROSS-003305021 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 12391 | United States v. Chon, 210 F.3d 990 | 34+3(2) | The PCA prohibits Army and Air Force military personnel from participating in civilian law enforcement activities. See 18 U.S.C. " 1385 (1994). Although the PCA does not directly reference the Navy or Marine Corps, we do not construe this omission as congressional approval for Navy involvement in enforcing civilian laws. See United States v. Khan, 35 F.3d 426, 431 (9th Cir.1994). Congress has, in fact, required the Secretary of Defense to "prescribe such regulations as may be necessary" to prohibit "direct participation by a member of the Army, Navy, Air Force, or Marine Corps" in law enforcement activities. 10 U.S.C. " 375 (1998). The Department of Defense (DoD) thereafter, by directive, made the PCA applicable to the Navy and the Marine Corps as a "matter of DoD policy," DoD Directive 5525.5(C); the Secretary of the Navy, using nearly identical language, has adopted this policy, see SECNAVINST 5820.7B. | Although the Posse Comitatus Act (PCA), prohibiting Army and Air Force military personnel from participating in civilian law enforcement activities, does not directly reference the Navy or Marine Corps, this omission does not constitute congressional approval for Navy involvement in enforcing civilian laws. 10 U.S.C.A. S 375; 18 U.S.C.A. S 1385. | Does the Posse Comitatus Act apply to the Navy? | Armed Services - Memo 89 - JS.docx | LEGALEASE-00023571-LEGALEASE-00023572 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 12392 | Mason v. Blayton, 119 Ga. App. 203 | 172H+593 | We reverse. A check executed and delivered is a contract in writing by which the drawer contracts with the payee that the bank will pay to the latter or his order the amount designated, on presentation. Haynes v. Wesley, 112 Ga. 668(2), 37 S.E. 990, 81 Am.St.Rep. 72. Code Ann. s 109A-3-104. "(T)here is little difference between a check and a demand note. Both are acknowledgments of indebtedness and an unconditional promise to pay." Diemar& Kirk Co. v. Smart Styles, Inc., 261 N.C. 156, 134 S.E.2d 134. It imports a consideration. Deal v. Atlantic C.L.R. Co., 225 Ala. 533, 538, 144 So. 81, 86 A.L.R. 455. "It is elemental that a check is a written contract to be performed at the place where is located the banking house or place of business of the person on whom it is drawn." Permenter v. Bank of Green Cove Springs, (Fla.App.) 136 So.2d 377, 380. "The drawer of a check has the right, at any time prior to acceptance by the bank, to stop its payment. However, his revocation of the bank's authority to pay the check does not discharge his liability to the payee or holder. 10 C.J.S. Bills & Notes s 35 (pp. 455, 456). The situation becomes the same as if the check had been dishonored and notice thereof given to the drawer. Flynn v. Currie, 130 Me. 461, 157 A. 310; Annot., 14 A.L.R. 562." Diemar& Kirk Co. v. Smart Styles, Inc., 261 N.C. 156, 134 S.E.2d 134, supra. | Drawer of check has right, at any time prior to acceptance by bank, to stop payment, but stopping of payment does not discharge drawer's liability to payee or holder. | "Does a drawer of a check have the right, at any time prior to acceptance by the bank, to stop its payment?" | 010209.docx | LEGALEASE-00133782-LEGALEASE-00133783 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12393 | Com. v. Trudell, 371 Pa. Super. 353 | 63+13 | We cannot say that the testimony of either Pedulla or DeLuca was so unreliable or contradictory that a verdict could not be based on it. Pedulla admittedly testified differently before the grand jury in the same case. At the grand jury hearing, Pedulla maintained that he did not remember how many police officers came into his cell the night in question nor did he remember asking anyone to speed his arraignment. At trial, he testified in detail concerning the actions of the officers in question and the conversations he had with them the night of his arrest. However, such discrepancies between a witness' trial testimony and prior inconsistent statements do not prevent a jury from making a rational consideration of the credibility of the witness at trial. Commonwealth v. Farquharson; Commonwealth v. Smith; Commonwealth v. Goldblum, 498 Pa. 455, 447 A.2d 234 (1982). Moreover, the trial testimony of both Pedulla and DeLuca was consistent and remained so through cross-examination. The court, having concluded that a rational consideration of the evidence was possible, correctly left the weight of the evidence for the jury to determine. Commonwealth v. Levenson, 282 Pa.Super. 406, 422 A.2d 1355 (1980); Commonwealth v. Chuck, 227 Pa.Super. 612, 323 A.2d 123 (1974). | Notwithstanding fact that one of two reputed mob hit men admittedly testified differently before grand jury in same case, such discrepancy between witness' trial testimony and prior inconsistent statements did not prevent jury from making rational consideration of credibility of witness at trial, and thus, testimony of reputed hit men was not so unreliable or contradictory that it could not support verdict against former police officers for bribery in official matters and criminal conspiracy. | "In a bribery case where testimony is contradictory, who determines whether the witnesses are to be believed?" | 011198.docx | LEGALEASE-00133842-LEGALEASE-00133843 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 12394 | Paniagua v. Orange Cty. Fire Auth., 149 Cal. App. 4th 83 | 307A+517.1 | That dismissal had consequences. "A plaintiff voluntary dismissal of his action has the effect of an absolute withdrawal of his claim and leaves the defendant as though he had never been a party. When as in this case an action is wilfully dismissed by the plaintiff against a sole defendant it is as though no action had ever been filed." (Cook v. Stewart McKee & Co. (1945) 68 Cal.App.2d 758, 761, 157 P.2d 868.). "It is a well settled proposition of law that where the plaintiff has filed a voluntary dismissal of an action, the court is without jurisdiction to act further, and any subsequent orders of the court are simply void. [Citation.]" (Gherman v. Colburn (1971) 18 Cal.App.3d 1046, 1050, 96 Cal.Rptr. 424.) | When an action is wilfully dismissed by the plaintiff against a sole defendant, it is as though no action had ever been filed. | "When an action is wilfully dismissed by the plaintiff against a sole defendant, is it as though no action had ever been filed?" | Pretrial Procedure - Memo # 2653 - C - NE.docx | LEGALEASE-00023657-LEGALEASE-00023658 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12395 | Arena v. Borough of Jamesburg, Middlesex Cty., 309 N.J. Super. 106 | 307A+517.1 | Rule 4:37-1(a), which is derived from FRCP 41(a), see Morris M. Schnitzer& Julius Wildstein, New Jersey Rules Service 1954 to 1967, comment 2 to R.R. 4:42-1, A IV-1398 (Gann special reprint ed.1982), provides in pertinent part that "an action may be dismissed by the plaintiff without court order by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment," and that "unless otherwise stated in the notice, the dismissal is without prejudice." When a plaintiff exercises the right to voluntarily dismiss a complaint without prejudice, "another action may be instituted and the same facts urged, either alone or in company with others as the basis of a claim for relief." Christiansen v. Christiansen, 46 N.J.Super. 101, 109, 134 A.2d 14 (App.Div.), certif. denied, 25 N.J. 56, 134 A.2d 833 (1957). "A voluntary dismissal without prejudice leaves the situation as if the action never had been filed." Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Civil 2d2367 (1995). Thus, a plaintiff voluntary dismissal of an action under Rule 4:37-1(a) has no preclusive effect; the claim, or a different claim based on the same facts, may be asserted in a subsequent action without the court permission. See Restatement (Second) of Judgments 20(1)(b); cf. Woodward-Clyde Consultants v. Chemical & Pollution Sciences, Inc., 105 N.J. 464, 472, 523 A.2d 131 (1987) ("A dismissal without prejudice is not an adjudication on the merits and does not bar reinstitution of the same claim in a later action."). A plaintiff is required to obtain the consent of the defendant or leave of the court to dismiss without prejudice only after an answer or a motion for summary judgment has been filed. R. 4:37-1(a), (b); cf. Mack Auto Imports v. Jaguar Cars, Inc., 244 N.J.Super. 254, 259-60, 581 A.2d 1372 (App.Div.1990) (noting that when a defendant has appeared in the original action, the court may require the | Voluntary dismissal without prejudice leaves situation as if action had never been filed. | Does a voluntary dismissal without prejudice leave the situation as if the action had never been filed? | Pretrial Procedure - Memo # 2658 - C - NE.docx | LEGALEASE-00023663-LEGALEASE-00023665 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 12396 | Shordan v. Kyler, 87 Ind. 38 | 308+136(1) | An agent may bind himself personally, although the consideration move to his principal, and the agent's want of interest in the transaction, except as agent, be known to the other contracting party. Crum v. Boyd, 9 Ind. 289. | An agent may bind himself personally, although the consideration move to his principal and the agent's want of interest in the transaction, except as agent be known to the other contracting party. | Can an agent bind himself personally? | 042131.docx | LEGALEASE-00133730-LEGALEASE-00133731 | Condensed, SA | 0.13 | 0 | 1 | 0 | 1 | |
| 12397 | State v. Gray, 292 N.C. 270 | 352H+154 | In a prosecution for first degree rape under General Statute 14-21(a)(2) the state must allege in the indictment and prove that the defendant was more than sixteen years of age at the time of the alleged rape, this being an essential element of the crime. State v. Perry, 291 N.C. 586, 231 S.E.2d 262 (1977). In an effort to meet this burden here the state elicited from the victim, Robert Griffith and two police officers, all of whom had observed defendant, their respective opinions that the defendant was in his "middle to late twenties"; "twenties, mid-twenties"; "twenty-one or twenty-two"; "twenty-six or twenty-seven." The state also offered a paper writing, State's Exhibit # 13, in words and figures as follows:The signature of Maurice Kamp, M. D., is printed as is all else except the information pertaining particularly to "Dewey Lee Gray, Jr." and the signature of Jacqueline Creech. The name Jacqueline Creech appears as an original signature. The seal of the Mecklenburg County Health Department is embossed on the document. | In a prosecution for first-degree rape, state must allege in indictment and prove that defendant was more than 16 years of age at time of alleged rape. G.S. S 14-21(a)(2). | Is a first degree rape indictment required to state that the defendants age is more than sixteen years? | 043051.docx | LEGALEASE-00133836-LEGALEASE-00133837 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12398 | Urie v. Roche, 209 F. Supp. 2d 412 | 34+5(2) | Plaintiff holds dual civilian and military positions within the Air National Guard. The National Guard is "an essential reserve component of the Armed Forces of the United States." Gilligan v. Morgan, 413 U.S. 1, 7, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). In addition to employing purely military personnel, the National Guard employs civilians, or "technicians," to perform a wide range of administrative, clerical, and technical tasks within a military context. The nature of the position of these employees has been codified in the National Guard Technicians Act, 32 U.S.C. " 709. | The National Guard is an essential reserve component of the Armed Forces of the United States. | Is the National Guard an essential reserve component of the Armed Forces of the United States? | 008439.docx | LEGALEASE-00133950-LEGALEASE-00133951 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12399 | Kilgore Nat. Bank v. Moore Bros. Lumber Co., 129 Tex. 92 | 172H+591 | "Sec. 189. A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." | Purpose of provisions of Negotiable Instruments Act that acceptance of bill was signification by drawee of his assent to order of drawer, and that acceptance must be in writing and signed by drawee, and that check of itself did not operate as assignment of any part of funds to credit of drawer with bank, and that bank was not liable to holder until it accepted or certified check, was to prevent any liability to holder of check from arising from bare oral promise of drawee bank to pay the check (Vernon's Ann.Civ.St. art. 5941, S 132; art. 5947, S 189). | Is the bank liable to the holder of the check without it accepts or certifies the check? | 010215.docx | LEGALEASE-00133988-LEGALEASE-00133989 | Condensed, Order, SA, Sub | 0.59 | 1 | 1 | 1 | 1 | 1 |
| 12400 | United States v. Ring, 706 F.3d 460 | 63+1(1) | Having rejected Ring's argument that an explicit quid pro quo is required outside the contribution context, we next address his contention that the district court nonetheless erred by instructing the jury that "[i]t [was] not necessary for the government to prove that ... the public official actually accepted the thing of value or agreed to perform the official act or participated in the scheme or artifice to defraud." That the official must actually enter into a corrupt agreement, Ring maintains, flows from the Supreme Court's admonition that bribery requires "a quid pro quo"a specific intent to give or receive something of value in exchange for an official act," Sun"Diamond, 526 U.S. at 404"05, 119 S.Ct. 1402, from the need to distinguish bribery from illegal gratuity, and from our decision in United States v. Dean, 629 F.3d 257 (D.C.Cir.2011). | The official is not required to agree to or actually complete a corrupt exchange for an offer of something of value with the intent to influence an official act to amount to honest-services fraud by bribery. 18 U.S.C.A. S 1346. | Does a charge of bribery require an official to complete a corrupt exchange for an offer of something of value with the intent to influence an official act? | 011239.docx | LEGALEASE-00134116-LEGALEASE-00134118 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 12401 | State v. Hebert, 402 So. 2d 675 | 63+1(1) | As we read the statute it proscribes both the giving and the offering to give without a provision that the offer and the taking shall together constitute a single offense.Defendant relies on State v. Ponthier, 391 So.2d 1138 (La.1980) in which the court held that the offer to give $700.00 to influence the officer's conduct in two matters and the payment of several installments constituted only two offenses. We distinguish the Ponthier case by pointing out that the payments to the officer were installments on a set price for the "fixing" of a DWI charge and a simple battery charge. The specific intent was to influence the officer in only two respects. Hebert was to receive continuing help with anything that might arise. The gravamen of the charges was not represented by one charge, two charges or even three charges. | Bribery statute proscribes both giving and offering to give without provision that offer and taking shall together constitute single offense. LSA-R.S. 14:118. | Are giving and offering to give a bribe a single offense under the bribery statute? | 011280.docx | LEGALEASE-00134460-LEGALEASE-00134462 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12402 | Nylander v. Potter, 38 Mass. App. Ct. 605 | 200+80 | We start our analysis by noting that Bachellor Road was a public way when it was discontinued by the town. Abutters to a public way "ordinarily hold the title to the fee to the center of the public way, subject only to the easement of travellers to pass and repass." Opinion of the Justices, 297 Mass. 559, 562, 8 N.E.2d 179 (1937). See also Perley v. Chandler, 6 Mass. 454, 456 (1810) ("By the location of a way over the land of any person, the public have acquired an easement....") Once the public road is discontinued, however, the public easement to travel over the road is terminated and the abutter "hold[s] the land free from the [public easement]." Perley v. Chandler, supra. Here, because the Nylanders' predecessors in title owned land on both sides of the disputed stretch, the Nylanders own the entire roadbed. | Abutters to a public way ordinarily hold the title to the fee to the center of the public way, subject only to the easement of travelers to pass and repass. | Do the abutters of public way hold the title to the centerline of the public way? | Highways -Memo 103 - DB.docx | ROSS-003305065-ROSS-003305066 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12403 | Newman v. Mayor of City of Newport, 73 R.I. 385 | 59+20(1) | In this state, in the absence of special circumstances, and none appear in the instant case, the owner of land abutting on a highway owns the fee to the middle line of the highway. See Healey v. Babbitt, 14 R.I. 533. As a general rule, by the legal establishment of a public highway, the public acquires only an easement in such highway, the fee in the soil remaining in the owners of adjoining lands. Rounds v. Mumford, 2 R.I. 154, 160. We refer to these well-established principles in view of the fact that the commissioner in the instant case seems to believe that the fee in land for highways is in the municipality and that he therefore had the right to deny all reasonable access for business purposes to the abutting land. | In absence of special circumstances, owner of land abutting on highway owns the fee to middle line of the highway. | Does the owner of the abutting land on a highway own the fee to the middle line of the highway? | Highways -Memo 106- DB.docx | ROSS-003318573-ROSS-003318574 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 12404 | Bailey v. Schaaf, 293 Mich. App. 611 | 307A+486 | "Within the time for completion of discovery, a party may serve on another party a written request for the admission of the truth of a matter within the scope of MCR 2.302(B) stated in the request that relates to statements or opinions of fact or the application of law to fact, including the genuineness of documents described in the request." "A matter admitted under [MCR 2.312] is conclusively established unless the court on motion permits withdrawal or amendment of an admission." The court may allow a party to amend or withdraw an admission for good cause. | The court may allow a party to amend or withdraw an admission for good cause. MCR 2.312. | May the court allow a party to amend or withdraw an admission for good cause? | 028491.docx | LEGALEASE-00134637-LEGALEASE-00134638 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12405 | State ex rel. Lucas v. Moss, 498 S.W.2d 289 | 307A+69.1 | Rule 57.22 requires the deposition to be transcribed and submitted to the witness for examination by him unless waived by the witness and the parties. In this case the deposition was transcribed and available for examination by the witness, although the witness and the parties waived signature. Videotape is a recording device the use of which on deposition is not prohibited by Rules 57.21 or 57.22. Its use is therefore permissible. | Videotape is recording device, use of which on deposition is not prohibited by rules, and its use is therefore permissible. V.A.M.R. Civil Rules 57.01 et seq., 57.21, 57.22. | Is videotape a recording device the use of which is permissible on deposition as is not prohibited by rules? | Pretrial Procedure - Memo # 2921 - C - ES.docx | ROSS-003317658-ROSS-003317659 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 12406 | Coffel v. Spradley, 495 S.W.2d 735 | 307A+69.1 | The signature of the witness goes to the form, rather than the substance, of the deposition and is not in all events indispensable, as Rule 57.22 by its terms recognizes.Will Docter Meat Co. v. Hotel Kingsway, 232 S.W.2d 821, 825(4) (Mo.App.1950); Hoyberg v. Henske, 153 Mo. 63, 55 S.W. 83, 85 (banc 1899). In the circumstances of this case, where the defendant has in effect offered his own deposition and by that act put himself "in the position of vouching for its accuracy no less effectively than his signature could possibly have done", his deposition was not rendered inadmissible because of the informality which results from the absence of his signature. Will Docter Meat Co. v. Hotel Kingsway, supra, l.c. 825(6). Nor will the deposition be denied the efficacy as legal evidence it would have been accorded without the signature of the witness only because it lacks the signature of the officer by whom the testimony was taken. | Deponent's signature to his deposition goes to the form, rather than the substance, of the deposition and is not in all events indispensable. V.A.M.R. Civil Rule 57.22. | "Does the deponent's signature to his deposition go to the form, rather than the substance, of the deposition and is not in all events indispensable?" | 028715.docx | LEGALEASE-00134384-LEGALEASE-00134385 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12407 | Buckeye Union Ins. Co. v. Reg'l Transit Auth., 14 Ohio Misc. 2d 11 | 307A+486 | Thus, it is within this court's discretion to allow the service of the amended answers. | It is within trial court's discretion to allow service of amended answers in response to request for admission. Rules Civ.Proc., Rules 36(A), 37(A)(4). | Is it within a trial court's discretion to allow service of amended answers in response to request for admission? | Pretrial Procedure - Memo # 3073 - C - PC.docx | ROSS-003289619-ROSS-003289620 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 12408 | Cleveland v. Taylor, 397 S.W.3d 683 | 307A+483 | We review a trial court's ruling on a motion to withdraw deemed admissions for an abuse of discretion. See Wheeler v. Green, 157 S.W.3d 439, 443 (Tex.2005) (per curiam) ("We recognize that trial courts have broad discretion to permit or deny withdrawal of deemed admissions, but they cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles."). Withdrawal of deemed admissions is permitted upon a showing of good cause and a finding by the trial court that (1) the party relying upon the deemed admissions will not be unduly prejudiced, and (2) presentation of the merits of the action will be served. Tex.R. Civ. P. 198.3; Marino, 355 S.W.3d at 633. The party seeking withdrawal of the deemed admissions has the burden to establish good cause. Boulet, 189 S.W.3d at 836. | The party seeking withdrawal of the deemed admissions has the burden to establish good cause. Vernon's Ann.Texas Rules Civ.Proc., Rule 198.3. | Does the party seeking withdrawal of the deemed admissions have the burden to establish good cause? | 029007.docx | LEGALEASE-00134040-LEGALEASE-00134041 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 12409 | Texas & P. Ry. Co. v. Mix, 193 S.W.2d 542 | 410+244 | However, Rule 182 recognizes a right to propound leading questions to certain employees of a corporate defendant by its adversary. There seems to be no good reason that the same privilege should not be extended under the same conditions in the case of depositions. In such a case the witness is considered hostile. Leading questions to a hostile witness, whether on the stand or testifying by deposition, are permitted. Commercial Security Co. v. Collins, Tex.Civ.App., 208 S.W. 728. | Leading questions to hostile witness whether on the stand or testifying by deposition are permitted. Rules of Civil Procedure, rule 188. | Are leading questions to hostile witness whether on the stand or testifying by deposition permitted? | Pretrial Procedure - Memo # 3148 - C - VP.docx | ROSS-003290843-ROSS-003290844 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 12410 | Grynberg v. Karlin, 134 P.3d 563 | 307A+486 | Trial courts should be cautious in exercising their discretion to permit withdrawal or amendment of an admission. See 999 v. C.I.T. Corp., supra; Donovan v. Carls Drug Co., 703 F.2d 650, 652 (2d Cir.1983)("Because the language of the Rule is permissive, the court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule."), rejected on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 n. 10, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988); 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure " 2264 (2d ed. 2005)("There is force to the argument that the courts should be cautious in permitting the withdrawal or amendment of admissions."). "Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." 8A Wright, supra, " 2264 (citing Advisory Committee Note to 1970 Amendments of Rule 36(b)). | Trial courts should be cautious in exercising their discretion to permit withdrawal or amendment of an admission. Rules Civ.Proc., Rule 36. | Should trial courts be cautious in exercising their discretion to permit withdrawal or amendment of an admission? | 029059.docx | LEGALEASE-00134373-LEGALEASE-00134374 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12411 | In re Umans Bleachery, 34 F. Supp. 694 | 371+2001 | A tax in its essential characteristics is not a debt, nor in the nature of a debt. It is an impost levied by authority of government upon its citizens or subjects for the support of the state. Schradin v. Harry W. Bealer Co. et al., 114 N.J.Eq. 459, 168 A. 854, affirmed, 117 N.J.Eq. 443, 176 A. 321; Brunner v. Morrison, 123 N.J.Eq. 224, 196 A. 716. | "Tax" is not debt, nor in nature of debt, but is impost levied by government upon its citizens or subjects, for support of state. | Is tax an impost levied by authority of government upon its citizens or subjects? | 045027.docx | LEGALEASE-00134408-LEGALEASE-00134409 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 12412 | Rainwater v. Haynes, 244 Ark. 1191 | 371+2001 | Appellees' argument overlooks the fact that these special assessments are not really "taxes' in the usual and ordinary meaning of the word. While both are referable to the sovereign power of taxation, the words "taxes' on the one hand and "assessment", "special assessments' or "local assessments' on the other, ordinarily have distinct legal meanings. The word "taxes' refers to exactions laid by the government for purposes of general revenue.The word "assessments' refers to exactions laid for making local improvements for the benefit of property owners. The word "tax" does not include "assessments." Board of Improvement of Sewer Dist. No. 2, etc. v. Sisters of Mercy, 86 Ark. 109, 109 S.W. 1165, 15 Ann.Cas. 347; Martin v. Reynolds, 125 Ark. 163, 188 S.W. 4; Missouri Pacific R. Co. v. Izard Co. Highway Imp. Dist. No. 1, 143 Ark. 261, 220 S.W. 452. See, also, Wood v. Henderson, 225 Ark. 180, 280 S.W.2d 226. | The word "taxes" refers to exactions laid by the government for purposes of general revenue. | "Does the word ""taxes"" refer to exactions laid by the government for purposes of general revenue?" | 045029.docx | LEGALEASE-00134392-LEGALEASE-00134393 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 12413 | State ex rel. & to Use of Moore v. Wabash R. Co., 357 Mo. 380 | 371+2001 | t is axiomatic that taxation, the taking of private property for public use, requires strict compliance with the law. A tax may be levied only when the proceedings therefor are wholly within the terms of a statute which authorizes it. Where the statute purporting to authorize the tax has not been complied with the levy of the tax of necessity is invalid. As a condition precedent to a valid levy of taxes in the instant case the favorable vote of a legally established road district was required. | Taxation, which is taking of private property for public use, requires strict compliance with law, and tax may be levied only when proceedings therefor are wholly within terms of statute authorizing it. | Can tax only be levied when proceedings are wholly within terms of statute authorizing it? | 045094.docx | LEGALEASE-00133954-LEGALEASE-00133955 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 12414 | Boeing Airplane Co. v. Bd. of Comm'rs of Sedgwick Cty., 164 Kan. 149 | 371+2001 | The question decided in the cited case was whether the district court could refuse upon equitable grounds to confirm a sale of real estate for taxes even though all proceedings were found to be regular. After discussing a significant change in our tax foreclosure statutes and the difference between a general code provision and a tax foreclosure statute, the opinion sets forth: "In the third place, there are various important distinctions between judicial sales under the civil code and delinquent tax sales. For instance, sales under the civil code involve a debtor and creditor relationship of some sort-mortgage foreclosure, execution sales, etc. Taxes, on the other hand, are not classed as debts in the usual sense of the term, and actions prescribed by the civil code do not lie for their recovery.[Citing cases]. Again, in a tax foreclosure sale the county cannot take a deficiency judgment. The proceeding is against the property, it is an action in rem. [Citing cases.]" 158 Kan. page 492, 148 P.2d page 512. | Taxes are not classed as "debts" in usual sense of term, and actions prescribed by Civil Code do not lie for their recovery. | "Are taxes classed as ""debts"" in usual sense of the term?" | 045096.docx | LEGALEASE-00133970-LEGALEASE-00133972 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12415 | Snow v. City of Columbia, 305 S.C. 544 | 386+2 | At common law, all land held in peaceable possession is deemed to be enclosed. Harris v. Baden, 154 Fla. 373, 17 So.2d 608 (1944). Subject to limited exceptions not relevant to this case, the person in peaceable possession has the right to exclude all others from the enclosure. See Stratos v. King, 282 S.C. 501, 319 S.E.2d 356 (Ct.App.1984). The unwarrantable entry on land in the peaceable possession of another is a trespass, without regard to the degree of force used, the means by which the enclosure is broken, or the extent of the damage inflicted. Lee v. Stewart, 218 N.C. 287, 10 S.E.2d 804 (1940). The entry itself is the wrong. Thus, for example, if one without license from the person in possession of land walks upon it, or casts a twig upon it, or pours a bucket of water upon it, he commits a trespass by the very act of breaking the enclosure. See Moore v. Duke, 84 Vt. 401, 80 A. 194 (1911); 1 G. Addison, A TREATISE ON THE LAW OF TORTS, 388 (Wood ed. 1881); Restatement 2d of Torts, 158, comment i, illustration 3 (1965). It is immaterial whether any further damage results. See Brown Jug, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 959, 688 P.2d 932 (Alaska 1984). The mere entry entitles the party in possession at least to nominal damages. Lee v. Stewart, supra. To constitute an actionable trespass, however, there must be an affirmative act, the invasion of the land must be intentional, and the harm caused must be the direct result of that invasion. Alabama Power Co. v. C.G. Thompson, 278 Ala. 367, 178 So.2d 525 (1965). Trespass does not lie for nonfeasance or failure to perform a duty. Id. | To constitute actionable trespass, there must be affirmative act, invasion of land must be intentional, and harm caused must be direct result of that invasion. | Should there be an affirmative act to constitute actionable trespass? | Trespass - Memo 269 - SB.docx | ROSS-003291260-ROSS-003291261 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12416 | Schulz v. Dattero, 104 A.D.3d 831 | 386+10 | Upon reargument, the Supreme Court properly granted that branch of the Datteros' cross motion which was to dismiss the trespass cause of action insofar as asserted against them. "Entering upon the land of another without permission, even if innocently or by mistake, constitutes trespass" (Curwin v. Verizon Communications [LEC], 35 A.D.3d 645, 645, 827 N.Y.S.2d 256). The Datteros established, prima facie, that, prior to clearing the strip, they walked on the plaintiffs' property with the plaintiffs' permission in order to access the dock given the impassable condition of the strip. In opposition, the plaintiffs failed to raise a triable issue of fact. | Entering upon the land of another without permission, even if innocently or by mistake, constitutes trespass. | Can the innocent entry upon the land of another without permission cause a trespass? | 047400.docx | LEGALEASE-00134802-LEGALEASE-00134803 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12417 | Chicago Title Land Tr. Co. v. JS II, 2012 IL App (1st) 063420 | 141+57 | " 76 In the context of easements, trespass occurs when there is a material interference with the right of the owner of the dominant estate to reasonable use of the easement. McMahon, 298 Ill.App.3d at 239, 232 Ill.Dec. 269, 697 N.E.2d 1199. A party is liable for trespass when he intentionally intrudes upon the land of another. Dial v. City of O'Fallon, 81 Ill.2d 548, 553"54, 44 Ill.Dec. 248, 411 N.E.2d 217 (1980). A servient estate owner may maintain, improve, or use his property that constitutes the easement only in any way that is consistent with the dominant estate owner's enjoyment of the shared land. McMahon, 298 Ill.App.3d at 239, 232 Ill.Dec. 269, 697 N.E.2d 1199. What constitutes unreasonable interference by the owner of the servient estate is a question of fact. Id. | In the context of easements, trespass occurs when there is a material interference with the right of the owner of the dominant estate to reasonable use of the easement. | Can a trespass occur when a person interferes with another's right to use an easement? | 047412.docx | LEGALEASE-00134818-LEGALEASE-00134819 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 12418 | Stop & Shop Supermarket Co. v. United Food & Commercial Workers' Union Local 342, AFL-CIO, CLC, 407 F. Supp. 2d 515 | 231H+1549(2) | While the presumption in favor of arbitration is strong, it does not alter the Court's role: "deciding whether the parties have agreed to submit a particular grievance to arbitration." AT & T Techs., Inc., 475 U.S. at 649, 106 S.Ct. 1415. See Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. A & M Heating, Air Conditioning, Ventilation & Sheet Metal, Inc., 314 F.Supp.2d 332, 345 (S.D.N.Y.2004) (arbitration not binding upon defendant "merely because its adversary alleges" that arbitration is binding). When the "dispute is in respect of a matter that, on its face, is clearly collateral to the contract, then a court should test the [arbitrability] presumption." Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 23 (2d Cir.1995). By contrast the Court "will order arbitration if the arbitration clause is broad and if the party seeking arbitration has made a claim that on its face is governed by the contract, even if the claim appears to be frivolous." Associated Brick Mason Contractors of Greater N.Y., Inc. v. Harrington, 820 F.2d 31, 35 (2d Cir.1987). | When a dispute is in respect of a matter that, on its face, is clearly collateral to a collective bargaining agreement (CBA), a court should test the arbitrability presumption by reviewing the allegations underlying the dispute and asking whether the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. | When does a court test the arbitrability presumption? | 007545.docx | LEGALEASE-00135803-LEGALEASE-00135804 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 12419 | Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217 | 25T+134(1) | Brown argues on appeal that the arbitration clause is void because it fails to specifically state that statutory claims were included in the agreement to arbitrate. "It is well established that arbitration is a creature of contract" and neither party can be compelled to arbitrate when he has not agreed to do so. Scott, 141 F.3d at 1011 (citing AT&T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). A party cannot avoid arbitration, however, because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim. 67 The language of the clause at issue is brief, unequivocal and all-encompassing. It states that "any dispute between them or claim by either against the other" is subject to arbitration. By using this inclusive language, the parties agreed to arbitrate any and all claims against each other, with no exceptions. An arbitration agreement is not vague solely because it includes the universe of the parties' potential claims against each other. | Arbitration agreement is not impermissibly vague solely because it includes the universe of the parties' potential claims against each other. | "Is an arbitration agreement considered vague solely, when it includes the universe of the parties' potential claims against each other?" | 007549.docx | LEGALEASE-00135807-LEGALEASE-00135808 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12420 | Kuklachev v. Gelfman, 600 F. Supp. 2d 437 | 25T+143 | The arbitrability analysis must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." Genesco, Inc., 815 F.2d at 846. Courts must examine the substance of claims, "shorn of their labels." Phillips v. Audio Active Ltd., 494 F.3d 378, 388 (2d Cir.2007). "The mere fact that [a complaint alleges] a tort claim, rather than one for breach of [contract], does not make the claim any less arbitrable." Collins, 58 F.3d at 23. | An arbitrability analysis must focus on the factual allegations in the complaint rather than the legal causes of action asserted; the mere fact that a complaint alleges a tort claim, rather than one for breach of contract, does not make the claim any less arbitrable. | Does a tort claim make it less arbitrable? | Alternative Dispute Resolution - Memo 626 - SB.docx | ROSS-003303740-ROSS-003303742 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12421 | United States v. Kabot, 295 F.2d 848 | 63+14 | Finally, objection is made to the instruction to the jury to disregard the question of the merits of the tax case. This instruction was entirely proper in light of the need for guiding the jury through a mass of complex testimony.Considering the charge as a whole, there was nothing in it tending to make the jury believe that it could not consider the existence of the tax claim and Kabot's ideas about its seriousness with reference to the issue of Kabot's motivation. There was no request for an affirmative instruction on this point, and no attack is here made on its absence. | Court in prosecution for bribery of internal revenue agent properly instructed jury to disregard question of merits of tax case involved. | Was it proper for the court in a bribery case of an internal revenue agent to disregard the question of the merits of the tax case involved and exclude it from evidence? | Bribery - Memo #329 - C EB.docx | LEGALEASE-00024816-LEGALEASE-00024817 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 12422 | United States v. Madeoy, 912 F.2d 1486 | 63+13 | Nothing in the Supreme Court's decision in Dixson remotely supports this reasoning. The Court did not address the procedure used by the district court, and it never referred to the jury's determination or suggested that it was reviewing the "evidence" for the proposition that the defendants were public officials. On the contrary, the Court reached its conclusion through an exercise in statutory interpretation, which conclusively shows that this is not a question for the jury. For example, it considered the nature of the defendants' positions in relation to Congress's intent, as evidenced by the legislative history of the federal bribery statute. Id. at 496"98, 104 S.Ct. at 1179"80. Therefore, we hold that whether an individual is a public official within the meaning of the statute is a question of law, and as such, a matter for judicial resolution, see Caldwell v. United States, 218 F.2d 370, 372 (D.C.Cir.1954). | Whether individual is public official within meaning of bribery statute is question of law. 18 U.S.C.A. S 201(a)(1). | Is whether an individual is a public official within the meaning of the statute a question of law? | 011585.docx | LEGALEASE-00135107-LEGALEASE-00135108 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 12423 | United States v. Ring, 706 F.3d 460 | 63+13 | Ring's next argument takes us from the honest-services fraud charges to the sole illegal-gratuity count. As we have already explained, the illegal-gratuity statute makes it unlawful to "give[ ], offer[ ], or promise[ ] anything of value to any public official ... for or because of any official act." 18 U.S.C. " 201(c). The statute defines "official act" as " any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." Id. " 201(a)(3). This Circuit treats the question whether an action constitutes an "official act" as one of "sufficiency of the evidence." See Valdes v. United States, 475 F.3d 1319, 1322 (D.C.Cir.2007) (en banc) | The question whether an action constitutes an "official act," within meaning of the illegal-gratuity statute, is treated as one of sufficiency of the evidence. 18 U.S.C.A. S 201(a)(3). | "Is the question of whether an action constitutes an ""official act"" a ""sufficiency of the evidence""?" | 011616.docx | LEGALEASE-00135843-LEGALEASE-00135844 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 12424 | Darling v. Charleston Cmty. Mem'l Hosp., 50 Ill. App. 2d 253 | 302+35 | The first clause of paragraph 4,""That the defendant corporation then owed to the said plaintiff a duty" etc.,"was not a substantial averment of fact, but a conclusion of law and not traversable. It was surplusage. If the complaint plainly and concisely alleged sufficient facts from which the law will raise a duty, and an alleged omission of duty, and an alleged proximately resulting injury, it was sufficient as a matter of pleading. Being surplusage and not a necessary substantial averment of fact, the amendment thereof at the trial to delete "as would be exercised by" and insert in lieu thereof "required of" was not significant or material. As to the first part of subparagraph "O",""That the defendant hospital failed to conform to," etc.,"the amendment thereof at the trial to delete "customarily required of and" hardly seems necessarily, as the defendant urges, to charge it with an unequivocal duty to comply with every recommendation of the Joint Commission and the Rules and Regulations of the Department, but rather seems to have removed some of the more stringent and somewhat mandatory type of language theretofore present therein. | A clause in complaint for injuries resulting from hospital's alleged negligence "that the defendant corporation then owed to the said plaintiff a duty", etc., was not a substantial averment of fact, but a conclusion of law and not traversable and hence was surplusage. S.H.A. ch. 110, SS 31, 33. | Are conclusions of law surplusage? | 023295.docx | LEGALEASE-00135299-LEGALEASE-00135300 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 12425 | Careau & Co. v. Sec. Pac. Bus. Credit, 222 Cal. App. 3d 1371 | 302+34(1) | Plaintiffs argue that the second amended complaints do allege viable causes of action but, even if we also find them deficient, they have a right to the opportunity of further amendment. The general rule is that allegations of a complaint are to be liberally construed with a view to substantive justice between the parties. (King v. Central Bank (1977) 18 Cal.3d 840, 843, 135 Cal.Rptr. 771, 558 P.2d 857.) An order sustaining a demurrer without leave to amend will constitute an abuse of discretion if there is any reasonable possibility that the defect can be cured by an amendment. This rule is liberally applied to permit further amendment not only where the defect is one of form but also where it is one of substance, provided the pleader did not have " "a fair prior opportunity to correct the substantive defect." " (Leach v. Drummond Medical Group (1983) 144 Cal.App.3d 362, 368, 192 Cal.Rptr. 650, quoting Larwin"Southern California, Inc. v. JGB Investment Co. (1979) 101 Cal.App.3d 626, 635, 162 Cal.Rptr. 52.) | General rule is that allegations of complaint are to be liberally construed with view to substantive justice between parties. | Should allegations of a complaint be liberally construed with a view to substantive justice between the parties? | 023303.docx | LEGALEASE-00135309-LEGALEASE-00135310 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12426 | Employers Ins. of Wausau v. Halton, 792 S.W.2d 462 | 307A+483 | As a consequence of these policies, the trial court possesses broad discretion to permit or deny withdrawal of deemed admissions. Eckman v. Centennial Sav. Bank, 757 S.W.2d 392, 396 (Tex.App."Dallas 1988, writ denied); Rosenthal v. National Terrazzo Tile & Marble, Inc., 742 S.W.2d 55, 57 (Tex.App."Houston [14th Dist.] 1987, no writ). The court's ruling on withdrawal will be set aside only upon a clear showing of abuse. Crime Control, Inc. v. RMH"Oxford Joint Venture, 712 S.W.2d 550, 552 (Tex.App."Houston [14th Dist.] 1986, no writ); Texas Employers Ins. Ass'n v. Bragg, 670 S.W.2d 712, 715 (Tex.App."Corpus Christi 1984, writ ref'd n.r.e.). An abuse of discretion occurs when a court acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex.1985). | Trial court possesses broad discretion to permit or deny withdrawal of deemed admissions, and its ruling on withdrawal will be set aside only upon clear showing of abuse of discretion; such abuse occurs when court acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | Does a trial court have broad discretion to permit or deny the withdrawal of admissions? | Pretrial Procedure - Memo # 2965- C - KG.docx | ROSS-003318621-ROSS-003318622 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12427 | Langeland v. Monarch Motors, 952 P.2d 1058 | 30+3317 | Because the trial court's decision to grant a rule 36(b) motion is not entirely discretionary, our review of such a decision is not a typical review for "abuse of discretion." Instead, we review these decisions in two steps, using what might be called a "conditional" discretionary standard. In the first step, we review the trial court's determinations as to whether amendment or withdrawal would serve the presentation of the merits and whether amendment or withdrawal would result in prejudice to the nonmoving party. In the second step, we review the trial court's discretion to grant or deny the motion. The trial court has discretion to deny a motion to amend, but its discretion to grant such a motion comes into play only after the preliminary requirements are satisfied. Decisions placed within the discretion of the trial court can be reversed only upon a finding of abuse of discretion, i.e., if there is no reasonable basis for the decision. Crookston v. Fire Ins. Exch., 860 P.2d 937, 938 (Utah 1993). But because the rule does not give the trial court discretion to disregard the preliminary conditions of rule 36(b), its judgment as to whether those conditions have been satisfied is subject to a somewhat more exacting standard of review. | Review of decision to grant motion to amend or withdraw answers to request for admissions is not a typical review for "abuse of discretion;" instead, appellate court uses "conditional" discretionary standard under which, in the first step, it reviews trial court's determinations as to whether amendment or withdrawal would serve the presentation of the merits and whether amendment or withdrawal would result in prejudice to the nonmoving party, and in the second step, reviews the trial court's discretion to grant or deny the motion. Rules Civ.Proc., Rule 36(a). | "Does the trial court have discretion to deny a motion to amend or withdraw admissions, but its discretion to grant such a motion comes into play only after the preliminary requirements of the rule governing such requests are satisfied?" | 028769.docx | LEGALEASE-00135097-LEGALEASE-00135098 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 12428 | Bloodworth v. Caldwell, 150 Ga. App. 443 | 30+3239 | The continuance or postponement of a case is a discretionary matter and will not be controlled unless manifestly abused. Cotton States Life Ins. Co. v. Edwards, 74 Ga. 220(1). The continuance or postponement of a case because of the absence of counsel who is without leave engaged in the trial of a case in another court is not favored. Kennedy v. Dukes, 137 Ga. 209, 73 S.E. 400. Absence without leave of counsel to attend trials in other courts is no grounds for continuance or postponements. Cotton States Life Ins. Co. v. Edwards, supra. | Continuance or postponement of case is discretionary matter and will not be controlled unless manifestly abused. | Is the continuance or postponement of a case a discretionary matter and will not be controlled unless manifestly abused? | Pretrial Procedure - Memo # 3543 - C - KA.docx | ROSS-003290483-ROSS-003290484 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 12429 | Brown v. Kentucky Lottery Corp., 891 S.W.2d 90 | 307A+483 | A party served with a request for admissions to which it fails to respond admits the allegations asserted. Commonwealth of Ky., Dept. of Highways v. Compton, Ky., 387 S.W.2d 314 (1964). Although the admitted allegations may sometimes be outcome determinative, such a result does not preclude the non-responding party from prevailing. The penalty for failure to respond is that the matters are deemed admitted, not entry of judgment against the non-responding party. Therefore, we must look at the applicable law, as applied to the facts, to determine whether summary judgment was appropriate. | Party served with request for admissions to which it fails to respond admits allegations asserted. | Does a party served with a request for admissions to which it fails to respond admit allegations asserted? | Pretrial Procedure - Memo # 3568 - C - KG.docx | ROSS-003290491-ROSS-003290492 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12430 | Willowbrook Foods v. Grinnell Corp., 147 S.W.3d 492 | 228+185.2(8) | Deemed admissions are competent summary judgment evidence. State v. Carrillo, 885 S.W.2d 212, 214 (Tex.App.-San Antonio 1994, no writ). Admissions, once deemed by the court, may not be contradicted by any evidence, including summary judgment affidavits. See Marshall v. Vise, 767 S.W.2d 699, 700 (Tex.1989); Carrillo, 885 S.W.2d at 214. Any matter established by way of a request for admissions is conclusively established as to the party making the admission, unless on motion, it is withdrawn or amended with the permission of the court. See Tex.R. Civ. P. 198.2(c), 198.3; Marshall, 767 S.W.2d at 700. | Admissions, once deemed by the court, may not be contradicted by any evidence, including summary judgment affidavits. | "Can deemed admissions not be contradicted by any evidence, including summary judgment affidavits?" | 029722.docx | LEGALEASE-00135647-LEGALEASE-00135648 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12431 | Garrett v. Bracy, 187 Kan. 207 | 30+3239 | For nearly 100 years it has been the settled law in this jurisdiction, beginning with Educational Ass'n of Christian Churches v. Hitchcock, 4 Kan. 36, that the granting or refusing of a continuance on account of the absence of a particular attorney is a matter resting largely in the sound discretion of the trial court. Unless abuse of such discretion is made to appear, no reversible error can be predicated on the trial court's ruling on this matter. Certainly the absence of an attorney does not necessarily require that a continuance be granted when associate counsel competent to represent the party seeking the continuance is in attendance. Farmers State Bank of Ellis v. Crawford, 140 Kan. 295, 296, 37 P.2d 14. See also Markson v. Ide, 29 Kan. 700. | Whether action should be continued on account of absence of particular attorney is matter resting within sound discretion of trial court and Supreme Court will not review action of trial court in such case unless clear abuse of discretion appears. | Is the granting or refusing of a motion for a continuance rests within the sound discretion of the trial court? | 029728.docx | LEGALEASE-00135695-LEGALEASE-00135696 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 12432 | Mora v. Ferguson, 145 Tex. 498 | 307A+716 | We think these authorities fully support the statement in 22 C.J.S., Criminal Law, s 484, p. 747, that "where, however, there are statutes providing for continuance of cases where an attorney is in attendance on his duties as a member of the state legislature, and where the case falls within the purview of such a statute, it has been held mandatory on the court to grant a continuance." | Statute requiring a court to continue a cause where a party or his attorney is a member of the legislature, makes it mandatory on court to grant a continuance. Vernon's Ann.Civ.St. art. 2168a. | Is the statute requiring a court to continue cause where party or his attorney is member of Legislature mandatory? | 029835.docx | LEGALEASE-00135664-LEGALEASE-00135665 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 12433 | Dobbelaere v. Cosco, 120 Ohio App. 3d 232 | 228+185(4) | "It is settled law in Ohio that unanswered requests for admission render the matter requested conclusively established for the purpose of the suit, Cleveland Trust Co. v. Willis (1985), 20 Ohio St.3d 66, 20 OBR 364, 485 N.E.2d 1052, and a motion for summary judgment may be based on such admitted matter. Weva Oil Corp. v. Belco Petroleum Corp. (1975), 68 F.R.D. 663; Luick v. Graybar Elec. Co. (1973), 473 F.2d 1360; First Natl. Bank Co. v. Ins. Co. (1979), 606 F.2d 760; St. Paul Fire & Marine Ins. Co. v. Battle (1975), 44 Ohio App.2d 261, 73 O.O.2d 291, 337 N.E.2d 806. Failure to answer is not excused because the matters requested to be admitted are central or noncentral to the case or must be proven by the requesting party at trial. See Youssef v. Jones (1991), 77 Ohio App.3d 500, 602 N.E.2d 1176." Klesch v. Reid (1994), 95 Ohio App.3d 664, 674, 643 N.E.2d 571, 577-578; T & S Lumber Co. v. Alta Constr. Co. (1984), 19 Ohio App.3d 241, 243-244, 19 OBR 393, 394-397, 483 N.E.2d 1216, 1218-1220. "Where a party files a written request for admission, a failure of the opposing party to timely answer the request constitutes a conclusive admission pursuant to Civ.R. 36 and also satisfies the written answer requirement of Civ.R. 56(C) in the case of a summary judgment." Id. at 675, 643 N.E.2d at 578. | Motion for summary judgment may be based on matter which is admitted due to party's failure to answer requests for admissions. | Do unanswered requests for admissions render the matter requested conclusively established and a motion for summary judgment may be based on such admitted matter? | 029874.docx | LEGALEASE-00135224-LEGALEASE-00135225 | Condensed, Order, SA, Sub | 0.9 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12434 | Nance v. Nance, 880 S.W.2d 341 | 307A+716 | Whether to allow trial counsel to withdraw is within the sound discretion of the trial court. Moore Enterprises, Inc., v. Franklin Newspapers, Inc., 716 S.W.2d 907, 908[4"6] (Mo.App.1986). Although that discretion is judicial in nature and reviewable on appeal, every intendment is in favor of the trial court's ruling. Id. at 909. The fact that an attorney withdraws from a case does not give a party an absolute right to a continuance. Id. | Fact that attorney withdraws from case does not automatically give party an absolute right to continuance. | Does the fact that an attorney withdraws from a case not give a party an absolute right to a continuance? | 030116.docx | LEGALEASE-00135924-LEGALEASE-00135925 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 12435 | Mack v. Arnold Gregory Mem'l Hosp., 90 A.D.2d 969 | 307A+483 | The Napodano affidavit clearly fails that test. The other affidavit submitted was that of the University of Rochester's attorney, who stated that he had served defendant Craig with a notice to admit, that there had been no reply to the matters set forth therein, and therefore that it must be deemed admitted that Craig was not acting as a "representative, agent, servant and/or employee of the University of Rochester." Not only is it impermissible to hold that one defendant's failure to respond to the notice to admit of another defendant is binding on a plaintiff (see Brown v. Godefroy Mfg. Co., 278 App.Div. 242, 104 N.Y.S.2d 444), but the facts which defendant seeks to establish thereby constitute the ultimate facts to be determined and thus must be resolved on the basis of the evidence (Felice v. St. Agnes Hosp., 65 A.D.2d 388, 395"396, 411 N.Y.S.2d 901). We note that where, as here, the facts are exclusively within the knowledge and control of the movant, and may be revealed through pretrial disclosure, summary judgment should be denied (Torres v. County of Erie, 64 A.D.2d 1020, 409 N.Y.S.2d 850). | One defendant's failure to respond to notice to admit of another defendant is not binding on plaintiff. | Is one defendant's failure to respond to notice to admit of another defendant not binding on a plaintiff? | Pretrial Procedure - Memo # 4108 - C - SB.docx | ROSS-003291088-ROSS-003291089 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 12436 | Redfield v. Norblad, 135 Or. 180 | 371+2001 | The Attorney General seems to remain convinced that chapter 429 of 1929 Session Laws, which is the act under attack, identifies itself as an income tax statute, and that our decision fails to pay sufficient heed to these identifying earmarks. However, we notice that tax legislation of other states, which presented even more evidence of being income tax statutes, have been held to be in reality property tax statutes. See, for instance, Cudahy Packing Co. v. Minn., 246 U. S. 451, 38 S. Ct. 373, 62 L. Ed. 827. In determining the nature of the tax, the practical operation of the statute and its actual effect are very important circumstances. Quaker City Cab Co. v. Pa., 277 U. S. 389, 48 S. Ct. 553, 72 L. Ed. 927; Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445; and Nicol v. Ames, 173 U. S. 510, 19 S. Ct. 522, 43 L. Ed. 786. The ultimate effect of chapter 429 is to take from intangibles a part of their value. It clips from a bond a part of the interest coupons as effectively as if the state performed the physical act. That piece of tax legislation operates upon its subject matter--intangible property--more directly than the ad valorem tax on real property. It is these circumstances, together with the others mentioned in our previous decision, which have brought us to our conclusion that this statute imposes a tax upon property. | In determining nature of tax, practical operation of statute and its actual effect are persuasive circumstances. | Are the practical operation of the statute and its actual effect important circumstances in determining the nature of the tax? | 045234.docx | LEGALEASE-00134998-LEGALEASE-00134999 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 12437 | Hoery v. United States, 64 P.3d 214 | 386+12 | The elements for the tort of trespass are a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that property. Public Serv. Co. of Colorado v. Van Wyk, 27 P.3d 377, 389 (Colo.2001); Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 933 (Colo.1997). The intrusion can occur when an actor intentionally enters land possessed by someone else, or when an actor causes something else to enter the land. For instance, an "actor, without himself entering the land, may invade another's interest in its exclusive possession by ... placing a thing either on or beneath the surface of the land." Restatement (Second) of Torts "" 158(a) cmt. i, 159(1) (1965). A landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property. Miller v. Carnation Co., 33 Colo.App. 62, 68, 516 P.2d 661, 664 (1973)(citing Fairview Farms, Inc. v. Reynolds Metals Co., 176 F.Supp. 178 (D.Or.1959)); see also Restatement (Second) of Torts " 158(a) cmt. i ("It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter."). | An actor, without himself entering the land, may invade another's interest in its exclusive possession, as element of trespass, by placing a thing either on or beneath the surface of the land. Restatement (Second) of Torts SS 158(a) Comment, 159(1). | Can a trespass occur if individuals set in motion actions that intrude on another's land and cause damage? | 047374.docx | LEGALEASE-00135262-LEGALEASE-00135263 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12438 | United States v. Marmolejo, 89 F.3d 1185 | 63+1(2) | We must now determine whether these conjugal visits had a value of $5,000 or more. Again, we observe that the statute does not contain language "to indicate that "any transaction involving $5,000" means "any federally funded transaction involving $5,000" or "any transaction involving $5,000 of federal funds." " Westmoreland, 841 F.2d at 576. "[A]ny reference to federal funds is conspicuously absent from the operative provisions," allowing Congress to ensure the integrity of federal funds by protecting the integrity of the organizations that receive them. Id. at 577"78. The statute does not specifically require that the payor or the payee of the bribe value the transaction at $5,000.10 Instead, the $5,000 triggering provision ensures that the statute reaches acts of bribery involving transactions of substantial value. Id. at 578. To decide whether a transaction involving intangibles has a value of $5,000 or more, courts should look to traditional valuation methods. See Mongelli, 794 F.Supp. at 531. We conclude that the conjugal visits in this case did have a value which exceeded $5,000. We arrive at this estimate in the same way that an appraiser would value an asset"by looking at how much a person in the market would be willing to pay for them. Id.; see also Herman v. United States, 289 F.2d 362 (5th Cir.) (stating that to determine if the value of stolen property is $5,000 or more, as required in 18 U.S.C. " 2314, courts must look at "the price a willing buyer would pay a willing seller at the time and place the property was stolen"), cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961); United States v. Seagraves, 265 F.2d 876 (3d Cir.1959) (stating that amount defendants paid for stolen property can form basis for expert's valuation of the property under 18 U.S.C. " 2314). Pursuant to the bribery transactions, Beltran was willing to pay Marmolejo $6,000 a month plus $1,000 for each visit. Therefore, the transactions between Beltran and Marmolejo | To determine whether transaction with government official that involves intangibles has value of $5,000 or more, as required to establish violation of bribery statute, courts should look to traditional valuation methods. 18 U.S.C.A. S 666(a)(1)(b). | "How should the juries decide whether a bribe of intangibles has a value of $5,000 or more?" | 011325.docx | LEGALEASE-00136905-LEGALEASE-00136906 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 12439 | Com. v. Schultz, 168 Pa. Super. 435 | 67+3 | Defendants contend that they cannot be convicted of burglary because their entry into the taverns was an entry into a business place at the implied invitation of the owners, and not a wilful and malicious entry as defined by the statute. Section 901 of the Penal Code of June 24, 1939, P.L. 872, 18 P.S. " 4901, describes burglar y as follows: "Whoever, at any time, wilfully and maliciously, enters any building, with intent to commit any felony therein, is guilty of burglary." Under this section of the Act the elements of burglary "now are the intent to commit a felony and the successful and effective overt act directed toward the commission of the felony by the wilful and malicious entry into a building." Com. v. Hellner, 160 Pa.Super. 158, 160, 50 A.2d 512, 513. The entry is wilful and malicious, or felonious, within the statute, when made with the intent to commit a felony in the building. The fact that the building entered was a store, tavern, or restaurant, and open to the public, does not prevent the crime from being burglary if the entry is wilful and malicious, that is, made with the intent to commit a felony therein. Under statutes providing that entry with intent to commit a felony is burglary, eliminating the common law requirement of breaking, it has been held that one could be convicted of burglary for entering a store with larcenous intent, although the entry was made during business hours and without force. Annotation, 23 A.L.R. 288; 9 Am.Jur., Burglary, " 4, note 3, p. 242; 12 C.J.S., Burglary, " 12, p. 676; 5 Words & Phrases, Burglary, p. 948; People v. Corral, 60 Cal.App.2d 66, 140 P.2d 172. Contra: Stowell v. People, 104 Colo. 255, 90 P.2d 520. The consent to enter such building is only a qualified one-a consent to enter for proper purposes. Whatever felony is committed in the building is separate and distinct from the felonious entry. Com. ex rel. Moszczynski v. Ashe, 343 Pa. 102, 105, 21 A.2d 920. In the present case, the wilful and malicious, or felonious, entry | Under statute providing that whoever, at any time, "willfully and maliciously" enters any building with intent to commit any felony therein is guilty of burglary, entry is "willful and malicious", or felonious, within statute, when made with intent to commit felony in building, and fact that building entered was store, tavern, or restaurant, and open to public, does not prevent crime from being "burglary" if entry is willful and malicious, that is made, with intent to commit felony therein. 18 P.S. S 4901. | Does entry into a structure with intent to commit any felony constitute burglary? | Burglary - Memo 136 - JS.docx | ROSS-003317436-ROSS-003317438 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 12440 | Indiahoma Refining Co. v. Wood, 255 S.W. 212 | 260+99(2) | But we believe that the St. Louis & Fort Worth Producing Company is liable on the ground of partnership. When the Home Oil & Refining Company accepted from the plaintiff an assignment to one-half of the lease, under an agreement that each would bear one-half of the expenses of developing and operating the oil and gas lease, a mining partnership was created. The purchase by the St. Louis & Fort Worth Producing Company of the Home Oil Refining Company's interest in the partnership contract made the St. Louis & Fort Worth Producing Company a partner with the plaintiff (Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S.W. 122, Ann.Cas.1916E, 446), and liable for one-half of the expenses thereafter incurred in the usual course of the partnership venture. Randall v. Merideth, 76 Tex. 669, 13 S.W. 576. It is true the St. Louis & Fort Worth Producing Company acquired the Home Oil Refining Company's interest in the partnership contract without the plaintiff's knowledge, but the plaintiff's consent was not necessary under the law applying to mining partnerships. In such case the delectus personae-the right of the members to agree upon the persons to be admitted into the relation of mutual trust, as in ordinary trading partnerships-does not exist. Bissell v. Foss, 114 U.S. 252, 5 Sup.Ct. 851, 26 L.Ed. 126. By express contract plaintiff was given the management and authority to create an indebtedness for the development and operation of the lease, as shown by the agreement between plaintiff and the Home Oil Refining Company. The assignee bought with knowledge of the purpose of the association and the power of the managing agent. We think his liability is that of a member of a limited partnership. It is said by Thornton, in "The Law of Oil and Gas," that-"It is a cardinal rule of all ordinary partnerships that one about to engage in a partnership enterprise has the right to select his partners; in such a partnership the delectus personae has a part. But such | In mining partnerships, the delectus personae, the right of members to agree upon the persons to be admitted into the relation of mutual trust as in ordinary trading partnerships, does not exist. | Does the term delectus personae mean the right of a partner to exercise his choice in relation to the admission of new members to the firm? | 022257.docx | LEGALEASE-00136217-LEGALEASE-00136218 | Order, SA, Sub | 0.92 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12441 | Arnett v. Keith, 582 S.W.2d 363 | 307A+716 | We view the question before us as requiring a determination whether the trial court abused its discretion. The fact that an attorney withdraws from a case does not give a party an absolute right to a continuance. Harms v. Simkin, 322 S.W.2d 930, 933(4) (Mo.App.1959); Annot., 48 A.L.R.2d 1155, 1157-1159, s 2 (1956). The decision whether to grant or deny a continuance rests largely in the discretion of the trial court, and on appeal, every intendment is in favor of the trial court's ruling. Harms v. Simkin, supra, 322 S.W.2d at 933; Savings Finance Corp. v. Blair, 280 S.W.2d 675, 678(7) (Mo.App.1955). The defendants make much of the fact that their attorney of record filed an application to withdraw only nine days before trial, and that motion was never formally ruled. Nevertheless, defendant C. E. Keith said he knew five days before trial that his counsel had withdrawn, and what is much more illuminating, testified that he had "quit going" to see his attorney, inferably some time before the trial. Also revealing, in our view, is Mr. Keith's testimony that he had given his attorney of record a personal check for $5,000, but did not know to which contract, the written or oral contract, the check had been credited. | Fact that attorney withdraws from case does not give party absolute right to continuance. | Does the fact that an attorney withdraws from case give party absolute right to continuance? | 029436.docx | LEGALEASE-00136351-LEGALEASE-00136352 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12442 | K.H. v. Jefferson Cty. Dep't of Human Res., 106 So. 3d 420 | 307A+716 | In any event, the juvenile court's decision to continue with the dispositional trial despite the absence of the mother's retained counsel is not reversible error. "As a general rule, continuances are not favored under Alabama law." D.A. v. Calhoun Cnty. Dep't of Human Res., 976 So.2d 502, 504 (Ala.Civ.App.2007). Even in situations in which a party has a right to counsel and counsel is not present, a continuance may not be required. As we explained in Papaspiros v. Southeast General Contractors, Inc., 982 So.2d 1099, 1103 (Ala.Civ.App.2007) (quoting Ex parte McCain, 804 So.2d 186, 189 (Ala.2001) (See, J., concurring specially)), " "[the] constitutional right [to counsel in a civil matter], however, is not without limitation, and a trial court's refusal to grant a continuance when counsel fails to appear will not be deemed reversible error in every case." " We noted in Papaspiros that,"[a]lthough the record does not indicate with certainty why an attorney did not appear at trial with [the defendants], it tends to indicate that an attorney did not appear at trial with [the defendants] because they became dissatisfied with [their attorney] approximately a month before trial and they could not secure the services of a replacement at that late date | Even in situations in which a party has a right to counsel and counsel is not present, a continuance may not be required. U.S.C.A. Const.Amend. 6. | "Even in situations in which a party has a right to counsel and counsel is not present, may a continuance not be required?" | 029480.docx | LEGALEASE-00136521-LEGALEASE-00136522 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 12443 | Montalbano Builders v. Rauschenberger, 341 Ill. App. 3d 1075 | 307A+483 | The facts set out in the request to admit that was not answered by the plaintiff are, by virtue of the failure to respond, deemed admitted. Mt. Zion State Bank & Trust v. Consolidated Communications, Inc., 169 Ill.2d 110, 125, 214 Ill.Dec. 156, 660 N.E.2d 863, 872 (1995). Count I of the countercomplaint alleged that Rauschenberger was not paid for the detention pond and seed blanket installed at a subdivision owned by Montalbano. Count III of the countercomplaint alleged that Rauschenberger was not paid for the laying of sod and grading of land it completed at another subdivision owned by Montalbano. | The facts set out in a request to admit that was not answered are, by virtue of the failure to respond, deemed admitted. | "Are the facts set out in a request to admit that was not answered by the plaintiff, by virtue of the failure to respond, deemed admitted?" | Pretrial Procedure - Memo # 3609 - C - VP.docx | ROSS-003289793-ROSS-003289794 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 12444 | Lucas v. Clark, 347 S.W.3d 800 | 307A+483 | The rule regarding requests for admissions "was designed, not as a trap to prevent the presentation of the truth in a full hearing but as a tool for the fair disposition of litigation with a minimum of delay." Taylor v. Lewis, 553 S.W.2d 153, 160 (Tex.Civ.App.-Amarillo 1977, writ ref'd n.r.e.). When a party uses deemed admissions to try to preclude presentation of the merits of a case, however, due process concerns may arise. Wheeler v. Green, 157 S.W.3d 439, 443 (Tex.2005); In re Rozelle, 229 S.W.3d 757, 764 (Tex.App.-San Antonio 2007) ("[Due process] is the guiding rule and principle that applies when requests for admissions are not used as intended, and when a party uses deemed admissions to try to preclude presentation of the merits of a case." (internal quotation marks and citation omitted)). Therefore, overly broad, merits-preclusive requests for admissions are improper and may not result in deemed admissions. See In re Estate of Herring, 970 S.W.2d 583, 589 (Tex.App.-Corpus Christi 1998, no pet.) (holding that admissions requesting party to "admit [wife] did not transfer community property ... without your knowledge and consent" and "admit you have not been injured in any manner as a direct result of the alleged acts" were sweepingly broad and not deemed admitted); Birdo, 842 S.W.2d at 701 (holding that request is improper and will not be deemed admitted where party requests that opposing party admit or deny every allegation made in petition); Powell v. City of McKinney, 711 S.W.2d 69, 71 (Tex.App.-Dallas 1986, no writ) (holding that request asking plaintiffs to "admit [they] no longer wish to pursue their cause of action in the above styled and numbered cause" was sweepingly broad and should not be deemed admitted); see also LRT Record Servs., Inc. v. Archer, No. 05"00"00324"CV, 2001 WL 221563, 1, 2001 Tex.App. LEXIS 1447, at 2"3 (Tex.App.-Dallas Mar. 7, 2001, no pet.) (mem. op.) ("[S]weepingly broad requests for admission may not result in deemed admissions."). | Overly broad, merits-preclusive requests for admissions are improper and may not result in deemed admissions. | "Are overly broad, merits-preclusive requests for admissions improper and may not result in deemed admissions?" | 029855.docx | LEGALEASE-00136860-LEGALEASE-00136861 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 12445 | Cross v. Cross, 891 N.E.2d 635 | 307A+483 | The first issue is whether the trial court abused its discretion by granting Victoria's motion to withdraw admissions. Under Ind. Trial Rule 36, the failure to respond in a timely manner to a request for admissions causes those matters to be admitted and conclusively established by operation of law.1 Ind. Tr. R. 36; City of Muncie v. Peters, 709 N.E.2d 50, 54"55 (Ind.Ct.App.1999), reh'g denied, trans. denied. Requests for admissions under Ind. Trial Rule 36 may, in addition to seeking evidentiary matters, ask for admissions as to legal issues, contentions, and conclusions, if related to the facts of the case. Id. (citing General Motors Corp. v. Aetna Cas. & Sur. Co., 573 N.E.2d 885, 888 (Ind.1991)). Matters admitted under the rule are deemed "conclusively established," eliminating the need to prove them at trial. Id. | Matters admitted under the rule that provides that failure to respond in a timely manner to a request for admissions causes those matters to be admitted are deemed conclusively established, eliminating the need to prove them at trial. Trial Procedure Rule 36. | Do matters deemed to be conclusively established eliminate the need to prove them at trial? | 030167.docx | LEGALEASE-00137039-LEGALEASE-00137040 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12446 | Cazenovia Coll. v. Patterson, 45 A.D.2d 501 | 307A+483 | One other point is deserving of brief discussion. Plaintiff served upon defendant a notice to admit, pursuant to CPLR 3123, containing five items. In his response, defendant expressly admitted two items and expressly denied two, but failed to answer the item requesting him to admit that the College was not notified of his daughter withdrawal. Under the statute, the failure to deny this item would normally be deemed an admission, but in an affidavit by defendant attorney it is stated that this omission was an inadvertent error. Since the issue raised by this item was at the heart of the controversy, and an admission would be completely contrary to defendant pleadings, we are of the view that in the interests of justice the "admission" should be deemed amended (CPLR 3123, subd. (b)) so as to constitute a denial. If this denial is, after trial, found to have been unreasonable, defendant will be subject, of course, to statutory penalty (CPLR 3123, subd. (c)). | Under statute, failure to deny item contained in notice to admit would normally be deemed an admission. CPLR 3123. | "Under statute, will the failure to deny an item contained in a notice to admit normally be deemed an admission?" | 030189.docx | LEGALEASE-00136700-LEGALEASE-00136701 | Condensed, Order, SA | 0.88 | 1 | 1 | 0 | 1 | 1 |
| 12447 | Dobbelaere v. Cosco, 120 Ohio App. 3d 232 | 307A+483 | "It is settled law in Ohio that unanswered requests for admission render the matter requested conclusively established for the purpose of the suit, Cleveland Trust Co. v. Willis (1985), 20 Ohio St.3d 66, 20 OBR 364, 485 N.E.2d 1052, and a motion for summary judgment may be based on such admitted matter. Weva Oil Corp. v. Belco Petroleum Corp. (1975), 68 F.R.D. 663; Luick v. Graybar Elec. Co. (1973), 473 F.2d 1360; First Natl. Bank Co. v. Ins. Co. (1979), 606 F.2d 760; St. Paul Fire & Marine Ins. Co. v. Battle (1975), 44 Ohio App.2d 261, 73 O.O.2d 291, 337 N.E.2d 806. Failure to answer is not excused because the matters requested to be admitted are central or noncentral to the case or must be proven by the requesting party at trial. See Youssef v. Jones (1991), 77 Ohio App.3d 500, 602 N.E.2d 1176." Klesch v. Reid (1994), 95 Ohio App.3d 664, 674, 643 N.E.2d 571, 577-578; T & S Lumber Co. v. Alta Constr. Co. (1984), 19 Ohio App.3d 241, 243-244, 19 OBR 393, 394-397, 483 N.E.2d 1216, 1218-1220. "[W]here a party files a written request for admission[,] a failure of the opposing party to timely answer the request constitutes a conclusive admission pursuant to Civ.R. 36 and also satisfies the written answer requirement of Civ.R. 56(C) in the case of a summary judgment." Id. at 675, 643 N.E.2d at 578. | Unanswered requests for admission render matter requested conclusively established for purpose of suit. | Do unanswered requests for admission render a matter requested conclusively established for purpose of the suit? | 030214.docx | LEGALEASE-00136207-LEGALEASE-00136208 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12448 | Bullistron v. Augustana Hosp., 52 Ill. App. 3d 66 | 307A+723.1 | We note at the outset that plaintiff placed herself at a distinct disadvantage before the trial court by failing to comply with the requirements of Supreme Court Rule 231 when she initially sought a continuance on November 13, 1970. Counsel did not choose to file the requisite affidavit and written motion, relying instead on his oral representations to the court. Counsel admits that he "structured his argument inconcisely." It was not until November 17, 1970 that plaintiff's allegations in support of her motion for continuance were cogently articulated within the context of plaintiff's written motion to vacate the judgment previously entered against her. Failure to comply with the relevant statutory provisions is, of itself, grounds for denial of a motion for continuance. Parker v. Newman, supra. | Failure to comply with relevant statutory provisions is, of itself, grounds for denial of a motion for continuance. Supreme Court Rules, rule 231, S.H.A. ch. 110A, S 231. | "Is the failure to comply with relevant statutory provisions, of itself, grounds for denial of a motion for continuance?" | 030247.docx | LEGALEASE-00136878-LEGALEASE-00136879 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 12449 | Mangelsdorf Bros. Co. v. Harnden Seed Co., 132 Mo. App. 507 | 307A+723.1 | It is urged by defendant that the court erred in overruling its application for a continuance, but we do not find any abuse of discretion in what was done. Defendant was not entitled to a continuance from the mere fact that, in effect, a pleading of its adversary had been amended. The court had the right to call on defendant to show that it was not fully prepared to meet issues tendered for the first time by the amended pleadings. Such showing may be made either by affidavit or oral testimony, and, where it appears reasonably probable that the applicant is not prepared to go on with the trial, a continuance should be granted; but where, as here, is appears from the pleadings of defendant, his application for a continuance, and his oral testimony, that he has prepared himself to meet the issues tendered by the amendment, it would be nothing short of farcical to grant him a continuance solely on the ground that the petition had been amended in a material respect. | The court may, on application of defendant for a continuance after the allowance of an amendment to the petition, call on defendant to show that he is not prepared to meet issues tendered by the amendment, which showing may be made either by affidavit or oral testimony. | Can the court call on a defendant to show that he is not prepared to meet issues tendered by the amendment? | Pretrial Procedure - Memo # 4034 - C - NS.docx | ROSS-003316921-ROSS-003316922 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 12450 | Lucas v. Casady, 12 Iowa 567 | 307A+723.1 | The plaintiff under the provisions of section 3016 of the Revision, filed written objections to the defendant's motion for a continuance, and among others is the following, viz: "The affidavit was not filed until the third day of the term; no reason is given why it was not filed in proper time." Section 3014 of the Revision provides, "that a motion for a continuance must be filed on the second day of the term, and if made after the second day of the term the affidavit must state facts constituting an excuse for the delay in making it." It appears from the record that the defendant's motion was not filed until the third day of the term, and no facts are stated in the affidavit in excuse for such delay. This provision of the law is direct and positive, and unless such motion is made on the second day of the term, the court can exercise no discretion in the matter unless an excuse is offered for the delay. We cannot say that this is an error without prejudice. The plaintiff is as a matter of right entitled to a showing for such delay, and if none is made, not be sustained. For this cause the judgment is reversed and cause remanded. | Under section 3014, an application for a continuance should be overruled if not made the second day of the term, or does not state facts constituting a sufficient excuse for the delay in making it. | Should a motion for continuance be made on the second day of the term? | Pretrial Procedure - Memo # 4044 - C - SK.docx | ROSS-003305183-ROSS-003305184 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 12451 | Christian v. Mansfield, 25 Ga. 628 | 307A+723.1 | ttorney may make the showing for a continuance, when the party resides out of the county. And so is the common law. Tidd Prac. 722, H. Black. 637. | When the party resides out of the county, the attorney may make the showing for a continuance, provided for by the 35th rule of Court. The case is the same, when the privy liable over to the party, resides out of the county, if it is he that defends the suit. | "When the party resides out of the county, can the attorney make the showing for a continuance?" | 030385.docx | LEGALEASE-00136710-LEGALEASE-00136711 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12452 | Hudson v. Winn, 859 S.W.2d 504 | 307A+483 | When the default judgment was appealed, we determined that the trial court lacked personal jurisdiction over Winn and Regional. Therefore, the judgment was void. Cook v. Cameron, 733 S.W.2d 137, 140 (Tex.1987). When a court lacks jurisdiction, any action taken by the court is void and should be regarded as if it never existed. In the Interest of Frost, 815 S.W.2d 890, 892 (Tex.App."Amarillo 1991, no writ). Thus, in the absence of jurisdiction, the trial court's order on March 20, 1989, is void. | Where trial court lacked personal jurisdiction over defendants, both its default judgment and its order deeming requests for admissions admitted as a matter of law were void. | "Where a trial court lacks personal jurisdiction over defendants, is the default judgment entered by the court void at law?" | 030466.docx | LEGALEASE-00136065-LEGALEASE-00136066 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 12453 | Terrell v. Mississippi Bar, 662 So. 2d 586 | 307A+723.1 | Following our procedural guidelines, Terrell should have filed a formal continuance motion under Miss.Code Ann. " 99-15-29 (1994), which requires an affidavit setting forth, among other things, that she has used due diligence and that the continuance is not sought for delay, but so justice may be done. "Exigencies which arise during ... trials are often rightly met with such [ore tenus ] pleadings, but the substance and content of such pleadings required by a statute cannot be ignored." McClendon v. State, 335 So.2d 887, 889 (Miss.1976). The decision to grant or deny a continuance is one left to the sound discretion of the court. Johnson v. State, 631 So.2d 185, 189 (Miss.1994) (citing Wallace v. State, 607 So.2d 1184, 1190 (Miss.1992); Morris v. State, 595 So.2d 840, 844 (Miss.1991); Fisher v. State, 532 So.2d 992, 998 (Miss.1988)). "Unless manifest injustice appears to have resulted from the denial of the continuance, this Court should not reverse." Johnson, 631 So.2d at 189 (citing Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss.1993)). This Court has consistently held that a trial court will not be held in error in denying a continuance where the defendant fails to follow the procedures outlined by statute and case law. Johnson, 631 So.2d at 190 (citing Pinson v. State, 518 So.2d 1220, 1222 (Miss.1988); Pool v. State, 483 So.2d 331, 336 (Miss.1986)). | No abuse of discretion will be found in denial of motion for continuance, where party fails to follow procedures outlined by statutes and case law for timely bringing such a motion. Code 1972, § 99-15-29. | Will trial court held in error in denying a motion for continuance where a party fails to follow procedures outlined by statutes and case law? | 030786.docx | LEGALEASE-00136461-LEGALEASE-00136462 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 12454 | Halsey v. Whitlock, 3 N.J.L. 869 | 231+107(1) | This proceeding cannot be supported. A cause cannot be continued in this way; before an adjournment can take place, the summons must be returned, and the parties is court, or at least, the plaintiff must appear. | Before an adjournment can take place in the justice's court, a summons must be returned and the parties in court, or at least the plaintiff must appear. | Should the summons be returned and the plaintiff appear before an adjournment can take place? | 030821.docx | LEGALEASE-00137045-LEGALEASE-00137046 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 12455 | Chenango Cty. Nat. Bank & Tr. Co. of Norwich v. Lyon, 190 Misc. 358 | 307A+91 | Great liberality is permitted in the examination of an adverse party before trial. This is particularly so when the party sought to be examined stands in a fiduciary capacity. Oshinsky v. Gumberg, 188 App.Div. 23, 176 N.Y.S. 406; Colonial Trust Co. v. Alexander et al., 251 App.Div. 856, 296 N.Y.S. 918. Plaintiff seeks judicial approval of its acts in relation to which the examination is sought. The defendant Harold S. Lyon claims an interest in the remainder of said trust fund, and the plaintiff seeks to bind him in this action as to its various transactions in the administration of the fund. It is clear that under such circumstances the defendant Harold S. Lyon is entitled to the examination sought. | Great liberality is permitted in the examination of an adverse party before trial particularly when the party sought to be examined stands in a fiduciary capacity. | Should there be great liberality in examinations of an adverse party before trial? | Pretrial Procedure - Memo # 4558 - C - SK.docx | ROSS-003331174-ROSS-003331175 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 12456 | Ned v. Union Pac. Corp., 2014-1310 (La. App. 3 Cir. 4/15/15) | 307A+747.1 | Pretrial conferences are governed by La.Code Civ.P. art. 1551, which provides that the trial court may, "in its discretion[,] direct the attorneys for the parties to appear before it for conferences to consider any of the following[,]" including "[t]he control and scheduling of discovery[.]" La.Code Civ.P. art. 1551(A)(6). "A trial court has wide discretion to provide for pretrial orders and to ensure that the terms of the order are enforced." Succession of Harrell v. Erris"Omega Plantation, Inc., 12"696, p. 5 (La.App. 3 Cir. 12/5/12), 104 So.3d 751, 755, writ denied, 13"438 (La.4/5/13), 110 So.3d 595. | A trial court has wide discretion to provide for pretrial orders and to ensure that the terms of the order are enforced. LSA-C.C.P. art. 1551. | Does a trial court have wide discretion to provide for pre-trial orders? | 031192.docx | LEGALEASE-00137035-LEGALEASE-00137036 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 12457 | Appeal of Jenks, 158 N.H. 174 | 413+2 | We recognize that "[t]his court construes liberally the Workers' Compensation Law in order to give the broadest reasonable effect to its remedial purpose. Thus, when construing the statute, we resolve all reasonable doubts in favor of the injured worker." Appeal of Cote, 139 N.H. 575, 578, 660 A.2d 1090 (1995) (citation omitted). Nevertheless, "[t]he nature and extent of compensation ... is governed by the express statutory language and that which can be fairly implied therefrom." Rooney v. Fireman's Fund Ins. Co., 138 N.H. 637, 638"39, 645 A.2d 52 (1994) (quotation omitted). Further, because the right to compensation is statutory in its origin, injured workers' rights can be no greater than what the legislature has provided. Appeal of N.H. Youth Dev. Ctr., 152 N.H. 86, 88, 871 A.2d 67 (2005). | Because the right to compensation is statutory in its origin, injured workers' rights can be no greater than what the legislature has provided. RSA 281-A:1 et seq. | "Since the right to compensation is statutory in its origin, can injured workers rights be greater than what the legislature has provided?" | 048046.docx | LEGALEASE-00136982-LEGALEASE-00136983 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 12458 | Mathews v. Diaz, 426 U.S. 67 | 3.16E+38 | In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.The exclusion of aliensand the reservation of the power to deporthave no permissible counterpart in the Federal Government's power to regulate the conduct of its own citizenry. The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is "invidious." | Congress, which has broad power over immigration and naturalization and regularly makes rules regarding aliens that would be unacceptable if applied to citizens, has no constitutional duty to provide all aliens with the welfare benefits provided to citizens. Social Security Act, SS 1831 et seq., 1836(2) as amended 42 U.S.C.A. SS 1395j et seq., 1395o (2). | Can the Government make rules as to aliens that would be unacceptable if applied to citizens? | 007015.docx | LEGALEASE-00137650-LEGALEASE-00137651 | Condensed, SA | 0.25 | 0 | 1 | 0 | 1 | |
| 12459 | Morbeto v. United States, 293 F. Supp. 313 | 34+5(4) | AR No. 135-25 follows the statutory definition of "religious training and belief", thus excluding claims of conscientious objection based merely upon political or philosophical views. In addition, this regulation clearly establishes that there is no vested right to a discharge, rather that such action lies within the discretion of the military, and requests will be granted to the extent practicable and equitable. In re Kanewske, 260 F.Supp. 521 (N.D.Cal.1966), appeal dismissed as moot, 383 F.2d 388 (9th Cir. 1967). | There is no vested right to a discharge for conscientious objector status and such discharge lies within discretion of military, and requests will be granted to extent practicable and equitable. Universal Military Training and Service Act, S 6(j) as amended 50 U.S.C.A. App. S 456(j). | Does the right to discharge a conscientious objector lie with the military? | 008500.docx | LEGALEASE-00137349-LEGALEASE-00137350 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12460 | Lawson v. Fin. Am. Private Brands, 537 S.W.2d 483 | 83E+813 | Prior to the adoption of the Uniform Commercial Code, the mere possession by a plaintiff of notes payable to the order of a different payee, and which were not endorsed by the payee, was not sufficient to establish the prima facie title to the instruments. Texas State Bank & Trust Co. v. St. John, 103 S.W.2d 1104 (Tex.Civ.App."El Paso 1937, err. dism'd); 12 Am.Jur. 2d, Bills and Notes, s 1194 at 218. The last authority points out that this is clearly the rule under the Uniform Commercial Code. Negotiation of commercial paper not payable to bearer takes effect only when the endorsement is made, and until that time there is no presumption that the transferee is the owner. The transferee, without endorsement of an order instrument, is not a holder and so is not aided by any presumption that he is entitled to recover on the instrument. He must account for his possession by proving the transaction through which he acquired the note. Tex.Bus. &Comm.Code Ann. s 3.201(c), Comment 8; 12 Am.Jur.2d, s 1197 at 224. | Negotiation of commercial paper not payable to bearer takes effect only when endorsement is made and until that time there is no presumption that a transferee is the owner. V.T.C.A., Bus. & C. SS 1.201(20), 3.201(c), 3.301, 3.307. | Whether Negotiation of Commercial paper takes place only when an indorsement is made? | 009415.docx | LEGALEASE-00137709-LEGALEASE-00137710 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 12461 | Chicago, R.I. & P. Ry. Co. v. Daniel, 169 Ark. 23 | 388+141 | In reaching this conclusion, we observe the well-settled rules often announced, that when a cause reaches this court and the verdict is challenged, the only inquiry is whether there is any substantial evidence to sustain it, and the evidence must be given its strongest probative force in favor of the verdict; and that where the testimony is undisputed and all reasonable minds must draw the same conclusion of fact from it, then it is the duty of the court to declare, as a matter of law, the only conclusion or finding of fact to be reached from a consideration of the testimony. Fowler v. Hammett, 162 Ark. 307-317, 258 S. W. 392. | If testimony is undisputed, and all reasonable minds must draw same conclusion of fact therefrom, court has duty to declare, as matter of law, conclusion to be reached therefrom. | Is it the duty of courts to declare conclusions? | 023359.docx | LEGALEASE-00137127-LEGALEASE-00137128 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 12462 | Juen v. Juen, 12 Ill. App. 3d 284 | 307A+501 | The terms nonsuit and voluntary dismissal without prejudice are used interchangeably because there is no difference in effect between them. Gilbert v. Langbein (1951), 343 Ill.App. 132, 98 N.E.2d 140; Brown v. Lawler (1906), 130 Ill.App. 540. | Terms "nonsuit" and "voluntary dismissal without prejudice" are used interchangeably because there is no difference in effect between them. S.H.A. ch. 110, S 52. | "Is there a difference in effect between the terms ""nonsuit"" and ""voluntary dismissal without prejudice""?" | 024739.docx | LEGALEASE-00137806-LEGALEASE-00137807 | Condensed, SA | 0.31 | 0 | 1 | 0 | 1 | |
| 12463 | Robinson v. Burton, 49 So. 3d 660 | 307A+713 | Trial judges are vested with "broad discretionary powers in granting or refusing to grant a continuance." Frye v. S. Farm Bureau Cas. Ins. Co., 915 So.2d 486, 490 ( 12) (Miss.Ct.App.2005) (citing McClendon v. State, 335 So.2d 887, 888 (Miss.1976)). We review this issue for an abuse of discretion. Owens v. Thomae, 759 So.2d 1117, 1120 ( 10) (Miss.1999). We do not reverse the denial of a motion for continuance "unless manifest injustice appears to have resulted from [its] denial[.]" Davidson v. N. Cent. Parts, Inc., 737 So.2d 1015, 1017 ( 5) (Miss.Ct.App.1998) (citing Thomas v. Hilburn, 654 So.2d 898, 903 (Miss.1995)). | Trial judges are vested with broad discretionary powers in granting or refusing to grant a continuance. | Are trial court judges vested with broad discretionary powers in granting or refusing to grant a continuance? | 030305.docx | LEGALEASE-00137468-LEGALEASE-00137469 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12464 | Excel Staffing Serv. v. HP Reidsville, 172 N.C. App. 281 | 307A+477.1 | It is true that our Supreme Court instructed that when construing the Rules of Civil Procedure "[t]echnicalities and form are to be disregarded in favor of the merits of the case[ ]" and that "[l]iberality is the canon of construction." Lemons v. Old Hickory Council, Boy Scouts of America, Inc., 322 N.C. 271, 275, 367 S.E.2d 655, 657 (1988). However, to read Rule 36 as liberally as defendants ask us to do would effectively eviscerate the rule, a result we refuse to endorse. We hold that an answer to allegations in a complaint does not serve as a response to a request for admission, even if the matters addressed in both are identical. This argument is without merit. | An answer to allegations in a complaint does not serve as a response to a request for admission, even if the matters addressed in both are identical. Rules Civ.Proc., Rule 36, West's N.C.G.S.A. S 1A-1. | Does an answer to allegation in a complaint serve as a response to a request for admission? | 030309.docx | LEGALEASE-00137470-LEGALEASE-00137471 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 12465 | Teitelbaum v. Reliable Welding Co., 106 Ill. App. 3d 651 | 307A+723.1 | There is no duty imposed upon a trial court to continue a case when no request for a continuance has been made. (Thilman & Co. v. Esposito (1980), 87 Ill.App.3d 289, 293, 42 Ill.Dec. 305, 408 N.E.2d 1014; Francone v. Weigel Broadcasting Co., Inc. (1979), 79 Ill.App.3d 991, 994, 35 Ill.Dec. 164, 398 N.E.2d 1114.) While a request for a continuance sought because of the absence of material evidence under Supreme Court Rule 231(a) (73 Ill.2d R. 231(a)) requires that an affidavit accompany the motion (Mann v. People (1981), 98 Ill.App.3d 448, 54 Ill.Dec. 133, 424 N.E.2d 883), there is no similar mandatory affidavit requirement for a continuance upon other grounds pursuant to Rule 231(f), although sufficient cause normally will be presented by affidavit or testimony. (See e.g. Marshall v. Henning (1980), 91 Ill.App.3d 180, 182, 46 Ill.Dec. 645, 414 N.E.2d 529; Needy v. Sparks (1977), 51 Ill.App.3d 350, 358-59, 9 Ill.Dec. 70, 366 N.E.2d 327; Nixon v. Harris (1975), 31 Ill.App.3d 204, 333 N.E.2d 667.) The moving party must give especially grave reasons for continuance once a case has reached the trial stage because of the potential inconvenience to the witnesses, the parties and to the court. (Needy v. Sparks (1977), 51 Ill.App.3d 350, 358, 9 Ill.Dec. 70, 366 N.E.2d 327.) The critical issue before us here is whether the defendant made a proper request for continuance to the court. | There is no duty imposed upon a trial court to continue a case where no request for a continuance has been made. S.H.A. ch. 110, P 59. | Is there no duty imposed upon a trial court to continue a case where no request for a continuance has been made? | 030506.docx | LEGALEASE-00137195-LEGALEASE-00137196 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 12466 | Osagie v. Peakload Temp. Services, 91 S.W.3d 326 | 307A+723.1 | In the present case, Mr. Osagie does not deny that he agreed to the trial date, and there is nothing in the record to indicate the reason or reasons why he did not feel ready to proceed on the appointed date. While trial courts do have the discretion to grant continuances under the appropriate circumstances, the burden falls on the party asking for the continuance to explain to the trial court just what those circumstances are. In the absence of any such explanation, we do not believe the trial court abused its discretion in declining to grant Mr. Osagie a continuance. We also do not believe it was an abuse of discretion for the trial court to dismiss his claim after he refused to proceed. In fact, we are not sure what else the trial court could have, or should have, done. | Burden to explain to trial court circumstances for continuance falls on asking party. | Does the burden to explain to a trial court circumstances for continuance fall on an asking party? | 030512.docx | LEGALEASE-00137252-LEGALEASE-00137253 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12467 | Wooldridge v. Rickert, 33 La. Ann. 234 | 307A+723.1 | While the absence of leading counsel is, under the Act of the General Assembly, approved January 29th, 1858, a peremptory cause for continuance where such counsel may be absent in attendance on the session of the Legislature, and although the motion made by defendants for a continuance on these grounds was overruled, and the trial of the case proceeded with, the record contains no bill of exceptions taken to this ruling, and we cannot notice it. The fact appears that other counsel of the defendant being present, the trial by jury, which had been prayed for, was waived, and by consent the trial of the case was proceeded with. While the cause of continuance is peremptory, it may be waived, and in this case the consent to proceed with the trial, without filing a bill of exceptions, was a clear and unambiguous waiver and submission by the defendants. | Though, by Act Jan. 29, 1858, the absence of leading counsel is a peremptory cause for continuance, failure to except to the overruling of a motion for continuance on such ground is a waiver of the right. | Is the absence of leading counsel a peremptory cause for continuance? | 030575.docx | LEGALEASE-00137883-LEGALEASE-00137885 | Condensed, Order, SA, Sub | 0.76 | 1 | 1 | 1 | 1 | 1 |
| 12468 | Schmelzer v. Farrar, 40 Ohio App. 2d 440 | 307A+483 | A denial in part is an admission of the part not denied, unless the party qualifies the answer. To the extent there is no answer, there is an admission. This is particularly true where there is a request to file answers out of rule upon a representation that there is no prejudice to the opposing party. Further, Civil Rule 36 (B) reads, in pertinent part:"Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions or Rule 16 governing modification of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admissions fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." (Emphasis added.) | Denial, in part, of request to admit is admission of part not denied, unless party qualifies answer; to extent there is no answer, there is admission, and this is particularly true where there is request to file answers out of rule upon representation that there is no prejudice to opposing party. Civ.R. 36(A, B). | "Is denial, in part, of a request to admit an admission of part not denied, unless a party qualifies the answer?" | Pretrial Procedure - Memo # 4192 - C - NE.docx | ROSS-003289994-ROSS-003289995 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 12469 | Brutus v. Wright, 163 Ind. App. 366 | 307A+725 | The taxpayer also contends that good cause was shown for such delay and that as a result expenses should not have been awarded.The awarding of such expenses rests within the sound discretion of the trial court and no abuse of that discretion has been shown. Cf: Gentry v. Lakey (1971), 150 Ind.App. 612, 276 N.E.2d 857. The taxpayer further asserts that conditions cannot be attached to the granting of a continuance subsequent to its entry. However, Rule TR. 53.4, supra, expressly authorizes such an award, without limitation as to time. Lastly, the taxpayer contends that any sanctions should be against his attorney who caused the delay. However, the act of his attorney is the act of the client, and thus such expenses may properly be taxed to a litigant for the acts of his counsel. Cf: Krill v. Carlson (1920), 74 Ind.App. 47, 128 N.E. 612 . | The awarding of expenses incurred from delay rests within the sound discretion of the trial court. Rule TR. 53.4. | Does the awarding of expenses as a result of delay rest within the sound discretion of the trial court? | 030848.docx | LEGALEASE-00137180-LEGALEASE-00137181 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 12470 | State ex rel. King v. Turpin, 581 S.W.2d 929 | 307A+91 | Rule 56.01(a) provides that discovery shall not be limited "(u)nless the court orders otherwise under subdivision (c) of this Rule, . . ." Subdivision (c) deals with protective orders. Local court rules cannot arbitrarily infringe upon the right of a party to take a deposition. Respondent's interpretation of Rule 6 does just that no discovery after you have filed a certificate of readiness. | Local court rules cannot infringe upon right of party to take deposition. (Per Crist, J., with one Judge concurring in result only.) V.A.M.R. Civil Rule 56.01. | Can local court rules infringe upon the right of a party to take a deposition? | 030991.docx | LEGALEASE-00137382-LEGALEASE-00137383 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 12471 | Moffat v. Phoenix Brewery Corp., 247 A.D. 552 | 307A+91 | It needs no argument to establish the proposition that a defendant should not be put to the inconvenience of submitting to an examination before trial, if from the complaint itself it is obvious that there is no cause of action against him. Idle ceremonies are futile, and answer no useful purpose; they simply result in a needless expenditure of energy, and a waste of time. | Defendant should not be required to submit to examination before trial if complaint makes it obvious that there is no cause of action against defendant. | Should the defendant be required to submit to examination before trial if a complaint makes it obvious that there is no cause of action against a defendant? | Pretrial Procedure - Memo # 4495 - C - NS.docx | ROSS-003290704-ROSS-003290705 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 12472 | Sabelli v. Sec. Ins. Co. of New Haven, 372 S.W.2d 348 | 307A+713 | The question of whether a continuance is to be granted is largely within the discretion of the trial judge in the light of the facts before him. In view of the record before us and the holding in the Fritsch case and the Cole case, both cited above, we overrule appellant's contentions with respect to these points. | Question whether continuance is to be granted is largely within discretion of trial judge in light of facts before him. | "Is the question of whether a continuance should be granted, to be judged in light of facts, before a judge, at the time a motion is presented?" | 031298.docx | LEGALEASE-00137404-LEGALEASE-00137405 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 12473 | Flynn v. Royal Dev. Co., 54 N.Y.S.2d 585 | 307A+91 | The policy of the courts is to allow great latitude in permitting examinations before trial of the parties to an action. It is discretionary with the court to permit an examination of a party who has the entire burden of proof. A defendant may, in a proper case, examine a plaintiff where the answer contains no affirmative defense and only general denials.Public National Bank v. National City Bank, 261 N.Y. 316, 185 N.E. 395. | Where answer contains no affirmative defense and only general denials, defendant, in proper case, may examine plaintiff before trial. | Does the mere general denial in the answer preclude examination of a defendant before trial? | 031300.docx | LEGALEASE-00137406-LEGALEASE-00137407 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 12474 | Lerner v. Kraus, 147 N.Y.S. 32 | 307A+91 | In this case the plaintiff's cause of action is denied by the defendant under oath; and, though this fact in itself obviously is no ground for refusing an examination, yet it is a fact to be considered upon the probability of the good faith of the moving party in seeking the examination. Kornbluth v. Isaacs, 149 App. Div. 108, 133 N. Y. Supp. 737. So far as the examination concerns matters outside of the conversations personally had with the plaintiff, it may well be that the plaintiff is seeking the examination in good faith, but it is so improbable that the plaintiff expects to obtain from an examination as to these conversations testimony which he could use at the trial that I am constrained to the view that, as to such matters, the examination is sought merely to obtain in advance the version of the conversations with which the defendant expects to meet the plaintiff's affirmative case. | That plaintiff's cause of action is denied by defendant under oath, while not ground for denial of an application to examine defendant before trial, may be considered on the question of plaintiff's good faith. | Can the plaintiff's cause of action be considered on the question of plaintiff's good faith? | 031448.docx | LEGALEASE-00137559-LEGALEASE-00137560 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 12475 | Kleitman v. Superior Court, 74 Cal. App. 4th 324 | 307A+36.1 | Moreover, procedural safeguards seem particularly appropriate when the discovery sought concerns matters which may impinge on the legislative privilege. As this court has previously held, discovery into the subjective motives or mental processes of city council members is prohibited. (City of Santa Cruz v. Superior Court (1995) 40 Cal.App.4th 1146, 1148, 48 Cal.Rptr.2d 216.) Finally, we believe that Wesley's contention that interested persons must be able to compel the members of legislative bodies to disclose their recollections of unrecorded closed sessions whenever a Brown Act violation is alleged, is one which should be addressed to the Legislature, rather than the courts. | Discovery into the subjective motives or mental processes of city council members is prohibited. | Is discovery into the subjective motives or mental processes of city council members prohibited? | Pretrial Procedure - Memo # 4773 - C - RF.docx | ROSS-003291123-ROSS-003291124 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12476 | Hall v. Florida State Drainage Land Co., 89 Fla. 312 | 307A+724 | In jurisdictions where the application for a continuance is addressed to the discretion of the trial court, the introduction of affidavits or parol evidence in opposition to the motion is permitted. In passing upon a motion for continuance, the trial judge is vested with a broad discretion. In order that such discretion may be soundly and justly exercised, there must also exist the power for that judge, within reasonable limits, to further inform and enlighten himself, if necessary, upon the matters presented by the movant in support of the motion for continuance. In deciding upon the sufficiency of a motion and affidavit for continuance, no presumption favorable to the applicant is to be indulged. Bolles v. Carson, 73 Fla. 504, 74 So. 509; Reynolds v. Smith, 49 Fla. 217, 38 So. 903. Of necessity, therefore, the trial judge cannot be confined to the four corners of the motion and affidavits presented by the applicant. This court has held that the sheriff's return on process may be looked to in order to ascertain the correctness of a statement in the affidavit for continuance concerning service of the process. Dansey v. State, 23 Fla. 316, 2 So. 692. While there is some conflict in the earlier authorities, the weight of authority now sanctions the admission of counter affidavits and oral evidence upon the question of lack of diligence in procuring the testimony of an absent witness, or want of good faith in making the application, or improbability that the proposed testimony can be obtained at the time to which it is proposed to postpone the trial, or at all, or to contradict an averment that an absent witness is sick, and other similar matters strictly pertaining to the application. Scott v. Cleveland, 110 Ark. 9, 160 S. W. 868; George v. Swafford, 75 Iowa, 491, 39 N. W. 804; Cushenberry v. McMurray, 27 Kan. 328; Webb v. Wegley, 19 N. D. 606, 125 N. W. 562; 6 R. C. L. 566. There was therefore no error in admitting the rebuttal testimony hereinabove mentioned. | In deciding upon sufficiency of motion and affidavit for continuance, no presumption is indulged in favor of applicant. In deciding upon the sufficiency of a motion and affidavit for continuance, no presumption favorable to the applicant is to be indulged. | "Should a presumption favorable to the applicant be indulged, in deciding the sufficiency of an affidavit for continuance?" | Pretrial Procedure - Memo # 5042 - C - PB.docx | ROSS-003291258-ROSS-003291259 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 12477 | Hetter v. Eighth Judicial Dist. Court of State In & For Cty. of Clark, 110 Nev. 513 | 307A+36.1 | The district court also ordered Hetter to provide Sanchez "that portion of his tax returns which show the profits and losses of his medical practice." In view of the above analysis regarding Sanchez's measure of damages, the information from the tax returns is irrelevant on the issue of compensatory damages. However, Sanchez also seeks punitive damages, and a defendant's financial condition is a proper subject of discovery on that issue. There are many circumstances under which discovery of income tax returns are clearly appropriate. See Annotation, Discovery And Inspection Of Income Tax Returns In Actions Between Private Individuals, 70 A.L.R.2d 240 (1960). However, because of the policy considerations of protecting taxpayer privacy and encouraging the filing of full and accurate tax returns, both state and federal courts have subjected discovery requests for income tax returns to a heightened scrutiny, especially in the context of requests for punitive damages. In Maresca v. Marks, 362 S.W.2d 299, 301 (Tex.1962), the Supreme Court of Texas stated:The protection of privacy is of fundamental"indeed, of constitutional"importance. Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between litigants outweighs protection of their privacy. But sacrifice of the latter should be kept to the minimum, and this requires scrupulous limitation of discovery to information furthering justice between the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy. | Defendant's financial condition is proper subject of discovery on issue of punitive damages. N.R.S. 49.225. | Is a defendant's financial condition a proper subject of discovery on the issue of punitive damages? | Pretrial Procedure - Memo # 5049 - C - SN.docx | ROSS-003290865-ROSS-003290866 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12478 | Suffield Bank v. Berman, 25 Conn. App. 369 | 307A+36.1 | The Burritt case is distinguishable from the present one because the defendant in Burritt was contesting the amount of interest due, whereas here the defendants are contesting their liability for paying any interest. In short, defenses relating to the mathematical calculation of the debt need not be disclosed but defenses that go to the issue of the defendant's liability for the debt must be disclosed. In the present case, the evidence being proffered went to the issue of the defendants' liability for interest and therefore was a defense that required disclosure. In the absence of such disclosure, the trial court properly refused to hear the proffered evidence. Instead, it accepted the affidavit as proof of debt pursuant to Practice Book " 527 and rendered a judgment of strict foreclosure. | Defenses relating to mathematical calculation of mortgage debt need not be disclosed, but defenses that go to issue of liability for debt must be disclosed in timely manner. Practice Book of 1978, SS 206, 236, 367, 372, 374, 527. | Need defenses relating to mathematical calculation of mortgage debt not be disclosed? | 031971.docx | LEGALEASE-00138097-LEGALEASE-00138098 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 12479 | Patterson v. Merrill Lynch, Pierce, Fenner & Smith, 266 N.C. 489 | 308+105(2) | Ratification by the plaintiff of the sale has the same effect as prior authority from the plaintiff to Lee to make the sale. This would carry with it implied authority to do all things usually done by an agent authorized to make a sale of a principal's stock. 3 Am.Jur.2d, Agency, " 99. However, authority to sell, even when coupled with the possession of the goods by the agent, does not necessarily authorize the agent to collect the price or estop the principal from collecting from the purchaser who pays the agent. 3 Am.Jur.2d, Agency, 106. | Authority to sell, even when coupled with possession of goods by agent, does not necessarily authorize agent to collect price or estop principal from collecting from purchaser who pays agent. | Does authority to sell imply the agent has authority to collect? | 042119.docx | LEGALEASE-00137826-LEGALEASE-00137827 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 12480 | Wehe v. Montgomery, 711 F. Supp. 1035 | 308+99 | The court in Hewett v. Marine Midland Bank of Southeastern New York, N.A., 449 N.Y.S.2d 745, 86 A.D.2d 263 (1982), held there is a rebuttable presumption that a signature is authorized. An unauthorized signature is one made without actual, implied or apparent authority, and any unauthorized signature is wholly inoperative unless the principal certifies it or is precluded from denying it. Id. at 749, 86 A.D.2d 263. Duncan had apparent authority to sign all agreements. Duncan opened and funded plaintiff's account, made decisions and trades related to her account and authorized receipt of mail on behalf of plaintiff. In Hewett, even when suspicious circumstances surrounded the endorsement, the court still found that the third party acting in reliance on the agent's authority acted in good faith. In the case at bar, there were not even any "suspicious circumstances" surrounding Duncan's acts. | "Unauthorized signature" is one made without actual, implied or apparent authority, and any unauthorized signature is wholly inoperative unless principal certifies it or is precluded from denying it. | What is an unauthorized signature? | Principal and Agent - Memo 78 - KC.docx | LEGALEASE-00027873-LEGALEASE-00027874 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12481 | H.C. Lawton, Jr. v. Truck Drivers, Chauffeurs & Helpers Local Union No. 384, 755 F.2d 324 | 25T+213(3) | The first prong of the Enelow-Ettelson rule is satisfied here because the defendant sought a stay in order to arbitrate, and an agreement to arbitrate a legal dispute is considered an equitable defense. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 452, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935); Mediterranean Enterprises, Inc. v. Ssangyong, 708 F.2d 1458, 1462 (9th Cir.1983).The second prong of the Enelow-Ettelson test is met if the underlying action is one which, before the merger of law and equity, could have been maintained as an action at law.2 Where a complaint seeks both legal and equitable relief, the requirements of the second prong are fulfilled if the equitable claims are "merely incidental" to the legal claims, Stateside Machinery Co., Ltd. v. Alperin, 526 F.2d 480, 484"85 (3d Cir.1975), or if the complaint is predominantly an action at law. Mediterranean Enterprises, 708 F.2d at 1462. | Agreement to arbitrate legal dispute is considered "equitable defense," for purposes of rule that stay of proceeding is appealable interlocutory order under statute if stay is sought to permit prior determination of equitable defense and underlying action is at law rather than in equity. 28 U.S.C.A. S 1292(a)(1). | Whether an agreement to arbitrate a legal dispute is considered as an equitable defense by court? | 007597.docx | LEGALEASE-00138995-LEGALEASE-00138996 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 12482 | State v. Garcia, 236 P.3d 853 | 67+3 | Utah's burglary statute provides that "[a]n actor is guilty of burglary if he enters or remains unlawfully in a building or any portion of a building with intent to commit: (a) a felony; (b) theft; [or] (c) an assault on any person…." Utah Code Ann. " 76"6"202(1) (2008). Thus, the plain language of the statute requires that the actor's intent be formed at the time of entry or at any time while the actor remains unlawfully in the building or dwelling. Moreover, in interpreting this statute, the Utah Supreme Court has concluded that "a person is guilty of burglary under [Utah Code] section 76"6"202(1) if he forms the intent to commit a felony, theft, or assault at the time he unlawfully enters a building or at any time thereafter while he continues to remain there unlawfully." State v. Rudolph, 970 P.2d 1221, 1229 (Utah 1998) (emphasis added). Based on the evidence, the jury could have reasonably found that Defendant formed the intent to assault the victim while he remained unlawfully in the victim's home. When the victim screamed for help, Defendant jumped on top of her, held her down, covered her mouth, and forced his fingers down her throat. Defendant also forced the victim's head into her pillow and raised her shirt, which he admitted that he did, although alleging that it was in an effort to keep the victim quiet. Only when Defendant heard the victim's mother approaching the bedroom did he get off of the victim and break the bedroom window in an attempt to flee the premises. The jury could have reasonably found that it was only at that point that the assault ended and his attempt to flee began. Under the circumstances, Defendant formed the requisite intent to assault the victim while he remained unlawfully in her home, bringing him squarely within the plain language of the burglary statute, see id. Therefore, Defendant's argument that the State did not establish a necessary element of the burglary charge fails. | Plain language of burglary statute requires that the actor's intent be formed at the time of entry or at any time while the actor remains unlawfully in the building or dwelling. West's U.C.A. S 76-6-202(1). | Can intent be formed at any time in burglary? | Burglary - Memo 183 - KNR.docx | ROSS-003300800-ROSS-003300803 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 12483 | United States v. Nat'l Dairy Prod. Corp., 372 U.S. 29 | 92+1130.10 | The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language. E.g., Jordan v. De George, 341 U.S. 223, 231, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951), and United States v. Petrillo, 332 U.S. 1, 7, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947). Indeed, we have consistently sought an interpretation which supports the constitutionality of legislation. E.g., United States v. Rumely, 345 U.S. 41, 47, 73 S.Ct. 543, 546, 97 L.Ed. 770 (1953); Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932); see Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). | Statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language. | When does a statute become invalid because of vagueness? | 014424.docx | LEGALEASE-00138738-LEGALEASE-00138739 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 12484 | Smith v. Bd. of Comm'rs of Hamilton Cty., 173 Ind. 364 | 200+121 | It is firmly settled that the highways are the state's ways, provided by the state for the intercommunication and traffic of all inhabitants. To make them ample, safe, and fit to conserve the public use the state asserts the absolute dominion over them. By its Legislature it has designated the agencies and officers that shall be held responsible for the proper opening, protection, and improvement of all classes of highways, urban and rural alike, that have been set apart and established for the free use of the people. In the exercise of sovereign power it may, through its officers and agents, provide for grading, draining, graveling, macadamizing, and paving whatever part, or parts, may be deemed necessary to the public convenience. It may levy taxes for construction and maintenance, may exact labor, and may punish for obstructing the same in town, city, or country. Cones v. Board, 137 Ind. 404, 37 N. E. 272; State v. Fox, 158 Ind. 126, 63 N. E. 19, 56 L. R. A. 893; Arnett v. State, 168 Ind. 180, 80 N. E. 153, 8 L. R. A. (N. S.) 1192; Board v. Branaman, 169 Ind. 80, 82 N. E. 65. In matters of taxation for the support of public highways the power of the Legislature is unlimited, except as restricted by the Constitution. Byram v. Board 145 Ind. 240, 44 N. E. 357, 33 L. R. A. 476; State v. Board, 170 Ind. 595, 610, 85 N. E. 513. A distinguished jurist says of this subject: "One of the most important functions of government is making provisions for public roads for the use of the people. No question is made of the competency of the Legislature to levy taxes for the common highway, the improved turnpike, or macadamized road. Any or all of them may be constructed by the state, or under state authority, by the municipal subdivision of the state within whose limits they may be needed." Cooley on Taxation (3d Ed.) 212; State v. Board, 170 Ind. 595, 610, 85 N. E. 513. The doctrine relating to such special taxes proceeds upon the theory that the tax is returned to the person or property paying | In matters of taxation for the improvement of public highways, the power of the Legislature is unlimited, except as restricted by the Constitution. | Does Legislature has unlimited powers in matters of taxation for the improvement of public highways? | 018985.docx | LEGALEASE-00138703-LEGALEASE-00138705 | SA, Sub | 0.96 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12485 | Pinkerton v. Pritchard, 71 Ariz. 117 | 302+9 | Under no circumstances can it be said that the issues determined by the judgment of May 28, 1947, are res judicata of the issues raised in the instant case. The latter action is not an attempt to recover possession of the strip of land in question or to enlarge his ownership interest therein. It seeks merely to require defendants to limit their use of the easement granted to Pritchard by the judgment of May 28, 1947, to its use for road purposes only and to recover damages for their wrongful use thereof by using such strip of land for purposes wholly outside of and beyond the grant described in the judgment. It is immaterial by what name we denominate the present cause of action. Suffice it to say that it is not possessory in its nature. However, we believe it clearly falls within the designation of the common law action of trespass on the case. In other words, an action in tort. See 28 C.J.S., Easements, " 107. And we hold that while plaintiff's complaint is inartfully drawn and that it would have been better pleading to allege the character of his ownership yet it was not imperative that he do so. The allegation of ownership and the right to its use except as limited by the easement decreed by the court is sufficiently supported by proof of ownership of the legal title. Ownership has been held by this court in City of Phoenix v. State ex rel. Harless, 60 Ariz. 369, 137 P.2d 783, 786, 146 A.L.R. 1255, as covering different estates in real property. The court there said: "The word "owner" has no technical meaning, but its definition will contract or expand according to the subject matter to which it is applied. As used in statutes it is given the widest variety of construction, usually guided in some measure by the object sought to be accomplished in the particular instance. It has led some courts to declare that the word has no precise legal signification and may be applied to any defined interest in real estate. Merrill Ry. & Lighting Co. v. City of Merrill, 119 Wis. 249, 96 N.W. 686.' Therefore when | If a pleading sets up facts from which the ultimate conclusions may clearly be drawn the ultimate conclusions themselves need not be alleged. | Should conclusions be alleged if a pleading sets up facts from which ultimate conclusions may be drawn? | 023396.docx | LEGALEASE-00138563-LEGALEASE-00138565 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 12486 | Scott v. Scott, 147 S.W. 3d 887 | 307A+723.1 | Rule 65.03, which prescribes the proper procedure for seeking a continuance, provides, in pertinent part, that: "An application for a continuance shall be made by a written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance be made orally." Failure to follow "the simple, explicit, and mandatory procedure to properly present a motion for continuance" renders the motion deficient, meaning the trial court is not obligated to consider the motion. Bydalek, 29 S.W.3d at 856 (citing Nixon v. Dir. of Revenue, 883 S.W.2d 945, 946 (Mo.App.1994)). Thus, "in the absence of compliance with the requirements of the rule, there can be no abuse of discretion in denying a continuance." Smith v. Smith, 952 S.W.2d 771, 773 (Mo.App.1997). Put another way, "when a moving party ignores the affidavit or verification requirements of Rule 65.03, no abuse can result in denying the continuance." Bydalek, 29 S.W.3d at 856. | In the absence of compliance with the requirements of the court rule for applying for a continuance, there can be no abuse of discretion in denying a continuance. V.A.M.R. 65.03. | "In the absence of compliance with the requirements of the court rule for applying for a continuance, can there be no abuse of discretion in denying a continuance?" | 030593.docx | LEGALEASE-00138195-LEGALEASE-00138196 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 12487 | Brannin v. Voorhees, 14 N.J.L. 590 | 307A+723.1 | It appears that on the return day of the summons, the cause was adjourned to a certain day and hour; at that time, the justice did not attend, "and therefore," (as he expresses it,) he "prepared another written adjournment and directed it to the defendant," by the constable. On the day to which he so adjourned, he proceeded to hear the cause and gave judgment in the absence of the defendant. It is not necessary in this case to settle the question whether if the justice is prevented by sickness or urgent business from attending on the return day of the summons, or on the day to which the cause has been adjourned, he may, out of court and in the absence of the parties, adjourn the cause to another day. Such a proceeding, without the consent of parties, I am inclined to think, would be a discontinuance of the suit. But if the justice may do so, both parties ought to have reasonable notice of the time and place; and the fact that such notice was given, ought to appear. | Query, is it a discontinuance of the suit, if the justice, prevented by sickness or urgent business from attending on the return day of the summons, or on the day to which the cause has been adjourned, out of court, and in the absence of the parties, adjourns the cause to another day. | "Is it a discontinuance of the suit, if the justice, prevented by sickness or urgent business from attending on the return day of the summons, adjourns the cause to another day?" | 030825.docx | LEGALEASE-00138542-LEGALEASE-00138543 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 12488 | Woodruff v. Garner, 39 Ind. 246 | 307A+69.1 | This, it is claimed, was error. We are not of that opinion. No authority is cited in support of the position assumed, and we know of none. A party may not be entitled to retake the deposition of a witness without leave of the court, but the fact that one party has taken the deposition of a witness does not prevent the other party from taking it. The deposition last taken by one party may not embrace the subject-matter of that first taken by the other party. When the deposition of a witness is thus taken by both parties, each deposition may contain evidence favorable to each party, and where one party has introduced the deposition taken by the opposite party, we see no good reason why that fact should preclude him from introducing the deposition taken by himself. | Although a party may not be at liberty to retake the deposition of a witness, except by leave of court, yet the taking of the deposition of a witness by one party to a suit does not prevent the other party from taking his deposition also. | Does the taking of the deposition of a witness by one party to a suit prevent the other party from taking his deposition also? | Pretrial Procedure - Memo # 4406 - C - VA.docx | ROSS-003291042-ROSS-003291043 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12489 | Application of Cohen, 179 Misc. 6 | 307A+91 | The petitioner also maintains that she is entitled to this examination to obtain information to enable her to draw a complaint. I find no authority for an examination for that purpose at this stage of the proceedings. The cases cited by the petitioner are not in point, since they all deal with situations where the defendants were already identified and the actions already commenced. An examination for that purpose before action brought has been denied on at least two occasions. Matter of Dreyfuss, 2d Dept., 244 App.Div. 822, 279 N.Y.S. 774; Matter of Titanium Alloy Mfg. Co., Sup.Erie County, 198 N.Y.S. 503. It of course must be conceded that the right of a pretrial inquisition is purely statutory. Heishon v. Knickerbocker Life Ins. Co., 77 N.Y. 278; Woods v. Barton, 226 App.Div. 38, 234 N.Y.S. 154. The right to examine before the action is commenced is accorded to a prospective party only where "necessary for the protection of his rights." Civil Practice Act, " 295. Such necessity is apparent when the examination is sought for the purpose of identifying the prospective defendants, for without it no summons can even be prepared. The same necessity is not apparent, however, for the purpose of obtaining information to enable a prospective plaintiff to draw a complaint. The action may be commenced without such information. Once a person has demonstrated his good faith and sincerity by actually naming the defendant and effecting service of a summons upon him, then the court may, in a proper case, permit an examination either of the defendant or some third person. Section 288 of the Civil Practice Act and Rule 122, Rules of Civil Practice. To permit an examination for such purpose before the action is even commenced not only appears unnecessary, but might conceivably subject totally innocent persons to great inconvenience, if not persecution. The orderly administration of justice does not countenance such a procedure. Furthermore, it appears | The right to examine before the action is commenced is accorded to a prospective party only where necessary for the protection of his rights. Civil Practice Act, S 295. | Is the right to examine before the action is commenced accorded to a prospective party only where necessary for the protection of his rights? | 030922.docx | LEGALEASE-00138936-LEGALEASE-00138937 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12490 | Atchison, T. & S.F. Ry. Co. v. Jones, 110 Ill. App. 626 | 307A+725 | It is also insisted that the court erred in not taxing the witness fees against the plaintiff when the case was continued at the January term, 1902, upon the filing of the amended counts to the declaration. All costs of that term were adjudged against plaintiff except the witness fees, and these the court ordered should abide the result of the suit. The terms to be imposed upon granting the continuance, which was done on motion of defendants, rested largely in the sound discretion of the court. There is no showing made by defendants as to the number of witnesses in attendance, the amount of their fees, nor any reason why the costs of their attendance should be taxed against plaintiff, except that after the trial was entered upon, plaintiff amended his declaration, and on this account, defendants asked for and were allowed a continuance of the case. In the absence of any other showing we are not prepared to say there was any abuse of discretion in the judgment and order of the court as to the witness fees for that term. | Terms to be composed upon granting a continuance rest largely in the sound discretion of the court. | Do the terms to be composed upon granting a continuance rest in the sound discretion of the court? | Pretrial Procedure - Memo # 4860 - C - SKG.docx | ROSS-003291226-ROSS-003291227 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 12491 | Palumbo v. Innovative Commc'ns Concepts, 175 Misc. 2d 156 | 307A+224 | There are several alternative predicates to the use of a deposition transcript, pursuant to CPLR 3117. CPLR 3116(a) provides that the transcript must be submitted to the witness so that the witness can read it and make any changes to it that are desired. The witness then is to sign the transcript under oath. If that procedure is followed, then the transcript may be utilized. Furthermore, where the deposition witness is a party, and the transcript has been certified, pursuant to CPLR 3116(b), by the officer before whom the deposition was taken, then the transcript is usable as an admission (Newell Co. v. Rice, 236 A.D.2d 843, 653 N.Y.S.2d 1004 [4th Dept 1997] ). In order to use a transcript that is not signed by the witness, if the witness is a non-party, or, if a party and the transcript is not signed by the witness or certified, it is the burden of the party wanting to use the deposition transcript to show that the transcript was sent to the witness to be reviewed for any corrections, and that sufficient time to do so has passed (see, Siegel, 1993 Supp. Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3116:1, 1997"1998 Interim Cumulative Pocket Part, at 94). Those wanting to use a deposition transcript under these circumstances must show that the witness was given the opportunity that CPLR 3116(a) provides to the witness to make sure that the transcript is correct in form and substance. Otherwise, the proponent of the transcript may be relying on an inaccurate transcript. | Where deposition witness is a party, and transcript has been certified pursuant to statute by officer before whom deposition was taken, then deposition transcript is usable as an admission. McKinney's CPLR 3116(b). | Could the transcript that has been certified by the officer before whom the deposition was taken be used as an admission? | 031685.docx | LEGALEASE-00138663-LEGALEASE-00138664 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 12492 | Garcia v. Texas Employers' Ins. Ass'n, 622 S.W.2d 626 | 307A+726 | The question whether a continuance is to be granted or denied rests within the sound discretion of the trial judge in the light of the facts before him. Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex.1963). The court's decision will be reversed on appeal only upon a showing of abuse of discretion. In re Guardianship of Dahl, 590 S.W.2d 191, 194 (Tex.Civ.App. Amarillo 1979, writ ref'd n. r. e.). And where the application for continuance does not conform to the provisions of the rules, it will be presumed that the court has not abused its discretion. Gulf, C. & S.F. Ry. Co. v. Brooks, 63 Tex.Civ.App. 231, 132 S.W. 95, 97 (1910, writ ref'd); Watson v. Godwin, 425 S.W.2d 424, 430 (Tex.Civ.App. Amarillo 1968, writ ref'd n. r. e.). This is especially so where the trial court previously has granted a motion for continuance on the identical grounds that discovery was not complete. Zale Corporation v. Rosenbaum, 517 S.W.2d 440, 444-45 (Tex.Civ.App. El Paso 1974), rev'd on other grounds, 520 S.W.2d 889 (Tex.1975). Under the circumstances shown, the trial court cannot be charged with an abuse of discretion in overruling the second motion for continuance. | Trial court could not be charged with an abuse of discretion in overruling plaintiff's second motion for continuance in light of fact that application for continuance did not conform to provisions of rules and trial court had previously granted motion for continuance on identical grounds that discovery was not complete. Vernon's Ann.Rules Civ.Proc., Rules 251, 252. | Would the court be charged with an abuse of discretion in overruling plaintiff's second motion for continuance? | 031772.docx | LEGALEASE-00138458-LEGALEASE-00138459 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12493 | Moore v. Willard, 30 S.C. 615 | 307A+74 | The reading of these depositions was objected to by the defendants"First, on the ground "that they were taken without first serving interrogatories;" second, that there was nothing to show that the person before whom they were taken was a notary public; third, error in holding that the testimony of George C. Barnes and Richard Schutte, alleged to have been taken outside of the state, was properly admissible in testimony; fourth, in ruling that there was sufficient to show that the alleged witness Schutte was sworn. These depositions were taken under our act of 1883, (18 St. 373,) upon an examination of which it will be found that there is nothing therein requiring interrogatories to be served. Notice of time and place, etc., is required, but nothing is said as to interrogatories. The notice was given, and not simply accepted by defendants attorney, but consent indorsed thereon to the taking of the testimony before the notary named, W. C. Preston, at the place and time mentioned. We think the certificate of the notary, with his official seal attached, afforded sufficient evidence that the witness Schutte was sworn, and also that he, W. C. Preston, was a notary, especially when considered with the indorsement of consent by defendants' attorneys on the notice; sufficiently so to warrant the judge in admitting the depositions, in the absence of a formal attack upon the papers, or at least some testimony throwing suspicion on their execution. | Under Act 1883, 18 St. at Large, p. 373, relating to the taking of depositions, the admission of depositions in evidence cannot be objected to on the ground that they were taken without interrogatories having been first served, the statute not providing for interrogatories. | Can the admission of depositions in evidence be objected to on the ground that they were taken without interrogatories having been first served? | 032349.docx | LEGALEASE-00138880-LEGALEASE-00138881 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 12494 | People v. Boose, 139 Ill. App. 3d 471 | 67+3 | (274 Ill., at 558, 113 N.E. 926.) Similarly, in the instant case, there is no evidence as to the intent with which Boose entered Marshall Field's. Indeed, the evidence supports an inference that Boose formulated the intent to take the items some time after entering the store. (See People v. Fisher (1980), 83 Ill.App.3d 619, 39 Ill.Dec. 268, 404 N.E.2d 859.) A criminal intent formulated after alawfulentry will satisfy the offenses of larceny (retail theft) or burglary by illegally remaining. It will not, however, satisfy the offense of burglary by illegal entry. (Weaver, 41 Ill.2d 434, 243 N.E.2d 245; Baker, 59 Ill.App.3d 100, 16 Ill.Dec. 545, 375 N.E.2d 176; Housewright, 9 Ill.App.3d 803, 293 N.E.2d 911.) We therefore hold that the State failed to prove beyond a reasonable doubt that Boose possessed the requisite intent at the time he entered the store. | Criminal intent formulated after lawful entry will satisfy offenses of larceny, i.e., retail theft, or burglary by illegally remaining; it will not, however, satisfy the offense of burglary by illegal entry. S.H.A. ch. 38, P 19-1(a). | Can criminal intent with lawful entry constitute burglary? | Burglary - Memo 197 - KNR.docx | LEGALEASE-00028859-LEGALEASE-00028860 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 12495 | People v. Richardson, 117 Cal. App. 4th 570 | 67+9(0.5) | The purpose of the burglary laws is to forestall situations that are dangerous to personal safety caused by the unauthorized entry of an intruder into an inhabited dwelling. (People v. Thomas (1991) 235 Cal.App.3d 899, 906, 1 Cal.Rptr.2d 434.) Entry into any type of room, such as an office, women's restroom, or ticket office, with the requisite intent, constitutes a burglary. (People v. Elsey, supra, 81 Cal.App.4th at p. 955, 97 Cal.Rptr.2d 269). | Entry into any type of room, such as an office, women's restroom, or ticket office, with the requisite intent, constitutes a burglary. West's Ann.Cal.Penal Code SS 459, 460. | "Does entry into any type of room, with the requisite intent, constitute burglary?" | Burglary - Memo 200 - KNR.docx | ROSS-003300811-ROSS-003300812 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 12496 | Marin v. Exxon Mobil Corp., 2009-2368 | 260+121 | In our view, the duty to remediate oilfield contamination exists under the prudent operator standard of the Mineral Code by virtue of our holding in Castex, and it certainly exists under the Civil Code. The holding in Castex merely recognized that in absence of unreasonableness or excessiveness, the lessee has the duty to restore the surface minus normal wear and tear. Where the lessee has operated unreasonably or excessively, as in this case, the lessee has additional obligations, e.g., the obligation to correct the damage due to the unreasonable or excessive operations. However, that does not necessarily mean that the lessee has a duty to restore the land to its pre-lease condition, particularly where, unlike dredged canals, subsurface contamination is not overt and cannot be considered "wear and tear." Castex explained that in determining what constitutes necessary "wear and tear" in a particular case, "it is useful to consider the character of the specific rights granted in the lease" to consider whether the lessor consented to the particular activities. 893 So.2d at 800. The damage caused by Exxon's unreasonable operations was the contamination of the soil, and it is clear plaintiffs did not consent to this contamination. Therefore, Exxon's additional restoration duty is the duty to correct the contamination. The lower courts both correctly recognized this point and held that remediation to 29B standards satisfied the Castex requirements. | Duty to remediate oilfield contamination exists under the prudent operator standard of the Mineral Code and under the Civil Code; where the lessee has operated unreasonably or excessively, lessee has additional obligations, e.g., to correct the damage due to the unreasonable or excessive operations. | Is there a duty to remediate oilfield contamination under the prudent operator standard? | 021643.docx | LEGALEASE-00139358-LEGALEASE-00139360 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 12497 | Whisman v. Fawcett, 470 N.E.2d 73 | 307A+749.1 | We have had occasion to emphasize the proper place and function of the pretrial conference and ensuing order in the adjudicatory process. "When a pre-trial order specifies the issues of the case, the parties will not be permitted to go into other issues, unless the pre-trial order is amended," since "[t]he express purpose of Trial Rule 16 is to provide for a pre-trial conference in which to simplify the issues raised by the pleadings and to define these issues within a pre-trial order." North Miami Consolidated School District v. State ex rel. Manchester Community Schools, (1973) 261 Ind. 17, 20, 300 N.E.2d 59, 62. However, though we recognize the binding effect of a pretrial order, this does not mean that it is rigidly and pointlessly adhered to at trial. The application of preclusion always is viewed as a matter of judicial discretion. Eagle Motor Lines, Inc. v. Galloway, (1981) Ind.App., 426 N.E.2d 1322; Dominguez v. Gallmeyer, (1980) Ind.App., 402 N.E.2d 1295. Moreover, our courts have expressed agreement with the principle expressed in 62 Am.Jur.2d Pretrial Conference " 29 at 661 (1972) that: "[a] pretrial order should be liberally construed to embrace all the legal and factual theories inherent in the issues defined therein. Any other construction of the order would tend to unduly constrict the trial of the case and defeat the central and salutary purpose of the rule on pretrial which is to insure the trial of every lawsuit on its merits." (Emphasis added.) | Pretrial order, though having a binding effect, should not be rigidly and pointlessly adhered to at trial. | "Should a pretrial order, though having a binding effect, be rigidly and pointlessly adhered to at trial?" | 027293.docx | LEGALEASE-00139258-LEGALEASE-00139259 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12498 | Flournoy v. Marx, 33 Tex. 786 | 307A+723.1 | In the last case Prewitt v. Everett, the court say it has been decided by this court that if the terms of the statute are complied with on the first and second applications to continue, the court can exercise no discretion or power; that it must be granted. This is but the reiteration of the doctrine laid down in the case of Hipp against Bissell. We do not think the terms of the statute were complied with in this case. The affidavit must not only aver due diligence, but it must state the facts on which the averment is predicated. Our judgment accords with that of the district court. We do not think the facts show any diligence whatever. The plaintiff in error was not bound on the first application for continuance to state what he expected to prove by his absent witness; but if he should disclose them the court should take them into consideration in determining the application for a continuance. In this case the evidence would have been very material, but the application turned on the question of diligence, and we think the facts did not show that diligence which entitled the party claiming it to a continuance. Williams et al. v. Talbot et al. 27 Tex. p. 159, has been examined and is approved in this case. We do not think this is a proper case for the allowance of damages, but we affirm the judgment of the district court. | Though on a first application for a continuance for the absence of a witness it is not necessary to disclose the facts to be proved by the absent witness, yet if those facts are disclosed the court should take them into consideration in determining on the application. | "On an application for a first continuance, need a party not state the facts which he expects to prove by an absent witness?" | Pretrial Procedure - Memo # 4324 - C - CK.docx | ROSS-003302842-ROSS-003302844 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 12499 | Mihlon v. Superior Court, 169 Cal. App. 3d 703 | 307A+36.1 | Resolution of the question of personal jurisdiction must be accomplished under certain evidentiary rules. First, when jurisdiction is challenged by a nonresident defendant, the burden of proof is upon the plaintiff to demonstrate that "minimum contacts" exist between defendant and the forum state to justify imposition of personal jurisdiction. (Shearer v. Superior Court (1977) 70 Cal.App.3d 424, 430, 138 Cal.Rptr. 824.) The plaintiff has the right to conduct discovery with regard to the issue of jurisdiction to develop the facts necessary to sustain this burden. (1880 Corp. v. Superior Court (1962) 57 Cal.2d 840, 843, 22 Cal.Rptr. 209, 371 P.2d 985.) Second, an unverified complaint has no evidentiary value in determination of personal jurisdiction (Sheard v. Superior Court (1974) 40 Cal.App.3d 207, 212, 114 Cal.Rptr. 743), but such pleading has limited cognizable significance as "a material fact, in that it defines the cause of action, the nature of which has some bearing upon the decision whether it is fair and reasonable to require the nonresident parties to appear and defend in this state. But the pleader has no burden of proving the truth of the allegations constituting the causes of action in order to justify the exercise of jurisdiction over nonresident parties." (Lundgren v. Superior Court (1980) 111 Cal.App.3d 477, 485, 168 Cal.Rptr. 717.) The plaintiff need only present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to constitute constitutionally cognizable "minimum contacts." (Id.) Fourth, where there is conflict between the declarations of the parties, the explicit and implicit resolution thereof by the trial court may not be reevaluated on appellate review. (446 Griffith Co. v. San Diego Col. for Women (1955) 45 Cal.2d 501, 508, 289 P.2d 476.) Finally, we are not permitted to consider evidence that was not before the trial court. (6 Witkin, Cal.Procedure (2d ed. 1971) Appeal, "" 218, 219, pp. 4208, 4209.) | Plaintiff has right to conduct discovery with regard to issue of jurisdiction to develop facts necessary to sustain burden of demonstrating that minimum contacts exist between defendant and forum state. | Is a plaintiff generally entitled to conduct discovery with regard to jurisdiction issue before court rules on motion to quash? | 031899.docx | LEGALEASE-00139271-LEGALEASE-00139272 | Order, SA, Sub | 0.9 | 1 | 0 | 1 | 1 | 1 |
| 12500 | Giambrone v. Giambrone, 140 A.D.2d 206 | 134+139 | Particularly relevant, given the concern of the court below for granting defendant her day in court and protecting her from possible financial hardship as a result of this action being discontinued, is Chandler v. Chandler, 108 A.D.2d 1035, 485 N.Y.S.2d 604. In Chandler, the plaintiff had also commenced an action by service of a summons with notice, and no complaint or responsive pleading had yet been served. The motion court concluded that voluntary discontinuance would result in financial hardship to the defendant, who had meanwhile obtained temporary maintenance and occupancy of the marital residence pursuant to the action, and, the court, therefore, granted defendant's motion to vacate the notice of discontinuance. The Appellate Division, Third Department, rejected the court's exercise of its equitable powers to vacate the notice, saying: Plaintiff had the absolute and unconditional right to discontinue the action, without seeking judicial permission through a court order, merely through the service of the notice of voluntary discontinuance upon defendant. It is admitted that no pleadings were served, neither a complaint nor an answering pleading (see, Battaglia v. Battaglia, 59 NY2d 778, [464 N.Y.S.2d 725, 451 N.E.2d 472] revg on dissenting mem below 90 AD2d 930, 933"934 [457 N.Y.S.2d 915] ). The affidavits on defendant's motion did not provide Special Term with any basis to exercise any type of equitable jurisdiction. Defendant has the same rights that she had before plaintiff's action was commenced, which includes, among others, the right to commence her own matrimonial action.Id. at 1036, 485 N.Y.S.2d 604. | Husband who had commenced divorce action by service of summons with notice had unconditional right to discontinue action by serving notice of discontinuance at time defendant wife had not filed responsive pleading and 20 days had not passed from time of service; concern for granting wife who was not represented by counsel her day in court and for protecting her from possible financial hardship as a result of the action being discontinued would not support denying husband his statutory right to discontinuance. McKinney's CPLR 3217(a), par. 1. | "Where no pleadings have been served, does a plaintiff have the absolute and unconditional right to discontinue an action without seeking judicial permission by serving a notice upon the defendant?" | Pretrial Procedure - Memo # 931 - C - SHS.docx | ROSS-003302174-ROSS-003302176 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 12501 | In Matter of CUA Autofinder, 387 B.R. 906 | 366+35 | The right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. Waiver of the right of subrogation is a question of intention. 83 C.J.S. Subrogation 21 (2008). See Brookside Communities, LLC v. Lake Dow North Corp., 268 Ga.App. 785, 603 S.E.2d 31, 32"33 (2004) (guarantor unambiguously waived any claims it might have had). | Under Georgia law, right to subrogation can be modified or extinguished by contract or may be waived either expressly or by implication. | Can the right to subrogation be modified or extinguished by contract or waived expressly or by implication? | 043189.docx | LEGALEASE-00139327-LEGALEASE-00139328 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12502 | Ramsey v. Ramsey, 96 Idaho 672 | 34+5(6) | It is generally recognized that retirement pay based upon military or naval service is not a gratuity, but is an earned property right which accrues by reason of the individual's years of military service. Berkey v. United States, 361 F.2d 983, 176 Ct.Cl. 1 (1966); Morris v. Morris, 69 Wash.2d 506, 419 P.2d 129 (1966); LeClert v. LeClert, 80 N.M. 235, 453 P.2d 755 (1969); Busby v. Busby, 457 S.W.2d 551 (Tex.1970). It is also generally recognized in Community property states that military retirement benefits, to the extent that such benefits have vested or accured while the husband and wife are domiciliary in a community property state, are community property subject to division between the parties upon dissolution of the marriage.1 In re Marriage of Wilson (Wilson v. Wilson), 10 Cal.3d 851, 112 Cal.Rptr. 405, 519 P.2d 165 (1974); Smith v. Lewis, 107 Cal.Rptr. 95 (Cal.App.1973); Payne v. Payne, 82 Wash.2d 573, 512 P.2d 736 (1973); Morris v. Morris, supra; Otto v. Otto, 80 N.M. 331, 455 P.2d 642 (1969); LeClert v. LeClert, supra; Busby v. Busby, supra; Dominey v. Dominey, 481 S.W.2d 473 (Tex.Civ.App.1972); Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.1968). | Generally, retirement pay based on military or naval service is not a gratuity, but is an earned property right accruing by reason of individual's years of military service. | Is military retirement considered a gratuity or pension? | 008512.docx | LEGALEASE-00139367-LEGALEASE-00139368 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12503 | United States v. Porter, 591 F.2d 1048 | 316H+458 | Similarly, the acts alleged in the indictment did not constitute "kickbacks" within the meaning of 42 U.S.C. s 1395nn(b). In ordinary parlance, a kickback is the secret return to An earlier possessor of part of a sum received. As the Second Circuit in Zacher, supra, interpreted the term in a similar statute, a kickback "involve(s) a corrupt payment or receipt of payment in violation of the duty imposed by Congress on providers of services to use federal funds only for intended purposes and only in the approved manner." 586 F.2d at 916. Other federal statutes which prohibit the offer, acceptance, or solicitation of kickbacks are aimed at preventing the corruption of the judgment of a public official4 or of some individual who has a specific duty imposed upon him by the Congress.5 We cannot locate any duty imposed upon any of these defendants by a statute or regulation, the violation of which would amount to a misapplication of federal funds. Therefore, we can only conclude that no crime involving kickbacks has been charged or proven. | Showing that laboratory, having received lawful fee under medicare program, shared it with doctor who had referred specimen to lab did not establish bribery or "kickbacks" within meaning of statute providing for punishment of anyone furnishing items or services to individuals for which payment was to be made under subchapter and who solicited, offered or received any kickback or bribe; in ordinary parlance, "kickback" is secret return to earlier possessor of part of sum received. Social Security Act, S 1877(b) as amended 42 U.S.C.A. S 1395nn(b). | What does kickback mean in bribery statute? | Bribery - Memo #615 - C-JL.docx | ROSS-003287258-ROSS-003287260 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 12504 | Hanson v. Birmingham, 92 F.Supp. 33 | 289+1073 | In many cases there are substantial benefits and advantages in carrying on business by means of a partnership and the rights of a partner in and to the fruits of the partnership are substantial and valuable. However, being a partner can also have its disadvantages. Since a partnership agreement is in effect a contract of mutual agency, each partner is made jointly, and generally, severally, liable for the contractual obligations assumed and the tort liabilities incurred by the other partners in the course of, and within the scope of, the partnership business. 40 Am.Jur., Partnership, 136, 152, 190. Each partner is individually liable in solidio for the partnership obligations. 40 Am.Jur., Partnership, 189. Such individual liability is primary and direct. Francis v. McNeal, 1913, 228 U.S. 695, 699, 700, 33 S.Ct. 701, 57 L.Ed. 1029, L.R.A. 1915E, 706. The claim of a partnership creditor for the satisfaction of a claim against the partnership extends to all of the property of all of the members of the firm. Tucker v. Oxley, 1809, 5 Cranch 34, 9 U.S. 34, 40, 3 L.Ed. 29. The United States Supreme Court has stated that the liability of a partner for the obligations of the partnership is, "unlimited personal liability." Merchants' National Bank of Cincinnati v. Wehrmann, 1906, 202 U.S. 295, 301, 26 S.Ct. 613, 614, 50 L.Ed. 1036. Such liability being in personam it has no in rem or property limitation and extends to property afterwards acquired by any partner during the legal life of the obligation. The courts will not sanction arrangements attempting to give persons the advantages and benefits of a partnership without the assumption of the responsibilities connected therewith. 40 Am.Jur., Partnership, 44. If the parties have the rights of partners, they have the duties imposed by law on partners. Jackson v. Hooper, 1910, 76 N.J.Eq. 592, 599, 75 A. 568, 571, 27 L.R.A.,N.S., 658. In the case of Thompson v. Schmitt, 1925, 115 Tex. 53, 274 S.W. 554,at pages 559, 560, the Court held that it was not legally permissible to set | Limited partnerships were unknown to common law and are solely creations of local legislative bodies. | Were limited partnerships unknown at common law and creations of legislative bodies? | 022350.docx | LEGALEASE-00139418-LEGALEASE-00139420 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 12505 | Colonial Properties Realty Ltd. P'ship v. Lowder Const. Co., 256 Ga. App. 106 | 366+35 | First, Colonial argues that the subrogation clause cannot exculpate Lowder for acts of gross negligence. That is correct. "[Waiver of subrogation] clauses are intended to allows [sic] the parties to exculpate each other from personal liability in the event of property loss or damage to the work to the extent each party is covered by insurance." "Exculpatory clauses ... are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence." However, exculpatory clauses do not relieve a party from liability for acts of gross negligence or wilful or wanton conduct. | Waiver-of-subrogation clauses are valid and binding, and are not void as against public policy when a business relieves itself from its own negligence; however, such clauses do not relieve a party from liability for acts of gross negligence or wilful or wanton conduct. | "Are exculpatory clauses valid and binding, and are void as against public policy when a business relieves itself from its own negligence?" | Subrogation - Memo # 1109 - C - SK.docx | ROSS-003318452-ROSS-003318453 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12506 | Vockroth v. First Circuit Family Court of Hawaii, 747 F. Supp. 2d 1297 | 34+34.2(3) | In sum, Mr. Vockroth asks this court to second-guess the judgment of the Hawaii Family Court. See Brown v. Lewis, No. 4:08"CV"150 (CDL), 2009 WL 1457139, at (M.D.Ga. May 22, 2009) ("The SCRA simply "does not empower [a federal district court] to collaterally review, vacate, or impede the decisions of a state court .... [j]udgments made in violation of the [SCRA] are subject to attack only in the courts which rendered the judgment" ") (quoting Shatswell v. Shatswell, 758 F.Supp. 662, 663 (D.Kan.1991)). To the extent he asks the court to do so under the SCRA, the statute itself states that this court does not have subject matter jurisdiction over such a claim. To the extent that Mr. Vockroth seeks to use other constitutional provisions to overcome the lack of subject matter jurisdiction under the SCRA, this court cannot allow him to sidestep the SCRA's prohibition of subject matter jurisdiction in courts that did not render the initial judgment by thinking up other causes of action that are no more than restatements or elements of the SCRA claim. See Scheidegg, 715 F.Supp. at 14; Sarfaty v. Sarfaty, 534 F.Supp. 701, 706 (D.C.Pa.1982) (declining to exercise federal subject matter jurisdiction in an SCRA challenge to a state court order, when the plaintiff also argued that (1) his procedural due process rights were violated; and (2) the state court lacked jurisdiction to hear the matter; reasoning that "a federal district court "possess(es) no power whatever to sit in direct review of state court decisions' ") (alterations in original) (citations omitted); see also 53A Am. Jr. 2d Military and Civil Defense " 332. | No right or jurisdiction was vested by Servicemembers Civil Relief Act (SCRA) in federal district courts to vacate or impede state court's order or judgment or to interfere with exercise by state court of jurisdiction conferred on it by SCRA. Servicemembers Civil Relief Act, S 201(g)(1), 50 App.U.S.C.A. S 521(g)(1). | "Does the Soldiers and Sailors Civil Relief Act (SCRA) empower federal district court to collaterally review, vacate or impede decisions of a state court?" | 008546.docx | LEGALEASE-00139699-LEGALEASE-00139700 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 12507 | Tigue v. Swaim, 585 F.2d 909 | 34+32.1 | In our view, we have no other alternative under Butz than to hold that military officers during peacetime are not automatically clothed with absolute immunity in every situation. Butz demands a particularized inquiry into the functions an official performs and the circumstances under which they are performed prior to the granting of absolute immunity.8 See Butz v. Economou, supra at "", 98 S.Ct. 2894, 57 L.Ed.2d at 917-923. Whether they are so entitled depends on an analysis of the functions they perform, their immunity under common law and the interests sought to be protected. See id. at "", 98 S.Ct. 2894, 57 L.Ed.2d at 917; Imbler v. Pachtman, 424 U.S. 409, 421, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Thus, we cannot sustain the District Court's granting of summary judgment on the broad ground that all military officers, when acting within the scope of their duties, are immune from suit regardless of the functions they perform or the circumstances surrounding the performance. | Military officers during peacetime are not automatically clothed with absolute immunity in every situation. | During peacetime are military officers automatically clothed with absolute immunity in every situation? | Armed Services - Memo 207 - JS.docx | ROSS-003300551-ROSS-003300552 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12508 | Kagan v. Wattendorf& Co., 294 Mass. 588 | 38+31 | The evidence taken as a whole provided, we think, a basis for finding that the parties intended to make such oral assignments and for finding that consideration for the assignments was furnished. There is nothing in the legal characteristics of book accounts to prevent the finding that the intention of the parties to make such assignments was adequately manifested by what they did. The debts which from day to day came into existence when McDonald sold merchandise on credit to his customers were assignable choses in action. Dix. v. Cobb, 4 Mass. 508; Moore v. Coughlin, 4 Allen, 335; Rogers v. Abbot, 206 Mass. 270, 92 N.E. 472, 138 Am.St.Rep. 394; Cropper v. Gorham, 221 Mass. 119, 109 N.E. 161. They could be validly assigned orally, New England Cabinet Works v. Morris, 226 Mass. 246, 254, 115 N.E. 315, Currier v. Howard, 14 Gray, 511, Williston, Contracts, "" 424, 430, Am.Law Inst., Restatement, Contracts, " 157, and without notice being given to the debtors. Taylor v. Barton Child Co., 228 Mass. 126, 131, 117 N.E. 43, L.R.A.1918A, 124. No particular form of words or of conduct is necessary to constitute such an assignment. "A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim." Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N.E. 827, 829. | Valid assignment may be made by any words or acts which fairly indicate intention to make assignee the owner of the claim. | Are assignments made by words or acts valid? | 009518.docx | LEGALEASE-00140606-LEGALEASE-00140608 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12509 | Gaines v. Morris, 6 Rob. (LA) 4 | 83E+440 | The judgment by default was made final, on proof of the signatures of the maker and payee, but none of the subsequent endorsements were proved, although specially averred. It is true, that a note endorsed in blank, may be considered as one payable to bearer, and all the endorsements posterior to that of the payee, may be stricken out on the trial; but as they were stated in the plaintiff's petition, and were suffered to remain on the note, the signatures of the endorsers ought to have been proved. We find the rule laid down in Bailey on Bills, p. 489, (edition of 1836,) that in an action against the drawer or acceptor of a bill, or the maker of a note, all the endorsements stated, though some may have been stated unnecessarily, must be proved. | A note indorsed in blank may be considered as one payable to bearer, and all indorsements posterior to that of the payee may be stricken out on the trial. But in an action against the maker, drawer, or acceptor, all indorsements stated in the petition, though unnecessarily, must be proved. | Can a blank indorsement be stricken out at the trial? | 009536.docx | LEGALEASE-00140668-LEGALEASE-00140669 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 12510 | Georgi v. First Nat. Bank of Louisville, 557 S.W.2d 442 | 8.30E+273 | Kentucky adheres to the general rule as outlined in 11 Am.Jur.2d Bills and Notes, Section 307, page 333, which states in part:Where a note is given merely in renewal for another note and not in payment, the renewal does not extinguish the original debt or in any way change the debt except for postponing the time of payment, even though the first note was surrendered. | Where note is given not in payment but in renewal of another note, which is then surrendered, renewal does not extinguish original debt or in any way change debt except for postponing time of payment. | Does renewal change the original debt? | 010270.docx | LEGALEASE-00140251-LEGALEASE-00140252 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12511 | Gidden Motor Co. v. Johnston, 155 Miss. 328 | 83E+418 | Nonnegotiable instruments which partake of nature of commercial paper are assignable by indorsement and delivery. Indorsement on nonnegotiable instrument and its delivery has legal effect to transfer absolutely all right, title, and interest of indorser therein, but it does not as to payer or maker of paper operate to convert it into negotiable instrument.Where plaintiff indorsed certificate of guaranteed claim against assets of bank without qualification or restriction, and delivered it to another, and thus gave him indicia of absolute ownership to enable him to use it as collateral for security of loan, assignment by him vested in bona fide assignee for valuable consideration title thereto as against plaintiff.Appeal from Chancery Court, Tunica County; Harvey McGehee, Chancellor.Action by Mrs. E. B. Johnston against the Gidden Motor Company and others. From the decree, defendants appeal. Reversed and rendered. | Nonnegotiable instruments which partake of nature of commercial paper are assignable by indorsement and delivery. | Whether nonnegotiable instruments which partake of nature of commercial paper are assignable by indorsement and delivery? | 010303.docx | LEGALEASE-00139877-LEGALEASE-00139878 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12512 | Hager v. Coleman, 307 Ky. 74 | 186+15 | In Allen v. Ligon et al., 175 Ky. 767, 194 S.W. 1050, 1051, a malpractice case, we said:"A transfer made by a debtor in anticipation of a suit against him, or after a suit has been begun, and while it is pending against him, is a badge of fraud." | A transfer made by a debtor in anticipation of a suit against him, or after a suit has been begun and while it is pending against him, is a badge of fraud. KRS 378.010, 378.020, 404.020. | "Is a transfer made by a debtor in anticipation of a suit against him or after a suit has been begun, and while it is pending against him, a badge of fraud?" | 010454.docx | LEGALEASE-00140280-LEGALEASE-00140281 | SA, Sub | 0.24 | 0 | 0 | 1 | 1 | |
| 12513 | Hurlbut v. Quigley, 180 Cal. 265 | 83E+629 | The writing above the indorsers' names, therefore, constituted a part of the written contract of indorsement. The contract of an indorser, except so far as he qualifies it in writing, is that if the instrument is dishonored he will, upon compliance by the holder with certain conditions, pay the amount of the note. Civ. Code, " 3116. It constitutes, therefore, a conditional promise to pay the note. "A promise, made in the singular number, but executed by several persons, is presumed to be joint and several." Civ. Code, " 1660. See, also, Farmers' Exchg. Bank v. Altura, See, also, Farmers' Exchg. Bank v. Altura, Neg. Inst. " 94; Maiden v. Webster, 30 Ind. 317; Salomon v. Hopkins, 61 Conn. 47, 23 Atl. 716; Monson v. Drakeley, 40 Conn. 559, 16 Am. Rep. 74; Hemmenway v. Stone, 7 Mass. 58, 5 Am. Dec. 27. "Where all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." Civ. Code, " 1659. | The words above indorsers' name, "I hereby waive presentment," etc., are governed by Civ.Code, S 1660, declaring that a promise made in the singular number, but executed by several persons, is presumed to be joint and several. | "Is a promise, made in the singular number, but executed by several persons, presumed to be joint and several?" | 010461.docx | LEGALEASE-00140303-LEGALEASE-00140304 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 12514 | United States v. Michelson, 165 F.2d 732 | 110+29(5.5) | We think that Congress, as is lawfully may, provided that to "offer" a bribe and to "give" a bribe are two distinct crimes even when parts of a single transaction, since the one (to "give") involves an element which the other (to "offer") does not. The test, as stated in Morgan v. Devine, 237 U.S. 632, 640, 35 S.Ct. 712, 714, 59 L.Ed. 1153, is whether "separate acts have been committed with the requisite criminal intent." The present case does not meet that test. Kratter, the principal government witness, testified as follows: On July 17, 1946, in New York City, defendant offered him a bribe of $5,000, and he told defendant he would take it. Defendant then said that, when he had the money, he would telephone Kratter. On July 26, defendant, on the telephone, told Kratter that he had the money and wanted to meet Kratter to give it to him. On July 29, Kratter by pone, arranged with defendant for a meeting at a room in the St. George Hotel in Brooklyn. Kratter went to that room. He own words, as to what then occurred, follow: "A few minutes later there was a knock on the door. I opened the door and Mr. Michelson came in, and I closed the door after him. He dropped a package on a dresser or chifferobe, something like that that was in the hotel room, and he sat down and I sat down. I asked him if he had the money, and he said, "Yes, it is in the bag over there." I took the bag, unwrapped it, and he took out a large number of five, ten and twenty-dollar bills, and he said, Mr. Michelson said, "There is $5,000 there." I made a quick count of the bills and satisfied myself that there was approximately $5,000 in the package.' Defendant's conduct at that meeting in Brooklyn constituted his performance of the agreement of July 17- an illegal bargain resulting from a previously accepted offer- to give the $5,000 bribe. He did not on that day or at any other time in the Eastern District both offer and give. He merely gave. | To "offer" and to "give" bribes are distinct crimes even when parts of a single transaction. Cr.Code, S 39, 18 U.S.C.A. S 201. | Are offering and giving bribes the same or distinct crimes even when they're part of the same or a single transaction? | 012075.docx | LEGALEASE-00140688-LEGALEASE-00140689 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12515 | Ruggiero v. Town of E. Hartford, 2 Conn. App. 89 | 200+80 | The law in this state is clear that the taking of a highway creates no interest in fee, the presumption being that the landowners whose lands abut the highway continue to be owners of the fee of the land to the center of the highway. Ventres v. Farmington, 192 Conn. 663, 668-69 n. 3, 473 A.2d 1216 (1984); Luf v. Southbury, 188 Conn. 336, 341, 449 A.2d 1001 (1982); Antenucci v. Hartford Roman Catholic Diocesan Corporation, 142 Conn. 349, 355-56, 114 A.2d 216 (1955); Peck v. Smith, 1 Conn. 103, 132, 6 Am.Dec. 216 (Swift, J.) (1814). "The soil of a highway descends to heirs and passes to grantees as an appurtenant to the land adjoining, and whenever the highway is discontinued, the adjoining proprietors hold the land discharged of the easement." Antenucci v. Hartford Roman Catholic Diocesan Corporation, supra, 142 Conn. 356, 114 A.2d 216. The law established by the case of Peck v. Smith, supra, and its progeny, therefore, dictates the property rights of Burke and Ruggiero in this case and clearly supports the conclusion of the trial court. | Taking of highway creates no interest in fee, presumption being that landowners whose lands abut highway continue to be owners of fee of land to center of highway. | Does the taking of a highway create an interest in the fee? | Highways -Memo 158 - DB.docx | ROSS-003301832-ROSS-003301833 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12516 | Gerke v. City of Kansas City, 493 S.W.3d 433 | 302+11 | Because Missouri is a fact-pleading state, the "petition must contain a short and plain statement of the facts showing that the pleader is entitled to relief." Gardner v. Bank of Am., N.A., 466 S.W.3d 642, 646 (Mo.App.2015) (citing Rule 55.05). " "Although the petition need not plead evidentiary or operative facts showing an entitlement to the relief sought, it must plead ultimate facts demonstrating such an entitlement." " Id. (citation omitted). A petition that asserts only conclusions is insufficient, and we must disregard any conclusions that are not supported by facts. Id. If the petition does not contain ultimate facts or allegations from which to infer those facts, we will find that the motion to dismiss for failure to state a claim was properly granted. Id. | Although a petition need not plead evidentiary or operative facts showing an entitlement to the relief sought, it must plead ultimate facts demonstrating such an entitlement. Mo. Sup. Ct. R. 55.05. | Should a petition plead ultimate facts? | 023417.docx | LEGALEASE-00139935-LEGALEASE-00139936 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12517 | Brock v. Blackwood, 143 S.W.3d 47 | 302+48 | To properly plead a cause of action, the "petition must state allegations of fact in support of each essential element of the cause pleaded." Duvall v. Lawrence, 86 S.W.3d 74, 80 (Mo.App.2002). Thus, in order to properly plead a cause of action for the variation or termination of a trust, pursuant to " 456.590.2, the petitioner must plead ultimate facts establishing that: (1) all the adult beneficiaries of the subject trust had consented to the requested variation or termination of the trust; and (2) the requested variation or termination would benefit the disabled, minor, unborn and unascertained beneficiaries of the trusts. See Hamerstrom v. Commerce Bank, 808 S.W.2d 434, 438 (Mo.App.1991) (interpreting " 456.590.2). Thus, here, to properly state a cause of action for early termination of the Giftrusts, under " 456.590.2, as pled in Count I of their amended petition, the respondents were required to plead ultimate facts, not conclusions, sufficient to demonstrate both of the foregoing elements. | To properly plead a cause of action, the petition must state allegations of fact in support of each essential element of the cause pleaded. | Does a properly pleaded cause of action require allegations of fact? | 023428.docx | LEGALEASE-00140259-LEGALEASE-00140260 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12518 | In re OSG Ship Mgmt., 514 S.W.3d 331 | 307A+554 | The parties initially dispute whether the PPA includes a forum-selection clause. "The distinction between a forum selection clause and a venue selection clause is critical." Lui v. Cici Enters. L.P., No. 14"05"00827"CV, 2007 WL 43816, at (Tex. App."Houston [14th Dist.] Jan. 9, 2007, no pet.) (mem. op.). Forum-selection clauses are presumptively valid unless shown to be unreasonable, and they may be enforced in Texas courts through a motion to dismiss. Id.; see also In re Laibe Corp., 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam); In re Int'l Profit Assocs., Inc., 274 S.W.3d 672, 675 (Tex. 2009) (orig. proceeding) (per curiam). Venue, in contrast, cannot be selected by private contract unless provided by statute. Lui, 2007 WL 43816, at. Moreover, unless venue is challenged by a motion to transfer venue filed before or concurrently with the defendant's answer, any objection to venue is waived. Id. | Forum-selection clauses are presumptively valid unless shown to be unreasonable, and they may be enforced through a motion to dismiss. | Are forum-selection clauses presumptively valid unless shown to be unreasonable? | 032821.docx | LEGALEASE-00139835-LEGALEASE-00139836 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12519 | Jackson v. Pleasonton, 95 Va. 654 | 308+69(5) | An agent may deal directly with his principal, and sell to him property which he is authorized to buy for him, provided the principal, in making the purchase from him, acts with full knowledge, and there is no deception or concealment on the part of the agent; but, in order to render such an agreement valid and binding, the agent must make a full and fair disclosure of all the facts and circumstances within his knowledge in any way calculated to enable the principal to judge of the propriety of the transaction. Mech. Ag. " 466; 1 Am. & Eng. Enc. Law (2d Ed.) 1081. And in a controversy over the validity of such an agreement the burden of proof is upon the agent to show that the principal was fully informed of all the facts within his knowledge, and the perfect fairness of the transaction. Id. 1082; Teakle v. Bailey, 2 Brock. 43, Fed. Cas. No. 13,811. This the appellant has wholly failed to show. The only witnesses as to what disclosures were made by the appellant prior to and at the time the agreement of March 13th was entered into were the parties themselves. They, as we have seen, directly contradicted each other on this point; and the other facts and circumstances in the record, so far as they throw any light upon this question, tend to sustain the contention of the appellee, rather than that of the appellant. The agreement of March 13th cannot, therefore, be considered as binding the appellee. | An agent may deal directly with his principal, and sell to him property he was employed to buy for him, provided he makes fair and full disclosure to his principal of all the facts and circumstances within his knowledge in any way calculated to enable his principal to judge of the propriety of the transaction, and there is no deception or concealment on the part of the agent; and, in a controversy between a principal and his agent over the validity of such an agreement, the burden of proof is on the agent to show such disclosure, and the perfect fairness of the transaction. | On whom does the burden proof lie to prove that the principal was informed of all the facts? | Principal and Agent - Memo 105 - GP.docx | ROSS-003317090-ROSS-003317091 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 12520 | In re Conseco, 299 B.R. 875 | 308+145(2) | It is well settled that an agent, acting under actual authority, has the power to enter into a binding contract on behalf of an undisclosed principal. See Indiana Gas Co., Inc. v. Home Ins. Co., 141 F.3d 314, 319 (7th Cir.1998). The facts clearly show that CFSC was the servicing agent of the trusts and had the power to enter into binding contracts for the trust. There is however no indication that it entered into any such contract with Matrix. The property management agreement was nothing more than a two-party contract between CFSC and Matrix, whereby Matrix agreed to perform work in exchange for payments from CFSC. The contract clearly mentions only CFSC and Matrix as parties, and CFSC alone has the duty to pay Matrix for its services. Nowhere does the contract contemplate any third party. | Agent, acting under actual authority, has power to enter into binding contract on behalf of undisclosed principal. | Can an Agent enter into a binding contract on behalf of undisclosed principal? | 041332.docx | LEGALEASE-00140315-LEGALEASE-00140316 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12521 | State Farm Mut. Auto. Ins. Co. v. Long, 129 N.C. App. 164 | 371+2001 | Applying the San Juan Cellular test, we hold that the regulatory charge imposed by G.S. 58"6"25 is not a tax.We note that the charge imposed here is imposed by the General Assembly, not by an administrative agency. This factor weighs in favor of a finding that the charge is a tax. See Bidart, 73 F.3d at 931. However, this factor is not dispositive. While the charge is imposed by the General Assembly, it is also imposed only upon insurance companies. "An assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." Id. Accordingly, after applying the first two prongs of the San Juan Cellular test, the nature of the regulatory charge remains somewhat unclear. "Where the first two factors are not dispositive, courts examining whether an assessment is a tax "have tended ... to emphasize the revenue's ultimate use." " Bidart, 73 F.3d at 932 (quoting San Juan Cellular, 967 F.2d at 685) (emphasis added). See also Cumberland Farms, 116 F.3d at 947 ("the most salient factor in the decisional mix concerns the destination of the revenues raised by the impost"). | Insurance regulatory charge levied on insurers was not "tax" under San Juan Cellular test, even though it was imposed by legislature rather than by agency, where it applied only to insurers, was segregated from general fund, could be used only to help defray state's costs of regulating insurance, and was subject to annual adjustments to assure that no surplus resulted. G.S. S 58-6-25. | Is San Juan Cellular test used to determine whether an assessment is a tax? | 044641.docx | LEGALEASE-00140123-LEGALEASE-00140124 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12522 | Esty v. Beal Bank S.S.B., 298 S.W.3d 280 | 307A+746 | A trial court has the authority to impose sanctions for the failure to comply with a pretrial order. See Koslow's v. Mackie, 796 S.W.2d 700, 703 (Tex.1990) (trial court's power to sanction for violation of pretrial order implicit under Rule 166). We review a trial judge's enforcement of a scheduling order for an abuse of discretion. G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co., 177 S.W.3d 537, 542 (Tex.App.-Dallas 2005, no pet.). A trial judge abuses his discretion when he acts arbitrarily or unreasonably without reference to any guiding rules or principles. Id. | Trial court has the authority to impose sanctions for the failure to comply with a pretrial order. | Does the trial court have the authority to impose sanctions for the failure to comply with a pretrial order? | 045520.docx | LEGALEASE-00140427-LEGALEASE-00140428 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12523 | Hillman v. City of McKinney, 70 F. Supp. 3d 790 | 386+12 | Trespass is the unauthorized physical entry onto a person's property by someone or something. Ronald Holland's A"Plus Transmission & Auto. v. E"Z Mart Stores, Inc., 184 S.W.3d 749, 758 (Tex.App."San Antonio 2005, no pet.). However, this entry need not be in person, and may be made if a person caused or permitted another to cross the boundary of the property unauthorized. Id. "A person likewise trespasses when he intentionally causes a third person to enter land in the possession of another." Wilen v. Falkenstein, 191 S.W.3d 791, 797"98 (Tex.App."Fort Worth 2006, pet. denied). In order to recover damages for trespass, a plaintiff must be able to prove three elements: (1) plaintiff owns, or had a legal right of possession, on the alleged property; (2) defendant entered the property, and said entry was physical, intentional, and voluntary; and (3) defendants' trespass caused injury to plaintiff. Wilen, 191 S.W.3d at 797"98. | Under Texas law, a person trespasses when he intentionally causes a third person to enter land in the possession of another. | Does a person commit a trespass if he intentionally causes a third person to enter land in the possession of another? | 047433.docx | LEGALEASE-00140637-LEGALEASE-00140638 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 12524 | Wyoming v. U.S. Dep't of Agric., 661 F.3d 1209 | 411+8 | As stated above, the Organic Act of 1897 empowers the Secretary of Agriculture, through the Forest Service, to "make provisions for the protection against destruction by fire and depredations upon the public forests and national forests" and "make such rules and regulations to regulate [the national forests'] occupancy and use and to preserve the forests thereon from destruction." 16 U.S.C. " 551. The Organic Act gives the Forest Service broad discretion to regulate the national forests, including for conservation purposes. See United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911) (discussing the general authority granted under the Organic Act and upholding the Secretary of Agriculture's establishment of criminal penalties for violations of forest-wide grazing regulations); City &Cnty. of Denver v. Bergland, 695 F.2d 465, 476 (10th Cir.1982) (stating that the Organic Act "confers upon the forest service the duty to protect the forests from injury and trespass, and the power to condition their use and prohibit unauthorized uses"); United States v. Hymans, 463 F.2d 615, 617 (10th Cir.1972) (discussing the broad authority delegated to the Forest Service under the Organic Act to regulate the "occupancy and use" of national forests (citing McMichael v. United States, 355 F.2d 283 (9th Cir.1965))); see also Burlison v. United States, 533 F.3d 419, 435 (6th Cir.2008) ("Congress has given the Forest Service broad power [under the Organic Act] to regulate Forest System land." (citation omitted) (internal quotation marks omitted)); Skranak v. Castenada, 425 F.3d 1213, 1217 (9th Cir.2005) (stating that "16 U.S.C. " 551 confers broad powers on the Forest Service to regulate roads for the good of the forests" (citing Clouser v. Espy, 42 F.3d 1522, 1538 (9th Cir.1994))); Wilson v. Block, 708 F.2d 735, 758 (D.C.Cir.1983) ( "The Department of Agriculture now has adequate authority to issue revocable permits for all purposes under the [Organic Act of] 1897." (citation | Forest Service acted within its authority to regulate National Forest System (NFS) lands for conservation purposes, under Organic Act and Multiple-Use Sustained-Yield Act (MUSYA), in promulgating final rule that prohibited road construction and commercial timber harvesting in inventoried roadless areas of NFS lands; Forest Service had broad rulemaking authority under Organic Act to regulate "occupancy and use" of NFS lands and "to preserve the forests thereon from destruction", and Forest Service had supplemental authority under MUSYA to regulate NFS lands for multiple uses, such as "outdoor recreation," "watershed," and "wildlife and fish purposes." Lieu Lands Act, S 1, 16 U.S.C.A. S 551; Multiple-Use Sustained-Yield Act of 1960, SS 1, 2, 4(a), 16 U.S.C.A. SS 528, 529, 531(a); Forest Transfer Act, S 1, 16 U.S.C.A. S 472; 36 C.F.R. SS 294.10-294.14. | Who can make rules to regulate occupancy and use of National Forests? | Woods and Forest - Memo 70 - ANM.docx | ROSS-003288955-ROSS-003288956 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 12525 | People v. Powers, 33 Misc. 2d 624 | 258A+896 | The failure of military authority to assume jurisdiction constitutes a waiver of jurisdiction to the civil courts. (Harris v . Hunter, 10 Cir., 170 F.2d 552; Kennedy v. Sanford, 5 Cir., 166 F.2d 568, supra; United States v. Canella, D.C., 63 F.Supp. 377, affd. 9 Cir., 157 F.2d 470; Dickenson v. Davis, D.C., 143 F.Supp. 421, affd. 10 Cir., 245 F.2d 317). | In time of peace a person in the armed forces who commits a state crime punishable under state law is amenable to state courts, and even in time of war, offenses cognizable by court martial, as a matter of comity or expediency, may be prosecuted in state courts, or in federal civil courts, and failure of the military authority to assume jurisdiction constitutes a waiver of jurisdiction to the civil courts. 10 U.S.C.A. S 802. | Does the failure of military authority to assume jurisdiction constitute a waiver of jurisdiction to the civil courts? | 008623.docx | LEGALEASE-00141694-LEGALEASE-00141695 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 12526 | United States v. Walsh, 156 F. Supp. 3d 374 | 110+12.7(1) | "When evaluating the scope of a federal criminal statute, [the court] must look closely to its language, legislative history, and purpose." United States v. Rooney, 37 F.3d 847, 851 (2d Cir.1994). In that regard, "[s]tatutory analysis begins with the plain meaning of a statute. The plain meaning can be extrapolated by giving words their ordinary sense." Nat. Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 98 (2d Cir.2001); see also United States v. Aleynikov, 676 F.3d 71, 76 (2d Cir.2012) ("Statutory construction "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." ") (quoting United States v. Albertini, 472 U.S. 675, 680, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). | When evaluating the scope of a federal criminal statute, court must look closely to its language, legislative history, and purpose. | What does the court look to when evaluating the scope of bribery statute? | 011969.docx | LEGALEASE-00141083-LEGALEASE-00141084 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12527 | United States v. Orenuga, 430 F.3d 1158 | 63+3 | At the conclusion of the trial, the District Court judge instructed the jury that "[i]t is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act." Tr. at 16 (4/8/04). Orenuga argues that this is an erroneous construction of 18 U.S.C. " 201(b)(2)(A), for, in his view, the public official must perform a quid pro quo in order to fall within the ambit of the statute. In the absence of evidence suggesting that he ultimately altered the businesses' liability, Orenuga contends that his crimes were not bribery, but more precisely "defraud[ing] the two businesses by falsely convincing them that they were receiving some concession for their money." Br. of Appellant at 19. | Possible lawful and proper performance of act by public official had there been no bribe was not defense to crime of bribery. 18 U.S.C.A. S 201(b)(2)(A). | "Is it a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act?" | 011974.docx | LEGALEASE-00140887-LEGALEASE-00140888 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 12528 | United States v. Azadian, 436 F.2d 81 | 63+3 | Can Azadian's conviction of aiding and abetting be sustained when his principal, Miss Daniel, has been found not guilty because of entrapment? We conclude that it can. | Conviction for aiding and abetting bribing of a public official, an employee of a draft board, could be sustained, notwithstanding that the principal had been found not guilty because of entrapment, where defendant desired and intended to go forward when the principal announced an intent to withdraw. 18 U.S.C.A. SS 2, 201(c). | Can a person be convicting for aiding and abetting bribing of a public official when the principal had been found not guilty because of entrapment? | 012041.docx | LEGALEASE-00141835-LEGALEASE-00141836 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12529 | United States v. Michelson, 165 F.2d 732 | 110+29(5.5) | We think that Congress, as is lawfully may, provided that to "offer" a bribe and to "give" a bribe are two distinct crimes even when parts of a single transaction, since the one (to "give") involves an element which the other (to "offer") does not. The test, as stated in Morgan v. Devine, 237 U.S. 632, 640, 35 S.Ct. 712, 714, 59 L.Ed. 1153, is whether "separate acts have been committed with the requisite criminal intent." The present case does not meet that test. Kratter, the principal government witness, testified as follows: On July 17, 1946, in New York City, defendant offered him a bribe of $5,000, and he told defendant he would take it. Defendant then said that, when he had the money, he would telephone Kratter. On July 26, defendant, on the telephone, told Kratter that he had the money and wanted to meet Kratter to give it to him. On July 29, Kratter by pone, arranged with defendant for a meeting at a room in the St. George Hotel in Brooklyn. Kratter went to that room. | To "offer" and to "give" bribes are distinct crimes even when parts of a single transaction. Cr.Code, S 39, 18 U.S.C.A. S 201. | Are offering a bribe and giving a bribe two distinct crime even when it is a part of a single transaction? | 012067.docx | LEGALEASE-00140774-LEGALEASE-00140775 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12530 | Templeton v. Wolverton, 142 Tex. 422 | 260+97 | A mining partnership may of course be created by express contract and it may be created, without express contract, by joint ownership and joint operation of mineral interests. Munsey v. Mills & Garitty, 115 Tex. 469, 483, 484, 283 S.W. 754; Bolding v. Camp, Tex.Com.App., 6 S.W.2d 94, 95; Summers' Law of Oil and Gas, Perm. Ed., vol. 4, pp. 144, 145, s 721; 12 Texas Law Review, pp. 410, 413, 414. | A "mining partnership" may be created by express contract, and without express contract by joint ownership and operation of mineral interests. | Can a mining partnership be created by express contract or without express contract? | 021309.docx | LEGALEASE-00140859-LEGALEASE-00140860 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 12531 | Oxford Oil Co. v. Atl. Oil Producing Co., 22 F.2d 597 | 260+86 | The right of a state to so regulate the drilling of wells for oil and gas as to conserve the rights of adjoining owners is too well settled to admit of serious controversy. Ohio Oil Co. v. Indiana, 177 U.S. 190, 20 S.Ct. 576, 44 L.Ed. 729; Lindsley v. Natural Carbonic Gas. Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369, Ann. Cas. 1912C, 160. It was within the power of the Legislature to lay down a general rule for the protection of the mineral rights of the owners of adjoining lands, and to leave the details of enforcing that rule to an administrative agency or board. Plymouth Coal Co. v. Pennsylvania, 232 U.S. 531, 34 S.Ct. 359, 58 L.Ed. 713. The proviso of rule 37, permitting under exceptional circumstances the drilling of wells within less than 150 feet, was to avoid unnecessary hardship, and is valid under the rule announced in Gorieb v. Fox, 274 U.S. 603, 47 S.Ct. 675, 71 L.Ed. 1228. Plaintiffs do not complain of any arbitrary exercise of power, but merely that the Railroad Commission was without authority to adopt or enforce any rule. In our opinion, neither that statute nor the rule complained of violates the provisions of the Constitution of the United States relied on by plaintiffs. | State has power, through administrative board to make regulations for protection of mineral rights of adjoining owners of land. | "Is it within the power of the legislature to lay down a general rule for the protection of the mineral rights of the owners of adjoining lands, and to leave the details of enforcing that rule to an administrative agency or board?" | 021513.docx | LEGALEASE-00142025-LEGALEASE-00142026 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 12532 | Williams v. Barnes & Noble, 174 S.W.3d 556 | 302+11 | A petition is to "contain a short and plain statement of the facts showing that the pleader is entitled to relief." Rule 55.05. The failure to plead facts showing entitlement to the relief sought deprives the trial court of jurisdiction to grant it. Commercial Bank, 658 S.W.2d at 21. Although the petition need not plead evidentiary or operative facts showing an entitlement to the relief sought, it must plead ultimate facts demonstrating such an entitlement Westphal v. Lake Lotawana Ass'n, Inc., 95 S.W.3d 144, 152 (Mo.App.2003). The plaintiff cannot merely assert conclusions. Id. Courts disregard conclusions not supported by facts in determining whether a petition states a cause of action. Lick Creek Sewer Sys. v. Bank of Bourbon, 747 S.W.2d 317, 322 (Mo.App.1988). | Although a petition need not plead evidentiary or operative facts showing an entitlement to the relief sought, it must plead ultimate facts demonstrating such an entitlement; a plaintiff cannot merely assert conclusions in his petition. V.A.M.R. 55.05. | Should a petition plead operative facts? | 023458.docx | LEGALEASE-00141310-LEGALEASE-00141311 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 12533 | Indep. Sch. Dist. No. 404 v. Castor, 670 N.W.2d 758 | 307A+485 | Choosing to apply sanctions for a failure to comply with discovery is within the trial court's discretion. Przymus v. Comm'r of Pub. Safety, 488 N.W.2d 829, 832 (Minn.App.1992), review denied (Minn. Sept. 15, 1992). The supreme court has denied a motion for sanctions pursuant to Minn. R. Civ. P. 37.03 where it found that there had been evidence introduced at trial that would have supported a finding contrary to most of the moving party's requests for admission. Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc., 325 N.W.2d 20, 28"29 (Minn.1982). Here, the trial court found Minn. R. Civ. P. 37.03 "inapplicable because ... the party failing to admit had reasonable ground to believe that the party might prevail in the matter. | Following teacher and part-time superintendent prevailing on school district's conversion claim, trial court acted within its discretion when it denied teacher and part-time superintendent's request for attorney fees under rule allowing sanctions if party fails to admit pursuant to request for admissions and if truth of matter is proven at trial, although school district had denied requests for admissions concerning compensation earned by teacher and provided to teacher, since there was discrepancy as to meaning of term compensation, and school district provided evidence about master employment agreement and about past practice regarding assignment in attempt to prove school district's interest in unassigned amounts. 48 M.S.A., Rules Civ.Proc., Rule 37.03. | Will the court deny a motion for sanctions when it is found that there had been evidence introduced at trial that would have supported a finding contrary to most of the moving party's requests for admission? | 030615.docx | LEGALEASE-00141184-LEGALEASE-00141185 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 12534 | Thilman & Co. v. Esposito, 87 Ill. App. 3d 289 | 307A+723.1 | No duty is imposed upon a trial court to continue a case when no request for a continuance has been made. (Francone v. Weigel Broadcasting Co. (1979), 79 Ill.App.3d 991, 35 Ill.Dec. 164, 398 N.E.2d 1114.) We find that the trial judge did not err in denying defendants' motion for rehearing instead of ordering a continuance. | No duty is imposed upon trial court to continue case when no request for continuance has been made. | Is a duty imposed upon a trial court to continue a case when no request for continuance has been made? | Pretrial Procedure - Memo # 4223 - C - UG.docx | ROSS-003291224-ROSS-003291225 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 12535 | Kansas City, M. & O. Ry. Co. of Tex. v. Wells, 142 S.W. 670 | 307A+723.1 | Appellant filed an application for a continuance of the cause, which was insufficient as a statutory application in the following particulars: It was verified by affidavit of its attorney, stating the facts to be true "to the best of his knowledge and belief," and did not give the source of said attorney's information. Sullivan v. First Nat. Bank, 37 Tex. Civ. App. 228, 83 S. W. 422; St. L. & S. W. Ry. Co. of Texas v. Harkey, 39 Tex. Civ. App. 533, 88 S. W. 506; G., C. & S. F. Ry. Co. v. Brown, 75 S. W. 807. It fails to allege that appellant used "due diligence" to procure the testimony of the witnesses on account of whose absence the continuance was sought. Pacific Express Company v. Needham, 37 Tex. Civ. App. 129, 83 S. W. 22; Railway Co. v. Aiken, 71 Tex. 377, 9 S. W. 437. | An application for a continuance on the ground of the absence of material witnesses, which fails to state that the applicant used due diligence to obtain such testimony, or to set out facts showing that the applicant had used such diligence, is defective. | "Is an application for a continuance, on the ground of the absence of witnesses, which fails to state in terms that due diligence was used, held properly denied for want of due diligence?" | Pretrial Procedure - Memo # 4303 - C - CK.docx | ROSS-003331640-ROSS-003331641 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12536 | Gregg v. Cecil, 844 S.W.2d 851 | 307A+713 | In ruling on a motion for a continuance the Court must look at the entire record in the case and not just the sworn allegations set forth in the motion for continuance. See Durston v. Best Western Motel, 695 S.W.2d 795, 797 (Tex.App."Waco 1985, no writ). In the case before us we note that the date of the incident giving rise to the action in the trial court occurred almost four years prior to summary judgment being granted. We note at the outset that this motionfor continuance was appellant's firstmotion in the trial court, but there is nothing in the rules of civil procedure relating to continuancesrequiringgranting of a firstmotionmerelybecause it meets all the requirements of the statute, and it is uncontroverted by the opposing party. Id. at 797. Fritsch v. J.M. English Truck Line, 151 Tex. 168, 246 S.W.2d 856 (1952). | There is no requirement for granting a first motion for continuance merely because it meets all of the statutory requirements and is uncontroverted by the opposing party. | Is there a rule relating to continuances requiring granting of a first motion merely because it is in statutory form and not controverted by affidavit of opposite party? | 032130.docx | LEGALEASE-00141304-LEGALEASE-00141305 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 12537 | Morris v. McElroy, 219 Ala. 369 | 307A+725 | The power and authority to set aside a continuance and reset the case for trial is likewise a power to be exercised by the court, and rests upon the same principles. | Power to set aside continuance and reset case for trial resides in court, not trial judge. | Does the power to set aside continuance and reset case for trial reside in court or trial judge? | 032132.docx | LEGALEASE-00141306-LEGALEASE-00141307 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 12538 | Palomar Ref. Co. v. Prentice, 57 Cal. App. 2d 954 | 228+344 | We can find no error in denying the various motions made by defendant after the judgment was rendered. The defendant then disclosed, for the first time, that he was a witness in the Justice's Court in Redlands on February 26th, the date set for the deposition; and that he had to be present in the Municipal Court in San Diego on March 2nd to enter a plea in a criminal case brought against him. There is no suggestion that he made any effort to have the dates of either of these other proceedings changed or that he would have been unsuccessful had he done so. He made his own choice of the forums in which he desired to appear without disclosing the actual facts to the court below until after judgment had gone against him. The trial court should be vested with a reasonable discretion in passing on motions made on these grounds, and we can see no breach of discretion in the action taken here. It must have occurred to the trial court, as it occurs to us, that defendant had succeeded in postponing the finality of a small but apparently just judgment against him for a long time. | Trial court should be vested with reasonable discretion in passing on motions to vacate order denying continuances and motions to vacate judgment. | Should court be vested with reasonable discretion in passing on motions to vacate order denying continuances and motions to vacate judgment? | 032187.docx | LEGALEASE-00141541-LEGALEASE-00141542 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12539 | Brown v. Ellis, 103 F. 834 | 307A+74 | The principal objections to the admissibility of the depositions were that notice was given for taking them before, and a commission for taking them was issued to, "A. C. Strong, Notary Public of Woodbury County, Iowa," and they were taken by "Alfred C. Strong," as notary public of that county, and certified by him as such notary, without attaching his official seal to the certificate. The depositions were taken under the statutes of the United States. These objections were overruled, because Alfred C. Strong includes A. C. Strong, and is shown to be the same person; and the part of the statute authorizing the taking of depositions before a notary does not require a seal to its certification (section 863), and that part referring to a seal, which was followed by the commission, only requires that the deposition and certificate be "sealed up" for transmission to the court (section 865). | Where depositions are taken for use in a federal court, upon a commission issued to a notary public, under Rev.St. SS 863-865, 28 U.S.C.A. SS 639-641, providing for the taking of the deposition of an absent, sick, or infirm witness, which shall be subscribed by deponent, and sealed up and directed to the court by the notary taking it, and remain under his seal until broken in court, it is not essential that the notary should attach his official seal to his certificate. | "Where depositions are taken for use in a federal court, is it not essential that the notary should attach his official seal to his certificate?" | 032231.docx | LEGALEASE-00141170-LEGALEASE-00141171 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 12540 | McWilliams v. McWilliams, 68 Ga. 459 | 307A+74 | Where interrogatories are prepared for a witness, his residence must be stated therein, if known. | The interrogatories prepared prior to the issuance of a commission must state the place of residence of the witness if known. Code, S 3879. | Must the interrogatories prepared prior to the issuance of a commission state the place of residence of the witness if known? | 032544.docx | LEGALEASE-00141925-LEGALEASE-00141926 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 12541 | Temby v. William Brunt Pottery Co., 229 Ill. 540 | 307A+74 | At the hearing before the master the defendant Temby objected to the admission in evidence of depositions taken on behalf of the complainant on the grounds that they contained no evidence that the witnesses were examined under oath, and that they were certified to by George E. Davidson as a commissioner purporting to act as a notary public of Columbiana county, Ohio; but the certificate was not under his notarial seal, and he failed to return with the depositions a certificate of his official character as a notary public. The depositions were received in evidence, and the court sustained the master in considering them. They were taken by virtue of a commission issued out of the superior court to George E. Davidson, who was described as a notary public and was thereby authorized to take and return them to the court. He derived his authority from the commission, and it is immaterial that he was also described as a notary public. It is not necessary that a commissioner should hold any office, and a commission may be directed to any competent and disinterested person. The person to whom a commission to take depositions is issued need only be designated by his name, or he may be designated by the office which he holds, and in either case he obtains his authority from the commission. | Where a commission to take depositions is directed to a competent person, he derives his authority from the commission, and because he is described therein as a notary public does not render necessary the affixing of a certificate of his official character to the depositions. | Does a competent person derive his authority from the commission where a commission to take depositions is directed to him? | 032590.docx | LEGALEASE-00141449-LEGALEASE-00141450 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 12542 | Read v. Patterson, 79 Tenn. 430 | 307A+74 | The fifth and sixth are exceptions of the character of last named exception, and are untenable. The seventh and last exception is because the official character of the justice taking the deposition is not shown in the caption or certificate. The form in the Code, section 3848, does not contain any recital in the caption or certificate of the official character of the officer taking the deposition. It is sufficient if that fact fully appears in the signature of the officer as it does in this case at the end of his certificate. | It is sufficient if the official character of the commissioner appears from his signature at the end, though not stated in the body, of the certificate. | "Is it sufficient if the official character of the commissioner appears from his signature at the end, though not stated in the body, of the certificate?" | 032596.docx | LEGALEASE-00141399-LEGALEASE-00141400 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12543 | Dunham v. Halloway, 2 Okla. 78 | 307A+74 | The statute requiring the officer to show in his certificate the place where the deposition was taken is mandatory, and the reason therefor is so apparent that it hardly needs discussion. This requirement is obviously for the purpose of giving the adverse party an opportunity to be present, if he wishes, when the deposition is taken, and the certificate of the officer taking such deposition should show that the terms of the notice are complied with. If the adverse party had been present, a showing that the deposition was taken at the place designated in the notice would not, perhaps, be necessary, for his being present would waive any irregularity in either the notice to take deposition or the certificate attached thereto. But, where the adverse party does not appear, he waives nothing required in the statute, and he has the right to presume that the deposition will be taken in strict conformity with the statutes, and, in the absence of a certificate showing such fact, may move to suppress the deposition, and such motion should be sustained. | Where a certificate fails to show that depositions were taken at the place named in the notice, and where it further appears that the adverse party was not present when such depositions were taken, the depositions should be suppressed. | "Where a certificate fails to show that depositions were taken at the place named in the notice, should the depositions be suppressed?" | 032619.docx | LEGALEASE-00141244-LEGALEASE-00141246 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 12544 | Grott v. Jim Barna Log Sys. Midwest, 794 N.E.2d 1098 | 307A+554 | A motion to dismiss pursuant to T.R. 12(B)(2) is a proper method of challenging the personal jurisdiction of a trial court. Lee v. Goshen Rubber Co., Inc., 635 N.E.2d 214, 215 (Ind.Ct.App.1994), trans. denied. When reviewing a motion to dismiss for lack of personal jurisdiction, this court applies a de novo standard. See Anthem Ins. Cos. v. Tenet Healthcare, 730 N.E.2d 1227, 1238 (Ind.2000). Personal jurisdiction is a question of law, and, as such, it either exists or does not. Id. The question of its existence is not entrusted to a trial court's discretion. Id. When a defendant attacks the jurisdiction over his person, he bears the burden of proof upon that issue by a preponderance of the evidence, unless the lack of jurisdiction is apparent from the face of the complaint. Lee, 635 N.E.2d at 215. | A motion to dismiss is a proper method of challenging the personal jurisdiction of a trial court. Trial Procedure Rule 12(B)(2). | Is a motion to dismiss a proper method for challenging the personal jurisdiction of a trial court? | 033295.docx | LEGALEASE-00140740-LEGALEASE-00140741 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 12545 | Burley v. Kitchell, 20 N.J.L. 305 | 307A+74 | The answer to the second objection is, that the cautioning the witness to testify the whole truth is merely directory to the justice and need not appear on the face of the deposition. Ludlam v. Broderick, 3 Green 272. | It is not necessary that it should appear upon the face of the deposition that the witness was cautioned "to testify the whole truth." | "Is it necessary that it should appear upon the face of the deposition that the witness was cautioned ""to testify the whole truth""?" | 033394.docx | LEGALEASE-00141370-LEGALEASE-00141371 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |
| 12546 | Quinn v. Clayton Const. Co., 111 S.W.3d 428 | 307A+684 | A motion to dismiss for lack of subject matter jurisdiction is an appropriate method to raise the workers' compensation law as a defense to a common law tort action. James v. Poppa, 85 S.W.3d 8, 9 (Mo. banc 2002). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Rule 55.27(g)(3). "As the term "appears' suggests, the quantum of proof is not high; it must appear by the preponderance of the evidence that the court is without jurisdiction." James, 85 S.W.3d at 9. In determining whether it has jurisdiction, a trial court may consider affidavits, exhibits and evidence pursuant to Rules 55.27 and 55.28. Howell v. Lone Star Industries, Inc., 44 S.W.3d 874, 877 (Mo.App. E.D.2001). Whether there is subject matter jurisdiction is a question of fact that is left to the sound discretion of the trial court. James, 85 S.W.3d at 9; id. Accordingly, this court reviews for abuse of discretion. Howell, 44 S.W.3d at 877. | For purposes of court rule providing that court shall dismiss action whenever it appears, by suggestion of parties or otherwise, that court lacks jurisdiction, term "appears" suggests quantum of proof is not high; it must appear by preponderance of evidence that court is without jurisdiction. V.A.M.R. 55.27(g)(3). | "Where it appears that the court lacks jurisdiction, shall the court dismiss the action?" | 033412.docx | LEGALEASE-00141620-LEGALEASE-00141621 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 12547 | Morss v. Palmer, 15 Pa. 51 | 307A+74 | Where a number of witnesses are examined, it is only necessary that the officer should sign the general caption and certificate. The first exception is, that the justice must certify, at the foot of each deposition, that the witness was sworn and subscribed the deposition taken before him. The exception was abandoned, on the argument, and properly, as the deposition and subscription are sufficiently identified by the general caption and certificate of the justice. He is not required to certify at the conclusion of each deposition.It is not necessary that the deposition taken under a commission should be subscribed by the witness. It is enough if it appear in the body of the certificate they were sworn: 1 Ser. & R. 201, Moulson v. Hargrave. It is also ruled to be a sufficient execution, if the commissioners annex their names to the deposition, and the envelope is sealed: 13 Ser. & R. 323, Nussear v. Arnold; and see Scott v. Horn, 9 Barr 409. | Where a number of witnesses are examined, it is only necessary that the officer should sign the general caption and certificate. | "Where a number of witnesses are examined, is it only necessary that the officer should sign the general caption and certificate?" | 033414.docx | LEGALEASE-00141624-LEGALEASE-00141625 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 12548 | Texas Co. v. Cohn, 8 Wash. 2d 360 | 92+3562 | The court held, nevertheless, that the tax law did not contravene the equal protection clause. Mr. Justice Roberts, speaking for the court, clearly and forcefully stated the principles governing the inter-relationship of the constitutionally secured rights of persons to the equal protection of the laws and the power of a state legislature to make classifications for the purpose of taxation as follows: "The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. | The requirement that exercise of power of taxation must not deny equal protection of laws does not compel adoption of ironclad rule of equal taxation nor prevent differences or discretion in selection of subjects or classification. | Is the power of taxation fundamental to the existence of a government? | Taxation - Memo # 419 - C - SU.docx | ROSS-003290154-ROSS-003290155 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 12549 | Bd. of Comm'rs of Johnson Cty. v. Robb, 161 Kan. 683 | 371+2001 | In Chicago Great Western Railway Co. v. Railroad Co., 75 Kan. 167, 88 P. 1085, 12 Ann.Cas. 588, the question was whether assessments for local improvements made against property specially benefited thereby were included within an agreement to pay taxes. In the course of the opinion it was said there is a well-understood difference between general taxes levied for the support of the government and special charges for betterments. The court held: "The word "taxes' has two well-recognized meanings, one inclusive and the other exclusive of special assessments for local improvements. Which meaning is intended where the word is used in a written contract must be determined by the context." (Syl. 1.). | The word "taxes" has two well recognized meanings, one inclusive and the other exclusive of special assessments of local improvements, and which meaning is intended where the word is used in a written contract must be determined by the contract. | Does the word tax have meanings inclusive and exclusive of special assessments? | Taxation - Memo # 437 - C - SS.docx | ROSS-003289687-ROSS-003289688 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12550 | Riverton Produce Co. v. State, 871 P.2d 1213 | 371+2005 | However, absolute parity between interstate and intrastate commerce is not required under the Commerce Clause. See, e.g., Moorman Mfg. Co. v. Bair, 437 U.S. 267, 278, 98 S.Ct. 2340, 2347, 57 L.Ed.2d 197 (1978) (rejecting argument that Commerce Clause requires exact precision in interstate taxation); Boston Stock Exchange v. State Tax Comm'n, 429 U.S. 318, 332, 97 S.Ct. 599, 608, 50 L.Ed.2d 514 (1977) (requiring "substantially even treatment" of in-state and out-of-state interests); Lone Star Steel Co. v. Dolan, 668 P.2d 916, 926 (Colo.1983) (holding that some double taxation of interstate commerce does not violate Commerce Clause even though intrastate commerce not subjected to such a burden). Moreover, the states retain flexibility to fashion taxes in any manner not inconsistent with constitutional principles, and the United States Supreme Court has expressly "declined to undertake the essentially legislative task of establishing a "single constitutionally mandated method of taxation." " Goldberg, 488 U.S. at 261, 109 S.Ct. at 588; see also Norfolk & Western R.R. Co. v. Missouri State Tax Comm'n, 390 U.S. 317, 324"29, 88 S.Ct. 995, 1000"03, 19 L.Ed.2d 1201 (1968) (describing the wide latitude given to states under Commerce Clause to devise formulas for taxing in-state property). | States retain flexibility to fashion taxes in any manner not inconsistent with constitutional principles. | Do states retain flexibility to fashion taxes in any manner not inconsistent with constitutional principles? | Taxation - Memo # 528 - C - DHA.docx | ROSS-003289715-ROSS-003289717 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12551 | Nebraska Pub. Power Dist. v. Hershey Sch. Dist., 207 Neb. 412 | 371+2100 | This court has consistently held that the Legislature is vested with the taxing power without limit, subject only to restrictions contained in the Constitution. It is, therefore, axiomatic that the provisions of the Constitution in relation to taxation are not grants of power but are limitations on the taxing power of the state. See, State ex rel. School Dist. of Scottsbluff v. Ellis, 168 Neb. 166, 95 N.W.2d 538 (1959); Sandberg v. State, 188 Neb. 335, 196 N.W.2d 501 (1972). The Legislature cannot circumvent an express provision of the Constitution by doing indirectly what it may not do directly. United Community Services v. The Omaha Nat. Bank, 162 Neb. 786, 77 N.W.2d 576 (1956); State ex rel. Rogers v. Swanson, 192 Neb. 125, 219 N.W.2d 726 (1974). | Provisions of the constitution in relation to taxation are not grants of power but are limitations on taxing power of the state. | "Are the provisions of the Constitution in relation to taxation, grants of power or limitations on taxing power of state lodged in the legislature?" | 045396.docx | LEGALEASE-00141557-LEGALEASE-00141558 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12552 | Lee v. Atl. Coast Line R. Co., 145 Fla. 618 | 371+2005 | The sections of the statute last referred to related to taxes which shall be assessed and collected as required by law, and do not purport to (if they could) limit the taxing power as to subjects of taxation or to confine the power of taxation to personal property actually situated in the districts respectively. Statutes may make personal property in this State of railroad companies whose lines extend into or through several counties and districts, taxable proportionately along which the mileage tax. Some of the personal property, such as rolling stock and incidentals, traverses roads in various districts during the year and other personal property to used in the process of construction, maintenance or operation of the entire or a portion of the entire mileage, though such personal property is not situated in the districts severally. The revenue statute defines the subjects of taxation and makes the personal property of the railroad companied in this State to proportionately be constructively in the several districts for taxation purposes when a portion of the mileage is in such districts. Section 1, Article IX of the constitution does not limit the taxing power of the legislature to State, county and municipal taxation. Taxing districts are now a part of the fiscal taxing system of the State. See secs. 10, 11, 17, Article XII, and amended sec. 6 and sec. 10, Article IX, Florida constitution. Statutory taxing power is as potent as to taxing districts as it is to the State, counties and municipalities, unless restrained by a paramount law. | Statutory taxing power is as potent to taxing districts as it is to the state, counties, municipalities, unless restrained by a paramount law. Const. art. 9, SS 1, 10, and S 6, as amended; art. 12, SS 10, 11, 17. | Is the statutory taxing power as potent to taxing districts as it is to the state? | Taxation - Memo # 630 - C - SB.docx | ROSS-003330250-ROSS-003330251 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 12553 | Alaska S.S. Co. v. State, 31 Wash. 2d 328 | 371+2005 | The taxing power of a state is one of its attributes of sovereignty, and may be exercised at the discretion of the state, subject to constitutional limitations.Nathan v. State of Louisiana, 8 Howard 73, 12 L.Ed. 992. | The taxing power of a state is one of its attributes of sovereignty and may be exercised at discretion of state subject to constitutional limitations. U.S.C.A.Const. art. 1, S 10, cl. 2. | Is the taxing power of a state subject to constitutional limitations? | Taxation - Memo # 637 - C - SN.docx | LEGALEASE-00031794-LEGALEASE-00031795 | SA, Sub | 0.14 | 0 | 0 | 1 | 1 | |
| 12554 | Honer v. Treasurer of State, 192 S.W.3d 526 | 413+46 | Worker's compensation law is entirely statutory, and when interpreting the law, we ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and, if possible, give effect to that intent. George v. City of St. Louis, 162 S.W.3d 26, 30 (Mo.App. E.D.2005). We liberally construe all provisions of the worker's compensation law to favor the employee. Id. The law favors a statutory interpretation that tends to avert an unreasonable result. Edwards v. Hyundai Motor Am., 163 S.W.3d 494, 497 (Mo.App. E.D.2005). | When interpreting the workers' compensation law, courts ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and, if possible, give effect to that intent. V.A.M.S. S 287.010 et seq. | Is workers compensation law entirely statutory? | 048108.docx | LEGALEASE-00141172-LEGALEASE-00141173 | Order, SA, Sub | 0.59 | 1 | 0 | 1 | 1 | 1 |
| 12555 | Ortho Pharm. Corp. v. Amgen, 882 F.2d 806 | 25T+156 | As our previous discussion indicates, we disagree that the "preservation of the status quo" operates as a separate test for determining whether the district court acted within its jurisdictional authority. Rather, the "preservation of the status quo" represents the goal of preliminary injunctive relief in any litigation, including in an arbitrable dispute. It is the balancing of the various factors of the traditional four-pronged test that bear upon the court's exercise of discretion: [T]he most compelling reason in favor of ... [issuing a preliminary injunction] is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act. On the other hand, judicial intervention before the merits have been finally determined frequently imposes a burden on defendant that ultimately turns out to be unjustified. Consequently, the preliminary injunction is appropriate whenever the policy of preserving the court's power to decide the case effectively outweighs the risk of imposing an interim restraint before it has done so. | Preservation of status quo does not operate as separate test for determining whether district court acted within its jurisdictional authority in issuing injunction; rather, preservation of status quo represents goal of preliminary injunctive relief in any litigation, including arbitrable dispute. | What does preservation of the status quo represent in arbitration? | Alternative Dispute Resolution - Memo 670 - RK.docx | ROSS-003300497-ROSS-003300498 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12556 | Thweatt v. Jackson, 838 S.W.2d 725 | 83E+481 | Firstly, the majority opinion utilizes a common-law principle. "It is axiomatic that an assignee of a promissory note stands in the shoes of the assignor and obtains the rights, title, and interest that the assignor had at the time of the assignment," including any remedies for enforcement of the obligation. The principle, however, is not complete as stated. The correct idea is that an assignment ordinarily carries with it all rights, remedies, and benefits which are incidental to the thing assigned except when a contrary intention appears or when the right, remedy, or benefit is personal to the assignor and for his benefit alone. 6A C.J.S. Assignments " 76, at 719 (1975). And since the "right" in question is created by statute, the issue necessarily reduces to a question of statutory construction. Did Congress intend the statutory right in " 1821(d)(14) to be personal to the FDIC?2 | Assignee of promissory notes stands in shoes of assignor and obtains rights, title, and interest that assignor had at time of assignment. | Does the assignee of a promissory note stand in the shoes of the assignor? | 009516.docx | LEGALEASE-00142638-LEGALEASE-00142639 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12557 | United States v. Parlavecchio, 903 F. Supp. 788 | 36+2 | To serve as a predicate act under the Travel Act, conduct must be not merely criminal under the laws of the state in which committed or of the United States; it must also constitute "extortion, bribery or arson." 18 U.S.C. " 1952(b). Congress did not define the terms "extortion," "bribery" or "arson" as used in the Travel Act, but case law has established that these terms are to be read "generically," and that the "generic" definitions of these crimes may be broader than their strict common law definitions. Perrin v. United States, 444 U.S. 37, 49, 100 S.Ct. 311, 317, 62 L.Ed.2d 199 (1979) (bribery involving private employees is predicate act under Travel Act even though bribery at common law was limited to public officials); United States v. Dansker, 537 F.2d 40, 47 (3d Cir.1976) (public official's acceptance of payment in exchange for influencing zoning decision constitutes generic bribery even if defendant's conduct fell outside realm of his official duties and therefore would not have constituted bribery at common law); United States v. Michael, 456 F.Supp. 335 (D.N.J.1978), affirmed, 605 F.2d 1198 (3d Cir.1979) (commercial bribery constitutes "bribery" under Travel Act). | Terms "extortion," "bribery," and "arson" contained in Travel Act are to be read more broadly than their strict common law definitions. 18 U.S.C.A. S 1952(b). | "Should the term bribery be read generically, and is the generic definition of the crime broader than its strict common law definition?" | Bribery - Memo #386 - C - LB.docx | ROSS-003288624-ROSS-003288625 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 12558 | United States v. Rasco, 853 F.2d 501 | 63+1(1) | What Rasco's argument fails to recognize, however, is that he was charged and convicted for offering or promising a thing of value to a bank official, and not actually giving such a bribe. The crime of offering a bribe is completed when a defendant expresses an ability and a desire to pay the bribe. United States v. Jacobs, 431 F.2d 754, 760 (2d Cir.1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971). As the Jacobs court pointed out, the crime of offering a bribe occurs: "even though the official offered a bribe is not corrupted, or the object of the bribe could not be attained, or it could make no difference if after the act were done it turned out that there had been actually no occasion to seek to influence any official conduct. It is also perfectly plain that the crime is consummated irrespective of whether an offer of an amount of money is accepted by the official." Id. at 759-60 (citation omitted). | In obtaining conviction of defendant for bribery of bank official, Government need not establish that bribe was actually paid; crime of offering bribe is completed when defendant expressed ability and desire to pay bribe. 18 U.S.C.A. S 201. | Is the crime of offering a bribe complete when a defendant expresses an ability and a desire to pay the bribe? | Bribery - Memo #389 - C - LB.docx | ROSS-003287238-ROSS-003287239 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 12559 | Powers v. Sims & Levin, 542 F.2d 1216 | 172H+1561 | This is not to excuse the lender from the penalties for violation of the Act. We have affirmed the imposition of the statutory penalties and the assessment of attorneys' fees in favor of the plaintiffs. What we do hold is that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due. | Under Truth in Lending Act, when rescission is attempted under circumstances which would deprive lender of its legal due, attempted rescission will not be judicially enforced unless it is so conditioned that lender will be assured of receiving its legal due. Truth in Lending Act, S 125(b), 15 U.S.C.A. S 1635(b). | Can attempted rescission be judicially enforced? | 013822.docx | LEGALEASE-00142828-LEGALEASE-00142829 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 12560 | Cyprus Indus. Minerals Co. v. Fed. Mine Safety & Health Review Comm'n, 664 F.2d 1116 | 260+92.5(2) | In addition, mine owners are strictly liable for the actions of independent contractor violations under the Coal Act and the present Act. Republic Steel v. Interior Bd. of Mine Operations, 581 F.2d 868, 870 (D.C.Cir.1978); Bituminous Coal Oper. Ass'n v. Sec'y of Interior, 547 F.2d 240, 246 (4th Cir. 1977); Secretary of Labor v. Republic Steel Corp., 1 Fed. Mine Safety & Health Rev. Comm'n Dec. 5, 9, 1979 Occupational Safety & Health Dec. (CCH) P 23,455 at 28,391. | Mine owners are strictly liable for independent contractor violations of the Coal Act and present Federal Mine Safety and Health Act. Federal Coal Mine Health and Safety Act of 1969, S 3(d) as amended 30 U.S.C.A. S 802(d). | Are mine owners strictly liable for the actions of independent contract violations under the coal act? | Mines and Minerals - Memo # 56 - C - CSS.docx | ROSS-003289078 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 12561 | Burglin v. Morton, 527 F.2d 486 | 260+5.1(2) | The permissive word "may" in Section 226(a) allows the Secretary to lease such lands, but does not require him to do so.Although Section 226(c) requires the Secretary to issue the lease to the first qualified applicant if the land is leased, the Secretary has discretion to refuse to issue any lease at all on a given tract. Udall v. Tallman, 380 U.S. 1, 4, 85 S.Ct. 792, 13 L.Ed. 616 (1965).As this Court found in Pease v. Udall, 332 F.2d 62 (9th Cir. 1964): ". . . (T)he Mineral Leasing Act has consistently been construed as leaving to the Secretary, within his discretion, a determination as to what lands are to be leased thereunder." Id. at 63. | Permissive word "may" in section of Mineral Lands Leasing Act providing that the lands known or believed to contain oil or gas deposits may be leased by the Secretary of the Interior allows Secretary to lease such lands but does not require him to do so, and Secretary has discretion to refuse to issue any lease at all on any given tract. Mineral Lands Leasing Act, S 17(a, c) as amended 30 U.S.C.A. S 226(a, c). | Does the Secretary have the discretion to refuse to issue any lease at all on a given tract? | 021255.docx | LEGALEASE-00143257-LEGALEASE-00143258 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 12562 | Ridge Oil Co. v. Guinn Investments, 148 S.W.3d 143 | 260+74(6) | This Court has held that temporary cessation of production in paying quantities does not terminate a lease that provides it will remain in force and effect as long as oil or gas is produced. In Midwest Oil Corp. v. Winsauer, we concluded that this doctrine likewise applies to royalty deeds, and we thus said that "a temporary cessation of production in paying or commercial quantities will not cause the royalty deed to terminate" when the term of that grant was as long as oil, gas, or other minerals were produced. We reached the same conclusion in Stuart v. Pundt, a decision from a court of appeals in which this Court refused the application for writ of error. We reiterated in Amoco Production Co. v. Braslau that only permanent cessation of production may cause the estate to terminate. More recently, we said in Anadarko Petroleum Corp. v. Thompson that "a typical Texas lease that lasts "as long as oil or gas is produced" automatically terminates if actual production permanently ceases during the secondary term,"citing our decision in Amoco v. Braslau. | Partial assignee of oil and gas lessee's interest in producing tract owed no duty to the owners or partial assignee of interest in adjacent non-producing tract to continue the original lease in effect, but the owners and partial assignee of the producing tract were free to mutually agree to terminate the original lease as to their respective interests, even though a collateral effect of that agreement was that the only producing wells permanently ceased to be produced by a lessee under the original lease and that the lease terminated by its own terms leading to a washout of assignee's interest because there was no other production on the lands described in it. | Does a lease which says as long as oil or gas is produced automatically terminate if actual production permanently ceases during the secondary term? | Mines and Minerals - Memo #211 - C - EB.docx | ROSS-003289127-ROSS-003289128 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12563 | Wallace v. Steagall, 52 Ill.App. 471 | 289+719(5) | Although sold to one partner with agreement that the property should be applied to the payment of partnership debts, yet this would not prevent a sale to and vesting of good title free from partnership lien in one who purchased without notice. Hapgood case, supra; Porter v. Merritt, 105 Ill. 299. The right of a firm to sell its property being as untrammeled as that of an individual to sell his separate estate, it follows that as an individual may, though insolvent, sell his property to whomsoever he pleases, and thereby prefer creditors (Wood et al. v. Shaw et al., 29 Ill. 444, Bawden v. Bawden, 75 Ill. 143), so may a firm, though insolvent, sell its property to whomsoever it desires, though thereby the individual creditor of one partner is preferred to the exclusion of partnership creditors. Hanford v. Prouty, 133 Ill. 352; Goembel v. Arnett, 104 Ill. 34. Thus far we have discussed the legal question presented from the standpoint of Illinois authorities without reference to the facts as disclosed by the record. | A partnership, though insolvent, may sell its property to whomsoever it desires, though thereby the individual creditor of one partner is preferred to the exclusion of the partnership creditors. | Does a firm have the same rights to sell its property as that of an individual to sell his separate estate? | 022430.docx | LEGALEASE-00143428-LEGALEASE-00143429 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 12564 | Sider v. Outboard Marine Corp., 160 Ill. App. 3d 290 | 302+41 | In order to properly plead a cause of action for breach of contract, the pleader must allege the existence of a contract, plaintiff's performance of all contractual conditions required of him, facts of defendant's breach, and the existence of damages as a consequence thereof. (Bartlett Bank & Trust Co. v. McJunkins (1986), 147 Ill.App.3d 52, 61-62, 100 Ill.Dec. 420, 497 N.E.2d 398.) While the drafters of a complaint must strike a balance between pleading too little or too much factual detail, the drafter must plead ultimate facts. (Powers v. Delnor Hospital (1985), 135 Ill.App.3d 317, 319, 90 Ill.Dec. 168, 481 N.E.2d 968.) It is not always easy to differentiate between conclusions, ultimate facts, and evidence for pleading purposes, in part, because the law has taken the pragmatic view that the classification of an allegation is to some extent dependent upon the context of the particular case in which it is made. 135 Ill.App.3d 317, 319, 90 Ill.Dec. 168, 481 N.E.2d 968. | While drafters of complaint must strike balance between pleading too little or too much factual detail, drafter must plead ultimate facts. | Must the drafter of a complaint plead ultimate facts? | 023488.docx | LEGALEASE-00142849-LEGALEASE-00142850 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12565 | RoTec Servs. v. Encompass Servs., 359 S.C. 467 | 302+11 | Rule 8(b), SCRCP, requires that a defendant provide a statement "in short and plain terms [of] the facts constituting his defenses to each cause of action asserted." The Rule further mandates that a pleading contain "ultimate facts" rather than "evidentiary facts" to state a cause of action. Watts v. Metro Sec. Agency, 346 S.C. 235, 240, 550 S.E.2d 869, 871 (Ct.App.2001). "Ultimate facts fall somewhere between the verbosity of evidentiary facts and the sparsity of "legal conclusions." " Id. The trial court's decision to strike a defense as insufficiently pled will not be disturbed absent an abuse of discretion. Slack v. James, 356 S.C. 479, 482, 589 S.E.2d 772, 774 (Ct.App.2003). | Ultimate facts in a pleading fall somewhere between the verbosity of evidentiary facts and the sparsity of legal conclusions. Rules Civ.Proc., Rule 8(b). | Do ultimate facts fall somewhere between the verbosity of evidentiary facts and the sparsity of legal conclusions? | Pleading - Memo 407 - RMM.docx | ROSS-003289255-ROSS-003289256 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 12566 | Michael v. Matheis, 77 Mo. App. 556 | 307A+74 | The second is likewise without merit. The final certificate to the deposition is sufficient under the decisions. (Jolliffe v. Collins, 21 Mo. 338; Moss v. Booth, 34 Mo. 316; Thomas v. Wheeler, 47 Mo. 363.) The certificate was sufficiently authenticated by the private seal or scrawl of Chestnut. We know of no statute requiring additional proof. Chestnut was not a public official, and therefore he had no official seal. The other objections to the deposition are not of sufficient importance to command any notice. | Where a certificate to a deposition taken before a commissioner, under Rev.St.1889, S 4448, V.A.M.S. S 492.220, is authenticated by the private seal or scrawl of the commissioner, it is sufficient; he not being a public official and having no official seal. | "Where a certificate to a deposition taken before a commissioner is authenticated by the private seal or scrawl of the commissioner, is it sufficient?" | Pretrial Procedure - Memo # 5513 - C - NS.docx | LEGALEASE-00032480-LEGALEASE-00032481 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 12567 | Am. Coll. Connection v. Berkowitz, 332 Ga. App. 867 | 307A+554 | At the outset, we note that a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction. Furthermore, when the motion is decided without an evidentiary hearing and based solely upon the written submissions of the parties, as it was here, "any disputes of fact must be resolved in the light most favorable to the party asserting the existence of personal jurisdiction, and we review the decision of the trial court de novo.". | A defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction. | Does a defendant who files a motion to dismiss for lack of personal jurisdiction have the burden of proving lack of jurisdiction? | Pretrial Procedure - Memo # 5705 - C - KBM.docx | ROSS-003291342-ROSS-003291343 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 12568 | Voltz v. Dyess, 148 So. 3d 425 | 307A+560 | The notice provision in Rule 4(b) is unambiguous; we thus must give the wording of the rule its plain meaning and give effect to the clear purpose of the rule. Hogan, 376 So.2d at 674. We agree with the Court of Civil Appeals that "[t]he obvious purpose of the notice requirement [of Rule 4(b) ] is to give the plaintiff an opportunity to show "good cause" to extend the time for service." Moffett v. Stevenson, 909 So.2d 824, 826"27 (Ala.Civ.App.2005). See also Moore v. Alabama Dep't of Corr., 60 So.3d 932, 934 (Ala.Civ.App.2010) (noting that 14 days' notice gives "opportunity to present good cause for the failure to perfect service" and "opportunity to request additional time in which to perfect service"). | The purpose of the 14-day-notice requirement in rule governing dismissal of a case for lack of service of process is to give the plaintiff an opportunity to show good cause to extend the time for service. Rules Civ.Proc., Rule 4(b). | Does 14 days' notice gives the plaintiff opportunity to present good cause for the failure to perfect service? | Pretrial Procedure - Memo # 6223 - C - SHS.docx | ROSS-003289813 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 12569 | Gutierrez v. Baldridge, 2010-1528 (La. App. 3 Cir. 5/11/11) | 307A+45 | In determining the appropriate sanctions for failure to comply with a pretrial order, the trial court should consider whether the conduct was that of the party or his attorney or both; whether the action results in prejudice to the opposing party's trial preparations; and "the nature and persistency of the misconduct that constitutes the violation." Bourque v. Allstate Ins. Co., 99"1260, p. 5 (La.App. 3 Cir. 3/22/00), 760 So.2d 411, 414. In the present matter, Gutierrez's counsel has thrown himself on his sword and accepted sole responsibility for the failure to file the witness and exhibit list. However, these affiants had not previously been identified as potential witnesses in Gutierrez's discovery responses. Gutierrez testified in his deposition that he was not aware of anyone having knowledge of the alleged partnership between him and A & A. Thus, the trial court concluded that the misconduct was not solely counsel's and that conclusion is supported by the record. Further, the trial court concluded that allowing Hardin and Gautier to testify would substantially prejudice Baldridge's trial preparation. That finding is not manifestly erroneous. | Trial court's exclusion of partner's summary judgment witness affidavits as a sanction for failure to comply with pretrial order did not constitute an abuse of discretion, even though partner's counsel took full responsibility for failing to timely file a witness and exhibit list, where witness had not been previously identified in partner's discovery responses, and where the trial court determined the misconduct was not solely counsel's, but was in part due to partner's failure to identify potential witnesses at his deposition. LSA-C.C.P. art. 967. | "In determining the appropriate sanctions for failure to comply with a pretrial order, should the trial court consider whether the action results in prejudice to the opposing party's trial preparations?" | Pretrial Procedure - Memo # 6292 - C - SB.docx | ROSS-003289638-ROSS-003289639 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12570 | Arpino v. F.J.F. & Sons Elec. Co., 102 A.D.3d 201 | 307A+531 | Public policy strongly favors the resolution of actions on the merits whenever possible (see Friedman, Harfenist, Langer & Kraut v. Rosenthal, 79 A.D.3d at 800, 914 N.Y.S.2d 196; Byam v. City of New York, 68 A.D.3d at 801, 890 N.Y.S.2d 612; Espinal v. City of New York, 264 A.D.2d 806, 806, 695 N.Y.S.2d 610). The striking of a party's pleading is a drastic remedy only warranted where there has been a clear showing that the failure to comply with discovery demands was willful and contumacious (see Commisso v. Orshan, 85 A.D.3d 845, 845, 925 N.Y.S.2d 612; Friedman, Harfenist, Langer & Kraut v. Rosenthal, 79 A.D.3d at 800, 914 N.Y.S.2d 196; Byam v. City of New York, 68 A.D.3d at 801, 890 N.Y.S.2d 612). | Public policy strongly favors the resolution of actions on the merits whenever possible. | Does public policy strongly favor the resolution of actions on the merits whenever possible? | 033861.docx | LEGALEASE-00143524-LEGALEASE-00143525 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12571 | Maki v. Hansen, 694 N.W.2d 78 | 307A+560 | Parties are expected to follow the requirements for service of process and failure to do so can result in dismissal of a claim. See Nieszner v. St. Paul Sch. Dist. No. 625, 643 N.W.2d 645, 648, 650 (Minn.App.2002). However, the rules of service are not always strictly construed. The Minnesota Supreme Court has stated that where personal service is required but service is made by mail and the party to be served actually receives the documents, service is effective. State v. Pierce, 257 Minn. 114, 115-16, 100 N.W.2d 137, 138-39 (1959). Similarly, strict enforcement of service requirements was implicitly rejected in State by Johnson v. Scientific Computers, Inc., 388 N.W.2d 748 (Minn.1986). In Scientific Computers, this court had ruled that serving a party's counsel instead of the party, as required by the rules of service for writs of certiorari, did not constitute service on the party and discharged the writ. State v. Scientific Computers, Inc., 384 N.W.2d 560, 561 (Minn.App.1986). The Minnesota Supreme Court reversed, reinstated the writ, and remanded the case for consideration of the merits, implicitly rejecting the reasoning that service on counsel was to be strictly construed. State by Johnson, 388 N.W.2d at 748. | Parties are expected to follow the requirements for service of process, and failure to do so can result in dismissal of a claim. | Will failure to follow the requirements for service of process result in dismissal of a claim? | 033976.docx | LEGALEASE-00142967-LEGALEASE-00142968 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 12572 | Rump v. Woods, 50 Ind. App. 347 | 307A+74 | In case a deposition or examination is taken in shorthand and afterwards copied in longhand and presented to a witness or party for his signature, there can be no doubt as to the right of such witness or party to have any such corrections made therein as may be necessary to make it speak the truth. If any answer has been incorrectly taken down, he may have this corrected, or, if by mistake or through a misunderstanding of the question he has made a wrong answer, he has a right to explain this fact. Such corrections or explanations should be made, however, before the notary who is engaged in taking the examination, either upon notice to the opposite party or his attorneys or upon voluntary appearance. Upon such corrections and explanations being made, either party would then have the right to ask further questions, and the rights of both parties would be thus protected; but, if a party whose examination has been taken has a right to make such changes in his answers as he may desire, without giving the opposite party any opportunity to further question him upon the subject, the purpose of the examination may be defeated. We need not decide in this case whether the admission in evidence of the statements attached to the examination constitutes reversible error. | Where plaintiff, whose deposition was taken before trial, desired to make corrections, they should be made before the notary and an opportunity given to the other side to cross-examine with reference thereto. | "Where a plaintiff desires to make corrections, should they be made before the notary and an opportunity given to the other side to cross-examine with reference thereto?" | 033984.docx | LEGALEASE-00142997-LEGALEASE-00142998 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 12573 | Roberts v. Corwin, 118 A.D.3d 571 | 307A+563 | Dismissal of a complaint as a sanction is a penalty aimed to punish misconduct by a party to a litigation (Lipin v. Bender, 84 N.Y.2d 562, 572"573, 620 N.Y.S.2d 744, 644 N.E.2d 1300 [1994] ). As with any sanction, however, dismissal of a complaint must be "commensurate with the particular disobedience it is designed to punish" (Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Global Strat Inc., 22 N.Y.3d 877, 976 N.Y.S.2d 678, 999 N.E.2d 156 [2013][internal quotation marks omitted] ). It follows that dismissal of a complaint, which deprives a litigant of a determination on the merits of a claim, is a severe sanction generally warranted only in the most egregious of circumstances (see e.g. Lipin v. Bender, 84 N.Y.2d 562, 620 N.Y.S.2d 744, 644 N.E.2d 1300 [plaintiff's surreptitious removal of privileged and confidential defense documents from counsel's table during hearing before court referee warranted dismissal of her complaint] ). | Dismissal of complaint as sanction is penalty aimed to punish misconduct by party to litigation, and, as with any sanction, dismissal of complaint must be commensurate with particular disobedience it is designed to punish. | Is dismissal of complaint as sanction a penalty aimed to punish misconduct by a party to litigation? | 034003.docx | LEGALEASE-00143174-LEGALEASE-00143175 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 12574 | Hospice & Palliative Care Charlotte Region v. N. Carolina Dep't of Health & Human Servs., Div. of Facility Servs., Certificate of Need Section, 185 N.C. App. 109 | 307A+552 | The Supreme Court of North Carolina has explained that a case should be considered moot when "a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." Roberts v. Madison Cty. Realtors Ass'n, 344 N.C. 394, 398"99, 474 S.E.2d 783, 787 (1996); Lange v. Lange, 357 N.C. 645, 588 S.E.2d 877 (2003). If a case becomes moot "at any time during the course of the proceedings, the usual response should be to dismiss the action." in rE peoples, 296 N.C. 109, 148, 250 S.E.2d 890, 912 (1978), cert. denied, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979).2 Community argues that the final agency decision entered by DFS "cannot have any practical effect" on the case sub judice because its Mecklenburg County hospice office "has been properly licensed and fully operational since" 25 July 2005. | If a case becomes moot at any time during the course of the proceedings, the usual response should be to dismiss the action. | Will an action be dismissed if a case becomes moot at any time during the course of the proceedings? | Pretrial Procedure - Memo # 6606- C - NC.docx | ROSS-003291411-ROSS-003291412 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12575 | Hoechst Celanese Corp. v. Franchise Tax Bd., 25 Cal. 4th 508 | 371+2008 | Even though Hoechst's reversion of surplus pension plan assets falls within the statutory definition of business income, subjecting the income from the reversion to taxation in California must still pass constitutional muster. Under the federal due process and commerce clauses, "a State may not tax value earned outside its borders." (ASARCO, supra, 458 U.S. at p. 315, 102 S.Ct. 3103.)The taxpayer bears the " "burden of showing by "clear and cogent evidence" that [the state tax] results in extraterritorial values being taxed." " (Exxon Corp. v. Wisconsin Dept. of Revenue (1980) 447 U.S. 207, 221, 100 S.Ct. 2109, 65 L.Ed.2d 66, quoting Butler Brothers v. McColgan (1942) 315 U.S. 501, 507, 62 S.Ct. 701, 86 L.Ed. 991, in turn quoting Norfolk & Western R. Co. v. North Carolina ex rel. Maxwell (1936) 297 U.S. 682, 688, 56 S.Ct. 625, 80 L.Ed. 977.) As explained below, Hoechst does not meet this burden. Therefore, apportionment of the income from the reversion to California is constitutional. | Under the federal due process and commerce clauses, a state may not tax value earned outside its borders. U.S.C.A. Const. Art. 1, S 8, cl. 3; Amend. 14. | Can a state tax value earned outside its borders? | 045297.docx | LEGALEASE-00142760-LEGALEASE-00142761 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 12576 | People v. Chenango Cty., 39 N.Y.S.2d 785 | 371+2001 | 16 It is stated in Matter of Atlas Television Co., 273 N.Y. 51, at page 55, 6 N.E.2d 94, at page 95, that: "A tax has been defined as "a statutory liability imposed upon all the inhabitants of the state defined as taxable, to the end that they may contribute their just share to the expenses of government." Village of Charlotte v. Keon, 207 N.Y. 346, 348, 100 N.E. 1116, 46 L.R.A.,N.S., 135, Ann.Cas.1914C, 338.' | A "tax" is a statutory liability imposed upon all inhabitants of the state defined as taxable, so that they may contribute their just share to expenses of government. Const. art. 16. | "Is ""tax"" a contribution toward expense of government?" | Taxation - Memo # 702 - C - NS.docx | ROSS-003317243-ROSS-003317244 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 12577 | Land Title Bank & Tr. Co. v. Ward, 20 F. Supp. 810 | 371+2064 | We do not so interpret the statute, however. As we understand the clause "according to its value," it is not intended to limit the manner of collection of state taxation at all. That is only limited by the manner in which "other real property is taxed," by the state. The purpose of the clause "according to its value" was to limit the tax which a state might levy to an ad valorum tax levied upon the same basis on all real estate similarly situated in the taxing district. In other words, Congress has declared that, while the states remain free to levy and collect taxes upon the real estate of national banks in the same manner as upon other real estate, such taxes shall be levied according to a definite percentage of the value of the real estate taxed, and that both the rate and basis of valuation applied to the real estate of a national bank shall be the same as those applied to other real estate within the taxing district similarly situated. The clause upon which defendant relies relates solely to the admeasurement of the tax and is not concerned with the manner of its collection. | "According to its value" as used in statute retaining in the states and their subdivisions the power to tax real property of a national bank to the same extent, according to its value as other real property is taxed, does not limit the manner of collection of state taxes but merely limits the tax which a state might levy to an ad valorem tax levied upon the same basis as all real estate similarly situated in the taxing district. 12 U.S.C.A. S 548(3). | "How is an ""ad valorem property taxes"" levied?" | 045669.docx | LEGALEASE-00143047-LEGALEASE-00143048 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 12578 | City of Boca Raton v. State, 595 So. 2d 25 | 268+405 | However, a legally imposed special assessment is not a tax. Taxes and special assessments are distinguishable in that, while both are mandatory, there is no requirement that taxes provide any specific benefit to the property; instead, they may be levied throughout the particular taxing unit for the general benefit of residents and property. On the other hand, special assessments must confer a specific benefit upon the land burdened by the assessment. City of Naples v. Moon, 269 So.2d 355 (Fla.1972). As explained in Klemm v. Davenport, 100 Fla. 627, 631-34, 129 So. 904, 907-08 (1930): | Legally imposed special assessment is not a tax; taxes and special assessments are distinguishable in that, while both are mandatory, there is no requirement that taxes provide any specific benefit to the property and they may be levied throughout the particular tax unit for general benefit of residents and property; special assessment must confer specific benefit upon land burdened by the assessment. | Must special assessments confer a specific benefit upon the land burdened by the assessment? | Taxation - Memo # 750 - C - SHB.docx | ROSS-003290270-ROSS-003290271 | Condensed, SA | 0.32 | 0 | 1 | 0 | 1 | |
| 12579 | State ex rel. Larkin v. Oxenhandler, 159 S.W.3d 417 | 413+2 | Missouri's Workers' Compensation Law pre-empts judicial resolution of tort claims arising "out of and in the course of" employment; an employer is released from liability but required to furnish compensation irrespective of negligence. RSMo 287.120(1). "The Workers' Compensation Law supplants the common law in determining remedies for on-the-job injuries." | The Workers' Compensation Law supplants the common law in determining remedies for on-the-job injuries. V.A.M.S. S287.120, subd. 1. | Does the workers compensation law supplant the common law in determining remedies for on-the-job injuries? | 048140.docx | LEGALEASE-00142096-LEGALEASE-00142097 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 12580 | Com-Tech Assocs. v. Computer Assocs. Int'l, 938 F.2d 1574 | 25T+182(1) | We recognize that there are strong federal policies in favor of arbitration and that a waiver of arbitration " "is not to be lightly inferred," " Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir.1985) (quoting Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir.1968)). Mere delay in seeking arbitration, absent prejudice to the opposing party, does not constitute waiver. Rush, 779 F.2d at 887; Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc., 754 F.2d 457, 463 (2d Cir.), cert. denied, 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985); Carcich, 389 F.2d at 696. However, "the litigation of substantial issues going to the merits may constitute a waiver of arbitration." Sweater Bee, 754 F.2d at 461; see also Demsey & Associates, Inc. v. S.S. Sea Star, 461 F.2d 1009 (2d Cir.1972) (trial on the merits prior to the motion to compel arbitration resulted in waiver). | Mere delay in seeking arbitration, absent prejudice to opposing party, does not constitute waiver. 9 U.S.C.A. SS 1-15. | Does a delay in seeking arbitration without prejudice to the opposing party constitute a waiver? | Alternative Dispute Resolution - Memo 694 - RK.docx | ROSS-003288454-ROSS-003288456 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12581 | United States v. Whitfield, 590 F.3d 325 | 63+1(2) | Appellants contend that they should not be considered agents of the AOC under section 666, because the agency funds under their control were entirely unrelated to and separate from the federal funds received by the AOC. This court has held that "[a]lthough the conduct prohibited by section 666 need not actually affect the federal funds received by the agency, there must be some nexus between the criminal conduct and the agency receiving federal assistance." United States v. Moeller, 987 F.2d 1134, 1137 (5th Cir.1993). In Phillips, we observed that "the funds in question need not be purely federal, nor must the conduct in question have a direct effect on federal funds. The statute possibly can reach misuse of virtually all funds of an agency that administers the federal program in question." 219 F.3d at 411 (citing Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 473"74, 139 L.Ed.2d 352 (1997)). | Under the statute governing federal program bribery, the funds in question need not be purely federal, nor must the conduct in question have a direct effect on federal funds; rather, the statute possibly can reach misuse of virtually all funds of an agency that administers the federal program in question. 18 U.S.C.A. S 666. | Should the funds in question under the bribery statute be purely federal and the conduct in question have a direct effect on federal funds? | 011668.docx | LEGALEASE-00144331-LEGALEASE-00144332 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12582 | Etna Forge & Bolt Co v. Youngstown Sheet & Tube Co, 282 F. 786 | 113+4 | A custom is a usage which has obtained the force of law; but, to give it this force, it must be notorious, and have existed long enough to justify the inference that the parties had it in view in making their contract. Adams v. Otterback, 15 How. (56 U.S.) 539, 545, 14 L.Ed. 805.It must be certain and uniform, and not loose and variable. Young v. One Hundred and Forty Thousand Hard Brick (D.C.) 78 Fed. 149; Corcoran v. Chess, 131 Pa. 356, 18 Atl. 876. The existence of such a custom was denied at the argument, and it was apparently abandoned, for it was not discussed in the brief, and its existence rests upon the bare allegation in the affidavit of defense. | To give a custom the force of law, it must be notorious and have existed long enough to justify the inference that the parties had it in view in making their contract. | May a custom be loose and variable to have the force of law? | 014229.docx | LEGALEASE-00144930-LEGALEASE-00144931 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 12583 | Anderson Living Tr. v. WPX Energy Prod., 306 F.R.D. 312 | 260+79.3 | In New Mexico, "the term "post-production costs' refers to costs associated with making the natural gas marketable after the gas is severed or removed from the ground." Schroeder v. Terra Energy, Ltd., 223 Mich.App. 176, 565 N.W.2d 887, 890 (1997); 8 Williams & Meyers at 787. See ConocoPhillips Co. v. Lyons, 2013"NMSC"009, " 11, """ N.M. """", 299 P.3d 844, 850 (2012) (endorsing this definition). | Under New Mexico law governing natural gas industry, the term "post-production costs" refers to costs associated with making the natural gas marketable after the gas is severed or removed from the ground. | What does the term post-production costs refer to? | 021359.docx | LEGALEASE-00144013-LEGALEASE-00144014 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |
| 12584 | Zeitz v. Vill. of Glenview, 227 Ill. App. 3d 891 | 302+11 | In Illinois a pleader is not required to set forth his evidence. To the contrary, a pleading is only required to allege ultimate facts and not the evidentiary facts tending to prove such ultimate facts. (Board of Education v. Kankakee Federation of Teachers (1970), 46 Ill.2d 439, 264 N.E.2d 18.) In People ex rel. Fahner v. Carriage Way West (1982), 88 Ill.2d 300, 307-08, 58 Ill.Dec. 754, 757, 430 N.E.2d 1005, 1008 the Illinois Supreme Court stated:"The purpose of pleadings is to present, define, and narrow issues and to limit the proof needed at trial. Pleadings are not intended to erect barriers to a trial on the merits but instead to remove them and facilitate trial. The object of pleadings is to produce an issue asserted by one side and denied by the other so that a trial may determine the actual truth."34 When considering a motion to dismiss all w | Pleader is not required to set forth his evidence; pleading is only required to allege ultimate facts, not evidentiary facts tending to prove such ultimate facts. | Is a pleader required to set forth evidentiary facts? | 023518.docx | LEGALEASE-00144085-LEGALEASE-00144086 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12585 | E. Tennessee, V. & G. R. Co. v. Arnold, 89 Tenn. 107 | 307A+74 | The deposition of C. J. Pierson was objected to, because of a defective certificate. The objection was well taken and the court erred in overruling it. The objectionable part is: "The foregoing deposition was taken before me, as stated, and reduced to writing by A. S. Dickey, by my direction." Our statute (Mill. & V. Code, " 4602) requires the certificate "shall be substantially," etc., "and reduced to writing by me, or by the witness." The policy of the law is that one in no wise interested shall do the writing; that one is presumed to undertake to write the language of the witness without any desire or purpose to give coloring, the one way or the other, to the meaning of the witness, and must certify that he "is not interested in the cause, nor of kin or counsel to either of the parties." The reduction to writing by Dickey is not a compliance with the statute. | Certificate to deposition is fatally defective which shows that the deposition was reduced to writing, not by the witness or the officer taking it, but by some third person under the officer's direction. | Is a certificate to deposition fatally defective which shows that the deposition was reduced to writing by some third person under the officer's direction? | 032671.docx | LEGALEASE-00144354-LEGALEASE-00144355 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 12586 | Teva Pharm. Indus. v. Ruiz, 181 So. 3d 513 | 106+39 | Because Mr. Altman's affidavit fully disputes the jurisdictional allegations in the complaint, the burden shifts back to the Appellees to prove by affidavit or other sworn proof that a basis for long-arm jurisdiction exists. "If the plaintiff fails to come forward with sworn proof to refute the allegations in the defendant's affidavit and to prove jurisdiction, the defendant's motion to dismiss must be granted." Id. at 602 (citing Venetian Salami Co., 554 So.2d at 502; Kin Yong Lung Indus. Co., 816 So.2d at 666 ; Capital One Fin. Corp. v. Miller, 709 So.2d 639, 640 (Fla. 2d DCA 1998); Lampe v. Hoyne, 652 So.2d 424, 425 (Fla. 2d DCA 1995)). However, if the plaintiff does come forward with such proof and there is a conflict in the parties' evidence, "the trial court should hold a limited evidentiary hearing to resolve the disputed issues of fact and to determine the jurisdiction issue." McKinney, 940 So.2d at 1140"41 (citing Venetian Salami Co., 554 So.2d at 503). | Evidentiary hearing, which is held when a plaintiff comes forward with proof to refute allegations in a defendant's affidavit, which fully disputes jurisdictional allegations in the plaintiff's complaint, resolves the factual disputes necessary to determine jurisdiction pursuant to long-arm statute as well as whether minimum contacts exist to satisfy due process concerns. U.S.C.A. Const.Amend. 14; West's F.S.A. S 48.193. | "If a plaintiff fails to come forward with sworn proof to refute the allegations in a defendant's affidavit and to prove jurisdiction, must the defendant's motion to dismiss be granted?" | Pretrial Procedure - Memo # 5543 - C - SPB.docx | ROSS-003289354-ROSS-003289355 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 12587 | In re Gen. Motors Corp., 296 S.W.3d 813 | 106+39 | Landmark's argument, that because the district court lacked subject-matter jurisdiction to adjudicate Landmark's Code-based claims, the district court order of dismissal is void, runs counter to the established rule that a court has the power to determine its own jurisdiction and to take the appropriate action of dismissing claims over which it does not have jurisdiction. See Royal Indep. Sch. Dist. v. Ragsdale, 273 S.W.3d 759, 763 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Landmark's view would mean that every order of dismissal entered by a court without subject-matter jurisdiction over the claims in the case is void. Such orders of dismissal are not, of course, void. See State v. Morales, 869 S.W.2d 941, 949 (Tex.1994) ("When a court lacks jurisdiction, its only legitimate choice is to dismiss."). Courts must and do have the power to dismiss lawsuits even when"particularly when"they lack jurisdiction over the subject matter of the suit. The issue in this case is, "Does the district court somehow divest itself of this power by entering an order of abatement rather than an order of dismissal?" If the court has the power to reconsider the abatement and reinstate the case, then the court must also have the power to reconsider the abatement and dismiss the case. This is true even though the court does not have the power to adjudicate the claims in the case. | A court has the power to determine its own jurisdiction and to take the appropriate action of dismissing claims over which it does not have jurisdiction. | Does a court have the power to determine its own jurisdiction and to take the appropriate action of dismissing claims over which it do not have jurisdiction? | Pretrial Procedure - Memo # 5808 - C - PC.docx | ROSS-003289469-ROSS-003289470 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12588 | Brezinski v. Vohra, 258 Ill. App. 3d 702 | 307A+560 | A plaintiff's efforts to obtain service through an alias summons are relevant to the question of reasonable diligence. (Dupon, 163 Ill.App.3d at 455, 114 Ill.Dec. 572, 516 N.E.2d 727; Licka v. Willaim A. Sales Ltd. (1979), 70 Ill.App.3d 929, 937, 27 Ill.Dec. 212, 388 N.E.2d 1261.) The attempts at service made in the present case, though somewhat sporadic, are sufficient indicia of diligence in this case. | Trial court abused its discretion in granting physician's motion to dismiss on ground that medical malpractice plaintiff failed to exercise reasonable diligence to obtain service on physician, even though attempts at service were somewhat sporadic; plaintiff issued summons on date complaint was filed and sheriff promptly made attempt to serve physician at his office, subsequent attempts at service of alias summons at that address were not unreasonable, plaintiff was responding to dismissal motions of other defendants during period in which physician went unserved, and plaintiff's counsel had been left short-handed by departure of associate. Sup.Ct.Rules, Rule 103(b). | Is an indication of diligence a plaintiff's efforts to obtain service through an alias summons? | 033556.docx | LEGALEASE-00143675-LEGALEASE-00143676 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 12589 | Black v. Jackson, 82 S.W.3d 44 | 307A+552 | Section 13.001 authorizes a court to dismiss an action in which an affidavit of inability to pay is filed pursuant to Rule 145 of the Texas Rules of Civil Procedure if (1) the allegation of poverty is false, or (2) the action is frivolous or malicious. Tex. Civ. Prac. &Rem.Code Ann. " 13.001(a). The purpose of section 13.001 is to ensure that limited resources, both private and judicial, are employed as efficiently as possible to resolve arguable claims and that claims without merit are dismissed at an early stage in the proceedings. Timmons v. Luce, 840 S.W.2d 582, 585 (Tex.App. Tyler 1992, no writ); Pedraza v. Tibbs, 826 S.W.2d 695, 698 (Tex.App.-Houston [1st Dist.] 1992, writ dism'dw.o.j.). Thus, the trial court has broad discretion under section 13.001 to determine whether an action should be dismissed as frivolous. Johnson v. Lynaugh, 766 S.W.2d 393, 394 (Tex.App.-Tyler 1989), writ denied per curiam, 796 S.W.2d 705 (Tex.1990). The court may make its determination and dismiss the action suasponte, either before or after service, Tex. Civ. Prac. &Rem.Code Ann. " 13.001(c) (Vernon Supp.2002), but may also consider and grant a motion to dismiss, such as the one filed in this case. See, e.g., Thomas v. Bush, 23 S.W.3d 215 (Tex.App.-Beaumont 2000, pet. denied). | Trial court has broad discretion to determine whether action should be dismissed as frivolous for purposes of statute authorizing court to dismiss action in which affidavit of inability to pay is filed if action is frivolous. V.T.C.A., Civil Practice & Remedies Code S 13.001. | Does court have broad discretion to determine whether action should be dismissed as frivolous? | 034190.docx | LEGALEASE-00144714-LEGALEASE-00144715 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 12590 | Davis v. Byrd Meml. Hosp., 628 So. 2d 1284 | 307A+746 | The law is well settled that, under LSA-C.C.P. art. 193 and art. 1551, the trial judge is vested with much discretion in selecting appropriate sanctions for failure to comply with pretrial and discovery orders, and its choice will not be reversed absent a clear showing that it abused that discretion. Dismissal with prejudice is a severe penalty; thus it should only be imposed in extreme circumstances where the plaintiff is clearly aware that his noncompliance will result in dismissal of his action. However, where a party fails to follow a court's pretrial order, the burden is on that party to show why he failed to so comply.Allwein v. Horn, 558 So.2d 810 (La.App. 5th Cir.1990), and cases cited therein. Also, Magri v. Westinghouse Electric, Inc., 590 So.2d 830 (La.App. 4th Cir.1991). | Where party fails to follow court's pretrial order, burden is on that party to show why he failed to so comply. | "Where party fails to follow a court's pretrial order, is the burden on that party to show why he failed to so comply?" | Pretrial Procedure - Memo # 6609 - C - DHA.docx | ROSS-003315330-ROSS-003315331 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12591 | Harrison v. Bd. of Prof'l Discipline of Idaho State Bd. of Med., 145 Idaho 179 | 307A+560 | When reviewing a trial court's decision that a party failed to we "must liberally construe the record in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." Id. The party who failed to effect timely service has the burden to demonstrate good cause. Id. | The party who failed to effect timely service has the burden to demonstrate good cause for such failure, in order to survive dismissal of the complaint. Rules Civ.Proc., Rule 4(a)(2). | Does the party who failed to effect timely service have the burden to demonstrate good cause? | Pretrial Procedure - Memo # 6700 - C - SK.docx | ROSS-003316308 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 12592 | Billerbeck v. Caterpillar Tractor Co., 292 Ill. App. 3d 350 | 313+63 | Rule 103(b) requires a plaintiff to act with reasonable diligence in effecting service of process on a defendant. If the plaintiff fails to act with reasonable diligence after the statute of limitations expires, the cause of action shall be dismissed with prejudice. The plaintiff has the burden of proving reasonable diligence, and the defendant is not required to prove prejudice by the delay. Segal v. Sacco, 136 Ill.2d 282, 286, 144 Ill.Dec. 360, 361, 555 N.E.2d 719, 720 (1990); Mayoral v. Williams, 219 Ill.App.3d 365, 370, 162 Ill.Dec. 382, 385, 579 N.E.2d 1196, 1199 (1991). | Plaintiff must act with reasonable diligence in effecting service of process on defendant; if plaintiff fails to act with reasonable diligence after statute of limitations expires, cause of action shall be dismissed with prejudice. Sup.Ct.Rules, Rule 103(b). | Should a plaintiff act with reasonable diligence in effecting service of process on a defendant? | 034563.docx | LEGALEASE-00143985-LEGALEASE-00143986 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 12593 | Denson v. T.D.C.J.-I.D., 63 S.W.3d 454 | 307A+552 | A trial court may dismiss a claim as frivolous when it has no arguable basis in law or fact. See Tex.Civ.Prac. & Rem.Code Ann. " 14.003(a)(2), (b)(2). A fact hearing is only necessary if the claim has an arguable basis in law. See In re Wilson, 932 S.W.2d 263, 265 (Tex.App."El Paso 1996, no writ); McDonald v. Houston Dairy, 813 S.W.2d 238, 239 (Tex.App."Houston [1st Dist.] 1991, no writ). In the instant case, because the trial judge held no fact hearing, his basis for determining that Denson's causes of action were frivolous or malicious could not have been because he found that they had no arguable basis in fact. Hector v. Thaler, 862 S.W.2d 176, 178 (Tex.App."Houston [1st Dist.] 1993, no writ). Thus, the issue in the instant case is whether the trial court properly determined that there was no arguable basis in law for Denson's suit. Hector, 862 S.W.2d at 178; also see Birdo v. Williams, 859 S.W.2d 571, 572 (Tex.App."Houston [1st Dist.] 1993, no writ). | Trial court may dismiss a claim as frivolous when it has no arguable basis in law or fact. V.T.C.A., Civil Practice & Remedies Code S 14.003(a)(2), (b)(2). | Can court dismiss a claim as frivolous when it has no arguable basis in law or fact? | 10866.docx | LEGALEASE-00094485-LEGALEASE-00094486 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 12594 | Commonwealth v. Union Pac. R. Co., 214 Ky. 339 | 371+2005 | Obedient to this principle, a state may lay a personal tax upon persons subject to the jurisdiction of its sovereignty, a property tax upon all property located within its territories, and a license tax upon all acts done therein. | State may levy personal tax on persons subject to its jurisdiction and property tax on property within territory. | Can a state levy personal tax on persons subject to its jurisdiction and property tax on property within territory? | 045763.docx | LEGALEASE-00144470-LEGALEASE-00144471 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12595 | Davidson Cty. v. Kirkpatrick, 150 Tenn. 546 | 371+2005 | By article 2, section 28, of the Constitution, and under the inherent legislative power, the General Assembly could enact tax laws for the counties. Article 2, section 29, was unnecessary to confer such authority, and must be considered as a limitation upon the power of counties to tax. The express provision forbidding legislation which authorizes the county courts to impose taxes for other than county purposes extends and serves to forbid legislation authorizing or commanding appropriations of county revenue requiring a tax levy for the prohibited purpose. It must be noted that the limitation is upon the taxing power. Beyond the restraint imposed by the Constitution the power of the Legislature to act within its own sphere with respect to public revenue is not limited. The Judges' Cases, 102 Tenn. 550, 53 S. W. 134; Motlow v. State, 125 Tenn. 566, 145 S. W. 177, L. R. A. 1916F, 177; Demoville v. Davidson County, 87 Tenn. 214, 10 S. W. 353. | Legislature's power to act within its sphere with respect to public revenue is unlimited except by Constitution. | Is the legislature's power to act within its sphere with respect to public revenue unlimited? | 045771.docx | LEGALEASE-00144490-LEGALEASE-00144491 | Condensed, Order, SA | 0.88 | 1 | 1 | 0 | 1 | 1 |
| 12596 | Greene v. Paschall Truck Lines, 239 S.W.3d 94 | 413+2084 | PTL also suggested Greene was simply asking the ALJ to relieve him of a bad bargain. This caused us to wonder whether an employee and his employer, or his employer's carrier, could defeat the safeguards incorporated into the Kentucky Workers' Compensation Act by striking a bargain, signing it, not submitting it to an ALJ for statutorily mandated review, and then fulfilling its terms by sending checks to the employer. We found the answer in Williams v. Eastern Coal Corp., 952 S.W.2d 696 (Ky.1997), and hereby hold parties to a subrogation agreement cannot by agreement defeat the mandatory language of the act. As the Supreme Court of Kentucky explained in Williams, supra at 698, [w]orkers' compensation is but one part of an overall system of wage-loss protection, the purpose of which is to be certain that income is available to provide the necessities of life for those affected by physical disability, economic unemployment, or old age.... Workers' compensation is a creature of statute, and the remedies and procedures described therein are exclusive. Morrison v. Carbide and Carbon Chemicals Corp., 278 Ky. 746, 129 S.W.2d 547, 549 (1939). When an employer and employee submit themselves to the provisions of the act, their rights and liabilities are henceforth to be measured by the terms of the act. Id. at 550. A right created by statute cannot be defeated by the application of a common law principle. Eversole v. Eversole, 169 Ky. 793, 185 S.W. 487, 488 (1916). Thus, any analysis of a workers' compensation issue is necessarily an exercise in statutory interpretation. | Workers' compensation is a creature of statute, and the remedies and procedures described therein are exclusive. KRS 342.0011 et seq. | "Is workers compensation a creature of statute, and are the remedies and procedures described therein exclusive?" | 048062.docx | LEGALEASE-00144079-LEGALEASE-00144080 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 12597 | Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 | 25T+178 | We also are unpersuaded by the argument that arbitration will undermine the role of the EEOC in enforcing the ADEA. An individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action. Indeed, Gilmer filed a charge with the EEOC in this case. In any event, the EEOC's role in combating age discrimination is not dependent on the filing of a charge; the agency may receive information concerning alleged violations of the ADEA "from any source," and it has independent authority to investigate age discrimination. See 29 CFR "" 1626.4, 1626.13 (1990). Moreover, nothing in the ADEA indicates that Congress intended that the EEOC be involved in all employment disputes. Such disputes can be settled, for example, without any EEOC involvement. See, e.g., Coventry v. United States Steel Corp., 856 F.2d 514, 522 (CA3 1988); Moore v. McGraw Edison Co., 804 F.2d 1026, 1033 (CA8 1986); Runyan v. National Cash Register Corp., 787 F.2d 1039, 1045 (CA6), cert. denied, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). Finally, the mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration. For example, the Securities Exchange Commission is heavily involved in the enforcement of the Securities Exchange Act of 1934 and the Securities Act of 1933, but we have held that claims under both of those statutes may be subject to compulsory arbitration. See Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). | Mere involvement of administrative agency in enforcement of statute is not sufficient to preclude arbitration of dispute concerning alleged statutory violation. 9 U.S.C.A. S 1 et seq. | Is mere involvement of an administrative agency in the enforcement of a statute sufficient to preclude arbitration? | 007772.docx | LEGALEASE-00146431-LEGALEASE-00146433 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 12598 | Nadeau v. Equity Residential Properties Mgmt. Corp., 251 F. Supp. 3d 637 | 25T+178 | Brown v. Dillard's, Inc., 430 F.3d at 1012 (citation omitted). Thus, "when an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration. [Defendant] cannot compel [plaintiff] to honor an arbitration agreement of which it is itself in material breach." Id. at 1006. | When an employer enters into an arbitration agreement with its employees, the employer must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration; that is, the employer cannot compel the employee to honor an arbitration agreement of which the employer is itself in material breach. | What will happen if an employer enters into an arbitration agreement with their employees? | 007775.docx | LEGALEASE-00146434-LEGALEASE-00146435 | SA, Sub | 0.14 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12599 | Sanders v. State, 293 Ga. App. 534 | 67+4 | It is true that for purposes of that statute, "dwelling house" has been defined as a "residence or habitation of a person other than the defendant, where such person makes his abode."It is also true that the crime of criminal trespass under OCGA " 16-7-21(b)(1) does not require that the property at issue constitute a residence, habitation, or place of abode. But even without a showing that the house at issue in this case constituted a "dwelling house," the evidence did not authorize a jury instruction on criminal trespass. "A house underconstruction which is so far completed as to be capable of providing shelter to people, animals, or property constitutes a building under [the burglary] statute."This results because "Georgia's burglary statute is very broad and does not limit its application to buildings of any particular type or in any particular condition."Unquestionably, the evidence showed the house underconstruction to be a building under the burglary statute,and Sanders makes no contrary assertion. Because the evidence established all the elements of burglary, and under Sanders's defense as to the burglary charge, he would have been guilty of no offense at all, a charge on the lesser included offense was not required. | A house under construction that is so far completed as to be capable of providing shelter to people, animals, or property constitutes a building under the burglary statute. West's Ga.Code Ann. S 16-7-1. | "If a house is under construction, then is it a building under the burglary statute?" | 012958.docx | LEGALEASE-00146529-LEGALEASE-00146530 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 12600 | United States v. Pepper, 697 F. Supp. 2d 1171 | 260+9 | The Forest Service may properly regulate the surface use of forest lands. While the regulation of mining per se is not within Forest Service jurisdiction, where mining activity disturbs National Forest System lands, Forest Service regulation is proper. United States v. Weiss, 642 F.2d 296, 298 (9th Cir.1981) (Secretary of Agriculture has "power to adopt reasonable rules and regulations regarding mining operations within the national forests"); United States v. Richardson, 599 F.2d 290 (9th Cir.1979), cert. denied, 444 U.S. 1014, 100 S.Ct. 663, 62 L.Ed.2d 643 (1980) (recognizing the conflict between mining and forest land policies and holding that the district court may properly enjoin unreasonable destruction of surface resources). United States v. Goldfield Deep Mines Co., 644 F.2d 1307, 1309 (9th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982); United States v. Doremus, 888 F.2d 630, 632 (9th Cir.1989), cert. denied, 498 U.S. 1046, 111 S.Ct. 751, 112 L.Ed.2d 772 (1991). In reaffirming the Forest Service's authority to regulate mining, the court in Doremus, supra at 632, rejected a miner's contention that conduct "reasonably incident[al]" to mining could not be so regulated, and left no doubt that the Department of Agriculture possesses statutory authority to regulate activities related to mining in order to preserve the national forests. 16 U.S.C. " 551. | While the regulation of mining per se is not within Forest Service jurisdiction, where mining activity disturbs National Forest System lands, Forest Service regulation is proper. | Does the Secretary of Agriculture have the power to adopt reasonable rules and regulations regarding mining operations within the national forests? | 021444.docx | LEGALEASE-00146042-LEGALEASE-00146043 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12601 | James v. Comm'n for Lawyer Discipline, 310 S.W.3d 598 | 302+1 | A pleading's purpose is to give fair notice of a party's claims and the relief sought. WorldPeace v. Comm'n for Lawyer Discipline, 183 S.W.3d 451, 457 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). "In defining fair notice and in measuring the adequacy of a pleading against that standard, Texas courts consistently indicate that to force a party to plead his entire case, with exactness, is not concordant with the spirit of the Rules governing pleading." Rodriguez v. Yenawine, 556 S.W.2d 410, 414 (Tex.Civ.App.-Austin 1977, no writ). "Fair notice under the rules is met if an opposing attorney can ascertain the nature and basic issue of the controversy from the pleadings." Hays County v. Hays County Water Planning P'ship, 69 S.W.3d 253, 258 (Tex.App.-Austin 2002, no pet.); see also Bader, 701 S.W.2d at 677 ("The function of a pleading is to define the issues at trial, not to state evidence."). | A pleading's purpose is to give fair notice of a party's claims and the relief sought. | Is giving fair notice of a party's claims and the relief sought the purpose of pleading? | 023553.docx | LEGALEASE-00145830-LEGALEASE-00145831 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12602 | Peru Coal Co. v. Merrick, 79 Ill. 112 | 307A+726 | Even if the facts stated in the affidavit were sufficient to authorize a continuance, it has never been the practice in this State for the court to entertain a second application for continuance at the same term, unless the second application is based upon facts that have arisen after the first motion was overruled, which it is not claimed or pretended was the case here. | A second application for a continuance at the same term will not be heard, unless the second application is based upon facts that have arisen after the first motion was overruled; and, where a second application is made upon substantially the same grounds as the first, it should be overruled, although the facts stated are sufficient to authorize a continuance. | Can a second application for continuance be admitted? | Pretrial Procedure - Memo # 5836 - C - SS.docx | ROSS-003304821-ROSS-003304822 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 12603 | Perotti v. Ferguson, 454 N.E.2d 951 | 307A+746 | Under these rules, there is no doubt that a trial court may, sua sponte, dismiss an action for non-appearance at a pre-trial conference. Cf. Pembaur v. Leis (1982), 1 Ohio St.3d 89, 437 N.E.2d 1199. As an indispensable prerequisite to the dismissal, however, the plain language of Civ.R. 41(B)(1) requires that plaintiff's counsel be given notice of the intended dismissal. Correspondingly, Local Rule VII4(h), by incorporating Civ.R. 41(B)(1), also mandates a predismissal notice. | Trial court may, sua sponte, dismiss action for nonappearance at pretrial conference. Rules Civ.Proc., Rule 41(B)(1). | "Can a trial court, sua sponte, dismiss an action for nonappearance at a pretrial conference?" | Pretrial Procedure - Memo # 6488 - C - BP.docx | ROSS-003288340-ROSS-003288341 | Order, SA | 0.76 | 1 | 0 | 0 | 1 | |
| 12604 | Dorsey v. Nold, 362 Md. 241 | 307A+746 | Just as there are sanctions for the violation of the discovery rules, sanctions are available for the violation of directives in scheduling orders, although they are not specified in any rule. See Manzano v. Southern Md. Hospital, 347 Md. 17, 29, 698 A.2d 531, 536 (1997). The offense justifying such a sanction is not just the non-disclosure itself, but the non-disclosure within the time set by the court for disclosure to occur. Apart from any actual prejudice that may be suffered by the party in not receiving the information in a timely fashion, or that may be suffered by the court if trial has to be postponed, the court is demeaned by noncompliance with its order. See Betz v. State, 99 Md.App. 60, 635 A.2d 77 (1994). | Sanctions are available for the violation of directives in scheduling orders, although they are not specified in any rule. Md.Rule 2-504. | "Are sanctions available for the violation of directives in scheduling orders, although they are not specified in any rule?" | 034038.docx | LEGALEASE-00145111-LEGALEASE-00145112 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12605 | Farm Bureau Mut. Ins. Co. v. Schwan, 687 N.W.2d 388 | 307A+552 | But dismissal does not automatically follow a determination that there is no actual controversy. Minnegasco, 565 N.W.2d at 710. A court will not dismiss an issue as moot if it is capable of repetition and likely to evade review. Schmidt, 443 N.W.2d at 826. Additionally, an issue will not be considered moot if it is related to "important public issues of statewide significance that should be decided immediately." State v. Rud, 359 N.W.2d 573, 576 (Minn.1984). | A court will not dismiss an issue as moot if it is capable of repetition and likely to evade review. | Will a court dismiss an issue as moot if it is capable of repetition and likely to evade review? | Pretrial Procedure - Memo # 6521 - C - SB.docx | ROSS-003303206-ROSS-003303207 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12606 | E.I. DuPont De Nemours & Co. v. Sidran, 140 So. 3d 620 | 307A+563 | Although a finding of fraud on the court generally has been premised on a proven outright lie on a critical issue, or the destruction of determinative evidence, whatever "scheme" of fraud a court finds must be supported by clear and convincing evidence that goes to "the very core issue at trial": To support a dismissal the court must find the "false testimony was directly related to the central issue in the case."Morgan v. Campbell, 816 So.2d 251, 253 (Fla. 2d DCA 2002); see also Ramey v. Haverty Furniture Cos., 993 So.2d 1014, 1019 (Fla. 2d DCA 2008). It is the moving party's burden to establish by clear and convincing evidence that the non-moving party has engaged in fraudulent conduct warranting dismissal. Cross v. Pumpco, Inc., 910 So.2d 324, 327 (Fla. 4th DCA 2005). Gilbert v. Eckerd Corp. of Fla., Inc., 34 So.3d 773, 775"76 (Fla. 4th DCA 2010). | To support a dismissal based upon a fraud on the court, the court must find the false testimony was directly related to the central issue in the case. | Should whatever scheme of fraud a court finds be supported by clear and convincing evidence that goes to the very core issue at trial? | 034096.docx | LEGALEASE-00145302-LEGALEASE-00145303 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 12607 | Wyeth Ayerst Pharm. v. Assessor of Town of Champlain, 24 A.D.3d 849 | 307A+560 | Moreover, the failure to properly serve a party is a jurisdictional defect subjecting a proceeding to dismissal (see Matter of New York Tel. Co. v. Board of Assessors of Inc. Vil. of Shoreham, supra; Matter of Rodriguez v. Board of Assessors of Town of Plattekill, 53 A.D.2d 788, 384 N.Y.S.2d 535 [1976]; Matter of Watson Blvd. Apts. v. Huffcut, 23 A.D.2d 508, 255 N.Y.S.2d 184 [1965]; Matter of Shanty Hollow Corp. v. Poladian, 23 A.D.2d 132, 259 N.Y.S.2d 541 [1965], affd. 17 N.Y.2d 536, 267 N.Y.S.2d 912, 215 N.E.2d 168 [1966] ). Thus here, the proceedings should have been dismissed because petitioner failed to effect proper service. We also reject petitioner's contention that, by failing to seek dismissal of the previous year's tax proceedings on the ground that those petitions were also served by certified mail, respondents waived or are estopped from seeking dismissal of the subject proceedings on this same ground (compare Matter of Premier Self Stor. of Lancaster v. Fusco, 12 A.D.3d 1135, 784 N.Y.S.2d 443 [2004], lv. denied 4 N.Y.3d 710, 797 N.Y.S.2d 816, 830 N.E.2d 1145 [2005] ). | Failure to properly serve party is jurisdictional defect subjecting proceeding to dismissal. | Is failure to properly serve a party a jurisdictional defect subjecting proceeding to dismissal? | Pretrial Procedure - Memo # 6552 - C - SJ.docx | ROSS-003288367-ROSS-003288368 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12608 | Schneller v. St. Mary's Hosp. Med. Ctr., 162 Wis. 2d 296 | 307A+748 | Alexander demonstrates that the primary concern of the circuit court when addressing an untimely motion to amend a scheduling order is on accommodating the conflicting interests in permitting parties to fully present their case, in preventing prejudice to the opposing party, and in deterring litigants from flaunting court orders and interfering with the orderly administration of justice. The circuit court must consider whether the moving party has demonstrated cause for amending the scheduling order and whether the interests of justice would be served by granting the amendment. In some cases, such as in Alexander, the gross unfairness of denying a motion to amend a scheduling order requires that the motion be granted. However, we have repeatedly recognized that the court has the discretion to dismiss the case as a sanction if the conduct of the moving party in failing to obey the court's scheduling order is egregious and there is no clear and justifiable excuse for the conduct. See, e.g., Johnson, 162 Wis.2d at ---- - ----, 470 N.W.2d at 864-865; Trispel v. Haefer, 89 Wis.2d 725, 732-33, 279 N.W.2d 242 (1979). The circuit court's broad discretion in addressing untimely motions to amend scheduling orders, which permits the court to take steps ranging from granting the requested relief to dismissing the moving party's case, is absolutely essential to the court's ability to efficiently and effectively administer its calendar. | Primary concern of circuit court when addressing untimely motion to amend scheduling order is the accommodation of conflicting interests of permitting parties to fully present their case, preventing prejudice to opposing party, and deterring litigants from flaunting court orders and interfering with the orderly administration of justice; circuit court must consider whether moving party has demonstrated cause for amending the scheduling order and whether the interests of justice would be served by granting the amendment. W.S.A. 801.15(2)(a), 802.10. | Is the circuit court's broad discretion in the matter of sanctioning parties for violating scheduling orders absolutely essential to the court's ability to efficiently and effectively administer its calendar? | 034332.docx | LEGALEASE-00145675-LEGALEASE-00145676 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 12609 | Newell v. Engel, 899 P.2d 273 | 307A+46 | The harshest of all sanctions is dismissal or entry of a default judgment, which should be imposed only in extreme circumstances. Nagy v. District Court, supra; see J.P. v. District Court, 873 P.2d 745 (Colo.1994). | Harshest of all sanctions for failure to obey order to provide or permit discovery is dismissal or entry of default judgment, which should be imposed only in extreme circumstances. Rules Civ.Proc., Rule 37(b)(2). | Is the dismissal or entry of default judgment the harshest of all sanctions and should be imposed only in extreme circumstances? | Pretrial Procedure - Memo # 6678 - C - PC.docx | ROSS-003288429 | SA, Sub | 0.01 | 0 | 0 | 1 | 1 | |
| 12610 | Haley v. Simmons, 529 F.2d 78 | 313+158 | The district court's order of September 29, 1975, did not expressly dismiss the action as to the improperly served defendant-appellees. Nor is dismissal invariably required where service is ineffective: under such circumstances, the court has discretion to either dismiss the action, or quash service but retain the case. See e.g. Stanga v. McCormick Shipping Corp., 268 F.2d 544, 554 (5th Cir. 1959); Miller v. Cousins Properties, Inc., 378 F.Supp. 711, 716 (D.Vt.1974); North Central Utilities, Inc. v. Consolidated Pipe & Supply Co., 62 F.R.D. 676, 681 (W.D.La.1974). See generally, 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, s 1354, at 584"87 (1969).Since no dismissal as to the improperly served defendant-appellees appears in the record, we must assume that the district court retained jurisdiction for purposes of allowing further attempts to serve process. Accordingly, the rights and liabilities of all of the parties to the action have not yet been resolved. There appearing in the record no certification pursuant to F.R.C.P. 54(b), the district court's order of September 29, 1975, is not a final appealable order under 28 U.S.C. s 1291. We therefore lack jurisdiction. See Sargent v. Johnson, 521 F.2d 1260 (8th Cir. 1975); Lane v. Graves, 518 F.2d 965 (8th Cir. 1975). | Dismissal is not invariably required where service is ineffective: under such circumstances court has discretion to either dismiss action or quash service but retain the case. | Is dismissal not invariably required where service is ineffective? | 034666.docx | LEGALEASE-00145354-LEGALEASE-00145355 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12611 | Carolina Marina & Yacht Club v. New Hanover Cty. Bd. of Comm'rs, 207 N.C. App. 250 | 15A+1724(2) | Whenever, during the course of litigation, "it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law." In re Peoples, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), cert. denied sub nom. Peoples v. Jud'l Standards Comm'n of N.C., 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979). "Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action." Id. at 148, 250 S.E.2d at 912. "If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action." Id. (emphasis added). | If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action. | Will an action be dismissed if the issues become moot? | Pretrial Procedure - Memo # 6973 - C - NS.docx | ROSS-003289924-ROSS-003289925 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12612 | Jackson Cty. Bd. of Election Comm'rs ex rel. Brown v. City of Lee's Summit, 277 S.W.3d 740 | 13+6 | As we recently explained in State ex rel. Ag Processing, Inc. v. Public Service Commission, 276 S.W.3d 303 (Mo.App. W.D. 2008): A case is moot if the decision would have "no practical effect upon an existent controversy." When an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is moot and generally should be dismissed. Id. at 306 (citations omitted); see also Asher v. Carnahan, 268 S.W.3d 427, 429"30 (Mo.App. W.D.2008)(quoting River Fleets, Inc. v. Creech, 36 S.W.3d 809, 813 (Mo.App. W.D.2001)). "The doctrine is triggered when some event "so alters the position of the parties that any judgment rendered [merely becomes] a hypothetical opinion." " Thruston v. Jefferson City Sch. Dist., 95 S.W.3d 131, 134 (Mo.App. W.D.2003) (quoting State ex rel. Reed v. Reardon, 41 S.W.3d 470, 473 (Mo. banc 2001)). | A case is "moot" if the decision would have no practical effect upon an existent controversy; when an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is moot and generally should be dismissed. | "Is a case ""moot"" if the decision would have no practical effect upon an existent controversy?" | Pretrial Procedure - Memo # 6988 - C - VP.docx | ROSS-003289947-ROSS-003289948 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 12613 | State ex rel. AG Processing v. Pub. Serv. Comm'n, 276 S.W.3d 303 | 13+6 | A case is moot if the decision would have "no practical effect upon an existent controversy." State ex rel. County of Jackson v. Mo. Pub. Serv. Comm'n, 985 S.W.2d 400, 403 (Mo.App.1999). When an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is moot and generally should be dismissed. State ex rel. Chastain v. City of Kansas City, 968 S.W.2d 232, 237 (Mo.App.1998). Aquila says the Consumers' filing of the new petition in the circuit court following the PSC's denial of the rehearing applications is such an event. They claim that a ruling by this court is unnecessary, because "the circuit court is already doing ... that which it would be compelled to do if appellants are successful in this appeal," i.e., determining whether the PSC's orders are "lawful and reasonable." See section 386.510. | A case is "moot" if the decision would have no practical effect upon an existent controversy. | "Is a case ""moot"" if the decision would have no practical effect upon an existent controversy?" | 034803.docx | LEGALEASE-00145766-LEGALEASE-00145767 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12614 | Johnson v. Eugene Emergency Physicians, P.C., 159 Or. App. 167 | 307A+563 | Nonetheless, dismissal is a "drastic" sanction to be reserved for the most severe violations of rules and court orders. Pamplin v. Victoria, 138 Or.App. 563, 567, 909 P.2d 1245 (1996). Dismissal may be ordered only after the court explains the analytical process by which it concluded that dismissal is just in view of the other available sanctions. Pamplin, 319 Or. at 437, 877 P.2d 1196. After the court dismissed plaintiff's claim here, we decided Klau"Med, Inc. v. Bodyworks Medical, Inc., 156 Or.App. 138, 964 P.2d 1150 (1998), in which we explained that, to properly assess on appeal the propriety of a sanction of dismissal, "the trial court is required not only to make express findings that the penalized party willfully and knowingly disobeyed the court's orders but also to make express findings that lesser sanctions are not appropriate. Without an explanation as to why all other sanctions were not appropriate, we cannot determine whether the trial court's decision was, under all the circumstances, just." Id. at 144"45, 964 P.2d 1150 (emphasis added). | Dismissal is a "drastic" sanction to be reserved for the most severe violations of rules and court orders. | "Is a dismissal a ""drastic"" sanction to be reserved for the most severe violations of rules and court orders?" | Pretrial Procedure - Memo # 7073 - C - AP.docx | ROSS-003315550-ROSS-003315551 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 12615 | Denson v. T.D.C.J.-I.D., 63 S.W.3d 454 | 307A+552 | A trial court may dismiss a claim as frivolous when it has no arguable basis in law or fact. See Tex.Civ.Prac. & Rem.Code Ann. " 14.003(a)(2), (b)(2). A fact hearing is only necessary if the claim has an arguable basis in law. See In re Wilson, 932 S.W.2d 263, 265 (Tex.App."El Paso 1996, no writ); McDonald v. Houston Dairy, 813 S.W.2d 238, 239 (Tex.App."Houston [1st Dist.] 1991, no writ). In the instant case, because the trial judge held no fact hearing, his basis for determining that Denson's causes of action were frivolous or malicious could not have been because he found that they had no arguable basis in fact. Hector v. Thaler, 862 S.W.2d 176, 178 (Tex.App."Houston [1st Dist.] 1993, no writ). Thus, the issue in the instant case is whether the trial court properly determined that there was no arguable basis in law for Denson's suit. Hector, 862 S.W.2d at 178; also see Birdo v. Williams, 859 S.W.2d 571, 572 (Tex.App."Houston [1st Dist.] 1993, no writ). | Trial court may dismiss a claim as frivolous when it has no arguable basis in law or fact. V.T.C.A., Civil Practice & Remedies Code S 14.003(a)(2), (b)(2). | Can a court dismiss claim as frivolous if claim has no arguable basis in law? | Pretrial Procedure - Memo # 7146 - C - PB.docx | ROSS-003289951-ROSS-003289952 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 12616 | Holder v. Sheet Metal Worker's Internat. Assn., 121 Cal. App. 3d 321 | 307A+551 | This legislative policy, however, is tempered by judicial concern that subject to a plaintiff's exercise of reasonable diligence, an action should be tried on the merits wherever possible. (Hocharian v. Superior Court, supra, 28 Cal.3d at p. 724, 170 Cal.Rptr. 790, 621 P.2d 829.) Where these policies conflict, the judicial policy predominates. (Denham v. Superior Court (1970) 2 Cal.3d 557, 566, 86 Cal.Rptr. 65, 468 P.2d 193.). | If legislative policy that defendants faced with a lawsuit should have reasonable opportunity to locate evidence and witnesses in preparing a defense conflicts with judicial policy that, subject to plaintiff's exercise of reasonable diligence, an action should be tried on the merits wherever possible, the judicial policy predominates. | Should an action be tried on the merits wherever possible? | Pretrial Procedure - Memo # 7163 - C - SU.docx | ROSS-003289479-ROSS-003289480 | Condensed, Order, SA, Sub | 0.22 | 1 | 1 | 1 | 1 | 1 |
| 12617 | State v. John F.M., 285 Conn. 52 | 307A+563 | A defendant or plaintiff who fails to produce evidence, when he is ordered to do so, is in default and the case may go against him on this ground. In Hauer v. Christon (1969), 43 Wis.2d 147, 168 N.W.2d 81, the court recognized the inherent power of a court to dismiss a defendant's answer or a plaintiff's complaint when the party was not prepared for trial or when there was a failure to produce evidence ordered to be produced, on the ground that the necessity of the court to maintain the orderly processing of cases and the dispatch of justice required it. | A defendant or plaintiff who fails to produce evidence, when he is ordered to do so, is in default and case may go against him on this ground. | Is a defendant or plaintiff who fails to produce evidence in default and case can go against him on this ground? | Pretrial Procedure - Memo # 7172 - C - KBM.docx | ROSS-003289965-ROSS-003289966 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12618 | Isaacs v. Am. Iron & Steel Co., 690 N.W.2d 373 | 307A+552 | John Isaacs contends that the district court erred in denying relief under section 302A.751 (2002) by dismissing, as moot, his claim that the July 2002 election of directors violated American Iron's bylaws. The issue of whether a cause of action is moot is a legal issue, which we review de novo. In re McCaskill, 603 N.W.2d 326, 327 (Minn.1999). Generally, an issue may be dismissed as moot if an event occurs that resolves the issue or renders it impossible to grant effective relief. State v. Rud, 359 N.W.2d 573, 576 (Minn.1984). | Issue generally may be dismissed as moot if an event occurs that resolves the issue or renders it impossible to grant effective relief. | "Should a case be dismissed as moot, whenever an event occurs that renders a decision unnecessary?" | 035225.docx | LEGALEASE-00145889-LEGALEASE-00145890 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 12619 | Weeden v. City of Beloit, 22 Wis. 2d 414 | 307A+552 | "The power to dismiss groundless, vexatious, and harassing litigations is inherent in the courts. Thus, although an action will not be dismissed merely because it is vexatious, a vexatious action will be dismissed where it is clear that there is no meritorious cause of action.'] | Power to dismiss groundless, vexatious, and harassing litigations is inherent in courts, and vexatious action will be dismissed where it is clear that there is no meritorious cause of action. | Can a vexatious action be dismissed where it is clear that there is no meritorious cause of action? | 035242.docx | LEGALEASE-00145944-LEGALEASE-00145945 | Condensed, SA | 0.32 | 0 | 1 | 0 | 1 | |
| 12620 | Johnson v. Landmark First Nat. Bank, 415 So. 2d 161 | 307A+563 | The severity of sanctions imposed by the trial court is a matter within its sound discretion and the exercise of this discretion will not be disturbed absent a clear showing of abuse. Ferrante v. Waters, 383 So.2d 749 (Fla. 4th DCA 1980); Hart v. Weaver, 364 So.2d 524 (Fla. 2d DCA 1978). As previously noted in our decisions, the ultimate sanction of dismissal should be employed only in aggravated situations. Swindle v. Reid, 242 So.2d 751 (Fla. 4th DCA 1970). The trial court here might well have sanctioned counsel directly by contempt and a fine. | Ultimate sanction of dismissal for attorney's failure to comply with trial court's orders should be employed only in aggravated situations. | Should the ultimate sanction of dismissal for an attorney's failure to comply with trial court's orders be employed only in aggravated situations? | 035430.docx | LEGALEASE-00145174-LEGALEASE-00145175 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 12621 | Pixton v. Williams Scotsman, 924 So. 2d 37 | 307A+563 | A trial court's failure to consider the Kozel factors in determining whether dismissal is appropriate is, by itself, a basis for remand for application of the correct standard. See Ham v. Dunmire, 891 So.2d 492 (Fla.2004); Warren v. Shands Teaching Hospital & Clinics, Inc., 700 So.2d 702, 705 (Fla. 1st DCA 1997). If this was a case in which only the Pixtons, and not their counsel, had engaged in wrongdoing or noncompliance with the rules, Kozel would not apply. E.g., Levine v. Del American Properties, 642 So.2d 32 (Fla. 5th DCA 1994). In that event, the trial court, having determined that good cause was not shown, could have used its discretion to determine whether the case should be dismissed, even if the dismissal would have barred the cause of action because of the statute of limitations. See, e.g., Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298 (3d Cir.1995). However, where the attorney is involved in the conduct to be sanctioned, a Kozel analysis is required before dismissal is used as a sanction. Clearly, the Pixtons' trial counsel was involved in the conduct which was sanctioned; he misrepresented that the Pixtons had been unable to obtain service of process despite there being no actual attempt to serve, and presented an "Agreed Order" granting the extension of time despite no other party having consented. Under these circumstances, an evidentiary hearing is mandated to determine the clients' involvement or complicity in the attorney's conduct. See, e.g., Schlitt v. Currier, 763 So.2d 491 (Fla. 4th DCA 2000). Lacking such involvement or complicity by the client, the attorney's misconduct should not result in a dismissal of the action. E.g., Rose v. Fiedler, 855 So.2d 122 (Fla. 4th DCA 2003). Indeed, this court has held that "[b]ecause dismissal is the ultimate sanction, it should be reserved for those aggravated cases in which a lesser sanction would fail to achieve a just result." American Express Co. v. Hickey, 869 So.2d 694, 695 (Fla. 5th DCA 2004). | Lacking involvement or complicity by the client, an attorney's misconduct should not result in a dismissal of an action. | "Would an attorney's misconduct result in a dismissal of an action, when clients involvement or complicity is lacking?" | Pretrial Procedure - Memo # 7448 - C - NS.docx | ROSS-003317067-ROSS-003317068 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 12622 | D.C. v. Serafin, 617 A.2d 516 | 307A+563 | The trial court has authority to dismiss an action when a plaintiff fails to comply with an order of the court. Super.Ct.Civ.R. 41(b); Massengale v. 3M Business Products Sales, Inc., 504 A.2d 574, 579 (D.C.1985); LaPrade v. Lehman, 490 A.2d 1151, 1155 (D.C.1985). Dismissal is an extreme sanction which should be granted only sparingly or in extraordinary circumstances. Hackney v. Sheeskin, 503 A.2d 1249, 1253 (D.C.1986); LaPrade, 490 A.2d at 1155. Dismissal under the rule is reviewable for an abuse of discretion. Techniarts Video, Inc. v. 1631 Kalorama Associates, 572 A.2d 1051, 1054 (D.C.1990); Hackney, 503 A.2d at 1253. Because dismissal is such an extreme sanction and because of the principle preferring trial on the merits, the trial court's exercise of discretion must be undertaken with care and consistent with well-established standards. Techniarts, 572 A.2d at 1054; LaPrade, 490 A.2d at 1155. In exercising its discretion under the rule, the trial court should consider first other lesser sanctions. Techniarts, 572 A.2d at 1054. The sanction must also be tailored to the circumstances it is designed to address. Id. Among the factors which the trial court should consider are: (1) the nature of the party's conduct, including whether it was willful; (2) the length of any delay in complying with the court's order; (3) the reasons for the delay; and (4) any prejudice to the opposing party. Id.; Hackney, 503 A.2d at 1253. Dismissal should not be imposed where the failure of a party to comply with the order is inadvertent or excusable. In re C.S. Crawford & Co., 423 F.2d 1322, 1325 (9th Cir.1970). Applying these principles, we consider whether the trial court abused its discretion in dismissing this case. | Trial court has authority to dismiss action when plaintiff fails to comply with order of court. Civil Rule 41(b). | Does a trial court have authority to dismiss an action when a plaintiff fails to comply with order of court? | 035553.docx | LEGALEASE-00146345-LEGALEASE-00146346 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12623 | Larson v. Wisconsin Dep't of Indus., Labor & Human Relations, 76 Wis. 2d 595 | 92+2528 | Since the legislature has clearly made the determination that posthumously born children shall be eligible to receive additional benefits but not primary benefits, that result, reflecting, as it does, public policy, can hardly be deemed to be absurd. Workmen's compensation is wholly statutory.Questions on what should properly be the public policy concerning it are determined by the legislature and not the courts. Frisbie, supra, 45 Wis.2d 85, 172 N.W.2d 346; Harry Crow & Son, Inc. v. Industrial Comm., 18 Wis.2d 436, 442, 118 N.W.2d 841 (1963). As this court stated in Frisbie, supra, 45 Wis.2d 89, 172 N.W.2d 350: " . . . Where the pathway to recovery has been narrowed by legislation, it is the legislature which alone can broaden that pathway." See also: Halama v. ILHR Department, 48 Wis.2d 328, 332, 179 N.W.2d 784 (1970) | Workmen's compensation is wholly statutory and questions as to what should properly be the public policy concerning it are determined by the legislature and not by the courts. | "For workers compensation, is it the legislature or the courts that determine the questions regarding what should properly be the public policy?" | 11498.docx | LEGALEASE-00094446-LEGALEASE-00094447 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12624 | United States v. Kay, 200 F. Supp. 2d 681 | 63+2 | In applying criminal laws, federal courts must generally follow the plain and unambiguous language of the statute. E.g., Salinas v. United States, 522 U.S. 52, 57, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); Johnson v. Sawyer, 120 F.3d 1307, 1319 (5th Cir.1997). Reviewing the "obtain or retain business" language, together with the exceptions listed above, the Court determines that the FCPA is ambiguous under these circumstances.Therefore, the Court turns to an analysis of the legislative history of the FCPA. See, e.g., Ratzlaf v. United States, 510 U.S. 135, 147"48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear.") | Payments made by the defendants to foreign government officials for purpose of reducing customs duties and taxes did not fall under the scope of provision of the Foreign Corrupt Practices Act (FCPA), prohibiting payments to foreign officials to obtain or retain business; although the plain language of the statute was ambiguous, legislative history showed that the Congress specifically rejected proposed language to broaden the "obtain or retain business" clause that would have covered the defendants' conduct. Securities Exchange Act of 1934, S 30A(a), as amended, 15 U.S.C.A. S 78dd-1(a); Foreign Corrupt Practices Act of 1977, S 104(a), 15 U.S.C.A. S 78dd-2(a). | "Is the plain language of a provision of FCPA, prohibiting payments to foreign officials to obtain or retain business ambiguous?" | 10757.docx | LEGALEASE-00094285-LEGALEASE-00094286 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 12625 | United States v. Dixon, 658 F.2d 181 | 63+3 | First, it is of no consequence that appellee was not involved in the actual payment of the bribes. Section 201(b)(2) requires only that something of value be offered or promised, not that a bribe be paid. 18 U.S.C. s 201(b)(2) ("Whoever, directly or indirectly, corruptly gives, offers or promises anything of value ... shall be fined ... or imprisoned...."); United States v. Kemmel, 188 F.Supp. 736 (D.C.Pa.1960), aff'd, 295 F.2d 712 (3d Cir. 1961), cert. denied, 368 U.S. 988, 82 S.Ct. 604, 7 L.Ed.2d 525 (1962). Furthermore, appellee was convicted only of aiding and abetting the violation of section 201(b)(2). It has long been established that a defendant charged with aiding and abetting the bribery need not be present at the time ofthe delivery. Daniels v. United States, 17 F.2d 339, 345 (9th Cir.) cert. denied, 274 U.S. 744, 47 S.Ct. 591, 71 L.Ed. 1325 (1927). By definition, "(a)n accessory before the fact is one who was not present actually or constructively at the time when a felony was committed, but who counseled, procured or commanded another to commit it, and he is equally guilty with the principal." Id. | A defendant charged with aiding and abetting a bribery need not be present at the time of the delivery. 18 U.S.C.A. SS 2, 201(b)(2). | Does a defendant charged with aiding and abetting a bribery need to be present at the time of the delivery? | 10759.docx | LEGALEASE-00094402-LEGALEASE-00094403 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12626 | United States v. Hernandez, 731 F.2d 1147 | 282+105 | We recognize, of course, that Section 201 is to be broadly construed in order to effectuate its legislative purpose of deterring corruption. United States v. Evans, 572 F.2d 455, 580 (5th Cir.), reh'g denied, 576 F.2d 931, cert. denied sub nom. Gent v. United States, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). Furthermore, Section 201 requires only that something of value be offered or promised, not that a bribe actually be paid. United States v. Dixon, 658 F.2d 181, 191 (3d Cir.1981).3 The crime is consummated whether or not the offer is accepted by the offeree. United States v. Jacobs, 431 F.2d 754, 760 (2d Cir.1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971). On the other hand, preparations for the commission of the crime are not parts of the crime. Krogmann v. United States, 225 F.2d 220, 227 (6th Cir.1955); United States v. Kemmel, 188 F.Supp. 736, 740 (D.C.Pa.1960), aff'd 295 F.2d 712 (3d Cir.1961), cert. denied, 368 U.S. 988, 82 S.Ct. 604, 7 L.Ed.2d 525 (1962). "The critical event in the commission of the crime is the actual giving or the offer to give or transfer money or other thing of value, absent which no offense is committed under the statute." United States v. O'Donnell, 510 F.2d 1190, 1194 (6th Cir.), cert. denied, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). | Witness bribery statute is to be broadly construed in order to effectuate its legislative purpose of deterring corruption. 18 U.S.C.A. S 201. | Should section 201 be broadly construed in order to effectuate its legislative purpose of deterring corruption? | Bribery - Memo #918 - C-JL_57456.docx | ROSS-003293484-ROSS-003293486 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 12627 | Hafen v. United States, 30 Fed. Cl. 470 | 260+29 | If a mining claim is found to be valid, the claimant gains certain exclusive possessory rights. No right, however, arises from an invalid claim of any kind. Best, 371 U.S. at 335, 83 S.Ct. at 381"82. Although, the Department of Interior cannot arbitrarily revoke a mining claim, it can, however, after proper notice and upon adequate hearing, declare it null and void if the claim is found to be invalid. Cameron, 252 U.S. at 459"60, 40 S.Ct. at 412. | If unpatented mining claim is found valid, claimant gains certain exclusive possessory rights, but no rights arise from invalid claim of any kind. | Does any right arise from an invalid claim of any kind? | Mines and Minerals - Memo #281 - C - EB?_57475.docx | ROSS-003293466 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 12628 | St. Romain v. Midas Expl., 430 So. 2d 1354 | 260+58 | Although it is necessary that mineral leases be in writing, it is not essential that the lessee sign the written instrument. Fomby, supra. Bills v. Fruge, 360 So.2d 661 (La.App. 3rd Cir.1978); Ingolia v. Lobrano, 244 La. 241, 152 So.2d 7 (La.1963); Hayes v. Muller, 245 La. 356, 158 So.2d 191 (La.1963). What is required is that the lessee indicates consent to the lease agreement. In this case Midas's consent was manifested when it tendered the draft for payment of the bonus as well as its attempt to sell the mineral lease. These actions coupled with the serious negotiations regarding the lease agreement indicated Midas's intent to be bound by the mineral lease. | Although it is necessary that mineral leases be in writing, it is not essential that lessee sign written instrument; what is required is that lessee indicate consent to lease agreement. LSA-C.C. arts. 1797, 1798, 1803, 1811, 1816-1818. | "Given that a mineral lease must be in writing, is it essential that the lessee sign the written instrument?" | Mines and Minerals - Memo #288 - C - CSS_57480.docx | ROSS-003296290-ROSS-003296291 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 12629 | Atl. Oil Co. v. Los Angeles Cty., 69 Cal. 2d 585 | 260+83 | Under the instruments herein, each public entity granted the privilege of drilling for and producing oil and gas exclusively to a lessee without reservation or exception for the term of the lease. "The right (to drill for and produce oil) when granted is a profit A prendre, a right to remove a part of the substance of the land. | Right to drill for and produce oil when granted is a profit a prendre, a right to remove part of substance of land. | Is the exclusive right to drill for and produce oil when granted a profit a prendre? | 021566.docx | LEGALEASE-00147710-LEGALEASE-00147711 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12630 | McCulloch v. Murphy, 125 F. 147 | 260+38(14) | The law does not favor forfeitures. The penalty for failure to comply with the law is thus expressed in section 2324, Rev.St.(U.S.Comp.St. 1901, p. 1426): "Upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made." The word "forfeiture" is not used in the statute, although it is a comprehensive word to express results which flow from a failure to comply with the law. The rule is well settled that the forfeiture cannot be established except upon clear and convincing proof of the failure of the original locator to have work performed or improvements made to the amount required by law. The burden of proof to establish a forfeiture rests upon him who asserts it. Hammer v. Garfield M. & M. Co., 130 U.S.291, 301, 9 Sup.Ct. 548, 32 L.Ed. 964; Book v. Justice M. Co., supra; Justice M. Co. v. Barclay (C.C.) 82 Fed. 554, 559; Emerson v. McWhirter, 133 Cal. 510, 65 Pac. 1036; Axion M. Co. v. White, 10 S.D. 198, 201, 72 N.W. 462. The law is well settled that actual possession of a mining claim is not essential to the validity of a title obtained by a valid location; that until such location is terminated by abandonment or forfeiture no right or claim to the property can be acquired by an adverse entry thereon with a view to the relocation thereof. Belk v. Meagher, 104 U.S. 279, 283, 284, 26 L.Ed. 735. | The burden of proving an abandonment of a mining claim, or that the required annual assessment work has not been done, so as to render it subject to relocation, rests on the party asserting it, and the proof must be clear and convincing to establish a forfeiture. | Can a forfeiture of a mining claim be established upon clear and convincing proof of the failure of the former owner to have work performed? | Mines and Minerals - Memo #294 - C - EB_57486.docx | ROSS-003279760-ROSS-003279761 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 12631 | Corkum v. Clark, 263 Mass. 378 | 296+7 | Pensions of this nature are in the eye of the law free gifts from the government. They may be awarded to such individuals, to be ascertained in such way and granted upon such terms, as the Congress may prescribe. Walton v. Cotton, 19 How. 355, 358, 15 L. Ed. 658; United States v. Teller, 107 U. S. 64, 68, 2 S. Ct. 39, 27 L. Ed. 352; Frisbie v. United States, 157 U. S. 160, 166, 15 S. Ct. 586, 39 L. Ed. 657. Where the law provides that claims for pensions are to be finally determined by administrative officers, that is the exclusive remedy. United States v. Babcock, 250 U. S. 328, 331, 39 S. Ct. 464, 63 L. Ed. 1011. See Tutun v. United States, 270 U. S. 568, 576, 46 S. Ct. 425, 70 L. Ed. 738. The remedies provided by the pension acts here pertinent are exclusive and final, and not open to review in federal courts. As to the "World War Adjusted Compensation Act," it is provided by the Act of July 3, 1926, c. 751, " 4(b), 44 U. S. Stats. at Large, 826: | Remedy under law authorizing pensions, providing determination of claims by administrative officers, is exclusive. | "When the law provides that claims for pensions are to be finally determined by administrative officers, is that the exclusive remedy?" | Pension - Memo 60 - RK_57646.docx | ROSS-003279174-ROSS-003279175 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 12632 | Hare v. First Nat. Bank, 272 S.W. 261 | 296+9 | This judgment cannot be sustained. Under article 6267 et seq., Revised Civil Statutes, Confederate pensions are granted only to veterans who are now indigent, and then only on the strictest showing of indigency. It was the purpose of the people in granting to these old men this periodical allowance to provide for them a continuing means of support, and to relieve, to some extent, the necessities of their poverty. The relief was not granted in a present sum paid at the time the pension was allowed, but in periodical payments in order that it might be used by them as an insurance against destitution. It is easy to see how great abuses would follow, if they were permitted to mortgage or assign their claim or interest in future unmatured payments. The very purpose of the Pension Act might, and doubtless in many cases would, be defeated. This case affords an instance. Here, by borrowing only $17.75 on the faith of his pension warrant, this old veteran has been adjudged to pay not only the original loan, but an additional sum of $20 as attorneys' fees. If such a contract could be sustained as against the pension for one quarter, it could be made to cover all future payments. There would be a constant temptation to anticipate all future payments under the stress of need of the present moment, thereby defeating the very purposes of the Pension Act. Because of the conditions under which the laws of this state extend aid to its old and poor veterans, it is our opinion that all contracts of whatever nature and character, having for their purpose the impounding of unmatured pensions and limiting the rights of pensioners to receive their warrants as and when forwarded to them by the proper officers, and to appropriate and use the proceeds thereof, untrammeled by any contractual obligation, should be held void as against the public policy of this state. | Mortgages or other contracts limiting pensioners' rights to receive and use proceeds of warrants void. | Are contracts or arrangements limiting a pensioners or a public officers rights to receive and use proceeds of warrants void? | 022856.docx | LEGALEASE-00147856-LEGALEASE-00147857 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 12633 | Orgain v. Butler, 478 S.W.2d 610 | 302+49 | In general it may be said that a plaintiff is required only "to make a concise statement of the facts upon which he relies and the court will grant the proper relief." Texas Power & Light Co. v. Hilltop Baking Co., 78 S.W.2d 718 (Tex.Civ.App. Waco 1935, writ dsmd .). In a suit for money had and received the plaintiff need show only that the defendant holds money which in equity and good conscience belongs to the plaintiff. Staats v. Miller, 150 Tex. 581, 243 S.W.2d 686, 687 (1951). | Plaintiff, in pleading, is only required to make concise statement of facts on which he relies, and court will then grant proper relief. | Is a plaintiff only required to make a concise statement of the facts upon which he relies? | 023581.docx | LEGALEASE-00147610-LEGALEASE-00147611 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 12634 | Brown v. Kidney & Hypertension Assocs., L.L.P., 5 So. 3d 258 | 307A+590.1 | We find no merit in this argument, as it is clear from a plain reading of LSA"C.C.P. art 561 that mere "contact" with opposing counsel is insufficient to prevent abandonment of an action. A litigant must take some "step" in the prosecution or defense of the case in the trial court that hastens the case toward judgment See Lemlem v. Adams, 2004"0281, p. 4 (La.App. 1 Cir. 2/11/05), 906 So.2d 481, 483"84; Breaux v. Auto Zone, Inc., 2000"1534 at p. 3, 787 So.2d at 324. Neither the action by Dr. Brown's husband before the ODC, nor the simple correspondence between opposing counsel in this case constitute a "step" in the prosecution of this case. | Mere contact with opposing counsel is insufficient to prevent abandonment of an action; a litigant must take some step in the prosecution or defense of the case in the trial court that hastens the case toward judgment. LSA-C.C.P. art. 561. | Is mere contact with opposing counsel insufficient to prevent abandonment of an action? | Pretrial Procedure - Memo # 7614 - C - RY.docx | ROSS-003286349-ROSS-003286350 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12635 | Leetaru v. Bd. of Trustees of Univ. of Illinois, 2015 IL 117485 | 307A+686.1 | In undertaking our analysis, we begin by clarifying what is and is not before us. Central to this appeal is the fact that it arises from the circuit court's ruling on a motion to dismiss pursuant to section 2"619 of the Code of Civil Procedure (735 ILCS 5/2"619 (West 2010)). A motion to dismiss under section 2"619 admits the sufficiency of the complaint, but asserts affirmative matter that defeats the claim. Bjork v. O'Meara, 2013 IL 114044, 369 Ill.Dec. 313, 986 N.E.2d 626. | A motion to involuntarily dismiss based upon certain defects or defenses admits the sufficiency of the complaint, but asserts affirmative matter that defeats the claim. S.H.A. 735 ILCS 5/2-619. | Will a motion to involuntarily dismiss assert affirmative matter that defeats the claim? | 11020.docx | LEGALEASE-00094224-LEGALEASE-00094225 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 12636 | Lewis v. Morgan, 79 So. 3d 926 | 307A+561.1 | A trial court's ruling on a motion to dismiss for failure to state a cause of action is reviewable de novo. See Locker v. United Pharm. Group, Inc., 46 So.3d 1126, 1128 (Fla. 1st DCA 2010); Fla. R. Civ. P. 1.140(b). An affirmative defense appearing on the face of a complaint can be grounds for a motion to dismiss under Florida Rule of Civil Procedure 1.140(b). See Fla. R. Civ. P. 1.110(d); see also Se. Integrated Med., P.L. v. N. Fla. Women's Physicians, P.A., 50 So.3d 21, 24 (Fla. 1st DCA 2010); O'Halloran v.PricewaterhouseCoopers LLP, 969 So.2d 1039, 1042 (Fla. 2d DCA 2007). The existence of probable cause to arrest is an affirmative defense to false arrest. See Rivers v. Dillards Dep't Store, Inc., 698 So.2d 1328, 1331 (Fla. 1st DCA 1997). | Affirmative defense appearing on the face of a complaint can be grounds for a motion to dismiss. West's F.S.A. RCP Rules 1.110(d), 1.140(b). | Will an affirmative defense appearing on the face of a complaint be a ground for motion to dismiss? | 11038.docx | LEGALEASE-00094518-LEGALEASE-00094519 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12637 | New Bar Partnership v. Martin, 729 S.E.2d 675 | 307A+561.1 | A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim[,] it will be dismissed. | A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. Rules Civ.Proc., Rule 12(b)(6). | When can a complaint be properly dismissed? | Pretrial Procedure - Memo # 7772 - C - KS.docx | ROSS-003300154-ROSS-003300155 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 12638 | Buss Aluminum Prod. v. Crown Window Co., 651 So. 2d 694 | 307A+590.1 | There is no question that a timely authorized reply to an affirmative defense is a pleading that constitutes record activity. In this case, however, the reply was filed approximately ten months late without leave of court. Moreover, the reply states only that the plaintiff "denies and avoids each and every allegation contained in Defendant's ... affirmative defenses and demands strict proof thereof." It contains no additional factual allegations. | Timely authorized reply to affirmative defense is pleading that constitutes record activity, for purposes of determining whether suit should be dismissed for failure to prosecute. | Is a timely authorized reply to an affirmative defense is a pleading that constitutes record activity? | Pretrial Procedure - Memo # 7776 - C - CK.docx | ROSS-003300165-ROSS-003300166 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 12639 | Fontenot v. Blue Cross Ass'n, 485 So. 2d 1001 | 307A+590.1 | The provisions of that article have been interpreted by our Supreme Court as requiring that some "step" be taken in the prosecution of the lawsuit, that it be done in the trial court, and that it be done within five (5) years of the last "step" taken by either party. Melancon v. Continental Casualty Co., 307 So.2d 308 (La.1975). A party takes a "step" in the prosecution or defense of a suit when he takes formal action, before the court and on the record, intended to hasten the matter to judgment. Chevron Oil v. Traigle, 436 So.2d 530 (La.1983). | A party takes a "step" in a prosecution or defense of a suit within meaning of abandonment of action article (LSA-C.C.P. art. 561) when he takes formal action, before the court or on the record, intended to hasten the matter to judgment. | Is an action taken by any party considered a step under statute governing abandonment of actions? | 036124.docx | LEGALEASE-00148016-LEGALEASE-00148017 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 12640 | Fortune v. Com., 14 Va. App. 225 | 352H+288 | ttempted rape includes the intent to engage in sexual intercourse, and some direct, yet ineffectual, act toward its consummation. Chittum v. Commonwealth, 211 Va. 12, 15, 174 S.E.2d 779, 781 (1970). Specific intent to commit rape may be inferred from conduct if such intent follows naturally from the conduct proven. Green v. Commonwealth, 223 Va. 706, 711, 292 S.E.2d 605, 608"09 (1982). Where the conduct of the accused, under conditions and circumstances described, points with reasonable certainty to a specific intent to commit rape, intent is established. Id. | Where conduct of accused, under conditions and circumstances described, points with reasonable certainty to specific intent to commit rape, intent is established. | Can a defendants specific intent to commit rape be inferred from the circumstances? | 042973.docx | LEGALEASE-00147964-LEGALEASE-00147965 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 12641 | R.W. v. Schrein, 263 Neb. 708 | 352H+190 | Appellants offered no evidence to rebut Schriner's opinion that Schrein's actions were unrelated to any professional medical services and did not constitute "professional negligence." They argue that because the abuse occurred in Schrein's office while he was purporting to examine or treat his patients, it necessarily fell within the coverage for "professional services." However, appellants did not establish any harm attributable to any failure to properly diagnose or treat a medical **515 condition. Rather, their injuries and damages flowed solely from the affirmative acts of abuse and molestation committed by Schrein under the guise of medical examination and treatment. While these circumstances make Schrein's conduct all the more reprehensible, they do not transform his acts of abuse into "professional services" for purposes of the professional liability insurance policy. An intent to inflict injury can be inferred as a matter of law in cases of sexual abuse. State Farm Fire & Cas. Co. v. van Gorder, 235 Neb. 355, 455 N.W.2d 543 (1990). It is clear from the record that when Schrein chose to sexually abuse his patients, he was no longer providing "professional services." See, e.g., St. Paul Fire &c. v. Alderman, 216 Ga.App. 777, 455 S.E.2d 852 (1995) (holding physician's digital penetration and clitoral manipulation of patient during examination for urinary tract infection and leg cyst solely for satisfaction of physician's prurient interests and not "professional services" within meaning of liability insurance policy), and Lindheimer v. St. Paul Fire & Marine Ins., 643 So.2d 636, 639 (Fla.App.1994), (holding oral surgeon's sexual assault of anesthetized patient not causally connected to provision of professional services "regardless of the "pretense of medical care used by the insured to catch his victim unaware" "), cited with approval in Iwanski v. Gomes, 259 Neb. 632, 611 N.W.2d 607 (2000). | An intent to inflict injury can be inferred as a matter of law in cases of sexual abuse. | Can intent to inflict injury be inferred as a matter of law in sexual abuse cases? | 042984.docx | LEGALEASE-00147976-LEGALEASE-00147977 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 12642 | Hormann v. New Hampshire Ins. Co., 236 Kan. 190 | 413+45 | The workers' compensation law has also been held to be contractual in nature, rather than establishing tort liability, with the terms and provisions of the statute being incorporated into the employment contract. Houk v. Arrow Drilling Co., 201 Kan. 81, 91, 439 P.2d 146 (1968); Moeser v. Shunk, 116 Kan. 247, 251, 226 P. 784 (1924). The employee, as well as the employer, is bound by the rules and procedures set forth in the Act. Wilburn v. Boeing Airplane Co., 188 Kan. 722, 729, 366 P.2d 246 (1961); Walz v. Missouri Pac. Rld. Co., 130 Kan. 203, 285 P. 595; and Chappell v. Morris & Co., 118 Kan. 210, 235 P. 117 (1925). | Employee, as well as employer, is bound by rules and procedures set forth in the Workmen's Compensation Act. K.S.A. 44-501 et seq. | "Are parties to employment contracts bound by the remedies, rules, and procedures set forth by the Workers Compensation Act?" | 11454.docx | LEGALEASE-00094746-LEGALEASE-00094747 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12643 | State v. Travelers Ins. Co., 70 Conn. 590 | 24+125 | Regarding the shareholders in question simply as so many persons residing without this state, there can be no ground for claiming that they cannot be charged with the tax in controversy by reason of the declaration in the fourteenth amendment to the constitution that no state shall deny to any person within its jurisdiction the equal protection of the laws. This inhibition is only for the benefit of persons who are physically present within the territorial jurisdiction of the state, the protection of whose laws they invoke. YickWo v. Hopkins, 118 U. S. 356, 369, 6 Sup. Ct. 1064. The same is true of the act of congress (Rev. St. U. S. " 1977), passed under the authority of the fourteenth amendment, by which it is provided that "all persons within the jurisdiction of the United States shall have the same right in every state to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like taxes, licenses, and exactions of every kind, and to no other." The rights thus secured are those only of persons who at the time are within the jurisdiction-that is, within the territory or under the flag-of the United States. A state has a right to debar aliens (and, as has been stated, it does not appear that any Americans are among the nonresident stockholders in the defendant company) from holding shares in her corporations, or to admit them to that privilege only on such terms as she may prescribe. | A state has a right to debar aliens from holding stock in its corporations, or to admit them to that privilege only on such terms as it may prescribe. | Does a state have a right to debar or admit aliens from holding shares in her corporations? | Aliens_Immigration and_1qzq_IBz1xtMW1-c6arVVDtSBstCAu3Wr.docx | ROSS-000000298-ROSS-000000299 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 12644 | Katsoris v. WME IMG, 237 F. Supp. 3d 92 | 25T+182(1) | The "strong federal policy favoring arbitration ... ha[s] led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration." Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 1995). As the Second Circuit has repeatedly emphasized, "waiver of the right to arbitration is not to be lightly inferred." Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 104"105 (2d Cir. 2002) (per curiam) (citation omitted); see also PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997). But "there is nothing irrevocable about an agreement to arbitrate," and "under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration." | There is nothing irrevocable about an agreement to arbitrate, and under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration. | Is there anything irrevocable about an agreement to arbitrate? | Alternative Dispute Resolution - Memo 783 - RK.docx | LEGALEASE-00037924-LEGALEASE-00037926 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 12645 | Hill v. Ricoh Americas Corp., 603 F.3d 766 | 25T+182(1) | Another important consideration is maintenance of the combined efficiency of the public and private dispute-resolution systems. See Menorah Ins. Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 223 (1st Cir.1995) ("[n]either efficiency nor economy [would be] served" by allowing party to invoke its right to arbitrate after refusing to arbitrate, permitting default judgment to be rendered against it in a foreign jurisdiction, and invoking its arbitration agreement only when judgment holder sought judicial enforcement of the foreign judgment); Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir.1995) ("Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution.")Three of the Peterson factors"(2) substantial progress in the litigation, (3) an imminent trial, and (5) substantial use of discovery procedures"can be significant in deciding whether the court should find waiver because of the inefficiencies that would result from ordering arbitration. | An important consideration in determining whether a party has waived its right to arbitration is maintenance of the combined efficiency of the public and private dispute-resolution systems. | Is maintenance of the combined efficiency of the public and private dispute-resolution systems an important consideration? | 007912.docx | LEGALEASE-00148999-LEGALEASE-00149000 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 12646 | Yeoman v. United States, 400 F.2d 793 | 34+20.6(6) | Appellant's contention that a prima facie case was made has some logical appeal. The issue is complicated somewhat by the fact that all Jehovah's Witnesses consider themselves to be ministers of their faith; however, Congress intended the exemption to be extended only to the leaders of the various faiths and not to members generally. Dickinson v. United States,346 U.S. 389, 395, 74 S.Ct. 152, 156, 98 L.Ed. 132. The Court in the cited case states:"Each registrant must satisfy the Act's rigid criteria for the exemption. Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under " 6(g). These activities must be regularly performed. They must, as the statute reads, comprise the registrant's "vocation." And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption.' | Exemption from armed service for ministers is to be extended only to leaders of various faiths and not to members generally. Universal Military Training and Service Act, S 1 et seq., 50 U.S.C.A. App. S 451 et seq. | Is exemption from the armed service for ministers extended only to leaders of various faiths and not to members generally? | Armed Services - Memo 312 - RK_58126.docx | ROSS-003278996-ROSS-003278997 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 12647 | Farmers State Bank v. Doering, 80 Ill. App. 3d 959 | 8.30E+52 | Second, the guaranty terms in the present case are not as sweeping as those in Fannin. Each printed guaranty begins by guaranteeing "any and all indebtedness, liabilities and obligations of every nature." Taken by itself, this would arguably extend each guarantor's liability to cover secondary obligations of the principal debtor. However, this broad coverage is qualified by the typewritten phrase "all notes of indebtedness." By definition, a "note" is a unilateral instrument containing an express and absolute promise of signer to pay a specified person or order, or bearer, a definite sum of money at a specified time. (Black's Law Dictionary, 956 (Rev. 5th Ed. 1979.) This is a primary obligation and would not include a debtor's secondary liabilities accruing under a guaranty agreement. | A "note" is a unilateral instrument containing an express and absolute promise of signer to pay a specific person or order, or bearer, a definite sum of money at a specified time. | "How is a note reffered to as,under the law?" | 010565.docx | LEGALEASE-00148707-LEGALEASE-00148708 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12648 | Empire Millwork Corp. v. Lapides, 155 F. Supp. 765 | 195+47 | Sec. 120 of the Uniform Negotiable Instruments Act (Ann.Code of Maryland, Art. 13, sec. 140) provides:A person secondarily liable on the instrument is discharged: " By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." Since that section relates expressly to persons secondarily liable, it has been held that it has no application to a guarantor of a note whose liability has become absolute by reason of the maker's default in payment. 8 Am.Jur., Bills and Notes, " 800. | Under the Uniform Negotiable Instruments Act providing that a holder may retain his right of action against a party secondarily liable even without his consent, fact that composition agreement extended time for payment on note by the primary obligor did not also operate to extend time for payment by the indorser-guarantor until the same date. Code Md.1951, art. 13, S 140(6). | When can a person secondarily liable discharged? | 010576.docx | LEGALEASE-00148480-LEGALEASE-00148481 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 12649 | Jackson Bros. v. Harpeth Nat. Bank, 12 Tenn. App. 464 | 83E+401 | A note may be assigned in parol, without endorsement, by mere delivery alone."Where the holder of an instrument transfers it for value, without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, but subject to defenses good against the transferrer; and the failure of consideration is a good defense." Landis v. White Brothers, 127 Tenn., 504, 152 S. W., 1031; Furst v. Freels, 9 Tenn. App., 433. | Where the holder of an instrument transfers it for value, without indorsing it, the transfer vests in the transferee such title as the transferer had therein, but subject to defenses good against the transferer; and failure of consideration is a good defense. | Does the transferee become the owner subject to all defenses enforceable against the transferor? | 010591.docx | LEGALEASE-00148332-LEGALEASE-00148333 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 12650 | Clark v. Peabody, 22 Me. 500 | 83E+501 | The ratification by the payee of a note of an indorsement thereof, made by one assuming to act as his agent without authority from him, can operate only as an indorsement made at the time of the ratification. | The ratification by the payee of an indorsement made thereon by one assuming to act as his agent without authority operates as an indorsement only from the time of the ratification. | How does ratification of an indorsement without authority by payee operate? | Bills and Notes -Memo 702-DB_58207.docx | ROSS-003307390-ROSS-003307391 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 12651 | In Interest of M.M., 571 So. 2d 112 | 67+7 | Appellant was charged with and convicted of attempted residential burglary. At the end of the state's case and again at the close of the evidence, appellant moved for judgment of acquittal. The trial court denied the motion. A motion for judgment of acquittal challenges the legal sufficiency of the evidence. The standard for this court's review is whether there is substantial competent evidence to support the verdict. Williams v. State, 386 So.2d 538 (Fla.1980). A conviction for the crime of burglary requires proof of three essential elements: (1) knowing entry into a structure; (2) knowledge that such entry is without permission; and (3) criminal intent to commit an offense within such structure. " 810.02, Fla.Stat. (1989). Additionally, ownership of the building or structure is a material element of the crime and must be proven as alleged in order to support a conviction for burglary. Smith v. State, 96 Fla. 30, 117 So. 377 (1928); Sifford v. State, 202 So.2d 14 (Fla.1967); In the Interest of M.E., 370 So.2d 795 (Fla.1979); Kirkland v. State, 366 So.2d 871 (Fla. 4th DCA 1979) (failure to plead and prove ownership is fatal to the state's case on burglary). | Ownership of building or structure is material element of burglary and must be proven as alleged in order to support conviction. West's F.S.A. S 810.02. | Is ownership of the building or structure a material element of burglary? | Burglary - Memo 267 - RK_58149.docx | ROSS-003307882-ROSS-003307883 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12652 | Newman v. RAG Wyoming Land Co, 53 P.3d 540 | 260+55(5) | On the basis of the unambiguous language of the deed and the surrounding facts and circumstances, we conclude the parties generally intended the coal to be conveyed and the gas, wherever it may be located within the property, to be reserved to the landowners. Coalbed methane, being a gas, remained the landowners' property. By this ruling, we do not intend to imply that, in all circumstances, the conveyance of coal excludes the conveyance of the coalbed methane. Parties can certainly sever the coalbed methane from the remainder of the oil and gas estate and convey it separately. Such an explicit severance occurred in this case when the oil and gas lessee vertically segregated its oil and gas leasehold interest and assigned from the surface to 1,000 feet beneath the surface, which contained the coal seam, to Hi-Pro. However, the warranty deed from the landowners to the coal operator in this case, which conveyed "all coal and minerals commingled with coal that may be mined or extracted in association therewith or in conjunction with such coal operations" but reserved all oil and gas, did not accomplish such a segregation. | Parties can sever coalbed methane from remainder of oil and gas estate and convey it separately. | Can parties sever the coalbed methane from the remainder of the oil and gas estate? | Mines and Minerals - Memo #262 - C - CSS_57983.docx | ROSS-003282223-ROSS-003282224 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12653 | Hovden v. Lind, 301 N.W.2d 374 | 260+55(5) | We accept arguendo that the reservation of minerals is a substantive component in a land conveyance, and therefore ambiguity surrounding the parties' intent may make the purported agreement unenforceable. We conclude, however, that no ambiguity afflicts the expression "all other minerals." Though the word "minerals" has varying definitions, 58 C.J.S. Mines and Minerals s 2(a), p. 17, this court, prior to the enactment of s 47-10-25, held in Salzseider v. Burnsdale, 94 N.W.2d 502 (N.D.1959), that the term did not, in a reservation clause, include gravel. We believe this precedent applies to materials like clay and scoria also. A reasonable construction of the word "minerals" as used in a land sale contract excludes clay and scoria, as well as gravel. The rationale for similar holdings in other cases is that these substances, if they are not literally part of the surface itself, cannot be removed without damaging the surface. Reinforcing this reasoning in the instant case is parol evidence reflecting actual intent offered by the parties. The Linds objected to a reservation of coal specifically because mining of its foreseeably would destroy their interest in the surface. Furthermore, we concur in the notion that materials like gravel, clay and scoria are not ordinarily classified as minerals because they are not exceptionally rare and valuable. See Annotation, 95 ALR2d 843, ss 4, 5, 6; see also, e. g., Holland v. Dolese Company, 540 P.2d 549 (Okl.1975). These authorities support Salzseider and we therefore extend the reasoning of that case to clay and scoria. | The term "minerals" as used in a reservation clause in a land sale contract excludes clay and scoria, as well as gravel. | "Does the word mineral in a land sale contract exclude gravel, clay, and scoria?" | Mines and Minerals - Memo #265 - C - CSS_57986.docx | ROSS-003282443-ROSS-003282444 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12654 | Dye v. Duncan, Dieckman & Duncan Min. Co., 164 F. Supp. 747 | 260+23(1) | To the best of its ability the Court has considered, sifted, and weighed the evidence in the case and has made its findings of fact in accordance with its best judgment. There is no particular mystery concerning the law to be applied to the facts found by the Court. A valid location of a mining claim requires three things, i.e., discovery of a vein or lode of ore, marking of the boundaries of the claim encompassing the lode of ore, and the giving of notice of the location. Featherston v. Howse, D.C.W.D.Ark., 151 F.Supp. 353, 358; George Rose Smith, "Arkansas Mining and Mineral Law," pp. 18-19. To avoid forfeiture of a claim the locator or his agent must perform the annual labor. 30 U.S.C.A. " 28. | In order to avoid forfeiture of a mining claim, the locator or his agent must perform annual labor. 30 U.S.C.A. S 28. | "To avoid forefeiture of a claim and maintain a state mining claim, must the locator or claim holder perform annual labor?" | Mines and Minerals - Memo #331 - C - EB_57996.docx | ROSS-003292433-ROSS-003292434 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 12655 | Saul v. Cahan, 153 A.D.3d 947 | 302+18 | The Supreme Court properly granted that branch of Cahan's motion which was to dismiss the cause of action to recover damages for breach of fiduciary duty for failure to state a cause of action. "The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct" (Rut v. Young Adult Inst., Inc., 74 A.D.3d 776, 777, 901 N.Y.S.2d 715; see Litvinoff v. Wright, 150 A.D.3d 714, 54 N.Y.S.3d 22; Stortini v. Pollis, 138 A.D.3d 977, 978"979, 31 N.Y.S.3d 90; Deblinger v. Sani"Pine Prods. Co., Inc., 107 A.D.3d 659, 660, 967 N.Y.S.2d 394). "A cause of action sounding in breach of fiduciary duty must be pleaded with particularity under CPLR 3016(b)" (Swartz v. Swartz, 145 A.D.3d 818, 823, 44 N.Y.S.3d 452; see Deblinger v. Sani"Pine Prods. Co., Inc., 107 A.D.3d at 660, 967 N.Y.S.2d 394). | A cause of action sounding in breach of fiduciary duty must be pleaded with particularity. McKinney's CPLR 3016(b). | Should a cause of action for breach of fiduciary duty be pleaded with particularity? | 023592.docx | LEGALEASE-00148534-LEGALEASE-00148535 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12656 | Bright v. Frank Russell Investments, 191 Wash. App. 73 | 302+20 | We also note that Bright raised two legal theories for why her discharge was discriminatory and prevailed on only one. But "[l]itigants in good faith may raise alternative legal grounds for a desired outcome." The legal theories were sufficiently related to justify the award. | Litigants in good faith may raise alternative legal grounds for a desired outcome. | Can litigants in good faith raise alternative legal grounds for a desired outcome? | Pleading - Memo 474 - RMM.docx | LEGALEASE-00038555-LEGALEASE-00038556 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 12657 | Gambino v. Standard Fire Ins. Co., 12-474 (La. App. 5 Cir. 2/21/13) | 307A+590.1 | "A "step" is a formal action before the court intended to hasten the suit towards judgment or is the taking of formal discovery. A step by one party prevents abandonment as to all of the parties, even though they are not solidarily liable."(Internal citations omitted.) Id. | A step by one party prevents abandonment of a suit for lack of prosecution as to all of the parties, even though they are not solidarily liable. LSA-C.C.P. art. 561. | Does a step by one party prevent abandonment of a suit for lack of prosecution as to all of the parties? | 035051.docx | LEGALEASE-00148312-LEGALEASE-00148313 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 12658 | Berde v. N. Shore-Long Island Jewish Health Sys., 98 A.D.3d 932 | 307A+590.1 | Where a case is not marked off or stricken from the trial calendar, but is removed from the calendar for another reason, CPLR 3404 does not apply (see Santana v. Vargas, 77 A.D.3d 648, 907 N.Y.S.2d 884; Freitas v. New York City Tr. Auth., 297 A.D.2d 270, 271, 746 N.Y.S.2d 844; Hernandez v. City of New York, 290 A.D.2d 416, 736 N.Y.S.2d 604). Here, CPLR 3404 is inapplicable as the action was not marked off or stricken from the trial calendar, but was simply marked "disposed" because the defendant's cross motion for summary judgment had been granted. | Where a case is not marked off or stricken from the trial calendar, but is removed from the calendar for another reason, the case is not subject to dismissal as an abandoned case. McKinney's CPLR 3404. | "Where a case is not marked off or stricken from the trial calendar, is the case not subject to dismissal as an abandoned case?" | 035067.docx | LEGALEASE-00148382-LEGALEASE-00148383 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 12659 | Louisiana Dep't of Transp. & Dev. v. Bayou Fleet, 37 So. 3d 1066 | 307A+590.1 | Paragraph B of La. C.C.P. art. 561 provides, "Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action." (Emphasis added.) Any formal discovery in a case is considered a step in the prosecution, whether or not filed in the record, provided it has been served on all the parties. Brown, 08"0919 at p. 9, 5 So.3d at 266. | Any formal discovery in a case is considered a step in the prosecution, as required to avoid dismissal for abandonment, whether or not filed in the record, provided it has been served on all the parties. LSA-C.C.P. art. 561. | Is any formal discovery in a case considered a step in the prosecution? | Pretrial Procedure - Memo # 7787 - C - PC_57812.docx | ROSS-003279360-ROSS-003279361 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 12660 | Mullarkey v. Florida Feed Mills, 268 So. 2d 363 | 413+19 | Third, the concept of exclusiveness of remedy embodied in Fla.Stat. s 440.11, F.S.A. appears to be a rational mechanism for making the compensation system work in accord with the purposes of the Act. In return for accepting vicarious liability for all work-related injuries regardless of fault, and surrendering his traditional defenses and superior resources for litigation, the employer is allowed to treat compensation as a routine cost of doing business which can be budgeted for without fear of any substantial adverse tort judgments. Similarly, the employee trades his tort remedies for a system of compensation without contest, thus sparing him the cost, delay and uncertainty of a claim in litigation. | Concept of exclusiveness of remedy embodied in workmen's compensation statute providing that the Act is the exclusive source of liability of the employer if the employee has accepted the Act is a rational mechanism for making the compensation system work in accord with the purposes of the Act since, in return for accepting vicarious liability for all work-related injuries regardless of fault, and surrendering his traditional defenses and superior resources for litigation, employer is allowed to treat compensation as a routine cost of doing business, while employee trades his tort remedies for a system of compensation without contest, thus sparing him the cost, delay and uncertainty of a claim in litigation. F.S.A. S 440.11. | What does the employee relinquish or trade for compensation? | 048354.docx | LEGALEASE-00148729-LEGALEASE-00148730 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 12661 | Randall v. Chrysler Corp., 135 Mich. App. 415 | 413+2 | It is apparently plaintiff's position that King precludes limiting or abridging increases in benefits for totally and permanently disabled employees. We disagree. In our view, King represents nothing more than a construction of the then existing provision of the worker's compensation statute. The King decision does not suggest that increases in the rate of differential benefits may not be limited by the Legislature. Rights to benefits under the workers' compensation scheme are purely statutory, and the Legislature has the prerogative to redefine the extent of those benefits. Kunde v. Teesdale Lumber Co., 52 Mich.App. 360, 371, 217 N.W.2d 429 (1974), lv. den. 391 Mich. 841 (1974); McKenna v. Chevrolet-Saginaw Grey Iron Foundry, 63 Mich.App. 365, 373"374, 234 N.W.2d 526 (1975), lv. den. 395 Mich. 827 (1976). | Rights to benefits under the workers' compensation scheme are purely statutory and the legislature has the prerogative to redefine the extent of those benefits. | Does the Legislature have the prerogative to redefine the extent of workers compensation benefits? | 048358.docx | LEGALEASE-00148737-LEGALEASE-00148738 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12662 | State v. Smith, 10 R.I. 258 | 18+4 | The counsel for the defendant further asked the court to charge the jury that there must be evidence of a guilty intent on the part of the defendant, and of a guilty knowledge, in order to convict him, which requests the court refused. Our statute, in that provision of it under which this indictment was found, does not essentially differ from the statute of Massachusetts, and in Massachusetts, previous to the enactment of our statute, the Supreme Judicial Court had determined that a person might be convicted although he had no knowledge of the adulteration; the intent of the legislature being, that the seller of milk should take upon himself the risk of knowing that the article he offers for sale is not adulterated. Commonwealth v. Farren, 9 Allen, 489. We think our statute should receive the same construction, and that consequently the exceptions based upon the refusal of these requests should be overruled. | Under Rev.St. c. 829, S 4, providing for punishment of one selling adulterated milk, the seller of milk takes upon himself the risk of knowing that the article which he offers for sale is not adulterated, rendering it unnecessary to show a guilty intent or knowledge. | "In a prosecution for adulteration, is it the responsibility or the risk of the vendor or a seller to know about the articles he sells or deals with? " | Adulteration- Memo 56-_1Uo8Cz-0KWvopkJL3D0IuUm_FCSV36g7Z.doc | ROSS-000000137-ROSS-000000138 | Condensed, Order, SA, Sub | 0.71 | 1 | 1 | 1 | 1 | 1 |
| 12663 | In re Woodberry, 383 B.R. 373 | 83E+426 | When a negotiable note payable to order is indorsed generally by the payee the note and its incidents pass in the commercial world by delivery. Dearman v. Trimmier, 26 S.C. 506, 2 S.E. 501; Carpenter v. Longan, 83 U.S. 271, 16 Wall. 271, 21 L.Ed. 313 (1872); Bailey v. Seymour, 42 S.C. 322, 20 S.E. 62 (1894); Patterson v. Rabb, 38 S.C. 138, 17 S.E. 463, 19 L.R.A. 831; Bank v. Chambers, 11 Rich. 657 .... There is no law in this State that requires assignments of mortgages to be recorded. | Under South Carolina law, when a negotiable note payable to order is endorsed generally by the payee, the note and its incidents pass in the commercial world by delivery. | How a negotiable note payable to order is passed in the commercial world? | Bills and Notes -Memo 983-DB_58713.docx | ROSS-003308329 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 12664 | Sterling & Snapp v. Bender, 7 Ark. 201 | 83E+426 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. Chit. on bills 253. By the indorsement the payee divests himself of the legal interest in the bill or note, and it is vested by the delivery in the holder. Wilkinson v. Nicklin, 2 Dall. Rep. 296. An endorsement in blank constitutes a complete and perfect transfer of the interest in the bill or note, and without the addition of any other words, will vest the right of action and all other rights in the transferee and subsequent holders: though if the transferee be a mere agent, his principal may interfere, and a blank indorsement is now considered as prima facie a transfer of the interest until the contrary be established by showing that it was a mere deposit, and is of itself sufficient to transfer the right of action to any bona fide holder. Chitty on Bills, 255. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | Can a bill or note indorsed in blank is payable to bearer? | Bills and Notes -Memo 993-DB_58717.docx | ROSS-003307269-ROSS-003307270 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12665 | Guernsey v. Imperial Bank of Canada, 188 F. 300 | 8.30E+14 | The laws of the place where the indorsement is signed or is delivered so that it becomes a contract govern the validity and extent of the contract, and therefore the necessity of some presentment, demand, protest, and notice of dishonor. | The laws of the place where an indorsement is signed or is delivered so that it becomes a contract govern the necessity of some presentment, demand, and notice of dishonor. | Does the law of the place where the indorsement is signed govern the validity? | Bills and Notes-Memo-1040-SB_60165.docx | ROSS-003321753-ROSS-003321754 | Condensed, SA | 0.27 | 0 | 1 | 0 | 1 | |
| 12666 | Secy. of Veterans Affairs v. Leonhardt, 2015-Ohio-931 | 83E+426 | Accordingly, the VA proved by a preponderance of the evidence that it was entitled to recover under the lost note. First, the VA established that it was in possession of the note and entitled to enforce it when the note was lost because it was the holder of the note. See R.C. 1303.31(A)(1) (a person entitled to enforce an instrument is a holder of that instrument). "A "holder" includes a person who is in possession of an instrument payable to bearer." (Emphasis added.) HSBC Mtge. Servs., Inc. v. Watson, 3d Dist. Paulding No. 11"14"03, 2015-Ohio-221, 2015 WL 308259, " 25, citing BAC Home Loans Servicing, L.P. v. Haas, 3d Dist. Marion No. 9"13"40, 2014-Ohio-438, 2014 WL 538668, " 27, citing U.S. Bank, N.A. v. Kamal, 7th Dist. Mahoning No. 12 MA 189, 2013-Ohio-5380, 2013 WL 6500128, " 18 and R.C. 1301.01(T)(1)(a).8 "A "blank indorsement" is "an indorsement that is made by the holder of the instrument that is not a special indorsement." "Watson at " 25, citing R.C. 1303.25(B). " "When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." " Id., citing R.C. 1303.25(B) and Wells Fargo Bank, N.A. v. Byers, 10th Dist. Franklin No. 13AP"767, 2014-Ohio-3303, 2014 WL 3740328, " 14 ("A blank indorsement makes the instrument payable to the bearer pursuant to R.C 1303.25(B)."). | When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed. R.C. S 1303.25(B). | Is a note indorsed in blank payable to its bearer? | Bills and Notes-Memo 92-PR_58232.docx | ROSS-003324841-ROSS-003324842 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12667 | Putnam v. Shoaf, 620 S.W.2d 510 | 289+559 | First, we must discover the nature of the ownership interest of Mrs. Putnam in that which she conveyed. Under the Uniform Partnership Act, T.C.A. s 61-1-101 through s 61-1-142, et seq., her partnership property rights consisted of her (1) rights in specific partnership property, (2) interest in the partnership and (3) right to participate in management. T.C.A. s 61-1-123. The right in "specific partnership property" is the partnership tenancy possessory right of equal use or possession by partners for partnership purposes. This possessory right is incident to the partnership and the possessory right does not exist absent the partnership. The possessory right is not the partner's "interest " in the assets of the partnership. T.C.A. s 61-1-124. The real interest of a partner, as opposed to that incidental possessory right before discussed, is the partner's interest in the partnership which is defined as "his share of the profits and surplus and the same is personal property." T.C.A. s 61-1-125. Therefore, a co-partner owns no personal specific interest in any specific property or asset of the partnership. The partnership owns the property or the asset. T.C.A. s 61-1-107. The partner's interest is an undivided interest, as a co-tenant in all partnership property. T.C.A. s 61-1-124. That interest is the partner's pro rata share of the net value or deficit of the partnership. T.C.A. s 61-1-125. For this reason a conveyance of partnership property held in the name of the partnership is made in the name of the partnership and not as a conveyance of the individual interests of the partners. See T.C.A. s 61-1-107. | An individual's right in specific partnership property is the partnership tenancy possessory right of equal use or possession by partners for partnership purposes; that possessory right is incident to the partnership and the possessory right does not exist in the absence of the partnership; the possessory right is not the partner's interest in the assets of the partnership as the real interest of the partner is his share of the profits and surplus. T.C.A. SS 61-1-123 to 61-1-125. | Is the partners interest in the partnership his share of the profits and surplus? | Partnership - Memo 483 - RK_58655.docx | ROSS-003284691-ROSS-003284693 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12668 | James River Equip. v. Mecklenburg Utilities, 179 N.C. App. 414 | 302+53(1) | Next, we address plaintiff's argument that the trial court erred in dismissing its claims against the Board and Mecklenburg based in quantum meruit. As discussed in James River I, we conclude that there is no civil remedy available against the Board. Regarding Mecklenburg, we note that "[t]here cannot be an express and an implied contract for the same thing existing at the same time." Vetco Concrete Co. v. Troy Lumber Co., 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962). "It is only when parties do not expressly agree that the law interposes and raises a promise." Id. Here, the plaintiff's own complaint alleges that there was an express contract between Tharpe's and Mecklenburg, but the allegations of the claim in quantum meruit are asserted "in the alternative to" the express contract claim. It is well-established that "[l]iberal pleading rules permit pleading in the alternative," and that theories may be pursued in the complaint even if plaintiff may not ultimately be able to prevail on both. Catoe v. Helms Const. & Concrete Co., 91 N.C.App. 492, 498, 372 S.E.2d 331, 335 (1988); Concrete Serv. Corp. v. Investors Group, Inc., 79 N.C.App. 678, 684, 340 S.E.2d 755, 759 (1986) ("There is no requirement that all claims be legally consistent"); N.C. Gen.Stat. " 1A"1, Rule 8(e)(2) (2003). We conclude that the trial court erred in dismissing plaintiff's claims in quantum meruit. | Liberal pleading rules permit pleading in the alternative, and alternative theories may be pursued in the complaint even if plaintiff may not ultimately be able to prevail on both. Rules Civ.Proc., Rule 8(e)(2), West's N.C.G.S.A. S 1A-1. | Do liberal pleading rules permit pleading in the alternative? | Pleading - Memo 483-RMM_58678.docx | ROSS-003278391-ROSS-003278392 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 12669 | West v. Robinson, 486 S.W.3d 669 | 307A+622 | When we review the legal question whether a suit lacks an arguable basis in law, we apply a de novo standard of review. See Hamilton v. Pechacek, 319 S.W.3d 801, 809 (Tex.App."Fort Worth 2010, no pet.) (so explaining as to Chapter 14). A claim has no arguable basis in law if it relies on an indisputably meritless legal theory. Hamilton v. Williams, 298 S.W.3d 334, 339 (Tex.App."Fort Worth 2009, pet. denied). For our review, we accept as true the factual allegations of the Wests' petition. Pechacek, 319 S.W.3d at 809. | A claim filed in forma pauperis has no arguable basis in law, warranting dismissal without a hearing, if it relies on an indisputably meritless legal theory. Tex. Civ. Prac. & Rem. Code Ann. S 13.001. | Does a claim have any arguable basis in law if it relies on an indisputably meritless legal theory? | Pretrial Procedure - Memo # 7976 - C - SU_58338.docx | ROSS-003279515-ROSS-003279516 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 12670 | Ashcroft v. Iqbal, 556 U.S. 662 | 170A+1772 | Second, only a complaint that states a plausible claim for relief survives amotion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states aplausible claim for relief will, as the Court of Appeals observed, be a context-specific taskthat requires the reviewing court to draw on its judicial experience and common sense.490 F.3d, at But where the well-pleaded facts do not permit the court to infer morethan the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). | To survive motion to dismiss, complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; claim has "facial plausibility" when plaintiff pleads factual content that allows court to draw reasonable inference that defendant is liable for misconduct alleged. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A. | Only a complaint that states a plausible claim for relief survives a motion to dismiss for failure to state a claim? | Pretrial Procedure - Memo # 7981 - C - CK_58343.docx | ROSS-003281785-ROSS-003281786 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 12671 | Minnesota Humane Soc. v. Minnesota Federated Humane Societies, 611 N.W.2d 587 | 307A+581 | Finally, although a court may strongly encourage and facilitate a settlement, it may not order litigants to settle a case. Cf. Olson v. Lovett, 457 N.W.2d 224, 225 (Minn.App.1990) (acknowledging that, while courts may order parties to participate in nonbinding alternative dispute resolution proceedings, such proceedings are not intended to preclude either parties' access to trial). Because parties to civil litigation have no legal duty to settle, a refusal to do so is not tantamount to a refusal to prosecute. Although a court might sanction a party for conduct in settlement negotiations, the court cannot dismiss a case for refusal to settle. | Because parties to civil litigation have no legal duty to settle, a refusal to do so is not tantamount to a refusal to prosecute. | Is a refusal to settle tantamount to a refusal to prosecute since parties to civil litigation have no legal duty to settle? | Pretrial Procedure - Memo # 8186 - C - RY_58761.docx | ROSS-003282509-ROSS-003282510 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 12672 | Hendriksen v. Young Men's Christian Ass'n of San Diego, 173 Cal. App. 2d 764 | 308+188 | It is difficult to determine from the second cause of action set forth in plaintiff's second amended complaint, upon which this action went to trial, whether or not appellant Y. M. C. A.'s liability was founded upon the doctrine of respondent superior for a recovery or upon a claim of primary negligence of defendant corporation. It might well appear therefrom that plaintiff was relying upon the alleged negligent acts of the agents or employees of appellant corporation Y. M. C. A. because it is stated that the named agents, employees and others of the Y. M. C. A. did the acts and made the omissions referred to, and in so doing they were acting in the course of their employment. If so, plaintiff would be brought under the recognized rule that the liability of a principal for torts committed by his agent without specific authority is secondary, whereas the liability of the agent is primary; that while both principal and agent may be sued in a single action, a verdict exonerating the agent is a declaration that the agent has done no wrong and necessarily exonerates the principal, since the principal cannot be held liable under the doctrine of respondeat superior if the agent has committed no tort; that consequently, where the recovery sought is based upon an agent's act or omission not directed or participated in by his principal, that is, where the principal's responsibility is simply that cast upon him by law by reason of his relation to his agent, a judgment in favor of and exonerating the agent relieves the principal of responsibility and he may avail himself of it for that purpose; that a verdict against the principal alone is not void where the defendant agent is not mentioned therein, since it does not exonerate the agent, but is merely silent as to him; that a judgment exonerating the agent does not relieve the principal of responsibility where the latter is primarily liable, as where his own negligence is the proximate cause of the injury, or where a statute makes him primarily liable. 2 Cal.Jur.2d pp. 853"4, Sec. | Both principal and agent may be sued in single action, but verdict exonerating agent is declaration that agent has done no wrong and necessarily exonerates principal. West's Ann.Civ.Code, SS 2338, 2339. | Is a verdict exonerating the agent a declaration that the agent has done no wrong? | 041380.docx | LEGALEASE-00149835-LEGALEASE-00149836 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 12673 | State v. Tedesco, 175 Conn. 279 | 308+92(1) | It is true that a principal may delegate to an agent all that he himself can do except acts "peculiarly personal" or acts "regulated by statute which are required to be performed personally." Zeeb v. Atlas Powder Co., 32 Del.Ch. 486, 493, 87 A.2d 123, 127; see State ex rel. Hansen v. Schall, 126 Conn. 536, 541-42, 12 A.2d 767; Restatement 2d, Agency, s 17. The taking of an oath is an act which may not be delegated to an agent. By its very definition, an oath must be administered personally. Section 30-39(a)(1) requires that the permittee desiring a renewal shall make a sworn application to the commission clearly an act required by law to be performed personally. | A principal may delegate to agent all that he himself can do except acts peculiarly personal or acts regulated by statute which are required to be performed personally. | Can acts which are required to be performed personally by statute be delegated? | Principal and Agent - Memo 145 - RK_58692.docx | ROSS-003282141 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12674 | State v. Most, 578 N.W.2d 250 | 352H+190 | Under the State's theory, the probative value of Most's prior crimes was enhanced by its relevancy to Most's intent to commit the crimes charged. The intent requisite to conviction for lascivious acts with a child may be inferred from the nature of the act itself and proof of acts of a similar nature is unnecessary. State v. Kinkade, 241 Iowa 1259, 1261, 43 N.W.2d 736, 738 (1950) (citations omitted). The fact Most acted with a specific purpose in mind or intent to commit sexual abuse may be similarly inferred from the facts and circumstances surrounding his actions. State v. Radeke, 444 N.W.2d 476, 478 (Iowa 1989); State v. Rinehart, 283 N.W.2d 319, 321 (Iowa 1979). Evidence sufficient to prove necessary specific intent includes sexual comment, touching in a sexual manner, attempt to remove clothing, or an act in any other way which would indicate a plan to engage in sexual activity. State v. Casady, 491 N.W.2d at 787 (citing State v. Spargo, 364 N.W.2d at 210); State v. Maynard, 379 N.W.2d 382, 383"84 (Iowa App.1985). | The intent requisite to conviction for lascivious acts with a child may be inferred from the nature of the act itself, and proof of acts of a similar nature is unnecessary. I.C.A. S 709.8. | Can intent for lascivious acts with a child be inferred from the nature of the act? | 042992.docx | LEGALEASE-00149798-LEGALEASE-00149799 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 12675 | United States v. Murphy, 556 F. Supp. 2d 1232 | 3.77E+03 | The Fifth Circuit's footnote notwithstanding, no court considering the type of conduct that constitutes intimidation has determined that such conduct is dependent on the subjective mental state of the defendant. It is common knowledge that a person may intimidate another without intentionally making a direct or even veiled threat. See Hicks, supra, 980 F.2d at 973. By simply using the term "intimidate," Congress intended that any act that "would place an ordinary, reasonable person in fear" is sufficient, even if such act was not done with the intent to threaten the flight crew. See id. at 972"73. Thus, although a defendant "internally did not intend to injure or scare anybody" his conduct nonetheless may amount to intimidation if it creates "a reasonable basis in the minds of those around [him] that they were at risk from him." United States v. Gilady, 62 Fed.Appx. 481, 483 (4th Cir.2003) (upholding the ruling of the district court). "In order to prove intimidation within the meaning of " 46504, "it is sufficient that the conduct and words of the accused would place an ordinary, reasonable person in fear." " Id. at 484 (quoting United States v. Meeker, 527 F.2d 12, 15 (9th Cir.1975) (interpreting " 1472)). | A person may intimidate another without intentionally making a direct or even veiled threat. | Can you intimidate someone without actually making a direct or even veiled threat? | "Threats, Stalking, and Harassment- Memo #1 - C - LB_58583.docx" | ROSS-003321189-ROSS-003321190 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12676 | United States v. St. Louis Coffee & Spice Mills, 189 F. 191 | 178+5 | By the word "adulteration," as used in the act, it is understood to mean "to corrupt, debase, or make impure by an admixture of a foreign or a baser substance." How can it be successfully claimed that because the liquid in the bottle offered in evidence did not contain extract of vanilla that it was therefore adulterated within the meaning of the statute? | The word "adulteration," as used in Food and Drugs Act June 30, 1906, c. 3915, S 2, 34 Stat. 768, 21 U.S.C.A. S 2, means to corrupt, debase, or make impure by an admixture of a foreign, or a baser substance. | What is adulteration as used in the Food and Drugs Act (Act)? | Adulteration-Memo 9-PR_1V9XW3o4wtNnOUjhwVdef7Rx1Rt71VTi_.docx | ROSS-000000164-ROSS-000000165 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 12677 | Overton v. Hardin, 46 Tenn. 375 | 83E+467 | An indorser for value, has no remedy against the maker, for costs incurred by him in his own defense. An accommodation indorser, however, may recover from the maker, the costs incurred in resisting, in good faith, and upon reasonable grounds, a recovery against him upon his indorsement: 1 Parsons on Con., 33; Sedgwick on Dam., 297, 335. | An indorser for value, has no remedy against the maker for costs incurred by him in his own defense, but an accommodation indorser may recover from the maker the cost incurred in resisting, in good faith and upon reasonable grounds, a recovery against him upon his indorsement. | Can an accommodation indorser recover from the maker? | Bills and Notes - Memo 791- ANM _58710.docx | ROSS-003283252-ROSS-003283253 | SA, Sub | 0.18 | 0 | 0 | 1 | 1 | |
| 12678 | Hardy v. De Leon, 5 Tex. 211 | 156+22(2) | "A recital of one deed in another binds the parties and those who claim under them by matters subsequent." | A recital of one deed in another binds the parties, and those who claim under them by matters subsequent. | Does a recital of one deed in another bind the parties and those who claim under them by matters subsequent? | Estoppel - Memo #44 - C - CSS_59033.docx | ROSS-003278699 | Condensed, SA | 0.01 | 0 | 1 | 0 | 1 | |
| 12679 | Paso Robles War Mem'l Hosp. Dist. v. Negley, 29 Cal. 2d 203 | 198H+233 | The levy imposed by the Local Hospital District Law is an ad valorem levy on all real and personal property within the district. Health & Safety Code, ss 32200 to 32205. A levy imposed on all of the property in a district, both real and personal, according to its value and not upon the basis of special benefit, is a general tax and not a special assessment. | The Local Hospital District Law, in imposing an ad valorem levy on all real and personal property within district, not upon basis of special benefit, imposes a "general tax" and not a "special assessment". Health and Safety Code, SS 32200-32205. | Can the Special assessments be levied on the basis of special benefit? | 019098.docx | LEGALEASE-00150548-LEGALEASE-00150549 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 12680 | Minnesota Humane Soc. v. Minnesota Federated Humane Societies, 611 N.W.2d 587 | 307A+581 | Finally, although a court may strongly encourage and facilitate a settlement, it may not order litigants to settle a case. Cf. Olson v. Lovett, 457 N.W.2d 224, 225 (Minn.App.1990) (acknowledging that, while courts may order parties to participate in nonbinding alternative dispute resolution proceedings, such proceedings are not intended to preclude either parties' access to trial). Because parties to civil litigation have no legal duty to settle, a refusal to do so is not tantamount to a refusal to prosecute. Although a court might sanction a party for conduct in settlement negotiations, the court cannot dismiss a case for refusal to settle. | Although a court might sanction a party for conduct in settlement negotiations, the court cannot dismiss a case for refusal to settle. | Can a court sanction a party for conduct in settlement negotiations? | Pretrial Procedure - Memo # 8210 - C - RY_58785.docx | ROSS-003282176-ROSS-003282177 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 12681 | Windsor Realty & Mgt. v. Ne. Ohio Reg'l Sewer Dist., 68 N.E.3d 327 | 307A+624 | The court accepts as true all the material factual allegations of the complaint and construes all reasonable inferences to be drawn from those facts in favor of the nonmoving party. Fahnbulleh v. Strahan, 73 Ohio St.3d 666, 667, 653 N.E.2d 1186 (1995); Brown v. Carlton Harley"Davidson, Inc., 8th Dist. Cuyahoga No. 99761, 2013-Ohio-4047, 2013 WL 5310216, 12, citing Garofalo v. Chicago Title Ins. Co., 104 Ohio App.3d 95, 104, 661 N.E.2d 218 (8th Dist.1995). To prevail on a Civ.R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling the plaintiff to relief. O'Brien v. Univ. Community Tenants Union, Inc., 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. If there is " "a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." " High St. Properties at 16, quoting York v. Ohio State Hwy. Patrol, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991). " "A court cannot dismiss a complaint under Civ.R. 12(B)(6) merely because it doubts the plaintiff will prevail." " Bono v. McCutcheon, 159 Ohio App.3d 571, 2005-Ohio-299, 824 N.E.2d 1013, 8 (2d Dist.), quoting Leichtman v. WLW Jacor Communications, Inc., 92 Ohio App.3d 232, 234, 634 N.E.2d 697 (1st Dist.1994). | If there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss for failure to state a claim. Rules Civ.Proc., Rule 12(B)(6). | Can a complaint be dismissed merely because doubt exists that the plaintiff will ultimately prevail? | Pretrial Procedure - Memo # 8246 - C - KBM_58818.docx | ROSS-003284838-ROSS-003284839 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12682 | Ashcroft v. Iqbal, 556 U.S. 662 | 170A+1772 | Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157"158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged"but it has not "show[n]"""that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). | To survive motion to dismiss, complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; claim has "facial plausibility" when plaintiff pleads factual content that allows court to draw reasonable inference that defendant is liable for misconduct alleged. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A. | Does only a complaint that states a plausible claim for relief survive a motion to dismiss? | Pretrial Procedure - Memo # 8325 - C - TJ_58839.docx | ROSS-003309996-ROSS-003309997 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 12683 | Ranjha v. BJBP Properties, 2013 IL App (1st) 122155 | 302+48 | A section 2"615 motion to dismiss attacks "the legal sufficiency of a complaint based on defects apparent on its face." Pooh"Bah Enterprises, Inc., 232 Ill.2d at 473, 328 Ill.Dec. 892, 905 N.E.2d 781. A complaint is legally sufficient if it states a recognized claim " "upon which relief can be granted." " Willis v. NAICO Real Estate Property & Management Corp., 379 Ill.App.3d 486, 489, 318 Ill.Dec. 784, 884 N.E.2d 752 (2008) (quoting Winfrey v. Chicago Park District, 274 Ill.App.3d 939, 943, 211 Ill.Dec. 46, 654 N.E.2d 508 (1995)). A complaint that fails to meet that standard should be dismissed because there is no recourse at law for the alleged injury. Id. When ruling on a section 2"615 motion to dismiss, a circuit court may consider only the facts that are apparent from the face of the pleadings, matters of which the court can take judicial notice and judicial admissions contained in the record. Pooh"Bah Enterprises, Inc., 232 Ill.2d at 473, 328 Ill.Dec. 892, 905 N.E.2d 781. A court must accept as true all well-pleaded facts, as well as all reasonable inferences that may be drawn from those facts. Id. Mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to withstand a section 2"615 motion to dismiss. Id. This court reviews the circuit court's granting of a section 2"615 motion to dismiss de novo. Id. | A complaint is legally sufficient if it states a recognized claim upon which relief can be granted; a complaint that fails to meet that standard should be dismissed because there is no recourse at law for the alleged injury. S.H.A. 735 ILCS 5/2-615. | Is a complaint legally sufficient if it states a recognized claim upon which relief can be granted? | 036896.docx | LEGALEASE-00150090-LEGALEASE-00150091 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 12684 | Hotel & Motel Holdings v. BJC Enterprises, 414 S.C. 635 | 307A+622 | If the facts and inferences drawn from the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory, then the grant of a motion to dismiss for failure to state a claim is improper. Clearwater Tr. v. Bunting, 367 S.C. 340, 343, 626 S.E.2d 334, 335 (2006). "Furthermore, the complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action." | The complaint should not be dismissed for failure to state a claim merely because the court doubts the plaintiff will prevail in the action. Rules Civ.Proc., Rule 12(b)(6). | Can a court dismiss a complaint for failure to state a claim merely because it doubts the plaintiff will prevail? | 037001.docx | LEGALEASE-00150361-LEGALEASE-00150362 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 12685 | Avery Contracting v. Niehaus, 492 S.W.3d 159 | 307A+622 | A judgment dismissing an action for failure to state a claim upon which relief can be granted is subject to de novo review. Conway v. CitiMortgage, Inc., 438 S.W.3d 410, 413 (Mo. banc 2014). A motion to dismiss for failure to state a claim tests the adequacy of a plaintiff's petition. Id. at 413"14. An appellate court reviews the petition to determine if the plaintiff has alleged facts that meet the elements of a recognized cause of action or of a cause that might be adopted in that case. | Motion to dismiss for failure to state a claim tests the adequacy of a plaintiff's petition. | Does a motion to dismiss for failure to state a claim test the adequacy of a plaintiff's petition? | Pretrial Procedure - Memo # 8413 - C - KS_58903.docx | ROSS-003292492-ROSS-003292493 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12686 | People ex rel. Griffin v. City of Brooklyn, 4 N.Y. 419 | 371+2001 | Taxation exacts money from individuals as their share of a public burthen, and the tax-payer receives or is supposed to receive just compensation in the benefits conferred by government, and in the proper application of the tax. | Taxation exacts money from individuals as their share of a public burden, and the taxpayer receives, or is supposed to receive, just compensation in the benefits conferred by government and in the proper application of the tax. | What does taxpayers receive in return for paying taxes? | Taxation - Memo # 868 - C - JL_59069.docx | ROSS-003285719-ROSS-003285720 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 12687 | Dockeray v. Carnival Corp., 724 F. Supp. 2d 1216 | 25T+182(2) | Here, unlike in Hodgson, Carnival's answer and affirmative defenses did not raise arbitration. To be sure, "simply failing to assert arbitration as an affirmative defense does not constitute default of a right to arbitration." Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 343 (4th Cir.2009); accord Hill v. Ricoh Ams. Corp., 603 F.3d 766, 770"71 (10th Cir.2010).Still, "not pleading arbitration in the answer can be used as evidence towards finding of waiver." Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 105 (2d Cir.2002). An early arbitration demand notifies a party that arbitration may be forthcoming, and therefore the party may prepare accordingly. See Price, 791 F.2d at 1161. It is for this reason that "[o]nce the defendant, by answer, has given notice of insisting on arbitration[,] the burden is heavy on the party seeking to prove waiver." Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc., 427 F.2d 924, 929 n. 5 (5th Cir.1970). | Simply failing to assert in an answer arbitration as an affirmative defense does not constitute default of a right to arbitration. | Does failing to assert arbitration as an affirmative defense constitute default of the right to arbitration? | 007934.docx | LEGALEASE-00151397-LEGALEASE-00151398 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12688 | Lawson v. Fin. Am. Private Brands, 537 S.W.2d 483 | 83E+813 | Prior to the adoption of the Uniform Commercial Code, the mere possession by a plaintiff of notes payable to the order of a different payee, and which were not endorsed by the payee, was not sufficient to establish the prima facie title to the instruments. Texas State Bank & Trust Co. v. St. John, 103 S.W.2d 1104 (Tex.Civ.App."El Paso 1937, err. dism'd); 12 Am.Jur. 2d, Bills and Notes, s 1194 at 218. The last authority points out that this is clearly the rule under the Uniform Commercial Code. Negotiation of commercial paper not payable to bearer takes effect only when the endorsement is made, and until that time there is no presumption that the transferee is the owner. The transferee, without endorsement of an order instrument, is not a holder and so is not aided by any presumption that he is entitled to recover on the instrument. He must account for his possession by proving the transaction through which he acquired the note. Tex.Bus. &Comm.Code Ann. s 3.201(c), Comment 8; 12 Am.Jur.2d, s 1197 at 224. | Negotiation of commercial paper not payable to bearer takes effect only when endorsement is made and until that time there is no presumption that a transferee is the owner. V.T.C.A., Bus. & C. SS 1.201(20), 3.201(c), 3.301, 3.307. | Will Negotiation of Commercial paper takes place when an indorsement is made? | 009417.docx | LEGALEASE-00151094-LEGALEASE-00151095 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 12689 | State v. Skorpen, 57 Wash. App. 144 | 83E+503 | When the check is forged by means of an unauthorized signature of the maker, however, that maker-payee relationship does not exist. The payee may recover from the forger, but only if the payee in good faith pays the check or takes it for value. RCW 62A.3"404(1) (unauthorized signatures). Thus, a forged check does not by itself constitute evidence of a debt; extrinsic evidence is necessary to show that the payee in good faith paid the check or took it for value. Such evidence is completely lacking in the present case. | Forged check does not by itself constitute evidence of a debt; extrinsic evidence is necessary to show that payee in good faith paid the check or took it for value. West's RCWA 9A.56.010(12)(b)(i), 62A.3-404(1). | Does a forged signature constitute evidence of a debt? | 009710.docx | LEGALEASE-00151250-LEGALEASE-00151251 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 12690 | Rosa v. Deutsche Bank Nat. Tr. Co., 191 So. 3d 987 | 266+1749 | It is well settled that a plaintiff seeking to foreclose on a mortgage loan must establish that it had standing to foreclose at the time it filed the complaint. May v. PHH Mortg. Corp., 150 So.3d 247, 248 (Fla. 2d DCA 2014); McLean v. JP Morgan Chase Bank Nat'l Ass'n, 79 So.3d 170, 173 (Fla. 4th DCA 2012). A plaintiff alleging standing as a holder "must prove not only physical possession of the original note but also, if the plaintiff is not the named payee, possession of the original note endorsed in favor of the plaintiff or in blank (which makes it bearer paper)." Kiefert v. Nationstar Mortg., LLC, 153 So.3d 351, 353 (Fla. 1st DCA 2014); see also Focht v. Wells Fargo Bank, N.A., 124 So.3d 308, 310 (Fla. 2d DCA 2013) ("To establish standing as the holder of a note endorsed in blank, a party must be in possession of the original note."). Further, "[w]here the plaintiff's status as holder relies on a blank indorsement, the plaintiff must establish that it had possession of the original note, indorsed in blank, when the complaint was filed." Calvo v. U.S. Bank Nat'l Ass'n, 181 So.3d 562, 564 (Fla. 4th DCA 2015); see also Eagles Master Ass'n v. Bank of Am., N.A., """So.3d """", """", 40 Fla. L. Weekly D1510, D1510, 2015 WL 3915871 (Fla. 2d DCA June 26, 2015). | In a mortgage foreclosure action, where the plaintiff's status as holder relies on a blank indorsement, the plaintiff must establish that it had possession of the original note, indorsed in blank, when the complaint was filed. | When is it necessary for a plaintiff to establish possession of an original note? | Bills and Notes- Memo 1079- ANM_59396.docx | ROSS-003312045-ROSS-003312046 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 12691 | Calvo v. U.S. Bank Nat. Ass'n, 181 So. 3d 562 | 266+1749 | If a note is indorsed in blank, it is payable to the bearer and is "negotiated by transfer of possession alone." " 673.2051(2), Fla. Stat. (2014) (emphasis added). Where the plaintiff's status as holder relies on a blank indorsement, the plaintiff must establish that it had possession of the original note, indorsed in blank, when the complaint was filed. See Snyder v. JP Morgan Chase Bank, Nat'l Ass'n, 169 So.3d 1270, 1273 (Fla. 4th DCA 2015); McLean v. JP Morgan Chase Bank Nat'l Ass'n, 79 So.3d 170, 173 (Fla. 4th DCA 2012). | Where the plaintiff's status as holder of promissory note in a foreclosure action relies on a blank indorsement, the plaintiff must establish that it had possession of the original note, indorsed in blank, when the complaint was filed. | When is it necessary for a plaintiff to establish possession of an original note? | 010025.docx | LEGALEASE-00151331-LEGALEASE-00151332 | Condensed, Order, SA | 0.59 | 1 | 1 | 0 | 1 | 1 |
| 12692 | Hopple v. Cleveland Disc. Co., 25 Ohio App. 138 | 83E+481 | Whether the certificates be treated as intangible choses in action or as personal property, the record is convincing that their nature was such that the title was subject to transfer. Where an instrument is of the nature of a chose in action, a bona fide purchaser takes it free from collateral equities, notwithstanding he may be subject to defenses by the obligor to which the original owner was subject. | Bona fide purchaser of instrument in nature of chose in action takes free from collateral equities, though subject to obligor's defenses against original owner. | What happens to a bonafide purchaser of instrument? | 010727.docx | LEGALEASE-00151108-LEGALEASE-00151109 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 12693 | Sterling & Snapp v. Bender, 7 Ark. 201 | 83E+426 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. Chit. on bills 253. By the indorsement the payee divests himself of the legal interest in the bill or note, and it is vested by the delivery in the holder. Wilkinson v. Nicklin, 2 Dall. Rep. 296. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | To whom is the note in effect payable when the indorsement continues in blank? | 010805.docx | LEGALEASE-00151280-LEGALEASE-00151281 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 12694 | Fed. Deposit Ins. Corp. v. Nobles, 901 F.2d 477 | 195+28 | As to Nobles second argument, that the UCC prevents the duty of good faith from being waived by agreement, we do not believe that the guaranty is governed by the UCC. The guaranty in this case is separate and apart from the promissory note. A guaranty that is a separate document is not considered a negotiable instrument and does not fall within the scope of the UCC. Uniwest Mortgage Co. v. Dadecor Condominiums, Inc., 877 F.2d 431, 434"35 (5th Cir.1989); Simpson v. MBank Dallas, N.A., 724 S.W.2d 102, 105"06 (Tex.App."Dallas 1987, writ ref'd n.r.e.); Eikel v. Bristow Corp., 529 S.W.2d 795, 799"800 (Tex.Civ.App."Houston [1st Dist] 1975, no writ). Therefore, general contract law, rather than the terms of the UCC, applies. Simpson, 724 S.W.2d at 106. Under general contract law, waivers, such as those found in paragraphs 8 and 11 of the guaranty agreement, are valid and enforceable. | Guaranty that was separate and apart from promissory note was not "negotiable" instrument, and thus, did not fall within scope of Uniform Commercial Code but, rather, was governed by general contract law. U.C.C. S 1-101 et seq. | "Should a guarantee be a part of the promissory note, to be considered as a negotiable instrument?" | 010806.docx | LEGALEASE-00151308-LEGALEASE-00151309 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 12695 | Derico v. Duncan, 410 So. 2d 27 | 172H+114 | In this context, then, we have examined the Mini-Code in the light of applicable Alabama law and we hold that contracts made in violation of the requirements of the Mini-Code are null, void, and unenforceable as a matter of public policy. Further, we hold that, notwithstanding Defendant's non-willfulness in failing to obtain a license to engage in the business of making consumer loans, that failure was in direct violation of s 5-19-22(a). | Contracts made in violation of requirements of Mini-Code regarding consumer finance are null, void and unenforceable as matter of public policy. Code 1975, S 5-19-1 et seq. | Are contracts made in violation of mini-code requirements null and void? | Consumer Credit - Memo 104-IS_59227.docx | ROSS-003294765 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12696 | Travellers Int'l, A.G. v. Trans World Airlines, 41 F.3d 1570 | 95+168 | Under New York law, the implied covenant of good faith and fair dealing inheres in every contract. Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co., 30 N.Y.2d 34, 45, 281 N.E.2d 142, 144, 330 N.Y.S.2d 329, 333, cert. denied, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972). Even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith. See Carvel Corp. v. Diversified Management Group, Inc., 930 F.2d 228, 231 (2d Cir.1991); Cross & Cross Properties, Ltd. v. Everett Allied Co., 886 F.2d 497, 502 (2d Cir.1989). | Under New York law, implied covenant of good faith and fair dealing inheres in every contract. | Is there an implied covenant of good faith in every contract? | Consumer Credit - Memo 106- IS_59229.docx | ROSS-003321940 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12697 | Auguston v. Spry, 282 A.D.2d 489 | 302+20 | In his complaint, as supplemented by his affidavit in opposition to the motion, the plaintiff adequately pleaded causes of action against Arizona alleging breach of contract (cf., Matter of Sud v. Sud, 211 A.D.2d 423, 621 N.Y.S.2d 37; Caniglia v. Chicago Tribune"N.Y. News Syndicate, 204 A.D.2d 233, 612 N.Y.S.2d 146) and unjust enrichment (see, Ross v. F.E.I., Inc., 150 A.D.2d 228, 541 N.Y.S.2d 400). Additionally, the causes of action alleging breach of contract and unjust enrichment may be pleaded alternatively (see, CPLR 3014; Joseph Sternberg, Inc. v. Walber 36th St. Assocs., 187 A.D.2d 225, 594 N.Y.S.2d 144; Strauss v. Di Cicco, 64 A.D.2d 979, 408 N.Y.S.2d 810). However, because the plaintiff failed to allege that Spry was a party to the contract, and Spry was enriched as a direct result of the plaintiff's conveyance of $200,000 to Arizona, he cannot maintain these causes of action against Spry. | Causes of action alleging breach of contract and unjust enrichment may be pleaded alternatively. McKinney's CPLR 3014. | Can breach of contract and unjust enrichment be pleaded in the alternative? | 023668.docx | LEGALEASE-00151319-LEGALEASE-00151320 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 12698 | New Bar Partnership v. Martin, 729 S.E.2d 675 | 307A+561.1 | We review a trial court's order allowing a Rule 12(b)(6) motion to dismiss de novo. Locklear v. Lanuti, 176 N.C.App. 380, 384, 626 S.E.2d 711, 714 (2006). Our standard of review of an order allowing a motion to dismiss is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim[,] it will be dismissed. | A complaint may be properly dismissed for absence of law to support a claim, absence of facts sufficient to make a good claim, or the disclosure of some fact that necessarily defeats the claim. Rules Civ.Proc., Rule 12(b)(6). | On what basis can a complaint be properly dismissed? | 037408.docx | LEGALEASE-00151294-LEGALEASE-00151295 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 12699 | Airline Support v. ASM Capital II, 279 P.3d 599 | 308+99 | We have adopted the Restatement's general rule for creation of apparent authority. "Apparent authority to do an act is created as to a third person when a principal's conduct, reasonably interpreted, "causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." " We consider three factors when evaluating apparent authority: "(1) the manifestations of the principal to the third party; (2) the third party's reliance on the principal's manifestations; and (3) the reasonableness of the third party's interpretation of the principal's manifestations and the reasonableness of the third party's reliance." | Supreme Court considers three factors when evaluating apparent authority: (1) the manifestations of the principal to the third party, (2) the third party's reliance on the principal's manifestations, and (3) the reasonableness of the third party's interpretation of the principal's manifestations and the reasonableness of the third party's reliance. (Per Carpeneti, C.J., with one justice concurring and two justices concurring in the result, and one justice not participating.) Restatement (Second) of Agency S 8 comment. | Can apparent authority be the result of principals manifestation? | Principal and Agent - Memo 172 - KC_59454.docx | ROSS-003296609-ROSS-003296610 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 12700 | Ferenc v. Brenner, 927 F. Supp. 2d 537 | 308+127.1 | However, the law in both jurisdictions supports Brenner's alternative theory that she is entitled to enforce the arbitration clause as FAM's agent. Under Illinois and California law, "an agent acting within the scope of his agency is entitled to invoke an arbitration agreement entered into by [his] principal." Ellis v. Coventry Capital I LLC, No. 08 CV 3083, 2008 WL 4396349, (N.D.Ill. Sept. 24, 2008) (applying Illinois law); see also RN Solution, Inc. v. Catholic Healthcare West, 165 Cal.App.4th 1511, 81 Cal.Rptr.3d 892, 900 (2008) (similar). The plaintiffs are suing Brenner for actions she undertook as FAM's agent. (See Compl. "" 13 ("Brenner was a subagent employed by FAM and owed to Ferenc the same fiduciary duties owed to him by FAM."); 28 ("Legacy Re and Rock Solid paid to FAM "performance" or other fees for its services and advice, which FAM in turn paid over to Brenner, in whole or in part.").) Therefore, she is entitled to enforce the arbitration clause in the Investment Management Agreements under both Illinois and California law. The plaintiffs' motion to strike is denied as effectively moot. | Under both Illinois and California law, an agent acting within the scope of his agency is entitled to invoke an arbitration agreement entered into by his principal. | Can an agent invoke an arbitration agreement? | Principal and Agent - Memo 90 - KC_59288.docx | ROSS-003308334-ROSS-003308335 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12701 | White Springs Agric. Chemicals v. Glawson Investments Corp., 660 F.3d 1277 | 25T+329 | Sections 10 and 11 of the FAA, 9 U.S.C. "" 10, 11, provide the exclusive means by which a federal court may upset an arbitration panel's award. See Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 586, 128 S.Ct. 1396, 1404"05, 170 L.Ed.2d 254 (2008); Frazier, 604 F.3d at 1323"24. Section 10 empowers the court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. " 10(a)(4). Section 11 allows for modification of an award "[w]here the arbitrators have awarded upon a matter not submitted to them." Id. " 11(b). Because these Sections are the exclusive means for upsetting an arbitration award, a panel's incorrect legal conclusion is not grounds for vacating or modifying the award. See Frazier, 604 F.3d at 1323"24 (finding that judicially created grounds for vacating an arbitration award did not survive the Supreme Court's Hall Street decision); see also Citigroup Global Mkts., Inc. v. Bacon, 562 F.3d 349, 358 (5th Cir.2009) ("[M]anifest disregard of the law as an independent, nonstatutory ground for setting aside an [arbitration] award must be abandoned and rejected."). | Arbitration panel's incorrect legal conclusion is not grounds under Federal Arbitration Act (FAA) for vacating or modifying award. 9 U.S.C.A. SS 10, 11. | Can an arbitration panel's incorrect legal conclusion be considered grounds for vacating or modifying the arbitral award? | Alternative Dispute Resolution - Memo 815 - RK_59500.docx | ROSS-003293403-ROSS-003293404 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12702 | Iowa Grain Co. v. Brown, 171 F.3d 504 | 25T+182(2) | 50 F.3d at 390"91 (citations omitted). This passage establishes a number of important propositions. First, an important part of the district court's waiver inquiry is to determine as a matter of fact whether the party filing the lawsuit intended to elect a judicial forum rather than the arbitral tribunal. Second, uncertainty about the right to arbitrate is a factor that tends to undermine a finding of waiver from the mere filing of a court action. Third, even if a district court finds an initial waiver of the right to arbitrate, it is also entitled to permit that waiver to be rescinded, depending on the course the litigation takes. | Uncertainty about the right to arbitrate is a factor that tends to undermine a finding that a party has waived its right to arbitration by the mere filing of a court action. | Is uncertainty about the right to arbitration a factor that tends to undermine a finding of waiver? | 008029.docx | LEGALEASE-00151504-LEGALEASE-00151505 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 12703 | United States v. Miller, 229 F.2d 839 | 108H+15 | This argument leaves us unimpressed. The well settled distinction in two-state cases is that matters of attachment, execution and the like are to be determined by the law of the forum and not the law of the place where judgment was rendered or a debt contracted. See Restatement, Conflict of Laws " 600 (1934); Goodrich, Conflict of Laws " 90 (3rd ed. 1949). The language from rule 69 sounds to this effect. There are a variety of situations where the rule has been held procedural and subject to state limitations. For example: a property exemption, the entry of a deficiency as a prerequisite to the issuance of a general execution,the setting aside of an execution sale,and the termination of supplementary proceedings.7 Moore Federal Practice P69.04(3), p. 2418 (1955), gives a whole series of instances of this type. | Matters of attachment, execution, and the like are to be determined by law of the forum, not by the law of the place where judgment was rendered or where a debt was contracted. Fed.Rules Civ.Proc. rule 69(a), 28 U.S.C.A. | Are matters of attachment and execution to be determined by the law of the forum? | 014087.docx | LEGALEASE-00151544-LEGALEASE-00151545 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 12704 | Bolin Farms v. Am. Cotton Shippers Ass'n, 370 F. Supp. 1353 | 95+2 | Federal courts apply the conflicts of law rule of the forum. Klaxon Company v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).Louisiana Civil Code Article 10 states: "The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed."From this provision has developed the general rule that validity and construction of a contract is determined by the lex loci contractus and the remedy according to lex fori. Bologna Bros. v. Morrissey, 154 So.2d 455 (La.App. 2nd Cir. 1963). | Codal article relating to governing law for public and private written instruments has developed general rule that validity and construction of contract is determined by lex loci contractus and the remedy according to lex fori. LSA-C.C. art. 10. | Is the remedy of a contract determined by lex fori? | 009912.docx | LEGALEASE-00151608-LEGALEASE-00151609 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 12705 | In re Ben Weiss Co., 271 F.2d 234 | 21+2 | There is no express provision of the Illinois Factor's Lien Act which requires that the verification of the Notice of lien must be made by an officer, either elected or appointed. As a corporation can act only through its duly authorized officers and agents, it is the general rule that affidavits upon behalf of corporations may be made by any duly authorized officers or agents having knowledge of the facts verified. 2 C.J.S. Affidavits " 8, p. 928. It must necessarily be inferred that an officer or agent of a corporation may make an affidavit in its behalf even though the statute regulating the making of the affidavit makes no provision or exception in favor of corporations. 1 Am.Jur. p. 937. | A corporation can act only through its duly authorized officers and agents, and affidavits on behalf of corporations may be made by any duly authorized officers or agents having knowledge of facts verified, even though statute regulating making of affidavit makes no provision or exception in favor of corporations. | Who is authorized to make affidavits on behalf of corporations? | Affidavits - Memo 38 - _1P8OFa0tJ0JqHGcm-3EvSn6i35Wj_amm2.docx | ROSS-000000172-ROSS-000000173 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |
| 12706 | U.S. v. Peralta-Sanchez, 847 F.3d 1124 | 92+4437 | We have held that an alien facing deportation faces the loss of a liberty interest. An alien, like Peralta, has a right to removal proceedings that conform to the requirements of due process. See Raya"Vaca, 771 F.3d at 1203 & n.6; Flores"Chavez v. Ashcroft, 362 F.3d 1150, 1161 (9th Cir. 2004). However, the fact that aliens are protected by the Due Process Clause does not mean that "all aliens are entitled to enjoy all the advantages of citizenship or ... that all aliens must be placed in a single homogenous legal classification."Mathews, 426 U.S. at 78, 96 S.Ct. 1883. "[T]he class of aliens is itself a heterogenous multitude of persons with a wide-ranging variety of ties to this country." Id. at 78"79, 96 S.Ct. 1883. | The fact that aliens are protected by the Due Process Clause does not mean that all aliens are entitled to enjoy all the advantages of citizenship or that all aliens must be placed in a single homogenous legal classification; the class of aliens is itself a heterogenous multitude of persons with a wide-ranging variety of ties to this country. U.S. Const. Amend. 5. | Is the class of aliens a heterogenous multitude of persons with a wide-ranging variety of ties to this country? | "Aliens, Immigration and Citizenship - Memo 37 - RK_60124.docx" | ROSS-003280959-ROSS-003280960 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 12707 | Charles Nelson Co. v. Morton, 106 Cal. App. 144 | 8.30E+05 | Two important rules of statutory construction in our judgment combine to require us to adopt the construction of section 20 of the Uniform Negotiable Instruments Law announced in the cases of Kerby v. Ruegamer, Megowan v. Peterson, American Trust Co. v. Canevin, Hamilton v. Young, and First National Bank v. Jacobs, cited supra. The first of these rules is laid down in Utah State National Bank v. Smith, 180 Cal. 1, at page 3, 179 P. 160, 161, where referring to the Uniform Negotiable Instruments Law, our Supreme Court said: "It is generally held that it is the duty of the courts in construing this law to have in mind the purpose of securing uniformity in the law of commercial paper." | It is duty of courts, in construing the negotiable instruments law, to have in mind purpose of securing uniformity in law of commercial paper. | Should Negotiable Instruments law be construed so as to secure uniformity? | 010053.docx | LEGALEASE-00152414-LEGALEASE-00152415 | Condensed, Order, SA | 0.79 | 1 | 1 | 0 | 1 | 1 |
| 12708 | In re Nosek, 386 B.R. 374 | 51+2187 | The purpose of Rule 9011 is to deter baseless filings in bankruptcy and thus avoid the expenditure of unnecessary resources by imposing sanctions on those found to have violated it. | Purpose of Rule 9011 is to deter baseless filings in bankruptcy and thus avoid the expenditure of unnecessary resources by imposing sanctions on those found to have violated it. Fed.Rules Bankr.Proc.Rule 9011, 11 U.S.C.A. | What was the aim of legislation behind Rule 9011? | 010279.docx | LEGALEASE-00152347-LEGALEASE-00152348 | SA, Sub | 0.18 | 0 | 0 | 1 | 1 | |
| 12709 | Stone v. Mehlberg, 728 F. Supp. 1341 | 83E+524 | The Stones accordingly prevail on their TILA rescission claim, unless the Mehlbergs can assert an effective defense. The Mehlbergs first assert that they are protected by the U.C.C.'s holder in due course doctrine (HDC). This defense is irrelevant to the Mehlbergs' obligation to discharge the security interest they hold in the Stones' home. The mortgage at issue is not payable to order or bearer, and is thus not a negotiable instrument. See M.C.L.A. " 440.3104(1)(d). | A mortgage which was not payable to order or bearer was not a negotiable instrument and thus assignees of the mortgagee were not protected by the UCC's holder in due course doctrine. U.C.C. S 3-101 et seq. | "Is mortgage a negotiable instrument, when it is not payable to the bearer?" | 010811.docx | LEGALEASE-00151869-LEGALEASE-00151870 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 12710 | In re Ferrell, 539 F.3d 1186 | 172H+1322 | Congress enacted the Truth in Lending Act in 1968 to strengthen the "informed use of credit" by requiring meaningful disclosure of credit terms to consumers. 15 U.S.C. " 1601(a). The purpose of the Act is to: assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices. "In order to effectuate this purpose" we construe the Act's provisions liberally in favor of the consumer. Jackson v. Grant, 890 F.2d 118, 120 (9th Cir.1989). "To insure that the consumer is protected ... [the TILA and accompanying regulations must] be absolutely complied with and strictly enforced." (alteration in original) (internal quotation and citation omitted). | To effectuate purpose of Truth in Lending Act (TILA), court construes TILA's provisions liberally in favor of the consumer. Truth in Lending Act, S 102(a), 15 U.S.C.A. S 1601(a). | "To effectuate the purpose of TILA, do courts construe its provisions liberally in favor of the consumer?" | 013994.docx | LEGALEASE-00152607-LEGALEASE-00152608 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12711 | Fin. Freedom Acquisition v. Standard Bank & Tr. Co., 2014 IL App (1st) 120982 | 172H+1555 | Although the counterclaim was timely filed, Standard Bank is not entitled to rescind the loan transaction because it is not an "obligor." Neither TILA nor Regulation Z defines "obligor." Black's Law Dictionary defines "obligor" as "[o]ne who has undertaken an obligation; a promisor or debtor." Black's Law Dictionary 1181 (9th ed. 2009). "The right to rescind may be exercised only by the obligor, i.e. the person to whom credit is extended. Thus, an individual who is not named on the Note executed by his or her spouse is not an "obligor" and does not have a right to rescind."Ferreira v. Mortgage Electronic Registration Systems, Inc., 794 F.Supp.2d 297, 302"03 (D.Mass.2011). | The right to rescind a loan transaction under the Truth in Lending Act (TILA) may be exercised only by the obligor, that is, the person to whom credit is extended; thus, an individual who is not named on the promissory note executed by his or her spouse is not an obligor, and does not have a right to rescind. Truth in Lending Act, S 125(a), 15 U.S.C.A. S 1635(a). | Does an individual who is not an obligor have a right to rescind? | 013996.docx | LEGALEASE-00152609-LEGALEASE-00152610 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 12712 | Rodgers v. Harper & Moore, 170 Ala. 647 | 200+181 | It is a general principle that one placing objects within the limits of a public highway, which are calculated to frighten horses of ordinary gentleness, is liable therefor; but, in order to fix liability, it is necessary to allege and prove that the object is calculated to frighten a horse of ordinary gentleness. As stated in one of the cases, "it is clear that the rule cannot apply to all horses, irrespective of disposition, for a horse might take fright at a discoloration in the road, a bush, a stone, post, leaves, or other objects, for which it would be unreasonable to charge a town with liability." Stone v. Langworthy, 20 R. I. 605, 40 Atl. 833 (column 2); Joyce on Nuisances, " 255; Grunauer v. Westchester F. Ins. Co., 72 N. J. Law, 289, 62 Atl. 418, 3 L. R. A. (N. S.) 111; Morse & Wife v. Richmond, 41 Vt. 435, 444, 98 Am. Dec. 600; Dimock v. Town of Suffield, 30 Conn. 129, 134; Card v. City of Ellsworth, 65 Me. 547, 20 Am. Rep. 722, 728; Piollet v. Simmers. 106 Pa. 95, 51 Am. Rep. 496, 504, 505; N. Ala. Ry. Co. v. Sides, 122 Ala. 594, 26 South. 116. The same principle applies to objects so near the highway as to have the same tendency. Elliott on Roads & Streets (2d Ed.) " 649, pp. 696, 697. At least it is said: "Certainly no higher degree of care, if as high, should be required of a person placing or leaving near the highway, on his own premises, appliances in use therein." Norfolk & W. R. Co. v. Gee, 104 Va. 809, 52 S. E. 573, 3 L. R. A. (N. S.) 113. | One placing objects within a highway calculated to frighten horses of ordinary gentleness is liable for injuries to a person caused by the frightening of a horse of ordinary gentleness. | Will placing objects in the highway to frighten horses make one liable? | 018778.docx | LEGALEASE-00152531-LEGALEASE-00152533 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 12713 | Kanerva v. Weems, 2014 IL 115811 | 307A+683 | A motion to dismiss under section 2"615 challenges the legal sufficiency of a complaint. Bonhomme v. St. James, 2012 IL 112393, 361 Ill.Dec. 1, 970 N.E.2d 1. In ruling on such a motion, a court must accept as true all well-pleaded facts in the complaint, as well as any reasonable inferences that may arise from them. Id. The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. Id. | In ruling on a motion to dismiss which challenges the legal sufficiency of a complaint, a court must accept as true all well-pleaded facts in the complaint, as well as any reasonable inferences that may arise from them; the critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. S.H.A. 735 ILCS 5/2-615. | "In ruling on a motion to dismiss which challenges the legal sufficiency of a complaint, should a court accept as true all well-pleaded facts in the complaint?" | 037520.docx | LEGALEASE-00152087-LEGALEASE-00152088 | Condensed, SA | 0.15 | 0 | 1 | 0 | 1 | |
| 12714 | Dani v. Miller, 2016 OK 35 | 307A+680 | Motions to dismiss are generally viewed with disfavor, and the standard of review before this Court is de novo.Ladra v. New Dominion, LLC, 2015 OK 53, 353 P.3d 529; Simonson v. Schaefer, 2013 OK 25, 301 P.3d 413; Hayes v. Eateries, Inc., 1995 OK 108, 905 P.2d 778.The purpose of a motion to dismiss is to test the law that governs the claim, not the underlying facts. Wilson v. State ex rel. State Election Bd., 2012 OK 2, 270 P.3d 155; Darrow v. Integris Health, Inc., 2008 OK 1, 176 P.3d 1204; Zaharias v. Gammill, 1992 OK 149, 844 P.2d 137. Accordingly, when considering the legal sufficiency of the petition the court takes all allegations in the pleading as true together with all reasonable inferences that may be drawn from them. Ladra, 2015 OK 53, 353 P.3d 529; Simonson, 2013 OK 25, 301 P.3d 413; Fanning v. Brown, 2004 OK 7, 85 P.3d 841. A plaintiff is required neither to identify a specific theory of recovery nor to set out the correct remedy or relief to which the plaintiff may be entitled. Gens v. Casady School, 2008 OK 5, 177 P.3d 565; Darrow, 2008 OK 1, 176 P.3d 1204; May v. Mid"Century Ins. Co., 2006 OK 100, 151 P.3d 132. | The purpose of a motion to dismiss is to test the law that governs the claim, not the underlying facts. 12 Okl.St.Ann. S 2012(B)(6). | "Is the purpose of a motion to dismiss to test the law that governs the claim in litigation, and not the underlying facts?" | 037629.docx | LEGALEASE-00152041-LEGALEASE-00152042 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 12715 | Bell v. Phillips, 465 S.W.3d 544 | 307A+680 | Phillips focuses on the last two quoted statements, and emphasizes that those allegations only assert that the Department of Corrections, rather than Phillips personally, denied Bell the postage he needed. Phillips reads the petition too technically. The petition alleges that Phillips was Bell "only" source of access to necessary legal materials during the time period (early 2010) in which his federal habeas petition was filed, that she "refused him any type of legal resources" during that time, and that she instructed "her officers" to do likewise. Construing the allegations of the petition liberally, as we must, Bell later references to the Department of Corrections refusal to provide him with necessary postage are reasonably read to refer to Phillips herself, and or other officers acting according to her instructions. While it may have been preferable for Bell to have alleged additional details concerning the denial of the necessary postage, "a petition does not have to plead operative or evidentiary facts, so it will survive dismissal if it pleads ultimate facts and not conclusions." LeBlanc v. Research Belton Hosp., 278 S.W.3d 201, 207 (Mo.App.W.D.2008); see also First Nat'l Bank of Ft. Smith v. Kansas City S. Ry. Co., 865 S.W.2d 719, 728 (Mo.App.W.D.1993) ("A party must plead only ultimate facts in his petition. Evidentiary facts supporting ultimate facts are not requisites.") | A petition does not have to plead operative or evidentiary facts, so it will survive dismissal if it pleads ultimate facts and not conclusions. | "Does a petition not have to plead operative or evidentiary facts, so it will survive dismissal if it pleads ultimate facts and not conclusions?" | Pretrial Procedure - Memo # 8713 - C - NE_59749.docx | ROSS-003296737-ROSS-003296738 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12716 | Chubb Grp. Ins. Companies v. Carrizalez, 375 Ill. App. 3d 537 | 307A+680 | A section 2"619 motion to dismiss admits the legal sufficiency of a complaint, but raises defects or defenses that defeat the claim. Krueger v. Lewis, 359 Ill.App.3d 515, 520, 295 Ill.Dec. 876, 834 N.E.2d 457 (2005). Dismissal is appropriate where the record establishes that no genuine issue of material fact exists. MC Baldwin Financial Co. v. DiMaggio, Rosario & Veraja, LLC, 364 Ill.App.3d 6, 22, 300 Ill.Dec. 601, 845 N.E.2d 22 (2006). We review the dismissal of a complaint de novo. Krueger, 359 Ill.App.3d at 521, 295 Ill.Dec. 876, 834 N.E.2d 457. | Dismissal is appropriate where the record establishes that no genuine issue of material fact exists. | Is dismissal appropriate where the record establishes that no genuine issue of material fact exists? | Pretrial Procedure - Memo # 8763 - C - NS_59764.docx | ROSS-003293103-ROSS-003293104 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12717 | Young v. Medlantic Lab. P'ship, 125 Md. App. 299 | 307A+680 | It is clearly inappropriate in the context of a motion to dismiss for the judge to make a finding of fact. Morris v. Osmose Wood Preserving, 99 Md.App. 646, 658, 639 A.2d 147 (1994), rev'd on other grounds, 340 Md. 519, 667 A.2d 624 (1995). Nonetheless, when a limitations defense is apparent on the face of the complaint, the complaint fails to state a cause of action upon which relief can be granted, and the opposing party may move for dismissal on that basis. Suburban Hosp. v. Dwiggins, 83 Md.App. 97, 120-21, 573 A.2d 835, rev'd on other grounds, 324 Md. 294, 596 A.2d 1069 (1991). | It is clearly inappropriate for judge to make finding of fact in context of motion to dismiss. | Is it clearly inappropriate for a judge to make finding of fact in context of motion to dismiss? | 037774.docx | LEGALEASE-00151921-LEGALEASE-00151922 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12718 | Valley Peat & Humus v. Sunnylands, 398 Pa. Super. 400 | 307A+581 | In reviewing the entry of a non pros judgment, it is well settled law that the decision will not be reversed on appeal absent an abuse of discretion on the part of the trial court. The granting of a non pros judgment is founded upon the equitable doctrine of laches. James Bros. Lumber v. Union Banking & Trust Co., supra 432 Pa. at 133, 247 A.2d at 590. There are three general considerations which must be entertained by the trial court before a non pros judgment may properly be entered: "a party to the proceeding has shown a want of due diligence in failing to proceed with reasonable promptitude, and there has been no compelling reason for the delay, and the delay has caused some prejudice to the adverse party, such as the death of or unexplained absence of material witnesses." Id. at 132, 247 A.2d at 589 (citations omitted). | Granting of non pros judgment is founded upon equitable doctrine of laches. | Is granting of non pros judgment founded upon equitable doctrine of laches? | 038331.docx | LEGALEASE-00152688-LEGALEASE-00152689 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12719 | Swindell v. Latham, 145 N.C. 144 | 308+92(1) | With reference to these questions, we stated several legal propositions: (1) "That an agent can only contract for his principal within the limit of his authority, and persons dealing with an agent having limited powers must generally inquire as to the extent of his authority." Brittain v. Westhall, 135 N. C. 495, 47 S. E. 616. See, also, Bank v. Hay, 143 N. C. 326, 55 S. E. 811. (2) "When the authority to buy or to sell is given in general terms, it is clear, in the absence of any restriction to the contrary, that the agent has the power to buy for cash or on credit, as he may deem best, and to sell in the same way. Ruffin v. Mebane, 41 N. C. 507. | An agent can only contract for his principal within the limits of his authority, and one dealing with an agent with limited powers must generally inquire as to the extent of his authority. | Can an agent only contract for his principal within the limit of his authority? | 041501.docx | LEGALEASE-00152275-LEGALEASE-00152276 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 12720 | Swindell v. Latham, 145 N.C. 144 | 308+92(1) | With reference to these questions, we stated several legal propositions: (1) "That an agent can only contract for his principal within the limit of his authority, and persons dealing with an agent having limited powers must generally inquire as to the extent of his authority." Brittain v. Westhall, 135 N. C. 495, 47 S. E. 616. See, also, Bank v. Hay, 143 N. C. 326, 55 S. E. 811. (2) | An agent can only contract for his principal within the limits of his authority, and one dealing with an agent with limited powers must generally inquire as to the extent of his authority. | "While dealing with an agent, is one required to inquire the extent of his authority?" | 041503.docx | LEGALEASE-00152283-LEGALEASE-00152284 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 12721 | Total Control v. Danaher Corp., 359 F. Supp. 2d 380 | 308+89(3) | To recover under the ISRA, a plaintiff must show that a principal failed to provide timely payment of commissions to a sales representative. If the plaintiff proves that the principal "willfully and wantonly" refused to pay, courts will award exemplary damages. Gramercy Mills, Inc. v. Wolens, 63 F.3d 569, 573 (7th Cir.1995). Total Control alleges that Danaher's failure to pay Total Control timely commissions, which Total Control candidly admits in its complaint was "the subject of the Prior Action," was "deliberate, willful and wanton, exhibiting vexatious behavior." (Compl." 42, 44.) Thus, the critical component of Total Control's claim under the ISRA, Danaher's failure to pay timely commissions, was actually litigated and decided in Total Control I. | To recover exemplary damages under the Illinois Sales Representative Act (ISRA), a plaintiff must show that a principal failed to provide timely payment of commissions to a sales representative. S.H.A. 820 ILCS 120. | How can a sales representative claim unpaid commissions? | Principal and Agent - Memo 54 - KC_60261.docx | ROSS-003307373-ROSS-003307374 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 12722 | Mitchell v. Teague, 233 S.W. 1040 | 308+88 | There was no error in this instruction. When an agent, upon his own account, undertakes to delegate to a third party the performance of a duty which he owes his principal, the rule is well settled that the subagent must look for his compensation to his immediate employer, and not to the principal. Williams v. Moore, 24 Tex. Civ. App. 402, 58 S. W. 953; National Cash Register Co. v. Hagan & Co., 37 Tex. Civ. App. 281, 83 S. W. 727; Houston Cotton Oil Co. v. Bibby, 43 Tex. Civ. App. 100, 95 S. W. 562; Tynan v. Dulling, 25 S. W. 466. | Where an agent on his own account undertakes to delegate to a third party the performance of a duty which he owes his principal, the subagent must look for his compensation to his immediate employer, and not to the principal. | Who pays commission to sub-agent employed by an agent? | 042081.docx | LEGALEASE-00152255-LEGALEASE-00152256 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 12723 | Carlson v. Carlson, 363 N.W.2d 803 | 308+69(2) | One acting in a fiduciary capacity must exercise the utmost fidelity toward the principal, Christensen v. Redman, and owes the principal a duty of full disclosure. An agent cannot profit from the subject of the agency without the principal's consent, freely given after full disclosure of any facts that might influence the principal's judgment.Furthermore, Fraud will be presumed when there has been a transaction between persons occupying a fiduciary relationship, whereby one in whom confidence was reposed obtained benefits without consideration, or for an inadequate consideration. The onus is on a person obtaining such benefits to show that he acted righteously. | Agent cannot profit from subject of agency without principal's consent, freely given after full disclosure of any facts that might influence principal's judgment. | Can an agent claim his compensation from the subject of the principal? | 042096.docx | LEGALEASE-00152263-LEGALEASE-00152264 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 12724 | Cruse v. O'Quinn, 273 S.W.3d 766 | 21+9 | Initially, we need not determine whether O'Quinn waived its objection that Leonard Cruse's testimony was conclusory or whether the trial court implicitly overruled O'Quinn's objection. An objection that statements in an affidavit are conclusory is one that relates to a defect in substance and so may be raised for the first time on appeal. See Hou"Tex., Inc. v. Landmark Graphics, 26 S.W.3d 103, 112 (Tex.App.-Houston [14th Dist] 2000, no pet.). | An objection that statements in an affidavit are conclusory is one that relates to a defect in substance, and so may be raised for the first time on appeal. | Are conclusory statements defects of substance in an affidavit? | Affidavits - Memo 62 - _1CVTIH0ZYoBsw7804tfqB4O1JkSNBIRbx.docx | ROSS-000000221-ROSS-000000223 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12725 | Pamar Enterprises v. Huntington Banks of Mich., 228 Mich. App. 727 | 8.30E+207 | Pursuant to M.C.L. " 440.3110(4); M.S.A. " 19.3110(4), an instrument made payable to two or more persons not alternatively, is payable to all of them and may be negotiated, discharged, or enforced only by all of them. When the word "and" separates the names of two payees on an instrument, the instrument is payable jointly and not alternatively. See M.C.L. " 440.3110; M.S.A. " 19.3110, Comment 4. In this case, because the check at issue was made payable to JBE "and" East Jordan, the endorsement of JBE alone was not sufficient to allow negotiation of the check. M.C.L. " 440.3110(4); M.S.A. " 19.3110(4); see also M.C.L. " 440.3420; M.S.A. " 19.3420, Comment 1. Although M.C.L. " 440.3110; M.S.A. " 19.3110 establishes to whom an instrument is properly payable, it does not address the circumstances under, or the extent to, which a bank may be held liable for improperly paying a check. Accordingly, defendants are not liable under M.C.L. " 440.3110(4); M.S.A. " 19.3110(4), though they may be liable under other sections of the Uniform Commercial Code, as adopted in Michigan. | Instrument made payable to two or more persons not alternatively is payable to all of them and may be negotiated, discharged, or enforced only by all of them. M.C.L.A. S 440.3110(4). | Can an instrument made payable to two or more persons not alternatively be negotiated by all of them? | 009889.docx | LEGALEASE-00153629-LEGALEASE-00153630 | Order, SA | 0.83 | 1 | 0 | 0 | 1 | |
| 12726 | Maye v. University of Minnesota, 615 N.W.2d 383 | 141E+1090 | The University is part of the executive branch of state government, and as such, its decisions are given deference by this court under the principle of separation of powers. See Dokmo v. Independent Sch. Dist. No. 11, 459 N.W.2d 671, 674 (Minn.1990) (applying separation of powers to school districts). In Shaw v. Board of Regents, we held that: "certiorari pursuant to Minn.Stat. " 606.01 (1998) is the only method available for review of a university decision." Shaw v. Board of Regents, 594 N.W.2d 187, 191 (Minn.App.1999). Relying on the Minnesota Supreme Court's decision in Willis v. County of Sherburne, 555 N.W.2d 277, 282 (Minn.1996), this court held that petitions for writ of certiorari are appropriate when an employee raises a "pure breach of contract" claim. Shaw, 594 N.W.2d at 191. The supreme court in Willis held that:Regardless that the claim is cloaked in the mantle of breach of contract, when the alleged breach of the employment contract of a governmental employee results in termination of the claimant's employment by an executive body which does not have statewide jurisdiction * * * the claimant may contest the employer's action by certiorari alone, absent statutory authority for a different process. | State university is part of the executive branch of state government, and as such, its decisions are given deference by Court of Appeals under the principle of separation of powers. | Is a public university considered a part of the executive branch of government? | Education - Memo #114 - C - ATS_60321.docx | ROSS-003281680-ROSS-003281681 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 12727 | Dagrosa v. Calabro, 105 N.Y.S.2d 178 | 156+29 | It has long been established in this State that a purchaser who accepts a deed which recognizes an easement over the realty is estopped by such acceptance from denying the existence of such easement. Bridger v. Pierson, 45 N.Y. 601; Wilson v. Ford, 209 N.Y. 186, 102 N.E. 614; Barber v. City of New Rochelle, Sup., 99 N.Y.S.2d 393. | Purchaser who accepts deed which recognizes easement over realty is estopped by such acceptance from denying existence of such easement. | Is a purchaser who accepts a deed which recognizes an easement over the realty estopped by such acceptance from denying existence of such easement? | 018025.docx | LEGALEASE-00152894-LEGALEASE-00152895 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 12728 | Aspenhof Corp. v. State Tax Comm'n of Missouri, 789 S.W.2d 867 | 371+2516 | The method used by the Commission in this case was the widely accepted replacement cost less depreciation method. See Quincy Soybean Co., Inc. v. Lowe, 773 S.W.2d 503, 505 (Mo.App.1989). This method consists of three factors: 1) The value of the land if it were vacant, added to; 2) the value of replacement costs of improvements, and subtract from that sum; 3) the value of depreciation of the improvements. Contrary to appellant's assertion in their brief, the fact that the property is losing money is not a relevant factor to consider. It is a factor used in the income approach, which neither appellant, respondent, the County, nor the Commission used. | Fact that real property where recreational facilities were located was losing money was not relevant factor to consider in using replacement cost less depreciation method of assessing value of property for tax purposes. | What are the three factors that consist the replacement cost less depreciation method to calculate true value in money when assessing property? | 018334.docx | LEGALEASE-00153529-LEGALEASE-00153530 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 12729 | State ex rel. Berkshire v. City of Logansport, 928 N.E.2d 587 | 307A+622 | On the other hand, Trial Rule 12(B) also provides that a motion to dismiss for failure to state a claim upon which relief can be granted "shall be treated as one for summary judgment" if matters outside the pleading are presented and not excluded. See Ace Foster Care & Pediatric Home Nursing Agency Corp. v. Ind. Family & Soc. Servs. Admin., 865 N.E.2d 677, 681"82 (Ind.Ct.App.2007) (observing that when the parties were provided a reasonable opportunity to present external material and to respond to the arguments made, the trial court's order is reviewed as one granting summary judgment). | A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. Trial Procedure Rule 12(B)(6). | When can a motion to dismiss for failure to state a claim upon which relief can be granted be treated as a motion for summary judgment? | 037923.docx | LEGALEASE-00153259-LEGALEASE-00153260 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 12730 | Grove Isle Ass'n v. Grove Isle Assocs., LLLP, 137 So. 3d 1081 | 241+180(7) | A motion to dismiss tests the legal sufficiency of the complaint. Greene, 926 So.2d at 1199. In determining the merits of a motion to dismiss, the trial court must limit itself to the four corners of the complaint, including any attached or incorporated exhibits, assuming the allegations in the complaint to be true and construing all reasonable inferences therefrom in favor of the non-moving party. Greene, 926 So.2d at 1199; Minor v. Brunetti, 43 So.3d 178, 179 (Fla. 3d DCA 2010) (reversing dismissal with prejudice where trial court considered facts other than those alleged in the complaint). | Date of accrual of condominium association's claims for declaratory relief invalidating certain provisions of the declaration of condominium, including those requiring condominium unit owners to pay for maintenance of facilities outside the condominium and limiting the association's right to amend the declaration, could not be determined from the four corners of the complaint, and thus trial court could not dismiss the claims on the basis of the five-year statute of limitations, even if claims accrued when developer turned over control of the condominium to association; complaint did not allege when developer turned over control. West's F.S.A. SS 95.031(1), 95.11, 718.124. | "In determining the merits of a motion to dismiss, should the trial court limit itself to the four corners of the complaint?" | 038009.docx | LEGALEASE-00152822-LEGALEASE-00152823 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 12731 | Plengemeier v. Thermadyne Indus., 409 S.W.3d 395 | 241+180(7) | In ruling on a motion to dismiss, including one based on the bar of a statute of limitations, the trial court is obliged to construe the petition liberally, give the pleadings their broadest intendment, take the statements of fact in the petition as true, and determine whether the petition states facts which, if established, demonstrate a right of recovery against the defendant which the law recognizes, or of a cause that might be adopted in the case. Nazeri v. Missouri Valley College, 860 S.W.2d 303, 306 (Mo.banc 1993); Johnson v. Vee Jay Cement 77 S.W.3d 84, 88 (Mo.App. E.D.2002). We do the same on review. Hamdan v. Board of Police Com'rs for City of St. Louis, 37 S.W.3d 397, 399 (Mo.App. E.D.2001). | A motion to dismiss is the proper motion for attacking a petition on the ground it is barred by the statute of limitations, especially where the expiration of the limitation appears on the face of the petition; the trial court may not dismiss the petition unless it is clearly established on the petition's face and without exception that the cause of action is time-barred. | "In ruling on a motion to dismiss, including one based on the bar of a statute of limitations, is the trial court obliged to construe the petition liberally and give the pleadings their broadest intendment?" | Pretrial Procedure - Memo # 8939 - C - TM_60392.docx | ROSS-003280539-ROSS-003280540 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12732 | Wells v. Endicott, 2013 IL App (5th) 110570 | 307A+624 | A motion to dismiss under section 2"615 challenges the legal sufficiency of the complaint." Gilchrist v. Snyder, 351 Ill.App.3d 639, 642, 286 Ill.Dec. 497, 814 N.E.2d 147 (2004). "Dismissal is appropriate only where, viewing the allegations in the light most favorable to the plaintiff, it is clear that no set of facts can be proved under the pleadings that will entitle the plaintiff to relief." Documents and exhibits that have been incorporated into the pleadings may be considered by the court when ruling on a section 2"615 motion. Taylor v. Frey, 406 Ill.App.3d 1112, 1115, 347 Ill.Dec. 555, 942 N.E.2d 758 (2011). The grant of a motion to dismiss under section 2"615 is subject to de novo review. Gilchrist, 351 Ill.App.3d at 642, 286 Ill.Dec. 497, 814 N.E.2d 147. | Dismissal based on the pleadings is appropriate only where, viewing the allegations in the light most favorable to the plaintiff, it is clear that no set of facts can be proved under the pleadings that will entitle the plaintiff to relief. S.H.A. 735 ILCS 5/2-615. | When is a dismissal based on the pleadings appropriate? | 038021.docx | LEGALEASE-00152906-LEGALEASE-00152907 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 12733 | Saunders v. Tisher, 902 A.2d 830 | 307A+680 | Saunders contends, however, that the Rule 12(b)(6) dismissal is improper because his complaint is not governed by the provisions of the MHSA. On a motion to dismiss, facts are not adjudicated, but rather there is an evaluation of the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint. Accordingly, upon review of a judgment granting a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), we consider the facts stated in the complaint as if they were admitted. Libner v. Me. County Comm'rs' Ass'n, 2004 ME 39, 7, 845 A.2d 570, 572; Napieralski v. Unity Church of Greater Portland, 2002 ME 108, 4, 802 A.2d 391, 392. "We examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." In re Wage Payment Litig., 2000 ME 162, 3, 759 A.2d 217, 220. "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." Johanson v. Dunnington, 2001 ME 169, 5, 785 A.2d 1244, 1246. | On a motion to dismiss, facts are not adjudicated, but rather there is an evaluation of the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint. | "When the trial court acts on a motion to dismiss for failure to state a claim upon which relief can be granted, are facts not adjudicated?" | 038095.docx | LEGALEASE-00153392-LEGALEASE-00153393 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12734 | Mayor of Savanna v. Hartridge, 8 Ga. 23 | 371+2001 | [1.] The subject of taxation has been, very properly, divided into three classes"capitation, property and income; and this distinction is recognized, not only by all writers on political economy, but in the general tax laws of all Governments; and when one or more is mentioned or treated of, the other is never intended. And the point to be decided is, not whether income may not, possibly, be comprehended under the general name of property, but whether such is its meaning, and such was the design of the Legislature, in this Act? | Taxation, in reference to the subject matter, is divided by writers on political economy, as well as the tax laws of all governments, into three classes-capitation, property and income; and where one or more is treated of or acted upon, the other is never intended. | What are the three classes of taxation? | 046047.docx | LEGALEASE-00153398-LEGALEASE-00153399 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 12735 | Perez v. Tomberlin, 86 Ariz. 66 | 228+185.2(4) | It is fundamental that an affidavit, by its very nature, must be affirmative and present sufficient materials to show there is a triable issue of material fact. See the leading case of Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469; 6 Moore's Federal Practice, " 56.11(3); 41 Am.Jur., Pleading, " 172. | Plaintiff's affidavit, filed in response to defendant's motion for summary judgment, must be affirmative and present sufficient materials to show that there is a triable issue of material fact. A.R.S. Rules of Civil Procedure, rule 30(f). | Is it fundamental that the affidavit present sufficient materials to show that there is a triable issue of material fact? | Affidavits - Memo 81 - SNJ_62006.docx | ROSS-003297949-ROSS-003297950 | SA, Sub | 0.22 | 0 | 0 | 1 | 1 | |
| 12736 | White-Wilson-Drew Co. v. Egelhoff, 96 Ark. 105 | 83E+528 | It is urged by counsel for appellees that the appellant was not a holder of this note for value because it was taken in payment of a pre-existing debt. But by the weight of authority the acceptance of a note as payment for a pre-existing debt constitutes a taking in due course of business and for value. And this court has uniformly held that one who takes negotiable paper in payment of a pre-existing debt before maturity and without notice receives it in due course of business and is a holder for value. Hamiter v. Brown, 88 Ark. 97, 113 S. W. 1014; Bertrand v. Barkman, 13 Ark. 150; Tabor v. Merchants' Nat. Bank, 48 Ark. 454, 3 S. W. 805, 3 Am. St. Rep. 241; Evans v. Speer Hardware Co., 65 Ark. 204, 45 S. W. 370, 67 Am. St. Rep. 919; Exchange Nat. Bank v. Coe, 127 S. W. 453; Bigelow on Notes & Bills (2d Ed.) 497; Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Railroad Co. v. Nat. Bank, 102 U. S. 14, 26 L. Ed. 61.Furthermore, the evidence in this case tended to prove that the account was past due, and that the note was received in payment thereof, and that thereby the time of payment of the debt was extended to the time of the maturity of the note. This extension of the time of payment of the debt by virtue of the execution of the note was sufficient consideration to make the appellant a holder for value. | Where a creditor received a note payable at a future date in payment of a past-due debt, the extension of the time to pay was a sufficient consideration to make the creditor a holder for value. | Will extension of the time of payment amounts be sufficient consideration to make the debtor a holder for value? | 009787.docx | LEGALEASE-00154649-LEGALEASE-00154650 | Condensed, Order, SA | 0.85 | 1 | 1 | 0 | 1 | 1 |
| 12737 | Rubio v. Capital One Bank, 613 F.3d 1195 | 172H+1527 | In applying TILA and its implementing regulations, we "require absolute compliance by creditors," Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th Cir.2009), and "[e]ven technical or minor violations of the TILA impose liability on the creditor," Jackson v. Grant, 890 F.2d 118, 120 (9th Cir.1989). | In applying Truth in Lending Act (TILA) and its implementing regulations, a court requires absolute compliance by creditors, and even technical or minor violations of the TILA impose liability on the creditor. Truth in Lending Act, S 127(c)(1)(A)(i)(I), 15 U.S.C.A. S 1637(c)(1)(A)(i)(I). | "Under TILA, is absolute compliance by creditors required?" | Consumer Credit - Memo 66 - JK_60821.docx | ROSS-003278941-ROSS-003278942 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 12738 | M Series Rebuild v. Town of Mount Pleasant, 222 N.C. App. 59 | 307A+622 | The purpose of a motion to dismiss is to test law of a claim, not to resolve evidentiary conflicts. White v. White, 296 N.C. 661, 667, 252 S.E.2d 698, 702 (1979). As "[r]esolution of evidentiary conflicts is ... not within the scope" of Rule 12, "[w]e are not bound by the trial court's findings [.]' " Id. Also, as noted above, we will use a de novo standard of review to address these issues. We next turn to address the parties' substantive arguments. | The purpose of a motion to dismiss is to test law of a claim, not to resolve evidentiary conflicts. Rules Civ.Proc., Rule 12, West's N.C.G.S.A. S 1A-1. | "Is the purpose of a motion to dismiss to test a law of a claim, not to resolve evidentiary conflicts?" | 038576.docx | LEGALEASE-00153992-LEGALEASE-00153993 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 12739 | Williams v. Gaffin Indus. Servs., 88 So. 3d 1027 | 307A+681 | We review de novo a trial court's dismissal of a complaint. Peak v. Outward Bound, Inc., 57 So.3d 997, 998 (Fla. 2d DCA 2011). "Election of remedies is an affirmative defense that is not properly raised by means of a motion to dismiss where the affirmative defense does not appear on the face of the [complaint]." Vause v. Bay Med. Ctr., 687 So.2d 258, 261 (Fla. 1st DCA 1996); see also Fla. R. Civ. P. 1.110(d). "Even a relatively straightforward affirmative defense, such as one based upon the statute of limitations, is not a basis for dismissal unless the complaint affirmatively and clearly shows the conclusive applicability of the defense." Vause, 687 So.2d at 261. "If the court is required to consider matters outside the four corners of the complaint, then the cause is not subject to dismissal on the basis of the affirmative defense." Id. | Trial court erred in dismissing employee's estate's complaint, alleging intentional harm, based on the doctrine of election of remedies, available under workers' compensation law, because court considered disputed matters outside the four corners of the complaint; facts relied upon by employer in support of its election of remedies defense did not appear on the face of the complaint or in any attachments to the complaint, and instead, they were supplied by employer through various documents and an affidavit filed in support of its motion to dismiss. | "If the court is required to consider matters outside the four corners of the complaint, is the cause not subject to dismissal on the basis of the affirmative defense?" | 038655.docx | LEGALEASE-00153899-LEGALEASE-00153900 | Condensed, Order, SA, Sub | 0.35 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12740 | Succession of Knox, 579 So. 2d 1164 | 307A+581 | A suit for nullity of a judgment of possession is not a succession proceeding as described in LSA-C.C.P. Art. 561(A) and is subject to the five year abandonment rule. See and compare Succession of Kinchen, 391 So.2d 1278 (La.App. 1st Cir.1980), in which a petition filed after rendition of a judgment of possession in an intestate succession was dismissed as abandoned under the provisions of LSA-C.C.P. Art. 5612. In Succession of John Everett Overton, Sr., 422 So.2d 1356 (La.App. 1st Cir.1982), an action to set aside a sale to one of decedent's children as a donation in disguise and to return the property to the mass of the father's estate was dismissed under LSA-C.C.P. Art. 561 for failure to prosecute even though it related to a succession proceeding. | Suit for nullity of judgment of possession is not "succession proceeding," and thus is subject to five-year abandonment rule. LSA-C.C.P. art. 561, subd. A. | "Is suit for nullity of judgment of possession, ""succession proceeding""?" | Pretrial Procedure - Memo # 9453 - C - TM_60946.docx | ROSS-003278354-ROSS-003278355 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 12741 | Flanigan v. City of Leavenworth, 232 Kan. 522 | 307A+581 | K.S.A.1981 Supp. 60-241(b) does, of course, recognize the authority of a court to, on motion of the defendant, dismiss an action for failure to prosecute."What would constitute such failure to prosecute as to warrant a dismissal must be determined by the circumstances of each particular case. Unreasonable delay which harasses the defendant is obviously an important consideration. Such unreasonable delay could result from failure of the plaintiff to take any steps after filing his complaint, or failing to attend a pretrial hearing, or failure to be ready for trial. The matter is within the sound discretion of the court, and a reasonable excuse for delay or failure to prosecute would justify a refusal to dismiss." Vernon's Kansas C.Civ.Proc. " 60-241 (1964), p. 71. | What constitutes such failure to prosecute as to warrant dismissal must be determined by circumstances of each particular case. Rules Civ.Proc., K.S.A. 60-241(b). | Should failure to prosecute as to warrant dismissal be determined by circumstances of each particular case? | 038853.docx | LEGALEASE-00154483-LEGALEASE-00154484 | Order, SA | 0.79 | 1 | 0 | 0 | 1 | |
| 12742 | Fisser v. Int'l Bank, 164 F. Supp. 826 | 308+183(1) | The rule of the Fretz case, however, as was recognized in the decision, does not obtain in "particular cases." 12 How. 468.1 One exception to that rule is the "well-recognized practice in the admiralty that the agent of an absent owner of cargo may assert in his own name his principal's right of action."Aunt Jemima Mills Co. v. Lloyd Royal Belge, 2 Cir., 1929, 34 F.2d 120, 121. See also, Cragin & Co. v. International S.S. Co., 2 Cir., 1926, 15 F.2d 263; Pipe v. The La Salle, D.C.S.D.N.Y.1943, 49 F.Supp. 662. | Agent of an absent owner of cargo may assert in his own name his principal's right of action. | Can an agent of an absent cargo owner assert in his own his principals right of action? | 041626.docx | LEGALEASE-00154601-LEGALEASE-00154602 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12743 | Sherzer v. Homestar Mortg. Servs., 849 F. Supp. 2d 501 | 172H+1556 | Plaintiffs argue that the facts of their case are distinguishable from those of Williams. Plaintiffs point out that they, unlike the plaintiffs in Williams, commenced suit within one year of sending their notice of rescission. This argument misses the point. The holding of Williams is that suit must be brought within three years of consummation of the loan. [A]ny claim for rescission under " 1635(f) must be filed within the three year period. It may be that an obligor may invoke the right to rescission by mere notice. Mere invocation without more, however, will not preserve the right beyond the three-year period. Rather, consistent with " 1635(f), a legal action to enforce the right must be filed within the three-year period or the right will be "completely extinguishe[d]." | Mortgagors were required to file legal action to enforce their right to rescind mortgage loan under Truth in Lending Act (TILA) within statutory three-year period or right would be completely extinguished, regardless of whether mortgagors filed their rescission claim within one year of sending their notice of rescission to mortgage lender. Truth in Lending Act, S 125(f), 15 U.S.C.A. S 1635(f). | What is the time period for rescission under 1635(f)? | Consumer Credit - Memo 195 - RK_61857.docx | ROSS-003305471-ROSS-003305472 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 12744 | Egan v. Moore, 36 Misc. 2d 967 | 141E+1015 | It is not asserted, however, that the respondent trustees assumed any contractual obligation in respect of Mr. Aptheker as a result of the merger. The State University is a corporation created within the State Education Department and "under the board of regents' (Education Law, sec. 352). Its "planning functions' and "administrative functions' are subject to the general supervision and approval of the Board of Regents (id. secs. 354, 355). It "is an integral part of the government of the State" (State University of New York v. Syracuse University, 285 App.Div. 59, 61, 135 N.Y.S.2d 539, 542) and as such is subject to the immediate control of the Board of Regents. The latter is the head of the University of the State of New York and of the State Education Department and is charged with the general management and supervision of all education in the State (New York Constituion, art. 5, sec. 4; art. 11, sec. 2; and, Education Law, secs. 101, 201, 207). | The state university is an integral part of the government of the state and as such is subject to immediate control of the board of trustees. Education Law, SS 101, 201, 207, 352, 354, 355; Laws 1962, c. 930; Const. art. 5, S 4; art. 11, S 2. | Is a university subject to the control of the board of regents? | 06604.docx | LEGALEASE-00096623-LEGALEASE-00096624 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 12745 | Marsden v. Encompass Ins. Co., 374 N.J. Super. 241 | 156+52(1) | "Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law." Casamasino v. City of Jersey City, 158 N.J. 333, 354, 730 A.2d 287, 298 (1999). The doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment. Mattia v. Northern Ins. Co. of New York, 35 N.J.Super. 503, 510, 114 A.2d 582, 585 (App.Div.1955). The doctrine is invoked in "the interests of justice, morality and common fairness." Palatine I v. Planning Bd. of Township of Montville, 133 N.J. 546, 560, 628 A.2d 321, 328 (1993). Estoppel, unlike waiver, requires the reliance of one party on another. To establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment. Miller v. Miller, 97 N.J. 154, 163, 478 A.2d 351, 355 (1984). | Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law. | Is estoppel founded in the fundamental duty of fair dealing imposed by law? | Estoppel - Memo #108 - C - CSS_61675.docx | ROSS-003296171-ROSS-003296172 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 12746 | Leong v. Potter, 347 F.3d 1117 | 156+52(1) | Equitable estoppel focuses on the defendant's wrongful actions preventing the plaintiff from asserting his claim. Santa Maria, 202 F.3d at 1176. Leong argues that the Postal Service wrongfully prevented him from asserting his claim by not permitting him to enter his former work site to meet with an EEO counselor. The district court found that there is no triable issue of fact that the defendant wrongfully prevented Leong from asserting his claim. Leong did not attempt to seek EEO counseling until more than a month after receiving his Notice of Removal. There is nothing unusual about not allowing terminated employees access to their former work sites, especially where an employee was terminated for repeated obscene and threatening behavior. There is no evidence that the Postal Service refused to let Leong enter his former job site because he wished to speak with an EEO counselor. | Doctrine of "equitable estoppel" focuses on defendant's wrongful actions preventing plaintiff from asserting his claim. | Does estoppel focus on the defendant's wrongful actions preventing the plaintiff from asserting his claim? | Estoppel - Memo #113 - C - CSS_61681.docx | ROSS-003280886-ROSS-003280887 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12747 | Manias v. Yeck, 11 Ill. 2d 512 | 253+455 | The defendants' final contention is that this property was held in joint tenancy between Mr. and Mrs. Yeck, and since the former died in March, 1954, Mrs. Yeck is sole owner of the property and the contract cannot be enforced against the estate of her husband. But it is settled that where one joint tenant makes an agreement to convey, the joint tenancy is thereby severed and a tenancy in common results to that the agreeing owner's interest in subject to the agreement after his death. See, e. g., Naiburg v. Hendriksen, 370 Ill. 502, 505, 19 N.E.2d 348; Klouda v. Pechousek, 414 Ill. 75, 86, 110 N.E.2d 258. The plaintiffs may elect, as they have done, to take that interest. | Where husband had made agreement to convey portion of land held in joint tenancy with wife, who was not party to such agreement, joint tenancy was thereby severed and tenancy in common resulted and husband's interest was subject to agreement even after his death. | "Where one joint tenant makes an agreement to convey, will the joint tenancy be severed resulting in a tenancy in common?" | Exchange of Property - Memo 16 - AM_61346.docx | ROSS-003297855-ROSS-003297856 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 12748 | Stamato v. Agamie, 24 N.J. 309 | 322H+644 | We fully agree with the Appellate Division that plaintiff is not entitled to prevail even if the memorandum were found to constitute an agreement. Equity deems time provisions in a land contract to be formal rather than essential, unless the circumstances or express language indicate otherwise. Equity does not thereby seek to remake a contract but rather to give effect to the intention of the parties. Accordingly, equity will enforce an express provision making time of the essence, and where the contract is not thus explicit, it will deem the parties bound by a subsequent reasonable notice making time of the essence. Brinn v. Mennen Co., 4 N.J. 610, 73 A.2d 541 (1950); Doctorman v. Schroeder, 92 N.J.Eq. 676, 114 A. 810 (E. & A.1921); Orange Society of New Jerusalem v. Konski, 94 N.J.Eq. 632, 121 A. 448 (Ch.1923), affirmed 95 N.J.Eq. 254, 122 A. 753 (E. & A.1923); Korb v. Spray Beach Hotel Co., 24 N.J.Super. 151, 93 A.2d 578 (App.Div.1952). | Equity deems time provisions in land contract to be formal rather than essential, unless circumstances or express language indicate otherwise. | Is time the essence of land contracts? | Exchange of Property - Memo 8 - AM.docx | LEGALEASE-00044887-LEGALEASE-00044888 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12749 | Annett v. Am. Honda Motor Co., 548 N.W.2d 798 | 307A+581 | First, this Court ordinarily will not interfere with the trial court's rulings in these matters. Duncan, 382 N.W.2d at 427; Simkins v. Bechtol, 86 S.D. 187, 192 N.W.2d 731, 732 (S.D.1971). Second, a dismissal of an action for failure to prosecute is an extreme remedy and should be used only when there is an unreasonable and unexplained delay. Opp [v. Nieuwsma], 458 N.W.2d [352] at 356 [S.D.1990]; Schwartzle, 429 N.W.2d at 71; Holmoe, 403 N.W.2d at 31; Duncan, 382 N.W.2d at 427; Simkins, 192 N.W.2d at 732; Chicago & Northwestern R.Co. v. Bradbury (Bradbury), 80 S.D. 610, 129 N.W.2d 540, 542 (S.D.1964). An unreasonable and unexplained delay has been defined as an omission to do something "which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights." Bradbury, 129 N.W.2d at 542 (quoting Potts v. Starr, 76 S.D. 91, 72 N.W.2d 924, 925 (S.D.1955). | Dismissal of an action for failure to prosecute is an extreme remedy and should be used only when there is an "unreasonable and unexplained delay," which is an omission to do something which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights. SDCL 15-11-11. | "Should dismissal of an action for failure to prosecute be used only when there is an ""unreasonable and unexplained delay""?" | Pretrial Procedure - Memo # 10008 - C - KS_61558.docx | ROSS-003278535-ROSS-003278536 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 12750 | State ex rel. Missouri Highway & Transp. Comm'n v. Moulder, 726 S.W.2d 812 | 307A+581 | Missouri disfavors the dismissal of cases because of failure to prosecute, Horobec v. Mueller, 628 S.W.2d 942, 944 (Mo.App.1982), as the law favors trial on the merits. Trial courts have considerable discretion in determining whether cases should be dismissed for failure to prosecute, and their determination on that issue will not be disturbed on appeal unless their discretion is abused. Id. at 944. | Law disfavors dismissal of cases because of failure to prosecute as it favors trial on merits. | Does law disfavor dismissal of cases because of failure to prosecute as it favors trial on merits? | 039052.docx | LEGALEASE-00154946-LEGALEASE-00154947 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 12751 | Chevron Oil Co. v. Traigle, 436 So. 2d 530 | 307A+581 | Upon further reflection, we conclude that this view of article 561 is mistaken in so far as it indicates that the defendant, once abandonment has occurred, cannot do anything which would constitute a waiver. The defendant's submission for decision of an already abandoned case precludes him from raising the claim of abandonment. By allowing a suit to be submitted for decision, the defendant clearly consents to have the matter resolved upon its merits. | Defendant's submission for decision of already abandoned case precludes him from raising claim of abandonment. LSA-C.C.P. art. 561. | Does defendant's submission for decision of already abandoned case preclude him from raising claim of abandonment? | 039089.docx | LEGALEASE-00155199-LEGALEASE-00155200 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 12752 | Greene v. Tri-Cty. Cmty. Sch. Dist., 315 N.W.2d 779 | 307A+581 | The list of our cases interpreting rule 215.1 is not long. Principles are clear and well understood. It is in the public interest that cases not tried or settled within a reasonable time should be dismissed. Whatever hardship might be suffered by an occasional litigant whose suit is thus lost is more than compensated by the general good that results from the impetus provided by the rule. | It is in public interest that cases not tried or settled within reasonable time be dismissed. Rules Civ.Proc., Rules 215.1, 252. | Is it in public interest that cases not tried or settled within reasonable time be dismissed? | 039100.docx | LEGALEASE-00155271-LEGALEASE-00155272 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 12753 | Landfield v. Sherman, 201 So. 2d 819 | 307A+581 | The primary purpose of F.S.A. s 45.19 is obviously intended to promote the expeditious disposition of litigation. It contains two basic component elements. It provides for dismissal upon inaction for a year showing a lack of prosecution for that period. It further provides for reinstatement after dismissal "upon good cause shown" by petition filed within one month. | Primary purpose of statute providing for dismissal of an action for want of prosecution upon inaction for a year is to promote the expeditious disposition of litigation. F.S.A. S 45.19. | What is the primary purpose of rule governing dismissal for failure to prosecute? | 039167.docx | LEGALEASE-00155360-LEGALEASE-00155361 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 12754 | Polowick v. Meredith Const. Co., 29 Ill. App. 3d 1092 | 307A+581 | It is the opinion of this court, further, that the plaintiff's complaint should not have been dismissed for want of prosecution. Not only was the plaintiff entitled to the assistance of the court at that point in securing the production of additional documents, but also, after he had been substituted for the original plaintiffs he had made a number of attempts to compel discovery of documents, which, as it happened, were not immediately forthcoming. A complaint should not be dismissed for want of prosecution unless the plaintiff has been guilty of inexcusable delay. (See Epley v. Epley, 328 Ill. 582, 585, 160 N.E. 113.). We cannot find, from the record which is before us, that the plaintiff was guilty of inexcusable delay, or that he failed to prosecute his case with diligence. | Complaint should not be dismissed for want of prosecution unless the plaintiff has been guilty of inexcusable delay. | Should a complaint be dismissed for want of prosecution unless the plaintiff has been guilty of inexcusable delay? | Pretrial Procedure - Memo # 9709 - C - VP_61979.docx | ROSS-003295203-ROSS-003295204 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12755 | Graham v. Mut. Life Ins. Co. of New York, 176 N.C. 313 | 308+92(1) | No one claims, or even hints, that Mrs. Wall knowingly perpetuated a fraud, but it is evident she made an honest mistake in her calculations. She was furnished with the usual insurance literature, among which was a lot of printed forms of Exhibit No. 2. She was also furnished a rate book, and from this rate book she would fill in illustrations and examples under the guaranties. It was impossible to furnish printed literature with the amounts all printed. The policies varied in amount, and the values varied with the ages of the insured. The local agent, in canvassing for insurance, would take the literature and fill in from the rate book the figures applicable to the amount and age of the person canvassed. Mrs. Wall had no authority to bind the defendant by this paper, even if it were a contract in form. She was a mere local soliciting agent, with no power to bind her principal. Such agency is one of limited powers, as shown by the agency contract between Mrs. Wall and defendant. 17 Cyc. 475 (3); Gwynn v. Setzer, 48 N. C. 383; McFarland v. Patterson, 4 N. C. 421. The plaintiff has failed to show any authority upon part of Mrs. Wall to make the guaranties claimed. As is said by Ruffin, J., in Biggs v. Insurance Co., 88 N. C. 143:"When one deals with an agent it behooves him to ascertain correctly the extent of his authority and power to contract. Under any other rule, every principal would be at the mercy of his agent, however careful he might limit his authority." | Where one deals with an agent, it behooves him to ascertain correctly the extent of the agent's authority and power to contract. | Does it behoove one when dealing with an agent to ascertain correctly the extent of his authority? | 041655.docx | LEGALEASE-00155708-LEGALEASE-00155709 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 12756 | Bickel Coal Co. v. Louisville Tire Co., 228 Ky. 239 | 308+19 | One is responsible only for the acts of another when the relation of principal and agent or master and servant exists; and where it is sought to hold one responsible in damages for the acts of another, the party seeking recovery must establish the relation of master and servant or principal and agent, if the relationship be denied. | Person seeking damages from one for another's acts must establish denied relation of master and servant or principal and agent. | Is one responsible for another only when the relation of principal and agent exists? | 041666.docx | LEGALEASE-00155396-LEGALEASE-00155397 | Condensed, Order, SA, Sub | 0.62 | 1 | 1 | 1 | 1 | 1 |
| 12757 | City of Scranton v. O'Malley Mfg. Co., 341 Pa. 200 | 371+2001 | The provisions involved in section 5 are mandatory and not merely directory. Liability to pay taxes arises from no contractual relation between the taxable and the state and cannot be enforced by common law proceedings unless a statute so provides. They can be collected in no other way than that provided by the statute. Schmuck v. Hartman, 222 Pa. 190, 195, 70 A. 1091; Leopold Tax Assessment Case, 118 Pa.Super. 158, 163, 179 A. 904. Tax statutes should receive a strict construction. Boyd v. Hood, 57 Pa. 98. In cases of doubt the construction should be against the government . Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211; United States. v. Merriam, 263 U.S. 179, 188, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L.R. 1547; Com. v. Philadelphia R. T. Co., 287 Pa. 190, 196, 134 A. 455. While it is the duty of every citizen to bear his just share in supporting the government, he cannot be compelled to do so except in a way provided by a statute. This gives rise to a rule in tax law, of general application, that whatever the law requires to be done for the protection of the taxpayer is usually mandatory and cannot be regarded as merely directory. Black on Tax Titles, " 198. | Liability to pay taxes arises from no contractual relation between the taxable and the state, and cannot be enforced by common-law proceedings unless a statute so provides. | Can liability to pay taxes be enforced by common law proceedings? | 046085.docx | LEGALEASE-00154996-LEGALEASE-00154997 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12758 | Ford Motor Co. v. Linnane, 102 Mont. 325 | 371+2001 | It is argued that the effect of the judgment of the trial court is to exempt the trainload of automobiles from taxation for the year 1935, contrary to the command of the Constitution that all property shall be subject to taxation, except such as is specifically exempted. Constitution, art. 12, " 16. This court has long been committed to the theory that all taxes are levied upon persons and not upon property; that it is the person who is taxed, and that, while strictly speaking the property which the person owns is used to determine the amount of the tax he shall pay, it is the person who after all pays the tax. The person is liable. In addition to property being a means of determining what the person shall pay, it is also security for the payment. State v. Camp Sing, 18 Mont. 128, 44 P. 516, 32 L.R.A. 635, 56 Am.St.Rep. 551; Hilger v. Moore, 56 Mont. 146, 182 P. 477; Hale v. County Treasurer, 82 Mont. 98, 265 P. 6. Under this doctrine as applied to our taxing statutes, a person or corporation is required to pay a property tax annually. The amount of that tax is determined upon the valuation of the property owned by the taxpayer as of the date of the first Monday of March at noon. Under this view no exemption here results. | Taxes are levied upon persons and not upon property, and, while strictly speaking property which person owns is used to determine amount of tax he shall pay, it is person who pays the tax, and person is liable, and property is security for payment. | Are all taxes levied upon persons or property? | 046089.docx | LEGALEASE-00155042-LEGALEASE-00155043 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12759 | McInness v. Wilson Printing Co., 258 Ill. App. 161 | 413+101 | The first phase of the question which presents itself is whether or not the injury was cognizable by the industrial commission under the Workmen's Compensation Act. While the industrial commission has jurisdiction, generally, of all claims for accidental injuries, where the person injured was lawfully employed, it can hardly be doubted that the legislature, in engrafting provisions on contracts of hiring, had in mind only contracts which were valid in law, or, at least, contracts, the making of which was not prohibited by express legislative enactment. It would be entirely unreasonable to attribute to the legislature the intention of adding terms to a contract of hiring which it had already prohibited the parties thereto from making. The Workmen's Compensation Act applies only where the contract of hiring is a valid one. (Grand Rapids Trust Co. v. Petersen Beverage Co., 219 Mich. 208.) It cannot be supposed that the legislature intended to make such contracts illegal, and at the same time to give them all the force and effect of legal contracts, so far as civil liability for injuries to minors are concerned. To so hold would tend to encourage and not discourage the practice which the statute has declared illegal; for, in the event of an injury, the employer would suffer no more in the case of an illegal than of a legal employment. (Lincoln v. National Tube Co., 268 Pa. 504.) The compensation act makes provision for compensation in certain cases therein specially provided. It defines what employment shall be deemed extrahazardous, but the employments so specified have reference only to the right to compensation under the act, and it does not attempt to fix a standard for any other purpose. Plaintiff was engaged in an occupation that required him to operate an elevator in violation of the Child Labor Act and he could not recover under the compensation act, but his remedy was under the Child Labor Act. (Kowalczyk v. Swift & Co., 329 Ill. 308; Roszek v. Bauerle & Stark Co., 282 Ill. 557; Messmer v. Industrial | The extrahazardous employments specified in Workmen's Compensation Act, have reference only to right to compensation under act, and do not fix standard for any other purpose. S.H.A. ch. 48, S 138 et seq. | "Does the Compensation Act define employment by reference only to the right to compensation under the act, and not attempt to fix a standard for any other purpose?" | 048640.docx | LEGALEASE-00155552-LEGALEASE-00155553 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 12760 | Renville State Bank v. Kinsberg, 40 S.D. 191 | 21+9 | 1 At the opening of the trial defendants moved to quash the petition and alternative writ upon the ground that the alternative writ was improvidently granted, and particularly that said writ was not issued upon affidavit, and that the facts stated in the petition were not sufficient to entitle plaintiff to the relief sought. Defendants now assign as error the overruling of said motion. It is first urged that the writ was not issued upon affidavit. We are of the opinion that the petition, which was sworn to under oath, should be treated as an affidavit for the purposes of this action. A written declaration, properly sworn to, may constitute an affidavit, even though in the form of an ordinary pleading. Woods v. Pollard, 14 S. D. 44, 84 N. W. 214; State v. Peterson, 29 Wash. 571, 70 Pac. 71; 2 C. J. 318. We are also of the opinion that the petition stated facts sufficient to authorize the alternative writ. | Written declaration, properly sworn to, may constitute an affidavit, though in form of ordinary pleading. | Can a written declaration in the form of an ordinary pleading constitute an affidavit? | Affidavits - Memo 80 - _1cdbZBGR1LZnQ4OPN 8myz_nn_3XerjjsO.docx | ROSS-000000254-ROSS-000000255 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12761 | In re Eastview Estates II, 713 F.2d 443 | 156+52(1) | Finally, Brokers argue that the Statute of Frauds should not be used to deprive them of the benefit of the bargain. In California, under appropriate circumstances, the doctrine of equitable estoppel can, in appropriate circumstances, prevent a party from asserting the Statute of Frauds. See Monarco v. Lo Greco, 35 Cal.2d 621, 623"24, 220 P.2d 737, 739"40 (1950) (en banc). Estoppel will normally be invoked to prevent unconscionable injury or unjust enrichment. Id. | In California, under appropriate circumstances, doctrine of equitable estoppel can prevent a party from asserting statute of frauds; estoppel will normally be invoked to prevent unconscionable injury or unjust enrichment. West's Ann.Cal.Civ.Code S 1624, subd. 5. | Can equitable estoppel prevent a party from asserting the Statute of Frauds? | 017799.docx | LEGALEASE-00156272-LEGALEASE-00156273 | Condensed, SA | 0.44 | 0 | 1 | 0 | 1 | |
| 12762 | State v. Deines, 268 Kan. 432 | 200+158 | Clearly, Kansas case law dating back to the late 1800's establishes a well-articulated principle of law that where there is an obstruction across a public right-of-way which obstructs the travel of an individual, the obstruction is a nuisance per se, and the affected individual may remove the obstruction by way of abatement. The district judge found that wheat growing in the public right-of-way was an obstruction and a nuisance per se. | Where there is an obstruction across a public right-of-way which obstructs the travel of an individual, the obstruction is a nuisance per se and the affected individual may remove the obstruction by way of abatement. | Can an individual remove the obstruction by way of abatement? | 019200.docx | LEGALEASE-00156246-LEGALEASE-00156247 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 12763 | Twp. of Hutchinson v. Filk, 44 Minn. 536 | 200+159(2) | The only common"law remedy for the abatement of a public nuisance was by indictment, but it is now well settled that a court of equity may, in a proper case, take jurisdiction of public nuisances in civil actions for their abatement, and to enjoin their maintenance. This jurisdiction is grounded upon the greater efficacy and promptitude of the remedies administered in such actions, enabling the court to restrain nuisances that are threatened or in progress, as well as to abate those already in existence, and effect their final suppression by injunction, which will often also prevent a multiplicity of suits. Angel & D. Highw. " 280, and notes. | While indictment is the common-law remedy for the abatement of a public nuisance, a court of equity will take jurisdiction of a civil action to abate and enjoin the maintenance of an obstruction to a highway which is a public nuisance. | Does equity have the jurisdiction to abate public nuisances? | 019201.docx | LEGALEASE-00156250-LEGALEASE-00156251 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 12764 | Correa v. Orient-Express Hotels, 84 A.D.3d 651 | 307A+682.1 | Neither the affidavit nor the deposition testimony defendant offered constitutes the type of documentary evidence that may be considered on a motion pursuant to CPLR 3211(a)(1) (see Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 10 A.D.3d 267, 271, 780 N.Y.S.2d 593 [2004]; Berger v. Temple Beth"El of Great Neck, 303 A.D.2d 346, 347, 756 N.Y.S.2d 94 [2003] ). The remainder of the evidence does not "conclusively establish[ ] a defense to the asserted claims as a matter of law" because it does not irrefutably establish that defendant neither owned nor controlled the premises (Leon v. Martinez, 84 N.Y.2d 83, 88, 614 N.Y.S.2d 972, 638 N.E.2d 511 [1994]; see Wright v. C.H. Martin of White Plains Rd., Inc., 23 A.D.3d 295, 296, 808 N.Y.S.2d 21 [2005] ). | Neither affidavit nor deposition testimony offered by defendant constituted the type of documentary evidence that could be considered on motion to dismiss based on defense founded upon documentary evidence. McKinney's CPLR 3211(a)(1). | Is an affidavit considered as a documentary evidence? | 024553.docx | LEGALEASE-00156102-LEGALEASE-00156103 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12765 | Millsaps v. Orlando Wrecker, 634 So. 2d 680 | 307A+694 | When a dismissal of an action is not on the merits and the statute of limitations has not yet run at the time of dismissal, the dismissal should not be with prejudice. Wemett v. Duval County, 485 So.2d 892 (Fla. 1st DCA 1986); National Carloading Corp. v. Gemini Transportation, Inc., 364 So.2d 504 (Fla. 3d DCA 1978). An order dismissing a cause for lack of an indispensable party is not an adjudication on the merits. In re C.T.D., 623 So.2d 834, 834 n 1, (Fla. 4th DCA 1993); Fulmer v. Northern Central Bank, 386 So.2d 856 (Fla. 2d DCA 1980), rev. denied, 394 So.2d 1152 (Fla.1981). Thus a dismissal of an action for failure to join an indispensable party should be without prejudice. Spierer v. City of North Miami Beach, 560 So.2d 1198 (Fla. 3d DCA), rev. denied, 576 So.2d 291 (Fla.1990); Antonelli v. Smith, 556 So.2d 1132 (Fla. 3d DCA 1989); City of Hallandale v. Gulfstream Park Racing Association, Inc., 440 So.2d 1328 (Fla. 4th DCA 1983); Fulmer.An exception to this rule is when the plaintiff refuses to amend his complaint to add a party necessary for a determination on the merits. | Order dismissing cause for lack of indispensable party is not an adjudication on the merits and, thus, should be without prejudice. | "Is an order dismissing a pleading for lack of an indispensable party not a merits adjudication, and should thus be without prejudice?" | 024677.docx | LEGALEASE-00155940-LEGALEASE-00155941 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12766 | Citibank (S. Dakota), N.A. v. Martin, 11 Misc. 3d 219 | 307A+690 | First, as to assigned claims, it is essential that an assignee show its standing, which "doctrine embraces several judicially self-imposed limits on the exercise of ... jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights" (Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 [1984]). A lack of standing renders the litigation a nullity, subject to dismissal without prejudice (Pullman Group, LLC v. Prudential Ins. Co. of America, 297 A.D.2d 578, 747 N.Y.S.2d 170 [1st Dept.2002], lv. app. dismissed 99 N.Y.2d 610, 757 N.Y.S.2d 820, 787 N.E.2d 1166 [2003]). | A lack of standing renders the litigation a nullity, subject to dismissal without prejudice. | "Does a lack of standing render the litigation a nullity, subject to dismissal without prejudice?" | Pretrial Procedure - Memo # 10364 - C - NS_62089.docx | ROSS-003319568 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12767 | Ray & Sons Masonry Contractors v. U.S. Fid. & Guar. Co., 353 Ark. 201 | 302+308 | Ray was listed as liable on the West Helena store. It must also be noted that Ray's subcontract on the McKinney store was not attached to the original or the amended complaint. Rule 10 of the Arkansas Rules of Civil Procedure discusses form of pleadings, and provides:(d) Required Exhibits. A copy of any written instrument or document upon which a claim or defense is based shall be attached as an exhibit to the pleading in which such claim or defense is averred unless good cause is shown for its absence in such pleading. | Pleading requirement, that any written instrument or document upon which a claim or defense is based shall be attached as an exhibit to the pleading raising the claim or defense, is mandatory. Rules Civ.Proc., Rule 10(d). | "If a claim is based on a written document, should the document itself be attached to the pleading as an exhibit?" | 024762.docx | LEGALEASE-00156218-LEGALEASE-00156219 | Condensed, Order, SA, Sub | 0.58 | 1 | 1 | 1 | 1 | 1 |
| 12768 | Blackgold Realty Corp. v. Milne, 119 A.D.2d 512 | 307A+679 | On a motion to dismiss a pleading for insufficiency, where extrinsic evidence is introduced, the allegations are not deemed true. The inquiry is whether the pleader has a cause of action, not whether he has properly stated one. The motion should be granted where the essential facts have been negated beyond substantial question by the affidavits and evidentiary matter submitted. Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 275, 401 N.Y.S.2d 182, 372 N.E.2d 17 (1977). | On motion to dismiss pleading for insufficiency after extrinsic evidence is introduced, allegations are not deemed true, rather, inquiry is whether pleader has cause of action, not whether he has properly stated one, and motion should be granted where essential facts have been negated beyond substantial question by affidavits and evidence submitted. | "Where the court has considered extrinsic evidence on a motion to dismiss, should the motion only be granted where the essential facts have been negated?" | 039468.docx | LEGALEASE-00156180-LEGALEASE-00156181 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 12769 | Wilson v. Gen. Motors Corp., 298 N.Y. 468 | 413+101 | The Workmen's Compensation Law, Consol.Laws, c. 67, has been broadly construed, and properly so, to embrace all activities which can, in any reasonable sense, be included within its coverage. See Matter of Industrial Com'r (Siguin) v. McCarthy, 295 N.Y. 443, 446-447, 68 N.E.2d 434, 435-436. Liberally though we would now apply it, however, we cannot stretch the statute's "broad and remedial purpose" the phrase urged upon us to cover a case such as this. By its very provisions, the statute permits compensation awards only for those injuries "arising out of and in the course of" employment. Workmen's Compensation Law, s 10; see Matter of Ognibene v. Rochester Mfg. Co., 298 N.Y. 85, 80 N.E.2d 749; Matter of Gaurin v. Bagley & Sewall Co., 298 N.Y. 511, 80 N.E.2d 660; Matter of Martin v. Plaut, 293 N.Y. 617, 618, 59 N.E.2d 429, 158 A.L.R. 603. | The Workmen's Compensation Law should be broadly construed to embrace all activities which can in any reasonable sense be included within its coverage. Workmen's Compensation Law, S 1 et seq. | Has workmens compensation been broadly construed to embrace all activities? | 048461.docx | LEGALEASE-00156018-LEGALEASE-00156019 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 12770 | BHA Investments v. State, 138 Idaho 348 | 371+2002 | BHA argues that the transfer fee is, in fact, a tax disguised as a fee, and that, as a tax, it is unconstitutional. Fees and taxes are generally distinguished in that fees are for the purpose of regulation whereas taxes are solely for the purpose of raising revenue. See Brewster v. City of Pocatello, 115 Idaho 502, 504-05, 768 P.2d 765, 767-68 (1988). However, when a regulation is made of the liquor business, the State may impose a large fee-even one that effectively discourages entrance to the business-through the police power without the need of considering the fee as a revenue-raising tax. Phillips v. City of Mobile, 208 U.S. 472, 478-79, 28 S.Ct. 370, 371-72, 52 L.Ed. 578, 580-81 (1908) ("The fact that the city derives more or less revenue from the ordinance in question [liquor license fee] does not tend to prove that this section was not adopted in the exercise of the police power, even though it might also be an exercise of the power to tax. | Fees and taxes are generally distinguished in that fees are for purpose of regulation whereas taxes are solely for purpose of raising revenue. | Are fees and taxes distinguished in that fees are for the purpose of regulation and taxes are solely for the purpose of raising revenue? | 044590.docx | LEGALEASE-00156677-LEGALEASE-00156678 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12771 | Kimball v. Whitney, 15 Ind. 280 | 83E+481 | If by the latter branch of the charge it was meant, that proof was necessary of an indorsement of the note, by the payees to the plaintiff, Samuel L. Collins, it was clearly wrong; because the note might be equitably assigned so as to vest the equitable interest in the assignee, whereby he could have sued upon it in equity, and can now, by statute, sue upon it in his own name, without an indorsement. But if the charge meant that there must be proof of a sale and transfer, merely, of the note, we still think it wrong, and calculated to mislead the jury, as the possession of the note by Collins, was prima facie evidence of ownership, and prima facie entitled him to payment thereof. Bush v. Seaton, 4 Ind. 522. | A promissory note might, under the old system of practice, be equitably assigned, without indorsement, so as to vest the equitable interest in the assignee, and entitle him to proceed upon it in equity; and by our present statute he can sue in his own name. | Can an assignee of a note sue in his own name? | 009098.docx | LEGALEASE-00157155-LEGALEASE-00157156 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 12772 | Connor & Walker v. Donnell, Lawson & Co., 55 Tex. 167 | 8.30E+10 | An accommodation note, wherever dated, signed or indorsed, takes effect, and in law is regarded as made, when and where it is actually delivered and negotiated. 1 Dan. on Neg. Inst., secs. 191, 868; Fant v. Miller, 17 Grattan, 47. | An accommodation note, wherever dated, signed or indorsed, takes effect, and in law is regarded as made, when and where it is actually delivered and negotiated. | Where is an accommodation note regarded as made? | 010929.docx | LEGALEASE-00157940-LEGALEASE-00157941 | Condensed, SA | 0.3 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12773 | McAllister Enterprises v. McAllister Hotel, 219 So. 2d 114 | 156+52(4) | The point on appeal directed to the dismissal of the appellant's complaint for specific performance and damages (the second complaint) urges that although no consideration was promised or given for the extension, the oral promise was binding upon the appellee because of the principle of equitable estoppel. The trial judge correctly determined that the appellant failed to allege sufficient facts to bring itself within the purview of the principle relied upon. In South Inv. Corp. v. Norton, Fla.1952, 57 So.2d 1, the Supreme Court of Florida quoted with approval a statement of the Court of Appeals of New York1 that the doctrine of equitable estoppel is to be applied with great caution when it is invoked for the purpose of effecting a change in title to land. The doctrine will be applied only where to refuse its application would be virtually to sanction the perpetration of fraud. Mathews v. Kingsley, Fla.App.1958, 100 So.2d 445. | Doctrine of equitable estoppel will be applied only where to refuse its application would be virtually to sanction perpetration of fraud. | Does estoppel only apply where to refuse its application would be virtually to sanction the perpetration of fraud? | 017878.docx | LEGALEASE-00156999-LEGALEASE-00157000 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12774 | Teledyne Indus. v. N.L.R.B., 911 F.2d 1214 | 156+52(5) | Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement. For example, before the doctrine of judicial estoppel may be invoked, the prior argument must have been accepted by the court. Edwards v. Aetna Life Insurance Co., 690 F.2d 595, 599 (6th Cir.1982); City of Kingsport v. Steel and Roof Structure, Inc., 500 F.2d 617 (6th Cir.1974). Although this limit allows parties to contradict themselves in court, it threatens only the integrity of the parties, not of the court. See, e.g., Fidelity & Deposit Co. v. Hudson United Bank, 653 F.2d 766, 778-79 (3d Cir.1981) (an answer to an interrogatory in a different suit did not estop the defendant from taking a different position, although the difference could be admitted in evidence at trial). But cf. Hamilton v. Zimmerman, 37 Tenn. (5 Sneed) 39, 48 (1857) (under Tennessee law, courts refuse to allow inconsistent testimony, regardless of judicial acceptance, in order to protect the "sanctity of the oath.") In the federal courts, we rely on impeachment during cross-examination to deter parties from contradicting their prior statements to the court. Fed.R.Evid. 801(d)(1)(A); see also Fed.R.Evid. 613 (even prior inconsistent statements that are not under oath may be used for impeachment). Requiring prior judicial acceptance protects the truth-seeking function of the court, while preserving the court's integrity. | Judicial estoppel is applied with caution to avoid impinging on truth-seeking function of court. | Is judicial estoppel applied with caution to avoid impinging on the truth-seeking function of the court? | Estoppel - Memo #194 - C - CSS_63216.docx | ROSS-003284612-ROSS-003284613 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 12775 | State ex rel. Martin v. Dane Cty. Mut. Ben. Ass'n, 247 Wis. 220 | 217+1002 | The case should not be decided on the basis of definitions of the word "insurance." It is not apparent that the court in Ellison v. Straw, supra, intended an all-inclusive definition of the word "insurance." We must examine all the facts and determine the real nature and substance of the activities carried on by defendant to determine whether the business for which it was formed and actually carried on constitutes a form of insurance.As said by the New York Court of Appeals in People v. Roschli, 275 N.Y. 26, 29, 9 N.E.2d 763, 764: "What is in substance a contract of insurance cannot be changed into something else by giving it another name." | In determining whether business for which a corporation was formed and actually carried on constituted a form of insurance, court must examine all the facts and determine real nature and substance of activities carried on by the corporation. St.1931, S 180.01 et seq.; St.1943, S 206.55. | Can the substance of an insurance contract be changed by giving it another name? | 019544.docx | LEGALEASE-00157379-LEGALEASE-00157380 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 12776 | Wolfpack Enterprises v. Arrington, 272 Ga. App. 175 | 307A+690 | In two related enumerations of error, Wolfpack argues that it appeared for the only published hearing in the case and that the trial court erred in dismissing the application with prejudice for want of prosecution. We agree. A dismissal with prejudice based solely on want of prosecution or failure to appear is improper. As this Court has held: [u]nder Uniform Superior Court Rule 14, the trial court may dismiss without prejudice any civil action upon the failure to properly respond to the call of the action for trial. Pursuant to OCGA " 9-11-41(b) and (c), the dismissal ... for failure to prosecute does not operate as an adjudication upon the merits. These authorities restrict the dismissal of an action for failure to appear at the call of the case to one without prejudice. | Dismissal with prejudice based solely on want of prosecution or failure to appear is improper. West's Ga.Code Ann. S 9-11-41(b, c); Uniform Superior Court Rule 14. | Is a dismissal with prejudice based solely on want of prosecution or failure to appear improper? | 025051.docx | LEGALEASE-00156717-LEGALEASE-00156718 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 12777 | Luna v. United Parcel Serv., 2003 WL 139592 | 307A+693.1 | It is well-established that dismissal for want of prosecution does not preclude the filing of another suit; therefore, dismissing a case with prejudice for want of prosecution is improper. See Willis v. Barron, 604 S.W.2d 447, 450 (Tex.App.-Tyler 1980, writ ref'd n.r.e.). If a case has been dismissed with prejudice for want of prosecution, the order of the trial court dismissing the suit must be reformed to eliminate the words "with prejudice." See Texas Soc'y, Daughters of the Am. Revolution, Inc. v. Hubbard, 768 S.W.2d 858, 863 (Tex.App.-Texarkana 1989, no writ). | Dismissal for want of prosecution does not preclude the filing of another suit; therefore, dismissing a case with prejudice for want of prosecution is improper. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a. | Does a dismissal for want of prosecution not preclude the filing of another suit? | Pretrial Procedure - Memo # 10553 - C - KG.docx | LEGALEASE-00046987-LEGALEASE-00046988 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 12778 | Crosrol Carding Developments v. Gunter & Cooke, 12 N.C. App. 448 | 307A+694 | The court's order is erroneous, however, insofar as it purports to dismiss plaintiff's action with prejudice in the event Carding Canada is not made a party within forty days from the date of the order. Dismissal is appropriate where, as here, the party ordered joined is not subject to the court's jurisdiction. G.S. s 1A-1, Rule 12(b)(7). However, dismissal for failure to join a necessary party is not a dismissal on the merits and may not be with prejudice. G.S. s 1A-1, Rule 41(b). The same is true, of course, where the party ordered joined is not a necessary party but is a proper party which the court, in its discretion, decides should be joined. The following language relating to Rule 12(b)(7) of the Federal Rules of Civil Procedure is applicable also to our Rule 12(b)(7): "When faced with a motion under Rule 12(b)(7), the court will decide if the absent party should be joined as a party. If it decides in the affirmative, the court will order him brought into the action. However, if the absentee cannot be joined, the court must then determine, by balancing the guiding factors set forth in Rule 19(b), whether to proceed without him or to dismiss the action. A dismissal under Rule 12(b)(7) is not considered to be on the merits and is without prejudice." 5 Wright & Miller, Federal Practice and Procedure, s 1359, pp. 628, 631. | Dismissal for failure to join a necessary party is not dismissal on the merits and may not be with prejudice. Rules of Civil Procedure, rule 41(b), G.S. S 1A-1. | Is a dismissal for failure to join a necessary party not a dismissal on the merits and cannot be with prejudice? | 025097.docx | LEGALEASE-00156861-LEGALEASE-00156862 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12779 | Lewis v. City of Savannah, 336 Ga. App. 126 | 307A+693.1 | Under Georgia law, the unqualified dismissal of a case terminates the action, divests the trial court of jurisdiction to take further action in the case, and renders all orders entered after the dismissal a mere nullity. See Montgomery, 322 Ga.App. at 560(1), 745 S.E.2d 778; Gallagher v. Fiderion Group, LLC, 300 Ga.App. 434, 436(1), 685 S.E.2d 387 (2009); Cotton v. Surrency, 277 Ga.App. 158, 626 S.E.2d 148 (2006). Furthermore, upon dismissal of the case, all prior orders that were entered in the case are superseded and can no longer be enforced against the parties. See Montgomery, 322 Ga.App. at 560(1), 745 S.E.2d 778; Gallagher, 300 Ga.App. at 436(1), 685 S.E.2d 387. Thus, the dismissal of a case divests the court of jurisdiction to consider a subsequent contempt motion and precludes the court from finding a party in contempt of an order previously entered in that case. | Upon dismissal of a case, all prior orders that were entered in the case are superceded and can no longer be enforced against the parties. | "Upon dismissal of a case, are all prior orders that were entered in the case superseded and can no longer be enforced against the parties?" | 025143.docx | LEGALEASE-00157137-LEGALEASE-00157138 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 12780 | Hous. Auth. of St. Louis Cty. v. Lovejoy, 731 S.W.2d 510 | 307A+693.1 | In order for a judgment to be final and appealable it must dispose of all parties and issues in the cause. If a counterclaim is pleaded and submitted, a finding must be made disposing of the counterclaim. Wright v. Martin, 674 S.W.2d 238, 240 (Mo.App.1984). An involuntary dismissal of a plaintiff's action in which a counterclaim has been filed does not ordinarily operate to dismiss or to discontinue such counterclaim. See Section 510.170 RSMo (1986). | Involuntary dismissal of plaintiff's action, in which counterclaim has been filed, does not ordinarily operate to dismiss or to discontinue such counterclaim. V.A.M.S. S 510.170. | "Does an involuntary dismissal of a plaintiff's action, in which a counterclaim has been filed, not ordinarily operate to dismiss or to discontinue such counterclaim?" | Pretrial Procedure - Memo # 10633 - C - SJ_63242.docx | ROSS-003296685-ROSS-003296686 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 12781 | Polk v. Wimsatt, 689 S.W.2d 363 | 307A+693.1 | The common law of this jurisdiction has long recognized that the dismissal of a suit for lack of prosecution alone would not operate as a bar to the cause of action. Sumner v. Brewer, 206 Ky. 579, 267 S.W. 1080 (1925); Harris v. Tiffany & Co., 47 Ky. (8 B.Mon.) 225 (1848). If this rule is operative here, then the appellants are correct that there has been no "final adjudication." To determine the efficacy of the rule under the present circumstances, we must consider the effect of the applicable Civil Rules and this Court prior opinion in Civil Action No. 80"CI"10575. | Dismissal of suit for lack of prosecution alone does not operate as a bar to cause of action. Rules Civ.Proc., Rules 41.02, 77.02. | Does dismissal of suit for lack of prosecution alone not operate as a bar to a cause of action? | Pretrial Procedure - Memo # 10640 - C - NE_63249.docx | ROSS-003281414-ROSS-003281415 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 12782 | Pender v. Pender, 634 S.W.2d 244 | 307A+693.1 | An order to dismiss terminates the litigation-the petition as well as the action-unless the decree directs a different effect. Hunt v. Dallmeyer, 517 S.W.2d 720, 723(1-3) (Mo.App.1974). An order to dismiss qualified by a grant of time to file an amended petition (or any other comparable decretal expression) signifies intention to dismiss the petition only, not the action. White v. Sievers, 359 Mo. 145, 221 S.W.2d 118, 123(14) (1949). The official entry on the motion to dismiss recites: "Motion to Modify filed on May 6, 1980, dismissed without prejudice for failure to verify and state cause of action." The effect is an unconditional and peremptory dismissal of the action as well as of the petition. There was neither request for leave to amend nor an order to allow the continuation of the action by amendment or otherwise | An order to dismiss terminates the litigation, the petition as well as the action, unless the decree directs a different effect. | Does an order to dismiss terminate the litigation unless the decree directs a different effect? | 025251.docx | LEGALEASE-00156829-LEGALEASE-00156830 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12783 | Ellis v. Crockett, 51 Haw. 45 | 307A+693.1 | Before embarking upon the procedural path leading to the result we reach, it is essential that there be a clear understanding of the nature of an order of dismissal. An order dismissing a complaint in its entirety is a judgment denying all relief to the plaintiff whose complaint is being dismissed. Because the order dismissing the entire case is in fact a judgment, it is governed by the Hawaii Rules of Civil Procedure applicable to judgments. Thus, for example, H.R.C.P., Rule 58 providing that the judgment is not effective until filed or entered is equally applicable to orders dismissing a case. Likewise, the time limitations for the entry of judgment for purposes of appeal under Rule 73 and the requirement for notice upon entry of judgment pursuant to Rule 77(d) are applicable to such an order. | Order dismissing complaint in its entirety is judgment denying all relief to plaintiff whose complaint is being dismissed. | Is an order dismissing a complaint in its entirety a judgment denying all relief to a plaintiff whose complaint is being dismissed? | Pretrial Procedure - Memo # 10673 - C - NC_62652.docx | ROSS-003285510-ROSS-003285511 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12784 | Robert & Co. Assocs. v. Covil, 113 Ga. App. 387 | 307A+693.1 | The effect of nonsuit is to dismiss the case; it "puts the entire case out of court." Talbotton R. Co. v. Gibson, 106 Ga. 229, 237, 32 S.E. 151, 153; Jones v. Britt, 75 Ga.App. 142, 146, 42 S.E.2d 648. The "entire case" includes the petition. | Effect of nonsuit is to dismiss case and it puts entire case out of court, including the petition. | "Is the effect of nonsuit to dismiss a case and does it put the entire case out of court, including the petition?" | 025295.docx | LEGALEASE-00156995-LEGALEASE-00156996 | Order, SA | 0.6 | 1 | 0 | 0 | 1 | |
| 12785 | Peaslee v. Michalski, 167 So. 2d 242 | 307A+693.1 | The classical operative words of a final judgment for the defendant at common law were that the "plaintiff take nothing by his writ" and that the "defendant go hence without day;" dismissals of actions at law were not then in use, as they are today. A mere nonsuit at trial is not a final judgment; and until one is entered, the case is still pending. | A mere nonsuit at trial is not a final judgment and until such judgment is entered case is still pending. F.S.A. S 54.09. | Is a mere nonsuit at trial not a final judgment and until such judgment is entered will a case be still pending? | Pretrial Procedure - Memo # 10687 - C - TJ_62666.docx | ROSS-003295255 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 12786 | Mongeon v. Burkebile, 79 N.D. 234 | 307A+693.1 | From these authorities we conclude that where an order is entered at the request of the plaintiff, understandingly made, dismissing his action "with prejudice," the dismissal goes to the cause of action and becomes res adjudicata with respect to the issues brought before the court by the action. The words "with prejudice" appearing in a motion or order for dismissal are not always conclusive against the plaintiff. Their effect is determined by the conditions under which they are used. Pueblo de Taos v. Archuleta, 10 Cir., 60 F.2d 807; Chirelstein v. Chirelstein, 12 N.J.Super. 468, 79 A.2d 884; Goddard v. Security Title Ins. & Guar. Co., 14 Cal.2d 47, 83 P.2d 24, 92 P.2d 804. | The words "with prejudice" appearing in motion or order for dismissal are not always conclusive against plaintiff, but their effect is determined by conditions under which they are used. | "Are the words ""with prejudice"" appearing in a motion or order for dismissal always conclusive against a plaintiff?" | 025311.docx | LEGALEASE-00157034-LEGALEASE-00157035 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 12787 | Whitaker v. Wright, 100 Fla. 282 | 307A+693.1 | Jurisdiction of the parties is not lost by the mere entry of a nonsuit without a final judgment rendered and entered thereon. | Jurisdiction of parties is not lost by mere entry of nonsuit without final judgment. | Is the jurisdiction of parties not lost by mere entry of nonsuit without final judgment? | 025320.docx | LEGALEASE-00157048-LEGALEASE-00157049 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12788 | Pure Milk Co. v. Salter, 224 Ala. 417 | 307A+510 | These two sections are remedial in nature, and must be construed together. The plaintiff has not taken a nonsuit, but simply exercised a well"recognized right that has existed here for years. In exercising this right of amendment, even if it were conceded that the defendant Gilham had the right to file his plea of recoupment, this cross"suit was brought to an end with the dismissal of Gilham from the original suit. Section 9493, while remedial in nature, cannot be extended beyond its plainest terms. It deals with the one subject of set"off and recoupment, where nonsuit is taken by plaintiff. At common law plaintiff could at any time dismiss his suit, and this carried along with it defendant's plea of set"off or recoupment, and this common"law rule prevails in this state, except in so far as section 9493 of the Code may limit this right. Huffstutler v. Louisville Packing Co., 154 Ala. 291, 45 So. 418, 15 L. R. A. (N. S.) 340, 129 Am. St. Rep. 57. This section, new to the Code of 1923, must be construed in connection with section 9513, relating to amendments, and so construing it, both have a field of operation. | Plaintiff's common-law right to dismiss suit carrying with it plea of set-off or recoupment prevails in Alabama except as modified by statute (Code 1923, S 9493). | "At common law, can the plaintiff at any time dismiss his suit, carrying along with it a defendant's plea of set-off or recoupment?" | Pretrial Procedure - Memo # 11044 - C - PC_63433.docx | ROSS-003294502-ROSS-003294503 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 12789 | Johnson v. LeBonheur Children's Med. Ctr., 74 S.W.3d 338 | 231H+3045 | Moreover, an agent may serve two masters simultaneously when the objectives of the dual masters are not contrary. "A person may be the servant of two masters, not joint employers, at one time as to one act, if the service does not involve abandonment of the service to the other." (quoting Restatement (Second) of Agency, " 226 cmt. b.). Two parties "may agree to employ a servant together or to share the services of a servant. If there is one agreement with both of [the parties], the actor is the servant of both [when] the servant is subject to joint control." Restatement of the Law, Second, Agency, " 226. Thus, a person serving two masters may subject both to liability for the same act "if the act is within the scope of employment for both." White, 33 S.W.3d at 725 (quoting Restatement (Second) of Agency, " 226 cmt. a.). We hold, therefore, that a physician resident may be the agent of both the State and a private hospital. Whether an agency relationship exists is determined by the trier of fact. See Harris v. St. Mary's Med. Ctr., Inc., 726 S.W.2d 902, 906 (Tenn.1987). | A person serving two masters may subject both to liability for the same act if the act is within the scope of employment for both. | When can a person serving two masters subject both to liability for the same act? | Principal and Agent - Memo 413 - RK_63533.docx | ROSS-003296270-ROSS-003296271 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12790 | KnightBrook Ins. Co. v. Payless Car Rental Sys., 43 F. Supp. 3d 965 | 308+48 | Arizona courts generally follow the Restatement of Agency. Fidelity & Deposit Co. of Md. v. Bondwriter of Sw., Inc., 228 Ariz. 84, 263 P.3d 633, 639 (Ariz.Ct.App.2011). The Restatement defines "agency" as "a consensual and fiduciary relationship" that "creates a [fiduciary] duty upon the agent to act in good faith and according to the terms of the agency agreement." Maricopa P'ships, Inc. v. Petyak, 163 Ariz. 624, 790 P.2d 279, 281 (Ariz.Ct.App.1989); see Restatement (Third) of Agency " 1.01 (2006) ( "Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."). | Under Arizona law, "agency" is consensual and fiduciary relationship that creates fiduciary duty upon the agent to act in good faith and according to terms of agency agreement. Restatement (Third) of Agency S 1.01. | Is an agency a consensual relationship? | Principal and Agent - Memo 419 - RK_63539.docx | ROSS-003284806-ROSS-003284807 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 12791 | Ward v. Mgmt. Analysis Co. Employee Disability Ben. Plan, 135 F.3d 1276 | 308+3(1) | Of course, the existence of an agency relationship generally presents a question of fact:Whether as between the parties their relationship is one of agency depends on their relations as they in fact exist under the agreement or acts of the parties, and the question is not governed by the stipulations of the parties. Thus, whether a particular relationship is that of agency does not depend on what the parties call it, and the parties cannot, where the relationship is in fact one of agency, change its nature by declaring that it is not an agency, nor can they, by calling their relations one of agency, make it so when it is not so in fact. The surrounding facts and circumstances determine the relationship, regardless of the understanding of the parties as to the exact nature of the relationship....2A C.J.S. Agency " 7 (1972); accord, Wallace v. Sinclair, 114 Cal.App.2d 220, 250 P.2d 154, 160"61 (1952); American Marine Paint Co. v. Nyno Line, 70 Cal.App. 415, 233 P. 366, 369 (1924) ("nor does it matter whether or not his employment be called an agency"); 3 Am.Jur.2d Agency " 21 (1986) ("The manner in which the parties designate the relationship is not controlling, and if an act done by one person in behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called."); 2(pt. 2) Cal. Jur.3d Agency " 12, at 170"73 & nn. 77"93 (1997) (citing Elfstrom ). Ordinarily, an agency relationship may be established through evidence of control and apparent or applied authority, even where the parties have agreed to the contrary. See, e.g., Kuchta v. Allied Builders Corp., 21 Cal.App.3d 541, 547, 98 Cal.Rptr. 588, 591 (1971) (notwithstanding that "the agreement itself stated that no such agency relationship was created, the declarations of the parties in the agreement respecting the nature of the relationship are not controlling."); Fernander v. Thigpen, 278 S.C. 140, 293 S.E.2d 424, 426 (1982). | Whether as between parties their relationship is one of agency depends on their relations as they in fact exist under agreement or acts of parties, and the question is not governed by stipulations of the parties. | Can agency be governed by stipulation of the parties? | Principal and Agent - Memo 425 - RK_63545.docx | ROSS-003309162-ROSS-003309163 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12792 | Whitco Produce Co. v. Bonanza Int'l, 154 Ga. App. 92 | 289+437 | We affirm. The general rule is that a franchise contract under which one operates a type of business on a royalty basis does not create an agency or a partnership relationship. Arthur Murray, Inc. v. Smith, 124 Ga.App. 51, 53, 183 S.E.2d 66. Thus in order to impose liability on the franchisor for the debts of the franchisee, it must be shown that: (a) the franchisor has by some act or conduct obligated itself to pay the debts of the franchisee (Folsom v. Miller, 102 Ga.App. 232, 116 S.E.2d 1); or (b) the franchisee is not a franchisee in fact but a mere agent or "alter ego" of the franchisor. Buchanan v. Canada Dry Corp., 138 Ga.App. 588, 226 S.E.2d 613. In this case there was absolutely no evidence that Bonanza made any representations to any person working for Whitco that it (Bonanza) would be liable for Biftec's obligations or was in any way related to Biftec's operations. At best there was evidence that the appearance and names on the two restaurants remained the same. The testimony of the vice president for operations of Bonanza, together with the franchise agreement entered into evidence, established that Biftec was not an agent or alter ego of Bonanza. Thus all that appeared to the trial court was that Biftec was a royalty franchisee of Bonanza. Moreover, where questions of agency arise, the denial of the relationship is a statement of fact when made by a party to the alleged relationship. Salters v. Pugmire Lincoln-Mercury, 124 Ga.App. 414, 184 S.E.2d 56. | Generally, franchise contract under which one operates a type of business on royalty basis does not create agency or partnership relationship. | Can a franchise contract create an agency relationship? | Principal and Agent - Memo 428 - RK_63548.docx | ROSS-003279117-ROSS-003279118 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 12793 | Johnson v. LeBonheur Children's Med. Ctr., 74 S.W.3d 338 | 231H+3045 | Moreover, an agent may serve two masters simultaneously when the objectives of the dual masters are not contrary. "A person may be the servant of two masters, not joint employers, at one time as to one act, if the service does not involve abandonment of the service to the other." (quoting Restatement (Second) of Agency, " 226 cmt. b.). Two parties "may agree to employ a servant together or to share the services of a servant. If there is one agreement with both of [the parties], the actor is the servant of both [when] the servant is subject to joint control." Restatement of the Law, Second, Agency, " 226. Thus, a person serving two masters may subject both to liability for the same act "if the act is within the scope of employment for both." White, 33 S.W.3d at 725 (quoting Restatement (Second) of Agency, " 226 cmt. a.). We hold, therefore, that a physician resident may be the agent of both the State and a private hospital. Whether an agency relationship exists is determined by the trier of fact. See Harris v. St. Mary's Med. Ctr., Inc., 726 S.W.2d 902, 906 (Tenn.1987). | A person serving two masters may subject both to liability for the same act if the act is within the scope of employment for both. | Can a person serving two masters subject both to liability for the same act? | Principal and Agent - Memo 431 - RK_63551.docx | ROSS-003297919-ROSS-003297920 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12794 | Patterson v. W. Auto Supply Co., 991 F. Supp. 1319 | 308+26 | Under Florida law the issue of agency is generally a question of fact to be determined by a jury. Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla.1983); Robbins v. Hess, 659 So.2d 424 (Fla.Dist.Ct.App.1995); Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla.Dist.Ct.App.1991). Further, the descriptive labels utilized by the parties to define their relationship do not control the nature and extent of that relationship. Mobil Oil Corp. v. Bransford, 648 So.2d 119 (Fla.1995) (stating that an agency relationship may be created by contract, action or representation); Parker v. Domino's Pizza, Inc., 629 So.2d 1026 (Fla.Dist.Ct.App.1993). Therefore, regardless of the facts that the agreement between Western Auto and McBride is characterized as an "Associate Store Contract," that paragraph "E." of the contract disclaims McBride's status as an agent for Western Auto, and that Western Auto characterizes the contract as creating a "vendor/purchaser" arrangement, those terms and provisions are not dispositive on the question of agency. Although Western Auto attempts to define their relationship with McBride as not one of agency, other terms and provisions provide for substantial involvement by Western Auto in the operation of the store run by McBride. When the contract as a whole contains conflicting or ambiguous clauses, they are to be construed against the drafter. Sapp v. City of Tallahassee, 348 So.2d 363, 367 (Fla.Dist.Ct.App.1977). | Under Florida law, descriptive labels utilized by parties to define their relationship do not control nature and extent of that relationship for purposes of agency law. | Can descriptive labels utilized by the parties to define their relationship control the nature and extent of that relationship? | Principal and Agent - Memo 437 - RK_63557.docx | ROSS-003322509-ROSS-003322510 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12795 | Dougherty v. Bank of Am., N.A., 177 F. Supp. 3d 1230 | 308+48 | Under California law, an agent is defined as "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code " 2295. A principal-agent relationship exists if an agent holds the power to alter the legal relations between the principal and third persons, if an agent is a fiduciary, or if the principal has a right to control the day-to-day conduct of the agent. Wallis v. Centennial Ins. Co., Inc., 927 F.Supp.2d 909, 916 (E.D.Cal.2013). "If, however, the principal has no control over the day-to-day operations and only has [the] right to dictate the end result of the agent's activities, then an 'independent contractor' relationship exists." | Under California law, a principal-agent relationship exists if an agent holds the power to alter the legal relations between the principal and third persons, if an agent is a fiduciary, or if the principal has a right to control the day-to-day conduct of the agent; if, however, the principal has no control over the day-to-day operations and only has the right to dictate the end result of the agent's activities, then an independent contractor relationship exists. Cal. Civ. Code S 2295. | When does an independent contractor relationship exist? | Principal and Agent - Memo 478- PR_63269.docx | ROSS-003279872-ROSS-003279873 | Condensed, SA | 0.28 | 0 | 1 | 0 | 1 | |
| 12796 | Pescia v. Auburn Ford-Lincoln Mercury Inc., 68 F. Supp. 2d 1269 | 308+1 | Ms. Pescia also contends that FMCC is liable for Auburn Ford's fraud under the law of agency. Under Alabama law:The test for determining whether one is an agent of the defendant is whether the defendant has reserved the right of control over the means by which the work is done. Stated differently, the defendant must have reserved the right to direct not only what shall be done, but also how it shall be done.Wilson v. Direct Cable Tech., Inc., 964 F.Supp. 1548 (M.D.Ala.1997) | Under Alabama law, the test for determining whether one is an agent of the defendant is whether the defendant has reserved the right of control over the means by which the work is done; stated differently, the defendant must have reserved the right to direct not only what shall be done, but also how it shall be done. | How should it to be determined whether one is an agent? | Principal and Agent - Memo 506 - KK_63284.docx | ROSS-003321017-ROSS-003321018 | Condensed, SA | 0.34 | 0 | 1 | 0 | 1 | |
| 12797 | APSB Bancorp v. Thornton Grant, 26 Cal. App. 4th 926 | 308+3(2) | Appellant concedes that it is an independent contractor. However, as independent contractor and agent are not mutually exclusive legal categories, our inquiry does not end here. (City of Los Angeles v. Meyer Bros. Parking System, Inc. (1975) 54 Cal.App.3d 135, 138, 126 Cal.Rptr. 545.) In Meyer Bros. it was held an independent contractor is also an agent when it contracts to act on behalf of a "principal" and is subject to the "principal's" control except with respect to the "agent's" physical conduct. (p. 138, 126 Cal.Rptr. 545.) | Independent contractor and agent are not mutually exclusive legal categories, and independent contractor is also an agent when it contracts to act on behalf of a principal and is subject to the principal's control except with respect to the agent's physical conduct. | Can an independent contractor also be an agent? | Principal and Agent - Memo 512 - KK_63290.docx | ROSS-003321610-ROSS-003321611 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12798 | State ex rel. Ford Motor Co. v. Bacon, 63 S.W.3d 641 | 308+1 | "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency sec. 1 (1958); State ex rel. Elson v. Koehr, 856 S.W.2d 57, 60 (Mo. banc 1993). The Restatement specifically states, "A corporation does not become an agent of another corporation merely because a majority of its voting shares is held by the other." Restatement (Second) of Agency sec. 14M. Therefore, an agency relationship between a parent and its subsidiary may only be established if the elements of an agency relationship exist. sec. 14. | "Agency" is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Restatement (Second) of Agency S 1. | Can an agency relationship result from manifestation of consent? | Principal and Agent - Memo 562- SB_63578.docx | ROSS-003293204-ROSS-003293205 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 12799 | Crist v. Ervin, 56 So. 3d 745 | 92+2317 | Based upon our decisions in Flood and Farabee, a statutory filing fee is not considered an unconstitutional tax repugnant to court access if the fee is used to fund the costs of the administration of justice. There is no requirement in the Florida Constitution that the very money paid for filing fees be used to fund the administration of justice. Money is fungible. See generally 53A Am.Jur.2d Money " 18 (2006) ("Money is in its nature severable; one coin or note has the same essential qualities and value possessed by any other of like denomination. In other words, money is fungible or interchangeable.") (footnotes omitted); Williams Mgmt. Enters., Inc. v. Buonauro, 489 So.2d 160, 164 (Fla. 5th DCA 1986) ("[A]s Blackstone noted, normally money is fungible property, like grain, cotton, etc., which, if commingled with other similar money, is incapable of specific identification...."). Once the filing fees are commingled with other state money in the general revenue fund, the filing fees lose their separate character and become interchangeable with the other state money. Therefore, the Legislature would be using the filing fees to fund the administration of justice if it funds the justice system at a level at least equal to the amount of filing fees that is commingled with other state money in the general revenue fund. | A statutory filing fee is not considered an unconstitutional tax repugnant to court access if the fee is used to fund the costs of the administration of justice. West's F.S.A. Const. Art. 1, S 21. | Is filing fee an unconstitutional tax? | Taxation - Memo # 1028 - C - JL.docx | LEGALEASE-00047655-LEGALEASE-00047656 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 12800 | Com. v. Sholley, 432 Mass. 721 | 3.77E+11 | It is of no consequence that the threat pertained to some uncertain time in the future. See Commonwealth v. Ditsch, 19 Mass.App.Ct. 1005, 1005, 475 N.E.2d 1235 (1985) (letter sent by inmate at house of correction could constitute a threat to commit a crime as "absence of immediate ability, physically and personally, to do bodily harm" does not preclude conviction of threats). The facts in Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), bear no resemblance to the facts of the present case. Sholley was not delivering a speech to a crowd at a rally, nor was he making statements about what he would "want" to do "if" some other event occurred. Rather, he was yelling directly at his victim, standing inches from her, angrily warning her that she should "Watch out." | It was of no consequence, for purposes of prosecution for threatening to commit a crime, that threat pertained to some uncertain time in the future. M.G.L.A. c. 275, S 2. | "If a threat pertains to some uncertain time in the future, does this have any consequence on the prosecution for threatening to commit a crime?" | 046876.docx | LEGALEASE-00157692-LEGALEASE-00157693 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 12801 | Alejandro v. Riportella, 250 A.D.2d 556 | 413+102 | The term "employment" for purposes of coverage by the Workers' Compensation Law is defined as including "employment in a trade, business or occupation carried on by the employer for pecuniary gain" (Workers' Compensation Law " 2[5] ). The statute generally applies to employers carrying on a business for profit (see, Dillon v. Trustees of St. Patrick's Cathedral, 234 N.Y. 225, 137 N.E. 311) and not to persons who engage laborers to perform work on their private homes (Emmi v. Emmi, 186 A.D.2d 1025, 588 N.Y.S.2d 481; Matter of Empie v. Cossart, 259 App.Div. 941, 20 N.Y.S.2d 3; Matter of Goldberger v. Goldberger, 200 App.Div. 190, 192 N.Y.S. 727). Thus, the defendants are not entitled to the protection of the exclusivity provisions of the Workers' Compensation Law. | Statute defining "employment" for purposes of coverage by workers' compensation law as including employment in trade, business or occupation carried on by employer for pecuniary gain, generally applies to employers carrying on business for profit, and not to persons who engage laborers to perform work on their private homes. McKinney's Workers' Compensation Law S 2, subd. 5. | How is employment defined in Workers Compensation? | 047689.docx | LEGALEASE-00157492-LEGALEASE-00157493 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 12802 | Rotert v. Faulkner, 660 S.W.2d 463 | 83E+481 | We have already seen in Kaw Valley State Bank & Trust, 567 S.W.2d 710, that the owner of a note that is not negotiable may transfer his interest therein by assignment. An earlier case, Sauter v. Leveridge, 103 Mo. 615, 15 S.W. 981 (1891), reached the same result.There, the owner-payee of two notes that were past maturity, and thus no longer negotiable, assigned the notes to another. The assignment was by separate instrument, the notes themselves being lost. Judgment for the assignee against the maker was affirmed. It is thus established in Missouri that even though a note does not possess the quality of negotiability, its owner may nonetheless, by assignment, transfer his interest to another. Any language, however informal, if it shows the intention of the owner of a chose in action to transfer it, and sufficiently identifies the subject matter, is sufficient to vest the property therein in the assignee. Greater Kansas City Baptist and Community Hospital Association, Inc. v. Businessmen's Assurance Co., 585 S.W.2d 118, 119[1] (Mo.App.1979); Halvorson v. Commerce Trust Co., 222 S.W. 897, 898 (Mo.App.1920) | Even though note does not possess quality of negotiability, its owner may nonetheless, by assignment, transfer his interest to another, and any language, however informal, if it shows intention of owner of chose in action to transfer it, and sufficiently identifies subject matter, is sufficient to vest property therein in assignee. | Can the owner of a non-negotiable note transfer his interest by assignment? | 009116.docx | LEGALEASE-00158938-LEGALEASE-00158939 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 12803 | Willard v. Bank of Am., 204 F. Supp. 3d 829 | 172H+1280 | On appeal, the Third Circuit Court of Appeals affirmed Judge Pratter's decision holding that "Scott misapprehends the effect of securitizing a credit card receivable. "Credit card securitization involves the securitization solely of the receivables, not of the accounts themselves." " Scott v. Bank of Am., 580 Fed.Appx. 56, 57 (3d Cir.2014) (quoting Adam J. Levitin, Skin"in"the"Game: Risk Retention Lessons from Credit Card Securitization, 81 GEO. WASH. L. REV. 813 (2013)). The Third Circuit also noted, as had Judge Pratter, that "[t]he courts that have considered the effect of securitizing credit card receivables are all in agreement that it does not divest the issuer of its ownership interest in the credit card accounts." Id. This Court agrees with the analysis presented in these cases and holds that Plaintiff's argument to the contrary is meritless. | Credit card issuer did not relinquish its beneficial interest in credit card holder's credit card account by securitizing its credit card receivables and transferring them to a trust, and thus, credit card holder was not relieved of her obligation to pay the debt owed on the account; securitization merely created a separate contract involving the receivables, distinct from card holder's debt obligations, and did not divest the issuer of its ownership interest in the credit card account. | Does securitizing credit card receivables divest the issuer of its ownership interest in the credit card accounts? | 014046.docx | LEGALEASE-00158750-LEGALEASE-00158751 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12804 | Jackson-Shaw Co. v. Jacksonville Aviation Auth., 510 F. Supp. 2d 691 | 183+1 | A "franchise" is defined as "a special privilege conferred upon one or more individuals or a corporation by governmental authority to do something that cannot be done of common right." Landis v. Rosenthal, 109 Fla. 363, 148 So. 769, 769 (1933); see also City of Mt. Dora v. JJ's Mobile Homes, Inc., 579 So.2d 219, 223"24 (Fla. 5th DCA 1991)(franchise is " "a special privilege conferred by the government on individuals or corporations that does not belong to the citizens of a country generally by common right" "). Franchises "are permitted to be used for the good of the public, usually for the purpose of rendering an adequate service without unjust discrimination, and for a reasonable compensation." Leonard v. Baylen Street Wharf Co., 59 Fla. 547, 52 So. 718, 718 (1910) Franchisees are charged "fees" which " "are bargained for in exchange for specific property rights relinquished by the [government entity]." " Alachua County v. State, 737 So.2d 1065, 1068 (Fla.1999). | Under Florida law, franchises are permitted to be used for the good of the public, usually for the purpose of rendering an adequate service without unjust discrimination, and for a reasonable compensation. | Are franchises granted for public good? | 018537.docx | LEGALEASE-00158945-LEGALEASE-00158946 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 12805 | Gulf Ref. Co. v. Cleveland Tr. Co., 166 Miss. 759 | 183+1 | "A franchise is a special privilege conferred by governmental authority, and which does not belong to citizens of the country generally as a matter of common right. *** Its meaning depends more or less upon the connection in which the word is employed and "the property and corporation to which it is applied. It may have different significations." | "Franchise" is special privilege conferred by governmental authority, and which does not belong to citizens of country generally as matter of common right. | Does franchise belong to the citizens by common right? | 018573.docx | LEGALEASE-00158759-LEGALEASE-00158760 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 12806 | Grosso v. Love, 667 A.2d 43 | 307A+561.1 | The common pleas court also dismissed Appellant's complaint because it was time-barred and repetitious (res judicata). However, both statute of limitations and res judicata are affirmative defenses and as such are waived if not raised in a responsive pleading under the heading "New Matter." Pa.R.C.P. Nos. 1030 and 1032. | Both statute of limitations and res judicata are affirmative defenses and, as such, are waived if not raised in a responsive pleading. Rules Civ.Proc., Rules 1030, 1032, 42 Pa.C.S.A. | Are statute of limitations and res judicata waived if not raised in a responsive pleading? | Pretrial Procedure - Memo # 10749 - C - TJ_63864.docx | ROSS-003282515 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 12807 | Kansas City Mortg. Co. v. Burgess, 306 So. 2d 161 | 241+180(7) | The three year Statute of Limitations for an action for fraud (Section 95.11(5)(d), F.S.) applies, and, ultimately, may be established as a bar to the action. It is, however, an affirmative defense and can be asserted by a motion to dismiss only it it appears on the face of a prior pleading. Rule 1.110(d), R.C.P. On the face of the complaint it appeared that the cause of action did accrue more than three years prior to the filing of the complaint. | Three-year statute of limitations for an action for fraud is an affirmative defense and can be asserted by a motion to dismiss only if it appears on the face of a prior pleading. West's F.S.A. S 95.11(5)(d); 30 West's F.S.A. Rules of Civil Procedure, rule 1.110(d). | Will affirmative defenses appearing on face of prior pleading be asserted in motion to dismiss? | 025451.docx | LEGALEASE-00158282-LEGALEASE-00158283 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 12808 | LaRocca v. Bailey, 799 So. 2d 1263 | 307A+693.1 | We begin this analysis with the understood rule that a motion and order to dismiss without prejudice has the same force and effect as a final judgment. La.Code Civ.P. art. 1918 reads in part that "[a] final judgment shall be identified as such by appropriate language." As the court pointed out in Gilcrease v. Bacarisse 26,318 (La.App. 2 Cir. 12/7/94); 647 So.2d 1219, writ denied, 95"0421 (La.3/30/95); 651 So.2d 845, the Official Revision Comment (a) to Art. 1918 explains that "[i]n Louisiana the form and wording of judgments is not sacramental. Nonetheless, Louisiana courts require that a judgment be precise, definite and certain." (Citation omitted). As in Gilcrease, the precise, definite, and certain language of the trial judge's motion and order to dismiss without prejudice is indicative of a final judgment. Moreover, the order complies with La.Code Civ.P. art. 1911 in that it was signed by the trial judge. | A motion and order to dismiss without prejudice has the same force and effect as a final judgment. LSA-C.C.P. art. 1918. | Does a motion and order to dismiss without prejudice have the same force and effect as a final judgment? | Pretrial Procedure - Memo # 10988 - C - NS_64111.docx | ROSS-003278840-ROSS-003278841 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 12809 | Kouba v. Febco, 543 N.W.2d 245 | 307A+693.1 | The manner in which the trial court dismissed Kouba's complaint, dismissal without prejudice, is inconsistent with the ground the court stated for dismissing the complaint, failure to state a claim upon which relief can be granted (12)(b)(5)). A dismissal without prejudice neither precludes a subsequent action nor addresses the merits of an action. E.g., Community Homes of Bismarck v. Clooten, 508 N.W.2d 364, 365 (N.D.1993); Runck v. Brakke, 421 N.W.2d 487, 488 (N.D.1988). Conversely, a 12(b)(5) dismissal bars a subsequent action and generally involves the merits of an action. See Smith v. City of Grand Forks, 478 N.W.2d 370, 372 (N.D.1991) (quoting Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2nd Cir.1963)); 2A J. Moore, Moore's Federal Practice (2d ed.1995); but see McLean v. Kirby Co., 490 N.W.2d 229, 233 (N.D.1992). "[A] dismissal for failure to state a claim upon which relief can be granted is with prejudice." Arrowsmith, 320 F.2d at 221. | Dismissal without prejudice neither precludes subsequent action nor addresses merits of action. | Does a dismissal without prejudice neither preclude subsequent action nor addresses merits of an action? | 025786.docx | LEGALEASE-00159192-LEGALEASE-00159193 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 12810 | Weber v. Weber, 908 S.W.2d 356 | 307A+693.1 | Dismissal of a plaintiff's petition in a civil action does not render a counterclaim or cross-claim filed in the action dismissed or discontinued. Rule 67.05. Thus, had Mr. Weber filed a cross-petition for dissolution, the dismissal of Ms. Weber's petition would not have precluded the court's hearing evidence and rendering judgment on the cross-petition | Dismissal of petition in civil action does not render counterclaim or cross-claim filed in action dismissed or discontinued. V.A.M.R. 67.05. | Does dismissal of a petition in a civil action not render a counterclaim or cross-claim filed in action dismissed or discontinued? | 025792.docx | LEGALEASE-00159178-LEGALEASE-00159179 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 12811 | Iskalo Elec. Tower LLC v. Stantec Consulting Servs., 113 A.D.3d 1105 | 307A+46 | The court has the power to grant a conditional order that imposes a sanction upon a party unless that party submits to a discovery request by a certain date (see Gibbs v. St. Barnabas Hosp., 16 N.Y.3d 74, 79, 917 N.Y.S.2d 68, 942 N.E.2d 277; Legarreta v. Neal, 108 A.D.3d 1067, 1068, 969 N.Y.S.2d 305; see also CPLR 3126). Generally, a "conditional order [of dismissal is] self-executing and [a party]'s "failure to produce [the requested] items on or before the date certain" render[s] it "absolute" " (Wilson v. Galicia Contr. & Restoration Corp., 10 N.Y.3d 827, 830, 860 N.Y.S.2d 417, 890 N.E.2d 179; see Gibbs, 16 N.Y.3d at 78, 917 N.Y.S.2d 68, 942 N.E.2d 277; Burton v. Matteliano, 98 A.D.3d 1248, 1250, 951 N.Y.S.2d 772). "Nevertheless, a conditional order, like any other, must be sufficiently specific to be enforceable" (Trabanco v. City of New York, 81 A.D.3d 490, 492, 916 N.Y.S.2d 90). Here, the court's conditional order did not give a specific, concrete directive, but rather ordered plaintiffs to disclose "the documents and information sought in [defendant]'s motion." | Generally, a conditional order of dismissal is self-executing and a party's failure to produce the requested items on or before the date certain renders it absolute; nevertheless, a conditional order, like any other, must be sufficiently specific to be enforceable. | Is a conditional order of dismissal meant to be self-executing? | 025804.docx | LEGALEASE-00159166-LEGALEASE-00159167 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12812 | Golconda Petroleum Corp. v. Petrol Corp., 46 F. Supp. 23 | 307A+693.1 | Courts will not permit an action to be dismissed if such dismissal tends to prejudice the rights of interested parties and if for some reason the party commencing the action desires to dismiss it, the courts will examine the record carefully if objection be made and will permit the action to be tried if the ends of justice will be served. Merchants National Bank v. United States, 2 Cir., 214 F. 200. If the court should grant the motion to dismiss the action then the court would lose jurisdiction, as diversity of citizenship would not exist in the petitioner intervenors. This question was carefully considered by Judge Yankwich in Re Pacific States Savings & Loan Co., D.C., 27 F.Supp. 1009, 1010. The court held that "where a party is allowed to intervene in an action in aid of either side, and the original action is dismissed, intervention also fails." Henry v. Vineland Irr. District, 1903, 140 Cal. 376, 73 P. 1061; Townsend v. Driver, 1907, 5 Cal.App. 581, 90 P. 1071; Stern & Goodman Inv. Co. v. Danziger, 1929, 206 Cal. 456, 274 P. 748. | Where a party is allowed to intervene and the original action is dismissed, intervention also fails. | "Where a party is allowed to intervene and the original action is dismissed, does intervention also fail?" | Pretrial Procedure - Memo # 11059 - C - SHS_63446.docx | ROSS-003281391-ROSS-003281392 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 12813 | Rausch v. Hanberry, 377 So. 2d 901 | 343+2205 | The trial court properly maintained the dilatory exception of prematurity; however, dismissal of the action in redhibition should have been without prejudice. C.C.P. art. 926 lists prematurity as one of the dilatory exceptions and C.C.P. art. 933 Official Revisions Comment (c) points out a suit subject to dismissal for premature filing must be dismissed without prejudice and plaintiffs' right to bring the action anew must be maintained. See Jordan v. LeBlanc and Broussard Ford, Inc., 332 So.2d 534 (La.App.3d Cir. 1976). | Dilatory exception of prematurity was properly maintained as to action in redhibition, where plaintiff failed to tender return of the residence which allegedly contained vices and defects sufficient to warrant rescission of the sale, but dismissal of the action in redhibition should have been without prejudice; on the other hand, as to the quanti minoris relief sought, that demand was not premature since tender to return the object sold is not required to maintain an action in quanti minoris. LSA-C.C. arts. 2521, 2541, 2545; LSA-C.C.P. arts. 926, 930, 933 comment. | "When an action is premature, should it be dismissed?" | 025882.docx | LEGALEASE-00158076-LEGALEASE-00158077 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 12814 | Butler v. Mayer, Brown & Platt, 301 Ill. App. 3d 919 | 307A+679 | In ruling on a section 2-619 motion, a court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that can reasonably be drawn in his favor. Hermitage Corp. v. Contractors Adjustment Co., 166 Ill.2d 72, 85, 209 Ill.Dec. 684, 651 N.E.2d 1132 (1995). Dismissal is proper when there are no genuine issues of material fact and dismissal is proper as a matter of law. See Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116-17, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). We review a section 2-619 dismissal de novo. Kedzie, 156 Ill.2d at 116, 189 Ill.Dec. 31, 619 N.E.2d 732. | In ruling on motion to dismiss, court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that can reasonably be drawn in his favor. S.H.A. 735 ILCS 5/2-619. | Can a complaint be dismissed when no genuine issue of material fact exists? | 025897.docx | LEGALEASE-00158112-LEGALEASE-00158113 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 12815 | Bd. of Educ. of City of Chicago v. Bd. of Trustees of Pub. Sch. Teachers' Pension & Ret. Fund of Chicago, 395 Ill. App. 3d 735 | 30+3200 | A motion to dismiss pursuant to section 2"619 of the Code admits the legal sufficiency of the plaintiff's complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229, 236 (2006). Section 2"619(a)(5) of the Code provides for dismissing a complaint on the ground "[t]hat the action was not commenced within the time limited by law." 735 ILCS 5/2"619(a)(5) (West 2006). "Section 2"619 motions present a question of law, and we review rulings thereon de novo." DeLuna, 223 Ill.2d at 59, 306 Ill.Dec. 136, 857 N.E.2d at 236. | Motions to dismiss based on certain defects or defenses present a question of law, and rulings thereon are reviewed de novo. S.H.A. 735 ILCS 5/2-619. | Are rulings reviewed de novo when motions to dismiss present a question of law? | 025956.docx | LEGALEASE-00158280-LEGALEASE-00158281 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 12816 | Turner v. Mem'l Med. Ctr., 233 Ill. 2d 494 | 307A+561.1 | A section 2"615 motion to dismiss (735 ILCS 5/2"615 (West 2006)) attacks the legal sufficiency of a complaint. The motion does not raise affirmative defenses, but rather alleges only defects on the face of the complaint. The question presented by a section 2"615 motion to dismiss is whether the allegations of the complaint, when taken as true and viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. | A motion to dismiss on the pleadings does not raise affirmative defenses, but rather alleges only defects on the face of the complaint. S.H.A. 735 ILCS 5/2-615. | Does a motion to dismiss on pleadings raise affirmative defense? | 025966.docx | LEGALEASE-00158328-LEGALEASE-00158329 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 12817 | Dinges v. Gabardi, 202 Ill. App. 3d 732 | 307A+561.1 | Plaintiff first contends that the County had a duty to warn of the downed stop sign because it regulated the flow of traffic on a road under the County's jurisdiction. Plaintiff correctly asserts that since this is an appeal of an order dismissing a complaint, all well-pleaded facts are taken as true. (See Kirk v. Michael Reese Hospital & Medical Center (1987), 117 Ill.2d 507, 514, 111 Ill.Dec. 944, 513 N.E.2d 387, cert. denied (1988), 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236.) Even if the complaint states a cause of action on its face, where an affirmative defense negates the cause of action, the dismissal is proper. Land v. Auler (1989), 186 Ill.App.3d 382, 384-85, 134 Ill.Dec. 330, 542 N.E.2d 509. | Even if complaint states cause of action on its face, where affirmative defense negates cause of action, dismissal is proper. | Will a dismissal be proper if complaint states cause of action on its face? | 039555.docx | LEGALEASE-00159218-LEGALEASE-00159219 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12818 | Keough v. Cyrus USA, 204 S.W.3d 1 | 307A+699 | Keough asserts she was unaware her attorney had been disbarred or trial had been set, and argues she was unable to secure other counsel before trial. She did not produce evidence supporting these contentions to the trial court. In the absence of evidence, a trial court does not abuse its discretion by denying a motion to reinstate. See Smith v. Babcock & Wilcox Constr. Co., Inc., 913 S.W.2d 467, 468 (Tex.1995) ("Proof of such justification"accident, mistake or other reasonable explanation"negates the intent or conscious indifference for which reinstatement can be denied."). | In the absence of evidence, a trial court does not abuse its discretion by denying a motion to reinstate. | "In the absence of evidence, does a trial court not abuse its discretion by denying a motion to reinstate?" | 039598.docx | LEGALEASE-00159031-LEGALEASE-00159032 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12819 | Violette v. Shoup, 16 Cal. App. 4th 611 | 308+3(1) | A person does not become the agent of another simply by offering help or making a suggestion. As the court stated in Edwards v. Freeman (1949) 34 Cal.2d 589, 591"592, 212 P.2d 883: "To permit a finding of agency upon this evidence would be, in effect, to hold that one who performs a mere favor for another, without being subject to any legal duty of service and without assenting to any right of control, can be an agent. This is not the law." | Person does not become agent of another simply by offering help or making suggestion. | Can a person become the agent of another simply by offering help or making a suggestion? | Principal and Agent - Memo 378 - RK_63936.docx | ROSS-003297002-ROSS-003297003 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12820 | Cislaw v. Southland Corp., 4 Cal. App. 4th 1284 | 308+3(1) | Franchising is a heavily regulated form of business in California, but there are relatively few decisions on the nature of the relationship between franchisor and franchisee as it affects third persons. The general rule is where a franchise agreement gives the franchisor the right of complete or substantial control over the franchisee, an agency relationship exists. (2 Witkin, Summary of Cal. Law (9th ed. 1987) "Agency and Employment," " 6, pp. 24"25.) "[I]t is the right to control the means and manner in which the result is achieved that is significant in determining whether a principal-agency relationship exists." (Wickham v. Southland Corp. (1985) 168 Cal.App.3d 49, 59, 213 Cal.Rptr. 825, italics added.) "In the field of franchise agreements, the question of whether the franchisee is an independent contractor or an agent is ordinarily one of fact, depending on whether the franchisor exercises complete or substantial control over the franchisee. [Citations.]" (Kuchta v. Allied Builders Corp. (1971) 21 Cal.App.3d 541, 547, 98 Cal.Rptr. 588.) "Only when the essential facts are not in conflict will an agency determination be made as a matter of law." (Wickham v. Southland Corp., supra, 168 Cal.App.3d at p. 55, 213 Cal.Rptr. 825.) | General rule is where franchise agreement gives franchisor the right of complete or substantial control over the franchisee, an agency relationship exists. | When will a franchise agreement establish an agency relationship? | Principal and Agent - Memo 381 - RK_63939.docx | ROSS-003319442-ROSS-003319443 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12821 | St. Clair Intermediate Sch. Dist.t v. Intermediate Educ. Ass'n/Michigan Educ. Ass'n, 458 Mich. 540 | 308+1 | Under the common law of agency, in determining "[w]hether an agency has been created," we consider "the relations of the parties as they in fact exist under their agreements or acts" and note that in its broadest sense agency "includes every relation in which one person acts for or represents another by his authority." Saums v. Parfet, 270 Mich. 165, 170"171, 258 N.W. 235 (1935). We further recognized in Saums that "[t]he characteristic of the agent is that he is a business representative. His function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons." 172, 258 N.W. 235. Also fundamental to the existence of an agency relationship is the right to control the conduct of the agent, Capitol City Lodge No. 141, FOP v. Meridian Twp., 90 Mich.App. 533, 541, 282 N.W.2d 383 (1979), with respect to the matters entrusted to him. See Int'l Longshoremen's Ass'n, AFL"CIO v. NLRB, 312 U.S. App DC 241, 249, 56 F.3d 205 (1995), citing 1 Restatement, Second, Agency, " 14, p. 60, and cases applying this principle. | Fundamental to the existence of an agency relationship is the right to control the conduct of the agent with respect to the matters entrusted to him. Restatement (Second) of Agency S 14. | Is the right to control the conduct of the agent fundamental to the existence of an agency? | Principal and Agent - Memo 523 - RK_63981.docx | ROSS-003322810-ROSS-003322811 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 12822 | Am. Envtl. v. 3-J Co., 222 Ill. App. 3d 242 | 308+1 | An agency relationship is a fiduciary one. (Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1979), 68 Ill.App.3d 75, 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) An attorney, broker, auctioneer, and other persons similarly employed for a single transaction or for a series of transactions are agents, although as to their physical activities they are independent contractors. (Protective Insurance Co. v. Coleman (1986), 144 Ill.App.3d 682, 98 Ill.Dec. 914, 494 N.E.2d 1241.) An insurance broker's employment in each case is that of a special agent for a single objective. (Penrod, 68 Ill.App.3d at 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) Once the limited purpose of the broker's agency is accomplished, the broker no longer owes any on-going fiduciary duty to the ex-principal. (Penrod, 68 Ill.App.3d at 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) Whether the relationship has ceased is a question of fact; however, a complaint must still allege specific facts regarding the circumstances from which the existence of the relationship can be inferred in order to survive a motion to dismiss. See HPI Health Care Services, Inc., 131 Ill.2d at 163, 137 Ill.Dec. 19, 545 N.E.2d 672. | Attorney, broker, auctioneer, and other persons similarly employed for single transaction or for series of transactions are agents, although as to their physical activities they are independent contractors. | Is a brokeremployed for a single transaction an agent? | 041967.docx | LEGALEASE-00159079-LEGALEASE-00159080 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12823 | Caterpillar v. Usinor Industeel, 393 F. Supp. 2d 659 | 308+1 | Under Illinois law,the test for agency is whether the alleged principal has the right to control the manner in which work is carried out by the alleged agent, and whether the alleged agent can affect the legal relationships of the principal. Chemtool, Inc. v. Lubrication Technologies, Inc., 148 F.3d 742, 744 (7th Cir.1998). Agency can arise when an agent has either "actual" or "apparent" authority to act on the principal's behalf. Opp v. Wheaton Van Lines, Inc., 231 F.3d 1060, 1064 (7th Cir.2000). The agent has actual authority when the principal's words or actions would lead a reasonable person in the agent's position to believe that he or she was so authorized. An agent has apparent authority to act on the principal's behalf in relation to a third party when the words or conduct of the principal would lead a reasonable person in the third party's position to believe that the principal had so authorized the agent. at 1065; Restatement (Second) of Agency " 27. Where an agent with such authority contracts with a third party on behalf of a disclosed principal, the agent does not become a party to the contract and is not liable upon it. Restatement (Second) of AgencyYYY " 320; see Joe & Dan Int'l Corp. v. U.S. Fidelity & Guar. Co., 178 Ill.App.3d 741, 747, 127 Ill.Dec. 830, 533 N.E.2d 912, 915 (1988) ("[I]t is obvious that an agent cannot be liable to a third party with whom he has contracted on his principal's behalf" where the agent had apparent authority). The principal, not the agent, is liable in such a situation. See Restatement (Second) of Agency " 144. | Under Illinois law, test for agency is whether alleged principal has right to control manner in which work is carried out by alleged agent, and whether alleged agent can affect legal relationships of principal. | What is the test for agency? | 041970.docx | LEGALEASE-00159055-LEGALEASE-00159056 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12824 | Moblard v. Klippenstein, 239 F. Supp. 274 | 308+1 | "An agent is a "business representative whose function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between his principal and third persons'." 1 Mich. Law and Practice 304, " 1. | Under Michigan law, an agent is a business representative whose function it is to bring about, modify, effect, accept performance of, or terminate contractual obligations between his principal and third persons. | Is an agent a business representative? | Principal and Agent - Memo 528 - RK_63986.docx | ROSS-003279021 | SA, Sub | 0.07 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12825 | Fischer v. Machado, 50 Cal. App. 4th 1069 | 308+1 | North State was designated as a "sales agent" or "commission merchant" in the written agreement between North State and Cottonwood. "Agency is both a consensual and a fiduciary relation. An agent is not merely a promiser or a promisee. The existence of the fiduciary relation modifies all agency agreements and creates rules which do not apply to contracts in which one party is not an agent for the other. The obligations of an agent are the same as those imposed on a trustee.... A tort action is not based upon the theory that the agent has failed to perform his promise, but upon the theory that the agent has improperly dealt with the affairs entrusted to him by the principal." (Haurat v. Superior Court (1966) 241 Cal.App.2d 330, 334, 50 Cal.Rptr. 520.) | Existence of fiduciary relation modifies all agency agreements and creates rules which do not apply to contracts in which one party is not agent for other. | Does existence of a fiduciary relationship modify all agency agreements? | Principal and Agent - Memo 530 - RK_63988.docx | ROSS-003281254-ROSS-003281255 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 12826 | Am. Envtl. v. 3-J Co., 222 Ill. App. 3d 242 | 308+1 | An agency relationship is a fiduciary one. (Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1979), 68 Ill.App.3d 75, 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) An attorney, broker, auctioneer, and other persons similarly employed for a single transaction or for a series of transactions are agents, although as to their physical activities they are independent contractors. (Protective Insurance Co. v. Coleman (1986), 144 Ill.App.3d 682, 98 Ill.Dec. 914, 494 N.E.2d 1241.) An insurance broker's employment in each case is that of a special agent for a single objective. (Penrod, 68 Ill.App.3d at 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) Once the limited purpose of the broker's agency is accomplished, the broker no longer owes any on-going fiduciary duty to the ex-principal. (Penrod, 68 Ill.App.3d at 80, 24 Ill.Dec. 464, 385 N.E.2d 376.) Whether the relationship has ceased is a question of fact; however, a complaint must still allege specific facts regarding the circumstances from which the existence of the relationship can be inferred in order to survive a motion to dismiss. See HPI Health Care Services, Inc., 131 Ill.2d at 163, 137 Ill.Dec. 19, 545 N.E.2d 672. | Attorney, broker, auctioneer, and other persons similarly employed for single transaction or for series of transactions are agents, although as to their physical activities they are independent contractors. | Is an auctioneeremployed for a single transaction an agent? | 042004.docx | LEGALEASE-00159089-LEGALEASE-00159090 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 12827 | Rosas v. Alice's Tea Cup, 127 F. Supp. 3d 4 | 24+123 | However, federal courts have made "clear that the protections of the FLSA are available to citizens and undocumented workers alike." Flores v. Albertsons, Inc., CV 01"00515, 2002 WL 1163623, (C.D.Cal. April 9, 2002); see also Colon v. Major Perry Street Corp., 987 F.Supp.2d 451, 459 (S.D.N.Y.2013) ("FLSA's mandatory language leaves no discretion for courts to alter the statute's remedial scheme based on an employee's immigration status."); Contreras v. Corinthian Vigor Insurance Brokerage, Inc., 25 F.Supp.2d 1053, 1056 (N.D.Cal.1998). Therefore, in the context of wage and hour violations under both the FLSA and the NYLL, immigration status has generally been protected from discovery. See Colon, 987 F.Supp.2d at 464"65 (finding immigration status irrelevant to both FLSA and NYLL claims); Francois v. Mazer, No. 09 Civ. 3275, 2012 WL 1506054, at *1 (S.D.N.Y. April 24, 2012) ("This Court finds that evidence of immigration status is irrelevant and therefore not admissible regarding any issue with respect to any [FLSA or] New York state law claim."); Flores v. Amigon, 233 F.Supp.2d 462, 464"65 (E.D.N.Y.2002); Liu v. Donna Karan International, Inc., 207 F.Supp.2d 191, 192 (S.D.N.Y.2002) ("[C]ourts addressing the issue of whether defendants should be allowed to discover plaintiff-workers' immigration status in cases seeking unpaid wages brought under the FLSA have found such information to be undiscoverable.") | The protections of the FLSA are available to citizens and undocumented workers alike; denying undocumented workers the protection of FLSA would permit abusive exploitation of workers and create an unacceptable economic incentive to hire undocumented workers by permitting employers to underpay them. Fair Labor Standards Act of 1938, S 1, 29 U.S.C.A. S 201. | Are the protections of the Fair Labor Standards Act (FLSA) available to citizens and undocumented workers alike? | "Aliens, Immigration and Citizenship - Memo 72 - RK_64806.docx" | ROSS-003321963-ROSS-003321964 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 12828 | CONTRERAS v. CORINTHIAN VIGOR INSURANCE BROKERAGE, 25 F.Supp.2d 1053 | 360+18.46 | There is no question that the protections provided by the FLSA apply to undocumented aliens. See e.g., In re Reyes, 814 F.2d 168, 170 (5th Cir.1987), cert. denied, 487 U.S. 1235, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988) ("[I]t is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant. An employee is "any individual employed by an employer." "); Patel v. Quality Inn South, 846 F.2d 700 (11th Cir.1988), cert. denied, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 182 (1989) (undocumented workers are entitled to the protections of the FLSA for minimum wage and overtime violations).Courts have consistently noted that permitting employers to circumvent labor laws with regard to undocumented aliens flies in the face of public policy in two ways. First, in its most basic sense, it permits abusive exploitation of workers. See NLRB v. Apollo Tire Co., Inc., 604 F.2d 1180 (9th Cir.1979) (Kennedy, J., concurring) ("[I]f [labor laws] were inapplicable to workers who are illegal aliens, we would leave helpless the very persons who most need protection from exploitative labor practices....") Second, it creates an unacceptable economic incentive to hire undocumented workers by permitting employers to underpay them. See Sure"Tan, Inc. v. NLRB, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984); Patel, 846 F.2d at 704. | Employee's claim under the Fair Labor Standards Act (FLSA) alleging that employer reported her to Immigration and Naturalization Service (INS) in retaliation for bringing an unpaid wages and overtime claim was not precluded by California statute providing that communications during course of official proceeding were privileged; statute was preempted by FLSA, as Congress clearly intended FLSA's anti-retaliation provision to apply to all workers including undocumented aliens. U.S.C.A. Const. Art. 6, cl. 2; Fair Labor Standards Act of 1938, S 15(a)(3), as amended, 29 U.S.C.A. S 215(a)(3); West's Ann.Cal.Civ.Code S 47(b). | Are the protections of the Fair Labor Standards Act (FLSA) available to citizens and undocumented workers alike? | 006923.docx | LEGALEASE-00160212-LEGALEASE-00160213 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 12829 | CONTRERAS v. CORINTHIAN VIGOR INSURANCE BROKERAGE, 25 F.Supp.2d 1053 | 360+18.46 | There is no question that the protections provided by the FLSA apply to undocumented aliens. See e.g., In re Reyes, 814 F.2d 168, 170 (5th Cir.1987), cert. denied, 487 U.S. 1235, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988) ("[I]t is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant. An employee is "any individual employed by an employer." "); Patel v. Quality Inn South, 846 F.2d 700 (11th Cir.1988), cert. denied, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 182 (1989) (undocumented workers are entitled to the protections of the FLSA for minimum wage and overtime violations). | Employee's claim under the Fair Labor Standards Act (FLSA) alleging that employer reported her to Immigration and Naturalization Service (INS) in retaliation for bringing an unpaid wages and overtime claim was not precluded by California statute providing that communications during course of official proceeding were privileged; statute was preempted by FLSA, as Congress clearly intended FLSA's anti-retaliation provision to apply to all workers including undocumented aliens. U.S.C.A. Const. Art. 6, cl. 2; Fair Labor Standards Act of 1938, S 15(a)(3), as amended, 29 U.S.C.A. S 215(a)(3); West's Ann.Cal.Civ.Code S 47(b). | Are the protections of the Fair Labor Standards Act (FLSA) available to undocumented workers? | 006929.docx | LEGALEASE-00160218-LEGALEASE-00160219 | Condensed, SA, Sub | 0.11 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12830 | I.N.S. v. Lopez-Mendoza, 468 U.S. 1032 | 24+423 | We do not condone any violations of the Fourth Amendment that may have occurred in the arrests of respondents Lopez"Mendoza or Sandoval"Sanchez. Moreover, no challenge is raised here to the INS's own internal regulations. Cf. INS v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Our conclusions concerning the exclusionary rule's value might change, if there developed good reason to believe that Fourth Amendment violations by INS officers were widespread. Cf. United States v. Leon, 468 U.S. 897, 928, 104 S.Ct. 3405, 3424, 82 L.Ed.2d 677 (BLACKMUN, J., concurring). Finally, we do not deal here with egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine *1051 the probative value of the evidence obtained.5 Cf. Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). At issue here is the exclusion of credible evidence gathered in connection with peaceful arrests by INS officers. We hold that evidence derived from such arrests need not be suppressed in an INS civil deportation hearing. | Evidence derived from illegal but peaceful arrests by Immigration and Naturalization Service officers need not be suppressed in a civil deportation hearing held by the INS. (Per Justice O'Connor with three Justices concurring.) | Can evidence derived from arrests be suppressed in a civil deportation hearing? | 006937.docx | LEGALEASE-00160202-LEGALEASE-00160203 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 12831 | Mendoza v. United States Immigration & Customs Enf't, 849 F.3d 408 | 24+107 | First, it was reasonable for Osterberg not to question Mendoza further about his citizenship. Mendoza told Osterberg that he was born in Mexico, Mendoza never mentioned that he was a United States citizen, and "an individual born abroad is presumed to be an alien and bears the burden of rebutting that presumption." Nadal"Ginard v. Holder, 558 F.3d 61, 68 (1st Cir. 2009). Moreover, "there is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak." | Individual born abroad is presumed to be alien and bears burden of rebutting that presumption. | Does an individual born abroad is presumed to be an alien and bears the burden of rebutting that presumption? | "Aliens, Immigration, and Citizenship- Memo 3 - AM_64145.docx" | ROSS-003281059-ROSS-003281060 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12832 | Am. Exch. Nat. Bank v. Steeley, 10 S.W.2d 1038 | 83E+335 | It may be stated as the general rule that, wherever a bill of exchange or promissory note contains a reference to some extrinsic contract in such a way as to make the bill or note subject to the terms of that contract, the negotiability of the paper is destroyed. Rule announced and cases cited in Strand Amusement Co. v. Fox, 205 Ala. 183, 87 So. 332, 14 A. L. R. 1126-1129; 33 A. L. R. 1174; 37 A. L. R. 655; 3 R. C. L. 883.It is also the general rule that, where the reference in a bill of exchange or promissory note is simply a recital of the consideration for which the paper was given, or is merely a reference to the origin of the transaction, its negotiability is not affected thereby. Article 5932, " 3, 1925 Rev. Stat.; 14 A. L. R. 1129-1133; 33 A. L. R. 1174-1175; 37 A. L. R. 655; 3 R. C. L. supra. Section 3 of article 5932 declares in specific terms that an unqualified order or promise to pay is unconditional, within the meaning of our Negotiable Instruments Act, "though coupled with * * * a statement of the transaction which gives rise to the instrument." This enactment is merely declaratory of the general rule of law above announced. | Negotiability of bill or note is destroyed by reference therein to extrinsic contract to terms of which bill or note is subject. | Does a reference to some extrinsic contract in a bill of exchange or promissory note subjecting it to the terms of the contract destroy its negotiability? | 010488.docx | LEGALEASE-00160071-LEGALEASE-00160072 | Condensed, Order, SA | 0.89 | 1 | 1 | 0 | 1 | 1 |
| 12833 | Nat'l Leasing Corp. v. Williams, 80 F.R.D. 416 | 8.30E+10 | It appears that plaintiff is a Pennsylvania corporation with its principal place of business in the forum state. The promissory note agreed to by the defendant was entered into pursuant to the Pennsylvania Uniform Commercial Code. Thus, Pennsylvania law was chosen to apply to the note. Also, the performance of the agreement was to be in Pennsylvania, the designated place of payment. The obligations of the maker of a note are determined by the law of the state designated on the instrument as the place of payment. Restatement Conflicts of Law, s 214. | Obligations of maker of note are determined by law of state designated on instrument as place of payment. | Can the obligations of the maker of note be determined by the law of the state designated on the instrument? | Bills and Notes-Memo 1399- JK_64839.docx | ROSS-003309366 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12834 | Bologna Bros. v. Morrissey, 154 So. 2d 455 | 83E+433(1) | See also Restatement of Conflict of Laws, Sec. 322. The rule is the same for promissory notes. Their legal effect is governed by the law of the country where they were executed and delivered. Kuenzi & Co., v. Elvers, Boje & Co., 14 La.Ann. 391, 74 Am.Dec. 434 (1859); Walsh v. Walsh, La.App., 11 Orl.App. 205 (1914); aff. 137 La. 157, 68 So. 392 (1915); Stevens v. Gaude, 9 La.App. 664, 120 So. 79, 80 (1st Cir. 1928); Restatement of Conflict of Laws, Sec. 336. Accommodation papers are no exception to this rule. It is settled in Louisiana that every endorsement, accommodation or otherwise, is essentially an original contract, equivalent to a new note or bill in favor of the holder and that accommodation paper is governed by the same rules as other paper. Crane v. Trudeau, 19 La.Ann. 307 (1867); James Trabue & Co. v. R. H. Short & Co., 18 La.Ann. 257, 258 (1866); G. F. Connely v. A. Bourg, et al., 16 La.Ann. 108, 109, 79 Am.Dec. 568 (1861). The obligation of an endorser or accommodation party is governed by the lex loci contractus. James Trabue & Co. v. R. H. Short & Co., supra; Duncan v. Sparrow, 3 Rob. 167, 168 (1942). | Every endorsement, accommodation or otherwise, is essentially original contract, equivalent to new note or bill in favor of holder, and accommodation paper is governed by same rules as other paper. | What is an endorsement equivalent to? | Bills and Notes-Memo 1400- JK_64840.docx | ROSS-003294310-ROSS-003294311 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12835 | M.T. v. State, 2009 Ark. App. 761 | 129+107 | First, our precedent refutes appellant's narrow interpretation of the disorderly conduct statute that the incident giving rise to the charge must occur in a public place. A public inconvenience, annoyance or alarm can occur due to an individual's conduct whether the individual and the people are on public or private property. Farr v. State, 6 Ark.App. 14, 17, 636 S.W.2d 884, 886 (1982). Second, section 5"71"207(a)(1) does not require an actual public inconvenience, annoyance or alarm. The statute requires only that a person engage in fighting or in violent, threatening, or tumultuous behavior with the purpose of creating a public inconvenience, annoyance or alarm or that a person engages in such behavior in a way that recklessly creates a risk of public inconvenience, annoyance or alarm. A person acts purposefully with respect to his conduct when it is his conscious object to engage in conduct of that nature or to cause such a result. Maxwell v. State, 73 Ark.App. 45, 53, 41 S.W.3d 402, 408 (2001) (citing Harmon v. State, 340 Ark. 18, 8 S.W.3d 472 (2000)). | For purposes of disorderly conduct, a public inconvenience, annoyance, or alarm can occur due to an individual's conduct whether the individual and the people are on public or private property. West's A.C.A. S 5-71-207(a)(1). | Can public inconvenience occur due to an individuals conduct? | 014270.docx | LEGALEASE-00159936-LEGALEASE-00159937 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12836 | Herkner v. Rubin, 126 Cal. App. 677 | 156+52(3) | Where a statute prohibits or attaches a penalty to the doing of an act the act is void (Smith v. Bach, 183 Cal. 259, 191 P. 14); and this is true of an issuance of stock in violation of the permit granted by the corporation commissioner (Boss v. Silent Drama Syndicate, 82 Cal. App. 109, 255 P. 225; Live Oak Cemetery Ass'n v. Adamson, 106 Cal. App. (Supp.) 783, 288 P. 29; Commercial Building Co. v. Levy, 108 Cal. App. 54, 290 P. 1048, 1049; Otten v. Riesener Chocolate Co., 82 Cal. App. 83, 254 P. 942; Becker v. Stineman, 115 Cal. App. 740, 2 P.(2d) 444; Domenigoni v. Imperial, etc., Mortgage Co., 189 Cal. 467, 209 P. 36; Gridley v. Tilson, 202 Cal. 748, 262 P. 322; Barton v. El Canto Apartments (Cal. Sup.) 14 P. (2d) 501. Moreover, the doctrines of estoppel by conduct and ratification have no application to a contract which violates an express mandate of the law (Pollak v. Staunton, 210 Cal. 656, 293 P. 26). | Doctrines of estoppel by conduct and ratification have no application to contract which violates express mandate of law. | Does estoppel by conduct have no application to a contract which violates an express mandate of the law? | 017864.docx | LEGALEASE-00159290-LEGALEASE-00159291 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12837 | State v. Raymo, 419 So. 2d 858 | 181+5 | That a general intent to defraud is an essential element of forgery is evident from the statute and the comment. Consequently, it is necessary to the offense that the offender either actively desire to defraud another or that he must have known that defrauding another was reasonably certain to result from his act or failure to act.La.R.S. 14:10. To defraud in the sense intended by the forgery definitions means to injure or prejudice the rights of another. State v. LaBorde, 120 La. 136, 45 So. 38 (1907). See W. Burdick, Law of Crimes " 663a, 551 (1946). However, it is unnecessary that an injury result from the actual consummation of the fraud, since the intent to defraud is sufficient. State v. McCranie, 192 La. 163, 187 So. 278 (1939). Furthermore, it is immaterial whom the offender intended to defraud, for it is sufficient if he intended that someone be defrauded. Louisiana, as well as several other jurisdictions, has deviated from the early common law rule that forgery required an intent to defraud a particular person. Burdick, supra, " 663, at 551; Clark and Marshall, Law of Crimes " 1243, 955"56 (7th ed. 1967). | It is necessary to offense of forgery that offender either actively desired to defraud another or that he must have known that defrauding another was reasonably certain to result from his act or failure to act; to defraud in sense intended by forgery definitions means to injure or prejudice rights of another, but it is unnecessary that injury result from actual consummation of fraud, and it is immaterial whom offender intended to defraud. LSA-R.S. 14:10, 14:72. | Is intent to defraud an essence of forgery? | 018431.docx | LEGALEASE-00159705-LEGALEASE-00159706 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 12838 | Application of City & Cty. of Honolulu Corp. Counsel, 54 Haw. 356 | 183+2 | Furthermore, the long and well established rule of construction in all grants of special rights or privileges by the government to private individuals is that the words of the privilege granted (franchise herein) are construed strictly against the grantee. City of Mitchell v. Dakota Central Telephone Co., 246 U.S. 396, 38 S.Ct. 362, 62 L.Ed. 793 (1918); Los Angeles County Flood Control District v. Southern California Edison Co.,51 Cal.2d 331, 333 P.2d 1 (1958). And where the terms of the franchise are uncertain and reasonably susceptible to multiple meanings or if the provisions of the franchise are conflicting or ambiguous, the terms of the franchise are construed favorably to the public interests. Russell v. Sebastian, 233 U.S. 195, 34 S.Ct. 517, 58 L.Ed.2d 912 (1914); Southern California Gas Co. v. City of Los Angeles, 50 Cal.2d 713, 329 P.2d 289 (1958). | Where terms of franchise are uncertain and reasonably susceptible to multiple meanings, or if the provisions of the franchise are conflicting or ambiguous, the terms of the franchise are construed favorably to the public interests. | Should a franchise be construed in favor of the public? | Franchise - Memo 33 - KNR_64629.docx | ROSS-003293503-ROSS-003293504 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 12839 | City of Gary v. Allstate Ins. Co., 612 N.E.2d 115 | 217+1001 | Ind.Code " 27-1-2-3(a). Generally, insurance is a contract of indemnity through which a party undertakes an obligation to compensate another against loss arising from certain specified contingencies or perils. It shifts the risk of loss from one party to another. Meyer v. Building and Realty Serv. Co. (1935), 209 Ind. 125, 135, 196 N.E. 250, 253-54; Southeast Title and Ins. Co. v. Collins (1969), Fla.App., 226 So.2d 247, 248; 1 Mark S. Rhodes, Couch on Insurance 2d "" 1:2-1:3 (rev. ed. 1984). | "Insurance" generally is contract of indemnity through which party undertakes obligation to compensate another against loss arising from certain specified contingencies or perils; "insurance" shifts risk of loss from one party to another. West's A.I.C. 27-1-2-3(a). | Is insurance a contract of indemnity? | Insurance - Memo 81 - SNJ_64657.docx | ROSS-003278527-ROSS-003278528 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 12840 | Barth v. City of Miami, 146 Fla. 542 | 302+17 | It is well established that a declaration is required to state clearly and distinctly every fact that is essential to the plaintiff's right of action. The allegations thereof must be positive and direct or by fair inferences derived therefrom contain all the ultimate facts upon which a plaintiff relies for recovery. See Sickler v. Indian River Abstract & Guaranty Co., 142 Fla. 528, 195 So. 195; Kirton v. Atlantic Coast Line R. Co., 57 Fla. 79, 87, 49 So. 1024; Kidd v. Jacksonville, 91 Fla. 380, 107 So. 677; Co-operative Sanitary Baking Co. v. Shields, 71 Fla. 110, 70 So. 934; Atlantic Coast Line R. Co. v. Holliday, 73 Fla. 269, 74 So. 479. | A declaration must state clearly every fact essential to plaintiff's right of action, and the allegations thereof must be positive or by fair inference derived therefrom contain all the ultimate facts upon which plaintiff relies for recovery. | Should a declaration state distinctly and clearly every fact that is essential to the plaintiff's right of action? | 023848.docx | LEGALEASE-00159656-LEGALEASE-00159657 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 12841 | Labrie v. Kenney, 95 S.W.3d 722 | 307A+697 | A dismissal for want of prosecution is not a decision on the merits and does not prevent a party from refiling the suit. Rizk v. Mayad, 603 S.W.2d 773, 775 (Tex.1980). Thus, a dismissal for want of prosecution with prejudice is improper. Willis v. Barron, 604 S.W.2d 447 (Tex.Civ.App.-Tyler 1980, writ ref'd n.r.e.). However, that error is subject to waiver if the trial court is not given an opportunity to correct it or if the question is not properly raised on appeal. Andrews v. ABJ Adjusters, Inc., 800 S.W.2d 567, 568 (Tex.App.-Houston [14th Dist.] 1990, writ denied). Although the record suggests that the Labrie parties challenged the dismissal by filing a motion to reinstate, no appeal was taken from the dismissal. If no appeal is taken from a dismissal with prejudice, it functions as a final determination. See Mossler v. Shields, 818 S.W.2d 752, 754 (Tex.1991) (holding dismissal with prejudice can be a final determination on the merits). Thus, the dismissal with prejudice would sustain a plea of res judicata on the cause dismissed. | A dismissal for want of prosecution is not a decision on the merits, and does not prevent a party from refiling the suit. | "Is a dismissal for want of prosecution not a decision on the merits, and does not prevent a party from refiling the suit?" | 039781.docx | LEGALEASE-00159350-LEGALEASE-00159351 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12842 | Reid v. Spazio, 970 A.2d 176 | 307A+561.1 | In ruling on a motion to dismiss under Court of Chancery Rule 12(b)(6), the Court is generally limited to facts appearing on the face of the pleadings.Accordingly, affirmative defenses, such as laches, are not ordinarily well-suited for treatment on such a motion. Unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate. | Since court is generally limited to facts appearing on the face of the pleadings when deciding a motion to dismiss for failure to state a claim upon which relief can be granted, affirmative defenses, such as laches, are not ordinarily well-suited fortreatment on such a motion. Chancery Court Rule 12(b)(6). | Can relief be granted when court is limited to facts appearing on the fact of the pleadings? | 039918.docx | LEGALEASE-00159565-LEGALEASE-00159566 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12843 | Colby v. Umbrella, Inc, 184 Vt. 1 | 307A+695 | Furthermore, the beauty of our rules of civil procedure is that they strike a fair balance, at the early stages of litigation, between encouraging valid, but as yet underdeveloped, causes of action and discouraging baseless or legally insufficient ones. The complaint is a bare bones statement that merely provides the defendant with notice of the claims against it. See Lane v. Town of Grafton, 166 Vt. 148, 150"52, 689 A.2d 455, 456"57 (1997). Its purpose is to initiate the cause of action, not prove the merits of the plaintiff case. | The complaint is a bare bones statement that merely provides the defendant with notice of the claims against it, and its purpose is to initiate the cause of action, not prove the merits of the plaintiff's case, and as such, the rules of civil procedure allow a plaintiff to plead over if she has omitted essential elements and require the court to take the plaintiff's allegations as true on a motion to dismiss, so as not to unfairly prejudice the plaintiff before she has any opportunity to develop the case. Rules Civ.Proc., Rule 15(a). | Is the complaint a bare bones statement that merely provides the defendant with notice of the claims against it? | 040197.docx | LEGALEASE-00160224-LEGALEASE-00160225 | SA, Sub | 0 | 0 | 0 | 1 | 1 | |
| 12844 | Technocom Bus. Sys. v. N. Carolina Dep't of Revenue, 219 N.C. App. 207 | 371+3602 | The first purpose of the Act is to generate revenue for the state. Id. This is accomplished by a sales tax which is imposed upon the retail merchant as a privilege tax for the right to engage in that business. The tax is, however, designed to be passed on to the consumer. The second purpose of the sales and use tax scheme is to equalize the tax burden on all state residents. This is achieved through imposition of the use tax in certain situations where the sales tax is not applicable. | One purpose of the sales and use tax scheme is to equalize the tax burden on all state residents; this is achieved through imposition of the use tax in certain situations where the sales tax is not applicable. West's N.C.G.S.A. S 105-164.1. | Is the purpose of the sales and use tax scheme is to equalize the burden on all state residents? | Taxation - Memo 1077 - C - SS_64485.docx | ROSS-003283342-ROSS-003283343 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 12845 | Jackson v. Univ. Hosp. of Cleveland, 122 Ohio App. 3d 371 | 413+11 | "The purpose of the Workers' Compensation Act is not to make an employer an absolute insurer of the employee's safety, but only to protect the employee against risks and hazards incident to the performance of his work." Phelps v. Positive Action Tool Co. (1986), 26 Ohio St.3d 142, 144, 26 OBR 122, 123, 497 N.E.2d 969, 970-971, R.C. 4123.01(C) defines "compensable injury": "(C) "Injury" includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." | The purpose of the Workers' Compensation Act is not to make an employer an absolute insurer of an employee's safety, but only to protect the employee against risks and hazards incident to the performance of his work. R.C. S 4123.01 et seq. | What is the purpose of the Workmens Compensation law? | 048666.docx | LEGALEASE-00160188-LEGALEASE-00160189 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 12846 | Cessna Fin. Corp. v. Morrison, 667 S.W.2d 580 | 8.30E+10 | We recognize that Duncan now sets forth the controlling law for resolution of the conflict issue in contract cases. However, we do not believe the Texas Supreme Court intended to extend this principle to negotiable instruments. In the case at bar, the promissory note expressly provided for payment in Kansas, and the laws of that State therefore govern the substantive rights and liabilities of the parties. Andrews v. Hoxie, 5 Tex. 171 (1849); Wade v. Darring, 511 S.W.2d 320 (Tex.Civ.App."Houston [14th Dist.] 1974, no writ); Restatement of Conflict of Laws 2d, sec. 214, comment (b). | Kansas law governs substantive rights and liabilities of parties to promissory note where note expressly provided for payment in Kansas. | Does the law of the state where the note in question is made payable govern the substantive liability of the parties? | 010106.docx | LEGALEASE-00161767-LEGALEASE-00161768 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 12847 | United States v. Gelb, 944 F.2d 52 | 110+1134.75 | However, we do not agree that his claim has any merit. In general, "a sentence within the legal limits and not based on materially inaccurate or otherwise improper information or communications will not be set aside on an appeal." United States v. DiPaolo, 804 F.2d 225, 234 (2d Cir.1986). Gelb's sentence was under the statutory maximum, and he has not shown any "extraordinary" circumstances that demonstrate a need for reducing his sentence. See United States v. Golomb, 754 F.2d 86, 90 (2d Cir.1985). Given the seriousness of his crimes and the extent of his fraudulent conduct, his sentence is not disproportionately severe. Thus, Gelb is not entitled to a reduction in his sentence. | In general, sentence within general limits and not based on materially inaccurate or otherwise improper information or communications will not be set aside on appeal. | Under what circumstances would a sentence be set aside on appeal? | 012525.docx | LEGALEASE-00161501-LEGALEASE-00161502 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 12848 | Com. v. Weselyk, 268 Pa. Super. 569 | 63+16 | Appellant also contends that his sentence was manifestly excessive. However, it appears on the record that the court considered and re-considered all the factors enumerated in Commonwealth v. Martin, 466 Pa. 118, 351 A.2d 650 (1976), in sentencing appellant to two concurrent terms of 6 to 12 months total confinement and a concurrent term of five years probation. The court below found that imprisonment was not needed for rehabilitative or custodial purposes, but was justified because of appellant's breach of the public trust. It is well-settled that the seriousness of an offense may itself justify incarceration rather than probation. Id. at 133 n.24, 351 A.2d at 658. | Sentence of two concurrent terms of six to 12 months total confinement and concurrent term of five years' probation on bribery conviction of Department of Revenue employee was not excessive, in that although trial court found that imprisonment was not needed for rehabilitative or custodial purposes it was justified because of breach of public trust. 18 Pa.C.S.A. S 4701(a)(3). | Can a sentence of imprisonment be justified by an appellants breach of public trust? | 012547.docx | LEGALEASE-00161497-LEGALEASE-00161498 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 12849 | United States v. Glazer, 129 F. Supp. 285 | 63+16 | The indictment charges Glazer offered Plaien $100. Plaien testified he did not know how much was offered to him. On cross-examination defendant admitted it might have been $2. This variance and failure of proof is pertinent in a prosecution under 18 U.S.C. " 201 which provides for a fine of "not more than three times the amount of such money * * *". In view of this provision of the statute, it is incumbent upon the Government to allege and prove the amount of money offered. Absent such proof, it is impossible to ascertain the amount of the permissible fine which any judge could impose under the statute. The judge would have to guess before applying the multiplier | Where, in prosecution for bribery of government official under statute providing for fine of not more than three times amount of money offered as such bribe, indictment charged offer of $100, and where, at trial, evidence was adduced that amount may have been $2, there was variance between indictment and proof such as would render impossible ascertainment of amount of permissible fine which judge could impose under statute. 18 U.S.C.A. 201. | Should the government prove the amount of money offered as a bribe? | 012569.docx | LEGALEASE-00161509-LEGALEASE-00161510 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 12850 | Scott v. Blanchet High Sch., 50 Wash. App. 37 | 141E+931 | The liability of a school is not limited to situations involving school hours, property, or curricular activities. Sherwood v. Moxee School Dist. No. 90, 58 Wash.2d 351, 363 P.2d 138 (1961). Extra-curricular activities under the auspices of the school also fall within a school's duty to supervise. Carabba v. Anacortes School Dist. No. 103, 72 Wash.2d 939, 435 P.2d 936 (1967). At some point, however, the event is so distant in time and place that the responsibility for adequate supervision is with the parents rather than the school. Coates v. Tacoma School Dist. No. 10, 55 Wash.2d 392, 399, 347 P.2d 1093 (1960). Thus, the initial question in a negligent supervision claim is whether the tort was committed within the school's scope of authority. Rhea v. Grandview School Dist. No. JT 116"200, 39 Wash.App. 557, 560, 694 P.2d 666 (1985). | Liability of school for negligent supervision of student is not limited to situations involving school hours, property, or curricular activities; extracurricular activities under the auspices of the school also fall within a school's duty. | "Is the liability of schools limited to situations involving school hours, property or curricular activities?" | 017239.docx | LEGALEASE-00161056-LEGALEASE-00161057 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12851 | Vogel v. Carolina Int'l, 711 P.2d 708 | 156+52.10(1) | A waiver is a voluntary abandonment of a known right, with the intent that such right shall be surrendered and such persons be forever deprived of its benefit. Transamerica Corp. v. Merrion, 127 Colo. 100, 255 P.2d 391 (1953). Waiver requires a clear, unequivocal, and decisive act of a party showing such purpose. Colorado Bank & Trust Co. v. Western Slope Investments, Inc., 36 Colo.App. 149, 539 P.2d 501 (1975). Whether inconsistent actions of the parties manifest an intent to waive is a factual determination, Cordillera Corp. v. Heard, 200 Colo. 72, 612 P.2d 92 (1980), and questions of fact are for the jury. Short v. Kinkade, 685 P.2d 210 (Colo.App.1983). | Waiver requires clear, unequivocal, and decisive acts of party showing such purpose. | "Does a waiver require a clear, unequivocal, and decisive act of the party showing such a purpose?" | Estoppel - Memo 227 - C - CSS_65203.docx | ROSS-003280240-ROSS-003280241 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12852 | Honey v. Henry's Franchise Leasing Corp. of Am., 64 Cal. 2d 801 | 322H+905 | Even a wilfully defaulting vendee may recover the excess of his part payments over the damages caused by his breach. (Freedman v. Rector, Wardens and Vestrymen etc., 37 Cal.2d 16, 22"23, 230 P.2d 629, 31 A.L.R.2d 1; see also Caplan v. Schroeder, 56 Cal.2d 515, 519, 15 Cal.Rptr. 145, 364 P.2d 321, and cases cited.) We agree with defendant's contention that the trial court erred in measuring its damages under this rule by the rental value of the property while plaintiff was in possession instead of by the loss of the benefit of defendant's bargain. (See Civ.Code, s 3307.)1 Since the trial court found that the fair market value of the property at the time of the trial was $90,000, defendant contends that the difference between the contract price of $135,000 and the fair market value of the property exceeded plaintiff's part payments of $33,450. | Wilfully defaulting purchaser under contract to purchase realty may recover excess of part payments over damages caused by his breach of contract to purchase realty. West's Ann.Civ.Code, S 3307. | Can a willfully defaulting vendee recover the excess of his part payments over damages caused by his breach? | Exchange of Property - Memo 88 - RK_66314.docx | ROSS-003310286-ROSS-003310287 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 12853 | State v. Homar, 798 P.2d 824 | 141+50 | The rights of the easement holder in another's land are determined by the purpose and character of the easement. Bard Ranch Co. v. Weber, 557 P.2d 722, 731 (Wyo.1976). The manner in which the easement is used does not become frozen at the time of grant. An easement for a road or a highway does not limit its use to the movement of vehicles. Uses related to traffic movement are within the scope of the easement. The grant of a public road easement embraces every reasonable method of travel over, under and along the right-of-way. Herold v. Hughes, 141 W.Va. 182, 90 S.E.2d 451, 458 (1955). Thus, the running of power and telephone lines above the ground and pipelines underneath do not increase the burden on the servient estate and are permissible uses. E.g., Bentel v. County of Bannock, 104 Idaho 130, 656 P.2d 1383 (1983); Fisher v. Golden Valley Elec. Ass'n, Inc., 658 P.2d 127 (Alaska 1983). See W.S. 1-26-813. The reason underlying this policy is that the services and products these conveyances provide may change from earlier times when they were provided by messengers and freight wagons. Change was contemplated and must be accommodated in an advancing society. Thus, overhead transmission lines and underground pipelines are simply technologically advanced adaptations of traditional highway uses. Fisher, 658 P.2d at 129. | Easement for road or highway does not limit its use to movement of vehicles but, rather, embraces every reasonable method of travel over, under and along right-of-way. | "Does the grant of a public road easement embrace every reasonable method of travel over, under and along the right-of-way?" | Highways - Memo 394 - RK_66324.docx | ROSS-003307493-ROSS-003307494 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12854 | McGrath v. Stevenson, 194 Wash. 160 | 200+77(2) | Each of the terms "reside," "residing," "resident," and "residence" is elastic. To interpret the sense in which such a term is used, we should look to the object or purpose of the statute in which the term is employed. A man can have only one place of residence for voting purposes and certain other purposes, but there is no reason why, within the meaning of the vacation statute, Rem.Rev.Stat. " 6503, he may not have more than one place of residence. | A man may have more than one place of "residence," within meaning of statute authorizing vacation of county road on petition of freeholders residing in the vicinity, though he can have only one place of residence for voting and other purposes. Rem.Rev.Stat. S 6503. | How many places of residence can a man have for voting purposes? | Highways - Memo 448 - RK_66348.docx | ROSS-003305573-ROSS-003305574 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 12855 | Newman v. Mayor of City of Newport, 73 R.I. 385 | 200+80 | As a general rule, by the legal establishment of a public highway, the public acquires only an easement in such highway, the fee in the soil remaining in the owners of adjoining lands. | The public acquires only an easement in legally established public highway, the fee in the soil remaining in owners of adjoining lands. | Does the public acquire an easement by the legal establishment of a public highway? | Highways - Memo 461 - RK.docx | LEGALEASE-00050776-LEGALEASE-00050777 | Condensed, Order, SA | 0.27 | 1 | 1 | 0 | 1 | 1 |
| 12856 | Shell Oil Co. v. Jackson Cty., 193 S.W.2d 268 | 200+165 | At common law every member of the public has the right to use, in a reasonable manner and with due care, public roads, inclusive of public bridges. And motor trucks are now a common means of transportation and, except where size and character of such vehicles has not been restricted by the legislature, their use upon public roads is fully authorized. Sumner County v. Interurban Trans. Co., 141 Tenn. 493, 213 S.W. 412. Public roads belong to the State and are subject to legislative control, which control may be delegated to local authorities. West v. City of Waco, 116 Tex. 472, 294 S.W. 832. | Public roads belong to the state and are subject to legislative control, which control may be delegated to local authorities. | Are public roads belonging to the State subject to legislative control? | 018891.docx | LEGALEASE-00161823-LEGALEASE-00161824 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 12857 | Jefferson Cty., Tenn. v. Tennessee Val. Auth., 146 F.2d 564 | 268+658 | The State or its political subdivision, holds, as a trustee, title to the easement for public highways and roads. A quasi corporation such as a city or county, holds such property by delegation of the general sovereign power, the authority for its acquisition and control being governmental and the interest exclusively that of the public. Looking at the title from any viewpoint, highway easements are totally unlike property of a private corporation held for its own benefit and used for its private gain or advantage. The political subdivision cannot deal in its roads and highways as a private corporation and thus when such property is taken by the power of the Federal Government, just compensation cannot be measured by the same standards as compensation for the taking of purely private property. | The state or its political subdivision holds, as a trustee, title to the easement for public highways and roads, and a quasi corporation such as a city or county holds such property by delegation of general sovereign power; authority for its acquisition and control being governmental and the interest exclusively that of the public. | Does the State hold as a trustee title to the easement for public highways and roads? | Highways - Memo 466 - RK_66366.docx | ROSS-003281387-ROSS-003281388 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 12858 | Kackley v. Burtrum, 947 S.W.2d 461 | 302+427 | When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Rule 55.33(b). Failure to timely and specifically object to evidence on the ground that it is beyond the scope of the pleadings constitutes consent for determination of issues thereby raised. Midwest Materials Co. v. Village Development Co., 806 S.W.2d 477, 488[8] (Mo.App. S.D.1991). Issues raised by implied consent are treated as if raised by the pleadings even though the pleadings are not formally amended to conform to the evidence. Id. | Issues raised by implied consent are treated as if raised by pleadings even though pleadings are not formally amended to conform to evidence. V.A.M.R. 55.33(b). | Are issues raised by implied consent treated as if raised by the pleadings? | 023887.docx | LEGALEASE-00161435-LEGALEASE-00161436 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12859 | Annen v. Trump, 913 S.W.2d 16 | 302+38.5 | The primary purpose of a petition is to define and isolate the issues for the parties and the trial court. Pillow v. General Am. Life Ins. Co., 564 S.W.2d 276, 280 (Mo.App.1978). We afford Annen's petition its broadest intendment in determining its sufficiency, treat all facts as true, and construe the allegations favorably to plaintiffs. J.H. Cosgrove Contractors, Inc. v. Kaster, 851 S.W.2d 794, 797"98 (Mo.App.1993). Annen pleaded that Verslues provided the design requirements for the retaining wall and supervised its construction. The petition further alleged that Verslues allowed the use of tie-backs and improper backfill material which did not meet proper construction techniques and which thereby caused insufficient backfill stabilization. When the petition is given its broadest intendment, it invokes principles of substantive law which entitle Annen to relief. Id. | Primary purpose of petition is to define and isolate issues for parties and trial court. | "Is defining and isolating the issues for the parties and the trial court, the primary purpose of a petition?" | 023891.docx | LEGALEASE-00161523-LEGALEASE-00161524 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 12860 | Almes v. Burket, 2005 PA Super 289 | 307A+697 | We begin our analysis of the present case by acknowledging that "[a] Petition to Open a judgment of non pros is addressed to the equitable powers of the court. It is a request to open a judgment of non pros by way of grace and not of right." Walker v. Pugliese, 317 Pa.Super. 595, 464 A.2d 482, 484 (1983). Since the decision to open a judgment of non pros is a matter of equity and grace, appellate review of the decision is subjected to an abuse of discretion standard. Sklar v. Harleysville Ins. Co., 526 Pa. 617, 587 A.2d 1386 (1991). | A petition to open a judgment of non pros is addressed to the equitable powers of the court; it is a request to open a judgment of non pros by way of grace and not of right. | Is a petition to open a judgment of non pros addressed to the equitable powers of the court? | 039654.docx | LEGALEASE-00161170-LEGALEASE-00161171 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 12861 | Mazer v. Sargent Elec. Co., 180 A.2d 63 | 307A+699 | On April 29, 1960, new counsel for the plaintiff filed a motion to strike off the judgment of non pros. Since the motion was not directed to defects in the record, the motion to strike was improper: Gilberton Coal Company v. Schuster, 403 Pa. 226, 169 A.2d 44 (1961). However, we will, as did the court below, consider the motion as a request to open the judgments. | Motion to strike off judgments of non pros was improper where not directed to defects in record. | Is a motion to strike off judgments of non pros is improper where not directed to defects in record? | Pretrial Procedure - Memo 11241 - C - DA_65265.docx | ROSS-003308528 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 12862 | McKane Family Ltd. P'ship v. Sacajawea Family Ltd. P'ship, 211 So. 3d 117 | 307A+695 | The pre-suit demand requirement here is akin to a condition precedent, although it is framed as a pleading requirement. "Our courts have repeatedly affirmed that failure to comply with a statutory condition precedent, absent waiver or estoppel, requires dismissal." City of Coconut Creek v. City of Deerfield Beach, 840 So.2d 389, 393 (Fla. 4th DCA 2003). Such a lapse, however, is not ultimately fatal, and the plaintiff may amend its complaint. See Hosp. Corp. of Am. v. Lindberg, 571 So.2d 446, 449 (Fla. 1990) (holding that "in medical malpractice actions, if a presuit notice is served at the same time as a complaint is filed, the complaint is subject to dismissal with leave to amend"); Coconut Creek, 840 So.2d at 393 (recognizing that if a complaint is dismissed for failure to comply with a statutory condition precedent, the dismissal should be with leave to amend if the statute of limitations has not run). | Although failure to comply with a statutory condition precedent to suit, absent waiver or estoppel, requires dismissal, such a lapse is not ultimately fatal, and the plaintiff may amend its complaint. | Does failure to comply with a statutory condition precedent to suit require dismissal? | 040114.docx | LEGALEASE-00161393-LEGALEASE-00161394 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 12863 | White v. Pruneau, 913 S.W.2d 959 | 307A+694 | Though not raised by the parties, we are obligated to notice, sua sponte, matters preventing us from obtaining jurisdiction. Committee for Educ. Equality v. State, 878 S.W.2d 446, 451 (Mo. banc 1994). Here, the trial court specifically dismissed the petition "without prejudice." The well-established rule is that a dismissal without prejudice is not a final judgment. Waltrip v. Davis, 899 S.W.2d 147, 148 (Mo.App.E.D.1995). Generally, a dismissal without prejudice is not an adjudication on the merits. Id. Unless otherwise barred, such a dismissal allows the party to re-file the action. Id. See also Rule 67.03. No appeal will lie when there is no final judgment entered. Waltrip v. Davis, 899 S.W.2d at 148. | Generally, dismissal without prejudice is not adjudication on the merits, and, unless otherwise barred, such dismissal allows party to refile action. | "Generally, is a dismissal without prejudice not adjudication on the merits?" | 040300.docx | LEGALEASE-00160935-LEGALEASE-00160936 | Order, SA | 0.79 | 1 | 0 | 0 | 1 | |
| 12864 | Elite Door & Trim v. Tapia, 355 S.W.3d 757 | 307A+678 | A trial court is authorized to dismiss a case for want of prosecution by rule of civil procedure 165a and by exercise of its inherent power to manage its docket.Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999). A trial court may dismiss a case under rule 165a on "failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice" or when a case is "not disposed of within the time standards promulgated" by the supreme court. Tex.R. Civ. P. 165a(1), (2). See Tex.R. Jud. Admin. 6, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. F.app. (West Supp.2010) (requiring judges to ensure, so far as reasonably possible, that civil nonjury cases are brought to trial or final disposition within twelve months from appearance date, and that civil jury cases are brought to trial or final disposition within eighteen months from appearance date) | Subcontractor's failure to appear at hearing to determine whether to dismiss subcontractor's suit against sub-subcontractor for breach of contract, negligence, and breach of warranty for want of prosecution was not intentional or the result of conscious indifference, and case thus was not subject to dismissal under rule of civil procedure governing dismissal for want of prosecution based on subcontractor's failure to appear, where subcontractor had no notice from trial court of dismissal hearing. Vernon's Ann.Texas Rules Civ.Proc., Rule 165a(3). | Is a court authorized to dismiss a case for want of prosecution under the rules of civil procedure? | 040395.docx | LEGALEASE-00160636-LEGALEASE-00160637 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 12865 | FIA Card Servs., N.A. v. Salmon, 180 Ohio App. 3d 548 | 307A+583 | However, it is within the sound discretion of the trial court to dismiss an action for lack of prosecution. Pembaur v. Leis (1982), 1 Ohio St.3d 89, 91, 1 OBR 125, 437 N.E.2d 1199. An appellate court is confined solely to whether the trial court abused that discretion. Id. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. | It is within the sound discretion of the trial court to dismiss an action for lack of prosecution, and an appellate court is confined solely to whether the trial court abused that discretion. | Is it within the sound discretion of the trial court to dismiss an action for lack of prosecution? | Pretrial Procedure - Memo 11725 - C - NE_65441.docx | ROSS-003280964-ROSS-003280965 | Order, SA | 0.71 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12866 | HICA Educ. Loan Corp. ex rel. Sallie Mae v. Fielding, 953 So. 2d 1261 | 307A+583 | The trial court entered a judgment dismissing HICA's complaint for lack of prosecution under Rule 41(b), Ala. R. Civ. P., on January 12, 2006. HICA moved to set aside the dismissal on January 23, 2006, alleging that its failure to appear was based on a calendaring error. The trial court set a hearing on HICA's motion for February 8, 2006. HICA's regular counsel, J. Paul Clinton of Stokes and Clinton, P.C., practices in Mobile County; he associated local counsel, Van Wilkins, to appear in court. Wilkins had not filed a notice of appearance, however, and the trial court refused to accept his appearance on HICA's behalf at the February 8, 2006, hearing and denied HICA's motion to set aside the dismissal. HICA appeals, arguing that the trial court exceeded its discretion in dismissing the action for lack of prosecution. "A dismissal for want of prosecution is within the discretion and inherent power of the trial court. Link v. Wabash R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). | A dismissal for want of prosecution is within the discretion and inherent power of the trial court. | Is a dismissal for want of prosecution within the discretion and inherent power of the trial court? | 040453.docx | LEGALEASE-00161068-LEGALEASE-00161069 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 12867 | Levermann v. Cartall, 715 S.W.2d 728 | 307A+583 | The trial court has the right to dismiss a suit for the failure to prosecute it with due diligence, and this is a matter which rests in the sound discretion of the trial court. Price v. Firestone Tire & Rubber Co., 700 S.W.2d 730 (Tex.App.-Dallas 1985, no writ). However, this is not an unbridled discretion, but a judicial discretion subject to review. Upon review, whether there was a clear abuse of discretion by the trial court is a question of law. Bevil v. Johnson, 157 Tex. 621, 307 S.W.2d 85 (1957); Wyatt v. Texas Oklahoma Express, Inc., 693 S.W.2d 731 (Tex.App.-Dallas 1985), no writ). Likewise, an application for reinstatement is addressed to the sound discretion of the trial court, and its actions will not be disturbed in the absence of a showing of abuse. Buchanan v. Masood, 631 S.W.2d 219 (Tex.App.-Amarillo 1982, no writ); Wm. T. Jarvis Co. v. Wes-Tex Grain Co., 548 S.W.2d 775 (Tex.Civ.App.-Waco 1977, writ ref'd n.r.e.). The trial court may dismiss a suit for want of prosecution pursuant to its inherent power. | Trial court may dismiss suit for want of prosecution pursuant to its inherent power. | Can a court dismiss suit for want of prosecution pursuant to its inherent power? | Pretrial Procedure - Memo 11790 - C - NC_65648.docx | ROSS-003295201-ROSS-003295202 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 12868 | Scherer v. Hanson, 270 N.W.2d 23 | 307A+583 | The determination of whether to dismiss an action for failure to prosecute is within the discretion of the trial court. Stevens v. School Board of Ind. Dist. No. 271, 296 Minn. 413, 414, 208 N.W.2d 866, 867 (1973); Firoved v. General Motors Corp., 277 Minn. 278, 282, 152 N.W.2d 364, 368 (1967). We have, however, provided the trial court with guidelines to follow in exercising this discretion. Before an action should be dismissed for failure to prosecute, it must be shown: (1) that the delay prejudiced the defendant, and (2) that the delay was unreasonable and inexcusable. Stevens v. School Board of Ind. Dist. No. 271, supra; Firoved v. General Motors Corp., supra. | Determination whether to dismiss action for failure to prosecute is within discretion of the trial court. Rules Civ.Proc., Dist.Ct., rule 41.02(1), 27A M.S.A. | Is the determination of whether to dismiss an action within the discretion of the trial court? | Pretrial Procedure - Memo 11797 - C - NC_65473.docx | ROSS-003281086-ROSS-003281087 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 12869 | Providence Bank v. Billings, 29 U.S. 514 | 371+2003 | The power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic.This is an original principle, which has its foundation in society itself. It is granted by all, for the benefit of all. It resides in government as a part of itself; and need not be reserved where property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies. | The power of legislation and consequently of taxation operates on all the persons and property belonging to the body politic. | Does the power of taxation operate on all the persons and property belonging to the body politic? | 046298.docx | LEGALEASE-00161693-LEGALEASE-00161694 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 12870 | Indiana Nat. Bank of Indianapolis v. Goss, 208 F.2d 619 | 8.30E+10 | Defendant is partially correct that the law of the forum governs in this action. Inasmuch as this suit was filed and tried in Illinois we must apply the conflict of law decisions of the Illinois Courts. The Illinois courts have held that the law of the place of performance of a contract, or the place of payment of a note, is the law which will govern the nature, validity, interpretation and effect of the obligation. George v. Haas, 311 Ill. 382, 143 N.E. 54; Hurtt v. Steven, 333 Ill.App. 181, 77 N.E.2d 204.2 These notes were all payable in Indianapolis, Indiana, and we must look to the Indiana law in determining the merits of the defendant's contentions. In diversity cases we are bound to take judicial notice of the law of Indiana, without the necessity of pleading or proof of the applicable law and statutes. 28 U.S.C.A. " 1652; Petersen v. Chicago, Great Western Ry. Co., D.C.Neb., 3 F.R.D. 346, affirmed 8 Cir., 138 F.2d 304, 149 A.L.R. 755. | Under Illinois law, law of place of payment of note is the law which will govern the nature, validity, interpretation, and effect of the obligation. | "Does the law of the place of performance of a contract governthe nature, validity, interpretation and effect of the obligation?" | 009215.docx | LEGALEASE-00162632-LEGALEASE-00162633 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12871 | United States v. $184,505.01 in U.S. Currency, 72 F.3d 1160 | 135H+25 | A forfeiture proceeding in which a party does not participate does not place that party in jeopardy, and therefore that party cannot use that forfeiture as the basis of a double jeopardy challenge to a subsequent proceeding. As the Seventh Circuit stated in United States v. Torres, 28 F.3d 1463 (7th Cir.) (holding that a forfeiture under 21 U.S.C. " 881(a)(6) in which the claimant did not file a claim did not place the claimant in jeopardy for Fifth Amendment purposes), cert. denied, 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994): "You can't have double jeopardy without a former jeopardy." Id. at 1465 (citing Serfass v. United States, 420 U.S. 377, 389, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975)); see also United States v. Penny, 60 F.3d 1257 (7th Cir.1995), cert. denied, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996). | Forfeiture proceeding in which party does not participate does not place that party in jeopardy, and therefore that party cannot use that forfeiture as basis of double jeopardy challenge to subsequent proceeding. U.S.C.A. Const.Amend. 5. | Does a forfeiture proceeding in which the party does not participate place that party in jeopardy? | Double Jeopardy - Memo 106 - C - SB_65885.docx | ROSS-003282294-ROSS-003282295 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12872 | Nero v. D.C., 936 A.2d 310 | 135H+96 | However, this bar against multiple trials is not absolute. Courts have long held that a new trial is permitted if a trial judge declares a mistrial for "manifest necessity." Johnson v. United States, 619 A.2d 1183, 1186 (D.C.1993) (citing Richardson v. United States, 468 U.S. 317, 323"26, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984)). Alternatively, a defendant waives his double jeopardy right and may be retried if he moves for a mistrial. "Dinitz and its progeny make clear that absent judicial or prosecutorial goading, a defendant's consent to a mistrial will act as a bar to double jeopardy claims." Lee"Thomas v. United States, 921 A.2d 773, 778 (D.C.2007) (citing Dinitz, supra, 424 U.S. at 610"11, 96 S.Ct. 1075); see United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Speaks v. United States, 617 A.2d 942, 954 (D.C.1992). | A defendant waives his double jeopardy right and may be retried if he moves for a mistrial. U.S.C.A. Const.Amend. 5. | Does a defendant waives his double jeopardy right and may be retried if he moves for a mistrial? | 015059.docx | LEGALEASE-00162466-LEGALEASE-00162467 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 12873 | Antoine E.J. v. Birch Family Servs., 95 A.D.3d 832 | 141E+795 | Schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision. (Mirand v. City of New York, 84 N.Y.2d 44, 49, 614 N.Y.S.2d 372, 637 N.E.2d 263). To establish a claim for failure to provide adequate supervision, a plaintiff must demonstrate that school authorities "had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated" (id. at 49, 614 N.Y.S.2d 372, 637 N.E.2d 263; see Whitfield v. Board of Educ. of City of Mount Vernon, 14 A.D.3d 552, 553, 789 N.Y.S.2d 188). "[A]n injury caused by the impulsive, unanticipated act of a fellow student ordinarily will not give rise to a finding of negligence absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act" (Mirand v. City of New York, 84 N.Y.2d at 49, 614 N.Y.S.2d 372, 637 N.E.2d 263; see Whitfield v. Board of Educ. of City of Mount Vernon, 14 A.D.3d at 553, 789 N.Y.S.2d 188). | Schools are under duty to adequately supervise students in their charge and they will be held liable for foreseeable injuries proximately related to absence of adequate supervision. | Do schools have a duty to supervise students and protect them against intentional injuries? | 017185.docx | LEGALEASE-00161992-LEGALEASE-00161994 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 12874 | State v. Chemlen, 165 Conn. App. 791 | 181+4 | "It is important to note that the specific intent element of the forgery statute is satisfied by an intent to defraud as well as an intent to deceive. The ordinary meaning of the phrase "to deceive" is "to cause to believe the false.... Deceive indicates an inculcating of one so that he takes the false as true, the unreal as existent, the spurious as genuine.... In contrast, "to defraud" means "to take or withhold from (one) some possession, right, or interest by calculated misstatement or perversion of truth, trickery, or other deception." " (Citations omitted.) State v. Yurch, 37 Conn.App. 72, 80"81, 654 A.2d 1246, appeal dismissed, 235 Conn. 469, 667 A.2d 797 (1995). | The ordinary meaning of "deceive," as used in forgery statute, is to cause to believe the false; deceive indicates an inculcating of one so that he takes the false as true, the unreal as existent, the spurious as genuine. C.G.S.A. S 53a-139(a). | What is the difference between intent to deceive and intent to defraud under the forgery statute? | 018465.docx | LEGALEASE-00161934-LEGALEASE-00161935 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 12875 | United States v. Pearce, 65 F.3d 22 | 181+4 | The language of the statute, as well as the legislative history, indicate that a minimal nexus between a document-making implement and interstate commerce is sufficient to constitute a violation of the statute. 18 U.S.C. " 1028(a)(5) provides:Whoever, in a circumstance described in subsection (c) of this section ... knowingly produces, transfers, or possesses a document-making implement with the intent such document-making implement will be used in the production of a false identification document or another document-making implement which will be so used ... shall be punished. | Minimal nexus between document-making implement and interstate commerce is sufficient to constitute violation of statute prohibiting fraud in connection with identification documents. 18 U.S.C.A. S 1028(a)(5). | Is a minimal nexus with interstate commerce sufficient to constitute violation of the forgery statute? | 018469.docx | LEGALEASE-00162013-LEGALEASE-00162014 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 12876 | Browning v. State, 174 Ga. App. 759 | 181+4 | Uttering or delivering a writing is an essential element of the offense of forgery in the first degree; but it is not an essential element of the offense of forgery in the second degree. Ward v. State, 123 Ga.App. 216, 180 S.E.2d 280. "A person commits the offense of forgery in the second degree when with the intent to defraud he knowingly makes, alters or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority." OCGA " 16-9-2(a). Because there was no evidence that defendant made or altered the K-Mart check (or either of the other checks), we must determine whether the evidence demonstrates that with the intent to defraud defendant knowingly possessed the check. | Uttering or delivering writing is essential element of offense of forgery in the first degree; but it is not essential element of offense of forgery in the second degree. O.C.G.A. S 16-9-2(a). | Is uttering or delivering any writing an essential element of forgery in the first degree? | Forgery - Memo 57 - SNJ_65941.docx | ROSS-003278285-ROSS-003278286 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 12877 | Arnold v. Erkmann, 934 S.W.2d 621 | 289+1040 | Erkmann next argues that Count III does not allege actual damage. No actual damages are alleged or sought, however Count III sufficiently alleges a claim for an accounting, which is part of the relief sought. An individual partner has the right to an accounting for profits derived by another partner from partnership operations without the consent of the other partners. "" 358.220; 338.210.1. RSMo 1994.To bring an action under this theory, a plaintiff must plead the existence of a partnership and the withholding of profits. Plaintiff alleges that calves or embryos subject to the agreement were purchased, transferred, sold, or disposed of without a distribution of the profits and that Erkmann, by taking assignment of his brother's interest and assigning his own interest, diverted investment opportunities from plaintiff. These allegations sufficiently allege the withholding of profits to state a claim for an accounting. The trial court erred in dismissing Count III. | To bring action for right to accounting of partnership profits, plaintiff must plead existence of partnership and withholding of profits. | "To bring an action for accounting, does the plaintiff need to plead the existence of a partnership?" | 022694.docx | LEGALEASE-00162247-LEGALEASE-00162248 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12878 | Doe v. Gleicher, 393 Ill. App. 3d 31 | 307A+695 | The December 19, 2002, order was final as to those six dismissed claims. The claims were defective and could not be repled. "A judgment or order is "final" if it disposes of the rights of the parties, either on the entire case or on some definite or separate part of the controversy." (Emphasis added.) Dubina v. Mesirow Realty Development, Inc., 178 Ill.2d 496, 502, 227 Ill.Dec. 389, 687 N.E.2d 871 (1997). Claims dismissed without an opportunity to amend are final even if the case is not dismissed in its entirety. See Hudson, 228 Ill.2d at 473"74, 321 Ill.Dec. 306, 889 N.E.2d 210, citing Rein, 172 Ill.2d at 337"38, 216 Ill.Dec. 642, 665 N.E.2d 1199. | Claims dismissed without an opportunity to amend are final even if the case is not dismissed in its entirety. | Are claims dismissed without an opportunity to amend final even if the case is not dismissed in its entirety? | Pretrial Procedure - Memo 11566 - C - BP_65989.docx | ROSS-003296208-ROSS-003296209 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12879 | Doe v. Sex Offender Registry Bd., 459 Mass. 603 | 268+256 | Finally, fees, unlike taxes, "are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses." Emerson College, supra at 425, 462 N.E.2d 1098. We have stated that the fact that fees are deposited into a general fund, instead of a fund for a designated purpose, carries weight in suggesting that an exaction is a tax, but is "not decisive." Silva, supra at 173, 908 N.E.2d 722, quoting Emerson College, supra at 427, 462 N.E.2d 1098.The critical question is whether the fees are reasonably designed to compensate an entity for its anticipated regulatory expenses.See Silva, supra. See also Southview Coop. Hous. Corp. v. Rent Control Bd. of Cambridge, 396 Mass. 395, 404, 486 N.E.2d 700 (1985) (charges assessed by rent control board on landlords in connection with petitions for individual rent adjustments reasonably designed to compensate board for anticipated costs); Baker v. Department of Envtl. Protection, 39 Mass.App.Ct. 444, 446, 657 N.E.2d 480 (1995) ("an agency may charge fees that offset general agency expenses, as well as the specific costs of the service in relation to each person charged a fee"). | The critical question in determining whether an exaction is designed to compensate a governmental entity providing services for its expenses is whether the fees are reasonably designed to compensate an entity for its anticipated regulatory expenses; in making this determination, reasonable latitude must be given to the agency in fixing charges to cover its anticipated expenses in connection with the services to be rendered. | "In determining whether a charge is a fee or a tax, what is the critical question to be decided by the court?" | 046156.docx | LEGALEASE-00162514-LEGALEASE-00162515 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 12880 | ANR Pipeline Co. v. Lafaver, 150 F.3d 1178 | 371+2003 | For our own purposes, we need not go so far as an inquiry into Roman law16 because Congress has done our work for us. Congress has made it clear in no uncertain terms that a state has a special and fundamental interest in its tax collection system. See Act of Aug. 21, 1937 (Tax Injunction Act), Pub.L. No. 332, 50 Stat. 738, ch. 726, " 1, (1937) (codified at 28 U.S.C. " 1341); see also S. Rep. 1035, 75th Cong., at 2 (1937) (noting that the Tax Injunction Act was intended to protect states from well-financed litigants who could "seriously disrupt State and county finances" by withholding tax payments during the course of federal-court litigation). As the Supreme Court explained in Rosewell, the Tax Injunction Act "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." Rosewell, 450 U.S. at 522. The statute had its roots in Congress' recognition of "the imperative need of a State to administer its own fiscal operations." Tully v. Griffin, Inc., 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976). We do not doubt, therefore, that a state's interests in the integrity of its property tax system lie at the core of the state's sovereignty. Indeed, where it is possible to imagine a state government continuing to maintain its sovereignty despite the lack of any ownership of land, cf. Coeur d'Alene Tribe, 117 S.Ct. at 2041, it is impossible to imagine that a state government could continue to exist without the power to tax. | State's interests in integrity of its property tax system lie at core of the state's sovereignty. | Do a state's interests in the integrity of its property tax system lie at the core of the state's sovereignty? | 046335.docx | LEGALEASE-00161950-LEGALEASE-00161951 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 12881 | Amos v. Mathews, 99 Fla. 1 | 371+2005 | In approaching the question of the power of the Legislature to levy taxes, it should further be borne in mind that our State Constitution is not a grant of power to the Legislature, but is a limitation voluntarily imposed by the people themselves upon their inherent lawmaking power, exercised under our Constitution through the Legislature, which power would otherwise be absolute save as it transcended the powers granted by the state to the federal government. Stone v. State ,71 Fla. 517, 71 So. 634; Cheney v. Jones, 14 Fla. 587. The state therefore possesses, as an attribute of sovereignty, the inherent power to impose all taxes not expressly or by clear implication inhibited by State or Federal Constitutions. Amos v. Gunn, 84 Fla. 285, 94 So. 615; Anderson v. Ocala, 83 Fla. 344, 91 So. 182; Cooley, Taxation (4th Ed.) p. 149. Where the Constitution expressly prescribes the manner of doing a thing, it impliedly forbids its being done in a substantially different manner, even though the Constitution does not in express terms prohibit the doing of the thing in such other manner. Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 256. | As inherent attribute of sovereignty, state may impose all taxes not expressly or by clear implication inhibited by State or Federal Constitutions. | Can the state impose any tax that is inhibited by State or Federal Constitutions? | Taxation - Memo 1176 - C -JL_65993.docx | ROSS-003280197-ROSS-003280198 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12882 | Lovell By & Through Lovell v. Poway Unified Sch. Dist., 90 F.3d 367 | 3.77E+11 | In general, threats are not protected by the First Amendment. Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (holding that the statement, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.," was political hyperbole and not a "true threat" given its context). Statutes punishing threats "must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." Id. at 707, 89 S.Ct. at 1401. | Statutes punishing threats must be interpreted with commands of First Amendment clearly in mind; what is a threat must be distinguished from what is constitutionally protected speech. U.S.C.A. Const.Amend. 1. | Statutes punishing threats must be interpreted with the commands of which amendment in mind? | 046975.docx | LEGALEASE-00162202-LEGALEASE-00162203 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 12883 | Thornton v. Dean, 19 S.C. 583 | 219+28 | But be this as it may, if the isolated fact that the note was made "payable at Bridgewater, North Carolina" must, without regard to the actual intention of the parties, be regarded as conclusive evidence that the parties contracted with reference to the North Carolina law, we think there was no error of law in the decree of the Circuit judge. There has been some confusion and conflicting opinions on the subject, but we think it now settled by authority and sustained by reason, that in such cases there is an exception as to the interest on a debt when it is expressly stipulated in the contract. Without incumbering this opinion with a review of the authorities upon the subject, we are content to take the doctrine as laid down in the case of Peck v. Mayo, 14 Vt. 33, and cited in a note in Kent, supra, where, after full discussion, it was decided as follows: (1.) "If a contract be entered into in one place to be performed in another, the parties may stipulate for the rate of interest of either country. (2.) If the contract stipulate generally for interest without fixing the rate, it shall be the rate of interest at the place of payment. (3.) If no interest be stipulated, and payment be not made, interest by way of damages is according to the law of the place of payment," | If a contract be entered into in one place to be performed in another, the parties may stipulate for the rate of interest of either country; if the contract stipulate generally for interest without fixing the rate, it should be the rate of interest at the place of payment; if no interest be stipulated, and payment be not made, interest by way of damages is according to the law of the place of payment. | Can parties stipulate the rate of interest? | 009138.docx | LEGALEASE-00162827-LEGALEASE-00162828 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12884 | Johnston v. Gawtry, 83 Mo. 339 | 8.30E+10 | This suit was instituted in the circuit court of the city of St. Louis for the purpose of charging the separate real estate of defendant, Anne E. Gawtry, a married woman, with the payment of a note indorsed by her for $10,079.69. On the trial a judgment and decree was rendered for plaintiff in conformity with the prayer of the petition, which on appeal to the St. Louis court of appeals was affirmed, from which judgment of affirmance defendants have appealed to this court. The opinion of the court of appeals is reported in 11 Mo. App. 322, and it is there held that the state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract, though the note is executed in another state; that in an equity proceeding in the courts of this state, where nothing to the contrary appears, it will be presumed that the equity doctrine of a sister state is the same as that of the forum, where the courts of both states have an equity jurisdiction; that a married woman in this state is deemed a feme sole for the purpose of charging her separate estate with the payment of a debt, and in an action to enforce her foreign contract against her separate estate in this state, the law of the forum governs as to her power to make it and its validity. These principles, we think, are abundantly sustained by the authorities referred to in the opinion of the court of appeals, and the following authorities not therein cited: Story on Conflict of Laws, 242, 280; Dan. on Neg. Inst., sec. 868; Davis v. Clemson, 6 McLean, 622; Cook v. Litchfield, 5 Sandf. 337; Lee v. Sellick, 33 N. Y. 615; Lawrence v. Bassett, 5 Allen 140. The above principles were properly applied to the facts of this case by the court of appeals, and its judgment affirming the judgment of the circuit court is hereby affirmed.All concur, except Judge Sherwood, absent | The state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract. | Is the state in which a note is made payable and in which it is delivered in consummation of a bargain the place of the contract? | Bills and Notes - Memo 1351 - RK_66254.docx | ROSS-003320637-ROSS-003320638 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12885 | Evans v. Anderson, 78 Ill. 558 | 8.30E+10 | It is true, the note does not, on its face, purport to have been made in the State of Indiana, yet, it so appears by the plea, and the fact is not denied. The existing laws of a State at the time of making a note, form a portion of the contract, and the liability of the maker must be determined under them. Stacy, Admr. v. Baker, 1 Scam. 417; Holbrook et al. v. Vibbard et al. 2 ib. 465; Roundtree, Admr. v. Baker, Admr. 52 Ill. 241; Bradshaw v. Newman, Breese (2d Ed.), 133; Humphreys v. Collier et al..297. | The existing laws of the state at the time of making a note therein form a portion of the contract, and the liability of the maker must be determined under them. | Which law determines the liability of the maker of a note? | Bills and Notes - Memo 1355 - RK_66257.docx | ROSS-003307569-ROSS-003307570 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 12886 | Indiana Nat. Bank of Indianapolis v. Goss, 208 F.2d 619 | 8.30E+10 | Defendant is partially correct that the law of the forum governs in this action. Inasmuch as this suit was filed and tried in Illinois we must apply the conflict of law decisions of the Illinois Courts. The Illinois courts have held that the law of the place of performance of a contract, or the place of payment of a note, is the law which will govern the nature, validity, interpretation and effect of the obligation. George v. Haas, 311 Ill. 382, 143 N.E. 54; Hurtt v. Steven, 333 Ill.App. 181, 77 N.E.2d 204.2 These notes were all payable in Indianapolis, Indiana, and we must look to the Indiana law in determining the merits of the defendant's contentions. In diversity cases we are bound to take judicial notice of the law of Indiana, without the necessity of pleading or proof of the applicable law and statutes. 28 U.S.C.A. " 1652; Petersen v. Chicago, Great Western Ry. Co., D.C.Neb., 3 F.R.D. 346, affirmed 8 Cir., 138 F.2d 304, 149 A.L.R. 755. | Under Illinois law, law of place of payment of note is the law which will govern the nature, validity, interpretation, and effect of the obligation. | "What governs the nature, validity, interpretation and effect of the obligation of a note?" | Bills and Notes - Memo 1368 - RK_66269.docx | ROSS-003296858-ROSS-003296859 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 12887 | Dep't of Consumer & Bus. Servs. v. Clements, 240 Or. App. 226 | 413+186 | The internal logic of the Workers' Compensation Law, as explained by the Supreme Court, requires the determination of whether one is a "worker" under ORS 656.005(30) to be made before it can be determined if that person is a "subject" or "nonsubject" worker under ORS 656.027. S"W Floor Cover Shop, 318 Or. at 630, 872 P.2d 1. We read the progression of the statutory language to similarly require us to determine whether an employer is "subject or nonsubject" under ORS 656.023 before we can determine whether that employer's worker who is applying for workers' compensation is employed by a "nonsubject" employer. See ORS 656.027(3)(a)(B) (a worker is a nonsubject employee if his employment is casual and he is employed in the course of the trade, business, or profession of a nonsubject employer). Therefore, because ORS 656.023 states that a "subject employer" is one who employs one or more "subject workers," the employee whose status as a "subject worker" is still in question cannot be counted as the only "subject worker" of that employer for purposes of ORS 656.023 or ORS 656.027(3). See Bisbey v. Thedford, 68 Or.App. 200, 203, 680 P.2d 1003 (1984) (hotel that had no other subject employees was not a subject employer at time of claimant's injury); Konell v. Konell, 48 Or.App. 551, 557"58, 617 P.2d 313 (1980) (similar). | The court must determine whether an employer is a subject employer or a nonsubject employer under the Workers' Compensation Law before it can determine whether that employer's worker who is applying for workers' compensation is employed by a nonsubject employer for purposes of the casual worker exception to subject worker status, which applies when a casual worker is employed in the course of the trade, business, or profession of a nonsubject employer, and thus, since the Workers' Compensation Law states that a subject employer is one who employs one or more subject workers, the employee whose status as a subject worker is still in question cannot be counted as the only subject worker of that employer for purposes of establishing that the employer is a subject employer. West's Or.Rev. Stat. Ann. SS 656.023, 656.027(3)(a)(B). | "In Workers Compensation, must a determination of whether one is a worker be made before it can be determined if that person is a subject or nonsubject worker?" | 048717.docx | LEGALEASE-00162711-LEGALEASE-00162712 | SA, Sub | 0.37 | 0 | 0 | 1 | 1 | |
| 12888 | United States v. Hernandez, 803 F.3d 1341 | 135H+25 | Although this Court has not directly addressed whether imposing both restitution and forfeiture judgments for a single offense implicates the prohibition on double jeopardy, this Court has held that Congress intended restitution and forfeiture to serve distinct roles in sentencing. See Joseph, 743 F.3d at 1354 ("While restitution seeks to make victims whole by reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice."); see also United States v. Browne, 505 F.3d 1229, 1281 (11th Cir.2007); United States v. Contorinis, 692 F.3d 136, 146 (2d Cir.2012) (explaining that forfeiture in criminal proceedings under 18 U.S.C. " 981, the civil forfeiture statute, is an in personam proceeding, serves no remedial purpose, and is designed to punish the offender). Because restitution and forfeiture serve different purposes, imposition of both does not implicate double jeopardy. | Because restitution and forfeiture serve different purposes, imposition of both does not implicate double jeopardy. U.S.C.A. Const.Amend. 5. | "Because restitution and forfeiture serve different purposes, does imposition of both not implicate double jeopardy?" | Double Jeopardy - Memo 139 - C - SKG_66383.docx | ROSS-003280228-ROSS-003280229 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12889 | Warren v. McDonald, 28 Vet. App. 214 | 34+136 | Here, the Board found that the April 30, 2010, Report of General Information form "contained all information necessary to properly withdraw an appeal required by 38 C.F.R. " 20.204." R. at 8. Section 20.204(a) states that "[o]nly an appellant, or an appellant's authorized representative, may withdraw an appeal" and " 20.204(b) states that "[e]xcept for appeals withdrawn on the record at a hearing, appeal withdrawals must be in writing." Withdrawal of an appeal is only effective where withdrawal is explicit, unambiguous, and done with a full understanding of the consequences of such action on the part of the claimant. See DeLisio v. Shinseki, 25 Vet.App. 45, 57 (2011); see also Kalman, 18 Vet.App. at 524 (reversing a Board finding that a veteran withdrew his appeal where his statement regarding the "only issue remaining," in context, referred to resolving the location of a video hearing and not limiting the issues on appeal); Verdon v. Brown, 8 Vet.App. 529, 533 (1996) (setting aside a Board finding that a veteran withdrew his appeal as to the appropriate evaluation where a letter to his representative stated he had "come to an agreement" with his evaluation, one representative omitted mentioning the evaluation, and a second representative actually argued the evaluation issue); Isenbart v. Brown, 7 Vet.App. 537, 541 (1995) (where, during a hearing, a veteran enumerated certain issues and stated that there were no additional issues, the Court found that "these few words spoken orally" did not provide "the formality or specificity that withdrawal [of an NOD] requires"). | A veteran's withdrawal of an appeal to the Board of Veterans' Appeals is only effective where withdrawal is explicit, unambiguous, and done with a full understanding of the consequences of such action on the part of the claimant. 38 C.F.R. SS 20.204, 20.204(b). | When is a veteran's withdrawal of an appeal to the Board of Veterans' Appeals effective? | 008855.docx | LEGALEASE-00163928-LEGALEASE-00163929 | Condensed, Order, SA | 0.84 | 1 | 1 | 0 | 1 | 1 |
| 12890 | Stewart v. Citizens & S. Nat. Bank, 138 Ga. App. 209 | 8.30E+27 | While a check is merely an order upon a bank to pay from the drawer's account, it may be revoked at any time by the drawer before it has been certified, accepted, or paid by the bank, and may be revoked by operation of law upon the death of the drawer. See Aiken Bag Corporation v. McLeod,Bank of Hamilton v. Williams, see also Code Ann. s 109A-4-405; Lambeth v. Lewis, 114 Ga.App. 191, 150 S.E.2d 462. | Check is merely an order on bank to pay from drawer's account, and may be revoked at any time by the drawer before it has been certified, accepted, or paid by the bank, and may be revoked by operation of the law on the death of the drawer. Code, S 109A-4-405. | When can a check be revoked? | 009331.docx | LEGALEASE-00163013-LEGALEASE-00163014 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |
| 12891 | Lambeth v. Lewis, 114 Ga. App. 191 | 162+221(4.1) | Being a mere order to pay which has been revoked by the death of the drawer, a check in the hands of the original payee does not constitute a debt under Code s 113-1508 for which the decedent's estate would be liable so as to authorize a suit on the check itself; but the payee "is remitted to any underlying claim he may have against the decedent." 11 Am.Jur.2d, Bills and Notes, s 590, p. 661; In re Bakri's Estate, Sur., 109 N.Y.S.2d 654. The check may in a proper action be used as evidence in support of the payee's claim of indebtedness against the decedent but not as evidence of the indebtedness itself (See Grimes v. Elliott, 40 Ga.App. 739, 151 S.E. 536); and where the check was merely a gift or otherwise without consideration, the payee would have no valid claim against the estate. Felder v. Felder, 71 Ga.App. 860, 32 S.E.2d 550. | Check is revoked by drawer's death but may in proper action be used as evidence in support of payee's claim of indebtedness against decedent but not as evidence of indebtedness itself. Code, SS 109A-3-409, 109A-4-405. | Can a be used as evidence in support of the payee's claim of indebtedness against the decedent but not as evidence of the indebtedness itself? | Bills and Notes - Memo 1455 - RK_66511.docx | ROSS-003283223-ROSS-003283224 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 12892 | Robinson v. State Farm Mut. Auto. Ins. Co., 52 So. 3d 416 | 135+2 | "Once established [,] a person's domicile remains intact "absent a clear indication of intent to abandon the existing domicile and to establish another." " Id. at (14); Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (a person can reside at one place but be domiciled at another). The McLeod court explained that "residency is a more flexible concept, and permanency is not a requirement for residency." McLeod, 789 So.2d at 810. Even a temporary and transient place of dwelling can qualify." | Residency is a more flexible concept than domicile, and permanency is not a requirement for residency; even a temporary and transient place of dwelling can qualify. | Can even a temporary and transient place of dwelling qualify for residency? | Domicile - Memo 49 - C - AD_67128.docx | ROSS-003305396 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 12893 | United States v. Shinault, 147 F.3d 1266 | 135H+59 | Trigg and Richardson seem to provide an easy answer here. In equipoise with those cases, however, is the long-standing principle that a defendant has a "valued right to have his trial completed by a particular tribunal." Illinois v. Somerville, 410 U.S. 458, 466, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) (quoting Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)). As soon as the jury is sworn, the defendant acquires a constitutional interest in having that jury see his case through to a conclusion. See United States v. Martin Linen Supply Co., 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). A proceeding judged by a tribunal other than the one originally selected "may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." Arizona v. Washington, 434 U.S. 497, 503"04, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). | Defendant has a valued right to have his trial completed by a particular tribunal; as soon as the jury is sworn, the defendant acquires a constitutional interest, under Double Jeopardy Clause, in having that jury see his case through to a conclusion. U.S.C.A. Const.Amend. 5. | Does the defendant acquire a constitutional interest to have jury see his case through to a conclusion? | 014800.docx | LEGALEASE-00163950-LEGALEASE-00163951 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 12894 | State v. Stover, 271 Or. 132 | 135H+51 | The defendant, however, contends that such a dismissal in district court bars the state from prosecuting the defendant in circuit court for the crime of criminally negligent homicide. He cites State v. Brown, 262 Or. 442, 497 P.2d 1191 (1972), in support of this contention. However, in Brown we were presented with the situation where the defendant was subjected to two trials for crimes arising out of the same criminal transaction. Jeopardy does not attach until the jury is sworn or, if the judge is the trier of fact, until the first witness is sworn, or until the defendant is convicted on a plea of guilty. See State v. Buck, 239 Or. 577, 398 P.2d 176, 399 P.2d 367 (1965); State v. Leverich, supra. See also Sigler, Double Jeopardy 83 (1969); Annot., 49 A.L.R.3d 1039 (1973). | Jeopardy does not attach until jury is sworn or, if judge is trier of fact, until first witness is sworn, or until defendant is convicted on plea of guilty. | Will jeopardy attach when first witness is sworn? | Double Jeopardy - Memo 1102 - C - NS_68007.docx | ROSS-003305773-ROSS-003305774 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 12895 | People v. Herdman, 310 P.3d 170 | 135H+30 | Contrary to Herdman's argument, our supreme court has recently rejected the contention that a sentence enhancer is a substantive element of an offense for purposes of double jeopardy analysis. See People v. Simon, 266 P.3d 1099, 1109 (Colo.2011). | A sentence enhancer is not a substantive element of an offense for purposes of double jeopardy analysis. U.S.C.A. Const.Amend. 5. | Is a sentence enhancer a substantive element of an offense for purposes of double jeopardy analysis? | Double Jeopardy - Memo 1122 - C - TJ_68026.docx | ROSS-003282610 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12896 | Williams v. New York, 367 F. Supp. 2d 449 | 135H+30 | It is "well established that there is no double jeopardy bar to the use of prior convictions in sentencing a persistent offender." Caspari v. Bohlen, 510 U.S. 383, 391, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (citing Spencer v. Texas, 385 U.S. 554, 560, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Moore v. Missouri, 159 U.S. 673, 678, 16 S.Ct. 179, 40 L.Ed. 301 (1895)). Historically, the Supreme Court has held Double Jeopardy protections to be inapplicable to sentencing proceedings "because the determinations at issue do not place a defendant in jeopardy for an "offense." Monge v. California, 524 U.S. 721, 728, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (citing Bullington v. Missouri, 451 U.S. 430, 438, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); Nichols v. United States, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (noting that repeat-offender laws "penalize only the last offense committed by the defendant")) | There is no double jeopardy bar to use of prior convictions in sentencing a persistent offender. U.S.C.A. Const.Amend. 5. | Is there a double jeopardy bar to use of prior convictions in sentencing a persistent offender? | 014943.docx | LEGALEASE-00163998-LEGALEASE-00163999 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12897 | United States v. Muth, 896 F. Supp. 196 | 135H+25 | First, the record establishes that the final judgment of judicial forfeiture of defendant's residence was entered after he entered an unconditional guilty plea to the criminal charge. In United States v. Faber, 57 F.3d 873 (9th Cir.1995), the court held that the entry of the plea is the critical date for purposes of double jeopardy analysis. Jeopardy in a civil forfeiture proceeding, however, does not attach until a final judgment was entered.United States v. Sherrett, 877 F.Supp. 519, 524 (D.Or.1995); United States v. Stanwood, 872 F.Supp. 791, 798 (D.Or.1994). Thus, defendant's attack on his conviction based upon a forfeiture which occurred after entry of his guilty plea must fail. | Jeopardy did not attach in civil forfeiture proceeding until final judgment was entered, and, therefore, double jeopardy principles did not preclude criminal prosecution which arose from same facts as those underlying civil forfeiture proceedings which began before, but which ended after, defendant pled guilty to the criminal charge. U.S.C.A. Const.Amend. 5. | Does jeopardy not attach in a civil forfeiture proceeding until final judgment is entered? | 015168.docx | LEGALEASE-00163519-LEGALEASE-00163520 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 12898 | State v. Lynch, 134 N.M. 139 | 135H+96 | It is the public's strong interest in seeing the guilty punished after a fair trial that allows the State to reprosecute a defendant who has successfully appealed his or her conviction on the basis of trial error, see United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) ( "While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain [this] principle are the implications of that principle for the sound administration of justice."), or where a mistrial is ordered as a matter of "manifest necessity," United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion). In Martinez, the jury was unable to reach a unanimous verdict on the attempted murder charge, thereby creating a "manifest necessity" for a mistrial. 120 N.M. at 679, 905 P.2d at 717. In addition, it was defense counsel who requested the declaration of a mistrial on the attempted murder charge. Id. According to long-established United States Supreme Court precedent, "a defendant's motion for or consent to a mistrial generally forecloses any claim of double jeopardy." Id. | A defendant's motion for or consent to a mistrial generally forecloses any claim of double jeopardy. U.S.C.A. Const.Amend. 5; Const. Art. 2, S 15. | Does a defendant's motion for or consent to a mistrial generally foreclose any claim of double jeopardy? | 015226.docx | LEGALEASE-00162983-LEGALEASE-00162984 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 12899 | People v. Tate, 317 Ill. App. 3d 272 | 135H+99 | The order contains a finding that there was manifest necessity to end the trial. However, at the same time, the order declares the mistrial based upon the defendant's motion. The existence of manifest necessity is requisite only where the State requests a mistrial that the defendant opposes. Where the defendant seeks a mistrial, there is no need for such a finding. We are left to resolve the question of whose motion for mistrial the trial judge thought he granted. | Existence of manifest necessity for a mistrial is requisite only where the state requests a mistrial that the defendant opposes; where the defendant seeks a mistrial, there is no need for such a finding. | Is the existence of manifest necessity for a mistrial requisite only where the state requests a mistrial that the defendant opposes? | Double Jeopardy - Memo 286 - C - KG_66971.docx | ROSS-003285801 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 12900 | Davidson v. United States, 48 A.3d 194 | 135H+96 | "Courts have long held that a new trial is permitted if a trial judge declares a mistrial for "manifest necessity." Alternatively, a defendant waives his double jeopardy right and may be retried if he moves for a mistrial." Nero v. District of Columbia, 936 A.2d 310, 313"14 (D.C.2007) (quoting Johnson v. United States, 619 A.2d 1183, 1186 (D.C.1993)); see Perez, 22 U.S. at 580. "It is settled that where the defendant himself has elected to terminate the proceedings against him, the "manifest necessity" standard has no place in the application of the double jeopardy clause."In re V.G.E., 452 A.2d 1195, 1196 (D.C.1982) (citing Oregon v. Kennedy, 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)). Thus, "when a mistrial is declared with the consent of the defendant or upon his motion, it is "ordinarily assumed to remove any barrier to reprosecution." " Lee"Thomas v. United States, 921 A.2d 773, 775"76 (D.C.2007) (quoting Carter, 497 A.2d at 441 n. 4); see also United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion). | When a mistrial is declared with the consent of the defendant or upon his motion, it is ordinarily assumed to remove any barrier to reprosecution. U.S.C.A. Const.Amend. 5. | Is a motion by a defendant for mistrial ordinarily assumed to remove any double jeopardy barrier to reprosecution? | 015323.docx | LEGALEASE-00163183-LEGALEASE-00163184 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 12901 | United States v. Bauman, 887 F.2d 546 | 135H+201 | However, the double jeopardy clause is not an absolute bar to reprosecution once the jury has been empaneled and sworn. A defendant may, for example, waive double jeopardy protection by consenting to a mistrial before a verdict is rendered. As noted in United States v. Dinitz, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079-1080, 47 L.Ed.2d 267 (1976), "a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant motion is necessitated by prosecutorial or judicial error" (citing United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971)). | Double jeopardy clause is not absolute bar to reprosecution once jury has been empaneled and sworn; defendant may, for example, waive double jeopardy protection by consenting to mistrial before verdict is rendered. U.S.C.A. Const.Amend. 5. | Is the double jeopardy clause not an absolute bar to reprosecution once a jury has been empaneled and sworn? | Double Jeopardy - Memo 346 - C - NE_66536.docx | ROSS-003281514-ROSS-003281515 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 12902 | United States v. Holley, 986 F.2d 100 | 135H+59 | The double jeopardy clause protects a defendant right to have his trial completed by a particular tribunal. Crist v. Bretz, 437 U.S. 28, 36, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978). Nonetheless, the double jeopardy clause is not an absolute bar to reprosecution once the jury has been empaneled and sworn. Without the defendant consent, however, reprosecution is more difficult. | Double jeopardy clause is not absolute bar to reprosecution once jury has been empaneled and sworn. U.S.C.A. Const.Amend. 5. | Is the double jeopardy clause not an absolute bar to reprosecution once a jury has been empaneled and sworn? | 015373.docx | LEGALEASE-00162917-LEGALEASE-00162918 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12903 | Com. v. Graham, 109 A.3d 733 | 135H+97 | Both of Appellant's arguments challenge the trial court's conclusion that the prosecutor did not engage in intentional misconduct. We will consider them together. The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, " 10 of the Pennsylvania Constitution protect a defendant from repeated criminal prosecutions for the same offense. Id. Ordinarily, the law permits retrial when the defendant successfully moves for mistrial. If, however, the prosecution engages in certain forms of intentional misconduct, the Double Jeopardy Clause bars retrial. Id. at 884. Article I, " 10, which our Supreme Court has construed more broadly than its federal counterpart, bars retrial "not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." Commonwealth v. Smith, 532 Pa. 177, 615 A.2d 321, 325 (1992). | If the prosecution engages in certain forms of intentional misconduct, the double jeopardy clause bars retrial. U.S.C.A. Const.Amend. 5. | Does the law ordinarily permit retrial when the defendant successfully moves for a mistrial unless the prosecution has engaged in certain forms of intentional misconduct? | 015387.docx | LEGALEASE-00163139-LEGALEASE-00163140 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12904 | State v. Roberts, 119 Ohio St. 3d 294 | 135H+100.1 | The court began its analysis by recognizing that the " "constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal," " even when it is " "based upon an egregiously erroneous foundation." " DiFrancesco, 449 U.S. at 129, 101 S.Ct. 426, 66 L.Ed.2d 328, quoting Arizona v. Washington (1978), 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717, and Fong Foo v. United States (1962), 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629. Otherwise, "there would be an unacceptably high risk that the Government, with its superior resources, would wear down a defendant, thereby "enhancing the possibility that even though innocent he may be found guilty." " Id. at 130, 101 S.Ct. 426, 66 L.Ed.2d 328, quoting Green v. United States (1957), 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199. Thus, acquittals are afforded "absolute finality" for purposes of applying double jeopardy protections. Id., quoting Burks v. United States (1978), 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1. | Acquittals are afforded absolute finality for purposes of applying double jeopardy protections. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 10. | Are acquittals afforded absolute finality for purposes of applying double jeopardy protections? | 015601.docx | LEGALEASE-00162961-LEGALEASE-00162962 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 12905 | Bishop v. State, 176 Ga. App. 357 | 135H+95.1 | The juror at a late time indicated her disqualification although it had been timely inquired into during voir dire, and there were no other jurors available. He apparently recognized early on that such a result was an expected necessity. A mistrial declared for erroneous reasons and not for legal cause would be a bar to another trial. Oliveros v. State, 120 Ga. 237, 47 S.E. 627 (1904). But the appellant concedes that ordering the mistrial was substantively not improper. OCGA " 16-1-8(e)(2)(D). He says instead: "The only issue on this appeal is the manner in which it was done." Thus it is at heart a due process claim. | Mistrial declared for erroneous reasons and not for legal cause is bar to another trial. O.C.G.A. S 16-1-8(e)(2)(D). | Is a mistrial declared for erroneous reasons and not for legal cause a bar to another trial? | Double Jeopardy - Memo 465 - C - TJ_67154.docx | ROSS-003292684 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 12906 | People ex rel. Spiers v. Lawley, 17 Cal. App. 331 | 391+23 | This being true, and since there is no provision in the grant itself or of any statute to which my attention has been directed expressly requiring that the consent of the state shall first be obtained before the right to sell or transfer the franchise may be exercised, manifestly said franchise may be transferred without the consent of the granting power. I do not, however, intend to be understood as holding that the state could not have made the procurement of its consent a prerequisite or a condition precedent to the exercise of the right by the grantee to transfer the franchise; but the state has not done so in this case by express language or by language reasonably capable of the construction that such was its intention. | Where a grant of a franchise to construct and maintain a toll road contained in itself no provision requiring that the consent of the state should first be obtained before the right to sell or transfer the franchise could be exercised, or any statute to that effect, it might be transferred without the consent of the state. | Can franchises be transferred without consent? | 018601.docx | LEGALEASE-00163253-LEGALEASE-00163254 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 12907 | Cockburn v. O'Meara, 155 F.2d 340 | 260+79.1(0.5) | 1 In Louisiana the obligation to pay an overriding royalty in a transfer of a lease, even though the transaction be called an assignment or sale of the lease, characterizes the transaction as a sublease. The payment of an overriding royalty is the payment of rent and is not the payment of the price for the oil or gas rights as if they were sold. Roberson v. Pioneer Gas Co., 173 La. 313, 317, 137 So. 46, 82 A.L.R. 1264. | In Louisiana, the payment of an overriding royalty is the payment of "rent" and is not the payment of the price for the oil or gas rights as if they were sold. | Does the payment of an overriding royalty constitute a payment of rent or rather the payment of the price for the oil or gas rights as if they were sold? | 021686.docx | LEGALEASE-00163315-LEGALEASE-00163316 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 12908 | State of New Mexico Uninsured Employers' Fund v. Gallegos, 395 P.3d 533 | 307A+697 | Rule 1-041(E)(2) provides no mechanism by which a stand-alone "good cause" analysis may justify reinstatement beyond expiration of the thirty-day reinstatement window. See Summit Elec. Supply Co., 2010"NMCA"086, 148 N.M. 590, 241 P.3d 188 (explaining that when a district court "dismisses a case on its own motion following a 180-day period of inactivity[,]" reinstatement should be granted if "good cause is shown for the [180-day period of] inactivity"). A party may move by right to reinstate within thirty days of dismissal. But whether the motion will be granted depends on the existence of the moving party's good cause justification for failing to prosecute its cause of action during the 180 days preceding dismissal. See id.; Rule 1-041(E)(2). | A party may move by right to reinstate within 30 days of dismissal, but whether the motion will be granted depends on the existence of the moving party's good cause justification for failing to prosecute its cause of action during the 180 days preceding dismissal. NMRA 1-041(E)(2), 1-060(B)(6). | Can a party move by right to reinstate within 30 days of dismissal? | Pretrial Procedure - Memo 11896 - C - SHB.docx | LEGALEASE-00053589-LEGALEASE-00053590 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 12909 | Wells Fargo Bank, N.A. v. Bohatka, 112 So. 3d 596 | 302+243 | Instead, the ostensible basis for dismissal with prejudice was that the initial complaint could not be amended to state a claim for which the bank had standing, a determination we review de novo. See Magnum Capital, LLC v. Carter. Assoc., LLC, 905 So.2d 220, 221 (Fla. 1st DCA 2005) ("We review de novo a trial court's final disposition on a motion to dismiss for failure to state a cause of action."). As a general matter, trial courts are to give plaintiffs "an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action." See Kairalla v. John D. Catherine T. MacArthur Found., 534 So.2d 774, 775 (Fla. 4th DCA 1988). And the failure to attach necessary documents is a remediable offense. See Wells Fargo Bank, N.A. v. Reeves, 92 So.3d 249, 253 (Fla. 1st DCA 2012). | For purposes of general rule that trial courts are to give plaintiffs an opportunity to amend a defective pleading, the failure to attach necessary documents is a remediable offense. | "As a general matter, are trial courts to give plaintiffs an opportunity to amend a defective pleading?" | 040790.docx | LEGALEASE-00163837-LEGALEASE-00163838 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12910 | Malone v. Com., 636 S.W.2d 647 | 110+55 | Prior to the enactment of the Penal Code, we held that forcible rape could not be mitigated or excused on account of the accused's drunkenness. Abbott v. Commonwealth, 234 Ky. 423, 28 S.W.2d 486 (1930). The act itself constituted the offense without other indicia of intent. Coots v. Commonwealth, Ky., 418 S.W.2d 752 (1967). We do not think the drafters of the Penal Code intended to inject the elements of intent or knowledge, as they are defined in KRS 501.020, into the crimes of forcible rape and sodomy so as to make voluntary intoxication available as a defense. Our conclusion is supported by the commentary to the code where it was stated, "substantively the crime of rape has not changed." Kentucky Penal Code, Final Draft of 1971, Commentary to s 1115 at 131. | Intent or knowledge are not elements of the crimes of forcible rape and sodomy so as to make voluntary intoxication available as a defense. KRS 501.020, 501.050, 501.080, 510.040(1)(a), 510.070(1)(a). | Is intoxication a defense to the crime of rape? | 043125.docx | LEGALEASE-00164086-LEGALEASE-00164087 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 12911 | State v. Robinson, 345 Mo. 897 | 352H+191 | "'Carnal intercourse with a woman incapable from mental infirmity of giving consent is rape, unless the man is ignorant of her infirmity and its extent, believes he has her consent, and has no intention to have intercourse without her consent. | Where a man has carnal intercourse with a woman mentally incapable of giving consent he is not guilty of "rape" if he believes he has her consent and is unaware of her infirmity, and burden is on the state to establish the woman's incapacity. | Is sexual intercourse with a woman incapable from mental infirmity of giving consent rape? | 043137.docx | LEGALEASE-00164080-LEGALEASE-00164081 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 12912 | Towell v. Steger, 154 S.W.3d 471 | 3.77E+05 | Thus, trial courts must balance the dire, quasi-criminal consequences to the accused with the laudatory purpose of preventing potential violence and unnecessary and unjustified infliction of emotional distress. See Wallace, 969 S.W.2d at 387. Stalking statutes should be construed narrowly enough to prevent serious abuse, but broadly enough to maximize victim protection. Id. We find the order granting a full order of protection is not supported by substantial evidence and is, therefore, reversed. The cause is remanded to the trial court with instructions to vacate the full order of protection. | Stalking statutes should be construed narrowly enough to prevent serious abuse, but broadly enough to maximize victim protection. V.A.M.S. S 455.010. | How should the stalking statute be construed to prevent serious abuse? | 046988.docx | LEGALEASE-00163389-LEGALEASE-00163390 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 12913 | Rush v. Oppenheimer & Co., 779 F.2d 885 | 25T+182(2) | Nor does defendants' service of an answer that contained thirteen affirmative defenses but failed to raise the agreement to arbitrate, constitute a waiver of arbitration. Absent a demonstration of prejudice by Rush, the bare fact that the defendants filed an answer is inadequate by itself to support a claim of waiver of arbitration. See ITT World Communications, Inc. v. Communications Workers of America, AFL"CIO, 422 F.2d 77, 82 (2d Cir.1970). | Bare fact that an answer was filed is inadequate by itself to support a claim of waiver of arbitration, absent demonstration of prejudice to other party. | Is filing an answer adequate to support a claim of waiver of arbitration? | Alternative Dispute Resolution - Memo 871 - RK_67476.docx | ROSS-003295779 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 12914 | Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co., 304 F.3d 476 | 25T+184 | Under the FAA, jurisdiction by the courts to intervene into the arbitral process prior to issuance of an award is very limited. See Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir.2001).Courts are limited to determinations regarding whether a valid agreement to arbitrate exists and the scope and enforcement of the agreement, including the arbitrability of given underlying disputes under the agreement. See id. at 1085"86 (" "[A] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided." ") (quoting Great Western Mtg. Corp. v. Peacock, 110 F.3d 222, 230 (3d Cir.1997)); Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 478 (9th Cir.1991) ("Our role is strictly limited to determining arbitrability and enforcing agreements to arbitrate...."). Section 4 of the FAA provides for a court's role in the arbitral process prior to issuance of an award in the event of a claimed "default" of that process pursuant to a valid agreement: A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition ... [a] district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court ... upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, ... shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed ... to the trial thereof.... If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof. | Jurisdiction of courts to intervene into arbitral process prior to issuance of award is very limited; courts are limited to decisions regarding whether a valid agreement to arbitrate exists and scope and enforcement of that agreement, including the arbitrability of given underlying disputes under agreement. | Is the jurisdiction by the courts to intervene into the arbitral process prior to issuance of an award limited under the Federal Arbitration Act (FAA)? | 008122.docx | LEGALEASE-00165048-LEGALEASE-00165050 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 12915 | Buck v. Davenport Sav. Bank, 29 Neb. 407 | 83E+432 | A writing on the back of a negotiable promissory note, "Demand, notice, and protest waived, and payment guarantied," signed by the payee of the note, is an indorsement with enlarged liability. | A writing on the back of a note, "Demand, notice, and protest waived, and payment guarantied," signed by the payee of the note, is an indorsement. | Does a writing protest waived on the back of a note constitutes an indorsement with enlarged liability? | 010059.docx | LEGALEASE-00164323-LEGALEASE-00164324 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |
| 12916 | Shultz v. S.E.C., 614 F.2d 561 | 349B+40.14(2) | This court does not review actions of the Exchange Committee because Exchange disciplinary actions are subject to full review by the Securities and Exchange Commission, a wholly public organ, with a hearing before it if requested, the taking of further evidence it may deem relevant, and a decision based on its own findings. Nassau Securities Service v. Securities and Exchange Commission, 348 F.2d 133 (2d Cir. 1965). Our role is to review the order of the Commission. We will consider errors in the Exchange proceedings "only if and to the extent that they infected the Commission's action by leading to error on its part." R. H. Johnson & Co. v. Securities and Exchange Commission, 198 F.2d 690, 695 (2d Cir.), cert. denied, 344 U.S. 855, 73 S.Ct. 94, 97 L.Ed. 664 (1952).15 We are persuaded that no such errors occurred here. | Disciplinary actions taken by the business conduct committee of an exchange are subject to full review by the Securities and Exchange Commission. | Are the Exchange Committee disciplinary actions subject to full review by the Securities and Exchange Commission? | 013630.docx | LEGALEASE-00164264-LEGALEASE-00164265 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 12917 | State v. Guillaume, 293 Mont. 224 | 135H+30 | In arguing his position, Guillaume does not dispute that the weapon enhancement statute is constitutional on its face. Guillaume acknowledges that this Court has repeatedly held that Montana's weapon enhancement statute is a sentencing factor, and does not create a separate crime or element of a crime in violation of the protection against double jeopardy. State v. Krantz (1990), 241 Mont. 501, 512, 788 P.2d 298, 305 (citing State v. Forsyth (1988), 233 Mont. 389, 423, 761 P.2d 363, 384; State v. Spurlock(1987), 225 Mont. 238, 241, 731 P.2d 1315, 1317; State v. Davison (1980), 188 Mont. 432, 445, 614 P.2d 489, 497). However, Guillaume argues that the weapon enhancement statute is unconstitutional as applied to him. | Weapon enhancement statute is a sentencing factor, and does not create a separate crime or element of a crime in violation of the protection against double jeopardy. MCA 46-18-221. | Is weapon enhancement statute a sentencing factor? | 014997.docx | LEGALEASE-00164619-LEGALEASE-00164620 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12918 | Raulerson v. State, 609 So. 2d 1301 | 350H+1240 | On appeal, the district court found that a sentence for committing a first-degree felony punishable by life may be enhanced under section 775.084, Florida Statutes (1989), and also expressly found that the violent habitual felony offender provisions of section 775.084 do not violate the constitutional prohibitions against double jeopardy and ex post facto laws. | Sentence for committing first-degree felony punishable by life may be enhanced under the habitual violent felony offender statute. West's F.S.A. S 775.084. | Does habitual violent felony offender statute violate double jeopardy? | 015048.docx | LEGALEASE-00164831-LEGALEASE-00164832 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 12919 | Com. v. Cumming, 466 Mass. 467 | 135H+5.1 | "[T]he constitutional guarantee against double jeopardy protects a defendant not only against a second prosecution for the same offense after acquittal or conviction but also against "multiple punishments for the same offense." "Commonwealth v. Goodwin, supra at 19, 933 N.E.2d 925, quoting Aldoupolis v. Commonwealth, 386 Mass. 260, 271"272, 435 N.E.2d 330, cert. denied, 459 U.S. 864, 103 S.Ct. 142, 74 L.Ed.2d 120 (1982), S.C., 390 Mass. 438, 457 N.E.2d 268 (1983). In this manner, "[t]he double jeopardy clause ""represents a constitutional policy of finality for the defendant's benefit" in criminal proceedings."" Commonwealth v. Goodwin, supra, quoting Aldoupolis v. Commonwealth, supra at 274, 435 N.E.2d 330. | The constitutional guarantee against double jeopardy protects a defendant not only against a second prosecution for the same offense after acquittal or conviction but also against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | Does double jeopardy represent a constitutional policy of finality for the defendant's benefit in criminal proceedings? | Double Jeopardy - Memo 862 - C - NS.docx | LEGALEASE-00054297-LEGALEASE-00054298 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 12920 | State v. Hoyt, 922 S.W.2d 443 | 135H+59 | Appellant's argument asserts a claim of double jeopardy rather than res judicata. However, a defendant is not placed in jeopardy in a jury trial until the jury has been properly impaneled and sworn. In re L.L.W., 626 S.W.2d 261 (Mo.App.1981). Since no jury had been sworn, jeopardy had not attached, and the prosecution was free to refile the charge. | Defendant is not placed in jeopardy in jury trial until jury has been properly impaneled and sworn; where no jury had been sworn before court dismissed charge, jeopardy had not attached, and prosecution was free to refile the charge. U.S.C.A. Const.Amend. 5. | Will a jeopardy be attached in a jury trial until the jury is empaneled and sworn? | 016663.docx | LEGALEASE-00165131-LEGALEASE-00165132 | SA, Sub | 0.26 | 0 | 0 | 1 | 1 | |
| 12921 | Superior Dispatch v. Ins. Corp. of New York, 181 Cal. App. 4th 175 | 156+53 | "One aspect of equitable estoppel is codified in Evidence Code section 623, which provides that "[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." [Citation.] But " "[a]n estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. [Citation.] To create an equitable estoppel, "it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss." ... "... Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense." " ' [Citations omitted.]" (Lantzy, supra, 31 Cal.4th p. 384, 2 Cal.Rptr.3d 655, 73 P.3d 517.) | Estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. | Can an estoppel arise although there was no designed fraud on the party of the person sought to be estopped? | Estoppel - Memo 304 - C - CSS_67186.docx | ROSS-003282184-ROSS-003282185 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12922 | Cosby v. Moore, 259 Ala. 41 | 156+56 | "An estoppel cannot exist where the knowledge of both parties is equal, and nothing is done by the one to mislead the other." (That refers to an equitable estoppel.) Webb v. City of Demopolis, supra [95 Ala. 116, 13 So. 297]. "Its usual presentation is, when one person by his words, acts, conduct, or silence, induces another, on the faith thereof, to pledge his credit, incur a liability, or part with something valuable" * * *. "It rests at last, for its vindication, on the manifest idea, that to allow such representation to be gainsaid, would be a fraud on him who had thus acted, believing it to be true." Leinkauff v. Munter, 76 Ala. 194, 198. It has been expressed in many different forms, but the foregoing fairly embraces all its elements. 31 C.J.S., Estoppel, " 66, p. 254, et seq.; Hinds v. Federal Land Bank, 237 Ala. 218, 186 So. 153. | An estoppel cannot exist where knowledge of both parties is equal, and nothing is done by the one to mislead the other. | "Can an estoppel exist where knowledge of both parties is equal, and nothing is done by the one to mislead the other?" | 018283.docx | LEGALEASE-00164447-LEGALEASE-00164448 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 12923 | Kimack v. Adams, 930 S.W.2d 505 | 233+531 | Kimack claims the agreement he had with Owners was a license in which the trial court erred in allowing Owners to retain the prepaid rent. A license is only a privilege to enter certain premises for a specific purpose. Hermann v. Lynnbrook Land Company, 806 S.W.2d 128, 130 (Mo.App. E.D.1991). A license does not vest any title, interest or estate in the licensee and may be revoked at the will of the licensor. Annin v. Lake Montowese Development Company, Inc., 759 S.W.2d 240, 241 (Mo.App. E.D.1988). In contrast, a lease is "any agreement which gives rise to relationship of landlord and tenant" and said "contract is for exclusive possession of tenements for a determinate period." Black's Law Dictionary, Fifth Edition (800). A landlord-tenant relationship is created when: (1) there is reversion in the landlord; (2) creation of an estate in the tenant either at will or for a term less than that which the landlord holds; (3) transfer of exclusive possession and control of the tenant; and (4) a contract. Chubb Group of Insurance Companies v. C.F. Murphy & Associates, Inc., 656 S.W.2d 766, 777 (Mo.App. W.D.1983). | "Lease," as distinguished from license, is not mere privilege to enter premises for specific purpose, but agreement which gives rise to relationship of landlord and tenant, and which entitles tenant to exclusive possession of premises for determinate period. | Is a lease an agreement which gives rise to the relationship between landlord and tenant? | Landlord and Tenant - Memo 84 - RK_67506.docx | ROSS-003296454-ROSS-003296455 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12924 | In re Safeguard Self-Storage Tr., 2 F.3d 967 | 238+44(2) | California common law also suggests that the Rental Agreement is a lease. The test forwhether an agreement for the use of real estate is a license or a lease is whether the contract gives exclusive possession of the premises against all the world, including the owner, in which case it is a lease, or whether it merely confers a privilege to occupy under the owner, in which case it is a license, and this is a question of law arising out of the construction of the instrument.Von Goerlitz v. Turner, 65 Cal.App.2d 425, 150 P.2d 278, 280 (1944) (citation omitted); see also Chan v. Antepenko, 203 Cal.App.3d Supp. 21, 250 Cal.Rptr. 851, 852 (1988) (citing Von Goerlitz ). The use of lease language "is not conclusive of intention but strongly indicates that the parties contemplated such a [lease] relationship." Beckett v. City of Paris Dry Goods Co., 14 Cal.2d 633, 96 P.2d 122, 124 (1939) (citation omitted); see also O'Shea v. Claude C. Wood Co., 97 Cal.App.3d 903, 159 Cal.Rptr. 125, 128 (1979) ("No particular legal terminology is required in the making of a lease, but it is essential that the instrument show an intention to establish the relationship of landlord and tenant."; citing Beckett). Other characteristics of a lease are "a definite description of the property leased [,] an agreement for rental to be paid at particular times during a specified term," Beckett, 96 P.2d at 124; O'Shea, 159 Cal.Rptr. at 128, and a requirement of notice upon termination, Chan, 250 Cal.Rptr. at 852"53. | Under California common law, use of lease language is not conclusive of intention but strongly indicates that parties contemplated a lease, rather than a license, relationship. | Is the use of lease language conclusive of the intention of the parties contemplating such a relationship? | Landlord and Tenant - Memo 87 - RK_67509.docx | ROSS-003282335-ROSS-003282336 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 12925 | Beckett v. City of Paris Dry Goods Co., 14 Cal. 2d 633 | 233+507 | Moreover, throughout the whole instrument, rights are given and language is used which definitely indicates that a lease was intended. The phrases "good, tenantable condition", "cannot assign this lease", "space demised", and "monthly rental" are the terminology of a lease. The use of these words is not conclusive of intention (Morris v. Iden, supra) but strongly indicates that the parties contemplated such a relationship. Nor does the retention by the store of a certain amount of control over the management of the optical department, or the requirement that Dr. Beckett adhere to the rules and regulations governing its operations, negative this intention. | The use of the terminology of a lease, such as "tenantable," "lease," "demised," and "rental," is not conclusive of intention but strongly indicates that parties contemplated the landlord-tenant relation. | Is the use of lease language conclusive of the intention of the parties contemplating such a relationship? | 021024.docx | LEGALEASE-00164963-LEGALEASE-00164964 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 12926 | In re Strickland, 2002 WL 58482 | 307A+699 | A reinstatement order rendered after expiration of the trial court's plenary power is void. S. Main Bank v. Wittig, 909 S.W.2d 243, 244 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding). Mandamus lies over a void reinstatement order. McConnell v. May, 800 S.W.2d 194, 194 (Tex.1990) (orig.proceeding) (conditionally issuing writ for untimely reinstatement order, after dismissal for want of prosecution, based on unverified reinstatement motion); Wittig, 909 S.W.2d at 244. | A reinstatement order rendered after expiration of the trial court's plenary power is void. | Is a reinstatement order rendered after expiration of the trial court's plenary power void? | Pretrial Procedure - Memo 12159 - C - RF_67583.docx | ROSS-003293017-ROSS-003293018 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12927 | City of Harrisburg v. Sch. Dist. of City of Harrisburg, 675 A.2d 758 | 371+2311 | It is clear from the express language of section 204(a)(7) that the GCAL should not be construed to grant an exemption to any activity conducted upon public property which would be taxable if conducted on private property. South Park Township v. Allegheny County, 163 Pa.Cmwlth. 273, 641 A.2d 20 (1994), petition for allowance of appeal denied, 541 Pa. 647, 663 A.2d 697 (1995). In other words, a normally taxable business activity conducted on exempt public property is subject to taxation. | Normally taxable activity conducted on exempt public real property is subject to taxation. 72 P.S. S 5020-204(a)(7). | Is a taxable activity conducted on exempt public real property subject to taxation? | Taxation - Memo 1243 - C - SS_67228.docx | ROSS-003296662-ROSS-003296663 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 12928 | L&B Real Estate v. Hous. Auth. of Cty. of Los Angeles, 149 Cal. App. 4th 950 | 371+2311 | As a result, although provisions exempting private property from taxation are strictly construed, because taxation of public property is the exception and not the rule, and may occur only if there is express authority to do so, the exemption for public property is liberally construed. (Ibid.) "Public ownership alone confers the exemption; the exemption is not conditioned on use of the property exclusively for governmental purposes. [Citations.]" (Ibid.) | Although provisions exempting private property from taxation are strictly construed, because taxation of public property is the exception and not the rule, and may occur only if there is express authority to do so, the exemption for public property is liberally construed. West's Ann.Cal. Const. Art. 13, S 3. | When can a public property be taxed? | 046452.docx | LEGALEASE-00164545-LEGALEASE-00164546 | SA, Sub | 0.32 | 0 | 0 | 1 | 1 | |
| 12929 | City of Egg Harbor City v. Cty. of Atl. Cty., 10 N.J. Tax 7 | 371+2311 | If a private user of public property is carrying out a public purpose, the real property will not be taxed for local property tax purposes. In Walter Reade, Inc. v. Dennis Tp., supra, the New Jersey Highway Authority had erected a series of service areas along the Garden State Parkway containing restaurants and other facilities for the needs and convenience of the motoring public. Some of the restaurants were operated by Walter Reade, Inc. under an agreement with the authority. | If private user of public property is carrying out a public purpose, real property will not be taxed for local property tax purposes. | "When the private user of a public property is carrying out a public purpose, will the real property be taxed for local property tax purposes?" | Taxation - Memo 1264 - C - SS_67410.docx | ROSS-003296674-ROSS-003296675 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 12930 | Knight v. State, 25 Ark. App. 353 | 3.77E+12 | We agree with the State that the gravamen of the offense of terroristic threatening is communication, not utterance. The statute does not require that the threat be communicated by the accused directly to the person threatened. Richards v. State, 266 Ark. 733, 585 S.W.2d 375 (1979). There is no requirement that the terrorizing continue over a prolonged period of time. Warren v. State, 272 Ark. 231, 613 S.W.2d 97 (1981). Nor does the statute require that it be shown that the accused has the immediate ability to carry out the threats. See Commonwealth v. Ashford, 268 Pa.Super. 225, 407 A.2d 1328 (1979). We do agree, however, with the statement of the court in State v. Morgan, 128 Ariz. 362, 625 P.2d 951 (1981), that to be found guilty of threatening the defendant must intend to fill the victim with intense fright. Under our statute it is an element of the offense that the defendant act with the purpose of terrorizing another person, i.e., it must be his "conscious object" to cause fright. | To be found guilty of terroristic threatening, defendant must have intended to fill victim with intense fright. A.C.A. S 5-13-301. | What must the defendant intend to fill the victim with in order to be found guilty of threatening the victim? | 047037.docx | LEGALEASE-00164499-LEGALEASE-00164500 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 12931 | People v. Kirkpatrick, 365 Ill. App. 3d 927 | 3.77E+18 | A person commits the offense of threatening a public official when, inter alia, (1) he knowingly and willfully communicates, directly or indirectly, a threat to a public official; (2) the threat would place the public official in reasonable apprehension of immediate or future bodily harm; and (3) the threat was related to the official's public status. 720 ILCS 5/12"9(a)(1)(i), (a)(2) (West 2000). The trier of fact may look to the context in which a threat arose when determining whether the threat was credible. People v. Peterson, 306 Ill.App.3d 1091, 1100, 240 Ill.Dec. 164, 715 N.E.2d 1221 (1999). | The trier of fact may look to the context in which a threat arose when determining whether the threat was credible, for purposes of determining whether a defendant committed the offense of threatening a public official. | Where may the trier of fact look when determining whether the threat was credible? | 047055.docx | LEGALEASE-00164579-LEGALEASE-00164580 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12932 | Liberty Mut. Ins. Co. v. Gulf Oil Corp., 559 F. Supp. 777 | 413+186 | It is the status of the employer that is controlling and determines liability for the allocation of the ultimate loss due the plaintiff. That status determines whether a plaintiff may proceed on a negligence theory or be precluded from so doing. Thus, where the plaintiff sues an employer in tort under a negligence theory which is defended and won on the basis that the employer is a "statutory" employer, then the liability of the employer is in workers' compensation, but that employer is owed indemnification under La.R.S. 23:1061. Where the basis of the alleged liability is workers' compensation and the plaintiff sues those employers with whom he had an employee-employer relationship, then the liability becomes a solidary one between those employers. | Where basis of alleged liability is workers' compensation and plaintiff sues those employers with whom he had an employee-employer relationship, then liability becomes a solidary one between those employers. LSA-R.S. 23:1061. | "In workers compensation, when does liability become a solidary?" | Workers' Compensation Memo 745 - C - ANC_67244.docx | ROSS-003307439-ROSS-003307440 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 12933 | Reyes v. S. Boulevard Partners, 78 A.D.2d 746 | 413+186 | Despite the agreement between RMA and SBP, the dual capacity of Mr. Schorr in relation to both the appellant and respondent, the overlapping of the claimant's duties in both positions and the names of both employers on his pay checks, as well as the circumstances surrounding his injury, supplied adequate basis for the award made. Neither usage with respect to coverage nor a specific agreement is controlling upon the issue of employment (Matter of Donoghue v. De Carolis, 15 A.D.2d 602, 222 N.Y.S.2d 390).The decision should be affirmed. | Neither usage with respect to coverage nor specific agreement is controlling upon issue of employment in workers' compensation case. | Does usage with respect to coverage or a specific agreement control the issue of employment? | 048787.docx | LEGALEASE-00164335-LEGALEASE-00164336 | Condensed, Order, SA | 0.76 | 1 | 1 | 0 | 1 | 1 |
| 12934 | Lamb v. State Work Relief Comp. Fund, 127 Pa. Super. 44 | 413+186 | [We readily recognize that ordinarily the test of determining by whom one is employed does not depend solely upon the payment of wages, but it may aid in determining that fact. Sgattone v. Mulholland & Gotwals, Inc. et al., 290 Pa. 341, 346, 138 A. 855, 58 A.L.R. 1463. Who the responsible employer in case of injury depends largely on the control or right of control of the employee, not only with regard to the work to be done, but also as to the method and manner of performing it. Venezia v. Philadelphia Electric Co., 317 Pa. 557, 177 A. 25. It must not be overlooked, however, that we are here considering the rights and status of a work relief employee and the laws especially applicable thereto. | Ordinarily, test of determining by whom one is employed does not depend solely on payment of wages, but it may aid in determining that fact. | Does the payment of wages aid in determining who one is employed by? | 048810.docx | LEGALEASE-00164709-LEGALEASE-00164710 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 12935 | State v. Strine, 176 Wash. 2d 742 | 135H+59 | The double jeopardy clause applies where (1) jeopardy has previously attached, (2) jeopardy has terminated, and (3) the defendant is in jeopardy a second time for the same offense in fact and law. Ervin, 158 Wash.2d at 752, 147 P.3d 567. Where these elements have been met, the double jeopardy clause bars the State from retrying a defendant. Id. "Jeopardy attaches after the jury is selected and sworn." State v. Juarez, 115 Wash.App. 881, 887, 64 P.3d 83 (2003) (citing Downum v. United States, 372 U.S. 734, 737, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963)). "It is not necessary that argument or testimony be presented." Id. Here, it is undisputed that jeopardy attached and the State intends to retry Strine. So only the second element of double jeopardy"termination"is at issue. | Jeopardy attaches after the jury is selected and sworn; it is not necessary that argument or testimony be presented. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, S 9. | Is it necessary that argument or testimony be presented when jeopardy attaches after the jury is selected and sworn? | Double Jeopardy - Memo 1014 - C - DHA_67631.docx | ROSS-003283958-ROSS-003283959 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 12936 | State v. Juarez, 115 Wash. App. 881 | 135H+59 | Jeopardy attaches after the jury is selected and sworn. It is not necessary that argument or testimony be presented. Downum, 372 U.S. at 737, 83 S.Ct. 1033. To hold otherwise would permit " "unlimited, uncertain, and arbitrary judicial discretion." " Downum, 372 U.S. at 738, 83 S.Ct. 1033 (quoting United States v. Watson, (D.C.N.Y.) 3 Ben. 1, F. Cas. No. 16651). In Downum, a jury was selected and sworn and instructed to return later. When it returned, the prosecution asked that the jury be discharged because a key witness was not present. The defense moved to strike the counts involving the absent witness for want of prosecution and to proceed with trial on the remaining counts. This motion was denied. And the judge discharged the jury over defense objections. Two days later, the case was called again. And a second jury was impaneled. The defendant pleaded double jeopardy. Downum, 372 U.S. at 735, 83 S.Ct. 1033. The Court noted that, by allowing a jury to be selected and sworn even though one of its key witnesses had not been located, the prosecutor " "took a chance." " Downum, 372 U.S. at 737, 83 S.Ct. 1033 (quoting Cornero v. United States, 48 F.2d 69, 71 (9th Cir.1931)). | Jeopardy attaches after jury is selected and sworn; it is not necessary that argument or testimony be presented. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, S 9. | Is it necessary that argument or testimony be presented when jeopardy attaches after the jury is selected and sworn? | 014634.docx | LEGALEASE-00165311-LEGALEASE-00165312 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 12937 | Richardson v. United States, 468 U.S. 317 | 135H+98 | On the merits, however, regardless of the sufficiency of the evidence at his first trial, petitioner has no valid double jeopardy claim. The protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, that terminates the original jeopardy. Neither the failure of the jury to reach a verdict nor a trial court's declaration of a mistrial following a hung jury is an event that terminates the original jeopardy. Like the defendant, the Government is entitled to resolution of the case by the jury. Pp. 3084"3086. | Neither failure of jury to reach verdict nor trial court's declaration of a mistrial following a hung jury was an event that terminated original jeopardy which attached when jury was sworn, so that defendant had no valid double jeopardy claim that second trial was barred because of failure to introduce legally sufficient evidence to go to jury, regardless of sufficiency of evidence at first trial. U.S.C.A. Const.Amend. 5. | When will the protection of double jeopardy clause apply? | Double Jeopardy - Memo 1023 - C - KG_67738.docx | ROSS-003308517-ROSS-003308518 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 12938 | State v. Potts, 181 S.W.3d 228 | 135H+59 | Double jeopardy attaches to a jury trial after a jury is empaneled and sworn. Crist v. Bretz, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); State v. Smith, 988 S.W.2d 71, 77"78 (Mo.App. W.D.1999); State v. Tiger, 972 S.W.2d 385, 388 (Mo.App. W.D.1998). The primary reason jeopardy is said to attach after the jury is selected is to "protect the interest of an accused in retaining a chosen jury." Crist, 437 U.S. at 35, 98 S.Ct. 2156. In this case, Appellant was never in jeopardy on the original charge because the mistrial was granted during jury selection. As a result the prosecutor is not barred by double jeopardy from re-trying Appellant under the original charge of possession of a controlled substance. | The primary reason jeopardy is said to attach after the jury is selected is to protect the interest of an accused in retaining a chosen jury. U.S.C.A. Const.Amend. 5. | What is the primary reason for jeopardy to attach after the jury is selected? | Double Jeopardy - Memo 1058 - C - VA_67880.docx | ROSS-003285653-ROSS-003285654 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12939 | Reese v. State, 190 Misc. 316 | 135H+59 | The State is correct in replying, however, that jeopardy had not attached in the instant case when the mistrial was granted because the jurors had not been sworn. See Brown v. State, 907 S.W.2d 835, 839 (Tex.Cr.App.1995); State v. Torres, 805 S.W.2d 418, 420 (Tex.Cr.App.1991); Hinojosa v. State, 875 S.W.2d 339, 342 (Tex.App."Corpus Christi 1994, no pet.). Jeopardy principles pose no bar to declaration of a mistrial when the jury has not been impanelled or sworn. Dinkins, 894 S.W.2d at 343; cf, Jones v. State, 843 S.W.2d 487, 495 (Tex.Cr.App.1992), cert. denied, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993) (Jeopardy did not bar mistrial because the jury had not yet been impanelled.) We hold that the trial court's granting of a mistrial in the instant case did not raise a question of double jeopardy. | Jeopardy principles pose no bar to declaration of mistrial when jury has not been impanelled or sworn. U.S.C.A. Const.Amend. 5. | Does jeopardy principles pose bar to declaration of mistrial when jury has not been impaneled or sworn? | 014816.docx | LEGALEASE-00166056-LEGALEASE-00166057 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 12940 | State v. Rudy B., 147 N.M. 45 | 135H+1 | The United States Constitution prohibits the states from twice exposing a citizen to punishment for the same offense. See id. Double jeopardy protects against both multiple prosecutions for the same offense and multiple punishments for the same course of conduct. See id. Child contends that his convictions amount to multiple punishments for a single act"shooting at the victims' car. In order to determine whether the convictions violate double jeopardy, we evaluate two factors: (1) whether the conduct was unitary and (2) whether the Legislature intended to create separately punishable offenses. Id. | The United States Constitution prohibits the states from twice exposing a citizen to punishment for the same offense. U.S.C.A. Const.Amend. 5. | Does the United States Constitution prohibit the states from twice exposing a citizen to punishment for the same offense? | Double Jeopardy - Memo 666 - C - SHB_68670.docx | ROSS-003278438-ROSS-003278439 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 12941 | People v. Seel, 34 Cal. 4th 535 | 135H+95.1 | As noted above, defendant argues that Bright, supra, 12 Cal.4th 652, 49 Cal.Rptr.2d 732, 909 P.2d 1354, is distinguishable. (See ante, 21 Cal.Rptr.3d at p. 184, 100 P.3d at p. 874.) Neither a court nor a jury made a determination that the prosecution failed to prove its case. Significantly, "[a] mistrial does not constitute a termination of jeopardy, and accordingly double jeopardy does not arise from the legal necessity of a mistrial. [Citation.]" (Id. at p. 662, 49 Cal.Rptr.2d 732, 909 P.2d 1354.) This difference in procedural postures distinguishes Bright from the case here. (United States v. DiFrancesco (1980) 449 U.S. 117, 130"131, 101 S.Ct. 426, 66 L.Ed.2d 328 [federal double jeopardy clause bars retrial for evidentiary insufficiency but not for mistrial due to "manifest necessity"].) | A mistrial does not constitute a termination of jeopardy, and accordingly double jeopardy does not arise from the legal necessity of a mistrial. U.S.C.A. Const.Amend. 5; West's Ann.Cal. Const. Art. 1, S 15. | "Does a mistrial constitute a termination of jeopardy, and accordingly double jeopardy arises from the legal necessity of a mistrial?" | Double Jeopardy - Memo 676 - C - KI_67889.docx | ROSS-003282775-ROSS-003282776 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 12942 | Scott v. State, 164 A.3d 177 | 135H+1 | The Double Jeopardy Clause states: "No person shall be ... subject for the same offence to be twice put in jeopardy of life or limb [.]" U.S. Const. amend. V. Although the Constitution of Maryland does not contain a counterpart to the Double Jeopardy Clause, the common law of Maryland provides for a prohibition on double jeopardy. See Scriber, 437 Md. at 408, 86 A.3d at 1265. Under the prohibition on double jeopardy, a court cannot subject a defendant to multiple trials and sentences for the same offense. See id. at 408, 86 A.3d at 1265. | Although the Constitution of Maryland does not contain a counterpart to the Double Jeopardy Clause, the common law of Maryland provides for a prohibition on double jeopardy. U.S. Const. Amend. 5. | Does common law provide for prohibition on double jeopardy? | 016070.docx | LEGALEASE-00165817-LEGALEASE-00165818 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 12943 | Stamps v. State, 151 So. 3d 248 | 135H+1 | A person's life or liberty may not be placed in jeopardy twice for the same offense. U.S. Const. amend. V; Miss. Const. art. 3, " 22. "The double-jeopardy clause affords three protections: (1) protection from a second prosecution for the same offense after acquittal, (2) protection from a second prosecution for the same offense after conviction, and (3) protection from multiple punishments for the same offense." Foreman v. State, 51 So.3d 957, 960 (Miss.2011). The circumstances of Stamps's case do not fall under any of those three categories. He was never prosecuted twice for the same offense. "[P]rosecuting a defendant for separate and distinct statutory offenses does not violate the constitutional prohibition against double jeopardy"even if those offenses arise out of the same set of facts." Adams v. State, 117 So.3d 674, 678 (Miss.Ct.App.2013). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). | The double-jeopardy clause affords three protections: (1) protection from a second prosecution for the same offense after acquittal, (2) protection from a second prosecution for the same offense after conviction, and (3) protection from multiple punishments for the same offense. U.S.C.A. Const.Amend. 5; West's A.M.C. Const. Art. 3, S 22. | Does the Double Jeopardy Clause protect against a second prosecution for the same offense after acquittal? | Double Jeopardy - Memo 710 - C - RF_68673.docx | ROSS-003298653-ROSS-003298654 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 12944 | State v. Zeno, 155 So. 3d 4 | 135H+5.1 | The federal and state constitutions provide that no person may be twice put in jeopardy of life or liberty for the same offense. U.S. Const. amend. V; La. Const. art. I, " 15; see also La.Code Crim. P. art. 591. The double jeopardy clause prevents the State from punishing a defendant multiple times for the same offense and prevents a second prosecution for an offense following an acquittal or conviction. | The double jeopardy clause prevents the State from punishing a defendant multiple times for the same offense and prevents a second prosecution for an offense following an acquittal or conviction. U.S.C.A. Const.Amend. 5. | Do Federal and state constitutions both provide that no person shall twice be put in jeopardy of life or liberty for the same offense? | Double Jeopardy - Memo 714 - C - RF_68674.docx | ROSS-003294585-ROSS-003294586 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 12945 | State v. Schubert, 212 N.J. 295 | 135H+1 | An individual's right against being placed in jeopardy twice for the same offense is both a common law and a constitutional right. State v. Laird, 25 N.J. 298, 305, 135 A.2d 859 (1957). A core principal of " "the jurisprudence of England and America ... is that no man can be twice lawfully punished for the same offense." " Ibid. (quoting Ex parte Lange, 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872, 876 (1874)). | An individual's right against being placed in jeopardy twice for the same offense is both a common law and a constitutional right. U.S.C.A. Const.Amend. 5; N.J.S.A. Const. Art. 1, par. 11. | Is an individual's right against being placed in jeopardy twice for the same offense both a common law and a constitutional right? | 016109.docx | LEGALEASE-00165857-LEGALEASE-00165858 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 12946 | Napoli v. Supreme Court, 40 A.D.2d 159 | 135H+95.1 | It was early recognized that it was impossible to list all the circumstances which would warrant such action but, if the decision rests on a sound discretion exercised with care and caution, the responsibility is that of the trial judge (United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165). Even over the objection of the defendant, the trial judge, for any reason he deems compelling, may declare a mistrial and the defense of double jeopardy is unavailing (Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968). Even where the trial judge is over-assiduous and his action premature, double jeopardy will not result (Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901). And this has been held even where the record does not clearly reveal the motivation of the trial judge in declaring the mistrial (Gori v. United States, Supra, at 367, 81 S.Ct. 1523). | Even where trial judge is overassiduous in granting a mistrial and his action premature, double jeopardy will not result, and such is the case even where the record does not clearly reveal the motivation of the trial judge in declaring the mistrial. | "Even where a trial judge is over assiduous in granting a mistrial and his action premature, will double jeopardy not result?" | Double Jeopardy - Memo 718 - C - BP_68039.docx | ROSS-003296426-ROSS-003296428 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12947 | United States v. Lewis, 368 F.3d 1102 | 135H+96 | We note an additional problem for Lewis's double jeopardy claim. Double jeopardy ordinarily does not apply if a defendant obtains a mistrial. Courts presume that the defendant, in seeking a mistrial, gives up his or her right to a verdict by that jury. See United States v. Tateo, 377 U.S. 463, 467, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). A narrow exception to this "motion for mistrial" rule exists where the government engages in prosecutorial misconduct "intended to provoke the defendant into moving for a mistrial." Oregon v. Kennedy, 456 U.S. 667, 679, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). This exception prevents prosecutors from sinking a case they knew was doomed to end in an acquittal in the hope of having better luck before a second jury. | Double jeopardy ordinarily does not apply if defendant obtains mistrial; courts presume that defendant, in seeking mistrial, gives up his or her right to verdict by jury. U.S.C.A. Const.Amend. 5. | "Do courts presume that a defendant, in seeking mistrial, gives up his or her right to verdict by jury?" | 016205.docx | LEGALEASE-00165519-LEGALEASE-00165520 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 12948 | State v. Coppage, 34 Kan. App. 2d 776 | 135H+100.1 | Kansas case law is clear that the State may not appeal from a judgment of acquittal. State v. G.W.A., 258 Kan. 703, 705, 906 P.2d 657 (1995). Here, the trial court did not refer to the dismissal as a judgment of acquittal. However, a trial court's characterization does not control the classification of the action. Beerbower, 262 Kan. at 252"53, 936 P.2d 248. A judgment of acquittal is " "a resolution, correct or not, of some or all of the factual elements of the offense charged." " State v. Whorton, 225 Kan. 251, 254, 589 P.2d 610 (1979). In Whorton, the court found that jeopardy had attached against the defendant preventing retrial of the charges even though, as in the present case, the charges were dismissed before the State had completed presenting its evidence. | A judgment of acquittal, for purposes of double jeopardy, is a resolution, correct or not, of some or all of the factual elements of the offense charged. U.S.C.A. Const.Amend. 5; K.S.A. Const.Bill of Rights, S 10; K.S.A. 21-3108(1)(a). | "Is a judgment of acquittal, for purposes of double jeopardy, a resolution, correct or not, of some or all of the factual elements of the offense charged?" | 016248.docx | LEGALEASE-00165571-LEGALEASE-00165572 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 12949 | United States v. Cabrera, 804 F. Supp. 2d 1261 | 135H+100.1 | "Double jeopardy concerns are not implicated unless there has been some jeopardy-terminating event, such as an acquittal." Bobo, 419 F.3d at 1268. It is a fundamental principle, one not challenged by the government, that a person who has been found not guilty by a jury may not thereafter be tried for the same offense without violating the Double Jeopardy Clause. This is because the law "afford[s] absolute finality to a jury's verdict of acquittal"no matter how erroneous its decision"..." Burks, 437 U.S. at 16, 98 S.Ct. 2141. "When a defendant has been acquitted, the Clause guarantees that the State shall not be permitted to make repeated attempts to convict him." Schiro v. Farley, 510 U.S. 222, 230, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (internal quotation and citation omitted). | A person who has been found not guilty by a jury may not thereafter be tried for the same offense without violating the Double Jeopardy Clause; this is because the law affords absolute finality to a jury's verdict of acquittal, no matter how erroneous its decision. U.S.C.A. Const.Amend. 5. | "Before the Double Jeopardy Clause is implicated, should some event, such as an acquittal, terminate the original jeopardy?" | 016263.docx | LEGALEASE-00165587-LEGALEASE-00165588 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 12950 | People v. Tolliver, 347 Ill. App. 3d 203 | 135H+99 | When a trial court declares a mistrial without the defendant's consent, the State may retry the defendant only if the facts demonstrate that a manifest necessity required declaring the mistrial. Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717, 728 (1978). A deadlocked jury is a manifest necessity justifying the declaration of a mistrial and the retrial of the defendant. Arizona v. Washington, 434 U.S. at 509, 98 S.Ct. at 832, 54 L.Ed.2d at 730. | A deadlocked jury is a manifest necessity justifying the declaration of a mistrial and the retrial of the defendant. | Is a deadlocked jury a manifest necessity justifying the declaration of a mistrial and a retrial of a defendant? | Double Jeopardy - Memo 836 - C - TM_67951.docx | ROSS-003308931-ROSS-003308932 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 12951 | People v. Eroshevich, 214 Cal. App. 4th 1335 | 135H+1 | The double jeopardy rules are well known. The protection against double jeopardy generally precludes retrial for the same offense after a conviction or an acquittal. (People v. Massie (1998) 19 Cal.4th 550, 563, 79 Cal.Rptr.2d 816, 967 P.2d 29.) An exception to this rule applies if the judgment of conviction is reversed as a result of defendant's appeal, motion for new trial, or other challenge by a defendant to his or her conviction. (People v. Hernandez (2003) 30 Cal.4th 1, 6"7, 131 Cal.Rptr.2d 514, 64 P.3d 800.) Like other constitutional guarantees, double jeopardy protections are not absolute, and may be waived by a defendant. | The protection against double jeopardy generally precludes retrial for the same offense after a conviction or an acquittal. U.S.C.A. Const.Amend. 5; West's Ann.Cal. Const. Art. 1, S 15. | Does the protection against double jeopardy generally preclude retrial for the same offense after a conviction or an acquittal? | 016416.docx | LEGALEASE-00165213-LEGALEASE-00165214 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 12952 | State v. Myers, 171 W. Va. 277 | 135H+1 | "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." Syllabus Point 1, Conner v. Griffith, 160 W.Va. 680, 238 S.E.2d 529 (1977). | Double Jeopardy Clause in West Virginia Constitution provides immunity from further prosecution where a court having jurisdiction has acquitted the accused, and it protects against a second prosecution for the same offense after conviction, and it also prohibits multiple punishments for the same offense. Const. Art. 3, S 5. | What immunity is provided by the double jeopardy clause? | Double Jeopardy - Memo 901 - C - RF_67690.docx | ROSS-003294051-ROSS-003294052 | Condensed, SA | 0.21 | 0 | 1 | 0 | 1 | |
| 12953 | State v. Boggs, 741 N.W.2d 492 | 135H+1 | The Fifth Amendment of the United States Constitution declares no person may be "subject for the same offense to be twice put in jeopardy of life or limb." Similarly, the Iowa Constitution provides a person may not be tried for the same offense "after acquittal." Art. I, 12. Generally, the double jeopardy principle protects persons "from prosecution for the same offense after conviction or acquittal, and against multiple punishments for the same offense." State v. Burgess, 639 N.W.2d 564, 568 (Iowa 2001). It "serves a constitutional policy of finality for the defendant benefit." Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977) (quoting United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971)). | The double jeopardy principle protects persons from prosecution for the same offense after conviction or acquittal, and against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 12. | Does the double jeopardy principle protect persons from prosecution for the same offense? | 016553.docx | LEGALEASE-00165371-LEGALEASE-00165372 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 12954 | Com. v. Constant, 925 A.2d 810 | 135H+1 | The Double Jeopardy Clause of the Fifth Amendment commands that "no person shall be subject for the same offence to be twice put in jeopardy of life or limb." Commonwealth v. McGee, 560 Pa. 324, 744 A.2d 754, 756 (2000) (quoting U.S. Const. Amend. V). Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense. United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The Pennsylvania Supreme Court has recognized that "the corresponding proscription contained in the Pennsylvania Constitution, Pa. Const. art. 1, 10, "involves the same meaning, purpose, and end"; thus, it has generally been construed as coextensive with its federal counterpart." Id. at 756 n. 2 (quoting Commonwealth v. McCane, 517 Pa. 489, 539 A.2d 340, 346 n. 5 (1988)). | Once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense. U.S.C.A. Const.Amend. 5. | Can a defendant be tried nor punished a second time for the same offense? | Double Jeopardy - Memo 941 - C - NE_67815.docx | ROSS-003283115-ROSS-003283116 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12955 | State v. Gouleed, 720 N.W.2d 794 | 135H+1 | Both the federal and state constitutions prohibit trying a criminal defendant twice for the same crime. U.S. Const. amend. V; Minn. Const. art. 1, " 7. A criminal defendant who objects to the declaration of a mistrial cannot be retried unless there was a "manifest necessity" for the mistrial or the ends of public justice would otherwise be defeated. | Both the federal and state constitutions prohibit trying a criminal defendant twice for the same crime. U.S.C.A. Const.Amend. 4; M.S.A. Const. Art. 1, S 7. | Does both the federal and state constitutions prohibit trying a criminal defendant twice for the same crime? | Double Jeopardy - Memo 947 - C - KS_67821.docx | ROSS-003278844-ROSS-003278845 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 12956 | Smith v. Hedgpeth, 706 F.3d 1099 | 135H+5.1 | The Double Jeopardy Clause of the Fifth Amendment states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause protects a defendant against both successive punishments and prosecutions for the same criminal offense. United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (citing North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). However, only "where the two offenses for which the defendant is punished or tried cannot survive the "same-elements' test, [does] the double jeopardy bar appl[y]." Id. | Double Jeopardy Clause protects defendant against both successive punishments and successive prosecutions for the same criminal offense. U.S.C.A. Const.Amend. 5. | Does the Fifth Amendment's Double Jeopardy Clause preclude successive prosecutions and successive punishments for the same criminal offense? | 016599.docx | LEGALEASE-00165415-LEGALEASE-00165416 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 12957 | In re Gateway Ethanol, 415 B.R. 486 | 50+1 | Fourth, although the fact that the warranties are those which IPE customarily provides with a sale would normally indicate a sale transaction, that indication is not true in this case. The sale warranties were included at the special request of Gateway, who concurrently requested that the transaction be in the form of a lease. The disclaimer of warranties of merchantability and fitness for a particular purpose are permitted in both sales and leases. | Disclaimer of warranties of merchantability and fitness for a particular purpose are permitted in both sales and leases, for purposes of determining whether agreement is a true lease or a disguised sale/security agreement. UCC SS 2-316, 2A-214. | Are a disclaimer of warranties of merchantability and fitness for a particular purpose permitted in both sales and leases? | Secured Transactions - Memo 37 - C - PC_68066.docx | ROSS-003292805-ROSS-003292806 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 12958 | Stow v. Murashige, 389 F.3d 880 | 135H+100.1 | "[I]t has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when not followed by any judgment, is a bar to a subsequent prosecution for the same offence." Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (citation and internal quotation marks omitted). This is true "even though an acquittal may appear to be erroneous." Id. That a jury's verdict of acquittal bars a subsequent retrial on those same offenses is "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence." Martin Linen, 430 U.S. at 571, 97 S.Ct. 1349. "This rule is assumed to be fundamental because it is the most "absolute" [and] operates without exception." Peter Westen, The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences, 78 Mich. L.Rev. 1001, 1004 (1979). This "fundamental" and "absolute" rule applies here to the jury's "Not Guilty" verdicts on the two counts of attempted second degree murder. | A verdict of acquittal is final, ending a defendant's jeopardy, and is a bar to a subsequent prosecution for the same offense even when not followed by any judgment; this is true even though an acquittal may appear to be erroneous. U.S.C.A. Const.Amend. 5. | Is that a jury's verdict of acquittal bars a subsequent retrial on those same offenses perhaps the most fundamental rule in the history of double jeopardy jurisprudence? | 015881.docx | LEGALEASE-00166244-LEGALEASE-00166245 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 12959 | State v. Broom, 146 Ohio St. 3d 60 | 135H+1 | The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Double Jeopardy Clause protects against three distinct evils: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Ohio's constitutional prohibition against double jeopardy, Article I, Section 10, is coextensive with the federal clause. State v. Brewer, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, 14. | The Double Jeopardy Clause protects against three distinct evils: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | What are the evils double jeopardy protects against? | 015950.docx | LEGALEASE-00166309-LEGALEASE-00166310 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 12960 | State v. Lindell, 828 N.W.2d 1 | 135H+1 | The Double Jeopardy Clause of the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Fourteenth Amendment binds the states to the Double Jeopardy Clause. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969); State v. Franzen, 495 N.W.2d 714, 715 (Iowa 1993). The Double Jeopardy Clause serves to create finality and to prevent prosecutorial overreaching. State v. Burgess, 639 N.W.2d 564, 568 (Iowa 2001). "The purpose of this clause is to protect against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense." Id. | The Double Jeopardy Clause serves to create finality and to prevent prosecutorial overreaching. U.S.C.A. Const.Amend. 5. | Does the double Jeopardy Clause serve to create finality and to prevent prosecutorial overreaching? | Double Jeopardy - Memo 657 - C - KG_68434.docx | ROSS-003281300 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 12961 | Borough of Paramus v. Cty. of Bergen, 27 N.J. Tax 215 | 371+2311 | In considering defendants' claim for exemption, the court relies on the well-settled law that "[t]he taxing power lies at the heart of government. Without taxes government could not function. Any impairment of the taxing power affects the lifeblood of government. Accordingly claims for tax exemption have to stand scrutiny to show that they serve a public purpose [citations omitted]." New Jersey Turnpike Auth. v. Township of Washington, 16 N.J. 38, 44, 106 A.2d 4 (1954). | Claims for tax exemption have to stand scrutiny to show that they serve a public purpose. | Should claims for tax exemption stand scrutiny to show that they serve a public purpose? | Taxation - Memo 1286 - C - MV.docx | LEGALEASE-00056082-LEGALEASE-00056083 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 12962 | Station #2 v. Lynch, 695 S.E.2d 537 | 13+27(1) | Although we clearly have stated the proposition, we often must repeat it: an omission or non-performance of a duty may sound both in contract and in tort, but only where the omission or non-performance of the contractual duty also violates a common law duty. Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998) (citing Foreign Mission Bd. v. Wade, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)); see also Dunn Constr. Co. v. Cloney, 278 Va. 260, 266"67, 682 S.E.2d 943, 946 (2009); Augusta Mutual, 274 Va. at 205, 645 S.E.2d at 293. The only duty Station # 2 alleged was contractual: that Gadams and Marathon had agreed to allow Station # 2 access to install the soundproofing material. Consequently, Station # 2 has not pleaded a proper claim for fraud. | An omission or non-performance of a duty may sound both in contract and in tort, but only where the omission or non-performance of the contractual duty also violates a common law duty. | Can an omission or non-performance of a duty sound both in contract and in tort? | Action - Memo 962 - C _13NsA5Cg_sT17x9rGexI9M9UXPrpEA2pL.docx | ROSS-000000051-ROSS-000000052 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12963 | Wells Fargo Bank, N.A. v. Fifth Third Bank, 931 F. Supp. 2d 834 | 172H+926 | Nevertheless, a plaintiff may state a tort claim in addition to a breach of contact claim if the plaintiff is able to demonstrate that tortious conduct by the defendant that breached "a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." Textron, 684 N.E.2d at 1270. In addition, a tort claim arising out of a breach of contract "must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract." Id. at 1271; see also Cincinnati Gas & Elec. Co. v. General Elec. Co., 656 F.Supp. 49, 62"63 (S.D.Ohio 1986) (emphasis original). | Under Ohio law, lending bank's gross negligence claim failed to allege actual damages beyond losses already attributed to lending bank's breach of contract claim against bank which administered a joint line of credit on behalf of both banks, as required to bring a gross negligence tort claim in addition to a breach of contract claim, where the only additional damages associated with the gross negligence claims were additional punitive damages. | Should a tort claim arising out of a breach of contract include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract? | Action - Memo 973 - C _1hiAkH15dZ9gpNcJ9W DcbFGIjD-ZAzEI_.docx | ROSS-000000071-ROSS-000000072 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 12964 | Neptune Estates v. Big Poll & Son Const., 39 Misc. 3d 649 | 13+27(1) | "An action based upon an alleged injury to property is one sounding in tort. Accordingly, any manner of commercial torts have been found to be within the purview of "injury to property" " (Lippes, 69 A.D.2d at 140, 419 N.Y.S.2d 505, internal citations omitted). In its discussion of injury to property in Lippes, the First Department Appellate Court specifically cited Ghiglione in explaining that "improperly filing a mechanic's lien upon a fictitious claim resulting in delaying building work" was an "injury to property" (Lippes, 69 A.D.2d at 140"141, 419 N.Y.S.2d 505). | An action based upon an alleged injury to property is one sounding in tort. | Is an action based upon an alleged injury to property one sounding in tort? | Action - Memo 974 - C _1Qi1V_tPP0apKSlqFl2H 1u5OxMQT6xypY.docx | ROSS-000000073 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 12965 | Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080 | 217+3379 | We are also inclined to agree with the views of our sister jurisdiction of Maryland9 on the subject of a distinct tort of bad faith in first-party insurance disputes.10 As was said in Hartz v. Liberty Mut. Ins. Co., 269 F.3d 474, 476"77 (4th Cir.2001): Maryland has made a considered decision not to recognize a tort action for bad faith failure to settle with an insured. Mesmer [v. Maryland Auto. Ins. Fund ], 725 A.2d at 1058 ("A contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis."). The Maryland Court of Appeals has repeatedly held that the duty which is owed to an insured for failure to settle a claim sounds in contract and not in tort. See, e.g., Jones v. Hyatt Ins. Agency, Inc., 356 Md. 639, 741 A.2d 1099, 1107"08 (Md.1999)....The trial court here correctly dismissed the count based on a distinct tort of bad faith. | The duty which is owed to an insured for failure to settle a claim sounds in contract and not in tort. | Does the duty which is owed to an insured for failure to settle a claim sound in contract and not in tort? | Action - Memo 983 - C _1LYaYXEhbC00LMXaaX dmZ-3XyKfa5XEh5.docx | ROSS-000000090-ROSS-000000091 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12966 | Tamari v. Bache & Co. (Lebanon) S.A.L., 730 F.2d 110 | 83H+6.1 | When the conduct occurring in the United States is material to the successful completion of the alleged scheme, jurisdiction is asserted based on the theory that Congress would not have intended the United States to be used as a base for effectuating the fraudulent conduct of foreign companies. See Psimenos, supra, 722 F.2d at 1046; Kasser, supra, 548 F.2d at 116. See also Vencap, supra, 519 F.2d at 1017. Under the effects test, courts have looked to whether conduct occurring in foreign countries had caused foreseeable and substantial harm to interests in the United States. See, e.g., Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc., 592 F.2d 409, 416"17 (8th Cir.1979); Vencap, supra, 519 F.2d at 1015"17; Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1334 (2d Cir.1972); Schoenbaum v. Firstbrook, 405 F.2d 200, 206"09 (2d Cir.), rev'd on other grounds, 405 F.2d 215 (2d Cir.1968) (en banc), cert. denied sub nom. Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). The underlying theory is that Congress would have wished domestic markets and domestic investors to be protected from improper foreign transactions. See Vencap, supra, 519 F.2d at 1016"17; Schoenbaum, supra, 405 F.2d at 206. See also Kasser, supra, 548 F.2d at 116. | Under both "conduct" and "effects" tests for determining jurisdictional questions arising from transnational disputes, district court had subject matter jurisdiction over cause of action under Commodity Exchange Act arising from trading on United States exchanges, even though parties were nonresident aliens and contacts between them occurred in foreign country since transmission of commodity futures orders to United States constituted "conduct" within United States and alleged fraud implicated integrity of American market. Commodity Exchange Act, SS 4b, 4c, as amended, 7 U.S.C.A. SS 6b, 6c. | "Under the effects test to determine whether Commodity Exchange Act applies to foreign agents, what do the courts look to?" | 013619.docx | LEGALEASE-00167103-LEGALEASE-00167104 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 12967 | United States v. Hanahan, 798 F.2d 187 | 135H+31 | Hanahan's sole argument on appeal is that his rights under the double jeopardy clause were violated when the government prosecuted him for illegal possession of firearms, since the same transaction had previously served as the basis for the revocation of his parole from a prior conviction. This argument is without merit because revocation of parole and a criminal prosecution can lawfully be based on the same transaction without violating the double jeopardy clause. Averhart v. Tutsie, 618 F.2d 479, 483"84 (7th Cir.1980). The double jeopardy clause protects a defendant in a criminal proceeding against multiple punishment or repeated prosecutions for the same offense. United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); its protections are not triggered by the revocation of parole. A parole revocation proceeding is an administrative proceeding designed to determine whether a parolee has violated the conditions of his parole, not a proceeding designed to punish a criminal defendant for violation of a criminal law. A criminal prosecution is a judicial proceeding that vindicates the community's interests in punishing criminal conduct. U.S. v. Whitney, 649 F.2d 296, 298 (5th Cir.1981). Because the two proceedings serve different ends, the finding that the defendant no longer merits parole does not foreclose the criminal justice system from punishing the defendant for that conduct. | Protections of the double jeopardy clause against multiple punishment or repeated prosecutions for same offense are not triggered by revocation of parole. U.S.C.A. Const.Amend. 5. | Does a double jeopardy clause protect a defendant in a criminal proceeding against multiple punishment or repeated prosecutions for the same offense? | 015793.docx | LEGALEASE-00166532-LEGALEASE-00166534 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 12968 | In re Rigg, 198 B.R. 681 | 349A+10 | Thus, "a lease agreement can be construed to create a security interest only if the agreement prohibits the lessee from terminating the lease." In re Holden, (Bkrtcy.D.Kan., No. 94"10524, filed October 3, 1994) at 11. In this case, as already noted, the Riggs Rental"Purchase Agreement with RAC could be terminated at any time simply by returning or arranging to return, the rental property. | Lease agreement can be construed to create security interest only if agreement prohibits lessee from terminating lease. V.T.C.A., Bus. & C. S 1.201(37). | Can a lease agreement be construed to create a security interest only if an agreement prohibits a lessee from terminating lease? | Secured Transactions - Memo 129 - C - NE_68701.docx | ROSS-003295323 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12969 | Lombard v. Station Square Inn Apartments Corp., 94 A.D.3d 717 | 349A+2 | UCC 9"610(a) states that when a debtor defaults on a security agreement, the secured party may sell, lease, license, or otherwise dispose of any or all of the collateral. However, reservation of title under a lease does not create a security interest unless the parties so intended. Therefore, the mere existence of a proprietary lease, without more, does not establish an enforceable security agreement to which the UCC applies (see McMillan v. Park Towers Owners Corp., 225 A.D.2d 742, 640 N.Y.S.2d 144). The status quo should be preserved absent a clear showing of entitlement to proceed under UCC article 9 (id.). | Reservation of title under a lease does not create a security interest unless the parties so intended. McKinney's Uniform Commercial Code S 9-610(a). | Does reservation of title under a lease not create a security interest unless the parties so intended? | 042725.docx | LEGALEASE-00166743-LEGALEASE-00166744 | Condensed, Order, SA | 0.76 | 1 | 1 | 0 | 1 | 1 |
| 12970 | Union Oil Co. of Cal. v. State Bd. of Equalization, 60 Cal. 2d 441 | 371+2311 | A different approach, expressing different basic legislative intendments, underlies the decisions in regard to the taxation of real property. Although privately-held leasehold interests in publicly-owned real property are subject to taxation, the public ownership interest is exempt (Texas Co. v. County of Los Angeles (1959) 52 Cal.2d 55, 338 P.2d 440); the rental price, moreover, is considered the purchase price of the leasehold interest and, for purposes of appraisal by the capitalization of net income method, the rental is not deductible as an expense. (DeLuz Homes, Inc. v. County of San Diego (1955) 45 Cal.2d 546, 290 P.2d 544.). | Privately-held leasehold interests in publicly-owned real property are subject to taxation, while public ownership interest is exempt. | Does privately-held leasehold interests in public-owned real property subject to taxation? | Taxation - Memo 1291 - C - KAD_68505.docx | ROSS-003307529-ROSS-003307530 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 12971 | Burlington N. v. Flathead Cty., 176 Mont. 9 | 371+2016 | As examples of what it considers clear and specific authority for imposing a tax, plaintiff points to sections 75-7207 and 75-7709(2), R.C.M.1947. Section 75-7207, concerning adult education, provides that the trustees of a district "may authorize the levy of a tax ." Section 75-7709(2), concerning post-secondary vocational-technical centers, provides that the board of county commissioners "is hereby authorized to levy a tax. 4 We do not think that to have a validly authorized tax, the rules for construing tax statutes restrict the legislature to the use of such language. | In order to have a validly authorized tax, there is no requirement that the Legislature use language "is hereby authorized to levy a tax." | "Is there any requirement that the Legislature use the language ""is hereby authorized to levy a tax."" in order to validly authorize a tax?" | Taxation - Memo 1342 - C - SM.docx | LEGALEASE-00056696-LEGALEASE-00056697 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 12972 | Moore v. Sch. Dist. of Pittsburgh, 338 Pa. 466 | 371+2016 | The complete answer, however, to this phase of appellant's argument is that the maximum tax rate is not fixed by the school board but by the legislature. The proposition that there is no unlawful delegation of the legislative power to tax where the legislature has fixed the maximum limit of the tax is settled by our decision in Minsinger v. Rau, 236 Pa. 327, 84 A. 902, Ann.Cas.1913E, 1324, reaffirmed in the Wilson case. In the former, section 524 of the School Code provided that the total annual tax levy in any school district of the first class should not be less than 5 nor more than 6 mills. | The delegation of legislative power to tax is not unlawful where Legislature, in connection with the delegation of such power, fixes the maximum limit of the tax. | Is the delegation of legislative power to tax unlawful where Legislature fixes the maximum limit of the tax? | Taxation - Memo 1364 - C - SD_68651.docx | ROSS-003280346-ROSS-003280347 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 12973 | Couchman v. Univ. of Cent. Florida, 84 So. 3d 445 | 141E+997 | Thus, by its express terms, the APA only applies to a state university when the university is acting pursuant to statutory authority from the Legislature. See also " 1001.706(2)(b), Fla. Stat. (2011). When a state university is acting pursuant to authority derived from Florida's Constitution, the APA does not apply. NAACP, Inc. v. Fla. Bd. of Regents, 876 So.2d 636 (Fla. 1st DCA 2004) (where State University System's Board of Governors adopts rules pursuant to powers derived from the Constitution, said rules are not subject to challenge under APA). | Administrative Procedure Act (APA) only applies to a state university when the university is acting pursuant to statutory authority from the legislature. West's F.S.A. SS 120.52(1, 6), 1001.706(2)(b). | Does the APA apply to a state university when the university is acting pursuant to statutory authority derived from the legislature? | Education - Memo #303 - C- ATS_65661.docx | ROSS-003279640-ROSS-003279641 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 12974 | Bridgeport Music v. Diamond Time, Ltd., 371 F.3d 883 | 156+52(1) | Equitable estoppel, sometimes referred to as fraudulent concealment, is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations. Hentosh v. Herman M. Finch Univ., 167 F.3d 1170, 1174 (7th Cir.1999); EEOC v. Ky. State Police Dep't, 80 F.3d 1086, 1095 (6th Cir.1996); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450"51 (7th Cir.1990). Application of equitable estoppel " "should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon." " Hentosh, 167 F.3d at 1174 (citation omitted). | Application of equitable estoppel should be premised on defendant's improper conduct as well as plaintiff's actual and reasonable reliance thereon. | Is the application of equitable estoppel premised on misconduct by the defendant? | 017738.docx | LEGALEASE-00167332-LEGALEASE-00167333 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 12975 | Westmoreland Coal Co. v. Fed. Mine Safety & Health Review Comm'n, 606 F.2d 417 | 260+92.5(2) | Finally, Dean Holland did not testify that the formulas used by Dr. Wu were incorrect; he did testify that he believed they were too conservative. The purpose of the Federal Coal Mine Health and Safety Act is to protect the safety of the miner. The language of the statute, the Congressional history of the statute, and the judicial review have all established that this legislation is to be interpreted liberally to effect that purpose. It is clearly consistent with the intent of Congress to be conservative in assuming safety. See, District 6, U.M.W. v. Interior Board of Mine Operations Appeals, 183 U.S.App.D.C. 312, 562 F.2d 1260, 1267 (D.C.Cir. 1977). | The purpose of Federal Coal Mine Health and Safety Act is to protect the safety of the miner and Act is to be interpreted liberally to effect that purpose. Federal Coal Mine Health and Safety Act of 1969, SS 2 et seq., 113(d)(1) as amended 30 U.S.C.A. SS 801 et seq., 823(d)(1). | Is the purpose of the Federal Coal Mine Health and Safety Act to protect the safety of the miner? | 021223.docx | LEGALEASE-00167338-LEGALEASE-00167339 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 12976 | Schlegel v. Hough, 182 Or. 441 | 260+38(13) | The federal law (R.S. " 2324, 30 U.S.C.A " 28) requires that, each year until patent issues, not less than $100 worth of labor shall be performed or improvements made upon each mining claim located after May 10, 1872. Failure to comply with such law renders the claim open to relocation as if no location thereof had ever been made, "provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location." | In suit to quiet title to an unpatented placer mining claim, defendant was required in pleading to negative the performance of $100 worth of improvements and prove the lack thereof to establish claimed forfeiture, and allegation only that plaintiff during year involved had not done any work or labor constituting assessment work or annual labor as required by law for mining claims was insufficient. 30 U.S.C.A. S 28. | How much labor does the law require to be performed upon each mining claim each year? | 021624.docx | LEGALEASE-00167340-LEGALEASE-00167342 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12977 | United States v. Pennell, 144 F. Supp. 317 | 377E+12(2) | It is defendant's contention that the words "to deal with" do not and cannot constitute a threat to injure the person of another. While it is true that these words taken alone, and out of context, may not constitute a threat, the test of whether words or phrases are harmless or threatening is the context in which they are used, measured by the common experience of the society in which they are used. United States v. Prochaska, 7 Cir., 222 F.2d 1, certiorari denied 350 U.S. 836, 76 S.Ct. 73. Under a Statute such as " 875(c), there is an offense when the language or expression used carries a reasonable connotation of a threat to injure a person. See: United States v. Prochaska, supra. It, therefore, follows that the words "to deal with" cannot be taken from context and isolated for the purpose of determining whether the letter does in fact contain a threat. Looking at these words in the text, where they are alleged to have been used by the defendant, it cannot be said as a matter of law that there is no threat to injure the person of Mrs. Gloria Pennell. Whether these words constitute a threat to Mrs. Pennell is a question of fact for the trier of the facts, and not a question to be determined by this Court at this time on a motion to dismiss. | The test of whether words or phrases are harmless or threatening is the context in which they are used, measured by common experience of the society in which they are used. 18 U.S.C.A. S 875(a-d). | What is the test for whether words or phrases are harmless or threatening? | 046766.docx | LEGALEASE-00167349-LEGALEASE-00167351 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 12978 | State v. Kilburn, 151 Wash. 2d 36 | 3.77E+25 | We add, however, that the harassment statute itself does require a mental element. The statute requires that the defendant "knowingly threatens...." RCW 9A.46.020(1)(a)(i). This means that "the defendant must subjectively know that he or she is communicating a threat, and must know that the communication he or she imparts directly or indirectly is a threat to cause bodily injury to the person threatened or to another person." J.M., 144 Wash.2d at 481, 28 P.3d 720. Thus, one who writes a threat in a personal diary or mutters a threat unaware that it might be heard does not knowingly threaten. Id. The statute does not require that the State prove that the speaker intended to actually carry out the threat. | One who writes a threat in a personal diary or mutters a threat unaware that it might be heard does not knowingly threaten, and therefore cannot be convicted under felony harassment statute. West's RCWA 9A.46.020. | "If a defendant mutters a threat unaware that it might be heard, is he guilty of knowingly threatening someone?" | 046800.docx | LEGALEASE-00167368-LEGALEASE-00167370 | Condensed, Order, SA | 0.7 | 1 | 1 | 0 | 1 | 1 |
| 12979 | Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, 36 N.Y.2d 121 | 38+90 | One of the purposes of a turnover proceeding is to determine the respective rights of a judgment creditor and transferee (CPLR 5225, subd. (b)). CPLR is not the exclusive source of a judgment creditor's rights, as against an assignee, without consideration for the benefit of creditors (see Matter of City of New York (Nassau Expressway), 56 Misc.2d 602, 605, 289 N.Y.S.2d 680, 684 (Conroy, J.); see, also, Siegel 1968 Supplementary Practice Commentary to CPLR 5222; 7B McKinney's Cons. Laws of N.Y., Book 7B, Cumulative Annual Pocket Part, at p. 98). It is elementary ancient law that an assignee never stands in any better position than his assignor. He is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than his assignor (see, e.g., Matter of Nunez, 226 N.Y. 246, 251, 123 N.E. 492, 493; see, also, Restatement, Contracts, 2d (T.D., 1973), s 168; 3 Williston, Contracts (3d ed.), s 432). The principle applies with equal or greater force to an assignee for the benefit of creditors who asserts rights to property against a judgment creditor which, prior to the assignment, had served a restraining notice on his assignor (cf. Restatement, Contracts, 2d (T.D., 1973), s 173, op. cit.) | Assignee never stands in any better position than his assignor; he is subject to all the equities and burdens which attach to property assigned because he receives no more and can do no more than his assignor. | Does an assignee stand in a better position than that of the assignor? | 07345.docx | LEGALEASE-00077617-LEGALEASE-00077619 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 12980 | Commerce Tr. Co. v. Air 1st Aviation Companies, 366 Ill. App. 3d 135 | 267+34 | Although the court and the parties discussed the Dead"Man's Act issue, the court did not rule on the motion to exclude Robbins' testimony. It is the responsibility of the party filing a motion to request the trial court to rule on the motion, and when no ruling has been made on a motion, it is presumed to have been abandoned absent circumstances indicating otherwise. People v. Flynn, 341 Ill.App.3d 813, 821"22, 275 Ill.Dec. 296, 792 N.E.2d 527, 535 (2003). Plaintiffs did not obtain a ruling on the motion to strike portions of Robbins' affidavit, either during the hearing on the motion to dismiss or during the court's extensive oral ruling on the motion to dismiss some three weeks later. Where, as here, a party moves to strike an affidavit, its failure to obtain a ruling on its motion to strike operates as a waiver of the objections to the affidavit. Woolums v. Huss, 323 Ill.App.3d 628, 633, 257 Ill.Dec. 39, 752 N.E.2d 1219, 1224 (2001). | It is the responsibility of the party filing a motion to request the trial court to rule on the motion, and when no ruling has been made on a motion, it is presumed to have been abandoned absent circumstances indicating otherwise. | "When a party moves to strike an affidavit will its failure to obtain a ruling on its motion to strike, operate as a waiver of the objections to the affidavit?" | 06287.docx | LEGALEASE-00077835-LEGALEASE-00077836 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12981 | Phillips Dev. & Realty v. LJA Eng'g, 499 S.W.3d 78 | 106+39 | As a threshold matter, LJA acknowledges that Patch's supplemental affidavit was filed shortly before the special appearance hearing. Further, we acknowledge that Tex. R. Civ. P. 120a(3) provides that any affidavits filed by the parties "shall be served at least seven days before the hearing." Tempest Broad. Corp. v. Imlay, 150 S.W.3d 861, 870 (Tex.App."Houston [14th Dist.] 2004, no pet.). However, we also recognize that Rule 120a(3) states: Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Hence, it is apparent that the trial court has discretion to allow the opposing party to file late affidavits under Rule 120a(3) or to enter other orders as are just. See Imlay, 150 S.W.3d at 870 (citing Potkovick v. Reg'l Ventures, Inc., 904 S.W.2d 846, 850 (Tex.App."Eastland 1995, no writ) (holding that trial court does have some discretion under Rule 120a to enter other orders as are "just"))."Otherwise ... a movant under Rule 120a could wait until seven days before the hearing to file its affidavits preventing the opposition from filing controverting affidavits." Potkovick, 904 S.W.2d at 850. Here, we conclude that Phillips has failed to establish that the trial court abused its discretion in considering the late-filed affidavit. Giacomini v. Lamping, 42 S.W.3d 265, 269"70 (Tex.App."Corpus Christi 2001, no pet.); Leben v. Treen, No. 13"020309"CV, 2003 WL 22479150, at *2 (Tex.App."Corpus Christi Oct. 30, 2003, no pet.) (mem.op.) ("In a special appearance proceeding, the trial court has discretion to consider a late-filed affidavit."). | A trial court has discretion to allow the party opposing a special appearance to contest personal jurisdiction to file late affidavits or to enter other orders as are just. Tex. R. Civ. P. 120a(3). | Does trial court have the discretion to allow late affidavits? | 03745.docx | LEGALEASE-00078287-LEGALEASE-00078289 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 12982 | People v. M.D., 231 Ill. App. 3d 176 | 352H+59(2) | The above doctrines were employed to justify the subjugation of women in English and American law and society during the past. Modern American law and society, however, have rejected these doctrines and have begun taking steps to recognize the rights of women, including their right to equal protection under the law. (See, e.g., Frontiero v. Richardson (1973), 411 U.S. 677, 687"88, 93 S.Ct. 1764, 1770"71, 36 L.Ed.2d 583, 592; Reed v. Reed (1971), 404 U.S. 71, 76"77, 92 S.Ct. 251, 254, 30 L.Ed.2d 225, 230.) Furthermore, as other courts have pointed out with respect to Lord Hale's theory, it is irrational to imply consent to a sexual assault, which is generally a violent, degrading act that results in severe physical and psychological harm. (Williams, 494 So.2d at 828; Liberta, 64 N.Y.2d at 164, 474 N.E.2d at 573, 485 N.Y.S.2d at 213.) A marriage license should not be viewed as a license to forcibly sexually assault one's spouse with impunity. (64 N.Y.2d at 164, 474 N.E.2d at 573, 485 N.Y.S.2d at 213.) A married individual has the same right to control his or her body as does an unmarried person. (494 So.2d at 828; 64 N.Y.2d at 164, 474 N.E.2d at 573, 485 N.Y.S.2d at 213.) For these reasons, we conclude that the above traditional justifications do not provide a rational basis for marital exemptions in sexual assault statutes. | It is irrational to imply consent by a spouse to a sexual assault, which is generally a violent, degrading act that results in severe physical and psychological harm. S.H.A. Const. Art. 1, S 2. | Is there an implied consent to sex among spouses? | 00933.docx | LEGALEASE-00083692-LEGALEASE-00083693 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 12983 | Pilcher v. Direct Equity Lending, 189 F. Supp. 2d 1198 | 95+98 | The court must disagree. "The word "void" is used in statutes in the sense of utterly void so as to be incapable of ratification, and also in the sense of voidable and resort must be had to the rules of construction in many cases to determine in which sense the Legislature intended to use it." Black's Law Dictionary, at 1411 (5th ed., 1979). The need for clarification has been recognized by the Kansas Supreme Court. In Gorham State Bank v. Sellens, 244 Kan. 688, 691"92, 772 P.2d 793 (1989) the court noted that the Kansas statute of frauds, which provided that fraudulent conveyances "shall be deemed utterly void and of no effect" in fact meant that "the conveyance is void only as to the equitable title and merely voidable as to the legal title." "A void act has no legal force or effect. A voidable act is not void in itself but may be declared void usually at the option of an affected party." Lawless v. Cedar Vale Regional Hosp., 252 Kan. 1064, 1070, 850 P.2d 795 (1993). In Regency Park, L.P. v. City of Topeka, 267 Kan. 465, 981 P.2d 256 (1999) (concluding that a city's collections and disbursements of storm water utility charges were merely voidable), the court distinguished between "void" and "voidable": | A void act has no legal force or effect; a voidable act is not void in itself but may be declared void usually at the option of an affected party. | Can a voidable act be made void at the option of the affected party? | Consumer Credit - Memo 27 - RK.docx | ROSS-003329111-ROSS-003329112 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12984 | W. Point-Pepperell v. Donovan, 689 F.2d 950 | 349+200 | The standards for reviewing a magistrate's finding of probable cause are the same for both administrative and criminal warrants. See, e.g., Burkart Randall Div. of Textron, Inc. v. Marshall, supra, 625 F.2d at 1319. In passing on the validity of a warrant, the role of the reviewing court is limited. A magistrate's probable cause determination is entitled great deference, Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969), and is conclusive in the absence of arbitrariness. United States v. Green, 634 F.2d 222, 225 (5th Cir. 1981); United States v. Pike, 523 F.2d 734, 737 n.4 (5th Cir. 1975), cert. denied, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976); Bastida v. Henderson, 487 F.2d 860, 863 (5th Cir. 1973). Moreover, judicial review of the sufficiency of an affidavit for the issuance of a warrant must be strictly confined to the information brought to the magistrate's attention. E.g., Aguilar v. Texas, 378 U.S. 108, 109 n.1, 84 S.Ct. 1509, 1511 n.1, 12 L.Ed.2d 723 (1964); United States v. Melancon, supra, 462 F.2d at 89-90. Except in those situations discussed below, a reviewing court should not conduct a probable cause hearing in which it considers evidence not presented to the magistrate. | Standards for reviewing magistrate's finding of probable cause are same for both administrative and criminal warrants. | Are the standards for reviewing a magistrates finding of probable cause same for both administrative and criminal warrants? | 05594.docx | LEGALEASE-00084254-LEGALEASE-00084255 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12985 | Power Oil Co. v. Cochran, 138 Neb. 827 | 92+2500 | On the proposition of the constitutionality and validity of said section 3 of House Roll 388 in its entirety, which is the inspection fee section of the act providing for inspection of refined petroleum products, there is no need for extended discussion, since it is well settled that an inspection fee which is in an amount reasonably necessary to defray the expense of inspection is proper and will not be disturbed. Century Oil Co. v. Department of Agriculture, 112 Neb. 73, 198 N.W. 569; State v. Bartles Oil Co., 132 Minn. 138, 155 N.W. 1035, L.R.A. 1916D, 193; State v. Pure Oil Co., 134 Minn. 101, 158 N.W. 723; Pure Oil Co. v. State of Minnesota, 248 U. S. 158, 39 S.Ct. 35, 63 L.Ed. 180. In truth, the plaintiffs in their brief concede the rule and do not question its soundness. | The wisdom of Legislature in intrusting broad powers in division of motor fuels in department of agriculture and inspection with respect to determining program for inspection of refined petroleum products is not a matter of judicial determination, since courts are not arbiters of legislative wisdom but function as a check upon unauthorized and unconstitutional assumptions of power, and in an action attacking validity of statute as providing for excessive inspection fees, only question for determination by court is whether the fees are reasonably necessary to defray expense of inspection. Laws 1933, c. 116, S 3; Laws 1939, c. 85. | Will courts interfere in charging inspection fees? | 06447.docx | LEGALEASE-00084378-LEGALEASE-00084379 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 12986 | State v. Whitwell, 215 S.W.3d 760 | 110+1023(3) | We dismiss this appeal because the Order entered by the trial court constituted a pre-trial order in limine. "A ruling in limine is interlocutory only and is subject to change during the course of trial. The motion in limine, in and of itself, presents nothing for appeal." State v. Purlee, 839 S.W.2d 584, 592 (Mo. banc 1992) (emphasis added). | A ruling in limine is interlocutory only and is subject to change during the course of trial; the motion in limine, in and of itself, presents nothing for appeal. | Is a ruling in limine interlocutory only and subject to change during the course of the trial? | 05221.docx | LEGALEASE-00084919-LEGALEASE-00084920 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 12987 | Tisdale v. Stone & Webster Eng'g Corp., 595 F. Supp. 1016 | 413+1 | The second area of consideration involves the "public interest" involved in choosing a situs for the litigation. Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than have a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. Id. at 508"09, 67 S.Ct. at 843. Accord, Koster v. Lumbermens Mutual Cas. Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). As Professor Larson pointed out in his treatise on workmen's compensation law, the different workmen's compensation schemes enacted by the several states are complex and are best administered by the individual state's agencies or courts. | Different workmen's compensation schemes enacted by the several states are complex and best administered by the individual state's agencies or courts. | "Who should administer workmens compensation laws, agencies or courts? " | 02034.docx | LEGALEASE-00092184-LEGALEASE-00092185 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 12988 | In re Bycura, 540 B.R. 211 | 135+1 | Section 522(b) provides that debtors can choose to exempt from property of the bankruptcy estate that property which is exempt under the applicable state or federal law. South Carolina has opted out of the federal exemptions. 11 U.S.C. " 522(b)(2). Under South Carolina law, a debtor may "exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding ... [t]he debtor's aggregate interest, not to exceed fifty thousand dollars in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence...." S.C. Code Ann. " 15"41"30(A)(1). The statute does not define "residence." However, South Carolina case law has established that "[a] residence is defined as, "[p]lace where one actually lives or has his home; a person's dwelling place orplace of habitation; an abode; house where one's home is; a dwelling house." " In re Jones, 397 B.R. 765, 770"71 (Bankr.D.S.C.2008) (quoting Black's Law Dictionary 1309 (7th ed.1999)). | Under South Carolina law, party's "residence" is the place where he actually lives or has his home, his dwelling place or place of habitation, his abode, house where his home is, or dwelling house. | "Is the place where a party lives or has his home, a party's residence under State law? " | 10794.docx | LEGALEASE-00094327-LEGALEASE-00094328 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 12989 | Hill v. John Chezik Imports, 797 S.W.2d 528 | 413+2 | The Workers' Compensation Act is substitutional, supplanting all other common-law rights of an employee if the Act applies. State ex rel. McDonnell Douglas v. Ryan, 745 S.W.2d 152, 153 (Mo. banc 1988). In all cases where it applies, the Workers' Compensation Act is exclusive. Whether or not a case comes within the provisions of the Act is a question of fact. Id., at 154. A circuit court may determine whether the plaintiff was an "employee" but may not determine whether there was an "accident arising out of and in the course of employment." Jones v. Jay Truck Driver Training Center, 709 S.W.2d 114, 115 (Mo. banc 1986). The employee/employer relationship here is not in dispute. The only issue, then, is whether the accident arose out of and in the course of employment. | Workers' Compensation Act is substitutional, supplanting all other common-law rights of an employee if the Act applies. V.A.M.S. S 287.010 et seq. | "If the Workers' Compensation Act applies, is the act substitutional, supplanting all other common-law rights of an employee? " | 11456.docx | LEGALEASE-00094545-LEGALEASE-00094546 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 12990 | State ex rel. Blankenship v. Richardson, 196 W. Va. 726 | 92+961 | Thus, this Court is not concerned with the legislative policy which motivated the enactment of S.B. 250, nor do we "sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation." Boyd v. Merritt, 177 W.Va. 472, 474, 354 S.E.2d 106, 108 (1986). It is the duty of this Court, however, to determine the constitutionality of the legislation. Farley v. Graney, 146 W.Va. 22, 119 S.E.2d 833 (1960). | It is duty of legislature to consider facts, establish policy, and embody that policy in legislation; it is duty of court, however, to determine constitutionality of legislation. | "Does the Court sit as a superlegislature, or is it the legislatures duty to consider the facts, establish, policy, and embody the policy in legislation? " | 11487.docx | LEGALEASE-00094816-LEGALEASE-00094817 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 12991 | Treaster v. Betts, 324 S.W.3d 487 | 307A+561.1 | As an affirmative defense, that the claim is one covered by the Workers' Compensation Law "must be pleaded and proved as provided in Rules 55.08 and 55.27. It is not a defense that may be raised in a motion to dismiss." Id. at 479.A pre-trial dismissal based on an affirmative defense must be granted under the standards of summary judgment. Fortenberry v. Buck, 307 S.W.3d 676, 679 (Mo.App. W.D.2010). | A pre-trial dismissal based on an affirmative defense must be granted under the standards of summary judgment. | Will a pre-trial dismissal based on affirmative defense be granted under the standards of summary judgement? | 10306.docx | LEGALEASE-00095365-LEGALEASE-00095366 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12992 | Giraldo v. Cossin, 399 So. 2d 540 | 307A+590.1 | Second, we find no error in the dismissal for lack of prosecution because no good cause was presented to the court explaining why the action should remain pending. Fla.R.Civ.P. 1.420(e).1 We reject the contention presented by appellants that the mere issuance of the alias summons constituted "record activity" establishing good cause to preclude dismissal. The trial court could not consider items not contained in the record at the time it dismissed the cause and, at the hearing held subsequent to dismissal, appellants could offer nothing to indicate good cause for retaining the action on the court's calendar. See American Eastern Corp. v. Henry Blanton, Inc., 382 So.2d 863 (Fla. 2d DCA 1980). An action cannot advance toward trial unless the court has jurisdiction over the party sued. The Crouse-Hinds Co. v. Capellia, 302 So.2d 800 (Fla. 4th DCA 1974). We affirm the dismissal. | Action cannot advance toward trial unless court has jurisdiction over party sued. | Can action advance toward trial unless a court has jurisdiction over a party sued? | 09872.docx | LEGALEASE-00096004-LEGALEASE-00096005 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12993 | Frazier-Hampton v. Hesterly, 89 Ark. App. 211 | 200+6(1) | A public road does not have to be established by a formal order of the county court; instead, a prescriptive right-of-way can be established by the county working the road for a period in excess of seven years. Neyland v. Hunter, 282 Ark. 323, 668 S.W.2d 530 (1984). Here, the evidence shows that the county performed maintenance and made significant improvements to the disputed section of road, including bridge construction, for a period far in excess of seven years. Moreover, unlike the situation presented in the case of Harper v. Hannibal, 241 Ark. 508, 408 S.W.2d 591 (1966), there is no compelling evidence to show that Walter Frazier at all times undertook to maintain constant control *214 over the use of the road, including county work on the road, or that he installed any gates before the dispute with Charles Allen arose in 2001. | Public road does not have to be established by formal order of county court; instead, prescriptive right-of-way can be established by county working road for period in excess of seven years. | How can a public road be established? | 05290.docx | LEGALEASE-00096696-LEGALEASE-00096697 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 12994 | Jovic v. L-3 Servs., 69 F. Supp. 3d 750 | 221+387 | Similarly, the act of state doctrine is an affirmative defense, on which the defendant carries the burden of proof. See In re Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978, 491 F.Supp. 161 (N.D.Ill.1979). "The act of state doctrine is a judicial rule that generally forbids an American court to question the act of a foreign sovereign that is lawful under the sovereign's laws." Nocula v. UGS Corp., 520 F.3d 719, 727"28 (7th Cir.2008) (internal citations omitted). Courts typically consider three factors in determining whether the doctrine applies: (1) the degree of international consensus regarding the acts of the foreign government challenged by the suit; (2) the implications of the suit for United States foreign relations; and (3) whether the government accused of perpetrating the alleged wrongful 766 acts remains in existence. See Abiola v. Abubakar, No. 02 C 6093, 2005 WL 3050607, at 2 (N.D.Ill. Nov. 8, 2005) (internal citations omitted). See generally Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 428, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) ("It should be apparent that the greater the degree of codification or consensus concerning a particular area of international law, the more appropriate it is for the judiciary to render decisions regarding it, since the courts can then focus on the application of an agreed principle to circumstances of fact rather than on the sensitive task of establishing a principle not inconsistent with the national interest or with international justice."). | The act of state doctrine is an affirmative defense, on which the defendant carries the burden of proof. | Is the act of state doctrine an affirmative defense on which the defendant carries the burden of proof? | International Law - Memo # 139 - C - SA.docx | ROSS-003301455-ROSS-003301456 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 12995 | Journal-Gazette Co. v. Bandido's, 712 N.E.2d 446 | 237+49 | "The majority of jurisdictions support the rule that headlines are to be construed in conjunction with their accompanying articles." Molin v. Trentonian, 297 N.J.Super. 153, 687 A.2d 1022, 1024 (1997) (citing cases). However, there are some jurisdictions which hold that a newspaper headline alone is libelous. See, e.g., Las Vegas Sun, Inc. v. Franklin, 74 Nev. 282, 329 P.2d 867, 870 (Nev.1958) (Because the "public frequently reads only the headline," the headline may be construed apart from its accompanying article.). Some minority jurisdictions have adopted what is known as the "fair index" rule. See Burgess v. Reformer Publ'g Corp., 146 Vt. 612, 508 A.2d 1359, 1363 (1986); Schermerhorn v. Rosenberg, 73 A.D.2d 276, 426 N.Y.S.2d 274, 283 (1980); Hein v. Lacy, 228 Kan. 249, 616 P.2d 277, 286 (1980); Bray v. Providence Journal Co., 101 R.I. 111, 220 A.2d 531, 535 (1966). Under the fair index rule:"If the headline is a fair index of an accurate article, it is not actionable. If it is not a fair index ["does not fairly indicate the substance of the matter to which it refers"] then the headline must be examined independently to determine whether it is actionable under general principles of libel."Burgess, 508 A.2d at 1363 (quoting Schermerhorn, 426 N.Y.S.2d at 283 (alteration in original)). In deciding to follow the fair index rule, the Burgess court remarked that it "cannot ignore the fact that "many people in a hurried and busy society are headline readers," " id. (quoting Cross v. Guy Gannett Publ'g Co., 151 Me. 491, 121 A.2d 355, 358 (1956)), and that "[a]lthough "the defamatory meaning of the headline may be dispelled by a reading of the entire article ..., [a] headline is often all that is read by the casual reader and therefore separately carries a potential for injury as great as any other false publication," " id. (quoting Schermerhorn, 426 N.Y.S.2d at 283 (second alteration in original)); see Reardon v. News"Journal Co., 53 Del. 29, 164 A.2d 263, 265 (Del.1960) ("[T]he sting | Under the "fair index rule," if newspaper headline is a fair index of an accurate article, it is not actionable; if it is not a fair index, then the headline must be examined independently to determine whether it is actionable under general principles of libel. | When are headlines not actionable under the principles of libel? | 021106.docx | LEGALEASE-00125481-LEGALEASE-00125482 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 12996 | United States v. Gundy, 842 F.3d 1156 | 67+2 | We first identify the elements of generic burglary. The generic, contemporary definition of burglary consists of these elements: (1) an unlawful or unprivileged entry into, or remaining in, (2) a building or other structure, (3) with intent to commit a crime therein. See Howard, 742 F.3d at 1342; Mathis, 579 U.S. at , 136 at 2248. | The generic, contemporary definition of burglary consists of these elements: (1) an unlawful or unprivileged entry into, or remaining in, (2) a building or other structure, (3) with intent to commit a crime therein. | What are the elements of burglary? | Burglary - Memo 8 - RK.docx | ROSS-003317045-ROSS-003317046 | Condensed, SA | 0.35 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 12997 | Memphis & C. Ry. Co. v. Pace, 282 U.S. 241 | 200+121 | The construction and maintenance of serviceable roads in any community is a matter in which the whole community have an interest and is a typical purpose for which property may be taxed by the state. Missouri Pacific R. R. Co. v. Western Crawford Road District, 266 U. S. 187, 190, 45 S. Ct. 31, 69 L. Ed. 237. Whether the tax shall be state wide or confined to the county or local district wherein the improvement is made, and whether it shall be laid generally on all property or all real property within the taxing unit, or shall be laid only on real property specially benefited, are matters which rest in the discretion of the state, and are not controlled by either the due process or the equal protection clause of the Fourteenth Amendment. County of Mobile v. Kimball, 102 U. S. 691, 703, 26 L. Ed. 238; Spencer v. Merchant, 125 U. S. 345, 355-356, 8 S. Ct. 921, 31 L. Ed. 763; Houck v. Little River District, 239 U. S. 254, 262, 265, 36 S. Ct. 58, 60 L. Ed. 266; Valley Farms Co. v. West chester, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; Missouri Pacific R. R. Co. v. Western Crawford Road District, supra; Kansas City Southern Ry. Co. v. Road Improvement District No. 3, 266 U. S. 379, 386, 45 S. Ct. 136, 69 L. Ed. 335. | Construction and maintenance of serviceable roads is public purpose for which property may be taxed by state. | Is the construction and maintenance of serviceable roads a typical purpose for which property may be taxed by the state? | 018784.docx | LEGALEASE-00129049-LEGALEASE-00129050 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 12998 | Bank of New York Mellon v. Poker Run Acquisitions, 208 So. 3d 199 | 307A+517.1 | There are some limited exceptions to the rule articulated in Pino. For example, a distinction exists between a party filing a simple voluntary dismissal with prejudice and an order by the trial court dismissing an action but reserving jurisdiction or incorporating the parties' settlement agreement. As this Court has previously explained: There is a difference between presenting a settlement agreement to the trial court for approval prior to dismissal of an action and cases where the parties voluntarily dismiss the action without an order of the court pursuant to Florida Rule of Civil Procedure 1.420. A voluntary dismissal under rule 1.420(a) divests the trial court of continuing jurisdiction over the case. However, where the parties, prior to dismissal, present a settlement agreement to the trial court for approval and the trial court enters an order of dismissal predicated on the parties' settlement agreement, the trial court retains jurisdiction to enforce the terms of the settlement agreement. | A voluntary dismissal divests the trial court of continuing jurisdiction over a case; however, where the parties, prior to dismissal, present a settlement agreement to the trial court for approval and the trial court enters an order of dismissal predicated on the parties' settlement agreement, the trial court retains jurisdiction to enforce the terms of the settlement agreement. West's F.S.A. RCP Rule 1.420(a). | Does a voluntary dismissal divest the trial court of continuing jurisdiction over a case? | Pretrial Procedure - Memo # 2486 - C - PC.docx | ROSS-003288273-ROSS-003288274 | Order, SA | 0.59 | 1 | 0 | 0 | 1 | |
| 12999 | Freeman v. Leader Nat. Ins. Co., 58 S.W.3d 590 | 307A+517.1 | A plaintiff's voluntary dismissal pursuant to Rule 67.02(a) is effective as of the date it is filed. Thornton v. Deaconess Medical Cntr."West Campus, 929 S.W.2d 872, 873 (Mo.App. E.D.1996). And after a case is dismissed, the trial court may take no further action and any step attempted is viewed as a nullity. Curators of the University of Missouri v. St. Charles County, 985 S.W.2d 810, 814 (Mo.App. E.D.1998). In other words, the trial court loses jurisdiction as of the date of dismissal. Liberman v. Liberman, 844 S.W.2d 79, 80 (Mo.App. E.D.1992). | After a case is dismissed, the trial court may take no further action, and any step attempted is a nullity. | "After a voluntary dismissal is filed, may the circuit court take no further steps as to the dismissed action, and any step attempted is viewed as a nullity?" | 027785.docx | LEGALEASE-00132264-LEGALEASE-00132265 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13000 | Wheeler v. Del Duca, 151 A.D.3d 1005 | 386+10 | Finally, the Supreme Court properly, in effect, directed dismissal pursuant to CPLR 3211(a)(3) of the plaintiff's fourth cause of action, which alleged trespass, as the plaintiff lacks standing to bring such a cause of action. The essential elements of a cause of action sounding in trespass are the intentional entry into the land of another without justification or permission (see Boring v. Town of Babylon, 147 A.D.3d 892, 47 N.Y.S.3d 419; Julia Props., LLC v. Levy, 137 A.D.3d 1224, 28 N.Y.S.3d 428). A trespass cause of action may only be maintained by one entitled to possess the subject property. Ownership alone is insufficient (see Cornick v. Forever Wild Dev. Corp., 240 A.D.2d 980, 981, 659 N.Y.S.2d 914). The plaintiff's failure to specifically plead the right to possession of land under the water, where the trespass allegedly occurred, is fatal to her trespass claim (see id.). | The essential elements of a cause of action sounding in trespass are the intentional entry into the land of another without justification or permission. | What are the elements of a cause of action sounding in trespass? | 047340.docx | LEGALEASE-00133436-LEGALEASE-00133437 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13001 | Fisher v. Carolina Door Prod., 286 S.C. 5 | 83E+670 | And the fact that the note was antedated is of no importance. The Commercial Code is dispositive. Section 36"3"114, Code of Laws of South Carolina (1976), in effect, provides that the antedating of a promissory note does not affect its negotiability and further that where an instrument is antedated, the time when it is payable is determined by the stated date if the instrument is payable at a fixed period after date. This statute also provides that the date of an instrument is presumed to be correct. Section 36"1"201(31), Code of Laws of South Carolina (1976), defines the word "presumed" as meaning that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence. | Antedating of promissory note does not affect its negotiability, and time when antedated note is payable is determined by stated date if instrument is payable at fixed period after date. Code 1976, SS 36-1-201(31), 36-3-114. | Is a promissory note invalidated by the virtue of being antedated? | 010236.docx | LEGALEASE-00134726-LEGALEASE-00134727 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 13002 | Merrick v. Britton, 26 Ark. 496 | 307A+723.1 | That a party came to a trial unprepared to make out his case or establish his defense, has not even the appearance of a valid excuse. It is true, that sometimes no amount of diligence or effort will suffice to arrange all the details and procure every thing needful for the trial. But injury need not for that reason be sustained. Courts are extremely indulgent and liberal in granting continuances, and they are seldom or never appealed to in vain in proper cases. It is therefore incumbent upon a party, if for any good cause he finds himself unprepared to go on, to state the circumstances to the court and move a postponement of his case. If he fails to do so, he waives his want of preparation, and all right after to object. | Where a party, for any good cause, is unprepared to go to trial, and fails by motion to postpone or continue, to show the fact to the court, at the proper time, he waives his want of preparation, and all right to afterwards object. | Should a party who is unprepared to go to trial move for a continuance at the proper time? | 030423.docx | LEGALEASE-00136160-LEGALEASE-00136161 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13003 | Shaffer v. Superior Court, 33 Cal. App. 4th 993 | 92+1229 | A party may obtain discovery regarding unprivileged matters "that [are] relevant to the subject matter involved in the pending action ... if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ.Proc., " 2017, subd. (a).) However, when evidence sought to be discovered impacts on a person's constitutional right to privacy (Cal. Const., art. 1, " 1), limited protections come into play for that person. (Valley Bank of Nevada v. Superior Court (1975) 15 Cal.3d 652, 656, 125 Cal.Rptr. 553, 542 P.2d 977.) The protections extend both to a person's personal and financial matters. (Ibid.) In ruling on discovery motions, the court must balance competing rights"the right of a litigant to discover relevant facts and the right of an individual to "maintain reasonable privacy." (Id. at p. 657, 125 Cal.Rptr. 553, 542 P.2d 977.) | Limited protections accorded, in connection with discovery, for individual's privacy interests extend both to individual's personal and financial matters. West's Ann.Cal. Const. Art. 1 S 1; West's Ann.Cal.C.C.P. S 2017(a). | Do limited protections accorded for an individual's privacy interests extend both to an individual's personal and financial matters? | Pretrial Procedure - Memo # 4996 - C - VA.docx | ROSS-003288711-ROSS-003288712 | Condensed, Order, SA | 0.76 | 1 | 1 | 0 | 1 | 1 |
| 13004 | Blanchard v. Ashby Const. Co., 95 So. 2d 670 | 200+175 | It is the well settled law and jurisprudence of our state that a person who attempts to make a left turn or who attempts to turn from a direct line on the public highways of the state must ascertain before turning that the turn can be made safely. LSA-R.S. 32:235, subd. A, and R.S. 32:236, subd. A. Considering all the facts and the law on the matter, we are of the opinion that the negligence of the defendant was the proximate cause of the accident. | A person who attempts to make a left turn or attempts to turn from a direct line on public highways must ascertain before turning that turn can be made safely. LSA-R.S. 32:235, subd. A, 32:236, subd. A. | How should a person making a left turn on a highway proceed? | 019023.docx | LEGALEASE-00141571-LEGALEASE-00141572 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |
| 13005 | United States v. Perdiz, 256 F. Supp. 805 | 63+3 | Even if Miranda were applicable, it does not provide a defense to a prosecution for attempted bribery.It is one thing to say that statements made, where no adequate warning is given, may not be used to convict a defendant of crimes which are under investigation or which are revealed by his statements, but it is quite another matter to say that he is immune from prosecution for an independent criminal act which he commits in the presence of a law-enforcement officer who has no warned the defendant of his rights.Compare United States v. Winter, 348 F.2d 204 (2nd Cir. 1964). It is one thing to deny the prosecution the use as evidence of statements made without adequate warning in prosecutions for crimes previously committed; it is quite another thing to say that a statement, which is itself a crime, when made to a law-enforcement officer is inadmissible solely because the officer did not properly warn the defendant before the defendant began to speak. Accordingly, failure to warn, in my opinion, does not provide a defense to the present defendant. | Arresting officers' failure to advise accused of his rights to counsel and to remain silent did not render accused immune from prosecution for attempt to bribe arresting officers after arrest. | Does arresting officers' failure to advise accused of his rights to counsel and to remain silent render accused immune from prosecution for attempt to bribe arresting officers after arrest? | 012048.docx | LEGALEASE-00141844-LEGALEASE-00141845 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 13006 | Briceno v. State, 580 S.W.2d 842 | 211+1585 | The elements of these two offenses are identical except that indecency with a child requires the defendant to Know that a Child is present, where indecent exposure requires that the defendant is Reckless as to the presence of another Person. Proof of this higher degree of culpability, knowing, is proof of the lower culpable mental state, reckless. V.T.C.A. Penal Code, Sec. 6.02(3). Proof that a child is present necessarily would be proof of the presence of a person. Thus, indecency with a child requires, in addition to proving all the elements of indecent exposure, a showing of the higher culpable mental state and that the person is a child. | The elements of offenses of indecency with a child and indecent exposure are identical except that indecency with a child requires defendant to know that a child is present, whereas indecent exposure requires that defendant is reckless as to presence of other person; proof of the higher degree of culpability, knowing, is proof of lower culpable mental state, reckless, and hence proof that a child is present necessarily would be proof of presence of a person, so that indecency with a child requires, in addition to proving all the elements of indecent exposure, a showing of higher culpable mental state and that the person is a child. V.T.C.A., Penal Code SS 21.08, 21.11(a)(2). | Are the elements of indecency with a child and indecent exposure identical? | 043115.docx | LEGALEASE-00143494-LEGALEASE-00143495 | Order, SA, Sub | 0.05 | 1 | 0 | 1 | 1 | 1 |
| 13007 | Gordon v. Gatlin Commons Prop. Owners Ass'n, 199 So. 3d 1120 | 307A+746 | While there is no justification for plaintiff's counsel's non-compliance in this case, Florida law requires the trial court to consider specific factors before dismissing a complaint. "Before a court may dismiss a cause as a sanction, it must first consider the six factors delineated in Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993), and set forth explicit findings of fact in the order that imposes the sanction of dismissal." Bennett ex rel. Bennett v. Tenet St. Mary's, Inc., 67 So.3d 422, 426 (Fla. 4th DCA 2011) (citation omitted). The six factors are:a. whether the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience;b. whether the attorney has been previously sanctioned;c. whether the client was personally involved in the act of disobedience;d. whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion;e. whether the attorney offered reasonable justification for noncompliance; andf. whether the delay created significant problems of judicial administration.Kozel, 629 So.2d at 818. "After considering these factors, if there is a less-severe sanction available than dismissal with prejudice, the court should use it." Bennett ex rel. Bennett, 67 So.3d at 427. | Trial court failed to analyze six Kozel factors when choosing dismissal as sanction for failure to comply with amended pre-trial order in plaintiff's personal injury action against property owners association, warranting remand; trial court found only that plaintiff failed to disclose her expert witness list, expert reports, expert opinion summaries, fact witnesses, and failure to appear at docket call, and then found that plaintiff's multiple violations of amended pre-trial order were willful or contumacious. | "Before a court may dismiss a cause as a sanction for counsel's noncompliance with court order, should it first consider six factors, and set forth explicit findings of fact in the order that imposes the sanction of dismissal?" | 034497.docx | LEGALEASE-00144033-LEGALEASE-00144034 | Order, SA, Sub | 0.6 | 1 | 0 | 1 | 1 | 1 |
| 13008 | Sykes v. State, 578 N.W.2d 807 | 3.77E+48 | The terroristic threat statute, under which Sykes was charged, provides that an individual is guilty of a felony if he or she threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another or * * * to cause serious public inconvenience, or in a reckless disregard of the risk of causing such terror or inconvenience * * *. Minn.Stat. " 609.713, subd. 1 (1996). This section requires that the "defendant utter the threat with the purpose of terrorizing another." State v. Schweppe, 306 Minn. 395, 400, 237 N.W.2d 609, 614 (1975). "Purpose in this context means aim, objective, or intention [and][t]errorize means to cause extreme fear by use of violence or threats." Id. (citations omitted). The effect of a terroristic threat is not an essential element of the offense, but the victim's reaction to the threat is circumstantial evidence relevant to the element of intent. Id. at 401, 237 N.W.2d at 614. "Intent * * * is a subjective state of mind usually established only by reasonable inference from surrounding circumstances." Id. | Effect of a terroristic threat is not an essential element of the offense, but the victim's reaction to the threat is circumstantial evidence relevant to the element of intent. M.S.A. S 609.713, subd. 1. | Is the effect of a terroristic threat an essential element of the offense? | Threats - Memo #163 - C - LB_62718.docx | ROSS-003284116-ROSS-003284117 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13009 | United States v. Lemons, 67 F. Supp. 985 | 8.30E+11 | Under said statute a forged indorsement passes no title to a subsequent holder of a negotiable instrument. Dowling v. Grand Avenue Bank of St. Louis, 216 Mo.App. 86, 267 W.W. 1. It is also the law of said state that where a note is forged by having defendant's name signed thereto by another, without his authority or subsequent ratification, it is wholly inoperative and void, whether the holder is an innocent or guilty purchaser. German-American Bank v. Barnes, Mo. App., 185 S.W. 1194, Scott v. First Nat. Bank in St. Louis, 343 Mo. 77, 119 S.W.2d 929. The law of the state in which a check, or negotiable instrument, is executed, determines the formality and essential validity thereof, and the incidents of the obligation of such instrument. United States v. Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed.415, 95 A.L.R. 651. | The law of the state in which a check or negotiable instrument is executed determines the formality and essential validity thereof, and the incidents of the obligation of such instrument. | Which law determines the incidents of obligation of a check? | Bills and Notes - Memo 1360 - RK_66262.docx | ROSS-003322460-ROSS-003322461 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 13010 | People v. Hamil, 20 Ill. App. 3d 901 | 352H+190 | The intent to commit rape may, however, be inferred from the conduct of the accused, the character of the assault, v. Jenkins (1930), 342 Ill. 238, 174 N.E. 30. occurrence, as well as from the words spoken. (See People v. Young (1972), 6 Ill.App.3d 119, 285 N.E.2d 159; People v. Moore (1966), 77 Ill.App.2d 62, 222 N.E.2d 142; People v. Kruse (1943), 385 Ill. 42, 44, 52 N.E.2d 200.) The fact that the defendant broke off the attack after encountering resistance does not change the nature of the attack up to that point. People v. Poe (1969), 109 Ill.App.2d 295, 248 N.E.2d 715. | Intent to commit rape may be inferred from conduct of accused, character of assault, acts done and time and place of occurrence, as well as from words spoken. S.H.A. ch. 38, S 8-4. | Can intent to commit rape be inferred from the defendants words? | 043131.docx | LEGALEASE-00164074-LEGALEASE-00164075 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 13011 | Ex Parte Victorick, 453 S.W.3d 5 | 135H+56.1 | Victorick argues the trial court erred in failing to apply the Jorn successive prosecution concept, notwithstanding the fact that jeopardy attached only once in his case. Victorick contends without citing any authority that by referring to the complaining witness as the "victim" in the order setting conditions of bond, the trial court determined that he had committed a crime and the entry of the order functioned as an adjudication of guilt. The law of this state is well settled that with respect to a jury trial, jeopardy attaches when the jury is empaneled and sworn, and for a bench trial jeopardy attaches when the defendant pleads to the charging instrument. See Ortiz v. State, 933 S.W.2d 102, 105 (Tex.Crim.App.1996) (The constitutional prohibition against double jeopardy does not apply until the defendant enters a plea before the trier of facts.). Jeopardy does not attach in a preliminary hearing regardless of what facts may be determined during the proceeding. See id. | With respect to a jury trial, jeopardy attaches, for double jeopardy purposes, when the jury is empaneled and sworn, and for a bench trial, jeopardy attaches when the defendant pleads to the charging instrument. U.S. Const. Amend. 5. | Does a jeopardy attach when the defendant pleads to the charging instrument? | 016671.docx | LEGALEASE-00165151-LEGALEASE-00165152 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 13012 | Agio Indus. v. Delta Oil Co., 485 So. 2d 340 | 307A+583 | A dismissal for want of prosecution is within the discretion and inherent power of the trial court, and such dismissal will be reversed only where the court has abused its discretion. Selby v. Money, 403 So.2d 218 (Ala.1981). However, such a harsh sanction should be used only in extreme circumstances. Id. | Dismissal for want of prosecution is within discretion and inherent power of trial court, but such harsh sanction should be used only in extreme circumstances. | Is the dismissal for want of prosecution within the discretion and the inherent power of trial court? | Pretrial Procedure - Memo 11793 - C - NC_65470.docx | ROSS-003279820-ROSS-003279821 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 13013 | Willis v. Columbus Med. Ctr., 306 Ga. App. 331 | 25T+481 | Georgia law mandates the automatic dismissal of any case in which "no written order is taken for a period of five years." See OCGA "" 9"2"60(b); 9"11"41(e). The appellate courts of this state have consistently held that, in order to toll the automatic dismissal, an order must be "written, signed by the trial judge, and properly entered in the records of the trial court by filing it with the clerk." (Citation and punctuation omitted.) Republic Claims Svc. Co. v. Hoyal, 264 Ga. 127, 128, 441 S.E.2d 755 (1994). See Zepp v. Brannen, 283 Ga. 395, 398, 658 S.E.2d 567 (2008); Scott v. DeKalb County Hosp. Auth., 168 Ga.App. 548(1), 309 S.E.2d 635 (1983). Significantly, "[d]ismissal cannot be avoided even by obtaining a written order signed by the trial court until such order is duly entered in the record by filing it with the clerk." Prosser v. Grant, 224 Ga.App. 6(2), 479 S.E.2d 775 (1996). A dismissal resulting from the failure to meet these statutory requirements is mandatory and leaves the trial court without discretion to reinstate the case. See Republic Claims Svc. Co., 264 Ga. at 128, 441 S.E.2d 755; Swint v. Smith, 219 Ga. 532, 533"534(1), 134 S.E.2d 595 (1964); Scott, 168 Ga.App. at 548(2), 309 S.E.2d 635. | After parents filed medical malpractice action on behalf of their son and case was referred to mediation, no written order was filed with the clerk within the statutory period, and thus, case was automatically dismissed as a matter of law, although parents' counsel was under the mistaken impression that the trial court's order had been filed by Office of Dispute Resolution; plain language of the mediation order and well-established case law placed duty squarely upon the parents and/or their counsel to ensure that the necessary actions had been taken in order to avoid dismissal. West's Ga.Code Ann. SS 9-2-60(b), 9-11-41(e). | Does an automatic dismissal due to a fact that no written order is taken for a period of five years result as a matter of law and the court has no discretion to order action reinstated? | Pretrial Procedure - Memo 11522 - C - NE_65337.docx | ROSS-003280831-ROSS-003280832 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 13014 | Howard v. Cty. of Amador, 220 Cal. App. 3d 962 | 233+531 | In this case we are not arguably concerned with issues relating to life estates or estates at will and we need not further refer to those estates. But the County's argument does implicate an estate for years. The term "estate for years" is another name for a leasehold estate. (Parker v. Superior Court (1970) 9 Cal.App.3d 397, 400, 88 Cal.Rptr. 352.) The distinguishing characteristics of a leasehold estate are that the lease gives the lessee the exclusive possession of the premises against all the world, including the owner (Von Goerlitz v. Turner (1944) 65 Cal.App.2d 425, 429, 150 P.2d 278), and its term is limited to endure for a definite and ascertained period, however short or long the period may be. (Guy v. Brennan (1923) 60 Cal.App. 452, 456, 213 P. 265.) | Distinguishing characteristics of a "leasehold estate" are that the lease gives the lessee exclusive possession of the premises against all the world, including the owner, and its term is limited to endure for a definite and ascertained period, however short or long the period may be. | Are leases characterized by the exclusive possession of premises they provide against the world? | Landlord and Tenant - Memo 81 - ANG.docx | ROSS-003283236-ROSS-003283237 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 13015 | Vines v. Branch, 244 Va. 185 | 386+49 | One who commits a trespass to a chattel is liable to its rightful possessor for actual damages suffered by reason of loss of its use. Zaslow v. Kroenert, 29 Cal.2d 541, 551-52, 176 P.2d 1, 7 (1946). Since Branch's alleged conduct was directed at Vines's property, and not at Vines personally, it constitutes an injury to property. See Pigott v. Moran, 231 Va. 76, 81, 341 S.E.2d 179, 182 (1986). Accordingly, the five-year limitation period of Code " 8.01-243(B) governs. Id. Because Vines's cause of action is alleged to have accrued within five years of the date of the amended motion for judgment, we hold that the trial court erred in dismissing the trespass count set forth therein. | One who commits trespass to chattel is liable to its rightful possessor for actual damages suffered by reason of loss of its use. | Will a trespasser to chattels be liable for actual damages? | Trespass - Memo - 125 - RK.docx | ROSS-003283834-ROSS-003283835 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13016 | Doe v. Amherst Coll., 238 F. Supp. 3d 195 | 237+1 | The tort of defamation "seek[s] to impose liability on a defendant for harm sustained by a plaintiff as a result of the publication of a false statement about the plaintiff to others." HipSaver, Inc. v. Kiel, 464 Mass. 517, 984 N.E.2d 755, 762 (2013). "Modern defamation law is a complex mixture of common-law rules and constitutional doctrines." Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc., 804 F.3d 59, 64 (1st Cir. 2015). Under Massachusetts law, a plaintiff "must ordinarily establish five elements: (1) that the defendant published a written statement; (2) of and concerning *226 the plaintiff; that was both (3) defamatory, and (4) false; and (5) either caused economic loss, or is actionable without proof of economic loss." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009). Despite the general requirement of falsity, by statute, Massachusetts purports to allow a plaintiff to recover even when a written statement was true, if the statement was made with actual malice. Mass. Gen. Laws ch. 231, " 92. | The tort of defamation seeks to impose liability on a defendant for harm sustained by a plaintiff as a result of the publication of a false statement about the plaintiff to others. | When can liability for defamation be imposed on a defendant? | Libel and Slander-Memo -7 - RM.docx | ROSS-003284591-ROSS-003284592 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13017 | Walker v. McGuire, 2015 IL 117138 | 79+12 | Plaintiff, like the State, relies on the plain language of article VI, section 14. Plaintiff argues, however, that the fee officer prohibition expressly applies to members of the "judicial system," i.e., the judicial branch of government, and that under our case law, circuit court clerks are "nonjudicial officer[s] of the judicial branch of government." County of Kane v. Carlson, 116 Il.2d 186, 200, 107 Ill.Dec. 569, 507 N.E.2d 482 (1987). | Clerks of circuit courts did not fall within state constitutional provision prohibiting fee officers in judicial system, and, thus, provision of civil procedure code, which imposed $50 filing fee in residential mortgage foreclosure cases, two percent of which was retained by clerk for court in which complaint was filed, was not unconstitutional; clerks were officers of judicial branch of government, but they were non-judicial officers, and clerks performed no quasi-judicial functions. S.H.A. Const. Art. 6, S 14; S.H.A. 735 ILCS 5/15-1504.1. | Is a circuit clerk a non-judicial officer of the judicial branch of the government? | Clerks of Court - Memo 50 - RK.docx | ROSS-003285055-ROSS-003285056 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 13018 | In re Patterson, 330 B.R. 631 | 51+2823 | The court agrees and finds that "the doctrine of equitable subrogation is not applicable in a bankruptcy case, when to apply it would directly circumvent the result intended by the Code." Boyd v. Superior Bank FSB (In re Lewis), 270 B.R. 215, 218 (Bankr.W.D.Mich.2001) (expressly discussing the issue in the context of " 547(b)), aff'd, 398 F.3d 735, 747 (6th Cir.2005); see also Moeri, 300 B.R. at 330 ("The court is unaware of any authority to support the defendant's attempt, absent an assignment, to rely upon Chrysler's lien after Chrysler had been fully paid; to permit that result would render " 547(e)(2) meaningless."); Sheehan v. Valley Nat'l Bank (In re Shreves), 272 B.R. 614, 622"23 (Bankr.N.D.W.Va.2001) (finding that perfection of a lien within the preference period was avoidable by the trustee, that equitable subrogation did not release a creditor of its statutory duty to perfect a lien, and application of equitable subrogation would be inconsistent with and circumvent the Bankruptcy Code); Rouse v. Chase Manhattan Bank, U.S.A. (In re Brown), 226 B.R. 39, 45 (W.D.Mo.1998) (deducing that although state law governs questions of property rights, "there are specific Code sections that govern the priority of perfected and unperfected creditors[,]" and applying equitable subrogation in defense of the trustee's preference action "would directly circumvent the result intended by the Code."). "Congress quite specifically intended a trustee's power to avoid pre-petition preferences to prevail over any state rules permitting relation back." Fid. Fin. Servs. v. Fink, 522 U.S. 211, 118 S.Ct. 651, 654, 139 L.Ed.2d 571 (1998). Therefore, equitable subrogation is not a meritorious defense to the Plaintiff's Complaint. | Doctrine of equitable subrogation is not applicable in bankruptcy case, when to apply it would directly circumvent the result intended by Congress in enacting the Bankruptcy Code, as when preference defendant seeks to avoid results of having its lien avoided, for failing to perfect lien in timely fashion, by being subrogated to another lienholder's rights. 11 U.S.C.A. S 547(b). | Is equitable subrogation applicable in bankruptcy cases? | Subrogation - Memo 383 - VP C.docx | ROSS-003285365-ROSS-003285366 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 13019 | Smith v. City of Chicago, 143 F. Supp. 3d 741 | 386+6 | Next, Plaintiffs maintain that their trespass claims are not based on the trespass to the physical condition of land as the City argues, but concern the trespass to personal property. Under Illinois law, "an injury to or interference with possession, with or without physical force, constitutes a trespass to personal property." See Sotelo v. DirectRevenue, LLC, 384 F.Supp.2d 1219, 1229 (N.D.Ill.2005) (citation and quotation marks omitted). In other words, "harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can [ ] result in liability." Id.; see also Kay v. Cook County, No. 05 C 3015, 2006 WL 2509721, at (N.D.Ill. Aug. 29, 2006) (citing Restatement (Second) of Torts " 218(b)). | Under Illinois law, an injury to or interference with possession, with or without physical force, constitutes a trespass to personal property. | Can trespass to personal property occur without physical force? | Trespass - Memo 123 - RK.docx | ROSS-003286315-ROSS-003286316 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13020 | Third & Catalina Assocs. v. City of Phoenix, 182 Ariz. 203 | 148+2.2 | In Ranch 57, the court held that a zoning ordinance constituted a taking of private property when restrictions deprived the owner of reasonable use for which the property is "adapted and thus destroys its economic value, or all but a bare residue of its value." 152 Ariz. at 226, 731 P.2d at 121. We view the present case as neither one that involves a physical invasion nor one which destroys the reasonable use for which the property is adapted. The City's sprinkler retrofit ordinance is not a land use regulation. The ordinance does not impose any restrictions on the use of the land. Rather, the ordinance is a fire safety regulation designed to protect human life. Compliance with the ordinance merely requires the expenditure of money, not the giving up of land. There is no taking. Furthermore, this is a cost to be borne by the owners of the building who derive profits from its rental and not a cost to be borne by the public at large which does not share in those potential profits. Requiring money to be spent to comply with a regulation is not an unconstitutional taking of private property. | Requiring money to be spent to comply with regulation is not unconstitutional taking of private property. U.S.C.A. Const.Amend. 5. | Is requiring money to be spent to comply with a regulation an unconstitutional taking of private property? | Eminent Domain - Memo 302 - GP.docx | ROSS-003286736-ROSS-003286737 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13021 | Stiles v. City of Guthrie, 1895 OK 51 | 200+121 | Having ascertained now what the language and connection of the different matters referred to in this section are, does it give any authority to the county commissioners to levy a road and bridge tax? We observe nothing of that kind in the section. There is nothing in the section which directs any particular body, tribunal, or officer to make a levy of the tax, nor is there anything in or about the section that purports to do such a thing. It only fixes the rate, or rather it only fixes the limitation upon certain taxes which may be levied for certain purposes in this territory, and does not say, or pretend to say, what officer or body shall make the levy. It leaves the question as to who or what officer or tribunal shall make the levy to other provisions of the statute. The very next section following this one provides that the territorial board of equalization shall fix the rate of taxation for a territorial tax, and that the auditor shall certify the same to the county clerks of the counties. The section following this latter one provides the time when the county commissioners shall meet and levy the taxes in the counties. Upon a consideration of these three sections, it would be as fair to hold that the county commissioners were the body to fix the amount which should be levied for territorial taxes as that they should make a levy of taxes for road and bridge purposes, and this conclusion can certainly not be reached. But there are other sections of the statute which make it very clear as to whose duty it is to levy taxes for road and bridge purposes in cities, and when, if ever, the county commissioners can levy any such taxes. Section 5729 of the same statutes, provides: "The county commissioners of each county by and with the consent of the respective township trustees, may at the time prescribed by law for levying county taxes, levy a road tax of not more than five mills on the dollar on all taxable property in their respective townships except the real estate in | Under Laws 1893, the board of county commissioners had no authority to levy a tax for road and bridge purposes unless first authorized by a majority vote of the people on a submission of the question at a general or special election. | Can a board of county commissioners levy taxes? | Highways -Memo 37 - RK.docx | ROSS-003287316-ROSS-003287319 | Order, SA | 0.97 | 1 | 0 | 0 | 1 | |
| 13022 | Sheely v. Pinion, 200 W. Va. 472 | 307A+746 | Id., 196 W.Va. at 389"90, 472 S.E.2d at 835"36. In syllabus point 2 of Bartles we summarized the factors circuit courts must consider in deciding whether to impose sanctions:In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case. | In formulating appropriate sanction for failure to comply with scheduling order, court shall be guided by equitable principles; court may consider seriousness of conduct, impact conduct had in case and in administration of justice, any mitigating circumstances, and whether conduct was isolated occurrence or was pattern of wrongdoing throughout case. Rules Civ.Proc., Rule 16(f). | "In formulating appropriate sanction, shall a court be guided by equitable principles? " | Pretrial Procedure - Memo # 6517 - C - NS.docx | ROSS-003288350-ROSS-003288351 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 13023 | Vill. of Fontana-On-Geneva Lake v. Hoag, 57 Wis. 2d 209 | 307A+747.1 | The confusion in this record demonstrates the wisdom of this court's admonition in Zelof v. Capital City Transfer, Inc., (1966), 29 Wis.2d 384, 392, 139 Wis.2d 1, that a proper record of the pretrial conference should be held and that record should include any stipulations that are agreed to by the parties. See, also, Schneck v. Mutual Service Cas. Ins. Co. (1963), 18 Wis.2d 566, 572, 119 N.W.2d 342. To avoid confusion, it is necessary that the trial court enter the pretrial order dictated by sec. 269.65(2), Stats. | A proper record of the pretrial conference should be held and that record should include any stipulations that are agreed to by the parties. W.S.A. 269.65(2). | Should a proper record of the pretrial conference be held and that record should include any stipulations that are agreed to by the parties? | Pretrial Procedure - Memo # 1676 - C - BP.docx | ROSS-003289072-ROSS-003289073 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 13024 | Sabino v. WOIO, 56 N.E.3d 368 | 237+1 | Defamation can be in the form of "defamation per se" or "defamation per quod." Defamation per se means that the defamation is accomplished by the very words spoken or written. Kanjuka v. MetroHealth Med. Ctr., 151 Ohio App.3d 183, 2002-Ohio-6803, 783 N.E.2d 920, 16 (8th Dist.), citing McCartney v. Oblates of St. Francis deSales, 80 Ohio App.3d 345, 609 N.E.2d 216 (6th Dist.1992). Defamation per quod is when a statement with an apparently innocent meaning becomes defamatory through interpretation or innuendo. Id. citing id. | Defamation can be in the form of defamation per se or defamation per quod: "defamation per se" means that the defamation is accomplished by the very words spoken or written; "defamation per quod" is when a statement with an apparently innocent meaning becomes defamatory through interpretation or innuendo. | What is defamation per se and defamation per quod? | Libel and Slander-Memo -10 - RM.docx | ROSS-003289747-ROSS-003289748 | SA, Sub | 0.41 | 0 | 0 | 1 | 1 | |
| 13025 | In re New Hampshire Youth Dev. Ctr., 152 N.H. 86 | 413+2 | "[B]ecause the right to compensation is statutory in its origin, injured workers' rights can be no greater than what the legislature has provided." P.L. Salafia, New Hampshire Workers' Compensation Manual " 1.05, at 1"5 (3d ed.2004). Though the dissent argues that the statute is ambiguous, we see no ambiguity. RSA 281"A:29 does not provide that an injured worker who is entitled to social security benefits shall not be entitled to any future adjustments; rather, RSA 281"A:29 plainly states that an "injured employee shall be entitled to an adjustment in the weekly compensation rate" except for "those injuries for which the employee is entitled to benefits under the federal Social Security Act." (Emphasis added.) We interpret this language as providing that if an injured worker is entitled to social security benefits, there is no statutory right to any entitlement under RSA 281"A:29. | Because the right to workers' compensation is statutory in its origin, injured workers' rights can be no greater than what the legislature has provided. | " Is the right to compensation statutory in origin, and can an injured workers rights be greater than what the legislature has provided?" | Workers Compensation - Memo #377 ANC.docx | ROSS-003289896-ROSS-003289897 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13026 | BITT Int'l Co. v. Fletcher, 259 Ga. App. 406 | 233+2155 | (a) The Crop Lien Foreclosure Act has certain conditions that must be satisfied for the lien to arise: (1) there must be a landlord and tenant relationship either by operation of law or by special written contract; (2) the landlord or his assignee brings the foreclosure of the lien; (3) the landlord furnished supplies, equipment, or other things necessary to make the crop to the tenant; and (4) the lien applies only to the crops raised during the year when supplies were furnished to make the crop. OCGA " 340; Parks v. Simpson, supra at 524, 52 S.E. 616; Eve v. Crowder, 59 Ga. 799, 800(2) (1877). Since the crop lien and the foreclosure of a lien are in derogation of common law, then they must be strictly construed. Jarrell v. Collins, 176 Ga. App. 368, 369(1), 336 S.E.2d 305 (1985). "Liens under OCGA " arise by operation of law and are enforced in the manner provided by OCGA " 44-14-550. OCGA " Id. at 368, 336 S.E.2d 305. Failure to follow such procedure causes the lien not to be enforceable and to be lost. Id. at 369, 336 S.E.2d 305. For the lien to arise, the landlord in his capacity as landlord must furnish the articles to the tenant as supplies or equipment to make the crop. Swann, Stewart & Co. v. Morris & Cook, 83 Ga. 143, 146, 9 S.E. 767 (1889); Scott v. Pound, 61 Ga. 579, 581 (1878). If the articles are furnished by the landlord as an agent for another or if the supplies are furnished without the tenant's consent, then no lien arises. Henderson v. Hughes, 4 Ga.App. 52, 55(1), 60 S.E. 813 (1908). Either by request of or consent by the tenant, the agent of the landlord furnishes the articles at the landlord's direction; the landlord has a lien if he was liable for the supplies furnished on his behalf to the tenant. Id. Any instrumentality furnished to the tenant, necessary to make the crop, and used by the tenant comes within supplies furnished for whicha lien attaches. Boyce v. Day, 3 Ga.App. 275, 280(2), 59 S.E. 930 (1907). | Stakes furnished by landlord for crops raised by tenant came within crop lien under Crop Lien Foreclosure Act by operation of law, though there was no agreement as to the use of the stakes in landlord's and tenant's written contract, where stakes were furnished for use in making the crop, were necessary to making the crop, and were used by tenant in making the crop. West's Ga.Code Ann. S 44-14-340(1). | What are some of the conditions that must be satisfied under the Crop Lien Foreclosure Act? | Agriculture - Memo 30 - SB.docx | ROSS-003289990-ROSS-003289991 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 13027 | Pasco v. State, 563 N.E.2d 587 | 352H+21(1) | It is well established that evidence of the slightest degree of penetration of the female sex organ by the male sex organ is sufficient to sustain a rape conviction, and such penetration can be inferred from circumstantial evidence. Brown v. State (1982), Ind., 442 N.E.2d 1109. In addition, the fact-finder may infer penetration from circumstantial evidence such as the physical condition of the victim soon after the incident. Id. | Evidence of slightest degree of penetration of female sex organ by male sex organ is sufficient to sustain rape conviction, and such penetration can be inferred from circumstantial evidence. | Can penetration be inferred from circumstantial evidence? | Sex Offence - Memo 84 - RK.docx | ROSS-003290097-ROSS-003290098 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 13028 | McDaniel v. Plumbe, 3 Greene 331 | 307A+91 | A bill of discovery is subject to equity jurisdiction only, and cannot come up for correction of error at law. So far as the record discloses the proceedings at law we can see no error in them. But it is alleged that a bill of discovery was filed by the defendant to enable him to secure evidence in support of his plea of no consideration; that the court dismissed this bill, and thereby committed error. A bill of discovery could only be entertained on the chancery side of the court; consequently, a decision upon the bill could be adjusted by appeal to this court, but could not be brought by writ of error and corrected as a proceeding at law. | A bill of discovery is subject to equity jurisdiction only, and cannot come up for correction of error at law. | Is a bill of discovery subject to equity jurisdiction only and cannot come up for a correction of error at law? | Pretrial Procedure - Memo # 4757 - C - TM.docx | ROSS-003291771-ROSS-003291772 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 13029 | Admiral Oriental Line v. United States, 86 F.2d 201 | 308+85 | An agent, compelled to defend a baseless suit, grounded upon acts performed in his principal's business, may recover from the principal the expenses of his defense. | An agent, compelled to defend a baseless suit, grounded on acts performed in his principal's business, may recover from principal expenses of his defense. | Can an Agent recover expenses of a suit? | Principal and Agent - Memo 56 - KC_60263.docx | ROSS-003291875 | Condensed, SA | 0.07 | 0 | 1 | 0 | 1 | |
| 13030 | United States v. Madeoy, 912 F.2d 1486 | 63+13 | Nothing in the Supreme Court's decision in Dixson remotely supports this reasoning. The Court did not address the procedure used by the district court, and it never referred to the jury's determination or suggested that it was reviewing the "evidence" for the proposition that the defendants were public officials. On the contrary, the Court reached its conclusion through an exercise in statutory interpretation, which conclusively shows that this is not a question for the jury. For example, it considered the nature of the defendants' positions in relation to Congress's intent, as evidenced by the legislative history of the federal bribery statute. Id. at 496"98, 104 S.Ct. at 1179"80. Therefore, we hold that whether an individual is a public official within the meaning of the statute is a question of law, and as such, a matter for judicial resolution, see Caldwell v. United States, 218 F.2d 370, 372 (D.C.Cir.1954). | Whether individual is public official within meaning of bribery statute is question of law. 18 U.S.C.A. S 201(a)(1). | Is the question of whether someone is a public official within the meaning of the bribery statute a question of law or fact? | Bribery - Memo #675 - C - LB_57722.docx | ROSS-003291899-ROSS-003291901 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13031 | Neff v. Brady, 527 S.W.3d 511 | 302+228.14 | The purpose of special exceptions is to compel clarification of a pleading that fails to plead a cause of action or is not clear or sufficiently specific. Sonnichsen, 221 S.W.3d at 635. A special exception should confine itself to pointing out defects in the other party's pleading that should be remedied before a substantive response is required. O'Neal v. Sherck Equip. Co., 751 S.W.2d 559, 562 (Tex. App."Texarkana 1988, no pet.). The exception cannot inject factual allegations that do not appear in the pleading. Augustine By Augustine v. Nusom, 671 S.W.2d 112 (Tex. App."Houston [14th Dist.] 1984, writ ref'd n.r.e.). An allegation of release constitutes an affirmative defense. See Tex. R. Civ. P. 94. Affirmative defenses are matters of avoidance that must be proven at the trial of the case and are not properly raised as special exceptions. See Simulis, L.L.C. v. Gen. Elec. Capital Corp., 392 S.W.3d 729, 735 n.7 (Tex. App."Houston [14th Dist.] 2011, pet. denied); Villarreal v. Martinez, 834 S.W.2d 450, 452 (Tex. App."Corpus Christi 1992, no pet.); O'Neal, 751 S.W.2d at 562 (defense of release not properly raised by special exception); Interfirst Bank San Antonio N.A. v. Murry, 740 S.W.2d 550, 551 (Tex. App."San Antonio 1987, no pet.). | The purpose of special exceptions is to compel clarification of a pleading that fails to plead a cause of action or is not clear or sufficiently specific. | Is the purpose of special exceptions to compel clarification of a pleading? | Pleading - Memo 457 - RMM_58005.docx | ROSS-003293178-ROSS-003293179 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 13032 | Stern v. First Nat. Bank of S. Miami, 275 So. 2d 58 | 307A+561.1 | Neither was it envisioned that the rule would allow a motion to dismiss to supplement a complaint with additional facts, in order to render the complaint legally insufficient. Stone v. Stone, Fla.App.1957, 97 So.2d 352. However, this rule has been relaxed to allow a motion to dismiss based on an affirmative defense when the grounds therefore appear "on the face" of a prior pleading. R.C.P. 1.110(d). | A motion to dismiss may be based on an affirmative defense when grounds therefore appear on the face of a prior pleading. 30 F.S.A. Rules of Civil Procedure, rules 1.110(d), 1.140(b). | When a motion to dismiss is allowed based on an affirmative defense? | Pretrial Procedure - Memo 11152 - C - KG_64365.docx | ROSS-003293659 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13033 | State ex rel. Arn v. State Comm'n of Revenue & Taxation, 163 Kan. 240 | 200+99 | And in 40 C.J.S., Highways, " 177, p. 25, it is said:"The construction and repair of public roads is a governmental function which may be exercised by the state or delegated to state or local agencies or bodies, ***." Other authorities on highways are to the same effect. | The construction and repair of public roads is a "governmental function" which may be exercised by the state or delegated to state or local agencies. | Is constructing and repairing the public roads and highways a governmental function? | Highways - Memo 454 - RK_66354.docx | ROSS-003295092-ROSS-003295093 | Condensed, SA | 0.44 | 0 | 1 | 0 | 1 | |
| 13034 | Ready v. United/Goedecke Servs., 393 Ill. App. 3d 56 | 307A+3 | The trial court's ruling on evidentiary motions such as motions in limine are left to the court's discretion and will not be disturbed on appeal absent an abuse of that discretion. In re Leona W., 228 Ill.2d 439, 460, 320 Ill.Dec. 855, 888 N.E.2d 72 (2008). | Court's ruling on evidentiary motions such as motions in limine are left to the court's discretion and will not be disturbed on appeal absent an abuse of that discretion. | "Are rulings on evidence motions, such as motions in limine, left undisturbed on review absent an abuse of discretion? " | Pretrial Procedure - Memo # 586 - C - SSB.docx | ROSS-003295577-ROSS-003295578 | Condensed, SA | 0.34 | 0 | 1 | 0 | 1 | |
| 13035 | Cady v. Bay City Land Co., 102 Or. 5 | 83E+431 | A leading case on the other side of the question is Hendrix v. Bauhard, 138 Ga. 473, 75 S. E. 588, 43 L. R. A. (N. S.) 1028, Ann. Cas. 1913D, 688, which holds that a payee, indorsing a guaranty on the note for the purpose of negotiating the same, becomes an indorser with enlarged liability. In Baldwin Fertilizer Co. v. Carmichael, 116 Ga. 762, 46 S. E. 1002, it was held that, where a payee writes on the back of a note a transfer of the same to a specified indorsee, coupled with his guaranty of payment, he is to be held as an indorser. It is stated in Voss v. Chamberlain, 139 Iowa, 569, 117 N. W. 269, 19 L. R. A. (N. S.) 106, 130 Am. St. Rep. 331, that- "The indorsement by the payee of a note, of his name under a guaranty of payment, combined with a waiver of demand, notice, and protest, constitutes a blank indorsement, so as to pass title to one who takes the paper in due course for value." | Since one who writes his name on the back of a negotiable instrument may enlarge or restrict his liability without destroying his character as an indorser, a writing by the payee on the back of a promissory note, "Notice of protest waived and payment guaranteed," passed title to his assignee; such guaranty of payment being equivalent to an indorsement, and the rights of the parties, in view of Or.L. S 7910, ORS 71.118, requiring protest only in case of foreign bills of exchange, not being affected by such waiver of notice. | "Are indorsements with waiver of notice, demand and protest capable of passing title?" | Bills and Notes-Memo 984-IS_58955.docx | ROSS-003295753-ROSS-003295754 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 13036 | Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd., 259 S.W.3d 140 | 366+26 | The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing. Texas courts interpret this doctrine liberally. Although the doctrine most often arises in the insurance context, equitable subrogation applies "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Thus, a party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief. | Equitable subrogation applies in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. | Does the doctrine of equitable subrogation most often arise in the context of insurance? | Subrogation - Memo 158 - ANG C.docx | ROSS-003295953-ROSS-003295954 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 13037 | Beharry v. Reno, 183 F. Supp. 2d 584 | 221+109 | United States courts may not ignore the precepts of customary international law. See, e.g., Charming Betsy, 6 U.S. at 118, 2 Cranch 64; The Paquete Habana, 175 U.S. 677, 694"700, 20 S.Ct. 290, 297"300, 44 L.Ed. 320, 326"29 (1900); The Nereide, 13 U.S. (9 Cranch) 388, 423, 3 L.Ed. 769, 780 (1815) ; Filartiga, 630 F.2d at 881; Mojica, 970 F.Supp. at 146"52; Maria, 68 F.Supp.2d at 233"35.This concept has been most clearly embodied in admiralty cases, where domestic law may directly clash with customary international law. The Supreme Court has long recognized the principle that in admiralty United States courts are "bound by the law of nations, which is part of the law of the land." The Neriede, 13 U.S. at 423, 9 Cranch 388 (1815). See also The Paquete Habana, 175 U.S. 677, 700, 20 S.Ct. 290, 44 L.Ed. 320 (federal courts are to apply the law of nations as federal law). In general, customary international law has the same status as domestic legislation. Restatement (Third) of Foreign Relations Law " 701 cmt. e ("The United States is bound by the international customary law of human rights."); cf. Kadic v. Karadzic, 70 F.3d 232 (2d Cir.1995) (finding violation of customary international human rights law in war atrocities in Bosnia conflict). | In general, customary international law has the same status as domestic legislation. Restatement (Third) of Foreign Relations Law S 701 comment. | Does customary international law have the same status as domestic legislation? | International Law - Memo 476 - TH.docx | ROSS-003297798-ROSS-003297799 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13038 | In re Houston, 409 B.R. 799 | 366+1 | Subrogation has been allowed in South Carolina cases only upon fact intensive inquiry and a balancing of equity. Only a handful of the equitable subrogation cases deal with mortgages and judgments and none discuss the doctrine in connection with the rights of a bona fide purchaser of real property. The relevant South Carolina cases allow subrogation cutting off the rights of other creditors, never a bona fide purchaser; and in the case of creditors only when the original expectation and priority of the creditor vis-"-vis the collateral is not changed by allowing equitable subrogation. See Kuznik v. Bees Ferry Assoc., 342 S.C. 579, 538 S.E.2d 15 (S.C.App.2000) (reversing the decision of a Master"in"Equity granting reimbursement under the doctrine of equitable subrogation when the underlying obligation was a nonrecourse note); Dodge City of Spartanburg, Inc. v. Jones, 317 S.C. 491, 454 S.E.2d 918 (S.C.App.1995) (finding equitable subrogation appropriate when creditor's original expectations are preserved); United Carolina Bank v. Caroprop, Ltd., 316 S.C. 1, 446 S.E.2d 415 (1994) (finding that no injustice is imposed in allowing equitable subrogation when creditor's original expectations are preserved); Dedes v. Strickland, 307 S.C. 155, 414 S.E.2d 134 (1992) (finding that a creditor is not entitled to equitable subrogation where they were not mislead as to the existence of a subsequent mortgage). See also First Carolinas Joint Stock Land Bank of Columbia v. DuBose, 181 S.C. 40, 186 S.E. 514 (1936); South Carolina Ins. Co. v. Kohn, 108 S.C. 475, 95 S.E. 65 (1918). | Subrogation is allowed under South Carolina law only upon fact intensive inquiry and a balancing of equity. | Is subrogation allowed only upon fact intensive inquiry and a balancing of equity? | Subrogation - Memo # 405 - C - SA.docx | ROSS-003299438-ROSS-003299439 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13039 | Murphy v. Colorado Aviation, 41 Colo. App. 237 | 307A+749.1 | Trial courts have broad discretion in allowing deviations from the terms of pretrial orders entered under C.R.C.P. 16. See In Re the Estate of Gardner, 31 Colo.App. 361, 505 P.2d 50 (1972); and Francisco v. Cascade Investment Co., 29 Colo.App. 516, 486 P.2d 447 (1971). It is not an abuse of discretion for the trial court to allow a witness who is not endorsed on the pretrial statement to testify, especially, where, as here, defendant had knowledge of the witness and was given an opportunity to, and, did depose the witness before he testified. To hold otherwise would be to treat pretrial orders as straitjackets, the bonds of which must never be loosened. Of necessity trial courts may modify such orders to prevent manifest injustice. Ferguson v. Hurford, 132 Colo. 507, 290 P.2d 229 (1955). And, appellate interference with the trial court in this area must be kept at a minimum. Glisan v. Kurth, 153 Colo. 102, 384 P.2d 946 (1963). | Trial court had broad discretion in allowing deviations from terms of pretrial orders. Rules of Civil Procedure, rule 16. | Does a trial court have broad discretion in allowing deviations from the terms of pretrial orders? | Pretrial Procedure - Memo # 2305 - C - NS.docx | ROSS-003300025-ROSS-003300026 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 13040 | Green v. Hill, 954 F.2d 694 | 413+1 | The Federal Employees' Compensation Act (FECA) provides "compensation ...for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty." Recovery under FECA for a covered injury is exclusive, and an employee cannot further recover against the United States for the same injury under the FTCA or otherwise. The FECA covers liability created both by negligent and intentional acts on thepart of the Government. If Hill allegedly assaulted Green while performing his duties as Green's supervisor, the FECA would provide Green recovery for his damages. | Federal Employees' Compensation Act covers liability created both by negligent and intentional acts on part of government. 5 U.S.C.A. SS 8102, 8116(c). | Does the employee's compensation act cover liability created both by negligent an intentional acts on the part of government? | Workers Compensation - Memo #107 ANC.docx | ROSS-003301324-ROSS-003301325 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 13041 | In re Trampush, 552 B.R. 817 | 366+1 | Subrogation is an equitable doctrine intended to "avoid unjust enrichment, and may properly be applied whenever a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." Rock River Lumber Corp. v. Universal Mortg. Corp., 82 Wis.2d 235, 262 N.W.2d 114, 116 (1978). Equitable subrogation for advances made to a debtor depends on one of three conditions: (1) the lender was secondarily liable, (2) the lender loaned money to protect his own interests, or (3) there was an agreement that the lender was to have security on the debt. at 117. Subrogation is applied or denied on equitable principles. The object is to do "substantial justice independent of form or contract relation between the parties." | Under Wisconsin law, the object of subrogation is to do substantial justice independent of form or contract relation between the parties. | Is the object of subrogation to do substantial justice independent of form or contract relation between the parties? | Subrogation - Memo # 536 - ANG C.docx | ROSS-003301462-ROSS-003301463 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 13042 | Fed. Land Bank of Baltimore v. Joynes, 179 Va. 394 | 366+1 | Subrogation is the substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt. This doctrine is not dependent upon contract, nor upon privity between the parties; it is the creature of equity, and is founded upon principles of natural justice. See Hudson v. Dismukes, 77 Va. 242, 246. It was first applied only in the case of sureties, but through a process of liberalization its scope of application has been enlarged. | "Subrogation" is the substitution of another person in the place of the creditor to whose right he succeeds in relation to the debt, and the doctrine of subrogation is not dependent upon contract nor upon privity between the parties, but rather it is the creature of equity and is founded upon principles of natural justice. | Is subrogation an equitable remedy which substitutes another person or entity in the place of the creditor whose claim was satisfied? | Subrogation - Memo 397 - RM C.docx | ROSS-003308844-ROSS-003308846 | SA, Sub | 0.31 | 0 | 0 | 1 | 1 | |
| 13043 | In re Commitment of Kelley, 2012 IL App (1st) 110240 | 307A+3 | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. People v. Nelson, 235 Ill.2d 386, 420, 337 Ill.Dec. 479, 922 N.E.2d 1056 (2009). An abuse of discretion occurs only when the trial court's ruling is "arbitrary, fanciful, or unreasonable or where no reasonable [person] would take the view adopted by the trial court." (Internal quotation marks omitted.) People v. Santos, 211 Ill.2d 395, 401, 286 Ill.Dec. 102, 813 N.E.2d 159 (2004). | A ruling on a motion in limine is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion. | Is a ruling on a motion in limine reversed absent an abuse of that discretion? | Pretrial Procedure - Memo # 574 - C - SSB.docx | ROSS-003311835-ROSS-003311836 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 13044 | Weitz Co. v. Lexington Ins. Co., 982 F. Supp. 2d 975 | 366+1 | Subrogation is grounded on "principles of natural equity" and its purpose is to "prevent injustice." State, Dept. of Human Services ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 156 (Iowa 2001). Without the doctrine, a person who is secondarily liable would not have a cause of action against the unjustly enriched party. Id. "Thus, the rationale for subrogation is "bottomed on a sensitivity to the comparative equities involved." " Id. Equitable subrogation "will never be enforced, when doing so would be inequitable, or where it would work injustice to others having equal equities." Am. Sur. Co. of New York v. State Trust & Sav. Bank of Mt. Pleasant, 218 Iowa 1, 254 N.W. 338, 340 (1934). Importantly, one that is primarily liable for a debt cannot receive equitable subrogation. In re Hagen, 147 B.R. at 168. | Under Iowa law, equitable subrogation will never be enforced when doing so would be inequitable, or where it would work injustice to others having equal equities. | Will equitable subrogation be enforced when it would work injustice to rights of those having equities? | Subrogation - Memo 294 - RM C.docx | ROSS-003312223-ROSS-003312224 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13045 | Todd W. Musburger, Ltd. v. Meier, 394 Ill. App. 3d 781 | 307A+3 | To the extent that defendant argues that his expert should have been allowed to offer an opinion that defendant had previously paid for the work at issue would have invaded the province of the trial court, which decides legal issues. We cannot say that the trial court's in limine ruling precluding that testimony was an abuse of discretion. Motions in limine are designed to produce a trial without the introduction of prejudicial material. Konieczny v. Kamin Builders, Inc., 304 Ill.App.3d 131, 136, 237 Ill.Dec. 440, 709 N.E.2d 695 (1999). On appellate review, a trial court maintains broad discretion in the admission of evidence and in ruling upon a motion in limine Green v. Union Pacific R.R. Co., 269 Ill.App.3d 1075, 1082, 207 Ill.Dec. 599, 647 N.E.2d 1092 (1995). A trial court's decision on a motion in limine will not be disturbed absent an abuse of discretion. Hallowell v. University of Chicago Hospital, 334 Ill.App.3d 206, 210, 267 Ill.Dec. 632, 777 N.E.2d 435 (2002). Because the evidence at trial, including the testimony of defendant, showed that plaintiff would have been entitled to a commission on a new contract had a contract been reached between defendant and WLS in 2003 or 2004, there was also no basis for defendant's expert to offer an opinion that plaintiff had previously been paid for the work performed toward that goal. "An expert's opinion is only as valid as the basis and reasons for the opinion." Wilson v. Bell Fuels, Inc., 214 Ill.App.3d 868, 875, 158 Ill.Dec. 406, 574 N.E.2d 200 (1991), citing McCormick v. Maplehurst Winter Sports, Ltd., 166 Ill.App.3d 93, 100, 116 Ill.Dec. 577, 519 N.E.2d 469 (1988). Expert opinions lacking a sufficient factual basis are properly barred. See Torres v. Midwest Development Co., 383 Ill.App.3d 20, 28"31, 321 Ill.Dec. 389, 889 N.E.2d 654 (2008). Having found that Maksym's opinion that plaintiff had been previously paid for the work performed in 2002 and 2003 lacked a factual basis, we again cannot say that the trial court abused its | Motions in limine are designed to produce a trial without the introduction of prejudicial material. | Are motions in limine designed to produce a trial without the introduction of prejudicial material? | Pretrial Procedure - Memo # 217 - C - CRB.docx | ROSS-003316049-ROSS-003316050 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 13046 | Application of Kaul, 261 Kan. 755 | 371+2003 | There are well-established rules of statutory and constitutional construction applicable to tax matters: The power to levy taxes is inherent in the power to govern, but the exercise of that power is dependent upon the existence of legislation designating the kinds of property to be taxed. Nothing is taxable unless clearly within the grant of the power to tax. Robbins"Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank & Trust Co., 229 Kan. 511, 512, 625 P.2d 494 (1981). The right to tax is penal in nature, and this right must be strictly construed in favor of the taxpayer. See J.G. Masonry, Inc. v. Department of Revenue, 235 Kan. 497, 500, 680 P.2d 291 (1984). Tax statutes will not be extended by implication beyond the clear import of the language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced. Director of Taxation v. Kansas Krude Oil Reclaiming Co., 236 Kan. 450, 455, 691 P.2d 1303 (1984). Where there is reasonable doubt as to the meaning of a taxing act, it will be construed most favorably to the taxpayer. National Cooperative Refinery Ass'n v. Board of McPherson County Comm'rs, 228 Kan. 595, 597, 618 P.2d 1176 (1980). | Power to levy taxes is inherent in power to govern, but exercise of that power is dependent upon existence of legislation designating kinds of property to be taxed. | Is the power to levy taxes inherent in the power to govern? | Taxation - Memo # 724 - C - SJ.docx | ROSS-003317112-ROSS-003317113 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13047 | In re McCabe Grp., 424 B.R. 1 | 366+1 | Ultimately, equitable subrogation "is "a broad equitable remedy" and, depending on the individual case, it may apply even where one or more of these factors is absent." Nonetheless, equitable subrogation exists to prevent an unwarranted windfalls and "[d]uplicative recover[ies] [are] "a result which the law has never looked upon with favor."" Indeed, the Supreme Judicial Court noted that in applying Massachusetts subrogation theory, the United States Court of Appeals for the First Circuit "termed [it] to be one of "unjust enrichment" because of the importance ... placed on balancing the interests of all [parties]." | Under Massachusetts law, equitable subrogation exists to prevent unwarranted windfalls, because duplicative recoveries are a result which the law has never looked upon with favor. | Does equitable subrogation exist to prevent unwarranted windfalls? | Subrogation - Memo 212 - RM C.docx | ROSS-003324200-ROSS-003324201 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 13048 | Gen. Motors Corp. v. Pamela Equities Corp., 146 F.3d 242 | 25T+119 | Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard. Rodolphe J.A. de Seife, Practice Guide " 3.02, in Gabriel M. Wilner, 2 Domke On Commercial Arbitration (Rev. ed. 1997) (citing Black's Law Dictionary (5th ed. 1979); The Plain Language Law Dictionary (Rothenberg, ed. 1981); Dictionary of Law (Coughlin, ed. 1982); Britton, The Arbitration Guide, (1982)). See also La.Civ.Code art. 3099. Parties may agree to the submission to arbitration of existing controversies without any previous contract to do so. Executone Info. Systems, Inc. v. Davis, 26 F.3d 1314, 1323 (5th Cir.1994). Parties may also agree upon the use of arbitration at the commencement of a contractual relationship to settle future disputes by including an arbitration clause in their contract. 1 Domke, supra " 1:01, at 2. | Parties may agree to the submission to arbitration of existing controversies without any previous contract to do so. | Can parties agree to arbitrate existing controversies without any previous contract to do so? | Alternative Dispute Resolution - Memo 344 - RK.docx | ROSS-003325030-ROSS-003325031 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 13049 | Davidson v. Bugbee, 227 Mich. App. 264 | 13+61 | The period of limitation applicable to this action is six years from the date the cause of action accrued. M.C.L. " 600.5813; M.S.A. " 27A.5813. "A cause of action accrues when all the elements of the claim have occurred and can be alleged in a proper complaint."" Lumley v. Regents for the Univ. of Michigan, 215 Mich.App. 125, 130, 544 N.W.2d 692 (1996). A cause of action for conversion accrues when dominion is wrongfully asserted over another's personal property. Miller v. Green, 37 Mich.App. 132, 138, 194 N.W.2d 491 (1971). | Cause of action accrues when all the elements of claim have occurred and can be alleged in proper complaint. | Does a cause of action accrue when all the elements of claim have occurred and can be alleged in proper complaint? | Action - Memo # 155 - C CS.docx | ROSS-003325232-ROSS-003325233 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13050 | McCabe v. Braunstein, 439 B.R. 1 | 366+1 | As described more fully below, the subrogation claim arose when the claim for the underlying debt arose. "Equitable subrogation occurs where one party, by virtue of its payment of another's obligation, steps into the shoes of the party who was owed the obligation for purposes of getting recompense for its payment." In re N. Am. Rubber Thread Co., 333 B.R. 164, 168 (Bankr.D.Mass.2005). By stepping into the shoes of the subrogor, the subrogee is bound by the timing of the original claim, the date upon which it arose and the date upon which it expires under a statute of limitations. See United States v. California, 507 U.S. 746, 756, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993) (recognizing that if a subrogor's rights are barred, so too are a subrogee's rights because a subrogee "cannot acquire by subrogation what another whose rights he claims did not have." (internal quotation marks omitted)). The equitable subrogation claim here is based on a claim to enforce a note against Holdings, Edwin McCabe, and Karren McCabe; this claim was ripe by at least April 2003 when a lawsuit was filed to enforce the note. The claim to enforce the note arose entirely outside of the bankruptcy proceeding, and thus, it is a non-core proceeding. | "Equitable subrogation" occurs, under Massachusetts law, where one party, by virtue of its payment of another's obligation, steps into the shoes of the party who was owed the obligation for purposes of getting recompense for its payment. | When does equitable subrogation occur? | Subrogation - Memo 175 - ANG C.docx | ROSS-003325521-ROSS-003325523 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13051 | Mujica v. Occidental Petroleum Corp., 381 F. Supp. 2d 1164 | 221+387 | "When applying the Sabbatino test, the party asserting the applicability of the act of state doctrine bears the burden of proof." National Coalition Government of the Union of Burma v. Unocal, Inc., 176 F.R.D. 329, 350 (C.D.Cal.1997) ("NCGUB "). | Party asserting applicability of act of state doctrine bears burden of proof. | Does the party asserting applicability of act of state doctrine bear the burden of proof? | International Law - Memo # 199 - C - MLS.docx | ROSS-003329277-ROSS-003329278 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 13052 | Roth v. First Nat. State Bank of New Jersey, 169 N.J. Super. 280 | 172H+1697 | It must be conceded that there is a generally recognized obligation of confidentiality in respect of a depositor's financial relationship with a bank. 10 Am.Jur.2d, Banks, s 332 at 295; 5A Michie, Banks and Banking, (1973) c. 9, s 1 at 18 (1973) ("Deposits"); Peterson v. Idaho First Nat'l Bank, 83 Idaho 578, 367 P.2d 284 (Sup.Ct.1961); Cf. Commercial Union Ins. Co. v. Burt-Thomas-Aitken Constr. Co., 49 N.J. 389, 230 A.2d 498 (1967). If Walker's conduct could be regarded as within the scope of her employment, there might well be a case of liability. But a thorough consideration of the law, in the light of the facts at hand, satisfies us that Walker's act was not within the scope of her employment. | There is a generally recognized obligation of confidentiality in respect of a depositor's financial relationship with a bank. | Is there a recognized obligation of confidentiality in respect of a depositor's financial relationship with a bank? | 000106.docx | LEGALEASE-00115391-LEGALEASE-00115393 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13053 | Montgomery v. Keppel, 75 Cal. 128 | 277+1 | The plaintiff brought this action to foreclose a mortgage against the mortgagor, Garret Keppel, and the Spring Valley Mining & Irrigating Company. Other persons were made parties, which need not be here especially mentioned. As to all these defendants, except Keppel, the general allegation is made that they have, or claim to have, some interest in or claim upon said lands, or some part thereof, as purchasers, mortgagees, judgment creditors, or otherwise, which interests or claims are subsequent to and subject to the lien of plaintiff's mortgage. The defendant corporation above named set up a mortgage upon a portion of the land covered by the plaintiff's mortgage executed by Keppel to it; and which of these mortgages was prior in right, as appears from the transcript, was the principal question tried and determined by the court. It appears from the findings of fact that the mortgage to the corporation defendant was executed on the 22d day of November, 1883, acknowledged by the mortgagor on the same day, and filed for record in the office of the county recorder of Butte county (where the mortgaged property was situate) at 10:25 o'clock on the 26th day of November, 1883. It further appears that the land mortgaged to the corporation was conveyed by it to the common mortgagor on the same day on which the mortgagor executed to the defendant above named, the mortgage just mentioned; that the mortgage was executed to secure to the defendant a part of the purchase money of the said land, the other portion having been paid by Keppel, the purchaser, in cash prior to the delivery of the conveyance to him by the defendant; that on the 24th of November, 1883, the deed of conveyance of the land sold to Keppel was delivered to him by defendant, and was recorded in the proper office in Butte County, on the 26th day of November, 1883. The mortgage to plaintiff was executed on the 22d of November1883, and was recorded in the proper | Having readily accessible means of acquiring knowledge of a fact, which he might have ascertained by inquiry, is equivalent to notice and knowledge of it. | Is readily accessible means of knowledge the equivalent to notice? | Notice - Memo 13 - VP.doc | ROSS-003287298-ROSS-003287299 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 13054 | Gilling v. E. Airlines, 680 F. Supp. 169 | 25T+111 | In order for the compulsory arbitration program to function properly, it is essential that the parties participate in a meaningful manner. This is particularly so in a case such as this in which one of the parties is a substantial corporation and the other party is one or more individuals. The purposes of the arbitration program are to provide the parties with a quick and inexpensive means of resolving their dispute while, at the same time, reducing the court's caseload. | Purpose of arbitration programs are to provide parties with quick and inexpensive means of resolving their disputes while, at the same time, reducing court's case load, and explicit in arbitration program is need for parties to participate in good faith, so that failure to do so warrants appropriate sanctions by court. | Does arbitration help the courts in reducing the workload? | Alternative Dispute Resolution - Memo 30 - JS.docx | LEGALEASE-00000349-LEGALEASE-00000351 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 13055 | Erving v. Virginia Squires Basketball Club, 468 F.2d 1064 | 25T+110 | The claim that Judge Neaher had no power to direct the substitution of a neutral arbitrator for the disqualified Commissioner of the American Basketball Association is typical of other attempts to emasculate arbitration procedures under the federal act. We must bear in mind that here, as we later hold, we are applying federal law (Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra), and that thefederal law is to be implemented in such a way as to make the arbitration effective and not to erect technical and unsubstantial barriers such as were the mode in the early days when arbitration was viewed by many courts with suspicion and hostility. | Where federal law is applicable, it should be implemented in such way as to make arbitration effective and not to erect technical and unsubstantial barriers. 9 U.S.C.A. S 1 et seq. | How can federal law be implemented to make arbitration effective? | Alternative Dispute Resolution - Memo 8 - JS.docx | ROSS-003284154-ROSS-003284156 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13056 | Frierson v. Watson, 371 S.C. 60 | 277+12 | Notice of a deed is notice of its entire contents and whatever matters one would have learned upon the inquiry that the instrument made it one's duty to pursue.Binkley, 348 S.C. at 71, 558 S.E.2d at 909. Further, "where a deed describes land as is shown as a certain plat, such becomes a part of the deed." Carolina Land Co. v. Bland, 265 S.C. 98, 105, 217 S.E.2d 16, 19 (1975). The law imputes to a purchaser of real property notice of the recitals contained in the written instruments forming the purchaser's chain of title and charges him with the duty of making such reasonable inquiry and investigation as is suggested by the recitals and references therein contained. McDonald v. Welborn, 220 S.C. 10, 16, 66 S.E.2d 327, 330 (1951); LoPresti v. Burry, 364 S.C. 271, 276, 612 S.E.2d 730, 732-33 (Ct.App.2005); see also S. Ry., Carolina Div. v. Howell, 79 S.C. 281, 286, 60 S.E. 677, 679 (1908) (finding the equivalence of notice in circumstances where one has knowledge of such facts as were sufficient to put one on inquiry, which if pursued with due diligence, would have led to the knowledge of one's rights). | Notice of a deed is notice of its entire contents, and notice of whatever matters one would have learned upon the inquiry that the instrument made it one's duty to pursue. | What does a notice of a deed provide under law? | 003839.docx | LEGALEASE-00115801-LEGALEASE-00115802 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13057 | Hardy v. Smith, 148 So. 3d 64 | 20+11 | The Smiths also argue that Hardy could not "tack" the period of her possession of the disputed property onto their period of possession to meet the statutory period for adverse possession because, they say, they did not intend to adversely possess the disputed property."Another essential element of adverse possession relates to the claimant's intent to assert dominion and control over the disputed property. Reynolds v. Rutland, 365 So.2d 656 (Ala.1978). The Reynolds court emphasized, however, that although "intent to claim the disputed strip is required, there is no requirement that the intent be to claim property of another, as such a rule would make adverse possession dependent upon bad faith. Possession is hostile when the possessor holds and claims property as his own, whether by mistake or willfully. Smith v. Brown, [282 Ala. 528, 213 So.2d 374 (1968) ]." Id. at 657"58."Strickland v. Markos, 566 So.2d 229, 233 (Ala.1990). | An essential element of adverse possession relates to the claimant's intent to assert dominion and control over the disputed property. | Is the element of intention essential to prove adverse possession? | 003861.docx | LEGALEASE-00115853-LEGALEASE-00115854 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13058 | In re Flamingo 55, 378 B.R. 893 | 309+6 | There are several problems with this argument, but the main, and conclusive, objection is that BA was not, and is not, a surety or guarantor, a necessary predicate for the application of Section 2848. Under California law, a surety is the same as a guarantor, and "[a] surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor." Cal. Civil Code " 2787.19 Here, as explained above, the debt was BA's as much as it was Flamingo 55's. Through the intercession of Senior Care (as manipulated by Phelan and his confederates), BA became directly liable to Datacom on the debt with Flamingo 55, and thus did not promise to "answer for the debt, default, or miscarriage of another." BA had agreed to make the debt to Datacom its own. The record is devoid of any indication that, at the time BA incurred the obligation, that there was any agreement or understanding that Flamingo 55's obligation was primary, or that Flamingo 55 alone should bear any risk of loss. See, e.g., Mead v. Sanwa Bank Cal., 71 Cal.Rptr.2d 625, 630"632, 61 Cal.App.4th 561, 569"572 (4th App.Dist.1998) (charting history in California of rule that if creditor knew party was acting as surety, then creditor was bound to treat party as surety). As a result, relief under Section 2848 is not available. | Under California law, a surety is the same as a guarantor, and a "surety" or "guarantor" is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor. West's Ann.Cal.Civ.Code S 2787. | How is a surety similar to a guarantor? | 003953.docx | LEGALEASE-00115886-LEGALEASE-00115887 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13059 | Unified Sch. Dist. No. 500, Wyandotte Cty. v. Turk, 219 Kan. 655 | 277+12 | It has been generally held that by force of statute, service may be effective when the notice is properly mailed, regardless of its receipt by the addressee. In such cases, the risk of miscarriage or failure to deliver is on the addressee. (66 C.J.S. Notice, p. 644.) The rule is stated in 58 Am.Jur.2d, Notice, s 7, p. 490, as follows:"Where there is a statuory provision for constructive notice, it has the same effect as actual notice, and binds equally, regardless of whether actual information thereof came to the party to be charged. . .."See, also, Id., s 2, p. 491. | Where there is a statutory provision for constructive notice, it has the same effect as actual notice and binds equally, regardless of whether actual information thereof came to the party to be charged. K.S.A. 26-503, 26-505, 26-506. | Does constructive notice have the same effect as actual notice? | 003963.docx | LEGALEASE-00115968-LEGALEASE-00115969 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 13060 | Farnsworth v. Towboat Nantucket Sound, 790 F.3d 90 | 25T+114 | The Federal Arbitration Act (FAA), 9 U.S.C. " 1 et seq., "reflects the fundamental principle that arbitration is a matter of contract." Rent"A"Center, W., Inc. v. Jackson, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). Under the FAA, courts must treat arbitration agreements in the same way as other contracts and "enforce them according to their terms." Id. Section 2 of the Act provides in relevant part as follows: A written provision in any maritime transaction or a contract ... to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. | Under the Federal Arbitration Act (FAA), courts must treat arbitration agreements in the same way as other contracts and enforce them according to their terms. 9 U.S.C.A. S 1 et seq. | What is the fundamental principal of Federal Arbitration Act (FAA)? | Alternative Dispute Resolution - Memo 50-JS.docx | ROSS-003283557-ROSS-003283558 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 13061 | In re Marriage of McTiernan & Dubrow, 133 Cal. App. 4th 1090 | 315+36 | Since every kind of property that is not real is personal (Civ.Code, " 663), the property interest in this case, if it exists, must be personal. Personal property may be incorporeal (King v. Goetz (1886) 70 Cal. 236, 240, 11 P. 656), i.e., without tangible substance, and it may be intangible in the sense that it is a right rather than a physical object. (Navistar Internat. Transportation Corp. v. State Bd. of Equalization (1994) 8 Cal.4th 868, 875, 35 Cal.Rptr.2d 651, 884 P.2d 108.) But, even if incorporeal or intangible, property must be capable of being transferred. "[I]t is a fundamental principle of law that one of the chief incidents of ownership in property is the right to transfer it." (Bias v. Ohio Farmers Indemnity Co. (1938) 28 Cal.App.2d 14, 16, 81 P.2d 1057.) "A common characteristic of a property right, is that it may be disposed of, transferred to another." (Douglas Aircraft Co. v. Byram (1943) 57 Cal.App.2d 311, 317, 134 P.2d 15.) | Personal property may be incorporeal, i.e., without tangible substance, and it may be intangible in the sense that it is a right rather than a physical object. West's Ann.Cal.Civ.Code S 663. | Can personal property be incorporeal? | Property - Memo 1 - ANG.docx | ROSS-003297186-ROSS-003297187 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13062 | Simmons Foods v. H. Mahmood J. Al-Bunnia & Sons Co., 634 F.3d 466 | 25T+112 | Under the Federal Arbitration Act, 9 U.S.C. "" 1"16, "A dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement." Lyster, 239 F.3d at 945 (citations omitted). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. However, a party who has not agreed to arbitrate a dispute cannot be forced to do so." Id. (citations and quotation marks omitted). | Order to arbitrate grievance should not be denied unless it may be said with positive assurance that arbitration clause is not susceptible of interpretation that covers asserted dispute; however, party who has not agreed to arbitrate dispute cannot be forced to do so. 9 U.S.C.A. SS 1-16. | When is a dispute submitted to arbitration? | 003737.docx | LEGALEASE-00116100-LEGALEASE-00116101 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 13063 | Barclaysamerican Corp. v. Kane, 746 F.2d 653 | 170A+1604(1) | The party seeking to assert the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is applicable. See In re Grand Jury Proceedings (Dorokee Co.), 697 F.2d 277, 279 (10th Cir.1983) (burden on party asserting a privilege); United States v. Bump, 605 F.2d 548, 551 (10th Cir.1979) (burden is on party asserting that communication is protected by attorney-client privilege); Feldman v. Pioneer Petroleum, Inc., 87 F.R.D. 86, 88 (W.D.Okla.1980) (party objecting to discovery has burden of establishing that information sought is protected by work product doctrine). In determining whether the documents at issue were privileged, the trial court had only a privilege log with which to make its decision. The burden was on petitioners to establish that a privilege clearly applied so that the right to the writ is clear and indisputable. The showing of the extraordinary circumstances required for a writ is not made. | Party seeking to assert attorney-client privilege or a work product doctrine as a bar to discovery has burden of establishing that either or both is applicable. | Who has the burden of demonstrating that the privilege is applicable? | 07120.docx | LEGALEASE-00089146-LEGALEASE-00089147 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13064 | Catlin (Syndicate 2003) at Lloyd's v. San Juan Towing & Marine Services, 946 F. Supp. 2d 256 | 16+10(4) | Courts have consistently required that, for an insurance policy to constitute a maritime contract, the interest(s) insured, and not merely the risk(s) insured against, must be maritime in character. Acadia, 116 F.3d at 603 (finding admiralty jurisdiction because the insurance policy "insures a maritime interest (the boat) and insures primarily (if not exclusively) against risks associated with marine ventures"); N.H. Ins. Co., 581 F.3d at 424 (reasoning that a contract is not necessarily maritime in nature by virtue of its relation to boats and marinas); Folksamerica, 413 F.3d 307 (determining whether a contract constitutes marine insurance by considering the risks insured against and the interests insured); Royal Ins. Co., 738 F.2d at 1036 ("For an insurance policy to be within admiralty jurisdiction, the interests insured, and not simply the risks insured against, must be maritime. For example, a beach front home might be insured against damage from 'perils of the sea,' but insurance of this sort on real property almost certainly is outside admiralty jurisdiction."). The Court regards such an analysis into maritime interests and risks as useful to ascertain an insurance contract's "primary objective" and nature. Given the Supreme Court's counsel that lower courts consider precedent in analyzing whether an insurance policy constitutes a maritime contract, Kossick, 365 U.S. at 735, the Court considers (1) whether the Perseverence is a maritime interest, and (2) whether the interests insured against in the Policy are maritime in nature, in order to determine whether the Policy as a whole constitutes a maritime contract. | Floating drydock was maritime interest, and thus insurance dispute involving drydock fell within scope of federal district court's admiralty jurisdiction, even though drydock was not fully operational structure, and policy covered incidental non-maritime elements, where drydock was designed, constructed, and used to provide marine maintenance and repair services to vessels, and policy covered "all risks of docking, undocking, or moving in harbour and going on or off gridiron or graving docks," provided for loss or damage directly caused by "(a)ccidents in going on or off, or while on drydocks, graving docks, ways, gridirons or pontoons," provided protection in event that insured "come(s) into collision with any other vessel, craft or structure, floating or otherwise," protected insured from liability "for physical loss of or damage to watercraft and their equipment, cargo and other interests on board," and covered tools and equipment "used in the operation of (insured)'s business," which policy identified as "(v)essel (r)epair (and) (m)arine (s)alvage." 28 U.S.C.A. S 1333(1). | When does an insurance policy come within the admiralty jurisdiction? | 004054.docx | LEGALEASE-00116132-LEGALEASE-00116134 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 13065 | Consolidation Coal Company v. Benefits Review Board, 629 F.3d 322 | 413+262 | With regard to status, " 902(3) of the Act states that a covered employee must be a "person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include-" certain enumerated categories of employees under " 902(3). Schwalb, 493 U.S. at 45. | LHWCA "status requirement" is that covered "employee" must be person engaged in "maritime employment," which expressly includes specified occupations but is not limited to those callings. Longshore and Harbor Workers' Compensation Act, S 2(3), 33 U.S.C.A. S 902(3). | Does the Longshore and Harbor Workers' Compensation Act apply to ship repairmen? | Admiralty Law - Memo 27 - JS.docx | LEGALEASE-00001499-LEGALEASE-00001500 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 13066 | International Sea Food Ltd. v. M/V Campeche, 566 F.2d 482 | 228+830.1 | Similar language in other cases tends to support the existence of a general principle that admiralty courts of this nation are empowered to carry into effect the maritime decrees of foreign admiralty courts. In Otis v. The Rio Grande, 18 F.Cas. No. 10,613, pp. 902, 903 (C.C.D.La.1872), aff'd, 90 U.S. 458, 23 L.Ed. 158 (1887), the court enforced an in rem maritime judgment of another district court which had awarded a sum of money and placed a lien upon the defendant ship with these words: "This court is in duty bound to carry into effect the sentences and decrees, not only of other federal courts, but even of the admiralty courts of foreign countries . . . ." See also Pennsylvania Railroad Co. v. Gilhooley, 9 F. 618 (E.D.Pa.1881). Again, in The Jerusalem, 13 F.Cas. No. 7,293, pp. 559, 563 (C.C.D.Mass.1814), there is dictum to the effect that an admiralty court "will enforce a foreign maritime judgment between foreigners, where either the property or the person is within its jurisdiction." | United States district court had subject matter jurisdiction in admiralty to enforce a foreign maritime decree which awarded damages to plaintiff on claim for maritime collision in suit brought against the four original defendants and the defendants' United States maritime insurer which allegedly issued a policy in effect at time of collision and which provided coverage for the foreign judgment. Supplemental Rules for Certain Admiralty and Maritime Claims, rule B, 28 U.S.C.A. | Can a court of admiralty enforce a decree of a foreign admiralty? | Admiralty Law - Memo 28 - JS.docx | LEGALEASE-00001501-LEGALEASE-00001502 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 13067 | Etokie v. Carmax Auto Superstores, 133 F. Supp. 2d 390 | 25T+111 | When an arbitration agreement entails costs that a claimant would not face in a judicial forum, there is a question as to whether the prospective litigant will have adequate access to a forum where she may have the opportunity to vindicate her statutory rights. The Supreme Court, though not addressing costs specifically, has emphasized that so " "long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." " Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)) (alteration in original). If costs under an arbitration agreement would prevent or deter prospective litigants from filing their claims and vindicating their statutory rights, the statute no longer serves its functions and the arbitration agreement is unenforceable. | If costs under an arbitration agreement would prevent or deter prospective litigants from filing their claims and vindicating their statutory rights, the arbitration agreement is unenforceable under the Federal Arbitration Act (FAA). 9 U.S.C.A. S 1 et seq. | When can an arbitration agreement be unenforceable? | Alternative Dispute Resolution - Memo 43 - JS.docx | ROSS-003282798-ROSS-003282800 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13068 | Goldfarb v. Reicher, 112 N.J.L. 413 | 38+5 | This attempted assignment of defendant's right of action, or of the moneys to become due when the claim was reduced to judgment, was nugatory. It is a firmly established rule that a right of action for personal injuries cannot be made the subject of assignment before judgment, in the absence of a statutory provision to the contrary. Except when otherwise provided by statute, nothing is assignable, either at law or in equity, that does not directly or indirectly involve a right to property. Weller & Lichtenstein v. Jersey City, H. & P. St. R. Co., 68 N. J. Eq. 659, 61 A. 459, 6 Ann. Cas. 442. In other jurisdictions the rule is that survival is the test of assignability of rights of action ex delicto. 2 R. C. L. 610, 613. But the rule is otherwise in this state. While the fourth section of the act relating to executors and the administration of intestates' estates (2 Comp. St. 1910, p. 2260, " 4) vests in the executor or administrator an action against the trespasser for any trespass done to the person or property of his testator or intestate, our court of the last resort has declared, and it is now settled law, that this provision did not abrogate the rule that such causes of action are not assignable before judgment. Weller & Lichtenstein v. Jersey City, H. & P. St. R. Co., supra. | Absent statute to the contrary, nothing is assignable at law or in equity that does not directly or indirectly involve a right to property. | "What does the general doctrine of assignability state with respect to a right of property, directly or indirectly, both at law and in equity?" | Assignments - Memo 37 JS.docx | LEGALEASE-00001582-LEGALEASE-00001584 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13069 | United States v. Viloski, 814 F.3d 104 | 180+63(1) | If we determine that a forfeiture is punitive, we must proceed to step two, which asks whether the forfeiture is unconstitutionally excessive. A forfeiture is unconstitutionally excessive "if it is grossly disproportional to the gravity of a defendant's offense." Bajakajian, 524 U.S. at 334, 118 S.Ct. 2028. Although Bajakajian did not provide a test for gross disproportionality, we have interpreted that decision as requiring us to consider the following four factors, which have become known as the "Bajakajian factors":(1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct. United States v. George, 779 F.3d 113, 122 (2d Cir.2015) (quoting Castello, 611 F.3d at 120). | Under the Eighth Amendment, a forfeiture is unconstitutionally excessive if it is grossly disproportional to the gravity of a defendant's offense. U.S.C.A. Const.Amend. 8. | Does a punitive forfeiture violate the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense under the Eighth Amendment? | 004727.docx | LEGALEASE-00116420-LEGALEASE-00116422 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 13070 | United States v. Ferro, 681 F.3d 1105 | 174+1.3 | The Eighth Amendment's Excessive Fines Clause requires the property owner's culpability to be considered. A "fine" as used in the Excessive Fines Clause refers to "a payment to a sovereign as punishment for some offense." Browning"Ferris, 492 U.S. at 265, 109 S.Ct. 2909. As the property's owner, it is Maria who is forced to "pay the sovereign," and it is Maria who is being punished. Hence, the proportionality inquiry must center on Maria's culpability and the various factors mentioned in $100,348 in Currency, supra at 1115. | "Fine," for purposes of the Eighth Amendment's Excessive Fines Clause, refers to a payment to a sovereign as punishment for some offense. U.S.C.A. Const.Amend. 8. | What does fine for the purposes of the Eighth Amendment's Excessive Fines Clause refer to? | Fines - Memo 6 - RK.docx | ROSS-003288549-ROSS-003288551 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 13071 | Merryman v. State, 391 S.W.3d 261 | 146+4 | In order for the customers' property to be held in a fiduciary capacity, there must have been an agreement between Merryman and the customers that the property was entrusted for a particular purpose. Tex. Penal Code Ann. " 32.45(a)(2)(A) (West 2011) (to "misapply" property is to "deal with property contrary to an agreement under which the fiduciary holds the property"); Skillern v. State, 355 S.W.3d 262, 268 (Tex.App.-Houston [1st Dist.] 2011, pet. ref'd) (to establish misapplication of fiduciary property, state must prove an agreement between defendant and complainant regarding how the funds are to be spent, and that defendant's actions violated that agreement). An "agreement" is "a harmonious understanding or an arrangement as between two or more parties, as to a course of action." Gonzalez, 954 S.W.2d at 104. The agreement under which a fiduciary holds property or money need not be a written contract, but may be only an understanding or arrangement as to a particular course of action. Id. (citing Bynum v. State, 767 S.W.2d 769, 774"75 (Tex.Crim.App.1989)). The State is only required to prove that the fiduciary failed to apply the funds according to the terms of the agreement; the actual manner in which the fiduciary applied the funds is immaterial. Skillern, 355 S.W.3d at 268"69; Little v. State, 699 S.W.2d 316, 318 (Tex. App.-San Antonio 1985, no pet.). | The agreement required by statute prohibiting misapplication of fiduciary property need not be a written contract, but may be only an understanding or arrangement as to a particular course of action. V.T.C.A., Penal Code S 32.45(a)(2)(A). | Does the agreement under which a fiduciary holds property or money be a written contract? | 004313.docx | LEGALEASE-00116551-LEGALEASE-00116552 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 13072 | State v. Morris, 156 N.C. App. 335 | 146+5 | Defendant also argues the evidence failed to establish that defendant possessed fraudulent intent. The fraudulent intent required for embezzlement is defined as the intent to " "willfully and corruptly use or misapply" " another's property for purposes other than that for which it was held. State v. McLean, 209 N.C. 38, 40, 182 S.E. 700, 701 (1935) (quoting State v. Lancaster, 202 N.C. 204, 210, 162 S.E. 367, 371 (1932)). "Such intent may be shown by direct evidence, or by evidence of facts and circumstances from which it may reasonably be inferred." McLean, 209 N.C. at 40, 182 S.E. at 702. "Intent is inferred from facts in evidence, and it is rarely shown by direct proof." Lancaster, 202 N.C. at 210, 162 S.E. at 370. | Fraudulent intent required for embezzlement is defined as intent to willfully and corruptly use or misapply another's property for purposes other than that for which it was held; such intent may be shown by direct evidence, or by evidence of facts and circumstances from which it may reasonably be inferred. West's N.C.G.S.A. S 14-74. | What is the fraudulent intent required for embezzlement? | 004317.docx | LEGALEASE-00116676-LEGALEASE-00116677 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13073 | Chesapeake & O. Ry. Co. v. Greenup Cty., Ky., 175 F.2d 169 | 148+55 | Assuming, as is quite apparent, that Greenup County has breached its contract with the railroad company, there can be no estoppel successfully invoked against its condemnation of the right of way and easement which it seeks in this proceeding. A state (and, of course, a county) cannot by contract divest itself of its power of eminent domain: that is, to take private property for public use upon payment of just compensation to the owner. Pennsylvania Hospital v. City of Philadelphia, 245 U.S. 20, 22, 38 S.Ct. 35, 62 L.Ed. 124; Galveston Wharf Co. v. City of Galveston, 260 U.S. 473, 476, 43 S.Ct. 168, 67 L.Ed. 355; State of Georgia v. City of Chattanooga, 264 U.S. 472, 480, 44 S.Ct. 369, 68 L.Ed. 796; Missouri, K & T. Ry. Co. v. State of Oklahoma, 271 U.S. 303, 307, 46 S.Ct. 517, 70 L.Ed. 957; City of Osceola v. Chicago, B. & Q.R. Co., 8 Cir., 196 F. 777; Cornwall v. Louisville & Nash. R. Co., 87 Ky. 72, 80, 7 S.W. 553. The power of eminent domain is "so inherently governmental in character and so essential for the public welfare" as not to be susceptible of abridgement by agreement. | The power of eminent domain is so inherently governmental in character, and so essential for the public welfare, as not to be susceptible of abridgement by agreement. | What is the inherent character of the power of eminent domain? | Eminent Domain - Memo 5 - AKA.doc | ROSS-003282559-ROSS-003282561 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13074 | 401 Public Safety v. Ray, 80 N.E.3d 895 | 237+1 | Finally, the Anti-SLAPP Statute does not "supplant the Indiana common law of defamation," but requires the person raising the defense to establish that his speech was "lawful." Shepard, 847 N.E.2d at 224 (citing I.C. " 34-7-7-9(d))."To establish a claim of defamation, a plaintiff must prove the existence of " "a communication with defamatory imputation, malice, publication, and damages." ""[T]he actual malice standard of proof required in defamation cases involving matters of public or general concern applies not only to public figures, but to private individuals as well." This is so because, "in most instances, there is little disparity in the ability of private versus public individuals to obtain access "to the channels of effective communication" in order to "counteract false statements' " and because " "[a] citizen ... assume [s] the risk of media comment when he becomes involved ... in a matter of general or public interest." " Actual malice exists when the defendant publishes a defamatory statement " "with knowledge that it was false or with reckless disregard of whether it was false or not." "Id. at 224-25 (internal citations omitted) | To establish a claim of defamation, a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages. | How does a plaintiff establish a claim of defamation? | 004423.docx | LEGALEASE-00116647-LEGALEASE-00116648 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 13075 | Freeman v. Grain Processing Corp., 895 N.W.2d 105 | 279+4 | Negligence and nuisance are distinct theories. Dalarna Farms v. Access Energy Coop., 792 N.W.2d 656, 659 (Iowa 2010). We explained the distinction between the two in Bormann v. Board of Supervisors, stating,Negligence is a type of liability-forming conduct, for example, a failure to act reasonably to prevent harm. In contrast, nuisance is a liability-producing condition. Negligence may or may not accompany a nuisance; negligence, however, is not an essential element of nuisance. If the condition constituting the nuisance exists, the person responsible for it is liable for resulting damages to others even though the person acted reasonably to prevent or minimize the deleterious effect of the nuisance.584 N.W.2d 309, 315 (Iowa 1998) (citations omitted). In other words, nuisance is a condition, not an act or failure to act by the party responsible. See id.[T]he true distinction between negligence and nuisance is that "to constitute a nuisance "there must a degree of danger (likely to result in damage) inherent in the thing itself, beyond that arising from a mere failure to exercise ordinary care." "Dalarna Farms, 792 N.W.2d at 659 (quoting Martins v. Interstate Power Co., 652 N.W.2d 657, 661 (Iowa 2002)). | To constitute a nuisance, there must be a degree of danger likely to result in damage inherent in the thing itself, beyond that arising from a mere failure to exercise ordinary care. | Are nuisance and negligence distinguishable? | 004438.docx | LEGALEASE-00116640-LEGALEASE-00116641 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13076 | Cont'l Ins. Co. v. Washeon Corp., 524 F. Supp. 34 | 50+5 | To establish a bailment, there must be a delivery and acceptance of the bailed property for a specific purpose in accordance with an express or implied contract between the bailor and bailee. The delivery to the bailee must be complete. For the period of the bailment, the bailee must have an exclusive right to possession of the bailed property, even as against the owner. Ratteree v. Gen. Motors Corp., 460 S.W.2d 309 (Mo.App.1970); Weinberg v. Wayco Petroleum Co., 402 S.W.2d 597, 599 (Mo.App.1966). | To establish a bailment, there must be delivery and acceptance of bailed property for specific purpose in accordance with express or implied contract been bailor and bailee, delivery to bailee must be complete, and for period of the bailment, bailee must have exclusive right to possession of bailed property, even as against the owner. | What is required to establish a bailment? | Bailment - Memo 6 - JS.docx | ROSS-003295190-ROSS-003295191 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |
| 13077 | Nat. Res. Def. Council v. U.S. E.P.A., 279 F.3d 1180 | 1.49E+17 | Under the Administrative Procedures Act, the EPA must provide the public with notice and an opportunity to comment before it issues NPDES permits. 5 U.S.C. " 553(b)-(c); 40 C.F.R. "" 124.6(d), 124.10(a)(1)(ii), (b); see also NRDC v. EPA, 863 F.2d 1420, 1428"29 (9th Cir.1988) (applying notice and comment requirement to general NPDES permit). Like other agencies, the EPA "must provide notice sufficient to fairly apprise interested persons of the subjects and issues before the Agency." Id. at 1429 (internal quotation marks and citations omitted). | Like other agencies, when issuing permits under the Administrative Procedure Act (APA), the Environmental Protection Agency (EPA) must provide notice sufficient to fairly apprise interested persons of the subjects and issues before the agency. 5 U.S.C.A. S 553(b, c). | What is sufficient notice that the EPA is required to provide? | 004563.docx | LEGALEASE-00116536-LEGALEASE-00116537 | Condensed, Order, SA | 0.51 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13078 | Ex parte N.M., 132 So. 3d 1088 | 401+1.5 | We begin our analysis of the paternal grandmother's petition by recognizing that" "[a] petition for the writ of mandamus is the appropriate means by which to challenge a trial court's order regarding a change of venue. Ex parte Sawyer, 892 So.2d 898, 901 (Ala.2004). The writ of mandamus is an extraordinary remedy; it will not be issued unless the petitioner shows " " "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." " " Ex parte Inverness Constr. Co., 775 So.2d 153, 156 (Ala.2000) (quoting Ex parte Gates, 675 So.2d 371, 374 (Ala.1996)); Ex parte Pfizer, Inc., 746 So.2d 960, 962 (Ala.1999) .' " Ex parte Vest, 68 So.3d 881, 884 (Ala.Civ.App.2011) (quoting Ex parte Children's Hosp. of Alabama, 931 So.2d 1, 5"6 (Ala.2005)). Further, " "[t]he question of proper venue for an action is determined at the commencement of the action." ... "If venue is not proper at the commencement of the action, then, upon motion of the defendant, the action must be transferred to a court where venue would be proper." " Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala.2002) (quoting Ex parte Pratt, 815 So.2d 532, 534 (Ala.2001), and Ex parte Overstreet, 748 So.2d 194, 196 (Ala.1999)). | The question of proper venue for an action is determined at the commencement of the action; if venue is not proper at the commencement of the action, then, upon motion of the defendant, the action must be transferred to a court where venue would be proper. | When is the proper venue for an action determined? | Venue - Memo 18 - RK.docx | ROSS-003315822-ROSS-003315823 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13079 | Wheeling-Pittsburgh Steel Corp. v. Dep't of Envtl. Prot., 979 A.2d 931 | 149E+678 | As an agency responsible for enforcing and implementing environmental statutes and regulations, DEP is "in the best position to interpret" its own regulations. Tire Jockey Serv., Inc. v. Dep't of Envtl. Prot., 591 Pa. 73, 110, 915 A.2d 1165, 1187 (2007). Accordingly, DEP's interpretation is accorded deference and "is given controlling weight unless it is clearly erroneous." Riverwalk Casino, L.P. v. Pa. Gaming Control Bd., 592 Pa. 505, 530, 926 A.2d 926, 940 (2007). Where, as here, a regulatory scheme is technically complex, a reviewing court must put aside its discretion in favor of DEP's expertise. Groce v. Dep't of Envtl. Prot., 921 A.2d 567 (Pa.Cmwlth.2007), appeal denied, 596 Pa. 720, 944 A.2d 759 (2008). After careful review of the relevant provisions of the regulations, the Court agrees with DEP that the spent pickle liquor is not exempt from solid waste management under 40 C.F.R. " 261.2(e)(1)(i). | As an agency responsible for enforcing and implementing environmental statutes and regulations, Department of Environmental Protection (DEP) is in the best position to interpret its own regulations, and its interpretation is accorded deference and given controlling weight unless it is clearly erroneous. | Is the Department of Environmental Protection (DEP) empowered with the authority to interpret and enforce environmental laws? | Environmental Law - Memo 46 - AKA.doc | LEGALEASE-00002692-LEGALEASE-00002693 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 13080 | Allemania Fire Ins. Co. of Pittsburgh v. Keller Diamond Corp., 101 N.Y.S.2d 9 | 50+11 | A promise to return except in a specified event likewise adds to the liability implied by law and makes the bailee liable for failure to return caused by some other event. Kaye v. M'Divani, 6 Cal.App.2d 371, 44 P.2d 371. | Bailee's promise to return the thing bailed except in a specified event adds to the liability of bailee implied by law and makes bailee liable for failure to return caused by some other event. | What is a bailees promise under bailment law? | Bailment - Memo 17 - ANG.docx | LEGALEASE-00002761-LEGALEASE-00002762 | Condensed, SA | 0.13 | 0 | 1 | 0 | 1 | |
| 13081 | Isik Jewelry v. Mars Media, 418 F. Supp. 2d 112 | 50+1 | The law, however, does not require a formal agreement for a bailment. "It is the element of lawful possession, however created, and duty to account for the thing as the property of another, that creates the bailment, regardless of whether such possession is based on contract in the ordinary sense." Armstrong v. Sisti, 242 N.Y. 440, 444, 152 N.E. 254 (1926); see also Ellish v. Airport Parking Co., 42 A.D.2d 174, 176, 345 N.Y.S.2d 650 (2d Dep't 1973) ("A bailment is, of course, merely a special kind of contract; it describes a result which in many instances does not flow from the conscious promises of the parties made in a bargaining process but from what the law regards as a fair approximation of their expectations."). "The determination as to whether the relationship is one of bailor and bailee turns on whether there is a relinquishment of exclusive possession, control and dominion over the property." Hutton v. Public Storage Mgmt., Inc., 177 Misc.2d 540, 541, 676 N.Y.S.2d 886 (1998) (holding there was no bailment with regard to rental agreement between parties because plaintiff did not relinquish exclusive control over property to defendant where plaintiff had direct access to storage space and his own lock, for which defendant did not have the key or the combination). Whether there is such a relinquishment "depends on the intentions and understanding of the parties as demonstrated by the place, conditions and nature of the transaction." Makower v. Kinney Sys., 65 Misc.2d 808, 810, 318 N.Y.S.2d 515 (1970). | The element of lawful possession, however created, and duty to account for personal property as the property of another creates a bailment, regardless of whether such possession is based on contract in the ordinary sense. | Is a formal agreement required for a bailment? | Bailment - Memo 20 - ANG.docx | ROSS-003284541-ROSS-003284543 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13082 | White River Estates v. Hiltbruner, 134 Wash. 2d 761 | 379+115 | Although the Court of Appeals aligns this statutory violation with a claim for tortious interference, in a tortious interference action a plaintiff must show that the defendant "intentionally" interfered with the plaintiff's valid business expectancy. See Cherberg v. Peoples Nat'l Bank, 88 Wash.2d 595, 602, 564 P.2d 1137 (1977). Yet, no "intentional" conduct is required to violate RCW 59.20.073. Without an intent requirement this statutory violation cannot be "akin" to an intentional tort. When a person acts "unreasonably" in light of the circumstances such action is similar to negligence, not an intentional tort. See Ernst Home Ctr., Inc. v. Sato, 80 Wash.App. 473, 484, 910 P.2d 486 (1996) (to determine whether a landlord unreasonably withheld consent to an assignment the jury must decide whether a reasonably prudent person in the landlord's position would have withheld consent to the assignment). | When person acts "unreasonably" in light of circumstances, such action is similar to negligence, not intentional tort. | Does a persons unreasonable act in light of the circumstances result in an intentional tort? | 004812.docx | LEGALEASE-00116857-LEGALEASE-00116858 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 13083 | Perez v. Cumba, 138 Conn. App. 351 | 302+1 | In Connecticut, "[p]leadings are intended to limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise.... [The] purpose of pleadings is to frame, present, define, and narrow the issues and to form the foundation of, and to limit, the proof to be submitted on the trial...." (Citations omitted; internal quotation marks omitted.) Birchard v. New Britain, 103 Conn.App. 79, 83, 927 A.2d 985, cert. denied, 284 Conn. 920, 933 A.2d 721 (2007). The construction of pleadings is a question of law over which our review is plenary. Miller v. Egan, 265 Conn. 301, 308, 828 A.2d 549 (2003). | Pleadings are intended to limit the issues to be decided at the trial of a case and are calculated to prevent surprise. | Are pleadings intended to limit the issues to be decided at the trial of a case? | 004826.docx | LEGALEASE-00116772-LEGALEASE-00116773 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13084 | Ampco Auto Parks v. Williams, 517 S.W.2d 401 | 50+14(1) | It is settled law in this state that in a bailment for the mutual benefit of the bailor and bailee, the bailee owes the bailor a duty of ordinary care and safekeeping the subject matter of the bailment. It is equally well settled that the duty of ordinary care arises out of the relationship of bailor and bailee, which must of course be created by contract. In this case appellant AMPCO admits that it accepted bailment of the automobile but contends there was never any contract or agreement between it and Williams that AMPCO would accept bailment of the undisclosed valuable personal property contained in the trunk of the automobile. This brings into consideration the concept of a split or divisible bailment. | In bailment for mutual benefit of bailor and bailee, bailee owes bailor duty of ordinary care and safekeeping subject matter of the bailment. | Does a bailment impose a duty of ordinary care upon the bailee? | Bailment - Memo 40 - RK.docx | ROSS-003327665-ROSS-003327666 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13085 | U. S. Fire Ins. Co. v. Paramount Fur Serv., 168 Ohio St. 431 | 50+12 | Although a compensated bailee owes to his bailor a duty to exercise ordinary care to protect the bailed property, an uncompensated or so-called gratuitous bailee does not owe to his bailor a duty to exercise such care to protect the bailed property. | A compensated bailee owes to his bailor a duty to exercise ordinary care to protect the bailed property, but a constructive bailee like any other uncompensated bailee, does not ordinarily owe the owner the duty to exercise ordinary care and, therefore, is not liable to owner for mere negligence in protecting the property. | Does a compensated bailee owe any kind of duty to his bailor? | Bailment - Memo 43 - RK.docx | ROSS-003326508-ROSS-003326509 | Condensed, SA, Sub | 0.23 | 0 | 1 | 1 | 1 | 1 |
| 13086 | State v. Weaver, 160 N.C. App. 613 | 146+9 | State v. Jackson, 57 N.C.App. 71, 76, 291 S.E.2d 190, disc. review denied, 306 N.C. 389, 294 S.E.2d 216 (1982). However, "[a]lthough defendant's possession of the entrusted property may be actual or constructive, even constructive possession of property requires "an intent and capability to maintain control and dominion" over it.' " Bonner, 91 N.C.App. at 426, 371 S.E.2d at 775 (quoting State v. Jackson, 57 N.C.App. at 76, 291 S.E.2d at 194). The defendant in Bonner was convicted of violating N.C.G.S. " 14"91 (2001), which makes it a felony for "any ... person ... having or holding in trust ... property and effects of the [State] ... [to] embezzle or knowingly and willfully misapply or convert the same to his own use[.]" The defendant in Bonner, who was director of continuing education at a community college, "had the authority subject to his superiors' approval to hire instructors[.]" The State's evidence tended to show that defendant had "executed contracts with twenty-eight "bogus' instructors to teach nonexistent adult education classes to fictional students." Bonner, 91 N.C.App. at 425, 371 S.E.2d at 774.Defendant's motion to dismiss the charge of embezzlement on the grounds that he never held funds or State property in trust was denied. On appeal this Court held:the requirement that defendant misapply funds which he "holds in trust" expresses the requirement distinctive to embezzlement that the defendant "received the property he embezzled in the course of his employment and by virtue of his fiduciary relationship with his principal." ... Although defendant's possession of the entrusted property may be actual or constructive, even constructive possession of property requires "an intent and capability to maintain control and dominion" over it. | In embezzlement context, although defendant's possession of the entrusted property may be actual or constructive, even constructive possession of property requires an intent and capability to maintain control and dominion over it. West's N.C.G.S.A. S 14-90. | What kind of possession required to establish prima facie case of an offence of embezzlement? | Embezzlement - Memo 29 - RK.docx | LEGALEASE-00002969-LEGALEASE-00002970 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 13087 | Sokol Holdings v. BMB Munai, 542 F.3d 354 | 25T+112 | While in none of these cases did the court explain what it was that justified the estoppel, examination of the facts shows a pattern which is consistent with the basic principle that one does not give up one's right to court adjudication except by consent. In each case, the promise to arbitrate by x, the entity opposing arbitration, was reasonably seen on the basis of the relationships among the parties as extending not only to y, its contractual counterparty, but also to y , an entity that was, or would predictably become, with x's knowledge and consent, affiliated or associated with y in such a manner as to make it unfair to allow x to avoid its commitment to arbitrate on the ground that y was not the very entity with which x had a contract. The estoppel did not flow merely from x's agreement to arbitrate with someone (y) in disputes relating to the agreement. It flowed rather from the conclusion that the relationships among the parties developed in a manner that made it unfair for x to claim that its agreement to arbitrate ran only to y and not to y . It was, of course, essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration. Indeed, if the dispute had not been related to the arbitration contract, even a dispute between the parties who contracted with one another to arbitrate (x and y) would not have been arbitrable. While the arbitrability of the subject matter of the dispute was an essential condition to a finding of estoppel, however, it was not sufficient to justify that conclusion. As we implied in JLM Industries in requiring a "careful review of the relationship among the parties," 387 F.3d at 177 (internal quotation marks omitted) the further necessary circumstance was a relationship among the parties which either supported the conclusion that x had consented to extend its agreement to arbitrate to y , or, otherwise put, made it inequitable for x to refuse to arbitrate on the | While obligation to arbitrate depends on consent, such consent need not always be expressed in formal contract made with the party demanding arbitration. | Should consent to arbitrate be expressed in a formal contract? | 005199.docx | LEGALEASE-00116851-LEGALEASE-00116853 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 13088 | Adamovic v. METME Corp., 961 F.2d 652 | 25T+113 | We cannot say with positive assurance which party has it right. Adamovic conceded at oral argument that the clause is hopelessly ambiguous; METME says, even so, federal policy tips the scales in its favor. It is well established, however, that the federal policy favoring arbitration does not give us license to compel arbitration absent an agreement to do so. See Mitsubishi Motors, 473 U.S. at 626, 105 S.Ct. at 3353"54. True, the scales tip in favor of arbitration when we construe an arbitration clause, see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941"42, 74 L.Ed.2d 765 (1983), but only after we find, as an initial matter, that an enforceable arbitration clause exists. Graphic Communications Union, Local No. 2 v. Chicago Tribune, 794 F.2d 1222, 1225 (7th Cir.1986). | Federal policy favoring arbitration does not give courts license to compel arbitration absent agreement to do so. | Does Federal policy favoring arbitration give courts license to compel arbitration? | Alternative Dispute Resolution - Memo 109 - JS.docx | ROSS-003296724-ROSS-003296725 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13089 | In re Involuntary Dissolution of Battle Creek State Bank, 254 Neb. 120 | 172H+202 | We begin our analysis by noting that the Act does not prohibit the involuntary dissolution of a corporation. However, a banking corporation is unlike a purely private corporation in that a banking corporation is a quasi-public institution subject to the special banking rules and regulations of the State of Nebraska. " 8"102. It is a quasi-public institution in the sense that "[t]he whole stream of commerce, whether interstate or intrastate, largely depends upon [its existence]." United States v. Doherty, 18 F.Supp. 793, 794 (D.Neb.1937), aff'd 94 F.2d 495 (8th Cir.1938). Indeed,"[b]anks are indispensable agencies through which the industry, trade, and commerce of all civilized countries and communities are carried on; the business which they transact, though for private profit, is of a pre-eminently public nature, and is therefore universally recognized as a proper subject of legislative regulation under the police power of the state...."Placek v. Edstrom, 148 Neb. 79, 92, 26 N.W.2d 489, 497 (1947). Thus, due to the stark contrast in nature between banking corporations and strictly private corporations, public policy dictates that banking corporations should be afforded different treatment with respect to the manner in which they may be involuntarily dissolved. However, even though there are sound public policy arguments for not treating banks the same way as other business corporations, our analysis of the banking statutes and the Act is necessary to the resolution of the instant case. | Banking corporations are quasi-public institutions in the sense that whole stream of commerce, whether interstate or intrastate, largely depends upon their existence. | "What is the nature of a banking corporation, under the law?" | 005271.docx | LEGALEASE-00116914-LEGALEASE-00116915 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13090 | Kyung Sup Ahn v. Rooney, Pace Inc., 624 F. Supp. 368 | 25T+112 | It is basic that there is no duty to arbitrate a particular dispute where there has been no agreement between the parties requiring such disputes to be submitted to arbitration. See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Whether a party has or has not agreed to arbitrate is determined on the basis of ordinary contract principles, Fox v. Merrill Lynch & Co., Inc., 453 F.Supp. 561, 564 (S.D.N.Y.1978), and it is the district court which must decide this question. United Steelworkers of America v. Warrior & Gulf Navigation Co., supra. Because this court finds that defendant Rooney, Pace has failed to demonstrate the existence of any agreement between it and plaintiffs that mandates arbitration of the present dispute, defendants' motion to stay pending arbitration clearly must fail. | Whether party has or has not agreed to arbitrate is determined on basis of ordinary contract principles. | Is it determined based on ordinary contract principles whether parties have agreed to arbitrate? | Alternative Dispute Resolution - Memo 125 - JS.docx | ROSS-003283060-ROSS-003283062 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 13091 | Cent. Illinois Light Co. v. Illinois Pollution Control Bd., 17 Ill. App. 3d 699 | 1.49E+19 | A further issue raised by the petitioner is that the findings by the IPCB are contrary to the weight of the evidence. In confronting this issue we recognize at the outset that it is well recognized law that the board's decision must be based on the record and material findings of fact must be supported by evidence. (City of Monmouth v. Environmental Protection Agency, 10 Ill.App.3rd 823, 295 N.E.2d 136; North Shore Sanitary District v. Pollution Control Board, 2 Ill.App.3rd 797, 277 N.E.2d 754; Citizens Utilities Company v. Illinois Pollution Control Board, 9 Ill.App.3rd 158, 289 N.E.2d 642.) In determining whether the findings of fact by the board were supported by the evidence presented we must analyze the evidence and theory used to prove a violation by the respondents as well as the evidence and theory of defense presented by the petitioners. Delving into the complex and technical evidence presented it becomes clear that the respondents attempted to prove alleged violations of air pollution by the testimony of Mr. Wennmacher, who made certain calculations as to "expected" emission levels of the respondent's boilers and plant, and that these "expected" emissions were based upon maximum load operating conditions of the boilers. In making such calculations Mr. Wennmacher used the data appearing on the boilers which is referred to as "name plate rating" rather than the actual heat input of a certain boiler or boilers on a given date. Simply put, the violations of the petitioner were based on the maximum rate capability of the boilers as determined by their manufacturer and not on how they were actually used. The Board itself (IPCB) in its opinion which included findings recognized that new regulations (not applicable in the instant case) provide for an actual heat input computation rather than name plate ratings in determining the amount of emissions of particulate matter. The Board (IPCB) then made the interesting observation that the | Decision of the Pollution Control Board must be based on record, and material findings of fact must be supported by evidence. S.H.A. ch. 1111/212, S 1001 et seq. | Should the Pollution Control Board base its decision on the information and facts present on the record in a case? | 005041.docx | LEGALEASE-00117226-LEGALEASE-00117227 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |
| 13092 | State v. Flores, 2015 WL 5038535 | 207+2 | he defendant also argues in connection with his constitutional attack for vagueness that La.R.S. 14:78.1 is invalid because it punishes acts made criminal elsewhere in the Louisiana Criminal Code and grants prosecutorial discretion in choosing among various offenses in charging a defendant. The defendant contends that every act made illegal by the aggravated incest statute is also proscribed by other statutes, but the present statute carries a more severe penalty and gives the state a choice among several statutes in charging the defendant. The fact that the same acts may be punishable under more than one criminal statute does not render the statute unconstitutional. When conduct is made criminal under several statutes, La.R.S. 14:4 provides:Prosecution may proceed under either provision, in the discretion of the district attorney, whenever the offender's conduct is:(1) Criminal according to a general article of this Code or Section of this Chapter of the Revised Statutes and also according to a special article of this Code or Section of this Chapter of the Revised Statutes; or(2) Criminal according to an article of the Code or Section of this Chapter of the Revised Statutes and also according to some other provision of the Revised Statutes, some special statute, or some constitutional provision. | Aggravated incest statute was not unconstitutionally vague on ground that it punished acts made criminal elsewhere in Criminal Code and granted prosecutorial discretion in choosing among various offenses in charging defendant; aggravated incest statute most closely described defendant's conduct, and public policy of protecting juvenile family members from adult relatives outweighed any unfairness caused by increased penalty. LSA-R.S. 14:4, 14:78.1; LSA-Const. Art. 5, S 26; LSA-C.Cr.P. art. 61. | Are aggravated incest statutes unconstitutionally vague? | 000459.docx | LEGALEASE-00117428-LEGALEASE-00117429 | Condensed, Order, SA | 0.62 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13093 | Willison v. Watkins, 28 U.S. 43 | 233+650 | It is an undoubted principle of law fully recognised by this court, that a tenant cannot dispute the title of his landlord, either by setting up a title in himself, or a third person, during the existence of the lease or tenancy. The principle of estoppel applies to the relation between them, and operates in its full force to prevent the tenant from violating that contract by which he obtained and holds possession. 7 Wheat. 535. He cannot change the character of the tenure by his own act merely, so as to enable himself to hold against his landlord, who reposes under the security of the tenancy, believing the possession of the tenant to be his own, held under his title, and ready to be surrendered by its termination, by the lapse of time, or demand of possession. The same principle applies to mortgagor and mortgagee, trustee and cestuique trust, and generally to all cases where one man obtains possession of real estate belonging to another, by a recognition of his title. On all these subjects the law is too well settled to require illustration or reasoning, or to admit of a doubt. But we do not think, that in any of these relations, it has been adopted to the extent contended for in this case, which presents a disclaimer by a tenant with the knowledge of his landlord, and an unbroken possession afterwards for such a length of time that the act of limitations has run out four times before he has done any act to assert his right to the land. Few stronger cases than this can occur, and if the plaintiff can recover without any other evidence of title than a tenancy existing thirty years before suit brought, it must be conceded that no length of time, no disclaimer of tenancy by the tenant, and no implied acquiescence of the landlord, can protect a possession originally acquired under such a tenure. | The principle of estoppel applies to the relation between landlord and tenant and operates in its full force to prevent tenant from violating contract whereby he obtained and holds possession. | Is a tenant estopped from questioning his landlords title? | 000485.docx | LEGALEASE-00117309- LEGALEASE-00117310 | Condensed, Order, SA | 0.89 | 1 | 1 | 0 | 1 | 1 |
| 13094 | J.C. Penney Co. v. Giant Eagle, 813 F. Supp. 360 | 233+501 | Pennsylvania follows the modern view which treats landlord-tenant relations in light of principles of contract law, as opposed to property law. Teodori v. Werner, 490 Pa. 58, 415 A.2d 31, 33"34 (1980); Pugh v. Holmes, 486 Pa. 272, 405 A.2d 897 (1979). | Pennsylvania follows modern view which treats landlord-tenant relations in light of principles of contract law, as opposed to property law. | Are Landlord Tenant relations interpreted according to principles of contract law? | Landlord and Tenant - Memo 16 - RK.docx | LEGALEASE-00003809- LEGALEASE-00003810 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 13095 | Primerica Life Ins. Co. v. Brown, 304 F.3d 469 | 25T+139 | This court reviews de novo the grant or denial of a petition to compel arbitration pursuant to " 4 of the FAA. Webb v. Investacorp, 89 F.3d 252, 257 (5th Cir.1996). The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration. Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). | Federal Arbitration Act (FAA) expresses strong national policy favoring arbitration of disputes, and all doubts concerning arbitrability of claims should be resolved in favor of arbitration. 9 U.S.C.A. S 1 et seq. | How do courts resolve claims when there are doubts concerning arbitrability? | 004917.docx | LEGALEASE-00117385- LEGALEASE-00117386 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 13096 | Ashley v. State, 527 S.W.2d 302 | 350H+1251 | The sentence to be served, either actually confined, or on probation or parole, has no effect on the time at which the conviction becomes final. Nealy v. State, Tex.Cr.App., 500 S.W.2d 122. Further, when a conviction appears to be final on its face, as here, the burden of showing the same to be not final is on the defendant. Simpson v. State, Tex.Cr.App., 486 S.W.2d 807; Miller v. State, Tex.Cr.App., 472 S.W.2d 269. | Sentence to be served, either actually confined, or on probation or parole, has no effect on time at which conviction becomes final for purposes of enhancement of punishment in subsequent case. V.T.C.A., Penal Code S 12.42(d). | Does the sentence to be served have any effect on the finality of the conviction? | 004975.docx | LEGALEASE-00117303- LEGALEASE-00117304 | Condensed, Order, SA, Sub | 0.46 | 1 | 1 | 1 | 1 | 1 |
| 13097 | Dep't of Welfare v. Brock, 306 Ky. 243 | 98+21 | Under the old common law felons were without civil rights; they were conceived to be civilly dead. This harsh rule has been relaxed or abandoned, save as to the right to compel them to labor. Now they may own, inherit and transmit property, sue and be sued, and have most of the rights accorded other persons. State Board of Charities, etc. v. Hays, 190 Ky. 147, 227 S.W. 282. | The old common-law rule depriving felons of civil rights has been relaxed and felons may now own, inherit and transmit property, sue and be sued, and have most of the rights accorded other persons. | "Can a felon hold, inherit and dispose of property?" | 004984.docx | LEGALEASE-00117316- LEGALEASE-00117317 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 13098 | People v. Sales, 116 Cal. App. 4th 741 | 164T+26 | The elements of the crime of attempted extortion are (1) a specific intent to commit extortion and (2) a direct ineffectual act done towards its commission. (People v. Franquelin (1952) 109 Cal.App.2d 777, 783, 241 P.2d 651 (Franquelin ); 1 Witkin & Epstein, Cal. Criminal Law, supra, Elements, " 52, p. 262.) | The elements of the crime of attempted extortion are (1) a specific intent to commit extortion and (2) a direct ineffectual act done towards its commission. West's Ann.Cal.Penal Code S 524. | Is extortion a specific intent crime? | 005048.docx | LEGALEASE-00117389- LEGALEASE-00117390 | SA, Sub | 0.39 | 0 | 0 | 1 | 1 | |
| 13099 | Reade v. Reva Holding Corp., 30 A.D.3d 229 | 386+40(4) | Turning to the remaining claims, we find that Duane Reade's causes of action for negligence, nuisance, and trespass are also legally sufficient. The negligence causes of action (the first, against Reva, and sixth, against F & S) are legally sufficient because defendants had a common-law duty, independent of any contractual obligation imposed by the lease, to exercise reasonable care in performing the work on the roof (which was for Reva's benefit) so as to avoid damaging the demised premises below and interfering with their use. The second and seventh causes of action (against Reva and F & S, respectively) sufficiently allege a "recurrence of objectionable conduct" (Domen Holding Co. v. Aranovich, 1 N.Y.3d 117, 124, 769 N.Y.S.2d 785, 802 N.E.2d 135 [2003], quoting Frank v. Park Summit Realty Corp., 175 A.D.2d 33, 34, 573 N.Y.S.2d 655 [1991], mod. on other grounds 79 N.Y.2d 789, 579 N.Y.S.2d 649, 587 N.E.2d 287 [1991] ) to state a claim for nuisance. The third and eighth causes of action (against Reva and F & S, respectively) sufficiently allege that defendants committed a trespass upon the demised premises by causing water and debris to be deposited therein, without any right to do so (see Stewart v. State of New York, 248 A.D.2d 761, 761"762, 669 N.Y.S.2d 723 [1998], citing, inter alia, 104 N.Y. Jur. 2d, Trespass, " 12). Accordingly, the first, second, third, sixth, seventh and eighth causes of action are also reinstated. | Allegations that contractor hired by landlord to add a second story to building failed to properly cover and seal exploratory holes that it opened in the roof, which allegedly resulted in leaks into tenant's store and, on at least two occasions, allegedly caused water pipes to freeze and burst, stated claim that landlord and contractor committed a trespass upon the demised premises by causing water and debris to be deposited therein, without any right to do so. | Can trespass be caused by causing a foreign substance to enter onto another's property? | Trespass - Memo 47 - RK.docx | LEGALEASE-00004002- LEGALEASE-00004003 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13100 | GP Credit Co. v. Orlando Residence, Ltd., 349 F.3d 976 | 315+22 | The general rule is that intangible personal property is "located" in its owner's domicile, In re Lambert, 179 F.3d 281, 285 (5th Cir.1999); Robertson v. Robertson, *980 803 F.2d 136, 137 (5th Cir.1986); Gordon v. Holly Woods Acres, Inc., 328 F.2d 253, 255 (6th Cir.1964), although there are exceptions, such as where the documents of title are in a state that is not the owner's domicile. First Trust Co. of St. Paul v. Matheson, 187 Minn. 468, 246 N.W. 1, 3 (1932); Restatement (Second) of Conflict of Laws " 63 (1971); 4A Wright et al., supra, " 1071, pp. 295"96. We have put "located" in scare quotes because intangibles, having no "body," have no spatial location. But creditors who want to file liens against intangible personal property have to file their liens in a place, or places, so the property has to be given a fictitious location. The owner's location is the sensible choice and the one made by the Uniform Commercial Code " 9"301(1); see Tenn.Code Ann. " 47"9"103, Official Comments on the UCC, " 5(a) (2000); Wis. Stat. " 409.103, Official Comments on the UCC, " 5(a) (2000). The owner's location is physical, not metaphysical, and is easily determined. | In general, intangible personal property is "located" in its owner's domicile, although there are exceptions, such as where the documents of title are in a state that is not the owner's domicile. | What is the general rule regarding the location of intangible personal property? | Property - Memo 20 - JS.docx | LEGALEASE-00004083-LEGALEASE-00004084 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 13101 | Henry v. Halliburton, 690 S.W.2d 775 | 237+48(1) | Two types of qualified privileges exist at common law. First, there is the doctrine of fair comment. The law is well-settled "that a newspaper has the right fairly and honestly to comment upon a matter of public interest." Cook v. Pulitzer Publishing Co., 241 Mo. 326, 145 S.W. 480, 488 (1912). See generally McClung v. Pulitzer Publishing Co., 279 Mo. 370, 214 S.W. 193 (banc 1919). This right of comment is limited to expressions of opinion honestly and fairly held and based upon truth. Questioning the motives of a public official often falls within the purview of the privilege. In Warren v. Pulitzer Publishing Co., 336 Mo. 184, 78 S.W.2d 404 (1934), the Court explained:One also has the right (and this applies to a newspaper which is properly in the business not only of giving the public news but also of making them think about its significance) to comment upon true facts, when they are matters of public concern, by stating his inferences and conclusions about them. One may even be wrong in the inference he draws from true facts, which may be susceptible of more than one interpretation, and may even state such inferences critically and sarcastically and not be guilty of libelous defamation (36 C.J. 1283, " 287); but to stay within the field of this privilege, he must not state his conclusions as facts, unless they are true. 36 C.J. 1282, " 285. The right to comment or criticize means the right to draw inferences from facts, subject to the qualification that the facts are true; that the inferences are reasonable; and that they are made in good faith and without malice. 36 C.J. 1279"1283, "" 276"289. If facts and comments are stated in the same article, it should clearly show what are facts and what are merely the writer's conclusions therefrom. | "Fair comment" doctrine gives newspaper right fairly and honestly to comment upon matter of public interest, which is qualified privilege at common law in defamation actions. | Does the doctrine of fair comment extend to public interest? | 000539.docx | LEGALEASE-00117455-LEGALEASE-00117457 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 13102 | Foretich v. Advance Magazine Publishers, 765 F. Supp. 1099 | 237+33 | Under Virginia law, a statement is defamatory if it tends "to injure reputation, "diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." " General Products Co., Inc. v. Meredith Corp., 526 F.Supp. 546, 549 (E.D.Va.1981) (quoting Prosser, Law of Torts " 111 (4th ed. 1971)). Defamation may be per quod, i.e. arising by innuendo from published words in combination with known extrinsic facts, as well as per se, i.e. appearing on the face of the publication. Wilder v. Johnson Publishing Co., 551 F.Supp. 622, 623"24 (E.D.Va.1982). See also Carwile v. Richmond Newspapers, 196 Va. 1, 82 S.E.2d 588, 591"92 (1954) ("a defamatory charge may be made by inference, implication or insinuation"); Gazette, Inc. v. Harris, 229 Va. 1, 325 S.E.2d 713, 738, cert. denied sub nom. Fleming v. Moore, 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 (1985) and Port Packet Corp. v. Lewis, 473 U.S. 905, 105 S.Ct. 3528, 87 L.Ed.2d 653 (1985) | Defamation may be "per quod defamation," arising by innuendo from published words in combination with known extrinsic facts, or "per se defamation," appearing on the face of the publication. | Can defamation action occur from innuendos? | 000557.docx | LEGALEASE-00117464-LEGALEASE-00117465 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13103 | Commil USA v. Cisco Sys., 135 S. Ct. 1920 | 386+2 | As a final note, "[o]ur law is ... no stranger to the possibility that an act may be "intentional" for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A., 559 U.S. 573, 582"583, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010). Tortious interference with a contract provides an apt example. While the invalidity of a contract is a defense to tortious interference, belief in validity is irrelevant. Restatement (Second) of Torts " 766, Comment i (1979). See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 110 (5th ed. 1984). In a similar way, a trespass "can be committed despite the actor's mistaken belief that she has a legal right to enter the property." Jerman, supra, at 583, 130 S.Ct. 1605 (citing Restatement (Second) of Torts " 164, and Comment e (1963"1964)). And of course, "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). In the usual case, "I thought it was legal" is no defense. That concept mirrors this Court's holding that belief in invalidity will not negate the scienter required under " 271(b). | A trespass can be committed despite the actor's mistaken belief that she has a legal right to enter the property. Restatement (Second) of Torts S 164. | Does a persons mistaken belief that they have a legal right to enter the property negate a charge of trespass? | 000738.docx | LEGALEASE-00117562-LEGALEASE-00117563 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13104 | In re Edwards, 537 B.R. 797 | 315+370 | In the alternative, Ms. Washington asserts that she acquired the San Jacinto Property by adverse possession. Under Texas law, " "adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem.Code " 16.021 (West 2002). When a claim of adverse possession is made against a co-owner, the party seeking title by adverse possession must prove "an ouster of the co-tenant not in possession or repudiation of the co-tenancy relationship." Dyer v. Cotton, 333 S.W.3d 703, 712 (Tex.App."Houston [1st Dist.] 2010, no pet.). "[A] co-tenant may not adversely possess against another co-tenant unless it clearly appears he has repudiated the title of his co-tenant and is holding adversely to it." King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 756 (Tex.2003). At trial, Ms. Washington testified that she occupied the San Jacinto Property with the Debtor's consent. No evidence was adduced that the Debtor was excluded from the property in any fashion. | Under Texas law, when a claim of adverse possession is made against a co owner, the party seeking title by adverse possession must prove an ouster of the co-tenant not in possession or repudiation of the co-tenancy relationship. | Must an ouster by a tenant be proved? | Landlord and Tenant - Memo 33 - TH.docx | ROSS-003285671-ROSS-003285673 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 13105 | Salisbury v. Smith, 115 A.D.2d 840 | 48A+20 | Special Term correctly denied plaintiffs' summary judgment motion. The record reveals that the certificate of title of the subject vehicle is in the name of Helen Salisbury. However, the car was registered in the name of Richard Salisbury and the insurance on the vehicle was also in his name. The certificate of title is not conclusive on the issue of ownership of a vehicle, but rather is prima facie evidence of ownership (People v. Pryor, 91 A.D.2d 826, 458 N.Y.S.2d 112). The presumption of ownership arising from the certificate of title is subject to rebuttal and, therefore, summary judgment is not a proper remedy on this record (see, Fulater v. Palmer's Granite Garage, 90 A.D.2d 685, 456 N.Y.S.2d 289, appeal dismissed 58 N.Y.2d 826). Defendant has adequately demonstrated the existence of questions of fact which will require a trial for resolution (see, Zuckerman v. City of New York, 49 N.Y.2d 557, 562, 427 N.Y.S.2d 595, 404 N.E.2d 718). We need not discuss the ramifications of the decision as they pertain to the counterclaim. | Certificate of title is not conclusive on issue of ownership of vehicle, but rather is prima facie evidence of ownership, and presumption of ownership arising from certificate is subject to rebuttal. | Can a certificate of title be prima facie evidence of vehicle ownership? | 000687.docx | LEGALEASE-00117594-LEGALEASE-00117595 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13106 | Green v. State Civil Serv. Comm'n, 90 Ohio St. 252 | 316P+81 | It is alleged in the petition and insisted here that the first paragraph of section 7 of the act in question violates section 1 of article II of the Constitution in that it delegates to the state civil service commission legislative power to "amend and enforce rules for carrying into effect section 10 of article XV of the Constitution of Ohio and the provisions of this act, and such rules shall have the force and effect of law." The last-named section of the Constitution provides that appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations, and that laws shall be passed providing for the enforcement of that provision. The Legislature cannot delegate its power to make laws. The recognition of this principle is vital to our system. But, although it is difficult to define the exact dividing line, there is general concurrence in the view that the authority to make administrative rules is not a delegation of legislative power. The United States Supreme Court in United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563, held that the making of such rules and regulations was not raised from an administrative to a legislative character, because the violation thereof is punishable as a public offense. In the nature of things there must be many things in which the wisdom of legislation must depend, which can only properly be determined in the course of the administration of the legislative will as expressed in law. The statute in question provides for appointments and promotions in the civil service according to merit and fitness. It also provides for competitive examinations of applicants and that the commission may adopt rules to carry the provisions of the law into effect. There is in this no delegation of legislative power, but it is the imposition of an administrative duty in order to give practical effect to the enactment. The | Civil service law, authorizing civil service commission to provide rules as to civil service, are not a delegation of powers to enact laws in violation of Const. art. 1, S 18. | Does authorizing a Civil Service Commission to provide rules to the civil service constitute a delegation of legislative power? | 000351.docx | LEGALEASE-00117706-LEGALEASE-00117707 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 13107 | Grant v. Detroit Ass'n of Women's Clubs, 443 Mich. 596 | 233+513 | Plaintiff notes that the Court of Appeals in the instant case quickly dismissed two instructive federal cases. In Folgueras v. Hassle, 331 F.Supp. 615, 621 (W.D.Mich., 1971), the defendant owned and operated agriculture labor camps at which housing was a portion of the migrant workers' compensation for labor. After the plaintiffs were forcibly removed from the premises, they sought a declaration of their right of access to the camps. The court concluded that the owner of the migrant camp could not lawfully bar access by visitors or representatives of assistance groups seeking entrance to the camps. In so doing, the court concluded that the migrants living in the camp were tenants, and that their tenancy entitled them, their guests, and representatives of assistance organizations to "full rights of ingress and egress to and from their dwellings." Id. at 624. The court noted that a landlord-tenant relationship was present."Thus, all the elements of the typical landlord-tenant relationship are present. The migrant pays for the dwelling he occupies; the landlord binds himself to provide a dwelling of a fixed quality; [and] the migrant occupies the dwelling exclusive of the landlord for an agreed upon term"the length of his employment." Id.Case 4: Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500.Topical Quote: From the facts found by the district court based on the evidence appellants introduced at trial, we conclude that appellants were "employed in agricultural employment of a seasonal or other temporary nature" and were "required to be absent overnight from [their] permanent place[s] of residence." Thus, the district court erred in dismissing appellants' AWPA claims under Rule 41(b) on the ground that appellants were not migrant agricultural workers. Accordingly, the case must be remanded for Richardson to present its evidence relating to the AWPA issue, and for appellants to have the opportunity to add to the record and/or rebut | Caretaker allowed to occupy apartment in building in return for his services established existence of landlord-tenant relationship, to extent required to defeat summary judgment in favor of building owner which had terminated his employment and locked him out; apartment had been provided in consideration of caretaker's labor, possession and control of apartment had been transferred to caretaker who occupied it exclusive of owner, length of tenancy was agreed upon, occupancy was independent of relationship in that caretaker did not have to live on premises, occupancy was not treated as marginal consequence of employment, and public policy against lockouts of tenant was furthered by finding of landlord and tenant relationship. M.C.L.A. S 600.2918. | Are migrants living in labor camps considered tenants? | Landlord and Tenant - Memo 28 - TH.docx | LEGALEASE-00004595-LEGALEASE-00004596 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13108 | Ikomoni v. Exec. Asset Mgmt., 309 Ga. App. 81 | 233+1745 | "The exclusive method whereby a landlord may evict a tenant is through a properly instituted dispossessory action filed pursuant to OCGA " 44"7"50 et seq." Steed v. Fed. Nat. Mtg. Corp., 301 Ga.App. 801, 805(1)(a), 689 S.E.2d 843 (2009). After instituting a dispossessory action and obtaining a writ of possession, the landlord is authorized to evict the tenant, but the landlord must "plac[e] the tenant's property on some portion of the landlord's property or on other specific property designated by the landlord and approved by the executing officer." Washington v. Harrison, 299 Ga.App. 335, 339(1), 682 S.E.2d 679 (2009). See OCGA " 44"7"55(c). If the landlord evicts a tenant without filing a dispossessory action and obtaining a writ of possession, or without following the dispossessory procedures for handling the tenant's personal property, the landlord can be held liable for wrongful eviction and trespass. See Steed, 301 Ga.App. at 805(1)(a), 689 S.E.2d 843; Swift Loan, etc. Co. v. Duncan, 195 Ga.App. 556, 557(1), 394 S.E.2d 356 (1990). | The exclusive method whereby a landlord may evict a tenant is through a properly instituted statutory dispossessory action. West's Ga.Code Ann. S 44-7-50 et seq. | What is the exclusive method available to a landlord to evict a tenant? | Landlord and Tenant - Memo 34 - TH.docx | ROSS-003284675-ROSS-003284676 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 13109 | Camacho v. Honda Motor Co., 741 P.2d 1240 | 313A+208 | The crashworthiness doctrine has been applied to accidents involving motorcycles. E.g., Taylor v. American Honda Motor Co., 555 F.Supp. 59 (M.D.Fla.1983) (lack of leg protection devices); Stueve v. American Honda Motor Co., 457 F.Supp. 740 (D.Kan.1978) (inability of gas tank to withstand collision); Cota v. Harley Davidson, a Div. of AMF, Inc., 141 Ariz. 7, 684 P.2d 888 (Ariz.App.1984) (inability of gas tank to withstand collision); Nicolodi v. Harley-Davidson Motor Co., 370 So.2d 68 (Fla.Dist.Ct.App.1979) (lack of leg protection devices); O'Donnell v. City of Casper, 696 P.2d 1278 (Wyo.1985) (inability of gas tank to withstand collision). Honda argues, however, that motorcycles are inherently dangerous motor vehicles that cannot be made perfectly crashworthy and, therefore, that motorcycle manufacturers should be free of liability for injuries not actually caused by a defect in the design or manufacture of the motorcycle. We find no principled basis to conclude that liability for failure to provide reasonable, cost-acceptable safety features to reduce the severity of injuries suffered in inevitable accidents should be imposed upon automobile manufacturers but not upon motorcycle manufacturers. The use of motorcycles for transportation over roadways is just as foreseeable as the use of automobiles for such purpose. The crashworthiness doctrine does not require a manufacturer to provide absolute safety, but merely to provide some measure of reasonable, cost-effective safety in the foreseeable use of the product. E.g., Larsen v. General Motors Corp., 391 F.2d 495, 501"02; Nicolodi v. Harley-Davidson Motor Co., 370 So.2d 68, 70"71; see generally 1 R. Goodman, Automobile Design Liability " 1:4 (2d ed. 1983). Honda acknowledges that motorcycle accidents are just as foreseeable as automobile accidents and that motorcycle riders face a much greater risk of injury in the event of an accident than do occupants of automobiles. In view of the important goal | Under "crashworthiness" doctrine, manufacturer of motor vehicle need not make vehicle absolutely safe, but need only provide some measure of reasonable, cost-effective safety in the foreseeable use of its product. | Is a manufacturer required under law to make a vehicle absolutely safe? | 000653.docx | LEGALEASE-00117909-LEGALEASE-00117910 | Order, SA, Sub | 0.91 | 1 | 0 | 1 | 1 | 1 |
| 13110 | State ex rel. Yeagley v. Harden, 68 Ohio St. 3d 136 | 302+2 | The Civil Rules do not apply to special statutory proceedings "to the extent that they would by their nature be clearly inapplicable." Civ.R. 1(C)(7). However, we have applied the Civil Rules in mandamus actions, see State ex rel. Spirko v. Court of Appeals (1986), 27 Ohio St.3d 13, 27 OBR 432, 501 N.E.2d 625, despite the fact that the mandamus statutes also retain archaic pleading references such as that contained in R.C. 2733.12. Moreover, S.Ct.Prac.R. VIII(1) directs that original actions in this court "shall proceed as any civil action under the Ohio Rules of Civil Procedure." Accordingly, we follow the Civil Rules here and find that respondent's pleading complied with Civ.R. 12(A)(2). | Civil rules regarding pleadings do not apply to special statutory proceedings to extent that they would by their nature be clearly inapplicable. Rules Civ.Proc., Rule 1(C)(7). | Do Civil Rules apply to special statutory proceedings? | Pleading - Memo 24 - ANG.docx | ROSS-003285196-ROSS-003285197 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 13111 | Chicago, R.I. & P.R. Co. v. Linwood Stone Prod. Co., 258 Iowa 1378 | 302+4 | The designation given a pleading is not of vital importance. Its character is to be determined largely by its allegations and legal effect, not solely from the name given it. In re Estate of Robinson, 231 Iowa 1099, 1102, 3 N.W.2d 158, 160, and citations; 71 C.J.S. Pleading " 5. See also Pedersen v. Pedersen, 235 Iowa 708, 712, 17 N.W.2d 520, 522; 41 Am.Jur., Pleading, section 26, page 307. | Designation given a pleading is not of vital importance; its character is to be determined largely by its allegations and legal effect, not solely from name given it. | Is the character of a pleading determined by its allegations? | 000870.docx | LEGALEASE-00117944-LEGALEASE-00117945 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 13112 | Burt v. Beautiful Savior Lutheran Church of Broomfield, 809 P.2d 1064 | 386+10 | Consequently, the fact that, as defendant alleges here, the trespass in this case may have been caused by a negligent act is irrelevant. In Colorado, liability for trespass requires only an intent to do the act that itself constitutes, or inevitably causes, the intrusion. Miller v. Carnation Co., 33 Colo.App. 62, 516 P.2d 661 (1973). Specifically, trespass is the physical intrusion upon property of another without the permission of the person lawfully entitled to the possession of the real estate. Magliocco v. Olson, 762 P.2d 681 (Colo.App.1987). "One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally ... enters land in the possession of the other, or causes a thing or a third person to do so...." Miller v. Carnation, supra; Restatement (Second) of Torts " 158 (1965). | "Trespass" is physical intrusion upon property of another without permission of person lawfully entitled to possession of real estate, and liability requires only intent to do act that itself constitutes or inevitably causes intrusion, without reference to nature or immediacy of harm or whether intrusion was caused by negligent act. | Does liability for trespass requires only an intent to do the act that itself constitutes the intrusion? | 000884.docx | LEGALEASE-00117946-LEGALEASE-00117947 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 13113 | Opalinski v. Robert Half Int'l Inc., 761 F.3d 326 | 25T+200 | "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam, 537 U.S. at 83, 123 S.Ct. 588 (internal quotation marks and citation omitted). While federal policy favors arbitration agreements, an arbitrator has the power to decide an issue only if the parties have authorized the arbitrator to do so. Because parties frequently disagree whether a particular dispute is arbitrable, courts play a limited threshold role in determining "whether the parties have submitted a particular dispute to arbitration, i.e., the "question of arbitrability [.]" " Id. at 83, 123 S.Ct. 588 (emphasis in original). | Because parties frequently disagree whether a particular dispute is arbitrable, courts play a limited threshold role in determining whether the parties have submitted a particular dispute to arbitration, in other words the question of arbitrability. 9 U.S.C.A. S 1 et seq. | Can an arbitrator decide an issue if the parties have not authorized him to do so? | Alternative Dispute Resolution - Memo 152 - RK.docx | ROSS-003287114-ROSS-003287115 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13114 | China Auto Care v. China Auto Care (Caymans), 859 F. Supp. 2d 582 | 25T+138 | The Federal Arbitration Act ("FAA") governs whether the Court must compel arbitration. See 9 U.S.C. " 2 ("A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable...."). "The FAA was enacted to promote the enforcement of privately entered agreements to arbitrate, "according to their terms," " Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 294 (2d Cir.1999) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)). Well-established federal public policy strongly favors arbitration as an "alternative means of dispute resolution." Chelsea Square Textiles, 189 F.3d at 294 (describing FAA as evincing "a strong federal policy favoring arbitration" (quotation marks omitted)); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir.1987) (describing FAA as "a Congressional declaration of a liberal federal policy favoring arbitration agreements" (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quotation marks omitted))). Indeed, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the United States Court of Appeals for the Second Circuit has] often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir.2006) (quotation marks omitted). This policy "requires [the Court] to construe arbitration clauses as broadly as possible." Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 19 (2d Cir.1995) (quotation marks omitted). | Federal public policy strongly favors arbitration as an alternative means of dispute resolution, and this policy requires the court to construe arbitration clauses as broadly as possible. 9 U.S.C.A. S 2. | How broadly do the courts construe arbitration clauses under current federal policy? | 001009.docx | LEGALEASE-00118009-LEGALEASE-00118011 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 13115 | D.R. Horton v. N.L.R.B., 737 F.3d 344 | 25T+210 | When considering whether a contrary congressional command is present, courts must remember "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26, 111 S.Ct. 1647 (quotation marks and citation omitted). The party opposing arbitration bears the burden of showing whether a congressional command exists. Id. Any doubts are resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). | When considering whether contrary congressional command is present, courts must remember that questions of arbitrability must be addressed with healthy regard for federal policy favoring arbitration; party opposing arbitration bears burden of showing whether congressional command exists, and any doubts are resolved in favor of arbitration. 9 U.S.C.A. S 1 et seq. | What burden is placed upon the party who opposes arbitration? | Alternative Dispute Resolution - Memo 169 - RK.docx | ROSS-003289226-ROSS-003289227 | SA, Sub | 0.34 | 0 | 0 | 1 | 1 | |
| 13116 | Price v. Vattes, 161 S.W.3d 397 | 289+501 | The party asserting the existence of a partnership has the burden of proving a partnership. We never presume that a partnership exists and the burden is upon the party asserting its existence to establish all elements of a partnership by clear, cogent, and convincing evidence. Morrison v. Labor and Indus. Relations Com'n, 23 S.W.3d 902, 907"908 (Mo.App. W.D.2000). A partnership is a contract of two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions. Hillme, 75 S.W.3d at 317. In his response to the summary judgment motion, Price did not provide evidence to show a prima facie case of a partnership between him and Vattes. To withstand a summary judgment motion against him, Price was required to provide some specificity as to the terms of the partnership, including the division of profits and losses. He did not do so. | Court never presumes that a partnership exists and the burden is upon the party asserting its existence to establish all elements of a partnership by clear, cogent, and convincing evidence. | Who has the burden of proving the existence of a partnership? | Partnership - Memo 18 - JS.docx | ROSS-003295139-ROSS-003295140 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13117 | Southex Exhibitions v. Rhode Island Builders Ass'n., 279 F.3d 94 | 289+421 | "Partnership" is a notoriously imprecise term, whose definition is especially elusive in practice. See Boeckmann, 909 S.W.2d at 312 ("[T]he term "partnership" is not easily elucidated [and] ... [t]he business association that is known in the law as partnership is not one that can be defined with precision. To the contrary, a partnership is a contractual relationship that may vary, in form and substance, in an almost infinite variety of ways.") (citation omitted). Since a partnership can be created absent any written formalities whatsoever, its existence vel non normally must be assessed under a "totality-of-the-circumstances" test. | Partnership is a notoriously imprecise term, whose definition is especially elusive in practice, and since a partnership can be created absent any written formalities whatsoever, its existence vel non normally must be assessed under a "totality-of-the-circumstances" test. | Does the totality of the circumstances test govern partnership formation? | 000619.docx | LEGALEASE-00118286-LEGALEASE-00118287 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 13118 | Newman v. Corbman, 47 F.Supp. 1021 | 289+426(1) | From these facts, plaintiff argues that such joint ownership, the sharing of the profits, and the maintenance of the freight service for their mutual benefit, as well as for other shippers, constitutes the owners partners; that service upon any of the partners in this jurisdiction constitutes service upon all; and that the Court has jurisdiction of the complaint and of the parties defendant. In spite of the defendants' denial of the existence of an actual partnership, it seems that the facts shown clearly establish a partnership relationship with sufficient certainty to hold them to such liability toward their persons. The mere fact of joint ownership does not establish a partnership, nor is the sharing of net profits conclusive of such relationship. Here, however, we have joint ownership in specific shares, the setting aside of a portion of the gross receipts for labor and maintenance and distributed under the direction of the master as manager, the sharing of net profits and losses, after operating, insurance and repair charges are deducted, and the operation of a transportation business for the mutual and especial benefit of the owners with the service held out incidentally as available to the public. | The mere fact of joint ownership does not establish a "partnership" nor is the sharing of net profits conclusive of such relationship. | Does a joint ownership or sharing of profits alone establish a partnership? | 000625.docx | LEGALEASE-00118280-LEGALEASE-00118281 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13119 | Holiday Inns v. Pollution Control Bd., 27 Ill. App. 3d 704 | 149E+663 | At one time, the Pollution Control Board did impose penalties in variance proceedings as one of the conditions to the grant of the variance. Every case considering the propriety of this practice held it beyond the power granted to the Board under the Act.Citizens Utilities Co. v. Illinois Pollution Control Board, 9 Ill.App.3d 158, 289 N.E.2d 642 (1972); Molex Inc. v. Illinois Pollution Control Board, 9 Ill.App.3d 1032, 293 N.E.2d 731 (1973); City of Mattoon v. Illinois Environmental Protection Agency, 11 Ill.App.3d 259, 296 N.E.2d 383 (1973); Agrico Chemical Company v. Illinois Pollution Control Board, 13 Ill.App.3d 45, 299 N.E.2d 803 (1973). | Issue of whether pollution control board's denial of requested variance from compliance with effluent standards for one year was arbitrary and caused an unreasonable hardship was moot where time period for which variance was requested or could have been granted had expired since no proceedings were ever brought to impose a fine or penalty for violation of any rule or regulation. S.H.A. ch. 1111/212, SS1001 et seq., 1030-1036, 1036(b), 1042-1045. | Can the Pollution Control Board impose penalties as a condition to granting variance? | 05356.docx | LEGALEASE-00080803-LEGALEASE-00080804 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13120 | Forrest v. Durnell, 86 Tex. 647 | 233+720 | The statute provides: "If lands or tenements are rented by the landlord to any person or persons, such person or persons renting such lands or tenements shall not rent or lease said lands or tenements during the term of said lease to any other person without first obtaining the consent of the landlord, his agent or attorney." Sayles' Civ. St. art. 3122. This statute has application to sublettings as well as assignments by lessees, and was doubtless enacted to secure to the owners of the lands the selection of persons to occupy and care for them, as well as to secure them the right to have none occupy their lands whose ability or willingness to pay the rents contracted for was not satisfactory. Under the statute, persons renting lands or tenements stand as would they, in the absence of such a statute, under contracts containing covenants against sublettings or assignments; and, on violation of the statute, the rights and remedies of the parties are the same as would they be under such covenants, for under the statute they are implied. Such remedies, however, a landlord may waive, and when he does so his rights and remedies for collection of rent, as well as the rights and liabilities of the lessee and of persons to whom he may assign or sublet, must rest as at common law, except as controlled by statute. At common law, in the absence of covenant forbidding, a lessee had the right to assign or sublet. The relation of landlord and tenant strictly does not exist unless there be a reversionary interest in the former, and out of this arises the distinction between assignments and under-leases. If a lessee parts with his whole term in all the rented premises, no reversionary interest remains in him, and a person taking through him is an assignee, liable to pay rent to the landlord as the original lessee contracted to pay. If he rents parts of it to different persons for the entire term, then such persons, to the extent of their several holdings, are also assignees, and in so far liable to the lessor, | The relation of landlord and tenant does not exist unless there be a reversionary interest in the former; and out of this arises the distinction between assignments of leases and under-leases. If a lessee parts with his whole term in all the rented premises, no reversionary interest remains in him and a person taking through him is an assignee liable to payment to the landlord as the original lessee contracted to pay. If he rents parts of it to different persons for the entire term, such persons to the extent of their several holdings are also assignees and in so far liable to the lessor, just as was the original lessee. | Is the relationship between a landlord and a tenant created by the existence of a reversionary interest in the property? | 000951.docx | LEGALEASE-00118190-LEGALEASE-00118192 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 13121 | Sw. Elec. Power Co. v. Certain Underwriters at Lloyds of London, 772 F.3d 384 | 221+292 | Usually, this court only has jurisdiction over appeals from final orders, and may raise the issue of jurisdiction sua sponte. See 28 U.S.C. " 1291; CitiFinancial Corp. v. Harrison, 453 F.3d 245, 249 (5th Cir.2006). Generally, the FAA "governs appellate review of arbitration orders," including those arising under the Convention. Apache Bohai Corp., LDC v. Texaco China, B.V., 330 F.3d 307, 309 (5th Cir.2003); 9 U.S.C. "" 16, 208. The law carries out "Congress's intent in enacting [the FAA] ... to favor arbitration" by "authorizing immediate appeals from orders disfavoring arbitration and forbidding immediate appeals from orders favoring arbitration." Apache Bohai, 330 F.3d at 309; 9 U.S.C. "" 16, 208. "Except as otherwise provided in [28 U.S.C. " 1292(b)], an appeal may not be taken from an interlocutory order ... compelling arbitration under [9 U.S.C. " 206, the Convention]...." 9 U.S.C. " 16(b)(3). However, an appeal may be taken from "a final decision with respect to an arbitration that is subject to" the FAA or Convention. 9 U.S.C. " 16(a)(3). | The Federal Arbitration Act (FAA) governs appellate review of arbitration orders, including those arising under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. 9 U.S.C.A. SS 16, 208. | Does the Federal Arbitration Act govern appellate review of arbitration orders? | 001176.docx | LEGALEASE-00118416-LEGALEASE-00118417 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 13122 | Franklin v. State ex rel. Alabama State Milk Control Bd., 232 Ala. 637 | 92+1111 | The right of the citizen to the enjoyment of his property, and to exercise dominion over it is not absolute, but is subject to the right of the state, when the public interest requires it, to regulate the enjoyment, and the use of the property. Whenever a conflict occurs between private rights and the rights of the state to regulate "the use of the property and the conduct of business," subject only to constitutional limitations, private right must yield to the public need. | Right of citizen to enjoyment of, and exercise of dominion over, property is not absolute, but is subject to regulation by state when required by public interest. | Are the property rights of citizens absolute? | 001253.docx | LEGALEASE-00118326-LEGALEASE-00118327 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 13123 | Monteleone v. Airey, 57 So.2d 257 | 289+411 | It is quite true that New Hotel Monteleone, Inc., was organized for the sole and specific purpose of taking over and operating the business of the partnership, but we cannot agree with counsel that the corporation can legally be considered as a continuation of the partnership. A partnership and a corporation are two different and distinct legal entities; the rights and obligations of a partner are not at all similar to the rights and obligations of a stockholder in a corporation. | A partnership and a corporation are two different and distinct legal entities and the rights and obligations of a partner are not similar to the rights and obligations of a stockholder in a corporation. | Are corporations and partnerships two different entities? | 022311.docx | LEGALEASE-00118165-LEGALEASE-00118166 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 13124 | Matthews v. Malkus, 377 F. Supp. 2d 350 | 386+1 | The requisite elements for a claim of trespass are the intentional entry by defendants on to plaintiffs' land and the wrongful use without justification or consent. See Augeri v. Roman Catholic Diocese of Brooklyn, 225 A.D.2d 1105, 1106, 639 N.Y.S.2d 640 (4th Dep't., 1996). For several reasons, this cause of action is without merit.17 | Under New York law, requisite elements for claim of trespass are: (1) intentional entry by defendants onto plaintiff's land, and (2) wrongful use without justification or consent. | What are the elements of a trespass claim? | Trespass - Memo 27 - RK.docx | LEGALEASE-00005920-LEGALEASE-00005921 | SA, Sub | 0.47 | 0 | 0 | 1 | 1 | |
| 13125 | Sisk v. State, 260 So. 2d 485 | 146+29 | In the second place, if it is intended by the indictment to charge the defendant with the embezzlement of certain Caterpillar motor grader parts, it is necessary to describe the property in language sufficiently definite so as to identify the property said to have been embezzled.The indictment should describe the property with the same particularity as is required in an indictment for larceny. See: Rutherford v. State, 196 Miss. 321, 17 So.2d 803 (1944); 29A C.J.S. Embezzlement s 29, p. 67 (1965). | Indictment charging defendant with embezzlement of tractor parts was subject to demurrer where the ownership of the property taken was not shown, the property taken was not described in language sufficiently definite so as to identify it, and the value of the various parts was not alleged. Code 1942, SS 2123, 2538. | Is it necessary that the indictment charging embezzlement describe the property taken? | 001234.docx | LEGALEASE-00118581-LEGALEASE-00118582 | Condensed, SA | 0.37 | 0 | 1 | 0 | 1 | |
| 13126 | Woods v. Com., 2003 WL 1389108 | 207+4 | The sexual abuse charges occurred when the victim was less than twelve years old, and that was the only relevant time element necessary to support those convictions. KRS 510.110(1)(b)(2). See also, Stringer v. Commonwealth, Ky., 956 S.W.2d 883 (1997), which held that in a felony case, the failure to prove the specific date of the offense is of no consequence unless time is a material ingredient of the offense. Peyton v. Commonwealth, 288 Ky. 601, 157 S.W.2d 106 (1941). The date of the act of the incest is not a necessary element of the offense and it was sufficient that the Commonwealth proved the offense was committed prior to the rendition of the indictment. Browning v. Commonwealth, Ky., 351 S.W.2d 499 (1961) and Salyers v. Commonwealth, Ky., 255 S.W.2d 605 (1953). | Victim was under 12 years old when sexual abuse charges occurred, which was only relevant time element necessary to support convictions for sexual abuse and incest, thus, that victim's date of birth was never established and that jury instructions for sexual offenses contained erroneous dates would not support directed verdict; date of act of incest was not necessary element of offense and it was sufficient that Commonwealth proved offense was committed prior to rendition of indictment. KRS 510.110(1)(b)(2). | Is the date of the offense a specific element of aggravated incest? | 001477.docx | LEGALEASE-00118655-LEGALEASE-00118656 | Condensed, Order, SA | 0.34 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13127 | JS & H Const. Co. v. Richmond Cty. Hosp. Auth., 473 F.2d 212 | 25T+113 | We orient ourselves in this case by reference to two settled propositions, which no party disputes. The first is that in a contract "evidencing a transaction involving commerce," such as the subcontract in this case, arbitration provisions are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. " 2. In the Federal Arbitration Act, 9 U.S.C.A. "" 1-14, Congress has expressed a strong policy favoring arbitration before litigation, and the courts are bound to take notice of this broad policy as well as specific statutory provisions in dealing with arbitration clauses in contracts. The second undisputed proposition is that, as a matter of contract law, incorporation by reference is generally effective to accomplish its intended purpose where, as here, the provision to which reference is made has a reasonably clear and ascertainable meaning. These two propositions tend to indicate the arbitration provision in this case was a valid and enforceable part of the subcontract. The narrow contested issue which remains is whether the Miller Act cases create a special rule or exception which prevents incorporation of an arbitration provision by general reference in the subcontract in this case, which is not a contract subject to the Miller Act. Having examined these cases, we conclude they do not create such an exception. | Courts are bound to take notice of expressed policy of Congress favoring arbitration before litigation. 9 U.S.C.A. SS 1-14. | Are the courts bound to take notice of the federal policy in favor of arbitration? | 001677.docx | LEGALEASE-00118721-LEGALEASE-00118722 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 13128 | State v. Posenjak, 127 Wash. App. 41 | 209+119 | Only the tribe that signed the treaty, or the signatory tribe, can exercise treaty rights. United States v. Washington, 641 F.2d 1368, 1372 (9th Cir.1981). Individual Indians do not have any treaty rights, even if they are descendents of the signors of the treaty, because a treaty is a contract between sovereigns, not individuals.Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 675, 679, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979). | Only the tribe that signed the treaty, or the signatory tribe, can exercise treaty rights; individual Indians do not have any treaty rights, even if they are descendents of the signors of the treaty, because a treaty is a contract between sovereigns, not individuals. | Who may exercise treaty rights under Indian treaties? | 001790.docx | LEGALEASE-00118794-LEGALEASE-00118795 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 13129 | Rohrs v. Rohrs, 17 A.D.3d 659 | 249+34 | To recover damages for malicious prosecution, a plaintiff must establish that the underlying criminal action was terminated in his or her favor (see Martinez v. City of Schenectady, 97 N.Y.2d 78, 735 N.Y.S.2d 868, 761 N.E.2d 560; Cantalino v. Danner, 96 N.Y.2d 391, 729 N.Y.S.2d 405, 754 N.E.2d 164; Smith"Hunter v. Harvey, 95 N.Y.2d 191, 712 N.Y.S.2d 438, 734 N.E.2d 750). A dismissal, without prejudice, of the underlying criminal charges against a plaintiff, will serve as a "favorable termination" where it represents the "formal abandonment of the proceedings" (Smith"Hunter v. Harvey, supra at 198, 712 N.Y.S.2d 438, 734 N.E.2d 750, quoting Restatement [Second] of Torts " 659[c] and comment e; see Verboys v. Town of Ramapo, 12 A.D.3d 665, 785 N.Y.S.2d 496; cf. Tzambazis v. City of New York, 291 A.D.2d 397, 736 N.Y.S.2d 911; Kirshenbaum v. Kirshenbaum, 203 A.D.2d 534, 611 N.Y.S.2d 228; Campo v. Wolosin, 211 A.D.2d 660, 622 N.Y.S.2d 291; Mondello v. Mondello, 161 A.D.2d 690, 555 N.Y.S.2d 826). | To recover damages for malicious prosecution, plaintiff must establish that underlying criminal action was terminated in his or her favor. | When does a cause of action to recover damages for malicious prosecution arise? | 001834.docx | LEGALEASE-00118813-LEGALEASE-00118814 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13130 | Colbert v. City of Chicago, 851 F.3d 649 | 249+3 | The fact that Crutcher was indicted by a grand jury defeats his claim. Noting that "a malicious prosecution action against police officers" can often be "anomalous," we have explained,[T]he State's Attorney, not the police, prosecutes a criminal action. It is conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements by the officers to the prosecutor.Reed v. City of Chi., 77 F.3d 1049, 1053 (7th Cir. 1996) (emphasis added). Thus, a plaintiff may not maintain a malicious-prosecution claim against an arresting officer without first showing "some postarrest action which influenced the prosecutor's decision to indict." Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892, 902 (7th Cir. 2001). While Officer Willingham's allegedly false statement constitutes a post-arrest action, there is no evidence that it influenced the prosecutor's decision to indict, or that the prosecutor relied on it to obtain the indictment. It is likely the prosecutor knew that a judge had already dismissed Officer Willingham's complaint, which was based in part on this arrest report, for lack of probable cause. In fact, Officer Willingham did not testify before the grand jury"Officer Berry, one of the other nine searching officers, did. And there is no evidence connecting Officer Willingham's allegedly false report to Officer Berry's grand-jury testimony. Without more, there is no basis to infer that Officer Willingham's allegedly false report precluded the grand-jury indictment from breaking the chain of causation between Crutcher's arrest and prosecution. Consequently, Crutcher's malicious-prosecution claim against Officer Willingham fails. | Under Illinois law, plaintiff may not maintain malicious-prosecution claim against arresting officer without first showing some postarrest action that influenced prosecutor's decision to indict. | When will an officer be held liable for malicious prosecution? | 001838.docx | LEGALEASE-00118688-LEGALEASE-00118689 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 13131 | Sherman v. Boston, 486 S.W.3d 88 | 46H+86 | "Corporations and partnerships, both of which are fictional legal persons, obviously cannot appear for themselves personally." Simmons, Jannace & Stagg, L.L.P. v. Buzbee Law Firm, 324 S.W.3d 833, 833 (Tex.App."Houston [14th Dist.] 2010, no pet.). Legal entities, such as a corporation or a limited liability company, generally may appear in a district or county court only through a licensed attorney.See Kunstoplast of Am. v. Formosa Plastics Corp., USA, 937 S.W.2d 455, 456 (Tex.1996); Apartment Express LLC v. Southchase North Apartments, No. 14"15"00532"CV, 2015 WL 4930908, at *1, n. 1 (Tex.App."Houston [14th Dist.] Aug. 18, 2015, no pet.) (mem.op.) (per curiam). | Legal entities, such as a corporation or a limited liability company, generally may appear in a district or county court only through a licensed attorney. | Does a corporation or a partnership need to be represented by a licensed attorney? | 001854.docx | LEGALEASE-00118779-LEGALEASE-00118780 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13132 | Malawey v. Malawey, 137 S.W.3d 518 | 76D+127 | Legal custody may be either "joint" or "sole." Section 452.375.1. Joint legal custody is defined as "the parents' shar[ing] the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child[ren], and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority." Section 452.375.1(2). Section 452.375.4 expresses a public policy preference for a custody arrangement that will best assure that both parents participate in decisions concerning their children's health, education and welfare, and ordering trial courts to determine custody arrangements that best assure both parents participate in such decisions so long as it is in the best interests of the child. This statute, however, does not create a presumption favoring imposition of joint custody. Ficker v. Ficker, 62 S.W.3d 496, 500 (Mo.App.2001). Joint legal custody is appropriate only where parents display the willingness and ability to share the rights and responsibilities of raising their children. A.J.K. by R.K. v. J.L., 980 S.W.2d 81, 86 (Mo.App.1998). | Joint legal custody is appropriate only where parents display the willingness and ability to share the rights and responsibilities of raising their children. V.A.M.S. S 452.375, subd. 1(2). | When is joint legal custody appropriate? | Child Custody - Memo 9 - ANG.docx | ROSS-003302169-ROSS-003302170 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 13133 | Stueve Bros. Farms v. United States, 737 F.3d 750 | 148+2.1 | The plaintiffs point out that it has been more than 20 years since the Prado Dam enlargement project began, and they argue that the government's failure to acquire a flowage easement during that period by itself gives rise to a compensable taking. The government's delay in acquiring property, even when it ultimately intends to acquire the property, is normally not enough to constitute a taking. Hilkovsky v. United States, 504 F.2d 1112, 1115 (Ct.Cl.1974). The plaintiffs rely on cases that have held that governmental delays in property acquisition accompanied by severe restrictions on the property owner's use of their property during the period of delay can amount to a taking or a due process violation. See Benenson v. United States, 548 F.2d 939 (Ct.Cl.1977) (acts of government pending acquisition of hotel prevented owners from selling the property or using it for any income-producing purpose); Urbanizadora Versalles, Inc. v. Rivera Rios, 701 F.2d 993 (1st Cir.1983) (14"year government enforced moratorium on development of a property pending condemnation). | Government's delay in acquiring property, even when it ultimately intends to acquire property, is normally not enough to constitute taking. U.S.C.A. Const.Amend. 5. | Does the governments delay in acquiring a property constitute a taking? | Eminent Domain -Memo 68-VP.docx | ROSS-003282804-ROSS-003282805 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 13134 | St. Christopher Assocs. v. United States, 511 F.3d 1376 | 148+2.33 | We disagree. In general, takings claims do not arise under a government contract because, as stated by the Court of Federal Claims, the government is acting in its proprietary rather than its sovereign capacity, and because remedies are provided by the contract. Hughes Commc'ns Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed.Cir.2001). As stated by our predecessor court:[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.Sun Oil Co. v. United States, 215 Ct.Cl. 716, 572 F.2d 786, 818 (Ct.Cl.1978) (citations omitted). Here, HUD entered into the Regulatory Agreement with St. Christopher and, therefore, was acting in its commercial capacity, not in its sovereign capacity, when it declined to consider St. Christopher's rent increase request. Likewise, St. Christopher established its rights with respect to increasing rents for the Apartments when it voluntarily entered into the Regulatory Agreement with HUD. Hence, any claim that St. Christopher may have asserted should be a breach of contract claim, not a taking claim. | Generally, takings claims do not arise under a government contract because the government is acting in its proprietary rather than its sovereign capacity, and because remedies are provided by the contract. U.S.C.A. Const.Amend. 5. | Under what capacity does the government act when it initiates a taking? | 001544.docx | LEGALEASE-00119006-LEGALEASE-00119007 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 13135 | Oneida Indian Nation of New York v. New York, 194 F. Supp. 2d 104 | 209+174 | These defenses rely on the principle that conduct by Plaintiffs or Defendants can validate Indian land transactions even if those transactions were not approved by the United States as required by the Nonintercourse Act. By prohibiting land transactions with Indians that were not sanctioned by the United States, the Nonintercourse Act precludes inquiry into the fairness of the transactions. See Oneida Test Case, 434 F.Supp. at 541 ("By prohibiting all unauthorized dealings with Indians, [the Nonintercourse Act] cuts off any inquiry into the fairness of such dealings insofar as the validity of the resulting transfer is concerned."). In other words, even if the land transactions are somehow shown to be fair in price, as these defenses would allow, they would still be unlawful under the Nonintercourse Act unless approved by the United States. See id. at 530 ("Although the present owners of the [land] may have acted in good faith when acquiring their property, such good faith will not render good a title otherwise not valid for failure to comply with the Nonintercourse Act."). Thus, as a matter of law, the defenses of bona fide purchaser, adequacy of consideration, estoppel, estoppel by sale, and payment are unavailable to Defendants, at least for purposes of determining Defendants' liability. See Cayuga Indian Nation v. Cuomo, 565 F.Supp. 1297, 1301"02 (N.D.N.Y.1983) (striking the defenses of estoppel and estoppel by sale in Indian land claim action arising under the Nonintercourse Act); Seneca Nation of Indians v. State of New York, 93"CV"688A, 1994 WL 688262, at *5 (W.D.N.Y. Oct. 28, 1994) (same). | Accord and satisfaction, unclean hands, and waiver were not defenses to claim that requirement of Nonintercourse Act of federal approval of Indian land transactions was not satisfied; allowing such state law-based defenses in Indian land claim action would have contravened established policy pertaining to Indians' ability to enforce their property rights, and would have contradicted federal policy regarding requirements under Nonintercourse Act. 25 U.S.C.A. S 177. | Will Indian land transactions be unlawful under the Nonintercourse Act unless approved by the United States? | Indians - Memo 25 - TH.doc | ROSS-003283348-ROSS-003283350 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13136 | Madera Production Co. v. Atlantic Richfield Co., 107 S.W.3d 652 | 13+16 | Madera amended its pleading in an effort to exclude any issues of title or ownership to real property; however, the underlying issue that Madera must prove to show its entitlement to damages involves proof of ownership rights in a mineral lease, which in Texas is well established as real property. Whether the recovery is called to be one for conversion, breach of contract, or other nonreal property types of recovery, the true nature of the lawsuit depends on the facts alleged in the petition, the rights asserted, and the relief sought, not on the terms used to describe the cause of action. Delese v. Albertson's, Inc., 83 S.W.3d 827 (Tex.App.-Texarkana 2002, no pet.). | The true nature of any lawsuit depends upon the facts alleged in the petition, the rights asserted, and the relief sought, not the terms used to describe the cause of action. | What determines the nature of a suit? | 001872.docx | LEGALEASE-00118883-LEGALEASE-00118884 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 13137 | Meadows v. Blake, 36 So.3d 1225 | 302+34(1) | Mississippi Rule of Civil Procedure 25(a)(1) states:If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of summons. The action shall be dismissed without prejudice as to the deceased party if the motion for substitution is not made within ninety days after the death is suggested upon the record by service of a statement of the fact of the death as herein provided for the service of the motion.Miss. R. Civ. P. 25(a)(1). In July 2005, the Meadowses filed their Plaintiff's Motion for Leave of Court to File First Amended Complaint in the trial court. This motion suggested the death of Louise upon the record stating, "[p]laintiff Louise Meadows died on February 27, 2005." Blake and Baptist argue that, pursuant to Rule 25, the Meadowses thus had ninety days from the date this motion was filed to file their motion for substitution with the trial Court; however, this provision is inapplicable, since the Plaintiff's Motion for Leave of Court to File First Amended Complaint also incorporated the Meadowses motion for substitution. In the motion, the Meadowses stated: "Plaintiff Lavelle Meadows is seeking this Court's permission to amend the complaint to add claims of wrongful death and to add as Plaintiffs Kaye Burt and Judy Brown, daughters and additional wrongful death beneficiaries of Louise Meadows. A copy of Plaintiff Lavelle Meadows' proposed First Amended Complaint is attached hereto as Exhibit "A." " Further, in the attached proposed First Amended Complaint, the Meadowses stated: "Lavelle Meadows, Kaye Burt and Judy Brown, individually and on behalf of all wrongful death beneficiaries of Louise | A court must look to the content of the pleading to determine the nature of the action; substance is considered over form, and the label is not controlling. | Is the nature or character of a pleading determined from its content? | Pleading - Memo 43 - TH.docx | ROSS-003287658-ROSS-003287660 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 13138 | Tarulli v. Circuit City Stores, 333 F. Supp. 2d 151 | 25T+114 | The FAA covers arbitration provisions that are contained in employment contracts and arbitration agreements, including the provisions such as those contained in the Agreement relevant to the instant matter. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. Section 3 of the FAA provides for a stay of legal proceedings when the court is satisfied that the issue is arbitrable under an arbitration agreement. 9 U.S.C. " 3; see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir.1987). Section 4 of the FAA states that a district court should order parties to proceed in arbitration if there has been a "failure, neglect, or refusal of any party to honor an agreement to arbitrate." Genesco at 844 (quoting Scherk v. Alberto"Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). The Second Circuit addressed this issue and found that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Genesco at 844 (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original)). Likewise, the Supreme Court has interpreted the FAA broadly finding a "liberal policy favoring arbitration agreements." Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). | The Federal Arbitration Act (FAA) covers arbitration provisions that are contained in employment contracts and arbitration agreements. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act (FAA) cover arbitration provisions contained in employment contracts? | Alternative Dispute Resolution - Memo 243 - RK.docx | ROSS-003284465-ROSS-003284467 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 13139 | Hayes v. State, 341 S.W.3d 293 | 401+2 | Venue is either local or transitory, and refers to the "locality in which a court of competent jurisdiction may adjudicate an action." Hawkins v. TN Dept. of Correction, 127 S.W.3d 749, 753 (Tenn.Ct.App.2002). A civil rights claim is typically a transitory action. Howse v. Campbell, M1999"1580"COA"R3"CV, 2001 WL 459106 at *4 (Tenn.Ct.App.2001). A transitory cause of action may become local "when a statute prescribes a particular county in which they must be brought." Hawkins, 127 S.W.3d at 753. One can not waive or consent to venue when a cause of action has been localized by statute. Howse, 2001 WL 459106 at *4. When venue is localized by statute, it becomes jurisdictional and is part of the court's authority to adjudicate the case before it. Hawkins, 127 S.W.3d. at 754. | A civil rights claim is typically a transitory action in terms of evaluating venue; a transitory cause of action may become local when a statute prescribes a particular county in which they must be brought. | When do transitory actions become local? | Venue - Memo 55-ANG.docx | ROSS-003284223-ROSS-003284224 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13140 | Pennsylvania Elec. Co. v. Morrison, 354 Pa. 472 | 145+3 | The further answer is that, no matter how similar a cooperative and a public utility may be in fact, a cooperative is not a public utility within the meaning of the Public Utility Law. Sec. 2(17)(g) of that statute expressly provides that "The term "Public Utility" shall not include * * * (b) any bona fide cooperative association which furnishes service only to its stockholders or members on a nonprofit basis; * * *.' Such is the very character of cooperative association whose incorporation is authorized and prescribed by the Electric Cooperative Corporation Act. The proposed Allegheny Electric Cooperative, Inc. will be empowered, as the Act permits, to generate electric energy and to distribute and sell such energy to its stockholders or members on a non-profit basis. Thus, it qualifies as a true cooperative and is therefore not a public utility as a matter of law: Cf. Philadelphia Association of Wholesale Opticians v. Public Utility Commission, 152 Pa.Super. 89, 97, 98, 30 A.2d 712. The Public Utility Law with its requirement of a certificate of public convenience, as a prerequisite to incorporation, has neither bearing nor influence upon the incorporation of a cooperative under the Electric Cooperative Corporation Act. | The sections of Electric Cooperative Corporation Act, exempting corporations organized thereunder from Public Utility Commission's jurisdiction and control and providing that other laws of commonwealth shall not apply to such corporations, render filing of certificate of public convenience, obtained from Public Utility Commission, by proposed electric cooperative corporation unnecessary before issuance of certificate of incorporation to it. 14 P.S. SS 282, 288; 46 P.S. S 552(1). | Is a cooperative incorporated under Electric Cooperative Corporation Act a public utility? | 002202.docx | LEGALEASE-00119338-LEGALEASE-00119339 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 13141 | State v. Lung, 70 Wash. 2d 365 | 203+511 | The corpus delicti in a homicide case requires (1) the fact of death and (2) a causal connection between the death and a criminal agency, but the corpus delicti does not require proof of a causal relation between the death and the accused. State v. Meyer, 37 Wash.2d 759, 226 P.2d 204 (1951), and State v. Little, 57 Wash.2d 516, 358 P.2d 120 (1961). It can be established by either direct or circumstantial evidence. State v. Anderson, 10 Wash.2d 167, 116 P.2d 346 (1941), and State v. Fry, 39 Wash.2d 8, 234 P.2d 531 (1951). | Corpus delicti in homicide case requires fact of death and causal connection between death and criminal agents, but establishment of corpus delicti does not require proof of causal relation between death and accused. | Can corpus delicti be established by circumstantial evidence? | 002240.docx | LEGALEASE-00119296-LEGALEASE-00119297 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 13142 | Howard v. Commonwealth, 484 S.W.3d 295 | 207+5 | While we do not wholly reject Howard's interpretation of "child," we find that it is incomplete. The Oxford American Dictionary defines "child" as "a young human being below the age of puberty" and also as "one's son or daughter (at any age)." The Oxford American Dictionary of Current English 130 (Oxford University Press 1999). Thus, contrary to Howard's contention, the definition of "child" is not limited to a minor; rather, the term applies to an offspring of a parent, regardless of age. In the context of KRS 530.020(1), "stepchild" refers to the son or daughter of one's spouse by a former partner at any age. Therefore, we hold that Kentucky's incest statute criminalizes sexual intercourse between a stepparent and a stepchild, regardless of age and consent. | In the context of the statute criminalizing incest between a stepparent and stepchild, "stepchild" refers to the son or daughter of one's spouse by a former partner at any age. Ky. Rev. Stat. Ann. S 530.020(1). | Is sexual intercourse considered incest between step-father and a step-child who has reached the age of majority? | 002257.docx | LEGALEASE-00119248-LEGALEASE-00119249 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 13143 | State v. Clevenger, 69 Wash. 2d 136 | 207+4 | Under the fifth assignment of error, appellant contends that the evidence was insufficient to establish the Corpus delicti, and that his motion to dismiss should have been granted. The Corpus delicti of incest consists of (1) an act of sexual intercourse (2) between male and female persons within the prohibited degrees of relationship to each other. | "Corpus delicti of incest" consists of an act of sexual intercourse between male and female persons within prohibited degrees of relationship to each other. | What is the corpus delicti of incest? | Incest - Memo 44 - JS.docx | ROSS-003299664-ROSS-003299665 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 13144 | Crab Boat Owners Ass'n v. Hartford Ins. Co. of the Midwest, 325 F.Supp.2d 1057 | 386+2 | Plaintiffs allege that the underlying complaint's allegation of trespass, which can refer to intrusions either premeditated and malicious or accidental and well-meaning, opens the possibility that plaintiffs could be found liable in the underlying action for unintentional behavior causing property damage, which would fall under the insurance policy's definition of "occurrence." Id. California's jury instructions on trespass do not vary according to the theory alleged in the complaint. See Judicial Council of California, Civil Jury Instructions 2000 (West Publishing 2004). In other words, the pleading of intentional trespass will not restrict the jury to finding liability only on a showing of intentional conduct; a showing of negligence can also prove liability. See Staples v. Hoefke, 235 Cal.Rptr. 165, 171, 235 Cal.Rptr. 165 (1987); Roberts v. Permanente Corp., 188 Cal.App.2d 526, 530"31, 10 Cal.Rptr. 519 (1961). | Under California law, pleading of intentional trespass will not restrict jury to finding liability only on showing of intentional conduct; showing of negligence can also prove liability. | Can a showing of negligence prove liability for trespass? | Trespass - Memo 57 - JS.docx | ROSS-003309844-ROSS-003309845 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13145 | Millers Mut. Ins. Ass'n of Illinois v. Graham Oil Co., 282 Ill. App. 3d 129 | 386+10 | A trespass is an invasion in the exclusive possession and physical condition of land. Colwell Systems, Inc. v. Henson, 117 Ill.App.3d 113, 116-17, 72 Ill.Dec. 636, 452 N.E.2d 889 (1983). In Illinois, one may be liable in trespass for causing a thing or a third person to enter the land of another either through a negligent act or an intentional act. Dial v. City of O'Fallon, 81 Ill.2d 548, 556-59, 44 Ill.Dec. 248, 411 N.E.2d 217 (1980). Thus, as the Pipefitters court recognized, one need not intend to take possession of the encroached-upon premises or deprive occupants of their right to possess those premises to have committed a trespass under Illinois law. Pipefitters, 976 F.2d at 1041. | One may be liable in trespass for causing thing or third person to enter land of another either through negligent act or intentional act. | Can a showing of negligence prove liability for trespass? | 002318.docx | LEGALEASE-00119172-LEGALEASE-00119173 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13146 | Murray v. Neth, 279 Neb. 947 | 15A+1107 | As a general rule, administrative agencies have no general judicial powers, even though they may perform some quasi-judicial duties. An administrative body has no power or authority other than that specifically conferred by statute or by construction necessary to accomplish the plain purpose of the act. There is no statute expressly authorizing the DMV to request or rely upon an addendum to a sworn report. So, the question presented is whether the authority to use an addendum to remedy a defective sworn report is needed to accomplish the purpose of the act. | As a general rule, administrative agencies have no general judicial powers, even though they may perform some quasi-judicial duties. | Do administrative agencies have general judicial powers? | Administrative Law - Memo 165 - RK.docx | ROSS-003312143-ROSS-003312145 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13147 | Hahn v. Neth, 270 Neb. 164 | 15A+1107 | The obvious difficulty is in defining the point at which an omission on a sworn report becomes a jurisdictional defect, as opposed to a technical one. We conclude that the test should be whether, notwithstanding the omission, the sworn report conveys the information required by the applicable statute. As a general rule, administrative agencies have no general judicial powers, even though they may perform some quasi-judicial duties. See, Slansky v. Nebraska State Patrol, 268 Neb. 360, 685 N.W.2d 335 (2004); Ventura v. State, 246 Neb. 116, 517 N.W.2d 368 (1994). An administrative body has no power or authority other than that specifically conferred by statute or by construction necessary to accomplish the plain purpose of the act. Id. Thus, the authority of the director of the Department of Motor Vehicles to administratively revoke an operator's license is only that which is specifically conferred by the administrative license revocation statutes. Given the substantial role which the sworn report plays in an administrative license revocation proceeding, we conclude that the report must, at a minimum, contain the information specified in the applicable statute, in this case " 60"6,205(3), in order to confer jurisdiction. The statutory requirements are not onerous; an arresting officer need only complete a form designed to convey the required information and swear to the information thus conveyed. In this case, Miller did not complete those portions of the sworn report form which would indicate that Hahn "was requested" to submit to the required test or "the type of test" to which he submitted. Because of the omission of this information which is required by " 60"6,205(3), we agree with the district court that the director did not acquire jurisdiction or authority to administratively revoke Hahn's operator's license. To the extent language in Morrissey v. Department of Motor Vehicles, 264 Neb. 456, 647 N.W.2d 644 (2002), and McPherrin v. | As a general rule, administrative agencies have no general judicial powers, even though they may perform some quasi-judicial duties. | Do administrative agencies have general judicial powers? | 002346.docx | LEGALEASE-00119423-LEGALEASE-00119424 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 13148 | Coos Cty. Sheep Co. v. United States, 331 F.2d 456 | 145+9(1) | Since the trees in question were "cut, felled, removed and sold from, or destroyed upon the premises' by the United States, we need not determine the extent of the right of the United States to remove dead or dying trees, or to top or trim the trees reasonably necessary or desirable for the purposes stated in the easement in order to remove hazards and dangers to the use, repair, maintenance or operation of the transmission lines. We are concerned here only with the right of the United States, under the easement, to remove live Douglas fir and hemlock trees adjacent to the transmission lines, which were so located and of such a height that if they fell in the right direction they could fall upon or against the facilities of the United States, when such trees did not touch or overhang in a vertical plane any of such facilities. It is to be noted that after the execution and delivery of the right-of-way deed to the California-Oregon Power Company, that company, some thirty years ago, entered onto the lands described and constructed across the same the electric transmission line which is now described as the Bonneville Power Administration McKinley-Coos electric line and related facilities. In Ford the Supreme Court of Oregon stated, in reference to a similar easement, that the right of the holder thereof to remove trees was restricted to the removal of trees to make such clearings as might have been necessary for the erection of the line. While the court gave no reason for such statement, it occurs to us the reason for such holding, as applied to an easement whose width is not described therein, was to limit the extent of the rights acquired under the easement for the protection of the landowner whose property is subject to such easement, and prevent an extension of such right to the detriment of the landowner. | Under Oregon law, rights acquired under an easement for an electric power transmission line granting right to remove trees and make clearings necessary was right to remove trees and make such clearing as might have been necessary for erection of the line, and right to trim overhanging branches of trees which interfered with the wires if such trimming was reasonably necessary to ensure safe operation of the line. | Can company supplying electricity trim branches of trees interfering with wires if necessary for safety and enjoyment of franchise privileges? | Electricity - Memo 11 - JS.docx | LEGALEASE-00007757-LEGALEASE-00007758 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 13149 | HS Tejas, Ltd. v. City of Houston, 462 S.W.3d 552 | 148+2.1 | The City also contends that the federal takings claims in particular were properly dismissed because they are not technically ripe until the state takings claim is resolved. To the extent the City presents this as a bright-line rule, it is mistaken. As recently recognized by our Supreme Court, in at least some circumstances courts may "consider the federal and state takings claims together, as the analysis for both is complementary." Hearts Bluff, 381 S.W.3d 468, 477 (citing City of Austin v. Travis Cnty. Landfill Co., 73 S.W.3d 234, 238"39 (Tex.2002); Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 933"38 (Tex.1998)). The City presents no arguments to explain why these particular federal takings claims are unripe pending the resolution of parallel state takings claims that apparently hinge on precisely the same legal arguments, and none are apparent to us. Accordingly, we decline to affirm the dismissal of the federal claims on ripeness grounds that have not been adequately presented. | In at least some circumstances courts may consider federal and state takings claims together, as the analysis for both is complementary. | Is the analysis for federal and state takings complementary? | Eminent Domain - Memo 83 - RK.docx | ROSS-003298651-ROSS-003298652 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13150 | Greer v. Nat'l Grid, 89 A.D.3d 1059 | 249+26 | However, the Supreme Court should have granted that branch of the defendants' motion which was to dismiss the second cause of action. The second cause of action arises from the same facts as the first cause of action alleging malicious prosecution, and seeks to recover damages on the theory that a criminal prosecution would not have been initiated against the plaintiff had the defendant National Grid properly trained and supervised its employees. However, allegations of negligence do not support a malicious prosecution cause of action (see Ramos v. City of New York, 285 A.D.2d at 301, 729 N.Y.S.2d 678; Romero v. State of New York, 294 A.D.2d 730, 734, 742 N.Y.S.2d 701) and, as a matter of public policy, New York does not recognize a cause of action to recover damages for negligent prosecution (see Russ v. State Empls. Fed. Credit Union [SEFCU], 298 A.D.2d 791, 793, 750 N.Y.S.2d 658; Coleman v. Corporate Loss Prevention Assocs., Inc., 282 A.D.2d 703, 724 N.Y.S.2d 321; Pandolfo v. U.A. Cable Sys. of Watertown, 171 A.D.2d 1013, 1014, 568 N.Y.S.2d 981).Accordingly, the second cause of action fails to state a cognizable claim, and that branch of the defendants' motion which was to dismiss the second cause of action should have been granted. | In action, inter alia, to recover damages for malicious prosecution, allegation that criminal prosecution would not have been initiated against plaintiff had defendant properly trained and supervised its employees failed to state cognizable claim, since action arose from same facts as first cause of action alleging malicious prosecution, allegations of negligence did not support malicious prosecution cause of action, and cause of action to recover damages for negligent prosecution was not recognized in New York. | Does negligent prosecution supports malicious prosecution? | 05265.docx | LEGALEASE-00082102-LEGALEASE-00082103 | Condensed, Order, SA | 0.59 | 1 | 1 | 0 | 1 | 1 |
| 13151 | Rehoboth Mall Ltd. P'ship v. NPC Int'l, 953 A.2d 702 | 233+590 | We find no support for the trial court's conclusion that the first renewal term constituted a new lease. Delaware courts do not give any particular significance to the use of the words "renew" or "extend" in deciding whether a new lease has been created. Rather, applying traditional contract principles, our courts determine the intent of the parties from the language of the lease. In Seaford, the parties renegotiated the terms of the lease and executed a Lease Amendment. Here, by contrast, the renewal provision expressly continues all of the rights and obligations under the original lease, with the only modification being a stated adjustment to the rental price. In addition, the renewal provision states that the renewal extends the term of the original lease automatically and without the execution of a new lease. Thus, we conclude that the renewal provision extends the original lease, which continues to govern the parties' relationship during all renewal periods. | Delaware courts do not give any particular significance to the use of the words "renew" or "extend," in deciding whether a new lease has been created; rather, applying traditional contract principles, Delaware courts determine the intent of the parties from the language of the lease. | Do the courts apply traditional contract principles while interpreting lease provisions? | 001950.docx | LEGALEASE-00119690-LEGALEASE-00119691 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 13152 | Metro. Dist. v. Hous. Auth. of City of Hartford, 12 Conn. App. 499 | 317A+101 | Accordingly, as a municipal corporation rendering utility services in the form of sewer services, the petitioner is a "municipal utility" within the meaning of the statute. Further, sewer services, like water services, are considered "utility services" and fit within the scope of General Statutes " 16"262f. | Metropolitan district, as a municipal corporation rendering utility services in the form of sewer services, was a "municipal utility," within meaning of utility receivership statute. C.G.S.A. S 16-262f. | Is a municipal corporation rendering utility services in the form of sewer services a municipal utility? | 001979.docx | LEGALEASE-00119676-LEGALEASE-00119677 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 13153 | Lim v. Offshore Specialty Fabricators, 404 F.3d 898 | 25T+116 | Plaintiffs seek relief because OSFI did not request the district court to stay these proceedings and order arbitration. OSFI responds that, based on the arbitration clause, it properly moved to dismiss, under Rules 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(3) (improper venue). As noted, foreign arbitration clauses are deemed a "subset of foreign forum selection clauses in general". Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER, 515 U.S. 528, 534, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). Therefore, analysis of foreign forum selection clauses can be extended to foreign arbitration clauses. Id. | Foreign arbitration clauses are deemed a subset of foreign forum selection clauses in general; therefore, analysis of foreign forum selection clauses can be extended to foreign arbitration clauses. | Do courts consider foreign arbitration clauses as a subset of foreign forum selection clauses? | 05243.docx | LEGALEASE-00082108-LEGALEASE-00082110 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 13154 | Lynn v. Allied Corp., 41 Ohio App. 3d 392 | 253+1076(3) | Finally, since appellant Janice Lynn's causes of action failed to survive appellees' motion for summary judgment, appellant Luther Lynn's cause of action for loss of consortium must also fail. The derivative cause of action for loss of consortium cannot provide greater relief than the relief permitted for the primary cause of action. Messmore v. Monarch Machine Tool Co. (1983), 11 Ohio App.3d 67, 11 OBR 117, 463 N.E.2d 108. | Derivative cause of action for loss of consortium cannot provide greater relief than relief permitted for primary cause of action. | May a derivative cause of action provide greater relief than that available under a primary cause of action? | Action - Memo 32 - ANG.docx | ROSS-003297914-ROSS-003297915 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 13155 | Simpson v. Estate of Simpson, 922 So. 2d 1027 | 162+243 | Instead of ending its inquiry there, the probate court proceeded to determine the validity of Mark's claim. Under the applicable probate statutes, the merits of Mark's claim should have been determined in an independent action. In disputes over the validity of timely filed claims, section 733.705(4) requires the claimant to "bring an independent action upon the claim" if an objection to the claim is served. Section 733.705(5) contemplates the use of an independent action after the probate court permits the filing of an untimely claim. It states, "A claimant may bring an independent action or declaratory action upon a claim which was not timely filed pursuant to s. 733.702(1) only if the claimant has been granted an extension of time to file the claim pursuant to s. 733.702(3)." The term "independent action" requires the filing of a separate action upon a claim against the estate. In re Pridgeon's Estate, 349 So.2d 741 (Fla. 1st DCA 1977). This requirement allows pleadings and responses sufficient to set the issues before the court prior to hearing. In re Fornash's Estate, 372 So.2d 128, 129 (Fla. 2d DCA 1979). | The term "independent action" in statute requiring a claimant against an estate to "bring an independent action upon the claim" if an objection to the claim is filed requires the filing of a separate action upon a claim against the estate; this requirement allows pleadings and responses sufficient to set the issues before the court prior to hearing. West's F.S.A. S 733.705(4, 5). | Do independent action requires the filing of a separate action upon a claim against an estate? | Action - Memo 43 - RM.docx | ROSS-003298314-ROSS-003298315 | Condensed, Order, SA | 0.66 | 1 | 1 | 0 | 1 | 1 |
| 13156 | Feigenbaum v. Guaracini, 402 N.J. Super. 7 | 366+38 | Subrogation rights may be created in three different ways: "(1) by agreement; (2) by statute; or (3) judicially as an equitable device to compel the ultimate discharge of an obligation by the one who should in good conscience pay it." First Union Nat'l Bank v. Nelkin, 354 N.J.Super. 557, 565, 808 A.2d 856 (App.Div.2002) (citing Culver, supra, 115 N.J. at 456, 559 A.2d 400). The doctrine of equitable subrogation should not be imposed " "where its enforcement would be inconsistent with the terms of a contract or when the contract, either expressly or by implication, forbids its application." " Culver, supra, 115 N.J. at 456, 559 A.2d 400 (quoting Ganger v. Moffett, 8 N.J. 73, 80, 83 A.2d 769 (1951)). Equitable subrogation may only be imposed "if the cause is just and enforcement is consonant with right and justice." Standard Acc. Ins., supra, 15 N.J. at 173, 104 A.2d 288. | The doctrine of equitable subrogation should not be imposed where its enforcement would be inconsistent with the terms of a contract or when the contract, either expressly or by implication, forbids its application. | When may equitable subrogation be imposed? | 05267.docx | LEGALEASE-00082085-LEGALEASE-00082086 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13157 | Sun Valley Fin. Servs. of Phoenix v. Guzman, 212 Ariz. 495 | 366+1 | Equitable subrogation is the "substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Mosher v. Conway, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935); see also Lamb Excavation, 208 Ariz. at 480, 95 P.3d at 544. In a practical sense, equitable subrogation works like an assignment. Cf. State Farm Fire and Cas. Co. v. Knapp, 107 Ariz. 184, 185, 484 P.2d 180, 181 (1971). It is, as the name reflects, an equitable doctrine designed to prevent injustice"the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it." Mosher, 45 Ariz. at 468, 46 P.2d at 112. Application of the doctrine depends upon the particular facts and circumstances of each case. Subrogation can only be granted when an equitable result will be reached. Id.It involves three elements: (1) A valuable right; (2) a person who owns the right; and (3) a person who seeks to be substituted in that ownership. There must exist a claim or obligation against the debtor; an original right to that claim on the part of him in whose place substitution is sought, and some right belonging to him who seeks the substitution which will be protected thereby. So when one, being himself a creditor, pays another creditor, whose claim is preferable to his, it is held that the person so paying is subrogated to the rights of the other creditor | Application of the doctrine of equitable subrogation depends upon the particular facts and circumstances of each case, and subrogation can only be granted when an equitable result will be reached. | What does the application of subrogation depend upon? | Subrogation - Memo 12 - VP.docx | ROSS-003301698-ROSS-003301699 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13158 | Hunt v. N. Carolina Logistics, 193 F. Supp. 3d 1253 | 217+3512 | New Mexico recognizes that the doctrine of subrogation "allows an insurer who has fully compensated the insured to step into the shoes of the insured and collect what it has paid from the wrongdoer." Amica Mutual Insurance Co. v. Maloney, 1995"NMSC"059, " 9, 120 N.M. 523, 903 P.2d at 838. "Subrogation, whether created by contract or by operation of law, is an equitable remedy and equitable principles control its application." Farmers Ins. Group of Companies v. Martinez, 107 N.M. 82, 83, 752 P.2d 797, 799 (Ct.App.1988). Subrogation is therefore "an equitable remedy of civil law origin whereby through a supposed succession to the legal rights of another, a loss is put ultimately on that one who in equity and good conscience should pay it." U. S. Fid. & Guar. Co. v. Raton Nat. Gas Co., 1974"NMSC"030, " 9, 86 N.M. 160, 521 P.2d 122, 124. | New Mexico law recognizes that the doctrine of subrogation allows an insurer who has fully compensated the insured to step into the shoes of the insured and collect what it has paid from the wrongdoer. | What does subrogation allow? | 002549.docx | LEGALEASE-00119988-LEGALEASE-00119989 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 13159 | Allstate Ins. Co. v. Palumbo, 109 Conn. App. 731 | 366+1 | Although "[s]ubrogation is a highly favored doctrine ... which courts should be inclined to extend rather than restrict"; (internal quotation marks omitted) Wasko v. Manella, supra, 269 Conn. at 543, 849 A.2d 777; "[t]here is no general rule to determine whether a right of subrogation exists. Thus, ordering subrogation depends on the equities and attending facts and circumstances of each case." 73 Am.Jur.2d 552, Subrogation " 10 (2001). "The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. Kakalik v. Bernardo, 184 Conn. 386, 395, 439 A.2d 1016 (1981); Robert Lawrence Associates, Inc. v. Del Vecchio, 178 Conn. 1, 18"19, 420 A.2d 1142 (1979); Gager v. Gager & Peterson, LLP, 76 Conn.App. 552, 560, 820 A.2d 1063 (2003).... When the trial court draws conclusions of law from its balancing of the equities, however, our review is plenary. Torres v. Waterbury, 249 Conn. 110, 118, 733 A.2d 817 (1999)." (Citations omitted; internal quotation marks omitted.) Wasko v. Manella, supra, at 542"43, 849 A.2d 777. | Although subrogation is a highly favored doctrine which courts should be inclined to extend rather than restrict, there is no general rule to determine whether a right of subrogation exists. | What does ordering subrogation depend on? | 002592.docx | LEGALEASE-00120079-LEGALEASE-00120080 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13160 | In re Farris, 229 Or. 209 | 46H+942 | We find no merit in this assignment of error; we add, however, that no attorney should be appointed as prosecutor who is counsel for a client interested in the disbarment case. Those who prosecute should be free from all entanglements that could prompt a surmise that their purpose is other than to serve the best interests of jurisprudence. | No attorney should be appointed as prosecutor in disbarment proceeding if he was counsel for client interested in case. | Can an attorney be appointed as prosecutor in a disbarment proceeding if he was counsel for a client interested in the disbarment case? | Administrative Law - Memo 176 - RK.docx | ROSS-003297494 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 13161 | Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773 | 25T+141 | Traditional principles of agency law may bind a nonsignatory to an arbitration agreement. See Interbras Cayman Co. v. Orient Victory Shipping Co., S.A., 663 F.2d 4, 6-7 (2d Cir.1981); A/S Custodia, 503 F.2d at 320; Fisser, 282 F.2d at 233-38; Keystone Shipping, 782 F.Supp. at 31-32. Because the Working Agreement was entered into well before Thomson purchased Rediffusion, Thomson could not possibly be bound under an agency theory. | Traditional principles of agency law may bind nonsignatory to arbitration agreement. | Do the traditional principles of agency law bind a nonsignatory to an arbitration agreement? | 002644.docx | LEGALEASE-00120022-LEGALEASE-00120023 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13162 | Mecum v. Weilert Custom Homes, 239 F. Supp. 3d 1093 | 170B+3053 | Whether a binding arbitration agreement exists is determined under the principles of state contract law. Tinder, 305 F.3d at 735. Because all of the relevant events occurred in Wisconsin, Wisconsin law determines the validity of the alleged agreement. Id. at 733 (7th Cir. 2002). Under Wisconsin law, the elements of an enforceable contract are offer, acceptance, and consideration. Runzheimer Int'l, Ltd. v. Friedlen, 862 N.W.2d 879, 885, 362 Wis.2d 100 (Wis. 2015). "The existence of an offer and acceptance are mutual expressions of assent, and consideration is evidence of the intent to be bound to the contract." NBZ, Inc. v. Pilarski, 520 N.W.2d 93, 96, 185 Wis.2d 827 (Wis. App. 1994). | Whether a binding arbitration agreement exists is determined under the principles of state contract law. | Which principles of law are utilized to determine the existence of a binding arbitration agreement? | 002665.docx | LEGALEASE-00120068-LEGALEASE-00120070 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13163 | Bahoor v. Varonis Sys., 152 F. Supp. 3d 1091 | 170B+3053 | For arbitration to be required, the Court must determine that (1) there is a valid written agreement to arbitrate; and (2) Bahoor's claims are within the scope of the arbitration agreement. Zurich Am. Ins. Co. v. Watts Indus., Inc., 417 F.3d 682, 687 (7th Cir.2005).Whether a binding arbitration agreement exists is determined under principles of state contract law. Janiga, 615 F.3d at 742 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 939, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). And "the party seeking to invalidate 002665002667CONFIDENTIALor oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration." Paragon Micro, Inc. v. Bundy, 22 F.Supp.3d 880, 887 (N.D.Ill.2014) (citing Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91"92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). The FAA also "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). | Whether a binding arbitration agreement exists is determined under principles of state contract law. | Which principles of law are utilized to determine the existence of a binding arbitration agreement? | Alternative Dispute Resolution - Memo 300 - RK.docx | LEGALEASE-00008911- LEGALEASE-00008913 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 13164 | S.C. Pub. Serv. Auth. v. F.E.R.C., 762 F.3d 41 | 145+9(2) | In TAPS, the court rejected petitioners' interpretation of Otter Tail. That was an antitrust enforcement action in which the Supreme Court held that an electric power company was not, by reason of the Commission's authority under the FPA to compel involuntary interconnections of power, immune from antitrust regulation for its refusals to sell at wholesale or to transfer power to municipalities. 410 U.S. at 373, 93 S.Ct. 1022. The Court noted that, as originally proposed, the FPA would have made public utilities common carriers and empowered the Commission to order the wheeling of power if it was "necessary or desirable in the public interest," but these provisions were eliminated and replaced by involuntary wheeling authority "subject to limitations unrelated to antitrust considerations" in order to "preserve the voluntary action of the utilities." Id. at 373"74, 93 S.Ct. 1022 (internal quotation marks omitted). Based on this legislative history, the Court explained that "Congress rejected a pervasive regulatory scheme for controlling the interstate distribution of power in favor of voluntary commercial relationships," and that "[w]hen these relationships are governed in the first instance by business judgment and not regulatory coercion, courts must be hesitant to conclude that Congress intended to override the fundamental national policies embodied in the antitrust laws." Id. at 374, 93 S.Ct. 1022 (emphasis added). In TAPS, this court concluded that "while Otter Tail may represent a general rule that [the Commission]'s authority to order open access is limited, the FPA, like the [Natural Gas Act], makes an exception to that rule where [the Commission] finds undue discrimination." 225 F.3d at 686"87 (citing Associated Gas Distributors, 824 F.2d at 998). The court thus recognized that Otter Tail did not purport to limit the Commission's Section 206 authority to remedy practices affecting rates that are unduly discriminatory. Rather, the Supreme Court | Orders from Federal Energy Regulatory Commission (FERC) under FPA that merely required electricity transmission planning regions to establish processes for identifying and evaluating public policies that might affect transmission needs did not violate requirement that FERC act in such a way to facilitate "planning and expansion of transmission facilities to meet the reasonable needs of load-serving entities to satisfy (their) service obligations"; requirement would be violated only if FERC exercised its authority in manner that was at odds with needs of load-serving entities. Federal Power Act, S 217(b)(4), 16 U.S.C.A. S 824q(b)(4). | Does the Federal Power Act give the Federal Energy Regulatory Commission (FERC) the authority to order involuntary wheeling of electric power? | 002706.docx | LEGALEASE-00120195- LEGALEASE-00120196 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 13165 | Olson v. Cty. of Shasta, 5 Cal. App. 3d 336 | 148+266 | 45 Plaintiffs contend that the two verdicts reached by the jury, namely (1) the verdict for defendant against plaintiffs on all claims for damages and (2) the verdict as the cost "of remedying the situation for the plaintiffs' were not inconsistent merely because the jury found against the plaintiffs individually but for the plaintiffs collectively. Plaintiffs argue that though the jury considered the April 9, 1966, storm as Act of God, the jury could quite properly find that the county improvements did contribute to past damage and would contribute to Future flood damage and therefore should be corrected at the cost estimated by the county. Plaintiffs liken this sort of situation to a proceeding by a public body in eminent domain and thus argue that the action must be tried Before the anticipated damage occurs. (See, e.g., People v. Ricciardi (1943) 23 Cal.2d 390, 144 P.2d 799.) An action in inverse condemnation, however, is generally available only where the taking results in property damage or destruction or other depreciation in market value or unlawfully dispossesses the owner. (California Condemnation Practice (Const.Ed.Bar), s 9.16, pp. 177"178.) The very definition of a "taking" requires an "act" (p. 178), and the risk of future flooding is not an act. | An action in inverse condemnation is generally available only where taking results in property damage or destruction or other depreciation in market value or unlawfully dispossesses owner. | Is the risk of future flooding considered an act for purposes of a taking? | 002730.docx | LEGALEASE-00120217- LEGALEASE-00120218 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13166 | Nguyen v. Burgerbusters, 182 N.C. App. 447 | 249+28 | "In an action for malicious prosecution, the malice element may be satisfied by a showing of either actual or implied malice." Beroth Oil, 173 N.C.App. at 99, 618 S.E.2d at 746 (citation omitted). "Implied malice ... may be inferred from want of probable cause in reckless disregard of the plaintiff's rights." Id.; see also Williams, 105 N.C.App. at 203, 412 S.E.2d at 901 ("It is well settled that legal malice may be inferred from a lack of probable cause."). Thus, the same evidence supporting the trial court's submission of the element of lack of probable cause to the jury also supports the submission of the issue regarding malice on the part of defendant in initiating embezzlement charges against plaintiff | In an action for malicious prosecution, the malice element may be satisfied by a showing of either actual or implied malice; implied malice may be inferred from want of probable cause in reckless disregard of the plaintiff's rights. | How is the element of malice satisfied in an action for malicious prosecution? | 002757.docx | LEGALEASE-00120250- LEGALEASE-00120251 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13167 | United States v. Al Sharaf, 183 F. Supp. 3d 45 | 221+179 | "Federal courts have subject-matter jurisdiction over federal criminal prosecutions by virtue of 18 U.S.C. " 3231, which vests the district courts with the power to hear "all offenses against the laws of the United States." " United States v. Yousef, 750 F.3d 254, 259 (2d Cir.2014). This jurisdiction is limited, however, by the Diplomatic Relations Act of 1978, codified at 22 U.S.C. " 254 et seq., which implements this country's treaty obligations under the Vienna Convention on Diplomatic Relations ("VCDR"). Specifically, the Diplomatic Relations Act provides that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations ... or under any other laws extending diplomatic privileges and immunities shall be dismissed." 22 U.S.C. " 254d. A particular individual's immunity "may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure." Id. Under the VCDR, in turn, "a diplomat enjoys immunity from the criminal jurisdiction of the host country," subject to certain restrictions. Aidi v. Yaron, 672 F. Supp. 516, 518 (D.D.C.1987). | Under the Vienna Convention on Diplomatic Relations, a diplomat enjoys immunity from the criminal jurisdiction of the host country, subject to certain restrictions. | Does a diplomat enjoy immunity from the criminal jurisdiction of the host country? | 002823.docx | LEGALEASE-00119856-LEGALEASE-00119857 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 13168 | Smith v. McMullen, 589 F. Supp. 642 | 237+7(1) | The cause of action upon which the present motion is based involves alleged slanderous statements. In order to constitute actionable slander under Texas law, there must be a defamatory statement orally communicated or published to a third party without legal excuse. Glenn v. Gidel, 496 S.W.2d 692, 697 (Tex.Civ.App.-Amarillo 1973, no writ). The defamatory statement must be either actionable per se, i.e., defamatory in itself, or actionable per quod, i.e., not actionable on its face, but actionable only in view of the actual damages resulting from the slanderous words. Id. at 697. In general, oral words are not actionable without pleading and proof of special damages. Stearns v. McManis, 543 S.W.2d 659, 661"62 (Tex.Civ.App.-Houston [1st Dist.] 1976, writ dism'd). However, when a statement unambiguously and falselyimputescriminal conduct to another, it is actionable per se, and it is error to allow a jury to determine whether such statements are defamatory. Raymer v. Doubleday & Co., Inc., 615 F.2d 241, 246 (5th Cir.1980). Likewise, an oral defamation which "affects a person injuriously in his office, profession, or occupation" is also actionable per se without the pleading and proof of special damages. Goree v. Carnes, 625 S.W.2d 380, 384 (Tex.App.-San Antonio 1981, no writ); Bayoud v. Sigler, 555 S.W.2d 913, 915 (Tex.Civ.App.-Dallas 1977, writ dism'd). Alternatively, if a defamatory meaning may exist, but does not necessarily exist, then the statement is ambiguous and the court must allow a jury to determine whether the communication would be understood by the ordinary reader in a defamatory sense. Raymer, 615 F.2d at 246. | Under Texas law, when a statement unambiguously and falsely imputes criminal conduct to another, it is actionable slander per se, and it is error to allow a jury to determine whether such statements are defamatory. | Does falsely imputing a criminal offense constitute slander per se? | 002888.docx | LEGALEASE-00119874-LEGALEASE-00119876 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13169 | Ford Motor Credit Co. v. Ditton, 52 Ala. App. 555 | 386+6 | The gist of the action of trespass is an injury to the possession of personal property by use of unlawful force. Unlawful force is the essential element of the action. Cox v. Stuart, 229 Ala. 409, 157 So. 460; Webb v. Dickson, 276 Ala. 553, 165 So.2d 103. Such force may be actual physical force or it may be constructive force. Constructive force in such cases has been defined in a general way as that sort, such as threats or intimidation, to compel the submission of plaintiff against his will to the appropriation of what he asserts to be his property. Jones v. Americar, Inc., supra. The threats or intimidation referred to are those which if carried out would amount to a breach of peace or if resisted would tend to promote a breach of peace. We have found no case in which such threats and intimidation did not occur in the presence of the plaintiff and at the time of the taking. We can conceive of circumstances where such constructive *558 force could have been applied by letter or phone, etc., at a time prior to the taking, but such are not the facts in this case. We find in the evidence no threat or intimidation committed by the agent of defendant during the conversation with plaintiff or her attorney on the night of July 10-two days prior to the taking. The statement made by the agent, Brian, that since repossession was refused by plaintiff he would have to "steal" the car cannot be construed to amount to a threat or intimidation to compel plaintiff to submit. It was conceded by counsel in oral argument that such statement meant only that repossession would be attempted covertly at a time and place when plaintiff was not present. | Gist of action of trespass is an injury to the possession of personal property by use of unlawful force which is essential element of action. | Is unlawful force an essential element of trespass? | Trespass - Memo 73 - TH.docx | ROSS-003295151-ROSS-003295152 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 13170 | Stephan v. United States, 133 F.2d 87 | 384+2 | The phrase "in levying War against them" is not here involved. This definition is meticulously exclusive and that it was so intended is indicated by the use of the adverb "only". The Constitution has left no room for constructive treason and Congress could not and has not undertaken to restrict or enlarge the constitutional definition. | The constitutional definition of treason has left no room for constructive treason, and Congress could not and has not undertaken to restrict or enlarge the constitutional definition. 18 U.S.C.A. S 2381; U.S.C.A. Const. art. 3, S 3, cl. 1. | Can Congress restrict or enlarge the constitutional definition of treason? | 003674.docx | LEGALEASE-00120282-LEGALEASE-00120283 | SA, Sub | 0.29 | 0 | 0 | 1 | 1 | |
| 13171 | Chicago W. Div. Ry. Co. v. Rend, 6 Ill. App. 243 | 386+4 | Where an injury is inflicted to a plaintiff's right by a willful act of force, it constitutes a trespass. 1 Chit. Pl. 128; Percival v. Hickey, 18 Johns. 257; Wilson v. Smith, 10 Wend. 324; Cadwell v. Farrell, 28 Ill. 438. | Where an injury is inflicted to a plaintiff's right by a willful act of force, it constitutes a trespass. | Can an injury inflicted to a plaintiff's right by a willful act constitute a trespass? | 003678.docx | LEGALEASE-00120286-LEGALEASE-00120287 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 13172 | Ryals v. U.S. Steel Corp., 562 So. 2d 192 | 272+1045(3) | We agree; if reckless or wanton conduct is the appropriate standard of care applicable to these facts, then a jury question has been presented as to U.S. Steel's conduct. We believe, however, that these facts strongly demonstrate a public policy justification for lowering the requisite degree of care due from a landowner to one who, as here, wrongfully enters upon the land of another to commit a crime. For public policy reasons, therefore, we hold that the duty owed by a landowner to an adult trespasser who comes upon the land and is injured while committing a crime is the duty not to intentionally injure such trespasser. | Duty owed by landowner to adult trespasser who comes upon land and is injured while committing crime is duty not intentionally to injure trespasser. | Is there a duty upon the landowner not to injure the trespasser using needless violence? | 003693.docx | LEGALEASE-00120295-LEGALEASE-00120296 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13173 | People v. Mollette, 87 Misc. 2d 236 | 203+520 | This Court finds it impossible to acknowledge the sincerity of such a claim. Murder, the taking of the life of another human being, has always been considered the most serious crime in civilized society and, indeed, in this state. | Murder, the taking of the life of another human being, has always been considered the most serious crime in civilized society, and the right to life has always been paramount in our laws, and certainly far more precious than one's right to property or other interests. | Is murder considered the most serious crime in a civilized society? | 003168.docx | LEGALEASE-00120412-LEGALEASE-00120413 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 13174 | United States v. Reza-Ramos, 816 F.3d 1110 | 203+522 | As we have previously explained, the federal murder statute (originally " 273, now " 1111) "was passed by Congress to "enlarge the common law definition" of murder." United States v. Spencer, 839 F.2d 1341, 1343 (9th Cir.1988) (quoting Special Joint Comm. on the Revision of the Laws, Revision and Codification of the Laws, Etc., H.R.Rep. No. 2, 60th Cong., 1st Sess., pt. 1, at 24 (1908)). "The enlarged " [273] definition was "similar in terms to the statutes defining murder in a large majority of States." " Id. Section 273 was codified without change in 1946 as 18 U.S.C. " 452 (1946). | Federal murder statute was enacted by Congress to enlarge common law definition of murder. 18 U.S.C.A. S 1111. | Did congress pass the federal murder statute to enlarge the common law definition of murder? | 003181.docx | LEGALEASE-00120492-LEGALEASE-00120493 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13175 | Com. v. Matchett, 386 Mass. 492 | 203+520 | The purpose of our murder statute, G.L. c. 265, s 1, is to gradate punishment and to categorize murder as murder in the first or second degree. The statute does not serve to transform a death, without more, into a murder. See Commonwealth v. Ambers, 370 Mass. 835, 839-840, 352 N.E.2d 922 (1976); People v. Aaron, 409 Mich. 672, 719, 299 N.W.2d 304 (1980). Under the charge given by the judge in this case, however, once the prosecutor proved the malicious intent required for the extortion charge, the jury, under G.L. c. 265, s 1, could return a verdict of murder in the second degree.The purpose of our murder statute, G.L. c. 265, s 1, is to gradate punishment and to categorize murder as murder in the first or second degree. The statute does not serve to transform a death, without more, into a murder. See Commonwealth v. Ambers, 370 Mass. 835, 839-840, 352 N.E.2d 922 (1976); People v. Aaron, 409 Mich. 672, 719, 299 N.W.2d 304 (1980). Under the charge given by the judge in this case, however, once the prosecutor proved the malicious intent required for the extortion charge, the jury, under G.L. c. 265, s 1, could return a verdict of murder in the second degree. | Purpose of statute governing murder is to gradate punishment and to categorize murder as murder in first or second degree, and does not serve to transform death, without more, into murder. M.G.L.A. c. 265, S 1. | What is the purpose of the murder statute? | 003183.docx | LEGALEASE-00120494-LEGALEASE-00120495 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 13176 | People v. Russell, 266 Mich. App. 307 | 92+1132(50) | Accordingly, while defendant is correct in his assertion that M.C.L. " 750.520e(1)(d) precludes sexual conduct between two consentingadults under some circumstances when the adults are related by affinity, this is irrelevant to whether the statute is unconstitutionally vague. M.C.L. " 750.520e(1)(d) is not vague on its face because it clearly and plainly sets forth the elements that the prosecutor must prove beyond a reasonable doubt and it does not leave the jury with unstructured and unlimited discretion in finding guilt. | Statute prohibiting sexual contact between two individuals related by blood or affinity to the third degree does not give trier of fact unstructured and unlimited discretion in finding guilt, and thus, statute is not unconstitutionally vague on its face, even though statute precludes sexual conduct between two consenting adults under some circumstances. M.C.L.A. SS 750.520e(1)(d), 750.520a(n). | Does the law prohibit all incestual sexual relations among consenting adults? | 003185.docx | LEGALEASE-00120541-LEGALEASE-00120542 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 13177 | Underwager v. Salter, 22 F.3d 730 | 237+51(1) | Only Salter and Toth remained as defendants. The district court granted summary judgment in their favor, concluding that no evidence in the record suggests that they acted with "actualmalice"-a term that reads to the untutored eye as a proxy for "ill will" but actually means knowledge that the statement was false, or doubts about its truth coupled with reckless disregard of whether it was false. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, ---- -----, 111 S.Ct. 2419, 2429-30, 115 L.Ed.2d 447 (1991). See also Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); Chang v. Michiana Telecasting Corp., 900 F.2d 1085, 1088 (7th Cir.1990). The district judge assumed that Salter and Toth hold Underwager in low esteem and would be delighted to see his career as an expert witness in tatters, but the judge held that the undisputed evidence shows that Salter believes that all of her statements are true, that Toth believes that the statements in the Mr Bubbles tape are true, and that neither person acted recklessly in reaching these conclusions. Salter and Toth add, in defense of their judgment, that the undisputed facts show that the statements are actually true, making their states of mind (and the care that preceded their statements) irrelevant. Like the district court we shall assume that at least some of the statements are untrue and defamatory. Cf. Moldea v. New York Times Co., 15 F.3d 1137 (D.C.Cir.1994). Affidavits offered in opposition to the motion for summary judgment create a material dispute on the truth of the statements. Like the district court, however, we believe that there is no bona fide dispute about actualmalice. | "Actual malice," in defamation context, does not mean "ill will," but means knowledge that statement was false, or doubts about its truth coupled with reckless disregard of whether it was false. | Does knowledge of a false statement constitute actual malice? | 003324.docx | LEGALEASE-00120609-LEGALEASE-00120610 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 13178 | Pan Am Sys. v. Hardenbergh, 871 F. Supp. 2d 6 | 92+2161 | We can also tell from the Complaint that the speech at issue in this case involves matters of public concern. Matters of public concern are those that can be "fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146"47, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Matters of private concern are those that address "matters only of personal interest." Id. Courts determine whether a statement pertains to a public concern by assessing its "content, form and context." Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 761, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). | Under Maine law, courts determine whether an allegedly defamatory statement pertains to a public concern, protected by First Amendment, by assessing its content, form and context. U.S.C.A. Const.Amend. 1. | How do Courts determine whether statements involve a matter of public concern? | Libel and Slander - Memo 155 - RK.docx | ROSS-003322793-ROSS-003322795 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 13179 | In re Entergy Corp., 142 S.W.3d 316 | 317A+102 | In construing PURA or any other statute, our objective is to determine and give effect to the Legislature's intent. City of San Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex.2003). We look to the " "plain and common meaning of the statute's words." " Id. (quoting State v. Gonzalez, 82 S.W.3d 322, 327 (Tex.2002)). When a statute's meaning is unambiguous, we interpret that statute according to its plain language. Id | In construing the Public Utility Regulatory Act (PURA) or any other statute, a court's objective is to determine and give effect to the legislature's intent. V.T.C.A., Utilities Code SS 39.001-41.104. | What is the courts objective in construing the Public Utility Regulatory Act (PURA)? | 003501.docx | LEGALEASE-00120332-LEGALEASE-00120333 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13180 | State Farm Mut. Auto. Ins. Co. v. Du Page Cty., 2011 IL App (2d) 100580 | 366+1 | Equitable subrogation is a remedial device that prevents unjust enrichment. American Family Mutual Insurance Co. v. Northern Heritage Builders, L.L.C., 404 Ill.App.3d 584, 588, 344 Ill.Dec. 617, 937 N.E.2d 323 (2010). The right of equitable subrogation arises when a party pays a debt for which another is primarily liable and that in equity and good conscience should have been discharged by the latter. See North American Insurance Co. v. Kemper National Insurance Co., 325 Ill.App.3d 477, 481, 259 Ill.Dec. 448, 758 N.E.2d 856 (2001). Like subrogation in general, it is a device where a party who pays a debt or claim of another succeeds to the rights of the other with respect to the debt or claim the party paid. See North American Insurance Co., 325 Ill.App.3d at 481, 259 Ill.Dec. 448, 758 N.E.2d 856. | The right of equitable subrogation arises when a party pays a debt for which another is primarily liable and that in equity and good conscience should have been discharged by the latter. | What is the doctrine of equitable subrogation? | Subrogation - Memo 81 - ANG C.docx | ROSS-003324622-ROSS-003324624 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 13181 | Suffolk Const. Co. v. Benchmark Mech. Sys., 475 Mass. 150 | 366+32 | Implied "[s]ubrogation is an equitable adjustment of rights that operates when a creditor ... is entitled to recover from two sources, one of which bears a primary legal responsibility. If the secondary source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the creditor, ... called the subrogor) against the third, primarily responsible party." (Emphases added.) Frost v. Porter Leasing Corp., 386 Mass. 425, 426"427, 436 N.E.2d 387 (1982). The underlying principle of implied subrogation is to prevent an unwarranted windfall, something disfavored in the law. Id. at 428. | "Implied subrogation" is an equitable adjustment of rights that operates when a creditor is entitled to recover from two sources, one of which bears a primary legal responsibility; if the secondary source, the subrogee, pays the obligation, it succeeds to the rights of the party it has paid, the subrogor, against the third, primarily responsible party. | What is an implied subrogation? | Subrogation - Memo 88 - MS C.docx | ROSS-003316155-ROSS-003316156 | SA, Sub | 0.42 | 0 | 0 | 1 | 1 | |
| 13182 | Chimarios v. Duhl, 152 A.D.2d 508 | 401+4 | Generally, the venue of a transitory action lies in the county where the cause of action arose. (Slavin v. Whispell, 5 A.D.2d 296, 171 N.Y.S.2d 892 [1st Dept 1958]). This rule is predicated on the notion of convenience for trial witnesses to be present at trial. (Boriskin v. Long Island Jewish"Hillside Medical Center, 85 A.D.2d 523, 444 N.Y.S.2d 618 [1st Dept 1981]). The rule, however, is not inflexible and may be outweighed by other considerations that favor a different venue for the matter to be tried. (Schneeweiss v. Pelkey, 138 A.D.2d 271, 525 N.Y.S.2d 846 [1st Dept 1988] ). | Generally, venue of transitory action lies in county where cause of action arose; rule, however, is not inflexible and may be outweighed by other considerations that favor different venue for matter to be tried. | Is the general rule that the venue of a transitory action lies in the county where the cause of action arose? | Venue - Memo 63 - RK.docx | ROSS-003313048-ROSS-003313049 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 13183 | Horne v. U.S. Dep't of Agric., 750 F.3d 1128 | 148+2.2 | The Hornes declined to comply with the reserve requirement of the Marketing Order; at no time did the Hornes, either as producers or as handlers, ever physically convey raisins to the RAC. Instead, the Secretary imposed the penalty on the Hornes for their failure to comply with the Marketing Order. In general, the imposition and collection of penalties and fines does not run afoul of the Takings Clause. See Koontz v. St. Johns River Water Management District, """ U.S. """", 133 S.Ct. 2586, 2601, 186 L.Ed.2d 697 (2013) (listing cases). Here, however, the Hornes link the Secretary's imposition of a penalty to a specific governmental action they allege to be a taking. In effect, the Hornes argue the constitutionality of the penalty rises or falls with the constitutionality of the Marketing Order's reserve requirement. | In general, the imposition and collection of penalties and fines does not run afoul of the Takings Clause. U.S.C.A. Const.Amend. 5. | Does the imposition and collection of penalties and fines run afoul of the taking clause? | 003101.docx | LEGALEASE-00120689-LEGALEASE-00120690 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 13184 | Lucas v. S.C. Coastal Council, 505 U.S. 1003 | 148+2.10(3) | On this analysis, the owner of a lake-bed, for example, would not be entitled to compensation when he is denied the requisite permit to engage in a landfilling operation that would have the effect of flooding others' land. Nor the corporate owner of a nuclear generating plant, when it is directed to remove all improvements from its land upon discovery that the plant sits astride an earthquake fault. Such regulatory action may well have the effect of eliminating the land's only economically productive use, but it does not proscribe a productive use that was previously permissible under relevant property and nuisance principles. The use of these properties for what are now expressly prohibited purposes was always unlawful, and (subject to other constitutional limitations) it was open to the State at any point to make the implication of those background principles of nuisance and property law explicit. See Michelman, Property, Utility, and Fairness, Comments on the Ethical Foundations of "Just Compensation" Law, 80 Harv.L.Rev. 1165, 1239"1241 (1967). In light of our traditional resort to "existing rules or understandings that stem from an independent source such as state law" to define the range of interests that qualify for protection as "property" under the Fifth and Fourteenth Amendments, Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); see, e.g., Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1011"1012, 104 S.Ct. 2862, 2877, 81 L.Ed.2d 815 (1984); Hughes v. Washington, 389 U.S. 290, 295, 88 S.Ct. 438, 441, 19 L.Ed.2d 530 (1967) (Stewart, J., concurring), this recognition that the Takings Clause does not require compensation when an owner is barred from putting land to a use that is proscribed by those "existing rules or understandings" is surely unexceptional. When, however, a regulation that declares "off-limits" all economically productive or beneficial uses of land goes beyond what the | South Carolina Supreme Court erred in applying rule that harmful or noxious uses of property may be proscribed by government regulation without requirement of compensation to decide case in which property owner alleged that all economically viable use of his property was precluded by South Carolina Beachfront Management Act, which barred him from erecting any permanent habitable structures on his land; in order to avoid paying compensation, state had to identify background principles of nuisance and property law that prohibited use as landowner presently intended in circumstances in which property was presently found. U.S.C.A. Const.Amend. 5. | Does the Takings Clause require compensation when regulations prevent an owner from putting land to use? | Eminent Domain - Memo 141 - RK.docx | ROSS-003284889-ROSS-003284891 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 13185 | McBeth v. Himes, 598 F.3d 708 | 92+3865 | The initial problem with McBeth's theory is that she voluntarily relinquished her license before any suspension proceedings could take place. The district court thus concluded that "[b]ecause McBeth relinquished her license and no formal suspension proceedings were ever initiated, the facts alleged simply do not fit within the due process rubric." McBeth, 2007 WL 274743, at *6. Indeed, if one voluntarily relinquishes some property or liberty interest, then she cannot have a claim for a due process violation because no state official deprived her of the interest. See, e.g., Potts v. Davis County, 551 F.3d 1188, 1194 (10th Cir.2009) ("[I]f [a] Plaintiff[ ] resigned of [his] own free will, even as a result of Defendant's actions, then [he] voluntarily relinquished [his] property interests and, thus, Defendant did not deprive [him] of property without due process of law." (brackets in original) (quotation omitted)) | If one voluntarily relinquishes some property or liberty interest, then she cannot have a claim for a due process violation because no state official deprived her of the interest. U.S.C.A. Const.Amend. 14. | When a person voluntarily surrenders property can it amount to a deprivation of a constitutionally-protected interest? | 003145.docx | LEGALEASE-00120811-LEGALEASE-00120812 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13186 | Isom v. State, 651 N.E.2d 1151 | 110+1437 | Sudden heat is not an element of voluntary manslaughter. Palmer v. State (Palmer II) (1991), Ind., 573 N.E.2d 880; Bane v. State (1992), Ind., 587 N.E.2d 97, 100. Sudden heat is a mitigating factor that reduces what would otherwise be murder to voluntary manslaughter. Ind.Code " 35"42"1"3(b). See Palmer II, 573 N.E.2d at 880; Bane, 587 N.E.2d at 100. "[O]nce the issue of sudden heat has been injected into the case, the burden is on the State to negate its existence."1 Bane, 587 N.E.2d at 100. | Although jury instruction erroneously suggested that sudden heat was element of voluntary manslaughter, it was not such as to mislead jury and constitute fundamental error, as required for post-conviction relief from convictions for murder and conspiracy to commit murder, where instruction, read in its totality, clearly explained that sudden heat was mitigator for reducing what would otherwise be murder to voluntary manslaughter; jury was expressly instructed that sudden heat acted as mitigator, and state's and defense counsel's closing arguments reminded jury that it was mitigating factor. West's A.I.C. 35-42-1-3(b). | Is the existence of sudden heat of passion an element of voluntary manslaughter? | 003153.docx | LEGALEASE-00120747-LEGALEASE-00120748 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 13187 | Isom v. State, 651 N.E.2d 1151 | 110+1437 | Sudden heat is not an element of voluntary manslaughter. Palmer v. State (Palmer II) (1991), Ind., 573 N.E.2d 880; Bane v. State (1992), Ind., 587 N.E.2d 97, 100. Sudden heat is a mitigating factor that reduces what would otherwise be murder to voluntary manslaughter. Ind.Code " 35"42"1"3(b). See Palmer II, 573 N.E.2d at 880; Bane, 587 N.E.2d at 100. "[O]nce the issue of sudden heat has been injected into the case, the burden is on the State to negate its existence."1 Bane, 587 N.E.2d at 100. | Although jury instruction erroneously suggested that sudden heat was element of voluntary manslaughter, it was not such as to mislead jury and constitute fundamental error, as required for post-conviction relief from convictions for murder and conspiracy to commit murder, where instruction, read in its totality, clearly explained that sudden heat was mitigator for reducing what would otherwise be murder to voluntary manslaughter; jury was expressly instructed that sudden heat acted as mitigator, and state's and defense counsel's closing arguments reminded jury that it was mitigating factor. West's A.I.C. 35-42-1-3(b). | Is sudden heat considered as a mitigating factor in a prosecution for murder? | 003157.docx | LEGALEASE-00120753-LEGALEASE-00120754 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 13188 | Sanders v. Robinson, 864 F.2d 630 | 209+131 | Two leading treatises on Indian law have assumed that tribal courts would have at least concurrent jurisdiction in divorce cases involving an Indian plaintiff and non-Indian defendant, where the non-Indian defendant resided on the reservation during the marriage. W. Canby, American Indian Law 146 (1981) (referring specifically to divorce jurisdiction); F. Cohen, Handbook of Federal Indian Law 342 (1982 ed.) (civil jurisdiction generally). | Tribal court had jurisdiction over non-Indian husband as defendant in divorce and custody proceeding involving couple and their children, all of whom resided on reservation during marriage. 28 U.S.C.A. S 1331. | Does tribal court possess jurisdiction in divorce or dissolution of marriage cases involving non-Indians? | Indians - Memo 49 - BP.docx | LEGALEASE-00010445-LEGALEASE-00010446 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 13189 | Engrassia v. DiLullo, 121 Misc. 2d 667 | 249+39 | In his answer to the complaint seeking to set aside Carmine's mortgage, Frank counterclaims on the ground the action is brought "to harass and maliciously injure this defendant." A malicious prosecution action is not available in such circumstances where no actual interference with person or property is shown. PJI 3:50, Comment, p. 811. In any event, no malice has been here shown. Consequently, the counterclaim is dismissed. | A malicious prosecution action is not available in circumstances where no actual interference with person or property is shown. | Is a malicious prosecution action possible when there is no actual interference with person or property? | 05063.docx | LEGALEASE-00083718-LEGALEASE-00083719 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 13190 | Dial v. Martin, 37 S.W.2d 166 | 289+853 | Where a partnership is dissolved by the death of one of the partners, the surviving partner or partners have the right, and, moreover, it is their duty, to wind up the firm's business, and he is, in the eyes of the law, a trustee of the firm assets for that purpose, and as such trustee is entitled to the exclusive possession of all firm assets. Gaut v. Reed Bros. & Co., 24 Tex. 46, 76 Am. Dec. 94; Crescent Ins. Co. v. Camp, 64 Tex. 521; Shivel & Stewart v. Greer Bros., 58 Tex. Civ. App. 115, 123 S. W. 207; Amarillo National Bank v. Harrell (Tex. Civ. App.) 159 S. W. 858; Roberts v. Nunn (Tex. Civ. App.) 169 S. W. 1086. | It is right and duty of surviving members of partnership, dissolved by one partner's death, to wind up firm's business. | Does a surviving partner have the duty to wind up the firms business? | 003416.docx | LEGALEASE-00120857-LEGALEASE-00120858 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 13191 | Ethington v. Wright, 66 Ariz. 382 | 317A+181 | The Arizona Corporation Commission, unlike such bodies in most states, is not a creature of the legislature, but is a constitutional body which owes its existence to provisions in the organic law of this state. These provisions are found in Article 15 of the Arizona Constitution which provides for the creation of the Corporation Commission, and defines its powers and duties. The meaning and effect of these constitutional provisions were first dealt with comprehensively by this court in the case of State v. Tucson Gas & Electric Light & Power Co., 1914, 15 Ariz. 294, 138 P. 781, 782. In that case the court considered the basic nature of the body created by the constitutional provisions, the scope of its powers and duties, and its right to deal with matters entrusted exclusively to it"free from interference by the legislative department of the state. In discussing the meaning and effect of various sections of Article 15 of the Constitution, this court said:"Considering section 3, it will be noticed that the Corporation Commission is given full power to prescribe just and reasonable classifications and just and reasonable rates and charges to be made and collected by public service corporations. "Full power," taken alone as the measure of the Commission's jurisdiction, means a complete and perfect or plenary power over the subject-matters named, but it does not necessarily mean exclusive powers. The "full power" granted the Commission extends to the fixing of classifications and rates of all public utilities operating in the state, whether in incorporated cities or not. In the absence of legislation as contemplated by the proviso in section 3, the "full power" is a general grant or investiture of plenary power in the Commission to prescribe classifications and fix rates and charges for all public service corporations in the state. By the proviso this full power and jurisdiction of the Corporation Commission to prescribe classifications and fix rates and charges in incorporated cities and towns may be | The corporation commission has full and exclusive power in the matter of prescribing classifications, rates, and charges of public service corporations, and in making rules, regulations, and orders, concerning such classifications, rates, and charges by which public service corporations are to be governed, and the commission's exclusive field may not be invaded by the courts, the Legislature, or the executive. A.R.S.Const. art. 15, S 14. | Does the Corporation Commission have the right to prescribe just and reasonable rates to be made by the public service corporation within the State? | 003503.docx | LEGALEASE-00120710-LEGALEASE-00120712 | Order, SA, Sub | 0.84 | 1 | 0 | 1 | 1 | 1 |
| 13192 | Richland Cty. v. Carolina Chloride, 382 S.C. 634 | 148+266 | An inverse condemnation may result from the government's physical appropriation of private property, or it may result from government-imposed limitations on the use of private property." Byrd v. City of Hartsville, 365 S.C. 650, 656, 620 S.E.2d 76, 79 (2005). In essence, inverse condemnation is a governmental taking absent an eminent domain proceeding. Id. Successful inverse condemnation actions require a plaintiff to establish the government committed an affirmative, aggressive, and positive act causing damage to the plaintiff's property. WRB Ltd. P'ship v. County of Lexington, 369 S.C. 30, 32, 630 S.E.2d 479, 481 (2006). | In essence, "inverse condemnation" is a governmental taking absent an eminent domain proceeding. U.S.C.A. Const.Amend. 5. | Is inverse condemnation a governmental taking absent an eminent domain proceeding? | 017376.docx | LEGALEASE-00120953-LEGALEASE-00120954 | Order, SA, Sub | 0.8 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13193 | Yellow Cab Co. of Providence v. Ferri, 108 R.I. 80 | 48A+84 | At the time this application was filed and heard, s 39-5-9, the statute then in effect provided that "Any person or persons aggrieved by a decision or order of the public utility administrator * * * shall have the right to appeal to the public utility hearing board * * *." After January 1, 1964, judicial review of an adverse decision by the Public Utility Hearing Board was, under s 42-35-15 of the Administrative Procedures Act, by way of appeal to the Superior Court. Rhode Island Consumers' Council v. Public Utilities Commission, R.I., 267 A.2d 404, 409; Yellow Cab Company of Providence v. Public Utility Hearing Board, 102 R.I. 100, 228 A.2d 542; Yellow Cab Company of Providence v. Public Utility Hearing Board, 101 R.I. 296, 222 A.2d 361. | Where application for certificate to operate taxicab was filed prior to the effective date of statute permitting appeals from orders of Division of Public Utilities to be taken to the Supreme Court and abolishing public utility hearing board, Superior Court rather than Supreme Court was proper forum for judicial review of order granting the application even though the order had been entered after the effective date of the statute. Gen.Laws 1956, SS 39-1-3, 39-5-1, 39-5-9, 39-1-12, 42-35-15. | Is judicial review of an adverse decision by the Public Utility Hearing Board available to a person under s 42-35-15 of the Administrative Procedures Act? | 042573.docx | LEGALEASE-00120959-LEGALEASE-00120960 | SA, Sub | 0.34 | 0 | 0 | 1 | 1 | |
| 13194 | Reagan v. Baird, 140 Ill. App. 3d 58 | 302+8(4) | We finally consider Omalee's contention that the circuit court properly dismissed Reagan's amended complaint because it does not adequately state Omalee's knowledge of, or participation in the alleged fraudulent conveyance. Although Reagan's amended complaint contains a statement that the conveyance was without consideration, the deed conveying the real estate from Glenn and Wanda Baird to Omalee, a copy of which is attached to the complaint as an exhibit, recites the payment of $10 "and other valuable consideration." Since facts set forth in exhibits attached to a complaint control over the allegations of the complaint itself (Sangamon County Fair & Agricultural Association v. Standard (1956), 9 Ill.2d 267, 137 N.E.2d 487; McCormick v. McCormick (1983), 118 Ill.App.3d 455, 74 Ill.Dec. 73, 455 N.E.2d 103), Reagan's amended complaint in effect states that there was consideration in the amount of $10 for the transfer. The recitation of "other valuable consideration" is, however, a mere conclusion (Betty v. Knapp (1935), 5 Cal.App.2d 512, 43 P.2d 325; see also Everett v. Gainer (1967), 269 N.C. 528, 153 S.E.2d 90; Tuttle v. Tuttle (1978), 38 N.C.App. 651, 248 S.E.2d 896), which may be disregarded in determining whether Reagan's amended complaint states a cause of action. Velle Transcendental Research Association, Inc. v. Esquire, Inc. (1976), 41 Ill.App.3d 799, 354 N.E.2d 622. | Recitation of "other valuable consideration" in deed attached as exhibit was mere conclusion, that could be disregarded in determining whether complaint to set aside alleged fraudulent conveyance stated cause of action. | Is the recitation of other valuable consideration a mere conclusion? | 022910.docx | LEGALEASE-00120979-LEGALEASE-00120980 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 13195 | City of San Antonio v. TPLP Office Park Properties, 218 S.W.3d 60 | 148+106 | Next, we consider the City's claim that the court of appeals erred in holding that closure of the driveway's access to Freiling would constitute a compensable taking of TPLP's property rights. The question of whether access rights have been materially and substantially impaired is a question of law. State v. Heal, 917 S.W.2d 6, 9 (Tex.1996). If access to a landowner's property is materially and substantially impaired, the landowner is entitled to compensation. Id. at 10. However, diminished access is not compensable if suitable access remains. Id. at 11. | If access to a landowner's property is materially and substantially impaired by the city, the landowner is entitled to compensation; however, diminished access is not compensable if suitable access remains. | Is diminished access compensable if suitable access remains under the takings law? | Eminent Domain - Memo 171 - GP.docx | ROSS-003288111-ROSS-003288112 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 13196 | Weaver v. Palmer Bros. Co., 270 U.S. 402 | 92+4267 | The constitutional guaranties may not be made to yield to mere convenience. Schlesinger v. Wisconsin, 46 S. Ct. 260, 270 U. S. 230, 70 L. Ed. 557, decided March 1, 1926. The business here involved is legitimate and useful; and, while it is subject to all reasonable regulation, the absolute prohibition of the use of shoddy in the manufacture of comfortables is purely arbitrary and violates the due process clause of the Fourteenth Amendment. Adams v. Tanner, 37 S. Ct. 662, 244 U. S. 590, 596, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Meyer v. Nebraska, 43 S. Ct. 625, 262 U. S. 390, 67 L. Ed. 1042, 29 A. L. R. 1446; Burns Baking Co. v. Bryan, 44 S. Ct. 412, 264 U. S. 504, 68 L. Ed. 813, 32 A. L. R. 661. | Act prohibiting use of shoddy in manufacture of comfortables held violative of due process clause. Act Pa. June 14, 1923, SS 1, 2, P.L. 802, 35 P.S. S 961 et seq.; U.S.C.A.Const. Amend. 14. | Whether the absolute prohibition of the use of shoddy in the manufacture of comfortables violates the due process clause? | Inspection - Memo 25 - SH.docx | ROSS-003285465-ROSS-003285466 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 13197 | In re Morgan, 291 B.R. 795 | 366+1 | Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Castleman Constr. Co. v. Pennington, 222 Tenn. 82, 432 S.W.2d 669, 674 (1968) (quoting 83 C.J.S. SUBROGATION " " 1, 2). The right to subrogation "accrues when one person for the protection of his own interests, pays a debt for which another is primarily liable." Amos v. Cent. Coal Co., 38 Tenn.App. 626, 277 S.W.2d 457, 462 (1954). "A right of subrogation may arise by contract ("conventional subrogation"), by application of equitable principles of law ("legal subrogation"), or by application of statute ("statutory subrogation")." Blankenship v. Estate of Bain, 5 S.W.3d 647, 650 (Tenn.1999). Legal or equitable subrogation "is founded on principles of justice and equity, and its operation is governed by principles of equity." Castleman Constr. Co., 432 S.W.2d at 674; see also Wimberly v. Am. Cas. Co., 584 S.W.2d 200, 203 (Tenn.1979). | Under Tennessee law, legal or equitable subrogation is founded on principles of justice and equity, and its operation is governed by principles of equity. | Is equitable subrogation founded on principles of justice and equity and its operation is governed by principles of equity? | Subrogation - Memo # 431 - C - SA.docx | ROSS-003283824-ROSS-003283825 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 13198 | Ripley v. Piehl, 700 N.W.2d 540 | 366+1 | "Although [equitable] subrogation is a highly favored doctrine, it is not an absolute right, but rather, one that depends on the equities and attending facts and circumstances of each case." Universal Title Ins. Co. v. U.S., 942 F.2d 1311, 1315 (8thCir.1991). In general, the equity of the party seeking subrogation must be clear and substantial, and superior to that of other claimants. Subrogation cannot be invoked where it would work an injustice, violate sound public policy, or result in harm to innocent third parties. Id. It is axiomatic that as an equitable doctrine, subrogation "aids the vigilant, and not the negligent." Sinell v. Town of Sharon, 206 Minn. 437, 439, 289 N.W. 44, 46 (1939) (quotation omitted). | The equity of the party seeking subrogation must be clear and substantial, and superior to that of other claimants. | "Should the equity of the party seeking subrogation be clear and substantial, and superior to that of other claimants?" | Subrogation - Memo # 432 - C - SU.docx | LEGALEASE-00011166-LEGALEASE-00011168 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13199 | Am. States Ins. Co. v. Allstate Ins. Co., 94 Conn. App. 79 | 366+1 | [T]he right of [equitable] subrogation is not a matter of contract; it takes place as a matter of equity, with or without an agreement to that effect." (Internal quotation marks omitted.) Middlesex Mutual Assurance Co. v. Vaszil, supra, 89 Conn.App. at 486, 873 A.2d 1030. "The object of [equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." (Internal quotation marks omitted.) Id., at 488-89, 873 A.2d 1030. As now applied, the doctrine of equitable subrogation "is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. Furthermore, [s]ubrogation is a highly favored doctrine which courts should be inclined to extend rather than restrict." (Internal quotation marks omitted.) Id., at 486-87, 873 A.2d 1030. | Subrogation is a highly favored doctrine which courts should be inclined to extend, rather than restrict. | "Is subrogation a highly favored doctrine which courts should be inclined to extend, rather than restrict?" | 043750.docx | LEGALEASE-00121537-LEGALEASE-00121538 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 13200 | Blankenship v. Estate of Bain, 5 S.W.3d 647 | 366+1 | A right of subrogation may arise by contract ("conventional subrogation"), by application of equitable principles of law ("legal subrogation"), or by application of a statute ("statutory subrogation"). It is based on two fundamental premises: 1) that an insured should not be permitted recovery twice for the same loss, which would be the potential result if the insured recovers from both its insurer and a tortfeasor; and 2) that the tortfeasor should compensate the insurer for payments the insurer made to the insured. York v. Sevier County Ambulance Auth., 1999 WL 1051166 (Tenn.1999). | A right of subrogation may arise by contract (conventional subrogation), by application of equitable principles of law (legal subrogation), or by application of a statute (statutory subrogation). | Do subrogation rights arise by statute? | Subrogation - Memo # 497 - C - NO.docx | ROSS-003313271-ROSS-003313272 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 13201 | Dattel Family Ltd. P'ship v. Wintz, 250 S.W.3d 883 | 366+1 | Subrogation is an equitable doctrine whose aim is to "plac[e] the burden of bearing the loss where it [o]ught to be." Sutton v. Jondahl, 532 P.2d 478, 482 (Okla.Ct.App.1975). Subrogation is not appropriate in every circumstance; as an equitable doctrine, it is applied only if its application achieves equity under the facts and circumstances of the case at hand. See Tate v. Trialco Scrap, Inc., 745 F.Supp. 458, 473 (M.D.Tenn.1989) (noting that subrogation may not be appropriate under all circumstances); Sutton, 532 P.2d at 482. Moreover, "the right of subrogation cannot arise in favor of an insurer against its own insured." Allstate Ins. Co. v. Watson, 2005 WL 457846, at (citing Jindra v. Clayton, 247 Neb. 597, 529 N.W.2d 523 (1995)). Therefore, if the tenant is deemed a co-insured under the landlord's insurance policy, the insurance carrier would be barred from bringing a subrogation action against the tenant to recover for damages to the landlord's insured premises. Id. A court may consider a tenant to be an "implied co-insured" under a landlord's insurance policy if it finds that the landlord's insurance coverage was intended for the mutual benefit of the landlord and the tenant, even if the tenant is not a named co-insured. Generally, the insurer will contend that the tenant is not the intended beneficiary of the landlord's insurance, while the tenant will argue to the contrary. | Subrogation is not appropriate in every circumstance; as an equitable doctrine, it is applied only if its application achieves equity under the facts and circumstances of the case at hand. | Is subrogation appropriate in every circumstance? | 043930.docx | LEGALEASE-00121224-LEGALEASE-00121225 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 13202 | Wasko v. Manella, 269 Conn. 527 | 366+1 | Our analysis begins with a consideration of the nature of subrogation. Subrogation is a concept that has its roots in doctrines of equity, and it is applied by operation of law. 83 C.J.S., Subrogation " 3(b) (1953). "The determination of what equity requires is a matter for the discretion of the trial court. Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) Rosenblit v. Williams, 57 Conn.App. 788, 792, 750 A.2d 1131, cert. denied, 254 Conn. 906, 755 A.2d 882 (2000). When the court draws conclusions of law, our review is plenary. Torres v. Waterbury, 249 Conn. 110, 118, 733 A.2d 817 (1999). | In a subrogation case, the determination of what equity requires is a matter for the discretion of the trial court. | Is the determination of what equity requires a matter for the discretion of the trial court in a Subrogation case? | Subrogation - Memo # 638 - C - SA.docx | ROSS-003287553-ROSS-003287554 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13203 | Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff, 354 F.3d 945 | 366+7(1) | We next consider the contours of equitable subrogation in suretyship. Equitable subrogation is one of a surety's principal mechanisms for reducing loss. See Prairie State Bank v. United States, 164 U.S. 227, 231, 32 Ct.Cl. 614, 17 S.Ct. 142, 41 L.Ed. 412 (1896) (recognizing surety's subrogation rights as "elementary."). Arising by operation of law, the doctrine permits the surety to acquire and assert the rights of those parties whom the surety pays. Welch Foods, Inc. v. Chicago Title Ins. Co., 341 Ark. 515, 17 S.W.3d 467, 470 (2000). | "Equitable subrogation" is one of a surety's principal mechanisms for reducing loss; arising by operation of law, the doctrine permits the surety to acquire and assert the rights of those parties whom the surety pays. | Is equitable subrogation one of a surety's principal mechanisms for reducing loss? | 044007.docx | LEGALEASE-00121394-LEGALEASE-00121396 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13204 | In re Monaco, 514 B.R. 477 | 366+1 | Like Tag, SARMECO's right to assert claims against the Debtors would be dependent upon equitable subrogation. The equitable subrogation doctrine "essentially allows a subsequent lienholder to take the lien-priority status of a prior lienholder." Bank of Am. v. Babu, 340 S.W.3d 917, 925 (Tex.App."Dallas 2011, pet. denied); see also LaSalle Bank Nat'l Ass'n v. White, 246 S.W.3d 616, 619 (Tex.2007) (stating "[t]he doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor"). In the context of equitable subrogation, the term standing explains the ability of "one party to stand in the shoes of another as a plaintiff.." Frymire, 259 S.W.3d at 142 n. 4. Texas courts interpret the doctrine of equitable subrogation liberally and apply it "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Id. at 142 (quoting Mid"Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.2007)). The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor that owed the debt being paid. First Nat'l Bank of Kerrville v. O'Dell, 856 S.W.2d 410, 415 (Tex.1993). | Under Texas law, the general purpose of equitable subrogation is to prevent unjust enrichment of the debtor that owed the debt being paid. | Does equitable subrogation prevent the unjust enrichment of the debtor? | 044160.docx | LEGALEASE-00121564-LEGALEASE-00121565 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 13205 | Fidlar Techs. v. LPS Real Estate Data Sols., 82 F. Supp. 3d 844 | 386+6 | Trespass to chattels is, as the Court explained in its order denying LPS's Motion to Dismiss, "an oft-forgotten common law tort usually familiar only to first-year law students, [which] provides redress for unauthorized use of or intermeddling with another's physical property." Order Mot. Dismiss 19. As the Court explained in that Order at length, and will not repeat here, trespass to chattels is experiencing a strange afterlife as a cause of action for unauthorized intermeddling with another's computer or network. Id. at 20"21. However, the requirement that the trespass involve an act of "direct physical interference" remains. Antonelli v. Sherrow, No. 02 C 8714, 2005 WL 2338813, at (N.D.Ill. Sept. 21, 2005) aff'd, 246 Fed.Appx. 381 (7th Cir.2007). In allowing this claim to proceed past the motion to dismiss phase, the Court found unpersuasive all of Fidlar's arguments about data theft and interference with computer programs. Order Mot. Dismiss 21. The trespass to chattels count remained because Fidlar had plausibly alleged a "threat" to the continued operation of its servers caused by LPS's actions. Id. The claim proceeded on that possible threat alone. | Under Illinois law, tort of trespass to chattels requires that the trespass involve an act of direct physical interference. | Does the tort of trespass to chattels require that the trespass involve an act of direct physical interference? | 047146.docx | LEGALEASE-00121284-LEGALEASE-00121285 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 13206 | QVC v. Resultly, 159 F. Supp. 3d 576 | 386+6 | The elements of trespass to chattels and conversion"both intentional torts"are essentially the same. "The difference is that conversion entails a more serious deprivation of the owner's rights such that an award of the full value of the property is appropriate." Creative Dimensions in Mgmt., Inc. v. Thomas Grp., Inc., No. 96"6318, 1999 WL 225887, at (E.D.Pa. Apr. 16, 1999) (citing Restatement (Second) of Torts " 217 (trespass to chattels requires intentional dispossession or use or intermeddling with a chattel of another)); " 222 (the actor is subject to liability for conversion where the dispossession "seriously interferes with the right of the other")). Conversion is defined under Pennsylvania law as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F.Supp.2d 513, 529 (E.D.Pa.2012) (quoting Francis J. Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 879 (Pa.Super.Ct.1997)). Although Pennsylvania law does not require specific intent to commit a wrong, "the exercise of control of the chattel must be intentional." L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc., 777 A.2d 1090, 1095 (Pa.Super.2001); see also Montgomery v. Fed. Ins. Co., 836 F.Supp. 292, 300 (E.D.Pa.1993) (conversion requires facts that showing "intent to assert dominion or control over the chattel that is inconsistent with the owner's right"). The tort of trespass to chattels is governed by the Restatement (Second) of Torts " 217, which provides: "A trespass to a chattel may be committed by intentionally: (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another."Pestco, Inc. v. Associated Prods., Inc., 880 A.2d 700, 708 (Pa.Super.2005). | Under Pennsylvania law, a trespass to a chattel may be committed by intentionally: (1) dispossessing another of the chattel, or (2) using or intermeddling with a chattel in the possession of another. Restatement (Second) of Torts S 217. | How can a trespass to chattel be committed? | 047152.docx | LEGALEASE-00121358-LEGALEASE-00121359 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13207 | Anderson v. Waffle House, 920 F. Supp. 2d 685 | 25T+143 | "The FAA requires district courts to "compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made." " Harris, 2008 WL 90038 (quoting Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1147 (5th Cir.1985)). In determining motions to compel arbitration, courts conduct a two-step inquiry. Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202, 254 (5th Cir.2012); Wash. Mut. Fin. Grp. v. Bailey, 364 F.3d 260, 263 (5th Cir.2004). The Court first inquires whether the parties agreed to arbitrate the dispute at issue. Id. This inquiry consists of two subsidiary questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Webb v. Investacorp, Inc., 89 F.3d 252, 257"58 (5th Cir.1996). To determine whether the parties formed a valid agreement to arbitrate, the Court applies ordinary principles of state contract law. Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537"38 (5th Cir.2003); Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 531 (5th Cir.2000). "[T]he federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Am. Heritage Life Ins. Co., 321 F.3d at 538. In analyzing arbitrability, courts apply federal substantive law. Grigson, 210 F.3d at 531. Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24"25, 103 S.Ct. 927. If the Court finds that there is a valid agreement to arbitrate between the parties and that the dispute in question falls within the scope of the arbitration agreement, the Court inquires whether any federal statute or policy renders the claims nonarbitrable. Wash. Mut. | In determining motion to compel arbitration, court first inquires whether parties agreed to arbitrate dispute at issue; this inquiry consists of two subsidiary questions, whether there is a valid agreement to arbitrate between the parties and whether dispute in question falls within scope of that arbitration agreement. 9 U.S.C.A. S 4. | How do courts reconcile doubts regarding the scope of arbitrable issues? | 007051.docx | LEGALEASE-00122393-LEGALEASE-00122395 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 13208 | Arakawa v. Japan Network Grp., 56 F. Supp. 2d 349 | 78+1502 | The Second Circuit has not opined on the issue of whether an arbitration agreement that leaves open the possibility that the plaintiff may have to pay the fees of the arbitration can provide an adequate forum for the redress of Title VII rights, and the few cases of the district courts in this Circuit that have dealt with the issue have not established a uniform rule. Compare Martens v. Smith Barney, Inc., 181 F.R.D. 243, 255"56 (S.D.N.Y.1998) (indicating in dicta that an agreement to arbitrate Title VII claims that calls for plaintiff to pay fees is unenforceable), with Howard v. Anderson, 36 F.Supp.2d 183, 187 (S.D.N.Y.1999) (declining to direct employer to pay arbitration fees where it is not certain that employee will be forced to pay those fees and future judicial review is available). | Possibility that employee might be required to pay one half of any expenses incurred in arbitration, including arbitrator's compensation, pursuant to arbitration agreement with employer did not constitute barrier to vindication of employee's statutory rights under Title VII and, thus, did not render agreement unenforceable; prior to submitting to arbitration, there was no indication how large arbitration fees would be or whether employee would actually be required to pay any portion of those fees. Civil Rights Act of 1964, S 701 et seq., 42 U.S.C.A. S 2000e et seq. | Is an agreement to arbitrate Title VII claims that calls for a plaintiff to pay fees unenforceable? | 007099.docx | LEGALEASE-00122444-LEGALEASE-00122445 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 13209 | Hubicki v. Festina, 156 S.W.3d 897 | 30+3158 | In a restricted appeal, we are limited to considering only the face of the record, but our scope of review is otherwise the same as that in an ordinary appeal; that is, we review the entire case. See Norman Communications, 955 S.W.2d at 270. The face of the record, for purposes of restricted appeal review, consists of all the papers on file in the appeal, including the reporter's record. See Norman Communications, 955 S.W.2d at 270. Thus, "[i]t necessarily follows that review of the entire case includes review of legal and factual insufficiency claims." Norman Communications, 955 S.W.2d at 270. | The face of the record, for purposes of restricted appeal review for error on face of record, consists of all the papers on file in the appeal, including the reporter's record. Rules App.Proc., Rules 26.1(c), 30. | What consists in the face of the record for the purpose of a restricted appeal? | Appeal And Error - Memo 22 - BP.docx | ROSS-003283989-ROSS-003283990 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 13210 | Strickland v. Dep't of Agric. & Consumer Servs., 922 So. 2d 1022 | 268+628 | In his second point, Strickland claims that the trial court erred in ruling that the State was not liable under the Takings Clause of the United States and Florida Constitutions,1 for the trees, fencing and a dike that fire fighters damaged or destroyed to create a fire line on his property. However, it has long been established that the government's destruction of private property to "prevent the spreading of a fire" is not a "taking in the constitutional sense." E.g., Omnia Commercial Co., Inc. v. United States, 261 U.S. 502, 508, 43 S.Ct. 437, 67 L.Ed. 773 (1923). Therefore, "[t]o prevent the spreading of fire, property may be destroyed without compensation to the owner." Bowditch v. Boston, 101 U.S. 16, 25 L.Ed. 980 (1879); see also State Plant Bd. v. Smith, 110 So.2d 401, 406"07 (Fla.1959) ("When, in the exercise of the police power, the State through its agents destroys ... [property] in the path of a conflagration, it is clear that the constitutional requirement of "just compensation" does not compel the State to reimburse the owner whose property is destroyed."). | To prevent the spreading of fire, property may be destroyed without compensation to the owner. | "In order to prevent spreading of fire, can a private property be destroyed without compensating the owner?" | 017419.docx | LEGALEASE-00121862-LEGALEASE-00121864 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13211 | Elias v. Rolling Stone LLC, 192 F. Supp. 3d 383 | 237+6(1) | "Under New York law, expressions of pure opinion, as opposed to statements of fact, are not actionable, and receive full constitutional protection." Restis v. American Coalition Against Nuclear Iran, Inc., 53 F.Supp.3d 705, 718 (S.D.N.Y.2014). "When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact." Levin v. McPhee, 119 F.3d 189, 197 (2d Cir.1997). In discerning whether a statement is a fact or opinion, New York law considers a non-exclusive list of factors that include:1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.Steinhilber v. Alphonse, 68 N.Y.2d 283, 292, 508 N.Y.S.2d 901, 501 N.E.2d 550 (1986). If the speaker implies that a statement is based on undisclosed facts, this may weigh strongly against classifying a statement as an opinion. See, e.g., Guerrero v. Carva, 10 A.D.3d 105, 114, 779 N.Y.S.2d 12 (1st Dep't 2004). "In New York, resolution of the fact/opinion issue is a matter for the court." Levin, 119 F.3d at 196. | When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact, and thus not actionable as defamation under New York law. | How are statements identified as opinions and not facts? | 021053.docx | LEGALEASE-00122303-LEGALEASE-00122304 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 13212 | Charles v. Eshleman, 5 Colo. 107 | 260+97 | The reason assigned for the distinction between the ordinary commercial partnership and a mining partnership, and for limiting the powers of partners of the latter class, is, that a mining partnership is not founded on the delectus personoe whereas the other class is. New members come into a mining association against the wishes of other members, and it is held that to subject the owners, under such circumstances, to personal liabilities not authorized by them, but contracted, it may be, by those who became members against their wishes, would be unjust. For these reasons it is held the powers of members and managers of such companies are limited to the performance of such acts, in the name of the partnership, as may be necessary to the transaction of its business, or which is usual in like concerns. Skillman v. Lackman, 23 Cal. 200; Duryea v. Burt, 28 Cal. 569, and cases therein cited. | The reason for the distinction between the ordinary commercial partnership and a mining partnership, and for limiting the powers of the members of the latter class, is that the mining partnership is not founded on the delectus person ├ª, whereas the other class is. | Is a mining partnership founded on the delectus personae? | 021839.docx | LEGALEASE-00122500-LEGALEASE-00122501 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 13213 | ADP Marshall v. Brown Univ., 784 A.2d 309 | 307A+3 | In refusing to correct the trial justice's error, we remind the parties that a decision on a motion in limine need not be taken as a final determination of the admissibility of the evidence referred to in the motion. See State v. Fernandes, 526 A.2d 495, 500 (R.I.1987). A trial justice's decision regarding a motion in limine may be preliminary or absolute in nature. See id. (citing State v. Bennett, 122 R.I. 276, 286, 405 A.2d 1181, 1187 (1979)). In this case, the trial justice specifically told the parties that he would reconsider the admissibility of the evidence during trial. It was then up to Brown to reassert its objection at the appropriate time. Brown's failure to do so was fatal. | A trial justice's decision regarding a motion in limine may be preliminary or absolute in nature. | Is a decision regarding a motion in limine preliminary or absolute in nature? | Pretrial Procedure - Memo # 108 - C - SPB.docx | ROSS-003288213-ROSS-003288214 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13214 | Perry v. Gulf Stream Coach, 871 N.E.2d 1038 | 307A+3 | The granting or denying of a motion in limine is within the sound discretion of the trial court. Hopper v. Carey, 716 N.E.2d 566, 570 (Ind.Ct.App.1999), trans. denied. The granting of a motion in limine is an adjunct of the inherent power of trial courts to admit and exclude evidence. Id. Ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence. Id. Therefore, the standards of review applicable to questions concerning the admission of evidence must prevail in the case at bar. Id. The standard of review for admissibility of evidence issues is abuse of discretion. Id. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Bentley v. State, 846 N.E.2d 300, 304 (Ind.Ct.App.2006), trans. denied. | Ordinarily the denial of a motion in limine can occasion no error; the objectionable occurrence is the improper admission of items in evidence. | Can the denial of a motion in limine occasion no error? | Pretrial Procedure - Memo # 168 - C - CRB.docx | ROSS-003297231-ROSS-003297232 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13215 | Sher v. Deane H. Tank, 269 Ill. App. 3d 312 | 30+3209 | Whether a motion in limine should be granted is subject to the trial judge's discretion (Madison Associates v. Bass (1987), 158 Ill.App.3d 526, 110 Ill.Dec. 513, 511 N.E.2d 690) and a reviewing court will not reverse a trial court's order allowing or excluding evidence in limine absent a clear showing of abuse of that discretion. (Cochran v. Great Atlantic and Pacific Tea Co. (1990), 203 Ill.App.3d 935, 148 Ill.Dec. 923, 561 N.E.2d 229.) We believe that the trial judge did not abuse his discretion in granting the motion in limine. | Reviewing court will not reverse trial court's order allowing or excluding evidence in limine absent clear showing of abuse of that discretion. | Is it within the discretion of the trial judge to grant or deny a motion in limine? | 028110.docx | LEGALEASE-00122113-LEGALEASE-00122114 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 13216 | Walnut Creek Nursery v. Banske, 26 N.E.3d 648 | 30+242(4) | Alsip presents several issues for our review, but the dispositive issue involves the admissibility of Grice's testimony. "Only trial objections, not motions in limine, are effective to preserve claims of error for appellate review." Raess v. Doescher, 883 N.E.2d 790, 796"97 (Ind.2008). A trial court's ruling on a motion in limine does not determine the ultimate admissibility of the evidence; that determination is made by the trial court in the context of the trial itself. Clausen v. State, 622 N.E.2d 925, 927 (Ind.1993). "Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error." Hollowell v. State, 753 N.E.2d 612, 615"16 (Ind.2001). | Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error. | Does a trial court's ruling on a motion in limine determine the ultimate admissibility of the evidence? | Pretrial Procedure - Memo # 267 - C - MLS.docx | ROSS-003289024-ROSS-003289025 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13217 | Poff v. Elkins, 2014 Ark. App. 663 | 307A+3 | The appellant is barred from arguing that this ruling was in error. When a party opens the door to a line of questioning, the opposing party may introduce testimony on that issue. Pursley v. Price, 283 Ark. 33, 34, 670 S.W.2d 448, 449 (1984). The appellant argues that the circuit court's ruling on the motion in limine forced her to introduce this evidence on direct examination. This argument is not persuasive. A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. Conagra, Inc. v. Strother, 68 Ark.App. 120, 126, 5 S.W.3d 69, 73 (1999). As such, it is subject to reconsideration and change by the court during the course of the trial, as the evidence in the trial is fully developed. Id. | A trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory, tentative, or preliminary in nature. | "Is the denial of a motion to exclude evidence in all circumstances a binding declaration that all such evidence is admissible, immune from further review during trial?" | 041253.docx | LEGALEASE-00122345-LEGALEASE-00122346 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 13218 | Wilkins v. Leeds, 216 Ind. 508 | 317A+102 | Section 1 of chapter 76 of the Public Utilities Law of 1913 (Acts 1913, p. 167) defines the term "public utility," as used in the act, as including "every city or town, that now or hereafter may own, operate, manage or control any street railway or interurban railway or any plant or equipment within the state for the conveyance of telegraph or telephone messages, or for the production, transmission, delivery or furnishing of heat, light, water or power, or for the furnishing of elevator or warehouse service either directly or indirectly to or for the public." Section 22 of the act of 1913, supra, as amended by section 1 of chapter 64 of the Acts of 1925 (Acts 1925, p. 210), provides that every "public utility" shall maintain a reserve for depreciation. Section 25 of the act, as amended by section 2 of chapter 64 of the Acts of 1925 (Acts 1925, p. 210), provides that the depreciation reserve shall be carried in a separate fund, and that: "Any balance in the fund, not applied to depreciation expenses, may be invested by the public utility * * *." It is upon this last provision that the appellants rely for authority to invest. Chapter 190 of the Acts of 1933 (Acts 1933, p. 928) amends section 1 of the act of 1913 by changing the definition of the term "public utility" so as to exclude municipally-owned plants. There are other sections in the act of 1933 providing for the regulation and operation of municipally-owned utilities, and, by section 16, it is provided that: "Such governing body shall set saide sufficient of the remainder of the earnings of such utility into a separate and special fund to be identified as the special utility fund, to be used and applied in the maintenance, extension, replacement, in whole or in part, repair and operation of such utility." This provision seems to amply cover the purposes of a reserve for depreciation. It cannot be doubted that the Legislature intended by the act of 1933 to take municipally-owned plants out of the general public utilities statute. | The legislature intended by act changing definition of term "public utility" so as to exclude municipally-owned plants, to take municipally-owned plants out of general public utilities statute. Acts 1913, c. 76, S 1, as amended by Acts 1933, c. 190 (Burns' Ann.St. S 54-201 et seq.). | Are municipally owned utilities removed from the public utilities definition or statute? | 042193.docx | LEGALEASE-00121938-LEGALEASE-00121939 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 13219 | Chenoweth v. Maloy, 143 Md. 622 | 70+12(4) | We have thus quoted fully from that case, because we are of opinion that it is absolutely conclusive of this one. It would be unfortunate if the Commission did not have such powers over railroads, street railways, and others, and to sustain the position of appellants would result in taking from the Commission one of its most useful powers. As long as the Commission exercises its powers fearlessly but wisely, it can, as the one in this state has often done, render valuable service to the public by protecting them, and at the same time doing justice to public service corporations. The Gregg Case has been consistently followed by this court. In Crisfield v. C. & P. Tel. Co., 131 Md. 444, 102 Atl. 751, the municipality, under a power contained in its charter, passed after the Public Service Commission act, attempted to regulate the charges of the telephone company, but this court said that by the act of 1910 the Commission had "its power extended throughout the state, into every municipality, county, or political division, so that the said Commission should in the interest of the public be invested with ample powers for regulation, both as to service and charges, of all public utilities operating within the state." See, also, Westminster v. Pub. Util. Co., 132 Md. 374, 103 Atl. 1008, where it was said by Judge Urner:"In order to remove any statutory barrier to its comprehensive effect, as to rate regulation, the Public Service Commission Law repealed all acts or parts of acts, theretofore passed and then existing, which prescribed or limited the price of any product or utility furnished by any corporation to which the new system of regulation was in general terms made applicable. Code, art. 23, " 444." | Under Acts 1910, c. 180, creating the Public Service Commission and providing for regulation of public service corporations, the Commission may grant the United Railways Company, of Baltimore, the right to collect a greater passenger fare than that prescribed by Acts 1900, c. 313, now Revised Charter of Baltimore City 1915, S 796, Code Pub.Loc.Laws, art. 4, S 768, in view of SS 311/212 and 55, repealing inconsistent acts or parts thereof. | Did the Public Service Commission repeal all acts that prescribed or limited the price of a product furnished by any corporation applicable to the new system of regulations? | 042216.docx | LEGALEASE-00122523-LEGALEASE-00122525 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 13220 | Seal v. Andrews, 214 Miss. 215 | 48A+78 | The appellant cites the case of Dixie Greyhound Lines, Inc. v. Mississippi Public Service Commission, 190 Miss. 704, 200 So. 579, 581, 1 So.2d 489, which was the first appeal to come before the Court involving the Mississippi Motor Carriers Regulatory Act of 1938. In this case the Court said: "Chapter 142, Laws of 1938, is modeled after the said Federal Motor Carrier Act of 1935 [49 U.S.C.A. " 301 et seq.], and Section 6, subsection (c), of our statute contains an express legislative direction that in administering the act the Public Service Commission shall conform as nearly as practicable to the rules, regulations, requirements, etc., of the Interstate Commerce Commission.' | Evidence justified finding that operations of motor carrier in operating buses between city of Magnolia and city of McComb, and in operating buses to and in town of Summit, came within exception of Motor Carrier Regulatory Act providing that term "motor carrier" as defined in act shall not include motor vehicles engaged in transportation of persons within zone adjacent to and commercially part of municipality, or municipalities, but not exceeding five miles from corporate limit, so that such operators were not required to obtain certificate of public convenience and necessity to carry on such operations. Code 1942, SS 7632 et seq., 7635; Interstate Commerce Act, S 201 et seq., 49 U.S.C.A. S 301 et seq. | "Should the acts of the Public Service Commission conform as nearly as practicable to the rules, regulations, requirements, etc., of the Interstate Commerce Commission?" | Public Utilties - 317A - 102 - Memo 97 - AM - 10.17.2017.docx | ROSS-003283693-ROSS-003283694 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 13221 | Am. Fid. Fire Ins. Co. v. United States, 385 F. Supp. 1075 | 366+7(1) | It is well established that a surety, upon satisfying the debts of the principal, is subrogated only to such rights as the creditors had against the principal. Cal.Civil Code " 2848; United States Fidelity and Guaranty Co. v. Oak Grove School District, 205 Cal.App.2d 226, 230-234, 22 Cal.Rptr. 907 (1962). It has now been held in California that, if the surety on a public works contract becomes liable to the contractor's laborers and materialmen, the surety is subrogated to the contractor's right to the public entity contract funds only if the laborers and materialmen have perfected their stop notice claims. Pacific Employers Insurance Co. v. California, 3 Cal.3d 573 (1970); 91 Cal.Rptr. 273, 477 P.2d 129. | A surety, upon satisfying debts of principal, is subrogated only to such rights as creditors had against the principal. West's Ann.Cal.Civ.Code, S 2848. | "Is a surety, upon satisfying debts of principal, subrogated only to such rights as creditors had against the principal?" | Subrogation - Memo # 901 - C - VA.docx | ROSS-003324902-ROSS-003324903 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13222 | Serna v. Arde Apparel, 657 So. 2d 966 | 13+61 | It is apparent that the statement relied upon-which is purely dictum upon which nothing in that case turned-was no more than an inadvertent and legally incorrect slip of the word processor. It is settled law that legal rights accrue and are fixed, not when an action is brought to enforce them, but rather when "the last element necessary to constitute the cause of action occurs." Birnholz v. Blake, 399 So.2d 375, 377 (Fla. 3d DCA 1981); Envases Venezolanos v. Collazo, 559 So.2d 651 (Fla. 3d DCA 1990). Since those operative events in this case-the dishonor of the worthless checks resulting in damages to the appellee-occurred before January 1, 1993, the holding of Serna directly applies. | Legal rights accrue and are fixed not when action is brought to enforce them, but rather when last element necessary to constitute cause of action occurs. | When do legal rights accrue? | Action - Memo # 149 - C CS.docx | ROSS-003284252-ROSS-003284253 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 13223 | Adams v. Mills, 286 U.S. 397 | 70+200 | The plaintiffs were the consignees of the shipments, and entitled to possession of them upon payment of the lawful charges. If the defendants exacted from them an unlawful charge, the exaction was a tort, for which the plaintiffs were entitled, as for other torts, to compensation from the wrongdoer. Acceptance of the shipments would have rendered them personally liable to the carriers if the merchandise had been delivered without payment of the full amount lawfully due. New York Central & H. R. R. Co. v. York & Whitney Co., 256 U. S. 406, 407, 408, 41 S. Ct. 509, 65 L. Ed. 1016. Compare Union Pac. R. Co. v. American Smelting & Refining Co. (C. C. A.) 202 F. 720, 723. As they would have been liable for an undercharge, they may recover for an overcharge. In contemplation of law the claim for damages arose at the time the extra charge was paid. See Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U. S. 531, 534, 38 S. Ct. 186, 62 L. Ed. 451. Neither the fact of subsequent reimbursement by the plaintiffs from funds of the shippers nor the disposition which may hereafter be made of the damages recovered is of any concern to the wrongdoers. This proceeding does not involve a controversy between the consignors and the consignees; and the carriers cannot be allowed to import one into it. Compare Louisville & Nashville R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U. S. 217, 238, 46 S. Ct. 73, 70 L. Ed. 242. The rights of the shippers in the proceeds of the action will not be affected by our decision. Compare Jennison Bros. & Co. v. Dixon, 133 Minn. 268, 158 N. W. 398. Those rights might have been asserted by intervention in the proceedings before the Commission. They may still be asserted independently in appropriate proceedings later. The plaintiffs have suffered injury within the meaning of section 8 of the Interstate Commerce Act (49 USCA s 8); and the purpose of that section would be defeated if the tort-feasors were permitted to escape reparation by a | In contemplation of law, claim for damages for overcharge by carriers arose at time extra charge was paid. Interstate Commerce Act S 8, 49 U.S.C.A. S 8. | Does claim for damages for overcharge by carriers arise at time extra charge was paid? | Action - Memo # 182 - C CS.docx | ROSS-003284677-ROSS-003284678 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 13224 | Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 897 N.W.2d 821 | 13+61 | This brings us to the pivotal question: did Savoie have a claim for legal malpractice against Larkin Hoffman while he was alive? Security Bank argues that a legal-malpractice claim accrued before Savoie's death and that as personal representative, it should be allowed to pursue that claim. We therefore examine Minnesota caselaw regarding the time for accrual of a claim based on malpractice. In so doing, we are mindful that "[a] cause of action accrues when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim." Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 832 (Minn. 2011). | A cause of action "accrues" when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim. | When does a cause of action accrue? | 005968.docx | LEGALEASE-00123317-LEGALEASE-00123318 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 13225 | Chandler v. Multidata Sys. Int'l Corp., 163 S.W.3d 537 | 106+40.4 | The first factor the trial court must consider is the place of accrual of the cause of action. Relying on Dzur v. Gaertner, 657 S.W.2d 35, 36 (Mo.App.1983), Plaintiffs argue that the cause of action for this case accrued in Missouri because that is the state where the "wrong complained of was committed." Contrary to Plaintiffs' assertion, under Missouri law, a cause of action accrues when and originates where damages are sustained and capable of ascertainment. Elmore v. Owens"Illinois, Inc., 673 S.W.2d 434, 436 (Mo. banc 1984); see also Acapolon, 827 S.W.2d at 193 (finding that the claim accrued and the damage occurred in Guatamala even though plaintiffs alleged that decision-making for defective product occurred in Missouri and relevant witnesses were located in Texas). Plaintiffs do not dispute that they sustained their injuries in Panama. | Negligence and wrongful death action that patients and survivors of patients who received radiation treatment in Panama brought against manufacturers of computer-operated treatment planning system and radiation therapy unit arose in Panama, for purposes of determining whether under doctrine of forum non conveniens trying case in Missouri would be substantially more inconvenient than trying the case in Panama; a cause of action accrued when and originated where damages were sustained and capable of ascertainment, and injuries to patients and survivors of patients were sustained in Panama. | Does a cause of action accrue when and originates where damages are sustained and capable of ascertainment? | Action- Memo # 79 - C - LK.docx | ROSS-003325134-ROSS-003325135 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 13226 | Renfroe v. Eli Lilly & Co., 686 F.2d 642 | 241+2(1) | As mentioned above, the district court referred to section 516.100 in determining when a cause of action accrues. According to that provision, a cause of action accrues when the plaintiff sustains damage from a legal injury that is capable of ascertainment. See supra note 5 (quoting text of section 516.100). The district court realized, however, the unfairness of concluding in a case such as this that a plaintiff's claim accrued as soon as any physical injury manifested itself, because of the possibility that the plaintiff might not be able to know the likely cause of the injury at that time. See Renfroe v. Eli Lilly, supra, 541 F.Supp. at 809.Unable to find a controlling case, the district court relied on Krug v. Sterling Drug, Inc., 416 S.W.2d 143 (Mo.1967), to conclude that the "Missouri courts would not bar a cause of action for slowly developing injuries caused by a drug because the plaintiff learned too late the cause of her injuries, especially where plaintiff learned of that cause as soon as her doctor did." Renfroe v. Eli Lilly & Co., supra, 541 F.Supp. at 809. Accordingly, the district court held that the plaintiffs' causes of action did not accrue until (1) the plaintiffs suffered reasonably discoverable injuries, and (2) the plaintiffs knew or should have known that DES caused their injuries. Id. at 810. | According to Missouri law, cause of action does not accrue until plaintiff has sustained at least some damage capable of ascertainment, and the same rule applies to issue of where the cause of action originates for purposes of application of borrowing statute. V.A.M.S. SS 516.100, 516.190. | Does a cause of action accrue when damages are sustained and capable of ascertainment? | 006500.docx | LEGALEASE-00123560-LEGALEASE-00123561 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13227 | Guyden v. Aetna, 544 F.3d 376 | 25T+124 | Moreover, a whistleblower need not show that the corporate defendant committed fraud to prevail in her retaliation claim under " 1514A. The statute only requires the employee to prove that she "reasonably believe[d]" that the defendant's conduct violated federal law. 18 U.S.C. " 1514A(a)(1). The provision's focus on the plaintiff's state of mind rather than on the defendant's conduct is inconsistent with what Guyden argues is the statutory purpose"to employ SOX retaliation litigation as a vehicle for publicizing corporate misconduct. It is far more consistent with a statutory purpose to provide a strong compensatory mechanism for employees subjected to adverse employment action as a result of their whistleblowing conduct. This compensatory scheme is entirely consistent with mandatory arbitration, and Guyden's ability to "vindicate [her] statutory cause of action in the arbitral forum" ensures that SOX "will continue to serve both its remedial and deterrent function." Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). We recognize that arbitration is more private than litigation and that Guyden will not have the same opportunity to expose publicly Aetna's alleged wrongdoing. As Oldroyd makes clear, however, the loss of a public forum in which to air allegations of fraud does not undermine the statutory purpose of a whistleblower protection provision. 134 F.3d at 78"79. Because we find no inherent conflict between the purpose of the SOX whistleblower protection provision and mandatory arbitration, we hold that such claims are arbitrable. | Former employee's claim that she was terminated as director of internal audit in retaliation for her attempt to bring attention to employer's accounting irregularities, in violation of Sarbanes-Oxley Act (SOX) whistleblowing protection provision, lacked inherent conflict between SOX's underlying purposes and arbitration, pursuant to employee's agreement to arbitrate employment-related disputes, as would have rendered employee's SOX claim nonarbitrable, since employee sought compensation not only for her own injuries but also to bring auditing issues to attention of board of directors, shareholders, and investing public, and SOX's primary purpose was to provide private remedy for aggrieved employee, not to publicize alleged corporate misconduct. 9 U.S.C.A. S 2; 18 U.S.C.A. S 1514A. | Are claims brought under the Sarbanes-Oxley Act (SOX) whistleblower protection provision arbitrable? | 007138.docx | LEGALEASE-00123923-LEGALEASE-00123924 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 13228 | Osman v. Osman, 285 Va. 384 | 203+530 | Murder is the unlawful killing of another with malice. Wood v. Commonwealth, 140 Va. 491, 494, 124 S.E. 458, 459 (1924).Malice, in a legal sense, means any wrongful act done willfully or purposely. See Avent v. Commonwealth, 279 Va. 175, 202, 688 S.E.2d 244, 259 (2010). In Virginia, all murder other than capital murder and murder in the first degree is murder of the second degree. Code " 18.2"32. To be found guilty of murder, a person must have acted maliciously; in other words, he must possess the necessary mens rea. Mens rea is defined as "criminal intent." Black's Law Dictionary 1075 (9th ed. 2009). It is often referred to as "guilty mind." Id. | Murder is the unlawful killing of another with malice, which, in a legal sense, means any wrongful act done willfully or purposely. | Does malice mean any wrongful act done willfully or purposely in the context of murder? | 019348.docx | LEGALEASE-00123565-LEGALEASE-00123566 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13229 | Snider v. Seung Lee, 584 F.3d 193 | 221+396 | United States v. Balsys, 524 U.S. 666, 674"75, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998) (emphasis added) (citation omitted). In Balsys, the defendant declined to answer a question about his activities during World War II for fear of prosecution by Lithuania or Israel. The Supreme Court held "that concern with foreign prosecution is beyond the scope of the Self-incrimination Clause." Id. at 669, 118 S.Ct. 2218. In reaching its holding, the Supreme Court stated that even though the defendant's fear of prosecution by a foreign nation might be reasonable, the criminal prosecution by a foreign government was nonetheless not subject to U.S. constitutional guarantees. Id. at 672"74, 118 S.Ct. 2218. | Criminal prosecution by a foreign government is not subject to guarantees under the United States Constitution. | Is criminal prosecution by a foreign government subject to guarantees under the United States Constitution? | 019747.docx | LEGALEASE-00123449-LEGALEASE-00123450 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 13230 | McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242 | 221+351 | Therefore, if an attorney-client privilege exists in a country, then comity requires us to apply that country's law to the documents at issue. Alpex Computer Corp. v. Nintendo Ltd., 1992 WL 51534 at (S.D.N.Y.1992). The burden is upon Alcoa to "establish that, as to each country, the attorney-client privilege extends to patent attorneys and/or patent agents and that the communications were intended to be confidential and not merely passed on to a patent examiner." Burroughs, 143 F.R.D. at 617. Furthermore, the privilege should be strictly construed and all doubts should be resolved in favor of disclosure. Id. | If an attorney-client privilege exists in a foreign country with respect to communications pertaining to patent, then comity requires United States court to apply that country's laws to documents for which privilege is asserted. | Does comity require the application of the attorney client privilege with respect to documents for which the attorney client privilege exists in a foreign country? | 019818.docx | LEGALEASE-00124161-LEGALEASE-00124162 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 13231 | Lizarbe v. Rondon, 642 F. Supp. 2d 473 | 221+351 | The act of state doctrine does not call for abstention merely because a case may require the acts of a former foreign government official to be judged. See W.S. Kirkpatrick & Co., 493 U.S. at 409, 110 S.Ct. 701 ("The act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments.."). Rather, the application of the doctrine depends on a case-by-case analysis. Moreover, actions of military officers are not ipso facto acts of state. See, e.g., Filartiga, 630 F.2d at 889"90. | Actions of military officers are not ipso facto acts of state, within meaning of the act of state doctrine. | "Are actions of military officers ipso facto acts of state, within meaning of the act of state doctrine?" | 019918.docx | LEGALEASE-00123545-LEGALEASE-00123546 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 13232 | Doe v. Qi, 349 F. Supp. 2d 1258 | 221+387 | Normally, the burden of proving acts of state rests on the party asserting the applicability of the doctrine. Liu, 892 F.2d at 1432 (citing Alfred Dunhill of London Inc. v. Republic of Cuba, 425 U.S. 682, 694"95, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976)). However, where there is a "potential for embarrassing the Executive Branch," the act of state doctrine may be raised sua sponte. Liu, 892 F.2d at 1432. Obviously, where, as here, the Defendants have defaulted, the issue is not raised by either party. Instead, it is raised sua sponte by this Court. | Normally, the burden of proving acts of state rests on the party asserting the applicability of the doctrine; however, where there is a potential for embarrassing the Executive Branch, the act of state doctrine may be raised sua sponte. | Does the party asserting the act of state doctrine have the burden to prove that the act in question was an act of state? | 020001.docx | LEGALEASE-00123273-LEGALEASE-00123274 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13233 | In re Simon, 153 F.3d 991 | 221+162 | By contrast, this case does not involve competing bankruptcy proceedings; indeed, there is no proceeding pending in Hong Kong. The sole, plenary insolvency proceeding was initiated in the United States without objection and with the participation of the appellant. Hong Kong"Shanghai cannot point to a single conflict which exists between Hong Kong and United States law on the issue in question. In fact, the section 524 discharge injunction does not apply to the Hong Kong courts at all, but only to the creditor who enjoyed the benefits of participating in the United States bankruptcy. Under these circumstances, international comity does not dictate a result contrary to that reached by the district and bankruptcy courts. Rather, it is consistent with the general principles of international comity which is limited to cases in which ""there is in fact a true conflict between domestic and foreign law."" Hartford Fire Ins. Co. v. California, 509 U.S. 764, 798, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(citing Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for Southern Dist. of Iowa, 482 U.S. 522, 555, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987) (Blackmun, J., concurring)). Thus, the district court properly declined to reverse the bankruptcy court's order on the basis of international comity. | Comity is limited to cases in which there is, in fact, a true conflict between domestic and foreign law. | Is comity limited to cases in which there is a true conflict between domestic and foreign law? | 020251.docx | LEGALEASE-00124079-LEGALEASE-00124080 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 13234 | Cardenas v. Solis, 570 So. 2d 996 | 228+830.1 | There has been a distinct trend, however, in recent years in favor of recognizing some limited exceptions to this general rule. American courts are now "more likely to recognize and enforce modifiable foreign judgments (usually those involving family and matrimonial matters), even though foreign interlocutory decrees are still generally not recognized or enforced." Underhill, Denying Enforcement of a Foreign Country Injunction"Solution or Symptom? Pilkington Bros. v. AFG Industries, Inc., 17 Conn.L.Rev. 703, 709 (1985) (footnotes omitted); see Herczog v. Herczog, 186 Cal.App.2d 318, 9 Cal.Rptr. 5 (Dist.Ct.App.1960); Adamsen v. Adamsen, 151 Conn. 172, 195 A.2d 418 (1963); Restatement of Foreign Relations Law of the United States "" 494"96 (Tent.Draft No. 4, 1983); cf. Restatement (Second) of Conflict of Laws " 109 comment d (1971). As stated in Pilkington Bros. P.L.C. v. AFG Industries, 581 F.Supp. 1039, 1045 (D.Del.1984) (citations omitted):"A generally recognized rule of international comity states that an American court will only recognize a final and valid judgment. That rule, however, has not been strictly applied to cases involving enforcement of modifiable judgments. Modifiable foreign orders can be granted extraterritorial effect even though they might not be "final" for purposes of res judicata." | Generally, only final judgment of courts of foreign country are subject to recognition and enforcement in United States, provided certain jurisdictional due process standards are observed by the foreign court; nonfinal or interlocutory orders of foreign courts, however, are generally not entitled to such recognition or enforcement. U.S.C.A. Const.Amends. 5, 14. | "Does a generally recognized rule of international comity state that an American court will only recognize a final and valid judgement however, modifiable foreign orders can be granted extraterritorial effect even though they might not be final for purposes of res judicata?" | 020307.docx | LEGALEASE-00123609-LEGALEASE-00123610 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 13235 | United States v. Rasheed, 802 F. Supp. 312 | 221+397 | Defendants' arguments lack basis in the law. The Ninth Circuit has held that the Fourth Amendment does not apply to the search of non-resident aliens on a ship in international waters. United States v. Aikins, 946 F.2d 608, 613 (9th Cir.1990); United States v. Davis, 905 F.2d 245, 251 (9th Cir.1990) (citing United States v. Verdugo"Urquidez, 494 U.S. 259, 265, 110 S.Ct. 1056, 1061, 108 L.Ed.2d 222 (1990)). Defendants are non-resident aliens and the boarding and search of the Lucky Star occurred in international waters. Therefore, Defendants cannot challenge boarding or search of the Lucky Star by the Coast Guard. | Fourth Amendment does not apply to search of nonresident aliens on ship in international waters. U.S.C.A. Const.Amend. 4. | Does the Fourth Amendment apply to a search of nonresident aliens on ship in international waters? | International Law - Memo # 817 - C - ANC.docx | ROSS-003288835-ROSS-003288836 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13236 | In re Utnehmer, 499 B.R. 705 | 289+426(1) | Other concerns arise from the bankruptcy court's reasoning that a partnership arose from the Loan Agreement. As discussed above, the court apparently considered a future agreement to share profits as an indication of partnership. It is true that an agreement to share profits may be evidence of a partnership agreement. Holmes v. Lerner, 74 Cal.App.4th 442, 453"54, 88 Cal.Rptr.2d 130 (Cal.Ct.App.1999); Bank of Cal. v. Connolly, 36 Cal.App.3d 350, 364, 111 Cal.Rptr. 468 (Cal.Ct.App.1973). However, the presence of profit sharing does not support a presumption of the existence of the partnership unless there was also an actual sharing of the profits. Cal. Corp.Code " 16202 (2013) ("A person who receives a share of the profits of a business is presumed to be a partner in the business.") (emphasis added). Here, the facts are undisputed that no limited liability company was ever formed, no operating agreement was ever executed, and there was no actual sharing of profits between William and Crulls. | Under California law, the presence of profit-sharing does not support a presumption of the existence of the partnership unless there was also an actual sharing of the profits. West's Ann.Cal.Corp.Code S 16202. | Is a mere presence of profit sharing agreement sufficient to support a presumption of the existence of the partnership? | 021877.docx | LEGALEASE-00122631-LEGALEASE-00122632 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 13237 | Shockey v. Pelfrey, 314 Ky. 441 | 302+310 | An exhibit forms a part of the pleading by the express language of the Civil Code of Practice, and it may aid and cure an allegation in the pleading vaguely, indefinitely and defectively stated. Tackett v. Pickeville Supply & Planing Mill Co., 249 Ky. 835, 61 S.W.2d 881; Newport & Dayton Lumber Co. v. Lichtenfeldt, 72 S.W. 778, 24 Ky.Law Rep. 1969. It cannot, however, supply an averment which has been wholly omitted. Powers v. Hardesty, 250 Ky. 522, 63 S.W.2d 616 | An exhibit forms a part of a pleading and may aid and cure an allegation which is vaguely, indefinitely and defectively stated, but exhibit cannot supply an averment which has been wholly omitted. Civ.Code Prac. S 120. | Can an exhibit cure or aid a defective allegation? | 022955.docx | LEGALEASE-00123498-LEGALEASE-00123500 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13238 | San Francisco v. Wendy's Int'l, 221 W. Va. 734 | 157+546 | Although courts considering the question have found that in limine hearings are generally recommended prior to making a Daubert-type determination, they are not required. "The only legal requirement is that the parties "have an adequate opportunity to be heard" before the district court makes its decision." Group Health Plan, Inc. v. Philip Morris USA, Inc., 344 F.3d 753, 761 n. 3 (8th Cir.2003). But by holding a hearing focused exclusively on the expert's proffered opinion, both the trial court and this Court on appellate review will be fully informed. As the Mississippi Supreme Court recently stated, Prior to any Daubert determination or other decision regarding the proffer of expert evidence, the parties must be afforded the opportunity to be heard. We generally recommend that the trial court conduct an in limine hearing specifically on the subject, as this procedure will result in full briefing and argument by the parties regarding the proposed expert testimony. This will not only assist the trial court in its function as evidentiary gatekeeper; it will provide a fuller record for an appellate court should the parties contest the evidentiary ruling. While an in limine hearing may not be necessary in all cases, it does provide the most efficient manner of addressing the issue in many cases. | Although in limine hearings are generally recommended prior to Daubert determinations, they are not required; the only legal requirement is that the parties have an adequate opportunity to be heard before the district court makes its decision. | Are in limine hearings generally recommended prior to Daubert determinations and are they preliminary determinations? | 024147.docx | LEGALEASE-00122570-LEGALEASE-00122571 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13239 | Choate v. Natvig, 952 S.W.2d 730 | 307A+3 | Initially, we note that "[g]ranting a motion in limine does not automatically result in permanent exclusion of the disputed evidence." Woodiel v. Barclay Enterprises, Inc., 858 S.W.2d 247, 250 (Mo.App.1993)(citing State v. Evans, 639 S.W.2d 820, 822 (Mo.1982)). "Such a ruling is interlocutory only, and additional information produced at trial may prompt the trial court to alter its pretrial ruling and admit the evidence." Woodiel, 858 S.W.2d at 250. | Granting motion in limine does not automatically result in permanent exclusion of disputed evidence. | Does granting motion in limine automatically result in permanent exclusion of disputed evidence? | Pretrial Procedure - Memo # 325 - C - ANC.docx | ROSS-003297274-ROSS-003297275 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 13240 | Headley v. Williams, 162 N.C. App. 300 | 307A+3 | Plaintiff also argues that exclusion of defendant's subsequent unrelated DWI conviction was error. Plaintiff contends this evidence was admissible to impeach defendant's credibility under Rule 609 of the North Carolina Rules of Evidence. See N.C. Gen.Stat. " 8C"1, Rule 609 (2003). Although evidence of a DWI conviction is generally admissible under Rule 609, see State v. Gregory, 154 N.C.App. 718, 722, 572 S.E.2d 838, 840"41 (2002), a trial court's decision to exclude evidence under Rule 403, because its probative value is substantially outweighed by the danger of unfair prejudice, is reviewed on appeal only for an abuse of discretion, see State v. Ferguson, 105 N.C.App. 692, 695, 414 S.E.2d 769, 771 (1992). In this case, the trial court found that the probative value as to the credibility of defendant from the evidence that defendant was convicted of DWI in an unrelated matter subsequent to the accident was substantially outweighed by its prejudicial nature. We conclude the trial court did not abuse its discretion. We note, however, that a trial court's ruling on a motion in limine is not final, but rather interlocutory and subject to modification. Nunnery v. Baucom, 135 N.C.App. 556, 566, 521 S.E.2d 479, 486 (1999). Thus if defendant, in the new trial, takes the stand, the trial court is permitted to reconsider its preliminary ruling. | A trial court's ruling on a motion in limine is not final, but rather interlocutory and subject to modification. | Is the court's ruling on a motion in limine interlocutory and subject to change during the course of the trial? | 032837.docx | LEGALEASE-00123081-LEGALEASE-00123082 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 13241 | Sw. Country Enterprises v. Lucky Lady Oil Co., 991 S.W.2d 490 | 307A+3 | Southwest's complaints focus on the exclusion of its evidence at trial. However, a complaint of improperly excluded evidence cannot be predicated on a trial court's ruling on a motion in limine. See Waldon v. City of Longview, 855 S.W.2d 875, 880 (Tex.App."Tyler 1993, no writ); see also Wal"Mart Stores, Inc. v. Deggs, 971 S.W.2d 72, 77 (Tex.App."Beaumont 1996), rev'd on other grounds, 968 S.W.2d 354 (Tex.1998). A court's ruling granting a motion in limine is not a ruling on the admissibility of the evidence and does not preserve error. See Waldon, 855 S.W.2d at 880. A motion in limine simply prohibits references to specific issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury. See In re R.V., Jr. and C.V., 977 S.W.2d 777, 780 (Tex.App."Fort Worth 1998, no pet.). | Ruling granting a motion in limine is not a ruling on the admissibility of evidence and does not preserve error in exclusion of evidence; motion in limine simply prohibits references to specific issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury. | "Is a ruling granting a motion in limine, a ruling on the admissibility of evidence and does not preserve error in exclusion of evidence?" | 044225.docx | LEGALEASE-00122954-LEGALEASE-00122955 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 13242 | Pramer S.C.A. v. Abaplus Int'l Corp., 76 A.D.3d 89 | 13+5 | We disagree with the dissent that the facts of this case fall within the "special facts" doctrine, which holds that absent a fiduciary relationship between parties, there is nonetheless a duty to disclose when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair (see Swersky v. Dreyer & Traub, 219 A.D.2d 321, 327, 643 N.Y.S.2d 33 [1996]). Plaintiff sufficiently pleaded the elements of the fraudulent scheme, i.e., that Abaplus conferred a benefit on plaintiff's unfaithful employee to influence his conduct to the detriment of plaintiff. We note that the fraud cause of action based on plaintiff's bribery-related allegations arises from the common law of torts (see Sardanis v. Sumitomo Corp., 279 A.D.2d 225, 229"230, 718 N.Y.S.2d 66 [2001]; accord Niagara Mohawk Power Corp. v. Freed, 265 A.D.2d 938, 939"940, 696 N.Y.S.2d 600 [1999] [sustaining a fraud cause of action based on alleged bribery by the plaintiff's employee]). We adhere to our prior holding in Sardanis that a private right of action is not implied under the commercial bribery provisions of the Penal Law, and the dissent does not disagree with Sardanis on this point but ignores the plain language of Sardanis that such a private right of action does exist under tort law (279 A.D.2d at 229"230, 718 N.Y.S.2d 66). | Private right of action is not implied under the commercial bribery provisions of the Penal Law. | Is a private right of action implied under the commercial bribery provisions of a penal law/statute? | 011102.docx | LEGALEASE-00124226-LEGALEASE-00124227 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13243 | Altizer v. Town of Cedar Bluff, Va., 104 F. Supp. 3d 760 | 148+114.1 | The Takings Clause, applicable to the states through the Fourteenth Amendment, forbids the taking of private property "for public use, without just compensation." U.S. Const. amend. V. To assert a Fifth Amendment claim, the plaintiff must establish a deprivation of a "cognizable property interest." L.M. Everhart Const., Inc. v. Jefferson Cnty. Planning Comm'n, 2 F.3d 48, 51 (4th Cir.1993). The length of deprivation may vary, because "[i]t is well established that temporary takings are as protected by the Constitution as are permanent ones." See Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1033, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (Kennedy, J. concurring) (citing First English Evangelical Lutheran Church of Glendale v. Cnty. of L.A., 482 U.S. 304, 318, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)). | To assert a Fifth Amendment takings claim, the plaintiff must establish a deprivation of a cognizable property interest; the length of deprivation may vary, because temporary takings are as protected by the Constitution as are permanent ones. U.S.C.A. Const.Amend. 5. | Are temporary takings protected by the Constitution as are permanent ones? | Eminent Domain - Memo 243 - GP.docx | ROSS-003297739-ROSS-003297740 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 13244 | Doe v. Qi, 349 F. Supp. 2d 1258 | 221+342 | Accordingly, the second Sabbatino factor generally weighs against justiciability. However, the force of this factor may depend upon the nature of the relief sought. The more intrusive the remedy upon the sovereignty of the foreign state, the more the concerns of the act of state doctrine are implicated. Cf. Credit Suisse v. U.S. Dist. Ct., 130 F.3d 1342, 1347 (9th Cir.1997) ("Any order from the district court compelling the Banks to transfer or otherwise convey Estate assets would be in direct contravention of the Swiss freeze orders"); OPEC, 649 F.2d at 1361 ("The possibility of insult to the OPEC states and of interference with the efforts of the political branches to seek favorable relations with them is apparent from the very nature of this action and the remedy sought""injunctive relief and damages). | The more intrusive the remedy upon the sovereignty of the foreign state, the more the concerns of the act of state doctrine are implicated. | Are the concerns of the act of state doctrine implicated when remedies are intrusive? | International Law - Memo # 305 - C - ES.docx | ROSS-003310821-ROSS-003310822 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13245 | In re Doe, 860 F.2d 40 | 221+151 | Such immunity is a personal right. It derives from and remains "an attribute of state sovereignty." Doe No. 700, 817 F.2d at 1111. Because it is the state that gives the power to lead and the ensuing trappings of power"including immunity"the state may therefore take back that which it bestowed upon its erstwhile leaders. Concededly, the Marcoses have been stripped of their positions of power as rulers of the Philippines. Further, by issuing the waiver, the Philippine government has declared its decision to revoke an attribute of their former political positions; namely, head-of-state immunity. | Head-of-state immunity is a personal right which derives from and remains an attribute of state sovereignty, and because it is the state that gives power to lead and ensuing trappings of power, including immunity, state may therefore take back that which it bestowed upon its erstwhile leaders. | Is head-of-state immunity a personal right which derives from and remains an attribute of state sovereignty? | International Law - Memo # 826 - C - ANC.docx | ROSS-003284114-ROSS-003284115 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 13246 | Agudas Chasidei Chabad of U.S. v. Russian Fed'n, 528 F.3d 934 | 221+387 | Russia invokes the act of statedoctrine, under which "the Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles, even if the complaint alleges that the taking violates customary international law." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 428, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). The doctrinerests on a view that such judgments might hinder the conduct of foreign relations by the branches of government empowered to make and execute foreign policy. Id. at 423"25, 84 S.Ct. 923; see also W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., 493 U.S. 400, 404"05, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990). The burden of proving an act of state rests on the party asserting the defense. See Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 691, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976). | Under the act of state doctrine, the burden of proving an act of state rests on the party asserting the defense. | "Under the act of state doctrine, does the burden of proving an act of state rest on the party asserting the defense?" | 020882.docx | LEGALEASE-00124739-LEGALEASE-00124740 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13247 | United States v. Noriega, 746 F. Supp. 1506 | 221+151 | In order to assert head of state immunity, a government official must be recognized as a head of state. Noriega has never been recognized as Panama's Head of State either under the Panamanian Constitution or by the United States. Title VI, Article 170 of the Panamanian Constitution provides for an executive branch composed of the President and Ministers of State, neither of which applies to Noriega. Officially, Noriega is the Commandante of the Panamanian Defense Forces, but he was never elected to head Panama's government and in fact abrogated the Panamanian presidential elections of May 7, 1989. More importantly, the United States government has never accorded Noriega head of state status, but rather continued to recognize President Eric Arturo Delvalle as the legitimate leader of Panama while Noriega was in power. As this Court held in a previous case involving the Republic of Panama, the Executive's decision to recognize President Delvalle and not the Defendant as Panama's head of state is binding on the Court. Republic of Panama v. Air Panama, 745 F.Supp. 669 (S.D.Fla.1988). The ruling in that case"which I find no reason to depart from here"was based on a line of case law holding that recognition of foreign governments and their leaders is a discretionary foreign policy decision committed to the Executive Branch and thus conclusive upon the courts. See Republic of Panama v. Citizens and Southern Int'l. Bank, 682 F.Supp. 1544, 1545 (S.D.Fla.1988); Ex parte Republic of Peru, 318 U.S. 578, 589, 63 S.Ct. 793, 800, 87 L.Ed. 1014 (1943); Banco De Espana v. Federal Reserve Bank, 114 F.2d 438, 442 (2d Cir.1940); Guaranty Trust Co. v. United States, 304 U.S. 126, 137, 58 S.Ct. 785, 791, 82 L.Ed. 1224 (1938); United States v. Belmont, 301 U.S. 324, 328, 57 S.Ct. 758, 759"60, 81 L.Ed. 1134 (1937); Jones v. United States, 137 U.S. 202, 212"214, 11 S.Ct. 80, 83"84, 34 L.Ed. 691 (1890). See also Republic of Mexico v. Hoffman, 324 U.S. 30, 35"36, | In order to be entitled to head of state immunity, government official must be recognized as head of state. | In order to be entitled to head of state immunity; must a government official be recognized as head of state? | International Law- Memo # 769 - C - SU.docx | ROSS-003315485-ROSS-003315486 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13248 | Catalanello v. Kramer, 18 F. Supp. 3d 504 | 237+6(1) | "Statements of opinion, as a matter of constitutional law, enjoy absolute immunity." DeAngelis, 180 N.J. at 14, 847 A.2d 1261 (quoting Dairy Stores Inc. v. Sentinel Pub. Co., Inc., 104 N.J. 125, 147, 516 A.2d 220 (1986)). In determining whether a statement is an actionable statement of fact or a nonactionable opinion, courts consider, inter alia, the statement's verifiability: "A factual statement can be proved or disproved objectively while an opinion statement generally cannot. Only if the statement "suggested specific factual assertions that could be proven true or false could the statement qualify as actionable defamation."" Id. (quoting Ward v. Zelikovsky, 136 N.J. 516, 531, 643 A.2d 972 (1994)). Courts "have been especially careful when applying defamation and related causes of action to academic works, because academic freedom is "a special concern of the First Amendment." " ONY, Inc. v. Cornerstone Therapeutics, Inc., 720 F.3d 490, 496 (2d Cir.2013) (quoting Keyishian v. Bd. of Regents of the Univ. of the State of N.Y., 385 U.S. 589, 603, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)). | Under New Jersey law, in determining whether a statement is an actionable statement of fact or a nonactionable opinion, courts consider, inter alia, the statement's verifiability, since a factual statement can be proved or disproved objectively while an opinion statement generally cannot; only if the statement suggested specific factual assertions that could be proven true or false could the statement qualify as actionable defamation. | Can false factual assertion constitute actionable defamation? | 021042.docx | LEGALEASE-00125160-LEGALEASE-00125161 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 13249 | Boling v. Clinton Cotton Mills, 163 S.C. 13 | 237+6(2) | In 36 C. J. 1170, it is said: Oral imputations of falsehood are not actionable per se unless they charge a crime or affect one in his business or profession." | Oral imputations of falsehood are not actionable per se, unless they charge crime or affect one in his business or profession. | "In the context of libel and slander, are oral imputations of falsehood actionable per se?" | Libel and Slander - Memo 201 - BP.docx | ROSS-003281924-ROSS-003281925 | Condensed, SA | 0.21 | 0 | 1 | 0 | 1 | |
| 13250 | Smith v. Polsky, 796 S.E.2d 354 | 307A+3 | It is well established that.[a] motion in limine seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial, and is recognized in both civil and criminal trials. The trial court has wide discretion in making this advance ruling.. Moreover, the court's ruling is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature. Therefore, the court's ruling on a motion in limine is subject to modification during the course of the trial. Heatherly v. Indus. Health Council, 130 N.C.App. 616, 619, 504 S.E.2d 102, 105 (1998) (internal citations and quotation marks omitted). When this Court reviews a decision to grant or deny a motion in limine, the determination will not be reversed absent a showing that the trial court abused its discretion. Id. | Trial court's ruling on a motion in limine is not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature; therefore, trial court's ruling on a motion in limine is subject to modification during the course of the trial. | Is trial court's ruling on a motion in limine preliminary in nature? | 024307.docx | LEGALEASE-00124950-LEGALEASE-00124951 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 13251 | Groves v. Ihsanullah, 2016-Ohio-7703 | 307A+3 | A "motion in limine" is defined as "[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury." Black's Law Dictionary 1013 (6th Ed.1990). The purpose of a motion in limine "is to avoid injection into [the] trial of matters which are irrelevant, inadmissible and prejudicial[,] and granting of [the] motion is not a ruling on evidence and, where properly drawn, granting of [the] motion cannot be error." Id. at 1013"1014. See State v. Maurer, 15 Ohio St.3d 239, 259, 473 N.E.2d 768, 787 (1984).A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling. Thus, "the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial. Finality does not attach when the motion is granted." Defiance v. Kretz, 60 Ohio St.3d 1, 4, 573 N.E.2d 32, 35, (1991); citing State v. Grubb, 28 Ohio St.3d 199, 201"202, 503 N.E.2d 142, 145 (1986). | Counsel for deceased patient's mother did not, by inquiring on cross-examination of defense expert witness as to whether witness assumed patient had history of drug seeking, violate motions in limine limiting witness's testimony regarding substance and drug abuse opinions and excluding evidence concerning patient's prior emergency room encounters to request narcotic prescription refills and, thus, mother was prejudiced by trial judge's sanctioning of counsel through issuance of curative jury instruction, entitling mother to new trial in wrongful death and medical malpractice action against hospital and emergency care provider premised on patient's death due to prescription drug overdose; liminal motions were not final, and trial judge overruled defense objections to questioning. Rules Civ.Proc., Rule 59(A)(1). | "Is a trial court's ruling on a motion in limine not a final ruling on the admissibility of the evidence in question, but only interlocutory or preliminary in nature?" | 028229.docx | LEGALEASE-00125002-LEGALEASE-00125003 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 13252 | Gautney v. Rapley, 2 Ark. App. 116 | 307A+1 | We see nothing wrong in presenting to a trial court a pre-trial memorandum. In fact, in most cases it would be most helpful to the trial judge in his preparation and understanding of the case. While it would be better if both parties submitted such memoranda, we see no error flowing from acceptance of only appellee's memorandum where it was not shown to be misleading or incorrectly cited the law. The issues were correctly stated and the cases cited therein are the same as cited to this court, and correctly stated the applicable law. The cases referred to by appellants' counsel in his opening statement are the same as those he relies on in his brief in this court. Nothing contained in the memorandum could have in any way improperly influenced the court or prejudiced appellants in any way. We find no merit to this contention. | No error flowed from acceptance of only one party's pretrial memorandum where it was not shown to be misleading or to have incorrectly cited the law and where nothing contained in such memorandum could have in any way improperly influenced court or prejudiced other parties. | Does an error flow from the acceptance of only one party's pretrial memorandum? | Pretrial Procedure - Memo # 481 - C - LK.docx | ROSS-003324273-ROSS-003324274 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 13253 | Medix Ambulance Serv. v. Superior Court, 97 Cal. App. 4th 109 | 307A+1 | Where a statute provides for a "hearing," it does not necessarily demand the parties be given an opportunity to orally argue the case. As our Supreme Court recently noted, the terms "hear" and "hearing" "when used in a legal sensedo not necessarily encompass oral presentations." (Lewis v. Superior Court (1999) 19 Cal.4th 1232, 1247, 82 Cal.Rptr.2d 85, 970 P.2d 872.) A statute referring to a " "hearing" does not require an opportunity for an oral presentation, unless the context or other language indicates a contrary intent." (Id. at p. 1247, 82 Cal.Rptr.2d 85, 970 P.2d 872.) In Gwartz v. Superior Court (1999) 71 Cal.App.4th 480, 482, 83 Cal.Rptr.2d 865 and in Mediterranean Construction Co. v. State Farm Fire & Casualty Co. (1998) 66 Cal.App.4th 257, 262"264, 77 Cal.Rptr.2d 781, this court concluded that the context of the statute governing summary judgment motions required an oral hearing. Parties are also entitled to oral argument in "critical pretrial matters" where there is a "real and genuine dispute." (Titmas v. Superior Court (2001) 87 Cal.App.4th 738, 742, 104 Cal.Rptr.2d 803 [whether the attorney-client privilege applied]; see also TJX Companies, Inc. v. Superior Court (2001) 87 Cal.App.4th 747, 751, 104 Cal.Rptr.2d 810 [whether suit should proceed as a class action] ). We analyze the procedures employed here under those criteria. | Parties are entitled to oral argument in critical pretrial matters where there is a real and genuine dispute. | Are parties entitled to oral argument in critical pretrial matters? | 032094.docx | LEGALEASE-00124467-LEGALEASE-00124468 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13254 | Jackson v. Joyner, 309 S.W.3d 910 | 307A+3 | We begin our consideration of the parties' arguments by noting that, as Mr. Jackson points out, this Court recently opined that a motion in limine should not be used as a vehicle to preclude a claim or defense or as a substitute for a motion for summary judgment. Duran v. Hyundai Motor America, Inc., 271 S.W.3d 178, 192 (Tenn.Ct.App.2008). Rather, a motion in limine provides a means by which a party may seek guidance from the trial court regarding an evidentiary question in order to formulate their trial strategy. Id. It essentially substitutes for an evidentiary objection which may be made at trial. Id. A motion in limine is not subject to the same safeguards as a motion for summary judgment or for partial summary judgment. Id. | A motion in limine should not be used as a vehicle to preclude a claim or defense or as a substitute for a motion for summary judgment. | Should a motion in limine be used as a vehicle to preclude a claim or defense? | Pretrial Procedure - Memo # 821 - C - KA.docx | ROSS-003285235-ROSS-003285236 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13255 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | Motions in limine serve fundamentally different purposes than motions for summary judgment. They are not subject to the same procedural safeguards. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069"70 (3d Cir.1990). Thus, a motion in limine should not be used as a substitute for a dispositive motion such as a motion for summary judgment. Courts that have addressed attempts to use a motion in limine in such a manner, either explicitly or implicitly, have found such use to be in error. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d at 1069"70; Cannon v. William Chevrolet/Geo, Inc., 341 Ill.App.3d 674, 276 Ill.Dec. 593, 794 N.E.2d 843, 849 (2003); Lin v. Gatehouse Constr. Co., 84 Ohio App.3d 96, 616 N.E.2d 519, 524"25 (1992); BHG, Inc. v. F.A.F., Inc., 784 A.2d 884, 886 (R.I.2001). As several courts have noted, a motion in limine should not be used to "choke off" a party's entire claim or defense. McCracken v. Edward D. Jones & Co., 445 N.W.2d 375, 379 (Iowa Ct.App.1989); Cass Bank & Trust Co. v. Mestman, 888 S.W.2d 400, 404 (Mo.Ct.App.1994) | Motions in limine serve fundamentally different purposes than motions for summary judgment; they are not subject to the same procedural safeguards. | Is a motion in limine subject to the same safeguards as a motion for summary judgment? | 036803.docx | LEGALEASE-00125495-LEGALEASE-00125496 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13256 | S.C. Dep't of Transp. v. McDonald's Corp., 375 S.C. 90 | 30+78(1) | A motion in limine is generally not considered a final order on the admissibility of evidence and, for that reason, is not immediately appealable. See, e.g. State v. Floyd, 295 S.C. 518, 369 S.E.2d 842 (1988). Because the appeal should have been dismissed, the Court of Appeals erred in addressing the merits of the appeal. Accordingly, we vacate the opinion of the Court of Appeals and dismiss the appeal as the order on the motions in limine is not immediately appealable. | Ruling on motion in limine is generally not considered a final order on the admissibility of evidence and, for that reason, is not immediately appealable. | Is a ruling on a motion in limine considered a final order? | Pretrial Procedure - Memo # 835 - C - VA.docx | ROSS-003312755-ROSS-003312756 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 13257 | Compton v. Ubilluz, 353 Ill. App. 3d 863 | 307A+3 | Trial judges should attempt to enter narrow in limine orders, anticipate properevidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. An unclear order in limine is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion in limine before trial. Cunningham v. Millers General Insurance Co., 227Ill. App.3d 201, 205, 169 Ill. Dec. 200, 591 N.E.2d 80 (1992). It is well settled that both the motion in limine and the resulting order should be in writing to prevent confusion and misunderstanding during trial. Stennis v. Rekkas, 233Ill. App.3d 813, 825, 175 Ill. Dec. 45, 599 N.E.2d 1059 (1992); Cunningham, 227Ill. App.3d at 205, 169 Ill.Dec. 200, 591 N.E.2d 80. | An unclear order in limine is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion in limine before trial. | Is an unclear order in limine worse than no order at all? | Pretrial Procedure - Memo # 844 - C - KA.docx | ROSS-003290251-ROSS-003290252 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 13258 | Hous. Auth. of Macon v. Younis, 279 Ga. App. 599 | 307A+3 | A motion in limine should be granted when "there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial." Andrews v. Wilbanks, 265 Ga. 555, 556, 458 S.E.2d 817 (1995). Although a trial court has broad discretion to determine the admissibility of evidence, irrelevant evidence that does not bear directly or indirectly on the questions being tried should be excluded. See OCGA " 24-2-1; see also Ballew v. Kiker, 192 Ga.App. 178, 179(2), 384 S.E.2d 211 (1989) (trial court properly excluded irrelevant evidence). | A motion in limine should be granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. | Should a motion in limine be granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible? | Pretrial Procedure - Memo # 853 - C - TJ.docx | ROSS-003296412-ROSS-003296413 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 13259 | Menna v. Jaiman, 80 Conn. App. 131 | 307A+313 | Once the court made the determination that the plaintiff had failed to provide disclosure to the defendant that showed a causal relationship between her injuries and the automobile accident, the court gave the plaintiff an opportunity to rebut the defendant's assertions and to indicate any evidence she had to the contrary. The plaintiff's counsel conceded that he did not currently have any medical information that connected the plaintiff's injuries to the accident. 89 Practice Book " 13-4(4)(A) allows a court to preclude expert testimony if the proponent of the testimony has made a late disclosure of the expert and the late disclosure "will cause undue prejudice to the moving party .." The moving party bears the burden of showing that it was prejudiced. After a review of the record and transcripts in this case, we conclude that the court did not place the burden on the plaintiff to show a lack of prejudice or base its decision solely on the late disclosure. The record reveals that the court determined that the defendant would be prejudiced by the plaintiff's lack of disclosure only after the defendant read into the record the standard interrogatories that had been sent to the plaintiff and her answer. The answers to those interrogatories submitted nearly five years before trial, were the only disclosure of expert information. It is clear that the plaintiff's cursory response to the standard interrogatories did not satisfy the disclosure requirements of Practice Book " 13-4. The arguments raised by the defendant addressed and satisfied his burden of proof. Although the court allowed the plaintiff to present evidence at the oral arguments, the evidence was rebuttal evidence. The court merely gave the plaintiff one last opportunity to rebut the defendant's claim of prejudice before it ruled. Therefore, the court did not improperly shift the burden to the plaintiff. | Trial court did not improperly shift burden to motorist to show a lack of prejudice in motion for sanctions due to motorist's failure to disclose expert witnesses, though court allowed motorist to present evidence at oral arguments, given that motorist was only presented with last opportunity to rebut driver's claim of prejudice before court ruled, and court determined that defendant driver would be prejudiced by the motorist's lack of disclosure only after the driver read into the record the standard interrogatories that had been sent to motorist and her answer, which, submitted nearly five years before trial, were the only disclosure of expert information. Practice Book 1998, S 13-4(1)(A). | Does the party who seeks a sanction for the violation of discovery rules bear the burden of showing that it was prejudiced? | 041198.docx | LEGALEASE-00125413-LEGALEASE-00125414 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13260 | Velazquez v. Serrano, 43 So. 3d 82 | 366+1 | We review an order granting summary judgment de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Equitable subrogation is generally defined as follows:Subrogation is the substitution of one person in the place of another with reference to a lawful claim or right. Subrogation arises by operation of law, where one having a liability or a right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid.Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645 (1916). Subrogation "is not allowed if it works any injustice to the rights of others." Fed. Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883, 885 (1933); see also Brannon v. Hills, 111 Fla. 491, 149 So. 556, 557 (1933); Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n, 508 So.2d 1323 (Fla. 3d DCA 1987). A party's entitlement to subrogation therefore "depends upon the equities and attending facts of each case." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So.2d 328, 332 (Fla. 3d DCA 1999). | Equitable subrogation is not allowed if it works any injustice to the rights of others; a party's entitlement to subrogation therefore depends upon the equities and attending facts of each case. | Is a party's entitlement to subrogation dependent upon the equities of each case? | 044329.docx | LEGALEASE-00125065-LEGALEASE-00125066 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13261 | Smith v. Associated Nat. Gas Co., 7 S.W.3d 530 | 30+205 | We determine that this point has no merit. We first note that "[a]n in limine ruling is a "preliminary expression of the court's opinion as to the admissibility of evidence" and is subject to change during the course of the trial." Wilkerson v. Prelutsky, 943 S.W.2d 643, 646 (Mo. banc 1997) (quoting Brown v. Hamid, 856 S.W.2d 51, 55 (Mo. banc 1993)). Therefore, "a complaint about a trial court's in limine ruling preserves nothing for appellate review." Sullivan v. Spears, 871 S.W.2d 75, 76 (Mo.App.1994); see also Bushong v. Marathon Elec. Mfg. Corp., 719 S.W.2d 828, 840 (Mo.App.1986). "If the court rules in limine that certain evidence will be excluded, the proponent still must make an offer of proof." Sullivan, 871 S.W.2d at 76. "If the evidence is still excluded upon offer of proof, the proponent may predicate error on the exclusion." Id. | A complaint about a trial court's in limine ruling preserves nothing for appellate review. | Does a complaint about a trial court's ruling on a motion in limine preserve the issue for appellate review? | Subrogation - Memo 938 - RK.docx | ROSS-003284090-ROSS-003284092 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13262 | In re Houston, 409 B.R. 799 | 366+1 | The doctrine of equitable subrogation is "founded not upon any fixed law, but upon principles of natural justice; its purpose is to require the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it; and it is to be applied according to the dictates of equity and good conscience in light of the actions and relationship of the parties." Calvert Fire Ins. Co. v. James, 236 S.C. 431, 114 S.E.2d 832, 834 (1960). Under South Carolina Law, equitable subrogation is appropriate where the following factors are present: (1) the party claiming subrogation has paid the debt; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity. United Carolina Bank v. Caroprop, Ltd., 316 S.C. 1, 446 S.E.2d 415. | Under South Carolina law, doctrine of equitable subrogation is to be applied according to dictates of equity and good conscience, in light of actions and relationship of parties. | Is the doctrine of equitable subrogation founded upon any principles? | 044402.docx | LEGALEASE-00125103-LEGALEASE-00125104 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13263 | In re Lapeer Cty. Clerk, 242 Mich. App. 497 | 79+1 | We hold meritorious, in part, the complaint by plaintiff Bruns for a writ of superintending control. The county clerk is an independently elected county official whose duties are prescribed by the Michigan Constitution, statutes, and court rules. Const. 1963, art. 6, " 14 states that the county clerk "shall be the clerk of the circuit court":The clerk of each county organized for judicial purposes or other officer performing the duties of such office as provided in a county charter shall be clerk of the circuit court for such county. | County clerk is an independently elected county official whose duties are prescribed by State Constitution, statutes, and court rules. M.C.L.A. Const. Art. 6, S 14; M.C.L.A. SS 600.571, 600.1007; MCR 8.105, 8.119. | Who is a county clerk? | 013405.docx | LEGALEASE-00125729-LEGALEASE-00125730 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 13264 | Com., Dep't of Health v. Hanes, 78 A.3d 676 | 79+1 | As we looked to the definitions contained in the RTKL in Register of Wills & Clerk of the Orphans' Court of Philadelphia License Marriage Bureau, we look to the definitions in the Judicial Code in deciding whether the Supreme Court has exclusive jurisdiction of this matter under Section 721(2) as a mandamus action to a "court of inferior jurisdiction." 42 Pa.C.S. " 721(2). Section 102 of the Judicial Code defines "court" as "[i]nclud[ing] any one or more of the judges of the court who are authorized by general rule or rule of court, or by law or usage, to exercise the powers of the court in the name of the court." 42 Pa.C.S. " 102. Section 102 also defines "judicial officers" as "[j]udges, district justices and appointive judicial officers." In contrast, "county staff" is defined as "[s]ystem and related personnel elected by the electorate of a county ... The term does not include judicial officers." Id. In turn, "system and related personnel" is defined as including Registers of Wills and Clerks of the Orphans' Court division. Id. Thus, Hanes, as the Clerk of the Orphans' Court and Register of Wills, is "county staff" and is not a judge or judicial officer. Accordingly, he is not within the definition of "court" within the meaning of Section 721(2) of the Judicial Code, and the Supreme Court does not have jurisdiction of this mandamus action against him. | Clerk of Orphans' Court and Register of Wills was not a judicial officer, and therefore mandamus petition addressing clerk's issuance of marriage licenses was not one directed to a court, as could render petition subject to jurisdiction of Supreme Court; clerk's position was defined by statute as part of "system and related personnel," which expressly excluded judicial officers. 42 Pa.C.S.A. SS 102, 721(2). | Is a Clerk of the Orphans' Court a judicial officer? | 013442.docx | LEGALEASE-00125626-LEGALEASE-00125627 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 13265 | State v. Bennett, 307 Conn. 758 | 203+527 | "In order to be convicted under our murder statute, the defendant must possess the specific intent to cause the death of the victim.... To act intentionally, the defendant must have had the conscious objective to cause the death of the victim....]\|Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available.... Therefore, intent is often inferred from conduct ... and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom... Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Citation omitted; internal quotation marks omitted.) State v. Robertson, supra, 254 Conn. at 783-84, 760 A.2d 82. | To act intentionally, as required to support murder conviction, the defendant must have had the conscious objective to cause the death of the victim. | Does the defendant have conscious objective to cause the death of the victim to consider his act was intentional? | Homicide - Memo 155 - VG.docx | ROSS-003300049-ROSS-003300050 | Condensed, Order, SA | 0.81 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13266 | Gerber v. Sharp, 72 Ind. 553 | 366+7(1) | "Moreover, as soon as the surety has paid the debt, an equity arises in his favor to have all the securities, original and collateral, which the creditor holds against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done: for the purpose of obtaining indemnity from the principal, he is considered as at once subrogated to all the rights, remedies and securities of the creditor; as substituted in the place of the creditor, and entitled to enforce all his liens, priorities and means of payment, as against the principal, and to have the benefit even of securities that were given without his knowledge. * * * "This right of the surety,' says Chancellor Kent, in Hayes v. Ward, 4 Johns. Ch. 123, 130, "stands not upon contract, but upon the same principle of natural justice, upon which one surety is entitled to contribution from another:" and the same thing is said in 1 Comst. 599, 600. Payment by one who stands in the relation of a surety, although it may extinguish the remedy, or discharge the security, as respects the creditor, has not that effect as between the principal debtor and the surety. As between them, it is in the nature of a purchase by the surety from the debtor; it operates [as] an assignment in equity of the debt and of all legal proceedings upon it, and gives a right in equity to call for an assignment of all securities; and, in favor of the surety, the debt and all its obligations and incidents, are considered as still subsisting." And see the authorities there cited. | A. was surety for B. on a note to C. for part of the purchase money of real estate. B. at the same time made a note for the residue and a mortgage on the real estate to C. to secure the payment of both notes. Afterwards, the first note being due, C. recovered judgment thereon against B. as principal and A. as surety, and, as B. was then insolvent, A. paid the judgment in full, and then brought suit to foreclose the mortgage for the amount paid. Held, that the suit could be maintained, and that A. was entitled to be subrogated to all C.'s rights in the mortgage. | Is the rule that a surety who has paid the debt of a principal is entitled to be substituted in place of creditor as to all securities held by him for payment of debt applies whether security is real or personal property? | 044062.docx | LEGALEASE-00125658-LEGALEASE-00125659 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 13267 | Adaman Mut. Water Co. v. United States, 278 F.2d 842 | 148+85 | Presently, a restrictive covenant is generally deemed a property right under federal law. Chapman v. Sheridan-Wyoming Coal Co., 1950, 338 U.S. 621, 70 S.Ct. 392, 94 L.Ed. 393. We think it should be treated similarly in an eminent domain context where the purpose of the distinction between property interests and other rights is to differentiate losses directly connected with the land taken from losses comparatively more remote. It follows from this that any right or duty, benefit or burden, which moves or is transferred as one with either the land or an estate in it must be deemed an interest in that land and compensable upon condemnation of the fee. Because the transfer of these rights and duties are subject to legal principles different from those which govern the passing of other interests, a unique, direct connection with the land is established. This connection justifies the distinction mentioned above. Accordingly, we think that under the Fifth Amendment a restrictive covenant imposing a duty which runs with the land taken constitutes a compensable interest. | A restrictive covenant imposing a duty which runs with the land taken constitutes a compensable interest. U.S.C.A.Const. Amend. 5. | Does a restrictive covenant constitute a compensable interest in land? | Eminent Domain - Memo 257 - GP.docx | ROSS-003300175-ROSS-003300176 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 13268 | Wright v. United States, 963 F. Supp. 7 | 386+6 | Finally, in order to prevail on their trespass claim, plaintiffs must prove (1) that a trespass to realty occurred, and (2) that such action was tortious or unauthorized. See Hammel v. Little, 87 F.2d 907, 912 (D.C.Cir. In Hammel, however, the Court held that where the intruder is an executive officer armed with a valid search warrant, that officer has legal authority to enter and search the premises. The presence of a warrant thus constitutes a complete defense to a suit for trespass. In this case, as stated above, although there were questions about the manner in which the U.S. Park Police obtained a search warrant, the warrant issued by Judge Queen was valid and enforceable. Accordingly, the claim for trespass will be dismissed. | To prevail on trespass claim under District of Columbia law,, plaintiffs must prove that trespass to realty occurred, and that such action was tortious or unauthorized. | What must a plaintiff prove in order to prevail on a trespass claim? | Trespass - Memo 189 - RK.docx | ROSS-003326891 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 13269 | Youngbey v. D.C., 766 F. Supp. 2d 197 | 386+10 | Trespass is a direct physical interference with, or an unlawful or unauthorized physical invasion of, another's property. To prove a trespass claim in the District of Columbia, a plaintiff must prove "(1) that a trespass to realty occurred, and (2) that such action was tortious or unauthorized."Wright v. United States, 963 F.Supp. 7, 19 (D.D.C.1997). | To prove trespass claim in District of Columbia, plaintiff must prove (1) that trespass to realty occurred, and (2) that such action was tortious or unauthorized. | What must a plaintiff prove in order to prevail on a trespass claim? | 047237.docx | LEGALEASE-00125834-LEGALEASE-00125835 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 13270 | United States v. CPC Int'l Inc., 875 F. Supp. 264 | 13+61 | A cause of action consists of the plaintiff's right claimed and the defendant's infringement of that right. The infringement is established according to the facts. A given set of facts may give rise to the infringement of separate and distinct rights and thereby separate causes of action. See 1A C.J.S. Actions " 21 (1985). The plaintiff has the right to bring an action when the acts or omissions constituting the cause of action occur. Id. A statute of limitations determines the appropriate time period permitted by law to the plaintiff to commence suit after the accrual of the cause of action. | Right to bring action arises when acts or omissions constituting cause of action occur. | Does the right to bring action arise when acts or omissions constituting cause of action occur? | 005331.docx | LEGALEASE-00126074-LEGALEASE-00126075 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 13271 | Duryee v. Turner, 20 Mo. App. 34 | 13+61 | The rule of law is that in the absence of any agreement between the landlord and tenant as to when the rent is to be paid, it is payable at the end of the year. Ridgley v. Stillwell, 27 Mo. 128. | In the absence of any agreement between the landlord and tenant as to when the rent for a farm is to be paid, it is payable at the end of the year, and an action to recover it cannot be maintained before that time. | "If an agreement between the landlord and tenant as to when the rent is to be paid is absent, is it payable at the end of the year?" | Action - Memo # 131 - C - SB.docx | ROSS-003312630-ROSS-003312631 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 13272 | Volk v. United States, 111 Fed. Cl. 313 | 34+2 | When the merits of a military personnel decision are nonjusticiable, the process by which the decision was made nevertheless may be subject to judicial review. Adkins v. United States, 68 F.3d 1317, 1323 (Fed.Cir.1995). "[B]y their nature[,] [military] procedures limit the military's discretion" because the military "is bound to follow its own procedural regulations if it chooses to implement some." Murphy, 993 F.2d at 873; see also Service v. Dulles, 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (stating that the United States Department of State must follow its own procedural regulations). | By their nature, military procedures limit the military's discretion because the military is bound to follow its own procedural regulations if it chooses to implement some. | Is the military bound to follow its own procedural regulations once it chooses to implement some? | 008807.docx | LEGALEASE-00126290-LEGALEASE-00126291 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13273 | Cott Index Co. v. Jagneaux, 685 So. 2d 656 | 79+1 | The office of the clerk of court is similar to the office of the sheriff in that it is an office operated by an elected official who derives his/her authority from the Louisiana Constitution. (Sheriff"La. Const. art. V, " 27; Clerk"La. Const. art. V, " 28.) The office of the clerk of court has no legal status and is simply the functional organization by and through which the clerk of court carries out his/her official duties. As with the office of the sheriff, it is not sui juris, it does not have the capacity to enter into contracts, nor can it be a legal party to litigation. Instead, it is the clerk, as the office holder, who enters into contracts and who is the party to litigation. Extrapolating from this, we find that Cott Index contracted with Kempf as the office holder and not with the St. Landry Parish Clerk of Court's Office. Since Cott Index contracted with Kempf as the Clerk of Court, the terms of the contract were not binding upon Jagneaux as the Clerk of Court. To hold otherwise would allow an unscrupulous out-going office holder to bind the incoming office holder thereby undermining the will of the people. | Office of clerk of parish court has no legal status and is simply functional organization by and through which clerk of court carries out his/her official duties; it is clerk, as office holder, who enters into contracts and who is party to litigation. LSA-Const. Art. 5, S 28. | Does the office of the clerk of court have a legal status? | 013416.docx | LEGALEASE-00126272-LEGALEASE-00126273 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 13274 | United States v. Rasheed, 802 F. Supp. 312 | 221+397 | Defendants' arguments lack basis in the law. The Ninth Circuit has held that the Fourth Amendment does not apply to the search of non-resident aliens on a ship in international waters.United States v. Aikins, 946 F.2d 608, 613 (9th Cir.1990); United States v. Davis, 905 F.2d 245, 251 (9th Cir.1990) (citing United States v. Verdugo-Urquidez, 494 U.S. 259, 265, 110 S.Ct. 1056, 1061, 108 L.Ed.2d 222 (1990)). Defendants are non-resident aliens and the boarding and search of the Lucky Star occurred in international waters. Therefore, Defendants cannot challenge boarding or search of the Lucky Star by the Coast Guard. | Fourth Amendment does not apply to search of nonresident aliens on ship in international waters. U.S.C.A. Const.Amend. 4. | Does the Fourth Amendment apply to a search of nonresident aliens on the ship in international waters? | International Law - Memo # 817 - C - SHS.docx | ROSS-003286609-ROSS-003286610 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13275 | In re Tamimi, 176 F.3d 274 | 221+432 | Under the FSIA, a foreign state is entitled to sovereign immunity unless the plaintiff demonstrates that one of the exceptions to sovereign immunity applies. See Arriba Ltd., 962 F.2d at 533. If no exception to sovereign immunity is applicable, courts "lack[ ] both statutory subject-matter jurisdiction and personal jurisdiction." Verlinden B.V. v. Central Bankof Nigeria, 461 U.S. 480, 485 n. 5, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). | Under Foreign Sovereign Immunities Act (FSIA), foreign state is entitled to sovereign immunity unless plaintiff demonstrates that one of the exceptions to sovereign immunity applies, and, if no exception to sovereign immunity is applicable, courts lack both statutory subject-matter jurisdiction and personal jurisdiction. 28 U.S.C.A. SS 1602 et seq., 1604. | Is a foreign state is entitled to sovereign immunity? | International Law - Memo # 833 - C - NS.docx | ROSS-003326576-ROSS-003326577 | SA, Sub | 0.19 | 0 | 0 | 1 | 1 | |
| 13276 | Spielman v. State, 27 Md. 520 | 210+1017(1) | In this case the defendant below was indicted in the Circuit Court for Washington County, for violating, in November, 1864, the license laws of this State. The indictment contains six counts, five of which charge him with a violation of the license law generally, but the second count charges him with violating it, by selling general merchandise to William H. Beard. To this indictment a special plea was filed by the defendant below, setting forth that he, together with a certain Emanuel Bombarger, in May, 1864, obtained as partners a trader's license, in and on which the name of each of the partners was set out in full, and opened and prosecuted business thereunder, in Washington county, until July, 1864, when the partnership was dissolved, and he became the assignee of the partnership effects, by purchase from Bombarger, and continued the business, and that he had not in any other way or manner sold, disposed of, traded or bartered any goods, wares or merchandise. The State demurred to this plea, and judgment was entered on the demurrer by the Court below against the defendant. It is to review this judgment, that this writ of error has been issued. By the demurrer all the pleadings are open for review, and it is an established principle in pleading, both civil and criminal, that on a demurrer the Court gives judgment against the party whose pleading was first defective, notwithstanding the defect of the pleading demurred to. It is insisted by the plaintiff in error, that the first error was committed by the State, because all the counts in the indictment, except the second, were defective, in not setting out the name of the person to whom the merchandise was sold, or in not alleging that the person or persons to whom sold were unknown. We are of opinion, that according to the law, as expounded by this Court in the case of the State against Nutwell, 1 Gill, 54, and Capritz vs. The State, 1 Md. Rep., 569, the defect in the first, third, fourth, fifth and sixth counts of the indictment is fatal; nor do we think | A demurrer opens for review all the previous pleadings, and notwithstanding the defectiveness of the pleading demurred to, the court in criminal as well as in civil proceedings, gives judgment against the party who in pleading committed the first error. | Does a demurrer open all pleadings? | 023016.docx | LEGALEASE-00126204-LEGALEASE-00126205 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 13277 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | Motions in limine serve fundamentally different purposes than motions for summary judgment. They are not subject to the same procedural safeguards. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, (3d Cir.1990). Thus, a motion in limine should not be used as a substitute for a dispositive motion such as a motion for summary judgment. Courts that have addressed attempts to use a motion in limine in such a manner, either explicitly or implicitly, have found such use to be in error. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d at 1069-70; Cannon v. William Chevrolet/Geo, Inc., 341 Ill. App.3d 674, 276 Ill. Dec. 593, 794 N.E.2d 843, 849 (2003); Lin v. Gatehouse Constr. Co., 84 Ohio App.3d 96, 616 N.E.2d 519, (1992); BHG, Inc. v. F.A.F., Inc., 784 A.2d 884, 886 (R.I.2001). As several courts have noted, a motion in limine should not be used to "choke off' a party's entire claim or defense. McCracken v. Edward D. Jones & Co., 445 N.W.2d 375, 379 (Iowa Ct.App.1989); Cass Bank & Trust Co. v. Mestman, 888 S.W.2d 400, 404 (Mo.Ct. App. 1994) | Motions in limine serve fundamentally different purposes than motions for summary judgment; they are not subject to the same procedural safeguards. | Is a motion in limine subject to the same safeguards as a motion for partial summary judgment? | Pretrial Procedure - Memo # 881 - C - KA.docx | ROSS-003313596-ROSS-003313597 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13278 | Dowden v. Cent. Louisiana Elec. Co., 368 So. 2d 465 | 317A+112 | The plaintiff's contention that this type of notice is unconstitutional under the holding of the case of Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), is without merit. Plaintiff urges that CLECO is a public body since it is regulated by the Public Service Commission and as such the above case is applicable. The fact that a utility is regulated by a state body does not convert that utility from a private utility company to a public body. The case of Jackson v. Metropolitan Edison Company, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) held as follows:"Here the action complained of was taken by a utility company which is privately owned and operated, but which in many particulars of its business is subject to extensive state regulation. The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment. (Moose Lodge No. 107 v. Irvis ) 407 U.S. (163), at 176-177, 92 S.Ct. (1965), at 1973, (32 L.Ed.2d 627). Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so. Public Utilities Comm'n v. Pollak, 343 U.S. 451, 462, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). . . ." | Fact that utility is regulated by state body does not convert utility from private utility company to a public body. | Does the fact that a state body regulates a utility convert it from a private utility to a public body? | 042383.docx | LEGALEASE-00126334-LEGALEASE-00126335 | Order, SA | 0.91 | 1 | 0 | 0 | 1 | |
| 13279 | Prentzel v. State, Dep't of Pub. Safety, 169 P.3d 573 | 386+6 | Prentzel argues that the superior court should have granted summary judgment to him on his claims of false arrest and trespass to chattels against his arresting officers"Troopers Daniel Scott and Dane Gilmore and Sergeant John Papasodora. A claim of false arrest is established by showing a restraint upon the plaintiff's freedom without proper legal authority. Prentzel insists that this claim has been established; he points out that the troopers arrested him without a warrant and claims that they lacked authority to make the arrest because a warrantless arrest was not authorized by statute and his conduct did not amount to a crime. Trespass to chattels is a lesser form of conversion: it "can be committed when a party intentionally dispossesses another of the chattel or intentionally uses or interferes with a chattel in another's possession." Prentzel argues that because the arrest was unlawful, seizing his property incident to the arrest necessarily violated the law and resulted in a tortious deprivation of his property. | Trespass to chattels is a lesser form of conversion; it can be committed when a party intentionally dispossess another of the chattel or intentionally uses or interferes with a chattel in another's possession. | Is trespass to chattels a lesser degree of conversion? | 047189.docx | LEGALEASE-00125991-LEGALEASE-00125992 | Order, SA, Sub | 0.8 | 1 | 0 | 1 | 1 | 1 |
| 13280 | Prentzel v. State, Dep't of Pub. Safety, 169 P.3d 573 | 386+6 | Prentzel argues that the superior court should have granted summary judgment to him on his claims of false arrest and trespass to chattels against his arresting officers-Troopers Daniel Scott and Dane Gilmore and Sergeant John Papasodora. A claim of false arrest is established by showing a restraint upon the plaintiffs freedom without proper legal authority. Prentzel insists that this claim has been established; he points out that the troopers arrested him without a warrant and claims that they lacked authority to make the arrest because a warrantless arrest was not authorized by statute and his conduct did not amount to a crime. Trespass to chattels is a lesser form of conversion: it "can be committed when a party intentionally dispossesses another of the chattel or intentionally uses or interferes with a chattel in another's possession." Prentzel argues that because the arrest was unlawful, seizing his property incident to the arrest necessarily violated the law and resulted in a tortious deprivation of his property. | Trespass to chattels is a lesser form of conversion; it can be committed when a party intentionally dispossess another of the chattel or intentionally uses or interferes with a chattel in another's possession. | Is trespass to chattels a lesser claim than the tort of conversion? | Trespass - Memo 193 - RK.docx | ROSS-003285483-ROSS-003285484 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13281 | Bergin v. Temple, 111 Mont. 539 | 13+61 | This court would seem to have eliminated any doubt about the matter, in Chevrier v. Robert, 6 Mont. 319, 12 P. 702, 703. In that case the defendant, being sued upon a judgment rendered against him in Canada, pleaded that he resided in Nevada when the judgment was rendered and so long thereafter that the action was barred by the law of that state. It was admitted that the cause of action arose by reason of the judgment in Canada and was not barred by the laws of that country, but the defendant argued that it also arose in Nevada, and was barred by the provisions of section 55 of the Montana Code of Civil Procedure, Rev.St.1879, " 55, p. 49, which provided: "When the cause of action shall have arisen in any other State or Territory of the United States, or in any foreign country, and by the laws thereof an action cannot be maintained against a person by reason of the lapse of time, no action thereon shall be commenced against him in this Territory." It thus became necessary for this court to determine the meaning of the words "when the cause of action shall have arisen"; and this court said: "A cause of action can arise but once; and, when it once accrues, it remains in force until it is extinguished, or satisfied, or barred by statute." | A cause of action can "arise" but once, and when it once accrues it remains in force until it is extinguished or satisfied, or barred by statute. | "Can a cause of action ""arise"" and remain in force until it is extinguished or satisfied?" | Action - Memo # 145 - C UG.docx | ROSS-003299900-ROSS-003299901 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13282 | Unexcelled Chem. Corp. v. United States, 345 U.S. 59 | 13+61 | We take the opposing view. We conclude that "the cause of action accrued" within the meaning of s 6 of the Portal-to-Portal Act when the minors were employed. That was the violation of the Walsh-Healey Act, giving rise to the liability for liquidated damages. It is true that the administration of the Act is entrusted in large measure to the Secretary of Labor. See Endicott Johnson Corp. v. Perkins, supra. He has broad investigatory and hearing powers. ss 4, 5. He has authority to proscribe those who have violated the Act, barring them from Government contracts for three years. s 3. Moneys withheld as liquidated damages are placed in a special fund and paid on order of the Secretary of Labor to the employees. s 2. These powers of the Secretary, important as they are in determining the relation between the courts and the administrative branch of government, Endicott Johnson Corp. v. Perkins, supra, are irrelevant to the narrow question of law that is presented. A cause of action is created when there is a breach of duty owed the plaintiff. It is that breach of duty, not its discovery, that normally is controlling. Section 2 of the Walsh-Healey Act provides that the Attorney General may bring suit to recover moneys owed the United States. The fact that due deference to the administrative process should make a court hold its hand until the administrative proceedings before the Secretary of Labor have been completed, Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576; Thompson v. Texas Mexican R. Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132; General American Tank Corp. v. El Dorado Terminal Co., 308 U.S. 422, 423, 60 S.Ct. 325, 327, 84 L.Ed. 361; United States v. Morgan, 307 U.S. 183, 59 S.Ct. 795, 83 L.Ed. 1211, is a matter of judicial administration and of no relevancy here. The statutory liability accrued when the minors were employed. It was from that date that the period of limitations began to run. | A cause of action is created when there is a breach of duty owed plaintiff, and it is that breach of duty, and not its discovery, that normally is controlling. | Will a cause of action be created when there is a breach of duty owed to the plaintiff? | Action - Memo #265 - C - SKG.docx | ROSS-003300043-ROSS-003300044 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 13283 | State v. Torbert, 200 Ala. 663 | 79+2 | The provision of the Code, however, which requires or authorizes the probate judge to act as clerk of the county court or, at his own expense, to employ a clerk (Code, " 6698), does not apply, because the general act of September 25, 1915 (page 862), which repeals the local acts and, by reference, applies the Code provisions as to county courts, expressly provides that the clerks of the circuit courts shall be ex officio clerks of the respective county courts, thereby superseding or repealing section 6698 of the Code. Hence the clerk of the circuit court of Hale county is ex officio clerk of the county court of that county. See section 9, p. 865, Act of 1915, next to last clause of act. | Under Code 1907, S 6698, probate judge of Hale county is clerk of county court of which he is also judge; provision of Acts 1915, p. 865, S 9, subsec. 3, which makes clerk of circuit court ex officio clerk of county court, being limited to counties having more than 26,000 and less than 26,100 inhabitants. | Will the clerks of a circuit court be ex-officio clerks of a county court? | Clerks of Court - Memo 51 - RK.docx | ROSS-003300135-ROSS-003300136 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 13284 | Hous. Auth. of City of Newark v. Ricciardi, 176 N.J. Super. 13 | 148+63 | Our point is that it is not necessarily any proposed or adopted redevelopment plan for the area but rather the declaration of blight itself which is the act of independent significance engendering a decline in value. This is primarily so because of the economic uncertainty which is the inevitable result of the blight declaration. Clearly, the effect of the declaration is not the taking of land but only the raising of the economically dislocating specter of a possible taking at some undetermined indefinite future time. If a prompt taking were a reliable consequence of a blight declaration, stability of property values would be maintained rather than the converse. In our view, therefore, the salutary effect of the alternative valuation date, which we regard as mandated by both N.J.S.A. 20:3-38 and 40:55-21.10, is not only to afford substantial justice to property owners but also to impose upon municipal governing bodies an incentive for greater responsibility and circumspection in the exercise of their blight declaration authority. We, therefore, construe these statutes to mean exactly what they say, namely, that when there is an eventual taking of property in an area which has been declared blighted, the property owner is entitled to no less than the value of his land on the date of the declaration. | It is not necessarily any proposed or adopted redevelopment plan for the area but rather the declaration of blight itself which is the act of independent significance engendering a decline in value. N.J.S.A. 20:3-30, 20:3-38, 40:55-21.10. | What is the ordinary and natural consequence of a declaration of blight under the statutes eminent domain? | 017627.docx | LEGALEASE-00126607-LEGALEASE-00126608 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 13285 | Sisk v. Abbott Labs., 298 F.R.D. 314 | 170A+751 | A defendant bears the burden of affirmatively pleading an affirmative defense. See Fed.R.Civ.P. 8(c)(1); Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653 (4th Cir.2006). Generally, the "failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case...." SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N.C., 508 Fed.Appx. 243, 252 (4th Cir.2013) (quoting 5 Charles Alan Wright and Arthur R. Miller, Fed. Prac. & Proc. Civ. " 1278 (3d ed. 2012)). "Such waiver, however, should not be effective unless the failure to plead resulted in unfair surprise or prejudice." S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co., 353 F.3d 367, 373 (4th Cir.2003). | The failure to plead an affirmative defense as required by federal rule governing pleading results in the waiver of that defense and its exclusion from the case; such waiver, however, should not be effective unless the failure to plead resulted in unfair surprise or prejudice. Fed.Rules Civ.Proc.Rule 8(c), 28 U.S.C.A. | Does the failure to plead an affirmative defense result in the waiver of that defense? | 023062.docx | LEGALEASE-00126720-LEGALEASE-00126721 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 13286 | Borough of Scottdale v. Nat'l Cable Television Corp., 476 Pa. 47 | 317A+112 | The crux of the Company's attack is upon the regulatory aspect of the Borough's ordinance. The claim is not only that it is unauthorized but also that it is unconstitutional. Taking the last point first, it comes immediately to mind that, the claim of the Company is that it is in the class of "a butcher, baker or candlestick maker" so that its charges could not be publicly regulated. Cable television companies are or tend to be monopolies, have large capital investment, purport to provide their services to the public and make use of consent, license or franchise to use public ways as an important aspect of their businesses. There is no closed category of business activities affected with public interest which can be subjected to regulation as public utilities. But for the local exercise of control over charges, there is no rate protection for the benefit of the consumer exercised by the federal government or by the Commonwealth. Accordingly, the constitutional argument by the appellant has no sound basis. | The category of business activities affected with public interest which can be subjected to regulation as public utilities is not a closed category. | Is there a closed category of business activities affected with public interest? | Public Utilities - Memo 194 - AM.docx | LEGALEASE-00016630-LEGALEASE-00016631 | Order, SA, Sub | 0.85 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13287 | Circuit City Stores v. Najd, 294 F.3d 1104 | 25T+134(2) | Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. " 2. Hence, generally applicable contract defenses, such as lack of consideration and mutual assent, may invalidate an arbitration agreement. See, e.g., Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). The parties agree that we look to California contract law to determine the DRA's validity. See Ahmed, 283 F.3d at 1199; Adams III, 279 F.3d at 892. | Generally applicable contract defenses, such as lack of consideration and mutual assent, may invalidate an arbitration agreement. 9 U.S.C.A. S 2. | Can lack of consideration invalidate an arbitration agreement? | Alternative Dispute Resolution - Memo 438 - RK.docx | ROSS-003286420-ROSS-003286421 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 13288 | Coleman v. Nat'l Movie-Dine, 449 F. Supp. 945 | 25T+134(3) | We must next determine whether the issues involved in this proceeding are referable to arbitration under the terms of the contract executed between Coleman and Movie-Dine. Coleman argues that the issues in this suit are not arbitrable because of his allegation of fraud in the inducement to enter the agreement, and because the suit has been brought as a class action pursuant to Fed.R.Civ.P. 23. First, Coleman's claim of fraud in the inducement is a general attack on the validity of the contract and not specifically directed to the agreement's arbitration provision itself. A claim of fraud in the inducement of the contract is insufficient to prevent the invocation of the arbitration provision of the contract. Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra, 388 U.S. at 402-404, 87 S.Ct. 1801. It is well settled that a general attack on a contract on the ground of fraud in the inducement is a severable claim which is referable to arbitration and is a claim which should not be considered by a federal court. Id. at 404, 87 S.Ct. 1801. Only a claim of fraud in the inducement which is addressed to the arbitration provision per se should be adjudicated by the court rather than the arbitrator, because a federal court, in passing upon a section 3 application for a stay, may consider only issues relating to the making and performance of the agreement to arbitrate. Id. at 404, 87 S.Ct. 1801; Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission, 387 F.2d 768, 771 (3d Cir. 1967). We find, therefore, that Coleman's claim of fraud in the inducement is a severable claim and an issue which is referable to arbitration. | Claim of fraud in inducement of contract is insufficient to prevent invocation of arbitration provision of contract. 9 U.S.C.A. S 1 et seq. | Cana claim of fraud in the inducement of a contract prevent the invocation of an arbitration provision in the contract? | 007233.docx | LEGALEASE-00127227-LEGALEASE-00127228 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 13289 | Chicago Ry. Equip. Co. v. Merchants' Nat. Bank, 136 U.S. 268 | 83E+335 | Upon like grounds it has been held that the negotiability of the note is not affected by its being made payable on or before a named date, or in installments of a particular amount. In School-Dist. v. Hall, 113 U. S. 135, 140, 5 Sup. Ct. Rep. 371, it was held that municipal bonds, issued under a statute providing that they should be payable at the pleasure of the district at any time before due, were negotiable; for, the court said, "by their terms, they were payable at a time which must certainly arrive. The holder could not exact payment before the day fixed in the bonds. The debtor incurred no legal liability for non-payment until that day passed." In Mattison v. Marks, 31 Mich. 421, which was the case of a note payable "on or before" a day named, it was said: "True, the maker may pay sooner if he shall choose; but this option, if exercised, would be a payment in advance of the legal liability to pay, and nothing more. Notes like this are common in commercial transactions, and we are not a ware that their negotiable quality is ever questioned in business dealings." Carlon v. Kenealy, 12 Mees. & W. 139; Colehan v. Cooke, Willes, 393; Jordan v. Tate, 19 Ohio St. 586; Curtis v. Horn, 58 N. H. 504; Howard v. Simpkins, 70 Ga. 322; Insurance Co. v. Bill, 31 Conn. 534, 538; Goodloe v. Taylor, 3 Hawks, 458; Riker v. Manufacturing Co., 14 R. I. 402. In the last-named case it was said that if the time of payment named in the note must certainly come, although the precise date may not be specified, it is sufficiently certain as to time. It was consequently held that a reservation in a note of the right to pay it before maturity, in installments of not less than 5 per cent. of the principal, at any time the semi-annual interest becomes payable, did not impair its negotiability; the court observing that a note is negotiable if one certain time of payment is fixed, although the option of another time of payment be given. In view of these authorities, as well as upon principle, we adjudge that the negotiability of | An instrument in the usual form of a promissory note, to pay to the order of the payee a certain sum at a certain time, contained the statement that it was one of a series of 25 notes, and should "become due and payable to the holder on the failure of the maker to pay the principal and interest of any one of the notes of said series," and that all of said notes were "given for the purchase price of 250 railway freight cars manufactured by the payee hereof, and sold by said payee to the maker hereof, which cars are numbered from 13,000 to 13,249, inclusive, and marked on the side thereof with the words and letters, "Blue Line, C. & E.I.R.R. Co.'; and it is agreed by the maker hereof that the title to said cars shall remain in the said payee until all the notes of said series, both principal and interest, are fully paid, all of said notes being equally and ratably secured on said cars." Held, that the note was negotiable. | Does failure to pay series of notes affect the negotiability of the instrument? | 009043.docx | LEGALEASE-00126946-LEGALEASE-00126947 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 13290 | Thompson v. Thompson, 149 Tex. 632 | 8.30E+303 | It seems to be the universal holding that time certificates of deposit payable at a future date, and in the form of these under question, constitute negotiable instruments and are in effect the promissory notes of the issuing bank. O'Neal v. Clark, 229 Ala. 127, 155 So. 562, 94 A.L.R. 589; Farmers & Traders Bank v. Harrison, 321 Mo. 815, 12 S.W.2d 755; Phillips v. Alford, Mo.App., 90 S.W.2d 1060. | Time certificates of deposit payable to owner at a future date constitute "negotiable instruments" and are in effect promissory notes of issuing bank. | Could time deposits be considered as nonnegotiable instruments under US Law? | 010988.docx | LEGALEASE-00126962-LEGALEASE-00126963 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13291 | Raitport v. Provident Nat. Bank, 451 F. Supp. 522 | 79+72 | The prothonotary, of course, "is merely the clerk of the Court of Common Pleas." Smith v. Safeguard Mut. Ins. Co., 212 Pa.Super. 83, 86, 239 A.2d 824, 826 (1968). At common law, court clerks enjoy no immunity with respect to the performance of ministerial duties, such as the docketing of papers of the issuance of writs. Rather, "liability attaches only for nonperformance or improper performance of the required act." McCormack & Kirkpatrick, Immunities of State Officials Under Section 1983, 8 Rut. Cam. L.J. 65, 76 (1976); see McCray v. Maryland, 456 F.2d 1, 4 (4th Cir. 1972); W. Prosser, Law of Torts s 132 at 989-90 (4th ed. 1971). The Pennsylvania decisions regarding prothonotaries are quite clear on this point.8 Indeed, a statute enacted by the General Assembly of Pennsylvania in 1834, which remains in force to this day, requires prothonotaries, "with one or more (approved) sureties, . . . (to) give a joint and several bond to the commonwealth, in such sum as the governor shall judge sufficient, with condition faithfully to execute the duties of their . . . offices." Act of April 14, 1834, No. 164, s 76, 1833-34 Pa.Laws 333, codified at Pa.Stat.Ann. tit. 17, s 1481 (Purdon 1962). As one judge observed in an 1886 decision, "(t)here is no principle of law better settled than where a prothonotary makes a mistake in entering a judgment, and the plaintiff sustains a loss, he has a remedy on the prothonotary's official bond." Saylor v. Commonwealth, 1 Sadler 535, 541-42 (C.P. Lehigh County), aff'd per curiam on opinion of lower court, 1 Sadler 535, 545, 5 A. 227 (Pa.Sup.Ct.1886); see cases cited supra note 8. At common law, then, the prothonotary's defense is that he performed his duties properly, not that he is immune from liability. See McCormack & Kirkpatrick, supra, 8 Rut. Cam. L.J. at 76-77. | At common law, court clerks enjoy no immunity with respect to performance of ministerial duties, such as the docketing of papers or the issuance of writs, but, rather, liability attaches only for nonperformance or improper performance of required act. | Is a prothonotary a clerk of court of common pleas? | 013450.docx | LEGALEASE-00126902-LEGALEASE-00126903 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13292 | Fisher v. City of Berkeley, 37 Cal. 3d 644 | 268+619 | The fallacy of plaintiffs' contention is readily apparent. Any price-setting regulation, like most other police power regulations of property rights, has the inevitable effect of reducing the value of regulated properties. But is has long been held that such reduction in property value does not by itself render a regulation unconstitutional. Police power legislation results in a confiscatory "taking" only when the owner has been deprived of substantially all reasonable use of the property. (Agins v. City of Tiburon (1979) 24 Cal.3d 266, 277, 157 Cal.Rptr. 372, 598 P.2d 25, affd. (1980) 447 U.S. 255, 100 S.Ct. 658, 62 L.Ed.2d 639.) Even a significant diminution in value is insufficient to establish a confiscatory taking. (Euclid v. Ambler Realty Co. (1926) 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 [75 percent reduction in value because of zoning law insufficient to establish a taking]; Hadacheck v. Sebastian (1915) 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 [nearly 90 percent reduction in value because of use restriction insufficient to establish a taking].) As the United States Supreme Court noted in Hope Gas Co., supra, 320 U.S. at page 601, 64 S.Ct. at page 287, "[t]he fixing of prices, like other applications of the police power, may reduce the value of the property which is being regulated. But the fact that the value is reduced does not mean that the regulation is invalid." (Accord, Penn. Central Transp. Co. v. New York City (1978) 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631 [diminution in property value, standing alone, cannot establish a "taking"]; Permian Basin Area Rate Cases (1968) 390 U.S. 747, 769, 88 S.Ct. 1344, 1361, 20 L.Ed.2d 312 ["No constitutional objection arises from the imposition of maximum prices merely because ... the value of regulated property is reduced as a consequence of regulation."].) | The fixing of prices, like other applications of the police power, may reduce the value of the property which is being regulated; but the fact that the value is reduced does not mean that the regulation is invalid. U.S.C.A. Const.Amends. 5, 14. | Is fixing of prices invalid under the eminent domain statutes? | 017656.docx | LEGALEASE-00126983-LEGALEASE-00126985 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13293 | Sparks v. Porter, 270 F.Supp. 953 | 101+1249 | "Persons' shall include every individual, whether natural or artificial, firm or group or combination of individuals or partnerships, whether natural or representative, except corporations.' | Provision of Florida fictitious name statute to effect that person shall include every individual, whether natural or artificial, firm or group or combinations of individuals or partnerships, whether natural or representative, except corporations, does not exempt corporations from the statute. F.S.A. S 865.09(2). | Can the term person be used to refer to partnerships and other associations? | 021944.docx | LEGALEASE-00127261-LEGALEASE-00127262 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 13294 | Corwin v. Shoup, 76 Ill. 246 | 30+749 | The first plea is too general: it only avers that the errors were released, without stating in what manner. It does not aver that it was by deed, by parol, or by acts in pais. A plea of this kind should state the facts that are relied on as a release of errors. | A plea of release of errors must state the facts relied upon, and one which merely averred that the errors were released, without stating in what manner or by what act they were released, was insufficient. | Should a plea of release of errors state the facts relied upon? | 023068.docx | LEGALEASE-00126894-LEGALEASE-00126895 | Order, SA, Sub | 0.21 | 1 | 0 | 1 | 1 | 1 |
| 13295 | Hunn v. Dan Wilson Homes, 789 F.3d 573 | 308+69(8) | We now turn to Hunn's claim that Lack breached his fiduciary duties by disclosing confidential information (i.e., the unfinished plans) to Wilson and that Wilson knowingly participated in Lack's breach. "The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." Graham Mortg. Corp. v. Hall, 307 S.W.3d 472, 479 (Tex.App."Dallas 2010, no pet.). Fiduciary duties generally terminate at the end of an employment relationship, but an "agent has a duty after the termination of the agency not to use or to disclose to third persons ... trade secrets ... or other similar confidential matters...." NCH Corp. v. Broyles, 749 F.2d 247, 254 (5th Cir.1985) (second and third alterations in original) (internal quotation marks omitted). "[W]here a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." Kinzbach Tool Co. v. Corbett"Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 514 (1942). | Under Texas law, agent has a duty after the termination of the agency not to use or to disclose to third persons principal's trade secrets or other similar confidential matters. | Does the duty of confidentiality stay even after termination of agency? | 041770.docx | LEGALEASE-00127112-LEGALEASE-00127113 | Order, SA, Sub | 0.86 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13296 | Auclair v. Vermont Elec. Power Co., 133 Vt. 22 | 317A+113 | Examination of these factors enables the Board to determine whether the rights and interests of the general public are advanced by the construction of the utility line and accompanying facilities. Thus, the issuance of a certificate of public good is a resolution that the project for which the certificate is granted is in the public interest of the State of Vermont. Citizens Utilities Co. v. Prouty, 122 Vt. 443, 451, 176 A.2d 751 (1961). | Issuance of certificate of public good by Public Service Board is resolution that project for which certificate is granted is in public interest of the state. 30 V.S.A. S 248. | Is the issuance of the certificate of public good a determination that the project for which it is granted is in the public interest? | 042428.docx | LEGALEASE-00126950-LEGALEASE-00126951 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 13297 | City of Tallahassee v. Mann, 411 So. 2d 162 | 145+11.3(1) | While the Public Service Commission has no jurisdiction to set rates for a municipal utility, it has authority over the "rate structure" of all electric utilities in the state. The city's differential charges to customers within and without its corporate limits constitute a classification system and thus are a matter of "rate structure" subject to the jurisdiction of the Public Service Commission. | Public Service Commission does not have jurisdiction over a municipal electric utility's rates although it has jurisdiction to prescribe a rate structure for all utilities and, for such purpose, "rates" refers to the dollar amount charged for aparticular service or an established amount of consumption while "rate structure" refers to the classification system used in justifying different rates. West's F.S.A. S 366.04(2)(b). | Does the Public Service Commission (PSC) have jurisdiction over the rate structure of municipal utilities? | 042434.docx | LEGALEASE-00127017-LEGALEASE-00127018 | SA, Sub | 0.08 | 0 | 0 | 1 | 1 | |
| 13298 | Liberty Mut. Ins. Co. v. Perfect Knowledge, 299 A.D.2d 524 | 366+35 | The Supreme Court also properly denied the motion of Perfect Knowledge for summary judgment dismissing the complaint insofar as asserted against it based on waivers of subrogation contained in the lease agreement, and granted Liberty Mutual's motion for partial summary judgment striking the affirmative defense based on those waivers. Waiver of subrogation provisions, which reflect the parties' allocation of the risk of liability between themselves to third parties through the device of insurance, are generally valid and enforceable (see The Gap v. Red Apple Cos., 282 A.D.2d 119, 124, 725 N.Y.S.2d 312; Viacom Intl. v. Midtown Realty Co., 193 A.D.2d 45, 53, 602 N.Y.S.2d 326). Waiver of subrogation provisions exist as part and parcel of a risk allocation agreement whereby liability is shifted to the insurance carriers of the parties to the agreement (see Viacom Intl. v. Midtown Realty Co., supra). Such an agreement is necessarily premised on the procurement of insurance by the parties. Here, however, Perfect Knowledge breached certain provisions of the lease with respect to the procurement of insurance. Paragraph 52 of the lease required it to obtain $3,000,000 in liability coverage, but it obtained an insurance policy with only $2,000,000 in liability coverage. It also failed to list 136 William Street as an insured under the policy. Finally, by retaining a contractor who was uninsured, it failed to comply with Paragraph 3 of the lease, which required that contractors hired to perform alterations and changes carry liability coverage. Without the procurement of insurance, the shifting envisioned under the agreement could not take place, and the agreement was frustrated. Therefore, Perfect Knowledge is not entitled to enforcement of the waiver provisions in the lease. | Waiver of subrogation provisions, which reflect the parties' allocation of the risk of liability between themselves to third parties through the device of insurance, are generally valid and enforceable. | Are waiver-of-subrogation provisions valid and enforceable? | 044255.docx | LEGALEASE-00127116-LEGALEASE-00127117 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13299 | Murray v. Cadle Co., 257 S.W.3d 291 | 366+1 | Additionally, each case turns on its own facts when the issue is one of purely equitable subrogation. Providence Inst. for Sav. v. Sims, 441 S.W.2d 516, 519"20 (Tex.1969). The trial court must balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation. See id.; Ackerman, 70 Tex. at 319"20, 8 S.W. at 47"48; Esparza v. Scott & White Health Plan, 909 S.W.2d 548, 552 (Tex.App.-Austin 1995, writ denied), abrogated in part on other grounds by Fortis Benefits v. Cantu, 234 S.W.3d 642 (Tex.2007). Factors a court may consider in conducting this balancing test are the negligence of the party claiming subrogation, whether that party had notice of the intervening lien, and whether the intervening lienholder will be prejudiced if equitable subrogation is allowed. See Sims, 441 S.W.2d at 519 (negligence, notice); Ogden, 886 S.W.2d at 311 (prejudice). When prejudice is shown, a court should consider the entire circumstances in determining the weight to give the prejudice. Fleetwood, 786 S.W.2d at 555 n. 2 (Tex.App.-Austin 1990, writ denied). A trial court should consider whether the subrogation results in additional debt having priority over the intervening interest, whether it results in a material change in the terms of the superior interest, the foreseeability of the potential prejudice, and whether the party claiming prejudice could have avoided the prejudicial effect. Id. (foreseeability, avoidance); Med Ctr. Bank v. Fleetwood, 854 S.W.2d 278, 286 (Tex.App.-Austin 1993, writ denied) (additional debt, material change). A junior lienholder does not suffer prejudice merely because it is not elevated in priority. See Sanger Bros. v. Ely & Walker Dry Goods Co., 207 S.W. 348, 350 (Tex.Civ.App.-Fort Worth 1918, writ ref'd). | The trial court must balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation. | Does subrogation depends on a balancing of equities? | 044271.docx | LEGALEASE-00126954-LEGALEASE-00126956 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13300 | McDonald v. Bryson, 97 Ga. App. 466 | 13+65 | Counsel for the defendant call our attention to Franklin Life Ins. Co. v. Boykin, 10 Ga.App. 345, 73 S.E. 545. In that case the insured held the policy and was attempting to evade payment of the premium while holding the policy. Also, in that case there was no question regarding assignment after the filing ofa suit, as appears in the instant case. Counsel call our attention also to Clay v. Howington, 74 Ga.App. 794(1), 41 S.E.2d 571. In that case the plaintiff alleged that he, as a broker, procured the insurance on his own credit and paid the insurance company for the policies in accordance with his usual method known to the defendant. The petition here, while alleges in effect that the plaintiff procured the insurance on his own credit and was liable for the payment of the premium, further alleges contradictory facts by alleging that after the suit was brought the cause of action was assigned to him. Construing the petition against the pleader, it must be held that this assignment shows that title to the chose in action was in the assignor and not in the plaintiff up to the date of the transfer, which was after the suit was filed. That a plaintiff may recover only upon facts as they existed at the time of commencement of the action, and that reliance upon a subsequent transfer of title is a virtual concession that the title claimed at the commencement of the action was not sufficient, see Graham v. Williams, 114 Ga. 716, 718(2), 40 S.E. 790. | Where suit is filed on a chose in action and during pendency of suit plaintiff obtains an assignment of his chose in action, demurrer based on such assignment will be sustained and petition dismissed inasmuch as a plaintiff may recover only upon facts as they exist at time of commencement of action. | Can a plaintiff recover only upon facts as they exist at time of commencement of action? | Action - Memo # 649 - C KA.docx | ROSS-003313391-ROSS-003313392 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 13301 | Holt v. Wissinger, 145 Conn. 106 | 13+65 | Thirdly, it is a fundamental principle that equitable relief, whether injunctive or otherwise, is to be granted, if at all, only on the situation as it exists at the time of trial. E. M. Loew's Enterprises, Inc. v. International Alliance, 127 Conn. 415, 419, 17 A.2d 525; Canepari v. Townshend, 142 Conn. 477, 483, 115 A.2d 432. This is true even though past conduct may be considered in determining, at the time of trial, the probability of future conduct warranting injunctive relief. H. O. Canfield Co. v. United Construction Workers, 136 Conn. 293, 300, 70 A.2d 547. Here, on the plaintiffs' own claims, whether the extension has been legally accepted as a public street by the town of West Hartford will depend in part upon the outcome of the appeals pending in the Court of Common Pleas. See Connecticut Light & Power Co. v. Fleetwood, 124 Conn. 386, 391, 200 A. 334. If and when those appeals are finally determined in favor of the plaintiffs, they may be able to prove their right to injunctive relief against further use of the extension as a public highway on the ground of a permanent and continuing, even though technical, surcharge. Upon this point we express no decisive opinion at this time. See Connecticut Light & Power Co. v. Fleetwood, supra. Pending the outcome of the appeals, the plaintiffs, on the facts here, have proven no clear right to injunctive relief. | Equitable relief, whether injunctive or otherwise, is to be granted, if at all, only on situation as it exists at time of trial, even though past conduct may be considered in determining, at time of trial, probability of future conduct warranting injunctive relief. | Is injunctive relief to be granted only in a situation as it exists at the time of trial? | 005869.docx | LEGALEASE-00127309-LEGALEASE-00127310 | Order, SA, Sub | 0.81 | 1 | 0 | 1 | 1 | 1 |
| 13302 | Hoffmann v. T.J. Ronan Co., 275 A.D. 57 | 13+65 | That request by counsel was reasonable and should have been granted. It was an abuse of discretion not to have required respondent to produce the certificates in court and afford opportunity to the plaintiff to affix the stamps. That would have complied with the requirement in the Luitwieler case, and would have permitted the trial and adjudication of the questions raised by respondent's counterclaims. If those questions were to have been decided in respondent's favor, no transfer would have been directed. On the other hand, if said counterclaims had been decided adversely to respondent, appellants would have been entitled to a judgment decreeing the transfer. In actions in equity, the state of facts existing at the time of the trial controls, not at the commencement of the action. "Courts of equity have plastic hands, and can adjust matters as of the date of the trial." Delaware Trust Co. v. Calm, 195 N.Y. 231, 236, 88 N.E. 53, 54. Dickinson v. Springer, 246 N.Y. 203, 211"212, 158 N.Y.S. 74, 76. | In equity action, state of facts existing at time of trial, not at commencement of action, controls. | "In actions in equity, does the state of facts existing at the time of the trial control?" | Action - Memo # 679 - C KG.docx | ROSS-003303367-ROSS-003303369 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 13303 | Mediacom Commc'ns Corp. v. Sinclair Broad. Grp., 460 F. Supp. 2d 1012 | 212+1064 | In response, Sinclair contends that its actions did not amount to unlawful tying because it did not force or coerce Mediacom to carry the Tied Stations. Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. (hereinafter "Def.'s Opp'n") at 8. Specifically, on October 10, 2006, just a day prior to Mediacom filing the instant motion for preliminary injunction, Sinclair offered to negotiate on a station-by-station basis. See Faber Ex. 1. Generally, the conditions at the time of the hearing, rather the commencement of the suit, will be the basis for any injunctive relief. Because "equity interposes by injunction to prevent only future acts, conduct that [has] been discontinued before or after a suit is brought to restrain such conduct is generally an insufficient basis for injunctive relief." 42 Am.Jur.2d Inj. " 3 (2006). However, the discontinuance of wrongful or illegal conduct does not alone warrant the denial of injunctive relief. To determine whether the discontinued course of conduct should be enjoined, courts consider the genuineness of an expressed intent to not repeat the conduct, the effectiveness of the discontinuance, and the character of past violations. Id. Although Mediacom asserts that Sinclair's October 10 letter was a sham, it appears that Sinclair effectively discontinued any alleged tying arrangement by offering Mediacom the option to purchase the retransmission rights on a station-by-station basis. Faber Ex. 2. Moreover, any alleged tying arrangement that Sinclair may have previously offered Mediacom expired on October 5, 2006. Supp. Decl. of Barry Faber (hereinafter "Faber Supp."). Thus, but for the offer outlined in Sinclair's October 10 letter, there is currently no other offer, legal or illegal, that Mediacom can accept or reject. | Conditions at time of hearing, rather commencement of suit, will generally be basis for any injunctive relief. | Does a condition existing at the time of hearing of the suit furnish a basis for injunctive relief? | 005939.docx | LEGALEASE-00127822-LEGALEASE-00127823 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13304 | Costello v. United States, 365 U.S. 265 | 150+72(1) | None of the cases in this Court considered the question of the application of laches in a denaturalization proceeding. However, even if we assume the applicability of laches, we think that the petitioner failed to prove both of the elements which are necessary to the recognition of the defense. Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. See Galliher v. Cadwell, 145 U.S. 368, 372, 12 S.Ct. 873, 874, 36 L.Ed. 738; Southern Pacific Co. v. Bogert, 250 U.S. 483, 488"490, 39 S.Ct. 533, 535, 63 L.Ed. 1099; Gardner v. Panama R. Co., 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31. | Laches requires proof of lack of diligence by party against whom defense is asserted and prejudice to party asserting the defense. | Are elements necessary to the recognition of defense of laches proof of lack of diligence by the party against whom it is asserted and prejudice to the party asserting such defense? | 006031.docx | LEGALEASE-00127325-LEGALEASE-00127326 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13305 | Minnesota Min. & Mfg. Co. v. Plymouth Rubber Co., 178 F. Supp. 591 | 13+65 | The law is well settled that the existence of a cause of action is to be tested as of the time of the filing of the complaint and no recovery may be had if no cause be shown to exist at that time (Bonner v. Elizabeth Arden, Inc., 2 Cir., 1949, 177 F.2d 703; Porter v. Senderowitz, 3 Cir., 1947,158 F.2d 435; Hull v. Brandywine Fibre Products Co., D.C.Del.1954, 121 F.Supp. 108; American Bonding & Trust Co. v. Gibson County, 6 Cir., 1906,145 F. 871; Chicago Grain Door Co. v. Chicago, B. & Q.R. Co., C.C.Ill.1905,137 F. 101; Bowles v. Senderowitz, D.C.Pa.1946, 65 F.Supp. 548). This same principle is applicable to suits for patent infringement, and if no act of infringement occurred prior to the filing of the complaint, it is fatally defective (Westinghouse Air Brake Co. v. Christensen Engineering Co., C.C.N.Y.1903, 121 F. 558; Lambert v. Dempster Bros., Inc., D.C.Tenn.1940,34 F.Supp. 610; Humane Bit Co. v. Barnet, C.C.N.J.1902, 117 F. 316; Slessinger v. Buckingham, D.C.Cal.1883, 17 F. 454; Rohm & Haas Co. v. Permutit Co., D.C.Del.1953, 114 F.Supp. 846; See also Andrew Jergens Co. v. Bonded Products Corporation, D.C.N.Y.1926, 13 F.2d 417) and cannot be cured by infringement occurring subsequent to the filing of the complaint (Rohm & Haas Co. v. Permutit Co., D.C.Del.1953, 114 F.Supp. 846). In the last cited case it was said at page 848: "The general rule of law is that a plaintiff's right to recovery depends upon his right at the inception of the suit and the non-existence of a cause of action when the suit is brought is a fatal defect which cannot be cured by the accrual of a cause of action pending suit." | The existence of a cause of action is to be tested as of time of filing of complaint and no recovery may be had if no cause be shown to exist at that time. | Is the existence of a cause of action to be tested as of the time of filing of the complaint? | 006058.docx | LEGALEASE-00127545-LEGALEASE-00127546 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 13306 | Knapp-Monarch Co. v. Casco Prod. Corp., 342 F.2d 622 | 13+65 | Finally, because Langenfeld, prior to the suit, lacked knowledge of the alleged infringement by Casco, its Solicitation of orders cannot be said to have been active "inducement" of infringement in violation of the patent laws. Fromberg, Inc. v. Thornhill, 315 F.2d 407 (5th Cir. 1963). Concerning solicitation activity by Langenfeld subsequent to the filing of the suit as constituting active inducement to infringe, we are of the opinion that this activity, if any, should be treated in the same manner as the two sales were treated by the district court, that is, de minimis. Moreover, plaintiff is precluded from urging violations alleged to have occurred after filing of this complaint as evidence of charges contained therein. "(A) cause of action is to be tested as of the time of the filing of the complaint and if no act of infringement occurred prior to the filing of the complaint, it is fatally defective and cannot be cured by infringement occurring subsequent to the filing of the complaint. " Minnesota Mining & Mfg. Co. v. Plymouth Rubber Co., 178 F.Supp. 591, 596 (D.C.Ill.1959). | Cause of action is to be tested as of time of filing of complaint and if no active infringement occurred before filing of complaint, it is fatally defective and cannot be cured by infringement after filing. | "If no act of patent infringement occurred prior to filing of a complaint, is it fatally defective?" | 006060.docx | LEGALEASE-00127553-LEGALEASE-00127554 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13307 | Richardson v. Richardson, 309 Mich. 336 | 13+65 | It is a well established rule that conditions existing at the time of the commencement of a legal action will govern. As said in Black v. Spears, 209 Mich. 1, 176 N.W. 469, 472, in discussing of the statute of limitations of actions, which reads:"All actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry." 3 Comp.Laws 1929, " 13972 (Stat.Ann. " 27.601). "This is a general provision and in our opinion affects all actions, whether personal or involving real estate."The OPA rent regulation, by its very terms, does not affect actions commenced and judgments entered prior to its effective date. The order of the circuit court is affirmed, with costs to appellees. | Conditions existing at time of commencement of legal action govern in determining issues therein. Comp.Laws 1929, S 13972. | Do conditions existing at the time of the commencement of legal action govern in determining issues therein? | 006068.docx | LEGALEASE-00127654-LEGALEASE-00127655 | Order, SA, Sub | 0.84 | 1 | 0 | 1 | 1 | 1 |
| 13308 | Pokorny v. Quixtar, 601 F.3d 987 | 25T+134(6) | "Substantive unconscionability addresses the fairness of the term in dispute." Szetela, 118 Cal. at 867. The focus of the inquiry is whether the term is one-sided and will have an overly harsh effect on the disadvantaged party. Harper, 7 Cal.Rptr.3d at 423. Thus, mutuality is the "paramount" consideration when assessing substantive unconscionability. Abramson v. Juniper Networks, Inc., 115 Cal.App.4th 638, 9 Cal.Rptr.3d 422, 436 (2004). [("Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." Id. at 437 (quoting Armendariz, 99 Cal.Rptr.2d 745, 6 P.3d at 693) (some internal quotations omitted). | Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability under California law. | Should arbitration agreements contain at least a modicum of bilaterality to avoid unconscionability? | Alternative Dispute Resolution - Memo 445 - RK.docx | ROSS-003290008-ROSS-003290009 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13309 | Lomax v. Woodmen of World Life Ins. Soc'y, 228 F. Supp. 2d 1360 | 25T+134(6) | With respect to substantive unconscionability, Plaintiffs argue that the PRP's prohibition of attorneys' fees, unless otherwise required by law, and its ban on class wide arbitration renders the clause unconscionable. The Court disagrees. First, the arbitration clause is clear that it prohibits an award of attorneys' fees unless such award is otherwise required by law. Therefore, it appears to the Court, and Defendant concedes, that this arbitration clause will not deprive Plaintiffs of any substantive statutory rights, including an award of attorneys' fees, if warranted under applicable Georgia law. Second, Defendant's arbitration clause requires that all claims be decided individually and precludes class-wide arbitration. Generally, prohibiting class-wide arbitration does not render an otherwise valid arbitration clause unconscionable.[] See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991)(compelling arbitration of ADEA claims even though arbitration clause prohibited class-wide arbitration); Randolph, 244 F.3d at 816 (enforcing arbitration of Truth In Lending Act claims even though arbitration agreement prohibited class- wide arbitration); see also, Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp., 873 F.2d 281, 282 (11th Cir.1989)(agreeing with several other circuit courts that a district court may not order class-wide arbitration of claims if the arbitration agreement does not specifically provide the parties with this form of remedy). Therefore, in light of the reasoning of these cases, the Court concludes that the prohibition of class-wide arbitration does not, without more, render the arbitration clause of the PRP unconscionable. | Generally, prohibiting class wide arbitration does not render an otherwise valid arbitration clause unconscionable. | Does prohibiting class wide arbitration render an otherwise valid arbitration clause unconscionable? | Alternative Dispute Resolution - Memo 447 - RK.docx | ROSS-003284994-ROSS-003284995 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 13310 | Greater Wilmington Transp. Auth. v. Kline, 285 A.2d 819 | 317A+141 | This Court does not construe 26 Del.C. s 162 as statutory authorization for the granting of a franchise as to require compensation upon a taking for public use. In general if the main object of a statute is regulation, a grant of authority or power which is merely incident to the implementation of that purpose does not contain authorization to create a franchise. The Public Service Commission of Delaware is essentially a regulatory body which performs certain legislative functions where specifically authorized by statute.26 Del.C. s 127. Authority to grant franchises is not one of such delegated functions. Commissioners of Cambridge v. Eastern Shore P.S. Co., supra; Compare Delaware Coach Co. v. Public Service Com'n of State of Del., 265 F.Supp. 648 (D.C.Del.1967). | State Public Service Commission is essentially a regulatory body performing certain statutorily authorized legislative functions, not including the granting of franchises. 26 Del.C. SS 127, 162. | Is the Public Service Commission essentially a regulatory body? | 042462.docx | LEGALEASE-00127700-LEGALEASE-00127701 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 13311 | Hancock Fabrics v. Alterman Real Estate I, 302 Ga. App. 568 | 217+3522 | Waiver of subrogation clauses in leases are enforceable even in the absence of a requirement that either party purchase insurance. In Colonial Properties Realty v. Lowder Constr. Co., a construction contract required the owner to maintain property insurance during the project and contained a clause whereby the owner and contractor waived all rights against each other for damages caused by fire or other perils to the extent covered by property insurance, but it did not require the owner to maintain property insurance after completion of the project.7 To the extent the owner obtained insurance for that purpose, he waived all subrogation rights for damages attributable to fire or other perils covered by the separate insurance. | Waiver of subrogation clauses in leases are enforceable even in the absence of a requirement that either party purchase insurance. | Is a waiver of subrogation clauses in leases enforceable? | 043426.docx | LEGALEASE-00127732-LEGALEASE-00127733 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13312 | Hancock Fabrics v. Alterman Real Estate I, 302 Ga. App. 568 | 217+3522 | Waiver of subrogation clauses in leases are enforceable even in the absence of a requirement that either party purchase insurance. In Colonial Properties Realty v. Lowder Constr. Co., a construction contract required the owner to maintain property insurance during the project and contained a clause whereby the owner and contractor waived all rights against each other for damages caused by fire or other perils to the extent covered by property insurance, but it did not require the owner to maintain property insurance after completion of the project. To the extent the owner obtained insurance for that purpose, he waived all subrogation rights for damages attributable to fire or other perils covered by the separate insurance. | Waiver of subrogation clauses in leases are enforceable even in the absence of a requirement that either party purchase insurance. | Are waiver of subrogation clauses in lease agreements enforceable? | 043444.docx | LEGALEASE-00127807-LEGALEASE-00127809 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13313 | St. Paul Fire & Marine Ins. Co. v. Amerada Hess Corp., 275 N.W.2d 304 | 366+35 | Subrogation is an equitable remedy that provides for an adjustment between the parties to secure the ultimate discharge of a debt by the person who, in equity and good conscience, ought to pay for it. See National Garment Co. v. New York C. & St. L. R. Co., 173 F.2d 32, 37 (8th Cir. 1949); State Farm Mutual Automobile Ins. Co. v. Wee, 196 N.W.2d 54, 59 (N.D.1971). Ordinarily, the subrogee does not waive any right to institute an action for indemnity absent an express waiver of this right. See Pettengill v. New Hampshire Insurance Company, 129 Vt. 23, 270 A.2d 883, 888 (1970). A waiver of the right of subrogation must be by an act of the subrogee; it cannot be contracted away by the conduct or agreement of third parties. See 83 C.J.S. Subrogation, s 13, at 610. | Waiver of right of subrogation must be by act of subrogee; it cannot be contracted away by conduct or agreement of third parties. | Is a waiver of the right of subrogation an act of the subrogee? | Subrogation - Memo # 1203 - C - KBM.docx | ROSS-003285393-ROSS-003285394 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13314 | Travelers Indem. Co. of Connecticut v. Losco Group, 204 F. Supp. 2d 639 | 366+35 | Losco urges this Court to adopt the holding of Behr v. Hook, 787 A.2d 499 (Vt.2001). In Behr, the court held that, under the circumstances of that case, the waivers of subrogation provision in a construction contract for a private residence precluded claims for gross, as well as ordinary, negligence. This case is not controlling, however. It is the law in New York that claims for gross negligence are not precluded by waivers of subrogation provisions. See Federal Ins. Co. v. Honeywell, Inc., 243 A.D.2d 605, 606, 663 N.Y.S.2d 247, 248 (2d Dep't 1997) (citing cases). Thus, the remaining question is whether Travelers has raised a genuine issue of fact on its claim for gross negligence. | Under New York law, claims for gross negligence are not precluded by waivers of subrogation provisions. | Are claims for gross negligence precluded by waivers of subrogation provisions? | 043540.docx | LEGALEASE-00127749-LEGALEASE-00127751 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13315 | Am. Zurich Ins. Co. v. Barker Roofing, 387 S.W.3d 54 | 217+3522 | The waiver clause waived "all rights ... for damages caused by fire or other perils to the extent covered by property insurance ... applicable to the Work." Texas courts recognize that a majority of jurisdictions interpreting this waiver clause have held that waived claims are not defined by what property is harmed, but by the source of any insurance proceeds paying for the loss. TX. C.C., Inc., 233 S.W.3d at 571.7 "As long as [the owner's] property insurance cover[s] the damages to the structure, ... the waiver applies." Id. See Walker Eng'g, 102 S.W.3d at 844 (rejecting an insurer's contention that the property insurance policy was not applicable to "the Work", the court held that "to the extent the property damage at issue was covered by [the plaintiff's] insurance, [the plaintiff] waived its right to sue [the contractor]"); Trinity Universal Ins. Co., 75 S.W.3d at 13, 15 (court held the scope of the waiver clause in the standard AIA contract was determined by whether the owner's policy provided coverage for losses arising from damage to the property, not whether the injury was to "Work" or "non-Work.") Neither party disputes the fact that UT's business interruption damages were caused by the fire and AZIC's policy covered those damages. Thus, we find AZIC's policy was "applicable" to the Project at the address it insured, 2200 University Club Drive, Austin, Texas. | Indemnification clause in subcontract pertaining to claims or losses incurred due to delay in subcontractor's performance of the subcontract work as directed by prime contractor or in accordance with the subcontract's terms due to inadequate staffing, due to delay in preparation, procurement or purchasing, due to correction of defective work, or due to sub-subcontractor delay, labor issues, and insolvency did not modify owner's and prime contractor's contractual waiver of all rights against subcontractors for damages covered by property insurance. | "Does the project owner's and contractor's contractual waiver of all rights against subcontractors ""for damages caused by fire"" waive all rights for fire damage?" | 043545.docx | LEGALEASE-00127756-LEGALEASE-00127757 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 13316 | In re Berg, 387 B.R. 524 | 366+35 | The general rule with recorded liens, including mortgages, is that "[a] lien that is [recorded] first in time ... has priority and is entitled to prior satisfaction of the property it binds." Aames Capital Corp. v. Interstate Bank of Oak Forest, 315 Ill.App.3d 700, 248 Ill.Dec. 565, 734 N.E.2d 493, 496 (2000) (additional citations omitted). The doctrine of subrogation is an exception to the "first in time, first in right" rule by which a party that involuntarily pays a debt of another succeeds to the rights of the satisfied party with respect to the debt paid. Union Planters Bank, N.A. v. FT Mortgage Co., 341 Ill.App.3d 921, 276 Ill.Dec. 465, 794 N.E.2d 360, 364 (2003) (citing Aames, 248 Ill.Dec. 565, 734 N.E.2d at 497). There are two types of subrogation: contractual or conventional subrogation, and common law or equitable subrogation. Conventional subrogation occurs when there is an express agreement between the parties to the effect that the party paying the debts on behalf of the third party will be able to assert the rights of the original creditor, and thereby be entitled to priority over an intervening lienor. Aames, 248 Ill.Dec. 565, 734 N.E.2d at 498. Conventional subrogation "will be applied even where the record shows a release of the satisfied incumbrance...." Home Savs. Bank v. Bierstadt, 168 Ill. 618, 48 N.E. 161, 162 (1897). Thus, the elements of conventional subrogation are:an express agreement, the lender seeking the benefit of a conventional subrogation must prove that the loan proceeds were used to refinance the mortgage for which the lender seeks to be subrogated, that no harm will come to an innocent party if priority is granted to the lender, and there has been no gross negligence. | Under Illinois law, conventional subrogation will be applied even when the record shows a release of the satisfied encumbrance. | Will conventional subrogation be applied even when the record shows a release of the satisfied encumbrance? | 043572.docx | LEGALEASE-00127666-LEGALEASE-00127667 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 13317 | State v. Labor & Indus. Review Comm'n, 136 Wis. 2d 281 | 92+2528 | Because the law of worker's compensation is statutory, public policy questions concerning its scope and fairness are for the legislature, not the courts. Jaeger Baking Co. v. Kretschmann, 96 Wis.2d 590, 597, 292 N.W.2d 622 (1980); see, also, Harry Crow & Son, Inc., v. Industrial Comm., 18 Wis.2d 436, 118 N.W.2d 841 (1963); Larson v. ILHR Department, 76 Wis.2d 595, 621, 252 N.W.2d 33 (1977). If the legislature intends surviving spouses to inherit the right to an employee's disability benefits, it should so provide. In the absence of clear manifestation of such intent, this court cannot allow Olivia McKenzie's claim. We reverse the decision of the court of appeals with respect to the right of Olivia McKenzie to claim the total permanent disability benefits which James McKenzie could have claimed in his lifetime. | Because law of worker's compensation is statutory, public policy questions concerning its scope and fairness are for legislature, not courts. W.S.A. 102.17(4), 102.66. | Are policy considerations in workers compensation matters for the legislature or the courts? | 048534.docx | LEGALEASE-00127398-LEGALEASE-00127399 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13318 | State ex rel. Priest v. Gunn, 326 S.W.2d 314 | 13+65 | Sections 529.010-529.030 prescribe the pleadings in mandamus. For the curious, if any, it is interesting to note that these statutes contain much of the same wording and substance as were in The Statute of Anne (9 Anne C 20, Year 1710) then enacted because proceedings by mandamus 'are very dilatory and expensive, whereby great mischiefs have already ensued, and more are likely to ensue, if not timely prevented.' The mischief apparently lay in the fact-55 C.J.S. Mandamus "" 282, 283,-that prior to the statute a return in mandamus was conclusive, and the relator was relegated to an action on the case for a false return. And see our section 529.040, by analogy. Our statutes provide for: (a) a return to the alternative writ (section 529.010); (b) a pleading to or traverse of 'all or any of the material facts contained in' the return (section 529.020); and (c) a reply or other pleading taking issue with such latter pleading (b, above) or a motion (formerly a demurrer " 1534, R.S. 1929) directed thereto. (Section 529.030.) These sections prescribe that such pleadings shall be filed. Ordinarily, the alternative writ is taken as the first pleading (State ex rel. Consolidated School Dist. No. 1, Mississippi and New Madrid Counties v. Jones, Banc, 320 Mo. 353, 8 S.W.2d 66, 67), but here the petition has been treated as the alternative writ. Some confusion may have been caused here by the names given to certain pleadings; they are: (1) The Petition for the Writ; (2) The Answer and Return; and, (3) The Response to Respondents' Return. The 'Answer and Return' above is the return required by section 529.010; we consider the 'Response' to be the pleading to the return required by section 529.020, the name being of no great moment. There was no subsequent pleading by Respondents, the City, as required by section 529.030 and described in (c) above. Under these circumstances we hold that undenied allegations in the so-called 'Response' to the return stand admitted. Among these is the allegation | Matters arising pendente lite may be pleaded in defense by respondent in mandamus proceeding or by the relator in his replication. | Can matters arising pendentelite be pleaded in defense by respondent in mandamus proceeding or by the relator in his replication? | Action - Memo # 829 - C VA.docx | ROSS-003284909-ROSS-003284911 | Condensed, SA, Sub | 0.97 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13319 | Morales v. Sun Constructors, 541 F.3d 218 | 25T+135 | The Federal Arbitration Act (FAA), 9 U.S.C. "" 1"16, provides that arbitration agreements are "enforceable to the same extent as other contracts," and "establishes a strong federal policy in favor of the resolution of disputes through arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir.2003) (quotation marks and citation omitted). However, "arbitration provisions may be attacked under "such grounds as exist at law or in equity for the revocation of a contract." " Plaskett v. Bechtel Int'l, Inc., 243 F.Supp.2d 334, 339 (D.Vi.2003) (quoting 9 U.S.C. " 2). | Arbitration clauses may be attacked under such grounds as exist at law or in equity for the revocation of a contract. | Can arbitration provisions be attacked under grounds that exist at law or in equity for the revocation of a contract? | 007250.docx | LEGALEASE-00128651-LEGALEASE-00128652 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13320 | United States v. Jacques, 463 F.2d 653 | 34+20.1(1) | The constitutional grant of power to raise and support armies, Art. I, " 8, is explicitly no more dependent on a declaration of war than are other powers enumerated in that section. See, e. g., United States v. Mitchell, 369 F.2d 323 (2d Cir. 1966), cert. denied, 386 U. S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 132 (1967).The only expressed limitation is that appropriations not be used for longer than two years. That there has been no formal declaration of war does not, therefore, affect the Congressional power of conscription. United States v. Perrin, 431 F.2d 875 (9th Cir. 1970). See United States v. O'Brien, supra 391 U.S. at 377, 88 S.Ct. 1673, 20 L.Ed.2d 672. But see Holmes v. United States, 391 U.S. 936, 936-949, 88 S.Ct. 1835, 20 L. Ed.2d 856 (1968) (Justice Douglas dissenting). | Constitutional grant of power to raise and support armies is not dependent on a declaration of war and fact that there has been no formal declaration of war does not, therefore, affect the congressional power of conscription. Military Selective Service Act, SS 1 et seq., 12(a), 50 U.S.C.A. App. SS 451 et seq., 462(a). | Does Congress have the power to compel military service in peacetime? | 008316.docx | LEGALEASE-00128602-LEGALEASE-00128603 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 13321 | Padilla ex rel. Newman v. Bush, 233 F. Supp. 2d 564 | 34+1 | The conclusion that the President may exercise his powers as Commander in Chief without a declaration of war is borne out not only by legal precedent, but also by even the briefest contemplation of our history. When one considers the sheer number of military campaigns undertaken during this country's history, declarations of war are the exception rather than the rule, beginning with the undeclared but Congressionally authorized naval war against France in the 1790's referred to in Bas v. Tingy, cited above. Taking into account only the modern era, the last declared war was World War II. Since then, this country has fought the Korean War, the Viet Nam War, the Persian Gulf War, and the Kosovo bombing campaign, as well as other military engagements in Lebanon, Haiti, Grenada and Somalia, to cite a random and by no means exhaustive list, with no appellate authority holding that a declaration of war was necessary. When confronted with challenges to the Viet Nam War, several appellate courts held specifically that no declaration of war was necessary. See, e.g., Mitchell v. Laird, 488 F.2d 611, 613"14 (D.C.Cir.1973); Com. of Massachusetts v. Laird, 451 F.2d 26, 31"32 (1st Cir.1971); Orlando v. Laird, 443 F.2d 1039, 1043 (2d Cir.1971). | President may exercise his powers as Commander in Chief without a declaration of war. | Can the president exercise his powers as commander in chief without a declaration of war? | 008353.docx | LEGALEASE-00128413-LEGALEASE-00128414 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 13322 | In re Bridges, 28 S.W.3d 191 | 287+65(1) | A plaintiff has an absolute, unqualified right to nonsuit its own action against all or any of the defendants. See tex.R. Civ. P. 162, 163; Shadowbrook Apts., 783 S.W.2d at 211; Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982) (per curiam). The right to a nonsuit exists at the moment a written motion is filed with the clerk of the court, and the granting of a nonsuit is merely a ministerial matter. See Shadowbrook Apts., 783 S.W.2d at 211; Greenberg, 640 S.W.2d at 872. A trial court is without authority to nonsuit parties without a motion for nonsuit of those parties by the plaintiff. See Shadowbrook Apts., 783 S.W.2d at 211. | The right to a nonsuit exists at the moment a written motion is filed with the clerk of the court, and the granting of a nonsuit is merely a ministerial matter. Vernon's Ann.Texas Rules Civ.Proc., Rules 162, 163. | Does the party requesting a non-suit have an absolute right to a non-suit at the moment the motion is filed? | 038861.docx | LEGALEASE-00128308-LEGALEASE-00128309 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 13323 | Bell v. Hummel, 136 Cal. App. 3d 1009 | 30+105 | A threshold question is whether the voluntary dismissal presumably filed by appellant's attorney on April 1, 1980, and entered April 7, 1980, renders the subsequent notice of appeal from the March 19, 1980, order ineffective. Under normal circumstances, the notice of appeal, filed May 14, 1980, was timely. Generally, a voluntary dismissal by a plaintiff where the defendant has not sought affirmative relief, as here, is effective immediately and no appeal lies therefrom. Following entry of such a dismissal, the trial court has no further jurisdiction to act in the case except for the purpose of awarding costs and fees as appropriate. (Associated Convalescent Enterprises v. Carl Marks & Co., Inc. (1973) 33 Cal.App.3d 116, 120, 108 Cal.Rptr. 782; Roski v. Superior Court (1971) 17 Cal.App.3d 841, 845, 95 Cal.Rptr. 312.) | Generally, voluntary dismissal by plaintiff where defendant has not sought affirmative relief is effective immediately and no appeal lies therefrom. | Is a voluntary dismissal effective immediately? | Pretrial Procedure - Memo # 953 - C - ES.docx | ROSS-003286873-ROSS-003286874 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13324 | In re New York Skyline, 432 B.R. 66 | 307A+501 | Skyline concedes that I cannot vacate the state court stipulation of discontinuance with prejudice; only the state court can. Instead, Skyline argues that I should narrowly interpret the "with prejudice" language in the stipulation, and at most, limit it to damage claims arising from the closure of the West Escalators. (Supplemental Brief in Support of Debtor's Summary Judgment Motion, dated May 6, 2010, at 13"14 (ECF Doc. # 41).) It is true that "the language "with prejudice" is narrowly interpreted when the interests of justice, or the particular equities involved, warrant such an approach." Dolitsky's Dry Cleaners, Inc. v. Y L Jericho Dry Cleaners, Inc., 203 A.D.2d 322, 610 N.Y.S.2d 302, 303 (N.Y.App.Div.1994); accord Pawling Lake Property Owners Assn., Inc. v. Greiner, 72 A.D.3d 665, 897 N.Y.S.2d 729, 732 (N.Y.App.Div.2010). Nevertheless, the meaning of the "with prejudice" language is subject to the usual rules of contract interpretation through which the Court gives effect to the intention of the parties. Breeden v. Tricom Business Systems, Inc., 244 F.Supp.2d 5, 14 (N.D.N.Y.2003) (declining to afford res judicata effect to a stipulation of dismissal with prejudice where there was "little question" that the parties intended to continue to press their claims against each other);11 Matter of Hortons Estate, 51 A.D.2d 856, 379 N.Y.S.2d 569, 571 (N.Y.App.Div.1976) ("Where a stipulation does not represent the intent of the parties, the remedy of the aggrieved party is to move in the court wherein it was entered to vacate it."). Nevertheless, the use of "with prejudice" raises the presumption that the parties intended to give the stipulation res judicata effect in a subsequent action on the same cause of action. See Singleton Mgmt., Inc. v. Compere, 243 A.D.2d 213, 673 N.Y.S.2d 381, 384 n. 1 (N.Y.App.Div.1998). | Under New York law, stipulation of discontinuance "with prejudice" is narrowly interpreted when the interests of justice, or the particular equities involved, warrant such an approach. | How does the court interpret or construe the language with prejudice when interests of justice or particular equities are involved? | 039045.docx | LEGALEASE-00128251-LEGALEASE-00128252 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 13325 | Erie R. Co. v. Pub. Utilities Comm'n of Ohio, 123 Ohio St. 682 | 320+227 | The court affirms the finding of the Public Utilities Commission for the reason that in operations of a purely interstate character publication of notice of the filing of the application is not required, nor is proof necessary that there is any public convenience and necessity to be served; and for the further reason that the commission is without power to prevent the establishment and operation of a purely interstate route so long as there is a compliance with all rules and regulations of the commission and of the terms and conditions of such interstate certificate and all state laws and municipal ordinances as to the use of the streets and highways by an applicant for such purely interstate operation, all of which applicant has done and offers and promises to do in the future. | In railroads' purely interstate operations, publication of notice of filing of application and proof of public convenience and necessity are unnecessary. | Is the publication of a notice for filing an application required in a purely interstate operation as per the Public Utilities Commission? | 042476.docx | LEGALEASE-00128188-LEGALEASE-00128189 | Order, SA, Sub | 0.81 | 1 | 0 | 1 | 1 | 1 |
| 13326 | St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 317 F. Supp. 2d 33 | 217+3522 | Subrogation is an "equitable doctrine [that] allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse." Kaf"Kaf, Inc. v. Rodless Decorations, Inc., 90 N.Y.2d 654, 660, 665 N.Y.S.2d 47, 49, 687 N.E.2d 1330 (1997). The "parties to an agreement may waive their insurer's right of subrogation." Id. at 660, 665 N.Y.S.2d at 49"50, 687 N.E.2d 1330. However, "a waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears ...."Id. at 660, 665 N.Y.S.2d at 50, 687 N.E.2d 1330; see, e.g., S.S.D.W. Co. v. Brisk Waterproofing Co., 76 N.Y.2d 228, 236, 557 N.Y.S.2d 290, 294"95, 556 N.E.2d 1097 (1990). By the same token, an obligation to secure a waiver-of-subrogation clause does not exist with respect to a type of insurance not encompassed by the contractual obligation to obtain such a waiver. | Under New York law, parties to agreement may waive their insurer's right of subrogation; however, waiver of subrogation clause cannot be enforced beyond scope of specific context in which it appears. | Can a waiver of subrogation provision be enforced beyond the scope what appears in a contract? | 043232.docx | LEGALEASE-00128450-LEGALEASE-00128452 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 13327 | St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 317 F. Supp. 2d 33 | 366+35 | New York courts, when enforcing waivers of subrogation, look to the specific terms of the waiver as executed by the parties. See Kaf-Kaf, Inc. v. Rodless Decorations, Inc., 90 N.Y.2d 654, 658, 665 N.Y.S.2d 47, 687 N.E.2d 1330 (1997). The Insurance Rider contains a comprehensive waiver of the right of recovery.8 The Rider also specifies that the Policy would contain a waiver of subrogation clause. St. Paul's policy contains such a clause. These clauses demonstrate St. Paul, Durst, 4TSA and UBS's unambiguous intention to prevent actions such as this one | Under New York law, enforcement of waiver of subrogation depends on specific terms of waiver as executed by parties. | Does enforcement of waiver of subrogation depend on specific terms of waiver as executed by parties? | 043275.docx | LEGALEASE-00128463-LEGALEASE-00128464 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 13328 | St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply, 317 F. Supp. 2d 33 | 366+35 | St. Paul argues that New York law does not permit a waiver of subrogation that would bar its claims against UBS for gross negligence. The Court holds that New York law does permit such a waiver, despite the contrary conclusions of three other federal district courts applying New York law. Neither the New York Court of Appeals nor any lower New York state court has decided whether a waiver of subrogation clause can bar a subrogated claim for gross negligence. St. Paul argues that public policy should require any party who commits gross negligence to bear the cost of any injury incurred as a result of that conduct. Such a rule would presumably have the benefit of deterring contractors from committing gross negligence, but it would have the detriment of encouraging litigation among parties to complicated construction contracts. | Under New York law, waiver of subrogation clause can bar subrogated claim for gross negligence. | "Under law, can a waiver of subrogation clause bar a subrogated claim for gross negligence?" | 043277.docx | LEGALEASE-00128475-LEGALEASE-00128476 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13329 | Pecot v. Hill, 227 La. 131 | 13+65 | We find no merit in the contention. Conceding, for purposes of discussion,that matters of this sort come within the general rule that a plaintiff's right to reliefdepends upon the existence of such right at the inception of the suit, see Manuel v.Deshotels, 160 La. 652, 107 So. 478, we cannot say, after a perusal of the record, that the judge erred in preferring the evidence of the wife over that of the husband. She testified, conformably with her pleadings, that the date of the separation was April 9, 1951 and her statement is corroborated by her mother, who was a witness in her behalf. | Generally, a plaintiff's right to relief depends upon existence of such right at inception of suit. | Does a plaintiff's right to relief depend upon the existence of such right at the inception of the suit? | Action - Memo # 842 - C DA.docx | ROSS-003300401-ROSS-003300402 | Order, SA | 0.83 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13330 | Manor Bldg. Corp. v. Manor Complex Assocs., Ltd., 435 Pa. Super. 246 | 8.30E+05 | A negotiable instrument is an instrument capable of transfer by endorsement or delivery. Negotiability provides a means of passing on to the transferee the rights of the holder, including the right to sue in his or her own name, and the right to take free of equities as against the assignor/payee. Fischbach& Moore v. Philadelphia National Bank, 134 Pa.Super. 84, 3 A.2d 1011 (1939). The purpose of the Commercial Code is to enhance the marketability of negotiable instruments and to allow bankers, brokers, and the general public to trade in confidence. Uniform Commercial Code, Article 3, Negotiable Instruments, 13 Pa.C.S. "" 3101 et seq. First National Bank of Blairstown v. Goldberg, 340 Pa. 337, 17 A.2d 377 (1941). As a matter of sound economic policy, the Commercial Code encourages the free transfer and negotiability of commercial paper to stimulate financial interdependence. | Purpose of Uniform Commercial Code (UCC) is to enhance marketability of negotiable instruments and to allow bankers, brokers, and general public to trade in confidence. 13 Pa.C.S.A. S 3101 et seq. | What is the purpose of the Universal Commercial Code? | Bills and Notes - Memo 145 - RK.docx | ROSS-003327100-ROSS-003327101 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 13331 | Jones v. Bruce, 211 S.W. 692 | 289+502 | The sharing of profits, and even also of losses, is not conclusive that a partnership exists. Other conditions and circumstances may disclose that the parties did not intend a partnership. Torbert v. Jeffrey, 161 Mo. 645, 655, 61 S. W. 823. And it has been ruled by our Supreme Court (especially applicable to a partnership of this character) that in a contest between alleged partners the proof of a partnership "must be by the clearest and most positive evidence." Chapin v. Cherry, 243 Mo. 375, 408, 147 S. W. 1084, 1094. Such proof is not found in this case. | In a contest between alleged partners, the proof of partnership must be by the clearest and most positive evidence. | Will the proof of partnership have to be by the clearest and most positive evidence when partnership has been contested between alleged partners? | 021993.docx | LEGALEASE-00128917-LEGALEASE-00128918 | Order, SA, Sub | 0.8 | 1 | 0 | 1 | 1 | 1 |
| 13332 | Colorado Performance Corp. v. Mariposa Associates, 754 P.2d 401 | 226H+17 | A joint venture is a partnership formed for a limited purpose.Hence, the substantive law of partnerships must be applied in determining whether a joint venture exists. See Hooper v. Yoder, 737 P.2d 852 n. 4 (Colo.1987). | A joint venture is a partnership formed for a limited purpose; hence, the substantive law of partnerships must be applied in determining whether a joint venture exists. | Is the substantive law of partnership applicable to joint ventures? | Partnership - Memo 239 - RK.docx | LEGALEASE-00018716-LEGALEASE-00018717 | Condensed, SA | 0.23 | 0 | 1 | 0 | 1 | |
| 13333 | Dickenson Manor v. Slagle, 732 S.W.2d 263 | 401+5.3(1) | Plaintiff says, though, taking another tack, that " 508.030, RSMo 1986, required that its injunction suit be brought in Cass County, and that this statute takes precedence over the compulsory counterclaim rule. Section 508.030 provides as follows: "Suits for the possession of real estate, or whereby the title thereto may be affected, or for the enforcement of the lien of any special tax bill thereon, shall be brought in the county where such real estate, or some part thereof, is situated." The phrase "whereby the title may be affected" is held to mean that the judgment must operate directly upon the real estate title. Ingram v. Great Lakes Pipe Line Co., 153 S.W.2d 547, 550 (Mo.App.1941); Sanders v. Savage, 234 Mo.App. 9, 129 S.W.2d 1061, 1063"64 (1939). | Phrase "whereby the title thereto may be affected" in statute providing "Suits for the possession of real estate, or whereby the title thereto may be affected, or for the enforcement of the lien of any special tax bill thereon, shall be brought in the county where such real estate, or some part thereof, is situated," means that judgment must operate directly upon the real estate title. V.A.M.S. S 508.030. | How is the term whereby the title may be affected interpreted by the courts? | 047496.docx | LEGALEASE-00128883-LEGALEASE-00128884 | Order, SA, Sub | 0.46 | 1 | 0 | 1 | 1 | 1 |
| 13334 | City of San Benito v. Rio Grande Valley Gas Co., 109 S.W.3d 750 | 250+187.5 | We disagree. There is no interlocutory appeal from an order denying a party the right to opt out of a class. See Tex. Civ. Prac. & Rem.Code " 51.014. It is true that the cities could have attempted to seek mandamus relief in this Court after the court of appeals denied mandamus relief, but filing a request for an extraordinary writ is not a prerequisite to an appeal. Pope v. Stephenson, 787 S.W.2d 953, 954 (Tex.1990). The cities did not waive their complaints regarding the opt-out requests. | Unnamed class members did not waive challenge to denial of opt-out requests by failing to seek appellate or mandamus review until after final judgment and by failing to seek mandamus relief in the Supreme Court after the court of appeals denied mandamus relief; the members had no right to interlocutory appeal from initial denial of opt-out requests a year before final judgment, and filing a request for an extraordinary writ was not a prerequisite to an appeal. V.T.C.A., Civil Practice & Remedies Code S 51.014. | Is filing a request for an extraordinary writ a prerequisite to an appeal? | Appeal and error - Memo 32 - RK.docx | ROSS-003300494-ROSS-003300496 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 13335 | Clohset v. No Name Corp., 302 Mich. App. 550 | 228+489 | Even assuming arguendo that this monetary component of the stipulated consent judgment exceeded the district court's authority, defendants still could not properly collaterally attack the entry of that judgment. As the Michigan Supreme Court explained in Bowie v. Arder, 441 Mich. 23, 49, 490 N.W.2d 568 (1992), quoting Jackson City Bank & Trust Co. v. Fredrick, 271 Mich. 538, 545, 260 N.W. 908 (1935) (citation omitted):"Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked."In other words, "lack of subject matter jurisdiction can be collaterally attacked, [whereas] the exercise of that jurisdiction can be challenged only on direct appeal." In re Hatcher, 443 Mich. at 439, 505 N.W.2d 834. | Lack of subject matter jurisdiction can be collaterally attacked, whereas the exercise of that jurisdiction can be challenged only on direct appeal. | Can the lack of subject matter jurisdiction be collaterally attacked? | Appeal and error - Memo 36 - RK.docx | ROSS-003313976-ROSS-003313978 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13336 | Liberty Loan Corp. of Eunice v. Lavine, 324 So. 2d 481 | 83E+417 | We are of the opinion that Liberty Loan Corporation is a holder in due course even though there was no endorsement by Securities Investment, Inc. to Liberty Loan. The note was originally made to ourselves and endorsed in blank by the makers and thus became bearer paper. R.S. 7:40 stands for the proposition that if the instrument is originally bearer paper it forever remains bearer paper, in spite of special endorsements. | If instrument is originally bearer paper, it forever remains bearer paper, in spite of special endorsements. LSA-R.S. 7:40. | Does an instrument which is originally bearer paper remain so after special endorsements? | 009372.docx | LEGALEASE-00129024-LEGALEASE-00129025 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 13337 | Temple v. Cotton Transfer Co., 126 Neb. 287 | 307A+501 | A dismissal in effect is equivalent of a nonsuit, and, in practice, also imports the same thing as a discontinuance, namely, that the cause is sent out of court.In justice to the action of the trial court, it may be said to be supported by ample authority evidenced by precedents in jurisdictions other than our own; though even where prevailing the practice is admittedly one that involves dangers and must be followed with extreme caution. This court, as yet, has never approved it. It is not universally recognized even in the American jurisdictions. Thus, the practice of granting a nonsuit on the opening statement by counsel for plaintiff does not prevail, and never has prevailed, in the Code state of Wisconsin. Haley v. Western Transit Co., 76 Wis. 344, 45 N. W. 16; Smith v. Commonwealth Ins. Co., 49 Wis. 322, 5 N. W. 804; Fisher v. Fisher, 5 Wis. 472. | "Dismissal" in effect is equivalent of "nonsuit," and, in practice, also imports the same thing as "discontinuance." | "Is a ""dismissal"" in effect equivalent of a ""nonsuit,"" and, does it in practice imports the same thing as ""discontinuance""?" | 026221.docx | LEGALEASE-00129111-LEGALEASE-00129112 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13338 | Senseley v. First Nat. Life Ins. Co., 205 La. 61 | 307A+501 | From a mere reading of the Act, it is apparent that it applies only to the voluntary dismissals of suits and reconventional demands. A plaintiff in a suit has control of it and has the right to discontinue or dismiss it at any time except where the rights of the defendant are prejudiced. C.P., Article 491; St. Bernard Trappers' Ass'n v. Michel, 162 La. 366, 110 So. 617. Insofar as a reconventional demand is concerned, the defendant takes the position of plaintiff. Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869. However, if the dismissal of either of the demands, principal or in reconvention, would prejudice the rights of other parties to the suit, the suit could only be dismissed with the consent of the parties so prejudiced. In either event, the discontinuance or dismissal would be accomplished by the voluntary withdrawal of the suit or demand and not by operation of law. | Plaintiff has control of a suit and the right to discontinue or dismiss it at any time except where rights of defendant are prejudiced, and as respects a reconventional demand the defendant has similar control and rights. Code Prac. art. 491. | Does a plaintiff have control of a suit and the right to discontinue or dismiss it at any time? | Pretrial Procedure - Memo # 1310 - C-BP.docx | LEGALEASE-00018972-LEGALEASE-00018973 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 13339 | Copar Pumice Co. v. Bosworth, 502 F. Supp. 2d 1200 | 260+29 | The Forest Service is authorized to manage surface resources by federal statute, but not to interfere with mining claims. See, Converse v. Udall, 262 F.Supp. 583, 585 (D.C.Or.1966) (discussing the Surface Resources Act, 30 U.S.C. " 612). The General Mining Law of 1872 ("General Mining Law," 30 U.S.C. " 22 et seq.) allows one to locate and stake either of two types of claims-patented and unpatented. A patented claim is obtained by locating a valuable mineral deposit on the claim and then obtaining a patent certificate from the Government. An unpatented mining claim is obtained by locating a deposit in a mineral vein or lode on public lands, and staking the boundaries of the claim. In the latter case, title to the land where the mining claim is located remains with the Government, but the severed minerals and proceeds are the personal property of the miner. | The Forest Service is authorized to manage surface resources by federal statute, but not to interfere with mining claims. Multiple Use Mining Act of 1955, S 4, 30 U.S.C.A. S 612. | Is the Forest Service authorized to interfere with mining claims? | Woods and Forest - Memo 35 - RK.docx | ROSS-003301818-ROSS-003301819 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13340 | Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773 | 25T+141 | Traditional principles of agency law may bind a nonsignatory to an arbitration agreement. See Interbras Cayman Co. v. Orient Victory Shipping Co., S.A., 663 F.2d 4, 6-7 (2d Cir.1981); A/S Custodia, 503 F.2d at 320; Fisser, 282 F.2d at 233-38; Keystone Shipping, 782 F.Supp. at 31-32. Because the Working Agreement was entered into well before Thomson purchased Rediffusion, Thomson could not possibly be bound under an agency theory. | Traditional principles of agency law may bind nonsignatory to arbitration agreement. | Can traditional principles of agency law bind a nonsignatory to an arbitration agreement? | 007336.docx | LEGALEASE-00129618-LEGALEASE-00129619 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13341 | Evans v. Charity Hosp. in New Orleans, 2000-0202 (La. App. 4 Cir. 11/14/01), 801 So. 2d 1192 | 106+204 | The Supreme Court's ruling in this case effectively has overruled this Court's decision in Jackson v. America's Favorite Chicken Co., 98"0605 (La.App. 4 Cir. 2/3/99), 729 So.2d 1060, in which it was held that this Court no longer would convert appeals from partial summary judgments that had not been certified as final by the district court to applications for supervisory writs.The Supreme Court's remand with instruction to consider this appeal under our supervisory jurisdiction reminds us, as this Court noted in Livingston Downs Racing Association, Inc. v. Louisiana State Racing Commission, 96"1215, p. 3 (La.App. 4 Cir. 6/5/96), 675 So.2d 1214, 1216 that:the difference between supervisory jurisdiction and appellate jurisdiction is that the former is discretionary on the part of the appellate court while the latter is invocable by the litigant as a matter of right. | Difference between supervisory jurisdiction and appellate jurisdiction is that the former is discretionary on the part of the appellate court while the latter is invocable by the litigant as a matter of right. | What is the difference between appellate and supervisory jurisdiction? | 008240.docx | LEGALEASE-00129455-LEGALEASE-00129456 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 13342 | McReynolds v. Benner Twp., 368 Pa. Super. 301 | 30+23 | Although neither party has raised the issue, we may consider sua sponte whether or not we have jurisdiction over this case. Karpe v. Borough of Stroudsburg, 290 Pa.Super. 559, 434 A.2d 1292 (1981). We note that joined as co-defendant in Appellant's action is Benner Township. By his Complaint, Appellant argued that Benner Township was negligent in the design, engineering, control, supervision, and/or maintenance of Rock Road, the scene of Appellant's unfortunate accident. This Court, by statute, has exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, except when an appeal falls within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court. See 42 Pa.C.S.A. " 742. We find that we are without jurisdiction to entertain the instant appeal and that this case must be transferred to the Commonwealth Court. | Although neither party raised the issue, Superior Court could consider sua sponte whether it had jurisdiction over the case. | Can a court raise the issue of its jurisdiction sua sponte? | 008273.docx | LEGALEASE-00129583-LEGALEASE-00129584 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 13343 | Killough v. Killough, 373 So. 2d 336 | 134+178 | The trial court obviously denied the motion to substitute and revive and entered a dismissal of the action because it determined that the action did not survive the death of the wife. We do not reach the issue of survival of the action. If the issue were properly before us, we would agree that an action only for divorce, alimony, attorney fees and an equitable division of marital property in which there has not been a final judgment does not survive the death of a party. Authority for the decision of the trial court begins in this state with the case of Pearson v. Darrington, 32 Ala. 227 (1858). The rule of that case was followed by others including Vaughn v. Vaughn, 258 Ala. 336, 62 So.2d 466 (1952), and Cox v. Dodd, 242 Ala. 37, 4 So.2d 736 (1941). The principle enunciated in these cases is that the marriage is dissolved by the death of a party and an action pending for dissolution by divorce is necessarily terminated and absolutely abated. However, if there is a judgment affecting property rights, the death of a party may not affect the right of the unsuccessful party or his or her representative to institute vacation proceedings or proceed to appeal. Cox v. Dodd. It is to be noted that in all of the preceding authorities there had been entry of judgment. Not so in this case. | Marriage is dissolved by death of a party and an action pending for dissolution by divorce is terminated and absolutely abated by the death, but if there is a judgment affecting property rights, death of a party may not affect right of unsuccessful party or his representative to institute vacation proceedings or proceed to appeal. | Is an appeal permitted to proceed after the death of a party? | 008280.docx | LEGALEASE-00129589-LEGALEASE-00129590 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 13344 | Landry v. Minvielle, 219 So. 2d 235 | 30+334(1) | An appeal cannot be prosecuted in the name of a person deceased, and any judgment rendered by an appellate court for or against one deceased and not represented before it, is an absolute nullity. Williams v. Brown, 142 So.2d 865 (La.App.3d Cir.1962); Todd Shipyards Corporation v. Lomm, 190 So.2d 125 (La.App.4th Cir.1966); Munster v. Palama, 198 So.2d 405 (La.App.4th Cir.1967). | An appeal cannot be prosecuted in name of a person deceased, and any judgment rendered by an appellate court for or against one deceased and not represented before it, is an absolute nullity. Uniform Rules, Courts of Appeal, rule 13, S 2, 8 LSA-R.S. | Will an appeal on behalf of a deceased person be treated as a nullity? | 008284.docx | LEGALEASE-00129593-LEGALEASE-00129594 | Condensed, SA | 0.34 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13345 | In re Kolben's Estate, 203 Misc. 1012 | 8.30E+76 | Although death does not terminate the drawer's liability upon the instrument, it does operate to revoke the authority of the payee to collect from the drawee. Compare Matter of Gibbons, 234 App.Div. 153, 254 N.Y.S. 566; Hoffman v. Union Dime Savings Institutions, 109 App.Div. 24, 95 N.Y.S. 1045; In re Garland's Will, Sur., 97 N.Y.S.2d 442, 446; cf. Cook v. Lewis, 172 Ill.App. 518; Haefner v. First National Bank, 70 Ohio App. 293, 44 N.E.2d 489. In New York the transfer of a check does not of itself operate as an assignment of any part of the fund against which the instrument is drawn, Negotiable Instruments Law, " 325; a check is a mere order for the payment of money and until it has been accepted or certified the payee is vested with no enforceable rights to the fund in the hands of the drawee. Upon the death of the drawer before the check has been accepted or certified, title to the funds in the hands of the drawee vests in the drawer's representative.1 Davids, New York Law of Wills, "" 4, 5; Compare McMurray v. Ennis, City Ct., 10 N.Y.S. 698, 700. As the holder has no vested rights to the fund he may not collect from the drawee and is entitled only to recovery from the drawer's estate as a general creditor. Were the holder allowed to collect from the drawee in the full amount of the check he would thereby obtain an unfair advantage over other general creditors if the estate were insolvent, an advantage not warranted by statute, compare Surrogate's Court Act, " 212, or by the nature of the instrument. See Negotiable Instruments Law, " 325. Hence, although claimant may recover from the decedent's estate upon the check his status is that of a general creditor. See Haefner v. First National Bank, 70 Ohio App. 293, 44 N.E.2d 489; Fisher v. Bagnell, 194 Mo.App. 581, 186 S.W. 1097. | Although death of the drawer of a check given for a valuable consideration does not terminate the drawer's liability upon the instrument, it does operate to revoke the authority of the payee to collect from the drawee, and the payee is entitled only to a recovery from the drawer's estate as a general creditor, since payee acquired no vested right in funds in hands of the drawee, but the title thereto has passed to drawer's legal representative. Negotiable Instruments Law, S 325. | Does the death of the maker of a check or instrument terminate his liability? | Bills and Notes - Memo 171 - RK.docx | LEGALEASE-00019094-LEGALEASE-00019095 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 13346 | Com. v. Simpson, 316 Pa. Super. 115 | 210+815 | Appellant's final argument is that the crime of criminal trespass merged with burglary. The doctrines of merger and of lesser included offenses raise essentially the same question. Commonwealth v. Ackerman, 239 Pa.Super. 187, 191 n. 4, 361 A.2d 746, 748 n. 4 (1976). The test for determining whether an offense is a lesser included offense is whether all of the essential elements of the lesser offense are included in the greater offense. Commonwealth v. Ostolaza, 267 Pa.Super. 451, 406 A.2d 1128 (1979). Using this test, criminal trespass is not a lesser included offense of burglary, since one of the elements of the former is knowledge by the defendant that he was not privileged to enter, which is not an element of burglary. Commonwealth v. Carter, 482 Pa. 274, 393 A.2d 660 (1978). However, when discussing merger for sentencing purposes, "we focus not only in the similarity of the elements of the crime but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed a single criminal act, in which case there will be merger and only a single sentence which may be imposed, or more than a single act, in which case there will be no merger and a sentence may be for each act." | Criminal trespass is not a lesser included offense of burglary, since one of the elements of the former is knowledge by defendant that he was not privileged to enter, which is not an element of burglary. | Is knowledge an element of burglary? | 013232.docx | LEGALEASE-00129645-LEGALEASE-00129646 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13347 | State v. Pierre, 131 So. 3d 319, 324 | 67+9(2) | We think it is clear, therefore, that the historical background which resulted in the common-law definition of burglary is inappropriate to the interpretation of Article 62. Article 62 does not require that the entry be into a part of the vehicle capable of or designed to accommodate a person. It is sufficient if the entry into the vehicle is accomplished, as in this case, by opening the hood and stealing the battery from the engine compartment. Houchin v. State, 473 P.2d 925 (Okla.Cr.App.1970); People v. Lamica, 274 Cal.App.2d 640, 79 Cal.Rptr. 491 (1961); Inbau, Thompson and Moenssen, Criminal Law, p. 616 (3d ed. 1973); LaFave and Scott, Criminal Law, p. 710 (1972); 2 Russel on Crime, pp. 822"23 (12th ed. 1964); Clark and Marshall, Crimes, 411 (5th ed. 1952). Therefore, Article 62 properly charges a crime under the facts of the case at bar. | To constitute simple burglary, it is sufficient if entry into vehicle is accomplished by opening hood and it is not necessary that there be entry into part of vehicle capable of or designed to accommodate a person. LSA-R.S. 14:3, 14:62, 14:67, 14:68. | Does opening the hood of a vehicle constitute burglary? | 013247.docx | LEGALEASE-00129657-LEGALEASE-00129658 | Order, SA, Sub | 0.71 | 1 | 0 | 1 | 1 | 1 |
| 13348 | Sealey v. Bd. of Educ., 14 S.W.3d 597 | 141E+449 | Although Plaintiff has a valid teaching certificate, she is not a "legally certified teacher" within the meaning of section 168.101. (emphasis added).This is because mere possession of a teaching certificate, without more, does not satisfy the statutory definition of a teacher. Mitchell, 913 S.W.2d at 134. To be a "teacher" as defined by statute, one must both possess a valid certificate and perform the duties for which the statutes require a certificate. Id. As discussed above, there is no statutory requirement that those "teaching" in a preschool program have a certificate. Because Plaintiff was not employed by the board either to perform education duties in grades kindergarten through twelve or to act as a school administrator, she was not a "legally certificated teacher" entitled to the protection of section 168.101. | Mere possession of a teaching certificate, without more, does not satisfy the statutory definition of a teacher. V.A.M.S. S 168.104(7). | Does mere possession of a teaching certificate satisfies the statutory definition of a teacher? | 016968.docx | LEGALEASE-00129263-LEGALEASE-00129264 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 13349 | Brooks v. Sch. Dist. of City of Moberly, Mo., 267 F.2d 733 | 316P+145 | In the case we are considering, the employment contracts of the plaintiffs expired at the end of the 1954-1955 school year. Under Missouri law plaintiffs had no tenure rights. Plaintiffs' rights and obligations under their previously-existing contracts expired upon the termination of the contracts by lapse of time. A teacher upon expiration of his contract has neither contractual nor statutory rights to continued employment. | Under Missouri law, a teacher, on expiration of his contract, has neither contractual nor statutory rights to continued employment. V.A.M.S. S 163.090. | Does a teacher on expiration of his contract has contractual or statutory rights to continued employment? | 016982.docx | LEGALEASE-00129279-LEGALEASE-00129280 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13350 | DeLong v. Bd. of Ed. of Sw. Sch. Dist., 36 Ohio St. 2d 62 | 141E+560 | Appellant attempts to distinguish Kelley Co. She contends that that case involved no administrative determination of a pre-existing right, whereas, here, appellee's action constituted an unlawful abridgement of her vested statutory right to re-employment. Appellant characterizes the language of R.C. 3319.11 as giving her a right to a continuing contract, subject to a veto by the board of education, and places much reliance on her superintendent's having recommended her for continuing service status.We do not agree with appellant's contention R.C. 3319.07 makes it clear that the ultimate responsibility for employing teachers rests with the board of education, and R.C. 3319.11 carefully preserves the board's right to have the final say in all reemployment situations. Although, under R.C. 3319.11, a teacher's contract is deemed renewed by a board's failure to act timely, this very failure is, itself, statutorily considered to be an expression of the board's will. We have carefully examined the arguments of both appellant and amicus curiae, and do not agree that R.C. Chapter 3319 gave appellant any statutory right to reemployment upon the expiration of her three-year limited contract. | Teacher had no statutory right to reemployment upon expiration of her three-year limited contract, despite recommendation of superintendent that she be reemployed under a continuing contract. R.C. S 3319.11. | Does a teacher on expiration of his contract has contractual or statutory rights to continued employment? | Education - Memo # 87 - C- NA.docx | LEGALEASE-00019190- LEGALEASE-00019191 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 13351 | People v. McCue, 150 Cal. 195 | 388+398 | The main argument for reversal of the judgment is based upon the contention that the probative facts alleged in the complaint and found by the trial court do not show that the alleged public highways are, in fact, public highways, and in support of thic contention learned counsel urge that such probative facts tending to show a dedication of such highways by defendant to the public and acceptance of the same, are not sufficient to establish a dedication and acceptance. If we assume this to be true, we do not see how it can avail defendants on this appeal. Independently of the probative facts alleged, it was in terms unconditionally alleged in the complaint "that each and all of such streets are public highways." The trial court, in addition to finding certain probative facts, found as a fact, in express terms and unconditionally, "that each and all of said streets are public highways." This was undoubtedly a finding of the ultimate fact. Bequette v. Patterson, 104 Cal. 282, 285, 37 Pac. 917. Defendants claim that this finding must be treated as a conclusion of law based upon the probative facts found, or as a mere general conclusion of fact from the specific facts previously found, but the record does not warrant us in so considering it. It is contained in the "findings of fact," as distinguished from the "conclusions of law," and therefore does not fall within the rule declared in such cases as Levins v. Rovegno, 71 Cal. 273, 12 Pac. 161; Sav. & Loan Soc. v. Burnett, 106 Cal. 514, 538, 39 Pac. 922, and Niles v. City of Los Angeles, 125 Cal. 572, 578, 58 Pac. 190, where it was sought to treat a purported conclusion of law as a misplaced finding of fact. In those cases, it was plain, on the face of the record, that the alleged finding was merely what it purported to be, viz., a conclusion drawn by the court from the facts previously found. Nor is there anything on the face of the finding under discussion to indicate that it was simply a conclusion from the probative facts previously found, and herein this case differs from such | In an action by the people to abate an obstruction in a highway, the complainant alleged certain probative facts but alleged that the street was a public highway, and the court, in addition to finding the probative facts alleged, found, under the "findings of facts," that the street was a public highway. Held that, though the former facts found did not show that the street was a public highway, such fact was of no avail to defendant on appeal, as the latter finding of the court was a finding of an ultimate fact and could not be treated as a conclusion of law or as a mere general conclusion of fact from the specific facts previously found. | "Is an allegation that a street is a highway, an allegation of ultimate fact?" | 023129.docx | LEGALEASE-00129463- LEGALEASE-00129465 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 13352 | Cook v. Lichtblau, 176 So. 2d 523 | 307A+501 | We reject both arguments and hold that under Florida R.C.P. 1.35, as amended, a plaintiff may not terminate an action as a matter of right by taking a nonsuit whether voluntary or involuntary under prior Florida practice. We think the Supreme Court originally recognized that both types of nonsuit constitute, in effect, dismissals at the instance of plaintiffs which could not be permitted to be taken as a matter of right consistent with the provisions of Florida Common Law Rule 35 and Florida R.C.P. 1.35(a). Further, we do not attach great significance to the fact that the exception was added to subdivision (b), nor to the fact that it followed the "not provided for" phrase. We think the exception was inserted for the purpose of temporarily preserving non-suits of both types and that it was subsequently deleted for the purpose of abolishing both types. Assuming arguendo that the Supreme Court initially sought to preserve the "involuntary" type of nonsuit, the effect of the 1962 revision was no abolish that type of nonsuit too. While the purpose in deleting the "not provided for" phrase is not entirely clear, we think the purpose may well have been to indicate that, until the new practice is thoroughly understood, erroneously taken or erroneously allowed nonsuits should be construed as ineffectual attempts to terminate actions or as dismissals without prejudice, rather than as adverse adjudications on the merits, i. e., dismissals with prejudice. Our conclusion is fortified, among others, by the following considerations: (1) The limitation upon the right of plaintiffs to terminate actions contained in Florida R.C.P. 1.35(a), as amended, cannot reasonably be enforced so long as the practice exists of plaintiffs taking nonsuits as a matter of right, whether voluntary or "involuntary;" (2) A rule prohibiting voluntary nonsuits as a matter of right but permitting "involuntary" non-suits as a matter of right also could not reasonably be enforced; (3) The statutory practice of permitting plaintiffs | Plaintiff may not terminate action as matter of right by taking nonsuit whether voluntary or involuntary. 30 F.S.A. Rules of Civil Procedure, rule 1.35. | Is a plaintiff entitled to take nonsuit as a matter of right? | 023998.docx | LEGALEASE-00129446- LEGALEASE-00129448 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13353 | Harvey Aluminum v. Am. Cyanamid Co., 203 F.2d 105 | 170A+1692 | The plaintiffs contend that their attempted voluntary dismissal without a court order was authorized by Rule 41(a) 1 of the Federal Rules of Civil Procedure, 28 U.S.C., which provides that: " * * * an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment * * * ." The purpose of this rule is to facilitate voluntary dismissals, but to limit them to an early stage of the proceedings before issue is joined. 5 Moore's Fed.Practice 1007 (2d ed.). The amount of research and preparation required of defendants was stressed by the Committee Note when Rule 41(a) 1 was amended in 1948 as a reason for adding the reference to a motion for summary judgment. 5 Moore's Fed.Practice 1005 (2d ed.). The hearing before Judge Sugarman on the plaintiff's motion for a preliminary injunction required several days of argument and testimony, yielding a record of some 420 pages. Further, the merits of the controversy were squarely raised and the district court in part based its denial of the injunction on its conclusion that the plaintiffs' chance of success on the merits was small. Consequently, although the voluntary dismissal was attempted before any paper labeled "answer" or "motion for summary judgment" was filed, a literal application of Rule 41(a) 1 to the present controversy would not be in accord with its essential purpose of preventing arbitrary dismissals after an advanced stage of a suit has been reached. See Butler v. Denton, 10 Cir., 150 F.2d 687; Love v. Silas Mason Co., D.C.W.D.La., 66 F.Supp. 753; cf. Kilpatrick v. Texas & Pacific Ry., 2 Cir., 166 F.2d 788; Wilson & Co. v. Fremont Cake & Meal Co., D.C.Neb., 83 F.Supp. 900. | The purpose of the rule permitting voluntary dismissal is to facilitate voluntary dismissals, and to limit them to an early stage of the proceedings before issue is joined. Fed.Rules Civ.Proc. rule 41(a)(1), 28 U.S.C.A. | Does the rule related to voluntary dismissal limit such dismissal as a matter of right to the early stages of litigation? | Pretrial Procedure - Memo # 1003 - C - SK.docx | LEGALEASE-00019244-LEGALEASE-00019245 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 13354 | Mass v. Superior Court In & For City & Cty. of San Francisco, 197 Cal. App. 2d 430 | 307A+597 | Exceptions to the operation of dismissal statutes must be strictly construed. (See Miller & Lux, Inc. v. Superior Court, 192 Cal. 333, 339, 219 P. 1006.) Mere discussion of delay is not sufficient. There must be a specific agreement to waive the provisions of the section. (See Breakstone v. Giammini, 70 CalApp.2d 224, 160 P.2d 887.). | Since exceptions to operation of dismissal statutes must be strictly construed, mere discussion of delay is not sufficient and there must be specific agreement to waive provisions of statute. West's Ann.Code Civ.Proc. S 583. | Should the exceptions to the operation of dismissal statutes be strictly construed? | Pretrial Procedure - Memo # 1038 - C - KI.docx | ROSS-003286922-ROSS-003286924 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 13355 | Knightstown Banner v. Town of Knightstown, 882 N.E.2d 270 | 307A+501 | This rule permits a claimant to voluntarily dismiss a claim after a motion for summary judgment has been filed, but only pursuant to court order. The test for determining whether a voluntary dismissal is proper is whether the opposing party would be substantially prejudiced by dismissal. Principal Life Ins. Co. v. Needler, 816 N.E.2d 499 (Iind.Ct.App.2004). Dismissals should generally be allowed unless the defendant will suffer legal prejudice, other than the mere prospect of a second lawsuit. Id. | The test for determining whether a voluntary dismissal is proper is whether the opposing party would be substantially prejudiced by dismissal. Trial Procedure Rule 41(A)(2). | What is the test for determining whether a voluntary dismissal is proper? | Pre-trial Procedure - Memo # 1044 - C - KG.docx | ROSS-003328117-ROSS-003328118 | SA, Sub | 0.66 | 0 | 0 | 1 | 1 | |
| 13356 | Jacobs v. Jacobs, 127 Misc. 505 | 307A+501 | Ordinarily taxable costs to date would be all that would be imposed as a condition to the discontinuance of an action of this sort. But where it appears that in reliance upon the action matters have transpired that would make it inequitable to permit a discontinuance without further terms they may be imposed. Where rights would be lost that had vested in the adverse party, or had been yielded up in reliance upon the nondiscontinuance of the action in question, such terms may be imposed. This is such a case.The right to discontinue may be denied in its entirety unconditionally in a matrimonial action in a proper case. Winans v. Winans, 124 N. Y. 140, 26 N. E. 293. | Right to discontinue matrimonial action may be denied in its entirety, unconditionally, in proper case. | "Can the right to discontinue a matrimonial action be denied in its entirety, unconditionally?" | 026235.docx | LEGALEASE-00129449-LEGALEASE-00129450 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13357 | State ex rel. Meramec Iron Co. v. Gaddy, 83 Mo. 138 | 307A+501 | It occurs to me, from this record, that the non-suit was not compulsory. It was voluntary and unnecessary. "It is only where the action of the court, on the trial, is such as to preclude the plaintiff from a recovery that it is proper to suffer a non-suit. In no other case will this court interfere, as has been decided again and again." Hageman v. Moreland, 33 Mo. 86. In Layton et al. v. Riney et al., 33 Mo. 87, which was a proceeding to contest the validity of a will, the plaintiffs offered certain witnesses to testify to certain material facts touching the issue. On objection by defendants they were excluded on the ground of incompetency. Thereupon the plaintiffs took a non-suit. The court says: "The plaintiffs were under no necessity to take a non-suit, for the court had made no decision which necessarily precluded them from recovery. It is only where the ruling of the court is such as strikes at the root of the case, and precludes the plaintiff from a recovery that we will undertake to review the action of the court below after a voluntary non-suit. A contrary practice would encourage parties to appeal upon every trivial decision of the court, and thus keep the matter in controversy in endless litigation." | It is only where the action of the court on the trial is such as to preclude the plaintiff from a recovery that it is proper to suffer a nonsuit. | Is it only where the action of the court on the trial is such as to preclude the plaintiff from a recovery that it is proper to suffer a nonsuit? | Pretrial Procedure - Memo # 1329 - C - RY.docx | ROSS-003301218-ROSS-003301219 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 13358 | Bd. of Trustees of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Markets, 622 F.3d 1335 | 25T+141 | [The determination whether a signatory like Adams had the authority to bind a non-signatory like the Board to arbitrate "turns on the specific facts of each case." Id. at 1248. This issue is for us, not an arbitrator, to resolve, id., unless the parties have clearly delegated to the arbitrator responsibility for this determination, AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Contrary to the suggestion of Citigroup, we resolve this issue without a thumb on the scale in favor of arbitration because the "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir.2002). | Determination of whether a signatory has authority to bind non-signatory to arbitrate turns on specific facts of each case. | How do courts determine the authority of a signatory to bind a non-signatory to arbitrate? | Alternative Dispute Resolution - Memo 510 - RK.docx | LEGALEASE-00019558-LEGALEASE-00019559 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13359 | Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773 | 25T+141 | In some instances, the corporate relationship between a parent and its subsidiary are sufficiently close as to justify piercing the corporate veil and holding one corporation legally accountable for the actions of the other. As a general matter, however, a corporate relationship alone is not sufficient to bind a nonsignatory to an arbitration agreement. See Keystone Shipping, 782 F.Supp. at 30-31. Nonetheless, the courts will pierce the corporate veil "in two broad situations: to prevent fraud or other wrong, or where a parent dominates and controls a subsidiary." Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir.1993); see also Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138-39 (2d Cir.1991) ("Liability ... may be predicated either upon a showing of fraud or upon complete control by the dominating corporation that leads to a wrong against third parties."). While the district court below noted that, "[c]ounsel for E & S also denied at oral-argument that its claim was properly articulated as veil-piercing," E & S now asserts that an alter ego relationship between Thomson and Rediffusion may exist. While E & S concedes that it can make no showing of fraud, it argues that Thomson sufficiently dominated Rediffusion as to justify veil piercing. | As a general matter, corporate relationship alone is not sufficient to bind nonsignatory to arbitration agreement. | Is a corporate relationship sufficient to bind a nonsignatory to an arbitration agreement? | Alternative Dispute Resolution - Memo 519 - RK.docx | ROSS-003286516-ROSS-003286517 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 13360 | Rose v. Rose, 526 N.E.2d 231 | 307A+501 | Generally, dismissals should be allowed unless the defendant will suffer some legal prejudice other than the mere prospect of a second lawsuit. Levin and Sons, Inc. v. Mathys (1980), Ind.App., 409 N.E.2d 1195, 1198. The purpose of the rule pertaining to the voluntary dismissal of an action was to eliminate evils resulting from the absolute right of a plaintiff to take a voluntary nonsuit at any stage in the proceedings before the pronouncement of judgment and after the defendant had incurred substantial expense or acquired substantial rights. See Harvey Aluminum, Inc. v. American Cyanamid Co. (2nd Cir.1953), 203 F.2d 105, 107, cert. denied 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383; Stevenson v. United States (D.Tenn.1961), 197 F.Supp. 355, 357; Toulmin v. Industrial Metal Protectives, Inc. (D.Del.1955), 135 F.Supp. 925, 927. | Generally, voluntary dismissal should be allowed unless defendant will suffer some legal prejudice other than mere prospect of second suit. Trial Procedure Rule 41(A, C). | Should dismissal be allowed if a defendant suffers some legal prejudice? | 025193.docx | LEGALEASE-00129831-LEGALEASE-00129832 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13361 | Dobson v. Crews, 164 So. 2d 252 | 307A+501 | This Court speaking through Chief Judge Carroll in Roberts v. Roberts (Fla.App., 133 So.2d 421, 1961), construed the effect of a dismissal taken by a plaintiff in an equity suit, without order of court, and after the defendant had answered, and held that the plaintiffs were not entitled to a dismissal without such order of court under Paragraph (a) of Rule 1.35. The effect of the decision in Roberts is that once answer is filed a dismissal at the instance of the plaintiff may be had only with order of court, or by stipulation of the parties. Thisis true whether the suit bein equity or at law, and we hold that the statute (F.S. 54.09 F.S.A.) insofar as it permits the taking of a nonsuit at the plaintiff's instance after the answer is filed, or after motion for summary judgment is made without stipulation of all parties who have appeared in the action, and without an order of court first had, is inconsistent with Paragraph (a) of Rule 1.35, as revised in 1962; that it conflicts with such Rule, and is, therefore, to such extent, abrogated and superseded by the Rule. We further conclude that a voluntary nonsuit or dismissal may be effected only by compliance with the provisions of Paragraph (a) of Rule 1.35 of the 1954 Rules of Civil Procedure, 1962 Revision. The nonsuit announced by the appellees-plaintiffs herein after the jury was sworn to try the case was not taken or effected in compliance with said Rule, and although it was apparently recognized by the trial judge by his action in stating to the jury that a nonsuit had been taken by the plaintiffs, and his subsequent discharge of the jury, the dismissal was not had 'upon order of court and upon such terms and conditions as the court deems proper,' as is required by Paragraph (a)(2) of the Rule. The action was, therefore, not dismissed but was pending at the time appellant-defendant moved the trial court to dismiss it for failure of the plaintiffs to go forward with the trial of the case. | Voluntary nonsuit or dismissal may be effected only by compliance with applicable rule. 30 F.S.A. Rules of Civil Procedure, rule 1.35(a). | Can a voluntary nonsuit or dismissal be effected only by compliance with applicable rules? | Pretrial Procedure - Memo # 1071 - C - SHS.docx | ROSS-003287667-ROSS-003287668 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 13362 | Mays v. Disneyland, 213 Cal. App. 2d 297 | 307A+742.1 | This case illustrates the fact that often the separation of the issues and the trial of the case piecemeal fails to accomplish anything but confusion. Attention is called to the claim made by the defendant that at the pretrial, as a result of inadvertence, there was incorporated in the pretrial order a statement that the plaintiff was upon the premises as a business invitee. It is entirely proper that before the new trial there be further pretrial proceedings to determine whether the issue of the plaintiff's status on the property should be one of the issues to be litigated. It is carefully provided in the rules for pretrial that the pretrial order may in proper cases be modified or corrected. The purpose of the pretrial is to expedite the proceedings and to facilitate the correct determination of the issues. The pretrial proceeding should not become a trap for the unwary. | Purpose of pretrial is to expedite proceedings and to facilitate correct determination of issues and pretrial proceeding should not become trap for unwary. | Should the purpose of a pretrial proceeding become a trap for the unwary? | 026260.docx | LEGALEASE-00129823-LEGALEASE-00129824 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13363 | Brown v. Hardin, 197 Kan. 517 | 307A+742.1 | The pretrial conference provided for by K.S.A. 60-216 has become an important part of our procedural process designed, among other things, to acquaint each party in advance of trial with the respective factual contentions of the parties upon matters in dispute, thus reducing the opportunity for maneuver and surprise at the trial, and enabling all parties to prepare in advance for trial. At pretrial conference the court may make any determination that will aid in the fair, orderly and efficient disposition of the action.(See Connell v. State Highway Commission, 192 Kan. 371, 388 P.2d 637.) The matters specifically mentioned in the pretrial statute are not exclusive. Many courts have come to require advance identification of witnesses to be called at trial, which practice serves a useful purpose and is a proper judicial exercise. Orders entered at pretrial conference have the full force of other orders of court and they control the subsequent course of the action, unless modified at the trial to prevent manifest injustice (K.S.A. 60-216). This latter proviso reposes in the trial court a large discretion and it is the exercise of this discretion plaintiff claims has been abused to his prejudice. Our difficulty in determining this question here as requested by plaintiff lies in the meager record before us. Neither the deposition nor a summary of it is contained in the record on appeal. All we know about the deposition is what was stated in general terms at the November 24th pretrial, it appearing that Doctor Schalker had been a medical student at the hospital at the time plaintiff was there and had some knowledge of his condiction. We think the showing made is insufficient for us to determine prejudice in the exclusionary ruling, assuming arguendo, that it may have been erroneous. This court has always been committed to the rule that one seeking reversal of a judgment because of erroneous exclusion of evidence has the burden of demonstrating prejudice has the burden of the ruling | At pretrial conference court may make any determination that will aid in fair, orderly and efficient disposition of the action. K.S.A. 60-216. | What determination will the court make at a pretrial conference? | 026327.docx | LEGALEASE-00129893-LEGALEASE-00129894 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 13364 | Conover v. Smith, 20 Ill. App. 3d 258 | 307A+44.1 | The pre-trial conference is a technique to promote the disposition of litigation by cooperation and agreement. The purpose of sanctions of Supreme Court Rule 219(c), Ill.Rev.Stat.1973, ch. 110A, s 219(c) is to coerce this cooperation rather than to dispose of litigation as a form of punishment. The record in the instant case fails to show any act on the part of plaintiff to warrant so drastic a punishment. Jancauskas v. Tow Motor Corp., 126 Ill.App.2d 289, 261 N.E.2d 753. The dismissal of a party's cause of action is drastic punishment and should not be invoked except in those cases where the actions of the party show a deliberate and contumacious disregard of the court's authority. Booth v. Sutton, 100 Ill.App.2d 410, 415-416, 241 N.E.2d 488. We think the dismissal of plaintiff's action in this case visited a harsh punishment on plaintiff for the acts and omissions of his counsel. In justice and with fundamental fairness, we think plaintiff should be given an opportunity to proceed on the merits of his action. Federenko v. Builders Plumbing Supplies, 123 Ill.App.2d 129, 137, 260 N.E.2d 41. | Purpose of sanctions of Supreme Court rule governing failure to comply with order or rules relating to discovery or pretrial conferences is to coerce cooperation rather than to dispose of litigation as a form of punishment. Supreme Court Rules, rule 219(c), S.H.A. ch. 110A, S 219(c). | What is a pretrial conference? | 026333.docx | LEGALEASE-00129921-LEGALEASE-00129922 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 13365 | Thomas v. Gray, 19 Mich. App. 90 | 307A+742.1 | We are concerned about protecting defendants' reliance on the pre-trial statement to frame the issues to be tried.This is clearly an intended objective of our pre-trial procedure. At the same time, our primary concern is to see to it that justice prevails. There was no objection by defense counsel to the introduction of unrebutted evidence that the child suffered permanent injury. The trial judge concluded that the evidence justified an award therefor. | Although intended objective of pretrial procedure is to permit party to rely on pretrial statement to frame issues to be tried, primary concern is to see that justice prevails. | Is it the primary concern of a pretrial procedure to see that justice is done? | 026334.docx | LEGALEASE-00129940-LEGALEASE-00129941 | Order, SA, Sub | 0.61 | 1 | 0 | 1 | 1 | 1 |
| 13366 | King v. Zimmerman, 266 Mont. 54 | 307A+743 | The purpose of pretrial orders is to prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order. Zimmerman, 854 P.2d at 342. [] In Zimmerman, under the unique facts present in that case, we held that permitting the introduction of a new factual matter which had never been raised in any of the pleadings, but rather was first raised during trial, would undermine the purposes pretrial orders are intended to serve. Here, however, after reviewing the pretrial order, we find the defendants' arguments without merit. The pretrial order adequately sets forth all of King's contentions as contained in the initial pleadings. Furthermore, no theories were advanced at trial which had not already been well established in the pleadings. There is no basis for the defendants to claim that they were "surprised" by the issues raised and had not been able to prepare for trial. | Purpose of pretrial orders is to prevent surprise, simplify issues, and permit counsel to prepare their case for trial on basis of pretrial orders. | Does a pretrial order prevent surprise? | Pretrial Procedure - Memo # 1420 - C - VA.docx | ROSS-003314485-ROSS-003314488 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13367 | Cook v. Nacogdoches Anesthesia Grp., L.L.P., 167 S.W.3d 476 | 307A+501 | To take a nonsuit, the party can file either a written motion to dismiss or make an oral announcement of the nonsuit in open court. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). The movant may choose to take a nonsuit as to some parties and claims without nonsuiting the rest of the parties and claims. See Tex.R. Civ. P. 162, 163; see Mainland Sav. Ass'n v. Wilson, 545 S.W.2d 491, 493 (Tex.App.-Houston [1st Dist.] 1976, no writ). A plaintiff may take a nonsuit at anytime before the trial court grants a summary judgment. Leon Springs Gas Co. v. Rest. Equip. Leasing Co., 961 S.W.2d 574, 577 (Tex.App.-San Antonio 1997, no pet.); Taliaferro v. Smith, 804 S.W.2d 548, 550 (Tex.App.-Houston [14th Dist.] 1991, no writ). The party requesting a nonsuit has an absolute right to a nonsuit at the moment the motion is filed with the clerk, so long as the motion is timely filed. See Hooks v. Fourth Court of Appeals, 808 S.W.2d 56, 59 (Tex.1991); BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 840 (Tex.1990). A plaintiff's right to a nonsuit exists from the time the plaintiff files a motion for nonsuit or asks for one in open court. Greenberg, 640 S.W.2d at 872. The granting of a nonsuit is merely a ministerial act. Id. The plaintiff's right to take a nonsuit is unqualified and absolute as long as the defendant has not made a claim for affirmative relief. Millard, 800 S.W.2d at 840. | The party requesting a nonsuit has an absolute right to a nonsuit at the moment the motion is filed with the clerk, so long as the motion is timely filed. | Does a moving party have an absolute right to nonsuit when a motion for voluntary nonsuit is timely? | 026602.docx | LEGALEASE-00130008-LEGALEASE-00130010 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13368 | Rose v. Rose, 526 N.E.2d 231 | 307A+501 | Generally, dismissals should be allowed unless the defendant will suffer some legal prejudice other than the mere prospect of a second lawsuit. Levin and Sons, Inc. v. Mathys (1980), Ind.App., 409 N.E.2d 1195, 1198. The purpose of the rule pertaining to the voluntary dismissal of an action was to eliminate evils resulting from the absolute right of a plaintiff to take a voluntary nonsuit at any stage in the proceedings before the pronouncement of judgment and after the defendant had incurred substantial expense or acquired substantial rights. See Harvey Aluminum, Inc. v. American Cyanamid Co. (2nd Cir.1953), 203 F.2d 105, 107, cert. denied 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383; Stevenson v. United States (D.Tenn.1961), 197 F.Supp. 355, 357; Toulmin v. Industrial Metal Protectives, Inc. (D.Del.1955), 135 F.Supp. 925, 927. | Generally, voluntary dismissal should be allowed unless defendant will suffer some legal prejudice other than mere prospect of second suit. Trial Procedure Rule 41(A, C). | "Should dismissal of a plaintiff's action be allowed, even if a defendant suffers a prospect of a second lawsuit?" | 026605.docx | LEGALEASE-00130011-LEGALEASE-00130012 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13369 | People v. Hayward, 54 Misc. 3d 19 | 399+1 | The information charging defendant with aggressive begging was jurisdictionally defective, because it failed to allege facts establishing a required element of the charge-that defendant did "solicit, ask or beg with the purpose of obtaining an immediate donation of money or other thing of value or soliciting the sale of goods or services." (Administrative Code " 10"136[a][2]). In this regard, the sworn factual allegations that defendant was on a public sidewalk when he "approach[ed] pedestrians while holding CDs," spoke to these individuals and followed them for approximately one block, were insufficient to support an inference that defendant's purpose was to "obtain an immediate donation" or "solicit[ ][a] sale" (compare People v. Ananaba, 49 Misc.3d 127 [A], 2015 N.Y. Slip Op. 51376[U], 2015 WL 5707149 [App.Term, 1st Dept.2015], lv. denied 26 N.Y.3d 1142, 32 N.Y.S.3d 56, 51 N.E.3d 567 [2016] [defendant handed compact discs to pedestrians and asked "for five dollars"]). | Allegations that defendant was on a public sidewalk when he approached pedestrians while holding compact discs (CD), spoke to the pedestrians, and followed them for approximately one block, were insufficient to support an inference that defendant's purpose was to obtain an immediate donation or solicit a sale, as required to support conviction for aggressive begging. New York City Administrative Code, S 10-136(a)(2). | Does soliciting a sale support a conviction for aggressive begging? | 047456.docx | LEGALEASE-00129805-LEGALEASE-00129806 | Order, SA, Sub | 0.57 | 1 | 0 | 1 | 1 | 1 |
| 13370 | Qualcomm Inc. v. Am. Wireless License Grp., 980 So. 2d 261 | 25T+138 | 15. Under the FAA, this Court must conduct a two-step inquiry: first, whether the parties intended to arbitrate the dispute, and second, if they did intend to arbitrate, "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." East Ford, 826 So.2d at 713 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). This Court has embraced a "liberal federal policy favoring arbitration agreements" and will liberally construe agreements with a presumption in favor of arbitration. Terminix Int'l, Inc. v. Rice, 904 So.2d 1051, 1054 (Miss.2004). However, because arbitration provisions are contractual in nature, the general rule is that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Adams v. Greenpoint Credit, LLC, 943 So.2d 703, 708 (Miss.2006) (internal citations and quotations omitted). Thus, while "we will read the reach of an arbitration agreement between parties broadly, [that] is a different matter from the question of who may invoke its protections." Westmoreland v. Sadoux, 299 F.3d 462, 465 (5th Cir.2002) (emphasis supplied). This is so because "[a]n agreement to arbitrate is a waiver of valuable rights that are both personal to the parties and important to the open character of our state and federal judicial systems-an openness this country has been committed to from its inception." Id. | While court will read the reach of an arbitration agreement between parties broadly, that is a different matter from the question of who may invoke its protections; this is so because an agreement to arbitrate is a waiver of valuable rights that are both personal to the parties and important to the open character of state and federal judicial systems, an openness to which the country has been committed from its inception. | Do courts construe the reach of an arbitration agreement broadly? | 007300.docx | LEGALEASE-00130979-LEGALEASE-00130980 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 13371 | Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857 | 25T+143 | Appellants argue their contract claim is not referable to arbitration. The principal contention in this regard stems from the limited nature of the relief which the arbitrator is empowered to provide under the contract. The arbitration article of the principal agreement, incorporated by reference in the Long Haul Agreement, provides that: "Any claims for compensation shall be limited to a maximum of six months retroactivity from the date the claim is submitted to the employer in writing." Appellants seek broader relief under the contract by demanding back pay for four years, relief which they contend they are entitled to under state law. That may or may not be the case, but the collective bargaining agreement binds them to arbitrate all issues arising out of the interpretation or application of the agreement. A limitation on the arbitrator's power is not a reason for bypassing arbitration where the claim is made upon the contract itself and is within the scope of the arbitration clause. | A limitation on the arbitrator's power is not a reason for bypassing arbitration where claim is made upon the contract itself and is within the scope of the arbitration clause. | Is limitation on an arbitrators power a reason for bypassing arbitration? | 007403.docx | LEGALEASE-00131364-LEGALEASE-00131365 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13372 | Maria Victoria Naviera, S.A. v. Cementos Del Valle, S.A., 759 F.2d 1027 | 25T+143 | Appellant also contends that it should be relieved of its obligation to arbitrate disputes arising under the charter party by its alleged unilateral cancellation of the charter party after the first voyage and by its alleged refusal to ship any of its cement on the second voyage. Mr. Aguilar testified that he told Agenmar's representative after the first voyage that appellant wished to have no further dealings with appellee, but appellee's representative was not present when the statement was made. Appellee contends that it had no notice of appellant's attempted cancellation of the charter party and that appellant's liability as a charterer is not affected by its alleged failure to ship its cement on the second voyage under the charter party. Since the district court correctly held that the agreement to arbitrate was unlimited in scope, it properly deferred to the arbitrator for the determination of these issues. In an action to compel arbitration, the function of the court is limited to determining whether there is an agreement to arbitrate the underlying dispute and, if so, whether the agreement to arbitrate has been breached. Where the scope of the agreement is unlimited, issues addressed to the liability of the parties and to the cancellation of the underlying agreement, rather than the agreement to arbitrate, are to be determined by the arbitrator. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967); Wilson Wear, Inc. v. United Merchants & Mfrs., Inc., 713 F.2d 324, 327"28 (7 Cir.1983). | Where scope of arbitration agreement was unlimited, issues addressed to liability of parties and cancellation of underlying agreement, rather than agreement to arbitrate, were to be determined by arbitrator. | "When the scope of the arbitration agreement is unlimited, what is to be determined by the arbitrator?" | 007407.docx | LEGALEASE-00131368-LEGALEASE-00131369 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13373 | McMahon v. RMS Elecs., 618 F. Supp. 189 | 25T+143 | The tort claims considered in the above authorities are distinguishable fromatortclaim which is a reformulation of a breach of contract claim. Whena tort claim is based insubstantial part on the contractual rights and responsibilities of the two parties, then it must be arbitrated as required by an arbitration clause. Altshul Stern & Co., Inc. v. Mitsui Bussan Kaisha, Ltd., 385 F.2d 158, 159 (2d Cir.1967). Thus, in Tac Travel America Corp. v. World Airways, Inc., 443 F.Supp. 825 (S.D.N. Y.1978), the court stayed a defamation claim for alleged wrongful statements made during the execution of a charter agreement. The court's decision was based on the "peculiar factual circumstances" of the case in which the charter agreement specifically addressed the liability of the charterer for any statements made during the charter flight. Id. at 827-28. Under these circumstances, the defamation claim was encompassed by contractual agreement between the parties. | When a tort claim is based in substantial part on contractual rights and responsibilities of the two contracting parties, then it must be arbitrated as required by arbitration clause. | When can a tort claim be arbitrated? | Alternative Dispute Resolution - Memo 550 - RK.docx | ROSS-003287240-ROSS-003287241 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13374 | United States v. Shober, 489 F. Supp. 393 | 306+50 | Defendant's first claim, that the money given to Congressman Flood was part of a traditional business practice of tendering political contributions to promote a favorable business climate for federal funds which Hahnemann needed, is essentially a challenge to the truth of the allegation that defendant "corruptly" gave the Congressman money to influence his official action on Hahnemann's application for federal funding. Whether defendant paid this money to the Congressman with "corrupt" intent or merely as a "traditional" political gift is a question for the jury to decide at trial. Similarly, defendant's contention that he is not a briber but a victim of extortion also reaches the merits of the charge made in the indictment. This question will also be one for the jury to decide. In essence, both require a determination of defendant's intent, which is a question of fact. Where a pre-trial motion raises questions of fact which are "interwined with issues involving the merits, a determination of that matter must be deferred until trial". United States v. Greater Syracuse Board of Realtors, Inc., 449 F.Supp. 887, 899 (N.D.N.Y.1978). | In prosecution for mail fraud and bribery, whether defendant paid certain money to congressmen with "corrupt" intent to influence his official action on defendant's application for federal funding or merely as part of a "traditional" business practice of tendering political contributions to promote favorable business climate for federal funds which defendant needed was question for jury to decide at trial; similarly, whether defendant was victim of extortion or bribery was question for jury to decide. | Is the jury required to determine the defendant's intent for bribery cases? | 011075.docx | LEGALEASE-00130360-LEGALEASE-00130361 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 13375 | United States v. Nagin, 810 F.3d 348 | 63+1(1) | We follow the Supreme Court's direction in Skilling and look to " 201(b) to give substance to the prohibition on honest-services fraud. In United States v. Valle, we held that an official may be convicted of bribery under " 201(b)(2) "if he has corruptly entered into a quid pro quo, knowing that the purpose behind the payment that he has ... agreed to receive [ ] is to induce or influence him in an official act, even if he has no intention of actually fulfilling his end of the bargain." 538 F.3d 341, 347 (5th Cir.2008). Accordingly, pursuant to Valle, a conviction for bribery under " 201(b)(2) does not require proof that the official intended to be influenced in his official actions. See id. Viewed through Skilling 's lens, Valle instructs that honest-services fraud also does not require such proof. See Skilling, 561 U.S. at 412, 130 S.Ct. 2896; Valle, 538 F.3d at 347. | A conviction for bribery or "honest-services" wire fraud does not require proof that the official intended to be influenced in his official actions. 18 U.S.C.A. S 201(b)(2). | Does the conviction for bribery require proof that the official intended to be influenced in his official actions? | Bribery - Memo # 74 - C - JL.docx | LEGALEASE-00020228-LEGALEASE-00020229 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 13376 | United States v. Cisneros, 826 F.3d 1190 | 67+4 | Similar to Oregon's burglary statute, generic burglary has "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). However, the "building or structure" element of generic burglary does not include booths, vehicles, boats, or aircrafts. See id. ("A few States' burglary statutes ... define burglary more broadly ... by including places, such as automobiles and vending machines, other than buildings."). | Generic burglary has the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime; however, the "building or structure" element of generic burglary does not include booths, vehicles, boats, or aircrafts. | Does generic burglary include entry into vehicles and boats? | Burglary - Memo 20 - RK.docx | ROSS-003300668-ROSS-003300670 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 13377 | United States v. Howard, 742 F.3d 1334 | 350H+1285 | Ala.Code " 13A"7"1(2). A number of those things included in the definition of "building" (such as vehicles and watercraft) fall outside the "building or structure" element of generic burglary, making the burglary statute non-generic. See Rainer, 616 F.3d at 1215.So we have to determine if the statute is divisible. | Alabama's third-degree burglary statute, which was non-generic because the statutory definition of "building" included vehicles and watercraft, which fell outside the "building or structure" element of generic burglary, was an indivisible statute, and thus, defendant's prior convictions under that statute did not qualify as predicate burglary convictions for purposes of application of the Armed Career Criminal Act (ACCA) in defendant's sentencing for being a felon in possession of a firearm; the Alabama statute's definition of "building" was not drafted in the alternative, but instead, the statute provided one definition of building and then included a non-exhaustive list of things that fell under that definition, including any vehicle or watercraft used for the lodging of persons. 18 U.S.C.A. S 924(e); Ala.Code 1975, SS 13A-7-1(2), 13A-7-7(a). | Does generic burglary include entry into vehicles and boats? | 012821.docx | LEGALEASE-00131286-LEGALEASE-00131287 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 13378 | State v. Simons, 65 N.C. App. 164 | 67+10 | Burglary is defined as the breaking and entering of a dwelling or sleeping apartment during the nighttime with intent to commit a felony therein. If the burglarized dwelling is occupied, the crime is burglary in the first degree; but if it is unoccupied, however momentarily, and whether known to the intruder or not, the crime is burglary in the second degree. See State v. Tippett; N.C.Gen.Stat. " 14-51 (1981); N.C.Gen.Stat. " 14-54 (1981). Because there is no positive or direct evidence as to when the defendant broke and entered Ms. Wilkes' home, the trial court's failure to charge on second degree burglary is prejudicial error. | If a burglarized dwelling is occupied, the crime is "burglary in the first degree," but if it is unoccupied, however momentarily, and whether known to the intruder or not, the crime is "burglary in the second degree." G.S. SS 14-51, 14-54. | What is burglary in the first degree? | 013186.docx | LEGALEASE-00131325-LEGALEASE-00131326 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 13379 | State v. Mestas, 2370 P.3d 805 | 67+9(2) | 13] To determine the applicability of the burglarystatute to the evidence of Defendant's conduct adduced at trial, we must first consider whether the "entry" Defendant committed is "unauthorized." See Section 30"16"3(A). In other words, we ask whether the entry described by the evidence at trial "is the type of entry the Legislature intended Section 30"16"3 to deter." Muqqddin, 2012"NMSC"029, 59, 285 P.3d 622. A given entry is "unauthorized" if it violates or potentially violates the possessory rights (particularly the right to exclude) and privacy interests of a protected structure's rightful occupant. Id. 41"43, 60. | A given entry is "unauthorized" within meaning of the burglary statute if it violates or potentially violates the possessory rights, particularly the right to exclude, and privacy interests of a protected structure's rightful occupant. West's NMSA S 30-16-3. | What is unauthorized entry for the crime of burglary? | 013284.docx | LEGALEASE-00131441-LEGALEASE-00131442 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13380 | Alexander v. Haffner, 323 Mo. 1197 | 307A+501 | The judgment of the trial court seems to have been influenced, if not entirely controlled, by the decision of the Kansas City Court of Appeals in Weaver v. Woodling, 220 Mo. App. 970, 272 S. W. 373. It was ruled in that case that, where an original summons is returned "not found" and the plaintiff fails thereafter to sue out successive writs from term to term, a discontinuance of the case results by operation of law, and a judgment rendered upon service subsequently had is void. At common law a discontinuance was "the chasm or interruption in proceedings occasioned by the failure of the plaintiff to continue the suit regularly from time to time, as he ought." Bouvier's Law Dictionary, title, "Discontinuance," citing 3 Bla. Com. 296. A technical discontinuance is unknown to our practice. A civil action under our Code is not commenced by the suing out and service of a writ, but by the filing of a petition "and suing out of process therein." After a suit is so commenced, it is automatically continued from term to term by statute until finally disposed of by some order or judgment of the court. Section 2354, Rev. St. 1919. Consequently no formal entry of continuance is necessary to keep the case in court. With us, and in modern practice generally, the term "discontinuance" is used as indicating merely that plaintiff has taken a nonsuit, or that there has been a dismissal. Thurman v. James, 48 Mo. 235, 236; Ferber v. Brueckl (Mo. App.) 7 S.W.(2d) 279; English v. Dickey, 128 Ind. 175, 182, 27 N. E. 495, 13 L. R. A. 40; Germania Fire Ins. Co. v. Francis, 52 Miss. 457, 467, 24 Am. Rep. 674; Parsons v. Hill, 15 App. D. C. 532; 9 R. C. L. s 2, pp. 191, 192. The ruling in Weaver v. Woodling, supra, was disapproved in Ferber v. Brueckl (Mo. Sup.) 17 S.W.(2d) 524. | Term "discontinuance" held to indicate merely that plaintiff has taken nonsuit or that dismissal has been had. | "Is the term ""discontinuance"" held to indicate merely that a plaintiff has taken a nonsuit or that dismissal has been had?" | 026074.docx | LEGALEASE-00130779-LEGALEASE-00130780 | Order, SA, Sub | 0.94 | 1 | 0 | 1 | 1 | 1 |
| 13381 | Pershing v. Ward, 34 N.M. 298 | 307A+508 | After hearing the testimony, the court was able to announce his decision only as to a part of the case. He said that the tenants had taken leases in good faith and should be protected, and that he was also satisfied that the plaintiff had failed to make out his case on the proof. He found that there was no trust in plaintiff's favor, but that the deed was intended to be, and was, a mortgage. He reserved his decision as to what effect the question of the statute of limitations might have as against the counterclaim, and also as to the correct amount thereof, if not barred. He desired to consider that matter further. The defendant, after learning that the plaintiff had failed to prevail on his theory of a trust, moved the court for permission to dismiss his counterclaim without prejudice. This motion the plaintiff resisted, claiming that he would be prejudiced by the granting thereof. After having the matter briefed, the court decided in favor of defendant, and allowed him to dismiss his counterclaim without prejudice, and entered a decree in which the only thing adjudicated was that the defendant was not a trustee for plaintiff, but a mortgagee in possession, and dismissed plaintiff's complaint. This appeal followed. | Under section 4295, Code of 1915, a defendant who has filed a counterclaim against plaintiff in a cause tried to the court has the right to dismiss without prejudice before judgment is rendered. | "Does a defendant, in a cause tried to court, have a right to dismiss his counterclaim without prejudice before judgment?" | 026076.docx | LEGALEASE-00130812-LEGALEASE-00130813 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 13382 | In re Carton, 48 N.J. 9 | 307A+747.1 | As we have already said, appellant was correct in asking that the disposition of the separate defense be noted in the pretrial order. We think, too, that a trial court should not order counsel to sign a pretrial order he questions. The Manual of Pretrial Practice (Rev.1959), prepared by the Administrative Office of the Courts, which was not cited before the trial court, reads (p. 3): "The pretrial order is, of course, a step in the cause with the full force of other orders of the court. However, it is also a stipulation of the parties. The parties are, therefore, entitled to have included therein any legal or factual contention deemed important to their claim or defense and covered by the pleadings. This right must be recognized by the pretrial judge and Counsel should never be required to sign an order not considered by them adequate to cover their position." (Italics added.) | The sense of rule that pretrial order shall be signed by court and attorneys for the parties is that counsel should never be required to sign an order he does not consider adequate to cover his position. R.R. 4:29-1(b). | Should a counsel sign an order that he does not consider adequate to cover his position? | 026763.docx | LEGALEASE-00130311-LEGALEASE-00130312 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 13383 | Palace Expl. Co. v. Petroleum Dev. Co., 316 F.3d 1110 | 170A+1922 | Palace correctly points out that "[a]s a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, "provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits." " Evans v. McDonald's Corp., 936 F.2d 1087, 1090"91 (10th Cir.1991) (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure " 1219 at 194 (1990)). Consistent with this general rule is Federal Rule of Civil Procedure 16(e), which provides that a pretrial order controls "the subsequent course of the action unless modified by a subsequent order." Rule 16's purpose, however, is "to avoid surprise, not foment it." Wilson v. Muckala, 303 F.3d 1207, 1216 (10th Cir.2002). Claims raised for the first time in a pretrial order must be very carefully considered, to avoid deprivation of fair notice and to avoid "abuse by those who employ a sporting theory of justice." Id. at 1215. Therefore, we very cautiously examine whether the district court properly excluded evidence relating to Palace's claim for legal damages. | Purpose of rule providing that a pretrial order controls subsequent course of the action unless modified by a subsequent order is to avoid surprise, not foment it. Fed.Rules Civ.Proc.Rule 16, 28 U.S.C.A. | Does the pretrial order govern the subsequent course of the action unless modified by a later order? | Pretrial Procedure - Memo # 1674 - C - AP.docx | ROSS-003287907-ROSS-003287908 | Order, SA, Sub | 0.83 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13384 | 150 Centreville v. Lin Assocs. Architects, PC, 39 Misc. 3d 513 | 307A+331 | A party has a duty to preserve, protect, and safeguard evidence when it has notice that the evidence is relevant to litigation or should have known that the evidence might be relevant to future litigation. See, e.g., VOOM HD Holdings LLC v. EchoStar Satellite, L.L.C., 93 A.D.3d 33, 939 N.Y.S.2d 321 [appellate court found that the destruction of emails for a four-month period, when a "litigation hold" should have been placed on electronically stored information, was, at a minimum, "grossly negligent"], aff'g 2010 WL 8400073, 2010 N.Y. Slip Op. 33759(U); S.B. v. U.B., 38 Misc.3d 487, 953 N.Y.S.2d 831 ["(A) party is responsible for preserving evidence when they are on notice that it may be needed for litigation. [citation omitted]. This responsibility to preserve evidence may extend to items that are not in the possession of a party when that party negligently fails to take steps to assure its preservation."]. | A party has a duty to preserve, protect, and safeguard evidence when it has notice that the evidence is relevant to litigation or should have known that the evidence might be relevant to future litigation. | "Do litigants have a duty to preserve evidence which they know, or reasonably should know, is relevant in the action?" | 026812.docx | LEGALEASE-00130358-LEGALEASE-00130359 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 13385 | Wenrich v. Employers Mut. Ins. Companies, 35 Kan. App. 2d 582 | 307A+749.1 | As the Wenrichs properly state, a pretrial order has the full force of other orders entered by the court and controls the subsequent course of litigation unless modified to prevent manifest injustice.See K.S.A. 60-216(e); Sampson v. Hunt, 233 Kan. 572, 578, 665 P.2d 743 (1983). In the absence of an attempt to modify the pretrial order, such order is binding and controls the subsequent course of trial. Sieben v. Sieben, 231 Kan. 372, 377, 646 P.2d 1036 (1982). | In the absence of an attempt to modify the pretrial order, such order is binding and controls the subsequent course of trial. | Does a pretrial order bind and control the subsequent course of trial? | 026871.docx | LEGALEASE-00131209-LEGALEASE-00131210 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 13386 | Woodward v. Heritage Const. Co., 887 N.E.2d 994 | 307A+749.1 | "The purpose of a pre-trial order is to recite agreements made by the parties during the pre-trial hearing and once entered, a pre-trial order shall control the subsequent course of action unless modified thereafter to prevent manifest injustice." Hamlin v. Sourwine, 666 N.E.2d 404, 409 Ind.Ct.App.1996) (citing T.R. 16 (J)). In considering whether to permit a modification of the pretrial order, the trial court considers both the danger of surprise or prejudice to the opponent and the goal of doing justice to the merits of the claim. Daub v. Daub,629 N.E.2d 873, 875 (Ind.Ct.App. trans. denied. The court may also consider the extent to which permitting a late amendment will disrupt an orderly and efficient trial of the case or of other cases in the court and whether there has been bad faith or willfulness in failing to comply with the court's existing order. The question of whether particular witnesses or exhibits should be excluded from evidence because they have not been submitted inalist of witnesses and exhibits is committed to the discretion of the trial court. "Although werecognize the binding effect of a pretrial order, this does not mean that it must be rigidly and pointlessly adhered to at trial." Rust-Oleum Corp. v. Fitz, 801 N.E.2d 754, 758(Ind.Ct.App.2004) (citing Whisman v. Fawcett, 470 N.E.2d 73, 76 (Ind.1984)), trans. denied. | Although a pretrial order has a binding effect, this does not mean that it must be rigidly and pointlessly adhered to at trial. | Should a pretrial order be rigidly and pointlessly adhered to at a trial? | Pretrial Procedure - Memo # 1752 - C - NE.docx | ROSS-003300671-ROSS-003300672 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 13387 | City of New York v. State, 138 Misc. 2d 768 | 307A+331 | A party cannot be compelled to create new documents, however, just to satisfy its adversary's disclosure requests. (Corriel v. Volkswagen of Am., 127 A.D.2d 729, 512 N.Y.S.2d 126; Durham Med. Search v. Physicians Intl. Search, 122 A.D.2d 529, 504 N.Y.S.2d 910; Jonassen v. A.M.F., Inc., 104 A.D.2d 484, 479 N.Y.S.2d 81; Welsh v. New York City Tr. Auth., 78 A.D.2d 550, 432 N.Y.S.2d 27; First United Fund v. American Banker, 127 Misc.2d 247, 485 N.Y.S.2d 489.) To be entitled to production, the moving party must make at least a preliminary showing that the items sought exist, are relevant and are, or at least should be, in the possession, custody or control of the party served. (Pickens v. Hercules, 134 A.D.2d 222, 521 N.Y.S.2d 16; Linton v. Lehigh Valley R.R. Co., 25 A.D.2d 334, 269 N.Y.S.2d 490; accord, Norman v. Young, 422 F.2d 470; cf., Fugazy v. Time, Inc., 24 A.D.2d 443, 260 N.Y.S.2d 853.) In addition, when deciding whether to compel or excuse compliance with the demand, the Court must weigh the relevancy of the matter sought and its availability from other sources against the burden production will visit on the producing party. (Gilbert-Frank Corp. v. Guardsman Life Ins. Co., 78 A.D.2d 798, 433 N.Y.S.2d 124; Ball v. State of New York, 101 Misc.2d 554, 421 N.Y.S.2d 328; see also, Cynthia B. v. New Rochelle Hosp. Med. Center, 60 N.Y.2d 452, 470 N.Y.S.2d 122, 458 N.E.2d 363.) By this means, a balance is maintained with each side bearing its own share of the cost of discovery. (Rosado v. Mercedes-Benz of North Am., 103 A.D.2d 395, 480 N.Y.S.2d 124.) | Party cannot be compelled to create new document just to satisfy adversary's disclosure requirements. McKinney's CPLR 3120(a). | Can a party be compelled to create a new document just to satisfy adversary's disclosure requirements? | Pretrial Procedure - Memo # 2051 - C - SHS.docx | ROSS-003301336-ROSS-003301338 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 13388 | Bell Atl.-Pennsylvania v. Pennsylvania Pub. Util. Comm'n, 763 A.2d 440 | 371+2001 | The claim that the USF involves the imposition of an unauthorized tax must also be rejected. As the Consumer Advocate also pointed out as to the Consumer Education Program, a tax is a measure which generates revenue for the support of government, citing BLACK'S LAW DICTIONARY, 1457 (6 th ed.1991), based upon judicial authority, e.g., Alabama Power Co. v. Federal Power Commission, 134 F.2d 602, 608 (5 th Cir.1943).Accord, Philadelphia v. Pennsylvania Public Utility Commission, 676 A.2d 1298, 1307 (Pa.Cmwlth.1996) appeal denied, 546 Pa. 657, 684 A.2d 558. | "Tax" is a measure which generates revenue for support of government, based upon judicial authority. | Is tax a measure which generates revenue based on judicial authority? | 044581.docx | LEGALEASE-00131013-LEGALEASE-00131015 | Order, SA, Sub | 0.81 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13389 | Bill DeLuca Enterprises v. Comm'r of Revenue, 431 Mass. 314 | 371+2001 | "It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation." Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 75 L.Ed. 383 (1931). See Hillsboro Nat'l Bank v. Commissioner of Internal Revenue, 460 U.S. 370, 377, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1983), citing Burnet v. Sanford & Brooks Co., supra ("[a]n annual accounting system is a practical necessity if the [F]ederal income tax is to produce revenue ascertainable and payable at regular intervals"); White, An Essay on the Conceptual Foundations of the Tax Benefit Rule, 82 Mich. L.Rev. 486, 490"491 (1983), and authorities cited. In Burnet v. Sanford & Brooks Co., supra, a taxpayer reported net losses on a particular business contract for the 1913"1915 tax years. Id. at 361, 51 S.Ct. 150 In 1920, the taxpayer recovered significant income on the contract after obtaining a judgment against the United States government, its customer. Id. at 362, 51 S.Ct. 150. Although, over the course of the decade, the contract produced a net operating loss, the United States Supreme Court allowed the Commissioner to tax the 1920 recovery as if the losses in previous years had not occurred. Id. at 367, 51 S.Ct. 150. In 1920, taxpayers could not carry forward net operating losses (NOL) as they can today. Id. Cf. 26 U.S.C. " 172 (1998). The Court reasoned that the Legislature had to choose some regular method of assessing taxes, and, if transactional inequities flowed from the annual assessment of income taxes, relief could "be afforded only by legislation, not by the courts." Burnet v. Sanford & Brooks Co., supra at 367, 51 S.Ct. 150. | Essence of any system of taxation is that it should produce revenue ascertainable, and payable to the government, at regular intervals, since only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation. | "Does the system of taxation produce revenue ascertainable, and payable to the government?" | Taxation - Memo # 108 - C - SU.docx | ROSS-003301676-ROSS-003301678 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13390 | Nw. Energetic Servs. v. California Franchise Tax Bd., 159 Cal. App. 4th 841 | 371+2002 | The distinction between a tax and a fee has been well-discussed in Proposition 13 cases. The essence of a tax is that it raises revenue for general governmental purposes and is "compulsory rather than imposed in response to a voluntary decision ... to seek ... benefits." (Sinclair Paint, supra, 15 Cal.4th at p. 874, 64 Cal.Rptr.2d 447, 937 P.2d 1350; see Professional Scientists, supra, 79 Cal.App.4th at p. 944, 94 Cal.Rptr.2d 535 ["Ordinarily, "taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted" and "[m]ost taxes are compulsory rather than imposed in response to a voluntary decision to develop or to seek other governmental benefits or privileges." "].) A fee, on the other hand, funds a regulatory program or compensates for services or benefits provided by the government. (Sinclair Paint, supra, at pp. 874"875, 64 Cal.Rptr.2d 447, 937 P.2d 1350.). | The essence of a "tax" is that it raises revenue for general governmental purposes and is compulsory rather than imposed in response to a voluntary decision to seek benefits; a "fee," on the other hand, funds a regulatory program or compensates for services or benefits provided by the government. | Why are taxes ordinarily imposed? | 044716.docx | LEGALEASE-00130837-LEGALEASE-00130838 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 13391 | Mcleod v. Columbia Cty., 278 Ga. 242 | 371+2001 | This Court has defined a tax as " 'an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes, and not as payment for a special privilege or a service rendered.' [Cit.]" Luke v. Dept. ofNatural Resources, 270 Ga. 647, 648(1), 513 S.E.2d 728 (1999). A charge is generally not a tax if its object and purpose is to provide compensation for services rendered. Gunby v. Yates, supra at 19, 102 S.E.2d 548. Gunby looked to the law of other states, including Alabama and Kentucky. | A charge is generally not a "tax" if its object and purpose is to provide compensation for services rendered. | Is charge a tax if the object and purpose of such charge is to provide compensation for services rendered? | Taxation - Memo # 190 - C - SS.docx | ROSS-003304035-ROSS-003304036 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13392 | Conlen Grain & Mercantile v. Texas Grain Sorghum Producers Bd., 519 S.W.2d 620 | 371+2001 | The refund option available to a producer who has paid the assessment presents a somewhat more difficult question, but we agree with appellants that the essential nature of the assessment is not altered thereby. A tax is a burden or charge imposed by the legislative power of the state upon persons or property to raise money for public purposes. See Clegg v. State, 42 Tex. 605; 1 Cooley on Taxation, 4th ed. 1924, s 1. When the state in the exercise of its power to raise revenue for public purposes exacts an enforced contribution of money to be expended by an agency of the state, the exaction must be regarded as a tax even though the taxpayer may obtain a refund upon request. Provision for refunding assessments to those who comply with refund requirements does not alter the fact that the payments are imposed upon and extracted from producers by governmental authority for a public purpose. The power of the state is used to deprive the producer of money, or the use of his money, for at least the time necessary to process an application for refund. It also appears that the primary purpose of the assessment is to raise revenue. We hold that assessments under Article 55c are taxes. | "Tax" is burden or charge imposed by legislative power of state upon persons or property to raise money for public purposes. Vernon's Ann.Civ.St. art. 55c. | On whom is a tax imposed upon? | 044910.docx | LEGALEASE-00130528-LEGALEASE-00130529 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13393 | Stevenson v. New York State Tax Appeals Tribunal, 106 A.D.3d 1146 | 371+2001 | A special ad valorem levy is defined to cover charges "imposed upon benefitted real property in the same manner and at the same time as taxes for municipal purposes to defray the cost, including operation and maintenance, of a special district improvement or service" (RPTL 102[14] ). A special assessment is a charge for similar purposes that is "imposed upon benefitted real property in proportion to the benefit received by such property" (RPTL 102 [15] ). The Sanitary District meets the definition of a special district (see RPTL 102[16] ), and was created to maintain and operate the sewer system serving the properties within the district. "Taxes are public burdens imposed generally for governmental purposes benefiting the entire community, whereas an ad valorem levy is an assessment imposed for specific municipal improvements which confer a special benefit on the property assessed beyond that conferred generally" (Matter of Crandall Pub. Lib. v. City of Glens Falls, 216 A.D.2d 814, 815, 629 N.Y.S.2d 100 [1995]; see Watergate II Apts. v. Buffalo Sewer Auth., 46 N.Y.2d 52, 58, 412 N.Y.S.2d 821, 385 N.E.2d 560 [1978] ). All parcels within a special district are generally deemed to receive, at least to some extent, some actual benefit from the district's services or improvements, rendering all such parcels assessable by the district (see Skinner v. Village of Sylvan Beach, 113 A.D.2d 1000, 1002, 494 N.Y.S.2d 580 [1985]; see also Matter of Palmer v. Town of Kirkwood, 288 A.D.2d 540, 542, 731 N.Y.S.2d 814 [2001]; compare New York Tel. Co. v. Supervisor of Town of Oyster Bay, 4 N.Y.3d 387, 394, 796 N.Y.S.2d 7, 828 N.E.2d 964 [2005] ). The resolution creating the Sanitary District states that any costs of maintenance and operation of the district not "derived from sewer use rates .. and other available funds .. shall be assessed, levied and collected from the several lots and parcels of land in said [d]istrict in the same manner and at the same time as other County charges on an ad valorem | "Taxes" are public burdens imposed generally for governmental purposes benefiting the entire community. | Are taxes public burdens imposed to benefit the entire community? | 045250.docx | LEGALEASE-00130601-LEGALEASE-00130603 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 13394 | Empress Casino Joliet Corp. v. Blagojevich, 674 F. Supp. 2d 993 | 371+2001 | Characterizing the Acts as imposing a tax for TIA purposes is consistent with the standard employed by a majority of circuits, which have held that an assessment is a tax if it "is for revenue raising purposes," regardless of whether the proceeds go to a general fund or are devoted to a more specialized purpose. See Schneider Transp., Inc. v. Cattanach, 657 F.2d 128, 132 (7th Cir.1981) (vehicle registration fees deposited into fund used for transportation purposes, including highway construction, is a tax for TIA purposes); see also Wright v. McClain, 835 F.2d 143, 145 (6th Cir.1987) (collecting cases). The assessments on the casinos raised revenue that the Illinois legislature chose to devote to assisting the Illinois horse racing industry. Though the question is not free from doubt, the Court concludes that the racetracks have shown that the assessments imposed by the 2006 and 2008 Racing Acts are taxes for purposes of the TIA. | An assessment is a tax if it is for revenue raising purposes, regardless of whether the proceeds go to a general fund or are devoted to a more specialized purpose. | Is an assessment a tax if it is for revenue raising purpose? | 046102.docx | LEGALEASE-00130737-LEGALEASE-00130739 | Order, SA, Sub | 0.83 | 1 | 0 | 1 | 1 | 1 |
| 13395 | Storedahl Properties v. Clark Cty., 143 Wash. App. 489 | 371+2001 | In contrast, charges imposed for purposes other than raising money to fund the public treasury, such as for regulating activities, are not taxes and are not subject to constitutional taxation constraints. Samis Land Co. v. City of Soap Lake, 143 Wash.2d 798, 805, 23 P.3d 477 (2001); Dean v. Lehman, 143 Wash.2d 12, 25, 18 P.3d 523 (2001). Where a charge relates to a direct benefit or service, this court generally does not consider it a tax or assessment. King County Fire Prot. Dists. No. 16, No. 36, & No. 40 v. Housing Auth. of King County, 123 Wash.2d 819, 833, 872 P.2d 516 (1994). Instead, this court refers to such charges as regulatory fees, a rather broad category that can "include a wide assortment of utility customer fees, utility connection fees, garbage collection fees, local storm water facility fees, user fees, permit fees, parking fees, registration fees, filing fees, and license fees." Samis, 143 Wash.2d at 805, 23 P.3d 477 | Charges imposed for purposes other than raising money to fund the public treasury, such as for regulating activities, are not taxes and are not subject to constitutional taxation constraints. West's RCWA Const. Art. 7, S 1. | What charges are not taxes? | 046136.docx | LEGALEASE-00130745-LEGALEASE-00130746 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 13396 | Nishitani v. United States, 42 Fed. Cl. 733 | 34+3(1) | The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review. See Adkins v. United States, 68 F.3d 1317, 1322 (Fed.Cir.1995); Moehl v. United States, 34 Fed.Cl. 682, 688 (1996). However, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy. See Adkins, 68 F.3d at 1323; Moehl, 34 Fed.Cl. at 688. The Federal Circuit has emphasized that judicial review is only appropriate where the military's discretion is limited and Congress has established tests and standards against which the court can measure the military's conduct. See Murphy, 993 F.2d at 873; Strickland v. United States, 36 Fed.Cl. 651, 655 (1996). "Unless such a test or standard is provided, courts must abstain." Murphy, 993 F.2d at 873. | Judicial review is only appropriate in military matters where the military's discretion is limited and Congress has established tests and standards against which the court can measure the military's conduct. | When is judicial review of military decisions appropriate? | Armed Services - Memo 71 - RK.docx | ROSS-003286617-ROSS-003286618 | Order, SA, Sub | 0.76 | 1 | 0 | 1 | 1 | 1 |
| 13397 | United States v. Sun-Diamond Growers of California, 526 U.S. 398 | 63+1(1) | The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a quid pro quo-a specific intent to give or receive something of value in exchange for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken. The punishments prescribed for the two offenses reflect their relative seriousness: Bribery may be punished by up to 15 years' imprisonment, a fine of $250,000 ($500,000 for organizations) or triple the value of the bribe, whichever is greater, and disqualification from holding government office. See 18 U.S.C. "" 201(b) and 3571. Violation of the illegal gratuity statute, on the other hand, may be punished by up to two years' imprisonment and a fine of $250,000 ($500,000 for organizations). See "" 201(c) and 3571. | To convict under federal bribery statute, there must be a quid pro quo, a specific intent to give or receive something of value in exchange for an official act, while illegal gratuity may constitute merely a reward for some future act that public official will take and may already have determined to take, or for a past act that he has already taken. 18 U.S.C.A. S 201(b)(1, 2), (c). | "What is the definition of ""quid pro quo"" for the purpose of bribery?" | Bribery - Memo #88 - C-JL.docx | ROSS-003287219-ROSS-003287221 | Order, SA, Sub | 0.67 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13398 | City of Mishawaka v. Squadroni, 486 N.E.2d 1088 | 307A+749.1 | A pre-trial order should be liberally construed in order to ensure the trial of every lawsuit on its merits. Whisman v. Fawcett (1984), Ind., 470 N.E.2d 73. The above- stated contention of the retirees, when construed in the fashion required by Whisman, does not limit the retirees' claim or desired recovery to the years 1978, 1979 and 1980. Furthermore, during the trial of this action, evidence was presented, without objection, on how the incentive bonus plan was being implemented up to the day of trial. From the issues framed by the complaint and the pre-trial order, and the evidence which was taken on all of those issues, there was no error in the trial court's award of damages. | Pretrial order should be liberally construed in order to ensure trial of every lawsuit on its merits. | Should a pretrial order be liberally construed in order to ensure trial of every lawsuit on its merits? | Pretrial Procedure - Memo # 2120 - C - ES.docx | ROSS-003301581-ROSS-003301582 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13399 | Campbell v. Nako Corp., 198 Kan. 421 | 307A+749.1 | The pre-trial order in the present case covered a ruling of law based upon an erroneous interpretation of our previous decision in Campbell v. Nako Corporation, supra. A pre-trial order does not preclude review of the trial court's ruling on a question of law. (1A Barron and Holtzoff, Federal Practice and Procedure ss 471, 473; Smith, Kirkpatrick & Co. v. Continental Autos Ltd., D.C.D.C.1960, 184 F.Supp. 764; Macklin v. Kaiser Co., D.C.Or.1946, 69 F.Supp. 137.). | A pretrial order does not preclude review of trial court's ruling on question of law. | Does a pretrial order preclude review of the trial court's ruling on a question of law? | Pretrial Procedure - Memo # 2237 - C - SKG.docx | ROSS-003286536 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13400 | Nelson v. Allstate Ins. Co., 753 A.2d 1001 | 307A+749.1 | Super. Ct. Civ. R. 16 governs pretrial proceedings in civil cases, and subsection (g) of the rule, in particular, provides for the entry of a pretrial order and specifies in some detail what the order should contain. The rule "contemplate[s] that fair disclosure will be made to remove cases from the realm of surprise, and both parties generally are bound by the pretrial order." Taylor v. Washington Hospital Center, 407 A.2d 585, 592 (D.C.1979). However, we have held that "[w]hile [Rule 16] is intended to remove cases from the "realm of surprise," it does not contemplate or require that rigid adherence to the pretrial order must always be exacted." Clarke v. District of Columbia, 311 A.2d 508, 511 (D.C.1973) (citations omitted). Hence the decision "[w]hether to allow a party to go beyond the bounds of the pretrial order ... is a matter left to the court's discretion, to be exercised in light of Rule 16's language authorizing modification in the proper case "to prevent manifest injustice." " Taylor, 407 A.2d at 592 (citations omitted); see Super. Ct. Civ. R. 16(g) (providing that a pretrial order "may be modified at the discretion of the court for good cause shown and shall be modified if necessary to prevent manifest injustice"). In determining whether the trial court abused its discretion under this rule, "[t]he most important factor appears to be whether the opposing party was surprised or ... prejudiced by the requested change." Daniels v. Beeks, 532 A.2d 125, 128 (D.C.1987); accord, Habtu v. Woldemichael, 694 A.2d 846, 849 (D.C.1997). | The rule governing pretrial orders contemplates that fair disclosure will be made to remove cases from the realm of surprise, and both parties generally are bound by the pretrial order. Civil Rule 16(g). | Are parties bound by a pre-trial order? | Pretrial Procedure - Memo # 2261 - C - SN.docx | ROSS-003287449-ROSS-003287450 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13401 | Miller v. Reddin, 422 F.2d 1264 | 170A+1713.1 | A voluntary dismissal by a plaintiff under Rule 41(a)(1) Fed.R.Civ.P., automatically terminates the action upon the filing of the dismissal with the clerk. No order of court is required.Hyde Construction Company v. Koehring Company, (10 Cir. 1968) 388 F.2d 501, 507, cert. denied 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419 (1968); American Cyanamid Co. v. McGhee, (5 Cir. 1963) 317 F.2d 295, 297. Since no answer or motion for summary judgment was ever filed, the action below was subject to voluntary dismissal until such time as there was an entry of judgment.The local Rules of the Central District of California provide in Rule 7(f) 3 as follows: "Where written order or judgment is to be prepared by counsel and settled, no memorandum of decision or opinion or any minutes made by the clerk of the court's decision shall constitute entry of judgment under said Rules." Accordingly, there was no entry of judgment in the case until November 18, 1968, when the findings, conclusions and order of dismissal were filed. The attempt by the trial court to make the dismissal effective nunc pro tunc as of August 5, 1968, "the date when this court, by minute order in open court at the hearing herein, did grant said motions to dismiss, which minute order of August 5, 1968 is hereby approved, ratified and confirmed," was a nullity. | A voluntary dismissal by plaintiff automatically terminates action upon filing of dismissal with clerk; no order of court is required. Fed.Rules Civ.Proc. rule 41(a) (1), 28 U.S.C.A. | Does a voluntary dismissal terminate the action when the notice of the plaintiff's intent to dismiss is filed with the clerk? | 027842.docx | LEGALEASE-00132076-LEGALEASE-00132077 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13402 | Farrell By & Through Farrell v. Dome Labs., a Div. of Miles Labs.,Inc., 650 P.2d 380 | 30+4792 | A judgment of dismissal without prejudice is considered a final judgment for purposes of appeal. Under Rule 60(b), "the court may relieve a party or his legal representative from a final judgment, order, or proceeding...." Since Rule 60(b) applies to all final judgments, trial courts have discretion to amend a voluntary dismissal without prejudice entered pursuant to Rule 41(a)(2). | Fact that order of voluntary dismissal without prejudice was previously affirmed on appeal did not prevent trial court from vacating such order pursuant to defendants' motion for relief from final order, and furthermore none of conditions added by amended judgment were reviewed in prior appeal. Rules Civ.Proc., Rules 41(a)(2), 60(b). | Is a voluntary dismissal without prejudice sufficiently final to support a motion filed pursuant to Rule 60(b)? | 027851.docx | LEGALEASE-00132198-LEGALEASE-00132199 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 13403 | Griffin v. Dep't of Local Gov't Fin., 765 N.E.2d 716 | 371+2001 | This Court must reject the State Board's argument that the HCI tax is a local tax because the legislature made mention to it under section (b)(7) of the statute setting the maximum tax rates for political subdivisions. The nature of a tax "must be determined by its operation and incidence, rather than by its title or designation made by the legislature. In other words, the legislature may not change a factual situation by giving it a different name or designation." Wright v. Steers, 242 Ind. 582, 179 N.E.2d 721, 723 (1962), reh'g denied. Therefore, the legislature's mere reference to the HCI tax under the local tax limit statute does not transform it into a local tax. | The nature of a tax must be determined by its operation and incidence, rather than by its title or designation made by the legislature. | Is the nature of a tax determined by its designation made by the legislature? | Taxation - Memo # 127 - C - CK.docx | ROSS-003315356-ROSS-003315357 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13404 | State, ex rel. Emrick, v. Wasson, 62 Ohio App. 3d 498 | 268+405 | Although "tax" and "assessment" are similar concepts in that they are government imposed financial burdens for a public or quasi-public purpose, Ohio maintains a functional distinction between the two. A tax is a burden levied on citizens for the general operation of the government. By contrast, an assessment is a narrower burden levied on specific property owners to cover the cost of benefits bestowed on the property by public improvements. As stated in Lima v. Cemetery Association (1884), 42 Ohio St. 128, at paragraph one of the syllabus: "In a general sense, a tax is an assessment, and an assessment is a tax; but there is a well- recognized distinction between them, an assessment being confined to local impositions upon property for the payment of the cost of public improvements in its immediate vicinity, and levied with reference to special benefits to the property assessed." (Emphasis added.). | Although "tax" and "assessment" are similar concepts in that they are government-imposed financial burdens for public or quasi-public purpose, functional distinction exists between the two; tax is burden levied on citizens for general operation of government, and assessment is narrower burden levied on specific property owners to cover costs of benefits bestowed on property by public improvements. | "Is ""tax"" a burden imposed by a government?" | Taxation - Memo # 225 - C - KI.docx | ROSS-003304052-ROSS-003304054 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 13405 | Vournas v. Montgomery Cty., 53 Md. App. 243 | 371+2001 | In this case, appellant sold and transferred land which had been assessed and taxed at only $30 to $220 per acre, to the United States for $9,100 per acre. The transfer tax isadmittedly a revenue measure. Where the primary objective of a tax is raising revenue, it is a revenue measure and the amount of the tax is not reviewable by the courts. Maryland Theatrical Corp. v. Brennan, 180 Md. 377, 381, 24 A.2d 911 (1942). Appellant, who has the onerous burden of showing that the classification does not rest upon any reasonable basis, has failed to establish any invidious discrimination in the application of the transfer tax either to himself or to others. See Allied American Mut. Fire Ins. Co. v. Commissioner of Motor Vehicles, 219 Md. 607, 623, 150 A.2d 421 (1959). | Where primary objective of tax is raising revenue, it is revenue measure, and amount of tax is not reviewable by the courts. | "Is the amount of the tax reviewable by the courts, where the primary objective of a tax is to raise revenue?" | Taxation - Memo # 310 - C - CK.docx | ROSS-003328968-ROSS-003328969 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13406 | In re Cty. of Orange, 262 F.3d 1014 | 268+485(1) | Although the Mello"Roos tax is not an "ad valorem" tax (a tax imposed on property according to its value), it is billed to the properties within the community facilities districts on the regular ad valorem property tax bills sent to the property owners. The County collects the Mello"Roos taxes in the same way as the ad valorem taxes, and then remits them to the individual community facilities districts. See Cal. Gov't Code " 53340. | Although California's Mello-Roos tax is not an "ad valorem tax," that is, a tax imposed on property according to its value, it is billed to the properties within the community facilities districts on the regular ad valorem property tax bills sent to the property owners. West's Ann.Cal.Gov.Code SS 53311-53368.3. | What is an ad valorem tax? | 045443.docx | LEGALEASE-00131929-LEGALEASE-00131930 | Condensed, SA | 0.27 | 0 | 1 | 0 | 1 | |
| 13407 | Dinkel v. Graves Truck Line, 10 Kan. App. 2d 604 | 413+1 | The Workmen's Compensation Act is complete and exclusive within itself and provides procedures on each phase of a claimant's right to compensation. Hunter v. General Motors Corporation, 202 Kan. 166, 172, 446 P.2d 838 (1968); Walker v. Davis Van & Storage Co., 198 Kan. 452, 455, 424 P.2d 473 (1967); Bahr v. Iowa Beef Processors, Inc., 8 Kan.App.2d 627, 632, 663 P.2d 1144, rev. denied 233 Kan. 1091 (1983). A district court's jurisdiction is set forth in K.S.A.1984 Supp. 44"556(b) as follows: "On any such appeal the district court shall have jurisdiction to grant or refuse compensation, or to increase or diminish any award of the director as justice may require." Any party to the proceedings may appeal from a director's decision to the district court where the cause of action arose. K.S.A.1984 Supp. 44"556(a). | Workmen's Compensation Act is complete and exclusive within itself and provides procedures on each phase of a claimant's right to compensation. K.S.A. 44-501 et seq. | Is the Workmens Compensation Act complete and exclusive within itself? | 047754.docx | LEGALEASE-00131901-LEGALEASE-00131902 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13408 | Hartford Acc. & Indem. Co. v. Rigdon, 418 F. Supp. 540 | 413+1164 | An action under the Workmen's Compensation laws is purely statutory. Boatright v. Dothan Aviation Corp., 278 Ala. 142, 176 So.2d 500 (1965). The Workmen's Compensation statutes create rights and remedies and procedures all their own,Riley v. Perkins, 282 Ala. 629, 213 So.2d 796 (1968); Gilmore v. Rust Eng'r. Co., 45 Ala.App. 626, 235 So.2d 673 (1970), and these "rights and remedies granted by Alabama Workmen's Compensation Act are exclusive in those cases coming within the influence of that Act." Smith v. Southern Ry. Co., 237 Ala. 372, 187 So. 195, at 197 (1939). The statute permitting action against a party other than an employer, if the injury for which compensation is payable was caused under circumstances creating a legal liability on the part of such a party, creates a remedy, not a right. Barr v. Preskitt, 389 F.Supp. 496 (M.D.Ala. 1975). The statutory right of the subrogee to bring an action does not arise until the period within which the employee has to bring an action against the third party has lapsed. The right of subrogation depends entirely on statute and cannot otherwise be created. | Action under workmen's compensation laws is purely statutory and the rights and remedies granted by Alabama Workmen's Compensation Act are exclusive in those cases coming within influence of that Act. Code of Ala., Tit. 26, S 312. | "Do workmens compensation statutes create rights, remedies and procedures all their own?" | 047841.docx | LEGALEASE-00131791-LEGALEASE-00131792 | Order, SA, Sub | 0.79 | 1 | 0 | 1 | 1 | 1 |
| 13409 | State v. Campbell Cty. Sch. Dist., 2001 WY 19 | 63+1(1) | Additionally, in Kansas the substantive crime of bribery can be committed by one person. K.S.A. 21-3901 defines bribery to include "offering" or "requesting" improper benefits, etc. Thus the mere offer or solicitation of a bribe is violative of the statute and a concert of action is unnecessary to commit the substantive offense of bribery. In People v. Incerto, supra, it was stated:". . . The substantive offense of bribery of a judge, 1967 Perm.Supp. C.R.S.1963, 40-7-5 (repealed 1971), can, in fact, be committed by one person. Prior to 1967, the statute required both "giving" and "receiving" as elements of the offense of bribery. Therefore, the participation of two people was necessary. Two people were also necessary under the bribery statute which we reviewed in People v. Wettengel, (98 Colo. 193, 58 P.2d 279) supra. See Compiled Laws of Colorado 1921 s 6781. The legislature, however, has amended our bribery statute, and the revision now makes an "offer to give" or an "offer to receive" a bribe a crime under the statute.' (pp. 371, 372, 505 P.2d pp. 1312.) | Mere offer or solicitation of a bribe is violative of bribery statute and a concert of action is unnecessary. K.S.A. 21-3901. | Is the mere offer or solicitation of a bribe violative of the bribery statute? | 011340.docx | LEGALEASE-00133312-LEGALEASE-00133313 | Order, SA, Sub | 0.88 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13410 | United States v. Verrusio, 762 F.3d 1 | 63+1(2) | It is true, as we noted above, that this court has held that, "[e]xcept in limited circumstances," the mere "release of information" does not come within the statutory definition of "official act." Valdes, 475 F.3d at 1329. But it does not matter if, "during the [World Series] trip," Verrusio's only acts were to "provide[ ] generic advice and publicly-available information regarding how United Rentals could achieve its goals." Reply Br. 14. The gratuities statute proscribes payments "for or because of any official act performed or to be performed by such official." 18 U.S.C. " 201(c)(1)(B) (emphasis added). Nor does it matter whether Verrusio succeeded in influencing the language"or even tried to do so. As we explained in Valdes, "the anti-gratuity provision has no requirement that the payment actually influence the performance of an official act." 475 F.3d at 1322 (internal quotation marks omitted). What matters is what the gift was contemplated for at the time it was given. And for the reasons set forth above, a reasonable jury could readily have concluded the World Series trip was contemplated for the particular act of getting United Rentals' language into the federal highway bill. | The criminal anti-gratuity provision has no requirement that the gift to a federal official actually influence the performance of an official act; what matters is what the gift was contemplated for at the time it was given. 18 U.S.C.A. S 201(c)(1)(B). | Does the criminal anti-gratuity provision require that the payment to the official actually influence the performance of an official act? | Bribery - Memo #291 - C - LB.docx | ROSS-003300649-ROSS-003300650 | Order, SA, Sub | 0.79 | 1 | 0 | 1 | 1 | 1 |
| 13411 | Stone and Michaud Ins. v. Bank Five for Sav., 785 F.Supp. 1065 | 226H+41 | The New Hampshire "statute defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." " Swiezynski v. Civiello, 126 N.H. 142, 147, 489 A.2d 634, 638 (1985) (quoting RSA 304"A:6). The legal rules which govern partnership also govern joint ventures, as the " "[p]arties in a joint venture stand in the same relationship to each other as the partners in a partnership." " Coe v. Watson, 126 N.H. 456, 458, 493 A.2d 490, 491 (1985) (quoting Humiston v. Bushnell, 118 N.H. 759, 761, 394 A.2d 844, 845 (1978) (and citation therein to RSA 304"A:6 I)). | Under New Hampshire law, same legal rules that govern partnerships also govern joint ventures, as parties in joint venture stand in same relationship to each other as partners in partnership. | Do parties in a joint venture stand in the same relationship to each other as the partners in a partnership? | 022112.docx | LEGALEASE-00133513-LEGALEASE-00133514 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 13412 | Beach v. Anderson, 417 N.W.2d 709 | 289+529 | Real estate owned by a partnership is considered personalty. In re Dumarest's Estate, 146 Misc. 442, 262 N.Y.S. 450 (1933). Under Minn.Stat. " 323.25, once a partnership acquires realty with partnership funds and for partnership purposes, it then becomes personalty for all purposes. | Real estate owned by partnership is considered personalty, and once partnership acquires realty with partnership funds and for partnership purposes, it then becomes personalty for all purposes. M.S.A. S 323.25. | Is real estate owned by a partnership treated as a personalty? | 022162.docx | LEGALEASE-00133564-LEGALEASE-00133565 | SA, Sub | 0.26 | 0 | 0 | 1 | 1 | |
| 13413 | Shanks v. Klein, 104 U.S. 18 | 289+715 | In Dupuy v. Leavenworth (17 Cal. 262), Chief Justice Field, in the name of the court, said: "In the view of equity it is immaterial in whose name the legal title of the property stands,"whether in the individual name of the copartner, or in the joint names of all; it is first subject to the payment of the partnership debts, and is then to be distributed among the copartners according to their respective rights. The possessor of the legal title in such case holds the property in trust for the purposes of the copartnership. Each partner has an equitable interest in the property until such purposes are accomplished. Upon dissolution of the copartnership by the death of one of its members, the surviving partner, who is charged with the duty of paying the debts, can dispose of this equitable interest, and the purchaser can compel the heirs-at-law of the deceased partner to perfect the purchase by conveyance of the legal title." | Real estate purchased with partnership funds for partnership purposes, though the title be taken in the individual name of one or both partners, is first subject to the partnership debts, and is then to be distributed among the copartners according to their respective rights. | Does partnership real estate have to be applied to the satisfaction of the partnership debts? | 022167.docx | LEGALEASE-00133568-LEGALEASE-00133569 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 13414 | McBee v. Williamson, 96 Ga. App. 859 | 302+8(17) | All of the allegations taken together fail to demand the inference of grossnegligence, and gross negligence is nowhere expressly charged. For this reason the trial court erred in overruling the general demurrer under the authority of the above cited cases. Although it is true that a mere allegation that certain facts constitute gross, rather than ordinary negligence is a conclusion, yet it has been well established that where the facts are such that the jury might find them to be either it is necessary for the plaintiff to state clearly the theory on which he desires to proceed. The defendant is entitled to this knowledge, and where the petition is susceptible of more than one construction that most unfavorable to the pleader must be adopted on demurrer. | Mere allegation that certain facts constitute gross, rather than ordinary, negligence is a conclusion; but in action against driver for injuries sustained by occupant, plaintiff must state clearly whether he relies on ordinary negligence or gross negligence. | Is a mere allegation of negligence a conclusion? | Pleading - Memo 288 - RMM.docx | ROSS-003286905-ROSS-003286906 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 13415 | Cotton v. Ostroski, 250 Neb. 911 | 307A+749.1 | In compliance with this pretrial order, Gary's statement of elements stated that he intended to establish (1) Janice's mental capacity and (2) the fact that Janice's decision to remove her name from the certificate of deposit was motivated by Renee's undue influence. In addition, Gary listed Dr. Terry M. Himes as a witness. Gary stated that Himes would testify to, inter alia, Janice's physical and mental condition, and Himes' opinion as to Janice's mental capacity. The issues set out in a pretrial order supplant those raised in the pleadings. Engelhaupt v. Village of Butte, 248 Neb. 827, 539 N.W.2d 430 (1995); Malerbi v. Central Reserve Life, 225 Neb. 543, 407 N.W.2d 157 (1987). The purpose of a pretrial conference is to simplify the issues, to amend pleadings when necessary, and to avoid unnecessary proof of facts at trial. To that end, litigants must adhere to the spirit of the procedure and are bound by the pretrial order to which no exception has been taken. Cockrell v. Garton, 244 Neb. 359, 507 N.W.2d 38 (1993). In view of the pretrial order, Renee and Robbie cannot argue that they did not have notice that lack of mental capacity would be an issue in this case. | Purpose of pretrial conference is to simplify issues, to amend pleadings when necessary, and to avoid unnecessary proof of facts at trial; to that end, litigants must adhere to spirit of procedure and are bound by pretrial order to which no exception has been taken. | What is the clear purpose of pretrial conference? | 027087.docx | LEGALEASE-00132822-LEGALEASE-00132823 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13416 | State ex rel. State Comp. Mut. Ins. Fund v. Berg, 279 Mont. 161 | 307A+750 | A party must set forth affirmatively any statute of limitations defense in pleading to a preceding pleading. Rule 8(c), M.R.Civ.P. A pretrial order entered pursuant to Rule 16(e), M.R.Civ.P., however, governs and controls the subsequent course of the lawsuit unless modified by a subsequent order. See Zimmerman v. Robertson (1993), 259 Mont. 105, 111, 854 P.2d 338, 342; Naftco Leasing Ltd. v. Finalco, Inc. (1992), 254 Mont. 89, 93, 835 P.2d 728, 731. The purpose of pretrial orders is to prevent surprise, simplify the issues and permit counsel to prepare their case for trial on the basis of the pretrial order. Zimmerman, 854 P.2d at 342 (citing Workman v. McIntyre Const. Co. (1980), 190 Mont. 5, 617 P.2d 1281). Failure to raise an issue or theory in the pretrial order may result in a waiver of that issue or theory. Nentwig v. United Industry, Inc. (1992), 256 Mont. 134, 138, 845 P.2d 99, 102. | Failure to raise issue or theory in pretrial order may result in waiver of that issue or theory. Rules Civ.Proc., Rule 16(e). | Will failure to raise issue or theory in pretrial order result in waiver of that issue or theory? | Pretrial Procedure - Memo # 1966 - C - MS.docx | ROSS-003300765-ROSS-003300766 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 13417 | Applied Bank v. Wenzlick, 344 S.W.3d 229 | 307A+517.1 | In a court tried case, "a civil action may be dismissed by the plaintiff without order of the court anytime ... prior to the introduction of evidence at the trial." Rule 67.02(a)(2). This voluntary dismissal disposes of the entire case and is effective upon the date it is filed with the court. Peachtree Apartments v. Pallo, 317 S.W.3d 189, 191 (Mo.App. E.D.2010). After a plaintiff voluntarily dismisses an action pursuant to Rule 67.02(a), "it is as if the suit had never been filed." Richter v. Union Pacific R. Co., 265 S.W.3d 294, 297 (Mo.App. E.D.2008). At this point, the trial court loses jurisdiction over the case. Pallo, 317 S.W.3d at 191. "Once the case is dismissed, any further action by the trial court is viewed as a nullity." Grady v. Amrep, Inc., 139 S.W.3d 585, 591 (Mo.App. E.D.2004); see also Pallo, 317 S.W.3d at 191; Brown v. MO Delta Medical Center, 293 S.W.3d 28, 31 (Mo.App. S.D.2009). | Once the case is dismissed in accordance with voluntary dismissal rule, any further action by the trial court is viewed as a nullity. V.A.M.R. 67.02(a)(2). | "Once the case is dismissed in accordance with voluntary dismissal rule, is any further action by the trial court viewed as a nullity?" | 028053.docx | LEGALEASE-00133391-LEGALEASE-00133392 | Order, SA, Sub | 0.83 | 1 | 0 | 1 | 1 | 1 |
| 13418 | Rabello v. Alonso, 927 So. 2d 45 | 307A+520 | We agree with the petitioner that the trial court exceeded its jurisdiction in entering this order. If the motion was a simple request for reinstatement, the trial court exceeded its jurisdiction in reinstating the action, as once a stipulated voluntary dismissal is taken, the court loses jurisdiction. See Randle-Eastern Ambulance Serv., Inc. v. Vasta, 360 So.2d 68 (Fla.1978). Should the motion have been considered, which it apparently was, as a request to set aside the stipulated dismissal based on fraud or a mistake pursuant to Rule 1.540, Florida Rules of Civil Procedure, the time limitation for bringing such motion had run. | Trial court lacked jurisdiction to set aside a stipulated voluntary dismissal and reinstate the dismissed action nearly two years after signing an order of dismissal; dismissal deprived trial court of jurisdiction to consider a simple request for reinstatement, and one-year time limit for bringing a motion for relief from judgment based on fraud or mistake had expired. West's F.S.A. RCP Rule 1.540. | "Once a stipulated voluntary dismissal is taken, does the court lose jurisdiction over the action?" | Pretrial Procedure - Memo # 2551 - C - NS.docx | ROSS-003327141-ROSS-003327142 | Condensed, SA, Sub | 0.37 | 0 | 1 | 1 | 1 | 1 |
| 13419 | Morgan v. Evans, 39 Mass. App. Ct. 465 | 307A+517.1 | In dismissing an action pursuant to rule 41(a)(2), a "court may grant dismissal without prejudice or may require that the dismissal be with prejudice." 9 Wright & Miller, Federal Practice & Procedure Civil 2d " 2367, at 318 (1995). Rule 41(a)(2) provides that "[u]nless otherwise specified in the order, a dismissal under this paragraph is without prejudice." A dismissal without prejudice does not preclude a second action on the same claim and issues. 9 Wright & Miller, Federal Practice & Procedure Civil 2d " 2367, at 321 (1995) ("A voluntary dismissal without prejudice leaves the situation as if the action had never been filed."). Because the dismissal in the prior action was without prejudice and not upon the merits of the action, it was error for the judge to grant the defendants' motion for summary judgment. | In dismissing action pursuant to rule governing voluntary dismissals by court order, court may grant dismissal without prejudice or may require that the dismissal be with prejudice. Rules Civ.Proc., Rule 41(a)(2), 43A, 43B M.G.L.A. | Can a court grant dismissal without prejudice or may require that the dismissal be with prejudice? | Pretrial Procedure - Memo # 2559 - C - NS.docx | ROSS-003315234-ROSS-003315235 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 13420 | Matter of R.G., Jr., 865 S.W.2d 504 | 307A+517.1 | Tex.R.Civ.P. 162 provides, "At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit...." The rule was amended in 1988; the Comment to the amendment states that the purpose of this rule is to fix a definite time after which a party may not voluntarily dismiss or non-suit the cause of action. Plaintiff's right to non-suit or dismiss is well recognized and subject to few limitations. Hoodless v. Winter, 16 S.W. 427, 428 (Tex.1891); 5 Mcdonald Texas Civil Practice "" 27.39, 27.40, 27.41 (1992). The non-suit or dismissal is effective at the time it is filed. An oral non-suit is effective at the time of the non-suit and signing of an order granting it is purely ministerial. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). No particular procedure is required. Id.; Strawder v. Thomas, 846 S.W.2d 51 (Tex.App."Corpus Christi 1992, no writ). Rule 162 contemplates dismissal at any time prior to the closing of the plaintiff's evidence during a trial on the merits. At the transfer hearing, the State spoke of "abandoning" the four attempted murder charges. Tex.R.Civ.P. 165 permits abandonment of claims; however, the rule has been interpreted to require abandonment "before but not after trial of the cause and entry of the judgment." Person v. Latham, 582 S.W.2d 246, 250 (Tex.Civ.App."Beaumont 1979, writ ref'd n.r.e.) (emphasis in original). This is the same requirement as for non-suit. | Nonsuit or voluntary dismissal of cause of action is effective at time it is filed; oral nonsuit is effective at time of nonsuit and signing of order granting it is purely ministerial. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Is an oral nonsuit effective at the time of nonsuit and a signing of an order granting it is purely ministerial? | 028218.docx | LEGALEASE-00133279-LEGALEASE-00133280 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13421 | Rehman v. ECC Int'l Corp., 698 So. 2d 921 | 307A+517.1 | The defendants' notice of withdrawal of their motion for attorney's fees is tantamount to a voluntary dismissal of their claim. A voluntary dismissal terminates a pending action instantaneously. See McKelvey, 430 So.2d at 922; Henry P. Trawick, Jr., Florida Practice and Procedure " 21"4 (1992). Although a voluntary dismissal is without prejudice to the bringing of a new action, it does preclude revival of the original action. McKelvey, 430 So.2d at 922. The defendants' withdrawal of their claim for attorney's fees terminated the pending action for fees and there was nothing to "revive." Thus, the defendants' "renewed" motion for attorney's fees did not renew anything and was a nullity | Although voluntary dismissal of action is without prejudice to bringing of new action, it does preclude revival of original action. | Does voluntary dismissal of action preclude revival of original action? | 028562.docx | LEGALEASE-00132667-LEGALEASE-00132668 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13422 | Owens-Corning Fiberglas Corp. v. Fibreboard Corp., 95 Md. App. 345 | 307A+517.1 | Sections (a) and (b) of the Rule are patterned after F.R.Civ.P. 41(a)(1) and 41(a)(2), respectively. Under Rule 41(a)(2) and Rule 2"506, the granting of a motion for voluntary dismissal is within the court's discretion, after weighing the equities and giving due regard to all pertinent factors. This discretion will not be overturned absent a showing of an abuse of that discretion. See 5 Moore's Federal Practice. A motion for voluntary dismissal may be granted with or without prejudice, a decision that is discretionary with the court. See 5 Moore's Federal Practice, supra. This may be done, either on a motion or sua sponte, "to manage [the court's] affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash Railroad Co., 370 U.S. 626, 630"31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962). | Motion for voluntary dismissal may be granted with or without prejudice in court's discretion. Md.Rule 2-506. | Can a motion for voluntary dismissal be granted with or without prejudice in a court's discretion? | Pretrial Procedure - Memo # 2878 - C - RY.docx | ROSS-003301112-ROSS-003301113 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13423 | Kenney v. Rockingham Sch. Dist., 123 Vt. 344 | 413+1 | In looking for help on this problem from other decided cases, it is necessary to have an eye for many things since the nature, conditions, obligations and incidents of the employment all have a bearing on the proper determination of a given case. See Coswell's Case, 305 Mass. 500, 502, 26 N.E.2d 328, 330; and see Workmen's Compensation: Half Century of Developments-Horovitz, in Nebraska Law Review, Vol. 41, P. 1.17 for tendencies of the courts in present-day workmen's compensation cases. Thus it was said in a case in which a school teacher was claimant, "His accident was subject to a different rule than are accidents of those who work by the hour or day. The duties he owed to his employer were continuous and his compensation was reckoned by the year." Williams v. School City of Winchester, 104 Ind.App. 83, 10 N.E.2d 314. Accordingly, a case such as Kneeland v. Parker, 100 Vt. 92, 135 A. 8, 48 A.L.R. 1396, involving a teamster, where the accident occurred before the day's work had started, is not applicable to the situation before us. The same can be said of Bundy v. State of Vt. Highway Dept., 102 Vt. 84, 146 A. 68. | The nature, conditions, obligations and incidents of employment all have a bearing on proper determination of a given workmen's compensation case. | What has bearing on a proper determination of a given workmens compensation case? | 047885.docx | LEGALEASE-00132974-LEGALEASE-00132975 | Order, SA, Sub | 0.87 | 1 | 0 | 1 | 1 | 1 |
| 13424 | State ex rel. Morgan v. Indus. Acc. Bd., 130 Mont. 272 | 413+1 | Each compensation case must be decided upon its own fact features in the application of the law. | Each compensation case must be decided upon its own fact features in the application of the law. R.C.M.1947, S 92-101 et seq. | Should each compensation case be decided upon its own fact features in the application of the law? | 047903.docx | LEGALEASE-00133194-LEGALEASE-00133195 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 13425 | Granahan v. Celanese Corp. of Am., Plastics Div., 3 N.J. 187 | 413+1 | The appellant contends that there were two separate and distinct injuries charged, one orthopedic and the other neurological; that they constituted two causes of action; and that the claim for neurosis, being a separate cause of action, was not the proper subject of an amendment since, at the time of the hearing, it was barred by the lapse of time. This argument proceeds on the hypothesis that since neurosis of itself is a compensable injury, Hall v. Doremus, 114 N.J.L. 47, 175 A. 369 (Sup.Ct. 1934), Sigley v. Marathon Razor Blade Co., Inc., 111 N.J.L. 25, 166 A. 518 (E. & A. 1933), it is a separate cause of action. While neurosis of itself may constitute a compensable injury for which a cause of action may be maintained, it does not follow that neurosis is a cause of action. A cause of action in a Workmen's Compensation case is predicated upon an accident arising out of and in the course of employment and not upon the injuries incident thereto. The nature or type of injury resulting from such compensable accident determines the extent of the disability but does not of itself constitute a cause of action. Cause of action is defined in Ballentine's Law Dictionary, page 197 as follows: "A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant, and that the facts which establish the existence of the right and that delict constitute the cause of action." | A cause of action in a compensation case is predicated on an accident arising out of and in course of employment and not on the injuries incident thereto. | What does a cause of action in a compensation case predicated upon? | Workers Compensation - Memo #231 ANC.docx | ROSS-003288604-ROSS-003288605 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 13426 | Olson v. Trinity Lodge No. 282, A. F. & A. M., 226 Minn. 141 | 413+608 | The phrase "arising out of" the employment expresses the factor of origin, source, or contribution rather than cause in the sense of being proximate or direct. Compensation acts are sui generis, and care must be taken not to defeat their purpose by applying, through long judicial habit, concepts belonging to fundamentally different fields of litigation. Hanson v. Robitshek-Schneider Co., 209 Minn. 596, 297 N.W. 19; Horovitz, Current Trends in Workmen's Compensation, pp. 509-511. The standard of origin or source as a contributing factor obviously goes far beyond the restrictive limitations of the tort concept of proximate cause. The Massachusetts supreme court in Caswell's Case, 305 Mass. 500, 502, 26 N.E.2d 328, 330, rejected its earlier restrictive definitions and said: '* * * An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects.' | The phrase "arising out of employment" within meaning of compensation act, expresses factor of origin, source, or contribution rather than cause in sense of being proximate or direct. | Are workers compensation acts sui generis? | 047937.docx | LEGALEASE-00133178-LEGALEASE-00133179 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13427 | Buckingham Estates Homeowners Ass'n v. Metcalf, 207 So. 3d 966 | 307A+517.1 | We agree with HOA that the trial court lacks jurisdiction to impose the sanctions sought by Metcalf because HOA voluntarily dismissed the case before Metcalf served or filed either her safe harbor notice or motion for fees. A trial court lacks jurisdiction to hear a motion for sanctions under section 57.105 that is filed after the case is voluntarily dismissed. Pomeranz & Landsman Corp. v. Miami Marlins Baseball Club, L.P., 143 So.3d 1182, 1182 (Fla. 4th DCA 2014). Generally, a voluntary dismissal under Florida Rule of Civil Procedure 1.420(a)(1) terminates a trial court's jurisdiction over a matter.Randle"Eastern Ambulance Serv., Inc. v. Vasta, 360 So.2d 68, 69 (Fla. 1978). Pursuant to Pino v. Bank of New York, 121 So.3d 23, 41"43 (Fla. 2013), the trial court has continuing jurisdiction to consider a section 57.105 motion for sanctions only when the motion for sanctions was filed with the court before a voluntary dismissal. | Generally, a voluntary dismissal terminates a trial court's jurisdiction over a matter. Fla. R. Civ. P. 1.420(a)(1). | "Generally, does a voluntary dismissal terminate a trial court's jurisdiction over a matter?" | 028293.docx | LEGALEASE-00133656-LEGALEASE-00133657 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13428 | Ex parte Spurlock, 66 F. Supp. 997 | 34+3(1) | (2) Next it is argued though the court holds" as it does"that it has the judicial power to call upon the respondent to justify under law his detention of Spurlock, its inquiry is limited to determining whether or not the power to declare martial law was properly invoked. This is referred to as the theory of absolute martial law and reliance is placed upon several supporting old cases. The doctrine is that martial law can be terminated only by the one given the original power to invoke it" the Executive. In short the proposition is that whether at any given time factual necessity supports the continuation of a state of martial law is a political and not a judicial question. The same idea is currently expressed in modern garb in the statement that in time of war the courts cannot question the judgment of the Executive"whether that judgment is based on facts or not. By such a specious doctrine did Hitler and his ilk rise to dictatorial power. If ever such was the law of this country it long since has been slain by the Supreme Court. Under our form of government the military even in time of war is subordinate to the civil power, not superior to it. During war the military to be sure is allowed a wide range of discretion, but whether it has abused that discretion is a judicial question. | Under our form of government, the military, even in time of war, is subordinate to the civil power not superior to it. | "Is the military, even in time of war, subordinate to the civil power?" | 008383.docx | LEGALEASE-00133749-LEGALEASE-00133751 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 13429 | H.D. Arnaiz, Ltd. v. Cty. of San Joaquin, 96 Cal. App. 4th 1357 | 307A+517.1 | Arnaiz contends the order is not appealable because it did not follow a final appealable judgment. We agree. A voluntary dismissal under Code of Civil Procedure section 581, subdivision (b)(1) by written request to the clerk is not a final judgment, as no judgment, final or otherwise, is necessary to the dismissal. (Lavaysse v. Superior Court (1944) 63 Cal.App.2d 223, 227, 146 P.2d 686; see also Gray v. Kay (1975) 47 Cal.App.3d 562, 565, 120 Cal.Rptr. 915.) A voluntary dismissal is a ministerial act, not a judicial act, and not appealable. (Associated Convalescent Enterprises v. Carl Marks & Co., Inc. (1973) 33 Cal.App.3d 116, 120, 108 Cal.Rptr. 782; Cook v. Stewart McKee & Co. (1945) 68 Cal.App.2d 758, 761, 157 P.2d 868 ["By the clerk's entry no judicial act has been exercised from which appeal may be prosecuted"].) Following this reasoning, the court found an order denying a motion to vacate a voluntary dismissal was not an appealable order in Gray v. Superior Court (1997) 52 Cal.App.4th 165, 170"171, 60 Cal.Rptr.2d 428. | A voluntary dismissal by written request to the clerk is not a final judgment as no judgment, final or otherwise, is necessary to the dismissal. West's Ann.Cal.C.C.P. S 581(b)(1). | Is a voluntary dismissal by written request to the clerk a final judgment as no judgment? | 028659.docx | LEGALEASE-00133854-LEGALEASE-00133855 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 13430 | In re Singh, 434 B.R. 298 | 308+117(1) | Because there is no writing memorializing the purported agency relationship between the Debtor and the Defendant, the Defendant is asking the Court to find the existence of such a relationship based on his testimony. This request must be denied. Under New York law, "the authority of an agent who signs a contract for the sale of land must be authorized in writing." Roberts v. Karimi, 251 F.3d 404, 406 (2d Cir.2001); Cohen v. Treuhold Capital Group, LLC (In re Cohen), 422 B.R. 350, 378 (E.D.N.Y.2010) (citing N.Y. Gen. Oblig. Law " 5"703(2)) ("A contract ... for the sale[ ] of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged, or by his lawful agent thereunto authorized by writing ") (emphasis added); See also 1"11 Warren's Weed New York Real Property " 11.08 ("An agent's authorization to contract for the purchase of real property for an undisclosed principal must be in writing."). It is undisputed that the Defendant did not grant authority to the Debtor in writing to act on his behalf. Therefore, any contention by the Defendant that he was entitled to the proceeds of the sale of the Property because the Debtor acted as his agent in connection with the purchase and sale must be rejected. | Under New York law, the authority of an agent who signs a contract for the sale of land must be authorized in writing. | Should the authority of an agent who signs or executes a contract of sale be stated in writing? | Principal and Agent - Memo 86 - KC.docx | ROSS-003290914-ROSS-003290915 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 13431 | Agric. Commodities Auth. v. Balkcom, 215 Ga. 107 | 371+2001 | One of the attacks made on the constitutionality of section 10 of the act of 1951 as amended by the act of 1958 is that it offends article 7, section 2, paragraph 1 of the Constitution of 1945 (Code " 2-5501), which provides that "The powers of taxation over the whole State shall be exercised by the General Assembly for the following purposes only: 8. To advertise and promote the agricultural, industrial, historic, recreational and natural resources of the State of Georgia." A tax is a rate or sum of money assessed on the person, property, etc., of the citizen. Bouv. Law Dict.; Mayor, etc. of Savannah v. Charlton, 36 Ga. 460. But a license is issued under the police power of the authority granting it, permitting the performance of an act which, except for payment of the prescribed fee, would be prohibited; and if the fee required for the license is intended for revenue, its exaction is an exercise of the power of taxation. Cooley's Const.Lim. 201; Publix-Lucas Theaters v. City of Brunswick, 206 Ga. 206(2), 56 S.E.2d 254. On application of this principle, the assessment which the Authority is empowered to levy and collect from the producers of the commodity peanuts, under the attacked section of the amended act, is unquestionably a tax on that particular agricultural commodity, which is levied and collected by the State through one of its instrumentalities solely for the purpose of advertising and promoting such commodity by the Authority. See Home Insurance Co. v. City Council of Augusta, 50 Ga. 530; Publix-Lucas Theaters v. City of Brunswick, supra; and Gunby v. Yates, 214 Ga. 17, 102 S.E.2d 548. And since it is not a tax which the General Assembly has constitutional power to impose only on that particular agricultural commodity for any one of the purposes enumerated in the aforementioned provision of the Constitution, it is elementary that the General Assembly is without constitutional authority to create an instrumentality of the State and clothe it with power to | A "tax" is a rate or sum of money assessed on person, property, etc., of citizen. | Is tax a rate or sum of money assessed on person and property of citizen? | 045108.docx | LEGALEASE-00133906-LEGALEASE-00133907 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13432 | Sablosky v. Messner, 372 Pa. 47 | 371+2121 | As stated in the decisions above cited, taxation is a practical matter and legislation upon the subject will not be declared invalid because some inequalities inevitably result. Article IX, Section 1, of the Constitution requires merely substantial uniformity of taxation; absolute equality is impracticable. Commonwealth v. Southern Pennsylvania Bus Company, 339 Pa. 521, 15 A.2d 375. And see Commonwealth v. Delaware Div. Canal Co., 123 Pa. 594, 620, 16 A. 584, 2 L.R.A. 798; Appeal of Fox and Wife, 112 Pa. 337, 4 A. 149; Commonwealth v. Merchants' & Manufacturers' National Bank of Pittsburg, Pennsylvania, 168 Pa. 309, 31 A. 1065. | Taxation is a practical matter and legislation upon the subject will not be declared invalid because some inequities inevitably result. | Can a legislation upon the subject of taxation be declared invalid? | Taxation - Memo # 396 - C - KBM.docx | ROSS-003290957-ROSS-003290958 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 13433 | Roth v. United States, 378 F.3d 1371 | 34+7(1) | Turning to the matter of promotion, the fundamental rule is that documents that are sent to a selection board must be "substantially complete, and must fairly portray the officer's record." Weiss v. United States, 187 Ct.Cl. 1, 408 F.2d 416, 419 (1969). If an officer's record contains prejudicial information, or lacks pertinent documents that may have mitigated the adverse impact of the prejudicial information, the record is not complete, and the law requires that another selection board be presented with a substantially complete and fair record. Porter v. United States, 163 F.3d 1304, 1311"12 (Fed.Cir.1998) (citing Weiss, 408 F.2d at 419; Sanders v. United States, 219 Ct.Cl. 285, 594 F.2d 804, 814 (Ct.Cl.1979)). | Documents that are sent to a selection board in connection with proposed promotion must be substantially complete, and must fairly portray the officer's record. | Is a substantially complete and fair record a necessary requirement for proper consideration by a selection board? | 008434.docx | LEGALEASE-00133934-LEGALEASE-00133935 | Order, SA, Sub | 0.78 | 1 | 0 | 1 | 1 | 1 |
| 13434 | Maier v. Orr, 754 F.2d 973 | 34+18 | No one has an individual right, constitutional or otherwise, to enlist in the armed forces, the composition of those forces being within the purview of the Congress and the military. Gilligan v. Morgan, 413 U.S. 1, 6, 93 S.Ct. 2440, 2443, 37 L.Ed.2d 407 (1973); Lindenau v. Alexander, 663 F.2d 68, 72 (10th Cir.1981). Maier's counsel noted before the district court that at the time of her discharge Maier's then current enlistment extension was due to expire in eight months, i.e., in November 1977, that "an enlisted member of the service, if entitled to reinstatement, is only entitled to reinstatement up to the end of the enlistment then being served," and that "this poses real problems for my client because if that relief is granted she'd have to pay back her severance pay and she would owe the government more money than she'd get." | No one has an individual right, constitutional or otherwise, to enlist in armed forces, composition of those forces being within purview of Congress and the military. | Does a servicemen have the right to enlist or reenlist in the armed forces? | 008470.docx | LEGALEASE-00134198-LEGALEASE-00134199 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13435 | ani-Serv Div. of Burger Chef Sys. v. S. Bank of W. Palm Beac | 95+53 | It is apparent from the record that the benefit which the defendant received from the transaction was something less than ideal. The net result of the transaction was that the defendant financed roughly $5,000.00 worth of purchases for its customer, G & D Equipment Corporation, but received as security therefor an encumbrance on machinery valued at approximately $2,000.00, leaving the defendant an unsecured creditor for the balance. This, however, does not equate with a failure of consideration. When the defendant took delivery of the trust receipt from G & D Equipment Corporation, it placed in G & D's hands a bill of lading enabling the latter to acquire and dispose of the machinery which the plaintiff would not have delivered to G & D, but for the payment in full of its sight draft. There was, therefore, in this transaction a detriment to the plaintiff that was legally sufficient consideration for the cashier's check. Once a legal consideration appears, its adequacy is not a subject for judicial inquiry except under unusual circumstances not here present. Yedlin v. Lewis, 5 Cir.1963, 320 F.2d 35; Johnson Lumber & Supply Co. v. Byron, Fla.App.1959, 113 So.2d 577. | Once legal consideration appears, its adequacy is not subject to judicial inquiry except under unusual circumstances. | "Once a legal consideration appears, is its adequacy a subject for judicial inquiry?" | Bills and Notes - Memo 261- VP.docx | ROSS-003289100-ROSS-003289101 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 13436 | Holsomback v. Akins, 134 Ga. App. 543 | 8.30E+76 | The check involved here was not revoked by operation of law because it was presented to the drawee bank within ten days after decedent's death. See Code s 109A-4-405(2). | A check is not revoked by operation of law because it was presented to drawee bank within ten days after drawer's death. Code, S 109A-4-405(2). | Can a check be revoked by operation of law after the death of drawer? | 010221.docx | LEGALEASE-00133962-LEGALEASE-00133963 | SA, Sub | 0.15 | 0 | 0 | 1 | 1 | |
| 13437 | Falco v. Bates, 30 Ill. App. 3d 570 | 8.30E+76 | At trial, the parties stipulated that Falco did not furnish any services whatsoever to Bates. There was no consideration passing from Falco to Bates to support Bates' liability on his check. Further, the parties agree that the mere drafting of a check by a drawer does not constitute an assignment of the funds designated. Therefore, the timely filing of a stop payment order here, without more, would operate to extinguish any liability of Bates to Falco. | In absence of consideration passing from payee to drawer of check to support drawer's liability on the check, timely filing of stop payment order by drawer operated to extinguish any liability of drawer to payee. | Does timely filing of a stop payment order by the drawer extinguish his liability to payee? | 010223.docx | LEGALEASE-00133966-LEGALEASE-00133967 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13438 | United States v. Hawkins, 37 F. Supp. 3d 964 | 63+14 | Peleti involved the federal bribery statute, 18 U.S.C. " 201, rather than the federal program bribery statute, 18 U.S.C. " 666, but in this regard the Court sees no basis to distinguish its rationale. That the official holding out his office is an official of an entity funded with federal funds rather than an official employed by the federal government does not mitigate the corrupt nature of the transaction. As the Court adverted before trial (see 9/23/13 Pretrial Tr. at 4"6), there is a distinction between the definitions of the bribery offense in the two statutes. In " 201, the official must accept payment "in return for being influenced in the performance of any official act," while " 666(a)(1)(B) requires that the official accept it "intending to be influenced or rewarded." But that just goes to show that "corruptly" does not mean "intending to be influenced or rewarded"; if it did, the corrupt acceptance of a payment intending to be influenced or rewarded would be redundant. Section 666(a)(1)(B) "was designed to extend federal bribery prohibitions to bribes offered to state and local officials employed by agencies receiving federal funds," Salinas v. United States, 522 U.S. 52, 58, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), so there is little reason to believe that Congress intended a different meaning for the term in " 666(a)(1)(B). Both statutes require, in essence, that the official know that the payment is offered as a bribe. See United States v. Curescu, 674 F.3d 735, 742 (7th Cir.2012) ("" 666(a)(1)(B) requires knowing that the money or other thing of value received was indeed a bribe, which is to say an inducement to do a corrupt act."); Peleti, 576 F.3d at 382 (one acts corruptly when one solicits or receives money "on the representation that the money is for the purpose of influencing his performance of some official act"). Whether one accepts the payment "in return for being influenced" or "intending to be influenced or rewarded" may distinguish " 201 bribery from " 666 bribery,2 but the crimes are not distinguished by | In its jury instruction, court appropriately defined term "corruptly" in prosecution under federal program bribery statute by using definition provided in Seventh Circuit pattern instructions, under which "(a) person acts corruptly when that person acts with the understanding that something of value is to be offered or given to reward or influence him in connection with his official duties," while rejecting defendants' alternate instructions, each of which involved statement that person acts "corruptly" if he "acts with the purpose of wrongfully influencing the business or transactions of" the government agency, since statute was not focused on whether defendants took action after receiving bribe, but rather defendants' knowledge that payment was offered as bribe. 18 U.S.C.A. S 666(a)(1)(B). | Does the federal bribery statute extend to bribes offered to state and local officials employed by agencies receiving federal funds? | 011262.docx | LEGALEASE-00134306-LEGALEASE-00134307 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 13439 | Northpark Assocs. No. 2, Ltd. v. Homart Dev. Co., 262 Ga. 138 | 200+80 | As we have previously acknowledged, "the recording of a subdivision plat not only acts as the grant of an easement to the purchasers of the property, but also raises a presumption of intent to dedicate to the public." Walker, 236 Ga. at 332, 223 S.E.2d 675. There is an additional presumption that the dedication of roads to a county, whether express or implied, transfers only an easement. See R.G. Foster etc. v. Fountain, 216 Ga. 113, 123, 114 S.E.2d 863 (1960); 1 G. Pindar, Georgia Real Estate Law and Procedure, " 5-14 (3d ed.1986). A governing authority can acquire fee simple title to a county road only through condemnation or an express grant in a deed or other instrument. "Where, as here, a road is established by dedication and there is no express grant of fee-simple title, an easement results." Glass v. Carnes, 260 Ga. at 630, 398 S.E.2d 7. | Governing authority can acquire fee simple title to county road only through condemnation or express grant in deed or other instrument. | How can a governing authority acquire fee-simple title to a county road? | Highways -Memo 102-DB.docx | ROSS-003290474-ROSS-003290475 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13440 | Sivigliano v. Harrah's N. Kansas City Corp., 188 S.W.3d 46 | 302+370 | We disagree. In Missouri, a "pleading that sets forth a claim for relief ... shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief[.]" Rule 55.05. "The purpose of fact-pleading is to present, define[,] and isolate the controverted issues so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits. The pleadings limit and define the issues of the case." Luethans v. Wash. Univ., 894 S.W.2d 169, 171"72 (Mo. banc 1995) (citations and internal quotation marks omitted). However, to satisfy Rule 55.05, the pleading need not label the plaintiff's theory of recovery. Empiregas, Inc. of Rolla v. Whitson, 902 S.W.2d 347, 348 (Mo.App.1995). To survive a motion to dismiss, Sivigliano "must plead ... the elements of a cause of action under an exception to the employment-at-will doctrine." Adolphsen, 907 S.W.2d at 335 (Mo.App.1995). In Adolphsen the plaintiff, a corporate pilot, alleged that he was fired for whistle-blowing about Hallmark's violation of unspecified FAA regulations. Id. There we held that "the specific facts on which liability is based must be pleaded with particularity" where the defendant's actions fall within a category generally not considered actionable such as discharge of an at-will employee. Id. at 338. | The purpose of fact-pleading is to present, define, and isolate the controverted issues so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of a cause on the merits; the pleadings limit and define the issues of the case. V.A.M.R. 55.05. | What is the purpose of fact pleading? | 023281.docx | LEGALEASE-00134685-LEGALEASE-00134686 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 13441 | Arizona State Highway Dep't v. Bechtold, 105 Ariz. 125 | 307A+750 | The admitted purpose of the pre-trial order is to simplify issues and shorten trial time. But such orders are not absolute and do not completely jell issues in an action. Zuniga v. City of Tucson, 5 Ariz.App. 220, 425 P.2d 122 (1967). "(A)s with all rules problems, the dominant purpose of the courts must be to do justice rather than to vindicate procedural rules." 1A Barron & Holtzoff, Federal Practice and Procedure, s 473, at 851 (Wright ed. 1960). Rule 16, itself provides that the trial judge may modify the pretrial order at the trial to prevent manifest injustice to the litigants. Loya v. Fong, 1 Ariz.App. 482, 404 P.2d 826 (1965). Additionally, "(f)ailure formally to amend the pre-trial order is not error where the court admits evidence to the same effect as if the order had been amended." 3 Moore, Federal Practice 16.20 at 1138 (2d ed. 1968). | Purpose of pretrial order is to simplify issues and shorten trial time, but such orders are not absolute and do not completely jell issues in action. | Does a pretrial order not completely jell issues in an action? | 027664.docx | LEGALEASE-00134573-LEGALEASE-00134574 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13442 | Perez v. Miami-Dade Cty., 297 F.3d 1255 | 170A+1686 | Once the matter is admitted, Rule 36(b) provides that it is "conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed.R.Civ.P. 36(b).23 A court "may permit withdrawal or amendment [of an admission] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."24 Id. Based on this language, we have held that district courts should apply a "two-part test" in deciding whether to grant or deny a motion to withdraw or amend admissions. Smith v. First Nat'l Bank, 837 F.2d 1575, 1577 (11th Cir.1988). First, the court should consider whether the withdrawal will subserve the presentation of the merits, and second, it must determine whether the withdrawal will prejudice the party who obtained the admissions in its presentation of the case. Id.; Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir.1995); FDIC v. Prusia, 18 F.3d 637, 640 (8th Cir.1994). | In deciding whether to grant or deny a motion to withdraw or amend admissions, court should consider whether the withdrawal will subserve the presentation of the merits, and determine whether the withdrawal will prejudice the party who obtained the admissions in its presentation of the case; a district court abuses its discretion in denying a motion to withdraw or amend admissions when it applies some other criterion beyond foregoing two-part test or grossly misapplies the two-part test in making its ruling. Fed.Rules Civ.Proc. Rule 36(b), 28 U.S.C.A. | Should the party seeking to have the admissions enforced must show that it will have difficulty proving its case as a result of the withdrawal of the admissions? | 028944.docx | LEGALEASE-00134066-LEGALEASE-00134067 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 13443 | Jahn v. Brickey, 168 Cal. App. 3d 399 | 307A+486 | In Guzman, we determined a party responding to interrogatories was not even required to obtain leave of court in order to amend answers to interrogatories. This result was based on the principle that interrogatories are "discovery device[s]" (International Harvester Co. v. Superior Court (1969) 273 Cal.App.2d 652, 655, 78 Cal.Rptr. 515) and answers to interrogatories " "will not prevent the defendant at the trial from relying on subsequently discovered facts, including facts produced at the trial by plaintiff or his witnesses, or by any of the other parties to this lawsuit, or their witnesses. In fact, such answers would not even prevent production of facts now known to defendant but not included in the answers, upon a proper showing that the oversight was in good faith." [Citation.]" (Guzman v. General Motors Corp., supra, 154 Cal.App.3d at p. 443, 201 Cal.Rptr. 246.) Admissions are more than a mere discovery device. They also serve a function similar to the pleadings in a lawsuit in that they are "aimed primarily at setting at rest a triable issue so it will not have to be tried." (International Harvester Co. v. Superior Court, supra, 273 Cal.App.2d at p. 655, 78 Cal.Rptr. 515.) Thus, a responding party must obtain leave of the court before amending admissions made under Code of Civil Procedure section 2033. | Responding party must obtain leave of court before amending admissions. West's Ann.Cal.C.C.P. S 2033. | Must a responding party obtain a leave of court before amending admissions? | 028986.docx | LEGALEASE-00134738-LEGALEASE-00134739 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 13444 | Standard Sav. Ass'n v. Cromwell, 714 S.W.2d 49 | 307A+486 | The court has discretion to shorten the time provided for notice. Appellant's reliance on Kuykendall v. Spicer, 643 S.W.2d 776 (Tex.App."San Antonio 1982, no writ) is ill-founded. Kuykendall held merely that a dismissal of a case without the plaintiffs' receiving notice of the motion for dismissal is an abuse of the trial court's discretion. The plaintiff there should not have been deprived of an opportunity to try his case without notice. Here, appellant had a full opportunity to present his case. | Court has discretion to shorten time provided for notice of hearing on motion to withdraw admission of fact. Vernon's Ann.Texas Rules Civ.Proc., Rules 21, 169. | Does a court have discretion to shorten a time provided for notice of hearing on motion to withdraw admission of fact? | 029099.docx | LEGALEASE-00134625-LEGALEASE-00134626 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 13445 | Schmal v. Minnesota Mut. Life Ins. Co., 432 N.W.2d 695 | 307A+483 | Initially, plaintiffs moved for summary judgment, which the court overruled on September 10, 1985. The court found based on the record before it on that date that "[t]here is a material fact as to whether the life policy is a lapsed reinstated policy or a new policy." Defendant then propounded requests for admissions concerning this issue to the plaintiffs. Plaintiffs failed to file their answers to such requests for admissions. Therefore, they are deemed admitted. I.R.Civ.P. 127 and 128. By their failure to respond, the plaintiffs have eliminated this issue from controversy. | Admissions were to be deemed admitted after plaintiffs failed to file answers to requests for admissions. Rules Civ.Proc., Rules 127, 128. | Are admissions to be deemed admitted after plaintiffs fail to file answers to requests for admissions? | Pretrial Procedure - Memo # 3502 - C - ES.docx | ROSS-003331251-ROSS-003331252 | Order, SA, Sub | 0.76 | 1 | 0 | 1 | 1 | 1 |
| 13446 | Navelski v. Int'l Paper Co., 244 F. Supp. 3d 1275 | 386+10 | Florida law states that trespass to real property is "an injury to or use of the land of another, by one who has no right or authority." Brown v. Solary, 37 Fla. 102, 112, 19 So. 161 (1896); see also Glen v. Club Mediterranee, S.A., 450 F.3d 1251, 1254 n.1 (11th Cir. 2006) (quoting Guin v. City of Riviera Beach, 388 So.2d 604, 606 (Fla. 4th DCA 1980)). | Under Florida law, "trespass" to real property is an injury to or use of the land of another, by one who has no right or authority. | Can trespass to real property be committed by a person who has no right or authority? | 047353.docx | LEGALEASE-00134842-LEGALEASE-00134843 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 13447 | Jacque v. Steenberg Homes, 209 Wis. 2d 605 | 386+56 | McWilliams, 3 Wis. at 428. Thus, in the case establishing punitive damages in this state, this court recognized that in certain situations of trespass, the actual harm is not in the damage done to the land, which may be minimal, but in the loss of the individual's right to exclude others from his or her property and, the court implied that this right may be punished by a large damage award despite the lack of measurable harm. | Nominal damages can support punitive damage award in case of intentional trespass to land, as both individual and society have significant interests in deterring intentional trespass to land, regardless of lack of resulting measurable harm. | "Can a defendant be punished by a large damage award, despite the lack of measurable harm or a minimal actual harm in cases of trespass?" | 047403.docx | LEGALEASE-00134806-LEGALEASE-00134807 | Order, SA, Sub | 0.44 | 1 | 0 | 1 | 1 | 1 |
| 13448 | Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217 | 25T+143 | Brown argues on appeal that the arbitration clause is void because it fails to specifically state that statutory claims were included in the agreement to arbitrate. "It is well established that arbitration is a creature of contract" and neither party can be compelled to arbitrate when he has not agreed to do so. Scott, 141 F.3d at 1011 (citing AT&T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). A party cannot avoid arbitration, however, because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim. | Party cannot avoid arbitration simply because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim. | Can a party to an arbitration agreement avoid arbitration? | 007543.docx | LEGALEASE-00135801-LEGALEASE-00135802 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 13449 | Rojas v. TK Commc'ns, 87 F.3d 745 | 25T+146 | While working at the radio station, Rojas executed an employment agreement with her employer. Paragraph 23 of that agreement provides, in pertinent part, as follows: 23. [(Arbitration Except for breaches or threatened breaches of the provisions of Paragraphs 15 through 18 relating to equitable relief, any action contesting the validity of this Agreement, the enforcement of its financial terms, or other disputes shall be submitted to arbitration pursuant to the American Arbitration Association in Ft. Lauderdale, Florida.... Despite this arbitration clause, Rojas commenced this lawsuit against TK and Tichenor Media Systems, Inc. ("Tichenor"'). | Arbitration clause in employment contract providing for arbitration of claims contesting validity of agreement, enforcement of its financial terms, or other disputes was sufficiently broad to encompass female employee's Title VII claims. Civil Rights Act of 1964, S 701 et seq., as amended, 42 U.S.C.A. S 2000e et seq. | "Do courts recommend arbitration when arbitration agreement contains the language requiring any action contesting the validity of the Agreement, the enforcement of its financial terms, or any other disputes, submitted to arbitration?" | Alternative Dispute Resolution - Memo 627 - SB.docx | ROSS-003305016-ROSS-003305017 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13450 | McGuire, Cornwell & Blakey v. Grider, 771 F. Supp. 319 | 25T+149 | Section 5 of the Federal Arbitration Act, 9 U.S.C. " 5, provides: "If in the agreement provision be made for a method of naming or appointing an arbitrator ..., such method shall be followed; but if ... there shall be a lapse in the naming of an arbitrator ..., then upon the application of either party to the controversy the court shall designate and appoint an arbitrator...." Accordingly, as a general rule, where the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement but instead appoints a different arbitrator. Astra Footwear Indus. v. Harwyn Int'l, Inc., 442 F.Supp. 907, 910 (S.D.N.Y.), aff'd mem., 578 F.2d 1366 (2d Cir.1978); Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 742 F.Supp. 1359, 1364"66 (N.D.Ill.1990) | As a general rule, where arbitrator named in arbitration agreement cannot or will not arbitrate dispute, court does not void agreement but instead appoints different arbitrator. 9 U.S.C.A. S 5. | Does the court make an arbitration agreement void if an arbitrator named in the arbitration agreement cannot or will not arbitrate a dispute? | 007579.docx | LEGALEASE-00135317-LEGALEASE-00135319 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 13451 | State v. Greer, 238 N.C. 325 | 63+1(1) | Bribery may be defined generally as the voluntary offering, giving, receiving or soliciting of any sum of money, present or thing of value with the corrupt intent to influence the recipient's action as a public officer or official, or a person whose ordinary profession or business relates to the administration of public affairs, whether in the legislative, executive or judicial departments of government in the performance of any official duty required of him. The bribe must be intended, however, to influence the recipient in the discharge of a legal duty, and not a mere moral duty. 8 Am.Jur., ibid; 11 C.J.S., Bribery, s 1, page 840. Both texts cite many authorities. | "Bribery" is voluntary offering, giving, receiving or soliciting of any sum of money, present or thing of value with corrupt intent to influence recipient's action as a public officer or official, or person whose ordinary profession or business relates to administration of public affairs, whether in legislative, executive, or judicial departments of government in performance of any official duty required of him, but bribe must be intended to influence recipient in discharge of a legal duty, and not a mere moral duty. G.S. S 14-218. | Should a bribe be intended to influence the recipient in the discharge of a legal duty? | 011549.docx | LEGALEASE-00135367-LEGALEASE-00135368 | SA, Sub | 0.2 | 0 | 0 | 1 | 1 | |
| 13452 | United States v. Parlavecchio, 903 F. Supp. 788 | 36+2 | Congress did not define the terms "extortion," "bribery" or "arson" as used in the Travel Act, but case law has established that these terms are to be read "generically," and that the "generic" definitions of these crimes may be broader than their strict common law definitions. Perrin v. United States, 444 U.S. 37, 49, 100 S.Ct. 311, 317, 62 L.Ed.2d 199 (1979) (bribery involving private employees is predicate act under Travel Act even though bribery at common law was limited to public officials); United States v. Dansker, 537 F.2d 40, 47 (3d Cir.1976) (public official's acceptance of payment in exchange for influencing zoning decision constitutes generic bribery even if defendant's conduct fell outside realm of his official duties and therefore would not have constituted bribery at common law); United States v. Michael, 456 F.Supp. 335 (D.N.J.1978), affirmed, 605 F.2d 1198 (3d Cir.1979) (commercial bribery constitutes "bribery" under Travel Act). | Terms "extortion," "bribery," and "arson" contained in Travel Act are to be read more broadly than their strict common law definitions. 18 U.S.C.A. S 1952(b). | "Does the term ""bribery"" in the Travel Act have the same meaning with ""bribery"" in the common law?" | 011569.docx | LEGALEASE-00135258-LEGALEASE-00135259 | Order, SA, Sub | 0.83 | 1 | 0 | 1 | 1 | 1 |
| 13453 | Mash v. State, 90 Ga. App. 322 | 67+4 | The words "dwelling house" and "mansion", in regard burglary, both at common law and under Georgia statute, refer to the residence or habitation of a person other than the defendant, where such person makes his abode. 12 C.J.S., Burglary, " 17, page 678; Gibbs v. State, 8 Ga.App. 107(1), 68 S.E. 742; Ashton v. State, 68 Ga. 25(1)."Storehouse" within the meaning of the statute, means a place where goods are stored or kept for sale at wholesale or retail, such as a shop or store. Coleman v. State, 61 Ga.App. 658, 7 S.E.2d 212; Moseley v. State, 70 Ga.App. 610(1-c), 29 S.E.2d 86. | The word "storehouse", within statute defining burglary as the breaking and entering into storehouse, means place where goods are stored or kept for sale at wholesale or retail, such as shop or store. Code, S 26-2401. | Is a storehouse subject to the burglary statute? | 012631.docx | LEGALEASE-00135796-LEGALEASE-00135797 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 13454 | People v. Alvarado, 87 Cal. App. 4th 178 | 350H+96 | Like the felony murder provisions of section 189 and various enhancement statutes, section 667.61(e)(2) establishes ancillary consequences for committing a burglary. Moreover, all of these statutes share the same legislative purpose: to protect people from acts of force and violence that may accompany a felony, in this case burglary. For these reasons, we find the continuous-transaction test, including the perpetrator's escape, to be the appropriate way to measure the duration of a burglary under section 667.61(e)(2). Clearly, this measure provides the broadest deterrent against the commission of sex crimes against burglary victims. Therefore, we hold that for the purpose of section 667.61(e)(2), "during the commission of a burglary" refers to that period of time between the burglar's initial entry with the requisite intent and the burglar'sescape to a place of temporary safety. | For purposes of the One Strike law, which mandates indeterminate life sentences of 15 or 25 years to life for specified sex offenses that are committed under one or more "aggravating" circumstances, including commission of a rape during commission of a burglary, phrase "during the commission of a burglary" refers to that period of time between the burglar's initial entry with the requisite intent and the burglar's escape to a place of temporary safety. West's Ann.Cal.Penal Code S 667.61(e)(2). | Is an escape part of the burglary? | 012639.docx | LEGALEASE-00135849-LEGALEASE-00135851 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 13455 | Kennedy v. State Indus. Comm'n, 1937 OK 526 | 67+16 | "The possession of burglarious implements or tools with a guilty intent may be joint as well as several, and where the guilty intent of several is manifested by their joint act, it becomes a joint offense. * * * | Possession of burglarious implements or tools with a guilty intent may be joint as well as several, and where guilty intent of several is manifested by their joint act, it becomes a joint offense. R.R.S.1943, S 28-534. | Can there be joint possession of burglars tools? | Burglary - Memo 127 - JS.docx | ROSS-003290182-ROSS-003290184 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |
| 13456 | State v. Edwards, 103 Ariz. 487 | 67+9(0.5) | Section 13"303 sets forth three Entirely distinct classes of mechanical means for committing burglary: (a) burglary by use of explosives; (b) burglary by the use of burning or melting force; (c) burglary by the use of any mechanical device or contrivance. Cf. Fitzpatrick v. Board of Medical Examiners, 96 Ariz. 309, 394 P.2d 423 (1964). This is a comprehensive statute proscribing what is generally known as "safecracking". Our examination of statutes from the penal codes of other states reveals that no other state has enacted a statute nearly so all-inclusive, except perhaps the Ohio legislature in s 2907.12 Ohio Rev.Code (1954) which provides: | Statute making burglary by mechanical means illegal and specifying three distinct classes of mechanical means for committing burglary, (1) by use of explosives, (2) use of burning or melting force, (3) use of any mechanical device or contrivance, was not ambiguous and ejusdem generis rule of construction would not be applied. A.R.S. S 13-303. | Does use of explosives constitute burglary? | Burglary - Memo 130 - JS.docx | ROSS-003290438-ROSS-003290440 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 13457 | People v. Mire, 173 Mich. 357 | 350H+1486 | "The people of the State of Michigan enact, "Section 1. Any person who, with intent to commit crime, breaks and enters any building and for the purpose of committing any crime, uses or attempts to use nitroglycerine, dynamite, gunpowder, or any other high explosive, shall be deemed guilty of burglary with explosives, and on conviction shall be punished by imprisonment for a term of not less than 15 years nor more than 30 years. | The punishment, imprisonment for not less than 15 years nor more than 30 years, prescribed by Pub.Acts 1907, No. 64, for one who with intent to commit crime breaks and enters a building, and for purpose of committing any crime uses a high explosive, is not cruel and unusual. | What is the punishment for burglary with use of explosives? | Burglary - Memo 132 - JS.docx | ROSS-003289285-ROSS-003289287 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13458 | In re Vidal, 234 B.R. 114 | 289+1131 | Under New Mexico law, the partnership agreement governs the relationship between general and limited partners. See NMSA 1978, "" 54"2"1 to 54"2"63 (1996). The Agreement does not specifically address extending the stated term of the partnership. To the extent that a partnership agreement does not address an issue or event, the Uniform Limited Partnership Act (ULPA) governs, and on issues that it fails to address, the Uniform Partnership Act (UPA) governs. NMSA 1978, " 54"2"62 (1996). The ULPA does not address extending a partnership term. | Under New Mexico law, partnership agreement governs relationship between general and limited partners. NMSA 1978, SS 54-2-1 to 54-2-63. | What governs the relationship between general partners and limited partners? | Partnership - Memo 322 - SNP.docx | ROSS-003291631-ROSS-003291632 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 13459 | Fromm v. Bd. of Directors of Police & Firemen's Ret. Sys., 81 N.J. Super. 138 | 296+2 | It is, of course, axiomatic that one of the fundamental purposes of the pensioning of civil servants is to secure good behavior and the maintenance of reasonable standards of discipline during service. Plunkett v. Pension Comm'rs of Hoboken, 113 N.J.L. 230, 232"233, 173 A. 923 (Sup.Ct.1934), affirmed 114 N.J.L. 273, 176 A. 341 (E. & A. 1935). The court in that case observed that honorable service is "characterized by or in accordance with principles of honor. One so serving is scrupulously upright, and shows a fine regard for obligations as to conduct." (113 N.J.L. at page 233, 173 A. at page 924) | One of the fundamental purposes of pensioning civil servants is to secure good behavior and maintenance of reasonable standards of discipline during service. | Why should civil servants be pensioned? | 022782.docx | LEGALEASE-00135739-LEGALEASE-00135740 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 13460 | Peachtree Apartments v. Pallo, 317 S.W.3d 189 | 307A+517.1 | A motion to quash execution constitutes a special proceeding attacking enforcement of the judgment, and it is independent of the principal cause of action"here, the landlord's suit for rent and possession of the apartment. Carrow v. Carrow, 294 S.W.2d 595, 597 (Mo.App.St.L.Dist.1956). In this case, the tenant voluntarily withdrew his motion to quash execution on September 1, 2009. The tenant's withdrawal of his motion to quash is analogous to the voluntary dismissal of a case. Generally, dismissal disposes of the entire case. State ex rel. McMullin v. Satz, 759 S.W.2d 839, 840 (Mo. banc 1988). A voluntary dismissal becomes effective on the date it is filed with the court, and once a case is dismissed, it is as if the suit were never brought. State ex rel. Frets v. Moore, 291 S.W.3d 805, 812 (Mo.App. S.D.2009). And once a case is dismissed, the court loses all jurisdiction over it, and may take no further action. McMullin, 759 S.W.2d at 840; Frets, 291 S.W.3d at 812. Any attempted action on a dismissed case is a nullity. Id. | Once a case is voluntarily dismissed, the court loses all jurisdiction over it, and may take no further action. | "Once a case is voluntarily dismissed, does the court lose all jurisdiction over it, and may take no further action?" | Pretrial Procedure - Memo # 2766 - C - DA.docx | ROSS-003305105-ROSS-003305106 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13461 | Brown v. Rowe Chevrolet-Buick, 86 N.C. App. 222 | 307A+716 | N.C.Gen.Stat. " 1A-1, Rule 40(b) of the N.C.Rules of Civil Procedure provides:(b) No continuance shall be granted except upon application to the court. A continuance may be granted only for good cause shown and upon such terms and conditions as justice may require. Good cause for granting a continuance shall include those instances when a party to the proceeding, a witness, or counsel of record has an obligation of service to the State of North Carolina, including service as a member of the General Assembly.Whether to grant a motion to continue is within the sound discretion of the trial court. Shankle v. Shankle, 289 N.C. 473, 223 S.E.2d 380 (1985); Doby v. Lowder, 72 N.C.App. 22, 324 S.E.2d 26 (1984). Where the attorney has given the movant no prior notice of intent to withdraw, the court has no discretion but must grant a reasonable continuance or deny motion to withdraw. Williams & Michael, P.A. v. Kennamer, 71 N.C.App. 215, 321 S.E.2d 514 (1984). The general rule, however, is that the withdrawal of counsel on the eve of trial is not ipso facto grounds for continuance. Shankle v. Shankle, supra. | Generally, withdrawal of counsel on eve of trial is not ipso facto grounds for continuance. | Is the withdrawal of counsel on eve of trial not ipso facto grounds for continuance? | Pretrial Procedure - Memo # 3297 - C - SU.docx | LEGALEASE-00025213-LEGALEASE-00025214 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 13462 | Martin v. Wyatt, 243 Ga. App. 31 | 307A+716 | Nothing in this record shows that any of these criteria for granting a continuance due to counsel's illness were met.""Continuances because of the absence ofcounsel are notfavored, and a strict compliance with the law is required, particularly since the matter rests within the sound discretion of the trial judge." " Chappelaer v. Gen. GMC Trucks, 130 Ga.App. 664, 666(2), 204 S.E.2d 326 (1974). | Continuances because of the absence of counsel are not favored, and a strict compliance with the law is required, particularly since the matter rests within the sound discretion of the trial judge. O.C.G.A. S 9-10-155. | Is continuance on ground of counsel's illness favored? | 029373.docx | LEGALEASE-00135401-LEGALEASE-00135402 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 13463 | Waites v. Sondock, 561 S.W.2d 772 | 307A+712 | We agree with the conclusions of these courts insofar as their decisions deal with the constitutionality of mandatory legislative continuances when the non-moving party faces irreparable harm. At the same time we reiterate the limited nature of our holding: a legislative continuance is mandatory except in those cases in which the party opposing the continuance alleges that a substantial existing right will be defeated or abridged by delay. In cases of this type the trial court has a duty to conduct a hearing on the allegations. If the allegations are shown to be meritorious the court should deny the continuance. | Legislative continuance is mandatory except in those cases in which party opposing continuance alleges that substantial existing right will be defeated or abridged by delay; in cases of this type, trial court has duty to conduct hearing on such allegations, and if allegations are shown to be meritorious court should deny continuance. Vernon's Ann.Civ.St. art. 2168a. | Is a legislative continuance mandatory? | 029374.docx | LEGALEASE-00135419-LEGALEASE-00135420 | Order, SA, Sub | 0.41 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13464 | Enter. Recovery Sys. v. Salmeron, 401 Ill. App. 3d 65 | 307A+483 | As additional support for its summary judgment motion, Enterprise appended as an exhibit its requests for admission, which Salmeron had never answered. As Salmeron concedes on appeal, the failure to answer requests for admission meant that all factual statements in the requests were deemed to be admitted by Salmeron. 134 Ill. 2d R. 216; Robbins v. Allstate Insurance Co., 362 Ill.App.3d 540, 542"43, 298 Ill.Dec. 879, 841 N.E.2d 22, 25 (2005). Thus, Salmeron admitted the following facts. Before signing the release in settlement of the sexual harassment lawsuit against Enterprise and Tornatore, Salmeron believed, and told her lawyer, that Enterprise was submitting false claims, false statements, and false records to the Department of Education. Before signing the release, Salmeron gathered documentation from Enterprise to support this belief and provided her lawyer with that documentation. When she signed the release, Salmeron did not intend to release all claims arising from her employment with Enterprise, as the release stated she was doing. She knew that she would be bringing a qui tam lawsuit against Enterprise. After receiving the final payment required by the release, Salmeron contacted the Department of Education about her belief that Enterprise was submitting false claims, false statements, and false records. During her employment with Enterprise, Salmeron never notified Enterprise's president, Sam Tornatore, about her belief that certain employees of Enterprise were submitting false claims, false statements and false records to the Department of Education. | The failure to answer requests for admission means that all factual statements in the requests are deemed to be admitted. | Does the failure to answer requests for admission mean that all factual statements in the requests are deemed to be admitted? | Pretrial Procedure - Memo # 3637 - C - CK.docx | ROSS-003290512-ROSS-003290513 | Order, SA, Sub | 0.92 | 1 | 0 | 1 | 1 | 1 |
| 13465 | In re Sewell, 472 S.W.3d 449 | 307A+483 | The Texas Supreme Court has stated that the primary purpose of requests for admissions is " "to simplify trials by eliminating matters about which there is no real controversy, but which may be difficult or expensive to prove." " Stelly, 927 S.W.2d at 622 (quoting Sanders, 227 S.W.2d at 208). "When requests for admissions are used as intended"addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents"deeming admissions by default is unlikely to compromise presentation of the merits." Wheeler, 157 S.W.3d at 443 (citing Stelly, 927 S.W.2d at 622). Thus, they were never intended to be a trap in which a party admits he has no cause of action or defense. Marino, 355 S.W.3d at 632 (citing Stelly, 927 S.W.2d at 622). | Deemed admissions were never intended to be a trap in which a party admits he has no cause of action or defense. | Are deemed admissions intended to be a trap in which a party admits he has no cause of action or defense? | Pretrial Procedure - Memo # 3644 - C - AP.docx | ROSS-003290514-ROSS-003290515 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 13466 | Novak v. Novak, 2007 S.D. 108 | 307A+485 | ttorney fees are mandatory for failure to admit facts later proven by the moving party unless a statutory exception is met. See Stull v. Sparrow, 92 Cal.App.4th 860, 864-66, 112 Cal.Rptr.2d 239 (Explaining that expenses and fees are mandatory under rule 37(c) because the purpose is to expedite trial by encouraging admissions where warranted and to reimburse the costs of proof, not to penalize). Whether an award is warranted is left to the sound discretion of the circuit court, which has "broad discretion with regard to sanctions imposed [.]" Id. | Whether an award of attorney fees is warranted, for the failure to admit facts set forth in a request for admissions which are later established, is left to the sound discretion of the circuit court, which has broad discretion with regard to sanctions imposed. SDCL S 15-6-37(c)(2). | Does a court have broad discretion to determine amount of a reasonable attorney fee on motion for costs of proof? | 030080.docx | LEGALEASE-00135069-LEGALEASE-00135070 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 13467 | W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co., 208 F. Supp. 3d 1227 | 386+10 | This claim can only be construed as one for indirect, as opposed to direct, trespass. "[A]n indirect trespass occurs where the trespasser releases a "foreign polluting matter" beyond the boundaries of his property, knowing to a "substantial certainty" that it will invade the property." Russell Corp. v. Sullivan, 790 So.2d 940, 946"47 (Ala. 2001) (quoting Rushing v. Hooper"McDonald, Inc., 293 Ala. 56, 300 So.2d 94 (1974)) | Under Alabama law, an indirect trespass occurs where the trespasser releases a foreign polluting matter beyond the boundaries of his property, knowing to a substantial certainty that it will invade the property. | When does indirect trespass occur? | 047370.docx | LEGALEASE-00135250-LEGALEASE-00135251 | Order, SA, Sub | 0.5 | 1 | 0 | 1 | 1 | 1 |
| 13468 | New York State Elec. & Gas Corp. v. Cty. of Chemung, 137 A.D.3d 1550 | 386+11 | By its second cause of action, plaintiff alleges that defendants' "voluntary acts have and continue to encroach on, impede and trespass upon [its] rights-of-ways ... and on its gas facilities." "The essence of trespass is injury to the right of possession, and such trespass may occur under the surface of the ground. A person need not have title to the property but must simply have sufficient property rights to maintain an action for trespass" (Bloomingdales, Inc. v. New York City Tr. Auth., 13 N.Y.3d at 66, 886 N.Y.S.2d 663, 915 N.E.2d 608 [citation omitted] ). Here, at least arguably, plaintiff identified instances of continuing interference with its utilities, to wit: a log or pole fastened to a service lateral and the presence of electrical tape. In Town of Oyster Bay v. Lizza Indus., Inc. (supra ), relied upon by Supreme Court, the rejected trespass claim was based on continuing defects, not continuing interference or encroachment. Here, in contrast, plaintiff has alleged that defendants placed these materials on the service laterals and that the continuing presence of same caused some damage. To this limited extent, the claim for continuing trespass is timely and should not have been dismissed (see Bloomingdales, Inc. v. New York City Tr. Auth., 13 N.Y.3d at 66, 886 N.Y.S.2d 663, 915 N.E.2d 608; 509 Sixth Ave. Corp. v. New York City Tr. Auth., 15 N.Y.2d 48, 52"53, 255 N.Y.S.2d 89, 203 N.E.2d 486 [1964] ). For the same reasons, we find that plaintiff's causes of action for public and private nuisance are timely (see Bloomingdales, Inc. v. New York City Tr. Auth., 13 N.Y.3d at 66, 886 N.Y.S.2d 663, 915 N.E.2d 608). | The essence of trespass is injury to the right of possession, and such trespass may occur under the surface of the ground; a person need not have title to the property but must simply have sufficient property rights to maintain an action for trespass. | Can a person not having the title to property maintain a trespass action? | 047378.docx | LEGALEASE-00135268-LEGALEASE-00135269 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13469 | United States v. Anderson, 509 F.2d | 63+1(1) | We note initially that inconsistent verdicts are not self-vitiating. Beyond that, the verdicts as to Anderson and Brewster, respectively, are not per se inconsistent. The payment and the receipt of a bribe are not interdependent offenses, for obviously the donor's intent may differ completely from the donee's. Thus the donor may be convicted of giving a bribe despite the fact that the recipient had no intention of altering his official activities, or even lacked the power to do so. | Donor may be convicted of giving a bribe despite the fact that the recipient had no intention of altering his official activities, or even lacked the power to do so. 18 U.S.C.A. S 201(a, b). | "In a bribery case, should the conviction of the donor and donee always be consistent?" | 011303.docx | LEGALEASE-00136739-LEGALEASE-00136740 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13470 | Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, 369 F.3d 212 | 63+1(1) | To be sure, Starwood's failure to turn vendor payments over to the Blue Tree Owners may constitute a breach of its fiduciary duties under the Management Agreements, an issue as to which we express no view. But commercial bribery cannot be committed unilaterally by an alleged bribe receiver: one cannot be guilty of receiving a commercial bribe unless someone else is guilty of paying it. In New York, for instance, commercial bribery is defined as "confer[ring], or offer[ing] or agree[ing] to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs."5 N.Y. Penal L. " 180.00. As New York Judge William Donnino has explained in his commentary to this statute, "[t]he essence of bribery, as defined in this article, is in the "intent" to influence improperly the conduct of another by bestowing a benefit, and the essence of bribe receiving is in the "agreement or understanding" that the recipient's conduct will be influenced by the benefit." William C. Donnino, Practice Commentary, appended to N.Y. Penal L. " 180.00 (McKinney's 1998). | Commercial bribery cannot be committed unilaterally by an alleged bribe receiver: one cannot be guilty of receiving a commercial bribe unless someone else is guilty of paying it. | Can commercial bribery be committed unilaterally? | Bribery - Memo #428 - C - LB.docx | ROSS-003291586-ROSS-003291587 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13471 | State v. Knight, 140 Ohio App. 3d 797 | 63+1(1) | A police officer's duties as a public servant arise from statutes, rules, and regulations. See State v. Duvall (June 6, 1997), Portage App. No. 95"P"0140, unreported, 1997 WL 360695. R.C. 737.11 provides that the general duties of a city's police force are to "preserve the peace, protect persons and property, and obey and enforce all ordinances [laws, and court orders]." A police officer's duty for purposes of a prosecution for bribery may also arise from usage or custom. See State v. Italiano (1985), 18 Ohio St.3d 38, 40, 18 OBR 75, 77, 479 N.E.2d 857, 860, citing United States v. Birdsall (1914), 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930, and Kable v. State (1973), 17 Md.App. 16, 299 A.2d 493 (noting that a police officer's duty to confer with the prosecutor regarding reduction of criminal charges arose by custom or usage). | A police officer's duty, for purposes of a prosecution for bribery, may arise from usage or custom. | Where do a police officers duties arise from for purposes of a prosecution for bribery? | 011701.docx | LEGALEASE-00136632-LEGALEASE-00136633 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 13472 | Upton v. State, 166 Ga. App. 541 | 63+1(1) | That Rice may not have been "entitled" under the terms of his public employment to receive money for private work does not demonstrate that soliciting and receiving such compensation is bribery. "Bribery may consist in an offer to give money or to make any promise for the payment, delivery, or alienation of any money, to any officer of this State, in order to influence his behavior in any matter pending before him." Perry v. State, 118 Ga.App. 22, 23(2), 162 S.E.2d 466 (1968). If, under the terms of his public employment, Rice was "not entitled" to engage in and receive money for such private work as he had performed on Mansour's project, that fact demonstrates only a conflict between his public and private interests and a breach of his employment contract with the City of Snellville. The very fact of payment to Rice for private work done in violation of his public employment would demonstrate that, in soliciting and receiving such payment, appellants were not guilty of the offense of bribery. ""It is ... a universal principle that where the act is entirely outside of the official functions of the officer to whom the bribe is offered, the offense is not bribery." [Cit.] ... The principle that a person can only be bribed to do or not to do something in the line of his official duty is so generally recognized, and is so clearly of the very essense of our bribery statute, that further citation of authority is deemed unnecessary." (Emphasis supplied.) Taylor v. State, 42 Ga.App. 443, 449, 156 S.E. 623 (1930). | Where an act is entirely outside of official functions of officer to whom bribe is offered, offense is not bribery. O.C.G.A. S 16-10-2. | Can a public officer be bribed where the induced act is entirely outside of the official functions of him? | 011875.docx | LEGALEASE-00136158-LEGALEASE-00136159 | Order, SA, Sub | 0.91 | 1 | 0 | 1 | 1 | 1 |
| 13473 | Railey v. State, 58 Tex. Crim. 1 | 67+2 | In the case of Garner v. State, 31 Tex. Cr. R. 22, 19 S. W. 333, we used this language: "Article 707 of our Penal Code (the old number which corresponds with article 841 of the present Code) defining what constitutes an entry in burglary, declares that it may be constituted by the discharge of firearms or other deadly missile into the house, with intent to injure any person therein.' Under this provision of the statute, to discharge firearms into a house with intent to injure any person therein is per se burglary, and constitutes all the force and entry that is necessary and essential to that crime. Our conclusion is that the indictment in this case is not defective, for the reason stated by appellant's counsel in his motion to quash; and we are further of opinion that it sufficiently charges a burglary by the discharge of firearms into a house with intent to injure the persons therein. The indictment is in substantially the same language as that used for a similar offense in the case of Searcy v. State, 1 Tex. App. 440, and which indictment was pronounced to be good by the opinion of the court in that case." We hold that article 841 is but an addition to articles 838 and 839, and that the true construction to be placed upon it would be to make article 838 read as follows: The offense of burglary is constituted by entering a house by force, threats or fraud at night, or in a like manner entering a house and remaining concealed therein with the intent in either case to commit a felony or the crime of theft, or it may be constituted by the discharge of firearms or other deadly missileinto a house with intent to injure the person therein. The Code itself provides that same must be construed as one harmonious whole, and each provision thereof given validity and force without regard to the distinction that existed at common law between the construction of civil and criminal statutes. In the light of this rule of construction, both statutory and common law, we hold that it would be a strained | Pen.Code 1895, art. 838 (Vernon's Ann.P.C. art. 1389), provides that burglary is constituted by the entrance of a house by force, threats, or fraud, with intent to commit a felony or theft. Article 839 (1390) provides that one is guilty of burglary who, with intent to commit a felony or theft, by breaking enters the house in the daytime. Article 841 (1393) provides that the entry may consist of the entry of any part of the body, or that the offense may be constituted by the discharge of firearms into the house with the intent to injure the person therein. Held, that article 841 (1393) is but an addition to articles 838 and 839 (1389, 1390), and under the three articles, burglary may consist of entering a house by force, etc., or in entering a house and remaining therein with the intent to commit a felony, or by the discharge of firearms into a house with the intent to injure the person therein, and the intention need not be to commit a felony. | Does entry in a burglary involve the discharge of firearms? | Burglary - Memo 124 - JS.docx | ROSS-003332001-ROSS-003332003 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13474 | Wright v. Minneapolis St. Ry. Co., 222 Minn. 105 | 200+175 | The right-of-way rule is simply a rule of precedence as to which of two users of intersecting highways shall have the immediate right of crossing first at an intersection where the users simultaneously approach the intersection on the intersecting streets so nearly at the same time and at such rates of speed that, if they proceed without regard to each other, a collision or interference between them is reasonably to be apprehended. The application of the rule is restricted to such situations. Casto v. Hansen, Automobiles, 7th Ed., The privilege conferred by right of way is that of an Immediate crossing by a Moving pedestrian or vehicle without interruption by another, and Not of a future crossing by a Standing one after first starting and moving. A vehicle or pedestrian standing still on a highway can have no right of way over other vehicles or pedestrians, whatever their rights otherwise might be. Guillory v. United Gas Public Service Co., La.App., 148 So. 274 (moving automobile and stationary pedestrian); DeSena v. American Reduction Co., (moving and standing automobiles); Blackwood v. Monongahela Valley Traction Co., (streetcar standing at crossing starting suddenly held not to have right of way over motorist crossing intersection in front of it); 2 Blashfield, Cyc.Auto. Law & Practice, Perm.Ed., s 992, note 10, s 1272, note 5. | A vehicle or pedestrian standing still on a highway can have no right of way over other vehicles or pedestrians, whatever their rights otherwise might be. Minn.St.1941, S 169.01, subd. 45, S 169.21, subd. 2. | Does a pedestrian standing still on the highway have a right of way over other vehicles? | 019248.docx | LEGALEASE-00136810-LEGALEASE-00136811 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 13475 | Krug v. Meehan, 109 Cal. App. 2d 274 | 302+35 | Undue influence consists: "1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; 2. In taking an unfair advantage of another's weakness of mind; or, 3. In taking a grossly oppressive and unfair advantage of another's necessities or distress." Civ.Code, " 1575. We are concerned with the first class only as there is no allegation that Cleary was weak of mind. Defendant argues that the pleading does not allege any facts but only conclusions of the pleader. Of course a mere averment that an instrument was procured by undue influence is a statement of a conclusion of law. Estate of Stoddart, 174 Cal. 606, 610, 163 P. 1010. An averment of a conclusion of law is ordinarily deemed to be surplusage and will be disregarded in considering the sufficiency of a pleading. Ohm v. City and County of San Francisco, 92 Cal. 437, 449"450, 28 P. 580; Callahan v. Broderick, 124 Cal. 80, 82"83, 56 P. 782. The complaint must allege ultimate facts, not evidentiary facts or conclusions of law. The line of demarcation between a conclusion of fact and a conclusion of law is not easy to draw in all cases. The allegation of an ultimate fact usually, if not always, involves one or more conclusions. The rule which requires allegations of facts where undue influence is the issue does not require the allegation of evidentiary facts but only that ultimate facts be pleaded; it does not exclude conclusions of fact but only conclusions of law. Estate of Bixler, 194 Cal. 585, 589"590, 229 P. 704; Lewis v. Beeks, 88 Cal.App.2d 511, 521, 199 P.2d 413; Green v. Darling, 73 Cal.App. 700, 703, 239 P. 70; Lester v. Beer, 74 Cal.App.2d Supp. 984, 989, 168 P.2d 998. If substantial facts which constitute a cause of action are averred in the complaint or can be inferred by reasonable intendment from the matters which are pleaded, although the allegations of these facts are intermingled with | An averment of conclusion of law is ordinarily deemed surplusage and will be disregarded in considering sufficiency of pleading. | Will an averment of conclusion of law be disregarded in considering sufficiency of pleading? | Pleading - Memo 309 - RMM.docx | ROSS-003291637-ROSS-003291638 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 13476 | Morgan v. Crowley, 91 Ga. App. 58 | 302+207 | The defendant's answer as finally amended was demurred to both generally and specially on numerous grounds. Many of the grounds of special demurrer sought to elicit additional information and more definite allegations of the initial allegations of facts. Reasonable certainty is all that the law requires of a pleader even as against a special demurrer. Charleston & W. C. Ry. Co. v. Attaway, 7 Ga.App. 231(2), 66 S.E. 548. A party is not required to set out his entire cause of action or defense in a single paragraph of his pleading, Louisville & N. R. Co. v. Watts, 20 Ga.App. 637, 638, 93 S.E. 255, and it is generally sufficient if the entire pleading sets forth the facts upon which the party relies with sufficient detail and clarity to enable the opposing party to know and understand what contentions he has to meet. Under the foregoing rules of law, special demurrer numbered II-attacking paragraph 3 of the plea and answer as amended on the ground that "there are no issuable defenses to the note sued on herein nor are any defenses shown in the contract referred to in said paragraph 3", and special demurrer III(2)-attacking paragraph 4 of the plea and answer on the ground no facts are shown to substantiate the statements set out in that paragraph, and special demurrer III(3) and (4)-seeking allegations of additional facts, and special demurrers IV(1) and (2)-attacking paragraph 5 of the plea and answer, and special demurrers V(1), (2) and (3)-attacking paragraph 6 because it does not state where or when the discovery took place nor of what the discovery consisted, nor when or to whom the tender back was made and does not state the value of the portion of the property not tendered back, and so much of special demurrer VI as seeks additional facts in paragraph 7 of the plea and answer as to why the defendant "is entitled" to the return of his money, and demurrer XII(3)-attacking paragraph 16 of the petition for failure to allege sufficient information, | Factitious demands by special demurrer are not favored, and practice of requiring unnecessary elaboration of pleadings by process of such special demurrers should not be encouraged. | Are factitious demands by special demurrer favored? | 023340.docx | LEGALEASE-00136530-LEGALEASE-00136531 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13477 | Bd. of Comm'rs of Tipton Cty. v. Brown, 4 Ind. App. 288 | 307A+716 | Nor do we think the sickness of counsel was a sufficient ground for continuance. It is not stated in the affidavit how long Mr. Gifford had been sick, and, for aught we know, sufficient time may have elapsed for employing additional counsel or for giving Mr. Fippen, the partner of the absent attorney, ample instructions as to the defense, and advising him in the premises. We do not think it is shown that the absence of the attorney Gifford prejudiced the appellant's case. Whitehall v. Lane, 61 Ind. 93; Belck v. Bleck, 97 Ind. 73; Moulder v. Kempff, 115 Ind. 459, 17 N. E. Rep. 906. We have examined all the errors discussed, and find none for which we feel authorized to reverse the judgment. While we have serious doubts as to the propriety of holding a county liable for services rendered under the circumstances disclosed in this case, we must adhere to the well"established rule that an appellate court in this state will reverse a cause only for some specified legal reason, properly presented by the record and discussed in the brief of appellant's counsel. It was the duty of the court below to grant a new trial, unless it was clearly satisfied that the result reached was just and proper, and, having failed to do this, we must assume that the sanction it gave to the verdict was justified by the facts and circumstances of the case, of which it was in a much better position to judge than we are. | The sickness of counsel is not a sufficient ground for continuance, where it is not shown that such sickness prejudiced the client's case. | "Is the sickness of counsel not a sufficient ground for continuance, where it is not shown that such sickness prejudiced the client's case?" | 029267.docx | LEGALEASE-00136061-LEGALEASE-00136062 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 13478 | Gilcrease v. Bacarisse, 26,318 (La. App. 2 Cir. 12/7/94) | 307A+716 | Fairness to both parties and the need for orderly administration of justice are proper considerations in deciding whether to grant or deny a continuance. Austin v. Bearden, 566 So.2d 1003 (La.App. 3d Cir.), writ denied, 568 So.2d 1086 (1990) (emphasis added). The trial court could not possibly have predicted when, or if, plaintiff would retain an attorney, and the court cannot be closed to defendants who wish to have the case resolved. Austin, supra. Plaintiff is not entitled to indefinite continuances simply because she contends she is unable to secure counsel. Every, supra; Bowser v. Burch, 568 So.2d 1161 (La.App. 5th Cir.1990); Young v. Bayou Steel Corp., 588 So.2d 171 (La.App. 5th Cir.1991). | Party is not entitled to indefinite continuances simply because she contends she is unable to secure counsel. | Is a party not entitled to indefinite continuances simply because she contends she is unable to secure counsel? | 029452.docx | LEGALEASE-00136436-LEGALEASE-00136437 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13479 | Willoughby v. Upshur Rural Elec. Co-op. Corp., 562 S.W.2d 33 | 307A+716 | In his second point, appellant contends that the trial court abused its discretion in refusing to grant his motion for continuance because the attorney employed by him as trial counsel could not be present due to prior criminal settings. It is within the discretion of the court to grant a continuance due to the absence of counsel. Tex.R.Civ.P. 253; Browne v. Jefferson County, 507 S.W.2d 293 (Tex.Civ.App. Beaumont 1974, writ ref'd n. r. e.). Appellant claims that R. L. Whitehead, Jr., was his attorney. However, David Kirk of the firm of Whitehead-Beckworth signed appellant's answer filed in the case. Of those attorneys available at the trial, both David Kirk and Mart Lapin had been associated with the proceedings from their inception. R. L. Whitehead, Sr., a very experienced trial attorney, was a senior partner in the firm of Whitehead-Beckworth. In fact, even a superficial reading of the statement of facts shows Mr. Whitehead, Sr., was very familiar with the facts of the case and ably represented appellant at the trial of the case. In failing to grant appellant's motion for continuance, the trial court did not abuse its discretion. See Echols v. Brewer, 524 S.W.2d 731, 734 (Tex.Civ.App. Houston (14th Dist.) 1975, no writ). Appellant's second point of error is overruled. | It is within discretion of trial court to grant continuance due to absence of counsel. Rules of Civil Procedure, rule 253. | Is it within discretion of trial court to grant continuance due to absence of counsel? | 029460.docx | LEGALEASE-00136463-LEGALEASE-00136464 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 13480 | Travis v. Commercial Union Ins. Co., 569 So. 2d 115 | 307A+483 | When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment. Generally, when an obligation is based on a writing, prima facie proof of the obligation requires introducing that writing. Ascension Builders, Inc. v. Jumonville, 263 So.2d at 878; Sudds v. Protective Casualty Insurance Company, 554 So.2d at 151. A jurisprudential exception is that when the plaintiff requests admissions of contractual coverage or production of the policy, the defendant's failure to comply may be construed as supplying the missing proof. Sudds v. Protective Casualty Insurance Company, 554 So.2d at 151. See Succession of Rock v. Allstate Life Insurance Company, 340 So.2d at 1329. | Generally, when obligation is based on writing, prima facie proof of obligation requires introducing that writing; jurisprudential exception is that when plaintiff requests admissions of contractual coverage or production of policy, defendant's failure to comply may be construed as supplying missing proof. | "When an obligation is based on writing, does a prima facie proof of obligation require introducing that writing?" | Pretrial Procedure - Memo # 3701 - C - TM.docx | ROSS-003290882-ROSS-003290883 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 13481 | 19th St. Baptist Church v. St. Peters Episcopal Church, 190 F.R.D. 345 | 170A+1292 | To perpetuate the testimony of a witness means to record, prior to trial and for use at trial, the witness' known testimony in a case where the witness may be unavailable for trial. See In re Petition of Randy Banks, 1993 WL 502379, (N.D.Ill.1993)(noting that "perpetuation" means "the perpetuation of known testimony"). The concept of perpetuation of testimony has ancient roots deeply grounded in equity. See Nicholas A. Kronfeld, The Preservation and Discovery of Evidence under Federal Rule of Civil Procedure 27, (Note) 78 GEO. L.J. 593, 593"94 (1990) (tracing perpetuation of testimony to ancient Greece). | To "perpetuate the testimony of a witness" means to record, prior to trial and for use at trial, the witness' known testimony in a case where the witness may be unavailable for trial. | Are perpetuation depositions arranged by the litigants when it becomes known that a witness will be unavailable to testify at trial? | 030165.docx | LEGALEASE-00137055-LEGALEASE-00137056 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13482 | Chambers v. Pruitt, 241 S.W.3d 679 | 307A+483 | The trial court has broad discretion to permit or deny the withdrawal of deemed admissions as long as it does not act unreasonably, arbitrarily, or without reference to guiding principles. See Wheeler v. Green, 157 S.W.3d 439, 442 (Tex.2005). It is axiomatic, however, that requests for admissions must be served and received before a failure to answer will result in deemed admissions. See Payton v. Ashton, 29 S.W.3d 896, 898 (Tex.App.-Amarillo 2000, no pet.). Here, there was no evidence the admissions were properly served and received. The request for admissions Chambers sought to admit into evidence was not signed, nor was there a signed certificate of service. Chambers told the court she sent the document to Pruitt by certified mail and received a return receipt green card marked "refused." Pruitt testified she did not receive the admissions. Therefore, there were no deemed admissions, and the trial court did not abuse its discretion when it refused to admit the document into evidence. | Requests for admissions must be served and received before a failure to answer will result in deemed admissions. | Should requests for admissions be served and received before a failure to answer will result in deemed admissions? | 030171.docx | LEGALEASE-00136996-LEGALEASE-00136997 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 13483 | Masten v. Gower, 165 S.W.2d 901 | 307A+483 | This court has held that a failure to answer at all has the effect of a judicial admission, which cannot be controverted upon the trial. Perry Masten v. Lewis Masten, Tex.Civ.App., 165 S.W.2d 225. But in the present case the defendant did answer, upon permission granted by the trial court. We are not able to perceive any error in the action of the trial court. But if the trial court committed error, appellants have failed to show that they suffered any injury from the delay in filing the answer to the request for admissions. They have not shown that they are in any different position than they would have been if the answer of the defendant to the request for admissions had been filed immediately after it was served upon her. | A party's failure to answer inquiries on adverse party's written request for admission or denial of relevant facts has effect of a "judicial admission", which cannot be controverted upon the trial. Rules of Civil Procedure, rule 169. | "Does a party's failure to answer at all has the effect of a ""judicial admission"", which cannot be controverted upon the trial?" | Pretrial Procedure - Memo # 3951 - C - TM.docx | ROSS-003290587-ROSS-003290588 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 13484 | Delta Disc. Co. v. Fryer, 244 Ark. 489 | 307A+477.1 | The sole argument for reversal is that this court has adopted the rule that answers to requests for admissions must be verified by the responding party, rather than by his attorney, upon an erroneous assumption that this view is supported by the weight of authority. Appellant asserts that the weight of authority supports the view that a sworn statement by the attorney for the party whose admissions are requested constitutes a sufficient response. | Answers to requests for admissions must be verified by responding party rather than by his attorney. | Should answers to requests for admissions be verified by the responding party rather than by his/her attorney? | 030262.docx | LEGALEASE-00136922-LEGALEASE-00136923 | Order, SA, Sub | 0.78 | 1 | 0 | 1 | 1 | 1 |
| 13485 | Prof'l Rodeo Cowboys Ass'n v. Wilch, Smith & Brock, 42 Colo. App. 30 | 30+3711 | The awarding of costs under C.R.C.P. 37(c) is within the sound discretion of the trial court and will not be interfered with on appeal absent an abuse of that discretion. See Lamont v. Riverside Irrigation District, 179 Colo. 134, 498 P.2d 1150 (1972); Superior Distributing Corp. v. White, 146 Colo. 595, 362 P.2d 196 (1961). Here the trial court granted the motion because "no reason (was) shown why reasonable expenses incurred should not be granted . . . ." Under the circumstances we cannot say that there was an abuse of discretion. | Award of costs for expenses incurred by plaintiff in proving facts which defendants have previously failed to admit is within sound discretion of trial court and will not be interfered with on appeal absent abuse of discretion. Rules of Civil Procedure, rule 37(c). | Is awarding of costs within sound discretion of a court? | 030300.docx | LEGALEASE-00136894-LEGALEASE-00136895 | SA, Sub | 0.51 | 0 | 0 | 1 | 1 | |
| 13486 | Ethridge v. Perryman, 363 S.W.2d 696 | 307A+720 | We find no error in the action of the trial court. The amended petition stated a claim upon which relief can be granted. "[E]quity had jurisdiction on a proper showing made to correct the description in the original mortgage and to order another foreclosure and sale by the proper description,." 76 C.J.S. Reformation of Instruments, " 42, p. 392, fn. 28; Conyers v. Mericles, 75 Ind. 443; McCasland v. Aetna Life Ins. Co., 108 Ind. 130, 9 N.E. 119; Fisher v. Villamil, 62 Fla. 472, 56 So. 559, 39 L.R.A.,N.S., 90; Marks v. Taylor, 23 Utah 470, 65 P. 203. There was no error in overruling the motion to dismiss. We find no abuse of discretion in ordering the case to trial without further delay. An amendment of an adversary's pleading does not entitle a party to a continuance as of course, Peterson v. Metropolitan St. Ry. Co., 211 Mo. 498, 111 S.W. 37, and where it appears from the pleadings, application for continuance and testimony that the parties have prepared to meet the issues tendered by the amendment, a continuance on account of the amendment is not necessary. Mangelsdorf Bros. Co. v. Harnden Seed Co., 132 Mo.App. 507, 112 S.W. 15. No showing was made that defendants were not ready to meet the allegations of the amended petition, or that different witnesses not then available would be required, or that defendants' rights were prejudiced in any manner. Counsel for defendants conceded at the hearing in circuit court that in the amended petition plaintiffs were asking for some but not all of the relief prayed for in the original petition, and that "the evidence would be the same." | Where it appears from pleadings, application for continuance and testimony that parties have prepared to meet issues tendered by amendment, a continuance on account of the amendment is not necessary. V.A.M.R. Civil Rule 55.53; Section 509.490 RSMo 1959, V.A.M.S. | Does an amendment of an adversary's pleading not entitle a party to a continuance as of course? | 030333.docx | LEGALEASE-00136442-LEGALEASE-00136443 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 13487 | Cunningham v. Columbia/St. David's Healthcare Sys., 185 S.W.3d 7 | 307A+720 | By the time Columbia sought summary judgment, this case had been on file for over a year. Cunningham filed Marable's 4590i report in August 2003 and agreed in January 2004 that she would designate all testifying experts by June 2004. Thus, Cunningham had almost a year to consider whether she would call Marable as a testifying expert, and she was on notice for five months of the deadline by which she had to make this decision and properly designate him. Also, as is evidenced by Cunningham's initial response to Columbia's requests for disclosure, she was aware in December 2003 (eight months before Columbia sought summary judgment) that she needed to supplement her response to designate an expert. Nonetheless, Cunningham failed to follow through with the designation. Although Cunningham attempts to blame this failure on the mistake of a legal assistant, it is established that an attorney's misplaced reliance on an assistant does not constitute due diligence. See Agristor Credit Corp., 568 S.W.2d at 426; Williams v. Basham, No. 05"93"00471"CV, 1995 WL 234520, at (Tex.App.-Dallas, April 19, 1995, no writ) (not designated for publication). | An attorney's misplaced reliance on an assistant does not constitute due diligence to obtain discovery sought, as would warrant granting continuance to allow party to make, amend, or supplement its discovery response. Vernon's Ann.Texas Rules Civ.Proc., Rule 193.6(c). | Does an attorney's misplaced reliance on an assistant constitute due diligence to obtain discovery sought? | 030430.docx | LEGALEASE-00136185-LEGALEASE-00136186 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13488 | Dillingham v. I.N.S., 267 F.3d 996 | 24+397 | Under equal protection analysis, "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." Heller v. Doe, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). We review such classifications to determine whether they are supported by a rational basis. See id. at 319"320, 113 S.Ct. 2637. Furthermore, because federal authority in immigration matters is plenary, federal classifications differentiating between groups of aliens are subject to "relaxed scrutiny." Dillingham v. I.N.S., 267 F.3d 996 Such classifications will be held valid unless "wholly irrational." Mathews, 426 U.S. at 83, 96 S.Ct. 1883; Garberding, 30 F.3d at 1190; Sudomir v. McMahon, 767 F.2d 1456, 1464 (9th Cir.1985). We apply these established principles in our discussion below. | Because federal authority in immigration matters is plenary, federal classifications differentiating between groups of aliens are subject to relaxed scrutiny. | Are federal classifications distinguishing or differentiating among groups of aliens valid? | 007013.docx | LEGALEASE-00137611-LEGALEASE-00137612 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13489 | Dillingham v. I.N.S., 267 F.3d 996 | 24+397 | Under equal protection analysis, "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." Heller v. Doe, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). We review such classifications to determine whether they are supported by a rational basis. See id. at 319"320, 113 S.Ct. 2637. Furthermore, because federal authority in immigration matters is plenary, federal classifications differentiating between groups of aliens are subject to "relaxed scrutiny." Nyquist v. Mauclet, 432 U.S. 1, 7 n. 8, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977); Garberding, 30 F.3d at 1190. Such classifications will be held valid unless "wholly irrational." Mathews, 426 U.S. at 83, 96 S.Ct. 1883; Garberding, 30 F.3d at 1190; Sudomir v. McMahon, 767 F.2d 1456, 1464 (9th Cir.1985). We apply these established principles in our discussion below. | Because federal authority in immigration matters is plenary, federal classifications differentiating between groups of aliens are subject to relaxed scrutiny. | Is federal authority in immigration matters plenary? | Aliens_Immigration and Citizenship_Memo 9 - GP.docx | ROSS-003289941-ROSS-003289942 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13490 | Smith v. Sec'y of Army, 384 F.3d 1288 | 34+5(6) | As a general matter, a service member is entitled only to the salary of the rank to which he is appointed and in which he serves. See James v. Caldera, 159 F.3d 573, 582 (Fed.Cir.1998); Dodson v. United States, 988 F.2d 1199, 1208 (Fed.Cir.1993); Skinner v. United States, 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979). For that reason, in a challenge to a decision not to promote, the Military Pay Act ordinarily does not give rise to a right to the pay of the higher rank for which the plaintiff was not selected. See Law v. United States, 11 F.3d 1061, 1064 (Fed.Cir.1993); Howell v. United States, 230 Ct.Cl. 816, 817 (1982); Knightly v. United States, 227 Ct.Cl. 767, 769 (1981) ("We do not have jurisdiction of a back pay claim predicated on a promotion not received."). | As a general matter, a military service member is entitled only to the salary of the rank to which he is appointed and in which he serves. | Is a military service member entitled only to the salary of the rank to which he is appointed and in which he serves? | Armed Services - Memo 167 - JS.docx | ROSS-003290398-ROSS-003290399 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13491 | Beitner v. Becker, 34 A.D.3d 406 | 8.30E+56 | The Supreme Court properly denied those branches of the plaintiff's motion which were for summary judgment on the first and second causes of action. In the first cause of action, the plaintiff sought to enforce the terms of a memorandum of indebtedness (hereinafter the memorandum) allegedly executed by the defendant on July 6, 1998, in which the defendant purportedly stated only that he "owe[d]" the plaintiff certain corporate stock, negotiable instruments, and action warrants. This memorandum was not in the form of a promissory note, as it did not by its terms contain a promise to pay (see Uniform Commercial Code " 3"104[1][a]"[d]; 3"104[2][d] ). Rather, the memorandum constituted a voluntary and unenforceable executory promise (see Dougherty v. Salt, 227 N.Y. 200, 202, 125 N.E. 94; McCain v. Manhasset Mach. Co., 45 A.D.2d 965, 966, 359 N.Y.S.2d 348; Winthrop v. Bates, 278 App.Div. 42, 46, 103 N.Y.S.2d 343, affd. 303 N.Y. 952, 106 N.E.2d 50; Graham v. Denton, 253 App.Div. 910, 2 N.Y.S.2d 175; Sheehy v. Kane, 227 App.Div. 635, 235 N.Y.S. 882; cf. Schwartzreich v. Bauman"Basch, 231 N.Y. 196, 205, 131 N.E. 887). Hence, the plaintiff failed to establish his entitlement to judgment as a matter of law in connection with the first cause of action, and the Supreme Court properly denied that branch of the plaintiff's motion which was for summary judgment on that cause of action. | Memorandum of indebtedness, which stated only that promisor owed promisee certain corporate stock, negotiable instruments, and action warrants, was not a promissory note, where it did not by its terms contain a promise to pay; rather, the memorandum was a voluntary and unenforceable executory promise. McKinney's Uniform Commercial Code SS 3-104(1)(a-d), (2)(d). | Is a memorandum in the form of a promissory note if it did not by its terms contain a promise to pay? | 010254.docx | LEGALEASE-00137908-LEGALEASE-00137909 | Order, SA, Sub | 0.74 | 1 | 0 | 1 | 1 | 1 |
| 13492 | United States v. Apple, 927 F. Supp. 1119 | 63+1(1) | The provision that the indictment charges Apple with having violated is 18 U.S.C. section 666. Although the indictment does not specify a subsection of 666, the content of the indictment and the arguments of the parties reveal that Apple is charged with bribing a state official in violation of 666(a)(2). Focusing on the statutory language most relevant here, the elements of a section 666(a)(2) violation are roughly as follows: (1) The defendant corruptly gave something of value to any person; (2) with intent to influence a state governmental agency that received more than $10,000 in federal funds in any year; (3) in connection with any business or transaction of the agency; (4) that involved anything of value of $5,000 or more. 18 U.S.C. " 666(a)(2); United States v. Bonito, 57 F.3d 167, 174 (2d Cir.1995), cert. denied, 516 U.S. 1049, 116 S.Ct. 713, 133 L.Ed.2d 667 (1996). The fundamental purpose of the bribery statute is preserving "the integrity of" federal funds that support state government activities. Bonito, 57 F.3d at 172; United States v. Cicco, 938 F.2d 441, 444"45 (3d Cir.1991); Mongelli, 794 F.Supp. at 530; United States v. Little, 687 F.Supp. 1042, 1049 (N.D.Miss.1988). | Fundamental purpose of bribery statute is to preserve integrity of federal funds that support state government activities. 18 U.S.C.A. S 666(a)(2). | What is the fundamental purpose of the federal bribery statute? | 011804.docx | LEGALEASE-00137761-LEGALEASE-00137762 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 13493 | Twp. of Crane v. Secoy, 103 Ohio St. 258 | 316P+863 | It is pretty well settled under the American system of government that a public office is a public trust, and that public property and public money in the hands of or under the control of such officer or officers constitute a trust fund, for which the official as trustee should be held responsible to the same degree as the trustee of a private trust fund. Surely the public rights ought to be as jealously safeguarded as the rights of any individual made the beneficiary of a trust by the private party creating such trusts. | A public office is a public trust, and public property and public money in the hands of or under the control of a public officer constitute a trust fund for which the official as trustee is responsible to the same degree as the trustee of a private trust fund. | Is a public office a public trust? | Bribery - Memo #516 - C-EB.docx | ROSS-003291592-ROSS-003291594 | Order, SA, Sub | 0.51 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13494 | People v. Calderon, 158 Cal. App. 4th 137 | 67+9(2) | Burglary consists of an entry into a building (or other statutorily specified enclosure) with the intent to commit a felony. (Pen.Code, " 459; In re Ryan N. (2001) 92 Cal.App.4th 1359, 1378, 112 Cal.Rptr.2d 620.) "[A] sufficient entry is made to warrant a conviction of burglary when any part of the body of the intruder is inside the premises. [Citations.]" (People v. Failla (1966) 64 Cal.2d 560, 569, 51 Cal.Rptr. 103, 414 P.2d 39.) "Moreover, it has been established that the entry need not be any part of the body, but that an entry may be made by an instrument, where the instrument is inserted for the purpose of committing the felony. [Citations.]" | A sufficient "entry" is made to warrant a conviction of burglary when any part of the body of the intruder is inside the premises. West's Ann.Cal.Penal Code S 459. | Is entry of any part of the body of an intruder sufficient for burglary? | Burglary - Memo 140 - JS.docx | ROSS-003332004-ROSS-003332006 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 13495 | People v. Glazier, 186 Cal. App. 4th 1151 | 67+9(2) | "[B]urglary may be committed by using an instrument to enter a building"whether that instrument is used solely to effect entry, or to accomplish the intended larceny or felony as well." (People v. Davis (1998) 18 Cal.4th 712, 717, 76 Cal.Rptr.2d 770, 958 P.2d 1083.) This burglary-by-instrument doctrine originated in the common law, although "the common law drew a puzzling distinction. An entry by instrument was sufficient for burglary only if the instrument was used to commit the target larceny or felony. Insertion of an instrument for the sole purpose of gaining entry to the building did not constitute burglary. [] The common law drew no such distinction if any part of the defendant's body entered the building." (Id. at p. 716, 76 Cal.Rptr.2d 770, 958 P.2d 1083.) "[T]he reason for this rule is not clear, and California courts have declined to adopt it." (Id. at p. 717, 76 Cal.Rptr.2d 770, 958 P.2d 1083. | Burglary may be committed by using an instrument to enter a building, whether that instrument is used solely to effect entry, or to accomplish the intended larceny or felony as well. West's Ann.Cal.Penal Code S 459. | Is entry using an instrument sufficient for burglary? | 012698.docx | LEGALEASE-00137428-LEGALEASE-00137429 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 13496 | State v. Ewing, 298 S.W.2d 439 | 67+10 | To sustain a charge of second degree burglary, it is essential to show, directly or circumstantially, that some force was used to effect entry. Slight force is sufficient. For example, the force necessary to raise or open an unlocked window or door is sufficient. Entry through an open door or window, however, does not constitute burglary. Thus, in the instant case, if the west door or the back window were left open and defendant entered through either, there was no burglary. State v. Allen, 344 Mo. 335, 337, 126 S.W.2d 236[1]; State v. Stewart, 329 Mo. 265, 270, 44 S.W.2d 100, 102[3"6]. | To sustain a charge of second degree burglary, it is essential to show, directly or circumstantially, that some force was used to effect entry. | Does burglary involve entry by use of force? | 012700.docx | LEGALEASE-00137432-LEGALEASE-00137433 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 13497 | State v. English, 132 Conn. 573 | 410+337(19) | Error is assigned in a ruling upon evidence. The defendant testified in his own behalf, and upon cross-examination was asked: "Are you the John English that was convicted of burglary in Bridgeport on February 11, 1939?" Objection was made and overruled, and the witness answered, "Yes." The record shows that the evidence was offered for the specific purpose of affecting the credibility of the witness, and that the evidence was admitted solely for that purpose. General Statutes, " 5582, in its application to the present circumstances, provides as follows: "No person shall be disqualified as a witness in any action by reason of his interest in the event of the same as a party or otherwise or of his conviction of crime; but such interest or conviction may be shown for the purpose of affecting his credit." The conviction must be of an infamous crime. Card v. Foot, 57 Conn. 427, 433, 18 A. 713. A proper record of conviction for burglary would be admissible as affecting the credibility of the witness, since both common-law and statutory burglary are infamous crimes. See Drazen v. New Haven Taxicab Co., 95 Conn. 500, 509, 111 A. 861. The defendant concedes this but claims that a conviction cannot be shown by asking an accused upon his cross-examination whether he was convicted of burglary at a specified time and place. | Where defendant charged with crime of statutory burglary with violence testified in his own behalf, a proper record of conviction for prior burglary would be admissible as affecting defendant's credibility as a witness, since both common-law and statutory burglary are infamous crimes. Gen.St.1930, SS 5582, 6091, 6097, 6100. | Is burglary an infamous crime? | Burglary - Memo 155 - JS.docx | ROSS-003317187-ROSS-003317189 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 13498 | People v. Dabney, 260 Cal. App. 2d 786 | 67+3 | Appellant inferentially claims that there was such heavy drinking by all of the accused during the night of this carnival of crime that the appellant and the others were so thoroughly intoxicated that they could not form the necessary specificintent in each instance to commit the crime. It is unquestionably true that both burglary and grand theft require a specificintent. In order to obtain a conviction for burglary, the prosecution must prove that the entry was made with the specificintent "to commit grand or petit larceny or any felony." (Pen.Code s 459; People v. Manfredo, 210 Cal.App.2d 474, 478, 26 Cal.Rptr. 817; People v. Green, 228 Cal.App.2d 437, 439, 39 Cal.Rptr. 612.) It is also true that proof of theft requires proof of a specificintent to convert the property to the thief's own use. (Pen.Code s 484; People v. Matlock, 51 Cal.2d 682, 694, 336 P.2d 505, 71 A.L.R.2d 605; People v. Coon, 38 Cal.App.2d 512, 516, 101 P.2d 565; People v. Ford, 60 Cal.2d 772, 792, 36 Cal.Rptr. 620, 388 P.2d 892 cert. den. 377 U.S. 940, 84 S.Ct. 1342, 12 L.Ed.2d 303. It also seems well established that in crimes requiring a specificintent CALJIC 78"B (Rev.) or a similar instruction should be given (People v. Garcia, 169 Cal.App.2d 368, 337 P.2d 100). In the present case, the trial judge did give a correct statement in the course of his charge, although not in the exact language of 78"B (Rev.) (CALJIC, 1967 Cumulative Pocket Parts, p. 74), with respect to the state of mind under which a crime requiringspecificintent is committed as follows:"In the crimes of burglary and grand theft of which each of the defendants are accused in this case, the specificintent to permanently deprive an owner of possession of his property is a necessary element of the crime. "This fact requires an inquiry into the state of mind under which the defendant committed the act charged, if he did commit it. In pursuing that inquiry, it is proper to consider whether he was intoxicated at the time of the alleged offense. | In order to obtain conviction for burglary, prosecution must prove that the entry was made with specific intent to commit grand or petit larceny or any felony. West's Ann.Pen.Code, S 459. | Does burglary require specific intent? | 012754.docx | LEGALEASE-00137402-LEGALEASE-00137403 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 13499 | Holiday Dinner Theatres of Am. v. Bartke, 281 So. 2d 376 | 307A+687 | Further, in considering the motion to dismiss, movant is deemed to admit, as true, for the purposes of the motion only, material facts well pleaded therein. This proposition of law is supported by a plethora of case law too numerous to cite herein. | In considering motion to dismiss, movant is deemed to admit as true material facts well pleaded. 30 F.S.A. Rules of Civil Procedure, rules 1.110(b), 1.120(b). | Will a motion to dismiss admit only well pleaded facts? | Pleading - Memo 346 - RMM.docx | ROSS-003305095-ROSS-003305096 | SA, Sub | 0.36 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13500 | Checker Leasing v. Sorbello, 181 W. Va. 199 | 307A+483 | We have held that a failure to respond to a Rule 36 request for admissions will be "deemed to be an admission of the matters set forth in the request."Dingess"Rum Coal Co. v. Lewis, 170 W. Va. 534, 536, 295 S.E.2d 25, 27 (1982). This comes about by virtue of the express language in Rule 36.2 Where, as here, the defendant responds, Rule 36 provides that he cannot claim that he does not possess sufficient knowledge to admit or deny "unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny". | Failure to respond to request for admissions will be deemed an admission of matter set forth in request. Rules Civ.Proc., Rule 36. | Will failure to respond to a request for admissions be deemed an admission of matter set forth in a request? | 030157.docx | LEGALEASE-00137178-LEGALEASE-00137179 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 13501 | United Auto. Ins. Co. v. W. Hollywood Pain & Rehab. Ctr., 162 So. 3d 98 | 307A+486 | The county court erroneously relied on Farish v. Lum's, Inc., 267 So.2d 325 (Fla.1972), which applied a prior version of Florida Rule of Civil Procedure 1.370. The rule was substantially amended and liberalized some forty years ago, in 1972. The liberalized version of the rule does not require a showing of excusable neglect to permit relief from a technical admission. See Wilson v. Dep't of Admin., Div. of Ret., 538 So.2d 139 (Fla. 4th DCA 1989); Love v. Allis"Chalmers Corp., 362 So.2d 1037 (Fla. 4th DCA 1978). If the adverse party is not prejudiced, relief may be granted for mere inadvertence. Wilson, 538 So.2d at 141. The liberal standard of the amended rule "favors amendment in most cases in order to allow disposition on the merits." Ramos v. Growing Together, Inc., 672 So.2d 103, 104 (Fla. 4th DCA 1996). "The use of admissions obtained through a technicality should not form a basis to preclude adjudication of a legitimate claim." Sterling v. City of W. Palm Beach, 595 So.2d 284, 285 (Fla. 4th DCA 1992). | If the adverse party is not prejudiced, relief from a technical admission may be granted for mere inadvertence. West's F.S.A. RCP Rule 1.370. | Can relief from a technical admission be granted for mere inadvertence if the adverse party is not prejudiced? | 030496.docx | LEGALEASE-00137139-LEGALEASE-00137140 | Order, SA, Sub | 0.86 | 1 | 0 | 1 | 1 | 1 |
| 13502 | Wood v. Am. Locomotive Co., 246 A.D. 376 | 307A+93 | Section 288 of the Civil Practice Act authorizes the court to grant an order for examination before trial "which is material and necessary in the prosecution or defense of the action." The granting of such an order is in the discretion of the court, and while a general examination may be had, its necessity and materiality must be shown. It may not be availed of to annoy or harass the adverse party or for the purpose of a fishing expedition, and such remedy must be sought and such examinations prosecuted in good faith. Combes v. Maas, 209 App.Div. 330, 204 N.Y.S. 440; Public National Bank v. National City Bank, 261 N.Y. 316, 321, 185 N.W. 395. | General examination before trial may be had on showing of necessity and materiality, but may not be availed of to harass adverse party or for purpose of fishing expedition, and must be sought and prosecuted in good faith. Civil Practice Act, S 288. | Will examinations before trial which are calculated to harass and annoy the opponents not be granted? | Pretrial Procedure - Memo # 4474 - C - KG.docx | ROSS-003331148-ROSS-003331149 | Order, SA, Sub | 0.62 | 1 | 0 | 1 | 1 | 1 |
| 13503 | Voegele v. Tschirley, 76 S.D. 509 | 30+3239 | The first question presented relates to the refusal of the trial court to grant a continuance after an amendment of the complaint. The complaint alleged a contract had been entered into in December 1953. As plaintiff's evidence progressed it appeared that plaintiff commenced his work for defendant in December of 1953 under a promise by defendant that they would subsequently agree upon wages and in February 1954, the plaintiff and defendant agreed upon the wages to be paid. The amendment conformed to this evidence. The court allowed the amendment and stated to counsel for appellant "if you don't feel that you can meet it at this time and if there is any reason why you should have a continuance, you can make a showing on that and then I will decide that." Thereafter a recess was taken and following the recess a motion for continuance was denied. It is well established in this jurisdiction that the granting of a continuance because of an amendment to the pleadings is within the discretion of the trial court and unless there has been a clear abuse of such discretion, the action of the court will not be disturbed. In this case, as disclosed by the evidence, the contract was made between plaintiff and defendant orally and there were no other witnesses. | In absence of showing of clear abuse of discretion, trial court's action in regard to granting or denying continuance following amendment of the pleadings will not be disturbed by the Supreme Court. | Is the granting of continuance because of amendment to a pleading within discretion of a court? | 031215.docx | LEGALEASE-00137097-LEGALEASE-00137098 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 13504 | State v. Ralph Williams N. W. Chrysler Plymouth, 87 Wash. 2d 298 | 307A+725 | Appellants challenge the trial court's decision to award terms for the continuance. CR 40(d) provides: (d) Trials. When a cause is set and called for trial, it shall be tried or dismissed, unless good cause is shown for a continuance. The court may in a proper case, and Upon terms, reset the same. (Italics ours.) This rule vests the trial court with the power to impose terms as the condition for granting a continuance. The amended order of the Court of Appeals also recognized this power when it remanded the case to the trial court for a hearing to determine the actual costs of the continuance. The decision to impose terms is within the discretion of the trial court. We will overturn the court's decision only if there exists a manifest abuse of discretion. See Peterson v. David, 69 Wash.2d 566, 569, 419 P.2d 138 (1966). | Decision to impose terms as a condition to grant of a continuance is within discretion of trial court and will be overturned by Supreme Court only if there exists a manifest abuse of discretion. CR 40(d). | Is the trial court vested with the power to impose terms as the condition for granting a continuance? | Pretrial Procedure - Memo # 4681 - C - ES.docx | ROSS-003304642-ROSS-003304643 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 13505 | Johansen v. Gray, 279 A.D. 108 | 307A+173 | The right to have an examination of a party before trial must now be found in a statute or validly adopted rule. Section 288 of the Civil Practice Act contemplates the taking of testimony to resolve an issue of fact between parties to an action in so far as it arises from the pleadings of those parties to each other. There is no provision in statute or rule authorizing an examination of a party to an action by another party thereto (as distinguished from examining him as a witness) in respect of an issue of fact unless it arises from pleadings between such parties. Testimony is not "material and necessary", Civ.Prac.Act, " 288, unless it relates to an issue of fact which so arises. Here there is no issue of fact between defendant Needes Express, Inc., and defendant Gray arising from their pleadings. Until such an issue so appears, an examination may not be permitted, as there is no basis upon which a determination can be made in respect of the burden of proof. | The statute contemplates a taking of testimony to resolve an issue of fact between parties to an action in so far as it arises from the pleadings of such parties to each other, and does not authorize an examination of a party to an action by another party in respect of an issue of fact, unless it arises from the pleadings between such parties. Rules of Civil Practice, rule 63; Civil Practice Act, S 288. | Should the right to have an examination of a party before trial be found in a statute or rule? | 031432.docx | LEGALEASE-00137450-LEGALEASE-00137451 | Order, SA, Sub | 0.58 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13506 | Dickson v. Simonds, 107 N.Y.S.2d 257 | 307A+91 | Motion for examination before trial is denied with leave to renew ten days after issue has been joined on amended pleadings. Defendants served their notice of motion herein simultaneously with their answer. Thereafter plaintiff served an amended complaint as of course. This practice appears to be developing as an unfortunate by-product of the bar's recognition of the relatively unrestricted examinations before trial permitted in actions other than those arising out of negligence. In the determination as to which of the parties is to examine the adverse party first, the decisions in Dorros, Inc., v. Dorros Bros., 274 App.Div. 11, 80 N.Y.S.2d 25, and Parker v. Culler Furniture Co., 278 App.Div. 135, 103 N.Y.S.2d 710, were not intended to create any sort of priority on behalf of defendants. Priority in examining before trial must be determined upon the facts and circumstances of each case, and the Bar must be alerted to the possibilities of judicial or legislative restrictions resulting from practices that pervert the rule into a mere race to see who can get his motion before the court at the earlier date. | Priority in examination of adverse party before trial must be determined on the facts and circumstances of each case. | Should the priority in examination of an adverse party before trial be determined on the facts and circumstances of each case? | 031478.docx | LEGALEASE-00137085-LEGALEASE-00137086 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 13507 | Lake v. Le Jeune, 226 La. 48 | 308+103(7) | The exception of no cause of action, in our opinion, is meritorious. With respect to the offer to purchase for $13,000, allegedly made to and accepted by the Rousseau heirs, the petition clearly shows that plaintiffs dealt exclusively with the attorneys for the former; and nowhere therein is it recited that such attorneys were authorized to bind their clients to a contract of sale. A mandate to buy or sell, as stated in LSA-Civil Code Articles 2996 and 2997, must be express and special; if conceived only in general terms it does not suffice. In fact, the law provides that a power of attorney to make a contract relating to the alienation of real estate must be in writing-a requirement like that applicable to the contract of sale itself. Turner v. Snype, 162 La. 117, 110 So. 109. See also Milburn v. Wemple, 156 La. 759, 101 So. 132; Triangle Farms, Inc., v. Harvey, 178 La. 559, 152 So. 124 and Bordelon v. Crabtree, 216 La. 345, 43 So.2d 682. And the existence of a relationship of attorney and client does not give rise to a presumption that the attorney has authority, as an incident of that relationship, to dispose of his client's property. It is not the ordinary role of an attorney to sell his client's real estate. Milburn v. Wemple and Bordelon v. Crabtree, both supra. | A mandate to buy or sell must be express and special; if conceived only in general terms it does not suffice. LSA-C.C. arts. 2996, 2997. | Should the mandate to buy or sell property be express and special? | Principal and Agent - Memo 73 - KC.docx | ROSS-003318262-ROSS-003318263 | Order, SA | 0.89 | 1 | 0 | 0 | 1 | |
| 13508 | Rame v. Popovich, 878 F. Supp. 2d 439 | 25T+329 | Notably, the LaVoice decision declined to follow this Court's holding in Raniere v. Citigroup Inc., 827 F.Supp.2d 294 (S.D.N.Y.2011), which held that the right to proceed collectively under the FLSA cannot be waived. In Raniere, this Court invalidated an arbitration agreement attached to an employee handbook that required individual arbitration of employment-related claims, stating that: There are good reasons to hold that a waiver of the right to proceed collectively under the FLSA is per se unenforceable-and different in kind from waivers of the right to proceed as a class under Rule 23. Collective actions under the FLSA are a unique animal. Unlike employment-discrimination class suits under Title VII of the Americans with Disabilities Act that are governed by Rule 23, Congress created a unique form of collective actions for minimum-wage and overtime pay claims brought under the FLSA | Arbitrator did not exceed her authority or act in manifest disregard of the law in determining that parties' agreement permitted the employees to bring their Fair Labor Standards Act (FLSA) and New York Labor Law claims against employers on a collective or class basis; agreement did not contain an explicit class action waiver, and contained language that "the arbitrator will decide all claims according to law, may award all damages and relief allowed by law," and that "(t)he arbitration may award any remedy or relief as a court could award on the same claim." 9 U.S.C.A. S 10(a)(4); Fair Labor Standards Act of 1938, S 1 et seq., 29 U.S.C.A. S 201 et seq. | Is a waiver of Fair Labor Standards Act (FLSA) collective action enforceable? | 007601.docx | LEGALEASE-00138999-LEGALEASE-00139000 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 13509 | Sawgrass Builders v. Realty Co-op., 172 Ga. App. 324 | 83E+695 | "A check, executed and delivered, is a contract in writing by which the drawer contracts with the payee that the bank will pay to the payee therein the amount designated on presentation." Bailey v. Polote, 152 Ga.App. 255, 256, 262 S.E.2d 551 (1979). A check is an unconditional promise to pay, and a stop payment order does not discharge the maker's liability on the check. Masonv. Blayton,119Ga.App. 203, 166S.E.2d601 (1969). When the signature on the check is admitted, production of the instrument, as in the instant case, entitles the holder "to recover on it unless the defendant establishes a defense." OCGA " 11-3-307(2); Bailey v. Polote, supra 152 Ga.App. at 257, 262 S.E.2d 551. | A check is an unconditional promise to pay and a stop payment order does not discharge the maker's liability on the check. | Does mere order of stop payment discharges the maker of the check from his liabilities? | 010148.docx | LEGALEASE-00138832-LEGALEASE-00138833 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13510 | Arnold v. Potomac Improvement Co., 118 W. Va. 425 | 83E+618(4) | By the negotiable instruments law, it is provided that where an instrument is "payable on demand, presentment must be made within a reasonable time after its issue, except that in the case of a bill of exchange, presentment for payment will be sufficient if made within a reasonable time after the last negotiation thereof." Attendant upon the proper application of this statutory requirement there necessarily arises the query as to the proper method of determining what is a reasonable time in a given case. In this jurisdiction, the rule is settled that the determination of such question is for the jury, or for the court where it acts without a jury. "What is reasonable time in which to present a demand note for payment is a question of fact depending upon the circumstances of each particular case." Davis National Bank v. Kight, 86 W.Va. 319, 103 S.E. 482. In a later case, recognizing this rule, it was stated by the court that "it is very generally held that what is a "reasonable time" depends upon the nature of the instrument, the usage of trade with respect to such instrument, and the facts of the particular case." Morrison v. Frantz, 105 W.Va. 14, 16, 141 S.E. 394, 395. These statements respecting "reasonable time" and the manner of resolving the same are in conformity with general authority. Brannan's Negotiable Instruments Law (5th Ed.) " 193. | What is reasonable time within which to present demand note for payment is question of fact to be determined by trier of facts on circumstances in each particular case. Code 1931, 46-6-2. | What is the reasonable time in which a demand note must be presented for payment? | Bills and Notes- Memo 377-PR.docx | ROSS-003289151-ROSS-003289153 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13511 | In re McMullen Oil Co., 251 B.R. 558 | 172H+622 | A bank may be liable for conversion when it permits the deposit of a check into a third party's account without the indorsement of the payee. Kelly, 794 P.2d at 1042; Geldert v. American Nat'l Bank, 506 N.W.2d 22, 25"28 (Minn.1993) (dictum that 1990 amendments to UCC Article 3 permits payee to sue depositary bank for conversion for paying a check with a missing indorsement); Stratton v. Equitable Bank, 104 B.R. 713, 722 (D.Md.1989), aff'd, 912 F.2d 464 (4th Cir.1990) (applying UCC " 3419(1)(c), the predecessor to " 3420(a)). | Under California law, a bank may be liable for conversion when it permits the deposit of a check into a third party's account without the indorsement of the payee. West's Ann.Cal.Com.Code S 3420(a). | Can the bank be held liable for conversion of check? | Bills and Notes- Memo 380-PR.docx | ROSS-003303817-ROSS-003303818 | Order, SA, Sub | 0.63 | 1 | 0 | 1 | 1 | 1 |
| 13512 | State v. Gibbs, 306 S.W.3d 178 | 386+76 | Second, Defendant argues the absence of sufficient evidence required to prove his intent to steal. The intent to commit a crime is an essential element of burglary. State v. Haslar, 887 S.W.2d at 615. It is this element of criminal intent that separates burglary in the second degree from its lesser-included offense of trespass in the first degree. State v. Yacub, 976 S.W.2d 452, 453 (Mo. banc 1998); see also, State v. Christian, 184 S.W.3d 597, 603"604 (Mo.App. E.D.2006). To support the defendant's conviction of burglary, the State must establish this essential element of intent beyond a reasonable doubt. State v. Asberry, 559 S.W.2d 764, 767 (Mo.App.1977). However, it is well settled in Missouri that intent to steal may be shown by unlawful entry into a building containing items of value. Haslar, 887 S.W.2d at 614 (Mo.App. W.D.1994); see also State v. Patterson, 741 S.W.2d 298, 299 (Mo.App. S.D.1987) (finding that defendant's presence at the crime scene and his flight there from was a relevant circumstance on the issue of his intent to commit a crime). While Defendant disputes that he was present at the Arsenal residence, the responding police officers testified at trial that they responded to a dispatch of a burglary in progress, saw pry marks on door of the residence and found Defendant inside the Arsenal residence going through desk drawers. The officers also testified that Defendant fled from the residence when he was approached by the police officers and told he was under arrest. The record further shows that Defendant made statements indicating his intent to steal. When questioned by police about the property taken from the Arsenal residence Defendant stated that "you didn't try to catch those other motherf""""s. What, do you think I stole all this stuff by myself?" Thus, when drawing all reasonable inferences in the light most favorable to the jury's verdict and disregarding all contrary evidence and inferences, a jury reasonably could | The intent to commit a crime is an essential element of burglary; it is this element of criminal intent that separates burglary in the second degree from its lesser-included offense of trespass in the first degree. | What separates second degree burglary from first degree trespass? | Burglary - Memo 169 - KNR.docx | ROSS-003303692-ROSS-003303694 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 13513 | Prodon v. State, 555 S.W.2d 451 | 67+3 | Here, the only distinction between the appellant's contentions and the contentions advanced in Williams is that the appellant complains not of the absence of an allegation regarding effective consent, but of the absence of an allegation regarding the objective of the burglary. It is clear that the intent to commit theft or the intent to commit a felony, as used in the burglary statute, V.T.C.A., Penal Code, Section 30.02, is an element of the offense. Our holding in Williams, supra, is therefore controlling in the present case. Appellant's first and second contentions are overruled. | Intent to commit theft or intent to commit felony, as used in burglary statute, is element of offense of burglary. V.T.C.A., Penal Code S 30.02. | Does burglary require intent to commit theft? | Burglary - Memo 185 - KNR.docx | ROSS-003288743-ROSS-003288744 | Order, SA | 0.76 | 1 | 0 | 0 | 1 | |
| 13514 | In re Exmark Mfg. Co., 299 S.W.3d 519 | 307A+36.1 | We conclude that the discovery order at issue here was reasonably tailored to the relevant product defect and was not impermissibly overbroad. In re SCI Tex. Funeral Servs., 236 S.W.3d 759, 761 (Tex.2007) (orig. proceeding). The order focuses on the production of documents about the inclusion or the lack of rollover protective systems on zero-turn riding lawnmowers and focuses on different models of the same basic product rather than different products. The order at issue is saliently different from the discovery orders that were reversed by the supreme court insofar as, in the instant case, there is a connection between the alleged defect and the discovery ordered. The order compels discovery of documents that are reasonably calculated to lead to the discovery of admissible evidence regarding whether Exmark knew about the necessity for, or defects in, its rollover protective systems. In reaching this conclusion, we note that we do not consider countervailing factors such as the burden, expense, and time needed to produce the proposed discovery given that Exmark did not provide evidence on these issues. | Order compelling discovery from manufacturer of zero-turn riding lawnmower in products liability action, arising out of accident in which owner of this type of lawnmower was paralyzed as result of "rollover" incident involving lawnmower, requiring manufacturer to disclose information on other lawnmowers manufacturer made but which owner had not used, was reasonably tailored to relevant product defect, and was not impermissibly overbroad; order focused on production of documents about inclusion or lack of rollover protective systems on zero-turn riding lawnmowers and focused on different models of the same basic product rather than different products, and there was a connection between alleged defect and discovery ordered. Vernon's Ann.Texas Rules Civ.Proc., Rule 192.3(a); V.T.C.A., Civil Practice & Remedies Code S 82.005. | Should there be a connection between the alleged defect and the discovery ordered? | 031078.docx | LEGALEASE-00138221-LEGALEASE-00138222 | Condensed, SA, Sub | 0.25 | 0 | 1 | 1 | 1 | 1 |
| 13515 | Beam ex rel. Martha Stewart Living Omnimedia v. Stewart, 845 A.2d 1040 | 307A+36.1 | In general, derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility. The general unavailability of discovery to assist plaintiffs with pleading demand futility does not leave plaintiffs without means of gathering information to support their allegations of demand futility, however. Both this Court and the Court of Chancery have continually advised plaintiffs who seek to plead facts establishing demand futility that the plaintiffs might successfully have used a Section 220 books and records inspection to uncover such facts. Because Beam did not even attempt to use the fact-gathering tools available to her by seeking to review MSO's books and records in support of her demand futility claim, we cannot know if such an effort would have been fruitless, as Beam claimed on appeal. Beam's failure to seek a books and records inspection that may have uncovered the facts necessary to support a reasonable doubt of independence has resulted in substantial cost to the parties and the judiciary. | In general, derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility. | Are derivative plaintiffs entitled to discovery in order to demonstrate demand futility? | Pretrial Procedure - Memo # 4838 - C - SK.docx | ROSS-003331621-ROSS-003331622 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13516 | Smith v. Loftis Bros. & Co., 43 Ga. App. 354 | 307A+69.1 | Where depositions are taken without commission and upon notice, under the provisions of the Civil Code 1910, " 5905 et seq., the testimony of the witness should be reduced to writing by the officer taking the deposition, or by the witness in the presence of the officer; but the officer may employ a disinterested stenographer to take down and write out the testimony. In either case the testimony, after it has been reduced to writing, should be subscribed by the deponent. Woodward v. Fuller, 145 Ga. 252 (6), 88 S. E. 974. Every such deposition "shall be retained by the officer taking it until he delivers it with his own hands into the court for which it is taken; or it shall, with a certificate of the reasons for taking it, and of the want of interest of the officer, and of the stenographer if one be employed, and with the notice, if any be given to the adverse party, be sealed up and directed to such court, and remain under his seal until opened in court." Civil Code 1910, " 5909. In the instant case it appears from the certificate of the officer taking the deposition of a witness for the plaintiff that the answers of the witness were reduced to writing, in the presence of the officer, by a stenographer, and no certificate of the lack of interest of the stenographer accompanied the deposition. Consequently, it was not returned in the manner provided by law and was not admissible in evidence. Since the testimony of this witness was material to the issue involved, and since the verdict in favor of the plaintiff, although authorized, was not demanded by the evidence, the error of the court in admitting the deposition over objection necessitates a new trial. | Testimony taken by deposition should be reduced to writing by officer or disinterested stenographer and subscribed by deponent (Civ.Code 1910, S 5905 et seq.). | "Should the testimony of the witness be reduced to writing by the officer taking the deposition, or by the witness in the presence of the officer; or the officer may employ a disinterested stenographer to take down and write out the testimony?" | 031665.docx | LEGALEASE-00138412-LEGALEASE-00138413 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 13517 | Parker v. Culler Furniture Co., 278 A.D. 135 | 307A+91 | It may be that there is less need on occasion for an examination in behalf of the negative than in behalf of the affirmative, and where no useful purpose would appear to be served by an examination it should not be allowed in either case. The test, however, is one of necessity and usefulness, as defined in the Dorros case, and not one of the burden of proof. | In determining whether examination of adversary before trial should be ordered, test is one of necessity and usefulness, and not one of burden of proof. | "In determining whether examination of an adversary before trial should be ordered, is the test one of necessity and usefulness?" | 031730.docx | LEGALEASE-00138135-LEGALEASE-00138136 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 13518 | In re Gilbert, 274 Ky. 187 | 307A+74 | The first charge against respondent is based upon his conviction on a charge of obstructing justice. The record in that proceeding is before us and it indicates that respondent had been employed as an attorney by a Mrs. Furnish to represent her in a divorce suit in the McCracken Circuit Court. Respondent took the deposition of Mrs. Furnish in his own office and before his own stenographer, who had just been appointed as an examiner. This was the first work of this nature ever done by the stenographer, and it appears that respondent caused her to add certain questions and answer to the testimony of his client, which, while not directly affecting the issues in the divorce proceeding, did reflect upon another attorney. Both Mrs. Furnish and the stenographer testified that the statements were not made as they appeared in the deposition, and respondent was found guilty by a jury, and he was fined $75. It is difficult to conceive of a more serious professional offense than the destruction of the verity of an examiner certificate to depositions. Unless the courts can rely on the accuracy of depositions, the administration of justice would be hopelessly bogged down. The examiner is a sworn officer of the court, and his or her certificate imports all of the fidelity and exactitude of the sworn testimony of the witness in open court. The proof here shows the inexperience of the examiner before whom the deposition of Mrs. Furnish was taken and her reliance upon the instructions of her employer. Respondent denies the truth of the charge, but he is contradicted by both Mrs. Furnish and the examiner, and has been found guilty by the verdict of a jury. Even if we accept his own version of what transpired, it appears that he lacked any appreciation of the impropriety of taking the testimony of a witness in his own office, before his own stenographer in an uncontested divorce case and practically putting the words into the mouth of the witness. Compare, in the Matter of Eldridge, 82 N.Y. 161, 37 | An examiner who takes depositions is a sworn officer of the court, and examiner's certificate imports all the fidelity and exactitude of the sworn testimony of the witness in open court. | Is an examiner who takes depositions a sworn officer of the court? | Pretrial Procedure - Memo # 4980 - C - NE.docx | ROSS-003302884-ROSS-003302885 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 13519 | Dep't of Mgmt. v. Fastrac Const. Inc., 701 So. 2d 1200 | 307A+36.1 | First, we conclude that the order is reviewable pursuant to rule 9.130(a)(3)(A), Florida Rules of Appellate Procedure. A trial court may defer ruling on a venue motion pending a hearing. Cameron v. Smith New Court, Inc., 608 So.2d 923 (Fla. 3d DCA 1992). A trial court may also order discovery necessary for a determination of the proper venue. See id.; cf., Gleneagle Ship Management Co. v. Leondakos, 602 So.2d 1282 (Fla.1992). In the instant case, however, although the appealed order purports to defer ruling on the venue issue, it requires the Department to file an answer to the complaint on the merits, and to participate in discovery on the merits of the motion for summary judgment expected to be made by the Department's co-defendant, Architects Design Group. We conclude that by requiring the Department to litigate the merits, the order "fixes the locus" of the action, and thus "concerns venue" as contemplated by the rule. Cf., Rosie O'Grady's, Inc. v. Del Portillo, 521 So.2d 183 (Fla. 3d DCA 1988); Paz v. Valencia, 561 So.2d 1275 (Fla. 4th DCA 1990). | Trial court may order discovery necessary for a determination of proper venue. | Can a trial court order discovery necessary for a determination of proper venue? | 031988.docx | LEGALEASE-00138146-LEGALEASE-00138147 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 13520 | Prather v. Pritchard, 26 Ind. 65 | 307A+74 | The court refused to suppress the depositions of James McCormick and others. The objection urged was that the justice before whom they were taken did not set out the names of the witnesses in his certificate. There is nothing in the objection. Their names were properly stated in the depositions, and they are referred to in the certificate as "the above named deponents." This was sufficient. | It is not necessary that the names of the witnesses examined should be stated in the certificate of the officer taking the deposition. It is sufficient if they are referred to as "the above-named deponents.". | Is it not necessary that the names of the witnesses examined should be stated in the certificate of the officer taking the deposition? | 032558.docx | LEGALEASE-00138912-LEGALEASE-00138913 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13521 | United States v. Bankers Ins. Co., 245 F.3d 315 | 25T+151 | In addressing this contention, we first observe that the NFIA does not preclude mandatory arbitration; it only precludes arbitration from being binding on the Government. Mandatory arbitration, as a prerequisite to initiation of litigation, and binding arbitration, where the parties must accept an award or decision of the arbitrator, are two different things. Although non-binding arbitration may turn out to be a futile exercise"because the FIA can ultimately reject an arbitrator's decision"this fact does not, as a legal matter, preclude a non-binding arbitration agreement from being enforced. See Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1209 (9th Cir.1998) (holding non-binding arbitration clause to be enforceable); AMF Inc. v. Brunswick Corp., 621 F.Supp. 456, 461 (E.D.N.Y.1985) (court could compel the parties to submit their dispute to third party for an advisory non-binding opinion under the FAA). The Government, however, contests this point also, asserting that non-binding arbitration unlikely or unable to resolve the issue fully is, by its very nature, unenforceable. See Brennan v. King, 139 F.3d 258, 265 (1st Cir.1998) (refusing to enforce arbitration clause because arbitrator lacked authority to resolve "substantive" issues dividing the parties and because, even if the arbitrator were able to resolve the issue in the employee's favor, the employer could reject the decision). | Mandatory arbitration, as a prerequisite to initiation of litigation, and binding arbitration, in which the parties must accept an award or decision of the arbitrator, are two different things, and although non-binding arbitration may turn out to be a futile exercise, this fact does not, as a legal matter, preclude a non-binding arbitration agreement from being enforced. | Whether mandatory arbitration and binding arbitration are considered to be the same by the court? | 007613.docx | LEGALEASE-00139009-LEGALEASE-00139011 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 13522 | McIlroy v. PaineWebber, 989 F.2d 817 | 25T+151 | The arbitration panel did not explain the rationale behind its award but it was not required to do so. Antwine v. Prudential"Bache Securities, Inc., 899 F.2d 410, 412 (5th Cir.1990). The panel did list McIlroy's allegations, which included breach of duty, failure to execute a sell order, violation of federal and state securities laws, and breach of contract. The panel also noted PaineWebber's counterclaim for the balance owing on McIlroy's brokerage account. During two days of hearings, the panel heard PaineWebber's contentions that McIlroy's calculation of damages was speculative and that McIlroy had failed to mitigate his losses. Accordingly, the panel had several grounds upon which to base an award in McIlroy's favor and a wealth of data from which to calculate an appropriate award. We find no miscalculation evident in this record. As the Eleventh Circuit has remarked: "When ... parties agree[ ] to arbitration, they agree[ ] to accept whatever reasonable uncertainties might arise from the process," Raiford v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 1410, 1413 (11th Cir.1990). The size of an award is one such uncertainty, and a claimant's dissatisfaction alone will not support judicial modification of that award. We affirm the district court's denial of McIlroy's motion to vacate or modify the award. | When parties agree to arbitration, they agree to accept whatever reasonable uncertainties might arise from the process. | When parties agree to arbitration do they agree to accept uncertainties which may arise from the process? | 007616.docx | LEGALEASE-00139012-LEGALEASE-00139013 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 13523 | United States v. O'Brien, 994 F. Supp. 2d 167 | 63+13 | Defendants rely on an exception to the bribery statute, set forth in "666(c). That section provides that "[t]his section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. "666(c). Congress enacted that provision in order to avoid the section's "possible application to acceptable commercial and business practices." United States v. Cornier"Ortiz, 361 F.3d 29, 33 (1st Cir.2004) (quoting H.R.Rep. No. 99"797, at 30 (1986), reprinted in 1986 U.S.C.C.A.N. 6138, 6153). Generally, whether wages are "bona fide" and paid "in the usual course of business" are questions of fact for the jury. United States v. Dwyer, 238 Fed.Appx. 631, 647"48 (1st Cir.2007) (unpublished); see Cornier"Ortiz, 361 F.3d at 36. | Generally, in a bribery case, whether wages are bona fide and paid in the usual course of business are questions of fact for the jury. 18 U.S.C.A. S 666(c). | Who determines whether wages and salaries are bona fide for purposes of a bribery prosecution? | 011895.docx | LEGALEASE-00139311-LEGALEASE-00139312 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13524 | Raymer v. United States, 660 F.2d 1136 | 260+92.5(2) | The district court examined the 1969 Act and concluded that it imposed a duty upon the government to enforce its provisions "meticulously" and that the granting of unwarranted extensions of its remedial order constituted a breach of this duty. The court further concluded that under Kentucky law a private individual would be liable for a similar breach of duty under like circumstances. Though the district court relied upon the language of the 1969 Act in finding for the plaintiffs, it did not hold that there is a private right of action under the Mine Safety Act. Rather, the 1969 Act was held to define the duty of the government and liability for the breach of this duty was founded on the Federal Tort Claims Act. We agree that the 1969 Act did not create a private right of action by mine employees against the government. See Blessing v. United States, 447 F.Supp. 1160, 1166 n.5 (E.D.Pa.1978). | Federal Coal Mine Health and Safety Act of 1969 did not create private right of action by mine employees against Government. Federal Coal Mine Health and Safety Act of 1969, SS 2, 3(a) as amended 30 U.S.C.A. SS 801 et seq., 802(a). | Is there a private right of action under the mine safety act? | Mines and Minerals - Memo #57 - C - CSS.docx | ROSS-003301927-ROSS-003301928 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 13525 | Cousins v. State Farm Mut. Auto. Ins. Co., 258 So. 2d 629 | 307A+13 | The foregoing provision is part of our Discovery Statute, LSA-C.C.P. arts. 1421"1451, inclusive, which is patterned almost exclusively upon Federal Civil Rules 26"37, inclusive. Gaudet v. Lawes, La.App., 166 So.2d 337. Considering the source of our Discovery Statute, decisions of the Federal Courts interpreting similar Federal rules are persuasive though not necessarily controlling is instances of this nature. Smith v. Richardson, La.App., 200 So.2d 897. We note the United States Supreme Court has restricted the scope of Federal Rule 34 (the source of Article 1492, above) to parties to an action. In Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, the Court held that Federal Rule 34 permits "any party" to request production of documents from "any party", but that the rule does not extend either to counsel for a party or a witness who is not a party to the action. The obvious effect of Hickman, above, limits the production of documents for inspection, copying or photographing to actual parties to the litigation. Such interpretation appears reasonable, and we adopt it as our own. We note that as regards persons not parties to an action, LSA-C.C.P. art. 1354 provides that documents may be subpoenaed of anyone, even persons not parties to the action. | Decisions of federal courts interpreting similar federal rules on discovery are persuasive, though not necessarily controlling, in proceedings involving state discovery statutes. LSA-C.C.P. arts. 1421-1452; Fed.Rules Civ.Proc. rules 26-37, 28 U.S.C.A. | Are decisions applying and interpreting a federal rule persuasive in nature? | 026242.docx | LEGALEASE-00139063-LEGALEASE-00139064 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13526 | Clark v. Clark, 11 Va. App. 286 | 307A+501 | [In Virginia, a claimant is absolutely entitled to one nonsuit within the limitations imposed by Code " 8.01"380.Nash v. Jewell, 227 Va. 230, 237, 315 S.E.2d 825, 829 (1984). Code " 8.01"380 reads, in pertinent part: A party shall not be allowed to suffer a nonsuit ..unless he does so before a motion to strike the evidence has been sustained or before the jury retires from the bar or before the action has been submitted to the court for decision.. A party is not allowed a nonsuit where an adverse party has cross-filed a claim in the litigation which cannot be independently adjudicated. Wells v. Lorcom House Condominiums' Council of Co"Owners, 237 Va. 247, 251, 377 S.E.2d 381, 383 (1989). Thus, a Virginia claimant may nonsuit his cause anytime prior to the submission of the cause for a ruling or determination by the trial court or finder of fact which will dispose of the case on its merits. Khanna v. Dominion Bank, 237 Va. 242, 245, 377 S.E.2d 378, 380 (1988); Wells, 237 Va. at 252, 377 S.E.2d at 384. The effect of a nonsuit in Virginia is simply to put an end to the present proceedings without prejudicing the claimant in bringing a subsequent suit on the same cause of action. Thomas Gemmell, Inc. v. Svea Fire & Life Ins. Co., 166 Va. 95, 97, 184 S.E. 457, 458 (1936). | Claimant is absolutely entitled to one nonsuit within statutory limitations period. Code 1950, S 8.01-380. | Is a claimant absolutely entitled to one nonsuit within the statutory limitations period? | 026596.docx | LEGALEASE-00139147-LEGALEASE-00139148 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 13527 | Ricketson v. Blair, 171 Ga. App. 714 | 307A+717.1 | Thus, if the "cumulative" testimony of the absent witness is "material," a motion for a continuance should nevertheless be granted. "The credibility of a witness being for the jury, the court can not select a party's witness for him.... Either [the absent witness'] manner upon the stand, his opportunity for knowing the facts, the probability of his statement, or its very apparent sincerity, might carry conviction to the minds of the jury...." Hobbs v. State, 8 Ga.App. 53, 57, 68 S.E. 515 (1910). Also, the denial of a continuance based merely upon the existence of the deposition of an absent subpoenaed witness can deprive a party of the opportunity to meet such issues as may have arisen in the case subsequent to the deposition, as was the apparent case with the issuance of Dr. Jennings' surgical performance. All things considered, it is ultimately more expeditious to allow the parties to select their own witnesses and, in the event a material witness is absent without fault of the party who subpoenaed him, to grant a continuance of the case until such time as that party can present his case as he sees fit. | If "cumulative" testimony of absent witness is "material," motion for continuance should nevertheless be granted. O.C.G.A. S 9-10-160. | "If ""cumulative"" testimony of an absent witness is ""material,"" should a motion for continuance be granted?" | Pretrial Procedure - Memo # 2015 - C - DA.docx | ROSS-003289074-ROSS-003289075 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 13528 | Columbus Tr. Co. v. Upper Hudson Elec. & R. Co., 190 N.Y.S. 737 | 307A+91 | What are remedial provisions? Blackstone says that a remedial statute is one which is made to supply some defects or abridge some superfluities of the common law. 1 Bla. Com. 86. "The term remedial statute is also applied to those acts which give a new remedy." Bouvier, sub nom, "Remedial." | In Civil Practice Act, S 1569, permitting a judge to apply the remedial provisions of that act to suits pending when it took effect, the term "remedial," which means a statute to supply some defect or abridge some superfluity of the common law or to give a new remedy, was evidently used in view of the distinction between remedial statutes which can be made applicable to pending actions and those statutes which create new rights or affect existing rights, and the provisions of article 9 of that act for the examination of witnesses before trial are within the term. | "What does the term ""remedial"" mean?" | 030957.docx | LEGALEASE-00139143-LEGALEASE-00139144 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 13529 | United States v. Standefer, 610 F.2d 1076 | 316P+1057 | Standefer, therefore, did not premise his defense on a denial of the facts that formed the basis of the government charges. Rather, he contended that the gifts were provided as a matter of friendship, and had no relationship to Niederberger's official duties. But here, too, the defense faced a difficult task. As this Court made clear in United States v. Niederberger, neither of the statutes involved in that case obligate the government to prove a specific intent, nor do they require proof of a Quid pro quo. Standefer, for all practical purposes, confronted the same statutes. To find Standefer guilty here, then, it was not necessary for the jury to find a specific intent on Standefer's part to bribe Niederberger, nor did it need to find that Standefer or Gulf were in any way benefited by actions taken by Niederberger. All that was required in order to convict Standefer was that the jury conclude that the gifts were given by him for or because of Niederberger's official position, and not solely for reasons of friendship or social purposes. | Neither statute proscribing the providing of illegal gratuities to a public official nor statute prohibiting an employee of the United States acting in connection with any revenue law of the United States from accepting fees, compensation or rewards,other than as permitted by law, for the performance of his duties obligates the government to prove a specific intent or a quid pro quo. 18 U.S.C.A. S 201(f); 26 U.S.C.A. (I.R.C.1954) S 7214(a)(2)┬ó Y. | Is the government obligated to prove a specific intent in a bribery charge? | 011927.docx | LEGALEASE-00139689-LEGALEASE-00139690 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 13530 | White v. Dougherty, 8 Tenn. 309 | 289+716 | That the joint creditors of a partnership have in equity a general lien on the funds of the partnership, and that in case of insolvency they are to be preferred to the creditors of an individual member of the firm, is at this day too firmly settled to be questioned. 1 Ves. Rep. 239; Field v. Taylor, 4 Ves. Rep. 396; 6 Mass. Rep. 242; 2 John. 280; 4 John. Ch. Rep. 522; 20 John. Rep. 611. | The joint creditors of a partnership have in equity a general lien on the funds of the partnership, and are entitled to payment out of the partnership effects, in preference to creditors of an individual member of the firm. | "In cases of insolvency, do the partnership creditors have a right to payment from the partnership fund in preference to individual creditors of the partners?" | 022358.docx | LEGALEASE-00139434-LEGALEASE-00139435 | Order, SA, Sub | 0.43 | 1 | 0 | 1 | 1 | 1 |
| 13531 | Harper v. State Farm Mut. Auto. Ins. Co., 484 So. 2d 737 | 307A+749.1 | The pretrial order controls the subject and course of an action unless modified at trial to prevent manifest injustice. Much discretion is left to the trial judge in determining whether or not to modify the pretrial order. Barbay v. Aetna Casualty & Surety Co., 454 So.2d 181 (La.App. 1st Cir.), writ denied, 457 So.2d 1181 (La.1984). | Pretrial order controls subject and course of action unless modified at trial to prevent manifest injustice. | Does a pretrial proceeding control the subject and course of action? | 027549.docx | LEGALEASE-00139427-LEGALEASE-00139428 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13532 | Gulf City Ins. Co. v. Stephens, 51 Ala. 121 | 307A+74 | The defendant below moved the court on the call of the case, and before the commencement of the trial, to quash the depositions of Mrs. Gauche and Taylor Gauche, for defects in the certificate of the execution of the commission by the person appointed to take these depositions. One ground is, that the certificate does not show that the witnesses authorized to be examined were sworn before examination, "to speak the truth, the whole truth, and nothing but the truth," as directed by our Code. It is certainly the duty of the commissioner to swear the witnesses examined by him in this form of words.Rev. Code, " 2720. But there is no form of certificate prescribed by our statute law. This is a matter of practice to be prescribed and regulated by the courts. A person authorized by a commission to take the testimony of witnesses is, pro hac vice, an officer of the court. Scott v. Barber, 15 Ala. 439. Acts of an official nature, or such as require the concurrence of official persons, are accompanied with the legal presumption of their due and proper execution. In such case, when there is no other rule, the maxim is, Omnia pr"sumuntur rite et solemniter esse acta, donec probetur in contrarium. Co. Litt. 232; Broom's Max. p. 428. Here, the commissioner certifies that the witnesses were "duly sworn." This could not be true, unless the witnesses were sworn to "speak the truth, the whole truth, and nothing but the truth," as our statute requires. And such is the proper and legal presumption. 9 Port. 157; 2 S. & P. 28. I think the certificate, in this respect, is sufficient. | When the certificate of the commissioner states that the witnesses were "duly sworn" it will be presumed that they were sworn, as the statute requires (Rev.Code, S 2720), "to speak the truth, the whole truth, and nothing but the truth." | "When the certificate of the commissioner states that the witnesses were ""duly sworn"", will it be presumed that they were sworn, as the statute requires?" | 032717.docx | LEGALEASE-00139639-LEGALEASE-00139640 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 13533 | Leavings v. Mills, 175 S.W.3d 301 | 83E+401 | A note may be transferred, however, even if it is not indorsed by the transferee; in that case, the transferee acquires whatever rights the transferor had in the note, but he does not become the holder. See Tex. Bus. & Comm.Code Ann. " 3.201; Waters v. Waters, 498 S.W.2d 236, 241 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.). The transfer of title of a negotiable instrument received by the transferee without indorsement includes " "such rights as the transferor has therein." " iform Commercial Code, " 3.201:10, at 752). Thus, even if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment. Waters, 498 S.W.2d at 242. A person not identified in a note who is seeking to enforce it as the owner or holder must prove the transfer by which he acquired the note. Jernigan, 803 S.W.2d at 777; Priesmeyer, 917 S.W.2d at 939. An issue of material fact on the issue of ownership of a note is presented when there is an unexplained gap in the chain of title. First Gibraltar Bank, FSB, v. Farley, 895 S.W.2d 425, 428"29 (Tex.App.-San Antonio 1995, writ denied); Jernigan, 803 S.W.2d at 777. | A note may be transferred even if it is not indorsed by the transferee; in that case, the transferee acquires whatever rights the transferor had in the note, but he does not become the holder. V.T.C.A., Bus. & C. S 3.201. | Can a note be transferred when it is not indorsed by the transferee? | Bills and Notes - Memo 511 - RK.docx | ROSS-003304302-ROSS-003304303 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13534 | Aiken Bag Corp. v. McLeod, 89 Ga. App. 737 | 8.30E+76 | A check does not of itself operate as an assignment of any part of the drawer's funds deposited with the bank upon which the check is drawn, and the bank is not liable to a holder of a check unless and until it accepts or certifies the check. Dixon & Co. v. Bank of Quitman, 23 Ga.App. 279(3), 98 S.E. 112; Code, " 14-1707. From this it follows that a check is a mere order upon a bank to pay from the drawer's account and is subject to revocation by the drawer at any time before it has been certified, accepted, or paid by the bank. 7 Am.Jur. 437, Banks, " 602. | A check is a mere order upon a bank to pay from the drawer's account and is subject to revocation by drawer at any time before it has been certified, accepted, or paid by the bank. Code, S 14-1707. | Is a check revocable until paid? | 010338.docx | LEGALEASE-00139783-LEGALEASE-00139784 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 13535 | Ingram v. Earthman, 993 S.W.2d 611 | 8.30E+06 | The first step in suits like this one is to identify the body of law applicable to the dispute. See Richard B. Hagedorn, The Law of Promissory Notes. This case presents two issues in this regard. The first issue concerns which version of the Uniform Commercial Code should be used to determine whether Mr. Earthman's October 14, 1980 note is a negotiable instrument. The second issue concerns whether the note is a negotiable instrument under the applicable version of the Uniform Commercial Code. If the note is a negotiable instrument, the parties' rights are governed by Article 3 of the Uniform Commercial Code; if it is nonnegotiable, we must look to the common law of contracts to define the parties' rights and remedies. | Note that was not negotiable was not governed by Uniform Commercial Code (UCC), and thus, rights and liabilities of parties to note had to be found in common law of bills and notes and in contract law. | Are negotiable notes governed by Uniform Commercial Code? | 010360.docx | LEGALEASE-00140247-LEGALEASE-00140248 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 13536 | Interstate Busses Corp. v. Blodgett, 276 U.S. 245 | 200+121 | That appellant is already contributing to highway maintenance is not in itself significant, for the state does not exceed its constitutional power by imposing more than one form of tax as a charge for the use of its highways in interstate commerce. It is for appellant to show that the aggregate charge bears no reasonable relation to the privilege granted. | State may impose more than one form of tax on use of highways in interstate commerce, if aggregate charge bears reasonable relation to privilege granted. | Can the State impose more than one form of tax on use of its highways? | 019005.docx | LEGALEASE-00140338-LEGALEASE-00140339 | Order, SA, Sub | 0.57 | 1 | 0 | 1 | 1 | 1 |
| 13537 | Kreidler v. Cecio Bros., 19 Conn. Supp. 477 | 200+96(1) | The Connecticut rule is that a right of action against the highway commissioner is maintainable, if at all, only under the statute, General Statutes " 2201, as amended, Cum.Sup.1953, " 964c, and that no right exists in the domain of an alleged nuisance. Hillen v. MacDonald, 7 Conn.Sup. 95, 96; R. N. Harrison & Sons Co. v. Fresh Fish Carrier's, Inc., 12 Conn.Sup. 14, 17. The rule that liability of a municipality apart from statute may exist for a nuisance created by a positive act, Bacon v. Town of Rocky Hill, 126 Conn. 402, 407, 11 A.2d 399, to cite but a single case, has never been adopted in Connecticut as against the state or an official there | A right of action against highway commissioner is maintainable, if at all, only under statute, and no right exists in domain of alleged nuisance. Gen.St.1949, S 2201, as amended Gen.St.Supp.1953, S 964. | Is a right of action against highway commissioner maintainable? | 019102.docx | LEGALEASE-00139927-LEGALEASE-00139928 | Order, SA, Sub | 0.69 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13538 | Coakley v. Attorney Gen., 318 Mass. 508 | 296+2 | But pension money is not unqualifiedly owned nor is it wholly beyond recall. "No pensioner has a vested legal right to his pension. Pensions are the bounties of the government which congress has the right to give, withhold, distribute, or recall, at its discretion." United States ex rel. Burnett v. Teller, 107 U.S. 64, 68, 2 S.Ct. 39, 43, 27 L.Ed. 352; Lynch v. United States, 292 U.S. 571, 577, 54 S.Ct. 840, 78 L.Ed. 1434. The United States as the donor may provide that so long as pension money can be traced and identified it shall be subject to such incidents and restrictions as Congress may prescribe. The contrary was not decided in Kellogg v. Waite, 12 Allen 529, for the Federal statute in force at that time did not attempt to control the pension money after it was paid over by the United States. In Keating v. Director of United States Veterans' Bureau, 272 Mass. 212, 172 N.E. 111, this court recognized the power of Congress to limit the fees for handling pension money allowable to a guardian appointed by a State court. Congress may exempt pension money from attachment, execution and local taxation, although in general the money has become that of the pensioner. Most of the decided cases concern the question of statutory construction with respect to the application of the exemption to substituted property. Lawrence v. Shaw, 300 U.S. 245, 57 S.Ct. 443, 81 L.Ed. 623, 108 A.L.R. 1102; Carrier v. Bryant, 306 U.S. 545, 59 S.Ct. 707, 83 L.Ed. 976. | "Pensions" are bounties which Congress has right to give, to withhold, to distribute, or to recall at its discretion. | "Does congress have the right to give, to withhold, to distribute, or to recall at its discretion pensions?" | 022798.docx | LEGALEASE-00140556-LEGALEASE-00140557 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 13539 | Doe v. City of Los Angeles, 42 Cal. 4th 531 | 241+191 | We disagree with any implication in the Court of Appeal's analysis that plaintiffs seeking the shelter of subdivision (b)(2) are required to plead evidentiary, as opposed to ultimate facts, and may not include allegations based on information and belief. Contrary to the Court of Appeal's characterization, the subdivision is not a defense to a statute of limitations but, as we have observed, an expansion of the limitations period, the purpose of which is to expand access to the courts by victims of childhood sexual abuse. (McVeigh v. Doe 1, supra, 138 Cal.App.4th at pp. 903"904, 42 Cal.Rptr.3d 91.) It would be inconsistent with this purpose, or with the mandate to broadly construe these provisions, to apply more stringent rules of pleading than those that ordinarily apply. (See " 425.10, subd. (a) [a complaint is sufficient if it contains "[a] statement of the facts constituting the cause of action, in ordinary and concise language."].) Thus, the complaint ordinarily is sufficient if it alleges ultimate rather than evidentiary facts. (Burks v. Poppy Construction Co. (1962) 57 Cal.2d 463, 473"474, 20 Cal.Rptr. 609, 370 P.2d 313; Doheny Park Terrace Homeowners Assn. Inc. v. Truck Ins. Exchange (2005) 132 Cal.App.4th 1076, 1099, 34 Cal.Rptr.3d 157 ["It has been consistently held that " "a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action" " "].) Moreover, "[p]laintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true." (Pridonoff v. Balokovich (1951) 36 Cal.2d 788, 792, 228 P.2d 6.). | Extended statute of limitations reviving personal injury actions arising from childhood sexual abuse against an allegedly responsible nonperpetrator is not a defense to a statute of limitations, but an expansion of the limitations period, the purpose of which is to expand access to the courts by victims of childhood sexual abuse, and it would be inconsistent with this purpose to apply more stringent rules of pleading than those that ordinarily apply, so that a sexual abuse complaint ordinarily is sufficient if it alleges ultimate rather than evidentiary facts. West's Ann.Cal.C.C.P. SS 340.1(b)(2), 425.10(a). | Is a complaint sufficient if it alleges ultimate rather than evidentiary facts? | 023423.docx | LEGALEASE-00140051-LEGALEASE-00140052 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 13540 | Henry v. Huntley, 37 Vt. 316 | 307A+69.1 | The statute, (G. S. 324, " 6,) directs, that the citation to the adverse party to attend the taking of a deposition shall state "the time and place of taking;" but is silent as to whether the name of the magistrate by whom the deposition is to be taken shall be inserted in it. The form of the citation, (G. S. p. 753,) supposes that the magistrate who is to take the deposition issues the notice, and says "to appear before me." The general practice in the state has been, we think, to insert the name of the magistrate in the notice; but it has not been the universal and uniform practice. We do not decide whether it is or is not necessary to insert the name. But we all agree, that when it is inserted as it is claimed to be in this case, the party taking the deposition is not at liberty to go to another magistrate to take the deposition. Such a practice would give great opportunity for unfairness and fraud. The adverse party knowing the character and ability of the magistrate might omit to attend and send interrogatories for him to put to the witness; and thus, if the deposition were taken before another, lose the opportunity of cross-examination. | Where the name of a magistrate is inserted in a citation for taking a deposition, the party taking the deposition is not at liberty to go to another magistrate. | "Where the name of a magistrate is inserted in a citation for taking a deposition, is the party taking the deposition not at liberty to go to another magistrate?" | 029173.docx | LEGALEASE-00140217-LEGALEASE-00140218 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13541 | Kirby v. Cannon, 9 Ind. 371 | 307A+69.1 | These depositions were taken while the R. S. of 1843 were in force. Section 281, p. 722, of that revision requires the clerk to issue a dedimus potestatem, at the request of any party, and provides that no order of the Court shall be necessary to authorize it. But this fact does not affect the rule as to the right to re-examine witnesses. A party may subp"na his witnesses for a trial at law, without special leave of Court; but he cannot re-examine them on the trial without such leave. The rule is the same as to depositions. A party cannot retake the deposition of a witness, or take his supplementary deposition, without leave. All the authorities say this. Gresley's Equity Ev. p. 201.--2 Dan. Ch. Pr. Perk. Ed. 1064 to 1068. Lord THURLOW, in an opinion, says: "The first question is, whether, in any case, a witness who has already been examined in the cause, can be again examined before the master without leave of the Court had for that purpose; and this is a dry point of practice." He denies that it can be done, but admits that the Court will always grant the leave "wherever the substantial justice of the case requires it;" though it will put the party upon terms, etc., to prevent unnecessary trouble and expense, and, "what is a still greater object, to avoid the danger of perjury, which would be increased by a witness deposing a second time to the same facts, after having seen where the cause pinched, and how his testimony bore upon it." Gresley, supra. | A party cannot retake the deposition of a witness, or take his supplementary deposition, without leave of court. | "Can a party retake the deposition of a witness, or take his supplementary deposition, without leave of court?" | Pretrial Procedure - Memo # 3235 - C - ES.docx | ROSS-003301201-ROSS-003301202 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 13542 | Cook v. Shorthill, 82 Iowa 277 | 307A+74 | A commission was issued on the application of plaintiff to take the deposition of Frederick and his wife in San Diego, Cal. But five days' notice of the suing out of the commission was given to defendants, and they did not appear in response to the notice, nor file cross"interrogatories. The depositions were taken as directed by the commission, and returned to the clerk of the district court. Defendant filed a motion to suppress the deposition, which was overruled, and that ruling is presented for review. Reasonable notice of the suing out of a commission to take depositions must be given to the adverse party. Code, " 3727. Such notice "is at least when served on the attorney ten days, and when served on the party within the county five days." Code, " 3730. The notice in this case was served on the defendants in the county of Marshall. The appellants contend that "the county" referred to in the statute is the county within which the depositions are to be taken, and cite Kennedy v. Rosier, 71 Iowa, 673, 33 N. W. Rep. 226, as supporting that claim. That was a case where depositions were taken on notice only, and not on commission. It is the practice in such cases for parties in interest to attend the examination of witnesses personally or by attorney, and it is their right so to do. But when depositions are taken on commission, with interrogatories attached, neither party can attend in person, nor by attorney, unless the adverse party is present or is represented. Code, " 3738. It is not the intent of the statute to allow the person on whom the notice is served in such cases time in which to reach the place where the depositions are to be taken, before the commission issues, nor is it designed to allow time for him to communicate with the witness before filing his cross"interrogatories. If he is surprised by the testimony given, he may have the right to a continuance, but he is entitled only to the time given by the statute for filing his cross"interrogatories. That, in our opinion, | Under Code 1873, S 3738, providing that where depositions are taken on interrogatories neither of the parties, their agents or attorneys, shall be present unless both are present, and that the certificate shall state the fact if the party is present, a deposition will not be suppressed because the notary's certificate recites that it was reduced to writing by another person in his presence, unless it is shown that such person was a party, or the agent or attorney of a party. | "When depositions are taken on commission, with interrogatories attached, can party attend in person or by attorney, unless the adverse party is present or is represented?" | Pretrial Procedure - Memo # 5304 - C - VA.docx | ROSS-003289475-ROSS-003289476 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 13543 | Thilman & Co. v. Esposito, 87 Ill. App. 3d 289 | 307A+726 | However, even if a motion for a continuance had been made, the trial court would not have abused his discretion in denying the motion. A trial court has broad discretion in allowing or denying a motion for continuance (Curtin v. Ogborn (1979), 75 Ill.App.3d 549, 31 Ill.Dec. 391, 394 N.E.2d 593; Robinson v. Thompson (1978), 58 Ill.App.3d 269, 15 Ill.Dec. 807, 374 N.E.2d 242; Kincl v. Hycel, Inc. (1977), 56 Ill.App.3d 772, 14 Ill.Dec. 374, 372 N.E.2d 385; Nixon v. Harris (1975), 31 Ill.App.3d 204, 333 N.E.2d 667) and the exercise of such discretion will not be disturbed on appeal unless there has been a manifest abuse of discretion. (Curtin v. Ogborn; Robinson v. Thompson; Kincl v. Hycel, Inc.; Nixon v. Harris.) A critical consideration in determining whether or not a continuance should be granted is whether the party seeking the continuance has acted with diligence. (Bethany Reformed Church v. Hager (1979), 68 Ill.App.3d 509, 25 Ill.Dec. 243, 386 N.E.2d 514; Curtin v. Ogborn; Nixon v. Harris; Duran v. Chicago & North Western Ry. Co. (1975), 26 Ill.App.3d 645, 325 N.E.2d 368; Parker v. Newman (1973), 10 Ill.App.3d 1019, 295 N.E.2d 503.) Although absence of counsel is one factor to take into consideration in deciding a motion to continue, a party does not have an absolute right to a continuance solely because his counsel is absent. (Thomas v. Thomas (1974), 23 Ill.App.3d 936, 321 N.E.2d 159; Adcock v. Adcock (1950), 339 Ill.App. 543, 91 N.E.2d 99.) Where a party does not show that an effort was made to obtain new counsel or that the issues are such as require handling by the attorney of record only, a denial of a motion for continuance requested because of counsel's absence is proper. (Jarvis v. Shacklock (1871), 60 Ill. 378; Condon v. Brockway (1895), 157 Ill. 90, 41 N.E. 634; Johnson v. Theodoron (1927), 324 Ill. 543, 155 N.E. 481.) Defendants' motion for rehearing was continued four times before the motion was denied, and two of those occasions were at the request of | Where defendants' motion for rehearing was continued four times before motion was denied, two of such occasions were at request of defendants, and defendants did not seek to obtain new counsel to represent them after attorney suffered coronary deficiency, but rather, defendants sought continuances hoping their attorney would recover and again actively represent them, defendants did not act with due diligence, even if motion for continuance had been before court, and therefore, trial court did not abuse its discretion in denying defendants' motion for rehearing instead of granting continuance. | Can the judge deny defendants' motion for rehearing rather than ordering continuance? | 032441.docx | LEGALEASE-00140466-LEGALEASE-00140467 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13544 | Expedia v. City of New York Dep't of Fin., 22 N.Y.3d 121 | 371+2013 | In New York, local governments lack an independent power to tax. The State Constitution vests the taxing power in the state legislature and authorizes the legislature to delegate that power to local governments (N.Y. Const., art. XVI, " 1; City of New York v. State of New York, 94 N.Y.2d 577, 591, 709 N.Y.S.2d 122, 730 N.E.2d 920 [2000]; Castle Oil Corp. v. City of New York, 89 N.Y.2d 334, 338"339, 653 N.Y.S.2d 86, 675 N.E.2d 840 [1996]; Sonmax, Inc. v. City of New York, 43 N.Y.2d 253, 257, 401 N.Y.S.2d 173, 372 N.E.2d 9 [1977]; County Sec. v. Seacord, 278 N.Y. 34, 37, 15 N.E.2d 179 [1938] ). The State Constitution places fundamental limitations on such delegations. The legislature must describe with specificity the taxes authorized by any enabling statute. (N.Y. Const., art. XVI, " 1; Castle Oil Corp., 89 N.Y.2d at 339, 653 N.Y.S.2d 86, 675 N.E.2d 840). In turn, local governments can only levy and collect taxes within the expressed limitations of specific enabling legislation (N.Y. Const., art. IX, " 2[c][8]; Matter of United States Steel Corp. v. Gerosa, 7 N.Y.2d 454, 459, 199 N.Y.S.2d 475, 166 N.E.2d 489 [1960] ). | Local governments lack an independent power to tax, as the state constitution vests the taxing power in the Legislature and authorizes the Legislature to delegate that power to local governments. McKinney's Const. Art. 16, S 1. | Does a state constitution vests the taxing power in the state legislature? | 045469.docx | LEGALEASE-00140419-LEGALEASE-00140420 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13545 | United States v. Baumann, 684 F. Supp. 2d 1146 | 63+1(1) | Section 666(a)(1)(B) "does not require that the bribe itself be in excess of $5,000." Nystrom, 2008 WL 4833984, at (citing United States v. Hines, 541 F.3d 833, 836"37 (8th Cir.2008)); United States v. Zimmermann, 509 F.3d 920, 926"27 (8th Cir.2007). Rather, alleging that the bribe itself exceeded $5,000 is but "one way to satisfy the element." Id. The element "can also be satisfied by showing that the business or transaction received in return for the bribe was worth in excess of $5,000." Id. (citing Hines, 541 F.3d at 836"37; Zimmermann, 509 F.3d at 926"27). Thus, counts charging violations of Section 666(a)(1)(B) "are not deficient as a matter of law simply because the amount of the bribe given was less than $5,000." Id. | Statute prohibiting bribery concerning programs receiving federal funds does not require that bribe itself be in excess of $5,000; government may also allege that business or transaction received in return for bribe was worth in excess of $5,000. 18 U.S.C.A. S 666(a)(2). | "Does any statute require that the bribe itself be in excess of $5,000?" | Bribery - Memo #303 - C-JL.docx | ROSS-003302073-ROSS-003302074 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 13546 | United States v. Apple, 927 F. Supp. 1119 | 63+1(1) | 18 U.S.C. " 666(a)(2); United States v. Bonito, 57 F.3d 167, 174 (2d Cir.1995), cert. denied, 516 U.S. 1049, 116 S.Ct. 713, 133 L.Ed.2d 667 (1996). The fundamental purpose of the bribery statute is preserving "the integrity of" federal funds that support state government activities. Bonito, 57 F.3d at 172; United States v. Cicco, 938 F.2d 441, 444"45 (3d Cir.1991); Mongelli, 794 F.Supp. at 530; United States v. Little, 687 F.Supp. 1042, 1049 (N.D.Miss.1988). | Fundamental purpose of bribery statute is to preserve integrity of federal funds that support state government activities. 18 U.S.C.A. S 666(a)(2). | What is the fundamental purpose behind the federal bribery statute? | 012147.docx | LEGALEASE-00141949-LEGALEASE-00141950 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 13547 | United States v. Rasco, 853 F.2d 501 | 63+1(1) | What Rasco's argument fails to recognize, however, is that he was charged and convicted for offering or promising a thing of value to a bank official, and not actually giving such a bribe. The crime of offering a bribe is completed when a defendant expresses an ability and a desire to pay the bribe. United States v. Jacobs, 431 F.2d 754, 760 (2d Cir.1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971). As the Jacobs court pointed out, the crime of offering a bribe occurs: | In obtaining conviction of defendant for bribery of bank official, Government need not establish that bribe was actually paid; crime of offering bribe is completed when defendant expressed ability and desire to pay bribe. 18 U.S.C.A. S 201. | Is statute prohibiting bribery of a public official satisfied if a defendant expresses ability and a desire to pay the bribe? | 012161.docx | LEGALEASE-00141987-LEGALEASE-00141988 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 13548 | Dixon v. Alford, 143 So. 679 | 113+3 | We have considered the testimony offered to show custom on the subject, but no custom can require a landowner to continue advancing his farmer tenant when it is seen that the tenant is not working and that the anticipated crop cannot on that account be expected. It is our opinion that defendant was not working as actively as he should have been. | No custom could require landowner to continue advances to farmer tenant when tenant was not working and anticipated crop could not be expected. | May a custom require a landowner to advance his farmer tenant? | 014133.docx | LEGALEASE-00141722-LEGALEASE-00141723 | Order, SA, Sub | 0.59 | 1 | 0 | 1 | 1 | 1 |
| 13549 | Chicago, M. & St. P. Ry. Co. v. Lindeman, 143 F. 946 | 113+3 | The court charged the jury that if they found from this evidence that there was a uniform custom for the engineer to move his engine after it was uncoupled a short distance in front of the leading car and then wait and ascertain whether or not the brakes held, and, if they did not, to receive the impact of the cars, and, if they did hold, then to proceed on out of the way of the cars, and that the engineer, Gage, and the switchman, Smith, violated this custom at the time of the accident, they were guilty of negligence which, if causal, might entitle the plaintiff to a recovery. An exception was taken to this ruling, and it is specified as error. A custom has the force of law, and furnishes a standard for the measurement of many of the rights and acts of men. It must be certain or the measurements by this standard will be unequal and unjust. It must be uniform; for, if it vary, it furnishes no rule by which to mete. It must be known, or must be so uniform and notorious that no person of ordinary intelligence who has to do with the subject to which it relates and who exercises reasonable care would be ignorant of it; for no man may be justly condemned for the violation of a law or a custom which he neither knows nor ought to know. In short, a binding custom must be certain, definite, uniform, and known, or so notorious that it would have been known to any person of reasonable prudence who dealt with its subject with the exercise of ordinary care. U.S. v. Buchanan, 8 How. 83, 102, 103, 12 L.Ed. 997; Bowling v. Harrison, 6 How. 248, 259, 12 L.Ed. 425; Collings v. Hope, Fed. Cas. No. 3,003; Parrott v. Thacker, 9 Pick.(Mass.) 426, 431; York v. Wistar, Fed. Cas. No. 18,141; Greenwich Ins. Co. v. Waterman, 54 Fed. 839, 842, 4 C.C.A. 600, 603; Robinson v. U.S., 13 Wall. 363, 366, 20 L.Ed. 653; Jones v. Hoey, 128 Mass. 585, 587. | A custom must be uniform, certain, and known, or so notorious that a person of ordinary prudence in the exercise of reasonable care, dealing with its subjects, would have been aware of it. | "Does a custom have to be uniform, definite, and certain to be binding?" | 014177.docx | LEGALEASE-00141831-LEGALEASE-00141832 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13550 | Rindskoff Bros. v. Barrett, 14 Iowa 101 | 113+3 | The main question in this class of cases is, in what sense did both parties use the language found in the contract, and how did each have reason to believe that the other understood it. They are presumed to have intended that it should have its ordinary and received signification, or the meaning which the law attached to it. Custom may be used, however, to affect the construction of a contract, or to "substitute in the particular instance a rule resulting from the usage, in place of that which the law, not the contract of the parties, would prescribe." It is hardly correct to say that a contract (express) is controlled by a custom, but that it may be affected by it is too well settled to now admit of doubt. Mr. Parsons says, and truly, that the word embraces very many degrees of the same meaning. One extreme is that ancient, universal and well established custom, which is in fact, law. The other is a manner of doing a particular thing in a small neighborhood, or by a small class of men, for a few years. Whatever it is, if it falls within the reason of the rule which makes it a part of the contract, it amounts to a custom. And if it is so far established, and so far known to the parties, as that it must be supposed that they contracted in reference to it, it comes within the reason of the rule. This custom may be general or local. If general, then a presumption of knowledge on the part of the contracting parties arises. If local, the knowledge of the parties must be proved, before it can avail to affect the contract. If established, the length of its duration is not very material. The characteristics of a good custom are said to be that it shall be established-- uniform, general and known to the parties. But, as before suggested, the degree in which all these should attach must depend, in each case, upon its peculiar circumstances. (2 Pars. Cont., 53, 54; Smith v. Wright, 1 Caines, 43; Martin v. Delaware Insurance Company, 2 Wash. C. C., 254; Dorchester Bank v. New England Bank, 1 Cush., 177; Stevens v. Reeves, 9 Pick., 198.) | The requisites of a good custom are, that it must be established, uniform, general and known to the parties: the degree in which all these should attach, must depend upon the peculiar circumstances of each case. | What are the characteristics of a good custom? | 014218.docx | LEGALEASE-00141967-LEGALEASE-00141968 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 13551 | United States v. Marcavage, 609 F.3d 264 | 92+1738 | The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech or the right of the people to peacefully assemble." U.S. Const. amend I. The degree of First Amendment protection a speaker enjoys depends on the type of forum in which his expressive activity occurred.McTernan v. City of York, 564 F.3d 636, 652 (3d Cir.2009). The Supreme Court has identified three different types of fora: "the traditional public forum, the public forum created by government designation, and the nonpublic forum."Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998) (quotation marks and citation omitted). "Traditional public fora are defined by the objective characteristics of the property, such as whether, by long tradition or by government fiat, the property has been devoted to assembly and debate." (internal quotation marks and citation omitted). "Designated public fora, in contrast, are created by purposeful governmental action." The third category, nonpublic fora, includes all remaining government property. Int'l Soc'y for Krishna Consciousness v. Lee, 505 U.S. 672, 678"79, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992). | For purposes of First Amendment free speech analysis, "traditional public fora" are defined by the objective characteristics of the property, such as whether, by long tradition or by government fiat, the property has been devoted to assembly and debate. U.S.C.A. Const.Amend. 1. | What does traditional public fora means? | 014457.docx | LEGALEASE-00141190-LEGALEASE-00141191 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 13552 | Nevada Power Co. v. Watt, 515 F. Supp. 307 | 149E+604(2) | In Alumet v. Andrus, 607 F.2d 911 (10th Cir. 1979), it was held, among other things, that the express legislative mandate of FLPMA is that all reasonable costs incurred by the Secretary of the Interior in processing an application for rights-of-way on public lands shall be chargeable against the applicant for such rights-of-way and that reasonable costs include, inter alia, costs of environmental impact statements, but that it should be assumed that Congress was aware, in so providing, of the limitations to the delegation of authority as flagged in National Cable. It was further indicated that the language of section 304(b) of the FLPMA reflects that understanding and that "Congress expressed that the Secretary should consider the benefit to the general public in its attempted recoupment of costs of an EIS." | The regulations under which the Secretary of the Interior assessed and required deposits for costs incurred by the Bureau of Land Management in preparation of environmental impact statement for those applying for right-of-way to construct an energy system were invalid as being insufficient and inconsistent with Federal Land Policy and Management Act mandate of reasonableness in view of fact that regulations did not take into consideration, nor did they permit consideration by the Secretary of factors required to be considered in a determination of reasonable costs. Federal Land Policy and Management Act of 1976, SS 304(b), 310, 504(g), 510(a), 43 U.S.C.A. SS 1734(b), 1740, 1764(g), 1770(a); National Environmental Policy Act of 1969, S 102, 42 U.S.C.A. S 4332. | Did the Congress express that the Secretary should consider the benefit to the general public in its attempted recoupment of costs of an EIS (Environmental Impact Statement) by language of section 304(b) of the FLPMA (Federal Land Policy and Management Act of 1976)? | Mines and Minerals - Memo # 125- C - EB.docx | ROSS-003291054-ROSS-003291055 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 13553 | The N. Carolina State Bar v. Key, 189 N.C. App. 80 | 388+395(5) | There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts.Woodard v. Mordecai, 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951) (internal citations omitted). Moreover, classification of an item within the order is not determinative, and, when necessary, the appellate court can reclassify an item before applying the appropriate standard of review. See Helms, 127 N.C.App. at 510, 491 S.E.2d at 675 (classifying the trial court's neglect, reasonable efforts, and best interest determinations as conclusions of law). | "Ultimate facts" are the final facts required to establish the plaintiff's cause of action or the defendant's defense, and "evidentiary facts" are those subsidiary facts required to prove the ultimate facts. | Are evidentiary facts those facts necessary to prove the ultimate facts? | Pleading - Memo 384 - RMM.docx | LEGALEASE-00031018-LEGALEASE-00031019 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13554 | Burton v. Airborne Exp., 367 Ill. App. 3d 1026 | 302+312 | The question presented by a section 2"615 motion to dismiss is whether sufficient facts are contained in the pleadings that, if proved, would entitle the plaintiff to relief. Evers v. Edward Hospital Ass'n, 247 Ill.App.3d 717, 724, 187 Ill.Dec. 490, 617 N.E.2d 1211 (1993). A motion to dismiss under section 2"615 admits all well-pleaded facts but does not admit conclusions of law or conclusions of fact not supported by allegations of specific fact. Manuel v. Red Hill Community Unit School District No. 10 Board of Education, 324 Ill.App.3d 279, 288, 257 Ill.Dec. 790, 754 N.E.2d 448 (2001). Exhibits are a part of the complaint to which they are attached, and the factual allegations contained within an exhibit attached to a complaint serve to negate inconsistent allegations of fact contained within the body of the complaint. Metrick v. Chatz, 266 Ill.App.3d 649, 653, 203 Ill.Dec. 159, 639 N.E.2d 198 (1994); see also Evers, 247 Ill.App.3d at 724, 187 Ill.Dec. 490, 617 N.E.2d 1211 (allegations in pleadings that conflict with facts disclosed in exhibits attached to the pleadings are not admitted as true, but rather, the exhibit controls); McCormick v. McCormick, 118 Ill.App.3d 455, 460, 74 Ill.Dec. 73, 455 N.E.2d 103 (1983) (when an exhibit attached to a complaint is the basis of the suit and conflicts with the complaint's allegations, the exhibit negates the complaint's allegations). | Exhibits are a part of the complaint to which they are attached, and the factual allegations contained within an exhibit attached to a complaint serve to negate inconsistent allegations of fact contained within the body of the complaint. | Are exhibits attached to a complaint part of that complaint? | 023454.docx | LEGALEASE-00141224-LEGALEASE-00141225 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13555 | Strong v. Gunning, 153 Ill. App. 182 | 307A+723.1 | The suit was brought July 3, 1905, defendant pleas were filed March 9, 1906, and the cause was called for trial July 7, 1908. Defendant then moved for a continuance on the ground that no copy of the instrument sued on was filed with the declaration, and his motion was denied. He was not entitled, several terms after filing his pleas, to a continuance under the provisions of section 32 of the Practice Act. | A defendant is not entitled several terms after filing his plea to a continuance under Practice Act 1907, S 32, Smith-Hurd Stats. c. 110, Appendix S 32. Similar provisions Civil Practice Act 1933, see S.H.A. ch. 110, S 36. | Is a defendant not entitled to several terms after filing his plea to a continuance? | 030631.docx | LEGALEASE-00141260-LEGALEASE-00141261 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 13556 | Butler v. Harter, 152 So. 3d 705 | 307A+375 | Respondent also failed to show undue hardship. "To determine whether a moving party will experience undue hardship, courts must balance the moving party's burden in obtaining information with the non-moving party's burden of production." Paradise Pines Health Care Assocs., LLC v. Bruce, 27 So.3d 83, 84 (Fla. 1st DCA 2009) (finding there was need and undue hardship sufficient to compel the discovery of incident reports because the subject of the report had since died, and it would have been "difficult, if not impossible" to independently obtain the information contained in the reports). | On plaintiff's motion to compel discovery of defendant's entire litigation file after defendant moved for attorney fees and costs when judgment was entered for plaintiff on her action for damages stemming from a car accident in an amount less that defendant's offer of judgment, plaintiff failed to demonstrate a need of the materials so as to challenge whether defendant's offer of judgment was made in good faith, or that she was unable to obtain the equivalent of the materials by other means, as required to obtain defendant's work product; the trial court did not find need or undue hardship, but rather found its credibility determination would necessitate the use of privileged communications, assuming proper waiver of privilege, apparently referring to attorney-client privilege, rather than work product. West's F.S.A. RCP Rule 1.280(b)(4). | "To determine whether a moving party seeking privileged material will experience undue hardship if they do not obtain the material, must courts balance the moving party's burden in obtaining information?" | Pretrial Procedure - Memo # 4810 - C - DHA.docx | ROSS-003291271-ROSS-003291272 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 13557 | Leet v. Union Pac. R. Co., 25 Cal. 2d 605 | 307A+725 | The motions for a continuance were, as has been stated, based upon the same grounds as the motions to abate and were for an "indefinite time." Under those circumstances there was no question of the exercise of discretion by the court. If the court may not refuse to exercise its jurisdiction it may not accomplish the same result by an indefinite continuance. | If court may not refuse to exercise its jurisdiction, it may not accomplish the same result by an indefinite continuance. | Can a court accomplish the same result by an indefinite continuance if it refuses to exercise its jurisdiction? | 032134.docx | LEGALEASE-00141322-LEGALEASE-00141323 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 13558 | Sydnor v. Palmer, 29 Wis. 226 | 307A+74 | The depositions of the witnesses examined abroad were all admissible. The objections to those of the Virginia witnesses were, that, though they showed the witnesses were sworn, they did not show they were sworn to speak the truth, and the certificates did not state that the depositions were read to or by the witnesses, or that they knew the contents of them. Rule 61, Circuit Court Rules of 1849, prescribes the mode of taking such depositions, or of executing the commission issued for that purpose, and seems to have been strictly and fully complied with. The language of the rule in these particulars is: "Every interrogatory, direct and cross, shall be propounded to each witness, and his answer thereto shall be taken and returned with the commission. Each witness shall subscribe his name at the end of the answers to the interrogatories, and the commissioners shall subscribe their names at the foot of each page of the testimony, and shall certify in their return that the witnesses were duly sworn or affirmed before giving their evidence." It is enough that these requirements appear to have been complied with, to authorize the admission of the depositions. It appearing that the witnesses answered the several interrogatories, and that they were "duly sworn," the presumption is that they knew the contents, and were sworn to speak the truth, according to the form of oath usually administered, until the contrary is shown. Rule 65 declares, that "in all cases where commissions have been issued, and testimony taken in accordance with these rules, the evidence may be read on the trial of the cause or the hearing of any proceeding wherein they were taken, with the same effect as if the witnesses examined had been produced on the trial or hearing." | Where the return of commissioners to take testimony out of the state shows that the witnesses subscribed their names to their respective answers, and the certificate of the commissioners state the witnesses "were duly sworn before giving their evidence," it will be presumed that they knew the contents of their answers as written down, and were sworn "to speak the truth," according to the customary form of oath. | "Shall the commissioners certify that the witness ""was duly sworn before giving his evidence""?" | 032537.docx | LEGALEASE-00142001-LEGALEASE-00142002 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13559 | Fisk v. Tank, 12 Wis. 276 | 307A+74 | The deposition of the defendant Verbeck was properly admitted. The want of a venue or statement of the place where it was taken, either in its margin or the certificate of the commissioner before whom it was taken, does not invalidate it. It is said that without such statement perjury cannot be assigned upon it. The authorities cited by the respondent's counsel, clearly establish the contrary. They show that upon a trial for perjury, when the venue is wrongfully stated in the affidavit or deposition, such written statement may be disproved, and the true place of administering the oath may be shown by parol testimony. Such recital is not so much a part of the deposition or affidavit as to make it conclusive, but is prima facie evidence merely. A fortiori the true place may be shown where there is no recital. King vs. Emden, 9 East, 437; Rex vs. Spencer, 1 Carr. & Payne, 260 (11 E. C. L., 384). For all ordinary purposes the place of taking sufficiently appears on the face of it and the accompanying papers. In this respect it is in strict compliance with the rule (61 old Rules) which requires the return to state the time when the testimony was taken; but makes no reference to the place where it was taken. | A deposition is not invalidated for want of a venue or statement of the place of taking, either in its margin or the commissioner's certificate. | Is a deposition not invalidated for want of a venue or statement of the place of taking? | Pretrial Procedure - Memo # 5434 - C - SHB.docx | ROSS-003289525-ROSS-003289526 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 13560 | Hale v. Gibbs, 43 Iowa 380 | 307A+75 | There was no error in the ruling excluding the evidence at defendant's request. The evidence presented in the deposition was taken by defendant, and was under his control. He could withhold it at his pleasure, or any part of it.While he could not withdraw it from the files (Pelamourges v. Clark, 9 Iowa, 1), he was not required to offer it in evidence. If he could withhold all of it, he could do the same with a part. The action of the court only permitted defendant to do that which was his right. The reason of the ruling of the court, as we shall presently see, is not indefensible. | It is competent for the party who has taken a deposition to refuse to offer it, or any part of it, in evidence, but he cannot withdraw it from the files. | "Is it competent for the party who has taken a deposition to refuse to offer it, or any part of it, in evidence, but he cannot withdraw it from the files?" | 032581.docx | LEGALEASE-00141681-LEGALEASE-00141682 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 13561 | Succession of Grant, 14 La. Ann. 795 | 307A+74 | The fifth bill of exceptions is to the refusal of the Judge, to receive in evidence certain depositions taken under a commission in the State of Massachusetts, on the ground, that the official capacity and signature of the Justice of the Peace by whom they purport to have been received, had not been legally proved by the certificate of the Governor, under the seal of the State. | The capacity and signature of a justice of the peace who has taken a deposition under commission in another state must be established by the certificate of the governor, under the great seal of the state. | Is a certificate of authentication required from a justice of the peace of a state to take a deposition of another state? | Pretrial Procedure - Memo # 5487 - C - PC.docx | LEGALEASE-00031355-LEGALEASE-00031356 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 13562 | Ankrim v. Sturges, 9 Pa. 275 | 307A+74 | Rules of court are adopted to facilitate the administration of justice. This court pays great respect to the construction courts give to their own rules: 5 Barr, 278. Yet there are cases and constructions given to rules by courts in the hurry of jury trials which operate unjustly, and require the supervision of this court. The rule in question provides that "depositions (other than those taken on commissions) shall be filed within a reasonable time, or the party at whose instance they are taken may retain them, provided he gives, within a reasonable time, to the adverse party or his attorney, a true copy of the rule, notice, and deposition." In this case the depositions of aged men had been taken on cross-examination, and the cause came on for trial before they were filed, and the court rejected the depositions; and the court, in the exercise of their discretion, permitted a juror to be withdrawn and the cause continued. The depositions shortly after were duly filed, and more than a year after, the cause again came on for trial, when the depositions were offered in evidence and rejected by the court, because they were not filed in a reasonable time. We cannot concur in this construction of the rule. We think the depositions ought to have been received. As one of the depositions fully proves the ancient deed, it is not necessary to determine whether it was error to reject it without proof. | Where a rule of court provides that depositions shall not be read unless filed within a reasonable time, and depositions were taken, and the cause continued because they were not filed, and the depositions were then filed, they may be read on the trial of the cause. | Does the rule of court require depositions to be filed within a reasonable time? | Pretrial Procedure - Memo # 5724 - C - DHA.docx | ROSS-003288945-ROSS-003288946 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 13563 | Texas Parks & Wildlife Dep't v. Garland, 313 S.W.3d 920 | 307A+554 | An appellate court addressing a challenge to a trial court's subject matter jurisdiction reviews the trial court's ruling de novo. Id. at 228. The reviewing court exercises its own judgment and redetermines each issue of fact and law. See Schade v. Tex. Workers' Comp. Comm'n, 150 S.W.3d 542, 549 (Tex.App.-Austin 2004, pet. denied) (citing Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex.1998)). The reviewing court accords the trial court's decision no deference. See Schade, 150 S.W.3d at 549 (citing Quick, 7 S.W.3d at 116). When a conclusion of law is erroneous, but the trial court reached the right result, the erroneous conclusion of law does not require reversal. See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.2002). If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. See Thomas v. Long, 207 S.W.3d 334, 339 (Tex.2006). | If a trial court lacks jurisdiction over some claims but not others, the trial court should dismiss those claims over which it does not have subject matter jurisdiction but retain those claims over which it does. | Will a trial court dismiss claims over which it has no subject matter jurisdiction? | 032984.docx | LEGALEASE-00141523-LEGALEASE-00141524 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 13564 | In re OSG Ship Mgmt., 514 S.W.3d 331 | 307A+554 | The parties initially dispute whether the PPA includes a forum-selection clause. "The distinction between a forum selection clause and a venue selection clause is critical." Lui v. Cici Enters. L.P., No. 14"05"00827"CV, 2007 WL 43816, at (Tex. App."Houston [14th Dist.] Jan. 9, 2007, no pet.) (mem. op.). Forum-selection clauses are presumptively valid unless shown to be unreasonable, and they may be enforced in Texas courts through a motion to dismiss.Id.; see also In re Laibe Corp., 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam); In re Int'l Profit Assocs., Inc., 274 S.W.3d 672, 675 (Tex. 2009) (orig. proceeding) (per curiam). Venue, in contrast, cannot be selected by private contract unless provided by statute. Lui, 2007 WL 43816, at. Moreover, unless venue is challenged by a motion to transfer venue filed before or concurrently with the defendant's answer, any objection to venue is waived. Id. | Forum-selection clauses are presumptively valid unless shown to be unreasonable, and they may be enforced through a motion to dismiss. | "Unless shown to be unreasonable, are forum-selection clauses valid?" | 033313.docx | LEGALEASE-00140806-LEGALEASE-00140807 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13565 | Hentz v. Asheville City Bd. of Educ., 189 N.C. App. 520 | 307A+554 | A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be raised at any time. Bache Halsey Stuart, Inc. v. Hunsucker, 38 N.C.App. 414, 421, 248 S.E.2d 567, 571 (1978), cert. denied, 296 N.C. 583, 254 S.E.2d 32 (1979). Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy. Harris v. Pembaur, 84 N.C.App. 666, 667"68, 353 S.E.2d 673, 675 (1987). An action is properly dismissed for lack of subject matter jurisdiction when the plaintiff has failed to exhaust his administrative remedies. Flowers v. Blackbeard Sailing Club, 115 N.C.App. 349, 352"53, 444 S.E.2d 636, 638"39 (1994), disc. review improvidently allowed, 340 N.C. 357, 457 S.E.2d 599 (1995). "[W]here the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." Presnell v. Pell, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979). | A motion to dismiss for lack of subject matter jurisdiction may be raised at any time. Rules Civ.Proc., Rule 12(b)(1), West's N.C.G.S.A. S 1A-1. | Can a motion to dismiss subject matter jurisdiction be raised at any time? | 033319.docx | LEGALEASE-00140824-LEGALEASE-00140825 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13566 | Tennant v. Sinclair Oil & Gas Co., 355 P.2d 887 | 371+2001 | Art. 1, " 28, of our constitution provides that all taxation shall be equal and uniform. Section 34 of the same article provides that all laws of a general nature shall have a uniform operation. Art. 3, " 27, provides that the legislature shall not pass any special law for the assessment or collection of taxes. Art. 15, " 11, provides for a uniform assessment of taxation. School District No. 25 of Sweetwater County is a distinct and separate taxing district. It is permitted by " 21"115, W.S.1957, to make provision for the levy of a tax distinctly designed for its own purposes. In the case of Arnold v. Hopkins, 203 Cal. 553, 265 P. 223, 228, the court stated:"it is a sound principle of taxation, and one wholly in accord with the fundamental maxims of popular government, which prescribes that, in so far as practicable, the benefits of taxation should be directly received by those who are most directly concerned in bearing the burdens of taxation. | It is a sound principle of taxation that, insofar as practicable, the benefits of taxation should be directly received by those who are most directly concerned in bearing the burdens of taxation. | Should the benefits of taxation be directly received by those directly concerned in bearing burdens of taxation? | Taxation - Memo # 412 - C- NA.docx | LEGALEASE-00031605-LEGALEASE-00031606 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13567 | Atl. Coast Line R. Co. v. Com., 302 Ky. 36 | 371+2001 | Since the obligation to pay taxes rests solely on legislation, the legislative intent to tax must clearly appear. It is an established rule that, except as respects exemption, tax laws are to be strictly construed against the state and in favor of the taxpayer, especially with respect to penalties or harsh enforcement. Kentucky Tax Commission v. Fourth Avenue Amusement Co., 293 Ky. 668, 170 S.W.2d 42. The broad statement is, of course, subject to qualifications according to differing elements and factors. It is always to be borne in mind that the taxing statutes are framed to produce revenue, and must be given a reasonable construction"not one that "squeezes everything out of the statute which unyielding words do not perforce retain," nor one to expand the law and bring within its terms what was omitted. Cooley, Taxation, Sec. 505; Sutherland, Sec. 2115; Martin v. F. H. Bee Shows, 271 Ky. 822, 113 S.W.2d 448. | The obligation to pay taxes rests solely on legislation and legislative intent to tax must clearly appear. | Does the obligation to pay taxes rest solely on legislation and a clear legislative intent? | 045159.docx | LEGALEASE-00140965-LEGALEASE-00140966 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 13568 | B-C Remedy Co. v. Unemployment Comp. Comm'n of N. C., 226 N.C. 52 | 371+2810 | The Constitution is infringed only when such action impairs the obligation of a contract or destroys a vested right, and these inhibitions are invoked when it is sought to enforce the restored remedy in invitum. The relation between the State and a taxpayer is not one of contract; and certainly the State has acquired no vested interest in appellee's money which it cannot waive by appropriate legislation. Even a private debtor may waive the bar of the statute by his own conduct, and in so far as constitutional limitations are concerned, the State certainly has as much freedom in that respect as an individual. | The relation between the state and a taxpayer is not one of contract, and the state acquires no vested interest in taxpayer's money which the state cannot waive by appropriate legislation. | Is the relation between the state and a taxpayer one of a contract? | Taxation - Memo # 414 - C - SU.docx | ROSS-003288778-ROSS-003288779 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 13569 | Colonial Pipeline Co. v. Com., 145 S.E.2d 227 | 371+2005 | There are ready answers to this premise. In the first place, the power of the State of Virginia to levy taxes is not derived from the Constitution of the United States as interpreted by the Supreme Court. On the contrary, the State has the inherent and unlimited power of taxation unless restrained by its Constitution or the Constitution of the United States. 18 Mich.Jur., Taxation, " 3, pp. 125, 126, and cases there collected. Moreover, there is a presumption of the constitutionality of a statute and the burden is upon the assailing party to prove its invalidity. Am.Jur.2d, Constitutional Law, "" 137, p. 336 ff.; Id., " 172, p. 390 ff.; 16 C.J.S. Constitutional Law " 99a, p. 388. | State has inherent and unlimited power of taxation unless restrained by State or Federal Constitution, and power of state to levy taxes is not derived from Federal Constitution as interpreted by Supreme Court. | Does the state have inherent and unlimited power of taxation unless restrained by State or Federal Constitution? | 045362.docx | LEGALEASE-00141346-LEGALEASE-00141347 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13570 | Giers Imp. Corp. v. Inv. Serv., 235 S.W.2d 355 | 268+956(1) | As was true of the city which had framed and adopted a charter under the provisions of Section 16, Article IX, Constitution of 1875, supra, so it must be true of the City of University City which has framed and adopted a charter pursuant to Section 19, Article VI of the Constitution of 1945, supra. The charter adopted presents a complete system of local self-government. Plaintiffs-appellants are correct in urging that the power to tax is a governmental function inherent in the State (more precisely stated, "inherent in the sovereign people of the State"), exercised by the legislature subject to constitutional limitation. But there are matters governmental in character, including taxation, over which a city may exercise authority delegated to it. In the case of a city organized under general law the delegation is by statute. A city, the people of which have framed and adopted a charter under direct constitutional authority, may exercise such powers of local self-government, including taxation, as the people of the city have delegated to it by charter, subject to constitutional limitation. This is because the sovereign people of the State by their Constitution have set over, transferred or granted to the people of the city a part of the State legislative power. The part so granted is the legislative power to frame and adopt a charter for local self-government. Hence it is said charter provisions ("consistent with and subject to the Constitution and laws of the state") have the force and effect of enactments of the legislature. McGhee v. Walsh, 246 Mo. 266, 155 S.W. 445. See also Kansas City v. Frogge, 352 Mo. 233, 176 S.W.2d 498; Troost Ave. Cemetery Co. v. Kansas City, 348 Mo. 561, 154 S.W.2d 90; Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S.W.2d 195; Mullins v. Kansas City, 268 Mo. 444, 188 S.W. 193. In framing and adopting a charter, what did the people of the City of University City say the City could do? | The power to tax is a governmental function inherent in the state and exercised by legislature subject to constitutional limitation, but there are matters governmental in character, including taxation, over which a city may exercise authority delegated to it. | Are there taxation matters over which a city may exercise authority delegated to it? | 045449.docx | LEGALEASE-00141453-LEGALEASE-00141454 | Order, SA, Sub | 0.87 | 1 | 0 | 1 | 1 | 1 |
| 13571 | Pelouze v. City of Richmond, 183 Va. 805 | 371+2275 | The city relies upon two opinions of the Attorney General, concurred in by the State Tax Commissioner. The Attorney General, in those opinions - one of November 3, 1938, and another of December 9, 1943 - was of the view that a city is not required to pay a writ tax in order to institute and maintain an action or suit in any court in this Commonwealth. It is also a matter of common knowledge that the general practice of municipalities throughout the Commonwealth is not to pay a writ tax upon its actions or suits. This administrative practice of the State officials and the wide-spread general practice of the clerks of the courts in not charging and collecting from municipalities a writ tax for instituting their actions and suits has not been changed by the legislature, and strongly supports the conclusion that cities and other municipalities should be exempt from liability to pay a writ tax. The Attorney General in his opinion of November 3, 1938 (see printed published opinions of the Attorney General for the period 1938-39, p. 181) expresses this view, in which we concur:"It is plain, and this office has frequently so held, that the charge imposed by section 126 of the Tax Code is a tax and not a fee. The general rule is that a statute will not be construed to tax the property of a municipality unless such an intention is clearly manifested by the statute.See 61 C.J. at p. 369. This is true although the State unquestionably has power to tax the property of its political subdivisions in the absence of a constitutional provision forbidding such a tax. | Generally, a statute will not be construed to tax municipality's property, unless such intention is clearly manifested by statute, though state has power to tax its political subdivisions' property, in absence of constitutional prohibition. | Can a statute be construed to tax municipality's property without being clearly manifested by the statute? | 045492.docx | LEGALEASE-00141762-LEGALEASE-00141763 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 13572 | Cargill v. Spaeth, 215 Minn. 540 | 371+2005 | What has been said is sufficient to show that the interest received by the subsidiary warehouse company from its parent, the elevator company, is taxable in Minnesota. The fact that the subsidiary had its commercial domicile here renders it subject to a tax on such income. Since both the subsidiary and the parent had their commercial domicile within the state, there may be some question whether the interest was not received here as a matter of law. But decision need not be put on that ground. A state may tax interest received by a domiciliary thereof from a source without the state. People of State of New York ex rel. Cohn v. Graves, 300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 666, 108 A.L.R. 721. | A state may tax interest received by a domiciliary thereof from a source without the state. Minn.St.1941, S 290.17(2). | Can a state tax interest received by a domiciliary thereof from a source without the state? | 045507.docx | LEGALEASE-00141773-LEGALEASE-00141774 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13573 | Chesapeake & Potomac Tel. Co. v. City of Morgantown, 105 S.E.2d 260 | 371+3249 | The Court also pointed out that taxes are generally defined as coming within two classes, property taxes and excise taxes; and that excise taxes are such as occupational, license, privilege, franchise, and other types which are a charge for a privilege arising from the use of property. It was reiterated that a municipal corporation has no inherent powers of its own; and it is not endowed with inherent power to license or exact payment for a privilege. The Court further said:"It will be observed that there is no provision or language in the ordinance which makes any reference to rental, or any language or description from which rental could be inferred. The tax is upon the privilege of doing business, although the pretense is made in the briefs that the charge is in the nature of a rental. Beyond question, if the provision for the payment of 3 per cent of the gross receipts contained in the ordinance is considered a charge for the privilege of carrying on business in the village of Lombard, it is invalid as exacted without authority granted by the General Assembly." | "Excise taxes", such as occupational, license, privilege and franchise taxes, are charges for privilege arising from use of property, while "property taxes" are taxes directly on property itself. | "Are ""excise taxes"" charges for privilege arising from use of property?" | Taxation - Memo # 678 - C - NS.docx | ROSS-003330700-ROSS-003330701 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13574 | Polimaster Ltd. v. RAE Sys., 623 F.3d 832 | 25T+149 | We cannot, therefore, "overlook agreed-upon arbitral procedures" in favor of the enforcement of an arbitration award. Encyclopaedia Universalis, 403 F.3d at 91. We also cannot utilize the federal policy favoring arbitration to justify the imposition of general procedural rules at the expense of the parties' agreement. See Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos, 25 F.3d 223, 225-26 (4th Cir.1994); Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830, 831 (11th Cir.1991). Here, the parties expressly agreed to submit disputes to arbitration at "defendant's [site]." The parties' agreement effectively removed the decision regarding forum from the procedural decisions delegated to the arbitrator. The arbitrator could not override the parties' express agreement in favor of general procedural rules. Indeed, adherence to the parties' agreed-upon procedures is regularly enforced, such as where relevant to the choice of forum of arbitration, see Bear, Stearns & Co., Inc. v. Bennett, 938 F.2d 31, 32 (2d Cir.1991); National Iranian Oil Co. v. Ashland Oil, Inc., 817 F.2d 326, 332 (5th Cir.1987), or the appointment of arbitrators, see Universal Reinsurance Corp. v. Allstate Insurance Co., 16 F.3d 125, 128 (7th Cir.1993); Avis Rent A Car System, Inc. v. Garage Employees Union, 791 F.2d 22, 24 (2d Cir.1986). | Adherence to agreed-upon procedures by parties to an arbitration agreement is regularly enforced, such as where relevant to the choice of forum of arbitration or the appointment of arbitrators. | Is adherence to the parties agreed upon procedure for arbitration regularly enforced? | 007624.docx | LEGALEASE-00143282-LEGALEASE-00143283 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 13575 | United States v. Jennings, 160 F.3d 1006 | 63+1(1) | Because the distinguishing factor between a bribe and an illegal gratuity is the intent behind the payment, the timing of the payment in relation to the official act for which it is made is (in theory) irrelevant. Cf. Griffin, 154 F.3d at 764. Bribes often are paid before the fact, but "it is only logical that in certain situations the bribe will not actually be conveyed ntil the act is done." United States v. Campbell, 684 F.2d 141, 148 (D.C.Cir.1982). By this same logic, illegal gratuities, which typically follow the act for which they are paid, may be conveyed before the occurrence of the act (so long as the payor believes the official has already committed himself to the action). See id.; Mariano, 983 F.2d at 1159. This can cause the distinction between bribes and illegal gratuities, which is clear in theory, to look somewhat hazy in real life. See United States v. Biaggi, 674 F.Supp. 86, 87-88 (E.D.N.Y.1987) (Weinstein, C.J.), aff'd, 853 F.2d 89 (2d Cir.1988). Without knowing the payor's intent, one cannot know whether the payment was a bribe or an illegal gratuity. Thus, without proof of corrupt intent on the payor's part, a bribery conviction is impossible. | For purposes of statute prohibiting bribery of public officials and witnesses, illegal gratuities, which typically follow the act for which they are paid, may be conveyed before the occurrence of the act, so long as the payor believes the official has already committed himself or herself to the action. 18 U.S.C.A. S 201(c)(1)(A). | What is the difference between accepting a bribe and accepting a gratuity? | Bribery - Memo #340 - C-JL.docx | LEGALEASE-00032040-LEGALEASE-00032041 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 13576 | United States v. Apple, 927 F. Supp. 1119 | 63+1(2) | Without mentioning Mongelli or Vona, the Foley court concluded that this showing of value to the bank alone did not support a conviction. Id. at 492"93. In a detailed analysis, the court first observed that section 666 "is silent as to the identity of the person or entity to whom the "[ ]thing" must have at least a $5,000 value." Id. at 489 (alteration in Foley). In light of this silence, the court turned to legislative history. It noted that Congress intended section 666 to "increase the protection of the integrity of federal funds disbursed through federal programs." Id. Specifically, section 666 was designed to fill gaps left by existing bribery statutes, which covered only bribes to federal officials and to agencies funded by two federal job training acts. In contrast to these existing statutes, section 666 would reach bribes made to many more officials of the myriad of state agencies and other entities that receive more than $10,000 of annual federal funds. Id. at 489"90. In sum, section 666 was meant to "augment the ability of the United States to vindicate significant acts of ... bribery involving Federal monies that are disbursed to private organizations or State and local governments." Id. at 489 (quoting S.Rep. No. 225, 98th Cong., 2d Sess. 369 (1984), reprinted in 1984 U.S.C.C.A.N. 3510). The Foley court saw the legislative history as indicating that "the assessment of the thing's value must be connected, even if only indirectly, to the integrity of federal program funds." 73 F.3d at 490. | Bribery statute prohibiting attempts to influence state governmental agency receiving federal funds in connection with any business or transaction of agency involving "anything of value of $5,000 or more" did not require government to show that "thing" that held value of over $5,000 held that value for Indiana Department of Environmental Management (IDEM), whose investigator was allegedly bribed; all else being equal, showing that "thing" held value for defendant could suffice, as well as showing that defendant's bribe did cost IDEM over $5,000 or otherwise held value for IDEM. 18 U.S.C.A. S 666(a)(2). | "In bribery involving federal monies, should the assessment of the thing's value be connected to the integrity of federal program funds?" | Bribery - Memo #348 - C-JL.docx | ROSS-003288833-ROSS-003288834 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 13577 | Consolidation Coal Co. v. United States, 528 F.3d 1344 | 260+92.5(2) | Both sides agree the reclamation fee would be constitutional if imposed solely on coal extracted. We agree with the government that "coal produced" in " 1232(a) can reasonably be interpreted to mean "coal extracted," and that this interpretation avoids a potential violation of the Export Clause. JWR argues that in Drummond Coal Co. v. Hodel, 796 F.2d 503 (D.C.Cir.1986) this same statutory language "coal produced" was interpreted as including both the extraction and sale of coal. | The phrase "coal produced" in Surface Mining Control and Reclamations Act (SMCRA) section concerning coal producers' payment of reclamation fees would be interpreted as "coal extracted," rather than as including the entire process of extracting and selling coal, in order to avoid a potential violation of the Export Clause; even assuming that SMCRA was ambiguous as to the meaning of "coal produced," this interpretation was the only reasonable construction preserving the constitutionality of the statute and neither the government, nor the court was bound by any past contrary assertions by the government. U.S.C.A. Art. I, S 9, cl. 5; Surface Mining Control and Reclamation Act of 1977, S 402(a), 30 U.S.C.A. S 1232(a). | "Does ""coal produced"" mean ""coal extracted""?" | 021207.docx | LEGALEASE-00143265-LEGALEASE-00143266 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 13578 | Ballmer v. Babbitt, 926 F. Supp. 575 | 260+94 | As this Court recognized in Arch Mineral Corp. v. Babbitt, 894 F.Supp. 974 (S.D.W.Va.1995) (Haden, C.J.), appeal docketed, No. 95-2793 (4th Cir. Sept. 27, 1995):"[i]n cases involving the SMCRA, where coal companies have sought to avoid payment of reclamation fees by arguing 28 U.S.C. " 2462 barred the action, courts have held " 2462 inapplicable. United States v. Tri-No Enterprises, Inc., 819 F.2d 154 (7th Cir.1987); United States v. Hawk Contracting, Inc., 649 F.Supp. 1 (W.D.Pa.1985). In both Tri-No and Hawk, the courts held the reclamation fee is not a "civil fine, penalty, or forfeiture" under " 2462, it "is simply an assessment or excise tax on all coal produced for sale by surface or underground mining.... [t]herefore, 28 U.S.C. " 2462 does not apply to an action to collect delinquent reclamation fees under SMCRA." Tri-No, 819 F.2d at 158; accord Hawk, 649 F.Supp. at 2. | Five-year statute of limitations governing proceeding for enforcement of civil fine, penalty, or forfeiture applied to bar federal government's effort to collect delinquent environmental-related federal and state civil penalties against coal mining company and its officer and shareholder, despite fact that collection was sought through administrative rather than judicial proceedings, as Office of Surface Mining Reclamation and Enforcement (OSM) did not take enforcement action until it placed company on its applicant violator system more than five years after Office's claims accrued. 28 U.S.C.A. S 2462; Surface Mining Control and Reclamation Act of 1977, S 510(c), as amended, 30 U.S.C.A. S 1260(c); 30 C.F.R. SS 773.15(b)(1), 773.5. | "Is the reclamation fee a fine, penalty, or forfeiture?" | Mines and Minerals - Memo # 55 - C - CSS.docx | ROSS-003291061-ROSS-003291062 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13579 | United States v. Etcheverry, 230 F.2d | 260+29.3 | The law is well settled by innumerable decisions that when a mining claim has been perfected under the law, it is in effect a grant from the United States of the exclusive right of possession to the same. It constitutes property to its fullest extent, and is real property subject to be sold, transferred, mortgaged, taxed, and inherited without infringing any right or title of the United States. Ickes v. Virginia-Colorado Development Corp., 295 U.S. 639, 55 S.Ct. 888, 79 L.Ed. 1627; Wilbur v. U.S. ex rel. Krushnic, 280 U.S. 306, 50 S.Ct. 103, 74 L.Ed. 445; Clipper Mining Co. v. Eli Mining & Land Co., 194 U.S. 220, 24 S.Ct. 632, 48 L.Ed. 944; St. Louis Mining & Mill Co. v. Montana Mining Co., 171 U.S. 650, 19 S.Ct. 61, 43 L.Ed. 320; Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735. | Where mining claim has been perfected, it is in effect a grant, from United States, of exclusive right of possession but exclusive possession of surface is limited to use for mining purposes. 30 U.S.C.A. SS 22, 26. | "When a mining claim has been perfected under the law, is it in effect a grant from the United States?" | Mines and Minerals - Memo #160 - C - EB.docx | ROSS-003302346-ROSS-003302347 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 13580 | Long Trusts v. Griffin, 222 S.W.3d 412 | 185+63(2) | With respect to the second issue: Respondents agreed, in 1978 and 1982, to pay part of the drilling and operating costs in exchange for an assignment of part of the working interest in producing wells. Most of the wells were producers, and the parties' arrangement continued for many years. But when disputes arose among them, petitioners asserted that the agreements were unenforceable under the Statute of Frauds because they did not sufficiently identify the properties intended to be covered. As the court of appeals recognized, oil and gas interests are real property, 144 S.W.3d at 104"05, and thus contracts for the transfer or assignment of oil and gas interests are subject to the Statute of Frauds. | Oil and gas interests are real property, and, thus, contracts for the transfer or assignment of oil and gas interests are subject to the statute of frauds. V.T.C.A., Bus. & C. S 26.01. | Are oil and gas interests real property? | 021400.docx | LEGALEASE-00143488-LEGALEASE-00143489 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 13581 | In re Bailey's Estate, 187 Pa. 381 | 289+711 | The only question presented by this appeal is whether the learned auditor erred in finding that the 950 shares of the Philadelphia Copper-Mill Company stock, and the 15 five per cent coupon bonds of the Bloomington City Railroad Company, charged in the assignee's account "as individual assets of Josiah F. Bailey, were his, and not assets of the firm of J. F. Bailey & Sons." If the finding was warranted by the testimony relied on to sustain it, the distribution based upon it must be affirmed. It is conceded that, if Josiah F. Bailey was the sole owner of the stocks and bonds when he and his sons assigned their individual and firm assets, his individual creditors were primarily entitled to the proceeds arising from the sale of them. "Where there are partnership and separate creditors and partnership and separate assets, and the firm is insolvent, each class has priority upon its respective estate." In re Jamison & Co.'s Estate, 163 Pa. St. 143, 29 Atl. 1001. | Where there are partnership and separate creditors and partnership and separate assets, and the firm is insolvent, each class has priority over its respective estate. | "Where there are partnerships and separate creditors, does each class have priority upon its respective estate?" | Partnership - Memo 428 - JK.docx | ROSS-003301969-ROSS-003301970 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13582 | Seacrist v. S. California Edison Co., 197 Cal. Rptr. 3d 834 | 307A+477.1 | ["Judicial admissions may be made in a pleading, by stipulation during trial, or by response to request for admission." (Myers v. Trendwest Resorts, Inc. (2009) 178 Cal.App.4th 735, 746, 100 Cal.Rptr.3d 658.) Notably, Edison does not assert plaintiffs' theory was made in a pleading, by stipulation during trial, or in response to a request for admission. Edison asserts the "admissions" were made after the pleadings and in various arguments. | Judicial admissions may be made in a pleading, by stipulation during trial, or by response to request for admission. | "Can Judicial admissions be made in a pleading, by stipulation during trial, or by response to request for admission?" | 030666.docx | LEGALEASE-00142838-LEGALEASE-00142839 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 13583 | Bydalek v. Brines, 29 S.W.3d 848 | 307A+723.1 | Rule 65.03 prescribes the proper procedure for seeking a continuance.10 It states, in relevant part: "An application for a continuance shall be made by written motion accompanied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based...." Here, Meekers' motion for continuance was not in compliance with Rule 65.03 as it was neither verified nor supported by affidavit.Because Meekers did not follow the simple, explicit, and mandatory procedure to properly present a motion for continuance, the motion was deficient, and the trial court was not required to grant the relief requested. See Nixon v. Director of Revenue, 883 S.W.2d 945, 946[1] (Mo.App.1994). When a moving party ignores the affidavit or verification requirements of Rule 65.03, no abuse can result in denying the continuance. Hurt, 988 S.W.2d at 618[5]; Lamastus v. Lamastus, 886 S.W.2d 721, 726 (Mo.App.1994); Nixon, 883 S.W.2d at 946. | Trial court was not required to grant continuance, where motion was neither verified nor supported by affidavit. V.A.M.R. 65.03. | "Is a trial court required to grant continuance, where a motion was neither verified nor supported by affidavit?" | 030694.docx | LEGALEASE-00142748-LEGALEASE-00142749 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13584 | Cheney v. Woodworth, 13 Colo. App. 176 | 307A+74 | Upon trial, the deposition of plaintiff was read in evidence. Defendant assigns error upon the refusal of the court to suppress this deposition. The ground of his motion therefor was that the certificate of the officer who took the deposition was simply to the effect that it was read to the witness previous to his signature; the complaint of defendant being that the officer should have certified that the deposition was "carefully" read before signing, following the words of the statute. The certificate of the officer was a full compliance with the statute. The object of the requirement that the interrogatories and answers submitted to the witness on the taking of his deposition should be first carefully read to him before he signed it is that the witness may know what the scrivener has written down, and that he may, before his deposition is complete, have an opportunity to correct any errors or inaccuracies of statement which may have occurred. When the deposition is offered, with the signature of the witness to it, and the certificate of the officer that it was read to the witness before it was signed, we think that the reasonable and conclusive presumption is that it was read with that care which the statute contemplated. Certainly the sole object of the statute was subserved. The witness had the opportunity to see that his statements were correctly written. | The provision that, before signing a deposition, the interrogatories and the answers thereto shall be carefully read to the witness, will conclusively be presumed to have been complied with, where the witness has signed the deposition, and the officer taking it certifies that, before so doing, it was read to him. | "Before signing a deposition, shall the interrogatories and the answers thereto be carefully read to the witness?" | 032516.docx | LEGALEASE-00142162-LEGALEASE-00142164 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 13585 | Burke v. Scott, 410 S.W.2d 826 | 307A+726 | The fact that the deposition in this case had not been completed cannot be attributed to negligence under the circumstances. Nor is the fact that there were other continuances in the past, which were presumably granted for good cause, a basis for a denial in this cause. See 12 Tex.Jur.2d Continuance Sec. 23, p. 570 and the cases there cited. | Fact that there were other continuances in past, presumably granted for good cause, is no basis for denial of later continuance. | Can a continuance granted in the past for good cause be a basis for a denial in of later cause? | 033519.docx | LEGALEASE-00142298-LEGALEASE-00142299 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13586 | Alldred v. Alldred, 132 Conn. App. 430 | 307A+560 | Because service of process implicates a court's personal jurisdiction, "an action commenced by ... improper service must be dismissed." (Internal quotation marks omitted.) Jimenez v. DeRosa, 109 Conn.App. 332, 338, 951 A.2d 632 (2008). The dispositive issue in this case is whether, in two postjudgment contempt actions brought against a plaintiff who no longer resides in this country, the defendant properly served the plaintiff by mailing copies of the pleadings to the plaintiff's counsel of record. The defendant appeals from the judgment of the trial court granting the plaintiff's motions to dismiss the defendant's contempt actions. We affirm the judgment of the court. | Because service of process implicates a court's personal jurisdiction, an action commenced by improper service must be dismissed. | Must an action commenced by improper service be dismissed? | Pretrial Procedure - Memo # 6253 - C - NS.docx | ROSS-003289131-ROSS-003289132 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13587 | Taylor v. Mazda Motor of Am., 934 So. 2d 518 | 307A+746 | A trial court's decision to impose sanctions is discretionary and the imposition of sanctions necessarily requires wrongdoing by the party being sanctioned. See Mercer v. Raine, 443 So.2d 944 (Fla.1983). Here, the trial judge struck the plaintiff's only two witnesses as a sanction for not making them readily available for deposition before the pre-trial conference in accord with the pre-trial order. While under some circumstances, it is within a trial judge's discretion to impose sanctions for violations of orders relating to the pre-trial conference, see First Republic Corp. v. Hayes, 431 So.2d 624, 626 (Fla. 3d DCA 1983), and cases cited, the issue, as in First Republic, is whether the sanction was appropriate under the circumstances in the present case. We conclude that it was not. The sanction must be commensurate with the offense. | The sanction imposed by the trial court for violation of a pre-trial order must be commensurate with the offense. | Should the sanction imposed by the trial court for violation of a pre-trial order be commensurate with the offense? | 033908.docx | LEGALEASE-00142334-LEGALEASE-00142335 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 13588 | Rucker v. Taylor, 828 N.W.2d 595 | 307A+560 | For sure, courts can always enforce the service rule on their own initiative to achieve its purposes, independent of the course of conduct of the parties. See Iowa R. Civ. P. 1.302(5). Additionally, a defendant may also uphold the purpose of the service rule by moving to dismiss for untimely service. See Meier, 641 N.W.2d at 541"42. But, in both instances, good cause must be considered in deciding to dismiss a petition for untimely service, and Wilson informs us that this standard considers all the surrounding circumstances, including circumstances that would make it inequitable for a defendant to successfully move to dismiss. See 678 N.W.2d at 422"23. In Henry, it was not inequitable for the defendant to move to dismiss when his insurance representative only continued to negotiate a settlement and did nothing to make the plaintiff think service was unnecessary. See 566 N.W.2d at 191, 192"93. In Wilson, it was inequitable for the defendant to move to dismiss after allegedly agreeing to delay service. See 678 N.W.2d at 422. In the end, the results of both cases are consistent with our long-standing approach that dismissal for failing to timely accomplish service of process is appropriate when the failure results from " "[i]nadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-baked attempts at service." " See id. at 421 (quoting Henry, 566 N.W.2d at 192"93). | A defendant may uphold the purpose of the service rule by moving to dismiss for untimely service. I.C.A. Rule 1.302(5). | Can a defendant uphold the purpose of the service rule by moving to dismiss for untimely service? | 033965.docx | LEGALEASE-00142864-LEGALEASE-00142865 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 13589 | Tri Star Investments v. Miele, 407 So. 2d 292 | 307A+563 | The law is clear that a trial court has the inherent authority to dismiss an action when fraud has been perpetrated on the court. Such power is indispensable to the proper administration of justice, because no litigant has a right to trifle with the courts. It is a power, however, which should be exercised cautiously and sparingly, and only upon a clear showing of fraud, pretense, collusion, or similar wrongdoing. Young v. Curgil, 358 So.2d 58 (Fla. 3d DCA 1978). The court, however, should carefully adhere to established due process, adversarial practice, and evidentiary rules in conducting an inquiry into such charges. | A trial court has inherent authority to dismiss an action when fraud has been perpetrated on the court; however, the power should be exercised cautiously and sparingly, and only upon a clear showing of fraud, pretense, collusion, or similar wrongdoing. | Does a trial court have the inherent authority to dismiss an action when it finds that a plaintiff has perpetrated a fraud on the court? | 034412.docx | LEGALEASE-00143532-LEGALEASE-00143533 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 13590 | Comm'r of Revenue v. Franchi, 423 Mass. 817 | 371+3405 | This court most recently faced an analogous tax situation in Grady, supra. We there noted that, under Massachusetts law, it is well established that "[t]he right to tax must be found within the letter of the law and is not to be extended by implication." Grady, supra at 377, 657 N.E.2d 751, quoting Commissioner of Revenue v. Molesworth, 408 Mass. 580, 581, 562 N.E.2d 478 (1990). The general rule is that tax statutes are to be strictly construed according to their plain meaning, as the State has no power to tax unless that power has been expressly conferred by statute. Commissioner of Revenue v. AMIWoodbroke, Inc., 418 Mass. 92, 94, 634 N.E.2d 114 (1994). Accordingly, tax statutes are usually construed "against the taxing authority, and all doubts resolved in favor of the taxpayer." Grady, supra, quoting AMIWoodbroke, Inc., supra. | General rule is that tax statutes are to be strictly construed according to their plain meaning, as State has no power to tax unless that power has been expressly conferred by statute. | Does the State have the power to tax? | 045293.docx | LEGALEASE-00142800-LEGALEASE-00142801 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 13591 | Shea v. Boston Edison Co., 431 Mass. 251 | 371+2005 | We now directly address the plaintiffs' argument that the charges are unconstitutional excise taxes under Part II, c. 1, " 1, art. 4, of the Constitution of the Commonwealth, which prohibits such taxes if they are not "reasonable." An excise tax is presumed valid and "is not to be found void unless its invalidity is established beyond a rational doubt." Andover Sav. Bank v. Commissioner of Revenue, 387 Mass. 229, 235, 439 N.E.2d 282 (1982). "There is no restraint upon the power of the legislature to lay taxes, except such as the constitution of the United States or that of the state imposes." Oliver v. Washington Mills, 93 Mass. 268, 11 Allen 268, 270 (1865). | There is no restraint upon the power of the legislature to lay taxes, except such as the constitution of the United States or that of the state imposes. | Is there any restraint upon the power of the legislature to lay taxes? | Taxation - Memo # 518 - C - SKG.docx | ROSS-003290178-ROSS-003290179 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13592 | City & Cty. of San Francisco v. Cty. of San Mateo, 10 Cal. 4th 554 | 371+2513 | The amount of ad valorem tax paid on a parcel of real property is the product of two factors: the valuation of the real property and the tax rate applied to that valuation. In 1968, the California Constitution was amended by the voters to limit the maximum valuation by the taxing counties of taxable land owned by a local government and located outside of its boundaries. (Former article XIII, "" 1.60 to 1.69.) In 1974, these valuation limitations were moved to article XIII, section 11. Section 11 limits the taxation of taxable land owned by a local government and located outside its jurisdictional boundaries (hereafter sometimes referred to as extraterritorial land) by restricting the maximum valuation of that land. (Art. XIII, " 11, subd. (b).) Section 11, however, does not limit the tax rate imposed on extraterritorial lands. | Amount of ad valorem tax paid on parcel of real property is product of valuation of real property and tax rate applied to that valuation. | Does ad valorem tax include the valuation of the real property and the tax applied to that valuation? | 045560.docx | LEGALEASE-00142110-LEGALEASE-00142111 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 13593 | Sabatino v. LaSalle Bank, N.A., 96 S.W.3d 113 | 401+5.1 | Suits for the possession of real estate, or whereby the title thereto may be affected ... shall be brought in the county where such real estate, or some part thereof, is situated.This court in Dickenson Manor, Inc. v. Slagle, noted that the phrase "whereby the title may be affected" in " 508.030 has been held to mean the judgment must operate directly upon the title to the real estate. 732 S.W.2d 263, 265 (Mo.App.W.D.1987). In order for "title to be affected" so as to predicate venue in the county where the land is located, title to the land must be the subject of the controversy. It is not enough for the judgment to affect the title incidentally or collaterally. State ex rel. S. Mo. Pine Lumber Co. v. Dearing, 180 Mo. 53, 79 S.W. 454, 457 (1904) (holding that a prayer for relief from promissory notes and an injunction against foreclosure under the deed of trust securing the notes did not subject the case to the mandatory venue provisions of 564, R.S. 1899, a predecessor to current " 508.030, because the action was not one whereby title to real estate may be "affected," as provided for in that statute). | In order for "title to be affected," so as to predicate venue in the county where the land is located, title to the land must be the subject of the controversy; it is not enough for the judgment to affect the title incidentally or collaterally. V.A.M.S. S 508.030. | Must the title to land be the subject of controversy for the suit to be brought in the county where the land is situated? | Venue - Memo 94 - JS.docx | ROSS-003303351-ROSS-003303352 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 13594 | Elliott v. Dep't of Labor & Indus., 151 Wash. App. 442 | 413+2 | An industrial insurance claim is "governed by explicit statutory directives and not by the common law." Rector, 61 Wash.App. at 390, 810 P.2d 1363. In Rector, we surveyed the evolution of the statute and concluded that while a former version of the statute had allowed the date of accrual to vary, the legislature amended the statute in 1927 to remove the discovery rule. The former statute (Rem.Rev.Stat. " 7675) defined "injury" as an "injury resulting from some fortuitous event as distinguished from the contraction of disease." Rector, 61 Wash.App. at 388, 810 P.2d 1363. Under the current statute, as amended in 1927, an injury is indistinguishable from the accident that caused it. Regardless when the physical effects of the injury become manifest, the injury occurs and the one-year statute of limitations begins to run when the accident happens. Rector, 61 Wash.App. at 389"90, 810 P.2d 1363. | An industrial insurance claim is governed by explicit statutory directives and not by the common law. | Is an industrial insurance claim governed by statutory directives and not by the common law? | Workers Compensation - Memo #334 ANC.docx | ROSS-003288970-ROSS-003288971 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13595 | Leadertex v. Morganton Dyeing & Finishing Corp., 67 F.3d 20 | 25T+182(1) | Since it has divulged no significant information in discovery, the only prejudice Leadertex can claim is the expense and delay inherent in the procedure. But pretrial expense and delay"unfortunately inherent in litigation"without more, do not constitute prejudice sufficient to support a finding of waiver. See Rush, 779 F.2d at 887"88; Hatzlachh Supply, 828 F.Supp. at 184. Nor does Leadertex appear to have in fact incurred any extraordinary expense in its limited responses to Morganton's discovery demands. Waiver may not therefore stand firmly on defendant's use of discovery. | Pretrial expense and delay, without more, do not constitute prejudice sufficient to support finding of waiver of right to arbitration. | Does pretrial expense and delay constitute prejudice sufficient to support a finding of waiver? | Alternative Dispute Resolution - Memo 702 - RK.docx | ROSS-003287055-ROSS-003287056 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 13596 | Republic Ins. Co. v. PAICO Receivables, 383 F.3d 341 | 25T+182(1) | In addition to the invocation of the judicial process, there must be prejudice to the party opposing arbitration before we will find that the right to arbitrate has been waived. "[F]or purposes of a waiver of an arbitration agreement: "prejudice ... refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." " Subway, 169 F.3d at 327 (quoting Doctor's Assocs. v. Distajo, 107 F.3d 126, 134 (2d Cir.1997)) (omission in original). Ultimately, however, "[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case." Tenneco Resins, Inc. v. Davy Int'l, AG, 770 F.2d 416, 420 (5th Cir.1985). | Ultimately, the question of what constitutes a waiver of the right of arbitration depends on the facts of each case. | Does the question of what constitutes a waiver of the right of arbitration depend on the facts of each case? | Alternative Dispute Resolution - Memo 709 - RK.docx | ROSS-003288672-ROSS-003288673 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13597 | Wood v. Woeste, 461 S.W.3d 778 | 34+34.2(4) | In interpreting Section 522, our sister courts have held the SCRA "leaves no room for judicial discretion." Hernandez v. Hernandez, 169 Md.App. 679, 690, 906 A.2d 429, 435 (2006) (footnote omitted). If a service member complies with the requirements for a stay, it is mandatory that the trial court grant a stay. In re Amber M., 184 Cal.App.4th 1223, 1230, 110 Cal.Rptr.3d 25, 30 (2010); In re A.R., 170 Cal.App.4th 733, 743, 88 Cal.Rptr.3d 448, 456 (2009); Hernandez, 169 Md.App. at 690, 906 A.2d at 435"36. | If a service member complies with the requirements for a stay under the federal Servicemembers Civil Relief Act (SCRA), it is mandatory that the trial court grant a stay. 50 App.U.S.C.A. S 522(b)(1). | Is it mandatory for a court to grant a stay if a service member complies with the requirements for a stay? | 008649.docx | LEGALEASE-00144454-LEGALEASE-00144455 | Order, SA, Sub | 0.61 | 1 | 0 | 1 | 1 | 1 |
| 13598 | Casey v. United States, 8 Cl. Ct. 234 | 34+2 | It is clear, however, that regulations that are promulgated by the Army must be in accord with those promulgated by the Department of Defense. Simmons v. Brown, supra, 497 F.Supp. at 178. To the extent that Army regulations conflict with those of the Department of Defense, the service regulations must give way. | Army regulations must be in accordance with those promulgated by the Department of Defense, and to extent that Army regulations conflict with those of DOD, the service regulations must give way. 10 U.S.C.A. S 1169. | Does a service regulation have to give way when it conflicts with a department of defense regulation? | 008667.docx | LEGALEASE-00144643-LEGALEASE-00144644 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 13599 | U.S. ex rel. Pasciuto v. Baird, 39 F. Supp. 411 | 34+20.8(1) | The complete picture presented before the Local Board was not one to inspire confidence or belief in the statements made by him. Selectees should realize the great burden placed upon the local boards under the law. The statements made by the registrants or selectees should be entirely accurate and they should be held to strict accountability for each and every statement made. | Statements made by selective service registrants or selectees should be entirely accurate, and registrants or selectees should be held to strict accountability for each statement made. Selective Training and Service Act of 1940, S 10(a) (2), 50 U.S.C.A.Appendix, S 310(a) (2). | Should statements made by selective service registrants or selectees be entirely accurate? | Armed Services - Memo 274 - RK.docx | ROSS-003288524 | Condensed, SA | 0.27 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13600 | United States v. Collins, 78 F.3d 1021 | 164T+30 | More recently the Fourth Circuit held in United States v. Hairston, 46 F.3d 361, 366 (4th Cir.1995), that a private person can be convicted of aiding and abetting a public official who extorts under color of official right. The court reasoned that "[o]ne who collects the extorted payments is no less guilty than the official he serves." Id. Similarly, in United States v. Box, 50 F.3d 345, 351 (5th Cir.1995), the Fifth Circuit rejected a bail bondsman's argument that he could not be guilty of extortion "under color of official right" because he was not a public official. The court reaffirmed the principle that a private person may be convicted of aiding and abetting a public official's extortion under the Hobbs Act. Id. | Although public officials are usually the only ones charged with extorting property under color of official right, private persons may be convicted of extortion under color of official right if they aided and abetted public official's receipt of money to which he was not entitled. 18 U.S.C.A. S 1951. | When can a private person be convicted of extortion under color of official right? | 012250.docx | LEGALEASE-00144963-LEGALEASE-00144964 | Order, SA, Sub | 0.59 | 1 | 0 | 1 | 1 | 1 |
| 13601 | Kristensen v. McGrath, 179 F.2d 796 | 135+1 | It is axiomatic that residence is not a term of fixed legal definition but takes on shades of meaning according to the statutory framework in which it is found. Beale, Residence and Domicil, 4 Iowa L.Bull. 3, 4 (1918); Raymond v. Leishman, 1914, 243 Pa. 64, 89 A. 791, L.R.A. 1915A, 400 Ann.Cas. 1915C, 780. And like domicile, with which it is sometimes said to be synonymous, it is a question to be determined in each case by examination of a party's intention, acts, declarations, the nature of his stay, etc. Petition of Herschman, 7 Cir., 1947, 163 F.2d 865, 867; 1 Beale, Conflict of Laws 109 (1935); 8 Mertens, Law of Federal Income Taxation 252 (1942). But wherever used, the term has an irreducible minimum of meaning. As we shall indicate, it requires at least an abode which is in some degree permanent and is the result of choice. And where aliens are concerned, absent unusual circumstances, it also requires the consent of the sovereign. Appellant's continued presence here was in no sense permanent, was not the result of choice, and was under the express dissent of the sovereign. | "Residence" is not a term of fixed legal definition but takes on shades of meaning according to the statutory framework in which it is found. | "Is ""residence"" a term of fixed legal definition?" | Domicile - Memo # 21 - C - SA.docx | ROSS-003289033-ROSS-003289034 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13602 | Guy Scroggins v. Emerald Expl., 401 So. 2d 680 | 260+47 | Mineral rights, including mineral leases, are classified under the Mineral Code as incorporeal immovables and are subject to the Civil Code articles respecting immovable property. LSA-R.S. 31:2, 16 and 18. As such, ownership of a mineral lease or an interest therein cannot be established by parol evidence. It must be evidenced by a written contract. LSA-C.C. Articles 2275, 2276; Little v. Haik, 246 La. 121, 163 So.2d 558 (La.1964). In the absence of such written agreements, plaintiff is also precluded from recovering damages for the alleged breach thereof. Slay v. Smith, 368 So.2d 1144 (La.App. 3rd Cir. 1979); Davidson v. Midstates Oil Corporation, 211 La. 882, 31 So.2d 7 (1947); H. A. Bauman, Inc. v. Tilly, 185 So. 504 (La.App.2d Cir. 1938); Hayes v. Muller, supra. | Mineral rights, including mineral leases, are classified under the mineral code as incorporeal immovables and subject to civil code articles respecting immovable property. LSA-R.S. 31:2, 31:16, 31:18; LSA-C.C. arts. 2275, 2276. | Are mineral rights incorporeal immovables? | 021381.docx | LEGALEASE-00144161-LEGALEASE-00144162 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 13603 | FPI Dev. v. Nakashima, 231 Cal. App. 3d 367 | 302+11 | The role of the pleadings in measuring materiality is supplemented by rules directly applicable to a summary judgment proceeding. The parties must submit "separate statements" identifying each of the material facts in dispute with reference to the supporting evidence. (Code Civ.Proc., " 437c, subd. (b).) The motion or opposition thereto must be supported by facts in the form of "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (Ibid.) In a properly pleaded case this showing addresses the matters of fact put in issue by the pleadings, for properly drafted pleadings aver the ultimate facts which constitute the cause of action or defense thereto. (See Andalon, supra, 162 Cal.App.3d at pp. 604"605, 208 Cal.Rptr. 899.) In a summary judgment proceeding the factual submissions of the parties must track these averments by providing evidence of the ultimate facts averred. Because of this relationship, in the absence of an appropriate objection, some defects in the pleading of an ultimate fact may be remedied by resort to a factual showing in the summary judgment proceeding. In this manner the pleadings may be read together with the factual showings in the summary judgment proceeding for purposes of discerning what is in issue. | Properly drafted pleadings aver ultimate facts that constitute cause of action or defense thereto. | Does a properly drafted pleading aver the ultimate facts? | 023516.docx | LEGALEASE-00144041-LEGALEASE-00144042 | Order, SA, Sub | 0.93 | 1 | 0 | 1 | 1 | 1 |
| 13604 | In re Gen. Motors Corp., 296 S.W.3d 813 | 307A+554 | Courts must and do have the power to dismiss lawsuits even when"particularly when"they lack jurisdiction over the subject matter of the suit. The issue in this case is, "Does the district court somehow divest itself of this power by entering an order of abatement rather than an order of dismissal?" If the court has the power to reconsider the abatement and reinstate the case, then the court must also have the power to reconsider the abatement and dismiss the case. This is true even though the court does not have the power to adjudicate the claims in the case. Once again, a court's action in dismissing a case for want of prosecution may or may not be error, but it is not a void act or a nullity simply because the case has been abated by the court. The court retains the power to dismiss claims over which it does not have jurisdiction and cases that it believes"however erroneously or inadvertently"have not been prosecuted with sufficient diligence. When the litigants believe the court has taken such an action inadvertently or improvidently, the law requires the litigants to take some action to complain about this within certain time limitations. These time limitations are jurisdictional. The fact that a party may fail to act within the time constraints due to no real fault of their own does not alter the jurisdictional analysis. | The court retains the power in an abated action to dismiss claims over which it does not have jurisdiction and cases that it believes-however erroneously or inadvertently-have not been prosecuted with sufficient diligence. | Do the court retain the power to dismiss claims over which it does not have jurisdiction? | Pretrial Procedure - Memo # 5781 - C - PC.docx | ROSS-003289455-ROSS-003289456 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13605 | Bankers Mut. Ins. Co. v. Friedlander, 262 A.2d 606 | 307A+726 | On this appeal the insurers claim two errors. First, it is claimed that the trial court abused its discretion in denying a further continuance in order that a further effort could be made to locate Fadeley. Two continuances, covering a period of approximately a year, having been granted, we find no abuse of discretion in denying a third continuance. | Where two continuances covering period of approximately a year had been granted in tenant's insurer's action to recover amount paid after fire, denial of third continuance to locate witness was not abuse of discretion. | Would the denial of third continuance to locate witness be considered an abuse of discretion? | 033226.docx | LEGALEASE-00144570-LEGALEASE-00144571 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13606 | Matthews , on behalf of M.M. v. Kountze Indep. Sch. Dist., 484 S.W.3d 416 | 307A+552 | Nonetheless, dismissal may be appropriate when subsequent events make "absolutely clear that the [challenged conduct] could not reasonably be expected to recur." Bexar Metro. Water Dist., 234 S.W.3d at 131 (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). Persuading a court that the challenged conduct cannot reasonably be expected to recur is a "heavy" burden. County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). | Persuading a court, as basis for dismissal, that the challenged conduct cannot reasonably be expected to recur is a heavy burden. | "Is persuading a court that the challenged conduct cannot reasonably be expected to recur, a burden?" | 034318.docx | LEGALEASE-00144273-LEGALEASE-00144274 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 13607 | Gabriel v. Johnston's L.P. Gas Serv., 98 A.D.3d 168 | 307A+563 | We now turn to the cross appeals of Raytheon and Johnston, which raise the issue whether the court erred in denying their respective cross motions seeking, inter alia, dismissal of the claims of the majority of the plaintiffs in the actions against them. Pursuant to 22 NYCRR 202.27(b), a court has the discretion to dismiss the complaint in the event of a plaintiff's failure to appear (see Harris v. Bliss, 60 A.D.3d 437, 438, 873 N.Y.S.2d 488), but here the issue is academic in view of our determination that the court abused its discretion in denying those parts of plaintiffs' motion for a protective order relating to the taking of certain depositions and trial testimony via video. | A court has the discretion to dismiss the complaint in the event of a plaintiff's failure to appear. N.Y.Ct.Rules, S 202.27(b). | Does a court have the discretion to dismiss the complaint in the event of a plaintiff's failure to appear? | Pretrial Procedure - Memo # 6778 - C - PB.docx | ROSS-003301959-ROSS-003301960 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 13608 | McClure v. Cty. of Jackson, 185 N.C. App. 462 | 13+6 | Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action. If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action. Allen v. Georgia, 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949 (1897); People ex rel. Wallace v. Labrenz, 411 Ill. 618, 104 N.E.2d 769, Cert. denied 344 U.S. 824, 73 S.Ct. 24, 97 L.Ed. 642 (1952); 20 Am.Jur.2d Courts s 81 (1965). | Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action; if the issues before a court become moot at any time during the course of the proceedings, the usual response should be to dismiss the action. | Should an action be dismissed if the issues before the court become moot? | Pretrial Procedure - Memo # 6787 - C - SPB.docx | LEGALEASE-00034463-LEGALEASE-00034464 | Condensed, SA | 0.46 | 0 | 1 | 0 | 1 | |
| 13609 | Cty. of Cameron v. Brown, 80 S.W.3d 549 | 302+111.48 | In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry. Texas Natural Res. Conservation Comm'n v. White, 46 S.W.3d 864, 868 (Tex.2001); Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554"55 (Tex.2000). When we consider a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent. See Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex.1993); Peek v. Equipment Serv. Co. of San Antonio, 779 S.W.2d 802, 804"05 (Tex.1989). When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. See Peek, 779 S.W.2d at 804"05; Texas Dep't of Corrections v. Herring, 513 S.W.2d 6, 9"10 (Tex.1974). On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. See Peek, 779 S.W.2d at 804"05. | When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend, but if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. | "If the pleadings or record conclusively negate the existence of jurisdiction, should the suit be dismissed?" | 034507.docx | LEGALEASE-00144045-LEGALEASE-00144047 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 13610 | Whitman v. Kentucky Cent. Life & Accident Ins. Co., 232 Ky. 173 | 307A+563 | Disobedience of a valid order of the court is deemed such an interference with the due administration of justice as to constitute contempt. 13 C. J. 9; 6 R. C. L. 502. Where a party declines to conform to such a valid order, the trial court has the right and power to dismiss his cause for such contumacy. Rehkamp v. Martin, 198 Ky. 34, 247 S. W. 1115. A plaintiff in contempt is not entitled as a matter of right to proceed with the trial of his case. 6 R. C. L. 526. Hence, the court properly dismissed the petition. | Where party declines to conform to valid court order, trial court may dismiss his case. | "Where party declines to conform to valid court order, can a trial court dismiss his case?" | Pretrial Procedure - Memo # 7104 - C - KA_57778.docx | ROSS-003282771-ROSS-003282772 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 13611 | Acme Markets v. Callanan, 236 Ill. 2d 29 | 268+956(4) | Justice McDade's dissent correctly recognized that the purpose of PTELL "is to provide greater citizen control over the levy of taxes they are required to pay." 378 Ill.App.3d at 684, 317 Ill.Dec. 607, 882 N.E.2d 181 (McDade, P.J., dissenting). Under section 18"190 of that statute, a referendum was clearly required before a tax levy to support the detention home could be imposed. No such referendum was conducted prior to the 1997 levy or at any other time. To date, the protections contemplated by the legislature when it enacted PTELL have been ignored. | Purpose of Property Tax Extension Limitation Law (PTELL) is to provide greater citizen control over the levy of taxes they are required to pay. 35 ILCS 200/18-190 (2004 Bar Ed.). | What is the purpose of the Property Tax Extension Limitation Law (PTELL)? | 045692.docx | LEGALEASE-00144488-LEGALEASE-00144489 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 13612 | Cohen v. Harrington, 722 A.2d 1191 | 371+2060 | The plaintiffs place great weight on the fact that the General Assembly labeled the tax an excise tax. In Automobile Club of Oregon v. State of Oregon, 314 Or. 479, 840 P.2d 674, 682 (Or.1992), the court said "the character of a levy is determined by its function, not by the label the legislature attaches to it." Our own Court has said, "[a]s a general proposition of statutory construction, titles do not control the meaning of statutes. 2A Sands, Statutes and Statutory Construction " 47.03 (4th ed.1973). Further, the title of an act cannot control or vary the meaning of a statute where that statute is unambiguous." Orthopedic Specialists, Inc. v. Great Atlantic & Pacific Tea Co., 120 R.I. 378, 383"84, 388 A.2d 352, 355 (1978). Thus, regardless of the nomenclature used by the General Assembly, it is the nature of the tax itself that determines whether the tax is an excise tax or a property tax. | Regardless of the nomenclature used by the General Assembly, it is the nature of a tax itself that determines whether the tax is an excise tax or a property tax. | Does the nature of a tax itself determine whether the tax is an excise tax or a property tax? | 045754.docx | LEGALEASE-00144437-LEGALEASE-00144438 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13613 | United States v. McManigal, 708 F.2d 276 | 63+1(1) | A defendant's intent, as defendant admits (Br. 51), may be inferred from all the facts and circumstances proved at trial. The evidence showed that from December 1974 to December 1977 McManigal paid Lavin several hundred dollars several times a year, knowing that Lavin was a deputy commissioner at the Board. After Lavin left the Board, McManigal made payments to Woodlock, arranged a $7100 loan, and paid at least $2000 for meals for Woodlock until he left the Board. Although McManigal testified that those payments were gifts to friends, there was evidence that for some of the payments, McManigal and Victor Cacciatore contributed to the payment in the same proportion that they split legal fees. There was testimony that McManigal offered Board personnel a percentage of his fees in return for assistance in obtaining assessment reductions. There was also evidence of a recorded conversation in which McManigal attempted to convince Woodlock to lie to federal investigators and in general to deny his relationship with McManigal. Defendant stresses, of course, that there was also testimony favorable to McManigal, and he emphasizes that the government never asked its witnesses why they were fraudulently processing the defendant's files. Defendant argues that we must presume that this was because the government knew the bribe recipients were not illegally processing files in exchange for the gifts given by defendant, but for some other reason. We agree with the government that the focus of the bribery charge is on defendant's intent in making the payment, rather than the Board employees' intent in illegally processing the files. There is bribery when the offer is made with intent that the offeree act favorably to the offeror even when no particular act is contemplated by the offeror or offeree. United States v. Isaacs, 493 F.2d 1124, 1145 (7th Cir.1974), certiorari denied, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146. Viewing the | There is bribery when offer is made with intent that offeree act favorably to offeror even when no particular act is contemplated by offeror or offeree. | Does a particular act need to be contemplated by the offeror or offeree in order for the crime of bribery to be established? | 012279.docx | LEGALEASE-00145232-LEGALEASE-00145233 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 13614 | Evans v. United States, 504 U.S. 255 | 164T+24(1) | We reject petitioner's criticism of the instruction, and conclude that it satisfies the quid pro quo requirement of McCormick v. United States, 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991), because the offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the quid pro quo is not an element of the offense. We also reject petitioner's contention that an affirmative step is an element of the offense of extortion "under color of official right" and need be included in the instruction.19 As we explained above, our construction of the statute is informed by the common-law tradition from which the term of art was drawn and understood. We hold today that the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts. | Affirmative act of inducement by public official, such as a demand, was not element of offense of extortion "under color of official right" prohibited by Hobbs Act; government was only required to show that public official obtained payment to which he was not entitled, knowing that payment was made in return for official acts; overruling U.S. v. O'Grady, 742 F.2d 682; U.S. v. Aguon, 851 F.2d 1158. 18 U.S.C.A. S 1951. | "Under bribery statute, to convict a public official, what does a public official need to know when he obtains a payment to which he is not entitled?" | 012338.docx | LEGALEASE-00145853-LEGALEASE-00145854 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 13615 | People v. Hinson, 269 Cal. App. 2d 573 | 67+29 | "Although it is necessary for the People to show that a person charged with burglary entered the premises with the requisite intent, such intent is rarely susceptible of direct proof, and must, therefore, ordinarily be inferred from the facts and circumstances disclosed by the evidence (People v. Franklin, 153 Cal.App.2d 795, 314 P.2d 983)." (People v. Nichols, 196 Cal.App.2d 223, 226"227, 16 Cal.Rptr. 328, 330.) Here the evidence unquestionably established an unlawful and forcible entry of Eddie's Discount Store. From this alone burglariousintent could be reasonably and justifiably inferred. (People v. Michaels, 193 Cal.App.2d 194, 199, 13 Cal.Rptr. 900; People v. Stewart, 113 Cal.App.2d 687, 689, 248 P.2d 768.) When the evidence is sufficient to justify a reasonable inference that such intent existed, the judgment will not be disturbed on appeal. (People v. Nichols, 106 Cal.App.2d 223, 227, 16 Cal.Rptr. 328.) | From evidence establishing defendant's unlawful and forcible entry into discount store, burglarious intent could be reasonably and justifiably inferred. West's Ann.Pen.Code, S 459. | Can the intent in the crime of burglary be inferred from unlawful and forcible entry? | 012859.docx | LEGALEASE-00145506-LEGALEASE-00145510 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13616 | People v. Escobar, 7 Cal. App. 4th 1430 | 110+822(7) | The court instructed with CALJIC Nos. 3.00 (defining principals), 3.01 (defining aiding and abetting), and 3.03 (explaining how aider and abettor may end responsibility for a crime). Next, it gave a special instruction requested by Escobar which stated, "The intent to aid and abet a burglary must be formed prior to or at the time of the entry." Thereafter, it instructed on the elements of burglary and the specific intent required for that offense. | Special jury instruction, that "intent to aid and abet a burglary must be formed prior to or at the time of the entry," when heard in context, could not have been misleading, despite claim that instruction did not make clear that it was perpetrator's entry, not defendant's entry, if any, which determined whether defendant had requisite intent; instruction was preceded by instructions distinguishing between direct perpetrators and aiders and abettors and defining aiders and abettors. West's Ann.Cal.Penal Code S 459. | Does the intent to aid and abet a burglary have to exist prior to entry? | Burglary - Memo 243 - TB.docx | ROSS-003300839-ROSS-003300840 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 13617 | Ex parte Coley, 942 So. 2d 349 | 135+8 | Ex parte Sides, 594 So.2d 93, 95 (Ala.1992) (citing Ex parte Weissinger, 247 Ala. 113, 22 So.2d 510 (1945)). Thus, our focus is on where Coley was domiciled, not on where she actually resided, at the time of the accident."A person's domicile is that place in which his habitation is fixed, without any present intention of removing, and it embraces (1) the fact of residence and (2) the intention to remain. As a general proposition a person can have but one domicile, and when once acquired is presumed to continue until a new one is gained facto et animo, [2] and what state of facts constitutes a change of domicile is a mixed question of law and fact."Weissinger, 247 Ala. at 117, 22 So.2d at 514. | As a general proposition a person can have but one domicile, and when once acquired is presumed to continue until a new one is gained in fact and intent. | Can a person have but one domicile as a general proposition? | 10795.docx | LEGALEASE-00094495-LEGALEASE-00094496 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 13618 | Hopkins v. J. E. Foster & Son, 360 S.W.2d 180 | 95+318 | A conveyance of land without reservation would include all minerals and mineral rights. 128 Tex. 628, 101 S.W.2d 543; Schlittler v. Smith. We hold that the letter of commitment should be construed to mean that defendant would be entitled to have as security a first lien on the property, including all of the minerals. We take judicial knowledge of the fact that land is more valuable with the minerals intact than without. | Where letter of commitment provided that lender was to be furnished with a title policy insuring deed of trust as a first lien on the property, without reservation, lender was entitled to have as security a first lien on owner's property, including all minerals, and was not required to honor its commitment where two-thirds of the minerals under owner's land were outstanding in a third person. | Would a conveyance of land without reservations include all minerals and mineral rights? | Mines and Minerals - Memo #224 - C - CSS.docx | ROSS-003288434-ROSS-003288435 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 13619 | Skaw v. United States, 13 Cl. Ct. 7 | 260+17(1) | "A mining claim does not create any rights against the United States and is not valid unless and until all requirements of the mining laws have been satisfied. One of these requirements is the actual physical finding of a valuable mineral deposit within the limits of the claim. United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968); Foster v. Seaton, 271 F.2d 836 (D.C.Cir.1959). | For purpose of determining validity of contested mineral claims, mining claim does not create any rights against United States and is not valid unless and until all requirements of mining laws have been satisfied, and one such requirement is actual physical finding of valuable mineral deposit within limits of claim. 30 U.S.C.A. SS 22, 23, 29. | Does a mining claim create any rights against the United States? | 021451.docx | LEGALEASE-00146075-LEGALEASE-00146076 | SA, Sub | 0.15 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13620 | Bohatch v. Butler & Binion, 977 S.W.2d 543 | 46H+158 | While this argument is not without some force, we must reject it. A partnership exists solely because the partners choose to place personal confidence and trust in one another. See Holman, 522 P.2d at 524 ("The foundation of a professional relationship is personal confidence and trust."). Just as a partner can be expelled, without a breach of any common law duty, over disagreements about firm policy or to resolve some other "fundamental schism," a partner can be expelled for accusing another partner of overbilling without subjecting the partnership to tort damages. Such charges, whether true or not, may have a profound effect on the personal confidence and trust essential to the partner relationship. Once such charges are made, partners may find it impossible to continue to work together to their mutual benefit and the benefit of their clients. | Partner in law firm can be expelled from partnership for accusing, in good faith, another partner of overbilling without subjecting partnership to tort damages for breach of fiduciary duty. | Can a partner be expelled over disagreements about firm policy? | 022471.docx | LEGALEASE-00146374-LEGALEASE-00146375 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 13621 | Hooper v. Yoder, 737 P.2d 852 | 289+933 | As a general rule, when partners organize a corporation to operate the business of the partnership and transfer the assets to the corporation, the partnership is dissolved. 2 S. Rowley, Partnership " 58.11 (2d ed. 1960). This is so because such action usually reflects the express will of the parties that the partnership be dissolved. See id.; " 7"60"131(1)(a)(III), 3A C.R.S. (1986). | Generally, when partners organize corporation to operate business of partnership and transfer assets to corporation, partnership is dissolved. C.R.S. 7-60-131(1)(a)(III). | Is a partnership dissolved when partners organize a corporation to operate the business of the partnership? | 022480.docx | LEGALEASE-00146388-LEGALEASE-00146389 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 13622 | Heckman v. Williamson Cty., 369 S.W.3d 137 | 78+1333(4) | The standing requirements extend to class actions.53 A plaintiff who brings a class action, rather than just suing on his own behalf, must still prove that he individually had standing to sue. The court must consider this threshold question even before reaching the separate issue of whether it can certify the putative class. Just as it must dismiss a case where the plaintiff lacks standing to bring any of his claims, a court must dismiss a class action for want of jurisdiction if the named plaintiff entirely lacked individual standing at the time he sued. | Named plaintiff in putative class action under S 1983 against county on behalf of indigent criminal defendants who were allegedly deprived of right to court-appointed counsel on misdemeanor charges carrying possible confinement pleaded jurisdictional facts sufficient to establish, for standing purposes, that he suffered from an injury-in-fact at time he sued; plaintiff alleged that he requested court-appointed attorney and provided proof of indigency at his first appearance, that trial court threatened to raise his bond if he did not have attorney at next appearance, and that at time of filing present action he had not been appointed an attorney and charges against him were still pending. U.S.C.A. Const.Amend. 6; 42 U.S.C.A. S 1983. | Should a court dismiss a class action for want of jurisdiction if the named plaintiff entirely lacked individual standing at the time he sued? | Pretrial Procedure - Memo # 5845 - C - VA.docx | ROSS-003301575-ROSS-003301576 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 13623 | McGinley v. McGinley, 170 S.W.2d 938 | 30+3239 | If the statement of defendant's attorney at the beginning of the trial could in any sense be termed a motion for a continuance, the court did not abuse its discretion in denying it. The statement was not an application for a continuance as provided by Section 1087, R.S.1939, Mo. R.S.A. " 1087, it was not in writing, not under oath, nor did it set forth the usual statements as to diligence, or the impossibility of proceeding without plaintiff's evidence or presence, or of any efforts to secure her testimony. Key v. Key, Mo.App., 93 S.W.2d 256. The defendant attached to her motion for a new trial the certificate of a physician, dated October 3, 1942, which was after the trial, and in which it was stated that Mrs. Julia McGinley was under the doctor's care for a nervous disorder, and in view of her present condition the doctor gave as his opinion that she should not be subjected to any nervous strain, as court testimony, etc., for an indefinite period. The doctor did not say that the defendant could not appear in court and testify under ordinary conditions. The case had once been continued at defendant's instance. A further continuance for the same causes rested largely in the discretion of the trial court, and its action will not be interfered with on appeal unless such discretion was obviously abused. Defendant's attorney was given five days notice of the setting of the case. However, the law does not require trial courts to give any other notice to litigants of the setting of causes for hearing than that afforded by the setting of the docket of the courts. It is not shown that this cause was not regularly docketed for trial under the rules of the court, or that defendant's attorney by diligence could not have learned of the setting at an earlier date, or that by diligence he could not have been prepared for trial. | Where case had been continued once at defendant's instance, a further continuance for same causes rested largely in trial court's discretion, whose action would not be interfered with except for obvious abuse. R.S.1939, S 1087. | Will further continuance for same causes rest largely in trial court's discretion? | 033160.docx | LEGALEASE-00145637-LEGALEASE-00145638 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 13624 | State ex rel. Bush v. Spurlock, 42 Ohio St. 3d 77 | 307A+554 | The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint. Avco Financial Services Loan, Inc. v. Hale (1987), 36 Ohio App.3d 65, 67, 520 N.E.2d 1378, 1380, citing Steffen v. General Tel. Co. (1978), 60 Ohio App.2d 144, 14 O.O.3d 111, 395 N.E.2d 1346. Under Section 3, Article IV of the Ohio Constitution, a court of appeals has original jurisdiction in mandamus. Moreover, "[a]n action in mandamus is maintainable by a reinstated public employee to recover compensation due him for the period of time during which he was wrongfully excluded from his employment, provided the amount is established with certainty." Monaghan v. Richley (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462, syllabus. | Standard of review for dismissal is whether any cause of action cognizable by forum has been raised in complaint. Rules Civ.Proc., Rule 12(B)(1). | "In determining whether a complaint states any cause of action cognizable by forum, must a court be presented with motion to dismiss for lack of subject-matter jurisdiction?" | 033196.docx | LEGALEASE-00145210-LEGALEASE-00145211 | Order, SA | 0.82 | 1 | 0 | 0 | 1 | |
| 13625 | Polin, U.S.A. v. Walsh, 61 Ohio App. 3d 637 | 307A+534 | This court finds no merit in Walsh's argument that Civ.R. 41(B)(1) applies to default judgments. The plain language of the rule precludes this argument. Also, the argument for an opportunity to cure any defect has no merit. Walsh asserts that language out of the proper context. " [U]pon notification of the intended dismissal, appellant could have corrected the defect, proceeded with the action, or dismissed the action voluntarily, this dismissal being without prejudice." Perotti v. Ferguson (1983), 7 Ohio St.3d 1, 3, 7 OBR 256, 257, 454 N.E.2d 951, 952. The Supreme Court also stated in Perotti that under Civ.R. 41(B)(1), a trial court may, sua sponte, dismiss an action for non-appearance at a pretrial conference. 7 Ohio St.3d at 2, 7 OBR at 257, 454 N.E.2d at 952. Properly construed, the notice requirement provides a party an opportunity to avoid dismissal. If the party does not act, a trial court does not abuse its discretion in dismissing the action. | Notice requirement provides party opportunity to avoid dismissal but, if party does not act, trial court does not abuse its discretion in dismissing action. Rules Civ.Proc., Rule 41(B)(1). | "Can a trial court, sua sponte, dismiss an action for nonappearance at a pretrial conference?" | 034035.docx | LEGALEASE-00145099-LEGALEASE-00145100 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13626 | McCormick v. Meyer, 582 N.W.2d 141 | 307A+560 | Although our rules of civil procedure at the time this action was commenced did not specifically address when service of process must be accomplished, the applicable principles are expressed in our opinions. See Mokhtarian v. GTE Midwest Inc., 578 N.W.2d 666, 668-69 (Iowa 1998); Dennis, 482 N.W.2d at 450-51; Bean v. Midwest Battery & Metal, Inc., 449 N.W.2d 353, 355-56 (Iowa 1989). It is clear dismissal is required if there is an unjustified abusive delay in completing service. Mokhtarian, 578 N.W.2d at 668; Henry, 566 N.W.2d at 192; Alvarez v. Meadow Lane Mall, Ltd., 560 N.W.2d 588, 591 (Iowa 1997). If there is a delay in service, the court must first determine if the delay was presumptively abusive. Mokhtarian, 578 N.W.2d at 668. If the court finds the delay is presumptively abusive, the court must then determine if the plaintiff has shown the delay was justified. Id. If the delay was not justified, the case must be dismissed. Once the petition is filed, the plaintiff bears the burden of ensuring that the service of the original notice and petition is both proper and timely. Id | If there is a delay in service, the court must first determine if the delay was presumptively abusive; if the court finds the delay is presumptively abusive, the court must then determine if the plaintiff has shown the delay was justified, and if the delay was not justified, the case must be dismissed. | "If there is a delay in service, should the court first determine if the delay was presumptively abusive?" | 034066.docx | LEGALEASE-00145204-LEGALEASE-00145205 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 13627 | Wake Cares v. Wake Cty. Bd. of Educ., 190 N.C. App. 1 | 307A+552 | "Courts will not entertain such cases because it is not the responsibility of courts to decide abstract propositions of law." Id. (internal quotation marks omitted). "Conversely, when a court's determination can have a practical effect on a controversy, the court may not dismiss the case as moot." Id. | When a court's determination can have a practical effect on a controversy, the court may not dismiss the case as moot. | When a court's determination can have a practical effect on a controversy will the court dismiss the case as moot? | Pretrial Procedure - Memo # 6978 - C - SB.docx | ROSS-003291447-ROSS-003291448 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 13628 | In re Patton, 47 S.W.3d 825 | 307A+746 | A writ of mandamus will lie only if the trial court abuses its discretion and there is no adequate remedy by appeal. A trial court has power, implicit under rule 166 of the Texas Rules of Civil Procedure, to sanction a party for failing to obey the court's pretrial orders. However, a trial court abuses its discretion if the sanctions imposed are not just. In determining whether sanctions, including death penalty sanctions, are just and appropriate, we review the sanctions order under the two-prong test set forth in TransAmerican. First, a direct relationship must exist between the offensive conduct and the sanction imposed. This prong is not met when the party seeking sanctions can show no prejudice due to the offending party's conduct. Second, the sanction imposed must not be excessive. This prong requires trial courts to consider whether the imposition of lesser sanctions would promote compliance. | The requirement that sanctions for violations of pre-trial orders must be related to offensive conduct is not met when the party seeking sanctions can show no prejudice due to the offending party's conduct. Vernon's Ann.Texas Rules Civ.Proc., Rule 166. | "For a court-imposed sanction to have a direct relationship with offensive conduct, should the sanction be directed against the abuse and toward remedying the prejudice caused the innocent party?" | 034818.docx | LEGALEASE-00145934-LEGALEASE-00145935 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 13629 | Warriner v. Ferraro, 177 So. 2d 723 | 307A+563 | There is no questioning the proposition that a plaintiff who invokes a court's jurisdiction and seeks to avail himself of its powers and remedies does so with the understanding that he must abide by its lawful orders. The court has the inherent power to impose the sanction of dismissal for a failure to comply. Rashard v. Cappiali, Fla.App.1965, 171 So.2d 581; Surrency v. Winn & Lovett Grocery Co., 160 Fla. 294, 35 So.2d 564 (1948); Ray v. Williams, 55 Fla. 723, 46 So. 158 (1908); State ex rel. Dillman v. Tedder, 123 Fla. 188, 166 So. 590 (1936); see also Franklin Acceptance Corporation v. Superior Electrical Industries, Inc., Fla.App.1964, 167 So.2d 116. | Court has inherent power to impose sanction of dismissal for a failure to comply with a court order. 30 F.S.A. Rules of Civil Procedure, rule 1.35(b). | Does a court have inherent power to impose sanction of dismissal for a failure to comply with a court order? | Pretrial Procedure - Memo # 7004 - C - SB.docx | ROSS-003289943-ROSS-003289944 | Order, SA, Sub | 0.77 | 1 | 0 | 1 | 1 | 1 |
| 13630 | Pressey v. State, 114 N.W.2d 518 | 307A+563 | Regardless of statutory authority, it has almost universally been held or recognized that courts have the inherent power to dismiss an action for disobedience of a court order. It is obvious that this is one of the more coercive measures to compel obedience of an order. It should be equally evident that it is necessary on occasions for courts to resort to such action in the interest of the orderly administration of justice. | Courts have inherent power to dismiss action for disobedience of authorized court order regardless of statutory authority. | Do courts have inherent power to dismiss action for disobedience of a court order? | 035188.docx | LEGALEASE-00145742-LEGALEASE-00145743 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 13631 | Scarcia v. U.S. Gypsum Co., 164 Misc. 825 | 307A+552 | It has been held that a complaint may be dismissed on motion where the litigation is vexatious and clearly without merit, Stewart v. Butler, 27 Misc. 708, 59 N.Y.S. 573, and that a client acting in good faith, that is, if he is not engaged with his adversary in a scheme to beat his own attorney out of his fee or compensation, may settle or withdraw his action without let or hindrance. | A complaint may be dismissed on motion where litigation is vexatious and clearly without merit. | Will a complaint be dismissed upon motion where the litigation is vexatious and clearly without merit? | Pretrial Procedure - Memo # 7386 - C - BP.docx | ROSS-003290055-ROSS-003290056 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 13632 | Vaughan v. Swift Transp. Co., 14-208 (La. App. 5 Cir. 10/29/14), 164 So. 3d 235 | 13+70 | In the instant case, the record reflects that between June 18, 2010 and August 6, 2013, the only filing in the case was Ms. Vaughan's counsel's motion to withdraw on January 20, 2011. The question, then, is whether a motion to withdraw constitutes a step in the prosecution or defense of an action so as to interrupt the tolling of the three-year abandonment period. The jurisprudence holds that "motions to withdraw, enroll or substitute counsel are not considered formal steps in the prosecution as contemplated by La. C.C.P. art. 561."London Livery, Ltd. v. Brinks, 08"0230 (La.App. 4 Cir. 12/10/08), 3 So.3d 13, 15. This is because "[s]uch motions grant to counsel the right to take steps, or to prepare to take steps, toward the prosecution or defense of a case, but are not considered steps because they do not hasten the matter to judgment." Paternostro v. Falgoust, 03"2214 (La.App. 1 Cir. 9/17/04), 897 So.2d 19, 22, writ denied, 04"2524 (La.12/17/04), 888 So.2d 870. | Motions to withdraw, enroll or substitute counsel are not considered formal "steps" in the prosecution or defense of an action, within the meaning of the abandonment statute, because such motions grant to counsel the right to take steps, or to prepare to take steps, toward the prosecution or defense of a case, but are not considered steps, because they do not hasten the matter to judgment. LSA-C.C.P. art. 561. | Is a motion to enroll as counsel of record not a step in the prosecution of a case? | 035528.docx | LEGALEASE-00146048-LEGALEASE-00146049 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 13633 | State ex rel. Owen v. Donald, 160 Wis. 21 | 371+2100 | The language of the constitution as to state taxation, though, in form, a grant of power, is, in fact, a limitation thereof. It must be read in the light of the rule peculiarly adaptable to the construction of such constitutional provisions, expressio unius exclusio alterius. | The language of the constitution as to state taxation, though, in form, a grant of power, is, in fact, a limitation thereof. It must be read in the light of the rule peculiarly adaptable to the construction of such constitutional provisions, Expressio unius exclusio alterius. | Is the language of the Constitution as to state taxation a limitation of power? | 045875.docx | LEGALEASE-00146295-LEGALEASE-00146296 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13634 | Graf v. Whitaker, 192 Ariz. 403 | 307A+563 | Courts have the power to control the proceedings before them and enter orders of default or dismissal when a party fails to abide by the procedural rules of the court. See, e.g., AG Rancho Equipment Co. v. Massey"Ferguson, Inc., 123 Ariz. 122, 122"23, 598 P.2d 100, 100"01 (1979). Under such circumstances, parties may be deemed to have waived their right to jury trials through their disregard for court procedure. Ariz. Const. art. 6, " 17 (right of jury trial may be waived by the parties in any civil cause); Bloch v. Bentfield, 1 Ariz.App. 412, 418, 403 P.2d 559, 565 (1965) (plaintiff who failed to appear for trial of his civil action had waived his right to jury trial). Just as parties may waive or forfeit their right to jury trial by conduct in superior court proceedings, they may do so by their conduct in adjunct arbitration proceedings. Uniform Rule 7(a) does not unconstitutionally infringe upon Whitaker's right to a jury trial. | Courts have power to control proceedings before them and enter orders of default or dismissal when party fails to abide by procedural rules of court. | Do courts have the power to control proceedings before them? | Pretrial Procedure - Memo # 7061 - C - SU_58315.docx | ROSS-003282965-ROSS-003282966 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13635 | United States v. Reiser, 394 F. Supp. 1060 | 34+20.4(1) | In that connection let it be said that I personally am an admirer of femininity. But the law does not permit us governmentally to seek to protect women paternalistically so as to relieve them from the duties, obligations and privileges of citizenship. Women, just as men, are persons and citizens, and in the scheme of government under the Constitution they must be treated as equals of men both as to their rights and obligations. It does not suffice under the Constitution to treat women kindly because we love them. We must treat them rightly because they are persons and citizens. The burdens of citizenship must be borne by all citizens.Thus legislation limiting the draft to male citizens denies them the equal protection of the law. All citizens, male and female, must be subject to the draft on an equal basis. | All citizens, male or female, must be subject to military draft on an equal basis. Military Selective Service Act, SS 1(c), 3, 4, 12, 50 U.S.C.A. App. SS 451(c), 453, 454, 462; U.S.C.A.Const. Amends. 5, 14. | "Must all citizens, male or female, be subject to military draft on an equal basis?" | Armed Services - Memo 291 - JK_57599.docx | ROSS-003278797-ROSS-003278798 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 13636 | Dodd v. United States, 76 F. Supp. 991 | 34+77(5) | It should be noted that beneficiaries, designated or undesignated, have no vested rights in National Service Life Insurance. An insured may change beneficiaries at any time without the consent or knowledge of previous beneficiaries. The Congress may enlarge the permissible classes as it chooses, and as hereinbefore set out, the Insurance Act of 1946 in amending the classes of beneficiaries, expressly provided that its effect should be retroactive to October 8, 1940. The provisions of the National Service Life Insurance Act of 1940 in effect at the time of the issuance of the policy of insurance to this insured, January 15, 1942, did not fix the rights of the parties to this litigation, and those provisions of the 1940 Act that were removed or amended by the 1942 and 1946 amendments are not applicable here. | Beneficiaries, whether designated or not, have no vested rights in national service life insurance and an insured may change beneficiaries at any time without the consent or knowledge of previous beneficiaries, and Congress may enlarge the permissible classes as it chooses. National Life Insurance Act of 1940, SS 601, 602(g), (h) (3), 38 U.S.C.A. SS 801, 802(g), (h) (3). | "Do beneficiaries, whether designated or not, have vested rights in National Service Life Insurance?" | 008721.docx | LEGALEASE-00148030-LEGALEASE-00148031 | SA, Sub | 0.54 | 0 | 0 | 1 | 1 | |
| 13637 | Madden v. United States, 18 F. Supp. 534 | 34+58(5) | Section 303 is retroactive on its face. Congress had power to make retrospective changes in the insurance contract, altering rights that would ordinarily be deem vested. White v. United States, 270 U.S. 175, 46 S.Ct. 274, 70 L.Ed. 530. The provisions in section 303 govern the disposition of insurance proceeds in cases where the insured had died before enactment of the section. Singleton v. Cheek, 284 U.S. 493, 52 S.Ct. 257, 76 L.Ed. 419, 81 A.L.R. 923; McCullough v. Smith, 293 U.S. 228, 55 S.Ct. 157, 79 L.Ed. 297. In view of these cases, Hatch v. United States (D.C.) 29 F.(2d) 213, decided in the Northern District, cannot be taken as representing the law. | Congress may make retroactive changes in war risk insurance contract and alter rights that would ordinarily be deemed vested. | Does congress have power to make retrospective changes in an insurance contract? | Armed Services - Memo 298 - RK_57606.docx | ROSS-003295282 | Order, SA, Sub | 0.81 | 1 | 0 | 1 | 1 | 1 |
| 13638 | In re Involuntary Dissolution of Battle Creek State Bank, 254 Neb. 120 | 172H+202 | We begin our analysis by noting that the Act does not prohibit the involuntary dissolution of a corporation. However, a banking corporation is unlike a purely private corporation in that a banking corporation is a quasi-public institution subject to the special banking rules and regulations of the State of Nebraska. " 8"102.It is a quasi-public institution in the sense that "[t]he whole stream of commerce, whether interstate or intrastate, largely depends upon [its existence]." United States v. Doherty, 18 F.Supp. 793, 794 (D.Neb.1937), aff'd 94 F.2d 495 (8th Cir.1938). Indeed, "[b]anks are indispensable agencies through which the industry, trade, and commerce of all civilized countries and communities are carried on; the business which they transact, though for private profit, is of a pre-eminently public nature, and is therefore universally recognized as a proper subject of legislative regulation under the police power of the state...."Placek v. Edstrom, 148 Neb. 79, 92, 26 N.W.2d 489, 497 (1947). Thus, due to the stark contrast in nature between banking corporations and strictly private corporations, public policy dictates that banking corporations should be afforded different treatment with respect to the manner in which they may be involuntarily dissolved. However, even though there are sound public policy arguments for not treating banks the same way as other business corporations, our analysis of the banking statutes and the Act is necessary to the resolution of the instant case. | Banking corporations are quasi-public institutions in the sense that whole stream of commerce, whether interstate or intrastate, largely depends upon their existence. | Does a bank possess a quasi-public character? | 07068.docx | LEGALEASE-00089127-LEGALEASE-00089129 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13639 | United States v. Yonan, 623 F. Supp. 881 | 319H+50 | RICO's very sentence structure and normal use of the English language demonstrate that "associated with" is a concept wholly distinct from "conduct [ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." In that respect United States v. Forsythe, 560 F.2d 1127, 1136 (3d Cir.1977), on which the government relies in part, simply misreads the statute. In RICO terms the phrase "associated with," like "employed by," defines a status relationship between the person and the enterprise. Acts of "racketeering" by the "person," though the rest of Section 1962(c) says they must have an effect on the conduct of the enterprise's affairs, do not themselves provide the status nexus between the racketeer and the enterprise. United States v. Bledsoe, 674 F.2d 647, 663 (8th Cir.1982). Were it otherwise, robbing a bank twice would cause the robber to be "associated with" the bank. Just as the enterprise itself must amount to more than a sheer pattern of racketeering activity, United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) ("enterprise" is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit"), one does not "associate with" an enterprise by committing crimes against it. | Just as enterprise itself must amount to more than sheer pattern of racketeering activity, for purposes of Racketeer Influenced and Corrupt Organizations Act (18 U.S.C.A. S 1962(c)), one does not "associate with" enterprise by committing crimes against it. | "For purposes of RICO, can someone ""associate with"" an enterprise by committing crimes against it?" | 09976.docx | LEGALEASE-00095648-LEGALEASE-00095649 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13640 | United States v. Madeoy, 912 F.2d 1486 | 63+1(2) | Finally, the decision that we reach today does not implicate the rule of lenity. The appellants have presented no reason, and we see none, why the statute is any more ambiguous with respect to a VA fee appraiser than with respect to the corporate officers in Dixson, where the Supreme Court expressly found that because Congress's intent was sufficiently clear, there was "no need to resort to the rule of lenity." Id. at 500 n. 19, 104 S.Ct. at 1182 n. 19. Accordingly, we conclude that the statute brings a VA fee appraiser within the definition of "public official" clearly enough that the rule of lenity does not apply. | Rule of lenity did not require interpretation of bribery statute defining public official to mean that VA fee appraiser was not public official in prosecution for bribery; Congress's intent was sufficiently clear and there was no need to resort to rule of lenity where VA fee appraiser clearly within definition of "public official." 18 U.S.C.A. S 201(a)(1). | Is a fee appraiser considered aa a public official within the context of a bribery prosecution? | 012424.docx | LEGALEASE-00148042-LEGALEASE-00148043 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 13641 | Haley v. City of Rapid City, 269 N.W.2d 398 | 200+68 | The rule has long been established in this state that having once been lawfully established a public way can be vacated or abandoned only by some lawful method and that the burden of proof is on one obstructing a lawfully established public way to show vacation or abandonment. Lowe v. East Sioux Falls Quarry Co., 25 S.D. 393, 126 N.W. 609. Respondents have not met this burden.. | A public way, having once been lawfully established, can be vacated or abandoned only by some lawful method, and burden of proof is on one obstructing a lawfully established public way to show vacation or abandonment. | How does vacation or abandonment of a legally established public way occur? | 10803.docx | LEGALEASE-00094195-LEGALEASE-00094196 | SA, Sub | 0.43 | 0 | 0 | 1 | 1 | |
| 13642 | Searcy v. Hemet Unified Sch. Dist., 177 Cal. App. 3d 792 | 302+14 | In the first place, "enactments" are generally a matter of public record, and facts that are ascertainable from public records may not properly be pleaded on information and belief. (Art Metal Const. Co. v. A.F. Anderson Co. (1920) 182 Cal. 29, 33, 186 P. 776; People v. Birch Securities Co. (1948) 86 Cal.App.2d 703, 708, 196 P.2d 143; Brooks v. Nelson (1928) 95 Cal.App. 144, 149"150, 272 P. 610; William Wilson Co. v. Trainor (1915) 27 Cal.App. 43, 45, 148 P. 954.) | Facts ascertainable from public record may not properly be plead on information and belief. | Can facts that are ascertainable from public records properly be pleaded on information and belief? | Pleading - Memo 446 - RMM_57495.docx | ROSS-003293450-ROSS-003293451 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13643 | Orgain v. Butler, 478 S.W.2d 610 | 302+398 | Whatever appellees pleaded as to conversion may be regarded as surplusage, since, taken as a whole, the petition clearly set out all necessary elements to recover their deposits on the theory that they had performed under the lease contracts which had expired; thus they pleaded a cause of action, regardless of the name applied to their theory of recovery. For a variance between pleadings and proof to be fatal, the variance must be substantial, misleading, and a prejudicial departure. Glens Falls Insurance Company v. Vetrano, 347 S.W.2d 769 (Tex.Civ.App. Houston 1961, no writ). Point seven is overruled. | For a variance between pleadings and proof to be fatal, the variance must be substantial, misleading, and a prejudicial departure. | "Must a variance between pleadings and proof be substantial, misleading and prejudicial for it to be fatal?" | 023577.docx | LEGALEASE-00147523-LEGALEASE-00147524 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 13644 | Atkins v. Fischer, 232 F.R.D. 116 | 170A+2757 | "The inherent power encompasses the power to sanction attorney or party misconduct, and includes the power to enter a default judgment." Shepherd, 62 F.3d at 1475 (citations omitted). Pursuant to the Court's inherent power, the Court may also enter a variety of sanctions, including fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence. Id. (citing Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse " 28(A) (2d ed.1994)). | Court's inherent power to sanction litigation misconduct encompasses power to sanction attorney or party misconduct, and includes power to enter default judgment. | "Do courts possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action?" | 10905.docx | LEGALEASE-00094341-LEGALEASE-00094342 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 13645 | Sandholm v. Kuecker, 2012 IL 111443 | 307A+686.1 | A motion to dismiss under section 2"619(a) admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim. Wallace, 203 Ill.2d at 447, 272 Ill.Dec. 146, 786 N.E.2d 980. When ruling on the motion, the court should construe the pleadings and supporting documents in the light most favorable to the nonmoving party. Czarobski v. Lata, 227 Ill.2d 364, 369, 317 Ill.Dec. 656, 882 N.E.2d 536 (2008). | A motion to dismiss based upon certain defects or defenses admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim. S.H.A. 735 ILCS 5/2-619(a). | Can a motion to dismiss allege defects on the face of the complaint? | 10939.docx | LEGALEASE-00094279-LEGALEASE-00094280 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13646 | Williams v. Gaffin Indus. Servs., 88 So. 3d 1027 | 307A+681 | We review de novo a trial court's dismissal of a complaint. Peak v. Outward Bound, Inc., 57 So.3d 997, 998 (Fla. 2d DCA 2011). "Election of remedies is an affirmative defense that is not properly raised by means of a motion to dismiss where the affirmative defense does not appear on the face of the [complaint]." Vause v. Bay Med. Ctr., 687 So.2d 258, 261 (Fla. 1st DCA 1996); see also Fla. R. Civ. P. 1.110(d). "Even a relatively straightforward affirmative defense, such as one based upon the statute of limitations, is not a basis for dismissal unless the complaint affirmatively and clearly shows the conclusive applicability of the defense." Vause, 687 So.2d at 261. "If the court is required to consider matters outside the four corners of the complaint, then the cause is not subject to dismissal on the basis of the affirmative defense."("The plaintiff's complaint does not clearly show the applicability of [election of remedies] defense. Indeed, nowhere in the complaint is it asserted or suggested that the plaintiff pursued a workers' compensation remedy to a determination on the merits or to final settlement so as to give rise to an election of remedies defense."); see also Peak, 57 So.3d at 999 (reversing dismissal based on affirmative defense of sovereign immunity because the complaint did not conclusively establish its applicability). | Trial court erred in dismissing employee's estate's complaint, alleging intentional harm, based on the doctrine of election of remedies, available under workers' compensation law, because court considered disputed matters outside the four corners of the complaint; facts relied upon by employer in support of its election of remedies defense did not appear on the face of the complaint or in any attachments to the complaint, and instead, they were supplied by employer through various documents and an affidavit filed in support of its motion to dismiss. | Could the cause be subject to dismissal if the court is required to consider matters outside the four corners of the complaint? | 11084.docx | LEGALEASE-00094339-LEGALEASE-00094340 | Order, SA, Sub | 0.59 | 1 | 0 | 1 | 1 | 1 |
| 13647 | Czarobski v. Lata, 227 Ill. 2d 364 | 307A+561.1 | A motion for involuntary dismissal under section 2"619 admits the legal sufficiency of the plaintiff's claim but asserts "affirmative matter" outside of the pleading that defeats the claim. Wallace v. Smyth, 203 Ill.2d 441, 447, 272 Ill.Dec. 146, 786 N.E.2d 980 (2002); 735 ILCS 5/2"619(a)(9) (West 2006). The purpose of a section 2"619 motion is to dispose of issues of law and easily proved issues of fact early in the litigation. Van Meter v. Darien Park District, 207 Ill.2d 359, 367, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003). Invocation of the merger doctrine is an affirmative matter properly raised in a section 2"619 motion. See Neppl v. Murphy, 316 Ill.App.3d 581, 585"86, 249 Ill.Dec. 736, 736 N.E.2d 1174 (2000). When ruling on such a motion, the court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party. Van Meter, 207 Ill.2d at 367"68, 278 Ill.Dec. 555, 799 N.E.2d 273. On appeal from a section 2"619 motion, the reviewing court "must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116"17, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). Our review proceeds de novo. Van Meter, 207 Ill.2d at 368, 278 Ill.Dec. 555, 799 N.E.2d 273. | A motion for involuntary dismissal based upon certain defects or defenses admits the legal sufficiency of the plaintiff's claim but asserts affirmative matter outside of the pleading that defeats the claim. S.H.A. 735 ILCS 5/2-619(a)(9). | "Is a dismissal for failure to establish good cause for service of the summons and complaint within six months after filing the complaint, equivalent to a failure to prosecute?" | 11261.docx | LEGALEASE-00094795-LEGALEASE-00094796 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 13648 | Jameson Realty Grp. v. Kostiner, 351 Ill. App. 3d 416 | 307A+562 | The two fundamental elements of laches are (1) a lack of due diligence by the party asserting the claim and (2) prejudice to the opposing party. Gersch v. Department of Professional Regulation, 308 Ill.App.3d 649, 661, 242 Ill.Dec. 51, 720 N.E.2d 672 (1999). [The defense of laches may be considered on a motion to dismiss a complaint if its applicability appears from the face of the complaint or by affidavit submitted with the motion. See Summers v. Village of Durand, 267 Ill.App.3d 767, 770"71, 205 Ill.Dec. 321, 643 N.E.2d 272 (1994); People ex rel. First National Bank of Chicago v. City of North Chicago, 158 Ill.App.3d 85, 97, 109 Ill.Dec. 709, 510 N.E.2d 577 (1987). We review de novo the circuit court's dismissal of Kostiner's chancery complaint based upon the doctrine of laches. See Hadley v. Ryan, 345 Ill.App.3d 297, 301, 280 Ill.Dec. 818, 803 N.E.2d 48 (2003); Summers, 267 Ill.App.3d at 771, 205 Ill.Dec. 321, 643 N.E.2d 272. | The defense of laches may be considered on a motion to dismiss a complaint if its applicability appears from the face of the complaint or by affidavit submitted with the motion. | Can defenses be considered on motion to dismiss a complaint? | Pretrial Procedure - Memo # 7811 - C - NS_57829.docx | ROSS-003280107-ROSS-003280108 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13649 | Indus. Trades Union of Am. v. Dunn Worsted Mills, 131 F. Supp. 945 | 358+80 | The rule is well settled that at common law submission to arbitration cannot be specifically enforced and either of the parties to the submission may revoke it at any time before an award is made. The remedy of the party aggrieved by such revocation is an action for a breach of the agreement to submit to recover damages, if any, caused by the revocation of the other party. And obviously at common law if there is no submission to arbitration there can be no valid award. | At common law, submission to arbitration cannot be specifically enforced and either party to submission may revoke it at any time before award is made. | Can submission to arbitration be specifically enforced? | Alternative Dispute Resolution - Memo 791 - RK_58124.docx | ROSS-003296008-ROSS-003296009 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 13650 | Rutledge v. United States, 72 F. Supp. 352 | 34+63 | It is the duty of the courts to give effect to the wishes and intentions of the men in the service, if it is reasonably possible to ascertain them from the available evidence, which they leave behind when giving their lives in defense of their country. It is not required that the rigid forms of ordinary life insurance be followed but sufficient if the intention is made certain and affirmative action taken to express it. Citron v. United States, D.C. 69 F.Supp. 830; Walker v. United States, D.C., 70 F.Supp. 422; Van Doren v. United States, D.C., 68 F.Supp. 222; Roberts v. United States, 4 Cir., 157 F.2d 906; Peart v. Chaze, D.C., 13 F.2d 908. | As respects National Service Insurance the courts should give effect to the wishes and intentions of the men in service if it is reasonably possible to do so from the available evidence since compliance with the rigid forms of ordinary life insurance is not required if the intention is made certain and affirmative action is taken to express it. | Is it the duty of the courts to give effect to the wishes and intentions of the insured? | 008762.docx | LEGALEASE-00148824-LEGALEASE-00148825 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 13651 | Unlimited Adjusting Grp. v. Wells Fargo Bank, N.A., 174 Cal. App. 4th 883 | 83E+406 | The intended payee may negotiate a check by indorsing it and depositing it in his or her bank account. (Mills v. U.S. Bank (2008) 166 Cal.App.4th 871, 885, 83 Cal.Rptr.3d 146, fn. 16 (Mills).) The bank to which the intended payee negotiates the check"that is, the first bank to take the check"is the "depositary bank." ("" 3103, subd. (c), 4105, subd. (2) [" "Depositary bank" means the first bank to take an item even though it is also the payor bank, unless the item is presented for immediate payment over the counter"]; Hagedorn and Bailey, Brady on Bank Checks: The Law of Bank Checks (2008) " 11.01 (Brady).) Some provisions of the Code use the term "collecting bank." That term includes a depositary bank, if the depositary bank is not also the payor bank. (" 4105, subd. (5) [""Collecting bank" means a bank handling an item for collection except the payor bank"].) | The intended payee of a check may negotiate the check by indorsing it and depositing it in his or her bank account. | Can the intended payee negotiate a check by indorsing it and depositing it in bank account? | 010404.docx | LEGALEASE-00148638-LEGALEASE-00148639 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13652 | Seufert v. Gille, 131 S.W. 102 | 289+973 | And generally one partner cannot execute a note in the name of the firm after its dissolution, even in renewal of a note of the firm, so as to bind any other partner or the firm. Evangelical Synod v. Schoeneich, 143 Mo. 652, 45 S. W. 647; Moore v. Lackman, 52 Mo. 323; Springer v. Cabell, 10 Mo. 640; Friedman v. Punch, 93 Mo. App. 464, 67 S. W. 725; Broughton Bros. v. Summer, 80 Mo. App. 386. In Evangelical Synod v. Schoeneich, 143 Mo., loc. cit. 659, 45 S. W. 648, this court said: "No member of a copartnership after its dissolution can by any act or admission of his bind the firm of which he was a member, except it be otherwise agreed by the articles of association or of dissolution." And a large number of cases are cited in support of that rule. | Where, in an action on a note executed in the name of a firm by a partner V. after dissolution, the issue was whether his copartner G. had by his course of conduct clothed V. with apparent authority to sign the note, and G. admitted that he knew that V. had borrowed money of plaintiff, and that he himself, had agreed with V. that the latter should pay the partnership debts, and V. testified that he had told G. that money had been borrowed from plaintiff, and that G. had said on one occasion that he would like to see plaintiff paid, evidence that G. had borrowed money from plaintiff in the name of the firm after the dissolution of the firm, and that the note sued on was in renewal of notes evidencing such indebtedness, was admissible to establish G.'s implied assent to V.'s attempt to bind the firm on the note sued on. | Can a partner execute a note in the name of the firm after its dissolution by renewal of the note of the firm to bind other partners or the firm? | Bills and Notes- Memo 464-IS_57875.docx | ROSS-003278362-ROSS-003278363 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 13653 | Farrar v. Gilman, 19 Me. 440 | 83E+815 | Negotiable notes of hand and bills of exchange are often negotiated to and from banks, and from one bank to another. Nothing is more common than paper of this kind, bearing the indorsement of the cashier of a bank, in his official capacity. And it may perhaps be assumed as a universal usage, that when instruments of this description are indorsed or transferred by a bank, he becomes their organ for this purpose. It may not be necessary to decide, that he may do this without special authority; and such an assumption might well be questionable. But as he is held out to the public as the confidential officer and actuary of the bank, as he is under bonds for the faithful performance of his duties, and as he acts as their organ in the transfer of negotiable paper, it is not in our opinion too much to hold, that when he indorses such paper, belonging to the bank, in his official capacity, it is prima facie evidence of a legal transfer. | The indorsement of negotiable paper belonging to a bank by a cashier is prima facie evidence of a legal transfer of such paper. | Is an indorsement prima facie evidence of a legal transfer of a negotiable note? | 010418.docx | LEGALEASE-00148444-LEGALEASE-00148445 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 13654 | Brock v. Lueth, 141 Neb. 545 | 8.30E+186 | A memorandum on the back of a note was held to be a part of the note, and where such a memorandum was made by agreement of the parties before signing, it will bind all the parties to it. Polo Mfg. Co. v. Parr, 8 Neb. 379, 1 N.W. 312, 30 Am.Rep. 830. See, also, Specht v. Beindorf, 56 Neb. 553, 76 N.W. 1059, 42 L.R.A. 429; note, 13 A.L.R. 251. | Where memorandum on back of note is made by agreement of parties before signing, the memorandum is a part of the note and is binding on all of the parties to the note. | Is memorandum at back of note made by agreement of parties before signing is binding on all the parties? | 010514.docx | LEGALEASE-00148067-LEGALEASE-00148068 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 13655 | First Nat. Bank v. Lock-Stitch Fence Co., 24 F. 221 | 83E+456 | In that case Good indorsed a note in blank after it was signed by the makers and before its delivery to the payee, and it was sought to hold him as a joint maker. In the opinion of the court, the authorities are reviewed, and it is distinctly held (1) that if a third person put his name in blank on the back of a note at the time it was made, and before it was indorsed by the payee, to give the maker credit with the payee, or if he participated in the consideration of the note, he must be considered as a joint maker; (2) but if his indorsement was subsequent to the making of the note, and to the delivery of the same to take effect, and he put his name there at the request of the maker pursuant to a contract of the maker with the payee for further indulgence or forbearance, he can only be held as guarantor; (3) if the note was intended for discount, and he put his name on the back of it with the understanding of all the parties that his indorsement would be inoperative until the instrument was indorsed by the payee, he would then be liable only as a second indorser, in the commercial sense. | A third party who places his name upon the back of a negotiable promissory note at the time of its execution by the maker, and before its delivery to the payee, will be liable as a joint maker; and the note itself, with the indorsement thereon, is prima facie evidence of such liability. | Can third person indorsing be liable as a joint maker? | 010581.docx | LEGALEASE-00148580-LEGALEASE-00148581 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 13656 | In re Mayfield, 39 B.R. 900 | 83E+406 | The early Tennessee cases are confusing on the question of how the lack of an endorsement affects the transferee's title to an instrument payable to the order of a specific person. The later cases make it clear that when the transfer is for value the transferee acquires all the transferor's rights. The transferee becomes the owner if the transferor was the owner but holds the instrument subject to all defenses and equities enforceable against the transferor. Spriggins v. Spriggins, 15 Tenn.App. 107 (1931); Jackson Bros. v. Harpeth National Bank, 12 Tenn.App. 464 (1930); Furst v. Freels, 9 Tenn.App. 423 (1928). Adoption of the Uniform Commercial Code did not change this rule. 11 Am.Jur.2d, Bills and Notes " 373 at 397"98 (1963). | When transfer of promissory note is for value, transferee acquires transferor's rights; transferee becomes owner if transferor was owner, but holds instruments subject to all defenses and equities enforceable against transferor. | Does the transferee become the owner subject to all defenses enforceable against the transferor? | Bills and Notes- Memo 674-PR_57904.docx | ROSS-003308823-ROSS-003308824 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 13657 | State v. Schenkolewski, 301 N.J. Super. 115 | 63+1(1) | Under N.J.S.A. 2C:27"2, neither the offeror nor the recipient of the bribe need be a public official to prove bribery. Rather, it is sufficient if the recipient created the understanding with the briber that he could influence matters in connection with an official duty, whether or not he was capable of actually effecting such an act. See State v. Ferro, 128 N.J.Super. 353, 358, 320 A.2d 177 (App.Div.), certif. denied, 65 N.J. 566, 325 A.2d 700 (1974); State v. Sherwin, 127 N.J.Super. 370, 385, 317 A.2d 414 (App.Div.), certif. denied, 65 N.J. 569, 325 A.2d 703, cert. dismissed, 419 U.S. 801, 95 S.Ct. 9, 42 L.Ed.2d 32 (1974) (statute does not require that "the person receiving the bribe do so "under color of his office" "). Both Ferro and Sherwin involved the former bribery statute N.J.S.A. 2A:93"6 which prohibited any person from directly or indirectly from giving or receiving any thing of value as a bribe, present or reward to obtain, secure approval or disapproval or any other act or thing connected with the government. This is very similar to our current bribery statute. N.J.S.A. 2C:27"2. | Neither offeror nor the recipient of bribe need be public official to prove bribery, and it is sufficient if recipient created understanding with offeror that he could influence matters in connection with official duty, whether or not he was capable of actually effecting such an act. N.J.S.A. 2C:27-2. | "In a bribery case, is it possible that neither the offeror nor the recipient of the bribe is a public official?" | Bribery - Memo #980 - C-JL_57946.docx | ROSS-003294420-ROSS-003294421 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 13658 | Pariani v. State of California, 105 Cal. App. 3d 923 | 260+4 | Further, any doubt concerning the scope of the State's reservation must be resolved in favor of the State. Civil Code section 1069 provides: "A grant is to be interpreted in favor of the grantee, except that a reservation in any grant, and every grant by a public officer or body, as such, to a private party, is to be interpreted in favor of the grantor " (emphasis added). | Any doubt concerning scope of State's mineral reservation in a grant must be resolved in favor of State. West's Ann.Civ.Code, S 1069. | "If there is any doubt concerning the scope of the State's reservation of mineral rights, must it be resolved in favor of the state?" | 021195.docx | LEGALEASE-00148296-LEGALEASE-00148297 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13659 | Benge v. Scharbauer, 152 Tex. 447 | 260+55(4) | An instrument may convey two separate estates in the minerals, one of which may be a full mineral interest and the other a royalty, or other interest in the minerals. Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563, 565; Countiss v. Baldwin, Tex.Civ.App., 151 S.W.2d 235, writ dismissed, correct judgment; MacDonald v. Sanders, Tex.Civ.App., 207 S.W.2d 155, refused, N. R. E.; Acklin v. Fuqua, Tex.Civ.App., 193 S.W.2d 297, N. R. E. | An instrument may convey two separate estates in minerals, one of which may be a full mineral interest and the other a royalty or other interest in minerals. | Could an instrument convey two separate estates in the minerals? | 021511.docx | LEGALEASE-00148556-LEGALEASE-00148557 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 13660 | The L'Invincible, 14 U.S. 238 | 221+213 | It would be difficult to distinguish this case, in principle, from those of the Cassius and the Exchange,g decided in this court. The only circumstance, in fact, in which they differ, is, that in those cases, the vessels were the property of the nation; in this it belongs to private adventurers. But the commission under which they acted was the same; the same sovereign power which could claim immunities in those cases equally demands them in this; and although the privateer may be considered a volunteer in the war, it is not less a part of the efficient national force, set in action for the purpose of subduing an enemy. There may be, indeed, one shade of difference between them, and it is that which is suggested by Rutherforth in the passage quoted in the argument. The hull, or the owners of the privateer, may, perhaps, under some circumstances, be subject to damages in a neutral court after the courts of the captor have decided that the capture was not sanctioned by his sovereign. But, until such a decision, the seizure by a private armed vessel is as much the act of the sovereign, and entitled to the same exemption from scrutiny, as the seizure by a national vessel. | Although the hull or the owners of a privateer may under some circumstances be subject to damages in a neutral court after the courts of the captor have decided that the capture was not sanctioned by his sovereign, the seizure by private armed vessel, until such decision, is as much the act of the sovereign and entitled to same exemption from scrutiny as the seizure by a national vessel. | Is there any distinction in the scrutiny of a public or national vessel and a private armed vessel? | 021745.docx | LEGALEASE-00148490-LEGALEASE-00148491 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 13661 | Bank & Tr. Co. of Arlington Heights v. Arnold N. May Builders, 90 Ill. App. 3d 454 | 302+350(4) | It is well established that where the court can determine the relative rights of the parties in the subject matter solely from the pleadings, a motion for judgment on the pleadings is a proper procedure. (Johnson v. City of Evanston (1976), 39 Ill.App.3d 419, 423, 350 N.E.2d 70). However, if the pleadings put in issue one or more material facts, evidence must be taken to resolve such issues, and a judgment may not be entered on the pleadings. (Zipf v. Allstate Insurance Co. (1977), 54 Ill.App.3d 103, 108, 11 Ill.Dec. 798, 369 N.E.2d 252). A motion for judgment on the pleadings tests the sufficiency of the pleadings as a matter of law and admits the truth of all facts well pleaded by the opposite party. (Walker v. State Board of Elections (1976), 65 Ill.2d 543, 553, 3 Ill.Dec. 703, 359 N.E.2d 113; Cunningham v. MacNeal Memorial Hospital (1970), 47 Ill.2d 443, 448, 266 N.E.2d 897; Carr v. Shirland Township (1978), 66 Ill.App.3d 1033, 1038, 23 Ill.Dec. 655, 384 N.E.2d 449.) In deciding the motion a court must disregard all surplusage and conclusory allegations. Johnson v. City of Evanston; Department of Mental Health v. Kendall (1973), 15 Ill.App.3d 881, 887, 305 N.E.2d 389; see Carr v. Shirland Township. | Motion for judgment on the pleadings tests sufficiency of pleadings as a matter of law and admits truth of all facts pleaded by opposite party. | Does a motion for judgment on the pleadings test the sufficiency of the pleadings? | 023614.docx | LEGALEASE-00148727-LEGALEASE-00148728 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 13662 | Am. Int'l Grp. v. ACE INA Holdings, 722 F. Supp. 2d 948 | 308+183(3) | Pivotal to resolving this issue is the undisputed allegation that NCCI was the designated agent for the Participating Companies. Under New York law a principal can assert a claim for fraud based on misrepresentations made to its agent. Young v. Robertshaw Controls Co., Uni"Line Div., 123 Misc.2d 580, 474 N.Y.S.2d 886, 890 (N.Y.Sup.Ct.1983). Because the complaint includes allegations that Class Plaintiffs relied on the false data Class Defendants reported to NCCI, their agent and attorney-in-fact, the motion to dismiss Count Three for failure to allege direct reliance is denied. | Under New York law, principal can assert claim for fraud based on misrepresentations made to its agent. | Can a principal assert claim for misrepresentations made to its agent? | Principal and Agent - Memo 135 - KC_58049.docx | ROSS-003284478 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13663 | Eisler v. United States, 170 F.2d 273 | 34+20.4(2) | Although he is an alien, appellant stood before the Committee in much the same position as does any citizen of the United States. Once an alien lawfully enters and resides in this country he becomes invested with the rights, except those incidental to citizenship, guaranteed by the Constitution to all people within our borders. See Mr. Justice Murphy, concurring, Bridges v. Wixon, 1945, 326 U.S. 135, 161, 65 S.Ct. 1443, 89 L.Ed. 2103. Correlatively, an alien resident owes a temporary allegiance to the Government of the United States, and he assumes duties and obligations which do not differ materially from those of native-born or naturalized citizens; he is bound to obey all the laws of the country, not immediately relating to citizenship, and is equally amenable with citizens for any infraction of those laws. Carlisle v. United States, 1872, 16 Wall. 147, 21 L.Ed. 426; Leonhard v. Eley, 10 Cir., 1945, 151 F.2d 409, and cases cited therein. The alien resident may be required to make contribution to the support of our Government; in Leonhard v. Eley, supra, and in United States v. Lamothe, 2 Cir., 1945, 152 F.2d 340, it was held that an alien may lawfully be inducted for national defense service in time of war. To continue exemplification of the general lack of discrimination against aliens, it has been held that an alien enemy under criminal prosecution in a United States civil court must be afforded the usual constitutional safeguards. Shinyu Noro v. United States, 5 Cir., 1945, 148 F.2d 696. | Alien resident may be required to contribute to support of United States, and may lawfully be inducted for national defense service in time of war. | Can an alien be called to serve in the defense of the country? | Aliens_Immigration and_1iM0m1YPlwjacyg QtkYx8t6iWccFzxu_e.docx | ROSS-000000294-ROSS-000000295 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 13664 | Wilmington Tr. Co. v. Delaware Auto Sales, 271 A.2d 41 | 172H+786 | We find that there was a failure of consideration here. Since the bank received the stop-payment order before it issued the treasurer's check, it had no right to charge the account of Hoopes, its depositor. A complete failure of consideration for the treasurer's check resulted and the bank had the right to refuse to honor it when presented by the payee.Tropicana Pools, Inc. v. First National Bank of Titusville, Fla.App., 206 So.2d 48 (1968); Wright v. Trust Company of Grorgia, 108 Ga.App. 783, 134 S.E.2d 457 (1963) and Pyle v. Gallaher, Del.Super., 6 Pennewill 407, 75 A. 373 (1908). | Where defendant bank received stop payment order from its depositor before it issued treasurer's check to plaintiff automobile dealer in exchange for depositor's check, bank had no right to charge depositor's account, complete failure of consideration for treasurer's check resulted, and bank had right to refuse to honor it when presented by the dealer. 5A Del.C. SS 3-305, 3-306(c). | Does the bank have the right to refuse to honor a check presented by the payee? | 010530.docx | LEGALEASE-00149515-LEGALEASE-00149516 | SA, Sub | 0.35 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13665 | Kain v. Walke, 12 Ala. 184 | 83E+496 | The case of Bates v. Ryland, 6 Ala. 675, is a conclusive authority, that the death and insolvency of the maker of a note, is a sufficient excuse for the failure to prosecute a suit against him, to a return of "no property found" by the sheriff. This is the excuse offered, for the omission in those counts of the declaration to which the demurrer was sustained, for the failure to alledge, that the statute condition had been performed. The court should not therefore have sustained the demurrer for this cause, and no other has been brought to our notice, or been observed by us, which would justify it. | The death and insolvency of the maker of a note is a sufficient excuse for the failure of the assignee to prosecute a suit against him to judgment, execution, and a return of "No property found." | Can insolvency of the maker of a note a sufficient excuse? | Bills and Notes- Memo 723-ANM_58227.docx | ROSS-003292838 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 13666 | Dillard v. Thomasville Auto Sales, 221 F. Supp. 3d 677 | 172H+1344 | The relevant portion of TILA and its implementing "Regulation Z" require a lender to disclose "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. " 1638(a)(6); see 12 C.F.R. 226.18(g). The adequacy of a lender's disclosure is determined on an objective standard, regardless of what the consumer actually believes the form means. See Larrabee, 714 F.Supp.2d at 567"68 (collecting cases and applying a "reasonable-consumer" standard). If a reasonable consumer could plausibly interpret a TILA disclosure in more than one way, the lender has not complied with TILA. See id. at 568 (citing Handy v. Anchor Mortg. Corp., 464 F.3d 760, 764 (7th Cir. 2006)). | Car dealership's used car loan disclosure form, on which payment amount and dates were slightly misaligned, such that number of payments, amount of payments, and dates of first and last payments were printed on line separating rows, was sufficiently clear to satisfy dealership's obligation under Truth-in-Lending Act (TILA) to disclose the number, amount, and due dates or period of payments scheduled to repay the total of payments; no reasonable consumer could have construed form as requiring first 19 payments to be made weekly, with the final monthly payment to be made 15 months later, and only plausible interpretation was that two lines in question belonged in rows in which characters' lower halves sat, such that first 19 payments were to be made monthly beginning one month after closing. Truth in Lending Act S 128, 15 U.S.C.A. S 1638(a)(6); 12 C.F.R. S 226.18(g). | Is a creditor required to disclose the number and amount of payments under the federal law? | 013931.docx | LEGALEASE-00149533-LEGALEASE-00149534 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 13667 | Succession of Valdez, 44 So. 2d 151 | 156+55 | Nor can a person be estopped by his declarations, even if of a judicial character, which have neither deceived nor damaged anyone. Tyler v. Walt, 184 La. 659, 167 So. 182; Farley v. Frost-Johnson Lumber Co., 133 La. 498, 63 So. 122, L.R.A.1915A, 200, Ann.Cas.1915C, 717. | A person cannot be estopped by his declarations even if of a judicial character if they have neither deceived nor damaged any one. | "Is a person estopped by his judicial declarations, which have neither deceived nor damaged any one?" | 017728.docx | LEGALEASE-00149068-LEGALEASE-00149069 | SA, Sub | 0.52 | 0 | 0 | 1 | 1 | |
| 13668 | Hatch's Estate v. C.I.R., 198 F.2d 26 | 220+3933.1 | However, in 1950, the Commissioner of Internal Revenue acquiesced to the overwhelming case authority to the effect that for income tax purposes the sale of a partnership interest in a going concern should be treated as the sale of a capital asset.Such has been the rule in this circuit since the decision of Stilgenbaur v. United States, Cir., 1940, 115 F.2d 283, 286, 287. For despite the fact that a partner is said to be a co-owner of "specific partnership property", his right to possess such property is limited to partnership purposes,9 and his right to the specific property is non-assignable. Thus, the nature of the interest which a partner actually has in the partnership itself is the right to share in profits and surplus and the right to share in the net value of the partnership after settlement of its affairs. Clarke v. Fiedler, 1941, 44 Cal.App.2d 838, 113 P.2d 275. And this partnership interest is personal property which is separate and distinct from his co-ownership of the specific partnership property. Dudley T. Humphrey v. C.I.R., 1935, 32 B.T.A. 280. | For income tax purposes, sale of partnership interest in going concern should be treated as sale of capital asset, if the transaction in substance and effect, as distinguished from form and appearance, is essentially the sale of a partnership interest. 26 U.S.C.A. (I.R.C.1954) S 1202. | Is the sale of a partnership asset to be treated as a sale of capital asset? | 022554.docx | LEGALEASE-00149893-LEGALEASE-00149894 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 13669 | Cole v. O'Tooles of Utica, 222 A.D.2d 88 | 302+4 | On a motion to dismiss a complaint for failure to state a cause of action, a court must look to the four corners of the complaint to ascertain whether a cognizable cause of action is stated (see, Foley v. D'Agostino, 21 A.D.2d 60, 64"65, 248 N.Y.S.2d 121). "The pleading can be pathetically drawn; it can reek of miserable draftsmanship" (Siegel, Practice Commentaries, McKinney's Cons.Laws of NY, Book 7B, CPLR C3013:6, at 724). Plaintiffs need not label the cause of action; in fact, even if the cause of action is labeled incorrectly, it will not be dismissed if the facts alleged constitute a cognizable cause of action (see, Guidetti v. Pratt Plumbing & Heating, 55 A.D.2d 720, 721, 389 N.Y.S.2d 170). Finally, a plaintiff is permitted to prove at trial a theory of liability not specifically pleaded if the pleadings give notice of the transactions or occurrences intended to be proved and defendant does not demonstrate any prejudice therefrom (see, Fried v. Seippel, 80 N.Y.2d 32, 42, 587 N.Y.S.2d 247, 599 N.E.2d 651. | Plaintiffs need not label cause of action in pleading, and in fact, even if cause of action is labeled incorrectly, it will not be dismissed if acts alleged constitute cognizable cause of action. | Do plaintiffs need to label a cause of action? | 036358.docx | LEGALEASE-00149233-LEGALEASE-00149234 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13670 | Bergeron v. Roszkowski, 866 A.2d 1230 | 307A+683 | "The primary responsibility for moving a case on for trial rests with the plaintiff and his or her attorneys, not the defendant or the trial court." Hyszko, 448 A.2d at 726 (citing Ely Valley Mines, Inc. v. Hartford Accident and Indemnity Co., 644 F.2d 1310, 1317 (9th Cir.1981)). "Meredelay[, however,] is not enough to warrantdismissalfor lack of prosecution." Harvey, 764 A.2d at 143 (citing Scittarelli v. Providence Gas Co., 415 A.2d 1040, 1042 n. 1 (R.I.1980)). "Although the trial court must weigh the equities between the parties, it need not view the evidence in a light most favorable to the plaintiffs." Id. (citing J.K. Social Club v. J.K. Realty Corp., 448 A.2d 130, 133 (R.I.1982)). "In considering a motion to dismiss for failure to prosecute, the court is "required to weigh conflicting interests. On the one hand is the court's need to manage its docket, the public interest in the expeditious resolution of litigation, and the risk of prejudice to the defendants from delay. On the other hand, there is the desire to dispose of cases on their merits." " Id. (quoting Hyszko, 448 A.2d at 726). | On a motion to dismiss based on failure to prosecute, although the trial court must weigh the equities between the parties, it need not view the evidence in a light most favorable to the plaintiffs. | Is mere delay enough to warrant dismissal for lack of prosecution? | 036476.docx | LEGALEASE-00149185-LEGALEASE-00149186 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13671 | Minnesota Humane Soc. v. Minnesota Federated Humane Societies, 611 N.W.2d 587 | 307A+581 | Finally, although a court may strongly encourage and facilitate a settlement, it may not order litigants to settle a case. Cf. Olson v. Lovett, 457 N.W.2d 224, 225 (Minn.App.1990) (acknowledging that, while courts may order parties to participate in nonbinding alternative dispute resolution proceedings, such proceedings are not intended to preclude either parties' access to trial). Because parties to civil litigation have no legal duty to settle, a refusal to do so is not tantamount to a refusal to prosecute. Although a court might sanction a party for conduct in settlement negotiations, the court cannot dismiss a case for refusal to settle. | Although a court might sanction a party for conduct in settlement negotiations, the court cannot dismiss a case for refusal to settle. | Can the court dismiss a case for refusal to settle? | Pretrial Procedure - Memo # 8199 - C - RY_58774.docx | ROSS-003280925-ROSS-003280926 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13672 | A. Gay Jenson Farms Co. v. Cargill, 309 N.W.2d 285 | 308+1 | Agency is the fiduciary relationship that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Jurek v. Thompson, 308 Minn. 191, 241 N.W.2d 788 (1976); Lee v. Peoples Cooperative Sales Agency, 201 Minn. 266, 276 N.W. 214 (1937); Restatement (Second) of Agency s 1 (1958). In order to create an agency there must be an agreement, but not necessarily a contract between the parties. Restatement (Second) of Agency s 1, comment b (1958). An agreement may result in the creation of an agency relationship although the parties did not call it an agency and did not intend the legal consequences of the relation to follow. Id. | "Agency" is the fiduciary relationship that results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. | Is consent important to form agency relationship? | Principal and Agent - Memo 146 - KC_58560.docx | ROSS-003282580-ROSS-003282581 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 13673 | Towell v. Steger, 154 S.W.3d 471 | 3.77E+05 | Thus, trial courts must balance the dire, quasi-criminal consequences to the accused with the laudatory purpose of preventing potential violence and unnecessary and unjustified infliction of emotional distress. See Wallace, 969 S.W.2d at 387. Stalking statutes should be construed narrowly enough to prevent serious abuse, but broadly enough to maximize victim protection. Id. | Stalking statutes should be construed narrowly enough to prevent serious abuse, but broadly enough to maximize victim protection. V.A.M.S. S 455.010. | Should stalking statutes be construed narrowly or broadly? | "Threats, Stalking, and Harassment - Memo #3 - C - LB_58576.docx" | ROSS-003282953-ROSS-003282955 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 13674 | Campion v. Bd. of Aldermen of City of New Haven, 278 Conn. 500 | 414+1202 | Additionally, "zoning regulations are local legislative enactments and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes.... Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended ...." (Citations omitted.) Wood v. Zoning Board of Appeals, supra, 258 Conn. at 699, 784 A.2d 354. "The process of statutory interpretation involves the determination of the meaning of the statutory language [or in this case, the enabling legislation for the city's zoning authority and " 65 of the New Haven zoning ordinance] as applied to the facts of the case, including the question of whether the language does so apply." School Administrators of Waterbury v. Waterbury Financial Planning & Assistance Board, 276 Conn. 355, 364, 885 A.2d 1219 (2005). In the present case, that process requires us to examine the language of the city's enabling zoning legislation and " 65 of the New Haven zoning ordinance, as well as extratextual sources that provide guidance as to the scope of that zoning authority. | Zoning regulations are local legislative enactments and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. | Can the enactment of local zoning regulations be considered a legislative function? | Zoning and Planning - Memo 6 - RM_62208.docx | ROSS-003294609-ROSS-003294610 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13675 | Don Shevey & Spires v. Am. Motors Realty Corp., 279 S.C. 58 | 307A+581 | The plaintiff has the burden of prosecuting his action, and the trial court may properly dismiss an action for plaintiff's unreasonable neglect in proceeding with his cause. Thomas & Howard Company v. Fowler, et al., 238 S.C. 46, 119 S.E.2d 97 (1961); Small v. Mungo, 254 S.C. 438, 175 S.E.2d 802 (1970). This authority is necessary if the courts are to control and efficiently manage an ever-expanding docket. Additionally, we disfavor the use of the Summons (Complaint Not Served), and have held those who use the device to high standards of compliance with procedural requirements. Richardson Construction Company, Inc. v. Meek Engineering & Construction, Inc., et al., 274 S.C. 307, 262 S.E.2d 913 (1980); Williams v. Carpenter, 273 S.C. 339, 256 S.E.2d 316 (1979). | Plaintiff has burden of prosecuting his action, and the trial court may properly dismiss action for plaintiff's unreasonable neglect in proceeding with his cause. | Does a plaintiff have the burden of prosecuting their action? | 037007.docx | LEGALEASE-00150369-LEGALEASE-00150370 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 13676 | Hoover v. Mercy Health, 2012 WL 2549485 | 302+8(1) | Rule 55.05 requires that a petition must contain "a short and plain statement of the facts showing that the pleader is entitled to relief." Missouri is a "fact pleading" state, and it requires a party to plead "ultimate facts" as opposed to factual or legal conclusions. ITT Commercial Finance, 854 S.W.2d at 379. In the context of a pleading, "ultimate facts" are "issuable, constitutive, or traversable facts essential to the statement of the cause of action." Musser v. Musser, 281 Mo. 649, 221 S.W. 46, 50 (1920). "[L]egal conclusions cannot be pleaded as ultimate facts." Id. "Missouri rules of civil procedure demand more than mere conclusions that the pleader alleges without supporting facts." Pulitzer Pub. v. Transit Cas. Co., 43 S.W.3d 293, 302 (Mo. banc 2001). "Some explanation in one's pleading beyond vague assertion of harm is required." Id.A petition must contain allegations of fact in support of each essential element of the cause sought to be pleaded. Cady v. Hartford Accident and Indemnity Co., 439 S.W.2d 483, 485 (Mo.1969). In ruling on the sufficiency of the facts pleaded to state a claim, courts consider whether material and essential allegations have not been made. Langenberg v. City of St. Louis, 355 Mo. 634, 197 S.W.2d 621, 625 (1946). Where a petition contains only conclusions and does not contain the ultimate facts or any allegations from which to infer those facts a motion to dismiss is properly granted. Sofka v. Thal, 662 S.W.2d 502, 509 (Mo. banc 1983).Berkowski v. St. Louis County, 854 S.W.2d 819, 823 (Mo.App.1993). See also Charron v. Holden, 111 S.W.3d 553, 555 (Mo.App.2003); Westphal v. Lake Lotawana Ass'n, Inc., 95 S.W.3d 144, 152 (Mo.App.2003). A conclusion must be supported by factual allegations that provide the basis for that conclusion, that is, facts "that demonstrate how or why" the conclusion is reached. Westphal, 95 S.W.3d at 152. If a petition fails to state a claim upon which relief can be granted, | A conclusion in a petition must be supported by factual allegations that provide the basis for that conclusion, that is, facts that demonstrate how or why the conclusion is reached; if a petition fails to state a claim upon which relief can be granted, the trial court may properly order it to be dismissed, regardless of whether the order is treated as a summary judgment or as an order pursuant to a motion to dismiss. (Per Kathianne Knaup Crane, P.J., with one judge concurring and one judge dissenting.) | Should a conclusion in a petition be supported by factual allegations that provide the basis for that conclusion? | 037424.docx | LEGALEASE-00150661-LEGALEASE-00150663 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 13677 | People ex rel. Griffin v. City of Brooklyn, 4 N.Y. 419 | 371+2415 | The power to tax, implies a power to apportion the tax as the legislature shall see fit; and the power of apportionment has no limit where there is no constitutional restraint. | The power to tax implies a power to apportion the tax as the legislature shall see fit, and the power of apportionment has no limit where there is no constitutional restraint. | Is the power to tax limited by constitutional restraint? | 045960.docx | LEGALEASE-00150554-LEGALEASE-00150555 | Condensed, SA | 0.01 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13678 | Ryan's Family Steakhouse v. Kilpatric, 966 So. 2d 273 | 25T+182(2) | " "Prejudice to the party opposing arbitration, not prejudice to the party seeking arbitration, is determinative of whether a court should deny arbitration on the basis of waiver." Price [v. Drexel Burnham Lambert, Inc.], 791 F.2d [1156,] 1162 [(5th Cir.1986)] (footnote omitted). "Both delay and the extent of the moving party's participation in judicial proceedings are material factors in assessing a plea of prejudice." Frye [v. Paine, Webber, Jackson & Curtis, Inc.], 877 F.2d [396,] 399 [(5th Cir.1989)]. " "Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir.1995). "Sufficient prejudice to infer waiver might be found, for example, if the party seeking the stay [for arbitration] took advantage of judicial discovery procedures not available in arbitration." Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 n. 7 (2d Cir.1968)." | Both delay and the extent of the moving party's participation in judicial proceedings are material factors in assessing a plea of prejudice resulting in a waiver of a right to arbitration. | What are the material factors involved in assessing a plea of prejudice? | Alternative Dispute Resolution - Memo 793 - RK_59478.docx | ROSS-003292376-ROSS-003292378 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13679 | Sweater Bee by Banff, Ltd. v. Manhattan Indus., 754 F.2d 457 | 25T+182(2) | The rule of this circuit, like that in Jones, is that the litigation of substantial issues going to the merits may constitute a waiver of arbitration. See Demsey & Associates, Inc. v. S.S. Sea Star, 461 F.2d 1009, 1017"18 (2d Cir.1972) (failure to seek stay pending arbitration until after judicial trial on the merits amounts to waiver); see also Weight Watchers, Ltd. v. Weight Watchers International, Inc., 398 F.Supp. 1057, 1058"62 (E.D.N.Y.1975) (defendant's motion for summary judgment and failure to mention or request arbitration for two years is waiver of arbitration). | Litigation of substantial issues going to merits may constitute waiver of arbitration. | Does litigation of substantial issues going to the merits constitute a waiver of arbitration? | 007925.docx | LEGALEASE-00151388-LEGALEASE-00151389 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 13680 | The Belize, 25 F. Supp. 663 | 25T+182(2) | This conclusion is unavoidable on the law of contracts. It is also supported by practical consideration. When a party who has agreed to arbitrate any controversy that may arise prefers to take a controversy to court in the ordinary way, there comes a time in the course of the litigation when it would be unfair to permit one side to resort to arbitration over the protest of the other. That time is reached when the defendant files an answer on the merits, joining with the plaintiff in rejecting arbitration and tendering the controversy to the court for trial. | Where party who has agreed to arbitrate a controversy that may arise takes controversy to court in ordinary way, and other party files an answer on the merits, thereby joining with first party in rejecting arbitration and tendering controversy to court, one party is not thereafter entitled to resort to arbitration over protest of other. | Does there come a time in litigation where it is unfair to permit one side to resort to arbitration over the protest of the other? | Alternative Dispute Resolution - Memo 798 - RK_59483.docx | ROSS-003279938-ROSS-003279939 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 13681 | Hibernia Bank & Tr. Co. v. Dresser, 132 La. 532 | 83E+334 | A negotiable promissory note within the meaning of the negotiable instrument law is an unconditional promise in writing made by one person to another, signed by the maker engaged to pay on demand, or at a fixed or determinable future time, a sum certain in money to order or to bearer. Where a note is drawn to the maker's own order, it is not complete until indorsed by him. Section 184, Act No. 64 of 1904, p. 147. An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. Section 5, Act No. 64 of 1904, p. 147. | Under Negotiable Instrument Law, S 5, an instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. | Is an instrument which contains an order to do any act in addition to the payment of money negotiable? | 010778.docx | LEGALEASE-00151226-LEGALEASE-00151227 | Order, SA, Sub | 0.73 | 1 | 0 | 1 | 1 | 1 |
| 13682 | Hibernia Bank & Tr. Co. v. Dresser, 132 La. 532 | 83E+334 | A negotiable promissory note within the meaning of the negotiable instrument law is an unconditional promise in writing made by one person to another, signed by the maker engaged to pay on demand, or at a fixed or determinable future time, a sum certain in money to order or to bearer. Where a note is drawn to the maker's own order, it is not complete until indorsed by him. Section 184, Act No. 64 of 1904, p. 147. An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. Section 5, Act No. 64 of 1904, p. 147. | Under Negotiable Instrument Law, S 5, an instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. | Is an instrument which contains promise to do any act in addition to the payment of money is negotiable? | Bills and Notes-Memo 1117-IS_59399.docx | ROSS-003280716-ROSS-003280717 | Order, SA, Sub | 0.73 | 1 | 0 | 1 | 1 | 1 |
| 13683 | Sterling & Snapp v. Bender, 7 Ark. 201 | 83E+426 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. Chit. on bills 253. By the indorsement the payee divests himself of the legal interest in the bill or note, and it is vested by the delivery in the holder. Wilkinson v. Nicklin, 2 Dall. Rep. 296. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | Can a bill indorsed or endorsed in blank be transferred by delivery? | Bills and Notes-Memo 1153-PR_59418.docx | ROSS-003299109 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 13684 | Derico v. Duncan, 410 So. 2d 27 | 172H+114 | In this context, then, we have examined the Mini-Code in the light of applicable Alabama law and we hold that contracts made in violation of the requirements of the Mini-Code are null, void, and unenforceable as a matter of public policy. Further, we hold that, notwithstanding Defendant's non-willfulness in failing to obtain a license to engage in the business of making consumer loans, that failure was in direct violation of s 5-19-22(a). | Contracts made in violation of requirements of Mini-Code regarding consumer finance are null, void and unenforceable as matter of public policy. Code 1975, S 5-19-1 et seq. | Are contracts made in violation of mini-code requirements unenforceable? | 013670.docx | LEGALEASE-00150856-LEGALEASE-00150857 | Order, SA, Sub | 0.61 | 1 | 0 | 1 | 1 | 1 |
| 13685 | Butler Cty. Dairy v. Butler Cty., 285 Neb. 408 | 200+88 | On the issue of the scope of Read Township's regulatory authority, the district court concluded that the regulation of animal waste generated by large livestock confinement facilities was a proper exercise of the township's authority "[t]o prevent the exposure or deposit of offensive or injurious substances within the limits of the town" under Neb.Rev.Stat. " 23"224(6) (Reissue 2012). As for the prohibition against liquid livestock waste pipelines on town property, the court determined that such a regulation was authorized by Neb.Rev.Stat. " 39"1520 (Reissue 2008), which declared that "[a] township road and culvert work shall be under the general supervision of the township board," and " 23"224(8)(a), which granted to townships the authority to raise money "for constructing and repairing roads and bridges within the town." Thus, the court concluded that Read Township had the statutory authority to enact both regulations at issue. | Statutory provision that granted electors of a township the power "to prevent the exposure or deposit of offensive or injurious substances within the limits of the town" vested township with specific authority to prohibit liquid livestock waste pipelines from being constructed on, over, or under township roads; liquid livestock waste constituted an offensive and potentially injurious pollutant which was required by statute to be managed in a manner that was environmentally acceptable. West's Neb.Rev.St. SS 23-224(6), 54-2416, et seq.; Neb.Admin.R. & Regs. tit. 130. | Are the townships authorized to raise money for constructing roads within the township? | Highways -Memo 381 - DB_59252.docx | ROSS-003319044-ROSS-003319045 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13686 | Dang v. Smith, 190 Cal. App. 4th 646 | 302+21 | The only effect of an earlier allegation in such a context is to prevent the pleader from amending her pleading so as to contradict the judicially admitted matter. (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, " 1198, p. 630.) Because the original allegation is conclusively deemed true, the pleader is not permitted to assert its logical opposite. But this rule has no application here, for plaintiff cannot be properly understood as seeking to "contradict" her original allegation that defendants failed to record a lien. She does seek to abandon that allegation, in favor of a broader one effectively substituting the word "perfect" for the word "record," but defendants greatly exaggerate the nature and extent of this modification. They would have us view this single imprudent allegation in isolation, but plaintiff alluded elsewhere in her complaint to a state of facts consistent with those disclosed by the proofs on summary judgment. Thus she referred to "the loss of her lien on the Probst property" and defendants' "failure to fully secure the judgment." (Italics added.) She alleged that defendants told her they "had properly secured [her] financial interests in the [Probst] property and had filed the necessary and proper personal and real property liens to protect the Plaintiff." (Italics added) This is a roughly accurate description of the duty they allegedly violated under her new theory. She alleged that defendants attempted to conceal their "failure to secure the judgment by lien against the Probst property," again a broader and more accurate depiction of the facts than the one to which defendants would tie her. (Italics added.) | Because a pleader's original allegation is conclusively deemed true, the pleader is not permitted to assert its logical opposite. | Is the pleader permitted to assert the logical opposite of the original allegation? | 022901.docx | LEGALEASE-00151377-LEGALEASE-00151378 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 13687 | British Am. & E. Co. v. Wirth Ltd., 592 F.2d 75 | 308+92(1) | Although the district court indicated in its review of Wirth's libel claim that Sunley was an independent contractor and not an agent, we hold that in his dealings with Non-Ferrous Sunley acted as Wirth's agent. An agent serves under the control and supervision of his principal; so long as he acts within the ambit of his authority to represent his principal, he binds him. Such was the case with Sunley's dealings with Non-Ferrous once his agreement with Wirth took effect. The trial record indicates that Sunley was empowered to take orders from Non-Ferrous and from other customers for Wirth's account.2 This is the essence of the agency relation. See Restatement of Agency 2d ss 1, 302 (1958). Indeed, Sunley handled customer relations on Wirth's behalf in a number of ways, as he was hired to do, from assessing their supply needs to informing them of changes in the way Wirth planned to handle import duties. As Wirth's agent, Sunley also had supervisory authority over Wirth's secretarial staff. Accordingly, if Sunley accepted payments from Non-Ferrous designed to influence the way in which he fulfilled his duties as Wirth's agent, Wirth is entitled to recover those payments and Sunley is barred from recovering on the contract. | An agent serves under the control and supervision of his principal; so long as he acts within the ambit of his authority to represent his principal, he binds the principal. | Does an agent serve under the control and supervision of his principal? | Principal and Agent - Memo 191 - KC_59472.docx | ROSS-003280467-ROSS-003280468 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13688 | Forest Guardians v. Animal & Plant Health Inspection Serv., 309 F.3d 1141 | 411+7 | Forest Guardians's assertion that the Forest Service Manual bars predator control in wilderness areas except where it was used before the wilderness designation is also unpersuasive. Even if the Manual did prohibit predator control in those areas, we previously made clear that the Manual does not have the force of law and does not bind the agency and is therefore not entitled to deference. See Southwest Ctr. for Biological Diversity v. U.S. Forest Serv., 100 F.3d 1443, 1450 (9th Cir.1996); W. Radio Servs. Co. v. Espy, 79 F.3d 896, 901 (9th Cir.1996). | The Forest Service Manual does not have the force of law and does not bind the agency and is therefore not entitled to deference. | Is the Forest Service Manual entitled to deference and has the force of law? | 047548.docx | LEGALEASE-00151056-LEGALEASE-00151057 | Order, SA, Sub | 0.77 | 1 | 0 | 1 | 1 | 1 |
| 13689 | Lamb v. Thompson, 265 F.3d 1038 | 411+7 | The Service argues that the "provision of raptor habitat is not an overriding requirement which must be met to comply with the 1983 Forest Plan and NFMA's diversity requirements, given the competing goals and constraints embodied in the 1983 Forest Plan." (Appellees' Br. at 32.) Our standard of review requires us to give the Service's interpretations of its own regulations, in this case the provisions of the 1983 Forest Plan, "controlling weight unless [they are] plainly erroneous or inconsistent with the regulation[s]." Stinson v. United States, 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (quotation omitted) (citing cases for the same proposition); Sierra Club v. Martin, 168 F.3d 1, 4 (11th Cir.1999) (noting that "the Forest Service's interpretation of its Forest Plan should receive great deference from reviewing courts."); see also Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (noting that an agency's interpretation of its own regulations is entitled to "substantial deference"). In order to determine whether the Service's interpretation of the raptor habitat provision is reasonable, we must examine the structure of the Black Hills Plan. | Reviewing court must give Forest Service's interpretations of its own regulations controlling weight unless they are plainly erroneous or inconsistent with the regulations. | Do the Forest Service's interpretations of Forest Plan control its regulations? | 047552.docx | LEGALEASE-00151146-LEGALEASE-00151147 | Order, SA, Sub | 0.86 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13690 | Haskins v. Prudential Ins. Co. of Am., 230 F.3d 231 | 25T+420 | Finally, the dissent in Rosenberg discussed the term "appropriate," which the First Circuit used as its standard when deciding whether arbitration should be compelled. Judge Wellford wrote: "Congress, in using the expression "[w]here [arbitration is] appropriate" may well have intended some threshold determination that the type of employee-employer dispute be amenable to resolution by arbitration." Rosenberg, 170 F.3d at 22 (Wellford, J., dissenting). Judge Wellford's point is well-taken. It is not clear how Congress intended the term "appropriate" to apply in arbitration cases. Consequently, this court finds that it would be unwise to require a heightened standard that arbitration be "appropriate" without a clear Congressional requirement to do so, especially in light of the strong federal policy favoring arbitration. In sum, we disagree with the decision in Rosenberg to hold the employer completely at fault for failing to provide an employee with a copy of the applicable exchange organization's rules when the arbitration provision in the U"4 Form was plain and broad, such that a signing party should have been on notice that his claims could have been subject to arbitration. Such a decision removes all responsibility from a party signing a U"4 Form to read and understand the agreement. We cannot endorse such a rule. | Employee of financial services firm would be required to arbitrate his race and age discrimination claims against firm pursuant to arbitration agreement he had entered into with securities dealers' association, which provided for arbitration of any dispute between employee and firm that was required to be arbitrated under rules of organizations with which employee registered, and which contained two acknowledgements that employee understood contents of agreement, even though agreement did not specifically delineate claims subject to arbitration, firm did not provide employee with copy of association's arbitration rules, and none of firm's agents discussed arbitration clause with employee. Civil Rights Act of 1964, S 701 et seq., as amended, 42 U.S.C.A. S 2000e et seq.; Age Discrimination in Employment Act of 1967, S 2 et seq., 29 U.S.C.A. S 621 et seq. | "If an employer failed to provide copy of the applicable exchange organizations rules, is the signing party on notice that his claims could have been subject to arbitration?" | 007993.docx | LEGALEASE-00151456-LEGALEASE-00151457 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 13691 | Am. Reliable Ins. Co. v. Arrington, 269 F. Supp. 2d 758 | 118A+46 | Here, Arrington notes that in addition to seeking monetary relief on account of the alleged wrongs committed in the course of their credit transactions, he and his co-plaintiffs in the underlying action have pled for declaratory relief respecting the arbitration agreement at issue herein, and seeking, in particular, an adjudication that the agreement is not enforceable. Based on this fact, Arrington argues that this court should dismiss the present action in deference to that declaratory judgment action. The court, however, is not persuaded that this is a basis for declining to proceed with this case. While the Fifth Circuit generally applies the first-filed rule, "it recognizes an exception to the rule in cases where a plaintiff files suit for declaratory relief in anticipation of a lawsuit to be filed by the defendant." Pertuit v. Youthspan, Inc., 2003 WL 356021 (E.D.La.2003) (citing Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill, 751 F.2d 801 (5th Cir.1985)). In the court's opinion, this exception is implicated here, for there is little question that the plaintiffs in the underlying case sought declaratory relief as to the enforceability of the arbitration agreement in anticipation of the defendants therein suing on that same issue. | Federal court will not apply first-to-file rule, and dismiss lawsuit in favor of lawsuit raising substantially similar issues that was previously filed in another federal court, where plaintiff in this other suit has raised these similar issues by means of request for declaratory relief in anticipation of subsequent lawsuit. | Is there an exception to the first filed rule when a plaintiff files suit for declaratory relief in anticipation of a lawsuit to be filed by the defendant? | Alternative Dispute Resolution - Memo 844 - RK_59529.docx | ROSS-003296288-ROSS-003296289 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 13692 | Faiaz v. Colgate Univ., 64 F. Supp. 3d 336 | 141E+1166 | "A student may sue his college or university for breach of an implied contract in certain situations." Routh v. Univ. of Rochester, 981 F.Supp.2d at 207. In Papelino v. Albany College of Pharmacy of Union Univ., 633 F.3d 81, 93 (2d Cir.2011), the Second Circuit specified the circumstances under which an implied contract is formed between a student and his or her university. Under New York law, an implied contract is formed when the university accepts the student for enrollment. Id. See also Dasrath v. Ross Univ. School of Medicine, 494 Fed.Appx. 177, 178 (2d Cir.2012). If the student complies with the university's terms and completes the required courses, the university must award that student a degree. Papelino, 633 F.3d at 93 (citing Carr v. St. John's Univ., 17 A.D.2d 632, 633, 231 N.Y.S.2d 410 (2d Dep't), aff'd, 12 N.Y.2d 802, 235 N.Y.S.2d 834, 187 N.E.2d 18 (1962); Clarke v. Trs. of Columbia Univ., No. 95 Civ. 10627(PKL), 1996 WL 609271, at *5 (S.D.N.Y. Oct. 23, 1996)). | Under New York law, implied contract is formed when university accepts student for enrollment; if student complies with university's terms and completes required courses, university must award that student a degree. | An implied contract is formed when the university accepts the student for enrollment? | Education - Memo # 202 - C - KS_60317.docx | ROSS-003292201-ROSS-003292202 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 13693 | Thrall v. Newell, 19 Vt. 202 | 95+82 | It is a rule of law, that words are not to be construed in a frivolous or ineffectual sense, when a contrary exposition can be given them; and where the meaning of the language used is doubtful, or susceptible of two senses, that is to be adopted, which would give effect to the instrument as a legal contract, rather than that, which would render it inoperative. Chit. on Cont. 79, 80. Under these rules we think the words must be considered as forming part of the contract of assignment. Besides, if it were indifferent in all other respects, whether the words were to belong to the assignment, or to the note, they must be held as belonging to the assignment, under the final rule, where all others fail, that the language of a contract shall be construed most strongly against the contracting party. Chitty on Cont. 95-97.The words "for value received" forming a part of the contract of assignment, they must be held to furnish sufficient evidence, prima facie at least, of a consideration for the assignment. Lapham v. Barrett, 1 Vt. 247. Brooks v. Page, 1 D. Ch. 340. Whitney v. Stearns, 4 Shepley 394. Parish v. Stone, 14 Pick. 198.It is farther objected, that there was no sufficient evidence of the warranty of the validity of the note by the defendant.It is said by Judge Phelps, in the Bank of St. Albans v. Farmers' & Mechanics' Bank, 10 Vt. 145, that, notwithstanding the cases of Bree v. Holbech, Doug. 654, and Price v. Neal, 3 Burr. 1354, "it seems now to be well settled, that a person giving a security in payment, or procuring it to be discounted, vouches for its genuineness," but that the rule has not been extended to a case, where the party, when receiving or discounting the paper, is presumed, from his relation to it, to have the means of correct knowledge as to its genuineness. This view of the law is cited with approbation by the court in Gilman v. Peck, 11 Vt. 516, and seems, indeed, to be well supported by the more modern cases, both in England and in this country. Jones v. | The defendant executed to the plaintiff a written assignment in these words: "I hereby assign to R., a note in my favor against W. and H. dated 13th Nov., 1838, for one hundred and fifty dollars, payable in one year from date, with use, for value received." Held, that the words "for value received" were not merely descriptive of the note assigned, but that, prima facie at least, they imported a sufficient legal consideration for the assignment. | Are the words for value received forming a part of the contract of assignment prima facie evidence of consideration for the assignment? | Bills and Notes - Memo 871 - RK_59552.docx | ROSS-003293254-ROSS-003293255 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13694 | Purifoy v. Teasley, 188 Ala. 416 | 296+10 | We think it certain that Mrs. Williams was a "pensioner" within the meaning of the section of the statute in question, and that the treasurer should have paid the warrant when presented. "Pensioner," as there used, includes a widow, as well as a man. The fact that Mrs. Williams, being a woman, could not have left a widow at her death does not show or argue that she could not be a "pensioner." She could have left a "minor child" or "children," or had "burial expenses," or "expenses of last illness," which facts will authorize the probate judge to collect the warrant, when indorsed and with certificate attached showing the facts which authorize him to so collect, which was done in this case. | A widow who is drawing a pension under Gen.Acts 1911, p. 690, is a pensioner within section 27, authorizing the payment of the warrant to the children of the pensioner, or the collection by the probate judge and use in paying the expenses of the pensioner's burial and last illness. | Can a widow be a pensioner? | 022879.docx | LEGALEASE-00151562-LEGALEASE-00151563 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 13695 | Wilson v. Cty. of Orange, 881 So. 2d 625 | 307A+561.1 | The standard of review of an order granting a motion to dismiss is de novo. Pondella Hall For Hire, Inc. v. Lamar, 866 So.2d 719, 721 (Fla. 5th DCA 2004). Examination must be limited to the four corners of the complaint and the allegations in the complaint must be taken as true and in the light most favorable to the pleader. Id. Dismissal should not be granted on the basis of an affirmative defense, except when the face of the complaint is sufficient to demonstrate the existence of that defense. Scovell v. Delco Oil Co., 798 So.2d 844, 846 (Fla. 5th DCA 2001). | Dismissal should not be granted on the basis of an affirmative defense, except when the face of the complaint is sufficient to demonstrate the existence of that defense. | Would the face of the complaint be sufficient to demonstrate the existence of that defense? | Pretrial Procedure - Memo # 8613 - C - DA_59685.docx | ROSS-003282849-ROSS-003282850 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 13696 | 21st Amendment v. Indiana Alcohol & Tobacco Comm'n, 84 N.E.3d 691 | 307A+622 | The trial court granted the Commission's Trial Rule 12(B)(6) motion to dismiss based on 21st Amendment's lack of standing. Trial Rule 12(B)(6) allows for dismissal for "[f]ail[ing] to state a claim upon which relief can be granted." A plaintiff's alleged lack of standing falls under the category of failure to state a claim upon which relief can be granted. Thomas v. Blackford Cnty. Area Bd. of Zoning Appeals, 907 N.E.2d 988, 990 (Ind. 2009). A motion to dismiss tests the legal sufficiency of a claim, rather than the facts that support it. | A motion to dismiss tests the legal sufficiency of a claim, rather than the facts that support it. Ind. R. Trial P. 12(B)(6). | "Does a motion to dismiss test the legal sufficiency of the claim, not the facts that support it?" | 037738.docx | LEGALEASE-00151803-LEGALEASE-00151804 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 13697 | Wright v. Wright, 567 S.W.2d 371 | 8.30E+210 | Appellant claims that he and respondent, as co-signatories on the note, are mutually obligated to pay the indebtedness; that he has fulfilled his share of the obligation on the note; and that respondent alone is obligated to pay off the existing indebtedness. Respondent maintains that pursuant to an agreement she and her former husband reached prior to executing the loan, she signed the note as an accommodation party and the house was used as collateral. She disclaimed any liability on the note, and the trial court ruled in her favor. In his first assignment of error, appellant contends the trial court improperly admitted parol evidence, by way of respondent's testimony, of her status as an accommodation party.1 Such testimony, he argues, constitutes an attempt to vary the clear and unambiguous terms of the written instrument. As a matter of general law, there may be a presumption that co-makers of a promissory note, in the absence of evidence to the contrary, are equally liable. Bills and notes, however, do not necessarily express the entire agreement between ostensible co-makers. Thus our courts have repeatedly held that in an action on a note by the original parties, an ostensible maker may show by parol evidence that he signed for the accommodation of the other. First National Bank of Liberty v. Latimer, 486 S.W.2d 262, 267 (Mo.1972); Allison v. Dilsaver, 387 S.W.2d 206, 213 (Mo.App.1965); Massa v. Huehnerhoff, 59 S.W.2d 723, 724 (Mo.App.1933); Dickherber v. Turnbull, 31 S.W.2d 234, 236 (Mo.App.1930). | As a matter of general law, there may be a presumption that comakers of promissory note, in absence of evidence to the contrary, are equally liable; bills and notes, however, do not necessarily express entire agreement between ostensible comakers. | Are comakers of a promissory note equally liable? | Bills and Notes - Memo 783 -KC_60013.docx | ROSS-003323318-ROSS-003323319 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13698 | Packer v. Roberts, 140 Ill. 9 | 83E+481 | Conceding, for the sake of argument, that the question of whether the suit is properly brought in the name of the payee of the note"he having, previously to the bringing of the suit, executed a voluntary deed of assignment to an assignee"is before us, the answer must be in the affirmative, upon the authority of Ryan v. May, 14 Ill. 49; Chickering v. Raymond, 15 Ill. 362; Fortier v. Darst, 31 Ill. 213; Badgley v. Votrain, 68 Ill. 25; and Barrett v. Hinckley, 124 Ill. 32, 14 N. E. Rep. 863,"in which it is held that a promissory note cannot, under our statute, be assigned so as to vest the legal title in the assignee by a separate instrument, but that it can only be done by indorsement on the note itself. The judgment is affirmed. | Note cannot be assigned by separate instrument, and where payee has by deed of assignment, duly assigned all his property, legal title to note is not thereby transferred to assignee so as to preclude payee from suing thereon in his own name for use of assignee. | Can a note be assigned by a separate instrument without indorsement so as to vest a legal title in an assignee? | 009929.docx | LEGALEASE-00151861-LEGALEASE-00151862 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13699 | Wells Fargo Bank, NA v. Ostiguy, 127 A.D.3d 1375 | 266+1749 | In support of its cross motion and in opposition to defendants' motion, plaintiff produced the mortgage, the unpaid note, the notice of default sent to defendants and the affidavit of Shae E. Herman, its vice-president of loan documentation, attesting to defendants' default and failure to cure. Despite this proof, Supreme Court found that, as to standing, plaintiff's admitted sale of the loan to Freddie Mac was fatal to its claim that it was the lawful holder of the note and mortgage at the time this action was commenced. We cannot agree. Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff (see UCC 1"201 [former(20) ]; 3"202; 3"204; Hartford Acc. & Indem. Co. v. American Express Co., 74 N.Y.2d 153, 159, 544 N.Y.S.2d 573, 542 N.E.2d 1090 [1989]; DH Cattle Holdings Co. v. Smith, 195 A.D.2d 202, 208, 607 N.Y.S.2d 227 [1994]; see also Nationstar Mtge., LLC v. Davidson, 116 A.D.3d 1294, 1296, 983 N.Y.S.2d 705 [2014], lv. denied 24 N.Y.3d 905, 2014 WL 4637016 [2014]; Deutsche Bank Trust Co. Ams. v. Codio, 94 A.D.3d 1040, 1041, 943 N.Y.S.2d 545 [2012]; Mortgage Elec. Registration Sys., Inc. v. Coakley, 41 A.D.3d 674, 674, 838 N.Y.S.2d 622 [2007] ). Notably, "[t]he holder of an instrument whether or not he [or she] is the owner may transfer or negotiate it[, and] discharge it or enforce payment in his [or her] own name" (UCC 3"301 [emphasis added]; see generally Glens Falls Indem. Co. v. Chase Natl. Bank, 257 N.Y. 441, 445, 178 N.E. 751 [1931]; Gates v. Manufacturers Hanover Trust Co./ Capital Region, 98 A.D.2d 829, 829, 470 N.Y.S.2d 492 [1983], abrogated on other grounds Golden v. Citibank, N.A., 23 N.Y.3d 935, 936, 988 N.Y.S.2d 121, 11 N.E.3d 194 [2014] ). Here, the note was originated by plaintiff and a copy submitted on the motion, alleged to be in plaintiff's possession at the time it commenced this action, is endorsed in blank. | Holder status, as required for standing to pursue foreclosure action, is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff. McKinney's Uniform Commercial Code S 3-301. | Who can be a holder of a note? | 010046.docx | LEGALEASE-00152384-LEGALEASE-00152385 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 13700 | Farrar v. Gilman, 19 Me. 440 | 83E+815 | Negotiable notes of hand and bills of exchange are often negotiated to and from banks, and from one bank to another. Nothing is more common than paper of this kind, bearing the indorsement of the cashier of a bank, in his official capacity. And it may perhaps be assumed as a universal usage, that when instruments of this description are indorsed or transferred by a bank, he becomes their organ for this purpose. It may not be necessary to decide, that he may do this without special authority; and such an assumption might well be questionable. But as he is held out to the public as the confidential officer and actuary of the bank, as he is under bonds for the faithful performance of his duties, and as he acts as their organ in the transfer of negotiable paper, it is not in our opinion too much to hold, that when he indorses such paper, belonging to the bank, in his official capacity, it is prima facie evidence of a legal transfer. | The indorsement of negotiable paper belonging to a bank by a cashier is prima facie evidence of a legal transfer of such paper. | "When a cashier of the bank or confidential officer endorses a note, is it prima facie evidence of legal transfer?" | 010772.docx | LEGALEASE-00152491-LEGALEASE-00152492 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 13701 | Sterling & Snapp v. Bender, 7 Ark. 201 | 83E+426 | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. Chit. on bills 253. By the indorsement the payee divests himself of the legal interest in the bill or note, and it is vested by the delivery in the holder. Wilkinson v. Nicklin, 2 Dall. Rep. 296. | A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank, it makes the bill or note in effect payable to bearer. | Can a note indorsed in blank be transferred by delivery? | 010809.docx | LEGALEASE-00151873-LEGALEASE-00151874 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 13702 | In re Lee, 408 B.R. 893 | 83E+426 | Alternatively, if the indorsement does not specify a payee, it constitutes a "blank indorsement," as defined in CCC " 3205(b) (UCC " 3"205(b)), which makes the note payable to whoever is the bearer of the note. After a blank indorsement, the note may be negotiated by transfer of possession alone until it is specially indorsed. | If an indorsement does not specify a payee, it constitutes a "blank indorsement," as defined in the California Commercial Code (CCC), which makes the note payable to whoever is the bearer of the note. West's Ann.Cal.Com.Code S 3205(b). | "If an indorsement does not specify a payee or indorsee, is it a blank indorsement?" | Bills and Notes-Memo 1177-ANM_60974.docx | ROSS-003282611-ROSS-003282612 | SA, Sub | 0.27 | 0 | 0 | 1 | 1 | |
| 13703 | Moody v. Lindsey, 202 Va. 1 | 200+79.2 | It is generally held that nonuser will not operate to discontinue a legally established highway, unless coupled with affirmative evidence of an intent to abandon.Especially is this so where there is no use of the premises adverse to the right in the public. 39 C.J.S., Highways, " 131, p. 1066; Elliott on Roads and Streets, 4th Ed., Vol. 2, " 1174, p. 1670; 25 Am. Jur., Highways, " 112, pp. 410, 411. See also, Town of Basic City v. Bell, supra, 114 Va., at page 167; Sipe v. Alley, 117 Va. 819, 824, 86 S.E. 122. | Generally, nonuser will not operate to discontinue a legally established highway, unless coupled with affirmative evidence of an intent to abandon, especially where there is no use of premises adverse to right of public. Acts 1904, c. 106, SS 2, 3 as amended by Acts 1908, c. 280, and S 9. | Does nonuse operate as abandonment of a highway? | 018678.docx | LEGALEASE-00152497-LEGALEASE-00152498 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 13704 | Lindstrom v. Arnold, 421 So.2d 1178 | 48A+173(2) | LSA-R.S. 32:141(A) prohibits parking or stopping on highways outside of residential or business districts. However, that prohibition does not apply where, as here, a vehicle stops on the highway because it is disabled. LSA-R.S. 32:141(B); Mahoney v. Arline, 173 So.2d 346 (La.App. 2d Cir.1965). Thus, there was no violation of " 141(A) by Arnold. | There was no violation by motorist of statute prohibiting parking or stopping on highways outside of residential or business districts where her vehicle was stopped on the highway because it was disabled. LSA-R.S. 32:141, subds. A, B. | Is there a violation if a disabled vehicle is stopped on highway? | 018911.docx | LEGALEASE-00152055-LEGALEASE-00152056 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 13705 | Cascardo v. Snitow Kanfer Holtzer & Millus, LLP, 100 A.D.3d 674 | 307A+679 | Contrary to the plaintiff's contention, the Supreme Court, upon renewal, properly adhered to its original determination granting that branch of the defendants' motion which was to dismiss the complaint for failure to state a cause of action. In considering a motion to dismiss pursuant to CPLR 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord [the plaintiff] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v. Martinez, 84 N.Y.2d 83, 87"88, 614 N.Y.S.2d 972, 638 N.E.2d 511). "Such a motion should be granted where, even viewing the allegations as true, the plaintiff cannot establish a cause of action" (Parekh v. Cain, 96 A.D.3d 812, 815, 948 N.Y.S.2d 72; see High Tides, LLC v. DeMichele, 88 A.D.3d 954, 956"957, 931 N.Y.S.2d 377; Schwartz v. Schwartz, 55 A.D.3d 897, 866 N.Y.S.2d 573). | Motion to dismiss for failure to state a cause of action should be granted where, even viewing the allegations as true, the plaintiff cannot establish a cause of action. McKinney's CPLR 3211(a)(7). | When should a motion to dismiss for failure to state a cause of action be granted? | 037547.docx | LEGALEASE-00152307-LEGALEASE-00152308 | Order, SA, Sub | 0.79 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13706 | Marshall v. Burger King Corp., 222 Ill. 2d 422 | 272+1692 | To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. Bajwa v. Metropolitan Life Insurance Co., 208 Ill.2d 414, 421, 281 Ill.Dec. 554, 804 N.E.2d 519 (2004). Whether a duty exists in a particular case is a question of law for the court to decide. Chandler, 207 Ill.2d at 340, 278 Ill.Dec. 340, 798 N.E.2d 724. On the contrary, whether a defendant breached the duty and whether the breach was the proximate cause of the plaintiff's injuries are factual matters for the jury to decide, provided there is a genuine issue of material fact regarding those issues. Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165 Ill.2d 107, 114, 208 Ill.Dec. 662, 649 N.E.2d 1323 (1995). | Whether a duty exists in a particular case is a question of law for the court to decide. | Does a duty that exists in a particular case a question of law for the court to decide? | Pretrial Procedure - Memo # 8722 - C - NS_60240.docx | ROSS-003322895-ROSS-003322896 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 13707 | Adams v. USAA Cas. Ins. Co., 317 S.W.3d 66 | 307A+680 | We next consider the court's ruling as to Plaintiffs' conspiracy-to-commit fraud count, treating it as a grant of a motion to dismiss. George Ward Builders, Inc., 157 S.W.3d at 646. A motion to dismiss for failure to state a claim upon which relief can be granted is a challenge to the sufficiency of the petition. Chochorowski, 295 S.W.3d at 197. Upon review, we assume all pleaded facts are true, giving the pleadings their broadest intendment and construing all allegations favorable to the plaintiff. Id. It is not our function to weigh the allegations to determine their credibility or persuasiveness. Id. Rather, we review the petition almost academically to determine if the facts alleged meet the elements of a recognized cause of action, or a cause that could be brought in the case. Id. Determination of factual questions or whether the party is entitled to relief on the merits is not appropriate on a motion to dismiss. Id. | Determination of factual questions or whether the party is entitled to relief on the merits is not appropriate on a motion to dismiss. | Is a court's determination of factual questions not appropriate on a motion to dismiss? | 037700.docx | LEGALEASE-00152006-LEGALEASE-00152007 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13708 | Spence v. Cherian, 135 A.3d 1282 | 307A+622 | A third-party complaint will be dismissed where "it is clearly without merit, which may be either a matter of law or fact." In turn, the Court should dismiss a claim if a third-party plaintiff fails to plead, or cannot make out on the facts pleaded, an essential element of that claim. And if a plaintiff could not have originally sued the third-party defendant on a given claim, the claim against the third-party defendant also must be dismissed. | Court should dismiss a claim if a third-party plaintiff fails to plead, or cannot make out on the facts pleaded, an essential element of that claim, and if a plaintiff could not have originally sued the third-party defendant on a given claim, the claim against the third-party defendant also must be dismissed. | Should a court dismiss a claim if a plaintiff fails to plead? | Pretrial Procedure - Memo # 8848 - C - KG_59846.docx | ROSS-003320834-ROSS-003320835 | Condensed, SA | 0.31 | 0 | 1 | 0 | 1 | |
| 13709 | Boca Burger v. Forum, 912 So. 2d 561 | 307A+561.1 | Therefore, we reject the Fourth District's holding in this case that Boca Burger could not raise its preemption defense in a motion to dismiss.A defendant may, at its option, raise any affirmative defense, including the defense of federal preemption, in a motion to dismiss.Of course, when a defendant asserts such a defense in a motion to dismiss, a trial court must determine the issue as a matter of law based only on the well-pleaded allegations in the complaint, assuming the truth of the facts asserted. See Hanft v. Phelan, 488 So.2d 531, 532 n. 1 (Fla.1986). | A defendant may, at its option, raise any affirmative defense, including the defense of federal preemption, in a motion to dismiss. West's F.S.A. RCP Rule 1.140(b). | Can a defendant raise any affirmative defense in a motion to dismiss? | 037868.docx | LEGALEASE-00152146-LEGALEASE-00152147 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 13710 | Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v. Republic of Romania, 123 F. Supp. 2d 174 | 308+96 | Defendant argues that this Court may not enforce the Amicable Agreement because Finance Minister Ciumara did not have authority to settle this action. Under New York law, actual authority is the authority that a principal invests in its agent, which, upon its exercise, binds the principal. See Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 51 F.Supp.2d 457, 472 (S.D.N.Y.1999) (Edelstein, J.). Actual authority may be established by any action that reasonably indicates to the agent that the principal wants the agent to perform a certain task. | Under New York law, actual authority may be established by any action that reasonably indicates to agent that principal wants agent to perform certain task. | Can an action of the Principal establish authority? | 041334.docx | LEGALEASE-00152297-LEGALEASE-00152298 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 13711 | Gowens v. Tys. S. ex rel. Davis, 948 So. 2d 513 | 308+47 | Although "[a]s against a principal, both principal and agent are deemed to have notice of whatever either has notice of," Ala.Code 1975, " 8"2"8 (emphasis added), the imputation of the principal's knowledge to the agent is contrary to the general principles of agency. Schmitt v. FMA Alliance, 398 F.3d 995, 997 (8th Cir.2005) (citing cases); Waswick v. Stutsman County Bank (In re Waswick), 212 B.R. 350, 352"53 (Bankr.D.N.D.1997); and Rosenbaum v. Texas Energies, Inc., 241 Kan. 295, 300, 736 P.2d 888, 892 (1987). Indeed, imputed knowledge will not defeat State-agent immunity, because it does not bespeak bad faith or deviation from "detailed rules or regulations, such as those stated on a checklist." Ex parte Butts, 775 So.2d at 178. Thus, in the absence of evidence indicating that Gowens actually possessed the information in the September CAN report regarding the number of children in the home, the plaintiffs must identify a mandatory rule or regulation requiring Gowens independently to discover that information. | Although as against a principal, both principal and agent are deemed to have notice of whatever either has notice of, the imputation of the principal's knowledge to the agent is contrary to the general principles of agency. | Can a principals knowledge be imputed to an agent? | Principal and Agent - Memo 202 - KC_59870.docx | ROSS-003296513-ROSS-003296514 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 13712 | St. Clair Intermediate Sch. Dist.t v. Intermediate Educ. Ass'n/Michigan Educ. Ass'n, 458 Mich. 540 | 308+1 | Also fundamental to the existence of an agency relationship is the right to control the conduct of the agent, Capitol City Lodge No. 141, FOP v. Meridian Twp., 90 Mich.App. 533, 541, 282 N.W.2d 383 (1979), with respect to the matters entrusted to him.See Int'l Longshoremen's Ass'n, AFL"CIO v. NLRB, 312 U.S. App DC 241, 249, 56 F.3d 205 (1995), citing 1 Restatement, Second, Agency, " 14, p. 60, and cases applying this principle. | Fundamental to the existence of an agency relationship is the right to control the conduct of the agent with respect to the matters entrusted to him. Restatement (Second) of Agency S 14. | Can an agents conduct be controlled by the principal with respect to matters entrusted to him? | 041506.docx | LEGALEASE-00152333-LEGALEASE-00152334 | Order, SA, Sub | 0.57 | 1 | 0 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13713 | Hidden Brook Air v. Thabet Aviation Int'l Inc., 241 F. Supp. 2d 246 | 308+99 | An agent's authority may be actual or apparent. Actual authority exists when an agent has the power "to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestation to him." Minskoff v. American Exp. Travel Related Servs. Co., 98 F.3d 703, 708 (2d Cir.1996) (quoting Restatement (Second) of Agency " 7 cmt. a (1958)). Actual authority may be express or implied. The distinction between express and implied actual authority turns on the nature of the representation by which the principal delegates authority to that agent. Express authority is "[a]uthority distinctly, plainly expressed, orally or in writing." Nationwide Life Ins. Co. v. Hearst/ABC"Viacom Entm't Servs., 1996 WL 263008, at *8 (S.D.N.Y. May 17, 1996) (quoting Black's Law Dictionary 521 (5th ed.1979)), while implied authority exists "when verbal or other acts by a principal reasonably give the appearance of authority to the agent." 99 Commercial St., Inc. v. Goldberg, 811 F.Supp. 900, 906 (S.D.N.Y.1993). In addition, as Judge Weinfeld explained, under New York law,"Implied authority" has also been defined as "a kind of authority arising solely from the designation by the principal of a kind of agent who ordinarily possesses certain powers." The general rule in New York with regard to implied authority is that "an agent employed to do an act is deemed authorized to do it in the manner in which business entrusted to him is usually done." | "Actual authority" exists when an agent has the power to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestation to him. Restatement (Second) of Agency S 7 comment. | When does actual authority exist in an agent? | Principal and Agent - Memo 225 - KC_60111.docx | ROSS-003278430-ROSS-003278431 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 13714 | Hartford Elevator v. Lauer, 94 Wis. 2d 571 | 308+60 | It is clear that the agent is liable for damages in the event of a breach of duty and that any losses he caused may be offset against any claim he may have for compensation. However we do not adopt the rigid, mechanical rule urged by the employer that compensation is automatically denied to the agent during the period in which he has committed a willful and significant breach of duty of loyalty. | An agent is liable for damages in the event of breach of duty to his principal and any losses he causes may be offset against any claim he may have for compensation. | Will an agent be liable for damages in the event of breach? | Principal and Agent - Memo 57 - KC_60264.docx | ROSS-003318941 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 13715 | Hartzell Fan v. Waco, 256 Va. 294 | 308+94 | A special agent is one who is authorized to perform one or more specific acts in pursuance of particular instructions, or within restrictions necessarily implied from the stated acts to be performed. Lacey v. Cardwell, 216 Va. 212, 220, 217 S.E.2d 835, 841 (1975); Bowles v. Rice, 107 Va. 51, 52, 57 S.E. 575, 576 (1907); see Stacy v. J.C. Montgomery Ins. Corp., 235 Va. 328, 331, 367 S.E.2d 499, 500"01 (1988). The powers of a special agent must be strictly construed. Id. at 331, 367 S.E.2d at 501; Lacey, 216 Va. at 221, 217 S.E.2d at 842; Bowles, 107 Va. at 53, 57 S.E. at 576. | "Special agent" is one who is authorized to perform one or more specific acts in pursuance of particular instructions, or within restrictions necessarily implied from the stated acts to be performed. | Who is a Special Agent under the law? | Principal and Agent - Memo 65 - KC_60272.docx | ROSS-003278700-ROSS-003278701 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 13716 | Valeriano-Cruz v. Neth, 14 Neb. App. 855 | 21+12 | To answer the question whether the report in the case before us constitutes a "sworn" report, we first recognize that a sworn report in an ALR proceeding is, by definition, an affidavit. See Hass v. Neth, 265 Neb. 321, 657 N.W.2d 11 (2003). An affidavit is a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation. Id. An affidavit must bear on its face, by the certificate of the officer before whom it is taken, evidence that it was duly sworn to by the party making the same. Id. | An "affidavit" is a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation; an affidavit must bear on its face, by the certificate of the officer before whom it is taken, evidence that it was duly sworn to by the party making the same. | Should the affidavit bear on its face to have been taken before the proper officer? | Affidavits - Memo 50 - _1GIj-B9TmGRbbXtI-LPDA-NrVAyxuLoLQ.docx | ROSS-000000197-ROSS-000000198 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |
| 13717 | Habersham v. Lehman, 63 Ga. 380 | 83E+731(2) | A negotiable note being indorsed in blank (the blank still unfilled), any holder may sue the maker. A full indorsement by a person other than the payee, will not hinder the blank indorsement by the payee from operating as evidence of title in the present holder. | A negotiable note being indorsed in blank (the blank still unfilled), any holder may sue the maker. A full indorsement by a person other than the payee, will not hinder the blank indorsement by the payee from operating as evidence of title in the present holder. | Can any holder sue a maker on a negotiable note indorsed in blank? | Bills and Notes - Memo 877 - RK_60677.docx | ROSS-003308356-ROSS-003308357 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 13718 | Turner v. Beneficial Corp., 242 F.3d 1023 | 172H+1537 | The legislative history emphasizes that TILA provides for statutory remedies on proof of a simple TILA violation, and requires the more difficult showing of detrimental reliance to prevail on a claim for actual damages. To the extent that Jones, and possibly Ransom, hold otherwise, they are overruled. We hold that detrimental reliance is an element of a TILA claim for actual damages, that is a plaintiff must present evidence to establish a causal link between the financing institution's noncompliance and his damages.] | Detrimental reliance is an element in a TILA claim for actual damages; overruling Jones v. Bill Heard Chevrolet, Inc., 212 F.3d 1356; Ransom v. S & S Food Center, Inc. of Florida, 700 F.2d 670. Truth in Lending Act, S 130(a)(1), (a)(2)(A), 15 U.S.C.A. S 1640(a)(1), (2)(A). | Is detrimental reliance an element of Truth in Lending Act (TILA) claims for actual damages? | Bills and Notes - Memo 885 - RK_60684.docx | ROSS-003280399-ROSS-003280400 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 13719 | Thorp, Smith & Hanchett v. Craig, 10 Iowa 461 | 83E+675 | 2 It is urged by the appellant that the evidence did not justify the instructions of the court to the jury, and under this objection there are several questions presented which demand the consideration of this court. It is claimed by the appellant that said bills were not duly presented for payment upon the day on which they became due. The bills were drawn in Iowa, where the law merchant, which allows three days of grace, was in force, and were made payable in the State of New York, where the law provides, "that all checks, bills of exchange, or drafts, appearing upon their face to have been drawn upon any bank, which are on their face payable on any specified day, or in any number of days after the date or sight thereof, shall be deemed due and payable on the day mentioned for the payment of the same, without any days of grace being allowed, and it shall not be necessary to protest the same for non-acceptance." By the law of New York the appellant was not entitled to any days of grace, and the holder thereof had a right to demand payment thereon on the day they became due. The question then follows which law shall govern; that of the place where the contract was made, or that of the place of payment. Without referring to the many cases in which this question has been decided, and to the various treatises upon bills of exchange in which this subject is fully considered, we conclude that "it is well settled that the law of the place where a draft is made payable is to govern in respect to the allowance of days of grace upon a bill of exchange, or check drawn in one state upon another." Edwards on Bills, 522. If this rule is to apply, the bills sued upon were presented at the proper time. | The law of the place where a bill of exchange is payable governs as to the allowance of days of grace. | Will law of the place where a draft is made payable govern the days of grace upon a bill of exchange? | 009865.docx | LEGALEASE-00153582-LEGALEASE-00153583 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13720 | Smith v. Anderson, 70 Vt. 424 | 8.30E+10 | The court charged that whether or not the note had been paid might depend upon whether the contract was made in Vermont or Rhode Island. The plaintiff insists this was error, for the jury might well understand from this part of the charge that the place of making the contract was controlling; and counsel argue that all the facts and circumstances pertaining to the transaction, with all legal presumptions, should have been submitted to the jury, for them to find with reference to the law of which state the contract was made. It does not appear but that this was done, and, if otherwise it would be error, we must infer that it was. The charge as given embodied a sound legal proposition. The court did not say that the right to recover depended upon whether the contract was made in Vermont or Rhode Island, but that it might, and so it would, if there was nothing in the case as to the intention of the parties in reference to which law they contracted. If the jury did not find that the parties contracted with reference to either place, then the right to recover would depend upon the law of the place in which the contract was made. It is unsafe to reverse a judgment for the reason that the jury misunderstood the charge of the court, when the charge was correct both in law and in language. If a jury misunderstand the charge of the court, the remedy is not by exception to a charge which is correct, but by motion to set aside the verdict and grant a new trial. To reverse a judgment upon exception when the trial court has committed no error is illogical, to say the least, and should never be done. In fact, it is illegal to do so. | Where parties to a note, who lived in different states, did not contract with reference to the law of either state, the law of the place in which the contract was made would determine the right to recover; and hence a charge that whether or not the note had been paid might depend on whether the contract was made in one state or another is not erroneous. | Does the law of the place in which a contract was made govern the right to recover? | 009899.docx | LEGALEASE-00153651-LEGALEASE-00153652 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 13721 | Atl. Cmty. Coll. v. Civil Serv. Comm'n, 59 N.J. 102 | 141E+990 | Turning to the first contention, we are not persuaded that county colleges are agencies of county government.Rather, we believe that they are separate political subdivisions which serve a separate purpose and operate apart from the governing bodies of the counties in which they are situated. Examination of the statutory scheme is demonstrative of this conclusion. | County colleges are not agencies of county government but, rather, are separate political subdivisions which serve separate purpose and operate apart from governing bodies of counties in which they are situated. N.J.S.A. 18A:64A-3, 4, 7 to 9, 15. | Is a county college an agency of county government? | 017074.docx | LEGALEASE-00152881-LEGALEASE-00152882 | SA, Sub | 0.33 | 0 | 0 | 1 | 1 | |
| 13722 | Virginia Elec. & Power Co. v. Buchwalter, 228 Va. 684 | 156+29 | It is well established that a party who purports to convey an estate is estopped as against his grantee from asserting anything in derogation thereof. That is to say, a grantor cannot deny his title to the prejudice of his grantee. See School Board v. Smith, 134 Va. 98, 104, 113 S.E. 868, 869 (1922). Similarly, " "those who derive title from or through the parties, ordinarily stand in the same position as the parties, and are bound by every estoppel that would have been binding on the parties." " Richmond Cedar Works v. West, 152 Va. 533, 543, 147 S.E. 196, 199 (1929). | In action challenging electric company's easement, lot owner, who as grantee, was in privy with party who granted easement to electric company, was bound by every estoppel which would have been binding on grantor, whether or not he sought to deny grantor's title. | Are those who derive title from or through the parties bound by every estoppel that would have been binding on the parties? | 018016.docx | LEGALEASE-00153019-LEGALEASE-00153020 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 13723 | Niday v. GMAC Mortg., 353 Or. 648 | 266+894 | The present case examines the MERS arrangement in the specific context of the OTDA. The OTDA allows for nonjudicial foreclosure of a particular kind of security instrument, a trust deed. A trust deed conveys an interest in real property"a lien"to a trustee, who holds that interest, in trust, to secure an obligation owed by the "grantor" of the trust deed to the trust deed's "beneficiary." ORS 86.705(2), (4), (7). Under the OTDA, if the grantor defaults on his or her obligation to the beneficiary (by, for example, failing to repay a loan made by the beneficiary), the trustee may foreclose the trust deed by "advertisement and sale" of the trust property, if certain prerequisites are satisfied. ORS 86.710, ORS 86.735. Among the listed prerequisites is a requirement that"the trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee [be] recorded in the mortgage records in the counties in which the property described in the deed is situated[.]"ORS 86.735(1). | Lender that had provided loan underlying trust deed, not Mortgage Electronic Registration Systems (MERS), a private electronic database used by lenders, loan servicers, investors, and other industry participants to track transfer of beneficial interests in mortgage loan obligations, was the "beneficiary" of trust deed, for purposes of determining whether beneficiary had assigned a beneficial interest in trust deed but failed to record that assignment, such as would preclude nonjudicial foreclosure of trust deed pursuant to Oregon Trust Deed Act (OTDA); even though MERS had been named as beneficiary in trust deed, lender was the party to whom the underlying, secured obligation was owed. West's Or.Rev. Stat. Ann. S 86.735(1). | Does a trust deed convey an interest in real property to a trustee to secure the performance of an obligation the grantor owes to a beneficiary? | 018330.docx | LEGALEASE-00153505-LEGALEASE-00153506 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 13724 | Ex Parte AutoSource Motors, 156 So. 3d 397 | 106+35 | " "The plaintiff has the burden of proving that the trial court has personal jurisdiction over the defendant." J.C. Duke & Assocs. Gen. Contractors, Inc. v. West, 991 So.2d 194, 196 (Ala.2008). " " " " "In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir.1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir.1990), and "where the plaintiff's complaint and the defendant's affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff." Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990))." ' | If a defendant makes a prima facie evidentiary showing that a court has no personal jurisdiction, the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint. Rules Civ.Proc., Rule 12(b)(2). | "In considering a motion to dismiss for want of personal jurisdiction, should a court consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits?" | Pretrial Procedure - Memo # 8889 - C - SN_61230.docx | ROSS-003278492-ROSS-003278493 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 13725 | Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A., 186 Ill. 2d 472 | 30+3200 | Plaintiffs argue that the circuit and appellate courts erred in finding that they failed to state a cause of action under the Consumer Fraud Act with regard to defendant's charging a fee to suspend plaintiffs' escrow. As noted, the circuit court granted defendant's motion to dismiss the escrow suspension fee claim pursuant to section 2"615. Such a motion attacks the legal sufficiency of the complaint by alleging defects on the face of the complaint. Bryson v. News America Publications, Inc., 174 Ill.2d 77, 86, 220 Ill.Dec. 195, 672 N.E.2d 1207 (1996). The standard of review on appeal from an order granting a section 2"615 motion to dismiss is de novo. Mt. Zion State Bank & Trust v. Consolidated Communications, Inc., 169 Ill.2d 110, 127, 214 Ill.Dec. 156, 660 N.E.2d 863 (1995). We must determine whether the allegations of plaintiffs' complaint, when construed in the light most favorable to plaintiffs, are sufficient to establish a cause of action upon which relief may be granted. Connick v. Suzuki Motor Co., 174 Ill.2d 482, 490, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996). | De novo standard of review applies to appeal from an order granting motion to dismiss that attacks legal sufficiency of complaint based on defects on its face. S.H.A. 735 ILCS 5/2-615. | Does a motion to dismiss under section 2615 alleging defects on the face of the complaint attack the legal sufficiency of the complaint? | 06613.docx | LEGALEASE-00096591-LEGALEASE-00096592 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13726 | Berger v. Emerson Climate Techs., 508 S.W.3d 136 | 307A+681 | Respondents maintain in the dismissal motion that the wrongful discharge claim should be dismissed because Employee's "allegations establish that he voluntarily left his employment and was not terminated." Respondents argue that Employee "voluntarily left his employment when he declined to provide the requested note from his doctor clearing him to return to work." But the petition avers that Respondents were already aware of Employee's medical needs in relation to his workplace from testimony presented at the Copeland trial, and our review is not to determine whether Respondents suggest a viable defense to Employee's claim. "The issue is not whether the plaintiff is entitled to a judgment in his favor, rather it is whether he is entitled to be heard on his claim." Rychnovsky v. Cole, 119 S.W.3d 204, 210 (Mo.App.W.D.2003). | Issue on a motion to dismiss is not whether the plaintiff is entitled to a judgment in his favor, rather it is whether he is entitled to be heard on his claim. | Is an issue on a motion to dismiss not whether the plaintiff is entitled to a judgment in his favor? | Pretrial Procedure - Memo # 9055 - C - MS_60460.docx | ROSS-003296693-ROSS-003296694 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13727 | Papa John's Int'l v. Cosentino, 916 So. 2d 977 | 307A+561.1 | Res judicata and collateral estoppel are affirmative defenses. If the face of the complaint contains allegations which demonstrate the existence of an affirmative defense, then such a defense may be considered on a motion to dismiss. See Fla. R. Civ. P. 1.110(d); Palmer v. McCallion, 645 So.2d 131, 133 (Fla. 4th DCA 1994); Vaswani v. Ganobsek, 402 So.2d 1350, 1351 (Fla. 4th DCA 1981). Otherwise an affirmative defense may not be considered on a rule 1.140(d) motion to dismiss. See Swafford v. Schweitzer, 906 So.2d 1194, 1195 (Fla. 4th DCA 2005). | If the face of the complaint contains allegations which demonstrate the existence of an affirmative defense, then such a defense may be considered on a motion to dismiss, otherwise, affirmative defenses may not be considered. West's F.S.A. RCP Rule 1.110(d). | When can affirmative defense be considered on a motion to dismiss? | 038435.docx | LEGALEASE-00153332-LEGALEASE-00153333 | SA, Sub | 0.53 | 0 | 0 | 1 | 1 | |
| 13728 | Regency Oaks Corp. v. Norman-Spencer McKernan, 129 A.D.3d 1454 | 308+99 | It is axiomatic that "[t]he mere creation of an agency for some purpose does not automatically invest the agent with "apparent authority" to bind the principle without limitation . . . An agent's power to bind his [or her] principal is coextensive with the principal's grant of authority" (Ford v Unity Hosp., 32 NY2d 464, 472-473 [1973]). "Essential to the creation of apparent authority are words or conduct of the principal, communicated to the third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. The agent cannot by his [or her] own acts imbue himself [or herself] with apparent authority. "Rather, the existence of "apparent authority" depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal"not the agent" . . . Morever, a third party with whom the agent deals may rely on an appearance of authority only to the extent that such reliance is reasonable" (Hallock v State of New York, 64 NY2d 224, 231 [1984], quoting Ford, 32 NY2d at 473). Here, plaintiff contacted defendant seeking workers' compensation coverage, and defendant assigned its employee who specialized in plaintiff's type of business to assist plaintiff. We therefore conclude that plaintiff established that it reasonably relied upon the authority of defendant's employee to act for defendant. | The mere creation of an agency for some purpose does not automatically invest the agent with apparent authority to bind the principle without limitation. | "Do the acts of an agent, within the scope of his real or apparent authority, bind the principal? " | Principal Agent- Memo 29 -AM.docx | LEGALEASE-00043316-LEGALEASE-00043317 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13729 | Faiola v. Calderone, 275 Pa. 303 | 308+99 | The principal may be held responsible, though the particular acts are done in excess of such instructions (Adams Express Co. v. Schlessinger, 75 Pa. 246; Tanner v. Oil Creek R. R. Co., 53 Pa. 411, 417; Central, etc., Co. v. Thompson, 112 Pa. 118, 133, 3 Atl. 439); or where an agent of limited powers has been in the habit of managing the business committed to his care in a manner involving an enlargement of this powers with the knowledge and acquiescence of his principal, authority is then implied. Fee v. Adams Express Co., 38 Pa. Super. Ct. 83, 91. | Where an agent of limited powers has been in the habit of managing the business committed to his care in a manner involving an enlargement of his powers with the knowledge and acquiescence of his principal, authority is then implied. | Can a principal be responsible for acts done in excess of his instructions? | Principal and Agent - Memo 261 - KC_60658.docx | ROSS-003296599 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 13730 | Stubl v. T.A. Sys., 984 F. Supp. 1075 | 308+81(5) | The law in Michigan is that sales agents are entitled to post-termination commissions for sales they procured during their time at the former employer. | Under Michigan law, sales agents are entitled to post-termination commissions for sales they procured during their time at former employer. | Is an agent entitled to get a post-termination commission if he procured the sale? | 041552.docx | LEGALEASE-00152802-LEGALEASE-00152803 | Condensed, SA | 0.09 | 0 | 1 | 0 | 1 | |
| 13731 | Hartford Elevator v. Lauer, 94 Wis. 2d 571 | 308+60 | It is clear that the agent is liable for damages in the event of a breach of duty and that any losses he caused may be offset against any claim he may have for compensation. However we do not adopt the rigid, mechanical rule urged by the employer that compensation is automatically denied to the agent during the period in which he has committed a willful and significant breach of duty of loyalty. | An agent is liable for damages in the event of breach of duty to his principal and any losses he causes may be offset against any claim he may have for compensation. | Can an agent be held liable for breach of duty to his principal? | 041557.docx | LEGALEASE-00152931-LEGALEASE-00152932 | SA, Sub | 0.59 | 0 | 0 | 1 | 1 | |
| 13732 | Barratt Am. Inc. v. City of Rancho Cucamonga, 37 Cal. 4th 685 | 371+2001 | Barratt sought declaratory relief under section 53728, asking the trial court to impose a penalty on the City for collecting and retaining "special taxes" without voter approval. Section 53728"a part of Proposition 62 ("" 53720"53730)"provides that property tax revenues allocated to the local government be reduced by one dollar for each dollar of revenue attributable to an unauthorized "special tax."4 "Special taxes""those imposed for specific purposes (" 53721)"must be approved by a two-thirds vote of the voters. (" 53722.) "In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. [Citations.]" (Sinclair Paint Co. v. State Bd. of Equalization (1997) 15 Cal.4th 866, 874, 64 Cal.Rptr.2d 447, 937 P.2d 1350 (Sinclair Paint Co.).) | In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. | "In general, are taxes imposed for revenue purposes?" | 046018.docx | LEGALEASE-00153311-LEGALEASE-00153312 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13733 | United States of Am. v. Beasley, 184 F. Supp. 3d 950 | 411+12 | Similar to the facts of Parker, renting ATVs to multiple individuals untrained or inexperienced in their operation might cause fire, safety, or environmental hazards within the National Forest. Additionally, USFS officers testified that the Beasleys' operation blocks other visitors from using the pay station at the entrance to the Derrick Road Dispersed Area and creates vehicle congestion. The Beasleys ran a commercial operation predicated on unloading ATVs at the entrance and dispatching ATVs into the National Forest, and they did so without obtaining the required special-use permit. The Magistrate Court did not err in finding that these facts constituted evidence of activity "affect[ing], threaten[ing], or endanger[ing]" National Forest lands, 36 C.F.R. " 261.1(a)(2), that is subject to 36 C.F.R. " 261.10(c). | Evidence was sufficient to support finding that defendant's son, in delivering all terrain vehicles (ATVs) for use by customers at federal recreation area, was acting as defendant's agent, such that defendant, through her son as agent, had engaged in work activity on national forest land in possible violation of federal regulation, where defendant had twice told forest service officers, when they informed her that she needed special-use authorization to rent out ATVs on federal land, that she believed that her son, who was not employee of defendant's business, could deliver ATVs without permit, where ATVs that son delivered were of type rented out by defendant's business, and where son, in response to forest service officer's question, informed officer that "business was good." 36 C.F.R. S 261.10(c). | Does dispatching ATVs or snowmobiles into a national forest constitute an activity affecting national forest lands? | 047657.docx | LEGALEASE-00153706-LEGALEASE-00153707 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13734 | In re McCarthy, 119 Misc. 257 | 21+8 | The venue constituted prima facie evidence of the place where the affidavit is taken. The omission of the venue, therefore, is not fatal, if by chance the instrument or any part thereof expressly or by implication shows where it was taken. 1 R. C. L. 768. In Robinson v. Cooper, 62 Misc. Rep. 517, 115 N. Y. Supp. 599, it was held that, where the venue having indicated that the affidavit was taken in the county of New York, whereas the officer was appointed for the county of Kings, the affidavit was taken in a county where the notary was not authorized to act. | The omission of the venue from an affidavit is not fatal, if the instrument or any part thereof expressly or by implication shows where it was taken. | Is the omission of venue fatal if the instrument expressly or impliedly shows where it was taken? | Affidavits - Memo 56 - _1HFaz4Xuusa6C7yT76FcVUp-tDAnPUhlg.docx | ROSS-000000209 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 13735 | Boyd v. Am. Bank of Commerce at Wolfforth, 872 S.W.2d 29 | 8.30E+183 | In construing the promissory notes, our primary objective is to ascertain and give effect to the true intention of the parties. To this end, we must examine the entire writing, seeking as best we can to harmonize and give effect to all the provisions in the notes so that none will be rendered meaningless. Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513. | In construing promissory notes, court's primary objective is to ascertain and give effect to true intentions of the parties, seeking to give effect to all the provisions in notes so that none will be rendered meaningless. | What is the primary objective of a court when construing a promissory note? | Bills and Notes - Memo 998 - RK_61317.docx | ROSS-003292310-ROSS-003292311 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |
| 13736 | Mathis v. DCR Mortg. III Sub I, 389 S.W.3d 494 | 8.30E+184 | Here, the note and the deed of trust must be construed together because they were executed by the same parties on the same day, they pertain to the same real property, each document references the other, and the deed of trust is identified as the security for the note. Adams v. First National Bank of Bells/Savoy, 154 S.W.3d 859,The Cadle Co. v. Butler, 951 S.W.2d 901. The rules of interpretation that apply to contracts also apply to notes and deeds of trust. Starcrest Trust v. Berry, 926 S.W.2d 343; see also Sonny Arnold, Inc. v. Sentry Savings Assoc., 633 S.W.2d 811(a mortgage is governed by the same rules of interpretation that apply to contracts); Edlund v. Bounds, 842 S.W.2d 719("It is well established in Texas that the rules of construction governing contracts are applicable to notes, and a note must be constructed as a whole."). A court's primary duty in construing a note and deed of trust, as when construing a contract, is to ascertain the parties' intent from the instrument's language. | A court's primary duty in construing a note and deed of trust, as when construing a contract, is to ascertain the parties' intent from the instrument's language. | What is the primary objective of a court when construing a promissory note? | 009990.docx | LEGALEASE-00154693-LEGALEASE-00154694 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13737 | Bizier v. Globe Fin. Servs., 654 F.2d 1 | 172H+1322 | We begin by noting the underlying purposes and philosophy of TILA. Most important to the case before us, Congress sought in the act to vest considerable enforcement power in "private attorneys general", individual borrowers who by suing lenders for alleged violations could achieve widespread compliance without government intervention. In addition, as courts have consistently recognized, the act is intended to balance scales thought to be weighed in favor of lenders and is thus to be liberally construed in favor of borrowers. See, e. g., N.C. Freed Co. v. Board of Governors of the Federal Reserve System, 473 F.2d 1210, 1214 (2d Cir.), cert. denied, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973); Shepard v. Finance Associates of Auburn, Inc., 366 Mass. 182, 316 N.E.2d 597, 603 | Truth in Lending Act is intended to balance scales sought to be weighed in favor of lenders and is thus to be liberally construed in favor of borrowers. Truth in Lending Act, § 102 et seq. as amended 15 U.S.C.A. § 1601 et seq. | Should Truth in Lending Act (TILA) be constructed in favor of lenders or borrowers? | 013702.docx | LEGALEASE-00154378-LEGALEASE-00154379 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 13738 | Osage Nation v. Bd. of Commissioners of Osage Cty., 394 P.3d 1224 | 228+181(6) | Facts outside the pleadings presented by a motion to dismiss will not convert the motion to one for summary judgment when the facts are used to show a lack of jurisdiction unless the facts are part of an element to the cause of action pled by a party or a defense thereto. Contested jurisdictional facts are adjudicated by the finder of fact for that proceeding and not by a motion to dismiss or summary judgment. This Court has treated standing as jurisdictional. A preclusion defense may be raised on a motion to dismiss, but we need not analyze this issue because assuming it would apply, the trial court clearly committed error in relying on the federal litigation to determine standing in the state court. | Contested jurisdictional facts are adjudicated by the finder of fact and not by a motion to dismiss or summary judgment. | Can contested jurisdictional facts not be adjudicated on either a motion to dismiss or for summary judgment? | Pretrial Procedure - Memo # 9277 - C - VA_61241.docx | ROSS-003294197-ROSS-003294198 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13739 | Brown v. Knowles, 307 P.3d 915 | 307A+622 | To identify the nature of the injury asserted we look to the "facial allegations in [the] complaint." Knowles's Third Amended Complaint alleged that Brown's conduct directly injured Knowles in several ways, including failure to pay wages, bonuses, and overtime. The complaint does not allege that Brown misused corporate assets, converted corporate funds to his own use, or otherwise injured the corporation. Because Knowles alleged no injury to the corporation, International Steel could not have asserted Knowles's claim prior to its bankruptcy filing. Thus, Knowles's veil-piercing claim did not become property of the estate. | To identify the nature of the injury asserted, courts look to the facial allegations in complaint. | "To identify the nature of the injury asserted, do courts look to the facial allegations in a complaint?" | 038989.docx | LEGALEASE-00154543-LEGALEASE-00154544 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13740 | Nat'l Westminster Bank USA v. Century Healthcare Corp., 885 F. Supp. 601 | 101+1058 | Lender liability is predicated on an unmistakable showing that the subservient corporation in reality has no separate, independent existence of its own and was being used to further the purposes of the dominant corporation. Suggestions by a major lender for a defaulted debtor, even when coupled with a threat of the exercise of its legal rights if the debtor does not comply, are both commonplace and completely proper. See In re Prima Co., 98 F.2d 952, 965 (7th Cir.1938), cert. denied, 305 U.S. 658, 59 S.Ct. 358, 83 L.Ed. 426 (1939) ("No doubt the debtor, because of its inability to meet its maturing obligations, acquiesced in Harris' recommendations [to install new management], but this we think is not sufficient to constitute domination of its will."). There is nothing inherently wrong with suggesting what course the debtor ought to follow. Unless the creditor has become, in effect, the alter ego of the debtor, he will not be held to an ethical duty in excess of the morals of the market place. In re Teltronics Services, Inc., 29 B.R. 139, 171 (Bankr.E.D.N.Y.1983). | Lender liability is predicated on unmistakable showing that subservient corporation in reality has no separate, independent existence of its own and was being used to further purposes of dominant corporation. | What is lender liability predicated on? | Bills and Notes-Memo 1200-SB_61827.docx | ROSS-003322359-ROSS-003322360 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13741 | Swift & Co. v. Bankers Tr. Co., 280 N.Y. 135 | 8.30E+67 | The checks executed in Illinois were, under the law of that State, payable to bearer, could be transferred without indorsement, and constitute authorization to a bank to pay the checks to its bearer without indorsement by the non-existent payee named therein. If the rights and obligations of the parties to the instruments are regulated by the law of the State of New York, where the checks were payable, the instruments were not payable to bearer and payment without indorsement of the person named as payee was unauthorized by the drawer.The problem presented upon this appeal is whether the rights and obligations of the drawer and the bank are to be measured by the law of the State where the instruments were drawn or by the law of the State where they were made payable. | Under Illinois law, checks which corporate maker's clerk fraudulently induced maker to make payable to a nonexistent person, under belief that such a person actually existed, were payable to bearer, could be transferred without indorsement, and authorized bank to pay the checks without indorsement and without liability for payment after forged indorsement by the clerk. Smith-Hurd Stats.Ill. c. 98, S 29. | Under what circumstances checks be payable to bearer? | 010856.docx | LEGALEASE-00155384-LEGALEASE-00155385 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 13742 | Bank of New York Mellon v. Deane, 41 Misc. 3d 494 | 83E+417 | Perhaps as a result, the meaning of terms that have particular effect in negotiable instruments law can become blurred. For example, in a recent opinion the Second Department held that the plaintiff "failed to establish how or when it became the lawful holder of the note either by delivery or valid assignment." (See Citimortgage, Inc. v. Stosel, 89 A.D.3d 887, 888, 934 N.Y.S.2d 182 [2d Dept. 2011]; see also Deutsche Bank Nat. Trust Co. v. Rivas, 95 A.D.3d 1061, 945 N.Y.S.2d 328 [2d Dept. 2012]; Morrison v. Schmeman, 166 A.D. 264, 266, 151 N.Y.S. 607 [1st Dept. 1915] ["plaintiff holds the bond and mortgage by written assignment"].) Whatever the rights of a person to enforce an instrument by reason of delivery or assignment, a person is not a "holder" by reason of delivery or assignment alone, unless delivery is made of a bearer instrument. | Whatever the rights of a person to enforce an instrument by reason of delivery or assignment, a person is not a "holder" by reason of delivery or assignment alone, unless delivery is made of a bearer instrument. | Can a person become a holder by reason of delivery? | Bills and Notes-Memo 1208-PR_61519.docx | ROSS-003321714 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 13743 | Nat'l Union Fire Ins. Co. Pittsburgh, Pa. v. Proskauer Rose Goetz & Mendelsohn, 165 Misc. 2d 539 | 83E+416 | A certificate of deposit is in effect a loan to a bank by the depositor for an agreed period of time at a stated rate of interest (Murray Director Affiliates v. Laventman, 70 Misc.2d 571, 334 N.Y.S.2d 192 [Civ.Ct. N.Y. County 1972] ), whereby the relation of debtor and creditor between the bank and the depositor is created (see generally, Michie on Banks and Banking, Vol 5B, " 313 et seq. [hereinafter cited as Michie ] ). The certificate of deposit, even if nonnegotiable, can be assigned (Michie, op. cit., at 385), it can also be passed by delivery without indorsement by the person to whose order it is made payable (Michie, op. cit., " 321 at 401). | Certificate of deposit, even if nonnegotiable, can be assigned and can be passed by delivery without endorsement by person to whose order it is made payable. | Can a certificate of deposit be assigned by delivery? | 010863.docx | LEGALEASE-00155336-LEGALEASE-00155337 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 13744 | Corp. Comm'n of N. Carolina v. Wilkinson, 201 N.C. 344 | 83E+455 | 1 J. E. Wilkinson signed the note under seal as maker, and on the reverse side Meta S. Wilkinson, his wife, and George Wilkinson, his brother, wrote their respective names before the note was delivered to the payee. Under the law in effect prior to the adoption of the Negotiable Instruments Act the parties to a negotiable instrument were permitted to prove as between themselves whether they had affixed their signatures as joint promisors, as guarantors, or as indorsers; but under the present statute any person who writes his name on such instrument otherwise than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates his intention to be bound in some other capacity. C. S. " 3044; Lilly v. Baker, 88 N. C. 151; Barden v. Hornthal, 151 N. C. 8, 65 S. E. 513; Wrenn v. Cotton Mills, 198 N. C. 89, 150 S. E. 676. | One writing name on negotiable instrument otherwise than as maker, drawer, or acceptor is deemed indorser, unless contrary intention is indicated. C.S. S 3044. | Can a person be deemed to be an indorser unless he clearly indicates by appropriate words? | 010865.docx | LEGALEASE-00155344-LEGALEASE-00155345 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 13745 | Palmer v. Champion Mortg., 465 F.3d 24 | 172H+1342 | This emphasis on objective reasonableness, rather than subjective understanding, is also appropriate in light of the sound tenet that courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer"a consumer who is neither particularly sophisticated nor particularly dense. See Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327"28 (7th Cir.1999) (explaining that TILA disclosures should be viewed from the perspective of an ordinary consumer, not a federal judge); see also Edmondson v. Allen"Russell Ford, Inc., 577 F.2d 291, 296 (5th Cir.1978) ("We must assess the adequacy of disclosure ... by the audience for which disclosure was intended."). Thus, we turn to the question of whether the average consumer, looking at the Notice objectively, would find it confusing. We conclude that she would not. | Courts must evaluate the adequacy of Truth in Lending Act (TILA)disclosures from the vantage point of a hypothetical average consumer, a consumer who is neither particularly sophisticated nor particularly dense. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | What is an average consumer? | Consumer Credit - Memo 169 - RK.docx | LEGALEASE-00044623-LEGALEASE-00044624 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 13746 | Jackson v. Grant, 890 F.2d 118 | 172H+1556 | Because the loan transaction was not consummated until late April and Jackson received no notice of her TILA cancellation right and the expiration date at that time, Jackson's right to rescind extended three years and her request for rescission several months before her balloon payment was due was timely. We reach this conclusion without great enthusiasm, for Jackson received many of the benefits of the agreement she is now rescinding. Nevertheless, Congress did not intend for TILA to apply only to sympathetic consumers; Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions. | Failure to notify borrower that she had right to rescind real estate loan transaction under Truth in Lending Act extended borrower's right to rescind for three years after transaction was consummated. Truth in Lending Act, SS 102, 125(a), 15 U.S.C.A. SS 1601, 1635(a); Truth in Lending Regulations, Regulation Z, S 226.23(a)(3), 15 U.S.C.A. foll. S 1700. | Does a failure to notify borrower that he had a right to rescind the transaction under TILA extended the borrower's right to rescind for three years? | 013740.docx | LEGALEASE-00155743-LEGALEASE-00155744 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 13747 | Brown v. Marquette Sav. & Loan Ass'n, 686 F.2d 608 | 172H+1537 | As an initial matter we note that the violation before us is a purely technical one, and that the plaintiffs do not claim that they were misled or suffered any actual damages as a result of the statutory violation. It is well settled, however, that a borrower need not have been so deceived to recover the statutory penalty. See, e.g., Smith v. Chapman, 614 F.2d 968, 971 (5th Cir. 1980); Dzadovsky v. Lyons Ford Sales, Inc., 593 F.2d 538, 539 (3d Cir. 1979). | Borrower need not have been so misled as to have suffered actual damages as result of violation of Truth in Lending Act to recover statutory penalty. Truth in Lending Simplification and Reform Act of 1980, S 601 et seq., 15 U.S.C.A. S 1601 note; Truth in Lending Act, S 130(d), 15 U.S.C.A. S 1640(d). | Can a borrower recover the statutory penalty for a technical violation without showing that he has been deceived by the statutory violation? | 013752.docx | LEGALEASE-00155480-LEGALEASE-00155481 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 13748 | Reyes v. New York Univ., 305 A.D.2d 392 | 141E+1234 | Institutions of higher education do maintain contractual relationships with their students, and can, under appropriate facts, be liable for breaches regarding scholarships. (see Aronson v. University of Mississippi, 828 So.2d 752 [Miss.]; Imam v. Illinois Inst. of Tech., 2002 WL 88566, 2002 U.S. Dist. Lexis 962 [N.D. Ill., Jan. 23, 2002] ) | Institutions of higher education maintain contractual relationships with their students, and can, under appropriate facts, be liable for breaches regarding scholarships. | Can universities be liable for breach of contract regarding scholarships? | 017089.docx | LEGALEASE-00154837-LEGALEASE-00154838 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13749 | Keles v. Hultin, 144 A.D.3d 987 | 141E+1000 | The courts of this State "have long been reluctant to intervene in controversies involving purely academic determinations" (Matter of Zanelli v. Rich, 127 A.D.3d 774, 775, 8 N.Y.S.3d 217), and thus "[c]ourts retain a "restricted role" in dealing with and reviewing controversies involving colleges and universities" (Maas v. Cornell Univ., 94 N.Y.2d 87, 92, 699 N.Y.S.2d 716, 721 N.E.2d 966, quoting Gertler v. Goodgold, 107 A.D.2d 481, 487, 487 N.Y.S.2d 565). "While decisions of academic institutions are not immune from judicial scrutiny, review should be restricted to special proceedings under CPLR article 78, and only to determine whether the decision was arbitrary, capricious, irrational, or in bad faith" (Keles v. Trustees of Columbia Univ. in the City of N.Y., 74 A.D.3d 435, 435, 903 N.Y.S.2d 18). | Courts retain a restricted role in dealing with and reviewing controversies involving colleges and universities. | Do courts have a restricted role in reviewing controversies involving universities? | Education - Memo #266 - C - ATS_61537.docx | ROSS-003295242-ROSS-003295243 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13750 | Klouda v. Pechousek, 414 Ill. 75 | 315+333 | Did the deeds sever the joint tenancies existing between Pechousek and his wife? It is fundamental that four coexisting unities are necessary and requisite to the creation and continuance of a joint tenancy; namely, unity of interest, unity of title, unity of time, and unity of possession. Any act of a joint tenant which destroys any of these unities operates as a severance of the joint tenancy and extinguishes the right of survivorship. Van Antwerp v. Horan, 390 Ill. 449, 61 N.E.2d 358, 161 A.L.R. 1133; Tindall v. Yeats, 392 Ill. 502, 64 N.E.2d 903. Thus, a conveyance by one joint tenant of his entire interest destroys the unities of title and interest and works a severance. Van Antwerp v. Horan. In discussing the essential unity of interest, Blackstone observes: "One joint tenant cannot be entitled to one period of duration or quantity of interest in lands, and the other to a different; one cannot be tenant for life and the other for years; one cannot be tenant in fee, and the other in tail." (2 Blackstone's Commentaries, 181.) The same authority, in discussing the severance of a joint tenancy through destruction of the unity of interest, points out that if there be two joint tenants for life, and the inheritance is purchased by or descends upon either, a severance will result. (2 Blackstone's Commentaries, 185.) A conveyance by one joint tenant of a remainder interest, reserving a life estate, will sever the joint tenancy. Clerk v. Clerk, 2 Vern. 323. In each case the unity of interest is destroyed. The interest of one joint tenant no longer remains the same as that of the other. | Any act of a joint tenant which destroys any one of its necessarily coexistent unities, operates as a severance of the joint tenancy and extinguishes the right of survivorship. | "Where one joint tenant makes an agreement to convey, will the joint tenancy be severed resulting in a tenancy in common?" | 018297.docx | LEGALEASE-00154819-LEGALEASE-00154820 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 13751 | Drigotas v. Doyle, 85 F. Supp. 908 | 200+173 | In an able discussion of the law of contributory negligence in such cases, the Maine Court said, 130 Me. at page 80, 153 A. at page 890: In the protection of his person or property when about to emerge from a position of security and step onto a traveled highway a pedestrian must exercise due care. The decisions are unanimous. He must do what the ordinarily intelligent and prudent person in like situation would do. Usually when about to step from a city curb or country road margin on a highway, to cross or to traverse it, a pedestrian is not charged with the duty to look and listen. Shaw v. Bolton, 1923, 122 Me. 232, 119 A. 801." | Usually, pedestrian about to step from city curb or country road margin in Maine onto highway is not charged with duty to look and listen. | Is pedestrian charged or negligent with the duty to look? | Highways- Memo 421- ANM_61959.docx | ROSS-003323555 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 13752 | Drigotas v. Doyle, 85 F. Supp. 908 | 200+173 | In an able discussion of the law of contributory negligence in such cases, the Maine Court said, 130 Me. at page 80, 153 A. at page 890: In the protection of his person or property when about to emerge from a position of security and step onto a traveled highway a pedestrian must exercise due care. The decisions are unanimous. He must do what the ordinarily intelligent and prudent person in like situation would do. Usually when about to step from a city curb or country road margin on a highway, to cross or to traverse it, a pedestrian is not charged with the duty to look and listen. Shaw v. Bolton, 1923, 122 Me. 232, 119 A. 801." | Usually, pedestrian about to step from city curb or country road margin in Maine onto highway is not charged with duty to look and listen. | Is a pedestrian charged with the duty to listen? | Highways- Memo 422- SB_61902.docx | ROSS-003294520-ROSS-003294521 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 13753 | Gross v. United Engineers & Constructors Inc., 224 Pa. Super. 233 | 302+37 | Any information subsequently supplied by plaintiff upon deposition requested by defendant cannot be used to supply the missing allegata of the Complaint. The sufficiency of the Complaint is governed by the facts alleged therein and the fact that the lacking information subsequently was or could be supplied is not governing. As summarized in 2A Anderson Pa.Civil Practice s 1019.8 (1969 Edition), page 86: ". . . the fact that the stipulation filed by both parties contains a specification of the damages not set forth in the complaint does not excuse the plaintiff from properly pleading the information in the complaint since "the complaint should contain all necessary information in order to establish the plaintiff's cause of action," and liability cannot be predicated upon facts not set forth in the complaint. | Sufficiency of complaint is governed by facts alleged therein and fact that lacking information subsequently was or could be supplied is not governing. | Is the sufficiency of the complaint governed by the facts alleged therein? | Pleading - Memo 556 - RMM_62364.docx | ROSS-003295059-ROSS-003295060 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13754 | Laurie v. Ezard, 595 S.W.2d 336 | 307A+581 | A dismissal for failure to prosecute should not be based on remote, even if extended, periods of inactivity. Vonder Haar Concrete Company v. Edwards-Parker, Inc., supra, 561 S.W.2d at 139. In determining whether to dismiss a dormant case, we believe that the time a case has been on file and its prior inactivity may be considered. However, to dismiss a case for prior inactivity while it was being pursued could cause many cases to be dismissed which should not be. Human nature being what it is, attorneys and parties may not always act in a diligent manner. Our examination of the cases cited by the parties and other cases leads us to believe that only in an unusual situation should a case be dismissed for prior inactivity, on a party's motion, at a time when it appeared to be prosecuted toward trial. We are aware that the trial judge here commendably, through diligence and hard work, controls and moves his docket and we reluctantly interfere in such matters. | In determining whether to dismiss dormant case, time the case has been on file and its prior inactivity may be considered; however, only in unusual situation should case be dismissed for prior inactivity. | What should be considered in determining whether to dismiss dormant case? | Pretrial Procedure - Memo # 9692 - C - SK_61593.docx | ROSS-003322688-ROSS-003322689 | Condensed, Order, SA | 0.79 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13755 | Hahn v. Binder, 33 A.D.2d 903 | 307A+581 | Order entered August 23, 1968 denying the plaintiffs motion to open their default and to restore the cause to the Trial Term Calendar unanimously reversed, on the law, on the facts and in the exercise of discretion, without costs or disbursements. The plaintiffs application is remanded to Trial Term, Part I, to "be heard and determined by the justice who presided in the calendar part at the time the cause was assigned" (See Rules of Supreme Court, New York and Bronx Counties, s 660.5(c) (3)(i), previously numbered Rule V(3)(c)(i)); 22 NYCRR 660.5(c)(3)(i) the movants being directed to submit a further affidavit of merit, and being permitted to present any further affidavits, if so advised. We agree with the Trial Term that there was a lack of cooperation on the part of the plaintiffs attorneys in complying with the rules of the "blockbuster" part. The late appearance of counsel on the calendar call not having been willful, the extreme finality of dismissal may not have been justified (Warbett v. Polokoff, 21 A.D.2d 771, 250 N.Y.S.2d 633), but resolution of that question shall await consideration of all papers, including any additional affidavits which may be submitted to the justice in the calendar part. | Where late appearance of counsel on calendar call was not willful dismissal may not have been justified. N.Y.Ct.Rules, S 660.5(c) (3) (i). | Is dismissal justified where the late appearance of counsel on calendar call was not willful? | 039225.docx | LEGALEASE-00155254-LEGALEASE-00155255 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13756 | Wood v. Cosme, 447 S.W.2d 746 | 307A+581 | See also Waggoner v. Knight, 231 S.W. 357, 360, (Tex.Com.App.); 34 Tex.Jur.2d, Sec. 507, pp. 582"583, and cases there cited. See and compare also, Trammell v. Rosen, 106 Tex. 132, 157 S.W. 1161; Vance v. Wilson, 382 S.W.2d 107, 109, (Tex.Sup.). To prevent the bar of the prior judgment, the record must show that before its rendition the involved party withdrew such pleadings and issue, or that the court refused to decide it. Of course, where a party fails to appear and prosecute his case, the trial court cannot try the case for him, and the only remedy is to dismiss the case. Smock v. Fischel, 146 Tex. 397, 207 S.W.2d 891. We have none of the latter three defenses before us in the case at bar. | Where party fails to appear and prosecute his case, trial court cannot try case for him, and only remedy is to dismiss the case. | Can court try the case for a party where party fails to appear and prosecute his case? | Pretrial Procedure - Memo # 9737 - C - NE_61616.docx | ROSS-003294261-ROSS-003294262 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13757 | Karen Stavins Enterprises v. Cmty. Coll. Dist. No. 508, 2015 IL App (1st) 150356 | 307A+681 | In support of its allegations in this regard, City Colleges attached the affidavit of its vice chancellor to its section 2"615 motion. However, as noted earlier, the only facts to be considered in ruling on a section 2"615 motion are those set forth in the complaint under attack. A section 2"615 motion cannot be supported by affidavit or by reference to facts not contained within the complaint.Consequently, in determining whether the complaint sets forth a cause of action upon which relief might be granted to the plaintiff, we have not considered any of the factual allegations asserted by City Colleges in its section 2"615 motion or in its brief before this court that are not contained within the complaint. See Urbaitis, 143 Ill.2d at 476, 159 Ill.Dec. 50, 575 N.E.2d 548 ("evidentiary material outside of the pleadings may not be considered in ruling on a section 2"615 motion"). | Motion to dismiss cannot be supported by affidavit or by reference to facts not contained within the complaint. S.H.A. 735 ILCS 5/2-615. | Can a motion to dismiss be supported by affidavit or by reference to facts not contained within the complaint? | Pretrial Procedure - Memo # 9819 - C - BP_61776.docx | ROSS-003296445-ROSS-003296446 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 13758 | Harris v. McKay, 138 Va. 448 | 308+92(1) | That case is not controlling here, since in the instant case the persons with whom the promise to assume and pay was made are suing the assumers and alleging that one of the assumers acted through a duly authorized agent. Where, as here, the agent's authority is proved, no question of privity can arise. The doctrine of principal and agent whether disclosed or undisclosed recognizes that privity of contract exists. The act of the agent is the act of the principal. | Where an agent's authority is proved, no question of privity can arise. The doctrine of principal and agent, whether disclosed or undisclosed, recognizes that privity of contract exists between the principal and one dealing with the agent. The act of the agent is the act of the principal. | Does the doctrine of principal and agent recognize that privity of contract exists? | Principal and Agent - Memo 343 - RK.docx | LEGALEASE-00045512-LEGALEASE-00045513 | SA, Sub | 0.38 | 0 | 0 | 1 | 1 | |
| 13759 | Baker v. City of E. Orange, 95 N.J.L. 365 | 371+2001 | A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government. City of Camden v. Allen, 26 N. J. Law, 398. Taxes are, in legal contemplation, neither debts nor contractual obligations, but are, in the strictest sense of the word, exactions (Board of Freeholders of Atlantic County v. Weymouth, 68 N. J. Law, 652, 54 Atl. 458; Paterson Avenue, etc., Road Commissioners v. Freeholders of Hudson, 44 N. J. Law, 571; Id., 45 N. J. Law, 173; 37 Cyc. 710; 26 R. C. L. p. 25, par. 11; see Bergen v. Clarkson, 6 N. J. Law, 365), although in the acts taxing railroad and canal property and miscellaneous corporations passed in 1884 (P. L. 1884, p. 142, " 12, and page 232, " 6) the tax levied under those acts is declared in the statute to be a debt.] | "Taxes" are, in legal contemplation, neither debts nor contractual obligations, but are, in the strictest sense of the word, exactions. | "In legal contemplation, are taxes either debts or contractual obligations?" | 046094.docx | LEGALEASE-00155046-LEGALEASE-00155047 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13760 | Ragen v. Wolfner, 43 Ill. App. 2d 70 | 228+185.1(1) | Plaintiff further complains of a failure to comply with the rule in that the exhibits attached to the affidavits were not sworn or certified copies. It is true that the exhibits were not separately sworn to as true copies of their originals, but the references thereto in the text of the affidavits were such as to render the exhibits verified copies in each instance. (Wainscott v. Penikoff, 287 Ill.App. 78, 82, 4 N.E.2d 511.) | Although exhibits attached to affidavits for summary judgment were not separately sworn to as true copies of their originals, references thereto in the text of the affidavits rendered the exhibits verified copies. Supreme Court Rules, rule 15(1), S.H.A. ch. 110, S 101.15(1). | Are exhibits attached thereto in an affidavit considered verified? | Affidavits - Memo 89 - _1w_Joh4KNkEtcktAWV9ATTIAm0F58NXKm.docx | ROSS-000000272-ROSS-000000273 | Condensed, SA | 0.36 | 0 | 1 | 0 | 1 | |
| 13761 | Spencer v. Sterling Bank, 63 Cal. App. 4th 1055 | 83E+427 | As relevant, an "indorsement" is a signature that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument or (2) restricting payment of the instrument. (" 3204, subd. (a).) An "indorser" is a person who makes an indorsement. (" 3204, subd. (b).) If an indorsement is made by the holder of an instrument and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. (" 3205, subd. (a).) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank endorsement." When indorsed in blank, an instrument becomes payable to the bearer and may be negotiated by transfer of possession alone until specially indorsed. (" 3205, subd. (b).) The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable. (" 3205, subd. (c).) | If indorsement is made by holder of instrument and indorsement identifies person to whom it makes instrument payable, it is a "special indorsement." West's Ann.Cal.Com.Code S 3205(a). | Is it a special indorsement if the holder of an instrument makes an indorsement identifying a person to whom it is payable? | 010743.docx | LEGALEASE-00156403-LEGALEASE-00156404 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13762 | State v. Vampran, 459 So. 2d 1333 | 96H+100(2) | In imposing sentence, the trial judge emphasized his belief that defendant, by engaging in the distribution of drugs, was contributing to the "degradation of society". He indicated that he hoped by imposing a sentence of imprisonment to send a message to other drug offenders in the community. While the judge's concerns in regard to the seriousness of the drug problem in our society were valid, it is apparent that his outrage prevented him from imposing a properly individualized sentence. Similarly, a desire to teach others a lesson is not an acceptable basis for the penalty imposed on the defendant. State v. LaFleur, 391 So.2d 445 (La.1980); State v. Touchet, 372 So.2d 1184 (La.1979). | Desire to teach others a lesson is not an acceptable basis for penalty imposed on a defendant, and trial judge in imposing sentence for distribution of cocaine erred in hoping that, by imposing sentence of imprisonment, he would send message to other drug offenders in community, and trial judge also erred in relying upon considerations for which there was no supporting factual evidence in the record. LSA-R.S. 40:967, subd. A; LSA-C.Cr.P. art. 894.1; U.S.C.A. Const.Amend. 8. | Is a desire to teach others a lesson an acceptable basis for imposing a sentence? | Bribery - Memo 1071 - C - ML_65556.docx | ROSS-003295596-ROSS-003295597 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 13763 | Kaptein By & Through Kaptein v. Conrad Sch. Dist., 281 Mont. 152 | 141E+954 | We determine that Kapteins' claim of a right to participate, like the relators in Bartmess, must be analyzed under a middle-tier analysis. We recognized in Bartmess that a student's right to participate in extracurricular activities, although not a fundamental right, is "clearly subject to constitutional protection." Bartmess, 726 P.2d at 805. Under a middle-tier analysis there must be a "balancing of the rights infringed and the governmental interest to be served by such infringement." Butte Community Union v. Lewis (1986), 219 Mont. 426, 434, 712 P.2d 1309, 1314. Thus, in the present context, the right to participate must be balanced against the School District's interests in restricting participation to students enrolled in the public school system. Consistent with the middle-tier analysis conducted in Bartmess, we must first determine whether the classification based upon enrolled students is reasonable. We then examine whether the governmental interest in making this classification based upon enrollment is more important than Tami Kaptein's interest in participating in existing extracurricular activities. | Student's right to participate in extracurricular activities, although not fundamental right, is clearly subject to constitutional protection. | Is a students right to participate in extracurricular school activities a fundamental right? | Education - Memo # 277 - C - KS_62020.docx | ROSS-003281208-ROSS-003281209 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 13764 | Catalina Foothills Unified Sch. Dist. No. 16 v. La Paloma Prop. Owners Ass'n, 238 Ariz. 510 | 148+9 | Political subdivisions, including school districts, "do not have inherent powers of eminent domain and may only exercise those powers that are statutorily delegated to them." Id., " 12; see City of Phoenix v. Donofrio, 99 Ariz. 130, 133, 407 P.2d 91 (1965) ("[A] court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions."). | Political subdivisions, including school districts, do not have inherent powers of eminent domain and may only exercise those powers that are statutorily delegated to them. | Do schools districts have inherent powers? | Education - Memo # 291 - C - KS_62341.docx | ROSS-003298680-ROSS-003298681 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |
| 13765 | Crosrol Carding Developments v. Gunter & Cooke, 12 N.C. App. 448 | 307A+694 | he court's order is erroneous, however, insofar as it purports to dismiss plaintiff's action with prejudice in the event Carding Canada is not made a party within forty days from the date of the order. Dismissal is appropriate where, as here, the party ordered joined is not subject to the court's jurisdiction. G.S. s 1A-1, Rule 12(b)(7). However, dismissal for failure to join a necessary party is not a dismissal on the merits and may not be with prejudice. G.S. s 1A-1, Rule 41(b). The same is true, of course, where the party ordered joined is not a necessary party but is a proper party which the court, in its discretion, decides should be joined.The following language relating to Rule 12(b)(7) of the Federal Rules of Civil Procedure is applicable also to our Rule 12(b)(7). | Dismissal for failure to join a necessary party is not dismissal on the merits and may not be with prejudice. Rules of Civil Procedure, rule 41(b), G.S. S 1A-1. | Is a dismissal based upon a failure to join a necessary party a dismissal of the action without prejudice? | 024639.docx | LEGALEASE-00155887-LEGALEASE-00155888 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13766 | Frigard v. United States, 862 F.2d 201 | 170A+1837.1 | Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court. Black v. Payne, 591 F.2d 83, 86 (9th Cir.), cert. denied, 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979). Here, however, the bar of sovereign immunity is absolute: no other court has the power to hear the case, nor can the Frigards redraft their claims to avoid the exceptions to the FTCA. Thus, the district court did not abuse its discretion in dismissing the action with prejudice. | Ordinarily, case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice. | Should a case dismissed for lack of subject matter jurisdiction be dismissed without prejudice so that a plaintiff can reassert his claims in a competent court? | 024646.docx | LEGALEASE-00155896-LEGALEASE-00155897 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13767 | Arrow Marble v. Estate of Killion, 441 S.W.3d 702 | 307A+690 | A dismissal for failure to appear at trial or for want of prosecution should be without prejudice. See Atty Gen. v. Rideaux, 838 S.W.2d 340, 342 (Tex.App.-Houston 1st Dist. 1992, no writ) ("A trial court authority to dismiss cases for want of prosecution does not confer upon it the authority to adjudicate and deny the merits of the dismissed claim."). An order dismissing a claim with prejudice when only dismissal without prejudice was appropriate can be challenged through a postjudgment motion. See El Paso Pipe & Supply v. Mountain States Leasing, Inc., 617 S.W.2d 189, 190 (Tex.1981). While admittedly erroneous, a dismissal with prejudice that should have been without prejudice is not automatically void it is merely voidable. Id.; Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 863"64 (Tex.2010) (holding that erroneous order dismissing case with prejudice for want of prosecution "must be attacked directly in order to prevent the order from becoming final.") | While admittedly erroneous, a dismissal with prejudice that should have been without prejudice is not automatically void-it is merely voidable. | "While admittedly erroneous, is a dismissal with prejudice that should have been without prejudice not automatically void-it is merely voidable?" | 024653.docx | LEGALEASE-00155906-LEGALEASE-00155907 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13768 | Skevofilax v. Aventis Pasteur, 167 Md. App. 1 | 307A+690 | Dismissal with prejudice is a harsh sanction that must be proportionate to the transgression of the party whose action is dismissed. See Doe v. Cassel, 403 F.3d 986, 990 (8th Cir.2005). To warrant dismissal with prejudice, therefore, plaintiff must have acted "intentionally as opposed to accidentally or involuntarily." Id. | To warrant dismissal of the complaint with prejudice, the plaintiff must have acted intentionally, as opposed to accidentally or involuntarily. | "To warrant dismissal of the complaint with prejudice, should the plaintiff have acted intentionally?" | Pretrial Procedure - Memo # 10363 - C - NS_62088.docx | ROSS-003279391 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |
| 13769 | Storedahl Properties v. Clark Cty., 143 Wash. App. 489 | 268+956(1) | In contrast, charges imposed for purposes other than raising money to fund the public treasury, such as for regulating activities, are not taxes and are not subject to constitutional taxation constraints. Samis Land Co. v. City of Soap Lake, 143 Wash.2d 798, 805, 23 P.3d 477 (2001); Dean v. Lehman, 143 Wash.2d 12, 25, 18 P.3d 523 (2001). Where a charge relates to a direct benefit or service, this court generally does not consider it a tax or assessment. King County Fire Prot. Dists. No. 16, No. 36, & No. 40 v. Housing Auth. of King County, 123 Wash.2d 819, 833, 872 P.2d 516 (1994). Instead, this court refers to such charges as regulatory fees, a rather broad category that can "include a wide assortment of utility customer fees, utility connection fees, garbage collection fees, local storm water facility fees, user fees, permit fees, parking fees, registration fees, filing fees, and license fees." Samis, 143 Wash.2d at 805, 23 P.3d 477. | Where a charge relates to a direct benefit or service, the court generally does not consider it a tax or assessment; instead, the court refers to such charges as regulatory fees, a rather broad category that can include a wide assortment of utility customer fees, utility connection fees, garbage collection fees, local storm water facility fees, user fees, permit fees, parking fees, registration fees, filing fees, and license fees. | "Where a charge is related to a direct benefit or service, will it be considered a tax?" | Taxation - Memo # 990 - C - JL_62492.docx | ROSS-003279585-ROSS-003279586 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13770 | State v. Cunningham, 344 N.C. 341 | 3.77E+10 | The argument that the defendant had committed the misdemeanor of communicating a threat was proper. The elements of communicating a threat are that the defendant threatened a person, that the defendant communicated the threat to that person, that the defendant made the threat in such a manner and under such circumstances that a reasonable person would believe the threat was likely to be carried out, and that the person threatened believed that the threat was likely to be carried out. N.C.G.S. " 14"277.1 (1993); State v. Evans, 40 N.C.App. 730, 253 S.E.2d 590, appeal dismissed, 297 N.C. 456, 256 S.E.2d 809 (1979). The defendant made his threat three times. Officer Lyles asked the defendant if he was threatening him, and the defendant repeated his threat. Officer Villines, who was present at the time, testified to these facts. Clearly, the evidence supported the prosecutor's argument, and the circumstances supported arresting the defendant for the misdemeanor of communicating a threat. | Elements of communicating a threat are that: defendant threatened person; communicated threat to that person; made threat in such a manner and under such circumstances that reasonable person would believe threat was likely to be carried out; and person threatened believed that threat was likely to be carried out. G.S. S 14-277.1. | What are the elements of communicating a threat? | 046659.docx | LEGALEASE-00156070-LEGALEASE-00156071 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 13771 | In Interest of M.M., 571 So. 2d 112 | 67+7 | Appellant was charged with and convicted of attempted residential burglary. At the end of the state's case and again at the close of the evidence, appellant moved for judgment of acquittal. The trial court denied the motion. A motion for judgment of acquittal challenges the legal sufficiency of the evidence. The standard for this court's review is whether there is substantial competent evidence to support the verdict. Williams v. State, 386 So.2d 538 (Fla.1980). A conviction for the crime of burglary requires proof of three essential elements: (1) knowing entry into a structure; (2) knowledge that such entry is without permission; and (3) criminal intent to commit an offense within such structure. " 810.02, Fla.Stat. (1989). Additionally, ownership of the building or structure is a material element of the crime and must be proven as alleged in order to support a conviction for burglary. Smith v. State, 96 Fla. 30, 117 So. 377 (1928); Sifford v. State, 202 So.2d 14 (Fla.1967); In the Interest of M.E., 370 So.2d 795 (Fla.1979); Kirkland v. State, 366 So.2d 871 (Fla. 4th DCA 1979) (failure to plead and prove ownership is fatal to the state's case on burglary). | Ownership of building or structure is material element of burglary and must be proven as alleged in order to support conviction. West's F.S.A. S 810.02. | Is ownership of the building or structure an essential element of burglary? | Burglary - Memo 267 - RK_62271.docx | ROSS-003278780-ROSS-003278781 | Order, SA, Sub | 0.87 | 1 | 0 | 1 | 1 | 1 |
| 13772 | Kidd v. Commonwealth, 273 Ky. 300 | 67+9(1) | It is to be noted, however, that this statute is different from others, e.g., section 1163, Statutes, which provides a penalty for "Any person who shall forcibly break and enter into any railroad depot [or] car," etc., and the common-law crime of burglary, which is "a breaking and entering the mansion house of another in the night with intent to commit some felony within the same, whether such felonious intent be executed or not." Hayes v. Commonwealth, 171 Ky. 291, 188 S.W. 415, 417. This statute makes it a crime simply to "break any" storehouse with an intention to steal. So it was held in Mullins v. Commonwealth, 20 S.W. 1035, 14 Ky.Law Rep. 569, that actual entry is not necessary to constitute the offense; the purpose of the Legislature being to make a felony of that which was only a trespass at common law. But the word "break" implies force. McFarland v. Commonwealth, 227 Ky. 411, 13 S.W.2d 277. As used in the statute, it has a well-known and definite meaning at common law with reference to the crime of burglary, and the same definitions apply to this statute. Sections 658, 659, Roberson's Kentucky Criminal Law. The modern concept is that the slightest force is sufficient, and there is generally included among the illustrations the removal or breaking of a pane of glass or unloosening any other fastening to doors or windows, or pushing open a closed but unfastened door. Section 634, Roberson; Com. v. Mackey, supra; Gibson v. Com., 204 Ky. 748, 265 S.W. 339. In Collins v. Commonwealth, 146 Ky. 698, 143 S.W. 35, 38 L.R.A., N.S., 769, we held that pulling open a screen door though not fastened, if done with felonious intent, is within the statute. | The word "break" implies force, and, as used in the storehouse breaking statute, it has the same well-known and definite meaning as at common law with reference to the crime of burglary. Ky.St. S 1164. | What does the word break denote in the context of burglary? | 013114.docx | LEGALEASE-00156530-LEGALEASE-00156531 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 13773 | Com. v. Corbin, 300 Pa. Super. 218 | 67+9(2) | Under this section, a person who is licensed or privileged to enter the premises is not a burglar even though he intends to commit a crime therein. Commonwealth v. Knight, 276 Pa.Super. 348, 363, 419 A.2d 492, 499 (1980); Commonwealth v. Starkes, 268 Pa.Super. 108, 407 A.2d 853 (1979); Commonwealth v. Cost, 238 Pa.Super. 591, 362 A.2d 1027 (1976); Commonwealth v. Danzy, 234 Pa.Super. 633, 340 A.2d 494 (1975); see Davis, Pennsylvania Crimes Code and Criminal Law, Comments to " 3502; Annotation, 93 A.L.R.2d 531 (1964) (Consent). It was the Commonwealth's burden in the instant case to prove beyond a reasonable doubt that appellant was not licensed or privileged to enter the building. Commonwealth v. Starkes, supra; Commonwealth v. Stanton, 239 Pa.Super. 47, 50, 362 A.2d 355, 357 (1976) reversed on other grounds, 479 Pa. 521, 388 A.2d 1053 (1978). | A person who is licensed or privileged to enter the premises is not a burglar even though he intends to commit a crime therein. 18 Pa.C.S.A. S 3502. | Can a person who is licensed or privileged to enter be considered a burglar? | Burglary - Memo 313 - RK_62315.docx | ROSS-003309322-ROSS-003309323 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 13774 | People v. Isidore, 185 A.D.2d 622 | 67+15 | 1 A person is guilty of second degree burglary in violation of Penal Law " 140.25(2) when he "knowingly enters or remains unlawfully" in a dwelling "with intent to commit a crime therein". "A person "enters or remains unlawfully" in or upon premises when he is not licensed or privileged to so do" (Penal Law " 140.00[5] ). Generally, a person is "licensed or privileged" to enter premises when he has the permission of the owner or someone whose relationship to the premises gives him authority to grant such consent (see, People v. Graves, 76 N.Y.2d 16, 20, 556 N.Y.S.2d 16, 555 N.E.2d 268). | Generally, person is "licensed or privileged" to enter premises within meaning of burglary statute when he or she has permission of owner or someone whose relationship to premises gives him or her authority to grant such consent. McKinney's Penal Law SS 140.00, subd. 5, 140.25, subd. 2, 155.25. | Who is privileged in the context of burglary? | 013154.docx | LEGALEASE-00156609-LEGALEASE-00156610 | Condensed, Order, SA | 0.5 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13775 | Brimhall v. Brewster, 835 N.E.2d 593 | 307A+690 | The order which was signed by the trial court on November 15, 2002, and file stamped that same day did not state whether the dismissal was to be with or without prejudice. Indiana Trial Rule 41(B) states that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under ... subdivision (E) of this rule and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits." Clearly, this means that unless the trial court indicates that the dismissal is without prejudice, it must be deemed to be with prejudice. | Unless the trial court indicates that the dismissal is without prejudice, it must be deemed to be with prejudice. Trial Procedure Rule 41(B). | "Unless the trial court indicates that the dismissal is without prejudice, should it be deemed to be with prejudice?" | Pretrial Procedure - Memo # 10527 - C - NS_62427.docx | ROSS-003293467-ROSS-003293468 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 13776 | Dick Poe Motors v. DaimlerChrysler Corp., 169 S.W.3d 478 | 307A+690 | Dismissal of a case with prejudice functions as a final determination on the merits. Ritchey v. Vasquez, 986 S.W.2d 611, 612 (Tex.1999) (per curiam). A dismissal for want of prosecution is not a trial on the merits, and therefore dismissal with prejudice is improper. Maldonado v. Puente, 694 S.W.2d 86, 92 (Tex.App.-San Antonio 1985, no writ). An order of dismissal for want of prosecution is not an adjudication of the rights of the parties; rather, it simply places the parties in the position they were in prior to filing the suit. Melton v. Ryander, 727 S.W.2d 299, 303 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). | A dismissal of a case for want of prosecution is not a trial on the merits, and therefore dismissal with prejudice is improper. | "Is a dismissal of a case for want of prosecution not a trial on the merits, and therefore dismissal with prejudice is improper?" | 025040.docx | LEGALEASE-00156699-LEGALEASE-00156700 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 13777 | In re NC & VA Warranty Co., 556 B.R. 182 | 308+1 | More fundamentally, however, the record before the Court defeats any allegation that NCVA acted as an agent for Coastal Warranty. "There are two essential ingredients in the principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." Phelps"Dickson Builders, L.L.C. v. Amerimann Partners, 172 N.C.App. 427, 435, 617 S.E.2d 664, 669 (2005) (quoting Vaughn v. Dep't of Human Resources, 37 N.C.App. 86, 91, 245 S.E.2d 892, 895 (1978)). The Debtor exercised full authority and control over the Reserve Account and over the administration of all the agreements, including the Coverage Agreements, and Coastal has not presented any facts to show Coastal had any control over NCVA or the Reserve Account. In fact, the express terms of the Service Agreement place all direction, management, and control with NCVA and belie any control at all by Coastal Warranty. The Service Agreement requires NCVA to "[d]etermine and set pricing on all warranty programs to ensure the profitability of said programs." Service Agreement 1.g. NCVA was required to "[p]rovide management advice regarding the reserves to be established by [Coastal Warranty] to ensure that sufficient reserves are available to satisfy [Dealers Assurance's] requirements and to pay any claims that might be filed." 1.i. This lack of any control of NCVA by Coastal Warranty whatsoever defeats any claim of agency. | Under North Carolina law, there are two essential ingredients in the principal-agent relationship: (1) authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent. | What are the essential ingredients of a principal-agent relationship? | Principal and Agent - Memo 570-SB_63586.docx | ROSS-003295713-ROSS-003295714 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 13778 | Orbison v. Welsh, 242 Ind. 385 | 371+2750 | As was the case with the Toll Road Act, supra, nowhere in the instant statute is there any provision for the assessment of taxes. The payment of a tax is compulsory and not optional, and it entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens alike. Yourison, d. b. a., v. State of Del., p. b. r. (1927), 3 W.W.Harr. 577, 579, 33 Del. 577, 579, 140 A. 691, 692; Northern Counties Investment Trust v. Sears (1895), 30 Or. 388, 401, 41 P. 931, 935, 35 L.R.A. 188, 194 | The payment of a tax is compulsory and not optional, and it entitles taxpayer to receive nothing in return, other than rights of government which are enjoyed by all citizens alike. | Is a tax compulsory and not optional? | 044592.docx | LEGALEASE-00156681-LEGALEASE-00156682 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 13779 | Com. v. Kelley, 444 Pa. Super. 377 | 3.77E+10 | Contrary to Appellant's assertion, direct communication of threat between the perpetrator and the victim is not a requisite element of the crime of terroristic threats. Rather, to obtain a conviction for making a terroristic threat, the Commonwealth must prove that: 1) the defendant made a threat to commit a crime of violence; and 2) such threat was communicated with the intent of terrorizing another or with reckless disregard for the risk of causing terror. Commonwealth v. Campbell, 425 Pa.Super. 514, 625 A.2d 1215 (1993). | Direct communication of threat between defendant and victim was not required element of crime of making terroristic threats. 18 Pa.C.S.A. S 2706. | Is a direct communication of a threat between defendant and victim a required element of the crime of making terroristic threats? | 046663.docx | LEGALEASE-00156486-LEGALEASE-00156487 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 13780 | Oregon Wild, v. Constance Cummins, 239 F. Supp. 3d 1247 | 411+8 | NFMA requires the Forest Service to develop and maintain a comprehensive Land and Resource Management Plan (forestplan) for each national forest. 16 U.S.C. " 1604(a). A forestplan is "a broad, long-term planning document [that] establishes goals and objectives for management of forest resources." Earth Island Inst. v. U.S. Forest Serv., 697 F.3d 1010, 1014 (9th Cir. 2012) (citing 16 U.S. C. " 1604(g)(1)"(3)). Once a forestplan is adopted, all subsequent agency actions must comply with it.16 U.S.C. " 1604(i). The Forest Service's "interpretation and implementation of its own forestplan is entitled to substantial deference." Native Ecosystems Council v. Weldon, 697 F.3d 1043, 1056 (9th Cir. 2012) (internal citations omitted) | Forest Service's issuance of annual operating instructions (AOI) to manage livestock grazing in national forest did not violate land and resource management plan for forest, and thus did not violate National Forest Management Act (NFMA), which required all agency actions to comply with adopted forest plans, despite environmental conservation organizations' allegations that grazing was preventing attainment of riparian management objectives (RMO) included in forest plan to protect inland fish, where organizations failed to demonstrate that grazing in forest was the cause of any failure to attain RMOs or that there was any failure to attain RMOs at the watershed level, rather than individual creek level, as required by forest plan, and, although Forest Service failed to attain specific, numerical goals set out in RMOs, the forest plan did not require narrow and rigid application of RMOs, but was aimed at meeting targets over time and Forest Service was on a trajectory to reach targets. Forest and Rangeland Renewable Resources Planning Act of 1974, S 2 et seq., 16 U.S.C.A. S 1600 et seq. | What does National Forest Management Act (NFMA) provides for forest planning and management? | 047639.docx | LEGALEASE-00156661-LEGALEASE-00156662 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13781 | Allison v. Manzke, 118 Wis. 11 | 38+90 | In that case the mortgages "were apparently contemporaneous in execution," but Fowler (one of the mortgagees) "knew when he took his mortgage" that "the plaintiff's mortgage was simply an extension pro tanto of his previously existing purchase"money mortgage," and he "voluntarily accepted it with the knowledge that it was intended to be, as it was in fact, a subsequent lien." That case was quite similar in principle to the more recent case in this court, Trompczynski v. Struck, 105 Wis. 437, 440, 441, 81 N. W. 650. Neither of those cases sustain the proposition for which counsel for the appellants contend. It is elementary that "the assignee of a chose in action stands exactly in the shoes of his assignor. He succeeds to all of his rights and privileges, but acquires no greater right than his assignor had in the thing assigned." 2 Am. & Eng. Ency. Law (2d Ed.) 1079; Kinney v. Kruse, 28 Wis. 183, 190; Parmalee v. Wheeler, 32 Wis. 429. We must hold that the recording of the assignments from Hahn gave to the holders thereof, respectively, no superior lien upon the mortgaged premises, as against Herman, and the plaintiff as his assignee, than that possessed by Hahn. | The assignee of a chose in action stands exactly in the shoes of his assignor. He succeeds to all his rights and privileges, but acquires no greater right than his assignor had in the thing assigned. | Does an assignee have the same rights as the assignor? | 009059.docx | LEGALEASE-00157097-LEGALEASE-00157098 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13782 | Port Fin. Co. v. Ber, 45 So. 2d 404 | 156+52(1) | However, in our opinion, the plea of equitable estoppel cannot be permitted to prevail when in conflict with and diametrically opposed to the positive written law. See Article 21 of the Civil Code. | A plea of equitable estoppel cannot be permitted to prevail when in conflict with and diametrically opposed to the positive written law. LSA-C.C.art.21. | Can estoppel prevail when in conflict with positive written law? | Estoppel - Memo #153 - C - CSS_62354.docx | ROSS-003293714-ROSS-003293715 | SA, Sub | 0.23 | 0 | 0 | 1 | 1 | |
| 13783 | Campbell v. First Baptist Church of City of Durham, 51 N.C. App. 393 | 315+609 | Here, plaintiff originally and expressly sought to have the entire transaction the "exchange" declared void. Defendants resisted on the grounds that an exchange should not be subject to the statutory procedures governing sales by the Redevelopment Commission under N.C.G.S. 160-464 (now N.C.G.S. 160A-514). Until the action was remanded, none of the parties ever regarded the exchange as other than a single transaction or occurrence. To "exchange" has been defined as "(t)o part with, give, or transfer for an equivalent." Black's Law Dictionary 671 (4th ed. rev. 1968). In an exchange, specific property is given in consideration of property other than money, although one of the parties may pay a sum of money in addition to the property. In our decision on the earlier appeal, Judge Hedrick stated:We hold that the "exchange" of property between a redevelopment commission and a "redeveloper" such as the First Baptist Church in this case, is nothing more than a "private sale" of real property ... and that such exchange must be in compliance with all of the requirements of G.S. s 160-464(e)(4).39 N.C.App. at 128-29, 250 S.E.2d at 74 (emphasis added). | In an "exchange" of property, specific property is given in consideration of property other than money, although one of the parties may pay a sum of money in addition to the property. | "In an exchange of property, is the consideration received for the property given?" | Exchange of property - Memo 20 - AM_62726.docx | ROSS-003296251-ROSS-003296252 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 13784 | In re Webb Mtn, 414 B.R. 308 | 51+2645.1 | "Congress intended the term "transfer" to be as broad as possible and, therefore, defined the term expansively in the Bankruptcy Code." Ford v. Skorich (In re Skorich), 337 B.R. 441, 445 (D.N.H.2006). "Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control constitute interests in property."Lemley"Cabbiness Farms v. FDIC (In re Lemley Estate Bus. Trust), 65 B.R. 185, 189 (Bankr.N.D.Tex.1986) (citing S.Rep. No. 95"989, 95th Cong.2d Sess. 26"27 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5811"13). As contemplated within and under the Bankruptcy Code, "[t]he definition of transfer focuses on what the debtor relinquished[,] not the formalities of the documentation." Rosen v. MIF Realty, L.P. (In re Vuckovic), 211 B.R. 1002, 1005 (Bankr.M.D.Fla.1997) (stating that "[u]nder this analysis, almost every business transaction constitutes a transfer."). | Under Bankruptcy Code's definition of "transfer," any transfer of an interest in property is a "transfer," including a transfer of possession, custody, or control even if there is no transfer of title, inasmuch as possession, custody, and control constitute interests in property. 11 U.S.C.A. S 101(54). | "Does possession, custody, and control constitute interests in property?" | 018291.docx | LEGALEASE-00156897-LEGALEASE-00156898 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 13785 | East Lake Creek Ranch, LLP v. Brotman, 998 P.2d 46 | 315+609 | A longstanding test for determining whether a transaction constitutes a sale or exchange is whether there is a fixed value at which the exchange is to be made; if there is a fixed value, it is a sale. See Fain Land & Cattle Co. v. Hassell, 163 Ariz. 587, 790 P.2d 242 (1990); see also Gill v. Eagleton, 108 Neb. 179, 187 N.W. 871 (1922) (if the bargain is made and the value of the land parted with is measured in money terms and the land is paid for in money or in something the parties agree to treat as having a fixed and definite value in money, the transaction is a sale). | One test for determining whether a transaction constitutes a "sale" or instead an "exchange" is whether there is a fixed value at which the exchange is to be made; if there is a fixed value, it is a sale. | Is there a test to determine whether the transaction constitutes a sale or exchange of property? | Exchange of property - Memo 19 - AM_62575.docx | ROSS-003307093-ROSS-003307094 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 13786 | Stiles v. Graves, 143 A.D.3d 1215 | 307A+690 | "Considerations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation" (Matter of Reilly v. Reid, 45 N.Y.2d 24, 28, 407 N.Y.S.2d 645, 379 N.E.2d 172 [1978] [emphasis added]; accord Matter of Hunter, 4 N.Y.3d at 269, 794 N.Y.S.2d 286, 827 N.E.2d 269). A court denies parties such finality, however, when it dismisses an action without prejudice; such a determination permits a plaintiff to relitigate an identical claim to that which has been dismissed (see City of New York v. Caristo Constr. Corp., 62 N.Y.2d 819, 820"821, 477 N.Y.S.2d 603, 466 N.E.2d 143 [1984]; Matter of Coleman v. Coleman, 1 A.D.3d 833, 834, 767 N.Y.S.2d 169 [2003]; A. Colish, Inc. v. Abramson, 178 A.D.2d 252, 252, 577 N.Y.S.2d 60 [1991] ). | Dismissal of action without prejudice permits a plaintiff to relitigate an identical claim to that which has been dismissed. | Does a dismissal of action without prejudice permit a plaintiff to re-litigate an identical claim to that which has been dismissed? | Pretrial Procedure - Memo # 10456 - C - KG_62735.docx | ROSS-003295098-ROSS-003295099 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13787 | Hutcheson v. Elec. Data Access Techs., 327 S.W.3d 622 | 307A+690 | A dismissal for failure to prosecute is within the trial court's discretion and we review for an abuse of that discretion. Snelling v. Beck, 207 S.W.3d 202, 203 (Mo.App. E.D.2006). A trial court may dismiss for failure to prosecute when the party had a reasonable opportunity to bring the action to trial. Id. An involuntary dismissal may be made with prejudice if there is notice and an opportunity to be heard before the dismissal is made. Id. However, dismissal with prejudice implicates due process concerns, requiring notice and an opportunity to be heard. Id.; see also State ex rel. Willens v. Gray, 757 S.W.2d 656, 658 (Mo.App. W.D.1988). | An involuntary dismissal for a failure to prosecute may be made with prejudice if there is notice and an opportunity to be heard before the dismissal is made; however, dismissal with prejudice implicates due process concerns, requiring notice and an opportunity to be heard. U.S.C.A. Const.Amend. 14. | Can an involuntary dismissal for a failure to prosecute be made with prejudice if there is notice and an opportunity to be heard before the dismissal is made? | 024969.docx | LEGALEASE-00157297-LEGALEASE-00157298 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13788 | Hickman v. Adams, 35 S.W.3d 120 | 336H+140 | Dismissal with prejudice constitutes an adjudication on the merits and operates as if the case had been fully tried and decided. See Ritchey v. Vasquez, 986 S.W.2d 611, 612 (Tex.1999); Mossler v. Shields, 818 S.W.2d 752, 754 (Tex.1991); Sommers v. Concepcion, 20 S.W.3d 27, 39 (Tex.App."Houston [14th Dist.] 2000, pet. denied); Martin v. Martin, Martin & Richards, Inc., 991 S.W.2d 1, 9 (Tex.App."Fort Worth 1997, no writ). Thus, orders dismissing cases with prejudice have full res judicata and collateral estoppel effect, barring subsequent relitigation of the same causes of action or issues between the same parties. See Barr v. Resolution Trust Corp., 837 S.W.2d 627, 630"31 (Tex.1992); Sommers, at 39; Martin, 991 S.W.2d at 9; Lentworth v. Trahan, 981 S.W.2d 720, 722 (Tex.App."Houston [1st Dist.] 1998, no pet.); McConnell v. Attorney General of Texas, 878 S.W.2d 281, 283 (Tex.App."Corpus Christi 1994, no writ). | "Dismissal with prejudice" constitutes an adjudication on the merits and operates as if the case had been fully tried and decided. | Does a dismissal with prejudice operate as if the case had been fully tried and decided? | Pretrial Procedure - Memo # 10502 - C - UG_63372.docx | ROSS-003281422-ROSS-003281423 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13789 | Blake v. Stinson, 5 So. 3d 615 | 307A+694 | On September 21, 2007, Stinson filed a motion to dismiss Blake's claims against him for want of prosecution or, in the alternative, on the basis of laches. Blake opposed the motion. On November 14, 2007, the trial court granted Stinson's motion and dismissed the case pursuant to Rule 41(b), Ala. R. Civ. P., for want of prosecution. The trial court did not state in its November 14, 2007, judgment that it was dismissing the case with prejudice. However, this court has previously held that "[a] dismissal for want of prosecution is clearly "with prejudice." " S.C.G. v. J.G.Y, 794 So.2d 399, 404 (Ala.Civ.App.2000). " "[T]he failure of the trial court to address the preclusive effect of an order of dismissal for want of prosecution compels a determination that it operates as an adjudication on the merits." " S.C.G. v. J.G.Y, 794 So.2d at 404 (quoting Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated 723 (3d ed.1996)). Thus, we consider the trial court's judgment to be a dismissal with prejudice. | The failure of the trial court to address the preclusive effect of an order of dismissal for want of prosecution compels a determination that it operates as an adjudication on the merits. Rules Civ.Proc., Rule 41(b). | Is a dismissal for want of prosecution clearly with prejudice? | Pretrial Procedure - Memo # 10576 - C - DA_62613.docx | ROSS-003279860-ROSS-003279861 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 13790 | Richmond Cty. Bd. of Educ. v. Cowell, 225 N.C. App. 583 | 30+70(5) | Defendants appeal from the trial court's denial of their motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6). "The denial of a motion to dismiss is an interlocutory order which is not immediately appealable unless that denial affects a substantial right of the appellant." Carl v. State, 192 N.C.App. 544, 550, 665 S.E.2d 787, 793 (2008). "The appealing party bears the burden of demonstrating that the order from which he or she seeks to appeal is appealable despite its interlocutory nature." Hamilton v. Mortgage Information Services, 212 N.C.App. 73, 77, 711 S.E.2d 185, 189 (2011) (citing Jeffreys v. Raleigh Oaks Joint Venture, 115 N.C.App. 377, 379, 444 S.E.2d 252, 253 (1994)). Thus, the extent to which an appellant is entitled to immediate interlocutory review of the merits of his or her claims depends upon his or her establishing that the trial court's order deprives the appellant of a right that will be jeopardized absent review prior to final judgment. Id.; see also Harbor Point Homeowners' Ass'n, Inc. v. DJF Enters., Inc., 206 N.C.App. 152, 157, 697 S.E.2d 439, 444 (2010). | The denial of a motion to dismiss is an interlocutory order which is not immediately appealable unless that denial affects a substantial right of the appellant. | Is the denial of a motion to dismiss an interlocutory order? | 025152.docx | LEGALEASE-00157159-LEGALEASE-00157160 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13791 | Airgrowers v. Tomlinson, 230 Ga. App. 415 | 307A+693.1 | A cross-claim is not subject to dismissal simply because the main claim has been dismissed, and, where it can be adjudicated without regard to the main claim, a cross-claim should be considered even after the main claim has been dismissed. Wilson v. Williams Bros., Inc., 193 Ga.App. 371, 372, 387 S.E.2d 639 (1989). However, in order for a cross-claim to be independently adjudicated, it must independently satisfy Georgia's constitutional venue requirements. Register v. Stone's Independent Oil Distrib., 227 Ga. 123, 179 S.E.2d 68 (1971); Walker v. Powell, 123 Ga.App. 498, 181 S.E.2d 501 (1971). | Cross-claim is not subject to dismissal simply because main claim has been dismissed, and, where it can be adjudicated without regard to main claim, cross-claim should be considered even after main claim has been dismissed. | Is a cross-claim not subject to dismissal simply because a main claim has been dismissed? | 025204.docx | LEGALEASE-00157279-LEGALEASE-00157280 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 13792 | Dollarhide v. Bancroft, 2008 WY 113 | 307A+581 | Under W.R.C.P. 41(b), the district court may dismiss "any action not prosecuted or brought to trial with due diligence." Rule 203(c) of the Uniform Rules for District Courts is more specific, indicating that cases "in which no substantial and bona fide action of record towards disposition has been taken for 90 days are subject to dismissal for lack of prosecution." The parties have cited only a handful of Wyoming cases dealing with dismissals for lack of prosecution, and none with facts similar to this case. This scarcity of cases may be due to the fact that dismissal of an action is "the most severe of penalties, which ought to be assessed only in the most extreme situations." Glatter v. American Nat'l Bank, 675 P.2d 642, 644 (Wyo.1984). Extreme situations are rare, so that "no precise rule may be laid down as to what circumstances justify a dismissal for lack of prosecution." | No precise rule may be laid down as to what circumstances justify a dismissal for lack of prosecution; instead, the circumstances surrounding each case must be examined, keeping in mind the conflict between the need for the court to manage its docket for the purpose of preventing undue delay on the one hand, and the policy favoring disposition of cases on the merits on the other hand. Rules Civ.Proc., Rule 41(b); District Courts Uniform Rule 203(c). | Can a precise rule be laid down as to what circumstances justify a dismissal for lack of prosecution? | Pretrial Procedure - Memo # 10730 - C - SK_63261.docx | ROSS-003279296-ROSS-003279297 | Condensed, SA | 0.49 | 0 | 1 | 0 | 1 | |
| 13793 | White v. Revco Disc. Drug Centers, 33 S.W.3d 713 | 231H+25 | It is also well settled that an agent may serve two masters simultaneously, so long as the objectives of one master are not contrary to the objectives of the other. See Monroe County Motor Co. v. Tennessee Odin Ins. Co., 33 Tenn.App. 223, 241, 231 S.W.2d 386, 394 (1950). As section 226 of the Restatement (Second) of Agency states the rule, "A person may be the servant of two masters, not joint employers, at one time as to one act, if the service does not involve abandonment of the service to the other." In so doing, the person serving two masters "may cause both employers to be responsible for an act .... if the act is within the scope of employment for both." " 226 cmt. a. | An agent may serve two masters simultaneously, so long as the objectives of one master are not contrary to the objectives of the other. Restatement (Second) of Agency S 226. | Can an agent serve two masters simultaneously if the objectives are not contrary? | Principal and Agent - Memo 411 - RK_63531.docx | ROSS-003280799-ROSS-003280800 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13794 | Hickman v. Barclay's Int'l Realty, 5 So. 3d 804 | 308+1 | The key element in establishing actual agency is the control by the principal over the actions of the agent. See 979 So.2d at 990 (citing State v. Am. Tobacco Co., 707 So.2d 851, 854 (Fla. 4th DCA 1998)); Chase Manhattan Mortg. Corp. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A., 694 So.2d 827, 832 (Fla. 4th DCA 1997). And it is the right of control, not actual control or descriptive labels employed by the parties, that determines an agency relationship Parker v. Domino's Pizza, Inc., 629 So.2d 1026, 1027 (Fla. 4th DCA 1993). | It is the right of control, not actual control or descriptive labels employed by the parties, that determines an agency relationship. | Can descriptive labels employed by the parties determine an agency relationship? | Principal and Agent - Memo 418 - RK_63538.docx | ROSS-003281078-ROSS-003281079 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 13795 | Turner v. Bd. of Aviation Comm'rs, 743 N.E.2d 1153 | 308+9 | Turner's next summary judgment claim is that Gilbert, the airport manager, lacked the authority to designate and enforce a self-fueling area. He claims that only the Board has the power to designate a self-fueling area because that is essentially a rulemaking function, which is reserved to the Board alone. Turner cites Ind.Code " 8"22"2"5(b) for support, and that statute provides, in relevant part: "[t]he board, on behalf of the eligible entity, exclusively has the following powers: ... [t]o make rules and regulations, consistent with law, for the management and control of its airports, landing fields, air navigation facilities, and other property under its control." Ind.Code " 8"22"2"5. Assuming without deciding that the designation of a self-fueling area is a "rule or regulation" as used in Ind.Code " 8"22"2"5, a plain reading of the statute seems to require the Board's approval of all actions involving the management of the airport, including the designation of self-fueling areas. However, the Board responds that when Gilbert designated the self-fueling area, he was authorized by the Board do to so because he is the airport manager, and he was acting as the Board's agent. An agency relationship is one that results from a "manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Lewis v. Davis, 410 N.E.2d 1363, 1366 (Ind.Ct.App.1980) (quoting Department of Treasury v. Ice Serv. Inc., 220 Ind. 64, 67"68, 41 N.E.2d 201, 203 (Ind.1942)). It arises from the consent of the parties in the form of a contractual agreement, but it is not necessary that the contract or the authority of the agent to act be in writing. It is necessary that the agent be subject to the control of the principal with respect to the details of the work. | Agency relationship arises from the consent of the parties in the form of a contractual agreement, but it is not necessary that the contract or the authority of the agent to act be in writing. | Is it necessary that the authority of the agent to act be in writing? | Principal and Agent - Memo 433 - RK_63553.docx | ROSS-003297753-ROSS-003297754 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 13796 | In re Hughes, 513 S.W.3d 28 | 308+1 | For an agency relationship to exist, there must be (1) a meeting of the minds between the parties to establish the relationship, and (2) some act constituting the appointment of the agent. Toka Gen. Contractors v. Wm. Rigg Co., No. 04"12"00474"CV, 2014 WL 1390448, at 8 (Tex.App."San Antonio Apr. 9, 2014, pet. denied) (mem. op.). Here, however, Hughes (as principal) has no control over Peachtree (as her agent). See Camp Mystic, 399 S.W.3d at 279 (noting that agency relationship requires principal's right to control agent's actions). The Purchase Contract is devoid of any language indicating that Hughes has any right to control Peachtree. | For an agency relationship to exist, there must be (1) a meeting of the minds between the parties to establish the relationship, and (2) some act constituting the appointment of the agent. | Should there be meeting of minds between the parties for an agency to exist? | Principal and Agent - Memo 456- PR_63470.docx | ROSS-003283018-ROSS-003283019 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 13797 | Chase v. Kawasaki Motors Corp., U.S.A., 140 F. Supp. 2d 1280 | 308+19 | As mentioned supra, the only evidence Plaintiffs proffer in support of their section 7"2"315 claims relates to alleged representations made by Jason Dyer in his capacity as a salesperson for Honda of Columbus. Under Alabama law, these representations cannot bind Kawasaki if Honda of Columbus is not an agent of Kawasaki. See McLemore v. Ford Motor Co., 628 So.2d 548, 551 (Ala.1993). Whether an express agency relationship exists depends on whether there is evidence of a retained right of control by the principal over the agent. (citing John R. Cowley & Bros., Inc. v. Brown, 569 So.2d 375, 381 (Ala.1990) ). An agency relationship may not be presumed. Battles v. Ford Motor Credit Co., 597 So.2d 688, 689 (Ala.1992). | Under Alabama law, whether an express agency relationship exists depends on whether there is evidence of a retained right of control by the principal over the agent; an agency relationship may not be presumed. | Can express agency exist when there is right of control? | 041855.docx | LEGALEASE-00157574-LEGALEASE-00157575 | Order, SA, Sub | 0.71 | 1 | 0 | 1 | 1 | 1 |
| 13798 | In re Grabau, 151 B.R. 227 | 65+3 | As discussed above, the critical inquiry under both Woolsey and Hooper is whether the defendant "was acting within the scope of his licensed activities." See Woolsey, 117 B.R. at 530. The Bankruptcy Court's distinction between acting as a salesman and acting as a broker is consistent with this inquiry. Cal.Bus. & Prof.Code " 10132 defines "real estate salesman" as someone "employed by a licensed real estate broker to do one or more of the act set forth in Sections 10131, 10131.1, 10131.2, 10131.3, 10131.6 [defining the activities of a real estate broker]." Thus, the Real Estate Act contemplates that someone can act as a salesman without necessarily qualifying as a real estate broker. In that instance, the real estate salesman is merely an agent of the employing broker. | California Real Estate Act contemplates that someone can act as salesman without necessarily qualifying as real estate broker; in that instance, real estate salesman is merely agent of employing broker. West's Ann.Cal.Bus. & Prof.Code SS 10131, 10131.1-10131.3, 10131.6, 10132. | Who is a real estate salesman? | 041875.docx | LEGALEASE-00157490-LEGALEASE-00157491 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |
| 13799 | Figi Graphics v. Dollar Gen. Corp., 33 F. Supp. 2d 1263 | 308+1 | A critical factor in determining the existence of an agency relationship is the degree of control exercised by the principal over the agent. See In re Coupon Clearing Service, Inc., 113 F.3d 1091, 1099"1100 (9th Cir.1997). If the principal has the right to control the agent's day-to-day operations, then an agency relationship exists. If, however, the principal has no control over the day-to-day operations and only has right to dictate the end result of the agents activities, then an "independent contractor" relationship exists. | Critical factor in determining existence of agency relationship is degree of control exercised by principal over agent. | What is the critical factor in determining existence of an agency relationship? | Principal and Agent - Memo 476- PR_63267.docx | ROSS-003296274-ROSS-003296275 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13800 | Lawrence v. Anheuser-Busch, 523 A.2d 864 | 308+1 | "Agency" has been defined as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) Agency " 1(1) (1958). Thus, the three elements required to show the existence of an agency relationship include (1) a manifestation by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) an agreement between the parties that the principal will be in control of the undertaking. " 1(1) comment b. It is essential to the relationship that the principal have the right to control the work of the agent, McLaughlin v. Chicken Delight, Inc., 164 Conn. 317, 322, 321 A.2d 456, 459 (1973); Arcell v. Ashland Chemical Co., 152 N.J.Super. 471, 494, 378 A.2d 53, 65 (1977); and that the agent act primarily for the benefit of the principal. Narragansett Wire Co. v. Norberg, 118 R.I. 596, 605, 376 A.2d 1, 5 (1977). | It is essential to agency relationship that principal have right to control work of agent and that agent act primarily for benefit of principal. | Is it essential that the principal have the right to control the work of the agent? | 041932.docx | LEGALEASE-00157740-LEGALEASE-00157741 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 13801 | State, ex rel. Petroleum Underground Storage Tank Release Comp. Bd., v. Withrow, 62 Ohio St. 3d | 371+2002 | Our holding is narrow and confined to the facts of this case. It is not possible to come up with a single test that will correctly distinguish a tax from a fee in all situations where the words "tax" and "fee" arise. What is a tax for one inquiry is not necessarily a tax under other circumstances. As in State, ex rel. Duerk, v. Donahey (1981), 67 Ohio St.2d 216, 21 O.O.3d 135, 423 N.E.2d 429, respondent has not overcome the presumption of constitutionality of a legislative enactment. Because relators have shown a sufficiently clear legal right to the relief prayed for, the writ of mandamus is granted. | It is not possible to come up with single test that will correctly distinguish tax from fee in all situations; what is tax for one inquiry is not necessarily tax under other circumstances. | Is it possible to come up with a single test that will correctly distinguish a tax from a fee? | 044555.docx | LEGALEASE-00157233-LEGALEASE-00157234 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 13802 | In re Ricky T., 87 Cal. App. 4th 1132 | 377E+48(2) | If surrounding circumstances within the meaning of section 422 can show whether a terrorist threat was made, absence of circumstances can also show that a terrorist threat was not made within the meaning of section 422. Here, there was no evidence of any circumstances occurring after appellant's "threats" which would further a finding of a terrorist threat. | If surrounding circumstances can show whether a terrorist threat was made, absence of circumstances can also show that a terrorist threat was not made. West's Ann.Cal.Penal Code S 422. | Can an absence of surrounding circumstances show that a terrorist threat was not made? | 047060.docx | LEGALEASE-00157674-LEGALEASE-00157675 | Condensed, SA | 0.49 | 0 | 1 | 0 | 1 | |
| 13803 | In re Ricky T., 87 Cal. App. 4th 1132 | 3.77E+13 | Unlike the crime of robbery where the word "fear" does not necessarily connote intimidation or fear as it means apprehension, the term "sustained fear" is defined by Allen, supra, 33 Cal.App.4th at page 1156, 40 Cal.Rptr.2d 7 as a period of time "that extends beyond what is momentary, fleeting, or transitory." In concluding that the statutory element of sustained fear was met, the Allen court relied on evidence indicating that the victim had knowledge of the defendant's prior threatening conduct and had reported this conduct to the police on several occasions. No such evidence exists in this case. Whatever emotion"fear, intimidation, or apprehension"Heathcote felt during the moment of the verbal encounter, there was nothing to indicate that the fear was more than fleeting or transitory. Indeed, Heathcote admitted the threat was not specific. This court rejects respondent's suggestion that even momentary fear can support a finding of sustained fear within the meaning of section 422. Clearly, if any experience of fear constitutes a "sustained" experience, then the term is superfluous. Heathcote told Officer Steaveson that he "felt threatened," and that he ordered appellant to report to the school office. The record, however, indicates that the police were not notified until the day after the incident. Apparently, fear did not exist beyond the moments of the encounter. Rather than taking advantage of Heathcote's fear, appellant followed his directive and placed himself in the school office, where he returned the next day for Officer Steaveson's interview. | Term "sustained fear," as used in Penal Code section requiring the prohibited threat be such as to cause a reasonable person to be in sustained fear for his personal safety, is a period of time that extends beyond what is momentary, fleeting, or transitory. West's Ann.Cal.Penal Code S 422. | "What is ""sustained fear"" as used in the Penal Code prohibiting threats?" | 047062.docx | LEGALEASE-00157676-LEGALEASE-00157677 | Condensed, Order, SA | 0.81 | 1 | 1 | 0 | 1 | 1 |
| 13804 | Rouse v. State, 369 N.W.2d 811 | 413+102 | Requiring a contract basis for the employment relationship distinguishes the relationship from the common law master-servant relationship. At common law vicarious liability can be imposed on a master on a theory of the master's acceptance and control of a service that led to a third person's injury. See id. The trial court characterized this as a "control test" and was right in finding it inapplicable. Employment for purposes of compensation law is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common law damages. This reasoning applies not only to the question whether there is any employment relationship at all, but also to the question whether one of two or more persons is an employer. In such cases, with all the elements of employment having been established as to some employer, the issue may be solely whether the particular defendant made a contract with the particular employee. Id. at 8-233-234. | "Employment," for purposes of workers' compensation law, is mutual arrangement between employer and employee under which both give up and gain certain things. I.C.A. SS 85.20, 85.61(2). | "Is employment, under compensation law, a mutual arrangement between the employer and employee?" | Worker's Compensation Memo #632 - C - ANC_63492.docx | ROSS-003293681-ROSS-003293682 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13805 | Danco v. Commerce Bank/Shore, N.A., 290 N.J. Super. 211 | 83E+472 | Even though we conclude that a virgule when placed between two names specifically indicates that alternative indorsement is acceptable, and that payment on an indorsement is proper with the signature of either, we nonetheless would reach the same result if the use of the virgule here were deemed to have resulted in ambiguity. We base this on our acceptance of the reasoning of the Revised U.C.C. " 3"110(d) and our interpretation of the language and comments to former N.J.S.A. 12A:3"116. | Virgule, when placed between names of two payees on instrument, specifically indicates that alternative endorsement is acceptable, and that payment on an endorsement is proper with signature of either. | What does a virgule when placed between two names indicate? | Bills and Notes-Memo 1164 - AR_63610.docx | ROSS-003292792-ROSS-003292793 | Condensed, Order, SA, Sub | 0.59 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13806 | F.D.I.C. v. Bank of New York, 479 F. Supp. 2d 1 | 170B+3957 | The Bank of New York ("BNY") is the indenture trustee for investors ("Noteholders") who purchased asset-backed securities from the NextCard Credit Card Master Note Trust ("Trust"), which the now-defunct NextBank, N.A. ("NextBank") established in December 2000 to finance its internet-based consumer credit card business. After NextBank failed in February 2002 and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver, the Noteholders commenced what has now become a four-year challenge to the FDIC's rights to the NextBank credit card receivables. | Federal Deposit Insurance Corporation (FDIC), in action brought against indenture trustee for interests of investors who purchased asset-backed securities from trust established by defunct bank, seeking to enforce its rights to bank's credit card receivables, was entitled to permanent injunction against pending and future proceedings as to central interpleader issue of whether the Master Indenture's ipso facto clause and its early amortization requirement were enforceable, but not as to alternative claim to receivables allegedly not dependent on the enforceability of early amortization; the former issue was already decided, injury to FDIC of having to endure wasteful relitigation would be irreparable, parties had already had a full and fair opportunity to litigate issue, and public interest would be served by avoiding additional lengthy and complex proceedings, but the latter, alternative, claim might present new issues. | Was NextBank established to issue consumer credit cards through the internet? | 013732.docx | LEGALEASE-00158725-LEGALEASE-00158726 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 13807 | Com. v. Baez, 42 Mass. App. Ct. 565 | 35+63.4(1) | Here, the judge expressly ruled that the defendant was not committing a breach of the peace. We agree. "Breach of the peace" is often perceived as an elastic concept. Commonwealth v. Grise, 398 Mass. 247, 251, 496 N.E.2d 162 (1986). To find a breach of the peace within the meaning of the Gorman test, an act must at least threaten to have some disturbing effect on the public. See Commonwealth v. Gorman, 288 Mass. at 299, 192 N.E. 618 (court found operating a motor vehicle while under influence of alcohol a breach of peace because effect of alcohol likely to make operator of motor vehicle a public menace); Commonwealth v. Cavanaugh, 366 Mass. 277, 280"281, 317 N.E.2d 480 (1974) (high-speed chase through city streets would constitute breach of the peace); Commonwealth v. Mullins, 31 Mass.App.Ct. 954, 955, 582 N.E.2d 562 (1991) (where defendant was blaring music and screaming obscenities from window, circumstances amounted to breach of the peace because the "good citizens" of the neighborhood were disturbed). The record does not disclose why the defendant's license was revoked. It could have been for allowing his insurance to lapse. His offense in driving without a license was a serious one but not one which immediately threatened to disturb the public. | To find "breach of the peace" within the meaning of Gorman test for authority of officers to arrest motorists without warrants, act must at least threaten to have some disturbing effect on public. | What does the term breach of the peace mean as an offense? | Disorderly Conduct - Memo 3 - KC_64033.docx | ROSS-003306506-ROSS-003306507 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 13808 | Bank of Augusta v. Earle, 38 U.S. 519 | 183+1 | Now we are satisfied, from a careful examination of the case, that the word franchise was not used, and could not have been used by the Court in the broad sense imputed to it in the argument. For if banking includes the purchase of bills of exchange, and all banking is to be regarded as the exercise of a franchise, the decision of the Court would amount to this"that no individual citizen of Alabama could purchase such a bill. For franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the country, generally, of common right. It is essential to the character of a franchise that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from a law of the state. | Franchises are special privileges conferred by government upon individuals, and which do not belong to the citizens of the country generally of common right. It is essential to the character of a franchise that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from the law of the state. | Is franchise a privilege granted by the government? | 018584.docx | LEGALEASE-00158763-LEGALEASE-00158764 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |
| 13809 | In re Kahn's Estate, 18 Mo.App. 426 | 289+866 | Section 207 provides that, "Any executor or administrator may establish a demand against his testator or intestate, by proceeding against his co-executor or co-administrator in the manner prescribed for other persons. But if there be no co-executor or co-administrator, he shall file his claim and other papers, and the court shall appoint some suitable person to appear and manage the defence." Section 68 provides that, "The administration upon partnership effects, whether by the surviving partner, or executor or administrator of the deceased partner, shall, in all respects, conform to administrations in ordinary cases, except as otherwise herein provided. * * *" | Rev.St.1879, S 207, provides that any administrator may establish a demand against his intestate in the same manner as other persons. Section 68 provides that the administration of partnership effects shall conform to the administration of other estates, except as otherwise provided. Section 65 declares that, when the surviving partner administers on the partnership effects, he shall have power to pay off claims against the firm without requiring them to be exhibited to the probate court for allowance, and the court shall allow such partner in his settlements all demands he may thus discharge. Held, that the administration of partnership effects by a surviving partner is governed solely by section 65, so that it is not necessary for a surviving partner, administering upon the partnership effects, to exhibit a claim of his own against the firm to the probate court. | Does the administration upon partnership effects conform to administrations in ordinary cases? | 022635.docx | LEGALEASE-00158777-LEGALEASE-00158778 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 13810 | Texas State Bd. of Registration for Prof'l Engineers v. Dalton, Hinds & O'Brien Eng'g Co., 382 S.W.2d 130 | 212+1546 | A pleading in terms of statutory language and violations thereof in general terms might no in many cases give fair notice to the person affected and, in many instances, would leave him to guess as to what he has allegedly done or left undone. In a suit for permanent injunction it is particularly important that the pleadings should definitely and particularly identify the nature of the wrongful acts done or threatened and the persons committing or threatening to commit the same. Allegations of fact in a suit for injunction should be direct, certain and particular and leave nothing to inference. The petition should contain specific fact allegations showing a right in the pleader, the wrong done by the defendant, and the resulting injury. 31 Tex.Jur.2d, Injunctions Sec. 125, pp. 240"242; Rule 682, T.R.C.P.; Texas Practice, Vol. 6, Injunctions, Secs. 333"335. Appellants' points 1 and 2 are overruled. | Allegations of fact in a suit for injunction should be direct, certain and particular and leave nothing to inference, and the petition should contain specific fact allegations showing a right in the pleader, the wrong done by the defendant, and resulting injury. | "Should allegations of fact in a suit for injunction be direct, certain, and particular?" | 023825.docx | LEGALEASE-00158582-LEGALEASE-00158583 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 13811 | Moucha v. Burger King Corp., 450 So. 2d 335 | 307A+561.1 | Worker's compensation immunity is an affirmative defense and ordinarily is not properly raised by a motion to dismiss the complaint. Sullivan v. Liberty Mutual Insurance Company, 367 So.2d 658 (Fla. 4th DCA 1979). However, an affirmative defense appearing on the face of the complaint may be raised by a motion to dismiss the complaint. Rule 1.110(d), Florida Rules of Civil Procedure. Davis v. Sun First Nat. Bank of Orlando, 408 So.2d 608 (Fla. 5th DCA 1981). | Affirmative defense appearing on face of complaint may be raised by motion to dismiss complaint. West's F.S.A. RCP Rule 1.110(d). | Will an affirmative defense appearing on face of complaint be raised by motion to dismiss complaint? | Pretrial Procedure - Memo # 10777 - C - NC_63644.docx | ROSS-003280192-ROSS-003280193 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13812 | Adjustment Specialists v. Collection Bureau of Orlando, 221 So. 2d 443 | 307A+687 | In appellee's brief the statement of facts contains comment on the immediate steps taken by defendant-appellee, upon discovery of the error, to rectify the situation by offer to pay to plaintiff the amount of the check. The record before us does not support this contention which is not surprising at the present stage of pleadings. We are committed to the view that well pleaded allegations of a complaint are taken as true for purposes of considering a motion to dismiss, with affirmative defenses to be asserted in the answer. | Well-pleaded allegations of complaint are taken as true for purpose of considering motion to dismiss, and affirmative defenses are to be asserted in answer. | Can well-pleaded allegations of complaint be taken as true? | 025469.docx | LEGALEASE-00158448-LEGALEASE-00158449 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 13813 | Gugello v. Select Specialty Hosp.-Tulsa, 143 P.3d 519 | 228+341 | Defendant also argues that Plaintiff's motion was insufficient to justify the court's action because it failed to state any statutory ground, but merely alleged that failure to vacate the dismissal would deprive Plaintiff of the right to litigate her wrongful death suit. We disagree. As Schepp stated, term-time power is not restricted to specific grounds, statutory or otherwise, and the court's power is almost unlimited. See also Morgan v. Phillips Petroleum Co. 1949 OK 244, 212 P.2d 663. No "exceptional circumstances" are required.5 The test for measuring the legal correctness of a trial court's response to such a motion is "whether sound discretion was exercised upon sufficient cause shown to vacate, modify, open or correct the earlier decision, or to refuse the relief sought." Schepp at 11, 770 P.2d at 39 (footnote omitted). There is no bright line rule as to what constitutes "sufficient cause" justifying the exercise of the trial court's discretion. | A trial court's term-time power to modify or vacate a judgment is not restricted to specific grounds, statutory or otherwise, and the court's power is almost unlimited; no exceptional circumstances are required. | "Is the term-time power not restricted to specific grounds, statutory or otherwise?" | Pretrial Procedure - Memo # 10852 - C - SHS_63876.docx | ROSS-003282206-ROSS-003282207 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 13814 | Hoffman v. Paracelsus Health Care Corp., 752 So. 2d 1030 | 307A+581 | In reviewing a trial court's decision to dismiss under Rule 41(b), this Court may reverse only if it finds that the trial court abused its discretion. Wallace, 572 So.2d at 375. At the same time, the law favors trial of issues on the merits, and dismissals for want of prosecution are therefore employed reluctantly. American Tel. & Tel., 720 So.2d at 180. There is no set time limit on the prosecution of an action once it has been filed, and dismissal for failure to prosecute will be upheld only "where the record shows that a plaintiff has been guilty of dilatory or contumacious conduct." Id. at 180. This Court is mindful of the fact that "dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases." Wallace, 572 So.2d at 376. What constitutes failure to prosecute depends on the facts of the particular case. Id. | The law favors trial of issues on the merits, and dismissals for want of prosecution are therefore employed reluctantly. Rules Civ.Proc., Rule 41(b). | "Because the law favors a trial on the merits, should a dismissal with prejudice be executed reluctantly?" | 025633.docx | LEGALEASE-00158711-LEGALEASE-00158712 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 13815 | Allstate Ins. Co. v. Anderson, 329 Ill. App. 3d 93 | 307A+693.1 | A dismissal for want of prosecution is ordinarily not a final order because of plaintiff's right to refile under section 13"217 of the Code of Civil Procedure. 735 ILCS 5/13"217 (West 2000); Marren Builders, Inc., v. Lampert, 307 Ill.App.3d 937, 941, 241 Ill.Dec. 256, 719 N.E.2d 117 (1999). When the time for refiling expires, the litigation is terminated and the order is final. S.C. Vaughan Oil Co. v. Caldwell, 181 Ill.2d 489, 502, 230 Ill.Dec. 209, 693 N.E.2d 338 (1998). But no authority has been cited that a final judgment may be dismissed for want of prosecution. In the case here, we find that the dismissal for want of prosecution had no effect because a final judgment had already been entered and there were no pending matters. See, American Consulting Ass'n, Inc. v. Spencer, 100 Ill.App.3d 917, 920"21, 56 Ill.Dec. 384, 427 N.E.2d 579 (1981), where the court held that a dismissal for want of prosecution was "apparently inadvertent" because it occurred on a status call of all the cases on a calendar just assigned to the judge who entered the order. | A dismissal for want of prosecution is ordinarily not a final order because of plaintiff's right to refile under Code of Civil Procedure; when the time for refiling expires, the litigation is terminated and the order is final. S.H.A. 735 ILCS 5/13-217. | Are dismissals for want of prosecution not final orders? | Pretrial Procedure - Memo # 10990 - C - NS_64113.docx | ROSS-003296245-ROSS-003296246 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 13816 | Butler v. Mayer, Brown & Platt, 301 Ill. App. 3d 919 | 307A+679 | In ruling on a section 2-619 motion, a court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that can reasonably be drawn in his favor. Hermitage Corp. v. Contractors Adjustment Co., 166 Ill.2d 72, 85, 209 Ill.Dec. 684, 651 N.E.2d 1132 (1995). Dismissal is proper when there are no genuine issues of material fact and dismissal is proper as a matter of law. See Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 116-17, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). We review a section 2-619 dismissal de novo. Kedzie, 156 Ill.2d at 116, 189 Ill.Dec. 31, 619 N.E.2d 732. | In ruling on motion to dismiss, court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that can reasonably be drawn in his favor. S.H.A. 735 ILCS 5/2-619. | Can a complaint be dismissed when the defendant is entitled to judgment as a matter of law? | 025901.docx | LEGALEASE-00158120-LEGALEASE-00158121 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 13817 | Jai Borchers v. Franciscan Tertiary Province of Sacred Heart, 2011 IL App (2d) 101257 | 30+3200 | The motion to dismiss was brought pursuant to section 2"619 of the Code (735 ILCS 5/2"619 (West 2008)), under which the allegations of a complaint are taken as true but the defendant asserts an affirmative defense or other matter that would defeat the plaintiff's claim. 735 ILCS 5/2"619 (West 2008); Nielsen"Massey Vanillas, Inc. v. City of Waukegan, 276 Ill.App.3d 146, 151, 212 Ill.Dec. 856, 657 N.E.2d 1201 (1995). The parties dispute whether the filing of the second amended complaint "relates back" to the original complaint's filing date pursuant to section 2"616(d) of the Code (735 ILCS 5/2"616(d) (West 2008)) such that the claims against Frigo and Maxwell would be considered timely. "Section 2"619 motions present a question of law, and we review rulings thereon de novo." DeLuna v. Burciaga, 223 Ill.2d 49, 59, 306 Ill.Dec. 136, 857 N.E.2d 229 (2006). | Motions to dismiss based upon certain defects or defenses present a question of law, and appellate court reviews rulings thereon de novo. S.H.A. 735 ILCS 5/2-619. | Would motions to dismiss present a question of law? | Pretrial Procedure - Memo # 11096 - C - DA.docx | LEGALEASE-00048601-LEGALEASE-00048602 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13818 | McClung's Ex'rs v. Spotswood, 19 Ala. 165 | 308+92(3) | Indeed, if the authority is general, and the agent is limited by secret instructions as to the mode of executing it, the party dealing with the agent cannot be bound by such secret instructions, unless he was apprized of them.--Story on Ag., " 73, and cases there cited. It will follow conclusively from this, that if the authority to do the act is given, but the mode or manner of executing the authority is not expressed even to the agent himself, the party dealing with him is not to be affected if the act be within the scope of the authority, although it be not done in the manner that the principal desired, or would himself have done it. We therefore think, that if the plaintiff authorized her daughter to answer the letter of the defendant's testator, but did not prescribe the character of the answer, and the answer in fact influenced the testator and induced him not to take his children home, the plaintiff must be held as much bound by the answer as if she herself had written it | When authority is given to an agent to do a particular act, and the manner of executing that authority is not prescribed, the principal is bound by the act of the agent, although it may not be done in the manner in which he desired it to be done, or in which he would himself have done it. | Can a party be affected or when dealing with an agent given authority to do an act when mode or manner of executing the authority is not expressed even to the agent himself? | 041675.docx | LEGALEASE-00158926-LEGALEASE-00158927 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 13819 | Townsend v. Shipley, 29 Ariz. 96 | 308+23(4) | "Agency, in its legal sense, always imports commercial dealings between two parties by and through the medium of another. An agent negotiates or treats with third parties in commercial matters for another."Kingan & Co. v. Silvers, 13 Ind. App. 80, 90, 37 N. E. 413, 416. | Evidence that plaintiff purchased land of defendant, held under option unknown to plaintiff, with no showing of employment of defendant to make purchase, and only contract proved was one of purchase and sale with parties treating each other as vendor and vendee, held to show that relation of "agency," which imports commercial dealings between two parties, through medium of another, did not exist. | Does agency always import commercial dealings between two parties by and through the medium of another? | Principal and Agent - Memo 396 - RK_63952.docx | ROSS-003305380-ROSS-003305381 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 13820 | Arsand v. City of Franklin, 83 Wis. 2d 40 | 308+159(1) | 2 Instruction No. 4000, which was submitted to the jury, asked only whether Karsten was the City's agent. Since the doctrine of respondeat superior is called into play only if one who is found to be an agent can be further identified as a particular kind of agent a servant the jury was not asked to make the determination crucial to the City's liability. An agent may or may not be a servant; and if he is not a servant, his principal is not vicariously liable for his negligent physical conduct except under certain circumstances. | An agent may or may not be a servant; if he is not a servant, his principal is not vicariously liable for his negligent physical conduct except under certain circumstances. | When is a principal not vicariously liable for the negligence of his agent? | Principal and Agent - Memo 403 - RK_63958.docx | ROSS-003293576-ROSS-003293577 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 13821 | Fischer v. Machado, 50 Cal. App. 4th 1069 | 308+1 | North State was designated as a "sales agent" or "commission merchant" in the written agreement between North State and Cottonwood. "Agency is both a consensual and a fiduciary relation. An agent is not merely a promiser or a promisee. The existence of the fiduciary relation modifies all agency agreements and creates rules which do not apply to contracts in which one party is not an agent for the other. The obligations of an agent are the same as those imposed on a trustee.... A tort action is not based upon the theory that the agent has failed to perform his promise, but upon the theory that the agent has improperly dealt with the affairs entrusted to him by the principal." (Haurat v. Superior Court (1966) 241 Cal.App.2d 330, 334, 50 Cal.Rptr. 520.) | Existence of fiduciary relation modifies all agency agreements and creates rules which do not apply to contracts in which one party is not agent for other. | What rules does the existence of a fiduciary relationship create? | Principal and Agent - Memo 531 - RK_63989.docx | ROSS-003309047-ROSS-003309048 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13822 | In re Mario S., 38 Misc. 3d 444 | 24+179 | The statute and regulation commit these specific and limited issues to state juvenile courts. The juvenile court need not determine any other issues, such as what the motivation of the juvenile in making application for the required findings might be (In the Interest of T.J., 59 So.3d 1187, 1191 [Fla. Ct. App.2011]; F.L.M. v. Department of Children and Families, 912 So.2d 1264, 1269 [Fla. Ct. App.2005]; L.T. v. Department of Children and Families, 48 So.3d 928, 931 [Fla. Ct. App.2010] ); whether allowing a particular child to remain in the United States might someday pose some unknown threat to public safety (e.g., Shannon M. Ray, Note, The Breakdown of a System: The Consequence of Permitting Dangerous Illegal Juvenile Aliens to Reside in Your Community, 56 Wayne L. Rev. 819 [2010] ); and whether the USCIS, the federal administrative agency charged with enforcing the immigration laws, may or may not grant a particular application for adjustment of status as a SIJ. | Juvenile court's function in deciding motion for special findings which would permit juvenile to file application for adjustment of status as a special immigrant juvenile (SIJ) is limited in scope: court must determine whether, under state law, juvenile is under age 21, unmarried, dependent upon court through order of placement or other court order, whether reunification with one or both parents is not possible due to abuse, neglect, or abandonment, and whether it would be contrary to juvenile's best interest to be returned to his or her previous country of nationality, and court need not determine any other issues, such as juvenile's motivation in moving for required findings, whether allowing particular child to remain in the country might pose threat to public safety, or whether United States Customs and Immigration Services (USCIS), the federal agency charged with enforcing immigration laws, may or may not grant juvenile's application for adjustment of status as a SIJ. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J); 8 C.F.R. S 204.11(c). | Should the juvenile court determine what the juvenile's motivation in making an application might be? | "Aliens, Immigration and Citizenship - Memo 124 - RK_64766.docx" | ROSS-003292457-ROSS-003292458 | Condensed, Order, SA | 0.1 | 1 | 1 | 0 | 1 | 1 |
| 13823 | In re Mario S., 38 Misc. 3d 444 | 24+179 | "In 1997 ... Congress amended " 1101(a)(27)(J) to require that a court, in its order, determine that the juvenile (1) is eligible for long-term foster care due to abuse, neglect, or abandonment; and (2) has been declared a dependent of a juvenile court or committed or placed with a state agency" (Erick M. at 347, 820 N.W.2d 639; see also, Yeboah at 221"222). "Under the 2008 amendment, the eligibility requirements under [8 USC " 1101(a)(27)(J)(i) ] hinge primarily on a reunification determination. The amendment expanded eligibility to include juvenile immigrants whom a court has committed to or placed in the custody of an individual or state-appointed entity"not just those whom a court has committed to or placed with a state agency or department. In addition, Congress removed the requirement that a state juvenile court find that a juvenile is eligible for long-term foster care because of abuse, neglect, or abandonment. Finally, Congress removed the requirement that a state juvenile court find that a juvenile is eligible for long-term foster care because of abuse, neglect, or abandonment. Instead, a court must find that reunification is not possible because of abuse, neglect, or abandonment" (Erick M. at 346, 820 N.W.2d 639). | Under the current special immigrant juvenile (SIJ) provisions of the Immigration and Nationality Act (INA), in order to be eligible to petition the federal government for SIJ status, the resident alien must be under age 21 and unmarried, he or she must have been declared dependent upon a state juvenile court, and the juvenile court must have made two additional findings: (1) that reunification with one or both of the alien's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law, and (2) that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J). | "Has Congress removed the requirement that a state juvenile court find that a juvenile is eligible for long-term foster care because of abuse, neglect, or abandonment?" | "Aliens, Immigration and Citizenship - Memo 136 - RK_64776.docx" | ROSS-003296595-ROSS-003296596 | Condensed, SA | 0.38 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13824 | In re Sing W.C., 83 A.D.3d 84 | 24+179 | [S.D.N.Y.2003] ). To be eligible for special immigrant juvenile status, a person must be under 21 years of age, unmarried, and declared to be dependent upon a juvenile court or legally committed to, or placed under the custody of, a state agency or an individual or entity appointed by a state court (see 8 USC " 1101[a][27][J] [i]; 8 CFR 204.11[c]; Matter of Jisun L. v. Young Sun P., 75 A.D.3d 510, 511, 905 N.Y.S.2d 633; Matter of Trudy"Ann W. v. Joan W., 73 A.D.3d 793, 795, 901 N.Y.S.2d 296). The appointment of a guardian constitutes the necessary declaration of dependency on a juvenile court (see Matter of Jisun L. v. Young Sun P., 75 A.D.3d at 512, 905 N.Y.S.2d 633; Matter of Trudy"Ann W. v. Joan W., 73 A.D.3d at 795"796, 901 N.Y.S.2d 296; Matter of Antowa McD., 50 A.D.3d 507, 856 N.Y.S.2d 576). Additionally, a court must find that reunification of the person with one or both of the person's parents is not viable due to parental abuse, neglect, abandonment, or similar parental conduct defined under State law, and that it would not be in the person's best interest to be returned to his or her native country or country of last habitual residence (see 8 USC " 1101[a][27][J][i], [ii]; Matter of Jisun L. v. Young Sun P., 75 A.D.3d at 511, 905 N.Y.S.2d 633; Matter of Emma M., 74 A.D.3d 968, 969, 902 N.Y.S.2d 651; Matter of Trudy"Ann W. v. Joan W., 73 A.D.3d at 795, 901 N.Y.S.2d 296). | The appointment of a guardian constitutes the necessary declaration of dependency on a juvenile court required for a juvenile to be eligible for special immigrant juvenile status. Immigration and Nationality Act, S 101(a)(27)(J)(i), 8 U.S.C.A. S 1101(a)(27)(J)(i); 8 C.F.R. S 204.11(c). | Is it required than an alien be under the age of 21 in order to be eligible for Special Immigrant Juvenile (SIJ) status? | 006892.docx | LEGALEASE-00160116-LEGALEASE-00160117 | Condensed, Order, SA | 0.8 | 1 | 1 | 0 | 1 | 1 |
| 13825 | Walling v. Cushman, 238 Mass. 62 | 8.30E+10 | The maker of a note is ordinarily deemed to have bound himself in accordance with the laws of the place where it is payable, where his contract is to be performed. See 5 R. C. L. 964; Cherry v. Sprague, 187 Mass. 113, 72 N. E. 456, 67 L. R. A. 33, 105 Am. St. Rep. 381. As the contract of the indorser is a new and separate one, its validity is determined, as a general rule, by the laws of the state where the contract of indorsement is made; that is, where it takes effect by delivery. Lawrence v. Bassett, 5 Allen, 140; Akers v. Demond, 103 Mass. 318; Milliken v. Pratt, 125 Mass. 374, 28 Am. Rep. 241. This general rule, however, is not applicable when it appears from the special circumstances that the parties intended otherwise. And admittedly the presumption at common law is the same as that now formulated in the Negotiable Instruments Law (G. L. c. 107, " 69): "Except where the contrary appears every indorsement is presumed to have been made at the place where the instrument is dated. | The maker of a note is ordinarily deemed to have bound himself in accordance with the laws of the place where it is payable and his contract is to be performed. | Is the maker of a note bound by the law of the place where the note is payable? | 009271.docx | LEGALEASE-00160415-LEGALEASE-00160416 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13826 | Johnston v. Gawtry, 83 Mo. 339 | 8.30E+10 | This suit was instituted in the circuit court of the city of St. Louis for the purpose of charging the separate real estate of defendant, Anne E. Gawtry, a married woman, with the payment of a note indorsed by her for $10,079.69. On the trial a judgment and decree was rendered for plaintiff in conformity with the prayer of the petition, which on appeal to the St. Louis court of appeals was affirmed, from which judgment of affirmance defendants have appealed to this court. The opinion of the court of appeals is reported in 11 Mo. App. 322, and it is there held that the state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract, though the note is executed in another state; that in an equity proceeding in the courts of this state, where nothing to the contrary appears, it will be presumed that the equity doctrine of a sister state is the same as that of the forum, where the courts of both states have an equity jurisdiction; that a married woman in this state is deemed a feme sole for the purpose of charging her separate estate with the payment of a debt, and in an action to enforce her foreign contract against her separate estate in this state, the law of the forum governs as to her power to make it and its validity. | The state in which a note is made payable, and in which it is delivered in consummation of a bargain, is the place of the contract. | Is the state where the note is payable and is delivered in consummation of a bargain the place of contract? | Bills and Notes-Memo 1404- JK_64843.docx | ROSS-003308200-ROSS-003308201 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 13827 | People v. Carcel, 3 N.Y.2d 327 | 129+132 | The term "congregating" implies and is usually applicable to the coming together of a considerable number of persons (Powell v. State, 62 Ind. 531), or a crowd (Webster's New Collegiate Dictionary; The Oxford Dictionary (1923)) and a crowd has been defined as a throng, multitude or great number of persons (People v. Phillips, 245 N.Y. 401, 402, 157 N.E. 508, 509). The term "congregates with others', as used in the statute, requires at the very least three persons assembling at a given time and place (People v. Lo Vecchio, 185 Misc. 197, 201, 56 N.Y.S.2d 354, 358, supra). It would be an unjustifiably liberal interpretation of subdivision 3 and at variance with the strict construction called for in these cases to hold that the defendants here, only two in number and as appears from the record not even standing together, were "congregating with others'. Investigation of the cases decided under this provision fails to reveal any contrary holding. In the cases upholding convictions there was either a large group (People v. Bogin, 248 N.Y. 530, 162 N.E. 512); a group of friends (People v. Galpern, supra); a number of persons (People v. Hipple, supra); or a crowd (People v. Friedman, 6 Misc.2d 271, 14 N.Y.S.2d 389; People v. Hussock, supra; People v. Garvey, 6 Misc.2d 266, 79 N.Y.S.2d 456). | Under subdivision of disorderly conduct statute proscribing as such conduct persons who congregate with others on a public street and refuse to move on when ordered by police, term "congregates with others" requires at the very least three persons assembling at a given time and place. Penal Law, S 722 and subd. 3. | Does assemblage of at least three persons constitute congregate with others? | 014353.docx | LEGALEASE-00159424-LEGALEASE-00159425 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 13828 | Trustees of Univ. of Alabama v. Winston, 5 Stew. & P. 17 | 141E+990 | While we would unhesitatingly maintain the doctrine that an act establishing a private corporation, forms a contract by which the State is bound, we have no doubt but the President and Trustees of the University of Alabama, constitute a public corporation, and that their charter may be altered, amended, or repealed, by the General Assembly, at pleasure. | The President and Trustees of the University of Alabama constitute a public corporation, and their charter may be altered, amended, or repealed by the legislature, at pleasure. | Does a university constitute a public corporation? | 017144.docx | LEGALEASE-00159864-LEGALEASE-00159865 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13829 | Fisher v. Bd. of Regents of Univ. of Nebraska, 108 Neb. 666 | 141E+1011 | The question, however, is not one of policy or wisdom, but of legislative power. The only limitations thereon are those imposed by the Constitution. When the constitution of 1875 was adopted, all former constitutional and statutory provisions were subject to its terms. That instrument declares that the general government of the University of Nebraska shall, under the direction of the Legislature, be vested in a board of six regents, and that their duties and powers shall be prescribed by law. Affording "the means of acquiring a thorough knowledge of the various branches of literature, science and the arts" is not now the limit of its purpose, powers or activities. It has long since passed the stage of scholastic instruction and, in addition, is conducting practical experiments and applying knowledge for the benefit of the public, and incidentally aiding individuals, professions and industries. A constitutional provision prohibiting the Legislature from authorizing the operation of a hog"cholera serum plant at the state agricultural college or from imposing new duties on the board of regents has not been pointed out or found. The court is committed to the opinion that new purposes may be added by the Legislature to those enumerated in the original charter of the University of Nebraska and that new duties may be imposed upon the regents. State v. Whitmore, 85 Neb. 566, 123 N. W. 1051; Union Stock Yards Co. v. Nebraska State Railway Commission, 103 Neb. 224, 170 N. W. 908, 172 N. W. 528. | The Constitution of 1875, by adopting the University of Nebraska as a state institution under a charter declaring a purpose "to afford to the inhabitants of this state the means of acquiring a thorough knowledge of the various branches of literature, science, and the arts", (Laws 1869, p. 172, S 2), and by vesting its general government in a board of regents under the direction of the Legislature, did not prohibit the latter from imposing new and additional duties on the regents or from requiring them to establish and conduct a plant for the manufacture and distribution of hog cholera serum. | Are there limitations on legislative power over a university? | 017146.docx | LEGALEASE-00159879-LEGALEASE-00159880 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 13830 | Witherell v. Kelly, 195 A.D. 227 | 156+52.15 | The doctrine of estoppel in pais is applicable in law as in equity. Williamsburgh Sav. Bank v. Town of Solon, 136 N. Y. 465"474, 32 N. E. 1058. It is not essential that there should have existed in Shedd the intention to mislead. Continental Nat. Bank v. Nat. Bank of Com., 50 N. Y. at page 583. Equitable estoppel need not rest upon consideration or agreement or legal obligation. Rothschild v. Title Guarantee & Trust Co., 204 N. Y. at 464, 97 N. E. 879, 41 L. R. A. (N. S.) 740. | An equitable estoppel need not rest upon a consideration, agreement, or legal obligation. | "MEMORANDUM # 1731. QuestionMust an equitable estoppel rest upon a consideration, agreement, or legal obligation?" | Estoppel - Memo #173 - C - CSS.docx | LEGALEASE-00049290-LEGALEASE-00049291 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13831 | Cochran v. Ozark Country Club, 339 So. 2d 1023 | 156+52(5) | Plaintiff further contends that defendants are estopped from asserting the illegality of the contract because they are guilty themselves of inequitable conduct. The contention is not well founded. Plaintiff cannot, by way of estoppel, endow with validity a transaction which is illegal and against public policy. For the law applicable to this case, see Tucker v. Walker, 293 Ala. 589, 308 So.2d 245 (1975), and Cooper v. Johnston, 283 Ala. 565, 219 So.2d 392 (1969). | Plaintiff cannot, by way of estoppel, endow with validity a transaction which is illegal and against public policy. | Can one by way of estoppel endow with validity a transaction which is illegal and against public policy? | Estoppel - Memo #200 - C - CSS_64537.docx | ROSS-003280135-ROSS-003280136 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 13832 | Peoples Bank & Tr. Co. v. Fid. & Cas. Co. of N. Y., 231 N.C. 510 | 170+113 | False pretense and forgery are closely akin, both belonging historically to the family of offenses known to the common law as "cheats," and now so classed. False pretense is the heart of forgery,--- the essence of its being. The principal difference between the two, historically developed in the common law, is that forgery exclusively pertains to a writing, while false pretense covers fraudulent deceits by parol. Treatment of forgery as a separate offense came from recognition that a fraud perpetrated in altering a writing or in making a false writing tends directly to destroy the security which permanent monuments in writing give to transactions affecting the more important rights of persons privy to them. It became a separate and graver offense; but the gist of forgery still is fraud. Davenport v. Commonwealth, 287 Ky. 505, 154 S.E.2d 552; Leslie v. Kennedy, 249 Mich. 553, 225 N.W. 469; State v. Luff, 198 N.C. 600, 152 S.E. 791; Burdick, Law of Crime, Vol. 2, p. 550, sec. 663. | "False pretense" is heart of forgery and principal difference between the two is that forgery exclusively pertains to a writing, while false pretense covers fraudulent deceits by parol. | How is false pretense different from forgery? | 018435.docx | LEGALEASE-00159850-LEGALEASE-00159851 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13833 | Gordon's Const. & Landfill v. Iberia Par. Gov't, 815 So. 2d 991 | 183+4 | The general rule is that a claim that an exclusive franchise or privilege has been acquired is not regarded favorably, and that, in the absence of an express provision to that effect, grants of franchises are not construed to be grants of exclusive privileges: as sometimes stated, a grant in general terms does not confer exclusive privileges. So, as a general rule, an exclusive franchise does not arise by implication. 36 Am Jur 2nd, section 32, Franchises, pp. 754-755. | Generally, the claim that an exclusive franchise or privilege has been acquired is not regarded favorably, and in the absence of an express provision to that effect, grants of franchises are not construed to be grants of exclusive privileges; exclusive franchise does not arise by implication. | Are exclusive franchises favored under law? | 018498.docx | LEGALEASE-00159980-LEGALEASE-00159981 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 13834 | Gordon's Const. & Landfill v. Iberia Par. Gov't, 815 So. 2d 991 | 183+4 | With the grant of an exclusive franchise, a public body cannot violate its agreement and grant a competing franchise to another corporation without compensating the owners of the first franchise. In effect, the grantor of an exclusive franchise removes from itself the power and authority to grant similar rights to others or to permit others to engage in the same activity for which the exclusive franchise was awarded. A non-exclusive franchise does not include the right to be free of competition, and does not prevent the granting of a similar franchise to others. 36 Am Jur 2nd, Section 33 Franchises, pp. 756-757; Town of Coushatta Vs. Valley Electric Member[.] Corp., 139 So.2d 822 (1962). | In effect, the grantor of an exclusive franchise removes from itself the power and authority to grant similar rights to others or to permit others to engage in the same activity for which the exclusive franchise was awarded. LSA-R.S. 33:4169.1. | What are exclusive franchises? | Franchise - Memo 36 - KNR_64632.docx | ROSS-003293434-ROSS-003293435 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 13835 | Neils v. City of Seattle, 185 Wash. 269 | 183+2 | The power to grant franchises is a sovereign power, resting in the state. It may be delegated by the state, but it is not within the powers of cities unless expressly delegated to them by the state. State ex rel. Spring Water Co. v. Monroe, 40 Wash. 545, 82 P. 888; Dolan v. Puget Sound Traction, Light & Power Co., 72 Wash. 343, 130 P. 353. | Power to grant franchises is a sovereign power, resting in state, and may be delegated by state, but it is not within powers of cities unless expressly delegated to them by state. | Can the power to grant franchises be delegated by the State? | 018510.docx | LEGALEASE-00160044-LEGALEASE-00160045 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 13836 | People v. Union Tr. Bank, 406 Ill. 208 | 106+219.10(5) | Defendant seeks to invoke our jurisdiction on the theory that a franchise is involved, within the contemplation of section 75 of the Civil Practice Act. (Ill.Rev.Stat.1949, chap. 110, par. 199). While the privilege or right to be a corporation is a franchise, Marnik v. Northwestern Packing Co., 400 Ill. 66, 79 N.E.2d 54; People v. O'Hair, 128 Ill. 20, 21 N.E. 211, to authorize a direct appeal on the ground that a franchise is involved, there must be a question as to the validity or the existence of the corporation or franchise or the right to exercise the privileges of a franchise. People ex rel. Groff v. Board of Education, 383 Ill. 166, 48 N.E.2d 954; Wennersten v. Sanitary Dist. of Chicago, 274 Ill. 189, 113 N.E. 148. | To authorize direct appeal to Supreme Court on ground that franchise is involved, there must be question as to validity or existence of corporation or franchise or right to exercise privileges of franchise. S.H.A. ch. 110, S 199. | Is the right to be a corporation a franchise? | 018521.docx | LEGALEASE-00159797-LEGALEASE-00159798 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13837 | Cohen v. Vill. of Kensington, 61 Misc. 2d 122 | 371+2233 | The classic definition of a franchise was given long ago. "A franchise is a special privilege conferred by government on individuals, and which does not belong to the citizens of a country generally, by common right." (Curtis v. Leavitt, 15 N.Y. 9, at p. 170). A "special franchise" as defined in Section 102, subdivision 17, of the Real Property Tax Law, reads as follows: "Special franchise' means the franchise, right, authority or permission to construct, maintain or operate in, under, above, upon or through any public street, highway, water or other public place mains, pipes, tanks, conduits, wires or transformers, with their appurtenances, for conducting water, steam, light, power, electricity, gas or other substance. The term special franchise shall not include property of a municipal corporation.' | Corporation's agreement to install and maintain new street lighting system on village realty and lease it to village for period of ten years did not result in "special franchise" taxable under Real Property Tax Law. Real Property Tax Law S 102, subd. 17. | What does the term special franchise with regard to real property tax law imply? | Franchises - Memo 17 - KNR_65689.docx | ROSS-003295010-ROSS-003295011 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 13838 | Hatch's Estate v. C.I.R., 198 F.2d 26 | 220+3933.1 | However, in 1950, the Commissioner of Internal Revenue acquiesced to the overwhelming case authority to the effect that for income tax purposes the sale of a partnership interest in a going concern should be treated as the sale of a capital asset.Such has been the rule in this circuit since the decision of Stilgenbaur v. United States, Cir., 1940, 115 F.2d 283, 286, 287. For despite the fact that a partner is said to be a co-owner of "specific partnership property", his right to possess such property is limited to partnership purposes,9 and his right to the specific property is non-assignable. Thus, the nature of the interest which a partner actually has in the partnership itself is the right to share in profits and surplus and the right to share in the net value of the partnership after settlement of its affairs. Clarke v. Fiedler, 1941, 44 Cal.App.2d 838, 113 P.2d 275. And this partnership interest is personal property which is separate and distinct from his co-ownership of the specific partnership property. Dudley T. Humphrey v. C.I.R., 1935, 32 B.T.A. 280. | For income tax purposes, sale of partnership interest in going concern should be treated as sale of capital asset, if the transaction in substance and effect, as distinguished from form and appearance, is essentially the sale of a partnership interest. 26 U.S.C.A. (I.R.C.1954) S 1202. | Should the sale of a partnership asset be treated as the sale of a capital asset? | 022556.docx | LEGALEASE-00160242-LEGALEASE-00160243 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 13839 | Geiselman v. Andreson, 242 S.W. 798 | 289+768 | Andreson's allegation that the Big Sand Oil Company was an "unincorporated joint"stock company," and that Geiselman and Kutschback were "members, stockholders and shareholders" thereof, was an allegation of partnership. Lumber Co. v. Pine Land Association, 31 Tex. Civ. App. 375, 72 S. W. 875; Allen v. Long, 80 Tex. 261, 16 S. W. 43, 26 Am. St. Rep. 735; Cameron v. First National Bank, 4 Tex. Civ. App. 369, 23 S. W. 334. And such allegations were sufficient to apprise them that they were being sued as partners.Allegations of partnership can be controverted only by a special plea denying under oath the fact of the partnership. Article 1906, R. C. S.; Railway v. Tisdale, 74 Tex. 8, 11 S. W. 900, 4 L. R. A. 545; Railway v. Edloff, 89 Tex. 454, 34 S. W. 414, 35 S. W. 144. Unless so denied, such allegations are taken as confessed. Appellant's answer does not contain a specific denial of partnership, nor do the facts alleged constitute a denial of partnership. They admitted their membership in the Big Sand Oil Company. Though alleging that the Big Sand Oil Company was a trust, they do not allege facts making it a trust. They do not give the articles of association or declarations of trust in their plea. They do not negative all control of property by the shareholders, nor do they negative the fact that the trustees and their successors in office were under the control of the shareholders and elected by them. Even if the doctrine of the Massachusetts trust, so"called, were the law of this state""a point we do not decide in this case""it would be necessary to negative the fact suggested in order to make the Big Sand Oil Company anything other than a partnership. Davis v. Hudgins (Tex. Civ. App.) 225 S. W. 73. | Allegations of partnership can be controverted only by a special plea, denying under oath the fact of the partnership, and, unless so denied, such allegations are taken as confessed. | Can allegations of a partnership be taken as confessed if not denied under oath? | 022604.docx | LEGALEASE-00160110-LEGALEASE-00160111 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13840 | Anchor Centre Partners, Ltd. v. Mercantile Bank, N.A., 803 S.W.2d 23 | 289+535 | The rights and liabilities of the parties depend on the statutes relating to partnerships and the common law. As a general rule, a fiduciary relationship exists between partners with respect to partnership transactions. Michaelson, 261 S.W.2d at 925; " 358.210. A partner is an agent of the partnership for purposes of its business and the rights and liabilities of a partner to other partners and third parties is largely determined by principles of agency. Baker v. McCue"Moyle Development Co., 695 S.W.2d 906, 911 (Mo.App.1984); " 358.040.3; " 358.090.1. Specific partnership property ordinarily cannot be assigned by a partner to secure personal debts of a partner and attempts to make such assignments are void. Bates County Nat'l Bank v. Wilson, 767 S.W.2d 101, 103 (Mo.App.1989); " 358.090.2; " 358.250.2(2); " 359.090(4) (repealed effective 1"1"89, RSMo Supp.1987). The rules regarding the rights, powers and restrictions of partners are applicable to a general partner in a limited partnership. " 359.090 (now repealed). Those doing business with a partnership are presumed to know the law, even if ignorant of a partnership agreement. | Partner is agent of partnership for purposes of its business, and rights and liabilities of partner to other partners and third parties is largely determined by principles of agency. V.A.M.S. SS 358.040, subd. 3, 358.090, subd. 1. | Does the principle of agency govern a partners liability? | Partnership - Memo 547 - GP_64573.docx | ROSS-003280786-ROSS-003280787 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 13841 | BLDG Mgmt. Co. v. Meija, 32 Misc. 3d 652 | 388+14 | Petitioner's assertion that 22 NYCRR " 208.14 is not applicable to Housing Court proceedings is incorrect. 22 NYCRR " 208.14 provides that "This Part shall be applicable to all actions and proceedings in the Civil Court of the City of New York [Id.; see also Centennial Restorations Co. v. Wyatt, 248 A.D.2d 193, 669 N.Y.S.2d 585 holding 22 NYCRR " 208.14 is applicable to Housing Court proceedings]." 22 NYCRR " 208.14 is titled "Calendar default; restoration; dismissal." " 208.14(a) reads "Applicability. This section governs calendar defaults, restorations and dismissals ...". | Rule governing calendar defaults, restorations, and dismissals is applicable to Housing Court proceedings. N.Y.Ct.Rules, S 208.14. | "Is the rule governing calendar defaults, restorations, and dismissals applicable to Housing Court proceedings?" | 039731.docx | LEGALEASE-00159284-LEGALEASE-00159285 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13842 | Salvi v. Vill. of Lake Zurich, 2016 IL App (2d) 150249 | 307A+622 | Plaintiff challenges the dismissal of her first amended complaint. The Village's hybrid motion under section 2"619.1 of the Code invoked the standards of section 2"615 and section 2"619 of the Code. A motion to dismiss under section 2"615 of the Code challenges the legal sufficiency of a complaint, based on defects apparent on its face. Marshall v. Burger King Corp., 222 Ill.2d 422, 429, 305 Ill.Dec. 897, 856 N.E.2d 1048 (2006). In contrast, a motion to dismiss pursuant to section 2"619 admits the legal sufficiency of the complaint but asserts some other matter that defeats the claim. Patrick Engineering, Inc. v. City of Naperville, 2012 IL 113148, 364 Ill.Dec. 40, 976 N.E.2d 318. For instance, subsection (a)(9) of section 2"619 provides for dismissal of a claim that is "barred by affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2"619(a)(9) (West 2014)). | A motion to dismiss on the pleadings challenges the legal sufficiency of a complaint, based on defects apparent on its face, whereas a motion for involuntary dismissal admits the legal sufficiency of the complaint but asserts some other matter that defeats the claim. S.H.A. 735 ILCS 5/2-615, 5/2-619. | Does a motion to dismiss on the pleadings challenge the complaint's legal sufficiency? | 039885.docx | LEGALEASE-00159746-LEGALEASE-00159747 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 13843 | Lloyd Noland Found. v. HealthSouth Corp., 979 So. 2d 784 | 307A+561.1 | However, a party can obtain a dismissal under Rule 12(b)(6), Ala. R. Civ. P., on the basis of an affirmative defense when " "the affirmative defense appears clearly on the face of the pleading." " Jones v. Alfa Mut. Ins. Co., 875 So.2d 1189, 1193 (Ala.2003)(quoting Braggs v. Jim Skinner Ford, Inc., 396 So.2d 1055, 1058 (Ala.1981)). In Jones v. Alfa, supra, the face of the plaintiffs' complaint did not indicate that the statutory limitations period applicable to their bad-faith refusal-to-pay-insurance-benefits claim had expired before they sued; therefore, the insurer was not entitled to a dismissal pursuant to Rule 12(b)(6), Ala. R. Civ. P., on the affirmative defense of the statute of limitations. | Dismissal for failure to state a claim can be obtained on the basis of an affirmative defense when the affirmative defense appears clearly on the face of the pleading. Rules Civ.Proc., Rule 12(b)(6). | Can a dismissal be obtained when the affirmative defense appears clearly on the face of the pleading? | 039937.docx | LEGALEASE-00159626-LEGALEASE-00159627 | Order, SA | 0.72 | 1 | 0 | 0 | 1 | |
| 13844 | Del-Val Elec. Inspection Serv. v. Stroudsburg-E. Stroudsburg Zoning & Codes Office, 100 Pa. Cmwlth. 429 | 307A+583 | In our view and in keeping with Pa.R.C.P. No. 1030, a defendant's recourse upon the plaintiff's failure to prosecute his action within a reasonable time after suit is commenced lies in a petition for non pros, see Gallagher v. Jewish Hospital Association, 425 Pa. 112, 228 A.2d 732 (1967); 1 Goodrich-Amram, Standard Pennsylvania Practice " 231(b): 2.1 (1986), the grant of which petition rests within the discretion of the trial court. Gallagher. | Grant of petition for non pros rests with sound discretion of trial court. | Does the grant of petition for non pros rest with sound discretion of trial court? | 040533.docx | LEGALEASE-00160234-LEGALEASE-00160235 | Order, SA | 0.83 | 1 | 0 | 0 | 1 | |
| 13845 | Bridges v. Prod. Operators, 974 So. 2d 54 | 371+3602 | The Louisiana sales and use tax is an excise tax, which is imposed "upon the transaction itself, not the property involved in the transaction." Bruce J. Oreck, Louisiana Sales & Use Taxation, " 2.1 (2d ed.1996). The Louisiana use tax is assessed on the "cost price" of items used in the state, and the sales tax is assessed on the "sales price" of items sold in the state. The sales and use taxes are complementary taxes designed to "make all tangible property sold or used subject to a uniform tax burden regardless of whether it is acquired inside the state and subject to a sales tax or acquired outside the state and subject to a use tax." Pensacola Const. Co. v. McNamara, 558 So.2d 231, 232-33 (La.1990). | The Louisiana sales and use tax is an excise tax, which is imposed upon the transaction itself, not the property involved in the transaction. | Is sales and use tax an excise tax that is imposed upon a transaction? | 046206.docx | LEGALEASE-00160014-LEGALEASE-00160015 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13846 | DaimlerChrysler Servs. N. Am. v. Arizona Dep't of Revenue, 210 Ariz. 297 | 371+3604 | By way of background, Arizona's transaction privilege tax is imposed upon the "privilege of engaging in business" here, and is "measured by the [business entity's] gross receipts." Ariz. State Tax Comm'n v. Southwest Kenworth, Inc., 114 Ariz. 433, 436, 561 P.2d 757, 760 (App.1977) (emphasis added). As the United States Supreme Court recognizes, a transaction privilege tax differs from a sales tax: We follow standard usage, under which gross receipts taxes are on the gross receipts from sales payable by the seller, in contrast to sales taxes, which are also levied on the gross receipts from sales but are payable by the buyer (although they are collected by the seller and remitted to the taxing entity). | Gross receipts taxes are on the gross receipts from sales payable by the seller, in contrast to sales taxes, which are also levied on the gross receipts from sales but are payable by the buyer, although they are collected by the seller and remitted to the taxing entity. | What are gross receipts taxes? | Taxation - Memo 1099 - C - SU_65676.docx | ROSS-003293023 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 13847 | Durant v. State, 222 Ga. App. 872 | 3.77E+35 | Aggravated stalking, OCGA " 16"5"91(a) requires, inter alia, making non-consensual contact with another person "for the purpose of harassing and intimidating the other person." Contact means to get in touch with and communicate with another person. Johnson v. State, 264 Ga. 590, 591(1), 449 S.E.2d 94 (1994). " "[H]arassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm to himself or herself or to a member of his or her immediate family, and which serves no legitimate purpose." OCGA " 16"5"90(a). | Under aggravated stalking law which requires, inter alia, making nonconsensual contact with another person for the purpose of harassing and intimidating the other person, "contact" means to get in touch with and communicate with another person. O.C.G.A. S 16-5-91(a). | "What does ""contact"" mean under aggravated stalking laws in regards to nonconsensual contact for the purpose of harassing and intimidating the other person?" | 046910.docx | LEGALEASE-00160292-LEGALEASE-00160293 | Order, SA | 0.58 | 1 | 0 | 0 | 1 | |
| 13848 | Light v. United States, 220 U.S. 523 | 92+2412 | The Holy Cross Forest Reserve was established under the provisions of the Act of March 3, 1891. By that and subsequent statutes the Secretary of Agriculture was authorized to make provisions for the protection against destruction by fire and depredations of the public forest and forest reservations, and to "make such rules and regulations and establish such service as will insure the objects of such reservations; namely, to regulate their occupancy and use, and to preserve the forests thereon from destruction." 26 Stat. at L. 1103, chap. 561, U. S. Comp. Stat. 1901, p. 1537; 30 Stat. at L. 35, chap. 2, U. S. Comp. Stat. 1901, p. 1540; act of Congress February 1, 1905 [33 Stat. at L. 628, chap. 288, U. S. Comp. Stat. Supp. 1909, p. 577]; 7 Fed. Stat. Anno. 310, 312; and Fed. Stat. Anno. Supp. 1909, page 663. In pursuance of these statutes, regulations were adopted establishing grazing districts on which only a limited number of cattle were allowed. The regulations provided that a few head of cattle of prospectors, campers, and not more than ten belonging to a settler residing near the forest, might be admitted without permit; but, saving these exceptions, the general rule was that "all persons must secure permits before grazing any stock in a national forest." | Legislative power was not unconstitutionally delegated to the Secretary of Agriculture by the provisions of the forest reserve act (Act June 4, 1897, c. 2, 30 Stat. 35 and Act Feb. 1, 1905, c. 288, S 5, 33 Stat. 628), making criminal the violation of the rules and regulations covering forest reservations, made and promulgated by him under authority of those statutes. | Is the Secretary of Agriculture authorized to make provisions for the protection against destruction by fire and depredations of the public forest and forest reservations? | Woods and Forests - Memo 10-ANM_64528.docx | ROSS-003309220-ROSS-003309221 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13849 | Aiken Bag Corp. v. McLeod, 89 Ga. App. 737 | 8.30E+76 | A check does not of itself operate as an assignment of any part of the drawer's funds deposited with the bank upon which the check is drawn, and the bank is not liable to a holder of a check unless and until it accepts or certifies the check. Dixon & Co. v. Bank of Quitman, 23 Ga.App. 279(3), 98 S.E. 112; Code, " 14-1707. From this it follows that a check is a mere order upon a bank to pay from the drawer's account and is subject to revocation by the drawer at any time before it has been certified, accepted, or paid by the bank. 7 Am.Jur. 437, Banks, " 602. | A check is a mere order upon a bank to pay from the drawer's account and is subject to revocation by drawer at any time before it has been certified, accepted, or paid by the bank. Code, S 14-1707. | Can a check be revoked before it has been paid by the bank? | 010555.docx | LEGALEASE-00160791-LEGALEASE-00160792 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 13850 | United States v. Reyes, 239 F.3d 722 | 110+1152.21(1) | Reyes and Maldonado each argue that their respective cases present a question of "positional predisposition," as that concept is described in United States v. Hollingsworth, 27 F.3d 1196 (7th Cir.1994)(en banc), and that the trial court erred in refusing to charge the jury on the issue. We review the district court's refusal to give a requested jury instruction for an abuse of discretion. See United States v. Dixon, 185 F.3d 393, 402 (5th Cir.1999). | Court of Appeals reviews district court's refusal to give requested jury instruction for abuse of discretion. | Did the district court abuse its discretion in refusing to instruct the jury on positional predisposition in prosecution for bribery? | 012541.docx | LEGALEASE-00161705-LEGALEASE-00161706 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 13851 | Hudson v. Sch. Dist. No. 1, Lancaster Cty., 5 Neb. App. 908 | 135H+25 | The crux of Hudson's argument is that the School District and the Lancaster County courts are all subdivisions of the State of Nebraska and that his termination from employment in addition to his trial on the assault charge constitutes his being placed in jeopardy twice for the same purported offense. Citing United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), Hudson correctly claims that a civil penalty may constitute punishment for the purpose of a double jeopardy analysis. See id | Civil penalty may constitute "punishment" for purpose of double jeopardy analysis. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 12. | "Can a civil penalty constitute ""punishment"" for a purpose of double jeopardy analysis?" | 015156.docx | LEGALEASE-00160592-LEGALEASE-00160593 | SA, Sub | 0.74 | 0 | 0 | 1 | 1 | |
| 13852 | United States v. $455,273.72 in Funds from Bank of Am. Checking Account #┬ú0019-2067-7376 held in the name of the Voice of Soc. Concern Ass'n, 813 F. Supp. 2d 124 | 135H+25 | Nor is the Court persuaded by claimant Ndoromo's assertions to the contrary. Mr. Ndoromo's principal argument in opposition to the government's motion is that awarding the government the relief it seeks would violate the constitutional proscription against double jeopardy because this civil forfeiture action is based upon the same facts that formed the basis for his criminal conviction. See Claimant's Opp'n at 2 (arguing that "seizure under Fed.R.Crim.P. Rule 41 constitute[s] criminal punishment for double jeopardy purpose [sic] in civil procedures [sic]."). That argument, however, is without merit, as the Supreme Court has held that "in rem civil forfeitures are neither "punishment" nor criminal for purposes of the Double Jeopardy Clause." | In rem civil forfeitures are neither punishment nor criminal for purposes of the Double Jeopardy Clause. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. SS 981, 985. | "Is an in rem civil forfeiture ""punishment"" for double jeopardy purposes?" | Double Jeopardy - Memo 93 - C - NS_65733.docx | ROSS-003320897-ROSS-003320898 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 13853 | Groves v. Prickett, 420 F.2d 1119 | 156+52.10(1) | A waiver is an intentional relinquishment or abandonment of a known right or privilege. Beasley v. Wilson, 370 F.2d 320 (9th Cir. 1966), cert. denied 387 U.S. 913, 87 S.Ct. 1700, 18 L.Ed.2d 634 (1967) (C.A.Cal.); United States v. Chichester, 312 F.2d 275 (9th Cir. 1963) (C.A.Cal.). A waiver can be employed only for defensive purposes. Although it can preclude the assertion of legal rights, it cannot be used to impose legal duties. Rennie & Laughlin, Inc. v. Chrysler Corp., 242 F.2d 208 (9th Cir. 1957) (C.A.Cal.). As minimum requirements to constitute an "implied waiver" of substantial rights, the conduct relied upon must be clear, decisive and unequivocal of a purpose to waive the legal rights involved. Otherwise, there is no waiver. United States v. Chichester, supra | Waiver can be employed only for defensive purposes, and although it can preclude assertion of rights it cannot be used to impose legal duties. | Can waiver be used to impose legal duties? | 018106.docx | LEGALEASE-00161227-LEGALEASE-00161228 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13854 | Clear Lake Ctr. v. Garden Ridge, 416 S.W.3d 527 | 156+52.10(3) | "Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." Ulico Cas. Co. v. Allied Pilots Ass'n, 262 S.W.3d 773, 778 (Tex.2008). "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." Id. And even if a party to a contract could be charged with notice of its right and then acts inconsistent with the right, waiver cannot be asserted to create a new contractual liability. See id. | The elements of waiver include: (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. | What are the elements of waiver? | 018114.docx | LEGALEASE-00161271-LEGALEASE-00161272 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 13855 | Moss v. Aetna Life Ins. Co., 73 F.2d 339 | 156+52.10(2) | Viewing this testimony in the light most favorable to the plaintiffs, we fail to see in it such substantial character as is required to support a verdict for the plaintiffs based upon waiver. "In the absence of conduct creating an estoppel, a waiver must be supported by an agreement founded upon a valuable consideration. There can be no waiver unless so intended by one party and so understood by the other, but when a party has so acted as to mislead the other he is estopped thereby. " Reynolds v. Detroit Fidelity & Surety Co., 19 F.(2d) 110, 113 (C.C.A. 6); Hasler v. West India S. S. Co., 212 F. 862, 867 (C.C.A. 2). It is clear that the waiver here asserted can be supported only by conduct creating an estoppel. The principle underlying the rule of estoppel is based upon acquiescence of the party against whom the estoppel is claimed to acts of the other party, who relies upon such acquiescence to his injury. | Waiver must be supported by agreement founded on valuable consideration, in absence of conduct creating estoppel. | Should waiver be supported by an agreement founded upon valuable consideration? | Estoppel - Memo 264 - C - CSS_65743.docx | ROSS-003279419-ROSS-003279420 | Order, SA | 0.88 | 1 | 0 | 0 | 1 | |
| 13856 | Barker & Bratton Steel Works v. N. River Ins. Co., 541 S.W.2d 294 | 257+157(7) | We find no waiver even if the affidavits filed in opposition to the motion for summary judgment are taken as true. The conversations described therein do not indicate waiver by the owner or general contractor. A waiver is the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right. Praetorians v. Strickland, 66 S.W.2d 686 (Tex.Comm'n App.1933, jdgmt. adopted). There is no summary-judgment evidence of an intentional relinquishment of rights or of conduct warranting an inference of such relinquishment of rights of the owner, contractor or surety company. | Conversation wherein officer for steel fabricator allegedly agreed to delivery of materials, prior to time mechanic's lien affidavit was due or filed, once officer for general contractor stated that surety had agreed to pay fabricator's claim for materials supplied was not evidence of an intentional relinquishment of rights or of conduct warranting an inference of such relinquishment by owner, contractor or surety and, hence, was not evidence of a waiver by owner, contractor or surety of defect appearing in mechanic's lien affidavit or timely filing thereof. Vernon's Ann.Civ.St. arts. 5453, 5472d. | Is waiver such conduct as warrants inference of the relinquishment of a right? | 018178.docx | LEGALEASE-00161876-LEGALEASE-00161877 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13857 | Paret v. Louisiana Highway Comm'n, 178 La. 454 | 200+79.5 | Sections 3369 and 3370 of the Revised Statutes do not prescribe a method by which police juries may acquire title to the land needed for public road purposes, but only a method by which they may acquire a right of passage or a servitude over the land, the fee remaining in the owner of the soil. Civ. Code, art. 658; Bradley v. Pharr, 45 La. Ann. 426, 12 So. 618, 19 L. R. A. 647; Fuselier v. Police Jury, 109 La. 551, 33 So. 597; Police Jury v. Martin, 140 La. 848, 74 So. 170. | Police jury widening road acquired only servitude over strips of land on each side of old road, and nonuse of one strip, for over ten years, together with use by fee owner, barred public's right to servitude. Rev.St. SS 3369, 3370; Civ.Code, arts. 658, 789. | Does the opening or laying out of a road vest in the Police Jury a right of passage over the land? | 018833.docx | LEGALEASE-00161757-LEGALEASE-00161758 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 13858 | Perry v. Lee Cty., 71 Ark. App. 47 | 200+77(2) | While, arguably, the circuit court was correct in concluding that appellant's appeal was untimely, we do not address that issue. In a case involving similar facts, First Pyramid Life Ins. Co. v. Reed, 247 Ark. 1003, 449 S.W.2d 178 (1970), appellees asked that the Arkansas Supreme Court dismiss the appeal because appellant failed to timely perfect its appealto circuit court. The court, however, concluded that it was not necessary to determine whether this omission was fatal to the circuit court's jurisdiction. Rather, the court held that a petition to open a county road must be signed by at least ten freeholders of the county and that thecounty court can only acquire jurisdiction of a proceeding when there is strict compliancewith the requirements of the statutes relating to the signing of the petition to open a county road. Because only six freeholders signed the petition, the court concluded that neither the county court, the circuit court, nor the Arkansas Supreme Court had jurisdiction to pass upon the merits of the case and reversed and dismissed the case. As in First Pyramid, because the petition to vacate the road did not contain the signatures of at least ten freeholders of the county, therewas not strict compliance with the statutes. Again, as in First Pyramid, the county court can only acquire jurisdiction of a proceeding under these sections when there is strict compliance with the requirements of the statutes relating to the signing of the petition. Because of the failure to strictly comply with the applicable statutes, the county court did not acquire jurisdiction of the case, and neither the circuit court nor this court can pass upon the merits of the case. Therefore,we reverse and dismiss. | County court did not have jurisdiction over petition to open county road, where only six freeholders, rather than the requisite ten freeholders, signed petition. A.C.A. SS 14-298-103(a), 14-298-117(a). | Does a petition to open a county road have to be signed by ten freeholders of the county? | Highways - Memo 440 - RK_66341.docx | ROSS-003281179-ROSS-003281180 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 13859 | Bloebaum v. Gen. Am. Life Ins. Co., 734 S.W.2d 539 | 217+1012 | Initially we note that where the court is only called upon to construe the provisions of a contract, the intent of which can be ascertained from its face, and to apply those provisions to undisputed facts it is an appropriate case for summary judgment. Teter v. Morris, 650 S.W.2d 277, 286 (Mo.App.1982); Nat'l Merchandising Corp. v. McAlpin, 440 S.W.2d 489, 494 (Mo.App.1969). Furthermore, medical and hospital expense insurance is not insurance in the usual sense, providing benefits upon the occurrence of an event. It is by definition a contract of indemnity, See Couch on Insurance 2d (Rev ed) " 41A:42, intended to indemnify and hold the insured harmless from obligations he is by law compelled to pay. Steffen v. Pacific Mut. Life Ins. Co., 442 S.W.2d 142, 145 (Mo.App.1969). The language of the contract in the instant case clearly establishes this intent. In addition to the above quoted language excluding the payment of any benefits for services for which no charge is made or for which the insured is not legally obligated to make payment, the policy also expressly excludes from coverage expenses paid for by the United States Government or under state sickness laws, under worker's compensation laws, or for services furnished without charge by government hospitals or agencies. Additionally, the policy contains a standard Multiple Coverage Limitation and Coordination provision under which the benefits payable under more than one medical expense plan shall not exceed the actual expenses paid by the insured. This provision is explained in the employee's certificate of insurance which states the purpose of group health insurance is to lessen the burden of hospital and medical expense, but to avoid profiting in excess of actual expenses as that "boosts" the cost of the insurance to fellow employees. | Medical and hospital expense insurance is not insurance in usual sense, providing benefits upon occurrence of an event; it is by definition contract of indemnity, intended to indemnify and hold insured harmless from obligations he is by law compelled to pay. | "Are medical and hospital expense insurance, insurance in the usual sense? " | Insurance - Memo 114 - SNJ_65771.docx | ROSS-003292732-ROSS-003292733 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13860 | Stephanz v. Laird, 846 S.W.2d 895 | 289+453 | Persons who intend to do the things that constitute a partnership are partners whether their expressed purpose was to create or avoid the relationship.Taylor v. Lewis, 553 S.W.2d 153, 158 (Tex.Civ.App."Amarillo 1977, writ ref'd n.r.e.); see also Coastal Plains, 572 S.W.2d at 287. | Persons who intend to do things that constitute partnership are partners whether their expressed purpose was to create or avoid relationship. | "If the parties intend to do things that constitute a partnership, are they partners?" | 022666.docx | LEGALEASE-00161315-LEGALEASE-00161316 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 13861 | Harris v. Johnson, 218 Ill. App. 3d 588 | 302+8(1) | The purpose of pleadings is to present, define, and narrow the issues, to limit the proof needed at trial, and to inform the defendant and the court of the conduct for which the defendant is called upon to answer and the relief which the plaintiff desires. (People ex rel. Hartigan v. Candy Club (1986), 149 Ill.App.3d 498, 500, 103 Ill.Dec. 167, 501 N.E.2d 188.) To state a cause of action properly, a complaint must contain facts and not merely conclusions. (Gray v. City of Plano (1986), 141 Ill.App.3d 575, 578, 95 Ill.Dec. 928, 490 N.E.2d 1020.) Although pleadings are to be construed liberally with the aim of doing substantial justice between the parties, a plaintiff is not relieved from the duty of including sufficient factual averments in his complaint. (Ill.Rev.Stat.1989, ch. 110, par. 2"603(c); Gray, 141 Ill.App.3d at 578, 95 Ill.Dec. 928, 490 N.E.2d 1020.) A complaint will be deemed sufficient if the allegations contained therein reasonably inform the defendant by factually setting forth the elements necessary to state a cause of action. (People ex rel. Scott v. College Hills Corp. (1982), 91 Ill.2d 138, 145, 61 Ill.Dec. 766, 435 N.E.2d 463; Gray, 141 Ill.App.3d at 578"79, 95 Ill.Dec. 928, 490 N.E.2d 1020.) A cause of action will be dismissed if the complaint contains mere conclusions unsupported by facts. | To state cause of action properly, complaint must contain facts and not merely conclusions; cause of action will be dismissed if complaint contains mere conclusions unsupported by facts. | "Should a complaint contain facts, to state a cause of action properly?" | Pleading - Memo 607 - RMM_65792.docx | ROSS-003282596-ROSS-003282597 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13862 | Moore v. Sergi, 38 Conn. App. 829 | 302+38.5 | Pleadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them." Malone v. Steinberg, 138 Conn. 718, 721, 89 A.2d 213 (1952). "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." Francis v. Hollauer, 1 Conn.App. 693, 694"95, 475 A.2d 326 (1984). It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations in his complaint. Id., at 695, 475 A.2d 326; Kawasaki Kisen Kaisha Ltd. v. Indomar, Ltd., 173 Conn. 269, 272, 377 A.2d 316 (1977); Strimiska v. Yates, 158 Conn. 179, 185, 257 A.2d 814 (1969). "A plaintiff may not allege one cause of action and recover on another. Facts found but not averred cannot be made the basis for a recovery." Malone v. Steinberg, 138 Conn. 718, 721, 89 A.2d 213 (1952). | The purpose of the complaint is to limit the issues to be decided at the trial of a case and to prevent surprise. | "Are limiting the issues to be decided at the trial and preventing surprise, purposes of a complaint?" | Pleading - Memo 617 - RMM_65802.docx | ROSS-003281965-ROSS-003281966 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13863 | Prairie View A & M Univ. of Texas v. Mitchell, 27 S.W.3d 323 | 307A+695 | Our task is to examine the pleadings, to take as true the facts pleaded, and to determine whether those facts support jurisdiction in the trial court. Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex.1993); City of Austin v. L.S. Ranch, Ltd., 970 S.W.2d 750, 752"53 (Tex.App."Austin 1998, no pet.). We construe the pleadings in favor of the plaintiff. Id. If necessary, we may review the entire record to determine if there is jurisdiction. Id. It is not proper to dismiss an action when a legitimate pleading amendment will demonstrate the court's jurisdiction. Id. | It is not proper to dismiss an action when a legitimate pleading amendment will demonstrate the court's jurisdiction. | Does an appellate court not dismiss an action where a legitimate pleading amendment will demonstrate jurisdiction? | 040229.docx | LEGALEASE-00161663-LEGALEASE-00161664 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13864 | Lane v. Lensmeyer, 158 S.W.3d 218 | 307A+696.1 | The portion of the trial court's docket entry dismissing Lane's petition with prejudice is clearly at odds with its express grant of leave to file the amended petition. Once a petition is dismissed with prejudice, the trial court is powerless to reinstate it, including the filing of an amended petition.Liberman v. Liberman, 844 S.W.2d 79, 80 (Mo.App.1992). The trial court is presumed to know the law and, as such, this Court infers that the trial court in this case understood that it could not both dismiss Lane's petition with prejudice and grant him leave to amend it. See Harrison v. Coomber Realty & Inv. Co., 359 Mo. 862, 224 S.W.2d 63, 64 (1949) (stating that the trial court is presumed to know the law). Because the trial court granted Lane leave to file the amended petition and proceeded with the case, it could not have intended to dismiss his original petition with prejudice. The dismissal language was superfluous and without effect and does not cause Lane to lack standing in this appeal. | Once a petition is dismissed with prejudice, the trial court is powerless to reinstate it, including the filing of an amended petition. | "Once a petition is dismissed with prejudice, is the trial court powerless to reinstate it?" | Pretrial Procedure - Memo 11600 - C - SKG_65616.docx | ROSS-003278860-ROSS-003278861 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 13865 | Griffiths v. Helvering, 308 U.S. 355 | 220+3056 | We cannot too often reiterate that "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed-the actual benefit for which the tax is paid." Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. And it makes no difference that such "command" may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency. Cf. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. "A given result at the end of a straight path," this Court said in Minnesota Tea Co. v. Helvering, 302 U.S. 609, 613, 58 S.Ct. 393, 395, 82 L.Ed. 474, "is not made a different result because reached by following a devious path." Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed, particularly in the provisions of a tax law like those governing installment sales in s 44 of the Revenue Act of 1932. Taxes cannot be escaped "by anticipatory arrangements and contracts however skilfully devised * * * by which the fruits are attributed to a different tree from that on which they grew." Lucas v. Earl, i81 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731. What Lay gave Griffiths in reality got, and on that he must be taxed. The judgment is | Taxation is not so much concerned with the refinements of title as it is with actual command over property taxed, that is, the actual benefit for which the tax is paid, and it makes no difference that such command may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest or the maintenance of effective benefit through the interposition of a subservient agency. | Is taxation concerned with the actual command over the property taxed? | 046295.docx | LEGALEASE-00161689-LEGALEASE-00161690 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 13866 | City of Zanesville v. Richards, 5 Ohio St. 589 | 371+2003 | No tax, either for state, county, township, or corporation purposes, can be levied without express authority of law; and this section of the constitution is equally applicable to, and furnishes the governing principle for, all laws authorizing taxes to be levied for either purpose. | Without express authority of law, no tax for state, county, township, or corporate purposes can be levied. | Can tax be levied without express authority of law? | Taxation - Memo 1151 - C - JL_65485.docx | ROSS-003279171 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 13867 | Ajabu v. State, 677 N.E.2d 1035 | 3.77E+11 | The best evidence of legislative intent is the language of the statute itself. Y.A. v. Bayh, 657 N.E.2d 410, 416 (Ind.Ct.App.1995). The text of the intimidation statute does not limit the phrase "communicates a threat to another person" to only those threats made directly to or in the presence of the threatened party. The word communicate is not modified in any way. The word "communicate" encompasses those threats made known or transmitted to another person, and the statute does not limit the means utilized to convey the threat. Such threats include those a person makes known to the victim through the print, radio or television media with the requisite intent. | Word "communicate," as used in intimidation statute, encompasses those threats made known or transmitted to another person, and no requirement exists that threat be communicated directly to victim in order to support conviction. West's A.I.C. 35-45-2-1. | "What threats does the word ""communicate,"" as used in the intimidation statute, encompass?" | 046955.docx | LEGALEASE-00161000-LEGALEASE-00161001 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13868 | Walling v. Cushman, 238 Mass. 62 | 8.30E+12 | 3 The maker of a note is ordinarily deemed to have bound himself in accordance with the laws of the place where it is payable, where his contract is to be performed. See 5 R. C. L.964; Cherry v. Sprague, 187 Mass. 113, 72 N. E. 456, 67 L. R. A. 33, 105 Am. St. Rep. 381. As the contract of the indorser is a new and separate one, its validity is determined, as a general rule, by the laws of the state where the contract of indorsement is made; that is, where it takes effect by delivery. Lawrence v. Bassett, 5 Allen, 140; Akers v. Demond, 103 Mass. 318; Milliken v. Pratt, 125 Mass. 374, 28 Am. Rep. 241. This general rule, however, is not applicable when it appears from the special circumstances that the parties intended otherwise. And admittedly the presumption at common law is the same as that now formulated in the Negotiable Instruments Law (G. L. c. 107, " 69):"Except where the contrary appears every indorsement is presumed to have been made at the place where the instrument is dated." | Contract of indorsement being new and separate, its validity is determined generally by laws of state where made, and presumption of common law formulated in Negotiable Instruments Law is that unless contrary appears, indorsement is prima facie made at place where instrument is dated; and in suit against administrators of married woman who indorsed note dated and payable at Denver, Colo., it appearing that one note was made and indorsed in Illinois, there being no showing where others were made and indorsed, domicile of decedent was immaterial to her liability. | Does the law of the place determine the validity of a contract of indorsement? | 009177.docx | LEGALEASE-00162670-LEGALEASE-00162671 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 13869 | Guernsey v. Imperial Bank of Canada, 188 F. 300 | 8.30E+14 | The laws of the place where the indorsement is signed or is delivered so that it becomes a contract govern the validity and extent of the contract and therefore the necessity of some presentment, protest, and notice of dishonor. Aymar v. Sheldon, 12 Wend.(N.Y.) 439, 27 Am.Dec. 137. It is a curious fact that the remark in the opinion in this case that notice of dishonor is governed by the law of the place of indorsement, which is the real foundation of that doctrine announced in subsequent cases, was an obiter dictum. The question did not arise in the case at all. Story's Conflict of Laws (7th Ed.) Sec. 360; Musson v. Lake, 4 How. 262, 11 L.Ed. 967; Columbia Finance & Trust Co. v. Purcell (C.C.) 142 Fed. 984; Hatcher v. McMorine, 15 N.C. 122; Raymond v. Holmes, 11 Tex. 54; Briggs v. Latham, 36 Kan. 255, 259, 13 Pac. 393, 59 Am.Rep. 546; Williams v. Wade, 1 Metc. (Mass.) 82; Amsinck v. Rogers, 189 N.Y. 252, 257, 82 N.E. 134, 12 L.R.A. (N.S.) 875, 121 Am.St.Rep. 858; Givens & Herndon v. Western Bank, 2 Ala. 397, 400; Holbrook v. Vibbard, 3 Ill. 465, 468; Artisan's Bank v. Park Bank, 41 Barb.(N.Y.) 599; Commercial Nat. Bank v. Simpson, 90 N.C. 467, 471; Douglas v. Bank of Commerce, 97 Tenn. 133, 36 S.W. 874. | The laws of the place where an indorsement is signed or is delivered so that it becomes a contract govern the necessity of some presentment, demand, and notice of dishonor. | Which law governs the validity and extent of the contract when the indorsement is delivered? | Bills and Notes - Memo 1332 - RK_66235.docx | ROSS-003294252-ROSS-003294253 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13870 | Corbin Russwin v. Alexander's Hardware, 147 N.C. App. 722 | 95+129(1) | Black's Law Dictionary also provides guidance. A forum selection clause is "[a] contractual provision in which the parties establish the place (such as the country, state, or type of court) for specified litigation between them." Black's Law Dictionary 665 (7th ed.1999). Choice of jurisdiction (a.k.a., consent to jurisdiction), on the other hand, is "[t]he choice of the state (or country) that should exercise jurisdiction over a case." at 234, 414 S.E.2d 30. A choice-of-law clause is "[a] contractual provision by which the parties designate the jurisdiction whose law will govern any disputes that may arise between the parties." To summarize, a forum selection clause designates the venue, a consent to jurisdiction clause waives personal jurisdiction and venue, and a choice of law clause designates the law to be applied. | "Forum selection clause" designates the venue of any potential conflict arising out of a contract, whereas a "consent to jurisdiction clause" waives personal jurisdiction and venue, and a "choice of law clause" designates the law to be applied. | Does the choice of law clause designate the law to be applied? | Bills and Notes - Memo 1339 - RK_66242.docx | ROSS-003323536-ROSS-003323537 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 13871 | Nelson v. JPMorgan Chase Bank, N.A. | 172H+1584 | In the JPM, Mr. Augustin asserts that New Century violated RESPA, but fails to state or prove sufficient facts to support a claim under RESPA. Further, even assuming"without deciding"that New Century's disclosures were improper under " 2603 [uniform settlement statement] or " 2604 [home buying information booklets] of RESPA, the decisional law is clear that there is no private right of action for violations of RESPA's disclosure provisions. See Collins v. FMHA"USDA, 105 F.3d 1366, 1368 (11th Cir.1997), cert. denied, 521 U.S. 1127, 117 S.Ct. 2528, 138 L.Ed.2d 1028 (1997), reh'g denied, 521 U.S. 1145, 118 S.Ct. 25, 138 L.Ed.2d 1055 (1997) (explaining that "[t]he present " 2604(c) replaced the prior " 2605, which had explicitly provided an action for damages for its violation ... That Congress eliminated the provision when it amended the statute strongly suggests Congress intended that there no longer be a private damages remedy for violation of " 2604(c)."). See also Nelson, 707 F.Supp.2d at 317 ("RESPA itself provides no private right of action for technical violations of its disclosure mandates."). | Real Estate Settlement Procedures Act (RESPA) provides no private right of action for technical violations of its disclosure mandates. Real Estate Settlement Procedures Act of 1974, S 2 et seq., 12 U.S.C.A. S 2601 et seq. | Does RESPA provide a private right of action for technical violations of its disclosure mandates? | Consumer Credit - Memo 232 - RK_66301.docx | ROSS-003293835-ROSS-003293836 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13872 | United States v. Clementi, 70 F.3d 997 | 135H+25 | Because it simply cannot be punishment to take from a criminal that which the law forbids him to possess, the forfeiture of firearms under 18 U.S.C. " 924(d) is not punishment. Accordingly, based on the controlling law of Firearms and our reasoning in $21,282.00 in U.S. Currency, we hold that jeopardy does not attach to a " 924(d) forfeiture of firearms found in the possession of a felon. | Double jeopardy does not attach to forfeiture of firearms found in possession of felon, as it is not punishment to take from a criminal that which law forbids him to possess. U.S.C.A. Const.Amend. 5; 18 U.S.C.A. SS 922(g)(1), 924(d). | Does double jeopardy not attach to forfeiture of firearms found in possession of a felon? | Double Jeopardy - Memo 120 - C - BP_65899.docx | ROSS-003279631 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 13873 | T.M. on behalf of T.M. v. Quakertown Cmty. Sch. Dist., 251 F. Supp. 3d 792 | 141E+878 | To achieve a meaningful benefit, the school district must fashion a uniquely tailored individualized education program, or IEP, for the child. Endrew F., 137 S.Ct. at 991 (citing 20 U.S.C. "" 1401(9)(D), 1412(a)(1)). The IEP is the roadmap for the child's educational progress. It must be reasonably calculated to enable the child to make progress "appropriate in light of the child's circumstances." Id. at 999. It must "set out a plan for pursuing academic and functional advancement." Id. (citing 20 U.S.C. " 1414(d)(1)(A)(i)(I)"(IV)). The core of the IDEA is the collaborative process between the parents and the school officials to fashion the IEP. Id. at 994 (citing 20 U.S.C. " 1414). This collaboration among the parents and educators ensures careful consideration of the child's individual circumstances. Id. | School district placed elementary-aged autistic student in least restrictive environment capable of providing meaningful educational benefit under IDEA, although district did not implement recommendation of parents' evaluator in its entirety to reduce mainstreaming in favor of increase in one-on-one programming; evaluator's recommendation lacked details, student benefited from, and was making progress in, socialization, district adopted many recommended annual goals and plans, if one-on-one programming were implemented during school hours specially designed instruction would have required significant changes, district ensured regular contact with non-disabled peers and access to general education environment, and IEPs tracked progress with increasing and developing socialization opportunities. Individuals with Disabilities Education Act S 612, 20 U.S.C.A. S 1412(a)(5)(A). | Are school districts required to create an individualized education plan for disabled students under IDEA? | Education - Memo 333 - C - HJ.docx | LEGALEASE-00051889-LEGALEASE-00051891 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13874 | Regents of Univ. of Minnesota v. Lord, 257 N.W.2d 796 | 141E+998 | The limited conditions imposed by the state designer selection board act are radically different from the direct attempt to control all university expenditures dealt with in the Chase case. Moreover, times have greatly changed since 1928 when the Chase case was decided. At that time the University of Minnesota was largely self-supporting insofar as operating revenues were concerned, and its building requirements from the legislature were relatively modest. Today, on the other hand, the University of Minnesota receives hundreds of millions of dollars in legislative appropriations each biennium for operations and building needs. In light of this fact alone, the legislature must by necessity be said to have the right to impose reasonable, even though limited, conditions on the use of such sizable appropriations of public funds. | While legislature cannot place conditions on appropriations made to University of Minnesota for any purpose which would intrude on internal control and management of University by board of regents, legislature has power to impose reasonable conditions on use of funds appropriated by it to University if conditions are limited in scope and will promote general welfare. | Can the legislature impose reasonable conditions on the use of university funds? | 017264.docx | LEGALEASE-00162116-LEGALEASE-00162117 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 13875 | Addicks Servs. v. GGP-Bridgeland, LP, 596 F.3d 286 | 156+52.10(3) | Fairfield Fin. Group, Inc. v. Gawerc, 814 S.W.2d 204, 209 (Tex.App."Houston [1st Dist.] 1991, no writ); accord Bott v. J.F. Shea Co., 388 F.3d 530, 534 (5th Cir.2004). "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex.2003) (per curiam); accord Van Indep. Sch. Dist. v. McCarty, 165 S.W.3d 351, 353 (Tex.2005) ("While waiver may sometimes be established by conduct, that conduct must be unequivocally inconsistent with claiming a known right."). "Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver." Tenneco, 925 S.W.2d at 643. "Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, ... the question becomes one of law." Jernigan, 111 S.W.3d at 156"57; accord First Interstate Bank of Ariz., N.A. v. Interfund Corp., 924 F.2d 588, 595 (5th Cir.1991) ("[T]he issue of waiver becomes a matter of law only where material facts and circumstances are undisputed or clearly established and there is no room for argument or inference."). | Silence or inaction, for so long a period as to show an intention to yield the known right, is enough to prove waiver, under Texas law. | Is silence or inaction enough to prove waiver? | 018196.docx | LEGALEASE-00161914-LEGALEASE-00161915 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 13876 | Estate of Dormaier ex rel. Dormaier v. Columbia Basin Anesthesia, P.L.L.C., 177 Wash. App. 828 | 302+49 | A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." CR 8(a). We construe a complaint liberally so as to do substantial justice. CR 8(f); State v. Adams, 107 Wash.2d 611, 620, 732 P.2d 149 (1987). "If a complaint states facts entitling the plaintiff to some relief, it is immaterial by what name the action is called." Adams, 107 Wash.2d at 620, 732 P.2d 149. But a complaint should adequately alert the defendant of the claim's general nature. State v. Ralph Williams' Nw. Chrysler Plymouth, Inc., 87 Wash.2d 298, 315, 553 P.2d 423 (1976). While a complaint may contain inexpert pleading, it may not contain insufficient pleading. Lewis v. Bell, 45 Wash.App. 192, 197, 724 P.2d 425 (1986). A complaint is insufficient if it does not give the defendant " fair notice of what the claim is and the ground upon which it rests." Williams v. W. Sur. Co., 6 Wash.App. 300, 305"06, 492 P.2d 596 (1972). Thus, a complaint must identify the legal theory upon which the plaintiff seeks relief. Dewey v. Tacoma Sch. Dist. No. 10, 95 Wash.App. 18, 23, 25"26, 974 P.2d 847 (1999). | A complaint must identify the legal theory upon which the plaintiff seeks relief. CR 8. | Should a complaint identify the legal theory upon which the plaintiff seeks relief? | Pleading - Memo 624-RMM_66424.docx | ROSS-003279619-ROSS-003279620 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 13877 | Cepero v. Bank of New York Mellon Tr. Co., 189 So. 3d 204 | 266+1781 | Florida Rule of Civil Procedure 1.140(b) provides that certain defenses, including insufficiency of service of process, may be asserted by motion. However, a motion asserting these defenses must be made before the filing of any pleading. Id. Except for subject matter jurisdiction, which may be raised at any time, "[a]ny ground not stated shall be deemed to be waived." Id. Nevertheless, case law has carved out an exception to this statement. Where the initial motion to dismiss does not include a claim of lack of jurisdiction or insufficiency of service of process, those claims are not waived if, prior to a ruling on the initial motion, the defendant amends the motion to assert the issue. | Mortgagors did not waive claim of insufficiency of service of process in foreclosure action, even though mortgagors moved to dismiss without asserting claim of insufficiency, made discovery requests, and moved for extension of time to file answer, where mortgagors asserted claim of insufficiency prior to court ruling on motion to dismiss, mortgagors' requests were not requests for affirmative relief, and mortgagors were never called on to answer complaint. West's F.S.A. RCP Rule 1.140(b). | "Where the initial motion to dismiss does not include a claim of lack of jurisdiction or insufficiency of service of process, are those claims waived?" | Pretrial Procedure - Memo 11535 - C - NS_65973.docx | ROSS-003311525-ROSS-003311526 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 13878 | Mississippi Baptist Med. Ctr. v. Powell ex rel. Powell, 101 So. 3d 694 | 307A+697 | "Once the presumption is established, the burden shifts to the party denying receipt to present evidence to rebut the presumption." Holt v. Miss. Empl. Sec. Comm'n, 724 So.2d 466, 470 (Miss.Ct.App.1998) (citation omitted). Powell merely denied that her attorney received a copy of the circuit court's judgment dismissing her first lawsuit. Powell did not claim that the circuit clerk's docket sheet reflected an incorrect address for her attorney. Nor did Powell's attorney claim that he had changed addresses or otherwise experienced any problems receiving his mail. "[M]ere denial of receipt is insufficient to create a triable issue of fact." Id. (quoting Fid. Fin. Servs. v. Stewart, 608 So.2d 1111, 1113 (Miss.1992)). Powell's mere denial of receipt of notice is insufficient to rebut the presumption that her attorney received a copy of the judgment. | Mere denial of receipt of notice of dismissal for failure to prosecute a claim is insufficient to create a triable issue of fact in a subsequent lawsuit. Rules Civ.Proc., Rule 41(b). | Is a mere denial of a receipt insufficient to create a triable issue of fact in a subsequent lawsuit? | Pretrial Procedure - Memo 11809 - C - MS_66437.docx | ROSS-003294211-ROSS-003294212 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 13879 | Esslinger v. Sun Ref. & Mktg. Co., 379 Pa. Super. 69 | 307A+697 | Esslinger cross-appeals from the order denying the petition to strike. A judgment of non pros may only be stricken when there are defects apparent on the face of the record. Ruehl v. Maxwell Steel Co., 327 Pa.Super. 39, 474 A.2d 1162 (1984). Esslinger argues that the trial court committed an error of law in refusing to strike the judgment because of three defects in the record: (1) the rule to file a complaint was not signed by the prothonotary; (2) the appellant was not properly served with a copy of a properly issued rule to file a complaint; and (3) the appellant did not personally receive actual notice of Baker's intent to secure a judgment of non pros, nor did her attorney of record receive timely written notice. | Judgment of non pros may only be stricken when there are defects apparent on face of record. | Can a judgment of non pros only be stricken when there are defects apparent on a face of record? | 040597.docx | LEGALEASE-00162340-LEGALEASE-00162341 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13880 | Richmond Cty. Bus. Ass'n v. Richmond Cty., 224 Ga. 854 | 104+190.1 | In determining whether Richmond County has authority to impose a tax such as the one involved here, we must be mindful of the principle that "A county can only exercise the power of taxation as conferred upon it either directly by the Constitution or by the General Assembly when authorized by the Constitution. (Citations.) If there is any doubt as to the power of the county to tax in a particular instance, it must be resolved in the negative." Commissioners of Chatham County v. Savannah Electric & Power Company, 215 Ga. 636, 637-638, 112 S.E.2d 655, 657. See also, Mayor, etc., of City of Savannah v. Hartridge, 8 Ga. 23. | If there is any doubt as to power of county to tax in particular instance, it must be resolved in the negative. | "If there is any doubt as to the power of the county to tax in a particular instance, should it be resolved in the negative?" | Taxation - Memo 1007 - C - JL_66470.docx | ROSS-003284442-ROSS-003284443 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13881 | In re State Tax on Foreign-Held Bonds, 82 U.S. 300 | 371+2068 | The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the State. These subjects are persons, property, and business. Whatever form taxation may assume, whether as duties, imposts, excises, or licenses, it must relate to one of these subjects. It is not possible to conceive of any other, though as applied to them, the taxation may be exercised in a great variety of ways. | The power of taxation of a state is limited to persons, property, and business within her jurisdiction. All taxations must relate to one of these subjects. | "Is the power of taxation of a state limited to persons, property, and business?" | 046378.docx | LEGALEASE-00162088-LEGALEASE-00162089 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 13882 | Am. Oil Co. v. Neill, 380 U.S. 451 | 371+2008 | These cases have also firmly established the doctrine that when a tax is imposed on an out-of-state vendor, "nexus' between the taxing State and the taxpayer is the outstanding prerequisite on state power to tax.Consistent with this requirement there must be "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." Miller Bros. Co. v. State of Maryland, supra, 347 U.S. at 344-345, 74 S.Ct. at 539. Granted that when a corporation, pursuant to permission given, enters a State and proceeds to do local business the "link" is strong. In such instances there is a strong inference that it exists between the State and transactions which result in economic benefits obtained from a source within the State's territorial limits. The corporation can, however, exempt itself by a clear showing that there are no in-state activities connected with out-of-state sales. In such instances, the transactions are said to be "dissociated from the local business," Norton Co. v. Department of Revenue, supra, 340 U.S. at 537, 71 S.Ct. at 380, and therefore may not, consistent with due process, be taxed. | When a tax is imposed on an out-of-state vendor, "nexus" between the taxing state and the taxpayer is the outstanding prerequisite of state power to tax, and consistent with such requirement there must be some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax. | What is the prerequisite on state power to tax where a tax is imposed on an out-of-state vendor? | 046384.docx | LEGALEASE-00162099-LEGALEASE-00162101 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 13883 | Am. Fid. Fire Ins. Co. v. State Bd. of Equalization, 34 Cal. App. 3d 51 | 371+3602 | This dispute centers around those sections of the Revenue and Taxation Code, and pursuant rules and regulations of the Board, which are applicable to the collection of delinquent sales and use taxes, including penalty assessments, owed to the state by retailers, persons required to pay sales and use taxes. The California sales tax is an excise tax levied for the privilege of conducting a retail business in California. The sales tax is determined by the retailer's gross receipts from sales. The use tax is applicable to tangible personal property purchased for use in California. (See 43 Cal.Jur.2d, "Sales and Use Taxes," ss 8, 33, pp. 343, 382.) | Sales tax is an excise tax levied for privilege of conducting retail business in California. West's Ann.Rev. & Tax.Code, SS 6001-7176. | Is sales tax an excise tax levied for the privilege of conducting retail business? | 046413.docx | LEGALEASE-00162522-LEGALEASE-00162523 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 13884 | GenOn Mid-Atl. v. Montgomery Cty., Md., 650 F.3d 1021 | 170B+2036 | When determining "whether a particular charge is a "fee" or a "tax" " for purposes of the Tax Injunction Act, we do not focus on the superficial "nomenclature provided to the charge at issue." Valero Terrestrial Corp. v. Caffrey, 205 F.3d 130, 134 (4th Cir.2000). Instead, we must examine the "explicit factual circumstances that transcend the literal meaning of the terminology" and ask whether the charge is levied primarily "for revenue raising purposes, making it a "tax," " or whether it is assessed primarily "for regulatory or punitive purposes, making it a "fee." " Id. To aid in this determination, this court has looked to three factors for guidance: "(1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." Id. We review de novo the district court's decision to dismiss for lack of subject matter jurisdiction. See Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir.1999). | In determining whether charge is "tax," for purposes of Tax Injunction Act, court should consider: (1) what entity imposes charge; (2) what population is subject to charge; and (3) what purposes are served by use of monies obtained by charge. 28 U.S.C.A. S 1341. | What are the three factors that the courts look to when determining whether a particular charge is a fee or a tax? | 046651.docx | LEGALEASE-00162438-LEGALEASE-00162439 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 13885 | Guernsey v. Imperial Bank of Canada, 188 F. 300 | 8.30E+14 | The established rule in England, the rule in Illinois, and the stronger and better reasons are that, where an indorsement is made in one jurisdiction, and the commercial paper is payable in another, the manner of giving notice of dishonor and the sufficiency thereof are governed by the law of the place where the paper is payable.Rothschild v. Currie, 1 Q.B. 43, 49, 50; Roquette v. Overman, L.R. 10 Q.B. 525; Hirschfeld v. Smith, L.R. 1 C.P. 340, 350, 352; Wiseman v. Chiappella, 23 How. 368, 380, 16 L.Ed. 466; Pierce v. Indseth, 106 U.S. 546, 550, 1 Sup.Ct. 418, 27 L.Ed. 254; Wooley v. Lyon, 117 Ill. 248, 250, 6 N.E. 885, 886, 57 Am.Rep. 867; Union National Bank v. Chapman, 169 N.Y. 538, 543, 62 N.E. 672, 57 L.R.A. 513, 88 Am.St.Rep. 614. This rule commends itself to the judgments. of the writers of the text-books; they approve it and urge its maintenance in preference to its opposite. Wood's Byles on Bills & Notes (8th Ed.) 404, 405; 2 Parsons on Notes & Bills (2d Ed.) 344, 345; 1 Daniel on Negotiable Instruments (5th Ed.) Sec. 901. There are, however, many authorities to the contrary. Aymar v. Sheldon, 12 Wend.(N.Y.) 439, 444, 27 Am.Dec. 137; Huse v. Hamblin, 29 Iowa, 501, 504, 4 Am.Rep. 244; Allen v. Merchants' Bank, 22 Wend.(N.Y.) 215, 34 Am.Dec. 289; Carroll v. Upton, 2 Sandf.(N.Y.) 171; Snow v. Perkins, 2 Mich. 238, 241. | The manner of giving and sufficiency of notice of dishonor is governed by the laws of the place where the note is payable. | Does the law of the place where a note is payable govern the manner of giving notice? | 009237.docx | LEGALEASE-00162785-LEGALEASE-00162786 | Condensed, Order, SA | 0.91 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13886 | United States v. Le Duc, 48 F.2d 789 | 34+79(21) | At the close of all the testimony the government moved for a directed verdict in its favor, on the ground that there was no evidence to show that the insured was totally disabled at a period while his insurance contract was in force, nor to show that there was any reasonable assurance at that time that a condition of disability would continue throughout his life. This motion was denied, and the defendant excepted. The denial of the government's motion for a directed verdict is the controlling question presented on this appeal. The burden of proof to establish permanent and total disability while the insurance contract was in effect was upon the plaintiff. Claiming to act by virtue of authority conferred by section 13 of the War Risk Insurance Act, as added by Act Oct. 6, 1917, 40 Stat. 399, the Treasury Department issued Treasury Decision No. 20 W.R., defining the term "permanent and total disability" as follows: "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability. " Total disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it." | Burden of proof to establish permanent and total disability while war risk term policy was in effect is upon plaintiff. | Who has the burden of proof to establish permanent and total disability while an insurance policy was in effect? | Armed Services - Memo 353 - RK_66873.docx | ROSS-003280284-ROSS-003280285 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 13887 | Daskam v. Ullman, 74 Wis. 474 | 38+97 | Were the defendants concluded by the judgment in the foreclosure case on the question as to the payment of the notes which they sold the plaintiff? It is not denied that the defendants had sold these notes to the plaintiff for all that appeared on their face to be due upon them. This being so there was surely a warranty implied in law that they had not been paid; for it is the settled law in this state that, in the assignment of an instrument or contract in writing, even not negotiable, for a full and fair price, the assignor impliedly warrants that it is valid, and that the maker is liable upon it, unless it clearly appears that the parties intended to the contrary. It is sufficient to cite, in support of this proposition, the case of Giffert v. West, 33 Wis. 617, where the question is elaborately considered, and this rule of law established. Now, in respect to the defense which was set up by the maker of the notes in the foreclosure action, these facts are clearly and conclusively established. The defendants knew of the commencement of that action, and that the defense of payment had been set up in the answer. They consulted with the attorney who brought the suit about this defense; said they would take care of it | By the assignment of a contract in writing at its face value, the assignor impliedly warrants that the maker is liable, unless the contrary clearly appears. | Is a maker liable upon an instrument when the assignor impliedly warrants the same? | 009316.docx | LEGALEASE-00162973-LEGALEASE-00162974 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 13888 | Sawgrass Builders v. Realty Co-op., 172 Ga. App. 324 | 83E+695 | "A check, executed and delivered, is a contract in writing by which the drawercontracts with the payee that the bank will pay to the payee therein the amount designated on presentation." Bailey v. Polote, 152 Ga.App. 255, 256, 262 S.E.2d 551 (1979). A check is an unconditional promise to pay, and a stop payment order does not discharge the maker's liability on the check. Mason v Blayton, 119Ga.App. 203, 166 S.E.2d 601 (1969). When the signature on the check is admitted, production of the instrument, as in the instant case, entitles the holder "to recover on it unless the defendant establishes a defense." OCGA " 11-3-307(2);Bailey v. Polote, supra 152 Ga.App. at 257, 262 S.E.2d 551. | A check is an unconditional promise to pay and a stop payment order does not discharge the maker's liability on the check. | Does a stop payment order discharge the maker's liability on a check? | Bills and Notes - Memo 1450 - RK_66508.docx | ROSS-003285252 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13889 | First Nat. Bank & Tr. Co. of Augusta v. Georgia R.R. Bank & Tr. Co., 238 Ga. 693 | 8.30E+76 | The Court of Appeals was correct in holding First National, the payor bank, responsible under the circumstances of this case. Once the check had been acted upon by that bank, its drawer no longer had authority to stop payment. See Code ss 109A-4-303 and 109A-4-403. The decision of the Court of Appeals reported at 139 Ga.App. 683, 229 S.E.2d 482 (1976) is accordingly affirmed. | Once check had been acted upon by drawee bank, its drawer no longer had authority to stop payment. Code, SS 109A-4-303, 109A-4-403. | Does a drawer have authority to stop payment on a check that hasbeen acted upon by a bank? | 009337.docx | LEGALEASE-00163025-LEGALEASE-00163026 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 13890 | United States v. Washington, 106 F.3d 983 | 63+14 | In defining an essential element of the bribery count, the district court instructed the jury: "the defendant demanded, sought, received, accepted, or agreed to receive or accept a thing of value corruptly in return for being influenced in the performance of any official act, or being persuaded to omit an act in violation of his official duty." Harmon contends that there was no evidence that he received payments in exchange for omitting an act in violation of his duty, and therefore, the district court erred in instructing the jury on a charge unsupported by the evidence. This contention is without merit. | Instruction that defendant could be convicted of bribery if he accepted a thing of value corruptly in return for being influenced to omit an act in violation of his official duty as police officer was supported by evidence that he thought undercover officer was a drug dealer, yet did not arrest him, begin investigation into his activities, or report him to the police department and that he accepted a bribe rather than taking appropriate police procedures and arresting undercover officer or making some type of report. | What are the essential elements for jury instruction in order to convict for bribery? | 012571.docx | LEGALEASE-00162911-LEGALEASE-00162912 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 13891 | Kotche v. Cty. Bd. of Winnebago Cty., 87 Ill. App. 3d 1127 | 79+6 | The court found that the actions complained of were within the Board's budgetary and statutory authority. We do not agree. Section 27.3 of the Clerks of Courts Act (Ill.Rev.Stat.1977, ch. 25, par. 27.3) gives the Board the authority to appropriate funds for clerk hire, but does not empower the Board to control the hiring, firing, promotion, or compensation of the deputy clerks hired by the clerk of the circuit court pursuant to statute. (Ill.Rev.Stat.1977, ch. 25, par. 9). We deem it significant that Section 26 of "An Act to revise the law in relation to counties", (Ill.Rev.Stat.1977, ch. 34, par. 432) imposes the duty upon the Board "to provide reasonable and necessary expenses for the use of clerks of courts." (Emphasis added). The wording of the statute indicates that the clerks retain the authority to use the provided funds for the internal operation of their offices and the Board's grant of authority is limited to appropriation of necessary funds. We need not address here the rights of clerks who alleged that they cannot operate their offices on the funds provided, since no such allegation has been made | Actions of county board in controlling hiring and firing and conditions of employment of employees of clerk of circuit court were not within the board's budgetary and statutory authority. S.H.A. ch. 25, SS 9, 27.3; ch. 34, S 432. | "Does the Clerks of Court Act empower county boards to control the hiring, firing, promotion, or compensation of deputy clerks hired by the circuit court?" | 013581.docx | LEGALEASE-00164104-LEGALEASE-00164105 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13892 | United States v. Simonetti, 998 F.2d 39 | 135H+99 | The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be twice placed in jeopardy for the same offense. Retrial after a properly declared mistrial does not automatically offend the Double Jeopardy Clause. Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). Where mistrial is declared over defendant's objection, retrial is permissible only if the mistrial was justified by "manifest necessity." Id.; United States v. P"rez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). The Supreme Court has interpreted "manifest necessity" to mean a "high degree" of necessity. Arizona, 434 U.S. at 505, 98 S.Ct. at 830; see Brady v. Samaha, 667 F.2d 224, 228 (1st Cir.1981). | Retrial after properly declared mistrial does not automatically offend double jeopardy clause; instead, retrial is permissible after mistrial is declared over defendant's objection if mistrial was justified by manifest necessity. U.S.C.A. Const.Amend. 5. | Is a Double Jeopardy Clause not offended when the State seeks to retry a defendant after a series of properly declared mistrials? | Double Jeopardy - Memo 356 - C - SHS_66634.docx | ROSS-003293144-ROSS-003293145 | Order, SA | 0.65 | 1 | 0 | 0 | 1 | |
| 13893 | State v. Storer, 368 S.W.3d 293 | 135H+95.1 | Subsection 4 of section 56.087 expressly provides that "double jeopardy attaches" for the purpose of this statute "when the jury has been impaneled and sworn." Applying that definition yields the clear result that a dismissal filed after the jury has been impaneled and sworn is with prejudice unless the "defendant has consented to having the case dismissed without prejudice." See sections 56.087.2 and 56.087.4. "A dismissal with prejudice means that the prosecutor or circuit attorney cannot refile the case." Section 56.087.3. Therefore, the application of the clear and plain language of section 56.087 to the facts of this case"in which Defendant did not consent to a dismissal without prejudice"dictates that the State's dismissal of the four charges after the first jury was impaneled and sworn was with prejudice and that such dismissal served as a bar to the case being re-filed. | Dismissal filed after a jury has been impaneled and sworn is with prejudice, pursuant to statute, unless the defendant has consented to having the case dismissed without prejudice. V.A.M.S. S 56.087(2, 4). | When does a dismissal filed after a jury has been impaneled and sworn is with prejudice? | 015415.docx | LEGALEASE-00163473-LEGALEASE-00163474 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 13894 | State v. Battle, 279 N.C. 484 | 135H+95.1 | However, the general rule is that an order of mistrial in a criminal case will not support a plea of former jeopardy. See 53 Am.Jur., Trial s 1000 (1945). This rule prevails in North Carolina and in the federal courts. United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824); State v. Whitson, 111 N.C. 695, 16 S.E. 332; State v. Honeycutt, 74 N.C. 391; State v. Bullock, 63 N.C. 570. See State v. Jefferson, 66 N.C. 309. | Generally, an order of mistrial in a criminal case will not support a plea of former jeopardy. G.S. SS 7A-31(b) (4), 14-89.1. | Does an order of mistrial in a criminal case support a plea of former jeopardy? | 015421.docx | LEGALEASE-00163575-LEGALEASE-00163576 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 13895 | Osborn v. Bank of U.S., 22 U.S. 738 | 212+1463 | An injunction will be granted to prevent the franchise of a corporation from being destroyed, as well as to restrain a party from violating it, by attempting to participate in its exclusive privileges. | An injunction will be granted to prevent the franchise of a corporation from being destroyed, as well as to restrain a party from violating it by attempting to participate in its exclusive privileges. | Does injunction prevent infringement of franchise? | Franchises - Memo 60 - KNR_66656.docx | ROSS-003280242-ROSS-003280243 | SA, Sub | 0 | 0 | 0 | 1 | 1 | |
| 13896 | Singer v. Siedband, 138 S.W.3d 750 | 302+46 | Siedband's claim that the rent case involved the same parties as, and therefore was not collateral to, the fraud case is refuted by the record. Siedband proceeded with the rent case in her capacity as personal representative of her father's estate and was sued by Singer in this case as an individual. Although the rent case petitions did not indicate that she was acting as the personal representative, Siedband always understood that she was proceeding in that capacity. The capacity in which a party sues must be determined from the content of the pleadings, not solely from the captions or titles thereof. In re Estate of Dawes, 891 S.W.2d 510, 517 (Mo.App. S.D.1994). | Capacity in which a party sues must be determined from content of pleadings, not solely from captions or titles thereof. | Should the capacity in which a party sues be determined from the content of the pleadings? | Pleading - Memo 645 - RMM_67277.docx | ROSS-003283617-ROSS-003283618 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13897 | Hunter v. Gang, 132 Nev. Adv. Op. 22 | 30+3206 | Initially, we must identify the source of the district court's authority in dismissing the action. District courts in Nevada have two independent sources of authority under which they may dismiss an action for want of prosecution. First, district courts have express authority under NRCP 41(e), which permits dismissal whenever the plaintiff has failed to bring the action to trial within two years after the action is filed and requires dismissal if the plaintiff does not bring the action to trial within five years of filing the action. Second, Nevada district courts have inherent authority to dismiss an action for want of prosecution, which is "independent of any authority granted under statutes or court rules." Moore, 90 Nev. at 393, 528 P.2d at 1020. | In considering whether to uphold a dismissal with prejudice by a district court entered pursuant to its inherent authority, the appellate court considers the same factors that are pertinent to the district court's exercise of discretion to dismiss an action with prejudice under the rule governing dismissal for want of prosecution and an appellate court's subsequent review of that decision. Rules Civ.Proc., Rule 41(e). | "Do courts have inherent authority to dismiss an action for want of prosecution, which is independent of any authority granted under statutes or court rules?" | Pretrial Procedure - Memo 12086 - C - DHA_67061.docx | ROSS-003282250-ROSS-003282251 | SA, Sub | 0.45 | 0 | 0 | 1 | 1 | |
| 13898 | In re Montgomery Ward, 469 B.R. 522 | 349A+10 | Instead, utilizing Illinois common law, courts look to the economics of the transaction, rather than its label to determine the nature of the agreement. See e.g. Streator Nat'l. Bank. v. Arquilla, 138 Ill.App.3d 163, 92 Ill.Dec. 822, 485 N.E.2d 868, 869 (1985) (instead of obtaining an outright loan, financing for a construction project was structured through a sale and leaseback transaction); Janssen Bros., Inc. v. Northbrook Trust & Savings Bank, 12 Ill.App.3d 840, 299 N.E.2d 431, 432 (1973) (holding, after a hearing, that a deed transfer and leaseback transaction intended to establish a security interest). Courts must analyze the "economic reality" of the agreement at issue to determine its true nature. Dena Corp., 312 B.R. at 169; see also Pillowtex, 349 F.3d at 723; Liona Corp., N.V. v. PCH Assocs. (In re PCH Assocs.), 804 F.2d 193 (2d Cir.1986) ("the bankruptcy court is to look to the circumstances of the case and consider the economic substance of the transaction rather than "the locus of the title, the form of the transaction or the fact that the transaction is denominated as a "lease," " to determine whether the transaction embodies a "true lease" or a financing transaction."). | Under Illinois law, courts must analyze the economic reality of agreement to determine its true nature, and therefore determination of whether lease is true lease or financing agreement depends on circumstances of the case. S.H.A. 810 ILCS 5/1-203(a). | Should courts analyze the economic reality of an agreement to determine its true nature? | 042747.docx | LEGALEASE-00164006-LEGALEASE-00164007 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13899 | Tyson v. Trigg, 50 F.3d 436 | 352H+55 | The Sixth Amendment entitles a criminal defendant "to have compulsory process for obtaining witnesses in his favor." Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), held that this provision is applicable to state criminal defendants via the Fourteenth Amendment and entitles them to call witnesses on their behalf. In reference to this holding, the Court later said: "Few rights are more fundamental than that of an accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). Judge Gifford's ruling excluded witnesses that Tyson wanted to call to bolster his defense of consent. We use the term "defense" here loosely. Lack of consent is part of the definition of rape and must therefore be proved by the state beyond a reasonable doubt. Ind.Code " 35"42"4"1(a); Warren v. State, 470 N.E.2d 342, 344 (Ind.1984). That of course does not affect the principle to which Tyson appeals. | Lack of consent is part of definition of rape and must therefore be proved by state beyond reasonable doubt under Indiana law. IC 35-42-4-1(a) (1988 Ed.). | Is lack of consent part of the definition of rape? | Sex Offenses - Memo 137 - RK_66940.docx | ROSS-003280067-ROSS-003280068 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13900 | State v. Castagna, 387 N.J. Super. 598 | 3.77E+06 | Without suggesting that any element of any offense is insignificant, we stress that "purpose to harass" is critical to the constitutionality of the harassment offense defined in subsection a of N.J.S.A. 2C:33"4. Speech is at issue, and it is the prohibited purpose that makes its punishment constitutional. "The purpose to be served by enactment of the harassment statute is to make criminal, private annoyances that are not entitled to constitutional protection. Thus, the substantive criminal offense proscribed by [N.J.S.A. 2C:33"4a] "is directed at the purpose behind and motivation for" making or causing the communication to be made." State v. Hoffman, 149 N.J. 564, 576, 695 A.2d 236 (1997) (quoting State v. Mortimer, 135 N.J. 517, 528, 641 A.2d 257 (1994) (citations omitted)). | Purpose to be served by enactment of the harassment statute is to make criminal private annoyances that are not entitled to constitutional protection, and, thus, the substantive criminal offense of making or causing to be made, a communication likely to cause annoyance or alarm is directed at the purpose behind and motivation for making or causing the communication to be made. N.J.S.A. 2C:33-4a. | What is the purpose to be served by the enactment of the harassment statute? | "Threats, Stalking and Harassment - Memo 235 - C - LB_67272.docx" | ROSS-003283320-ROSS-003283321 | SA, Sub | 0.49 | 0 | 0 | 1 | 1 | |
| 13901 | In re Ryan D., 100 Cal. App. 4th 854 | 3.77E+10 | Section 422 does not require that a threat be personally communicated to the victim by the person who makes the threat. (In re David L. (1991) 234 Cal.App.3d 1655, 1659, 286 Cal.Rptr. 398.) Nevertheless, we emphasize that the statute "was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others." (People v. Felix (2001) 92 Cal.App.4th 905, 913, 112 Cal.Rptr.2d 311.) In other words, section 422 does not punish such things as "mere angry utterances or ranting soliloquies, however violent." (People v. Teal (1998) 61 Cal.App.4th 277, 281, 71 Cal.Rptr.2d 644.) Accordingly, where the accused did not personally communicate a threat to the victim, it must be shown that he specifically intended that the threat be conveyed to the victim. (People v. Felix, supra, 92 Cal.App.4th at p. 913, 112 Cal.Rptr.2d 311; In re David L., supra, 234 Cal.App.3d at p. 1659, 286 Cal.Rptr. 398.) | Where accused did not personally communicate threat to victim, it must be shown that he specifically intended that threat be conveyed to victim. West's Ann.Cal.Penal Code S 422. | "If the accused did not personally communicate a threat to the victim, what must be shown?" | "Threats, Stalking and Harassment - Memo 239 - C - LB_66844.docx" | ROSS-003283260-ROSS-003283261 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13902 | In re Ryan D., 100 Cal. App. 4th 854 | 3.77E+11 | It has been said that a picture is worth a thousand words. But as the expression of an idea, a painting may make "extensive use of symbolism, caricature, exaggeration, extravagance, fancy, and make-believe." (Yorty v. Chandler, supra, 13 Cal.App.3d at p. 472, 91 Cal.Rptr. 709.) A criminal threat, on the other hand, is a specific and narrow class of communication. (People v. Mirmirani, supra, 30 Cal.3d at p. 388, fn. 10, 178 Cal.Rptr. 792, 636 P.2d 1130.) It is the expression of an intent to inflict serious evil upon another person. (See People v. Toledo, supra, 26 Cal.4th at p. 233, 109 Cal.Rptr.2d 315, 26 P.3d 1051.) | Criminal threat is specific and narrow class of communication; it is expression of intent to inflict serious evil upon another person. West's Ann.Cal.Penal Code S 422. | What is a criminal threat an expression of? | "Threats, Stalking and Harassment - Memo 242 - C - LB_66847.docx" | ROSS-003296519-ROSS-003296520 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 13903 | Johnson Assocs. Corp. v. HL Operating Corp., 680 F.3d 713 | 25T+210 | Second, Hartmann argues that the district court erred in concluding that Hartmann waived its right to arbitration based on its participation in the litigation. Although it has long been settled that a party can waive its contractual right to arbitration, see Am. Locomotive Co. v. Gyro Process Co., 185 F.2d 316, 318 (6th Cir.1950), "because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." Glazer v. Lehman Bros., Inc., 394 F.3d 444, 450 (6th Cir.2005). We have explained that "a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) "delaying its assertion to such an extent that the opposing party incurs actual prejudice." " Hurley, 610 F.3d at 338 (quoting O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 356 (6th Cir.2003)); see Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat, 289 F.3d 434, 438 (6th Cir.2002). | Although a party can waive its contractual right to arbitration, because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred. | Should waiver of the right to arbitration be lightly inferred? | 008045.docx | LEGALEASE-00165012-LEGALEASE-00165013 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13904 | Kruse v. AFLAC Int'l, 458 F. Supp. 2d 375 | 25T+179 | Where a party alleges that a nonsignatory engaged in a conspiracy with a signatory, the nonsignatory may compel arbitration. See American Reliable Ins. Co. v. Arrington, 269 F.Supp.2d 758, 762 (S.D.Miss.2003) (nonsignatory may compel arbitration where plaintiff alleges conspiracy with signatory), citing Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 526 (5th Cir.2000); see also Roberson v. Money Tree of Ala., Inc., 954 F.Supp. 1519, 1529 n. 11 (M.D.Ala.1997) (allegation of a civil conspiracy between signatory and nonsignatory allows nonsignatory to compel arbitration under laws of agency). Although these cases are not controlling, the Court finds their holdings persuasive and more importantly, consistent with Arnold. As an agent of AFLAC, Fatherree is entitled to invoke the benefits of the arbitration agreement executed by its principal, AFLAC. Arnold, 920 F.2d at 1282. | Where party to arbitration agreement alleges that nonsignatory engaged in a conspiracy with signatory, nonsignatory may compel arbitration. | Can a nonsignatory compel arbitration when a party alleges a nonsignatory engaged in a conspiracy with a signatory? | 008053.docx | LEGALEASE-00165001-LEGALEASE-00165002 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13905 | In re LIBOR-Based Fin. Instruments Antitrust Litig., 935 F. Supp. 2d 666 | 83H+2 | Applying this framework to section 9(a) of the CEA, the provision under which plaintiffs assert their claims, we first observe that "neither the CEA nor its legislative history specifically authorizes extraterritorial application of the statute." CFTC v. Garofalo, 10 CV 2417, at *11 (N.D.Ill. Dec. 21, 2010) (citing Tamari v. Bache & Co., 730 F.2d 1103, 1107 (7th Cir.1984)). Rather, "the statute is silent on this issue and shows neither a Congressional intent to apply the CEA to foreign agents nor a wish to restrict the statute to domestic activities." Id. (citing Tamari, 730 F.2d at 1107). Indeed, there is even less of an indication of extraterritorial application here than in section 10(b) of the Securities and Exchange Act of 1934 (the "?34 Act"), 15 U.S.C. "" 78a"78pp (2006 & Supp. IV 2010), as amended by the Sarbanes"Oxley Act of 2002, Pub. L. No. 107"204, 116 Stat. 745 (codified in scattered sections of the U.S. Code), which the Morrison Court held did not apply extraterritorially. The Court reasoned in Morrison that even though one of section 10(b)'s terms, "interstate commerce," was defined to include foreign commerce, see 15 U.S.C. " 78c(a)(17), "[t]he general reference to foreign commerce in the definition of "interstate commerce" does not defeat the presumption against extraterritoriality." Morrison, 130 S.Ct. at 2882. Here, "interstate commerce," as referenced in section 9(a) of the CEA, 7 U.S.C. " 13(a)(2), does not even include a reference to foreign commerce, id. " 1a(30). Because section 9(a) of the CEA "gives no clear indication of an extraterritorial application, it has none." Morrison, 130 S.Ct. at 2878 | Neither Commodity Exchange Act (CEA) nor its legislative history specifically authorizes extraterritorial application of statute. Commodity Exchange Act, S 9(a)(2), 7 U.S.C.A. S 13(a)(2). | Does the Commodity Exchange Act (CEA) authorize extraterritorial application of the statute? | 013624.docx | LEGALEASE-00164216-LEGALEASE-00164217 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13906 | Hervey v. Rhode Island Locomotive Works, 93 U.S. 664 | 108H+21 | It was decided by this court, in Green v. Van Buskirk, 5 Wall. 307, 7 id. 139, that the liability of property to be sold under legal process, issuing from the courts of the State where it is situated, must be determined by the law there, rather than that of the jurisdiction where the owner lives. These decisions rest on the ground that every State has the right to regulate the transfer of property within its limits, and that whoever sends property to it impliedly submits to the regulations concerning its transfer in force there, although a different rule of transfer prevails in the jurisdiction where he resides. He has no absolute right to have the transfer of property, lawful in that jurisdiction, respected in the courts of the State where it is found, and it is only on a principle of comity that it is ever allowed. But this principle yields when the laws and policy of the latter State conflict with those of the former. | The liability of property to be sold under legal process is determined by the law of the state where it is situated, and not that of the jurisdiction where the owner lives. | Under what law is the liability of property to be sold under execution determined by? | 014089.docx | LEGALEASE-00165081-LEGALEASE-00165082 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 13907 | Gue v. Tide Water Canal Co., 65 U.S. 257 | 108H+37 | In Coe v. Hart, before Mr. Justice McLEAN, (6 Am. Law Reg., 42,*) it was said, on the contrary, in regard to a railroad company, that while the proper mode of enforcing payment was by a proceeding in chancery to distribute the earnings equitably among the creditors, yet in a case where such a course would not satisfy their demands, the road might be sold, and the proceeds distributed; and the same doctrine was laid down by the superior court of Cincinnati, in the case of Ludlow and Heard, reported in the same volume of the Law Register, at page 503.A corporate franchise to take tolls on a canal cannot be seized and sold under a fieri facias, unless authorized by a statute of the State which granted the act of incorporation. Neither can the lands or works essential to the enjoyment of the franchise be separated from it and sold under a fi. fa., so as to destroy or impair the value of the franchise. | The land or works essential to the enjoyment of a corporate franchise cannot be separated from it, and sold under a fi. fa., so as to destroy or impair the value of the franchise. | Can the land or works essential to the enjoyment of a franchise be separated from it? | 014101.docx | LEGALEASE-00165095-LEGALEASE-00165097 | Condensed, Order, SA, Sub | 0.8 | 1 | 1 | 1 | 1 | 1 |
| 13908 | Klein v. City of New Orleans, 99 U.S. 149 | 108H+40 | This depends on the facts. If the lands are held by the corporation for public purposes, and the ground rents are part of the public revenues, it is well settled that they cannot be levied on or sold. Dillon, Mun. Corp., sects. 64, 446. Municipal corporations are the local agencies of the government creating them, and their powers are such as belong to sovereignty. Property and revenue necessary for the exercise of these powers become part of the machinery of government, and to permit a creditor to seize and sell them to collect his debt would be to permit him in some degree to destroy the government itself. | If lands are held by a corporation for public purposes and the ground rents are part of the public revenues, they cannot be levied on or sold. | Can lands held for public purposes be levied or sold? | Creditors' Remedies - Memo 32 - RK_67501.docx | ROSS-003280574-ROSS-003280576 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 13909 | United States v. Ambers, 85 F.3d 173 | 135H+30 | The enhancement increases the sentence for the current offense conspiracy, not the sentence for the distinct, prior offense: "Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are common place in state criminal laws, do not change the penalty imposed for the earlier conviction." Nichols v. United States, 511 U.S. 738, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745 (1994); see Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258-59, 92 L.Ed. 1683 (1948). Based on this logic, the Supreme Court has consistently rejected double jeopardy challenges to sentencing schemes that enhance a defendant sentence because of a prior conviction. Witte v. United States, 515 U.S. 389, 115 S.Ct. 2199, 2206, 132 L.Ed.2d 351 (1995). | Enhancing sentence for conspiracy because of prior conviction which resulted from one of the overt acts supporting the conspiracy presents no double jeopardy problem; enhancement increases the sentence for the current conspiracy offense, not for the sentence for the distinct, prior offense. U.S.C.A. Const.Amend. 5. | "Does enhancement increase the sentence for the current conspiracy offense, not for the sentence for the distinct, prior offense?" | Double Jeopardy - Memo 1249 - C - NE_67551.docx | ROSS-003285148-ROSS-003285149 | Order, SA | 0.62 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13910 | State v. Cheek, 361 P.3d 679 | 135H+59 | While the argument is a bit confusing, to the extent Defendant intends to argue that trial counsel should have made a merger argument before trial, Defendant misunderstands the law. "Courts apply the merger doctrine as one means of alleviating the concern of double jeopardy that a defendant should not be punished twice for the same crime." State v. Lopez, 2004 UT App 410, 8, 103 P.3d 153. However, "[t]he merger doctrine does not apply before trial because the double jeopardy protections attach only when an accused is put on trial ... and a jury has been sworn and impaneled." Id. (omission in original) (citation and internal quotation marks omitted). Therefore, "the protections provided by the merger doctrine are not applicable before trial." Id. "The trial court cannot assess whether ... one charge merges into another until the prosecution has presented its case and the jury has convicted the defendant of multiple charges." Id. Thus, trial counsel was not ineffective for failing to make a pretrial motion to merge the charges. See id. | The merger doctrine does not apply before trial, because the double jeopardy protections attach only when an accused is put on trial and a jury has been sworn and impaneled. U.S.C.A. Const.Amend. 5. | Why does the merger doctrine not apply before trial? | 016644.docx | LEGALEASE-00165103-LEGALEASE-00165104 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13911 | State v. Metzinger, 456 S.W.3d 84 | 135H+59 | Generally, the State cannot appeal a judgment for the accused "whether it is upon a verdict of acquittal or upon a determination of a question of law, unless a right of appeal is unequivocally conferred by statute." State v. Stein, 876 S.W.2d 623, 625 (Mo.App.E.D.1994). The State appeals this matter pursuant to Section 547.200.2, which permits the State to appeal in criminal cases "except in those cases where the possible outcome of such an appeal would result in double jeopardy for the defendant." Mo.Rev.Stat. 547.200.2. In a court-tried case, jeopardy attaches when the court begins to hear evidence on the issue of guilt.State v. Thomas, 434 S.W.3d 524, 528 (Mo.App.E.D.2014). In a jury trial, jeopardy attaches when the jury is impaneled and sworn. State v. Fassero, 256 S.W.3d 109, 114 (Mo. banc 2008). | In a court-tried case, jeopardy attaches when the court begins to hear evidence on the issue of guilt. U.S. Const. Amend. 5. | Can a jeopardy attach when the court begins to hear evidence on the issue of guilt? | 016665.docx | LEGALEASE-00165147-LEGALEASE-00165148 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13912 | Bd. of Educ. of City of Plainfield, Union Cty. v. Cooperman, 105 N.J. 587 | 141E+678 | Commissioner of Department of Education could override power of boards of education to exclude students from public schools due to health reasons.N.J.S.A. 18A:40"7, 18A:40"10, 26:4"6. The appellant boards of education argue that the power to exclude students from public schools due to health reasons resides in the schools and the local school boards. They argue further that this power cannot be overridden by the Commissioner. Appellants cite statutory provisions, N.J.S.A. 18A:40"7, 18A:40"10, 26:4"6, which indicate that teachers, principals, and local boards of education have some discretion to exclude children with contagious diseases from the classroom. | Commissioner of Department of Education could override power of boards of education to exclude students from public schools due to health reasons. N.J.S.A. 18A:40-7, 18A:40-10, 26:4-6. | Can students be excluded from school because they have a contagious disease? | 017318.docx | LEGALEASE-00164364-LEGALEASE-00164365 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 13913 | Steinhart v. Cty. of Los Angeles, 47 Cal. 4th 1298 | 156+52(5) | It is also significant that Steinhart, in filing and pursuing her tax refund claim, was represented by counsel.12 In general, the law "particularly" disfavors estoppels "where the party attempting to raise the estoppel is represented by an attorney at law." (Kunstman v. Mirizzi (1965) 234 Cal.App.2d 753, 757, 44 Cal.Rptr. 707.) For purposes of analyzing estoppel claims, attorneys are "charged with knowledge of the law in California." (Tubbs v. Southern Cal. Rapid Transit Dist. (1967) 67 Cal.2d 671, 679, 63 Cal.Rptr. 377, 433 P.2d 169 [rejecting claim of estoppel to assert statute of limitations].) | In general, the law particularly disfavors estoppels where the party attempting to raise the estoppel is represented by an attorney at law. | Does the law disfavour estoppels where the party attempting to raise the estoppel is represented by an attorney at law? | 018270.docx | LEGALEASE-00164423-LEGALEASE-00164424 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 13914 | Willow Springs Condo. Ass'n v. Seventh BRT Dev. Corp., 245 Conn. 1 | 302+370 | "Modern procedure has come a long way from the day when slight variances were fatal to a cause of action. This is reflected in our rule of practice as a code state that immaterial variances shall be wholly disregarded. Practice Book " 134 [now Practice Book (1998 Rev.) " 10"22]. It is said we have an established liberal practice in regard to immaterial deviations from the allegations of the complaint. Pierce, Butler & Pierce Mfg. Corporation v. Enders, 118 Conn. 610, 613, 174 A. 169 [1934]. A variance in the factual aspect of a case which does not prejudice the opponent, and which does not change the theory of the cause of action, should not under ordinary circumstances be allowed to make voidable an otherwise sound judgment. See Antonofsky v. Goldberg, 144 Conn. 594, 599, 136 A.2d 338 [1957]; Reciprocal Exchange v. Altherm, Inc., 142 Conn. 545, 551, 115 A.2d 460 [1955]; Klein v. DeRosa, 137 Conn. 586, 591, 79 A.2d 773 [1951]; Frosch v. Sears, Roebuck & Co., 124 Conn. 300, 303, 199 A. 646 [1938]. Of course, a variance which alters the basic nature of a complainant's cause of action cannot be condoned. In other words, [a] plaintiff may not allege one cause of action and recover upon another. Malone v. Steinberg, 138 Conn. 718, 721, 89 A.2d 213 [1952]; Levy v. Carter Rice & Co., 136 Conn. 216, 221, 70 A.2d 147 [1949]." (Internal quotation marks omitted.) Schaller v. Roadside Inn, Inc., 154 Conn. 61, 64"65, 221 A.2d 263 (1966). | A plaintiff may not allege one cause of action and recover upon another. Practice Book 1978, S 134. | Can a plaintiff allege one cause of action and recover upon another? | 023957.docx | LEGALEASE-00164385-LEGALEASE-00164386 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 13915 | Therrien v. Mercantile-Commerce Bank & Tr. Co., 360 Mo. 149 | 302+34(6) | The general rule has been that where a pleading is ambiguous, and doubt or confusion appears, it must on demurrer be taken most strongly in its interpretation against the pleader, Koewing v. Green County Building & Loan Ass'n, 327 Mo. 680, 689(7, 8), 38 S.W.2d 40, 44(8"10); Langenberg v. City of St. Louis, supra, 355 Mo. loc. cit. 640(1), 197 S.W.2d loc. cit. 624(1"3). On the other hand, where the petition is not attacked until after verdict or judgment, heretofore the intendments have been taken most strongly in favor of the pleader. The general rule stated in Sec. 57, Civil Code, Laws Mo.1943, p. 373, Mo.R.S.A. " 847.57, is that "All pleadings shall be so construed as to do substantial justice." | Where petition is not attacked until after verdict or judgment, intendments are to be taken most strongly in favor of pleader. V.A.M.S. S 509.250. | "Where a petition is not attacked until after judgment, are intendments taken most strongly in favor of the pleader?" | 023959.docx | LEGALEASE-00164387-LEGALEASE-00164388 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13916 | Holmstrom v. Lee, 26 S.W.3d 526 | 302+72 | A trial court may not grant relief in the absence of pleadings supporting such relief. See Moreno v. Moore, 897 S.W.2d 439, 442 (Tex.App."Corpus Christi 1995, no writ). The purpose of pleadings is to give the parties notice of claims, defenses, and relief sought. See Perez v. Briercroft Serv. Corp., 809 S.W.2d 216, 218 (Tex.1991). That purpose is served when a defendant pleads a defense that contemplates a particular remedy, despite the plaintiff's not having requested the remedy. See id. When a plaintiff has included a general prayer for relief, the propriety of a remedy depends not on the specific relief sought but on the facts pleaded and proven. See Lee v. Boutwell, 44 Tex. 151, 153"54 (1875); Texas Power Corp. v. Kuehler, 34 S.W.2d 381, 384 (Tex.Civ.App."Austin 1930) (op. on reh'g), modified on other grounds, 52 S.W.2d 76 (Tex.Com.App.1932). See also Sherrod v. Bailey, 580 S.W.2d 24, 29 (Tex.Civ.App."Houston [1st Dist] 1979, writ ref'd n.r.e.); Eppenauer v. Hoffmann, 115 S.W.2d 478, 481 (Tex.Civ.App."Eastland 1938, no writ). Only relief consistent with the facts and pleaded theories may be granted under a general prayer.See Kissman v. Bendix Home Sys., 587 S.W.2d 675, 677 (Tex.1979) . | Only relief consistent with the facts and pleaded theories may be granted under a general prayer. | Will only the reliefs consistent with the facts and pleaded theories be granted under a general prayer? | 023971.docx | LEGALEASE-00164603-LEGALEASE-00164604 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 13917 | Ross v. Petro, 515 F.3d 653 | 135H+99 | "Manifest necessity" is not to be interpreted literally or applied mechanically; what is required is a "high degree" of necessity. Id. at 506, 98 S.Ct. 824. In assessing whether retrial should be barred, a sliding scale of scrutiny is employed, one that depends on the reasons for the mistrial. The strictest scrutiny is employed when the mistrial was premised on bad-faith conduct by the judge or prosecutor, and the most relaxed scrutiny is employed when the mistrial was premised on a deadlocked jury. Id. at 508-09, 98 S.Ct. 824. | The requirement of manifest necessity for a mistrial is not to be interpreted literally or applied mechanically, in determining whether retrial is barred by double jeopardy; what is required is a high degree of necessity. U.S.C.A. Const.Amend. 5. | Is the requirement of manifest necessity for a mistrial not to be interpreted literally or applied mechanically? | 041000.docx | LEGALEASE-00164271-LEGALEASE-00164272 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 13918 | Canyon v. State, 218 So. 3d 871 | 135H+1 | "[T]his double jeopardy claim goes to the jurisdiction of the trial court to render judgment. In Ex parte McKelvey, 630 So.2d 56 (Ala.1992), the Alabama Supreme Court examined the double jeopardy issue whether the imposition of separate sentences for convictions arising from the same act was improper under the ground specified in Rule 32.1(b): "The court was without jurisdiction to render judgment or to impose sentence." It stands to reason that if the double sentencing issue is cognizable, then a double conviction issue is cognizable. See also Salter v. State, 606 So.2d 209 (Ala.Cr.App.1992) (the appellant's failure to raise on direct appeal the claim that he was guilty of only one offense of possession instead of the two offenses for which he was convicted, arguing that his possession of the two controlled substances was simultaneous, did not bar consideration of that issue in a Rule 32 proceeding because that issue presents a jurisdictional claim, not barred by the expiration of the Rule 32 limitations period because it falls within Rule 32.1(c), that is, "[t]he sentence imposed exceeds the maximum authorized by law or is otherwise not authorized by law"). Accordingly, we find that Rolling's double jeopardy/jurisdictional issue is not precluded by operation of the limitations period." | A double jeopardy claim goes to the jurisdiction of the trial court to render judgment. U.S.C.A. Const.Amend. 5. | Does a double jeopardy claim go to the jurisdiction of the trial court to render judgment? | 041050.docx | LEGALEASE-00164493-LEGALEASE-00164494 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 13919 | Camacho v. Chandeleur Homes, 862 So. 2d 540 | 307A+583 | A trial court possesses the inherent authority to dismiss an action for want of prosecution. Am. Tel. & Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 180( 11) (Miss.1998). "This power "is a necessary means to the orderly expedition of justice and the trial court's control of its own docket." " Id. (quoting Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986.)) Yet, Mississippi case law favors a trial of issues on the merits; dismissals under Rule 41(b) should be executed reluctantly. Hoffman v. Paracelsus Health Care, 752 So.2d 1030, 1034( 11) (Miss.1999). | A trial court possesses the inherent authority to dismiss an action for want of prosecution; this power is a necessary means to the orderly expedition of justice and the trial court's control of its own docket. Rules Civ.Proc., Rule 41(b). | Does a court possess the inherent authority to dismiss an action for want of prosecution? | 041111.docx | LEGALEASE-00164943-LEGALEASE-00164944 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 13920 | Dep't of Labor & Indus. of State of Wash. v. Fankhauser, 121 Wash. 2d 304 | 413+252 | Under RCW 51.12.020(5), sole proprietors or partners are expressly excluded from mandatory coverage and are not required to participate in Washington's workers' compensation system. RCW 51.12.020. Neither are they considered "workers" or "employees" automatically covered under the statute. | Sole proprietors and partners are expressly excluded from mandatory coverage under Industrial Insurance Act, are not required to participate in workers' compensation system, and are not considered "workers" or "employees" automatically covered under Act. West's RCWA 51.08.180, 51.08.185, 51.12.020, 51.12.020(5). | Who is expressly excluded under workers compensation? | 048575.docx | LEGALEASE-00164655-LEGALEASE-00164656 | Condensed, SA | 0.09 | 0 | 1 | 0 | 1 | |
| 13921 | Peters v. Michienzi, 385 Mass. 533 | 413+186 | We find no repugnancy between the definition of employee and the homeowner's exemption in the definition of employer. It is an established rule of statutory construction that allegedly conflicting provisions of a statute should, if possible, be construed in a way that is harmonious and consistent with the legislative design. Everett v. Revere, 344 Mass. 585, 589, 183 N.E.2d 716 (1962). Price v. Railway Express Agency, Inc., 322 Mass. 476, 480, 78 N.E.2d 13 (1948). A person who does not fall within the homeowner's exemption because, for example, he does not "reside therein," or because the structure is not a "dwelling house," may, but need not necessarily, be an "employer." An "employer" is defined as one "employing employees subject to this chapter...." The definition is dependent upon the definition of employee. A person cannot be an "employer" unless he hires an "employee." The exemption for homeowners does not purport to alter the relationship between those two terms. In another context this court has acknowledged an inconsistency in the definition of employee. Ferris v. Grinnell, 353 Mass. 681, 682-683, 234 N.E.2d 281 (1968) (noting a repugnancy between the purported inclusion of certain domestic servants within the Act's protection, and the exception for employment not in the usual course of the business of the employer). In the instant case, however, we construe the homeowner's exemption in a way which is consistent with the definitions of employee and employer, and which gives effect to the natural meaning of their words. | Person who does not fall within homeowner's exemption because, for example, he does not "reside therein" or because structure is not "dwelling house" may, but need not necessarily, be "employer" within purview of Workmen's Compensation Act. M.G.L.A. c. 152, S 1(5). | When is homeowner not an employer? | 048779.docx | LEGALEASE-00164309-LEGALEASE-00164310 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13922 | Keller v. Old Lycoming Twp., 286 Pa. Super. 339 | 413+186 | The executrix has also argued that the township, as a matter of law, may not take advantage of the Pennsylvania Workmen's Compensation Act because the federal government has pre-empted the field. Brief for Appellant at 57. This argument is without merit. Nothing suggests that the federal government, through CETA or any other legislation, intended to regulate the field of providing injured workmen compensation. See New York Telephone Co. v. New York Department of Labor, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979); Exxon v. Government of Maryland, et al., 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978); DeCanas v. Bica, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). The executrix's argument seems to be that because a federal regulation states that "(o)utstationed participants are still to be considered employees of the employing agency and shall be assured of the same working conditions and benefits" as similarly situated CETA workers, we must accept the "employing agency" as Keller's employer for workmen's compensation purposes. 29 C.F.R. s 96.23(a)(6). However, just as the characterization of a claimant by an alleged employer does not control our determination of whether an employment relationship existed, Stevens v. Publishers Agency, 170 Pa.Super. 385, 85 A.2d 696 (1952), so the characterization in the federal regulation does not control. As we held in English v. Lehigh County Authority, supra, the meaning of "employer" under the Act is controlled by the legal interpretation of the Act, as reflected in our past cases, English v. Lehigh County Authority, supra, 286 Pa.Super. at --, 428 A.2d at 1354, and not by the definitions that others care to give to that term. | Meaning of "employer" under Workmen's Compensation Act is controlled by the legal interpretation of the Act and not by definitions that others care to give to that term. 77 P.S. S 1 et seq. | Is the meaning of employer under the Act controlled by the legal interpretation of the Act? | Workers' Compensation Memo 750 - C - ANC_67249.docx | ROSS-003282069-ROSS-003282070 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 13923 | United States v. Young, 657 F.3d 408 | 135H+59 | The Supreme Court has determined that the stage in trial in which certain rights attach varies depending on the constitutional right in question. For the purposes of the Fifth Amendment Double Jeopardy Clause, jeopardy does not attach until the jury is empaneled and takes the oath. Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Conversely, Sixth Amendment assistance of counsel rights begin after judicial proceedings have been initiated against the defendant by a preliminary hearing, indictment, information, or arraignment. Brewer v. Williams, 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Most notably for this case, in discussing a criminal defendant's Sixth Amendment right to be present, the Supreme Court noted: "[I]n affirming voir dire as a critical stage of the criminal proceeding ... "Where the indictment is for a felony, the trial commences at least from the time when the work of empaneling the jury begins." " Gomez v. United States, 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (quoting Lewis v. United States, 146 U.S. 370, 374, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)). Because both Brewer and Gomez deal with Sixth Amendment rights, while Serfass deals with a Fifth Amendment right, consistency suggests that Sixth Amendment speedy-trial rights should be treated similarly to other Sixth Amendment rights. Accordingly, we hold that for constitutional speedy-trial claims, trial begins with voir dire. | For the purposes of the Fifth Amendment Double Jeopardy Clause, jeopardy does not attach until the jury is empaneled and takes the oath. U.S.C.A. Const.Amend. 5. | Does jeopardy attach until the jury is empaneled and takes the oath? | 014655.docx | LEGALEASE-00165467-LEGALEASE-00165468 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 13924 | People v. Shepard, 98 P.3d 905 | 135H+29.1 | Because the prosecution presented a factual basis for two separate incidents of sexual exploitation of the victim, defendant's double jeopardy rights were not violated. Thus, the trial court did not err in imposing consecutive sentences. | Imposition of consecutive sentences for two counts of sexual exploitation of child did not violate defendant's rights under state and federal double jeopardy clauses, where prosecution represented, at providency hearing, that evidence would have shown that defendant committed various acts against single victim, including taking five different photographs of her in sexually explicit poses. U.S.C.A. Const.Amend. 5; West's C.R.S.A. Const. Art. 2, S 18; West's C.R.S.A. S 18-1-408(3). | When would the defendant's rights under double jeopardy clause not be violated? | 014674.docx | LEGALEASE-00165669-LEGALEASE-00165670 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 13925 | Bellew v. State, 304 Ga. App. 529 | 135H+59 | Jeopardy attaches once a jury is impaneled and sworn, and a defendant has a right under the Double Jeopardy Clause to be tried by the original impaneled jury. Tubbs v. State, 276 Ga. 751, 754, 583 S.E.2d 853 (2003). That right is balanced against the State's right to a fair trial. Id. When the trial court declares a mistrial without the defendant's consent or over his objection, a retrial is nevertheless permissible if a manifest necessity existed for declaring the mistrial. Perez v. State, 266 Ga.App. 82, 84, 596 S.E.2d 191 (2004). | Jeopardy attaches once a jury is impaneled and sworn, and a defendant has a the right under the Double Jeopardy Clause to be tried by the original impaneled jury. U.S.C.A. Const.Amend. 5. | Does the defendant have a right to be tried by the original impaneled jury? | 014680.docx | LEGALEASE-00165678-LEGALEASE-00165679 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 13926 | Washington v. Sobina, 387 F. Supp. 2d 460 | 110+577.14 | It is not a violation of double jeopardy to have four trials under the circumstances of this case. Sattazahn v. Pennsylvania, 537 U.S. 101, 109, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) (quoting Richardson v. United States, 468 U.S. 317, 324, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) as holding that normally "a retrial following a "hung jury" does not violate the Double Jeopardy Clause"); see also United States v. Rivera, 384 F.3d 49, 54-55 (3d Cir.2004) (stating that there is ordinarily no double jeopardy if a mistrial is granted on defendant's motion, and there is no double jeopardy if a mistrial is required by manifest necessity); Government of the Virgin Islands v. Smith, 558 F.2d 691, 696 (3d Cir.1977) (holding that "three successive trials for the same offense are not prohibited where the declarations of mistrial were justified by manifest necessity"). Because each retrial is legally appropriate and not a result of misconduct by the government, consolidating the periods of time leading up to each trial might inappropriately exaggerate the delay for speedy trial purposes. Therefore, it is appropriate to evaluate Washington's speedy trial claim separately as to each trial. | It was appropriate to evaluate petitioner's speedy trial claim separately as to each of his trials where his first trial ended in a mistrial, and second and third trials resulted in a hung jury as to certain counts; because each retrial was legally appropriate and not a result of misconduct by the government, consolidating the periods of time leading up to each trial could inappropriately exaggerate the delay for speedy trial purposes. U.S.C.A. Const.Amend. 6. | Is it a violation of double jeopardy to have four trials? | 016022.docx | LEGALEASE-00165744-LEGALEASE-00165745 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13927 | People v. Monterroso, 34 Cal. 4th 743 | 135H+100.1 | Defendant argues that the bar to refiling of a dismissed misdemeanor under section 1387, subdivision (a) "resulted in the functional equivalent of an acquittal." He is mistaken. An acquittal requires more than a bar to further proceedings; it requires " "a disposition based upon a determination of the merits." " (People v. Hatch, supra, 22 Cal.4th at p. 267, fn. 3, 92 Cal.Rptr.2d 80, 991 P.2d 165, italics added.) Inasmuch as defendant does not contend that either disposition was based on the merits, neither incident was barred under section 190.3. (People v. Heishman (1988) 45 Cal.3d 147, 193, 246 Cal.Rptr. 673, 753 P.2d 629 ["a dismissal not based on any judicial determination with respect to the truth or falsity of the charge is not an acquittal under section 190.3"].). | An acquittal requires more than a bar to further proceedings; it requires a disposition based upon a determination of the merits. | Do acquittals require a disposition based upon a determination of the merits to further proceedings? | 016055.docx | LEGALEASE-00165803-LEGALEASE-00165804 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13928 | State v. Salter, 425 N.J. Super. 504 | 135H+1 | The United States Constitution provides that no person "shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. New Jersey's constitutional bar against double jeopardy provides that "[n]o person shall, after acquittal, be tried for the same offense." N.J. Const. art. I, 11. Our double jeopardy provision has "consistently" been interpreted to be co-extensive with the protections afforded by its federal counterpart, and "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." Widmaier, supra, 157 N.J. at 489"90, 724 A.2d 241. Additionally, N.J.S.A. 2C:1"9 provides that "prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred" when "[t]he former prosecution resulted in an acquittal by a finding of not guilty by the trier of fact...." | State Constitution's prohibition against double jeopardy protects against three distinct abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. N.J.S.A. Const. Art. 1, par. 11. | What are the abuses double jeopardy protects against? | 016088.docx | LEGALEASE-00165835-LEGALEASE-00165836 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 13929 | State v. Tate, 256 Conn. 262 | 110+295 | We can only say with certainty that the jury had to be deadlocked on murder in the first degree or one of the included offenses." Whiteaker v. State, supra, 808 P.2d at 279; see State v. Castrillo, supra, 90 N.M. at 614, 566 P.2d at 1152 ("Jeopardy did not attach to the ... least of the included offenses. Had the jury reached a unanimous decision on that offense it could not have been in the posture it announced to the court."). "Because we have no way of knowing which charge the jury was deadlocked on, we must presume that it was the least serious charge, negligent homicide. We reach this conclusion noting that doubts about whether an offense is jeopardy-barred must be resolved "in favor of the liberty of the citizen." Downum v. United States, 372 U.S. 734, 738, 83 S.Ct. 1033, 1036, 10 L.Ed.2d 100 (1963)." Whiteaker v. State, supra, at 279. If we were to reach any other result, the defendant would face reprosecution for crimes of which he already might have been acquitted. This would directly contravene his constitutional protections against double jeopardy. | Doubts about whether an offense is jeopardy-barred must be resolved in favor of the liberty of the citizen. U.S.C.A. Const.Amend. 5. | Are doubts about whether an offense is jeopardy-barred be resolved in favor of the liberty of the citizen? | 016410.docx | LEGALEASE-00165207-LEGALEASE-00165208 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 13930 | Com. v. Phim, 462 Mass. 470 | 135H+1 | Double jeopardy. The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This language, and parallel Massachusetts statutory and common law, generally preclude the Commonwealth from trying a defendant more than once for the same offense. See G.L. c. 263, " 7; Commonwealth v. Cassidy, 410 Mass. 174, 176, 571 N.E.2d 383 (1991). However, an exception to this rule is made where a prior trial terminated in a mistrial due to "manifest necessity." Illinois v. Somerville, 410 U.S. 458, 461, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), quoting United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). | The Fifth Amendment's prohibition on double jeopardy, and parallel Massachusetts statutory and common law, generally precludes the commonwealth from trying a defendant more than once for the same offense. U.S.C.A. Const.Amend. 5; M.G.L.A. c. 263, S 7. | Does the law preclude the commonwealth from trying a defendant more than once for the same offense? | Double Jeopardy - Memo 900 - C - RF_67689.docx | ROSS-003281120-ROSS-003281121 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 13931 | Villanueva v. State, 194 S.W.3d 146 | 135H+1 | Double jeopardy is the principle that a person shall not be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Texas Constitution provides similarly: "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." Tex. Const. art. I, " 14. These prohibitions protect against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. Ex parte Kopecky, 821 S.W.2d 957, 958 (Tex.Crim.App.1992). When a defendant is subjected to a single trial, only the third aspect of the protection against multiple punishments is involved. Ex parte Herron, 790 S.W.2d 623, 623"24 (Tex.Crim.App.1990). | "Double jeopardy" is the principle that a person shall not be subject for the same offense to be twice put in jeopardy of life or limb. U.S.C.A. Const.Amend. 5; Vernon's Ann.Texas Const. Art. 1, S 14. | "Do double jeopardy principles protect individuals not against being twice punished, but against being twice put into jeopardy?" | 016535.docx | LEGALEASE-00165355-LEGALEASE-00165356 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 13932 | State v. Weight, 868 N.W.2d 821 | 135H+1 | "The double jeopardy provisions of the federal and state constitutions, and state law, prohibit successive prosecutions and punishments for the same criminal offense." State v. Voigt, 2007 ND 100, 11, 734 N.W.2d 787. It is well established that jeopardy attaches in a jury trial when the jury is empaneled and sworn. Id. "Each case in which a double jeopardy violation is asserted must turn upon its own facts." | Each case in which a double jeopardy violation is asserted must turn upon its own facts. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 12. | Should a double jeopardy violation turn upon its own facts in each case it is asserted? | 015970.docx | LEGALEASE-00166327-LEGALEASE-00166328 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 13933 | Catchings v. State, 111 So. 3d 1238 | 135H+1 | Catchings argues that because he did not voluntarily breach his first plea agreement, he is entitled to double-jeopardy protection. "Double jeopardy consists of three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense." Powell v. State, 806 So.2d 1069, 1074 (8) (Miss.2001). Although it is unclear to us which protection Catchings claims the circuit court violated, we, nevertheless, find that his claim is without merit. | "Double jeopardy" consists of three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. U.S.C.A. Const.Amend. 5. | What does double jeopardy consist of? | 015990.docx | LEGALEASE-00166345-LEGALEASE-00166346 | SA, Sub | 0.48 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13934 | AllGood Entm't v. Dileo Entm't & Touring, 726 F. Supp. 2d 307 | 13+27(1) | The Dileo Defendants also seek to dismiss AllGood's promissory estoppel cause of action. Again the parties dispute the proper choice of law to be applied to this claim. Plaintiff seeks to have this Court apply the "interest analysis" for torts, but promissory estoppel is an equitable doctrine that sounds in contract rather than tort. See, e.g., Ciocca v. Neff, No. 02 Civ. 5067(LTS) (HBP), 2005 WL 1473819, at (S.D.N.Y. June 22, 2005) (citing Restatement (Second) of Contracts " 90 (1981)); Amadasu v. Ngati, No. 05 Civ. 2585(JFB)(LB), 2006 WL 842456, at (E.D.N.Y. Mar. 27, 2006) (same). As such, the "center of gravity" test is applicable and, for the same reasons stated with regard to the breach of contract claim, the proper choice of law here is Tennessee. | Promissory estoppel is an equitable doctrine that sounds in contract rather than tort, for purposes of applying New York choice-of-law rules to such claim. | Is promissory estoppel an equitable doctrine that sounds in contract rather than tort? | Action - Memo 960 - C _18yb4vvuELoB6_4nBeg M7Aqsgt3hg6Sw9.docx | ROSS-000000047-ROSS-000000048 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 13935 | Kerr v. First Commodity Corp. of Boston, 735 F.2d 281 | 83H+2 | The Act establishes an ambitious scheme for the regulation of commodities trading. See 7 U.S.C. "" 1"24. The establishment of a wide-ranging scheme of federal regulation, however, does not result in the abolition of common law rights unless Congress plainly intended to abolish them or unless their continued existence would render the regulatory scheme ineffective. See Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 298"300, 96 S.Ct. 1978, 1984"1985, 48 L.Ed.2d 643 (1975). Nothing in the Act deals expressly with the preemption question. Moreover, the continued existence of common law fraud actions permitting punitive damage awards does not conflict with the regulatory scheme established by the Act. Congress recognized this by including a savings clause in the Act which reads: "[n]othing in this section shall supersede or limit the jurisdiction conferred on Courts of the United States or any State." 7 U.S.C. " 2. Moreover, by specifically making the arbitration and reparation procedures of the Act voluntary, Congress further evidenced its intention that the remedies under the Act should supplement rather than replace common law remedies. See 7 U.S.C. "" 7a(11), 18. The continuing availability under state law of punitive damages for commodities fraud was expressly recognized in Kotz v. Bache Halsey Stuart, Inc., 685 F.2d 1204, 1207"08 (9th Cir.1982). We agree with the Ninth Circuit in holding that the Act does not preempt punitive damage awards for common law fraud in commodities transactions. | Commodities Exchange Act does not preempt punitive damages awards for common-law fraud in commodities transactions. Commodity Exchange Act, SS 1-19, as amended, 7 U.S.C.A. SS 1-24. | Does Commodity Exchange Act preempt punitive damage awards for common law fraud in commodities transactions? | 013595.docx | LEGALEASE-00167033-LEGALEASE-00167034 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 13936 | Mormels v. Girofinance, S. A., 544 F. Supp. 815 | 83H+2 | 606 F.2d 5 (2d Cir. 1979). See also Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (2d Cir.), cert. denied, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975); ITT v. Vencap, 519 F.2d 1001 (2d Cir. 1975). The parties are in agreement that the principles developed in these cases are applicable to the commodity fraud claim. Securities cases and principles are used as persuasive aids to interpretation of the CEA. See, e.g., Miller v. New York Produce Exchange, 550 F.2d 762, 769 n.4 (2d Cir.), cert. denied, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977); CFTC v. J. S. Love & Assoc. Options Ltd., 422 F.Supp. 652, 660 (S.D.N.Y.1976). | Securities cases and principles are used as persuasive aids to interpretation of the Commodity Exchange Act. Securities Act of 1933, SS 1 et seq., 17(a), 15 U.S.C.A. SS 77a et seq., 77q(a); Securities Exchange Act of 1934, SS 1 et seq., 10(b), 15 U.S.C.A. SS 78a et seq., 78j(b); Commodity Exchange Act, SS 1 et seq., 4b, 4d, 7 U.S.C.A. SS 1 et seq., 6b, 6d. | Are securities cases and principles used as persuasive aids to interpretation of the Commodity Exchange Act? | Commodity Future Trading Regulation - Memo 54 - C - JL_68715.docx | ROSS-003308431-ROSS-003308432 | SA, Sub | 0.44 | 0 | 0 | 1 | 1 | |
| 13937 | Taylorsville City v. Adkins, 145 P.3d 1161 | 135H+100.1 | Further, the Supreme Court also discussed the distinction between reprosecution of a defendant after a conviction is overturned on appeal and reprosecution of a defendant after he is acquitted of a charge in the first instance. See id. at 308, 104 S.Ct. 1805. "Acquittals, unlike convictions, terminate the initial jeopardy. This is so whether they are "express or implied by a conviction on a lesser included offense." " Id. (citation omitted). "Thus, whether the trial is to a jury or to the bench, subjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause." Smalis v. Pennsylvania, 476 U.S. 140, 145, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986) (citations omitted). Accordingly, contrary to the arguments of Taylorsville, retrial after the reversal of a conviction and retrial after an acquittal are by no means equivalent. | Acquittals, unlike convictions, terminate the initial jeopardy, whether they are express or implied by a conviction on a lesser included offense; thus, whether the trial is to a jury or to the bench, subjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause. U.S.C.A. Const.Amend. 5. | "Do acquittals, unlike convictions, ""terminate"" the initial jeopardy?" | 015875.docx | LEGALEASE-00166685-LEGALEASE-00166686 | SA, Sub | 0.6 | 0 | 0 | 1 | 1 | |
| 13938 | Greater Poughkeepsie Library Dist. v. Town of Poughkeepsie, 81 N.Y.2d 574 | 371+2016 | The taxing power may be delegated to legislative bodies of municipalities and quasi-municipal corporations (Foss v. City of Rochester, 65 N.Y.2d 247, 253, 491 N.Y.S.2d 128, 480 N.E.2d 717; Matter of United States Steel Corp. v. Gerosa, 7 N.Y.2d 454, 459, 199 N.Y.S.2d 475, 166 N.E.2d 489, supra; Gautier v. Ditmar, 204 N.Y. at 27, 97 N.E. 464; see also, 16 McQuillin, Municipal Corporations " 44.07, at 26 [3d ed.] ). Such delegation preserves legislative accountability since "the municipalities or political divisions are through the local authorities representatives of the people and participants in the government of the state" (Gautier v. Ditmar, 204 N.Y. at 27, 97 N.E. 464). | Taxing power may be delegated to legislative bodies of municipalities and quasi-municipal corporations. McKinney's Const. Art. 3, S 1; Art. 16, S 1. | Can the taxing power be delegated to legislative bodies of municipalities and quasi-municipal corporations? | 046569.docx | LEGALEASE-00166551-LEGALEASE-00166552 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 13939 | Johnson v. Genesee Cty., Mich., 232 F. Supp. 567 | 371+2016 | Under our system of government, the power of taxation is vested exclusively in the legislative branch of government; and this power is a power which may be delegated by the legislature to municipal corporations, which are mere instrumentalities of the state for the better administration of public affairs. Here, full legislative power over the subject matter has been conferred upon a municipal corporation, i.e. the Board of Supervisors. | Power of taxation is vested exclusively in legislative branch of government and may be delegated by Legislature to municipal corporations. | Can the taxing power vested in Legislature be delegated to municipalities? | 046630.docx | LEGALEASE-00166817-LEGALEASE-00166818 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 13940 | Hill v. Roberts, 142 Tenn. 215 | 371+2013 | These cases recognize to its fullest extent the principle that the county and city are but arms or instrumentalities of the state. The state, therefore, having full control of these agencies, in the matter of taxation at least, may authorize such agents to levy a tax, or may direct such agents to levy a tax, or may itself directly tax for the benefit of these agencies. | A state, having full control of counties and cities, in the matter of taxation at least, may authorize them to levy a tax, or may direct them to levy a tax, or may itself directly tax for their benefit. | Can a state directly tax for its benefit? | 046634.docx | LEGALEASE-00166827-LEGALEASE-00166828 | Condensed, SA | 0.46 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13941 | Hatfield v. Green, 840 So.2d 759 | 289+453 | In his opinion, the chancellor found "there was never any written agreement between Mrs. Hatfield and the Greens to reflect the formation of a partnership."While a written agreement would remove any doubt about the existence of a partnership, it is not the only way a partnership may arise. See Miss.Code Ann. " 79"12"31 (Rev.2001). The Mississippi Supreme Court recognized that absent an express agreement, the chief criterion in determining the existence of a partnership is the parties' intent. Allied Steel Corp. v. Cooper, 607 So.2d 113, 117 (Miss.1992) (citing Hults v. Tillman, 480 So.2d 1134, 1143 (Miss.1985)). This intent may be inferred from the parties' actions and conduct. | Absent an express agreement, the chief criterion in determining the existence of a partnership is the parties' intent and this intent may be inferred from the parties' actions and conduct. West's A.M.C. S 79-12-11. | Can the existence of a partnership be determined absent an express partnership agreement? | 10826.docx | LEGALEASE-00081440-LEGALEASE-00081441 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 13942 | Commonwealth v. Butterick, 100 Mass. 12 | 8.30E+66 | An order for the payment of money drawn by a person on himself, payable to his own order, and by himself accepted and indorsed, may properly be described in an indictment as a bill of exchange. | An order for the payment of money drawn by a person on himself, payable to his own order, and by himself accepted and indorsed, may be treated as a bill of exchange. | "Is a bill drawn by a person, payable to his own order, a bill of exchange? " | 00994.docx | LEGALEASE-00081653-LEGALEASE-00081655 | Condensed, SA | 0.15 | 0 | 1 | 0 | 1 | |
| 13943 | State v. Crisman, 123 Idaho 27 | 221+179 | If jurisdiction was properly exercised below, even if the magistrate relied upon improper authority, the decision to exercise jurisdiction will be affirmed. See State Dept. of Health & Welfare v. Engelbert, 114 Idaho 89, 753 P.2d 825 (1988) (where order of lower court is correct, but based upon erroneous theory, order will be affirmed upon correct theory). Ambassadorial status cannot be obtained through unilateral proclamation as Crisman has attempted. The receiving state's executive branch must recognize the sovereignty of the other state before diplomatic immunity exists. United States v. Lumumba, 741 F.2d 12 (2d Cir.1984). The record does not reflect that either the United States Department of State or the Idaho Secretary of State has recognized the "Kingdom of YHWH (Yahweh)" as a sovereign. Furthermore, the record fails to show that either of these departments has granted Crisman immunity. Therefore, Crisman cannot claim diplomatic immunity and the magistrate properly exercised jurisdiction. See id.; State v. Davis, 745 S.W.2d 249 (Mo.App.1988). | Receiving state's executive branch must recognize sovereignty of other state before diplomatic immunity exists. | Should the receiving state recognize the sovereignty of the other state before diplomatic immunity exists? | 05720.docx | LEGALEASE-00082155-LEGALEASE-00082156 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 13944 | In re N.B., 199 P.3d 16 | 209+138 | Several of these courts have also explained that (1) Congress stated the ICWA applies when the child is an Indian child and the matter is a child custody proceeding; (2) Congress limited the application of the ICWA in only delinquency and dissolution proceedings; and (3) Congress stated that the ICWA's purposes require its application to preserve the tribe's interest in its children, all of which are frustrated by limiting the ICWA to the removal of a child from a home where the child participates in Indian culture. In re Baby Boy C., 27 A.D.3d at 46"49, 805 N.Y.S.2d at 322"24; State in Interest of D.A.C., 933 P.2d at 999"1000. | Court of Appeals would decline to adopt judicially created "existing Indian family exception" to the Indian Child Welfare Act (ICWA), under which ICWA would be applied only to removal of Indian children who were members of an Indian home and participated in Indian culture, in proceeding in which stepmother petitioned to terminate mother's parental rights and to adopt Indian child. Indian Child Welfare Act of 1978, S 2 et seq., 25 U.S.C.A. S 1901 et seq. | When does the Indian Child Welfare Act (ICWA) apply? | 05055.docx | LEGALEASE-00083736-LEGALEASE-00083737 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 13945 | In re Gardner, 534 A.2d 947 | 368+1 | Gardner's decision to live without artificial life-sustaining procedures would not constitute suicide since the grievous injuries resulting in his present condition were not self-inflicted. He in no sense has decided to kill himself. Gardner did not suffer his injuries by intentionally placing himself in such a position that his continued biological existence would depend upon the provision of life-sustaining procedures. Accident has brought him to that state. Following his mishap Gardner is simply exercising his right to control the course of his medical care. Because of the unfortunate condition into which his 1985 accident put him, his refusal of all artificial feeding will be followed by death. Yet this coupling of his treatment decision and his ultimate death should not mask the obvious point that the cause of his death will be not his refusal of care but rather his accident and his resulting medical condition, including his inability to ingest food and water. See, e.g., In re Conroy, 98 N.J. at 355, 486 A.2d at 1226.Forcing upon him the life-sustaining procedures he has decided to refuse would only prolong the ultimate moment of his death. His decision not to receive such procedures, far from constituting suicide, is a choice to allow to take its course the natural dying process set in motion by his physiological inability to chew or swallow. See In re Storar, 52 N.Y.2d at 377 n. 6, 420 N.E.2d at 71 n. 6, 438 N.Y.S.2d at 273 n. 6 (death will not be suicide since Brother Fox's condition "was not self-inflicted"). See also Rasmussen v. Fleming, 154 Ariz. at 218, 741 P.2d at 685 (refusing medical treatment merely allows disease to take its course and death is not result of self-inflicted injuries) (quoting In re Conroy, 98 N.J. at 351, 486 A.2d at 1224); Satz v. Perlmutter, 362 So.2d at 162-63 (discontinuation of treatment would not be suicide since patient "really wants to live,but do so ... under his own power"); Saikewicz, 373 Mass. at 743 n. 11, 370 N.E.2d at 426 n. 11 (discontinuation is not suicide since | Patient's decision, made prior to accident not to be kept alive in persistent vegetative state by life-sustaining procedures was not suicide inasmuch as grievous injuries resulting in vegetative condition were not self-inflicted. | Will a persons right not to be kept alive in a persistent vegetative state by life-sustaining procedures amount to suicide? | 05640.docx | LEGALEASE-00084275-LEGALEASE-00084276 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 13946 | Illinois v. Rodriguez, 497 U.S. 177 | 35+68.2(1) | The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, see Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), or from a third party who possesses common authority over the premises, see United States v. Matlock, supra, 415 U.S., at 171, 94 S.Ct., at 993. The State of Illinois contends that that exception applies in the present case. | Fourth Amendment generally prohibits warrantless entry of person's home, whether to make arrest or to search for specific objects. U.S.C.A. Const.Amend. 4. | Do warrantless inspections violate the fourth amendment? | 05596.docx | LEGALEASE-00084311-LEGALEASE-00084312 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13947 | Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111 | 221+104 | To attain the status of a rule of customary international law, a norm must be "specific, universal, and obligatory." Sosa, 542 U.S. at 732, 124 S.Ct. 2739 (quoting with approval the statement of a lower court) (internal quotation marks omitted); see also Flores, 414 F.3d at 248 ("[C]ustomary international law is composed only of those rules that States universally abide by, or accede to, out of a sense of legal obligation and mutual concern."); Restatement (Third) " 102(2) ("Customary international law results from a general and consistent practice of states followed by them from a sense of legal obligation."). Defining such norms "is no simple task," as"[c]ustomary international law is discerned from myriad decisions made in numerous and varied international and domestic arenas." Flores, 414 F.3d at 247. The sources consulted are therefore of the utmost importance. As the Supreme Court re-emphasized in Sosa, we look to "those sources we have long, albeit cautiously, recognized":"[W]here there is no treaty, and no controlling executive or legislative act or judicial decision, resort must be had to the customs and usages of civilized nations; and, as evidence of these, to the works of jurists and commentators, who by years of labor, research and experience, have made themselves peculiarly well acquainted with the subjects of which they treat. Such works are resorted to by judicial tribunals, not for the speculations of their authors concerning what the law ought to be, but for trustworthy evidence of what the law really is." | To attain the status of a rule of customary international law, a norm must be specific, universal, and obligatory. Rest. 3rd, Restatement of the Foreign Relations Law of the United States S 102(2). | "Should a ""norm of international law"" be specific, universal, and obligatory? " | 05682.docx | LEGALEASE-00085019-LEGALEASE-00085020 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13948 | United States v. O'Brien, 994 F. Supp. 2d 167 | 63+13 | Defendants rely on an exception to the bribery statute, set forth in " 666(c). That section provides that "[t]his section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. " 666(c). Congress enacted that provision in order to avoid the section's "possible application to acceptable commercial and business practices." United States v. Cornier"Ortiz, 361 F.3d 29, 33 (1st Cir.2004) (quoting H.R.Rep. No. 99"797, at 30 (1986), reprinted in 1986 U.S.C.C.A.N. 6138, 6153). Generally, whether wages are "bona fide" and paid "in the usual course of business" are questions of fact for the jury. United States v. Dwyer, 238 Fed.Appx. 631, 647"48 (1st Cir.2007) (unpublished); see Cornier"Ortiz, 361 F.3d at 36. | Generally, in a bribery case, whether wages are bona fide and paid in the usual course of business are questions of fact for the jury. 18 U.S.C.A. S 666(c). | "Does 18 U.S.C. 666(c) apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business or are they exempted?" | 01674.docx | LEGALEASE-00092050-LEGALEASE-00092051 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 13949 | Howard v. Frost Natl Bank, 458 S.W.3d 849 | 307A+681 | We review a trial court grant of a motion to dismiss de novo. Lynch v. Lynch, 260 S.W.3d 834, 836 (Mo. banc 2008). The facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiffs. Id. The petition states a claim if it sets forth any set of facts that, if proven, would entitle the plaintiffs to relief. Id. "Missouri is a fact-pleading state." Whipple v. Allen, 324 S.W.3d 447, 449 (Mo.App.E.D.2010). Accordingly, though a "petition need not plead evidentiary or operative facts showing an entitlement to the relief sought, it must plead ultimate facts demonstrating such an entitlement." Id. (quotationsomitted). We disregard conclusions not supported by facts in the context of assessing a motion to dismiss. Id. at 449"50. | Courts disregard conclusions not supported by facts in the context of assessing a motion to dismiss. | Do courts disregard conclusions not supported by facts in the context of assessing a motion to dismiss? | 05297.docx | LEGALEASE-00096640-LEGALEASE-00096641 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 13950 | Golf Tr. of Am. v. Soat, 355 Ill. App. 3d 333 | 302+1 | A pleading is defined as, "A formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses." Black's Law Dictionary 1191 (8th ed.2004). The purpose of a pleading is to present, define, and narrow the issues and limit the proof needed at trial. People ex rel. Fahner v. Carriage Way West, Inc., 88 Ill.2d 300, 307, 58 Ill.Dec. 754, 430 N.E.2d 1005 (1981). A pleading produces an issue asserted by one side and denied by the other so that a trial may determine the actual truth. Fahner, 88 Ill.2d at 307"08, 58 Ill.Dec. 754, 430 N.E.2d 1005. | A "pleading" is defined as a formal document in which a party to a legal proceeding, especially a civil lawsuit, sets forth or responds to allegations, claims, denials, or defenses. | What is a pleading? | Pleading - Memo 18 - VP.docx | ROSS-003283381-ROSS-003283382 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 13951 | In re Hass, 273 B.R. 45 | 25T+113 | Consensual resolution of litigation has been favored in the law from time immemorial, whether by the parties themselves, or through mediation or other techniques of dispute resolution. Settlements in discharge and dischargeability litigation are no less favored. Settlement of a controversy under Section 523(a) generally affects only the particular creditor and the debtor post-petition (in a Chapter 7 case), and approval of such a compromise generally will not affect the rights of parties interested in the debtor's estate. | Consensual resolution of litigation has been favored in the law from time immemorial, whether by the parties themselves, or through mediation or other techniques of dispute resolution. | Is consensual resolution of litigation favored in law? | 001017.docx | LEGALEASE-00118106-LEGALEASE-00118107 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 13952 | Hogoboom v. State, 120 Neb. 525 | 146+29 | In order to properly determine the question here presented, it is necessary that the several statutes last referred to be construed together for the purpose of determining the legislative intent. It is quite obvious that by the express terms of the statutes thus construed "the value of the property stolen, embezzled or falsely obtained" constitutes an essential element of the indictment or information charging embezzlement under section 9629, Comp. St. 1922, as well as of the verdict of the jury determining the result of a trial thereunder. Indeed, in absence of such a statute as section 10154, Comp. St. 1922, above quoted, such would be the rule in jurisdictions where the statute relating to embezzlements provides that the punishment shall be regulated by value, as in cases of grand larceny and petit larceny. 12 Standard Encyclopaedia of Procedure, 392. | Value of property constitutes essential element of information charging embezzlement. Comp.St.1922, S 10154, and S 9629, as amended by Laws 1923, c. 95. | Does value of property constitute an essential element of information charging embezzlement? | 001238.docx | LEGALEASE-00118589-LEGALEASE-00118591 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13953 | People v. Catlin, 26 Cal. 4th 81 | 203+566 | This is true even if the victim's preexisting physical condition also was a substantial factor causing death. (People v. Wattier (1996) 51 Cal.App.4th 948, 953, 59 Cal.Rptr.2d 483.) "So long as a victim's predisposing physical condition, regardless of its cause, is not the only substantial factor bringing about his death, that condition ... in no way destroys the [defendant's] criminal responsibility for the death." (People v. Stamp (1969) 2 Cal.App.3d 203, 210, 82 Cal.Rptr. 598; see also People v. Wattier, supra, 51 Cal.App.4th at p. 953, 59 Cal.Rptr.2d 483; People v. Funes (1994) 23 Cal.App.4th 1506, 1523, 28 Cal.Rptr.2d 758; 1 Witkin & Epstein, Cal.Criminal Law, supra, Elements, " 37, p. 243 ["A defendant may also be criminally liable for a result directly caused by his or her act, even though there is another contributing cause"].) | As long as the jury finds in murder prosecution that without the criminal act the death would not have occurred when it did, it need not determine which of the concurrent causes was the principal or primary cause of death, but only whether the criminal act was a substantial factor contributing to the result, even if victim's preexisting physical condition was also a substantial factor causing death. | Can a victims preexisting physical condition destroy defendants responsibility for a death? | 001732.docx | LEGALEASE-00118867-LEGALEASE-00118868 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 13954 | In re E.M.V., 312 S.W.3d 288 | 30+5 | Thus, the only remaining jurisdictional issue before us is whether error is apparent from the face of the record. For purposes of a restricted appeal, the face of the record consists of all the papers on file in the appeal, including the reporter's record.Norman Commc'ns v. Tex. Eastman Co., 955 S.W.2d 269, 270 (Tex.1997). Therefore, we will review the reporter's record for error regarding the sufficiency of the evidence. | For purposes of the requirement that the error complained of must be apparent from the face of the record for a restricted appeal to be reviewable, the "face of the record" consists of all the papers on file in the appeal, including the reporter's record. Rules App.Proc., Rule 30. | What consists in the face of the record for the purpose of a restricted appeal? | 008163.docx | LEGALEASE-00122013-LEGALEASE-00122014 | Condensed, SA | 0.33 | 0 | 1 | 0 | 1 | |
| 13955 | Nat'l Coal. Gov't of Union of Burma v. Unocal, 176 F.R.D. 329 | 221+515 | When applying the Sabbatino test, the party asserting the applicability of the act of state doctrine bears the burden of proof. See Liu v. Republic of China, 892 F.2d 1419, 1432 (9th Cir.1989). "At a minimum, this burden requires that a party offer some evidence that the government acted in its sovereign capacity and some indication of the depth and nature of the government's interest."Id. (finding doctrine inapplicable where plaintiff sued the Republic of China for the assassination of her husband). Although precedent is less than clear about the parameters of the "official acts" limitation, the Supreme Court has distinguished between "public and governmental acts of sovereign states on the one hand and their private and commercial acts on the other[.]" Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 695, 96 S.Ct. 1854, 1862, 48 L.Ed.2d 301 (1976). Where the facts presented are not "sufficient to demonstrate that the conduct in question was the public act of those with authority to exercise sovereign powers," the court should not presume that the conduct at issue was an "official act" of the foreign sovereign. Cf. id. (finding facts insufficient to show commercial conduct was public act of foreign sovereign entitled to respect in our courts where no statute, decree, order or resolution was offered in evidence to show Cuban government had repudiated obligations or "as a sovereign matter" determined to confiscate amounts due to foreign importers). | Party asserting applicability of act of state doctrine bears burden of proof; at minimum, this burden requires that party offer some evidence that government acted in its sovereign capacity and some indication of depth and nature of government's interest. | Who bears the burden of proof when an assertion that the act of state doctrine is applicable is made? | 020768.docx | LEGALEASE-00123554-LEGALEASE-00123555 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 13956 | Beaty v. Republic of Iraq, 480 F. Supp. 2d 60 | 221+342 | Iraq's final foreign-affairs salvo is the act-of-state doctrine. That doctrine bars courts from adjudicating a case "when "the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within" its boundaries." World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1164 (D.C.Cir.2002) (quoting W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., 493 U.S. 400, 405, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990)). "[M]ost recently described ... as a consequence of domestic separation of powers, reflecting the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder the conduct of foreign affairs," id. at 1165 (citations and quotation marks omitted), the act-of-state doctrine "provides foreign states with a substantive defense on the merits." Altmann, 541 U.S. at 700, 124 S.Ct.2240. "The policies underlying the doctrine include international comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign relations." World Wide Minerals, 296 F.3d at 1165 (citations and quotation marks omitted). When the factual predicate for the doctrine's application exists, courts decide whether to invoke it by assessing three factors: (1) the degree of consensus concerning a particular area of international law, (2) the implications of the issue for the United States' foreign relations, and (3) whether the government that perpetrated the act or acts at issue is still in existence. See Owens v. Republic of Sudan, 374 F.Supp.2d 1, 26 (D.D.C.2005). | "Act-of-state" doctrine bars courts from adjudicating a case when the relief sought or the defense interposed would require a court in the United States to declare invalid the official act of a foreign sovereign performed within its boundaries. | "Is the act of state doctrine is an inquiry into a consequence of domestic separation of powers, and it directs the court to dismiss the suit if its resolution would require the court to declare invalid an official act of a foreign sovereign?" | 020035.docx | LEGALEASE-00123558-LEGALEASE-00123559 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13957 | Bear v. Fleming, 714 F. Supp. 2d 972 | 1.41E+31 | The court is cognizant of the need to tread carefully in the realm of school policy. Federal courts should refrain from interfering with the decisions of school authorities. East Hartford Ed. Ass'n, 562 F.2d at 857. Judicial interference in the operation of public schools requires "care and restraint." Epperson v. State of Ark., 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." Id. | Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values. | "As a general rule, can courts intervene in the resolution of conflicts which arise in the daily operation of school systems which do not directly and sharply implicate basic constitutional values?" | 016746.docx | LEGALEASE-00127108-LEGALEASE-00127109 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 13958 | State ex rel. Little Prairie Special Rd. Dist. of Pemiscot Cty. v. Thompson, 315 Mo. 56 | 200+121 | A road district, being a municipal corporation, has power to levy general taxes upon property within its boundaries for purposes of the district. Harris v. Bond & M. Co., 244 Mo. 666, loc. cit. 683, 149 S. W. 603; In re City of Uniondale, 285 Mo. 143, 225 S. W. 985; State ex inf. v. Mansfield Special Road District, 299 Mo. 668, 253 S. W. 714; Little Prairie Special Road District v. Pemiscott County, 297 Mo. 568, 249 S. W. 599. In the case last cited the court had under consideration this particular road district, and assumed that it had the power of taxation. The case arose as to the proper appropriation of the funds arising from such taxation. | Road district, being municipal corporation, can levy general taxes on property within its boundaries for purposes of district. | Can a road district levy general taxes on property? | 018792.docx | LEGALEASE-00129051-LEGALEASE-00129052 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13959 | Copar Pumice Co. v. Bosworth, 502 F. Supp. 2d 1200 | 260+29 | The Forest Service is authorized to manage surface resources by federal statute, but not to interfere with mining claims. See, Converse v. Udall, 262 F.Supp. 583, 585 (D.C.Or.1966) (discussing the Surface Resources Act, 30 U.S.C. " 612). The General Mining Law of 1872 ("General Mining Law," 30 U.S.C. " 22 et seq.) allows one to locate and stake either of two types of claims"patented and unpatented. A patented claim is obtained by locating a valuable mineral deposit on the claim and then obtaining a patent certificate from the Government. An unpatented mining claim is obtained by locating a deposit in a mineral vein or lode on public lands, and staking the boundaries of the claim. In the latter case, title to the land where the mining claim is located remains with the Government, but the severed minerals and proceeds are the personal property of the miner. | The Forest Service is authorized to manage surface resources by federal statute, but not to interfere with mining claims. Multiple Use Mining Act of 1955, S 4, 30 U.S.C.A. S 612. | Is the Forest Service authorized to manage surface resources? | 047580.docx | LEGALEASE-00129127-LEGALEASE-00129128 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 13960 | Malerbi v. Cent. Reserve Life of N. Am. Ins. Co., 225 Neb. 543 | 307A+742.1 | Pretrial conferences are conducted to simplify the issues, amend pleadings, and avoid unnecessary proof of facts at trial. Bump v. Firemens Ins. Co., 221 Neb. 678, 380 N.W.2d 268 (1986). They are also conducted to avoid traps and surprises at trial. Priest v. McConnell, 219 Neb. 328, 363 N.W.2d 173 (1985). | Pretrial conferences are conducted to simplify issues, amend pleadings, and avoid unnecessary proof of facts at trial and to avoid traps and surprises at trial. | hat is the purpose of pretrial conference and what does it avoid? | 026373.docx | LEGALEASE-00130032-LEGALEASE-00130033 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 13961 | Bd. of Trustees of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Markets, 622 F.3d 1335 | 25T+141 | The determination whether a signatory like Adams had the authority to bind a non-signatory like the Board to arbitrate "turns on the specific facts of each case." Id. at 1248. This issue is for us, not an arbitrator, to resolve, id., unless the parties have clearly delegated to the arbitrator responsibility for this determination, AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Contrary to the suggestion of Citigroup, we resolve this issue without a thumb on the scale in favor of arbitration because the "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir.2002). | Determination of whether a signatory has authority to bind non-signatory to arbitrate turns on specific facts of each case. | How do courts determine the authority of a signatory to a bind non-signatory to arbitrate? | 007350.docx | LEGALEASE-00130207-LEGALEASE-00130208 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13962 | Elwood v. Panhandle Concrete Co., 236 Neb. 751 | 307A+750 | We have held that a pretrial conference is conducted to simplify and narrow the issues to be presented in a case. ""Issues specified at a pretrial conference control the course of an action and, unless altered by the court, constitute the issues on which the case is tried. [Citation omitted.] Generally, issues delineated in an unaltered pretrial order supplant the issues raised in the pleadings. [Citation omitted.]" " Bituminous Casualty Corp. v. Deyle, 234 Neb. 537, 540, 451 N.W.2d 910, 913 (1990), quoting Bump v. Firemens Ins. Co., 221 Neb. 678, 380 N.W.2d 268 (1986). | Generally, issues delineated in unaltered pretrial order supplant issues raised in pleadings. | "Do issues delineated in unaltered pretrial order, supplant issues raised in pleadings? " | 027358.docx | LEGALEASE-00130548-LEGALEASE-00130549 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 13963 | State v. Bd. of Comm'rs of Marion Cty., 170 Ind. 595 | 200+18 | All roads laid out under legislative enactment are public highways belonging to the state under full control of the Legislature. While this control is as a general rule exercised through the instrumentality of local governmental subdivisions of the state, the Legislature may, in the absence of constitutional limitations, directly exercise control of public highways. Elliott's Roads & Streets (2d Ed.) "" 9, 421, 423, 424, 425, 426; Garvin v. Daussman, 114 Ind. 429, 435, 16 N. E. 826, 5 Am. St. Rep. 637; Cones v. Board, 137 Ind. 404, 408, 409, 37 N. E. 272; Board v. Allman, 142 Ind. 573, 42 N. E. 206, 39 L. R. A. 58, and cases cited; City of Indianapolis v. Higgins, 141 Ind. 1, 40 N. E. 671; Backus v. Depot Co., 169 U. S. 557, 18 Sup. Ct. 445, 42 L. Ed. 853; Williams v. Eggleston, 170 U. S. 304, 18 Sup.Ct. 617, 42 L. Ed. 1047; O'Connor v. Pittsburg, 18 Pa. 187; Case of Phil. & Trenton Ry. Co., 6 Whart. (Pa.) 25, 36 Am. Dec. 202. It was said by this court in Cones v. Board, 137 Ind. 408, 409, 37 N. E. 274: "Highways are the arteries of the state, and the state has never surrendered her right to direct, by legislation, the manner and agencies through which they are created, maintained, and vacated. Even as to free gravel roads, the only power to create them is by special and direct authority from the state, even to the detail of naming the officer and prescribing his duties who shall perform the various elements of that authority. The state has retained the power to punish, not only for the neglect of official duty with relation to highways, but for the obstruction of and interference with public travel upon them." | All roads laid out under legislative enactment are public highways belonging to the state, under full control of the Legislature, which may, in the absence of constitutional limitations, exercise such control directly. | Do all roads laid out under legislative enactment belong to the State? | Highways -Memo 100 - DB.docx | ROSS-003332013-ROSS-003332014 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 13964 | Madison Assocs. v. Bass, 158 Ill. App. 3d 526 | 388+26 | Defendant argues that he was prejudiced due to the unavoidably late addition of new counsel. On January 21, defendant answered that he was ready for trial and announced that he would represent himself. The substitution of attorneys after the commencement of trial does not constitute good cause for granting a continuance. (Yakin v. Yakin (1982), 107 Ill.App.3d 1103, 62 Ill.Dec. 547, 436 N.E.2d 573; Schroeder v. Busenhart (1971), 133 Ill.App.2d 180, 272 N.E.2d 750, cert. denied (1972), 405 U.S. 1017, 92 S.Ct. 1293, 31 L.Ed.2d 479.) Furthermore, defense counsel conducted defendant's case in a vigorous and thorough manner and thus the denial of the motion for a continuance because of the additional or new counsel did not prejudice defendant and was not an abuse of discretion. See Schroeder v. Busenhart. | Substitution of attorneys after commencement of trial does not constitute good cause for granting continuance. | Is the substitution of attorneys after the commencement of trial a good cause for granting continuance? | 029249.docx | LEGALEASE-00135510-LEGALEASE-00135511 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 13965 | United States v. Kabot, 295 F.2d 848 | 63+14 | Finally, objection is made to the instruction to the jury to disregard the question of the merits of the tax case. This instruction was entirely proper in light of the need for guiding the jury through a mass of complex testimony.Considering the charge as a whole, there was nothing in it tending to make the jury believe that it could not consider the existence of the tax claim and Kabot's ideas about its seriousness with reference to the issue of Kabot's motivation. There was no request for an affirmative instruction on this point, and no attack is here made on its absence. | Court in prosecution for bribery of internal revenue agent properly instructed jury to disregard question of merits of tax case involved. | Was it proper for the court in a bribery case of an internal revenue agent to disregard the question of the mertis of the tax case involved and exclude it from evidence? | 011495.docx | LEGALEASE-00135852-LEGALEASE-00135853 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13966 | Hobby v. State, 480 S.W.2d 554 | 67+7 | Burglary is an offense against the possessionratherthan against the legaltitle or the possessor.] | Specific ownership of building is not an essential element which needs to be proved in prosecution for burglary; title, as far as law of burglary is concerned, follows possession and possession constitutes sufficient ownership as against burglar. | Is burglary an offense against possession? | 012648.docx | LEGALEASE-00135866- LEGALEASE-00135867 | SA, Sub | 0.61 | 0 | 0 | 1 | 1 | |
| 13967 | Erlandson v. Erskine, 76 Mont. 537 | 8.30E+266 | Where a renewal note is given, if it is shown that it was the intention of the parties to extinguish the one by the other, the renewal note is treated as a new transaction on a new promise (Walker v. Dunham, 135 Mo. App. 296, 115 S. W. 1086). And when the maker, in good faith and without notice of the assignment, either pays to the payee of a nonnegotiable note the full amount due thereon, or gives a new note in lieu thereof under such circumstances as clearly show that the new note was given and accepted in extinguishment of the old, proof of such facts constitutes a complete defense to a suit by the assignee of the payee. Seibold v. Ruble, 41 Okl.267, 137 P. 696; Dickerson v. Higgins, 15 Okl. 588, 82 P. 649; Sykes v. Citizens' Nat. Bank, 69 Kan. 134, 76 P. 393; San Jos" Ranch Co. v. San Jos" Water Co., 132 Cal. 582, 64 P. 1097; Murray v. Reed, 17 Wash. 1, 48 P. 343; Squires v. Adams, 70 Ill. App. 502; Union National Bank v. Post, 93 Ill. App. 339; Id., 192 Ill. 385, 61 N. E. 507; Horne v. Young, 40 Ga. 193; Ellis v. Ballou, 129 Mich. 303, 88 N. W. 298. | Renewal note is treated as new transaction on new promise, if parties' intention was to extinguish original note. | Can a renewal note be treated as a new transaction or promise if governed by the intention of parties? | 009399.docx | LEGALEASE-00138776- LEGALEASE-00138777 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 13968 | United States v. Jacobs, 431 F.2d 754 | 63+1(1) | Appellants also claim that inasmuch as Bruh was told not to go ahead with any efforts to help Siegel out of difficulty until the amount of the bribe was determined and he had received the money, Bruh's official behavior was not influenced, nor could it have been influenced until these preliminary negotiations were settled, an agreement reached, and the money paid. This precautionary advice to Bruh, however, does not negate the guilt of the defendants. The statute makes attempted bribery a crime, and so long as a bribe is "offered or promised" with the requisite intent "to influence any official act" the crime is committed. "Criminality does not get rid of its evil quality by the precautions it takes against consequences, personal or pecuniary. * * * Guilt is incurred by the trial- success may aggravate, it is not a condition of it." United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553 (1921). | Under statute against corruptly giving, offering or promising anything of value to any public official with intent to influence any official act or to influence official to commit any fraud or make opportunity for commission of any fraud on United States or to induce official to do or omit to do any act in violation of his lawful duty, attempted bribery is a crime and so long as bribe is offered or promised with requisite intent to influence any official act, the crime is committed. 18 U.S.C.A. S 201(b). | When is attempted bribery completed? | 012190.docx | LEGALEASE-00142463- LEGALEASE-00142464 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 13969 | Allwein v. Horn, 558 So. 2d 810 | 307A+746 | Although our jurisprudence is scant in discussing the appropriateness of dismissal as a sanction for failure to comply with orders given pursuant to article 1551, we do find guidance in jurisprudence pertaining to sanctions imposed for non-compliance with discovery orders. See Landry v. LeMaire, 527 So.2d 595 (La.App. 3d Cir.1988); Smith v. Allied Chemical Corp., 517 So.2d 250 (La.App. 1st Cir.1987), writ denied, 518 So.2d 510 (La.1988); Fulgham v. An Unknown Police Officer, 480 So.2d 417 (La.App. 4th Cir.1985). As with discovery sanctions, we find that the trial court is vested with much discretion in selecting the appropriate sanctions and its choice will not be reversed absent a clear showing that it abused that discretion. We are likewise cognizant that dismissal with prejudice is a severe penalty; thus it should be imposed only in extreme circumstances where the plaindismissal of his action.tiff is clearly aware that his non-compliance will result in However, where a party fails to follow a court's pre-trial order, the burden is on that party to show why he failed to so comply. | Dismissal with prejudice is a severe penalty and should be imposed only in extreme circumstances where plaintiff is clearly aware that his noncompliance with statutory provision outlining pretrial procedure and empowering district court with discretion to order pretrial conference and issue orders concerned therewith will result in dismissal of action. LSA-C.C.P. art. 1551. | Is dismissal with prejudice a severe penalty and should be imposed only in extreme circumstance? | 035534.docx | LEGALEASE-00146180- LEGALEASE-00146181 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 13970 | Wolfe v. Gober, 11 Vet. App. 1 | 34+62 | An NSLI policy is a contract between the veteran and the United States government. See 38 U.S.C. " 1917. The federal statute governing NSLI policies gives the veteran the right to change the beneficiary of an NSLI policy at any time, with or without the knowledge or consent of any present or prior beneficiaries. 38 U.S.C. " 1917(a); 38 C.F.R. " 8.22 (1996); see Wissner v. Wissner, 338 U.S. 655, 658, 70 S.Ct. 398, 399"400, 94 L.Ed. 424 (1950); Young v. Derwinski, 2 Vet.App. 59 (1992). It is well settled that "Policies of [NSLI] are contracts of the United States and possess the same legal incidence as other Government contracts. The terms are to be construed by Federal and not by State law." Dyke v. Dyke, 122 F.Supp. 529, 535 (E.D.Tenn.N.D.1954). | Policies of National Service Life Insurance (NSLI) are contracts of United States and possess same legal incidence as other government contracts. | Are National Service Life Insurance policies considered contracts of the United States? | 008701.docx | LEGALEASE-00146547- LEGALEASE-00146548 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13971 | Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, 180 F. Supp. 3d 236 | 231H+1549(11) | Plaintiffs seek to avoid this mandatory arbitration clause by arguing that the agreement to arbitrate embodied in the 2015 MOA cannot apply retroactively to claims that may have accrued prior to the execution of the 2015 MOA. This argument is meritless. The Second Circuit has indicated that, in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate. Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98"99 (2d Cir.1999); see also Arrigo v. Blue Fish Commodities, Inc., 408 Fed.Appx. 480, 481"82 (2d Cir.2011) (summary order); Duraku v. Tishman Speyer Properties, Inc., 714 F.Supp.2d 470, 474 (S.D.N.Y.2010). Significantly, the arbitration provision at issue here contains no such clear limiting language. Furthermore, to the extent there is doubt about the scope of arbitrable issues, the Court must resolve that doubt in favor of arbitration. Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452"53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion); Citigroup, Inc. v. Abu Dhabi Investment Auth., 776 F.3d 126, 130 (2d Cir.2015). "While a gateway dispute about whether the parties are bound to a given arbitration clause raises a question of arbitrability for a court to decide," it is the role of the arbitrator, rather than this Court, to resolve issues of contract interpretation and arbitration procedures in the first instance. Duran v. J. Hass Grp., L.L.C., 531 Fed.Appx. 146, 147 (2d Cir.2013) (summary order) (quotation marks omitted); see UBS Financial Services, Inc. v. West Virginia Univ. Hosps., Inc., 660 F.3d 643, 654 (2d Cir.2011) (stating that "procedural questions which grow out of the dispute and bear on its final disposition" are generally for the arbitrator to resolve in the first instance (quotation marks omitted)). | Employees' wage-related claims under New York law and Fair Labor Standards Act (FLSA) against employer fell within scope of arbitration provision in collective bargaining agreement (CBA) between employees' bargaining representative and employer, which required that all wage and hour-related claims be submitted to arbitration, even though claims accrued prior to execution of modified CBA which added arbitration provision, where arbitration provision did not contain provision placing temporal limitation on arbitrability. Fair Labor Standards Act of 1938 S 6, 29 U.S.C.A. S 206. | Can an arbitration provision cover claims that accrued prior to the execution of the agreement to arbitrate? | 007834.docx | LEGALEASE-00148869-LEGALEASE-00148870 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 13972 | Mathews v. Federated Serv. Ins. Co., 122 Or. App. 124 | 307A+622 | In his second assignment of error, plaintiff contends that the court erred by granting Carlson Chevrolet's ORCP 21 A(8) motion5 to dismiss his negligent entrustment claim. A court may grant a pre-trial motion to dismiss under ORCP 21 A(8) only if the complaint, on its face, fails to state a claim. Parks v. Willis, 121 Or.App. 72, 74, 853 P.2d 1336 (1993). A plaintiff in a negligent entrustment claim must prove that there was an entrustment and that the entrustment was negligent. | Court may grant a pretrial motion to dismiss only if complaint, on its face, fails to state a claim. Rules Civ.Proc., Rule 21, subd. A(8). | "On a pre-trial motion to dismiss, can the trial court dismiss only if the pleading on its face fails to state a claim?" | 036770.docx | LEGALEASE-00150098-LEGALEASE-00150099 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 13973 | Jones v. Madison Cty. Comm'rs, 137 N.C. 579 | 104+24 | Again, by chapter 262 it is provided that said county of Madison "shall levy a special road tax to be specially applied on the public roads of the county in the purchase of blasting and bridge material." These two acts, requiring the building of public bridges and roads, and the levy of taxes for that purpose, were governmental, and have been held to be, therefore, matters within the scope of the legislative authority to command to be done. Tate v. Commissioners, 122 N. C. 812, 30 S. E. 352, cited in Jones v. Commissioners, 135 N. C., at pages 223, 224, 47 S. E., at pages 754, 755, where the distinction is drawn. It is different, however, as to issuing 30-year bonds, whatever the previous consideration, for that is not imposing a governmental duty, and directing the levy of taxes to discharge it, but it would be a legislative requirement that the county make a contract without its consent, and which yet would be subject to enforcement in the courts. The General Assembly of 1903 (page 490, c. 289) understood clearly this fundamental distinction between imposing a governmental duty, and requiring the county, as a financial agency of its people, to make a contract, and therefore said chapter 289, p. 490, Laws 1903, merely "authorizes and empowers" the county commissioners to issue new bonds for the former bonds, which will not be due till 1907. And the General Assembly of 1905, knowing that this court had held those words to be permissive, and not mandatory, enacted a new statute upon the same subject, using the same words, and presumably only because it had the guaranty of a decision of this court that the words could not be construed except as permissive authority. | Const. art. 7, S 7, declares that no county shall contract any debt, pledge its faith, or loan its credit, and that no tax shall be levied, except for the necessary expenses thereof, unless by a vote of a majority of the qualified voters; and section 14 provides that the General Assembly shall have power by statute to modify, change, or abrogate any and all of the provisions of article 7, except sections 7, 9, and 13-section 9 requiring uniform taxation, and section 13 relating to debts of the Confederate government. Held, that Laws 1903, p. 490, c. 289, requiring the funding of the floating indebtedness and the refunding of certain bonds of Madison county, and requiring the laying of a tax for the payment of the bonds, is not in excess of the legislative authority, though the county offices are created by Const. art. 7; the debts in question having been for necessary expenses, and the Legislature, except as limited, having power to supervise and control the action of county officers in governmental matters. Judgment (1904) 47 S.E. 753, 135 N.C. 218, reversed on rehearing. | Does the legislature have power to compel a county to levy a tax for road purposes? | 019100.docx | LEGALEASE-00150566-LEGALEASE-00150567 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13974 | Barrett v. Dodge, 16 R.I. 740 | 8.30E+10 | The court, in its charge to the jury, instructed them that both the notes declared on were to be considered by them as subject to the equities between the payees and the maker, according to the law of New York as set forth in the decisions of the court of that state, which had been put in evidence, and not according to the law of Maryland or of this state. To this instruction the plaintiff duly excepted. The evidence shows that the notes were drawn by Fred. A. Dodge in Baltimore, and were sent by him to the defendant in New York for his signature; that the defendant signed them in New York, and returned them to the payees by mail. No particular place of payment is specified in either note. The authorities agree that if no particular place of payment is specified in a note, or if, in other words, it is payable generally, the law of the place where it is made determines, not only its construction, but also the obligation and duty it imposes on the maker. And therefore the maker may avail himself of any equitable defenses given to him by the law of the place where the note is made. Story, Prom. Notes, " 172; 2 Pars. Notes, 318, 338, 358; Stacy v. Baker, 1 Scam. 417; Evans v. Anderson, 78 Ill. 558; Young v. Harris, 14 B. Mon. 447; Allen v. Bratton, 47 Miss. 119. But by the place where the note is made is not meant the place where it is written, signed, or dated, but the place where it is delivered, delivery being essential to its consummation as an obligation. So long as it remains in the possession of the maker, he is under no obligation whatever by reason of it, and it becomes binding upon him only when he has parted with its dominion and control by delivering it to the payee. Freese v. Brownell, 35 N. J. Law, 285; Hopper v. Eiland, 21 Ala. 714; Chamberlain v. Hopps, 8 Vt. 94; Marvin v. McCullum, 20 Johns. 288. The correctness of the instruction complained of depends, therefore, upon whether the notes are to be regarded as having been delivered in New York or Baltimore. We think | If no particular place of payment is specified in a note, the law of the place of contract governs as to the obligation and duty imposed on the maker. | Which law governs a note where no particular place of payment is specified? | 009789.docx | LEGALEASE-00151610-LEGALEASE-00151611 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 13975 | Harris v. Tower Loan of Mississippi, 609 F.2d 120 | 172H+1561 | Nothing in section 1635(b) prevents the creditor from offsetting the value owed to it by the obligor from the sum it initially tenders to the obligor. Such an arrangement prevents a perfunctory exchange of funds and protects the lender from a dissipation of the money while it is in the hands of the obligor. We believe this to be an acceptable course because it is the only means to insure the accomplishment of the congressional purpose of restoring the parties to the status quo ante while affording the statutory remedies to the obligor. | Where a transaction is rescinded under Truth in Lending Act, the creditor is not barred from offsetting the value owed to it by the obligor from the sum it initially tendered to the obligor. Truth in Lending Act, S 125(b), 15 U.S.C.A. S 1635(b). | Can the creditor offset the value owed to it by the obligor from the sum it initially tendered to the obligor? | 013807.docx | LEGALEASE-00155649-LEGALEASE-00155650 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 13976 | Meyers v. City of Jacksonville, 754 So. 2d 198 | 307A+690 | [We begin our review of the trial court's ruling by noting that "[d]ismissal of a complaint with prejudice is a severe sanction which should be granted only when the pleader has failed to state a cause of action, and it conclusively appears that there is no possible way to amend the complaint to state a cause of action."Weaver v. Leon County Classroom Teachers Ass'n, 680 So.2d 478, 481 (Fla. 1st DCA 1996). The function of the City's motion to dismiss was to raise, as a question of law, the sufficiency of the facts alleged to state a cause of action. See Varnes v. Dawkins, 624 So.2d 349 (Fla. 1st DCA 1993). In determining the sufficiency of Appellants' amended complaint, the trial court was required to take as true all material factual allegations therein. See Connolly v. Sebeco, 89 So.2d 482 (Fla.1956). In so doing, the court was required to resolve every reasonable conclusion or inference in favor of Appellants, as the non-moving party. See Weaver, 680 So.2d at 478. | Dismissal of a complaint with prejudice is a severe sanction which should be granted only when the pleader has failed to state a cause of action, and it conclusively appears that there is no possible way to amend the complaint to state a cause of action. | "Is a dismissal for lack of standing without prejudice and thus has no effect on the underlying duties, rights, or obligations of the parties?" | 025132.docx | LEGALEASE-00156981-LEGALEASE-00156982 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 13977 | United States v. Sutcliffe, 505 F.3d 944 | 377E+12(5) | A conviction under " 875(c) requires the specific intent to threaten, United States v. Twine, 853 F.2d 676, 680 (9th Cir.1988), and only true threats may be prohibited, see Virginia v. Black, 538 U.S. 343, 359"60, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). Defendant argues that " 875(c) is void for vagueness because the statute itself neither requires specific intent nor defines true threats. However, rather than making the statute void for vagueness, the narrowing construction provided by the relevant cases actually alleviates possible void-for-vagueness concerns. See Boos v. Barry, 485 U.S. 312, 329"30, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). Furthermore, we are convinced that the statute is not impermissibly vague. An ordinary citizen can understand what is meant by the terms "threat to kidnap" and "threat to injure," and we are persuaded that the statute provides sufficient standards to allow enforcement in a non-arbitrary manner. | A conviction for transmission in interstate commerce of any communication containing threat to injure requires the specific intent to threaten, and only true threats may be prohibited. 18 U.S.C.A. S 875(c). | What does a conviction require for transmission in interstate commerce of a threatening communication? | 046701.docx | LEGALEASE-00157014-LEGALEASE-00157015 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 13978 | Witherell v. Kelly, 195 A.D. 227 | 156+52.15 | The doctrine of estoppel in pais is applicable in law as in equity. Williamsburgh Sav. Bank v. Town of Solon, 136 N. Y. 465"474, 32 N. E. 1058. It is not essential that there should have existed in Shedd the intention to mislead. Continental Nat. Bank v. Nat. Bank of Com., 50 N. Y. at page 583. Equitable estoppel need not rest upon consideration or agreement or legal obligation. Rothschild v. Title Guarantee & Trust Co., 204 N. Y. at 464, 97 N. E. 879, 41 L. R. A. (N. S.) 740. | An equitable estoppel need not rest upon a consideration, agreement, or legal obligation. | "Must an equitable estoppel rest upon a consideration, agreement, or legal obligation?" | 017862.docx | LEGALEASE-00159270-LEGALEASE-00159271 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 13979 | Rohatynsky v. Kalogiannis, 763 So. 2d 1270 | 307A+695 | A claim should not be dismissed with prejudice without giving the plaintiff an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action." " Gladstone, 729 So.2d at 1003 (citing Kairalla v. John D. and Catherine T. MacArthur Found., 534 So.2d 774, 775 (Fla. 4th DCA 1988)). It is also true that leave to amend should be liberally granted and should not be denied unless the privilege has been abused. | A claim should not be dismissed with prejudice for failure to state a claim without giving the plaintiff an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action. | "Can leave to amend be denied where there is prejudice to the opposing party, or an amendment would be futile?" | 040254.docx | LEGALEASE-00160825-LEGALEASE-00160826 | SA, Sub | 0.25 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13980 | Bologna Bros. v. Morrissey, 154 So. 2d 455 | 8.30E+10 | See also Restatement of Conflict of Laws, Sec. 322. The rule is the same for promissory notes. Their legal effect is governed by the law of the country where they were executed and delivered. Kuenzi & Co., v. Elvers, Boje & Co., 14 La.Ann. 391, 74 Am.Dec. 434 (1859); Walsh v. Walsh, La.App., 11 Orl.App. 205 (1914); aff. 137 La. 157, 68 So. 392 (1915); Stevens v. Gaude, 9 La.App. 664, 120 So. 79, 80 (1st Cir. 1928); Restatement of Conflict of Laws, Sec. 336. Accommodation papers are no exception to this rule. It is settled in Louisiana that every endorsement, accommodation or otherwise, is essentially an *460 original contract, equivalent to a new note or bill in favor of the holder and that accommodation paper is governed by the same rules as other paper. Crane v. Trudeau, 19 La.Ann. 307 (1867); James Trabue & Co. v. R. H. Short & Co., 18 La.Ann. 257, 258 (1866); G. F. Connely v. A. Bourg, et al., 16 La.Ann. 108, 109, 79 Am.Dec. 568 (1861). The obligation of an endorser or accommodation party is governed by the lex loci contractus. James Trabue & Co. v. R. H. Short & Co., supra; Duncan v. Sparrow, 3 Rob. 167, 168 (1942). | Legal effect of notes is governed by law of country where they were executed and delivered; this rule applies to accommodation paper. | Is the legal effect of promissory notes governed by the law of the country where they were executed and delivered? | Bills and Notes - Memo 1349 - RK_66252.docx | ROSS-003279885-ROSS-003279886 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 13981 | State v. Green, 896 N.W.2d 770 | 203+530 | B. The Jury Instruction. We have said, " "Malice" ... means that condition of mind which prompts one to do a wrongful act intentionally, without legal justification or excuse." State v. McCollom, 260 Iowa 977, 988, 151 N.W.2d 519, 525 (1967). When an individual acts on that state of mind, the individual is said to have acted with "malice aforethought." See State v. Bentley, 757 N.W.2d 257, 265 (Iowa 2008). In the homicide context, the wrongful act is taking a life, and therefore a person acts with malice aforethought if the person has a state of mind prompting the person to take the life of another intentionally, without legal justification or excuse. Malice aforethought may accompany an unlawful intent to kill, or may simply be an unlawful intent "to do physical harm to another" that results in death. State v. Myers, 653 N.W.2d 574, 579 (Iowa 2002); see also State v. Ceretti, 871 N.W.2d 88, 93"94 & n.4 (Iowa 2015); Malice Aforethought, Black's Law Dictionary (10th ed. 2014). Whether accompanied by a specific intent to kill or simply consisting of the general intent to do physical harm, "[a] person who kills another person with malice aforethought either express or implied commits murder," and not manslaughter. Iowa Code " 707.1 | When an individual acts on state of mind which prompts one to do wrongful act intentionally without legal justification or excuse, the individual is said to have acted with malice aforethought. | What is malice aforethought? | 019393.docx | LEGALEASE-00164054-LEGALEASE-00164055 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 13982 | Moore v. Com., 254 Va. 184 | 352H+259 | "Penetration by a penis of a vagina is an essential element of the crime of rape; proof of penetration, however slight the entry may be, is sufficient." Elam v. Commonwealth, 229 Va. 113, 115, 326 S.E.2d 685, 686 (1985). And, a conviction of rape may be sustained solely upon the victim's testimony. Snyder v. Commonwealth, 220 Va. 792, 796, 263 S.E.2d 55, 57 (1980). Accord Kehinde v. Commonwealth, 1 Va.App. 342, 345, 338 S.E.2d 356, 357 (1986). | Penetration by penis of a vagina is essential element of crime of rape; proof of penetration, however slight the entry may be, is sufficient. | Is slight penetration sufficient to constitute rape? | 043157.docx | LEGALEASE-00164906-LEGALEASE-00164907 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 13983 | Denver Feed Co. v. City of Commerce City, 702 P.2d 285 | 371+2016 | A taxing authority may assess and collect taxes only within the express authority conferred by law. Michigan Trust Co. v. City of Grand Rapids, 262 Mich. 547, 247 N.W. 744, 89 A.L.R. 840 (1933). In particular, a municipality's powers of taxation can be lawfully exercised only in strict conformity to terms by which they are given. Caulfield v. Noble, 178 Conn. 81, 420 A.2d 1160 (1979). | Taxing authority may assess and collect taxes only within the express authority conferred by law. | Should the taxing authority assess and collect taxes only within the express authority conferred by law? | 046584.docx | LEGALEASE-00166613-LEGALEASE-00166614 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 13984 | Haygood v. Head, 305 Ga. App. 375 | 21+12 | As the trial court concluded, however, the Haygoods' pauper's affidavit did not meet the requisites of a valid affidavit. A signed statement of facts, purporting to be the statement of the signer, followed by the certificate of an officer, authorized to administer oaths that it was sworn to and subscribed before him is a lawful affidavit. Further, in the absence of a valid jurat, a writing in the form of an affidavit has no force, no validity, amounts to nothing, when standing alone, or when construed in connection with other evidence. To make a valid affidavit, the affiant must swear to it, and the fact of his swearing must be certified by a proper officer.(Punctuation omitted.) Anderson v. Hardoman, 286 Ga.App. 499, 500(1), 649 S.E.2d 611 (2007), citing D'Zesati v. Poole, 174 Ga.App. 142, 143, 329 S.E.2d 280 (1985). The Haygoods' affidavit of indigence is legally insufficient because, while notarized, it contains no certification that the Haygoods swore under oath to the truth of the facts set forth in the affidavit. | In the absence of a valid jurat, a writing in the form of an affidavit has no force and no validity and amounts to nothing, when standing alone or when construed in connection with other evidence; to make a valid affidavit, the affiant must swear to it, and the fact of his swearing must be certified by a proper officer. | Is verification of an affidavit without effect in the absence of a jurat? | Affidavits - Memo 87 - _1nVtvxE0kpW99kyVBs k5Uq8P-QZB8-R2a.docx | ROSS-000000268-ROSS-000000269 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 13985 | People v. Stout, 193 Colo. 466 | 3.77E+13 | Additionally, in arguing the insufficiency of the evidence, the defendant claims that the testimony shows that Mr. Cram was never actually in fear. Independent of the testimony that Mr. Cram's son was indeed afraid, the conviction is still proper. The statute provides for conviction if the defendant "attempts" to place another in fear, and thus, actual subjective fear on the part of the victim is not a necessary element of this crime. | Actual subjective fear on part of victim is not a necessary element of crime of menacing. C.R.S. '73, 18-3-206. | Is actual subjective fear on the part of the victim a necessary element of the crime of menacing? | Threats - Memo #167- C LB_62768.docx | ROSS-003279453-ROSS-003279454 | Condensed, Order, SA | 0.75 | 1 | 1 | 0 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13986 | Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187 | 307A+681 | Where the court decides the motion only on the documentary evidence, the plaintiff need only demonstrate a prima facie showing of personal jurisdiction to defeat the motion.3 Benton v. Cameco Corp., 375 F.3d 1070, 1074 (10th Cir.2004); Oaklawn, 959 F.2d at 174. A prima facie showing exists where the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant. See Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 1267, 1272 (Colo.2002). Documentary evidence consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the parties. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir.1998); Ten Mile, 810 F.2d at 1524. Similar to the court's role in addressing a motion for summary judgment, a court addressing a 12(b)(2) motion on documentary evidence alone acts as a "data collector" and not a factfinder. Foster"Miller, 46 F.3d at 145; see Leidy's, 811 P.2d at 39. Accordingly, the allegations in the complaint must be accepted as true to the extent they are not contradicted by the defendant's competent evidence, and where the parties' competent evidence presents conflicting facts, these discrepancies must be resolved in the plaintiff's favor. Foster"Miller, 46 F.3d at 145; Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir.1984); Leidy's, 811 P.2d at 40. | "Documentary evidence," which can be considered on a motion to dismiss for lack of personal jurisdiction, consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the parties. | "Does ""documentary evidence"" consist of the allegations in the complaint along with any affidavits and any other evidence submitted by the parties?" | Pretrial Procedure - Memo # 9798 - C - TM_61418.docx | ROSS-003280465-ROSS-003280466 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 13987 | AXA Art Americas Corp. v. Pub. Storage, 208 F. Supp. 3d 820 | 13+27(1) | When "the only loss or damage" that a plaintiff has suffered "is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." S.W. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494"95 (Tex. 1991). "The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex 1986); MEMC Pasadena, Inc. v. Riddle Power, LLC, 472 S.W.3d 379, 397 (Tex. App."Houston [14th Dist.] 2015). | When the only loss or damage that a plaintiff has suffered is to the subject matter of the contract, under Texas law, the plaintiff's action is ordinarily on the contract. | "When the only loss or damage is to the subject matter of the contract, is the plaintiff's action ordinarily on the contract?" | Action - Memo 957 - C - SHB_68582.docx | ROSS-003280677-ROSS-003280678 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 13988 | Myers v. Cohen, 67 Haw. 389 | 307A+693.1 | In the present case, the facts as to what happened to the counterclaim are very different and we cannot agree with the Intermediate Court that the finding can be disregarded on summary judgment. It appears to be a determination on the merits of the counterclaim, since it was the basis for an order awarding attorney fees. Appellant additional contention that plaintiff's case in the civil proceeding was dismissed because the statement of readiness was never prepared, is not supported by anything in this record. Neither court below indicated that it was taking judicial notice of that matter. Moreover, obviously, the dismissal of a claim for want of prosecution does not dispose of a counterclaim, and a counterclaim may be adjudicated on the merits even where a complaint is dismissed. | Dismissal of a claim for want of prosecution does not dispose of a counterclaim, and a counterclaim may be adjudicated on the merits even where a complaint is dismissed. | Does dismissal of a claim for want of prosecution dispose of a counterclaim? | Pretrial Procedure - Memo # 10643 - C - NE_62459.docx | ROSS-003280692-ROSS-003280693 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 13989 | In re Trask, 462 B.R. 268 | 366+1 | The traditional doctrine of equitable subrogation "enables "[o]ne who pays, otherwise than as a volunteer, an obligation for which another is primarily liable," to be "given by equity the protection of any lien or other security for the payment of the debt to the creditor," and to "enforce such security against the principal debtor or collect the obligation from him." " See Chase Manhattan Bank, USA, N.A. v. Taxel (In re Deuel), 594 F.3d 1073, 1079 (9th Cir.2010) (quoting McClintock on Equity 332 (2d ed.1948)). The Supreme Judicial Court of Maine has stated that equitable subrogation is "a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." Nappi v. Nappi Distribs., 691 A.2d 1198 (Me.1997) (quoting United Carolina Bank v. Beesley, 663 A.2d 574, 576 (Me.1995)). It is "a concept derived from principles of restitution and unjust enrichment." Id. (citing North East Ins. Co. v. Concord Gen. Mut. Ins. Co., 433 A.2d 715, 719 (Me.1981)). Under the doctrine, when one, not a volunteer, loans money to another and takes a mortgage to discharge a first mortgage, it may be proper to apply the doctrine and to subrogate the lender to the discharged mortgage. Beesley, 663 A.2d at 576; Federal Land Bank of Springfield v. Smith, 129 Me. 233, 151 A. 420 (1930). The doctrine requires that the equities of the parties be weighed and balanced. Beesley, 663 A.2d at 576. "Subrogation, itself a creature of equity, must be enforced with due regard for the rights, legal or equitable, of others. It should not be invoked so as to work injustice, or defeat a legal right, or to overthrow a superior or perhaps equal equity, or to displace an intervening right or title." Id.; see also Federal Land Bank, 151 A. at 422. | Under Maine law, equitable subrogation is a concept derived from principles of restitution and unjust enrichment. | Is equitable subrogation a concept derived from principles of restitution and unjust enrichment? | Subrogation - Memo 261 - VP C.docx | ROSS-003281724-ROSS-003281725 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 13990 | Bougadis v. Langefeld, 69 Ill. App. 3d 1010 | 228+185.1(1) | The affidavit is to be viewed as a substitute for testimony taken in open court. (Fooden v. Board of Governors (1971), 48 Ill.2d 580, 272 N.E.2d 497, cert. denied (1972), 408 U.S. 943, 92 S.Ct. 2847, 33 L.Ed.2d 766.) Measured against this standard, we find no significant deficiencies in the affidavits offered by the defendants in this case. The affidavits contained assertions which were within the personal knowledge of the respective affiants. The statements were not conclusions, but were facts of the type which would be admissible in evidence. Moreover, an affidavit does not violate Rule 191 because the statements are in narrative form. We, therefore, conclude that the trial court did not err in denying Bougadis' motion to strike | Where affidavits filed in support of defendants' motion for summary judgment contained assertions which were within personal knowledge of respective affiants, and statements which were not conclusions but were facts of type which would be admissible in evidence, there were no significant deficiencies in affidavits, even though statements were in narrative form. Supreme Court Rules, rules 191, 191(a), S.H.A. ch. 110A, SS 191, 191(a). | Can an affidavit be taken in as evidence? | Affidavits - Memo 7-ANG.docx | ROSS-003282243-ROSS-003282244 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13991 | Burns v. Neiman Marcus Grp., 173 Cal. App. 4th 479 | 8.30E+27 | "[A] check is simply an order to the drawee bank to pay the sum stated, signed by the maker and payable on demand." (Barnhill v. Johnson (1992) 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39; see "" 3103, subd. (a)(3); 3104, subd. (f); 3108.) The store "may present the check, but, if the drawee bank refuses to honor it," the store may not receive payment. (Barnhill v. Johnson, supra, 503 U.S. at p. 398, 112 S.Ct. 1386; see " 3409, subd. (a).) And, under the circumstances here, Neiman Marcus's legal recourse would be only against its customer Young, and not plaintiff who was not legally responsible for Young's store credit card charges. | A "check" is simply an order to the drawee bank to pay the sum stated, signed by the maker and payable on demand. West's Ann.Cal.Com.Code S 3103. | Is check merely an order to pay the sum which has been stated? | Bills and Notes - Memo 760 - KC_58511.docx | ROSS-003282863-ROSS-003282864 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 13992 | State v. C.J.F., 183 S.W.3d 841 | 135H+100.1 | A defendant's "valued right to have his trial completed by a particular tribunal" is now within the protection of the constitutional guarantee against double jeopardy, because that right lies at the foundation of the federal rule that jeopardy attaches when the jury is empaneled and sworn. See Crist, 437 U.S. at 36, 98 S.Ct. at 2161. The time when jeopardy attaches in a jury trial "serves as the lynchpin for all double-jeopardy jurisprudence." Crist, 437 U.S. at 38, 98 S.Ct. at 2162. After jeopardy attaches, any charge that is dismissed, waived, abandoned or on which the jury returns an acquittal, may not be retried. Ex parte Scelles, 511 S.W.2d 300, 301 (Tex.Crim.App.1974). | The time when jeopardy attaches in a jury trial serves as the lynchpin for all double jeopardy jurisprudence; after jeopardy attaches, any charge that is dismissed, waived, abandoned or on which the jury returns an acquittal may not be retried. U.S.C.A. Const.Amend. 5. | Does the time when jeopardy attaches in a jury trial serve as the lynchpin for all double jeopardy jurisprudence? | Double Jeopardy - Memo 785 - C - SN_67790.docx | ROSS-003282916-ROSS-003282917 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 13993 | Chicago W. Div. Ry. Co. v. Rend, 6 Ill. App. 243 | 386+4 | Where an injury is inflicted to a plaintiff's right by a willful act of force, it constitutes a trespass. 1 Chit. Pl. 128; Percival v. Hickey, 18 Johns. 257; Wilson v. Smith, 10 Wend. 324; Cadwell v. Farrell, 28 Ill. 438. | Where an injury is inflicted to a plaintiff's right by a willful act of force, it constitutes a trespass. | Does an injury inflicted to a plaintiff's right by a willful act constitute a trespass? | Trespass - Memo 100 - RK.docx | ROSS-003284834-ROSS-003284835 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 13994 | Replay v. Sec'y of Treasury of Puerto Rico, 778 F. Supp. 2d 207 | 92+3936 | The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law ..." U.S. Const. amend. V; see also Gerena v. Puerto Rico Legal Services, 697 F.2d 447, 449 (1st Cir.1983). This amendment applies to actions of the federal government, not those of private individuals, or of state, local or municipal governments. Id. at 449; see also Mart"nez"Rivera v. S"nchez Ramos, 498 F.3d 3, 8 (1st Cir.2007) (affirming dismissal of Plaintiffs' claims under the Fifth Amendment because the police officers were state actors and not federal actors). Because Plaintiffs' complaint does not allege that Defendant is a federal actor; instead they aver that he is a state officials acting under color of state law (see, Docket # 12 " 15), their claims pursuant to the Fifth Amendment fail. | Fifth Amendment applies to actions of the federal government, not those of private individuals, or of state, local or municipal governments. U.S.C.A. Const.Amend. 5. | Does the Fifth Amendment only apply to actions of the federal government? | Eminent Domain - Memo 152 - RK.docx | ROSS-003285489-ROSS-003285490 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 13995 | Oliver v. Coffman, 112 Ind. App. 507 | 302+8(1) | An ultimate fact is the final or resultant fact that has been reached, by the processes of logical reasoning, from the detailed or probative facts. 41 Am.Jur., Pleading, sec. 7, p. 292. A "conclusion of fact" is quite often indistinguishable from an ultimate issuable fact; it is a conclusion of fact reached by reasoning from detailed or probative facts. See Zuniga v. Evans, 87 Utah 198, 48 P.2d 513, 101 A.L.R. 532. | An "ultimate fact" within meaning of rule requiring that such facts be pleaded is the final or resultant fact that has been reached by the processes of logical reasoning from the detailed or probative facts. | Are ultimate facts the final facts reached by the process of logical reasoning? | Pleading - Memo 114 - RMM.docx | ROSS-003286097-ROSS-003286099 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 13996 | United States v. Ballestas, 795 F.3d 138 | 110+97(3) | Here, the extraterritorial reach of the MDLEA's substantive prohibitions is clear. Section 70503(b), entitled "extension beyond territorial jurisdiction," provides that " 70503(a), which sets forth the substantive prohibitions, "applies even though the act is committed outside the territorial jurisdiction of the United States." 46 U.S.C. " 70503(b). That straightforward expression of extraterritorial application settles the extraterritorial reach of " 70503(a). | Maritime Drug Law Enforcement Act (MDLEA) conspiracy provision applied extraterritorially to reach defendant's conduct in Colombia; extraterritorial reach of MDLEA's substantive prohibitions was clear and such application was consistent with Congress's purpose in enacting it, even though its conspiracy prohibition was codified in separate statutory section. 46 U.S.C.A. S 70506(b). | Does the Maritime Drug Law Enforcement Act apply to acts committed outside the territorial jurisdiction of the United States? | Admiralty Law - Memo 30 - JS.docx | ROSS-003289788-ROSS-003289790 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 13997 | Farmer v. State, 341 Ark. 220 | 352H+190 | We are not persuaded by Appellant's attempt to distinguish this case from Warren on the basis that the victim here opined that her attacker was not motivated by a desire for sexual gratification. It is not apparent to us how Carol's opinion testimony weakened the State's circumstantial evidence on this issue. As the prosecutor argued below, it is difficult to know for certain in this day and age what is sexually gratifying to another person. Indeed, short of a confession or physical evidence, sexual gratification, like intent, is rarely capable of proof by direct evidence and must usually be inferred from the circumstances. See, e.g., Gaines v. State, 340 Ark. 99, 8 S.W.3d 547 (2000); Green v. State, 330 Ark. 458, 956 S.W.2d 849 (1997). Thus, Carol was in no better position than the jury to assess Appellant's particular thought processes or motivation. Furthermore, the jury was free to believe or disbelieve any or all of her testimony. See Freeman v. State, 331 Ark. 130, 959 S.W.2d 400 (1998). Likewise, it was within the exclusive province of the jury to determine the weight and value of her testimony. Williams v. State, 338 Ark. 178, 992 S.W.2d 89 (1999). Accordingly, viewing the evidence in the light most favorable to the State, as we are required to do, we conclude that there is substantial evidence to support Appellant's rape conviction. See Jones v. State, 340 Ark. 390, 10 S.W.3d 449 (2000). | Sexual gratification, like intent, is rarely capable of proof by direct evidence and must usually be inferred from the circumstances. A.C.A. SS 5 14-101(1)(B), 5-14-103. | Can sexual gratification be inferred from the circumstances? | Sex Offence - Memo 58 - SB.docx | ROSS-003291806-ROSS-003291807 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 13998 | Owens v. Trammell, 792 F.3d 1234 | 135H+1 | The Double Jeopardy Clause prevents the government from placing a defendant in jeopardy twice for the same offense. Although most commonly thought of as a bar to successive prosecutions and multiple punishments for the same offense, the Supreme Court has held that the Clause also "incorporates the doctrine of collateral estoppel in criminal proceedings." Schiro v. Farley, 510 U.S. 222, 232, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994) (citing Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)). Just as in the civil context, collateral estoppel means "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe, 397 U.S. at 443, 90 S.Ct. 1189. A jury's acquittal, for example, "unquestionably terminate[s] ... jeopardy with respect to the issues finally decided in those counts" in a second trial on a separate offense. Yeager v. United States, 557 U.S. 110, 118, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009). It is the defendant's burden to show that the jury's verdict "necessarily decided" the issue he seeks to foreclose from relitigation and that the same issue is essential to the subsequent proceeding. See id. at 119, 129 S.Ct. 2360; see also Dowling v. United States, 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). | The Double Jeopardy Clause prevents the government from placing a defendant in jeopardy twice for the same offense. U.S.C.A. Const.Amend. 5. | Does double jeopardy prevent the government from placing a defendant in jeopardy twice for the same offense? | Double Jeopardy - Memo 650 - C - PC_68427.docx | ROSS-003292403-ROSS-003292404 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 13999 | Eeastern. Acceptance Corp. v. Kavlick, 10 N.J. Super. 253 | 83E+430 | It is well recognized that an endorsement "without recourse" is not restrictive under section 36 of the Uniform Negotiable Instruments Act (R.S. 7:2-36, N.J.S.A.) but is a qualified endorsement which, under section 38 (R.S. 7:2-38, N.J.S.A.), does not impair the negotiable character of the instrument. 5 U.L.A. (Part 1) p. 478 (1943). It purpose is simply to exempt the endorser from liability for payment of the instrument in the event it is dishonored at maturity and its presence does not indicate that the endorser's title may be defective. Packard v. Woodruff, 57 Pa.Super. 176 (1914); Standard Acceptance Corporation v. Chapin, 277 Mass. 278, 178 N.E. 538 (1931); Worth Saving Bank v. Foster, 175 Minn. 293, 221 N.W. 12 (1928); Lincoln Inv. Co. v. Metros, 257 Mich. 215, 241 N.W. 166 (1932); Exchange Bank v. Scholz, 49 Cal.App.2d 232, 121 P.2d 526 (1942). In the Packard case Judge Kephart, in rejecting the contention that the use of the words "without recourse" puts subsequent holders on inquiry as to defenses existing between prior parties, expressed the view that "the purpose of the Negotiable Instruments Act, as it relates to an indorsement of this character placed upon an instrument, was to make the instrument as freely negotiable as it would have been had the indorsement been placed thereon without qualification". | Endorsement "without recourse" is not restrictive endorsement but is qualified endorsement which does not impair negotiable character of instrument, and since its purpose is simply to exempt endorser from liability for payment of instrument in event it is dishonored at maturity, its presence does not indicate that endorser's title may be defective. R.S. 7:2-36, 38; R.S. 7:2-36, 38, N.J.S.A. | Is an endorsement without recourse a restrictive endorsement or a qualified endorsement? | Bills and Notes - Memo 21 - KC_63606.docx | ROSS-003295906-ROSS-003295907 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 14000 | QVC v. Resultly, 159 F. Supp. 3d 576 | 386+6 | The elements of trespass to chattels and conversion"both intentional torts"are essentially the same. "The difference is that conversion entails a more serious deprivation of the owner's rights such that an award of the full value of the property is appropriate." Creative Dimensions in Mgmt., Inc. v. Thomas Grp., Inc., No. 96"6318, 1999 WL 225887, at (E.D.Pa. Apr. 16, 1999) (citing Restatement (Second) of Torts " 217 (trespass to chattels requires intentional dispossession or use or intermeddling with a chattel of another)); " 222 (the actor is subject to liability for conversion where the dispossession "seriously interferes with the right of the other")). Conversion is defined under Pennsylvania law as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F.Supp.2d 513, 529 (E.D.Pa.2012) (quoting Francis J. Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 879 (Pa.Super.Ct.1997)). Although Pennsylvania law does not require specific intent to commit a wrong, "the exercise of control of the chattel must be intentional." L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc., 777 A.2d 1090, 1095 (Pa.Super.2001); see also Montgomery v. Fed. Ins. Co., 836 F.Supp. 292, 300 (E.D.Pa.1993) (conversion requires facts that showing "intent to assert dominion or control over the chattel that is inconsistent with the owner's right"). The tort of trespass to chattels is governed by the Restatement (Second) of Torts " 217, which provides: "A trespass to a chattel may be committed by intentionally: (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Pestco, Inc. v. Associated Prods., Inc., 880 A.2d 700, 708 (Pa.Super.2005). | Under Pennsylvania law, a trespass to a chattel may be committed by intentionally: (1) dispossessing another of the chattel, or (2) using or intermeddling with a chattel in the possession of another. Restatement (Second) of Torts S 217. | What are the elements to the tort of trespass to chattel? | Trespass - Memo 120 - RK.docx | ROSS-003297648-ROSS-003297649 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14001 | Stern v. Cosby, 645 F. Supp. 2d 258 | 237+51(5) | The only evidence Stern adduces that Hachette acted with actual malice is that Hachette did not investigate the reliability of Cosby's sources or the accuracy of her claims. Hachette does not dispute that it did not independently fact-check anything in the Book. (Einhorn Aff. 5). The law is clear, however, that a book publisher has no independent duty to investigate an author's story unless the publisher has actual, subjective doubts as to the accuracy of the story. See Lohrenz v. Donnelly, 350 F.3d 1272, 1284 (D.C.Cir.2003); Hotchner v. Castillo"Puche, 551 F.2d 910, 914 (2d Cir.1977) (holding that publisher's "failure to conduct an elaborate independent investigation did not constitute reckless disregard for truth"). The First Circuit explained the reason for this rule as follows:To require a book publisher to check, as a matter of course, every potentially defamatory reference might raise the price of non-fiction works beyond the resources of the average man. This result would, we think, produce just such a chilling effect on the free flow of ideas as First Amendment jurisprudence has sought to avoid. Geiger v. Dell Pub. Co., 719 F.2d 515, 518 (1st Cir.1983). A book publisher is permitted to rely on an author's reputation and experience without having to independently fact-check a book. See McManus v. Doubleday & Co., 513 F.Supp. 1383, 1389"90 (S.D.N.Y.1981) (denying summary judgment as to author but granting as to publisher because publisher was "entitled as a matter of law to rely on [author's] proven reportorial ability"). | In deciding whether a story was published with actual malice, a book publisher has no independent duty to investigate an author's story unless the publisher has actual, subjective doubts as to the accuracy of the story. | Does a publisher have a duty to investigate the accuracy of reports or stories? | Libel and Slander - Memo 154 - RK.docx | ROSS-003298186-ROSS-003298188 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 14002 | Hyosung Am. v. Sumagh Textile Co., 934 F. Supp. 570 | 308+8 | An agency relationship is typically established by "written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Itel Containers Int'l Corp. v. Atlanttrafik Express Service Ltd., 909 F.2d 698, 702 (2d Cir.1990) (quoting Restatement (Second) of Agency " 26 (1958)). The elements of an agency relationship are: (1) "a manifestation by the principal that the agent shall act for him," (2) "accept [ance of] the undertaking" by the agent, and (3) "an understanding between the parties that the principal is to be in control of the undertaking." In re Rubin Bros. Footwear, Inc., 119 B.R. 416, 422 (S.D.N.Y.1990). Of these, the critical element is control of the agent by the principal. In re Shulman Transp. Enterprises, Inc., 744 F.2d 293, 295 (2d Cir.1984). | Under New York law, elements of agency relationship are manifestation by principal that agent shall act for him, acceptance of undertaking by agent, and understanding between parties that principal is to be in control of undertaking; of these, critical element is control of agent by principal. | What are the elements required to form an agency relationship? | Principal and Agent - Memo 7 - RK.docx | ROSS-003298826-ROSS-003298827 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 14003 | In re Trans World Airlines, 261 B.R. 103 | 13+61 | Second, TWA's attempted rejection of the Ticket Agreement is a post-confirmation act. Karabu therefore cannot rely on the res judicata effect of the 1995 Confirmation Order because Karabu had no claim under the Ticket Agreement that it could have brought during the TWA II confirmation proceedings, i.e., Karabu's present claim is not based on a cause of action it could have brought in TWA II because Karabu's present cause of action did not exist in 1995. Accord Mahan, 225 F.3d at 337 ("Claim preclusion only bars claims arising from the same cause of action previously raised, not every conceivable claim that could have been brought in the context of a bankruptcy case"); Huls, 176 F.3d at 205 (a claim which arises from and after confirmation is not barred by the event of confirmation). "A cause of action accrues only when one has the right to institute suit." Bernstein v. Donaldson (In re Insulfoams, Inc.), 184 B.R. 694, 705 (Bankr.W.D.Pa.1995) (citations omitted) aff'd sub nom Donaldson v. Bernstein, 104 F.3d 547 (3d. Cir.1997). Generally, "one has the right to institute a suit when a wrong has been done, a duty has been breached, or an injury has been inflicted." In re Insulfoams, Inc., 184 B.R. at 705 (citations omitted). | Generally, one has right to institute suit, so that cause of action will have accrued, when a wrong has been done, a duty has been breached, or an injury has been inflicted. | What is the right to institute suit? | Action - Memo # 148 - CCS.docx | ROSS-003299216-ROSS-003299217 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 14004 | Kenney v. Rockingham Sch. Dist., 123 Vt. 344 | 413+1 | Since the decision in Caswell's case, 'court after court has adopted this test, and early errors have been erased.' Samuel B. Horovitz, Workmen's Compensation: Half Century of Judicial Developments, Nebraska Law Review, Vol. 41 at page 17. By the test of Caswell's case, we are looking at the employee's employment through a wide-angle lens and not with the restricted focus used in earlier cases. It was in this manner that the employee's activities were examined in this case, and with that in mind, the opinion set forth the substance of the rule in Caswell's case, as the proper criterion to be applied. No doubt a proper understanding of the cases cited is rendered more difficult if they are approached fromastrictly static point of view. [(However, in Rae v. Green Mountain Boys Camp, 122 Vt. 437, 441, 175 A.2d 800, we made it clear that this jurisdiction does not stand outside all development in workmen's compensation law, and that, when justifiable, its concepts are not to be denied development and expansion. | Vermont does not stand outside all development in workmen's compensation law and, when, justifiable, its concepts are not to be denied development and expansion. | "When justifiable, should the concepts of a state's workmen's compensation statute be denied development and expansion?" | Workers Compensation - Memo #190 ANC.docx | ROSS-003302065-ROSS-003302066 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 14005 | Roby v. Day, 635 P.2d 611 | 289+558 | Or, as is expressed in Cook v. Lauten, 335 Ill_App. 92, 80 N.E.2d 280, 282, "each partner is possessed of a joint interest in the whole but does not own any separate part of the partnership property." Our own court has characterized a partner's rights in a partnership as being an intangible property right, a chose in action-a right to receive money shown to be due on liquidation and accounting. And we have held that: "The property of a partnership belongs to the firm, and not to the partners, each of whom is entitled only to a share of what may remain after payment of the partnership debts, and after a settlement of the accounts between the partners," under the law prior to the adoption of the Oklahoma Uniform Partnership Act. Thus, the partner-owner is deprived of all power to separate disposition of partnership property. State v. Elsbury cited and relied on by plaintiff appears to be fully in accord with the views herein expressed. | Each partner is possessed of a joint interest in the whole but does not own any separate part of the partnership property; partner's rights in a partnership is an intangible property right, a chose in action, and a right to receive money shown to be due on liquidation and accounting. | Is a partner's right in partnership property an intangible one? | Partnership - Memo 271 - RK.docx | ROSS-003302865-ROSS-003302866 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14006 | In re Crown Castle Int'l Corp., 247 S.W.3d 349 | 307A+36.1 | Delaware courts hold the heightened pleading requirement for derivative suits is substantive, not simply a technical rule of pleading. Haber v. Bell, 465 A.2d 353, 357 (Del.Ch.1983); see also Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) ("In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of "substance," not "procedure." ") (emphasis added). Moreover, under this substantive rule, "derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility." Beam v. Stewart, 845 A.2d 1040, 1056 (Del.2004); see also Stotland v. GAF Corp., Civ. A. No. 6876, 1983 WL 21371, at (Del.Ch. Sept.1, 1983) ("The Plaintiffs are not entitled to take discovery in order to prove allegations of futility."). In light of well-settled Delaware law, the shareholders may not seek discovery from Crown Castle for the purpose of satisfying Delaware's heightened pleading requirement in derivative proceedings.14 Therefore, we conclude the trial court abused its discretion in ordering Crown Castle to respond to discovery before the shareholders have met Delaware's heightened pleading requirement for demand futility. | Under Delaware law, derivative plaintiffs are not entitled to discovery in order to demonstrate presuit demand futility. | Are derivative plaintiffs not entitled to discovery in order to demonstrate presuit demand futility? | Pretrial Procedure - Memo # 4602 - C - KG.docx | ROSS-003303588-ROSS-003303589 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 14007 | Landry v. Istre, 510 So. 2d 1310 | 322H+1276 | We first note that under Civil Code article 2667 "[a]ll the other provisions relative to the contract of sale apply to the contract of exchange." Therefore, the Civil Code articles relative to redhibitory sales are applicable to contracts of exchange. | Civil Code articles relative to redhibitory sales are applicable to contracts of exchange. LSA-C.C. art. 2667. | "Do all the Civil Code provisions relative to the contract of sale, that includes redhibitory sales, apply to the contract of exchange?" | Exchange of Property - Memo 27 - DB_64041.docx | ROSS-003308045-ROSS-003308046 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |
| 14008 | In re Frankum, 399 B.R. 498 | 366+1 | "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." Dan B. Dobbs, Law of Remedies " 4.3 at 404 (2d ed.1993). The right to assert those rights is not automatic and courts must look to the particular facts and circumstances of a case to determine if subrogation is appropriate. In re Co"Build Companies, Inc. 21 B.R. 635, 636 (Bankr.E.D.Pa.1982). Subrogation may arise in two different contexts: (1) when a person who is not liable for a debt pays a creditor and seeks reimbursement from the debtor for the monies paid to that creditor; or (2) when a person is liable for the debt as a codebtor, surety or guarantor, and seeks reimbursement of the debt he has paid. See 3 Collier on Bankruptcy " 54.02 (Matthew Bender 15th Ed. Rev.). | Right to assert subrogation rights is not automatic, and court must look to the particular facts and circumstances of a case to determine if subrogation is appropriate. | Is the right to assert subrogation rights automatic? | Subrogation - Memo 327 - RM C.docx | ROSS-003311492-ROSS-003311493 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 14009 | Colonial Sur. Co. v. United States, 108 Fed. Cl. 622 | 366+1 | "A surety bond creates a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee (here, the government)." Ins. Co. of the West v. United States (ICW ), 243 F.3d 1367, 1370 (Fed.Cir.2001). "Surety bonds are integral to the government contracting process, for through the surety system the government enters into arrangements with reduced risk, by drawing on the responsibility and resources of the surety," Nat'l Sur. Corp. v. United States, 118 F.3d 1542, 1547 (Fed.Cir.1997). A surety that wishes to assert a claim against the government as obligee may do so under the doctrine of equitable subrogation. Balboa Ins. Co. v. United States (Balboa), 775 F.2d 1158, 1160"61 (Fed.Cir.1985). Equitable subrogation "is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136 n.12, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962) (internal quotation marks omitted); see Nat'l Sur. Corp., 118 F.3d at 1546 ("The subrogation right is equitable, in origin and in implementation and is established when the surety bonds are given." (internal citation omitted)). | "Equitable subrogation" is a creature of equity, is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties. | What is equitable subrogation? | Subrogation - Memo 115 - VP C.docx | ROSS-003312609-ROSS-003312610 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14010 | St. Bernard Trappers' Ass'n v. Michel, 162 La. 366 | 307A+501 | It is elementary that the real and only interested plaintiff in a suit has control of it and has the right to discontinue the suit at any time, even after issue is joined by answer, except where there is a reconventional demand on the part of the defendant or where the rights of such defendant will be greatly prejudiced by such dismissal. C. P. art. 491. | Plaintiff may discontinue suit at any time, unless there is reconventional demand or prejudice to defendant's rights. Code Prac. art. 491. | "Can a plaintiff discontinue a suit at any time, unless there is a re-conventional demand or prejudice to a defendant's rights?" | Pretrial Procedure - Memo # 1657 - C - KG.docx | ROSS-003314091-ROSS-003314092 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 14011 | Fireman's Fund Ins. Co. v. Wagner Fur, 760 F. Supp. 1101 | 50+16 | The requisite interference with an owner's right of control will readily be found where bailed property is misdelivered. Any unauthorized delivery of bailed property by a bailee"even delivery to the wrong person resulting from the bailee's good faith mistake"constitutes a conversion. Id., " 234 & Comment a. Thus, in Jacobson v. Richards & Hassen Enterprises, Inc., 172 F.2d 464, 466 (2d Cir.1949), the Second Circuit, applying New York law, held the operator of a coat-check in a hotel restaurant liable for conversion of a fur coat where the defendant's employee turned the coat over to an imposter posing as its owner. See also Wabco Trade Co. v. S.S. Inger Skou, 482 F.Supp. 444, 448 (S.D.N.Y.1979) ("The absence of benefit to [the defendant-bailee] does not preclude liability. An action for conversion may be based on transferring possession of the owner's property to one not authorized to receive it. In particular, a bailee who transfers goods in a manner inconsistent with an owner's instructions is liable for conversion to his bailor. [Citations omitted]"); David Crystal, Inc. v. Cunard Steam-ship Co., 223 F.Supp. 273, 284"87 (S.D.N.Y.1963) (reviewing New York cases standing for the proposition that bailees are " "not only liable for losses occasioned by their negligence, but for those which arise from innocent mistakes in the delivery of goods to persons not entitled to receive them." [Bank of Oswego v. Doyle, 91 N.Y. 32, 42 (1883) ]"). | Any unauthorized delivery of bailed property by bailee, even delivery to wrong person resulting from bailee's good-faith mistake, constitutes "conversion." | Does the unauthorized delivery of property by the bailee to the wrong person constitute conversion? | Bailment - Memo 49 - RK.docx | ROSS-003315987-ROSS-003315989 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14012 | In re Karp, 373 B.R. 837 | 366+1 | Under Illinois case law, there are two types of subrogation: conventional subrogation, which is based upon an express or implied agreement, and legal subrogation which arises by operation of law. In re Pearce, 236 B.R. 261, 264"65 (Bankr.S.D.Ill.1999). To assert a right of subrogation, a potential subrogee is required to satisfy the following requirements: (1) the debt or claim must have been paid in full; (2) the subrogee must have paid a debt for which a third party and not the subrogee is primarily liable; (3) the subrogor must possess a right which he could enforce against a third party; and (4) the subrogee must not have acted as a mere volunteer in paying the debt or claim. Id. (citing American Nat'l Bank v. Weyerhaeuser, 692 F.2d 455, 460 (7th Cir.1982)). "Conventional subrogation differs from legal subrogation in that the parties' agreement takes away the character of a mere "volunteer," fulfilling that requirement for subrogation." Id. (citations omitted). | Under Illinois law, there are two types of subrogation: "conventional subrogation," which is based on express or implied agreement, and "legal subrogation," which arises by operation of law. | What are the two types of subrogation based upon? | Subrogation - Memo # 543 - C - SU.docx | ROSS-003324448-ROSS-003324450 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14013 | Washington Mut. Bank v. Chiappetta, 584 F. Supp. 2d 961 | 366+1 | Equitable subrogation exists to alleviate inequities due to fraud and mistake and WaMu claims mistake in the title search. See Canton Morris Plan Bank v. Most, 44 Ohio App. 180, 184, 184 N.E. 765, 766 (1932) ("equity in the granting of relief by subrogation is largely concerned with and rests its interference, when called upon, on the prevention of frauds and relief against mistakes"). However, Jones, is not on point here since there was no mistake in the title search. Jones explained the doctrine of equitable subrogation in the context of an intervening judgment lien filed between the execution of the refinanced mortgage and filing of this mortgage 3 months later. See Jones, 61 Ohio St.2d at 99"100, 399 N.E.2d at 1216. Under those circumstances the state supreme court had no difficulty finding the mortgagee at fault and not entitled to equitable subrogation. Those circumstances did not occur in the matter at hand, so this court is left to decide the issues of control and notice without specific guidance from the state supreme court. | Equitable subrogation exists under Ohio law to alleviate inequities due to fraud and mistake. | Does equitable subrogation exist to alleviate inequities due to fraud and mistake? | Subrogation - Memo 547 - C - SA.docx | ROSS-003324968-ROSS-003324969 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14014 | East Lake Creek Ranch, LLP v. Brotman, 998 P.2d 46 | 315+609 | A longstanding test for determining whether a transaction constitutes a sale or exchange is whether there is a fixed value at which the exchange is to be made; if there is a fixed value, it is a sale. See Fain Land & Cattle Co. v. Hassell, 163 Ariz. 587, 790 P.2d 242 (1990); see also Gill v. Eagleton, 108 Neb. 179, 187 N.W. 871 (1922) (if the bargain is made and the value of the land parted with is measured in money terms and the land is paid for in money or in something the parties agree to treat as having a fixed and definite value in money, the transaction is a sale). | One test for determining whether a transaction constitutes a "sale" or instead an "exchange" is whether there is a fixed value at which the exchange is to be made; if there is a fixed value, it is a sale. | What test determines whether a transaction constitutes a sale or an exchange of property? | Exchange of Property - Memo 1 - RK.docx | ROSS-003326557-ROSS-003326558 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 14015 | Howard v. Ferrellgas Partners, 748 F.3d 975 | 25T+112 | Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated. While Congress has chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a "fundamental principle" that "arbitration is a matter of contract," not something to be foisted on the parties at all costs. AT & T Mobility LLC v. Concepcion, """ U.S. """", 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011). | While the Federal Arbitration Act (FAA) favors arbitration, before the FAA's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated. 9 U.S.C.A. S 1 et seq. | Does Federal Arbitration Act (FAA) favor arbitration? | Alternative Dispute Resolution - Memo 84 - AKA.docx | ROSS-003326588-ROSS-003326589 | SA, Sub | 0.62 | 0 | 0 | 1 | 1 | |
| 14016 | Hooks v. Fourth Court of Appeals, 808 S.W.2d 56 | 307A+501 | It is true that in the ordinary case, absent special statutory provisions, a plaintiff has an absolute right to take a non suit. In the absence of a claim by a defendant for affirmative relief, a trial judge's refusal to grant the non suit violates a ministerial duty and should be corrected by mandamus. Greenberg v. Brookshire, 640 S.W.2d 870, 871 (Tex.1982). But that rule does not apply to this case. | In ordinary case, absent special statutory provisions, plaintiff has absolute right to take nonsuit. | "In ordinary case, does the plaintiff have an absolute right to take a non suit?" | Pretrial Procedure - Memo # 962 - C - TJ.docx | ROSS-003330729-ROSS-003330730 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 14017 | Phillips Home Builders v. Travelers Ins. Co., 700 A.2d 127 | 217+1832(1) | The Superior Court correctly articulated the legal principles governing the interpretation of the Travelers policy. In short, if the relevant contract language is clear and unambiguous, courts must give the language its plain meaning. If there is an ambiguity, however, the contract language is "construed most strongly against the insurance company that drafted it." Thus, a frequently dispositive issue is whether the language is ambiguous. The settled test for ambiguity is whether "the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." The trial court noted that the Travelers' policy language is "circuitous and to a degree, ambiguous;" and that, "[Travelers'] effort to provide an insured ... with understandable language fell somewhat short of the mark...." Nonetheless, the Superior Court concluded that Phillips' contract interpretation would largely nullify the exclusion and that, as a result, the only reasonable interpretation was the one offered by Travelers | If relevant insurance contract language is clear and unambiguous, it must be given its plain meaning; however, if there is ambiguity, contract language must be construed most strongly against insurer that drafted it. | When is an insurance policy ambiguous? | 000181.docx | LEGALEASE-00115664-LEGALEASE-00115665 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 14018 | State ex rel. Murphy v. Aronson, 330 S.W.2d 140 | 277+9 | The purpose of the law in requiring notice is that the party notified has an opportunity to be heard, therefore, the notice required should be given in such time as to permit an opportunity to be heard. Respondent in his affidavit stated that he told the attorney for relator that he "was calling him then while I still had a full day before my departure to explain that I thought the proper administration of justice required me to set aside the decree * * *." This was the equivalent of a full day's notice, which we think was a reasonable notice. Reasonable notice is one that provides an "Opportunity for a litigant to present his views as to the matters instantly before the court which may affect his rights * * *." Hoppe, Inc. v. St. Louis Public Service Co., 235 S.W.2d loc. cit. 350. In the case of Sterling Manufacturing Co. v. Hough, 49 Neb. 618, 68 N.W. 1019, loc. cit. 1020, it was said: "A reasonable time is such that the party notified will have ample time to prepare himself, and be able to be present at the time and place of hearing." | "Reasonable notice" is one that provides an opportunity for a litigant to present his views as to matters instantly before the court which may affect his rights. | What is a reasonable notice under the law? | 000274.docx | LEGALEASE-00115565-LEGALEASE-00115566 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14019 | SCAC Transp. (USA) Inc. v. S.S. Danaos, 578 F. Supp. 327 | 25T+111 | This court is reluctant to bind Universal to the findings of the London arbitrators. Although given an opportunity to join in that proceeding, Universal did not participate in it. One consideration in determining whether a party should be estopped from litigating an issue determined in a prior action is whether the subsequent action affords the party to be estopped procedural opportunities unavailable in the first action that could readily cause a different result. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 323, 331"32, 99 S.Ct. 645, 647, 651"52, 58 L.Ed.2d 552 (1979). Arbitration permits a relatively prompt and inexpensive resolution of contractual disputes by avoiding time-consuming court procedures and is subject to limited review. See Sperry International Trade, Inc. v. Israel, 532 F.Supp. 901, 905 (S.D.N.Y.1982), affirmed, 689 F.2d 301 (2d Cir.1982). Parties are bound by the results of these proceedings because they have agreed to resolve their disputes in an arbitral, rather than judicial, forum. See United States Steel Workers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); Coudert v. Paine Webber, 705 F.2d 78, 81 (2d Cir.1983). By consenting to arbitration a party relinquishes certain rights and safeguards provided by the judicial system. See Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier, 508 F.2d 969, 975 (2d Cir.1974).If a party does not consent to arbitration, however, it retains these rights and should not be bound by an arbitration award. | By consenting to arbitration a party relinquishes certain rights and safeguards provided by judicial system; if a party does not consent to arbitration, however, it retains these rights and should not be bound by an arbitration award. | What is the consequence of consenting to arbitration? | 000075.docx | LEGALEASE-00115403-LEGALEASE-00115404 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14020 | N. Am. Van Lines v. Lexington Ins. Co., 678 So. 2d 1325 | 217+3419 | III. Bad Faith as a Contract ActionWhen we consider bad faith as a breach of the contractual duty of good faith, the case and its resolution becomes clearer, as the allegations that the insurer breached its duty of good faith or breached other express contractual duties are just two sides of the same coin. In Florida, a bad faith claim is an action ex contractu. Nationwide Mut. Ins. Co. v. McNulty, 229 So.2d 585 (Fla.1969). The supreme court quoted with approval from the district court opinion, McNulty v. Nationwide Mut. Ins. Co., 221 So.2d 208 (Fla. 3d DCA 1969) The contractual duty of the insured [sic] to defend justifies an implication that the insurer will exercise ordinary care and good faith in so proceeding. Accordingly, when an insurer under such a policy contract undertakes to defend an action against the insured and becomes involved in negotiations for settlement, the law imposes the duty that it act therein in good faith. It follows that the cause of action for an "excess," where one arises from bad faith, is bottomed on the contract, and that the nature of an action thereon is ex contractu rather than in tort.229 So.2d at 586. Thus, when bad faith in negotiating a settlement is alleged, the cause is one for breach of a contractual obligation implied in law, namely good faith. This obligation of good faith is implied in the contract because the insurer has taken over the entire defense of the matter and, in most contracts, the insured is prohibited from interfering in any manner with the litigation and settlement. As such, the insurer must exercise reasonable diligence in that regard. Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, 825-30, 184 So. 852, 857-58 (1938). This same rationale was applied in Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla.1980):For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the | While concept of bad faith arose in connection with liability policies, good faith obligation is implied in all insurance contracts. | Are insurance contracts considered as contract of good faith? | Insurance - Memo 13 VP.docx | LEGALEASE-00000545-LEGALEASE-00000547 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 14021 | In re MacDonald, 326 B.R. 6 | 51+2556 | This Court finds that the Trustee's arguments are compelling. The non-assignability of a personal injury action in Massachusetts does not equate to an exemption. The prohibition against the assignment of a personal injury claim promulgated in General Exchange does not affect or limit the Trustee's rights to the Claim which arises by virtue of 11 U.S.C. " 541. Section 541 effectuates a transfer of assets from a debtor to the estate by operation of law rather than by assignment. The kind of voluntary assignment at issue in General Exchange is simply not present in the bankruptcy context. | Prohibition against assignment of personal injury claims under Massachusetts common law did not affect or limit Chapter 7 trustee's rights to debtor's prepetition personal injury claim, which arose by operation of law, pursuant to bankruptcy statute defining "property of the estate," rather than by assignment. Bankr.Code, 11 U.S.C.A. S 541(a). | Does the law prohibit assignment of personal injury claims? | Assignments - Memo 11 JS.docx | ROSS-003284492-ROSS-003284493 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 14022 | Reedy v. Bussell, 148 Cal. App. 4th 1272 | 30+4173 | And this brings us to the second major flaw in Letantia and Todd's inadequate notice argument. In order to obtain a reversal based upon such a procedural flaw, the appellant must demonstrate not only that the notice was defective, but that he or she was prejudiced. (Israni v. Superior Court (2001) 88 Cal.App.4th 621, 106 Cal.Rptr.2d 48; Cordova v. Vons Grocery Co. (1987) 196 Cal.App.3d 1526, 242 Cal.Rptr. 605; Code Civ. Proc., " 475.) As explained in Lever v. Garoogian (1974) 41 Cal.App.3d 37, 40, 115 Cal.Rptr. 856, "Procedural defects which do not affect the substantial rights of the parties do not constitute reversible error. (Code Civ. Proc., " 475.)" | In order to obtain a reversal based upon such a procedural flaw in the notice for a motion, the appellant must demonstrate not only that the notice was defective, but that he or she was prejudiced. | What should a party demonstrate to claim insufficient or defective notice? | 003849.docx | LEGALEASE-00115789-LEGALEASE-00115790 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 14023 | In re Estate of Starkel, 134 Wash. App. 364 | 409+302(1) | We further note that our holding here is consistent with our holding in Johnson v. Dep't of Licensing, 71 Wash.App. 326, 858 P.2d 1112 (1993), that RCW 9A.72.085 applied in license revocation proceedings that required a "sworn report." We reasoned:That statute provides that an unsworn statement "certified or declared by the person to be true under penalty of perjury" may be substituted for a sworn statement whenever a sworn written statement is required or permitted by law to evidence or prove a matter in an official proceeding. The statute provides a form, and Yacklin's certification was in that form. | Statute providing that whenever any matter in official proceeding is required to be proved by affidavit, matter may with like force and effect be proved by unsworn written statement that meets certain criteria applied in will contest to give "like force and effect" to will witnesses' self-proving affidavit, which complied with that statute's express requirements, in lieu of notarized affidavit otherwise required under statute prescribing formal requirements for valid will; witnesses' attestation became relevant when will's validity was challenged, thereby subjecting will to probate, which clearly was official judicial proceeding. West's RCWA 9A.72.085, 11.12.020(2). | Are unsworn statements signed under the penalty of perjury permitted in lieu of affidavits? | 07320.docx | LEGALEASE-00077599-LEGALEASE-00077600 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14024 | Rodriquez v. Texas Farmers Ins. Co., 903 S.W.2d 499 | 30+204(4) | The Rodriquezes and the Ortegas are correct that Farmers's objections to the trial court as to the form of Judge's affidavit do not comport with its appellate complaint as to the substance of the affidavits. Nevertheless, when the appellate complaint relates to the substance of the affidavit, it is not necessary that the objection was pointed out to the trial court, because there is no requirement of an opportunity to amend upon such a complaint. Bell v. Moores, 832 S.W.2d 749, 756 (Tex.App."Houston [14th Dist.] 1992, writ denied). Failure to attach copies of the documents was a substantive defect which may be raised for the first time on appeal. Ceballos v. El Paso Health Care Systems, 881 S.W.2d 439, 444"45 (Tex.App."El Paso 1994, writ denied). | When appellate complaint relates to substance of affidavit, it is not necessary that objection be pointed out to trial court, because there is no requirement of opportunity to amend such a complaint. | Will defects of substance in affidavits be allowed to be amended? | Affidavits - Memo 14 - MS.docx | ROSS-003301197-ROSS-003301198 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 14025 | City of Atchison v. Bartholow, 4 Kan. 124 | 21+1 | Section 343 of the Code defines an affidavit to be a declaration under oath, made without notice to the adverse party. By the next section, a deposition is said to be a declaration under oath, made upon notice to the adverse party. Each is a declaration under oath, the only difference being, one is made without notice, and the other upon notice.Now it would not be pretended that it would be admissible testimony, if, in a deposition, a witness should say that a certain statement was, "according to the best of his knowledge, information and belief, true in substance and in fact." And for very obvious reasons, too. He might have no knowledge of, or information upon the subject, except a mere hearsay, and yet could conscientiously make such a declaration. He might be thoroughly convinced, by irresponsible publications, of the existence of a certain state of facts; yet no modern rule of evidence would permit him to state such belief as testimony. So, in the case at bar, the affiants might conscientiously make the declaration they did make without being personally cognizant of a single fact stated in the petition. | Code, S 343, defines an "affidavit" to be a declaration under oath made without notice to the adverse party, but the next section declares a deposition to be a declaration under oath made on notice to the adverse party. | What distinguishes affidavit from deposition? | 06066.docx | LEGALEASE-00077680-LEGALEASE-00077681 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14026 | State v. Quartier, 114 Or. 657 | 307A+61 | The crux of the contention, made on behalf of defendant, is that the evidence of the possession of the contraband property is not detailed in the affidavit, and that no deposition of witnesses was taken by the magistrate. The distinction between an affidavit and a deposition is that the latter is taken with notice to the adverse party for the purpose of enabling him to attend and cross-examine, while the former is taken without such notice, each being a written declaration under oath.Or. L. "" 826, 827; State v. Woolridge, 45 Ore. 389, 399, 78 P. 333; 2 C. J. 318, " 2, note 8a. The distinction between a deposition and an affidavit, as defined by the Code, is simply for the purpose of preserving the right of cross-examination. 2 C. J. 318, note 9a; In re Liter, 19 Mont. 474, 48 P. 753. The allegation of an affidavit should be full, certain, and exact, and must state facts positively, and not merely upon information and belief. The true test of the sufficiency of an affidavit is whether it has been drawn in such a manner that perjury could be charged thereon, if any material allegation contained therein is false. 1 R. C. L. 771, " 15. | Under Or.L. SS 826, 827, ORS 45.020, 45.030, distinction between "affidavit" and "deposition" is that latter is taken with notice to adverse party for purpose of enabling him to attend and cross-examine. | What distinguishes affidavit from deposition? | 06602.docx | LEGALEASE-00077753-LEGALEASE-00077754 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14027 | State v. Sachs, 264 S.C. 541 | 349+101 | The only portion of the affidavit which was not of the affiant's own personal knowledge was that part dealing with the delivery. The ministerial recorder was informed by the affiant that the delivery was under the supervision of other police officers. This in itself would meet the reliability aspect of Aguilar, supra. United States v. Steed, 465 F.2d 1310, 1315 (9th Cir. 1972). Of course, a warrant does not offend the constitution so long as it is issued upon affidavit or Affirmation. There was no intention to deceive the ministerial recorder and his decision to issue the warrant was based upon probable cause. | Search warrant does not offend the constitution so long as it is issued upon affidavit or affirmation. | Will a search warrant issued upon affidavit or affirmation offend the Constitution? | Affidavits - Memo 3-ANG.docx | ROSS-003288512-ROSS-003288513 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 14028 | F.H. Paschen/S.N. Nielsen v. Burnham Station, 372 Ill. App. 3d 89 | 21+17 | "If, from the document as a whole, it appears that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, Rule 191 is satisfied." Kugler v. Southmark Realty Partners III, 309 Ill.App.3d 790, 795, 243 Ill.Dec. 407, 723 N.E.2d 710 (1999). "[A]ffidavits offered in support of or in opposition to a motion for summary judgment that merely set forth legal conclusions or opinions without stating supporting facts are insufficient and must be stricken." Steiner Electric Co. v. NuLine Technologies, Inc., 364 Ill.App.3d 876, 881, 301 Ill.Dec. 646, 847 N.E.2d 656 (2006). Furthermore, courts must accept an affidavit as true if it is uncontradicted by counteraffidavits or other evidentiary materials. Lindahl v. City of Des Plaines, 210 Ill.App.3d 281, 299, 154 Ill.Dec. 857, 568 N.E.2d 1306 (1991). Whether to grant a motion to strike an affidavit submitted in support of a summary judgment motion is a question within the sound discretion of the circuit court. Kugler, 309 Ill.App.3d at 795, 243 Ill.Dec. 407, 723 N.E.2d 710. | Courts must accept an affidavit as true if it is uncontradicted by counteraffidavits or other evidentiary materials. | Can courts accept an affidavit as true if it is uncontradicted by counter-affidavits or other evidentiary materials? | 003870.docx | LEGALEASE-00115930-LEGALEASE-00115931 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14029 | In re Hyde's Estate, 218 N.Y. 55 | 21+18 | We think that this construction is unnecessarily strict. The entire proceeding was informal. Duly verified petition and answer should have been filed. Code Civ. Proc. "" 2519, 2520. A denial of any knowledge or information sufficient to form a belief as to the allegations of the petition would then have sufficiently and properly controverted the same and put the moving parties to their proof. Doubtless systematic and orderly methods of procedure should commend themselves to the legal profession and to the courts, nor should laxity and informality be encouraged. At the same time, the ends of justice do not require that the strict rule applicable to pleadings in actions in courts of record should be so harshly applied to this proceeding. The revisers say in their note that the purpose of section 2546 was "to obviate the supposed necessity of offering oral proof to substantiate uncontroverted allegations, due probably to the fact that in former years petitions were sometimes made orally." Supplement to Bliss and Stover's Annotated Code Civ. Proc. 1913"1915. The words "due proof," therefore, as used in the section would seem to have the meaning merely of "proper or legal proof." The moving affidavits are in the nature of testimony rather than pleadings. Wigmore (volume 2, p. 1697) points out that no statement, unless by special exception, should be used as testimony until it has been probed and submitted to the test of cross-examination, "the greatest legal engine ever invented for the discovery of truth." Ex parte affidavits, although truth may often be found therein, are weak evidence, to be received with caution in any case.The executors here claim exemption from taxation of an estate said to be more than $2,000,000 in value, and the right of the state to cross-examine their witnesses ought not to be defeated by technical defects or insufficiencies in answering affidavits. Code Civ. Proc. " 768. If the latter sufficiently controvert by objection the moving | Ex parte affidavits although truth may often be found therein, are weak evidence, to be received with caution in every case. | Are affidavits regarded as weak evidence? | 003874.docx | LEGALEASE-00115943-LEGALEASE-00115945 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |
| 14030 | Emery v. Orleans Levee Bd., 11 So. 2d 652 | 21+1 | Surely it is the real value which should control and not the value which one of the parties may put upon the thing which is in dispute. Therefore, when the evidence as to value is in the record, that evidence should be investigated to determine that value. And why should such evidence not be considered in preference to affidavits? An affidavit is nothing more than a sworn statement made by one who is not subjected to cross examination, whereas the testimony so taken comes from witnesses who appear in open court and who are subject to cross examination. Why then should we be bound by an affidavit and be not permitted to study the testimony? | An "affidavit" is nothing more than a sworn statement made by one who is not subjected to cross-examination, whereas "testimony" in the record comes from witnesses who appear in open court and are subject to cross-examination. | Can an affidavit be subjected to cross examination? | 06285.docx | LEGALEASE-00077837-LEGALEASE-00077838 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 14031 | Jackson Park Yacht Club v. Illinois Dep't of Local Gov't Affairs, 93 Ill. App. 3d 542 | 238+53 | Whether a contractual agreement is a lease or a license is determined, not from the language used, but from the legal effect of its provisions. The existence of a lease depends upon the intention of the parties. (In re Application of Rosewell (1979), 69 Ill.App.3d 996, 26 Ill.Dec. 36, 387 N.E.2d 866.) Essential requirements of a lease include: a definite agreement as to the extent and bounds of the property; a definite and agreed term; and a definite and agreed rental price and manner of payment. (People v. Chicago Metro Car Rentals, Inc. (1979), 72 Ill.App.3d 626, 28 Ill.Dec. 843, 391 N.E.2d 42.) A license is not assignable, and merely gives another the right to use the premises for a specific purpose with the owner retaining possession and control. (In re Application of Rosewell.) Unlike leases, licenses for the use of exempt property are not taxable interests under section 26 of the Revenue Act of 1939. Ill.Rev.Stat.1979, ch. 120, par. 507. | License is not assignable, and merely gives another right to use premises for specific purpose with owner retaining possession and control. | Are licenses assignable? | Assignments - Memo 23 AKA.docx | ROSS-003296262-ROSS-003296263 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14032 | LaBarge Pipe & Steel Co. v. First Bank, 550 F.3d 442 | 195+4 | A standby letter of credit is similar to a guaranty in that it acts as a protection against default by a customer in a purchase agreement. White & Summers " 26"1(b). However, a guaranty differs from a standby letter of credit in that under a standby letter of credit, the beneficiary has bargained for the right to be paid upon presentation of specific documents, even if the beneficiary defaults on the underlying contract with the applicant. Id. at " 26"2(a); see also David J. Barru, How to Guarantee Contractor Performance on International Construction Projects: Comparing Surety Bonds with Bank Guarantees and Standby Letters of Credit, 37 Geo. Wash. Int'l L.Rev.. 51, 66"67 (2005). The issuer of a letter of credit may not raise the defenses that the applicant may assert against payment to the beneficiary. White & Summers " 26"2(a); Barru, supra, at 67. The issuer's liability generally turns solely on whether the beneficiary presents the documents specified in the credit. Id. | Under Louisiana law, a "standby letter of credit" is similar to a "guaranty" in that it acts as a protection against default by a customer in a purchase agreement; however, a guaranty differs from a standby letter of credit in that under a standby letter of credit, the beneficiary has bargained for the right to be paid upon presentation of specific documents, even if the beneficiary defaults on the underlying contract with the applicant. | Is a standby letter of credit similar to a guaranty? | 003951.docx | LEGALEASE-00115884-LEGALEASE-00115885 | SA, Sub | 0.55 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14033 | State v. Negron, 5 Conn. Cir. Ct. 159 | 277+12 | The appeal turns on the issue of notice. "Where the question whether proper notice was given depends upon the construction of a written instrument, or the circumstances are such as lead to only one reasonable conclusion, it will be one of law, but where the conclusion involves the effect of various circumstances capable of diverse interpretation, it is necessarily one of fact for the trier." Truslow & Fulle, Inc. v. Diamond Bottling Corporation, 112 Conn. 181, 188, 151 A. 492, 495, 71 A.L.R. 1142; Sapiente v. Waltuch, 127 Conn. 224, 226, 15 A.2d 417. Since the question of the sufficiency of the notice in this case involves construction of written instruments, it is one of law. Moreover, where "there is any ambiguity in the terms of a notice, rendering its meaning doubtful, the doubt must be resolved against the person giving the notice". 66 C.J.S. Notice s 19(a). An examination of the official suspension notice discloses that under the heading "statutory action," the commissioner himself cited and relied on s 14-117(b) as authority for his action and not on s 14-111(a), as claimed by the state. Since the commissioner himself was attempting to proceed under s 14-117(b), he is bound by its mandate. That statute specifically provides that "notice of such suspension shall be sent by the commissioner to such operator and owner not less than ten days prior to the effective date of such suspension * * *." "The general view rightly regards express legislative provision for notification as "mandatory" and requires strict compliance therewith.' 1 Merrill, Notice s 547, p. 576; see 66 C.J.S. Notice s 16(a). "Notification fixes notice from the time it is effective." 1 Merrill, op. cit. s 495, p. 463. "The giving of such ten-day notice is a prerequisite to the suspension of license under the financial responsibility law." State v. Massaria, 2 Conn.Cir.Ct. 301, 304, 198 A.2d 227, 229. | Where there is any ambiguity in terms of notice, rendering its meaning doubtful, doubt must be resolved against person giving notice. | Will an ambiguity in the terms of a notice be resolved against the person giving the notice? | 003964.docx | LEGALEASE-00115970-LEGALEASE-00115971 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14034 | Gantz v. Dir. of Revenue, 858 S.W.2d 793 | 267+29 | The general rule is that a trial court is free to believe or disbelieve statements made in affidavits offered as evidence on motions. See Ray v. Lake Chevrolet"Oldsmobile, Inc., 714 S.W.2d 928, 931 (Mo.App.1986). In Cloyd v. Cloyd, 564 S.W.2d 337 (Mo.App.1978), Judge Gunn stated:Our courts have held that facts contained in affidavits accompanying motions are competent evidence and, if believed by the trial court, will support a judgment. Nevertheless, our courts have long held that the trial court when acting as the trier of fact may disbelieve the testimony of any witness. "The trial court in a court-tried case is the arbiter of the facts; it may believe or disbelieve oral evidence and the fact that the testimony is uncontradicted is not in any way decisive." If, then, under Missouri law, the trial court may disbelieve in-court testimony, a fortiori an affidavit may be similarly treated. (Citations omitted).Cloyd, 564 S.W.2d at 343.1. | Trial court is generally free to believe or disbelieve statements made in affidavits offered as evidence on motions. | Can the trial court disbelieve an affidavit? | 003881.docx | LEGALEASE-00115966-LEGALEASE-00115967 | Order, SA | 0.88 | 1 | 0 | 0 | 1 | |
| 14035 | Howard v. Henderson, 142 Ga. 1 | 315+133 | This controversy concerns only the real estate devised. It is insisted that, under item 7 of the will of testator, the trustees were appointed for both the life estate and the remainder interest, and that both of the trustees were in life in 1868, when A. H. Howard purchased the property in controversy from the life tenant and took possession of it, and the trustees continued in life until the year 1895, and that the purchaser remained in possession of the land from 1868 until his death in 1912, claiming it in good faith, etc., as owner, and consequently that he had a good prescriptive title. We think the finding of the court in favor of the plaintiffs in the court below was correct. The daughter was entitled to the life estate and the right to the possession and use of the land for and during her natural life. In 1868 she executed what purported to be a fee-simple warranty deed, conveying the land in dispute to Howard, who went into possession of it and continued in possession until his death in 1912; and it is contended that he claimed an absolute fee-simple title thereto until his death. Mrs. Henderson, the life tenant, could convey no greater estate than she had, and her grantee could receive no greater estate than she owned. She had only a life estate under the will. Her grantee would be entitled to the possession and use of the land during her natural life, and no longer, under her deed to him and the will of her father. If the life tenant conveyed a greater estate than she possessed, it would not work a forfeiture, as at common law.Civil Code, " 3671; Sanford v. Sanford, 55 Ga. 527, 528; 2 Bl. Com. 274; 16 Cyc. 645(5a). As there could be no entry and ouster against the life tenant during her life, there could likewise be no entry or ouster against the grantee of the life tenant until the death of the life tenant. There is nothing in the will tending to show that the trustees were to hold possession of the life estate after the life tenant arrived at the age of 16 years. The trustees | Under Civ.Code 1910, S 3671, a life tenant's conveyance of a greater estate than she possesses will not work a forfeiture as at common law. | What happens when a life tenant conveys a greater estate than they possess? | Life Estate - Memo 12-JS.docx | ROSS-003282857-ROSS-003282859 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14036 | Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142 | 311H+21 | We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege. However, we also reject a per se waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30"day time limit. Instead, using the 30"day period as a default guideline, a district court should make a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard. These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process. They should not be applied as a mechanistic determination of whether the information is provided in a particular format. Finally, the application of these factors shall be subject to any applicable local rules, agreements or stipulations among the litigants, and discovery or protective orders. | Boilerplate objections or blanket refusals inserted into a response to a request for production of documents are insufficient to assert a privilege; however, a privilege is not waived per se if a privilege log is not produced within the 30-day time limit for responding to such requests. Fed.Rules Civ.Proc.Rule 34, 28 U.S.C.A. | Will a privilege be waived if a privilege log is not produced within thirtyday time limit? | 005308.docx | LEGALEASE-00116041-LEGALEASE-00116043 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 14037 | Reardon v. Riggs Nat. Bank, 677 A.2d 1032 | 315+131 | Inherent in the Anglo"American system of property law is the concept that ownership rights consist not only of a present right to possession and use of property but also of future use; that is, ownership may be divided in terms of time. From this concept flows the familiar arrangement in which one person may own a life estate, with a future interest in a remainderman upon the life tenant's death. See Scott, supra, 86 U.S.App.D.C. at 284, 182 F.2d at 82 | Ownership rights consist not only of present right to possession and use of property, but also of right to future use; accordingly, one person may own life estate, with future interest in remainderman upon life tenant's death. | Do ownership rights in property consist future use? | 003038.docx | LEGALEASE-00116098-LEGALEASE-00116099 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 14038 | Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580 | 25T+230 | "[A]rbitration is a creature of contract, and an arbitration panel has the authority to decide only the issues that have been submitted for arbitration by the parties." Metromedia Energy, Inc. v. Enserch Energy Servs., Inc., 409 F.3d 574, 578 (3d Cir.2005); Medtronic, 247 F.3d at 54 (noting that "arbitrators have the authority to resolve disputes only if the parties have agreed to submit to arbitration" and that "there must be sufficient evidence that the parties consented to arbitration in an express agreement"). | Arbitration is a creature of contract, and an arbitration panel has the authority to decide only the issues that have been submitted for arbitration by the parties. | Does an arbitration panel has authority to decide issues that are not submitted for arbitration by the parties? | 003760.docx | LEGALEASE-00116162-LEGALEASE-00116163 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 14039 | Momand v. Twentieth-Century Fox Film Corp., 37 F. Supp. 649 | 38+24(1) | These decisions commit Oklahoma to the doctrine of strict construction of the common law on the question of assignment, and have the effect of prohibiting the assignment of any cause of action not arising out of contract. Stated otherwise, a tort pure and simple is any tort which does not arise out of a contract, express or implied. We have come to this conclusion reluctantly because we are convinced that the construction of these statutes, by the Supreme Court of Oklahoma, further restricts instead of enlarging the rule of the common law. 1 American Jurisprudence, "" 76 to 86, 6 Corpus Juris Secundum, Assignments, "" 30 to 35. | Under Oklahoma law relating to assignments of causes of action, a tort pure and simple is any tort which does not arise out of a contract express or implied. 12 Okl.St.Ann. SS 221, 1051; 60 Okl.St.Ann. SS 312, 313. | Are assignments of a cause of action in a tort valid? | Assignments - Memo 33 JS.docx | ROSS-003297957-ROSS-003297958 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 14040 | In re Johnson, 554 B.R. 448 | 38+12 | Section 300 of the California Labor Code ("Section 300") prohibits wage assignments unless certain "rigorous requirements" are met. Fitch v. Pac. Fid. Life Ins. Co., 54 Cal.App.3d 140, 126 Cal.Rptr. 445, 448 (1975). In particular, Section 300(b) sets out a list of seven conditions that all must be satisfied for a purported assignment of wages or salary to be valid:(1) The assignment is contained in a separate written instrument, signed by the person by whom the wages or salary have been earned or are to be earned, and identifying specifically the transaction to which the assignment relates.(2) Where the assignment is made by a married person, the written consent of the spouse of the person making the assignment is attached to the assignment. ...(3) Where the assignment is made by a minor, the written consent of a parent or guardian of the minor is attached to the assignment.(4) Where the assignment is made by a person who is unmarried or who is an adult or who is both unmarried and an adult, a written statement by the person making the assignment, setting forth such facts, is attached to or included in the assignment.(5) No other assignment exists in connection with the same transaction or series of transactions and a written statement by the person making the assignment to that effect is attached to or included in the assignment.(6) A copy of the assignment and of the written statement provided for in paragraphs (2), (4), and (5), authenticated by a notary public, is filed with the employer, accompanied by an itemized statement of the amount then due to the assignee.(7) At the time the assignment is filed with the employer, no other assignment of wages of the employee is subject to payment and no earnings withholding order against the employee's wages or salary is in force. | Under California law, creditor did not have a valid assignment of, or security interest in, Chapter 11 debtor's salary under player contract, where the wage assignment did not contain a statement that debtor, who was a professional hockey player, had not made any prior assignment of other property in addition to wages as consideration in the same transaction, an earnings withholding order against debtor's wages or salary was in force, and, barring injury, debtor had to play hockey in order to receive the full salary provided for in the player contract and had other obligations under the contract that he had to perform or risk reduction in pay or, ultimately, termination. Cal. Lab. Code S 300. | Is the consent of a spouse required for an assignment of wages? | Assignments - Memo 34 - JS.docx | LEGALEASE-00001458-LEGALEASE-00001460 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14041 | First Nat. Bank of Juneau v. Martin, 16 Alaska 313 | 38+7 | It is apparently conceded by plaintiff that the assignment mentioned would be valid and superior to the rights of plaintiff under its attachment except for the provisions of the filing statute mentioned, such assignment being prior in time to the attachment. 4 Am.Jur., Assignments, 318, Sec. 112; 5 Am.Jur., Attachment and Garnishment, 114, Sec. 864. There also appears no question but that a vested interest in a decedent's estate is assignable, including a future or contingent estate, if the person to take it is certain and if coupled with an interest.4 Am.Jur., Assignments, 245, Sec. 19; 6 C.J.S., Assignments, "" 8, 9, 11, p. 1054.] | A vested interest in decedent's estate is assignable, including a future or contingent estate, if person to take it is certain and if coupled with an interest. | Is a vested future interest assignable? | Assignments - Memo 41 JS.docx | LEGALEASE-00001464-LEGALEASE-00001466 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 14042 | Gov't of V.I. v. 0.459 Acres of Land Consisting of Following: ┬úParcel No. 6A Estate Thomas Kings Quarter & Parcel No. 9A, Estate Thomas, Virgin Islands, 286 F. Supp. 2d 501 | 25T+112 | Arbitration is a completely voluntary remedy, and litigants may freely contract to refer their dispute to arbitration, as an alternative to costly litigation. Therefore, "if parties wish to have a legal question resolved by an arbitrator rather than a judge, they are free to submit their claim to arbitration."United Indus. Workers, Service, Transp. v. Government of V.I., 987 F.2d 162, 168"169(3d Cir.1993). The parties' agreement confers jurisdiction to the arbitrator to hear the issues specified therein. See, Pennsylvania Power Co. v. Local Union No. 272 of Int'l Bd. of Elec. Workers, 886 F.2d 46, 50(3d Cir.1989) (jurisdictional objection waived where party "clearly indicate[s] his willingness to forego judicial review"); Yorkaire, Inc. v. Sheet Metal Workers Int'l Assoc. Local Union No. 19, 758 F.Supp. 248, 253"55 (E.D.Pa.1990), aff'd without opinion, 931 F.2d 53 (3d Cir.1991) (holding that voluntary submission of issue to arbitration constituted jurisdictional waiver); see, also, 56 A.L.R. 5th 757 (1998) (objections to arbitrability "should be raised before the issue is submitted for a hearing on its merits, because the party may not voluntarily submit an issue to arbitration and then, if he or she suffers an adverse decision, move to set aside the adverse award on the ground that it was not an arbitrable issue.");United Indus., 987 F.2d at 169 ("Allowing [party], which initiated arbitration, to vacate the award on the grounds that it never agreed to arbitrate the dispute would give [it] two bites at the apple, arbitration and litigation, to obtain a favorable outcome."); but see, Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791(1917) (Government may, as here, challenge its agent's authority). Public policy favors resort to alternative methods of resolving civil disputes, short of costly and often protracted litigation. Therefore, arbitration has emerged as an acceptable"even desirable"remedy, and such agreements will generally be enforced, absent violation of existing | Arbitration is completely voluntary remedy, and litigants may freely contract to refer their dispute to arbitration, as alternative to litigation. | Can litigants freely refer their disputes to arbitration? | 004167.docx | LEGALEASE-00116250-LEGALEASE-00116252 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 14043 | Hoffman v. Cargill Inc., 236 F.3d 458 | 25T+111 | Arbitration is not a perfect system of justice, nor it is designed to be. See Gilmer, 500 U.S. at 30-32, 111 S.Ct. 1647 (discussing the differences between litigation and arbitration). "[W]here arbitration is contemplated the courts are not equipped to provide the same judicial review given to structured judgments defined by procedural rules and legal principles. Parties should be aware that they get what they bargain for and that arbitration is far different from adjudication." Stroh Container, 783 F.2d at 751 n. 12. Arbitration is designed primarily to avoid the complex, time-consuming and costly alternative of litigation. | Arbitration is not designed to be a perfect system of justice, but is designed primarily to avoid the complex, time-consuming and costly alternative of litigation. | Is arbitration a perfect system of justice? | 004170.docx | LEGALEASE-00116253-LEGALEASE-00116254 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 14044 | Estate of Guido v. Exempla, 2012 COA 48, 9, 292 P.3d 996 | 25T+357 | A confirmation proceeding is a special statutory proceeding, not a "civil action" in the ordinary meaning of that term. See State Farm Mut. Auto. Ins. Co. v. Cabs, Inc., 751 P.2d 61, 65 (Colo.1988) ("Arbitration is a special statutory proceeding, and the [CUAA] sets out in precise detail the rules which apply concerning confirmation of an arbitration award, and the methods by which a party may request the court to vacate or modify such an award."); Levy v. Am. Family Mut. Ins. Co., 293 P.3d 40, """"(Colo.App.2011) (cert. granted 2011 WL 4018206 (Sept. 12, 2011)) (same); cf. Morrison v. Colo. Permanente Med. Grp., P.C., 983 F.Supp. 937, 944 (D.Colo.1997) (an arbitration proceeding is not a "civil action" as contemplated by Colorado statute allowing only one civil action for recovery of damages for wrongful death of any one decedent); Sabon v. People, 142 Colo. 323, 326, 350 P.2d 576, 578 (1960) (a mental health adjudication action in the county court can best be described as a special statutory proceeding, and is neither a criminal case nor a civil action). | An arbitration award confirmation proceeding is a special statutory proceeding, not a "civil action" in the ordinary meaning of that term. West's C.R.S.A. SS 13-22-205, 13-22-222(1); Rules Civ.Proc., Rule 3(a). | Is an arbitration proceeding a civil action? | 06331.docx | LEGALEASE-00078395-LEGALEASE-00078396 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 14045 | Kingsbrook Jewish Med. Ctr. v. Richardson, 486 F.2d 663 | 360+191.6(1) | The Secretary raises one final threshold barrier to judicial review in this case-the doctrine of sovereign immunity. This obstacle can be readily surmounted, however, by recourse to our holding in Kletschka v. Driver, 411 F.2d 436, 445 (2d Cir. 1969), that"the A.P.A. constitutes a waiver of sovereign immunity concerning those claims which come within its scope." Since we have already determined that Kingsbrook's claim falls squarely within the four corners of that Act, appellees' sovereign immunity argument must fail. | The Administrative Procedure Act constitutes a waiver of sovereign immunity concerning those claims which come within its scope. 5 U.S.C.A. SS 701-706. | Does the Administrative Procedure Act constitute a waiver of sovereign immunity? | 004483.docx | LEGALEASE-00116401-LEGALEASE-00116402 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 14046 | Farmer v. Mach. Craft, 406 So. 2d 981 | 50+1 | The law in Alabama concerning bailments is exceedingly sparse. We will therefore look to the common law of bailments for authority. A bailment is defined as:(T)he delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. (Footnotes omitted.)8 Am.Jur.2d Bailments s 2 (1980). In order to constitute a bailment, there must be a change of possession, actual or constructive, and the bailee must have voluntarily assumed the custody and possession of the property for another. Lewis v. Ebersole, 244 Ala. 200, 12 So.2d 543 (1943). Change of possession necessarily requires a change of actual or constructive control over the item of property, and there must be an intention on the part of the bailee to exercise that control. 8 Am.Jur.2d Bailments s 66 (1980). | In order to constitute "bailment" there must be change of possession, actual or constructive, and bailee must have voluntarily assumed custody and possession of property for another. | What constitutes bailment? | Bailment - Memo 8 - ANG.docx | ROSS-003284230-ROSS-003284232 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14047 | Rockstead v. City of Crystal Lake, 486 F.3d 963 | 148+1 | The Constitution does not forbid government to take private property for public use; it merely requires that, if it does so, it pay the owner just compensation. Therefore, the Constitution is not violated until the government refuses to compensate the owner. Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 194-95 and n. 13, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). When, as alleged in this case, the government (a town in Illinois) takes the property without a condemnation proceeding, the owner must, if the government refuses to pay, file a suit in state court-what is called an "inverse condemnation" suit-to obtain the compensation due him, and he must exhaust his state judicial remedies, if necessary by appealing an adverse decision. Daniels v. Area Plan Commission, 306 F.3d 445, 454-55 (7th Cir.2002). He must proceed in that way because unless and until the state courts turn him down, his right to just compensation has not been infringed. Gamble v. Eau Claire County, 5 F.3d 285, 285-86 (7th Cir.1993). | The Constitution does not forbid government to take private property for public use; it merely requires that, if it does so, it pay the owner just compensation. U.S.C.A. Const.Amend. 5. | Does the federal constitution forbid takings? | Eminent Domain - Memo 4 - AKA.doc | LEGALEASE-00002117-LEGALEASE-00002118 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14048 | Scott v. Doggett, 226 S.W.2d 183 | 192+7 | In the case of Texas & P. Ry. Co. v. Mercer, 127 Tex. 220, 90 S.W.2d 557, 106 A.L.R. 1299, by the Commission of Appeals approved by the Supreme Court, Commissioner Hickman held that good will is property that may be sold or damaged; that there is no principle of law making any distinction between it and other property with respect to the right of ownership thereof or to recover damages therefor if it is injured or destroyed; that issues submitted for the recovery of damages of this nature are for injuries done to property; that good will, although intangible, is an integral part of the business just the same as the physical assets; and that the rule for measuring such damages is the same as that for measuring damages to any other property. The trial court followed such rules in submitting issues 3 and 4 in this case. | "Good will", although intangible, is an integral part of the business the same as the physical assets, and the rule for measuring damages to good will is the same as that for measuring damages to any other property. | Can goodwill which is intangible be considered an integral part of the business? | Goodwill - Memo 18 - ANG..docx | ROSS-003284357-ROSS-003284359 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 14049 | Crooks v. Moses, 138 S.W.3d 629 | 272+200 | For the negligent activity theory of liability to be applicable, the evidence must show that the injuries were directly related to the activity itself. See Stanley Stores, Inc. v. Veazey, 838 S.W.2d 884, 886 (Tex.App.-Beaumont 1992, writ denied). If the injury was caused by a condition created by the activity rather then the activity itself, a plaintiff is limited to a premises liability theory of recovery. Lucas v. Titus County Hosp. Dist./Titus County Mem. Hosp., 964 S.W.2d 144, 153 (Tex.App.-Texarkana 1998, pet. denied). | For the negligent activity theory of liability to be applicable, the evidence must show that the injuries were directly related to the activity itself. | When does the negligent activity theory of liability be applicable in an action? | 004448.docx | LEGALEASE-00116705-LEGALEASE-00116706 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 14050 | United States v. Nat'l City Lines, 80 F. Supp. 734 | 361+1567 | The principle which forbids application of new enactments or revisions to pending actions applied to statutes dealing with substantive rights only. At times, it is difficult to draw a distinct line between substantive law and procedure. And many procedural changes have, historically, had a lasting effect on substantive rights, as, for instance, the rule allowing the jury to judge both the law and the facts in criminal libel. Nonetheless, matters of venue and change of venue are, as a rule, mere incidences of procedure. And statutes relating to remedies and procedure operate retrospectively. | Matters of venue and change of venue are as a rule mere incidences of procedure, and statutes relating to remedies and procedure operate retrospectively. | Can matters of venue operate retrospectively? | Venue - Memo 11 - RM.docx | ROSS-003311232-ROSS-003311234 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 14051 | Celotex Corp. v. Illinois Pollution Control Bd., 65 Ill. App. 3d 776 | 1.49E+15 | Section 40 of the Act (Ill.Rev.Stat.1977, ch. 1111/2, par. 1040) provides for appeals to Board of EPA permit denials but no time limit is established. Thus, the right to appeal does not expire by lapse of time.The purpose of the variance procedure is to give temporary relief to a polluter while encouraging future compliance (Olin Corp. v. Environmental Protection Agency (1977), 54 Ill.App.3d 480, 12 Ill.Dec. 380, 370 N.E.2d 3). It seems illogical and contrary to the intent of the Act to construe it to always require an entity denied an operating permit but willing to take further steps to insure undisputed compliance to either appeal the permit denial or admit its noncompliance before seeking the variance. Nothing in the Act expressly so requires. We interpret section 35 to permit granting of a variance upon a showing that taking the steps required by EPA to comply with Board rules and regulations would work an arbitrary or unreasonable hardship. In such a case, as here, a variance could be ordered temporarily permitting emissions at the level presently claimed by EPA to be resulting from the use of present equipment. | Purpose of variance procedure under Environmental Protection Act is to give temporary relief to a polluter while encouraging future compliance. S.H.A. ch. 1111/212, S 1035. | What is the purpose of the variance procedure under the EPA? | 004553.docx | LEGALEASE-00116520-LEGALEASE-00116522 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14052 | Discovery S. Grp., Ltd. v. Pollution Control Bd., 275 Ill. App. 3d 547 | 149E+323 | The narrative testimony established that the Theater noise interfered with enjoyment of life and lawful activity. The Board had to determine whether that interference was unreasonable by referencing the 33(c) factors. Proof of unreasonable interference does not require proof with respect to each of the criteria listed in section 33(c). See Marblehead Lime Co. v. Pollution Control Board (1976), 42 Ill.App.3d 116, 355 N.E.2d 607. | Proof that noise unreasonably interfered with enjoyment of life and lawful activity, for purposes of section of Environmental Protection Act (EPA) prohibiting noise pollution, does not require proof with respect to each of criteria listed in Act for consideration by Pollution Control Board. S.H.A. 415 ILCS 5/33(c); Ill. Admin. Code title 35, SS 900.101, 900.102. | Does unreasonable interference require proof with respect to the criteria listed in Section 33(c) of the EPA? | Environmental Law - Memo 28 - JS.docx | ROSS-003284775-ROSS-003284776 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |
| 14053 | Seizer v. Sessions, 132 Wash. 2d 642 | 253+756 | The statute distinguishes between a "marital" and a "community" relationship. Mere physical separation does not dissolve the community, Kerr v. Cochran, 65 Wash.2d 211, 396 P.2d 642 (1964), but it is not necessary for purposes of RCW 26.16.140 that a dissolution action be final or even pending. Togliatti, 29 Wash.2d at 851"52, 190 P.2d 575. The statute applies, as we have previously noted, to marriages that are "defunct." Rustad v. Rustad, 61 Wash.2d 176, 180, 377 P.2d 414 (1963). | Mere physical separation does not dissolve a marital community; however, it is not necessary for purposes of statute governing earnings and accumulations of husband and wife "living separate and apart" that dissolution action be final or even pending. West's RCWA 26.16.140. | Does the community property dissolve after separation? | 004803.docx | LEGALEASE-00116741-LEGALEASE-00116742 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14054 | Craig ex rel. Estate of Craig v. Zink, 2016 IL App (4th) 150939 | 162+227(1) | It is well established a claim against an estate is not a pleading within the meaning of the Civil Code, and it need not set forth a formal cause of action. Sheetz v. Morgan, 98 Ill.App.3d 794, 800"01, 54 Ill.Dec. 117, 424 N.E.2d 867, 872 (1981); see also Piper, 59 Ill.App.3d at 327, 16 Ill.Dec. 604, 375 N.E.2d at 479; Hobin v. O'Donnell, 115 Ill.App.3d 940, 942, 71 Ill.Dec. 542, 451 N.E.2d 30, 32 (1983); In re Estate of Wagler, 217 Ill.App.3d 526, 529, 160 Ill.Dec. 553, 577 N.E.2d 878, 880 (1991); 755 ILCS 5/18"2 (West 2014). It is also well established that proceedings in probate court for the allowance of claims are not governed by the technical rules which apply to a formal suit at law. See In re Estate of Weaver, 3 Ill.App.2d 448, 452, 122 N.E.2d 599, 601 (1954); Piper, 59 Ill.App.3d at 327, 16 Ill.Dec. 604, 375 N.E.2d at 479; Sheetz, 98 Ill.App.3d at 800, 54 Ill.Dec. 117, 424 N.E.2d at 871"72; Wagler, 217 Ill.App.3d at 529, 160 Ill.Dec. 553, 577 N.E.2d at 880. In fact, our courts have found, given "the informal, summary proceedings established by the legislature," laypersons may file claims against an estate. Piper, 59 Ill.App.3d at 327, 16 Ill.Dec. 604, 375 N.E.2d at 479. | A claim against an estate is not a pleading within the meaning of the Civil Code, and it need not set forth a formal cause of action. | Is a claim against an estate a pleading? | Pleading - Memo 10 - VP.docx | ROSS-003286044-ROSS-003286045 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14055 | John T. Handy Co. v. Carman, 102 Md. App. 188 | 50+1 | Modern usage, however, divides bailments into three types:(1) for the sole benefit of the bailor; (2) for the sole benefit of the bailee; and (3) for the mutual benefit of both. This modern classification is comprehensive and includes every kind of bailment. Under it the old Roman divisions group themselves readily.Thus, in the first class-bailments for the bailor's benefit-come depositum and mandatum. Commodatum is embraced by the second class, as it is a bailment for the bailee's sole benefit. And the third class, bailments for the mutual benefit of both parties, comprises locatum, with its subdivisions, and pignori acceptum or vadium.8 Am.Jur.2d Bailments " 17 (1980). | Modern usage divides bailments into three types: (1) for sole benefit of bailor and this encompasses depositum and mandatum bailments; (2) for sole benefit of bailee and this encompasses commodatum bailments; and (3) for mutual benefit of both and this encompasses locatum and pignori acceptum or vadium bailments. | Does a bailment provide mutual benefit to both the bailor and the bailee? | 004623.docx | LEGALEASE-00116898-LEGALEASE-00116899 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 14056 | Bd. of Cty. Comm'rs of Arapahoe Cty. v. Intermountain Rural Elec. Ass'n, 655 P.2d 831 | 148+7 | Thus, the authority to condemn may be conferred expressly by statute or by necessary implication from the rights, powers, and duties conferred by the legislature. Town of Eaton v. Bouslog, 133 Colo. 130, 292 P.2d 343 (1956); Hagodol v. City of Aurora, 126 Colo. 267, 248 P.2d 732 (1952); Public Service Company v. City of Loveland, 79 Colo. 216, 245 P. 493 (1926); Mack v. Town of Craig, 68 Colo. 337, 191 P. 101 (1920); see generally 2 Nichols On Eminent Domain " 3.21[4] (3d Ed. 1980). However, even though the purpose for which the property is sought to be condemned is a public use within the meaning of Colo. Const. art. II, sec. 15, in the absence of express or necessarily implied statutory condemnation authority, private property may not be condemned. Buck v. District Court, 199 Colo. 344, 608 P.2d 350 (1980); Riverside Irrigation District v. Lamont, 194 Colo. 320, 572 P.2d 151 (1977); Potashnik v. Public Service Company, supra. | Authority to condemn under power of eminent domain may be conferred by state upon governmental subdivision or other entity expressly by statute or by necessary implication from rights, powers, and duties conferred by legislature; however, even though purpose for which property is sought to be condemned is "public use" within meaning of constitutional provision, in absence of express or necessarily implied statutory condemnation authority, private property may not be condemned. C.R.S.1973, 38-1-101 to 38-1-121; Const. Art. 2, S 15. | When does the right to condemn private property exists? | Eminent Domain - Memo 19 - AKA.doc | LEGALEASE-00002808-LEGALEASE-00002809 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 14057 | Nat. Res. Def. Council v. U.S. E.P.A., 966 F.2d 1292 | 1.49E+18 | EPA does not have the authority to ignore unambiguous deadlines set by Congress. Delaney v. EPA, 898 F.2d 687, 691 (9th Cir.), cert. denied, 498 U.S. 998, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990). In arguing against injunctive relief, EPA points to cases recognizing factors indicating that equitable relief may be inappropriate. See, e.g., In re Barr Laboratories, Inc., 930 F.2d 72, 74 (D.C.Cir.) (agency's choice of priorities is an important factor in considering whether to grant equitable relief), cert. denied, 502 U.S. 906, 112 S.Ct. 297, 116 L.Ed.2d 241 (1991); Natural Resources Defense Council v. Train, 510 F.2d 692, 712 (D.C.Cir.1975) (court may need to give agency some leeway due to budgetary commitments or technological problems); Environmental Defense Fund v. Thomas, 627 F.Supp. 566, 569"70 (D.D.C.1986) (EPA's good faith is a factor). None of these factors militates against an award of declaratory relief. They do not grant an executive agency the authority to bypass explicit congressional deadlines. The deadlines are not aspirational"Congress set them and expected compliance. See 132 Cong.Rec. 32,381"82 (remarks of Senator Stafford, commenting on EPA delay and the establishment of statutory deadlines as "outside dates.") This court must uphold adherence to the law, and cannot condone the failure of an executive agency to conform to express statutory requirements. For these reasons, we grant NRDC's request for declaratory relief. EPA's failure to abide by the statutory deadlines is unlawful. | Environmental Protection Agency (EPA) lacks authority to ignore unambiguous deadlines set by Congress for issuing regulations. | Does the Environmental Protection Agency have the authority to ignore unambiguous deadlines set by the Congress? | Environmental Law - Memo 57 - AKA.doc | LEGALEASE-00002845-LEGALEASE-00002846 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 14058 | People v. Illinois Pollution Control Bd., 119 Ill. App. 3d 561 | 1.49E+18 | Rules for which the Board lacks statutory authority to promulgate are void. (Landfill, Inc. v. Pollution Control Board (1978), 74 Ill.2d 541, 553, 25 Ill.Dec. 602, 387 N.E.2d 258.) In our judgment, therefore, that portion of the Board's order which repealed section 302.209, the fecal coliform water quality standard for general use waters, is void because it violates the legal requirement that the Board prescribe water quality standards to protect designated uses. | Rules for which Pollution Control Board lacks statutory authority to promulgate are void. | "If the Pollution Control Board lacks statutory authority to promulgate, is the rule void?" | Environmental Law - Memo 58 - AKA.doc | LEGALEASE-00002847-LEGALEASE-00002848 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 14059 | U. S. Steel Corp. v. Illinois Pollution Control Bd., 52 Ill. App. 3d 1 | 149E+682 | Petitioner further contends that the Board has the burden of establishing the validity of these water regulations. It is clear, however, that the burden of establishing the invalidity of these water effluent regulations clearly rests with the petitioner. (Shell Oil, 37 Ill.App.3d at 272, 346 N.E.2d 212; Illinois State Chamber of Commerce v. Pollution Control Board (1st Dist. 1977), Ill.App., 7 Ill.Dec. 470, 364 N.E.2d 631.)In placing this burden of establishing the invalidity of the Board's regulations with petitioner, we are giving due deference to the expertise and knowledge of the Pollution Control Board in the promulgation of its administrative regulations. | Burden of establishing the invalidity of water effluent regulations of the Pollution Control Board rested with petitioner steel company. S.H.A. ch. 1111/212, SS 1029, 1041; Supreme Court Rules, rule 335, S.H.A. ch. 110A, S 335. | Who has the burden to establish the invalidity of the regulations promulgated by the Pollution Control Board? | Environmental Law - Memo 60 - AKA.doc | LEGALEASE-00002851-LEGALEASE-00002852 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14060 | Howard v. Ferrellgas Partners, 748 F.3d 975 | 25T+112 | Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated. While Congress has chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a "fundamental principle" that "arbitration is a matter of contract," not something to be foisted on the parties at all costs. AT & T Mobility LLC v. Concepcion, """ U.S. """", 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011). | While the Federal Arbitration Act (FAA) favors arbitration, before the FAA's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated. 9 U.S.C.A. S 1 et seq. | Do the parties themselves have to agree for their disputes to be arbitrated? | Alternative Dispute Resolution - Memo 104 - JS.docx | ROSS-003284016-ROSS-003284017 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 14061 | Piggly Wiggly Operators' Warehouse v. Piggly Wiggly Operators' Warehouse Indep. Great Truck Drivers Union, Local No. 1, 611 F.2d 580 | 231H+1578 | In this case, neither party questioned the arbitrability either of the dispute stated in the grievance or of the issues set forth in it; the entire grievance was presented to the arbitrator without reservation. It was only after he had decided the Article 21(z) issue adversely to the employer that it sought to raise the question of his jurisdiction. In International Brotherhood of Teamsters v. Washington Employers, Inc., 9 Cir. 1977, 557 F.2d 1345, 1350, the court found in similar circumstances that, by submitting an issue to arbitration, the employer had waived any objection to the arbitrator's jurisdiction. Whether in technical legal terms the surrender of the possible argument that a certain dispute is not covered by the promise to arbitrate should be considered a waiver is not of present moment. On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute. | Where neither employer nor union questioned the arbitrability of dispute, stated in grievance, as to whether purported section of collective bargaining agreement was in fact a valid term of the agreement, such grievance defined arbitrator's authority without regard to whether the parties had a prior legal obligation to submit that dispute. | Does the grievance submitted to the arbiter define his authority? | 005245.docx | LEGALEASE-00116812-LEGALEASE-00116814 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 14062 | Adkins v. Labor Ready, 303 F.3d 496 | 25T+112 | It is clear that "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." Arrants v. Buck, 130 F.3d 636, 640 (4th Cir.1997). Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). We turn initially, therefore, to West Virginia contract law to determine whether the employment application mandates arbitration of Adkins' claims as a contractual matter. We review the trial court's decision on this issue de novo. See Arnold v. United Cos. Lending Corp., 204 W.Va. 229, 511 S.E.2d 854, 860"61 (1998). | Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate. | "If arbitration has a favored place, is there a need for an underlying agreement between the parties to arbitrate?" | 005258.docx | LEGALEASE-00116837-LEGALEASE-00116838 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14063 | Nat. Res. Def. Council v. U.S. E.P.A., 797 F. Supp. 194 | 1.49E+19 | It is well established that a court, under such circumstances as are presented in the instant case, may extend the time for compliance with an explicitly mandated time limit. See e.g., NRDC v. Train, 510 F.2d 692, 712"13 (D.C.Cir.1975). However, these circumstances are limited to instances in which it would be infeasible or impossible for EPA, acting in good faith, to meet the deadline, either due to budget and manpower constraints or because of the need for further study. Sierra Club v. Gorsuch, 551 F.Supp. 785, 787 (N.D.Cal.1982) (citation omitted); see Train, 510 F.2d at 713 (in evaluating an impossibility defense, court must "separate justifications grounded in the purpose of the Act from the footdragging efforts of a delinquent agency"). Courts have further held that impossibility claims by EPA should be carefully scrutinized and that EPA's burden in such cases is "especially heavy." State of New York v. Gorsuch, 554 F.Supp. 1060, 1064 (S.D.N.Y.1983) (citing Alabama Power Co. v. Costle, 636 F.2d 323, 359 (D.C.Cir.1980)). | Impossibility claims by Environmental Protection Agency (EPA), made in connection with statutorily mandated time limits, must be carefully scrutinized, and EPA's burden in such cases is especially heavy. | How should courts review claims of impossibility made by the Environmental Protection Agency (EPA)? | 005025.docx | LEGALEASE-00117213-LEGALEASE-00117214 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 14064 | United States v. Valenzeno, 123 F.3d 365 | 164T+4 | Congress intended that the Hobbs Act's protection of interstate commerce extend as far as the Constitution permits and no farther. Stirone v. United States, 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). If Lopez indicates that the Commerce Clause gives Congress less power than was previously thought to be the case, the proper remedy would be to give the statute a narrower interpretation, or to require a more substantial jurisdictional nexus, not to hold facially invalid an Act of Congress. See Bass, 404 U.S. at 350, 92 S.Ct. at 523"24 (avoid federalism question by holding that ambiguous statute contained jurisdictional element and reversing conviction where government failed to prove nexus with interstate commerce). Compare United States v. Harrington, 108 F.3d 1460, 1470 (D.C.Cir.1997) (holding that robbery's effect of removing $1,000 from interstate bank transfer satisfied Hobbs Act jurisdictional element), with id. at 1473 (Sentelle, J., dissenting) (arguing that robbery had too small an effect on interstate commerce to satisfy constitution after Lopez ); United States v. Woodruff, 941 F.Supp. 910, 928 (N.D.Cal.1996) (granting judgment of acquittal of Hobbs Act charge because robbery had insufficient effect on commerce to withstand Lopez attack). The Hobbs Act, which was enacted in order to protect interstate commerce, is a valid exercise of Congress' power to regulate and protect such commerce. Accord United States v. Bolton, 68 F.3d 396, 399 (10th Cir.1995); United States v. Stillo, 57 F.3d 553, 558 n. 2 (7th Cir.1995). Accordingly, we reject Valenzeno's attack on the constitutionality of the Hobbs Act. | Congress intended that Hobbs Act's protection of interstate commerce extend as far as the Constitution permits and no farther. U.S.C.A. Const. Art. 1, S 8, cl. 3; 18 U.S.C.A. S 1951(a). | What did Congress intend to achieve by the enactment of the Hobbs Act? | 005069.docx | LEGALEASE-00117188-LEGALEASE-00117190 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14065 | Gray v. Wackenhut Servs., 721 F. Supp. 2d 282 | 272+202 | To establish a prima facie case of negligence, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and that the breach of such duty was the proximate cause of his or her injuries. Gordon v. Muchnick, 180 A.D.2d 715, 579 N.Y.S.2d 745, 745 (1992).The defendant must owe a duty of reasonable care to the particular plaintiff.Absent a duty of care, there can be no breach thereof and no liability. Palsgraf v. Long Island R. Co., 248 N.Y. 339, 341, 162 N.E. 99 (1928); Gordon, 579 N.Y.S.2d at 745. | Under New York Law, to establish a prima facie case of negligence, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and that the breach of such duty was the proximate cause of his or her injuries. | Can a defendant be held liable for negligence when there is an absence of duty of care? | 005133.docx | LEGALEASE-00117246-LEGALEASE-00117247 | SA, Sub | 0.57 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14066 | Seguro v. Cummiskey, 82 Conn. App. 186 | 272+210 | "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual.... Although it has been said that no universal test for [duty] ever has been formulated ... our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised." (Citations omitted; internal quotation marks omitted.) Perodeau v. Hartford, 259 Conn. 729, 754, 792 A.2d 752 (2002). | The nature of duty imperative to a negligence cause of action and the specific persons to whom it is owed are determined by the circumstances surrounding the conduct of the individual. | How have courts defined the term duty as an essential element of negligence? | 005135.docx | LEGALEASE-00117248-LEGALEASE-00117249 | Condensed, Order, SA | 0.76 | 1 | 1 | 0 | 1 | 1 |
| 14067 | Bradley v. Avis Rental Car Sys., 902 F. Supp. 814 | 237+33 | Defamation is the publication of disreputable untruths about another to a third person. Suhadolnik v. City of Springfield, 184 Ill.App.3d 155, 185, 133 Ill.Dec. 29, 540 N.E.2d 895 (4th Dist.1989). Under Illinois law, statements are defamatory per se when they so obviously and naturally harm plaintiff that damages are presumed. Miller v. Danville Elks Lodge 332, 211 Ill.App.3d 145, 151, 155 Ill.Dec. 549, 569 N.E.2d 1160 (4th Dist.1991). Statements that falsely "impute the commission of a criminal offense" involving moral turpitude are defamatory per se. Id. It is not necessary for the statement to contain the technical language of the criminal charge in assessing whether the statement is in fact defamatory per se. Lowe v. Rockford Newspaper Inc., 179 Ill.App.3d 592, 595, 128 Ill.Dec. 367, 534 N.E.2d 549 (2nd Dist.1989). Whether a statement constitutes defamation per se is a question of law. Miller, 211 Ill.App.3d at 151, 155 Ill.Dec. 549, 569 N.E.2d 1160. | Under Illinois law, statements that falsely impute commission of criminal offense involving moral turpitude are defamatory per se; it is not necessary for statement to contain technical language of criminal charge in assessing whether statement is in fact defamatory per se. | Should technical words and language be used in defamatory statements? | Libel and Slander - Memo 66 - JS.docx | ROSS-003297921-ROSS-003297923 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 14068 | Yeakey v. Hearst Commc'ns, 156 Wash. App. 787 | 237+30 | A private individual plaintiff alleging defamation must show falsity, unprivileged communication, fault, and damages. Mohr v. Grant, 153 Wash.2d 812, 822, 108 P.3d 768 (2005). The falsity prong of a defamation claim is satisfied with evidence that a statement is probably false or leaves a false impression due to omitted facts. Mohr, 153 Wash.2d at 825"30, 108 P.3d 768. But we have held that a plaintiff may not base a defamation claim on the negative implication of true statements. Lee v. Columbian, Inc., 64 Wash.App. 534, 538, 826 P.2d 217 (1991). Defamatory meaning may not be imputed to true statements. Lee, 64 Wash.App. at 538, 826 P.2d 217. Courts must give words their " "natural and obvious meaning and may not extend language by innuendo or by the conclusions of the pleader." " Lee, 64 Wash.App. at 538, 826 P.2d 217 (quoting Sims v. KIRO, Inc., 20 Wash.App. 229, 234, 580 P.2d 642 (1978), review denied, 91 Wash.2d 1007, 1978 WL 61474, cert. denied, 441 U.S. 945, 99 S.Ct. 2164, 60 L.Ed.2d 1047 (1979)). And the "defamatory character of the language must be apparent from the words themselves." Lee, 64 Wash.App. at 538, 826 P.2d 217. | The falsity prong of a defamation claim is satisfied with evidence that a statement is probably false or leaves a false impression due to omitted facts. | What is the meaning of the term falsity in defamation law? | Libel and Slander - Memo 61 - JS.docx | ROSS-003287165-ROSS-003287166 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14069 | Neely v. Wilson, 418 S.W.3d 52 | 237+30 | Whether Neely raised a fact issue regarding the truth or falsity of the underlying statements is the primary issue in this appeal. We have developed the substantial truth doctrine to determine the truth or falsity of a broadcast: if a broadcast taken as a whole is more damaging to the plaintiff's reputation than a truthful broadcast would have been, the broadcast is not substantially true and is actionable. Turner, 38 S.W.3d at 115 ("the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements"); McIlvain, 794 S.W.2d at 16 ("The test used in deciding whether the broadcast is substantially true involves consideration of whether the alleged defamatory statement was more damaging to [the plaintiff's] reputation, in the mind of the average listener, than a truthful statement would have been. This evaluation involves looking to the "gist" of the broadcast." (citations omitted)); see also Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516"17, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (applying substantial truth defense under California law). | Under "substantial truth doctrine," if a broadcast taken as a whole is more damaging to the plaintiff's reputation than a truthful broadcast would have been, the broadcast is not substantially true and is actionable as defamation; this evaluation involves looking to the "gist" of the broadcast. | What is the use of substantial truth doctrine in defamation? | 000552.docx | LEGALEASE-00117341-LEGALEASE-00117342 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 14070 | In re Bounds, 495 B.R. 725 | 253+862 | Texas recognizes both sole-management community property and joint-management community property. Douglas, 987 S.W.2d at 883; see also Tex. Fam.Code " 3.102. Community property is subject to the "joint management, control and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement." Jean v. Tyson"Jean, 118 S.W.3d 1, 5 (Tex.App."Houston [14th Dist.] 2003, pet. denied) (citing Tex. Fam.Code " 3.102(c)). "However, where community property is held in one spouse's name only, there is a presumption that the property is sole-management community property." Id. (citing Tex. Fam. Code " 3.104(a)). This may be shown by "muniment, contract, deposit of funds, or other evidence of ownership." Tex. Fam.Code " 3.104(a). It is only a debtor's separate property, sole-management community property, and joint-management community property that become part of the bankruptcy estate; the sole-management community property of a debtor's spouse does not. See 11 U.S.C. " 541(a) (2). However, if sole-management community property is mixed or combined with a spouse's sole-management community property, then the mixed or combined community property becomes joint management community property, unless the spouses provide otherwise by power of attorney in writing or other agreement. Tex. Fam.Code " 3.102(b). | When community property is held in one spouse's name only, there is presumption under Texas law that it is sole-management community property. V.T.C.A., Family Code S 3.104(a). | Can a property be presumed as community property if it is held in the name of one spouse only? | 005115.docx | LEGALEASE-00117331-LEGALEASE-00117332 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14071 | Zimmerman v. Carmack, 292 A.D.2d 601 | 386+10 | Similarly, the Supreme Court erred in dismissing the cause of action sounding in trespass. The essence of trespass is the invasion of a person's interest in the exclusive possession of land (see Copart Industries v. Consolidated Edison of New York, supra, at 570, 394 N.Y.S.2d 169, 362 N.E.2d 968). Here, the plaintiffs alleged, inter alia, that the defendants removed lawn ornaments from the plaintiffs' backyard, damaged their barbecue grill, and diverted rainwater onto the plaintiffs' yard causing flooding. Thus, the plaintiffs have adequately pleaded a cause of action sounding in trespass. (see Ligo v. Gerould, 244 A.D.2d 852, 665 N.Y.S.2d 223; Dellaportas v. County of Putnam, 240 A.D.2d 358, 658 N.Y.S.2d 116; Burk v. High Point Homes, 22 Misc.2d 492, 197 N.Y.S.2d 969). | Allegations by next door neighbor that homeowners removed lawn ornaments from the neighbor's backyard, that homeowners damaged neighbor's barbecue grill, and that they diverted rainwater onto neighbor's yard causing flooding, stated claim for trespass. | What is the essence of a trespass action? | Trespass - Memo 14 - RK.docx | ROSS-003324980-ROSS-003324981 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 14072 | TDM Farms of N. Carolina v. Wilhoite Family Farm, 969 N.E.2d 97 | 386+10 | We next address whether Wilhoite's claim that TDM trespassed onto Wilhoite's property is preempted. According to Wilhoite's complaint, TDM trespassed when, "[t]hrough its reckless or negligent conduct [,] TDM ... caused a dangerous pathogen to enter the property of Wilhoite." Appellant's App. at 24. In Indiana, "[t]respass is defined as "[a]n unlawful interference with one's person, property, or rights.... Any unauthorized intrusion or invasion of private premises or land of another."" Travelers Indem. Co. v. Summit Corp. of Am., 715 N.E.2d 926, 937 n. 15 (Ind.Ct.App.1999) (omission original) (quoting Black's Law Dictionary at 1502 (6th ed. 1990)). | "Trespass" is defined as an unlawful interference with one's person, property, or rights; any unauthorized intrusion or invasion of private premises or land of another. | How is trespass defined? | Trespass - Memo 17 - RK.docx | ROSS-003311718-ROSS-003311719 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 14073 | Lightning Oil Company v. Anadarko E&P Onshore, 520 S.W.3d 39 | 386+12 | "Trespass to real property is an unauthorized entry upon the land of another, and may occur when one enters"or causes something to enter"another's property." Barnes v. Mathis, 353 S.W.3d 760, 764 (Tex. 2011). "[E]very unauthorized entry upon land of another is a trespass even if no damage is done or injury is slight." Coastal Oil, 268 S.W.3d at 12 n.36 (quoting McDaniel Bros. v. Wilson, 70 S.W.2d 618, 621 (Tex. Civ. App."Beaumont 1934, writ ref'd)). The owner of realty generally "has the right to exclude all others from use of the property." Envtl. Processing Sys., L.C. v. FPL Farming Ltd., 457 S.W.3d 414, 424 (Tex. 2015) (quoting Severance v. Patterson, 370 S.W.3d 705, 709 (Tex. 2012)). But ownership of property does not necessarily include the right to exclude every invasion or interference based on what might, at first blush, seem to be rights attached to the ownership. See Coastal Oil, 268 S.W.3d at 11 ("Wheeling an airplane across the surface of one's property without permission is a trespass; flying the plane through the airspace two miles above the property is not."). | "Trespass" to real property is an unauthorized entry upon the land of another, and may occur when one enters, or causes something to enter, another's property. | What constitutes a trespass to real property? | Trespass - Memo 25 - RK.docx | ROSS-003297666-ROSS-003297667 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14074 | Reeves v. Meridian S. Ry., 61 So. 3d 964 | 386+2 | A trespass to land is committed when a person intentionally invades the land of another without a license or other right. Thomas v. Harrah's Vicksburg Corp., 734 So.2d 312, 316 (" 10) (Miss.Ct.App.1999) (citations omitted). Trespass can be committed by, among other acts, placing an object on the other person's land. Id. at 315 (" 7). A trespass is committed even if the trespasser has a good-faith belief that he has a right to enter the land. Id. at 316 (" 8). Furthermore, the landowner may recover nominal damages, even if he fails to show any actual damages. Whitten v. Cox, 799 So.2d 1, 18 (" 46) (Miss.2000). | A trespass is committed even if the trespasser has a good-faith belief that he has a right to enter the land. | Can a trespass be committed even if the trespasser has a good-faith belief that he has a right to enter the land ? | Trespass - Memo 49 - JS.docx | LEGALEASE-00004176-LEGALEASE-00004177 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14075 | State v. Neumann, 111, 348 Wis. 2d 455 | 211+1558 | We therefore reaffirm the parental duty adopted in Williquette and Cole and confirm that a parent has a legal duty to provide medical care for a child if necessary. | For purposes of determining whether state law imposes a legal duty on a parent to furnish medical care to his or her child and, if so, under what circumstances, numerous state statutes impose responsibility on parents for the care of their children, including the requirement that they provide medical care when necessary; these statutes demonstrate the legislature's recognition of the legal duty of parents to support and protect their children, including providing them with medical care, when necessary. W.S.A. 48.13(10), 767.41(1m)(f, g, i). | Do parents have a legal duty to provide medical care for a child if necessary? | Homicide - Memo 24 - RK.docx | LEGALEASE-00004386-LEGALEASE-00004387 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 14076 | In re Revel AC, 532 B.R. 216 | 233+546 | The Court rules that the Agreements are true leases. Each of the Agreements share certain characteristics, and therefore, the Court examines them together. First, the Court looks to New Jersey law to determine what constitutes a true lease.Generally, a lease exists when there is an agreement by the lessor to turn over specific premises to the exclusive possession of a lessee for a definite time period. In return, the lessor receives a payment of rent from the lessee. Thiokol Chem. Corp. v. Morris County Bd. of Taxation, 41 N.J. 405, 197 A.2d 176, 182 (1964). "Frequently, a lease is spoken of as a hiring of land, or a sale of the possession, occupancy and profits of land for a term." Id. Whether a lease exists depends on the intention of the parties as expressed by a written document or the conduct of the parties to the alleged lease. Id. Where the intentions of the parties is unclear, the burden is on the party asserting the existence of a lease to demonstrate a landlord-tenant relationship. Id.; Town of Kearny v. Municipal Sanitary Landfill Auth., 143 N.J.Super. 449, 363 A.2d 390, 393"94 (1976); Outerbridge Terminal, Inc. v. City of Perth Amboy, 179 N.J.Super. 400, 432 A.2d 141, 144 (1980).Matter of Great N. Forest Products, Inc., 135 B.R. 46, 55 (Bankr.W.D.Mich.1991) (applying New Jersey law). This Court regards Thiokol Chemical Corp. v. Morris County Board of Taxation, 41 N.J. 405, 197 A.2d 176 (1964) as persuasive authority for what constitutes a true lease in the state of New Jersey. In Thiokol, the court held thatwhether a particular agreement is a lease depends upon the intention of the parties as revealed by the language employed in establishing their relationship, and, where doubt exists, by the circumstances surrounding its making as well as by their course of operation under it. 51 C.J.S. Landlord & Tenant s 202e. And, in situations where the ambiguity or doubt gives rise to a factual question as to the intention of the parties, the burden is on the | Under New Jersey law, where the intentions of the parties is unclear, the burden is on the party asserting the existence of a lease to demonstrate a landlord-tenant relationship. | "When ambiguity arises, is the burden on the party asserting to demonstrate the existence of the lease?" | Landlord and Tenant - Memo 35 - TH.docx | LEGALEASE-00004440-LEGALEASE-00004442 | SA, Sub | 0.96 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14077 | United States v. Davidson, 139 F.2d 908 | 315+63 | A majority of this court agrees with the trial court that the equitable title was not in the United States prior to February 24, 1937. In Texas, as elsewhere, an equitable title is a right, enforceable in equity, to have the legal title to real estate, or the fruits thereof, transferred to the owner of the right. It is doubtful whether any of the instruments of conveyance executed prior to 1937 were sufficient under Texas law, even as between the original parties thereto, to vest an enforceable equitable right to the realty in the United States;5 but we prefer to rest our decision on another ground. The agreement upon which reliance is placed was a bilateral contract imposing obligations upon both the parties thereto, and there is nothing to indicate that the obligations of one were to be performed before those of the other. The record contains no evidence to establish that the United States or any of its agencies have yet performed the contractual obligations undertaken by it. Under such circumstances a court of equity has no power to compel performance until the one demanding it has matured his right thereto by performance, or tender of performance, of all conditions precedent to the creation of an equitable right in him. | Under Texas law an "equitable title" is a right enforceable in equity to have legal title to real estate or the fruits thereof transferred to the owner of the right. | What is an equitable title under property law? | Property - Memo 25 - THJS.docx | LEGALEASE-00004478-LEGALEASE-00004482 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14078 | Costanza v. Dep't of Envtl. Res., 146 Pa. Cmwlth. 588 | 1.49E+19 | Any power exercised by an administrative agency must be conferred by statute; such powers can be expressly conferred or necessarily implied. Department of Environmental Resources v. Butler County Mushroom Farm, 499 Pa. 509, 454 A.2d 1 (1982). The powers of the Board are governed by the Environmental Hearing Board Act (EHBA), Act of July 13, 1988, P.L. 530, as amended 35 P.S. "" 7511-7516. Section 4 of the EHBA delineates the powers granted the Board as follows:(a) General Rule.-The board has the power and duty to hold hearings and issue adjudications under 2 Pa.C.S. Ch. 5 Subch. A (relating to practice and procedure of Commonwealth Agencies) on orders, permits, licenses or decisions of the department.(b) Powers Continued.-The board shall continue to exercise the powers to hold hearings and issue adjudications which (powers) were vested in agencies listed in section 1901-A of the act of April 9, 1929, (P.L. 177, No. 175), known as The Administrative Code of 1929.35 P.S. " 7514. There is no express grant of the power to provide declaratory relief in Subsection (a). A review of the powers of the agencies referred to in Subsection (b) reveals that none were expressly granted the right to grant declaratory relief. Thus, whether the Board can grant declaratory relief depends upon whether the power to provide declaratory relief is necessarily implied in the power to issue adjudications as stated in Subsection (a). | Power to grant declaratory relief was not implied by power of Environmental Hearing Board to issue adjudications. 35 P.S. S 7514(a). | Is there an express grant of power upon the Environmental Hearing Board to provide declaratory relief? | 000405.docx | LEGALEASE-00117777-LEGALEASE-00117778 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 14079 | Sunderland v. United States, 266 U.S. 226 | 315+22 | First. The power of Congress is challenged upon the ground that the land had become subject to the jurisdiction of the state and was exclusively within the control of its laws. The general rule is not to be doubted, that the tenure, transfer, control and disposition of real property are matters which rest exclusively with the state where the property lies (United States v. Fox, 94 U. S. 315, 320, 321, 24 L. Ed. 192), but it by no means follows that a restriction upon alienation, limited as it is here, may not be imposed by the United States as a condition upon which a purchase of private lands within the state will be made for an Indian ward. The question is argued as though there had been an actual invasion of or an interference with the authority of the state to regulate and condition the transfer of land within its boundaries. But there is no such invasion or interference. If Congress, in fulfillment of its duty to protect the Indians, whose welfare is the peculiar concern of the federal government, deems it proper to restrict for a limited time the right of the individual Indian to alienate land purchased for him with funds arising from the sale of other lands originally subject to a like restriction, we are not aware of anything which stands in the way. The state of Oklahoma is not concerned, since there is no state statute, rule of law or policy, which has been called to our attention, to the contrary effect. If there were, or if the power of state taxation were involved, we should consider the question of supremacy of power; but no such question is presented by this record. | Tenure, transfer, control, and disposition of land subject to exclusive jurisdiction of state. | "Are tenure, transfer, control, and disposition of land subject to the exclusive jurisdiction of a state?" | Property - Memo 23 - JS.docx | ROSS-003310746-ROSS-003310747 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14080 | Brown v. Johnson, 118 Tex. 143 | 233+525 | It is our opinion that the question propounded must be answered in the affirmative under the facts stated in the certificate. The relation of landlord and tenant is a question of fact like that of possession, and may be proved by parol evidence. Likewise, the alleged relation may be thus disproved. To sustain an action for rent, the relation of landlord and tenant must exist. Brown v. Engel, 2 Willson, Civ. Cas. Ct. App. " 103. To create the relation of landlord and tenant, no particular words are necessary, but it is indispensable that it should appear to have been the intention of one party to dispossess himself of the premises and of the other to occupy them. According to the certificate, the legal rights of the appellee, E. A. Johnson, are wholly dependent upon a proper construction of the Landlord and Tenant Act as expressed in articles 5222-5239. Those rights are primarily based upon the contract he made with the owners of the fee to the lands cultivated by the appellant. This contract gave to appellee the exclusive possession of these lands, with the right to use them during the term of his contract for the purpose of planting, cultivating, and raising agricultural products. The relation of landlord and tenant between himself and the owners of the fee was established by virtue of the terms of this contract. During the term of his lease, the owners of the fee had no right of entry thereon; the exclusive right of possession being in the appellee. The statute prohibits a person occupying the position of the appellee from renting or leasing lands during the term of the original lease to any other person without first obtaining the consent of the landlord, his agent or attorney. The statement in the petition does not contain any fact of this consent having been obtained. Without this consent one holding premises under a subletting is a trespasser and occupies the attitude of a stranger to the landlord. Sansing v. Risinger, 2 Willson, Civ. Cas. Ct. App. " 713; Brown v. | Relation of landlord and tenant is question of fact, and may be proved or disproved by parol evidence. | Can the relation between a landlord and a tenant be disproved by parol evidence? | 000816.docx | LEGALEASE-00117948-LEGALEASE-00117949 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 14081 | Harasz v. Katz, 239 F. Supp. 3d 461 | 249+3 | Insulating Katz from liability for malicious prosecution solely because she is the Commissioner would be counterintuitive to a tort whose boundaries courts paint with a relatively broad brush. The first element of malicious prosecution is satisfied if a plaintiff proves that "the defendant initiated or procured the institution of criminal proceedings against the plaintiff." Turner v. Boyle, 116 F.Supp.3d 58, 85 (D. Conn. 2015) (quoting McHale v. W.B.S. Corp., 187 Conn. 444, 448, 446 A.2d 815 (1982)) (emphasis added). The emphasized phrase demonstrates that to be liable for malicious prosecution, an individual need not personally initiate a criminal proceeding against the plaintiff; he or she may procure that initiation by someone else. | Under Connecticut law, to be liable for malicious prosecution, an individual need not personally initiate a criminal proceeding against the plaintiff; he or she may procure that initiation by someone else. | When can an individual be liable for a malicious-prosecution? | Malicious Prosecution - Memo 5 - MS.docx | LEGALEASE-00004814-LEGALEASE-00004816 | SA, Sub | 0.72 | 0 | 0 | 1 | 1 | |
| 14082 | Mickas v. Mickas, 229 Ga. 10 | 134+90 | It has long been the rule in Georgia that substance and not mere nomenclature controls in determining the nature of pleadings.Chance v. Planters Rural Telephone Co-Op., Inc., 219 Ga. 1, 5, 131 S.E.2d 541. Accordingly, where, as the present case, the substance of the plaintiff's pleading seeking a divorce was sufficient to comport with the statutory requirements whether denominated as a "complaint" or "petition" is immaterial. | Where the substance of plaintiff's pleading seeking a divorce was sufficient to comport with the statutory requirements, whether the pleading was denominated a "complaint" or "petition" was immaterial. Code, SS 81A-104(e) (1) (iii), 81A-106(a), 102-102, subd. 8. | Does the substance of a pleading determine its nature? | 000867.docx | LEGALEASE-00117937-LEGALEASE-00117939 | SA, Sub | 0.38 | 0 | 0 | 1 | 1 | |
| 14083 | Bhd. Ry. Carmen of U.S. & Canada, AFL-CIO-CLC v. Norfolk & W. Ry. Co., 745 F.2d 370 | 231H+1625 | In contrast to major disputes, minor disputes under the Act are subject to compulsory and binding arbitration. See 45 U.S.C. " 153(first) (i). This task is performed, upon the request of one of the parties, by the National Railroad Adjustment Board or a privately established arbitration panel. See supra note 4. When only a minor dispute is involved, there is no duty to maintain the status quo. See Ruby v. TACA International Airlines, 439 F.2d 1359, 1362 (5th Cir.1971). Moreover, the arbitration panels established by the Act have "primary and exclusive jurisdiction" to resolve minor disputes. Local 1477 United Transportation Union v. Baker, 482 F.2d 228, 230 (6th Cir.1973). Judicial review of the arbitration panels' decisions is extremely limited. See Union Pacific Railroad v. Sheehan, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978) (per curiam). | Judicial review of an arbitration panels' decision involving a minor dispute between a railroad and its employees under the Railway Labor Act is extremely limited. Railway Labor Act, S 3, subds. 1(i), 2, 45 U.S.C.A. S 153, subds. 1(i), (2). | Is the courts review of an arbitration panels decision limited? | Alternative Dispute Resolution - Memo 165 - RK.docx | ROSS-003302131-ROSS-003302132 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 14084 | In re D & B Swine Farms, 430 B.R. 737 | 51+2049 | The defendants argue that the contract claims are for pre-petition breaches and, as such, are non-core and should be submitted to arbitration. See In re Apex Express Corp., 190 F.3d 624, 632 (4th Cir.1999) (resolution of a pre-petition contract based claim was a "private right dispute" and thus "hardly at the core of restructuring debtor-creditor relationships"). Arbitration provisions generally are favored in federal courts. In bankruptcy proceedings, however, whether a proceeding is a "core proceeding" as defined by 28 U.S.C. " 157(b) generally determines whether an arbitration clause can be enforced. See White Mountain Mining Co., 403 F.3d 164, 168"70 (4th Cir.2005); Blanchard Transportation, 2008 WL 619379 (Bankr.E.D.N.C.2008). The Fourth Circuit concluded in White Mountain that "[a]rbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights "contingent upon an arbitrator's ruling" rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." White Mountain, 403 F.3d at 169 (internal citation omitted). | Customer's alleged postpetition breaches of nursery and finishing agreements with Chapter 11 debtor-swine farm operator were "core" matters within bankruptcy court's jurisdiction, warranting denial of enforcement of nursery agreement's arbitration provision on grounds that ordering arbitration and staying debtor's adversary proceeding would substantially interfere with debtor's reorganization efforts; any monies that debtor would recover on its contract claims would be the only assets of estate, and amounts that debtor sought to recover for postpetition breaches were not available prepetition and so were integral part of bankruptcy case. 28 U.S.C.A. S 157(b). | When can arbitration provisions be enforced in bankruptcy courts? | Alternative Dispute Resolution - Memo 167 - RK.docx | ROSS-003297293-ROSS-003297295 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14085 | Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cty., 431 F.3d 277 | 231H+1 | Gould might appear to be inapplicable to our case on the ground that there the state was penalizing contractors for conduct outside the scope of the state's contracts; the three or more adjudicated violations of the National Labor Relations Act might have occurred in labor disputes arising from work pursuant to contracts to which the state was not a party. But the principle of that decision goes deeper; it is that the spending power may not be used as a pretext for regulating labor relations. As a practical matter, moreover, the labor-peace agreements at issue in this case are bound to affect the contractors' labor relations even when the contracts are with private hospitals and nursing homes. It would hardly be feasible for the contractors to segregate their workforces, with one part governed by labor-peace agreements and the other not even though the two groups of workers would be doing identical work, just for different customers. Cf. Chamber of Commerce v. Reich, 74 F.3d 1322, 1338 (D.C.Cir.1996). There is nothing distinctive about the work that the contractors do for the County; doubtless all or most of their employees who work on County contracts also work on private ones. This means that disputes arising out of the private contracts, though unrelated to any spending or procurement activity of the County, are in fact regulated by the labor-peace agreements and therefore made subject to the County's philosophy of labor relations. | State may not use its spending power as pretext for regulating labor relations. | Can the state use its spending power for regulating labor relations? | Labor and Employment - Memo 6 - VP.docx | LEGALEASE-00004958-LEGALEASE-00004959 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 14086 | Cayuga Nation v. Tanner, 824 F.3d 321 | 209+117 | Several principles of law guide our analysis. First, and most significantly, federal courts lack authority to resolve internal disputes about tribal law. See Shenandoah v. U.S. Dep't of Interior, 159 F.3d 708, 712 (2d Cir. 1998); Runs After v. United States, 766 F.2d 347, 352 (8th Cir. 1985). It is "a bedrock principle of federal Indian law that every tribe is capable of managing its own affairs and governing itself." Cal. Valley Miwok Tribe v. United States, 515 F.3d 1262, 1263 (D.C. Cir. 2008) (internal quotation marks omitted). Second, the BIA has the authority to make recognition decisions regarding tribal leadership, but "only when the situation [has] deteriorated to the point that recognition of some government was essential for Federal purposes." Wadena, 30 IBIA 130, 145 (1996) (emphasis added). Thus, the BIA "has both the authority and responsibility to interpret tribal law when necessary to carry out the government-to-government relationship with the tribe." United Keetoowah Band of Cherokee Indians, 22 IBIA 75, 80 (1992).Internal dysfunction or paralysis within tribal governance standing alone, however, does not permit the BIA to decide who constitutes the legitimate leadership of a tribe. Cf. Goodface v. Grassrope, 708 F.2d 335, 338"39 (8th Cir. 1983); Alturas Indian Rancheria, 54 IBIA 138, 143-44 (2011) | The Bureau of Indian Affairs (BIA) has the authority to make recognition decisions regarding tribal leadership, but only when the situation has deteriorated to the point that recognition of some government was essential for Federal purposes; thus, the BIA has both the authority and responsibility to interpret tribal law when necessary to carry out the government-to-government relationship with the tribe. | What is the relevance of the Bureau of Indian Affairs? | 019434.docx | LEGALEASE-00117841-LEGALEASE-00117842 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 14087 | Matter of Clem, 29 B.R. 3 | 51+2311 | It is clear, under " 302(a) of the Code, that spouses may file a joint petition for relief. However, an individual and his spouse are the only "persons," as defined by " 101(30), which may file a joint petition. While a corporation or a partnership is also recognized as a "person" by the Code and may be a debtor under " 109, there is no provision in the Code authorizing such an entity to jointly file for relief with any other. | While a corporation or a partnership is recognized as a "person" by the Bankruptcy Code and may be a debtor, there is no provision in the Code authorizing such an entity to jointly file for relief with any other. Bankr.Code, 11 U.S.C.A. SS 101(30), 109. | Can a partnership be a debtor? | 022353.docx | LEGALEASE-00118084-LEGALEASE-00118085 | SA, Sub | 0.4 | 0 | 0 | 1 | 1 | |
| 14088 | Bowen Eng'g v. Estate of Reeve, 799 F. Supp. 467 | 149E+461 | Neither does the Environmental Rights Act ("ERA"), N.J.S.A. "" 2A:35A"1 to "14, provide plaintiffs with a private right to recover cleanup costs under the Spill Act. N.J.S.A. " 2A:35"4(a) permits any person to "commence a civil action in a court of competent jurisdiction against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment." While the ERA generally allows for citizen enforcement of state environmental laws, it does not create any independent substantive rights. Frola I, 701 F.Supp. at 1091; Superior Air Products Co. v. NL Indus., Inc., 216 N.J.Super. 46, 58, 522 A.2d 1025 (App.Div.1987). Since plaintiffs' rights under the ERA are derivative of their rights under the Spill Act, and since the Spill Act does not provide for private recovery of cleanup costs, the ERA does not allow for the recovery of such costs. Frola I at 1091. | While New Jersey Environmental Rights Act generally allows for citizen enforcement of state environmental laws, it does not create any independent substantive rights, and thus does not give rise to private right to recover cleanup costs under New Jersey Spill Act, which does not itself provide for private recovery of cleanup costs. N.J.S.A. 2A:35A-1 to 2A:35A-14, 58:10-23.11f, 58:10-23.11g. | Does the Environmental Rights Act (ERA) confer any independent substantive rights? | 000936.docx | LEGALEASE-00118217-LEGALEASE-00118218 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 14089 | Jonkers v. Summit Twp., 278 Mich. App. 263 | 20+68 | We first disagree with the township's argument that it acquired title to the property under color of title, which would, if true, grant the township constructive possession of all of the premises described in that deed. Campau v. Campau, 44 Mich. 31, 33-34, 5 N.W. 1062 (1880). An owner of real property may lose title to some or all of the property to an adverse possessor either "through visible, open, notorious, hostile, and continuous possession of the premises for the statutory period" or through an assertion of ownership "under color of deed." Adams v. Adams (On Reconsideration), 276 Mich.App. 704, 719-720, 742 N.W.2d 399 (2007). "In cases in which the adverse claimant claims title under color of deed, disseisin occurs when the record owner first receives notice of the adverse deed." Id. at 720, 742 N.W.2d 399. Notably, recordation of an adverse deed is only notice to parties other than the record landowner, which in this case is the Wanzer family. Id. at 720, n. 8, 742 N.W.2d 399. | In cases in which the adverse claimant claims title under color of deed, disseisin occurs when the record owner first receives notice of the adverse deed. | When does Disseisin occur? | Property - Memo 38 - RM.docx | ROSS-003322289-ROSS-003322291 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14090 | Rhine v. Union Carbide Corp., 343 F.2d 12 | 25T+113 | Under federal law it is now a clearly established national policy to encourage the use of arbitration. This is manifest in the statutory expressions of the Congress. 29 U.S.C. " 173(d); 9 U.S.C. "" 3 and 4. It is even more explicitly detailed in recent opinions of the United States Supreme Court, United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). | Under federal law, it is now a clearly established national policy to encourage use of arbitration. Labor Management Relations Act, 1947, S 203(d), 29 U.S.C.A. S 173(d); 9 U.S.C.A. SS 3, 4. | Is encouraging arbitration a national policy under federal law? | 001045.docx | LEGALEASE-00118104-LEGALEASE-00118105 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 14091 | Backoff v. Weiner, 305 Mass. 375 | 233+501 | The plaintiff, in order to recover, had the burden of proving that her injury occurred as a result of the failure of the defendant to keep the common stairway in the condition it was in, or appeared to be in, at the time of the commencement of the tenancy, and that the defect in the stairway, which caused her injury, arose after the commencement of the tenancy. Griffen v. Rudnick, Mass., 9 N.E.2d 388, and cases cited. If a new tenancy was created on May 17, 1935, it is assumed that the verdict was rightly directed. Murray v. Lincoln, 277 Mass. 557, 179 N.E. 171. Who was the actual owner of the premises on April 1, 1935, does not appear, but ownership is only one element to be considered in determining whether the relationship of landlord and tenant commenced on that date, for one may be a landlord although he is not an owner. The tenant cannot escape from his obligations by showing that his landlord had no legal title, nor can the landlord escape from his obligations by showing the same thing. The reciprocal obligations of landlord and tenant do not depend upon the validity of the landlord's title. Lindsey v. Leighton, 150 Mass. 285, 22 N.E. 901, 15 Am.St.Rep. 199; Crowe v. Bixby, 237 Mass. 249, 251, 129 N.E. 433. See Magaw v. Beals, 242 Mass. 321, 324, 136 N.E. 174. "If the defendant by his conduct in dealing with the property by his knowledge and his transactions in reference to the property, so acted that it could be fairly said he assumed the duties and responsibilities of a landlord, it could be found he was in fact the landlord, although he made no such representation in words to the plaintiff." Connery v. Cass, 277 Mass. 545, 549, 179 N.E. 164, 165. It could have been found that the plaintiff and her husband became tenants of the defendant on April 1, 1935, and if it were so found, it could not rightly have been ruled that the relationship of landlord and tenant was terminated by the conveyance to the defendant on May 17. The case at bar is distinguishable from Souza v. Becker, Mass., | The reciprocal obligations of landlord and tenant do not depend upon validity of landlord's title. | Do reciprocal obligations between landlord and tenant depend upon the validity of landlords title? | 001094.docx | LEGALEASE-00118125-LEGALEASE-00118128 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 14092 | Graphic Commc'ns Union, Chicago Paper Handlers' & Electrotypers' Local No. 2 v. Chicago Tribune Co., 779 F.2d 13 | 231H+1519 | The defendants make two arguments for why they will suffer irreparable harm if the stay is denied. First they say they will incur a substantial expense in time and money, and second and inconsistently they say that if they win the arbitration the appeal may become moot. But if the defendants win the arbitration the time and money they will have spent on it may not have been wasted; they might have had to spend the same time and money (or very possibly more of both) to litigate the underlying dispute with the union in some other forum. In any event the fact that an order to arbitrate imposes a cost, the cost of the arbitration, whether it is an opportunity cost of time or an out-of-pocket expense for lawyers or witness fees or whatever, or both types of costs, does not show irreparable harm. Otherwise every order to arbitrate would be deemed to create irreparable harm, and it would be easy to get such orders stayed. That however would fly in the face of the strong federal policy in favor of arbitrating disputes in general and labor disputes in particular. See, e.g., United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582"83 (1960). Arbitration is supposed to be swift. It will not be swift if orders to arbitrate are routinely stayed pending appeals from those orders. Then the typical arbitration will proceed as follows: the union demands arbitration; the employer refuses; the union sues to compel arbitration; the employer resists the suit; the district court orders arbitration; the employer appeals; the order is stayed pending appeal; the court of appeals affirms; at last, years after the dispute arose, the arbitration can begin. This pattern would make a mockery of arbitration as a swift and effective remedy in labor disputes. | There is strong federal policy in favor of arbitrating disputes in general and labor disputes in particular. | Is there a strong federal policy in favor of arbitrating labor disputes? | Alternative Dispute Resolution - Memo 181 - RK.docx | ROSS-003297675-ROSS-003297676 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 14093 | S. Louisiana Cement v. Van Aalst Bulk Handling, B.V., 383 F.3d 297 | 25T+114 | Usually, this court only has jurisdiction over appeals from final orders, and may raise the issue of jurisdiction sua sponte. See 28 U.S.C. " 1291; CitiFinancial Corp. v. Harrison, 453 F.3d 245, 249 (5th Cir.2006). Generally, the FAA "governs appellate review of arbitration orders," including those arising under the Convention. Apache Bohai Corp., LDC v. Texaco China, B.V., 330 F.3d 307, 309 (5th Cir.2003); 9 U.S.C. "" 16, 208. The law carries out "Congress's intent in enacting [the FAA] ... to favor arbitration" by "authorizing immediate appeals from orders disfavoring arbitration and forbidding immediate appeals from orders favoring arbitration." Apache Bohai, 330 F.3d at 309; 9 U.S.C. "" 16, 208. "Except as otherwise provided in [28 U.S.C. " 1292(b)], an appeal may not be taken from an interlocutory order ... compelling arbitration under [9 U.S.C. " 206, the Convention]...." 9 U.S.C. " 16(b)(3). However, an appeal may be taken from "a final decision with respect to an arbitration that is subject to" the FAA or Convention. 9 U.S.C. " 16(a)(3). | Congress's intent in enacting the section of the Federal Arbitration Act (FAA) governing appellate review of arbitration orders was to favor arbitration, and it did so by authorizing immediate appeals from orders disfavoring arbitration and forbidding immediate appeals from orders favoring arbitration. 9 U.S.C.A. S 16. | Does the Federal Arbitration Act govern appellate review of arbitration orders? | Alternative Dispute Resolution - Memo 196 - RK.docx | LEGALEASE-00005473-LEGALEASE-00005474 | Order, SA | 0.7 | 1 | 0 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14094 | Joiner v. City of Dallas, 380 F. Supp. 754 | 148+1 | The power of eminent domain is the offspring of political necessity and is inseparable from sovereignty unless denied by fundamental law. Norwood v. Baker, 172 U.S. 269, 277, 19 S.Ct. 187, 43 L.Ed. 443 (1898); Searl v. Lake County School District, 133 U.S. 553, 562, 10 S.Ct. 374, 33 L.Ed. 740 (1890). The "right of the State to authorize the appropriation of every description of property for a public use is one of those inherent powers which belong to state governments, without which they could not well perform their great functions." City of Cincinnati v. Louisville & Nashville RR. Co., 223 U.S. 390, 400, 32 S.Ct. 267, 268, 56 L.Ed. 481 (1912). See also Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206 (1978). This is particularly true in Texas since the Joint Resolution annexing Texas into the Union authorized the retention by Texas of "all the vacant and unappropriated lands lying within its limits . . . ." Joint Resolution approved March 1, 1845, 5 Stat. 797. For an interpretation of that Resolution, see United States v. Texas, 339 U.S. 707, 70 S.Ct. 918, 94 L.Ed. 1221 (1950). Wisely, therefore, plaintiffs do not contest the existence of this power of the sovereign. Instead, they launch a multi-front attack on the exercise of that power. | Power of eminent domain is offspring of political necessity and is inherent power inseparable from sovereignty unless denied by fundamental law. Vernon's Ann.Tex.Civ.St. arts. 3264-3271, 3266, subd. 6, 6081e; 42 U.S.C.A. SS 1981-1983, 1988; Vernon's Ann.St.Tex.Const. art. 1, S 17. | Is eminent domain the offspring of necessity? | 001275.docx | LEGALEASE-00118352-LEGALEASE-00118354 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 14095 | Millennium Park Joint Venture v. Houlihan, 241 Ill. 2d 281 | 233+531 | Additionally, the essential elements of a lease include: (1) the extent and bounds of the property; (2) the term of the lease; (3) the amount of rent; and (4) the time and manner of payment. See Lannon v. Lamps, 53 Ill.App.3d 145, 150, 10 Ill.Dec. 710, 368 N.E.2d 196 (1977), citing Miller v. Gordon, 296 Ill. 346, 350, 129 N.E. 809 (1921). If any of these elements are missing, a lease has not been created; but the fact that an agreement may contain all of these essential requirements for a lease does not necessarily make it a lease. See Feeley v. Michigan Avenue National Bank, 141 Ill.App.3d 187, 192, 95 Ill.Dec. 542, 490 N.E.2d 15 (1986). Additionally, licenses are ordinarily revocable at the will of the grantor (see Jackson Park, 93 Ill.App.3d at 547, 49 Ill.Dec. 212, 417 N.E.2d 1039), and are generally not assignable (see Stevens v. Rosewell, 170 Ill.App.3d 58, 62, 120 Ill.Dec. 187, 523 N.E.2d 1098 (1988)). But again the crucial distinguishing characteristic of a lease is the surrender of possession and control of the property to the tenant for the agreed upon term. J. Ely & J. Bruce, The Law of Easements and Licenses in Land " 11:1 (2010); 1 R. Dolan, New York Landlord & Tenant, Including Summary Proceedings " 4:11 (4th ed.2010) | The essential elements of a lease include: (1) the extent and bounds of the property, (2) the term of the lease, (3) the amount of rent, and (4) the time and manner of payment. | What are the essential elements required of a lease? | Landlord and Tenant - Memo 57 - RK.docx | ROSS-003283976-ROSS-003283977 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14096 | Utah Power & Light Co. v. Pfost, 286 U.S. 165 | 83+62.1 | Without regard to the apparent continuity of the movement, appellant, in effect, is engaged in two activities; not in one only. So far as it produces electrical energy in Idaho, its business is purely intrastate, subject to state taxation and control. In transmitting the product across the state line into Utah, appellant is engaged in interstate commerce, and state legislation in respect thereof is subject to the paramount authority of the commerce clause of the Federal Constitution. The situation does not differ in principle from that considered by this court in Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 929. There the state of Minnesota had imposed an occupation tax on the business of mining ores. The tax was assailed as being in conflict with the commerce clause. It appeared that substantially all the ores there in question were mined for delivery to consumers outside the state; and that the ores passed practically at once after extraction into the channels of interstate commerce. The greater part of the ores came from open pit mines, to which empty cars were run and there loaded; the ores being severed from their natural bed by means of steam shovels and lifted directly into the cars. When loaded, these cars were promptly returned to the railroad yards from which they came and were there put into trains and continued their interstate journey. The several steps follows in such succession that there was practical continuity of movement from the severance of the ores to the end of their journey in another state. Upon these facts the court held that the commerce clause was not infringed. | Respecting interstate transmission of electrical energy, state legislation is subject to paramount authority of commerce clause. Laws Idaho 1931, Ex.Sess., c. 3, S 1 et seq.; U.S.C.A.Const. art. 1, S 8, cl. 3. | Is the transmission of electric current from one state to another an interstate commerce subject to the Commerce Clause? | 000912.docx | LEGALEASE-00118698-LEGALEASE-00118699 | Condensed, Order, SA | 0.87 | 1 | 1 | 0 | 1 | 1 |
| 14097 | Lake Cty. Tr. Co. v. Two Bar B, 238 Ill. App. 3d 589 | 315+22 | This principle is consonant with the traditional legal doctrine that the law of the State where the real estate is situated governs the rights of the parties. Dibble v. Winter (1910), 247 Ill. 243, 252, 93 N.E. 145; Smith v. Smith (1898), 174 Ill. 52, 58, 50 N.E. 1083. | Law of the state where the real estate is situated governs the rights of the parties. | Does the law of the state where the real estate is situated govern the rights of the parties? | Property - Memo 29 - RM.docx | LEGALEASE-00005929-LEGALEASE-00005930 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 14098 | Cassidy v. Pavlonnis, 227 Or. App. 259 | 315+34 | "Because the ownership of real property is divisible in so many ways, a real property owner often is described as holding a "bundle of sticks." " Bedortha v. Sunridge Land Co., Inc., 312 Or. 307, 311, 822 P.2d 694 (1991). A property owner's right to convey the property in exchange for money is a real property interest. See id. ("The portion of the "bundle of sticks' retained by the vendor in a land sale contract includes the right to receive contract payments. Under the doctrine of equitable conversion, when a property owner enters into a land sale contract, "the purchaser of the land is deemed the equitable owner thereof, and the seller is considered the owner of the purchase price," which is a personal property interest. Panushka v. Panushka, 221 Or. 145, 149"50, 349 P.2d 450 (1960). "The doctrine is based on the maxim that equity in a proper case will regard as done that which ought to be done." Heider v. Dietz, 234 Or. 105, 112, 380 P.2d 619 (1963). In other words, under the doctrine, the seller is deemed the owner of the sale proceeds"personal property"when the buyer has agreed to pay the proceeds. Before the sale agreement is made, the seller has only a real property interest. | A property owner's right to convey the property in exchange for money is a real property interest. | Can a property owner's right to convey the property in exchange for money be termed as a real property interest? | Property - Memo 32 - RM.docx | ROSS-003315326-ROSS-003315327 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14099 | Juarez v. Select Portfolio Servicing, 708 F.3d 269 | 266+1408 | In Ib""ez, the SJC also went over other basic principles of Massachusetts mortgage law. It explained that, Massachusetts is a "title theory" state where "a mortgage is a transfer of legal title to secure a debt." Id. "Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor." Id. (emphasis added). Even if the written assignment need not be in recordable form at the time of the notice of sale or the subsequent foreclosure sale, an assignment must take place before the foreclosure begins. See id. at 54. This, because "[a] valid assignment of a mortgage gives the holder of that mortgage the statutory power to sell after a default regardless whether the assignment has been recorded." Id. at 55. If a valid pre-foreclosure assignment took place, a "confirmatory assignment may be executed and recorded after the foreclosure, and doing so will not make the title defective." Id. But a confirmatory assignment "cannot confirm an assignment that was not validly made earlier or backdate an assignment being made for the first time." Id. In order to determine whether valid assignments had taken place, the SJC scrutinized the documents submitted by U.S. Bank and Wells Fargo, respectively, to see if valid assignments or valid confirmatory assignments sustained the plaintiffs' claims to clear titles. It found that they did not. | Under Massachusetts law, assignment of mortgage is conveyance of interest in land that requires writing signed by grantor. | Does a conveyance of an interest in land require a writing signed by the grantor? | 000976.docx | LEGALEASE-00118446-LEGALEASE-00118447 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 14100 | Lifevantage Corp. v. Domingo, 208 F. Supp. 3d 1202 | 237+32 | The question here, therefore, is whether Mr. Domingo's defamation claim arises from a tort duty independent from the contractual duties at issue in this case. The court concludes that LifeVantage had an independent duty under tort law not to defame Mr. Domingo. Tort law enforces duties imposed by society not to intentionally or negligently harm others. See Reighard, 285 P.3d at 1176. Just as individuals owe a generalized duty not to strike another person or act in a negligent manner so as to cause physical harm, all members of society owe a duty in tort not to defame another person. LifeVantage, therefore, owes a tort duty not to defame Mr. Domingo regardless of the terms of the Agreement. Indeed, LifeVantage would owe such a duty if it had no contractual relationship with Mr. Domingo. Because LifeVantage owes an independent duty in tort, the economic loss rule does not bar Mr. Domingo's defamation claim, and he is entitled to summary judgment on this defense. | Under Utah's tort law, multi-level marketing company had an independent duty not to defame former lead distributor, and thus economic loss rule did not bar distributor's defamation claim against company; company owed a tort duty not to defame distributor regardless of the terms of independent distributor agreement. | Does economic loss rule bar a claim for defamation? | 05375.docx | LEGALEASE-00080809-LEGALEASE-00080810 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 14101 | Townsend v. Cty. of Los Angeles, 49 Cal. App. 3d 263 | 46H+9 | We do not question that there is a "fundamental right" to pursue a lawful occupation. (E.g., Purdy & Fitzpatrick v. State of California, 71 Cal.2d 566, 579, 79 Cal.Rptr. 77, 456 P.2d 645.) However, plaintiff's fundamental right to practice law (e.g., Raffaelli v. Committee of Bar Examiners, 7 Cal.3d 288, 293"294, 101 Cal.Rptr. 896, 496 P.2d 1264) does not encompass the right to work for a particular employer, whether that employer be public or private. | Fundamental right of attorney to practice law does not encompass the right to work for a particular employer, whether that employer be public or private. | Is there a fundamental right to work for a particular employer? | Labor and Employment - Memo 25 - VP.docx | ROSS-003298536-ROSS-003298537 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 14102 | Skokie Valley Beverage Co. v. Beer, Soft Drinks, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers, Helpers, Inside Workers, Bottlers, Warehousemen, Sch., Sightseeing, Charter Bus Drivers, Gen. Promotional Employees of Affiliated Indus., Local Union No. 744., 563 F. Supp. 460 | 231H+2057 | Skokie Valley has cited a case which holds, quite explicitly, that for Boys Markets purposes the arbitration process includes judicial review; a strike may be enjoined under Boys Markets until judicial review has been had. Sea-Land Service v. Longshoremen's Ass'n, 625 F.2d 38, 41"42 (5th Cir.1980). Sea-Land relies on Anheuser-Busch, Inc. v. Local 133, 477 F.Supp. 742, 747 (E.D.Mo.1979), and on statutes and other cases less directly on point. The court is not persuaded by these cases. The language quoted from Anheuser-Busch is taken from this passage:The Union has the option, which it recognizes, to institute an action under 29 U.S.C. " 185 to enforce the Seidman award.... To allow the Union to ignore its peaceful option while it seeks to enforce the award in the streets would in fact render the valuable arbitration process largely nugatory. A request for judicial enforcement may be viewed as the final step in the arbitration process.Id. at 747. The court believes that this passage forgets that unions legally are entitled to enforce their rights by striking. Only to the extent they have contracted away their right to strike over disputes may they be enjoined from doing so. The contours of an agreement not to strike must be determined as a matter of contract interpretation. Reference to enforcing the arbitrator's award "in the streets," as opposed to exercise of the union's "peaceful option," may beg the question of whether the Union's agreement not to strike ends with the arbitrator's rendering of a decision. Further, it is questionable whether the arbitration process is rendered "largely nugatory" if parties are hindered in their efforts to overturn arbitrators' decisions. | Unions legally are entitled to enforce their rights to strike and only to extent they have contracted away their right to strike over disputes may they be enjoined from doing so. Norris-La Guardia Act, S 4, 29 U.S.C.A. S 104; Labor Management Relations Act, 1947, S 301(a), 29 U.S.C.A. S 185(a). | Do the labor union has a general right to strike? | 001396.docx | LEGALEASE-00118471-LEGALEASE-00118472 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14103 | Cebe Farms v. United States, 116 Fed. Cl. 179 | 148+2.1 | A physical taking constitutes "a permanent and exclusive occupation by the government that destroys the owner's right to possession, use, and disposal of the property." Boise Cascade Corp., 296 F.3d at 1353; see also Loretto, 458 U.S. at 426, 102 S.Ct. 3164 ("[A] permanent physical occupation authorized by government is a taking...."); Hendler, 952 F.2d at 1375 ("A physical occupation of private property by the government which is adjudged to be of a permanent nature is a taking...."). A physical taking occurs when "government encroaches upon or occupies private land for its own proposed use." Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001); see also Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 832, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (explaining that a "permanent physical occupation" occurs "where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises"). "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." Tahoe"Sierra Pres. Council, Inc., 535 U.S. at 322, 122 S.Ct. 1465 (citing United States v. Pewee Coal Co., 341 U.S. 114, 115, 71 S.Ct. 670, 95 L.Ed. 809 (1951)); see also Yee, 503 U.S. at 522, 112 S.Ct. 1522 ("Where the government authorizes a physical occupation of property (or actually takes title) the Takings Clause generally requires compensation."). A permanent physical occupation "is a per se physical taking ... because it destroys, among other rights, a property owner's right to exclude." John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1356 (Fed.Cir.2006), aff'd on other grounds, 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008); accord Kaiser Aetna v. United States, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (characterizing the right to | "Physical taking" under the Fifth Amendment constitutes a permanent and exclusive occupation by the government that destroys the owner's right to possession, use, and disposal of the property. U.S. Const. Amend. 5. | What are physical takings? | 001440.docx | LEGALEASE-00118560-LEGALEASE-00118561 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 14104 | PBM Prod. v. Mead Johnson Nutrition Co., 678 F. Supp. 2d 390 | 237+1.6 | Virginia's choice of law rules govern this diversity defamation action. See Klaxon v. Stentor, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Virginia applies the lex loci delicti rule, that is, the law of the place of the wrong, to defamation actions. See, e.g., Heishman, Inc. v. Fox Television Stations, Inc., 217 F.Supp.2d 690, 694 n. 5 (E.D.Va.2002). Because Mead Johnson alleges that the defamatory Press Release was issued in Virginia, Virginia law applies. (See Mead Johnson Mot. Summ. J. 11"12); see also Katz v. Odin, Feldman & Pittleman, P.C., 332 F.Supp.2d 909, 915 n. 4 (E.D.Va.2004). | Virginia applies the lex loci delicti rule, that is, the law of the place of the wrong, to defamation actions. | Is lex loci delicti applied to defamation cases? | 001481.docx | LEGALEASE-00118490-LEGALEASE-00118491 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14105 | Brown v. E.F. Hutton & Co., 610 F. Supp. 76 | 25T+113 | But even if the Defendant should have made his demand earlier, delay alone does not constitute a default or a waiver of a valid arbitration clause. Since there is a strong federal policy favoring arbitration, "any party arguing waiver of arbitration bears a heavy burden of proof." Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1025 (11th Cir.1982) (and cases cited therein). A party opposing arbitration must also demonstrate that he had been prejudiced by the delay. See Gavlick Construction Co. v. H.F. Campbell Co., 526 F.2d 777, 783 (3rd Cir.1975); Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2nd Cir.1968). This Plaintiff has failed to do. | There is a strong federal policy favoring arbitration, and thus any party arguing waiver of arbitration bears a heavy burden of proof. | Who bears the burden of proof in waiving arbitration? | 001666.docx | LEGALEASE-00118710-LEGALEASE-00118711 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14106 | Rush v. Oppenheimer & Co., 779 F.2d 885 | 25T+113 | Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring arbitration for dispute resolution. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); see also Coenen v. R.W. Pressprich & Co., 453 F.2d 1209, 1212 (2d Cir.), cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972).Clearly, the policies underlying the federal arbitration act favor enforcement of agreements to arbitrate disputes. See In re Conticommodity Services Inc., 613 F.2d 1222, 1224"25 (2d Cir.1980) (quoting 9 U.S.C. " 4). | Policies underlying federal arbitration statute (9 U.S.C.A. S 1 et seq.) favor enforcement of agreements to arbitrate disputes. | Do the policies underlying the Federal Arbitration Act favor enforcement of agreements to arbitrate disputes? | 001679.docx | LEGALEASE-00118723-LEGALEASE-00118724 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 14107 | Oneida Indian Nation of New York v. New York, 194 F. Supp. 2d 104 | 209+201 | Courts analyzing Indian land claim actions have consistently rejected the use of delay-based defenses. See Oneida Indian Nation of New York v. State of New York, 691 F.2d 1070, 1084, 1097 (2d Cir.1982) (rejecting the validity of delay-based defenses, specifically laches, in Indian land claim action); Oneida Test Case"Circuit, 719 F.2d 525, 538 (2d Cir.1983) (recognizing that "we have recently rejected that [Indian land claim] actions are time barred"); Oneida Indian Nation of New York v. State of New York, 860 F.2d 1145, 1149 (2d Cir.1988) (recognizing its previous rejection of laches and other delay-based defenses in Indian land claim actions); Oneida II, 470 U.S. at 262 n. 10, 105 S.Ct. 1245 (Stevens, J., dissenting) ("The Court of Appeals' rejection of delay-based defenses, 719 F.2d 525, 538 (2d Cir.1983), will remain the law of the Circuit until it is reversed by this Court, and will no doubt apply to the numerous Indian claims pending in the lower courts."); Seneca Nation of Indians v. State of New York, 93"CV"688A, 1994 WL 688262, at *2 (W.D.N.Y. Oct.28, 1994) ("The Second Circuit has definitively ruled that delay-based defenses founded on both state law and federal law are inapplicable to claims under the Nonintercourse Act."); Seneca v. New York, 26 F.Supp.2d 555, 573 (W.D.N.Y.1998) (following the Supreme Court's reasoning in Oneida II and rejecting the defense of laches). The law on this issue overwhelmingly supports striking Defendants' laches and adverse possession defenses as legally insufficient. | Laches and adverse possession were not permissible defenses to Oneida Indian Nations' claims under Nonintercourse Act. 25 U.S.C.A. S 177. | Is laches a permissible defense under the Indian Nonintercourse Act? | Indians - Memo 26 - TH.doc | LEGALEASE-00006251-LEGALEASE-00006253 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14108 | Adelson v. Harris, 973 F. Supp. 2d 467 | 302+358 | The Nevada Anti"SLAPP statute protects "good faith communication in furtherance of the right to petition," which it defines as "any:(1) Communication that is aimed at procuring any governmental or electoral action, result or outcome;(2) Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity; or(3) Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law,which is truthful or is made without knowledge of its falsehood." N.R.S. " 41.637. Defendants contend that the Petition and Press Release fall within the first and third prongs of the statute, and were either truthful or made without knowledge of their falsehood. | Under Nevada law, political advocacy group's internet petition and press release requesting that presidential candidate not to accept funds from casino owner were not "communications in direct connection with issue under consideration by judicial or executive body," for purposes of anti-SLAPP (strategic lawsuit against public participation) statute, even though petition arose following publication of news report of former casino employee's wrongful termination suit, in which he alleged that owner had "personally approved" of prostitution in his Chinese casinos. West's NRSA 41.660. | What is communication in good faith in defamation law? | 002285.docx | LEGALEASE-00118603-LEGALEASE-00118604 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |
| 14109 | Bugenig v. Hoopa Valley Tribe, 266 F.3d 1201 | 209+126 | Congress' power over Native American affairs "is unusual in our federal system because it includes general federal authority to legislate over health, safety, and morals." Cohen at 219. It is "now generally recognized that the power derives from federal responsibility for regulating commerce with Indian tribes and for treaty making." McClanahan v. State Tax Comm'n, 411 U.S. 164, 172 n. 7, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) (citing U.S. Const. art. I, " 8, cl. 3; U.S. Const. art. II, " 2, cl. 2. The Supreme Court has referred to Congress' power over Indian affairs as "plenary" and has noted that,"in the exercise of the war and treaty powers, the United States overcame the Indians and took possession of their lands, sometimes by force, leaving them ... needing protection against the selfishness of others and their own improvidence. Of necessity the United States assumed the duty of furnishing that protection, and with it the authority to do all that was required to perform that obligation and to prepare the Indians to take their place as independent, qualified members of the modern body politic." Morton v. Mancari, 417 U.S. 535, 552, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) (quoting Bd. of County Comm'rs v. Seber, 318 U.S. 705, 715, 63 S.Ct. 920, 87 L.Ed. 1094 (1943)). Of course, the power of Congress in Indian affairs, although "plenary," is not absolute; it must be "rationally related" to the protection of Indians. Del. Tribal Bus. Comm. v. Weeks, 430 U.S. 73, 86, 97 S.Ct. 911, 51 L.Ed.2d 173 (1977).] | The power of Congress in Indian affairs, although plenary, is not absolute; it must be rationally related to the protection of Indians. U.S.C.A. Const. Art. 1, S 8, cl. 3; U.S.C.A. Art. 2, S 2, cl. 2. | Is the power of Congress in Indian affairs absolute? | 003222.docx | LEGALEASE-00118514-LEGALEASE-00118515 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 14110 | Jones v. Dugger, 518 So. 2d 295 | 203+510 | We agree with the analysis employed by the courts in Head and Ladd and find that the "year and a day" rule is a rule of evidence rather than an element of the offense of murder. We think the rule is no longer viable in our jurisprudence because when the reason for any rule of law ceases the rule should be discarded. Randolph v. Randolph, 146 Fla. 491, 1 So.2d 480 (1941). While Jones's counsel did not have the benefit of our view on the subject when advising his client, we think he certainly was justified in his skepticism regarding the potential benefit of the rule to Jones. | The "year and a day" rule is a rule of evidence rather than an element of the offense of murder. | Is the year and a day rule considered as a rule of evidence rather than an element of offense of murder? | 001559.docx | LEGALEASE-00118996-LEGALEASE-00118997 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14111 | Morrow v. City of Cleveland, 73 Ohio App. 460 | 302+6 | In Jones Commentaries on Evidence, 2nd Edition, page 647, parag. 370, the rule is stated as follows:"Facts judicially noticed are not ordinarily required to be pleaded, and if pleaded matter conflicts with the judicial knowledge of the court it plainly follows that the latter control * * * | Facts judicially noticed are not ordinarily required to be pleaded, and, if pleaded matter conflicts with judicial knowledge of the court, the latter controls. | Should facts judicially noticed be pleaded? | 001581.docx | LEGALEASE-00119053-LEGALEASE-00119054 | Condensed, SA | 0.45 | 0 | 1 | 0 | 1 | |
| 14112 | Levy v. Delaware, L. & W.R. Co., 211 A.D. 503 | 157+1 | The court may, upon trial, where the issue is in actual dispute, take judicial notice of such facts, as that the government, during the war, was in possession and control of certain property. Wilks v. N. Y. Tel. Co., 208 App. Div. 542"546, 203 N. Y. S. 665; Davidson v. Payne (C. C. A.) 289 F. 69. But judicial knowledge will not commonly aid a pleading, nor be exercised to regulate the mode of bringing controversies into court and of stating and conducting them. Arkansas v. Kansas & T. Coal Co., 183 U. S. 185, 22 S. Ct. 47, 46 L. Ed. 144; 31 Cyc. 47. | Judicial knowledge will not commonly aid pleading, nor be exercised to regulate mode of bringing controversies into court, and of stating and conducting them. | Does judicial notice aid pleading? | 001587.docx | LEGALEASE-00119059-LEGALEASE-00119061 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 14113 | United States v. Cramer, 137 F.2d 888 | 384+1 | Two elements are essential to a conviction for treason: a treasonable intent and an overt act in manifestation of that intent. From all the testimony, including appellant's own, the jury could properly find that he knew some improper enterprise was afoot and that he intended to aid the enemy in its prosecution. When one's country, though adopted, is at war, one cannot, without risk of conviction of giving aid and comfort to the enemy, freely associate even with old friends or assist them even in comparatively small ways, as by banking their funds or intermediating with others for them" once one knows or reasonably suspects them to be here in the role of illegal invaders, whether armed physically or with the more modern, but nonetheless destructive, weapon of propaganda. The jury could, therefore, properly find as it did, provided it also relied on a legally sufficient overt act, testified to by two witnesses. Appellant's attack on the sufficiency of the overt acts considered by the jury brings us to the principal issue on this appeal. | A treasonable intent, and an overt act in manifestation of that intent, are essential elements to a conviction for "treason". Cr.Code S 1, 18 U.S.C.A. S 1; U.S.C.A. Const. art. 3, S 3, cl. 1. | Is an overt act in manifestation of the intent an essential element to the conviction for treason? | Treason - Memo 7 - MS.docx | ROSS-003298633-ROSS-003298634 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 14114 | Lummi Indian Tribe v. Whatcom Cty., Wash., 5 F.3d 1355 | 209+120 | We hold that the parcels of land approved for alienation by the federal government and then reacquired by the Tribe did not then become inalienable by operation of the Nonintercourse Act. Because the parcels are alienable, they are also taxable. | Parcels of land approved for alienation by federal government and then reacquired by tribe did not then become inalienable by operation of Nonintercourse Act; because parcels remained alienable, they were also taxable. 25 U.S.C.A. S 177. | Would land be rendered inalienable upon reacquisition by a tribe? | Indians - Memo 27 - TH.doc | LEGALEASE-00006860-LEGALEASE-00006861 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14115 | United States v. Washington, 853 F.3d 946 | 209+123 | The United States may abrogate treaties with Indian tribes, just as it may abrogate treaties with fully sovereign nations. However, it may abrogate a treaty with an Indian tribe only by an Act of Congress that "clearly express[es an] intent to do so." Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 202, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999). Congress has not abrogated the Stevens Treaties. So long as this is so, the Tribes' rights under the fishing clause remain valid and enforceable. The United States, as trustee for the Tribes, may bring suit on their behalf to enforce the Tribes' rights, but the rights belong to the Tribes. | United States may abrogate treaties with Indian tribes, just as it may abrogate treaties with fully sovereign nations, but only by Act of Congress that clearly expresses intent to do so. | Can the United States abrogate a treaty it entered with an Indian tribe? | 001771.docx | LEGALEASE-00118899-LEGALEASE-00118900 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 14116 | United States v. Washington, 853 F.3d 946 | 209+123 | The United States may abrogate treaties with Indian tribes, just as it may abrogate treaties with fully sovereign nations. However, it may abrogate a treaty with an Indian tribe only by an Act of Congress that "clearly express[es an] intent to do so." Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 202, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999). Congress has not abrogated the Stevens Treaties. So long as this is so, the Tribes' rights under the fishing clause remain valid and enforceable. The United States, as trustee for the Tribes, may bring suit on their behalf to enforce the Tribes' rights, but the rights belong to the Tribes. | United States may abrogate treaties with Indian tribes, just as it may abrogate treaties with fully sovereign nations, but only by Act of Congress that clearly expresses intent to do so. | How can the United States abrogate a treaty with an Indian tribe? | 001773.docx | LEGALEASE-00118828-LEGALEASE-00118829 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 14117 | Shy v. Navistar Int'l Corp, 781 F.3d 820 | 25T+114 | The parties do not dispute for purposes of this appeal that " 8.4 is an arbitration agreement"albeit one with a narrow scope"to which the Federal Arbitration Act (FAA) applies. The First Circuit has persuasively held that the following elements, all present in this case as well, amounted to "arbitration in everything but name": finality, "an independent adjudicator, substantive standards (the contractual terms ...), and an opportunity for each side to present its case." See Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 7 (1st Cir.2004). The FAA applies even when the agreement is limited to only a particular class of disputes. Id. | The Federal Arbitration Act applies even when the agreement is limited to only a particular class of disputes. 9 U.S.C.A. S 1 et seq. | Does the Federal Arbitration Act apply when an arbitration agreement is limited to a particular class of disputes? | 002145.docx | LEGALEASE-00119105-LEGALEASE-00119106 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 14118 | Nichols v. Stapleton, 877 F.2d 1401 | 25T+114 | Although Nichols filed his notice of appeal before the Judicial Improvements Act's effective date, the Act deprives us of jurisdiction. Our decisions have made clear that "[i]t is a rule of construction that statutes are ordinarily given prospective effect. But when a statute is addressed to remedies or procedures and does not otherwise alter substantive rights, it will be applied to pending cases." Friel v. Cessna Aircraft Co., 751 F.2d 1037, 1039 (9th Cir.1985) (footnote and citations omitted) (addressing an amendment to the statute of limitations in 46 U.S.C. " 763a (1982)); see also United States v. Haughton, 413 F.2d 736, 738 (9th Cir.1969) (discussing application of new procedure under the Military Selective Service Act of 1967 to pending case). The Judicial Improvements Act, by denying interlocutory appeals of arbitration orders, addresses remedies and procedures. It thus applies retrospectively. | Amendment of the Federal Arbitration Act removing appellate jurisdiction over interlocutory arbitration orders applies retrospectively because it addresses remedies and procedures, and does not otherwise alter substantive rights. 9 U.S.C.A. S 15. | Does the Judicial Improvement Act apply retroactively? | 002158.docx | LEGALEASE-00119118-LEGALEASE-00119119 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 14119 | AT&T Mobility LLC v. Concepcion, 563 U.S. 333 | 25T+114 | The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." Volt, 489 U.S., at 478, 109 S.Ct. 1248; see also Stolt"Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. """", """", 130 S.Ct. 1758, 1763, 176 L.Ed.2d 605 (2010). This purpose is readily apparent from the FAA's text. Section 2 makes arbitration agreements "valid, irrevocable, and enforceable" as written (subject, of course, to the saving clause); " 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement"; and " 4 requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement (assuming that the "making of the arbitration agreement or the failure ... to perform the same" is not at issue). In light of these provisions, we have held that parties may agree to limit the issues subject to arbitration, Mitsubishi Motors Corp. v. Soler Chrysler"Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), to arbitrate according to specific rules, Volt, supra, at 479, 109 S.Ct. 1248, and to limit with whom a party will arbitrate its disputes, Stolt"Nielsen, supra, at """", 130 S.Ct. at 1773. | The principal purpose of the Federal Arbitration Act (FAA) is to ensure that private arbitration agreements are enforced according to their terms. 9 U.S.C.A. SS 2-4. | What is the principal purpose of Federal Arbitration Act (FAA)? | 002180.docx | LEGALEASE-00119140-LEGALEASE-00119141 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14120 | Ex parte Compass Bank, 77 So. 3d 578 | 13+1 | ""[A] "cause of action" grows out of the wrongful act, and not the various forms of damages that may flow from the single wrongful act." Sessions [v. Jack Cole Co.], 276 Ala. [10,] 12, 158 So.2d [652,] 654 [(1963)]. | A "cause of action" grows out of the wrongful act, and not the various forms of damages that may flow from the single wrongful act. | Does a cause of action grow out of a wrongful act? | Action - Memo 15 - MS.docx | ROSS-003283964-ROSS-003283965 | Condensed, SA | 0.37 | 0 | 1 | 0 | 1 | |
| 14121 | Gonzales v. California Dep't of Corr., 739 F.3d 1226 | 13+1 | "Cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty." Crowley v. Katleman, 8 Cal.4th 666, 34 Cal.Rptr.2d 386, 881 P.2d 1083, 1090 (1994). "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." Eichman v. Fotomat Corp., 147 Cal.App.3d 1170, 197 Cal.Rptr. 612, 614 (1983). "If the same primary right is involved in two actions, judgment in the first bars consideration not only of all matters actually raised in the first suit but also all matters which could have been raised." Id. (emphasis added). "[U]nder the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 108 Cal.Rptr.3d 806, 230 P.3d 342, 348 (2010). | Under California law, a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. | What does a cause of action comprise of? | Action - Memo 2 - MS.docx | ROSS-003295962-ROSS-003295963 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |
| 14122 | Bonneville Power Admin. v. F.E.R.C., 422 F.3d 908 | 145+1.5 | The import of these provisions is clear. Congress was careful to specify which utilities fall within the definition of "public utility." Even though governmental and municipal utilities are public in normal parlance, they are not "public utilities" under the FPA. | Even though governmental and municipal utilities are public in normal parlance, they are not "public utilities" under the Federal Power Act (FPA). Federal Power Act, SS 1, 321 et seq., as amended, 16 U.S.C.A. SS 792, 791a et seq. | Can governmental and municipal utilities be termed as public utilities under the Federal Power Act? | Electricity - Memo 12 - JS.docx | ROSS-003282984-ROSS-003282985 | Condensed, SA | 0.11 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14123 | In re Pennichuck Water Works, 160 N.H. 18 | 317A+195 | A party seeking to set aside an order of the PUC has the burden of demonstrating that the order is contrary to law or, by a clear preponderance of the evidence, that the order is unjust or unreasonable. RSA 541:13 (2007); see Appeal of Verizon New England, 153 N.H. 50, 56, 889 A.2d 1027 (2005).Findings of fact by the PUC are presumed prima facie lawful and reasonable. RSA 541:13; see Appeal of Verizon New England, 153 N.H. at 56, 889 A.2d 1027. The appealing party may overcome this presumption only by showing that there was no evidence from which the PUC could conclude as it did. Legislative Utility Consumers' Council v. Public Utilities Comm'n, 118 N.H. 93, 99, 383 A.2d 89 (1978); see Appeal of Basani, 149 N.H. 259, 262, 817 A.2d 957 (2003). Further, because the PUC is not bound by the technical rules of evidence, the admission of hearsay or technically irrelevant or immaterial evidence is insufficient to render its order unjust, unreasonable, or unlawful. Appeal of McKenney, 120 N.H. 77, 81, 412 A.2d 116 (1980); see RSA 541:17 (2007). | The appealing party may overcome presumption that findings of fact by the Public Utilities Commission (PUC) are presumed prima facie lawful and reasonable only by showing that there was no evidence from which the PUC could conclude as it did. RSA 541:13. | Are findings of fact by the Public Utilities Commission presumed lawful and reasonable? | Electricity - Memo 23 - RK.docx | ROSS-003312137-ROSS-003312138 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 14124 | Glisson v. State, 188 Ga. App. 152 | 207+5 | OCGA " 16-6-22(a) provides: "A person commits the offense of incest when he engages in sexual intercourse with a person to whom he knows he is related either by blood or by marriage as follows: (1) Father and daughter or stepdaughter; (2) Mother and son or stepson; (3) Brother and sister of the whole blood or of the half blood; (4) Grandparent and grandchild; (5) Aunt and nephew; or (6) Uncle and niece." (Emphasis supplied.) Thus, the Georgia statute, while prohibiting sexual relations between certain persons related only by affinity, does not include the stepgrandfather-stepgranddaughter relationship in its definition of incest. It has always been the law that criminal statutes must be strictly construed against the State, Mitchell v. State, 239 Ga. 3(1), 235 S.E.2d 509 (1977), and since the statute does not include a prohibition against sexual intercourse between a "stepgrandfather" and "stepgranddaughter," it is excluded under the maxim expressio unius est exclusio alterius. | Incest statute, while prohibiting sexual relations between certain persons related only by affinity, did not include stepgrandfather-stepgranddaughter relationship and thus, stepgrandfather could not be convicted of incest for sexual conduct with stepgranddaughter. O.C.G.A. S 16-6-22(a). | Does sexual intercourse between step-grandfather and step-grandchild amount to incest? | Incest - Memo 49 - JS.docx | ROSS-003285633-ROSS-003285634 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 14125 | Jefferson Cty. Sch. Dist. No. R-1 v. Indus. Comm'n, 698 P.2d 1350 | 15A+1458 | In a proper case, the doctrines of res judicata and collateral estoppel may be applied to administrative proceedings. Umberfield, supra. When an issue, rather than an entire claim for relief, has been fully litigated in a prior suit, collateral estoppel is applicable to preclude relitigation of that issue in any cause of action different from that involved in the original controversy. However, collateral estoppel is not applicable to preclude litigation of issues which could have been litigated in the first proceeding, but were not. Umberfield, supra; Pomeroy v. Waitkus, 183 Colo. 344, 517 P.2d 396 (1973). | In proper case, doctrines of res judicata and collateral estoppel may be applied to administrative proceedings. | Is the doctrine of collateral estoppel applicable to administrative proceedings? | Administrative Law - Memo 171 - RK.docx | ROSS-003325673-ROSS-003325674 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14126 | Hetherington v. Camp Bird Min., Leasing & Power Co., 70 Colo. 531 | 145+11(1) | The question, then, is, Was the plaintiff, upon the above statement of facts, entitled to payment for the power furnished by the Brant Company to the Camp Bird Company? Plaintiff in error claims that, being in fact the owner from February 6th forward, he is entitled to recover for the power furnished, as rent, profit, and income from the said premises. Defendant in error, on the other hand, contends that electric power thus furnished does not partake of the character of rent and profit from realty, but that it is, in fact, personalty, being a manufactured article. It is well settled that electricity made by artificial means is a product of manufacture, and is personal property. Terrace Water Co. v. San Antonio L. & P. Co., 1 Cal. App. 511, 82 Pac. 562; Burke v. Meade, 159 Ind. 252, 64 N. E. 880; Beggs v. Edison E. Co., 96 Ala. 295, 11 South. 381, 38 Am. St. Rep. 94; Commonwealth v. Keystone E. L. Co., 193 Pa. 245, 44 Atl. 326; People ex rel. Brush C. Mfg. Co. v. Wemple, 129 N. Y. 543, 29 N. E. 808, 14 L. R. A. 708. | Electricity made by artificial means is a product of manufacture, and is personal property. | Is electricity made by artificial means a product of manufacture and personal property? | Electricity - Memo 33 - RK.docx | ROSS-003308776-ROSS-003308778 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14127 | Vill. of Tiki Island v. Ronquille, 463 S.W.3d 562 | 148+2.1 | The supreme court has cautioned that these factors "do not comprise a formulaic test." Id. For example, "the economic impact of a regulation may indicate a taking even if the landowner has not been deprived of all economically beneficial use of his property." Id. We must consider all of the surrounding circumstances, Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex.1998), and apply "a fact-sensitive test of reasonableness." City of College Station v. Turtle Rock Corp., 680 S.W.2d 802, 804 (Tex.1984). | The economic impact of a regulation may indicate a taking even if the landowner has not been deprived of all economically beneficial use of his property. Tex. Const. art. 1, S 17. | Can the economic impact of a regulation lead to a taking? | 002397.docx | LEGALEASE-00119498-LEGALEASE-00119499 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 14128 | Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 | 148+2.1 | In Penn Central Transportation Co. v. New York City, supra, the Court surveyed some of the general principles governing the Takings Clause. The Court noted that no "set formula" existed to determine, in all cases, whether compensation is constitutionally due for a government restriction of property. Ordinarily, the Court must engage in "essentially ad hoc, factual inquiries." Id., at 124, 98 S.Ct., at 2659. But the inquiry is not standardless. The economic impact of the regulation, especially the degree of interference with investment-backed expectations, is of particular significance. "So, too, is the character of the governmental action. A "taking" may more readily be found when he interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good."] ] Ibid. (citation omitted). | Economic impact of government regulation, especially the degree of interference with investment-backed expectations, is of particular significance in determining whether government regulation constitutes a "taking" within meaning of taking clause as is a character of the governmental action. U.S.C.A.Const.Amends. 5, 14. | When can a taking be readily found? | Eminent Domain - Memo 82 - RK.docx | LEGALEASE-00007985-LEGALEASE-00007986 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14129 | Shalett v. Brownell-Kidd Co., 153 So.2d 425 | 289+528 | It is well established by the jurisprudence that commercial partnerships are exclusively confined to movable property and if the firm owned immovable property the partners became co-owners of it, in their individual capacity. Smith v. Sinott, 44 La.Ann. 51, 10 So. 413; Brinson v. Monroe Automobile & Supply Co., 180 La. 1064, 158 So. 558, 96 A.L.R. 1206; Skillman v. Purnell, 3 La. 494; McKee v. Griffin, 23 La.Ann. 417, 419; Baca v. Ramos, 10 La. 417, 420; Hall v. Sprigg, 7 Mart. (O.S.) 243, 244; Tippett v. Jett, 3 Rob. 313; Millaudon v. New Orleans & C. Railroad Co., 3 Rob. 488. | Commercial partnerships are exclusively confined to ownership of movable property, and when a commercial partnership purports to purchase immovable property, the partners become co-owners of it in their individual capacity. LSA-C.C. art. 2824. | Is a commercial partnership confined to movable property? | Partnership - Memo 77 - RK.docx | ROSS-003282359 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 14130 | York Rd. Realty Co. v. Cheltenham Twp., 136 A.3d 1047 | 148+271 | York Road in its Complaint/Petition also alleged a claim under Section 714 of the Code, which states: "All condemnors ... shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access or injury to surface support, whether or not any property is taken." 26 Pa.C.S. " 714. This Court has "recognize[d] the issue of consequential damages to property due to work by a municipality on its own abutting property. When access to property is interfered with, it creates a right to compensation by the land owner from the government." Borough of Walnutport v. Dennis, 13 A.3d 541, 550 (Pa.Cmwlth.2010). A consequential damage claim under Section 714 of the Code is separate and distinct from a claim for a de facto taking under Section 502(c)(1) of the Code. Colombari v. Port Auth. of Allegheny Cnty., 951 A.2d 409 (Pa.Cmwlth.2008). | Claim under statute governing consequential damages resulting from condemnation is separate and distinct from a claim for a de facto taking. 26 Pa.C.S.A. SS 502(c)(1), 714. | Is a claim for consequential damages separate and distinct from a claim of a de facto taking? | 001894.docx | LEGALEASE-00119658-LEGALEASE-00119659 | Order, SA | 0.81 | 1 | 0 | 0 | 1 | |
| 14131 | Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Virginia, 464 U.S. 30 | 393+347 | We granted certiorari to review the judgment of the Court of Appeals. """ U.S. """", 104 S.Ct. """", 77 L.Ed.2d """ (1983). We now reverse. Our analysis of the statute and its legislative history convinces us that in passing the Relocation Act Congress addressed the needs of residential and business tenants and owners, and did not deal with the separate problem posed by the relocation of utility service lines. We hold, therefore, that the Relocation Act did not change the long-established common law principle that a utility forced to relocate from a public right-of-way must do so at its own expense; it is not a "displaced person" as that term is defined in the Act. | Telephone company, which was required to relocate some of its transmission facilities because of street realignment resulting from federally funded urban renewal project, was not a "displaced person" entitled to relocation benefits under the Uniform Relocation Assistance and Real Property Acquisitions Policies Act since the Act did not change the common-law principle that utility forced to relocate from public right-of-way must do so at its own expense. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, SS 101 et seq., 202(a)(1), 42 U.S.C.A. SS 4601 et seq., 4622(a)(1). | Should public utilities bear the expense of their relocation for the fulfillment of a public need? | 001980.docx | LEGALEASE-00119678-LEGALEASE-00119679 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 14132 | Piven v. Comcast Corp., 397 Md. 278 | 401+4 | Maryland has long recognized a distinction between local actions, which must be brought where the subject matter of the action is located, and transitory actions, which ordinarily may be brought wherever the defendant works, lives, or has a principal office. The Court first explained the derivation and purpose of the distinction in Crook v. Pitcher, 61 Md. 510, 513 (1884) and recounted that explanation and provided a broader history in Kane v. Schulmeyer, 349 Md. 424, 708 A.2d 1038 (1998). As we observed in Kane, the venue doctrine "has an ancient lineage, one that originally was tied to the early, and long-since discarded, role of jurors as knowledgeable witnesses rather than as impartial determiners of fact based on evidence heard in court." Id. at 430, 708 A.2d at 1041. It was important, in that earlier time, for plaintiffs to state with precision not just the county but also the particular district or "hundred" within which the cause of action arose, in order that the sheriff might summon as jurors persons who were presumed to be acquainted with the nature of the transaction they were chosen to try. | Transitory actions can ordinarily be brought wherever the defendant works, lives, or has a principal office. | Can transitory actions be brought where the defendant works or lives? | Venue - Memo 57 - ANG.docx | ROSS-003325091-ROSS-003325093 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14133 | Circuit City Stores v. Adams, 194 F.3d 1070 | 25T+124 | This is an appeal from the district court's final order compelling arbitration under the Federal Arbitration Act, 9 U.S.C.A. " 1, et seq. (West 1999) ("FAA"). We have jurisdiction pursuant to 28 U.S.C. " 1291. The district court, however, lacked the authority, as a matter of substantive law, to compel arbitration because the Federal Arbitration Act does not apply to this case. In Craft v. Campbell Soup Co., 177 F.3d 1083, 1094 (9th Cir.1999), we held that the FAA does not apply to labor or employment contracts. | Arbitration agreement signed by employee at time of job application was an "employment contract," and thus the Federal Arbitration Act (FAA) was inapplicable to suit by employee against employer under state fair employment statute, and district court lacked authority under the FAA to compel arbitration, notwithstanding a disclaimer in the agreement stating that it did not form a contract of employment and in no way altered the at-will status of employee's employment, as the agreement was a condition precedent to employment. 9 U.S.C.A. SS 1 et seq., 4. | Does the Federal Arbitration Act (FAA) apply to labor contracts? | 002773.docx | LEGALEASE-00119708-LEGALEASE-00119709 | Condensed, SA, Sub | 0.08 | 0 | 1 | 1 | 1 | 1 |
| 14134 | Hardy v. Clendening, 25 Ark. 436 | 386+3 | The court, sitting as a jury, found that the property belonged to the plaintiff, at the time of the sale, but assumes, or seems to have assumed, that the purchase of the property at the constable's sale, by the defendant, did not lay him liable to an action of trespass de bonis asportatis, and therefore not to an action of replevin in the cepit. In this the court erred, as any unlawful exercise of authority over the goods of another will support trespass, although there may not have been any exercise of force. An actual and forcible dispossession of the plaintiff need not be shown. An ignoring and disregard of the plaintiff's rights, to such an extent as compels her to seek redress at a legal forum, where the defendant was advised of the nature of those rights before he purchased, is all that is necessary for her to show. Gibbs v. Chase, 10 Mass., 125; Robinson v. Mansfield, 13 Pick., 130; Phillips v. Hall, 8 Wend., 610; Allen v. Crary, 10 Wend., 349; Fonda v. Van Horne, 15 Wend., 631; Noff v. Thompson, 8 Barb., 213. | Any unlawful exercise of authority over the goods of another will support trespass, even though no force may be exerted. Thus trespass will lie against the purchaser, with notice, of the goods of a third person at a sale under execution. | Can an unlawful exercise of authority over the goods of another support an action for trespass? | Trespass - Memo 83 - TH.docx | ROSS-003298107-ROSS-003298109 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14135 | Mennen v. Easter Stores, 951 F. Supp. 838 | 231H+826 | A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable and thus forces the employee to quit. Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir.1996) (citing the "Bunny Bread " standards for this kind of claim found in Johnson v. Bunny Bread Co., 646 F.2d 1250 (8th Cir.1981)); Parrish v. Immanuel Medical Ctr., 92 F.3d 727, 732 (8th Cir.1996) (citing the Bunny Bread standards); Allen v. Bridgestone/Firestone, Inc., 81 F.3d 793, 796 (8th Cir.1996) (citing the Bunny Bread standards); Bradford v. Norfolk S. Corp., 54 F.3d 1412, 1420 (8th Cir.1995) (citing the Bunny Bread standards); West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir.1995) (citing the Bunny Bread standards); Smith v. World Ins. Co., 38 F.3d 1456, 1460 (8th Cir.1994) (citing Bunny Bread ); Hukkanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101, 3 F.3d 281, 284 (8th Cir.1993) (citing Bunny Bread ); Smith v. Cleburne County Hosp., 870 F.2d 1375, 1381 (8th Cir.), cert. denied, 493 U.S. 847, 110 S.Ct. 142, 107 L.Ed.2d 100 (1989); Southside Pub. Sch. v. Hill, 827 F.2d 270, 274 (8th Cir.1987). First, the conditions created by the employer must be such that a reasonable person would find them intolerable. Tidwell, 93 F.3d at 494; Parrish, 92 F.3d at 732; Allen, 81 F.3d at 796; Bradford, 54 F.3d at 1420; Smith, 38 F.3d at 1460; Hukkanen, 3 F.3d at 284; Craft v. Metromedia, Inc., 766 F.2d 1205, 1217 (8th Cir.1985), cert. denied, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); Bunny Bread, 646 F.2d at 1256. Second, the employer's actions must have been taken with the intention of forcing the employee to quit. Tidwell, 93 F.3d at 494; Parrish, 92 F.3d at 732; Allen, 81 F.3d at 796; Smith, 38 F.3d at 1461; Hukkanen, 3 F.3d at 284; Bunny Bread Co., 646 F.2d at 1256. If there is no evidence that the defendant took actions with an intent to force the plaintiff to quit, even if conditions were intolerable, | "Constructive discharge" exists when employer deliberately renders employee's working conditions intolerable and thus forces employee to quit. | When does a constructive discharge exist? | Labor and Employment - Memo 58 - VP.docx | ROSS-003283821-ROSS-003283823 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14136 | Tidwell v. Meyer's Bakeries, 93 F.3d 490 | 78+1123 | To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit. See Bunny Bread Co., 646 F.2d at 1256. The plaintiff can satisfy the intent requirement by demonstrating that he quit as a reasonably foreseeable consequence of the employer's discriminatory actions. Hukkanen v. International Union of Operating Eng'rs, 3 F.3d 281, 285 (8th Cir.1993) | To constitute constructive discharge, employer must deliberately create intolerable working conditions with intention of forcing the employee to quit and employee must quit. | When does a constructive discharge exist? | 003271.docx | LEGALEASE-00119576-LEGALEASE-00119578 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 14137 | Resolute Forest Prod. v. U.S. Dep't of Agric., 219 F.Supp.3d 69 | 13+1 | That seems fair enough. After all, casebooks introduce the general theory that "where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803). Even if these words are sometimes true, the finer mechanics of what remedy is due are no doubt hidden in some latter-page, small-font-size footnotes. See generally Cal"Almond, Inc. v. Dep't of Agric., 67 F.3d 874, 879 (9th Cir. 1995), vacated on other grounds, 521 U.S. 1113, 117 S.Ct. 2501, 138 L.Ed.2d 1007 (1997) (explaining that "[d]espite the celebrated dictum in Marbury ..., not every right comes equipped with a guarantee of individual remediation for every violation of that right"). | Where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded. | "Is there a legal remedy by suit or action at law, when a legal right is invaded?" | 002475.docx | LEGALEASE-00120024-LEGALEASE-00120025 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14138 | Tinder v. Pinkerton Sec., 305 F.3d 728 | 25T+116 | The FAA mandates enforcement of valid, written arbitration agreements. 9 U.S.C. " 2; Circuit City Stores v. Adams, 532 U.S. 105, 111-12, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). To give effect to the federal policy favoring private arbitration, the FAA provides for stays of litigation when an issue presented in the case is referable to arbitration. 9 U.S.C. " 3; EEOC v. Waffle House, Inc., 534 U.S. 279, 122 S.Ct. 754, 761-62, 151 L.Ed.2d 755 (2002). Employment discrimination claims arising under Title VII are issues referable to arbitration. See Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361, 364 (7th Cir.1999); Perez v. Globe Airport Security Serv's, Inc., 253 F.3d 1280, 1284 (11th Cir.2001); Hooters of America, Inc. v. Phillips, 173 F.3d 933, 937 (4th Cir.1999); Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 837 (8th Cir.1997). We evaluate agreements to arbitrate under the same standards as any other contract. Metro East Center for Conditioning & Health v. Qwest Communications Internat'l, Inc., 294 F.3d 924, 927 (7th Cir.2002); Penn v. Ryan's Family Steak Houses, Inc., 269 F.3d 753, 758 (7th Cir.2001). Whether a binding arbitration agreement exists is determined under principles of state contract law. 9 U.S.C. " 2; First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Because all relevant events occurred in Wisconsin, Wisconsin law determines the validity of the agreement. Michalski v. Circuit City Stores, Inc., 177 F.3d 634, 636 (7th Cir.1999). | Whether a binding arbitration agreement exists is determined under principles of state contract law. 9 U.S.C.A. S 2. | Does state contract law determine the validity of arbitration agreements? | 002660.docx | LEGALEASE-00120054-LEGALEASE-00120055 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14139 | Stop Exploiting Taxpayers v. Jones, 211 Ariz. 576 | 268+108.7 | Cases finding rate setting for municipally-owned utilities to be an administrative act include: In re Mitchell, 44 Ill.App.2d 361, 194 N.E.2d 560 (1963); Johnson v. City of Alamogordo, 121 N.M. 232, 910 P.2d 308, 313 (1996); In re Sup.Ct. Adjudication of Initiative Petitions in Norman, Okla. No. 74"1 and 74"2, 534 P.2d 3, 7 (Okla.1975). Contra McKinley v. City of Fraser, 366 Mich. 104, 114 N.W.2d 341 (1962) (holding initiative power may be used to set city sewage disposal system charges); Walker, 856 P.2d at 349 (stating that fixing electric rates for municipally owned utility is legislative act). | Municipal ordinances setting rates charged for city-owned utility services were administrative acts rather than legislative ones, and thus, the ordinances were not subject to referendum, where the ordinances listed specific utility services that the city provided and contained schedules modifying the rates charged for those services, the ordinances did not affect the underlying statutes and ordinances through which the city owned and operated its utilities, and the rate changes were considered annually as part of the city's budget process. | Is fixing rates for electric power supplied by municipally owned utility a legislative act? | 002704.docx | LEGALEASE-00120187-LEGALEASE-00120188 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14140 | Starr Int'l Co. v. United States, 121 Fed. Cl. 428 | 148+2.2 | An illegal exaction occurs when the Government requires a citizen to surrender property the Government is not authorized to demand as consideration for action the Government is authorized to take. Aerolineas Argentinas, 77 F.3d at 1572"73 (illegal exaction occurs when "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation."); see also Trayco, Inc. v. United States, 994 F.2d 832, 837"38 (Fed.Cir.1993); Eastport S.S. Corp., 178 Ct.Cl. at 605, 372 F.2d at 1007"08. | An illegal exaction occurs under the Fifth Amendment when the Government requires a citizen to surrender property the Government is not authorized to demand as consideration for action the Government is authorized to take. U.S. Const. Amend. 5. | When does an illegal exaction occur under the law? | Eminent Domain - Memo 114 - RK.docx | ROSS-003297339-ROSS-003297341 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 14141 | Thiokol Chem. Corp. v. Morris Cty. Bd. of Taxation, 41 N.J. 405 | 238+44(2) | nquestionably agreements respecting the use of land can be made by an owner which fall short of a leasehold. License, permit, privilege and limited custodial use are open to consensual arrangements. 3 Powell, Real Property, s 428, pp. 514"519 (1952); compare Passaic & Hackensack Bridges v. State, 22 N.J.L. 593 (E. & A.1849). The difference between a lease and license or similar limited status, although difficult to distinguish at times, is that a lease gives exclusive possession of the premises against all the world, including the owner, while a license confers a privilege to occupy under the owner. Tips v. United States, 70 F.2d 525 (5 Cir. 1934); Case v. Kadota Fig Ass'n of Producers, 207 P.2d 86, 95 (Cal.D.Ct.App.1949), modified 35 Cal.2d 596, 220 P.2d 912 (Sup.Ct.1950); Strandholm v. Barbey, 145 Or. 427, 26 P.2d 46 (Sup.Ct.1933); 32 Am.Jur., Landlord & Tenant, s 5; 51 C.J.S. Landlord & Tenant s 202e(2); Powell, supra, s 428. A license or similar status is generally revocable at the pleasure of the owner and gives occupancy so far as necessary to engage in the agreed acts or the performance of agreed services and no further; a lease gives the right of exclusive possession for all purposes not prohibited by its terms. 32 Am.Jur., supra, s 5. | The difference between a "lease" and a "license" is that a lease gives exclusive possession of the premises against the world, including the owner, while a license confers a privilege to occupy under the owner. | What is the difference between a lease and a license? | Landlord and Tenant - Memo 73 - RK.docx | ROSS-003284970-ROSS-003284971 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14142 | Chaney v. Whitney, 107 So. 2d 471 | 233+531 | The legal obligation imposed under Article 120 is personal to the wife. It is imposed by law in conjunction with the marriage contract, and a third party is not privy to this obligation and cannot enforce it. A lease is similar to a sale, as there are three absolutely necessary essentials common to both"the thing, the price, and the consent. Article 2670, LSA-C.C. The relation of landlord and tenant can arise only from contract, either express or implied. See Salter v. Zoder, La.App., 37 So.2d 464. There was no contract either expressed or implied between the plaintiffs herein and the defendant. He was occupying the premises by consent and permission of his wife who was a legal possessor. We have seen that a wife can obligate herself for the benefit of her husband and become responsible for a community debt, such as rent. She could also furnish a home for the husband by virtue of her right to the legal occupancy of the premises in question as a co-owner. It would be a poor rule or law that would not work, so to speak, both ways. For example, if one or all four of these plaintiffs had chosen to occupy the premises in question with their wives, they could not be held liable for rent. By the same yardstick, the wife of the defendant is entitled to occupy the premises without the payment of rent and to have her husband free of any liability. | A "lease" is similar to a "sale", as there are three absolutely necessary essentials common to both: the thing, the price, and the consent. LSA-C.C. art. 2670. | Is a lease similar to a sale? | 002747.docx | LEGALEASE-00120236-LEGALEASE-00120237 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14143 | Kirton v. N. Chicago St. R. Co., 91 Ill. App. 554 | 386+4 | If an unlawful act cause immediate injury, whether it be intentional or not, trespass lies. Guille v. Swan, 19 John. 381; Maye v. Tappan, 23 Cal. 306. | If unlawful act causes immediate injury, whether it be intentional or not, trespass lies. | Can trespass occur if an unlawful act causes immediate injury regardless of it being intentional or not? | Trespass - Memo 97 - RK.docx | ROSS-003285013-ROSS-003285014 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 14144 | Rana v. Islam, 305 F.R.D. 53 | 221+180 | Determining whether consular immunity applies "involves a two-part inquiry." Ford v. Clement, 834 F.Supp. 72, 75 (S.D.N.Y.1993) (citing Gerritsen v. Consulado General de Mexico, 989 F.2d 340, 346 (9th Cir.1993)). First, the court must determine whether the official's actions "implicated some consular function." Id. Second, the "acts for which the consular officials seek immunity must be "performed in the exercise of the consular functions' in question." Id. | Determining whether consular immunity applies under the Vienna Convention on Consular Relations (VCCR) involves a two-part inquiry, in which first, the court must determine whether the official's actions implicated some consular function, and second, the acts for which the consular officials seek immunity must be performed in the exercise of the consular functions in question. Vienna Convention on Consular Relations, Art. 43(1), 1969 WL 97928. | Is a consular official immune form suit when the acts complained of were performed in the course of his official duties? | 003001.docx | LEGALEASE-00120513-LEGALEASE-00120514 | SA, Sub | 0.03 | 0 | 0 | 1 | 1 | |
| 14145 | United States v. Rosal, 191 F. Supp. 663 | 221+179 | Furthermore, under the common law of nations, diplomats-in-transit (although not accredited to the United States) are entitled to immunity when they are in the United States en route between their diplomatic posts and their respective home countries. See authorities cited in United States v. Melekh, 190 F.Supp. 67, supra. | Under the common law of nations, diplomats-in-transit are entitled to immunity when in United States en route between their posts and home countries, although not accredited to United States. | Are diplomats in transit entitled to immunity? | 003003.docx | LEGALEASE-00120515-LEGALEASE-00120516 | Order, SA | 0.41 | 1 | 0 | 0 | 1 | |
| 14146 | Khanom v. Kerry, 37 F. Supp. 3d 567 | 24+207 | Here, Plaintiffs have not demonstrated that they have a "clear right" to an order compelling the issuance of a visa, nor that there is a "plainly defined and peremptory duty" on the part of Defendants to grant the visa, because the decision to issue or deny a visa is firmly rooted in the discretion of the Consul General. See Morales v. Goldbeck, No. 12"CV"2350, 2013 WL 937825, at *3 (E.D.N.Y. Mar. 11, 2013) ("Congress has vested the United States consulate officers with the exclusive power to issue or deny visas.... As such, district courts have no jurisdiction to review a consular official's decision to deny a visa to a foreign national."); Rahman v. McElroy, 884 F.Supp. 782, 785 (S.D.N.Y.1995) ("Indeed, a consular officer's decision to deny a visa to a particular alien ... is beyond judicial review."); Al Makaaseb Gen. Trading Co., Inc. v. Christopher, No. 94"CV"1179, 1995 WL 110117, at *2 (S.D.N.Y. Mar. 13, 1995) ("The reach of the doctrine of nonreviewability is broad. It precludes review of denials of visa applications even where, as here, the decision is alleged to have been contrary to law."); Shen v. U.S. Consulate Gen. at Shanghai, China, 866 F.Supp. 779, 780 (S.D.N.Y.1994) ("[I]t has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review." (collecting cases)). | Aliens' claims seeking mandamus order compelling Consul General of United States at Dhaka, Bangladesh, Secretary of State, or Secretary of Department of Homeland Security (DHS) to approve aliens' immigrant visa applications and issue immigrant visas and seeking declaratory judgment that Consul General's previous denial of visas was without basis in fact or law were jurisdictionally barred, under doctrine of consular nonreviewability, shielding from judicial review consular officer's discretionary decision to grant or deny visas. | Is a consular officials decision to withhold or issue a visa subject to judicial review? | Ambassadors and Consuls - Memo 23 - RK.docx | ROSS-003282682-ROSS-003282683 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14147 | Barnes v. Lehi City, 74 Utah 321 | 145+1 | The further point is based on the proposition that, inasmuch as the city was not engaged in manufacturing or furnishing electrical energy, either for itself or for its inhabitants, when the act creating our Public Utilities Commission became effective, the city, to now engage in such business, before commencing the construction of such a plant or system, was required to obtain a permit or certificate of necessity from the commission, and that such a question was not involved or decided in the Logan City Case referred to in the opinion. We think that also is without merit. The clear purport of the Logan City decision is that, because of the constitutional provision there referred to, municipalities owning, operating, and conducting electric plants for their own use and for the use of their inhabitants are not subject to the regulation or control of the commission; that the commission has no jurisdiction over such municipally owned and operated plants. We adhere to that. | Public Utilities Commission has no jurisdiction over municipally owned electric plants. | Does the Public Utilities Commission have jurisdiction over municipally owned electric plants? | 003073.docx | LEGALEASE-00120311-LEGALEASE-00120312 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 14148 | Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229 | 148+13 | The "public use" requirement is thus coterminous with the scope of a sovereign's police powers. There is, of course, a role for courts to play in reviewing a legislature's judgment of what constitutes a public use, even when the eminent domain power is equated with the police power. But the Court in Berman made clear that it is "an extremely narrow" one. Id., at 32, 75 S.Ct., at 102. The Court in Berman cited with approval the Court's decision in Old Dominion Co. v. United States, 269 U.S. 55, 66, 46 S.Ct. 39, 40, 70 L.Ed. 162 (1925), which held that deference to the legislature's "public use" determination is required "until it is shown to involve an impossibility." The Berman Court also cited to United States ex rel. TVA v. Welch, 327 U.S. 546, 552, 66 S.Ct. 715, 718, 90 L.Ed. 843 (1946), which emphasized that "[a]ny departure from this judicial restraint would result in courts deciding on what is and is not a governmental function and in their invalidating legislation on the basis of their view on that question at the moment of decision, a practice which has proved impracticable in other fields." In short, the Court has made clear that it will not substitute its judgment for a legislature's judgment as to what constitutes a public use "unless the use be palpably without reasonable foundation." United States v. Gettysburg Electric R. Co., 160 U.S. 668, 680, 16 S.Ct. 427, 429, 40 L.Ed. 576 (1896). | "Public use" requirement of Fifth Amendment for taking of private property is coterminous with scope of a sovereign's police powers. U.S.C.A. Const.Amend. 5. | Is the public use requirement coterminous with the scope of a sovereign's police powers? | 003085.docx | LEGALEASE-00120345-LEGALEASE-00120346 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 14149 | Int'l Fed'n of Prof'l & Tech. Engineers v. United States, 111 Fed. Cl. 175 | 148+2.1 | Moreover, even if plaintiffs had a property interest in the Co"Op, they fail to allege government action that could constitute a taking. The government's mere assertions of ownership cannot, standing alone, constitute a taking. Cent. Pines Land Co. v. United States, 107 Fed.Cl. 310, 325 (2010) ("In order to establish a taking, something more than the mere assertion of title [ (i.e., ownership) ] is required."); see also Yuba Goldfields, Inc. v. United States, 723 F.2d 884, 889 (Fed.Cir.1983) ("The purpose and function of the [Fifth] Amendment being to secure citizens against governmental expropriation, and to guarantee just compensation for the property taken, what counts is not what government said it was doing, or what it later says its intent was, or whether it may have used the language of a proprietor. What counts is what the government did."). Plaintiffs' complaint does not allege that the Navy did anything that interfered with any rights plaintiffs had in the Co"Op. Accordingly, without more, plaintiffs' claim that the Navy "asserted" its ownership of the Co"Op is insufficient to state a claim for a compensable taking. | Government's mere assertions of ownership cannot, standing alone, constitute a Fifth Amendment taking. U.S. Const. Amend. 5. | "Can the governments mere assertion of ownership, standing alone, constitute a taking?" | Eminent Domain - Memo 130 - JS.docx | ROSS-003289327-ROSS-003289329 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 14150 | Evans v. State, 317 Ark. 532 | 207+13 | Although the Rape Shield Statute does not purport to include incest within its protective curtain, the issue remains one of relevancy. In this case the trial court held that whether the victim had sexual relations with someone in Oklahoma after she moved there in July, 1991, and subsequent to the period during which incest was alleged to have occurred, had no relevance to whether she had had sexual relations with the appellant. The virginity of the prosecutrix in a sexual offense is not relevant per se. Duncan v. State, 263 Ark. 242, 565 S.W.2d 1 (1978). For the same reason, evidence of prior sexual conduct is inadmissible unless it involves the accused and then only if relevant to whether sexual intercourse was consensual. Eskew v. State, 273 Ark. 490, 621 S.W.2d 220 (1981). Since consent is never an issue in the crime of incest, whether this victim had subsequent sexual relations with another and whether she initially admitted or denied such conduct to investigating authorities is entirely collateral. Nothing in her direct testimony at trial was contradictory to her initial statement. Even if we could say there was relevance to this subsequent conduct, giving due deference to the trial court, as we are pledged to do, we cannot say that the probative value of such evidence was not substantially outweighed by the danger of unfair prejudice. A.R.E. Rule 403. Such matters are properly left to the sound discretion of the trial court. Beed v. State, 271 Ark. 526, 609 S.W.2d 898 (1980). | Whether incest victim had subsequent sexual relations with another and whether she initially admitted or denied such conduct to investigating authorities was entirely collateral, and even if there was some relevance to that subsequent conduct, probative value was not substantially outweighed by danger of unfair prejudice. Rule of Evid., Rule 403; A.C.A. S 5-26-202. | Is consent an issue in a charge of incest? | Incest - Memo 69 - RK.docx | ROSS-003285957-ROSS-003285959 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14151 | State v. Coffey, 8 Wash. 2d 504 | 207+7 | The prosecutrix testified that appellant, her father, had had sexual relations with her almost continuously since the death of her mother in 1935, and that he had such relations with her on the morning of August 24, 1940, the date he is charged by the information with the commission of the crime in question. If there were no other evidence or evidence from which it might reasonably be inferred that appellant was guilty of the crime charged, the testimony of the prosecutrix is sufficient to sustain the verdict. The guilt or innocence of accused in a prosecution for incest is not affected by the consent of prosecutrix, or that the act was committed without her consent. In the absence of a statute, none has been called to our attention, requiring corroboration, the conviction may be had on uncorroborated testimony of prosecutrix. State v. Aker, 54 Wash. 342, 103 P. 420, 18 Ann.Cas. 972. See, also, State v. Hornaday, 67 Wash. 660, 122 P. 322. | The guilt or innocence of accused in a prosecution for incest is not affected by the consent or non-consent of prosecutrix. | Is the guilt or innocence of an accused in a prosecution for incest affected by the consent of the prosecutrix? | Incest - Memo 70 - RK.docx | ROSS-003299365-ROSS-003299367 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14152 | State v. Masnik, 125 N.J.L. 34 | 207+10 | These two sections are to be taken and compared together for the discovery of the legislative intent. Evidently, the law-making body, because of the utter depravity of the offence when it involved the parent-child relationship, designed to classify incest as a high misdemeanor; and so an indictment alleging the accused "incestuously" had "carnal knowledge of the body" of his daughter charges "incest" under section 2:139"2. | An indictment charging that accused incestuously had carnal knowledge of body of daughter charged offense of "incest" under section of incest statute relating to incestuous conduct between parent and child, rather than same offense under preceding section covering incest not involving parent-child relationship. N.J.S.A. 2:139-1, 2:139-2. | Is carnal knowledge an element of the crime of incest? | 003209.docx | LEGALEASE-00120566-LEGALEASE-00120567 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 14153 | Cobb v. Time, 278 F.3d 629 | 92+2163 | The actual malice standard does not refer to a showing of ill will or malice in the ordinary sense. Rather, it requires that the plaintiff demonstrate that "the publication contains a false statement of fact which was made ... with knowledge that the statement was false or with reckless disregard as to whether or not it was true." Harte"Hanks, 491 U.S. at 667, 109 S.Ct. 2678 (quoting Hustler Magazine v. Falwell, 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988)). The fact that the defendant published the defamatory statement in order to increase profits is insufficient to prove actual malice. Id. Rather, a showing of actual malice requires at least a showing that the statements were made with a "reckless disregard for the truth." Id. A "reckless disregard for the truth" means that the defendant "must have made the false publication with a "high degree of awareness of ... probable falsity." " Id. (quoting Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)) (alteration in original). A failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard. Id. at 688, 109 S.Ct. 2678. Instead, there must be "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Id. (quoting St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). Thus, the failure to investigate, alone, will not support a finding of actual malice, but the "purposeful avoidance of the truth" may do so. Id. at 692. In a case where the defendant is reporting a third party's allegations, the standard of reckless disregard may be met where "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." Id. at 688, 109 S.Ct. 2678 (quoting St. Amant, 390 U.S. at 732, 88 S.Ct. 1323). | A "reckless disregard" for the truth of allegedly defamatory statements, showing of which will demonstrate actual malice sufficient to allow public official or public figure to recover for defamation under First Amendment, means that the defendant must have made the false publication with a high degree of awareness of probable falsity. U.S.C.A. Const.Amend. 1. | How is reckless disregard defined? | Libel and Slander - Memo 146 - RK.docx | ROSS-003296326-ROSS-003296328 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 14154 | Cordier v. Lincoln County Nat. Bank, 702 S.W.2d 428 | 289+425 | The Bank contends that it was evident from the Intervening Complaint that the business arrangement between Georgia Cordier and Harold Cordier was in the nature of a partnership. However, the complaint merely stated that Georgia was an owner and operator of the Farm Center at the time the complaint was filed. It did not specifically allege that Georgia was a partner of the C & H Farm Center business at the time the note was executed. Joint tenancy, tenancy in common, tenancy by the entirety, joint property, common property, or part ownership does not of itself establish a partnership. KRS 362.180(2). | Joint tenancy, tenancy in common, tenancy by entirety, joint property, common property, or part ownership does not of itself establish a partnership. KRS 362.180(2). | Do tenants in joint tenancies in property establish partnership? | 003454.docx | LEGALEASE-00120663-LEGALEASE-00120664 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 14155 | Bank of New York v. Nally, 820 N.E.2d 644 | 366+1 | We agree with Osterman that application of the doctrine of equitable subrogation depends on the equities and attending facts and circumstances of each case. 714 N.E.2d at 737. We also agree with the result in Osterman, where a lender purchased a mortgage with an explicit reference to a "new judgment against" the seller. The lender was held culpably negligent for failure to identify a lien that was recorded before the loan closed but after the purchaser performed a title search. Id. at 739. We think, however, that the important fact in Osterman was not the degree of negligence by the lender. Subrogation, if allowed, would have elevated the mortgagee in priority over an intervening creditor who had properly perfected its lien on an apparently unencumbered property. | Application of the doctrine of equitable subrogation depends on the equities and attending facts and circumstances of each case. | Does the application of equitable subrogation depend on the facts of the case? | 003535.docx | LEGALEASE-00120343-LEGALEASE-00120344 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14156 | In re Trampush, 552 B.R. 817 | 366+1 | Once the refinancing was completed, any subsequent financing was outside the realm of paying off a higher priority lien. In that context, Wisconsin does not follow either the majority or minority rules that require actual or constructive knowledge of other liens to defeat subrogation. Wisconsin adopted what is called the Restatement Approach to subrogation. This approach gives courts freedom in weighing the equitable concerns in each individual case. In Wisconsin, equitable concerns reign supreme. | Wisconsin does not follow either the majority or minority rules that require actual or constructive knowledge of other liens to defeat subrogation; Wisconsin, instead, has adopted the "Restatement Approach" to subrogation, which gives courts freedom in weighing the equitable concerns in each individual case, such that, in Wisconsin, equitable concerns reign supreme. | What is the scope of Restatement Approach to subrogation? | Subrogation - Memo 61 - RM C.docx | ROSS-003284189-ROSS-003284191 | Condensed, SA | 0.26 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14157 | AJJ Enterprises, LLP v. Jean-Charles, 160 Conn. App. 375 | 366+1 | "Subrogation is a doctrine which equity borrowed from the civil law and administers so as to secure justice without regard to form or mere technicality.... It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter. It is a legal fiction through which one who, not as a volunteer or in his own wrong and where there are no outstanding and superior equities, pays the debt of another, is substituted to all the rights and remedies of the other, and the debt is treated in equity as still existing for his benefit." (Citation omitted; internal quotation marks omitted.) Home Owners' Loan Corp. v. Sears, Roebuck & Co., 123 Conn. 232, 238, 193 A. 769 (1937). | "Subrogation" is a doctrine which equity borrowed from the civil law and administers so as to secure justice without regard to form or mere technicality. | How is subrogation administered? | 003590.docx | LEGALEASE-00120405-LEGALEASE-00120406 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14158 | Zurich Am. Ins. Co. v. S.-Owners Ins. Co., 248 F. Supp. 3d 1268 | 366+27 | Next, the Court considers ZAIC's claim of subrogation for recovery of indemnity payments made on behalf of Catamount and its principals. Under Florida law, "subrogation is a cause of action in equity which is designed to afford relief to one who is required to pay a legal obligation of another." Phoenix Ins. Co. v. Fla. Farm Bureau Mut. Ins. Co., 558 So.2d 1048, 1050 (Fla. 2d DCA 1990). "Florida recognizes two types of subrogation: conventional subrogation and equitable or legal subrogation." Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 646 (Fla. 1999). Conventional subrogation "arises or flows from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor." Id. (citing Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645 (1916)). Distinctly, legal or equitable subrogation"the doctrine at issue in this action"arises from "the legal consequences of the acts and relationships of the parties." State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So.3d 1099, 1100 (Fla. 2d DCA 2009) (citing Dade Cnty. Sch. Bd., 731 So.2d at 646); see also W. Am. Ins. Co. v. Yellow Cab Co. of Orlando, 495 So.2d 204, 207 (Fla. 5th DCA 1986). Equitable subrogation "is based on the policy that no person should benefit by another's loss, and it "may be invoked wherever justice demands its application, irrespective of technical legal rules." " Johnson, 18 So.3d at 1100 (quoting W. Am. Ins. Co., 495 So.2d at 207). | Under Florida law, conventional subrogation arises or flows from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor. | How does subrogation generally arise? | 003604.docx | LEGALEASE-00120418-LEGALEASE-00120420 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 14159 | Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. KPMG Peat Marwick, 742 So. 2d 328 | 366+1 | Further, equitable subrogation arises when the person discharging the obligation is under a legal duty to do so or when the person discharges the obligation to protect an interest in, or a right to, the property. Wolf, 706 So.2d at 883, (citing Eastern Nat'l Bank, 508 So.2d at 1324). The Florida Supreme Court recently explained that equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt,(4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. See Dade County School Board v. Radio Station WQBA, 731 So.2d 638 (Fla.1999). The right to subrogation is not absolute, but depends upon the equities and attending facts of each case. See Dixie Nat'l Bank v. Employers Commercial Union Ins. Co., 463 So.2d 1147 (Fla.1985), conformed, 759 F.2d 826 (11th Cir.1985). The right to recover from a third person is conditional on whether or not the right of the one seeking subrogation is superior to the equities of those against whom the right is sought to be enforced. See Ruwitch v. First Nat'l Bank of Miami, 291 So.2d 650, 653 (Fla. 3d DCA 1974). | The right to subrogation is not absolute, but depends upon the equities and attending facts of each case. | Is a party's entitlement to subrogation dependent upon the equities and attendant facts of each case? | Subrogation - Memo 80 - ANG C.docx | ROSS-003299628-ROSS-003299629 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14160 | United States v. Dow, 357 U.S. 17 | 148+148 | Although in both classes of "taking" cases"condemnation any physical seizure"title to the property passes to the Government only when the owner receives compensation, see Albert Hanson Lumber Co. v. United States, 261 U.S. 581, 587, 43 S.Ct. 442, 444, 67 L.Ed. 809, or when the compensation is deposited into court pursuant to the Taking Act, see 78 S.Ct. 1045, infra, the passage of title does not necessarily determine the date of "taking." The usual rule is that if the United States has entered into possession of the property prior to the acquisition of title, it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues. See United States v. Lynah, 188 U.S. 445, 470"471, 23 S.Ct. 349, 357, 47 L.Ed. 539; United States v. Rogers, 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566; Seaboard Air Line R. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664. The owner at the time the Government takes possession "rather than the owner at an earlier or later date, is the one who has the claim and is to receive payment." 23 Tracts of Land v. United States, supra, 177 F.2d at page 970. | Generally, if the United States has entered into possession of property prior to acquisition of title, it is the former event which constitutes the act of taking, and it is that event which gives rise to claim for compensation and fixes date as of which land is to be valued and Government's obligation to pay interest accrues. Declaration of Taking Act, SS 1-5, 40 U.S.C.A. SS 258a-258e. | What factor determines the date of valuation under the takings law? | 003133.docx | LEGALEASE-00120799-LEGALEASE-00120800 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 14161 | Hayes v. Irwin, 541 F. Supp. 397 | 237+120(2) | Irwin's responsibility for the anonymous mailing, the numerous telephone calls, the bogus lawsuit, and the October 30, 1980, letter gave rise to a finding of liability for defamation in Count 2 of Hayes' complaint. Under Georgia law, damages are incurred when false and defamatory statements are made in regard to another in his trade, office, or profession which are calculated to injure him. Ga.Code Ann. s 105-702; Hood v. Dun & Bradstreet, Inc., supra. Furthermore, malice, which is necessary to support an award of punitive damages, is inferred by law from the character of the defamation where there is an absence of lawful excuse or the absence of privilege. See Hood v. Dun & Bradstreet, Inc., supra. Irwin's defamatory acts were accomplished with the intent of maligning Hayes' character, business ability, and expertise. Given the malicious intent behind his behavior, this court is of the opinion that an award of $100,000 in punitive damages is warranted as a deterrent to any future action of this sort anticipated by Irwin. | Malice, which is necessary to support an award of punitive damages, is inferred by law from the character of a defamation when there is an absence of lawful excuse or absence of privilege. Ga.Code, S 105-702. | How is malice inferred in defamation? | 003342.docx | LEGALEASE-00120821-LEGALEASE-00120822 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14162 | Quinones v. United States, 492 F.2d 1269 | 237+5 | It quickly becomes apparent that the root premises of negligence and defamation are conceptually distinct. Proceeding from this rudimentary analysis to a consideration of the two specific torts embraced by these concepts, we see differences in the cause of action as well. To state a cause of action for negligence the plaintiff must plead a legal duty, a breach of that duty, proximate or legal cause, and actual damage or injury. Boyce v. United States Steel Corporation, 446 Pa. 226, 285 A.2d 459 (1971); Whitner v. Von Hintz, 437 Pa. 448, 263 A.2d 889 (1970); Kirby v. Carlisle, 178 Pa.Super. 389, 116 A.2d 220 (1935). To state a cause of action for defamation generally the plaintiff must allege the defamatory character of the communication, publication, that the communication refers to the plaintiff, the third party's understanding of the communication's defamatory character and its reference to the plaintiff, and injury. Corabi v. Curtis Publishing Company, 441 Pa. 432, 273 A.2d 899 (1971); Cosgrove Studio and Camera Shop, Inc. v. Pane, 408 Pa. 314, 182 A.2d 751 (1962); Act of August 21, 1953, P.L. 1291, " 1, 12 Pa.Stat.Anno. " 1584a. As previously observed, malice is essential to an action for defamation in Pennsylvania; as a general rule, it is presumed or implied to exist from the unprivileged publication of defamatory words actionable per se. Corabi v. Curtis Publishing Company, supra, 273 A.2d at 909. It is not necessary that the defendant harbor ill will against any particular person. Legal malice alone is sufficient to support an action. Legal malice has been defined as "a wrongful act done intentionally, without just cause or excuse . . ." Ibid. Thus, it appears that Pennsylvania considers the defamation torts of libel and slander to be intentional in nature, rather than accidental or unintentional. Harper and James also list the law of defamation in "Part One: Intended Torts'; negligence is listed in "Part Two: Accidents.' | As a general rule, malice is presumed or implied to exist from unprivileged publication of defamatory words actionable per se. | Is malice presumed where the defamation is actionable per se? | 003356.docx | LEGALEASE-00120835-LEGALEASE-00120836 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 14163 | Adiscov v. Autonomy Corp., 762 F. Supp. 2d 826 | 170A+673 | Federal Rule of Civil Procedure 8(a) ("Rule 8") provides, in pertinent part, "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court's recent decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), have clarified what constitutes sufficient pleading under Rule 8. Therein, the Supreme Court made clear that there are two basic requirements for a pleading to comply with Rule 8: sufficient factual allegations and plausibility of those allegations. First, the complaint need not have detailed factual allegations, but Rule 8 "requires more than labels and conclusions [.][A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. What, at base, is insufficient is "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949. | There are two basic requirements for a pleading to comply with notice pleading rule: (1) sufficient factual allegations, and (2) plausibility of those allegations. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A. | What are the two basic requirements for a pleading to comply with Rule 8? | 003462.docx | LEGALEASE-00120867-LEGALEASE-00120869 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14164 | Cities of Oxford, Carthage, Louisville, Starkville & Tupelo v. Ne. Mississippi Elec. Power Ass'n, 704 So. 2d 59 | 148+9 | The provisions of the 1956 Act cited above and the 1987 Amendments are specific provisions concerning the regulation of utilities by the PSC and that under Mississippi Law, specific statutory provisions govern over general provisions, such as those in the municipal utility acts. The Municipally Owned Utilities Act and the Municipal Electric Power Plant Law of 1936 ("" 21"27"11, et seq. and 77"5"401, et seq.) are general applications dealing with municipalities and electric power. However, the 1987 Amendments are specific provisions (under the article entitled Certificates of Public Convenience and Necessity; Rates; Service) of regulation by the PSC. The 1987 Amendments set forth specific procedures for a municipality to follow in order to use its power of eminent domain to condemn a public utility's service area and facilities. "It is well settled that when construing two statutes that encompass the same subject matter, a specific statute will control over a general one." Wilbourn v. Hobson, 608 So.2d at 1191. The defendant-utilities also cite for support this Court's decision in Miss. Public Service Comm'n v. City of Jackson, 328 So.2d 656 (Miss.1976).In that case we held that municipal utility statutes are subordinate to contrary provisions of the 1956 Act if it is clear that the legislature so intended. The defendant-utilities further state that this Court held that the PSC, pursuant to " 77"3"1, could regulate the City of Jackson's rates for water charged to customers more than one mile outside the municipal boundaries. The City of Jackson then argued that under a provision of the Municipally Owned Utility Act, it had the right to set rates for water customers up to five miles outside the municipal boundaries, as long as the rate charged was not greater than twice the rate charged to customers within the city. The Court held that the 1956 Act controlled. Id. at 658"59. Furthermore, the defendant-utilities cite Delta Electric Power Assoc. v. Miss. Power and Light Co., 250 | Amendments to Public Utilities Act of 1956 requiring Public Service Commission (PSC) cancellation of public utility's certificate of public convenience and necessity before municipality could exercise eminent domain power to acquire utility's facilities did not violate state constitutional provision prohibiting abridgment of eminent domain rights, despite contention that, by allowing utility to correct any inadequacies before Commission would cancel certificate, amended Act effectively placed ability to abridge power of eminent domain in hands of private corporations; legislature, which could grant or deny power of eminent domain to municipality, could also establish procedure or method by which power might be void. Const. Art. 7, S 190; Code 1972, SS 77-3-13(6), 77-3-17, 77-3-21. | Are municipal utility statutes subordinate to the contrary provisions of the Public Utilities Act 1956 if the legislature intends it? | 042546.docx | LEGALEASE-00120903-LEGALEASE-00120904 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14165 | Deutsche Bank Nat'l Tr. Co. v. Payton, App (1st), 76 N.E.3d 804 | 366+1 | We also find that the Watkinses would be unjustly enriched if Deutsche Bank's assignor's paid off the Watkinses' two mortgages and paid the Watkinses $119,583.92, but the Watkinses were permitted to invoke a legal defense that divested the bank of its interest in the property. The doctrine of equitable subrogation is the remedial device designed to prevent an unjust enrichment. State Farm Mutual Insurance Co. v. Du Page County, 2011 IL App (2d) 100580, 352 Ill.Dec. 891, 955 N.E.2d 67. Therefore, even if the Paytons acquired the subject property through a forged deed and even if the bank and its assignor had no written mortgage with the Watkinses, Deutsche Bank's assignor acquired standing when it paid off the Watkinses' mortgages and its successor, Deutsche Bank, as trustee, had a right to predicate its foreclosure action against the Watkinses on the fact that it was the legal holder of the Watkinses' indebtedness. Glisson, 188 Ill.2d at 221, 242 Ill.Dec. 79, 720 N.E.2d 1034; 735 ILCS 5/15-1504(a)(3)(N) (West 2006). Accordingly, we find that the circuit court properly granted Deutsche Bank's motion for summary judgment because even if the Paytons' deed was forged and there was no written mortgage, the doctrine of equitable subrogation prevented the circuit court from permitting the Watkinses' to be unjustly enriched | Doctrine of equitable subrogation is the remedial device designed to prevent an unjust enrichment. | Is common law or equitable right of subrogation a remedial device utilized to prevent unjust enrichment? | 044333.docx | LEGALEASE-00120776-LEGALEASE-00120777 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14166 | Bradley v. State Farm Mut. Auto. Ins. Co., 290 Mich. App. 156 | 366+1 | Subrogation rights can be acquired by way of contractual assignment or under principles of equity. Citizens Ins. Co. of America v. Buck, 216 Mich.App. 217, 226, 548 N.W.2d 680 (1996). Here, defendant can subrogate itself with respect to plaintiff's right to enforce the $50,000 default judgment against Bowen, at least up to the policy limit of $25,000, and attempt collection from Bowen if defendant becomes obligated, through litigation or settlement, to pay benefits to plaintiff. Bowen was not released from liability. Whether Bowen is ultimately collectible is irrelevant, given that the same problem would exist even had Bowen, Sandra Bowen, and defendant been joined in a lawsuit. And $50,000 is more than enough to cover defendant's potential liability to plaintiff, considering that the policy limit for uninsured-motorist benefits was $25,000. Accordingly, defendant's subrogation rights will not be prejudiced by allowing the instant suit to be litigated. | Subrogation rights can be acquired by way of contractual assignment or under principles of equity. | Can subrogation rights be acquired by way of contractual assignment or under principles of equity? | Subrogation - Memo 357 - NS.docx | ROSS-003328293-ROSS-003328294 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14167 | Dattel Family Ltd. P'ship v. Wintz, 250 S.W.3d 883 | 366+1 | Subrogation is an equitable doctrine whose aim is to "plac[e] the burden of bearing the loss where it [o]ught to be." Sutton v. Jondahl, 532 P.2d 478, 482 (Okla.Ct.App.1975). Subrogation is not appropriate in every circumstance; as an equitable doctrine, it is applied only if its application achieves equity under the facts and circumstances of the case at hand. See Tate v. Trialco Scrap, Inc., 745 F.Supp. 458, 473 (M.D.Tenn.1989) (noting that subrogation may not be appropriate under all circumstances); Sutton, 532 P.2d at 482. Moreover, "the right of subrogation cannot arise in favor of an insurer against its own insured." Allstate Ins. Co. v. Watson, 2005 WL 457846, at (citing Jindra v. Clayton, 247 Neb. 597, 529 N.W.2d 523 (1995)). | Subrogation is an equitable doctrine with the aim of placing the burden of bearing a loss where it ought to be. | Is subrogation an equitable doctrine with the aim of placing the burden of bearing a loss where it ought to be? | 043928.docx | LEGALEASE-00120983-LEGALEASE-00120984 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14168 | Blaney v. O'Heron, 256 Ga. App. 612 | 249+60(5) | Moreover, evidence of prior actions could be relevant to the issue of malice, which is an element of the Blaneys' malicious prosecution claim. Such evidence is relevant where it demonstrates that a defendant was aware from previous experience that his actions in the past had resulted in similar injuries, but nevertheless continued in his course of conduct "in utter indifference to the consequences." Wood v. D.G. Jenkins Homes, 255 Ga.App. 572, 574, 565 S.E.2d 886 (2002). See also Worn v. Warren, 191 Ga.App. 448"449(1), 382 S.E.2d 112 (1989); Gunthorpe v. Daniels, 150 Ga.App. 113, 114"115(3), 257 S.E.2d 199 (1979). | Evidence of prior actions is relevant to the issue of malice, a required element of a claim of malicious prosecution, where it demonstrates that a defendant was aware from previous experience that his actions in the past had resulted in similar injuries, but nevertheless continued in his course of conduct in utter indifference to the consequences. O.C.G.A. S 51-7-40. | Is the evidence of prior acts relevant in a malicious prosecution action? | 021122.docx | LEGALEASE-00120989-LEGALEASE-00120990 | Condensed, SA | 0.41 | 0 | 1 | 0 | 1 | |
| 14169 | Com. v. Root, 191 Pa. Super. 238 | 368+1 | But this is a criminal action. The Commonwealth is interested in protecting its citizens against acts which endanger their lives. The policy of the law is to protect human life, even the life of a person who wishes to destroy his own. To prove that the victim wanted to die would be no defense to murder. Neither is it a defense to involuntary manslaughter to prove that the victim was himself guilty of negligent or reckless conduct which contributed to his own death. It is the defendant who is on trial for his conduct. The victim's negligence is not an issue here. Commonwealth v. Rosenberger, 1957, 183 Pa.Super. 401, 406, 132 A.2d 359. | Policy of law is to protect human life, including life of person who wishes to destroy his own life. | Does the policy of the law include the protection of a person who wishes to destroy his own life? | Suicide - Memo 24 - AKA.docx | ROSS-003283798-ROSS-003283799 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14170 | Jenkins v. Bd. of Cty. Comm'rs of Madison Cty., 698 N.E.2d 1268 | 148+134 | Jenkins also contends the trial court erred in failing to consider the highest and best use of his property. More specifically, pointing to evidence of record that the highest and best use of his seventy-acre tract is that of commercial and residential development, Jenkins contends the rerouting of Raible Avenue which deprived him of a valuable corner location diminished the property's value and that too constitutes a taking. We acknowledge there is authority for the proposition that a "taking" within the meaning of eminent domain includes the "diminution in value" of a landowner's property. See I.L.E. Eminent Domain " 34. However "highest and best use" represents a component of damages to be considered once the issue of taking is resolved in favor of the landowner. Stated differently, once a taking has been established, then damages may be based upon the highest and best use of the property at the time of the taking. City of Gary v. Belovich, 623 N.E.2d 1084, 1088 (Ind.Ct.App.1993). Where, as here, there has been no taking the question is whether the action of the governmental entity diminished the value of the property in its present use. The record is clear that Jenkins is presently using his property as farmland. There is no evidence that as farmland the value of Jenkins' property has been reduced by reason of the relocation of Raible Avenue. The trial court was correct in not considering the highest and best use of Jenkins' property when determining whether the property had been taken in the context of eminent domain. We find no error here. | Highest and best use represents component of damages to be considered once issue of taking is resolved in favor of landowner, and once taking has been established, damages may be based upon highest and best use of property at time of taking. | "On what factor must the damages be based, once a taking has been established?" | Eminent Domain - Memo 174 -GP.docx | LEGALEASE-00010971-LEGALEASE-00010972 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14171 | Schlaikjer v. Kaplan, 296 Kan. 456 | 307A+3 | A district court's decision on a motion in limine involves a two-prong test. To grant the motion, the court must determine that (1) the material or evidence in question will be inadmissible at trial; and (2) a pretrial ruling is justified, as opposed to a ruling during trial, because (a) the mere offer or mention of the evidence during trial may cause unfair prejudice, confuse the issues, or mislead the jury; (b) the consideration of the issue during trial might unduly interrupt and delay the trial; or (c) a ruling in advance of trial may limit issues and save the parties time, effort, and cost in trial preparation. State v. Shadden, 290 Kan. 803, 816, 235 P.3d 436 (2010). | District court's decision on a motion in limine involves a two-prong test, and to grant the motion, the court must determine that: (1) the material or evidence will be inadmissible at trial; and (2) a pretrial ruling is justified, as opposed to a ruling during trial, because (a) the mere offer or mention of the evidence during trial may cause unfair prejudice, confuse the issues, or mislead the jury; (b) the consideration of the issue during trial might unduly interrupt and delay the trial; or (c) a ruling in advance of trial may limit issues and save the parties time, effort, and cost in trial preparation. | Does a district court's decision on a motion in limine involve a two-prong test? | Pretrial Procedure - Memo # 29 - C - KI.docx | ROSS-003288103-ROSS-003288104 | Condensed, SA | 0.1 | 0 | 1 | 0 | 1 | |
| 14172 | BNSF R. Co. v. Phillips, 434 S.W.3d 675 | 307A+3 | In its discussion of the first two categories of excluded evidence, BNSF focuses on the granting of Phillips's motion in limine. A complaint that the trial court abused its discretion by excluding evidence cannot be predicated on a trial court's ruling on a motion in limine. The granting of a motion in limine is not a ruling on the admissibility of the evidence and does not preserve error. A motion in limine simply prohibits references to specific issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury. | The granting of a motion in limine is not a ruling on the admissibility of the evidence and does not preserve error; a motion in limine simply prohibits references to specific issues without first obtaining a ruling on the admissibility of those issues outside the presence of the jury. | Is the granting of a motion in limine a ruling on the admissibility of the evidence and does not preserve error? | Pretrial Procedure - Memo # 53 - C - AP.docx | ROSS-003326708-ROSS-003326710 | Condensed, SA | 0.49 | 0 | 1 | 0 | 1 | |
| 14173 | State v. Davis, 505 S.W.3d 401 | 352H+72 | In the present case, A.S. testified that Defendant "raped" her when she was 15 years old. She stated Defendant was larger than her, had more muscle, and she was physically unable to push him off and move away. Physical force is any force applied to the body that is sufficient to overcome reasonable resistance. Id. at 109. "[T]he law does not require or expect utmost resistance to a sexual assault when it appears that such resistance would be futile or would provoke a more serious injury." Id. Reasonable resistance is only what is suitable under the facts of a case. Id. A.S. stated she told Defendant that she did not want to have sex with him and claimed she was physically unable to push Defendant off of her and get away. She testified that she did not cry out for help because she knew Defendant's mother did not want her in the home. Under these facts, a fact-finder could reasonably find Defendant had sexual intercourse with A.S. by the use of forcible compulsion. | Law does not require or expect utmost resistance to a sexual assault when it appears that such resistance would be futile or would provoke a more serious injury. | Is resistance to sexual assault necessary to sustain a conviction for sexual assault? | 042912.docx | LEGALEASE-00121516-LEGALEASE-00121517 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14174 | Columbia Bank v. Turbeville, 143 So. 3d 964 | 366+1 | Two types of subrogation exist in Florida: conventional and equitable. Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 646 (Fla.1999). Conventional subrogation, which arises from a contract between parties, is inapplicable here because no contract in subrogation exists between the Bank and Ms. Turbeville. Equitable subrogation, which the Bank asserts against Ms. Turbeville, is an equitable remedy rooted in the legal consequence of the actions and relationship between the parties. Id.; see also Aurora Loan Servs. LLC v. Senchuk, 36 So.3d 716, 718 (Fla. 1st DCA 2010). The "policy behind the doctrine is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge." Kala Inv., Inc. v. Sklar, 538 So.2d 909, 917 (Fla. 3d DCA 1989). The doctrine places "one party into the shoes of another so that the substituting party retains the rights, remedies, or securities that would otherwise belong to the original party." Aurora Loan Servs., 36 So.3d at 722. | Equitable subrogation is an equitable remedy rooted in the legal consequence of the actions and relationship between the parties. | Is equitable subrogation an equitable remedy created by the legal consequences of the acts and relationships of the parties? | 043700.docx | LEGALEASE-00121346-LEGALEASE-00121347 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14175 | Houston v. Bank of Am. Fed. Sav. Bank, 119 Nev. 485 | 366+1 | The second approach bars the application of equitable subrogation when a lien holder possesses either actual or constructive notice of an existing lien. However, precluding equitable subrogation when a mortgagee discovered or could have discovered a junior lien holder runs contrary to the purposes underlying the doctrine. Equitable subrogation is an equitable remedy to avoid a person's receiving an unearned windfall at the expense of another. If there were no subrogation, a junior lien holder would be promoted in priority, giving that creditor/lien holder an unwarranted and unjust windfall. Neither negligence nor constructive notice of an existing lien is relevant as to whether the junior lien holder will be unjustly enriched or prejudiced. The "basis for subrogation in [the mortgage] context is the lender's justified expectation of receiving [a] security" interest in the property. Even a lender with knowledge of an existing lien on the property ordinarily expects to step into the shoes of the creditor it paid off. Therefore, we also decline to adopt this approach. | "Equitable subrogation" is an equitable remedy to avoid a person's receiving an unearned windfall at the expense of another. | Is equitable subrogation a remedy to avoid an unearned windfall? | Subrogation - Memo # 487 - C - SA.docx | ROSS-003297726-ROSS-003297727 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14176 | MacNab v. Fireman's Fund Ins. Co., 243 Or. 267 | 366+1 | Presuming (1) that as to Darr plaintiff had apparent rather than actual authority to bind defendant, (2) that Darr was entitled to a notice of cancellation of Joe's coverage before it could be terminated, and (3) that Darr therefore had a valid claim against defendant, plaintiff would still not be entitled to be subrogated to Darr's rights against defendant. Subrogation is a doctrine of equitable origin and nature and its application is controlled by principles of equity rather than by strict legal rules. 50 Am.Jur. 689, Subrogation, s 11 (1944). Before a party is entitled to subrogation, his equity must be strong and his case clear. United States F. & G. Co. v. Bramwell, 108 Or. 261, 277"278, 217 P. 332, 32 A.L.R. 829 (1923); American Sur. Co. v. Multnomah County, 171 Or. 287, 318, 138 P.2d 597, 148 A.L.R. 926 (1943). | Before a party is entitled to subrogation to the rights of another his equity must be strong and his case clear. | "In order to be entitled to equitable subrogation, must a party's equity be strong and his case clear?" | Subrogation - Memo # 558 - C - AP.docx | ROSS-003325228-ROSS-003325229 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 14177 | Ameriquest Mortg. Co. v. Alton, 273 Mich. App. 84 | 366+1 | Equitable subrogation has been further described as "a flexible, elastic doctrine of equity" requiring that "[i]ts application should and must proceed on the case-by-case analysis characteristic of equity jurisprudence." Hartford Accident & Indemnity Co., supra at 215, 600 N.W.2d 630. A proviso exists that equitable subrogation "will not be enforced where it will work injustice to the rights of those having equal equities." Bd. of Co. Rd. Comm'rs of Calhoun Co. v. Southern Surety Co., 216 Mich. 528, 533, 185 N.W. 755 (1921) (quotation and citation omitted). It is also well established that an equitable doctrine "cannot be used to avoid the dictates of a statute, absent fraud, accident, or mistake." Burkhardt, supra at 659, 680 N.W.2d 453. | Equitable subrogation will not be enforced where it will work injustice to the rights of those having equal equities. | Will equitable subrogation be enforced where it will work injustice to the rights of those having equal equities? | Subrogation - Memo # 579 - ES.docx | ROSS-003311289-ROSS-003311290 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14178 | Weissman v. Weener, 12 F.3d 84 | 366+7(1) | It is thus beyond cavil that Weissman is not entitled, merely by virtue of being a shareholder of A.H.L., to sue Weener for the wrongs he allegedly committed against the corporation. But Weissman contends that the fact that he is the guarantor on A.H.L.'s debt makes his injury more direct. In fact, precisely the opposite is true. As we explained in Mid"State, the shareholders are most directly affected by injury inflicted on the corporation, since their investment is wiped out. Second come creditors, who end up holding the bag if the corporation cannot pay the money it owes them. Guarantors are only contingent creditors. Under a guarantee, a creditor is permitted to seek recourse against a guarantor. If that occurs, the guarantor is then subrogated to the rights of the creditor, having an unpaid claim against the corporation. | Under guarantee, creditor is permitted to seek recourse against guarantor; guarantor would then be subrogated to rights of creditor. | "Under guarantee, is a creditor permitted to seek recourse against guarantor and then be subrogated to the rights of a creditor?" | 043962.docx | LEGALEASE-00121207-LEGALEASE-00121208 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14179 | In re XTI Xonix Techs. Inc., 156 B.R. 821 | 366+7(1) | Whether an entity holds a right which falls within the definition of a "claim" under " 101(5) is determined by state law. This court has found that the use of the term "right of subrogation" is used by courts rather carelessly to define generally the equitable bundle of rights a guarantor (or surety) holds which aids him in obtaining repayment. For purposes of this opinion it is important that this bundle of rights be separately examined. It consists of the rights of indemnity (or reimbursement), contribution, subrogation and exoneration. Under the right of indemnity the guarantor may demand repayment directly from his principal of the amount he has paid the creditor. Or upon maturity of the debt under his right of exoneration the guarantor may bring a suit against the principal to force him to pay the creditor. The guarantor has a right of contribution against any co-guarantors to force payment of their share of the principal's obligation to the creditor. Finally, the guarantor has a right of subrogation which permits him to be substituted to the position of the creditor whom he has paid. Oregon courts recognize these rights. See generally Chada v. Tapp, 277 Or. 3, 8"9, 558 P.2d 1225, 1227 (1977) (exoneration); Reimann v. Hybertsen, 275 Or. 235, 550 P.2d 436, modified, 276 Or. 95, 553 P.2d 1064 (1976) (subrogation; reimbursement); Mansfield v. McReary, 263 Or. 41, 501 P.2d 69 (1972) (contribution). These rights will be enforced by the court as a court of equity whether or not they are the subject of a specific contractual agreement between the parties. By contract the parties may modify or waive these rights. A waiver is effective in Oregon. See W.J. Seufert Land Co. v. Greenfield, 262 Or. 83, 496 P.2d 197 (1972). If these equitable rights are specifically recognized by the terms of a contract, to the extent that they are not waived or modified the contract terms are simply a reaffirmance of preexisting equitable rights. | Under Oregon law, guarantor has right of subrogation which permits him to be substituted to the position of the creditor whom he has paid. | Does a guarantor have the right of subrogation which permits him to be substituted to the position of the creditor whom he has paid? | 043972.docx | LEGALEASE-00121238-LEGALEASE-00121239 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14180 | Hicks v. Londre, 107 P.3d 1009 | 366+1 | Thus, under equitable subrogation, a person who pays off an encumbrance without knowledge of a superior lien may assume the same priority position as the holder of the previous encumbrance; if there were no subrogation, a junior lienholder would be promoted in priority, giving that lienholder an unwarranted and unjust windfall. Houston v. Bank of Am. Fed. Sav. Bank, 78 P.3d 71 (Nev.2003). Where a first deed of trust has been released through mistake of fact, equity, under certain circumstances, will intervene to correct the mistake. W. Fed. Sav. & Loan Ass'n v. Ben Gay, Inc., 164 Colo. 407, 411"12, 436 P.2d 121, 123 (1967). Equitable subrogation is a highly favored doctrine and has been given liberal application. See Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff, 354 F.3d 945 (8th Cir.2004); Essex Ins. Co. v. Tyler, 309 F.Supp.2d 1270 (D.Colo.2004)(interpreting Illinois law); Davis v. Johnson, 241 Ga. 436, 246 S.E.2d 297 (1978); Osterman v. Baber, 714 N.E.2d 735,738 (Ind.Ct.App. 1999). | Equitable subrogation is a highly favored doctrine and has been given liberal application. | Is equitable subrogation a highly favored doctrine and has been given liberal application? | Subrogation - Memo # 671 - C - SU.docx | ROSS-003295390-ROSS-003295391 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14181 | In re Clothes, 40 B.R. 997 | 366+7(1) | The trustee also claims that under doctrines of marshalling of assets the bank had an obligation to the unsecured creditors to go against the guarantors and leave the security assets for the general creditors. But the assets to be marshalled are those of the debtor. The North Dakota statute on marshalling of assets is taken from the Code of California. It is found at N.D.C.C. " 13"01"04. For a case in point see Victor Gruen Associates, Inc. v. Glass, 338 F.2d 826 (9th Cir.1964). See also Union National Bank v. Milburn & Stoddard Co., 7 N.D. 201, 212"14, 73 N.W. 527, 530"31 (1897). The trustee seeks to require that the assets of the guarantors be marshalled over those of the debtor. In any event under commercial law rules, the guarantor, upon payment of the guaranty, steps into the creditor's shoes. See 11 U.S.C. " 509(a). So marshalling, as the trustee would have it done, is of no benefit to the unsecured creditors. | Under commercial law rules, the guarantor, on payment, steps into the creditor's shoes. | "Under commercial law rules, does the guarantor, on payment, step into the creditor's shoes?" | Subrogation - Memo # 688 - C - SA.docx | ROSS-003324554-ROSS-003324555 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14182 | In re Kuehn, 563 F.3d 289 | 113+1 | Wisconsin courts have not considered whether a student has a contract or property right to receive a transcript. No Wisconsin statute is on point. Under Wisconsin common law, property rights may arise from custom and usage. See Delaplaine v. Chicago & N.W. Ry., 42 Wis. 214 (Wis.1877) (riparian water rights); Keogh v. Daniell, 12 Wis. 163 (Wis.1860) (movable fixtures). Universities have consistently provided transcripts at or around cost. A transcript currently sets students back $4 at Cardinal Stritch University, $3 at Harvard University, and nothing at the University of Chicago if delivered electronically (otherwise $12). Fees at other universities are similar. We could not find any case in any court where a university had asserted that it could charge a student more than cost for a transcript, and, as far as we can tell, no university has ever tried to profit by charging a fee based on the transcript's effect on a student's future income. This custom is similar to those in Delaplaine and Keogh. | Under Wisconsin common law, property rights may arise from custom and usage. | Can property rights arise under common law by custom or usage? | Customs & Usage - Memo 26 - TH.docx | ROSS-003326049-ROSS-003326050 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14183 | Hallco Texas v. McMullen Cty., 221 S.W.3d 50 | 148+307(2) | A regulation may go so far in imposing public burdens on private interests as to require compensation. Id. at 672. In deciding whether regulatory action goes "too far," we carefully weigh "all the relevant circumstances," including:(1) " "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." " Id. at 670"72 (quoting Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 225, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) (quoting Penn Central, 438 U.S. at 124, 98 S.Ct. 2646)). The extent of the governmental intrusion may be a question for the trier of fact, but whether the facts constitute a taking is a question of law. Id. at 673 (citing Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 932"33 (Tex.1998)). | The extent of the governmental intrusion may be a question for the trier of fact, but whether the facts constitute a taking is a question of law. U.S.C.A. Const.Amend. 5; Vernon's Ann.Texas Const. Art. 1, S 17. | Is the ultimate question of whether the facts constitute a taking a question of fact? | 017453.docx | LEGALEASE-00122164-LEGALEASE-00122165 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 14184 | In re Agent Orange Prod. Liab. Litig., 373 F. Supp. 2d 7 | 221+111 | A corporation is not immune from civil legal action based on international law. The opinion on this point of Professor Paust is compelling. Paust Op. at 3 ("Companies and corporations can have duties under international law, especially with respect to laws of war and human rights. Moreover, they have never been granted immunity under any known treaty or customary law with respect to violations of treaty-based or customary international law."). | A corporation is not immune from civil legal action based on international law. | Is a corporation immune from civil legal action based on international law? | 020107.docx | LEGALEASE-00122460-LEGALEASE-00122461 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14185 | Gevinson v. Manhattan Const. Co. of Okl., 420 S.W.2d 486 | 289+425 | We here take occasion to note that a single individual or entity cannot be "owner" of a partnership, though he or it could become the owner of what might have theretofore been property which belonged to such. | A single individual or entity cannot be owner of a partnership, though he or it could become the owner of what might have theretofore been property which belonged to such. | Can a single individual be an owner of a partnership? | Partnership - Memo 108 - RK.docx | ROSS-003296482 | Condensed, SA | 0.18 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14186 | Kelley v. McNamee, 164 F. 369 | 260+99(2) | In some respects the learned judge was correct in those observations, but in others the inferences and conclusions drawn by him are not correct. It is quite true that a mining partnership, unlike an ordinary one, is not dissolved by the sale of the interest of one of the partners; but it does not follow, from the mere continuance of the partnership, that the mining partner selling his interest continues liable for all of the debts of the partnership subsequently incurred. Under certain circumstances he may continue liable for subsequently incurred indebtedness of the partnership, as, for instance, where, as in this case, the partnership is indebted to laborers for work done while the partner selling was a member of the partnership, and such laborers continue their work upon the property without notice of such sale. In the case of Dellapiazza v. Foley, 112 Cal. 380, 44 Pac. 727, the Supreme Court of that state held a mining partner, disposing of his interest in the mining partnership, bound by the provisions of section 2453 of the Civil Code of California, which enacts that the liability of a general partner for the acts of his copartners continues, after dissolution of the partnership, in favor of persons who have had dealings with and given credit to the partnership until they have had personal notice of the dissolution, saying:"The law governing general copartnerships, with a few well-defined exceptions, applies to mining copartnerships. Therefore, a mining copartner, who claims exemption from the general law of partnerships, must show his case to be within some one of those exceptions. This appellant has failed to do; and I see no just reason for excepting the case of appellant from the full operation and effect of the above-cited section of the Civil Code- it being a part of the general law of partnerships, and its application to this case not being inconsistent with any exception heretofore recognized in favor of mining partnerships. Jones v. Clark, 42 Cal. 180; Stuart v. Adams, 89 Cal. 367, 26 | A mining partnership, unlike an ordinary one, is not dissolved by the sale of the interest of one of the partners; but whether the retiring partner is liable for indebtedness of the partnership subsequently incurred depends on the facts of the case. As to employes who continue in the employment after the change, without knowledge thereof, his liability continues, but not for subsequent wages, if they know of the transfer. | How is a mining partnership different from that of an ordinary partnership? | 021832.docx | LEGALEASE-00122493-LEGALEASE-00122495 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14187 | Billan v. Hercklebrath, 23 Ind. 71 | 95+341 | An answer of entire or partial failure of consideration, must set out the facts showing the failure; and if they do not show such failure, the mere averment of failure in conclusion will not help the answer. | An answer of entire or partial failure of consideration must set out the facts showing the failure. | Should an answer of a total or partial failure of consideration set out the facts showing the failure? | 022919.docx | LEGALEASE-00121912-LEGALEASE-00121913 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 14188 | Smith v. Bentson, 127 Cal. App. Supp. 789 | 302+192(3) | There remains for consideration the question whether this complaint may be regarded as a common count and so upheld. Common counts, although mainly conclusions of law, are recognized in this state as sufficient and are not subject to either general or special demurrer. Minor v. Baldridge, 123 Cal. 187, 190, 55 P. 783; Pike v. Zadig, 171 Cal. 273, 276, 152 P. 923; Auckland v. Conlin, 203 Cal. 776, 778, 265 P. 946; Lehner v. McLennan, 54 Cal. App. 491, 493, 202 P. 41. The usual form of common count for services alleges that they were performed at the request of defendant and that he promised to pay for them. Neither of these allegations appears here. But it is held that "under our system of pleading, where only the facts which constitute the cause of action are to be alleged, it is not requisite to aver either the consideration or the promise, when they are implied as a legal conclusion from the facts which are alleged. While counsel and advice are frequently given without any request, and may be of no benefit to the party to whom they are given, yet a complaint which shows that the plaintiff rendered services to the defendant which were received by him in person, and were presumptively at his request, and of which he has enjoyed the benefit, states facts from which the liability of the defendant therefor is presumed, and is good as against a general demurrer." (Italics ours.) McFarland v. Holcomb, 123 Cal. 84, 86, 55 P. 761. To the same effect are Aydelotte v. Billing, 8 Cal. App. 673, 675, 97 P. 698; Preston v. Central, etc., Co., 11 Cal. App. 190, 194, 104 P. 462; Krieger v. Feeny, 14 Cal. App. 538, 542, 112 P. 901. The reasoning of the court in the language just quoted leads clearly to the conclusion that a complaint is not good as a common count unless it either expressly alleges a promise by the defendant to pay or alleges facts from which such a promise is implied by law. No such facts appear here. If it were alleged that plaintiff's services | Common counts, though mainly conclusions of law, are not subject to either general or special demurrer. | Are common counts subject to special or general demurrer? | 022933.docx | LEGALEASE-00122154-LEGALEASE-00122156 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 14189 | Moya v. Northrup, 10 Cal. App. 3d 276 | 42+5 | A pleading which is sufficient as a common count is not generally subject to general demurrer or to special demurrer on the ground of uncertainty. In Pike v. Zadig (1915) 171 Cal. 273, 152 P. 923, the court ruled, "So far as the general demurrer is concerned, the complaint does allege that the defendants became indebted to the plaintiff for money had and received by them for the use and benefit of plaintiff in two given sums. This is a sufficient pleading under the old form known as a "common count." If the question were new, there might be good ground for saying that the common counts do not comply with the provision of our Code of Civil Procedure (section 426) that the complaint must contain "a statement of the facts constituting the cause of action, in ordinary and concise language." But the practice of pleading in this form has been too long established in this state to be now open to question. (Citations.) There have been intimations in this court that such a pleading, although not obnoxious to general demurrer, might fall before a special demurrer on the ground of uncertainty. We think, however, that there is no force in this suggestion. If there be any objection to the common count, it is that the pleading states conclusions of law, instead of setting forth the facts upon which the plaintiff relies. The real ground of objection, therefore, is that the complaint does not state facts sufficient to constitute a cause of action. But, as we have seen, this objection is not maintainable.' (171 Cal. at pp. 276"277, 152 P. at pp. 924"925. See also, Weitzenkorn v. Lesser (1953) 40 Cal.2d 778, 792"793, 256 P.2d 947; McFarland v. Holcomb (1898) 123 Cal. 84, 86, 55 P. 761; Pleasant v. Samuels (1896) 114 Cal. 34, 37"38, 45 P. 998; Kraner v. Halsey (1889) 82 Cal. 209, 210, 22 P. 1137; Lewin v. Merck & Co., Inc. (1962) 209 Cal.App.2d 131, 132"133, 25 Cal.Rptr. 619; 0 Division of Labor Law Enforcement v. Barnes (1962) 205 Cal.App.2d 337, 347, 23 Cal.Rptr. 55; Brown v. National Royalties, Inc. | A pleading which is sufficient as a common count is not generally subject to general demurrer or to special demurrer on ground of uncertainty. West's Ann.Code Civ.Proc. SS 430, subds. 6, 8, 472d. | Are common counts subject to special or general demurrer? | Pleading - Memo 131 - RMM.docx | ROSS-003300681-ROSS-003300683 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14190 | Torgerson v. Minneapolis, St. P. & S.S.M. Ry. Co., 49 N.D. 1096 | 302+214(4) | A demurrer admits the truth of all well-pleaded facts, but not necessarily the inferences or conclusions drawn therefrom, tho alleged in the complaint; facts presumed or reasonably or necessarily inferred from those alleged are also admitted. 31 Cyc. 335, 336. Legal conclusions or inferences of fact which are not presumed or which may not be reasonably or necessarily inferred from the facts alleged are not admitted by the demurrer. | Demurrer does not necessarily admit the inferences or conclusions drawn from the facts alleged in the complaint. | Does a demurrer admit the inferences or conclusions from the facts alleged in the complaint? | 022936.docx | LEGALEASE-00122208-LEGALEASE-00122209 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 14191 | Schafer v. RMS Realty, 138 Ohio App. 3d 244 | 307A+3 | Denial of a motion in limine is also "within the sound discretion of the trial judge." Harman Group Corporate Finance, Inc. v. Academy of Medicine of Columbus & Franklin Cty. (1994), 94 Ohio App.3d 712, 721, 641 N.E.2d 785, 790.After reviewing this matter, we find that the trial court abused its discretion in admitting some of the evidence, but the error was harmless. However, we do agree with the trial court that mitigation of damages was not an issue in the case. Accordingly, we overrule both the assignment of error and the cross-assignment of error. | Denial of motion in limine is within sound discretion of trial judge. | Is a denial of motion in limine within the sound discretion of trial judge? | Pretrial Procedure - Memo # 159 - C - CRB.docx | ROSS-003326355-ROSS-003326356 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 14192 | Huckaby v. A.G. Perry & Son, 20 S.W.3d 194 | 307A+3 | We recognize that motions in limine do not preserve error; however, a distinction is drawn between a motion in limine and a pretrial ruling on admissibility. Owens"Corning Fiberglas Corp. v. Malone, 916 S.W.2d 551, 557 (Tex.App.-Houston [1st Dist.] 1996), aff'd, 972 S.W.2d 35 (1998). The Huckabys filed a motion in limine on other matters, but specifically filed another motion that was entitled "Plaintiffs' Objections, and Motion, to Exclude Evidence." All pretrial motions are not motions in limine. For example, in criminal cases, we have motions to suppress. The other motion in the present case specified a request to exclude inadmissible prior and subsequent accidents on the basis of their lack of similarity. The relief requested in the title of the motion did not indicate that this was a motion in limine. There was nothing in the motion to make it a motion in limine unless a pretrial motion to exclude evidence is deemed as a matter of law to be a motion in limine. The trial court has authority to make a pretrial ruling on the admissibility of evidence. Reveal v. West, 764 S.W.2d 8, 10 (Tex.App.-Houston [1st Dist.] 1988, no writ). | The trial court has authority to make a pretrial ruling on the admissibility of evidence. | Does the trial court have authority to make a pretrial ruling on the admissibility of evidence? | Pretrial Procedure - Memo # 171 - C - CRB.docx | ROSS-003297097-ROSS-003297098 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14193 | Armstrong Remodeling & Const. v. Cardenas, 2012 Ark. App. 387 | 307A+3 | When a motion in limine is made, the proponent of the evidence has the burden of showing that the evidence is admissible. Benson v. Shuler Drilling Co., Inc., 316 Ark. 101, 871 S.W.2d 552 (1994). On review, we will not reverse a circuit court's ruling allowing or disallowing evidence on the basis of the parol-evidence rule absent an abuse of discretion. Schueck v. Burris, 330 Ark. 780, 957 S.W.2d 702 (1997). The parol-evidence rule is a rule of substantive law in which all antecedent proposals and negotiations are merged into the written contract and cannot be added to or varied by parol evidence. Hagans v. Haines, 64 Ark.App. 158, 984 S.W.2d 41 (1998). The parol-evidence rule applies only to written documents that the parties intended as a final and complete expression of their agreement. See Rainey v. Travis, 312 Ark. 460, 850 S.W.2d 839 (1993); Farmers Co"op. Ass'n, Inc. v. Garrison, 248 Ark. 948, 454 S.W.2d 644 (1970). | When a motion in limine is made, the proponent of the evidence has the burden of showing that the evidence is admissible. | "When a motion in limine is made, does the proponent of the evidence have the burden of showing that the evidence is admissible?" | Pretrial Procedure - Memo # 393 - C - NE.docx | ROSS-003284917-ROSS-003284918 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14194 | Peed v. Peed, 72 N.C. App. 549 | 307A+3 | The plaintiff contends that the trial court committed reversible error by granting the defendant's motion in limine to exclude all testimony concerning the defendant's abuse of alcohol and by failing to permit the plaintiff to include in the record what the plaintiff would have testified to concerning defendant's abuse of alcohol. The power to grant a motion in limine is within the discretion of the trial court. Duke Power v. Mom and Pop's Ham House, Inc., 43 N.C.App. 308, 258 S.E.2d 815 (1979). The trial judge found that evidence of alcoholism was not relevant to the issues in the case, but also found that if later the evidence should appear relevant, then the court would make other orders. The plaintiff's counsel did not ask to submit the alcoholism testimony into the record at that time, nor did they request the court to alter its order later to admit the testimony at trial. Rather, they waited until the conclusion of the instruction conference, and requested to submit the evidence into the record at that time. Plaintiff's request to enter the testimony at that time was not a reasonable one, and we find that the trial judge, in light of his duty to maintain the progress of the trial, properly denied their request. | Power to grant a motion in limine is within the discretion of the trial court. | Does the power to grant a motion in limine lie within the sound discretion of the trial court? | 028047.docx | LEGALEASE-00122088-LEGALEASE-00122089 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 14195 | Konieczny v. Kamin Builders, 304 Ill. App. 3d 131 | 307A+3 | A motion in limine is a motion in advance of trial in which a party seeks a ruling on the admissibility of evidence. Beasley v. Huffman Manufacturing Co., 97 Ill.App.3d 1, 5, 52 Ill.Dec. 560, 422 N.E.2d 241, 244 (1981). The purpose of the motion is to promote a trial free of prejudicial material and to avoid highlighting the evidence to the jury through objection. Beasley, 97 Ill.App.3d at 5, 52 Ill.Dec. 560, 422 N.E.2d at 244. The ruling remains subject to reconsideration by the court throughout the trial. Beasley, 97 Ill.App.3d at 4, 52 Ill.Dec. 560, 422 N.E.2d at 244. It is within the discretion of the trial judge to grant or deny the motion. Ficken v. Alton & Southern Ry. Co., 291 Ill.App.3d 635, 642, 226 Ill.Dec. 187, 685 N.E.2d 1, 7 (1996). Whether granted or denied, a motion in limine does not preserve issues for review. Chubb/Home Insurance Cos. v. Outboard Marine Corp., 238 Ill.App.3d 558, 567"68, 179 Ill.Dec. 591, 606 N.E.2d 423, 429 (1992). If the court denies the motion, the movant must object to the evidence when it is offered at trial. Pyskaty v. Oyama, 266 Ill.App.3d 801, 819, 204 Ill.Dec. 328, 641 N.E.2d 552, 566 (1994). An issue that is not objected to at trial is waived on appeal. Ficken, 291 Ill.App.3d at 644, 226 Ill.Dec. 187, 685 N.E.2d at 8. This court will not reverse the circuit court's order in the absence of a clear showing of abuse of discretion. Ficken, 291 Ill.App.3d at 642, 226 Ill.Dec. 187, 685 N.E.2d at 7. | It is within the discretion of the trial judge to grant or deny a motion in limine. | Is it within the discretion of the trial judge to grant or deny a motion in limine? | Pretrial Procedure - Memo # 253 - C - PB.docx | LEGALEASE-00012245-LEGALEASE-00012246 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14196 | Union Elec. Co. v. Illinois Commerce Comm'n, 39 Ill. 2d 386 | 190+6 | Section 67 of the Act (Ill.Rev.Stat.1965, chap. 111 2/3, par. 71) provides for modification of decisions and orders and provides in part: "Anything in this Act to the contrary notwithstanding, the Commission may at any time, upon notice to the public utility affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any rule, regulation, order or decision made by it." | Order of Commerce Commission which purported to modify and amend a certificate of convenience and necessity previously granted to electric company to furnish natural gas service in certain area, which reduced that area and granted a certificate of convenience and necessity to another utility to serve major part of area previously allocated to electric company, constituted a modification or rescission of electric company's certificate which was governed by statute relating to modification of decisions and orders, rather than the type of alteration or modification contemplated by statute providing that certificates of public convenience and necessity may be altered or modified by the Commission upon its own motion or upon application by person or corporation affected. S.H.A. ch. 1112/323, SS 56, 71. | Is an opportunity to be heard provided under the Public Utilities Act? | 042188.docx | LEGALEASE-00121794-LEGALEASE-00121796 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 14197 | City of Oakland v. Key Sys., 64 Cal. App. 2d 427 | 317A+181 | The Railroad Commission may have general jurisdiction over a transportation company and may properly have assumed jurisdiction in determining certain questions previously, but if the commission does not in fact act on the particular question involved the courts are forced to prescribe a remedy. In addition, the question involved may be strictly a legal one, in which event the courts take jurisdiction (Sale v. Railroad Commission, 15 Cal.2d 612, 104 P.2d 38; Hanlon v. Eshleman, 169 Cal. 200, 146 P. 656), but the powers of the commission are unlimited if the matter is cognate and germane to the regulation of public utilities. City of San Mateo v. Railroad Commission, 9 Cal.2d 1, 68 P.2d 713. | In proceeding in quo warranto brought by city, through port commission, to determine authority of defendant public utilities to exercise certain franchises and privileges upon an area of tidelands within territorial limits of city, superior court could enter binding judgment if the Railroad Commission should not assume jurisdiction upon a related question germane to the operation of the utility company. Gen.Laws Act 6386; Const. art. 12, SS 22, 23. | Are the powers of the Railroad Commission unlimited? | 042200.docx | LEGALEASE-00122056-LEGALEASE-00122057 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 14198 | Chrysler First Bus. Credit Corp. v. Kawa, 914 P.2d 540 | 366+7(1) | It is fundamental that sureties have the right of subrogation to the creditor's position when a debt goes into default. As stated in Behlen Manufacturing Co. v. First National Bank, supra, 28 Colo.App. at 306, 472 P.2d at 706: "A surety is entitled to be subrogated to the benefit of all the securities and means of payment under the creditor's control, and so, in the absence of assent, waiver, or estoppel, he is generally released by any act of the creditor which deprives him of such right."When Chrysler released the first deed of trust on the property in 1992, the property was forever lost to defendants as a source of repayment of the Chrysler debt. This act materially altered the surety relationship between the parties by interfering with the defendants' access to their security. | Sureties have right of subrogation to creditor's position when debt goes into default. | Do sureties have the right of subrogation to a creditor's position when debt goes into default? | Subrogation - Memo # 734 - C - SU.docx | ROSS-003312152-ROSS-003312153 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14199 | In re Big Idea Prods., 372 B.R. 388 | 366+7(1) | Here, as the Bankruptcy Code does not provide clear direction and the parties posted the Bond with the Texas District Court, Texas state law is relevant to determining the rights and claims of the Creditor Trust and Safeco in the $500,000 paid in that litigation. The Supreme Court of Texas defines a surety as "a party who promises to answer for the debt of another." Crimmins v. Lowry, 691 S.W.2d 582, 585 (Tex.1985). Thus, Safeco, who posted all of the Bond proceeds, is the surety of Big Idea as the principal. A surety who pays a principal's debts has a right of subrogation, Id. Under Texas law, subrogation "has been defined as "a legal fiction by force of which an obligation, extinguished by payment made by a third person, is treated as still subsisting for his benefit" or "the procedure by which the equitable rights of one person are worked out through the legal rights of another." " Interfirst Bank Dallas, N.A. v. United States Fid. & Guar. Co., 774 S.W.2d 391, 397(Tex.App.1989) (quoting Texas Co. v. Miller, 165 F.2d 111, 115 (5th Cir.1947)). The right of subrogation is not based on a contract but rather it is an equitable right that arises by operation of law. Interfirst Bank Dallas, N.A., 774 S.W.2d at 397. A surety who pays a creditor of the principal is subrogated to all of the rights that creditor has to collect the debt from the principal. Crimmins, 691 S.W.2d at 585. For instance, the Texas Business and Commerce Code provides "(b) A surety who pays on a judgment is subrogated to all of the judgment creditor's rights under the judgment. A subrogated surety is entitled (1) to execution on the judgment against the principal's property for the amount of his payment, plus interest and costs." Tex. Bus. & Com.Code " 34.04(b). Moreover, a surety can be subrogated not only to the rights of the creditor, but also to the rights of the principal on whose behalf the surety paid. Interfirst Bank Dallas, N.A., 774 S.W.2d at 397"98; St. Paul Fire & Marine Ins. Co. v. United States, 370 | Under Texas law, a surety who pays a creditor of the principal is subrogated to all of the rights that creditor has to collect the debt from the principal. | Is a surety who pays a creditor of the principal subrogated to all of the rights that creditor has to collect the debt from the principal? | Subrogation - Memo # 740 - C - SU.docx | ROSS-003324625-ROSS-003324627 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14200 | In re Tomlin, 280 B.R. 374 | 366+7(1) | A guarantor steps into the shoes of the initial creditor. The guarantor is subrogated to the rights of the initial creditor. Upon payment of the debt by the guarantor, the debtor's obligation to the creditor becomes an obligation to the guarantor. It is not a new debt but rather shifts the original debt from the creditor to the guarantor who steps into the creditor's shoes. Section 166 of the IRC addresses guarantors, endorsers, indemnitors and those who act in a manner essentially equivalent to such. Putnam v. Commissioner, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956). | Upon payment of debt by guarantor, guarantor steps into shoes of initial creditor and is subrogated to rights of initial creditor; there is no new debt to guarantor, but shifting of original debt from creditor to guarantor. | "Once the guarantor pays a creditor, does he step into the shoes of the debtor whose debt he has paid and acquire that debtor's rights with respect to the obligation he has satisfied?" | 044208.docx | LEGALEASE-00122119-LEGALEASE-00122120 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 14201 | Murphy v. Aero-Med, Ltd., 345 F. Supp. 2d 40 | 241+199(1) | When a defendant raises the statute of limitations as a defense, the plaintiff bears the burden of showing that the case was timely filed. Riley, 409 Mass. at 243"44, 565 N.E.2d 780. Thus, in order for this case to survive summary judgment, Murphy must prove that her negligence and breach of warranty causes of action did not accrue before February 17, 1995, and that her Chapter 93A cause of action did not accrue before February 17, 1994. The issue of when a cause of action accrues is a question of fact which, ordinarily, must be decided by a trier of fact. Riley, 409 Mass. at 245, 565 N.E.2d 780. Summary judgment may, nevertheless, be appropriate in cases where there is no legitimate factual dispute regarding when the cause of action accrued. | Issue of when a cause of action accrues for limitations purposes is a question of fact which, ordinarily, must be decided by a trier of fact. | Is the issue of when and to whom a cause of action accrues a question of fact? | Action - Memo # 134 - C CS.docx | ROSS-003284607-ROSS-003284609 | SA, Sub | 0.81 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14202 | Washington Metro. Area Transit Auth. v. Ragonese, 617 F.2d 828 | 13+61 | WMATA's action to enforce its right to damages does not accrue until its entitlement to payment is established. Cf., e. g., Communist Party of the United States v. Subversive Activities Control Board, 367 U.S. 1, 71, 79, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961) (Communist Party not entitled to challenge regulatory aspects of statute until its rights were actually threatened). Proceedings to determine that entitlement were already underway in the Eastern District of Virginia when WMATA sought enforcement in the district court in the District of Columbia. When that entitlement arises that is, whether it arises when WMATA makes its decision, or alternatively, when judicial review is complete is a closely related question that could be raised in the Virginia proceedings, and its resolution determines when WMATA may seek enforcement. With a decision that WMATA's rights have matured being a prerequisite to enforcement and with that question pending before another court, Judge Smith acted within his discretion when he dismissed the action in his court for now but left WMATA the opportunity to refile once it became entitled to immediate payment. | Action to enforce right to damages does not accrue until entitlement to payment is established. | Does an action to enforce a right to damages accrue before entitlement to payment is established? | Action - Memo # 136 - C CS.docx | ROSS-003298853-ROSS-003298854 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14203 | Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 897 N.W.2d 821 | 13+61 | This brings us to the pivotal question: did Savoie have a claim for legal malpractice against Larkin Hoffman while he was alive? Security Bank argues that a legal-malpractice claim accrued before Savoie's death and that as personal representative, it should be allowed to pursue that claim. We therefore examine Minnesota caselaw regarding the time for accrual of a claim based on malpractice. In so doing, we are mindful that "[a] cause of action accrues when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim." Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 832 (Minn. 2011). | A cause of action "accrues" when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim. | When does general right of action accrue? | Action - Memo # 144 - C CS.docx | ROSS-003310267-ROSS-003310268 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 14204 | Seymour v. Richardson, 194 Va. 709 | 13+1 | The Anderson case, however, was dealing with the effect of the statutes of limitation on the right of action. "It is frequently the case that more or less confusion arises from a failure to distinguish between the cause and the right of action. 'A cause of action is said to accrue to any person when that person first comes to a right to bring an action.There is, however, an obvious distinction between a cause of action and a right, though a cause of action generally confers a right.'" Lewis' Adm'r v. Glenn, Trustee, 84 Va. 947, 979, 6 S.E. 866, 882. Mercer v. Richmond, 152 Va. 736, 744, 148 S.E. 803, 805. In the latter case the question was whether the sixty-day notice of injury required by city ordinance to be given before a suit could be maintained related to the date of the injury or to the qualification of the personal representative of the injured person whose death resulted from the injury. The court said that it agreed with the principle stated in the Anderson case, and other cases cited, that the right of action which accrued to the administrator upon the death of his intestate was entirely different from the right of action which accrued to the injured party, but that the right of action referred to in those cases "is entirely different from the cause of action. | A "cause of action" accrues to a person when that person first comes to a right to bring action and consists of act or omission constituting violation of duty but differs from a "right of action" which is the right to bring suit. | "Does a ""cause of action"" accrue to a person when that person first comes to a right to bring action?" | 005582.docx | LEGALEASE-00123917-LEGALEASE-00123918 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14205 | Gen. Motors Acceptance Corp. v. Howard, 487 S.W.2d 708 | 13+61 | The accrual of a cause of action results when facts come into existence which entitle one to institute and maintain a suit. Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 721 (1945); A. H. Belo Corporation v. Blanton, 133 Tex. 391, 129 S.W.2d 619, 621 (1939); Shamrock Oil and Gas Corporation v. Price, 364 S.W.2d 260, 262 (Tex.Civ.App., 1963, no writ). The accrual of a cause of action is not negated by a showing that it may be subject to defeat on the merits by an affirmative defense. Thus, false statements indicating that a plaintiff is bankrupt have been held to be libelous per se, even though a suit for damages therefor may be defeated on the merits by an affirmative defense of conditional privilege. Denton Publishing Company v. Boyd, 460 S.W.2d 881 (Tex.1970); Dun and Bradstreet, Inc. v. O'Neil, 456 S.W.2d 896 (Tex.1970); Thorn v. Theo H. Blue Drilling, Inc., 472 S.W.2d 535 (Tex.Civ.App., 1971, no writ). The above cases indicate that malice is not an essential element of the original cause of action, although once the defendant establishes an affirmative defense of privilege, the burden is upon the plaintiff to show, if he can, that the privilege was lost because of malice. These defenses and counter-defenses go to the merits and often, as here, involve fact issues or mixed issues of law and fact. This Court held in Boyd, supra:"Privilege is an affirmative defense in the nature of confession and avoidance; and, except where the plaintiff's petition shows on its face that the alleged libelous publication is protected by a privilege, the defendant has the burden of proving that the publication is privileged. A. H. Belo & Co. v. Looney, 112 Tex. 160, 246 S.W. 777 (1922); Dealers National Insurance Co. v. Rose, 396 S.W.2d 535 (Tex.Civ.App.1965, no writ) . . ." (460 S.W.2d at 884). | The accrual of a cause of action is not negated by showing that it may be subject to defeat on the merits by an affirmative defense. | Is the accrual of a cause of action negated by showing that it may be subject to defeat on the merits by an affirmative defense? | 005620.docx | LEGALEASE-00124013-LEGALEASE-00124014 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14206 | In re Bounds, 495 B.R. 725 | 13+61 | Where the act setting the injury in motion is in itself a completed wrong, such as an invasion of some personal or property right of the plaintiff, the act and legal injury occur simultaneously. Atkins, 417 S.W.2d at 153 (citation omitted). In that case, the cause of action accrues "from the time the act is committed, even where little, if any, actual damage occurs immediately on commission of the tort." Id. (citation omitted). On the other hand, "[i]f the act is of itself not unlawful in this sense," the cause of action accrues "when, and only when, the damages are sustained." Id. (citation omitted). This is true even if "at the time the act is done it is apparent that injury will inevitably result." Id. (citation omitted). | Under Texas law, when act setting injury in motion is itself a completed wrong, such as an invasion of some personal or property right of plaintiff, the act and legal injury occur simultaneously, and cause of action "accrues" from time that act is committed, even though little, if any, actual damage occurs immediately upon commission of act. | Does a cause of action accrue when damages are sustained even if at the time that the act is done it is apparent that injury will inevitably result? | Action - Memo # 32 - C - LK.docx | ROSS-003282650-ROSS-003282651 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14207 | Sec. Bank & Tr. Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd., 897 N.W.2d 821 | 13+61 | As the Minnesota Supreme Court has noted, different jurisdictions have articulated three alternative thresholds for determining when a cause of action for malpractice accrues: (1) under the traditional "occurrence" rule, which assumes that nominal damages occur, the cause of action accrues, and the statute of limitations starts to run, at the time of the negligent act; (2) the "discovery" rule, under which the cause of action accrues when the plaintiff knew or should have known of the injury; and (3) the "damage" rule, under which the cause of action accrues "when "some damage has occurred as a result of the alleged malpractice." " Antone v. Mirviss, 720 N.W.2d 331, 335-36 (Minn. 2006) (quoting Herrmann v. McMenomy & Severson, 590 N.W.2d 641, 643 (Minn. 1999)). Minnesota adheres to the rule requiring "some damage" to occur for a cause of action to accrue. Id. at 338. Stated another way, "the alleged negligence. coupled with the alleged resulting damage is the gravamen in deciding the date upon which the cause of action at law herein accrues." Dalton v. Dow Chem. Co., 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968). This rule avoids the potential pitfalls of the occurrence rule, which may encourage speculative litigation and involve wasteful economic behavior, and the discovery rule, which may open the door to open-ended liability. Antone, 720 N.W.2d at 335. We have noted, however, that " "[s]ome damage" is defined broadly, and the cause of action accrues on the occurrence of any compensable damage." Veit v. ProSource Techs., Inc., 879 N.W.2d 8, 10 (Minn. App. 2016) (quotation omitted). Thus, the cause of action exists at this point "even though the ultimate damage is unknown or unpredictable." Dalton, 280 Minn. at 154, 158 N.W.2d at 585 (quotation omitted). | Minnesota adheres to the rule requiring some damage to occur for a cause of action to accrue. | Does any rule require some damage to occur for a cause of action to accrue? | Action - Memo # 48 - C - LK.docx | ROSS-003296420-ROSS-003296421 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 14208 | Lapham v. Stewart, 137 Idaho 582 | 241+55(3) | This Court has not limited the "objectively ascertainable damage" standard to medical malpractice cases. It applies to all types of professional malpractice. Chicoine v. Bignall, 122 Idaho 482, 835 P.2d 1293 (1992).That standard is not separate and distinct from the requirement that there be some damage before a cause of action accrues, however. The "objectively ascertainable damage" standard is simply an additional analytical tool to be used in determining when "some damage" has occurred. Id. Whether there was some damage, or whether that damage was objectively ascertainable, does not depend upon the knowledge of the injured party. Id. To require that the fact of damage must be objectively ascertainable to the injured party would simply reinstate a discovery rule, which the legislature has rejected. Hawley v. Green, 117 Idaho 498, 788 P.2d 1321 (1990). | "Objectively ascertainable damage" standard for accrual of malpractice cause of action is not limited to medical malpractice cases, but applies to all types of professional malpractice. I.C. S 5-219, subd. 4. | Does any rule require some damage to occur for a cause of action to accrue? | 005840.docx | LEGALEASE-00123205-LEGALEASE-00123206 | Order, SA | 0.75 | 1 | 0 | 0 | 1 | |
| 14209 | Kanon v. Methodist Hosp., 9 S.W.3d 365 | 241+43 | Generally, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury. Childs v. Haussecker, 974 S.W.2d 31, 36 (Tex.1998). An exception to this rule occurs when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 456 (Tex.1994). Under the discovery rule, "a cause of action does not accrue until a plaintiff knows or, through the exercise of reasonable care and diligence, "should have known of the wrongful act and resulting injury"." Childs, 974 S.W.2d at 37 (quoting S.V. v. R.V., 933 S.W.2d 1, 4 (Tex.1996)). The supreme court reasserted this rule that accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury, not when the plaintiff knew of the specific nature of each wrongful act that may have caused injury. See KPMG Peat Marwick v. Harrison County Housing Finance Corp., 988 S.W.2d 746, 749 (Tex.1999). | Generally, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury. | Does a cause of action accrue when a wrongful act causes an injury? | 005850.docx | LEGALEASE-00123275-LEGALEASE-00123276 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14210 | Diamond v. Davis, 680 A.2d 364 | 241+199(1) | What constitutes the accrual of a cause of action is a question of law. See, e.g., Bussineau v. President of Georgetown College, 518 A.2d 423, 425 (D.C.1986). When accrual actually occurred in a particular case is a question of fact. See, e.g., Ehrenhaft v. Malcolm Price, Inc., 483 A.2d 1192, 1204 (D.C.1984). | What constitutes accrual of cause of action is question of law; however, when accrual actually occurred in particular case is question of fact. | Does deciding what constitutes accrual of a cause of action entailing statutory construction present an issue of law? | 006488.docx | LEGALEASE-00123423-LEGALEASE-00123424 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14211 | Klopstock v. Superior Court in & for City & Cty. of San Francisco, 17 Cal. 2d 13 | 302+248(2) | Of course, the court's power to permit amendments of pleadings is not unlimited. It has generally been said that an amendment may not be permitted where the effect of such amendment is to state "another and distinct cause of action". Dubbers v. Goux, 51 Cal. 153, 155; Clark, Code Pleading, p. 502 et seq. But this court has said: "It is obvious that the unqualified way in which the rule is sometimes stated"i. e. that a new or different cause of action cannot be introduced by amendment"cannot be accepted; for the most common kinds of amendments are those in which complaints are amended that do not state facts sufficient to constitute a cause of action, and in these, and often in the case of new parties, a new cause of action is in fact for the first time introduced. All that can be required, therefore (to use the language of Mr. Pomeroy), is that "a wholly different cause of action" shall not be introduced' Frost v. Witter, 132 Cal. 421, 424, 64 P. 705, 706, 84 Am.St.Rep. 53; 21 Cal.Jur. 197 et seq. In determining whether a wholly different cause of action is introduced by the amendment technical considerations or ancient formulae are not controlling; nothing more is meant than that the defendant not be required to answer a wholly different legal liability or obligation from that originally stated. As the court says in the Frost case, supra, 132 Cal. page 426, 64 P. page 707, 84 Am.St.Rep. 53, for the purpose of determining whether amendment is possible, the "cause of action" referred to as furnishing the test means only the legal obligation which it is sought to enforce against the defendant. Other courts have used almost identical language; the test is not whether under technical rules of pleading a new cause of action is introduced, but rather, the test is whether an attempt is made to state facts which give rise to a wholly distinct and different legal obligation against the defendant. The power to permit amendment is denied only if a change is made in the liability | The test in determining whether pleading can be amended is not whether under technical rules of pleading a new cause of action is introduced, but whether attempt is made to state facts which give rise to a wholly distinct and different legal obligation against defendant, and the power to permit amendment will be denied only if a change is made in the liability sought to be enforced against the defendant. Code Civ.Proc. S 473. | Is a cause of action an obligation the plaintiff seeks to enforce against the defendant? | 006496.docx | LEGALEASE-00123492-LEGALEASE-00123493 | Condensed, Order, SA | 0.8 | 1 | 1 | 0 | 1 | 1 |
| 14212 | Moses v. CashCall, 781 F.3d 63 | 25T+121 | To be sure, the arbitration policies implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. "" 1"14, are to be robustly followed. See, e.g., CompuCredit Corp. v. Greenwood, """U.S. """", 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012) ("[The FAA] establishes "a liberal federal policy favoring arbitration agreements' " (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983))); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ("The preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate ..."). At the same time, however, "Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (internal quotation marks and citation omitted). And in cases where tension arises between the FAA and another statute, the Supreme Court has provided a framework for resolving it, holding that the party seeking to prevent enforcement of an applicable arbitration agreement must show that "Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). That intent must be deducible from (1) the statute's text; (2) its legislative history; or (3) "an inherent conflict between arbitration and the statute's underlying purposes." Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); see also Gilmer v. Interstate/Johnson Lane Corp., 895 F.2d 195, 197 (4th Cir.1990), aff'd, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Where such an intent can be deduced, the court of | Where Congress's intent to preclude waiver of judicial remedies for statutory rights at issue can be deduced, the court of first impression has discretion to decide whether to withhold arbitration. 9 U.S.C.A. S 1 et seq. | Do courts have discretion to decide whether to withhold arbitration? | Alternative Dispute Resolution - Memo 397 - RK.docx | ROSS-003285071-ROSS-003285072 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 14213 | United States v. Ganim, 510 F.3d 134 | 63+1(1) | Like extortion, the crime of bribery requires a quid pro quo. See, e.g., Alfisi, 308 F.3d at 148 ("[B]ribery ... requires a quid pro quo element."); see also Sun"Diamond, 526 U.S. at 405, 119 S.Ct. 1402 (distinguishing an illegal gratuity from a bribe which "requires proof of a quid pro quo"). And, like in the extortion cases, donors and recipients engaged in ongoing bribery schemes do not always spell out in advance the specific match between gift and act. For example, in United States v. Bonito, 57 F.3d 167 (2d Cir.1995), we upheld the conviction of a real estate developer who gave a car to a city housing official as a bribe, but when the deal the developer hoped the official could ensure fell through, the official found other ways of using his position for the developer's financial benefit. Id. at 169"71, 174. We found the jury charge sufficient because it required the jury to find a corrupt intent on the part of the payor to influence the performance of official acts. Id. at 171. | Like extortion, the crime of bribery requires a quid pro quo. | Does the crime of bribery require a quid pro quo like extortion? | 011018.docx | LEGALEASE-00122588-LEGALEASE-00122589 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14214 | Corbin-Dykes Elec. Co. v. Burr, 18 Ariz. App. 101 | 113+1 | In order for there to be any contract between Corbin-Dykes and Burr there must be a manifestation of mutual assent thereto by both, and the acts by which their mutual assent is manifested must show that they intended to do those acts. 1 Restatement of Contracts, s 20 (1932). This manifestation of intent, i.e., offer or acceptance, is determined by the words used and the other manifestations of intent having reference to the contract. 1 Restatement of Contracts, ss 226, 227 (1932). Custom or usage is defined as an habitual or customary practice, more or less widespread, which prevails within a geographical or sociological area. Sam Levitz Furniture Co. V. Safeway Stores, Inc., 10 Ariz.App. 225, 457 P.2d 938 (1969). Usage is a course of conduct based upon a series of actual occurrences. Coyner Crop Dusters v. Marsh, 90 Ariz. 157, 175, 367 P.2d 208, 220 (1961), rehearing granted on other grounds 91 Ariz. 371, 372 P.2d 708 (1962).1 However, evidence of custom or usage is admissible only where an existing agreement between the parties is ambiguous, to show what the parties intended by their agreement. Coury Bros. Ranches, Inc. v. Ellsworth, 103 Ariz. 515, 446 P.2d 458 (1968); Lenslite Co. v. Zocher, 95 Ariz. 208, 388 P.2d 421 (1964); Gray v. Headley, 35 Ariz. 232, 276 P. 523 (1929). Primarily this is limited to proving the meaning of words or phrases used in the agreement. Sam Levitz Furniture Co. v. Safeway Stores, Inc., 10 Ariz.App. 225, 457 P.2d 938 (1969); Pioneer Constructors v. Symes, 77 Ariz. 107, 267 P.2d 740 (1954). M. Udall, Ariz.Law of Evidence, s 157, pp. 328-330 (1960). | "Custom" or "usage" is defined as an habitual or customary practice, more or less widespread, which prevails within a geographical or sociological area; usage is a course of conduct based on a series of actual occurrences. | How is custom or usage defined? | Customs & Usage - Memo 25 - TH.docx | ROSS-003300490-ROSS-003300491 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14215 | Res. Investments v. United States, 85 Fed. Cl. 447 | 148+2.1 | However, plaintiffs' investments were reasonable, because plaintiffs had no reason to believe that they would not be able to procure all of the necessary permits, given the pressing need for a new landfill and their familiarity with waste disposal in Pierce County. "[T]he nature and extent of permitted development under the regulatory regime vis-a-vis the development sought by the claimant may also shape legitimate expectations." Palazzolo v. Rhode Island, 533 U.S. at 634 (O'Connor, J., concurring); see also Bowles v. United States, 31 Fed.Cl. 37 (1994) (finding evidence that landowner would have met state's conditions to build sufficient to establish investment-backed expectations). Even before the Corps asserted jurisdiction, plaintiffs had performed three years of environmental studies and engineering design, and submitted a detailed Environmental Assessment to Washington State showing that the project protected groundwater and complied with all permitting requirements. Pls. Ex. 7, 8, 79 at 998. That plaintiffs eventually obtained all of the necessary state and local permits, some multiple times, supports that their expectations were in fact reasonable. Pls.' Ex. 80 at 1105 " 1. David Barrows, a former environmental manager whom plaintiffs hired to help them navigate the 404 permit process, further corroborates that plaintiffs' expectations were reasonable. Pls. Ex. 80 " 3 ("My review of the permit files and discussions with the Corps did not reveal any fatal flaws for the proposed landfill"); " 6 ("I briefed RII that they had a good chance of getting a permit from the Corps if they could meet the burden of proof that longhaul was more expensive than the proposed project."); see also Laguna Gatuna v. United States, 50 Fed.Cl. 336, 347 (2001) (finding that obtaining the necessary state permits and disposing of salt water on its property in compliance with state law demonstrated that plaintiff had reasonable investment-backed expectations); Def.'s Cross"Mem. Summ. J. | Nature and extent of permitted development under regulatory regime vis-a-vis the development sought by claimant may shape claimant's legitimate investment-backed expectations, for purposes of applying Penn Central test for partial regulatory takings. U.S.C.A. Const.Amend. 5. | What factors shape reasonable expectation under the takings law? | 017463.docx | LEGALEASE-00122637-LEGALEASE-00122638 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 14216 | Bd. of Regents of Univ. of Houston Sys. v. FKM P'ship, Ltd., 178 S.W.3d 1 | 148+166 | Our review of this case must be guided by the applicable statutes and controlling case law. Although not immediately apparent, the property code's eminent domain provisions, read in conjunction with Texas case law, reveal that the county court did not lose jurisdiction when the University amended its pleadings to condemn a smaller portion of land than originally sought before the commissioners. The county court's jurisdiction vests when a party files objections to the special commissioners' findings. Tex. Prop.Code " 21.017. Once the objections are filed, the court must "try the case in the same manner as other civil cases." Tex. Prop.Code " 21.018(b). Like other civil cases, an eminent domain proceeding is subject to the rules of civil procedure. Rose v. State, 497 S.W.2d 444, 445"46 (Tex.1973). The rules of civil procedure permit parties to amend their pleadings and also to dismiss some or all of their claims. Tex.R. Civ. P. 63 (permitting amendments); Tex.R. Civ. P. 162 (permitting voluntary dismissal). Nothing in the property code specifies that the county court loses jurisdiction of an eminent domain proceeding when the condemning authority seeks to dismiss part of its claim by amending its pleadings to take less. See Tex. Prop.Code "" 21.001".065. | Like other civil cases, an eminent domain proceeding is subject to the rules of civil procedure. | Are eminent domain proceedings subject to the rules of civil procedure? | 017469.docx | LEGALEASE-00122736-LEGALEASE-00122737 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14217 | Lafontant v. Aristide, 844 F. Supp. 128 | 221+151 | Head-of-state immunity, like foreign sovereign immunity, is premised on the concept that a state and its ruler are one for purposes of immunity. As early as 1812 the Supreme Court embraced the notion, grounded in customary international law, that a head-of-state is absolutely "exempted" from the jurisdiction of the receiving state's courts. Schooner Exchange v. M'Faddon, 11 U.S. (7 Cranch) 116, 3 L.Ed. 287 (1812). | Head-of-state immunity is premised on concept that state and its ruler are one for purposes of immunity. | Is head-of-state immunity premised on the concept that a state and its ruler are one for purposes of immunity? | International Law - Memo 577 - TH.docx | ROSS-003289013-ROSS-003289014 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 14218 | John Mohr & Sons v. Vacudyne Corp., 354 F. Supp. 1113 | 221+324 | There can be no infringement of the Plaintiff's patent by the Defendant's manufacture of machines capable of performing the patented process. The United States patent system makes no claim to extraterritorial effect. The Acts of Congress do not and were not intended to operate beyond the limits of the United States. Brown v. Duchesne, 19 How. 183, 15 L.Ed. 595 (1856). The United States has correspondingly rejected the claims of other countries to exercise such control over our markets. Boesch v. Graff, 133 U.S. 697, 10 S.Ct. 378, 33 L.Ed. 787 (1890). | The Acts of Congress do not and are not intended to operate beyond the limits of the United States. | Are the acts of congress intended to operate beyond the limits of the United States? | International Law - Memo # 182 - C - PHS.docx | ROSS-003298421-ROSS-003298422 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14219 | United States v. Roberts, 1 F. Supp. 2d 601 | 221+138 | In this case, it is undisputed that the alleged offenses occurred "in international waters approximately 63 miles off the coast of Puna Mols, Mexico." Aff. of Ms. Bryson 2. The "high seas" encompasses that part of the ocean which is beyond the territorial sea of any country. See United States v. Louisiana, 394 U.S. 11, 23, 89 S.Ct. 773, 781, 22 L.Ed.2d 44 (1969) ( "Outside the territorial sea are the high seas, which are international waters not subject to the dominion of any single nation."); Kollias v. D & G Marine Maintenance, 29 F.3d 67, 69 (2d Cir.1994) ("[T]he high seas .. have been defined as those waters beyond the territorial waters of the United States, which extend three miles from the coast."). Although the United States has historically adhered to a territorial sea of three miles, international conventions permit a territorial sea of up to 12 miles. See Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 441 n. 8, 109 S.Ct. 683, 692 n. 8, 102 L.Ed.2d 818 (1989). It is undisputed that the alleged offenses in this case occurred well outside the 12"mile limit of any nation. | The "high seas" encompasses that part of the ocean which is beyond the territorial sea of any country. | Does the term high seas encompass the part of the ocean which is beyond the territorial sea of any country? | International Law - Memo # 190 - C - PHS.docx | ROSS-003325060-ROSS-003325061 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14220 | Hernandez v. United States, 757 F.3d 249 | 221+392 | Thus, Boumediene precludes the categorical test Agent Mesa suggests. Whatever else we may derive from the decision, one principle is clear: de jure sovereignty is not "the only relevant consideration in determining the geographic reach of the Constitution." Id. at 764, 128 S.Ct. 2229. Instead, Boumediene and the cases cited therein indicate that our inquiry involves the selective application of constitutional limitations abroad, requiring us to balance the potential of such application against countervailing government interests. In other words, our inquiry is not whether a constitutional principle can be applied abroad; it is whether it should. See Reid v. Covert, 354 U.S. 1, 75, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (Harlan, J., concurring) ("But, for me, the question is which guarantees of the Constitution should apply in view of the particular circumstances, the practical necessities, and the possible alternative which Congress had before it. The question is one of judgment, not of compulsion." (emphasis added)). | De jure sovereignty is not the only relevant consideration in determining the geographic reach of the Constitution; the Court of Appeals' inquiry involves the selective application of constitutional limitations abroad, requiring the Court to balance the potential of such application against countervailing government interests. | Is de jure sovereignty the only relevant consideration in determining the geographic reach of a Constitution? | International Law - Memo # 811 - C - ANC.docx | ROSS-003324883-ROSS-003324886 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 14221 | Mayer v. Clark, 40 Ala. 259 | 289+714 | A partnership creditor has no lien on partnership property, which he can enforce at law, except by obtaining judgment and execution thereon; and it seems that he has no lien in equity.--Story on Partnership, " 97; Ex parte Bufford, 6 Vesey, 119-26, where the subject is fully discussed by Lord Eldon; and also in Story on Partnership, ch. 15. The cases of Burwell et al. v. Springfield, (15 Ala. 273,) and Nall et al. v. McIntyre, (31 Ala. 533,) are not in conflict with the above. Nor is it inconsistent with the rule of the administration of partnership effects, which gives a priority to partnership, over individual creditors.--Emanuel v. Bird's Adm'r, 19 Ala. 603. | A partnership creditor has no lien on partnership property which he can enforce at law, except by obtaining judgment and execution thereon; and it seems that in equity he has no lien. | Do partnership creditors have a lien upon the partnership property? | Partnership - Memo 174 - BP.docx | ROSS-003287465-ROSS-003287466 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 14222 | EZ Green Assocs. v. Georgia-Pac. Corp., 331 Ga. App. 183 | 115+176 | At the outset, we note that a trial court's ruling on a motion in limine is reviewed only for an abuse of discretion. Indeed, we have recognized that the admission or exclusion of evidence is "within the sound discretion of the trial court," but "the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." With these guiding principles in mind, we turn now to EZ Green's claims of error. | Trial court did not abuse its discretion by granting grass seed system licensee's motion in limine to exclude licensor's proposed calculation method for proving lost profits, as they were not based on any actual track record of sales as required by Georgia law; licensor's argument that its track record of sales was "tainted" by licensee's misconduct did not exempt it from requirement that it must prove its damages to a reasonable degree of certainty. | Is admission or exclusion of evidence within the sound discretion of the trial court and how should the court exercise its power while granting of a motion in limine excluding evidence? | 024043.docx | LEGALEASE-00122898-LEGALEASE-00122899 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 14223 | Gary v. Heritage Nat. Healthplan Servs., 485 N.W.2d 851 | 30+3194 | The district court has wide discretion in its rulings on pretrial deadlines and will be reversed only for an abuse of such discretion. Donovan v. State, 445 N.W.2d 763, 766 (Iowa 1989) (citation omitted). In addition, a court enjoys broad latitude in interpreting its own prior order. In re Estate of Roggentien, 464 N.W.2d 896, 898 (Iowa App.1990) (citing Thomas v. Minner, 340 N.W.2d 285, 286 (Iowa 1983)). We determine the court did not abuse its discretion in interpreting its scheduling order. The court properly overruled Gary's motion to determine the sufficiency of Heritage's responses. | District court has wide discretion in its rulings on pretrial deadlines and will be reversed only for abuse of such discretion. | Does District court have wide discretion in its rulings on pretrial deadlines? | 024048.docx | LEGALEASE-00122927-LEGALEASE-00122928 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 14224 | Duran v. Hyundai Motor Am., 271 S.W.3d 178 | 307A+3 | Motions in limine serve fundamentally different purposes than motions for summary judgment. They are not subject to the same procedural safeguards. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069"70 (3d Cir.1990). Thus, a motion in limine should not be used as a substitute for a dispositive motion such as a motion for summary judgment.12 Courts that have addressed attempts to use a motion in limine in such a manner, either explicitly or implicitly, have found such use to be in error. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d at 1069"70; Cannon v. William Chevrolet/Geo, Inc., 341 Ill.App.3d 674, 276 Ill.Dec. 593, 794 N.E.2d 843, 849 (2003); Lin v. Gatehouse Constr. Co., 84 Ohio App.3d 96, 616 N.E.2d 519, 524"25 (1992); BHG, Inc. v. F.A.F., Inc., 784 A.2d 884, 886 (R.I.2001). As several courts have noted, a motion in limine should not be used to "choke off" a party's entire claim or defense. McCracken v. Edward D. Jones & Co., 445 N.W.2d 375, 379 (Iowa Ct.App.1989); Cass Bank & Trust Co. v. Mestman, 888 S.W.2d 400, 404 (Mo.Ct.App.1994). | A motion in limine should not be used to "choke off" a party's entire claim or defense. | "Should a motion in limine be used to ""choke off"" a party's entire claim or defense?" | 028633.docx | LEGALEASE-00122831-LEGALEASE-00122832 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14225 | Moonan v. Louisiana Med. Mut. Ins. Co., 202 So. 3d 529 | 307A+3 | The trial court is granted broad discretion in its evidentiary rulings, which are not to be disturbed on appeal absent a clear abuse of discretion. Fields v. Walpole Tire Serv., L.L.C., 45,206 (La.App. 2 Cir. 5/19/10), 37 So.3d 549, 561. A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. Heller v. Nobel Ins. Grp., 00"0261 (La. 2/2/00), 753 So.2d 841. On appeal, the court must consider whether the complained-of ruling was erroneous and whether the error prejudiced the plaintiff's case, otherwise a reversal is not warranted. La. C.E. art. 103(A); Matranga v. Parish Anesthesia of Jefferson, LLC, 14"448 (La.App. 5 Cir. 5/14/15), 170 So.3d 1077, 1090. The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove. Graves v. Riverwood Int'l Corp., 41,810 (La.App. 2 Cir. 1/31/07), 949 So.2d 576, 581 (citing Emery v. Owens-Corporation, 00"2144 (La.App. 1 Cir. 11/9/01), 813 So.2d 441, writ denied, 02"0635 (La. 5/10/02), 815 So.2d 842.). | A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. | Does the trial court have great discretion in its consideration of motions in limine? | Pretrial Procedure - Memo # 287 - C - CRB.docx | ROSS-003281810-ROSS-003281812 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14226 | S.C. Dep't of Transp. v. McDonald's Corp., 375 S.C. 90 | 30+78(1) | A motion in limine is generally not considered a final order on the admissibility of evidence and, for that reason, is not immediately appealable. See, e.g. State v. Floyd, 295 S.C. 518, 369 S.E.2d 842 (1988). Because the appeal should have been dismissed, the Court of Appeals erred in addressing the merits of the appeal. Accordingly, we vacate the opinion of the Court of Appeals and dismiss the appeal as the order on the motions in limine is not immediately appealable. | Ruling on motion in limine is generally not considered a final order on the admissibility of evidence and, for that reason, is not immediately appealable. | Is a ruling on a motion in limine a final order? | Pretrial Procedure - Memo # 60 - C - VA.docx | ROSS-003326335-ROSS-003326336 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 14227 | Petraski v. Thedos, 382 Ill. App. 3d 22 | 307A+3 | Whether a motion in limine should be granted is subject to the trial court's discretion. Sher v. Deane H. Tank, Inc., 269 Ill.App.3d 312, 317, 206 Ill.Dec. 794, 645 N.E.2d 1046 (1995). A reviewing court will not reverse a trial court's order allowing or excluding evidence in limine absent a clear showing of an abuse of that discretion. Sher, 269 Ill.App.3d at 317, 206 Ill.Dec. 794, 645 N.E.2d 1046. An abuse of discretion may be found where the trial court's ruling is arbitrary, unreasonable, or where no reasonable man would take the view adopted by the trial court. Hilgenberg v. Kazan, 305 Ill.App.3d 197, 204, 238 Ill.Dec. 499, 711 N.E.2d 1160 (1999). The decision of whether to admit expert testimony also is subject to an abuse of discretion standard. Reed v. Jackson Park Hospital Foundation, 325 Ill.App.3d 835, 842, 259 Ill.Dec. 460, 758 N.E.2d 868 (2001). | Whether a motion in limine should be granted is subject to the trial court's discretion. | Is the question of whether a motion in limine should be granted subject to the trial court's discretion? | Pretrial Procedure - Memo # 381 - C - SSB.docx | ROSS-003282829-ROSS-003282830 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14228 | Pac. Tel. & Tel. Co. v. Eshleman, 166 Cal. 640 | 317A+102 | By the amendment in 1911 of section 22 of article 12, creating a Railroad Commission, it is provided that: "No provision of this Constitution shall be construed as a limitation upon the authority of the Legislature to confer upon the Railroad Commission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred upon the Railroad Commission in this Constitution, and the authority of the Legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this Constitution." And section 23 of the same article, defining public utilities and declaring that they are subject to the control and regulation of the Railroad Commission, provides that "the right of the Legislature to confer powers upon the Railroad Commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this Constitution." To the extent, then, that the Legislature has acted in conferring powers (germane to the subject of the regulation and control of public utilities) upon the Railroad Commission, it necessarily follows that the validity of such grant of powers is not to be questioned by reason of any other provision of the state Constitution. This position is fully developed in Justice HENSHAW'S opinion. It would seem to follow, too, that if a legislative grant of power to the Railroad Commission is so extensive in terms as to exclude or limit the power of any court to question or review the order of the Commission, such exclusion or limitation must be recognized as valid, although it amounts to a restriction of a part of the jurisdiction conferred upon the courts by other parts of the Constitution. If the Legislature has plenary power to confer powers upon the Railroad Commission, it may declare that the orders of the Railroad Commission shall be final and conclusive, and not subject to review by any court of this state. Such declaration would be an exercise of | Under Const. art. 12, SS 22, 23, Legislature held authorized, subject only to the federal Constitution, to confer on the Railroad Commission any power cognate and germane to the subject of public utilities. | Are the powers conferred on the Railroad commission cognate and germane to the purposes for which it was created? | Public Utilities - Memo 121 - AM.docx | LEGALEASE-00013996-LEGALEASE-00013998 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 14229 | Pac. Bell v. Pub. Utilities Comm'n, 79 Cal. App. 4th 269 | 317A+119.1 | Section 489, subdivision (a), requires every public utility to file with the PUC a tariff"a schedule "showing all rates, tolls, rentals, charges, and classifications ... together with all rules, contracts, privileges, and facilities which in any manner affect or relate to rates, tolls, rentals, classifications, or service." Such a tariff, when approved by the PUC, has the force of law. (Trammell v. Western Union Tel. Co. (1976) 57 Cal.App.3d 538, 549"550, 129 Cal.Rptr. 361.) Only by following procedures specified in or developed under section 454 may the utility then change its published tariff. (Wood v. Public Utilities Commission (1971) 4 Cal.3d 288, 292"293, 93 Cal.Rptr. 455, 481 P.2d 823.) | A tariff, when approved by the Public Utilities Commission (PUC), has the force of law. West's Ann.Cal.Pub.Util.Code S 489(a). | Does a tariff approved by the Public Utilities Commission (PUC) have the force of law? | 042250.docx | LEGALEASE-00123520-LEGALEASE-00123521 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 14230 | Bozman v. Bozman, 146 Md. App. 183 | 13+61 | "[A] cause of action is said to have arisen "when facts exist to support each element." " Heron v. Strader, 361 Md. 258, 264, 761 A.2d 56 (2000) (quoting Owens"Illinois, Inc. v. Armstrong, 326 Md. 107, 121, 604 A.2d 47 (1992)). The elements of the tort of malicious prosecution are: "(1) the defendant instituted a criminal proceeding against the plaintiff; (2) the criminal proceeding was resolved in the plaintiff's favor; (3) the defendant did not have probable cause to institute the proceeding; and (4) the defendant acted with malice or a primary purpose other then bringing the plaintiff to justice." Okwa v. Harper, 360 Md. 161, 183, 757 A.2d 118 (2000). | Cause of action is said to have arisen when facts exist to support each element. | Is a cause of action said to have arisen when facts exist to support each element? | Action - Memo # 223 - C - NO.docx | ROSS-003324275-ROSS-003324276 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14231 | Harig v. Johns-Manville Prod. Corp., 284 Md. 70 | 241+95(5) | It is thus clear that authorities from other jurisdictions recognize the applicability of the discovery rule in contexts other than professional malpractice. We think our earlier decisions applying the discovery rule to professional malpractice actions are properly to be extended to cases involving, as here, latent disease. Both classes of tort plaintiffs may, in appropriate circumstances, be "blamelessly ignorant" of the fact that a tort has occurred and thus, ought not be charged with slumbering on rights they were unable to ascertain. Therefore, in situations involving the latent development of disease, a plaintiff's cause of action accrues when he ascertains, or through the exercise of reasonable care and diligence should have ascertained, the nature and cause of his injury. | A cause of action for latent diseases, whether framed in terms of negligence or strict liability, accrues when plaintiff discovers, or through exercise of reasonable care and diligence should have discovered, the nature and cause of his disability or impairment. Code, Courts and Judicial Proceedings, S 5-101. | Does cause of action accrue when plaintiff ascertains or should have ascertained nature and cause of injury? | 005393.docx | LEGALEASE-00124771-LEGALEASE-00124772 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 14232 | PaineWebber v. Fowler, 791 F. Supp. 821 | 25T+134(5) | Agreements to arbitrate issues exclusively in a particular forum are enforceable as a matter of contract law. See Redshaw Credit Corp. v. Insurance Professionals, 709 F.Supp. 1032, 1034 (D.Kan.1989) (Kelly, J.). Fowler's counsel candidly conceded at oral argument that Fowler technically breached the exclusive arbitration clauses in the promissory notes by raising issues relating to the notes before the NYSE, and the uncontroverted facts support that conclusion. Much as Fowler had the right to choose the forum before which she raised her sexual harassment and constructive discharge claims, PaineWebber has the right to choose the forum before which all claims arising out of the promissory notes will be arbitrated. If Ms. Fowler is allowed to raise such issues in the NYSE proceeding, PaineWebber's right will be eviscerated. | Agreements to arbitrate issues exclusively in a particular forum are enforceable as a matter of contract law. | Is an agreement to arbitrate issues in a particular forum enforceable? | 007177.docx | LEGALEASE-00125572-LEGALEASE-00125573 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14233 | United States v. Pomrenke, 198 F. Supp. 3d 648 | 63+1(1) | Section 201(b) prohibits bribes, while " 201(c) prohibits illegal gratuities. Bribery under " 201(b) is punishable by imprisonment for a term of up to fifteen years, while payment or acceptance of illegal gratuities under " 201(c) is punishable by a term of imprisonment of up to two years. See 18 U.S.C. " 201(b), (c). Therefore, for purposes of " 201, it matters whether a jury finds a defendant guilty of giving or receiving gratuities as opposed to giving or receiving bribes. "Whether a payment is a bribe or an illegal gratuity under " 201 depends on the intent of the payor. A bribe requires that the payment be made or promised "corruptly," that is, with "corrupt intent." " Jennings, 160 F.3d at 1013. To convict a defendant of bribery under " 201, the defendant must have engaged in a quid pro quo. Id. In contrast, a gratuity "is a payment made to an official concerning a specific official act (or omission) that the payor expected to occur in any event. No corrupt intent to influence official behavior is required. The payor simply must make the payment "for or because of" some official act." Id. (quoting " 201(c)). | To convict a defendant of bribery, the defendant must have engaged in a quid pro quo. 18 U.S.C.A. S 201(b). | Should the defendant be engaged in quid pro quo to be convicted for bribery? | 011005.docx | LEGALEASE-00125402-LEGALEASE-00125403 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 14234 | Mendenhall v. City of Indianapolis, 717 N.E.2d 1218 | 148+307(2) | There are two stages to an action for inverse condemnation: 1) the landowner must show that he has an interest in land which has been taken for a public use without having been appropriated under eminent domain laws; and 2) if the court finds that a taking has occurred, then the court appoints appraisers and damages are assessed. Jenkins v. Board of County Comm'rs, 698 N.E.2d 1268, 1270 (Ind.Ct.App.1998), trans. denied. A taking by inverse condemnation includes "any substantial interference with private property which destroys or impairs one's free use, enjoyment, or interest in the property." Town Council of New Harmony v. Parker, 707 N.E.2d 1002, 1008 (Ind.Ct.App.1999). Ordinarily, the question of whether a particular interference is substantial is a question of fact for the fact-finder. Id. An action for inverse condemnation is premature until such time as the landowner can establish that his property has been deprived of all economically beneficial or productive use. Galbraith v. Planning Dept. of the City of Anderson, 627 N.E.2d 850, 854 (Ind.Ct.App.1994). | Ordinarily, the question of whether a particular interference with private property is substantial, and thus constitutes a taking by inverse condemnation, is a question of fact for the fact-finder. | "Is the question of whether a particular interference is substantial a question of fact for the fact-finder, according to the taking law?" | 017544.docx | LEGALEASE-00125419-LEGALEASE-00125420 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14235 | Allied Bank Int'l v. Banco Credito Agricola de Cartago, 566 F. Supp. 1440 | 221+342 | Even where the defense of sovereign immunity does not apply, nevertheless the act of state doctrine may prevent recovery. Empresa Cubana Exportadora, Inc. v. Lamborn & Co., 652 F.2d 231, 238"9 n. 11 (2d Cir.1981). The act of state doctrine is designed to avoid judicial action which would impinge upon the foreign relations of the United States. IAM v. OPEC, 649 F.2d 1354, 1359 (9th Cir.1981), cert. denied, 454 U.S. 1163, 102 S.Ct. 1036, 71 L.Ed.2d 319 (1982). The doctrine ultimately derives from the separation of powers provided in the Constitution. Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 937, 11 L.Ed.2d 804 (1964). | The act of state doctrine, which is designed to avoid judicial action which impinges upon foreign relations of United States, ultimately derives from separation of powers provided in Constitution. | Does the act of state doctrine ultimately derive from the separation of powers provided in the Constitution? | 019829.docx | LEGALEASE-00124796-LEGALEASE-00124797 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 14236 | El-Hadad v. Embassy of United Arab Emirates, 69 F. Supp. 2d 69 | 221+342 | Defendants contend that the Act of State doctrine precludes the Court's review of the challenged conduct. Historically, the Act of State doctrine has been an absolute rule of judicial abstention, whereby "[t]he courts of one country will not sit in judgment on the acts of the government of another done within its own territory." Underhill v. Hernandez, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897); see also Riggs Nat'l Corp. & Subsidiaries v. Commissioner of Internal Revenue Service, 163 F.3d 1363, 1367 (D.C.Cir.1999). The passage of the FSIA and subsequent Supreme Court cases have caused some confusion over the applicability of the Act of State doctrine. See Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976); Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). Fortunately, the Court can dispense easily with defendants' argument because the Act of State doctrine applies only when the actions of the foreign state occur within that foreign state. See Flatow, 999 F.Supp. at 21. Here, the challenged act occurred within the United States, since as previously noted, a foreign state's embassy is considered to be within the host country's territory. Therefore, the Act of State doctrine is inapplicable to this case. | Act of State doctrine applies only when the actions of the foreign state occur within that foreign state. | Does the Act of State doctrine apply only when the actions of the foreign state occur within that foreign state? | International Law - Memo # 296 - C - KA.docx | ROSS-003328452-ROSS-003328454 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14237 | Nat'l Coal. Gov't of Union of Burma v. Unocal, 176 F.R.D. 329 | 221+342 | Nonetheless, Unocal has presented no evidence that SLORC's alleged jus cogens violations of international law are or were official acts. "It is only when officials having sovereign authority act in an official capacity that the Act of State Doctrine applies." Estate I, 25 F.3d at 1471 (citing Jimenez v. Aristeguieta, 311 F.2d 547, 557"58 (5th Cir.1962)). Moreover, an official may violate international law under color of authority even when the official is not acting within an official mandate. Id. at 1472 n. 8. | It is only when officials having sovereign authority act in official capacity that act of state doctrine applies. | Is it only when officials having sovereign authority act in official capacity that the act of state doctrine applies? | International Law - Memo # 417 - C - MLS.docx | ROSS-003284497-ROSS-003284498 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 14238 | Torrico v. Int'l Bus. Machines Corp., 213 F. Supp. 2d 390 | 221+395 | Unquestionably, Congress has the authority to regulate the conduct of U.S. employers outside the territorial jurisdiction of the United States. See, e.g., EEOC v. Arabian American Oil Co., 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("Aramco "); see also Restatement (Third) of Foreign Relations Law of the United States " 402(2) (a state has jurisdiction to legislate with respect to "the activities, interests, status, or relations of its nationals outside as well as within its territory"). Nevertheless, courts will "presume that Congress has not exercised this power"i.e., that statutes apply only to acts performed within United States territory"unless Congress manifests an intent to reach acts performed outside United States territory." United States v. Bin Laden, 92 F.Supp.2d 189, 193 (S.D.N.Y.2000); see Sale v. Haitian Centers Council, Inc., 509 U.S. 155, 188, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993) ("Acts of Congress normally do not have extraterritorial application unless such an intent is clearly manifested."). We presume that legislation does not apply extraterritorially primarily "to protect against unintended clashes between our laws and those of other nations which could result in international discord." Aramco, 499 U.S. at 248, 111 S.Ct. 1227; see Pfeiffer v. Wm. Wrigley Jr. Co., 755 F.2d 554, 557 (7th Cir.1985) ("The fear of outright collisions between domestic and foreign law"collisions both hard on the people caught in the cross-fire and a potential source of friction between the United States and foreign countries"lies behind the presumption against the extraterritorial application of federal statutes."). However, the presumption against extraterritoriality does not ordinarily apply where "the failure to extend the scope of the statute to a foreign setting will result in adverse effects within the United States" or where "the conduct regulated by the government occurs within the United States." Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528, 531 | Congress has the authority to regulate the conduct of U.S. employers outside the territorial jurisdiction of the United States; nevertheless, courts will presume that Congress has not exercised this power, i.e., that statutes apply only to acts performed within United States territory, unless Congress manifests an intent to reach acts performed outside United States territory. Restatement (Third) of Foreign Relations Law of the United States S 402(2). | "The act of state doctrine is premised on the principle that [e]very sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory?" | International Law - Memo # 806 - C - ANC.docx | LEGALEASE-00014665-LEGALEASE-00014666 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 14239 | In re Int'l Admin. Servs., 211 B.R. 88 | 221+321 | If the interest of one country is greater, the second country should consider deferring jurisdiction to the other. Restatement of Foreign Relations " 403.In keeping with this principle, " 305(a) of the Bankruptcy Code allows a bankruptcy court to dismiss an ancillary proceeding if a foreign proceeding is pending and the factors set forth in " 304(c) warrant such relief. Lawrence P. King, ed., Collier on Bankruptcy " 304.08 (15th ed.1997). Similar to the standard of reasonableness discussed above, Section 304(c) of the Bankruptcy Code outlines several guidelines for the bankruptcy court to consider when faced with an ancillary proceeding filed in this country which is related to a proceeding pending in a foreign country: [T]he court shall be guided by what will best assure an economical and expedient administration of such estate, consistent with-(1) just treatment of all holders of claims against or interests in such estate; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;(3) prevention of preferential or fraudulent dispositions of property of such estate;(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title; (5) comity; and (6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns. | If interest of one country in controversy is greater, other country should consider deferring jurisdiction to the first, though each has concurrent jurisdiction. Restatement (Third) of Foreign Relations S 403. | "If the interest of one country in controversy is greater, should another country consider deferring jurisdiction to the first?" | 020644.docx | LEGALEASE-00125113-LEGALEASE-00125114 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 14240 | Estate of Domingo v. Republic of the Philippines, 694 F. Supp. 782 | 221+151 | The failure of both the United States and Philippine governments to request immunity for the Marcoses underscores the court's rationale for refusing to extend head of state immunity here. Since the purpose of head of state immunity is to avoid the disruption of foreign relations, the original reason for immunizing the Marcoses"protecting the relations between the United States and the Marcos' regime"is no longer present. Head of state immunity serves to safeguard the relations among foreign governments and their leaders, not as the Marcoses assert, to protect former heads of state regardless of their lack of official status. | Purpose of head of state immunity is to avoid disruption of foreign relations. | Is the purpose of head of state immunity to avoid disruption of foreign relations? | International Law - Memo # 827 - C - ANC.docx | ROSS-003295513-ROSS-003295514 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14241 | United States v. Sum of $70,990,605, 4 F. Supp. 3d 189 | 221+387 | Similarly, the party invoking the act of state doctrine bears the burden to prove its applicability. Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 971 F.Supp.2d 49, 62 (D.D.C.2013) ("[T]he party raising the defense bears the burden to affirmatively show that an act of state has occurred and "that no bar to the doctrine is applicable under the factual circumstances." " (quoting Ramirez de Arellano, 745 F.2d at 1534)). Additionally, "[a]s a substantive rather than a jurisdictional defense, the Act of State doctrine is more appropriately raised in a motion for summary judgment than in a motion to dismiss." Daventree Ltd. v. Republic of Azerbaijan, 349 F.Supp.2d 736, 755 (S.D.N.Y.2004). | Party invoking the act of state doctrine bears the burden to prove its applicability. | Does the party invoking the act of state doctrine have the burden of establishing factual predicate for doctrine's applicability? | International Law - Memo 475 - TH.docx | ROSS-003328981-ROSS-003328983 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14242 | Lafontant v. Aristide, 844 F. Supp. 128 | 221+151 | A head-of-state recognized by the United States government is absolutely immune from personal jurisdiction in United States courts unless that immunity has been waived by statute or by the foreign government recognized by the United States. A visiting head-of-state is generally immune from the jurisdiction of a foreign state's courts. See, e.g. Mr. Saltany v. Reagan, 702 F.Supp. 319 (D.C.C.1988), order aff'd in part, reversed in part (on other grounds ), 886 F.2d 438 (D.C.Cir.1989), cert. denied, 495 U.S. 932, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990) (granting head-of-state immunity to Prime Minister of England in suit alleging violations of international law); Kilroy v. Windsor, Civ. No. C"78"291 (N.D.Ohio 1978), (Prince Charles, The Prince of Wales, granted immunity from suit alleging human rights violations in Northern Ireland), excerpted in 1978 Dig.U.S.Prac.Int'l L. 641"43; Psinakis v. Marcos, Civ. No. C"75"1725 (N.D.Cal.1975), excerpted in 1975 Dig.U.S.Prac. Int'l L. 344"45 (immunity granted to then-President Marcos following suggestion of immunity by the Executive Branch); Kendall v. Saudi Arabia 65 Adm. 885 (S.D.N.Y.1965), reported in 1977 Dig.U.S.Prac.Int'l L. 1017, 1053"34 | Visiting head-of-state is generally immune from jurisdiction of foreign state's courts. | Is a visiting head-of-state generally immune from the jurisdiction of a foreign state's courts? | 020871.docx | LEGALEASE-00124859-LEGALEASE-00124860 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14243 | Wells v. Gillette, 620 So.2d 301 | 307A+1 | An orderly disposition of each case and the docket and avoidance of surprise are inherent in the theory of pretrial procedure. Eanes v. McKnight, 262 La. 915, 265 So.2d 220 (1972); Naylor v. La. Dept. of Public Hwys., 423 So.2d 674 (La.App. 1st Cir.1982), writs denied, 427 So.2d 439 (La.1983) and 429 So.2d 127, 134 (La.1983).A trial court has much discretion in determining whether or not to modify a pre-trial order. Neff v. Rose, 546 So.2d 480 (La.App. 4th Cir.1989), writ denied, 551 So.2d 1322 (La.1989); Naylor, supra; Sibley v. Menard, 398 So.2d 590 (La.App. 1st Cir.1980), writ denied, 400 So.2d 211 (La.1981).The discretion of the trial court to modify the pre-trial order must be exercised to prevent substantial injustice to parties who have relied on the order and structured their cases accordingly. Creppel v. Louisiana Power & Light Co., 514 So.2d 239 (La.App. 5th Cir.1987), writ denied, 516 So.2d 131 (La.1987). | Orderly disposition of each case and docket and avoidance of surprise are inherent in theory of pretrial procedure. | Is avoidance of surprise inherent in theory of pretrial procedure? | 031338.docx | LEGALEASE-00125357-LEGALEASE-00125358 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14244 | Gunter v. Murphy's Lounge, 141 Idaho 16 | 30+3209 | Trial courts have broad discretion when ruling on a motion in limine. Sun Valley Potato Growers, Inc. v. Texas Refinery Corp., 139 Idaho 761, 767, 86 P.3d 475, 481 (2004). This Court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard. Id. at 768, 86 P.3d at 482. The trial court may deny the motion and wait until trial to determine if the evidence should be admitted or excluded. Lanham v. Idaho Power Co., 130 Idaho 486, 492, 943 P.2d 912, 918 (1997). If the trial court defers a ruling on the motion a party must reassert an objection at the time of the offer in order to preserve the issue. State v. Hester, 114 Idaho 688, 760 P.2d 27 (1988). "However, evidentiary rulings involving relevancy are not discretionary matters, and as such, are reviewed de novo on appeal." Loza v. Arroyo Dairy, 137 Idaho 764, 766, 53 P.3d 347, 349 (Ct.App.2002). | The appellate court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard. | Are the trial courts vested with broad discretion when ruling on a motion in limine? | Pretrial Procedure - Memo # 829 - C - KA.docx | ROSS-003325385-ROSS-003325386 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 14245 | Zurich Am. Ins. Co. v. S.-Owners Ins. Co., 248 F. Supp. 3d 1268 | 366+27 | Next, the Court considers ZAIC's claim of subrogation for recovery of indemnity payments made on behalf of Catamount and its principals. Under Florida law, "subrogation is a cause of action in equity which is designed to afford relief to one who is required to pay a legal obligation of another." Phoenix Ins. Co. v. Fla. Farm Bureau Mut. Ins. Co., 558 So.2d 1048, 1050 (Fla. 2d DCA 1990). "Florida recognizes two types of subrogation: conventional subrogation and equitable or legal subrogation." Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 646 (Fla. 1999). Conventional subrogation "arises or flows from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor." Id. (citing Boley v. Daniel, 72 Fla. 121, 72 So. 644, 645 (1916)). Distinctly, legal or equitable subrogation"the doctrine at issue in this action"arises from "the legal consequences of the acts and relationships of the parties." State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So.3d 1099, 1100 (Fla. 2d DCA 2009) (citing Dade Cnty. Sch. Bd., 731 So.2d at 646); see also W. Am. Ins. Co. v. Yellow Cab Co. of Orlando, 495 So.2d 204, 207 (Fla. 5th DCA 1986). Equitable subrogation "is based on the policy that no person should benefit by another's loss, and it "may be invoked wherever justice demands its application, irrespective of technical legal rules."" Johnson, 18 So.3d at 1100 (quoting W. Am. Ins. Co., 495 So.2d at 207). | Under Florida law, conventional subrogation arises or flows from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor. | Does subrogation generally arise contractually? | 044286.docx | LEGALEASE-00124678-LEGALEASE-00124679 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 14246 | N. Utilities Div. of K N Energy v. Town of Evansville, 822 P.2d 829 | 366+1 | The trial court's October 26, 1988 decision letter, citing Allstate Ins. Co. v. Druke, 118 Ariz. 301, 576 P.2d 489 (1978) and Block v. California Physicians' Service, 244 Cal.App.2d 266, 53 Cal.Rptr. 51 (1966), held that "[t]he prevailing rule * * * appears to be that an assignment of a cause of action for personal injuries is void as against public policy and cannot be the subject of a subrogation claim." | Since causes of action for damage or injury to persons and property survive and are assignable, they can be subject of claim for conventional subrogation. W.S.1977, S 1-4-101. | Is the assignment of a cause of action for personal injury subject to a subrogation claim? | Subrogation - Memo 1022 - C- CAT.docx | ROSS-003311317-ROSS-003311318 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 14247 | State, By & Through Healy v. Smither, 290 Or. 827 | 366+38 | However, the insurer's right of subrogation is not without its limitations.It is often said that the subrogee (American) "stands in the shoes" of the subrogor (First California). As such, the subrogee's rights rise no higher than the rights of the subrogor, and the person against whom claim is made may assert, as a defense to the subrogation claim, any defenses available against the subrogor. U. S. Fire Ins. Co. v. Chrysler Motors, 264 Or. 362, 365, 505 P.2d 1137 (1973); 16 Couch, Insurance s 61.220 (2d ed 1966). As noted by the Court of Appeals, both American and Lewelling were judgment creditors of Smither. But Lewelling's judgment was against Smither and First California. American's judgment was against Smither only. | Subrogee's rights rise no higher than the rights of the subrogor, and person against whom claim is made may assert, as a defense to subrogation claim, any defenses available against the subrogor. | Does a subrogee stand in the shoes of the subrogor and have no better rights than possessed by the latter? | 044372.docx | LEGALEASE-00125521-LEGALEASE-00125522 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14248 | Nationwide Mut. Fire Ins. Co. v. T & N Master Builder & Renovators, 2011 IL App (2d) 101143 | 366+1 | We further note that this is an action in subrogation. As the supreme court explained in Dix, subrogation is an action in chancery. Dix, 149 Ill.2d at 319, 173 Ill.Dec. 648, 597 N.E.2d 622. It is "designed to place the ultimate responsibility for the loss upon the one on whom in good conscience it ought to fall and to reimburse the innocent party who is compelled to pay." Reich v. Tharp, 167 Ill.App.3d 496, 500"01, 118 Ill.Dec. 248, 521 N.E.2d 530 (1987). As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. Dix, 149 Ill.2d at 319, 173 Ill.Dec. 648, 597 N.E.2d 622. Subrogation is not allowed against a tenant where the tenant is considered a coinsured under the landlord's insurance policy. Reich, 167 Ill.App.3d at 501, 118 Ill.Dec. 248, 521 N.E.2d 530. With these principles in mind, we now turn to the issues raised by plaintiff. | As an action in equity, a claim may be subrogated only in order to prevent injustice or unjust enrichment and will not be maintained when it would be inequitable to do so. | Will subrogation be allowed where it would be inequitable? | 044430.docx | LEGALEASE-00125339-LEGALEASE-00125340 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14249 | Aiken Bag Corp. v. McLeod, 89 Ga. App. 737 | 8.30E+76 | A check does not of itself operate as an assignment of any part of the drawer's funds deposited with the bank upon which the check is drawn, and the bank is not liable to a holder of a check unless and until it accepts or certifies the check. Dixon & Co. v. Bank of Quitman,Code, " 14-1707. From this it follows that a check is a mere order upon a bank to pay from the drawer's account and is subject to revocation by the drawer at any time before it has been certified, accepted, or paid by the bank. Am.Jur. 437, Banks, " 602. | A check is a mere order upon a bank to pay from the drawer's account and is subject to revocation by drawer at any time before it has been certified, accepted, or paid by the bank. Code, S 14-1707. | Can a check be revoked at anytime by the drawer? | 009503.docx | LEGALEASE-00125612-LEGALEASE-00125613 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 14250 | Roylston v. Pima Cty., 106 Ariz. 249 | 79+1 | We assume, therefore, that the legislature in enacting ss 11-401 and 11-409 did so with full knowledge of relevant constitutional provisions and the inherent powers of the Court. We believe that it was not the intent of the legislature in enumerating the office of Clerk of the Superior Court as a county office in s 11-401 to remove that office from the supervisory control of the judiciary. If the judiciary has the power under Article VI, s 23 to provide for the powers and duties of the Clerk of the Superior Court it necessarily follows that the judiciary has the power to supervise the operation of that office. | Judiciary has power to supervise operation of office of clerk of superior court. A.R.S. S 11-401; A.R.S.Const. art. 3; art. 6, S 23. | Does the judiciary has the power to supervise the operation of the office of Clerk of the Superior Court? | Clerks of court - Memo 16- VP.docx | ROSS-003286473-ROSS-003286474 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 14251 | State ex rel. Smith v. Culliver, 186 Ohio App. 3d 534 | 79+1 | The clerk of courts is an elected public official whose duties are regulated by statute. Hackett v. Kibbee (1965), 4 Ohio App.2d 246, 247, 33 O.O.2d 287, 211 N.E.2d 892. The office of clerk of courts, however, is an office separate and distinct from that of judge of the common pleas court. Id. | The office of clerk of courts is an office separate and distinct from that of judge of the common pleas court. | Is an office of clerk of courts separate and distinct from that of judge of the common pleas court? | Clerks of court - Memo 5 VP.docx | ROSS-003303567 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 14252 | Barrett v. State, 965 So. 2d 1260 | 79+67 | Article V, section 2(a) of the Florida Constitution requires that no cause be dismissed because an improper remedy has been sought. Accordingly, the trial court should have considered whether Barrett had alleged sufficient facts to warrant relief and, if so, treated his motion as if the proper remedy had been sought. See Caverly v. State, 436 So.2d 191 (Fla. 2d DCA 1983) (holding that where the defendant's petition requested the wrong remedy but alleged sufficient facts to warrant relief, the trial court should have treated the petition as if the correct remedy had been sought). Barrett alleges that the clerk's office refused to obey the court's order to refund the $20,000 to Ms. Barrett after unilaterally concluding that the court was not authorized to return the bond money to her. The clerk is merely a ministerial officer of the court and has no authority to contest the validity of a court's order issued in the performance of its judicial function. State v. Almand, 75 So.2d 905 (Fla.1954); Corbin v. State, 324 So.2d 203 (Fla. 1st DCA 1975).Accordingly, we conclude that the facts Barrett alleged were sufficient to warrant relief and that the trial court should have treated his motion as a petition for a writ of mandamus. We therefore reverse the order dismissing Barrett's motion to correct his judgment and sentence. On remand, the trial court is directed to treat Barrett's motion as a petition for writ of mandamus directed to the clerk and resolve it on the merits. | The court clerk is a ministerial officer of the court and has no authority to contest the validity of a court's order issued in the performance of its judicial function. | Is a clerk of the court a ministerial officer? | 013521.docx | LEGALEASE-00125686-LEGALEASE-00125687 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14253 | Chaney v. State, 314 S.W.3d 561 | 203+527 | As stated above, murder, whether intentionally or knowingly committed, is a result oriented offense. Cook, 884 S.W.2d at 490. Because the applicable mental state relates to the result of the conduct only, i.e., causing of the death, Schroeder v. State, 123 S.W.3d 398, 400 (Tex.Crim.App.2003), a charge which contains the full statutory definition is erroneous. See Cook, 884 S.W.2d at 491. See also Alvarado v. State, 704 S.W.2d 36, 40 (Tex.Crim.App.1985). The court's charge for a result oriented offense such as murder should not allow a jury to convict a person based solely on a finding that the accused intentionally or knowingly engaged in conduct which happened to cause death. See generally Green v. State, 891 S.W.2d 289, 294 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). | Murder, whether intentionally or knowingly committed, is a result oriented offense; therefore, the full statutory definitions of intentional and knowing do not apply, and the State must establish that the defendant intended the result of death or that he was aware that his conduct was reasonably certain to cause that result. V.T.C.A., Penal Code SS 6.03, 19.02(b)(1). | Is intentionally or knowingly committed murder considered a result oriented offense? | 019361.docx | LEGALEASE-00125628-LEGALEASE-00125629 | Condensed, SA | 0.53 | 0 | 1 | 0 | 1 | |
| 14254 | People v. Butler, 187 Cal. App. 4th 998 | 203+662 | Involuntary manslaughter is a lesser offense of murder, distinguished by its mens rea. (People v. Rios (2000) 23 Cal.4th 450, 460, 97 Cal.Rptr.2d 512, 2 P.3d 1066.) The mens rea for murder is specific intent to kill or conscious disregard for life. (Ibid.) Absent these states of mind, the defendant may incur homicide culpability for involuntary manslaughter. (Id. at p. 466, 97 Cal.Rptr.2d 512, 2 P.3d 1066; People v. Garcia (2008) 162 Cal.App.4th 18, 26"30, 74 Cal.Rptr.3d 912.) Through statutory definition and judicial development, there are three types of acts that can underlie commission of involuntary manslaughter: a misdemeanor, a lawful act, or a noninherently dangerous felony. (See Garcia, supra, at pp. 27"29, 74 Cal.Rptr.3d 912.) As we shall explain, for all three types of predicate acts the required mens rea is criminal negligence. | Involuntary manslaughter is a lesser offense of murder, distinguished by its mens rea. West's Ann.Cal.Penal Code SS 187, 192. | Is involuntary manslaughter considered to be a lesser offense of murder distinguished by its mens rea? | 019376.docx | LEGALEASE-00125737-LEGALEASE-00125738 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14255 | Foster v. Shubert Holding Co., 316 Mass. 470 | 29T+972(3) | It is a general rule of pleading that one who asserts a claim that he was injured through the establishment and maintenance of a monopoly either at common law or under a statute must set forth definitely and specifically the substance of the agreement which he asserts the defendants have entered into or the plan or scheme which the defendants have adopted, the several acts performed by the defendants, the effect of such acts upon the plaintiff or his business, and the resulting damage to the public, in order that the court may determine from the facts alleged whether a monopoly at common law or in violation of the statute has been properly alleged with the result that, if the facts were proved, the plaintiff would be entitled to prevail. It is not sufficient to allege the existence of a monopoly or merely to repeat the words of a statute or to recite mere conclusions of the pleader. Conclusions of fact unless they are necessary inferences from the particular facts alleged are not admitted by a demurrer. Johnson v. East Boston Savings Bank, 290 Mass. 441, 195 N.E. 727; Comerford v. Meier, 302 Mass. 398, 19 N.E.2d 711; Thompson v. Spagnuolo, 311 Mass. 597, 42 N.E.2d 498; Robichaud v. Owens-Illinois Glass Co., 313 Mass. 583, 48 N.E.2d 672; Becker v. Calnan, 313 Mass. 625, 630, 631, 48 N.E.2d 668; Alexander Milburn Co. v. Union Carbide & Carbon Corp., 3 Cir., 15 F.2d 678. Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885. Powell v. Graham, 183 Wash. 452, 48 N.E.2d 952. It was said in Neustadt v. Employers' Liability Assurance Corp., Ltd., 303 Mass. 321, 326, 21 N.E.2d 538, A.L.R. 134, that "the general allegation that the combination and agreement are "unlawful and illegal" is insufficient, as matter of pleading, to state a cause of action in tort,' and in Walter v. McCarvel, 309 Mass. 260, 264, 34 N.E.2d 677, that the allegation that "said contract' has resulted in an unlawful monopoly and illegal restraint of trade' was not admitted by the demurrer. | The general allegation that a combination and agreement are unlawful is insufficient, as a matter of pleading, to state a cause of action in tort. G.L.(Ter.Ed.) c. 93, S 2 (M.G.L.A.). | Is an allegation that the combination was unlawful and illegal sufficient to state a claim? | 023005.docx | LEGALEASE-00125608-LEGALEASE-00125609 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 14256 | Caverno v. Fellows, 286 Mass. 440 | 302+16 | There remain in the declaration allegations that the defendants did hamper, obstruct and impede the plaintiff in her work as teacher and did watch and annoy her in such work. These averments are of the most general nature and do not particularize in any degree. The several defendants were the superiors of the plaintiff in her work in the school. According to common knowledge it was the duty of the defendants in the performance of the duties of their several official positions to observe the conduct of the plaintiff as teacher, to make suggestion for the improvement of her work and in every reasonable was to increase her efficiency. Entirely appropriate action by the defendants prompted by the highest motives and intended to promote the general welfare might seem to the plaintiff to be obstructive of the execution of her ideas of teaching and therefore harmful to her. These averments of the declaration are not descriptive of tortious conduct on the part of the defendants in these circumstances. Great detail in pleading well known torts or infringement of legal rights is not required. McGurk v. Cronenwett, 199 Mass. 457, 85 N. E. 576, 19 L. R. A. (N. S.) 561; Wheeler-Stenzel Co. v. American Window Glass Co., 202 Mass. 471, 89 N. E. 28. A cause of action must be described in the pleadings against a defendant before he can be called upon to answer. It is not enough to hold that he is protected by the right to ask for a bill of particulars. That is not a substitute for the right not to be required to proceed unless a cause of action at least in skeleton form is stated in the declaration. No cause of action in tort is pleaded in the declaration. | Great detail in pleading well-known torts or infringement of legal rights is not required. | Is great detail required in pleading well known torts or infringement of legal rights? | Pleading - Memo 168 - RMM.docx | ROSS-003290228-ROSS-003290229 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 14257 | In re Cent. Illinois Energy Coop., 561 B.R. 699 | 268+742(4) | Neither party considers that the statutory immunity accorded directors is an affirmative defense, which it undoubtedly is. Under Illinois law, affirmative defenses include any statute that prevents an otherwise valid claim from being recovered upon. 735 ILCS 5/2"613(d). A statutory immunity from suit or liability is an affirmative defense that must be pleaded and proved by the party seeking its protection. Sandholm v. Kuecker, 2012 IL 111443, " 54, 356 Ill.Dec. 733, 962 N.E.2d 418. | Under Illinois law, a statutory immunity from suit or liability is an affirmative defense that must be pleaded and proved by the party seeking its protection. | What is a statutory immunity from suit or liability? | 006727.docx | LEGALEASE-00125794-LEGALEASE-00125795 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 14258 | Jones v. Boswell, 250 S.W.3d 140 | 386+6 | Trespass to chattel is the wrongful interference with the use or possession of another's property. Omnibus Int'l, Inc. v. AT & T, Inc., 111 S.W.3d 818, 826 (Tex.App.-Dallas 2003, pet. dism'd). The distinction between trespass and conversion is that conversion requires the actor to pay the full value of the thing with which he has interfered. Id. (citing W. Page Keeton et al, Prosser and Keeton on the Law of Torts " 14, at 85"86 (5th ed.1984)). A trespass occurs not only when a party wrongfully acquires possession of another's property but also when he wrongfully retains possession. See Zapata v. Ford Motor Credit Co., 615 S.W.2d 198, 201 (Tex.1981) (a detention of personalty lawfully obtained, after demand, is a wrongful act constituting a trespass). The commission of a trespass does not necessarily mean that the actor is liable for damages. Liability does not attach unless the wrongful detention is accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time. Id.; Lyle v. Waddle, 144 Tex. 90, 188 S.W.2d 770 (1945). | Trespass to chattel is the wrongful interference with the use or possession of another's property. | Is wrongful interference with the use or possession of another's property considered trespass to chattel? | 047185.docx | LEGALEASE-00125788-LEGALEASE-00125789 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14259 | King v. Phillips, 94 N.C. 555 | 13+61 | We think there is no departure in this, and that the evidence is to repel the allegation of full payment. The debt is not barred, and still subsists to sustain the action for the recovery of what is still due. Indeed, it cannot be maintained upon a parol promise to pay a debt secured by bond, while the bond itself remains in force, and not being barred, can be sued on. Wilson v. Murphey, 3 Dev., 352. | An action cannot be maintained on a new promise to pay a debt secured by a bond while the bond is in force. | Can an action be maintained on a new promise to pay a debt secured by a bond while the bond is in force? | Action - Memo # 130 - C - SB.docx | ROSS-003286425 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14260 | Rector v. Mississippi State Highway Comm'n, 623 So. 2d 975 | 241+6(1) | The crux of the issue is when Rectors' cause of action should be deemed to have accrued for purposes of this statute. The Rectors assert that the cause of action accrues at the time of acceptance of the work, that is, at the time that the defectively performed work is delivered. Bush contends that the cause accrues at the time of injury. The significance of pinpointing the time when an action accrues relates totally to statutory time bars. Black's Law Dictionary 19 (5th ed. 1979). A cause of action consists of two parts, a wrongful act and an injury. See Owens Illinois v. Edwards, 573 So.2d 704, 708-709 (Miss.1990); M.T. Reed Construction Co. v. Jackson Plating Co., 222 So.2d 838, 840 (Miss.1969); Wilder v. St. Joseph Hospital, 225 Miss. 42, 45-46, 82 So.2d 651, 652 (1955). While a cause of action is not ordinarily complete until some injury occurs, whether injury marks the date of "accrual" for prescriptive purposes should turn on the nature of the prescriptive statute. Where the date of injury marks the inception of the period of prescription, it is logical that that date should control and be deemed the date of accrual. | For purposes of amendment to statute of repose reducing period after acceptance of improvements to real property in which suits may be filed for injuries arising from defective design or construction from ten years to six years and providing that amendment applies only to causes of action "accruing" after January 1, 1986, term "accruing" refers to date marking action which begins period of prescription; thus, enactment of amendment did not bar all actions based on injuries occurring after January 1, 1986, if acceptance of work occurred prior to January 1, 1980, which would have eliminated then existing exposure for work accepted between January 1, 1976 and December 31, 1979; cause of action accrued from acceptance for purposes of statute of repose. Code 1972, S 15-1-41. | Is the time when a cause of action arises distinguished from when prescription begins to run? | 006466.docx | LEGALEASE-00126183-LEGALEASE-00126184 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 14261 | Harrison v. Dir. of Dep't of Corr., 194 Mich. App. 446 | 13+61 | A cause of action "arises" when the plaintiff's claim accrues, not when it is filed. Abraham v. Jackson, 189 Mich.App. 367, 370, 473 N.W.2d 699 (1991). Because the cause of action accrued on July 19, 1985, the date on which Byars committed the murders, the amended statute is inapplicable. Thus, the issue is considered under the rules articulated in Ross, where the Court distinguished two categories of individual governmental immunity. | Cause of action "arises," for determining whether amended statute applies, when plaintiff's claim accrues, not when it is filed. | Does a cause of action arise when the plaintiff's claim accrues or when it is filed? | Action - Memorandum - 275 - SK.docx | ROSS-003299376-ROSS-003299377 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 14262 | Hart v. Guardian Tr. Co., 75 N.E.2d 570 | 13+61 | As a general rule, it may be said that a cause of action accrues at the moment of a wrong, default or delict by the defendant, and the injury to the plaintiff. 1 American Jurisprudence, Sec. 60, pages 451, 452; Minster Loan & Savings Co. v. Laufersweiler, 67 Ohio App. 375, 36 N.E. 2d 895. | A cause of action accrues at the moment of a wrong, default, or delict by the defendant and injury to the plaintiff, except in those cases where an act may not be legally injurious until subsequent events occur. | Does a cause of action accrue at the moment of a wrong? | Action- memo # - PC332.docx | ROSS-003284962-ROSS-003284963 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |
| 14263 | Lamar v. State, 603 So. 2d 1113 | 63+1(1) | A material element of the crime of bribery is the defendant's intent at the time he attempted to bribe the witness. Maddox v. State, 520 So.2d 143 (Ala.Cr. App. The evidence in this case is insufficient to prove intent to corruptly influence the testimony of Jennifer Larkins. The record is silent as to whether Larkins testified in Case No. 89-324. But, her testimony in this case is clear that had she been called she would have testified, as she put it, "I told him (Lamar) Yeah I would go, but it would be on things that I was sure on. I made thatspecifically clear." | Material element of crime of bribery is defendant's intent at time he attempted to bribe witness. Code 1975, S 13A-10-121. | Is corrupt intent at the time of the offense a material element of the crime of bribery? | Bribery - Memo # 38 - C-NA.docx | ROSS-003286646-ROSS-003286648 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 14264 | Shelden v. United States, 34 Fed. Cl. 355 | 148+303 | To provide the full value of the property taken, just compensation includes interest on the property, expenses and fees. Interest for these expenses and fees is to be computed at compound interest rates because there has been a substantial time period between appropriation and compensation. Whitney Benefits, 30 Fed.Cl. at 413. Owners of property taken by the government are entitled to interest from the date the taking became effective until paid by the government. Id. at 411. Applying this rule, the plaintiffs are entitled to interest as of the date the forfeiture became effective until the date the government tenders final payment consistent with this opinion. | To provide for full value of property taken, just compensation under Fifth Amendment includes interest on property, expenses and fees. U.S.C.A. Const.Amend. 5. | "Does just compensation include interest on the property, expenses and fees?" | Eminent Domain - Memo 262 - GP.docx | ROSS-003303607-ROSS-003303608 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 14265 | Estate of Domingo v. Republic of the Philippines, 694 F. Supp. 782 | 221+151 | The failure of both the United States and Philippine governments to request immunity for the Marcoses underscores the court's rationale for refusing to extend head of state immunity here. Since the purpose of head of state immunity is to avoid the disruption of foreign relations, the original reason for immunizing the Marcoses"protecting the relations between the United States and the Marcos' regime"is no longer present. Head of state immunity serves to safeguard the relations among foreign governments and their leaders, not as the Marcoses assert, to protect former heads of state regardless of their lack of official status. | Purpose of head of state immunity is to avoid disruption of foreign relations. | Is the purpose of the head of state immunity to avoid disruption of foreign relations? | 020654.docx | LEGALEASE-00126159-LEGALEASE-00126160 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14266 | Kirk v. Ford Motor Co., 141 Idaho 697 | 307A+3 | When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded. Gunter v. Murphy's Lounge, LLC, 141 Idaho 16, 25, 105 P.3d 676, 685 (2005)(citing Lanham v. Idaho Power Co., 130 Idaho 486, 492, 943 P.2d 912, 918 (1997)).If the trial court decides to wait and hear the actual foundation laid before determining whether to admit or exclude evidence, the moving party is required to continue to object as the evidence is presented. Id. (citing State v. Hester, 114 Idaho 688, 760 P.2d 27 (1988)); Karlson, 140 Idaho at 565, 97 P.3d at 432. The purpose behind this rule is that: | When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded. | Can the trial court deny the motion in limine? | 037928.docx | LEGALEASE-00126086-LEGALEASE-00126087 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 14267 | Weadon v. Shahen, 50 Cal. App. 2d 254 | 13+63 | The doctrine of laches is based on knowledge of the facts and an acquiescence in them to the damage of the other party. Verdugo Canon Water Co. v. Verdugo, 152 Cal. 655, 93 P. 1021; Garstang v. Skinner, 165 Cal. 721, 134 P. 329; 10 Cal.Jur. 528, et seq., and cases cited. | The doctrine of "laches" is based on knowledge of facts and acquiescence in them to the damage of the other party. | Is the doctrine of laches based on knowledge of facts and acquiescence in them to the damage of the other party? | 005406.docx | LEGALEASE-00126726-LEGALEASE-00126727 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 14268 | Philadelphia, B. & W. R. Co. to Use of Pennsylvania R. Co. v. Quaker City Flour Mills Co., 282 Pa. 362 | 13+61 | To what extent, if any, did Congress intend the new rule to apply to rights of action already accrued? A cause of action accrues at the moment the party has a legal right to sue. The act speaks definitely, 'all actions' shall be prosecuted within three years 'from the time the cause of action accrues.' Are these words so 'clear, strong, and imperative' that no other meaning may be given than that they were intended to operate retroactively? The words 'all actions,' comprehensive in meaning, are modified and controlled by the words which follow, 'from the time the cause of action accrues.' When treated in a strict grammatical sense, the words undoubtedly speak prospectively. | Cause of action accrues at moment party has legal right to sue. | Can a cause of action accrue at moment party has legal right to sue? | Action - Memo # - C 316-TJ.docx | ROSS-003284784-ROSS-003284785 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14269 | Hood v. Slappey, 601 So. 2d 981 | 13+61 | At the outset, we note that the Medical Liability Act of 1987 applies in this case. In determining whether the Medical Liability Act applies, the question is whether Hood's injury accrued prior to June 11, 1987, the effective date of the Act. A cause of action accrues when the act complained of results in injury to the plaintiff. Colburn v. Wilson, 570 So.2d 652 (Ala.1990); Guthrie v. Bio"Medical Laboratories, Inc., 442 So.2d 92 (Ala.1983). Although Dr. Slappey performed surgery on Hood in 1985, the alleged injury to Hood occurred in April 1989 when she suffered from appendicitis and was injured due to Dr. Slappey's alleged statements concerning the removal of her appendix. Therefore, Hood's cause of action accrued in April 1989. | Cause of action accrues when act complained of results in injury to plaintiff. | Does cause of action accrue when act complained of results in injury to plaintiff? | Action - Memo # 251 - C SPB.docx | ROSS-003285749-ROSS-003285750 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14270 | Gorod v. Tabachnick, 428 Mass. 1001 | 79+67 | With the hope that it will eliminate confusion in the future, we take this opportunity to reiterate what we have said in other cases concerning clerks of court or registers (or a member of their staff) who refuse to accept for filing a notice of appeal tendered by a litigant. Clerks and registers, whether elected or appointed, are ministerial officers of the court when it comes to receiving and filing papers. See Donahue v. Secretary of the Commonwealth, 403 Mass. 363, 368-369, 530 N.E.2d 792 (1988). In the absence of an order from a judge, they may not refuse to accept a notice of appeal, even if they believe that no appeal is available or that the notice is untimely or otherwise defective. Morales v. Commonwealth, 424 Mass. 1010, 1011, 675 N.E.2d 769 (1997). Callahan v. Commonwealth, 416 Mass. 1010, 1010-1011, 625 N.E.2d 547 (1994). Burnham v. Clerk of the First Dist. Court of Essex, 352 Mass. 466, 467-468, 226 N.E.2d 190 (1967). | Clerks and registers, whether elected or appointed, are ministerial officers of court when it comes to receiving and filing papers, and in the absence of an order from a judge, they may not refuse to accept a notice of appeal, even if they believe that no appeal is available or that notice is untimely or otherwise defective. | Are clerks of courts ministerial officers? | 013462.docx | LEGALEASE-00126788-LEGALEASE-00126789 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 14271 | Barrett v. State, 965 So. 2d 1260 | 79+67 | Article V, section 2(a) of the Florida Constitution requires that no cause be dismissed because an improper remedy has been sought. Accordingly, the trial court should have considered whether Barrett had alleged sufficient facts to warrant relief and, if so, treated his motion as if the proper remedy had been sought. See Caverly v. State, 436 So.2d 191 (Fla. 2d DCA 1983) (holding that where the defendant's petition requested the wrong remedy but alleged sufficient facts to warrant relief, the trial court should have treated the petition as if the correct remedy had been sought). Barrett alleges that the clerk's office refused to obey the court's order to refund the $20,000 to Ms. Barrett after unilaterally concluding that the court was not authorized to return the bond money to her. The clerk is merely a ministerial officer of the court and has no authority to contest the validity of a court's order issued in the performance of its judicial function. State v. Almand, 75 So.2d 905 (Fla.1954); Corbin v. State, 324 So.2d 203 (Fla. 1st DCA 1975). Accordingly, we conclude that the facts Barrett alleged were sufficient to warrant relief and that the trial court should have treated his motion as a petition for a writ of mandamus. We therefore reverse the order dismissing Barrett's motion to correct his judgment and sentence. On remand, the trial court is directed to treat Barrett's motion as a petition for writ of mandamus directed to the clerk and resolve it on the merits. | The court clerk is a ministerial officer of the court and has no authority to contest the validity of a court's order issued in the performance of its judicial function. | Is a clerk a ministerial officer of the court? | 013469.docx | LEGALEASE-00126792-LEGALEASE-00126793 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14272 | Barker v. Francis, 741 P.2d 548 | 322H+644 | Finally, the Doctors challenge the validity of the contract claiming it is void due to Barker's failure to perform in a timely manner. Time is of the essence in land contracts only if it can be shown that the parties so intended. This can be demonstrated in two ways. First, the contract can explicitly state that time is of the essence, See Century 21 All Western Real Estate v. Webb, 645 P.2d 52, 55 (Utah 1982), or it can include language that requires a forfeiture of the deposit or an avoidance of the contract if the deadline is not met. Cahoon v. Cahoon, 641 P.2d 140, 144 (Utah 1982); Huck v. Hayes, 560 P.2d 1124, 1126 (Utah 1977). Second, the circumstances surrounding the transaction can imply that "the parties intended timeliness of performance to be of paramount concern." Cahoon, 641 P.2d at 144. A closing date alone in a contract for the sale or exchange of land does not make time of the essence. See id.; Huck, 560 P.2d at 1126. | Closing date alone in contract for sale or exchange of land does not make time of the essence. | Does a closing date in a contract make time of the essence? | 018356.docx | LEGALEASE-00126493-LEGALEASE-00126494 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14273 | In re Refined Petroleum Prod. Antitrust Litig., 649 F. Supp. 2d 572 | 221+342 | In Underhill, 18 S.Ct. at 83, a United States citizen sought damages from the revolutionary leader of Venezuela for denying him a passport. Reasoning that[e]very sovereign state is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory[, and that r]edress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves,id. at 84, the Court upheld the lower courts' dismissal of plaintiff's complaint because the facts before the court established that "the acts complained of were the acts of a military commander representing the authority of the revolutionary party as a government, which afterwards succeeded, and was recognized by the United States." Id. at 85. Thus, the rule stated in Underhill"often referred to as the act of state doctrine"embodies three requirements, i.e., this rule may be applied only to acts that are (1) governmental acts (2) undertaken by a recognized sovereign (3) within its own territory. | Act of state doctrine may be applied only to acts that are (1) governmental acts (2) undertaken by a recognized sovereign (3) within its own territory. | Does the act of state doctrine apply only to actions of a nation within its territory? | 020291.docx | LEGALEASE-00126387-LEGALEASE-00126388 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14274 | Evans v. Herbranson, 241 Iowa 268 | 302+8(12) | The allegations of waiver, estoppel, acquiescence, absence of right, and the like, standing alone, are mere legal conclusions, and raise no issue, and put upon the opposing party no necessity, or burden, of proof. They plead no defense unless based upon well pleaded sustaining facts. In re Estate of Rule, 178 Iowa 184, 193-194, 150 N.W. 699; Conway Bros. v. Iowa Hardware Mut. Ins. Ass'n, 190 Iowa 1369, 1373, 181 N.W. 768. | Allegations of waiver, estoppel, acquiescence, absence of right and the like, standing alone, were mere legal conclusions, and pleaded no defense unless based upon well-pleaded sustaining facts. | Are allegations of waiver conclusions? | 023054.docx | LEGALEASE-00126706-LEGALEASE-00126707 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14275 | Hofler v. Hill, 311 N.C. 325 | 366+7(1) | Appellants argue Allentown is a co-surety and equally obligated with them on the R & H debt. Therefore Allentown as the bank's assignee may not maintain an action against them for the outstanding balance due on the R & H note and may not foreclose the deeds of trust. Appellants argue that Allentown may only seek "a just and ratable" contribution from them. See N.C.Gen.Stat. " 26-5 (1965), which provides: Where there are two or more sureties for the performance of a contract, and one or more of them may have been compelled to perform and satisfy the same, or any part thereof, such surety may have and maintain an action against every other surety for a just and ratable proportion of the same which may have been paid as aforesaid, whether a principal, interest or cost. Equity requires that parties which are equally obligated on a debt be treated alike. Smith v. Carr, 128 N.C. 150, 38 S.E. 732 (1901 Therefore co-sureties, or equal obligors, on a debt may not be subrogated to the rights of the creditor against each other but are limited to a "just and ratable" contribution. Peebles v. Gay, 115 N.C. 38, 20 S.E. 173 (1894). We conclude that Allentown and appellants are not equally obligated on the R & H debt; therefore they are not co-sureties. | Cosureties, or equal obligors, on a debt may not be subrogated to the rights of the creditor against each other but are limited to a just and ratable contribution. G.S. S 26-5. | "Can co-sureties, or equal obligors, on a debt be subrogated to the rights of the creditor against each other?" | Subrogation - Memo # 690 - C - SA.docx | ROSS-003326846-ROSS-003326847 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14276 | Dennis' Lessee v. Kelso, 28 Md. 333 | 13+63 | Upon the merits, the order appealed from is correct. The action of ejectment, being a proceeding founded in fiction, to enable a party to recover the possession of land, has been fashioned by the Courts to subserve the ends of justice, and an application to strike out a judgment against the casual ejector, will be more readily granted, in such action, than in other cases. The only difficulty has been to reconcile such practice with interests that may have supervened. The authorities, in such cases, show that after a judgment against the casual ejector, has stood for years, and there has been laches on the part of the defendant, or improvements by the plaintiff, Courts will not disturb it. In Klinefelter's Lessee vs. Carey, 3 G. & J., 349, sundry references are made, where judgments have been stricken out in ejectment suits, although from the circumstances of that case, the judgment was not disturbed, because it had stood a long time,--some nine years. The facts in this case show that the plaintiff had taken no steps to secure the benefit of his judgment for nearly three years, but allowed the possession to remain undisturbed, and the application was made promptly by the appellee upon execution of the writ of habere facias, which he swears gave him the first notice he had of the judgment, and we do not think he has lost title to relief by delay.Whilst Courts of justice will aid, to every reasonable extent, vigilant suitors, they will not encourage laches--vigilantibus et non dormientibus leges subveniunt. The testimony in the cause does not prove that sufficient notice was given to conclude the appellee, from the relief he is now seeking. Assuming that neither Kelso nor Kidd, the tenant in possession of part of the premises under him, had actual notice of this proceeding, we are not aware of any inflexible rule of law, which will under the circumstances, hold him irrevocably bound by the judgment rendered against the casual ejector, especially when he has taken the | Courts will not encourage laches, vigilantibus et non dormientibus leges subveniunt. | "Will courts encourage laches, vigilantibus et non dormientibus leges subveniunt?" | 006232.docx | LEGALEASE-00127179-LEGALEASE-00127180 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 14277 | Soto v. State Indus. Prod., 642 F.3d 67 | 25T+134(3) | The fact that Soto did not "fully" understand the agreements that she signed because of her lack of fluency in English, of which she was aware, does not render void her consent to arbitrate. Cf. Herman v. Hogar Praderas de Amor, Inc., 130 F.Supp.2d 257, 262"63 (D.P.R.2001) (rejecting challenge to the validity of a waiver even though the document was written in English, which the signing party did not understand, and the other party did not explain its contents in the meeting at which it was signed); see also Sanchez" Santiago v. Guess, Inc., 512 F.Supp.2d 75, 79"80 (D.P.R.2007). | Spanish-speaking employee's consent to arbitrate was not in error, and was not void, due to her lack of fluency in English and thus her inability to fully understand contents of agreements that she had signed; although employee never received copy of one document, onus was on her to obtain and read copy before signing it. 31 L.P.R.A. S 3404. | Does lack of fluency in English void a partys consent to an agreement? | 007237.docx | LEGALEASE-00127231-LEGALEASE-00127232 | Condensed, SA, Sub | 0.41 | 0 | 1 | 1 | 1 | 1 |
| 14278 | Tompkins Printing Equip. Co. v. Almik, 725 F. Supp. 918 | 363+3 | The Court, in the preceding paragraph, used the phrase "even if it is considered to be a negotiable instrument" because the Court is troubled by the stipulation of the parties that the promissory note involved (exhibit A) is a negotiable instrument. (See stipulation of facts, # 6). Such document is not and cannot become, by stipulation of the parties, a negotiable instrument. A document may be a negotiable instrument only if it meets the requirements listed in the U.C.C. See U.C.C. " 3"104. Among other requirements, it is absolutely essential to negotiability that a document be "payable to order" or "payable to bearer". U.C.C. " 3"104(1)(d). See also, Hawkland and Lawrence, U.C.C. series, " 3"110:01 (art. 3) where the authors write: "An instrument to be negotiable within Article 3 must be payable either to order or to bearer." The document at issue here (exhibit A) does not satisfy this requirement. | Document cannot become, by stipulation of parties, negotiable instrument; document may be negotiable instrument only if it meets requirements listed in Uniform Commercial Code. U.C.C. SS 3-101 et seq., 3-104, 3-104(1)(d), 3-202(3). | Is it necessary for an instrument to meet the requirements listed in the Uniform Commercial Code in order to qualify as a negotiable instrument? | 009038.docx | LEGALEASE-00127048-LEGALEASE-00127049 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 14279 | Wyland v. W. Shore Sch. Dist., 52 A.3d 572 | 1.41E+30 | The District asserts that the "Rule" is really the policy of PDE. We recognize that a court generally should not interfere with a school district's discretion regarding educational policy. Unionville -Chadds Ford Sch. Dist. Nonetheless, a school district does not have the discretion to disregard a statutory mandate, as the District has done here. | A court generally should not interfere with a school district's discretion regarding educational policy; nonetheless, a school district does not have the discretion to disregard a statutory mandate. | Can courts interfere with a school district's discretion regarding school policy? | Education - Memo # 20 - C - SU.docx | ROSS-003326972-ROSS-003326973 | Condensed, SA | 0.44 | 0 | 1 | 0 | 1 | |
| 14280 | In re Am. Freight Sys., 179 B.R. 952 | 148+81.1 | The protection afforded by the Fifth Amendment applies to vested property rights. See Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist., 739 F.2d 1472, 1477 (10th Cir.1984). The creditors argue that AFS's cause of action for undercharges is not a vested property right until it has been reduced toafinal judgment. | Protection afforded by Fifth Amendment taking clause applies to vested property rights. U.S.C.A. Const.Amend. 5. | Does the protection afforded by the Fifth Amendment apply to vested property rights? | Eminent Domain - Memo 295 - GP.docx | ROSS-003298595 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14281 | United Employer Ben. Corp. v. Dep't of Ins. & Fin. of State of Or., 133 Or. App. 477 | 148+2.2 | It is not our purpose here to either condone or condemn DIF's acts or to comment on the appropriateness of certain responses to nonbinding agency conduct. See Johnson v. Dept. of Fish and Wildlife, 114 Or.App. 335, 835 P.2d 133 1992). Apart from questions concerning whether the Director may have had the authority pursuant to ORS 734.220 to prohibit solicitation from the customer list, or whether UEBC was, in fact, damaged by those acts, we conclude that the Director's actions simply were not sufficient to effect a taking under either the state or federal constitution. A mere threat to take action on the occurrence of some uncertain future event is not a taking. As the Supreme Court said in Suess Builders v. City of Beaverton, 294 Or. 254, 258, 656 P.2d 306 (1982), to be considered a taking, the government's action must have the legal effect of rendering the property useless. The director's actions raised no legal impediment to UEBC's use of the list. The fact that many brokers chose not to solicit customers on behalf of UEBC out of fear of reprisal by DIF does not give rise to a taking by DIF. | Mere threat to take action on the occurrence of some uncertain future event is not "taking" under either State or Federal Constitution. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 18. | Is mere threat to take action on the occurrence of some uncertain future event a taking? | Eminent Domain - Memo 298 - GP.docx | ROSS-003286569-ROSS-003286570 | SA, Sub | 0.83 | 0 | 0 | 1 | 1 | |
| 14282 | Liberty Mut. Ins. Co. v. Whitehouse, 868 F. Supp. 425 | 148+2.1 | The Taking Clause, which is made applicable to the states through the Fourteenth Amendment, provides that "private property" shall not "be taken for public use without just compensation." U.S. Constitution amend. V. The purpose of the Taking Clause is " "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 227, 106 S.Ct. 1018, 1027, 89 L.Ed.2d 166 (1986) (quoting Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)). In order to establish a violation, "one must demonstrate both that 'property' was 'taken' and that no provision was made for awarding 'just compensation.'" Medical Malpractice Joint Underwriting Ass'n v. Paradis, 756 F.Supp. 669, 675 (D.R.I.1991). | In order to establish violation of taking clause, one must demonstrate both that property was taken and that no provision was made for awarding just compensation. U.S.C.A. Const.Amend. 5. | What must be demonstrated to establish a violation of just compensation provision? | Eminent Domain - Memo 301 - GP.docx | ROSS-003285126-ROSS-003285128 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 14283 | U.S. Fire Ins. Co. v. Corporacion Insular De Seguros, 853 F. Supp. 47 | 148+2.1 | The takings clause of the Fifth Amendment prohibits the government taking of property without just compensation and applies to the states through the Fourteenth Amendment. See Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 175 n. 1, 105 S.Ct. 3108, 3111 n. 1, 87 L.Ed.2d 126 (1985). "It is axiomatic that the Fifth Amendment's just compensation provision is designed to bar Government from forcing some people alone to bear public burdens, which in all fairness and justice, should be borne by a public as a whole." First English Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. 304, 318-19, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987) (internal citations omitted). [(The determination of whether government action constitutes a taking is made on a case by case basis. Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 224, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986). This determination requires courts to balance private and public interests; in other words, the inquiry turns on whether "the public at large, rather than a single owner, must bear the burden of an exercise of power in the public interest." Agins v. Tiburon, 447 US. 255, 260-61, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). Three factors that must be considered are: (1) "the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations and (3) the character of the governmental action." | Determination of whether government action constitutes taking under Fifth Amendment is made on case by case basis. U.S.C.A. Const.Amends. 5, 14. | How is the determination whether government action constitutes a taking is made under the law? | Eminent Domain - Memo 309 - GP.docx | ROSS-003300023-ROSS-003300024 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 14284 | Montgomery v. Hall, 229 Or. 428 | 302+8(11) | We are aware of nothing additional in the pleadings which casts any light upon the question as to whether or not Roberta Cole was substituted in lieu of Benjamin Pierce as the buyer of the instrument. It is true that a paragraph of the answer alleges that "at the time of her death, Roberta Cole was the owner of said Television, Radio and Phonograph Combination Set." Generally, a bare allegation of ownership which is unaccompanied with supporting facts is deemed a pure conclusion of law and not an averment of facts.71 C.J.S. Pleading " 30(a) page 74. In the present instance Roberta Cole, at the time of her death could not have been the owner of the instrument, for the Second Amended Answer and Counterclaim shows that if she bore any relationship to the instrument she was a conditional vendee. The contract of conditional sale was then in default. The defendant does not claim that he removed the default. His counterclaim was an affirmance of the contract and not an attempt to terminate it. | Bare allegation of ownership unaccompanied with supporting facts is generally deemed purely conclusion of law and not averment of fact. | Is an allegation of ownership a conclusion of law? | 023076.docx | LEGALEASE-00127030-LEGALEASE-00127031 | Order, SA | 0.87 | 1 | 0 | 0 | 1 | |
| 14285 | Watson v. City of E. Point, 223 Ga. 185 | 302+8(11) | In the first count of the petition it is alleged that the exchange of property by the deeds between the City of East Point and Paul Wilson was without adequate consideration to the city because the land purported to be conveyed to Wilson to the city already belonged to the city. On general demurrer we must deal with allegations of ultimate facts as true. An allegation that a party is the owner of specified land is an allegation of an ultimate fact and not a conclusion of law. Domin v. Brush, 174 Ga. 32(1), 161 S.E. 809; Gray v. Bradford, 194 Ga. 492, 494(1), 22 S.E.2d 43; Weimer v. Cauble, 214 Ga. 634, 637, 106 S.E.2d 781; Teasley v. Jones, 215 Ga. 135(1), 109 S.E.2d 514; Nuckolls v. Merritt, 216 Ga. 35, 38, 114 S.E.2d 427. | An allegation that a party is the owner of specified land is an allegation of an ultimate fact and not a conclusion of law. | "Is the allegation that a party is the owner of a specified land, an allegation of ultimate fact?" | 023082.docx | LEGALEASE-00127042-LEGALEASE-00127043 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14286 | Montgomery v. Hall, 229 Or. 428 | 302+8(11) | We are aware of nothing additional in the pleadings which casts any light upon the question as to whether or not Roberta Cole was substituted in lieu of Benjamin Pierce as the buyer of the instrument. It is true that a paragraph of the answer alleges that "at the time of her death, Roberta Cole was the owner of said Television, Radio and Phonograph Combination Set." Generally, a bare allegation of ownership which is unaccompanied with supporting facts is deemed a pure conclusion of law and not an averment of facts. 71 C.J.S. Pleading " 30(a) page 74. In the present instance Roberta Cole, at the time of her death could not have been the owner of the instrument, for the Second Amended Answer and Counterclaim shows that if she bore any relationship to the instrument she was a conditional vendee. The contract of conditional sale was then in default. The defendant does not claim that he removed the default. His counterclaim was an affirmance of the contract and not an attempt to terminate it. | Bare allegation of ownership unaccompanied with supporting facts is generally deemed purely conclusion of law and not averment of fact. | Is the allegation of ownership a conclusion of law? | Pleading - Memo 209 - RMM.docx | ROSS-003300303-ROSS-003300304 | Order, SA | 0.87 | 1 | 0 | 0 | 1 | |
| 14287 | Foster v. Rowland, 194 Ga. 845 | 302+8(11) | In Chidsey v. Brookes, 130 Ga. 218, 60 S.E. 529, 14 Ann.Cas. 975, the abstract of title was by reference made a part of the petition, and this court said: "In the recent case of Dugas v. Hammond [130 Ga. 87], 60 S.E. 268, this court held that where the plaintiff set forth in his petition the title upon which he relied to recover the land, and that title was insufficient in law, the petition should be dismissed upon demurrer." An allegation that a party is the owner of specified realty is an allegation of an ultimate fact, and not a conclusion of law. Domin v. Bush, 174 Ga. 32, 161 S.E. 809; Gray v. Bradford, supra. Nothing to the contrary was held in Weyman v. Atlanta, 122 Ga. 539(2, 3), 50 S.E. 492, which was an equitable action seeking to remove an alleged cloud upon title, and in which the petition averred that the city lot was vacant, but did not aver that the property belonged to Mrs. Thompson at the time it was levied on for taxes, and the fact that both parties claimed under a common grantor was relied on. In the instant case the plaintiff unqualifiedly alleges (paragraph 2) that he owns tha land; and (paragraph 3) he alleges that he and his predecessors in title have owned and been in possession thereof for more than thirty years. Although he alleges (paragraph 3) that his title is derived through certain persons, and, responsively to the defendant's demurrer, by amendment he alleges in more detail how his title is derived, whether or not the amendment was necessary, we do not think the plaintiff's claim of title was limited to the abstract, so as to make the petition or abstract demurrable within the rulings in the cases cited supra. Accordingly, it was error to dismiss the plaintiff's action on demurrer. | Allegation that a party is owner of specified realty is an allegation of an "ultimate fact" and not a "conclusion of law". Code, S 33-117. | Is the allegation of ownership of specified realty an ultimate fact or a conclusion of law? | 023093.docx | LEGALEASE-00127164-LEGALEASE-00127165 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14288 | Foster v. Rowland, 194 Ga. 845 | 302+8(11) | In Chidsey v. Brookes, 130 Ga. 218, 60 S.E. 529, 14 Ann.Cas. 975, the abstract of title was by reference made a part of the petition, and this court said: "In the recent case of Dugas v. Hammond [130 Ga. 87], 60 S.E. 268, this court held that where the plaintiff set forth in his petition the title upon which he relied to recover the land, and that title was insufficient in law, the petition should be dismissed upon demurrer." An allegation that a party is the owner of specified realty is an allegation of an ultimate fact, and not a conclusion of law. Domin v. Bush, 174 Ga. 32, 161 S.E. 809; Gray v. Bradford, supra. Nothing to the contrary was held in Weyman v. Atlanta, 122 Ga. 539(2, 3), 50 S.E. 492, which was an equitable action seeking to remove an alleged cloud upon title, and in which the petition averred that the city lot was vacant, but did not aver that the property belonged to Mrs. Thompson at the time it was levied on for taxes, and the fact that both parties claimed under a common grantor was relied on. In the instant case the plaintiff unqualifiedly alleges (paragraph 2) that he owns tha land; and (paragraph 3) he alleges that he and his predecessors in title have owned and been in possession thereof for more than thirty years. Although he alleges (paragraph 3) that his title is derived through certain persons, and, responsively to the defendant's demurrer, by amendment he alleges in more detail how his title is derived, whether or not the amendment was necessary, we do not think the plaintiff's claim of title was limited to the abstract, so as to make the petition or abstract demurrable within the rulings in the cases cited supra. Accordingly, it was error to dismiss the plaintiff's action on demurrer. | Allegation that a party is owner of specified realty is an allegation of an "ultimate fact" and not a "conclusion of law". Code, S 33-117. | Is the allegation of ownership of specified realty an ultimate fact or conclusion of law? | 023095.docx | LEGALEASE-00127160-LEGALEASE-00127161 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14289 | In re Guardianship of Spinnie, 2016 IL App (5th) 150564 | 308+79(5) | In Illinois, a power of attorney creates a fiduciary relationship between the principal and the agent as a matter of law. Deason v. Gutzler, 251 Ill.App.3d 630, 637, 190 Ill.Dec. 959, 622 N.E.2d 1276 (1993). An agent under a power of attorney has a fiduciary duty to the principal who made the designation. See 755 ILCS 45/2"7(a), (b) (West 2014); Spring Valley Nursing Center, L.P. v. Allen, 2012 IL App (3d) 110915, " 12, 365 Ill.Dec. 131, 977 N.E.2d 1230. The mere existence of a fiduciary relationship prohibits the agent from seeking or obtaining any selfish benefit for herself, and if the agent does so, the transaction is presumed to be fraudulent.See Clark v. Clark, 398 Ill. 592, 601"02, 76 N.E.2d 446 (1947); Spring Valley Nursing Center, L.P., 2012 IL App (3d) 110915, " 12, 365 Ill.Dec. 131, 977 N.E.2d 1230; Pottinger v. Pottinger, 238 Ill.App.3d 908, 918, 179 Ill.Dec. 116, 605 N.E.2d 1130 (1992); White v. Raines, 215 Ill.App.3d 49, 59, 158 Ill.Dec. 478, 574 N.E.2d 272 (1991). "Thus, any conveyance of the principal's property that either materially benefits the agent or is for the agent's own use is presumed to be fraudulent." Spring Valley Nursing Center, L.P., 2012 IL App (3d) 110915, " 12, 365 Ill.Dec. 131, 977 N.E.2d 1230. | The mere existence of a fiduciary relationship between a principal and an agent prohibits the agent from seeking or obtaining any selfish benefit for herself, and if the agent does so, the transaction is presumed to be fraudulent. | Can an Agent use the Power of Attorney for his own benefit? | 041834.docx | LEGALEASE-00126907-LEGALEASE-00126908 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14290 | Cody Gas Co. v. Pub. Serv. Comm'n of Wyoming, 748 P.2d 1144 | 317A+145.1 | While " 37"2"205(a) does not define the certificated area concept, it does refer to territory with no certificate and extensions within or to territory already served by a utility. Additionally, the record indicates that regulation by area avoids duplication. Clearly, public service commissions have the power to grant blanket or area certificates, Empire District Electric Company v. Cox, Mo.App., 588 S.W.2d 263, 266 (1979); State ex rel. Webb Tri"State Gas Co. v. Public Service Commission, Mo.App., 452 S.W.2d 586, 588 (1970); and there was substantial evidence in the record in the instant case for the PSC to choose to regulate by area rather than facility. Statutory designation of an administrative agency function encompasses a reasonable delegation of process determination required or adopted for performance. Teton Valley Ranch v. State Board of Equalization, Wyo., 735 P.2d 107 (1987); Gulf Oil Corp. v. Wyoming Oil and Gas Conservation Commission, Wyo., 693 P.2d 227 (1985); Great Western Sugar Co. v. Johnson, Wyo., 624 P.2d 1184 (1981); Barry & Barry, Inc. v. State Department of Motor Vehicles, 81 Wash.2d 155, 500 P.2d 540 (1972). Any constraints on methods available to the agency to exercise designated responsibilities should be emplaced by specific statutory restrictions if constitutional interests are otherwise protected. Administrative Law Symposium, 16 Wyo.L.J. (1962). See Public Service Commission v. Formal Complaint of WWZ Co., Wyo., 641 P.2d 183 (1982), invoking statutory construction of agency authority. | Public Service Commissions have power to grant blanket or area certificates to public utilities. | Does the Public Service Commission (PSC) have the power to grant blanket or area certificates? | 042438.docx | LEGALEASE-00127070-LEGALEASE-00127071 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 14291 | In re Apple & AT & TM Antitrust Litig., 596 F. Supp. 2d 1288 | 386+7 | "Where there is a consensual entry, there is no tort, because lack of consent is an element" of a trespass claim. Civic Western Corp. v. Zila Industries, Inc., 66 Cal.App.3d 1, 16"17, 135 Cal.Rptr. 915 (1977). Consent can be limited by its scope, however, and "creates a privilege to [enter] only in so far as [a] condition or restriction is complied with." Id. at 17, 135 Cal.Rptr. 915. | Under California law, common law trespass lies where an intentional interference with the possession of personal property has proximately caused injury; consent can be limited by its scope, however, and creates a privilege to enter only in so far as a condition or restriction is complied with. | What privilege does a restricted consent create in a trespass action? | 047306.docx | LEGALEASE-00127022-LEGALEASE-00127023 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 14292 | Shamrock Coal Co. v. Maricle, 5 S.W.3d 130 | 413+1 | The constitutionality of a similar threshold provision was upheld by this Court in Mullins, supra. In Mullins, the appellant was a heavy equipment operator in and around Virginia coal mines from 1977 to 1990. In 1990, the appellant took a position with a Kentucky company, where he worked for one year. In response to his claim for workers' compensation benefits, this Court held that the threshold provision of KRS 342.316(3)(b), requiring that a worker be exposed in Kentucky for two continuous years before qualifying for a RIB award, was constitutional. "An employee's right to occupational disease benefits is purely statutory in nature and does not fall under the ambit of " 14 of the Kentucky Constitution. The General Assembly clearly is free to limit the application of workers' compensation benefits...." Id. at 263. See also, A. Larson & L. Larson, The Law of Workmen's Compensation "" 12"23 to 12"26, 12"78 to 12"79 (1996) (pointing out that threshold provisions which effectively preclude a remedy for certain types of work-related injuries are generally held to pass constitutional muster). Also, this Court has held that "[t]he fact that the act does not provide for pain and suffering is also no basis upon which a cause of action may lie." Zurich, 712 S.W.2d at 342. | The General Assembly is free to limit the application of workers' compensation benefits. | Is the General Assembly free to limit the application of workers compensation benefits? | 048164.docx | LEGALEASE-00126942-LEGALEASE-00126943 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14293 | Gormley v. Panuzio, 166 Conn. 1 | 13+65 | Mandamus is an ancient common law writ, but its issuance is governed largely by equitable considerations, and it has been generally held that it will be denied where, by reason of events occurring subsequent to the commencement of the proceedings or because of the lapse of time, the relief sought would be nugatory or unavailing (citations omitted).' State ex rel. Sheltonv. Edwards, 109 Conn. 249, 254-255, 146 A. 382, 384. In mandamus, the factual situationexisting at the time the writ is to issue governs. State ex rel. Board of Education v. D'Aulisa,133 Conn. 414, 424, 52 A.2d 636; State ex rel. Bulkeley v. Williams, 68 Conn. 131, 155,35 A.24, 421. | In mandamus, factual situation existing at time writ is to issue governs. | "In mandamus, does the factual situation existing at the time of the writ is to issue govern?" | Action - Memo # 658 - C TM.docx | ROSS-003285767-ROSS-003285768 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14294 | Canal Auth. of State of Fla. v. Callaway, 489 F.2d 567 | 212+1563 | In considering these four prerequisites, the court must remember that a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion. The primary justification for applying this remedy is to preserve the court's ability to render a meaningful decision on the merits. | Preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries burden of persuasion. | When should the extraordinary remedy of injunction be granted? | 005898.docx | LEGALEASE-00127600-LEGALEASE-00127601 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 14295 | Taggart v. W. Maryland R. Co., 24 Md. 563 | 13+63 | As to the effect of the omission to make calls:Lapse of time, not amounting to the bar of limitations, is not a defense to an action at law. The contract in this case according to the more recent authorities was a continuing offer, which was accepted by the appellees by the adoption of the Green Spring route on the 31st of March, 1857. No calls were made until the 25th of June following. The statute of limitations did not begin to run until the several calls were due. Baltimore & Havre de Grace Turnpike Co. v. Barnes, 6 H. & J. 57. | Lapse of time, not amounting to the bar of limitations, is not a defense to an action at law. | "Is a lapse of time, not amounting to the bar of limitations, a defense to an action at law?" | 006039.docx | LEGALEASE-00127352-LEGALEASE-00127353 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14296 | Perona v. Stark, 114 Ariz. 570 | 13+65 | Under the trial court's finding of fact and conclusion of law, therefore, the nine months afforded appellant by s 33-741 before a forfeiture of her interest under the contract might be enforced did not bagin to run until a reasonable time after reinstatement of the time-of-the- essence clause in June of 1974, rather than April when a delinquent payment had been accepted by appellee, and the commencement of the action in January of 1975 was premature. A judgment must be supported by facts as they existed at the time of the commencement of the action. Jahnke v. Palomar Financial Corporation, 22 Ariz.App. 369, 527 P.2d 771 (1974). | Judgment must be supported by facts as they existed at time of commencement of action. | Must a judgment be supported by facts as they existed at the time of the commencement of an action? | Action - Memo # 761 - C TJ.docx | ROSS-003289906-ROSS-003289907 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14297 | Parr v. First State Bank of San Diego, 307 S.W.2d 309 | 13+65 | Courts do not decide cases when nothing is left to litigate at the time of the hearing. City of West University Place v. Martin, 132 Tex. 354, 123 S.W.2d 638, 639. Since it appears without dispute that the questions presented are now moot the appeal is dismissed. See Hopkins v. City of Dallas, Tex.Civ.App., 106 S.W.2d 783 (W.R.) State ex rel. Baughman v. Woodruff, Tex.Civ.App., 106 S.W.2d 1088 and Poole v. Giles, 151 Tex. 224, 248 S.W.2d 464. | Courts do not decide cases when nothing is left to litigate at the time of hearing. | Do courts decide cases when nothing is left to litigate at the time of hearing? | 006079.docx | LEGALEASE-00127788-LEGALEASE-00127789 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 14298 | Hammon v. Wichita Cty., 290 S.W.2d 545 | 13+65 | Generally, the right to equitable relief must be determined as such right may or may not exist at the time of the hearing. Local Union No. 324, International Brotherhood of Electrical Workers, A. F. L. v. Upshur-Rural Electric Cooperative Corp., Tex.Civ.App., 261 S.W.2d 484. | Generally right to equitable relief must be determined as such right may or may not exist at the time of the hearing. | Will the right to equitable relief exist at the time of hearing? | 006204.docx | LEGALEASE-00127522-LEGALEASE-00127523 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 14299 | Leonard v. Medlang, 264 N.W.2d 481 | 13+65 | Because there was no showing by Leonard that the ends of justice are not thereby served, we apply the general rule that in equitable actions relief will be awarded as warranted by circumstances existing at the time of the award. See State v. Simpson, 78 N.D. 440, 49 N.W.2d 790, 794 (1951), and Henry S. Grinde Corporation v. Klindworth, 77 N.D. 597, 44 N.W.2d 417, 430 (1950). Where a petitioner does not have a clear right to the relief sought, a writ of mandamus should not issue. | In equitable actions, relief will be awarded as warranted by circumstances existing at time of the award. | "In equitable actions, should relief be awarded as warranted by circumstances existing at time of the award?" | Action - Memo # 861 - C PC.docx | ROSS-003303423-ROSS-003303424 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 14300 | Coleman v. Coleman, 1 A.D.3d 833 | 13+24 | But the court of law had no such flexible practice. Under the common law an equitable defense could not be interposed to an action at law, and if the defendant had only an equitable defense, judgment was given against him as a matter of course.Upon the adoption of the Code, revolutionizing the old practice, it was provided that a defendant could interpose to an action at law, both legal and equitable defenses. It was then that our courts held that even though an equitable defense could be interposed to an action of law, nevertheless, equitable defenses could not be submitted to a jury as a matter of right. This Court in Adickes v. Lowry, 12 S.C. 97, 108, had this to say with regard to the trial of an equitable defence interposed to an action at law: "Under the former practice such defense could not have been set up in the action at law to try the title and recover possession. The defendant would have been obliged to file his bill in equity to restrain proceedings at law, and to seek such other relief as in equity he might have a right to demand. Under the code of procedure all this may be effected by the pleadings in a single action, and new parties, if necessary, may be brought in; but, at the trial, the legal and equitable issues must be distinguished and decided by the court in the exercise of its distinct functions as a court of law and a court of equity, and only those should be determined by the jury which are properly triable by jury, while those which would formerly have been properly triable in equity must be determined by the judge in the exercise of his chancery power. In the latter class, when questions of fact are submitted to the jury, the purpose can only be to enlighten the understanding of the judge by giving him the aid of a verdict, but the verdict is not binding, and may be totally disregarded by the judge in arriving at his final determination." | At common law an equitable defense could not be interposed to an action at law, and judgment was given as a matter of course against a defendant having only an equitable defense. | Are equitable defenses available to a law action? | 006273.docx | LEGALEASE-00127923-LEGALEASE-00127924 | Order, SA | 0.91 | 1 | 0 | 0 | 1 | |
| 14301 | Mastrobuono v. Lange, 241 A.D. 770 | 13+65 | Particularly is this true when the findings made were entirely inconsistent with those previously made on which the judgment was rendered. It would have been proper to make such findings before judgment if the court were to retain jurisdiction to furnish relief to plaintiff. But this question of of additional findings becomes academic in the view we take of the appeal from the judgment. The manner in which the appeal from the judgment is presented makes a decision difficult. The plaintiff has prepared no bill of exceptions. The record omits all the evidence, and the case is not settled and signed by the trial justice. The appeal was submitted without argument, so the discrepancies could not be called to the attention of counsel. They have stipulated the record and neither side has raised any question as to its form. Expressing our disapproval of such practice, nevertheless under the circumstances we take the record as we find it. Sufficient appears therefrom and by conceded facts to indicate that equity had jurisdiction to determine the question of fraud or misrepresentation in respect to the payment of taxes for the years 1920 and 1921 by defendant's testator prior to the execution of the deed which was accepted in reliance on those representations. The question should have been determined by the court and a remedy furnished the plaintiff if the facts warranted it, even though the court found that the facts proved did not establish grounds for the reformation of the deed as the complaint demanded. Equity will give relief as the exigencies of the case demand at the close of the trial. Lightfoot v. Davis, 198 N. Y. 261, 273, 91 N. E. 582, 29L. R. A. (N. S.) 119, 139 Am. St. Rep. 817, 19 Ann. Cas. 747; Bloomquist v. Farson, 222 N. Y. 375, 380, 118 N. E. 855. There is authority that a remedy will be furnished under somewhat similar circumstances. Di Chiro v. O'Byrne, 163 App. Div. 109, 148 N. Y. S. 528. Equity is liberal in respect to amendment of pleadings where the relief to be given is | Equity will give relief as exigencies of case demand at close of trial. | Will equity give relief as exigencies of the case demand at the close of trial? | Action - Memo # 893 - C VA.docx | ROSS-003325373-ROSS-003325376 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14302 | Citizens' Nat. Bank of Netcong v. John Wills, 130 N.J.L. 201 | 13+65 | This appeal came in at the October Term, 1942, and was submitted without oral argument. Because of the importance of the question involved, the court, on its own motion, called for oral argument. The case was fully argued at the February Term, 1943. Counsel for the respondent was given leave to file a supplemental brief on the question of whether the bank had in fact filed a set-off in the previous litigation between the parties. Under the first point in the supplemental brief the respondent argues that "a plea of set off was filed with the answer in the first suit"; under the second point the respondent argues that "no set off could be filed in the first suit." Under the third point the respondent argues that "when the first action was commenced the bank must have had an existing demand and right of action against the plaintiff before it could have filed a set off." As a matter of fact, the Wills Company started its first action some forty days after the bank had prematurely debited or charged its account. It was as of that time that the rights of the parties were determined. The rule is well stated in 1 C.J.S., Actions, " 125, p. 1389: "As a general rule, at least so far as actions at law are concerned, the rights of the parties are determined as of the time of the beginning of the action. Plaintiff must therefore recover, if at all, according to the status of his rights at the time of the commencement of the action, and not at some earlier time and ordinarily the same rule applies with regard to the rights and defenses of defendant." And so the right of the bank to file a set-off at the time suit was started could not be questioned. This is a matter of every day practice. And the respondent, under its first point, says that this was in fact done. It is said that it was "ineptly" done and "not in conformity with the general form of set-off." As to this we conclude that a set-off was not pleaded in the first case formally or substantially. The defense rested on the proposition that there was no | In actions at law, the rights of the parties are generally determined as of the time of beginning of the action. | "In actions at law, are the rights of the parties generally determined as of the time of beginning of the action?" | 006317.docx | LEGALEASE-00128096-LEGALEASE-00128098 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 14303 | Blair v. Scott Specialty Gases, 283 F.3d 595 | 25T+134(2) | Blair contends that the agreement was unenforceable for lack of mutuality of consideration because Scott did not agree to be bound by the arbitration agreement. However, the arbitration agreement specifically states that "if any dispute arises from your employment with Scott, you and Scott agree that final resolution of the dispute will occur exclusively in a final and binding arbitration proceeding." App. at 49. The language of the agreement is clear that both parties agreed to be bound to the arbitration agreement and Blair admitted to having read that language when she signed the acknowledgment shortly after receipt of the revised handbook containing the arbitration clause. When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced. See, e.g., Michalski v. Circuit City Stores, Inc., 177 F.3d 634, 637 (7th Cir.1999); Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 378 (4th Cir.1998). Moreover, a contract need not have mutuality of obligation as long as the contract is supported by consideration. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 180 (3d Cir.1999) (finding contract enforceable where one party had option to litigate arbitral issues in court, while the other party was required to invoke arbitration, because mutuality is not required where the requirement of consideration is met). | When both parties have agreed to be bound by arbitration, adequate consideration exists, and the arbitration agreement should be enforced. | Do courts presume that adequate consideration exists when both parties agreed to be bound by arbitration? | 007203.docx | LEGALEASE-00127378-LEGALEASE-00127379 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14304 | Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302 | 25T+134(6) | he Supreme Court, however, subsequently reversed the Eleventh Circuit's decision. The court held that while "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights" in an arbitration forum, failure of an arbitration agreement to address costs and fees does not alone make the agreement unenforceable. Green Tree Fin. Corp."Alabama v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000). Instead, the party seeking to avoid arbitration must prove that "arbitration would be prohibitively expensive." Id. | Party seeking to avoid arbitration on grounds that costs and fees made arbitration agreement unconscionable must prove that arbitration would be prohibitively expensive. | Can a party avoid arbitration by proving that arbitration would be prohibitively expensive? | 007215.docx | LEGALEASE-00127406-LEGALEASE-00127407 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 14305 | Jeter v. Ellenville Cent. Sch. Dist., 50 A.D.2d 366 | 1.41E+30 | In New York State, education through 12 grades or equivalent levels is committed to the responsibility of the State, and boards of education and school districts are merely agents of the State for securing the appropriate free education and the raising of funds to provide for that education. (See Matter of Divisich v. Marshall, 281 N.Y. 170, 22 N.E.2d 327; Union Free School District v. Town of Rye, 280 N.Y. 469, 21 N.E.2d 681.) Education is a matter of State interest and concern (Matter of Bd. of Educ. of Union Free School Dist. No. 1 of Towns of Bethlehem, Coeymans & New Scotland v. Wilson, 303 N.Y. 107, 113, 100 N.E.2d 159, 162), subject to the control of the Legislature (Union Free School District v. Town of Rye, supra, 280 N.Y. p. 477, 21 N.E.2d p. 685). As such, a board of education has full control over its tax funds except as controlled by acts of the Legislature (Matter of Divisich v. Marshall, supra, 281 N.Y. p. 174, 22 N.E.2d p. 329; Robertson v. Zimmermann, 268 N.Y. 52, 63"64, 196 N.E. 740, 744). Thus, while taxes raised for educational purposes may be the private property of the boards of education as against third persons, they are public funds collected for the statewide interest in education and become public property for that purpose and subject to the will of the Legislature (Board of Education of Princeton High School Dist. No. 500 v. Board of Education of Wyanet Community High School Dist. No. 510, 314 Ill. 83, 145 N.E. 169, 171). It was held, therefore, in Matter of Board of Education of City of Oneida v. Tuttle, 125 Misc. 230, 211 N.Y.S. 413, affd. 217 App.Div. 704, 215 N.Y.S. 818 that a statute compelling a school district which does not maintain adequate schools to pay another district for the tuition of pupils residing in such district does not constitute the taking of property without due process of law, since education is of statewide and public concern, and the Legislature has power to direct the payment of funds devoted to such use (see generally 72 A.L.R. 499"502). | Education is a matter of interest and concern for the state and is subject to the control of the legislature. | Is education a matter of interest and concern for the state and subject to the control of the legislature? | 016881.docx | LEGALEASE-00127469-LEGALEASE-00127471 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14306 | State ex rel. Douglas v. Faith Baptist Church of Louisville, 207 Neb. 802 | 141E+919 | The majority opinion in Yoder, then, although employing a "compelling interest" rule, nevertheless was greatly, if not completely, influenced by the process of balancing the specific interest of the state in 1 or 2 years of education beyond the eighth grade for students not expected to enter the mainstream of modern-day life against competing religious principles and practices nearly 3 centuries old. It is somewhat difficult to develop a generalized rule from the court's specific holding. The concurring opinion of Mr. Justice White, with whom, however, Mr. Justice Brennan and Mr. Justice Stewart joined, is more illuminating of the rule in its general application. "This would be a very different case for me if respondents' claim were that their religion forbade their children from attending any school at any time and from complying in any way with the educational standards set by the State." 406 U.S. at 238, 92 S.Ct. at 1544 (emphasis supplied). And continuing: "As recently as last Term, the Court re-emphasized the legitimacy of the State's concern for enforcing minimal educational standards, Lemon v. Kurtzman, 403 U.S. 602, 613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)." (In Lemon v. Kurtzman, 403 U.S. 602, 613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the court said: "A State always has a legitimate concern for maintaining minimum standards in all schools it allows to operate.") Mr. Justice White goes on to say in Yoder : "Pierce v. Society of Sisters (citations omitted) lends no support to the contention that parents may replace state educational requirements with their own idiosyncratic views of what knowledge a child needs to be a productive and happy member of society: in Pierce, both the parochial and military schools were in compliance with all the educational standards that the State had set, and the Court held simply that while a State may posit such standards, it may not pre-empt the educational process by requiring children to attend public schools." 406 U.S. at 239, 92 S.Ct. at 1545. | State always has a legitimate concern for maintaining minimum standards in all schools it allows to operate. | Does a state have a legitimate concern in requiring minimum standards in all of its schools? | 016886.docx | LEGALEASE-00127500-LEGALEASE-00127501 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 14307 | Ratigan v. Davis, 175 Neb. 416 | 1.41E+30 | The Legislature has plenary power over the boundaries of school districts. Nickel v. School Board of Axtell, 157 Neb. 813, 61 N.W.2d 566. It has complete power over the organization, function, and finances of a school district. Schutte v. Schmitt, 162 Neb. 162, 75 N.W.2d 656. It may establish different qualifications for electors of school districts. Farrell v. School Dist. No. 54, 164 Neb. 853, 84 N.W.2d 126. It also has plenary power over all municipal corporations. Except as limited by the Constitution, its power over municipalities is absolute. The question here presented is altogether different from local districts set up and administered by private individuals where the property owner has a right to be heard as a matter of due process, such as in the case of Anderson v. Carlson, supra. | Legislature has complete power over organization, function, and finances of school district. | "Does legislature have complete power over organization, function, and finances of school district?" | Education - Memo # 42 - C - SU.docx | ROSS-003286522-ROSS-003286523 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 14308 | Divisich v. Marshall, 281 N.Y. 170 | 1.41E+30 | If there be one public policy well-established in this State it is that public education shall be beyond control by municipalities and politics. The Board of Education of the City of New York is not a department of the city government, it is an independent corporate body and may sue and be sued in its corporate name. Education Law (Consol. Laws, c. 16), ss 300, 865; Matter of Fleischmann v. Graves, 235 N.Y. 84, 138 N.E. 745. As early as 1921 (Matter of Emerson v. Buck, 230 N.Y. 380, 130 N.E. 584) we decided that while the municipality must make appropriations of money to run the schools, the expenditure of that money when once appropriated vested solely in the Educational Board. This was followed and cited in Matter of Fuhrmann v. Graves, 235 N.Y. 77, 82, 138 N.E. 743, 744, when this court said: "The intent of the Legislature in enacting the Education Law is clear. It imposes upon boards of education, as separate corporate bodies representing the state, the responsibility of furnishing an efficient system of public education (People ex rel. Wells & Newton Co. (of New York) v. Craig, 232 N.Y. 125, 133 N.E. 419), and in this respect they are not subject to or controlled by the city authorities. In order to enable such boards to properly discharge the duties thus imposed, they are clothed with authority to act independently of the city authorities. As to when, how and where the amounts placed at their disposal shall be disbursed, each board exercises an independent judgment, uncontrolled by and in no respect interfered with or influenced by the city authorities. The boards cannot incur a liability or an expense chargeable against the funds under their control except for educational purposes, and this only to the extent of the amounts placed at their disposal. Education Law, s 877, subd. 3, as amended by Laws 1917, c. 786. While such boards are required each year to submit to the city council itemized estimates of the amounts which will be required for educational purposes for the fiscal | It is public policy of state that public education shall be beyond control by municipalities and politics. | Has the policy of a state been to place public education beyond the control of municipality? | 016900.docx | LEGALEASE-00127612-LEGALEASE-00127614 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14309 | Reg'l High Sch. Dist. No. 3 v. Town of Newtown, 134 Conn. 613 | 1.41E+30 | The formation of school districts within the towns was delegated to them and to the school societies without restriction as early as 1766. Statutes, Rev.1821, p. 397, note 1. Incidentally, this note gives an interesting history of the early and continuous interest of the state in education. As is indicated in the review of school legislation in Connor v. Spellacy, 122 Conn. 36, 39, 186 A. 648, that power was long exercised by the towns. In legislating concerning education, the state is exercising its broad, sovereign power. [] Bissell v. Davison, 65 Conn. 183, 190, 32 A. 348, 29 L.R.A. 251; State ex rel. Walsh v. Hine, supra; see State v. Bassett, 100 Conn. 430, 432, 123 A. 842, 37 A.L.R. 131. Section 198h provides that regional boards shall have all the powers and duties conferred upon boards of education by the General Statutes and also gives them authority to purchase land and equip and organize a school or schools The specific powers and duties of boards of education are set forth in " 237h; General Statutes, Title 8, as amended, regulates public education in hundreds of sections. There is no theoretical distinction between the consolidation of districts within the town and the consolidation of two or more towns into a regional district. It is not necessary to labor the point. A few of the innumerable cases are cited to illustrate the power of the state over educational matters and the variety of situations in which it has been applied. Scoville v. Mattoon, 55 Conn. 144, 149, 10 A. 511; State ex rel. Walsh v. Hine, supra; State ex rel. Huntington v. Huntington Town School Committee, supra, 82 Conn. 566, 74 A. 882; Gardner v. Ginther, 232 App.Div. 296, 250 176, affirmed, 257 N.Y. 578, 178 N.E. 802; State ex rel. Zilisch v. Auer, 197 Wis. 284, 291, 221 N.W. 860, 223 N.W. 123; School District v. Callahan, 237 Wis. 560, 297 N.W. 407, 135 A.L.R. 1081; Hamilton & Mort, Law & Public Education, p. 526; notes, 65 A.L.R. 1523; 70 A.L.R. 1062; 135 A.L.R. 1096. | The state, in legislating concerning education, is exercising its broad, sovereign power. | "Is a state, in legislating concerning education, exercising its broad, sovereign power?" | Education - Memo # 47 - C - SU.docx | ROSS-003285085-ROSS-003285087 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 14310 | Samaad v. City of Dallas, 940 F.2d 925 | 148+277 | The municipal defendants argue that the takings claims in both Pierce and Samaad are not ripe because plaintiffs failed to seek just compensation in state court. A takings claim is not ripe until the claimant has unsuccessfully sought compensation from the state. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985). In Williamson County, the Court reasoned as follows:[B]ecause the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a " 1983 action.Id. at 194 n. 13, 105 S.Ct. at 3120 n. 13 (emphasis in original). The Court concluded that Hamilton Bank's takings claim was not ripe because it had failed to utilize available state procedures. The Court implicitly qualified its requirement that takings claimants seek compensation in the state system: "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Id. at 195, 105 S.Ct. at 3121 (emphasis added). | A "takings" claim is not ripe until claimant has unsuccessfully sought compensation from the state; short of that, it must be certain that the state would deny the claimant compensation were he to undertake the obviously futile act of seeking it. U.S.C.A. Const.Amend. 5. | Is a takings claim ripe until the claimant has unsuccessfully sought compensation from the state? | 017706.docx | LEGALEASE-00127668-LEGALEASE-00127670 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 14311 | Middleoak Ins. Co. v. Tri-State Sprinkler Corp., 77 Mass. App. Ct. 336 | 366+35 | We reject the contrary reasoning of Lumbermens Mut. Cas. Co. v. Grinnell Corp., 477 F.Supp.2d 327 (D.Mass.2007), which gives too crabbed a reading to the phrase "to be provided" in reaching its conclusion that a waiver of subrogation only applies if the contract requires the owner to provide property insurance postconstruction. We conclude that waiver of subrogation results not just in that instance, but also if the owner secures coverage for the property after final payment. | A property owner's waiver of subrogation for losses covered by property insurance results not just if a contract requires the owner to provide property insurance postconstruction, but also if the owner secures coverage for the property after final payment. | Does an owner's waiver of subrogation rights if the owner secures coverage for the property? | Subrogation - Memo # 1137 - C - TJ.docx | ROSS-003286994-ROSS-003286995 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 14312 | Lopez v. Concord Gen. Mut. Ins. Grp., 155 Vt. 320 | 366+35 | A waiver is the voluntary, intentional relinquishment of a known right. Segalla v. United States Fire Ins. Co., 135 Vt. 185, 189, 373 A.2d 535, 538 (1977); Liberty Mutual Ins. Co. v. Cleveland, 127 Vt. 99, 103, 241 A.2d 60, 63 (1968). "It involves both knowledge and intent." Liberty Mutual, 127 Vt. at 103, 241 A.2d at 63 (quoting Mancini v. Thomas, 113 Vt. 322, 327, 34 A.2d 105, 109 (1943)). An insurer's subrogation rights may be lost by waiver or estoppel. See Pettengill v. New Hampshire Ins. Co., 129 Vt. 23, 30, 270 A.2d 883, 888 (1970). The right of subrogation, however, has "particular approval" under our law. Norfolk & Dedham Fire Ins. Co. v. Aetna Casualty & Surety Co., 132 Vt. 341, 343, 318 A.2d 659, 661 (1974). Indeed, a subrogation provision is required in each liability policy in this state. 8 V.S.A. " 4203(4). We conclude that a waiver of a subrogation right will be found only where the subrogated party has specifically and unequivocally relinquished that right. | Waiver of subrogation right will be found only where subrogated party has specifically and unequivocally relinquished that right. | Will a waiver of subrogation right be found only where subrogated party has specifically and unequivocally relinquished that right? | Subrogation - Memo # 1140 - C - TJ.docx | ROSS-003286303-ROSS-003286304 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14313 | In re Monaco, 514 B.R. 477 | 366+41(6) | The party seeking to establish a right to equitable subrogation bears the burden of proof to show that the right exists. Babu, 340 S.W.3d at 925"26. Placing this burden on the party seeking to invoke the doctrine is consistent with the concept that the party seeking to invoke a court's jurisdiction has the burden to prove standing. See Alvarado Land Dev., Inc. v. Sewell (In re Sewell), 413 B.R. 562, 568 (Bankr.E.D.Tex.2009). Thus, Tag had the burden to demonstrate that SARMECO (1) involuntarily (2) paid a debt primarily owed by another (3) in a situation that favors equitable relief to prevent unjust enrichment. See Frymire, 259 S.W.3d at 142. | Under Texas law, the party seeking to establish a right to equitable subrogation bears the burden of proof to show that the right exists. | Does the person seeking subrogation have the burden of showing right thereto? | 043424.docx | LEGALEASE-00127718-LEGALEASE-00127719 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 14314 | Jindra v. Diederich Flooring, 181 Wis. 2d 579 | 366+41(6) | Accordingly, there are at least three ways in which one may handle a subrogation claim. First, one may bring the claim against the party from whom subrogation is sought. As will be discussed below, the right to subrogation is not automatic, but rather, the party seeking to apply subrogation has the burden of proving the right to subrogation. Cunningham v. Metropolitan Life Ins. Co., 121 Wis.2d 437, 445-446, 360 N.W.2d 33 (1985) (citing Rixmann, 83 Wis.2d at 582, 266 N.W.2d 326). | Right to subrogation is not automatic but, rather, party seeking to apply subrogation has burden of proving right to subrogation. (Per Day, J., with two Justices concurring and two Justices concurring in result.) | Does a party seeking to apply subrogation have the burden of proving the right to subrogation? | Subrogation - Memo # 1230 - C - CK.docx | ROSS-003330833-ROSS-003330834 | SA, Sub | 0.56 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14315 | Nat'l Shawmut Bank of Boston v. New Amsterdam Cas. Co., 290 F. Supp. 664 | 366+35 | As appears from the opinion in the Jacobs case, the language of the U.C.C. is somewhat inconclusive on this question. U.C.C. " 9-102(2) sets forth the general rule that Article 9 'applies to security interests created by contract', whereas subrogation is a device of equity rather than a consensual creation. Furthermore, U.C.C. " 1-103 provides that the general principles of law and equity shall supplement the U.C.C. 'unless displaced by the particular provisions of the Act.' But it has been suggested that the equitable doctrine of subrogation should not continue after the U.C.C. has provided an 'adequate remedy at law.' Note, 65 Colum.L.Rev. 927, 933 (1965); Note, 69 Dick.L.Rev. 172, 178-80 (1965). However, the filing provisions of Article 9 do not seem to be a 'remedy' within the meaning of that classic maxim, because they are actually preventative, not remedial. If the opportunity to file is a 'remedy,' then the jurisdiction of equity could be sharply curtailed, for there are few suits that could not be avoided by astute legal counseling at an earlier stage. At any rate, it seems that express language could and should be used to extinguish a right as venerable and well-known as that of subrogation. See Cushman, 'The Surety's Right of Equitable Priority to Contract Balances in Relation to the U.C.C.,' 39 Temp.L.Q. 239 (1966). | Express language should be used to extinguish a right as venerable and well-known as that of subrogation. | Should express language be used to extinguish a right as venerable and well-known as that of subrogation? | Subrogation - Memo # 1274 - C - SKG.docx | ROSS-003286369-ROSS-003286370 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14316 | Vogel v. Hochhalter, 516 N.W.2d 214 | 413+1 | Allowing an action in the courts is precisely what the workers' compensation system sought to discourage. In the express words of the legislature, "[t]he workers' compensation system in Minnesota is based on a mutual renunciation of common law rights and defenses by employers and employees alike." Minn.Stat. " 176.001 (1992). "The certainty of benefits, the act presupposes, is to be preferred to the remedies afforded servants against their masters at common law." Lauer v. Tri-Mont Coop. Creamery, 287 Minn. 221, 225, 178 N.W.2d 248, 251 (1970). The system's aim is to provide adequate and prompt relief to the injured employee. Minn.Stat. " 176.001; see also Olsen v. Kling, 363 N.W.2d 310, 313-14 (Minn.1985). This requires insurers, in turn, to fulfill the compensation obligations incurred by insured employers. See Lauer, 287 Minn. at 226, 178 N.W.2d at 252 (insurer liable to dissolved employer). | Workers' compensation system requires insurers to fulfill compensation obligations incurred by insured employers. M.S.A. S 176.001. | Does the workers compensation system require insurers to fulfill compensation obligations incurred by insured employers? | 048528.docx | LEGALEASE-00127362-LEGALEASE-00127363 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14317 | Teater v. Good Hope Dev. Corp., 14 Cal. 2d 196 | 335+8(4) | "Appellants' action in this case was one of replevin and, of course, the essential prerequisite to such an action is the right to the immediate and exclusive possession of the property at the time of the commencement of the action ( Fredericks v. Tracy, 98 Cal. 658, 33 P. 750) and hence, if there be any preliminary act or condition precedent to be performed before the unqualified right of possession attaches the action cannot be maintained, and an after-acquired interest will not support replevin. People's Savings Bank of Fresno v. Jones, 114 Cal. 422, 46 P. 278; 5 Cal.Jur. 160, sec. 4. It must be conceded that on the date of the commencement of this action Mrs. Teater was the owner of the Good Hope Mine (the real estate) subject to the contract of sale to the Development Corporation; that certain payments under the terms of that contract were in default but no forfeiture had been declared and that the appellants were enjoined from declaring such forfeiture. It must be conceded further that the Development Corporation purchased the personal porperty here in controversy and originally was its owner. Therefore, unless the title and ownership thereto were lost or encumbered between the date of its purchase in 1933 and the sale under the levy of the attachment by the Dill Lumber Company in 1936, the findings of the trial court on the cross-complaint must be upheld. | The right to immediate and exclusive possession of the property at time of commencement of action is a prerequisite to maintenance of replevin, and existence of preliminary act or condition precedent to be performed precludes maintenance of the action. | Will an after-acquired interest support replevin? | 006008.docx | LEGALEASE-00128375-LEGALEASE-00128376 | Condensed, Order, SA | 0.82 | 1 | 1 | 0 | 1 | 1 |
| 14318 | Phifer v. Mut. Ben. Health & Acc. Ass'n, 24 Tenn. App. 600 | 302+277 | We have stated and we repeat that we cannot conceive of any basis upon which the case can or ought to be retained in the lower court for future orders. The decree must be construed as relating to conditions obtaining upon the day of the filing of the original bill. There is nothing of peculiarly equitable cognizance involved in this case. Every issue and every defense raised could have been presented and made available in a suit at law. Hence, the absence of any basis upon which the cause can or should be retained in the lower court for future orders. The complainant had and has a right of action for each and every installment maturing after the day of the bringing of his action; and this is true as respects the entire life of the policy. There is no principle upon which complainant can rely that with respect to future installments the decree in his favor is res judicata. We observe, however, that the decree, if and when the appellate courts affirm that the policy was a valid and binding contract, and that complainant committed no fraud in procuring it, and that he did not breach any of the warranties impressed therein, is or will become conclusive; and that with respect to future demands by him for accruing installments appellee cannot again raise the questions of fraud, misrepresentation or breach of warranty. But this is the utmost extent to which the doctrine of res judicata may be carried. The decree of the Chancellor awarding complainant $779.50, estimated to be the total of the accumulated installments, will be affirmed, together with a decree for costs incurred in the lower Court; but with regard to the installments accruing between the commencement of the action and the entering of the decree complainant is met with two fundamental and insuperable procedural barriers. One of these is that suits are to be tried with reference to and upon conditions obtaining at the time the action is commenced. "The rights of the parties are to be determined as they were | Suits are to be tried with reference to conditions obtaining at time the action is commenced, and subsequent events cannot be considered unless presented by supplemental pleading. | Are suits to be tried with reference to conditions obtaining at the time the action is commenced? | Action - Memo # 795 - C KBM.docx | ROSS-003289921-ROSS-003289922 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14319 | Adams v. California Mut. Bldg. & Loan Ass'n, 18 Cal. 2d 487 | 13+63 | The actions here involved are not barred by laches or the running of the statute of limitations. There is uncontradicted evidence in the record that the office of the defendant Building and Loan Commissioner continuously indicated and represented, verbally and in writing, that the decision in the Martin case, which was first instituted and in which pursuant to agreement with him the issues were so framed as to cover the several types of investment here involved, should be determinative of the rights of all persons or groups similarly situated; and that it was in reliance on such representations that these suits were not earlier instituted. Throughout that litigation, as the commissioner paid liquidating dividends to investment certificate holders, he would set aside a proportionate amount to be paid to all "shareholders' should they be classed in that litigation as creditors entitled to parity with investment certificate holders. Under all of the circumstances, the commissioner is estopped to plead laches or the statute of limitations. It is well settled that a person by his conduct may be estopped to rely upon these defenses. Rapp v. Rapp, 218 Cal. 505, 509, 24 P.2d 161; Calistoga Nat. Bank v. Calistoga Vineyard Co., 7 Cal.App.2d 65, 72, 46 P.2d 246; 16 Cal.Jur. 575; 130 A.L.R. 8. Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense. Rapp v. Rapp, supra; Miles v. Bank of America N. T. & S. Ass'n, 17 Cal.App.2d 389, 398, 62 P.2d 177. These principles have been applied to hold a defendant estopped to plead that statute where he represented that he would be bound by the outcome of a pending suit. Missouri, K. & T. Ry. Co. v. Pratt, 73 Kan. 210, 85 P. 141, 9 Ann.Cas. 751; Daniel v. Edgecombe County, 74 N.C. 494; 130 A.L.R. 8, 60. Plaintiffs' actions here were seasonably instituted upon discovery of the commissioner's change of attitude as regards the effect of the Martin litigation upon the rights of | Where delay in commencing action is induced by defendant's conduct, the delay cannot be availed of by defendant as a defense. | "Where delay in commencing an action is induced by a defendant's conduct, can the delay be availed of by a defendant as a defense?" | Action - Memo # 796 - C UG.docx | LEGALEASE-00018026-LEGALEASE-00018027 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |
| 14320 | Goldblatt v. City of Chicago, 30 Ill. App. 2d 211 | 13+65 | The plaintiff filed suit in this case on October 21, 1959. On January 22, 1960, the Supreme Court held that the ordinances as applied to the property in question were valid. Consequently, the Circuit Court's judgment of March 31, 1960, was proper as a case is determined on the law as it stands when the judgment is rendered and not when the suit was brought. Cooley's Constitutional Limitations, 6th ed., Ch. XI, p. 469. The effect of the Supreme Court's ruling was that the property was subject to these ordinances even at the time of the conveyance of the property to the plaintiff, since the judgment reversing the lower court in Bulk Petroleum, supra, had a retroactive operation. 5B C.J.S. Appeal & Error " 1950, p. 511. This court is bound to follow the Supreme Court's decision that the ordinances prohibiting the location of the storage tanks on the property in question are valid ordinances and that the owner of the property does not have any right of non-compliance with them. The rule is well established that "when the supreme judicial tribunal of the State has declared what the law is on any point, all other courts are bound to conform to its decision when the same point comes again in litigation. 14 I.L.P. " 81, p. 216. Agricultural Transp. Ass'n v. Carpentier, 2 Ill.2d 19, 27, 116 N.E.2d 863. | A case is determined on law as it stands when judgment is rendered and not when suit was brought. | Is a case determined by the law as it stands when judgment is rendered and not when the suit was brought? | 006151.docx | LEGALEASE-00128512-LEGALEASE-00128513 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14321 | Poole v. Rourke, 779 F. Supp. 1546 | 34+2 | Not only did the Air Force fail to follow its own policy of carefully considering whether to discharge plaintiff or retain him with rehabilitation and probation, but it also flouted the controlling Department of Defense regulation favoring rehabilitation and probation. Regulations instituting the military drug and alcohol abuse program and regulations governing administrative separations were both promulgated by the Department of Defense; the regulations by their terms apply to all branches of the military. See 32 C.F.R. "" 41.2 and 62.2 (1991). Department of Defense regulations control when they conflict with regulations promulgated by the Air Force. Mem. and Order at 20 (Feb. 5, 1991); see Casey v. United States, 8 Cl.Ct. 234, 239 (1985); Simmons v. Brown, 497 F.Supp. 173, 178 (D.Md.1980). | Department of Defense regulations control when they conflict with regulations promulgated by Air Force. | Do Department of Defense regulations control when they conflict with regulations promulgated by the Air Force? | Armed Forces - Memo 45 - RK.docx | ROSS-003312599-ROSS-003312600 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14322 | Silverthorne v. Laird, 460 F.2d 1175 | 34+2 | We are aware of the general principle that once the Army promulgates regulations, it is bound to follow them. See Pitcher v. Laird, 5 Cir. 1970, 421 F.2d 1272 (conscientious objector case). In the context of the conscientious objector regulation, AR 625-20, it has been repeatedly recognized that the Army cannot apply its rules in an arbitrary manner and that when it does so the courts have power to review. E. g., Helwick, supra; Pitcher, supra. The conscientious objector provisions were promulgated for the benefit of the soldier. The soldier has the right to request a discharge pursuant to those regulations. | Once the Army promulgates regulations, it is bound to follow them, and when it applies them in an arbitrary manner, the courts have power to review. | Do the courts have power to review if the army applies regulations in an arbitrary manner? | 008357.docx | LEGALEASE-00128638-LEGALEASE-00128639 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 14323 | Iacono v. Lyons, 6 S.W.3d 715 | 30+347(1) | A party has an absolute right to a nonsuit at the moment the party files a nonsuit. However, when a nonsuit is filed after a partial judgment has been signed, the judgment does not become final until the trial court signs either an order granting the nonsuit or a final judgment explicitly memorializing the nonsuit. See Farmer v. Ben E. Keith Co., 907 S.W.2d 495, 496 (Tex.1995) (partial summary judgment did not become final when plaintiff filed supplemental petition omitting other claim; trial court was required to sign a final judgment); Harris County Appraisal Dist. v. Wittig, 881 S.W.2d 193, 194 (Tex.App."Houston [1st Dist.] 1994, orig. proceeding) (plaintiff's nonsuit did not become effective when filed); see Tex.R. Civ. P. 329b; Tex.R.App. P. 26.1. Because the trial court did not sign either an order granting the nonsuit or a judgment memorializing the nonsuit, the partial summary judgment is not final. We have no jurisdiction to hear an appeal from a judgment that is not final, unless there is specific statutory authority permitting an appeal before final judgment. See Tex. Civ. Prac. & Rem.Code " 51.012. | When a nonsuit is filed after a partial judgment has been signed, the judgment does not become final for appeal until the trial court signs either an order granting the nonsuit or a final judgment explicitly memorializing the nonsuit. Vernon's Ann.Texas Rules Civ.Proc., Rule 329b; Rules App.Proc., Rule 26.1. | Does a party have an absolute right to file a nonsuit? | 038792.docx | LEGALEASE-00128275-LEGALEASE-00128277 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14324 | Luster v. Luster, 128 Conn. App. 259 | 307A+501 | "The right of a plaintiff to withdraw his action before a hearing on the merits, as allowed by ... " 52"80, is absolute and unconditional. Under [the] law, the effect of a withdrawal, so far as the pendency of the action is concerned, is strictly analogous to that presented after the rendition of a final judgment or the erasure of the case from the docket.... Daigneault v. Consolidated Controls Corp./Eaton Corp., 89 Conn.App. 712, 714, 875 A.2d 46, cert. denied, 276 Conn. 913, 888 A.2d 83 (2005), cert. denied, 546 U.S. 1217, 126 S.Ct. 1434, 164 L.Ed.2d 137 (2006). The court unless [the action] is restored to the docket cannot proceed with it further.... Lusas v. St. Patrick's Roman Catholic Church Corp., [123 Conn. 166, 170, 193 A. 204 (1937) ]." (Internal quotation marks omitted.) Travelers Property Casualty Co. v. Twine, 120 Conn.App. 823, 826"27, 993 A.2d 470 (2010). | The right of a plaintiff to withdraw his action before a hearing on the merits is absolute and unconditional. C.G.S.A. S 52-80. | Is the right of a plaintiff to withdraw his action before a hearing on the merits absolute and unconditional? | 038832.docx | LEGALEASE-00128293-LEGALEASE-00128294 | Order, SA | 0.86 | 1 | 0 | 0 | 1 | |
| 14325 | Ethicon Endo-Surgery v. Gillies, 343 S.W.3d 205 | 307A+501 | As noted above, appellee informed the trial court that she had dropped her manufacturing, and thus, assembly defect claims. Appellee also non-suited her design defect claim during a jury recess when her counsel stated, "[P]laintiffs going to nonsuit its design defect claim." The right to a non-suit has a long and well-established tradition in Texas jurisprudence. Rule 162 provides that a non-suit may be taken until all the evidence has been presented. See Tex.R. Civ. P. 162. To take a non-suit the party can file either a written motion to dismiss or make an oral announcement of the non-suit in open court. Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). The movant may choose to take a non-suit as to some claims and parties without non-suiting the rest of the claims or parties. See Tex.R. Civ. P. 162, 163. See also Cook v. Nacogdoches Anesthesia Grp. LLP, 167 S.W.3d 476, 482 (Tex.App.-Tyler 2005, no pet.). The party requesting a non-suit has an absolute right to a non-suit at the moment the motion is filed. Greenberg, 640 S.W.2d at 872; McGowen v. Huang,120 S.W.3d 452, 461 (Tex.App.-Texarkana 2003, pet. denied). The granting of a non-suit is merely ministerial and gives the trial court no discretion. Greenberg, 640 S.W.2d at 872; McGowen, 120 S.W.3d at 462. | The party requesting a non-suit has an absolute right to a non-suit at the moment the motion is filed. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does the party requesting a non-suit have an absolute right to a non-suit at the moment the motion is filed? | Pretrial Procedure - Memo # 950 - C - SK.docx | ROSS-003285261-ROSS-003285262 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 14326 | Temple v. Mary Washington Hosp., 288 Va. 134 | 307A+501 | The right to take a nonsuit is a powerful tactical weapon in the hands of a plaintiff. See INOVA Health Care Servs. v. Kebaish, 284 Va. 336, 344, 732 S.E.2d 703, 707 (2012) (citation omitted). Temple chose to exercise her right to take a voluntary nonsuit. However, once she did so, it was as if the 2010 action had never been filed, as a nonsuit "leaves the situation as if the suit had never been filed." Winchester Homes Inc. v. Osmose Wood Preserving, Inc., 37 F.3d 1053, 1058 (4th Cir.1994)(applying Code " 8.01"380). For any aspect of the 2010 action to be incorporated into the 2012 action, an order had to explicitly permit it. | The right to take a nonsuit is a powerful tactical weapon in the hands of a plaintiff. West's V.C.A. S 8.01-380. | Is the right to take a nonsuit a powerful tactical weapon in the hands of a plaintiff? | Pretrial Procedure - Memo # 960 - C - TJ.docx | ROSS-003330727-ROSS-003330728 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 14327 | Winchester Homes v. Osmose Wood Preserving, 37 F.3d 1053 | 307A+517.1 | What remains to be considered is the effect Winchester's nonsuit has on the state court's prior rulings, such as the dismissal with prejudice of the claims based on Winchester's standing in its own right for tort, warranty, fraud, and violation of the Virginia Consumer Protection Act. In Virginia, a party may take a nonsuit within the statutory limitations of Va.Code " 8.01-380. Section 8.01-380(A) provides, in relevant part: A party shall not be allowed to suffer a nonsuit as to any cause of action or claim, or any other party to the proceeding, unless he does so before ... the action has been submitted to the court for decision. An action is defined in " 8.01-2 as "all civil proceedings whether at law, in equity, or statutory in nature and whether in circuit courts or district court." However, "cause of action" is defined in Virginia as "a set of operative facts which, under the substantive law, may give rise to a right of action." See Roller v. Basic Construction Co., 238 Va. 321, 384 S.E.2d 323, 326 (1989). Therefore, a party may nonsuit either a cause of action, a claim, or a party, and the nonsuit... does not operate as a bar to a subsequent suit between the same parties on the same cause of action. Payne v. Buena Vista Extract Co., 124 Va. 296, 98 S.E. 34 (1919). The only effect of a nonsuit is to put an end to the pending litigation without prejudice to either party. Cf. Thomas Gemmell, Inc. v. Svea Fire & Life Ins. Co., 166 Va. 95, 184 S.E. 457 (1936) (later suit in State court); Popp v. Archbell, 203 F.2d 287 (4th Cir.1953) (later suit in federal court.) | Under Virginia law, party may nonsuit either cause of action, claim, or party, and nonsuit does not operate as bar to subsequent suit between same parties on same cause of action. | "Can a party nonsuit a cause of action, a claim, or a party?" | Pretrial Procedure - Memo # 971 - C - KBM.docx | ROSS-003285270-ROSS-003285272 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14328 | Iacono v. Lyons, 6 S.W.3d 715 | 30+347(1) | A party has an absolute right to a nonsuit at the moment the party files a nonsuit. However, when a nonsuit is filed after a partial judgment has been signed, the judgment does not become final until the trial court signs either an order granting the nonsuit or a final judgment explicitly memorializing the nonsuit. See Farmer v. Ben E. Keith Co., 907 S.W.2d 495, 496 (Tex.1995) (partial summary judgment did not become final when plaintiff filed supplemental petition omitting other claim; trial court was required to sign a final judgment); Harris County Appraisal Dist. v. Wittig, 881 S.W.2d 193, 194 (Tex.App."Houston [1st Dist.] 1994, orig. proceeding) (plaintiff's nonsuit did not become effective when filed); see Tex.R. Civ. P. 329b; Tex.R.App. P. 26.1. Because the trial court did not sign either an order granting the nonsuit or a judgment memorializing the nonsuit, the partial summary judgment is not final. We have no jurisdiction to hear an appeal from a judgment that is not final, unless there is specific statutory authority permitting an appeal before final judgment. See Tex. Civ. Prac. & Rem.Code " 51.012. | When a nonsuit is filed after a partial judgment has been signed, the judgment does not become final for appeal until the trial court signs either an order granting the nonsuit or a final judgment explicitly memorializing the nonsuit. Vernon's Ann.Texas Rules Civ.Proc., Rule 329b; Rules App.Proc., Rule 26.1. | Does the party requesting a nonsuit have an absolute right to a nonsuit at the moment the motion is filed with the clerk? | 039254.docx | LEGALEASE-00128381-LEGALEASE-00128382 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14329 | Palmer v. State, 140 So. 3d 448 | 211+1658 | Section 97"3"95(1)(c) states that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with ... [a] child at least fourteen ... but under sixteen ... years of age, if the person is thirty-six ... or more months older than the child[.]" Section 97"3"95(1)(c) does not require that the sexual penetration occur without the child's consent. Accordingly, an indictment that alleges sexual battery under section 97"3"95(1)(c) is not required to claim that the sexual penetration occurred without the victim's consent. See Bryant v. State, 879 So.2d 530, 531 (" 4) (Miss.Ct.App.2004). It follows that the sexual-battery charges in the indictment against Palmer were not fatally defective. There is no merit to this issue. | An indictment that alleges sexual battery of a child is not required to claim that the sexual penetration occurred without the victim's consent. West's A.M.C. S 97-3-95(1)(c). | Does penetration without consent constitute sexual battery? | Sex Offence - Memo 59 - SB.docx | LEGALEASE-00018343-LEGALEASE-00018344 | Order, SA, Sub | 0.77 | 1 | 0 | 1 | 1 | 1 |
| 14330 | Stanford v. Aulick, 124 Ariz. 487 | 366+7(1) | Although the Stanfords remained primarily liable to Citicorp, as between the parties to this action appellee was primarily responsible on the debt and the Stanfords were liable as sureties. Smith v. Mangels, 73 Ariz. 203, 240 P.2d 168 (1952). A surety is entitled to be subrogated to the position of the mortgagee when he is compelled to pay the debt. Best Fertilizers of Arizona, Inc. v. Burns, 116 Ariz. 492, 570 P.2d 179 (1977); Smith v. Mangels, supra. Since credit life insurance is treated as collateral security, payment of the debt with credit life insurance is payment by the insured debtor. La-Rey, Inc. v. Kowalski, 433 S.W.2d 530 (Tex.Civ.App.1968); Hatley v. Johnston, 265 N.C. 73, 143 S.W.2d 260 (1965). | A surety is entitled to be subrogated to position of mortgagee when he is compelled to pay debt. | Is a surety entitled to be subrogated to the position of a mortgagee when he is compelled to pay debt? | Subrogation - Memo # 1072 - C - KG.docx | ROSS-003298821-ROSS-003298822 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14331 | In re Rebel Rents, 307 B.R. 171 | 366+38 | Like other equitable remedies, a right to subrogation may be lost by waiver, laches, or estoppel. See Jack v. Wong Shee, 33 Cal.App.2d 402, 92 P.2d 449, 454 (1939) (holding that party waived right to subrogation by asserting an inconsistent legal theory, and thereby depriving other creditors of opportunity to protect their interests). See generally, 73 Am.Jur.2d Subrogation " 131"133, at 684"85 (1974). There are four basic elements to the defense of equitable estoppel: (a) the party to be estopped must know the facts; (b) the party to be estopped must either intend that its conduct will be acted upon or act in a manner that the party asserting estoppel has a right to believe it is so intended; (c) the party asserting estoppel must be ignorant of the true facts; and (d) the party asserting estoppel must rely on the conduct to its injury. Associated Vintage Group, 283 B.R. at 567; Kelley v. South Bay Bank (In re Kelley), 199 B.R. 698, 705 (9th Cir. BAP 1996); Heritage Hotel Ltd. P'ship I v. Valley Bank of Nev. (In re Heritage Hotel P'ship I), 160 B.R. 374, 378 (9th Cir. BAP 1993). | Like other equitable remedies, right to subrogation may be lost by waiver, laches, or estoppel. | "Can a right to subrogation be lost by waiver, laches, or estoppel?" | 043279.docx | LEGALEASE-00128479-LEGALEASE-00128482 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14332 | McGlohon v. Ogden, 251 Ga. 625 | 217+3519(1) | Under Ga.L.1974, pp. 113, 119, at Section 5(d), the plaintiff's insurer "shall be subrogated to the rights of the ... [plaintiff] to the extent of the benefits provided...." This provision as to subrogation is self-executing; i.e., no agreement between the insured and insurer is required to effectuate the right of subrogation. Because the rights of the plaintiff were subrogated to his insurance company on all of his optional no fault losses under Ga.L.1974, pp. 113, 119 at Section 5(d), any claim he had against the tortfeasor for these same losses was extinguished. See Harrell v. Carlton, 141 Ga.App. 41, 42, 232 S.E.2d 384 (1977); Bryant v. Atlanta Gas Light Co., 149 Ga.App. 126, 127, 253 S.E.2d 807 (1979). Therefore, the Court of Appeals erred in affirming the trial court's grant of partial summary judgment to the plaintiff and its denial of the defendant's motion. | Statutory provision that insurer of plaintiff seeking recovery from tort-feasor shall be subrogated to the rights of plaintiff to extent of benefits provided is self-executing; i.e., no agreement between insured and insurer is required to effectuate the right of subrogation. O.C.G.A. S 33-34-3(d). | Is subrogation self-executing? | Subrogation - Memo # 1092 - C - VP.docx | ROSS-003286817-ROSS-003286819 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 14333 | W. Am. Ins. Co. v. Cates, 865 N.E.2d 1016 | 217+3522 | Of course, the question before the trial court was whether West Am was entitled to assert its subrogation claims as a matter of law. But, the right to subrogation may be waived or the insurer may be estopped from asserting it due to the insurer's unreasonable delay in satisfying its obligation under the policy. Farm Bureau Mutual Ins. Co. v. Dercach, 450 N.E.2d 537, 542 (Ind.Ct.App. Here, without specific findings or conclusions, the trial court denied West Am's motion for summary judgment. We will affirm the denial of summary judgment if it is sustainable on any legal theory or basis found in the designated materials. We affirm the trial court's denial, because we believe that West Am's actions toward their insured raises a material question of fact, precluding summary judgment. | The insurer's right to subrogation may be waived, or the insurer may be estopped from asserting it, due to the insurer's unreasonable delay in satisfying its obligation under the policy. | Can the right to subrogation be waived? | Subrogation - Memo # 1110 - C - ES.docx | ROSS-003300237-ROSS-003300238 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14334 | Webber v. Frye, 199 Iowa 448 | 366+35 | It is unnecessary to enter at length into a discussion of the equitable doctrine of subrogation. Appellee concedes that, unless appellant knew of its right to a mechanic's lien, and negligently failed to have the same satisfied at the time the loan was made, or waived its right to subrogation by paying and causing the prior mortgages to be released without an intention upon his part to preserve the lien thereof for his own use and benefit, he is entitled to subrogation as claimed. With this concession on the part of appellee, the question resolves itself into one of fact. One Lambert inspected the land for appellant before the mortgage was executed, and reported the facts as to the improvements placed upon the land by Frye. He said nothing, however, in his report, which was in writing, about a mechanic's lien. Later, Lellenberg wrote appellant, in answer to an inquiry from him, that the material for the barn was all paid for, and that the material for the house was nearly all paid for, and that no mechanic's lien could be filed. It thus appears that appellant knew that improvements had been placed on the farm by Frye; that it was subject to a mechanic's lien for any balance due to materialmen; and that some part thereof was not paid. Notwithstanding this knowledge, and without further inquiry or demand that the material be paid for in full, he paid the prior mortgages, and caused the same to be released of record. Under such circumstances it cannot be said that he did not at the time intend that the lien of the mortgages should be satisfied, or that he intended that the same should be retained for his use and benefit. The most favorable construction that can be placed upon the evidence is that he was misled as to the amount due for material, and the probability of a mechanic's lien being filed by the latter from Lellenberg, who received one-third of the commission for securing the loan, and elected to take his chances as to that matter. The lien of the mortgages was retained only if | Right of subrogation may be lost by inexcusable negligence on part of person asserting it. | Can the right of subrogation be lost by inexcusable negligence on part of a person asserting it? | Subrogation - Memo # 1116 - C - ES.docx | ROSS-003327303-ROSS-003327304 | SA, Sub | 0.96 | 0 | 0 | 1 | 1 | |
| 14335 | In re Berg, 387 B.R. 524 | 366+35 | The general rule with recorded liens, including mortgages, is that "[a] lien that is [recorded] first in time ... has priority and is entitled to prior satisfaction of the property it binds." Aames Capital Corp. v. Interstate Bank of Oak Forest, 315 Ill.App.3d 700, 248 Ill.Dec. 565, 734 N.E.2d 493, 496 (2000) (additional citations omitted). The doctrine of subrogation is an exception to the "first in time, first in right" rule by which a party that involuntarily pays a debt of another succeeds to the rights of the satisfied party with respect to the debt paid. Union Planters Bank, N.A. v. FT Mortgage Co., 341 Ill.App.3d 921, 276 Ill.Dec. 465, 794 N.E.2d 360, 364 (2003) (citing Aames, 248 Ill.Dec. 565, 734 N.E.2d at 497). There are two types of subrogation: contractual or conventional subrogation, and common law or equitable subrogation. Conventional subrogation occurs when there is an express agreement between the parties to the effect that the party paying the debts on behalf of the third party will be able to assert the rights of the original creditor, and thereby be entitled to priority over an intervening lienor. Aames, 248 Ill.Dec. 565, 734 N.E.2d at 498. Conventional subrogation "will be applied even where the record shows a release of the satisfied encumbrance. | Under Illinois law, conventional subrogation will be applied even when the record shows a release of the satisfied encumbrance. | Can conventional subrogation be applied even if there is a release of the satisfied encumbrance? | 043408.docx | LEGALEASE-00128310-LEGALEASE-00128311 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 14336 | Minnesota Min. & Mfg. Co. v. Plymouth Rubber Co., 178 F. Supp. 591 | 13+65 | The law is well settled that the existence of a cause of action is to be tested as of the time of the filing of the complaint and no recovery may be had if no cause be shown to exist at that time (Bonner v. Elizabeth Arden, Inc., 2 Cir., 1949, 177 F.2d 703; Porter v. Senderowitz, 3 Cir., 1947,158 F.2d 435; Hull v. Brandywine Fibre Products Co., D.C.Del.1954, 121 F.Supp. 108; American Bonding & Trust Co. v. Gibson County, 6 Cir., 1906,145 F. 871; Chicago Grain Door Co. v. Chicago, B. & Q.R. Co., C.C.Ill.1905,137 F. 101; Bowles v. Senderowitz, D.C.Pa.1946, 65 F.Supp. 548). This same principle is applicable to suits for patent infringement, and if no act of infringement occurred prior to the filing of the complaint, it is fatally defective (Westinghouse Air Brake Co. v. Christensen Engineering Co., C.C.N.Y.1903, 121 F. 558; Lambert v. Dempster Bros., Inc., D.C.Tenn.1940,34 F.Supp. 610; Humane Bit Co. v. Barnet, C.C.N.J.1902, 117 F. 316; Slessinger v. Buckingham, D.C.Cal.1883, 17 F. 454; Rohm & Haas Co. v. Permutit Co., D.C.Del.1953, 114 F.Supp. 846; See also Andrew Jergens Co. v. Bonded Products Corporation, D.C.N.Y.1926, 13 F.2d 417) and cannot be cured by infringement occurring subsequent to the filing of the complaint (Rohm & Haas Co. v. Permutit Co., D.C.Del.1953, 114 F.Supp. 846). In the last cited case it was said at page 848:"The general rule of law is that a plaintiff's right to recovery depends upon his right at the inception of the suit and the non-existence of a cause of action when the suit is brought is a fatal defect which cannot be cured by the accrual of a cause of action pending suit." | The existence of a cause of action is to be tested as of time of filing of complaint and no recovery may be had if no cause be shown to exist at that time. | Is a cause of action to be tested as of the time of filing of a complaint? | Action - Memo # 778 - C VP.docx | LEGALEASE-00018523-LEGALEASE-00018524 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14337 | Jewett v. Commonwealth Bond Corp., 241 A.D. 131 | 13+65 | However, even were the relationship between the parties to be deemed that ofprincipal and agent based on a contract in which the defendant had acquired an interest which could not ordinarily be interfered with by this court, in so far as the non objecting depositors are concerned, nevertheless, an agent is in a highly fiduciary relationship to the principal and can always be asked to account for its acts. A court of equity will determine the measure of relief from the situation adduced at the trial. If the fiduciary is shown to have been unfaithful to its duties, the court has full power to remove it for the protection of all the cestuis. Randall v. Peerless Motor Car Co., 212 Mass. 352, 375, 99 N. E. 221; Mechem, Op. Cit. " 607. | Court of equity will determine measure of relief from situation adduced at trial. | Will a court of equity determine the measure of relief from the situation adduced at trial? | Action - Memo # 833 - C VA.docx | ROSS-003286459-ROSS-003286460 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14338 | Int'l Talent Grp. v. Copyright Mgmt., 629 F. Supp. 587 | 25T+137 | An arbitration clause covering claims "relating to" a contract is broader than a clause covering claims "arising out of" a contract. See Mobil Oil Indonesia, Inc. v. Asamera Oil (Indonesia) Ltd., 487 F.Supp. 63, 65 (S.D.N.Y.1980); see also Acevedo Maldonado v. PPG Industries, 514 F.2d 614, 616 (1st Cir.1975). The court must determine whether the "hardware contract" dispute relates to the subject matter of the "software contract." | Arbitration clause covering claims "relating to" contract is broader than cause covering claims "arising out of" contract. | Is an arbitration clause covering claims relating to a contract broader than a clause covering claims arising out of a contract? | Alternative Dispute Resolution - Memo 475 - RK.docx | ROSS-003300424-ROSS-003300425 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 14339 | Summit Bank v. The Creative Cook, 730 S.W.2d 343 | 8.30E+273 | An agreement to extend the time of payment of or renew a negotiable instrument constitutes a new contract between the parties. Priest v. First Mortgage Co. of Texas, Inc., 659 S.W.2d 869 (Tex.App."San Antonio 1983, writ ref'dn.r.e.). The execution of a renewal note is generally treated as a new contract, evidencing the existing debt. at 871; Braugh v. Corpus Christi Bank & Trust, 605 S.W.2d 691, 696 (Tex.Civ.App."Corpus Christi 1980, writ ref'dn.r.e.). A guarantor's obligation should not be extended by implication beyond the written terms of the agreement, and any ambiguity should be construed in favor of the guarantor. Thompson v. Preston State Bank, 575 S.W.2d 312 (Tex.Civ.App."Dallas 1978, writ ref'dn.r.e.); Commerce Savings Association of Brazoria County v. GGE Management Co., 539 S.W.2d 71, 78 (Tex.Civ.App."Houston [1st Dist.] 1976), modified and aff'd, 543 S.W.2d 862 (Tex.1976). Any ambiguity in a guaranty agreement should be construed most strongly against the party who selected the language. Thompson at 315; Monesson v. Champion International Corp., 546 S.W.2d 631 (Tex.Civ.App."Tyler 1976, writ ref'dn.r.e.). We hold that the guaranty agreement of December 14, 1984, is a clear and unambiguous act of the Harrises on behalf of Creative, and that the same is a new complete guaranty agreement in itself. Under the circumstances of the case, the Harrises have no individual liability. | Agreement to extend time of payment of a negotiable instrument or execution of a renewal note constitutes a new contract between the parties. | Does the renewal of a note require execution of a new contract? | 009347.docx | LEGALEASE-00128999-LEGALEASE-00129000 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14340 | In re Cmty. Sch. Dist. of Malvern, Mills Cty., 250 Iowa 1240 | 1.41E+13 | The text in 16 C.J.S. Constitutional Law " 107, pp. 493 and 494, states: 'Matters that have been held within the scope of the legislative power, as distinguished from the powers of the judicial and executive departments are the establishment and reorganization of school districts,.' | Establishment and reorganization of school districts is within the scope of the legislative power. | Is establishment and reorganization of school districts within the scope of the legislative power? | Education - Memo # 62 - C - SU.docx | ROSS-003300244-ROSS-003300245 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 14341 | Howell v. Harvey, 5 Ark. 270 | 289+924 | unreasonable time. This is the doctrine of the civil law, and the code of Louisiana, and Pothier lays down the same rule and inculcates it in the same manner; for he says that no partner has a right to prefer his own particular interest to that of the firm, or to take away its profits or to appropriate them to his own private advantage, and it is upon this principle that, while a partner is engaged in business, courts of equity will restrain him from like pursuits. He has no right to divert from the firm the diligence, skill or capital that rightfully belongs to it. The French civil law expresses the whole law upon the subject in the following brief terms: "Dissolution of partnerships, says Domat, by the will of one of the parties, applies only to partnerships the duration of which is unlimited and is effected by a renunciation notified to all the partners; provided such renunciation be bona fide, and not made at an improper time." Renunciation is held not to be made bona fide where one partner renounces in order to appropriate to himself the profits which the partners are entitled to receive. It is said to be made at an improper time, when the things are no longer entire that were of consequence to partnership, and which should have deferred the dissolution. A partnership for a limited period of time cannot be dissolved at the mere pleasure of one of the parties, within the time prescribed. On the contrary, it only can be dissolved from just motives and for a reasonable cause. There is an implied understanding that the partnership shall continue to the expiration of the term, unless where one partner fails in his engagements, or any habitual infirmity renders him unfit to carry on the business, or where the renunciation is for the benefit of the partnership and not for the advantage of the dissolving partner. The principle here stated is extracted from all the authorities by Justice Story, and fully approved by him in his complete and admirable treatise upon | To enable one partner to dissolve partnership at will, the renunciation must be made in good faith and not at an unreasonable time. | Does the power to dissolve a partnership at will have to be exercised in good faith? | 022010.docx | LEGALEASE-00128935-LEGALEASE-00128937 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 14342 | McCollum v. McCollum, 67 S.W.2d 1055 | 289+605 | This injunction, in effect, attempts to prevent the dissolution of a partnership. Under the law a partnership calling for the personal services of the partners can always be dissolved, even though it constitutes a breach of contract. The right to dissolve may not exist but the power to dissolve always exists. If the dissolution constitutes a breach of the contract, there may be a suit for damages for the breach, but the power to dissolve nevertheless exists. Karrick v. Hannaman, 168 U. S. 328, 18 S. Ct. 135, 42 L. Ed. 484. | Where dissolution of partnership constitutes breach of contract, there may be suit for damages, but power to dissolve partnership cannot be denied. | "If the dissolution of a partnership constitutes a breach of contract, can there be a suit for damages for the breach?" | Partnership - Memo 229 - RK.docx | ROSS-003287337-ROSS-003287338 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14343 | Williams v. Obstfeld, 314 F.3d 1270 | 226H+3 | Under Florida law, a joint venture is a form of partnership, and both types of entities are generally governed by the same rules of law. Kislak v. Kreedian, 95 So.2d 510, 514 (Fla.1957); see also Pinnacle Port Cmty. Ass'n., Inc. v. Orenstein, 872 F.2d 1536, 1539 n. 3 (11th Cir.1989) ("[I]n general, the law governing partnerships is applicable to joint ventures."). A partnership is created only where "both parties contribute to the labor or capital of the enterprise, have a mutuality of interest in both profits and losses, and agree to share in the assets and liabilities of the business." Dreyfuss v. Dreyfuss, 701 So.2d 437, 439 (Fla.Dist.Ct.App.1997). A joint venture, like a partnership, may be created by express or implied contract, and the contractual relationship must consist of the following elements: (1) a common purpose; (2) a joint proprietary interest in the subject matter; (3) the right to share profits and duty to share losses, and (4) joint control or right of control. Pinnacle Port, 872 F.2d at 1539; Kislak, 95 So.2d at 515. Florida courts have interpreted these requirements to preclude a finding that a partnership or joint venture exists where any factor is missing. See Kislak, 95 So.2d at 517; Dreyfuss, 701 So.2d at 439; Austin v. Duval County Sch. Bd., 657 So.2d 945, 948 (Fla.Dist.Ct.App.1995). | Under Florida law, a joint venture is a form of partnership, and both types of entities are generally governed by the same rules of law. | Are joint ventures and partnerships governed by the same law? | 022022.docx | LEGALEASE-00128948-LEGALEASE-00128949 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14344 | Schroeder v. Schroeder, 223 Neb. 684 | 307A+501 | The Mathers court, in the course of ruling that the trial court improperly denied dismissal of certain counterclaims pending after the plaintiff's petition had been adjudicated, noted that collateral consequences, such as subjection to further litigation, do not interfere with one's right of dismissal. The Mathers court further observed, however, that dismissal may properly be conditional where it would deprive or endanger a right accrued to theadverse party in the very cause sought to be dismissed. In the absence of such, the right to dismiss is absolute. See, also, Horton v. State, 63 Neb. 34, 88 N.W. 146 (1901); Blue River Power Co. v. Hronik, 116 Neb. 405, 217 N.W. 604 (1928). | Collateral consequences, such as subjection to further litigation, do not interfere with one's right of dismissal. | "Do collateral consequences, such as subjection to further litigation, interfere with one's right of dismissal?" | Pretrial Proceedure - Memo # 1144 - C - TJ.docx | ROSS-003288397-ROSS-003288398 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14345 | Papania v. Aetna Cas. & Sur. Co., 291 So. 2d 908 | 366+35 | This argument is no more than an extension of defendant's first theory, that it and United Gas were liable in solido. A necessary prerequisite to an impairment of subrogation rights is the establishment of responsibility for damages on the part of United Gas. Since defendant has failed to prove an obligation on the part of United Gas, there is no merit to this argument. | A necessary prerequisite to an impairment of subrogation rights is establishment of responsibility for damages. | Is the establishment of responsibility for damages a necessary prerequisite to an impairment of subrogation rights? | Subrogation - Memo # 1247 - C - AP.docx | ROSS-003301152-ROSS-003301153 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 14346 | Combined Commc'ns Corp. v. Pub. Serv. Co. of Colorado, 865 P.2d 893 | 401+5.1 | However, a suit to obtain a money judgment against a utility is not one that affects its property or operations within the meaning of C.R.C.P. 98(a), and the mandatory venue requirements of that rule do not apply to such suits. Cripple Creek v. Johns, 177 Colo. 443, 494 P.2d 823 (1972). | Suit to obtain money judgment against utility is not one that affects its property or operations for purposes of venue rule. Rules Civ.Proc., Rule 98(a). | Do suits to obtain a money judgement against a utility come under the mandatory venue statute? | Venue - Memo 109 - RK.docx | ROSS-003302016-ROSS-003302017 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 14347 | Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15 | 25T+138 | The purpose of the FAA is "to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395,404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). It follows inexorably from that statement that the principle of resolving doubts in favor of arbitration is "subject to constraints." Coady v. Ashcraft & Gerel, 223 F.3d 1, 9 (1st Cir.2000). One important constraint is that the federal policy favoring arbitration does not totally displace ordinary rules of contract interpretation. Thus, numerous courts have employed the tenet of contra proferentem in construing ambiguities in arbitration agreements against the drafters. See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62-63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); Security Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369, 374 (6th Cir.1999), cert. denied, 528 U.S. 1181, 120 S.Ct. 1220, 145 L.Ed.2d 1120 (2000). We think that this is a proper use of contra proferentem. | Tenet of contra proferentem may be employed in construing ambiguities in arbitration agreements against drafters. | Do courts use the tenet of contra proferentem in construing ambiguities in arbitration agreements? | Alternative Dispute Resolution - Memo 493 - JK.docx | ROSS-003300441-ROSS-003300442 | Order, SA | 0.89 | 1 | 0 | 0 | 1 | |
| 14348 | State Roads Comm'n of Md. v. Smith, 224 Md. 537 | 30+9 | The appellee states, and we agree, that a reservation of points or questions for consideration by the Court in banc is a substitute for an appeal to the Court of Appeals. Costigin v. Bond, 65 Md. 122, 3 A. 285. The appellee further asserts that such a proceeding "concludes the case as regards the party taking the appeal as effectively as a decision of this Court." That is true with regard to the decision of the Court in banc as against the party at whose instance the points were reserved. Constitution, Art. IV, Sec. 22; Shueey v. Stoner, 47 Md. 167; Board of Medical Examiners v. Steward, 207 Md. 108, 113 A.2d 426. See also Tyler v. Board of Supervisors of Elections of Baltimore County, 213 Md. 37, 131 A.2d 247. But this Section contains no such terms or provisions with regard to the effect of the initiation of such proceedings if abandoned and not carried through to decision. | A reservation of points or questions for consideration by court in banc is substitute for appeal to Court of Appeals. | Is a reservation of points or questions for consideration by a court in banc a substitute for appeal to the Court of Appeals? | 008179.docx | LEGALEASE-00129061-LEGALEASE-00129062 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14349 | Buckner v. Greenwood, 6 Ark. 200 | 83E+417 | It was an ancient rule of the common law that no sanction would be given to give effect to the transfer of any possibility, right, or any other chose in action (which was defined to be a right not reduced to possession) to a stranger. Chitty on Bills. But courts of law, anxiously attending to the interests of the community in support of commercial transactions, established the law merchant. The transferrability of promissory notes and bills of exchange, by delivery or assignment, depends alone upon the law merchant for its support, by which a bill or note made payable to bearer may pass by delivery, and vest in the holder the legal interest, and authorize him to maintain an action in his own name upon it.But this innovation upon the ancient rules of the common law never obtained in favor of sealed instruments, nor was the law merchant ever extended in its application to such instruments. | A bill or note payable to bearer passes by delivery, so as to vest the legal interest in the holder, and authorize him to sue upon it in his own name. | Is the legal interest in a promissory note transferable? | Bills and Notes - Memo 162 - RK.docx | LEGALEASE-00018950-LEGALEASE-00018951 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14350 | Singh v. Uber Techs. Inc., 235 F. Supp. 3d 656 | 25T+140 | Even though threshold issues concerning the arbitration agreement are presumptively reserved for the Court, parties may agree to have these issues decided by an arbitrator through the inclusion of a delegation clause within the arbitration agreement. Rent-A-- Center, W., Inc. v. Jackson, 561 U.S. 63, 68-69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."') (citations omitted). These delegation clauses are "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id. at 70, 130 S.Ct. 2772. [(Accordingly, the delegation provision is severable from the underlying agreement to arbitrate, and if the plaintiff chooses to challenge the delegation provision, it must do so specifically. Id. at 72, 130 S.Ct. 2772. The aforementioned presumption of arbitrability, however, does not apply to the arbitration agreement's delegation clause. Indeed, the Supreme Court has cautioned that " '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.' " Id. at 79, 130 S.Ct. 2772 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). | A delegation provision in an arbitration agreement is severable from the underlying agreement to arbitrate, and if a plaintiff chooses to challenge the delegation provision, it must do so specifically. | Can a delegation provision be severed from the rest of the arbitration agreement? | Alternative Dispute Resolution - Memo 500 - RK.docx | ROSS-003285570-ROSS-003285572 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 14351 | Harris v. Ferris, 18 Fla. 81 | 30+14(1) | The correct rule, in our judgment, is that where an appeal is dismissed for irregularity, or for want of prosecution, the merits of the cause not having been determined by the Appellate Court, a writ of error or a second appeal may be allowed, if not prosecuted in bad faith, within the time limited by law. | The dismissal of an appeal or writ of error for want of prosecution does not bar a second proceeding. | Does the dismissal of an appeal or writ of error for want of prosecution bar a second proceeding? | 008236.docx | LEGALEASE-00129434-LEGALEASE-00129435 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 14352 | In re Hanley's Estate, 23 Cal. 2d 120 | 30+21 | In the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal (Bryant v. Superior Court, 16 Cal.App.2d 556, 61 P.2d 438), even to relieve against mistake, inadvertence, accident, or misfortune. People v. Lewis, 219 Cal. 410, 27 P.2d 73; Williams v. Long, 130 Cal. 58, 62 P. 264, 80 Am.St.Rep. 68; Winchester v. General Cab Co., 8 Cal.App.2d 360, 47 P.2d 1116; Estes v. Chimes, 40 Cal.App.2d 41, 104 P.2d 74. Nor can jurisdiction be conferred upon the appellate court by the consent or stipulation of the parties, estoppel, or waiver. Stipulation: Land v. Johnston, 156 Cal. 253, 104 P. 449; Langan v. Langan, 89 Cal. 186, 26 P. 764. Estoppel: In re Estate of Pearsons, 119 Cal. 27, 50 P. 929; but cf. Moyle v. Landers, 78 Cal. 99, 20 P. 241, 12 Am.St.Rep. 22, decided when service of notice of appeal was required under Code Civ.Proc., sec. 940, prior to 1921. Waiver: Aspegren & Co., Inc., v. Sherwood, Swan & Co., 199 Cal. 532, 250 P. 400; In re Estate of Brewer, supra; In re Estate of Murphy, supra. For a full discussion of these rules, see comment, 30 Cal.L.Rev. 433, 448. If it appears that the appeal was not taken within the 60-day period, the court has no discretion but must dismiss the appeal of its own motion even if no objection is made. In re Estate of Brewer, supra, 156 Cal. page 90, 103 P. 486; Langan v. Langan, supra, 89 Cal. page 195, 26 P. 764; In re Estate of Pearsons, supra, 119 Cal. page 29, 50 P. 929; In re Estate of Murphy, supra, 36 Cal.App.2d page 655, 98 P.2d 523; Smith v. Questa, 58 Cal.App.1, 207 P. 1036. | Jurisdiction cannot be conferred upon appellate courts by consent or stipulation of parties, estoppel or waiver. Code Civ.Proc. S 939; Probate Code, S 1233. | "Can Appellate jurisdiction be conferred by agreement, waiver, or estoppel? " | Appeal and error - Memo 69 - RK.docx | LEGALEASE-00019045-LEGALEASE-00019046 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 14353 | In re Mason's Estate, 194 Misc. 308 | 8.30E+76 | A check is a mere order for the payment of money. The authority of the payee as agent of the maker is revoked by the death of the maker prior to the time the check is cashed, Glennan v. Rochester Trust & Safe Deposit Co., 209 N.Y. 12, 102 N.E. 537,52 L.R.A.,N.S., 302, Ann.Cas.1915A, 441; Curry v. Powers, 70 N.Y. 212, 26 Am.Rep. 577; Harris v. Clark, 3 N.Y. 93, 51 Am.Dec. 352; Matter of Mead, 90 Misc. 263, 154 N.Y.S. 667, affirmed 173 App.Div. 982, 159 N.Y.S. 1128, affirmed 221 N.Y. 645, 117 N.E. 1076. Consequently, no claims against the estate can be based on a check itself. However, the claim of which the check is evidence may still be enforceable against the estate. Matter of Ludlam's Estate, 158 Misc. 283, 285 N.Y.S. 597; Matter of Pierce's Will, Sur., 56 N.Y.S.2d 778; Matter of Ehler's Estate, 132 Misc. 910, 231 N.Y.S. 16. The execution and delivery of a check if unexplained raises the presumption that it was given in payment of a debt. Nay v. Curley, 113 N.Y. 575, 21 N.E. 698; Koehler v. Alder, 78 N.Y. 287. The rule that the validity of a contract is governed by the law of the place where the contract is made is applicable to a check. Swift & Co. v. Bankers Trust Co., 280 N.Y. 135, 19 N.E.2d 992 . | A check is a mere order for payment of money and authority of payee as agent of maker is revoked by death of maker prior to time check is cashed. | Can a holder present his claim against the maker's estate after the maker's death? | Bills and Notes - Memo 164 - RK.docx | LEGALEASE-00019080-LEGALEASE-00019081 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14354 | In re James B., 109 Cal. App. 4th 862 | 67+9(0.5) | The common law element of breaking has never been an essential element of statutory burglary in California. (People v. Allen, supra, 86 Cal.App.4th at p. 914, 103 Cal.Rptr.2d 626.) Burglary from a vehicle is the lone exception, requiring that the doors of a vehicle be locked. (Pen.Code, " 459.) Yet, "neither forced entry in the usual sense of the word nor use of burglar tools are elements of automobile burglary." (In re Charles G. (1979) 95 Cal.App.3d 62, 67, 156 Cal.Rptr. 832.) The key element of auto burglary is that the doors be locked. In In re Charles G., the court considered the vehicle locked based upon testimony that the owner's habit was to lock his car, even though there were no signs of forced entry. (Id. at pp. 65, 66"68, 156 Cal.Rptr. 832.) In Burns, on the other hand, there was evidence of forced entry (broken glass), but no evidence that the car had been locked; therefore there was no burglary. (People v. Burns, supra, 114 Cal.App.2d at p. 570, 250 P.2d 619.) | Neither forced entry in the usual sense of the word nor use of burglar tools are elements of automobile burglary. West's Ann.Cal.Penal Code S 459. | Is forced entry an element of auto burglary? | 013218.docx | LEGALEASE-00129639-LEGALEASE-00129640 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14355 | People v. McDonald, 4 Ill. App. 3d 62 | 67+2 | Defendant contends that the trial court committed reversible error in permitting the state's written bill of particulars to be filed. At the time defendant moved to dismiss Count III of the indictment he was orally advised that this count contemplated "attempt murder" as the felony under this burglary count. Subsequently the state filed its bill of particulars in which the felony was described as "theft." Interestingly defendant contends in substance that all thefts are not felonies, and therefore, a theft of less than $150 were intended, it would be a misdemeanor rather than a felony, and the burglary charge would fail. As the Supreme Court said in People v. Dogoda, 9 Ill.2d 198, 137 N.E.2d 386 (1956) "This argument, basically Ejusdem generis, is not persuasive." The courts of this state have repeatedly held that it is not necessary to prove that Anything was taken. The gist of the offense of burglary is not the amount involved but is the unlawful entry of the premises of another with intent to commit a felony or theft within. Paraphrasing what the Supreme Court stated in People v. Peck, 29 Ill.2d 480, at 484, 194 N.E.2d 245 (1963) we believe that one who unlawfully enters a building to commit theft is not concerned with the niceties of value of what he could find to steal. Counsel's argument in this regard is without merit. It seems to us obvious that the legislature contemplated and laid to rest just such an argument as this when they included intent to commit a "theft" as an alternative to intent to commit a felony as an element of the offense of burglary. As the court said in People v. Peck, supra, at 484, 194 N.E.2d at 247:"What the statute is concerned with is a generalized intent to commit a theft or felony within the building unlawfully entered. The indictment in this case charges the offense in the language of the statute, and the statute describes the offense with sufficient clarity. . . . To require the allegation of a more particularized intent would be unrealistic . . . | Gist of offense of burglary is not amount involved but is unlawful entry of premises of another with intent to commit a felony or a theft within. | What is the gist of burglary? | Burglary - Memo 58 - RK.docx | ROSS-003287444-ROSS-003287446 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 14356 | Crooks v. Maynard, 112 Idaho 312 | 79+6 | Further, art. 18, " 6 provides that the clerk of the district court cannot appoint deputies and assistants unless authorized to do so by the county commissioners. At first blush, this provision appears to give the county commissioners more control than they actually have. The county commissioners' power, at least with respect to the clerk of the district court, is limited and cannot be exercised to override every hiring decision. Upon a showing to the proper tribunal that a deputy or clerical assistant is needed, the county commissioners must authorize the appointment. Dukes v. Board of County Commissioners, 17 Idaho 736, 107 P. 491 (1910) (commissioners were ordered to authorize an appointment upon a district court's finding that the business of the office of clerk of the district court needed adeputy). | Constitutional provision, which prohibits district court clerk from appointing deputies and assistants unless authorized by county commissioners, does not give commissioners power to override every hiring decision with respect to clerk of district court and does not permit commissioners to refuse hiring of needed deputy or clerical assistant. Const. Art. 18, § 6. | Can clerks of the district court appoint deputy clerks? | Clerks of court - Memo 105 - RK.docx | ROSS-003300720-ROSS-003300721 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 14357 | McIntyre v. Seminole Cty. Sch. Bd., 779 So. 2d 639 | 141E+560 | A teacher or contractual employee who can only be terminated for cause has a contractual property interest in his job. See Sublett v. District Sch. Bd. of Sumter County, 617 So.2d 374, 377 (Fla. 5th DCA 1993) (citing McCracken v. City of Chinook, 652 F.Supp. 1300 (D.Mont.1987)). Moreover, under Florida law, a school board's decision to terminate an employee is one affecting the employee's substantial interests; therefore, the employee is entitled to a formal hearing under section 120.57(1) if material issues of fact are in dispute. See Sublett v. District Sch. Bd. of Sumter County, 617 So.2d 374, 377 (Fla. 5th DCA 1993) (citing French v. School Bd. of Polk County, 568 So.2d 497 (Fla. 2d DCA 1990); Taylor v. School Bd. of Seminole County, 538 So.2d 150 (Fla. 5th DCA 1989)); see also Weiss v. Department of Bus. and Prof. Reg., 677 So.2d 98, 99 (Fla. 5th DCA 1996). However, the person who is substantially affected must affirmatively request a formal hearing; otherwise, he has waived that right. See City of Punta Gorda v. Public Emp. Relations Com'n, 358 So.2d 81, 82-83 (Fla. 1st DCA 1978); see also Fla. Stat. " 120.57 (1999). For an agency to establish that a person has waived his right to an administrative hearing, the agency must demonstrate that the person has been advised of the action to be taken and the basis thereof, the right to an administrative hearing, a clear point of entry into the administrative process, and a deadline by which a hearing must be requested. See City of St. Cloud v. Department of Envtl. Reg., 490 So.2d 1356, 1358 (Fla. 5th DCA 1986) (internal citations omitted). | A teacher or contractual employee who can only be terminated for cause has a contractual property interest in his job. | Does a teacher or a contractual employee who can only be terminated for cause have a contractual property interest in his job? | Education - Memo # 86 - C- NA.docx | ROSS-003285882-ROSS-003285883 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14358 | Neusted v. Skernswell, 69 Cal. App. 2d 361 | 302+8(11) | The attempted allegation of ownership is furthermore qualified by the allegations of the succeeding paragraph. It appears therefrom that the full legal title stands in the defendant Skernswell who is alleged to hold the property "as Trust for plaintiff and defendant." This allegation is equally subject to the vice heretofore noticed in the preceding paragraph in that it fails to allege the proportionate interests of the parties. The allegation that defendant holds the property "as Trust" is a naked conclusion of the pleader. The allegation immediately following that "plaintiff furnished the money with which to buy the same and performed the work and labor to put the said property in good and rentable condition," is not sufficient to support the pleaded conclusion of a trust. To create a resulting trust the purchase price must either be paid by the cestui que trust before the title is conveyed or he must assume an obligation to pay it before the conveyance. Woodside v. Hewel, 109 Cal. 481, 485, 42 P. 152; Viner v. Untrecht, 26 Cal.2d 261, 158 P.2d 3, 8; 2 Restatement, Trusts, sec. 457. The complaint fails to allege either of these necessary facts. | Allegation in complaint seeking to establish a trust in real property and for partition and sale thereof that defendant holds the property "as trust" was a naked conclusion of the pleader. | "Is an allegation that the defendant holds the property as Trust, a naked conclusion of the pleader?" | 023116.docx | LEGALEASE-00129317-LEGALEASE-00129318 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14359 | Zumbrun v. Univ. of S. California, 25 Cal. App. 3d 1 | 302+214(5) | C. Fraud, negligence, and conspiracy. We omit a detailed statement of the allegations pointing to an attempt to aver a right to recovery sounding in fraud, negligence, and conspiracy, since the vulnerability of the complaint on these three theories goes to the allegations pertaining to damages. As previously set forth, plaintiff alleges that the failure of defendant Miller to complete "Sociology 200" as originally announced deprived her of her education and caused her mental and financial strain and distress resulting in the waste of $518 for tuition and other fees, present income of $5,000, and potential loss of an estimated $60,000. (We omit consideration of claims for punitive damages, as establishment of compensatory damages is a prerequisite to any punitive damages.) There is no allegation which informs defendants of the causal connection between the averred delicts of the defendants and these damages claimed. Allegations of damages without allegations of fact to support them are but conclusions of law, which are not admitted by demurrer.(D'Andrea v. Pringle (1966) 243 Cal.App.2d 689, 696, 52 Cal.Rptr. 606.) In fraud, the pleading must show a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated. (See, e.g., Lesperance v. North American Aviation, Inc. (1963) 217 Cal.App.2d 336, 345, 31 Cal.Rptr. 873; Legg v. Ford (1960) 185 Cal.App.2d 534, 542, 8 Cal.Rptr. 392; Maynes v. Angeles Mesa Land Co. (1938) 10 Cal.2d 587, 589"590, 76 P.2d 109.) We are not told how the failure to complete "Sociology 200" as originally scheduled prevented plaintiff from consummating the purposes for which she enrolled as a student. We were informed at the time of oral argument that the reason for her not enrolling in an advanced class was due to too many students seeking enrollment in the particular course, a hazard and experience not unfamiliar to any student who has studied at a large institution. | Allegations of damages without allegations of fact to support them are but conclusions of law, which are not admitted by demurrer. | "Are allegations of damages without allegations of fact to support them, admitted by demurrer?" | 023118.docx | LEGALEASE-00129338-LEGALEASE-00129339 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14360 | Aison v. Hudson River Black River Regulating Dist., 279 A.D.2d 754 | 307A+501 | We affirm, as "[i]t is axiomatic that the authority to grant or deny a motion for discontinuance rests within the sound discretion of the trial court" (Matter of Bronsky-Graff Orthodontics, 270 A.D.2d 792, 793, 705 N.Y.S.2d 711; see, Christenson v. Gutman, 249 A.D.2d 805, 806, 671 N.Y.S.2d 835). "Factors militating against discontinuance include prejudice to an opposing party as well as the imposition of one or more counterclaims" (Matter of Bronsky- Graff Orthodontics, supra, at 793, 705 N.Y.S.2d 711 [citation omitted]; see, Ruppert v. Ruppert, 192 A.D.2d 925, 926, 597 N.Y.S.2d 196). In addition, a party should not be permitted to discontinue an action for the purpose of circumventing an order of the court (see, Hirschfeld v. Stahl, 242 A.D.2d 214, 215, 661 N.Y.S.2d 959; NBN Broadcasting v. Sheridan Broadcasting Networks, 240 A.D.2d 319, 659 N.Y.S.2d 262). | Party should not be permitted to discontinue an action for the purpose of circumventing an order of the court. McKinney's CPLR 3217. | Can a party be permitted to discontinue an action for the purpose of circumventing an order of the court? | Pre-trial Procedure - Memo # 1045 - C - KG.docx | ROSS-003286016-ROSS-003286017 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14361 | DuBray v. Warner Bros. Records, 236 A.D.2d 312 | 307A+501 | Plaintiffs correctly state that courts are generally reluctant to compel a party to litigate and, in the exercise of discretion, will grant a motion for discontinuance absent compelling circumstances or particular prejudice to defendants (Tucker v. Tucker, 55 N.Y.2d 378, 449 N.Y.S.2d 683, 434 N.E.2d 1050; see also, Matter of Baby Boy C., 84 N.Y.2d 91, 99, 615 N.Y.S.2d 318, 638 N.E.2d 963). It is also true, however, that a motion for discontinuance should not be used to circumvent an order of the court (Schultz v. Kobus, 15 A.D.2d 382, 384, 224 N.Y.S.2d 372), or to enable plaintiffs to "do indirectly what they are not permitted to do directly" (Katz v. Austin, 271 App.Div. 217, 218, 62 N.Y.S.2d 912, lv denied 271 App.Div. 773, 64 N.Y.S.2d 926; but see, De Laurentis v. Bercowitz, 27 A.D.2d 869, 277 N.Y.S.2d 728). This is precisely what plaintiffs appear to be doing in their admitted attempt to revive their claims under New York State law in the courts of another State. The courts of New York State have determined that New York law does not apply and that South Dakota law does; plaintiffs seek a second chance to persuade a South Dakota court to reach precisely the opposite conclusion. | Motion for discontinuance should not be used to circumvent order of court or to enable plaintiffs to do indirectly what they are not permitted to do directly. | Can a party be permitted to discontinue an action for the purpose of circumventing an order of the court? | 024893.docx | LEGALEASE-00129291-LEGALEASE-00129292 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14362 | State ex rel. Butte-Los Angeles Mining Co. v. Dist. Court of Second Judicial Dist., 103 Mont. 140 | 307A+501 | Other provisions of 18 Corpus Juris, where it treats of the subject of dismissal and nonsuit, we think are quite pertinent to this controversy. In section 5, page 1148, volume 18, it is said: "Plaintiff had no absolute right at all times and under all circumstances to discontinue, dismiss, or take a nonsuit, but such right is often dependent upon the effect it has on the rights of defendant, or upon the application being made at the proper time. | Plaintiff has no absolute right at all times under all circumstances to discontinue, dismiss, or take a nonsuit. | "Do a plaintiff has an absolute right to discontinue, dismiss, or take a nonsuit?" | Pre-trial Procedure - Memo # 1053 - C - KG.docx | ROSS-003286022-ROSS-003286023 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 14363 | Cape Oil Co. v. Williams, 427 S.W.2d 122 | 307A+501 | We do not attach any significance to the trial court's letter to the District Clerk insofar as the question before us is concerned. The law seems to be settled that the plaintiff is entitled to take a non-suit as to one whose plea of privilege has been sustained, provided there has been no actual transfer of the case. [(The defendant cannot force a plaintiff to prosecute his cause of action or continue his litigation. 20 Tex.Jur.2d, page 184, Sec. 8; First Nat. Bank of Jacksonville v. Childs, 231 S.W. 807 (Tex.Civ.App., 1921, Austin, writ ref.); Cooper v. Colorado & S. Ry. Co., 298 S.W. 612 (Tex.Civ.App., Waco, n.w.h.). It is obvious there has been no actual transfer of this case as the court's order sustaining the plea of privilege was appealed from and is now before this court for review. | Defendant cannot force plaintiff to prosecute its cause of action or continue its litigation. | Can a defendant force a plaintiff to prosecute its cause of action or continue its litigation? | Pretrial Procedure - Memo # 1270 - C - PC.docx | ROSS-003300447-ROSS-003300448 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14364 | Fair Share Org. v. Kroger Co., 132 Ind. App. 160 | 307A+501 | The Acts of 1881 (Spec.Sess.), ch. 38, " 433, p. 240 (Burns' 1946 Replacement, " 2-901), provide: 'An action may be dismissed without prejudice. First. By the plaintiff, before the jury retires; or, when the trial as by the court, at any time before the finding of the court is announced.' See State ex rel. Allis Chalmers Mfg. Co. v. Boone C. Ct., 1949, 227 Ind. 327, 86 N.E.2d 74. When a motion to dismiss is filed by plaintiff at an appropriate time, the Court has no alternative but to dismiss the same. Stamper v. Link, 1946, 117 Ind.App. 212, 66 N.E.2d 326, 69 N.E.2d 600, 71 N.E.2d 128. | When a motion to dismiss is filed by plaintiff at an appropriate time, the court has no alternative but to dismiss. Burns' Ann.St. S 2-901, subd. 1. | "When a motion to dismiss is filed by a plaintiff at an appropriate time, does the court have any alternatives?" | Pretrial Procedure - Memo # 992 - C - NC.docx | ROSS-003287650-ROSS-003287651 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14365 | George v. Ospalik, 299 Ill. App. 3d 888 | 307A+501 | Section 2"1009(a) of the Code of Civil Procedure provides that a plaintiff may move for voluntary dismissal at any time before trial or hearing begins. 735 ILCS 5/2"1009(a) (West 1996). However, the right to a voluntary dismissal under section 2"1009 is not absolute. Our supreme court has held there is no right to voluntary dismissal under section 2"1009 when that section conflicts with supreme court rules. Catlett v. Novak, 116 Ill.2d 63, 106 Ill.Dec. 786, 506 N.E.2d 586 (1987). | There is no right under statute to voluntarily dismiss action where statute allowing such dismissals conflicts with Supreme Court rules. S.H.A. 735 ILCS 5/2-1009(a). | Is there a right under statute to voluntarily dismiss an action where a statute allowing such dismissals conflicts with Supreme Court rules? | 041214.docx | LEGALEASE-00129392-LEGALEASE-00129393 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 14366 | Ewing v. Bd. of Educ. of Cty. of Summers, 202 W. Va. 228 | 307A+501 | Less certain, however, is the precise standard of review of a circuit court's denial of a party's motion to dismiss. Generally, a motion to dismiss should be granted only where " "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." " Murphy v. Smallridge, 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59, 65 (1984)) (additional citation omitted). For this reason, motions to dismiss are viewed with disfavor, and we counsel lower courts to rarely grant such motions. John W. Lodge Distrib. Co., Inc. v. Texaco, Inc., 161 W.Va. 603, 605"06, 245 S.E.2d 157, 159 (1978). Once a court has granted a motion to dismiss, though, we employ a de novo standard of review. See, e.g., Syl. pt. 1, Lipscomb v. Tucker County Comm'n, 197 W.Va. 84, 475 S.E.2d 84 (1996) ("Appellate review of a circuit court's order granting a motion to dismiss an appeal from a decision of a county commission is de novo."); Syl. pt. 2, State ex rel. McGraw v. Scott Runyan Pontiac"Buick, Inc., 194 W.Va. 770, 461 S.E.2d 516 (1995) ( "Appellate review of a circuit court's order granting a motion to dismiss a complaint is de novo."). | Motions to dismiss are viewed with disfavor, and lower courts should rarely grant such motions. | "Are motions to dismiss viewed with disfavor, and should lower courts grant such motions only rarely?" | 041216.docx | LEGALEASE-00129440-LEGALEASE-00129441 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14367 | Harris v. Billings, 16 Cal. App. 4th 1396 | 307A+509 | The right of a plaintiff to voluntarily dismiss an action before commencement of trial is not absolute. Code of Civil Procedure section 581 recognizes exceptions to the right; other limitations have evolved through the courts' construction of the term "commencement of trial." These exceptions generally arise where the action has proceeded to a determinative adjudication, or to a decision that is tantamount to an adjudication. | Right of plaintiff to voluntarily dismiss action before commencement of trial is not absolute; exceptions to right to dismiss arise generally where action has proceeded to determinative adjudication, or to decision that is tantamount to an adjudication. West's Ann.Cal.C.C.P. SS 581, 581(b), (b)(1, 2). | Is a right of a plaintiff to voluntarily dismiss action before commencement of trial not absolute? | Pretrial Proceedure - Memo # 1136 - C - TJ.docx | ROSS-003315324-ROSS-003315325 | Condensed, SA | 0.3 | 0 | 1 | 0 | 1 | |
| 14368 | Bd. of Trustees of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Markets, 622 F.3d 1335 | 25T+141 | We have explained that, as a matter of federal law, "arbitration is a matter of consent, not coercion." World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc., 517 F.3d 1240, 1244 (11th Cir.2008) (internal quotation marks omitted). "Accordingly, a party ordinarily will not be compelled to arbitrate unless that party has entered into an agreement to do so." Id. (internal quotation marks omitted). "[C]ommon law principles of contract and agency law allow a signatory ... to bind a non-signatory ... to an arbitration agreement ...." Id. (internal quotation marks omitted). This rule means that the Board, which has not signed an arbitration clause, may be compelled to arbitrate if a signatory executed the arbitration agreement as its agent. Id. at 1247. | Party that has not signed an arbitration agreement may be compelled to arbitrate, if signatory executed arbitration agreement as its agent. | Can a party who has not signed an arbitration agreement be compelled to arbitrate if a signatory executes an arbitration agreement as agent of that party? | Alternative Dispute Resolution - Memo 506 - RK.docx | ROSS-003300653-ROSS-003300654 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14369 | Hamilton Life Ins. Co. of New York v. Republic Nat. Life Ins. Co., 408 F.2d 606 | 25T+141 | The District Court also correctly noted that there is no impediment to enforcing an agreement to arbitrate as between two parties in a dispute involving a multi-party agreement. Wilko v. Swan, 201 F.2d 439, 445 (2 Cir.), rev'd on other grounds, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Lumbermens Mutual Casualty Co. v. Borden, 268 F.Supp. 303 (S.D.N.Y.1967). Even assuming arguendo that a portion of the business ceded to Republic was to be retroceded to a third party, Financial Security, pursuant to an oral agreement, this would not affect the enforceability of the agreement between Hamilton and Republic to arbitrate, as between themselves, all disputes arising in connection with the business ceded by Hamilton under the reinsurance agreement, within the scope of 9 U.S.C. " 2 and " 4. | There is no impediment to enforcing agreement to arbitrate as between two parties in dispute involving multiparty agreement. 9 U.S.C.A. SS 2, 4. | Is there any impediment to enforcing an agreement to arbitrate between two parties in a dispute involving a multi-party agreement? | Alternative Dispute Resolution - Memo 516 - RK.docx | ROSS-003287003-ROSS-003287004 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 14370 | Marino v. Evans, 87 A.D.2d 623 | 79+6 | Respondents are allowed great discretion in their determination with respect to promotional qualifications, and if any "fair argument" can be made in support of the determination, the courts may not interfere, even if they disagree (see Matter of Wirzberger v. Watson, 305 N.Y. 507, 114 N.E.2d 15; Matter of Canava v. Keyes, 62 A.D.2d 997, 403 N.Y.S.2d 306). Here, respondents determined that the position of Senior Court Clerk is not so technical as to require that those titles considered to be in the "direct line of promotion" be limited to petitioners and those similarly situated, and that expansion of eligibility would allow more meaningful opportunities generally for career advancement. Petitioners are not protected against changes in promotional eligibility requirements (see Matter of Pon v. McCoy, 30 N.Y.2d 902, 335 N.Y.S.2d 563, 287 N.E.2d 270). Neither can it be said that the determination to change the promotional unit from Nassau County alone to the Tenth Judicial District, thereby including Suffolk County, was arbitrary or unreasonable. | Determination by chief administrator of courts of office of court administration that position of senior court clerk was not so technical as to require that those considered to be in direct line of promotion be limited to petitioners and those similarly situated supported decision to offer promotion to position to others and was not an abuse of discretion. | Are changes to promotional opportunities allowed? | 013384.docx | LEGALEASE-00130191-LEGALEASE-00130192 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 14371 | Bolin v. San Bernardino City Unified Sch. Dist., 155 Cal. App. 3d 759 | 316P+222 | The expectation of being assigned to a particular school on the basis of seniority is not a protected right. (Rutley v. Belmont Elementary Sch. Dist. (1973) 31 Cal.App.3d 702, 708, 107 Cal.Rptr. 671.) Seniority is merely an economic right which can be bargained away. (Tangren v. Wackenhut Services (9th Cir.1981) 658 F.2d 705, 707.) The collective bargaining agreement in this case made seniority one of several factors to be considered in determining involuntary transfers. The district properly considered plaintiff's seniority. | Teacher's expectation of being assigned to particular school on basis of seniority is not protected right. | Is the expectation of being assigned to a particular school on the basis of seniority a protected right? | Education - Memo # 93 - C- NA.docx | ROSS-003287308-ROSS-003287309 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14372 | McGuinness v. Allison Realty Co., 46 Misc. 8 | 302+8(13) | The plaintiff has brought this action to recover damages for personal injuries received by him through the collapsing of the building in the borough of Manhattan, city of New York, known as the "Hotel Darlington," while the same was in the course of construction. The defendants are the owners of the property, the builders engaged in the construction of the building, also the city of New York and Isaac A. Hopper, who at the time of the accident was superintendent of buildings in the borough of Manhattan. The city and Hopper have separately demurred to the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action against them. The plaintiff, in various forms of allegation in the complaint, sets forth and defines the duties and obligations of the city and of the defendant Hopper, as superintendent of buildings, in respect to the construction of the building in question, and alleges, in general terms, that the city and Hopper have violated those duties in such manner as to have become guilty of negligence causing, or contributing to the cause of, the plaintiff's injuries. As the duties of the city and of the superintendent of buildings are created and defined by statute, the allegations of the complaint setting forth those duties must be regarded as conclusions of law, not as allegations of fact. Rauh v. Board of Commissioners, 66 How. Prac. 368; Walsh v. Trustees of N. Y. & Bklyn. Bridge, 96 N. Y. 438. By section 405 of the city charter (Laws 1901, p. 177, c. 466) the bureau of building is created as a department in the office of the president of each borough of the city. The superintendent of buildings is appointed by the president of the borough, and is removable by him whenever, in his judgment, the public interest shall require. By section 406 of the charter the superintendent has general charge of the administration of all rules, regulations, and ordinances relating to the construction of buildings, | Where plaintiff sued for injuries caused by the falling of a building while under construction, and joined the superintendent of buildings of the city of New York and the city as defendants, allegations of the complaint setting out the duties of such superintendent and the city-they being created by statute-are not allegations of fact, but conclusions of law. | "Are allegations as to duties created by statute, conclusions of law?" | 023136.docx | LEGALEASE-00129727-LEGALEASE-00129729 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 14373 | Irving v. Rees, 146 A.D. 703 | 302+214(5) | The appellant claims that, having alleged in the complaint that she is the next of kin of the decedent, the defendants by the demurrer have admitted that allegation. But that allegation is a mere conclusion of law, and she has set forth the facts which negative said conclusion. Conclusions of law are not admitted by a demurrer. | Allegation that plaintiff was next of kin of decedent, in the face of facts set forth showing the contrary, is a conclusion of law, not admitted by demurrer. | "Is an allegation that one is the next of kin of the decedent, a mere legal conclusion?" | 023147.docx | LEGALEASE-00129789-LEGALEASE-00129790 | Condensed, SA | 0.52 | 0 | 1 | 0 | 1 | |
| 14374 | Cadlo v. Owens-Illinois, 125 Cal. App. 4th 513 | 184+41 | Each element in a cause of action for fraud or negligent misrepresentation must be factually and specifically alleged. (Small, supra, 30 Cal.4th at p. 184, 132 Cal.Rptr.2d 490, 65 P.3d 1255.) The policy of liberal construction of pleadings is not generally invoked to sustain a misrepresentation pleading defective in any material respect. (Ibid.) Thus, the mere assertion of "reliance" is insufficient. The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance. (Ibid.) | Each element in a cause of action for fraud or negligent misrepresentation must be factually and specifically alleged, as the policy of liberal construction of pleadings is not generally invoked to sustain a misrepresentation pleading defective in any material respect; thus, the mere assertion of reliance without specific factual allegations is insufficient. | Should a cause of action for negligent misrepresentation be specifically alleged? | Pleading - Memo 244 - RMM.docx | ROSS-003287388-ROSS-003287389 | SA, Sub | 0.34 | 0 | 0 | 1 | 1 | |
| 14375 | Senseley v. First Nat. Life Ins. Co., 205 La. 61 | 307A+501 | From a mere reading of the Act, it is apparent that it applies only to the voluntary dismissals of suits and reconventional demands. A plaintiff in a suit has control of it and has the right to discontinue or dismiss it at any time except where the rights of the defendant are prejudiced. C.P., Article 491; St. Bernard Trappers' Ass'n v. Michel, 162 La. 366, 110 So. 617. Insofar as a reconventional demand is concerned, the defendant takes the position of plaintiff. Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869. However, if the dismissal of either of the demands, principal or in reconvention, would prejudice the rights of other parties to the suit, the suit could only be dismissed with the consent of the parties so prejudiced. In either event, the discontinuance or dismissal would be accomplished by the voluntary withdrawal of the suit or demand and not by operation of law. | A suit or reconventional demand may be dismissed on the voluntary motion of party maintaining such demand only with the consent of any parties to suit whose rights would be prejudiced by such dismissal. Code Prac. art. 491. | "Can a suit be dismissed if the dismissal of either of the demands, principal or in reconvention, would prejudice the rights of other parties to the suit?" | 026229.docx | LEGALEASE-00129813-LEGALEASE-00129814 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 14376 | Gullett v. McCormick, 421 S.W.2d 352 | 307A+742.1 | In view of the fact that we are not authorized in the instant case to consider the alleged error as a cause for reversal, it should suffice here to say that generally we do not approve the attendance of witnesses and the taking of testimony at a pretrial conference, nor do we believe that the pretrial conference should be used as a device to compel settlement of actions or give overemphasis to the matter of settlement. For an excellent discussion and evaluation of the pretrial conference as a procedural device under our present system of notice pleading accompanied by discovery procedure, see Rosenberg, The Pretrial Conference and Effective Justice, (Columbia University Press, 1964). | Attendance of witnesses and taking of testimony at pretrial conference is generally not approved. CR 16. | Is the attendance of witnesses and taking of testimony at pretrial conference generally approved? | Pretrial Procedure - Memo # 1409 - C - UG.docx | ROSS-003300515-ROSS-003300516 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14377 | Hasenauer v. Durbin, 216 Neb. 714 | 307A+750 | The purpose of a pretrial conference is to simplify the issues, to amend pleadings when necessary, and to avoid unnecessary proof of facts at trial. To that end litigants must adhere to the spirit of the procedure and are bound by the pretrial order to which no exception has been taken. See, Tober v. Hampton, 178 Neb. 858, 136 N.W.2d 194 (1965); Western Pipe & Supply, Inc. v. Heart Mountain Oil Co., Inc., 179 Neb. 858, 140 N.W.2d 813 (1966). The only issues emerging from the pretrial conference related to the effect of the March 20 agreement, the availability of specific performance, and the question of consideration for the March 20 agreement. Before their appeal to this court, Hasenauers and Corlisses have never raised any affirmative defense to the March 20 agreement or to the effect of that contract. Under the circumstances presented we will consider only the issues formulated at the pretrial conference and will not consider issues not presented to and disposed of by the trial court. "The rule is well settled that questions not presented or passed upon by the trial court will not be considered by this court on appeal." Guynan v. Guynan, 208 Neb. 775, 781, 305 N.W.2d 882, 886 (1981). See, also, Edquist v. Commercial Sav. & Loan Assn., 191 Neb. 618, 217 N.W.2d 82 (1974). | Purpose of pretrial conference is to simplify issues, to amend pleadings when necessary, and to avoid unnecessary proof of facts at trial; to that end, litigants must adhere to spirit of procedure and are bound by pretrial order to which no exception has been taken. | What is the purpose of a pretrial conference? | 026550.docx | LEGALEASE-00129850-LEGALEASE-00129851 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14378 | St. James Plaza v. Notey, 166 A.D.2d 439 | 307A+501 | We further find that the Supreme Court properly denied the appellants' cross motion pursuant to CPLR 3217(b) for leave to discontinue their fourth cause of action for a declaration that the Noteys' interest in the partnership was terminated and that the appellants did not owe the Noteys anything for their almost 70% interest in the partnership and corporation. Ordinarily, a party cannot be compelled to litigate and, absent special circumstances, leave to discontinue a cause of action should be granted. However, if the party opposing the motion can demonstrate prejudice if the discontinuance is granted, discontinuance must be denied (see, Tucker v. Tucker, 55 N.Y.2d 378, 449 N.Y.S.2d 683, 434 N.E.2d 1050; Gansburg v. Gansburg, 124 A.D.2d 701, 508 N.Y.S.2d 213; Shaffer v. Best Farms No. 3, 107 A.D.2d 745, 484 N.Y.S.2d 107; National Bank of North Amer. v. Brook Shopping Centers, 105 A.D.2d 734, 481 N.Y.S.2d 169). In the instant case, discontinuance would work prejudice upon the Noteys. | Leave to discontinue cause of action should, absent special circumstances, be granted. McKinney's CPLR 3217(b). | "Should leave to discontinue a cause of action absent special circumstances, be granted?" | 026598.docx | LEGALEASE-00129988-LEGALEASE-00129989 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 14379 | St. James Plaza v. Notey, 166 A.D.2d 439 | 307A+501 | We further find that the Supreme Court properly denied the appellants' cross motion pursuant to CPLR 3217(b) for leave to discontinue their fourth cause of action for a declaration that the Noteys' interest in the partnership was terminated and that the appellants did not owe the Noteys anything for their almost 70% interest in the partnership and corporation. Ordinarily, a party cannot be compelled to litigate and, absent special circumstances, leave to discontinue a cause of action should be granted. However, if the party opposing the motion can demonstrate prejudice if the discontinuance is granted, discontinuance must be denied (see, Tucker v. Tucker, 55 N.Y.2d 378, 449 N.Y.S.2d 683, 434 N.E.2d 1050; Gansburg v. Gansburg, 124 A.D.2d 701, 508 N.Y.S.2d 213; Shaffer v. Best Farms No. 3, 107 A.D.2d 745, 484 N.Y.S.2d 107; National Bank of North Amer. v. Brook Shopping Centers, 105 A.D.2d 734, 481 N.Y.S.2d 169). In the instant case, discontinuance would work prejudice upon the Noteys. | Leave to discontinue cause of action must be denied, where party opposing motion can demonstrate prejudice. McKinney's CPLR 3217(b). | "Must leave to discontinue a cause of action be denied, where a party opposing a motion can demonstrate prejudice?" | 026600.docx | LEGALEASE-00130006-LEGALEASE-00130007 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14380 | Johnson v. Toscano, 144 Conn. 582 | 307A+742.1 | We shall first consider the errors assigned in the denials of the plaintiffs motions for permission to file a substitute complaint. The plaintiff made no attempt to amend his pleadings prior to the pretrial hearing on December 3, 1953, nor did he thereafter until October 10, 1955. The substitute complaint then offered was apparently inspired by the report of the physical examination made by Dr. Silbermann on April 20, 1955, in preparation for his testimony as an expert witness in the pending trial. Our courts have pursuedaliberal policy in allowing amendments. General Statutes, " 7852; Practice Book, " 92; Stanley v. M. H. Rhodes, Inc., 140 Conn. 689, 692, 103 A.2d 143. The statute and the rule call for the exercise of the court's discretion, and the refusal to allow an amendment must rest upon some sound reason. The present action was begun by process returnable to the court in September, 1947. The pleadings were closed on October 10 of that year. A pretrial hearing was held on December 3, 1953, pursuant to " 144 of the Practice Book. This section as it then read is set forth in full in thefootnote. See Stanley v. City of Hartford, 140 Conn. 643, 645, 103 A.2d 147. The delay in reaching this stage of the proceedings cannot be attributed entirely to congestion in the court docket. The court could fairly assign a substantial portion of it to the failure of the plaintiff's counsel, upon whom the primary obligation to press for a disposition of his client's claim rested, to expedite the proceedings. Nevertheless, no amendment to the pleadings was offered or suggested at the pretrial hearing, when, under the spirit of the rule, counsel should be prepared to state in good faith that his case is in all respects ready for immediate trial. Any amendment of the pleadings, if needed or desired, should be suggested. If a motion is not formally made at the pretrial hearing, permission to amend should be sought promptly in accordance with proper procedure and, if the permission is granted, | In action for personal injuries, the preparation for pretrial should include an up-to-date medical appraisal of the plaintiff's injuries and extent of his recovery. | What should be included in the preparation for pretrial in an action for personal injuries? | Pretrial Procedure - Memo # 1628 - C - NS.docx | ROSS-003286254-ROSS-003286255 | SA, Sub | 0.95 | 0 | 0 | 1 | 1 | |
| 14381 | Phillips v. Monroe Auto Equip. Co., 251 Neb. 585 | 307A+44.1 | Substantive sanctions regarding discovery and other pretrialprocedural matters are designed to prevent a party who has failed to comply with discovery from profiting by such misconduct. See id. However, before the ultimate sanction of prohibiting a party from introducing otherwise admissible evidence is imposed in civil cases, the opposing party must file a motion requesting such a sanction with reasonable notice to all affected parties. See, e.g., Neb.Ct.R. of Discovery 37 (rev.1996). Such a sanction is not even considered in this state's civil courts unless all affected parties have received notice and an opportunity to be heard on the merits. In the instant case, there was no showing by Monroe that (1) it had not received a written report from the expert witnesses setting forth their respective opinions regarding causation, or (2) the experts' written reports were not disclosed on a timely basis. Rule 4D does not require such a showing before the compensation court may impose the sanction of prohibiting a witness' testimony based on a rule 4 objection by either party. | Substantive sanctions regarding discovery and other pretrial procedural matters are designed to prevent party who has failed to comply with discovery from profiting by such misconduct. | What are discovery and pretrial procedure designed to eliminate? | 026715.docx | LEGALEASE-00130093-LEGALEASE-00130094 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14382 | King v. Zimmerman, 266 Mont. 54 | 307A+743 | The purpose of pretrial orders is to prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order. Zimmerman, 854 P.2d at 342. In Zimmerman, under the unique facts present in that case, we held that permitting the introduction of a new factual matter which had never been raised in any of the pleadings, but rather was first raised during trial, would undermine the purposes pretrial orders are intended to serve. Here, however, after reviewing the pretrial order, we find the defendants' arguments without merit. The pretrial order adequately sets forth all of King's contentions as contained in the initial pleadings. Furthermore, no theories were advanced at trial which had not already been well established in the pleadings. There is no basis for the defendants to claim that they were "surprised" by the issues raised and had not been able to prepare for trial. | Purpose of pretrial orders is to prevent surprise, simplify issues, and permit counsel to prepare their case for trial on basis of pretrial orders. | What is the purpose of pre-trial orders and how does it help counsels? | 026738.docx | LEGALEASE-00130249-LEGALEASE-00130250 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14383 | Eisen v. Venulum Ltd., 244 F. Supp. 3d 324 | 25T+414 | Defendants' main argument is that it is the province of the arbitrator, and not the Court, to determine whether the arbitration clauses are valid or invalid. (Dkt. 13 at 5"10). Defendants rely on Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115 (2d Cir. 2003) for the proposition that under the International Chamber of Commerce ("ICC") arbitration rules "any question of arbitrability must be decided by the arbitral tribunal." (Dkt. 13 at 6). Shaw Group provides that if the parties reference the ICC rules of arbitration in an arbitration clause they have "evince[d] a clear and unmistakable agreement to arbitrate arbitrability," and the court is required to defer questions of arbitrability to the arbitrator. Shaw Group, 322 F.3d at 121. | District Court, rather than arbitrator, would determine enforceability of arbitration clauses in investment contracts involving interests in fine wines, even though contracts included requirement that all disputes under contracts be sent to arbitration, since there was no language in contracts expressly stating that arbitrability disputes would be resolved by arbitration, contracts stated that International Chamber of Commerce (ICC) rules would control any arbitration, ICC rule provided that arbitrator determined validity of arbitration agreement if party against which claim had been made challenged its validity, but investor, who was bringing claims against foreign corporation for violations of securities laws, was challenging validity of arbitration clauses. | Does reference to International Chamber of Commerce rules in an arbitration clause present a clear and unmistakable agreement to arbitrate arbitrability? | 007388.docx | LEGALEASE-00130869-LEGALEASE-00130870 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 14384 | Gregory v. Electro-Mech. Corp., 83 F.3d 382 | 25T+143 | The law is clear that tort claims and claims other than breach of contract are not automatically excluded from a contractual arbitration clause. Mitsubishi Motors v. Soler Chrysler"Plymouth, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (claims arising under the Sherman Act held arbitrable); Scherk v. Alberto"Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (fraudulent representation of status of trademark sold held arbitrable). Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted. Sweet Dreams Unlimited, Inc. v. Dial"A"Mattress Int'l, Ltd., 1 F.3d 639, 643 (7th Cir.1993) ("a party may not avoid a contractual arbitration clause merely by casting its complaint in tort.") (citation omitted); Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir.1987) ("If the allegations underlying the claims "touch matters' covered by the sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them."). | Tort claims and claims other than breach of contract are not automatically excluded from contractual arbitration clause. | Are tort and other non-contract claims automatically excluded from contractual arbitration clauses? | 007390.docx | LEGALEASE-00130902-LEGALEASE-00130904 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14385 | Clark v. United States, 322 F.3d 1358 | 34+5(2) | The Posse Comitatus Act also supports the proposition that membership in a state National Guard and in the National Guard of the United States represent different activities. The Posse Comitatus Act prohibits the use of "any part of the Army or Air Force as a posse comitatus or otherwise to execute the laws...." 18 U.S.C. " 1385. The Act has been uniformly interpreted to apply to National Guard members only when they are in federal service and not when they are in service to their states. United States v. Hutchings, 127 F.3d 1255, 1257"58 (10th Cir.1997) ("But until a Guardsman receives orders directing him into federal service, he is a state serviceman, and not a part of the federal Army."); United States v. Benish, 5 F.3d 20, 25"26 (3d Cir.1993) (holding that Pennsylvania National Guard members could be used for civilian law enforcement because they were not in federal service at the time). Case law thus establishes that when National Guard members are not activated into federal service, they are not treated as federal employees. To include a National Guard member in a reserve component for the purposes of section 206(d) when he is in service to the state National Guard would be to treat that member as a federal employee, and not as a state serviceman, and would be contrary to that law. | When National Guard members are not activated into federal service, they are not treated as federal employees. | "When National Guard members are not activated into federal service, can they be treated as federal employees?" | 008436.docx | LEGALEASE-00130711-LEGALEASE-00130713 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14386 | United States v. Castillo-Morales, 507 F.3d 873 | 350H+793 | Castillo's 2006 Florida burglary conviction was therefore a crime of violence under U.S.S.G. " 2L1.2 because the "generic" enumerated offense of "burglary of a dwelling" requires the burgling of a structure, tent, or vessel where someone lives, and Castillo stipulated to that factual basis for his plea in the charging affidavit. | Defendant's prior conviction under Florida's second-degree burglary statute was for "burglary of a dwelling" within meaning of sentencing guideline defining "crime of violence" warranting enhancement of sentence of a defendant convicted of illegal reentry following an aggravated-felony conviction and deportation; defendant stipulated that "a factual basis" for his plea was present in "court documents," and charging affidavit included an admission from defendant's accomplice and co-defendant, which stated he and defendant entered the residence through an unsecured kitchen window. Immigration and Nationality Act, S 276(b), 8 U.S.C.A. S 1326(b); U.S.S.G. S 2L1.2, 18 U.S.C.A.; West's F.S.A. S 810.02(1, 3). | What is a burglary of a dwelling? | Burglary - Memo 25 - RK.docx | ROSS-003300877-ROSS-003300878 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 14387 | United States v. Reina-Rodriguez, 468 F.3d 1147 | 67+2 | Burglary of a dwelling under the Guidelines requires: 1) an unlawful or unprivileged entry into, or remaining in; 2) a building or structure that constitutes a dwelling; 3) with the intent to commit a crime. See Rodriguez"Rodriguez, 393 F.3d at 852 (citing Taylor, 495 U.S. at 598, 110 S.Ct. 2143; Wenner, 351 F.3d at 973). | "Burglary of a dwelling," as qualifies as crime of violence under the sentencing guidelines providing for 16-level sentencing increase for defendant convicted of illegal reentry after deportation, requires: (1) an unlawful or unprivileged entry into, or remaining in, (2) a building or structure that constitutes a dwelling, (3) with the intent to commit a crime. U.S.S.G. S 2L1.2(b)(1)(A)(ii), 18 U.S.C.A. | What is a burglary of a dwelling? | 012990.docx | LEGALEASE-00131301-LEGALEASE-00131302 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14388 | People v. Cunningham, 2002 WL 1065598 | 67+4 | The decision in Thomas was premised on the definition of "dwelling" in section 2-6(b) of the Criminal Code of 1961 and People v. Bales (1985), 108 Ill.2d 182, 91 Ill.Dec. 171, 483 N.E.2d 517, which first set forth that definition. (Thomas, 137 Ill.2d at 519, 148 Ill.Dec. 751, 561 N.E.2d 57.) Bales stated that whether a structure is a "dwelling" depends on how it is used, rather than on the nature of it. (People v. Bales (1985), 108 Ill.2d 182, 190, 91 Ill.Dec. 171, 483 N.E.2d 517.) In setting forth the definition of "dwelling," the Bales court explained, "the legislature, in the residential-burglary statute, attempted to restore to this crime the original status of the crime of burglary-an offense against a particular type of structure or enclosure, that is, a structure or enclosure which is used for habitation purposes, and to make residential burglary a more serious offense than the ordinary illegal invasion of other types of structures or enclosures." (Bales, 108 Ill.2d at 191, 91 Ill.Dec. 171, 483 N.E.2d 517.) The purpose of the residential burglary statute is to deter the unlawful entry into dwellings and thereby protect the privacy and sanctity of the home. 108 Ill.2d at 193, 91 Ill.Dec. 171, 483 N.E.2d 517. | Purpose of residential burglary statute is to deter unlawful entry into dwellings and thereby protect privacy and sanctity of the home. Ill.Rev.Stat.1991, ch. 38, P 19-3(a). | What is the purpose of the burglary statute? | 013162.docx | LEGALEASE-00131317-LEGALEASE-00131318 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14389 | Tobler v. State, 371 So. 2d 1043 | 67+2 | Within the foregoing point, appellant contends that even if the fenced area of May-Cohen's is a curtilage, the only offense of burglary was that committed when the curtilage was entered; that since the trailer was also a part of the curtilage, entry into the trailer would not constitute a separate burglary. We disagree. The two are separate breakings and enterings and, therefore, are two separate offenses. Appellant's forced entry into the fenced area was one burglary, and his later forced entry into the enclosed trailer parked within the fenced area was a second burglary. | Forced entry into fenced area constituted one burglary and later forced entry into enclosed trailer park within area constituted a second burglary so as to warrant conviction for both offenses. | Can entering a fenced area constitute burglary? | Burglary - Memo 85 - JK.docx | ROSS-003300712-ROSS-003300713 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 14390 | Estep v. Commissioners of Boundary Cty., 122 Idaho 345 | 79+6 | At first blush, this provision appears to give the county commissioners more power than they actually have. The county commissioners' power, at least with respect to the clerk of the district court, is limited and cannot be exercised to override every hiring decision. Upon a showing to the proper tribunal that a deputy or clerical assistant is needed, the county commissioners must authorize the appointment. Dukes v. Board of County Commissioners, 17 Idaho 736, 107 P. 491 (1910) (commissioners were ordered to authorize an appointment upon a district court's finding that the business of the office of the clerk of the district court needed a deputy.)Crooks, 112 Idaho at 317, 732 P.2d at 286. | Constitutional provision that clerk of district court shall be empowered by county commissioners to appoint deputies and clerical assistants who shall receive compensation fixed by commissioners does not authorize commissioners to order hiring policies to govern clerk, but authorizes clerk to hire deputy clerks. Const. Art. 18, S 6. | Are county commissioners required to authorize the appointment of clerks? | 013529.docx | LEGALEASE-00131260-LEGALEASE-00131261 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 14391 | Kicklighter v. Goodrich, 162 F. Supp. 3d 1363 | 170B+2385(2) | Plaintiff further contends that Defendant McIntosh County Board is liable for the overtime payments Plaintiff seeks. While McIntosh County may provide Defendant Goodrich with the funding she needs to pay her employees, Defendant McIntosh County Board is not Plaintiffs employer. See Ga. Const, art. IX, " I(c)(1) (stating that counties do not have the power to "affect [ ] any elective county office, the salaries thereof, or the personnel thereof, except the personnel subject to the jurisdiction of the county governing authority"); Taylor v. Bartow Cnty., Ga., 860 F.Supp. 1526, 1536 (N.D.Ga.1994)("Deputy clerks of superior court are not county employees, but the employees of the clerk of superior court."); Warren v. Walton, 231 Ga. 495, 202 S.E.2d 405, 409 (1973)(stating that "deputy sheriffs are personnel of the sheriff," not personnel subject to jurisdiction of the county). Therefore, Plaintiffs FLSA claim against Defendant McIntosh County Board cannot continue. | County clerk of state superior court, in her official capacity, acted as an "arm of the State" when she terminated chief deputy clerk, and thus was entitled to Eleventh Amendment immunity from deputy clerk's claim for damages under S 1983 for alleged violation of her First Amendment right to association, based on deputy clerk's allegation that she was terminated due to her marriage to a county sheriff's deputy; county clerk derived her power and duties from the State, independent of the county in which she served, and exercised her hiring and firing powers for the State. U.S. Const. Amend. 11; Ga. Const, art. IX, S 1; 42 U.S.C.A. S 1983; Ga. Code Ann. SS 15-6-50, 15-6-61, 15-6-82, 15-6-87. | Are deputy clerks of the superior court county employees? | Clerks of court - Memo 94 - RK.docx | ROSS-003287293-ROSS-003287294 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 14392 | Turner v. N. Carolina Dep't of Transp., 223 N.C. App. 90 | 48A+252 | "The [DOT] is subject to a suit to recover damages for death caused by its negligence only as is provided in the Tort Claims Act." Drewry v. N.C. Dep't of Transp., 168 N.C.App. 332, 336, 607 S.E.2d 342, 346 (2005). Under the Tort Claims Act, [t]he Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina . | Department of Transportation (DOT) is subject to a suit to recover damages for death caused by its negligence only as is provided in the Tort Claims Act. West's N.C.G.S.A. S 143-291. | Can the Department of Transportation (DOT) be held liable in tort? | 018781.docx | LEGALEASE-00131189-LEGALEASE-00131190 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 14393 | U.S. ex rel. Batty v. Amerigroup Illinois, 528 F. Supp. 2d 861 | 170A+1772 | When deciding a motion to dismiss under Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all reasonable inferences in the plaintiff's favor. Christensen v. County of Boone, Illinois, 483 F.3d 454, 457 (7th Cir.2007). Detailed factual allegations are not necessary, but merely reciting the elements of a cause of action is insufficient. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964"65, 167 L.Ed.2d 929 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the "grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 618 (7th Cir.2007) (observing that the Supreme Court in Bell Atlantic "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim to relief that is plausible on its face."). | On a motion to dismiss for failure to state a claim, detailed factual allegations are not necessary, but merely reciting the elements of a cause of action is insufficient. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A. | Is the mere recital of the elements of a cause of action insufficient? | 023166.docx | LEGALEASE-00130333-LEGALEASE-00130335 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14394 | Moore v. Kayport Package Exp., 885 F.2d 531 | 170A+636 | Rule 9(b), which applies to securities actions brought under section 10(b) and rule 10b"5, requires particularity in pleading the circumstances of the alleged fraud. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir.1987) (citing Semegen v. Weidner, 780 F.2d 727, 734"35 (9th Cir.1985)). A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. Id. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient. Id. | While statements of time, place, and nature of alleged fraudulent activities are sufficient under civil rule requiring particularity in pleading circumstances of alleged fraud, mere conclusory allegations of fraud are insufficient. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A. | Are conclusory allegations of fraud sufficient? | 023171.docx | LEGALEASE-00130389-LEGALEASE-00130391 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 14395 | Peaslee v. Michalski, 167 So. 2d 242 | 307A+531 | As stated by Blackstone's Commentaries (11th Ed. 1971), 'from the time of the defendant's appearance in obedience to the King's writ, it is necessary that both the parties be kept or continued in Court from day to day, till the final determination of the suit. For the Court can determine nothing, unless in the presence of both the parties, in person or by their attorneys, or upon the default of one of them, after his original appearance, at a time prefixed for his appearance in court again.' III Blackstone's, p. 315-316. Blackstone further states that the practice at trial was that before the jury verdict could be received by the court 'the plaintiff is bound to appear in the court, by himself, attorney, or counsel, and if the plaintiff does not appear, no verdict can be given, but the plaintiff is said to be nonsuited, non sequitur clamorem suum. Thereupon it is usual for a plaintiff, when he or his counsel perceives that he has not given evidence sufficient to maintain his issue, to be voluntarily nonsuited, or withdraw himself: whereupon the crier is ordered to call the plaintiff, and if neither he nor any body for him appears, he is nonsuited, the jurors are discharged, the action is at an end, and the defendant shall recover his cost.' A voluntary nonsuit is one ordered against a party-plaintiff who has affirmatively sought it; and an involuntary nonsuit is one which is ordered against a defaulting party-plaintiff who has not affirmatively sought it. But, 'after a nonsuit, which is only a default, he may commence the same suit again for the same cause of action.' III Blackstone, ib. p. 376-377. | A "voluntary nonsuit" is one ordered against a party-plaintiff who has affirmatively sought it; an "involuntary nonsuit" is one ordered against a defaulting plaintiff who has not affirmatively sought it. | "Is a ""voluntary nonsuit"" one ordered against a party-plaintiff who has affirmatively sought it?" | Pretrial Procedure - Memo # 1224 - C - DA.docx | ROSS-003287495-ROSS-003287496 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14396 | Parks v. Breedlove, 241 Ga. App. 72 | 307A+749.1 | The Parkses contend Breedlove waived his right to seek litigation expenses for bad faith because he failed to include a request for fees and expenses on that basis in the pretrial order. A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice. An issue is waived if not included in the pretrial order. Nonetheless, a pretrial order "should be liberally construed to allow the consideration of all questions fairly within the ambit of the contested issues." Breedlove preserved the issue of litigation expenses by including in his proposed verdict form (which was part of the pretrial order) a finding of attorney fees based on stubborn litigiousness. | A pretrial order limits the issues for trial and controls the subsequent course of the action unless modified at trial to prevent manifest injustice. | Is a pre-trial order to be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues? | 026416.docx | LEGALEASE-00130406-LEGALEASE-00130409 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14397 | Taylor v. S & M Lamp Co., 12 Cal. Rptr. 323 | 307A+742.1 | Before turning to another subject we take this opportunity to direct the attention of judges who conduct pre- trials, to that portion of the pre-trial order which, in connection with the statement of issues, reads, "Assuming there was such a conspiracy, is a legal cause of action stated in the complaint with respect thereto?" One of the basic purposes of pre-trial is to clarify and define the issues, and in that connection, to examine the pleadings for necessary amendments. If, as in this case, the question of the sufficiency of a pleading is raised at a pre-trial conference it should be resolved before the pre-trial order is signed and the case set for trial. Among the ways it may be resolved are: (1) by the voluntary withdrawal as an issue, (2) by directing an appropriate amendment, and continuing the pre-trial conference until the pleading issue is resolved, (3) by reformulating the issue at the pre-trial conference and setting it forth in the pre-trial order, or (4) by a ruling that no issue is raised with respect to the allegations in question. To pass the question to the trial judge, to be raised, a third time, at the start of the trial, as in this case (the demurrer to the cause of action involved had been previously overruled), patently defeats the purposes of pre-trial. Conceivably weeks of trial preparation and large expenditures of money might be incurred under such circumstances, all to no avail if the trial judge grants a motion to exclude evidence. Additionally, it subjects courts and attorneys to criticism, and is an imposition upon jurors and witnesses present for the trial, to be kept waiting, perhaps for a considerable time, while the issue is argued and resolved. The practice should be avoided. | If sufficiency of pleading is raised at pretrial conference, it should be resolved before pretrial order is signed and case set for trial. | "When should sufficiency of pleading, raised at pretrial conference be resolved?" | 026655.docx | LEGALEASE-00130374-LEGALEASE-00130375 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14398 | Makuakane v. Tanigawa, 50 Haw. 493 | 307A+747.1 | After a pre-trial conference, a trial judge should not commence with the trial until a pre-trial order has been signed. Otherwise, a pre-trial conference will be meaningless because parties and attorneys cannot be held bound by the provisions of an unsigned pre-trial order. | Parties and attorneys cannot be held bound by provisions of an unsigned pre-trial order. | Can parties and attorneys be held bound by provisions of an unsigned pre-trial order? | 026755.docx | LEGALEASE-00130291-LEGALEASE-00130292 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14399 | Gillikin v. Pierce, 98 N.C. App. 484 | 307A+501 | When ""defendant sets up a counterclaim arising out of the same transaction alleged in the plaintiff's complaint, the plaintiff cannot take a [voluntary dismissal] without the consent of the defendant...." " McCarley v. McCarley, 289 N.C. 109, 112, 221 S.E.2d 490, 492 (1976) (citation omitted); see N.C.G.S. " 1A-1, Rule 41(a)(1) (voluntary dismissal by plaintiff or by stipulation). The basis for this rule is that any party making such a claim has "the right to have [adjudicated] all the matters put in issue by the pleadings ..." Whedbee v. Leggett, 92 N.C. 465, 470 (1884). However, if no counterclaim is pending, or if the counterclaim is independent and does not arise of the same transaction as the complaint, a party may voluntarily dismiss his suit without the opposing party's consent by filing a notice of dismissal. N.C.G.S. " 1A-1, Rule 41(a)(1)(i); Ward v. Taylor, 68 N.C.App. 74, 78, 314 S.E.2d 814, 819, cert. denied, 311 N.C. 769, 321 S.E.2d 157 (1984) (after a party files a voluntary dismissal, no suit is pending). "Pending" means "[b]egun, not yet completed ... awaiting an occurrence or conclusion of action." Black's Law Dictionary 1021 (5th ed. 1979). | If no counterclaim is pending, or if counterclaim does not arise out of same transaction, party may voluntarily dismiss his complaint without opposing party's consent by filing notice of dismissal. Rules Civ.Proc., Rule 41(a)(1), (a)(1)(i), G.S. S 1A-1. | "Is it an error to allow the plaintiff to dismiss his own case, where no counterclaim has been interposed?" | 026774.docx | LEGALEASE-00130381-LEGALEASE-00130382 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 14400 | Shawe v. Elting, 157 A.3d 142 | 307A+331 | A party in litigation has an affirmative duty to preserve potentially relevant evidence. A court may sanction a party who "destroy[s] relevant evidence" or "fail[s] to prevent the destruction of such evidence.""A party is not obligated to "preserve every shred of paper, every e-mail or electronic document, but instead must preserve what it knows, or reasonably should know, is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." ""To impose monetary sanctions, [a court] need only find that a party had a duty to preserve evidence and breached that duty." | A party in litigation has an affirmative duty to preserve potentially relevant evidence. | Does a party in litigation have an affirmative duty to preserve potentially relevant evidence? | 026810.docx | LEGALEASE-00130804-LEGALEASE-00130805 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14401 | Hibbert v. Ransdell, 26 P.3d 721 | 307A+749.1 | We see no abuse of discretion by the trial court in denying the motion. As defendant pointed out to the trial court, the pretrial order did not include an issue on failure of informed consent. Further, the case had been tried largely on the issue of negligence, and the informed consent issue was not raised until the trial was nearly over and after defendant had already testified. In general, a pretrial order should supersede pleadings and control the future course of the action unless modified to prevent injustice. | In general, a pretrial order should supersede pleadings and control the future course of the action unless modified to prevent injustice. | Will a pre-trial order supersede the pleadings? | 026934.docx | LEGALEASE-00130477-LEGALEASE-00130478 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 14402 | Perkins v. Carter, 09-673 (La. App. 5 Cir. 12/29/09), 30 So. 3d 862 | 307A+1 | One of the principal purposes of pretrial proceedings is to narrow the issues of the litigation to those which are contested and to dispense with proof on the issues which are not contested. Navarro v. Bommarito, 367 So.2d 74, 76 (La.App. 4 Cir.1979), writ denied, 369 So.2d 458 (La.1979) citing La. C.C.P. art. 1551. In Navarro, the defendant argued that the plaintiff failed to produce evidence of vicarious liability. The court found that in their pretrial pleadings the defendants, by expressly stating the only contested issues, implicitly notified the plaintiff that vicarious liability was no longer a contested issue. Id. The plaintiff relied on the pretrial order and omitted evidence of vicarious liability. The court held that since the issue of vicarious liability was excluded from the contested issues listed in the pretrial order which controlled the course of the proceeding, and since there was no suggestion prior to or during trial that the pretrial order should be modified in the interest of justice, the court declined to consider the issue raised now on appeal by new counsel. Id. | One of principal purposes of pretrial proceeding is to narrow issues of litigation to those which are contested and to dispense with proof on issues which are not contested. LSA-C.C.P. art. 1551. | What is the purpose of pretrial proceedings with regard to contested issues? | Pretrial Procedure - Memo # 1773 - SKG.docx | LEGALEASE-00020812-LEGALEASE-00020813 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 14403 | Dillard Dep't Stores v. Hall, 909 S.W.2d 491 | 307A+331 | As presently postured, this is a simple false arrest case. Parker admits that he wants the document production to explore whether he can in good faith allege racial discrimination. This is the very kind of "fishing expedition" that is not allowable under rule 167 of the Texas Rules of Civil Procedure. Loftin v. Martin, 776 S.W.2d 145, 148 (Tex. Unlike depositions and interrogatories, requests for document production may not be used simply to explore. Id. | Unlike depositions and interrogatories, requests for document production may not be used simply to explore. Vernon's Ann.Texas Rules Civ.Proc., Rule 167. | Can requests for production of documents be used simply to explore? | Pretrial Procedure - Memo # 2080 - C - NS.docx | ROSS-003286465-ROSS-003286466 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 14404 | In Interest of Hill, 102 Ill. App. 3d 387 | 307A+717.1 | In the present case, the public defender requested a continuance of a month so that he could contact respondent's counselor. There was no showing in the record of a prior effort to contact the counselor which would indicate the importance of his presence at the hearing. A motion for continuance is insufficient where there is no showing that the absence of a witness would jeopardize the case. (Economy Fire & Casualty, at 629, 28 Ill.Dec. 194, 390 N.E.2d 361.) We hold that the trial judge did not abuse his discretion by denying the motion for a continuance. | Motion for continuance is insufficient where there is no showing that absence of witness would jeopardize case. | Is a motion for continuance insufficient where there is no showing that absence of witness would jeopardize case? | Pretrial Procedure - Memo # 2091 - C - NS.docx | LEGALEASE-00020994-LEGALEASE-00020995 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14405 | Foster v. Texas Dept. of Pub. Safety, 443 S.W.2d 66 | 30+3239 | Appellant also urges that the trial court erred in granting the motion, in that he had never been furnished a copy of the Austin County records although his controverting affidavit alleged a reasonable effort to acquire same. Rule 166"A(f), T.R.C.P., provides: "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." An application for additional time, being a motion for continuance is addressed to the discretion of the trial court, and this ruling will not be disturbed upon appeal unless abuse of discretion is shown. Green v. Smart, 333 S.W.2d 880 (Tex.Civ.App."Dallas 1960, no writ); Chandler v. Brown, 301 S.W.2d 720 (Tex.Civ.App."El Paso 1957, writ ref'd n.r.e.); McDonald, Texas Civil Practice, Cumulative Supp., s 17.26.3 p. 57. | Application for additional time is addressed to discretion of trial court whose ruling will not be disturbed upon appeal unless abuse of discretion is shown. Rules of Civil Procedure, rule 166-A(f). | Will an order granting or refusing the motion be disturbed on appeal? | 027535.docx | LEGALEASE-00130847-LEGALEASE-00130848 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14406 | Michigan Employment Sec. Comm'n v. Patt, 4 Mich. App. 228 | 371+2001 | To arrive at an ultimate disposition of this matter, we find no better touchstone than the words of the Court in Re Oshkosh Foundry Co. (E.D.Wis.1939), 28 F.Supp. 412, wherein the associated question of priorities under the bankruptcy act was considered. There it was said:"Although the Legislature did not designate the contributions as a tax, nevertheless the compulsory payments made for a public purpose come within a definition of a tax as is stated in 61 C.J. 68: "the essential characteristics of a tax are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority'.' | Essential characteristics of a "tax" are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority. | Is tax a voluntary payment or donation? | Taxation - Memo # 105 - C - SU.docx | LEGALEASE-00021056-LEGALEASE-00021057 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 14407 | Grace v. St. Louis Cty., No. ED94746, 2011 WL 1660653 | 371+2001 | Taxes are "proportional contributions imposed by the state upon individuals for the support of government and for all public needs." Leggett v. Missouri State Life Ins. Co., 342 S.W.2d 833, 875 (Mo. banc 1960) (quotations omitted). "Taxes are not payments for a special privilege or a special service rendered." Leggett, 342 S.W.2d at 875(quotations omitted). "Fees or charges prescribed by law to be paid by certain individuals topublic officers for services rendered in connection with a specific purpose ordinarily are not taxes, unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures, rather than compensation of public officers for particular services rendered." Id. (internal quotations omitted); see also President Riverboat Casino-Missouri, Inc., v. Missouri Gaming Commission, 13 635, 638 (Mo. banc 2000) (Supreme Court found admission fees gambling boat operators paid directly to the State, which were deposited into the State's general revenue fund, were taxesunder definition in Leggett ). | "Taxes" are proportional contributions imposed by the state upon individuals for the support of government and for all public needs; taxes are not payments for a special privilege or a special service rendered. | Are taxes proportional contributions imposed by the state? | Taxation - Memo # 112 - C - CK.docx | ROSS-003290516-ROSS-003290517 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 14408 | Weisblat v. City of San Diego, 176 Cal. App. 4th 1022 | 371+2001 | Proposition 218 defines a "special tax" as "any tax imposed for specific purposes," even if the proceeds are placed into a general fund. (Art. 13C, " 1, subd. (d); see Bay Area Cellular, supra, 162 Cal.App.4th at p. 696, 75 Cal. 839.) "[A] tax is special whenever expenditure of its revenues is limited to specific purposes; this is true even though there may be multiple specific purposes for which [the] revenues may be spent." (City of Roseville, supra, 106 Cal.App.4th at p. 1185, 132 Cal.Rptr.2d 1.) Under Proposition 218, "[n]o local government may impose, extend, or increase any special tax" until the matter is "submitted to the electorate and approved by a two-thirds vote." (Art. 13C, " 2, subd. (d).) Under Proposition 218, "[c]ertain kinds of impositions for specific purposes, however, are treated not as special taxes subject to the voter approval requirements but as fees not subject to those requirements." (Bay Area Cellular, supra, 162 Cal.App.4th at p. 693, 75 Cal.Rptr.3d 839; see also " 50076 (discussed, ante ).) | A tax is a "special tax" whenever expenditure of its revenues is limited to specific purposes; this is true even though there may be multiple specific purposes for which the revenues may be spent. | When is a tax a special tax? | Taxation - Memo # 115 - C - CK.docx | ROSS-003315348-ROSS-003315349 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 14409 | Okeson v. City of Seattle, 150 Wash. 2d 540 | 371+2002 | Because providing streetlights is a governmental function of the city, we must next determine if Ordinance 119747 imposed a tax or a fee to pay for those costs. Determining what is a tax or a fee is often quite difficult. Dean v. Lehman, 143 Wash.2d 12, 28, 18 P.3d 523 (2001) ( "It is difficult, however, to pigeonhole these charges."). Generally speaking, taxes are imposed to raise money for the public treasury. Id. at 25, 18 P.3d 523 (citing Wash Const. art. VII, " 1); State v. Case, 39 Wash. 177, 182, 81 P. 554 (1905). A local government does not have the power to impose taxes without statutory or constitutional authority. Covell v. City of Seattle, 127 Wash.2d 874, 879, 905 P.2d 324 (1995). | Charges imposed by a local government for purposes other than raising money for the public treasury, such as for the regulation of an activity, are not taxes and are not subject to constitutional taxation constraints. | Is tax a charge imposed to raise money for the public treasury? | 045031.docx | LEGALEASE-00130556-LEGALEASE-00130558 | SA, Sub | 0.69 | 0 | 0 | 1 | 1 | |
| 14410 | Pifer v. Laird, 328 F. Supp. 649 | 34+2 | Additionally, the army is entitled to a first crack at interpreting its own regulations and to a great deal of deference in the interpretations it reaches. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1964). Here it seems the army has chosen to interpret "urgency" with less emphasis than might normally be credited to that word in the marketplace. However, this Court cannot conclude that it was unreasonable for the army to determine that the situation regarding C.O. applications was in some manner "urgent". Urgent can mean requiring immediate attention rather than the more common meaning of undue importance. Thus while the increasing numbers of C.O. applications at Oakland and other temporary duty stations may not have been a major problem, it was not unreasonable for the army to determine that it was an irritation that was greatly increasing with time, and therefore one requiring immediate attention. In such areas of administrative implementation this Court must defer greatly to those who are interpreting their own rules. This is particularly true in the instant case where regulation A.R. 310-3 specifically appoints the Adjutant General, not the courts, to determine compliance with its terms. The Adjutant General approved the telegraphic change of regulation A.R. 635-20. | Army is entitled to first crack at interpreting its own regulations and to great deal of deference in interpretations it reaches. | Is the army entitled to a first crack at interpreting its own regulations? | 008889.docx | LEGALEASE-00132403-LEGALEASE-00132404 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14411 | U.S. ex rel. Hirshberg v. Cooke, 336 U.S. 210 | 258A+893 | Accepting as we do the longstanding Army and Navy interpretation of the Articles previously referred to, an interpretation which necessarily would deny jurisdiction to court-martial here, there remains the contention that the Navy has by a recent congressionally authorized regulation acquired such jurisdiction for its courts-martial. 34 U.S.C. s 591, 34 U.S.C.A. s 591, authorizes the Secretary of the Navy, with the approval of the President, to adopt and alter regulations and orders for control of the Navy. The Government claims that a regulation adopted pursuant to this authority has been promulgated, and that it vested the necessary power in this court-martial to try petitioner. This authorized regulation, it is contended, had the force of law, Ex parte Reed, 100 U.S. 13, 22, 25 L.Ed. 538, and consequently supplants the prior statutes which, as interpreted, had denied the jurisdiction here asserted. There has been considerable argument as to whether the language of the Navy regulation was sufficiently precise to endow it with the force of law. Passing over this argument, however, we are not able to agree that the Navy could in this manner acquire the expanded court-martial jurisdiction it claimed. For we cannot construe 34 U.S.C. s 591, 34 U.S.C.A. s 591, as permitting the Navy to extend its courtmartial jurisdiction beyond the limits Congress had fixed. United States v. Symonds, 120 U.S. 46, 49, 50, 7 S.Ct. 411, 412, 413, 30 L.Ed. 557. | The statute authorizing Secretary of Navy, with approval of President, to adopt and alter regulations and orders for control of navy, could not be construed as permitting navy to extend its court-martial jurisdiction beyond limits Congress had fixed. 34 U.S.C.A. S 591. | Can naval regulations be altered only with the approval of the president? | 008900.docx | LEGALEASE-00132415-LEGALEASE-00132416 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14412 | Aguilar Mortega v. Dep't of Def., 520 F. Supp. 2d 1 | 34+3(1) | Military courts are independent of the federal courts, and are "analogized [] to state court systems when individuals punished by court-martial seek redress in federal courts."]\| Kendall, 996 F.2d at 366; see Gusik v. Schilder, 340 U.S. 128, 131, 71 S.Ct. 149, 95 L.Ed. 146 (1950) (making analogy between collateral attack on militaryj judgment and collateral attack on state court judgment). For this reason, federal courts "apply identical waiver rules to bar claims raised for the first time during a collateral attack on a court-martial." Kendall, 996 | Military courts are independent of the federal courts, and are analogized to state court systems when individuals punished by court-martial seek redress in federal courts. | Are military courts independent of federal courts? | Armed Services - Memo 76 - RK.docx | ROSS-003285692-ROSS-003285693 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 14413 | United States v. Garrido, 713 F.3d 985 | 372+1014(10) | In contrast to the detailed discussion of the failure to disclose theory, the district court did not define either "bribery" or "kickback" in the " 1346 context. Although bribery was defined in the 18 U.S.C. " 666 jury instructions, " 666 does not require a jury to find a specific quid pro quo. See United States v. McNair, 605 F.3d 1152, 1187"89 (11th Cir.2010) (concluding that " 666 does not require a specific quid pro quo ); see also id. at 1189 (collecting cases from other circuits which hold that " 666 does not require a quid pro quo ). A quid pro quo in bribery is the "specific intent to give or receive something of value in exchange for an official act." United States v. Sun"Diamond Growers of California, 526 U.S. 398, 404"05, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999). Section 1346 honest services convictions on a bribery theory, on the other hand, require at least an implied quid pro quo. Kincaid"Chauncey, 556 F.3d at 943; see Section III.A. below for further discussion | Convictions for honest services wire or mail fraud, pursuant to bribery theory, require at least an implied quid pro quo. 18 U.S.C.A. SS 1341, 1343, 1346. | "What is the definition of ""quid pro quo"" for the purpose of bribery?" | 012313.docx | LEGALEASE-00132082-LEGALEASE-00132084 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 14414 | United States v. Mullins, 800 F.3d 866 | 63+1(1) | Mullins also contends that he cannot be convicted of bribery because the government produced no evidence of quid pro quo, such as the vendors receiving something in return for the bribe. But they did receive something"their contracts. In any case, evidence of quid pro quo is not necessary to establish a violation of " 666(a)(1)(B). See United States v. Boender, 649 F.3d 650, 654 (7th Cir.2011); United States v. Gee, 432 F.3d 713, 714"15 (7th Cir.2005). Thus, the bribery counts are intact. | Evidence of quid pro quo is not necessary to establish that a public agent solicited corruptly anything of value in connection with a transaction of $5,000 or more. 18 U.S.C.A. S 666(a)(1)(B). | Is the evidence of quid pro quo necessary to establish that a public agent commit corrupt solicitation under bribery statute? | 012336.docx | LEGALEASE-00132087-LEGALEASE-00132088 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 14415 | McGee v. Finley, 65 So. 2d 384 | 302+8(15) | But, in the instant case plaintiffs are not forced heirs nor can they rely upon a counter letter or interrogatories on facts and articles for the purpose of contradicting the recitals of the authentic act. They are relegated to the production of evidence to show that the signature of Norman McGee was obtained by some manner of artifice of fraud. As a prerequisite to the introduction of parol evidence for this purpose it is fundamental that allegations of fraud must be alleged in the petition and that such allegations must consist of primary facts and not mere conclusions. The allegations in a petition should consist of matters of fact and not opinions or conclusions of law. Chachere v. Moses George & Son, La.App.1936, 165 So. 522; Central Savings Bank & Trust Co. v. Succession of Brandon, La.App.1936, 167 So. 515; Succession of Stafford, 1939, 191 La. 855, 186 So. 360; Dilworth v. Hebert, La.App.1942, 7 So.2d 626; In re Phoenix Building & Homestead Association, 203 La. 565, 14 So.2d 447; LeBlanc v. Danciger Oil & Refining Company, 218 La. 463, 49 So.2d 855. | Heirs at law suing to annul two sales of realty by their ancestor were required, as prerequisite to introduction of parol evidence to show that signature of their ancestor was obtained by some manner of artifice or fraud, to have alleged in their petition the primary facts, and not merely conclusions, showing the fraud relied upon. | Must allegations of fraud contain facts and not mere conclusions? | 023204.docx | LEGALEASE-00131719-LEGALEASE-00131720 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 14416 | Spudnuts v. Lane, 131 Ariz. 424 | 302+8(15) | Although no particular language is necessary in pleading fraud, the elements constituting fraud must be found when considering the pleading as a whole.Parks v. Macro-Dynamics, Inc., 121 Ariz. 517, 591 P.2d 1005 (App.1979); Denbo v. Badger, 18 Ariz.App. 426, 503 P.2d 384 (1972). However, bare allegations that a thing is "fraudulent" are insufficient to comply with the rule. In re Cassidy's Estate, 77 Ariz. 288, 270 P.2d 1079 (1954). | Although no particular language is necessary in pleading fraud, elements constituting fraud must be found considering pleading as a whole and bare allegations that thing is "fraudulent" are insufficient to comply with rule. 16 A.R.S. Rules Civ.Proc., Rule 9(b). | Is any language necessary in pleading fraud? | 023208.docx | LEGALEASE-00131945-LEGALEASE-00131946 | Condensed, SA | 0.39 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14417 | Crist v. Goody, 31 Colo. App. 496 | 307A+331 | The purpose of the discovery rule, C.R.C.P. 26, patterned after Fed.R.Civ.P. 26, and the pre-trial procedure, C.R.C.P. 16, similarly patterned after Fed.R.Civ.P. 16, is to eliminate secrets and surprises at trial, simplify the issues, and lead to fair and just settlements without having to go to trial. Clark v. Pennsylvania R. Co., 2 Cir., 328 F.2d 591; Clevite Corp. v. Beckman Instruments, Inc., D.C., 257 F.Supp. 50. See Lucas v. District Court, 140 Colo. 510, 345 P.2d 1064. For these reasons the rules dealing with interrogatories, discovery, and production must be construed liberally. See United States v. 900.57 Acres of Land, D.C., 30 F.R.D. 512; United States v. National Steel Corp., D.C., 26 F.R.D. 607. We hold that "surveillance movies' are discoverable under the Colorado Rules of Civil Procedure, and they are also subject to production through pre-trial procedure. C.R.C.P. 16 and 34. Bynon v. Morrison and Morrison, Inc., 169 Colo. 384, 456 P.2d 747, relied upon by defendant, is not applicable. | Rules dealing with interrogatories, discovery, and production must be liberally construed. Rules of Civil Procedure, rule 26. | "Must rules dealing with interrogatories, discovery, and production be liberally construed?" | 027273.docx | LEGALEASE-00131561-LEGALEASE-00131562 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14418 | Vinlis Const. Co. v. Roreck, 19 A.D.2d 753 | 307A+331 | To be subject to discovery and inspection, documents must relate to the merits of the action or defense, and be admissible as evidence themselves (People ex rel. Lemon v. Supreme Court of State of New York, 245 N.Y. 24, 29, 156 N.E. 84, 52 A.L.R. 200; Faendrick v. Allied Aviation Service International Corp., 284 App.Div. 898, 134 N.Y.S.2d 316). The discovery and inspection must be obtained as authorized by statute and rule (cf. Rubel Corp. v. Rosoff, 251 App.Div. 868, 297 N.Y.S. 274 [decided 1937]; Golding v. Golding, 7 A.D.2d 1027, 184 N.Y.S.2d 793; Civ.Prac.Act, " 296, subd. 1; Nineteenth Annual Report of N. Y. Judicial Council, 1953, pp. 77"78, 189"196; Twenty-first Annual Report of N. Y. Judicial Council, 1955, pp. 163, 165). There is no provision in statute or rule authorizing a party who is being examined before trial to obtain as an aid to him in his examination: (1) a discovery and inspection of records in the possession of the adverse parties conducting the examination; and (2) to require such discovery and inspection to take place before his pretrial examination is resumed. Justice does not require that such preliminary discovery and inspection should be directed (cf. Rules of Civil Practice, rule 141; Reliable Textile Co. v. Elk Dye Works, 177 Misc. 926, 32 N.Y.S.2d 438). | Discovery and inspection must be obtained as authorized by statute and rule. Civil Practice Act, S 296 and subd. 1; Rules of Civil Practice, rule 141. | Must discovery and inspection be obtained as authorized by statute and rule? | Pretrial Procedure - Memo # 2114 - C - ES.docx | ROSS-003301579-ROSS-003301580 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14419 | Reeves v. Travelers Ins. Companies, 421 A.2d 47 | 307A+747.1 | We recognize that the sanction of dismissal, or of default judgment if imposed on a defendant, is a drastic one; its direct consequence falls not upon the attorney, but upon the party, who thereby loses all chance for an adjudication on the merits. For that reason, the ultimate sanction should be imposed only for the most serious instances of noncompliance with pretrial procedures. Mindful of that fact, we are nonetheless well satisfied that the special circumstances present in this case make it an appropriate occasion for dismissal, in order to penalize a serious delinquency and to deter like conduct by others. Cf. Zavala Santiago v. Gonzalez Rivera, 553 F.2d 710, 713 (1st Cir. 1977) (Coffin, C. J.) (dismissal for failure to attend pretrial conference and comply with discovery order). The Superior Court justice did not commit any abuse of discretion by making that choice. | Ultimate sanction of dismissal of action for failure to comply with pretrial procedure should be imposed only for the most serious instances of noncompliance with pretrial procedures. | Should the ultimate sanction be imposed only for the most serious instances of noncompliance with pretrial procedures? | 027442.docx | LEGALEASE-00131931-LEGALEASE-00131932 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 14420 | Wenrich v. Employers Mut. Ins. Companies, 35 Kan. App. 2d 582 | 307A+749.1 | As the Wenrichs properly state, a pretrial order has the full force of other orders entered by the court and controls the subsequent course of litigation unless modified to prevent manifest injustice. See K.S.A. 60-216(e); Sampson v. Hunt, 233 Kan. 572, 578, 665 P.2d 743 (1983). In the absence of an attempt to modify the pretrial order, such order is binding and controls the subsequent course of trial. Sieben v. Sieben, 231 Kan. 372, 377, 646 P.2d 1036 (1982). | In the absence of an attempt to modify the pretrial order, such order is binding and controls the subsequent course of trial. | "Where a pretrial order was not modified, does it control a subsequent course of action?" | 027473.docx | LEGALEASE-00132313-LEGALEASE-00132314 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 14421 | B. C. Richter Contracting Co. v. Cont'l Cas. Co., 230 Cal. App. 2d 491 | 307A+749.1 | 16 As we have noted, one count of each of the complaints was correctly framed on the theory of recovery of the contract price plus extra costs occasioned by the wrongful acts of Hayes-Cal, which is the only available theory for recovery of money in excess of the withheld contract payments. The pretrial orders mistakenly shifted the theory to the false one of quantum meruit or reasonable value. The pretrial orders, of course, fixed the actual issues and superseded inconsistent pleadings. (Rule 216, California Rules of Court; see Witkin, Cal.Procedure, 1963 Supp., pp. 535"536.) In one sense, the judgment under attack correctly reflects the view that plaintiffs were not entitled to recover on the reasonable value issue framed by the pretrial orders. Given that effect, the pretrial orders would confine plaintiffs to a narrow road leading fruitlessly to an unavailable objective. We reject such a rigorous application of the pretrial orders. | Pretrial orders fixed actual issues and superseded inconsistent pleadings. Cal. Rules of Court, rule 216. | Can pretrial orders fix actual issues and supersede inconsistent pleadings? | 027652.docx | LEGALEASE-00132348-LEGALEASE-00132349 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14422 | Harris v. Ward Greenberg Heller & Reidy LLP, 151 A.D.3d 1808 | 307A+517.1 | With respect to appeal No. 2, because plaintiffs voluntary notices of discontinuance were timely, the action was discontinued and "it is as if it had never been; everything done in the action is annulled and all orders in the case are nullified" (Newman v. Newman, 245 A.D.2d 353, 354, 665 N.Y.S.2d 423). Thus, the order in appeal No. 2 is a nullity and plaintiff appeal from that order is academic. It is hereby ordered that the order so appealed from is unanimously reversed on the law without costs and defendants' motions are denied. | When plaintiff's voluntary notice of discontinuance is timely, the action is discontinued and it is as if it had never been; everything done in the action is annulled and all orders in the case are nullified. McKinney's CPLR 3217(a). | "When an action is discontinued, is it as if it had never been?" | 027755.docx | LEGALEASE-00132002-LEGALEASE-00132003 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14423 | Morgan Stanley Dean Witter Commercial Fin. Servs. v. Sutula, 185 Ohio App. 3d 152 | 307A+517.1 | "Dismissals pursuant to Civ.R. 41(A) (1) is fully and completely effectuated upon the filing of a notice of voluntary dismissal by the plaintiff. A voluntary dismissal is self-executing and "the mere filing of the notice of dismissal by the plaintiff automatically terminates the case without intervention by the court." Payton v. Rehberg (Cuyahoga, 1997), 119 Ohio App.3d 183, 192, 694 N.E.2d 1379. Since a Civ.R. 41(A) (1) (a) dismissal is self-executing, "the trial court's discretion is not involved in deciding whether to recognize the dismissal."Selker & Furber v. Brightman (2000), 138 Ohio App.3d 710, 714, 742 N.E.2d 203. Moreover, when a Civ.R. 41(A) (1) (a) dismissal is filed, the time-stamped date on that document is controlling, not a subsequent court entry. See Blankenship v. CRT Tree, Cuyahoga App. No. 80907, 2002-Ohio-5354 2002 WL 31195215. Nor can the court's subsequent actions affect a self-executing dismissal." Parker v. Cleveland Pub. Library, Cuyahoga App. No. 83666, 2004-Ohio-4492, 2004 WL 1902549. | When a voluntary dismissal is filed, the time-stamped date on that document is controlling, not a subsequent court entry, nor can the court's subsequent actions affect a self-executing dismissal. Rules Civ.Proc., Rule 41(A)(1)(a). | "When a voluntary dismissal is filed, is the time-stamped date on that document controlling?" | 027759.docx | LEGALEASE-00132053-LEGALEASE-00132054 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 14424 | In re Cole, 428 B.R. 747 | 307A+517.1 | Even assuming that Glidden did not act as impediment to the Plaintiff position regarding collateral estoppel, the voluntary dismissal of his prior suit does. Where, as here, litigants agree to a voluntary dismissal, the action is treated as if it had never been commenced.[] See Ohio Civ.R. 41. Hence, it is recognized that a voluntary dismissal will not generally implicate the doctrine of collateral estoppel. Wilson v. Marino, 164 Ohio App.3d 662, 843 N.E.2d 849 (2005); Lovins v. Kroger Co., 150 Ohio App.3d 656, 659 n. 3, 782 N.E.2d 1171 (Ohio App.2002). See also Moherman v. Nickels, 140 Ohio St. 450, 456, 45 N.E.2d 405, 408 (1942) ("It is a well-settled rule that a judgment or decree of dismissal of an action not involving the merits as distinguished from a dismissal upon the merits, is not a bar to a subsequent action or suit, and will not support a plea of res judicata."). The Court can see no reason why this case should be treated any differently. | Under Ohio law, where litigants agree to a voluntary dismissal, the action is treated as if it had never been commenced. Ohio Rules Civ.Proc., Rule 41. | "Where litigants agree to a voluntary dismissal, is the action treated as if it had never been commenced?" | Pretrial Procedure - Memo # 2327 - C - NE.docx | ROSS-003300039-ROSS-003300040 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 14425 | Allied Van Lines v. Fairfield Ins. Co., 591 F. Supp. 2d 852 | 307A+517.1 | Nonetheless, the Court is not entirely without guidance. The Court is unable to find any state that differs from the federal rule that a voluntary dismissal is a dismissal without prejudice unless it otherwise states. To the extent that Louisiana courts have approached the issue of silent dismissals, voluntary or not, they have followed this rule. See State ex rel. Dept. of Soc. Serv., 858 So.2d at 503; Simmons, 306 So.2d at 69. This Court finds no Louisiana statute or precedent that suggests that Louisiana would depart from this general rule, and the parties have suggested none. Thus, this Court concludes that in Louisiana, as in other jurisdictions, a voluntary dismissal is a dismissal without prejudice unless otherwise stated.4 Accordingly, and applying the rule to the instant case, the Court concludes that the June 2004 Order in Storey v. Jenkins et al. was without prejudice and has no preclusive effect on the instant litigation, because it does not satisfy the "finality" requirement of the Louisiana res judicata analysis. | In Louisiana, as in other jurisdictions, a voluntary dismissal is a dismissal without prejudice unless otherwise stated, as predicted by federal district court. | Is a voluntary dismissal a dismissal without prejudice unless it otherwise states? | Pretrial Procedure - Memo # 2381 - C - TM.docx | ROSS-003288231-ROSS-003288232 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 14426 | Michigan State Highway Comm'n v. Redmon, 42 Mich. App. 642 | 307A+749.1 | While the court's pretrial summary usually controls the subsequent course of litigation, the trial court is allowed discretionary power under GCR 1963, 301.3 to modify the pretrial summary at or before trial so as to avoid manifest injustice. We have consistently upheld this discretion of the trial court in the exclusion and admission of witnesses and evidence not listed at pretrial in the absence of clear abuse. Defendant's counsel did not challenge the technicality of substituting witnesses after the time for disclosure had passed in timely fashion, but rather sat back to raise the issue at trial. To paraphrase Justice Butzel in People v. Elliott, 322 Mich. 313, 316, 33 N.W.2d 811 (1948), counsel cannot sit idly by and then for the first time interpose objections at trial. The commission informed defendant "of the expert's name as soon as it was determined he would be a witness and in sufficient time so that plaintiff (defendant in this case) could have prepared to meet his testimony, no matter what it might have been. The facts justified denial of defendant's motion. We therefore affirm the trial court's ruling. | Counsel cannot sit idly by and then for the first time interpose objections at trial. | Can counsel sit idly by and then for the first time interpose objections at trial? | 027873.docx | LEGALEASE-00132323-LEGALEASE-00132324 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14427 | Kendra Oil & Gas v. Homco, Ltd., 879 F.2d 240 | 170A+1935.1 | Homco called Jack Morgan as an expert witness. The magistrate barred him from testifying on the ground that Homco had not listed him as a witness in the final pretrialorder. It hadn't identified Morgan because it didn't need to. Kendra listed Morgan as an expert witness, and the order recites that "defendants reserve the right to call any witness listed by plaintiffs". The order governs the conduct of the trial unless modified, which may be done "only to prevent manifest injustice". Fed.R.Civ.P. 16(e); see Louis Vuitton S.A. v. Pun Yang Lee, 875 F.2d 584, 587"588 (7th Cir.1989); Smith v. Rowe, 761 F.2d 360, 365 (7th Cir.1985). Although Kendra claimed to be surprised by Homco's decision, it had no basis (other than its own unwariness) for shock. After all, Kendra had interviewed Morgan and put him on the list, stating in answer to an interrogatory that Morgan would testify about the "illegality" of O'Daniel # 5; Homco wanted Morgan to testify about just this subject. Homco's reservation of the right to call witnesses on Kendra's list is functionally identical to retyping all of the names under "defendants' witnesses". If Homco had used scissors and paste to repeat Kendra's list, Kendra could hardly have claimed "surprise". As this is what Homco did, but in fewer words, Morgan was eligible to testify. A party's unreadiness to meet its opponent's case does not justify excluding the evidence. Perhaps unpreparedness justifies a continuance; it does not justify exclusion. | Pretrial order governs conduct at trial unless modified, which may be done only to prevent manifest injustice. Fed.Rules Civ.Proc.Rule 16(e), 28 U.S.C.A. | Does a pretrial order govern a conduct of trial? | 027918.docx | LEGALEASE-00132296-LEGALEASE-00132297 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14428 | GenOn Mid-Atl. v. Montgomery Cty., Md., 650 F.3d 1021 | 170B+2036 | The chief problem with Montgomery County's carbon charge is that the burden falls on GenOn alone. But the whole idea of a tax is that it is, to some extent, a burden generally borne. Thus, an "assessment imposed upon a narrow class" is less likely to be a tax than an "assessment imposed upon a broad class of parties." Bidart Bros. v. Cal. Apple Comm'n, 73 F.3d 925, 931 (9th Cir.1996). The fact that this charge affects the narrowest possible class is compelling evidence that it is a punitive fee rather than a tax. The County acknowledges"as it must"that the "the universe of taxpayers under Bill 29"10 does not represent a major segment of society." Brief of Appellee at 7. But to speak of a "universe" of anything with only one inhabitant rings odd upon the ear. | For purposes of Tax Injunction Act, assessment imposed upon narrow class is less likely to be tax than assessment imposed upon broad class of parties. 28 U.S.C.A. S 1341. | Is an assessment imposed on a narrow class likely to be a tax? | 044811.docx | LEGALEASE-00131534-LEGALEASE-00131535 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 14429 | Am. Auto. Ass'n v. State, 136 N.H. 579 | 371+2001 | A "tax is an enforced contribution to raise revenue and not to reimburse the state for special services." Opinion of the Justices, 117 N.H. 749, 756, 379 A.2d 782, 786 (1977). Under part II, article 5, taxes must be proportional and reasonable, "that is, equal in valuation and uniform in rate, and just." Id. at 755, 379 A.2d at 786 (citation omitted). By comparison, licensing fees are charges that "bear a relation to and approximate the expense of issuing the licenses and of inspecting and regulating the business licensed." Laconia v. Gordon, 107 N.H. 209, 211, 219 A.2d 701, 703 (1966). They must be incidental to the implementation of a regulatory program and cannot primarily be intended to produce additional revenues. See id. The validity of such fees is measured "principally by the necessary expenses of issuing the license, and of such inspection, regulation and supervision as may be necessary." Opinion of the Justices, 112 N.H. 166, 170, 290 A.2d 869, 872 (1972). The amount of a fee will be sustained so long as it is not "grossly disproportionate" to the regulatory expenses. Hooksett Drive-In Theatre, Inc. v. Hooksett, 110 N.H. 287, 289, 266 A.2d 124, 126 (1970). A licensing fee, however, may cover incidental expenses incurred "in consequence of the activity regulated provided the resulting fee does not become unreasonable." Opinion of the Justices, 112 N.H. at 170, 290 A.2d at 872. In addition, that licensing fees "produce some surplus revenue does not render" the licensing act unreasonable or invalid. Id.; see also Laconia, 107 N.H. at 211, 219 A.2d at 703. | "Tax" is enforced contribution to raise revenue and not to reimburse state for special services. Const. Pt. 2, Art. 5. | Is tax an enforced contribution to reimburse the State for special services? | Taxation - Memo # 222 - C - KI.docx | LEGALEASE-00022137-LEGALEASE-00022139 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14430 | City of Hot Springs By & Through Starr v. Vapors Theatre Rest., 298 Ark. 444 | 371+2001 | Appellant next argues that the language in Ark.Code Ann. " 3"9"214, the mixed drink act, which provides that "the taxes herein prescribed may be passed on to the consumer and shall be in lieu of all other special taxes at the retail level" refers only to the taxes authorized by the mixed drink statute and "does not mean that the city is prohibited from placing an additional tax or fee on alcohol as authorized by other statutes." (Appellant's brief p. 25) The argument defies our first rule of statutory construction, which is to construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. Bolden v. Watt, 290 Ark. 343, 719 S.W.2d 428 (1986). Here, the tax on "hospitality" items is a special tax, and all special taxes other than those authorized in the mixed drink act are prohibited. Even if there were any doubt in the language of the statute, we would resolve it against the City because any doubt regarding the imposition of a tax should be resolved in favor of the taxpayer and against the taxing authority. Dunhall Pharmaceuticals, Inc. v. State, 295 Ark. 483, 749 S.W.2d 666 (1988). | Any doubt regarding imposition of tax should be resolved in favor of taxpayer and against taxing authority. | Should any doubt regarding imposition of tax be resolved in favor of a taxpayer and against the taxing authority? | 044879.docx | LEGALEASE-00132019-LEGALEASE-00132020 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14431 | Centerre Bank of Crane v. Dir. of Revenue, 744 S.W.2d 754 | 371+2001 | The latter argument is also unpersuasive. A forfeiture sanction is not the sine qua non of a franchise tax.It is the manner of operation which determines the nature of a tax, not the sanctions imposed for failure to pay it. | It is manner of operation which determines nature of tax, not sanctions imposed for failure to pay it. | Do sanctions imposed for failure to pay the tax determine the nature of a tax? | 044912.docx | LEGALEASE-00131907-LEGALEASE-00131908 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 14432 | Mills v. Cty. of Trinity, 108 Cal. App. 3d 656 | 371+2001 | "Tax" is a term without fixed definition. The word may be construed narrowly or broadly depending on its particular context and the purpose for which the definition is to be used. See Crawford v. Herringer (1978) 85 Cal.App.3d 544, 548-551, 149 Cal.Rptr. 578; City of Glendale v. Trondsen (1957) 48 Cal.2d 93, 99-100, 308 P.2d 1.) In its broadest sense, a tax includes all charges upon persons or property for the support of government or for public purposes. (City of Madera v. Black (1919) 181 Cal. 306, 310-311, 184 P. 397; Webster's New Internat. Dict. (3d ed.1971) p. 2345.) In narrower contexts, the word has been construed to exclude charges to particular individuals which do not exceed the value of the governmental benefit conferred upon or the service rendered to the individuals (County of Fresno v. Malmstrom (1979) 94 Cal.App.3d 974, 984, 156 Cal.Rptr. 777; Crawford v. Herringer, supra 85 Cal.App.3d at p. 550, 149 Cal.Rptr. 578), and to exclude charges against particular individuals for governmental regulatory activities where the fees involved do not exceed the reasonable expense of the regulatory activities (United Business Com. v. City of San Diego (1979) 91 Cal.App.3d 156, 165, 154 Cal.Rptr. 263). | In its broadest sense, a "tax" includes all charges upon persons or property for support of government or for public purposes. | "What does ""tax"" include in its broadest sense?" | 044942.docx | LEGALEASE-00132010-LEGALEASE-00132011 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14433 | Dalton v. State Prop. & Buildings Comm'n, 304 S.W.2d 342 | 371+2001 | Section 50 of the Constitution, quoted above, declares that no contract shall be made or debt incurred by the State "unless provision be made" in the Act of the General Assembly "to levy and collect an annual tax sufficient" to pay interest upon and discharge the debt within thirty years. Sections 1 and 4 of the Act very specifically declare that the proposed contract and bonds shall be "direct obligations of the Commonwealth of Kentucky" and pledge "the full faith and credit of the Commonwealth" for the payment of the debt. But the provision for paying the debt is confined to "license, excise taxes and fees' arising from the sale and use of motor vehicles, gasoline and other motor fuels. It provides that currently and in the future these taxes and fees shall be "first set aside and used for" that purpose. Are these special taxes and fees such a tax as is contemplated by the Constitution? It may be observed in passing that this section of the Constitution is the same as " 36, Art. 2, of the previous Constitution of 1850. See McDonald v. City of Lexington, 253 Ky. 585, 69 S.W.2d 1065. Of course, motor vehicles and such taxes here made applicable to the payment of the debt were unknown when the Constitution was adopted. These taxes constitute a class separate and distinct from tangible ad valorem property taxes. They are indirect and specific taxes. See Foster & Creighton Co. v. Graham, 154 Tenn. 412, 285 S.W. 570, 47 A.L.R. 971, 975. None of them is regarded as or is in fact an "annual tax." That term is ordinarily understood to mean a direct ad valorem tax. See 43 Am.Jur., Taxation, "" 25, 26, 34, 83, 1261. "Annual tax' means one that is levied each year.' People ex rel. Ogg v. Central Ill. Public Service Co., 328 Ill. 440, 159 N.E. 797, 798. Though the registration and licenses may be collected annually, the motor fuel and sale excises are daily taxes. | Ordinarily, phrase "annual tax" means a direct ad valorem tax and a tax which is levied each year. Const. S 50. | "Does the phrase ""annual tax"" mean a direct ad valorem tax and a tax which is levied each year?" | 045048.docx | LEGALEASE-00132116-LEGALEASE-00132117 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 14434 | United States v. Pomponio, 511 F.2d 953 | 63+1(1) | Primarily, the defendants contend that the word "bribery" as used in the Travel Act is intended to mean bribery in the classic sense of the common law which was limited to the corruption of public officials in the administration of their public trust and does not extend to such conduct by private individuals. Concededly, the crime of bribery was originally limited to cases involving the corruption of those in the public service, and some statements in the limited legislative history of the Act might appear to support the position of the defendants. However, while the states and the federal government have enacted statutes dealing with the corruption of public officials, they have also extended the concept of bribery into areas of private conduct which we think appropriately fall within the ambit of the Travel Act."There can be no question but that any crime of bribery involves moral turpitude, and we discern no reason why the Congress, in using the term "bribery," intended that it be limited to the corruption of public officials. We find the answer to this contention of the defendants in United States v. Nardello, 393 U.S. 286, 292-293, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969), where a similar argument with respect to the meaning of the word "extortion" in the Act was urged upon the Court. In rejecting this argument the Court stated:"Appellees suggest, however, that Congress intended that the commonlaw meaning of extortion-corrupt acts by a public official-be retained. If Congress so intended, then s 1952 would cover extortionate acts only when the extortionist was also a public official. Not only would such a construction conflict with the congressional desire to curb the activities of organized crime rather than merely organized criminals who were also public officials, but also s 1952 imposes penalties upon any individual crossing state lines or using interstate facilities for any of the statutorily enumerated offenses. The language of the Travel Act, "whoever" crosses | The word "bribery" as used in the Travel Act is not limited to the corruption of public officials, and extended to defendant's conduct in making payments to bank officer for purpose of influencing his conduct relative to loans made to corporations owned or controlled by defendants. Penal Law N.Y.1965, S 180.00; 18 U.S.C.A. SS 215, 1952. | "Is ""bribery"" as used in the Travel Act only limited to the corruption of public officials?" | 011346.docx | LEGALEASE-00133216-LEGALEASE-00133217 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 14435 | N. J. Gendron Lumber Co. v. Great N. Homes, 8 Mass. App. Ct. 411 | 379+210 | Great Northern has asserted that Gendron, through the "Acapulco Adventure" promotion, wrongfully induced Michalski to buy from Gendron for Great Northern's account. Great Northern has not favored us in its brief with any discussion of what the elements of wrongful inducement are. There are not present in the record the elements of "commercial bribery," which is the advantage one competitor secures over fellow competitors "by his secret and corrupt dealing with employees or agents of prospective purchasers." American Distilling Co. v. Wisconsin Liquor Co., 104 F.2d 582, 585 (7th Cir. 1939). See also Model Penal Code s 224.8 (Proposed Official Draft 1962); Restatement (Second) of Agency s 312 and comment d (1958). The offense of commercial bribery has also been developed by statute, G.L. c. 271, s 39, in Massachusetts (where the Great Northern principal office was located) and N.H.Rev.Stat.Ann. s 638.7 (1974) in New Hampshire (where a Great Northern manufacturing plant was located). In each instance the pertinent statute requires the offer of a bribe to an employee with the intent that he promote the interests of the person offering the bribe over those of his employer. Cf. Freedman v. United States, 437 F.Supp. 1252, 1260 (D.C.Ga.1977); Note, Commercial Bribery: The Need for Legislation in Minnesota, 46 Minn.L.Rev. 599-600 (1962). In the instant case, Gendron attempted no clandestine bonus agreement with Michalski. Rather the "Acapulco Adventure" promotion was attended with maximum drumbeats and song, and the hoopla was disseminated to all of Gendron's customers on a to-whom-it-may-concern basis, not to any individual employee. The secretiveness and intent to suborn, which are essential elements of commercial bribery, were absent in the "Acapulco Adventure. | "Commercial bribery" is advantage one competitor secures over fellow competitor by his secret and corrupt dealing with employees or agents of prospective purchasers. M.G.L.A. c. 271 S 39. | What does the crime of commercial bribery entail? | 011432.docx | LEGALEASE-00133387-LEGALEASE-00133388 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14436 | Pramer S.C.A. v. Abaplus Int'l Corp., 76 A.D.3d 89 | 13+5 | We disagree with the dissent that the facts of this case fall within the "special facts" doctrine, which holds that absent a fiduciary relationship between parties, there is nonetheless a duty to disclose when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair (see Swersky v. Dreyer & Traub, 219 A.D.2d 321, 327, 643 N.Y.S.2d 33 [1996] ). Plaintiff sufficiently pleaded the elements of the fraudulent scheme, i.e., that Abaplus conferred a benefit on plaintiff's unfaithful employee to influence his conduct to the detriment of plaintiff. We note that the fraud cause of action based on plaintiff's bribery-related allegations arises from the common law of torts (see Sardanis v. Sumitomo Corp., 279 A.D.2d 225, 229"230, 718 N.Y.S.2d 66 [2001]; accord Niagara Mohawk Power Corp. v. Freed, 265 A.D.2d 938, 939"940, 696 N.Y.S.2d 600 [1999] [sustaining a fraud cause of action based on alleged bribery by the plaintiff's employee] ). We adhere to our prior holding in Sardanis that a private right of action is not implied under the commercial bribery provisions of the Penal Law, and the dissent does not disagree with Sardanis on this point but ignores the plain language of Sardanis that such a private right of action does exist under tort law (279 A.D.2d at 229"230, 718 N.Y.S.2d 66). | Private right of action is not implied under the commercial bribery provisions of the Penal Law. | Is a private right of action implied under the commercial bribery provisions? | Bribery - Memo #302 - C-JL.docx | ROSS-003327686-ROSS-003327687 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14437 | Sardanis v. Sumitomo Corp., 279 A.D.2d 225 | 13+5 | Commercial bribery of the nature alleged is a felony under New York law (Penal Law " 180.03), but the statute makes no mention whether a private right of action is created thereby. The test, in general, for determining whether such a right of action implicitly derives from a criminal statute depends upon satisfaction of all of the following factors: whether plaintiff is of a class for whose benefit the statute was enacted, whether recognition of such a right of action would promote the legislative purpose, and whether creation of such a right would be consistent with the legislative scheme (Sheehy v. Big Flats Community Day, 73 N.Y.2d 629, 543 N.Y.S.2d 18, 541 N.E.2d 18). | Penal Law's commercial bribery provision did not create implied private right of action. McKinney's Penal Law S 180.03. | Is a private right of action implied under the commercial bribery provisions? | 011447.docx | LEGALEASE-00133034-LEGALEASE-00133035 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14438 | Dreisbach v. Eifler, 764 S.W.2d 631 | 289+658 | This section of the Uniform Partnership Act of the Uniform Laws Annotated has been consistently applied in other jurisdictions by its plain terms. See Uniform Partnership Act (U.L.A.), Section 25. Simply put, since a partner owns no personal specific interest in any specific property or asset of the partnership, then a partner cannot assign an interest in any specific property or particular assets. Putnam v. Shoaf, Tenn.App., 620 S.W.2d 510 (1981). Thus, even if Annette was assumed to be a partner, she could not have assigned to Dreisbach and Johnson her interest in that specific real estate. Therefore, her first Deed of Assignment is unquestionably invalid. | Partner owns no personal specific interest in any specific property or asset of partnership, and thus, cannot assign any interest in a specific property or particular asset. | Do partners have personal interest in specific property belonging to the partnership? | 022086.docx | LEGALEASE-00133484-LEGALEASE-00133485 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 14439 | Home State Bank v. Vandolah, 188 Ill.App. 123 | 289+810(1) | The interest that partners have in a partnership property is not that of tenants in common, nor of joint tenancy, but is sui generis and peculiar to itself. Each partner has a joint interest in the whole, but not a separate interest in any particular part of the property. A partner cannot transfer an undivided interest in any specific article belonging to the firm. A partner may assign his interest in a partnership to a third person, but such person does not thereby, without the consent of the other partners, become a partner in the firm. Such a transfer of a partner's interest, either by voluntary act or legal process, simply entitles such person to receive such partner's share of what may remain after a settlement of the partnership affairs and the payment of all partnership debts. He takes nothing but a chose in action and the right to an accounting. He simply becomes subrogated to the rights of said partner in the winding up and settlement of the partnership estate. Morrison v. Austin State Bank, 213 Ill. 472; Sindelare v. Walker, 137 Ill. 43; Trowbridge v. Cross, 117 Ill. 109; Tafe v. Schwamb, 80 Ill. 289; Carter v. Bradley, 58 Ill. 101. The possession of partnership property by one partner is the possession for all. Brown v. Graham, 24 Ill. 628. A bill of sale of a partner's interest in a partnership being but a chose in action, possession of the property is presumed to have been delivered by the delivery of said bill of sale. Rice v. Gilbert, 173 Ill. 348. Under both the law and the facts in this case the bill of sale of said Scrogin was merely an assignment of his interest as a partner in said partnership to the Bank as collateral security for the payment of his notes and was a pledge of his interest in the partnership for that purpose, and while in this particular case the ultimate result, so far as the beneficial interests of the parties to this controversy are concerned, might not be effected by holding this transaction to be a pledge as collateral security rather than an actual sale of his interest in the partnership property, yet | One partner may assign his interest in partnership property to third person but such person does not thereby become partner in firm without consent of other partners. | Can a partner convey his property rights to a third person? | 022106.docx | LEGALEASE-00133507-LEGALEASE-00133508 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14440 | Allen v. Devon Energy Holdings, 367 S.W.3d 355 | 289+1134 | Partners in a general partnership owe each other a fiduciary duty. M.R. Champion v. Mizell, 904 S.W.2d 617, 618 (Tex.1995); Gregan, 355 S.W.3d at 227"28.Similarly, a general partner in a limited partnership owes a fiduciary duty to the limited partners because of its control over the entity. Crenshaw v. Swenson, 611 S.W.2d 886, 890 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.); Johnson v. J. Hiram Moore, Ltd., 763 S.W.2d 496, 499 (Tex.App.-Austin 1988, writ denied); McBeth v. Carpenter, 565 F.3d 171, 177 (5th Cir.2009); see also In re Harwood, 637 F.3d 615, 621 (5th Cir.2011) ("under Texas law, "the issue of control has always been the critical fact looked to by the courts' in determining whether to impose fiduciary responsibilities on individuals ...") (quoting Matter of Bennett, 989 F.2d 779, 789 (5th Cir.1993), opinion amended on reh'g, No. 91"1059, 1993 WL 268299 (5th Cir. July 15, 1993)). And we recently concluded that when a limited partner exercises control over the entity's operating affairs, he will also owe a fiduciary duty to the other limited partners. Strebel v. Wimberly, """ S.W.3d """", """", 2012 WL 112253 (Tex.App.-Houston [1st Dist.] 2012). While a limited partner does not normally owe a fiduciary duty, such a duty "spring[s] into existence when a limited partner ... wearing a different hat, exerts operating control over the affairs of the limited partnership." Id. at | A general partner in a limited partnership owes a fiduciary duty to the limited partners because of its control over the entity. | Does a general partner in a limited partnership owe a fiduciary duty to a limited partner? | 022118.docx | LEGALEASE-00133525-LEGALEASE-00133526 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14441 | Fox v. Fifth W., 153 Mont. 95 | 307A+743 | Concerning the first issue the appellant made a motion (prior to trial) to limit the argument with reference to the omission of the steel from the building and the court had ordered that no reference to such omission or alleged omission should be made without the laying of a sufficient evidentiary basis for the admission of evidence concerning such omission. Despite this preliminary order of the court the respondent's counsel in his opening statement said: "Our evidence will show by Mr. Fox that he felt that one of the retaining walls was not adequately reinforced by steel rebars. He complained about this to Mr. Calhoun; his complaints were ignored; finally they had a meeting about this and Mr. Fox will testify that Mr. Hedreen suggested burying some steel rebars. Appellant's counsel objected and moved for a mistrial, and the court sustained his objection but denied a mistrial. We find no error in the court's ruling at this early stage of the trial and note later that the respondent as well as appellant did submit evidence concerning the incident to the jury for their consideration. In addition we note that the court's pre-trial order restricting counsel on an evidentiary point that went to the issue of the entire case was itself error. | Court's pretrial order restricting argument with reference to alleged omission, which went to issue of entire case, was error. | Is a court's pre-trial order restricting counsel on an evidentiary point that went to the issue of the entire case itself an error? | Pretrial Procedure - Memo # 1832 - C - KS.docx | ROSS-003287275-ROSS-003287276 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 14442 | Rogers v. Rausa, 871 So. 2d 748 | 307A+750 | "If a claim or issue is omitted from the [pre-trial] order, it is waived, even if it appeared in the complaint." Elvis Presley Enterprises, Inc. v. Capece, 141 F.3d 188, 206 (5th Cir.1998). | If a claim or issue is omitted from the pretrial order, it is waived, even if it appeared in the complaint. | Is it a waiver if a claim or issue is omitted from the pretrial order even if it appeared in the complaint? | 027101.docx | LEGALEASE-00133241-LEGALEASE-00133242 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 14443 | Am. Nat. Rent-A-Car v. McNally, 8 Ariz. App. 208 | 307A+747.1 | We feel compelled to note that proper inquiry at the pretrial conference and a proper pretrial order setting forth the issues to be litigated would probably have made this appeal unnecessary. When a pretrial is held, existing rules require entry of a pretrial order, Rule VI(c) (as amended), Uniform Rules of Practice of the Superior Court, 17 A.R.S., which may be dispensed with only for good reason. See, e.g., Long v. Arizona Portland Cement Company, 2 Ariz.App. 332, 408 P.2d 852 (1965). | Pretrial order may be dispensed with only for good reason. 17 A.R.S. Uniform Rules of Practice of the Superior Court, rule VI(c). | Can a pretrial order be dispensed with only for a good reason? | 027110.docx | LEGALEASE-00133223-LEGALEASE-00133225 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 14444 | Barrow v. Abramowicz, 931 A.2d 424 | 307A+749.1 | We next consider whether the Barrows properly reserved their right to introduce Dr. Krasnow's pretrial deposition testimony at trial. The Barrows posit that, on February 1, 2006, Dr. Abramowicz's counsel signed, and the trial judge approved, a pretrial order in which the Barrows expressly reserved the right to call Dr. Abramowicz's witnesses, including Dr. Krasnow. "Under Superior Court Civil Rule 16, the trial judge enters a trial scheduling order which governs pretrial conferences, scheduling, and trial management." Rule 16 "mandates that parties follow the trial judge's scheduling order," thus assuring that the parties conduct predictable discovery. "Parties must be mindful that scheduling orders are not merely guidelines but have full force and effect as any other order of the [Superior] Court." The Barrows claim that the trial judge disregarded the agreed upon terms of the pretrial order, and, thus, abused his discretion when he prohibited them from introducing Dr. Krasnow's pretrial deposition testimony. | Scheduling orders are not merely guidelines but have full force and effect as any other order of the superior court. Superior Court Civil Rule 16. | Do scheduling orders have full force and effect as any other order of the superior court? | 027116.docx | LEGALEASE-00133068-LEGALEASE-00133071 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14445 | Oller v. Kincheloe's, 235 Kan. 440 | 307A+749.1 | The Kansas Code of Civil Procedure contemplates utilization of the rules for discovery and a pretrial conference to formulate the ultimate issues of both fact and law to be determined in the case. See K.S.A. 60"216 and Supreme Court Rule No. 140. Under the Kansas procedure, a pretrial order made pursuant to K.S.A. 60"216 supersedes the pleadings and controls the subsequent course of an action unless modified by the court to prevent manifest injustice. A pretrial order which specifies the issues to be tried supersedes and replaces the pleadings. Herrell v. Maddux, 217 Kan. 192, 535 P.2d 935 (1975). | A pretrial order which specifies the issues to be tried supersedes and replaces the pleadings. Rules Civ.Proc., K.S.A. 60-216. | Does a pretrial order that specifies the issues to be tried supersede and replace the pleadings? | 027161.docx | LEGALEASE-00133117-LEGALEASE-00133118 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 14446 | Cade v. Mid-City Hosp. Corp., 45 Cal. App. 3d 589 | 307A+717.1 | It is elementary that the trial judge's discretion in granting or denying a continuance in a particular case is broad, and his action either way is usually upheld on appeal, unless it appears that a denial of the continuance motion resulted in the denial of a full and fair hearing. (4 Witkin, Cal.Procedure (2d ed. 1971), "Trial," s 7, p. 2865.) Unavailability of a witness, or the absence of evidence, may be proper grounds for a continuance. (4 Witkin, Supra, s 13, p. 2870.) | Unavailability of witness or absence of evidence may be proper grounds for continuance. | May the unavailability of a witness or absence of evidence be proper grounds for continuance? | 027187.docx | LEGALEASE-00132976-LEGALEASE-00132977 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14447 | Contreras By & Through Contreras v. Carbon Cty. Sch. Dist. No. 1, 843 P.2d 589 | 30+3311 | We have stated that a trial court has discretion to waive the requirements contained in its pretrial orders. Oukrop v. Wasserburger, 755 P.2d 233, 236-38 (Wyo.1988); Caldwell v. Yamaha Motor Co., Ltd., 648 P.2d 519, 527 (Wyo.1982); Ford Motor Co. v. Kuhbacher, 518 P.2d 1255, 1260 (Wyo.1974). We will not overturn the trial court's ruling excusing a failure to observe its pretrial order unless there has been an abuse of discretion. Kuhbacher, 518 P.2d at 1260. We hold that there was no abuse of discretion in this instance. The trial court could choose to hear, in the interest of judicial economy, an untimely dispositive motion. While it is a better practice for the court to adhere to its scheduling orders, we cannot say that appellants were unfairly prejudiced or that a manifest injustice was committed by the trial court's consideration of appellees' motion for partial summary judgment. Kuhbacher, 518 P.2d at 1260. | Trial court has discretion to waive requirements contained in its pretrial orders, and ruling which excuses failure to observe pretrial order will not be overturned on appeal unless there has been abuse of discretion. | Does the trial court have the discretion to waive requirements contained in its pretrial orders? | Pretrial Procedure - Memo # 2148 - C - SN.docx | ROSS-003301597-ROSS-003301598 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 14448 | Esmieu v. Schrag, 92 Wash. 2d 535 | 307A+749.1 | The rule is based upon Rule 16 of the Federal Rules of Civil Procedure. State rules based upon Rule 16 have generally been construed in a uniform manner. Annot., Binding Effect of Court's Order Entered After Pretrial Conference, 22 A.L.R.2d 599 (1952). The general rule is that new theories will not be entertained after the parties have entered into pretrial conference and a pretrial order has been issued as a result. Miller v. Brazel, 300 F.2d 283 (10th Cir. 1962); Wiggins v. Philadelphia, 331 F.2d 521 (3d Cir. 1964). The parties are bound by the facts agreed to and established by the order. United States v. Sommers, 351 F.2d 354 (10th Cir. 1965). | Parties are bound by the facts agreed to at pretrial conference and established by the pretrial order. CR 16(b). | Are parties bound by the facts agreed to at the pretrial conference and established by the pretrial order? | 027713.docx | LEGALEASE-00132764-LEGALEASE-00132765 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 14449 | Beverly Enterprises-Arkansas v. Hillier, 341 Ark. 1 | 307A+501 | Here, Hillier claims that the circuit court's order granting nonsuit and dismissing the claim without prejudice is not a final order or an adjudication on the merits because the merits of the cause are not finally determined. See Melton v. St. Louis I.M. & S. Ry. Co., 99 Ark. 433, 436, 139 S.W. 289, 291 (1911). We agree. First, contrary to Beverly's assertion, a plaintiff has an absolute right, pursuant to Ark. R. Civ. P. 41(a), to voluntarily nonsuit a claim without prejudice. Whetstone v. Chadduck, 316 Ark. 330, 332, 871 S.W.2d 583, 584 (1994). Rule 41(a) provides that "an action may be dismissed without prejudice to a future action by the plaintiff before the final submission of the case to the jury, or to the court ... [and] such a dismissal is a matter of right." We have consistently upheld this provision. See Whetstone, 316 Ark. at 332, 871 S.W.2d at 584. Second, we have expressly held that where a plaintiff has exercised his absolute right to voluntarily dismiss his claim, the first dismissal is without prejudice and is not an adjudication on the merits. See Lemon v. Laws, 305 Ark. 143, 145, 806 S.W.2d 1, 2 (1991). Consequently, the order granting nonsuit is not a final order for purposes of appeal. | Plaintiff has an absolute right to voluntarily nonsuit a claim without prejudice. Rules Civ.Proc., Rule 41(a). | Does a plaintiff have an absolute right to voluntarily nonsuit a claim without prejudice? | Pretrial Procedure - Memo # 2579 - C - ES.docx | ROSS-003300133-ROSS-003300134 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14450 | Stearns Bank N.A. v. Palmer, 182 S.W.3d 624 | 307A+517.1 | Under Rule 67.02(a), a plaintiff's voluntary dismissal filed before the jury panel is sworn for voir dire is operative without order of the court. A dismissal with prejudice "bars the assertion of the same cause of action or claim against the same party." Rule 67.01. Counterclaiming and cross-claiming parties have the same right to dispose of their cases without court order by voluntary dismissals with prejudice. See Rule 67.04. Palmer suggests that the joint dismissal in this case was covered by Rule 67.05, which provides that the dismissal of a plaintiff's action does not operate to dismiss previously filed counterclaims, and that, therefore, the court still had jurisdiction over his counterclaims. But that rule only applies when the plaintiff's case is dismissed and the other parties' claims are not. Here, the joint dismissal was filed by both parties before a jury panel was sworn for voir dire and expressly applied to the dismissal with prejudice of all the claims, counterclaims and cross-claims of the parties. "Once all such claims have been so dismissed, the case is over and nothing remains before the court upon which it can act." Samland v. J. White Transportation Company, Inc., 675 S.W.2d 92, 97 (Mo.App. W.D.1984). The court cannot even reinstate the case at the dismissing party's request. See id. Stated another way, the trial court loses jurisdiction on the date a voluntary dismissal is filed. Freeman v. Leader National Insurance Co., 58 S.W.3d 590, 595"96 (Mo.App. E.D.2001). | The trial court loses jurisdiction on the date a voluntary dismissal is filed. V.A.M.R. 67.02(a). | Does the trial court lose jurisdiction on the date a voluntary dismissal is filed? | 028204.docx | LEGALEASE-00133142-LEGALEASE-00133143 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 14451 | Hyman Farm Serv. v. Earth Oil & Gas Co., 920 S.W.2d 452 | 307A+517.1 | Appellants' assertion that venue was conclusively established in Castro County is based upon an erroneous application of case law to the facts at hand. While it is true that once a venue determination has been made, that determination is conclusive if the party nonsuits and subsequently refiles the same cause of action against the same parties, Hendrick Medical Center v. Howell, 690 S.W.2d 42, 44 (Tex.App."Dallas 1985, no writ), it is not true that merely filing a suit conclusively establishes venue. Appellants do not contend, and the record does not show, that a venue determination was ever made in the first suit filed in Castro County. Therefore, we conclude venue was not conclusively fixed by the first filing, and address the remaining assertion that no part of the cause of action accrued in Lamb County. | Venue was not conclusively fixed by first filing, where venue determination was not made in first suit. | "Is a venue not conclusively fixed by first filing, where venue determination was not made in the first suit?" | 028208.docx | LEGALEASE-00133182-LEGALEASE-00133183 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14452 | Sec. Pac. Hous. Servs. v. Friddle, 315 Ark. 178 | 307A+517.1 | It is a well-settled rule of law that a dismissal with prejudice is as conclusive of the rights of the parties as if there were an adverse judgment as to the plaintiff after a trial. Hicks v. Allstate Ins. Co., 304 Ark. 101, 799 S.W.2d 809 (1990). It is also a well-settled rule of law that a voluntary dismissal does not affect, but leaves for adjudication other claims such as counterclaims and cross-claims. Lemon v. Laws, 305 Ark. 143, 806 S.W.2d 1 (1991); Zurich General Accident & Liability Ins. Co. v. Smith, 209 Ark. 135, 189 S.W.2d 718 (1945). Thus, it is of no consequence whether the answer and counterclaim were filed timely as it is clear that appellant's dismissal of the complaint with prejudice constituted a final adjudication on the merits at its own request. Any errors occurring prior to the dismissal with prejudice were therefore resolved against appellant at its own request. It is fundamental that, pursuant to the doctrine of invited error, an appellant cannot request a ruling by a trial court and then complain of that ruling on appeal. See Schmidt v. McIlroy Bank & Trust, 306 Ark. 28, 811 S.W.2d 281 (1991). | Dismissal with prejudice is as conclusive of rights of parties as if there were adverse judgment after trial. | Is dismissal with prejudice as conclusive of rights of parties as if there were an adverse judgment after the trial? | 028216.docx | LEGALEASE-00133273-LEGALEASE-00133274 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14453 | Wright v. Eddinger, 320 Ark. 151 | 307A+506.1 | Even assuming the case was submitted, we hold the trial court did not abuse its discretion in granting the voluntary nonsuit. After final submission, the motion for voluntary nonsuit is within the discretion of the trial court. Haller v. Haller, 234 Ark. 984, 356 S.W.2d 9 (1962) (interpreting Ark.Stat.Ann. " 27"1405 (superseded)); Fortuna v. Achor, 254 Ark. 1035, 497 S.W.2d 251 (1973); Raymond v. Young, 211 Ark. 577, 201 S.W.2d 583 (1947); D. Newbern, Arkansas Civil Prac. & Proc., "" 22"2 and 22"3 (2d. ed. 1993). Although these decisions were based on superseded statutes, we have recognized that the superseded statutes were virtually identical to Rule 41(a) and the cases construing Rule 41(a) have interpreted it the same way the superseded statute was interpreted. Duty v. Watkins, supra; Lemon v. Laws, supra; D. Newbern, Arkansas Civil Prac. & Proc., "" 22"2 and 22"3 (2d. ed. 1993). | After final submission of case, motion for voluntary nonsuit is within discretion of trial court. Rules Civ.Proc., Rule 41(a). | Is it within a court's discretion to permit a nonsuit after final submission of case? | 028397.docx | LEGALEASE-00132894-LEGALEASE-00132895 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 14454 | Ross v. Wallack, 188 So. 3d 597 | 307A+486 | Here, the circuit court did not ignore the fact that the admissions were deemed admitted by operation of law and, therefore, did not err. As seen in the record, the motion for summary judgment included, as an exhibit, the certificate of service sent with the requests for admission as evidence that Dr. Wallack did send the requests for admission to Virginia. While Rule 36(b) allows admissions to be withdrawn in some instances, the proper procedural mechanism to accomplish that is to file a motion asking that the admissions be withdrawn. Because Virginia never filed a motion to amend or withdraw, the circuit court could not exercise its discretion to allow the admissions to be withdrawn. | The proper procedural mechanism to accomplish the withdrawal of admissions that have been deemed admitted by operation of law is to file a motion asking that the admissions be withdrawn. Rules Civ.Proc., Rule 36(b). | What is the proper procedural mechanism to accomplish the withdrawal of admissions? | 028570.docx | LEGALEASE-00132714-LEGALEASE-00132715 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 14455 | Bass v. Durham Cty. Hosp. Corp., 158 N.C. App. 217 | 307A+517.1 | The effect of a Rule 41(a) dismissal is to leave the plaintiff exactly as she was before the action was commenced. Defendant is thus "free from the taint of wrongful accusation or legal detriment," Augur v. Augur, 356 N.C. 582, 590, 573 S.E.2d 125, 131 (2002), which might have arisen as a result of failing to attach the Rule 9(j) certification to the original complaint. | The effect of a voluntary dismissal is to leave the plaintiff exactly as she was before the action was commenced. Rules Civ.Proc., Rule 41(a), West's N.C.G.S.A. S 1A-1. | Is the effect of a voluntary dismissal to leave the plaintiff exactly as she was before the action was commenced? | Pretrial Procedure - Memo # 2807 - C - BP.docx | ROSS-003315062-ROSS-003315063 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |
| 14456 | Trent v. Franco, 253 Ga. App. 104 | 307A+517.1 | The trial court granted Franco's motion to dismiss Trent's renewal action because of the alleged failure to effect proper service of the original complaint on her mother as required by OCGA " 9"11"4(d)(3). In that regard,[t]he renewal statute is remedial in nature; it is construed liberally to allow renewal where a suit is disposed of on any ground not affecting its merits. The "privilege" of dismissal and renewal does not apply to cases decided on their merits or to void cases, but does allow renewal if the previous action was merely voidable. The original suit is void if service was never perfected, since the filing of a complaint without perfecting service does not constitute a pending suit. A suit is also void and incapable of renewal under OCGA " 9"2"61(a) if there has been a judicial determination that dismissal is authorized. However, unless and until the trial court enters an order dismissing a valid action, it is merely voidable and not void | The renewal statute is remedial in nature, and it is construed liberally to allow renewal where a suit is disposed of on any ground not affecting its merits. O.C.G.A. S 9-2-61. | Is the renewal statute remedial in nature? | 028621.docx | LEGALEASE-00133012-LEGALEASE-00133013 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14457 | Lugue v. Hercules, 12 F. Supp. 2d 1351 | 386+14 | Hercules contends that Plaintiffs have failed to establish any damages resulting from Hercules' entry onto the land. Hercules further contends that the failure to prove damages prevents Plaintiffs from bringing a claim for trespass. However, such contentions are not in accord with Georgia law. Trespass is broadly defined under Georgia law: "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." O.C.G.A. " 51"9"1 (1982). Any unlawful interference with property, regardless of actual injury, is considered a trespass. Dowdell v. Cherry, 209 Ga. 849, 849, 76 S.E.2d 499, 500 (1953). It is well established that no proof of actual injury to the land or a diminution in the property's value is required to maintain an action for trespass. Marshall v. Georgia Power Co., 134 Ga.App. 479, 480, 214 S.E.2d 728, 730 (1975); Batson v. Higginbothem, 7 Ga.App. 835, 838, 68 S.E. 455 (1910); Pausch v. Guerrard, 67 Ga. 319, 323 (1881). Nominal damages can be awarded when the amount of actual injury is unclear. Morgan v. Black, 86 Ga.App. 775, 777"78, 72 S.E.2d 558, 559"60; Batson, 7 Ga.App. at 838, 68 S.E. 455 (citing Swift v. Broyles, 115 Ga. 885, 42 S.E. 277 (1902)). | Under Georgia law, any unlawful interference with property, regardless of actual injury, is considered a trespass. O.C.G.A. S 51-9-1. | Can any unlawful interference with property regardless of actual injury be considered as a trespass? | 047328.docx | LEGALEASE-00133385-LEGALEASE-00133386 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14458 | Case Poythress v. J. P. Stevens & Co., 54 N.C. App. 376 | 413+1 | We are sympathetic with plaintiff's argument that had she filed her claim in 1965 when the medical and legal implications of the disease were in a formative stage, it is unlikely that she would have recovered. Nor are we unmindful of the fact that those who then worked in the cotton mills were at times subjected to intolerable conditions and were afforded little, if any, education concerning their rights to compensation for occupational disease, particularly byssinosis. However, the Workers' Compensation Act has never been construed to guarantee recovery. It merely affords the right to a claim for recovery. Hatchett v. Hitchcock Corp., 240 N.C. 591, 83 S.E.2d 539 (1954). Nor are we now willing to hold, in retrospect, that it was necessary to inform plaintiff not only of the nature and work-related cause of her disease, but that she had a claim for compensation under the Act as it was written in 1963. Under the 1963 version of the Act, plaintiff had one year to file her claim. This she failed to do. For this reason, we must affirm the dismissal of her claim as being time-barred. | Workers' Compensation Act has never been construed to guarantee recovery; it merely affords right to claim for recovery. | Does the Workers' Compensation Act guarantee recovery? | Workers Compensation - Memo #138 ANC.docx | LEGALEASE-00023305-LEGALEASE-00023306 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14459 | Cunning v. City of Hopkins, 258 Minn. 306 | 413+1 | The prank that was played with the raincoat will not and cannot be stamped as deliberate, serious, or willful misconduct or willful intention to injure anyone. The statutory exceptions to be found in ss 176.011, subd. 16, and 176.021, subd. 1, simply do not apply in the instant case. The history of the legislation resulting in our Workmen's Compensation Act, and the beneficial and humane purposes intended by the statute, call for a liberal construction of this law. Clearly, the legislature never intended that the injured employee should be met in his application for compensation with stringent and technical rules and regulations. It was the legislative intent from the beginning that he should receive his just deserts without the burden of expensive litigation. The amount of recovery which the act prescribes may well be more limited than under common law. The legislative policy implicit in the adoption of the act was that, though limited, the recovery would be more certain, speedy, and definite and the protection to the worker against the ravages of injury, more inclusive. The right to compensation does not arise out of tort, but exists by reason of the Workmen's Compensation Act. Kaletha v. Hall Merc. Co., 157 Minn. 290, 294, 196 N.W. 261, 262. | The right to workmen's compensation does not arise out of tort, but exists by reason of the Workmen's Compensation Act. M.S.A. SS 176.011, subd. 16, 176.021, subd. 1. | "Does the right to workmens compensation arise out of tort, or does it exist by reason of the Workmens Compensation Act?" | Workers Compensation - Memo #200 ANC.docx | LEGALEASE-00023361-LEGALEASE-00023362 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |
| 14460 | United States v. Bankers Ins. Co., 245 F.3d 315 | 25T+151 | In addressing this contention, we first observe that the NFIA does not preclude mandatory arbitration; it only precludes arbitration from being binding on the Government. Mandatory arbitration, as a prerequisite to initiation of litigation, and binding arbitration, where the parties must accept an award or decision of the arbitrator, are two different things. Although non-binding arbitration may turn out to be a futile exercise"because the FIA can ultimately reject an arbitrator's decision"this fact does not, as a legal matter, preclude a non-binding arbitration agreement from being enforced. See Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1209 (9th Cir.1998) (holding non-binding arbitration clause to be enforceable); AMF Inc. v. Brunswick Corp., 621 F.Supp. 456, 461 (E.D.N.Y.1985) (court could compel the parties to submit their dispute to third party for an advisory non-binding opinion under the FAA). The Government, however, contests this point also, asserting that non-binding arbitration unlikely or unable to resolve the issue fully is, by its very nature, unenforceable. See Brennan v. King, 139 F.3d 258, 265 (1st Cir.1998) (refusing to enforce arbitration clause because arbitrator lacked authority to resolve "substantive" issues dividing the parties and because, even if the arbitrator were able to resolve the issue in the employee's favor, the employer could reject the decision). | Mandatory arbitration, as a prerequisite to initiation of litigation, and binding arbitration, in which the parties must accept an award or decision of the arbitrator, are two different things, and although non-binding arbitration may turn out to be a futile exercise, this fact does not, as a legal matter, preclude a non-binding arbitration agreement from being enforced. | Is it possible to enforce a non-binding arbitration clause? | 007611.docx | LEGALEASE-00133664-LEGALEASE-00133665 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 14461 | Rhynehardt v. Sears Logistics Servs., 103 Ohio App. 3d 327 | 307A+517.1 | Civ.R. 41(A)(1)(a) allows a plaintiff to voluntarily dismiss its action without order of the court "by filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by the defendant." Unless otherwise stated in the notice of dismissal, a Civ.R. 41(A)(1) voluntary dismissal is without prejudice. | Unless otherwise stated in notice of dismissal, a voluntary dismissal is without prejudice. Rules Civ.Proc., Rule 41(A)(1). | "Unless otherwise stated in the notice of dismissal, is a voluntary dismissal without prejudice?" | Pretrial Procedure - Memo # 2614 - C - KA.docx | ROSS-003305099-ROSS-003305100 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 14462 | United States v. Forfari, 268 F.2d 29 | 34+4 | Activities such as the Mare Island Cafeteria System are characterized as non-appropriated fund instrumentalities of the United States. It is settled law that such activities are integral parts of the Government's military services. Standard Oil Co. of California v. Johnson, 1942, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611, held that Army post exchanges were arms of the federal government and as integral parts of the War Department partook of its immunity under the federal Constitution and statutes. Nimro v. Davis, 1953, 92 U.S.App.D.C. 293, 204 F.2d 734, certiorari denied 346 U.S. 901, 74 S.Ct. 229, 98 L.Ed. 401, held that Naval food services established under NCPI 66 serve the same purpose as Army post exchanges, perform a governmental function, and are arms of the United States. | Nonappropriated fund instrumentalities of the Army, Air Force, Navy and Marine Corps are integral parts of United States military services. 5 U.S.C.A. SS 150k, 150k-1; West's Ann.Cal.Labor Code, S 3601. | Are non-appropriated fund instrumentalities of the United States integral parts of United States military services? | 008388.docx | LEGALEASE-00133760-LEGALEASE-00133761 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14463 | L. B. Smith v. Bankers Tr. Co. of W. N. Y., 80 A.D.2d 496 | 8.30E+211 | We adopt the holding of the United States District Court for the District of Columbia in Dynalectron Corp. v. Union First Nat. Bank, 488 F.Supp. 868, 869 to the effect that:The virgule is normally used to separate alternatives. Thus, a bank exercising reasonable care and acting in good faith would necessarily interpret a check drawn to two payees whose names are separated by a virgule as being drawn payable to the payees in the alternative.And that:A check drawn payable to two payees, A and B, whose names are separated by a virgule is a check payable to the payees in the alternative. Such a check is functionally identical to one drawn payable to two payees in the manner "A or B". Our decision gives the virgule its commonly accepted meaning and is consistent not only with Dynalectron but with a recent decision by the Court of Appeals of Georgia in Ryland Group, Inc. v. Gwinnett County Bank, 151 Ga.App. 148, 259 S.E.2d 152 and with reported cases in lower courts in New York (Miron Rapid Mix Concrete Corp. v. BankHapoalim, B. M., 105 Misc.2d 630, 432 N.Y.S.2d 776; Brown Strober Bldg. Supply Corp. v. Living House, Inc., (Dist.Ct.) 107 Misc.2d 294, 433 N.Y.S.2d 724). | A check drawn payable to two payees, A and B, whose names are separated by a virgule is a check payable to the payees in the alternative; such a check is functionally identical to one drawn payable to two payees in the manner "A or B." Uniform Commercial Code, S 3-116. | Does checks which listed payees should be separated by a virgule and payable to the payees in the alternative? | 010206.docx | LEGALEASE-00133887-LEGALEASE-00133888 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 14464 | Alvarado v. Hyundai Motor Co., 885 S.W.2d 167 | 307A+517.1 | Upon timely motion, the nonsuit is effective at the moment it is filed and effects an immediate dismissal of the entire lawsuit. Merrill Lynch Relocation Management, Inc. v. Powell, 824 S.W.2d 804, 806 (Tex.App. Houston 14th Dist. 1992, orig. proceeding. Consequently, the trial judge merely performs a ministerial act in granting the nonsuit.8 Shadowbrook Apartments v. Abu Ahmad, 783 S.W.2d 210, 211 (Tex.1990); Greenberg v. Brookshire, 640 S.W.2d 870, 872 (Tex.1982). The taking of a nonsuit does not prejudice the parties from seeking the same relief in a subsequent suit.Ash Pole v. Millard, 778 S.W.2d 169, 171 (Tex.App. Houston 1st Dist. 1989, orig. proceeding); see Aetna Casualty & Surety Co. v. Specia, 849 S.W.2d 805, 806 (Tex.1993) (subject to certain conditions, plaintiff taking nonsuit not precluded from filing subsequent suit seeking same relief); O Brien v. Stanzel, 603 S.W.2d 826, 828 (right to nonsuit without prejudice to refiling absolute when motion timely). The nonsuit or dismissal is not an adjudication of the rights of the parties but merely places them in the position they were in as if suit had never been filed. Crofts v. Court of Civil Appeals, 362 S.W.2d 101, 103 (Tex.1962); Ash Pole v. Millard, 778 S.W.2d 169, 171 (Tex.App. Houston1st Dist. 1989, orig. proceeding). Moreover, once the case is dismissed voluntarily, no further action may be had in that case, and any further action must be taken by instituting a suit de novo unless the trial court grants a motion to reinstate.10 Id.; see Missouri Pacific R.R. Co. v. Whitaker, 815 S.W.2d 348, 349 n. 2 (Tex.App. Tyler 1991, orig. proceeding) (trial court retains plenary power to entertain motion for reinstatement following nonsuit). | Taking of nonsuit does not prejudice parties from seeking same relief in subsequent suit. Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | Does taking of nonsuit prejudice parties from seeking the same relief in a subsequent suit? | 028329.docx | LEGALEASE-00133713-LEGALEASE-00133714 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 14465 | Hugh O'Connor v. J. Robert Autenreith, 343 So. 2d 1090 | 308+111(1) | C.C. Art. 2997 provides that an agent's power must be express and special for a number of purposes including the power to compromise. Surely it must also be express and special for the power to grant a gratuitous remission of a debt. | Agent's power, which must be express and special for number of purposes including power to compromise, must also be express and special for power to grant gratuitous remission of debt. LSA-C.C. art. 2997. | Should an agents powers be express and special to effect compromise? | 042133.docx | LEGALEASE-00133736-LEGALEASE-00133737 | Order, SA | 0.12 | 1 | 0 | 0 | 1 | |
| 14466 | State v. Burch, 740 S.W.2d 293 | 210+572(2) | As to defendant's contention of improper use of vague, indefinite and generic language, we note first of all, that the indictment substantially follows the language of MACH"CR 20.08.2. Rule 23.01(b) sets forth the requirements for the content of an indictment or information. Compliance with the forms approved by the Supreme Court satisfies these requirements. Rule 23.01(e); Pelham v. State, 713 S.W.2d 614, 617 (Mo.App.1986); State v. Mitchell, 689 S.W.2d 143, 145 (Mo.App.1985). Additionally, it is generally permissible and sufficient for an indictment to charge the offense in the language of the statute, provided the statute sets forth all the constituent elements of the offense. State v. Mitchell, 704 S.W.2d 280, 287 (Mo.App.1986). An exception to this general rule is found where a statute defines the offense in generic terms and does not individuate the offense with sufficient particularity as to notify the accused of what he is to defend against. Id. State v. Voyles, 691 S.W.2d 452 (Mo.App.1985), the case principally relied upon by defendant, concerns a charge of stealing by deceit. As noted in the principal opinion in Voyles, "it is clear that to the extent " 570.030 denounces stealing by deceit, it uses generic terms to define the offense." Id. at 455. Obviously, an indictment which merely charges a defendant with stealing by deceit without specifying the particulars of the alleged false representation would fail to advise the defendant of what he must defend against. Section 566.060.3 does not suffer from a comparable lack of specificity. It proscribes as the crime of sodomy "deviate sexual intercourse with another person who is less than 14 years old." Deviate sexual intercourse is "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." " 566.010.1(2). The essence of the offense is the sexual act with a person under the age of 14. The specific combination of body parts through which the sexual act is | It is generally permissible and sufficient for indictment to charge offense in language of statute, provided statute sets forth all constituent elements of offense. | Does an indictment require all elements of the offense alleged? | 043068.docx | LEGALEASE-00133812-LEGALEASE-00133813 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14467 | Bd. of Ed. of Union Free Sch. Dist. No. 3 of Town of Oyster Bay, Nassau Cty. v. Allen, 6 A.D.2d 316 | 371+2001 | The theory of taxation is that it supports the public welfare, as that may from time to time and from place to place, be conceived to be. It is usually assumed that the tax levy meets minimal constitutional safeguards against discrimination if the people who pay the tax are treated alike, and the same approximate standard of extraction is followed based, for example, on the amount of income a man receives, or the value of real property he owns in the tax district. These standards of extraction may not be exactly just or perfectly fair, but they must be put up with. That one man may in the general interest get more benefits from public tax money than another, has never been regarded as a good reason why the other should not pay his share of the tax. The general services of the State are not bought, item by item, merely by those who use them. Public services are thought to be generally important enough to be provided by the whole community for those who need them. | Taxation is to support the public welfare, as that may from time to time and from place to place be conceived. | "Is the theory of taxation, as that may from time to time and from place to place be conceived, to support public welfare? " | Taxation - Memo # 390 - C - KBM.docx | LEGALEASE-00023742- LEGALEASE-00023743 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14468 | Niblack v. Adler, 209 Ill. App. 156 | 8.30E+266 | It is conceded that whether the note in question could be deemed a renewal of a former note depends on the intention of the parties. While one of the defendants testified that it was a renewal yet, unless the facts and circumstances surrounding the transaction would so import, such testimony merely amounted to his conclusion. | Whether promissory note would be deemed renewal of former note, depended on intention of the parties. | Does the question whether the note could be deemed a renewal of a former note depends on the intention of the parties? | 009466.docx | LEGALEASE-00134258- LEGALEASE-00134259 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 14469 | In re Dunneback's Estate, 302 Mich. 73 | 83E+679 | The fact that the original notes were surrendered is not the test for payment.A renewal note does not operate as payment of the original debt in the absence of a novation or express agreement of the parties. See Molsons Bank v. Berman, 224 Mich. 606, 195 N.W. 75, 35 A.L.R. 1289, and ceses cited therein. | A renewal note does not operate as "payment" of the original debt in absence of a novation or express agreement of the parties. | Does the renewal of an original note operate as payment? | 009474.docx | LEGALEASE-00134396- LEGALEASE-00134397 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 14470 | Ne. Factor & Disc. Co. v. Mortg. Investments of Ga., 107 Ga. App. 705 | 83E+405 | We need not here determine whether the form of transfer used is an assignment, for even if it is "[t]he general rule is that a writing on the back of a bill or note with the intention of transferring title is an indorsement, although it is in terms an assignment." 10 C.J.S. Bills & Notes " 208, p. 695; Beutel's Brannan, Negotiable Instrument Law, " 31, p. 601. Of course, if the transfer had not been entered on the note itself we should be confronted with a different situation. | Writing in back of a bill or note with the intention of transferring title is an indorsement even though it is in terms an assignment. | Is a writing on the back of a bill or a note an indorsement? | Bills and Notes - Memo 287- V - IS.docx | ROSS-003290010-ROSS-003290011 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |
| 14471 | United States v. Kemp, 500 F.3d 257 | 372+1021 | Holck and Umbrell arrive at their conclusion that this requirement was elided by the instructions only by reading certain sections of the jury charge out of context, which "is not the way we review jury instructions, because a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." United States v. Park, 421 U.S. 658, 674, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). Read fairly, the instructions proffered by the District Court repeatedly emphasized the critical quid pro quo, explaining that "[t]o establish such bribery the government must prove beyond a reasonable doubt that there was a quid pro quo, ... that the benefit was offered in exchange for the official act." (App. at 9642.) The Court continued, "where there is a stream of benefits given by a person to favor a public official, ... it need not be shown that any specific benefit was given in exchange for a specific official act. If you find beyond a reasonable doubt that a person gave an official a stream of benefits in implicit exchange for one or more official acts, you may conclude that a bribery has occurred." (App. at 9643.) Finally, the Court explained, "[t]o find the giver of a benefit guilty, you must find that the giver had a specific intent to give ... something of value in exchange for an official act, that is, that the accused had the specific intent to engage in such a quid pro quo exchange." (App. at 9643"44.) This instruction correctly described the law of bribery, and left no danger that the jury would convict upon merely finding that Holck and Umbrell provided benefits to Kemp in a general attempt to curry favor or build goodwill. | District Court did not misstate the law when instructing jury on the bribery theory of honest services wire fraud; Court repeatedly emphasized the quid pro quo element, explained that it was not necessary to show that any specific benefit was given in exchange for any specific official act, and explained that specific intent to engage in a quid pro quo exchange was required. 18 U.S.C.A. S 1346. | "Under the stream of benefits theory of bribery, does it need to be shown that any specific benefit was given in exchange for a specific official act?" | 011227.docx | LEGALEASE-00133996- LEGALEASE-00133998 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 14472 | People v. Coward, 100 A.D.2d 628 | 110+29(12) | Defendant was convicted of the crime of burglary in the first degree which requires proof of physical injury to the victim (Penal Law, " 140.30). Physical injury is defined as "impairment of physical condition or substantial pain" (Penal Law, " 10.00, subd. 9). At trial, complainant testified that the defendant punched her about the face and head with a closed fist, and that he bit her about the chest. These injuries caused bruises about her face, redness around her neck, and bleeding on her chest. She also stated that her whole body was sore, and that she had a terrible headache. A detective arriving after the incident noticed that the complainant's face was swollen, and he took her to the hospital. While in the hospital she was given "two injections and two pills with penicillin or antibiotic". | Fact that defendant was acquitted of rape and sodomy did not preclude consideration of the injuries inflicted during the alleged sexual attack for purposes of determining whether physical injury occurred to the victim for purposes of showing that defendant committed burglary in the first degree. McKinney's Penal Law SS 10.00, subd. 9, 140.30. | Does first degree burglary conviction require physical injury to the victim? | Burglary - Memo 96 - KNR.docx | ROSS-003329792-ROSS-003329794 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14473 | Comm'r of Transp. v. Shea, 47 Conn. Supp. 418 | 200+80 | An abutting owner is presumed under the law of this state, when no evidence has been offered to the contrary, as here, to own the fee of the land to the center of the highway. As to the land within the limits of South Road and Birdseye Road at the time of taking, therefore, the owners, as an abutting owner, had all rights not incompatible with the public easements to the center of the highways. Antenucci v. Hartford Roman Catholic Diocesan Corp., 142 Conn. 349, 355, 114 A.2d 216 (1955); Allen v. Mussen, 129 Conn. 151, 155, 26 A.2d 776 (1942); State v. Muolo, 119 Conn. 323, 326, 176 A. 401 (1935)." "A highway is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all of the acts necessary to keep it in repair." Peck v. Smith, 1 Conn. 103, 132 [1814]; Newton v. New York, N.H. & H.R. Co., 72 Conn. 420, 426, 44 A. 813 [1899]. The easement in the public does not comprehend any interest in the soil or give the public the legal possession of it. The right of freehold is not touched by establishing a highway. It continues in the original owner of the land in the same manner as before the highway was established, subject to the easement. Peck v. Smith, supra[, at 132]. The adjoining proprietors have a right to every use and profit which can be derived from it consistent with the easement. The soil of a highway descends to heirs and passes to grantees as an appurtenant to the land adjoining, and whenever the highway is discontinued, the adjoining proprietors hold the land discharged of the easement. Knothe v. Zinzer, 96 Conn. 709, 713, 115 A. 477 [1921]; Peck v. Smith, supra, at 146." Antenucci v. Hartford Roman Catholic Diocesan Corp., supra, at 355-56, 114 A.2d 216. | The right of freehold is not touched by establishing a highway; it continues in original owner of land in the same manner as before highway was established, subject to easement. | What happens to the right of freehold on establishment of a highway? | Highways -Memo 104 - DB.docx | ROSS-003329815-ROSS-003329816 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14474 | Smith v. St. Louis Cty. Softball Assoc., 623 S.W.2d 38 | 302+233.1 | Plaintiff also alleges error in the trial courts denial of his motion for leave to amend his petition. Though Rules 55.33 and 67.06 stress liberality in allowing amendments to pleadings, granting such leave is not mandatory. Young v. Jack Boring's, Inc., 540 S.W.2d 887, 891 (Mo.App.1976). The trial court does have discretion to deny a request for leave to amend a petition. Willett v. Reorganized School Dist. No. 2, 602 S.W.2d 44, 48 (Mo.App.1980); Clayton Brokerage Co. of St. Louis v. Lowrance, 592 S.W.2d 218, 225 (Mo.App.1979). We find no abuse of the trial court's discretion in denying the plaintiff a fifth time at bat, particularly as there is no contention that he seeks to include facts overlooked or that he was unaware of at the time the pleadings were filed. Ackerman v. Roufa, 584 S.W.2d 100, 103 (Mo.App.1979). | Although rules stress liberality in allowing amendments to pleadings, granting such leave is not mandatory. V.A.M.R. 55.33, 67.06. | Is granting leave to amend pleadings mandatory? | Pleading - Memo 297 - RMM.docx | ROSS-003303721-ROSS-003303722 | Order, SA | 0.84 | 1 | 0 | 0 | 1 | |
| 14475 | Smith v. St. Louis Cty. Softball Assoc., 623 S.W.2d 38 | 302+236(1) | Plaintiff also alleges error in the trial courts denial of his motion for leave to amend his petition. Though Rules 55.33 and 67.06 stress liberality in allowing amendments to pleadings, granting such leave is not mandatory. Young v. Jack Boring's, Inc., 540 S.W.2d 887, 891 (Mo.App.1976). The trial court does have discretion to deny a request for leave to amend a petition. Willett v. Reorganized School Dist. No. 2, 602 S.W.2d 44, 48 (Mo.App.1980); Clayton Brokerage Co. of St. Louis v. Lowrance, 592 S.W.2d 218, 225 (Mo.App.1979). We find no abuse of the trial court's discretion in denying the plaintiff a fifth time at bat, particularly as there is no contention that he seeks to include facts overlooked or that he was unaware of at the time the pleadings were filed. Ackerman v. Roufa, 584 S.W.2d 100, 103 (Mo.App.1979). | Trial court has discretion to deny request for leave to amend petition. V.A.M.R. 55.33, 67.06. | Do the trial court have discretion to deny a request for leave to amend a petition? | 023271.docx | LEGALEASE-00134262-LEGALEASE-00134263 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 14476 | Gibson v. Brewer, 952 S.W.2d 239 | 302+48 | Missouri is a fact-pleading state. Luethans v. Washington University, 894 S.W.2d 169, 171 (Mo. banc 1995). Pleadings must contain a "short and plain statement of the facts showing that the pleader is entitled to relief." Rule 55.05. Fact-pleading presents, limits, defines and isolates the contested issues for the trial court and the parties in order to expedite a trial on the merits. Luethans, 894 S.W.2d at 171"72. | Missouri is a fact-pleading state; short and plain statement of facts showing that pleader is entitled to relief presents, limits, defines, and isolates contested issues for trial court and parties in order to expedite trial on merits. V.A.M.R. 55.05. | Should pleadings contain short and plain statement of the facts showing that the pleader is entitled to relief? | Pleading - Memo 304 - RMM.docx | ROSS-003290566-ROSS-003290567 | SA, Sub | 0.4 | 0 | 0 | 1 | 1 | |
| 14477 | Hodge v. Johnson, 852 N.E.2d 650 | 307A+517.1 | Because the trial rules do not address voluntary dismissals by a plaintiff proceeding before a medical review panel, the common law governs. Ilagan v. McAbee, 634 N.E.2d 827, 829 (Ind.Ct.App.1994). Under the common law, a plaintiff has a right to dismiss an action at any time before verdict. Id. Where an action is voluntarily dismissed without prejudice the situation is as though no action had been brought. Id. An open and voluntary renunciation by a plaintiff of his suit, a retraxit, operates as a dismissal with prejudice. Id. | Where an action is voluntarily dismissed without prejudice, the situation is as though no action had been brought. | "Where an action is voluntarily dismissed without prejudice, is the situation as though no action had been brought?" | 028419.docx | LEGALEASE-00133964-LEGALEASE-00133965 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14478 | Ex parte Green, 103 S.W. 503 | 307A+69.1 | Notice to take depositions must state the place, the day, and between what hours of the day depositions will be taken, and that, if not completed on that day, the taking will continue at the same place and between the same hours from day to day until completed; and, to authorize the reading of the depositions, it must appear from the return of the officer taking them that they were taken in pursuance of the notice. If for any reason the taking is adjourned to the following day, the cause for the adjournment should be noted by the officer talking the deposition. The authority of the commissioner to take the depositions can only be exercised in pursuance of the notice served by the plaintiff upon the defendant of the time and place of their taking, and it seems to me that any unauthorized adjournment would be a departure from the terms of the notice, and have the effect of ousting the jurisdiction of the commissioner to proceed further in the taking of depositions, and that his authority to take them could only be restored by the service of a new notice. But waiving the question of the jurisdiction of the commissioner to take depositions on the 14th of May, I think the petitioner is entitled to his discharge, on the ground that it affirmatively appears from the journal of the commissioner that the petitioner was not guilty of contempt in refusing to answer any question that was propounded to him as a witness. His declaration that he would not answer any question was nothing more than an expression of a declared purpose to commit a criminal contempt, rather than submit to a further examination as a witness before the commissioner. It is not the law that a citizen may be imprisoned as for the commission of a crime on his naked declaration that he will commit it rather than submit to the authority of an officer. Communicated intent to commit a crime is not a crime. Bishop says, to constitute a criminal offense, "some act must have followed the unlawful | Where depositions are taken under notice providing that the taking will begin on a specified day and continue from day to day until the depositions are completed, and continuances are had, the officer should keep a record showing what was done on each day, and the cause for each continuance or adjournment. | "If for any reason the taking of deposition is adjourned to the following day, should the officer taking the deposition note the cause for the adjournment?" | 028940.docx | LEGALEASE-00134015-LEGALEASE-00134016 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 14479 | Spiecker v. Petroff, 971 S.W.2d 536 | 307A+486 | In construing the withdrawal prerequisites of rule 169, we must give the rule a liberal construction. See Tex.R. Civ. P. 1. The rule should not be construed giving one litigant an advantage over his opponent, permitting him to have judgment without supporting testimony when, without injustice to either party, the case can be opened for a full hearing on the evidence. Halton, 792 S.W.2d at 464. The objective of the rules of civil procedure is to obtain a just, fair, equitable, and impartial adjudication of the rights of litigants. Tex.R. Civ. P. 1. The rules were not designed as traps for the unwary nor should they be construed in order to prevent a litigant from presenting the truth to the trier of fact. Halton, 792 S.W.2d at 464. | In construing rule requirements for withdrawal of deemed admissions, Court of Appeals must give liberal construction to rule. Vernon's Ann.Texas Rules Civ.Proc., Rules 1, 169(2). | "In construing rule requirements for withdrawal under rule 169, do the courts liberal construction to the rule?" | 028981.docx | LEGALEASE-00134740-LEGALEASE-00134742 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 14480 | Allied Gas & Chem. Co. v. Federated Mut. Ins. Co., 332 N.W.2d 877 | 307A+486 | Federated characterizes its motion as one for extension of time to respond"a rule-127 motion. The parties and district court, however, considered the motion under the standard for withdrawal in rule 128. This court has previously acknowledged the similarity between rulings on a motion to file an untimely response and a motion to amend or withdraw an admission. In re Estate of Eickman, 291 N.W.2d 308, 311 (Iowa 1980). No distinction is drawn between the two types of motions in federal court, Pleasant Hill Bank v. United States, 60 F.R.D. 1, 3 (W.D.Mo.1973), and we find no need to do so either. See Riley v. Northern Commercial Co., 648 P.2d 961, 964 (Alaska 1982) (submission of untimely response is equivalent to an attempt to withdraw admission). | There is no need to distinguish between motion to file untimely response and motion to amend or withdraw an admission. Rules Civ.Proc., Rules 127, 128. | Do courts acknowledge the similarity between the rulings on motion to file untimely response and motion to amend or withdraw an admission? | 028990.docx | LEGALEASE-00134745-LEGALEASE-00134746 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 14481 | Marshall v. Vise, 767 S.W.2d 699 | 307A+483 | Unanswered requests for admissions are automatically deemed admitted, unless the court on motion permits their withdrawal or amendment. TEX.R.CIV.P. 169. An admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it. See Shaw v. Nat'l County Mut. Fire Ins. Co., 723 S.W.2d 236, 238 (Tex.App."Houston [1st Dist.] 1986, no writ). We have held, however, that a party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted. Houston First Am. Sav. v. Musick, 650 S.W.2d 764, 769 (Tex.1983). | Unanswered requests for admissions are automatically deemed admitted, unless court on motion permits there withdrawal or amendment. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | "Upon failure to answer request to admit or deny genuineness of certain facts, are facts therein automatically deemed admitted?" | 029049.docx | LEGALEASE-00134291-LEGALEASE-00134292 | SA, Sub | 0.75 | 0 | 0 | 1 | 1 | |
| 14482 | Brankovic v. Snyder, 259 Ga. App. 579 | 307A+486 | With respect to the second part of the test, there has been no showing that permitting the withdrawal will prejudice Brankovic. Merely being forced to go to trial is not such a prejudice as will prevent the withdrawal of admissions. | Merely being forced to go to trial is not the sort of prejudice as will prevent the withdrawal of deemed admissions. West's Ga.Code Ann. S 9-11-36(b). | Is merely being forced to go to trial not the sort of prejudice as will prevent the withdrawal of deemed admissions? | 029069.docx | LEGALEASE-00134402-LEGALEASE-00134403 | SA, Sub | 0.35 | 0 | 0 | 1 | 1 | |
| 14483 | Kohl v. United States, 226 F.2d 381 | 371+2001 | tax on a transfer but rather a direct tax on proceeds without apportionment, as required by Article I, " 2, Clause 3 and Article I, " 9, Clause 4 of the Constitution. A tax imposed on property or the income therefrom only by reason of its ownership is direct. Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 578, 580, 15 S.Ct. 673, 39 L.Ed. 759. Such taxes bear directly upon persons, upon their possession and enjoyment of rights, whereas indirect taxes are levied upon the happening of an event such as an exchange or transmission of property. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; see also Chase nat. Bank of City of New York v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405; Scholey v. Rew, 23 Wall. 331, 90 U.S. 331, 23 L.Ed. 99; Y.M.C.A. of Columbus, Ohio v. Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 68 L.Ed. 558; Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565. | A tax imposed on property or income therefrom only by reason of its ownership is direct. U.S.C.A. Const. art. 1, SS 2, 9. | "Is a tax imposed on property or income therefrom only by reason of its ownership, a direct tax?" | 045025.docx | LEGALEASE-00134422-LEGALEASE-00134423 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14484 | WHYY v. Borough of Glassboro, 50 N.J. 6 | 371+2001 | The fundamental approach of our statutes is that ordinarily all property shall bear its just and equal share of the public burden of taxation. As the existence of government is a necessity, taxes are demanded and received in order for government to function. Statutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption. The burden of proving a tax-exempt status is upon the claimant. Town of Bloomfield v. Academy of Med. of N.J., 47 N.J. 358, 363, 221 A.2d 15 (1966); Pingry Corp. v. Hillside Tp., 46 N.J. 457, 461, 217 A.2d 868 (1966); Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961). | As existence of government is necessity, taxes are demanded and received in order for government to function. | "Are taxes demanded and received in order for the government to function, as the existence of government is a necessity?" | 045039.docx | LEGALEASE-00134343-LEGALEASE-00134344 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14485 | State ex rel. Lane Drug Stores v. Simpson, 122 Fla. 582 | 371+2001 | As was so aptly stated by the author in the above-quoted paragraph in reference to the character of the tax, "a tax must be determined by its practical effect and operation rather than by particular descriptive language applied to it."In the same opinion it was further stated:"But, like all tax measures when called in question in the courts, the nature of the instant tax ordinance is to be determined by its practical operation and effect rather than by what it is named. Thus, it must be tested by the character of its incidence upon the subject at which it is directed, and by the manner in which it affects the taxpayer in its practical operation in the course of its administration, and in that view of it only will the courts undertake to weigh and determine its validity in the light of the limitations of the state and national Constitutions. Spoilation under the guise of taxation always will be declared unconstitutional, whatever its name or form." (Authorities cited.). | Character of tax must be determined from its practical effect and operation, rather than from particular descriptive language applied thereto. Const.U.S. Amend. 14; Const.Fla.Declaration of Rights, S 1. | Can the character of a tax be determined by the language used? | 045060.docx | LEGALEASE-00134237-LEGALEASE-00134239 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 14486 | Menz v. Coyle, 117 N.W.2d 290 | 371+2001 | This court has defined a "tax" as "an enforced contribution for public purposes and is in no way dependent upon the will or express consent of the person taxed." State v. Kromarek, 78 N.D. 769, 52 N.W.2d 713; certiorari denied, 343 U.S. 968, 72 S.Ct. 1064, 96 L.Ed. 1364. | A "tax" is an enforced contribution for public purposes which is in no way dependent upon will or consent of person taxed. | Is a tax in any way dependent upon will or consent of person taxed? | 045082.docx | LEGALEASE-00134108-LEGALEASE-00134109 | Condensed, SA | 0.54 | 0 | 1 | 0 | 1 | |
| 14487 | Seeth v. Joseph, 276 A.D. 188 | 371+2001 | It seems to us that a distinction must be drawn between the power granted to the states to regulate a phase of commerce and the power claimed by the city of New York to tax this phase of commerce for revenue purposes by means of an unapportioned gross receipts tax. The Local laws, under which the present taxes were assessed against the petitioner in no wise attempt to regulate pilots in the Port of New York, nor has any such right or power been conferred on the city by the state. The taxes in question have been imposed and collected by the municipal taxing authority as part of a general revenue scheme, and not as incidental to any exercise of police power in the field of pilotage. The matter of revenue taxation has no relation to the subject of regulation or police power. If the imposition of an unapportioned gross receipts tax on the business of stevedoring in New York harbor is repugnant to the "commerce clause", it seems clear that a like tax on pilotage in the Port of New York is open to the same objection. It has less by the way of local incidence that is distinct from the commerce than stevedoring, and constitutes at least as great a danger of imposing a multiple burden on commerce. | The matter of revenue taxation has no relation to the subject of regulation or police power. | Does the matter of revenue taxation have any relation to the subject of regulation or police power? | 045088.docx | LEGALEASE-00133994-LEGALEASE-00133995 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14488 | Parks Hiway Enterprises v. CEM Leasing, 995 P.2d 657 | 386+11 | Trespass is an unauthorized intrusion or invasion of another's land, including subsurface areas.Trespass liability may result from an actor's intentional, negligent, or ultrahazardous conduct. | Trespass is an unauthorized intrusion or invasion of another's land, including subsurface areas. | "Can trespass includeintrusion or invasion of another's land, including subsurface areas?" | 047414.docx | LEGALEASE-00134779-LEGALEASE-00134780 | Condensed, SA | 0.5 | 0 | 1 | 0 | 1 | |
| 14489 | Thomas v. Carnival Corp., 573 F.3d 1113 | 25T+515 | However, a claim for seaman's wages under Thomas's most recent term of employment is covered under the New Agreement. Thus, as to this portion of the claim, we must consider Thomas's affirmative defense under the Convention that the enforcement of the Arbitration Clause should be precluded as a violation of public policy. III. Affirmative Defenses Under the Convention Article V of the Convention provides specific affirmative defenses to a suit that seeks a court to compel arbitration including the following: Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that ... [t]he recognition or enforcement of the award would be contrary to the public policy of that country. | Unless there is affirmative defense that prevents application of United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards, court should compel parties to arbitrate, providing following jurisdictional prerequisites are met: (1) there is agreement in writing to arbitrate dispute; (2) agreement provides for arbitration in territory of signatory of Convention; (3) agreement arises out of legal relationship, whether contractual or not, that is considered commercial; and (4) one party to agreement is not United States citizen, or commercial relationship at issue has some reasonable relation with foreign state. 9 U.S.C.A S 201 et seq. | Can recognition and enforcement of an arbitral award be refused by courts? | 007536.docx | LEGALEASE-00135794-LEGALEASE-00135795 | SA, Sub | 0.16 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14490 | United States v. Whitfield, 590 F.3d 325 | 372+1021 | McCormick and Evans left open the question of what level of specificity is required to prove a quid pro quo in regard to the "quo" or agreed-upon official act. In United States v. Tomblin, a bribery case involving campaign contributions, we observed that "[t]he government need not prove the occurrence of the quid pro quo; proof of the agreement will suffice." 46 F.3d 1369, 1380 (5th Cir.1995) (citing Evans, 112 S.Ct. at 1889). In support of this proposition, we cited with approval to the Second Circuit's decision in United States v. Coyne, which held that the " "government does not have to prove an explicit promise to perform a particular act made at the time of payment. Rather, it is sufficient if the public official understands that he or she is expected as a result of the payment to exercise particular kinds of influence ... as specific opportunities arise." " Id. at 1381 n. 19 (quoting United States v. Coyne, 4 F.3d 100, 114 (2d Cir.1993), cert. denied, 510 U.S. 1095, 114 S.Ct. 929, 127 L.Ed.2d 221 (1994)). Similarly, while noting that the "generalized hope or expectation of ultimate benefit on the part of the donor does not constitute a bribe," the Fourth Circuit has observed that "the government need not show that the defendant intended for his payments to be tied to specific official acts." United States v. Jennings, 160 F.3d 1006, 1013"14 (4th Cir.1998) (internal quotations and citations omitted). The Jennings court went on to explain that"all that must be shown is that payments were made with the intent of securing a specific type of official action or favor in return. For example, payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf. This sort of "I'll scratch your back if you scratch mine" arrangement constitutes bribery because the payor made payments with the intent to exchange them for specific official action."Id. at 1014 (emphasis in | At trial of attorney and two former state judges charged with honest services fraud in connection with two separate prolonged bribery schemes, jury instructions accurately stated the law, even though district court did not include phrase "quid pro quo"; court required government to prove that defendants entered into corrupt agreement for attorney to provide judge with things of value with intent to influence judge's action or judgment on any matter which may then have been or was thereafter pending subject to judge's action or judgment, court instructed jury to consider whether judges' rulings were accompanied by honest belief in the law and facts of a case rather than a corrupt purpose, government was not required to prove that defendants had identified a particular case that would be influenced, only that they had specific intent to give or receive something of value in exchange for an official act to be performed in the future, and this sufficiently conveyed essential idea of give-and-take. 18 U.S.C.A. S 1346; Miss.Code 1972, S 97-11-11. | "In order to prove a case of bribery, does the government have to prove the occurrence of the quid pro quo?" | 011573.docx | LEGALEASE-00135173-LEGALEASE-00135175 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 14491 | Shelly v. State, 107 Ga. App. 736 | 135H+144 | The offense of possessing burglary tools is not a necessary element in, and does not constitute an essential part of, the offense of burglary. The two offenses are separate and distinct and a person being prosecuted for either is in no jeopardy of being convicted of the other, or of being convicted of an offense which is an essential part of the other. Therefore, the conviction of the accused upon the indictment for burglary could not support a plea of autrefois convict to the indictment for possessing burglary tools; and the trial court did not err in sustaining the State's motion to dismiss the plea. See Bell v. State, 103 Ga. 397, 402, 30 S.E. 294; Smith v. State, 105 Ga. 724, 32 S.E. 127; Pat v. State, 116 Ga. 92, 42 S.E. 389; Blair v. State, 81 Ga. 629, 7 S.E. 855. | Offenses of possessing burglary tools and burglary are separate and distinct, and a person being prosecuted for either is in no jeopardy of being convicted of the other, or of being convicted of an offense which is an essential part of the other. | Is the possession of burglary tools different from burglary? | Burglary - Memo 121 - JS.docx | ROSS-003303668-ROSS-003303670 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 14492 | State v. Richards, 29 Utah 310 | 67+8 | Section 4334, Rev. St. 1898, so far as material here, provides: "Every person who, in the nighttime, forcibly breaks and enters, or without force enters through any open door, window, or other aperture, any house, store, with intent to commit larceny, or any felony, is guilty of burglary." Section 4338, Rev. St. 1898, reads: "The phrase "nighttime", as used in this chapter, means the period between sunset and sunrise." It is true that under these provisions larceny committed, even by forcible breaking and entry, at any other time than in the nighttime, between sunset and sunrise, does not constitute burglary. The time when the act was committed is an essential element of the offense, under the statute, the same as at common law. Indeed, as to time, the statute is but declaratory of the common law. The fact, therefore, that the offense was committed in the nighttime, must be affirmatively proven. This may be done, however, by circumstantial evidence. The prosecution is not limited to direct evidence of the time of the offense, or positive statements of the witnesses that the offense was committed after sunset and before sunrise. That it was committed in the nighttime may be shown by proof of circumstances which convince the mind of the fact beyond a reasonable doubt, as well as by direct evidence. 6 Cyc. 240-242. If this were otherwise, many midnight burglaries would go unpunished, for such offenses are always secretly committed, when no one is, or is supposed to be, present to mark the time, and generally when nothing but circumstances can reveal it. | Under Rev. St. 1898, S 4334, defining "burglary" as entering "in the nighttime," etc., and section 4338, defining "nighttime" as the period between sunset and sunrise, a larceny, to constitute burglary, must be committed in the nighttime, and affirmative proof that it was so committed must be adduced; but such proof need not be direct, but may be circumstantial, in character. | What is nighttime in burglary? | Burglary - Memo 160 - JS.docx | ROSS-003330657-ROSS-003330659 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 14493 | McNeill v. Thomas, 203 N.C. 219 | 302+8(15) | The defendant first insists that the action is ostensibly founded on fraud or mutual mistake, and that the allegations in the complaint with respect to either of these causes is fatally defective. If this position is maintainable, the demurrer should be sustained, for, unless the facts relied on to constitute fraud or mistake are distinctly alleged, the courts cannot grant relief. Colt Co. v. Kimball, 190 N. C. 169, 129 S. E. 406; Tull v. Harvey & Son Co., 197 N. C. 329, 148 S. E. 425. But it is perfectly obvious that the defendant's position is not supported by the facts. The plaintiff does not seek relief by the reformation or the rescission of the deeds of trust, and for this reason he did not allege mistake or fraud as the basis of his action. True, in the original complaint he did aver his ignorance of the fact that the amount set out in the second note had been raised from $2,200 to $3,212; but this is not a definite allegation either of fraud or of mutual mistake. Furthermore, the amended complaint contains an allegation that W. J. Mason required the plaintiff to execute the second note in the sum of $3,212, although the amount actually loaned the plaintiff was only $2,000. According to the first complaint, the purpose of the action as constituted was to restrain a sale of the mortgaged property for usury; but, after the property had been sold, the plaintiff filed an amended complaint, praying that he recover double the usury charged and paid. | Unless facts relied on to constitute fraud are distinctly alleged, courts cannot grant relief therefor. | Should facts relied on to constitute fraud or mistake be distinctly alleged? | 023320.docx | LEGALEASE-00135668-LEGALEASE-00135669 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14494 | Cardiff Equities v. Superior Court, 166 Cal. App. 4th 1541 | 307A+517.1 | In Heritage, the appellate court concluded that where there is at least one overlapping issue in a controversy in which some claims are subject to arbitration and others are not, it was error for the trial court to deny a motion for stay of the court action. (Heritage, supra, 158 Cal.App.4th at pp. 1152"1153, 70 Cal.Rptr.3d 645.) Here, the trial court found the Partnership claims and the Guaranty claims to be "intertwined." Given that finding, had Cardiff not dismissed the entire Case No. 1, the stay would have been proper. However, the effect of dismissal is different from a severance. With limited exceptions inapplicable here, a voluntary dismissal deprives the court of subject matter jurisdiction and personal jurisdiction in that case. (Shapell Industries, Inc. v. Superior Court (2005) 132 Cal.App.4th 1101, 1108, 34 Cal.Rptr.3d 149.) A court cannot force a litigant to pursue claims it chooses to abandon. (Cf. Harris v. Billings (1993) 16 Cal.App.4th 1396, 1404, 20 Cal.Rptr.2d 718 [trial court's delay reduction, or "fast track" program did not affect a plaintiff's right to voluntarily dismiss an action, as "[t]he delay reduction program is concerned with the management and progress of cases currently in the court system, not with disputes which the parties wish to remove from the system"].)7 In light of the voluntary dismissal of Case No. 1, there was no basis upon which the trial court could stay Case No. 2. | A court cannot force a litigant to pursue claims it chooses to abandon through voluntary dismissal. West's Ann.Cal.C.C.P. S 581. | Can a court force a litigant to pursue claims it chooses to abandon through voluntary dismissal? | 028520.docx | LEGALEASE-00134978-LEGALEASE-00134979 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 14495 | Autry v. Bryan, 224 Va. 451 | 307A+716 | The fact that Lustig remained "counsel of record" for Autry within the meaning of Rule 1:5 is irrelevant to the continuance issue, given the facts of this case. Under these circumstances, a client is not to be rewarded with a continuance when there is an unexplained, unexcused nonappearance by his attorney of record. | Client is not to be rewarded with continuance when there is unexplained, unexcused nonappearance by his attorney of record. | "Should a client be rewarded with continuance when there is unexplained, unexcused nonappearance by his attorney of record?" | Pretrial Procedure - Memo # 3270 - C - KG.docx | LEGALEASE-00025187-LEGALEASE-00025188 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 14496 | Cont'l Cas. Co. v. Kinsey, 513 N.W.2d 66 | 307A+24 | Our rule is identical to Rule 56 of the Federal Rules of Civil Procedure, so federal court interpretations of the federal rule are persuasive. Severson v. Surita, 506 N.W.2d 410 (N.D.1993); Moon v. Moon, 499 N.W.2d 597, n. 10 (N.D.1993). A request for additional time for discovery under Rule 56(f) invokes the trial court's discretion, and absent an abuse of that discretion the trial court's decision will not be overturned on appeal. American Lease Plans, Inc. v. Silver Sand Co., 637 F.2d 311 (5th Cir.1981). The trial court can, within its discretion, cut off discovery prior to ruling on a summary judgment motion, when the record indicates that further discovery will not likely produce facts necessary to defeat the motion. Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073 (5th Cir.1990); United States v. Light, 766 F.2d 394 (8th Cir.1985). It is incumbent upon the party requesting additional discovery time to bring to the court's attention reasons justifying that request. Federal Land Bank of St. Paul v. Asbridge, 414 N.W.2d 596 (N.D.1987). | It is incumbent upon party requesting additional discovery prior to ruling on summary judgment motion to bring to court's attention reasons justifying that request. Rules Civ.Proc., Rule 56(f). | "Is it incumbent upon a party wishing to rely on requests for admission to put the requests into evidence, and the record, as by a motion to admit?" | 029560.docx | LEGALEASE-00135411-LEGALEASE-00135412 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14497 | Schiro v. Monteleone, 2 La. App. 280 | 275+86 | The absence of counsel is not a ground of continuance, where a party has been assisted by other counsel and had no evidence which would have produced a different result if his counsel had been present. Gardner, Sager & Co. vs. O'Connell and Gould, 7 La. Ann. 453. | A firm composed of two lawyers is not entitled to continuance, nor to new trial, on ground that one was engaged in another court, when case presented no difficulty, and party applying suggests no evidence which would have produced different judgment. | "Does an absence of counsel a ground of continuance, where a party has been assisted by other counsel and had no evidence which would have produced a different result if his counsel had been present?" | 029726.docx | LEGALEASE-00135681-LEGALEASE-00135682 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 14498 | Babcock v. Martinez, 368 Ill. App. 3d 130 | 307A+483 | Supreme Court Rule 216(c) (134 Ill.2d R. 216(c)) specifically provides that a party's failure to deny the matters of fact set forth in a request to admit by not responding constitutes an admission of those facts. "Although a party may constructively admit facts, even "ultimate" facts, by failing to respond to a request for admission, a party does not constructively admit "legal conclusions' by a failure to respond to requests that contain those conclusions." Montalbano Builders, Inc. v. Rauschenberger, 341 Ill.App.3d 1075, 1080, 276 Ill.Dec. 506, 794 N.E.2d 401, 406 (2003); see also Department of Public Aid ex rel. Peavy v. Peavy, 307 Ill.App.3d 16, 24, 240 Ill.Dec. 314, 716 N.E.2d 1261, 1267 (1999) (failure to respond to issue of law did not result in an admission). | Although a party may constructively admit facts, even ultimate facts, by failing to respond to a request for admission, a party does not constructively admit legal conclusions by a failure to respond to requests that contain those conclusions. Sup.Ct.Rules, Rule 216(c). | Does a party's failure to respond to a request to admit facts pursuant to Supreme Court Rules admit any specified relevant fact set forth in the request? | 029810.docx | LEGALEASE-00135380-LEGALEASE-00135381 | SA, Sub | 0.65 | 0 | 0 | 1 | 1 | |
| 14499 | Employers Ins. of Wausau v. Halton, 792 S.W.2d 462 | 307A+483 | In most of the rule 169 cases prior to the 1988 amendment, the litigant seeking to avoid the consequences of failing to answer a request for admissions was required to show a legal or equitable excuse for his failure to answer. Crime Control, 712 S.W.2d at 552; Bragg, 670 S.W.2d at 715; Mathes v. Kelton, 565 S.W.2d 78, 81 (Tex.Civ.App."Amarillo 1977), aff'd, 569 S.W.2d 876 (Tex.1978); Burnett v. Cory Corp., 352 S.W.2d 502, 507 (Tex.Civ.App."Dallas 1961, writ ref'd n.r.e.). In one preamendment case from this Court, the litigant was required to show good cause for the failure to answer timely. Curry v. Clayton, 715 S.W.2d 77, 79 (Tex.App."Dallas 1986, no writ). But, in a later case from this Court, we again required a showing of legal or equitable excuse, possibly because the case was tried preamendment. Eckman, 757 S.W.2d at 396. However, with the amendment of rule 169, it is apparent that "good cause" has been adopted as the threshold standard for the withdrawal of deemed admissions.. | Good cause is threshold standard for withdrawal of deemed admissions. Vernon's Ann.Texas Rules Civ.Proc., Rule 169. | Is good cause a threshold standard for withdrawal of deemed admissions? | 029812.docx | LEGALEASE-00135390-LEGALEASE-00135391 | Order, SA | 0.88 | 1 | 0 | 0 | 1 | |
| 14500 | Lambert v. Bunge Corp., 169 So. 2d 207 | 307A+716 | The Court a qua was in error when it ordered relator to trial after being informed that its trial counsel was in the hospital on the day of trial after undergoing going operative procedure. This fact was directed to the attention of the Court by the production of proper medical certificates from Dr. Frederick F. Boyce and Dr. J. O. Weilbaecher, Jr., reputable physicaians, setting forth the condition of relator's counsel, Henry C. Vosbein. The cases are numerous in our jurisprudence that illness of principal counsel in the trial of a case is good and sound grounds for a continuance. See LSA-C.C.P. art. 1601. Smelser v. Williams, 10 Rob. 97 (1845); Succession of Muller 1 La.App. 402 (1925); Vicksburg, S. & P. Ry. Co. v. Scott, 47 La.Ann. 706, 17 So. 249 (1895); Marrero v. Nunez, 3 La.Ann. 54 (1848). | Illness of principal counsel in trial of case is good ground for continuance. LSA-C.C.P. art. 1601. | Is illness of a principal counsel in trial of case a good ground for continuance? | 029833.docx | LEGALEASE-00135697-LEGALEASE-00135698 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14501 | Bradford Motor Cars v. Frem, 511 So. 2d 1120 | 307A+483 | Further, even if the response to the request for admissions had been stricken, that would not mean that damages were therefore liquidated. A plaintiff cannot liquidate damages merely by serving a request for admissions which is not answered.In Bowman v. Kingsland Development, Inc., 432 So.2d 660, 662 (Fla. 5th DCA 1983), the court stated:Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law. Damages are not liquidated if the ascertainment of their exact sum requires the taking of testimony to ascertain facts upon which to base a value judgment. A defaulting party has a due process entitlement to notice and opportunity to be heard as to the presentation and evaluation of evidence necessary to a judicial determination of the amount of unliquidated damages. | Plaintiff cannot liquidate damages merely by serving a request for admissions which is not answered. | Can a plaintiff liquidate damages merely by serving a request for admissions which is not answered? | Pretrial Procedure - Memo # 3673 - C - NE.docx | LEGALEASE-00025603-LEGALEASE-00025604 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14502 | Schiro v. Monteleone, 2 La. App. 280 | 275+86 | The absence of counsel is not a ground of continuance, where a party has been assisted by other counsel and had no evidence which would have produced a different result if his counsel had been present. Gardner, Sager & Co. vs. O'Connell and Gould, 7 La. Ann. 453. | A firm composed of two lawyers is not entitled to continuance, nor to new trial, on ground that one was engaged in another court, when case presented no difficulty, and party applying suggests no evidence which would have produced different judgment. | Is the absence of counsel a ground of continuance where a party has been assisted by other counsel and had no evidence which would have produced a different result if his counsel were present? | Pretrial Procedure - Memo # 3802 - C - SB.docx | ROSS-003317906-ROSS-003317907 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 14503 | Barton v. Lary, 283 S.W. 920 | 307A+717.1 | The court erred in overruling appellant's application for a continuance. It was the first application, was in compliance with the statute, due diligence was shown to procure the absent witness, and his testimony was material upon the issue tendered by appellant that the sale to Lary was fraudulent and simulated. Consumers', etc., v. Hubner (Tex. Civ. App.) 154 S. W. 249; Pease v. State ex rel. Southerland (Tex. Civ. App.) 155 S. W. 657; Railway v. Yates (Tex. Civ. App.) 33 S. W. 291. The qualification to the bill as shown by the supplemental transcript shows no excuse for overruling the motion. | First application for continuance because of absence of material witness, to procure whom due diligence was shown, held erroneously overruled. | Should an application which shows that the applicant has not used due diligence to procure the attendance of the witness be overruled? | 030393.docx | LEGALEASE-00135991-LEGALEASE-00135992 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 14504 | State Indus. Acc. Comm'n v. Aebi, 177 Or. 361 | 371+2001 | Moreover, it does not destroy the character of a tax on exaction imposed by statute merely because it applied only to a certain class. In discussing the case In re Oshkosh Foundry Co., D.C., 28 F.Supp. 412, defendant argues that the compulsory nature of the contribution under the Wisconsin Unemployment Compensation Act and that it was made to conform with the Federal Social Security Act, 42 U.S.C.A. " 301 et seq., were deemed by the Wisconsin Federal Court to be controlling. We think that it is not correct to assume that in the Workmen's Compensation Act there is no factor of compulsion upon an employer engaged in a hazardous operation. It is true, that, if such an employer prefers to deal with the results of injuries to his workmen without the interposition of any state protective agency and in doing so be deprived of his right to defend on the ground of assumption of the risk, contributory negligence or negligence of a fellow servant any personal injury action instituted by any of his workmen rather than be subject to the payment of the contributions prescribed in the act, the employer has the right thus to classify himself. As to the employers affected by the act, who do not prefer thus to be deprived of this state protection and of these common law defenses, but do prefer to have the benefit of the state's interposition, they constitute a class or group upon which there is an enforced contribution for the payment of public expenses. Certainly, as to the members of this group of which defendant was a member, the contributions were compulsory. In no sense could these "contributions', required of this class of employers, be said to be mere gratuities. | An exaction imposed by statute does not lose its character as a tax because it is applied only to a certain class. | Does exaction imposed by statute destroy the character of a tax merely because it is applied only to a certain class? | 045236.docx | LEGALEASE-00135016-LEGALEASE-00135017 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14505 | Franco v. Bank of Forest Park, 118 Ga. App. 700 | 8.30E+186 | The contention of material alteration is without merit. The notations made in the margin of the note concerning the amounts of the credit life insurance premiums and the amount of interest charged in no way or manner altered or changed the obligation of the note itself, and absent that, the alteration does not operate to discharge the parties from their obligations. Code Ann. s 109A-3-407; Dale, Inc. v. Dawson County Bank, 112 Ga.App. 560, 145 S.E.2d 619. And see Overcash v. First National Bank of Atlanta, 115 Ga.App. 499, 155 S.E.2d 32; Overcash v. First National Bank of Atlanta, 117 Ga.App. 818, 162 S.E.2d 210. | Where notations in margin of note concerning amount included for credit life premiums on life of maker of note and how much was included for interest to maturity did not alter or change obligation of contract, notations were not material alterations, though notations were made after note was signed without knowledge or consent of maker. Code, S 109A-3-407. | Do alterations on the note operate to discharge the parties from their obligations? | Bills and Notes -Memo 236 -VP.docx | ROSS-003317018 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 14506 | United States v. Agostino, 132 F.3d 1183 | 110+1173.1 | Agostino next challenges the court's instructions to the jury regarding the federal funds element, arguing that the district court erred by not providing the jury with the text of allegedly relevant Indiana statutes set forth in defendant's tendered instruction number four. The defense contends that the statutes were necessary to enable the jury to determine whether Goetz was an agent of an agency that received the requisite federal funding. We review jury instructions as a whole, asking whether they were "sufficient to inform the jury correctly of the applicable law." Wilson v. Williams, 83 F.3d 870, 874 (7th Cir.1996); see also Maltby v. Winston, 36 F.3d 548, 560 (7th Cir.1994). "In this review we avoid fastidiousness and inquire only whether the correct message was conveyed to the jury reasonably well." Wilson, 83 F.3d at 874; see also United States v. Perez, 43 F.3d 1131, 1137 (7th Cir.1994). We will reverse only if, " "considering all the instructions, the evidence and the arguments," it appears that "the jury was misled ... [and its] understanding of the issues was seriously affected to the prejudice of the complaining party." " Roggow v. Mineral Processing Corp., 894 F.2d 246, 248 (7th Cir.1990) (alteration in original) (quoting Simmons v. Pinkerton's, Inc., 762 F.2d 591, 597 (7th Cir.1985)); see also United States v. Hall, 109 F.3d 1227, 1237 (7th Cir.), cert. denied 522 U.S. 856, 118 S.Ct. 153, 139 L.Ed.2d 99 (1997); Perez, 43 F.3d at 1137. | Court of Appeals will reverse based on error in refusing to give requested instructions only if, considering all instructions, evidence and arguments, it appears that jury was misled and its understanding of issues was seriously affected to prejudice of complaining party. | What constitutes misleading the jury in a bribery trial? | Bribery - Memo #207 - C-EB.docx | LEGALEASE-00025855-LEGALEASE-00025857 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14507 | United States v. Zwick, 199 F.3d 672 | 63+1(1) | First, we disagree with Zwick's reading of the statute regarding valuation of the $5,000 element. We find that the plain language of the statute does not require that value be measured from the perspective of the organization, government, or agency. See 18 U.S.C. " 666(a)(1)(B) (prohibiting bribery "in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more" (emphasis added)); see also Santopietro, 166 F.3d at 93 ("there is no requirement that the corrupt transactions are worth $5,000 or more to the entity receiving the federal funds"); United States v. Marmolejo, 89 F.3d 1185 (5th Cir.1996) (finding that the $5,000 value element was designed to limit application of " 666 to significant corrupt transactions, not to restrict the manner in which or the perspective from which that value is to be calculated). See also United States v. Apple, 927 F.Supp. 1119, 1126 (N.D.Ind.1996) (concluding that the government is not required "to show that the thing that held value of over $5,000 held that value for" the entity); United States v. Vona, 842 F.Supp. 1534, 1536 (W.D.N.Y.1994) (finding that the Act does not require that the defendant gain $5,000 or that the victim lose $5,000, but that "as long as the overall transaction or the target of the bribe is valued at $5,000 or more, the element of the crime is satisfied"); United States v. Mongelli, 794 F.Supp. 529, 530 (S.D.N.Y.1992) ("The $5,000 triggering provision should thus be interpreted as intended to require that substantial matters of that actual value be involved, not that the agency be at risk of losing that amount."). | The value of a transaction is not required to be measured from the perspective of the organization, government, or agency in question, when determining whether an agent of an organization, government, or agency receiving federal funds has violated the statute prohibiting the acceptance of a bribe with respect to a transaction having a value of $5,000 or more. 18 U.S.C.A. S 666(a)(1)(B). | "What is the purpose of the $5,000 value element for bribery under the bribery statute?" | 011322.docx | LEGALEASE-00136900-LEGALEASE-00136902 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 14508 | United States v. Jennings, 160 F.3d 1006 | 63+1(1) | Whether a payment is a bribe or an illegal gratuity under " 201 depends on the intent of the payor. A bribe requires that the payment be made or promised "corruptly," that is, with "corrupt intent." Under " 201 "corrupt intent" is the intent to receive a specific benefit in return for the payment. See Muldoon, 931 F.2d at 287; United States v. Duvall, 846 F.2d 966, 971 n. 6, 972 (5th Cir.1988); United States v. Irwin, 354 F.2d 192, 197 (2d Cir.1965). In other words, the payor of a bribe must intend to engage in " "some more or less specific quid pro quo" " with the official who receives the payment. Duvall, 846 F.2d at 972 (quoting United States v. Arthur, 544 F.2d 730, 734 (4th Cir.1976)); accord United States v. Sun-Diamond Growers of California, 138 F.3d 961, 966 (D.C.Cir.1998) (discussing the quid pro quo element of " 201(b) bribery), cert. granted in part, 525 U.S. 961, 119 S.Ct. 402, 142 L.Ed.2d 326 (1998) (No. 98-131), and cert. denied, 525 U.S. 964, 119 S.Ct. 409, 142 L.Ed.2d 332 (1998) (No. 98-374); United States v. Johnson, 621 F.2d 1073, 1076 (10th Cir.1980) (same); cf. alsoUnited States v. Niederberger, 580 F.2d 63, 68 (3d Cir.1978)(explaining that under " 201 the intent to "corruptly" receive a payment means the intent to effectuate a quid pro quo); United States v. Strand, 574 F.2d 993, 995 (9th Cir.1978) (same). Accordingly, a good will gift to an official to foster a favorable business climate, given simply with the " "generalized hope or expectation of ultimate benefit on the part of the donor," " does not constitute a bribe. Johnson, 621 F.2d at 1076 (quoting Arthur, 544 F.2d at 734); cf. also United States v. Allen, 10 F.3d 405, 411 (7th Cir.1993) ( "Vague expectations of some future benefit should not be sufficient to make a payment a bribe."). An illegal gratuity, on the other hand, is a payment made to an official concerning a specific official act (or omission) that the payor expected to occur in any event. No corrupt intent to influence official behavior is required. The payor simply | "Illegal gratuity," for purposes of statute prohibiting bribery of public officials and witnesses, is a payment made to an official concerning a specific official act or omission that the payor expected to occur in any event. 18 U.S.C.A. S 201(c)(1)(A). | How is illegal gratuity defined under the statute? | Bribery - Memo #460 - C-JL.docx | ROSS-003317530-ROSS-003317532 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 14509 | State v. Lopez, 522 So. 2d 997 | 63+1(1) | In considering a Rule 3.190(c)(4) motion, the court must construe the facts in the light most favorable to the state. State v. Horton, 442 So.2d 408 (Fla. 2d DCA 1983); State v. McCray, 387 So.2d 559 (Fla. 2d DCA 1980). We agree with the state that the bribery statute prohibits any payment intended to influence the performance of any act by a public servant. The statute is violated even when a person pays for the doing of an act that the public servant is legally bound to do. State v. Saad, 429 So.2d 757 (Fla. 3d DCA 1983). Here, at the very least, Lopez intended to influence Ramirez's work habits. He wanted Ramirez to cooperate by appearing promptly to inspect and, perhaps, to wait while a code violation was corrected instead of rejecting the job and reinspecting at a later date. | Bribery statute prohibits any payment intended to influence performance of any act by public servant, even if person pays for doing of act the public servant is legally bound to do. West's F.S.A. S 838.015(1). | Does a public servant still violate bribery statute even if he is legally bound to do so? | 011867.docx | LEGALEASE-00136099-LEGALEASE-00136100 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 14510 | D. P. v. State, 129 Ga. App. 680 | 211+2561 | In the case at bar, the constitutionality of the statute (Code Ann. s 24A-1603, supra) is not attacked. If it had been, the Supreme Court, not this court, would have jurisdiction of this appeal. However, the appellant does contend, with justification, that he had no notice that the charge upon which his delinquency might be based would be changed from burglary to receiving stolen goods. Consequently, the defendant did not subpoena a material witness in defending the receiving stolen goods charge because the witness had no knowledge of the alleged burglary offense. As previously shown, the offense of receiving stolen goods is not a lesser included offense within the crime of burglary. Gearin v. State, supra. | Where petition in juvenile delinquency proceeding alleged that juvenile had committed burglary but made no mention of offense of receiving stolen goods and receiving stolen goods was not lesser included offense within crime of burglary, there was insufficient notice to the juvenile of the offense alleged to be the basis for his delinquency. Code, S 24A-1603. | Is receiving stolen goods a lesser included offense than burglary? | Burglary - Memo 138 - JS.docx | ROSS-003330645-ROSS-003330647 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14511 | Manuel v. Red Hill Cmty. Unit Sch. Dist. No. 10 Bd. of Educ., 324 Ill. App. 3d 279 | 302+11 | Defendant contends that Winfrey could be read in a second way-that plaintiff must allege how defendant became knowledgeable of the condition of the premises. Defendant contends that an allegation of knowledge of the physical condition of premises by itself is a conclusory statement and not an allegation of fact. If this is the rule in the First District, we decline to follow it. A statement of a defendant's knowledge is an allegation of ultimate fact and not a conclusion. Oravek v. Community School District 146, 264 Ill.App.3d 895, 900, 202 Ill.Dec. 15, 637 N.E.2d 554, 558 (1994); Doner v. Phoenix Joint Stock Land Bank of Kansas City, 381 Ill. 106, 115, 45 N.E.2d 20, 25 (1942); see Bowers v. Du Page County Regional Board of School Trustees District No. 4, 183 Ill.App.3d 367, 370, 380, 131 Ill.Dec. 893, 539 N.E.2d 246, 248, 255 (1989) (allegation that school district "knew or should have known" a rope ladder was dangerous was sufficient); Cory Corp. v. Hunter"Built Inc. of Chicago, 91 Ill.App.2d 303, 303, 234 N.E.2d 547, 547 (1968) (averment that the defendant knew of a change of ownership of a company was not conclusion of law but a statement of fact). A plaintiff need not plead the evidentiary facts that he will use to prove the defendant's knowledge. Ward v. Community Unit School District No. 220, 243 Ill.App.3d 968, 974, 184 Ill.Dec. 901, 614 N.E.2d 102, 106 (1993). | A statement of a defendant's knowledge is an allegation of ultimate fact and not a conclusion, and plaintiff need not plead the evidentiary facts that he will use to prove the defendant's knowledge. | Should a plaintiff plead evidentiary facts to prove defendants' knowledge? | Pleading - Memo 324 - RMM.docx | ROSS-003289457-ROSS-003289458 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 14512 | Chatham Surgicore, Ltd. v. Health Care Serv. Corp., 356 Ill. App. 3d 795 | 302+8(1) | "A motion to dismiss does not lie as long as a good cause of action is stated even if that cause of action is not the one intended to be asserted by the plaintiff. (See Luethi v. Yellow Cab Co. (1985), 136 Ill.App.3d 829, 833 [91 Ill.Dec. 572, 483 N.E.2d 1058]; Great Atlantic & Pacific Tea Co. v. La Salle National Bank (1979), 77 Ill.App.3d 478, 482 [32 Ill.Dec. 812, 395 N.E.2d 1193] (finding cause denominated as an action for trespass to be sufficient as an action to enjoin interference with a leasehold interest); Browning v. Heritage Insurance Co. (1975), 33 Ill.App.3d 943, 947 [338 N.E.2d 912]; 2 C. Nichols, Illinois Civil Practice " 1413, at 518"19 (5th rev. ed.1990).) A complaint need only allege facts which establish the right to recovery; not only are allegations of law or conclusions not required, they are improper. (See 3 R. Michael, Illinois Practice " 24.2, at 340 (1989); Monroe County Water Cooperative v. City of Waterloo (1982), 107 Ill.App.3d 477 [63 Ill.Dec. 315, 437 N.E.2d 1237]; see also Haas v. Mid"America Fire & Marine Insurance Co. (1976), 35 Ill.App.3d 993, 998 [343 N.E.2d 36].) It is, moreover, the allegations of a complaint which define a cause of action, not the name or title that may be used by the plaintiff. Lovgren v. Citizens First National Bank (1989), 126 Ill.2d 411, 419 [128 Ill.Dec. 542, 534 N.E.2d 987]." Illinois Graphics Co. v. Nickum, 159 Ill.2d 469, 488"89, 203 Ill.Dec. 463, 639 N.E.2d 1282 (1994). | A complaint need only allege facts which establish the right to recovery; not only are allegations of law or conclusions not required, they are improper. | Are allegations of law or conclusions in complaint improper? | 023348.docx | LEGALEASE-00136866-LEGALEASE-00136867 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14513 | Coyne v. State Farm Fire & Cas. Co., 50 Misc. 2d 58 | 307A+477.1 | The second ground for defendant's claim that the relief should be denied herein is that the response as submitted was not a denial and consequently was an admission or at least a nullity, citing Weinstein-Korn-Miller, New York Civil Practice, Vol. 3, Par. 3123.11 and 1 NY Adv.Comm.Rep. 157 (1957) regarding the CPLR. This argument is rejected. Under our new enlightened practice in order to shorten trials, admissions and disclosure are favored and encouraged. Where a simple request or demand is made, the response should be a simple "admit or deny." This has been the history of the comparable provisions in the Federal Rules of Civil Procedure. See Rules 36 and 37 of the Federal Rules of Civil Procedure. | Where simple request or demand for admission is made, response should be a simple "admit or deny". CPLR S 104. | "Should the response be a simple ""admit or deny"", where simple request or demand for admission is made?" | 030278.docx | LEGALEASE-00136666-LEGALEASE-00136667 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 14514 | Stribling v. Stribling, 85 S.W.2d 315 | 307A+723.1 | It appears that all parties and their respective counsel met at Johnson City, Blanco county, Tex., on September 27, 1933, at which time the case was set for trial on October 2d. At that time plaintiff had on file her second amended original petition. On September 28th plaintiff filed her third amended original petition, on which she went to trial on October 2d. Defendants urge that the second amended petition did not state a cause of action either against them or against Mrs. J. C. Stribling, and that they therefore advised Mrs. J. C. Stribling that it would not be necessary for her to be present at the trial, and they took no steps to take her depositions. In their first motion for continuance they do not allege any surprise at the allegations of the third amended petition; nor do they allege that they had "used due diligence to procure such testimony," nor that she would be present upon another trial, nor that they would procure her testimony upon another trial. The application did not, therefore, show "statutory diligence" required by article 2168, R. S., a compliance with which was necessary to entitle them to a continuance as a matter of right. St. Louis & S. F. R. Co. v. Woolum, 84 Tex. 570, 19 S. W. 782; Ft. Worth & D. C. R. Co. v. Jenkins (Tex. Civ. App.) 252 S. W. 189; 9 Tex. Jur. " 66, p. 739. The rule announced in Cleveland v. Cole, 65 Tex. 402, and Doll v. Mundine, 84 Tex. 315, 19 S. W. 394, is not applicable, and the granting or refusing of such application was a matter addressed to the sound discretion of the trial court. Unless clearly abused that discretion will not be disturbed on appeal. 9 Tex. Jur. " 83, p. 575, and numerous cases there cited. | Application for continuance must show compliance with statute to entitle applicant to continuance as matter of right. Vernon's Ann.Civ.St. art. 2168. | Should an application for continuance show compliance with a statute to entitle an applicant to continuance as a matter of right? | 030296.docx | LEGALEASE-00136846-LEGALEASE-00136847 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14515 | State v. Cologne, 562 So. 2d 24 | 110+603.2 | The general rule is that motions for continuance be in writing, La.C.Cr.P. art. 707, since the denial of an oral motion for continuance leaves nothing for review. State v. Robicheaux, 412 So.2d 1313 (La.1982); State v. Salgado, 473 So.2d 84 (La.App. 5th Cir.1985), writ den. 478 So.2d 1233 (La.1985). There is an exception to the general rule where the circumstances producing the motion for continuance occur unexpectedly and the counsel for the defendant had no opportunity to prepare a written motion. State v. Washington, 407 So.2d 1138 (La.1981); State v. White, 472 So.2d 128 (La.App. 5th Cir.1985). | General rule is that motions for continuance be in writing since denial of oral motion for continuance leaves nothing for review; however, exception exists where circumstances producing motion for continuance occur unexpectedly and counsel for defendant had no opportunity to prepare written motion. LSA-C.Cr.P. art. 707. | Should a motion for a continuance be considered as being in writing? | Pretrial Procedure - Memo # 4062 - C - NS.docx | ROSS-003332144-ROSS-003332145 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 14516 | Collins v. Frost, 54 Ind. 242 | 307A+723.1 | The refusal of the court to grant a continuance, on the affidavit of appellant, to obtain certain papers of guardianship. No useful connection of such papers with the case is shown, nor does it appear that proper diligence to obtain them was used. The refusal to grant a change of venue. One had already been granted to the appellant. The same party is entitled to but one. So is the statute, and so it has been frequently decided. The refusal to grant time to file another affidavit for continuance on account of the absence of the witness Nugent. It is plain that there had been abundant time to prepare such an affidavit. Besides, it is matter of discretion, which can not be revised by this court, unless plainly abused. Again, it is not shown in the bill of exceptions what, if anything, could have been proved by the witness. | Time to prepare and file an affidavit for continuance is within the discretion of the trial court. | Is the time to prepare and file an affidavit for continuance within the discretion of the trial court? | Pretrial Procedure - Memo # 4086 - C - SK.docx | ROSS-003317629-ROSS-003317630 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 14517 | Taylor v. Morgan, 379 So. 2d 1256 | 307A+725 | But the defendant contends that the trial court's resetting of the case violated Rule 40, ARCP which requires a twenty day interlude between the date of setting and trial. We answered this contention in Knight v. Davis, Ala., 356 So.2d 156 (1978). That provision applies only to initial settings or resettings to future trial dockets, and not to continuances from time to time as was done here. Moreover, litigants are required to keep track of their cases, and, generally speaking, courts owe no duty to notify parties of settings or to continue cases because of a litigant's absence. hompson v. Odom, 279 Ala. 211, 184 So.2d 120 (1966); Old Southern Life Ins. Co. v. Free, 46 Ala.App. 622, 247 So.2d 379 (1971). Here the defendant had requested discovery of the plaintiffs and had obtained it. The plaintiffs, on the other hand, had earlier requested discovery of the defendant and had not obtained it, with the defendant having been granted continuances on his own motion. Following the withdrawal of his first lawyer, defendant maintains that he retained a second lawyer, on September 5, 1978, more than three months prior to the last motion for a hearing and the order thereon, dated December 7, 1978 and the hearing on December 13, 1978. Yet in that interval the court was not informed of his retention so that any notices could be sent to him. From those facts we cannot state that the trial court's action, under the plaintiffs' prayer for general relief, was improper. Rule 37(b), ARCP. Accordingly, his order must be, and is, affirmed. | Rule requiring 20-day interlude between date of setting and trial applied only to initial settings or resettings to future trial dates and not to continuances from time to time. Rules of Civil Procedure, rule 40. | Does the rule requiring 20-day interlude between date of setting and trial apply to continuances? | 030867.docx | LEGALEASE-00136934-LEGALEASE-00136935 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 14518 | In re Jacobs, 300 S.W.3d 35 | 307A+36.1 | The relators assert the trial court abused its discretion by ordering them to produce their net-worth information to the McCoys. A defendant's net worth is relevant in a suit involving exemplary damages. Lunsford v. Morris, 746 S.W.2d 471, 473 (Tex.1988) (orig. proceeding), overruled on other grounds, Walker, 827 S.W.2d at 842; Miller v. O'Neill, 775 S.W.2d 56, 58 (Tex.App.-Houston [1st Dist.] 1989, orig. proceeding). Therefore, in cases where punitive or exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth. Lunsford, 746 S.W.2d at 473. Generally, in cases concerning the production of financial records, the burden rests upon the party seeking to prevent production. In re Brewer Leasing, Inc., 255 S.W.3d 708, 712 (Tex.App.-Houston [1st Dist.] 2008, orig. proceeding [mand. denied] ); In re Patel, 218 S.W.3d 911, 916 (Tex.App.-Corpus Christi 2007, orig. proceeding). | A defendant's net worth is relevant in a suit involving exemplary damages; therefore, in cases where such damages may be awarded, parties may discover and offer evidence of a defendant's net worth. | Is a defendant's net worth relevant in a suit involving exemplary damages? | 031177.docx | LEGALEASE-00137012-LEGALEASE-00137015 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 14519 | Jordan v. Jordan, 130 S.C. 330 | 307A+720 | The appellant by nine exceptions complains of error on the part of his honor. The exceptions must be sustained and judgment reversed. The title is in appellant, and he is entitled to possession even though the respondent is his wife; he has a right to put her out of his house, and her remedy is by a suit for alimony or a criminal indictment. It is a suit at law, and his honor was in error in referring it to the master. While an amendment can be allowed by the court during the trial, yet, if it takes the other side by surprise, the case should be continued. | Where amendment allowed during trial takes other side by surprise, case should be continued. | "Where an amendment allowed during trial takes the other side by surprise, should the case be continued?" | 031200.docx | LEGALEASE-00137061-LEGALEASE-00137062 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14520 | Bruno v. Gauthier, 70 So. 2d 693 | 308+89(5) | In Ruiz v. Trocchiano, La.App., 38 So.2d 184, 187, we quoted with approval from the opinion of the trial court as follows:"It has been held on several occasions both by the Supreme Court and the Courts of Appeal that where an agent sues for commissions, he is not required to allege or prove the payment of his licenses; his failure to have a license being a matter of defense to be set up and proved by the defendant. Stanford v. Bischoff, 159 La. 892, 106 So. 371; Viguerie v. Davis, 5 La.App. 77; Layne v. Henderson, 9 La.App. 452, 121 So. 313." | An agent suing for commissions is not required to allege or prove his payment for license, but his lack of license is a matter of defense to be set up and proved by defendant principal. | "If an agent sues for commissions, is he required to prove his licenses?" | 041324.docx | LEGALEASE-00136870-LEGALEASE-00136871 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14521 | Am. Soc. of Mech. Engineers v. Hydrolevel Corp., 456 U.S. 556 | 308+159(1) | As the Court of Appeals observed, under general rules of agency law, principals are liable when their agents act with apparent authority and commit torts analogous to the antitrust violation presented by this case. See generally 10 W. Fletcher, Cyclopedia of the Law of Private Corporations " 4886, pp. 400"401 (rev. ed. 1978); W. Seavey, Law of Agency " 92 (1964). For instance, a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority. See, e. g., Standard Surety & Casualty Co. v. Plantsville Nat. Bank, 158 F.2d 422 (CA2 1946), cert. denied, 331 U.S. 812, 67 S.Ct. 1203, 91 L.Ed. 1831 (1947). Similarly, a principal is liable for an agent's misrepresentations that cause pecuniary loss to a third party, when the agent acts within the scope of his apparent authority. Restatement (Second) of Agency "" 249, 262 (1957) (Restatement); see Rutherford v. Rideout Bank, 11 Cal.2d 479, 80 P.2d 978 (1938). Also, if an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement. Restatement "" 247, 254. Finally, a principal is responsible if an agent acting with apparent authority tortiously injures the business relations of a third person. Id., " 248 and Comment b, p. 548. | Under general rules of agency law, principals are liable when their agents act with apparent authority and commit torts. | Is principal liable for the acts of an agent? | 042150.docx | LEGALEASE-00136787-LEGALEASE-00136788 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14522 | In re Carnahan, 160 N.H. 73 | 413+2 | The rights and remedies provided by the workers' compensation law are "purely statutory." McKay v. N.H. Compensation Appeals Bd., 143 N.H. 722, 727, 732 A.2d 1025 (1999). "We are the final arbiter of the meaning of the workers' compensation statute, and the nature and extent of compensation to the injured employee ... is governed by the express statutory language and that which can be fairly implied therefrom." Appeal of Hiscoe, 147 N.H. 223, 230, 786 A.2d 96 (2001) (quotation omitted). | The rights and remedies provided by the workers' compensation law are purely statutory. | Are the rights and remedies provided by the workers compensation laws purely statutory? | 048032.docx | LEGALEASE-00136976-LEGALEASE-00136977 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14523 | New Haven Sav. Bank v. Follins, 431 F. Supp. 2d 183 | 83E+405 | Holder status is not conferred on Pacific simply because the Follinses' Note is a negotiable instrument. Because the Note had been transferred from the original payee, Aetna/ITT, to TFS, negotiation of the instrument is necessary for Pacific to achieve holder status. Morgan v. Bruce, 1993 WL 786892, (S.D.Miss., 1993). A proper negotiation of an instrument payable to an identified person"as is the case here"requires the holder's written endorsement on the instrument itself or on a separate paper that is firmly affixed to the promissory note. Morgan, 1993 WL 786892, ; In Re Gavin, 319 B.R. 27, (1 Cir., B.A.P.2004); compare Federal Deposit Insurance Corporation v. Houde, 90 F.3d 600, 604"5 (1 Cir., 1996). For example, in Morgan, the defendant executed a promissory note in favor of a third-party defendant, Hensarling. Hensarling later assigned the promissory note to the plaintiff, Morgan, as partial payment in a real estate transaction the parties had entered. Morgan, 1993 WL 786892. Upon transferring the note, Hensarling attached an assignment to the note which he had endorsed and notarized. When the plaintiff later brought suit on the note, the defendant asserted that because the note had not been properly endorsed, the plaintiff was not a holder, and therefore precluded from bringing an action on the note. Morgan, 1993 WL 786892, 13. The Court disagreed, concluding that the attached assignment served as an effective endorsement and that the note had been properly negotiated thereby enabling Morgan to qualify as a holder.16 Morgan, 1993 WL 786892, 13. | Under Massachusetts law, proper negotiation of instrument payable to identified person requires holder's written endorsement on instrument itself or on separate paper that is firmly affixed to promissory note. M.G.L.A. c. 106, S 3-104(a). | Whether endorsement should be on the instrument itself to be effective? | 009429.docx | LEGALEASE-00138101-LEGALEASE-00138102 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14524 | United States v. Duvall, 846 F.2d 966 | 63+1(2) | 18 U.S.C. " 666(b) (Supp.1984) (emphasis added). From simply reading the statute, it is clear that the $5000 figure qualifies the transactions or series of transactions that the recipient of the bribe carries out in exchange for receiving "anything of value." The wording of the section does not place a value on the bribe, and the defendants point to nothing in the statute, or in its legislative history, to suggest the $5000 qualification that they urge us to adopt. Thus we conclude that the district court's view of the law was correct, and under that view, the evidence is undoubtedly sufficient. | The Government was not required to prove that county supervisors accepted bribes with value of more than $5,000, in action arising out of kickbacks in purchases of county materials; $5,000 figure contained in bribery statute did not place value on bribe, but rather qualified transactions or series of transactions that recipient of bribe carries out in exchange for receiving "anything of value." 18 U.S.C.A. S 666(b). | Does the $5000 value apply to the bribe or the transaction or series of transactions? | Bribery - Memo #511 - C-CSS.docx | ROSS-003303639-ROSS-003303641 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 14525 | People v. Allen, 20 Cal. App. 4th 846 | 67+2 | The definition of the term "lock" must be formulated in accordance with the circumstances. To constitute a burglary, "neither forced entry in the usual sense of the word nor use of burglar tools [is required]." (In re Charles G. (1979) 95 Cal.App.3d 62, 67, 156 Cal.Rptr. 832.) Thus, for example, in People v. Malcolm, supra, 47 Cal.App.3d 217, 120 Cal.Rptr. 667, there is a burglary in the following situation: all doors of the victim's car are locked with a key; all of the car's windows are rolled up and closed; the left front wind wing lock is broken preventing the wind wing from being locked; and a perpetrator gains entry into the passenger compartment by pushing open the wind wing, reaching inside the car, and opening the door. "By mere happenstance, one wind wing was faulty and could not be tightly secured, thereby allowing the defendant to gain entrance into the car." (Id. at p. 223, 120 Cal.Rptr. 667.) There was a burglary in Malcolm, supra, because entry was obtained through a wind wing, a part of the car not designed to allow access to the vehicle's interior compartments, the owner reasonably expected any belongings inside the car to be secure, a common sense examination of the situation requires that result, and the statute is to be construed flexibly. | To constitute an auto burglary, neither forced entry in the usual sense of the word nor use of burglar tools is required. West's Ann.Cal.Penal Code S 459. | Does burglary involve entry by use of force? | Burglary - Memo 142 - JS.docx | ROSS-003317439-ROSS-003317441 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14526 | State v. Crow, 517 S.W.2d 753 | 67+9(2) | Entry is an indispensable element in the crime of burglary, but, to prove entry, it is not necessary to show that the defendant's whole body made an entrance into the house. The following quote from Wharton's Criminal Law and Procedure, Anderson Edition, Sec. 421, states the law relevant to the present inquiry 'Any penetration, however slight, of the space within the house by the defendant, or by any part of his body or by any instrument inserted for the purpose of perpetrating a felony therein, is a sufficient entry." | Entry is indispensable element in crime of burglary, but to prove entry, it is not necessary to show that defendant's whole body made entrance into building; entry of hand or an instrument is sufficient. T.C.A. S 39-904. | Is entry necessary for burglary? | Burglary - Memo 143 - JS.docx | ROSS-003330648-ROSS-003330650 | SA, Sub | 0.58 | 0 | 0 | 1 | 1 | |
| 14527 | State v. Scott, 38 Or. App. 465 | 67+4 | ORS 164.205(1) defines "building" as used in the burglary statutes: " "Building," in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein. Where a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, a separate building." | "Railway boxcar," which conceivably could be adapted for purpose of carrying on business therein or for accommodating people overnight, but which was not so adapted and was nothing more than structure on wheels designed for storage of goods during their transportation, was not a "building" as defined in burglary statute, and thus defendant could not be convicted of first-degree burglary of boxcar. ORS 164.205(1). | What is a building under the burglary statute? | Burglary - Memo 156 - JS.docx | ROSS-003289299-ROSS-003289301 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 14528 | Petree v. State, 530 S.W.2d 90 | 210+815 | So, upon principle and authority, we conclude and hold that the law of this State now is that larceny and attempt to commit larceny are not essential elements of burglary and, hence, are not lesser included offenses of that crime. | Larceny and attempt to commit larceny are not essential elements of burglary and hence are not lesser included offenses of that crime. T.C.A. SS 39-901, 39-903, 39-904, 39-4202. | Is larceny a lesser included offense than burglary? | Burglary - Memo 97 - JS.docx | ROSS-003290459-ROSS-003290460 | Condensed, SA | 0.23 | 0 | 1 | 0 | 1 | |
| 14529 | N. Indiana Transit v. Burk, 228 Ind. 162 | 200+179 | The general rule is that a violation of a statute enacted for reasons of safety is negligence per se, or negligence as a matter of law. Rentschler v. Hall, 1946, 117 Ind.App. 255, 69 N.E.2d 619; Cook v. Ormsby, 1909, 45 Ind.App. 352, 89 N.E. 525. "Where a standard of duty is fixed, and its measure defined by law, the omission of that duty is negligence per se." Presto-O-Lite Co. v. Skeel, 1914, 182 Ind. 593, 600, 106 N.E. 365, 368, Ann.Cas. 1917A, 474, supra. It has been held that the violation of statutory requirements as to lights, flares, reflectors and brakes creates an absolute duty and constitutes negligence per se.At common law the right to stop at a reasonable place and in a reasonable manner is an incident of the right to travel. Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., " 1191. Mechanical failure, obedience to police officers, partial road blocks, persons standing in the street, obstructions, conditions in the street dangerous to life or property, congested traffic situations, or other vehicles already stopped or parked may prevent an operator from stopping parallel with and not more than within twelve inches of the right hand curb. It must be borne in mind that a common carrier bus has the positive duty to receive and discharge passengers, and that contract carriers and common carriers of freight have the duty to deliver their cargoes. Other operators of motor vehicles in the exercise of the right to travel have the right to make reasonable stops as an incident thereto. However, that which might constitute an excuse for stopping for a reasonable purpose and time might not be an excuse for parking, which may involve more than a temporary interference with other moving traffic. In view of these considerations which must have been well known to the legislature we do not believe that " 109 of the act intended to create any absolute and conclusive duty the technical violation of which would not be subject to any excuse. | At common law, the right to stop at a reasonable place and in a reasonable manner is an incident of the right to travel. | Is the right to stop at a reasonable place and in a reasonable manner an incident of the right to travel? | 018825.docx | LEGALEASE-00137738-LEGALEASE-00137739 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 14530 | Otto v. Young, 227 Mo. 193 | 302+9 | Appellants criticise the petition because it does not tender into court the balance of the purchase money, $5,900, to the defendant Robert Young, but tenders it for the benefit of "whom it may concern." When a plaintiff states his facts to the court and puts his money in the hands of the court to be paid to whom the court shall adjudge under the facts entitled to it, it amounts to the same thing as if he had himself divined before final judgment who was entitled to it and had tendered the money into court for him. Under our system of pleading, it is sufficient if he states the facts and leaves the court to find the law. The presumption is that the court is going to decide the law correctly and give to every one his dues. As to who of the Youngs will take the money, the decree seems to leave it to them to settle between themselves, and we do not discover any complaint of the decree on that account. The evidence shows that Robert Young has in his possession all the deeds that the decree calls for, and he has only to deliver them, with his own deed, to the plaintiff, or to the court for him, and receive the money. There is no controversy between him and his mother and sister as to whom the money is due. His brother William has no interest in the land and is asserting no claim to the money. | Under our system of pleading it is sufficient if the pleader states the facts and leaves the court to find the law. | Is it sufficient to states the facts and leaves the court to find the law? | 023355.docx | LEGALEASE-00137073-LEGALEASE-00137074 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14531 | Black v. Sutton, 299 Ky. 836 | 302+48 | It is apparent that the various ordinances and resolutions to which reference has been made are writings upon which this action is founded, within the meaning of " 120 of the Civil Code of Practice. White v. City of Williamsburg, 213 Ky. 90, 280 S.W. 486; City of Richmond v. Madison Female Inst., 153 Ky. 301, 155 S.W. 371; Howard v. Howard, 236 Ky. 557, 33 S.W.2d 635. Section 120 of the Code requires that such writings must be filed as a part of the pleadings if in the power of the party to produce them; and if not, the reason *839 for the failure must be given in the pleading. A demurrer does not reach the failure of the petition to file such writings but a motion for a rule to file them is the proper procedure. White v. City of Williamsburg, 213 Ky. 90, 280 S.W. 486. Appellee by failing to plead the terms of these writings or to make them a part of or to file them as exhibits with his petition, stated nothing but the legal conclusions of the pleader and his petition as amended is bad upon demurrer, which only admits facts well pleaded and not conclusions. 41 Am.Jur. " 16, p. 301 and " 240, p. 460; Farmers Bank v. Bass, 218 Ky. 813, 292 S.W. 489; Mitchell Mill Remnant Corporation v. Long, 223 Ky. 242, 3 S.W.2d 639. It is the duty of the pleader to state facts from which legal conclusions may be drawn and declared by the courts.Davis v. Watkins, 241 Ky. 261, 43 S.W.2d 712. | The pleader must state facts from which legal conclusions may be drawn and declared by the courts. | Should the pleader state facts from which legal conclusions may be drawn? | 023357.docx | LEGALEASE-00137105-LEGALEASE-00137106 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14532 | Melito v. Interboro Mut. Indem. Ins. Co., 73 A.D.2d 819 | 302+8(1) | A complaint is required to contain statements of sufficient particularity to give the court and the parties notice of the transactions and occurrences intended to be proved, along with the material elements of each cause of action (CPLR 3013). While "material facts" need no longer be pleaded ". . . under the (Civil Practice Law and Rules), the statements in pleadings are still required to be factual, that is, the essential facts required to give "notice" must be stated." (Foley v. D'Agostino, 21 A.D.2d 60, 63, 248 N.Y.S.2d 121, 125). A complaint is insufficient if based solely on conclusory statements, unsupported by factual allegations (Taylor v. State of New York, 36 A.D.2d 878, 320 N.Y.S.2d 343). The test to be applied to the sufficiency of pleadings is not whether the complaint has stated a cause of action but rather, upon examination of the four corners of the pleading, do the factual allegations contained therein indicate the existence of a cause of action (Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 401 N.Y.S.2d 182, 372 N.E.2d 17). Using this yard stick, and accepting those factually supported allegations in plaintiff's complaint as true, he has failed to state a cause of action against defendant Hartford. | While "material facts" need not be pleaded, statements in pleadings must be factual, i. e., essential facts required to give notice must be stated. CPLR 3013. | Are the statements in pleadings required to be factual? | 023363.docx | LEGALEASE-00137209-LEGALEASE-00137210 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14533 | Winneshiek Mut. Ins. Ass'n v. Roach, 257 Iowa 354 | 302+9 | "* * * A pleader must plead the ultimate facts in the case. He cannot plead conclusions by themselves. A good pleading consists of the statements of the ultimate facts in the case, and, when so stated, the pleader has a right to plead his conclusions based upon those facts' (citations). Eaton v. Downey, supra, 254 Iowa 573, 578, 118 N.W.2d 583, 586. See also 71 C.J.S. Pleading "" 14, 15; 41 Am.Jur., Pleading, section 16. | Pleader must plead ultimate facts in case and cannot plead conclusions by themselves; good pleading consists of statements of ultimate facts and, when so stated, pleader has right to plead his conclusions based thereon. | Can a pleader plead conclusions by themselves? | 023373.docx | LEGALEASE-00137619-LEGALEASE-00137620 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 14534 | In re Butler, 101 N.Y. 307 | 307A+723.1 | We hold that relator has not preserved error as to his request to have his attorney present. Proceedings in contempt cases should conform as nearly as practicable to those in criminal cases. Ex parte Sanchez, 703 S.W.2d 955, 957 (Tex.1986) (citing Ex parte Cardwell, 416 S.W.2d 382, 384 (Tex.1967)). Article 29.03 of the Texas Code of Criminal Procedure provides: "A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown." Assuming that relator's request was a motion for continuance, he failed to preserve error, if any, by noncompliance with art. 29.03. It is not an abuse of discretion to deny an oral motion for continuance that is not reduced to writing. See Strickland v. State, 815 S.W.2d 309, 311 (Tex.App."Tyler 1991, no pet.). Here relator's motion for continuance was not reduced to writing. | It is not an abuse of discretion to deny an oral motion for continuance that is not reduced to writing. | Is it is an abuse of discretion to deny an oral motion for continuance that is not reduced to writing? | 030317.docx | LEGALEASE-00137479-LEGALEASE-00137480 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 14535 | Jordan v. Jordan, 130 S.C. 330 | 307A+720 | The appellant by nine exceptions complains of error on the part of his honor. The exceptions must be sustained and judgment reversed. The title is in appellant, and he is entitled to possession even though the respondent is his wife; he has a right to put her out of his house, and her remedy is by a suit for alimony or a criminal indictment. It is a suit at law, and his honor was in error in referring it to the master. While an amendment can be allowed by the court during the trial, yet, if it takes the other side by surprise, the case should be continued. | Where amendment allowed during trial takes other side by surprise, case should be continued. | "While an amendment can be allowed by the court during the trial, if it takes the other side by surprise, should the case be continued?" | Pretrial Procedure - Memo # 4393 - C - MS.docx | ROSS-003290022-ROSS-003290023 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14536 | In re Wurtzel, 18 Misc. 2d 994 | 307A+94 | A filiation proceeding initiated in a Children's Court, pursuant to the Domestic Relations Law, " 1 et seq., is civil and noncriminal in nature (Matter of Clausi, 296 N.Y. 354, 355, 73 N.E.2d 548, 549). Section 288 of the Civil Practice Act, a part of Article 29 thereof, provides for depositions before trial by a party to an action "in a court of record". A Children's Court is not a court of record (Judiciary Law, " 2). The right to examine a party being purely statutory (Keller v. Coster, 274 App.Div. 932, 83 N.Y.S.2d 751), and the provisions of said article 29 of the Civil Practice Act being inapplicable to Children's Court ("Denton" v. "Denton", 179 Misc. 681, 685, 37 N.Y.S.2d 704, 709; Civ.Prac.Act, " 288; Judiciary Law, " 2), the within application must be denied. | In filiation proceeding, motion for order striking petition of complainant for failure to attend for examination in Children's Court must be denied, in view that statute providing for depositions before trial by a party to an action in a "court of record" is inapplicable to the Children's Court which is not a "court of record." Civil Practice Act, S 288 et seq.; Rules of Civil Practice, rule 120 et seq.; Domestic Relations Law, S 1 et seq.; Judiciary Law, S 2. | Is the right to examine a party before trial purely statutory? | Pretrial Procedure - Memo # 4455 - C - KG.docx | ROSS-003318121-ROSS-003318122 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 14537 | Behm v. Cape Lumber Co., 834 So. 2d 285 | 307A+36.1 | Florida Rule of Civil Procedure 1.280(b)(1) allows parties to obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action. Even information that is inadmissible at trial is subject to discovery if it appears to be reasonably calculated to lead to the discovery of admissible evidence. Id.; see also Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995). Proper discovery includes records and information that are relevant to the calculation of damages. See Fla. Gaming Corp. of Del. v. Am. Jai-Alai, Inc., 673 So.2d 523, 524 (Fla. 4th DCA 1996). | Proper discovery includes records and information that are relevant to the calculation of damages. West's F.S.A. RCP Rule 1.280(b)(1). | Does proper discovery include records and information that are relevant to the calculation of damages? | Pretrial Procedure - Memo # 4470 - C - CK.docx | ROSS-003304607-ROSS-003304608 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14538 | Bagley v. Winslow, 34 Misc. 223 | 307A+91 | It may be regarded as settled by the court of appeals that an order to examine a party to an action at the instance of his adversary is a discretionary order. Jenkins v. Putnam, 106 N.Y. 272, 12 N.E. 613. Without attempting to lay down any general rule when such an examination may be properly had, or to harmonize the various decisions in this state, it may be said that courts now generally require the necessity to be shown for having such an examination before the trial. Hay v. Zeiger, 50 App.Div. 462, 64 N.Y.Supp. 202; Williams v. Folsom, 52 Hun, 68, 5 N.Y.Supp. 211; Skinner v. Steele, 88 Hun, 307, 34 N.Y.Supp. 748; Britton v. MacDonald, 3 Misc.Rep. 514, 23 N.Y.Supp. 350. Just when this necessity arises, it may at times be difficult to determine. That such an examination will not ordinarily be permitted solely to ascertain in advance the nature of the testimony which the party will give upon the trial seems clear. Each case must necessarily be determined upon its own peculiar circumstances. In this case it appears that the promissory note upon which the action is brought is barred by the statute of limitations unless it can be established that certain payments which were made by Lauren C. Woodruff, now deceased, and one of the makers of the note, were made as agent for the defendant. The affidavit of the plaintiff tends to show that such relation did exist between the defendant and Woodruff, and that Woodruff acted as the defendant's agent in making payments upon the note; that these facts are peculiarly within the knowledge of the defendant; and that the plaintiff has no other means of establishing that fact. Under such circumstances the examination has been permitted. Carter v. Good, 57 Hun, 116, 10 N.Y.Supp. 647; Leach v. Haight, 34 App.Div. 522, 54 N.Y.Supp. 550; Carr v. Risher, 20 Abb.N.C. 176. And it seems that the mere fact that the party to be examined may be present at the trial is not sufficient to revoke the order. Presbrey v. | An order to examine an adverse party before trial will not be granted unless the necessity for such an examination before trial is clearly shown, and unless it appears that material facts are in his knowledge which the moving party cannot in any other manner establish. | Will an order to examine an adverse party before trial not be granted unless the necessity for such an examination before a trial is clearly shown? | 031006.docx | LEGALEASE-00137621-LEGALEASE-00137623 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14539 | Sparacello v. Andrews, 501 So. 2d 269 | 307A+725 | The Louisiana Code of Civil Procedure provides the mechanism with which a court may grant or deny a motion to continue. LSA"C.C.P. art. 1601 provides that a continuance may be granted in any case if there is good ground therefor. Under this article, a continuance rests within the sound discretion of the trial court. Armstrong v. State Farm Fire & Casualty Company, 423 So.2d 79 (La.App. 1st Cir.1982). A trial judge must look to the facts of each case when a motion to continue is requested. Katz v. Melancon, 467 So.2d 1284 (La.App. 4th Cir.1985). Among the factors a trial judge considers before granting a continuance are diligence, good faith and reasonable grounds. Katz v. Melancon, supra. Weighed against the possibility of injustice, unfairness and inequity, which might result from a premature trial, is the effect that a continuance might have on the administration of justice, including congested court dockets, and just as important, a defendant's corollary right to have serious charges against him judicially resolved within a reasonable time. Dubea v. State, Louisiana Department of Corrections, 465 So.2d 245 (La.App. 3rd Cir.1985); Patterson v. Leggio, 347 So.2d 1262 (La.App. 1st Cir.1977). | Trial judge must look to facts of each case in ruling on party's motion for continuance. LSA-C.C.P. art. 1601. | Should a judge look to facts of each case in ruling on a partys motion for continuance? | 031266.docx | LEGALEASE-00137248-LEGALEASE-00137249 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 14540 | Decesare v. Lembert, 144 Cal. App. 3d 20 | 307A+725 | Section 1024, a section within chapter 6, does not specifically identify attorney fees as costs which may be imposed as a condition for granting a continuance. It provides: "When an application is made to a court or referee to postpone a trial, the payment of costs occasioned by the postponement may be imposed, in the discretion of the court or referee, as a condition of granting the same."It is thus apparent that there is no statutory basis for an allowance of attorney fees as a condition for granting a postponement. | There is no statutory basis for an allowance of attorney fees as condition for granting postponement. West's Ann.Cal.C.C.P. SS 1021 et seq., 1024. | Is there a statutory basis for an allowance of attorney fees as condition for granting postponement? | 031421.docx | LEGALEASE-00137316-LEGALEASE-00137319 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 14541 | Crow-Crimmins-Wolff & Munier v. Westchester Cty., 126 A.D.2d 696 | 307A+36.1 | It is well settled that if discussions are had between parties pursuant to an agreement that those discussions are off the record, "then no discovery with respect to those discussions may be had" (see, Paine, Webber, Jackson & Curtis v. Alanthus Corp., 82 A.D.2d 877, 440 N.Y.S.2d 317). Therefore, to the extent that the information sought by CCWM was the content of discussions had during the plant visit, discovery was clearly barred. | No discovery may be had with respect to discussions between parties pursuant to an agreement providing that those discussions are off the record. McKinney's CPLR 3101(b), 5701(c). | Can no discovery be had with respect to discussions between parties pursuant to an agreement providing that those discussions are off the record? | Pretrial Procedure - Memo # 5037 - C - ES.docx | ROSS-003305239-ROSS-003305240 | Order, SA | 0.59 | 1 | 0 | 0 | 1 | |
| 14542 | Stern v. Four Freedoms Nat. Med. Servs., Co., 417 So. 2d 1085 | 307A+724 | In the present case, the trial court was well within its discretion in denying plaintiffs' motion for continuance because they failed to comply with the formal requisites of Florida Rule of Civil Procedure 1.460. That rule states, in pertinent part:The motion shall state all of the facts that the movant contends entitle him to a continuance. If a continuance is sought on the ground of nonavailability of a witness, the motion must show when it is believed the witness will be available.In deciding upon the sufficiency of a motion for continuance, no presumption favorable to the applicant is to be indulged. Hall v. Florida State Drainage Land Co., 89 Fla. 312, 103 So. 828 (1925). | In deciding upon sufficiency of motion for continuance, no presumption favorable to applicant is to be indulged. West's F.S.A. Rules Civ.Proc., Rule 1.460. | "Should a presumption favorable to the applicant be indulged, in deciding the sufficiency of an affidavit for continuance?" | 031949.docx | LEGALEASE-00138055-LEGALEASE-00138056 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 14543 | Heine v. Colton, Hartnick, Yamin & Sheresky, 786 F. Supp. 360 | 308+106 | A power of attorney "evidence[s] the authority of the agent to third parties with whom the agent deals." Id. Moreover, sections 5"1501 through 5"1602 of the New York General Obligations Law specifically authorize the use of a power of attorney and define the scope of the authority it confers. For example, section 5"1502A covers the construction of a power of attorney regarding real estate transactions, and authorizes the attorney in fact "to hire ... any attorney." N.Y.G.O.L. " 5"1502A(11). The attorney-in-fact is also authorized "to receive ... any money ... to which the principal is, or may become ... entitled." N.Y.G.O.L. " 5"1502A(6). General principles of agency law also support the power of an agent to accept payment on behalf of a principal. See Restatement (Second) of Agency " 62. | General principles of agency law support power of agent to accept payment on behalf of principal. N.Y.McKinney's General Obligations Law S 5-1502A, subds. 6, 11. | Can an agent accept payment on behalf of a principal? | Principal and Agent - Memo 77 - KC.docx | ROSS-003291286-ROSS-003291287 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14544 | Gianforte v. Crucible Steel Co. of Am., 25 N.J. Super. 183 | 413+1 | Preliminarily, let us note that the rights of the respective parties in a workmen's compensation case, as consistently interpreted by our courts, are determined as of the date of the award, Savitt v. L. & F. Construction Co., 123 N.J.L. 149, 8 A.2d 110 (Sup.Ct.1939); McLaughlin v. Hahne, 169 A. 542, 12 N.J.Misc. 6 (Sup.Ct.1933) affirmed 113 N.J.L. 32, 172 A. 566 (E. & A.1934). They have also recognized and approved retrospective legislation where it affects only a procedural change, J. W. Ferguson Co. v. Seaman, 119 N.J.L. 575, 197 A. 245 (E. & A.1938), including a change in a rule of evidence, Langenohl v. Spearen, Preston & Burrows, 22 N.J.Super. 392, 92 A.2d 75 (App.Div.1952). However, such an interpretation is not applied to laws affecting a substantive right, Williams v. Brokaw, 74 N.J.Eq. 561, 70 A. 665 (Ch.1908); Frelinghuysen v. Town of Morristown, 77 N.J.L. 493, 72 A. 2 (E. & A. 1908). | Rights of parties in a workmen's compensation case are determined as of date of award. | Are the rights of parties in a workmens compensation case determined as of the date of the award? | 047914.docx | LEGALEASE-00137101-LEGALEASE-00137102 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14545 | United States v. Gillette, 420 F.2d 298 | 34+20.1(1) | "The constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping." United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968); Lichter v. United States, 334 U.S. 742, 755-758, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918). The exercise of this power to conscript and train men does not depend on the contemporaneous existence of a war. It may be exercised in time of peace. United States v. Henderson, 180 F.2d 711, 713 (7th Cir. 1950). We reaffirm our holdings in United States v. Mitchell, 369 F.2d 323 (2d Cir. 1966) and United States v. Bolton, 192 F.2d 805 (2d Cir. 1951) that allegations that a particular employment of the armed services is in violation of the Constitution, international treaties or a moral code do not raise a defense to a prosecution for failure to report for induction into the armed forces. For these reasons Gillette cannot successfully challenge the legality of the war in Vietnam in these proceedings. | Exercise of power to conscript and train men does not depend on contemporaneous existence of a war and may be exercised in time of peace. | Does the exercise of power to conscript depend on the contemporaneous existence of a war? | Armed Services - Memo 227 - SB.docx | ROSS-003304261-ROSS-003304262 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14546 | Stratton v. Equitable Bank, N.A., 104 B.R. 713 | 172H+617 | Pursuant to " 3"419(1)(c), a negotiable instrument is converted when it is paid on a forged or otherwise unauthorized indorsement. For example, a bank may be liable for conversion when it permits the deposit of a check into a third-party's account over the missing or unauthorized indorsement of the named payee. See Mid"Atlantic, 658 F.Supp. at 143; Taylor v. Equitable Trust Co., 269 Md. 149, 157, 304 A.2d 838 (1973). In this case, the indorsement of "FAMCO," the named payee, was not made on the checks before the indorsement over to "MH Mortgage." It is well established, however, that a bank may affirmatively demonstrate the good faith or commercial reasonableness of its actions within a particular factual context. See " 3"419(3); Taylor, supra. In this particular case, this Court concludes as a matter of law that it was not commercially unreasonable for defendant Equitable to accept these checks for deposit in the MH Mortgage account even though there was no FAMCO indorsement. | Under Maryland law, bank may be liable for conversion when it permits deposit of check into third party's account upon missing or unauthorized endorsement of named payee. Md.Code, Commercial Law S 3-419(1)(c). | Can the bank be held liable for conversion of check? | 010326.docx | LEGALEASE-00138620-LEGALEASE-00138621 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 14547 | In re Wells, 407 B.R. 873 | 83E+481 | Under Ohio law, the right to enforce a note cannot be assigned"instead, the note must be negotiated in accord with Ohio's version of the Uniform Commercial Code. See Ohio Rev.Code " 1301.01 et seq. and " 1303.01 et seq.; see also U.C.C. Article 3. An attempt to assign a note creates a claim to ownership, but does not transfer the right to enforce the note. | Under Ohio law, right to enforce promissory note cannot be assigned; rather, note must be negotiated in accordance with Ohio's version of the Uniform Commercial Code (UCC). Ohio R.C. S 1303.22. | Can the right to enforce a note be assigned? | Bills and Notes -Memo 387 -VP.docx | ROSS-003302040-ROSS-003302041 | SA, Sub | 0.46 | 0 | 0 | 1 | 1 | |
| 14548 | People v. Dioguardi, 8 N.Y.2d 260 | 164T+8 | As noted in Hornstein v. Paramount Pictures, 22 Misc.2d 996, 1003, 1006, 37 N.Y.S.2d 404, 412, affirmed 266 App.Div. 659, 41 N.Y.S.2d 210, affirmed 292 N.Y. 468, 55 N.E.2d 740, where payments to labor officials to forestall a threatened strike were held to constitute extortion rather than bribery, "the essence of bribery is the voluntary giving of something of value to influence the performance of official duty", whereas the essence of extortion is "duress'. Although the theoretical distinction between the two crimes is clear, the line of demarcation may not, in practical application, always be clear, particularly where, as here, the allegedly extorsive demand for payment was couched in the form of polite suggestions, and it is claimed that the payments were solicited from a receptive and willing donor. | Bribery of labor representative and extortion are mutually exclusive crimes, and essence of "bribery" is the voluntary giving of something of value to influence the performance of official duty, whereas the essence of "extortion" is duress. Penal Law, S 380 and subd. 2. | What is the essence of bribery? | 011776.docx | LEGALEASE-00138148-LEGALEASE-00138149 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 14549 | State v. Stock, 212 So. 3d 1268 | 67+29 | Specific intent is required for a conviction for simple burglary, and it may be inferred from the circumstances and actions of the accused. State v. Naquin, 10" 474 (La. App. 5 Cir. 2/15/11), 61 So.3d 67, 71. Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Id. See also Dibartolo, supra, 168 So.2d 754 at 759. | Specific intent is required for a conviction for simple burglary, and it may be inferred from the circumstances and actions of the accused. La. Rev. Stat. Ann. S 14:62.2. | Can specific intent in burglary be inferred from circumstances? | Burglary - Memo 168 - KNR.docx | ROSS-003290456-ROSS-003290458 | SA, Sub | 0.64 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14550 | Edgett v. State, 43 So. 3d 541 | 67+19 | Edgett claims the trial court should have directed a defense verdict at the close of the State's case based on the insufficiency of the evidence supporting his intent to rape. "Because the offense of burglary itself requires an underlying crime, an indictment for burglary that does not specify what crime the accused intended to commit is fatally defective." Lambert v. State, 462 So.2d 308, 311 (Miss.1984). We find the same rationale applies to a charge of attempted burglary. Here, the State alleged that Edgett intended to commit the crime of rape; thus, the crime intended is specifically stated. We also note the overt acts in furtherance of the alleged attempted burglary were sufficiently pled in a heavily fact-laden indictment, which charged:on or about April 5, 2008 ... [Edgett], did willfully, unlawfully and feloniously attempt to break and enter the dwelling house of Linda Townes ... by trying to force his way into the house against her will and trying to remove a screen from a window to effect entry, with the willful, unlawful, and felonious intent to rape the said Linda Townes, but was prevented from committing said burglary by the arrival of a police officer.... | Because the offense of burglary itself requires an underlying crime, an indictment for burglary that does not specify what crime the accused intended to commit is fatally defective. | Does burglary require an underlying crime? | Burglary - Memo 184 - KNR.docx | ROSS-003288957-ROSS-003288960 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14551 | United States v. Coutchavlis, 260 F.3d 1149 | 129+107 | In Albers, we recently had occasion to explicate the word "public" as used in " 2.34(a). Although Albers involved a conviction under subsection (a)(4), the word "public" appears in (a), which is common to both provisions, and thus the discussion is relevant here. The Albers court looked to the Model Penal Code, which defines "public" as "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways." Model Penal Code " 250.2(1) (1962) (emphasis added); see also United States v. Taylor, 258 F.3d 1065, 1068 (9th Cir. 2001)(relying on Model Penal Code in interpreting " 2.34); United States v. Elmore, 108 F.3d 23, 26 (3d Cir.1997) (accepting Model Penal Code definition of disorderly conduct as "adequate for purposes of federal law"). Thus the issue is not whether the public actually witnessed the act, but rather whether the act took place in a location accessible to the public. See United States v. Mather, 902 F.Supp. 560, 565 (E.D.Pa.1995) (noting that, "[w]hile some places in the Park are less visible or open than others, this distinction cannot change the legal and practical reality that every square inch of the Park's grounds is public."); United States v. Lanen, 716 F.Supp. 208, 210 (D.Md.1989) ("The fact that the obscene actions are directed at a single person"in this case a police officer"does not make them private if they take place in a "public" place.") | In determining whether defendant's conduct created risk of "public alarm, nuisance, jeopardy, or violence," for purpose of disorderly conduct regulation, the issue is not whether the public actually witnessed the act, but rather whether the act took place in a location accessible to the public. 36 C.F.R. S 2.34(a)(2). | Is it necessary for public to witness the act under the disorderly conduct laws? | 014418.docx | LEGALEASE-00138675-LEGALEASE-00138676 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 14552 | United States v. Mulligan, 177 F. Supp. 384 | 260+1 | It is admitted that no patent has issued to either tract. The title of the defendants is merely a possessory one of limited character. It is possessory of the mineral wealth alone. Until the Government issues the final certificate, it retains both the legal and equitable title. United States v. Etcheverry, 10 Cir., 1956, 230 F.2d 193; Teller v. United States, 8 Cir., 1901, 113 F. 273. | Until federal government issues final certificate, it retains both legal and equitable title to lands for which placer mining claims have been filed. | "Until the government issues the final certificate, does it retain both legal and equitable title to the mineral wealth?" | 021190.docx | LEGALEASE-00138445-LEGALEASE-00138447 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 14553 | Martin v. Gurley, 74 Ga. App. 642 | 302+201 | 1. The court did not err in requiring the defendant to demur in writing. The objection of the defendant to a part of the amendment was not a motion in the nature of a general demurrer, to dismiss the whole petition on the ground that it failed to set out a cause of action, but was a special demurrer addressed to particular allegations. "Grounds of special demurrer to a petition are not good unless set forth in writing and filed at the first term." Calhoun v. Mosley, 114 Ga. 641, 40 S.E. 714; Industrial Life & Health Ins. Co. v. Warren, 44 Ga.App. 357(1), 161 S.E. 627; Wood v. Wood, 166 Ga. 519(7), 143 S.E. 770. Furthermore, the written demurrer was wholly insufficient because it failed to point out any reason why the plaintiff could not recover for lost earnings and for permanent impairment to labor and earn money. "A special demurrer which is itself vague, uncertain, and indefinite, and does not specifically point out wherein the petition is defective, will not be considered by the court." Central of Georgia R. Co. v. Hill, 21 Ga.App. 231, 94 S.E. 50. It has been held many times that a demurrer, "Being a critic, must itself be free from imperfection." This is particularly true of a special demurrer which must point out clearly and specifically the alleged imperfection in the pleading attacked by it. It "Must lay its finger, as it were, upon the very point." Alford v. Davis, 21 Ga.App. 820(4a), 95 S.E. 313. The demurrer was properly overruled. | A demurrer must be free from imperfection, particularly in case of special demurrer, which must point out clearly and specifically alleged imperfection in pleading attacked thereby. | "Must a demurrer, being a critic, be free from imperfections?" | Pleading - Memo 357 - RMM.docx | ROSS-003291642-ROSS-003291643 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14554 | Barker Indus. v. Gould, 146 N.C. App. 561 | 307A+726 | Denying defendants a second continuance to obtain counsel was not an abuse of discretion. The defendants were fully aware their counsel had filed a motion to withdraw, motion had been granted by the trial court a full four months before trial was scheduled to begin, and trial court had given defendants ample opportunity to obtain counsel, including a 30-day stay of the proceedings to enable defendants to retain counsel, and a one day continuance on the day of trial when defendants announced that their attorney was not able to attend court on that day. Defendants' first contention is that the trial court erred by not allowing defendants a second continuance in order to obtain counsel for the 11 November 1999 proceeding. We disagree. | Denying defendants a second continuance to obtain counsel was not an abuse of discretion, where defendants were fully aware their counsel had filed a motion to withdraw, motion had been granted by the trial court a full four months before trial was scheduled to begin, and trial court had given defendants ample opportunity to obtain counsel, including a 30-day stay of the proceedings to enable defendants to retain counsel, and a one day continuance on the day of trial when defendants announced that their attorney was not able to attend court on that day. | Will denying the defendant a second continuance to obtain counsel be considered as an abuse of discretion? | Pretrial Procedure - Memo # 4414 - C - KG.docx | ROSS-003328252-ROSS-003328253 | Condensed, SA | 0.25 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14555 | Gleneagle Ship Mgmt. Co. v. Leondakos, 602 So. 2d 1282 | 307A+36.1 | Federal courts permit discovery for the purpose of determining issues such as whether jurisdiction exists. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13, 57 L.Ed.2d 253 (1978). In Silk v. Sieling, 7 F.R.D. 576, 577 (E.D.Pa.1947), the federal district court stated:There can be no doubt that this Court has the judicial power to hear and determine questions involving its jurisdiction either of the person or of the subject matter nor that, in order to resolve fact issues on which jurisdiction depends, the ordinary process of the court is available to cause evidence bearing on the fact in issue to be produced.The Silk court reasoned that if it refused to allow discovery, defendants would be able to withhold facts concerning the issue which the defendants had raised to the court. In another case which is factually similar to the instant case, the Fifth Circuit Court of Appeals held that a sailor injured on a foreign ship was "not required to rely exclusively upon a defendant's affidavit for resolution of the jurisdictional issue where that defendant ha[d] failed to answer plaintiff's interrogatories specifically directed to that issue." Blanco v. Carigulf Lines, 632 F.2d 656, 658 (5th Cir.1980). The Fifth Circuit reasoned that to require a plaintiff to rely solely on a defendant's affidavits regarding jurisdiction would give the defendant, who fails to comply with discovery, an unfair advantage in the proceedings. | Discovery is permitted for purpose of determining issues such as whether jurisdiction exists. | Is discovery permitted for the purpose of determining issues such as whether jurisdiction exists? | 031062.docx | LEGALEASE-00138139-LEGALEASE-00138141 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 14556 | Rosen v. McCobb, 192 So. 3d 576 | 307A+36.1 | The privacy right of non-parties arises from Article 1, section 23 of the Florida Constitution. Florida also recognizes a party right to discover financial information when related to issues in the case. Bd. of Trs. of the Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC, 99 So.3d 450, 457"58 (Fla.2012). We recognize the trial court's "broad discretion in controlling discovery and in balancing "the right to privacy and the right to know."" Elsner v. E"Commerce Coffee Club, 126 So.3d 1261, 1263 (Fla. 4th DCA 2013) (quoting Friedman v. Heart Inst. of Port St. Lucie, Inc., 863 So.2d 189, 194 (Fla.2003)). | Party has right to discover financial information when related to issues in the case. | Does a party have a right to discover financial information when related to issues in the case? | Pretrial Procedure - Memo # 4528 - C - NE.docx | ROSS-003291751-ROSS-003291752 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14557 | Hewins v. Weiler, 44 Ariz. 309 | 307A+725 | We think, therefore, that a continuance, the length of which is contingent on another event, is valid, and no complaint may be made thereof, unless the complainant has thereby been denied an opportunity to be heard. There is nothing in the order of April 26th which would have that effect, and we conclude therefore that it was within the jurisdiction of the court. | Continuance, length of which is contingent on another event, is valid, unless party is denied opportunity to be heard. | Is a continuance valid if the length of it is contingent on another event? | 031600.docx | LEGALEASE-00138163-LEGALEASE-00138164 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 14558 | Brown v. Gage, 519 S.W.2d 190 | 307A+726 | It is only on the first application that it is not necessary to show that the absent testimony cannot be procured from any other source. On all subsequent applications, this must be shown. Each of the above requirements of Rule 252 must be complied with by the defendants before they can complain of the order of the court in overruling their motion for continuance. | It is only on the first application for continuance that it is not necessary to show that the absent testimony cannot be procured from any other source; on all subsequent applications, this must be shown. Rules of Civil Procedure, rule 252. | Would it be necessary to show on the first application for continuance that the absent testimony cannot be procured? | 031687.docx | LEGALEASE-00138170-LEGALEASE-00138171 | SA, Sub | 0.34 | 0 | 0 | 1 | 1 | |
| 14559 | Stony Brook I Homeowners Ass'n v. Superior Court, 84 Cal. App. 4th 691 | 307A+36.1 | First, a litigant's right to evidence of an expert's potential bias is not unfettered or unconditional. As here, in Allen v. Superior Court, supra, 151 Cal.App.3d at page 449, 198 Cal.Rptr. 737, a personal injury plaintiff subpoenaed financial records of a defense medical expert for the purpose of determining how much defense work the expert performed. The defendant moved for a protective order and his motion was denied. In directing that a protective order be issued, the Court of Appeal stated: " "A constitutional amendment adopted in 1974 elevated the right of privacy to an "inalienable right" expressly protected by force of a constitutional mandate. [Citation.] When the interest of a private litigant in discovering relevant facts conflicts with the right of others to maintain reasonable privacy regarding their financial affairs, a court must "indulge in a careful balancing" before ordering disclosure. [Citation.] It follows that a court must not generously order disclosure of the private financial affairs of nonparties without a careful scrutiny of the real needs of the litigant who seeks discovery...." " (Id. at p. 453, 198 Cal.Rptr. 737.). | Litigant's right to evidence of an expert's potential bias is not unfettered or unconditional. | Is a litigant's right to evidence of an expert's potential bias not unfettered or unconditional? | Pretrial Procedure - Memo # 5073 - C - SU.docx | ROSS-003291190-ROSS-003291191 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14560 | Bartleman v. Humphrey, 441 S.W.2d 335 | 307A+74 | he charge of impeachment by inconsistent statements through improper use of deposition may be disposed of summarily because appellant recognizes the absence of such impeachment when it asserts in its brief that the testimony of Mr. Dysart, whether plaintiff's own witness or adverse party, "was in complete harmony with his testimony on deposition after he had completed and corrected his answers," and that "the corrected and completed testimony of Witness Dysart was consistent with other testimony originally given by him on his deposition." Slaughter v. Sweet & Piper Horse and Mule Co., Mo.App., 259 S.W. 131, 135(10). A deposition under oath consists of "original answers, as well as changed answers, with his reasons, if any, therefor," Capra v. Phillips Inv. Co., Mo., 302 S.W.2d 924, 933(10, 11); and, at the direction of the court, respondent read both the original and changed answers of the witness. Such are not the circumstances of the impeachment proscribed in Frank v. Wabash R. Co., Mo., 295 S.W.2d 16, 22(15), and related cases cited by appellant. | A deposition under oath consists of original answers as well as changed answers, with witness' reasons, if any for changes. | Does a deposition under oath consist of original answers as well as changed answers? | 032053.docx | LEGALEASE-00138405-LEGALEASE-00138408 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14561 | Kinnon v. Arcoub, Gopman & Assocs., 490 F.3d 886 | 308+141 | This case is readily distinguishable from Domino's Pizza. Here, unlike the plaintiff in Domino's Pizza, Kinnon did not indicate to Flora's that she was acting on behalf of a principal, and did not identify any principal. Accordingly, Kinnon was at the very least acting as an agent for an undisclosed principal. See Robinson & St. John Adver. & Pub. Relations, Inc. v. Lane, 557 So.2d 908, 909-10 (Fla. 1st DCA 1990); Van D. Costas, Inc. v. Rosenberg, 432 So.2d 656, 658 (Fla. 2d DCA 1983). Under Florida law, an agent who makes a contract on behalf of an undisclosed principal is a party to the contract. Lane, 557 So.2d at 910 ("In order for an agent to avoid personal liability on a contract negotiated [on] his principal's behalf, he must disclose not only that he is an agent but also the identity of his principal, regardless of whether the third person might have known that the agent was acting in a representative capacity."); Van D. Costas, 432 So.2d at 658 ("Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract."). See also Restatement (Third) of Agency " 6.02 ("When an agent acting with actual or apparent authority makes a contract on behalf of an unidentified principal ... the agent is a party to the contract unless the agent and the third party agree otherwise.") Because Kinnon was either not acting as an agent, or acting as an agent on behalf of an undisclosed principal when she ordered food from Flora's, Kinnon was a party to the contract, and is not barred by Domino's Pizza from proceeding under " 1981. See id. | Under Florida law, an agent who makes a contract on behalf of an undisclosed principal is a party to the contract. | "Is an agent who makes a contract on behalf of an undisclosed principal, a party to the contract?" | Principal and Agent - Memo 114 - KC.docx | ROSS-003291206-ROSS-003291207 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14562 | Reed v. Trovatten, 209 Minn. 348 | 13+65 | The right to a writ of mandamus is determined as of the time of the hearing rather than of the application. Dexner v. Houghton, 153 Minn. 284, 190 N.W. 179. At the time of hearing relator did not have a right to the position which he claimed. Where the relator does not have the right which he claims should be enforced by mandamus, it is axiomatic that a writ should not issue. See State ex rel. Goar v. Hoffmann, Minn., 296 N.W. 24, decided January 24, 1941. Of course we do not overlook the fact that the civil service act did not become effective until April 22, 1939, which was three weeks after relator was discharged and seven or eight days after he was removed from the state pay roll. If relator had a civil service status under prior law, his removal was unlawful and wrongful. Gude v. City of Duluth, 144 Minn. 109, 174 N.W. 614. See State ex rel. Brandt, v. Thompson, 91 Minn. 279, 97 N.W. 887. From the time relator lost his civil service rights, if any, on the effective date of the state civil service act to the time of trial, the respondents excluded him from his office and filled it by the appointment of another. The continuing exclusion of relator from the office of deputy oil inspector under the claim by respondents that they had legally removed him during a time when they had a right to discharge him operated to remove him as of that time. See 46 C.J. p. 993, " 168. | The right to a writ of mandamus is determined as of the time of the hearing rather than of the application. | Is the right to a writ of mandamus determined as of the time of the hearing rather than of the application? | 006169.docx | LEGALEASE-00139167-LEGALEASE-00139168 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14563 | Idea Nuova v. GM Licensing Grp., 617 F.3d 177 | 25T+151 | This conclusion permits us easily to resolve this appeal. AAA Rules 7 and 48 repeatedly reference arbitral awards as "final." See AAA Rule 7(c) (indicating that arbitrator may rule on objections to arbitrability "as a preliminary matter or as part of the final award"); AAA Rule 43(b) (referencing arbitrator's ability to make decisions "in addition to a final award"); AAA Rule 43(c) (providing for arbitrator to assess fees and expenses "in the final award"). Further, Rule 48(c) states that "[p]arties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." With these rules incorporated into the parties' Agreement, see AAA Rule 1(a), we reject Idea Nuova's argument that it never agreed to binding arbitration or to the court's jurisdiction to confirm arbitral awards. This conclusion finds support not only in our previously cited precedent, but in decisions by our sister circuits. See Rainwater v. Nat'l Home Ins. Co., 944 F.2d 190, 194 (4th Cir.1991) (holding "that resort to AAA arbitration will be deemed both binding and subject to entry of judgment unless the parties expressly stipulate to the contrary"); see also Dow Corning Corp. v. Safety Nat'l Cas. Corp., 335 F.3d 742, 745 (8th Cir.2003) (recognizing reference to AAA rules as adequate substitute for explicit statement that parties intend binding arbitration); McKee v. Home Buyers Warranty Corp. II, 45 F.3d 981, 983 (5th Cir.1995) (holding that reference to AAA rules indicates "that resort to AAA arbitration will be deemed both binding and subject to entry of judgment unless the parties expressly agree otherwise"). | In consulting agreement, marketer of novelty products and licensing consultant consented to confirmation of arbitrated disputes, even if agreement did not specifically state that arbitration was final and binding, thus precluding marketer's motion to vacate or modify four arbitration awards in favor of consultant related to alleged oral extension of agreement and resulting commissions due to consultant; parties agreed to arbitration with American Arbitration Association (AAA), so that AAA's rules, including requirement that parties consent to confirmation, were incorporated into agreement. 9 U.S.C.A. S 9. | Does a party to an American Arbitration Association (AAA) arbitration consent to judicial confirmation of final arbitral awards? | 007618.docx | LEGALEASE-00139016-LEGALEASE-00139018 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 14564 | Fed. Power Comm'n v. Hope Nat. Gas Co., 320 U.S. 591 | 260+92.5(3) | We pointed out in Illinois Natural Gas Co. v. Central Illinois Public Service Co., 314 U.S. 498, 506, 62 S.Ct. 384, 387, 86 L.Ed. 371, that the purpose of the Natural Gas Act was to provide, "through the exercise of the national power over interstate commerce, an agency for regulating the wholesale distribution to public service companies of natural gas moving interstate, which this Court had declared to be interstate commerce not subject to certain types of state regulation." As stated in the House Report the "basic purpose" of this legislation was "to occupy" the field in which such cases as State of Missouri v. Kansas Natural Gas Co., 265 U.S. 298, 44 S.Ct. 544, 68 L.Ed. 1027, and Public Utilities Commission v. Attleboro Steam & Electric Co., 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549, had held the States might not act. H.Rep. No. 709, 75th Cong., 1st Sess., p. 2. In accomplishing that purpose the bill was designed to take "no authority from State commissions' and was "so drawn as to complement and in no manner usurp State regulatory authority." Id., p. 2. And the Federal Power Commission was given no authority over the "production or gathering of natural gas." s 1(b). | Under the Natural Gas Act, the Federal Power Commission has no authority over the production or gathering of natural gas. Natural Gas Act, S 1(b), 15 U.S.C.A. S 717(b). | Does the Federal Power Commission have authority over the production or gathering of natural gas? | 021639.docx | LEGALEASE-00139354-LEGALEASE-00139355 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14565 | Suffield Bank v. Berman, 25 Conn. App. 369 | 307A+36.1 | The Burritt case is distinguishable from the present one because the defendant in Burritt was contesting the amount of interest due, whereas here the defendants are contesting their liability for paying any interest. In short, defenses relating to the mathematical calculation of the debt need not be disclosed but defenses that go to the issue of the defendant liability for the debt must be disclosed. In the present case, the evidence being proffered went to the issue of the defendant liability for interest and therefore was a defense that required disclosure. In the absence of such disclosure, the trial court properly refused to hear the proffered evidence. Instead, it accepted the affidavit as proof of debt pursuant to Practice Book 527 and rendered a judgment of strict foreclosure. | Defenses relating to mathematical calculation of mortgage debt need not be disclosed, but defenses that go to issue of liability for debt must be disclosed in timely manner. Practice Book of 1978, SS 206, 236, 367, 372, 374, 527. | Must defenses that go to the issue of the defendant liability for the debt is disclosed prior to trial? | 030952.docx | LEGALEASE-00139139-LEGALEASE-00139140 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 14566 | In re Islamorada Fish Co. Texas, 319 S.W.3d 908 | 115+181 | In this case, the trial court ordered Islamorada to produce net worth information because the court concluded that punitive damages were recoverable under the Dram Shop Act. Net worth is relevant and discoverable when punitive damages may be awarded.Lunsford v. Morris, 746 S.W.2d 471, 473 (Tex.1988) ("In a suit in which exemplary damages may be recovered, we hold the defendant's net worth is "relevant" and therefore discoverable under [the rules of civil procedure]."), disapproved of on other grounds by Walker, 827 S.W.2d at 842. The corollary is that when punitive damages clearly are not recoverable, information about net worth is not relevant and, as a result, not discoverable. See Wilson v. K.W.G., Inc., No. 11"03"00084"CV, 2004 WL 1925599,"2 (Tex.App.-Eastland Aug. 31, 2004, no pet.) (mem. op., not designated for publication); Al Parker Buick Co. v. Touchy, 788 S.W.2d 129, 130"31 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding). We do not consider whether punitive damages are recoverable generally under the Dram Shop Act, an issue of first impression in this Court, because we conclude that they are not recoverable under the facts of this case under section 41.005(a) of the Texas Civil Practice and Remedies Code. | A defendant's net worth is relevant and discoverable when punitive damages may be awarded. | Is a defendant's net worth relevant and discoverable when punitive damages can be awarded? | Pretrial Procedure - Memo # 5018 - C - SS.docx | ROSS-003302893-ROSS-003302894 | SA, Sub | 0.93 | 0 | 0 | 1 | 1 | |
| 14567 | Ex Parte LKQ Birmingham, 159 So. 3d 766 | 413+2 | "The proper means of seeking appellate review of an interlocutory order in this court is to petition for a writ of mandamus." Norman v. Norman, 984 So.2d 427, 429 (Ala.Civ.App.2007). "This court has exercised its jurisdiction to issue writs of mandamus in workers' compensation actions mainly in cases in which the trial court has entered an order wholly without statutory authority or in direct contravention of the language of the Act. See, e.g., Ex parte Brookwood Med. Ctr., Inc., 895 So.2d 1000 (Ala.Civ.App.2004). We recognize that an action brought under the workers' compensation laws is purely statutory in nature.Fort James Operating Co. v. Irby, 911 So.2d 727, 734 (Ala.Civ.App.2005) (citing Slagle v. Reynolds Metals Co., 344 So.2d 1216, 1217 (Ala.1977)). The Act is a specific and comprehensive system of law for dealing with workplace injuries and " "creates rights ... remedies ... and procedures all [its] own." " Davis v. Fayette County Comm'n, 831 So.2d 50, 53 (Ala.Civ.App.2002) (quoting Riley v. Perkins, 282 Ala. 629, 632, 213 So.2d 796, 798 (1968)). Generally speaking, therefore, the rights and remedies available to the affected parties must be found within the provisions of the Act. See Hedgemon v. United Parcel Serv., Inc., 832 So.2d 656 (Ala.Civ.App.2002). Thus, in a workers' compensation action, when a trial court exercises power not explicitly granted by the Act or necessarily implied by its terms, this court will issue a writ of mandamus to correct that error. See Ex parte Brookwood Med. Ctr., Inc., supra; Ex parte Alabama Power Co., [863 So.2d 1099 (Ala.Civ.App.2003) ]; Ex parte Wal"Mart Stores, Inc., 794 So.2d 1085 (Ala.2001); and Ex parte Smitherman Bros. Trucking, Inc., 751 So.2d 1232 (Ala.1999)." | An action brought under the workers' compensation laws is purely statutory in nature. | Is an action brought under the workers compensation laws purely statutory in nature? | 048009.docx | LEGALEASE-00139329-LEGALEASE-00139330 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 14568 | Wilson v. United States, 77 Ct. Cl. 630 | 34+13.1(1) | The fact that Congress has made no appropriation for the pay and allowances of plaintiff does not preclude his right to recover. His right to the pay and allowances fixed by law is not in any respect dependent on an available appropriation by Congress. McNeil v. United States, 64 C.Cls. 406; Palmer v. United States, 69 C.Cls. 260; Conrad v. United States, 74 C.Cls. 289; Crist v. United States, 74 C.Cls. 283. | The failure of Congress to make an appropriation for the statutory pay of an officer does not, of itself, preclude his right to recover. | Can the failure of Congress to make an appropriation for the statutory pay of an officer preclude their right to recover? | 008584.docx | LEGALEASE-00139526-LEGALEASE-00139527 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 14569 | United States v. Shields, 999 F.2d 1090 | 63+3 | The defense makes much of the fact that Shields' rulings in Nichols v. Wilson were legally correct. This misses two essential points. First and most obvious, issuing a judgment compelled or supported by law is no defense to taking a bribe. And since even parties with winning cases may benefit from fixing a case"by buying certainty of a favorable ruling"a legally correct decision conveys no useful information about the likelihood that the judge has been bribed. Second, several of Shields' rulings were clearly discretionary calls, such as granting a postponement to Nichols where delay meant Wilson was forced to settle on unfavorable terms. Every such discretionary ruling by Shields went in Cooley and DeLeo's favor. This undercuts the position of the defense that DeLeo could have known how Shields would rule on every aspect of Nichols v. Wilson. | Judge's issuing of judgment compelled or supported by law is no defense to taking bribe. 18 U.S.C.A. SS 1951, 1952. | Is issuing a judgment compelled or supported by law a defense to taking a bribe? | 012025.docx | LEGALEASE-00139383-LEGALEASE-00139384 | SA, Sub | 0.87 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14570 | Hystad v. Indus. Comm'n, 389 N.W.2d 590 | 260+92.32(1) | In Larsen v. Oil & Gas Conservation Comm'n, 569 P.2d 87, 92 (Wyo.1977), the Wyoming Supreme Court recognized the following minimum findings necessary to determine the extent of correlative rights in the context of prescribing the shape of spacing units:"(1) the amount of recoverable oil in the pool; (2) the amount of recoverable oil under the various tracts; (3) the proportion that # 1 bears to # 2; and (4) the amount of oil that can be recovered without waste. See Continental Oil Co. v. Oil Conservation Commission, 70 N.M. 310, 373 P.2d 809. These findings were not made in this case. Without such findings, a reviewing court has no way to determine whether the owner of each property has been afforded the opportunity to produce without waste, so far as it is reasonably practicable, his just and equitable share of the oil in the pool (" 30-216(i) ). In other words, it cannot determine whether correlative rights are being protected. As the court said in the Continental Oil case:" "... That the extent of the correlative rights must be determined before the commission can act to protect them is manifest." | When deviation from standard of uniform size spacing units on oil or gas pool is necessary to protect correlative rights, Industrial Commission must explain why deviation is necessary within context of right of each owner to have just and equitable share of common source of supply and duty of other owners not to damage or take undue proportion of oil or gas from that common source of supply. NDCC 28-32-13. | What are the minimum necessary findings to determine the extent of correlative rights in the context of prescribing the shape of spacing units? | 021656.docx | LEGALEASE-00139379-LEGALEASE-00139380 | SA, Sub | 0.63 | 0 | 0 | 1 | 1 | |
| 14571 | In re Woskob, 305 F.3d 177 | 289+1006 | Dissolution can be caused by decree of court or automatically through operation of law. 15 Pa.C.S. "" 8353 (dissolution by operation of law) and 8354 (dissolution by decree of court). When dissolution occurs through operation of law and without the need for a judicial decree, the date of dissolution is the date of the first effective act of dissolution. See Girard Bank v. Haley, 460 Pa. 237, 332 A.2d 443, 447 (1975) (holding date of dissolution to be date of partner's expression of will to dissolve partnership, not date of partner's subsequent death). When a partnership is dissolved by decree of court, the date of dissolution is ordinarily the date upon which the court decrees the dissolution, unless the court specifies otherwise. See Scheckter v. Rubin, 349 Pa. 102, 36 A.2d 315, 315"16 (1944). | Under Pennsylvania law, when dissolution of partnership occurs through operation of law and without the need for a judicial decree, the date of dissolution is the date of the first effective act of dissolution. 15 Pa.C.S.A. S 8353. | When is the date on which a dissolution of a partnership made effective? | Partnership - Memo 367 - SB.docx | ROSS-003291119-ROSS-003291120 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 14572 | Life Care Centers of America v. Charles Town Associates Ltd. Partnership, 79 F.3d 496 | 289+1138(1) | The modus operandi of limited partnerships is an important reason why the "aggregate" theory of partnerships is not always applicable in this context. Limited partnerships are business organizations in which the limited partners are precluded by law from participating in the operation of the partnership. See generally Revised Uniform Limited Partnership Act (1975). In exchange for their abstention from participating in the management of the business, the law provides limited investors with limited liability for the debts of the partnership. Id. The operations of the business of the limited partnership are left to the general partner, who, unlike the limited partners, is personally liable for the operation of the partnership. Id. A general partner accepts this unlimited form of liability as a trade-off for the limited partners' investment in the partnership's business. Thus, in a typical situation, a general partner acts much like the management of a corporation, while the involvement of the limited partners is comparable to the shareholders of a corporation. In fact, the general partner has the primary responsibility of making the business successful in order to provide a satisfactory return for the partnership, including its limited partners. By contrast, the role of the limited partners is very passive, in that it consists of an investment in the partnership with the expectation of obtaining a profitable return. See Klebanow v. New York Produce Exchange, 344 F.2d 294, 297 (2nd Cir.1965) (Friendly, J.) ("[A] limited partner is more like a shareholder, often expecting a share of the profits, subordinated to general creditors, having some control over direction of the enterprise by his veto on the admission of new partners, and able to examine books and have on demand true and full information of all things affecting the partnership...."). Not surprisingly, an alternative approach to partnerships"one which views them as "entities" with lives that are independent of their partners rather than mere "aggregates" of | Operations of business of limited partnership are left to general partner, who, unlike limited partners, is personally liable for operation of partnership. | Is the basic premise of a limited partnership that the general partners are personally liable for partnership obligations and limited partners are not? | Partnership - Memo 368 - SB.docx | LEGALEASE-00029273-LEGALEASE-00029274 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14573 | Seibert v. Sears, Roebuck & Co., 45 Cal. App. 3d 1 | 307A+749.1 | This transformation came about, however, with the concurrence and participation of the parties at the pretrial conference and later. Although the complaints sought the recovery of money and injunctive relief only, they necessarily challenged the validity of the previous balance method under the Unruh Act; as the issues were joined by the various answers, the existence of a "controversy" on this subject was made to appear. In any event, a pretrial conference order controls the subsequent course of an action even where it is inconsistent with the pleadings therein (4 Witkin, Procedure (op. cit. supra) Trial, s 66, pp. 2902"2903), and the present record clearly indicates that the liability phase of the consolidated actions was tried upon the theory that a declaratory judgment would result. (See Id., s 70, p. 2906.) For all these reasons, the court properly tried the seven cases as actions for declaratory relief and properly entered a declaratory judgment. | Pretrial conference order controls subsequent course of an action even where it is inconsistent with pleadings therein. | Does a pretrial order control where it is inconsistent with the pleadings? | 028013.docx | LEGALEASE-00139488-LEGALEASE-00139489 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14574 | Fawcett v. Altieri, 38 Misc. 3d 1022 | 307A+36.1 | It is without dispute that plaintiffs, who place their physical condition in controversy may not shield from disclosure material, which is necessary for the defense of the action. It is equally well accepted that discovery is permitted with respect to not only materials having to do with liability, but also to damages as well. | Discovery is permitted with respect to not only materials having to do with liability, but also to damages as well. McKinney's CPLR 3101(a). | Is discovery permitted with respect to materials that have to do with liability but also to damages as well? | 031160.docx | LEGALEASE-00139555-LEGALEASE-00139556 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 14575 | Howell v. United States, 25 Ct. Cl. 288 | 34+8 | An officer takes rank in his grade from the time the law entitles him to do so, and not necessarily from the time he is actually commissioned, when the dates are different. | An officer takes rank in his grade from the time when the law entitles him to do so, and not necessarily from the time when he is commissioned. | Does an officer take rank in his grade from the time the law entitles him to do so? | Armed Services - Memo 219 - SB.docx | ROSS-003301973-ROSS-003301974 | Condensed, SA | 0.17 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14576 | Gidden Motor Co. v. Johnston, 155 Miss. 328 | 83E+418 | It is true that the said certificate is a non-negotiable instrument, but there are no provisions in it which inhibit an assignment of it. Nonnegotiable instruments which partake of the nature of commercial paper are assignable by indorsement and delivery; and such an indorsement on paper of the general character aforesaid and thereupon its delivery has the legal effect to transfer, and to transfer absolutely, all the right, title, and interest of the indorser therein, although, of course, it does not as to the payer or maker of that paper operate to convert the same into a negotiable instrument. As between the original parties, the paper being nonnegotiable in the beginning, it remains so to the end. And it is just here that the argument made by appellee fails when it is contended, as appellee contends, that to permit the defense to the suit here interposed would obliterate the distinctions between negotiable and nonnegotiable paper. Wettlaufer v. Baxter, 137 Ky. 362, 125 S. W. 741, 26 L. R. A. (N. S.) 804; Southard v. Latham, 18 N. M. 503, 138 P. 205, 50 L. R. A. (N. S.) 871; Worden Gro. Co. v. Blanding, 161, Mich. 254, 126 N. W. 212, 20 Ann. Cas. 1332; Swedish-American Bank v. Koebernick, 136 Wis. 473, 117 N. W. 1020, 128 Am. St. Rep. 1090; and cases cited in the several notes. | Nonnegotiable instruments which partake of nature of commercial paper are assignable by indorsement and delivery. | Are non-negotiable instruments which partake the nature of commercial paper assignable by endorsement and delivery? | Bills and Notes - Memo 398 - RK.docx | ROSS-003302010-ROSS-003302011 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14577 | Rebel v. Nat'l City Bank of Evansville, 598 N.E.2d 1108 | 266+1135 | Rebel contends that the trial court erred in determining that College's Notes 155745R2 and 154441R2 to Bank were renewals. Indiana law on priorities of liens is clear that the taking of a new note and mortgage for the same debt upon the same land will not discharge the lien of the first mortgage unless the parties so intended.Brenneman Mechanical & Electrical, Inc. v. First National Bank of Logansport (1986), Ind.App., 495 N.E.2d 233, 241, trans. denied. A court considers the circumstances of the transaction and will not permit the release of the old mortgage and the execution and recording of the new mortgage to destroy the lien of the original mortgage when not so intended, or rights of third parties have not intervened, or positions changed. Farmers & First National Bank of Newcastle v. Citizens State Bank of Newcastle (1937), 211 Ind. 389, 392, 5 N.E.2d 506, 508. Rebel argues that the notes were not renewals but were new notes because the interest rates were changed. As an intervening lienor, Rebel would have a superior lien if Bank's notes were not renewals. | Taking out new note and mortgage for same debt upon same land would not discharge lien of first mortgage unless parties so intend. | What happens when a new note is taken for the same debt? | 009546.docx | LEGALEASE-00140692-LEGALEASE-00140693 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14578 | Farris v. Wells, 68 Ga. 604 | 83E+406 | We know of no exception to the rule that where an instrument is made payable to order, the indorsement of the payee is necessary to transfer the legal title to another. Without such endorsement the transferee takes it as a mere chose in action, and to recover upon it must aver and prove the consideration. Nothing of the sort being averred, the demurrer was well taken and properly sustained. Daniel on Neg. Ins., "664; Story on Promissory Notes, "121; Story on Bills of Exc., "200. | Where a note, draft or check is made payable to order, the indorsement of the payee is necessary to transfer the legal title to another. Without such indorsement, the transferee takes the paper as a mere chose in action, and to recover it must aver and prove the consideration. | Is the endorsement of the payee necessary to transfer legal title of a note? | 009574.docx | LEGALEASE-00140472-LEGALEASE-00140473 | Condensed, SA | 0.43 | 0 | 1 | 0 | 1 | |
| 14579 | Leiter v. Arnold, 114 Ga. App. 323 | 349A+9 | The contract here was entered into prior to the effective date of the Uniform Commercial Code, and the then existing law governs it. The checks sued on are negotiable instruments and their negotiability is not affected by the fact that many of them were postdated. Code s 14-212; cf. Code Ann. s 109A-3-114. A negotiable instrument is presumed to be based on a valid and sufficient consideration. Code s 14-301; cf. Code Ann. s 109A-3-408. In a suit on a check it is not necessary that consideration be alleged. Gainesville News v. Harrison, 58 Ga.App. 744(1), 199 S.E. 559. | Law existing prior to effective date of Uniform Commercial Code governed contract entered into prior to that date. | Does the Uniform Commercial Code apply to notes executed before the effective date of the Code? | 009582.docx | LEGALEASE-00140520-LEGALEASE-00140521 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 14580 | Harry H. White Lumber Co. v. Crocker-Citizens Nat. Bank, 253 Cal. App. 2d 368 | 172H+622 | "The Cober case, supra, was a suit between the maker of a note and a joint payee who had received no benefit from a performance in kind which one of his other joint payees had received in lieu of money from the maker. No question of negotiation5 of the instrument was there involved. Here, the collecting bank was not a party to the sale of lumber products to the subcontractor, joint payee Timberline Roofing Company. The defendant bank's rights, if any, came only through negotiation of the checks. Hence, it is our view that the statutory provisions here applicable are Civil Code, sections 3122 and 3104, rather than sections 3200, subdivision (4), and 1475. "Section 3122 (U.N.I.A., s 41) provided: "Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others." | Where checks were payable to two joint payees, and indorsement of first joint payee was forged on checks by second joint payee, and collecting bank paid the checks, and first joint payee sued collecting bank, applicable sections of Civil Code were those dealing with effect of forged signature and indorsement where instrument is payable to two or more persons, and not section dealing with discharge of negotiable instrument by any act which will discharge simple contract for payment of money, and section providing that obligation in favor of several persons is extinguished by performance rendered to any one of them, except in case of deposit made by owners in common, or in joint ownership. West's Ann.Civ.Code, SS 1475, 3104, 3122, 3200(4). | Can one indorse for others with the authority from others? | 010261.docx | LEGALEASE-00140141-LEGALEASE-00140142 | Condensed, SA, Sub | 0.16 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14581 | Cohen & Feldman v. Silbowitz, 146 Misc. 324 | 8.30E+76 | The plaintiff will be referred to as the materialman, the defendnats as the purchaser, and the Carter-Sacks Fur Manufacturing Company, Inc., which did not appear on the trial, as the manufacturer. The manufacturer agreed in writing to make and to deliver to the purchaser one hundred sealine coats, and thereupon drew two separate negotiable drafts to his own order, both of which were duly accepted by the purchaser, indorsed and transferred before maturity to the materialman. One of the drafts is the subject of this action. The collateral contract of manufacture recited that the trade acceptances were payable in advance for the coats to be delivered, and contained the following sentence: "If the coats are not delivered as specified, Silbowitz & Nisnevitz reserve the right to stop payment on both trade acceptances." Evidence in support of the proposed amendment would negative the negotiability of the draft and nullify the agreement in respect to the reservation. Stopping payment is often invoked to give notice of an infirmity in the inception of such instruments or of a defective title in the hands of a holder, but should never be exercised in disregard of the legal rights of innocent holders for value. Oral testimony to contradict the collateral agreement or to explain the meaning of the reservation as to payment would have been error. Banque Franco-Americaine v. Bergstrom et al., 171 App. Div. 870, 157 N. Y. S. 635. | Stopping payment should never be exercised in disregard of rights of innocent holder for value. | Can stopping payment on a check be exercised in disregard of the legal rights of innocent holder? | 010340.docx | LEGALEASE-00139787-LEGALEASE-00139788 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14582 | Linahan v. Linahan, 131 Conn. 307 | 83E+481 | The mortgage notes included in the agreement are all described in substantially the same way, of which this is an example: "A mortgage note for one thousand dollars ($1000), made by S. S. Cohen, payable to the order of the party of first part, and secured by a mortgage on property at No. 111 Pine Street, New Haven, Conn." Although these notes were in form negotiable, they could be transferred by an assignment, either indorsed on them or embodied in a separate instrument. Queensboro National Bank v. Kelly, 2 Cir., 48 F.2d 574, 576, 87 A.L.R. 1172; State v. McClellan, 82 Vt. 361, 364, 73 A. 993, 23 L.R.A.,N.S., 1063; 5 U.L.A. (1 Negotiable Instruments), p. 495; 8 Am.Jur. 39, " 301. The trust agreement contained an express assignment of them to the trustees; they were delivered to one of them, Augustine, as custodian for all; and delivery to him on their behalf was all that was necessary to vest possession in them. Talbot v. Talbot, 32 R.I. 72, 94, 78 A. 535, Ann.Cas.1912C, 1221; see Main's Appeal, 73 Conn. 638, 644, 48 A. 965. By these acts the trustees were vested with power to sue upon and collect the notes. Torrington Creamery, Inc., v. Davenport, 126 Conn. 515, 521, 12 A.2d 780. The assignment in the agreement was sufficient also to pass to them the interest Thomas had in the mortgages, Woronieki v. Pariskiego, 74 Conn. 224, 227, 50 A. 562; see 19 Rec. & Briefs 466; in fact, the security of the mortgages would pass to them as an incident to the assignment of the notes, Roth v. Stein, 100 Conn. 668, 677, 124 A. 546; and they could bring actions to foreclose them, Pettus v. Gault, 81 Conn. 415, 420, 71 A. 509. As regards the mortgage notes, nothing remained to be done by Thomas to vest in the trustees the right to collect the sums due upon them for administration under the trust, and the requirements of the principle as to a transfer of property to constitute a trust were sufficiently met. See Camp's Appeal, 36 Conn. 88, 92, 4 Am.Rep. 39. We | Notes negotiable in form could be transferred by assignment, either indorsed on them or embodied in a separate instrument. | Can notes negotiable in form be transferred by an assignment? | 010422.docx | LEGALEASE-00140286-LEGALEASE-00140287 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 14583 | In re Jolly N, 122 B.R. 897 | 83E+481 | Although the defendant has not raised the issue, the court will briefly address, in the interest of completeness, the question of whether the debtor's $15,000.00 payment by check dated February 20, 1985 should be deemed to fall within the preference period. Here the check was issued by the debtor on February 20, 1985 and honored by the drawee bank on February 22, 1985. The parties stipulated that the preference period commenced on February 21, 1985. Courts confronted with the question are by no means in agreement as to whether a check is "transferred" for purposes of " 547(b)(4) on the date it is issued by the debtor, the date it is received by the transferee, or on the date it is honored by the debtor's bank. The majority of courts, including those in this Circuit faced with the issue, hold that the date that the check is honored by the debtor's bank is the operative date for " 547(b)(4) purposes. In re Video East, Inc., 33 B.R. 61, 63 (Bkrtcy.E.D.Pa.1983); In re Ardmore Sales Co., Inc., 22 B.R. 911, 913 (Bkrtcy.E.D.Pa.1982). The date that a preferential transfer occurs is a federal question, but one which must be decided by reference to state law. McKenzie v. Irving Trust Co., 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1944). In McKenzie, the Supreme Court noted, "what constitutes a transfer and when it is complete ... is necessarily a federal question...." 323 U.S. at 369"70, 65 S.Ct. at 407"8. Nevertheless, the court concluded, "the state standards which control the effectiveness of a transfer likewise determine the precise time when a transfer is deemed to have been made or perfected." Id. at 370, 65 S.Ct. at 408. Under New Jersey's version of the Uniform Commercial Code, a check does not operate as an assignment of funds until accepted by the drawee bank. N.J.S.A. 12A:3"409(1). This court finds the majority view persuasive. See also In re New York City Shoes, Inc., 880 F.2d 679, 681 n. 2 (3d Cir.1989). Check No. 1785 was therefore transferred for " 547(b) | Under New Jersey Uniform Commercial Code, check does not operate as assignment of funds until accepted by drawee bank. N.J.S.A. 12A:3-409(1). | When is a check operated as an assignment of funds? | 010433.docx | LEGALEASE-00140386-LEGALEASE-00140387 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14584 | Discher v. Klapp, 124 Ind. App. 563 | 200+77(1) | Appellants' second assignment of error presents no question as such. It was not made a separate specification in the motion for new trial; however, the matter contained therein has been considered in the specification of contrary to law. In that connection, appellants argue that the court failed to find certain facts which were undisputed, which facts show abandonment by the public of the strip of ground in question. The court properly denied appellants' motion to make additional findings which would form the basis for a legal conclusion that the highway had been abandoned by non-user. We previously pointed out that the issue of abandonment was not presented to the trial court by pleadings or evidence. The burden of showing that fact, if it be a fact, was on appellants. Elliott, Roads and Streets, 4th Edition, Vol. 2, " 1173, p. 1669. No evidence was offered which remotely tended or indicated to prove abandonment or estoppel. Vacation of highways are not generally favored, and the public rights therein must be divested by some manner as provided by law. McHenry v. Foutty, supra. | Vacation of highways is not generally favored, and public rights therein must be divested by some manner as provided by law. | Is vacation of highways generally favored? | 018661.docx | LEGALEASE-00140588-LEGALEASE-00140589 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14585 | Schwaner v. Hayes, 142 Mo. App. 100 | 200+150 | The law governing the question under review is found in Sess. Laws 1901, pp. 234, 235 (Ann. St. 1906, "" 9436, 9441). Section 9441 provides as follows: "Any taxpayer may pay the board the amount of poll-tax due for the current year in money or labor, and if in labor it shall be performed when required by the commissioners, or their chosen representatives. *** Provided, further, that the county court of any county may, in their discretion, by order of record require that all poll-taxes shall be paid in money." There is no evidence in this case that the poll tax of respondent was required by an order of record to be paid in money. The testimony abundantly shows that the commissioner or his representative was duly notified that the respondent had elected to pay his poll tax in labor, as the statute gave him a right to do, by working it out on the roads. The tenor of the statute is so manifest that there can be no misunderstanding of its import; and it became the duty of the commissioner upon receiving such notice to fix the time when he would require the work to be done and to notify the respondent, or "warn him out," as it is usually expressed. Neither of these things were done, and no opportunity such as the law requires was afforded the respondent to pay his poll tax in labor upon the roads. It is unaccountable that so much effort should have been made in this case to avoid the law and deny the respondent a statutory right so plainly written that a wayfaring man cannot misunderstand its language. | Under Sess. Laws 1901, pp. 234, 235 (Ann. St. 1906, SS 9436, 9441), permitting any taxpayer to pay the amount of his poll tax in money or labor, and providing that, if paid in labor, it should be performed when required by the commissioners, provided the county court may by order of record require all poll taxes to be paid in money, the road commissioner upon receiving notice that taxpayers desire to pay their poll tax in labor must fix the time for doing the work and thereafter warn him out, and, where that was not done so that a taxpayer was not given an opportunity to pay the tax by labor, it cannot be recovered from him; the county court not having ordered poll taxes paid in money. | Can payment of poll tax be paid either in money or labor? | 018666.docx | LEGALEASE-00140356-LEGALEASE-00140357 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 14586 | Ledford v. Se. Motor Truck Lines, 29 Tenn. App. 675 | 200+183 | The verdict for the defendants was directed on the ground that the plaintiff was guilty of contributory negligence as a matter of law. We think the evidence made this question one for the jury. The rule requiring railroad employees working about a track to be constantly on the lookout and never to become so engrossed in their work as to preclude their taking precautions necessary to ascertain whether a train is approaching, is not applicable to laborers working on a street or highway. The reason is that vehicles on the highway are not confined to a track as are railroad trains and can easily avoid workmen by going around them. Hutt v. C. J. Harris Lumber Co., Mo.App., 253 S.W. 472. Such a workman is not an ordinary pedestrian with no care other than for his own safety. On the contrary, he must necessarily devote his attention to his work and it is generally held that he is not guilty of contributory negligence for failure to keep a sharp lookout for approaching vehicles. Cecola v. 44 Cigar Co., 253 Pa. 623, 98 A. 775; State Compensation Ins. Fund v. Scamell, 73 Cal.App. 285, 238 P. 780; King v. Green, 7 Cal.App. 473, 94 P. 777; Gaylor v. Wienshienk, 221 Mo.App. 585, 283 S.W. 464; Ostermeier v. Kingman-St. Louis Imp. Co., 255 Mo. 128, 164 S.W. 218; Mooney v. Gilreath, 124 S.C. 1, 117 S.E. 186; Dube v. Koegh Storage Co., 236 Mass. 488, 128 N.E. 782; Chaney v. Moore, 101 W.Va. 621, 134 S.E. 204, 47 A.L.R. 800. | Generally, a workman working on a highway is not guilty of contributory negligence for failure to keep a sharp lookout for approaching vehicles. | Should a workman on the highway have to lookout for vehicles? | 018668.docx | LEGALEASE-00139773-LEGALEASE-00139774 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14587 | Bond v. Green, 189 Va. 23 | 200+75 | "Vacation" is a term ordinarily employed to describe the termination of the existence of a highway by direct action of the public authorities, as distinguished from the loss or abandonment of the public right by nonuser. 25 Am. Jur., Highways, sec. 117. This technical distinction between "vacation" and "abandonment," is not always observed in drafting statutes dealing with highways. In Chapter 271 of the Acts of 1940, p. 435, amending the Acts of 1932, Chap. 415, transferring the county roads to the Highway Commission, it is provided:"The jurisdiction and procedure for abandonment of roads in the secondary system of state highways shall remain in the local road authorities as now provided by law." No proceeding prescribed by statute to discontinue, vacate or "abandon" the Triplett road appears to have been instituted. There remains for our consideration the sole question of abandonment by non-user. | "Vacation" means termination of existence of highway by direct action of public authorities, as distinguished from loss or abandonment of public right by nonuser. | What is the distinction between the terms vacation and abandonment in dealing with statutes dealing with highways? | 019009.docx | LEGALEASE-00140346-LEGALEASE-00140347 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14588 | In re Advisory Opinion to the Governor, 98 Fla. 843 | 296+1 | Section 2 of article IX of the Constitution provides that: "The legislature shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year," etc. It is our opinion that, under this section, pensions lawfully allowed by the Legislature might well be deemed legitimate State expenses. | Pensions lawfully allowed by Legislature may be deemed legitimate state expenses. F.S.A.Const. art. 9, S 2. | Can pensions that are lawfully allowed by Legislature be deemed a legitimate state expenses? | 022760.docx | LEGALEASE-00140490-LEGALEASE-00140491 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14589 | City of Tampa v. State ex rel. Evans, 155 Fla. 177 | 296+2 | The legislature has power to grant pensions as a gratuity for public service rendered. In so doing it is essential that a finding be made that the services were rendered as a prerequisite to the grant. When the grant has been made it shall be liberally construed in favor of the grantee. See State ex rel. Holton v. City of Tampa, 119 Fla. 556, 159 So. 292, 98 A.L.R. 501; State ex rel. Hawkins v. Amos, 97 Fla. 675, 122 So. 8; Northern Inv. Corp. v. City of Cocoa, 118 Fla. 405, 158 So. 889; State ex rel. Givens v. Holland, 147 Fla. 396, 2 So.2d 735. | The Legislature has power to grant pensions as a gratuity for public service rendered. | Does the Legislature have the power to grant pensions as a gratuity for public services rendered? | 022800.docx | LEGALEASE-00140562-LEGALEASE-00140563 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14590 | In re Estate of Lowe, 156 N.C. App. 616 | 307A+486 | The trial court may permit withdrawal of or amendment to an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." N.C. R. Civ. P. 36(b)(2002). The grant or denial of a motion to withdraw an admission is discretionary with the trial court.Interstate Highway Express v. S & S Enterprises, Inc., 93 N.C.App. 765, 768, 379 S.E.2d 85, 87 (1989) (quoting Whitley v. Coltrane, 65 N.C.App. 679, 681, 309 S.E.2d 712, 715 (1983)). | The grant or denial of a motion to withdraw an admission is discretionary with the trial court. | Is the grant or denial of a motion to withdraw an admission discretionary with the trial court? | 029138.docx | LEGALEASE-00139753-LEGALEASE-00139754 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14591 | McKell v. Collins Colliery Co., 46 W. Va. 625 | 307A+69.1 | It is a general rule that a deposition once taken cannot be retaken without the leave of the court, which will always be granted whenever justice seems to require it.Carter v. Edwards, 80 Va. 58. | A deposition once taken cannot be retaken without the leave of the court, which will be granted when justice seems to require it. | Can a deposition once taken be retaken without the leave of the court? | 029142.docx | LEGALEASE-00139793-LEGALEASE-00139795 | Condensed, SA | 0.34 | 0 | 1 | 0 | 1 | |
| 14592 | Hartford Fire Ins. Co. v. Becton, 103 Tex. 236 | 307A+74 | We were not inclined at first to agree that the statute requires the addition of the seal. A number of indorsements have always been required to be made by several officers on the envelope inclosing a deposition, viz., by the officer taking it, of his signature across the seal, of the names of the parties to the suit and of the witnesses; by the postmaster, when sent by mail, of the fact that the deposition was received by him from the officer who took it; by the clerk or justice of the peace in whose court the cause is pending, of the fact that he received it from the post office, with his signature thereto; and, when the deposition is carried by hand, an affidavit of the person carrying it to the fact prescribed, made before, and therefore to be authenticated by, the clerk or justice of such court. And it has never been thought, so far as we know, that it was necessary that any of these indorsements should be accompanied by the seals of the officers, although the official acts of some of them are as fully required to be authenticated by seal as those of notaries. Paschal's Dig. arts. 1233, 1431, 1411; Rev. St. 1895, arts. 1122, 1172. | Under Rev.St.1895, art. 2284, as amended by Acts 1907, p. 186, c. 91, Rules of Civil Procedure, rule 196, requiring the officer, before whom a deposition has been taken, to "certify" on the envelope inclosing the deposition for its return that he in person deposited the same in the mail for transmission, the certificate indorsed on the envelope must be authenticated by the officer's seal. Error, 124 S.W. 474, 58 Tex.Civ.App. 578, refused. | "After being certified, is the deposition required to be inclosed in an envelope or wrapper sealed and directed to the clerk of the court in which the action is pending?" | 032396.docx | LEGALEASE-00140362-LEGALEASE-00140363 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 14593 | Fisk v. Tank, 12 Wis. 276 | 307A+74 | It is no objection to a deposition, that it was reduced to writing by the deponent instead of the commissioner before whom it was taken. (Carlyle vs. Plumer, 11 Wis., 96.) | It is no objection to a deposition that it was reduced to writing by the deponent instead of the commissioner before whom it was taken. | Is it no objection to a deposition that it was reduced to writing by the deponent instead of the commissioner before whom it was taken? | 032480.docx | LEGALEASE-00140558-LEGALEASE-00140559 | SA, Sub | 0.21 | 0 | 0 | 1 | 1 | |
| 14594 | In re Bloom Bus. Jets, 522 S.W.3d 764 | 95+141(1) | If the claims are within the forum-selection clause's scope, the trial court must then determine whether to enforce it. Loya, 507 S.W.3d at 876. It must enforce the clause unless the party opposing its enforcement clearly shows that:? enforcement of the clause would be unreasonable or unjust;? the clause is invalid by reason of fraud or overreaching;? enforcement would contravene a strong public policy of this state; or? the contractually agreed forum would be seriously inconvenient for trial.In re Nationwide Ins. Co. of Am., 494 S.W.3d at 712; In re Laibe Corp., 307 S.W.3d at 316.The party opposing enforcement of the forum-selection clause has a heavy burden of proof in this regard. In re ADM Inv. Servs., 304 S.W.3d 371, 375 (Tex. 2010). If it does not carry it, the trial court must enforce the clause by dismissing the suit. In re Nationwide Ins. Co. of Am., 494 S.W.3d at 712; In re Automated Collection Techs., 156 S.W.3d 557, 559"60 (Tex. 2004) (per curiam) | The party opposing enforcement of the forum-selection clause has a heavy burden of proof; if it does not carry it, the trial court must enforce the clause by dismissing the suit. | Does a party opposing enforcement of forum-selection clause have a heavy burden of proof? | 032823.docx | LEGALEASE-00139837-LEGALEASE-00139838 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14595 | St. Vrain Valley Sch. Dist. RE-1J v. Loveland by & through Loveland, 395 P.3d 751 | 307A+554 | Questions of governmental immunity implicate subject matter jurisdiction and are determined in accordance with C.R.C.P. 12(b)(1). St. Vrain I, 9, 325 P.3d at 1018. Where the facts are undisputed and the only issue is one of statutory interpretation, as is the case here, we review the trial court's ruling de novo. Id. | Questions of governmental immunity implicate subject matter jurisdiction and are determined in accordance with a motion to dismiss. Colo. R. Civ. P. 12(b)(1). | Do questions of governmental immunity implicate subject matter jurisdiction? | Pretrial Procedure - Memo # 5634 - C - SK.docx | ROSS-003288019-ROSS-003288020 | SA, Sub | 0.5 | 0 | 0 | 1 | 1 | |
| 14596 | Tallman Gulch Metro. Dist. v. Natureview Dev., 399 P.3d 792 | 307A+554 | "Determining whether there is immunity under the CGIA is a question of subject matter jurisdiction to be decided pursuant to C.R.C.P. 12(b)(1). We review a district court's interpretation of the CGIA de novo." Denver Health & Hosp. Auth. v. City of Arvada ex rel. Arvada Police Dep't, 2016 COA 12, 38, """ P.3d """" (citation omitted) (cert. granted 2016 WL 4800446 (Colo. Sept. 12, 2016)); see also Munoz v. Am. Family Mut. Ins. Co., 2017 COA 25, 7, """ P.3d """" (we review issues of statutory construction de novo). In interpreting a statute, our primary objective is to ascertain and effectuate the intent of the General Assembly. Specialty Rests. Corp. v. Nelson, 231 P.3d 393, 397 (Colo. 2010); Munoz, 8. "If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning." Specialty Rests. Corp., 231 P.3d at 397. We read words and phrases in context and construe them according to their common usages. Jefferson Cty. Bd. of Equalization v. Gerganoff, 241 P.3d 932, 935 (Colo. 2010). | Determining whether there is immunity under the Colorado Governmental Immunity Act (CGIA) is a question of subject matter jurisdiction, to be decided pursuant to a motion to dismiss for lack of subject matter jurisdiction. Colo. Rev. Stat. Ann. S 24-10-101 et seq.; Colo. R. Civ. P. 12(b)(1). | Do questions of governmental immunity implicate subject matter jurisdiction? | 032827.docx | LEGALEASE-00139845-LEGALEASE-00139846 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14597 | Gray v. City of Opelika, 216 So. 3d 431 | 307A+682.1 | We note first that "[e]vidientiary matters may be freely submitted on a motion to dismiss that attacks jurisdiction." Williams v. Skysite Commc'ns Corp., 781 So.2d 241, 245 (Ala.Civ.App.2000) (citing Committee Comments, Rule 12, Ala. R. Civ. P.). When a party has moved to dismiss the case for lack of in rem jurisdiction, the party asserting in rem jurisdiction bears the burden of proving it. See Ex parte Safeway Ins. Co. of Alabama, Inc., 990 So.2d 344, 349 (Ala.2008) (" "Once a defendant has moved to dismiss a case pursuant to Rule 12(b)(1), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." " " (quoting Lindsey v. United States, 448 F.Supp.2d 37, 42 (D.D.C.2006)(abrogated on other grounds), quoting in turn Erby v. United States, 424 F.Supp.2d 180, 182 (D.D.C.2006), citing in turn Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))); Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229 (Ala.2004)(" " "[T]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant." " " (quoting Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., 866 So.2d 519, 525 (Ala.2003), quoting in turn Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir.2002))); and Mattel, Inc., 310 F.3d at 298 ("On de novo review, "the burden of proving jurisdiction is on the party asserting it"...." (quoting Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994))). | Evidentiary matters may be freely submitted on a motion to dismiss that attacks jurisdiction. Rules Civ.Proc., Rule 12. | Can evidentiary matters be freely submitted on a motion to dismiss that attacks jurisdiction? | Pretrial Procedure - Memo # 5635 - C - SN.docx | ROSS-003288907-ROSS-003288908 | SA, Sub | 0.92 | 0 | 0 | 1 | 1 | |
| 14598 | Beam ex rel. Martha Stewart Living Omnimedia v. Stewart, 845 A.2d 1040 | 307A+36.1 | In general, derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility.The general unavailability of discovery to assist plaintiffs with pleading demand futility does not leave plaintiffs without means of gathering information to support their allegations of demand futility, however.Both this Court and the Court of Chancery have continually advised plaintiffs who seek to plead facts establishing demand futility that the plaintiffs might successfully have used a Section 220 books and records inspection to uncover such facts. | In general, derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility. | Are derivative plaintiffs entitled to discovery to demonstrate demand futility? | 032868.docx | LEGALEASE-00139991-LEGALEASE-00139992 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 14599 | In re Bloom Bus. Jets, 522 S.W.3d 764 | 95+141(1) | In re Nationwide Ins. Co. of Am., 494 S.W.3d at 712; In re Laibe Corp., 307 S.W.3d at 316. The party opposing enforcement of the forum-selection clause has a heavy burden of proof in this regard. In re ADM Inv. Servs., 304 S.W.3d 371, 375 (Tex. 2010). If it does not carry it, the trial court must enforce the clause by dismissing the suit. In re Nationwide Ins. Co. of Am., 494 S.W.3d at 712; In re Automated Collection Techs., 156 S.W.3d 557, 559"60 (Tex. 2004) (per curiam). | The party opposing enforcement of the forum-selection clause has a heavy burden of proof; if it does not carry it, the trial court must enforce the clause by dismissing the suit. | Does the party opposing enforcement of the forum-selection clause have a heavy burden of proof? | Pretrial Procedure - Memo # 5683 - C - SK.docx | ROSS-003329399-ROSS-003329400 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 14600 | Allstate New Jersey Ins. Co. v. Cherry Hill Pain & Rehab Inst., 389 N.J. Super. 130 | 307A+554 | On appeal, plaintiffs contend that the judge misapplied R. 4:6-2(e), arguing that they were obligated by the rule to file a motion to dismiss for failure to state a cause of action because of Cherry Hill Pain's lack of standing, rather than file an answer. Lack of standing may be raised as a failure to state a cause of action under R. 4:6-2(e). See In re Ass'n of Trial Lawyers of Am., 228 N.J.Super. 180, 182, 549 A.2d 446 (App.Div.), certif. denied, 113 N.J. 660, 552 A.2d 180 (1988); Island Mortgages of N.J. v. 3M, 373 N.J.Super. 172, 180, 860 A.2d 1013 (Law Div.2004). R. 4:6-2 states, in pertinent part:Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses may at the option of the pleader be made by motion, with briefs: ... (e) failure to state a claim upon which relief can be granted.... If a motion is made raising any of these defenses it shall be made before pleading if a further pleading is to be made. No defense or objection is waived by being joined with one or more other defenses in an answer or motion. (emphasis added). | Lack of standing may be raised as a failure to state a cause of action. R. 4:6-2(e). | Can lack of standing be raised as a failure to state a cause of action? | Pretrial Procedure - Memo # 5920 - C - NS.docx | ROSS-003289701-ROSS-003289702 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14601 | Universal Forest Prod. E. Div. v. Morris Forest Prod., 558 F. Supp. 2d 893 | 366+2 | However, regardless of the applicability of the indemnity/investment distinction to the case at hand, the key question that remains is whether Universal or Morris had primary liability for the Morris returns. As noted above, "the right of subrogation never follows an actual primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all." Fitzgerald, 264 Wis. at 63, 58 N.W.2d at 458. Moreover, "[w]here equities are equal, there are no subrogation rights." Employers Health Ins., 161 Wis.2d at 958, 469 N.W.2d at 181 (Wis.1991). Such being the case, in order for Universal to have the right of subrogation, Morris must be primarily liable for the Morris returns. Universal's argument that its obligation was in the nature of an indemnity or third party guarantee is, in essence, an argument that its obligation was secondary to that of Morris. In determining whether Universal had a secondary obligation under its contract, it is unnecessary to label its contract as either an indemnity or investment contract based on the law governing insurance contracts. | Under Wisconsin law, right of subrogation never follows an actual primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all. | Are there any subrogation rights where equities are equal? | Subrogation - Memo # 1249 - C - RY.docx | ROSS-003288745-ROSS-003288746 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14602 | Federated Mut. Ins. Co. v. Woodstock '99 LLC, 190 F. Supp. 2d 324 | 366+35 | As noted above, it is clear that the parties contemplated that American, or any other retailer of Ace, would waive subrogation against Woodstock. As the party contracting with its retailer, the obligation would necessarily fall to Ace to ensure that this waiver occurred. In fact, the actual conduct of Ace pursuant to the American letter agreement demonstrates that this was its understanding. Ace undertook to notify American of its requirements under the contract (omitting, of course, the requirement that American waive subrogation against Woodstock), and voluntarily undertook responsibility to review the insurance obtained by American. As such, "the most persuasive evidence of the agreed intention of the parties in those circumstances is what the parties did when the circumstances arose." Webster's Red Seal Publications, Inc., v. Gilberton World-Wide Publications, Inc., 67 A.D.2d 339, 341, 415 N.Y.S.2d 229 (1st Dep't, 1979). In addition, Ace argued on the prior motion in this case that it had, in fact, required American to waive subrogation because Ace had incorporated the Woodstock agreement by reference into its contract with American. As such, it is held that the only reasonable construction to be give to the language at issue is that it imposed a duty on Ace to waive subrogation and, if Ace designated a supplier for the festival, to obtain its supplier's waiver of subrogation against Woodstock. A contrary construction would frustrate the reasonable manifestation of the parties' intent. | Under New York law, sponsor's actual conduct in conveying requirement that its supplier waive subrogation against festival organizer and in voluntarily undertaking responsibility to review insurance obtained by supplier for festival was relevant to show agreed intention that contract with organizer impose duty on sponsor to take such actions. | Is the most persuasive evidence of the agreed intention of the parties in certain circumstances of waiver of subrogation is what the parties did when the circumstances arose? | 043522.docx | LEGALEASE-00139879-LEGALEASE-00139880 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 14603 | Chestnut Sec. Co. v. Oklahoma Tax Comm'n, 125 F.2d 571 | 371+2005 | The constitutional power of the state to tax is limited only by its jurisdiction over the objects of its asserted power. McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445; Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162. In the determination of the question whether the state has exceeded its sovereign jurisdiction in the exaction of a tax upon income, our decision does not depend "upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed. " Shaffer v. Carter, supra (252 U.S. 37, 40 S.Ct. 226, 64 L.Ed. 445); Curry v. McCanless, supra; Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 249, 85 L.Ed. 267, 130 A.L.R. 1229. "A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society. The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction." Wisconsin v. J. C. Penney Co., supra. | The constitutional power of a state to tax is limited only by its jurisdiction over the objects of its asserted power. | Is the constitutional power of a state to tax limited only by its jurisdiction over the objects of its asserted power? | Taxation - Memo # 592 - C - ES.docx | ROSS-003291505-ROSS-003291506 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 14604 | Hennigan v. Atl. Ref. Co., 282 F. Supp. 667 | 386+11 | Kopka v. Bell Telephone Co., 371 Pa. 444, 91 A.2d 232 (1952) holds that consequential damages to the owner of the property are recoverable in an action for trespass to the property, and the Restatement 2d, Torts, " 162 (1965) extends liability to members of the household of the possessor. However, in keeping with the basic principle that actions for trespass to land are primarily to redress invasions of the right to exclusive use and possession thereof, the Restatement expresses no opinion as to liability to servants of the possessor who, though not members of his household are nevertheless resident thereon. | Actions for trespass to land are primarily to redress invasions of the right to exclusive use and possession thereof. | What does an action for trespass to land primarily redress? | 047418.docx | LEGALEASE-00140635-LEGALEASE-00140636 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 14605 | Com. v. Mannos, 311 Mass. 94 | 63+3 | In this Commonwealth, the distinction between guilt as a principal and guilt as an accessory before the fact has always been recognized. G.L. (Ter.Ed.) c. 274, "" 2, 3; Commonwealth v. Knapp, 9 Pick. 496, 20 Am.Dec. 491; Commonwealth v. Adams, 127 Mass. 15; Commonwealth v. Asherowski, 196 Mass. 342, 82 N.E. 13; Commonwealth v. Kaplan, 238 Mass. 250, 130 N.E. 485; Commonwealth v. Donoghue, 266 Mass. 391, 165 N.E. 413; Commonwealth v. DiStasio, 297 Mass. 347, 8 N.E.2d 923, 113 A.L.R. 1133; Commonwealth v. Bloomberg, 302 Mass. 349, 19 N.E.2d 62. One who has advised, aided or abetted another to commit a felony, and is absent when the crime is committed or if present is not acting, may be found to be an accessory before the fact, but one who is present at the commission of a felony and is aiding and assisting the one who is actually committing the offence is a principal. Commonwealth v. Knapp, 9 Pick. 496, 20 Am.Dec. 491; Commonwealth v. Merrick, 255 Mass. 510, 152 N.E. 377; Commonwealth v. DiStasio, 297 Mass. 347, 8 N.E.2d 923, 113 A.L.R. 1133. We are of opinion that, in arranging for the payment of bribes from the architects and engineers, in making the collections from them, and in turning what was collected over to Lyons, Mannos personally participated in every essential step and must be considered as a principal. In those instances, he was properly charged and convicted of bribery as a principal.Commonwealth v. Fogerty, 8 Gray 489, 69 Am.Dec. 264; Commonwealth v. Murphy, 2 Allen 163; Commonwealth v. Clune, 162 Mass. 206, 38 N.E. 435; Commonwealth v. Sinclair, 195 Mass. 100, 110, 111, 80 N.E. 799, 11 Ann.Cas. 217. | Mayor's political friend, who arranged for payment of bribes from architects and engineers engaged in construction work for city, made collections from them, and turned over to mayor what was collected, was properly charged and convicted of bribery as a "principal" under statute providing for the punishment of a public officer who corruptly requests or accepts a bribe, even though friend was not a public officer. G.L.(Ter.Ed.) c. 268, S 8; c. 274, SS 2, 3 (M.G.L.A.). | "Should the person who participates in every essential step of bribery be considered as a principal, even if he is not a public official?" | 012053.docx | LEGALEASE-00141852-LEGALEASE-00141853 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14606 | Sugarman v. State, 173 Md. 52 | 63+3 | The court, in making the ruling, conceded that, while the original arrest was unlawful as not being based upon any crime committed in the presence of the officer, yet his subsequent conversation which the officer constituted an offer and attempt to bribe him, and this of itself being a crime, the second arrest was lawful. But an examination of sections 31 of article 27 of the Code Supp. 1935 discloses that the offense of bribing or attempting to bribe an officer exists only when such officer is in the performance of his official duties, and it would scarcely be contended that an officer was acting in the performance of any official duty in making an illegal arrest. | Under statute providing that the offense of bribing an officer exists only when such officer is in the performance of his official duties, alleged attempt to bribe an officer while such officer was engaged in making an unlawful arrest did not constitute "bribery". Code Pub. Gen. Laws Supp.1935, art. 27, S 31. | Can a person be convicted of attempting to bribe an officer when the officer is not in the performance of his official duties? | 012109.docx | LEGALEASE-00140796-LEGALEASE-00140797 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 14607 | United States v. Espy, 989 F. Supp. 17 | 63+6(1) | In United States v. Sun"Diamond Growers, 941 F.Supp. 1262 (D.D.C.1996), this court held that under 18 U.S.C. " 201(c)(1)(B) an indictment did not have to allege a nexus between a thing of value and a specific official act performed or to be performed. Presently, the United States Court of Appeals for the District of Columbia Circuit is reviewing several issues on appeal in United States v. Sun"Diamond Growers, Cr. Action No. 97"3072 (D.C.Cir.1997) (oral arguments held on December 11, 1997), including this court's interpretation of 18 U.S.C. " 201(c)(1)(B). | Indictment stated offense against Secretary of Agriculture for criminal violation of statute prohibiting gratuities to federal officials, even though there was no allegation of nexus between provision of thing of value and specific official act to be performed or committed. 18 U.S.C.A. S 201(c)(1)(B). | Does gratuity statute require nexus to be alleged by an indictment? | 012124.docx | LEGALEASE-00141144-LEGALEASE-00141145 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 14608 | State v. Vallee, 136 Me. 432 | 63+1(1) | Generally speaking, however, under bribery statutes there need not be mutual intent on the part of both the giver and the accepter. It is enough that the person accused had the guilty intent. 8 Am.Jur., Bribery, " 6. The historical background of our statute shows that originally the crime of bribery by the giver and the accepter was defined in two separate sections. In each, the corrupt intent on the part of the person accused, is a necessary element, but guilt is not made to depend upon the mutual intent of both parties. The interpretation of similar statutes is well illustrated in Commonwealth v. Murray, 135 Mass. 530, and under a statute similar to ours, the Court in Minter v. State, 70 Tex.Cr.R. 634, 159 S.W. 286, at page 302, states the rule: "The guilt of an accused is not measured by the intent of another, but by his own intent." The charge here is against the accepter and his intent is specifically and definitely alleged. The allegations of intent in the giver may furnish an aid to a better understanding of the charge against the accepter, but are not necessary or vital. | Generally, there need not be mutual intent on the part of both the giver and accepter of a bribe, and it is sufficient that the person accused had the guilty intent. Rev.St.1930, c. 133, S 5. | Does there need to be a mutual intent between the bribe giver and bribe receiver before one individual can be found guilty of bribery? | 012155.docx | LEGALEASE-00141957-LEGALEASE-00141958 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 14609 | Katz v. N. Kansas City Dev. Co., 223 Mo. App. 606 | 113+6 | When it is required to show usage, custom or practice in a given line of business it is necessary for the purpose of bringing notice to an individual engaged in that business of the custom to show that it is general, uniform and notorious. 17 C. J. 454, 455. | Custom must be proved uniform to bring notice thereof to individual engaged in a particular business. | "Must custom be shown to be general, uniform, and notorious to bring notice to individuals engaged in a particular business?" | Customs & Usage - Memo 134 - RK.docx | ROSS-003291010-ROSS-003291011 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 14610 | Ex parte Weissinger, 247 Ala. 113 | 135+1 | To summarize: A person's domicile is that place in which his habitation is fixed, without any present intention of removing, and it embraces (1) the fact of residence and (2) the intention to remain. As a general proposition a person can have but one domicile, and when once acquired is presumed to continue until a new one is gained facto et animo, and what state of facts constitutes a change of domicile is a mixed question of law and fact. Lucky v. Roberts, 211 Ala. 578, 580, 100 So. 878, 879, and cases cited. | A person's "domicile" is that place in which his habitation is fixed without any present intention of removing, and it embraces the fact of residence and the intention to remain. | What does a person's domicile embrace? | 014473.docx | LEGALEASE-00141073-LEGALEASE-00141074 | Condensed, SA | 0.65 | 0 | 1 | 0 | 1 | |
| 14611 | In re Bycura, 540 B.R. 211 | 135+1 | The statute does not define "residence." However, South Carolina case law has established that "[a] residence is defined as, "[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; house where one's home is; a dwelling house." " In re Jones, 397 B.R. 765, 770"71 (Bankr.D.S.C.2008) (quoting Black's Law Dictionary 1309 (7th ed.1999)). | Under South Carolina law, party's "residence" is the place where he actually lives or has his home, his dwelling place or place of habitation, his abode, house where his home is, or dwelling house. | Is residence a person's dwelling place or place of habitation? | 014478.docx | LEGALEASE-00141089-LEGALEASE-00141090 | Condensed, SA | 0.48 | 0 | 1 | 0 | 1 | |
| 14612 | Reich v. Lopez, 858 F.3d 55 | 135+2 | General jurisdiction over an individual comports with due process in the forum where he is "at home," meaning the place of "domicile." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014) (per curiam). Owning property in a forum does not alone establish domicile. "One may have more than one residence in different parts of this country or the world, but a person may have only one domicile."United States v. Venturella, 391 F.3d 120, 125 (2d Cir. 2004). | Owning property in forum does not alone establish domicile; one may have more than one residence in different parts of country or world, but person may have only one domicile. | Can a person have more than one residence in different parts of country or world? | 014541.docx | LEGALEASE-00140955-LEGALEASE-00140956 | Condensed, SA | 0.64 | 0 | 1 | 0 | 1 | |
| 14613 | Hinkel v. Weyerhaeuser Co., 6 Wash. App. 548 | 48A+309(4) | Read as a whole, instruction 13 does not establish a higher degree of care, but does require a reasonably prudent driver in fog or smoke to exercise a greater amount of caution. The first sentence, which appears introductory, might better be omitted, but in our view, does not establish a higher degree of care. To this extent, instruction 13 is similar to an instruction approved by the Supreme Court in Ewer v. Johnson, 44 Wash.2d 746, 270 P.2d 813 (1954) rather than to the instruction held to be improper in Ulve v. Raymond, Supra. The two instructions are set forth in the margin for comparison. | Instruction in action for personal injuries and damages arising from automobile accident which occurred on highway where smoke from slash burning on defendant's property had created a driving hazard that one driving through fog or smoke must exercise a very high degree of care and must exercise that degree of care and caution in passing through fog or smoke as a careful and prudent person would exercise under such circumstances did not establish a higher degree of care than the reasonable and prudent standards for operating a vehicle through fog or smoke. | What is the degree of care to be exercised while driving through fog? | 019021.docx | LEGALEASE-00141535-LEGALEASE-00141536 | Condensed, SA, Sub | 0.07 | 0 | 1 | 1 | 1 | 1 |
| 14614 | Pease v. Udall, 332 F.2d 62 | 260+5.1(2) | The initial difficulty with appellant's position- and which we find dispositive- is that the Mineral Leasing Act has consistently been construed as leaving to the Secretary, within his discretion, a determination as to what lands are to be leased thereunder. Haley v. Seaton (D.C.Cir., 1960) 281 F.2d 620, 623-626. Here the determination of the Secretary through the acting director of the Bureau of Land Management was that "leasing of these reserved lands for oil and gas exploration under the Mineral Leasing Act would be inconsistent with the public interest associated with the administration of the Tyonek Reserve." | Secretary of the Interior had discretion to refuse to make any oil and gas lease of lands notwithstanding statute providing that first qualified applicant shall be entitled to lease without competitive bidding on lands not within any known geological structure of producing fields, and exercise of discretion by refusal to lease was not inconsistent with determination to sell leases under regulations relating to leasing of Indian lands. Mineral Lands Leasing Act, S 17 as amended 30 U.S.C.A. S 226; 25 U.S.C.A. SS 398, 398a. | "Does the Mineral Leasing Act leave to the Secretary, within his discretion, a determination as to what lands are to be leased?" | 021139.docx | LEGALEASE-00140752-LEGALEASE-00140753 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14615 | Hoyl v. Babbitt, 927 F. Supp. 1411 | 260+5.1(7) | An operator can be relieved from the requirements of due diligence under " 39 of the MLA which provides: The Secretary of Interior, for the purpose of encouraging the greatest ultimate recovery of coal ... and in the interest of conservation of natural resources, is authorized to waive, suspend or reduce the rental ... whenever in his judgment it is necessary to do so in order to promote development, or whenever in his judgment the leases cannot be successfully operated under the terms provided therein. * * * In the event the Secretary of Interior, in the interest of conservation, shall direct or shall assent to the suspension of operations and production under any lease granted under the terms of this chapter, any payment of acreage rental or of minimum royalty prescribed by such lease likewise shall be suspended during such period of suspension of operations and production; and the term of such lease shall be extended by adding any such suspension period thereto. A suspension can be granted at the request of a lessee or can be mandated by the Secretary in his discretion. Getty Oil Co. v. Clark, 614 F.Supp. 904, 915 (D.C.Wyo.1985). A suspension may be granted in the Secretary's discretion when it is necessary to avoid an environmental harm. Copper Valley Mach. Works, Inc. v. Andrus, 653 F.2d 595, 600 (D.C.Cir.1981). When a suspension is granted, it extends the ten-year due diligence period for the period of the suspension. Suspensions of Operations & Production for Coal Leases under Section 39 of the Mineral Leasing Act, 96 Int.Dec. 15, 30 (D.O.I.1988). However, during the period of suspension, the operator is denied "all beneficial use of the lease, including production." Id. at 20. Therefore, an operator cannot perform any operations on the property during a " 39 suspension. | Suspension of operation under federal coal lease can be granted at request of lessee or can be mandated by Secretary of Interior in his discretion when it is necessary to avoid environmental harm. Mineral Leasing Act, S 39, 30 U.S.C.A. S 209. | Could a suspension be granted in the Secretary's discretion when it is necessary to avoid an environmental harm.? | 021164.docx | LEGALEASE-00140889-LEGALEASE-00140890 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14616 | Houser v. Brown, 29 Ohio App. 3d 358 | 260+92.56 | Additionally, the duty created by R.C. 1509.12 is a continuing duty. Once the well becomes incapable of producing in commercial quantities, the duty to plug attaches. An owner's later transfer of the right to produce does not absolve that person of the continuing obligation to plug the well. Therefore, assuming the subject wells were incapable of production in commercial quantities when Brown was assigned the lease in 1979, Brown had a duty at that time to plug the wells. Brown could not escape that duty by cancelling the lease prior to the chief's January order. | Duty to plug oil or gas well which is or becomes incapable of producing oil or gas in commercial quantities is a continuing duty of the owner of that well. R.C. S 1509.12. | Does a duty to plug attach once a well becomes incapable of producing in commercial quantities? | Mines and Minerals - Memo #112 - C - CSS.docx | ROSS-003291075-ROSS-003291076 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |
| 14617 | Mud Control Labs. v. Covey, 2 Utah 2d 85 | 260+97 | The defendants point out that by the agreement their liability is specifically limited to $16,000 and insist that the lack of an express agreement for the sharing of losses precludes the existence of a mining partnership. Their argument has been answered by this court in Bentley v. Brossard wherein we held that an agreement to share losses is not a condition precedent to the existence of a mining partnership. Cases to the contrary cited by defendants are, with but one exception, from Oklahoma which is not in harmony with the law in Utah and a majority of the states. People do not ordinarily enter into partnership for the purpose of incurring losses. It is not unusual for such relationships to come into being, either by operation of law, or by express agreement, without the partners setting forth their obligations as to losses that may accrue. Responsibility for such losses is simply an incident of the partnership relation. It is elemental that when a partnership is created, an agreement between its partners limiting liability is not binding on third parties. Were it otherwise, partners could, by private agreement between themselves, obtain the advantages of limited partnership without complying with the statutory requirements. | An agreement to share losses is not a condition precedent to existence of a mining partnership. | Is an agreement to share losses a condition precedent to the existence of a mining partnership? | Mines and Minerals - Memo #128 - C - CSS.docx | ROSS-003289096-ROSS-003289097 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14618 | Lazarus v. Manufacturers Cas. Ins. Co., 267 F.2d 634 | 289+515 | The risk incurred by the insurance company was of the sort contemplated in the policy: the injury to Hudson was caused by the negligence of an employee of the service station in the course of his duties. Moreover, the nature of the business was clear, and the tradename of the business was plainly and correctly stated in the policy "declaration": "Name of Insured (is) Arthur Rubinstein T/A Transport Amoco Service." The primary intent, we think, was to insure a particular business, and not a particular person. The specific naming of Arthur Rubinstein in the policy declaration does not require the opposite inference, because within broad limits, a partnership may choose any name it wishes, even that of an individual partner. | Within broad limits, partnership may choose any name it wishes, even that of an individual partner. | Can a partnership choose the name of an individual partner as the firm name? | 022366.docx | LEGALEASE-00141975-LEGALEASE-00141976 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14619 | Raiser v. Utah Cty., 409 F.3d 1243 | 170A+1686 | The district court made no specific finding that Utah County would be prejudiced by a withdrawal or amendment of the deemed admissions. The district court's decision indicates that its chief concern was the absence of reasons for Mr. Raiser's untimeliness. It stated, "In the end, Plaintiff has failed to offer a credible excuse for not responding to the request for admissions, and fails to give any basis to deny them effect." R. Vol. II, Doc. 59, at 6. We agree with the district court that no litigant should ignore deadlines established by applicable rules, and sanctions may well be appropriate. But more than a failure to meet deadlines is required to deny a party relief from an admission. In ruling on a motion to grant such relief, "[t]he court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than on the moving party's excuses for an erroneous admission." In re Durability Inc., 212 F.3d at 556 (internal quotation marks and bracket omitted) (but noting that a higher standard applies when the admission is incorporated in a pretrial order). | More than a failure to meet deadlines is required to deny a party relief from an admission that was deemed to be made due to untimely response to a request for admissions. Fed.Rules Civ.Proc.Rule 36(b), 28 U.S.C.A. | Is more than a failure to meet discovery deadlines required to deny a party relief from an admission? | Pretrial Procedure - Memo # 3245 - C - PB.docx | ROSS-003302797-ROSS-003302799 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14620 | Dunham v. Roer, 708 N.W.2d 552 | 307A+723.1 | Appellant argues that the district court improperly denied her motion to extend the discovery period in order to take the deposition of the city prosecutor. There is a "presumption in favor of granting continuances to allow sufficient time for discovery."Rice v. Perl, 320 N.W.2d 407, 412 (Minn.1982). Accordingly, the court considers two factors when determining whether to grant a continuance. Id. First, the court considers whether the moving party has been "diligent in obtaining or seeking discovery." Id. Second, the court considers whether the moving party seeks further discovery with "the good faith belief that material facts will be uncovered, or ... [is] merely engaging in a "fishing expedition." " Id. (citation omitted). | There is a presumption in favor of granting continuances to allow sufficient time for discovery. | Is there a presumption in favor of granting continuances to allow sufficient time for discovery? | 030611.docx | LEGALEASE-00141140-LEGALEASE-00141141 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14621 | GeoChem Tech Corp. v. Verseckes, 929 S.W.2d 85 | 307A+723.1 | Appellate review of a trial court's ruling upon a motion for continuance is limited to a determination of whether the trial court abused its discretion. If the trial court acts without reference to any guiding rules or principles, it acts arbitrarily and unreasonably, and it has abused its discretion. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241"242 (Tex.1985), cert. den'd, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126 (1939); Waste Water, Inc. v. Alpha Finishing & Developing Corporation, 874 S.W.2d 940 (Tex.App."Houston [14th Dist.] 1994, no writ). In ruling upon matters of this nature, the trial court is entitled to take the entire procedural history of the case into account. Waste Water, Inc. v. Alpha Finishing & Developing Corporation, supra. After examining the record, we cannot say that the trial court abused its discretion when it denied appellant's second motion for continuance. Appellant's second point of error is overruled. | In ruling on discretionary matter such as motion for continuance, trial court is entitled to take the entire procedural history of the case into account. | Should a trial judge be permitted to consider the entire history of the case in deciding whether or not good cause exists for granting a continuance? | Pretrial Procedure - Memo # 4293 - C - SJ.docx | LEGALEASE-00031120-LEGALEASE-00031121 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 14622 | N. Am. Acc. Ins. Co. v. Williamson, 118 Ill. App. 670 | 307A+74 | The objection to the deposition is based upon the certificate of the official character of the notary public before whom it was taken. Such certificate is required by section 30, chap. 51, R. S., when the dedimus postestatem or commission is directed to any judge, master, notary or justice. In the present case it was addressed to a specified individual who happened to be a notary, and no such certificate of official character seems in such case to be required. A certificate under seal of court was, however, subsequently attached to the deposition, which if necessary at all it was competent to have done before the deposition was read in evidence. Scott v. Bassett, 186 Ill. 98-102. This certificate states that the commissioner was "at the time of taking the foregoing acknowledgment a notary public," etc., authorized by the laws of the State of Nebraska to take and certify acknowledgments "or proofs of deeds and other instruments," etc. All that the statute requires is a certificate of the official character of the notary. The certificate in question fulfills the requirement. It is not required by the statute that the certificate shall state the notary was authorized by the laws of the State where he resides to administer an oath. In this case the certificate states that the notary was authorized to take and certify proofs of "other instruments" as well as deeds, but whether this would necessarily imply authority to administer oaths we need not inquire. He was authorized to administer oaths in the special case by his commission from the court here, which authorized him to take the deposition of the witnesses "on the oath or affirmation of the said witness by you first duly in that behalf administered." It is not necessary that the commissioner be a notary public or other officer authorized by the law of the State where he resides to administer oaths. The motion to quash was properly denied. | Statute requiring certificate of official character of notary who takes a deposition does not require that certificate shall state that notary was authorized by laws of state where he resides to administer an oath. Smith-Hurd Stats. c. 51, S 30. | "In executing a commission to take the depositions of witnesses residing out of the state, is the certificate of the officer before whom the oath of the commissioner was taken sufficient evidence that he has such authority?" | Pretrial Procedure - Memo # 5229 - C - DHA.docx | ROSS-003289459-ROSS-003289461 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14623 | Ex parte Stiles, 136 Tex. 211 | 307A+63 | It appears to be well settled that the taking of testimony by deposition is a departure from the common law rules of evidence, and that the right to so take a deposition depends entirely upon statutory provisions therefor. 16 Amer.Jur., p. 700, s 3, 18 C.J., p. 606, s 2. Our State has adopted both the common law rule of decision (Revised Statutes, Article 1) and the common law rules of evidence (Revised Statutes, Article 3713). Consequently it is the rule in this State that the right to take the deposition of a witness depends entirely on the statutes, and that the provisions of the statutes must be strictly complied with. Garner's Adm'r v. Cutler's Adm'r, 28 Tex. 175, 183; Clegg v. Gulf, C. & S. F. R. Co., 104 Tex. 280, 283, 137 S.W. 109; Laird v. Ivens, 45 Tex. 621; Rice v. Ward, 93 Tex. 532, 56 S.W. 747. | The right to take the deposition of a witness depends entirely on the statutes which must be strictly complied with. Vernon's Ann.Civ.St. arts. 1, 3713, 3746; Rules of Civil Procedure, rules 182-215. | Must there be a strictly substantial compliance with the statute in taking depositions? | 032523.docx | LEGALEASE-00142071-LEGALEASE-00142072 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 14624 | Cushman v. Wooster, 45 N.H. 410 | 307A+74 | There was no literal compliance with the provisions of the statute in regard to the notice. The magistrate is required to certify in the caption that the adverse party was or was not notified, was or was not present, &c.; and when the adverse party does not attend it is provided that "a copy of the notice left with the adverse party, his agent or attorney, with the return of the officer or affidavit of the person leaving such notice thereon, stating the time of leaving the same, shall be annexed to the certificate of the taking thereof." Rev. Stats. chap. 188, sec. 21; Comp. Stats. 486. | Under the requisition of our statute that in taking depositions, when the adverse party does not attend, a copy of the notice left with him, etc., shall be annexed to the certificate of the taking thereof, it is not sufficient to fold the notice with the deposition and inclose it in the same envelope, directed to the court. | Should the certificate stating the non-attendance of a party at the taking of the deposition be annexed to the certificate of the taking? | Pretrial Procedure - Memo # 5427 - C - CK.docx | ROSS-003288827-ROSS-003288828 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |
| 14625 | Shoemaker v. Stiles, 102 Pa. 549 | 307A+74 | Courts have power to make rules respecting the filing of depositions and cannot be reversed for enforcing them. Rule No. 87 is reasonable, and not inconsistent with any statute. There are good reasons for requiring promptness in the filing of depositions, and it is incumbent on the party at whose instance they are taken to see that they are filed in time. If it be conceded that the court below could properly have directed the deposition to be filed nunc pro tunc, there is not ground shown for reversing the order refusing the motion. | Courts have power to make rules respecting the filing of depositions, and cannot be reversed for enforcing them. | Do courts have power to make rules respecting the filing of depositions? | 032564.docx | LEGALEASE-00141702-LEGALEASE-00141703 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14626 | Semmens v. Walters, 55 Wis. 675 | 307A+74 | The depositions were returned to the commissioner in Canada for correction by signing his name as a commissioner instead of consul of the United States. This was not error. 2 Wait, Pr. 707; Keeler v. Vanderpool, 1 Code R. (N. S.) 289; Creamer v. Jackson, 4 Abb. 413. It is suggested, but not decided, the statute authorizing commissions, contemplates their issue to unofficial persons not otherwise authorized to take depositions, and the issue of commissions only to persons in another state or territory of the Union. Consuls of the United States are authorized to take depositions without a commission, and a commission is needless. 2 Rev. St. U. S. (2d Ed.) " 1750; Herman v. Herman, 4 Wash. C. C. 555. And it is questionable whether the strict rules of taking depositions by commisioners ought to be applied in such a case, where the proper notice, as in this case, was given of the examination of certain witnesses whose residence is given in the notice before a consul of the United States in one of the provinces of Canada, and the time and place also given in the notice. | A deposition may be returned to the commissioner for correction by signing his name as commissioner, instead of with his official title. | "Can a deposition be returned to the commissioner for correction by signing his name as commissioner, instead of his official title?" | Pretrial Procedure - Memo # 5473 - C - SN.docx | ROSS-003289330-ROSS-003289331 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14627 | State v. Kimball, 50 Me. 409 | 307A+74 | By R. S., c. 107, " 20, "the Court may admit or reject depositions taken out of the State by a justice of the peace, notary, or other person lawfully empowered to take them." "Justice of the peace," in this provision, it cannot be doubted, was intended to apply to such magistrate, commissioned by the authority of the laws of the State of his residence.And when he affixes to his name, in the certificate, his official character, it is prima facie evidence of qualification to act in that capacity. | The certificate of the justice of his official character is prima facie evidence of his qualification. | "Is affixture of name by the Justice of peace, in the certificate, as his official character a prima facie evidence of qualification to act in that capacity?" | 032986.docx | LEGALEASE-00141561-LEGALEASE-00141562 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 14628 | S. Pac. R. Co. v. Royal, 23 S.W. 316 | 307A+74 | There is but one assignment of error in this else, and that as to the action of the trial court in admitting in evidence the depositions of the appellee, which were taken before a notary public in Virginia. Neither the caption nor the certificate of the notary disclose in what case the depositions were taken. The caption is as follows: "State of Virginia, county of Nottoway. I, Joseph E. Leath, a notary public in and for the county of Nottoway, and state of Virginia, in obedience to the annexed commission, caused the witness Sam'l H. Royal to appear before me, and the said witness being by me first duly sworn," etc. In the certificate of the officer there is no reference whatever to the case in which the depositions were taken. The commission is not in the record, and, even if it were, it has been held that the reference to the "annexed commission" would not be sufficient to identify the case in which the depositions were taken, (Slaughter v. Rivenbark, 35 Tex. 68,) and we do not feel disposed to relax the rule on this subject. | Where neither the caption nor certificate of a deposition contains the title of the cause, a reference in the caption to the "annexed commission" is not sufficient to identify the case in which the deposition was taken. | "If the commission is not in the record, will a reference to the annexed commission be sufficient to identify the case in which the depositions were taken?" | Pretrial Procedure - Memo # 5736 - C - SB.docx | ROSS-003301533-ROSS-003301534 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 14629 | Celadon Trucking Servs. v. Martinez, 320 S.W.3d 377 | 2+1 | Having sustained Issue Two, it is unnecessary to address the remaining issues raised on appeal by either party. We must now determine whether Martinez's claims should have been dismissed or if abatement is the correct remedy. If a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed. American Motorists Insurance Company v. Fodge, 63 S.W.3d 801, 805 (Tex.2001). On the other hand, if the impediment to jurisdiction could be removed, then the court may abate proceedings to allow a reasonable opportunity for the jurisdictional problem to be cured. Id. The time for Martinez to pursue review of his claims by the Indiana Workers' Compensation Board has expired. Consequently, the impediment to jurisdiction cannot be removed. We therefore reverse the judgment of the trial court and render judgment dismissing Martinez's suit for lack of jurisdiction. | If the impediment to the court's jurisdiction can be removed, then the court may abate proceedings to allow a reasonable opportunity for the jurisdictional problem to be cured. | "If a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then should it be dismissed?" | 032991.docx | LEGALEASE-00141606-LEGALEASE-00141607 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 14630 | Murray v. Univ. of N. Carolina at Chapel Hill, 782 S.E.2d 531 | 30+241 | Accordingly, since our role is simply to review the actions of the court below, we find no basis for concluding that this Court has jurisdiction over the appeal pursuant to Rule 12 (b) (2). Because we do not have jurisdiction over defendant appeal, we are required to dismiss it without reaching the merits of defendant underlying sovereign immunity argument. See Casper v. Chatham Cnty., 186 N.C.App. 456, 459"60, 651 S.E.2d 299, 302 (2007) (""If a court finds at any stage of the proceedings that it lacks jurisdiction over the subject matter of a case, it must dismiss the case for want of jurisdiction."" (quoting Sarda v. City/Cnty. of Durham Bd. of Adjustment, 156 N.C.App. 213, 215, 575 S.E.2d 829, 831 (2003))). | Court of Appeals lacked jurisdiction over state university's interlocutory appeal of order denying its motion to dismiss student's complaint alleging that university's sexual assault grievance procedure was unlawful; university raised sovereign immunity doctrine for the first time at the hearing on the motion and neither university's written motion nor its oral argument relied on rule governing failure to state a claim in connection with sovereign immunity defense, written motion cited rules governing dismissal for failure to state a claim and lack of subject matter jurisdiction but did not include rule governing lack personal jurisdiction, and trial court's order did not reference rule governing lack of personal jurisdiction. West's N.C.G.S.A. SS 1-277(a), 116-40.11(a); Rules Civ.Proc., Rule 12(b)(1, 2, 6), West's N.C. G.S.A. S 1A-1. | "If a court finds at any stage of the proceedings that it lacks jurisdiction over the subject matter of a case, must it dismiss the case for want of jurisdiction?" | 033299.docx | LEGALEASE-00140756-LEGALEASE-00140757 | Condensed, SA, Sub | 0.15 | 0 | 1 | 1 | 1 | 1 |
| 14631 | In re C.M.C., 192 S.W.3d 866 | 307A+554 | "A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." Id. Without subject-matter jurisdiction, the trial court must dismiss the case. Am. Motorists Ins. Co. v. Fodge, 63 S.W.3d 801, 805 (Tex.2001). Dismissal is the appropriate disposition when a party lacks standing; it is not a decision on the merits of the case. We overrule the Topes' first point of error. | Without subject-matter jurisdiction, the trial court must dismiss the case. | "Without subject-matter jurisdiction, must the trial court dismiss the case?" | 033348.docx | LEGALEASE-00140943-LEGALEASE-00140944 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14632 | Moore v. McCullough, 6 Mo. 444 | 307A+726 | It is next objected that the court refused to grant a continuance upon a suitable application. I have examined the affidavit of Porter for a continuance, and he seems to have made out a complete case. If there were any circumstances that induced the court to refuse the continuance, they were, perhaps, to be found in the fact, that two continuances had been previously made in the same cause, and one of them at the instance of the same party. But I cannot think that even this indulgence should deprive the party of his legal rights, when his affidavit shows the materiality of the testimony desired, and every degree of diligence that could be expected. The court should have given the party an opportunity of getting his testimony. | That two continuances have been made in the same cause, and one of them at the instance of the party applying for a third, is no ground for a refusal of the application, when the materiality of the testimony is shown, and every degree of diligence that could be expected. | Can an application for continuance be refused when every degree of diligence could be expected? | Pretrial Procedure - Memo # 6098 - C - DHA.docx | ROSS-003289564-ROSS-003289565 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14633 | Oregon Waste Systems v. Department. of Environmental Quality of State of Or., 511 U.S. 93 | 371+2005 | We recognize that the States have broad discretion to configure their systems of taxation as they deem appropriate. See, e.g., Commonwealth Edison Co. v. Montana, 453 U.S. 609, 622"623, 101 S.Ct. 2946, 2955"2956, 69 L.Ed.2d 884 (1981); Boston Stock Exchange v. State Tax Comm'n, 429 U.S. 318, 336"337, 97 S.Ct. 599, 610, 50 L.Ed.2d 514 (1977). All we intimate here is that their discretion in this regard, as in all others, is bounded by any relevant limitations of the Federal Constitution, in these cases the negative Commerce Clause. Because respondents have offered no legitimate reason to subject waste generated in other States to a discriminatory surcharge approximately three times as high as that imposed on waste generated in Oregon, the surcharge is facially invalid under the negative Commerce Clause. Accordingly, the judgment of the Oregon Supreme Court is reversed, and the cases are remanded for further proceedings not inconsistent with this opinion. | States have broad discretion to configure their systems of taxation as they deem appropriate. | Do states have broad discretion to configure their systems of taxation as they deem appropriate? | 045370.docx | LEGALEASE-00141376-LEGALEASE-00141377 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14634 | First Union Nat. Bank of Florida v. Ford, 636 So. 2d 523 | 268+967(1) | Appellee property appraiser argues that Mayhew and Anderson do not provide us with solid precedent in this case because they were decided with reference to specific and unique state constitutional provisions without parallel in Florida. However, Article VIII, section 1(a) of the Florida Constitution (1968) provides: "The state shall be divided by law into political subdivisions called counties." As was true under Florida's prior constitutions, counties are considered to be parts of the state. As such, it has long been established by case law that they are immune from state, municipal, or other special districts' attempts to tax them. | Counties, as parts of state, are immune from state, municipal, or other special districts' attempts at taxation. | "Are counties immune from state, municipal, or other special districts' attempts at taxation?" | 045382.docx | LEGALEASE-00141421-LEGALEASE-00141422 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14635 | Wells v. Malloy, 402 F. Supp. 856 | 371+2005 | The power to tax is an inherent aspect of sovereignty. Bode v. Barrett, supra, 344 U.S.at 585, 73 S.Ct. 468.Included within the power to tax is the power to enforce uniformly the collection of a tax by any constitutional means. United States v. Hester, 137 F.2d 145, 147-148 (10th Cir. 1943). The only requirement is that the means used be fair, reasonable, and equitable. Creque v. Shulterbrandt, 121 F.Supp. 448, 451 (D.V.I. 1954). See also Bieling v. Malloy, supra. | Power to tax is an inherent aspect of sovereignty and includes the power to enforce uniformly the collection of tax by any constitutional means; only requirement is that the means used be fair, reasonable and equitable. | Does the power to tax include the power to enforce uniformly the collection of tax by any constitutional means? | Taxation - Memo # 622 - C - SU.docx | ROSS-003288861-ROSS-003288862 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 14636 | Great Lakes Dredge & Dock Co. v. Charlet, 134 F.2d 213 | 371+2005 | Appellants, pointing to the fact that as to many of the exceptions congress has by later enactments expressly conferred authority on the states to apply their unemployment compensation laws to classes of employment originally excepted but has not done so as to officers or members of the crews of vessels, insists that this is the strongest kind of proof that the exception was intended to be, and was exempted not only as to congressional, but to state, taxes as well. We do not think so. The power of a state to tax, as well as its power to govern men and things, will not be lightly stricken down by implication. It may not be doubted that the state of the authorities is such that there is much confusion to the casual, and no little to the careful, reader of them as to when there is and when there is not such conflict between state and federal regulations of the same subject matter as to exclude a state from a field. | The power of a state to tax, as well as its power to govern men and things, will not be lightly stricken down by implication. | Can the power of a state to tax be lightly stricken down by implication? | Taxation - Memo # 634 - C - ES.docx | ROSS-003330252-ROSS-003330253 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14637 | Bullock v. Marathon Oil Co., 798 S.W.2d 353 | 371+2005 | We find the argument to be without merit. First, we agree with Marathon that inherent in the power to tax is the state's freedom to select the subjects of taxation. Bullock v. Texas Monthly, 731 S.W.2d 160 (Tex.App.1987, writ ref'd n.r.e.), rev'd on other grounds, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). The legislature's selection of the subjects of taxation is presumed to rest on a rational basis if any facts would support that basis. Carmichael v. Southern Coal Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); Texas Monthly, 731 S.W.2d at 163. The party attacking the tax has the burden to show discrimination by negating every conceivable basis which might support it. Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). | Inherent in state's power to tax is state's freedom to select subjects of taxation. | Is the states freedom to select subjects of taxation inherent in the states power to tax? | 045546.docx | LEGALEASE-00141807-LEGALEASE-00141808 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 14638 | Sadiku v. Aatronics Inc., 142 Idaho 410 | 413+2 | The Worker's Compensation Act is purely statutory. Roe v. Albertson's, Inc., 141 Idaho 524, 112 P.3d 812 (2005). Worker's compensation benefits can be awarded only as provided in the Act. The lump sum agreement signed by Mr. Sadiku was approved by the Commission, and no rehearing or reconsideration was requested within twenty days. Under Idaho Code " 72"718, Mr. Sadiku could only set aside the lump sum agreement by showing fraud. | Worker's Compensation Act is purely statutory, and benefits can be awarded only as provided in the Act. I.C. S 72-101 et seq. | Is workers compensation purely statutory and can benefits be awarded only as provided in the Act? | 048112.docx | LEGALEASE-00141228-LEGALEASE-00141229 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 14639 | Grandt v. Douglas Cty., 14 Neb. App. 219 | 413+2 | The overall purpose of the Nebraska Workers' Compensation Act (Act), on the other hand, is to provide benefits for employees who are injured on the job, and the terms of the Act are to be broadly construed to accomplish the beneficent purposes of the Act. Soto v. State, 269 Neb. 337, 693 N.W.2d 491 (2005). Within that general goal, one purpose of the Act is to compensate an employee for the loss of his or her earning power. See Warner v. State, 190 Neb. 643, 211 N.W.2d 408 (1973). While this purpose is similar to the purpose of recompense for future loss of earning capacity in a tort action, the right to and amount of recovery in workers' compensation proceedings are purely statutory. Oham v. Aaron Corp., 222 Neb. 28, 382 N.W.2d 12 (1986). The Act creates rights which did not exist at common law, and the Legislature may place such restrictions thereon as it sees fit. University of Nebraska at Omaha v. Paustian, 190 Neb. 840, 212 N.W.2d 704 (1973). | The right to and amount of recovery in workers' compensation proceedings are purely statutory. | Is the right to and amount of recovery in workers compensation proceedings purely statutory? | 048118.docx | LEGALEASE-00141324-LEGALEASE-00141325 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14640 | In re Gagnon, 147 N.H. 366 | 413+2 | The sole issue before us is whether a claimant is entitled to indemnity benefits for time missed from work due to medical appointments. There is no dispute that the workers' compensation carrier paid for the petitioners' medical bills. "It is well-settled that the rights and remedies provided by the Workers' Compensation Law are purely statutory." | The rights and remedies provided by the Workers' Compensation Law are purely statutory. | Is it a settled position that the rights and remedies provided by the Workers' Compensation Law are purely statutory? | 048167.docx | LEGALEASE-00142069-LEGALEASE-00142070 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14641 | Medtronic AVE v. Advanced Cardiovascular Sys., 247 F.3d 44 | 25T+210 | However, federal policy favors arbitration and thus a court resolves doubts about the scope of an arbitration agreement in favor of arbitration. See Moses H. Cone, 460 U.S. at 24"25, 103 S.Ct. at 941; First Liberty Inv. Group v. Nicholsberg, 145 F.3d 647, 653 (3d Cir.1998); Kaplan, 19 F.3d at 1512. There is a "presumption of arbitrability." PaineWebber, 921 F.2d at 511; see Pritzker, 7 F.3d at 1114"15; Stateside Mach. Co. v. Alperin, 591 F.2d 234, 240 (3d Cir.1979) ("doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration."). An order to arbitrate "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers v. Warrior, 363 U.S. at 582"83, 80 S.Ct. at 1353; see also AT&T Techs., 475 U.S. at 650, 106 S.Ct. at 1419; First Liberty Inv. Group, 145 F.3d at 653; Schulte v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co.), 133 F.3d 225, 231 (3d Cir.1998); Sharon Steel Corp. v. Jewell Coal and Coke Co., 735 F.2d 775, 778 (3d Cir.1984) ("So long as the appellant's claim of arbitrability was plausible, interpretation of the contract should have been passed on to the arbitrator."). Yet there is a limit as to how far a court should go in resolving a dispute in favor of arbitration because, as we stated in PaineWebber, while interpretive disputes should be resolved in favor of arbitrability, "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." PaineWebber, 921 F.2d at 513. | There is a presumption of arbitrability, and an order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. | "If the claims of arbitrability are plausible, does the interpretation of the contract have to be passed on to the arbitrator?" | 007517.docx | LEGALEASE-00143220-LEGALEASE-00143221 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 14642 | Rogers, Burgun, Shahine & Deschler v. Dongsan Const. Co., 598 F. Supp. 754 | 25T+156 | The fact that this dispute is to be arbitrated does not deprive the Court of its authority to provide provisional remedies. See Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc., 749 F.2d 124, (2d Cir.1984); Erving v. Virginia Squires Basketball Club, 349 F.Supp. 716, 719"20 (E.D.N.Y.), aff'd, 468 F.2d 1064, 1067 (2d Cir.1972); see also Boys Markets, Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).The Court must, therefore, decide if this is "a proper case" for an injunction. Erving, 468 F.2d at 1067. | Fact that dispute under subcontract was to be arbitrated did not deprive district court of its authority to provide provisional remedies. | Does arbitration deprive the court of its authority to provide provisional remedies? | 007658.docx | LEGALEASE-00143382-LEGALEASE-00143383 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 14643 | United States v. Sun-Diamond Growers of California, 526 U.S. 398 | 63+1(1) | The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a quid pro quo-a specific intent to give or receive something of value in exchange for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken. The punishments prescribed for the two offenses reflect their relative seriousness: Bribery may be punished by up to 15 years' imprisonment, a fine of $250,000 ($500,000 for organizations) or triple the value of the bribe, whichever is greater, and disqualification from holding government office. See 18 U.S.C. "" 201(b) and 3571. Violation of the illegal gratuity statute, on the other hand, may be punished by up to two years' imprisonment and a fine of $250,000 ($500,000 for organizations). See "" 201(c) and 3571. | To convict under federal bribery statute, there must be a quid pro quo, a specific intent to give or receive something of value in exchange for an official act, while illegal gratuity may constitute merely a reward for some future act that public official will take and may already have determined to take, or for a past act that he has already taken. 18 U.S.C.A. S 201(b)(1, 2), (c). | Is specific intent required for a bribery offense? | 011219.docx | LEGALEASE-00142895-LEGALEASE-00142896 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 14644 | State v. Knight, 140 Ohio App. 3d 797 | 63+1(1) | Soliciting improper sexual relations may be construed as a valuable thing. See Scott v. State (1923), 107 Ohio St. 475, 485, 141 N.E. 19, 22. The evidence demonstrates that Knight solicited sexual relations from Hill "to corrupt or improperly influence him" with respect to his duty as a police officer. Knight claims that the state failed to prove the "duty" element of the bribery charge, in that he had no duty to drive Hill home. We disagree. | Soliciting improper sexual relations may be construed as a "valuable thing," within meaning of bribery statute prohibiting public servants from soliciting or accepting for himself or another person any valuable thing or valuable benefit to corrupt or improperly influence him or another public servant or party official with respect to the discharge of his or the other public servant's or party official's duty. R.C. S 2921.02(B). | "In bribery, is soliciting improper sexual relations construed as a valuable thing?" | 011648.docx | LEGALEASE-00142943-LEGALEASE-00142944 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |
| 14645 | Ayala By & Through Ayala v. Joy Mfg. Co., 580 F. Supp. 521 | 260+92.5(1) | In addition, there is no private cause of action for violations of the Mine Health Safety Act. Raymer v. United States, supra; McCreary v. United States, supra. Plaintiffs here are not relying on an implied cause of action theory; nevertheless, the fact that no civil remedy was provided for violations of the Act is a factor which militates against the imposition of tort liability upon the government or government officials for alleged negligence in the performance of their statutory duties. See Quintano v. Industrial Commission, 178 Colo. 131, 495 P.2d 1137 (1972). | There is no private cause of action for violations of Mine Health and Safety Act. Federal Coal Mine Health and Safety Act of 1969, S 2 et seq., as amended, 30 U.S.C.A. S 801 et seq. | Is there a private cause of action for violations of the Mine Health and Safety Act? | 021635.docx | LEGALEASE-00142140-LEGALEASE-00142141 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 14646 | Uhler v. Semple, 20 N.J. Eq. 288 | 289+801 | It is not unusual in taking a new partner into an established business, to put in the stock and machinery of the old business at a price fixed arbitrarily between the parties, as one of the conditions of the new arrangement. There is no confidential relation between partners until the partnership is formed; in the negotiations concerning it the parties are strangers, with adverse interests, each making the best terms for himself that he can obtain, and the established maxim of caveat emptor applies. Neither can they be made liable in this court, or in any court, for their representations that $15,000 would be sufficient cash capital to carry on the business, or that the tools and machinery in their foundry were sufficient, or that the business would be profitable. These are representations of a kind that will not sustain an action. | There is no confidential relation between partners until the partnership is formed, and in the course of negotiations between an existing firm and a stranger, where the firm proposes to put in the old stock at a certain price, the maxim "caveat emptor" applies. | Are relations between partners confidential before the partnership is formed? | 022432.docx | LEGALEASE-00143436-LEGALEASE-00143437 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 14647 | In re Stevens' Estate, 261 A.D. 48 | 296+2 | A pension is given to a soldier by the United States government exclusively for his own benefit. Benedict v. Higgins, supra. | A pension is given to a soldier by the United States government exclusively for his own benefit. | Is a pension given to a soldier by the United States government exclusively for his own benefit? | Pension - Memo 38 - SB.docx | ROSS-003289234 | Condensed, SA | 0.23 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14648 | In re Butler, 101 N.Y. 307 | 307A+723.1 | We hold that relator has not preserved error as to his request to have his attorney present. Proceedings in contempt cases should conform as nearly as practicable to those in criminal cases. Ex parte Sanchez, 703 S.W.2d 955, 957 (Tex.1986) (citing Ex parte Cardwell, 416 S.W.2d 382, 384 (Tex.1967)). Article 29.03 of the Texas Code of Criminal Procedure provides: "A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown." Assuming that relator's request was a motion for continuance, he failed to preserve error, if any, by noncompliance with art. 29.03. It is not an abuse of discretion to deny an oral motion for continuance that is not reduced to writing. See Strickland v. State, 815 S.W.2d 309, 311 (Tex.App."Tyler 1991, no pet.). Here relator's motion for continuance was not reduced to writing. | It is not an abuse of discretion to deny an oral motion for continuance that is not reduced to writing. | Is it an abuse of discretion to deny an oral motion for continuance that is not reduced to writing? | 030646.docx | LEGALEASE-00142971-LEGALEASE-00142972 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 14649 | Schindler v. Austwell Farmers Co-op., 829 S.W.2d 283 | 307A+726 | Appellant has provided a record of the hearing on his third motion for continuance. That motion requested continuance on the grounds of appellant's illness and lack of opportunity for appellant and counsel to adequately develop available defenses. The record reflects that appellant's condition had improved since the hearing on his second motion for continuance, which was also urged on illness grounds. The record further indicates that appellant discharged his counsel and obtained new counsel two weeks before trial, despite his former counsel's warning that a continuance would not likely be granted and despite Austwell's response to appellant's motion to substitute counsel, that it would object to any motion for continuance by appellant based on inadequate preparation of counsel.We cannot say that the trial court abused its discretion by denying appellant's third motion for continuance. We overrule appellant's fifteenth and sixteenth points of error. | Trial court did not abuse its discretion in denying debtor's third motion for continuance, which was requested on grounds of debtor's illness and lack of opportunity for debtor and counsel to adequately develop available defenses to creditor's action, inasmuch as record reflected that debtor's condition had improved since hearing on his second motion for continuance, which was also urged on illness grounds, and record further indicated that debtor had discharged his counsel and obtained new counsel two weeks before trial, despite his former attorney's warning that continuance would not likely be granted and despite creditor's warning that it would object to any motion for continuance based on inadequate preparation of counsel. | Did the court abuse its discretion in denying debtor's third motion for continuance? | Pretrial Procedure - Memo # 5413 - C - PC.docx | ROSS-003289515-ROSS-003289516 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 14650 | Thorpe v. Gelbwaks, 953 So. 2d 606 | 307A+554 | Initially, a plaintiff may seek to obtain jurisdiction over a non-resident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts. Id. at 502. A defendant contesting personal jurisdiction must file a motion to dismiss. By itself, the filing of a motion to dismiss does nothing more than raise the legal sufficiency of the pleadings. To contest the jurisdictional allegations of the complaint or to raise a contention of minimum contacts, the defendant must file affidavits in support of his position. The burden is then shifted to the plaintiff to prove, by affidavit, the basis upon which jurisdiction may be obtained. Id. at 502. | A defendant contesting personal jurisdiction must file a motion to dismiss. | Must a defendant contesting personal jurisdiction file a motion to dismiss? | 033457.docx | LEGALEASE-00143134-LEGALEASE-00143135 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14651 | Dillion v. Mabbutt, 265 Neb. 814 | 307A+560 | The language of " 25-217 providing for dismissal of unserved petitions is self-executing and mandatory. Kovar v. Habrock, 261 Neb. 337, 622 N.W.2d 688 (2001); Vopalka v. Abraham, 260 Neb. 737, 619 N.W.2d 594 (2000). After dismissal of an action by operation of law under " 25-217, there is no longer an action pending and the district court has no jurisdiction to make further orders except to formalize the dismissal. Id. By the time the court had sustained Mabbutt's special appearance, more than 6 months had passed since Dillion had filed her petition. Thus, the court's ruling that Mabbutt had not been served triggered " 25-217, and the order sustaining Mabbutt's special appearance had the effect of formalizing the dismissal of the case. | Language of statute providing for dismissal of unserved petitions is self-executing and mandatory. Neb.Rev.St. S 25-217. | Is language of statute providing for dismissal of unserved petitions self-executing and mandatory? | 033749.docx | LEGALEASE-00143594-LEGALEASE-00143595 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 14652 | Bankers Mut. Ins. Co. v. Friedlander, 262 A.2d 606 | 307A+726 | On this appeal the insurers claim two errors. First, it is claimed that the trial court abused its discretion in denying a further continuance in order that a further effort could be made to locate Fadeley. Two continuances, covering a period of approximately a year, having been granted, we find no abuse of discretion in denying a third continuance. | Where two continuances covering period of approximately a year had been granted in tenant's insurer's action to recover amount paid after fire, denial of third continuance to locate witness was not abuse of discretion. | Would the denial of third continuance be an abuse of discretion where plaintiff had the opportunity to make a full examination of defendant's records? | 033827.docx | LEGALEASE-00142694-LEGALEASE-00142695 | Condensed, SA, Sub | 0.38 | 0 | 1 | 1 | 1 | 1 |
| 14653 | Durham v. D.C., 494 A.2d 1346 | 307A+746 | It is axiomatic that the trial court must exercise its discretion prudently and must design any sanction to fit the violation in question. See 6 C. Wright & A. Miller, Federal Practice and Procedure " 1524, at 266 (Supp.1985). The trial court must be especially cautious where it chooses to impose the very severe sanction of dismissal. Dismissal should be imposed "sparingly." Frazier v. Center Motors, Inc., 418 A.2d 1018, 1020 (D.C.1980); Beckwith v. Beckwith, supra, 379 A.2d at 959. Such caution is a reflection primarily of our well-established preference for deciding cases on their merits. See, e.g., Garces v. Bradley, 299 A.2d 142, 144 (D.C.1973). | Caution must be observed by trial court when it chooses to impose very severe sanction of dismissal for failure of a party to attend a pretrial conference. Civil Rule 16-II. | Must the trial court be cautious where it chooses to impose severe sanction of dismissal? | Pretrial Procedure - Memo # 6602 - C - SU.docx | ROSS-003289759-ROSS-003289760 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 14654 | Cokeley v. State, 87 Tex. Crim. 256 | 352H+186 | The indictment charges that rape was committed upon a mentally unsound woman, and this by appropriate averments. To meet this it was requisite for the state to show: First, the act of intercourse by appellant; and, second, that prosecutrix was mentally unsound at the time. If the state failed to prove either fact beyond a reasonable doubt, an acquittal should result. The evidence, therefore, must show that prosecutrix was mentally unsound, and that she had intercourse with defendant. If she was not mentally unsound, the state failed in its proof; for it alleged no other ground for rape. Being insane, the woman could not testify. The law rendered her incompetent as a witness, and this by legislative action. See article 788, C. C. P.; Branch's Crim. Law, " 701, for cited cases; Lee v. State, 43 Tex. Cr. R. 288, 64 S. W. 1047; Batterton v. State, 52 Tex. Cr. R. 383, 107 S. W. 826; Lopez v. State, 30 Tex. App. 487, 17 S. W. 1058, 28 Am. St. Rep. 935. The state therefore did not undertake to use her as a witness, but relied upon such facts and circumstances as could be gathered. Had she been permitted to testify, it would have been on theory that she was a competent witness and would not have been insane under the statute as shown by the authorities above cited. | Under indictment charging rape on woman mentally unsound, it was requisite for state to show: First, the act; and, second, mental unsoundness of the woman. | Does the state have to show that prosecutrix was mentally unsound at the time of intercourse? | Sex Offence - Memo 92 - RK.docx | ROSS-003290103-ROSS-003290104 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14655 | Alaska S.S. Co. v. State, 31 Wash. 2d 328 | 371+2005 | The taxing power of a state is one of its attributes of sovereignty, and may be exercised at the discretion of the state, subject to constitutional limitations.Nathan v. State of Louisiana, 8 Howard 73, 12 L.Ed. 992. | The taxing power of a state is one of its attributes of sovereignty and may be exercised at discretion of state subject to constitutional limitations. U.S.C.A.Const. art. 1, S 10, cl. 2. | Is the power to tax an essential attribute of sovereignty? | 045277.docx | LEGALEASE-00142920-LEGALEASE-00142921 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 14656 | Redevelopment Agency v. Comm'n on State Mandates, 55 Cal. App. 4th 976 | 360+119 | The goals of articles XIIIA and XIIIB are to protect California residents from excessive taxation and government spending. (County of Los Angeles v. State of California, supra, 15 Cal.4th at p. 81, 61 Cal.Rptr.2d 134, 931 P.2d 312.) A central purpose of section 6 is to prevent the state's transfer of the cost of government from itself to the local level. (City of Sacramento v. State of California, supra, 50 Cal.3d at p. 68, 266 Cal.Rptr. 139, 785 P.2d 522.) The related goals of these enactments require us to read the term "costs" in section 6 in light of the enactment as a whole. The "costs" for which the Agency is seeking reimbursement are its deposits of tax increment financing proceeds into the Housing Fund. Those tax increment financing proceeds are normally received pursuant to the Community Redevelopment Law (" 33000 et seq.) when, after redevelopment, the taxing agencies collect and keep the tax revenues attributable to the original assessed value and pass on to the redevelopment agency the portion of the assessed property value which exceeds the original assessment. (Brown v. Community Redevelopment Agency, supra, 168 Cal.App.3d at pp. 1016"1017, 214 Cal.Rptr. 626.) Is this the type of expenditure of tax revenues of local governments, upon state mandates which require use of such revenues, against which section 6 was designed to protect? (County of Fresno v. State of California, supra, 53 Cal.3d at p. 487, 280 Cal.Rptr. 92, 808 P.2d 235.) | Goals of constitutional provisions pertaining to tax and government spending limitations are to protect California residents from excessive taxation and government spending. West's Ann.Cal. Const. Art. 13A, S 1 et seq.; Art. 13B, S 1 et seq. | What are the goals of constitutional provisions pertaining to tax and government spending limitations? | Taxation - Memo # 504 - C - SKG.docx | ROSS-003302261-ROSS-003302263 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 14657 | Chestnut Sec. Co. v. Oklahoma Tax Comm'n, 125 F.2d 571 | 371+2005 | The constitutional power of the state to tax is limited only by its jurisdiction over the objects of its asserted power. McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445; Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162. In the determination of the question whether the state has exceeded its sovereign jurisdiction in the exaction of a tax upon income, our decision does not depend "upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed. " Shaffer v. Carter, supra (252 U.S. 37, 40 S.Ct. 226, 64 L.Ed. 445); Curry v. McCanless, supra; Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 249, 85 L.Ed. 267, 130 A.L.R. 1229. "A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society. The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction." Wisconsin v. J. C. Penney Co., supra. | The constitutional power of a state to tax is limited only by its jurisdiction over the objects of its asserted power. | Is constitutional power of a state to tax limited by its jurisdiction over objects of its asserted power? | Taxation - Memo # 644 - C - ES.docx | ROSS-003330256-ROSS-003330257 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 14658 | High Tide Seafoods v. State, 106 Wash. 2d 695 | 371+3249 | If a tax is imposed on the value of the property, it may be a property tax. If levied upon the privilege of doing business, it is an excise tax. Clifford v. State, 78 Wash.2d 4, 469 P.2d 549 (1970). A tax for the beneficial use of property as distinguished from a tax on property itself has long been established law. United States v. Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958). | If tax is imposed upon value of property, it may be a "property tax"; if levied upon privilege of doing business, it is an "excise tax." | "Is the tax levied upon privilege of doing business an ""excise tax""?" | Taxation - Memo # 656 - C - AP.docx | ROSS-003316764-ROSS-003316766 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 14659 | Dixie Greyhound Lines v. McCarroll, 22 F. Supp. 985 | 148+2.4 | The plaintiff herein contends not that the tax thus levied by the state of Arkansas upon the sale and use of gasoline is confiscatory, but that to pay the tax would increase its costs of doing business, and thereby lessen its profit of operation, and that to purchase gasoline within the state of Arkansas is not practical nor safe to the traveling public. This contention is untenable. When the power to tax exists, the extent of the burden is a matter for the discretion of the lawmakers. Even if a tax should destroy a business, it would not be made invalid or require a compensation upon that ground alone. Those who enter upon a business take that risk. See Fox v. Standard Oil Company of New Jersey, 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780; Magnano Company v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109. | Even destruction of business by tax would not render it invalid or require compensation on such ground alone, as persons entering on business take such risk. | Can a tax be held invalid on the ground that it may destroy a business? | 045590.docx | LEGALEASE-00142473-LEGALEASE-00142474 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14660 | People ex rel. State Auditor v. Illinois Cent. R. Co., 119 Ill. 83 | 371+2300 | taxation, then, is inherent and essential to the very existence of government itself, the principle universally recognized by courts and political writers is that the state cannot wholly barter it away, or otherwise dispose of it; and even a partial disposition of it has been admitted by the court with great hesitation and reluctance. Cooley, Const. Lim. 284. It is obvious that all laws exempting property from taxation are not only restrictions or limitations on the taxing power, but they necessarily result in an unequal distribution of the burdens of government. The effect is not only to release the property exempted from the payment of its due proportion of taxes, but that which it ought to pay and would pay under an equal and fair apportionment of them must also be collected from the property not exempted. These considerations have very properly induced courts to adopt what is known as a strict construction in giving effect to such laws. Hence nothing will be held to come within the exemptions which does not clearly appear to be so, and all reasonable intendments will be indulged in favor of the state. Presumably all property is subject to taxation. When, therefore, it is claimed that a particular piece or class of property is exempt, the party interposing the claim must come prepared to establish it by clear and satisfactory proof. Thus it is said in the case of People v. Graceland Cem. Co., 86 Ill. 336:"The true spirit of our laws requires that all property should bear its just proportion of the burden of taxation; and, when an exemption is made in favor of a corporation, justice demands that it should show clearly a compliance with the terms and spirit of the act exempting it from taxation before it can be permitted to escape a duty incumbent equally on every citizen." | Laws exempting property from taxation are strictly construed, and nothing will be held to come within the exemption which does not clearly appear to be so, and all reasonable intendments will be indulged in favor of the state. | Are all property presumed to be subject to taxation? | 045600.docx | LEGALEASE-00142489-LEGALEASE-00142490 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14661 | Kohl v. United States, 226 F.2d 381 | 371+2001 | We are of the opinion that to construe and apply the two sections to the facts of this case as the government would have us, would necessarily result in their unconstitutionality. Such construction would require that the insurance, regardless of its ownership at the time of the decedent's death, must be included in his gross estate. Such is not a tax on a transfer but rather a direct tax on proceeds without apportionment, as required by Article I, " 2, Clause 3 and Article I, " 9, Clause 4 of the Constitution. A tax imposed on property or the income therefrom only by reason of its ownership is direct. Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 578, 580, 15 S.Ct. 673, 39 L.Ed. 759. Such taxes bear directly upon persons, upon their possession and enjoyment of rights, whereas indirect taxes are levied upon the happening of an event such as an exchange or transmission of property. Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; see also Chase nat. Bank of City of New York v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405; Scholey v. Rew, 23 Wall. 331, 90 U.S. 331, 23 L.Ed. 99; Y.M.C.A. of Columbus, Ohio v. Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 68 L.Ed. 558; Saltonstall v. Saltonstall, 276 U.S. 260, 48 S.Ct. 225, 72 L.Ed. 565. | A tax imposed on property or income therefrom only by reason of its ownership is direct. U.S.C.A. Const. art. 1, SS 2, 9. | Is the tax imposed on property or income therefrom only by reason of its ownership is direct? | Taxation - Memo # 691 - C - NS.docx | ROSS-003331917-ROSS-003331918 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 14662 | United States v. 4,432 Mastercases of Cigarettes, More Or Less, 448 F.3d 1168 | 371+2060 | We hold, contrary to the district court, that the California cigarette tax is an excise tax, not expressly precluded by the FTZ Act. 19 U.S.C. " 81o(e). An ad valorem tax is defined by its method for calculating the size of the tax. Ad valorem is the Latin phrase for "according to value," and it describes a tax the size of which directly correlates to the value of the item taxed. See Quinault Indian Nation v. Grays Harbor County, 310 F.3d 645, 647 n. 1 (9th Cir.2002). The most common example of an ad valorem tax is the local property tax. An excise tax, by contrast, is one "imposed on the performance of an act ... or the enjoyment of a privilege." Id. at 651 (citing Black's Law Dictionary 563 (6th ed.1990)) (alteration in original). The quintessential excise tax in our country is the sales tax. An excise tax, because it is based on a particular transaction or activity, can be imposed only once per act, whereas an ad valorem property tax can be imposed annually, as is typical of property taxes. | An "ad valorem tax" describes a tax the size of which directly correlates to the value of the item taxed. | "Is an ad valorem tax"" defined by its method for calculating the size of the tax describes a tax the size of which directly correlates to the value of the item taxed?" | 045718.docx | LEGALEASE-00142231-LEGALEASE-00142232 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 14663 | Livingston v. Town of Mt. Pleasant, 356 S.C. 35 | 371+2060 | Normally, taxes are imposed on all property for the maintenance of the government, while assessments are imposed only on the property that is to be benefited. In order to impose an assessment on property for an improvement, the improvement must confer a benefit on the property that is distinguishable from the general benefit enjoyed by surrounding areas. | Normally, taxes are imposed on all property for the maintenance of the government, while assessments are imposed only on the property that is to be benefited. | "Are taxes normally imposed on all property for the maintenance of the government, while assessments are imposed only on the property that is to be benefited?" | Taxation - Memo # 748 - C - SHB.docx | ROSS-003303616-ROSS-003303617 | Condensed, SA | 0.56 | 0 | 1 | 0 | 1 | |
| 14664 | Curtis Green & Clay Green v. Clark, 318 S.W.3d 98 | 413+2 | Appellants also argue that in applying S.B. 86, their vested right to be governed by the Workers' Compensation law rather than the Insurance Code has been violated. We disagree. We need only point to the fact that workers' compensation is a "creature of statute," dependent on the legislature for its continuing existence.See, e.g., Williams v. Eastern Coal Corp., 952 S.W.2d 696 (Ky.1997). The definition of a vested right is found in Louisville Shopping Center, Inc. v. City of St. Matthews, 635 S.W.2d 307, 310 (Ky.1982), wherein the Supreme Court said: "[a] right, in order to be vested (in the constitutional sense) must be more than a mere expectation of future benefits or an interest founded upon an anticipated continuance of existing general laws." In that case, the court held that application of a legislative change that occurred six days before a trial was to occur, after substantial litigation had already taken place, did not impair the vested rights of the parties, even though the new enactment repealed the provision upon which the litigation rested. "[T]he state may change or take away rights which were created by it[.]" Id. There has been no constitutional violation. | Workers' compensation is a creature of statute, dependent on the legislature for its continuing existence. | "Is workers compensation a creature of statute, and is its continuing existence dependent on the legislature?" | 048023.docx | LEGALEASE-00143338-LEGALEASE-00143340 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14665 | Flyer Printing Co. v. Hill, 805 So. 2d 829 | 25T+121 | The Perez court acknowledged that Green Tree announced a rule contrary to the alternative holding by the two concurring judges in Paladino; the mere failure to declare which party must advance arbitration fees and costs does not render an agreement unenforceable. Still, the court invalidated the arbitration agreement because its provision for equally sharing the fees and costs of arbitration conflicted with a prevailing Title VII claimant's statutory right to seek an award of all her fees and costs. See 42 U.S.C. " 2000e-5(k). "The Court's decision in Green Tree does not cast doubt on the continuing vitality of the primary holding in Paladino. An arbitration agreement containing provisions that defeat a federal statute's remedial purpose is still not enforceable." Perez, 253 F.3d 1280, 1286-87. | Parties may agree to arbitrate statutory claims, including claims under Title VII, so long as the agreement furnishes an adequate mechanism for vindicating the claimant's statutory rights; however, when an arbitration agreement contains provisions that defeat the remedial purpose of the statute, the agreement is not enforceable. Civil Rights Act of 1964, S 701, as amended, 42 U.S.C.A. S 2000e; West's F.S.A. S 760.11. | Is an arbitration provision that defeats a federal statutes remedial purpose enforceable? | 007684.docx | LEGALEASE-00144769-LEGALEASE-00144770 | Condensed, Order, SA, Sub | 0.48 | 1 | 1 | 1 | 1 | 1 |
| 14666 | St. Mary's Med. Ctr. of Evansville v. Disco Aluminum Prod. Co., 969 F.2d 585 | 25T+182(1) | Federal policy favors the enforcement of private arbitration agreements. See Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225"26, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); Midwest Window Systems, Inc. v. Amcor Industries, Inc., 630 F.2d 535, 536 (7th Cir.1980). This policy is embodied in the Federal Arbitration Act, which provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. " 2; see McMahon, 482 U.S. at 226, 107 S.Ct. at 2337. As can be seen from " 2's language, however, the federal policy favoring arbitration is not an absolute preference for arbitration over litigation anytime an arbitration agreement exists. Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is waiver of the right to arbitrate. See, e.g., Morrie & Shirley Mages Foundation v. Thrifty Corp., 916 F.2d 402, 405 (7th Cir.1990); Midwest Window, 630 F.2d at 536; National Foundation for Cancer Research v. A.G. Edwards & Sons, 821 F.2d 772, 774 (D.C.Cir.1987) ("NFCR"). | Waiver of right to arbitrate is grounds for federal court to refuse to enforce arbitration agreement. 9 U.S.C.A. S 2. | Is waiver of the right to arbitrate grounds for courts to refuse to enforce arbitration? | 007730.docx | LEGALEASE-00144944-LEGALEASE-00144946 | Condensed, Order, SA, Sub | 0.9 | 1 | 1 | 1 | 1 | 1 |
| 14667 | In re Lewis' Estate, 37 Pa. D. & C. 463 | 34+34.4(1) | The Soldiers' and Sailors' Civil Relief Act is applicable to bankruptcy proceedings. Toyota Motor Credit Corp. v. Montano (In re Montano), 192 B.R. 843, 844 (Bankr.D.Md.1996); Duggan v. Franklin Square Nat. Bank, 170 F.2d 922 (2d Cir.1948). "The Act has been applied to protect both bankruptcy debtors, In re Ladner, 156 B.R. 664 (Bankr.D.Colo.1993), and creditors. Anderson v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.), Inc., 996 F.2d 716 (4th Cir.1993)." In re Burrell, 230 B.R. 309, 312 (Bankr.E.D.Tex.1999). See Bruce White and William L. Medford, "The Soldiers' and Sailors' Relief Act"Are You Stayed From Obtaining Relief From the Automatic Stay?", 18"mar Am. Bankr. Inst. J. 23 (March, 1999). It is proper to apply the Act to bankruptcy because a bankruptcy case is a civil proceeding conducted under the supervision of the district court and it includes as bankruptcy proceedings any events that occur in the bankruptcy case. In re Symington, 209 B.R. 678, 684 n. 4 (Bankr.D.Md.1997); The Baltimore Sun Co. v. Astri Investment Management & Securities Corp. (In re Astri Investment. Management & Securities Corp.), 88 B.R. 730, 736 (D.Md.1988). The Act is therefore applicable to the instant adversary proceeding brought by the plaintiff in the debtors' bankruptcy case to determine the dischargeability of a debt owed by the debtors. | Soldiers' and Sailors' Civil Relief Act is applicable to bankruptcy proceedings. Soldiers' and Sailors' Civil Relief Act of 1940, S 1 et seq., 50 App.U.S.C.A. S 501 et seq. | Is the Soldiers and Sailors Civil Relief Act applicable to bankruptcy proceedings? | 008647.docx | LEGALEASE-00144411-LEGALEASE-00144412 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14668 | Howard v. United States, 28 F. Supp. 985 | 34+56 | A policy of liberalism permeates the entire structure of war risk insurance.Limitation periods, being consents of the sovereign to be sued, should not be extended beyond their true import. But we should not deprive a soldier's beneficiary of the benefit of the contract of insurance which he, providently, made for her, by forcing her to prove actual death in a disappearance case where it may be impossible and run the risk of failing to prove her claim, because of the failure to find the body," when, by waiting for seven years, she may call to her aid in proving death, this salutary presumption, which has long enjoyed judicial sanction in England and the United States. | A policy of liberalism permeates the entire structure of war risk insurance. | Does a policy of liberalism permeate the entire structure of war risk insurance? | 008665.docx | LEGALEASE-00144641-LEGALEASE-00144642 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 14669 | United States v. Haese, 162 F.3d 359 | 110+508(2) | Although Fraguela and Lowery were misguided by the Singleton court, numerous courts dealing with the application of section 201(c)(2) have refused to accept its rationale. To apply section 201(c)(2) to the government in this case is "unsound, not to mention nonsensical, especially in its creation ex nihilo of an exclusionary rule barring testimony from virtually every cooperating federal witness." Eisenhardt, 10 F.Supp.2d at 521. Therefore, we must reject Haese's contention that 18 U.S.C. " 201(c)(2) is violated when testimony is obtained in exchange for a favorable plea agreement. Thus, we hold that the district court did not err in allowing Assomull's testimony. | Testimony of government's key witness was properly admitted, despite fact that he testified pursuant to a favorable plea agreement; statute prohibiting the giving, offering, or promising anything of value to witness for or because of his testimony was not violated by fact that witness' testimony was obtained in exchange for a favorable plea agreement. 18 U.S.C.A. S 201(c)(2). | Is there any violation of law when testimony of a witness is obtained in exchange for a favorable plea agreement? | Bribery - Memo #452 - C-JL.docx | ROSS-003288138-ROSS-003288139 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14670 | United States v. Marks, 209 F.3d 577 | 63+1(1) | E. Purchased Testimony. Defendants claim that the testimony of cooperating witnesses who received favorable plea bargains in exchange for their promises of truthful testimony should have been excluded because the Government's inducement of this testimony violated the federal witness anti-gratuity statute, 18 U.S.C. " 201(c)(2). They rely on the Tenth Circuit's decision in United States v. Singleton, 144 F.3d 1343 (10th Cir.1998) (holding that prosecutors' offers of favorable plea agreements in exchange for truthful testimony against accomplices or coconspirators violate the statute and must be excluded), which was vacated by the en banc Tenth Circuit within two weeks of the date it was filed and ultimately repudiated. See United States v. Singleton, 165 F.3d 1297 (10th Cir.) (en banc), cert. denied, 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999). In United States v. Ware, 161 F.3d 414 (6th Cir.1998), cert. denied, 526 U.S. 1045, 119 S.Ct. 1348, 143 L.Ed.2d 511 (1999), this court, like every other circuit to have considered the issue, rejected the Tenth Circuit panel's analysis and concluded, among other things, that a prosecutor's offer of leniency in exchange for truthful testimony is not an illegal witness gratuity. This court's opinion in Ware unequivocally forecloses defendants' argument. | Prosecutor's offer of leniency in exchange for truthful testimony is not an illegal witness gratuity. 18 U.S.C.A. S 201(c)(2). | Is a prosecutor's offer of leniency in exchange for truthful testimony illegal? | 011726.docx | LEGALEASE-00144533-LEGALEASE-00144534 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 14671 | People v. Palmer, 26 Ill. 2d 464 | 67+2 | Defendant points out that the adding machines were not produced at the trial and argues that this omission requires reversal. There was a connected chain of testimony from the State's witnesses as to the machines found in Yancey's possession and the machine found in defendant's possession. No further proof of specific items taken is necessary to support a conviction for burglary, as the gist of the offense is the entry of a building with felonious intent, (People v. Urbana, 18 Ill.2d 81, 93, 163 N.E.2d 511), and when that entry and intent are shown, proof of the specific items taken is not essential. People v. Iannacco, 11 Ill.2d 55, 142 N.E.2d 8. | Gist of "burglary" is entry of building with felonious intent, and when entry and intent are shown, proof of specific items taken is not essential. | Does burglary require specific items to be taken? | Burglary - Memo 216 - SB.docx | ROSS-003290994-ROSS-003290997 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 14672 | Massey v. United States, 320 A.2d 296 | 67+3 | A requisite element of proof in a prosecution under our burglary statute, D.C.Code 1973, ss 22-1801(a) and (b), and those of most jurisdictions, is that the defendant have an intent to steal or commit a crime at the time of entry. See Franklin v. United States, D.C.App., 293 A.2d 278 (1972). It is not necessary that the intended theft or crime be consummated. United States v. Fox, 140 U.S.App.D.C. 129, 433 F.2d 1235 (1970); Cady v. United States, 54 App.D.C. 10, 11, 293 F. 829, 830 (1923). The requisite intent, of course, is a state of mind particular to the accused and unless such intent is admitted, it must be shown by circumstantial evidence. United States v. Fox, supra. "Standing alone, unauthorized presence in another's premises hardly supports an inference of entry with a criminal purpose, but when aided by other circumstances it very well might." Id. at 131, 433 F.2d at 1237 (footnotes omitted). | An intent to steal or commit a crime at the time of entry is a requisite element of proof in burglary case. D.C.C.E. S 22-1801(a, b). | Is intent to steal at the time of entry required for burglary? | Burglary - Memo 222 - SB.docx | ROSS-003288978-ROSS-003288981 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 14673 | Alden Sign Co. v. Roblee, 121 Colo. 432 | 113+7 | It follows that any trade custom which is unreasonable is not binding upon a person who does not expressly agree to be bound by it. We hold, under the circumstances here present, the trade custom for which defendant contends to be unreasonable. To give the alleged trade custom the force of law in this case would unreasonably jeopardize the right of a salesman to just compensation for services rendered an employer, and place the latter in a position to unjustly enrich himself at the expense of his employee. The employer, under the custom for which it contends, could dismiss the salesman with or without cause, and thereby avoid payment of all commissions on deferred payments in a contract procured by the salesman. We do not infer that any such motive prompted the action of defendant in this case. | A uniform, notorious and reasonable trade custom or usage may be binding on party to contract, but trade custom which is unreasonable is not binding on person who does not expressly agree to be bound thereby. | Is an unreasonable trade custom binding on a person who does not expressly agree to be bound by the custom? | 014239.docx | LEGALEASE-00143915-LEGALEASE-00143916 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 14674 | Vermilion Par. Sch. Bd. v. ConocoPhillips Co., 83 So. 3d 1234 | 317+55 | In 1806, the United States Congress set aside and dedicated for the use of public education Section 16 lands. State v. Humble Oil and Ref. Co., 195 La. 457, 197 So. 140 (1940); Terrebonne Parish Sch. Bd. v. Texaco, Inc., 178 So.2d 428 (La.App. 1 Cir.), writ refused, 248 La. 465, 179 So.2d 640 (1965), cert denied, 384 U.S. 950, 86 S.Ct. 1568, 16 L.Ed.2d 546 (1966)] After Louisiana was admitted to the Union in 1812, title to the lands was vested in the State. Id. The Louisiana Supreme Court recognized that Section 16 lands are unique because they are a separate and distinct part of public lands and that the administration of those lands has always been separate and apart from the administration of other public lands. Humble Oil and Ref. Co., 197 So. 140. "For more than one hundred years it has been the settled policy of this State, as reflected in various constitutional and statutory provisions, to treat sixteenth section lands as separate and distinct from all other State lands and to place them under the control of the school authorities." Id. at 144. | State land set aside and dedicated for the use of public education was owned by the state, rather than by parish school board, where the management of such Section 16 land was vested by the state in local school board, including the authority to grant mineral leases on the land. LSA-R.S. 17:100.6, 30:151 et seq., 41:638. | For what use did the United States or federal government set aside and dedicate 16th (sixteenth) section lands? | 021363.docx | LEGALEASE-00144037-LEGALEASE-00144038 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 14675 | Greer v. Shook, 503 S.W.3d 571 | 260+55(2) | A conveyance of a royalty interest, standing alone, is non-possessory in nature. A party possessing only the royalty interest with none of the other mineral interests (e.g., the right to lease, or to receive delay rentals or bonus payments), is referred to as a non-participating royalty-interest holder. Id. Royalty interests may be conveyed or reserved as a fixed fraction of total production, (also known as a fractional royalty interest) or as a fraction of the total royalty interest (also known as a "fraction of royalty interest" or, as we shall refer to it, a "floating" royalty interest). | Royalty interests in a mineral estate may be conveyed or reserved as a fixed fraction of total production, also known as a "fractional royalty interest," or as a fraction of the total royalty interest, also known as a "fraction of royalty interest" or a "floating" royalty interest; the floating royalty interest varies in accordance with the size of the landowner's royalty. | Can royalty interests be conveyed as a fractional royalty? | Mines and Minerals - Memo #253 - C - CSS.docx | LEGALEASE-00033787-LEGALEASE-00033788 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14676 | Iowa Supreme Court Comm'n on the Unauthorized Practice of Law v. Sullins, 893 N.W.2d 864 | 302+49 | "Iowa is a notice pleading state." Rieff v. Evans, 630 N.W.2d 278, 292 (Iowa 2001). Only "facts sufficient to apprise the defendant of the incident must be included in the petition in order to provide "fair notice" of the claim asserted." Id. (quoting Schmidt v. Wilkinson, 340 N.W.2d 282, 283 (Iowa 1983)). "A petition complies with the "fair notice" requirement if it informs the defendant of the incident giving rise to the claim and of the claim's general nature." Rees v. City of Shenandoah, 682 N.W.2d 77, 79 (Iowa 2004)). A petition need not allege a specific legal theory, so long as it meets the "fair notice" requirement. Rieff, 630 N.W.2d at 292. | A petition need not allege a specific legal theory, so long as it meets the fair notice requirement. | Should a petition allege a specific legal theory? | 023504.docx | LEGALEASE-00143623-LEGALEASE-00143624 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14677 | Rieff v. Evans, 630 N.W.2d 278 | 302+48 | Further, we do not require a petition to allege a specific legal theory. Iowa R. Civ. P. 69(b). A "pleading "is sufficient if it apprises of the incident out of which the claim arose and the mere general nature of action." " Haugland v. Schmidt, 349 N.W.2d 121, 123 (Iowa 1984) (quoting Northwestern Nat'l Bank v. Metro Ctr., Inc., 303 N.W.2d 395, 401 (Iowa 1981)). Under Rule 69's requirement that the petition set forth a claim for relief, the claim is not the equivalent of a cause of action. Obviously, the claims asserted must be capable of recovery. Once that is established, a prima facie showing will suffice. Wilkinson, 340 N.W.2d at 284. | A pleading is sufficient if it apprises of the incident out of which the claim arose and the mere general nature of action. Rules Civ.Proc., Rule 69(b). | Is a pleading sufficient if it apprises the incident out of which the claim arose? | 023506.docx | LEGALEASE-00143659-LEGALEASE-00143660 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 14678 | Bennett v. Mallinckrodt, 698 S.W.2d 854 | 302+11 | (1) "Various health and physical illness" and "Injury, damages to health, property and safety to plaintiffs"Technical forms of pleading are no longer required. Rule 55.04. To plead a claim for relief, the pleader must simply allege a "plain statement of the facts showing [he] is entitled to relief...." Rule 55.05. Although the pleader need not allege evidentiary or operative facts, e.g., Scheibel v. Hillis, 531 S.W.2d 285, 290 (Mo. banc 1976), he must allege ultimate facts, id. at 290, and cannot rely on mere conclusions, e.g., Commercial Bank of St. Louis County v. James, 658 S.W.2d 17, 22 (Mo. banc 1983). These rules and their interpretations are much easier stated than applied. Many allegations simply do not fall within a precise definition of a fact. They are mixed statements of fact and conclusions. In Missouri, however, we still remain stuck in a semantic morass, attempting to differentiate fine and evanescent distinctions between evidentiary facts, ultimate facts and conclusions. See, e.g., Einhaus v. Ames Co., 547 S.W.2d 821, 825 (Mo.App.1976). To us, the distinction is really one between generality and particularity. | Although a pleader need not allege evidentiary or operative facts, he must allege ultimate facts and cannot rely on mere conclusions. V.A.M.R. 55.04, 55.05. | Can a pleader rely on mere conclusions? | Pleading - Memo 423 - RMM.docx | ROSS-003288560-ROSS-003288561 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 14679 | Shockley v. Morgan, 103 Ga. 156 | 307A+74 | The plaintiff who had brought against the defendant an action upon an open account, endeavored to make out their case by introducing answers to certain interrogatories. These interrogatories were addressed to two witnesses. The first of them was in the following words: "State anything you and each of you may know as to the correctness or incorrectness of this account, and your means of knowing about it." Each of the remaining interrogatories propounded questions as to "this account" or "the account." It does not appear, however, that any account of any description was attached to the interrogatories for exhibition to the witnesses. When the interrogatories were served upon counsel for the defendant, an objection in writing, on the ground that no account was attached, was duly entered upon the same. At the trial the court rejected the answers, and rightly did so. It being impossible for either the commissioners or the witnesses to know as to what particular account the latter were interrogated, their answers could not lawfully be treated as pertinent evidence in the pending case. | It was proper to reject answers to interrogatories embracing questions which referred exclusively and in terms to an alleged account, when no account was attached to the interrogatories for exhibition to the witness; objection having been duly made in writing before the commission was issued. | Is it proper to reject answers to interrogatories embracing questions which referred exclusively and in terms to an account? | 032687.docx | LEGALEASE-00144201-LEGALEASE-00144202 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 14680 | Burrell v. State, 18 Tex. 713 | 110+614(1) | The law makes no provision for a third continuance; and whether it shall be granted or not must rest in the sound discretion of the court. It would require a strong case to warrant the control of that discretion, by this court. In Hipp v. Huchett, 4 Tex. 20, this court said, "The legislature has not defined the requisites of a third application; and we may well hold, as a general rule, that it is addressed to the discretion of the court, to be guided in its judicious exercise, by the nature of the case, the circumstances under which the application is made, and the object to be attained, viz.: a fair, as well as speedy trial of the cause." This was a third application to put off the trial, made upon substantially the same grounds as the first. | There being no statutory provision for a third continuance, whether it shall be granted or not must rest in the sound discretion of the court. | Can a third application for continuance be addressed to the sound discretion of the trial court? | Pretrial Procedure - Memo # 5763 - C - DHA.docx | ROSS-003288070-ROSS-003288071 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 14681 | Pac. Co. v. Johnson, 212 Cal. 148 | 371+2005 | It is settled, of course, that in granting a franchise to a corporation the state may limit the powers to be exercised under it, annex conditions to its enjoyment, and require the corporation to contribute to the revenues of the state. | State may annex conditions to corporate franchise and require corporation to contribute to state revenues. | Can state annex conditions to corporate franchise towards contribution to state revenues? | 033660.docx | LEGALEASE-00144123-LEGALEASE-00144124 | Condensed, SA | 0.55 | 0 | 1 | 0 | 1 | |
| 14682 | Christian v. Lincoln Auto. Co., 403 Ill. App. 3d 1038 | 307A+560 | Factors the trial court may consider in determining whether to allow or deny a Rule 103(b) motion include: the length of time used to obtain service of process; the activities of plaintiff; plaintiff's knowledge of defendant's location; the ease with which defendant's whereabouts could have been ascertained; actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service; special circumstances that would affect plaintiff's efforts; and actual service on defendant. Case, 227 Ill.2d at 212"13, 316 Ill.Dec. 693, 880 N.E.2d at 175. Also of significance as an indication of diligence is a plaintiff's efforts to obtain service through an alias summons. Brezinski, 258 Ill.App.3d at 705, 197 Ill.Dec. 342, 631 N.E.2d at 348. | An indication of diligence, for purposes of a motion to dismiss for failure to exercise reasonable diligence to obtain service, is a plaintiff's efforts to obtain service through an alias summons. Sup.Ct.Rules, Rule 103(b). | Can a plaintiff's efforts to obtain service through an alias summons be an indication of diligence? | 033718.docx | LEGALEASE-00144435-LEGALEASE-00144436 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 14683 | Perez v. City of New Orleans, 173 F. Supp. 3d 337 | 313+153 | Once the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity. Carimi v. Royal Carribean Cruise Line, Inc., 959 F.2d 1344, 1346 (5th Cir.1992). A district court has broad discretion to dismiss an action pursuant to Rule 12(b)(5) for insufficient service of process. Kreimerman v. Casa Veerkamp, S.A. de C.V., 22 F.3d 634, 645 (5th Cir.1994). | A district court has broad discretion to dismiss an action for insufficient service of process. Fed. R. Civ. P. 12(b)(5). | Should a district court dismiss an action where service of process is insufficient? | 034019.docx | LEGALEASE-00144403-LEGALEASE-00144404 | Condensed, Order, SA, Sub | 0.7 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14684 | Roberts v. Golden Crest Waters, 1 S.W.3d 291 | 307A+746 | The Roberts urge in their sole point of error that the trial court erred in issuing death-penalty sanctions for their counsel's failure to file a pre-trial statement. A trial court has the authority to impose sanctions for the failure to comply with a pretrial order. See Perez v. Murff, 972 S.W.2d 78, 81 (Tex.App."Texarkana 1998, writ denied). A death-penalty sanction is any sanction that adjudicates a claim and precludes the presentation of the merits of the case. Id. The trial court's exclusion of the Roberts' witnesses precluded them from presenting their case. Consequently, the sanction may be characterized as a death-penalty sanction. Id. | "Death-penalty sanction" is any sanction that adjudicates a claim and precludes the presentation of the merits of the case. | "Is a ""death-penalty sanction"" any sanction that adjudicates a claim and precludes the presentation of the merits of the case?" | 034244.docx | LEGALEASE-00144765-LEGALEASE-00144766 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14685 | Beasley v. Girten, 61 So. 2d 179 | 307A+746 | The pre-trial conference rule was extracted from the Federal Rules of Civil Procedure, 28 U.S.C.A., and is considered by State and Federal Courts to be a great time saver and one of the best means yet devised to expedite the disposition of litigation. When neither party moves for a pre-trial conference, the holding of such a conference is within the discretion of the trial court. If either party moves for such a conference, it is mandatory. In either event it is the duty of counsel to attend or seek a continuance for cause. He should not treat the call with indifference, or ignore it as he did in this case. A motion to continue for cause should have the same consideration as any other motion. The pre-trial conference was designed as an aid to orderly procedure, to expedite and to reduce the burden and expense of litigation. Counsel are expected to conform with this rule as they would any other rule, or be called to account for failure to do so. | It is duty of counsel to attend pre-trial conference or to seek continuance for cause, and a motion to continue for cause should have the same consideration as any other motion. Rules of Common Law, rule 16, 30 F.S.A.; Equity Rules, rule 77, 31 F.S.A. | Is it the duty of counsel to attend a pre-trial conference or to seek continuance for a cause? | 034387.docx | LEGALEASE-00144511-LEGALEASE-00144512 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 14686 | Kincaid v. Ames Dep't Stores, 283 Ill. App. 3d 555 | 307A+560 | We believe that the trial court correctly concluded that the plaintiff acted with diligence in this matter. An immediate attempt to obtain service evinces diligence on the part of a plaintiff. Brezinski v. Vohra, 258 Ill.App.3d 702, 705, 197 Ill.Dec. 342, 631 N.E.2d 345 (1994). In this case, as in Brezinski, plaintiff was not idly ignoring her case following the unsuccessful attempts. See Brezinski, 258 Ill.App.3d at 705, 197 Ill.Dec. 342, 631 N.E.2d 345 (trial court abused discretion in dismissing when plaintiff demonstrated diligence). After her initial unsuccessful efforts, plaintiff was told by Ames that pursuing Smith could expose her to civil contempt. As soon as plaintiff resolved the matter in bankruptcy court, plaintiff obtained service on Smith. We believe these facts constitute special circumstances as contemplated by the statute. In Brezinski, we held that special circumstances were present when the attorney handling plaintiff's case left a law firm, and the firm inadvertently failed to obtain service in the following months while operating shorthanded. Brezinski, 258 Ill.App.3d at 705, 197 Ill.Dec. 342, 631 N.E.2d 345. We find plaintiff's actions in this matter more justifiable than those found acceptable in Brezinski, and thus the trial court did not abuse its discretion by refusing to grant the motion to dismiss. | Immediate attempt to obtain service evinces diligence on part of plaintiff, for purposes of determining whether action should be dismissed. Sup.Ct.Rules, Rule 103(b). | Does an immediate attempt to obtain service evinces diligence on part of a plaintiff? | 034447.docx | LEGALEASE-00144395-LEGALEASE-00144396 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 14687 | Hayes v. Smith, 58 Mont. 306 | 371+2005 | This legislation was the response to the constitutional mandate that the legislative assembly should pass all laws necessary to carry into effect the provisions of article 12 of the Constitution, and particularly the provision in section 11 that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. It is elementary that the taxing power of the state does not extend beyond the territorial limits of the state, and neither does it extend to all subjects actually within the confines of the state, and upon which the state has the physical power to impose a tax, as, for instance, property being transported in interstate commerce while actually in transit through the state. Bacon v. Illinois, 227 U. S. 504, 33 Sup. Ct. 299, 57 L. Ed. 615. | The taxing power of the state does not extend beyond the territorial limits of the state, nor to all subjects actually within the confines of the state, and on which the state has the physical power to impose a tax, but is limited to subjects which have acquired a situs within the state for the purpose of taxation. | Is both the taxing power and the means necessary to exercise it exists in the state? | 045752.docx | LEGALEASE-00144415-LEGALEASE-00144416 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 14688 | Alaska S.S. Co. v. State, 31 Wash. 2d 328 | 371+2005 | The taxing power of a state is one of its attributes of sovereignty, and may be exercised at the discretion of the state, subject to constitutional limitations. Nathan v. State of Louisiana, 8 Howard 73, 12 L.Ed. 992. | The taxing power of a state is one of its attributes of sovereignty and may be exercised at discretion of state subject to constitutional limitations. U.S.C.A.Const. art. 1, S 10, cl. 2. | Which attributes is a state exercising in its right to tax? | 045761.docx | LEGALEASE-00144468-LEGALEASE-00144469 | SA, Sub | 0.14 | 0 | 0 | 1 | 1 | |
| 14689 | Murray v. City of Charleston, 96 U.S. 432 | 371+2005 | All this may be admitted, but it does not meet the case of the defendant. We do not question the existence of a State power to levy taxes as claimed, nor the subordination of contracts to it, so far as it is unrestrained by constitutional limitation.But the power is not without limits, and one of its limitations is found in the clause of the Federal Constitution, that no State shall pass a law impairing the obligation of contracts. A change of the expressed stipulations stipulations of a contract, or a relief of a debtor from strict and literal compliance with its requirements, can no more be effected by an exertion of the taxing power than it can be by the exertion of any other power of a State legislature. The constitutional provision against impairing contract obligations is a limitation upon the taxing power, as well as upon all legislation, whatever form it may assume. Indeed, attempted State taxation is the mode most frequently adopted to affect contracts contrary to the constitutional inhibition. It most frequently calls for the exercise of our supervisory power. It may, then, safely be affirmed that no State, by virtue of its taxing power, can say to a debtor, "You need not pay to your creditor all of what you have promised to him. You may satisfy your duty to him by retaining a part for yourself, or for some municipality, or for the State treasury." Much less can a city say, "We will tax our debt to you, and in virtue of the tax withhold a part for our own use." | A state has power to levy taxes and to subordinate contracts to that power so far as it is unrestrained by constitutional limitation. | Does a state have the power to levy taxes and to subordinate contracts to that power? | 045780.docx | LEGALEASE-00144566-LEGALEASE-00144567 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14690 | Atchison, T. & S.F. Ry. Co. v. Collins, 294 F. 742 | 371+2005 | No precedents closely in point have been found. As in substance I stated at the close of the elaborate preliminary hearing, in some of the cases cited there are found expressions sustaining taxes on property of interstate carriers if, as is said, they are levied in good faith, or if they are not oppressive, or if they are not unreasonable exactions, or if they are within reasonable limits. These expressions are all of a general character, and seem very difficult of practical application in the solution of the problem before us; but are they not indicative of some limitation upon the local taxing power in allocating tax burdens to facilities of commerce? The state has a wide range of power in imposing taxes" a power, it may be said, commensurate with its needs. So, too, it may classify property and distribute the burden somewhat unequally. But, upon the other hand, is not the power of the federal government of equal dignity to protect interstate commerce; and such commerce is, of course, dependent upon the facilities or instrumentalities without which it cannot be carried on. Must not the one power be exercised with due regard for the other? May a state, under the guise of classification, needlessly impose upon facilities of interstate transportation a grossly excessive or disproportionate burden? Conceding the propriety of a measure of classification and disparity, may not a point be reached where the inequality is such as to render the burden "oppressive" and to suggest an intentional shifting in fact of the tax to interstate commerce, though in form it is only upon the property employed in carrying it on? If it be conceded that not the inequality of the tax burden, but the effect of the tax upon interstate commerce, and the intent and purpose of the taxing agency towards interstate commerce, are the ultimate inquiries, still, may not inequality, especially if it be gross, be resorted to as material evidence of an intent to oppress interstate commerce and of actual oppression in fact" not | A state has a wide range of power in imposing taxes, a power commensurate with its needs. | Does a state have a wide range of power that commensurate with its needs in imposing taxes? | 045794.docx | LEGALEASE-00144598-LEGALEASE-00144600 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 14691 | Tyler v. Livonia Pub. Sch., 459 Mich. 382 | 413+2 | Although parties may make certain assumptions about worker's compensation benefits when entering into a pension plan, benefits and liabilities in the worker's compensation statute "do not create rights protected by the Contract Clause." Romein v. General Motors Corp., 436 Mich. 515, 534, 462 N.W.2d 555 (1990). As this Court has stated, ""The subject matter of workmen's compensation reposes within the control of the legislature. A law enacted pursuant to rightful authority is proper, and private contracts are entered into subject to that governmental authority." " Lahti v. Fosterling, 357 Mich. 578, 592, 99 N.W.2d 490 (1959), quoting In re Schmidt v. Wolf Contracting Co., 269 A.D. 201, 207"208, 55 N.Y.S.2d 162 (1945). Thus, those party to a private pension would have no protected rights in worker's compensation benefits, and their contract would be subject to changes in the worker's compensation law. Similarly, plaintiff did not have a protected right to worker's compensation benefits, and thus his pension, although statutory, is a contract subject to changes in the worker's compensation law. | Subject matter of workmen's compensation reposes within the control of the legislature. M.C.L.A. S 418.101 et seq. | Does the subject matter of workmens compensation repose within the control of the legislature? | 048195.docx | LEGALEASE-00144243-LEGALEASE-00144244 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 14692 | Clark v. State Workmen's Comp. Com'r, 155 W. Va. 726 | 413+2 | The right to workmen's compensation benefits is wholly statutory and any such benefits may be paid to a claimant only as authorized by law. Bounds v. State Workmen's Compensation Commissioner, 153 W.Va. 670, 172 S.E.2d 379; Taylor v. State Workmen's Compensation Commissioner, 152 W.Va. 609, 165 S.E.2d 613; Bailes v. State Workmen's Compensation Commissioner, 152 W.Va. 210, 161 S.E.2d 261. | Right to workmen's compensation benefits is wholly statutory, and they may be paid to claimant only as authorized by law. Code, 23-4-1. | Are workmens compensation rights wholly statutory? | 048197.docx | LEGALEASE-00144249-LEGALEASE-00144250 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 14693 | HDH Corp. v. Atl. Charter Ins. Co., 425 Mass. 433 | 413+2 | The distinction is not merely a procedural matter of bringing an action in the wrong forum. As amici point out, there are fundamental differences between a claim for workers' compensation benefits and a lawsuit seeking civil damages. The Legislature intended that the workers' compensation system supplant the common law tort system as a means for compensating injured employees. See Alecks' Case, 301 Mass. 403, 404, 17 N.E.2d 173 (1938). Accordingly, the purposes, remedies available, evidentiary burdens, and standards of proof employed in adjudicating within the two distinct systems are different by legislative design. See Opinion of the Justices, 209 Mass. 607, 609, 96 N.E. 308 (1911) (proposed Workers' Compensation Act represented "a radical departure in the manner of dealing with actions or claims for damages for personal injuries received by employees in the course of their employment from that which has heretofore prevailed in this Commonwealth"). | Legislature intended that workers' compensation system supplant common law tort system as a means for compensating injured employees. | What was the Legislature intent for the workers compensation system? | 048219.docx | LEGALEASE-00144315-LEGALEASE-00144316 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14694 | United States v. Reaves, 126 F. 127 | 34+19 | "Section 1117 (U.S. Comp. St. 1901, p. 813) provides that 'no person under the age of twenty-one years shall be enlisted or mustered into the military service of the United States without the written consent of his parents or guardians: provided, that such minor has such parents or guardians entitled to his custody and control." But this provision is for the benefit of the parent or guardian. It means simply that the government will not disturb the control of parent or guardian over his or her child without consent. It gives the right to such parent or guardian to invoke the aid of the court and secure the restoration of a minor to his or her control, but it gives no privilege to the minor. The age at which an infant shall be competent to do any acts or perform any duties, military or civil, depends wholly upon the Legislature. United States v. Bainbridge, 1 Mason, 71 (Fed. Cas. No. 14,497); Wassum v. Feeney, 121 Mass. 93, 95 (23 Am.Rep. 258). | Rev.St. 1419, as amended by Act Feb. 23, 1881 (10 U.S.C.A. SS 5532, 5533), provides that minors between the ages of 14 and 18 years shall not be enlisted for naval service without the consent of their parents or guardians; and section 1420 (10 U.S.C.A. SS 5532, 5533), as amended by the same act, declares that no minor under the age of 14 years shall be enlisted in the navy service. Held, that where a minor under the age of 18 years enlisted in the navy without the consent of his father, then living, on the minor's fraudulent representation that he was over 21 years of age, such enlistment was not void as to the minor, but was voidable only, at the instance of his father. | For whose benefit is the written consent of a parent or guardian for enlistment of men under 21 required? | 008604.docx | LEGALEASE-00146519-LEGALEASE-00146520 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 14695 | Katzer v. United States, 49 Ct. Cl. 294 | 34+26 | This court agrees with the opinion of the Attorney General that paymasters' clerks are now officers of the Navy in the constitutional sense so as to entitle them to the mileage allowed in the act of March 3, 1901, supra. | Under the provisions of article 1751 of the Navy Regulations, paymasters' clerks are officers of the navy in the constitutional sense, so as to entitle them to the mileage allowed in Act March 3, 1901. | Are paymasters clerks officers of the Navy? | Armed Services - Memo 232 - JK.docx | ROSS-003301482 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14696 | United States v. Townsend, 630 F.3d 1003 | 63+1(2) | If Congress had intended to exclude intangibles from the scope of 18 U.S.C. " 666, it easily could have done so. Instead, Congress used the term "thing of value," which we have held unambiguously includes intangibles. See United States v. Moore, 525 F.3d 1033, 1048 (11th Cir.2008) ("thing of value" in statute prohibiting bribery of public officials and witnesses unambiguously includes intangibles); United States v. Nilsen, 967 F.2d 539, 543 (11th Cir.1992) (holding that "the phrase "thing of value" is a clearly defined term that includes intangible objectives"). And lest there be any doubt, Congress broadened the "thing of value" term even more by attaching the widening adjective "any" to it. Because the language of the statute is plain and our inquiry ends where it began, United States v. Steele, 147 F.3d 1316, 1318 (11th Cir.1998), Merritt, 120 F.3d at 1185, we conclude that intangibles, such as freedom from jail and greater freedom while on pretrial release, are things of value under " 666(a)(1)(B). | Term "any thing of value," as used in the federal statute prohibiting bribes offered to state and local officials employed by agencies receiving federal funds, may include intangibles, such as freedom from jail and incremental increases in such freedom. 18 U.S.C.A. S 666(a)(1)(B). | Does the term thing of value include intangibles? | 011142.docx | LEGALEASE-00146063-LEGALEASE-00146064 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 14697 | People v. Gagnon, 21 Misc. 3d 594 | 210+357(28) | The crimes of bribing a witness (Penal Law " 215.00) and bribe receiving by a witness (Penal Law " 215.05) are identical except for the fact that the former applies to the bribe-maker and the latter to the bribe-recipient. In People v. Harper, 75 N.Y.2d 313, 552 N.Y.S.2d 900, 552 N.E.2d 148, the Court of Appeals reversed a defendant's conviction after trial for bribe receiving by a witness, holding that "a release' agreement in which one party agrees to drop' criminal and civil charges in exchange for money and other valuable consideration ... is, without more, legally insufficient to establish the elements of the crime" (id. ). In addition to noting "that the determination as to whether and how to prosecute a criminal case belongs to the District Attorney and not the complainant (see, Matter of Schumer v. Holtzman, 60 N.Y.2d 46, 52, 467 N.Y.S.2d 182, 454 N.E.2d 522; People v. Zimmer, 51 N.Y.2d 390, 394, 434 N.Y.S.2d 206, 414 N.E.2d 705)" (id. at 318, 552 N.Y.S.2d at 903, 552 N.E.2d at 151), the Court explained: "As common sense and experience suggests, agreeing to drop' charges is certainly not the same as agreeing to alter testimony or absent oneself entirely from a proceeding. Consequently, evidence that someone has agreed to do the former cannot alone be used as a basis to infer the existence of an agreement to do the latter. To the contrary, an agreement to drop' criminal charges says nothing about the promisor's intention to appear and testify truthfully in the event that the prosecutor decides to proceed despite the promisor's wishes to the contrary. At worst, it suggests a fundamental misunderstanding by one or both parties of the power that private citizen-complainants have over the conduct of criminal proceedings. Thus, the decision to drop charges cannot provide a sufficient basis from which a rational jury could infer that defendant had entered into the kind of agreement prohibited by Penal Law " 215.05" (id. at 318, 552 N.Y.S.2d at 902"903, 552 N.E.2d at 150"151). | Indictment charging defendant with attempted bribing of a witness would be dismissed, where no evidence was presented to grand jury that defendant, in addition to suggesting to witness that he would drop civil charges against her in exchange for her dropping criminal assault and endangering charges against him, also sought an agreement by witness to either perjure or absent herself had charges gone to trial. McKinney's Penal Law S 215.05. | "Does a ""release agreement"" where one party agrees to drop criminal or civil charges constitute bribery of a witness?" | Bribery - Memo #861 - C - LB.docx | ROSS-003290969-ROSS-003290970 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 14698 | Sheriff, Clark Cty., Nev. v. Stevens, 97 Nev. 316 | 67+2 | The offense of burglary is complete when the house or other building is entered with the specific intent to commit larceny or any felony therein. Carr v. Sheriff, 95 Nev. 688, 601 P.2d 422 (1979); see NRS 205.060(1). If larceny or any felony is thereafter committed, the perpetrator has committed two crimes, and may be charged with burglary as well as larceny or the felony. See People v. Morales, 263 Cal.App.2d 211, 69 Cal.Rptr. 553 (1968). | Offense of "burglary" is complete when house or other building is entered with specific intent to commit larceny or any felony therein. N.R.S. 205.060, subd. 1. | Does burglary involve intent to commit any felony? | Burglary - Memo 210 - JS.docx | ROSS-003327838-ROSS-003327841 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 14699 | State v. Ring, 554 N.W.2d 758 | 67+3 | Commission of attempted burglary in the first degree is accomplished if the person enters a building in which another person is present without consent of the owner and with the intent to commit a crime. Minn.Stat. "" 609.17, 609.582, subd. 1(a) (1994).For burglary, intent means the state must prove a defendant intended to commit some independent crime other than trespass after illegal entry into the building. State v. Larson, 358 N.W.2d 668, 670 (Minn.1984). | To obtain burglary conviction, state must prove defendant intended to commit some independent crime other than trespass after illegal entry into building. M.S.A. S 609.582. | Does burglary require proof of a crime other than trespass? | Burglary - Memo 213 - JS.docx | ROSS-003302418-ROSS-003302421 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 14700 | Pounds v. Jurgens, 296 S.W.3d 100 | 260+55(1) | Thus, the mineral estate may be severed from the surface estate not only by a grant of the minerals in a deed or reservation in a conveyance, but also by grant in a lease. Moser v. U.S. Steel Corp., 676 S.W.2d 99, 101 (Tex.1984). When, as here, the lessor reserves only a royalty interest, the lessee acquires title to all of the oil and gas in place, and the lessor owns only a possibility of reverter and has the right to receive royalties. Pool, 124 S.W.3d at 192. As distinguished from a mineral interest, the royalty interest is a non-possessory interest. | The mineral estate in land may be severed from the surface estate not only by a grant of the minerals in a deed or reservation in a conveyance, but also by grant in a lease. | Can a lease sever the mineral estate from the surface? | 021453.docx | LEGALEASE-00146081-LEGALEASE-00146082 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 14701 | Kimbro v. Bullitt, 63 U.S. 256 | 289+650 | Whenever there are written articles of agreement between the partners, their power and authority, inter se, are to be ascertained and regulated by the terms and conditions of the written stipulations. But, independently of any such stipulations, each partner possesses an equal and general power and authority, in behalf of the firm, to transact any business within the scope and objects of the partnership, and in the course of its trade and business. | Whenever there are written articles of agreement between partners, their power and authority, inter se, are to be ascertained and regulated by the terms of the written stipulations. | Can a partnership be regulated by the written articles of agreement? | 022445.docx | LEGALEASE-00146325-LEGALEASE-00146326 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 14702 | Benfield v. Costner, 67 N.C. App. 444 | 302+11 | North Carolina is a notice pleading State, and detailed fact pleading generally is no longer required. Sutton v. Duke, 277 N.C. 94, 176 S.E.2d 161 (1970). However, allegations of fraud are specifically excepted from the notice pleading approach. N.C.Gen.Stat. " 1A-1, Rule 9(b) (1983) states: "In all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Actual fraud and constructive fraud satisfy the particularity requirement in varying ways. Terry v. Terry, 302 N.C. 77, 273 S.E.2d 674 (1981). | North Carolina is a notice pleading state, and detailed fact pleading generally is no longer required. | Is detailed fact pleading required in a notice pleading state? | 023532.docx | LEGALEASE-00145075-LEGALEASE-00145076 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14703 | Smith v. Lewis, 669 S.W.2d 558 | 302+11 | The elements of a cause of action for false imprisonment are the detention or restraint of one against his will, and the unlawfulness of such detention or restraint. Liability attaches where it be shown that the defendant instigated, caused or procured the arrest. Richardson v. Empire Trust, 230 Mo.App. 580, 94 S.W.2d 966 (1936). In passing upon the sufficiency of a petition for false imprisonment, no fixed set of rules can be laid down with which to measure acts constituting instigation of an arrest, but each case must be decided on the particular facts and inferences. Knupp v. Esslinger, 363 S.W.2d 210, 213 (Mo.App.1962). A pleader is required to state only the ultimate facts and it is not necessary to plead the facts or circumstances by which the ultimate facts will be established. Scheibel v. Hillis, 531 S.W.2d 285, 290 (Mo. banc 1976). If a petition does not set out the particulars of evidence which will prove ultimate facts, such imperfections are to be reached by a motion for more definite statement or a bill of particulars under " 509.310, RSMo 1978 and not by a motion to dismiss. Fish v. Fish, 307 S.W.2d 46, 51 (Mo.App.1957). See also Fischer, Etc. v. Forrest T. Jones & Co., 586 S.W.2d 310 (Mo. banc 1979). | Pleader is required to state only ultimate facts, and it is not necessary to plead facts or circumstances by which ultimate facts will be established. | Is a pleader required to state the facts or circumstances by which the ultimate facts will be established? | Pleading - Memo 429 - RMM.docx | ROSS-003301144-ROSS-003301145 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14704 | Porter v. Urbana-Champaign Sanitary Dist., 237 Ill. App. 3d 296 | 302+11 | A complaint need not set out the evidence plaintiff intends to present, but only ultimate facts (County of Cook v. Illinois Wine & Spirits Co. (1981), 93 Ill.App.3d 710, 713, 49 Ill.Dec. 122, 125, 417 N.E.2d 812, 815), and this is particularly so where a small claims complaint is involved. It is clear from the complaint and the bill of particulars that plaintiff alleged the overflow resulted from defendant's negligence. We decline to apply the strict requirements of Taylor to this small claims complaint. Plaintiff ought to have been allowed his day in court. Whether plaintiff can prove negligence is a question not before this court. | Complaint need not set out evidence plaintiff intends to present but only ultimate facts, particularly where small claims complaint is involved. | Is a complaint required to set out evidence? | 023541.docx | LEGALEASE-00145444-LEGALEASE-00145445 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 14705 | In re Canales, 113 S.W.3d 56 | 302+386.1 | The function of a pleading is to define the issues at trial. See Safety Cas. Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238, 245 (1942) (op. on reh'g); Bader v. Cox, 701 S.W.2d 677, 686 (Tex.App.-Dallas 1985, writ ref'd n.r.e.). A petition must give fair and adequate notice of the facts upon which the pleader bases his claim so that the opposing party has information sufficient to enable him to prepare a defense. See Roark v. Allen, 633 S.W.2d 804, 810 (Tex.1982); see also Tex.R. Civ. P. 45, 47. The pleadings and the evidence must coincide. Wright, 160 S.W.2d at 245. However, a variance between the pleadings and proof is fatal only if the divergence is substantial, misleading, and prejudicial. See Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 186"87 (Tex.1977); see also 2 McDonald Texas Civil Practice " 7.32 [b] (rev. 1992). | The pleadings and the evidence must coincide; however, a variance between the pleadings and proof is fatal only if the divergence is substantial, misleading, and prejudicial. | Must the pleadings and the evidence coincide? | 023557.docx | LEGALEASE-00146118-LEGALEASE-00146119 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 14706 | Badran v. Bertrand, 210 Neb. 747 | 302+380 | We believe that it is abundantly clear from the record that by his testimony and other evidence offered in support of his claim, the plaintiff completely repudiated the "Memorandum of Understanding" which formed the basis of the cause of action alleged in his petition. In Russell v. Zanone, 55 Tenn.App. 690, 693, 404 S.W.2d 539, 540 (1966), the Tennessee Court of Appeals stated that "proof must correspond with the allegations in the pleadings, and relief cannot be granted upon proof of a case substantially different from the case made in the pleadings." To the same effect is W. T. Smith Lumber Co. v. Foshee, 277 Ala. 71, 75, 167 So.2d 154, 158 (1964): "To authorize relief in equity the allegations and proof must correspond, and no matter how just the demand established by complainant's proof, if it does not harmonize with the allegations of the bill, the complainant is not entitled to relief." | Proof must correspond with allegations in pleadings and relief cannot be granted upon proof of case substantially different from case made in pleadings. | Must pleadings and proof correspond? | 023561.docx | LEGALEASE-00146206-LEGALEASE-00146207 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14707 | Freeman v. JI Specialty Servs., 505 S.W.3d 14 | 302+104(1) | Whether a trial court has subject-matter jurisdiction is a question of law and is subject to a de novo review. Tex. Nat. Res. Conservation Comm'n v. IT"Davy, 74 S.W.3d 849, 855 (Tex. 2002). When a trial court lacks subject-matter jurisdiction, the trial court's judgment must be reversed and the case dismissed. City of Garland v. Louton, 691 S.W.2d 603, 605 (Tex. 1985) (per curiam). A motion to dismiss due to a lack of subject-matter jurisdiction is the functional equivalent of a plea to the jurisdiction. Trutec Oil & Gas, Inc. v. W. Atlas Int'l, Inc., 194 S.W.3d 580, 584 (Tex. App."Houston [14th Dist.] 2006, no pet.); Anderson v. City of San Antonio, 120 S.W.3d 5, 7 (Tex. App."San Antonio 2003, pet. denied). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a cause of action. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). | A motion to dismiss due to a lack of subject-matter jurisdiction is the functional equivalent of a plea to the jurisdiction. | Is a motion to dismiss based on a lack of subject matter jurisdiction the functional equivalent of a plea to the jurisdiction? | Pretrial Procedure - Memo # 6486 - C - VA.docx | ROSS-003289707-ROSS-003289708 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14708 | Stock v. Arnott, 415 Pa. Super. 113 | 307A+746 | This court has determined, pursuant to the inherent authority in Rule 212, that "counsel is under the same duty to appear at conciliatory or pre-trial conferences as he is to appear at trial." Lee v. Cel-Pek Industries, Inc., 251 Pa.Super. 568, 570, 380 A.2d 1243, 1244 (1977); 1 Goodrich Amram 2d " 212:8 (1991 ed.). While the attorneys for the parties are obligated to appear, the parties themselves are not, unless specifically ordered to do so. See Pa.R.C.P. 212; Barner v. Juniata County Tax Claim Bureau, 104 Pa.Cmwlth. 468, 522 A.2d 169, 171 (1987), alloc. den. 515 Pa. 624, 531 A.2d 432 (1987). Where, as here, a party is appealing pro se, the party himself has the same duty to appear at pre-trial conferences as would an attorney representing him. 1 Goodrich Amram 2d " 212:9 (1991 ed.). | While attorneys for parties are obligated to appear at pretrial conferences, parties themselves are not unless they are specifically ordered to do so. | "While attorneys for parties are obligated to appear at pretrial conferences, are parties themselves not unless they are specifically ordered to do so?" | 034043.docx | LEGALEASE-00145122-LEGALEASE-00145123 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14709 | Gautreaux v. Maya, 112 So. 3d 146 | 30+3259 | This court reviews a dismissal for fraud on the court for abuse of discretion. See Perrine v. Henderson, 85 So.3d 1210, 1212 (Fla. 5th DCA 2012); Sun v. Aviles, 53 So.3d 1075 (Fla. 5th DCA 2010); Bologna v. Schlanger, 995 So.2d 526, 528 (Fla. 5th DCA 2008). However, such a dismissal must be supported by clear and convincing evidence. Perrine, 85 So.3d at 1212; Sun, 53 So.3d at 1077; Villasenor v. Martinez, 991 So.2d 433, 436 (Fla. 5th DCA 2008). Thus, the abuse-of-discretion standard of review "is somewhat narrowed" in this context, "as it must take into account the heightened standard of clear and convincing evidence." Suarez v. Benihana Nat'l of Fla. Corp., 88 So.3d 349, 352 (Fla. 3d DCA 2012) (quotation marks omitted). Further, where the trial court does not receive live testimony, appellate deference is furthered narrowed, because the appellate court's review is based on the same record. See Ruiz v. City of Orlando, 859 So.2d 574, 576 (Fla. 5th DCA 2003). | The abuse of discretion standard of review applicable to a trial court's order dismissing a complaint for perpetrating a fraud on the court is somewhat narrowed, as it must take into account the heightened standard of clear and convincing evidence upon which an order of dismissal for fraud on the court must be based, and where the trial court does not receive live testimony, appellate deference is further narrowed, because the appellate court's review is based on the same record. | Should a dismissal for fraud on the court be supported by clear and convincing evidence? | 034104.docx | LEGALEASE-00145326-LEGALEASE-00145327 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 14710 | Henry v. Shober, 566 N.W.2d 190 | 307A+560 | 34 A civil action is commenced by filing a petition with the district court. Iowa R. Civ. P. 48. Generally, the filing of a petition also tolls the statute of limitations. Iowa R. Civ. P. 55. However, if there is an intentional delay in service, the filing of the petition alone is not enough to toll the statute of limitations. In re Estate of Steinberg, 443 N.W.2d 711, 713 (Iowa 1989); Scieszinski v. City of Wilton, 270 N.W.2d 450, 453 (Iowa 1978). The petition, original notice, and directions for service must be promptly delivered for service on the defendant. Iowa R. Civ. P. 49(b); Alvarez, 560 N.W.2d at 590-91. Even though the Iowa rules of civil procedure do not specify when service must be made, our cases require dismissal of an action if there is an unjustified, abusive delay in completing service. Alvarez, 560 N.W.2d at 591. | Dismissal of action is required if there is unjustified, abusive delay in completing service. | "Is dismissal of action required if there is unjustified, abusive delay in completing service?" | Pretrial Procedure - Memo # 6536 - C - AP.docx | ROSS-003289732 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 14711 | Henry v. Shober, 566 N.W.2d 190 | 307A+560 | As the above analysis suggests, if a delay in service is presumptively abusive, it does not matter whether the delay is intentional. Here, the Henrys' 169-day delay in serving Shober was both intentional and presumptively abusive. It is undisputed that Henrys never attempted to serve Shober for more than five months after the filing of the petition. Further, in Alvarez, we noted that, in accordance with Federal Rule of Civil Procedure 4(m), any delay beyond 120 days "indicates the plaintiff filed the petition, not to seriously institute litigation, but rather to "ice" the statute of limitations for a later determination on whether to proceed with suit." Id. | If delay in obtaining service of process is presumptively abusive, it does not matter whether delay is intentional, and action is subject to dismissal if plaintiff fails to carry burden of proving that delay was justified. Rules Civ.Proc., Rule 49. | "If delay in obtaining service of process is presumptively abusive, does it not matter whether delay is intentional?" | 034115.docx | LEGALEASE-00145352-LEGALEASE-00145353 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 14712 | Kiser v. Caudill, 210 W. Va. 191 | 307A+44.1 | However, we have also recognized that "[b]oth Rule 16(f) and 37(b) of the Rules of Civil Procedure allow the imposition of only those sanctions that are "just." " Bartles v. Hinkle, 196 W.Va. 381, 390, 472 S.E.2d 827, 836 (1996) (citation omitted). In Syllabus Point 2 of Bartles this Court held that:In formulating the appropriatesanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasonsclearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriatesanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case. | In formulating the appropriate sanction, a court shall be guided by equitable principles; initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction, and the court must explain its reasons clearly on the record if it decides a sanction is appropriate. Rules Civ.Proc., Rule 37(b). | Should a court explain reasons clearly on record if it decides sanction is appropriate? | 034127.docx | LEGALEASE-00145419-LEGALEASE-00145420 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 14713 | City of El Paso v. Tom Brown Ministries, 505 S.W.3d 124 | 13+13 | Standing is a constitutional prerequisite to suit. Heckman, 369 S.W.3d at 150; Waterblasting Techs., Inc., 491 S.W.3d at 898; see Sw. Bell Tel. Co. v. Mktg. on Hold Inc., 308 S.W.3d 909, 915 (Tex. 2010). A court has no subject-matter jurisdiction over a claim made by a party who lacks standing to assert it. Heckman, 369 S.W.3d at 150; DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex. 2008); Waterblasting Techs., Inc., 491 S.W.3d at 898"99; Ranchero Esperanza, Ltd. v. Marathon Oil Co., 488 S.W.3d 354, 358 (Tex.App."El Paso 2015, no pet.) ("Standing is a component of subject-matter jurisdiction."). When a party lacks standing to assert a claim, the court lacks jurisdiction over that claim and must dismiss it. Heckman, 369 S.W.3d at 150; Waterblasting Techs., Inc., 491 S.W.3d at 899. | A court has no subject-matter jurisdiction over a claim made by a party who lacks standing to assert it. | Does a court have jurisdiction over a claim made by a plaintiff who lacks standing to assert it? | 034400.docx | LEGALEASE-00145095-LEGALEASE-00145096 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14714 | Annexation Ordinance F-2008-15 v. City of Evansville, 955 N.E.2d 769 | 307A+552 | The long-standing rule in Indiana has been that a case is deemed moot when no effective relief can be rendered to the parties before the court. A.D. v. State, 736 N.E.2d 1274, 1276 (Ind.Ct.App.2000). When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. Id. The existence of an actual controversy is an essential requisite to appellate jurisdiction. Bremen Public Schools v. Varab, 496 N.E.2d 125, 126 (Ind.Ct.App.1986). Although we prefer not to issue advisory opinions, we may decide an arguably moot case on its merits if it involves questions of great public interest. A.D., 736 N.E.2d at 1276. Nevertheless, this public interest exception may only be invoked upon the existence of three elements: the issue concerns a question of great public importance which is likely to recur in a context which will continue to evade review. Haggerty v. Bloomington Bd. of Public Safety, 474 N.E.2d 114, 116 (Ind.Ct.App.1985). | When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed. | Will a case be dismissed as moot when a dispositive issue in a case has been resolved? | 034636.docx | LEGALEASE-00145152-LEGALEASE-00145153 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14715 | McCormick v. Meyer, 582 N.W.2d 141 | 307A+560 | Although our rules of civil procedure at the time this action was commenced did not specifically address when service of process must be accomplished, the applicable principles are expressed in our opinions. See Mokhtarian v. GTE Midwest Inc., 578 N.W.2d 666, 668-69 (Iowa 1998); Dennis, 482 N.W.2d at 450-51; Bean v. Midwest Battery & Metal, Inc., 449 N.W.2d 353, 355-56 (Iowa 1989). It is clear dismissal is required if there is an unjustified abusive delay in completing service. Mokhtarian, 578 N.W.2d at 668; Henry, 566 N.W.2d at 192; Alvarez v. Meadow Lane Mall, Ltd., 560 N.W.2d 588, 591 (Iowa 1997). If there is a delay in service, the court must first determine if the delay was presumptively abusive. Mokhtarian, 578 N.W.2d at 668. If the court finds the delay is presumptively abusive, the court must then determine if the plaintiff has shown the delay was justified. Id. If the delay was not justified, the case must be dismissed. Once the petition is filed, the plaintiff bears the burden of ensuring that the service of the original notice and petition is both proper and timely. Id. | It is clear that dismissal is required if there is an unjustified abusive delay in completing service. | Is it clear that dismissal is required if there is an unjustified abusive delay in completing service? | 034678.docx | LEGALEASE-00145537-LEGALEASE-00145538 | SA, Sub | 0.91 | 0 | 0 | 1 | 1 | |
| 14716 | Capaci v. Folmar Kenner, 43 So. 3d 1229 | 307A+581 | The determination of whether a party's conduct was willful or contumacious is within the trial court's discretion. "Because the trial judge is in the best position to assess the conduct of the plaintiff and the degree of noncompliance, his decision to grant a motion to dismiss for failure to prosecute will be accorded considerable weight by a reviewing court." Jones v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 604 So.2d at 341 (citing Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 947 (9th Cir.1976), and Von Poppenheim v. Portland Boxing & Wrestling Comm'n, 442 F.2d 1047, 1051 (9th Cir.1971)). However, the dismissal of a party's claim with prejudice is a drastic sanction that should be used only in extreme situations. Burdeshaw v. White, 585 So.2d at 847. Further, " "[d]ismissal orders must be carefully scrutinized, and the plaintiff's conduct must mandate dismissal." " Hosey v. Lowery, 911 So.2d at 17 (quoting Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala.1989)). | Dismissal of a party's claim with prejudice pursuant to rule permitting involuntary dismissal for failure of plaintiff to prosecute or to comply with rules or any order of court is a drastic sanction that should be used only in extreme situations. Rules Civ.Proc., Rule 41(b). | Should a plaintiff's conduct mandate dismissal of claim with prejudice as sanctions? | 034811.docx | LEGALEASE-00145887-LEGALEASE-00145888 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 14717 | Butler v. Circulus, 557 S.W.2d 469 | 307A+563 | The other violations of court orders involve plaintiffs' failure to make parts of their sixth amended petition more definite. Whether these events are measured by the specific rule, Rule 55.27(d) (s 509.310 RSMo 1969), or the general rule, Rule 67.02 (s 510.140 RSMo 1969), either of which could apply here, we do not believe that dismissal of plaintiffs' petition is sustainable on the grounds of plaintiffs' failure to make these parts of their petition more specific. It is an abuse of discretion to order a plaintiff to make a petition more definite when the petition already alleges sufficient facts to appraise the defendant of the acts with which he is charged so that he can prepare a responsive pleading. Einhaus v. O. Ames Co., 547 S.W.2d 821, 823 (Mo.App.1976). See, Gates v. Tauchen, 497 S.W.2d 183, 185(2) (Mo.1973); Sansone v. National Food Stores, Inc., 352 S.W.2d 375, 378-79(6) (Mo.App.1961). Further, a dismissal for failure to follow a court order presupposes an order lawfully made. Healer v. Kansas City Public Service Co., 251 S.W.2d 66, 68(5) (Mo.1952). | Dismissal for failure to follow a court order presupposes an order lawfully made. | Does a dismissal for a failure to follow a court order presuppose an order lawfully made? | 10035.docx | LEGALEASE-00095459-LEGALEASE-00095460 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14718 | Nunez v. Burgos, 215 So. 3d 931 | 307A+581 | Finally, the jurisprudence has uniformly held that La. C.C.P. art. 561 is to be liberally construed in favor of maintaining a plaintiff's suit. Clark, 785 So.2d at 785. Abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions which in fact clearly have been abandoned. Id. at 786. | Abandonment is meant not as a ground to dismiss actions on mere technicalities, but to dismiss actions which in fact clearly have been abandoned. La. Code Civ. Proc. Ann. art. 561. | Is abandonment not meant to dismiss actions on mere technicalities? | 10041.docx | LEGALEASE-00095312-LEGALEASE-00095313 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 14719 | Pressey v. State, 114 N.W.2d 518 | 307A+563 | In Nebraska there is statutory authority permitting a court to dismiss an action where a plaintiff disobeys an order concerning the proceedings. Section 25-601, R.R.S.1943, provides in part: "An action may be dismissed without prejudice to a future action (5) by the court for disobedience by the plaintiff of an order concerning the proceedings in the action.' | Court may dismiss an action where plaintiff disobeys order concerning proceedings. R.R.S.1943, S 25-601. | Can a court dismiss an action where a plaintiff disobeys an order concerning proceedings? | 035165.docx | LEGALEASE-00145804-LEGALEASE-00145805 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 14720 | Giraldo v. California Dep't of Corr. & Rehab., 168 Cal. App. 4th 231 | 307A+552 | An issue becomes moot when some event has occurred which "deprive[s] the controversy of its life." (Boccato v. City of Hermosa Beach (1984) 158 Cal.App.3d 804, 808, 204 Cal.Rptr. 727.) The policy behind a mootness dismissal is that "courts decide justiciable controversies and will normally not render advisory opinions." (Ebensteiner Co., Inc. v. Chadmar Group (2006) 143 Cal.App.4th 1174, 1179, 49 Cal.Rptr.3d 825.) | The policy behind a mootness dismissal is that courts decide justiciable controversies and will normally not render advisory opinions. | What is the policy behind a mootness dismissal? | 035235.docx | LEGALEASE-00145920-LEGALEASE-00145921 | Condensed, SA | 0.68 | 0 | 1 | 0 | 1 | |
| 14721 | Arbelovsky v. Ebasco Servs., 922 P.2d 225 | 307A+563 | A trial court's discretion to order litigation-ending sanctions is severely limited, whether the dismissal is requested as a discovery sanction under Civil Rule 37, or for non-compliance with court orders pursuant to Civil Rule 41(b), or as a result of a litigant's failure to prosecute a claim as required by Civil Rule 41(e). There must be "willful noncompliance" with court orders,2 or "extreme circumstances,"3 or "gross violations" of the Rules.4 The record must also "clearly indicate a reasonable exploration of possible and meaningful alternatives to dismissal." Power Constructors, 811 P.2d at 1055. Exploration of alternative sanctions will not be assumed if the record is inadequate, nor will conclusory rejection of all sanctions short of dismissal be accepted as a reasonable exploration of meaningful alternatives. Hughes, 875 P.2d at 753. If meaningful alternative sanctions are available, the trial court must ordinarily impose these lesser sanctions rather than a dismissal with prejudice. Power Constructors, 811 P.2d at 1055, citing Zeller v. Poor, 577 P.2d 695, 697 (Alaska 1978); see also Mely, 409 P.2d at 983 (holding Rule 41(b) sanction of dismissal with prejudice too harsh). | Trial court's discretion to order litigation-ending sanctions is severely limited; there must be willful noncompliance with court orders, extreme circumstances, or gross violations of rules of civil procedure. Rules of Civ.Proc., Rules 37, 41(b, e). | Is it within the discretion of the trial court to impose sanctions for noncompliance with court orders? | 035249.docx | LEGALEASE-00145955-LEGALEASE-00145956 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14722 | Serna v. O'Donnell, 70 F.R.D. 618 | 170A+2734 | A decision as to frivolity or maliciousness is an extremely important one, because dismissal of frivolous actions pursuant to 28 U.S.C. " 1915(d) is appropriate to prevent abuses of the processes of the Court. Harkins v. Eldredge, 505 F.2d 802 (8th Cir. 1974). This responsibility to dismiss cases that are frivolous or malicious must be balanced against the predisposition in favor of liberal construction of pro se prisoner pleadings. This Court does not believe that it can properly exercise the duty given it under 28 U.S.C. " 1915(d) by simply reading pro se prisoner complaints leniently without regard to possible frivolity when a request to proceed in forma pauperis has been made. | Dismissal of frivolous in forma pauperis actions is appropriate to prevent abuses of the processes of the court. 28 U.S.C.A. S 1915(d). | Is dismissal of frivolous action appropriate to prevent abuse of process? | 035307.docx | LEGALEASE-00145663-LEGALEASE-00145664 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 14723 | Boothe Fin. Corp. v. Lindley, 6 Ohio St. 3d 247 | 92+3560 | States have great discretion in laying taxes; however, the taxing power is subject to the Equal Protection Clause. Allied Stores of Ohio, Inc. v. Bowers (1959), 358 U.S. 522, 526, 79 S.Ct. 437, 440, 3 L.Ed.2d 480. In Hillsborough v. Cromwell (1946), 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358, the court discussed the application of the Equal Protection Clause to tax cases and said, at page 623, 66 S.Ct. at page 448:"The equal protection clause of the Fourteenth Amendment protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class. The right is the right to equal treatment." | States have great discretion in laying taxes; however, taxing power is subject to equal protection clause. U.S.C.A. Const.Amend. 14; Const. Art. 1, S 2. | Do states have great discretion in laying taxes? | 10599.docx | LEGALEASE-00095143-LEGALEASE-00095144 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 14724 | Johnson v. City of Pendleton, 131 Or. 46 | 371+2005 | The power to levy taxes has always been regarded as an incident of sovereignty and one which belongs exclusively to the legislative department. 1 Cooley on Taxation (3d Ed.) p. 7. In exercising the taxing power the legislative department of the state or of a city or town is exercising a purely governmental function. In the exercise of a governmental power, no legislature has power to enact an irrepealable law. Upon matters which are purely governmental in their nature, such as the levying of future taxes, no legislative act will bind a subsequent Legislature; but when a legislative act assumes the form and substance of a contract, as was attempted in the instant case, if the contract was valid, the legislation would be irrepealable and would bind all subsequent legislative bodies of the city of Pendleton. There is no other mode except by contract by which a legislative act can be made binding upon subsequent Legislatures. It is very clear that the city of Pendleton could not enter into a contract which would bind its people or its legislative department in the future to levy a tax for any purpose or for any amount. Such attempted action upon its part would come within the principle denounced by Blackstone when he said: "Acts of Parliment derogatory from the power of subsequent Parliments, bind not." 1 Bl. Com. 90. The power to levy a tax or to determine whether a tax shall be levied or not is a power which must be preserved and exercised whenever the public good demands or may demand its exercise. As to such powers no legislative body can bind its successors in office. See Cooley, Const. Lim. (7th Ed.) p. 174. | State department exercising taxing power exercises purely governmental functions. | Do the state department exercising taxing power exercise purely governmental functions? | Taxation - Memo # 825 - C - CK.docx | ROSS-003304999-ROSS-003305000 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 14725 | People of State of New York v. Latrobe, 279 U.S. 421 | 371+2005 | There is nothing in the Constitution which requires a state to adopt the best possible system of taxation. Southwestern Oil Company v. Texas, 217 U. S. 114, 126, 30 S. Ct. 496, 54 L. Ed. 688; Delaware Railroad Tax Cases, 18 Wall. 206, 231, 21 L. Ed. 888. Although permissible, a franchise tax need not be based solely on the amount of business done or property owned within the state. It may be rested on the nature of the business. (Southwestern Oil Co. v. Texas, supra: Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350; American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102; Williams v. Fears, 179 U. S. 270, 275, 21 S. Ct. 128, 45 L. Ed. 186; see Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 562), 22 S. Ct. 431, 46 L. Ed. 679 or the particular form in which it is carried on (see Home Insurance Co. v. New York, 134 U. S. 594, 606, 10 S. Ct. 593, 33 L. Ed. 1025), so long as it bears some real and reasonable relation to the privilege granted or to the protection of the interests of the state. See Roberts & Schaefer Co. v. Emmerson, supra, at page 57 (46 S. Ct. 375). | State is not required by Constitution to adopt best possible taxation system. | Is the state required by Constitution to adopt the best possible taxation system? | Taxation - Memo # 827 - C - CK.docx | ROSS-003317279-ROSS-003317280 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 14726 | Humana of Florida v. McKaughan on Behalf of McKaughan, 652 So. 2d 852 | 413+2 | Finally, the Workers' Compensation Act is a limited statutory substitute for common law rights and liabilities. American Freight Sys., Inc. v. Florida Farm Bureau Casualty Ins. Co., 453 So.2d 468 (Fla. 2d DCA 1984); Grice v. Suwannee Lumber Mfg. Co., 113 So.2d 742 (Fla. 1st DCA 1959). The Plan shares this characteristic. Section 766.303(2) provides in pertinent part that "[t]he rights and remedies granted by this plan ... shall exclude all other rights and remedies ... at common law or otherwise." | Workers' Compensation Act is limited statutory substitute for common-law rights and liabilities. West's F.S.A. S 440.11(1). | Is the Workers Compensation Act a limited statutory substitute for common law rights and liabilities? | 048248.docx | LEGALEASE-00145597-LEGALEASE-00145598 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14727 | Galion Iron Works & Mfg. Co. v. J.D. Adams Mfg. Co., 128 F.2d 411 | 25T+135 | Assuming the binding effect of the agreement to arbitrate, plaintiff did not see fit originally to avail itself of that remedy. Rather it brought suit.A right to arbitration arising out of mutual agreement, like any other contractual right, may be waived, amended or altered. The Belize, D.C., 25 F.Supp. 663, appeal dismissed 2 Cir., 101 F.2d 1005; Radiator Specialty Co. v. Cannon Mills, Inc., 4 Cir., 97 F.2d 318, 117 A.L.R. 299; La Nacional Platanera v. North American F. & S. S. Corp., 5 Cir., 84 F.2d 881. Commencement of a suit in court rather than reliance upon arbitration, with answer by the opposing party upon the merits, is a waiver of the right to arbitrate by both parties. The Belize, D.C., 25 F.Supp 663; McKenna Process Co. v. Blatchford Corp., 304 Ill.App. 101, 25 N.E.2d 916. The plaintiff brought suit to recover unpaid royalties which defendant claimed it did not owe. It had a clear right to have the dispute arbitrated. This right was abandoned by suit; in that abandonment defendant acquiesced by answer on the merits. Plaintiff could have sought arbitration but it exercised its option of bringing suit. By its election, it waived its right to arbitration | A right to arbitration arising out of mutual agreement may be waived, amended, or altered, like any other contractual right. | Is it possible to amend the right to arbitration which arose out of mutual agreement? | 10731.docx | LEGALEASE-00094265-LEGALEASE-00094266 | Condensed, Order, SA | 0.9 | 1 | 1 | 0 | 1 | 1 |
| 14728 | Bean v. United States, 7 F.2d 393 | 34+63 | Plaintiff having failed to show that he was permanently and totally disabled while his insurance was in force, and the proof offered by the plaintiff failing to sustain the allegations of the petition to the effect "that it is reasonably certain during all of said time that plaintiff's total disability will continue throughout the remainder of his life,"and the authorities being uniform to the effect that "war risk insurance is a special statutory kind of insurance, and contracts issued thereunder are not to be interpreted and construed according to the principles of law governing accident insurance, or other contracts of insurance," it follows that the claim of plaintiff must be denied, and the judgment in this case must be in favor of the defendant, and for costs of this action. | Contracts of war risk insurance not to be interpreted according to principles governing other contracts of insurance. | Should contracts of war risk insurance be interpreted according to the principles governing other contracts of insurance? | 10751.docx | LEGALEASE-00094189-LEGALEASE-00094190 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 14729 | State ex rel. Hood v. Louisville Tire Ctr., 204 So. 3d 1250 | 307A+581 | Aggravating factors include "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of prejudice to the defendant, and whether the delay was the result of intentional conduct." AT&T v. Days Inn of Winona, 720 So.2d 178, 181 (Miss. 1998) (citation omitted). To reiterate from above, the presence of the aggravating factors is not a requirement, specifically when "[d]elay alone may suffice for a dismissal under Rule 41(b)." Holder, 54 So.3d at 198 (citing Cox, 976 So.2d at 875). However, the chancery court in the present case did find that Fair Oil suffered actual prejudice by the delay. | The presence of the aggravating factors is not a requirement to dismissal for failure to prosecute, specifically when delay alone may suffice for a dismissal. Miss. R. Civ. P. 41(b). | Is the presence of the aggravating factors a requirement to dismissal for failure to prosecute? | 10994.docx | LEGALEASE-00094083-LEGALEASE-00094084 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 14730 | United States v. Downing, 454 F.2d 373 | 110+429(1) | Apparently relying on 32 C.F.R. " 1606.35(a), providing that any employee of the Selective Service System shall be considered the custodian of a registrant's record he produces in court, and the fact that no inconsistent evidence was presented, it was held in Holmes that the notation so introduced was sufficient to establish the failure to report element of the offense. In United States v. Lyzun, 444 F.2d 1043 (7th Cir.), it was also held that letters and entries in a board file were admissible in a prosecution for knowingly failing to report for civilian work as required by order of the draft board, citing Holmes. See also La Porte v. United States, 300 F.2d 878 (9th Cir.), concerning section 1732. For other cases holding that Selective Service files, either in whole or in part, are admissible under sections 1732-33 or their common law counterparts, see United States v. Ward, 173 F.2d 628 (2d Cir. 1949), and United States v. Borisuk, 206 F.2d 338 (3d Cir. 1953). | Defendant's selective service file and letter from commanding officer of induction station reporting defendant's failure to submit to United States attorney were admissible as official records, in prosecution for failure to submit to induction, although, with respect to the file, chief custodian was out of jurisdiction, and clerical assistant of local board, who testified for Government, had not been employed entire period of time during which entries were made, and she could not be certain personally that entries were accurate, where defendant had advised his local board that he would have nothing to do with the armed services. 28 U.S.C.A. SS 1732, 1733. | Are letters and entries in a board file admissible in a prosecution for knowingly failing to report? | 008714.docx | LEGALEASE-00148004-LEGALEASE-00148005 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 14731 | Allard v. Com., 24 Va. App. 57 | 67+4 | Buie v. Commonwealth, 21 Va.App. 526, 529, 465 S.E.2d 596, 597 (1996) (citations omitted). Thus, "in order for a structure to be the subject of burglary, [it] must be permanently affixed to the ground so as to become part of the realty at the time of the unlawful entry." Dalton v. Commonwealth, 14 Va.App. 544, 548, 418 S.E.2d 563, 565 (1992). It must also have walls and a roof and be enclosed to a degree that presents a significant barrier to trespass. Id. See also Graybeal v.Commonwealth, 228 Va. 736, 740, 324 S.E.2d 698, 700 (1985); Crews v. Commonwealth, 3 Va.App. 531, 536, 352 S.E.2d 1, 3"4 (1987). A chicken house fits the definition, see Compton v. Commonwealth, 190 Va. 48, 54, 55 S.E.2d 446, 449 (1949), but a trailer, which is not fixed to the ground, does not. See Graybeal, 228 Va. at 739"40, 324 S.E.2d at 700. | For structure to be subject of burglary, it must be permanently affixed to ground so as to become part of the realty at time of unlawful entry. Code 1950, S 18.2-90. | Does burglary require permanently fixed structures? | Burglary - Memo 256 - SB_57634.docx | ROSS-003279141-ROSS-003279145 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14732 | Rodgers v. Harper & Moore, 170 Ala. 647 | 200+181 | It is a general principle that one placing objects within the limits of a public highway, which are calculated to frighten horses of ordinary gentleness, is liable therefor; but, in order to fix liability, it is necessary to allege and prove that the object is calculated to frighten a horse of ordinary gentleness. As stated in one of the cases, "it is clear that the rule cannot apply to all horses, irrespective of disposition, for a horse might take fright at a discoloration in the road, a bush, a stone, post, leaves, or other objects, for which it would be unreasonable to charge a town with liability." Stone v. Langworthy, 20 R. I. 605, 40 Atl. 833 (column 2); Joyce on Nuisances, " 255; Grunauer v. Westchester F. Ins. Co., 72 N. J. Law, 289, 62 Atl. 418, 3 L. R. A. (N. S.) 111; Morse & Wife v. Richmond, 41 Vt. 435, 444, 98 Am. Dec. 600; Dimock v. Town of Suffield, 30 Conn. 129, 134; Card v. City of Ellsworth, 65 Me. 547, 20 Am. Rep. 722, 728; Piollet v. Simmers. 106 Pa. 95, 51 Am. Rep. 496, 504, 505; N. Ala. Ry. Co. v. Sides, 122 Ala. 594, 26 South. 116. The same principle applies to objects so near the highway as to have the same tendency. Elliott on Roads & Streets (2d Ed.) " 649, pp. 696, 697. At least it is said: "Certainly no higher degree of care, if as high, should be required of a person placing or leaving near the highway, on his own premises, appliances in use therein." Norfolk & W. R. Co. v. Gee, 104 Va. 809, 52 S. E. 573, 3 L. R. A. (N. S.) 113. | One placing objects within a highway calculated to frighten horses of ordinary gentleness is liable for injuries to a person caused by the frightening of a horse of ordinary gentleness. | When is one liable for frightening a horse in a highway? | Highway - Memo 191-ANM_57466.docx | ROSS-003285347-ROSS-003285348 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 14733 | Pease v. Johnson, 106 Cal. App. 2d 449 | 260+27(1) | Erikson admitted that when he located this claim in October, 1940, he found the monument erected "along side the cut" and there found a notice that the claim had been located by Crosby, and that Johnson and Wolf had signed as witnesses on the notice of location. This evidence was sufficient to support the trial court's finding that the claim was properly located, the necessary work done and the notices properly posted. Furthermore, as was said in Ehrhart v. Bowling, 36 Cal.App.2d 503, 508, 97 P.2d 1010, 1012: "It is well settled that one who has actual knowledge of the claims of another to mineral land cannot, in good faith, relocate the land because of technical defects in the making of the location. Stock v. Plunkett, 181 Cal. 193, 183 P. 657; Kramer v. Sanguinetti, 33 Cal.App.2d 303, 91 P.2d 604; Dennis v. Barnett, 30 Cal.App.2d 147, 85 P.2d 916; Kern Oil Co. v. Crawford, 143 Cal. 298, 76 P. 1111, 3 L.R.A.,N.S., 993." Erikson, having had actual knowledge of the location of the East Claim by the defendants, plaintiff cannot avail himself of technical defects, if any, in the making of the location of either of the two claims here involved. | Where claimant to mining lands had actual knowledge of another's prior location claimant could not avail himself of alleged technical defects in the making of the prior location. | "Can one who has actual knowledge of the claims of another to mineral land, in good faith, relocate the land because of technical defects in the making of the location?" | 021582.docx | LEGALEASE-00147716-LEGALEASE-00147717 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 14734 | Smart v. White, 73 Me. 332 | 296+6 | Section 5485, U. S. R. S., provides thus: "Any agent or attorney, or any other person instrumental in prosecuting any claim for pension or bounty land, who shall directly or indirectly contract for, demand, or receive or retain any greater compensation for his services or instrumentality in prosecuting a claim for pension or bounty land, than is provided in the title pertaining to pensions, or who shall wrongfully withhold from a pensioner or claimant the whole or any part of the pension or claim allowed and due such pensioner or claimant, or the land warrant issued to any such claimant, shall be guilty of a high misdemeanor, and, upon conviction thereof, shall for every such offense be fined not exceeding five hundred dollars, or imprisonment at hard labor, not exceeding two years, or both, at the discretion of the court." Another provision of the federal statutes prohibits any sale, pledge or assignment of any claim, right or interest in any pension which has been or may be granted, pronouncing all such transfers void. | Rev.St. U. S. S 5485, 38 U.S.C.A. S 112, makes taking a greater fee than is fixed by statute for procuring a pension a high misdemeanor; and intent to do wrong or the practice of deceit or fraud is not an element of the offense. Held, that a pensioner can recover an illegal fee paid, although the attorney had no intent to commit a wrong and practiced no fraud or deceit. | Is taking a greater fee than which is fixed by statute for procuring a pension a high misdemeanor? | 022836.docx | LEGALEASE-00147838-LEGALEASE-00147839 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 14735 | People v. Birch Sec. Co., 86 Cal. App. 2d 703 | 302+14 | It was not necessary that the complaint in this case should be verified. Section 446 of the Code of Civil Procedure specifically provides that "When the State, * * * or any officer of the State * * * in his official capacity is plaintiff, the complaint need not be verified." 1 Bancroft's Code Pl., 710 sec. 495. Moreover, failure to verify a pleading when required by statute, is a mere defect of pleading. It is not jurisdictional. The absence of a demurrer on that ground, and proceeding to trial without objection, is a waiver of the asserted defects of pleading. Security Trust & Savings Bank v. Fidelity & Deposit Co., 184 Cal. 173, 176, 193 P. 102; In re Hynes (In re Staser), 84 Cal.App.2d 746, 191 P.2d 791; 21 Cal.Jur. 220 sec. 152. The public records of th Franchise Tax Commissioner were available to the officers who signed the complaint. We must assume they inspected those records and obtained knowledge therefrom of the essential facts related in the complaint. When facts are available from public records, it is ordinarily improper to allege such facts on mere information and belief. Brooks v. Nelson, 95 Cal.App. 144, 150, 272 P. 610; Hall v. James, 79 Cal.App. 453, 249 P. 876; 21 Cal.Jur. 150, sec. 101. We cannot perceive how the defendant was prejudiced by the direct allegations of essential facts, instead of founding such recitations on information and belief. No judgment may be set aside for mere errors "as to any matter of pleading" unless such error complained of "has resulted in a miscarriage of justice." Const. Art. VI, sec. 4 ". | When facts are available from public records, it is ordinarily improper to allege such facts on mere information and belief. | Is it improper to allege facts on mere information and belief? | Pleading - Memo 447 - RMM_57496.docx | ROSS-003296191-ROSS-003296192 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14736 | Hart Properties v. Slack, 159 So. 2d 236 | 302+36(1) | In addition it is obvious that the district court's opinion conflicts with the well settled rule that "* * * partieslitigant are bound by the allegations of their pleadings and that admissions contained in the pleadings as between the parties themselves are accepted as facts without the necessity of supporting evidence." Carvell v. Kinsey, Fla.1956, 87 So.2d 577, and like cases. Here the plaintiff alleged and defendant admitted that plaintiff was a licensee. Plaintiff was bound thereby. Therefore, the facts adduced in support of the motion could not create an issue on this point for it was already settled. | Litigants are bound by allegations of their pleadings, and admissions contained in pleadings as between parties are accepted as facts without necessity of supporting evidence. | Are the parties bound by the allegations of their pleadings? | 023584.docx | LEGALEASE-00147706-LEGALEASE-00147707 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14737 | Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547 | 302+104(1) | A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. The claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case. The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached. This does not mean that evidence cannot be offered on a dilatory plea; on the contrary, the issues raised by a dilatory plea are often such that they cannot be resolved without hearing evidence. And because a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case. But the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction. Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion. | A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. | Is a plea to the jurisdiction a dilatory plea? | Pleading - Memo 458 - RMM_58006.docx | ROSS-003294678-ROSS-003294679 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14738 | Nunez v. Burgos, 215 So. 3d 931 | 307A+590.1 | Abandonment is self-executing; it occurs automatically upon the passing of three years without a step being taken by either party, and is effective without court order. Clark, supra; Giovingo v. Dunn, 11-781 (La.App. 5 Cir. 3/13/12), 90 So.3d 1098, 1101, writ denied, 12-0831 (La. 5/25/12), 90 So.3d 418. Once abandonment has occurred, action by the plaintiff cannot breathe new life into the suit. Clark, 785 So.2d at 789. | Once abandonment has occurred, for the purpose of a motion to dismiss based on abandonment, action by the plaintiff cannot breathe new life into the suit. La. Code Civ. Proc. Ann. art. 561. | "Once abandonment has occurred, can action by the plaintiff breathe new life into the suit?" | 034975.docx | LEGALEASE-00147670-LEGALEASE-00147671 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 14739 | Viesel v. Republic Ins. Co., 665 So. 2d 1221 | 307A+590.1 | Article 561 is not to be used to dismiss cases where the plaintiff has clearly demonstrated before the court during the prescribed period that he does not intend to abandon the action. Kanuk v. Pohlmann, 338 So.2d 757 (La.App. 4th Cir.1976), writ denied, 341 So.2d 420 (La.1977). Article 561 is not designed to dismiss actions on mere technicalities but to dismiss those actions which in fact have been abandoned. Shulver v. Slocum, 566 So.2d 1089 (La.App. 2nd Cir.1990), writ denied, 569 So.2d 984 (La.1990). A notice of intent to take a deposition does constitute a "step" in the prosecution of an action. See, Highlands Insurance Co. v. City of Lafayette, 453 So.2d 608 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 119 (La.1984). | Notice of intent to take deposition constitutes "step" in prosecution of action for purposes of provision of Code of Civil Procedure governing abandonment of action. LSA-C.C.P. art. 561. | "Does the notice of intent to take deposition constitute a ""step"" in the prosecution of an action?" | Pretrial Procedure - Memo # 7485 - C - CK_57524.docx | ROSS-003294320-ROSS-003294321 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 14740 | Cristino v. Bur. of Workers' Comp., 2012-Ohio-4420 | 307A+681 | Having addressed Cristino's claim for breach of fiduciary duty, we now turn to his claim for fraud. The trial court found that the state's discretionary immunity prevented Cristino from stating a claim for fraud. Immunity is an affirmative defense. BCL Ents., Inc. v. Ohio Dept. of Liquor Control, 77 Ohio St.3d 467, 471, 675 N.E.2d 1 (1997); Pottenger v. Ohio Dept. of Transp., 10th Dist. No. 88AP"832, 1989 WL 147998 (Dec. 7, 1989). Because affirmative defenses typically rely on matters outside the complaint, they normally cannot be raised in a Civ.R. 12(B)(6) motion. Reasoner v. Columbus, 10th Dist. No. 02AP"831, 2003-Ohio-670, 2003 WL 321551, 12. | Because affirmative defenses typically rely on matters outside the complaint, they normally cannot be raised in a motion to dismiss for failure to state a claim. Rules Civ.Proc., Rule 12(B)(6). | Do affirmative defenses rely on matters outside the complaint? | 10129.docx | LEGALEASE-00095351-LEGALEASE-00095352 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 14741 | Harris Cty. v. Gambichler, 479 S.W.3d 514 | 307A+690 | Rule 165a provides that "[a] case may be dismissed for want of prosecution on failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice." Tex.R. Civ. P. 165a(1). It is undisputed that Harris County sought affirmative relief and failed to appear for trial.1 It is well-settled that dismissal of a case with prejudice functions as a final determination on the merits. Ritchey v. Vasquez, 986 S.W.2d 611, 612 (Tex.1999) (per curiam). But a dismissal for want of prosecution is not a determination on the merits, and therefore dismissal with prejudice in such circumstances is improper. Martinez v. Benavides, No. 01"14"00269"CV, 2015 WL 1501793, at (Tex.App."Houston [1st Dist.] Mar. 31, 2015, no pet.) (mem.op.); see also Gracey v. West, 422 S.W.2d 913, 917 (Tex.1968) ("The judgment of dismissal of the cause for want of prosecution is not a judgment on the merits of the cause."); cf. Porras v. Jefferson, 409 S.W.3d 804, 807"08 (Tex.App."Houston [14th Dist.] 2013, no pet.) ("[T]hough a trial court has the inherent power to dismiss a case for want of prosecution, this power does not confer upon the court the authority to adjudicate and deny the merits of the dismissed claim."). An order of dismissal for want of prosecution should simply place the parties in the position they were in prior to filing the suit. See Martinez, 2015 WL 1501793, at Dick Poe Motors, Inc. v. DaimlerChrysler Corp., 169 S.W.3d 478, 485 (Tex.App."El Paso 2005, no pet.) | A dismissal for want of prosecution is not a determination on the merits, and therefore dismissal with prejudice in such circumstances is improper. Tex. R. Civ. P. 165a(1). | Is a dismissal for want of prosecution a determination on the merits? | Pretrial Procedure - Memo # 7556 - C - BP.docx | LEGALEASE-00037239-LEGALEASE-00037240 | SA, Sub | 0.89 | 0 | 0 | 1 | 1 | |
| 14742 | Shulver v. Slocum, 566 So. 2d 1089 | 307A+590.1 | Two exceptions to the five year rule of abandonment are recognized by the courts: when the failure to prosecute was caused by circumstances beyond plaintiff's control; and, when the defendant waived his right to plead abandonment by taking action in the case inconsistent with an intent to treat the case as abandoned. Article 561 is to be liberally interpreted and any action or step taken to move a case toward judgment should be considered. | Statute on abandonment of action is to be liberally interpreted, and any action or step taken to move case toward judgment should be considered. LSA-C.C.P. art. 561. | Is the statute on abandonment of action to be liberally interpreted? | 11076.docx | LEGALEASE-00094244-LEGALEASE-00094245 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14743 | Allied Gas & Chem. Co. v. Federated Mut. Ins. Co., 365 N.W.2d 26 | 307A+590.1 | We have held that, if a continuance is granted on certain terms and those terms are not met, a case subject to rule 215.1 will be dismissed by operation of law whether or not a subsequent "try or dismiss" notice had been sent. The reason is that the effect of the continuance was merely to hold the dismissal in suspension on certain conditions. When those conditions are not met, the dismissal is automatic. See, e.g., Rhiner v. Arends, 292 N.W.2d 399, 401 (Iowa 1980); Brown v. District Court, 272 N.W.2d 457, 458 (Iowa 1978). See also Note, Iowa Rule 215.1"Mandatory Dismissal for Want of Prosecution"The Flexible Trap, 23 Drake L.Rev. 158, 164, n. 62 (1973) ("A continuance pursuant to Rule 215.1 merely extends the mandatory dismissal date to the date stated in the order, and does not serve to abrogate the rule for the entire remainder of the year and compel a new notice after the next July 15."). | Effect of a continuance is merely to hold dismissal in suspension on certain conditions which, if not met, will make dismissal automatic. Rules Civ.Proc., Rule 215.1. | Is the effect of a continuance merely to hold dismissal in suspension on certain conditions? | 11190.docx | LEGALEASE-00094561-LEGALEASE-00094562 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14744 | Felo v. Ochsner Med. Ctr.-Westbank, 182 So. 3d 417 | 307A+581 | The jurisprudence has uniformly held that La. C.C.P. art. 561 is to be liberally construed in favor of maintaining a plaintiff's suit. Clark, supra at 785. Abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions which in fact clearly have been abandoned. Id. at 786. | Article governing abandonment of an action is to be liberally construed in favor of maintaining a plaintiff's suit; abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions which in fact clearly have been abandoned. LSA-C.C.P. art. 561. | "Is abandonment meant to dismiss actions on mere technicalities, or to dismiss actions which in fact clearly have been abandoned?" | Pretrial Procedure - Memo # 7753 - C - PC.docx | ROSS-003300113-ROSS-003300114 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 14745 | Louisiana Dep't of Transp. & Dev. v. Bayou Fleet, 37 So. 3d 1066 | 307A+581 | Louisiana Code of Civil Procedure article 561 A(3) provides that abandonment is self-executing; it occurs automatically upon the passing of three years without a step being taken by either party, and it is effective without court order. Clark, 00"3010 at p. 6, 785 So.2d at 784. Article 561 is to be liberally construed in favor of maintaining a plaintiff's suit, and any reasonable doubt about abandonment should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment. Clark, 00"3010 at pp. 8"10, 785 So.2d at 785"87. The courts have declined to allow form to prevail over substance in determining whether an action has been abandoned, and they have likewise declined to allow suits to be dismissed as abandoned based on technical formalities. Id. at p. 9, 785 So.2d at 786. In sum, abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions that in fact clearly have been abandoned. Id. The policy underlying this requirement is the prevention of protracted litigation without a serious intent to hasten the claim to judgment. As such, article 561 provides for dismissal of those cases in which a plaintiffs inaction during the legislatively ordained period has clearly demonstrated his abandonment. Jones v. Phelps, 95"0607, p. 4 (La.App. 1st Cir.11/9/95), 665 So.2d 30, 33, writ denied, 95"2907 (La.2/2/96), 666 So.2d 1104. | Abandonment is not meant as a ground to dismiss actions on mere technicalities; it is a ground to dismiss actions which in fact clearly have been abandoned. LSA-C.C.P. art. 561. | "Is abandonment meant to dismiss actions on mere technicalities, or to dismiss actions which in fact clearly have been abandoned?" | 11232.docx | LEGALEASE-00094095-LEGALEASE-00094096 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14746 | McBride v. Hopewell, 428 A.2d 1198 | 307A+590.1 | The word "action" in Rule 41(b)(1) is broad enough to encompass all interlocutory orders in a lawsuit, including a non-final adjudication of liability. | Word "action" in rule of procedure which allows court, on its own motion, to dismiss any action for want of prosecution at any time more than two years after last docket entry showing action taken by plaintiff other than motion for continuance is broad enough to encompass all interlocutory orders in lawsuit, including nonfinal adjudication of liability. Rules of Civil Procedure, Rule 41(b)(1). | "When is the word ""action"" broad enough?" | 11236.docx | LEGALEASE-00094137-LEGALEASE-00094138 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 14747 | Kunin v. Forman Realty Corp., 21 Ill. App. 2d 221 | 307A+552 | We will first consider the motion to dismiss the appeal. It is predicated on the argument that as the reports in question are in the record and, in fact, comprise some forty pages of the printed abstract, plaintiff has what he wants and there is no need to decide the issue. This does not in our opinion make the matter moot. Plaintiff is still a director of the corporation and desires to have his rights adjudicated so that he may know the nature of his duty as well as his rights as a director. In that respect the case is certainly not moot. In fact, if we were to dismiss the case as moot, the trial court's decision might stand as an adjudication against plaintiff. LaSalle National Bank v. City of Chicago, 3 Ill.2d 375, 121 N.E.2d 486; cf. Cohen v. Schlossberg, 17 Ill.App.2d 320, 150 N.E.2d 218. A further reason for not dismissing the suit because of mootness is the fact that when the issue presented is of substantial public interest, a well recognized exception exists to the general rule. People ex rel. Wallace v. Labrenz, 411 Ill. 618, 104 N.E.2d 769, 30 A.L.R.2d 1132, and cases quoted in 132 A.L.R. 1185. Taking note of the litigation currently arising in matters of this sort, we believe that public interest requires a decision of this issue. We therefore overrule the motion to dismiss and will proceed to a consideration of the merits of the case. | When issue presented is of substantial public interest, a suit will not be dismissed because of mootness. | Will a suit be dismissed because of mootness when issue presented is of substantial public interest? | 11325.docx | LEGALEASE-00094643-LEGALEASE-00094644 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 14748 | Crawford Supply Co. v. Schwartz, 396 Ill. App. 3d 111 | 307A+561.1 | We now briefly address the propriety of the trial court's orders of December 2, 2008, and March 12, 2009, denying the Schwartzes' motion to dismiss count I of plaintiff's complaint and denying the Schwartzes' motion to reconsider that denial, respectively. As noted, the Schwartzes' motion to dismiss was brought pursuant to section 2"619(a)(9) of the Code (735 ILCS 5/2"619(a)(9) (West 2006)). Section 2"619(a)(9) allows for dismissal where the claim asserted is barred by affirmative matter avoiding the legal affect of or defeating the claim. 735 ILCS 5/2"619(a)(9) (West 2006). "The phrase "affirmative matter" encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action." Travis v. American Manufacturers Mutual Insurance Co., 335 Ill.App.3d 1171, 1174, 270 Ill.Dec. 128, 782 N.E.2d 322 (2002). "Such a motion admits the legal sufficiency of the plaintiff's complaint but interposes some affirmative matter that prevents the lawsuit from going forward." Travis, 335 Ill.App.3d at 1174, 270 Ill.Dec. 128, 782 N.E.2d 322. "On appeal from a ruling on a section 2"619(a)(9) motion, the standard review is de novo." Travis, 335 Ill.App.3d at 1174, 270 Ill.Dec. 128, 782 N.E.2d 322. | The phrase "affirmative matter," in statute that allows for dismissal where the claim asserted is barred by affirmative matter avoiding the legal effect of or defeating the claim, encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action. S.H.A. 735 ILCS 5/2-619(a)(9). | "Would a defendant's compliance with the controlling statute be an ""affirmative matter"" warranting dismissal of the complaint?" | Pretrial Procedure - Memo # 7890 - C - SK.docx | LEGALEASE-00037691-LEGALEASE-00037692 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14749 | Huch v. Charter Commc'ns, 290 S.W.3d 721 | 307A+561.1 | This Court reviews the trial court's grant of a motion to dismiss de novo. Lynch v. Lynch, 260 S.W.3d 834, 836 (Mo. banc 2008). When reviewing such a grant, this Court "assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom." Bosch v. St. Louis Healthcare Network, 41 S.W.3d 462, 464 (Mo. banc 2001) (quoting Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 306 (Mo. banc 1993))."A motion to dismiss based on an affirmative defense may be sustained if the defense is irrefutably shown by the petition." Elam v. Dawson, 156 S.W.3d 807, 808 (Mo.App.2005). | A motion to dismiss based on an affirmative defense may be sustained if the defense is irrefutably shown by the petition. | When can a motion to dismiss based on an affirmative defense be sustained? | 036315.docx | LEGALEASE-00147618-LEGALEASE-00147619 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14750 | Phelps v. Union Bank & Tr. Co., 225 Ala. 238 | 371+2063 | The inherent power of the state to collect taxes to raise revenue on property within its jurisdiction and on domestic concerns is an attribute of sovereignty residing in the Legislature, and, so long as it does not impinge the limitations fixed by the Constitution, or trench upon the prerogatives of the national government, or violate the guaranties of the Fourteenth Amendment of the Constitution of the United States, its powers are unlimited and unrestrained. This power is not a delegated power, but a power inherent in the state, essential to its life and continued existence. Ph"nix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am. St. Rep. 143; Ohio Oil Co. v. Conway, 281 U. S. 146, 159, 50 S. Ct. 310, 74 L. Ed. 775 | Inherent power of state to collect taxes on property within its jurisdiction and on domestic concerns is attribute of sovereignty. | Do states have sovereign attribute in imposing taxes for domestic purposes? | 11427.docx | LEGALEASE-00094007-LEGALEASE-00094008 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14751 | Bosch v. Busch Dev., 777 P.2d 431 | 413+2102 | As in Pate v. Marathon Steel Co., the sole question for our determination is whether, assuming defendant is a statutory employer of plaintiff under section 35-1-42(2), he can sue it for its negligence pursuant to section 35-1-62 or whether defendant enjoys immunity from such suit under section 35-1-60. In Pate v. Marathon Steel Co., we held that a worker can sue a statutory employer who has not been required to pay workers' compensation benefits and that the latter does not partake of the immunity afforded by section 35-1-60. That decision is wholly dispositive of the identical issue raised by this appeal. | Statutory employer who has not been required to pay workers' compensation benefits does not enjoy immunity from negligence suit by worker. U.C.A.1953, 35-1-42(2), (3)(b), (5), 35-1-60, 35-1-62. | Can a worker sue a statutory employer who has not been required to pay workers compensation benefits? | 11468.docx | LEGALEASE-00094647-LEGALEASE-00094648 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 14752 | Robinson v. Food Serv. of Belton, 415 F. Supp. 2d 1221 | 25T+182(1) | Defendants move to compel arbitration of the claims of Jeremy Briggs, Codey Cheek, Don Jones and Terri Schendel based on the arbitration agreements signed by those employees. Plaintiffs oppose the motion, asserting that defendants have waived their right to arbitrate by substantially participating in the litigation process without asking the court to stay litigation and compel arbitration. Under federal law, "when a contract mandates arbitration, courts generally will enforce the arbitration clause absent a waiver." Peterson v. Shearson/American Exp., Inc., 849 F.2d 464, 465"66 (10th Cir.1988). Due to strong state and federal policies favoring arbitration, a party asserting a waiver of arbitration has a heavy burden of proof. Malarky Enters. v. Healthcare Tech., 962 F.Supp. 1427, 1430 (D.Kan.1997). A waiver of arbitration rights requires an unequivocal demonstration of intent to waive. Id. In determining whether the right to arbitration has been waived, the Tenth circuit examines: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party. Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1489 (10th Cir.1994) (quoting Peterson, 849 F.2d at 467"68). Whether a waiver has occurred depends upon the facts of the particular case. Reid Burton Constr. Inc. v. | Waiver of arbitration rights requires unequivocal demonstration of intent to waive. | Does waiver of arbitration rights require an unequivocal demonstration of intent to waive? | 007903.docx | LEGALEASE-00148972-LEGALEASE-00148973 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 14753 | Witherell v. Ela, 42 N.H. 295 | 83E+755 | The indorser of a note, when it is returned to him, after protest, may strike out his own indorsement, although it is in full, and maintain an action on it in his own name. Dugan v. U. S., 3 Wheat. 183; Piquet v. Curtis, 1 Sum. 480; Thompson v. Robinson, 4 Johns. 21; Emerson v. Cutts, 12 Mass. 78; Nevins v. De Grand, 15 Mass. 438; Bank of Utica v. Smith, 18 Johns. 230; Norris v. Badger, 6 Cow. 455; Chat. Co. Bank v. Davis, 21 Wend. 584; Chit. on Bills, 230, n. a; Edw. on Bills, 271. | The indorser of a bill or note in full, or in blank, when it is returned to him, may strike out his indorsement and maintain an action on it in his own name. | Can an indorsement of a note when returned to the owner after protest be strike out by the owner and maintain an action in his own name? | Bills and Notes- Memo 456-IS_57867.docx | ROSS-003294061 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 14754 | Gregory's v. Haan, 545 N.W.2d 488 | 8.30E+264 | An extension of credit, as noted by In re Forfeiture of One 1983 Lincoln, 497 So.2d 1254 (Fla.Dist.Ct.App.1986), means to make or renew a loan of money or any agreement to forbear enforcing repayment of such loan. Consequently, we conclude Haan's alleged thirty-day notice agreements with Northland were contracts for further extensions of credit. Delaying payment for thirty days beyond a "notice of request for payment" or suspending the right to file a lien for thirty days after notice, effectively defers collecting or enforcing a debt. Thus Haan sought damages for the breach of an unenforceable oral contract for an extension of credit. SDCL 53-8-2. We uphold the trial court's grant of summary judgment on Count I. | "Extension of credit" means to make or renew loan of money or any agreement to forbear enforcing repayment of such loan. | Does extension of credit mean to renew a loan? | Bills and Notes- Memo 619-IS_57887.docx | ROSS-003282835-ROSS-003282836 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14755 | In re Long, 353 B.R. 1 | 266+1421 | "[A]s between the assignee and the maker of the note, neither consideration nor notice to the maker was essential to an assignment."O'Gasapian v. Danielson, 284 Mass. 27, 32, 187 N.E. 107 (1933), citing Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 19, 143 N.E. 827 (1924) (as against maker of note, assignee need not show consideration; uncertainty as to consideration paid for assignment of note did not affect the validity of the assignment as none was required). | Under Massachusetts law, as between assignee and maker of mortgage note, neither consideration nor notice to maker was essential to valid assignment. | "Is consideration or notice to the maker, essential to an assignment between assignee and the maker of the note?" | 010599.docx | LEGALEASE-00148386-LEGALEASE-00148387 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14756 | Bank of Italy Nat. Tr. & Sav. Ass'n v. Symmes, 118 Cal. App. 716 | 8.30E+06 | It was the object of the Negotiable Instruments Law (Civ. Code, " 3082 et seq.) to secure uniformity in the law of negotiable paper (Utah State Nat. Bank v. Smith, 180 Cal. 1, 179 P. 160); and as it covers the entire subject it must control in all cases in which it is applicable (Elsey v. Peoples Bank, 168 Ky. 701, 182 S. W. 873). While the repeal of statutes by implication is not favored (Railroad Commission v. Riley, 192 Cal. 54, 218 P. 415), nevertheless every statute must be construed according to what appears to be the intent of the Legislature (Dillingham v. Welch, 179 Cal. 656, 178 P. 512); and if the later act was clearly intended to prescribe the only rule which should govern in the case provided for, or to establish a new and complete scheme with reference to the subject"matter. (Harris v. Cooley, 171 Cal. 144, 152 P. 300), it will be held to have repealed pro tanto an earlier act inconsistent therewith (Ex parte Cannon, 167 Cal. 142, 138 P. 740). | Negotiable Instruments Law, since it covers entire subject, must control if applicable. Civ.Code, S 3082 et seq. | Does Negotiable Instruments Law control in all cases to which it is applicable? | Bills and Notes -Memo 691-DB_58200.docx | ROSS-003278473 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 14757 | City of Rockland v. Johnson, 267 A.2d 382 | 200+80 | Unlike the civil law rule, the common law rule is that the public acquires only an easement in land taken for the establishment of the highway except as the rule has been changed by statute in some states. | At common law, the public acquires only an easement in land taken for establishment of highway. | Does the public only acquire an easement in land taken for establishment of highway? | 019069.docx | LEGALEASE-00148434-LEGALEASE-00148435 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 14758 | Shell Oil Co. v. Bd. of Comm'rs of Pontchartrain Levee Dist., 336 So. 2d 248 | 260+49 | With respect to this contention we must hold that the subject Constitutional prohibition against the alienation of minerals by the state equally prohibits the acquisition of these minerals by others by the running of prescription against the state. Notwithstanding the fact that the Legislature has on numerous occasions provided for the running of prescription against the state, these statutes can not be construed to include mineral rights for neither the Legislature not the courts can permit what the Constitution itself prohibits. | Constitutional prohibition against divestiture of mineral rights on property sold by the state equally prohibits the acquisition of those mineral rights by others by the running of prescription against the state. LSA-Const. art. 4, S 2; LSA-C.C. arts. 3474, 3478 et seq. | Does the Constitutional prohibition against the alienation of minerals by the state equally prohibit the acquisition of these minerals by others? | 021197.docx | LEGALEASE-00148292-LEGALEASE-00148293 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 14759 | Tarrant Cty. Water Control & Imp. Dist. No. One v. Haupt, 854 S.W.2d 909 | 260+73.1(6) | It is a well established doctrine from the earliest days of the common law that the right to the minerals carries with it the right to enter and extract them, and all other such incidents thereto as are necessary to be used for getting and enjoying them. Cowan v. Hardeman, 26 Tex. 217, 222 (1862). This common law right was created "because a grant or reservation of minerals would be wholly worthless if the grantee or reserver could not enter upon the land in order to explore for and extract the minerals granted or reserved." Harris v. Currie, 142 Tex. 93, 176 S.W.2d 302, 305 (1944). Although the mineral estate is the dominant estate, the rights implied in favor of the mineral estate are to be exercised with due regard for the rights of the surface owner. Getty, 470 S.W.2d at 621; General Crude Oil Co. v. Aiken, 162 Tex. 104, 344 S.W.2d 668, 669 (1961); Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 132 S.W.2d 553, 563 (1939). | Right to minerals carries with it right to enter and extract them, and all others such incidents thereto as are necessary to be used for getting and enjoying them. | Does the right to minerals carry with it the right to enter and extract them? | 021537.docx | LEGALEASE-00148662-LEGALEASE-00148663 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 14760 | Reed v. Consol. Feldspar Corp., 71 S.D. 189 | 260+68(1) | A lessee who has agreed to pay lessor royalties is not required to extract ore at a loss. Colorado Fuel & Iron Co. v. Pryor, 25 Colo. 540, 57 P. 51; Taylor v. Kingman Feldspar Co., 41 Ariz. 376, 18 P.2d 649; Cleopatra Mining Co. v. Dickinson, 28 Wash. 211, 68 P. 456; O. K. Jellico Coal Co. v. Parks et al., 146 Ky. 674, 143 S.W. 22. In Colorado Fuel & Iron Co. v. Pryor, supra, the lessee was required to pay a fixed royalty on each ton of coal mined. Plaintiff claimed that the leased premises contained large deposits of merchantable coal and that defendant had failed to use reasonable diligence in working the mine. The court said [25 Colo. 540, 57 P. 54]: | A mine lessee who has agreed to pay lessor royalties need not extract ore at a loss. | Is a lessee who has agreed to pay lessor royalties required to extract ore at a loss? | 021595.docx | LEGALEASE-00148097-LEGALEASE-00148098 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14761 | Wiesenthal v. Goff, 63 Idaho 342 | 260+29.1 | The courts have uniformly held that unpatented mining claims are ""property" in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent." Sullivan v. Iron Silver Min. Co., 143 U.S. 431, 12 S.Ct. 555, 556, 36 L.Ed. 214; Trinity Gold Dredging & Hydraulic Co. v. Beaudry, 9 Cir., 223 F. 739, 741, 139 C.C.A. 269; Forbes v. Gracey, 94 U.S. 762, 24 L.Ed. 313. | Unpatented mining claims are "property" in highest sense of such term, which may be bought, sold and conveyed and will pass by descent. 30 U.S.C.A. S 26. | Is a mining claim a property? | 021618.docx | LEGALEASE-00148211-LEGALEASE-00148212 | Condensed, SA | 0.6 | 0 | 1 | 0 | 1 | |
| 14762 | U.S. v. Jackson, 904 F. Supp. 118 | 110+627.6(3) | The undersigned finds the reasoning of Terrell and Chhun to be persuasive. As the court stated in Chhun, the "at peace" requirement under the Neutrality Act is an element of the offense upon which the government bears the burden of proof at trial, with the jury making the determination whether the government has satisfied its burden by proof beyond a reasonable doubt. In addition, as the courts in both Terrell and Chhun concluded, the United States is not "at peace" with another nation when it is involved in a declared or undeclared war with that nation. That is the case whether or not its active military operations are open and notorious or, as in the case of the support for the Contras against the Sandinista Government of Nicaragua, the military operations are being undertaken or supported covertly by the United States. | Defendants indicted on charges relating to alleged plot to ship weapons to Laos in order to facilitate overthrow of government were entitled to discovery of evidence relating to United States' overt or covert military planning or operations with respect to Laos from 2005 through 2007; "at peace" requirement under Neutrality Act constituted element of offense upon which government bore burden of proof at trial, and thus sought information would be both material to preparation of defense and potentially exculpatory. 18 U.S.C.A. S 960; Fed.Rules Cr.Proc.Rule 16, 18 U.S.C.A. | Is at peace an element of offence under Neutrality Act? | Neutrality Laws - Memo 10- ANM_57998.docx | ROSS-003279934-ROSS-003279935 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 14763 | U.S. v. Jackson, 904 F. Supp. 118 | 110+627.6(3) | Both parties concede that whether the United States was "at peace" with Cambodia is an element of the conspiracy offenses provided for by 18 U.S.C. " 956(b) and 18 U.S.C. " 960 and must be proven by the Government beyond a reasonable doubt.(See Def.'s Mot. 2 and Gov.'s Mot. 4, 7.)Nevertheless, relying on United States v. Terrell, 731 F.Supp. 473 (S.D.Fla.1989), one of the few recent cases to address the "at peace" requirement, Defendant Chhun maintains that the Court may decide that the United States was not "at peace" with Cambodia as a matter of law. (Def.'s Mot. 2"4.) | Defendants indicted on charges relating to alleged plot to ship weapons to Laos in order to facilitate overthrow of government were entitled to discovery of evidence relating to United States' overt or covert military planning or operations with respect to Laos from 2005 through 2007; "at peace" requirement under Neutrality Act constituted element of offense upon which government bore burden of proof at trial, and thus sought information would be both material to preparation of defense and potentially exculpatory. 18 U.S.C.A. S 960; Fed.Rules Cr.Proc.Rule 16, 18 U.S.C.A. | Who has to prove the at peace element of an offence under Neutrality Act? | 021749.docx | LEGALEASE-00148502-LEGALEASE-00148503 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14764 | McCleery v. Thompson, 130 Pa. 443 | 289+671 | It has long been settled that a judgment confessed by one partner in the firm name, even for a partnership debt, is void against the non-assenting partners, and will be struck off by the court on motion. It is equally well settled, however, that the judgment is good against the partner confessing it, and that the partnership goods may be sold under an execution on such judgment for a firm debt. Gerard v. Basse, 1 Dall. 119; Grier v. Hood, 25 Pa. St. 430; Bank's Appeal, 36 Pa. St. 458; Taylor v. Henderson, 17 Serg. & R. 456; Harper v. Fox, 7 Watts & S. 142; Ross v. Howell, 84 Pa. St. 129. I may note in passing a serious error in the syllabus of Grier v. Hood in stating that "one partner has power to confess a judgment against the firm," etc. The words of Justice KNOX, on page 432, are the reverse: "That one partner cannot confess a judgment against another partner, even for a partnership debt, is a conceded legal principle." | A judgment confessed by one partner in the firm name for a firm debt, though void against the others, is good against the partner confessing it; under it partnership goods may be taken in execution; otherwise if the judgment be confessed by a retiring partner after dissolution. | Will a judgment confessed by one partner in the firm name be void against the non-assenting partners? | 022503.docx | LEGALEASE-00148958-LEGALEASE-00148959 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 14765 | In re M.M. Winkler & Associates, 190 B.R. 272 | 51+3372.13 | Therefore, in the Fifth Circuit, under certain circumstances, fraud may be imputed from one partner to another in the context of a bankruptcy dischargeability action. The court must determine whether the debtors herein benefited in some way because of McCreight's deception. A material factual issue, therefore, remains in dispute as to this question. For this reason, the motions for summary judgment must both be overruled, and this issue must be developed at trial. | Under certain circumstances, fraud may be imputed from one partner to another in context of bankruptcy dischargeability proceeding. Bankr.Code, 11 U.S.C.A. S 523(a)(2)(A). | Can fraud be imputed from one partner to another? | Partnership - Memo 474 - JK_58159.docx | ROSS-003282940-ROSS-003282941 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |
| 14766 | F.V. Const. Corp. v. Cmty. Bank of Florida, 106 So. 3d 1012 | 302+358 | The allegations of the amended complaint do not rise to the level of a sham pleading. To constitute a sham pleading the pleading must be inherently false and based on plain or conceded facts clearly known to be false. Decker v. Cnty. of Volusia, 698 So.2d 650 (Fla. 5th DCA 1997). A hearing on a motion to strike a pleading as a sham is not a hearing to resolve the merits of the issues, but to determine if there are any genuine issues to be determined. Meadows v. Edwards, 82 So.2d 733 (Fla.1955); Slatko v. Virgin, 328 So.2d 499 (Fla. 3d DCA 1976). The amended complaint factually alleges issues yet to be determined on the merits. As such, it cannot be considered inherently false and based on plain or conceded facts clearly known to be false; which is the standard required to subject a pleading to being stricken as a sham.1 See Meadows, 82 So.2d at 733; Decker, 698 So.2d at 650. | To constitute a sham pleading, it must be inherently false and based on plain or conceded facts clearly known to be false. | Are sham pleadings those pleadings which are inherently false? | 023618.docx | LEGALEASE-00148747-LEGALEASE-00148748 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14767 | Holder v. Orange Grove Med. Specialties, P.A., 54 So. 3d 192 | 30+3206 | In sum, this Court may uphold a Rule 41(b) dismissal when there is: (1) a record of dilatory or contumacious conduct by the plaintiff; and (2) a finding by this Court that lesser sanctions would not serve the interests of justice. Additional "aggravating factors" or actual prejudice may bolster the case for dismissal, but are not requirements. We address each of these considerations below. | Appellate court may uphold a dismissal with prejudice for want of prosecution when there is: (1) a record of dilatory or contumacious conduct by the plaintiff, and (2) a finding by appellate court that lesser sanctions would not serve the interests of justice; additional "aggravating factors" or actual prejudice may bolster the case for dismissal, but are not requirements. | "Can the presence of an aggravating factor, serve to bolster or strengthen the case for a dismissal?" | Pretrial Procedure - Memo # 7591 - C - RF_57799.docx | ROSS-003294522-ROSS-003294523 | Condensed, SA, Sub | 0.03 | 0 | 1 | 1 | 1 | 1 |
| 14768 | Sheen v. The Time Inc. Magazine Co., 817 So. 2d 974 | 307A+590.1 | We begin our analysis with rule 1.420(e), Florida Rules of Civil Procedure, which provides as follows: Failure to Prosecute. All actions in which it appears on the face of the record that no activity by filing of pleadings, order of court, or otherwise has occurred for a period of 1 year shall be dismissed by the court on its own motion or on the motion of any interested person, whether a party to the action or not, after reasonable notice to the parties, unless a stipulation staying the action is approved by the court or a stay order has been filed or a party shows good cause in writing at least 5 days before the hearing on the motion why the action should remain pending. Mere inaction for a period of less than 1 year shall not be sufficient cause for dismissal for failure to prosecute. The case law interpreting rule 1.420(e) makes it clear that not every document filed in a case qualifies as record activity. See Toney v. Freeman, 600 So.2d 1099, 1100 (Fla.1992); Otero v. Gastroenterology Group of South Florida, P.A., 710 So.2d 148, 149 (Fla. 3d DCA 1998); Heinz v. Watson, 615 So.2d 750 (Fla. 5th DCA 1993); Caldwell v. Mantei, 544 So.2d 252 (Fla. 2d DCA 1989); Boeing Co. v. Merchant, 397 So.2d 399, 402 (Fla. 5th DCA 1981). This is because for purposes of rule 1.420(e), "[r]ecord activity must be more than a mere passive effort to keep the case on the docket; the activity must constitute an affirmative act calculated to hasten the suit to judgment." Toney, 600 So.2d at 1100. Under this definition of record activity, documents filed of record concerning discovery may, but do not always, constitute sufficient record activity.2 See Anthony v. Schmitt, 557 So.2d 656, 659 (Fla. 2d DCA 1990), approved by, Del Duca v. Anthony, 587 So.2d 1306, 1309 (Fla.1991). | Not every document filed in a case qualifies as record activity, for purposes of rule governing dismissal of actions for failure to prosecute. West's F.S.A. RCP Rule 1.420(e). | Will not every document filed in a case qualify as record activity? | 036098.docx | LEGALEASE-00148095-LEGALEASE-00148096 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 14769 | In re Merv Properties, 539 B.R. 516 | 101+2404(1) | The adverse interest exception provides that knowledge of the agent is not imputed to the principal when it is clear that the agent would not communicate the fact in controversy to the principal. | Under Kentucky law, the adverse interest exception, providing that knowledge of an agent is not imputed to the principal when it is clear that the agent would not communicate the fact in controversy to the principal, is not applicable when the company actually benefits from the transaction in question. | What is Adverse Interest Exception? | Principal and Agent - Memo 127 - KC_58041.docx | ROSS-003295554 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14770 | State of Or. By & Through State Forester v. United States, 308 F.2d 568 | 411+7 | Appellants also assert that the action is in tort as decided by the Supreme Court of Oregon, citing State v. City of Marshfield, 122 Or. 323, 259 P. 201, State v. Gourley\ Bros. et al., 209 Or. 363, 305 P.2d 396, 306 P.2d 1117, and State v. California-Oregon Power Co., 225 Or. 604, 358 P.2d 524. The last two cited cases do not so hold. The case of State v. City of Marshfield, in applying a prior statute granting relief for the expenses in fighting a fire by an action "for debt" holds that the reasonable cost of fighting fire on defendant's landis based upon failure to exercise reasonable diligence by the City and was a tort and that theCity must respond for that "which is the direct, natural, and proximate result thereof." Butwhatever label the State of Oregon may place upon the statute does not confer jurisdiction on the district court under the Tort Claims Act for expenses incurred by a State or other agency in fighting the fire where no injury or loss of property is claimed, as the jurisdiction of the court under the Tort Claims Act is limited to claims for property damage and personal injury or death. See also Anno. 1, A.L.R.2d 225. | Action by State of Oregon and nonprofit corporation against United States to recover amount expended to extinguish forest fire alleged to have been negligently caused by agents and employees of Forest Service of United States was not action for money or damages for injury or loss of property within Tort Claims Act and could not be maintained under Tort Claims Act. ORS SS 477.002-477.071; 28 U.S.C.A. S 1346(b). | Do expenses incurred by states in fighting forest fires come under statutes like Tort Claims Act or The Federal Tort Claims Act? | Woods and Forest - Memo 76 - ANM_58051.docx | ROSS-003297042-ROSS-003297043 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 14771 | United Marine Mut. Indem. Ass'n v. Marshall, 510 F. Supp. 34 | 413+2 | While no case law or legislative history has been cited to support either position, and independent research has revealed none, there is some guidance to be found in more general discussions of the LHWCA. For example, the Act is to be liberally construed in conformance with its purpose to protect longshoremen and its statutory terms may be given broad application to accomplish its aims. Michigan Mutual Liability Co. v. Arrien, 233 F.Supp. 496, 503-04 (S.D.N.Y.1964), aff'd, 344 F.2d 640 (2d Cir.), cert. denied, 382 U.S. 835, 86 S.Ct. 80, 15 L.Ed.2d 78 (1965). The whole theory of the Act is to provide the injured workman with certain and absolute benefits in lieu of common law damages. Haynes v. Rederi A/S Aladdin, 362 F.2d 345, 350 (5th Cir. 1966), cert. denied, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557 (1967). | Whole theory of Longshoremen's and Harbor Workers' Compensation Act is to provide the injured workman with certain and absolute benefits in lieu of common-law damages. Longshoremen's and Harbor Workers' Compensation Act, SS 1 et seq., 4-9, 32, 33 U.S.C.A. SS 901 et seq., 904-909, 932. | What is the whole theory of the Worker's Compensation Act? | 048395.docx | LEGALEASE-00148298-LEGALEASE-00148299 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 14772 | People v. Snowburger, 113 Mich. 86 | 178+1.5 | Statutes in many states have been passed providing that whoever sells, or keeps or offers for sale, adulterated milk, or milk to which water or other foreign substance has been added, shall be punished, etc. Under these statutes, it has been decided many times that the risk is upon the seller of knowing that the article he offers for sale is not adulterated, and that it is not necessary in an indictment under such a statute to allege or prove criminal intent or guilty knowledge. Com. v. Smith, 103 Mass. 444; Com. v. Warren, 160 Mass. 533, 36 N. E. 308; People v. Cipperly, 101 N. Y. 634, 4 N. E. 107. The same rule that no criminal intent is necessary has been held to apply under an act forbidding the sale of oleomargarine or other imitations of dairy products, unless express notice be given to the purchaser. Bayles v. Newton, 50 N. J. Law, 549, 18 Atl. 77; Com. v. Gray, 150 Mass. 327, 23 N. E. 47. The English rule is in keeping with the doctrine in this country on this subject. Roberts v. Egerton, L. R. 9 Q. B. 494. The statute not requiring knowledge on the part of the seller to make the offense complete, we are satisfied that the conviction must be sustained. No case has been cited, and we are not able to find one, where a contrary doctrine is laid down. The act may work hardship in many cases, but that question is one to be addressed to the legislature, and not to the courts. As we have said, it was within the power of the legislature to pass the act making it an offense punishable with fine and imprisonment to sell adulterated food or drink, although the person selling the same has no knowledge that it is adulterated. Under this statute, one making sales must do so at his peril. The conviction is affirmed. | It is competent for the Legislature, under the police power, to provide for the protection of the public health by making it an offense punishable by fine and imprisonment to sell adulterated food or drink, irrespective of the seller's knowledge of the adulteration. | Whether knowledge needs to be proved for an offence to sell adulterated milk? | 006570.docx | LEGALEASE-00149947-LEGALEASE-00149948 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 14773 | Hernandez v. Dep't of Air Force, 498 F.3d 1328 | 34+115(7) | Here, as well as violating USERRA under Butterbaugh, the department's pre"2000 practice of charging military leave also violated USERRA's predecessor statute, the Vietnam Era Veterans' Readjustment Assistance Act of 1974 ("VEVRAA"), Pub.L. No. 93"508, 88 Stat. 1578. Indeed, VEVRAA provides that a federal government employee "shall not be denied hiring, retention in employment, or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces." 38 U.S.C. " 2021(b)(3) (1988) (emphasis added). We, as well as our sister circuits, have interpreted this provision broadly, finding "incident or advantage of employment" to include: the opportunity to select work hours, Allen v. U.S. Postal Serv., 142 F.3d 1444, 1446"47 (Fed.Cir.1998); holiday pay, Waltermyer v. Aluminum Co. of Am., 804 F.2d 821, 824"25 (3d Cir.1986); and overtime opportunities, Carney v. Cummins Engine Co., 602 F.2d 763, 766"67 (7th Cir.1979). It would be inconsistent with these precedents if military leave were not also encompassed within the "incident or advantage of employment" provision. This is especially so in view of the canon that "provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." King v. St. Vincent's Hosp., 502 U.S. 215, 220 n. 9, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991); see also Kirkendall v. Dep't of the Army, 479 F.3d 830, 843"44 (Fed.Cir.2007) (en banc). | Provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor. | Should provisions for benefits to members of the Armed Services be construed in the beneficiaries' favor? | Armed Services - Memo 334 - RK_58607.docx | ROSS-003278558-ROSS-003278559 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14774 | Ex parte Burson, 615 S.W.2d 192 | 34+101 | The important fact which distinguishes this case from those cited above is that Burson, after the divorce decree, made an election to forego his Air Force disability benefits and to receive instead the disability benefits from the Veterans Administration. Veterans Administration benefits, unlike Air Force disability retirement benefits, are not divisible or assignable. They are not property. 38 U.S.C. s 3101; Ex parte Johnson, 591 S.W.2d 453 (Tex.1979). See also Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979); Yiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964); Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950); McCune v. Essig, 199 U.S. 382, 26 S.Ct. 78, 50 L.Ed. 237 (1905); Eichelberger v. Eichelberger, 582 S.W.2d 395 (Tex.1979); Perez v. Perez, 587 S.W.2d 671 (Tex.1979); United States v. Stelter, 567 S.W.2d 797 (Tex.1978); Valdez v. Ramirez, 574 S.W.2d 748 (Tex.1978); Arrambide v. Arrambide, 601 S.W.2d 197 (Tex.Civ.App. El Paso 1980, no writ). | Veterans Administration benefits, unlike air force disability retirement benefits, are not divisible or assignable; they are not property. 38 U.S.C.A. S 3101. | Are Veterans Administration (VA) benefits divisible property? | Armed Services - Memo 337 - RK_58610.docx | ROSS-003294761-ROSS-003294762 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 14775 | de Rodulfa v. United States, 461 F.2d 1240 | 92+4244 | The constitutional adjudications find common ground in the thesis, as expressed by the First Circuit, that "veterans' benefits are gratuities and establish no vested rights in the recipients so that they may be withdrawn by Congress at any time and under such conditions as Congress may impose." That proposition had its origin in a line of Supreme Court decisions, and despite possible indication that that thesis may be waning, we are obliged to accept it unless and until it is disapproved. We think, too, that there is another predicate possessing at least an equal measure of vitality. The Supreme Court has declared that "the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts;" "it may," instead, "provide an administrative remedy and make it exclusive. . . ." That is precisely what Congress did in the current version of Section 211(a), and Congress was well within its legislative prerogatives when it did so. | Veterans' benefits are gratuities and establish no vested rights in recipients and benefits may be withdrawn by Congress at any time and under any conditions Congress may impose. | Are Veterans' benefits gratuities? | Armed Services - Memo 338 - RK_58611.docx | ROSS-003284120-ROSS-003284121 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 14776 | Whitlock v. Bank of Maryville, 612 S.W.2d 481 | 172H+517 | A certificate of deposit is a written acknowledgment by a bank or banker of the receipt of a sum of money on deposit which the bank or banker promises to pay to the depositor, to the order of the depositor, or to some other person or to his order. 10 Am.Jur.2d, Banks, s 455; 9 C.J.S. Banks and Banking s 311. No particular form is necessary to constitute a certificate of deposit, provided the essential characteristics are present. 10 Am.Jur.2d, Banks, s 455; 9 C.J.S. Banks and Banking s 313. | "Certificate of deposit" is written acknowledgment by bank or banker of receipt of sum of money on deposit which bank or banker promises to pay to depositor, to order of depositor, or to some other person or to his order, and no particular form is necessary to constitute certificate of deposit, provided essential characteristics are present. | What is a Certificate of Deposit (CD)? | 009663.docx | LEGALEASE-00149690-LEGALEASE-00149691 | Condensed, SA, Sub | 0.3 | 0 | 1 | 1 | 1 | 1 |
| 14777 | Zier v. E. Acceptance Corp., 61 A.2d 106 | 8.30E+05 | We realize to the fullest extent that the purpose of the uniform negotiable instruments law, in effect in this jurisdiction as well as throughout the United States, is to facilitate the negotiation of commercial paper. This beneficial purpose, however, is hindered, not furthered, by weakening the safeguards thrown by the Act around those members of the public who may be taken advantage of under the guise of the statute. | Purpose of Uniform Negotiable Instruments Law is to facilitate negotiation of commercial paper. | Is the purpose of Uniform Negotiable Instruments Law to facilitate the negotiation of commercial paper? | 010612.docx | LEGALEASE-00149151-LEGALEASE-00149152 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 14778 | In re Burm, 554 B.R. 5 | 8.30E+200 | Under Massachusetts law, a promissory note is nothing more than a written contract for the payment of money, subject to the fundamental rules governing contract law. T. Butera Auburn, LLC v. Williams, 83 Mass.App.Ct. 496 An enforceable contract requires consideration"a bargained-for exchange in which there is a legal detriment to the promisee or a corresponding benefit to the promisor. Neuhoff v. Marvin Lumber and Cedar Co., 370 F.3d 197. "Massachusetts law recognizes that "[a] mortgage ... may exist without there being any debt or personal liability of the mortgagor." In re D & S Contractors, Inc., 422 B.R. 1; Perry v. Miller, 330 Mass. 261. As between Joseph and the Defendants, there is no question that the First Vineyard Note is adequately supported by consideration, and no argument has been raised attacking the validity of the note as between those parties. Therefore, this Court reaches the same conclusion that was reached in D & S Contractors, and rules that "[a]lthough the Debtor is not obligated on the Note, the Mortgage remains valid, particularly as there was consideration for the Mortgage loan." | Under Massachusetts law, a promissory note is nothing more than a written contract for the payment of money, subject to the fundamental rules governing contract law. | Is promissory note a contract? | Bills and Notes- Memo 732-IS_58520.docx | ROSS-003325962-ROSS-003325963 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14779 | Spurgin v. Denton Cty. Nat. Bank, 235 S.W. 970 | 8.30E+08 | The notes in controversy could not, in any event, be affected by the "Uniform Negotiable Instruments Act," which was passed by the Thirty"Sixth Legislature, as shown in the acts of 1919, page 190, since they were executed and matured long before the act became effective. | The Uniform Negotiable Instrument Act held not applicable to notes which were executed and had matured long before the act became effective. | Can the Uniform Negotiable Instrument Act be applied on a note or check executed prior to the passing of the Act? | 010657.docx | LEGALEASE-00149439-LEGALEASE-00149440 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 14780 | Liberty Loan Corp. of Eunice v. Lavine, 324 So. 2d 481 | 83E+426 | In Coltharp v. Calcasieu-Marine National Bank, 199 So.2d 568 (La.App., 3rd Cir. 1967) the Court recognized the distinction between instruments that were originally bearer paper and instruments that are originally order paper but subsequently become bearer paper by blank endorsement and are then specially endorsed. In the latter case the instrument is converted from bearer paper back to order paper by the special endorsement. | Instruments, which are originally order paper but subsequently become bearer paper by blank endorsement, are converted back to order paper if they are specially endorsed. LSA-R.S. 7:40. | Can an indorsement convert order paper into bearer paper? | 010966.docx | LEGALEASE-00149487-LEGALEASE-00149488 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14781 | Grimes v. Fremont Gen. Corp., 933 F. Supp. 2d 584 | 172H+33 | Plaintiffs' complaint could be construed to state a claim for negligent misrepresentation against FGC, as opposed to fraud. See Abu Dhabi Commercial Bank v. Morgan Stanley Co. Inc., 910 F.Supp.2d 543, 548 (S.D.N.Y.2012) (noting that under New York law, a claim for negligent misrepresentation can be based on an omission where the duty between the parties encompasses a duty "to provide accurate information" and further explaining that "[i]t is not anomalous that a defendant who made no actionable misstatement might be liable for negligent misrepresentation but not fraud"). Even so construed, however, Plaintiffs' claim falls short, because a claim for negligent misrepresentation requires a plaintiff to demonstrate, inter alia, "the existence of a special privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff." Mandarin Trading, 944 N.E.2d at 1109. To be sure, such a relationship exists where one party "possesses unique or specialized expertise" or is "in a special position of confidence and trust with the injured party." Id. But without more, "[a] standard lender-borrower relationship is not the kind of special relationship that supports a claim of negligent misrepresentation." Boniel v. U.S. Bank N.A., No. 12"CV"3809, 2013 WL 458298, at (E.D.N.Y. Feb. 6, 2013) (citing Dobroshi v. Bank of Am., N.A., 65 A.D.3d 882, 886 N.Y.S.2d 106 (App.Div.2009)). Plaintiffs have not offered allegations demonstrating that FGC was more than an arms-length lender; therefore, they have failed to make out a negligent misrepresentation claim. | A standard lender-borrower relationship, without more, is not the kind of special relationship that supports a claim of negligent misrepresentation. | Is the lender borrower relationship a kind of relationship that supports a claim of negligent misrepresentation? | 014123.docx | LEGALEASE-00149865-LEGALEASE-00149867 | Condensed, Order, SA, Sub | 0.91 | 1 | 1 | 1 | 1 | 1 |
| 14782 | State v. Pyritz, 90 Or. App. 601 | 210+1005 | We must first examine defendant's state constitutional claims, and we need reach his federal theories only if his state claims fail. State v. Kennedy, 295 Or. 260, 262"65, 666 P.2d 1316 (1983). A demurrer on constitutional grounds is sustainable if the statute is vague or overbroad on its face. State v. Horn, 57 Or.App. 124, 128, 643 P.2d 1338 (1982). | Demurrer to criminal charges on constitutional grounds is sustainable if statute is vague or overbroad on its face. | Is a demurrer on constitutional grounds sustainable if the statute is vague or overbroad on its face? | Disorderly Conduct-Memo 54-PR_58527.docx | ROSS-003278616-ROSS-003278617 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 14783 | Thomas v. Leonard Truck Lines, 7 So. 2d 753 | 156+3(1) | Since the amendment to the petition was properly allowed, the plea of estoppel perforce must fall. It has no basis upon which to stand. In addition to this, a pleader is not estopped by judicial allegations which have neither deceived nor damaged anyone. Sanderson v. Frost, 198 La. 295, 3 So.2d 626. | A pleader is not "estopped" by judicial allegations which have neither deceived nor damaged anyone. | Is a pleader estopped by judicial allegations which have neither deceived nor damaged anyone? | Estoppel - Memo #9 - C - CSS_58267.docx | ROSS-003310221-ROSS-003310222 | Condensed, SA | 0.66 | 0 | 1 | 0 | 1 | |
| 14784 | U.S. v. Jackson, 904 F. Supp. 118 | 110+627.6(3) | More recently in United States v. Chhun, 513 F.Supp.2d 1179 (C.D.Cal.2007) the defendant was charged with conspiracy to violate the Neutrality Act in connection with a failed coup attempt against the government of Cambodia and moved to dismiss on the grounds that the United States was not "at peace" with Cambodia at the time within the meaning of the Act. The district court found that whether the United States was "at peace" with Cambodia was an element of the offense upon which the government bore the burden of proof at trial to establish beyond a reasonable doubt. 513 F.Supp.2d at 1181. Moreover, the court concluded that even if the "at peace" requirement was a mixed question of law and fact, it was for a jury to determine whether the government had carried its burden of proof in that regard. | Defendants indicted on charges relating to alleged plot to ship weapons to Laos in order to facilitate overthrow of government were entitled to discovery of evidence relating to United States' overt or covert military planning or operations with respect to Laos from 2005 through 2007; "at peace" requirement under Neutrality Act constituted element of offense upon which government bore burden of proof at trial, and thus sought information would be both material to preparation of defense and potentially exculpatory. 18 U.S.C.A. S 960; Fed.Rules Cr.Proc.Rule 16, 18 U.S.C.A. | Who decides whether the prosecution has carried its burden of proving that the United States is at peace? | 021720.docx | LEGALEASE-00149909-LEGALEASE-00149910 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 14785 | Host v. BNSF Ry. Co., 460 S.W.3d 87 | 302+20 | It is uncontested that Host was entitled to submit his FELA claim to the jury under both a general negligence theory and a negligence per se theory. See Dickerson v. St. Louis Pub. Serv. Co., 365 Mo. 738, 286 S.W.2d 820, 824 (1956) (holding that "on this evidence a clearly submissible case of negligence was made against defendant, both under the ordinance and the common law"). "It is perfectly proper for a plaintiff to plead and to submit alternative theories for a single injury." Trien v. Croasdale Constr. Co., 874 S.W.2d 478, 480 (Mo.App.W.D.1994). The question, of course, is in what manner alternative theories for a single injury should be instructed. "Missouri courts have allowed plaintiffs making submissible cases of both common law and per se negligence to offer separate jury instructions on each theory. They have also permitted such plaintiffs to offer a single instruction disjunctively submitting both theories of negligence." King v. Morgan, 873 S.W.2d 272, 278 n.5 (Mo.App.W.D.1994) (citations omitted). However, because a plaintiff submitting on both theories "is entitled to only one recovery for his injuries ... caution should be exercised in instructing the jury so as to avoid a duplicative or overlapping damage verdict." Id. | It is perfectly proper for a plaintiff to plead and to submit alternative theories for a single injury. | Is it proper for a plaintiff to plead alternative theories for a single injury? | 023632.docx | LEGALEASE-00149535-LEGALEASE-00149536 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14786 | Jenkins v. Tucker, 18 So. 3d 265 | 307A+581 | Aggravating factors bolster a case for dismissal, but they are not required even when dismissal is with prejudice. Hasty, 986 So.2d at 1041(20) (citing Hine v. Anchor Lake Prop. Owners Ass'n, 911 So.2d 1001, 1006(22) (Miss.Ct.App.2005)). Aggravating factors may include: "(1) whether the delay was caused by the party as opposed to his counsel[;] (2) whether there was actual prejudice to the opposing party[;] and (3) whether the delay was an intentional attempt to abuse the judicial process." Id. at 1041(19) (citing Days Inn of Winona, 720 So.2d at 182(19)). | Aggravating factors bolster a case for dismissal for want of prosecution, but they are not required even when dismissal is with prejudice. Rules Civ.Proc., Rule 41(b). | Does aggravating factors bolster a case for dismissal but are not required even when dismissal is with prejudice? | Pretrial Procedure - Memo # 7992 - C - SU_58351.docx | ROSS-003282372-ROSS-003282373 | SA, Sub | 0.7 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14787 | Sears Mortg. Corp. v. Rose, 134 N.J. 326 | 308+1 | An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent. Arcell v. Ashland Chem. Co., 152 N.J.Super. 471, 494"95, 378 A.2d 53 (Law Div.1977); 2A C.J.S. Agency " 37 (1972); Restatement (Second) of Agency " 1 (1958). There need not be an agreement between parties specifying an agency relationship; rather, "the law will look at their conduct and not to their intent or their words as between themselves but to their factual relation." Henningsen v. Bloomfield Motors, 32 N.J. 358, 161 A.2d 69 (1960) (finding agency relationship between auto manufacturer and car dealer). "Implied authority may be inferred from the nature or extent of the function to be performed, the general course of conducting the business, or from particular circumstances in the case." Carlson v. Hannah, 6 N.J. 202, 212, 78 A.2d 83 (1951). | Agency relationship is created when one party consents to have another act on its behalf, with principal controlling and directing acts of agent. | Is consent important to form agency relationship? | 041392.docx | LEGALEASE-00149591-LEGALEASE-00149592 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14788 | In re Riemer, 82 F.2d 162 | 51+2954.1 | Taxes are not debts, but are imposts levied according to law to raise money for the support of the government. Lane County v. Oregon, 7 Wall. 71, 19 L.Ed. 101; Meriwether v. Garrett, 102 U.S. 472, 26 L.Ed. 197; New Jersey v. Anderson, supra. Their payment is governed by section 64 (11 U.S.C.A. " 104). In re Morgenstern & Co. (C.C.A.) 57 F.(2d) 163; In re Anderson (C.C.A.) 279 F. 525; In re Stavin (D.C.) 12 F.(2d) 471. As there has been no bar order, proof of the claim for taxes was timely so long as undistributed assets remained in the estate. | "Taxes" are not "debts," within Bankruptcy Act, but are imposts levied according to law to raise money for support of government, and their payment is governed by statute giving taxes priority (Bankr.Act S 64 as amended, 11 U.S.C.A. S 104). | Are taxes levied to raise money for the support of the government? | 045893.docx | LEGALEASE-00149197-LEGALEASE-00149198 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 14789 | Educ. Films Corp. of Am. v. Ward, 282 U.S. 379 | 371+2001 | But the nature of a tax must be determined by its operation rather than by particular descriptive language which may have been applied to it. As was said in Macallen Co. v. Massachusetts, 279 U. S. 620, 625, 626, 49 S. Ct. 432, 434, 73 L. Ed. 874, "neither state courts nor Legislatures by giving the tax a particular name, or by using some form of words, can take away our duty to consider its nature and effect. This court must determine for itself by independent inquiry whether the tax here is what, in form and by the decision of the state court, it is declared to be." On appeal from the state court in People ex rel. Bass, Ratcliff & Gretton v. State Tax Commission, supra, this court upheld the tax and defined its nature, saying, 266 U. S. 271, 280, 45 S. Ct. 82, 83, 69 L. Ed. 282: "It is not a direct tax upon the allocated income of the corporation in a given year, but a tax for the privilege of doing business in one year measured by the allocated income accruing from the business in the preceding year. See New York v. Jersawit, 263 U. S. 493, 496, 44 S. Ct. 167, 68 L. Ed. 405." See, also, Home Insurance Co. v. New York, 134 U. S. 594, 10 S. Ct. 593, 33 L. Ed. 1025; People ex rel. United States Aluminum Printing Plate Co. v. Knight, 174 N. Y. 475, 67 N. E. 65, 63 A. L. R. 87; Anderson v. Forty-two Broadway Co., 239 U. S. 69, 36 S. Ct. 17, 60 L. Ed. 152. | Nature of tax as regards question of validity must be determined by its operation, rather than by particular descriptive language applied to it. | Should the nature of a tax be determined by its operation or descriptive language? | 045926.docx | LEGALEASE-00149364-LEGALEASE-00149365 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 14790 | H.E.S. v. J.C.S., 175 N.J. 309 | 3.77E+06 | The law is clear that acts of actual violence are not required to support a finding of domestic violence. The stalking statute was intended "to intervene in repetitive harassing or threatening behavior before the victim has actually been physically attacked." State v. Saunders, 302 N.J.Super. 509, 520, 695 A.2d 722 (App.Div.) (citations omitted), certif. denied, 151 N.J. 470, 700 A.2d 881 (1997). In the domestic violence context, granting a FRO when the defendant has been stalking the plaintiff furthers the Domestic Violence Act's goal of " "assur[ing] the victims of domestic violence the maximum protection from abuse the law can provide." " Cesare, supra, 154 N.J. at 399, 713 A.2d 390 (quoting N.J.S.A. 2C:25"18 | The stalking statute was intended to intervene in repetitive harassing or threatening behavior before the victim has actually been physically attacked. N.J.S.A. 2C:12-10. | What was the stalking statute intended to intervene in? | "Threats, Stalking, and Harassment - Memo #11 - C - LB_58567.docx" | ROSS-003320159-ROSS-003320160 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 14791 | Com. v. Tizer, 454 Pa. Super. 1 | 3.77E+11 | Appellant claims that when he announced his intent to kill the victim, he was merely making spur-of-the-moment threats while feeling angry and agitated. As such, he claims to have lacked the requisite intent. Brief of Appellant at 11, 17. We agree that section 2706 was not designed to penalize spur-of-the-moment threats that arise out of anger in the course of a dispute. Hudgens, 400 Pa.Super. at 91, 582 A.2d at 1358, 18 Pa.C.S.A. " 2706, Official Comment"1972. We cannot agree, however, with appellant's characterization of his actions as spur-of-the-moment. | Terroristic threats statute is not designed to penalize spur-of-the-moment threats that arise out of anger in course of dispute. 18 Pa.C.S.A. S 2706. | Is the terroristic threats statute designed to penalize spur-of-the-moment threats? | 047078.docx | LEGALEASE-00149589-LEGALEASE-00149590 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 14792 | Com. v. Ferrer, 283 Pa. Super. 21 | 3.77E+10 | A person commits the crime of terroristic threats "if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience." 18 Pa.C.S. s 2706. For purposes of this appeal, the elements of the offense involved here are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize or with reckless disregard of the risk of causing such terror. Cf. Commonwealth v. Ashford, "-Pa.Super. "-, "-, 407 A.2d 1328, 1329 (1979). | Elements of the offense of terroristic threats are: a threat to commit a crime of violence, communicated with intent to terrorize or with reckless disregard of the risk of causing such terror. 18 Pa.C.S.A. S 2706. | When does a person commit the crime of terroristic threats? | "Threats, Stalking, and Harassment - Memo #16 - C - LB_58572.docx" | ROSS-003294639-ROSS-003294640 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 14793 | Idaho Sporting Cong. v. U.S. Forest Serv., 843 F. Supp. 1373 | 411+7 | The primary issue before the court on cross-motions for summary judgment is whether the ARA was self-implementing or whether the Act was to be implemented through administrative rule making. Upon careful review of the entire record in this matter, the court finds that the express language of the statute, the circumstances surrounding its enactment, and the legislative history make clear that the Forest Service was both required and entitled to implement the ARA through administrative rule making.Excerpts from the Congressional Record on the ARA clearly show that the senators expected the Forest Service to implement the ARA through regulation. See Mem. in Opp'n to Pls.' Mot. for Prelim. Inj., filed Oct. 29, 1993, App. D"5. | Appeals Reform Act (ARA) was not self implementing; rather, National Forest Service was expected and required to implement ARA through administrative rulemaking. Forest and Rangeland Renewable Resources Planning Act of 1974, S 14, as amended, 16 U.S.C.A. S 1612. | Is Forest Service required to implement the Appeals Reform Act (ARA) through administrative rulemaking? | 047563.docx | LEGALEASE-00149686-LEGALEASE-00149687 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14794 | Downie v. Kent Prod., 122 Mich. App. 722 | 413+2 | The policy underlying the workers' compensation scheme is prompt payment to an injured employee by funds from the industry in which he is employed, while limiting the liability of the employer by shielding it from common-law tort actions. Lahti v. Fosterling, 357 Mich. 578, 585, 99 N.W.2d 490 (1959). Both employee and employer receive certain clear benefits from the scheme but, in return, surrender certain other rights. If the employer's right to reimbursement rested solely on common-law subrogation, perhaps the court would have the right to modify this right to conform to the underlying principles announced in Placek. However, the workers' compensation system is wholly a creature of statute. The court is not free to redraw the statute because of the change in tort concept brought about by Placek. | Workers' compensation system is wholly creature of statute and court is not free to redraw statute because of change in tort concepts. M.C.L.A. S 411.1 et seq. | What are courts free to do regarding workers compensation? | 048374.docx | LEGALEASE-00149245-LEGALEASE-00149246 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 14795 | Broos v. Portec, 376 N.W.2d 688 | 413+63 | We have held on many occasions that the workers' compensation statutes in effect on the date an employee sustains a disabling injury govern both his rights to compensation and the extent of his employer's liability. As stated in Warner v. Zaiser, 184 Minn. 598, 601, 239 N.W. 761, 762 (1931): The provisions of the Workmen's Compensation Law do not become fixed as to interested parties at the time the employment begins. The obligations and rights of the parties as to weekly compensation and other benefits to the employee do become fixed at the date of a compensable accident; as to benefits and liabilities arising because of the employe's death, they become fixed at the time of the death. The Legislature may change the scale of weekly or other benefits prior to the occurrence of the accident; it may change the benefits to be received by the widow of an employee prior to the death. The rate of compensation, whether for injury or death, may not be changed after the event takes place that fixes the rights of the parties under the law in force at that particular time. See also Boltz v. Armour Agricultural Chemical Co., 269 Minn. 482, 131 N.W.2d 624 (1964); Yaeger v. Delano Granite Works, 250 Minn. 303, 84 N.W.2d 363 (1957). | Workers' compensation statutes in effect on date employee sustains disabling injury governed both his rights to compensation and extent of his employer's liability. | Are the provisions of the Workmen's Compensation Law fixed as to interested parties at the time the employment begins? | Workers Compensation - Memo #548 - C - ANC_58930.docx | ROSS-003295292-ROSS-003295293 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14796 | R.A. Brown & Co. v. Chancellor, 61 Tex. 437 | 83E+675 | The act of January 20, 1840, as well as the act of January 11, 1862, has been carried into the Revised Statutes, which provides: "That the provisions of the Revised Statutes, so far as they are substantially the same as the statutes of this state in force at the time when the Revised Statutes shall go into effect, or of the common law in force in this state at said time, shall be construed as continuations thereof, and not as new enactments of the same" (R. S., final title, sec. 19); hence the act of January 11, 1862, must be construed as of the day it became a law, and by the rules then applicable. The common law declares that days of grace cannot be allowed on bills and promissory notes negotiable, when in terms payable on demand. | In Act March 20, 1848, requiring three days of grace, etc., a proviso limited its effect to contracts between merchants and their factors and agents. Act Jan. 11, 1862, struck out such proviso, and required three days of grace to be allowed on "all bills of exchange and promissory notes assignable and negotiable by law." Held, that a note payable on demand is not entitled to days of grace, and suit lies thereon without previous demand. | Are days of grace allowed to bills payable on demand? | 009999.docx | LEGALEASE-00150218-LEGALEASE-00150219 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 14797 | Dolan v. Fairbanks Capital Corp., 930 F. Supp. 2d 396 | 172H+1341 | TILA requires creditors to clearly and accurately disclose all the material terms of a credit transaction. See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). Plaintiff alleges that FCC violated TILA and its accompanying regulations by failing to accurately state his loan balance in its variable rate adjustment disclosure. (2d Am. Compl. "" 221"24 (citing 12 C.F.R. " 226.20(c).) FCC alleges that TILA "specifically exempts servicers" from liability. (FCC's Mem. at 17.) | TILA requires creditors to clearly and accurately disclose all the material terms of a credit transaction. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | Does the TILA require creditors to disclose all material terms? | 013971.docx | LEGALEASE-00150550-LEGALEASE-00150551 | SA, Sub | 0.67 | 0 | 0 | 1 | 1 | |
| 14798 | St. Breux v. U.S. Bank, Nat. Ass'n, 919 F. Supp. 2d 1371 | 172H+1385 | The Court recently addressed a similar situation in Runkle v. Federal National Mortgage Association, 905 F.Supp.2d 1326, No. 12"61247, 2012 WL 5861803 (S.D.Fla. Nov. 16, 2012). The Court's holding was that 15 U.S.C. 1641(f)(2) did not require the magical legal word "master servicer" if the servicer disclosed in layman's terms that it was indeed the master servicer. Id. at 1329, at 3. Following Runkle, the Court finds that Litton was not obligated to use the magic word "master servicer." Nevertheless, Litton did not indicate in any way that it was the master servicer, so Litton violated " 1641(f)(2). | If the master servicer for a consumer loan discloses to the consumer in layman's terms that it is indeed the master servicer, it need not use the magical legal words "master servicer" in order to comply with the Truth in Lending Act (TILA) disclosure provision requiring a loan servicer, in response to a consumer obligor's request, to identify the owner or master servicer for the obligation. Truth in Lending Act, S 131(f)(2), 15 U.S.C.A. S 1641(f)(2). | Is it necessary for the servicer to use the magic word master servicer? | 013979.docx | LEGALEASE-00150580-LEGALEASE-00150581 | Condensed, SA, Sub | 0.24 | 0 | 1 | 1 | 1 | 1 |
| 14799 | Kelsey v. District of Columbia, 85 F.Supp.3d 327 | 141E+861 | Finally, the plaintiff argues that the Hearing Officer improperly discounted the testimony of the plaintiff's expert, Dr. Lucker. Dr. Lucker testified that "in order to make up for the four years behind or to get to the seventh-grade level, [the plaintiff] would have needed [one] hour a day five days a week of speech language services." AR at 1170. The Hearing Officer "discount[ed] this opinion because [Dr. Lucker] applied an incorrect standard." AR at 14. The IDEA was designed "to open the door of public education to handicapped children on appropriate terms" and not "to guarantee any particular level of education once inside." | The IDEA was designed to open the door of public education to handicapped children on appropriate terms and not to guarantee any particular level of education once inside. Individuals with Disabilities Education Act S 601 et seq., 20 U.S.C.A. S 1400 et seq. | What is the IDEA designed to do? | Education - Memo #116 - C - BR_58733.docx | ROSS-003291949-ROSS-003291950 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 14800 | K's Merch. Mart v. Northgate Ltd. P'ship, 359 Ill. App. 3d 1137 | 156+14 | The best way to interpret a contract is to give it the meaning the parties have given it. In cases involving the sale of goods, course of dealing, usage of trade, and course of performance may be considered to explain or supplement the terms of an agreement even without a determination that the agreement is ambiguous. 810 ILCS Ann. 5/2"202, Uniform Commercial Code Comment (1)(a), at 95 (Smith"Hurd 1993); cf. Air Safety, Inc. v. Teachers Realty Corp., 185 Ill.2d 457, 465, 236 Ill.Dec. 8, 706 N.E.2d 882, 885"86 (1999) (applying the "four corners" rule where contract includes an integration clause); see also R. Posner, The Law and Economics of Contract Interpretation, U. Chi. Law & Econ., Olin Working Paper No. 229 V. (A.) (November 2004) (endorsing admission of objective evidence of the parties' behavior, limited by the parol evidence rule). By their very nature, estoppel certificates look to the course of performance. In an estoppel certificate, the signer is certifying the course of performance has not produced any defaults. | In an estoppel certificate, the signer is certifying the course of performance has not produced any defaults. | "In an estoppel certificate, does the signer certify the course of performance has not produced any defaults?" | Estoppel - Memo #36 - C - CSS_59025.docx | ROSS-003280076-ROSS-003280077 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14801 | Kennedy v. Missouri Atty. Gen., 922 S.W.2d 68 | 302+48 | When reviewing the sufficiency of a petition to state a claim for declaratory relief, the reviewing appellate court shall liberally construe the pleadings in favor of the plaintiff and accord averments in the petition their reasonable and fair intendment. Crain v. Missouri State Employees' Retirement Sys., 613 S.W.2d 912, 915 (Mo.App.1981). All facts properly pleaded are taken as true, and the plaintiff is accorded all favorable inferences which can be deduced from the petition. Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771, 773 (Mo.App.1994). If the allegations in the petition invoke principles of substantive law which, if proved, entitles the pleader to a declaration of rights or status, the pleading is sufficient and must not be dismissed. Lovelace v. Long John Silver's, Inc., 841 S.W.2d 682, 684 (Mo.App.1992). The petition must contain allegations of fact in support of each essential element of the cause pleaded.Gevers, 885 S.W.2d at 773."If the petition offers only conclusions and does not contain the ultimate facts or any allegations from which to infer those facts, a motion to dismiss is properly granted." Id. "In comparison to attorney prepared pleadings, a pro se petition is held to a less rigorous standard and "is subject to summary dismissal if it is patently and irreparably frivolous or malicious on its face so that, as pleaded, the plaintiff could prove no set of facts entitling him to relief"." Watley v. Missouri Bd. of Probation and Parole, 863 S.W.2d 337, 338 (Mo.App.1992)(quoting Howard v. Pettus, 745 S.W.2d 821, 822 (Mo.App.1988)). | Petition must contain allegations of fact in support of each essential element of cause pleaded. | Should the petition state allegations of fact in support of each essential element of the cause pled? | 036810.docx | LEGALEASE-00150131-LEGALEASE-00150132 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 14802 | Holder v. Orange Grove Med. Specialties, P.A., 54 So. 3d 244 | 307A+583 | Our trial courts have the inherent authority to dismiss cases for want of prosecution as a means of controlling the court's docket and ensuring the "orderly expedition of justice."Watson v. Lillard, 493 So.2d 1277, 1278 (Miss.1986). Rule 41(b) of the Mississippi Rules of Civil Procedure provides for the dismissal of a case upon the defendant's motion for dismissal for want of prosecution. "What constitutes failure to prosecute is considered on a case-by-case basis." Cox v. Cox, 976 So.2d 869, 874 ( 14) (Miss.2008) (citing Am. Tel. and Tel. Co. v. Days Inn of Winona, 720 So.2d 178, 181 ( 12) (Miss.1998)). A Rule 41(b) dismissal is reviewed under an abuse of discretion standard. Id. at 874 ( 11). | Trial courts have the inherent authority to dismiss cases for want of prosecution as a means of controlling the court's docket and ensuring the orderly expedition of justice. | "Is a failure to prosecute, as grounds for dismissal, considered on a case-by-case basis?" | 036814.docx | LEGALEASE-00150160-LEGALEASE-00150161 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 14803 | Simmons v. Abruzzo, 49 F.3d 83 | 170A+1741.3 | The district court also has the power under Fed.R.Civ.P. 41(b) to dismiss a complaint for failure to comply with a court order, treating the noncompliance as a failure to prosecute. See, e.g., Link v. Wabash Railroad Co., 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); Harding v. Federal Reserve Bank of New York, 707 F.2d 46, 50 (2d Cir.1983). Whether the dismissal is for failure to comply with Rule 8 or for failure to comply with a court order, the dismissal is reviewable for abuse of discretion. See, e.g., Salahuddin v. Cuomo, 861 F.2d at 42 (Rule 8 dismissal); Harding v. Federal Reserve Bank of New York, 707 F.2d at 50 (dismissal for failure to comply with deadline for filing amended complaint). | District court has power to dismiss complaint for failure to comply with court order, treating noncompliance as failure to prosecute. Fed.Rules Civ.Proc.Rule 41(b), 28 U.S.C.A. | Can a claim be dismissed for a failure to comply with a court order? | Pretrial Procedure - Memo # 8324 - C - AC_58838.docx | ROSS-003279490-ROSS-003279491 | Condensed, Order, SA, Sub | 0.76 | 1 | 1 | 1 | 1 | 1 |
| 14804 | Johnson v. Preferred Prof'l Ins. Co., 91 A.3d 994 | 307A+622 | Defendants have also raised the question of whether Plaintiffs' Complaint establishes damages, which are essential to the torts of civil conspiracy and fraud. Defendants argue that, even if the factual allegations of the Complaint are accepted as true, Plaintiffs have not established harm as a result of the concealment/non-disclosure of the notes. The Defendants specifically point to the fact that Montague admitted in her deposition that the jaundice extended below the nipple line. They claim (again) that whether the note said sternum or abdomen does not matter, because of what was stated in the deposition. The standard a plaintiff must meet at the motion to dismiss stage is low. Plaintiffs' Complaint meets this standard. With that said, perhaps some additional attention should be given to this issue. It is not clear at this juncture what harm the concealment caused, in the sense that, to some degree, Plaintiffs' counsel was responsible for the dismissal for failure to get an qualified expert. Plaintiffs may address this section of their claim in order to survive ultimately. | The standard a plaintiff must meet at the motion to dismiss stage is low. | Is the standard a plaintiff must meet at the motion to dismiss stage low? | Pretrial Procedure - Memo # 8536 - C - SHS_59215.docx | ROSS-003292383-ROSS-003292384 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14805 | Looney v. State, 336 Ga. App. 882 | 3.77E+10 | A person is guilty of making a terroristic threat when he "threatens to commit any crime of violence ... with the purpose of terrorizing another [.]" OCGA " 16"11"37(a). "[A] defendant need not have the immediate ability to carry out the threat to violate OCGA " 16"11"37(a)." Reeves v. State, 288 Ga.App. 544, 545, 654 S.E.2d 449 (2007). A threat can be conditional and non-immediate and still qualify as a terroristic threat. See, e.g., Smith v. State, 273 Ga.App. 843, 844, 616 S.E.2d 183 (2005) (upholding conviction for terroristic threat where defendant told victim he would kill her if she did not do a school project for him). | A defendant need not have the immediate ability to carry out the threat to violate statute governing crime of terroristic threats. West's Ga.Code Ann. S 16-11-37(a). | Does a defendant need to have an immediate ability to carry out a threat in order to violate the statute criminalizing terroristic threats? | 046829.docx | LEGALEASE-00150298-LEGALEASE-00150299 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14806 | Haddock v. Quinn, 287 S.W.3d 158 | 25T+182(2) | Ultimately, what constitutes waiver of the right to arbitrate depends on the facts of each case. PAICO, 383 F.3d at 346 (citing Tenneco Resins, Inc. v. Davy Int'l, AG, 770 F.2d 416, 420 (5th Cir.1985)). Three factors are particularly relevant in determining prejudice. Id. First, pretrial activity related to all claims including those that are arbitrable may result in prejudice. Id. (citing Price v. Drexel Burnham Lambert, Inc. 791 F.2d 1156, 1161"62 (5th Cir.1986)). Second, time and expense incurred in defending against a motion for summary judgment could prejudice the party opposing arbitration. Price, 791 F.2d at 1162. Thus, both delay and the extent of the moving party's participation in judicial proceedings are material factors in assessing prejudice. Frye, 877 F.2d at 398. Third, failure to assert the right to demand arbitration is a factor bearing on the question of prejudice along with other considerations. Price, 791 F.2d at 1161"62. A demand for arbitration puts the other party on notice that arbitration is forthcoming and affords that party the opportunity to avoid compromising its position with regard to arbitrable and nonarbitrable claims. PAICO, 383 F.3d at 347. | Both delay and the extent of the moving party's participation in judicial proceedings are material factors in assessing prejudice, for purposes of determining whether a party has waived arbitration. | What are the material factors involved in assessing a plea of prejudice? | 007920.docx | LEGALEASE-00151383-LEGALEASE-00151385 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 14807 | Stoltz v. Aurora Loan Servs., 194 So. 3d 1097 | 83E+426 | At the trial, the second servicer attempted to meet this burden by offering a note bearing an undated indorsement in blank. An indorsement in blank is sufficient to prove that the person in possession of the note is its holder. Focht v. Wells Fargo Bank, N.A., 124 So.3d 308, 310 (Fla. 2d DCA 2013). Because the indorsement in this case was undated and was not attached to the original complaint, however, it was insufficient to prove that the first servicer held the note at the inception of the case absent additional evidence that the first servicer actually possessed the note at the inception of the case. See Sorrell v. U.S. Bank Nat'l Ass'n, """ So.3d """", 41 Fla. L. Weekly D847, 2016 WL 1360758 (Fla. 2d DCA Apr. 6, 2016). The only additional evidence the second servicer presented was the testimony of its representative. That testimony established at most that the first servicer was in fact servicing the mortgage when it filed suit, not that the first servicer held the note when it filed suit. For that reason, the second servicer failed to carry its burden of proving standing at inception, and the borrower's motion for involuntary dismissal, made at the close of the second servicer's case at trial, should have been granted. See Russell, 163 So.3d at 643; May v. PHH Mortg. Corp., 150 So.3d 247, 249 (Fla. 2d DCA 2014). | An indorsement in blank is sufficient to prove that the person in possession of the note is its holder. | Is indorsement in blank sufficient to prove that the person in possession of the note is its holder? | Bills and Notes- Memo 1055- ANM_59393.docx | ROSS-003280155-ROSS-003280156 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14808 | Galbreath v. Wallrich, 45 Colo. 537 | 38+97 | The fact that the railroad company subsequently canceled the tie contracts and refused to allow the defendants to fill them does not, of itself, impose any liability on plaintiffs. This act on the part of the railroad company was not taken because of any claim upon its part that the contracts had not been executed by it. The assignment of a nonnegotiable contract does not carry a warranty that it will be performed. The assignee merely impliedly warrants that the contract is what it purports to be; or, in other words, that it is genuine. 15 Ency. 1241; Giffert v. West, 33 Wis. 617; Daskam v. Ullman, 74 Wis. 474, 43 N. W. 321; Flynn v. Allen, 57 Pa. 482. By the contracts in question the plaintiffs were appointed agents of the railroad company to manufacture ties from timber on government lands in the vicinity of South Fork, and we shall assume, for the purposes of this case, that the assent of the railroad company to the assignment of the contracts was necessary, and were such an essential part of the business and property purchased that if they were not, in fact, obtained by the defendants, they were justified in electing to rescind their contract with plaintiffs. So that, reduced to its final analysis, the rights of the parties depend upon whether or not the assent of the railroad company had been obtained, or, in the circumstances of this case, was necessary after the contract of purchase was executed and the purchasers entered into the possession of the property purchased. In other words, the case turns upon whether or not defendants obtained the contracts in question, and this proposition depends upon whether the railroad company had assented to the transfer of such contracts | Assignment of a nonnegotiable contract does not carry a warranty that it will be performed; but assignee merely impliedly warrants it is what it purports to be, and hence, where nonnegotiable contracts to furnish ties to a railroad were assigned, the mere fact that it subsequently canceled them and refused to allow assignees to fill them did not impose any liability on assignors. | Does the assignee of a nonnegotiable contract impliedly warrant that it is genuine? | 010732.docx | LEGALEASE-00151216-LEGALEASE-00151217 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 14809 | Lieberman v. Cappellino, 96 N.Y.S.2d 546 | 83E+481 | It is my view that Ershowsky is not an "assignor," nor plaintiff an "assignee" within the contemplation of Rule 7. The word "assignment" is generally used to signify the transfer of non-negotiable instruments, while "endorsement" is used to signify a transfer of negotiable instruments. There are important distinctions in the legal effect of the two methods of transfer upon the rights and liabilities of the parties. An assignment indicates a trnasfer of the title. It neither includes nor implies becoming in any way a party to the paper, or responsible for the default of the maker. An indorsement, on the other hand, is not merely a transfer of the title, but is tantamount to a new and substantive contract by which the indorser becomes a party to the note and responsible for its payment on certain conditions. 5 C.J., sec. 3, pp. 837, 838; sec. 6, p. 841; 6 C.J.S., Assignments, "" 1, 2; Porter v. Potter, 18 N.Y. 52; Hicks v. Wirth, 10 How.Pr. 555. | "Assignment" is generally used to signify the transfer of non-negotiable instruments, while "indorsement" is used to signify a transfer of negotiable instruments. Rules of Supreme Court of Kings County, rule 7; Judiciary Law, S 149. | "Is assignment generally used to signify the transfer of nonnegotiable instruments, whereas indorsement is used to signify a transfer of negotiable instruments?" | 010782.docx | LEGALEASE-00151258-LEGALEASE-00151259 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 14810 | Household Fin. Corp. v. Buck, 107 Ill. App. 3d 628 | 172H+1347 | The rate of charge for delinquent payments is stated in language similar to that of the statute authorizing such charges. (Ill.Rev.Stat.1979, ch. 74, par. 65.) The disclosure must be presented in a way that the borrower can comprehend easily and must be intelligible to the average consumer. Allen v. Beneficial Finance Co. (7th Cir. 1976), 531 F.2d 797, cert. denied (1976), 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166. | Disclosure of delinquency charges section of consumer loan contract must be presented in a way that borrower can comprehend easily and must be intelligible to the average consumer. Truth in Lending Regulations, Regulation Z, S 226.1 et seq., 15 U.S.C.A. foll. S 1700; Truth in Lending Act S 102 et seq., 15 U.S.C.A. S 1601 et seq.; Ill.Rev.Stat.1977, ch. 74, SS 66(i, k), 70(b). | Should the disclosure be presented in a way that the borrower can comprehend easily? | Consumer Credit -Memo 112-DB_59231.docx | ROSS-003292896 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14811 | Brown v. Payday Check Advance, 202 F.3d 987 | 172H+1522 | Section 1640(a) says that statutory damages are available "only" for violations of enumerated subsections and rules. Section 1632(a) is not on that list. Whether Congress should have included it, or would have done so had it thought more fully, does not affect interpretation of the law it actually enacted. See West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83, 100-01, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); In re Sinclair, 870 F.2d 1340 (7th Cir.1989). Even if its omission is a legislative oversight, the fact remains that " 1632(a) is not on the list. Because all of the formal details prescribed by " 1632 are "in connection with" disclosures under " 1638, omission from the list means no statutory damages. | Statutory damages were not available under Truth in Lending Act (TILA) for lender's failure to emphasize the typeface of "finance charge" and "annual percentage rate," omission of descriptive explanations, and inclusion of non-mandatory disclosures in required disclosure portion of payday loan forms, and, thus, failure to establish actual injury precluded any recovery by borrowers under TILA; statutory damages were available "only" for violations of enumerated subsections and rules, and TILA subsections violated by lender were not among them. Consumer Credit Protection Act, SS 122(a), 128(a)(8), (b)(1), 130(a), 15 U.S.C.A. SS 1632(a), 1638(a)(8), (b)(1), 1640(a). | Are statutory damages available only for violations of enumerated subsections and rules? | Consumer Credit -Memo 119-PR_59235.docx | ROSS-003319341 | Condensed, SA, Sub | 0.06 | 0 | 1 | 1 | 1 | 1 |
| 14812 | Holm v. Montgomery, 62 Wash. 398 | 200+89 | The theory of the ruling, as we gather it from the briefs, was that appellant had not shown any special damage, nor any license from the county commissioners to run the water along the road; that the complaint showed but a single past act, and appellant himself, being a wrongdoer, could not invoke the aid of the courts to prevent the acts of respondent. It has become the settled rule of this court that the public has only an easement of use in a public street or highway, and that the fee rests in the abutting owner. Simons v. Wilson, 112 Pac. 653. | Since the public has only as easement of use in a highway, and the fee rests in the abutting owner, who may make such use of the land within the highway as will not interfere with its use by the public, such owner may use the highway on which to maintain ditches for the benefit of his land, provided he does so without creating a nuisance or interfering with its use as a highway. | Does the public have an easement of use in a public street or highway while the fee rests in the owners of the abutting property? | Highways -Memo 60 - DB_59347.docx | ROSS-003292562-ROSS-003292563 | Condensed, SA, Sub | 0.31 | 0 | 1 | 1 | 1 | 1 |
| 14813 | Arcade Steam Laundry v. Bass, 159 So. 2d 915 | 302+20 | It is understandable that the trial court had difficulty with the complaint. It consists of one count containing allegations charging the breach of an implied warranty and the breach of a duty to use reasonable care. Rule 1.8(f), F.R.C.P., provides for each claim founded upon a separate action or occurrence to be stated in a separate count. Under Rule 1.8(g), F.R.C.P., a pleader may set up in the same action as many claims or causes of action in the same right as he may have. One may plead two or more statements of a claim alternatively in one count or in separate counts. The complaint fails to comply with these rules. Inasmuch as the complaint does state a cause of action upon which relief may be granted against Appellees, the complaint should not nave been dismissed. | One may plead two or more statements of claim alternatively in one count or in separate counts. 30 F.S.A. Rules of Civil Procedure, rule 1.8(f, g); Fed.Rules Civ.Proc. rule 10(b), 28 U.S.C.A. | Can one plead two or more statements of a claim alternatively in one count? | 023688.docx | LEGALEASE-00151333-LEGALEASE-00151334 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 14814 | Carlson v. Hannah, 6 N.J. 202 | 308+92(1) | Attorneys in fact created by formal letters of attorney are merely agents and their authority and the manner of its exercise are governed by the principles of the law of agency. 2 Am.Jur. (Agency), s 26, p. 29. The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. Baurhenn v. Fidelity, etc. of Maryland, 114 N.J.L. 99, 104, 176 A. 137 (E. & A. 1934). Such actual authority may be express or implied. Implied authority may be inferred from the nature or extent of the function to be performed, the general course of conducting the business, or from the particular circumstances of the case. Implication is but another term for meaning and intention; express authority given to an agent includes by implication, whether the agency be general or special, unless restricted to the contrary, all such powers as are proper and necessary as a means of effectuating the purposes for which the agency was created. Sibley v. City Service Transit Co., 2 N.J. 458, 463, 66 A.2d 864 (1949); 2 Am.Jur. (Agency) s 86, p. 70. Accordingly, it is well settled that, unless otherwise agreed, the authority of an agent to manage a business extends no further than the direction of the ordinary operations of the business, including authority to make contracts which are incidental to such business, are usually made in it, or are reasonably necessary in conducting it. But Prima facie, authority to manage a business does not include authority to dispose of it in whole or in part. Restatement (Agency) s 73, Title F. | The power of an agent to bind his principal is limited to such acts as are within his actual or apparent authority. | Can an agent bind his principal for acts within his authority? | 041459.docx | LEGALEASE-00151262-LEGALEASE-00151263 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14815 | Kasson v. Noltner, 43 Wis. 646 | 308+92(1) | The rule of law which controls the decision of this case is, that "a principal is responsible, either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to the agent his authority."This rule, says Professor Parsons, may be called the foundation of the law of agency. 1 Pars. on Con., 44. And Judge Story, in his commentaries on the law of agency, lays down the same rule more elaborately, and says it is founded in the maxim of natural justice, that he who has, although innocently, enabled any person to do an act which might be injurious to himself or to another innocent party, shall himself suffer the injury, rather than the innocent party who has placed confidence in him. " 127. | A principal is responsible for the act of his agent when he has either given the agent authority to do the act, or justified the party dealing with the agent in believing that the latter had such authority. | Can a principal be responsible for the act of his agent if he has given the authority? | 041468.docx | LEGALEASE-00151315-LEGALEASE-00151316 | Condensed, Order, SA, Sub | 0.73 | 1 | 1 | 1 | 1 | 1 |
| 14816 | Walker v. President & Fellows of Harvard Coll., 82 F. Supp. 3d 524 | 141E+1166 | Plaintiff contends that Harvard's Handbook of Academic Policies and its Rules Relating to Law School Studies (the "Student Handbook") together constitute a binding contract between the university and its students. Compl. " 5. "[A]n entering student forms a contractual relationship with her university and ... a disciplinary code can be part of that contract." Kiani v. Trustees of Boston Univ., CIVA 04CV11838PBS, 2005 WL 6489754 (D.Mass.2005). Contracts between students and universities are interpreted "in accordance with the parties' reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them." Havlik v. Johnson & Wales Univ., 509 F.3d 25, 34 (1st Cir.2007); see Schaer v. Brandeis Univ., 432 Mass. 474, 478, 735 N.E.2d 373 (2000) (citing Cloud v. Trustees of Boston Univ., 720 F.2d 721, 724 (1st Cir.1983)). Contract interpretation, including whether any ambiguities exist in the disputed contractual terms, is generally a question of law for the court. Driscoll v. Bd. of Trs. of Milton Acad., 70 Mass.App.Ct. 285, 293, 873 N.E.2d 1177 (2007). | An entering student forms a contractual relationship with her university, and a disciplinary code can be part of that contract. | Can the university disciplinary code be part of the contract with the students? | 016715.docx | LEGALEASE-00151480-LEGALEASE-00151481 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14817 | Xiaolu Peter Yu v. Vassar Coll., 97 F. Supp. 3d 448 | 141E+1166 | "In New York, the relationship between a university and its students is contractual in nature." Papaspiridakos v. Educ. Affiliates, Inc., No. 10"CV"5628"RJD, 2013 WL 4899136, (E.D.N.Y. Sept. 11, 2013) aff'd, 580 Fed.Appx. 17 (2d Cir.2014). A college is "contractually bound to provide students with the procedural safeguards that it has promised." Fellheimer v. Middlebury Coll., 869 F.Supp. 238, 243 (D.Vt.1994). | In New York, relationship between university and its students is contractual in nature, and college is contractually bound to provide students with the procedural safeguards that it has promised. | A college is contractually bound to provide students with the procedural safeguards that it has promised? | 016717.docx | LEGALEASE-00151478-LEGALEASE-00151479 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 14818 | Austin v. Albany Law Sch. of Union Univ., 38 Misc. 3d 988 | 141E+1166 | As to the branch of the fraud claim founded upon allegations of concealment, settled law holds that such a cause of action will lie only where "the defendant had a duty to disclose" (Kaufman v. Cohen, 307 A.D.2d 113, 120, 760 N.Y.S.2d 157 [1st Dept.2003]). Such a duty may arise where a fiduciary relationship exists (see id.; see also Paolucci v. Mauro, 74 A.D.3d 1517, 1520, 903 N.Y.S.2d 584 [3d Dept.2010]). However, as ALS correctly asserts, the relationship between an institution of higher education and its students is contractual, rather than fiduciary, in nature (see e.g. Moy v. Adelphi Institute, Inc., 866 F.Supp. 696, 708 [E.D.N.Y.1994]; Baldridge v. State of New York, 293 A.D.2d 941, 942"943, 740 N.Y.S.2d 723 [3d Dept.2002], lv. denied 98 N.Y.2d 608, 746 N.Y.S.2d 692, 774 N.E.2d 757; Sweeney v. Columbia Univ., 270 A.D.2d 335, 336, 704 N.Y.S.2d 617 [2d Dept.2000]). Moreover, a school's relationship with prospective students is even more attenuated. Accordingly, there is no fiduciary relationship here that would give rise to a duty of disclosure. | The relationship between an institution of higher education and its students is contractual, rather than fiduciary, in nature. | "Is the relationship between an institution of higher education and its students fiduciary, in nature?" | Education - Memo # 204 - C - KS_60318.docx | ROSS-003298086-ROSS-003298087 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14819 | Bologna Bros. v. Morrissey, 154 So. 2d 455 | 8.30E+12 | Relying strongly upon Louisiana LSA Civil Code Article 10, counsel for appellants declare that since the notes indicate they were signed and delivered in Mississippi and provided for payment in Mississippi, their validity must be determined by the law of the State of Mississippi. Article 10 provides that the form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed, and continuing, it says the effect of acts passed in one country to have an effect in another country, is regulated by the laws of the country where such acts are to be effected. As a rule the nature, validity and construction of a contract is determined according to the lex loci contractus and the remedy according to the lex fori. Lynch v. Postlethwaite, 7 Mart., O.S., 69, 12 Am.Dec. 495 (1819); LSA-C.C. Art. 10. The general rule was well expressed in Saul v. His Creditors, 5 Mart., N.S., 569, 16 Am.Dec. 212 (1827); Depau v. Humphreys, 8 Mart., N.S., 1, 34 (1829); and in Miles v. Oden, 8 Mart., N.S., 214, 221, 19 Am.Dec. 177 (1829), where the court stated:'The courts are aware of the common principle, that contracts are governed by the laws of the country in which they are passed; and that, by the comity of nations the rights, flowing from them, are not diminished by the parties passing into other states:"Provided, the laws of that state afford adequate remedies to enforce the obligation. But this principle is subject to the exception, that in carrying them into effect, no injury result to the inhabitants of the country whose aid is required to enforce them."See also Restatement of Conflict of Laws, Sec. 322. The rule is the same for promissory notes. Their legal effect is governed by the law of the country where they were executed and delivered. Kuenzi & Co., v. Elvers, Boje & Co., 14 La.Ann. 391, 74 Am.Dec. 434 (1859); Walsh v. Walsh, La.App., 11 Orl.App. 205 (1914); aff. 137 La. 157, 68 So. 392 (1915); Stevens v. Gaude, 9 La.App. | Obligation of endorser or accommodation party is governed by lex loci contractus. | Is the obligation of an endorser or accommodation party governed by lex loci contractus? | 008985.docx | LEGALEASE-00151600-LEGALEASE-00151601 | Condensed, SA | 0.97 | 0 | 1 | 0 | 1 | |
| 14820 | Leavings v. Mills, 175 S.W.3d 301 | 83E+401 | A note may be transferred, however, even if it is not indorsed by the transferee; in that case, the transferee acquires whatever rights the transferor had in the note, but he does not become the holder. See Tex. Bus. & Comm.Code Ann. " 3.201; Waters v. Waters, 498 S.W.2d 236, 241 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.). The transfer of title of a negotiable instrument received by the transferee without indorsement includes "such rights as the transferor has therein." iform Commercial Code, " 3.201:10, at 752). Thus, even if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment. Waters, 498 S.W.2d at 242. A person not identified in a note who is seeking to enforce it as the owner or holder must prove the transfer by which he acquired the note. Jernigan, 803 S.W.2d at 777; Priesmeyer, 917 S.W.2d at 939. An issue of material fact on the issue of ownership of a note is presented when there is an unexplained gap in the chain of title. First Gibraltar Bank, FSB, v. Farley, 895 S.W.2d 425, 428"29 (Tex.App.-San Antonio 1995, writ denied); Jernigan, 803 S.W.2d at 777. | A note may be transferred even if it is not indorsed by the transferee; in that case, the transferee acquires whatever rights the transferor had in the note, but he does not become the holder. V.T.C.A., Bus. & C. S 3.201. | Is endorsement by the transferee necessary for a note to be transferred? | Bills and Notes - Memo 633 - RK_59537.docx | ROSS-003283340-ROSS-003283341 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14821 | Rachbach v. Cogswell, 547 F.2d 502 | 172H+1561 | Rachbach argues that the trial court erred in awarding interest on the unpaid note balance. Rescission is an equitable remedy. Wachtel v. West, 6 Cir., 476 F.2d 1062, 1065, cert. denied 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114; see also Palmer v. Wilson, 9 Cir., 502 F.2d 860, 862. Section 1635(b) says that when an obligor exercises his right to rescind "he is not liable for any finance or other charge." This provision does not preclude a court from doing equity. In its denial of motions to amend findings and grant a new trial, the district court said: "(T)he provision of 15 U.S.C. s 1635(b) with respect to the disallowance of interest or finance charges after rescission is inapplicable to this case because the plaintiff has had the benefit of the use of the loan proceeds and the payment of interest on those loan proceeds is an equitable condition to the right of rescission." | Section of the Truth in Lending Act providing that obligor who exercises right to rescind is not liable for any finance or other charge does not preclude court from doing equity, and no abuse of discretion was shown in the imposition of interest as an equitable condition to the right of rescission of mortgage contract where the borrower had had the benefit of the use of the loan proceeds. Truth in Lending Act, S 125(b) as amended 15 U.S.C.A. S 1635(b). | Is an obligor liable for finance or other charges when exercising the right to rescind? | 013878.docx | LEGALEASE-00151556-LEGALEASE-00151557 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14822 | In re Custody of G.J., 796 N.E.2d 756 | 307A+680 | Courts are denied any jurisdiction over a particular case unless a party with standing is participating in the case. See Pence v. State, 652 N.E.2d 486, 488 (Ind.1995). "An allegation that a party lacks standing is treated as a motion to dismiss under Rule 12(B)(6) of the Indiana Rules of Trial Procedure." Rayle v. Bolin, 782 N.E.2d 1063, 1064 (Ind.Ct.App.2003). "A motion to dismiss tests the legal sufficiency of the claim, not the facts that support it." | A motion to dismiss tests the legal sufficiency of the claim, not the facts that support it. | "Does a motion to dismiss test the legal sufficiency of the claim, not the facts that support it?" | Pretrial Procedure - Memo # 8783 - C - KS_59782.docx | ROSS-003280633-ROSS-003280634 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14823 | Palestroni v. Jacobs, 10 N. J. Super. 266 | 275+142 | Counsel argues this was not a situation in which jurors charged with misbehavior may be heard in their own exculpation as held in Kennedy v. Kennedy, 18 N.J.L. 450 (Sup.Ct.1842); Douglass v. Kabalan, 36 A.2d 140, 22 N.J.Misc. 200 (Sup.Ct.1944); Queen v. Jennings, 93 N.J.L. 353, 108 A. 379 (Sup.Ct.1919). This is so. It does not follow, however, as he contends, that the depositions are to be considered as offered solely to show the verdict was not influenced by the use of the dictionary. True, the depositions did elicit the jurors' testimony whether their verdict was influenced by the definition and it is plain the depositions to that extent were wholly incompetent; it is against the policy of the law to receive the affidavits of jurors to show or explain the reasons or of jurors to show or explain the reasons or the methods of the jurors or any of them "what was put into it". Pulitzer v. Martin S. Ribsam & Sons Co., 18 A.2d 726, 19 N.J.Misc. 233 (Sup.Ct.1941); Hutchinson v. Consumers Coal Co., supra. This is for the same reason of policy which will not receive evidence of jurors to impugn or destroy their verdict, Lindauer v. Teeter, 41 N.J.L. 255 (Sup.Ct.1879), as, for example, to show it was based on a misunderstanding of the court's charge, Bragg v. King, 104 N.J.L. 4, 139 A. 884 (Sup.Ct.1928), or that the jurors had misinterpreted an exhibit, Marconi v. MacElliott, 148 A. 392, 8 N.J.Misc. 69 (Sup.Ct.1910); cf. Peters v. Fogarty, 55 N.J.L. 386, 26 A. 855 (Sup.Ct.1893). | It is against policy of law to receive affidavits of jurors to show or explain reasons or methods of jurors or any of them in giving or consenting to verdict or what was put into it. | Is it against policy of law to receive affidavits of jurors? | Affidavits - Memo 35 - _11Hw8s3UIj1zwnluZDJcro704rRQwH7sv.docx | ROSS-000000168-ROSS-000000169 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 14824 | Leavings v. Mills, 175 S.W.3d 301 | 83E+401 | A note may be transferred, however, even if it is not indorsed by the transferee; in that case, the transferee acquires whatever rights the transferor had in the note, but he does not become the holder. Tex. Bus. & Comm.Code Ann. " 3.201; Waters v. Waters, 498 S.W.2d 236, 241 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.). The transfer of title of a negotiable instrument received by the transferee without indorsement includes " "such rights as the transferor has therein." " iform Commercial Code, " 3.201:10, at 752). Thus, even if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment. Waters, 498 S.W.2d at 242. A person not identified in a note who is seeking to enforce it as the owner or holder must prove the transfer by which he acquired the note. | A note may be transferred even if it is not indorsed by the transferee; in that case, the transferee acquires whatever rights the transferor had in the note, but he does not become the holder. V.T.C.A., Bus. & C. S 3.201. | Can a note be transferred without an indorsement? | 009726.docx | LEGALEASE-00152578-LEGALEASE-00152579 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 14825 | In re Sabertooth, 443 B.R. 671 | 83E+335 | Promissory notes were not "negotiable instruments"where they were subject to other rights and obligations which were stated in other loan documents, making the notes conditional. | Promissory notes were not "negotiable instruments" under Pennsylvania law where they were subject to other rights and obligations which were stated in other loan documents, making the notes conditional. 13 Pa.C.S.A. S 3106(a)(3). | When a note is subject to rights and obligations is it negotiable? | 010697.docx | LEGALEASE-00152584-LEGALEASE-00152585 | Condensed, SA, Sub | 0.21 | 0 | 1 | 1 | 1 | 1 |
| 14826 | Gidden Motor Co. v. Johnston, 155 Miss. 328 | 83E+418 | Nonnegotiable instruments which partake of nature of commercial paper are assignable by indorsement and delivery. Indorsement on nonnegotiable instrument and its delivery has legal effect to transfer absolutely all right, title, and interest of indorser therein, but it does not as to payer or maker of paper operate to convert it into negotiable instrument.Where plaintiff indorsed certificate of guaranteed claim against assets of bank without qualification or restriction, and delivered it to another, and thus gave him indicia of absolute ownership to enable him to use it as collateral for security of loan, assignment by him vested in bona fide assignee for valuable consideration title thereto as against plaintiff.Appeal from Chancery Court, Tunica County; Harvey McGehee, Chancellor.Action by Mrs. E. B. Johnston against the Gidden Motor Company and others. From the decree, defendants appeal. Reversed and rendered. | Nonnegotiable instruments which partake of nature of commercial paper are assignable by indorsement and delivery. | Are nonnegotiable instruments which partake of nature of commercial paper assignable? | 010747.docx | LEGALEASE-00152435-LEGALEASE-00152436 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 14827 | Harry H. White Lumber Co. v. Crocker-Citizens Nat. Bank, 253 Cal. App. 2d 368 | 172H+622 | "The Cober case, supra, was a suit between the maker of a note and a joint payee who had received no benefit from a performance in kind which one of his other joint payees had received in lieu of money from the maker. No question of negotiation5 of the instrument was there involved. Here, the collecting bank was not a party to the sale of lumber products to the subcontractor, joint payee Timberline Roofing Company. The defendant bank's rights, if any, came only through negotiation of the checks. Hence, it is our view that the statutory provisions here applicable are Civil Code, sections 3122 and 3104, rather than sections 3200, subdivision (4), and 1475. "Section 3122 (U.N.I.A., s 41) provided: "Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others." "Section 3104 provided: "When a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." | Where checks were payable to two joint payees, and indorsement of first joint payee was forged on checks by second joint payee, and collecting bank paid the checks, and first joint payee sued collecting bank, applicable sections of Civil Code were those dealing with effect of forged signature and indorsement where instrument is payable to two or more persons, and not section dealing with discharge of negotiable instrument by any act which will discharge simple contract for payment of money, and section providing that obligation in favor of several persons is extinguished by performance rendered to any one of them, except in case of deposit made by owners in common, or in joint ownership. West's Ann.Civ.Code, SS 1475, 3104, 3122, 3200(4). | "Should all insdorse , when there are two or more payees?" | 010754.docx | LEGALEASE-00152467-LEGALEASE-00152468 | Condensed, SA, Sub | 0.45 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14828 | Meyers v. Nicolet Rest. of De Pere, 843 F.3d 724 | 172H+1705 | Moreover, Congress has specifically declared that failure to truncate a card's expiration date, without more, does not heighten the risk of identity theft. In the Credit and Debit Card Receipt Clarification Act of 2007, Congress made a finding of fact that "[e]xperts in the field agree that proper truncation of the card number, by itself as required by the [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." Pub. L. 110"241, " 2(a)(6). Congress was instead quite concerned with the abuse of FACTA lawsuits, finding that "the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit." " 2(a)(7). That is why Congress sought to limit FACTA lawsuits to consumers "suffering from any actual harm." " 2(b). | Customer did not suffer any injury-in-fact from restaurant's violation of Fair and Accurate Credit Transactions Act (FACTA), in which restaurant printed expiration date of customer's credit card on his receipt, and thus customer lacked Article III standing to sue restaurant under FACTA; customer never suffered any concrete harm because restaurant printed his card's expiration date, customer discovered violation immediately, nobody else ever saw receipt, and printing of a card's expiration date, without more, would not heighten risk of identity theft. U.S. Const. art. 3, S 2, cl. 1; Consumer Credit Protection Act S 605, 15 U.S.C.A. S 1681c(g)(1). | Does failure to truncate a credit cards expiration date on receipt lead to a risk of identity theft? | Consumer Credit - Memo 125- IS_60072.docx | ROSS-003280350-ROSS-003280351 | Condensed, SA, Sub | 0.32 | 0 | 1 | 1 | 1 | 1 |
| 14829 | Jordan v. Montgomery Ward & Co., 442 F.2d 78 | 172H+1573 | Consideration of the above legislative history in conjunction with Section 130 supports our conclusion that this section does not confer original subject matter jurisdiction in the federal courts over a claim of violation of the credit advertising provisions of the Act by private individuals. Rather, authority to enforce compliance with the credit advertising requirements is relegated to administrative agencies as provided in section 108 of the Act, 15 U.S.C. " 1607. | Authority to enforce compliance with credit advertising requirements of Truth in Lending Act is relegated to administrative agencies. Truth in Lending Act, SS 108, 141-145, 15 U.S.C.A. SS 1607, 1661-1665. | Can credit advertising requirements be relegated? | 013779.docx | LEGALEASE-00152418-LEGALEASE-00152419 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 14830 | Telles v. Dewind, 140 A.D.3d 1701 | 129+107 | We reject respondent's contention that the evidence did not support the finding that he committed the family offense of disorderly conduct because he did not intend to create a public disturbance. A person is guilty of disorderly conduct "when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof [h]e engages in fighting or in violent, tumultuous or threatening behavior" (Penal Law " 240.20[1] ). The conduct does not have to take place in public, so long as the person recklessly creates a risk of a public disturbance (see Matter of McLaughlin v. McLaughlin, 104 A.D.3d 1315, 1315"1316, 961 N.Y.S.2d 838). Here, the testimony presented at the fact-finding hearing established that respondent, in the parties' home, threw petitioner against a wall, forced his fingers in her mouth and caused bleeding, slapped her face, punched her legs, forcibly touched her vagina, and grabbed her by the hair when she tried to get away, all of which ultimately resulted in petitioner leaving the home with her three children, thereby sufficiently establishing a risk of public disturbance (see Matter of Kiani v. Kiani, 134 A.D.3d 1036, 1037"1038, 22 N.Y.S.3d 520; Matter of Dietzman v. Dietzman, 112 A.D.3d 1370, 1370, 978 N.Y.S.2d 516). That testimony also supports, by a preponderance of the evidence, the court's conclusion that respondent committed the family offenses of reckless endangerment in the second degree, forcible touching, and harassment in the second degree. | Conduct does not have to take place in public in order for a person to be found guilty of disorderly conduct, so long as the person recklessly creates a risk of a public disturbance. McKinney's Penal Law S 240.20(1). | Can a person be held guilty of disorderly conduct if he causes public inconvenience? | Disorderly Conduct- Memo 81- PR_60080.docx | ROSS-003280704-ROSS-003280705 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 14831 | Appeal of City of Nashua, 138 N.H. 261 | 371+2632 | The plaintiffs' burden of proving the general level of assessment, however, does not relieve the city of its preexisting obligation to "use some method to equalize tax assessments to insure proportionality." Appeal of Andrews, 136 N.H. at 63, 611 A.2d at 633 (emphasis added). If a municipality does not use a uniform equalization ratio to ensure proportional assessments, it will have violated its obligation to appraise property fairly for taxation purposes. See RSA 75:1, :8 (1991). "[O]ur constitution mandates that all taxpayers in a town be assessed at the same proportion of [fair market value]." Public Serv. Co. of N.H. v. Town of Seabrook, 133 N.H. 365, 377, 580 A.2d 702, 709 (1990). | In tax abatement cases before State Board of Tax and Land Appeals, municipality must disclose its preferred equalization ratio; if it employs its own uniform ratio to discount properties' fair market values to assessed values, municipality must make good-faith offering of that ratio, as well as methodology by which it computed ratio. RSA 75:1, 75:8. | Is there a constitutional mandate to assess all taxpayers in a town at the same proportion of fair market value of the property? | 018328.docx | LEGALEASE-00152726-LEGALEASE-00152727 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 14832 | Wade v. Moody, 255 Ark. 266 | 200+79.1 | Finally, it is argued that there was insufficient evidence to support the court's finding that the road had not been abandoned. Again, this is a fact question. We shall not abstract the evidence on the point, some of which was concededly offered by both sides. The essential testimony which sustains the finding of the chancellor is that of Robert Taylor, who said people have traveled Ridge Route Road "to the open road over the last sixty years', and that the road has been under care of the county for eight years. There was evidence obstructions placed in the road by appellant had been shortly removed (even the gate had been taken down). Then there was the testimony of Woodrow Bratcher, who testified that since 1962 he had annually graded and dozed the road; and finally, there was evidence that some federal governmental agency had worked on part of the road. On the whole, we are unable to say the chancellor erred in finding no abandonment. Furthermore, the burden of establishing abandonment was on appellant. Once color of title was established by adverse possession, it became incumbent on appellant to show abandonment. Wilson v. Spring, 38 Ark. 181 (1881). | Once color of title to a road was established by adverse possession of the public, it became incumbent on landowner to show abandonment. | Who has the burden of showing abandonment when title by adverse possession is established? | Highways - Memo 236 - RK.docx | LEGALEASE-00041924-LEGALEASE-00041925 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 14833 | Phipps v. United States, 126 Fed. Cl. 674 | 200+79.1 | Under Iowa law, "an established highway may be abandoned by the public and its rights therein lost." Sioux City v. Johnson, 165 N.W.2d 762, 766 (Iowa 1969) (citing Kelroy v. City of Clear Lake, 5 N.W.2d 12; Robinson v. Bd. of Supervisors, 222 Iowa 663, 269 N.W. 921, 923 (1936); Lucas v. Payne, 141 Iowa 592, 120 N.W. 59, 61 (1909)). "There is a presumption, however, that once a highway is shown to exist, it continues to exist, and any abandonment must be proven by clear and satisfactory evidence." Allamakee Cty. v. Collins Trust, 599 N.W.2d 448, 451 (Iowa 1999) (citing Sterlane v. Fleming, 236 Iowa 480, 18 N.W.2d 159, 161 (1945); 39 Am.Jur.2d Highways, Streets, & Bridges " 158, at 692 (1999)). | Under Iowa law, there is a presumption that once a highway is shown to exist, it continues to exist, and any abandonment must be proven by clear and satisfactory evidence. | Is there a presumption that once a highway is shown to exist it continues to exist? | Highways - Memo 240 - RK_60183.docx | ROSS-003279562-ROSS-003279563 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14834 | Joint Highway Dist. No. 13 v. Hinman, 220 Cal. 578 | 200+121 | We are of the view that the Joint Highway District Act does not violate the due process provision of the Federal Constitution (Const. U. S. Amend. 14) in providing for the organization of the district and the method of levying and collecting the tax. The Legislature had full power over the subject-matter of the formation of the district. It delegated this power to the boards of supervisors of the respective counties comprising the district. The construction of the proposed highway is a matter in which the whole community has an interest, and is a typical public purpose for which property may be taxed by the state. Questions relating to spreading the tax are matters which rest in the discretion of the state, and are not controlled by either the due process or the equal protection clause of the Fourteenth Amendment. Memphis, etc., R. Co. v. Pace, 282 U. S. 241, 51 S. Ct. 108, 75 L. Ed. 315, 72 A. L. R. 1096. If the tax can at any time be shown to be palpably arbitrary, thereby amounting to a clear abuse of power, it will fall under the condemnation of the due process clause. Where the difference between the different portions of territory is plain and palpable, the right of the Legislature to recognize that difference and to provide for a difference in taxation cannot be denied without imposing restraints upon the constitutional power of the Legislature, which cannot in reason be justified. Whether there is such a difference would generally be for the Legislature to determine, although it cannot be said that the courts could not, in any possible state of facts, review that determination. Foster v. Pryor, supra, at page 334 of 189 U. S., 23 S. Ct. 549. | Highway construction is "public purpose" for which property may be taxed by state. | Is construction of a proposed highway a typical public purpose for which property may be taxed by the state? | Highways - Memo 328 - RK_60190.docx | ROSS-003279627-ROSS-003279628 | Condensed, Order, SA | 0.95 | 1 | 1 | 0 | 1 | 1 |
| 14835 | Memphis & C. Ry. Co. v. Pace, 282 U.S. 241 | 200+121 | The construction and maintenance of serviceable roads in any community is a matter in which the whole community have an interest and is a typical purpose for which property may be taxed by the state. Missouri Pacific R. R. Co. v. Western Crawford Road District, 266 U. S. 187, 190, 45 S. Ct. 31, 69 L. Ed. 237. Whether the tax shall be state wide or confined to the county or local district wherein the improvement is made, and whether it shall be laid generally on all property or all real property within the taxing unit, or shall be laid only on real property specially benefited, are matters which rest in the discretion of the state, and are not controlled by either the due process or the equal protection clause of the Fourteenth Amendment. County of Mobile v. Kimball, 102 U. S. 691, 703, 26 L. Ed. 238; Spencer v. Merchant, 125 U. S. 345, 355-356, 8 S. Ct. 921, 31 L. Ed. 763; Houck v. Little River District, 239 U. S. 254, 262, 265, 36 S. Ct. 58, 60 L. Ed. 266; Valley Farms Co. v. West chester, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; Missouri Pacific R. R. Co. v. Western Crawford Road District, supra; Kansas City Southern Ry. Co. v. Road Improvement District No. 3, 266 U. S. 379, 386, 45 S. Ct. 136, 69 L. Ed. 335. | Construction and maintenance of serviceable roads is public purpose for which property may be taxed by state. | Is construction of a proposed highway a typical public purpose for which property may be taxed by the state? | 018771.docx | LEGALEASE-00152523-LEGALEASE-00152524 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 14836 | Craig v. Heis, 30 Ohio St. 550 | 200+145 | An assessment levied, under Act March 27, 1867, 64 Ohio Laws, 80, for the construction of a road, is a lien on the land from the time the assessment is made. | An assessment levied, under Act March 27, 1867, 64 Ohio Laws, 80, for the construction of a road, is a lien on the land from the time the assessment is made. | Are assessments for road improvements considered liens? | 018773.docx | LEGALEASE-00152525-LEGALEASE-00152526 | Condensed, SA, Sub | 0 | 0 | 1 | 1 | 1 | 1 |
| 14837 | Unruh v. Purina Mills, 289 Kan. 1185 | 302+48 | Whether a pleading is sufficient to state a cause of action is a question of law. See Tuggle v. Johnson, 190 Kan. 386, 390, 375 P.2d 622 (1962); Ewing v. Pioneer Nat'l Life Ins. Co., 158 Kan. 371, 374, 147 P.2d 755 (1944). Errors in law are subject to unlimited review on appeal. See Alliance Mortgage Co. v. Pastine, 281 Kan. 1266, 1271, 136 P.3d 457 (2006). | Whether a pleading is sufficient to state a cause of action is a question of law. | Is whether a pleading is sufficient to state a cause of action a question of law? | 037891.docx | LEGALEASE-00152192-LEGALEASE-00152193 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 14838 | Zeeb v. Atlas Powder Co., 32 Del. Ch. 486 | 308+92(1) | Except as to acts so peculiarly personal that their performance may not be delegated, or except as to acts regulated by statute which are required to be performed personally, as a general rule an individual may do all acts through an agent which he could do himself. 2 C.J.S., Agency, " 11, p. 1039. The court recognized this rule to be applicable in Re Universal Pictures Co., supra, when it held that there was no requirement of Section 61 that the acts to be performed by a dissenting stockholder be done in person, and that, accordingly, an objection in writing could be made by a stockholder through an agent. | Except as to acts so peculiarly personal that their performance may not be delegated, or except as to acts regulated by statute which are required to be performed personally, generally an individual may do all acts through an agent which he could do himself. | Who can be delegated to an agent? | 041498.docx | LEGALEASE-00152227-LEGALEASE-00152228 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 14839 | In re Lang's Estate, 301 Pa. 429 | 162+518(2) | It is true, as appellant's counsel argues in endeavoring to point out a distinction between that case and the one at bar, that in the cited one the dispute was between an ancillary administratrix appointed in Allegheny county, where an unsealed promissory note belonging to the decedent had been taken by his foreign executor, and an ancillary administrator appointed in Venango county, which was the residence of a debtor, whereas in the one now before us the controversy is between a foreign executor and an ancillary administrator raised here; this difference can have no effect upon the principle announced. The situs of a promissory note is with the owner thereof, wherever he happens to be, and, as the notes here involved were in California, there was no part of the goods and estate of the decedent in Jefferson county when the ancillary letters were granted, and, therefore, they were improperly issued. | Where notes due from residents in state were held by deceased in another state at time of death, ancillary letters of administration were improperly granted in state (20 PS S 341). Act June 7, 1917, P. L. 457, S 2(a), 20 PS S 341, provides that ancillary letters of administration shall be grantable only by register of county where principal part of goods and estate of such decedent within this commonwealth shall be. The situs of the notes was in the other state where the owner thereof died, and there was no part of decedent's estate in county when ancillary letters were granted. | Is the situs of a promissory note with the owner? | 009922.docx | LEGALEASE-00153684-LEGALEASE-00153685 | Condensed, SA, Sub | 0.36 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14840 | Haywood v. Ryan, 85 N.J.L. 116 | 129+108 | The presence of a large crowd on a public street may be accounted for in many ways, but if it can be said that whenever a person who is walking along a public highway, quietly and peaceably, shall be followed by a crowd, that he may be adjudged to be a disorderly person upon the ground that he is obstructing or interfering with other persons upon such street, then almost every person having something more than a local reputation sufficient to arouse the curiosity of the public would be liable to be apprehended as a disorderly person. No such construction has ever been given to this law and, in my judgment, never should, for it is intended to apply only to such as shall, by their acts, intentionally obstruct or interfere with the movement of persons lawfully on the street. This conviction has not the slightest evidence to support the judgment that this defendant was at the time complained of a disorderly person. | That a person walking along a public street in a peaceable manner is followed by a crowd does not make him a disorderly person in violation of Act Concerning Disorderly Persons, S 3. | "Is a person walking along a public highway, quietly and peacefully followed by a crowd, a disorderly person?" | 014391.docx | LEGALEASE-00153420-LEGALEASE-00153421 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 14841 | Ishimatsu v. Regents of Univ. of Cal., 266 Cal. App. 2d 854 | 141E+1010 | Although article IX, section 9, of the California Constitution does not specifically refer to judicial powers, the language "with full powers of organization and government" and "all the powers necessary or convenient for the effective administration of its trust * * *" necessarily includes the delegation of such powers. The only limitation placed on the regents in the administration of the University is "subject only to such legislative control as may be necessary to insure compliance with the terms of the endowments of the university * * *" It is therefore concluded that the University is a statewide administrative agency possessing adjudicatory powers derived from the Constitution as to the problems and purposes of its personnel. The trial court correctly limited its review to a determination that there was substantial evidence supporting the hearing officer's recommendation and the final decision by the president. (See Newmarker v. Regents of Univ. of Cal., supra, 160 Cal.App.2d 640, 325 P.2d 558; Boren v. State Personnel Board, supra, 37 Cal.2d 634, 234 P.2d 981; Bertch v. Social Welfare Dept., 45 Cal.2d 524, 529, 289 P.2d 485.) | University is "statewide administrative agency" within meaning of government code and possesses adjudicatory powers derived from constitution as to problems and purposes of its personnel. West's Ann.Const. art. 9, S 9; West's Ann.Gov.Code, S 11000 et seq. | Is a university a statewide administrative agency? | 016764.docx | LEGALEASE-00153760-LEGALEASE-00153761 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 14842 | Dinu v. President & Fellows of Harvard Coll., 56 F. Supp. 2d 129 | 141E+1166 | The contract which the students allege was breached is based on a Handbook for Students, published by the College and issued to each student admitted to study. The 1998"1999 Handbook, as its preface states, "contains a concise review of the rules and procedures of Harvard College with which students are expected to be familiar," including for present purposes, the specific requirements for an arts or sciences degree and a description of disciplinary procedures and sanctions tied to infractions of the College's code of conduct. That the relationship between a university and its students has a strong, albeit flexible, contractual flavor is an idea pretty well accepted in modern case law. See, e.g., Mangla v. Brown University, 135 F.3d 80, 83 (1st Cir.1998). So too, is the proposition that a student handbook, like the occasional employee handbook, can be a source of the terms defining the reciprocal rights and obligations of a school and its students. See Corso v. Creighton University, 731 F.2d 529, 532"533 (8th Cir.1984). Cf. O'Brien v. New England Telephone & Telegraph Co., 422 Mass. 686, 692"693, 664 N.E.2d 843 (1996). | Student handbook can be source of terms defining reciprocal rights and obligations of university and its students. | "Can student handbook, like the occasional employee handbook, be a source of the terms defining the reciprocal rights and obligations of a school and its students?" | Education - Memo # 219 - C - KS_61004.docx | ROSS-003280100-ROSS-003280101 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 14843 | Phillip C. ex rel. A.C. v. Jefferson Cty. Bd. of Educ., 701 F.3d 691 | 141E+867 | School districts have a natural advantage in information and expertise, but Congress addressed this when it obliged schools to safeguard the procedural rights of parents and to share information with them .... [Parents] have the right to an independent educational evaluation of the[ir] child. The regulations clarify this entitlement by providing that a parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency. IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition. | Regulation stating that parent of disabled student has right to independent educational evaluation (IEE) at public expense if parent disagrees with evaluation obtained by public agency does not exceed scope of Individuals with Disabilities Education Act (IDEA), as would render regulation invalid; although IDEA section stating that parent must have opportunity to obtain IEE of child does not expressly state that parent is to be reimbursed for cost of IEE, separate IDEA section expressly requires Secretary of Education to preserve any IDEA regulation that existed as of July 20, 1983, and one of the regulations in effect at that time expressly provided to parents right to IEE at public expense, and subsequent to 1983, Congress reauthorized IDEA on three separate occasions without altering parent's right to publicly financed IEE. Individuals with Disabilities Education Act, SS 607(b)(2), 615(b), 20 U.S.C.A. SS 1406(b)(2), 1415(b); 34 C.F.R. S 300.502. | What is the take of Congress on Parent's rights under Individuals with Disabilities Education Act? | 017060.docx | LEGALEASE-00152828-LEGALEASE-00152829 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 14844 | Sprik v. Regents of Univ. of Michigan, 43 Mich. App. 178 | 141E+990 | We also find no merit in plaintiffs' contentions that defendant needs legislative authority to make these payments and that its action intrudes on the Legislature's power to tax. Const.1963, art. 9, s 1; Lucking v. People, 320 Mich. 495, 504, 31 N.W.2d 707 (1948). The University is a constitutionally established corporation. Const.1963, art. 8, s 5. Its powers are separate and distinct from those of the Legislature. Weinberg v. Regents, Supra. Not being a legislative creature, it does not need legislative approval of its expenditures. Weinberg v. Regents, Supra; Sterling v. Regents, Supra; Board of Regents of the University of Michigan v. Auditor General, 167 Mich. 444, 132 N.W. 1037 (1911). This being the case, in the absence of a waiver, there is no basis for finding that defendant has encroached on the Legislature's power to tax. | Powers of the University of Michigan are separate and distinct from those of the legislature, and, not being a legislative creature, it does not need legislative approval of its expenditures. M.C.L.A.Const.1963, art. 8, S 5. | Does a university need legislative approval for expenditures? | 017072.docx | LEGALEASE-00152876-LEGALEASE-00152877 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14845 | Sprik v. Regents of Univ. of Michigan, 43 Mich. App. 178 | 141E+990 | We also find no merit in plaintiffs' contentions that defendant needs legislative authority to make these payments and that its action intrudes on the Legislature's power to tax. Const.1963, art. 9, s 1; Lucking v. People, 320 Mich. 495, 504, 31 N.W.2d 707 (1948). The University is a constitutionally established corporation. Const.1963, art. 8, s 5. Its powers are separate and distinct from those of the Legislature. Weinberg v. Regents, Supra. Not being a legislative creature, it does not need legislative approval of its expenditures. Weinberg v. Regents, Supra; Sterling v. Regents, Supra; Board of Regents of the University of Michigan v. Auditor General, 167 Mich. 444, 132 N.W. 1037 (1911). This being the case, in the absence of a waiver, there is no basis for finding that defendant has encroached on the Legislature's power to tax. | Powers of the University of Michigan are separate and distinct from those of the legislature, and, not being a legislative creature, it does not need legislative approval of its expenditures. M.C.L.A.Const.1963, art. 8, S 5. | Does a university need legislative approval of its expenditures? | 017095.docx | LEGALEASE-00153732-LEGALEASE-00153733 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 14846 | Chennault v. Sager, 187 Mont. 455 | 200+77(2) | We decline to adopt the interpretation advanced by appellants. Adopting that interpretation would force us to exceed our proper role in the construction of statutes. The role of a court in construing a statute is simply to ascertain and declare its substance and not to insert what has been omitted. Section 1-2-101, MCA. In this connection, the legislative intent to the statute is to be pursued if possible. Section 1-2-102, MCA. Here, the statute simply states that the petition must contain, as one alternative, the signatures of a "majority of freeholders of the road district." The statute does not say "a majority of those directly affected." Nor is there any legislative intent expressed that this was the desire of the legislature. | Within the statute governing abandonment of county roads, requiring petition to contain signatures of either ten persons or a majority of freeholders of road district where abandonment is sought, the alternative of the majority of freeholders of the road district cannot be interpreted as meaning a majority of those directly affected, even if size of the road district is such that compliance with the second alternative is impossible. MCA 7-14-2601. | Does the statue state that the petition must contain the signature of a majority of freeholders of the road district? | Highways-Memo 357-SB_60751.docx | ROSS-003294312-ROSS-003294313 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 14847 | Seiser v. Maggard, 457 S.W.2d 678 | 302+21 | The counterclaim stated a cause of action. Baker v. Lamar, Mo.Sup., 140 S.W.2d 31. The defendant claimed superior right, title and interest in the same property described in plaintiff's petition for quiet title. This Court has held that where a party sets up title in himself he is entitled to an adjudication of his existing title; and if he had no title, the Court should so adjudge or decree. Pettus v. City of St. Louis, 362 Mo. 603, 242 S.W.2d 723. This applied to defendants who may counterclaim or cross claim. If defendant sets up title in herself in her cross action, she is entitled to an adjudication of her existing title and if she has no title, the Court shall so adjudge or decree. Ridenour v. Duncan, Mo.Sup., 246 S.W.2d 765. Deeds v. Foster, Mo.Sup., 235 S.W.2d 262. The defendant's counterclaim may have been inconsistent with the answer defendant filed; however, defendant is not required to rely upon plaintiff's statement in plaintiff's petition to state a cause of action for defendant; the defendant may state his own claim, in his own words, in his counterclaim. This Court has ruled that under present day practice and pleading, regardless of consistency, a party may set forth his claim. Boyd v. Margolin, Mo.Sup., 421 S.W.2d 761, Civil Rules 55.06 and 55.12, V.A.M.R. It was error for the Court to strike the defendant's counterclaim. | Under present-day practice and pleading, regardless of consistency, party may set forth his claim. V.A.M.R. Civil Rules 55.06, 55.12. | "Can a party set forth his claim, regardless of consistency?" | 023698.docx | LEGALEASE-00153107-LEGALEASE-00153108 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 14848 | Pentecostal Holiness Church v. Mauney, 270 So. 2d 762 | 302+24 | This defense deals with construction of the contract. Construction of a contract is always a question of law for the court, 7 Fla.Jur., Contract, s 73. Questions of law may be determined on a motion for summary judgment; however, just because this defense presented a question of law was not grounds to strike it as a defense. Statute of limitations and statute of frauds are things which must be affirmatively pleaded, but pose questions of law. Motion to strike is intended to remedy pleading defects such as redundancy, immateriality, impertinency, scandalous or sham matter. Sham pleadings are those which are inherently false and must have been known by the interposing party to be untrue. | "Sham pleadings" are those which are inherently false and must have been known by interposing party to be untrue. | Are sham pleadings those which must have been known by the interposing party to be untrue? | 023700.docx | LEGALEASE-00153247-LEGALEASE-00153248 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14849 | Nelson v. Hillsborough Cty., 189 So. 3d 1037 | 104+213.5(1) | "In ruling on a motion to dismiss, the trial court must confine itself to the four corners of the complaint, accept the allegations of the complaint as true, and construe the allegations in the light most favorable to the plaintiff." Brooke v. Shumaker, Loop & Kendrick, LLP, 828 So.2d 1078, 1080 (Fla. 2d DCA 2002). | Dismissal of personal injury action against the county for claimant's failure to comply with the statutory notice requirements for a tort claim against the State or any of its agencies or subdivisions was erroneous, where trial court determined that the claimant's allegation that notice was provided was insufficient because it did not provide a date for such notice or attach the letter to the complaint, and in reaching this conclusion the court looked outside the four corners of the complaint, pressing counsel as to what evidence of notice claimant would be able to produce. West's F.S.A. S 768.28(6)(b); West's F.S.A. RCP Rule 1.120(c). | "For purposes of ruling on a motion to dismiss, can the trial court look no further than the four corners of the complaint?" | 038059.docx | LEGALEASE-00153201-LEGALEASE-00153202 | Condensed, SA, Sub | 0.51 | 0 | 1 | 1 | 1 | 1 |
| 14850 | Granite State Ins. Co. v. Transatlantic Reinsurance Co., 132 A.D.3d 479 | 307A+680 | In moving to dismiss an affirmative defense pursuant to CPLR 3211(b), the plaintiff bears the heavy burden of showing that the defense is without merit as a matter of law (534 E. 11th St. Hous. Dev. Fund Corp. v. Hendrick, 90 A.D.3d 541, 541, 935 N.Y.S.2d 23 [1st Dept.2011] ). The allegations set forth in the answer must be viewed in the light most favorable to the defendant (182 Fifth Ave. v. Design Dev. Concepts, 300 A.D.2d 198, 199, 751 N.Y.S.2d 739 [1st Dept.2002] ), and "the defendant is entitled to the benefit of every reasonable intendment of the pleading, which is to be liberally construed" (534 E. 11th St., 90 A.D.3d at 542, 935 N.Y.S.2d 23). Further, the court should not dismiss a defense where there remain questions of fact requiring a trial. | The court should not dismiss a defense where there remain questions of fact requiring a trial. McKinney's CPLR 3211(b). | Should the court not dismiss a defense where there remain questions of fact requiring a trial? | Pretrial Procedure - Memo # 8982 - C - UG_60646.docx | ROSS-003282431 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 14851 | Jensen v. Doherty, 101 Idaho 910 | 307A+581 | Involuntary dismissal under I.R.C.P. 41(b) for failure to prosecute is in the nature of a sanction. It is a necessary final recourse available to the court to protect its processes and other litigants from abuse. It is a remedy to be sparingly used, but it is always available. See, e. g., 9 Wright & Miller, Federal Practice and Procedure, Civil s 2370 (1971). | Dismissal for failure to prosecute is a remedy to be sparingly used, but it is always available. Rules of Civil Procedure, Rule 41(b). | "Is dismissal for failure to prosecute a remedy to be sparingly used, but always available?" | Pretrial Procedure - Memo # 9168 - C - KI_60479.docx | ROSS-003284728-ROSS-003284729 | Condensed, SA, Sub | 0.63 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14852 | McMillan v. Wells, 924 S.W.2d 33 | 307A+581 | In Missouri the law disfavors the dismissal of causes because of failure to prosecute. Horobec v. Mueller, 628 S.W.2d 942, 944 (Mo.App.1982); see also Waldorf Inv. Co. v. Farris, 918 S.W.2d 915, 919 (Mo.App.1996)."[T]he law favors trial on the merits." State ex rel. Highway and Transp. Comm'n v. Moulder, 726 S.W.2d 812, 813 (Mo.App.1987). "The trial court has the inherent power to enter a judgment of dismissal, on its own motion, for failure to prosecute." Laubinger v. Missouri State Highway Comm'n, 726 S.W.2d 355, 356 (Mo.App.1987); Bindley v. Metropolitan Life Ins. Co., 335 S.W.2d 64, 69 (Mo.1960). Any defendant may move for an involuntary dismissal in a civil action for failure of the plaintiff to prosecute a cause of action. Rule 67.03. | Missouri law disfavors dismissal of causes for failure to prosecute; law favors trial on merits. | Does law disfavor dismissal of causes for failure to prosecute? | Pretrial Procedure - Memo # 9196 - C - BP_60504.docx | ROSS-003278446-ROSS-003278447 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14853 | Murphy v. Stonewall Kitchen, 503 S.W.3d 308 | 307A+683 | Appellate courts review a trial court's grant of a motion to dismiss de novo. Ward v. W. Cnty. Motor Co., Inc., 403 S.W.3d 82, 84 (Mo. banc 2013). A motion to dismiss for failure to state a claim tests the adequacy of a plaintiff's petition. Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 306 (Mo. banc 1993). The petition is reviewed in an almost academic manner to determine if the plaintiff has alleged facts that meet the elements of a recognized cause of action or of a cause that might be adopted in that case. Id. The facts alleged in the petition are assumed to be true and are construed liberally in favor of the plaintiff. Ward, 403 S.W.3d at 84. If the facts pleaded and reasonable inferences to be drawn therefrom, looked at most favorably from the plaintiff's standpoint, show any ground upon which relief can be granted, the plaintiff has a right to proceed. Euge v. Golden, 551 S.W.2d 928, 931 (Mo. App. 1977). Indeed, under principles of modern pleading, a petition is not to be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id | The facts alleged in the petition are assumed to be true and are construed liberally in favor of the plaintiff on a motion to dismiss for failure to state a claim. | Are the facts alleged in a petition assumed to be true and construed liberally? | 038429.docx | LEGALEASE-00153111-LEGALEASE-00153112 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14854 | Stubl v. T.A. Sys., 984 F. Supp. 1075 | 308+81(5) | The law in Michigan is that sales agents are entitled to post-termination commissions for sales they procured during their time at the former employer. In Michigan, as well as in most jurisdictions, the agent is entitled to recover his commission whether or not be [sic] has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale. Reade v. Haak, 147 Mich. 42, 110 N.W. 130; Case v. Rudolph Wurlitzer Co., 186 Mich. 81, 152 N.W. 977; MacMillan v. C. & G. Cooper Co., 249 Mich. 594, 229 N.W. 593. | Under Michigan law, sales agents are entitled to post-termination commissions for sales they procured during their time at former employer. | Are sales agents entitled to post-termination commissions? | Principal and Agent - Memo 265 - KC_60661.docx | ROSS-003280592 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 14855 | Bailey v. Worton, 752 So. 2d 470 | 308+92(1) | Looking, as we are required, at the evidence in a light most favorable to the chancery court's findings in favor of Worton, there is ample evidence to support its conclusion that Sandra Ray was clothed with the apparent authority to bind Bailey. Considering the first prong of the test, we look at the acts or conduct of Bailey, the principal, which indicate the agent's authority. The authority of an agent to bind his principal rests upon the powers conferred upon him by the principal. Gulfport & Mississippi Coast Traction Co. v. Faulk, 118 Miss. 894, 901, 80 So. 340, 341 (1919). Bailey's testimony itself, standing on its own, indicates the infinite authority he bestowed upon Sandra Ray. In an apparent effort to detach himself from Ray, he stated that he had no involvement in the house, that it was "Sandra's house." This was corroborated to a substantial degree by Wendy Hill's testimony that Bailey told her that the Rays were responsible for ordering all of the materials for the house as well as the testimony revealing that Bailey was not involved in any way with the Rays contract with the Hills to purchase the house. Bailey was also not involved in the contract with Worton Paving for the driveway. As stated in the discussion of the first issue, Bailey had delegated ultimate authority to Sandra Ray for the construction of the house and his lack of involvement is conduct demonstrating this. | Authority of an agent to bind his principal rests upon the powers conferred upon him by the principal. | Does the authority of an agent to bind his principal rest upon the power conferred upon him by the principal? | Principal and Agent - Memo 305 - KC_60666.docx | ROSS-003280359-ROSS-003280360 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 14856 | Osgood's Adm'rs v. Artt, 17 F. 575 | 83E+525 | It is a settled doctrine of the law-merchant that the bona fide purchaser for value of negotiable paper, payable to order, if it be indorsed by the payee, takes the legal title unaffected by any equities which the payor may have as against the payee. | By the rules of the law merchant, the purchaser of negotiable paper payable to order, unless it be indorsed by the payee, takes subject to any defense which the payor has against the payee. He becomes, in such case, only the equitable owner of the debt or claim evidenced by the security. | Does a bona fide purchaser for value of negotiable paper that is indorsed by the payee take legal title unaffected by any equities the payor has against the payee? | 009776.docx | LEGALEASE-00154731-LEGALEASE-00154732 | Condensed, SA, Sub | 0.13 | 0 | 1 | 1 | 1 | 1 |
| 14857 | Boyd v. Am. Bank of Commerce at Wolfforth, 872 S.W.2d 29 | 8.30E+183 | In construing the promissory notes, our primary objective is to ascertain and give effect to the true intention of the parties. To this end, we must examine the entire writing, seeking as best we can to harmonize and give effect to all the provisions in the notes so that none will be rendered meaningless. Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513. | In construing promissory notes, court's primary objective is to ascertain and give effect to true intentions of the parties, seeking to give effect to all the provisions in notes so that none will be rendered meaningless. | Should the intention of parties be given effect when interpreting a promissory note? | Bills and Notes - Memo 999 - IS RK_61318.docx | ROSS-003321174-ROSS-003321175 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 14858 | Mathis v. DCR Mortg. III Sub I, 389 S.W.3d 494 | 8.30E+184 | Here, the note and the deed of trust must be construed together because they were executed by the same parties on the same day, they pertain to the same real property, each document references the other, and the deed of trust is identified as the security for the note. Adams v. First National Bank of Bells/Savoy, 154 S.W.3d 859,The Cadle Co. v. Butler, 951 S.W.2d 901. The rules of interpretation that apply to contracts also apply to notes and deeds of trust. Starcrest Trust v. Berry, 926 S.W.2d 343; see also Sonny Arnold, Inc. v. Sentry Savings Assoc., 633 S.W.2d 811(a mortgage is governed by the same rules of interpretation that apply to contracts); Edlund v. Bounds, 842 S.W.2d 719("It is well established in Texas that the rules of construction governing contracts are applicable to notes, and a note must be constructed as a whole."). A court's primary duty in construing a note and deed of trust, as when construing a contract, is to ascertain the parties' intent from the instrument's language. | A court's primary duty in construing a note and deed of trust, as when construing a contract, is to ascertain the parties' intent from the instrument's language. | Should the intention of parties be given effect when interpreting a promissory note? | 009992.docx | LEGALEASE-00154695-LEGALEASE-00154696 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14859 | Wilson Courts Tenants Ass'n v. 523-525 Mellon St., 924 A.2d 289 | 307A+680 | Judgment on the pleadings may be granted only if, on the facts as so admitted, the moving party is clearly entitled to judgment."2 Bennings Assocs. v. Joseph M. Zamoiski Co., 379 A.2d 1171, 1173 (D.C.1977). "In considering such a motion the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Id. (citation omitted). "A motion for judgment on the pleadings should not be granted where there is a genuine issue of material fact." Id. (citing Amberger & Wohlfarth, Inc. v. District of Columbia, 300 A.2d 460 (D.C.1973)). "Our review of the grant of judgment under Rule 12(c) is de novo." Id. | A motion for judgment on the pleadings should not be granted where there is a genuine issue of material fact. Civil Rule 12(c). | Should a motion for judgment on the pleadings not be granted where there is a genuine issue of material fact? | 038130.docx | LEGALEASE-00154807-LEGALEASE-00154808 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 14860 | Montgomery Cty. v. Fuqua, 22 S.W.3d 662 | 307A+561.1 | Appellant further argues under issue one that appellees' causes of action are barred by the statute of limitations. Section 51.014(a), the interlocutory appeals statute, does not authorize us to hear an appeal based on a statute of limitations defense. See tex. Civ. Prac. & Rem.Code " 51.014(a). Further, limitations is a well recognized affirmative defense. tex.R. Civ. P. 94; Texacadian Energy v. Lone Star Energy Storage Inc., 829 S.W.2d 369, 371 (Tex.App."Corpus Christi 1992, writ denied). Affirmative defenses are "pleas in bar," and do not provide a justification for summary dismissal on the pleadings. Kelley v. Bluff Creek Oil Company, 158 Tex. 180, 309 S.W.2d 208, 214"15 (1958); Union Pacific Fuels, Inc. v. Johnson, 909 S.W.2d 130, 134 (Tex.App."Houston [14th Dist.] 1995, no writ). We are without jurisdiction to consider the County's limitations argument in this interlocutory appeal | Affirmative defenses are "pleas in bar," and do not provide a justification for summary dismissal on the pleadings. | Do affirmative defenses provide a justification for summary dismissal on the pleadings? | 038451.docx | LEGALEASE-00154495-LEGALEASE-00154496 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14861 | Univ. of Houston v. Elthon, 9 S.W.3d 351 | 302+78 | There exists a long line of cases demonstrating that a motion for summary judgment is the proper avenue for raising the statute of limitations defense under the Texas Whistleblower Act. See Rhodes v. City of Plano, 991 S.W.2d 479, (Tex.App.-Fort Worth 1999, no pet.); Anders v. Weslaco Independent School Dist., 960 S.W.2d 289, (Tex.App.-Corpus Christi 1997, no pet.); Turner v. Richardson Indep. School Dist., 885 S.W.2d 553, 560 (Tex.App.-Dallas 1994, writ denied); Hockaday v. T.D.C.J., 914 F.Supp. 1439, 1444 (S.D.Tex.1996); see also Beiser v. Tomball Hosp. Authority, 902 S.W.2d 721, 724"25 (Tex.App.-Houston [1st Dist.] 1995, writ denied) (citing HOUSE COMM. ON LABOR AND EMPLOYMENT RELATIONS, BILL ANALYSIS, H.B. 1405, 71st Leg., R.S. (1989)). The statute of limitations constitutes an affirmative defense and is not basis for sustaining a plea to jurisdiction. See Tex.R. Civ. P. 94. Affirmative defenses are pleas in bar, and do not provide a justification for summary dismissal on the pleadings.Kelley v. Bluff Creek Oil Company, 158 Tex. 180, 309 S.W.2d 208, 214"15 (1958); Union Pacific Fuels, Inc. v. Johnson, 909 S.W.2d 130, 134 (Tex.App.-Houston [14th Dist.] 1995, no writ); State v. Narvaez, 900 S.W.2d 846, 847 (Tex.App.-Corpus Christi 1995, no writ). Because the proper method for asserting appellants' statute of limitations defense is in a motion for summary judgment, we overrule appellants' second point of error and affirm the judgment of the trial court | Affirmative defenses are pleas in bar, and do not provide a justification for summary dismissal on the pleadings. | Do affirmative defenses provide a justification for summary dismissal on the pleadings? | Pretrial Procedure - Memo # 9238 - C - SJ.docx | LEGALEASE-00043959-LEGALEASE-00043960 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14862 | City of Los Angeles v. Gleneagle Dev. Co., 62 Cal. App. 3d 543 | 307A+594.1 | Although discretion is vested in the trial judge, that discretion is not unfettered. It cannot be exercised arbitrarily, but must be an impartial discretion to be exercised in conformity with the spirit of the law and in a manner to subserve the ends of substantial justice. (Paul W. Speer, Inc. v. Superior Court (1969) 272 Cal.App.2d 32, 77 Cal.Rptr. 152.) And, under circumstances indicating a reasonable excuse for delay, dismissal will be reversed. (Brown v. Superior Court (1970) 7 Cal.App.3d 366, 368, 86 Cal.Rptr. 670.) ". . . the power to dismiss should be used "in view of the facts of the entire situation," taking into account any unusual circumstances, and acting to promote substantial justice. . . ." (Elliano v. Assurance Co. of America (1975) 45 Cal.App.3d 170, 176, 119 Cal.Rptr. 653, 658.) Dismissal is only mandated when there is an entire absence of any showing of good cause for delay.(Applegate Drayage Co. v. Municipal Court (1972) 23 Cal.App.3d 628, 100 Cal.Rptr. 400, quoting from Denham v. Superior Court, supra, 2 Cal.3d 557, 468 P.2d 193 and Woolfson v. Personal Travel Service, Inc., supra, 3 Cal.3d 909, 92 Cal.Rptr. 286, 479 P.2d 646.) | Dismissal for want of prosecution is only mandated when there is an entire absence of any showing of good cause for delay. | Is dismissal only mandated when there is an entire absence of any showing of good cause for delay? | 038808.docx | LEGALEASE-00154089-LEGALEASE-00154090 | SA, Sub | 0.9 | 0 | 0 | 1 | 1 | |
| 14863 | Ritter v. Aetna Cas. & Sur. Co., 686 S.W.2d 563 | 307A+581 | A trial court on the motion of a defendant or on its own motion may dismiss an action for failure to prosecute. Rule 67.02. Such is an involuntary dismissal. | A trial court on the motion of defendant or on its own motion may dismiss an action for failure to prosecute, such being an involuntary dismissal. V.A.M.R. 67.02, 67.03. | Can a court on the motion of defendant or on its own motion dismiss an action for failure to prosecute? | Pretrial Procedure - Memo # 9475 - C - SB_61088.docx | ROSS-003296333-ROSS-003296334 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |
| 14864 | Unemployment Comp. Div. of Employment Sec. Bureau v. Bjornsrud, 261 N.W.2d 396 | 307A+581 | Under Federal interpretations of Rule 41(b), no settled guidelines have evolved as to sufficient proof of failure to prosecute, but each case depends upon its own particular facts and circumstances. Navarro v. Chief of Police, Des Moines, Iowa, 523 F.2d 214 (8th Cir. 1975). Dismissal for lack of prosecution is a harsh remedy and should be resorted to only in extreme cases, since the policy of the law is to favor hearing of a litigant's claim upon the merits. Marshall v. Sielaff, 492 F.2d 917 (3d Cir. 1974). We also have often overlooked violations of rules in order to allow trials on the merits. Halverson v. Pet, Inc., 260 N.W.2d 11 (N.D.1977); Gerhardt v. Fleck, 251 N.W.2d 764 (N.D.1977). It is not the duty of the defendant to urge the plaintiff and his counsel to move quickly for trial; instead, the responsibility is on the plaintiff and his attorney. | Dismissal for lack of prosecution is a harsh remedy and should be resorted to only in extreme cases. | Is dismissal for lack of prosecution a harsh remedy to be resorted to only in extreme cases? | Pretrial Procedure - Memo # 9513 - C - NC_61104.docx | ROSS-003283566-ROSS-003283567 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14865 | Zeis v. Fruehauf Corp., 56 Wis. 2d 486 | 307A+581 | Plaintiff's contention would lead to the conclusion that, once a notice of trial had been filed, a suitor could sit back and delay indefinitely before proceeding further and that many years later, when the issues had grown stale and witnesses had disappeared, could successfully resist an order dismissing his action. Public policy requires the dismissal of stale lawsuits which have not been adequately prosecuted. The filing of notice for trial in no way relieves a suitor of his obligation to take affirmative steps for the prompt resolution of lawsuits. | Public policy requires dismissal of stale lawsuits which have not been adequately prosecuted. | Does public policy require dismissal of stale lawsuits which have not been adequately prosecuted? | 039189.docx | LEGALEASE-00154779-LEGALEASE-00154780 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14866 | NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572 | 308+92(1) | Actual authority to act on behalf of another requires three elements: (1) the principal's manifest consent to have the person act as its agent; (2) the agent's manifest consent to the arrangement; and (3) the principal's control over the agent's actions. Medtech Corp. v. Indiana Ins. Co., 555 N.E.2d 844, 850 (Ind.App.1990). | Under law of Indiana, "actual authority" to act on behalf of another requires principal's manifest consent to have person act as its agent, agent's manifest consent to arrangement, and principal's control over agent's actions. | What are the elements of actual authority in the context of agency relationship? | 041533.docx | LEGALEASE-00154121-LEGALEASE-00154122 | Condensed, SA, Sub | 0.29 | 0 | 1 | 1 | 1 | 1 |
| 14867 | Fisser v. Int'l Bank, 164 F. Supp. 826 | 308+183(1) | Respondent opposes on the ground that "in admiralty, the party entitled to relief should always be made libelant." Fretz v. J. C. Bull & Co., 1851, 12 How. 466, 468, 13 L.Ed. 1068. Respondent argues, therefore, that the libel was originally brought by the improper party and that, if the amendment is permitted, the effect will be that a new action will be commenced against it at a time when it is no longer amenable to service of process in this District. The rule of the Fretz case, however, as was recognized in the decision, does not obtain in "particular cases." 12 How. 468.1 One exception to that rule is the "well-recognized practice in the admiralty that the agent of an absent owner of cargo may assert in his own name his principal's right of action." Aunt Jemima Mills Co. v. Lloyd Royal Belge, 2 Cir., 1929, 34 F.2d 120, 121. See also, Cragin & Co. v. International S.S. Co., 2 Cir., 1926, 15 F.2d 263; Pipe v. The La Salle, D.C.S.D.N.Y.1943, 49 F.Supp. 662. | Agent of an absent owner of cargo may assert in his own name his principal's right of action. | "Under admiralty law, can an agent assert in his own name the principals right of action?" | Principal and Agent - Memo 324 - KC_61257.docx | ROSS-003295073 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14868 | United States v. Orozco-Santillan, 903 F.2d 1262 | 377E+12(1) | A threat has been defined for application in other statutes as "an expression of an intention to inflict evil, injury, or damage on another." United States v. Gilbert, 884 F.2d 454, 457 (9th Cir.1989) (quoting Webster's Third New International Dictionary at 2382) (applying 42 U.S.C. " 3631, which prohibits interference with housing rights by force or threat of force), cert. denied, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1044 (1990). Alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners. Id. (citing United States v. Mitchell, 812 F.2d 1250, 1255 (9th Cir.1987) (applying 18 U.S.C. " 871, which governs threats to assault or kill the President)); accord United States v. Merrill, 746 F.2d 458, 462"63 (9th Cir.1984), (applying 18 U.S.C. " 871) cert. denied, 469 U.S. 1165, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985); Roy v. United States, 416 F.2d at 876 (applying 18 U.S.C. " 871). "The fact that a threat is subtle does not make it less of a threat." Gilbert, 884 F.2d at 457. | Alleged threats should be considered in light of their entire factual context, including surrounding events and reaction of listeners. 18 U.S.C.A. S 115. | What should alleged threats be considered in light of? | Threats - Memo #65 - C - LB_61266.docx | ROSS-003280555-ROSS-003280556 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 14869 | United States v. Heard, 709 F.3d 413 | 350H+66 | In subsequently imposing a 151"month sentence for the bribery count, the district court adhered to the sentencing procedure contemplated by " 5G1.2 of the Guidelines. Section 5G1.2 provides that when there are multiple counts of conviction, the sentence imposed on each count shall be equal to the total punishment, in this case 151 months, unless a count is subject to a statutory maximum or minimum sentence. That section further provides that "[i]f the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently." That is precisely what occurred in this case since the statutory maximum for the bribery count was 180 months of imprisonment. However, even if there had been no bribery count, the district court was authorized to order consecutive sentences on the other counts up to the total punishment of 151 months of imprisonment. In short, the district court committed no error, let alone plain error, in sentencing Heard to 151"months in prison, with or without the bribery conviction. Heard does not discuss or even cite " 5G1.2 of the Guidelines | Imposition of within-Guidelines sentence of 151 months for conviction of aiding and abetting bribery of a public official was proper; Guidelines range was 151-188 months, and since there were multiple counts of conviction including conspiracy, tax evasion, subscribing false tax returns, and corrupt interference with internal revenue laws, court was authorized to impose sentence on count carrying the highest statutory maximum of 180 months. 18 U.S.C.A. SS 201(b)(1), 3553(a); U.S.S.G. SS 3D1.4, 5G1.2, 18 U.S.C.A. | How should the court impose sentences when there are multiple counts of conviction? | 011119.docx | LEGALEASE-00154884-LEGALEASE-00154885 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 14870 | Forney 921 Lot Dev. Partners I v. Paul Taylor Homes, Ltd., 349 S.W.3d 258 | 156+52.15 | Quasi-estoppel (estoppel by contract) is a term applied to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits. Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd., 817 S.W.2d 160, 164 (Tex.App.-Houston [14th Dist.] 1991, no writ). It is a long-standing doctrine applied to preclude contradictory positions: it precludes a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken. Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 864 (Tex.2000); see Schauer v. Von Schauer, 138 S.W. 145, 149"50 (Tex.Civ.App.-Austin 1911, writ ref'd) ("Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterwards assume a position inconsistent with such act, claim or conduct to the prejudice of another."). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced. Lopez, 22 S.W.3d at 864; Atkinson Gas Co. v. Albrecht, 878 S.W.2d 236, 240 (Tex.App.-Corpus Christi 1994, writ denied); Vessels v. Anschutz Corp., 823 S.W.2d 762, 765"66 (Tex.App.-Texarkana 1992, writ denied). Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance. Steubner Realty 19, Ltd., 817 S.W.2d at 164. | Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance. | Does quasi-estoppel not require a false representation or detrimental reliance? | Estoppel - Memo #91 - C - CSS_61543.docx | ROSS-003282454-ROSS-003282455 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14871 | Dillon v. Rogers, 596 F.3d 260 | 156+52(1) | "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases," and "a hallmark of the doctrine is its flexible application." Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In a number of PLRA cases, we have held that estoppel provides a basis for excusing a prisoner's failure to exhaust administrative remedies. See, e.g., Days, 322 F.3d at 866; Wendell v. Asher, 162 F.3d 887, 890 (5th Cir.1998), overruled by implication on other grounds by Jones, 549 U.S. at 216, 127 S.Ct. 910. However, in this case, we conclude that estoppel is not appropriate. A party claiming estoppel must, among other things, demonstrate that he or she "reasonably relied on the conduct of the other to his [or her] substantial injury." Mangaroo v. Nelson, 864 F.2d 1202, 1204 (5th Cir.1989). In this case, Dillon cannot show detrimental reliance on the alleged interference with the ARP process at Jena because it was not the cause of his inability after his transfer to file a grievance concerning his treatment at Jena. Furthermore, although the alleged statements by Wheaton and Coleman may well have rendered remedies unavailable, as described above, they cannot estop Appellees. Neither Wheaton nor Coleman are defendants in this case, and Appellees are being sued in their individual capacities. See Macias v. Zenk, 495 F.3d 37, 45"46 (2d Cir.2007) (noting that "depending on the facts pertaining to each defendant, it is possible that some individual defendants may be estopped, while others may not be" (quoting Hemphill v. New York, 380 F.3d 680, 689 (2d Cir.2004))); Sur v. Glidden"Durkee, 681 F.2d 490, 493 (7th Cir.1982) (explaining that each defendant "may be estopped ... only by reason of its own actions"). Consequently, Appellees are not estopped from raising exhaustion as an affirmative defense. | Estoppel is an equitable doctrine invoked to avoid injustice in particular cases. | Is estoppel an equitable doctrine invoked to avoid injustice in particular cases? | 018097.docx | LEGALEASE-00155380-LEGALEASE-00155381 | Condensed, SA | 0.96 | 0 | 1 | 0 | 1 | |
| 14872 | In re Bd. of Water Supply of City of New York, 277 N.Y. 452 | 148+131 | "Fair market value" means neither panic value, auction value, speculative value, nor a value fixed by depressed or inflated prices. A fair market value is not established by sales where prices offered are so small that only sellers forced to sell will accept them. The mere absence of competitive buyers does not establish lack of a real market. But a market in fact may be established only where there are willing buyers and sellers in substantial numbers. When there is no real market as of a particular date, some indication of the intrinsic economic and commercial value of the property to the owner and of his loss from the appropriation as of that date may be shown by evidence of the "fair market value" of that property, if in substantially the same condition, at the nearest earlier date when there was a fair market. | "Fair market value," as used in measuring just compensation in condemnation proceedings, means neither panic value, auction value, speculative value, nor a value fixed by depressed or inflated prices. Const. art. 1, S 6. | Is fair market value of a property the same as its auction value? | 018368.docx | LEGALEASE-00155176-LEGALEASE-00155177 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 14873 | Corsello v. Verizon New York, 77 A.D.3d 344 | 302+64(1) | A cause of action is duplicative of another when they both arise out of the same facts and allege the same damages (see Town of Wallkill v. Rosenstein, 40 A.D.3d 972, 974, 837 N.Y.S.2d 212; InKine Pharm. Co. v. Coleman, 305 A.D.2d 151, 152, 759 N.Y.S.2d 62; Daniels v. Lebit, 299 A.D.2d 310, 749 N.Y.S.2d 149). Here, the amended complaint states a cause of action to recover damages for unjust enrichment. The plaintiffs alleged that Verizon attached a rear-wall terminal and associated wiring to their building, which Verizon used to service neighboring buildings to the detriment of the plaintiffs who, as a result, were deprived of the possession, use, and enjoyment of a portion of their property. | A cause of action is duplicative of another when they both arise out of the same facts and allege the same damages. | Is a cause of action duplicative of another when they both arise out of the same facts and allege the same damages? | 023773.docx | LEGALEASE-00155436-LEGALEASE-00155437 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 14874 | Crooked Creek, III v. City of Greenwood, 352 Ark. 465 | 307A+690 | Where a dismissal is with prejudice, it is conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. Hicks v. Allstate Ins. Co., 304 Ark. 101, 799 S.W.2d 809 (1990); (quoting Union Indem. Co. v. Benton County Lumber Co., 179 Ark. 752, 18 S.W.2d 327 (1929)). The words "with prejudice," when used in an order of dismissal, "have a definite and well known meaning; they indicate that the controversy is thereby concluded." Harris v. Moye's Estate, 211 Ark. 765, 767, 202 S.W.2d 360 (1947). | Where a dismissal is with prejudice, it is conclusive of the rights of the parties as if the suit had been prosecuted to a final adjudication adverse to the plaintiff. | Is the dismissal of a claim with prejudice conclusive as to the rights of the parties on that claim? | 024593.docx | LEGALEASE-00155791-LEGALEASE-00155792 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 14875 | Heaney v. Verson Allsteel Press Co., 64 Mich. App. 597 | 307A+581 | The whole purpose of the no progress dismissals is to permit "the court upon its own initiative to clean up the dead wood which accumulates in (the) circuit courts', Robinson v. Washtenaw Circuit Judge, 242 Mich. 548, 550, 219 N.W. 661 (1928). Therefore, when a plaintiff is in fact prosecuting his or her claim with due diligence, the policy of the local court rule will not be furthered by denying reinstatement, Hurt v. Cambridge, supra, 21 Mich.App. at 664, 176 N.W.2d 450. In the present case, plaintiff indeed was vigorously pursuing his claim when the case was dismissed. Plaintiff filed interrogatories to defendants on February 2, 1970 and June 30, 1971, answers to which were filed on February 20 and April 6, 1970, and August 23, 1971. Plaintiff filed depositions of two witnesses on July 28, 1971. Thus, discovery was taking place all during the time after the complaint was filed and prior to dismissal. | Purpose of no progress dismissals is to permit court to clean up dead wood and where plaintiff is in fact prosecuting claim with due diligence, policy of rule will not be furthered by denying reinstatement. | Is the purpose of no progress dismissals to permit court to clean up dead wood? | 039168.docx | LEGALEASE-00155402-LEGALEASE-00155403 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 14876 | Willis v. Wetco, 853 P.2d 533 | 307A+594.1 | A showing of "good cause" has been described as the production of "a reasonable excuse for the lack of prosecution." Power Constructors, 811 P.2d 1052, 1054 (Alaska 1991) (citing to Brown v. State, 526 P.2d 1365 (Alaska 1974)). | A showing of "good cause" for delay in prosecution is the production of a reasonable excuse for lack of prosecution. | Is a showing of good cause a production of a reasonable excuse for lack of prosecution? | 039209.docx | LEGALEASE-00155106-LEGALEASE-00155107 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14877 | Employers Liab. Assur. Corp. v. Zolfo Merch. Inc., 62 Misc. 2d 872 | 307A+581 | The public policy behind the statute is clear: "To prevent plaintiffs from unreasonably delaying the termination of an action." (McKinney Cons. Laws of N.Y., CPLR, Vol. 7B 3215; see, also, Thirteenth Annual Report of N.Y. Judicial Council, 1947, p. 215.) In some cases the excuse offered is insufficient. (Herzbrun v. Levine, 23 A.D.2d 744, 259 N.Y.S.2d 237). Here the attorneys didnt even bother to offer one; nor do they offer any affidavit of merits (Milligan v. Hycel Realty Corp., 20 A.D.2d 527, 245 N.Y.S.2d 210). As the court points out in the Milligan case, delays in proceeding to judgment stand on the same footing as failing to prosecute an action (Sortino v. Fisher, 20 A.D.2d 25, 245 N.Y.S.2d 186) (cf. 4 Weinstein-Korn-Miller, N.Y.Civ.Prac., par. 3215.13 et seq.). | Delays in proceeding to judgment stand on same footing as failing to prosecute an action. CPLR 3215(c). | Do delays in proceeding to judgment stand on the same footing as failing to prosecute an action? | 039217.docx | LEGALEASE-00155213-LEGALEASE-00155214 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14878 | Montgomery Furniture Co. v. Hardaway, 104 Ala. 100 | 308+93 | 4. The principal of a special agent is only bound by acts of the agent which are in accordance with his authority, and a third party is bound at his peril to ascertain the extent of the agent's authority. 3 Brick. Dig. p. 22, " 54; 1 Am. & Eng. Enc. Law, 252. But a very important distinction is made, and must always be observed, in the application of this rule, between "special" and "general" agents. This court has carefully drawn this distinction. As was said in Wheeler v. McGuire, 86 Ala. 402, 5 South. 190, and before and since held to the same effect: "A general agent may exceed his express authority and the principal nevertheless be bound. The scope and character of the business, which he is empowered to transact, is, as to third persons, the extent and measure of his authority. When the general agent transacts the business intrusted to him, within the usual and ordinary scope of such business, he acts within the extent of his authority; the principal is bound, provided the party dealing with the agent acts in good faith, and is not guilty of negligence which proximately contributes to the loss." The agent's authority as to third persons is what it appears to be, and must be determined by the nature of his business, and is prima facie co"existive with the requirements. Coffin Co. v. Stokes, 78 Ala. 372; Gibson v. Hardware Co., 94 Ala. 346, 10 South. 304; Mechem, Ag. "" 283"287; May, Ins. "" 126, 143, 144. | The authority of a general agent is, as to third parties, what it appears to be, and must be determined by the nature of the business, and is prima facie coextensive with its requirements. | Can an agents authority be determined by the nature of his business? | Principal and Agent - Memo 310 - RK_61908.docx | ROSS-003284718-ROSS-003284719 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14879 | Montgomery Furniture Co. v. Hardaway, 104 Ala. 100 | 308+93 | 4. The principal of a special agent is only bound by acts of the agent which are in accordance with his authority, and a third party is bound at his peril to ascertain the extent of the agent's authority. 3 Brick. Dig. p. 22, " 54; 1 Am. & Eng. Enc. Law, 252. But a very important distinction is made, and must always be observed, in the application of this rule, between "special" and "general" agents. This court has carefully drawn this distinction. As was said in Wheeler v. McGuire, 86 Ala. 402, 5 South. 190, and before and since held to the same effect: "A general agent may exceed his express authority and the principal nevertheless be bound. The scope and character of the business, which he is empowered to transact, is, as to third persons, the extent and measure of his authority. When the general agent transacts the business intrusted to him, within the usual and ordinary scope of such business, he acts within the extent of his authority; the principal is bound, provided the party dealing with the agent acts in good faith, and is not guilty of negligence which proximately contributes to the loss." The agent's authority as to third persons is what it appears to be, and must be determined by the nature of his business, and is prima facie co"existive with the requirements. Coffin Co. v. Stokes, 78 Ala. 372; Gibson v. Hardware Co., 94 Ala. 346, 10 South. 304; Mechem, Ag. "" 283"287; May, Ins. "" 126, 143, 144. | The authority of a general agent is, as to third parties, what it appears to be, and must be determined by the nature of the business, and is prima facie coextensive with its requirements. | Is an agents authority prima facie co-existive with its requirements? | Principal and Agent - Memo 311 - RK_61909.docx | ROSS-003294341-ROSS-003294342 | Condensed, Order, SA, Sub | 0.87 | 1 | 1 | 1 | 1 | 1 |
| 14880 | Booker v. United Am. Ins. Co., 700 So. 2d 1333 | 308+54 | 3 C.J.S. Agency " 265 (1973). See 3 Am.Jur.2d Agency "" 157, 162, 163 (1986). That is, a principal will be bound by the acts of a purported subagent only if: (1) the agent had express authority to appoint the subagent; (2) the agent had implied authority to appoint the subagent; or (3) the principal ratified the appointment. See Consolidated 6 Underwriters Ins. Co. v. Landers, 285 Ala. 677, 681, 235 So.2d 818, 822 (1970); Eagle Motor Lines v. Hood, 256 Ala. 395, 398, 55 So.2d 126, 129 (1951); Butler v. Standard Life Ins. Co. of the South, 232 Ala. 238, 167 So. 307, 309"10 (1936); Schloss Bros. & Co. v. Gibson Dry Goods Co., 6 Ala.App. 155, 60 So. 436, 437 (1912).3 | Principal is bound by acts of purported subagent only if (1) agent had express authority to appoint subagent; (2) agent had implied authority to appoint subagent; or (3) principal ratified appointment. | When will the principal be bound for the acts of a purported subagent? | 041634.docx | LEGALEASE-00155680-LEGALEASE-00155681 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 14881 | Booker v. United Am. Ins. Co., 700 So. 2d 1333 | 308+54 | 3 C.J.S. Agency " 265 (1973). See 3 Am.Jur.2d Agency "" 157, 162, 163 (1986). That is, a principal will be bound by the acts of a purported subagent only if: (1) the agent had express authority to appoint the subagent; (2) the agent had implied authority to appoint the subagent; or (3) the principal ratified the appointment. See Consolidated 6 Underwriters Ins. Co. v. Landers, 285 Ala. 677, 681, 235 So.2d 818, 822 (1970); Eagle Motor Lines v. Hood, 256 Ala. 395, 398, 55 So.2d 126, 129 (1951); Butler v. Standard Life Ins. Co. of the South, 232 Ala. 238, 167 So. 307, 309"10 (1936); Schloss Bros. & Co. v. Gibson Dry Goods Co., 6 Ala.App. 155, 60 So. 436, 437 (1912).3 | Principal is bound by acts of purported subagent only if (1) agent had express authority to appoint subagent; (2) agent had implied authority to appoint subagent; or (3) principal ratified appointment. | Can a principal be held liable if he ratifies the acts of a purported subagent? | Principal and Agent - Memo 334 - RK_61922.docx | ROSS-003294034-ROSS-003294035 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14882 | First Tr. Joint Stock Land Bank of Chicago, Ill. v. Diercks, 222 Iowa 534 | 308+92(1) | It is a well-established principle of the law of agency that whatever an agent says or does within the scope of his express or implied authority binds his principal and is deemed the act of his principal. Ellison v. Stockton, 185 Iowa, 979, 170 N.W. 435. It is likewise well established that an agent, clothed with special or limited authority, can only bind his principal within the limits of the authority granted. Ney v. Eastern Iowa Telephone Co., 162 Iowa, 525, 144 N.W. 383. And persons dealing with an agent with special limited authority have the burden of showing that the agent acted within the scope of his apparent or actual authority. Brenard Mfg. Co. v. J. D. Sketchley Store, 185 Iowa, 694, 171 N.W. 18. "Apparent authority" is such as a principal knowingly permits an agent to assume or holds him out as possessing. American Trust & Savings Bank of Waterloo v. De Jaeger, 191 Iowa, 758, 183 N.W. 369; Iowa Loan & Trust Company v. Seaman, 203 Iowa, 310, 210 N.W. 937, 212 N.W. 487; Engelke v. Drager, 213 Iowa, 598, 239 N.W. 569. | Whatever an agent says or does within the scope of his express or implied authority binds his principal, and is deemed his act. | Is it fundamental law that anything done or said by an agent is the act of and binds the principal? | Principal and Agent - Memo 340 - RK_61928.docx | ROSS-003284056-ROSS-003284057 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 14883 | Com. v. Braica, 68 Mass. App. Ct. 244 | 3.77E+23 | The statutory language has been further illuminated by the Supreme Judicial Court. A "pattern of conduct or series of acts" requires at least three separate incidents. Commonwealth v. Welch, 444 Mass. 80, 89, 825 N.E.2d 1005 (2005). Those incidents must have occurred after the statute became effective on October 30, 2000. Id. at 90"91, 825 N.E.2d 1005. The "acts" may include harassing statements as well as harassing conduct, so long as "constitutionally protected speech" is not punished. Id. at 98, 825 N.E.2d 1005. "To the extent the statute implicates harassing speech, it appears intended to reach primarily what would be considered "fighting words." " Id. at 98"99, 825 N.E.2d 1005. The words must also be "directed at a specific person" with the "sense [being] that they are a face to face personal insult." Id. at 99, 825 N.E.2d 1005 (citation omitted). | A "pattern of conduct or series of acts," as used in the criminal-harassment statute, requires at least three separate incidents that occurred after the effective date of the statute. M.G.L.A. c. 265, S 43A(a). | "What does ""a pattern of conduct or series of acts,"" as used in the criminal harassment statute, require?" | 046781.docx | LEGALEASE-00155182-LEGALEASE-00155183 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 14884 | Herbert S. Newman & Partners, P.C. v. CFC Const. Ltd. P'ship, 236 Conn. 750 | 156+52(1) | It is well established that any recovery premised on estoppel must be supported by proof of two essential elements: (1) the party against whom estoppel is claimed must be shown to have done or said something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must be shown to have changed its position in reliance on those facts, thereby incurring some injury. Lunn v. Tokeneke Assn., Inc., 227 Conn. 601, 607, 630 A.2d 1335 (1993); O'Sullivan v. Bergenty, 214 Conn. 641, 648, 573 A.2d 729 (1990). An estoppel is predicated on proof of misleading conduct resulting in prejudice to the other party. John F. Epina Realty, Inc. v. Space Realty, Inc., 194 Conn. 71, 85, 480 A.2d 499 (1984). The party claiming estoppel has the burden of proof, and whether it has met that burden in a particular case is an issue of fact. Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 699, 590 A.2d 957 (1991). | Estoppel is predicated on proof of misleading conduct resulting in prejudice to other party. | Is estoppel predicated on proof of misleading conduct resulting in prejudice to the other party? | Estoppel - Memo #124 - C - CSS_62026.docx | ROSS-003279046-ROSS-003279047 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14885 | M.J. Oldenstedt Plumbing Co. v. K mart Corp., 257 Ill. App. 3d 759 | 156+52(1) | The trial court held that plaintiff was estopped from denying that the agreement between the parties was the written subcontract agreement. Estoppel is an equitable doctrine preventing a party from taking advantage of his own wrongdoing. (Neaterour v. Holt (1989), 188 Ill.App.3d 741, 136 Ill.Dec. 160, 544 N.E.2d 846.) Equitable estoppel has been defined as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in chancery, from asserting rights which might otherwise have existed as against another person who has, in good faith, relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." (Buczac v. Central Savings & Loan Association (1992), 230 Ill.App.3d 490, 498, 171 Ill.Dec. 771, 776, 594 N.E.2d 1291, 1296, quoting 18 Illinois Law and Practice, Estoppel, sec. 22 (1956).) To be estopped, a party must have engaged in conduct which reasonably causes the other party to change his position by lulling the claimant into a false sense of security. Arneson v. Board of Trustees of McKendree College (1991), 210 Ill.App.3d 844, 155 Ill.Dec. 252, 569 N.E.2d 252. | Estoppel is equitable doctrine preventing party from taking advantage of his own wrongdoing. | Is estoppel an equitable doctrine preventing a party from taking advantage of his own wrongdoing? | Estoppel - Memo #129 - C - CSS_62029.docx | ROSS-003293912-ROSS-003293913 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 14886 | Holz v. Lyles, 287 Ala. 280 | 200+159(1) | The right of an individual to an injunction against obstructing a public street or highway depends on whether he has sustained damages different from that sustained by the public. If he sustains an additional specific damage, he may sue to have it abated if the remedy at law is inadequate."Alabama Great Southern R. Co. v. Barclay, 178 Ala. 124, 59 So. 169. | The right of an individual to an injunction against obstruction of a public street or highway depends on whether he has sustained damages different from that sustained by the public; if he sustains an additional specific damage he may sue to have it abated if remedy at law is inadequate. | Is an individual entitled to injunction against obstruction of a public road? | 019204.docx | LEGALEASE-00156264-LEGALEASE-00156265 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14887 | Wood Preserving Co. v. Resaca Lumber Co., 29 Ga. App. 501 | 302+35 | While the petition as amended alleges in substance that the plaintiff procured a purchaser for said property in accordance with the terms stipulated by the owner, this conclusion of the pleader is dependent upon the construction of the written offer to buy executed by Mrs. Russell and the sales agency contract executed by the defendant. These instruments are both attached to and made parts of the petition which must be construed in the light of the full contents of the two instruments in order to determine what are its allegations. It therefore follows that since the terms by which the defendant agreed to sell her property are set forth in the instrument executed by her, and the terms by which Mrs. Russell offered to buy said property are set forth in the instrument executed by her, these instruments must be resorted to, they being parts of the petition, in order to determine whether or not the petition alleges that the plaintiff procured a purchaser, ready, able and willing to buy and who actually offered to buy on the terms stipulated by the owner. Conclusions in pleadings are disregarded where particular facts alleged are contradictory to them. See Southern Wood Preserving Co. v. Resaca Lumber Co., 29 Ga.App., 501(2), 116 S.E. 32; Moore v. Seaboard Air-Line R. Co., 30 Ga.App. 466, 118 S.E. 471; Central of Ga., v. Lawley, 33 Ga.App. 375, 377, 126 S.E. 273. | Conclusions in pleadings are to be disregarded, where the particular facts alleged are contradictory to them, or fail to support them. | Are conclusions in pleadings disregarded where particular facts alleged are contradictory to them? | Pleading - Memo 570 - RMM_62378.docx | ROSS-003291997-ROSS-003291998 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14888 | Iverson v. Iverson, 38 Ill. App. 3d 308 | 302+64(1) | Subsequently, Savoie v. The Town of Bourbonnais (1950), 339 Ill.App. 551, 90 N.E.2d 645, and Adams v. J. I. Case Co. (1970), 125 Ill.App.2d 388, 261 N.E.2d 1, reiterated the view that duplicitous pleadings, though not in strict conformity with section 33(2) of the Civil Practice Act, are permitted. The court in Adams quoted the Savoie case:"The alleged formal deficiencies of the complaint, urged by the defendants, to the effect that numerous causes of actions were pleaded in the same count in violation of the Civil Practice Act (Citation), are without merit, inasmuch as the various breaches of duty alleged by the plaintiff were based upon the same set of facts, and could be properly treated as a single cause of action, and set forth in the same count." 125 Ill.App.2d at 399, 261 N.E.2d 6. | Duplicitous pleadings, though not in strict conformity with Civil Practice Act, are permitted. S.H.A. ch. 40, S 1; ch. 110, SS 33, 33(2); Supreme Court Rules, rule 135, S.H.A. ch. 110A, S 135. | Are duplicitous pleadings which are not in conformity with Civil Practice Act permitted? | Pleading - Memo 572 - RMM_62380.docx | ROSS-003295008-ROSS-003295009 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 14889 | Arrow Marble v. Estate of Killion, 441 S.W.3d 702 | 307A+690 | A dismissal for failure to appear at trial or for want of prosecution should be without prejudice. See Atty Gen. v. Rideaux, 838 S.W.2d 340, 342 (Tex.App. Houston 1st Dist. 1992, no writ) ("A trial court authority to dismiss cases for want of prosecution does not confer upon it the authority to adjudicate and deny the merits of the dismissed claim."). An order dismissing a claim with prejudice when only dismissal without prejudice was appropriate can be challenged through a post judgment motion. | An order dismissing a claim with prejudice when only dismissal without prejudice was appropriate can be challenged through a postjudgment motion. | Can an order dismissing a claim with prejudice when only dismissal without prejudice was appropriate be challenged through a post judgment motion? | 024652.docx | LEGALEASE-00155904-LEGALEASE-00155905 | Condensed, SA | 0.71 | 0 | 1 | 0 | 1 | |
| 14890 | Garrett v. Williams, 250 S.W.3d 154 | 307A+690 | A dismissal with prejudice is improper if the plaintiff's failure to comply with the statute's procedural requirements can be remedied. Mooneyham, 2008 WL 281525; see also Hickman v. Adams, 35 S.W.3d 120, 124 (Tex.App.-Houston [14th Dist.] 2000, no pet.). | A dismissal with prejudice is improper if the plaintiff's failure to comply with the statute's procedural requirements can be remedied. | Is a dismissal with prejudice improper if the plaintiff's failure can be remedied? | 024746.docx | LEGALEASE-00156160-LEGALEASE-00156161 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 14891 | Smith v. SBC Commc'ns Inc., 178 N.J. 265 | 307A+690 | The motion to dismiss should be granted only in rare instances and ordinarily without prejudice. As such, "[i]f a generous reading of the allegations merely suggests a cause of action, the complaint will withstand the motion." F.G. v. MacDonell, 150 N.J. 550, 556, 696 A.2d 697, 700 (1997). | The motion to dismiss should be granted only in rare instances and ordinarily without prejudice. | Should the motion to dismiss should be granted only in rare instances and ordinarily without prejudice? | 024758.docx | LEGALEASE-00156194-LEGALEASE-00156195 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 14892 | State v. Payne, 178 Ohio App. 3d 617 | 3.77E+28 | Austin's inability to leave her house due to her fear of Payne is sufficient to find that she suffered some "temporary substantial incapacity" due to the mental distress caused by Payne's conduct. "Substantial incapacity does not mean that the victim must be hospitalized, or totally unable to care for herself. Incapacity is substantial if it has a significant impact upon the victim's daily life." State v. Horsley, 10th Dist. No. 05AP"350, 2006-Ohio-1208, 2006 WL 648849, at " 48. It is sufficient that Austin was so fearful as to be unable to leave her home for the approximately six and one-half hours Payne continued to drive past. This incident, albeit brief, made a significant impact on Austin's daily activities. | Substantial incapacity sufficient to support a conviction for menacing by stalking does not mean that the victim must be hospitalized, or totally unable to care for herself; incapacity is substantial if it has a significant impact upon the victim's daily life. R.C. S 2903.211(A)(1), (D)(2)(a, b). | "Does ""substantial incapacity"" for the purposes of a conviction for menacing by stalking, require the victim to be hospitalized?" | 046819.docx | LEGALEASE-00155990-LEGALEASE-00155991 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 14893 | State v. Devlin, 249 Or. 678 | 67+41(4) | State v. Walker, 244 Or. 404, 417 P.2d 1004 (1966), is in point. The court said: "Circumstantial evidence alone is sufficient to establish any necessary element of a crime and, therefore, entry, like any other element of the corpus delicti of the crime of burglary, need not be proven by direct evidence, but may be established by circumstantial evidence." State v. Walker, 244 Or. at 410, 417 P.2d at 1008. | Entry, as any other element of corpus delicti of crime of burglary, need not be proven by direct evidence, but may be established by circumstantial evidence. ORS 164.240. | Can burglary be proved by circumstantial evidence? | 013082.docx | LEGALEASE-00156565-LEGALEASE-00156566 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 14894 | Strosnider v. State, 422 N.E.2d 1325 | 210+813 | Turning to the question of whether the criminal mischief charge is also a lesser included offense of burglary with intent to commit theft, we find that criminal mischief is not a lesser included offense. The elements of criminal mischief as charged are; recklessly damaging the property of another, without his consent, in amount less than $250.00. The damage element in the criminal mischief charge is not an element of the burglary charge and therefore, the criminal mischief charge is not proved by the same or less than all the material elements of the burglary charge. Therefore, criminal mischief is not an included offense of the burglary charge. | Criminal mischief is not a lesser included offense of burglary with intent to commit theft, since damage element in criminal mischief charge is not element of burglary charge and therefore criminal mischief is not proved by same or less than all material elements of burglary. IC 31-6-2-4(d), 35-41-1-2, 35-43-2-2(a)(4) (1980 Supp.). | Is mischief a lesser included offense of burglary? | Burglary - Memo 291 - RK.docx | LEGALEASE-00046257-LEGALEASE-00046258 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14895 | Bryant v. State, 282 Ga. 631 | 67+41(4) | Bryant likewise contends that there was insufficient evidence to support his conviction for burglary because there was not sufficient evidence of a lack of authority to enter Haynes's dwelling, and in fact, he had permission to enter the mobile home to conduct repairs. But, the contention is unavailing. Certainly, a conviction for burglary requires, inter alia, the lack of authority to enter the dwelling. OCGA " 16"7"1. However, circumstantial evidence can suffice to prove the lack of authority. Jones v. State, 258 Ga. 25, 27(1), 365 S.E.2d 263 (1988). Here, Haynes was found partially dressed in the bathroom, apparently having used the lavatory immediately before her death. A reasonable inference is that her murderer intruded on her privacy. Moreover, a witness testified that Haynes had recently refused to give Bryant a new key to her mobile home. Thus, the jury was authorized to find that even if Bryant at some point had permission to enter the mobile home, he no longer did at the time of the murder and arson. The evidence of Bryant's burglary of Haynes's mobile home was sufficient as a matter of law. Jackson v. Virginia, supra. | Circumstantial evidence can suffice to prove the lack of authority to enter a dwelling, as required to support conviction for burglary. West's Ga.Code Ann. S 16-7-1. | Can circumstantial evidence establish lack of authority to enter? | Burglary - Memo 295 - RK_62297.docx | ROSS-003320216-ROSS-003320217 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 14896 | Com. v. Starkes, 268 Pa. Super. 108 | 67+2 | Prior to the June 6, 1973 effective date of this provision, one who entered premises with an intent to commit a crime was guilty of burglary, regardless of the consent of the owner. See Commonwealth v. Wortham, 235 Pa.Super. 25, 342 A.2d 759, Rev'd on other grounds, 471 Pa. 243, 369 A.2d 1287 (1975). However, under Section 3502(a), if a person is permitted to enter the premises he is not a burglar even though he intends to commit a crime.See Commonwealth v. Cost, 238 Pa.Super. 591, 362 A.2d 1027 (1976); Commonwealth v. Danzy, 234 Pa.Super. 633, 340 A.2d 494 (1975). "This (change) . . . gets back to the original definition of burglary, which was the breaking and entry of a home at night. The idea that it was an Uninvited entry into a residence made it a serious offense." (emphasis added). Jarvis, Pennsylvania Crime Code and Criminal Law, Comments to s 3502. See also Annot. 93 A.L.R.2d 531. Although the Crimes Code does not define the terms License and Privilege and no case has previously interpreted the "license or privilege" portion of Section 3502(a),the factual circumstances of several burglary cases illustrate, we believe properly, unlicensed or unprivileged entry. See Commonwealth v. Jacobs, 247 Pa.Super. 373, 372 A.2d 873 (1977) (entry "without permission: into another's apartment); Commonwealth v. Brosko, 243 Pa.Super. 312, 365 A.2d 867 (1976) (accused not licensed or privileged to enter a closed Arco station at 4:30 a. m.); Commonwealth v. Hunter, 234 Pa.Super. 267, 338 A.2d 623 (1975) (unauthorized entry by former employee through window of electronics plant); Commonwealth v. Atkins, 232 Pa.Super. 206, 335 A.2d 375 (1975) (accused unauthorized to enter fraternity house). | Under statute providing that person is guilty of burglary if he enters building or occupied structure with intent to commit a crime therein, unless premises are at the time open to the public or the actor is licensed or privileged to enter, a person is not a burglar if he is permitted to enter premises, even though he intends to commit a crime. 18 Pa.C.S.A. S 3502(a). | Can a person who is licensed or privileged to enter be considered a burglar? | 013152.docx | LEGALEASE-00156607-LEGALEASE-00156608 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 14897 | People v. Smith, 128 Misc. 2d 733 | 67+10 | Instead, as pertinent here, one commits second degree burglary if he knowingly and unlawfully enters or remains in an occupied structure with the intent to commit a crime against person or property. See People v. Hollenbeck, 944 P.2d 537 (Colo.App. No. 94CA1744, October 10, 1996) (1996 WL 580425). Further, a person " "unlawfully enters or remains' in an occupied structure when he is not licensed, invited or otherwise privileged to do so." Section 18-4-201(3), C.R.S. (1986 Repl.Vol. 8A). | One commits second-degree burglary if he knowingly and unlawfully enters or remains in occupied structure with intent to commit crime against person or property. West's C.R.S.A. S 18-4-203. | Are unlawful entry or remaining in a building elements of second degree burglary? | 013170.docx | LEGALEASE-00156581-LEGALEASE-00156582 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 14898 | People v. Oram, 217 P.3d 883 | 67+3 | The second degree burglary statute provides:A person commits second degree burglary, if the person knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property. | Intent to commit a crime against another person or property while in the dwelling, for purposes of second degree burglary, can be formed either before or after the unlawful entry. West's C.R.S.A. S 18-3-206(1)(a). | Are unlawful entry or remaining in a building elements of second degree burglary? | Burglary - Memo 323 - RK.docx | LEGALEASE-00046318-LEGALEASE-00046319 | Condensed, SA, Sub | 0.33 | 0 | 1 | 1 | 1 | 1 |
| 14899 | People v. Pritchard, 149 A.D.3d 1479 | 67+4 | "It is well settled that, "[i]n evaluating a challenged jury instruction, we view the charge as a whole in order to determine whether a claimed deficiency in the jury charge requires reversal" " (People v. Walker, 26 N.Y.3d 170, 174, 21 N.Y.S.3d 191, 42 N.E.3d 688). A person is guilty of burglary in the first degree, in pertinent part, when he or she "knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein" (Penal Law " 140.30[2]). ""Dwelling" means a building which is usually occupied by a person lodging therein at night" (" 140.00 [3] ), and "the definition of "building" includes the following: "Where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building" " (People v. McCray, 23 N.Y.3d 621, 626, 992 N.Y.S.2d 475, 16 N.E.3d 533, rearg. denied 24 N.Y.3d 947, 994 N.Y.S.2d 47, 18 N.E.3d 748, quoting " 140.00[2] ). | Where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building, for purposes of first-degree burglary statute. McKinney's Penal Law S 140.00(2)(3). | Does a building consisting of separate units constitute separate buildings? | 013172.docx | LEGALEASE-00156583-LEGALEASE-00156584 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 14900 | Richmond Cty. Bus. Ass'n v. Richmond Cty., 224 Ga. 854 | 104+190.2 | In determining whether Richmond County has authority to impose a tax such as the one involved here, we must be mindful of the principle that "A county can only exercise the power of taxation as conferred upon it either directly by the Constitution or by the General Assembly when authorized by the Constitution. (Citations.) If there is any doubt as to the power of the county to tax in a particular instance, it must be resolved in the negative." Commissioners of Chatham County v. Savannah Electric & Power Company, 215 Ga. 636, 637-638, 112 S.E.2d 655, 657. See also, Mayor, etc., of City of Savannah v. Hartridge, 8 Ga. 23. | County can only exercise power of taxation as conferred upon it either directly by constitution or by general assembly when authorized by constitution. | When can a county exercise the power of taxation? | Taxation - Memo # 1006 - C - JL_62479.docx | ROSS-003293079-ROSS-003293080 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14901 | Nw. Mut. Life Ins. Co. v. State Bd. of Equalization, 73 Cal. App. 2d 548 | 268+405 | To enumerate significant differences between a special assessment and a tax, it may be observed: (1) A special assessment can be levied only on land; (2) a special assessment cannot (at least in many states) be made a personal liability of the person assessed; (3) a special assessment is ordinarily based wholly on benefits; and (4) a special assessment is exceptional both as to time and locality. The imposition of a charge on all property, real and personal, in a prescribed area, is a tax and not an assessment, although the purpose is to make a local improvement on a street or highway. A charge imposed only on property owners benefited is a special assessment, rather than a tax, notwithstanding the statute calls it a tax. It has been ruled that a special assessment is not, in the constitutional sense, a tax at all.' 48 Am.Jur., pp. 565-567, " 3; see, also, McQuillin, Municipal Corporations, 2d Ed., Vol. 5, p. 699; Cooley on Taxation, 4th Ed., p. 105, sec. 31; Hamilton, Law of Special Assessments, Ch. III, p. 148. | A special assessment is a "tax" in that it distributes what is originally a public burden, but is not a tax in the sense of a tax for revenue which is an exaction upon the citizen for support of government, paid to the state as a state for protection or public service, whereas a special "assessment" is imposed upon property within a limited area for payment of a local improvement to enhance value of all property within that area and can be levied only upon land; and is ordinarily based wholly upon benefits, and is exceptional both as to time and locality. | What are some significant differences between a special assessment and a tax? | 044508.docx | LEGALEASE-00156478-LEGALEASE-00156479 | Condensed, Order, SA, Sub | 0.45 | 1 | 1 | 1 | 1 | 1 |
| 14902 | Williams v. People, 687 P.2d 950 | 3.77E+10 | Petitioner argues that the General Assembly's adoption of section 2"4"214, 1B C.R.S. (1983 Supp.) in 1981 requires this court to reevaluate People v. McPherson, 200 Colo. 429, 619 P.2d 38 (1980), in which we held that an unloaded gun is a deadly weapon.The General Assembly, in adopting section 2"4"214, expressly rejected the rule of statutory construction utilized by this court in McPherson. Later that year, however, an amendment to section 18"1"901(3)(e), 8 C.R.S. (1978 & 1983 Supp.) clarified the language defining "deadly weapon." In our view, the amendment does not affect our interpretation of section 18"1"901(3)(e) in McPherson, that an unloaded firearm is, as a matter of law, a deadly weapon under the felony menacing statute. | An unloaded firearm is, as a matter of law, a "deadly weapon" under the felony menacing statute. C.R.S. 18-1-901(3)(e). | "Is an unloaded firearm a ""deadly weapon"" under the felony menacing statute?" | 046679.docx | LEGALEASE-00156496-LEGALEASE-00156497 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 14903 | Com. v. Kidd, 296 Pa. Super. 393 | 3.77E+10 | It is true that the present ability to inflict harm is not required as an element of this offense. See, Commonwealth v. Holguin, 254 Pa.Super. 295, 385 A.2d 1346 (1978); and, Commonwealth v. Ashford, 268 Pa.Super. 225, 407 A.2d 1328 (1979). However, the Pennsylvania Joint State Government Commission's Comment on 18 Pa.C.S. s 2706 states that its "... purpose is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended ... to penalize mere spur-of-the-moment threats which result from anger." In viewing the facts and circumstances under which appellant's threats were made, Commonwealth v. White, 232 Pa.Super. 176, 335 A.2d 436 (1975), we conclude that the record contains insufficient evidence that appellant, by his acts, intended to place the officers in a state of fear that agitates body and mind. See, Commonwealth v. Sullivan, 269 Pa.Super. 279, 409 A.2d 888 (1979). Appellant was obviously inebriated and in an agitated and angry state of mind. The record evinces that his conduct expressed transitory anger rather than a settled purpose to carry out the threat or to terrorize the other person. His acts did not involve the sort of conduct that the Legislature intended to deter and punish by promulgation of section 2706 of the Crimes Code. | Present ability to inflict harm is not required as an element of offense of terroristic threats. 18 Pa.C.S.A. S 2706. | Is a present ability to inflict harm a required element of offense of terroristic threats? | 046682.docx | LEGALEASE-00156498-LEGALEASE-00156499 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 14904 | Jarrell v. State, 537 S.W.2d 255 | 3.77E+10 | We conclude that capability to carry out the threat is not an essential element of the offense set forth in V.T.C.A. Penal Code, Sec. 22.07, and find that the evidence supports the trial court's finding in its order revoking probation. No abuse of discretion is shown in revoking appellant's probation | Capability to carry out threat is not essential element of offense of terroristic threats. V.T.C.A., Penal Code S 22.07. | Is the capability to carry out a threat an essential element of the offense of terroristic threats? | 046684.docx | LEGALEASE-00156500-LEGALEASE-00156501 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 14905 | R.S. Oglesby Co. v. Bank of New York, 114 Va. 663 | 8.30E+10 | It is admitted that the notes are New York contracts; but it is contended that the case must be controlled by the law of this state, and that by that law the stipulation to pay an attorney's fee is regarded as a penalty, and not enforceable. Again, it is sought to segregate that clause from the main contract, and to withdraw it from the influence of the law of New York, on the theory that, though the principal sum is payable in New York, the attorney's fee is not, and the note having been made in Virginia makes that stipulation a Virginia contract. No authority is cited on the point, and it would seem plain that the provision, like those for the payment of interest and exchange, is a mere incident to the principal contract, and to be governed by the same law. | A negotiable note made in Virginia but payable in New York, and discounted there, is a New York contract, and its validity, when sued on in this State, is to be determined by the laws of New York. A clause in such a note providing for the payment of a fee of ten per cent. for collection by an attorney is, like the provisions for the payment of interest and exchange, a mere incident of the principal contract, and to be governed by the same law, although payment is sought to be enforced in Virginia. | What types of provisions are considered mere incident to a principal contract? | 009118.docx | LEGALEASE-00157844-LEGALEASE-00157845 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 14906 | Farm Mortg. & Loan Co. v. Beale, 113 Neb. 293 | 95+2 | Where two or more parties, residing in different states, enter into a contract, it is competent for them to select the laws of either state to govern their contract. When, by the terms of the contract, they have fixed and determined upon the place for its performance, ordinarily, the law of that place will govern, unless a contrary intention is made to appear. | Where persons residing in different states contract, they can select laws of either state to govern it. | Can the laws of either state be selected to govern a contract between parties residing in different states? | 010923.docx | LEGALEASE-00157932-LEGALEASE-00157933 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 14907 | Bolz v. Hatfield, 41 S.W.3d 566 | 156+52(6) | Defendant had knowledge of the requirement that she pay property taxes annually. The face of the beneficiary deed by which she acquired her interest in the real estate stated that requirement. Payment by others of the taxes defendant was obligated to pay should have been a red flag that some action was required of defendant. Defendant had ample warning that she was in danger of losing her remainder interest if she did not pay taxes in accordance with the condition imposed by the beneficiary deed. This court concludes, under these facts, that defendant was not entitled to refrain from satisfying the conditions imposed by the beneficiary deed. "Estoppel is not a favorite of the law and will not "arise unless justice to the rights of others demands it." " Shores v. Express Lending Services, Inc., 998 S.W.2d 122, 127 (Mo.App.1999), quoting Peerless Supply Co., supra, at 666. Defendant was derelict in not protecting her property rights. Justice does not demand the courts to act with more zeal on behalf of defendant than she chose to do for herself. Point II is denied. | Estoppel is not a favorite of the law and will not arise unless justice to the rights of others demands it. | Will an estoppel not arise unless justice to the rights of others demands it? | 017874.docx | LEGALEASE-00157782-LEGALEASE-00157783 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14908 | Rhodes v. State, 240 S.W.3d 882 | 156+52(5) | We have previously dealt in Prystash v. State with a type of estoppel involving unilateral requests that result in "invited error," but estoppel is a flexible doctrine that manifests itself in various forms that are not limited to unilateral requests. The variant of estoppel at issue here is "estoppel by judgment."50 In this type of estoppel, "[o]ne who accepts the benefits of a judgment, decree, or judicial order is estopped to deny the validity or propriety thereof, or of any part thereof, on any grounds; nor can he reject its burdensome consequences."51 The only exception to this principle is for challenges to the subject-matter jurisdiction of the court rendering the judgment. | Estoppel is a flexible doctrine that manifests itself in various forms that are not limited to unilateral requests. | Does an estoppel manifest itself in various forms that are not limited to unilateral requests? | 017880.docx | LEGALEASE-00157780-LEGALEASE-00157781 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14909 | Genske v. Jensen, 188 Wis. 17 | 322H+1277 | There is only one fact in issue, and that is as to whether or not the title of Wyss, as shown by the abstract, was merchantable. If the title was merchantable, the respondent is entitled to his commission under his contract with the appellants. If it was not merchantable, respondent is not entitled to a commission. We are not cited to any case defining "merchantable" as used in a real estate contract, but it is fair to say that the term was used in the contract in question as meaning a good or marketable title, such as would be conveyed by an ordinary warranty deed. | A contract for exchange of property requiring abstract of title showing it to be "merchantable" means a good, marketable title, such as would be conveyed by an ordinary warranty deed. | Does the term merchantable used in contract means a marketable title? | 018417.docx | LEGALEASE-00157446-LEGALEASE-00157447 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 14910 | People v. Roschli, 275 N.Y. 26 | 217+1001 | This fund was a device whereby the contributors, through a chain of reciprocal agreements, undertook to insure each other at cost. In its essentials it was "that system whereby individuals, partnerships or corporations engaged in a similar line of business undertake to indemnify each other against a certain kind or kinds of losses by means of a mutual exchange of insurance contracts, usually through the medium of an attorney in fact appointed for that purpose by each of the underwriters, under agreements whereby each member separately becomes both an insured and an insurer with several liability only." G. J. Couch, Reciprocal or Inter-insurance, 94 A.L.R. 836. What is in substance a contract of insurance cannot be changed into something else by giving it another name. Trustees of First Baptist Church in Brooklyn v. Brooklyn Fire Ins. Co., 19 N.Y. 305; Id., 28 N.Y. 153, 161; First Nat. Bank of East Islip v. National Surety Co., 228 N.Y. 469, 472, 127 N.E. 479. Inter-insurers are within the statute. (Insurance Law art. 10 [section 300 et seq.]). The prohibition against engaging in the business of insurance without the prescribed authority is absolute. Id. " 54. Since it is conceded that the defendant was not so authorized he was validly convicted. Id. " 53. | That which is in substance a contract of insurance cannot be changed into something else by giving it another name. | Can the substance of an insurance contract be changed by giving it another name? | Insurance - Memo 39 - SNJ_62729.docx | ROSS-003282926-ROSS-003282927 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 14911 | White v. Washington Metro. Area Transit Auth., 432 A.2d 726 | 307A+581 | The decision whether to dismiss a case for failure to prosecute under Super. Ct. Civ. R. 41(b) lies within the sound discretion of the trial court. Frazier v. Center Motors, Inc., D.C.App., 418 A.2d 1018, 1020 (1980); Taylor v. Washington Hospital Center, D.C.App., 407 A.2d 585, 590 (1979), cert. denied, 446 U.S. 921, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980); Garces v. Bradley, D.C.App., 299 A.2d 142, 144-45 (1973); see Johnson v. United States, D.C.App., 398 A.2d 354, 363-67 (1979). Because dismissal is an extreme penalty for lack of diligence, it is disfavored. Braxton v. McNamara, D.C.App., 429 A.2d 183 at 184 (1981) (per curiam); Frazier, supra at 1020; Garces, supra at 144 | Because dismissal for failure to prosecute is extreme penalty for lack of diligence, it is disfavored. Civil Rule 41(b). | "Is dismissal for failure to prosecute for lack of diligence, disfavored as it is an extreme penalty?" | 024796.docx | LEGALEASE-00157714-LEGALEASE-00157715 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14912 | Jennings v. SSM Health Care St. Louis, 355 S.W.3d 526 | 307A+690 | Dr. Jennings raises five points on appeal. Before reaching those points, however, we must first consider, sua sponte, whether the dismissal order is a final judgment from which Dr. Jennings may appeal. We evaluate "whether a judgment is final for purposes of appeal, and if the appeal is found to be premature, it must be dismissed." Blechle v. Goodyear Tire & Rubber Co., 28 S.W.3d 484, 486 (Mo.App. E.D.2000). The general rule is that "[a] dismissal failing to indicate that it is with prejudice is deemed to be without prejudice." Atkins v. Jester, 309 S.W.3d 418, 422"23 (Mo.App. S.D.2010) (citing Rule 67.03) (internal quotations omitted). Here, the trial court dismissed Dr. Jennings's petition without indicating whether the dismissal was with or without prejudice. Thus, the dismissal was without prejudice. | The general rule is that a dismissal failing to indicate that it is with prejudice is deemed to be without prejudice. | Is it the general rule that a dismissal failing to indicate that it is with prejudice is deemed to be without prejudice? | 024961.docx | LEGALEASE-00157247-LEGALEASE-00157248 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14913 | Points v. Oklahoma Pub. Co., 672 P.2d 1146 | 228+204 | An action's termination cannot be both "a judgment upon the merits" and a dismissal sans prejudice. It must be either one or the other. Were it not for the reference in the journal entry to plaintiff's election "to stand on his Amended Petition", the order under review would afford the classical example of a " 683(5) dismissal. Does the allusion to plaintiff's "election" alter the essential character or effect of the trial court's decision? We think not. | An action's termination cannot be both a judgment upon merits and a dismissal sans prejudice; it must be either one or other. | Can the termination of a case be both a judgment on the merits and a dismissal without prejudice? | Pretrial Procedure - Memo # 10509 - C - SB_63378.docx | ROSS-003308849-ROSS-003308850 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 14914 | Rice v. Crow, 81 Cal. App. 4th 725 | 307A+690 | A retraxit is a judgment on the merits preventing a subsequent action on the dismissed claim. It "has always been deemed a judgment on the merits against the plaintiff, estopping him from subsequently maintaining an action for the cause renounced.... It has been frequently held that a judgment or order dismissing an action, based upon a stipulation or agreement of the parties settling and adjusting the claim or cause of action in suit and providing for the dismissal is a bar to another action for the same cause." (2 Freeman on Judgments (5th ed.1925) " 757, pp. 1595"1596.) "[A] dismissal with prejudice [is] a retraxit constituting a decision on the merits invoking the principles of res judicata." (Torrey Pines Bank v. Superior Court (1989) 216 Cal.App.3d 813, 822, 265 Cal.Rptr. 217.) | "Retraxit" is a judgment on the merits preventing a subsequent action on the dismissed claim. | "Is ""retraxit"" a judgment on the merits preventing a subsequent action on the dismissed claim?" | 025125.docx | LEGALEASE-00156959-LEGALEASE-00156960 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14915 | Channel Lumber Co. v. Porter Simon, 78 Cal. App. 4th 1222 | 308+1 | "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ.Code, " 2295.) The essence of an agency relationship is the delegation of authority from the principal to the agent which permits the agent to act "not only for, but in the place of, his principal" in dealings with third parties. (People v. Treadwell (1886) 69 Cal. 226, 236, 10 P. 502, italics in original.) "The heart of agency is expressed in the ancient maxim: "Qui facit per alium facit per se." [He who acts through another acts by or for himself.]" (Wallace v. Sinclair (1952) 114 Cal.App.2d 220, 229, 250 P.2d 154; see 3 Am.Jur.2d, Agency (1986) " 2, p. 510.) | Heart of agency is expressed in the ancient maxim: "Qui facit per alium facit per se," meaning he who acts through another acts by or for himself. | "What does the principle qui facit per alium, facit per se mean?" | 041762.docx | LEGALEASE-00157822-LEGALEASE-00157823 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 14916 | In re HH (US), 175 B.R. 188 | 308+1 | Agency is created as the result of conduct by various parties. See Restatement (Second) of Agency " 1, Cmt. b. Subjective statements do not suffice. See In re Singer Products Co., Inc., 102 B.R. 912, 927 (E.D.N.Y.1989). The finder of fact must look to the substance of the relationship. Talismanic language alone does not give rise to an agency. Matter of Shulman Transport Enterprises, Inc., 33 B.R. 383, 185 (S.D.N.Y.1983), aff'd, 744 F.2d 293 (2d Cir.1984) | In deciding whether agency relationship exists, finder of fact must look to substance of relationship; talismanic language alone does not give rise to agency. | Can talismanic language determine an agency relationship? | 041822.docx | LEGALEASE-00157920-LEGALEASE-00157921 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 14917 | Cole v. McWillie, 464 S.W.3d 896 | 308+8 | Agency is a consensual relationship between two parties where one, the agent, acts on behalf of the other, the principal, subject to the principal's control. Bhalli v. Methodist Hosp., 896 S.W.2d 207, 210 (Tex.App."Houston [1st Dist.] 1995, writ denied); Lone Star Partners v. NationsBank Corp., 893 S.W.2d 593 (Tex.App."Texarkana 1994, writ denied); Herschbach v. City of Corpus Christi, 883 S.W.2d 720 (Tex.App."Corpus Christi 1994, writ denied). For an agency relationship to exist, there must be both a meeting of the minds between the parties and some act constituting the appointment of an agent. Lone Star Partners, 893 S.W.2d at 600. | For an agency relationship to exist, there must be both a meeting of the minds between the parties and some act constituting the appointment of an agent. | Should there be meeting of minds between the parties for an agency to exist? | 041846.docx | LEGALEASE-00157544-LEGALEASE-00157545 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 14918 | Arizona State Tax Comm'n v. Parsons-Jurden Corp., 9 Ariz. App. 92 | 308+1 | And our courts have held that to be the subject of the Transaction Privilege Tax the "sale" must have taken place in Arizona. Goodyear Aircraft Corp. v. Arizona State Tax Com'n, surpa. In the instant case the equipment sold to Duval was delivered F.O.B., Mineral Park, Arizona, and under the rationale in Goodyear, supra, there may well have been a sale in the State subject to the tax. The record does not support the contention of the Tax Commission that plaintiff made that sale or even that plaintiff was engaged in business in Arizona. Indeed, the contract, the testimony, and the exhibits before this Court indicate that by whatever name the parties called themselves, the plaintiff as to the procuring of equipment for the construction at Mineral Park, was no more and no less than a purchasing agent of the Duval Corporation:"Agency is ultimately a question of the intention of the parties, as evidenced by their acts, and is not dependent upon what the particular person in question is called."Granite State Fire Ins. Co. v. Mitton, D.C., 98 F.Supp. 706, 709. See also Williston, Contracts, 3 Ed., Section 21. | Agency is ultimately a question of intention of parties as evidenced by their acts, and is not dependent upon what the particular person in question is called. | Is agency a question of the intention of the parties? | 041918.docx | LEGALEASE-00157512-LEGALEASE-00157513 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 14919 | Basile v. H & R Block, 563 Pa. 359 | 308+1 | The law is clear in Pennsylvania that the three basic elements of agency are: " "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." " Scott v. Purcell, 490 Pa. 109, 117, 415 A.2d 56, 60 (1980), quoting Restatement (Second) of Agency " 1, Comment b (1958); see also Reid v. Ruffin, 503 Pa. 458, 463, 469 A.2d 1030, 1033 (1983). "[A]gency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." Smalich v. Westfall, 440 Pa. 409, 413, 269 A.2d 476, 480 (1971). The burden of establishing an agency relationship rests with the party asserting the relationship. Scott, 490 Pa. at 117 n. 8, 415 A.2d at 61 n. 8. "An agency relationship is a fiduciary one, and the agent is subject to a duty of loyalty to act only for the principal's benefit." Sutliff v. Sutliff, 515 Pa. 393, 404, 528 A.2d 1318, 1323 (1987), citing Restatement (Second) of Agency " 387 (1958). Thus, in all matters affecting the subject of the agency, the agent must act with the utmost good faith in furthering and advancing the principal's interests, including a duty to disclose to the principal all relevant information. See Sylvester v. Beck, 406 Pa. 607, 610-11, 178 A.2d 755, 757 (1962). | Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary. | Does an agreement for the creation of a fiduciary relationship with control by the beneficiary result in agency? | Principal and Agent - Memo 498 - KK_63277.docx | ROSS-003305551-ROSS-003305552 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14920 | Viado v. Domino's Pizza, 230 Or. App. 531 | 231H+23 | If the relationship at issue is one of agency, the next question, for vicarious liability purposes, is what type of agency. Again, the Supreme Court's discussion in Vaughn is instructive:"Understanding agency law in the context of vicarious liability requires an understanding of two types of agents: employees (or "servant" agents) and agents who are not employees (sometimes referred to as "nonservant" agents). "All servants are agents and all masters, principals. However, all principals and agents are not also masters and servants." Kowaleski v. Kowaleski, 235 Or. 454, 457, 385 P.2d 611 (1963). The common law distinguishes between the two types of agents using a "right-to-control" test. An agent is an employee if the principal has the right to control the physical details of the work being performed by the agent; in other words, the principal directs not only the end result, but also controls how the employee performs the work. Schaff v. Ray's Land & Sea Food Co., Inc., 334 Or. 94, 100, 45 P.3d 936 (2002). In contrast, when the agent retains control over the details of the manner in which it performs its duties, that agent is a nonemployee agent. Restatement (Second) of Agency at " 220 comment e. | Pursuant to common law "right-to-control" test, an agent is an employee if the principal has the right to control the physical details of the work being performed by the agent; in other words, the principal directs not only the end result, but also controls how the employee performs the work. | When is an agent considered an employee? | Principal and Agent - Memo 507 - KK_63285.docx | ROSS-003311826-ROSS-003311827 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14921 | Bruce v. ICI Americas, 933 F. Supp. 781 | 308+1 | The principal's right to control the agent is the primary consideration in determining the existence of an agency relationship. Mermigis v. Servicemaster Industries, Inc., 437 N.W.2d 242, 246 (Iowa 1989). Although they are distributors for Zeneca's products, J & N and Benes are incorporated separately from Zeneca. Plaintiffs point to Zeneca's offer of various rebates, promotional gifts, contests and calibration of equipment through dealers such as J & N and Benes as evidence of a principal-agent relationship. | Under Iowa law, principal's right to control agent is primary consideration in determining existence of agency relationship. | What is the primary consideration in determining the existence of an agency relationship? | Principal and Agent - Memo 510 - KK_63288.docx | ROSS-003321317-ROSS-003321318 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 14922 | Kahn v. Royal Banks of Missouri, 790 S.W.2d 503 | 308+29.5 | An agent's authority under an agency agreement of indefinite duration does terminate at the end of a "reasonable period." Restatement (Second) of Agency, " 105 (1957)2; see also 3 Am Jur 2d Agency " 37 (1986). The reasonable duration of an agent's authority depends on such factors as "the nature of the acts specifically authorized, the formality of the authorization, [and] the likelihood of changes in the purposes of the principal." | Reasonable duration of agent's authority depends on such factors as nature of acts specifically authorized, formality of authorization, and likelihood of changes in purposes of principal. | What does the duration of agency depend upon? | 042163.docx | LEGALEASE-00157522-LEGALEASE-00157523 | Condensed, SA | 0.57 | 0 | 1 | 0 | 1 | |
| 14923 | In re Wyly, 552 B.R. 338 | 308+8 | First, and of significance, the Debtors have never argued that French was not the Wylys' agent regarding the implementation of the Wyly offshore system. Nor could they. Under Texas law, "an agency relationship arises when the principal consents to the agent acting on the principal's behalf." An agency relationship need not be expressly established, and instead may be implied based on the conduct of the parties under the circumstances. | Under Texas law, an agency relationship need not be expressly established, and instead may be implied based on the conduct of the parties under the circumstances. | How is a relationship of agency created? | 042167.docx | LEGALEASE-00157484-LEGALEASE-00157485 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 14924 | TracFone Wireless v. Comm'n on State Emergency Commc'ns, 397 S.W.3d 173 | 371+2002 | Even though the Legislature referred to the e911 charges as "fees," both parties refer to tax laws throughout their briefing. That is, the parties themselves treat the so-called "fees" as taxes. We therefore do the same. After all, the Legislature's decision to label a charge a "fee" rather than a "tax" is not binding on this Court.See Conlen Grain & Mercantile, Inc. v. Tex. Grain Sorghum Producers Bd., 519 S.W.2d 620, 623 (Tex.1975) (statutory "assessment" is really a tax); Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896, 899"900 (1937) (statutory "license fee" is really a tax). A charge is a fee rather than a tax when the primary purpose of the fee is to support a regulatory regime governing those who pay the fee. Tex. Boll Weevil Eradication Found. v. Lewellen, 952 S.W.2d 454, 461 (Tex.1997); Conlen Grain & Mercantile, 519 S.W.2d at 623"24; H. Rouw Co. v. Tex. Citrus Comm'n, 151 Tex. 182, 247 S.W.2d 231, 234 (1952); Hurt, 110 S.W.2d at 899"900; City of Fort Worth v. Gulf Refining Co., 125 Tex. 512, 83 S.W.2d 610, 617"19 (1935). Here, no regulatory regime is created that regulates the consumers of wireless services, so the e911 fee is a tax rather than a fee. | Legislature's decision to label a charge a "fee" rather than a "tax" is not binding; a charge is a fee rather than a tax when the primary purpose of the fee is to support a regulatory regime governing those who pay the fee. | Is the legislature's decision to label a charge a fee rather than a tax binding on the courts? | 044569.docx | LEGALEASE-00157062-LEGALEASE-00157063 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 14925 | Manning v. State Indus. Acc. Comm'n, 234 Or. 207 | 413+108 | Our Workmen's Compensation Law is designed primarily to cover the workmen of employers engaged in hazardous occupations listed in the act. The controlling factor is the occupation of the employer. | In determining whether workmen are engaged in hazardous occupations covered by Workmen's Compensation Act, the controlling factor is the occupation of the employer. ORS 656.082, 656.084, 656.086. | Does Workmens Compensation law protect the workmen of employers engaged in hazardous occupations? | 047699.docx | LEGALEASE-00157640-LEGALEASE-00157641 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 14926 | Finlay & Assocs. v. Borg-Warner Corp., 146 N.J. Super. 210 | 29T+264 | Plaintiff Finlay and Associates, Inc. entered into a written distributorship agreement dated October 11, 1968 with Morse Chain, Inc., predecessor to defendant Borg-Warner. The New Jersey Franchise Practices Act, N.J.S.A. 56:10"1 Et seq., adopted as L.1971, c. 356, effective December 21, 1971, applies to franchises created or renewed or amended after the effective date. See N.J.S.A. 56:10"8. In this case there is no written amendment to the distributorship agreement. Nevertheless, plaintiff alleges that the act applies by virtue of certain alleged additions or withdrawals of product lines specifically listed in that agreement and which it claims occurred after the effective date, and thus should be treated as amendments to the distributorship agreement to bring it within the statute's coverage. Under N.J.S.A. 56:10"5, if the act applies, a franchisee can be terminated only in accordance with the act, and on notice and for good cause. "Franchise" is defined in N.J.S.A. 56:10"3(a):"Franchise" means a written arrangement for a definite or indefinite period, in which a person Grants to another person a License to Use a trade name, trade mark, service mark, or related characteristics, And in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement or otherwise. (Emphasis added)N.J.S.A. 56:10"4 spells out "franchises," as defined, to which the act is applicable. | Where distributorship agreement did not grant a license to use trade name or trademark, service mark or related characteristic, for either a definite or indefinite period of time, distributorship agreement did not contain requirement for economic dependency, and distributor's business did not operate under name of any franchisor, Franchise Practices Act did not apply to distributorship agreement, and distributor could not recover against manufacturer under such Act for alleged wrongful termination of distributorship. N.J.S.A. 56:10-1 et seq., 3, subd. a, 4, 5, 7. | What does the term franchise mean? | Franchises - Memo 2 - ANG_65693.docx | ROSS-003283668-ROSS-003283670 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 14927 | In re Bryan, 466 B.R. 460 | 29+16 | The Annuity is not insurance under the relevant statutes. We agree with the bankruptcy court's determination that, even though there are similarities between life insurance contracts and annuities, the two are quite different.These differences are shown by the Annuity at issue here. And the record simply does not show that the annuity is insurance. The bankruptcy court correctly pointed out that whereas a life insurance contract is normally funded in regular intervals and is payable at death, the Annuity was funded only at its inception and it is payable at a pre-determined date.The mere fact that the Annuity was issued by an insurance company was insufficient to make the Annuity life insurance. | Debtor's annuity was not "insurance" and, therefore, her interest in annuity did not fall within Missouri exemptions for assessment plan life insurance, stipulated premium plan life insurance, or unmatured life insurance contracts; though there are similarities between life insurance contracts and annuities, the two are quite different, as a life insurance contract is normally funded in regular intervals and is payable at death, while an annuity is funded at its inception and is payable at a pre-determined date, and mere fact that debtor's annuity was issued by insurance company was insufficient to make it life insurance. V.A.M.S. SS 377.090, 377.330, 513.430(1)(7). | How is insurance different from annuity? | 019554.docx | LEGALEASE-00158320-LEGALEASE-00158321 | Condensed, SA, Sub | 0.04 | 0 | 1 | 1 | 1 | 1 |
| 14928 | Ayer v. Ayer, 41 Vt. 346 | 289+954 | Each partner has equal legal right to collect the debts due the partnership, but in making such collections he acts for the partnership, and not in his sole, exclusive right, and is accountable, as partner, for whatever he collects. | Where a partnership is dissolved, each partner has equal right to collect the debts due; but in making such collection he acts for the partnership, and not in his sole exclusive right, and is accountable as such partner for all that he collects. | "After dissolution, does each partner have the power to collect debts of the partnership?" | 021799.docx | LEGALEASE-00158538-LEGALEASE-00158539 | Condensed, SA, Sub | 0.05 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14929 | Geiselman v. Andreson, 242 S.W. 798 | 289+768 | Andreson's allegation that the Big Sand Oil Company was an "unincorporated joint"stock company," and that Geiselman and Kutschback were "members, stockholders and shareholders" thereof, was an allegation of partnership. Lumber Co. v. Pine Land Association, 31 Tex. Civ. App. 375, 72 S. W. 875; Allen v. Long, 80 Tex. 261, 16 S. W. 43, 26 Am. St. Rep. 735; Cameron v. First National Bank, 4 Tex. Civ. App. 369, 23 S. W. 334. And such allegations were sufficient to apprise them that they were being sued as partners.Allegations of partnership can be controverted only by a special plea denying under oath the fact of the partnership. Article 1906, R. C. S.; Railway v. Tisdale, 74 Tex. 8, 11 S. W. 900, 4 L. R. A. 545; Railway v. Edloff, 89 Tex. 454, 34 S. W. 414, 35 S. W. 144. Unless so denied, such allegations are taken as confessed. | Allegations of partnership can be controverted only by a special plea, denying under oath the fact of the partnership, and, unless so denied, such allegations are taken as confessed. | Is an allegation of partnership confessed if not denied under an oath? | 021810.docx | LEGALEASE-00158580-LEGALEASE-00158581 | SA, Sub | 0.78 | 0 | 0 | 1 | 1 | |
| 14930 | McLeod v. Marion Labs., 600 S.W.2d 656 | 307A+561.1 | For an affirmative defense to be sustained upon a bare motion to dismiss, the defense must be irrefutably established by the plaintiff's pleading.Fiandaca v. Niehaus, 570 S.W.2d 714, 717 (Mo.App.1978); International Plastics Development, Inc. v. Monsanto Co., 433 S.W.2d 291 (Mo. banc 1968). This is but the corollary of the accepted rule that the burden of proof of an affirmative defense rests upon the one asserting the defense | For affirmative defense to be sustained upon bare motion to dismiss, defense must be irrefutably established by plaintiff's pleading. V.A.M.R. Civil Rule 55.27(a)(1). | Should a defense be established by pleading for a petition to be dismissed? | 025450.docx | LEGALEASE-00158276-LEGALEASE-00158277 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 14931 | Braddock v. Zimmerman, 906 A.2d 776 | 307A+695 | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. It constitutes a judicial determination that the original complaint was either not well pleaded as a derivative action or did not satisfy the legal test for demand excusal. Following such a dismissal, for purposes of a Rule 23.1 demand inquiry, the complaint is not validly in litigation. Consequently, where a complaint is amended with permission following a dismissal without prejudice, even if the act or transaction complained of in the amendment is essentially the same conduct that was challenged in the original dismissed complaint, the Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed. | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. | Is a complaint that is dismissed without prejudice but with express leave to amend nevertheless a dismissed complaint? | Pretrial Procedure - Memo # 10914 - C - SK_64104.docx | ROSS-003280161-ROSS-003280162 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14932 | Houston Indep. Sch. Dist. v. Morris, 355 S.W.3d 668 | 371+2785 | The Taxpayers suggest that the rules of civil procedure allow them to proceed with their claim even after the Taxing Units nonsuited their claims. Texas Rule of Civil Procedure 162 provides in pertinent part, "Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief...." Tex.R. Civ. P. 162; In re Greater Houston Orthopaedic Specialists, 295 S.W.3d 323, 324 (Tex.2009). Although generally a lawsuit may proceed after dismissal of a claim by an adverse party, the lawsuit must independently comport with a court's jurisdiction. See Color Tile, Inc. v. Ramsey, 905 S.W.2d 620, 623 (Tex.App.-Houston [14th Dist.] 1995, no writ). Here, the Taxpayers' affirmative claim for a refund does not comport with the requirements of the Tax Code, which is required for the district court's jurisdiction in this case. See Tex. Tax Code Ann. " 42.09(a)(2). | Rule of civil procedure providing that any dismissal pursuant to rule could not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief did not allow taxpayers to proceed with their affirmative claim for refund after taxing units nonsuited claims against taxpayers for delinquent property taxes and, pursuant to taxpayers' motion, the district court realigned the parties with taxpayers becoming plaintiffs seeking affirmative relief of refund, where taxpayers' affirmative claim did not comport with requirements of Tax Code concerning exhaustion of administrative remedies, which was required for court to have jurisdiction. V.T.C.A., Tax Code S 42.09(a)(2), (b); Vernon's Ann.Texas Rules Civ.Proc., Rule 162. | "Although generally a lawsuit can proceed after dismissal of a claim by an adverse party, should the lawsuit independently comport with a court's jurisdiction?" | 025731.docx | LEGALEASE-00158434-LEGALEASE-00158435 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |
| 14933 | State ex rel. Corbin v. Portland Cement Ass'n, 142 Ariz. 421 | 307A+690 | The court felt that a three-day delay under the circumstances was de minimis. We agree. Furthermore, since the judgment included mandatory injunctions against the State, the court retained jurisdiction to review and modify the judgment and injunctions. Further, since the judgment and injunctions were conditioned on events to occur in the future, the court intended to retain jurisdiction to determine the final issue: whether the dismissal would be with or without prejudice. Finally, where a judgment of dismissal and injunctions are intermixed, as they are sub judice, and the court specifically retained jurisdiction "for the limited purpose of enforcing the provisions of this Judgment of Dismissal and Injunction," we see no error in the court exercising its discretion as it did here. | Since judgment granting state's motion of dismissal of its antitrust action and injunctions imposed pursuant to dismissal requiring State to move within 30 days to dismiss its claim in antitrust action pending in Federal District Court were intermixed, and since trial court specifically retained jurisdiction for limited purpose of enforcing provisions of its judgment of dismissal and injunction, trial court's determination that State's three-day delay in dismissing federal court claim was de minimis under the circumstances and that dismissal should be without prejudice was not an abuse of discretion. 16 A.R.S. Rules Civ.Proc., Rule 41(a), par. 2. | When does a court retain its jurisdiction? | 025742.docx | LEGALEASE-00158631-LEGALEASE-00158632 | Condensed, SA, Sub | 0.17 | 0 | 1 | 1 | 1 | 1 |
| 14934 | State v. Chillingworth, 106 Fla. 323 | 307A+693.1 | [After a plaintiff has suffered the dismissal of his cause of action, the court is without further jurisdiction and has no right to render any judgment in his favor nor any judgment against him. The parties are out of court for every purpose other than to carry the order into effect, or to vacate or modify the same; and after the expiration of the term at which a suit is dismissed the court has no power to reinstate the cause. Gray v. Ames, 220 Ill. 251, 77 N. E. 219, 5 Ann. Cas. 174; note 26 L. R. A. (N. S.) 914. | After dismissal of action, court is without further jurisdiction and cannot render any judgment for or against plaintiff. | "After dismissal of action, is a court without further jurisdiction and cannot render any judgment for or against plaintiff?" | 026009.docx | LEGALEASE-00158396-LEGALEASE-00158397 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 14935 | Keyes v. Chicago, B. & Q. R. Co., 326 Mo. 236 | 307A+693.1 | Thereupon, and before the submission of the cause to the jury, counsel for plaintiff announced in open court that, because of the direction of a verdict in favor of the individual defendants, Briscoe and Murphy, the plaintiff "desires to take involuntary non-suits against the defendants, Murphy and Briscoe, with leave to move to set the same aside"; to which the court affirmatively responded, "All right; yes." Under the code procedure, applicable in our jurisdiction and in most other state jurisdictions, the taking by a plaintiff of an involuntary nonsuit as to one or more of several codefendants is equivalent to a dismissal of plaintiff's action as to the defendants against whom the involuntary nonsuit is taken (18 C. J. 1145, 1147); and, as a general rule, in tort actions, plaintiff may dismiss or discontinue as to a part of the defendants without discharging the rest, except where the action is for a tortious conspiracy entered into by all of the defendants (18 C. J. 1162). | Taking of involuntary nonsuit against one or more of defendants is equivalent to dismissal of action against such defendants. | Is the taking of involuntary nonsuit against one or more of defendants equivalent to a dismissal of action against such defendants? | Pretrial Procedure - Memo # 11127 - C - VP_63786.docx | ROSS-003305910-ROSS-003305911 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14936 | Juarbe v. City of Philadelphia, 288 Pa. Super. 330 | 308+3(1) | With those concepts in mind, we must also recognize other legal principles applicable to the Appellant's initial contention which is that Exxon should be held liable for torts committed by William Davis under the theory of respondeat superior, on the premise that Davis was allegedly the servant of Exxon. While the Appellant describes Davis as both an agent and a servant in its argument, it is proper to recognize the legal distinction between those terms. A principal and agent can be in the relationship of a master and servant, or simply in the status of two independent contractors. See Smalich v. Westfall, 440 Pa. 409, 269 A.2d 476 (1970); Turley v. Kotter, 263 Pa.Super. 523, 398 A.2d 699 (1979). | Principal and agent can be in relationship of a master and servant, or simply in status of two independent contractors. | Can a principal and agent be in the status of two independent contractors? | Principal and Agent - Memo 538 - RK_63996.docx | ROSS-003321902-ROSS-003321903 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 14937 | Am. Soc. of Mech. Engineers v. Hydrolevel Corp., 456 U.S. 556 | 308+159(1) | As the Court of Appeals observed, under general rules of agency law, principals are liable when their agents act with apparent authority and commit torts analogous to the antitrust violation presented by this case. See generally 10 W. Fletcher, Cyclopedia of the Law of Private Corporations 4886, pp. 400"401 (rev. ed. 1978); W. Seavey, Law of Agency " 92 (1964). For instance, a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority. See, e. g., Standard Surety & Casualty Co. v. Plantsville Nat. Bank, 158 F.2d 422 (CA2 1946), cert. denied, 331 U.S. 812, 67 S.Ct. 1203, 91 L.Ed. 1831 (1947). Similarly, a principal is liable for an agent's misrepresentations that cause pecuniary loss to a third party, when the agent acts within the scope of his apparent authority. Restatement (Second) of Agency "" 249, 262 (1957) (Restatement); see Rutherford v. Rideout Bank, 11 Cal.2d 479, 80 P.2d 978 (1938). Also, if an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement. Restatement "" 247, 254. Finally, a principal is responsible if an agent acting with apparent authority tortiously injures the business relations of a third person. Id., " 248 and Comment b, p. 548. | Under general rules of agency law, principals are liable when their agents act with apparent authority and commit torts. | Can a principal be held liable for the tort of an agent? | 042031.docx | LEGALEASE-00159140-LEGALEASE-00159141 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 14938 | Anthony v. City of Omaha, 283 Neb. 868 | 371+3602 | But sales taxes and occupation taxes tax different kinds of acts. An occupation tax is a tax upon the privilege of doing business in a particular jurisdiction or upon the act of exercising, undertaking, or operating a given occupation, trade, or profession. A sales tax, on the other hand, is a tax upon the sale, lease, rental, use, storage, distribution, or other consumption of all tangible personal property in the chain of commerce. | A "sales tax" is a tax upon the sale, lease, rental, use, storage, distribution, or other consumption of all tangible personal property in the chain of commerce. | What is a sales tax? | Taxation - Memo 1066 - C - KI_64706.docx | ROSS-003282142-ROSS-003282143 | Condensed, SA | 0.62 | 0 | 1 | 0 | 1 | |
| 14939 | Perez-Olano v. Gonzalez, 248 F.R.D. 248 | 24+154 | In 1990, Congress enacted the special immigrant juvenile ("SIJ") provisions of the Immigration and Nationality Act ("INA"). 8 U.S.C. "" 1101(a)(27)(J) & 1255(a). The SIJ provisions created a method for abused, neglected, and abandoned immigrant children to become lawful permanent residents of the United States. | "Age-out" regulations pursuant to which an alien minor will "age-out" of eligibility for special immigrant juvenile (SIJ) status if the child turns 21 years old before being granted SIJ status or SIJ-based adjustment, or if the child is no longer dependent on the state court or eligible for long-term foster care, are consistent with statutory goal of protecting abused, neglected, and abandoned immigrant children, and their adoption of those regulations was not arbitrary and capricious. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J); 8 C.F.R. SS 204.11(c)(1, 5), 205.1(a)(3)(iv). | "Was Special Immigrant Juvenile (SIJ) status created to protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent residents?" | "Aliens, Immigration and Citizenship - Memo 118 - RK_64760.docx" | ROSS-003278551-ROSS-003278552 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 14940 | Fonseca v. Fong, 167 Cal. App. 4th 922 | 24+211 | Federal authority to regulate immigration derives from various sources, including the federal government's power "[t]o establish [a] uniform rule of naturalization" (U.S. Const., art. I, " 8, cl. 4), its power "[t]o regulate commerce with foreign nations" (id., cl. 3), and its broad authority over foreign affairs. (Toll v. Moreno (1982) 458 U.S. 1, 10, 102 S.Ct. 2977, 73 L.Ed.2d 563.) Thus, the Supreme Court has established that the "[p]ower to regulate immigration is unquestionably exclusively a federal power." (De Canas, supra, 424 U.S. 351, 354, 96 S.Ct. 933, 47 L.Ed.2d 43; accord, Hines v. Davidowitz (1941) 312 U.S. 52, 62, 61 S.Ct. 399, 85 L.Ed. 581; Galvan v. Press (1954) 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911; Truax v. Raich (1915) 239 U.S. 33, 42, 36 S.Ct. 7, 60 L.Ed. 131.) As the Supreme Court has repeatedly said, " "over no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens." (Fiallo v. Bell (1977) 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50, quoting Oceanic Steam Navigation Co. v. Stranahan (1909) 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013.) | Over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens. | Is the legislative power of Congress more complete over the admission of aliens than any other conceivable subject? | "Aliens, Immigration and Citizenship - Memo 127 - RK_64768.docx" | ROSS-003320269-ROSS-003320270 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14941 | In re Estate of Nina L. ex rel. Howerton, 2015 IL App (1st) 152223 | 211+2066 | One theme that runs through several decisions is the state court's reluctance to make the requested findings based on policy concerns. For example, in Leslie H. v. Superior Court, 224 Cal.App.4th 340, 168 Cal.Rptr.3d 729 (2014), an immigrant minor was adjudicated delinquent of assault and burglary after she and two friends attempted to steal items from a liquor store. After her guilty plea, the minor was declared a ward of the court and committed to a juvenile detention facility. She then applied to the court for the necessary SIJ predicate findings. After a hearing at which evidence of the minor's abuse and abandonment by her biological parents was presented, the court declined to make the findings. The trial court concluded that Congress could not have intended to confer immigration benefits on juveniles adjudicated delinquent of criminal offenses. Further, the court determined that it was unable to find that (i) reunification was not viable because it doubted the juvenile's credibility and (ii) return to Mexico was not in the juvenile's best interest given her failure to attend school and criminal behavior while in the United States. Reversing, the California Court of Appeal concluded that the trial court had misapprehended its role in making the SIJ predicate findings:"A state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country." | The Special Immigrant Juvenile (SIJ) statute affirms that state courts are the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests. Immigration and Nationality Act, S 101(a)(27)(J), 8 U.S.C.A. S 1101(a)(27)(J). | Is a state court's role in the Special Immigrant Juvenile (SIJ) process to identify neglected alien children? | "Aliens, Immigration and Citizenship - Memo 155 - RK_64790.docx" | ROSS-003279698-ROSS-003279699 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14942 | Sei Fujii v. State of California (1952) supra, 38 Cal.2d 718 | 92+3114 | The state asserts that the purpose of the alien land law is to restrict the use and ownership of land to persons who are loyal and have an interest in the welfare of the state. As we shall see later, this is not the true objective of the legislation, but even if it were there is no reasonable relationship between that asserted purpose and the classification on the basis of eligibility to citizenship. Just as eligibility to citizenship does not automatically engender loyalty or create an interest in the welfare of the country, so ineligibility does not establish a lack of loyalty or the absence of interest in the welfare of the country. Nor does it follow that a person has no stake in the economic and social fortune of a state merely because the federal law denies him the right to naturalization. His American-born children are citizens, and, having made his home here, he has a natural interest, identical with that of an eligible alien, in the strength and security of the country in which he makes a living for his family and educates his children. | Even if purpose of Alien Land Law, classifying persons on basis of eligibility to citizenship, was to restrict use and ownership of land to persons who were loyal and had interest in welfare of state, classification would have been unreasonable, since ineligibility for citizenship does not establish lack of loyalty or absence of interest in welfare of country. U.S.C.A.Const. Amend. 14; St.1921, p. lxxxxiii, SS 1, 2, 7. | Does eligibility to citizenship automatically engender loyalty or create an interest in the welfare of the country? | "Aliens, Immigration and Citizenship - Memo 67 - RK_64801.docx" | ROSS-003280622-ROSS-003280623 | Condensed, Order, SA, Sub | 0.6 | 1 | 1 | 1 | 1 | 1 |
| 14943 | In re Hei Ting C., 109 A.D.3d 100 | 24+179 | In New York, a child may request that the Family Court, recognized as a juvenile court (see 8 CFR 204.11[a] ), issue an order making special findings and a declaration so that he or she may petition the United States Citizenship and Immigration Services for SIJS (see e.g. Matter of Jisun L. v. Young Sun P., 75 A.D.3d 510, 905 N.Y.S.2d 633). Specifically, the findings of fact must establish that: (1) the child is under 21 years of age; (2) the child is unmarried; (3) the child is dependent upon a juvenile court or legally committed to an individual appointed by a State or juvenile court; (4) reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis; and (5) it is not in the child's best interests to be returned to his or her home country (see 8 USC " 1101[a] [27] [J] [ii]; 8 CFR 204.11[c] ). With the declaration and special findings, the eligible child may then seek the consent of the Department of Homeland Security for SIJS (see 8 USC " 1101[a][27][J][iii] ). | The Family Court's issuance of a child support order directing mother to pay child support to father did not qualify the parents' two children, who were born in Hong Kong and lived in United States with their father, as "dependent on a juvenile court" or committed to the custody of an individual appointed by a State or juvenile court, as required for the children to qualify for special immigrant juvenile status (SIJS) under federal law; the Family Court had not accepted jurisdiction over the custody of the children, there had been no need for intervention by the Family Court to ensure that the children were placed in a safe and appropriate custody, guardianship, or foster care situation, and the children had not been committed to the custody of any individual by any court. 8 U.S.C.A. S 1101(a)(27)(J)(i). | Are special findings of juvenile court necessary to permit a juvenile to file an application for Special Immigrant Juvenile (SIJ) status? | 006925.docx | LEGALEASE-00160214-LEGALEASE-00160215 | Condensed, SA, Sub | 0.2 | 0 | 1 | 1 | 1 | 1 |
| 14944 | Rosas v. Alice's Tea Cup, 127 F. Supp. 3d 4 | 24+123 | However, federal courts have made "clear that the protections of the FLSA are available to citizens and undocumented workers alike." Flores v. Albertsons, Inc., CV 01"00515, 2002 WL 1163623, at 5 (C.D.Cal. April 9, 2002); see also Colon v. Major Perry Street Corp., 987 F.Supp.2d 451, 459 (S.D.N.Y.2013) ("FLSA's mandatory language leaves no discretion for courts to alter the statute's remedial scheme based on an employee's immigration status."); Contreras v. Corinthian Vigor Insurance Brokerage, Inc., 25 F.Supp.2d 1053, 1056 (N.D.Cal.1998). Therefore, in the context of wage and hour violations under both the FLSA and the NYLL, immigration status has generally been protected from discovery. See Colon, 987 F.Supp.2d at 464"65 (finding immigration status irrelevant to both FLSA and NYLL claims); Francois v. Mazer, No. 09 Civ. 3275, 2012 WL 1506054, at *1 (S.D.N.Y. April 24, 2012) ("This Court finds that evidence of immigration status is irrelevant and therefore not admissible regarding any issue with respect to any [FLSA or] New York state law claim."); Flores v. Amigon, 233 F.Supp.2d 462, 464"65 (E.D.N.Y.2002); Liu v. Donna Karan International, Inc., 207 F.Supp.2d 191, 192 (S.D.N.Y.2002) ("[C]ourts addressing the issue of whether defendants should be allowed to discover plaintiff-workers' immigration status in cases seeking unpaid wages brought under the FLSA have found such information to be undiscoverable."). | The protections of the FLSA are available to citizens and undocumented workers alike; denying undocumented workers the protection of FLSA would permit abusive exploitation of workers and create an unacceptable economic incentive to hire undocumented workers by permitting employers to underpay them. Fair Labor Standards Act of 1938, S 1, 29 U.S.C.A. S 201. | Are the protections of the Fair Labor Standards Act (FLSA) available to undocumented workers? | "Aliens, Immigration and Citizenship - Memo 75 - RK_64809.docx" | ROSS-003280385-ROSS-003280386 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 14945 | Arizona v. United States, 567 U.S. 387 | 24+690 | The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens. See Toll v. Moreno, 458 U.S. 1, 10, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982); see generally S. Legomsky & C. Rodr"guez, Immigration and Refugee Law and Policy 115"132 (5th ed. 2009). This authority rests, in part, on the National Government's constitutional power to "establish an uniform Rule of Naturalization," Art. I, " 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations, see Toll, supra, at 10, 102 S.Ct. 2977 (citing United States v. Curtiss"Wright Export Corp., 299 U.S. 304, 318, 57 S.Ct. 216, 81 L.Ed. 255 (1936)). | Government of United States has broad, undoubted power over subject of immigration and status of aliens, resting, in part, on its constitutional power to "establish an uniform Rule of Naturalization," and its inherent power as sovereign to control and conduct relations with foreign nations. U.S.C.A. Const. Art. 1, S 8, cl. 4. | Does the Government of the United States have the power to regulate the status of aliens? | "Aliens, Immigration and Citizenship - Memo 84 - RK_64817.docx" | ROSS-003297413-ROSS-003297414 | Condensed, Order, SA, Sub | 0.52 | 1 | 1 | 1 | 1 | 1 |
| 14946 | Indiana Nat. Bank of Indianapolis v. Goss, 208 F.2d 619 | 8.30E+10 | Defendant is partially correct that the law of the forum governs in this action. Inasmuch as this suit was filed and tried in Illinois we must apply the conflict of law decisions of the Illinois Courts. The Illinois courts have held that the law of the place of performance of a contract, or the place of payment of a note, is the law which will govern the nature, validity, interpretation and effect of the obligation. George v. Haas, 311 Ill. 382, 143 N.E. 54; Hurtt v. Steven, 333 Ill.App. 181, 77 N.E.2d 204.2 These notes were all payable in Indianapolis, Indiana, and we must look to the Indiana law in determining the merits of the defendant's contentions. In diversity cases we are bound to take judicial notice of the law of Indiana, without the necessity of pleading or proof of the applicable law and statutes. 28 U.S.C.A. " 1652; Petersen v. Chicago, Great Western Ry. Co., D.C.Neb., 3 F.R.D. 346, affirmed 8 Cir., 138 F.2d 304, 149 A.L.R. 755. | Under Illinois law, law of place of payment of note is the law which will govern the nature, validity, interpretation, and effect of the obligation. | Which law governs the nature and validity of note? | Bills and Notes - Memo 1397 - JK.docx | LEGALEASE-00049183-LEGALEASE-00049184 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14947 | Icard v. Harbuck, 137 Ga. App. 570 | 83E+672 | A note payable generally "after date" and not otherwise expressing a time for payment is payable on demand and due immediately, bearing interest from the date of demand, which is any date on and after execution. Hotel Lanier Co. v. Johnson, 103 Ga. 604, 30 S.E. 558; Love v. Perry, 19 Ga.App. 86, 90 S.E. 978. See also: Pugh v. First Nat. Bank of Barnesville, 130 Ga.App. 627, 204 S.E.2d 370. In respect to the terms of the debt or interest, or the time for its payments, if a concurrent note and deed to secure debt contain conflicting provisions, the note will govern, as being the principal obligation. Linam v. Anderson, 12 Ga.App. 735, 740, 78 S.E. 424. | Note payable generally "after date" and not otherwise expressing time for payment is payable on demand and due immediately, bearing interest from date of demand, which is any date on and after execution. | When is an instrument payable if no time is specified for repayment? | 009645.docx | LEGALEASE-00160443-LEGALEASE-00160444 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 14948 | R.E.B. v. State of Hawaii Dep't of Educ., 870 F.3d 1025 | 141E+862 | Turning to J.B.'s specific objections to the proposed IEP, he first argues that DOE violated the IDEA procedurally by refusing to address his father's concerns about the transition from PAC to a public school. Some Hawaii district courts have noted that the IDEA mentions transition services only with respect to students exiting the public school system, 20 U.S.C. " 1414(d)(1)(A)(i)(VIII)(bb), and thus inferred that transition services need not be provided at any other time. See J.M. v. Dep't of Educ., Haw., 224 F.Supp.3d 1071, 1091 (D. Haw. 2016); Rachel L. v. Haw. Dep't of Educ., No. 11-00756, 2012 WL 4472263, (D. Haw. Sept. 25, 2012) (collecting cases). However, these opinions have read the IDEA too narrowly and are to that extent overruled. The statute provides that IEPs must include "supplementary aids and services" that will allow children to "be educated and participate with other children with disabilities and nondisabled children[.]" 20 U.S.C. " 1414(d)(1)(A)(i)(IV). Services that ease the transition between institutions or programs"whether public or private"serve this purpose. Cf. Cal. Educ. Code " 56345(b) (codifying this broader interpretation of IDEA requirements). Where transition services become necessary for disabled children to "be educated and participate" in new academic environments, transition services must be included in IEPs in order to satisfy the IDEA's "supplementary aids and services" requirement. | IDEA required that autistic student's individualized education plan (IEP) provide transition services when student exited private school to attend public school, overruling J.M. v. Dep't of Educ., Haw., 224 F.Supp.3d 1071, Rachel L. v. Haw. Dep't of Educ., 2012 WL 4472263. Individuals with Disabilities Education Act S 614, 20 U.S.C.A. SS 1414(d)(1)(A)(i)(IV), 1414(d)(1)(A)(i)(VIII)(bb). | "Under the Individuals with Disabilities Education Act (IDEA), must schools provide for transition services when a child transfers between schools?" | 017339.docx | LEGALEASE-00159931-LEGALEASE-00159933 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 14949 | Wellman v. Holzer, 56 N.Y.S.2d 299 | 156+59 | (3) The contention that plaintiff is estopped from maintaining this action is without basis. The doctrine of estoppel does not apply, unless the party asserting it was misled by misrepresentation or conduct. Pagel, Horton & Co. v. Harmon Paper Co., 236 App.Div. 47, 54, 258 N.Y.S. 168, 176. In re Dimon's Estate, Sur., 32 N.Y.S.2d 239, 243. "A person is estopped only so far as his words or conduct have influenced another party." Geiler v. Littlefield, 148 N.Y. 603, 610, 43 N.E. 66, 68. The doctrine is applied to promote justice and fair dealing, never in aid of a fraudulent purpose. Royce v. Watrous, 73 N.Y. 597, 598. Nor does the doctrine of laches apply. *302 Winifred Warren, Inc., v. Turner's Gowns, Sup., 16 N.Y.S.2d 994, 999; Rosenberg v. Rosenthal, 135 Misc. 282, 285, 286, 238 N.Y.S. 62, 65. Here, Holzer was not misled by any act or declaration of plaintiff. Indeed, he was orally requested by plaintiff's general manager to discontinue the use of the trade name immediately after the breach of the contract. In addition, on two subsequent occasions, plaintiff protested in writing against the use of his trade name. | The doctrine of estoppel is applied to promote justice and fair dealing and never in aid of a fraudulent purpose. | Can estoppel never be applied to aid a fraudulent purpose? | Estoppel - Memo #206 - C - CSS_64542.docx | ROSS-003294162-ROSS-003294163 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14950 | City of Detroit v. Detroit United Ry., 172 Mich. 136 | 396A+6 | By the terms of the ordinances creating these franchises they terminated by limitation, June 17, June 30, and July 24, 1910, respectively. The rights of defendant created by these grants, unless, as is claimed, there was some extension given, expired contemporaneously with the franchises. These franchises granted by the complainant municipality to the defendant company and accepted by it constitute in law contracts mutually binding upon both parties. By their terms, as already stated, they expired by limitation. This and other courts have repeatedly held to this effect. Grand Rapids Bridge Co. v. Prange, 35 Mich. 400, 24 Am. Rep. 585; Rapid Railway v. Mt. Clemens, 118 Mich. 136, 76 N. W. 318; Traverse City Co. v. Traverse City, 130 Mich. 22, 89 N. W. 574; Horner v. Eaton Rapids, 122 Mich. 117, 80 N. W. 1012; Scott County v. Missouri, 215 U. S. 336, 30 Sup. Ct. 110, 54 L. Ed. 221; Louisville Trust Co. v. Cincinnati, 76 Fed. 296, 308, 22 C. C. A. 334; Id. (C. C.) 78 Fed. 307; Cleveland Electric Ry. v. Cleveland, 204 U. S. 116, 27 Sup. Ct. 202, 51 L. Ed. 399; Detroit v. Railway, 184 U. S. 382, 22 Sup. Ct. 410, 46 L. Ed. 592. | A franchise granted by a municipality to a street railroad company and accepted by it constitutes in law a contract mutually binding on both parties, which is terminated by the limitation therein expressed. | Is franchise agreement a mutually binding contract upon the parties? | 018496.docx | LEGALEASE-00159950-LEGALEASE-00159951 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14951 | Baltimore Steam Co. v. Baltimore Gas & Elec. Co., 123 Md. App. 1 | 183+1 | To a lesser extent, franchises also implicate the law of contract. Mayor of Baltimore v. Chesapeake & Potomac Tel. Co., 92 Md. 692, 696, 48 A. 465, 466 (1901). The franchise is itself referred to as a contract between the grantor and grantee, and since such a contract confers "exceptional privileges and powers," it is to be strictly construed against the franchisee. Id. As it makes no difference to our analysis of standing whether the franchise is a property right or a contract right, we will refer to the franchise as simply a property right for the remainder of this opinion. | Franchise is a contract between the grantor and grantee, and since such a contract confers exceptional privileges and powers, it is to be strictly construed against the franchisee. | Is franchise a contract between grantor and grantee? | Franchises - Memo 20 - KNR_65694.docx | ROSS-003281457-ROSS-003281458 | Condensed, SA | 0.69 | 0 | 1 | 0 | 1 | |
| 14952 | Salter v. Condon, 236 Ill.App. 17 | 289+525 | It is obvious from the principles announced in the authorities which we have cited in regard to good will, that good will does not always exist. In some cases there may be no good will at all, and in others the value of the good will may be so small as to be negligible. Whether good will exists or not depends upon the facts and circumstances in each case. | Good will does not always exist in the case of a partnership and whether it exists or not depends upon the facts and circumstances in each case. | Does the fact whether good will exists or not depend upon the facts and circumstances in each case? | 022641.docx | LEGALEASE-00160010-LEGALEASE-00160011 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 14953 | Matter of Minton Group, 46 B.R. 222 | 289+558 | In contrast, a tenancy in partnership is not freely alienable. Unlike a tenant in common, a tenant in partnership may not call for partition and sale. Altman v. Altman, 271 App.Div. 884, 67 N.Y.S.2d 119, 121 (1946), aff'd., 297 N.Y. 973, 80 N.E.2d 359 (1948). Because the property interest involved in "400" is significantly different from the one at issue here, "400" is not controlling. | Tenancy in partnership is not freely alienable, and unlike tenant in common, tenant in partnership may not call for partition and sale. | Can a tenancy in partnership be freely alienable like a tenancy in common? | Partnership - Memo 545 - GP_64571.docx | ROSS-003294054 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14954 | Equitable Life Assur. Soc. of U.S. v. McKeithan, 119 Fla. 486 | 302+17 | The rule in Florida is that a declaration is sufficient which contains all essentials of a cause of action whether by direct allegations or by fair inference from the direct allegations. Chase & Co. v. Atlantic Coast Line R. Co., 94 Fla. 922, 115 So. 185; Williams v. Pringle, 61 Fla. 485, 54 So. 452. We find the declaration in this case well within the rule just stated. | Declaration is sufficient when it contains all essentials of cause of action whether by direct allegations or by fair inferences from direct allegations. | Should a declaration contain all the essentials of a cause of action? | 023849.docx | LEGALEASE-00159770-LEGALEASE-00159771 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 14955 | Harman v. Univ. of Tennessee, 353 S.W.3d 734 | 302+38.5 | At issue is the sufficiency of Dr. Harman's complaint. Tennessee Rule of Civil Procedure 8.01 requires that a pleading that sets forth a claim for relief contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for judgment for the relief the pleader seeks." While the complaint need not contain detailed allegations of all the facts giving rise to the claim, it must show that the plaintiff is entitled to relief. See Adams v. Carter Cnty. Mem'l Hosp., 548 S.W.2d 307, 308"09 (Tenn.1977). An essential purpose of the complaint is "to give notice of the issues to be tried so that the opposing party can adequately prepare for trial." Keisling v. Keisling, 92 S.W.3d 374, 377 (Tenn.2002). | An essential purpose of the complaint is to give notice of the issues to be tried so that the opposing party can adequately prepare for trial. Rules Civ.Proc., Rule 8.01. | Is notice giving the purpose of a complaint? | 023861.docx | LEGALEASE-00160016-LEGALEASE-00160017 | SA, Sub | 0.77 | 0 | 0 | 1 | 1 | |
| 14956 | Keough v. Cyrus USA, 204 S.W.3d 1 | 307A+699 | The movant for reinstatement bears the burden to produce evidence supporting the motion. See Calaway v. Gardner, 525 S.W.2d 262, 264 (Tex.App.-Houston [14th Dist.] 1975, no writ) ("The failure of the plaintiff to offer proof of his grounds for reinstatement justified the court's denial of his motion...."); see also HRN, Inc. v. Shell Oil Co., 102 S.W.3d 205, 217 (Tex.App.-Houston [14th Dist.] 2003), rev'd on other grounds, 144 S.W.3d 429 (Tex.2004) (affirming denial of reinstatement when movant alleged compliance with discovery orders but produced no evidence of compliance). | The movant for reinstatement bears the burden to produce evidence supporting the motion. | Does the movant for reinstatement bear the burden to produce evidence supporting the motion? | Pretrial Procedure - Memo 11169 - C - VP_64380.docx | ROSS-003296258-ROSS-003296259 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14957 | Lundburg v. Stinson, 5 Haw. App. 394 | 336H+286 | A dismissal with prejudice "is an adjudication on the merits of all the issues that were raised or could have been raised in the pleadings. Thus, subsequent litigation involving the same claims would be barred by res judicata." Land v. Highway Construction Co., 64 Haw. 545, 551, 645 P.2d 295, 299 (1982) (citations omitted). Therefore, since civil no. 3181 was dismissed with prejudice, res judicata bars the present action against Stinson. | Dismissal with prejudice is adjudication on the merits of all issues that were raised or could have been raised in the pleadings, and subsequent litigation involving same claims is barred by res judicata. Circuit Court Rule 12(b)(6). | Is a dismissal with prejudice an adjudication on the merits of all the issues that were raised or could have been raised in the pleadings? | 039855.docx | LEGALEASE-00159603-LEGALEASE-00159604 | Condensed, SA, Sub | 0.47 | 0 | 1 | 1 | 1 | 1 |
| 14958 | Bailey v. Gitt, 135 N.C. App. 119 | 30+781(1) | A voluntary dismissal with prejudice is the same as a judgment on the merits, Miller Bldg. Corp. v. NBBJ North Carolina, Inc., 129 N.C.App. 97, 497 S.E.2d 433 (1998), and when there has been a judgment on the merits on an issue of negligence, any appeal concerning a directed verdict on issues predicated upon that negligence is rendered moot. Bullard v. N.C. National Bank, 31 N.C.App. 312, 229 S.E.2d 245 (1976) (a jury's verdict of no negligence on the part of agent doctors relieved their parent corporation of any respondeat superior liability, and rendered moot any assignment of error to the trial court's directed verdict for the parent corporation). | Parents' appeal from directed verdict for health care providers on certain claims in wrongful death action was moot, where parents voluntarily dismissed with prejudice "all claims which had not previously been dismissed by the Court pursuant to defendants' motion for a directed verdict"; directed verdict order left open possibility of recovery of damages for funeral expenses and nominal damages, thus keeping alive underlying issue of negligence for determination by jury, but parents' voluntary dismissal with prejudice of negligence issue was same as judgment on merits of that issue. G.S. S 28A-18-2; Rules Civ.Proc., Rule 50(a), G.S. S 1A-1. | Is a voluntary dismissal with prejudice the same as a judgment on the merits? | Pretrial Procedure - Memo 11361 - C - SHB_64428.docx | ROSS-003294277-ROSS-003294278 | Condensed, SA, Sub | 0.01 | 0 | 1 | 1 | 1 | 1 |
| 14959 | Shackelford v. Arkansas Power & Light Co., 334 Ark. 634 | 307A+693.1 | Instead, the claim against the defendant remains until the trial court enters an order of dismissal. Id. Stated differently, an order of dismissal (or nonsuit) does not become effective until it is entered. Id.; see also Standridge v. Standridge, 298 Ark. 494, 769 S.W.2d 12 (1989). | Claim against a defendant remains until the trial court enters an order of dismissal. | Does a claim against a defendant remain until the trial court enters an order of dismissal? | 039867.docx | LEGALEASE-00159668-LEGALEASE-00159669 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 14960 | Lonestar Alternative Sol. v. Leview-Boymelgreen Soleil Developers., 10 So. 3d 1169 | 307A+561.1 | Soleil moved to dismiss first due to the alleged lack of a condition precedent that would trigger Soleil's obligation to pay (no closing took place), and second because Soleil allegedly could make "material changes" without defaulting. However, these are not arguments attacking the sufficiency of the allegations-they are defenses. When deciding a motion to dismiss, a trial court may not consider affirmative defenses. Susan Fixel, Inc. v. Rosenthal & Rosenthal, 842 So.2d 204, 206 (Fla. 3d DCA 2003). This was sufficient to deny Soleil's motion to dismiss. | When deciding a motion to dismiss, a trial court may not consider affirmative defenses. West's F.S.A. RCP Rule 1.140(b). | Will a court consider affirmative defenses when deciding a motion to dismiss? | Pretrial Procedure - Memo 11390 - C - DA_64444.docx | ROSS-003296306-ROSS-003296307 | SA, Sub | 0.79 | 0 | 0 | 1 | 1 | |
| 14961 | Sprint Spectrum, LP v. State, Dep't of Revenue, 174 Wash. App. 645 | 371+3602 | Use tax is a companion tax imposed when a seller does not collect a retail sales tax. See RCW 82.12.020(1)(a); Glen Park Assocs., LLC v. Dep't of Revenue, 119 Wash.App. 481, 484 n. 1, 82 P.3d 664 (2003),review denied, 152 Wash.2d 1016, 101 P.3d 107 (2004). The use tax's purpose is "to tax the privilege of using all tangible property within the state on which sales tax has not been paid." Sacred Heart Med. Ctr. v. Dep't of Revenue, 88 Wash.App. 632, 638, 946 P.2d 409 (1997). Importantly, "[a]n item of tangible personal property may not ... be subject both to use tax and sales tax." Discount Tire Co. of Wash. Inc. v. Dep't of Revenue, 121 Wash.App. 513, 521, 85 P.3d 400 (2004). | An item of tangible personal property may not be subject both to use tax and sales tax. West's RCWA 82.12.020(1)(a) (2009). | "Is an item of tangible property subject to both, use tax and sales tax?" | 046188.docx | LEGALEASE-00159734-LEGALEASE-00159735 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 14962 | Weber-Stephen Prod. v. Dep't of Revenue, 324 Ill. App. 3d 893 | 371+3602 | Illinois "sales tax" consists of two separate, complementary taxes, the retailers' occupation tax and the use tax. | The state "sales tax" consists of two separate, complementary taxes: the retailers' occupation tax (ROTA) and the use tax. | "What are the two separate, complementary taxes the state ""sales tax"" consists of?" | Taxation - Memo 1111 - C - VA_65679.docx | ROSS-003280599 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 14963 | Native Ecosystems Council v. Dombeck, 304 F.3d 886 | 411+8 | The plaintiffs have exhausted their administrative appeals if the appeal, taken as a whole, provided sufficient notice to the Forest Service to afford it the opportunity to rectify the violations that the plaintiffs alleged. See Washington Trout v. McCain Foods, 45 F.3d 1351, 1354 (9th Cir.1995) (describing exhaustion standard under Clean Water Act); Southwest Ctr. for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 521-22 (9th Cir.1998) (describing exhaustion standard under Endangered Species Act). In the context of objections to a Forest Service plan based on NFMA, the Third Circuit has held that "claims raised at the administrative appeal and in the federal complaint must be so similar that the district court can ascertain that the agency was on notice of, and had an opportunity to consider and decide, the same claims now raised in federal court." Kleissler v. United States Forest Serv., 183 F.3d 196, 202 (3d Cir.1999). | Environmental group challenging timber sale on national forest land raised issue of Forest Plan amendment procedures before United States Forest Service (USFS) administrative decision-maker sufficiently for agency to review procedures and to conclude that it complied with National Forest Management Act (NFMA), and thus group properly exhausted its administrative remedies as to issues raised before court; decision-maker properly understood group to raise issue whether USFS complied with NFMA in amending Forest Plan road density standards, and addressed issue in its decision. Forest and Rangeland Renewable Resources Planning Act of 1974, S 2 et seq., as amended, 16 U.S.C.A. S 1600 et seq. | "While objecting to a Forest Service decision, should the claims raised at the administrative appeal and in the federal complaint be similar so as to ascertain whether the agency was on notice of the same claims raised in the federal court?" | 047598.docx | LEGALEASE-00159535-LEGALEASE-00159536 | Condensed, SA, Sub | 0.27 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14964 | De Haas v. Cascade Frozen Foods, 23 Wash. 2d 754 | 413+105 | Unless an employee is engaged in one of the enumerated extra-hazardous occupations, or in an occupation classified by the department as extra-hazardous under the authority of law, he is not within the compulsory operation of the act. Parker v. Pantages Theater Co., 143 Wash. 176, 254 P. 1083; Denny v. Department of Labor and Industries, 172 Wash. 631, 21 P.2d 275; Berry v. Department of Labor and Industries, 11 Wash.2d 154, 118 P.2d 785, 140 A.L.R. 392; Koreski v. Seattle Hardware Co., 17 Wash.2d 421, 135 P.2d 860. | Unless an employee is engaged in one of extrahazardous occupations enumerated by statute or by Department of Labor and Industries, he is not within compulsory operation of compensation act. Rem.Rev.Stat. SS 7674, 7676. | When is an employee within the compulsory operation of the Act? | Workers Compensation - Memo 678 - C - ANC_64279.docx | ROSS-003281282 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 14965 | Walling v. Cushman, 238 Mass. 62 | 8.30E+12 | 3 The maker of a note is ordinarily deemed to have bound himself in accordance with the laws of the place where it is payable, where his contract is to be performed. See 5 R. C. L.964; Cherry v. Sprague, 187 Mass. 113, 72 N. E. 456, 67 L. R. A. 33, 105 Am. St. Rep. 381. As the contract of the indorser is a new and separate one, its validity is determined, as a general rule, by the laws of the state where the contract of indorsement is made; that is, where it takes effect by delivery. Lawrence v. Bassett, 5 Allen, 140; Akers v. Demond, 103 Mass. 318; Milliken v. Pratt, 125 Mass. 374, 28 Am. Rep. 241. This general rule, however, is not applicable when it appears from the special circumstances that the parties intended otherwise. And admittedly the presumption at common law is the same as that now formulated in the Negotiable Instruments Law (G. L. c. 107, " 69):"Except where the contrary appears every indorsement is presumed to have been made at the place where the instrument is dated." | Contract of indorsement being new and separate, its validity is determined generally by laws of state where made, and presumption of common law formulated in Negotiable Instruments Law is that unless contrary appears, indorsement is prima facie made at place where instrument is dated; and in suit against administrators of married woman who indorsed note dated and payable at Denver, Colo., it appearing that one note was made and indorsed in Illinois, there being no showing where others were made and indorsed, domicile of decedent was immaterial to her liability. | What law determines the validity of the contract of an indorser? | Bills and Notes -Memo 1381- JK_66282.docx | ROSS-003321102-ROSS-003321103 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 14966 | Thorp, Smith & Hanchett v. Craig, 10 Iowa 461 | 83E+675 | The bills were drawn in Iowa, where the law merchant, which allows three days of grace, was in force, and were made payable in the State of New York, where the law provides, "that all checks, bills of exchange, or drafts, appearing upon their face to have been drawn upon any bank, which are on their face payable on any specified day, or in any number of days after the date or sight thereof, shall be deemed due and payable on the day mentioned for the payment of the same, without any days of grace being allowed, and it shall not be necessary to protest the same for non-acceptance." By the law of New York the appellant was not entitled to any days of grace, and the holder thereof had a right to demand payment thereon on the day they became due. The question then follows which law shall govern; that of the place where the contract was made, or that of the place of payment. Without referring to the many cases in which this question has been decided, and to the various treatises upon bills of exchange in which this subject is fully considered, we conclude that "it is well settled that the law of the place where a draft is made payable is to govern in respect to the allowance of days of grace upon a bill of exchange, or check drawn in one state upon another." Edwards on Bills, 522. If this rule is to apply, the bills sued upon were presented at the proper time. | The law of the place where a bill of exchange is payable governs as to the allowance of days of grace. | Does the law of the place where a draft is made payable govern the allowance of days of grace? | Bills and Notes -Memo 1383- JK_66284.docx | ROSS-003321854-ROSS-003321855 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 14967 | Wade v. Darring, 511 S.W.2d 320 | 8.30E+10 | Because the note in question was made payable in North Carolina, the laws of that state govern the substantive liability of the parties, under Texas choice of law principles. Braniff Inv. Co. v. Norton, 80 F.2d 598 (5th Cir. 1935), cert. denied, 298 U.S. 663, 56 S.Ct. 747, 80 L.Ed. 1387 (1936). | Where note under which endorsers brought action against makers was made payable in North Carolina, laws of North Carolina governed subsequent liability of the parties. | Does the law of the state where the note in question is made payable govern the substantive liability of the parties? | Bills and Notes -Memo 1385- JK_66285.docx | ROSS-003308816 | Condensed, SA, Sub | 0.43 | 0 | 1 | 1 | 1 | 1 |
| 14968 | First Nat. Bank & Tr. Co. of Augusta v. Georgia R.R. Bank & Tr. Co., 238 Ga. 693 | 8.30E+76 | The Court of Appeals was correct in holding First National, the payor bank, responsible under the circumstances of this case. Once the check had been acted upon by that bank, its drawer no longer had authority to stop payment. See Code ss 109A-4-303 and 109A-4-403. The decision of the Court of Appeals reported at 139 Ga.App. 683, 229 S.E.2d 482 (1976) is accordingly affirmed. | Once check had been acted upon by drawee bank, its drawer no longer had authority to stop payment. Code, SS 109A-4-303, 109A-4-403. | Can the drawer stop payment after the check had been acted upon by the bank? | Bills and Notes -Memo 61-DB_65107.docx | ROSS-003281021 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 14969 | United States v. Ford, 435 F.3d 204 | 63+14 | If the instructions were intended to offer alternative definitions of the requisite state of mind, they were clearly in error. The first sentence of the instructions stated that "intending to be influenced" describes "the intention conveyed by the recipient." However, a jury may not, as the instructions suggest, cease further consideration upon determining that a recipient conveyed such an intent. What is conveyed or said by the recipient is of course powerful evidence of the recipient's state of mind, but what the recipient said is not the issue to be resolved. Rather, it is the actual state of mind of the recipient that must be proven. | In prosecution for accepting a bribe as an agent of an organization receiving federal funds, jury instructions, in explaining both the meaning of "corruptly" and "intending to be influenced," misstated the requisite criminal intent; instructions appeared to have told the jury that the "corruptly" requirement was fully satisfied by the recipient's knowledge of the donor's intent and omitted any reference to the recipient's intent in accepting the thing of value, and thus did not clearly communicate specific intent element requiring recipient's intent to be influenced in her official duties. 18 U.S.C.A. S 666(a)(1)(B). | "In prosecution for accepting a bribe, do jury instructions include the intent, the state of mind, of a person acting corruptly or intending to be influenced?" | Bribery - Memo 1075 - C - AV_65557.docx | ROSS-003293489-ROSS-003293490 | Condensed, SA, Sub | 0.02 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14970 | Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988 | 141E+862 | This guidance is grounded in the statutory definition of a FAPE. One of the components of a FAPE is "special education," defined as "specially designed instruction ... to meet the unique needs of a child with a disability." "" 1401(9), (29). In determining what it means to "meet the unique needs" of a child with a disability, the provisions governing the IEP development process are a natural source of guidance: It is through the IEP that "[t]he "free appropriate public education" required by the Act is tailored to the unique needs of" a particular child. Id., at 181, 102 S.Ct. 3034. The IEP provisions reflect Rowley 's expectation that, for most children, a FAPE will involve integration in the regular classroom and individualized special education calculated to achieve advancement from grade to grade. Every IEP begins by describing a child's present level of achievement, including explaining "how the child's disability affects the child's involvement and progress in the general education curriculum." " 1414(d)(1)(A)(i)(I)(aa). It then sets out "a statement of measurable annual goals ... designed to ... enable the child to be involved in and make progress in the general education curriculum," along with a description of specialized instruction and services that the child will receive. "" 1414(d)(1)(A)(i)(II), (IV). The instruction and services must likewise be provided with an eye toward "progress in the general education curriculum." " 1414(d)(1)(A)(i)(IV)(bb). Similar IEP requirements have been in place since the time the States began accepting funding under the IDEA. | In determining what it means to meet the unique needs of a child with a disability, as required to provide the child a free appropriate public education (FAPE), the IDEA provisions governing the individual education plan (IEP) development process are a natural source of guidance, as it is through the IEP that the free appropriate public education required by the IDEA is tailored to the unique needs of a particular child. Individuals with Disabilities Education Act, SS 602(9, 29), 614, 20 U.S.C.A. SS 1401(9, 29), 1414. | Must a Free Appropriate Public Education be specially designed to meet the unique needs of a child with a disability? | Education - Memo 316 - C - SG_65178.docx | ROSS-003279591-ROSS-003279593 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 14971 | Purvis v. Busey, 260 Ala. 373 | 200+80 | The general rule is to the effect that the public acquires an easement only in highways, the fee of the land remaining in the owner, subject to the easement.39 C.J.S., Highways, " 136, page 1071. It is also the general rule that when a highway is abandoned the land becomes discharged of the servitude and the absolute title to the land covered by the highway reverts to the owner of the fee except where the fee to the highway has passed to the public"39 C.J.S., Highways, " 137, pages 1073"1074. See Elliott on Roads and Streets, 4th Ed., Vol. 2, "" 1190 and 1191 | The public only acquires an easement in highways, the fee of the land remains in the owner subject to the easement. | Does the fee remain with the owner when the public acquires an easement in the highway? | Highways - Memo 399 - RK.docx | LEGALEASE-00050710-LEGALEASE-00050711 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 14972 | Antenucci v. Hartford Roman Catholic Diocesan Corp., 142 Conn. 349 | 200+80 | The plaintiffs also maintain that the cemetery cannot be increased in size by the use of land, acquired for the purpose, on the opposite side of a public highway. An abutting owner is presumed under the law of this state, no evidence having been offered to the contrary, to own the fee of the land to the center of the highway. Therefore, as to the land within the limits of the highway, an abutting owner has all rights not incompatible with the public easement. Allen v. Mussen, 129 Conn. 151, 155, 26 A.2d 776; State v. Muolo, 119 Conn. 323, 326, 176 A. 401. "A highway is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all of the acts necessary to keep it in repair." Peck v. Smith, 1 Conn. 103, 132; Newton v. New York, N.H. & H.R. Co., 72 Conn. 420, 426, 44 A. 813. The easement in the public does not comprehend any interest in the soil or give the public the legal possession of it. The right of freehold is not touched by establishing a highway. It continues in the original owner of the land in the same manner as before the highway was established, subject to the easement. Peck v. Smith, supra. The adjoining proprietors have a right to every use and profit which can be derived from it consistent with the easement. The soil of a highway descends to heirs and passes to grantees as an appurtenant to the land adjoining, and whenever the highway is discontinued, the adjoining proprietors hold the land discharged of the easement. Knothe v. Zinzer, 96 Conn. 709, 713, 115 A. 477; Peck v. Smith, supra, 1 Conn. 146. | Abutting owner is presumed, no evidence to contrary, to own fee of land to center of highway, and as to land within limits of such highway, abutting owner has all rights not incompatible with public easement. | Is an abutting owner presumed to own the fee to the land to the center of the highway? | Highways - Memo 400 - RK_66329.docx | ROSS-003318955-ROSS-003318956 | Condensed, SA, Sub | 0.87 | 0 | 1 | 1 | 1 | 1 |
| 14973 | Hansell v. Massey, 244 Iowa 969 | 200+77(2) | Our decisions hold "interested parties' are the only ones entitled to notice of final hearing in vacation proceedings. "Interested parties' are defined as those owning property to which the vacation causes a special damage, separate and distinct from that suffered by the general public. Thus the owner of land abutting a highway may suffer special damage because of its vacation. His right of access is property which cannot be taken from him without compensation. Likewise, special damage may be caused the owner of land so situated that it can be reached by no convenient way other than the vacated road. McCann v. Clarke County, 149 Iowa 13, 127 N.W. 1011, 36 L.R.A.,N.S., 1115. These are the only "interested parties' heretofore recognized by our decisions. Heery v. Roberts, 186 Iowa 61, 74, 170 N.W. 405, 172 N.W. 161, states: "We do not intend to hold that if the landowners through whose lands the vacated highway runs are not entitled to notice, no others may urge that the proceedings were invalid for lack of this notice. What we do decide is that, while on the authority of the McCann Case others may urge that lack of notice, they must make it appear that they are concerned in the matter. The McCann Case gives no rights to mere intermeddlers, nor does it create a presumption that whosoever makes an attack upon a vacation of a highway will suffer special damage from the vacation, nor a presumption that some one not in court has an interest which entitled him to notice." | "Interested parties" are the only ones entitled to notice of final hearing in proceedings to vacate highways and "interested parties" are those who own property to which vacation causes a special damage, separate and distinct from that suffered by general public. I.C.A. SS 306.1 et seq., 306.17, 306.18, 306.21, 306.26. | Which parties are entitled to notice of final hearing in vacation proceedings? | Highways - Memo 446 - RK_66346.docx | ROSS-003297279-ROSS-003297280 | Condensed, Order, SA, Sub | 0.78 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14974 | Twp. of Livingston v. Parkhurst, 122 N.J.L. 598 | 64+21(7) | It is, of course, not disputed that this bridge and highway leading to it were for the use of the public who had an easement in it. The defendants had a right to its use for the transportation of this equipment. But in doing so they were under a duty to the plaintiff to use reasonable care so as not to cause damage to the highway or bridge. The highway was unpaved, and the bridge, a small one, was constructed of wood. Would one owing a duty to the municipality to use the facilities it provided with reasonable care be violating that duty by the transportation of equipment of the type and weight described along this highway and over this bridge? Were proper precautions taken in the exercise of due care? Was there, on the other hand, any duty on the part of the municipality which was contributory negligence as a matter of law under these facts? | One driving a heavy truck, to which was attached a trailer loaded with a gasoline shovel, was entitled to use a public bridge and highway, but was under a duty to use reasonable care not to cause damage to highway or bridge. | Is there a duty to use reasonable care so as not to cause damage to highways and bridges? | Highways - Memo 455 - RK_66355.docx | ROSS-003325842-ROSS-003325843 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 14975 | Minnie Creek Drainage Dist. v. Streeter, 327 Ill. 236 | 200+80 | The public has but an easement in a public highway, the fee remains in the owner, who may exercise every right of ownership not inconsistent with the easement of the public. Moore v. Gar Creek Drainage District, 266 Ill. 399, 107 N. E. 642. The argument of appellant that the commissioners of the public highway aforesaid may determine to remove the tile across the road and thereby sever or destroy the connection of appellant's lands with the drains of the district presents no defense in this case. The proof shows that she or her predecessor in title has made the connection with the drainage district contemplated by the statute, and we are not permitted to conjecture that her connection with the drainage district may be severed or destroyed by any act of the road commissioners, and a ppellee was not required to allege and prove that appellant would not be jeopardized by any act of the road commissioners. In fact, the presumption is that she is connected with the drains of the district by the permission or consent of the road commissioners, and that she is not a trespasser by reason of such connection. | Public has but easement in highway, and owner may exercise every right not inconsistent therewith. | Can the fee owner exercise every right of ownership not inconsistent with the easement of the public? | 018889.docx | LEGALEASE-00161821-LEGALEASE-00161822 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 14976 | Shindler v. Marr & Associates, 695 S.W.2d 699 | 289+1110 | Strict compliance with the applicable statutes is not required for the formation of a limited partnership. Article 6132a, sec. 3(b) provides, "a limited partnership is formed if there is substantial compliance in good faith with the requirements ..." | Strict compliance with applicable statutes is not required for formation of a limited partnership. Vernon's Ann.Texas Civ.St. art. 6132a, S 3(b). | Is strict compliance with the applicable statues required for the formation of a limited partnership? | Partnership - Memo 563 - GP_65235.docx | ROSS-003283084-ROSS-003283085 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |
| 14977 | Hanson v. Birmingham, 92 F.Supp. 33 | 289+451 | Certain other fundamental common law principles regarding partnerships are to the effect that if the essential elements of a partnership are not present, then a partnership will not be declared even though the parties designated their arrangements as such. 40 Am.Jur., Partnership, Sec. 43. Similarly, if a person or entity is not capable of being a partner, then designating he or it as such would not make such person or entity a valid partner. | At common law if essential elements of a partnership are not present, a partnership will not be declared to exist even though parties designate their arrangements as partnership. | Does a partnership exist if any of the essential elements is absent? | 022667.docx | LEGALEASE-00161323-LEGALEASE-00161324 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 14978 | Dobson v. Mortg. Elec. Registration Sys./GMAC Mortg. Corp., 259 S.W.3d 19 | 302+408 | A default judgment cannot be entered on a petition that fails to state a cause of action. Phillips v. Bradshaw, 859 S.W.2d 232, 234 (Mo.App.1993). If the petition fails to state a cause of action, the trial court has no subject matter jurisdiction, and may take no action except to dismiss it. Id. Because the failure to state a cause of action is a jurisdictional defect, it may be raised at any time during the proceedings. Id.; Harding v. State Farm Mutual Automobile Ins. Co., 448 S.W.2d 5, 7"8 (Mo. banc 1969). | Because the failure to state a cause of action is a jurisdictional defect, it may be raised at any time during the proceedings. | Is the failure to state a cause of action a jurisdictional defect? | 023879.docx | LEGALEASE-00161249-LEGALEASE-00161250 | Condensed, SA | 0.75 | 0 | 1 | 0 | 1 | |
| 14979 | Phillips v. Bradshaw, 859 S.W.2d 232 | 307A+622 | A default judgment should not be entered for a party if his petition fails to state a cause of action. Jones v. Williams, 357 Mo. 531, 209 S.W.2d 907, 910 (1948). A pleading which states no cause of action confers no subject matter jurisdiction on a court and is subject to dismissal. Sisco v. James, 820 S.W.2d 348, 351[4] (Mo.App.S.D.1991); Wright v. Mullen, 659 S.W.2d 261, 263[4] (Mo.App.W.D.1983). The only power a court without subject matter jurisdiction possesses is the power to dismiss the action. Rule 55.27(g)(3); Sisco, 820 S.W.2d at 351[4]; Wells v. Noldon, 679 S.W.2d 889, 891[7] (Mo.App.E.D.1984); Gaslight Real Estate Corp. v. Labor and Industrial Relations Commission, 604 S.W.2d 818, 820[4] (Mo.App.W.D.1980). Inasmuch as failure to state a cause of action is jurisdictional, the issue may properly be raised anytime during the proceedings, even for the first time on appeal from a default judgment. Harding v. State Farm Mutual Automobile Ins. Co., 448 S.W.2d 5, 7"8[4] (Mo. banc 1969); Eilers v. Kodner Development Corp., 513 S.W.2d 663, 665[1] (Mo.App.1974). Defendant's first point thus requires us to determine whether Plaintiff's petition pled a cause of action. | Pleading which states no cause of action confers no subject matter jurisdiction on court and is subject to dismissal. | "Is a pleading which states no cause of action, subject to dismissal?" | Pleading - Memo 611 - RMM_65796.docx | ROSS-003295328-ROSS-003295329 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 14980 | Braddock v. Zimmerman, 906 A.2d 776 | 307A+695 | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. It constitutes a judicial determination that the original complaint was either not well pleaded as a derivative action or did not satisfy the legal test for demand excusal. Following such a dismissal, for purposes of a Rule 23.1 demand inquiry, the complaint is not validly in litigation. Consequently, where a complaint is amended with permission following a dismissal without prejudice, even if the act or transaction complained of in the amendment is essentially the same conduct that was challenged in the original dismissed complaint, the Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed. | A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. | Is a complaint that is dismissed without prejudice with express leave to amend nevertheless a dismissed complaint? | Pretrial Procedure - Memo 11590 - C - NE_65608.docx | ROSS-003280553-ROSS-003280554 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 14981 | Pinson v. Grimes, 42 So. 3d 650 | 307A+583 | The circuit court has the inherent power to dismiss an action for the failure to prosecute. Stuart v. Pub. Employees' Ret. Sys., 799 So.2d 886, 888 (8) (Miss.Ct.App.2001) (citations omitted). The decision to grant or deny a motion to dismiss under Mississippi Rule of Civil Procedure 41(b) will not be reversed absent an abuse of discretion by the circuit court. Cox v. Cox, 976 So.2d 869, 874 (11) (Miss.2008) | The circuit court has the inherent power to dismiss an action for the failure to prosecute. | Does the circuit court have the inherent power to dismiss an action for the failure to prosecute? | 040413.docx | LEGALEASE-00160731-LEGALEASE-00160732 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14982 | Snelling v. Beck, 207 S.W.3d 202 | 307A+583 | A dismissal for failure to prosecute is within the trial court's discretion and we review for an abuse of that discretion. Duckett Creek Sewer District v. Westerfield Development Corp., 930 S.W.2d 497, 499 (Mo.App. E.D.1996). | A dismissal for failure to prosecute is within the trial court's discretion and appellate court reviews for an abuse of that discretion. | Is a dismissal for failure to prosecute within the trial court's discretion? | 040449.docx | LEGALEASE-00161044-LEGALEASE-00161045 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 14983 | Tyler v. United States, 281 U.S. 497 | 371+2003 | According to the amiable fiction of the common law, adhered to in Pennsylvania and Maryland, husband and wife are but one person, and the point made is that, by the death of one party to this unit, no interest in property held by them as tenants by the entirety passes to the other. This view, when applied to a taxing act, seems quite unsubstantial. The power of taxation is a fundamental and imperious necessity of all government, not to be restricted by mere legal fictions. Whether that power has been properly exercised in the present instance must be determined by the actual results brought about by the death, rather than by a consideration of the artificial rules which delimit the title, rights, and powers of tenants by the entirety at common law. See Nicol v. Ames, 173 U. S. 509, 516, 19 S. Ct. 522, 43 L. Ed. 786; Saltonstall v. Saltonstall, supra, page 271 of 276 U. S., 48 S. Ct. 225, 72 L. Ed. 565. | Power of taxation is fundamental and imperious necessity of all government, not to be restricted by mere legal fictions. | Is the power of taxation is a fundamental and imperious necessity of all government? | 046293.docx | LEGALEASE-00161687-LEGALEASE-00161688 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14984 | John Hancock Mut. Life Ins. Co. v. Fid.-Baltimore Nat. Bank & Tr. Co., 212 Md. 506 | 8.30E+10 | Questions relative to negotiable instruments arising upon a conflict of laws are not always free from difficulty. The Negotiable Instruments Act, Code 1951, Art. 13, " 14 et seq. makes no provisions as to what law governs bills and notes in a case of conflict of laws, and, in determining this question, it is necessary to consider certain factors. Some of these are: (1) That the law relating to what law governs contracts in general is applicable, so far as general principles are concerned; (2) that there is considerable conflict in the decisions relating thereto; (3) that general statements in the decisions should be controlled by the specific statements of law in regard thereto; (4) that an ordinary negotiable instrument often includes many contracts, each several signature-as maker, drawer, acceptor, guarantor, surety or indorser-being a separate contract; (5) and that each separate contract may bring into question a different place and law, since each contract involves a place of contract and a place of payment which may be governed by different laws. In like manner, one law may determine the validity of a contract, while other laws regulate its form or construction or the steps to be taken for its maintenance or enforcement. 10 C.J.S., Bills and Notes, " 47. It seems generally to be conceded that the proper law governing a bill or note is the law which the parties to the instrument intended to govern. Accordingly, if the bill or note contains express provisions that it shall be governed by the laws of a particular state, those laws govern. | Generally, law governing a bill or note is the law which the parties to the instrument intend to govern, and, therefore, if bill or note contains express provision that it shall be governed by laws of a particular state, such laws will govern. | Is it generally to be conceded that the proper law governing a bill or note is the law which the parties to the instrument intended to govern? | Bills and Notes - Memo 1344 - RK_66247.docx | ROSS-003280454-ROSS-003280455 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 14985 | Lifanda v. Elmhurst Dodge, 237 F.3d 803 | 172H+1342 | We view the " "sufficiency of TILA-mandated disclosures ... from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." " Smith v. Cash Store Management, Inc., 195 F.3d 325, 327"28 (7th Cir.1999), quoting Cemail v. Viking Dodge, 982 F.Supp. 1296, 1302 (N.D.Ill.1997). Therefore, our task is to determine whether, taking the facts in the light most favorable to Lifanda, the TILA disclosures were clear and conspicuous to an ordinary consumer as a matter of law. The defendants in fact rely upon three different documents to satisfy the TILA disclosures here, which are reproduced in relevant part in the appendix to this opinion. According to the defendants, the retail installment contract informed Lifanda that he could obtain ATR insurance elsewhere, the purchase order revealed the premium for the ATR protection, and the ATR form set forth the term of the ATR protection. | Court views the sufficiency of TILA-mandated disclosures from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor. Truth in Lending Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq. | How is the sufficiency of TILA mandated disclosures determined? | 013854.docx | LEGALEASE-00162596-LEGALEASE-00162597 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 14986 | Allen v. Illinois Cmty. Coll. Bd., 315 Ill. App. 3d 837 | 141E+993 | Moreover, the public school system protected by the 1970 Illinois Constitution does not include community colleges. "There is no authority to suggest that article X of the Illinois Constitution applies to the State's operation of community colleges." Espinosa v. Board of Trustees of Community College District No. 508, 265 Ill.App.3d 504, 507, 198 Ill.Dec. 220, 632 N.E.2d 279 (1994). Community college districts are created by the legislature pursuant to its authority to create public corporations, not under any provision of the Illinois Constitution. See Espinosa, 265 Ill.App.3d at 507, 198 Ill.Dec. 220, 632 N.E.2d 279. Thus, the rules pertaining to public elementary and secondary schools do not apply to community colleges, except to the extent that if we cannot review legislative determinations as to public grade and high schools, we most surely cannot review legislative determinations as to community colleges. | Community college districts are created by the legislature pursuant to its authority to create public corporations, not under any provision of the State Constitution; thus, the rules pertaining to public elementary and secondary schools do not apply to community colleges. S.H.A. Const. Art. 10, S 1. | Are community college districts created by the legislature? | Education - Memo 354 - C - ATS_65921.docx | ROSS-003279992-ROSS-003279993 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 14987 | In re Acosta, 182 B.R. 561 | 156+52.10(1) | Under California law, waiver is the "intentional relinquishment of a known right." Cathay Bank v. Lee, 14 Cal.App.4th 1533, 1539, 18 Cal.Rptr.2d 420 (1993) (citations omitted). In the present situation, appellees retain the burden of proving waiver by clear and convincing evidence. Id. Waiver also requires a sufficient awareness of the relevant circumstances and the likely consequences. Id. | Under California law, waiver requires sufficient awareness of relevant circumstances and likely consequences. | Does waiver require sufficient awareness of the relevant circumstances and likely consequences? | 018154.docx | LEGALEASE-00162265-LEGALEASE-00162266 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14988 | United Cities Gas Co. v. Brock Expl. Co., 995 F. Supp. 1284 | 95+227 | Ordinarily invoked in contract law, the concept of waiver implies that "a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with [a] contractual right." Schraft v. Leis, 236 Kan. 28, 37, 686 P.2d 865, 873 (1984). Although waiver is consensual in nature, a party's intention may be inferred from its conduct and the requisite knowledge may be actual or constructive. Id. (citing Stratmann v. Stratmann, 6 Kan.App.2d 403, 410"11, 628 P.2d 1080, 1087 (1981)). Once it has been established that a right has been waived, the party possessing the right is precluded from later asserting it in a court of law. Stratmann, 6 Kan.App.2d at 410, 628 P.2d at 1086"87 (citing United Am. State Bank & Trust Co. v. Wild W. Chrysler Plymouth, Inc., 221 Kan. 523, 526"27, 561 P.2d 792, 795 (1977)). | Although waiver of contractual right under Kansas law is consensual in nature, party's intention may be inferred from its conduct and requisite knowledge may be actual or constructive. | Is waiver consensual in nature? | 018163.docx | LEGALEASE-00162278-LEGALEASE-00162279 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 14989 | Salem Cmty. Sch. Corp. v. Richman, 406 N.E.2d 269 | 156+52.10(2) | "Waiver is the intentional relinquishment of a known right." Lafayette Car Wash, Inc. v. Boes (1972), 258 Ind. 498, 501, 282 N.E.2d 837, 839; Russell v. Trustees of Purdue University (1931), 93 Ind.App. 242, 178 N.E. 180. Waiver is an election to forego some advantage that might otherwise have been insisted upon. City of Evansville v. Follis (1974), 161 Ind.App. 396, 315 N.E.2d 724. The existence of waiver is ordinarily determined from the conduct of the party making it. Indiana State Highway Commission v. Pappas (1976), Ind.App., 349 N.E.2d 808; City of Evansville v. Follis, supra; Russell v. Trustees of Purdue University, supra. | "Waiver" is election to forego some advantage that might otherwise have been insistent upon; existence of waiver is ordinarily determined from conduct of parties making it. | Is waiver an election to forego some advantage that might otherwise have been insisted upon? | 018165.docx | LEGALEASE-00162280-LEGALEASE-00162281 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 14990 | Wendling v. State, 465 N.E.2d 169 | 181+4 | The intent to defraud in a check forgery prosecution may be proved by circumstantial evidence which will often include the general conduct of the defendant when presenting the instrument for acceptance. Reid v. State, (1973) 156 Ind.App. 692, 298 N.E.2d 480. An intent to defraud involves an intent to deceive and thereby work a reliance and injury. BLACK'S LAW DICTIONARY. Knowledge of falsity of a written instrument is not a separate essential element of the present crime of forgery. Whitacre v. State, (1980) Ind., 412 N.E.2d 1202. | Knowledge of falsity of written instrument is not a separate essential element of present crime of forgery. | Is knowledge of falsity of the instrument an essential element of forgery? | Forgery - Memo 50 - SNJ_65765.docx | ROSS-003279852-ROSS-003279853 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 14991 | United States v. Gomes, 969 F.2d 1290 | 181+4 | The Legal StandardIn ordinary parlance, the word "counterfeit" is sometimes used to mean "not genuine." In more discerning circles, however, the word "counterfeit" is reserved for "an imitation or replica markedly close or faithful to an original." Webster's Third New International Dictionary 519 (1981). In the criminal law, the word has retained its literal meaning. See, e.g., United States v. Smith, 318 F.2d 94, 95 (4th Cir.1963) ("The very word connotes a similitude, without which there is no counterfeit."). Thus, a bogus document is counterfeit if it "is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care dealing with a person supposed to be upright and honest." United States v. Chodor, 479 F.2d 661, 664 (1st Cir.) (citation omitted), cert. denied, 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973); accord United States v. Fera, 616 F.2d 590, 598 (1st Cir.), cert. denied, 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980). While Chodor and Fera both involved counterfeit currency, the same yardstick has routinely been applied to other documentary imitations. See, e. g., United States v. Parnell, 581 F.2d 1374, 1381 (10th Cir.1978) (applying identical standard to cashier's checks), cert. denied, 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979); United States v. Anderson, 532 F.2d 1218, 1224 (9th Cir.) (similar; stock certificates), cert. denied, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976). | A bogus document is "counterfeit" if it is calculated to deceive honest, sensible and unsuspecting person of ordinary observation and care dealing with person supposed to be upright and honest. | What is a counterfeit? | 018471.docx | LEGALEASE-00161988-LEGALEASE-00161989 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14992 | Hillme v. Chastain, 75 S.W.3d 315 | 289+429 | A partnership agreement may be implied from conduct and circumstances of the parties and the parties are not required to know all the legal implications of a partnership. Grissum, 505 S.W.2d at 86. Partnership property that is held only in an individual name does not affect the partnership status. Id. at 87. The filing or non-filing of a partnership income tax return is not sufficient alone to prove or disprove the existence of a partnership. Brotherton v. Kissinger, 550 S.W.2d 904, 907"08 (Mo.App.1977). A voice in the management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors are all indications of a partnership. Arnold v. Erkmann, 934 S.W.2d 621, 630 (Mo.App.1996). | A voice in the management of the partnership business, a share of the profits of the partnership business, and a corresponding risk of loss and liability to partnership creditors are all indications of a partnership. | Is right to a voice in management of the partnership business an indicia of a partnership relationship? | 022690.docx | LEGALEASE-00162228-LEGALEASE-00162229 | Condensed, SA | 0.72 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 14993 | Copland v. Commissioner of Internal Revenue, 41 F.2d 501 | 289+432 | The Commissioner, however, attacks on two general grounds the premises upon which petitioner's conclusions are based. First, he contends that the organization referred to as "the syndicate" was in fact a partnership composed of Mayer, Epstein, and petitioner, and that under the law a member is required to pay income tax on his distributive share, whether distributed or not, and he cannot escape the tax by assignment. There is no direct evidence to the effect that the organization was a partnership, and we think the evidence does not warrant the inference. The most that can be said in this respect is that petitioner and his associates merely engaged in a single joint venture, and it is well established that special agreements for particular adventures and joint undertakings which are limited in character do not constitute partnerships. Hey v. Duncan (C.C.A.) 13 F.(2d) 794; Chicago Die & Electric Co. v. Nathan, 141 Ill.App. 171. Second, the Commissioner contends that the alleged gift is not sufficient to avoid the assessment, for the following reasons: (1) It violates the Illinois Statute of Frauds (4 Callaghan, p. 3940); (2) it was not based upon a valuable consideration; (3) the corpus of the gift was not delivered to the donee, but to the donor's agent; (4) the corpus of the gift was not in existence at the time of the assignment; (5) it is revocable by the donor; (6) the donee did not become liable for donor's share of the liabilities, but, on the contrary, the donor remained obligated to pay them, if any. | Special agreements for particular adventures and join undertakings limited in character do not constitute "partnerships." | Do special agreements for particular adventure and joint undertakings constitute partnership? | 022745.docx | LEGALEASE-00162530-LEGALEASE-00162531 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 14994 | Cornelius v. River Ridge Ranch Landowners Ass'n, 202 P.3d 564 | 307A+583 | The power to dismiss for failure to prosecute is in the sound discretion of the trial court. Cervi v. Town of Greenwood Village, 147 Colo. 190, 193, 362 P.2d 1050, 1052 (1961). Trial courts retain the discretion to dismiss an action with or without prejudice.4 C.R.C.P. 41 (b). The burden is on the plaintiff to prosecute a case "in due course without unusual or unreasonable delay." Cervi, 147 Colo. at 193, 362 P.2d at 1052. A trial court decision to dismiss for failure to prosecute is not one that can be reviewed as a question of law, and should not be overturned absent proof of the court abuse of that discretion. Rathbun v. Sparks, 162 Colo. 110, 116, 425 P.2d 296, 299 (1967). | The power to dismiss for failure to prosecute is in the sound discretion of the trial court. | Is the power to dismiss for failure to prosecute in the sound discretion of the trial court? | 040625.docx | LEGALEASE-00162516-LEGALEASE-00162517 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 14995 | Westlake Transp. v. Pub. Serv. Comm'n, 255 Mich. App. 589 | 371+2002 | Taxes have a primary purpose of raising revenue, while fees are usually in exchange for a service rendered or a benefit conferred. Bolt, supra at 162, 587 N.W.2d 264. The stated purpose of the intrastate fees is for "the administration of [the MCA]." M.C.L. " 478.1; MCL 478.2(1). The express purposes of the act are | Taxes have a primary purpose of raising revenue, while fees are usually in exchange for a service rendered or a benefit conferred. | Do taxes and fees differ in primary purpose? | Taxation - Memo 1036 - C - JL_66479.docx | ROSS-003280760-ROSS-003280761 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 14996 | State v. Bies, 258 Minn. 139 | 371+3530 | The basic law imposing taxes on incomes in Minnesota was enacted as L.1933, c. 405, and approved April 21, 1933; its provisions are now included within c. 290. We had no income tax in this state prior to that date. This court has clearly held that the obligation of the citizens to pay taxes is purely a statutory creation, and taxes can be levied, assessed, and collected only in the method pointed out by express statute. Teichert v. County of Chippewa, 225 Minn. 406, 411, 31 N.W.2d 11, 14; People ex rel. Eitel v. Lindheimer, 371 Ill. 367, 21 N.E.2d 318, 124 A.L.R. 1472. | The obligation of citizens to pay state income taxes is purely statutory, and taxes can be levied, assessed, and collected only in the method pointed out by the statute. M.S.A. S 290.01 et seq. | Is the obligation to pay taxes a statutory creation? | Taxation - Memo 1072 - C - KI_65673.docx | ROSS-003282090-ROSS-003282091 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 14997 | U.S. Fid. & Guar. Co. v. State ex rel. Oklahoma Tax Comm'n, 2002 OK 42, 14, 54 P.3d 1010 | 371+3602 | A tax is a pecuniary burden imposed upon a class of individuals, businesses, or other entities for support of government. Black's Law Dictionary 1307 (5th ed.1979). A sales tax is a statutorily imposed burden "on the sale of goods and based on their value." Id. at 1308. A tax liability is incurred by operation of law, not by contract. See id. Because a surety's liability is contractual, it cannot be a tax liability. | A "sales tax" is a statutorily imposed burden on the sale of goods and based on their value. | "Is a ""sales tax"" a statutorily imposed burden on the sale of goods and based on their value?" | 046247.docx | LEGALEASE-00161916-LEGALEASE-00161917 | Condensed, SA | 0.77 | 0 | 1 | 0 | 1 | |
| 14998 | Safe Deposit & Tr. Co. of Baltimore, Md., v. Commonwealth of Virginia, 280 U.S. 83 | 371+2008 | A statute of a state which undertakes to tax things wholly beyond her jurisdiction or control conflicts with the Fourteenth Amendment. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 204, 26 S. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493; Buck v. Beach, 206 U. S. 392, 402, 408, 409, 27 S. Ct. 712, 51 L. Ed. 1106, 11 Ann. Cas. 732; Frick v. Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316; Wachovia Bank & Trust Co. v. Doughton, 272 U. S. 567, 575, 47 S. Ct. 202, 71 L. Ed. 413. | State law undertaking to tax things beyond jurisdiction conflicts with Federal Constitution. U.S.C.A.Const. Amend. 14. | Does a statute of a state conflict with the Constitution if such statute undertakes to tax things beyond its jurisdiction? | Taxation - Memo 1192 - C -JL_66002.docx | ROSS-003294616-ROSS-003294617 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 14999 | State v. Murphy, 545 N.W.2d 909 | 3.77E+11 | Murphy's interpretation lacks merit. The terroristic threats statute mandates that the threats must be to commit a future crime of violence which would terrorize a victim. It is the future act threatened, as well as the underlying act constituting the threat, that the statute is designed to deter and punish. Based on this interpretation of the statute, Murphy's acts of terrorism clearly involved threats to commit future acts of physical violence. To take just one example, leaving parts of dead animals on the property of victims does not induce the fear of future acts of littering or cruelty to animals; it conveys a threat to injure, kill, or commit some other future crime against the person. The victims' testimony in the sentencing hearing manifests the pervasive and deep-seated fear that Murphy's conduct created in their lives. Murphy's conduct undeniably created an overwhelming "apprehension that its originator will act according to its tenor" and commit a future act of physical violence. See Schweppe, 306 Minn. at 399, 237 N.W.2d at 613. Murphy's conduct also sent a clear message that he was "capable of coming back later and doing something more serious." Miller, 629 P.2d at 750. We therefore hold that Murphy's acts were threats to commit future acts of physical violence under Minn.Stat. " 609.713, subd. 1. | Terroristic threats statute is designed to deter and punish future act threatened, as well as underlying act of making threat; statute mandates that threats must be to commit future crime of violence which would terrorize victim. M.S.A. S 609.713, subd. 1. | What are the terroristic threats statute designed to deter and punish? | 046973.docx | LEGALEASE-00162200-LEGALEASE-00162201 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15000 | Jett v. Dunlap, 179 Conn. 215 | 413+2093 | In previous decisions under the Workmen's Compensation Act we have consistently held that where a worker's personal injury is covered by the act, statutory compensation is the sole remedy and recovery in common-law tort against the employer is barred. Mancini v. Bureau of Public Works, 167 Conn. 189, 193, 355 A.2d 32 (1974); Crisanti v. Cremo Brewing Co., 136 Conn. 529, 531, 72 A.2d 655 (1950); Hoard v. Sears Roebuck & Co., 122 Conn. 185, 188, 188 A. 269 (1936); see also Grogan v. New Britain, 175 Conn. 174, 181, 397 A.2d 97 (1978). This well-established principle is not eroded when the plaintiff alleges an intentional tort by his supervisor. | Principal that Workmen's Compensation Act is sole remedy against employer where a worker's personal injury is covered by Act is not eroded when employee alleges an intentional tort by his supervisor. C.G.S.A. S 31-284(a). | "Under the Workers' Compensation Act, does the employee surrender his right to bring a common law action against the employer limiting the employers liability to the statutory amount?" | 048622.docx | LEGALEASE-00162382-LEGALEASE-00162383 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 15001 | Corbin Russwin v. Alexander's Hardware, 147 N.C. App. 722 | 95+129(1) | Black's Law Dictionary also provides guidance. A forum selection clause is "[a] contractual provision in which the parties establish the place (such as the country, state, or type of court) for specified litigation between them." Black's Law Dictionary 665 (7th ed.1999). Choice of jurisdiction (a.k.a., consent to jurisdiction), on the other hand, is "[t]he choice of the state (or country) that should exercise jurisdiction over a case." at 234, 414 S.E.2d 30. A choice-of-law clause is "[a] contractual provision by which the parties designate the jurisdiction whose law will govern any disputes that may arise between the parties." To summarize, a forum selection clause designates the venue, a consent to jurisdiction clause waives personal jurisdiction and venue, and a choice of law clause designates the law to be applied. | "Forum selection clause" designates the venue of any potential conflict arising out of a contract, whereas a "consent to jurisdiction clause" waives personal jurisdiction and venue, and a "choice of law clause" designates the law to be applied. | What does a choice of law clause designate? | Bills and Notes - Memo 1358 - RK_66260.docx | ROSS-003285773-ROSS-003285774 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 15002 | Res. Holding Corp. v. Schoff's Estate, 105 Vt. 144 | 8.30E+10 | It appears in the agreed facts that the note in suit was "made and delivered in New York on the date named," that is, on October 29, 1930. It is therefore a New York contract, and the rights of the parties are to be governed by the law of that jurisdiction. Harrison v. Edwards, 12 Vt. 648, 36 Am. Dec. 364; Barrett v. Kelley, 66 Vt. 515, 29 A. 809, 44 Am. St. Rep. 862; Smith v. Anderson, 70 Vt. 424, 41 A. 441; Bishop & Co. v. Thompson, 99 Vt. 17, 130 A. 701. | Parties' rights held governed by law of jurisdiction in which note was made and delivered. | Are the rights of parties governed by the law of the jurisdiction were a note is made and delivered? | 009246.docx | LEGALEASE-00162737-LEGALEASE-00162738 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 15003 | Hongkong & Shanghai Banking Corp. v. Lazard-Godchaux Co. of Am., 207 A.D. 174 | 8.30E+10 | There is another defense, to the effect that the defendant was released because the drafts were accepted, payable 93 days after sight, instead of 90 days. Apart from the fact that no such defense is pleaded, it is obvious that these 3 days were days of grace, the existence of which in Shanghai is proven by affidavits. There is no denial of the existence of days of grace, except in the affidavit of Clarkson, in which there is a statement that he does not concede them. This, of course, is unavailing as counter proof. As to the days of grace, the law of the place of payment applies to a foreign bill of exchange, such as was drawn here. In Amsinck v. Rogers, 189 N. Y. 252, 258, 82 N. E. 134, 12 L. R. A. (N. S.) 875, 121 Am. St. Rep. 858, 12 Ann. Cas. 450, it is ruled that the law or the custom of the place of payment applies as to days of grace. | The law of the place of payment as to days of grace on a foreign bill of exchange applies. | Will the law of the place of payment apply to a foreign bill of exchange? | Bills and Notes - Memo 1369 - RK_66270.docx | ROSS-003292291-ROSS-003292292 | Condensed, Order, SA | 0.89 | 1 | 1 | 0 | 1 | 1 |
| 15004 | Smith v. Thirty-Seventh Judicial Circuit of Missouri, 847 S.W.2d 755 | 413+186 | The state argues that the nominal payers of the salary"the counties"are the employers. The plain language of " 105.800 does not mention, let alone emphasize, the source of the salary or the nominal payer. Reading this statute in pari materia with workers' compensation law, it is the right of control and not the source of funds that determines who is the employer. [W]hile payment of wages is a circumstance which may aid in determining who is the employer, such payment of itself is insufficient to establish that fact. It is merely useful in determining who has the power of control, which latter is the controlling consideration. Ellegood v. Brashear Freight Lines, Inc., 236 Mo.App. 971, 162 S.W.2d 628, 634 (1942). | Right of control over employee, not source of funds by which employee is paid, determines who is employer for workers' compensation purposes. V.A.M.S. SS 105.800, 287.120, subd. 1. | "In workers compensation, is it the right to control or the source of funds that determines who the employer is?" | Workers' Compensation Memo 726 - C - ANC_67093.docx | ROSS-003291846-ROSS-003291847 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 15005 | Davis v. Brown, 87 N.Y.2d 626 | 110+867.23 | The Appellate Division's conclusion that petitioner "waited until after the court ordered a mistrial without prejudice to inform the court that he did not want a mistrial unless it was with prejudice" is without support in the record. The day after petitioner initially moved for a mistrial without qualification, petitioner renewed his mistrial motion, but this time, petitioner's counsel explained, it was being pressed with prejudice because the prosecution had deliberately attempted to cause a mistrial. Supreme Court erroneously concluded that since petitioner's initial mistrial motion was unqualified it remained so notwithstanding the "addendum added yesterday" that he only wanted a mistrial with prejudice. The settled right of a defendant to withdraw a mistrial motion at any time before its grant similarly implies the right to modify or limit the motion before such grant (see, People v. Catten, 69 N.Y.2d 547, 555, 516 N.Y.S.2d 186, 508 N.E.2d 920, supra). | Defendant could modify or limit his motion for mistrial before motion was granted, to specify that he was requesting only mistrial with prejudice, such that trial judge's subsequent grant of mistrial without prejudice was granted without defendant's consent. | "Can a defendant modify or limit his motion for mistrial before a motion was granted, to specify that he was requesting only mistrial with prejudice?" | 015281.docx | LEGALEASE-00162893-LEGALEASE-00162894 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 15006 | Bowers v. Shinseki, 26 Vet. App. 201 | 34+104.3(5) | Appellant's Br. at 8. However, it is axiomatic that, to receive VA disability compensation benefits, a claimant must first establish veteran status. See Cropper v. Brown, 6 Vet.App. 450, 452 (1994). Moreover, the Court has held that, absent established veteran status, presumptions of service connection are not applicable. See Smith, 24 Vet.App. at 45"48; Acciola, 22 Vet.App. at 324. Although Mrs. Bowers argues that these cases are not applicable to the presumption of service connection for amyotrophic lateral sclerosis, she presented no decipherable argument in her brief in support of this contention. At oral argument, however, Mrs. Bowers's argument was more refined. | To receive Department of Veterans Affairs (VA) disability compensation benefits, a claimant must first establish veteran status, and, absent established veteran status, presumptions of service connection are not applicable. 38 U.S.C.A. S 101(2, 22, 24); 38 C.F.R. S 3.318. | Is veterans status required to be eligible for Veterans Affairs (VA) disability compensation benefits? | 008820.docx | LEGALEASE-00163902-LEGALEASE-00163903 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15007 | United States v. Sligh, 31 F.2d 735 | 34+73(2) | The term "total and permanent disability" obviously does not mean that there must be proof of absolute incapacity to do any work at all. It is enough if there is such impairment of capacity as to render it impossible for the disabled person to follow continuously and substantially gainful occupation. These policies and the statutes applicable to the same are entitled to a liberal construction in favor of the soldier. United States v. Law (C.C.A.) 299 F. 61 (reversed on other ground 266 U.S. 494, 45 S.Ct. 175, 69 L.Ed. 401); United States v. Cox (C.C.A.) 24 F.(2d) 944. | Term "total and permanent disability," within World War Veterans' Act, does not mean absolute incapacity to do any work. World War Veterans' Act 1924, 38 U.S.C.A. SS 101, 102, 109, 210 et seq., 301, 302, 314, 351, 355, 501, 503, 537 et seq., 611, 621, 625, 626, 741 et seq., 3001, 3010, 3022, 3101 et seq., 3201-3203, 3301, 3304, 3401, 3404, 3405, 3501 et seq., 5001 et seq. | Does the term total and permanent disability mean that there is proof of absolute incapacity to do any work at all? | Armed Services - Memo 354 - RK_66874.docx | ROSS-003292444-ROSS-003292445 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15008 | Young v. United States, 94 Fed. Cl. 671 | 34+136 | However, as an administrative body within the VA, the Board of Veterans' Appeals is not a "court" as defined by the transfer statute. See 28 U.S.C. " 610, cited in id. " 1631; Schafer v. Dep't of the Interior, 88 F.3d 981, 987 (Fed.Cir.1996) ("Administrative bodies ... are not included within the applicable definition of "courts." "); Jackson v. United States, 80 Fed.Cl. 560, 566 (2008) ("The Board of Veterans' Appeals is an administrative agency within the Department of Veterans Affairs...."). Thus, even though the Board of Veterans' Appeals possesses jurisdiction over claims concerning the reduction of disability compensation, this court is foreclosed from transferring plaintiff's complaint to that body. Accord Jackson, 80 Fed.Cl. at 566 (holding that the Court of Federal Claims cannot transfer a complaint alleging a denial of veterans benefits to the Board of Veterans' Appeals, the United States Court of Appeals for Veterans Claims, or the Federal Circuit). Because there is no court to which plaintiff's complaint can be transferred, this court is compelled to deny plaintiff's transfer request. | As an administrative body within the Department of Veterans Affairs, the Board of Veterans' Appeals is not a "court" as defined by the transfer statute. 28 U.S.C.A. SS 610, 1631. | Are administrative bodies like the Board of Veterans' Appeals considered courts? | 008861.docx | LEGALEASE-00163934-LEGALEASE-00163935 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 15009 | Georgia R.R. Bank & Tr. Co. v. First Nat. Bank & Tr. Co. of Augusta, 139 Ga. App. 683 | 172H+593 | The payor bank contends that the drawer stopped payment on the check when he told the payor bank not to "touch" his account. The drawer of a check has the right to stop payment of it at any time before it has been certified or paid by the drawee. See Tidwell v. Bank of Tifton, 115 Ga.App. 555, 155 S.E.2d 451. As discussed above, the item had been "finally paid" by the drawee prior to the drawer's attempted revocation. Once the item was finally paid, the right to revoke settlement was lost. | Where item had been "finally paid" by drawee prior to drawer's attempted revocation thereof, right to revoke settlement was lost. Code, S 109A-4-213(1). | Can a drawer revoke a check after it is finally paid? | 009338.docx | LEGALEASE-00163029-LEGALEASE-00163031 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 15010 | Carter v. Marion, 183 N.C. App. 449 | 79+6 | We determine that political affiliation is an appropriate requirement for deputy clerks of superior court. The duties of deputy clerks as described in the North Carolina General Statutes illustrate the many possible job assignments a deputy clerk may be given. First, like the deputy sheriff, deputy clerks serve at the pleasure of the elected clerk and are appointed by the clerk. N.C. Gen.Stat. " 7A"102(a) (2005). They also take an oath of office prescribed by clerks of superior court. Id. In addition[a] deputy clerk is authorized to certify the existence and correctness of any record in the clerk's office, to take the proofs and examinations of the witnesses touching the execution of a will as required by G.S. 31"17, and to perform any other ministerial act which the clerk may be authorized and empowered to do, in his own name and without reciting the name of his principal. | Political affiliation was an appropriate employment requirement for deputy clerks of the superior court, and thus, newly elected clerk was entitled to terminate deputy clerks based on their political affiliation; deputy clerks served at the pleasure of the elected clerk, they took an oath of office, and they served as the public face of the clerk's office. West's N.C.G.S.A. S 7A-102(a). | Is political affiliation an appropriate requirement for a deputy clerk of the superior court? | 013564.docx | LEGALEASE-00164120-LEGALEASE-00164121 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 15011 | AFSCME Council 25 v. Wayne Cty., 292 Mich. App. 68 | 79+66 | Later, in State ex rel. Core v. Merrifield, 202 W.Va. 100, 109, 502 S.E.2d 197 (1998), the West Virginia Supreme Court of Appeals upheld that part of a general order which provided that each circuit judge had the ultimate authority to "select and assign as his Courtroom Clerk that individual whom most satisfies his needs from the coterie of deputy clerks." | Under the judicial branch's inherent constitutional authority the circuit court judges had the exclusive authority to make the determination with respect to the assignment or selection of a particular court clerk to serve in a judge's courtroom; therefore, a local administrative order of circuit court, which required the county clerk to assign a court clerk to a presiding judge's courtroom on the basis of the judge's selection of a clerk from the appropriate pool, was a proper exercise of the circuit court's exclusive judicial authority under the Michigan Constitution, and it was permissible because it concerned internal court management, even though it conflicted with collective bargaining agreement and arbitrator's ruling. M.C.L.A. Const. Arts. 3, S 2, 6, SS 1, 5; MCR 8.112(B)(1). | Does a circuit judge have the authority to select and assign his courtroom clerk? | 013572.docx | LEGALEASE-00164094-LEGALEASE-00164095 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 15012 | State ex rel. Core v. Merrifield, 202 W. Va. 100 | 79+6 | Nothing said in this opinion, however, is to be read as anything less than a complete affirmation of our holding in Rutledge. Let us be very clear on this point so there can be no misunderstanding. We strongly endorse and reaffirm the entire content and rulings of our decision in Rutledge. The analysis, law, logic, and holdings therein have stood the test of time and have proved to be practical in application, reasonable, and fair. "[O]ur first duty is to insure the fair and effective dispensation of justice." Rutledge, 175 W.Va. at 379, 332 S.E.2d at 835. The best way to do this is the adoption of practices and procedures that secure "businesslike management for the courts and [promote] simplified and more economical judicial procedures." Id., 175 W.Va. at 379, 332 S.E.2d at 834. Toward that end, we reaffirm that,the circuit clerk, although elected by the voters, is completely subject to the control of the chief circuit judge of the circuit court and failure to follow to the letter and in the utmost good faith the direction of the judge or chief circuit judge is grounds for removal from office. Furthermore, a circuit judge has complete control of the deputy circuit clerk assigned to her court. Id., 175 W.Va. at 378, 332 S.E.2d at 833. | A circuit judge has complete control of the deputy circuit clerk assigned to her court. Const. Art. 8, S 3. | Does a circuit judge have complete control of the deputy circuit clerk assigned to her court? | 013579.docx | LEGALEASE-00164102-LEGALEASE-00164103 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 15013 | Oglesby v. Deal, 311 Ga. App. 622 | 135+2 | Venue is appropriate in the county where the defendant resides. Const. of 1983, Art. VI, Sec. II, Par. VI. "In general, one's legal residence for the purpose of being sued in Georgia is the same county as his or her domicile." Davis"Redding v. Redding, 246 Ga.App. 792, 793(1), 542 S.E.2d 197 (2000). "Although domicile is a mixed question of law and fact which is ordinarily for a jury where the evidence is in conflict, domicile should be determined by the trial court as a matter of law when the evidence establishes a plain and palpable case." Dozier v. Baker, 283 Ga. 543, 544(2), 661 S.E.2d 543 (2008). | In general, one's legal residence for the purpose of being sued in the state is the same county as her domicile. | Is one's legal residence for the purpose of being sued in the state the same county as her domicile? | Domicile - Memo 47 - C - AJ_67126.docx | ROSS-003279511-ROSS-003279512 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15014 | Abarca v. State, 256 Ga. App. 37 | 135H+59 | The defendant had been placed in jeopardy before the earlier trial was terminated, as the previous jury had been impaneled and sworn. See Ferguson v. State, 219 Ga. 33, 35(3), 131 S.E.2d 538 (1963). Our constitution prohibits a person from being tried more than once for the same offense, except when a new trial has been granted after conviction or in case of mistrial. Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII.The circumstances under which a defendant who successfully moves for mistrial may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. Prosecutorial misconduct amounting to harassment or overreaching, even if sufficient to justify a grant of mistrial, is nevertheless insufficient to bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. | Defendant had been placed in jeopardy, for double jeopardy purposes, before the earlier trial was terminated due to want of prosecution since the previous jury had been impaneled and sworn. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 1, Par. 18. | Can a defendant be placed in jeopardy before the earlier trial was terminated? | Double Jeopardy - Memo 1082 - C - TM_67988.docx | ROSS-003280312-ROSS-003280313 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 15015 | Abarca v. State, 256 Ga. App. 37 | 135H+59 | The defendant had been placed in jeopardy before the earlier trial was terminated, as the previous jury had been impaneled and sworn. See Ferguson v. State, 219 Ga. 33, 35(3), 131 S.E.2d 538 (1963). Our constitution prohibits a person from being tried more than once for the same offense, except when a new trial has been granted after conviction or in case of mistrial. Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII. The circumstances under which a defendant who successfully moves for mistrial may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. Prosecutorial misconduct amounting to harassment or overreaching, even if sufficient to justify a grant of mistrial, is nevertheless insufficient to bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. | Defendant had been placed in jeopardy, for double jeopardy purposes, before the earlier trial was terminated due to want of prosecution since the previous jury had been impaneled and sworn. U.S.C.A. Const.Amend. 5; Const. Art. 1, S 1, Par. 18. | Why would a defendant be placed in jeopardy before the earlier trial is terminated? | Double Jeopardy - Memo 1083 - C - TM_67989.docx | ROSS-003280232-ROSS-003280233 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 15016 | Ex parte Hayes, 931 S.W.2d 721 | 135H+59 | A jury is not selected as the trier of fact, and a defendant is not placed in jeopardy of a conviction until the jury has been impaneled. A Texas jury is considered impaneled only after "all twelve jurors (plus any alternates) have been qualified and accepted and the jury, as a whole, is given the requisite oath." Rousseau v. State, 824 S.W.2d 579, 581 (Tex.Crim.App.1992), cert. denied, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). Thus, the trial judge, not the attorneys, selects the jury only after ensuring that its members are qualified, accepted by the parties in the case, and all its members are sworn. | For purposes of state constitutional double jeopardy prohibition, jury is considered "impaneled" only after all twelve jurors, plus any alternates, have been qualified and accepted and jury, as a whole, is given requisite oath. Vernon's Ann.Texas Const. Art. 1, S 14. | "When is a jury considered ""impaneled""?" | Double Jeopardy - Memo 1100 - C - NS_68005.docx | ROSS-003295281 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 15017 | United States v. Gallardo, 915 F. Supp. 216 | 135H+25 | Jeopardy does not attach in a civil forfeiture proceeding until the final judgment is entered.United States v. Sanchez"Cobarruvias, 65 F.3d 781, 783 (9th Cir.1995) ("there must be a degree of finality to the prior proceeding before double jeopardy may be deemed to attach"). Since summary judgment was granted in the civil forfeitures after jeopardy attached in the criminal case, Defendant's criminal conviction did not violate double jeopardy. | Jeopardy does not attach in civil forfeiture proceeding until final judgment is entered. U.S.C.A. Const.Amend. 5. | Does jeopardy not attach in a civil forfeiture proceeding until final judgment is entered? | Double Jeopardy - Memo 236 - C - BP_66755.docx | ROSS-003281039-ROSS-003281040 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 15018 | Camden v. Circuit Court of Second Judicial Circuit, Crawford Cty., Ill., 892 F.2d 610 | 135H+96 | Camden maintains that a retrial is barred by the double jeopardy clause of the Fifth Amendment, which is applicable to the states through the fourteenth amendment. Benton v. Maryland, 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707 (1969). The double jeopardy clause safeguards a criminal defendant's "valued right to have his trial completed by a particular tribunal," as well as the public's interest in "fair trials designed to end in just judgments." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); see also United States v. Jorn, 400 U.S. 470, 484, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971); Lovinger v. Circuit Court of the 19th Judicial Circuit, 845 F.2d 739, 743 (7th Cir.), cert. denied, 488 U.S. 851, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988). The double jeopardy clause bars retrial unless the trial court's mistrial declaration was occasioned by "manifest necessity," United States v. DiFrancesco, 449 U.S. 117, 130, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) (citing United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)), or consented to by the defendant, Oregon v. Kennedy, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). | When defendant consents to mistrial, double jeopardy clause will bar retrial only if governmental or judicial conduct was intended to goad defendant into assenting to mistrial. U.S.C.A. Const.Amend. 5. | "Does the double jeopardy clause bar retrial unless the district court's mistrial declaration was occasioned by manifest necessity, or consented to by the defendant?" | 015266.docx | LEGALEASE-00163701-LEGALEASE-00163702 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 15019 | State v. Swartz, 541 N.W.2d 533 | 135H+108 | As well, generally, the Double Jeopardy Clause does not bar retrial of a defendant after a mistrial declared at the defendant's request. See Arizona v. Washington, 434 U.S. 497, 515-16, 98 S.Ct. 824, 835, 54 L.Ed.2d 717, 734-35 (1978). The Court, however, fashioned a narrow exception to this rule. Reprosecution is barred if the mistrial was caused by prosecutorial misconduct "intended to "goad" the defendant into moving for a mistrial." Oregon, 456 U.S. at 676, 102 S.Ct. at 2089, 72 L.Ed.2d at 425. The Court reasoned such misconduct prejudices an interest protected by the Double Jeopardy Clause-the defendant's right "to have his trial completed before the first jury impaneled to try him." Id. at 673, 102 S.Ct. at 2088, 72 L.Ed.2d at 423. | Prosecutorial misconduct exception to rule that double jeopardy does not bar retrial of defendant after mistrial declared at defendant's request did not apply to defendant, whose conviction was reversed due to prosecutor's deliberate use of perjured testimony which likely influenced outcome of trial and where no motion for mistrial based on prosecutorial misconduct was made. U.S.C.A. Const.Amend. 6. | Does double jeopardy not bar retrial of a defendant after mistrial declared at a defendant's request? | Double Jeopardy - Memo 303 - C - PC_66597.docx | ROSS-003293263-ROSS-003293264 | Condensed, SA, Sub | 0.46 | 0 | 1 | 1 | 1 | 1 |
| 15020 | Alston v. State, 177 Md. App. 1 | 135H+95.1 | We are mindful that in Maryland and elsewhere, courts treat the swearing of the jury as the demarcation of when a trial commences for double jeopardy purposes, giving that moment in time a special significance. See State v. Woodson, 338 Md. 322, 329, 658 A.2d 272 (1995); see also Downum v. United States, 372 U.S. 734, 738, 83 S.Ct. 1033, 1036 n. 1, 10 L.Ed.2d 100 (1963). A defendant can "be put in jeopardy even in a prosecution that did not culminate in a conviction or an acquittal[.]" Crist v. Bretz, 437 U.S. 28, 34, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978). This doctrine refers to "the species of double jeopardy law ... [known as] "retrial following mistrial." " Fields v. State, 96 Md.App. 722, 726, 626 A.2d 1037 (1993). | A defendant can be put in jeopardy even in a prosecution that did not culminate in a conviction or an acquittal; this doctrine refers to the species of double jeopardy law known as retrial following mistrial. U.S.C.A. Const.Amend. 5. | Can a defendant be put in jeopardy even in a prosecution that did not culminate in a conviction or an acquittal? | 015447.docx | LEGALEASE-00163503-LEGALEASE-00163504 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15021 | Torres v. K-Site 500 Assocs., 632 So. 2d 110 | 156+52.10(3) | Moreover, we find that the seller's actions constituted an implied waiver of the ten-day provision, thus further supporting our finding that the buyers were not estopped from asserting the mortgage financing contingency clause as a defense for their failure to close. A waiver is the intentional relinquishment of a known right and may be express or implied. Thomas N. Carlton Estate v. Keller, 52 So.2d 131 (Fla.1951); Continental Real Estate Equities, Inc. v. Rich Man Poor Man, Inc., 458 So.2d 798 (Fla. 2d DCA 1984); Fireman's Fund Ins. Co. v. Vogel, 195 So.2d 20 (Fla. 2d DCA 1967). A party may waive any rights to which he or she is legally entitled, by actions or conduct warranting an inference that a known right has been relinquished. Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263 (1945); Miami Dolphins, Ltd. v. Genden & Bach, P.A., 545 So.2d 294 (Fla. 3d DCA 1989); McNeal v. Marco Bay Assoc., 492 So.2d 778 (Fla. 2d DCA), rev. denied, 500 So.2d 544 (Fla.1986); Singer v. Singer, 442 So.2d 1020 (Fla. 3d DCA 1983). | Party may waive any rights to which he or she is legally entitled, by actions or conduct warranting inference that known right has been relinquished. | Can a party waive any rights to which he is entitled? | 018216.docx | LEGALEASE-00162997-LEGALEASE-00162998 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 15022 | In re Tracy B., 391 S.C. 51 | 203+530 | Murder is statutorily defined as "the killing of any person with malice aforethought, either express or implied." S.C.Code Ann. " 16"3"10 (2003). " "Malice" is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong." State v. Kelsey, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998). "It is the doing of a wrongful act intentionally and without just cause or excuse." Tate v. State, 351 S.C. 418, 426, 570 S.E.2d 522, 527 (2002). | "Malice," as element of murder, is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong. Code 1976, S 16-3-10. | Does malice indicate a wicked or depraved spirit intent on doing wrong? | 019391.docx | LEGALEASE-00164052-LEGALEASE-00164053 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 15023 | Com. v. Neves, 474 Mass. 355 | 203+530 | "In a nonfelony-murder case, the fact that the shooting was accidental negates the malice element required for murder." Commonwealth v. Griffith, 404 Mass. 256, 260, 534 N.E.2d 1153 (1989). The judge recognized the possibility of accident in this case: the jury were instructed that an accident resulting in death would negate malice under the theories of deliberate premeditation and extreme atrocity or cruelty. The jury were not, however, similarly provided with a manslaughter instruction based on these theories. Such an instruction should have been given, because the jury reasonably could have concluded that the shooting was accidental, based on the defendant's statements to police that the gun discharged accidentally when the taxicab driver accelerated and grabbed at the defendant's hand. See Jessup, supra at 135, 27 N.E.3d 1232. | In a nonfelony-murder case, fact that shooting was accidental negates malice element required for murder. | Does shooting by accident negate the malice element required for murder? | 019397.docx | LEGALEASE-00164058-LEGALEASE-00164059 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 15024 | State v. Rich, 132 N.C. App. 440 | 203+546 | In the present case, the trial court instructed the jury as follows regarding the kind of "depraved-heart" malice described in Wilkerson:You have asked me with regard to wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, a mind regardless of social duty and deliberately bent on mischief, as to whether all of these must be present. My answer to that is no. One of these, some of these, or all of these may be proved and may be sufficient to supply the malice necessary for second degree murder. That is a factual determination that you, the jury, must make[.] | "Wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief" are examples, any one of which may provide the malice necessary to convict a defendant of second-degree murder. G.S. S 14-17. | Does malice include cruelty? | 019410.docx | LEGALEASE-00164038-LEGALEASE-00164039 | Condensed, SA, Sub | 0.52 | 0 | 1 | 1 | 1 | 1 |
| 15025 | Robinson v. Estate of Jester, 333 Ga. App. 41 | 302+46 | Under similar circumstances, where the caption of a complaint named only the deceased as a defendant, and not the executrix of his estate, we held that the substance of the complaint nevertheless revealed that the "claims were not actually asserted against the deceased ..., but focused on the estate and [the executrix]." Anderson v. Bruce, 248 Ga.App. 733, 736(2), 548 S.E.2d 638 (2001) (citation omitted). As explained in that case:The names of the parties to an action must appear either in the caption of the petition or in the body thereof. Courts refrain from attaching too much importance to the merely formal parts of a complaint and construe pleadings so as to do substantial justice. Substance, rather than nomenclature, controls. Thus, the character in which a party is sued may be determined from the substance of the allegations of the petition, considered in its entirety.Id. at 735"736(2), 548 S.E.2d 638 (citations and punctuation omitted). | The names of the parties to an action must appear either in the caption of the petition or in the body thereof. | Should the names of the parties to an action appear in the caption of the petition? | 023933.docx | LEGALEASE-00163372-LEGALEASE-00163373 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 15026 | Gehrke v. State, 363 S.W.2d 490 | 302+43 | The trial court sustained defendants' exception directed to this uncertainty, and ordered plaintiffs to restyle and redocket this cause as a new and independent cause of action. This exception was not cured by plaintiffs in their amended pleading, but they now state that this was a mere technicality and would not justify the dismissal of the suit. It is true that a misnomer does not change the nature of a pleading, and the jurisdiction of the court is invoked even though improperly styled and docketed. Rule 71, Texas Rules Civ.Proc.; Leach v. Brown, 156 Tex. 66, 292 S.W.2d 329. A different issue is presented here in that the trial court, after sustaining defendants' exception, correctly gave plaintiffs the opportunity to amend. Upon plaintiffs' refusal to amend, the trial court was empowered to enter an order of dismissal. Ship Ahoy, Inc. v. Whalen, Tex.Civ.App., 347 S.W.2d 662, no writ hist.; Shaw v. Universal Life & Accident Ins. Co., Tex.Civ.App., 123 S.W.2d 738, error dism. judgment correct; 4 A.L.R.2d 352. | Misnomer does not change nature of a pleading, and jurisdiction of the court is invoked even though improperly styled and docketed. Rules of Civil Procedure, rule 71. | Does a misnomer change the nature of a pleading? | 023941.docx | LEGALEASE-00163585-LEGALEASE-00163586 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15027 | K.O. Real Estate v. O'Toole, 291 S.W.3d 780 | 228+252(1) | The purpose of pleadings is to "present, define, and isolate the issues, so that the trial court and all parties have notice of the issues." Norman v. Wright, 100 S.W.3d 783, 786 (Mo. banc 2003). However, the character of a cause of action must be determined from the facts stated in the petition and not by the prayer or the name given to the action by the pleader. McMenamy v. Main, 686 S.W.2d 874, 876 (Mo.App. E.D.1985). The prayer is not part of the petition. Id. An exhibit to a pleading, on the other hand, is a part of the pleading for all purposes. Rule 55.12; McGuire v. Dir. of Revenue, 174 S.W.3d 87, 89 (Mo.App. E.D.2005). The relief awarded in a judgment is limited to that sought by the pleadings. Norman, 100 S.W.3d at 786. | Lessor's petition placed tenant on notice that lessor was seeking possession, and thus trial court could award lessor possession, even though merely titling the cause of action as "Rent and Possession" or including a request for possession in its prayer and relief did not adequately plead a case of possession, where lessor attached lease as part of its petition, lease included provisions setting forth lessor's entitlement to possession upon non-payment of rent, lessor pled facts in its petition giving rise to its entitlement to possession, and evidence was presented during trial that lessor was seeking everything under the lease including possession. | Is the prayer a part of the petition? | 023947.docx | LEGALEASE-00163735-LEGALEASE-00163736 | Condensed, SA, Sub | 0.1 | 0 | 1 | 1 | 1 | 1 |
| 15028 | Iole v. W. Auto Supply Co., 352 Pa. Super. 528 | 30+70(0.5) | A petition to open a judgment is addressed to the equitable powers of the court. Johnson v. Mulhall, 230 Pa.Super. 183, 326 A.2d 439 (1974); Matyas v. Albert Einstein Medical Center, 225 Pa.Super. 230, 310 A.2d 301 (1973). Accordingly, our Supreme Court has stated that: "A request to open a judgment of non pros is by way of grace and not of right. Its grant or refusal is peculiarly a matter of the lower court's discretion. An appellate court may not reverse the lower court's ruling unless an abuse of discretion is clearly evident:Brigham v. Elgin's of Phila., 406 Pa. 99, 176 A.2d 404 (1962)." Mazer v. Sargent Electric Co., 407 Pa. 169, 171, 180 A.2d 63, 64 (1962). A court will not exercise its discretion and open a judgment of non pros unless three factors coalesce: (1) a petition to open the judgment must be promptly filed; (2) there must be a reasonable explanation or excuse for the default; and (3) facts constituting grounds for a cause of action must be alleged.Goldstein v. Graduate Hospital of the U. of Pa., supra; Thorn v. Clearfield Borough, 420 Pa. 584, 278 A.2d 298 (1966); White v. Alston, 231 Pa.Super. 438, 331 A.2d 765 (1974); Matyas v. Albert Einstein Medical Center, supra. | Appellate rule permitted taking of appeal from court's determination that plaintiffs had not excused their failure to timely file complaint made on plaintiffs' petition to open or strike non pros judgment, even though the order appealed from was interlocutory, limiting Erie Human Relations Commission v. Erie Insurance Exchange, 304 Pa.Super. 172, 450 A.2d 157, holding that exceptions to judgment of non pros would be treated as reconsideration motion and did not toll statute of limitations to permit appeal beyond 30-day appeal period to the facts of the case. Rules App.Proc., Rule 311(a)(1), 42 Pa.C.S.A. | "Before a judgment of non pros can be opened, should the petition to open be timely filed?" | 040664.docx | LEGALEASE-00163046-LEGALEASE-00163047 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 15029 | Broome v. State Dep't of Corr., 330 Wis. 2d 792 | 30+3896 | When a plaintiff is faced with a motion to dismiss for failure to state a claim and recognizes that the complaint does not allege all facts necessary to state a claim, the proper procedure is to amend the complaint or seek permission to amend the complaint. A plaintiff may amend a complaint once as a matter of course"within six months from the filing of the action or pursuant to a scheduling order"and thereafter with the court's permission or by stipulation. See Wis. Stat. " 802.09(1). | In examining the complaint on motion to dismiss for failure to state a claim, the Court of Appeals take the allegations as true, construing them liberally in the plaintiff's favor. W.S.A. 802.06(2)(b). | "When a plaintiff is faced with a motion to dismiss for failure to state a claim and recognizes that the complaint does not allege all facts necessary to state a claim, is the proper procedure to amend the complaint?" | Pretrial Procedure - Memo 12134 - C - VP_66711.docx | ROSS-003292709-ROSS-003292710 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 15030 | People v. Marino, 388 Ill. 203 | 352H+99 | It is true that in order to constitute the offense of assault with intent to commit rape, the specific intent charged is the gist of the offense. The assault must be shown to have been such that it would have constituted rape had the purpose of the assault been accomplished. It is also true that it is not necessary that an express intent be proved. Where, as here, the assault is clearly proved and not disputed, the intent may be inferred from acts as well as from words spoken during the assault. People v. Kruse, 385 Ill. 42, 52 N.E.2d 200. In a prosecution for assault with intent to commit rape, the question of whether the assault was made with the intent charged in the indictment is a question of fact to be determined from the evidence. People v. Anderson, 382 Ill. 316, 47 N.E.2d 718; People v. Maher, 377 Ill. 488, 36 N.E.2d 735; People v. Makovicki, 316 Ill. 407, 147 N.E. 393. | The gist of offense of assault with intent to commit rape is specific intent charged. | Is specific intent charged considered as the gist of the offense of assault with intent to commit rape? | 043127.docx | LEGALEASE-00164070-LEGALEASE-00164071 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 15031 | Executone Info. Sys. v. Davis, 26 F.3d 1314 | 25T+183 | Admittedly, an issue concerning "Alleged loss of contracts due to equipment shortages and deficiencies" is somewhat broad, but this does not weaken our conclusion that the issue decided was submitted to the arbitrator. The Valentine Sugars case is instructive. The parties in that case had entered a joint venture whereby one party would provide a formula for a resin to be used to manufacture waferboard and the other would buy an industrial spray dryer to spray dry the liquid resin. Valentine Sugars, 981 F.2d at 211"12. The resin turned out to be faulty, so the joint venture was unsuccessful. Id. at 212. In the aftermath, one party sued the other and the dispute went to arbitration. Id. The demand for arbitration simply requested the panel to arbitrate " "a dispute concerning a commercial matter involving several contracts signed on the 29th day of June, 1984...." " Id. at 213. The arbitrators decided in their award which party owned the spray dryer, the district court confirmed the award, and on appeal Valentine Sugars claimed that the issue of ownership of the spray dryer had not been submitted. Id. We affirmed the confirmation of the award, expressing our sympathy with Valentine but concluding that the broad language of the arbitration demand "gave the arbitrators the power to do whatever was necessary to resolve any disputed matter arising out of the joint venture." Id. As we observed, federal law does not impose any requirements as to how specific a notice of arbitration must be, and we declined to develop a code of pleading for arbitration ourselves. Id. | Federal law does not impose any requirements as to how specific notice of arbitration must be. | Does federal law impose any requirements as to how specific a notice of arbitration must be? | 008101.docx | LEGALEASE-00165065-LEGALEASE-00165066 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 15032 | Booker v. Ward, 94 F.3d 1052 | 241+104.5 | Booker relies in the alternative on a ground the district court addressed sua sponte: that the statute of limitations was equitably tolled while the case was dismissed pending the conclusion of state court proceedings. The doctrine of equitable tolling provides that "a person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so." Heck v. Humphrey, 997 F.2d 355, 357 (7th Cir.1993), aff'd. on other grounds, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). But equitable tolling does not give a plaintiff "an automatic extension of indefinite duration, no matter how much his carelessness or sloth may have contributed to the delay in the prosecution of his claim." Id.Instead, it gives the plaintiff only the extra time that he needs, despite all due diligence on his part, to file his claim. Id. | Doctrine of equitable tolling provides that person is not required to sue within statutory limitations period if he cannot, under the circumstances, reasonably be expected to do so. | What is the doctrine of equitable tolling? | 008103.docx | LEGALEASE-00165067-LEGALEASE-00165068 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15033 | Ackerman v. Tobin, 22 F.2d 541 | 108H+59 | Under the New York statutes a cause of action arising upon contract is garnishable. Article 55 of the New York Civil Practice Act (Cahill 1924) Sec. 916. It is a general rule held by the state courts, aside from the necessity of first complying with the condition of the policy requiring the assured to make proof of loss, and unless the claim is rendered uncertain by options reserved by the company, such, for instance, as the right to rebuild, that a claim for loss under an insurance policy is unquestionably subject to garnishment; and where the policy does not stipulate to the contrary, such a claim accrues, and is subject to garnishment immediately upon the occurrence of the loss. 28 C.J. p. 164, Sec. 204. Under the doctrine that a claim is sufficiently certain and liquidated to be subject to garnishment, where its amount may be ascertained by reference to some definite standard, it is generally held in the state courts that an unadjusted claim for loss under an insurance policy is subject to garnishment. 28 C.J. . 165, Sec. 207; Knox v. Protection Ins. Co., 9 Conn. 430, 25 Am.Dec. 33; Glens Falls Ins. Co. v. Hite, 83 Ill.App. 549; Hanover F. Ins. Co. v. Connor, 20 Ill.App. 297; Northwestern Ins. Co. v. Atkins, 3 Bush. (Ky.) 328, 96 Am.Dec. 239; Meridian Land, etc., Co., v. Ormond, 82 Miss. 758, 35 So. 179; Crescent Ins. Co. v. Moore, 63 Miss. 419; Reid v. Mercurio, 91 Mo.App. 673; Sexton v. phoenix Ins. Co., 132 N.C. 1, 43 S.E. 479; Hays v. Lycoming F. Ins. Co., 99 Pa. 621; Girard F. & M. Ins. Co., v. Field, 45 Pa. 129; Franklin F. Ins. Co., v. West, 8 Watts & S. (Pa.) 350; Jagode v. Smalley, 10 Pa.Super.Ct. 320; West v. Franklin F. Ins. Co., 2 Clark (Pa.) 70, 3 Pa.Law J. 299; Field v. Insurance Co., 4 Phila. (Pa.) 286; Phoenix Ins. Co. v. Willis, 70 Tex. 12, 16, 6 S.W. 825, 8 Am.St.Rep. 566. | Unadjusted claim for loss under insurance policy is generally held to be subject to garnishment. | Are unadjusted claims for loss under an insurance policy subject to garnishment? | Creditors' Remedies - Memo 34 - RK_67503.docx | ROSS-003305712-ROSS-003305713 | Condensed, SA, Sub | 0.95 | 0 | 1 | 1 | 1 | 1 |
| 15034 | In re Steele, 323 B.R. 776 | 135+2 | The most straightforward way to establish venue requires the Debtor to maintain a residence in the District in which he files. Black's Law Dictionary defines residence as the "[p]lace where one actually lives or has his home; a person's dwelling or place of habitation." Black's Law Dictionary (6th ed.1990). The Debtor has never actually lived in or made a home in the Northern District. Moreover, "[t]he fact that a person ... arranges for his mail to be left ... does not convert him into a resident of that address."Williams v. General Insurance Co., 468 So.2d 1033, 1034 (Fla. 3rd DCA 1985). Based on the foregoing the Debtor is not entitled to file a petition in this district based upon his residence. | Under Florida law, fact that person arranges for his mail to be left at particular address does not make him a "resident" at that address. | "Does the fact that a person arranges for his mail to be left at particular address not make him a ""resident"" at that address?" | 014585.docx | LEGALEASE-00164234-LEGALEASE-00164235 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 15035 | Dickey v. McComb Dev. Co., 115 S.W.3d 42 | 322H+948 | He may live temporarily in one place while maintaining his residence in another. Malnar, 91 S.W.3d at 928. In addition, the fact that an individual leases the abode while physically absent from it does not mean, by itself, that the abode is no longer his residence. Malnar, 91 S.W.3d at 929; Kirk v. Barnett, 566 S.W.2d 122, 123 (Tex.Civ.App.-Houston [14th Dist.] 1978, no writ). | The fact that an individual leases the abode while physically absent from it does not mean, by itself, that the abode is no longer his "residence" for purposes of statute mandating 60-day notice period for cure of default on property used as "residence" before vendors can terminate sale contract. V.T.C.A., Property Code SS 5.061-5.063. | "If one leases the abode while physically absent from it does not mean, in and of itself, that the abode was no longer his residence?" | 014591.docx | LEGALEASE-00164244-LEGALEASE-00164245 | Condensed, SA, Sub | 0.09 | 0 | 1 | 1 | 1 | 1 |
| 15036 | United States v. Watts, 519 U.S. 148 | 135H+30 | The Court of Appeals position to the contrary not only conflicts with the implications of the Guidelines, but it also seems to be based on erroneous views of our double jeopardy jurisprudence. The Court of Appeals asserted that, when a sentencing court considers facts underlying a charge on which the jury returned a verdict of not guilty, the defendant "suffers punishment for a criminal charge for which he or she was acquitted." Watts, 67 F.3d, at 797 (quoting Brady, 928 F.2d, at 851). As we explained in Witte, however, sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction. 515 U.S., at 402-403, 115 S.Ct., at 2207-2208. | Sentencing enhancements do not punish defendant for crimes of which he was not convicted, but rather increase his sentence because of manner in which he committed crime of conviction. U.S.C.A. Const.Amend. 5. | Do sentencing enhancements punish defendant for crimes of which he was not convicted? | 015021.docx | LEGALEASE-00164663-LEGALEASE-00164664 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 15037 | State v. Edwards, 510 S.W.3d 374 | 135H+1 | Defendant raises this claim for the first time on appeal. The protection against double jeopardy is a constitutional right addressing the power of the State to bring a charge against an accused. State v. Neher, 213 S.W.3d 44, 48 (Mo. banc 2007). In order to preserve a constitutional claim for review, it must be raised at the earliest opportunity. State v. Horton, 325 S.W.3d 474, 477 (Mo. App. E.D. 2010). However, if a claim of double jeopardy can be determined from the face of the record, it is entitled to plain error review upon appeal. Neher, 213 S.W.3d at 48. | The protection against double jeopardy is a constitutional right addressing the power of the State to bring a charge against an accused. U.S. Const. Amend. 5. | Is protection against double jeopardy a constitutional right? | Double Jeopardy - Memo 845 - C - VA_67567.docx | ROSS-003278692 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 15038 | Commonwealth v. Angus, 450 S.W.3d 719 | 135H+59 | Cardine v. Commonwealth, 283 S.W.3d 641, 646 (Ky.2009). However, when a bench trial is held, as in this case, jeopardy attaches when the first witness is sworn:In a nonjury trial, jeopardy attaches when the court begins to hear evidence. The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is "put to trial before the trier of facts, whether the trier be a jury or a judge." | When a bench trial is held, jeopardy attaches when the first witness is sworn. U.S. Const. Amend. 5; Ky. Const. S 13. | Can a jeopardy be attached when the first witness is sworn when a bench trial is held? | Double Jeopardy - Memo 990 - C - PC_67721.docx | ROSS-003279425-ROSS-003279426 | Condensed, Order, SA, Sub | 0.76 | 1 | 1 | 1 | 1 | 1 |
| 15039 | State v. Yetman, 516 S.W.3d 33 | 135H+7 | In a single issue the State asserts the trial court abused its discretion in granting appellee's pretrial writ of habeas corpus. Generally, a criminal defendant may not be put in jeopardy by the State twice for the same offense. U.S. Const. amend. V; Pierson v. State, 426 S.W.3d 763, 769 (Tex. Crim. App. 2014). In cases tried by a jury, a defendant is placed in jeopardy when the jury is empaneled and sworn, and "because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal." " Id. (quoting Arizona v. Washington, 434 U.S. 497, 504, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)). Despite the general prohibition against jeopardy-barred trials, there are two exceptions in which a criminal defendant may be tried again without violating double-jeopardy principles when the prosecution ends prematurely as the result of a mistrial: (1) the defendant consents to a retrial, or (2) there was a manifest necessity to grant a mistrial. Id. at 769"70. | Because jeopardy attaches before the judgment becomes final, the constitutional protection against double jeopardy embraces the defendant's valued right to have his trial completed by a particular tribunal. U.S. Const. Amend. 5. | Will a defendant be placed in jeopardy when the jury is empaneled and sworn? | Double Jeopardy - Memo 999 - C - PC_67730.docx | ROSS-003294199-ROSS-003294200 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15040 | Dombrosky v. Farmers Ins. Co. of Washington, 84 Wash. App. 245 | 156+54 | Because equitable estoppel is not a favored doctrine, the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence, that is, by evidence of sufficient persuasive impact as to cause the trier of fact to believe that the fact at issue is highly probable. Colonial Imports, Inc. v. Carlton Northwest, Inc., 121 Wash.2d 726, 734"35, 853 P.2d 913 (1993). Further, no estoppel arises if the injured party had equal opportunity to determine the facts. Public Util. Dist. No. 1 v. W.P.P.S.S., 104 Wash.2d 353, 365, 705 P.2d 1195 (1985). | No estoppel arises if injured party had equal opportunity to determine facts. | Does estoppel arise if the injured party had equal opportunity to determine the facts? | Estoppel - Memo 314 - C - CSS_67196.docx | ROSS-003281380-ROSS-003281381 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 15041 | In re Estate of Long, 311 Ill. App. 3d 959 | 233+531 | While Bruce was not related to decedent, that fact works against Bruce in this case. If Bruce, who had farmed the 134 acres for a number of years, had been related to decedent, that might have explained why decedent was willing to give up control of his farm for 15 years. As the witnesses testified, and the trial court found, a 15"year farm lease is an extraordinary thing. A farm tenancy is a personal services contract in which the tenant is expected to perform services that require skill and judgment. Ames v. Sayler, 267 Ill.App.3d 672, 675, 205 Ill.Dec. 223, 642 N.E.2d 1340, 1343 (1994). Just as no reasonable person would bind himself to see the same doctor or lawyer for the next 15 years, no reasonable farm owner would bind himself to use the same tenant for 15 years, without some reason for doing so. The fact that the seed contract provided some benefits to decedent adds little to the analysis. Decedent had the benefits of the seed contract under the oral year-to-year lease. | A farm tenancy is a personal services contract in which the tenant is expected to perform services that require skill and judgment. | Are farm tenancies considered personal service contracts? | 021032.docx | LEGALEASE-00164971-LEGALEASE-00164972 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 15042 | Gregg v. Rauner, 84 N.E.3d 572 | 92+2392 | Also, regarding the IPRB's executive clemency power, the IPRB serves as a "board of review and recommendation for the exercise of executive clemency by the Governor." 730 ILCS 5/3-3-1(a)(3) (West 2014). The Governor's executive clemency powers are extremely broad and cannot be controlled by either the courts or the legislature. People ex rel. Madigan v. Snyder, 208 Ill. 2d 457, 473, 281 Ill.Dec. 581, 804 N.E.2d 546 (2004). Although the IPRB advises the Governor regarding clemency petitions, the Governor's clemency decisions are left wholly to his discretion. Once the Governor makes a decision on a clemency application, he communicates that decision to the IPRB. 730 ILCS 5/3-3-13(d) (West 2014). Thus, the IPRB acts as an advisor to the Governor, and the IPRB's relationship to the Governor in the executive clemency process establishes that it is not an independent agency but a traditional part of the executive branch. | The Governor's executive clemency powers are extremely broad and cannot be controlled by either the courts or the legislature. | Can the Governors clemency power be controlled by the legislature or the courts? | Pardon and Parole - Memo 1 - RK_67516.docx | ROSS-003292037-ROSS-003292038 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 15043 | Shell v. Conrad, 153 S.W.2d 384 | 302+376 | We cannot agree that such statement correctly presents the law, nor do the authorities cited by plaintiff sustain in every respect this statement of the law. Ida K. Conrad's verified plea of non est factum not only denies the execution of the note and places the burden of proving its execution upon the plaintiff, but also denies, at least by inference, the ownership by plaintiff of such a note. It is true that the courts in this state have long held that traversible matters not traversed by pleadings, are taken as true; that facts alleged in a petition or complaint and not denied by answer, stand admitted and need not be proved. However, statement of mere conclusions are not allegations of fact calling for denial. The only allegation in plaintiff's petition as to his interest in the note sued on is as follows: "Plaintiff acquired all right and title to the promissory note together with assets of said Bollinger County Dairy Association, and assumed the liabilities of said association and plaintiff is now the rightful owner and holder of said note." This statement is but a mere conclusion and alleges no facts from which it may be inferred that the note had been legally transferred or assigned by the payee to plaintiff, or that he was the rightful owner and holder thereof. | Facts alleged in a petition or complaint and not denied by answer stand admitted and need not be proved. | "Should facts alleged in petition and not denied by answer, be proved?" | Pleading - Memo 651 - RMM_67283.docx | ROSS-003283256-ROSS-003283257 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 15044 | Web Press Servs. Corp. v. New London Motors, 203 Conn. 342 | 302+388 | A plaintiff's right to recover has traditionally been based on the allegations made in his complaint. "A plaintiff may not allege one cause of action and recover upon another." Malone v. Steinberg, 138 Conn. 718, 721, 89 A.2d 213 (1952). While this principle still remains in force today, courts now follow a more liberal policy in passing on claims of variance between the pleadings and the proof offered. Francis v. Hollauer, 1 Conn.App. 693, 696, 475 A.2d 326 (1984). A court will overlook a variance between the pleadings and proof unless that variance is so material as to prejudice the other party in the presentation of its case. Practice Book " 178; Strimiska v. Yates, 158 Conn. 179, 184, 257 A.2d 814 (1969). | Court will overlook variance between pleadings and proof, unless variance is so material that it prejudices other party in presentation of case. Practice Book 1978, S 178. | Will the court overlook a variance between the pleadings and proof? | 023967.docx | LEGALEASE-00164485-LEGALEASE-00164486 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 15045 | City of Tyler v. Beck, 198 S.W.3d 1 | 307A+583 | The trial court has inherent authority to dismiss any case before it for want of prosecution. See Villarreal v. San Antonio Truck & Equip., 994 S.W.2d 628, 630 (Tex.1999). No party in a condemnation proceeding is under a legal obligation to go forward with a civil trial unless and until it has been properly served with citation. See Amason v. Natural Gas Pipeline Co., 682 S.W.2d 240, 243 (Tex.1984) (citing Denton County v. Brammer, 361 S.W.2d 198, 200 (Tex.1962)). | The trial court has inherent authority to dismiss any case before it for want of prosecution. | Does the trial court have the inherent authority to dismiss any case before it for want of prosecution? | Pretrial Procedure - Memo 12209 - C - PC_67303.docx | ROSS-003283271-ROSS-003283272 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 15046 | Hillsborough Cty. v. Kortum, 585 So. 2d 1029 | 371+2311 | The trial court's findings, based upon taxation of the property, will not permit the judgment to stand. Florida Administrative Code Rule 12D"8.001(1)(a) requires that the property appraiser make a determination of the value of all property located within his county. The assessed value of the land must represent all interests in the land unless the legislature has authorized a separate assessment of separate interests. Homer v. Dadeland Shopping Center, Inc., 229 So.2d 834 (Fla.1969). Property subject to an easement held by a governmental unit is not immune or exempt from taxation. 1974 Op.Att'y Gen.Fla. 74"83 (March 1974). | Property subject to easement held by government unit is not immune or exempt from taxation. | Is a property subject to easement held by government immune or exempt from taxation? | 046454.docx | LEGALEASE-00164549-LEGALEASE-00164550 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15047 | City of Egg Harbor City v. Cty. of Atl. Cty., 10 N.J. Tax 7 | 371+2311 | Public property, however, leased for private purposes is not exempt from local property taxation. In Ocean Cty. v. Dover Tp., 3 N.J.Tax 434 (Tax Ct.1981), one-third of a county-owned building was leased to and occupied by a private commercial tenant. The court held that there was no public use for the one-third of the building rented to the tenant; the area occupied by the tenant was therefore not exempt from local property taxation; and, in the absence of a legislative provision for the apportionment, the entire county-owned building was subject to local property taxation. | Property owned by county, leased to Department of Corrections and operated by private profit-making entity as juvenile detention facility was exempt from local property taxation, as publicly owned property, used for a public purpose, regardless of whether DOC had authority to contract with for-profit entity. N.J.S.A. 30:1B-8, 30:4-91.2, 54:4-3.3. | Is a lease of public property for private purposes exempt from local property taxation? | 046476.docx | LEGALEASE-00164691-LEGALEASE-00164692 | Condensed, SA, Sub | 0.4 | 0 | 1 | 1 | 1 | 1 |
| 15048 | Andrews v. Pal-Mar Water Control Dist. Dep't of Revenue, 388 So. 2d 4 | 371+2315 | The state and its political subdivisions are immune from taxation since there is no power to tax them. Dickinson v. City of Tallahassee, 325 So.2d 1 (Fla. 1975); Alford v. State, 107 So.2d 27 (Fla. 1958); Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla. 1958); Orlando Utilities Comm'n. v. Milligan, 229 So.2d 262 (Fla. 4th DCA 1969), cert. denied 237 So.2d 539 (Fla. 1970). | The state and its political subdivisions are immune from taxation since there is no power to tax them. | Is the state and its political subdivisions immune from taxation since there is no power to tax them? | 046486.docx | LEGALEASE-00164707-LEGALEASE-00164708 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 15049 | State v. Espinoza, 233 Ariz. 176 | 135H+59 | In Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the Supreme Court addressed this very question. There, the jury was instructed that it could find the defendant guilty of either first-degree or second-degree murder. Id. at 185, 78 S.Ct. 221. The jury found the defendant guilty of second-degree murder but was silent as to first-degree murder. Id. at 186, 78 S.Ct. 221. After the defendant's conviction for second-degree murder was reversed, he was tried again for first-degree murder and raised the defense of double jeopardy. Id. The Court concluded, "[A] defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again." Id. at 188, 78 S.Ct. 221. | Defendant is placed in jeopardy once he is put to trial before a jury so that if the jury is discharged without his consent he cannot be tried again. U.S.C.A. Const.Amend. 5. | Why will a defendant be placed in jeopardy once he is put to trial before a jury? | 014617.docx | LEGALEASE-00165265-LEGALEASE-00165266 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 15050 | State v. Triplett, 355 S.W.3d 543 | 135H+59 | The double jeopardy clause does not render the dismissal a final judgment. Double jeopardy is not an issue as to a new charge because the motion hearing was a pre-trial hearing as to the sufficiency of the evidence to warrant the admission of any evidence resulting from the arrest. See " 547.200.2; Burns, 994 S.W.2d at 942"43. In a court-tried case, jeopardy attaches once evidence has been presented as to the merits of the issue of guilt. State v. Connell, 326 S.W.3d 865, 867 (Mo.App.2010); State v. Jarvis, 809 S.W.2d 460, 461 (Mo.App.1991). "If the proceeding is designed to hear the accused's defenses or objections before trial, and no determination of factual guilt or innocence is made or attempted, then jeopardy does not attach." Smothers, 297 S.W.3d at 632. Here, the trial court never began to hear evidence regarding the question of Triplett's guilt. | In a court-tried case, jeopardy attaches once evidence has been presented as to the merits of the issue of guilt; however, if the proceeding is designed to hear the accused's defenses or objections before trial, and no determination of factual guilt or innocence is made or attempted, then jeopardy does not attach. U.S.C.A. Const.Amend. 5. | Will jeopardy attach once evidence has been presented as to the merits of the issue of guilt? | 014649.docx | LEGALEASE-00165451-LEGALEASE-00165452 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |
| 15051 | Martinez v. Caldwell, 644 F.3d 238 | 135H+59 | The Fifth Amendment's Double Jeopardy Clause protects a criminal defendant from repeated prosecutions for the same offense. Under that clause, a defendant has the right "to have his trial completed by a particular tribunal." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). More specifically, a defendant has a right to a complete trial by the jury first selected and impaneled. See generally United States v. Scott, 437 U.S. 82, 93"94, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). When a defendant's first trial is terminated prior to verdict, the circumstances of the termination determine whether the Fifth Amendment bars retrial. If the trial is terminated over defense objection, retrial is prohibited absent "manifest necessity." Kennedy, 456 U.S. at 672, 102 S.Ct. 2083. A hung jury is "the prototypical example" of manifest necessity. Id. In the case of a mistrial declared at the defendant's request, the manifest necessity standard does not apply. Id. This is because a defendant's motion for mistrial constitutes an election to forgo the "valued right to have his guilt or innocence determined by the first trier of fact." Scott, 437 U.S. at 93, 98 S.Ct. 2187 (citing United States v. Dinitz, 424 U.S. 600, 609, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)). So too, when a defendant expressly or impliedly consents to a mistrial. United States v. Palmer, 122 F.3d 215, 218 (5th Cir.1997). And, if a defendant fails to timely object to a mistrial declaration, he is held to have impliedly consented to the mistrial and may be retried in a later proceeding. Id. at 218. | Under Double Jeopardy Clause, a defendant has a right to a complete trial by the jury first selected and impaneled. U.S.C.A. Const.Amend. 5. | Does a defendant have a right to a complete trial by the jury first selected and impaneled? | Double Jeopardy - Memo 1030 - C - KG_67852.docx | ROSS-003279190-ROSS-003279191 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 15052 | People v. Moyer, 292 A.D.2d 793 | 135H+59 | We nevertheless conclude that the court's error in declaring a mistrial does not warrant reversal of the judgment and dismissal of the indictment. The court replaced 10 impartial jurors with 10 other impartial jurors, and thus defendant was not prejudiced by the error (see generally, People v. Arnold, 96 N.Y.2d 358, 362, 729 N.Y.S.2d 51, 753 N.E.2d 846; People v. Culhane, 33 N.Y.2d 90, 108, n. 3, 350 N.Y.S.2d 381, 305 N.E.2d 469, rearg. dismissed 68 N.Y.2d 910, 508 N.Y.S.2d 1030, 501 N.E.2d 603; People v. Hausman, 285 A.D.2d 352, 354, 727 N.Y.S.2d 109, lv. denied 97 N.Y.2d 656, 737 N.Y.S.2d 57, 762 N.E.2d 935). Nor was the retrial barred by double jeopardy. Jeopardy never attached at the first trial because "the entire jury had not been impaneled and sworn at the time of the declaration of the mistrial" (People v. Jenkins, 135 A.D.2d 733, 734, 522 N.Y.S.2d 636, lv. dismissed 71 N.Y.2d 1028, 530 N.Y.S.2d 563, 526 N.E.2d 55, lv. denied 71 N.Y.2d 1028, 530 N.Y.S.2d 563, 526 N.E.2d 55; see, CPL 40.30[1][b]; Matter of Cheatom v. Kreindler, 173 A.D.2d 703, 570 N.Y.S.2d 350). | Defendant's retrial was not barred by double jeopardy; jeopardy never attached at first trial because entire jury had not been impaneled and sworn at time of declaration of mistrial. | Is jeopardy attached when jury has not been impaneled? | Double Jeopardy - Memo 1062 - C - VA_67984.docx | ROSS-003279686-ROSS-003279687 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15053 | State v. Rowe, 480 A.2d 778 | 135H+59 | It is a fundamental principle of criminal law that in a criminal prosecution tried to a jury, jeopardy attaches as soon as the jury is impaneled and sworn. State v. Linscott, 416 A.2d 255, 258 (Me.1980); State v. Slorah, 118 Me. 203, 208, 106 A. 768, 770 (1919). In jury disagreement cases, once jeopardy attaches, a defendant will not lose his opportunity to obtain a favorable verdict from a particular jury and will not be required to stand trial a second time unless he consents to a mistrial, State v. Fredette, 462 A.2d 17, 20 (Me.1983); State v. Small, 381 A.2d 1130, 1132 n. 3 (Me.1978); Clukey v. State, 160 Me. 198, 200, 202 A.2d 6, 8 (1964), or unless under all the circumstances, the mistrial was mandated by manifest necessity. Henderson v. Wright, 533 F.Supp. 1373, 1375"76 (D.Me.1982); State v. McConvey, 459 A.2d 562, 565"66 (Me.1983); State v. Henderson, 435 A.2d 1106, 1107 (Me.1981); see Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). We view the severance order in the instant case as the functional equivalent of a declaration of a mistrial as to Timothy. Accordingly, because jeopardy attached to Timothy at the time the jury was impaneled and sworn at the joint trial with Harold on April 11, 1983, the defendant's retrial violated his right to be free from double jeopardy unless severance were mandated by manifest necessity. | It is a fundamental principle of criminal law that in criminal prosecution tried to jury, jeopardy attaches as soon as jury is impaneled and sworn. U.S.C.A. Const.Amend. 5; M.R.S.A. Const. Art. 1, S 8. | Can a jury trial commence till jury is sworn to determine when jeopardy attaches? | 014752.docx | LEGALEASE-00166006-LEGALEASE-00166007 | SA, Sub | 0.85 | 0 | 0 | 1 | 1 | |
| 15054 | Honester v. State, 329 Ga. App. 406 | 135H+7 | In that light we examine the propriety of the trial court's suasponte declaration of a mistrial, over Honester's objection, in the first trial. Once jeopardy has attached, a mistrial may be declared over the defendant's objection only in cases of manifest necessity.Once a defendant's jury is impaneled and sworn, jeopardy attaches, and he is entitled to be acquitted or convicted by that jury. If a mistrial is declared without a defendant's consent or over his objection, the defendant may be retried only if there was a manifest necessity for the mistrial. A manifest necessity to declare a mistrial may exist under urgent circumstances, such as where an impartial verdict cannot be reached. | Once a defendant's jury is impaneled and sworn, jeopardy attaches, and he is entitled to be acquitted or convicted by that jury. U.S.C.A. Const.Amend. 5. | Is a defendant entitled to be acquitted or convicted by the jury who is impaneled and sworn? | Double Jeopardy - Memo 1080 - C - TM_67986.docx | ROSS-003281369-ROSS-003281370 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 15055 | State v. Battle, 279 N.C. 484 | 135H+95.1 | However, the general rule is that an order of mistrial in a criminal case will not support a plea of former jeopardy. See 53 Am.Jur., Trial s 1000 (1945). This rule prevails in North Carolina and in the federal courts. United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824); State v. Whitson, 111 N.C. 695, 16 S.E. 332; State v. Honeycutt, 74 N.C. 391; State v. Bullock, 63 N.C. 570. See State v. Jefferson, 66 N.C. 309. | Generally, an order of mistrial in a criminal case will not support a plea of former jeopardy. G.S. SS 7A-31(b) (4), 14-89.1. | "Generally, will an order of mistrial not support a plea of former jeopardy?" | Double Jeopardy - Memo 778 - C - NS_67783.docx | ROSS-003320765-ROSS-003320766 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 15056 | Ex parte Pritzkau, 391 S.W.3d 185 | 135H+6 | The Fifth Amendment's Double Jeopardy Clause protects against repeated prosecutions for the same offense. Ex parte Chaddock, 369 S.W.3d 880, 882 (Tex.Crim.App.2012). Separate crimes need not be identical to be considered the same offense under the constitutional prohibition. See Brown v. Ohio, 432 U.S. 161, 164, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). | The Fifth Amendment's Double Jeopardy Clause protects against repeated prosecutions for the same offense. U.S.C.A. Const.Amend. 5. | Are repeated prosecutions for the same offense protected by the double jeopardy clause? | 016479.docx | LEGALEASE-00165283-LEGALEASE-00165284 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 15057 | Smith v. State Indus. Comm'n, 1938 OK 167 | 135H+1 | Smith double jeopardy challenge is premised on the fact that two of his convictions, attempted first-degree murder and attempted felony murder, both arose out of the same attempted killing. Because the prohibition against double jeopardy precludes dual convictions for the same criminal act, we cannot allow both convictions to stand. Accordingly, while we affirm Smith other convictions and sentences, we reverse Smith attempted felony murder conviction and sentence and remand with directions to the trial court to vacate that conviction in accord with this opinion. See McCoy v. State, 942 So.2d 919, 920 (Fla. 2d DCA 2006). | Prohibition against double jeopardy precludes dual convictions for the same criminal act. U.S.C.A. Const.Amend. 5. | Is prohibition against double jeopardy preclude dual convictions for the same criminal act? | Double Jeopardy - Memo 931 - C - NE_67805.docx | ROSS-003305652-ROSS-003305653 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 15058 | Walck v. Edmondson, 472 F.3d 1227 | 135H+1 | A state is prohibited from putting a criminal accused twice in jeopardy for the same crime. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The primary idea underlying this prohibition is that a state must not be permitted "to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." | Under the double jeopardy clause, a state is prohibited from putting a criminal accused twice in jeopardy for the same crime. U.S.C.A. Const.Amend. 5. | Is a state prohibited from putting a criminal accused twice in jeopardy for the same crime? | Double Jeopardy - Memo 946 - C - KS_67820.docx | ROSS-003292490-ROSS-003292491 | SA, Sub | 0.73 | 0 | 0 | 1 | 1 | |
| 15059 | State v. Atkins, 130 Wash. App. 395 | 135H+1 | Both the United States Constitution and the Washington State Constitution prohibit multiple convictions for the same offense. In re Pers. Restraint of Percer, 150 Wash.2d 41, 48"49, 75 P.3d 488 (2003). But the legislature can criminalize every step leading to a greater crime, if it so chooses. Freeman, 153 Wash.2d at 771, 108 P.3d 753. Therefore, determining whether a given set of criminal convictions violates double jeopardy prohibitions is a matter of legislative intent. The question is only whether the legislature intended to punish each crime or not. Id. | Both the United States Constitution and the Washington State Constitution prohibit multiple convictions for the same offense. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, S 9. | Does both the United States Constitution and the Washington State Constitution prohibit multiple convictions for the same offense? | Double Jeopardy - Memo 949 - C - KS_67823.docx | ROSS-003281461-ROSS-003281462 | SA, Sub | 0.68 | 0 | 0 | 1 | 1 | |
| 15060 | Khalifa v. State, 382 Md. 400 | 135H+1 | The Fifth Amendment to the United States Constitution, which is applicable to the States, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Benton v. Maryland, 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707, 716 (1969); State v. Boozer, 304 Md. 98, 101, 497 A.2d 1129, 1130 (1985). The Double Jeopardy Clause forbids multiple convictions and sentences for the same offense. Holbrook, 364 Md. at 369, 772 A.2d at 1248; Nightingale v. State, 312 Md. 699, 702, 542 A.2d 373, 374 (1988); Brown v. State, 311 Md. 426, 431, 535 A.2d 485, 487 (1988); Boozer, 304 Md. at 101, 497 A.2d at 1130. | The Double Jeopardy Clause forbids multiple convictions and sentences for the same offense. U.S.C.A. Const.Amend. 5. | Does the Double Jeopardy Clause forbid multiple convictions and sentences for the same offense? | 016603.docx | LEGALEASE-00165419-LEGALEASE-00165420 | SA, Sub | 0.82 | 0 | 0 | 1 | 1 | |
| 15061 | United States v. Holley, 986 F.2d 100 | 135H+59 | The double jeopardy clause protects a defendant's right to have his trial completed by a particular tribunal. Crist v. Bretz, 437 U.S. 28, 36, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978). Nonetheless, the double jeopardy clause is not an absolute bar to re prosecution once the jury has been empaneled and sworn. Without the defendant's consent, however, re prosecution is more difficult. | Double jeopardy clause is not absolute bar to reprosecution once jury has been empaneled and sworn. U.S.C.A. Const.Amend. 5. | Will the double jeopardy clause be an absolute bar to re-prosecution once jury has been empanelled and sworn? | 016628.docx | LEGALEASE-00165447-LEGALEASE-00165448 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15062 | In re Brankle Brokerage & Leasing, 394 B.R. 906 | 349A+10 | An equity in the "Lessee" is one of the distinctive characteristics of a lease intended for security.... "Whenever it can be found that a lease agreement concerning personal property contains provisions the effect of which are to create in the lessee an equity or pecuniary interest in the leased property the parties are deemed as a matter of law to have intended the lease as security...." Grubbs Construction, 319 B.R. at 718 (citations and internal quotation marks omitted). | Under North Carolina law, equity in "lessee" is one of distinctive characteristics of lease intended for security. | "Is equity in ""lessee"" one of distinctive characteristics of a lease intended for security?" | Secured Transactions - Memo 43 - C - PC_68072.docx | ROSS-003293903-ROSS-003293904 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 15063 | People v. Miller, 164 Cal. App. 4th 653 | 135H+30 | The information alleged that appellant suffered a prior conviction under section 14601.1 in July 2005. However, as appellant points out in a supplemental brief, after she waived jury trial on the alleged prior for driving with a suspended license, the trial court failed to conduct a trial or make any findings. It necessarily follows that the sentence imposed was legally unauthorized and must be reversed. As double jeopardy protections do not apply to the trial of prior conviction allegations (People v. Monge (1997) 16 Cal.4th 826, 845, 66 Cal.Rptr.2d 853, 941 P.2d 1121), we remand for a court trial on the prior conviction allegation and resentencing (see People v. Walker (2001) 89 Cal.App.4th 380, 387, 107 Cal.Rptr.2d 264). | Double jeopardy protections do not apply to the trial of prior conviction allegations. U.S.C.A. Const.Amend. 5. | Do double jeopardy protections apply to the trial of prior conviction allegations? | Double Jeopardy - Memo 1154 - C - SHB_68238.docx | ROSS-003280974-ROSS-003280975 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 15064 | State v. Daniels, 160 Wash. 2d 256 | 135H+100.1 | "[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." Richardson v. United States, 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). Jury silence can be construed as an acquittal and can therefore act to terminate jeopardy. Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (stating jury's silence acted as implied acquittal). But such is not the case when a jury fails to agree and such disagreement is evident from the record. Ervin, 158 Wash.2d at 753"54, 147 P.3d 567. | While jury silence can be construed as an acquittal and can therefore act to terminate jeopardy, such is not the case when a jury fails to agree and such disagreement is evident from the record. U.S.C.A. Const.Amend. 5; West's RCWA Const. Art. 1, § 9. | Can jury silence be construed as an acquittal and can therefore act to terminate jeopardy? | Double Jeopardy - Memo 506 - C - SN_68285.docx | ROSS-003281835-ROSS-003281836 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15065 | State v. Juarez, 115 Wash. App. 881 | 135H+99 | A mistrial will free the defendant from further prosecution, unless it is prompted by "manifest necessity." Browning, 38 Wash.App. at 775, 689 P.2d 1108 (citing United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824)). This means that "extraordinary and striking" circumstances must be present which clearly indicate that substantial justice cannot be obtained without discontinuing the trial. Jones, 97 Wash.2d at 163, 641 P.2d 708 (quoting State v. Bishop, 6 Wash.App. 146, 150, 491 P.2d 1359 (1971)). | A mistrial will free defendant from further prosecution, unless it is prompted by manifest necessity; this means that extraordinary and striking circumstances must be present which clearly indicate that substantial justice cannot be obtained without discontinuing the trial. | "Will a mistrial free a defendant from further prosecution, unless it is prompted by manifest necessity?" | 015940.docx | LEGALEASE-00166299-LEGALEASE-00166300 | Condensed, SA | 0.47 | 0 | 1 | 0 | 1 | |
| 15066 | Moghalu v. United States, 122 A.3d 923 | 135H+1 | There are many good reasons for this rule. Chief among them is the very nature of the double jeopardy protection against successive prosecutions, "whose practical result, if upheld, is to prevent a trial from ever taking place...." Christian, 394 A.2d at 38. The Double Jeopardy Clause provides "a guarantee against being twice put to trial for the same offense." Abney v. United States, 431 U.S. 651, 661, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (emphasis in original). It "assures an individual that ... he will not be forced ... to endure the personal strain, public embarrassment, and expense of a criminal trial more than once" for the same crime. Id. The essence of this right is lost when a defendant fails to timely assert a double jeopardy bar to retrial. See id. at 662, 97 S.Ct. 2034. | Double jeopardy provides a guarantee against being twice put to trial for the same offense. U.S.C.A. Const.Amend. 6. | Does Double jeopardy provide a guarantee against being twice put to trial for the same offense? | Double Jeopardy - Memo 648 - C - PC_68425.docx | ROSS-003296304-ROSS-003296305 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 15067 | Rosal v. First Fed. Bank of California, 671 F. Supp. 2d 1111 | 13+27(1) | Unjust enrichment is typically sought in connection with a "quasi-contractual" claim in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract. McBride, 123 Cal.App.4th at 388, 20 Cal.Rptr.3d 115. Under an unjust enrichment theory, restitution may be awarded either (1) in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective, or (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in tort. Id. Thus, a claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort. Id.; see also Paracor Fin. v. General Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir.1996). | Under California law, a claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort. | Is a claim for restitution inconsistent and incompatible with a related claim for breach of contract or a claim in tort? | Action - Memo 976 - C _1h5wS3LIYEaG2WbldloTu7jg7Skqmm2qy.docx | ROSS-000000076-ROSS-000000077 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 15068 | Sayan v. State, 381 So. 2d 363 | 135H+95.1 | Finally, we find no error by the trial court in failing to dismiss the case because there had been two previous mistrials which occurred when prior juries were discharged due to their inability to reach a verdict. After a mistrial, a case stands as if it had never been tried and the defendant is subject to being tried again on the same charge. Smith v. State, 135 Fla. 835, 186 So. 203 (1939); State v. Dowling, 91 Fla. 236, 107 So. 267 (1926). There is no claim here as to the propriety of the prior mistrials nor any claim of prejudice by reason thereof insofar as the appellant's ability to prepare for trial and defend the charges asserted. In the absence of such circumstances the appellant is not entitled to be discharged simply because he must undergo the ordeal of a third trial. | After mistrial, case stands as if it had never been tried, and defendant is subject to being tried again on same charge. | "After mistrial, does a case stand as if it had never been tried, and a defendant is subject to being tried again on the same charge?" | Double Jeopardy - Memo 567 - C - SK_68346.docx | ROSS-003311775 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 15069 | State Fire Marshall v. Lee, 101 Mich. App. 829 | 141E+924 | Church day school is subject to fire and safety regulations for schools. Christians must comply with fire and safety regulations which are applicable to all schools and which are applied equally to all schools. U.S.C.A.Const. Amend. 1. The safety of children is important to our government and equally important to Christians. The requirements for safety are there. They do not conflict with Christian principles. | Christians must comply with fire and safety regulations which are applicable to all schools and which are applied equally to all schools. U.S.C.A.Const. Amend. 1. | Should religious schools comply with fire and safety regulations applicable to schools? | 017167.docx | LEGALEASE-00166951-LEGALEASE-00166952 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15070 | In re CRIIMI MAE, 251 B.R. 796 | 349A+10 | The title of the Repo Agreement, "Master Repurchase Agreement," is an indication of the intent of the parties, however, it not dispositive. European Am. Bank v. Sackman Mortgage Corp. (In re Sackman Mortgage Corp.), 158 B.R. 926, 932 (Bankr.S.D.N.Y.1993) ("Labels cannot change the true nature of the underlying transactions."); Williams Press, Inc. v. State, 37 N.Y.2d 434, 440, 373 N.Y.S.2d 72, 335 N.E.2d 299, 302 (1975) (meaning of contract may be distorted where undue force is given to single words or phrases); Tougher Heating & Plumbing Co. v. State, 73 A.D.2d 732, 733, 423 N.Y.S.2d 289, 290"91 (1979) ("It is a fundamental principle that the intention of the parties must be gleaned from all corners of the document, rather than from sentences or clauses viewed in isolation") (internal citations omitted). The court must examine the substantive provisions of the contract. Thus, it is not the characterization contained within the contract but the effect of its terms which are relevant. | Under New York law, it is not the characterization contained within contract, but the effect of its terms, which is relevant in distinguishing pledge of securities from absolute conveyance of securities with promise to repurchase. | "Is it not the characterization contained within a contract, but the effect of its terms, which is relevant for a pledge of securities?" | Secured Transactions - Memo 110 - C - DHA_68626.docx | ROSS-003282407-ROSS-003282408 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 15071 | In re Otasco, 196 B.R. 554 | 349A+10 | Of course, in the present case, the lease term was a much shorter twelve months. In the event the lease was terminated after its primary term, the transaction would look little like a secured purchase. Nevertheless, this case demands close factual scrutiny, because "whether a particular lease is intended for security is to be determined by the facts of each case." In re Tulsa Port Warehouse Co., Inc., 4 B.R. at 805; 12A O.S. " 1"201(37)(b). To assist in such factual analysis, it is helpful to turn to the "clarified" 1988 version of 12A O.S. " 1"201(37). | Whether particular lease is intended for security is to be determined by facts of each case. 12A Okl.St.Ann. S 1-201(37)(b). | Is whether a particular lease is intended for a security to be determined by facts of each case? | 042711.docx | LEGALEASE-00166729-LEGALEASE-00166730 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 15072 | In re Greenville Auto Mall, 278 B.R. 414 | 349A+10 | Under the revised definition of "security interest," the primary focus is on the economic realities of the transaction rather than the intent of the parties. In Banterra Bank v. Subway Equipment Leasing Corporation (In re Taylor), 209 B.R. 482 (Bankr.S.D.Ill., 1997), the Illinois definition of "security interest" was applied by a bankruptcy court which found as follows:Under this approach, the lease will be construed as a security interest as a matter of law if the debtor cannot terminate the lease and one of the enumerated requirements [i.e., " 1"201(37)(b)(i), (ii), (iii), or (iv) ] is satisfied. | Under Illinois' revised definition of security interest, the primary focus is on the economic realities of the transaction rather than the intent of the parties. S.H.A. 810 ILCS 5/1-201(37). | "Is the focus on ""economic realities"" of a transaction?" | 042728.docx | LEGALEASE-00166747-LEGALEASE-00166748 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 15073 | In re Wiersma, 283 B.R. 294 | 349A+10 | Although not addressed by the parties, an issue exists as to whether O.H. Kruse was granted a security interest in Debtors' claim against Gietzen or instead received an absolute assignment of Debtors' interest in the claim. An absolute assignment effects a transfer of all an owner's interest in property. Haag v. Pollack, 122 Idaho 605, 836 P.2d 551, 556 (1992). In contrast, a security interest is an interest in personal property or fixtures which secures payment or performance of an obligation. Idaho Code " 28"1"201. While distinguishing between the two types of transactions is sometimes difficult, courts often look past the express language of the documents evidencing a transaction and treat purported assignments as security agreements to give effect to the true nature of a transaction. See Sarf v. Leff (In re Candy Lane Corp), 38 B.R. 571, 575"76 (Bankr.S.D.N.Y.1984). Courts differentiate between the two transactions by examining the substance of the documents in the context of the surrounding transaction. Id. at 576. | To differentiate between an absolute assignment and a security interest, Idaho courts examine substance of the relevant documents in context of the surrounding transaction. I.C. S 28-1-201. | When do courts examine substance of the relevant documents in context of the surrounding transaction? | Secured Transactions - Memo 93 - C - MS_68748.docx | ROSS-003279257-ROSS-003279258 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |
| 15074 | In re Edison Bros. Stores, 207 B.R. 801 | 349A+10 | If the lease agreement explicitly provides that the lessee has an option to purchase the leased goods for nominal consideration (e.g., for $1), the agreement is presumed to be a disguised security agreement. See Orix Credit Alliance, 946 F.2d at 1261; P.W.L. Invs., 92 B.R. at 683; Farrell, 79 B.R. at 303; Winston Mills, 6 B.R. at 597; BJL Leasing Corp. v. Whittington, Singer, Davis and Co., 204 N.J.Super. 314, 498 A.2d 1262, 1264"65 (App.Div.1985). On the other hand, if the lessee can exercise the option only by paying the fair market value of the property at the conclusion of the lease term, an inference is created that the option price is not nominal. See Celeryvale Transp., 822 F.2d at 18; The Answer"The Elegant Large Size Discounter, 115 B.R. at 468; Farrell, 79 B.R. at 303; Winston Mills, 6 B.R. at 597. "That inference, however, can be rebutted if the fair market value of the property is shown to be negligible." Farrell, 79 B.R. at 303. See Celeryvale Transp., 822 F.2d at 18; Beker Indus., 69 B.R. at 941; National Equip. Rental, 435 F.Supp. at 239; Winston Mills, 6 B.R. at 597 | Under New York law as it existed at time parties entered into equipment lease, it could be inferred that option price was not nominal, and that lease was true lease rather than disguised security agreement, if lease provided that lessee could acquire leased property only by paying its fair market value at conclusion of lease term. N.Y.McKinney's Uniform Commercial Code S 1-201(37) (1993). | "When deciding whether option price is ""nominal,"" should a court compare option price?" | 042886.docx | LEGALEASE-00167099-LEGALEASE-00167100 | Condensed, SA, Sub | 0.64 | 0 | 1 | 1 | 1 | 1 |
| 15075 | Johnston v. Nanney, 147 So. 2d 268 | 371+2974 | The law is settled that where property has been adjudicated to the State and has not been redeemed in the time and manner provided by law, the tax officers of the State are without authority to assess and sell the property as belonging to the former owner or any other person. It also is well established that public property is exempt from taxation, and that the unauthorized acts of assessors and tax collectors in assessing and collecting taxes on property which provioulsy has been adjudicated to the State for unpaid taxes, cannot bind the State and does not constitute a waiver of title by the State. See Boagni's Heirs v. Thornton, supra, and authorities therein cited. | Unauthorized acts of assessors and tax collectors in assessing and collecting taxes on property which previously has been adjudicated to state for unpaid taxes cannot bind state and does not constitute waiver of title by state. Act No. 47 of 1938; LSA-R.S. 47:2181, 47:2186. | Is a public property exempt from taxation? | Taxation - Memo 1292 - C - KAD_68506.docx | ROSS-003318845-ROSS-003318846 | Condensed, SA, Sub | 0.59 | 0 | 1 | 1 | 1 | 1 |
| 15076 | State ex rel. Wis. Univ. Bldg. Corp. v. Bareis, 257 Wis. 497 | 371+2311 | The problem presented to the board of review at its hearing on the confirmation of the assessment was as to the ownership of the particular property sought to be taxed. It has been ruled too often to permit doubting now that exemptions from taxation are acceptable when the property has been acquired and used by and for the benefit of the state. Taking property out from among the assessables and using it in a qualified and warranted service has the support of the doctrine that property owned by a state is exempt from taxation. There is authority for that policy long recognized in this state: "When public property is involved, exception is the rule and taxation the exception." 50 Am.Jur. p. 550, sec. 557; 2 Cooley on Taxation, 4th ed., pp. 1414-15, sec. 673. | Exemptions from taxation are acceptable when the property has been acquired and used by and for the benefit of the state. | Are the exemptions from taxation acceptable when the property has been acquired and used by and for the benefit of the state? | 046530.docx | LEGALEASE-00166512-LEGALEASE-00166513 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15077 | Hillsborough Inv. Co. v. City of Tampa, 149 Fla. 7 | 371+2016 | The sovereign power to levy a tax and the machinery for collection thereof cannot be transferred to private individuals, in the absence of a statute, but this power by law is vested in public officials. A taxing unit, in the absence of a statute, is without authority to assign its claim for taxes to a citizen and thereby subrogate the citizen to the collecting rights of the taxing unit. See In re Green River Jockey Club, D.C., 5 F.2d 259; Gibson v. Western & Southern L. Ins. Co., 161 Ky. 810, 171 S.W. 390, L.R.A.1915D, 697. | The sovereign power to levy a tax and the machinery for collection thereof cannot be transferred to private individuals in absence of statute, but is vested in public officials, and a taxing unit, in absence of statute, cannot assign its claim for taxes to a citizen, and thereby subrogate the citizen to the collecting rights of the taxing unit. | Can a taxing unit assign its claim for taxes to a citizen? | Taxation - Memo 1361 - C - SD_68648.docx | ROSS-003294707-ROSS-003294708 | Condensed, SA, Sub | 0.35 | 0 | 1 | 1 | 1 | 1 |
| 15078 | Mitchell v. Knox Cty. Fiscal Court, 165 Ky. 543 | 104+190.1 | The record does not show whether either of these levies is a part of the ordinarylevy of 50 cents for general purposes, or is the additional levy authorized by section 157a of the Constitution. If they are parts of the first-named levy, they are unquestionably valid. But since the record fails to show to which class the levies belong, we will assume they belong to thesecond class, and are additional levies under section 157a of the Constitution. When the power to tax is delegated to the fiscal court, the grant must be strictly construed, and beyond the grant, the fiscal court has no power to go. | Where the power to tax is delegated to the fiscal court, the grant must be strictly construed. | "Where the power to tax is delegated to the fiscal court, how is the grant construed?" | Taxation - Memo 1377 - C - SCG_68664.docx | ROSS-003293598-ROSS-003293599 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 15079 | Amoco Prod. Co. v. S. Ute Indian Tribe, 526 U.S. 865 | 260+2 | Land patents issued pursuant to the Coal Lands Acts of 1909 and 1910 conveyed to the patentee the land and everything in it, except the "coal," which was reserved to the United States. Coal Lands Act of 1909 (1909 Act), 35 Stat., 30 U.S.C. " 81; Coal Lands Act of 1910 (1910 Act), ch. 318, 36 Stat. 583, 30 U.S.C. "" 83-85. The United States Court of Appeals for the Tenth Circuit determined that the reservation of "coal" includes gas found within the coal formation, commonly referred to as coalbed methane gas (CBM gas). See 151 F.3d 1251, 1256 (1998) (en banc). We granted certiorari, 525 U.S. 1118, 119 S.Ct. 899, 142 L.Ed.2d 898 (1999), and now reverse. | "Coal," for purposes of Coal Land Acts of 1909 and 1910, providing that United States reserved coal in lands patented under Acts, does not include coalbed methane (CBM) gas. 30 U.S.C.A. SS 81, 83-85. | "Does the reservation of ""coal"" include gas found within the coal formation, commonly referred to as coalbed methane gas (CBM gas)?" | 021170.docx | LEGALEASE-00167336-LEGALEASE-00167337 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 15080 | Manchester v. City of Amesbury, 138 F. Supp. 3d 54 | 3.77E+11 | "The elements of threatening a crime include an expression of intention to inflict a crime on another and an ability to do so in circumstances that would justify apprehension on the part of the recipient of the threat." Commonwealth v. Hamilton, 459 Mass. 422, 945 N.E.2d 877, 881 (2011) (quoting Commonwealth v. Sholley, 432 Mass. 721, 739 N.E.2d 236, 240 (2000), cert. denied, 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 484 (2001)). "[T]he expression may contain an explicit or implicit threat." Felix F. v. Commonwealth, 471 Mass. 513, 31 N.E.3d 42, 46 (2015). "The assessment whether the [accused] made a threat is not confined to a technical analysis of the precise words uttered." Commonwealth v. Sholley, 432 Mass. 721, 739 N.E.2d 236, 240 (2000), cert. denied, 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 484 (2001). | Under Massachusetts law, the expression of intention to inflict a crime on another, as required to support conviction for threatening to commit a crime, may contain an explicit or implicit threat; the assessment whether the accused made a threat is not confined to a technical analysis of the precise words uttered. Mass. Gen. Laws Ann. ch. 275, S 2. | Does the expression of an intent to inflict a crime on another need to contain an explicit or implicit threat? | 046874.docx | LEGALEASE-00167377-LEGALEASE-00167378 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 15081 | Hughes v. Cornerstone Inspection Grp., 336 Ga. App. 283 | 21+1 | Nevertheless, in opposition to the motion to dismiss Hughes did challenge the validity and enforceability of the contract containing the provision that would bar his claim, and he presented affidavit evidence in support of his challenge. Contrary to the trial court's holding, Hughes properly presented the affidavit as evidence for the trial court's consideration when he filed it in support of his opposition to Cornerstone's motion to dismiss. Our Civil Practice Act and the Uniform Superior Court Rules make clear that affidavits are admissible forms of evidence that may be filed in opposition to motions. See, e.g., OCGA "" 9"11"6(d); 9"11"56(c); Unif. Super. Ct. R. 6.2. See also Bays v. River Oaks Constr., 244 Ga.App. 401, 402(1), 535 S.E.2d 543 (2000) (affidavit attached to defendant's supplemental brief in support of its motion to dismiss was evidence for court's consideration). | Affidavits are admissible forms of evidence that may be filed in opposition to motions. West's Ga.Code Ann. SS 9-11-6(d), 9-11-56(c); Uniform Superior Court Rule 6.2. | Can affidavits be considered as an admissible form of evidence? | 06068.docx | LEGALEASE-00077668-LEGALEASE-00077670 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 15082 | Gilbride v. Trunnelle, 620 N.W.2d 244 | 21+1 | Additionally, a professional statement "is a technique, used as a matter of convenience and practical necessity to establish a record of matters peculiarly within the knowledge of an attorney. In offering a professional statement an attorney pledges the honor of his profession and his personal integrity. It has the effect of an affidavit."Id. (quoting State v. Brewer, 247 N.W.2d 205, 212 (Iowa 1976)). Hudson's statement to the district court regarding the extent of his authority clearly concerned a matter within his knowledge. Because the statement had the status of an affidavit, the district court could properly consider it. See Wende, 530 N.W.2d at 95. | "Professional statement" is a technique, used as a matter of convenience and practical necessity to establish a record of matters peculiarly within the knowledge of an attorney. | Do professional statements have the effect of an affidavit? | 06592.docx | LEGALEASE-00077738-LEGALEASE-00077739 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 15083 | Dennis v. Coleman's Parking & Greasing Stations, 211 Minn. 597 | 50+1 | 4. True, to constitute a bailment, there must be delivery and acceptance of the bailed chattel. 8 C.J.S., Bailments, " 15, a, (1). But a bailment, like any other contract, may be established by express words, written or oral, or by implication from acts and general conduct. Here, over a period of four years, plaintiff had entrusted his automobile to defendant's care and custody, and defendant had accepted it at a standard price for the specific service to which defendant had invited the general public. In such circumstances, it is idle for defendant to assert that it leased a mere space to plaintiff on which to park his car. Cf. Kravitz v. Parking Service Co., Inc., 29 Ala.App. 523, 199 So. 727, certiorari denied 240 Ala. 467, 199 So. 731; 8 C.J.S., Bailments, " 15, b; Annotation, 34 A.L.R. 925, 926; also 131 A.L.R. 1175, et seq. | A "bailment", like any other contract, may be established by express words, written or oral, or by implication from acts and general conduct. | Can a contract for bailment be an oral agreement? | 06350.docx | LEGALEASE-00078385-LEGALEASE-00078386 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15084 | Weitz Co. v. Lexington Ins. Co., 982 F. Supp. 2d 975 | 366+1 | Subrogation is grounded on "principles of natural equity" and its purpose is to "prevent injustice." State, Dept. of Human Services ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 156 (Iowa 2001). Without the doctrine, a person who is secondarily liable would not have a cause of action against the unjustly enriched party. Id. "Thus, the rationale for subrogation is "bottomed on a sensitivity to the comparative equities involved." " Id. Equitable subrogation "will never be enforced, when doing so would be inequitable, or where it would work injustice to others having equal equities." Am. Sur. Co. of New York v. State Trust & Sav. Bank of Mt. Pleasant, 218 Iowa 1, 254 N.W. 338, 340 (1934). Importantly, one that is primarily liable for a debt cannot receive equitable subrogation. In re Hagen, 147 B.R. at 168. | Under Iowa law, equitable subrogation will never be enforced when doing so would be inequitable, or where it would work injustice to others having equal equities. | When would equitable subrogation not be enforced? | 07772.docx | LEGALEASE-00081892-LEGALEASE-00081893 | SA, Sub | 0.8 | 0 | 0 | 1 | 1 | |
| 15085 | Rivas v. Napolitano, 714 F.3d 1108 | 221+188 | Federal courts are generally without power to review the actions of consular officials. Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970, 971 (9th Cir.1986). However, at least two exceptions to this rule exist. First, a court has jurisdiction to review a consular official's actions "when [the] suit challenges the authority of the consul to take or fail to take an action as opposed to a decision within the consul's discretion." Patel v. Reno, 134 F.3d 929, 931"32 (9th Cir.1997). Second, the court has jurisdiction to review a consular official's actions when "a U.S. citizen's constitutional rights are alleged to have been violated by the denial of a visa to a foreigner" without a "facially legitimate and bona fide reason" for the denial. Bustamante v. Mukasey, 531 F.3d 1059, 1060 (9th Cir.2008). | Federal courts are generally without power to review the actions of consular officials. | Do federal courts have power to review the actions of consular officials? | 05046.docx | LEGALEASE-00083740-LEGALEASE-00083741 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 15086 | Ball v. Rao, 48 S.W.3d 332 | 307A+3 | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. Fort Worth Hotel Ltd. P'ship v. Enserch Corp., 977 S.W.2d 746, 757 (Tex.App."Fort Worth 1998, no pet.) The purpose of such a motion is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury. Weidner v. Sanchez, 14 S.W.3d 353, 363 (Tex.App."Houston [14th Dist.] 2000, no pet.); Enserch Corp., 977 S.W.2d at 757. The imposition of sanctions for violations of orders in limine is left to the sound discretion of the trial court and we, as an appellate court, will not reverse a trial court's sanctions absent a clear abuse of discretion. Lassiter v. Shavor, 824 S.W.2d 667, 669 (Tex.App."Dallas 1992, no writ). A sanction for violating a court order must, however, be appropriate to the circumstances of the case. Id. We must also keep in mind that repeated violations of limine orders may result in mistrials or reversals. Weidner, 14 S.W.3d at 363. | Repeated violations of limine orders may result in mistrials or reversals. | May repeated violations of limine orders result in mistrials or reversals? | 06548.docx | LEGALEASE-00085044-LEGALEASE-00085045 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 15087 | May v. May, 214 W. Va. 394 | 134+797 | Finally, once a professional practice has been determined to possess distributable goodwill, a value must be placed thereon. "[T]here are a variety of acceptable methods of valuing the goodwill of a professional practice, and no single method is to be preferred as a matter of law." McDiarmid v. McDiarmid, 649 A.2d 810, 815 (D.C.App.1994). Accord Russell v. Russell, 11 Va.App. 411, 399 S.E.2d 166, 169 (1990) ( " [T]here are a number of acceptable methods of computing the goodwill value of a professional practice, and ... no single method is to be preferred as a matter of law."). The Court in In re Marriage of Hall, 103 Wash.2d 236, 692 P.2d 175, 179 (1984), pointed out that "[i]n valuing goodwill five major formulas have been articulated." Hall discussed the valuation methods as follows:Under the straight capitalization accounting method the average net profits of the practitioner are determined and this figure is capitalized at a definite rate, as, for example, 20 percent. This result is considered to be the total value of the business including both tangible and intangible assets. To determine the value of goodwill the book value of the business' assets are subtracted from the total value figure. The second accounting formula is the capitalization of excess earnings method. Under the pure capitalization of excess earnings the average net income is determined. From this figure an annual salary of average employee practitioner with like experience is subtracted. The remaining amount is multiplied by a fixed capitalization rate to determine the goodwill. The IRS variation of capitalized excess earnings method takes the average net income of the business for the last 5 years and subtracts a reasonable rate of return based on the business' average net tangible assets. From this amount a comparable net salary is subtracted. Finally, this remaining amount is capitalized at a definite rate. The resulting amount is goodwill. The fourth method, the market value approach, sets | There are a variety of acceptable methods of valuing the goodwill of a professional practice for purposes of equitable distribution, and no single method is to be preferred as a matter of law. | Is there a single acceptable method of valuing goodwill? | 07085.docx | LEGALEASE-00089115-LEGALEASE-00089117 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 15088 | Traders & Gen. Ins. Co. v. Turner, 149 S.W.2d 593 | 413+8 | If we properly understand appellant's contention presented under this group of propositions, it is to the effect that it is unjust and unfair to it to have the rate based upon the average daily wage rate of the injured employee as of the time of the accident, but that the weekly rate should be computed by dividing the total amount received in wages during the preceding year by 52 and award him compensation on a basis of 60% of the result so obtained. We do not so understand the many holdings of the courts. We have been cited to no case of such import. It has many times been held that our Workmen's Compensation Act is not intended to compensate an injured employee merely for the loss of earnings, but for loss of earning capacity, at a wage rate based on his capacity to earn when employed on a full time basis. Texas Employers Insurance Ass'n v. Clack, 134 Tex. 151, 132 S.W.2d 399; Maryland Casualty Co. v. Drummond, Tex.Civ.App., 114 S.W.2d 356, writ refused; Traders & General Ins. Co. v. O'Quinn, Tex.Civ.App., 111 S.W.2d 859, writ refused. | The Workmen's Compensation Act is not intended to compensate employee merely for loss of earnings, but for loss of earning capacity, at a wage rate based on his capacity to earn when employed full time. Vernon's Ann.Civ.St. art. 8309, S 1, 1st subds. 1-3, 5. | What do workers compensation benefits pay or compensate for? | 01715.docx | LEGALEASE-00092044-LEGALEASE-00092045 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15089 | Mangiafico v. St., 767 So. 2d 1103 | 307A+563 | It is well established that a trial court must be vested with the authority "to manage its affairs in order to achieve the orderly and expeditious disposition of cases." Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala.1989). Further, it is not an abuse of discretion for a trial court to hold the parties to the terms of its order. Eastern Dredging & Constr., Inc. v. Parliament House L.L.C., 698 So.2d 102, 104 (Ala.1997). The trial court gave Mangiafico specific notice that arbitration was to be initiated within 30 days. Twenty-two days later, Mangiafico moved to extend the time for initiating arbitration. The trial court did not rule on the motion before the expiration of the 30"day period. Mangiafico failed to initiate arbitration, despite the clear language in the trial court's order indicating that the case would be dismissed if arbitration proceedings were not begun within 30 days. Because Mangiafico did not commence arbitration as ordered by the terms of the July 23, 1998, order, the trial court, acting within its discretion and authority to manage the cases before the court, properly dismissed the case. | It is not an abuse of discretion for a trial court to hold the parties to the terms of its order. (Per Brown, J., with three Justices concuring and two Justices concurring in the result.) | Is it not an abuse of discretion for a trial court to hold the parties to the terms of its order? | 10825.docx | LEGALEASE-00094103-LEGALEASE-00094104 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 15090 | Graves v. State Bd. of Pharmacy, 188 Kan. 194 | 307A+552 | Inasmuch as the question in issue was moot, the trial court had no authority to enter any judgment other than a dismissal of the action. The judgment of the trial court is affirmed. | Trial court had no authority to enter any judgment other than dismissal of action which had become moot. | "Does the court have the authority to enter any judgment other than dismissal of an action, which had become moot?" | Pretrial Procedure - Memo # 7831 - C - KG.docx | ROSS-003327220-ROSS-003327221 | Condensed, Order, SA, Sub | 0.43 | 1 | 1 | 1 | 1 | 1 |
| 15091 | People v. Jordan, 15 Ill. App. 3d 672 | 63+1(1) | This statute clearly indicates that a person's receipt of property is not alone enough to sustain a bribery conviction. Receipt of such property must not be legally authorized and such property must be accepted "knowing that such property was tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer, public employee or juror." In the case cited by the State, People v. Gralewski, 132 Ill.App.2d 755, 270 N.E.2d 566, the evidence was clear that the defendant solicited and accepted a remuneration in order to keep a witness from testifying. In the instant case, no evidence was produced at trial regarding any criminal purpose or intent on the part of defendant nor was there any evidence that defendant summoned that particular ambulance as alleged in the indictment. In these circumstances the most that can be said is that defendant may have accepted a gratuity. However, the acceptance of a gratuity without more will not sustain a conviction for bribery. | A person's receipt of property is not alone enough to sustain a bribery conviction. S.H.A. ch. 38, S 33-1(d). | Is a person's receipt of property alone enough to sustain a bribery conviction? | 10788.docx | LEGALEASE-00094842-LEGALEASE-00094843 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |
| 15092 | Samuels v. King Motor Co. of Fort Lauderdale, 782 So. 2d 489 | 307A+563 | King Motor also contends that the Plaintiffs complaint should be dismissed under Florida Rule of Civil Procedure 1.420 (b) because the Plaintiffs failed to amend their complaint to state a cause of action after the trial court dismissed prior complaints for failure to state claims and granted them leave to amend. Florida Rule of Civil Procedure 1.420 (b) provides, "Any party may move for dismissal of an action or of any claim against that party for failure of an adverse party to comply with these rules or any order of court." Dismissing a complaint as a sanction under Rule 1.420 (b) for failure to comply with orders of the court to amend a complaint to state a cause of action is generally unnecessary, as dismissal is always available where the complaint does not state a cause of action. See Cummings, 648 So.2d at 1232. Notwithstanding that, dismissal as a sanction under Rule 1.420 (b) is erroneous where the trial court fails to make an express written finding of a party willful refusal to obey the court order or contumacious disregard of the court's order. See id. | Dismissing a complaint as a sanction under rule pertaining to involuntary dismissal of action for failure to comply with orders of the court to amend a complaint to state a cause of action is generally unnecessary, as dismissal is always available where the complaint does not state a cause of action. West's F.S.A. RCP Rule 1.420(b). | Can action be subject to involuntary dismissal for failure to comply with any rule or order of court? | 09479.docx | LEGALEASE-00096112-LEGALEASE-00096113 | Condensed, Order, SA, Sub | 0.69 | 1 | 1 | 1 | 1 | 1 |
| 15093 | Collins v. Bartlett Park Dist., 2013 IL App (2d) 130006 | 307A+683 | Defendant next argues that the retaliatory discharge claim must be dismissed under section 2"619(a)(9) of the Code because (1) plaintiff did not have an objective, good-faith belief that the chair lift violated the law and (2) sections 2"201 and 2"109 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2"201, 2"109 (West 2012)) immunizes defendant from liability for the termination. Section 2"619(a)(9) provides that an action may be dismissed when "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2"619(a)(9) (West 2012). A ruling on a section 2"619 motion must " "interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." " Van Meter v. Darien Park District, 207 Ill.2d 359, 367"68, 278 Ill.Dec. 555, 799 N.E.2d 273 (2003) (quoting In re Chicago Flood Litigation, 176 Ill.2d 179, 189, 223 Ill.Dec. 532, 680 N.E.2d 265 (1997)). However, conclusions of law or fact unsupported by specific factual allegations are not to be taken as true. Buckner v. O'Brien, 287 Ill.App.3d 173, 176, 222 Ill.Dec. 564, 677 N.E.2d 1363 (1997), aff'd, 182 Ill.2d 12, 230 Ill.Dec. 596, 694 N.E.2d 565 (1998). | A ruling on a motion to dismiss must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party, but conclusions of law or fact unsupported by specific factual allegations are not to be taken as true. S.H.A. 735 ILCS 5/2-619. | When will all pleadings and supporting documents be interpreted most favourable to the non-moving party? | 09758.docx | LEGALEASE-00096407-LEGALEASE-00096409 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 15094 | English v. Bd. of Sch. Comm'rs of Mobile Cty., 83 F. Supp. 3d 1271 | 78+1119 | "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." Id. "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the work place." Id. "Indeed, Title VII was not designed to make federal courts second-guess the business judgment of employers" Id. "And because work assignment claims strike at the very heart of an employer's business judgment and expertise, absent unusual circumstances, they typically do not constitute adverse employment actions." Id. | Title VII was not designed to make federal courts second-guess the business judgment of employers, and because work assignment claims strike at the very heart of an employer's business judgment and expertise, absent unusual circumstances, they typically do not constitute adverse employment actions supporting a discrimination claim. Civil Rights Act of 1964, S 703(a)(1), 42 U.S.C.A. S 2000e-2(a)(1). | Do federal courts second-guess the business judgment of employers? | 000802.docx | LEGALEASE-00117779-LEGALEASE-00117780 | Condensed, SA | 0.28 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15095 | Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638 | 366+1 | The doctrine of equitable subrogation is not created by a contract, but by the legal consequences of the acts and relationships of the parties. See Dantzler Lumber & Export Co. v. Columbia Cas. Co., 115 Fla. 541, 551, 156 So. 116, 120 (1934). Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. See Fowler v. Lee, 106 Fla. 712, 714"15, 143 So. 613, 614 (1932); Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan Ass'n, 508 So.2d 1323, 1324"25 (Fla. 3d DCA 1987). As a result of equitable subrogation, the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the right and priorities of the original creditor. See Eastern Nat'l Bank, 508 So.2d at 1324. | Doctrine of equitable subrogation is not created by a contract, but by the legal consequences of the acts and relationships of the parties. | Does legal or equitable subrogation arise from the legal consequences of the acts of the parties? | 044425.docx | LEGALEASE-00125311-LEGALEASE-00125312 | Condensed, SA | 0.86 | 0 | 1 | 0 | 1 | |
| 15096 | Bishop Baking Co. v. Forgey, 538 S.W.2d 602 | 413+51 | The calendar of this Court is clogged with workmen's compensation cases. In many instances the appeals are wholly frivolous. In others the claims are frivolous and reach this level of review because they are improvidently decided in the lower court. In is true that the Workmen's Compensation Law is to be liberally construed in order to accomplish its intended purposes. but, it is not a social welfare statute, Smith v. Tennessee Furniture Industries, 212 Tenn. 291, 369 S.W.2d 721 (1963), nor may the sympathies of the Court control its determination. Hughes v. Globe Co., 224 Tenn. 208, 452 S.W.2d 859 (1970). | Workmen's compensation law is to be liberally construed in order to accomplish its intended purposes, but, it is not a social welfare statute, and the sympathies of the court may not control its determination. | Is the Workers Compensation Act a social welfare statute? | 048503.docx | LEGALEASE-00127495-LEGALEASE-00127496 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 15097 | Jindra v. Diederich Flooring, 181 Wis. 2d 579 | 366+41(6) | The burden of proof in subrogation cases involves two questions. When a party requests subrogation, that party has the burden of proving its right to subrogation. That involves showing (a) that there is some basis for asserting subrogation, and, (b) that subrogation should be allowed in those circumstances. The same rule and burden of proof apply when a party seeks to impose subrogation.[The party seeking to impose subrogation has the burden of showing both (a) that there would be some basis for asserting subrogation in that instance, and, (b) that subrogation must be applied in equity in those circumstances. In practice, since subrogation is an equitable doctrine favored by the courts, the burden of proof is more easily satisfied when requesting subrogation than it would be when imposing subrogation. | Party requesting subrogation has burden of proving that there is some basis for asserting subrogation, and that subrogation should be allowed in those circumstances. (Per Day, J., with two Justices concurring and two Justices concurring in result.) | Does the party requesting subrogation have burden of proving that there is some basis for asserting subrogation? | 043492.docx | LEGALEASE-00127608-LEGALEASE-00127609 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 15098 | Jennings v. High Farms Corp., 35 Misc. 2d 80 | 13+65 | An action for damages for interference with peaceable possession is an action at law (Fults v. Munro, 202 N.Y. 34, 40, 95 N.E. 23, 37 L.R.A., N.S., 600). The instant complaint contains no action for equitable relief, nor do the plaintiffs seek a judgment for a permanent injunction, nor would they be entitled to a permanent injunction. Insofar as the application may be deemed to be made pursuant to section 878, subd. 1, Civil Practice Act, the motion must be denied. (See Reynolds v. Webber, 160 N.Y.S. 177). As stated in Fults v. Munro, supra, 202 N.Y. at p. 40, 95 N.E. at p. 25: "As this is an action at law, the right to judgment depends on the facts as they stood when it was commenced, instead of, according to the rule in equity, as they stood at the date of the trial" (emphasis supplied). What the defendants may or may not do after the service of the summons would not in any way tend to render ineffectual the judgment for damages (See Babho Realty Co., Inc. v. Feffer, 230 App.Div. 866, 245 N.Y.S. 118; Riessen v. Kaye, 4 Misc.2d 371, 374, 156 N.Y.S.2d 9, 12). | In action for interference with peaceable possession, right to judgment depends on facts as they stood when action was commenced, and not as they stand at date of trial and what defendants may or may not do after service of summons will in no way tend to render ineffectual the judgment for damages. | " In an action at law, does the right to judgment depend on facts as they stood when the action was commenced?" | 006111.docx | LEGALEASE-00128195-LEGALEASE-00128196 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 15099 | Heisler v. Hines Motor Co., 282 Mont. 270 | 307A+743 | The State Fund presents no relevant authority to support its argument that this Court's review of the facts presented in the trial court must be limited to the uncontested facts in a pretrial order. A pretrial order serves to "prevent surprise, simplify the issues, and permit counsel to prepare their case for trial on the basis of the pretrial order." King v. Zimmerman (1994), 266 Mont. 54, 66, 878 P.2d 895, 903 (citing Zimmerman v. Robertson (1993), 259 Mont. 105, 111, 854 P.2d 338, 342). It lists such facts as are uncontested, and if a party admits to a fact by allowing its inclusion as uncontested in a pretrial order, the party will not be allowed to raise that particular factual issue on appeal. Whitehawk v. Clark (1989), 238 Mont. 14, 19, 776 P.2d 484, 487 (citing Morse v. Cremer (1982), 200 Mont. 71, 647 P.2d 358). The pretrial order, however, includes only such facts as are uncontested; it does not preclude a party from attempting to prove additional facts which remain in dispute. Nor does the pretrial order in and of itself limit the scope of this Court's review. On appeal, this Court may consider any evidence which is part of the record, Johnson, 894 P.2d at 273, even if it was not included in a pretrial order. Accordingly, if the depositions in question will facilitate our review we will consider them, just as we are free to consider the entirety of the record presented on appeal. | Pretrial order serves to prevent surprise, simplify the issues, and permit counsel to prepare their case for trial. | Does a pretrial order prevent surprise? | 026402.docx | LEGALEASE-00130124-LEGALEASE-00130126 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |
| 15100 | Reese v. Mayer, 198 Neb. 499 | 48A+171(4.1) | When two vehicles approach an intersection at approximately the same time, the vehicle on the right has the right to proceed in a lawful manner in preference to the vehicle on the left. In other words, the vehicle on the right has the right to the immediate use of the intersection, and it is this use of the roadway that the vehicle on the left is required to yield to the vehicle on the right. | When two vehicles approach intersection at approximately the same time, vehicle on right has right to proceed in lawful manner in preference to vehicle on left; vehicle on right has right to immediate use of intersection, and it is this use of roadway that vehicle on left is required to yield to vehicle on right; right-of-way which vehicle on left is required to yield to vehicle on right is qualified, and driver on right must exercise due care, may not proceed in disregard of surrounding circumstances, and where necessary to avoid collision may be required to yield right-of-way. | Does the driver of motor vehicle approaching from the right have a right of way? | Highways -Memo 91 - GP.docx | ROSS-003291615-ROSS-003291616 | Condensed, SA | 0.32 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15101 | Scullin v. Cameron, 518 So. 2d 695 | 30+3239 | In this jurisdiction, it has been "often held that continuances are not favored and that a trial court's denial of a motion for continuance will be upset only when a palpable or gross abuse of discretion has been shown." Johnson Publishing Co. v. Davis, 271 Ala. 474, 496, 124 So.2d 441, 459 (1960). This statement conforms to the general rule as stated in 5A C.J.S. Appeal & Error " 1583 at 24, and quoted with approval in Steele v. Gill, 283 Ala. 364, 368, 217 So.2d 75, 79 (1968): " "As a general rule, an appellate court will not review the action or rulings of the trial court with reference to matters resting in the latter's judicial discretion, unless such discretion has been clearly and prejudicially abused." " The Court in Steele added at 283 Ala. 369, 217 So.2d 80: "Plaintiff cites 5A C.J.S. Appeal & Error " 1583 p. 35. | Continuances are not favored, and trial court's denial of motion for continuance will be upset on appeal only when a palpable or gross abuse of discretion has been shown. | "Can a trial court deny plaintiff's motion for continuance of trial, as plaintiff had been notified of trial date before?" | 032140.docx | LEGALEASE-00142714-LEGALEASE-00142715 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 15102 | Madera Production Co. v. Atlantic Richfield Co., 107 S.W.3d 652 | 401+5.1 | An action seeking royalty and overriding royalty in minerals is considered a suit on real property interests for the purpose of fixing venue in suits for recovery of such interests or damages thereto. Parker v. Petro"Lewis Corp., 663 S.W.2d 905 (Tex.App.-San Antonio 1983, no writ). A suit seeking net profits interest based on ownership of land is also an interest in land. T"Vestco Litt"Vada v. Lu"Cal One Oil Co., 651 S.W.2d 284, 292 (Tex.App.-Austin 1983, writ ref'd n.r.e.). A suit over the ownership of proceeds from mineral interests must be filed in the county in which the real property is located even though the cause of action is for a declaratory judgment over monies. Hill v. Enerlex, Inc., 969 S.W.2d 120 (Tex.App.-Eastland 1998). An option to purchase land creates an interest in land. Hitchcock Props. v. Levering, 776 S.W.2d 236, 238"39 (Tex.App.-Houston [1st Dist.] 1976); see generally 1 Arthur Linton Corbin, Corbin on Contracts " 272 (1950) (discussing how options to purchase land create an interest in land). | Suit seeking net profits interest based on ownership of land is considered action on real property interest, meaning the suit must be filed where the property is located. V.T.C.A., Civil Practice & Remedies Code S 15.011. | Is a suit seeking net profits interest based on ownership of land an interest in land? | Venue - Memo 93 - JS.docx | ROSS-003318493-ROSS-003318494 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 15103 | Meier v. Senecaut, 641 N.W.2d 532 | 313+63 | Thus, consistent with our interpretation under the former rule, rule 49(f) requires dismissal of a petition for the unjustified delay in service of process beyond ninety days, and provides for the filing of a motion to dismiss the petition. See Carroll v. Martir, 610 N.W.2d 850, 856 (Iowa 2000) (rule 49 interpreted as requiring dismissal for abusive delay). However, we think the new rule simplifies the procedure for courts to follow when confronted with a motion to dismiss for delay in service of process filed by a defendant who has been served more than ninety days after the petition was filed or beyond any extension. Under the prior rule, a two-step analysis was employed. See id. at 857. If there had been a delay in service, the court was first required to decide if the delay was presumptively abusive. Id. | Motorist failed to present substantial evidence of good cause for failing to serve petition on driver within 90 days of filing petition or to take affirmative action to obtain extension or directions from court when service could not be accomplished; although there was confusion as to whether driver or his grandfather was proper defendant, motorist failed to justify her inability to accomplish service of process after confusion was clarified and she obtained correct address for driver, and it was not enough to merely attempt service at driver's residence during times when working residents would have been expected to be at work. Rules Civ.Proc., Rule 49 (2001). | "When there is no service within ninety days after filing of the petition and no order extending the time for service, is the delay presumptively abusive?" | 034424.docx | LEGALEASE-00143647-LEGALEASE-00143648 | Condensed, SA, Sub | 0.18 | 0 | 1 | 1 | 1 | 1 |
| 15104 | Brown v. Kidney & Hypertension Assocs., L.L.P., 5 So. 3d 258 | 307A+590.1 | Any formal discovery in a case is considered a step in the prosecution, whether or not filed in the record, provided it has been served on all parties. Brister v. Manville Forest Products, 32,386, p. 4 (La.App. 2 Cir. 12/15/99), 749 So.2d 881, 884. This requirement of service is in keeping with the concept of notice, which the supreme court recently explained is intended to ensure notice to the defendant of actions taken that interrupt abandonment; otherwise, actions interrupting abandonment could occur without opposing parties formally learning of them for months or years, to their possible prejudice. Paternostro v. Falgoust, 2003"2214, pp. 6"7 (La.App. 1 Cir. 9/17/04), 897 So.2d 19, 23, writ denied, 2004"2524 (La.12/17/04), 888 So.2d 870 (citing Clark v. State Farm Mutual Automobile Insurance Company, 2000"3010 at p. 17, 785 So.2d at 790). However, if a party has properly mailed a discovery request to another party, the failure to file a certificate of service in the record does not render the service ineffective; such service still constitutes a step in the prosecution and averts a dismissal for abandonment. See Brister v. Manville Forest Products, 32,386 at p. 4, 749 So.2d at 884. | Any formal discovery is a "step" in the prosecution that can preclude dismissal for abandonment, whether or not filed in the record, provided it has been served on all parties. LSA-C.C.P. art. 561. | Is any formal discovery in a case considered a step in the prosecution? | 036094.docx | LEGALEASE-00148111-LEGALEASE-00148112 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 15105 | Marin Cty. v. Superior Court of Marin Cty., 53 Cal. 2d 633 | 200+80 | It is fundamental that all roads committed to the care of a county belong, ultimately, to all the people of the state. | All roads committed to care of a county belong, ultimately, to all people of state. | Do all roads committed to care of a county belong ultimately to all people of the state? | Highways -Memo 254-DB_57969.docx | ROSS-003294906 | Condensed, SA | 0.3 | 0 | 1 | 0 | 1 | |
| 15106 | Bright v. Frank Russell Investments, 191 Wash. App. 73 | 302+20 | We also note that Bright raised two legal theories for why her discharge was discriminatory and prevailed on only one. But "[l]itigants in good faith may raise alternative legal grounds for a desired outcome." The legal theories were sufficiently related to justify the award. | Litigants in good faith may raise alternative legal grounds for a desired outcome. | Can litigants in good faith raise alternative legal grounds for a design? | 023620.docx | LEGALEASE-00149027-LEGALEASE-00149028 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 15107 | Pac. Gas & Elec. Co. v. United States, 3 Cl. Ct. 329 | 393+622 | The Government is not estopped to deny the existence of a contract because it has accepted benefits. Acceptance or receipt of benefits is not sufficient to create a contract that binds the United States in the absence of affirmative authorization. This court is not authorized to imply a contract-at-law on an equitable ground that benefit was conferred. | Acceptance or receipt of benefits is not sufficient to create a contract that binds United States in absence of affirmative authorization. | Can the Forest Service personnel contractually bind United States without proper legal authority? | 047561.docx | LEGALEASE-00151244-LEGALEASE-00151245 | Condensed, SA | 0.61 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15108 | Vetri v. Johnston, 112 N.Y.S.2d 822 | 83E+469 | An examination of the respective causes of action in the light of the foregoing shows the existence of an implied contract of indemnification *824 on the part of the defendant to reimburse the plaintiff's assignor for any damage sustained by him as a result of his acting as an accommodation indorser for the defendant's benefit. Stern's Law of Suretyship, 5th ed., section 11.37, p. 513. As between the party accommodated (defendant) and the accommodation party, whatever may be the obligations which the latter assumes toward third persons, the relations are those of principal and surety and the right to recover against the party accommodated is that of a surety against the principal debtor. Where the accommodation party has been compelled to pay the instrument, the party accommodated becomes, in consequence of the implied contract of indemnification, a debtor to the accommodation party and the latter has a right of action against the former. Blanchard v. Blanchard, 201 N.Y. 134, 94 N.E. 630, 37 L.R.A.,N.S., 783. The alleged failure of the plaintiff to plead that the payment by his assignor was involuntary is of no consequence. A payment is deemed in law to be compulsory or involuntary when the party making it cannot legally resist such payment. Blanchard v. Blanchard, supra. The plaintiff's assignor as the payor of the notes is the only one who has sustained any damage. The maker of the note has not sustained any damage or made any payment which would create a cause of action in its favor. Nor is it a necessary party within the purview of sections 193 and 194 of the Civil Practice Act. | Maker of notes was not "necessary party" to action by assignee of accommodation indorser against payee for whom notes were endorsed, for damages sustained when accommodation indorser was compelled to pay notes to purchaser of value after maker and payee failed to meet their obligations. Civil Practice Act, SS 193, 194. | Is the maker of a note a necessary party ? | 010704.docx | LEGALEASE-00152598-LEGALEASE-00152599 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 15109 | City of Madera v. Black, 181 Cal. 306 | 371+2001 | A "tax," in the general sense of the word, includes every charge upon persons or property, imposed by or under the authority of the Legislature, for public purposes. Perry v. Washburn, 20 Cal. 350; People v. McCreery, 34 Cal. 454. The word "impost," in its broader sense, means "any tax or tribute imposed by authority, and applies as well to a tax on persons as to a tax on merchandise." Smith v. Turner (Passenger Cases) 48 U. S. (7 How.) at page 407, 12 L. Ed. 702. A "toll" is a "sum of money for the use of something, generally applied to the consideration which is paid for the use of a road, bridge, or the like, of a public nature." Bouvier's Dictionary, tit. Toll. | The word "impost," in its broader sense, means any tax or tribute imposed by authority, and applies as well to a tax on persons as a tax on property. | What does the word impost mean for the purpose of tax? | Taxation - Memo # 917 - C - JL_60621.docx | ROSS-003296562-ROSS-003296563 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 15110 | Thornton v. Crowther, 24 Mo. 164 | 83E+481 | There is no error in this record. Although the legal ownership of the note was not transferred--the assignment being on a separate paper and not on a note, as required by the statute--yet the beneficial ownership passed, and the assignee became the real party in interest, and entitled as such to sue upon the note in his own name. | An assignment of a promissory note, written on a separate paper, although not transferring the legal ownership, transfers the beneficial ownership in the note, so as to enable the assignee to sue on it in his own name. | Is an assignee of a note entitled to sue in his own name? | Bills and Notes - Memo 950 - RK_60809.docx | ROSS-003295387 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 15111 | Nazworth v. Swire Florida, 486 So. 2d 637 | 308+1 | The standard for determining whether an agent is an independent contractor is the degree of control exercised by the employer or owner over the agent. DeBolt v. Department of Health and Rehabilitative Services, 427 So.2d 221 (Fla. 1st DCA 1983); Restatement, supra, Section 250. More particularly, it is the right of control, and not actual control, which determines the relationship between the parties. Adams v. Department of Labor and Employment Security, 458 So.2d 1161 (Fla. 1st DCA 1984); LaGrande v. B & L Services, Inc., supra. | It is the right of control, and not the actual control an employer or owner has over an agent, which determines the agency relationship between the parties. | Is it the actual control by the employer over the agent that determine the relationship between the parties? | 041914.docx | LEGALEASE-00157470-LEGALEASE-00157471 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 15112 | Flacke v. Town of Fine, 113 Misc. 2d 56 | 411+8 | The Court of Appeals in MacDonald read this language as permitting "necessary" activities in the forest preserve such as "measures to prevent forest fires, the repairs to roads and proper inspection, or the erection and maintenance of proper facilities for the use by the public which did not call for the removal of the timber to any material degree." Id., 253 N.Y. at 238, 170 N.E. 902. The use and preservation of the forest preserve is subject to the reasonable regulations of the Legislature within strictly restricted constitutional bounds. Id. at 239, 170 N.E. 902; Helms v. Reid, 90 Misc.2d 583, at 593, 394 N.Y.S.2d 987, at 996. Clearly, an unsubstantial cutting of timber which is necessary to the safe enjoyment of the forest preserve is permissible. Moreover, MacDonald establishes that such cutting as is necessary must be regulated in such a way as to protect the wild character of the forest preserve to as great an extent as is possible. | Use and preservation of forest preserve is subject to reasonable regulations of Legislature within strictly restricted constitutional bounds. Const.Art. 14, S 1. | Are Forest Preserve District (FPD) creations of the legislature and should the statutes granting power to them be strictly construed? | 047610.docx | LEGALEASE-00159640-LEGALEASE-00159641 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 15113 | United States v. Gonzalez, 76 F.3d 1339 | 135H+25 | In Gonzalez's case, the civil forfeiture proceeding was settled by a consent judgment. We first must consider whether the consent judgment in the forfeiture proceeding was an adjudication for double jeopardy purposes. The Sixth Circuit has held that jeopardy attaches when a judgment of forfeiture is entered pursuant to a settlement. United States v. Ursery, 59 F.3d 568, 571 (6th Cir.1995). The Sixth Circuit held that Ursery's consent judgment in his civil forfeiture action was "analogous to a guilty plea entered pursuant to a plea agreement in a criminal case." Id. at 571 (citing, inter alia, United States v. Kim, 884 F.2d 189, 191 (5th Cir.1989); Fransaw v. Lynaugh, 810 F.2d 518, 523 & n. 9 (5th Cir.), cert. denied, 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987)). "[T]he fact that there has been no trial in a civil forfeiture proceeding does not preclude the attachment of jeopardy to a forfeiture judgment," because "[j]eopardy attaches in a nontrial forfeiture proceeding when the court accepts the stipulation of forfeiture and enters the judgment of forfeiture." Id. at 572. The defendant must be a party to the forfeiture proceeding for jeopardy to attach. | Defendant must be party to civil forfeiture proceeding for double jeopardy to attach. U.S.C.A. Const.Amend. 5. | Should a defendant be a party to civil forfeiture proceeding for double jeopardy to attach? | 015750.docx | LEGALEASE-00160721-LEGALEASE-00160722 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 15114 | Shindler v. Marr & Associates, 695 S.W.2d 699 | 289+1110 | Strict compliance with the applicable statutes is not required for the formation of a limited partnership. Article 6132a, sec. 3(b) provides, "a limited partnership is formed if there is substantial compliance in good faith with the requirements ..." | Strict compliance with applicable statutes is not required for formation of a limited partnership. Vernon's Ann.Texas Civ.St. art. 6132a, S 3(b). | QuestionIs strict compliance with the applicable statues required for the formation of a limited partnership? | 022665.docx | LEGALEASE-00161309-LEGALEASE-00161310 | Condensed, SA, Sub | 0.42 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15115 | Thorp, Smith & Hanchett v. Craig, 10 Iowa 461 | 83E+675 | It is urged by the appellant that the evidence did not justify the instructions of the court to the jury, and under this objection there are several questions presented which demand the consideration of this court. It is claimed by the appellant that said bills were not duly presented for payment upon the day on which they became due. The bills were drawn in Iowa, where the law merchant, which allows three days of grace, was in force, and were made payable in the State of New York, where the law provides, "that all checks, bills of exchange, or drafts, appearing upon their face to have been drawn upon any bank, which are on their face payable on any specified day, or in any number of days after the date or sight thereof, shall be deemed due and payable on the day mentioned for the payment of the same, without any days of grace being allowed, and it shall not be necessary to protest the same for non-acceptance." By the law of New York the appellant was not entitled to any days of grace, and the holder thereof had a right to demand payment thereon on the day they became due. The question then follows which law shall govern; that of the place where the contract was made, or that of the place of payment. Without referring to the many cases in which this question has been decided, and to the various treatises upon bills of exchange in which this subject is fully considered, we conclude that "it is well settled that the law of the place where a draft is made payable is to govern in respect to the allowance of days of grace upon a bill of exchange, or check drawn in one state upon another." Edwards on Bills, 522. If this rule is to apply, the bills sued upon were presented at the proper time. | The law of the place where a bill of exchange is payable governs as to the allowance of days of grace. | Which law governs the allowance of days of grace upon a bill of exchange? | 009235.docx | LEGALEASE-00162783-LEGALEASE-00162784 | Condensed, SA, Sub | 0.94 | 0 | 1 | 1 | 1 | 1 |
| 15116 | Dobbs v. Shelby Cty. Econ. & Indus. Dev. Auth., 749 So. 2d 425 | 371+2016 | Moreover, a public corporation is not the alter ego or agent of the county or the municipality in which it is organized. Id. Accordingly, the legislature is prohibited from delegating the power to levy taxes to a PIA, such as SCEIDA, IDBB, or IDBT. Opinion of the Justices, No. 175, and Schultes, supra. | Legislature is prohibited from delegating the power to levy taxes to a public industrial authority (PIA). Const. Art. 1, S 23; Art. 11, S 212. | Is the Legislature prohibited from delegating the power to levy taxes to a public industrial authority? | Taxation - Memo 1322 - C - SC_68516.docx | ROSS-003280866-ROSS-003280867 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 15117 | Com. v. Stafford, 451 Pa. 95 | 203+507 | Even assuming that the fall from bed was the immediate cause of death, appellant does not escape criminal responsibility. Unquestionably, the blows to the head were severe and were the direct cause of his deteriorated physical condition which, in turn, ultimately led to his collapsing on the floor. Consequently, appellant is legally responsible for the death since "one charged with homicide cannot escape liability merely because the blow he inflicted is not mortal, or the immediate cause of death. If his blow is the legal cause, i.e., if it started a chain of causation which led to the death, he is guilty of homicide." Commonwealth v. Cheeks, 423 Pa. 67, 73, 223 A.2d 291, 294 (1966). See also Commonwealth v. Carn, 449 Pa. 228, 296 A.2d 753 (1972); Commonwealth v. Johnson, 445 Pa. 276, 284 A.2d 734 (1971); Commonwealth ex rel. Peters v. Maroney, 415 Pa. 553, 204 A.2d 459 (1964). | One charged with homicide cannot escape liability merely because the blow he inflicts is not mortal, or the immediate cause of death; if his blow is the legal cause in that it started a chain of causation which lead to the death, he is guilty of homicide. | Is criminal responsibility confined to a sole or immediate cause of death? | Homicide - Memo 45 - TH.docx | ROSS-003282704-ROSS-003282705 | Condensed, SA, Sub | 0.71 | 0 | 1 | 1 | 1 | 1 |
| 15118 | McDowell v. Citicorp Inc., 752 N.W.2d 209 | 307A+695 | While a search of our case law does not reveal a case on point, other jurisdictions have considered this issue. The Eighth Circuit Court of Appeals noted that "[a]lthough a pretrial motion for leave to amend one's complaint is to be liberally granted, different considerations apply to motions filed after dismissal." Dorn v. State Bank of Stella, 767 F.2d 442, 443 (8thCir.1985) (emphasis added). If a complaint is dismissed, "the right to amend under Fed.R.Civ.P. 15(a) [SDCL 15-6-15(a)] terminates." Id. (additional citation omitted). If the "dismissal of the complaint also constitutes dismissal of the action[,]" then the motion to amend is improper. Id. Other courts have held that once a judgment is entered, amending the pleadings cannot be allowed until the judgment is set aside or vacated. | If the dismissal of a complaint also constitutes dismissal of an action, then a motion to amend is improper. SDCL S 15-6-15(a). | "If the dismissal of a complaint also constitutes dismissal of an action, is a motion to amend improper? " | Pretrial Procedure - Memo 11575 - C - BP_65595.docx | ROSS-003283036-ROSS-003283037 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 15119 | In re Trask, 462 B.R. 268 | 366+1 | The traditional doctrine of equitable subrogation "enables "[o]ne who pays, otherwise than as a volunteer, an obligation for which another is primarily liable," to be "given by equity the protection of any lien or other security for the payment of the debt to the creditor," and to "enforce such security against the principal debtor or collect the obligation from him." " See Chase Manhattan Bank, USA, N.A. v. Taxel (In re Deuel), 594 F.3d 1073, 1079 (9th Cir.2010) (quoting McClintock on Equity 332 (2d ed.1948)). The Supreme Judicial Court of Maine has stated that equitable subrogation is "a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." Nappi v. Nappi Distribs., 691 A.2d 1198 (Me.1997) (quoting United Carolina Bank v. Beesley, 663 A.2d 574, 576 (Me.1995)). It is "a concept derived from principles of restitution and unjust enrichment." Id. (citing North East Ins. Co. v. Concord Gen. Mut. Ins. Co., 433 A.2d 715, 719 (Me.1981)). Under the doctrine, when one, not a volunteer, loans money to another and takes a mortgage to discharge a first mortgage, it may be proper to apply the doctrine and to subrogate the lender to the discharged mortgage. Beesley, 663 A.2d at 576; Federal Land Bank of Springfield v. Smith, 129 Me. 233, 151 A. 420 (1930). The doctrine requires that the equities of the parties be weighed and balanced. Beesley, 663 A.2d at 576. "Subrogation, itself a creature of equity, must be enforced with due regard for the rights, legal or equitable, of others. It should not be invoked so as to work injustice, or defeat a legal right, or to overthrow a superior or perhaps equal equity, or to displace an intervening right or title." Id.; see also Federal Land Bank, 151 A. at 422. | Under Maine law, the doctrine of equitable subrogation requires that the equities of the parties be weighed and balanced. | Does the doctrine of equitable subrogation require that the equities of the parties be weighed and balanced? | Subrogation - Memo 177 - ANG C.docx | ROSS-003283189-ROSS-003283190 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15120 | Fed. Armored Serv. v. Pub. Serv. Comm'n, 204 Mich. App. 24 | 317A+169.1 | On appeal from a decision of the PSC, an appellant must show by clear and satisfactory evidence that the PSC's decision is unlawful or unreasonable. M.C.L. " 462.26(8): M.S.A. " 22.45(8); Midland Cogeneration Venture v. Public Service Comm., 199 Mich.App. 286, 313, 501 N.W.2d 573 (1993). A decision of the PSC is unlawful when it involves an erroneous interpretation or application of the law, and unreasonable when it is unsupported by the evidence. Id. Any factual determinations of the PSC must be supported by competent, material, and substantial evidence on the whole record. Const.1963, art. 6, " 28. | Decision of Public Service Commission (PSC) is unlawful when it involves erroneous interpretation or application of the law and unreasonable when it is unsupported by evidence. M.C.L.A. S 462.26(8). | "When is a decision of the Public Service Commission (""PSC"")?" | Public Utilities - Memo 156 - AM.docx | ROSS-003285295-ROSS-003285296 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 15121 | Barnes v. Nw. Repossession, 210 F. Supp. 3d 954 | 386+6 | In Count IV, Plaintiff alleges that Northwest's repossession constituted an unlawful trespass to chattel. First Am. Compl. [70] "" 146-51. The common law tort "provides redress for unauthorized use of or intermeddling with another's physical property." Fi dlar Techs. v. LPS Real Estate Data Sols., Inc., 82 F.Supp.3d 844, 859 (C.D.Ill.2015), aff'd, 810 F.3d 1075 (7th Cir.2016). Under Illinois law, "an injury to or interference with possession, with or without physical force, constitutes a trespass to personal property." Smith v. City of Chicago, 143 F.Supp.3d 741, 761 (N.D.Ill.2015) (quoting Sotelo v. DirectRevenue, LLC, 384 F.Supp.2d 1219, 1229 (N.D.Ill.2005)). A trespass to a chattel "may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Frazier v. U.S. Bank Nat. Ass'n, No. 11"CV"8775, 2013 WL 1337263, at (N.D.Ill. Mar. 29, 2013); Restatement (Second) of Torts " 217 (1965). In other words, "harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can result in liability." Smith, 143 F.Supp.3d at 761. | Under Illinois law, an injury to or interference with possession, with or without physical force, constitutes a trespass to personal property. | What constitutes a trespass to personal property? | Trespass - Memo 111 - JS.docx | ROSS-003286301-ROSS-003286302 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 15122 | Ball v. Rao, 48 S.W.3d 332 | 307A+3 | A motion in limine is a procedural device that permits a party to identify, prior to trial, certain evidentiary issues the court may be asked to rule upon. Fort Worth Hotel Ltd. P'ship v. Enserch Corp., 977 S.W.2d 746, 757 (Tex.App.-Fort Worth 1998, no pet.) The purpose of such a motion is to prevent opposing parties from asking prejudicial questions and introducing prejudicial evidence in front of the jury. Weidner v. Sanchez, 14 353, 363 (Tex.App.- Houston [14th Dist.] 2000, no pet.); Enserch Corp., 977 S.W.2d at 757. The imposition of sanctions for violations of orders in limine is left to the sound discretion of the trial court and we, as an appellate court, will not reverse a trial court's sanctions absent a clear abuse of discretion. Lassiter v. Shavor, 824 667, 669 (Tex.App.-Dallas 1992, no writ). A sanction for violating a court order must, however, be appropriate to the circumstances of the case. Id. We must also keep in mind that repeated violations of limine orders may result in mistrials or reversals. Weidner, 14 S.W.3d at 363. | Repeated violations of limine orders may result in mistrials or reversals. | May repeated violations of a court's in limine orders result in mistrials or reversals? | Pretrial Procedure - Memo # 895 - C - VA.docx | ROSS-003286862-ROSS-003286863 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |
| 15123 | Matsyuk v. State Farm Fire & Cas. Co., 155 Wash. App. 324 | 366+1 | The purpose of subrogation is to put the financial consequences on the party responsible for the loss. Mahler, 135 Wash.2d at 411, 957 P.2d 632. There are two features to subrogation: right to reimbursement and the mechanism for enforcement of that right. Id. at 412, 957 P.2d 632. The insurer's right to reimbursement can be effectuated through a lien against any recovery the insured has obtained from a third party or by suing the at-fault party directly. Id. at 412"13, 957 P.2d 632. | The purpose of subrogation is to put the financial consequences on the party responsible for the loss. | Is the purpose of subrogation to put the financial consequences on the party responsible for the loss? | Subrogation - Memo 251 - VG C.docx | ROSS-003288233-ROSS-003288234 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 15124 | City of Costa Mesa v. McKenzie, 30 Cal. App. 3d 763 | 413+391 | Workmen's compensation and retirement programs are based upon entirely different considerations. (Larson v. Board of Police Etc. Commrs., Supra, 71 Cal.App.2d 60, 63-64, 162 P.2d 33.) The former is compulsory under state law and may not be subsidized by any contributions or exactions from employees while the latter is voluntary and subject to employee-employer contractual arrangements. (City Etc. of San Francisco v. Workmen's Comp. App. Bd., Supra, 2 Cal.3d 1001, 1010, 88 Cal. 371, 472 P.2d 459.) Where a retirement system grants a definite allowance, unless provision is expressly made for a Pro tanto deduction for workmen's compensation benefits, such reduction cannot be made. (Holt v. Board of Police Etc. Commrs., Supra, 86 Cal.App.2d 714, 719-720, 196 P.2d 94; Johnson v. Bd. of Police Etc. Pen. Commrs., 74 Cal.App.2d 919, 921-922, 170 P.2d 48; Larson v. Board of Police Etc. Commrs., 71 Cal.App.2d 60, 64, 162 P.2d 33; Vero v. Sacramento City E.R. System, Supra, 41 Cal. App.2d 482, 486, 107 P.2d 82; see Stafford v. L.A. Etc. Retirement Board, 42 Cal.2d 795, 799-800, 270 P.2d 12.) Since Ordinance No. 64-45 is devoid of any indication that workmen's compensation benefits are to be deducted from disability benefits payable under the ordinance, no such deduction is permissible. Herrera v. Workmen's Comp. App. Bd., 71 Cal.2d 254, 78 Cal.Rptr. 497, 455 P.2d 425; City of Los Angeles v. Industrial Acc. Com., 63 Cal.2d 242, 46 Cal.Rptr. 97, 404 P.2d 801; and City Etc. of S.F. v. Workmen's Comp. App. Bd., 267 Cal. App.2d 771, 73 Cal.Rptr. 429, cited by the city for the contrary position are distinguishable. Each involved either a city charter provision or Labor Code section which expressly precluded recovery of both wage payments or retirement benefits and workmen's compensation benefits. Evans v. Los Angeles Ry. Corp., 216 Cal. 495, 14 P.2d 752, also cited, did not involve the payment of workmen's compensation. | Workmen's compensation is compulsory and may not be subsidized by any contributions or exactions from employees. | Is workmen's compensation compulsory and may it be subsidized by any contribution or exactions from employees? | Workers Compensation - Memo #160 ANC.docx | ROSS-003288584-ROSS-003288585 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15125 | Employers Ins. of Wausau v. Com., Dep't of Transp., 581 Pa. 381 | 366+1 | We now turn to the question of whether the Board of Claims should also hear the equitable subrogation claim as one "arising from a contract with the Commonwealth." Initially, we note that this Court and intermediate courts have made clear that a subrogation claim, in substance, is equitable in nature, and therefore does not sound in assumpsit. For example, in Jacobs v. Northeastern Corp., 416 Pa. 417, 206 A.2d 49 (1965), this Court quoted the United States Supreme Court indicating "[t]he right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relationship between the parties." Id. at 53 (quoting Memphis & Little Rock R.R. v. Dow, 120 U.S. 287, 301-02, 7 S.Ct. 482, 30 L.Ed. 595 (1887)); see also Gildner v. First Nat. Bank & Trust Co., 342 Pa. 145, 19 A.2d 910, 915 (1941) ("The doctrine of subrogation was adopted from the civil law and is based not on contract but on considerations of equity and good conscience."); Furia v. City of Philadelphia, 180 Pa.Super. 50, 118 A.2d 236, 238 (1955) ("Subrogation is an equitable doctrine and its basis is the doing of complete, essential and perfect justice between all parties without regard to form."); Roush v. Gelnett, 31 Pa. D. & C. 4th 420 (Com.Pl. Snyder Co.1996) ("[T]he doctrine of subrogation is based on considerations of equity and good conscience .. to promote justice .. [and] is granted as a means of placing the ultimate burden of the debt on the person who should bear it. It is not a matter of contract or privity"). | A subrogation claim, in substance, is equitable in nature, and therefore does not sound in assumpsit. | "Is a subrogation claim, in substance, equitable in nature, and therefore does not sound in assumpsit?" | Subrogation - Memo 551 - C - SA.docx | ROSS-003289129-ROSS-003289130 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 15126 | S. Farm Bureau Cas. Ins. Co. v. Tallant, 362 Ark. 17 | 366+1 | Subrogation is the substitution of one party for another. Welch Foods, Inc. v. Chicago Title Ins. Co., 341 Ark. 515, 17 S.W.3d 467 (2000). The party asserting subrogation is making a demand under the right of another. Cooper v. Home Owners' Loan Corp., 197 Ark. 839, 126 S.W.2d 112 (1939); Chaffe & Bros. v. Oliver, 39 Ark. 531 (1882). Subrogation is a normal incident of indemnity insurance. Sentry Ins. Co. v. Stuart, 246 Ark. 680, 439 S.W.2d 797 (1969). That is to say that because insurers pay the obligations of their insureds, a right in equity to subrogation in the insurer arises. Id. This assures against unjust enrichment by way of double recovery. Shelter Mut. Ins. Co. v. Bough, 310 Ark. 21, 834 S.W.2d 637 (1992). | "Subrogation" is the substitution of one party for another; the party asserting subrogation is making a demand under the right of another. | Is the party asserting subrogation making a demand under the right of another? | Subrogation - Memo 285 - RM C.docx | ROSS-003295392-ROSS-003295395 | Condensed, SA | 0.8 | 0 | 1 | 0 | 1 | |
| 15127 | In re Wyly, 552 B.R. 338 | 308+8 | First, and of significance, the Debtors have never argued that French was not the Wylys' agent regarding the implementation of the Wyly offshore system. Nor could they. Under Texas law, "an agency relationship arises when the principal consents to the agent acting on the principal's behalf." An agency relationship need not be expressly established, and instead may be implied based on the conduct of the parties under the circumstances. | Under Texas law, an agency relationship need not be expressly established, and instead may be implied based on the conduct of the parties under the circumstances. | How is the agency relationship created? | Principal and Agent - Memo 8 - RK.docx | ROSS-003296249-ROSS-003296250 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |
| 15128 | Williams v. Bank of Tallassee, 456 So. 2d 50 | 307A+695 | When motions to dismiss are granted, the plaintiff should always be afforded leave to amend. Roberts, supra, at 114. In this case, however, Plaintiffs declined to plead further. | When motions to dismiss are granted, plaintiff should always be afforded leave to amend. | "When motions to dismiss are granted, should a plaintiff always be afforded leave to amend? " | Pretrial Procedure - Memo 11670 - C - SHS_65407.docx | ROSS-003296606 | Condensed, SA | 0.51 | 0 | 1 | 0 | 1 | |
| 15129 | Blankenship v. Estate of Bain, 5 S.W.3d 647 | 366+1 | A right of subrogation may arise by contract ("conventional subrogation"), by application of equitable principles of law ("legal subrogation"), or by application of a statute ("statutory subrogation"). It is based on two fundamental premises: 1) that an insured should not be permitted recovery twice for the same loss, which would be the potential result if the insured recovers from both its insurer and a tortfeasor; and 2) that the tortfeasor should compensate the insurer for payments the insurer made to the insured. York v. Sevier County Ambulance Auth., 1999 WL 1051166 (Tenn.1999). | A right of subrogation may arise by contract (conventional subrogation), by application of equitable principles of law (legal subrogation), or by application of a statute (statutory subrogation). | What can the right of subrogation arise from? | Subrogation - Memo 165 - ANG C.docx | ROSS-003296779-ROSS-003296780 | Condensed, SA | 0.67 | 0 | 1 | 0 | 1 | |
| 15130 | Von Holden v. Chapman, 87 A.D.2d 66 | 368+1 | The preservation of life has a high social value in our culture and suicide is deemed "a grave public wrong" (Stiles v Clifton Springs Sanitarium Co., 74 F Supp 907, 909; Hundert v Commercial Travelers Mut. Acc. Assn. of Amer., 244 App Div 459). Even a perfunctory perusal of the case law of our sister States indicates the universality of that principle. (Superintendent of Belchertown State School v Saikewicz, 373 Mass 728 [Massachusetts Supreme Court acknowledged an interest in preserving life and preventing suicide]; State ex rel. Swann v Pack, 527 SW2d 99, cert den 424 U.S. 954 [Tennessee court said that attempted suicide was a grave public wrong adverse to the State's compelling interest in protecting life and promoting the life of its citizens]; Wallace v State, 232 Ind 700 [Indiana court announced suicide was against the law of God and man]; Commonwealth v Root, 191 Pa Super Ct 238, revd on other grounds 403 Pa 571 [the Pennsylvania court said that the policy of the law is to protect human life, including that of a person who wishes to destroy his own life]; Wyckoff v Mutual Life Ins. Co. of N.Y., 173 Ore 592 [self-destruction ordinarily involves moral turpitude and is regarded as being wrong]; John F. Kennedy Mem. Hosp. v Heston, 58 NJ 576 [the State had an interest in preventing a suicide by a competent person].) | Preservation of life has high social value in our culture and suicide is deemed "a grave public wrong." | Is suicide deemed as a grave public wrong? | Suicide - Memo 1 - AKA.docx | ROSS-003298142-ROSS-003298143 | Condensed, SA | 0.92 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15131 | Pinnacle Properties V v. Mainline Supply of Atlanta, 319 Ga. App. 94 | 315+605 | Even if Pinnacle does not have title to the building on which the lien is claimed and title is in a third party not subject to the suit, this "will not bar an action for foreclosing and enforcing the statutory lien of a materialman, because if the defendant has any interest in the premises upon which the lien can take effect, that interest is bound. Every legal interest in real and personal property can be seized and sold. Here, Pinnacle "had an estate for years in the leased premises, and ... a materialman's lien could attach to and be enforced against such interest, subject to the conditions of the lease." Thus, we affirm the trial court, because "[a] grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed." | Every legal interest in real and personal property can be seized and sold. | Can every legal interest in real and personal property be seized and sold? | Property - Memo 35 - RM.docx | ROSS-003300718-ROSS-003300719 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 15132 | Pelas v. Wooley, 297 So. 2d 546 | 307A+725 | Although the appellant does not seriously argue that the denial of the continuance was improper, we mention the issue only as it relates to the correctness of entertaining the motion for summary judgment by the trial judge. Under the Code of Civil Procedure, Article 1601, the granting of a continuance can be for good cause shown and is entirely within the discretion of the trial judge. The only peremptory grounds which exists in the Code of Procedure for the granting of a continuance are: (1) the attorney of record is a member of the legislature, and (2) the attorney is unable, after due diligence, to obtain evidence material to his case. LSA-C.C.P Art. 1602. Furthermore every contested motion for a continuance is to be tried contradictorily with the opposing party. In light of the above mentioned provisions of the Code of Civil Procedure, the district judge certainly did not abuse his discretion in denying the continuance and, therefore, properly proceeded to hear the motion for summary judgment. | Every contested motion for continuance is to be tried contradictorily with opposing party. LSA-C.C.P. arts. 1601, 1602. | Is every contested motion for continuance to be tried contradictorily with opposing party? | Pretrial Procedure - Memo # 4571 - C - DA.docx | ROSS-003304217-ROSS-003304218 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15133 | Wilson v. Cty. of Orange, 881 So. 2d 625 | 307A+561.1 | The standard of review of an order granting a motion to dismiss is de novo. Pondella Hall For Hire, Inc. v. Lamar, 866 So.2d 719, 721 (Fla. 5th DCA 2004). Examination must be limited to the four corners of the complaint and the allegations in the complaint must be taken as true and in the light most favorable to the pleader. Id. Dismissal should not be granted on the basis of an affirmative defense, except when the face of the complaint is sufficient to demonstrate the existence of that defense. Scovell v. Delco Oil Co., 798 So.2d 844, 846 (Fla. 5th DCA 2001). | Dismissal should not be granted on the basis of an affirmative defense, except when the face of the complaint is sufficient to demonstrate the existence of that defense. | Should a dismissal be granted on the basis of an affirmative defense? | Pretrial Procedure - Memo # 8611 - C - DA_59683.docx | ROSS-003308481-ROSS-003308482 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 15134 | Perkins v. Texas Nat. Bank of Commerce of Houston, 448 S.W.2d 725 | 21+9 | We consider that by using the word "duly", Cain was stating not a legal conclusion but a conclusion of fact: that the repossession had been made in a manner authorized by the agreement. Even if we considered both words to be legal conclusions, they could be excluded from the affidavit without adverse effect to the appellee. The fact that an affidavit contains both admissible and inadmissible matters does not render it entirely void. It is to be presumed from the recitations contained in the judgment in this case that the trial court correctly received sufficient summary judgment evidence to justify his judgment and also applied the applicable law thereto. Kellum v. Pacific National Fire Insurance Co., 360 S.W.2d 538 (Dallas Tex.Civ.App.1962, writ ref. n.r.e.) and cases cited. | Fact that affidavit contains both admissible and inadmissible matters does not render it entirely void. | Will affidavit be rendered void if it contains both admissible and inadmissible matters? | Affidavits - Memo 73 - SNJ_62001.docx | ROSS-003308817-ROSS-003308818 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 15135 | Laurie v. Ezard, 595 S.W.2d 336 | 307A+581 | A dismissal for failure to prosecute should not be based on remote, even if extended, periods of inactivity. Vonder Haar Concrete Company v. Edwards-Parker, Inc., supra, 561 S.W.2d at 139. In determining whether to dismiss a dormant case, we believe that the time a case has been on file and its prior inactivity may be considered. However, to dismiss a case for prior inactivity while it was being pursued could cause many cases to be dismissed which should not be. Human nature being what it is, attorneys and parties may not always act in a diligent manner. Our examination of the cases cited by the parties and other cases leads us to believe that only in an unusual situation should a case be dismissed for prior inactivity, on a party's motion, at a time when it appeared to be prosecuted toward trial. | Dismissal for failure to prosecute should not be based on remote, even if extended, periods of inactivity. | Should dismissal for failure to prosecute be based on remote periods of inactivity? | Pretrial Procedure - Memo # 9691 - C - SK_61592.docx | ROSS-003310242-ROSS-003310244 | Condensed, SA | 0.87 | 0 | 1 | 0 | 1 | |
| 15136 | E. Nat. Bank v. Glendale Fed. Sav. & Loan Ass'n, 508 So. 2d 1323 | 366+1 | Equitable subrogation arises when the person discharging the obligation is under a legal duty to do so or when the person discharges the obligation to protect an interest in, or a right to, the property. The doctrine of equitable subrogation does not apply to mere volunteers. Boley v. Daniel, 72 Fla. 121, 72 So. 644 (1916). It is governed by the operation of equitable principles rather than legal rules and will not be applied where it would work an injustice to innocent third parties. Some courts have refused to apply the doctrine where the party seeking to invoke it is negligent, stating that to do so would be to reward negligence. Fort Dodge Bldg. & Loan Ass'n v. Scott, 86 Iowa 431, 53 N.W. 283 (1892). However, two grounds are recognized for permitting subrogation against intervening interests even where there is a negligent failure to discover a prior recorded junior lien. First, negligence which has not resulted in harm to anyone will not be invoked to permit unjust enrichment of the later lienors through their fortuitous advancement in priority by reason of mistake. See Federal Land Bank v. Joynes, 179 Va. 394, 18 S.E.2d 917 (1942); Banta v. Vreeland, 15 N.J.Eq. 103, 107 (1862). Second, the function of constructive notice is to preserve an existing advantage and not to gain a new one. Martin v. Hickenlooper, 90 Utah 150, 59 P.2d 1139 (1936); Note, Equitable Substitution of Mortgages, 26 Harv.L.Rev. 261 (1913). | Equitable subrogation is governed by operation of equitable principles rather than legal rules and will not be applied where it would work injustice to innocent third parties. | Is the doctrine of equitable subrogation a doctrine based on equity? | Subrogation - Memo 195 - RM.docx | ROSS-003310936-ROSS-003310937 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15137 | Pusl v. Means, 2009 PA Super 192 | 366+1 | The goal of subrogation is to place the burden of the debt upon the person who should bear it. Johnson, at 456, 664 A.2d at 100. The equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights he subrogated. Id., at 456, 664 A.2d at 100 (citing Allstate Insurance Company v. Clarke, 364 Pa.Super. 196, 527 A.2d 1021, 1024 (1987)). Thus, the insurer who paid a UIM claim acquires, by operation of law, the right to seek subrogation from any person that the insured could have pursued who should rightly have borne the loss. Id., at 457, 664 A.2d 96, 664 A.2d at 100; Travelers/Aetna Property Casualty Corp., 1997 WL 88908, 1997 U.S. Dist. LEXIS 1891 (E.D.Pa.1997)). Appellant must be fully compensated, or "made whole," for injuries suffered before the right of subrogation on the part of the State Farm arises. Nationwide Mutual Insurance Company v. DiTomo, 478 A.2d 1381, 1383 (1984). | The goal of subrogation is to place the burden of the debt upon the person who should bear it. | Should the goal of subrogation be to place the burden on the debt upon the person who should bear it? | Subrogation - Memo 394 - VP C.docx | ROSS-003311114-ROSS-003311115 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 15138 | First Am. Title Ins. Co. v. Cumberland Cty. Bank, 633 F. Supp. 2d 566 | 366+38 | Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." Blankenship v. Estate of Bain, 5 S.W.3d 647, 650 (Tenn.1999) (citation omitted). The burden is on the party claiming subrogation to prove an entitlement. Castleman Constr. Co. v. Pennington, 222 Tenn. 82, 432 S.W.2d 669, 675 (1968). The question of whether equitable subrogation will be afforded is answered by equitable principles. Id. at 676. Equitable subrogation is a remedy whose application depends upon the balancing of the equities involved. See Lawyers Title Ins. Corp. v. United Am. Bank, 21 F.Supp.2d 785, 792 (W.D.Tenn.1998). Equitable subrogation "will not be enforced when it would work injustice to the rights of those having equities." Castleman, 432 S.W.2d at 674. | Under Tennessee law, equitable subrogation will not be enforced when it would work injustice to rights of those having equities. | Will equitable subrogation be enforced when it would work injustice to rights of those having equities? | Subrogation - Memo 172 - ANG C.docx | ROSS-003311488-ROSS-003311489 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 15139 | In re Lopez, 486 B.R. 221 | 172H+117 | The Debtors claim that the Defendants violated TILA and the MCCCDA by failing to provide the Debtors with a total of four Notices of Right to Cancel ("Notices") as required under those statutes. Even were the Debtors' claim not time barred, as the Defendants assert, the First Circuit Court of Appeals has now clarified that, so long as a borrower receives one Notice, the rescission period may not be extended under either statute. See McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 216 (1st Cir.2012); Cromwell v. Countrywide Home Loans, Inc., 483 B.R. 36, 43"44 (D.Mass.2012). In McKenna, the First Circuit Court of Appeals held that[t]he [MCCCDA] ... says nothing about the lack of multiple copies being a basis for rescission; the time period for rescission is only extended from three days to four years if the borrower does not receive an appropriate "written notice" (singular), Mass. Gen. Laws ch. 140D, " 10(h), (i)(1)(B); and the relevant regulations specify the conditions under which a borrower has an extended right of rescission, 209 Mass.Code Regs. " 32.15(1)(c)(d), in a different subsection than the multiple copy requirement. | So long as a borrower receives one notice of right to cancel, the rescission period may not be extended under either the Truth in Lending Act (TILA) or the Massachusetts Consumer Credit Cost Disclosure Act (MCCCDA). Consumer Credit Protection Act, S 102 et seq., 15 U.S.C.A. S 1601 et seq.; M.G.L.A. c. 140D, S 10 et seq. | Can the rescission period be extended if the borrower receives notice? | Consumer Credit - Memo 14 - RK.docx | ROSS-003312430-ROSS-003312431 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 15140 | Senseley v. First Nat. Life Ins. Co., 205 La. 61 | 307A+501 | From a mere reading of the Act, it is apparent that it applies only to the voluntary dismissals of suits and reconventional demands. A plaintiff in a suit has control of it and has the right to discontinue or dismiss it at any time except where the rights of the defendant are prejudiced. C.P., Article 491; St. Bernard Trappers' Ass'n v. Michel, 162 La. 366, 110 So. 617. Insofar as a reconventional demand is concerned, the defendant takes the position of plaintiff. Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869. However, if the dismissal of either of the demands, principal or in reconvention, would prejudice the rights of other parties to the suit, the suit could only be dismissed with the consent of the parties so prejudiced. In either event, the discontinuance or dismissal would be accomplished by the voluntary withdrawal of the suit or demand and not by operation of law. | Plaintiff has control of a suit and the right to discontinue or dismiss it at any time except where rights of defendant are prejudiced, and as respects a reconventional demand the defendant has similar control and rights. Code Prac. art. 491. | Cana plaintiff discontinue an action against a defendant where the rights of the latter will not be prejudiced thereby? | Pretrial Procedure - Memo # 1659 - C - KG.docx | ROSS-003314594-ROSS-003314595 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 15141 | Pennsylvania Nat. Mut. Cas. Ins. Co. v. Ins. Com'r of Com. of Pa., 121 Pa. Cmwlth. 618 | 308+159(1) | A principal is liable for the acts of its agent committed in the scope of its employment even though the principal did not authorize the act. Aiello v. Ed Saxe Real Estate, Inc., 508 Pa. 553, 499 A.2d 282 (1985). Furthermore, undisclosed rules only known to an insurer and its agent cannot be invoked to defeat the very contract the agent had apparent authority to make. Serventi v. New York Fire Insurance Co., 253 F.Supp. 670 (1966). Moreover, the principal's liability is not limited when a restriction is not communicated to a third party. Industrial Molded Plastic Products, Inc. v. J. Gross & Son, Inc., 263 Pa.Superior Ct. 515, 398 A.2d 695 (1979). Petitioner is therefore liable for Moore's actions as she had apparent authority to bind coverage and did not communicate any limitation on her authority to Herron. Nor is there any merit to the argument raised by Petitioner that Moore did nothing that would have led Herron to believe that Moore had authority to bind Petitioner, and that it was Herron's obligation to ascertain Moore's authority. If Herron did in fact have any obligation in this regard, the assurances she received from Moore discharged any such obligation. Bolus v. United Penn Bank, 363 Pa.Superior Ct. 247, 525 A.2d 1215 (1987). | Principal is liable for acts of its agent committed in scope of its employment even though principal did not authorize acts. | Can a principal be held liable for an unauthorized act of an agent performed within the scope of his employment? | Principal and Agent - Memo 117 - KC.docx | ROSS-003317894-ROSS-003317895 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 15142 | Lumley v. Bd. of Regents for Univ. of Michigan, 215 Mich. App. 125 | 13+61 | The Supreme Court seems to view the word "arises" as being synonymous with "accrues." Hyde v. Univ. of Michigan Bd of Regents, 426 Mich. 223, 231, 393 N.W.2d 847 (1986). A cause of action has been said to accrue at the moment the plaintiff could first commence a lawsuit upon it. It accrues when all the elements of the claim have occurred and can be alleged in a proper complaint. Connelly v. Paul Ruddy's Equipment Repair & Service Co., 388 Mich. 146, 150, 200 N.W.2d 70 (1972). Damage is one of those elements. Id. | Cause of action accrues when all elements of claim have occurred and can be alleged in proper complaint. | Does a cause of action accrue when all elements of claim have occurred and can be alleged in proper complaint? | Action - Memo # 214 - C - NO.docx | ROSS-003322785-ROSS-003322786 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15143 | Home Ins. Co. v. Cincinnati Ins. Co., 213 Ill. 2d 307 | 208+20 | In contrast to contribution, subrogation and indemnification are devices for placing the entire burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged. Couch on Insurance 3d 217:5 (rev.2004). Indemnification differs from subrogation in that the entity seeking indemnification does so in its own right, while in the latter the subrogee succeeds to another's right to payment. Couch on Insurance 3d 217:5 (rev.2004). | "Indemnification" differs from "subrogation" in that the entity seeking indemnification does so in its own right, while in the latter the subrogee succeeds to another's right to payment. | Does a party seeking subrogation does so as a successor to another party's right to payment? | Subrogation - Memo 199 - RM C.docx | ROSS-003324593-ROSS-003324594 | Condensed, SA | 0.59 | 0 | 1 | 0 | 1 | |
| 15144 | Wasko v. Manella, 269 Conn. 527 | 366+1 | In contrast, equitable subrogation arises strictly as a matter of equity, regardless of whether there is an explicit agreement. Id. "It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." (Internal quotation marks omitted.) Id. In the past, equitable subrogation could be applied in "every instance in which one person, not acting as a mere volunteer or intruder, pays [the] debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Internal quotation marks omitted.) Id | Equitable subrogation arises strictly as a matter of equity, regardless of whether there is an explicit agreement; it is designed to promote and to accomplish justice and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. | Is equitable subrogation a remedy that arises strictly as a matter of equity? | Subrogation - Memo 398 - RM C.docx | ROSS-003324937-ROSS-003324938 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 15145 | In re Bill Heard Enterprises, 423 B.R. 771 | 366+1 | The overall fairness of applying equitable subrogation should be assessed with a view to the purpose of the doctrine, which is to prevent unjust enrichment. If this goal is not accomplished, the doctrine should not be applied. See, e.g., Casstevens v. Smith, 269 S.W.3d 222, 228 (Tex.App.2008) (refusing to apply equitable subrogation where it would not prevent unjust enrichment). The rights asserted by Alphera also must be weighed against the competing equities in this case and viewed from a perspective of what Alphera as the entity seeking subrogation could have done differently in this case. ""Equity rules are not absolute and competing equities must be considered in any subrogation-restitution situation. The subrogee must have clear equity and subrogation is defeated by countervailing equities." " In re Hutchins, 400 B.R. 403, 414 (Bankr.D.Vt.2009) (quoting Norfolk & Dedham Fire Ins. Co. v. Aetna Casualty & Surety Co., 132 Vt. 341, 318 A.2d 659, 661"62 (1974)). | Equity rules are not absolute and competing equities must be considered in any subrogation-restitution situation; the subrogee must have clear equity, and subrogation is defeated by countervailing equities. | Are equity rules absolute? | Subrogation - Memo 310 - RM C.docx | ROSS-003324995-ROSS-003324997 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 15146 | Zissu v. IH2 Prop. Illinois, 157 F. Supp. 3d 797 | 386+6 | Trespass to personal property involves an injury to or interferences with possession of chattel, with or without physical force. See Sotelo v. DirectRevenue, LLC, 384 F.Supp.2d 1219, 1229 (N.D.Ill.2005)."According to the Restatement of Torts, there are two ways to commit this tort: "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another."" Id. (citing Restatement (Second) of Torts " 217). To establish a claim for conversion, the plaintiff must prove that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." In re Karavidas, 376 Ill.Dec. 413, 999 N.E.2d 296, 310 (2013). The difference between trespass to chattels and conversion is a matter of degree. See Obi v. Chase Home Fin., LLC, 2010 WL 4810609, at (N.D.Ill.2010). | Trespass to personal property under Illinois law involves an injury to or interferences with possession of chattel, with or without physical force. | Does a trespass to personal property require physical force? | Trespass - Memo 121 - RK.docx | ROSS-003325125-ROSS-003325126 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 15147 | In re Shavers, 418 B.R. 589 | 366+1 | A more difficult issue arises in determining when to apply the equitable subrogation doctrine. In Mississippi, this doctrine applies, in general, "wherever any person other than a mere volunteer pays a debt or demand which in equity and good conscience should have been satisfied by another, or where one person finds it necessary for his own protection to pay the debt for which another is primarily liable.." Prestridge v. Lazar, 132 Miss. 168, 95 So. 837, 838 (1923). The object of equitable subrogation "is the doing of complete, essential, and perfect justice between all parties." Lyon v. Colonial United States Mortgage Co., 129 Miss. 54, 91 So. 708, 709 (1922). Beyond these basic principles of equitable subrogation law, there is disagreement among the Four Claimants as to the extent, if any, that Long Beach's knowledge of the intervening lien and Long Beach's negligence have on Chase's entitlement to relief. Also, the Four Claimants disagree as to whether and to what extent harm or prejudice to the Judgment Creditors will bar subrogation. Resolution of these issues requires a closer examination of the few cases in Mississippi that have applied this doctrine. | Under Mississippi law, the object of equitable subrogation is the doing of complete, essential, and perfect justice between all parties. | "Is the object of equitable subrogation the doing of complete, essential and perfect justice between all parties?" | Subrogation - Memo 312 - RM C.docx | ROSS-003325143-ROSS-003325145 | SA, Sub | 0.88 | 0 | 0 | 1 | 1 | |
| 15148 | Farrell by Lehner v. John Deere Co., 151 Wis. 2d 45 | 386+6 | Farrell next challenges the inclusion of Mueller's alleged negligence on the special verdict. Prior to trial, the trial court had ruled that Farrell was a trespasser as to Mueller's corn picker because Mueller had told Farrell not to use the corn picker. Neither party challenges this determination. An individual who uses personal property without the owner's permission is a trespasser as to the owner of the property. See Hartman v. Badger Tobacco Co., 210 Wis. 519, 520, 246 N.W. 577, 578 (1933). Since Farrell was a trespasser, Mueller did not owe him a duty of ordinary care. Mueller's only duty was to refrain from willful and intentional injury. Antoniewicz v. Reszczynski, 70 Wis.2d 836, 842, 236 N.W.2d 1, 4 (1975). Thus, Mueller could not have been found causally negligent for the accident as a matter of law. Inclusion of Mueller's negligence in the special verdict was therefore error. | Individual using personal property without owner's permission is trespasser as to owner of property. | Is an individual who uses personal property without the owner's permission a trespasser? | Trespass - Memo 202 - RK.docx | ROSS-003325920-ROSS-003325921 | Condensed, SA, Sub | 0.89 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15149 | Jindra v. Diederich Flooring, 181 Wis. 2d 579 | 366+41(6) | The burden of proof in subrogation cases involves two questions. When a party requests subrogation, that party has the burden of proving its right to subrogation. That involves showing (a) that there is some basis for asserting subrogation, and, (b) that subrogation should be allowed in those circumstances. The same rule and burden of proof apply when a party seeks to impose subrogation. The party seeking to impose subrogation has the burden of showing both (a) that there would be some basis for asserting subrogation in that instance, and, (b) that subrogation must be applied in equity in those circumstances. In practice, since subrogation is an equitable doctrine favored by the courts, the burden of proof is more easily satisfied when requesting subrogation than it would be when imposing subrogation. | Party requesting subrogation has burden of proving that there is some basis for asserting subrogation, and that subrogation should be allowed in those circumstances. (Per Day, J., with two Justices concurring and two Justices concurring in result.) | Does a party requesting subrogation have burden of proving that there is a basis for asserting subrogation? | Subrogation - Memo # 1253 - C - KA.docx | ROSS-003327262-ROSS-003327263 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 15150 | United States v. Heyman, 794 F.2d 788 | 111H+8 | Alan Heyman, an account executive with Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), shared responsibility for several customer accounts with another account executive, Martin Leyton. One of them, jointly held by Sam Silber and his wife, Evelyn, was opened on July 21, 1981. In February 1982, the Silbers sought to deposit a large amount of cash into their account with Merrill Lynch. Having failed to report the cash as income to the Internal Revenue Service, however, the Silbers also did not wish Merrill Lynch to report the deposit to the IRS. Federal law provides that a financial institution must file a Currency Transaction Report ("CTR") with the IRS for all transactions involving amounts over $10,000. 31 U.S.C. " 5313. | Account executive for financial institution who caused financial institution to violate law regarding reporting of large monetary transactions could be convicted of willfully causing deposits to be structured so as to violate reporting law, which if directly performed by financial institution would be federal offense, although he himself had no legal responsibility to file currency transaction reports. 18 U.S.C.A. S 2(b); 31 U.S.C.A. SS 5311, 5313, 5322. | When does a financial institution file a currency transaction report? | Banks and Banking - Memo 3 - MS.docx | ROSS-003311389-ROSS-003311391 | Condensed, SA, Sub | 0.39 | 0 | 1 | 1 | 1 | 1 |
| 15151 | Employers Ins. of Wausau v. Com., Dep't of Transp., 581 Pa. 381 | 38+90 | Wausau's allegation of assignment stems from the general indemnity agreement in which Lang assigned to Wausau the right to collect contract proceeds from PennDOT in the event Lang defaulted on its obligations, under the PennDOT/Lang contract, to third party labor and material suppliers. "An assignment is a transfer of property or some other right from one person to another, and unless in some way qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee."Pentlong Corp. v. GLS Capital, Inc., 573 Pa. 34, 820 A.2d 1240, 1249 (2003); see also In re Purman's Estate, 358 Pa. 187, 56 A.2d 86 (1948). The right to receive money due or to become due is generally assignable. In re Noel Coal, Inc., 82 B.R. 778 (Bkrtcy. W.D.Pa.1988). Under the law of assignment, the assignee succeeds to no greater rights than those possessed by the assignor. See Himes v. Cameron County Construction Corp., 497 Pa. 637, 444 A.2d 98, 100 (1982). An assignment will ordinarily be construed in accordance with the rules of construction governing contracts and the circumstances surrounding the execution of the assignment document. See U.S. National Bank v. Campbell, 354 Pa. 483, 47 A.2d 697 (1946); see also Horbal v. Moxham Nat. Bank, 548 Pa. 394, 697 A.2d 577 (1997) (Castille, J., concurring.) | An "assignment" is a transfer of property or some other right from one person to another, and unless in some way qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee. | What is an assignment? | 000092.docx | LEGALEASE-00115518-LEGALEASE-00115519 | Condensed, SA | 0.82 | 0 | 1 | 0 | 1 | |
| 15152 | Gulfstream III Assocs. v. Gulfstream Aerospace Corp., 995 F.2d 425 | 38+2 | We believe it is also clear thatthe validity of the assignment of an antitrust claim is a matter of federal common law. We so stated, albeit without analysis, in Fine Paper, supra: "In any event, the status of assignments under the Sherman and Clayton Acts is a matter of federal law." There, numerous plaintiffs, including paper distributors and several states, had brought antitrust class actions against paper manufacturers. The distributors were granted class certification; but most of the states, including Washington, were denied such certification. However, Washington was also the assignee of certain distributors' antitrust claims pertaining to paper products that Washington had purchased. We upheld the validity of those partial express assignments. Id. at 1090"91. | Validity of assignment of antitrust claim is a matter of federal common law. | Is the assignment of antitrust claim a matter of federal common law? | 000096.docx | LEGALEASE-00115548-LEGALEASE-00115549 | Condensed, SA | 0.9 | 0 | 1 | 0 | 1 | |
| 15153 | Beauchamp v. N. Am. Sav. Ass'n, 543 S.W.2d 536 | 195+1 | A transaction of guaranty is a species of contract with at least three parties: a promisor, a creditor (to whom the promise is made) and a debtor. The guaranty arises when the promisor makes a promise to the creditor either as to the solvency of the debtor or as to the payment of the debt. Industrial Bank & Trust Co. v. Hesselberg, 195 S.W.2d 470 (Mo.1946); 38 Am.Jur.2d, Guaranty, s 1. A guaranty is a collateral agreement for performance of the undertaking of another, and so imports two different obligations: that of the principal debtor and that of the guarantor. Four-Three-O-Six Duncan Corp. v. Security Trust Co., 372 S.W.2d 16, 23(6) (Mo.1963); Kelly-Springfield Tire Co. v. Hamilton, 230 Mo.App. 430, 91 S.W.2d 193, 195(1) (1936). The liability of the guarantor, therefore, does not arise in the absence of a liability on the principal undertaking to which it is collateral. 38 C.J.S., Guaranty s 2. The obligations of the guarantor are construed strictissimi juris and will not extend beyond what he is fairly bound to by the precise terms of his contract. This favoritism flows from the assumption of public policy (Citizens Trust Co. v. Tindle, 272 Mo. 681, 199 S.W. 1025, l.c. 1029 (banc 1917)) that (i)n the complicated transactions of civil life, the aid of one friend to another, in the character of surety or bail1 becomes requisite at every step. Without these constant acts of mutual kindness and assistance, the course of business and commerce would be prodigiously impeded and disturbed. | Transaction of "guaranty" is species of contract with at least three parties, a promisor, creditor to whom promise is made and a debtor, that arises when promisor makes promise to creditor either as to solvency of debtor or as to payment of debt. | How many parties are involved in a contract of guaranty? | Guaranty - Memo 7 - RM.docx | ROSS-003296997-ROSS-003296999 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 15154 | DeCespedes v. Prudence Mut. Cas. Co. of Chicago, Ill., 193 So. 2d 224 | 217+1867 | The contract of insurance is said to be a contract of utmost good faith, and the law of insurance may be thought of as an extension of the law of suretyship. To allow the insured to make a recovery under this coverage after he has made an apparently satisfactory settlement and executed a release in violation of the subrogation clause, is to allow him a windfall from his insurance not within the contemplation of the parties | The contract of insurance is said to be a contract of utmost good faith, and the law of insurance may be thought of as an extension of the law of suretyship. | Are insurance contracts considered as contract of good faith? | 000188.docx | LEGALEASE-00115668-LEGALEASE-00115670 | Condensed, SA | 0.63 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15155 | Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court, 46 Cal. 4th 993 | 38+31 | The legal concept of assignment refers to the transferability of all types of property, including a cause of action.(Essex Ins. Co. v. Five Star Dye House, Inc. (2006) 38 Cal.4th 1252, 1259, 45 Cal.Rptr.3d 362, 137 P.3d 192.) A cause of action, sometimes called a "thing in action," "is a right to recover money or other personal property by a judicial proceeding." (Civ.Code, " 953.) "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."(Id., " 954.) "An obligation is a legal duty, by which a person is bound to do or not to do a certain thing." (Id., " 1427.) | The legal concept of "assignment" refers to the transferability of all types of property, including a cause of action. | Does transfer of assignment refer to all types of property? | 000098.docx | LEGALEASE-00115555-LEGALEASE-00115556 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 15156 | Jackson Cty. Bd. of Election Comm'rs v. Paluka, 13 S.W.3d 684 | 277+3 | "The word "notice" is not a technical word, and while it can have various meanings, yet the meaning to be given it by the courts is to be controlled largely by the context and by the purpose of the enactment." Miller v. Prough, 203 Mo.App. 413, 221 S.W. 159 (1920). Notice may be either express or implied. Crane v. Liberty Foundry, 322 Mo. 592, 17 S.W.2d 945, 957 (1929). Express notice is that kind of actual notice which consists of "knowledge brought personally home." Buckley v. Coe, 385 S.W.2d 354, 358 (Mo.App.1964) (quoting 66 C.J.S. Notice " 5). Implied notice is knowledge implied from surrounding facts and circumstances, so as to hold one to have known that which he could have discovered by the exercise of ordinary care. Lamke v. Lynn, 680 S.W.2d 285, 288 (Mo.App.1984). | "Implied notice" is knowledge implied from surrounding facts and circumstances, so as to hold one to have known that which he could have discovered by the exercise of ordinary care. | What are the kinds of notices recognized by law? | 000260.docx | LEGALEASE-00115681-LEGALEASE-00115682 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 15157 | Eljer Mfg. v. Kowin Dev. Corp., 14 F.3d 1250 | 25T+374(1) | Our scope of review of a commercial arbitration award is grudgingly narrow. Sections 10 and 11 of the Federal Arbitration Act provide statutory grounds for the modification of an arbitrator's decision. In addition to the reasons set out in the statute, we will set aside an arbitrator's decision if in reaching his result, the arbitrator deliberately disregards what he knows to be the law. Health Servs. Mgmt. Corp. v. Hughes, 975 F.2d 1253, 1267 (7th Cir.1992). Errors in the arbitrator's interpretation of law or findings of fact do not merit reversal under this standard. National Wrecking Co. v. International Brotherhood of Teamsters, Local 731, 990 F.2d 957 (7th Cir.1993); Moseley, Hallgarten, Estabrook, & Weeden v. Ellis, 849 F.2d 264 (7th Cir.1988). Nor does an insufficiency of evidence supporting the decision permit us to disturb the arbitrator's order. Arbitration does not provide a system of "junior varsity trial courts" offering the losing party complete and rigorous de novo review. National Wrecking, 990 F.2d at 960. It is a private system of justice offering benefits of reduced delay and expense. A restrictive standard of review is necessary to preserve these benefits and to prevent arbitration from becoming a "preliminary step to judicial resolution." E.I. DuPont de Nemours v. Grasselli Employees Indep. Ass'n, 790 F.2d 611, 614 (7th Cir.), cert. denied, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986). | Arbitration does not provide system of "junior varsity trial courts" offering losing party complete and rigorous de novo review. | What are the benefits of arbitration? | Alternative Dispute Resolution - Memo 17 - JS.docx | LEGALEASE-00000690-LEGALEASE-00000691 | Condensed, SA | 0.91 | 0 | 1 | 0 | 1 | |
| 15158 | Mitchell v. State, 132 Neb. 891 | 181+10 | 3 The rule clearly established by the authorities, applicable to forgery as defined by our statute, is: "It is forgery fraudulently to alter any part of an instrument when the alteration is capable of working injury to another. Thus, it is forgery to alter the dates, names, or any other material parts of an instrument when the alteration gives it a new operation. Consequently, it is forgery fraudulently to * * * erase one signature or indorsement and insert another. * * * It is even forgery for a person fraudulently to alter an instrument previously forged by himself." 2 Wharton, Criminal Law (12th Ed.) 1188, " 884. | It is "forgery" fraudulently to alter any part of instrument when alteration is capable of working injury to another, and hence it is "forgery" fraudulently to erase one signature and insert another (Comp.St.1929, SS 28-601, 62-807). | What is a material alteration that constitute forgery? | 003927.docx | LEGALEASE-00115868-LEGALEASE-00115869 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 15159 | Buchta v. Seng, 444 N.E.2d 1250 | 83E+712 | I.C. 26-1-3-415 provides that; An accommodation is one who signs the instrument in any capacity for the purpose of lending his name to another party to it. (emphasis added.) Thus, a co-maker of a note can be an accommodation party, Fithian v. Jamar, (1979) 286 Md. 161, 410 A.2d 569, and is liable as a maker to the principal, Id.An accommodation party's liability to the principal does not affect the relationship between the accommodation party and the party accommodated. The accommodation party is not liable to the party accommodated and has a right to indemnification against the accommodated party. Ind.Code 26-1-3-415(5), Fithian v. Jamar, supra; Ridings v. Motor Vessel "Effort" (N.Y.1968) 387 F.2d 888; Northern Plumbing Supply, Inc. v. Gates, (1972) N.D., 196 N.W.2d 70. Therefore, the jury verdict in the Bank's favor on the note did not resolve Seng's and Buchta's relationship. Although the jury was instructed on the potential verdicts it could render on Buchta's and Seng's cross-claims, particularly Buchta's claim for indemnification, no verdicts were returned on them and no judgment entered. Without resolution of their relationship, Seng's claim for contribution against Buchta based upon their joint liability to the Bank is insufficient to justify contribution pursuant to I.C. 26-1-3-415(5). | Comaker of note can be accommodation party and is liable as maker to principal, but accommodation party's liability to principal does not affect relationship between accommodation party and party accommodated, and accommodation party is not liable to party accommodated and has right to indemnification against the accommodated party. IC 26-1-3-415, 26-1-3-415(5) (1982 Ed.). | What is the liability of an accommodation party? | Guaranty - Memo 20 - AKA.docx | ROSS-003303162-ROSS-003303163 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 15160 | United States v. Pipkins, 528 F.2d 559 | 311H+156 | It is vital to a claim of privilege that the communication have been made and maintained in confidence. United States v. Hodgson, supra; Wirtz v. Fowler, 372 F.2d 315, 332 (5th Cir. 1966); United States v. Kovel, supra; 8 Wigmore, supra, s 2311. Thus courts have refused to apply the privilege to information that the client intends his attorney to impart to others, United States v. Cote, 456 F.2d 142, 144 (8th Cir. 1972); Fratto v. New Amsterdam Fire Ins. Co., 359 F.2d 842, 844 (3d Cir. 1966); Colton v. United States, 306 F.2d 633, 638 (2d Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), or to communications made in the presence of third parties, United States v. Blackburn, 446 F.2d 1089, 1091 (5th Cir. 1971), cert. denied, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972); Burlington Industries v. Exxon Corp., supra, 65 F.R.D. at 37; Cafritz v. Koslow, 83 U.S.App.D.C. 212, 167 F.2d 749, 751 (1948). | It is vital to claim of attorney-client privilege that the communication was made and maintained in confidence. | Is it vital to a claim of attorney-client privilege that the communication has been made and maintained in confidence? | 005291.docx | LEGALEASE-00116039-LEGALEASE-00116040 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15161 | Phillips v. Scalf, 778 N.E.2d 480 | 315+22 | Indiana courts have recognized that under the rule of "mobilia sequuntur personam," the situs of intangible personal property is the legal domicile of the owner. Ind. Dep't of State Revenue v. Bethlehem Steel Corp., 639 N.E.2d 264, 268"269 (Ind.1994), reh'g denied. Thus, Scalf's right of publicity is "located" in Morgan County with Scalf. Because the chattel is "regularly located or kept" in Morgan County, preferred venue for Scalf's complaint exists in Morgan County under Ind. Trial Rule 75(A)(2). | Under the rule of "mobilia sequuntur personam," the situs of intangible personal property is the legal domicile of the owner. | What is the situs of an intangible personal property? | Property - Memo 6 - ANG.docx | ROSS-003298117-ROSS-003298118 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 15162 | Chavala Co-op. v. Hortman, 93 Ga. App. 505 | 315+22 | Unless otherwise stipulated the situs of a debt follows the domicile of the creditor and is construed according to the laws of the State in which he resides. Birdseye v. Underhill, 82 Ga. 142, 7 S.E. 863, 2 L.R.A. 99. Where an instrument like the one upon which the defendant predicates his plea of set-off in the instant case does not evince a debt for any principal amount, but does obligate its maker to periodically pay certain amounts of interest it is an evidence of debt to that extent, and in construing it the rule pronounced in the preceding headnote is applicable. | Unless otherwise stipulated, situs of a debt follows creditor's domicile and is construed according to laws of state in which creditor resides. | Which is the situs of a debt? | 003053.docx | LEGALEASE-00116075-LEGALEASE-00116076 | Condensed, SA, Sub | 0.75 | 0 | 1 | 1 | 1 | 1 |
| 15163 | S. Owners Ins. Co. v. Cooperativa De Seguros Multiples, 143 So. 3d 439 | 315+603 | Absent an ownership interest in the pool, Daisy would not be entitled to coverage under Southern Owners' policies because her potential liability would arise, at most, out of her "use" of the pool. Although the right to use property is an indicia of ownership, it does not equate to ownership. The primary elements of ownership are the rights of possession, use and enjoyment, the right to change or improve the property, and the right to alienate the property. Ill. Dep't of Transp. v. Anderson, 384 Ill.App.3d 309, 322 Ill.Dec. 869, 892 N.E.2d 116, 120 (2008). Because it is unclear from the record whether Daisy had an ownership interest in the community pool, we conclude that it was error to enter summary judgment in favor of Appellees. | The primary elements of ownership of property are the rights of possession, use and enjoyment, the right to change or improve the property, and the right to alienate the property. | What are the elements and rights of ownership of the property? | Property - Memo 10 - ANG.docx | LEGALEASE-00001369-LEGALEASE-00001370 | SA, Sub | 0.76 | 0 | 0 | 1 | 1 | |
| 15164 | Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 | 25T+137 | We think it is also clear from our precedents and the contractual nature of arbitration that parties may specify with whom they choose to arbitrate their disputes. See EEOC v. Waffle House, Inc., 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement" (emphasis added)); Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[A]n arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement"); Steelworkers, supra, at 581, 80 S.Ct. 1358 (an arbitrator "has no general charter to administer justice for a community which transcends the parties" (internal quotation marks omitted)); accord, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ( " [A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes"but only those disputes"that the parties have agreed to submit to arbitration" (emphasis added)). It falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties. Volt, 489 U.S., at 479, 109 S.Ct. 1248. | Under the Federal Arbitration Act (FAA), an implicit agreement to authorize class-action arbitration is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate, because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator, and the relative benefits of class-action arbitration are much less assured than the benefits of bilateral arbitration, giving reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration. 9 U.S.C.A. S 1 et seq. | Can parties specify with whom they choose to arbitrate their disputes? | 003754.docx | LEGALEASE-00116156-LEGALEASE-00116158 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 15165 | Aerojet-Gen. Corp. v. Am. Arbitration Ass'n, 478 F.2d 248 | 25T+111 | The use of arbitration as a means of settling disputes has been accorded specific Congressional endorsement in the Federal Arbitration Act, 9 U.S.C. " 1 et seq., and should be encouraged by the federal courts. Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir. 1942). It is apparent, therefore, that judicial review prior to the rendition of a final arbitration award should be indulged, if at all, only in the most extreme cases. The basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings. Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577 (2d Cir. 1967). To permit what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate this purpose. | Basic purpose of arbitration is speedy disposition of disputes without the expense and delay of extended court proceedings. | What is the basic purpose of arbitration? | 004140.docx | LEGALEASE-00116232-LEGALEASE-00116233 | Condensed, SA | 0.84 | 0 | 1 | 0 | 1 | |
| 15166 | Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793 | 25T+111 | Although this result may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties ... can be presumed to have been well versed in the consequences of their decision to resolve their disputes in this manner." Stroh Container, 783 F.2d at 751.Moreover, "[a]rbitration is not a perfect system of justice, nor it is [sic] designed to be."Hoffman, 236 F.3d at 462 (citation omitted). Rather, it "is designed primarily to avoid the complex, time-consuming and costly alternative of litigation." Id. | Arbitration is not perfect system of justice, nor is it designed to be; rather, it is designed primarily to avoid complex, time-consuming and costly alternative of litigation. | For what purpose is arbitration primarily designed? | 06328.docx | LEGALEASE-00078413-LEGALEASE-00078415 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 15167 | Int'l Bhd. of Elec. Workers, Local No. 367, AFL-CIO v. Graham Cty. Elec. Coop., 783 F.2d 897 | 25T+111 | Both the Union and Co-op acknowledge that the language of the arbitration clause, if operative, would cover "interest arbitration." "Interest arbitration" is arbitration over new contract terms. Interest arbitration is distinct from "grievance arbitration," which covers disputes regarding compliance with an existing agreement.Sheet Metal Workers v. Huggins Sheet Metal, Inc., 752 F.2d 1473, 1474 n. 1 (9th Cir.1985). | "Interest arbitration" is arbitration over new contract terms and is distinct from "grievance arbitration," which covers disputes regarding compliance with an existing agreement. | Differentiate between interest arbitration and grievance arbitration? | 004180.docx | LEGALEASE-00116260-LEGALEASE-00116261 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15168 | In re Apple iPhone 3G Prod. Liab. Litig., 859 F. Supp. 2d 1084 | 25T+114 | It is fundamental that "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Samson v. NAMA Holdings, LLC, 637 F.3d 915, 923 (9th Cir.2011) (citations omitted). However, it is also well established that "[a]rbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1011 (9th Cir.2004) (citation omitted).Congress created the Federal Arbitration Act ("FAA") to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate ... and place such agreements on the same footing as other contracts." Id. (citation omitted). "A party to a valid arbitration agreement may "petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement." " Id. at 1012 (quoting 9 U.S.C. " 4). The district court's "role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." See id.; see also Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir.2000). A court interpreting the scope of an arbitration provision should apply ordinary state law principles of contract construction. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, arbitration should only be denied where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Tech., Inc. v. Commc'n Workers, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582"83, 80 | Congress created the Federal Arbitration Act (FAA) to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements on the same footing as other contracts. 9 U.S.C.A. $ 1 et seq. | Is arbitration a forum for resolving disputes more expeditiously? | 004202.docx | LEGALEASE-00116271-LEGALEASE-00116273 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 15169 | Brener v. Becker Paribas Inc., 628 F. Supp. 442 | 25T+111 | There is a strong national policy favoring arbitration.See Mitsubishi, 105 S.Ct. at 3354; Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 941"43, 74 L.Ed.2d 765 (1983).Arbitration provides a prompt and efficient method of resolving disputes, without the expense, delays or complications that are inherent in litigation.See Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 856, 79 L.Ed.2d 1 (1984). | Arbitration provides prompt and efficient method for resolving disputes, without expense, delays, or complications that are inherent in litigation, and also promotes judicial efficiency in general by reducing courts' case load. | Is arbitration an efficient method of dispute resolution? | 06339.docx | LEGALEASE-00078390-LEGALEASE-00078391 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |
| 15170 | Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300 | 311H+168 | Although voluntary disclosure of attorney-client communications to a third-party ordinarily waives the privilege, the privilege will not be waived if the disclosure was to an agent "whose services are necessary for effective representation of the client's interests." Cellco P'ship v. Certain Underwriters at Lloyd's London, No. 05"3158, 2006 WL 1320067, at *2 (D.N.J. May 12, 2006). Stated another way: It has never been questioned that the privilege protects communications to the attorney's clerks and his other agents (including stenographers) for rendering his services. The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents. 8 Wigmore on Evidence " 2301, at 583 (McNaughton rev. ed.1961) (emphasis in original). The party claiming a third-party as an agent bears the burden to show the privilege has not been waived. See Cellco, 2006 WL 1320067, at *2 (quotation omitted). | Attorney-client privilege will not be waived by disclosure to agent whose services are necessary for effective representation of client's interests. | Are agents of an attorney covered by attorney-client privilege? | 07113.docx | LEGALEASE-00089144-LEGALEASE-00089145 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 15171 | Bowne of New York City v. AmBase Corp., 150 F.R.D. 465 | 311H+159 | The attorney-client privilege covers communications between the attorney and the client, as well as between two attorneys who represent the client or between the client and the attorney's agent or between the client's agent and the attorney. See, e.g., Golden Trade S.r.L. v. Lee Apparel Co., 1992 WL 367070, *3 (S.D.N.Y. Nov. 20, 1992); Martin v. Valley Nat'l Bank, 140 F.R.D. at 306. The privilege does not, however, protect an attorney's uncommunicated thoughts or memoranda to the file unless they contain otherwise privileged communications. See, e.g., Matter of Bekins Storage Co., 118 Misc.2d 173, 179, 460 N.Y.S.2d 684, 691 (Sup.Ct.1983), rev'd in part on other gds., 95 A.D.2d 655, 463 N.Y.S.2d 213 (1st Dep't 1983), mod. and aff'd, 62 N.Y.2d 324, 476 N.Y.S.2d 806, 465 N.E.2d 345 (1984). Accord, e.g., Golden Trade S.r.L. v. Lee Apparel Co., 1992 WL at *6 (citing Natta v. Zletz, 418 F.2d at 637 n. 3). | Under New York law, attorney-client privilege covers communications between attorney and client, as well as between two attorneys who represent client or between client and attorney's agent or between client's agent and attorney. McKinney's CPLR 4503. | Are agents of a client covered by attorney-client privilege? | 005298.docx | LEGALEASE-00116207-LEGALEASE-00116208 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 15172 | Levy v. Senate, 34 A.3d 243 | 311H+146 | Similarly, attorney fee agreements and billing records are generally subject to disclosure in Pennsylvania. Thus, our Supreme Court in Commonwealth v. Chmiel, 585 Pa. 547, 599, 889 A.2d 501, 531 (2005), a capital murder case, agreed with the trial court that "disclosure of a fee agreement between an attorney and client does not reveal a confidential communication." The Court held that "[b]ecause the [prior attorney's] testimony regarding the fee agreement ... does not disclose strategy or otherwise divulge confidential information, it is not subject to the attorney-client privilege." Id. at 599, 889 A.2d at 532. | Disclosure of a fee agreement between an attorney and client does not reveal a confidential communication and, therefore, is not subject to the attorney-client privilege. | Is a fee agreement a confidential communication? | 005306.docx | LEGALEASE-00116218-LEGALEASE-00116219 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15173 | Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673 | 25T+111 | The ethical obligations of arbitrators can be understood only by reference to the fundamental differences between adjudication by arbitrators and adjudication by judges and jurors. No one is forced to arbitrate a commercial dispute unless he has consented by contract to arbitrate. The voluntary nature of commercial arbitration is an important safeguard for the parties that is missing in the case of the courts. See Corey v. New York Stock Exchange, 691 F.2d 1205, 1210 (6th Cir.1982). Courts are coercive, not voluntary, agencies, and the American people's traditional fear of government oppression has resulted in a judicial system in which impartiality is prized above expertise. Thus, people who arbitrate do so because they prefer a tribunal knowledgeable about the subject matter of their dispute to a generalist court with its austere impartiality but limited knowledge of subject matter. "The professional competence of the arbitrator is attractive to the businessman because a commercial dispute arises out of an environment that usually possesses its own folkways, mores, and technology. Most businessmen interviewed contended that commercial disputes should be considered within the framework of such an environment. No matter how determinedly judge and lawyer work to acquire an understanding of a given business or industry, they cannot hope to approximate the practical wisdom distilled from 30 or 40 years of experience." American Management Ass'n, Resolving Business Disputes 51 (1965). | People who arbitrate do so because they prefer a tribunal knowledgeable about the subject matter of their dispute to a generalist court with its austere impartiality but limited knowledge of the subject matter. | Why do parties prefer to arbitrate? | Alternative Dispute Resolution - Memo 22 - JS.docx | ROSS-003284220-ROSS-003284222 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 15174 | In re Bridge Construction Services of Florida, 39 F. Supp. 3d 373 | 354+209(1) | Under the Limitation of Liability Act, which was originally enacted in 1851 and was last amended in 2006, see Pub. L. 109-304, " 6, Oct. 6, 2006, 120 Stat. 1485, 1514, "the liability of the owner of a vessel for any claim, debt, or liability . . . shall not exceed the value of the vessel and pending freight," 46 U.S.C. " 30505(a), provided that such claims, debts, or liabilities "aris[e] from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner," except otherwise excluded by law, id. " 30505(b). "The Act thus protects the owner of a vessel from unlimited vicarious liability for damages caused by the negligence of his captain or crew." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 244 (2d Cir. 2014). For purposes of the limitation of liabilities, "the term 'owner' includes a charterer that mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement." 46 U.S.C. " 30501. | A vessel owner has no right to seek exoneration under Limitation of Liability Act if the owner's right to limitation of liability in the federal court is adequately protected; such protection may include stipulation that the total claim for damages will not exceed the value of the vessel, or that any claim of res judicata bearing on the limitation of liability before the federal court is waived. 46 U.S.C.A. S 30505(a). | Can the liability of a vessel owner exceed the value of the vessel? | 004078.docx | LEGALEASE-00116311-LEGALEASE-00116313 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 15175 | Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, 697 F.3d 59 | 16+26 | No federal appeals court has ever squarely applied Skelly Oil to an analysis of admiralty jurisdiction. In some respects, admiralty jurisdiction is much different from the other two bases for federal subject-matter jurisdiction. For one thing, the well-pleaded complaint rule, the conceptual backbone of Skelly Oil, is partially inapplicable in admiralty. See Fed. R. Civ. P. 9(h). Rule 9(h) provides that, if a claim for relief falls within the federal courts' admiralty jurisdiction, but is also within the court's subject-matter jurisdiction on some other ground"oftentimes, diversity of citizenship, see, e.g., Bodden v. Osgood, 879 F.2d 184, 186 (5th Cir. 1989) a plaintiff must explicitly designate the claim as an admiralty claim or else forego admiralty's special procedures and remedies, see Continental Casualty Co. v. Anderson Excavating & Wrecking Co., 189 F.3d 512, 517 (7th Cir. 1999). Only if admiralty is the sole possible jurisdictional basis is the Rule 9(h) designation unnecessary. See Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1547 (5th Cir. 1991). Second, because Skelly Oil is a doctrine of federal-question jurisdiction, a major part of the usual inquiry under Skelly Oil is determining whether the hypothetical "mirror image" coercive suit would be invoking state law or federal and whether in such a suit the declaratory judgment plaintiff would be asserting a "federal defense." The notions of "state-law claims" and "federal defenses" have no analog in admiralty, for once a federal court exercises admiralty jurisdiction, only federal maritime law"generally federal common law"applies. Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc., 164 F.3d 123, 126 (2d Cir. 1999); see also, e.g., S. Pac. Co. v. Jensen, 244 U.S. 205, 215, 37 S. Ct. 524, 61 L. Ed. 1086 (1917), superseded by statute as stated in Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Perini N. River Assocs., 459 U.S. 297, 306, 103 S. Ct. 634, 74 L. Ed. 2d 465 (1983); see generally The Lottawanna, 88 | A plaintiff must explicitly designate a claim as an admiralty claim or else forego admiralty's special procedures and remedies; only if admiralty is the sole possible jurisdictional basis is the designation unnecessary. Fed.Rules Civ.Proc.Rule 9(h), 28 U.S.C.A. | What happens when a claim for relief falls within the federal courts' admiralty jurisdiction and also within the court's subject-matter jurisdiction? | Admiralty Law - Memo 24 - JS.docx | ROSS-003286139-ROSS-003286141 | Condensed, Order, SA, Sub | 0.91 | 1 | 1 | 1 | 1 | 1 |
| 15176 | Pawn 1st v. City of Phoenix, 239 Ariz. 539 | 414+1006 | The Board "has no powers except those granted by the statutes creating it" and "its power is restricted to that granted by the zoning ordinance in accordance with the statute." Arkules, 151 Ariz. at 440, 728 P.2d 657. The Board has no jurisdiction to act contrary to law. Id. If the Board's decision exceeds the scope of its powers, it is "ultra vires and void." Id. (quoting Applestein v. Osborne, 156 Md. 40, 42, 143 A. 666 (App.1928)). | A zoning board has no powers except those granted by the statutes creating it, and its power is restricted to that granted by the zoning ordinance in accordance with the statute. A.R.S. S 9-462.06. | Do zoning boards have powers other than those granted by the zoning ordinance? | 06364.docx | LEGALEASE-00078375-LEGALEASE-00078376 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15177 | Ancient Coin Collectors Guild v. U.S. Customs & Border Prot., Dep't of Homeland Sec., 801 F. Supp. 2d 383 | 393+254 | Under the CPIA, Congress assigned to the President various responsibilities, from publishing notice of a state party request, 19 U.S.C. " 2602(f)(1), to determining whether factual prerequisites for entering an Article 9 agreement have been met, id. " 2602(a)(1); from negotiating and entering into an Article 9 agreement with the requesting state party, id. " 2602(a)(2), to submitting a report to Congress with a description of particular import restrictions. Id. " 2602(g). As detailed above, the President has since delegated the responsibilities relevant here to the Assistant Secretary. ACCG seeks APA review of several of these actions. Judicial review under the APA, however, is only available with respect to "agency" actions. See 5 U.S.C. " 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). The President is not an "agency" within the meaning of the APA. Franklin, 505 U.S. at 801, 112 S.Ct. 2767. As the Supreme Court explained:The President is not explicitly excluded from the APA's purview, but he is not explicitly included, either. Out of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA. We would require an express statement by Congress before assuming it intended the President's performance of his statutory duties to be reviewed for abuse of discretion.Id. at 800"801, 112 S.Ct. 2767. Thus, presidential actions "are not reviewable for abuse of discretion under the APA." Id. at 801, 112 S.Ct. 2767. | The President is not an "agency" within the meaning of the Administrative Procedure Act (APA); as a result, presidential actions are not reviewable for abuse of discretion under the APA. 5 U.S.C.A. S 702. | Are presidential actions reviewable for abuse of discretion under the Administrative Procedure Act? | 004274.docx | LEGALEASE-00116573-LEGALEASE-00116575 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15178 | LaPlace v. Briere, 404 N.J. Super. 585 | 50+1 | A bailment may be created by contract, either express or implied, or by operation of law or statute. Cerreta v. Kinney Corp., 50 N.J.Super. 514, 517, 142 A.2d 917 (App.Div.1958). A bailment arises when a person leaves his chattel on the premises of another "if the latter is given primary control of the chattel for the time being." Moore's Trucking Co. v. Gulf Tire & Supply Co., 18 N.J.Super. 467, 469-70, 87 A.2d 441 (App.Div.) (listing as examples of bailments: "jewelry checked with a swimming pool attendant; diamonds delivered to a retail jeweler "on memorandum" for sale; automobile placed in shop to be washed; airplane stored in a hangar," (citations omitted)), certif. denied, 10 N.J. 22, 89 A.2d 306 (1952); see also State v. Goodmann, 390 N.J.Super. 259, 266-67, 915 A.2d 79 (App.Div.2007) (holding that film left with a store for developing gave rise to a bailment); Jasphy v. Osinsky, 364 N.J.Super. 13, 15, 18, 834 A.2d 426 (App.Div.2003) (noting that a bailment arose when plaintiff left her three fur coats with defendant for storage and cleaning). A bailment has been explained in the following way:A bailment is created by the delivery of personal property by one person to another in trust for a specific purpose, pursuant to an express or implied contract to fulfill that trust. Inherent in the bailment relationship is the requirement that the property be returned to the bailor, or duly accounted for by the bailee, when the purpose of the bailment is accomplished, or that it be kept until it is reclaimed by the bailor.[8A Am.Jur.2d Bailments " 1 (1997).] | A bailment may be created by contract, either express or implied, or by operation of law or statute. | Can a contract of bailment be created by operation of law? | Bailment - Memo 11 - ANG.docx | ROSS-003301413-ROSS-003301415 | Condensed, SA | 0.94 | 0 | 1 | 0 | 1 | |
| 15179 | Sierra Club v. Illinois Pollution Control Bd., 2011 IL 110882 | 1.49E+18 | For several reasons, we conclude that the Board Order is not a "rule or regulation promulgated by the Board." For starters, section 28.1 repeatedly draws a distinction between rules and regulations on the one hand, and adjusted standards on the other. For example, section 28.1(a) states that, "[a]fter adopting a regulation of general applicability, the Board may grant, in a subsequent adjudicatory determination, an adjusted standard for persons who can justify such an adjustment." (Emphasis added.) 415 ILCS 5/28.1(a) (West 2008). Clearly, then, the adjusted standard is not itself the regulation promulgated by the Board; rather, it is an individualized exception to that regulation. Likewise, section 28.1(b) states that "[i]n adopting a rule of general applicability, the Board may specify the level of justification required of a petitioner for an adjusted standard." (Emphasis added.) 415 ILCS 5/28.1(b) (West 2008). Again, this language confirms that an adjusted standard is not itself a "rule of general applicability," but rather something separate and distinct from such a rule. Finally, section 28.1(a) specifically states that "[t]he rule-making provisions of the Illinois Administrative Procedure Act and Title VII of [the] Act shall not apply to [adjusted standard] determinations." (Emphasis added.) 415 ILCS 5/28.1(a) (West 2008). If the standards and procedures governing the Board's rulemaking authority do not apply to the adjudication of adjusted standard petitions, then necessarily the Board is not engaged in rulemaking when it adjudicates such a petition. | State Pollution Control Board performs both quasi-legislative and quasi-judicial functions; granting of an adjusted standard is an adjudicative determination, that is, quasi-judicial in nature, while the adoption of a rule or regulation is legislative in nature. S.H.A. 415 ILCS 5/28.1(a). | When does the Pollution Control Board grant an adjusted standard to a person in an adjudicatory determination? | Environmental Law - Memo 51 - AKA.doc | LEGALEASE-00002354-LEGALEASE-00002355 | Condensed, SA, Sub | 0.82 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15180 | Ogle Cty. Bd. on Behalf of Cty.of Ogle v. Pollution Control Bd., 272 Ill. App. 3d 184 | 15A+1104 | We agree with Carmichael and the PCB. Unlike a court, an administrative agency is a statutory creation, limited in its authority by statute. (Newkirk v. Bigard (1985), 109 Ill.2d 28, 37, 92 Ill.Dec. 510, 485 N.E.2d 321.) To the extent that an agency acts outside its statutory authority, it acts without jurisdiction. (Business & Professional People for the Public Interest v. Illinois Commerce Comm'n (1989), 136 Ill.2d 192, 243, 144 Ill.Dec. 334, 555 N.E.2d 693.) Although the term "jurisdiction" is not strictly applicable to an administrative body, it is used to designate the authority of the administrative body to act. (Newkirk, 109 Ill.2d at 37, 92 Ill.Dec. 510, 485 N.E.2d 321.) In the administrative law context, therefore, the term "jurisdiction" has three aspects: (1) personal jurisdiction (i.e., the agency's authority over the parties and intervenors involved in the proceedings); (2) subject-matter jurisdiction (i.e., the agency's power over the general class of cases to which the particular case belongs); and (3) an agency's scope of authority under its statute. (Business & Professional People, 136 Ill.2d at 243, 144 Ill.Dec. 334, 555 N.E.2d 693.) This third aspect may properly be considered the inherent power of an agency to make or enter the particular order involved. (See Business & Professional People, 136 Ill.2d at 243"44, 144 Ill.Dec. 334, 555 N.E.2d 693; City of Chicago v. Fair Employment Practices Comm'n (1976), 65 Ill.2d 108, 112, 2 Ill.Dec. 711, 357 N.E.2d 1154.) It is this aspect of the County Board's jurisdiction which we address in the case at bar. | Unlike court, administrative agency is statutory creation, limited in its authority by statute, and to extent that agency acts outside its statutory authority, it acts without jurisdiction. | "Is the authority of a statutory administrative agency, like the Pollution Control Board, limited by its enabling statute?" | Environmental Law - Memo 37 - AKA.doc | LEGALEASE-00002479-LEGALEASE-00002480 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15181 | Brecciaroli v. Connecticut Comm'r of Envtl. Prot., 168 Conn. 349 | 1.49E+04 | The plaintiff relies on Bartlett v. Zoning Commission, supra, and Dooley v. Town Plan & Zoning Commission, supra, and to support his claim that the denial of the application for a permit to fill 5.3 acres of wetland resulted in a taking of his land for which compensation must be made. There can be no question that the plaintiff's wetland would have greater value to him if it were filled. It must be presumed, however, that the defendant's denial of the application was based on the standards set forth in s 22a-33 of the General Statutes, which requires the hearing officer to "consider the effect of the proposed work with reference to the public health and welfare, marine fisheries, shell-fisheries, wildlife, the protection of life and property from flood, hurricane and other natural disasters, and the public policy set forth in sections 22a-28 to 22a-35, inclusive.'4 See Foran v. Zoning Board of Appeals, 158 Conn. 331, 336, 260 A.2d 609. Those standards relate to the prevention or minimization of public harm. The Environmental Protection Act of 1971 declared that "there is a public trust in the air, water and other natural resources of the state of Connecticut." General Statutes s 22a-15. The "evils' of unreasonable pollution, impairment or destruction of our natural resources are proper subjects for regulation under the police power. See Greenwich v. Connecticut Transportation Authority, 166 Conn. 337, 348 A.2d 596; Potomac Sand & Gravel Co. v. Governor, 266 Md. 358, 373, 293 A.2d 241, cert. denied, 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 490. "The financial effect on a particular owner must be balanced against the health, safety and welfare of the community." Samp Mortar Lake Co. v. Town Plan & Zoning Commission, 155 Conn. 310, 315, 231 A.2d 649, 652. "Unless there is a clear abuse of discretion . . . which results in an unwarranted discrimination against the property owner or an unreasonable deprivation of his property rights, the welfare of the public, rather than | The "evils" of unreasonable pollution, impairment or destruction of our natural resources are proper subjects for regulation under the police power. C.G.S.A. S 22a-28; C.G.S.A.Const. art. 1, S 11. | Does prevention of pollution come under the purview of the police power? | Environmental Law - Memo 8 -JS.docx | LEGALEASE-00002734-LEGALEASE-00002736 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 15182 | Weiss v. Statewide Grievance Comm., 227 Conn. 802 | 46H+1163(5) | This court established the standard of judicial review of statewide grievance committee decisions in Pinsky v. Statewide Grievance Committee, 216 Conn. 228, 234"35, 578 A.2d 1075 (1990). Although the statewide grievance committee is not an administrative agency; Sobocinski v. Statewide Grievance Committee, 215 Conn. 517, 526, 576 A.2d 532 (1990); the court's review of its conclusions is similar to the review afforded to an administrative agency decision. Pinsky v. Statewide Grievance Committee, supra. Practice Book " 27N(f), adopted after Pinsky to govern appeals from decisions of the statewide grievance committee to issue a reprimand, sets forth the applicable standard of review: "Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) [i]n violation of constitutional, Practice Book or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion...." | Judicial review of statewide grievance committee's conclusions is similar to review afforded to administrative agency decision; judicial role is limited to reviewing record to determine if facts as found are supported by evidence contained within record and whether conclusions that follow are legally and logically correct. Practice Book 1978, S 27N(f). | Is statewide grievance committee (SGC) an agency under the Administrative Procedure Act? | 004594.docx | LEGALEASE-00116966-LEGALEASE-00116967 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 15183 | Atl. Contracting & Material Co. v. Adcock, 161 N.C. App. 273 | 50+5 | This Court has previously held that "[a] bailment is created upon the delivery of possession of goods and the acceptance of their delivery by the bailee." Flexlon Fabrics, 39 N.C.App. at 447, 250 S.E.2d at 726. "Delivery" is defined as the bailor's "relinquishing exclusive possession, custody, and control to the bailee...." Id. | For purposes of bailment being created by delivery of possession of goods and acceptance of delivery by bailee, "delivery" is defined as bailor's relinquishing exclusive possession, custody, and control to bailee. | What is delivery in a bailment? | 004632.docx | LEGALEASE-00117023-LEGALEASE-00117024 | Condensed, SA, Sub | 0.34 | 0 | 1 | 1 | 1 | 1 |
| 15184 | S/M Indus. v. Hapag-Lloyd A.G., 586 So. 2d 876 | 50+16 | "A conversion may occur where there is a wrongful delivery to a third party of personal property by a bailee resulting in its loss to the owner of the property. A delivery to an unauthorized person is as much a conversion as would be the sale of property, or an appropriation of it to the bailee's own use. In such a case neither a sincere or apparently well-founded belief that the delivery to an unauthorized person was right nor the exercise of any degree of care constitutes a defense even to a gratuitous bailee. Treadwell Ford, Inc. v. Wallace, 49 Ala.App. 308, 271 So.2d 505 (1973). | Conversion may occur where there is wrongful delivery of personal property by bailee to third party, resulting in its loss to owner of property; neither sincere or apparently well-founded belief that delivery was right nor exercise of any degree of care constitutes defense even to gratuitous bailee. | When does conversion occur in a bailment? | Bailment - Memo 46 - RK.docx | ROSS-003295880-ROSS-003295881 | Condensed, SA, Sub | 0.49 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15185 | United States v. Yokley, 542 F.2d 300 | 164T+4 | The limited purpose of the Hobbs Anti-Racketeering Act was to amend the Anti-Racketeering Act of 19342 without affecting the scope of the 1934 Act. Section 2(a) of the Act of 1934 made it unlawful to obtain or attempt to obtain money or property by the use of force or threat of force in connection with any act affecting interstate commerce. Specifically excepted from this section was "the payment of wages by a bona-fide employer to a bona-fide employee." The original bill (S. 2248) which was enacted as the 1934 Act and which passed the Senate without debate, contained no specific mention of labor or wages, but embodied a general prohibition against violence or coercion in connection with racketeering and interstate commerce. Subsequently, when fear was expressed by the American Federation of Labor that S. 2248 might result in serious injury to the legitimate activities of labor, the bill was redrafted to embody the exception. 78 Cong.Rec. 5859 (1934) (remarks of Sen | Limited purpose of Hobbs Anti-Racketeering Act was to amend Anti-Racketeering Act of 1934 without affecting scope of 1934 Act, and by such amendment to curb the kind of labor racketeering reflected by a judicial decision, and to eliminate racketeering in the United States. 18 U.S.C.A. S 1951. | Was the purpose of the Hobbs Act to amend the Anti Racketeering Act? | 005050.docx | LEGALEASE-00117048-LEGALEASE-00117049 | Condensed, SA, Sub | 0.7 | 0 | 1 | 1 | 1 | 1 |
| 15186 | Chorpenning v. United States, 11 Ct. Cl. 625 | 25T+112 | A submission is a contract, by which parties agree to refer matters which are in dispute, difference, or doubt between them, to be finally decided by the award of judges named by the parties, and called arbitrators. (Morse on Arbitration, 36.) And in order to clothe a person with the authority of an arbitrator, the parties must mutually agree to be bound by the decision of the person chosen to determine the matter in controversy. (Gordon v. United States, 7 Wall., 188.) An arbitrament and award which concludes one party only is certainly an anomaly in the law. (Ibid.) | To clothe a person with the authority of an arbitrator, the parties must mutually agree to be bound by his decision of the matter in controversy. An arbitrament which concludes only one of the parties would be an anomaly in the law. | How can a person get the authority of an arbitrator? | 005243.docx | LEGALEASE-00116805-LEGALEASE-00116806 | Condensed, SA, Sub | 0.6 | 0 | 1 | 1 | 1 | 1 |
| 15187 | Willowbrook Dev. Corp. v. Illinois Pollution Control Bd., 92 Ill. App. 3d 1074 | 149E+682 | Although Willowbrook and other parties stand to suffer hardship if the Board's decision is upheld, we nevertheless are unable to conclude from a review of the record that the decision of the Board is against the manifest weight of the evidence. Section 35 of the Environmental Protection Act (Ill.Rev.Stat.1979, ch. 1111/2, par. 1035) provides that the Board may grant a variance when "compliance with any rule or regulation, requirement or order of the Board would impose an arbitrary or unreasonable hardship." After reviewing the testimony of the E.P.A. and Willowbrook, the Board balanced the likely hardship to Willowbrook if the variance were denied against the likely hardship to the public if the variance were granted. The Board concluded that denial of a variance for the 52 units expected to be completed in 1980 would result in an unreasonable hardship but that the findings did not justify a grant of a variance for all 152 proposed units "at this time." The Board further concluded that granting a variance for only those 52 units would "allow time for the Agency and the Board to determine the likely future of the Marionbrook Plant while Willowbrook continues construction in a limited manner | Since Pollution Control Board acted unconditionally in granting variance from ban on future connections between sanitary drainage outlets and sewer for 52 of developer's 152 proposed units, while unconditionally denying the variance for the remaining 100 units and since mere fact that Board granted partial variance did not give rise to imposition of a condition on the variance within meaning of Environmental Protection Act, Board's decision to deny variance for 100 of the units was a quasijudicial decision reviewable under the manifest weight of evidence test. S.H.A. ch. 1111/212, SS 1035, 1036. | Can the Pollution Control Board grant a variance if a regulation imposes an arbitrary or unreasonable hardship on an individual polluter under Section 35 of the Environmental Protection Act? | 005031.docx | LEGALEASE-00117183-LEGALEASE-00117184 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 15188 | Walls v. Oxford Mgmt. Co., 137 N.H. 653 | 233+1252 | While we can state without reservation that landlords owe a general duty of reasonable care to their tenants, our efforts at resolving the first question presented are complicated by the competing common law rule that private citizens ordinarily have no duty to protect others from criminal attacks. See generally Restatement (Second) of Torts, supra " 314; Keeton, supra " 33, at 201; Kline v. 1500 Massachusetts Avenue Apartment Corp., 439 F.2d 477, 481 (D.C.Cir.1970). This rule is grounded in the fundamental unfairness of holding private citizens responsible for the unanticipated criminal acts of third parties. "Under all ordinary and normal circumstances, in the absence of any reason to expect the contrary, the actor may reasonably proceed upon the assumption that others will obey the law.... Although [crimes] do occur ... they are still so unlikely that the burden of taking continual precautions against them almost always exceeds the apparent risk." Keeton, supra " 33, at 201. In keeping with this rule, courts have largely refused to hold landlords to a general duty to protect tenants from criminal attack. See, e.g., Aaron v. Havens, 758 S.W.2d 446, 448 (Mo.1988); Rowe v. State Bank of Lombard, 125 Ill.2d 203, 216"17, 126 Ill.Dec. 519, 525, 531 N.E.2d 1358, 1364 (1988); Brichacek v. Hiskey, 401 N.W.2d 44, 48 (Iowa 1987); Scott v. Watson, 278 Md. 160, 166, 359 A.2d 548, 552 (1976); Gulf Reston, Inc. v. Rogers, 215 Va. 155, 157, 207 S.E.2d 841, 844 (1974). We agree that as a general principle, landlords have no duty to protect tenants from criminal attack. Without question, there is much to be gained from efforts at curtailing criminal activity. Yet, we will not place on landlords the burden of insuring their tenants against harm from criminal attacks | Landlords owe general duty of reasonable care to their tenants but, as general principle, have no duty to protect tenants from criminal attack. | Does the landlord have a general duty to protect a tenant from criminal attacks? | Landlord and Tenant - Memo 03 - RK.docx | ROSS-003285577-ROSS-003285579 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15189 | United States v. Pranno, 385 F.2d 387 | 164T+4 | Defendants argue that this is not as immediate or direct an effect upon interstate commerce as Congress intended to proscribe. They contend the statute forbids only such activity as obstructs, delays, and affects the actual transportation of articles or commodities. They cite statements in congressional debate in 1946, prior to enactment of the so-called Hobbs Act, indicating a purpose to deal with interference by members of labor unions with motor vehicles engaged in interstate commerce. The quoted statements must, however, be viewed in the context of expanding the coverage of legislation already in effect so as to cover activities which the Supreme Court had previously held were not within the former act.The Supreme Court has made it clear that the statute is to be construed broadly and is not limited to conduct which directly and immediately obstructs a particular movement of goods in interstate commerce. Extortion by threat to disrupt a local activity the stoppage of which would in turn result in stoppage of interstate shipment of raw materials essential for that activity falls within the act. The statute seems to be read as not only prohibiting the obstruction of commerce by extortion, but also prohibiting extortion by any threat, the carrying out of which would obstruct commerce. We have no doubt of its coverage here. | Statute providing for punishment of anyone who in any way or degree obstructs, delays or affects commerce or movement of any article or commodity in commerce by extortion or conspires so to do is to be construed broadly and is not limited to conduct which directly and immediately obstructs a particular movement of goods in interstate commerce. 18 U.S.C.A. S 1951. | Did Congress intend the Hobbs Act to be broadly construed? | 005066.docx | LEGALEASE-00117185-LEGALEASE-00117187 | Condensed, SA, Sub | 0.73 | 0 | 1 | 1 | 1 | 1 |
| 15190 | Longo v. Tauriello, 201 Misc. 35 | 233+1841 | In the case at bar, the defendant landlord made an application to the Temporary State Housing Rent Commission for permission to subdivide plaintiffs' apartment and in connection with that application made the alleged libelous statements. The rent commission is an administrative agency of the government engaged in establishing "maximum rents for housing accommodations'. Under chapter 250 of the Laws of 1950 of the State of New York, McK. Unconsol. Laws, " 8581 et seq., the commission is vested with general powers and duties, to adopt, promulgate, amend or rescind such rules, regulations and orders as it may deem necessary or proper to effectuate the aforesaid purposes, "including practices relating to recovery of possession * * * " and to "provide regulations for the making of individual adjustments in those cases where substantial and unavoidable increases in property taxes or other operating expenses exclusive of allowances for depreciation, obsolescence and reserves shall result in operating costs exceeding rental income" and in those cases where "severe hardship will result because the maximum rent for any housing accommodation is substantially higher or lower than the rents otherwise generally prevailing in the same area for substantially similar housing accommodations' section 4. The commission is also authorized to make such studies and investigations, to conduct such hearings and to obtain such information as the commission deems necessary or proper in prescribing any regulation or order "under this act or in the administration and enforcement of this act" section 5. It is also to be noted that "any proceedings' under the act "may be limited by the commission to the filing of affidavits, or other written evidence, and the filing of briefs." The statute provides further for a judicial review of the regulations or orders of the commission pursuant to article 78 of the Civil Practice Act. | The Temporary State Housing Rent Commission is an "administrative agency" of the government engaged in establishing maximum rents for housing accommodations and is not a "judicial body" or a tribunal having the judicial attributes of a court. McK.Unconsol.Laws, SS 8581 et seq., 8584, 8586. | Is a rent commission an administrative agency of the government? | Administrative Law - Memo 156 - RK.docx | ROSS-003299564-ROSS-003299565 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 15191 | Com. v. K.M., 452 Pa. Super. 7 | 352H+21(2) | Thus, as the evidence at trial, viewed in the light most favorable to the Commonwealth, demonstrated that appellant used her lips to penetrate her daughter's sex organs, we find that such behavior supports a conviction for rape under 18 Pa.C.S. " 3121 and our Hitchcock progeny interpreting the statute. Moreover, as the victim was a minor and a descendant of appellant, the evidence also was sufficient to support appellant's convictions for statutory rape and incest. See 18 Pa.C.S. " 3122 (statutory rape occurs when "[a] person who is 18 years of age or older ... engages in sexual intercourse with another person not his spouse who is less than 14 years of age"); 18 Pa.C.S. " 4302 (incest occurs when "[a] person ... knowingly ... has sexual intercourse with ... a[ ] descendant...."). Consequently, as appellant's sufficiency contentions lack arguable merit, we dismiss this claim. See Commonwealth v. Correa, 437 Pa.Super. 1, 648 A.2d 1199 (1994) (counsel cannot be ineffective for failing to file groundless challenge to sufficiency of the evidence claim), appeal denied, 540 Pa. 617, 657 A.2d 487 (1995). | Female defendant could be convicted of rape, statutory rape, and incest of another female based on evidence that defendant used her lips to penetrate her minor daughter's sex organs. 18 Pa.C.S.A. SS 3121, 4302; S 3122 (Repealed). | Can incest be committed with a minor? | 000435.docx | LEGALEASE-00117426-LEGALEASE-00117427 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 15192 | Harlan E. Moore Charitable Tr. v. United States, 812 F. Supp. 130 | 233+501 | The government contends that the parties are not actually landlord and tenant but in fact are partners or joint venturers. The government points to the shared cost of seed, fertilizer, herbicides and drying as evidence of the joint venture. The most important element in determining whether a landlord-tenant relationship or joint venture exists is the intention of the parties. Petry v. Chicago Title & Trust Co., 51 Ill.App.3d 1053, 1057, 9 Ill.Dec. 951, 367 N.E.2d 385 (2d Dist.1977). The burden of proving the existence of a joint venture is on the party who claims the relationship exists. Id. | Under Illinois law, most important element in determining whether landlord-tenant relationship or joint venture exists is intention of parties, and burden of proving existence of joint venture is on party who claims relationship exists. | Is intention an element to determine the relationship between a landlord and a tenant? | 000487.docx | LEGALEASE-00117434-LEGALEASE-00117435 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 15193 | Ayres v. Hadaway, 303 Mich. 589 | 46H+9 | We do not agree with Mr. Ayres that the practive of law is a property right. We think it a privilege to those who attain certain standards of learning and character. In Cohen v. Wright, 22 Cal. 293, it was held that the right to practice law is not a property right. In State ex rel. Mackintosh v. Rossman, 53 Wash. 1, 101 P. 357, 358, 21 L.R.A.,N.S., 821, 17 Ann.Cas. 625, the court said: "While it is true that the practice of law is a lawful occupation in itself, it is not a natural right, or a right guaranteed by the Constitution. It is a privilege granted by the state, and may be surrounded with whatever restrictions the Legislature may in reason prescribe."Mr. Ayres next urges that the act creating the State Bar of Michigan violates the due process clause of the United States Constitution. | The practice of law is not a "property right" or a "natural right" or right guaranteed by constitution, but a "privilege" to those who attain certain standards of learning and character. | Is the practice of law a privilege or a property right? | 005157.docx | LEGALEASE-00117363-LEGALEASE-00117364 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15194 | State v. Graves, 74 N.C. 396 | 315+51 | But the case turns upon the question whether the rails thus taken from the fence and removed, by one continuous act, became personal property thereby, so as to support this indictment. In the State v. Burt and others, 64 N. C. Rep., 619, the defendants found a nugget of gold on the land of another, on the top of a rock pile and separated from the view. After consultation among themselves, they appropriated it to their own use. It was held to be a part of the realty, and the taking and carrying away, being one continuous act, it did not become personalty so as to be the subject of larceny. 2 Russ. on Cr., 62. | Rails, when made up into a fence upon the land, become a part of the realty. | "Does a rail, when made up into a fence upon the land, become a part of the realty?" | 005159.docx | LEGALEASE-00117365-LEGALEASE-00117366 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15195 | Peter Kiewit Sons' v. Douglas Cty., 172 Neb. 710 | 371+2232 | In Massey-Harris Co. v. Douglas County, 143 Neb. 547, 10 N.W.2d 346, 347, this court said: "The general rule is that the situs of intangible personal property for the purposes of taxation is the domicile of the owner. This rule is usually bottomed on the legal maxim "mobilia sequuntur personam"; i. e., "movables follow the person," or, as sometimes stated, the situs of personal property is the domicile of the owner.' See, also, Aachen & Munich Fire Inc. Co. v. City of Omaha, 72 Neb. 518, 101 N.W. 3. The Legislature does have the power to separate the situs of personal property from the domicile of the owner where the personal property is actually within the state. Aachen & Munich Fire Ins. Co. v. City of Omaha, supra. There are no exceptions to the general rule that apply to this case. The plaintiff is domiciled in Nebraska and its personal property has a situs for tax purposes in the domiciliary state. State v. Burton Swartz Cypress Co., 190 La. 947, 183 So. 226. The stock certificates in subsidiary and affiliated corporations owned by plaintiff as the parent corporation are properly taxable in Douglas County, Nebraska, where the plaintiff is domiciled. They are "in this state" within the meaning of section 77-201.01, R.R.S.1943. | Bank accounts of corporation kept in bank outside of state of corporation's domicile are taxable in state of domicile unless shown to be within exception to general rule that intangible personal property has situs of domicile of owner for tax purposes. | What is the general rule regarding the location of intangible personal property? | 005163.docx | LEGALEASE-00117369-LEGALEASE-00117370 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 15196 | Barnette v. Grizzly Processing, 809 F. Supp. 2d 636 | 279+9 | The Plaintiffs maintain that Frasure Creek and Grizzly should be held liable for trespass and nuisance. Claims for trespass and nuisance both require that the Plaintiffs establish causation, i.e., that the Defendants caused the harm. Dickens v. Oxy Vinyls, LP, 631 F.Supp.2d 859, 865 (W.D.Ky.2009). Viewing the evidence in the light most favorable to the non-moving party, the Plaintiffs survive summary judgment on the issue of causation. | Under Kentucky law, claims for trespass and nuisance both require that plaintiffs establish causation, i.e., that the defendants caused the harm. | Does a claim for trespass require causation? | 000713.docx | LEGALEASE-00117539-LEGALEASE-00117540 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 15197 | Muhammad v. United States, 884 F. Supp. 2d 306 | 393+905 | The government argues that the trespass claim should be dismissed because trespass is a strict liability tort under Pennsylvania law and the FTCA has not waived the United States' immunity as to strict liability claims. The first proposition comes from the Third Circuit's decision in Boring v. Google Inc. See 362 Fed.Appx. 273, 280 (3d Cir.2010) (applying Pennsylvania law). While Boring is non-precedential, its reasoning is congruent with the definition of trespass under Pennsylvania law. The Pennsylvania Supreme court, adopting the Restatement, has defined trespass as an "unprivileged, intentional intrusion upon land in possession of another." Kopka v. Bell Tel. Co., 371 Pa. 444, 91 A.2d 232, 235 (1952); see also Restatement (Second) of Torts " 232, 158(a) (stating that one is subject to liability to another for trespass if he intentionally enters land in the possession of the other). Because a defendant need not have the purpose or intent of committing an unlawful trespass, trespass is appropriately defined as a strict liability tort. See Restatement (Second) of Torts " 163 cmt. | Federal Tort Claims Act (FTCA) did not waive government immunity from strict liability tort of trespass, which was alleged in occupants' complaint, which claimed that federal agents planned and authorized the entry and search of their property with the purpose of arresting a fugitive; complaint failed to allege a negligent or reckless trespass under Pennsylvania law over which court would have subject matter jurisdiction. 28 U.S.C.A. SS 1346(b), 2680(h); Restatement (Second) of Torts SS 165, 232. | Is trespass a strict liability tort? | Trespass - Memo 52- JS.docx | LEGALEASE-00004184-LEGALEASE-00004185 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 15198 | Calvert & Marsh Coal Co. v. Pass, 393 So. 2d 955 | 386+1 | This case involves numerous, separate acts of trespass on plaintiffs' land. While the initial entries may have been negligent, subsequent entries could well have been wanton. The testimony bears this out. When plaintiffs first learned of the trespass, it could well have been a negligent action. After plaintiffs had notified defendant the next day that it was trespassing, subsequent entries on the following days could be construed as wanton. Wantonness in a trespass action is established by the mere knowledge on the part of the defendant of his invasion of the plaintiff's rights. Ex parte Birmingham Realty Co., 183 Ala. 444, 63 So. 67 (1913). | Wantonness in a trespass action is established by mere knowledge on the part of the defendant of his invasion of the plaintiff's rights. | How is the element of wantonness established in a trespass action? | Trespass - Memo 9 - RK.docx | ROSS-003311187-ROSS-003311188 | Condensed, SA | 0.79 | 0 | 1 | 0 | 1 | |
| 15199 | State v. Parsley, 521 N.W.2d 44 | 203+504 | A claim of accidental discharge may establish a defense to a charge of intentional homicide. See generally State v. Boitnott, 443 N.W.2d 527, 533 (Minn.1989). Parsley, however, was not charged with an offense requiring an intent to discharge the weapon, nor did he request an accident instruction. Cf. id. (no error in failing to give accident instruction where court adequately explained that defendant charged with first degree felony murder and intentional murder had to have acted with intent to cause death) | Claim of accidental discharge may establish defense to charge of intentional homicide. | Can accidental discharge be used as a defense to the charge of intentional homicide? | 000432.docx | LEGALEASE-00117750-LEGALEASE-00117751 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 15200 | State v. McCall, 245 Iowa 991 | 253+1141 | The crime of incest is fundamentally different from rape. Code section 704.1 provides: "If any persons, being within the degrees of consanguinity or affinity in which marriages are declared by law to be void, carnally know each other, they shall be guilty of incest,." In short, incest is sexual intercourse between persons too closely related. It is comparable with adultery which is sexual intercourse between persons one or both of whom are married to third persons. | "Incest", in short, is sexual intercourse between persons too closely related, and is comparable with "adultery" which is sexual intercourse between persons one or both of whom are married to third persons. I.C.A. S 704.1. | Is incest comparable with adultery? | 000453.docx | LEGALEASE-00117722-LEGALEASE-00117723 | Condensed, Order, SA, Sub | 0.51 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15201 | State v. Farrington, 35 Wash. App. 799 | 352H+5(7) | For Mr. Farrington's equal protection claim to have merit, incest and indecent liberties must have identical elements and a violation of the incest statute must necessarily violate the indecent liberties statute. The elements of the two crimes are not identical. Incest requires proof of sexual intercourse, while indecent liberties requires proof only of sexual contact. Of the three possible ways of committing indecent liberties, two require proof of lack of consent. Consent is not an issue in an incest charge. State v. Coffey, 8 Wash.2d 504, 112 P.2d 989 (1941). Moreover, it is possible to commit the crime of incest without committing the crime of indecent liberties. For example, a defendant could engage in consensual sexual intercourse with his adult sister and violate the incest statute, but not the indecent liberties statute. Thus, we hold incest is not a special statute which supersedes indecent liberties. | Incest and indecent liberties do not have identical elements and violation of incest statute does not necessarily violate indecent liberties statute; therefore, incest is not a special statute superseding indecent liberties so as to deny defendant equal protection when he was charged with indecent liberties rather than incest. West's RCWA 9A.64.020. | Do incest and indecent liberties have identical elements? | Incest - Memo 7 - TH.docx | ROSS-003285479-ROSS-003285480 | Condensed, SA, Sub | 0.62 | 0 | 1 | 1 | 1 | 1 |
| 15202 | Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., 598 F.3d 257 | 219+39(2.15) | Pre-judgment interest must be awarded as a matter of law to prevailing parties when the damages are liquidated. Damages are liquidated when the amount in question is either agreed upon by the parties or is fixed by operation of law or the parties. See Nucor Corp. v. General Elec., Co., 812 S.W.2d 136, 141 (Ky.1991). If damages are unliquidated, the court has discretion whether to award pre-judgment interest. See Hale v. Life Ins. Co. of N. Am., 795 F.2d 22, 24 (6th Cir.1986). | Damages are "liquidated damages" under Kentucky law, for purposes of award of prejudgment interest, when the amount in question is either agreed upon by the parties or is fixed by operation of law or the parties. | What are liquidated and unliquidated damages? | 000591.docx | LEGALEASE-00117650-LEGALEASE-00117652 | Condensed, SA, Sub | 0.55 | 0 | 1 | 1 | 1 | 1 |
| 15203 | Glassey v. Cont'l Ins. Co., 176 Wis. 2d 587 | 313A+114 | Furthermore, when a plaintiff is unable to prove the elements necessary to recover under a strict liability theory, the manufacturer or seller may still be liable under a negligence theory where the plaintiff is able to prove specific negligent conduct. Vincer v. Esther Williams All-Aluminum Swimming Pool Co., 69 Wis.2d 326, 330, 230 N.W.2d 794 (1975). Strict liability and negligence are alternative theories of recovery in Wisconsin products liability cases. In this case, although the strict products liability claim was dismissed, Glassey was permitted to bring a negligence claim. The fact that the jury found no fault against DeVilbiss points out **302 the inequity that would have resulted had Glassey been able to pursue a strict products liability claim in which DeVilbiss would have been required to pay 100 percent of Glassey's damages which it did not cause. | Strict liability and negligence are alternative theories of recovery in Wisconsin products liability cases. | Is strict liability an alternative to the negligence theory of recovery? | 000661.docx | LEGALEASE-00117590-LEGALEASE-00117591 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 15204 | Gutterman v. Target Corp., 242 F. Supp. 3d 695 | 313A+113 | Under Illinois law, a plaintiff can bring a claim that a product is defectively designed through causes of action in both negligence and strict products liability. Blue v. Envtl. Eng'g, Inc., 215 Ill.2d 78, 293 Ill.Dec. 630, 828 N.E.2d 1128, 1141 (2005) (plurality opinion). A negligence-based theory focuses on the defendant's conduct, whereas a strict products liability"based theory focuses on the product at issue. Id. To prove a product is defectively designed under a negligence theory, the same common law framework applies as outside the products liability context. Calles v. Scripto"Tokai Corp., 224 Ill.2d 247, 309 Ill.Dec. 383, 864 N.E.2d 249, 270 (2007). Thus, a plaintiff must prove that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach proximately caused the plaintiff's injury; and (4) the plaintiff suffered damages. Id. (citing Ward, 143 Ill.Dec. 288, 554 N.E.2d at 226). Moreover, "[t]he crucial question in a negligent-design case is whether the manufacturer exercised reasonable care in the design of the product." Id. | Under Illinois law, a negligence-based theory of products liability focuses on the defendant's conduct, whereas a strict products liability-based theory focuses on the product at issue. | Does the negligence based theory of product liability focuses on defendant's conduct? | Products Liability - Memo 25- JS.docx | ROSS-003298035-ROSS-003298036 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 15205 | Citizens Nat. Bank of Kirksville, Mo., v. Comm'r of Internal Revenue, 122 F.2d 1011 | 315+63 | Section 23(a) allows deductions for "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property", but such deduction is limited to "property to which the taxpayer has not taken or is not taking title or in which he has no equity." It is petitioner's contention that in 1936 it had not "taken", was not "taking title", and that it had no "equity" in the property. The bank contends that it had only a leasehold interest and that, since the cost of acquiring a leasehold is an exhaustible capital investment returnable by annual deductions spread over the term of the lease (United States v. Boston & Providence R.R. Corporation, 1 Cir., 37 F.2d 670; J. Alland & Bro., Inc., v. United States, D.C., 28 F.2d 792), in order to deny the taxpayer the right to the deduction claimed it is necessary to hold that the life interest acquired from Frank Baird and the remainder acquired from Mrs. Belshe merged. We think this is a mistaken view of the interest the bank holds in the property. Whether there was a merger or not is immaterial. It is true that the bank's contract with Frank Baird is terminable upon the contingency that that the building upon the premises "is destroyed by fire or storm". But the bank had prior to 1936 also acquired all the rights of Alta Baird Belshe under the will of William T. Baird. The rights thus acquired are not terminable, and they cover the leasehold and provide against the same contingencies referred to in the contract between Frank Baird and the bank. Under the will Alta Baird Belshe is given a fee simple title upon the death of Frank Baird and in case of destruction of the building by fire or tornado prior to his death, "Alta Baird Belshe was given the right to rebuild, using the insurance money in such rebuilding, and would thereafter own the property by paying Frank Baird an amount monthly equal to the amount he had been realizing net out of the rental from the property." In case of destruction of the building | An "equitable title" is a right possessed by a person to have the legal title to property transferred to him upon the performance of specified conditions. | What is an equitable title under property law? | 000678.docx | LEGALEASE-00117600-LEGALEASE-00117604 | Condensed, SA | 0.95 | 0 | 1 | 0 | 1 | |
| 15206 | In re Rausch, 213 B.R. 364 | 92+1114 | Ferm asserts that he has a fundamental right to work in the employment of his choice, and that section 110(c) unconstitutionally burdens that right. While the right to engage in an occupation is an important right that cannot be denied without due process under the Fifth Amendment, it is not a fundamental right. See Country Classic, 847 F.2d at 596. | While right to engage in one's occupation is important right that cannot be denied without due process under the Fifth Amendment, it is not fundamental right. U.S.C.A. Const.Amend. 5. | Is a right to engage in a particular occupation a fundamental right? | Labor and Employment - Memo 1 - VP.docx | ROSS-003283625-ROSS-003283626 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15207 | Novecon Ltd. v. Bulgarian-Am. Enter. Fund, 190 F.3d 556 | 237+51(1) | District of Columbia law makes it very difficult for a plaintiff to overcome a qualified privilege. As the Court of Appeals has made clear, the common-law malice necessary to overcome the self-defense privilege is considerably different from the "actual malice" necessary to overcome the First Amendment privilege. The latter requires publication with knowledge that a statement was false or with reckless disregard as to whether it was false. See Moss v. Stockard, 580 A.2d 1011, 1026 n. 29 (D.C.1990) (citing New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Common-law malice, by contrast, "emphasize[s] bad faith and evil motive." Id.; see Mosrie, 467 A.2d at 477. It is "the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." Moss, 580 A.2d at 1025; Mosrie, 467 A.2d at 477. And "unless the statement itself is "so excessive, intemperate, unreasonable, and abusive as to forbid any other reasonable conclusion than that the defendant was actuated by express malice," malice must be proven by extrinsic evidence." Moss, 580 A.2d at 1024 (quoting Ford Motor Credit Co. v. Holland, 367 A.2d 1311, 1314 (D.C.1977)); see Columbia First, 665 A.2d at 656. | Under District of Columbia law, the common-law malice necessary to overcome the self-defense privilege to alleged defamation is considerably different from the actual malice necessary to overcome the First Amendment privilege; while the latter requires publication with knowledge that a statement was false or with reckless disregard as to whether it was false, common-law malice, by contrast, emphasizes bad faith and evil motive. U.S.C.A. Const.Amend. 1. | Is common law malice different from actual malice? | 000572.docx | LEGALEASE-00117665-LEGALEASE-00117666 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 15208 | Jenoff v. Hearst Corp., 453 F. Supp. 541 | 237+120(2) | The odd-numbered Counts, alleging malice and seeking punitive damages, present questions which are quite different. It is now well established that a plaintiff in a defamation action cannot recover punitive or exemplary damages in the absence of proof of actual malice under New York Times v. Sullivan, supra. Gertz v. Robert Welch, Inc., supra, 418 U.S. at 350, 94 S.Ct. 2997; Jacron Sales Co., Inc. v. Sindorf, supra, 276 Md. at 601, 350 A.2d 688. Gertz held that a "private defamation plaintiff who establishes liability under a less demanding standard than that stated by New York Times may recover only such damages as are sufficient to compensate him for actual injury." Id., 418 U.S. at 350, 94 S.Ct. at 3012. | Plaintiff in a defamation action cannot recover punitive or exemplary damages in absence of proof of actual malice. U.S.C.A.Const. Amend. 1. | When can exemplary damages not be recovered by a plaintiff? | Libel and Slander - Memo 86 - TH.docx | LEGALEASE-00004718-LEGALEASE-00004719 | Condensed, SA, Sub | 0.8 | 0 | 1 | 1 | 1 | 1 |
| 15209 | Antolovich v. Brown Grp. Retail, 183 P.3d 582 | 386+2 | Homeowners argue that the trial court erred in instructing the jury that trespass included an element of intent. We disagree. "Trespass is an intentional tort." 87 C.J.S. Trespass " 6 (2000); see also Dan B. Dobbs, The Law of Torts 9596 (2000); Restatement (Second) of Torts " 158 (1965). Colorado's pattern jury instruction reflects an intent requirement for trespass. It requires a plaintiff to prove "[t]he defendant intentionally (entered upon) (caused another to enter upon) (caused [insert appropriate description] to come upon)" his or her property. CJI"Civ. 4th 18:1 (2006)(emphasis added).Homeowners argue that the intent requirement in CJI"Civ. 4th 18:1 diverges from established Colorado law. We are not persuaded. | Intent is an element of the tort of trespass, as trespass requires an intent to cause a thing to enter the plaintiff's property. Restatement (Second) of Torts, S 158. | Is intent or intentional act an element of trespass? | 000882.docx | LEGALEASE-00117942-LEGALEASE-00117943 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 15210 | Hoffman v. Cargill Inc., 236 F.3d 458 | 25T+113 | Arbitration agreements are governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. "" 1-16. Congress passed the FAA in 1925 to overcome "longstanding judicial hostility to arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). It established "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA compels courts to be solicitous of both the arbitration process and its results.The statute requires judicial confirmation of an arbitration award unless it was "procured by corruption, fraud, or undue means," where there was "evident partiality or corruption in the arbitrators," where the arbitrators were guilty of misconduct or where the arbitrators exceeded their authority. 9 U.S.C. " 10(a). Against this background, courts tread lightly in reviewing arbitration awards. "The courts' review of arbitration awards is extremely narrow. The courts' sole function is to decide whether the arbitrators' decision draws its essence from the contract." Executive Life Ins., 999 F.2d at 320. The district court, however, vacated the award on two extra-statutory grounds. | The Federal Arbitration Act (FAA) established a liberal federal policy favoring arbitration agreements, and compels courts to be solicitous of both the arbitration process and its results. 9 U.S.C.A. SS 1-16. | Does the Federal Arbitration Act (FAA) compel courts to be solicitous of the arbitration process and its results? | 001047.docx | LEGALEASE-00118046-LEGALEASE-00118048 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 15211 | State v. Ryan, 249 Neb. 218 | 203+523 | Without the element of malice or mens rea, Neb.Rev.Stat. " 28"304(1) (Reissue 1989), the second degree murder statute of which Ryan was convicted, would be of doubtful validity and perhaps unconstitutional.Through acceptable statutory construction principles, we have held and continue to hold that under " 28"304(1), malice is a necessary element of second degree murder. By such statutory construction, there can be no question of " 28"304(1)'s validity. | Without element of malice or mens rea, second-degree murder statute would be of doubtful validity and perhaps unconstitutional. Neb.Rev.St. S 28-304(1). | Is malice an essential element of murder? | 001066.docx | LEGALEASE-00118066-LEGALEASE-00118067 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 15212 | United States v. Loera, 952 F. Supp. 2d 862 | 209+278 | With regard to the elements of the second prong of the Bruce test:In assessing the second prong, Bruce outlined four factors that a court should consider to determine whether an individual has tribal or federal government recognition as an Indian: (1) tribal enrollment; (2) government recognition formally and informally through receipt of assistance reserved only to Indians; (3) enjoyment of the benefits of tribal affiliation; and (4) social recognition as an Indian through residence on a reservation and participation in Indian social life. [ ] Bruce lists these factors in declining order of importance, United States v. Cruz, 554 F.3d 840, 851 n. 17 (9th Cir.2009) (citing Bruce, 394 F.3d at 1224), and we acknowledge that these factors, "while broad, should not be deemed exclusive." Maggi, 598 F.3d at 1081.United States v. Juvenile Male, 666 F.3d 1212, 1214"15 (9th Cir.2012) (some internal citations omitted). | While defendant charged with misdemeanor offense of assault by striking, beating, or wounding an Indian on tribal land, being himself 3/16ths Mojave Indian by blood, barely satisfied "Indian blood" prong of test for Indian status, he did not satisfy "tribal or government recognition" prong, where defendant's application for enrollment in tribe had been rejected on multiple occasions, defendant had never maintained his own residence on Indian reservation, defendant had not participated, to any substantial degree, in exclusively tribal, as opposed to generic "Native American," activities, and only tribe with which defendant claimed any affiliation had refused to recognize him as member; accordingly, even assuming that federal statute under which prosecution was brought, which authorized federal courts to preside over prosecutions arising out of crimes committed by "non-Indians" against Indians in Indian country, used the term "Indians" in broad sense, as not being limited to enrolled members of Indian tribe, defendant was still a "non-Indian" and thus subject to prosecution in federal court. 18 U.S.C.A. S 1152. | ho can be described as Indians or Native Americans? | Indians - Memo 2 - JS.docx | LEGALEASE-00004964-LEGALEASE-00004965 | Condensed, SA, Sub | 0.19 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15213 | Perry v. Wilson, 183 Ky. 155 | 315+22 | The failure by the wife to renounce the provisions of the will for her benefit is an "election" by her to accept the provisions of the will, and where the will does not affirmatively declare, or if it is not necessarily inferable from the will, that the testator intended that she should have dower in addition to the benefits under the will, the presumption is conclusive, under the statute, that the devise was in lieu of dower, and, being in lieu of dower, it bars the right to recover dower in lands which the husband had sold in his lifetime, and in the conveyance of which the wife did not join. Grider v. Eubank, etc., supra. The will of Aaron H. Helton does not, in terms, provide that the devises made to his wife shall not be in lieu of dower and distributable share; nor is such intention necessarily inferable from the will. It is true the will was made by a testator domiciled in the state of Oklahoma, and it might be insisted that section 1404, supra, had no reference to a foreign will, but only to domestic ones, and that the intentions of such a testator should be determined by the law of his domicile, and no doubt, as a general rule, this is correct; but it is certainly incontestable that the title to real estate is governed by the law of the place where it is situated, and solely by such law. It is only by virtue of the laws of this state that a widow of an owner of land in this state, who dies a citizen and resident of another state, is entitled to dower in such lands; and, under such circumstances, she should only have dower in lands situated in this state, under the terms and conditions prescribed by the laws of this state. | The title to real estate is governed solely by the law of the place where it is situated. | Is title to real estate governed by the laws of the place where it is situated? | 000675.docx | LEGALEASE-00118264-LEGALEASE-00118266 | Condensed, Order, SA, Sub | 0.95 | 1 | 1 | 1 | 1 | 1 |
| 15214 | New York Pub. Interest Research Grp. by Wathen v. Town of Islip, 71 N.Y.2d 292 | 149E+595(6) | Moreover, as we noted in Flacke v. Onondaga Landfill Sys., 69 N.Y.2d 355, 362, 363, 514 N.Y.S.2d 689, 507 N.E.2d 282), the "regulation of solid waste management facilities is a legislative function delegated to the DEC by statute (ECL 27"0103)" and "ECL 71"2727(1) specifically provides that the Commissioner may take "such remedial measures as may be necessary or appropriate" and expressly authorizes initiation of any appropriate action or proceeding to enforce the provisions of article 27, any rule or regulation promulgated pursuant thereto and any order issued or penalty assessed thereunder (ECL 71"2727[2] )". The Commissioner, it appears, has exercised his statutory authority to control the operation of landfills on Long Island other than the one at Blydenburgh. Indeed, at the time of enactment of the Long Island Landfill Closure Law, 11 of the 15 landfills in Suffolk and Nassau Counties were, like the Blydenburgh Landfill, being operated under orders on consent. It thus seems evident that the May 12, 1987 consent order"and the vertical expansion permitted thereby"were matters well within the prosecutorial discretion given the Commissioner to issue and modify orders in enforcement proceedings in connection with violations of ECL article 27 (see, Flacke v. Onondaga Landfill Sys., supra, at 362, 363, 514 N.Y.S.2d 689, 507 N.E.2d 282). We conclude, then, that Supreme Court and the Appellate Division properly accepted the DEC's determination that the May 12, 1987 order was exempt as a matter involving prosecutorial discretion in an enforcement proceeding (see, ECL 8"0105[5]; 6 NYCRR 617.2[q][1] ). | Consent order of Department of Environmental Conservation which modified prior order pertaining to town landfill by increasing landfill's permissible slope and maximum height and permitting burial of ash in one portion of landfill was not "action" triggering requirements for State Environmental Quality Review Act compliance; order on consent was modification of prior order which, itself, was order made in enforcement proceeding exempt from Act, and order imposed substantial obligations on town. McKinney's ECL SS 8-0105, subd. 5, 27-1313. | Do the Commissioner has the prosecutorial discretion to issue and modify orders in enforcement proceedings in connection with violations of Environmental Conservation Law (ECL)? | Environmental Law - Memo 88 - VP.docx | ROSS-003311279-ROSS-003311280 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 15215 | Hill v. Liebman, 53 Ga. App. 462 | 233+1354 | Plaintiff alleged that she rented the leased premises from the defendant and that the rent was paid to and accepted by defendant. A person may be landlord without being owner, and the obvious meaning of the allegation that the plaintiff rented the premises from the defendant is that as to such premises defendant was the landlord and plaintiff the tenant. An action by a tenant, against one from whom she rented certain premises, for damages on account of the negligence of the latter in making repairs to the premises is not subject to demurrer because it does not appear that the defendant is the owner of the premises. Pugh v. Middlebrooks, 47 Ga.App. 528, 171 S.E. 160, and cit.; Harrison v. Guill, 46 Ga. 427. | In tenant's action for injuries caused by negligence of defendant in making repairs to premises, allegations of petition that plaintiff rented premises from defendant and that rent was paid to and accepted by defendant held sufficient as allegation of relationship of landlord and tenant, since person may be landlord without being owner (Code 1933, SS 61-111, 61-112). | Could a person be a landlord without being the owner? | Landlord and Tenant - Memo 50 - ANG.docx | ROSS-003311247-ROSS-003311248 | Condensed, SA, Sub | 0.48 | 0 | 1 | 1 | 1 | 1 |
| 15216 | Green Tree-AL LLC v. Dominion Res., 104 So. 3d 177 | 315+607 | Based on our review of the statutory provisions at issue, we conclude that the treatment of certain manufactured homes "as realty" for purposes of ad valorem taxation does not serve to convert them to real property. A manufactured home is personal property unless and until the certificate of title is canceled. To hold otherwise would render former " 32"8"30(c) and " 32"20"20(b) meaningless and provide no field of operation for their application. See Smith v. Purvis, 474 So.2d 1131, 1133 (Ala.Civ.App.1985) (indicating that a court should attempt to "harmonize and reconcile[ ] [competing] statutes to give each one a field of operation"). Because a manufactured home is personal property, it cannot be conveyed by deed and must be conveyed by transferring the certificate of title as required by " 32"20"30(a) and former " 32"8"44(a). Accordingly, we hold that Dominion did not acquire the manufactured home by virtue of the May 13, 2008, tax deed. | Because a manufactured home is personal property, it cannot be conveyed by deed and must be conveyed by transferring the certificate of title as required by statute. Code 1975, S 32-20-30(a). | Can a manufactured home be a personal property? | 000964.docx | LEGALEASE-00118195-LEGALEASE-00118196 | Condensed, Order, SA, Sub | 0.8 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15217 | Safer v. Nelson Fin. Grp., 422 F.3d 289 | 25T+139 | The Fifth Circuit has repeatedly emphasized the strong federal policy in favor of arbitration. See Neal v. Hardee's Food Sys., Inc., 918 F.2d 34, 37 (5th Cir.1990). When determining whether a dispute is covered by the scope of an arbitration agreement, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24"25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Fifth Circuit has likewise stated that doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. See Neal, 918 F.2d at 37. Specifically, we have held that arbitration should not be denied "unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." Motorola, 297 F.3d at 392 (quoting Neal, 918 F.2d at 37 (internal quotation marks omitted) (alteration in original)). | There is strong federal policy in favor of arbitration; arbitration should not be denied unless it can be said with positive assurance that arbitration clause is not susceptible of interpretation which would cover dispute at issue. | Under what circumstances may courts deny arbitration? | 001193.docx | LEGALEASE-00118428-LEGALEASE-00118429 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 15218 | SR Int'l Bus. Ins. Co. v. Energy Future Holdings Corp., 539 F. Supp. 2d 871 | 25T+112 | The United States Court of Appeals for the Fifth Circuit has set forth a two-prong test for determining whether parties should be compelled to arbitrate a dispute. The first prong requires the determination of whether the parties agreed to arbitrate the dispute. Safer v. Nelson Fin. Grp., 422 F.3d 289, 293 (5th Cir.2005). The second prong requires the determination of "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." Id. at 294. "Arbitration should not be denied "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." " Id. The court considers each prong in turn. | In determining whether parties should be compelled to arbitrate a dispute, the district court applies a two-pronged test to determine: (1) whether the parties agreed to arbitrate the dispute, and (2) whether legal constraints external to the parties' agreement foreclosed arbitration of those claims. | Under what circumstances may courts deny arbitration? | Alternative Dispute Resolution - Memo 203 - RK.docx | LEGALEASE-00005490-LEGALEASE-00005491 | Condensed, SA, Sub | 0.58 | 0 | 1 | 1 | 1 | 1 |
| 15219 | Detroit, G.H. & M. Ry. Co. v. Weber, 248 Mich. 28 | 148+8 | We are in accord with the following proposition of law cited in appellant's brief: "A grant of the owner of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, will never pass by implication, and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained."10 R. C. L. 196. | Extent to which power of eminent domain may be exercised is restricted to express terms or clear implication of statute containing grant. | Can eminent domain be applied by implication? | 05824.docx | LEGALEASE-00080888-LEGALEASE-00080889 | Condensed, SA, Sub | 0.69 | 0 | 1 | 1 | 1 | 1 |
| 15220 | Beeland Wholesale Co. v. Kaufman, 234 Ala. 249 | 148+1 | The statement is frequently made that ordinary money is not subject to the power of eminent domain, since compensation of an equal amount must be paid for it, and is therefore in the nature of a forced loan. 20 Corpus Juris, 588. Eminent domain is in the nature of a forced sale of property rights for an amount of money equal to its value, although originally, and without constitutional provision, the state could take property for public use without compensation, though in excess of the just share of the citizen to the expense of government. Steele v. County Commissioners, 83 Ala. 304, 3 So. 761. | "Eminent domain" is in the nature of a forced sale of property rights for an amount of money equal to value of property rights. | Is eminent domain a forced or voluntary sale? | 001263.docx | LEGALEASE-00118340-LEGALEASE-00118341 | Condensed, SA, Sub | 0.78 | 0 | 1 | 1 | 1 | 1 |
| 15221 | F. F. E. Co. v. United Oystermen's Union 19600, 130 N.J. Eq. 292 | 95+116(1) | Moreover the contract is not against public policy. The National Labor Relations Act specifically authorized closed shop contracts. 49 Stat. 449 at 452, 29 U.S.C.A. " 158. This act is applicable in the instant case because the complainants are admittedly engaged in interstate commerce. Our legislature has likewise declared such contracts lawful as a matter of public policy. N.J.S.A. 2:29-77.1 provides that no injunction shall issue prohibiting requirements that "all employees of a particular employer or group of employers shall be members of a particular labor organization." That clearly refers to closed shop contracts. | In view of National Labor Relations Act, specifically authorizing closed shop contracts, and state legislation, providing that no injunction shall issue prohibiting requirements that all employees of a particular employer or group of employers shall be members of a particular labor organization, contract between labor union and employer, requiring union membership or permits as condition of continuance of employment, was not void as being against public policy. National Labor Relations Act S 8, 29 U.S.C.A. S 158; N.J.S.A. 2A:15-51. | Are closed shop contracts unlawful? | Labor and Employment - Memo 17 - VP.docx | ROSS-003283731-ROSS-003283732 | Condensed, SA, Sub | 0.14 | 0 | 1 | 1 | 1 | 1 |
| 15222 | Jobes v. Evangelista, 369 N.J. Super. 384 | 249+28 | With respect to the malicious prosecution cause of action, it is clearly settled that it requires proof of four elements, the defendant's institution of a criminal action against the plaintiff; the defendant's motivation by malice; the absence of probable cause; and termination of the action favorably to the plaintiff. As noted, only actual malice and probable cause are in dispute. We think it plain that the actual malice component of the cause of action is properly defined, as Judge Brogan defined it for the jury, as the intentional doing of a wrongful act without just cause or excuse. See, e.g., Muller Fuel Oil Co. v. Ins. Co. of No. Amer., 95 N.J.Super. 564, 576, 232 A.2d 168 (App.Div.1967). In a substantial sense, therefore, malice is inferable from the finding that the defendant had neither probable cause for the criminal complaint nor a reasonable belief in probable cause. | "Actual malice" component of a cause of action for malicious prosecution is the intentional doing of a wrongful act without just cause or excuse. | How is actual malice defined in an action for malicious prosecution? | 001826.docx | LEGALEASE-00118225-LEGALEASE-00118226 | Condensed, SA, Sub | 0.83 | 0 | 1 | 1 | 1 | 1 |
| 15223 | Green Tree-AL LLC v. Dominion Res., 104 So. 3d 177 | 315+607 | Based on our review of the statutory provisions at issue, we conclude that the treatment of certain manufactured homes "as realty" for purposes of ad valorem taxation does not serve to convert them to real property. A manufactured home is personal property unless and until the certificate of title is canceled. To hold otherwise would render former " 32"8"30(c) and " 32"20"20(b) meaningless and provide no field of operation for their application. See Smith v. Purvis, 474 So.2d 1131, 1133 (Ala.Civ.App.1985) (indicating that a court should attempt to "harmonize and reconcile[ ] [competing] statutes to give each one a field of operation"). Because a manufactured home is personal property, it cannot be conveyed by deed and must be conveyed by transferring the certificate of title as required by " 32"20"30(a) and former " 32"8"44(a). Accordingly, we hold that Dominion did not acquire the manufactured home by virtue of the May 13, 2008, tax deed. | Because a manufactured home is personal property, it cannot be conveyed by deed and must be conveyed by transferring the certificate of title as required by statute. Code 1975, S 32-20-30(a). | Is it possible to convey a manufactured home by deed? | 000974.docx | LEGALEASE-00118454-LEGALEASE-00118455 | Condensed, Order, SA, Sub | 0.8 | 1 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15224 | Barrett v. Manufacturers Ry. Co., 453 F.2d 1305 | 25T+376 | The NRAB award in the instant case refused to consider the merits of plaintiff's grievance (an alleged wrongful discharge) on the grounds that the dispute had not been timely filed before that body. Gunther clearly established that proceedings before the NRAB are to be considered as compulsory arbitration and that the decision of the Board is as final as that of an arbitrator. In the context of arbitration under " 301 of the Labor Management Relations Act, 29 U.S.C. " 185, the Court has held that ""procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." John Wiley & Sons v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964); Local 198, United Rubber Workers v. Interco, Inc., 415 F.2d 1208, 1210 (8th Cir. 1969). The decision of the NRAB in the instant case that the dispute was not timely filed before it should not be disturbed by us on the basis of this record. Arbitration is favored by the law and the decision of the arbitrators is final and not subject to review on either the merits or procedural issues. Saxis Steamship Co. v. Multifacs Int'l Traders, Inc., 375 F.2d 577, 581-582 (2d Cir. 1967); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969); Kroger Co. v. Teamster Union Local 661, 380 F.2d 728, 730 (6th Cir. 1967). | Arbitration is favored by the law and the decision of the arbitrators is final and not subject to review on either the merits or procedural issues. Labor Management Relations Act, 1947, S 301, 29 U.S.C.A. S 185. | Is the decision of the arbitrator subject to review? | 001140.docx | LEGALEASE-00118677-LEGALEASE-00118679 | SA, Sub | 0.84 | 0 | 0 | 1 | 1 | |
| 15225 | Project Reflect v. Metro. Nashville Bd. of Pub. Educ., 947 F. Supp. 2d 868 | 1.41E+04 | "Public education is not a "right" granted to individuals by the Constitution." Plyler v. Doe, 457 U.S. 202, 221, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (citing San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). "However, if a state elects to furnish free compulsory public education to any of its citizens ... it must do so in a manner, respecting all of its residents, which comports with basic Fourteenth Amendment equal protection and due process strictures." Wayne v. Shadowen, 15 Fed.Appx. 271, 283 (6th Cir.2001) (emphasis in original). In Tennessee, school-age children have a constitutional and statutory right to a public education. Heyne v. Metropolitan Nashville Bd. of Public Educ., 380 S.W.3d 715, 731"32 (Tenn.2012). However, in the context of student discipline, the Sixth Circuit has suggested that a public school student "may not have procedural due process rights to notice and an opportunity to be heard when the sanction is attendance at an alternative school absent some showing that the education received at the alternative school is significantly different from or inferior to that received at his regular public school." Buchanan v. City of Bolivar, Tenn., 99 F.3d 1352, 1359 (6th Cir.1996) (citations omitted); accord Wayne, 15 Fed.Appx. at 290; see also Mullen v. Thompson, 31 Fed.Appx. 77, 80 (3rd Cir.2002) (holding that students "have no constitutionally cognizable property or liberty interest in attending the individual school of their choice"). | In Tennessee, school-age children have a constitutional and statutory right to a public education. West's T.C.A. Const. Art. 11, S 12; West's T.C.A. SS 49-6-3001(c)(1), 49-6-3003. | Do school-age children have a constitutional and statutory right to a public education? | Education - Memo 2 - JS.docx | ROSS-003311091-ROSS-003311092 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 15226 | Simpson v. Harper, 21 Tenn. App. 431 | 146+24 | There was no evidence, or offer of evidence, tending to impeach the general character and reputation of the defendant or her husband, or their character for truth and veracity. Floyd I. Harper was not subject to criminal prosecution in the circumstances, for the reason that the embezzlement had been committed by one of his partners, without his knowledge. Although civilly liable for the debts of the partnership, he was not criminally liable for the unlawful acts of a partner done without his assent or knowledge. | Partner, though liable civilly for debts of partnership, was not liable criminally for the embezzlement by a copartner, done without partner's consent or knowledge. | "Can a partner, held civilly liable for embezzling partnership property, be held criminally liable?" | 001222.docx | LEGALEASE-00118680-LEGALEASE-00118681 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 15227 | Whatley v. State, 135 Tex. Crim. 490 | 146+27 | It is observed that the word "fraudulently" is omitted from the indictment. The use of such word is indispensable in charging theft by bailee under Art. 1429, P.C. Rhodes v. State, 122 Tex.Cr.R. 156, 54 S.W.2d 119; Patterson v. State, 122 Tex.Cr.R. 502, 56 S.W.2d 458. We quote said article as follows: "Any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall without the consent of the owner, fraudulently convert such property to his own use with intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished as for theft of like property." (Italics ours.) | The use of word "fraudulently" is indispensable in charging offense of theft by bailee under statute providing that any person having possession of personalty by virtue of a bailment who should "fraudulently" convert such property should be guilty of theft. Pen.Code 1925, art. 1429. | Is use of the word fraudulent indispensable in charging an offence of theft? | 001233.docx | LEGALEASE-00118579-LEGALEASE-00118580 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 15228 | Graber v. Fuqua, 279 S.W.3d 608 | 249+36 | Graber next argues that preemption is warranted by the risk of disrupting uniformity in bankruptcy. We disagree for two reasons. First, we think the uniformity argument does not warrant preemption because Fuqua's lawsuit will not necessarily affect the law of bankruptcy, be it in Fuqua's particular case or in bankruptcy cases at large. By definition, Texas claims for malicious prosecution arise only after the underlying case reaches a final judgment and all appeals are exhausted. See Tex. Beef Cattle Co. v. Green, 921 S.W.2d 203, 208 (Tex.1996) ("[A]n underlying civil suit has not terminated in favor of a malicious prosecution plaintiff until the appeals process for that underlying suit has been exhausted."). When Fuqua filed his malicious prosecution claim in state court, the bankruptcy court controversy between Graber and Fuqua had reached a final, undisturbable result. A judgment had been entered in the adversary proceeding in favor of Fuqua, the judgment had been appealed, the appeal had been dismissed, and the time for filing any further appeals had expired. See Fed. R. Bankr.P. 9021"24 (providing final judgment rules); 28 U.S.C. " 158 (providing for federal district court jurisdiction over appeals from bankruptcy court final judgments); Smith v. Seaside Lanes (In re Moody), 825 F.2d 81, 85 (5th Cir.1987) ("[I]t is generally held that a separate adversary proceeding within the framework of the overall bankruptcy case is an appropriate "judicial unit" for determining finality.... Thus, even though the bankruptcy case may continue, an order disposing of such a proceeding is appealable as a final order."). Therefore, nothing occurring in the malicious prosecution claim could disturb the matters already decided in Fuqua's adversary proceeding. | Claims for malicious prosecution arise only after the underlying case reaches a final judgment and all appeals are exhausted. | When is judgment considered as final for malicious prosecution action? | 001485.docx | LEGALEASE-00118592-LEGALEASE-00118593 | Condensed, SA | 0.93 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15229 | Cherry v. Dealers Transport Co., 64 F.Supp. 682 | 170A+655 | The Federal Rules of Civil Procedure, Rule 8, 28 U.S.C.A.following section 723c, state that "technical forms of pleading" are not required and that all pleadings shall be so construed as to do substantial justice. See 9 and 10, Appendix of Forms, attached to the draft of Rules submitted by the Supreme Court to Congress. The Code of Civil Procedure of Missouri, as amended, in the particular s now under consideration follows substantially the language of the Federal Rules, Sections 35 and 36, Page 369, Laws of Missouri 1943, Mo.R.S.A. Secs. 847.35, 847.36. Both provide for a "short and plain statement of the facts showing that the pleader is entitled to relief. " Whether the Federal Rules of Civil Procedure and the amendments to the Missouri Civil Procedure Code alter the rule of pleading and submission relied upon by the defendant in this case, we do not feel called upon to decide. We doubt if the previous ruling on pleading and submission, relied upon by the plaintiff, will be followed. In the federal courts, the parties now have the right of taking depositions, requiring admissions, and submission of interrogatories to supply information which may not appear in the "short and plain statement of the facts * * * ." The language "all pleadings shall be so construed as to do substantial justice" must be given a practical meaning. Of course, this does not mean, on the one hand, that the plaintiff may by pleading, mislead, entrap, surprise or prejudice his adversary, nor on the other that a party should be permitted to weave a net of artificial refinements and subtle technicalities in which to catch an unwary litigant. In this case there could have been no deception, surprise, prejudice or entrapment of the defendant on the allegations of the petition and the issues submitted under it to the jury. Defendant does not make this claim. We think the submission was in accord with the mandate of the rule that "all pleadings shall be so construed as to do substantial justice." But we prefer to base | The phrase "all pleadings shall be so construed as to do substantial justice", as used in the Federal Rules of Civil Procedure and amendments to the Missouri Civil Procedure Code pertaining to pleadings, must be given a practical meaning which does not contemplate that plaintiff may be pleading mislead his adversary or that a party should be permitted to weave a net of artificial refinements and subtle technicalities in which to catch an unwary litigant. V.A.M.S. SS 509.040, 509.050; Fed.Rules Civ.Proc. rule 8, 28 U.S.C.A.; Appendix of Forms, forms 9, 10, 28 U.S.C.A. | Should pleadings be construed to do substantial justice? | Pleading - Memo 49 - ANG.docx | ROSS-003284045-ROSS-003284046 | Condensed, SA, Sub | 0.72 | 0 | 1 | 1 | 1 | 1 |
| 15230 | Leprino Foods Co. v. Gress Poultry, 379 F.Supp.2d 650 | 289+454 | "A partnership is an association of two or more persons to carry on as co-owners a business for profit." 15 Pa. Cons. Stat. Ann.. " 8311(a). To determine if a partnership exists, there must be "clear, mutual assent on the part of two or more persons" to form a partnership.In Re Jackson, 28 B.R. 559, 562"63 (Bankr.E.D.Pa.1983); accord Zuback v. Bakmaz, 346 Pa. 279, 29 A.2d 473, 474 (1943). There is no requirement that the partnership agreement be in writing. See Ruth v. Crane, 392 F.Supp. 724, 733 (E.D.Pa.1975). The partnership agreement may be made orally, or it may be found to exist from all of the attending circumstances. See Barbet v. Ostovar, 273 Pa.Super. 256, 417 A.2d 636, 641 (1979). An established pattern of profit and loss sharing may support a finding of a partnership. See Canfield v. Canfield, 4 Pa. D. & C.3d 110, 113 (Pa.Com.Pl.1977); 15 Pa. Cons. Stat. Ann.. " 8312(4). An intent to form a partnership may also be found through a partnership tax return. See Canfield, 4 Pa. D. & C.3d at 113; Tocco v. Tocco, 389 Pa.Super. 310, 567 A.2d 303, 307 (1989). | Under Pennsylvania law, to determine if a partnership exists, there must be clear, mutual assent on the part of two or more persons to form a partnership. | Is mutual assent required to form a partnership? | Partnership - Memo 48 - RK.docx | ROSS-003297975-ROSS-003297976 | SA, Sub | 0.86 | 0 | 0 | 1 | 1 | |
| 15231 | Salyer v. S. Poverty Law Ctr., 701 F. Supp. 2d 912 | 237+27 | In an April 23, 2009 Memorandum Opinion (DN # 19), this Court found that all actions for defamation in Kentucky must be brought within one year of the defamatory material's publication date. See KRS " 413.140(1)(d); Caslin v. Gen. Elec. Co., 608 S.W.2d 69, 70 (Ky.App.1980). The Court further predicted that Kentucky would follow the "single publication rule" for all mass publications of allegedly defamatory materials, including those materials published on the internet. That rule provides that "any form of mass communication or aggregate publication ... is a single communication and can give rise to only one action for libel." (Memorandum Opinion April 23, 2009, DN # 19.) On its face, the single publication rule bars this action. The lawsuit was filed on December 18, 2008 and the allegedly defamatory statements were originally published on July 7, 2006 on the internet and August 14, 2006 in print. | As predicted by federal court, Kentucky would follow "single publication rule," for mass publications of allegedly defamatory materials, which provides that any form of mass communication or aggregate publication is a single communication and can give rise to only one action for libel. | What is aggregate communication in defamation? | 10821.docx | LEGALEASE-00081473-LEGALEASE-00081474 | Condensed, Order, SA, Sub | 0.68 | 1 | 1 | 1 | 1 | 1 |
| 15232 | Camunes v. Frontier Enterprises, 61 S.W.3d 579 | 231H+782 | For well over a century, Texas courts have adhered to the traditional employment-at-will doctrine: "[W]hen the term of service is left to the discretion of either party, or the term left indefinite, or determinable by either party, ... either may put an end to it at will, and so without cause." East Line & R.R.R. Co. v. Scott, 72 Tex. 70, 10 S.W. 99, 102 (Tex.1888). The only judicially-created exception to the employment-at-will doctrine recognized by our state supreme court is "the discharge of an employee for the sole reason that the employee refused to perform an illegal act." Sabine Pilot Serv., Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex.1985). | The only judicially-created exception to the employment-at-will doctrine is the discharge of an employee for the sole reason that the employee refused to perform an illegal act. | Is there any judicial exception to the employment-at-will doctrine? | Labor and Employment - Memo 40 - VP.docx | ROSS-003286403-ROSS-003286404 | Condensed, SA | 0.73 | 0 | 1 | 0 | 1 | |
| 15233 | Nelson v. Seaboard Sur. Co., 269 F.2d 882 | 289+507 | The Nelsons, as a basis for reversal, rely largely on T.E. Foley Co. v. McKinley, 114 Minn. 271, 131 N.W. 316. The case lends some support to the Nelsons' contention, but is factually distinguishable from the present case. Further, in the Foley case, the fact finder, the jury, actually found that no partnership existed. It would therefore seem that the court's statement that there was no partnership as a matter of law was dicta. The later Minnesota cases, heretofore cited, show that the Minnesota court has almost invariably held in cases where there was a showing of participation in profits that the issue of the existence of a partnership is a fact question and not a question of law. | Under Minnesota law, issue of existence of a partnership is a question of fact when there is a showing of participation in profits. | Is the existence of partnership a question of fact or a question of law? | 001563.docx | LEGALEASE-00118957-LEGALEASE-00118958 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15234 | Winston & Strawn LLP v. Law Firm of John Arthur Eaves, 47 F. Supp. 3d 68 | 289+450 | Under Mississippi law, "the association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership." Miss. Code. Ann. " 79"13"202(a). An express agreement is not required to form a partnership, and " "intent may be implied or established from the surrounding circumstances." " Smith v. Redd, 593 So.2d 989, 994 (Miss.1991) (quoting Norman Prop. v. Bozeman, 557 So.2d 1265, 1270 (Ala.1990)); see also Allied Steel Corp. v. Cooper, 607 So.2d 113, 117 (Miss.1992) (noting that absent an express contract, a partnership can be implied through the parties' conduct).The main factors considered when determining whether a partnership exists are the intent of the parties, the control the parties exercised on the enterprise, whether profit was shared, and how the alleged partnership holds itself out to third parties, but none of these factors is dispositive. See Redd, 593 So.2d at 996; see also Beckman v. Farmer, 579 A.2d 618, 628 (D.C.1990) (finding that the way a firm holds itself out to clients is relevant in determining the firm's legal characteristics). | Under Mississippi law, an express agreement is not required to form a partnership, and intent may be implied or established from the surrounding circumstances. Miss. Code Ann. S 79-13-202(a). | Can a partnership without an express agreement be implied through the parties conduct? | Partnership - Memo 69 - ANG.docx | ROSS-003282348-ROSS-003282350 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 15235 | Lutz v. Erie Ins. Exch., 848 N.E.2d 675 | 157+43(2) | The court may take judicial notice that McCormick admitted in her answer that the color of the light was red. It is well settled in Indiana that a trial court may judicially notice a party's pleadings, whether or not facts recited in those pleadings are susceptible of judicial notice. See Owen v. State, 272 Ind. 122, 129, 396 N.E.2d 376, 381 (1979); Brown v. Jones, 804 N.E.2d 1197, 1202 (Ind.Ct.App.2004), trans. denied; Sanders v. State, 782 N.E.2d 1036, 1038"39 (Ind.Ct.App.2003). McCormick's admission in her answer, once noticed, became a judicial admission as a matter of law. Statements contained in a party's pleadings may be taken as true as against the party without further controversy or proof. 13 Robert Lowell Miller, Jr., Indiana Practice " 801.422, at 561 (2d ed.1995). Unless a pleading is withdrawn or superseded, any admission contained in the pleading is conclusive as to that party. Id. The reason for this is that pleadings are designed to narrow the issues required to be tried. See, e.g., Sundstrand Corp. v. Standard Kollsman Indus., Inc., 488 F.2d 807, 811 (7th Cir.1973) ("pleading is important only to inform the opposing party of what is claimed and the grounds upon which the claim rests."); Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C.1977) (pleading "serves to sharpen the issues to be litigated and to confine discovery and the presentation of evidence at trial within reasonable bounds."). Opposing parties prepare their case on the assumption that facts admitted by other parties require no proof. For this scheme to work properly, parties must be entitled to rely on trial courts to treat admissions in pleadings as binding on the party making the admission. | A trial court may judicially notice a party's pleadings, whether or not facts recited in those pleadings are susceptible of judicial notice. Rules of Evid., Rule 201. | Can courts take judicial notice of pleadings? | 001590.docx | LEGALEASE-00119062-LEGALEASE-00119063 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 15236 | People v. Sanchez, 24 Cal. 4th 983 | 203+507 | Indeed, it has long been recognized that there may be multiple proximate causes of a homicide, even where there is only one known actual or direct cause of death. In People v. Kemp (1957) 150 Cal.App.2d 654, 310 P.2d 680 (Kemp ), Kemp and Coffin engaged in a car race down a public street that resulted in the death of a person in a vehicle struck by Coffin's car. Kemp "contended that there was no showing of anything attributable to him which was a proximate cause of the death, as required by section 192 of the Penal Code. [He] argued that the mere violation of section 601.5 of the Vehicle Code prohibiting speed contests on a highway is immaterial, like the failure to have a required license to drive, and could not constitute a proximate cause of the death; that the thing that caused this death is either excessive speed (violation of [Veh.Code,] " 510) or reckless driving (violation of [Veh.Code,] " 505) on the part of Coffin; that Coffin's violation of either of those sections was neither attributable nor imputable to Kemp; that Kemp neither interfered with nor had control of the actions of Coffin; and that it follows that he could not have been guilty of any unlawful act, or of any gross negligence, which was a proximate cause of this death." (Kemp, supra, 150 Cal.App.2d at p. 658, 310 P.2d 680.) | There may be multiple proximate causes of a homicide, even where there is only one known actual or direct cause of death. West's Ann.Cal.Penal Code S 187. | Can there be multiple proximate causes for a homicide? | Homicide - Memo 42 - TH.docx | ROSS-003283970-ROSS-003283972 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15237 | Porter v. Kimzey, 309 F. Supp. 993 | 106+508(7) | The three-judge feature of this case involves a facial attack on the constitutionality of a Georgia statute, under which the plaintiff was arrested following public criticism of certain personnel at a unit of the Georgia Department of Corrections where he had been employed as a guard. He seeks to enjoin any indictment or prosecution under the arrest warrant issued on the complaint of private individuals named in his statement charging him with a violation of Georiga Code " 26-2804, "Criminal defamation", which provides:"A person commits criminal defamation when, without privilege to do so and with intent to defame another, living or dead, he communicates false matter which tends to blacken the memory of any one who is dead or which exposes one who is alive to hatred, contempt, or ridicule, and which tends to provoke a breach of the peace. A person convicted of criminal defamation shall be punished as for a misdemeanor." | Where prosecution under criminal defamation statute affected plaintiff alone and not a group seeking to exercise some broad right of freedom of speech and arrest was based upon private warrant taken out by one citizen of state against another and was not founded on organized effort at law enforcement or harassment by public officials, action to enjoin indictment or prosecution did not lie. Code Ga. S 26-2804; U.S.C.A.Const. Amend. 1. | What is criminal defamation? | 002097.docx | LEGALEASE-00119403-LEGALEASE-00119405 | Condensed, SA, Sub | 0.53 | 0 | 1 | 1 | 1 | 1 |
| 15238 | Brady v. Brady, 161 N.C. 324 | 401+4 | If the cause of action set out in the complaint is local, the courts of Virginia alone have jurisdiction of it; and, if transitory, the action may be maintained in this state. Actions are transitory when the transactions on which they are based might take place anywhere, and are local when they could not occur except in some particular place. The distinction exists in the nature of the subject of the injury, and not in the means used, or the place at which the cause of action arises. Mason v. Warner, 31 Mo. 510; McLeod v. Railroad, 58 Vt. 732, 6 Atl. 648; Perry v. Railroad, 153 N. C. 118, 68 S. E. 1060. | Within the rule that a cause of action, when local, may be tried only in the state where the transaction relied on occurred, and, when transitory, may be tried elsewhere, actions are "transitory" when the transactions relied on might have taken place anywhere, and are "local" when they could not occur except in some particular place. | What is the distinction between local and transitory actions? | 10830.docx | LEGALEASE-00081452-LEGALEASE-00081454 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15239 | In re Application of Neb. Pub. Power Dist., 281 Neb. 350 | 145+1 | A decision of the PRB will be affirmed if it is supported by the evidence and is not arbitrary, capricious, unreasonable, or otherwise illegal. In re Application of City of North Platte, 257 Neb. 551, 599 N.W.2d 218 (1999). | A decision of the Power Review Board (PRB) will be affirmed if it is supported by the evidence and is not arbitrary, capricious, unreasonable, or otherwise illegal. | When will a decision of the Power Review Board be affirmed? | Electricity - Memo 9 - JS.docx | ROSS-003312705-ROSS-003312706 | Condensed, SA, Sub | 0.26 | 0 | 1 | 1 | 1 | 1 |
| 15240 | In re City of N. Platte, 257 Neb. 551 | 145+1 | A decision of the PRB will be affirmed if it is supported by the evidence and is not arbitrary, capricious, unreasonable, or otherwise illegal. In re Application of City of Lexington, 244 Neb. 62, 504 N.W.2d 532 (1993). The meaning of a statute is a question of law, and a reviewing court is obligated to reach conclusions independent of the determination made below. Id. | Decision of the Power Review Board (PRB) will be affirmed if it is supported by the evidence and is not arbitrary, capricious, unreasonable, or otherwise illegal. | When will a decision of the Power Review Board be affirmed? | 002232.docx | LEGALEASE-00119315-LEGALEASE-00119316 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 15241 | State v. Sage, 255 Mont. 227 | 207+4 | Defendant completed the crime of solicitation of incest when he asked his daughter to aid him in performing incest. A person commits incest if he knowingly has sexual contact with a descendant. Section 45"5"507, MCA. Defendant purposely urged his natural daughter to have sexual relations with him. Defendant thus encouraged the commission of incest with the purpose that incest be committed. Montana's statute requires nothing more to bring the crime of solicitation to fruition. See " 45"4"101, MCA. | By purposely urging his natural daughter to have sexual relations with him, defendant completed crime of solicitation of incest justifying his conviction. MCA 45-4-101, 45-5-507; Ill.S.H.A. ch. 38, P 1-1 et seq., 8-1. | Does sexual relationship between father and natural daughter amount to incest? | Incest - Memo 42 - JS.docx | LEGALEASE-00007549-LEGALEASE-00007550 | Condensed, SA, Sub | 0.57 | 0 | 1 | 1 | 1 | 1 |
| 15242 | Kraft v. Langford, 565 S.W.2d 223 | 115+39 | "The character of an injury as either permanent or temporary is determined by its continuum. Permanent injuries are those which are constant and continuous, not intermittent or recurrent. Atlas Chemical Industries, Inc. v. Anderson, supra. Temporary injuries are those which are not continuous but are "sporadic and contingent upon some irregular force such as rain." Id. Another characteristic of a temporary injury is the ability of a court of equity to enjoin the injury causing activity. An injury which can be terminated cannot be a permanent injury. The concepts of temporary and permanent injuries are mutually exclusive and damages for both may not be recovered in the same action. Lone Star Gas Co. v. Hutton,supra, at 21. | Concepts of temporary and permanent injuries to real property are mutually exclusive and damages for both may not be recovered in same action. | Can a party recover damages for both permanent and temporary damages in a single action? | 001902.docx | LEGALEASE-00119617-LEGALEASE-00119618 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |
| 15243 | State v. McCall, 245 Iowa 991 | 207+6 | Defendant contends the court erred in overruling his motion for directed verdict, based upon the insufficiency of the evidence. One complaint is there was no proof of penetration of the female organ, which is essential to conviction of incest. State v. Judd, 132 Iowa 296, 301, 302, 109 N.W. 892; 42 C.J.S., Incest, " 5; 27 Am.Jur., Incest, section 2. This contention is not well founded. Letha was a bright girl, aged fifteen years. She had been raised on a farm and was in the tenth grade at school. She testified she understood the meaning of the term sexual intercourse, and that defendant had sexual intercourse with her, July 21, 1952. The meaning of this term is clear and is common knowledge. A dictionary definition is: sexual or carnal connection; coition. The term itself necessarily includes penetration. State v. Frazier, 54 Kan. 719, 39 P. 819; Hunley v. Commonwealth, 217 Ky. 675, 290 S.W. 511, 514; Shepherd v. State 111 Tex.Cr.R. 4, 10 S.W.2d 730; State v. Haston, 64 Ariz. 72, 166 P.2d 141, 143, 144; State v. Diamond, 50 Nev. 433, 264 P. 697. The testimony above noted, without more, was sufficient to make the question of penetration one of fact for the jury. There was also evidence her hymen had been ruptured. | The term "sexual intercourse", as it relates to law of incest, means sexual or carnal connection, or coition, and the term necessarily includes penetration. I.C.A. S 704.1. | What is sexual penetration under incest laws? | 002883.docx | LEGALEASE-00119784-LEGALEASE-00119785 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 15244 | Long v. Fulton Cty. Sch. Dist., 807 F | 13+1 | "Whether a litigant has a cause of action is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 595, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983) (internal punctuation omitted). Therefore, the Court's conclusion that the Longs are permitted to bring a private claim alleging reverse discrimination under the ADA does not resolve the question of what relief, if any, the Longs may obtain on that claim. FCSD makes two arguments in this regard: first, that the ADA does not permit private actions for monetary damages, and second, that the Longs lack standing to seek injunctive relief. | Whether a litigant has a cause of action is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive. | Can a litigant have cause of action? | Action - Memo 41 - RM.docx | LEGALEASE-00008725-LEGALEASE-00008727 | Condensed, SA | 0.78 | 0 | 1 | 0 | 1 | |
| 15245 | Prof'l Real Estate Inv'rs v. Columbia Pictures Indus., 508 U.S. 49 | 13+2 | The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation. The notion of probable cause, as understood and applied in the common law tort of wrongful civil proceedings,7 requires the plaintiff to prove that the defendant lacked probable cause to institute an unsuccessful civil lawsuit and that the defendant pressed the action for an improper, malicious purpose. Stewart v. Sonneborn, 98 U.S. 187, 194, 25 L.Ed. 116 (1879); Wyatt v. Cole, 504 U.S. 158, 176, 112 S.Ct. 1827, 1837"1838, 118 L.Ed.2d 504 (1992) (REHNQUIST, C.J., dissenting); T. Cooley, Law of Torts. Cf. Wheeler v. Nesbitt, 24 How. 544, 549"550, 16 L.Ed. 765 (1861) (related tort for malicious prosecution of criminal charges). Probable cause to institute civil proceedings requires no more than a "reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication" (internal quotation marks omitted). Hubbard v. Beatty & Hyde, Inc., 343 Mass. 258, 262, 178 N.E.2d 485, 488 (1961); Restatement (Second) of Torts " 675, Comment e, pp. 454"455 (1977). Because the absence of probable cause is an essential element of the tort, the existence of probable cause is an absolute defense. See Crescent City Live Stock Co. v. Butchers' Union Slaughter"House Co., 120 U.S. 141, 149, 7 S.Ct. 472, 476, 30 L.Ed. 614 (1887); Wheeler, supra, 24 How., at 551; Liberty Loan Corp. of Gadsden v. Mizell, 410 So.2d 45, 48 (Ala.1982). Just as evidence of anticompetitive intent cannot affect the objective prong of Noerr 's sham exception, a showing of malice alone will neither entitle the wrongful civil proceedings plaintiff to prevail nor permit the factfinder to infer the absence of probable cause. Stewart, supra, 98 U.S., at 194; Wheeler, supra, 24 How., at 551; 2 C. Addison, Law of Torts " 1, 853, pp. 67"68 (1876); T. Cooley, supra, at *184. When a court has found that an antitrust defendant claiming Noerr immunity had probable cause to sue, | Probable cause to institute civil proceedings requires no more than reasonable belief that there is chance that claim may be held valid upon adjudication. | When does a litigant have probable cause to initiate a suit? | 002484.docx | LEGALEASE-00119905-LEGALEASE-00119907 | SA, Sub | 0.94 | 0 | 0 | 1 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15246 | Ray v. Donohew, 177 W. Va. 441 | 366+32 | The right of subrogation depends upon the facts and circumstances of each particular case. Huggins v. Fitzpatrick, 102 W.Va. 224, 228, 135 S.E. 19, 20 (1926). "The doctrine of subrogation is that one who has the right to pay, and does pay, a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other." Syl. Pt. 1, Bassett v. Streight, 78 W.Va. 262, 88 S.E. 848 (1916). | Doctrine of subrogation means that one who has right to pay, and does pay, that which ought to have been paid by another is entitled to exercise all remedies with creditor possessed against other. | What does the right of subrogation depend upon? | 002579.docx | LEGALEASE-00120135-LEGALEASE-00120136 | Condensed, SA, Sub | 0.56 | 0 | 1 | 1 | 1 | 1 |
| 15247 | Old Republic Life Ins. Co. v. TransWood Inc., 2016-0552 (La. App. 1 Cir. 6/2/17), 222 So. 3d 995 | 366+1 | Subrogation may be either conventional or legal. See La. C.C. art. 1825. This means that subrogation may result from either the agreement of the obligor or the obligee or both with a third person, or directly by operation of law. See Copeland Enterprises, Inc., 657 So.2d at 1297. Relevant for our purposes, conventional subrogation by the obligee occurs under La. C.C. art.1827 when an obligee who receives performance from a third person subrogates that person to his rights, whereas, subrogation by operation of law takes place under La. C.C. art. 1829(3) in favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment. | Subrogation may result from either the agreement of the obligor or the obligee or both with a third person, or directly by operation of law. La. Civ. Code Ann. art. 1825. | What does subrogation result from? | 002616.docx | LEGALEASE-00120106-LEGALEASE-00120107 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 15248 | Dawson v. State Law Enf't Div., 304 S.C. 59 | 316P+481 | We further conclude the Grievance Committee, as the final administrative authority, may not delegate its role as final decision-maker to the Personnel Director. See Bradley v. State Human Affairs Comm'n 293 S.C.376, 360 S.E.2d 537 (Ct.App.1987). Once an appeal is forwarded to the Grievance Committee, the Committee has exclusive jurisdiction to decide all issues. | State Employee Grievance Committee, as final administrative authority, may not delegate its role as final decision maker to personnel director. | Can an administrative body delegate its role of decision making? | 002623.docx | LEGALEASE-00120152-LEGALEASE-00120153 | Condensed, SA, Sub | 0.61 | 0 | 1 | 1 | 1 | 1 |
| 15249 | Sarhank Grp. v. Oracle Corp., 404 F.3d 657 | 221+292 | Article V(2) of the Convention provides that a United States court is not required to enforce an agreement if its subject matter is not capable of arbitration in the United States, Parsons & Whittemore Overseas Co. v. Societe Generale de L'Ind., 508 F.2d 969, 974 (2d Cir.1974), or if enforcement of the arbitral award would be contrary to American public policy. Federal arbitration law controls in deciding this issue. See Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l. Inc., 198 F.3d 88, 96 (2d Cir.1999) ("When we exercise jurisdiction under Chapter Two of the FAA, we have compelling reasons to apply federal law, which is already well-developed, to the question of whether an agreement to arbitrate is enforceable."). | Federal arbitration law controls in deciding issue of whether enforcement of foreign arbitral award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards would be contrary to American public policy. 9 U.S.C.A. SS 201-208. | Is an arbitration award that is contrary to public policy enforceable? | 002668.docx | LEGALEASE-00120073-LEGALEASE-00120074 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 15250 | Mastrobuono v. Shearson Lehman Hutton Inc., 812 F. Supp. 845 | 360+18.77 | In Barbier v. Shearson Lehman Hutton, Inc., the Second Circuit specifically addressed the very same Client Agreement at issue in this case and rejected the argument "that the Garrity rule conflicts with federal law and thus is preempted by the FAA." 948 F.2d 117, 121 (1991). Based on the holding in Volt, the Second Circuit concluded that the choice-of-law provision of paragraph 13 was not preempted by federal law and that the application of the Garrity rule furthered the policy of the FAA by enforcing the terms of the parties' arbitration agreement: "[i]t is apparent from the inclusion of the choice-of-law provision that the parties intended to be bound by Garrity, and "as with any other contract, the parties' intentions control" ". Id. at 122 (citing Mitsubishi Motors Corp. v. Soler Chrysler"Plymounth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)). | Federal Arbitration Act did not preempt choice-of-law provision in arbitration clause, whereby parties to stock brokerage agreement agreed to arbitrate their disputes in accordance with New York law, including New York law prohibiting arbitrators from making any punitive damages awards; by agreeing to arbitrate in accordance with New York law, investors waived any potential award of punitive damages in arbitration. 9 U.S.C.A. S 1 et seq. | Can a choice-of-law provision contained in an arbitration clause preempt the Federal Arbitration Act in federal court proceedings? | 002695.docx | LEGALEASE-00120150-LEGALEASE-00120151 | Condensed, SA, Sub | 0.5 | 0 | 1 | 1 | 1 | 1 |
| 15251 | Faroldi v. Nungesser, 144 So. 2d 568 | 233+531 | A lease in a contract imposing reciprocal obligations on the parties by which one party gives to the other the enjoyment of a thing at a fixed price. LSA-C.C. Art. 2669. To a contract of lease, there are three absolute essentials; namely, the thing forming the subject matter of the contract, the price for its enjoyment, and the consent or agreement of the parties. LSA-C.C. Art. 2670; Caldwell v. Turner, 129 La. 19, 55 So. 695; Myers v. Burke, La.App.1st Cir., 1939, 189 So. 482. Thus, there can be no contract of lease in the absence of a stipulation or agreement between the parties as to the amount of rent to be paid. LSA-C.C. Art. 2671; McCain v. McCain Bros., 165 La. 884, 116 So. 221; Weaks Supply Co. v. Werdin, La.App.2d Cir., 1933, 147 So. 838. Two parties are necessary in order to form a contract, one proposing something and the other accepting and agreement to it; and the will of both parties must unite on the same. LSA-C.C. Art. 1798; Succession of Aurianne, 219 La. 701, 53 So.2d 901; Superior Merchandise Corporation v. Oser, La.App.Orleans, 1942, 8 So.2d 770. | Lease is contract imposing reciprocal obligations on parties by which one party gives to the other the enjoyment of a thing at fixed price. LSA-C.C. art. 2669. | Are there reciprocal obligations in leases? | 002739.docx | LEGALEASE-00120228-LEGALEASE-00120229 | Condensed, SA, Sub | 0.85 | 0 | 1 | 1 | 1 | 1 |
| 15252 | In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, Stranded Costs & Restructuring Filings, 330 N.J. Super. 65 | 145+11.2(1) | As discussed above, in IV B 3, the BPU accepted the Stipulation I proposal that PSE & G be permitted to defer the actual costs related to the SBC and NTC charges. The RA contends that allowing PSE & G to defer these costs to a future **1203 time in effect makes any present rate reductions illusory by preordaining that there will be a rate increase after the four-year transition period. Such a rate increase, the RA says, violates that Act's mandate, under N.J.S.A. 48:3"52(f), that the utilities implement a "sustainable aggregate rate reduction." Also, the Final Report specified that utilities could not be guaranteed 100% recovery of stranded costs because the mandatory rate reductions might make that impossible.As pointed out in V(C) above, there is nothing in the Act which specifies the way in which the rate reductions are to be funded. N.J.S.A. 48:3"52(d). Nor is there anything in the Act that prohibits the use of deferred accounting. In fact, the Act gives the BPU the discretion to permit an "alternative accounting process" which allows a utility to provide basic generating service while effecting rate reductions if the BPU determines that such a process is "necessary to mitigate the impact of market price fluctuations and to sustain such rate reductions."N.J.S.A. 48:3"57(b)(3). | Electric utility's use of deferred accounting for actual costs related to societal benefits charge (SBC) and nonutility generator transition charge (NTC) did not make rate reductions illusory by preordaining that there would be a rate increase after four-year transition period involving deregulation of electric utilities, and thus, use of deferred accounting did not violate Electric Discount and Energy Competition Act of 1999. N.J.S.A. 48:3-52, subds. d, f. | Does the Electric Discount and Energy Competition Act (EDECA) prohibit deferred accounting? | 002837.docx | LEGALEASE-00119935-LEGALEASE-00119936 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15253 | Biro v. Conde Nast, 883 F. Supp. 2d 441 | 237+22 | Many of Biro's allegations are based not on a defamatory connotation from statements in the Article that are alleged to be expressly false, but rather on an alleged defamatory implication that can be derived from the juxtaposition of certain statements with the omission of other allegedly material facts. ""Defamation by implication" is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." Armstrong, 85 N.Y.2d 373, 625 N.Y.S.2d 477, 649 N.E.2d at 829. A defamatory implication may be based on "a combination of individual statements which in themselves may not be defamatory," but which "might lead the reader to draw an inference that is damaging to the plaintiff." Herbert v. Lando, 781 F.2d 298, 307 (2d Cir.1986). | Under New York law a defamatory implication may be based on a combination of individual statements which in themselves may not be defamatory, but which might lead the reader to draw an inference that is damaging to the plaintiff. | What is defamation by implication? | Libel and Slander - Memo 127 - JS.docx | ROSS-003297478-ROSS-003297479 | SA, Sub | 0.71 | 0 | 0 | 1 | 1 | |
| 15254 | Gen. Prod. Co. v. Meredith Corp., 526 F. Supp. 546 | 237+9(1) | A corporation may be defamed by statements which cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business. Prosser, s 111; Restatement (Second) of Torts, ss 561, 573 (1976). Cf. Arctic Company, Ltd. v. Loudoun Times Mirror, 624 F.2d 518 (4th Cir. 1980), cert. den. 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981) (company as plaintiff). Thus, plaintiff's allegation that the subject statements defamed its name presents a cognizable defamation claim. | A corporation may be defamed by statements which cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business. | How can a corporation be defamed? | Libel and Slander - Memo 134 - JS.docx | ROSS-003289336-ROSS-003289337 | Condensed, SA | 0.7 | 0 | 1 | 0 | 1 | |
| 15255 | Ford Motor Credit Co. v. Ditton, 52 Ala. App. 555 | 386+6 | The gist of the action of trespass is an injury to the possession of personal property by use of unlawful force. Unlawful force is the essential element of the action. Cox v. Stuart, 229 Ala. 409, 157 So. 460; Webb v. Dickson, 276 Ala. 553, 165 So.2d 103. Such force may be actual physical force or it may be constructive force.Constructive force in such cases has been defined in a general way as that sort, such as threats or intimidation, to compel the submission of plaintiff against his will to the appropriation of what he asserts to be his property. Jones v. Americar, Inc., supra. The threats or intimidation referred to are those which if carried out would amount to a breach of peace or if resisted would tend to promote a breach of peace. We have found no case in which such threats and intimidation did not occur in the presence of the plaintiff and at the time of the taking. We can conceive of circumstances where such constructive force could have been applied by letter or phone, etc., at a time prior to the taking, but such are not the facts in this case. We find in the evidence no threat or intimidation committed by the agent of defendant during the conversation with plaintiff or her attorney on the night of July 10-two days prior to the taking. The statement made by the agent, Brian, that since repossession was refused by plaintiff he would have to "steal" the car cannot be construed to amount to a threat or intimidation to compel plaintiff to submit. It was conceded by counsel in oral argument that such statement meant only that repossession would be attempted covertly at a time and place when plaintiff was not present. | Gist of action of trespass is an injury to the possession of personal property by use of unlawful force which is essential element of action. | Can the unlawful force which is necessary to constitute trespass be constructive force? | 002951.docx | LEGALEASE-00119828-LEGALEASE-00119829 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 15256 | Jocks v. Tavernier, 97 F. Supp. 2d 303 | 168+16 | Under New York law, damages for false arrest are to compensate for injuries from the beginning of custody to arraignment, and damages for malicious prosecution are to compensate for injuries after arraignment. Peterson, 995 F.Supp. at 320. | Under New York law, damages for false arrest are to compensate for injuries from the beginning of custody to arraignment, while damages for malicious prosecution are to compensate for injuries after arraignment. | What form of remedy is available under a claim of malicious prosecution? | 003372.docx | LEGALEASE-00120264-LEGALEASE-00120265 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 15257 | Wimmer v. United States, 264 F. 11 | 384+6 | As the case is presented to us, Wimmer's first position is that the act is unconstitutional, because it punishes treasonable conduct, without proof of the overt act and without the two witnesses thereto required by the Constitution. As we understand the argument, it is, in substance, that adhering to and giving aid and comfort to the enemy is treason, according to the constitutional definition; that to support the cause of the enemy, or oppose that of the United States, against the prohibition of the Espionage Act, is adhering to and giving aid and comfort to the enemy, and is therefore treason; and hence that it cannot be punished unless shown by the degree of proof required by the Constitution. A very similar contention was summarily overruled by the Supreme Court in Frohwerk v. U.S., 249 U.S. 204. 210, 39 Sup.Ct. 249, 63 L.Ed. 561. | Under the constitutional definition of "treason" as adhering to the enemies, giving them aid and comfort, both adherence and giving aid are necessary, and to favor or support the enemy is insufficient. | Does adherence to the enemy and rendering them aid and comfort constitute treason? | 003668.docx | LEGALEASE-00120276-LEGALEASE-00120277 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 15258 | Hannes v. Kingdom of Roumania Monopolies Inst., 260 A.D. 189 | 221+426 | There is no doubt that the law granting immunity to the persons of foreign sovereigns grants like immunity to those representing them, such as ambassadors or similar agents, and that this immunity extends to their instrumentalities and property. The Exchange v. M'Faddon, 11 U.S. 116, 7 C ranch 116, 3 L.Ed. 287. It does not follow that, because immunity is granted to an ambassador of a foreign government or one of its instrumentalities, a suit may not be maintained against a corporation formed pursuant to the laws of the foreign government, although said corporation is owned by the government, especially when such corporation is engaged in commercial activities. We sometimes permit agents of our own government to be proceeded against where the United States is not a necessary party. United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171. But, as will hereafter be pointed out, the question of immunity of a local government from suit depends on principles somewhat different from that of immunity of a foreign sovereign state. | The law granting immunity to foreign sovereigns grants like immunity to those representing them, such as ambassadors, and the immunity extends to instrumentalities and property of the sovereigns. | Does the privilege of immunity extend to the propertyof foreign sovereigns? | 002995.docx | LEGALEASE-00120507-LEGALEASE-00120508 | Condensed, SA, Sub | 0.81 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15259 | City of Redding, Cal. v. F.E.R.C., 693 F.3d 828 | 145+11.3(1) | Congress has infused FERC with expansive authority over energy markets through the FPA. Section 201 of the FPA grants FERC exclusive jurisdiction over the transmission and sale of electric energy in interstate commerce. 16 U.S.C. " 824(b)(1). Under " 205, Congress gave FERC jurisdiction over the "rates and charges" of "every public utility." 16 U.S.C. " 824d.11 This section declares unlawful "any ... rate or charge that is not just and reasonable" and requires public utilities to file their rates with FERC. Id. Section 206(a) provides that whenever FERC finds a rate to be unjust and unreasonable, FERC "shall determine the just and reasonable rate ... to be thereafter observed and in force." 16 U.S.C. " 824e(a). FERC's authority under this provision, however, is limited by being prospective only, and does not permit retroactive adjustments to rates. City of Anaheim v. FERC, 558 F.3d 521, 523 (D.C.Cir.2009) ("On its face, " 206(a) prohibits retroactive adjustments of rates."); see also Exxon Mobil, 571 F.3d at 1211 (observing that under " 206(a) "FERC may not retroactively alter a filed rate to compensate for prior over- or underpayments"). | The authority of the Federal Energy Regulatory Commission (FERC) to determine a just and reasonable rate is limited by being prospective only, and does not permit retroactive adjustments to rates. Federal Power Act, S 206(a), 16 U.S.C.A. S 824e(a). | Is the FERC authorized to permit retroactive adjustments to rates? | Electricity - Memo 56 - JS.docx | ROSS-003297867-ROSS-003297868 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 15260 | State v. Dymond, 110 N.H. 228 | 207+5 | The offense with which this defendant was charged, however, did not require proof of marriage, since he was indicted for incest by intercourse, not marriage, with his daughter. Absence of a marriage between the defendant and the complainant's mother would not, as defendant suggests, make the alleged crime "a legal impossibility." See State v. Wood, 235 N.C. 636, 70 S.E.2d 665; State v. Williams, 124 Wash. 160, 213 P. 921. | Absence of marriage between defendant and complainant's mother would not make alleged crime of incest by intercourse a legal impossibility. RSA 579:7. | Does the offense of incest require proof of marriage? | 003215.docx | LEGALEASE-00120574-LEGALEASE-00120575 | Condensed, SA, Sub | 0.65 | 0 | 1 | 1 | 1 | 1 |
| 15261 | In re Tribune Media Co., 552 B.R. 282 | 237+4 | The third element of a defamation claim"fault"may be based either on negligence or constitutional malice, which is sometimes called "actual malice." The standard of fault used to review a defamation claim varies according to the plaintiffs status as a public figure, limited public figure or a private individual because "[w]hen the speech is of public concern and the plaintiff is a public official or public figure, the Constitution clearly requires the plaintiff to surmount a much higher barrier before recovering damages from a media defendant than [is necessary to prove with a private plaintiff]." Because Mr. Henke's status affects the standard by which he must prove his claims and the type of damages he may pursue, it is appropriate to discuss the third element at the outset. | Fault, as element of defamation claim under Maryland law, may be based either on negligence or constitutional malice, which is sometimes called "actual malice." | Can fault in a defamation case be based on negligence or malice? | 003297.docx | LEGALEASE-00120582-LEGALEASE-00120583 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 15262 | In re Langeslag, 366 B.R. 51 | 228+828.21(2) | Simply stated, given the content of the jury instructions and the form of the special interrogatory on the defamation count, there is more than one possible inference as to the jury's finding on the Debtor's intent when she communicated (in the parlance of the law of defamation, "published") defamatory statements about Eddy. The defendant's state of mind in making the publication is material to the issues of liability for defamation and damages, in some contexts. Here, the trial judge instructed the jury on the issue of the Debtor's intent in the alternative, with reference to both "[i]ntentional publication" and "[n]egligent publication." The former was identified as occurring when a defendant has the actual purpose of communicating the defamation to third parties or has knowledge that the statement "is substantially certain to be communicated," and the latter "if a reasonable person would recognize that the defamatory matter might be communicated to a person other than" the subject plaintiff. | Prepetition state-court judgment on radio station owner's defamation claim against Chapter 7 debtor-former employee was not entitled to collateral estoppel effect in owner's subsequent proceeding under the discharge exception for willful and malicious injury; special interrogatory given the jury did not mention debtor's contemporaneous intent, trial judge instructed jury on issue of debtor's intent in the alternative, with reference to both intentional publication and negligent publication, and nothing in the record revealed which option the jury elected in its fact-finding, so that there was no clearly-articulated finding of fact on specific intent that could be matched to bankruptcy law's requirements, and it was at least as likely as not that the issue actually decided by the jury was not identical to the issue raised by the subject discharge exception. 11 U.S.C.A. S 523(a)(6). | What is negligent publication? | Libel and Slander - Memo 158 - RK.docx | ROSS-003283993-ROSS-003283995 | Condensed, SA, Sub | 0.12 | 0 | 1 | 1 | 1 | 1 |
| 15263 | Cobin v. Rice, 823 F.Supp. 1419 | 289+936 | The court notes that even in the absence of an explicit breach of the Partnership Agreement, Rice's failure to contribute the necessary capital to the Partnership represents conduct which makes it not reasonably practicable for the plaintiffs to carry on the Partnership's business in partnership with Rice. Under California law, conduct of a partner which is injurious to the partnership constitutes a ground for judicial dissolution of the partnership. Chatten v. Martell, 166 Cal.App.2d 545, 333 P.2d 364, 368 (1958). | Under California law, conduct of partners which is injurious to partnership constitutes ground for judicial dissolution of partnership. West's Ann.Cal.Corp.Code S 15032(1)(d, f). | Can the conduct of a partner be grounds for the dissolution of a partnership? | 003438.docx | LEGALEASE-00120646-LEGALEASE-00120647 | Condensed, SA, Sub | 0.66 | 0 | 1 | 1 | 1 | 1 |
| 15264 | Zaidi v. Shah, 502 S.W.3d 434 | 184+7 | More commonly, certain formal relationships"such as those between an attorney and client, between partners, and between a trustee and a trust beneficiary"give rise to fiduciary duties as a matter of law. See Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex.1998). The General Partner in the Tenant limited partnership, however, owed no fiduciary duty to the Landlord, and Chagla and Prestige owed no fiduciary duties to either of the Borrowers. | Certain formal relationships, such as those between an attorney and client, between partners, and between a trustee and a trust beneficiary, give rise to fiduciary duties as a matter of law. | Does a fiduciary relationship exist between partners in a partnership? | 003445.docx | LEGALEASE-00120654-LEGALEASE-00120655 | Condensed, SA | 0.58 | 0 | 1 | 0 | 1 | |
| 15265 | First Nat. Bank & Tr. Co. In Larned v. Wetzel, 42 Kan. App. 2d 924 | 13+2 | The Wetzel Buyers are correct that courts of equity have power to apply the law to unusual conditions and to grant relief as the facts of a particular case may require. It is undisputed that the Wetzel Buyers suffered a loss due to their borrowing $200,000 to buy the parcel of real estate at the sheriff's sale. But a mere loss alone is insufficient to create a right to damages. At both law and equity, an injured party cannot obtain a remedy unless there is a corresponding wrong for which a remedy is necessary. | At both law and equity, an injured party cannot obtain a remedy unless there is a corresponding wrong for which a remedy is necessary. | Can a party obtain an equitable remedy without a wrong for which a remedy is necessary? | Subrogation - Memo 146 - VP C.docx | ROSS-003310862-ROSS-003310863 | Condensed, SA | 0.74 | 0 | 1 | 0 | 1 | |
| 15266 | A. Copeland Enterprises v. Slidell Mem'l Hosp., 657 So. 2d 1292 | 366+27 | In essence, subrogation is a contract between the creditor and the person who renders performance. It is subject to the general rules that govern the proof of obligations. See Planiol & Ripert Traite Elemenntaire de Droit Civil, p. 1. no. 480, at 274 (11th ed. La.St.L.Inst. trans.1959). Subrogation may be either conventional or legal. La.C.C. art. 1825. It may result from either the agreement of the obligor or the obligee or both with a third person, or directly from the operation of law. Thus, the intention of subrogation is to protect such persons who perform certain acts. Litvinoff, The Law of Obligations, 11.8 (1992). | Subrogation may result from either agreement of obligor or obligee or both with third person or directly from operation of law. LSA-C.C. art. 1825. | What does subrogation result from? | 003571.docx | LEGALEASE-00120357-LEGALEASE-00120358 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15267 | Chase v. Ameriquest Mortg. Co., 155 N.H. 19 | 366+1 | Equitable subrogation, in particular, is a broad doctrine, which is given liberal application. Id. " 5. "It applies where one who has discharged the debt of another may, under certain circumstances, succeed to the rights and position of the satisfied creditor." Id. In order for equitable subrogation to apply, we hold that all of the following conditions must be met: (1) the subrogee cannot have acted as a volunteer; (2) the subrogee must have paid a debt upon which it was not primarily liable; (3) the subrogee must have paid the entire debt; and (4) subrogation may not work any injustice to the rights of others. See id. Although the trial court held that equitable subrogation required satisfaction of a fifth element, namely, that payment by the subrogee have been made to protect its own interest, we conclude that the definition of "volunteer," set forth below, adequately takes this consideration into account. Therefore, inclusion of this fifth element in the test for equitable subrogation is unnecessary. | Equitable subrogation applies where one who has discharged the debt of another may, under certain circumstances, succeed to the rights and position of the satisfied creditor. | When does subrogation apply? | Subrogation - Memo 75 - ANG C.docx | LEGALEASE-00009933-LEGALEASE-00009934 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 15268 | Spector v. Old Town Key W. Dev., Ltd., 567 So. 2d 1017 | 289+1012 | First, a liquidating trustee, like a more traditional receiver, provides only an ancillary remedy for the enforcement of the substantive claims asserted in the proceeding, see Lee v. Lee, 407 So.2d 366 (Fla. 5th DCA 1981); 44 Fla.Jur.2d Receivers " 2 (1984), and thus cannot by definition be said to constitute "the underlying major question in the case," under the test for determining whether an action is local or transitory. Goedmakers v. Goedmakers, 520 So.2d 575, 579 (Fla.1988). Second, and far more important, it is apparent that, although the real estate owned by the partnership may be involved tangentially in the case"like that owned by the "partners" of a marriage which need not be dissolved where the parties' realty is located, Goedmakers, 520 So.2d at 579"no action for a receiver directly affects the title to the property. It is thus no more than a transitory claim which is not governed by the local action rule. Id.; Royal v. Parado, 462 So.2d 849 (Fla. 1st DCA 1985) (action for rescission or cancellation of contract for sale or exchange of land is transitory, not local action required to be brought where land located); Jutagir v. Marlin, 453 So.2d 503 (Fla. 3d DCA 1984) (complaint to rescind agreement to sell land to which there was counterclaim for specific performance is in personam, not a local action); St. Laurent v. Resort Marketing Assocs., Inc., 399 So.2d 362 (Fla. 2d DCA 1981) (suit for breach of sales marketing agreement for sale of ownership units at condominium resort located in Monroe County need not be brought there because no property "in litigation," as such); Coon v. Abner, 246 So.2d 143 (Fla. 3d DCA 1971) (suit for cancellation of note on real property located in Dade County, venue proper in Orange County where note was executed and made payable) | General partners' suit against limited partners' which sought appointment of liquidating trustee to dissolve and eventually distribute assets, was transitory claim, and need not have been brought in county in which property in question was located; any remedy provided by trustee was ancillary and did not constitute underlying major question, and no action for receiver directly affected title to property. | "In the case of in personam actions, does the presence of real property as an issue make it a local action?" | 003699.docx | LEGALEASE-00120629-LEGALEASE-00120631 | Condensed, SA, Sub | 0.77 | 0 | 1 | 1 | 1 | 1 |
| 15269 | Customers Bank v. Municipality of Norristown, 942 F. Supp. 2d 534 | 148+2.2 | Plaintiffs appear to argue that the condemnation of the Property and imposition of municipal liens constituted a taking. The Fifth Amendment proscribes the taking of property for public use without just compensation. U.S. Const. amend. V. It is well-recognized that this prohibition applies to state and local governments under the Fourteenth Amendment. See Chicago, Burlington & Quincy R. Co. v. City of Chicago, 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897). The Third Circuit has held that the imposition of a municipal lien does not constitute a taking because, under Pennsylvania law, filing a lien does not affect the debtor's use of that property until foreclosure. Cowell v. Palmer Tp., 263 F.3d 286, 291 (3d Cir.2001). Placing a lien on a property does not foreclose all economically viable uses of the land. Id. | Under Pennsylvania law, city's filing of municipal liens against condominium units did not affect owners' use of properties until foreclosure, and thus did not constitute regulatory taking. U.S.C.A. Const.Amend. 5. | Does imposition of municipal lien constitute a taking? | 003114.docx | LEGALEASE-00120699-LEGALEASE-00120700 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 15270 | Karam v. State, Dep't of Envtl. Prot., 308 N.J. Super. 225 | 148+2.1 | We first consider the economic impact of the denial of the development permit. As stated above, the mere diminution of land value itself does not constitute a taking. Gardner v. New Jersey Pinelands Comm'n, 125 N.J. at 210, 593 A.2d 251. Likewise, impairment of the marketability of land alone does not effect a taking. Ibid. Also, restrictions on uses do not necessarily result in takings even though they reduce income or profits. Ibid.; see also Southern Burlington County NAACP v. Township of Mount Laurel, 92 N.J. 158, 273 and n. 34, 456 A.2d 390 (1983). A regulatory scheme will be upheld against a claim of inverse condemnation "unless it denies "all practical use" of property, or "substantially destroys the beneficial use of private property," or does not allow an "adequate" or "just and reasonable" return on investment." Gardner v. New Jersey Pinelands Comm'n, 125 N.J. at 211, 593 A.2d 251 (citations omitted). "[O]ur courts have applied the standard that focuses on the beneficial or economic uses allowed to a property in the context of particularized restraints designed to preserve the special status of distinctive property and sensitive environmental regions." Ibid. (citing In re Egg Harbor Assocs., 94 N.J. 358, 464 A.2d 1115 (1983); Spiegle v. Borough of Beach Haven, 46 N.J. 479, 218 A.2d 129, cert. denied, 385 U.S. 831, 87 S.Ct. 63, 17 L.Ed.2d 64 (1966); Orleans Builders & Developers v. Byrne, 186 N.J.Super. 432, 453 A.2d 200 (App.Div.1982); In re Loveladies Harbor, Inc., 176 N.J.Super. 69, 422 A.2d 107 (App.Div.1980), certif. denied, 85 N.J. 501, 427 A.2d 588 (1981); New Jersey Builders Ass'n v. Department of Envtl. Protection, 169 N.J.Super. 76, 404 A.2d 320 (App.Div.), certif. denied, 81 N.J. 402, 408 A.2d 796 (1979); Toms River Affiliates v. Department of Envtl. Protection, 140 N.J.Super. 135, 355 A.2d 679 (App.Div.), certif. denied, 71 N.J. 345, 364 A.2d 1077 (1976); Sands Point Harbor, Inc. v. Sullivan, 136 N.J.Super. 436, 346 A.2d 612 (App.Div.1975)) | Neither diminution of land value itself, nor impairment of marketability of land alone, constitutes a taking. U.S.C.A. Const.Amends. 5, 14. | Can the diminution of land value or impairment of the marketability of land constitute a taking? | 003122.docx | LEGALEASE-00120784-LEGALEASE-00120786 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15271 | Dahlen v. Shelter House, 598 F.3d 1007 | 148+266 | We focus on the first step of the Dahlens' argument, analysis of which reveals the flaw in their claim.6 The Dahlens, in essence, are attempting to bootstrap their Iowa statutory claim into a federal constitutional claim. Under their view, violations of " 6A.22, ipso facto, are also violations of the Fifth Amendment's Takings Clause, regardless of whether the taking satisfies the "traditionally broad understanding of public purpose" developed in Fifth Amendment jurisprudence, Kelo, 545 U.S. at 485, 125 S.Ct. 2655. We ultimately reject their claim that violations of state eminent domain statutes necessarily give rise to federal constitutional claims. | Planned homeless shelter's alleged violation of Iowa Eminent Domain Law's definition of public purpose did not necessarily give rise to a federal takings claim. U.S.C.A. Const.Amend. 5; I.C.A. S 6A.22(2)(a)(1). | Do violations of state eminent domain statutes give rise to federal constitutional claims? | Eminent Domain - Memo 159 - GP.docx | ROSS-003285382-ROSS-003285384 | Condensed, SA, Sub | 0.68 | 0 | 1 | 1 | 1 | 1 |
| 15272 | Deptford Twp. v. Woodbury Terrace Sewerage Corp., 54 N.J. 418 | 317A+145.1 | This section does not pertain to the option provision in the present case for several reasons. First, it is by no means clear that the term "lands' includes the bulk of the utility's plant, mains and pipes. Indeed, in connection with the acquisition of utility property by municipalities, the Legislature has clearly distinguished between plant and equipment on the one hand, and the "lands' on which they are constructed on the other. N.J.S.A. 40:63-23.* In 1962, the Legislature amended N.J.S.A. 48:3-7 to read "property" instead of "lands," a further indication that "lands' should be given a narrow interpretation. (L.1962, c. 198, s 36.) Second, since the powers delegated by the Legislature to the PUC are to be read broadly, see In re Public Service Electric & Gas Co., supra at 371 of 35 N.J., 173 A.2d 233, conversely, exceptions to those powers must be carefully circumscribed. For this reason we interpret N.J.S.A. 48:3-7 to apply to present transfers only, and not to an option which may or may not be exercised at any time in the future. If the option provision were valid, the Township could purchase all of the utility's property at any time for a price well below its true value, in fact after 16 years, $1.00. If this Damoclean sword were permitted to hang over the utility, Woodbury's incentive to adequately maintain and expand its service in the interest of the public would be destroyed, as well as its ability to obtain outside financing. This is especially true where, as here, the option precludes any encumbrance in excess of the rapidly declining sales price. | Since powers delegated by Legislature to Public Utilities Commission are to be read broadly, exceptions to those powers must be carefully circumscribed. | Does the Public Utilities Commission have broad powers? | 042566.docx | LEGALEASE-00120946-LEGALEASE-00120947 | Condensed, SA, Sub | 0.9 | 0 | 1 | 1 | 1 | 1 |
| 15273 | Moody v. City of Newport News, Va., 93 F. Supp. 3d 516 | 170A+629 | City Defendants correctly state the general rule regarding the relationship between an exhibit and the complaint. Under Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." As the Fourth Circuit has stated, "[i]n the event of conflict between the bare allegations of the complaint and any exhibit attached [to the complaint,] ... the exhibit prevails." S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 182 (4th Cir.2013) (second alteration in original) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)). | In the event of conflict between the bare allegations of the complaint and any exhibit attached to the complaint, the exhibit prevails. Fed.Rules Civ.Proc.Rule 10(c), 28 U.S.C.A. | "When there is a conflict between the bare allegations of a complaint and any exhibit attached to a complaint, will the exhibit prevail?" | 022915.docx | LEGALEASE-00120981-LEGALEASE-00120982 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 15274 | S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, 713 F.3d 175 | 170A+1829 | When addressing the appropriateness of dismissal for lack of standing, we consider exhibits attached to the complaint in addition to the complaint itself. Fed.R.Civ.P. 10(c); Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir.2011). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached [to the complaint,] ... the exhibit prevails." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991). | When addressing the appropriateness of dismissal for lack of standing, the court considers exhibits attached to the complaint in addition to the complaint itself, and in the event of conflict between the bare allegations of the complaint and any exhibit attached to the complaint, the exhibit prevails. Fed.Rules Civ.Proc.Rule 10(c), 28 U.S.C.A. | "When there is a conflict between the bare allegations of a complaint and any exhibit attached to a complaint, will the exhibit prevail?" | Pleading - Memo 122 - RMM.docx | LEGALEASE-00010896-LEGALEASE-00010897 | Condensed, SA, Sub | 0.28 | 0 | 1 | 1 | 1 | 1 |
| 15275 | Rock River Lumber Corp. v. Universal Mortg. Corp. of Wisconsin, 82 Wis. 2d 235 | 366+1 | Although such conventional subrogation has been said to rest on contract, it is a doctrine of equity, and is applied or denied upon equitable principles. American Ins. Co. v. Milwaukee, 51 Wis.2d 346, 351, 353, 187 N.W.2d 142 (1971). The object of subrogation is ". . . to do substantial justice independent of form or contract relation between the parties . . . ." Hughes v. Thomas, 131 Wis. 315, 319, 111 N.W. 474, 476 (1907). | Conventional subrogation is a doctrine of equity, and is applied or denied upon equitable principles. | Is subrogation applied or denied upon equitable principles? | 043936.docx | LEGALEASE-00120985-LEGALEASE-00120986 | Condensed, SA | 0.76 | 0 | 1 | 0 | 1 | |
| 15276 | Sierra Tucson v. Lee ex rel. Cty. of Pima, 230 Ariz. 255 | 106+207.1 | Whether to accept special action jurisdiction is for this court to decide in the exercise of our discretion." Potter v. Vanderpool, 225 Ariz. 495, " 6, 240 P.3d 1257, 1260 (App.2010). We do so here for a variety of reasons. First, "[b]ecause an appeal cannot adequately cure an erroneous venue ruling, such orders "are appropriately reviewable by special action." " Yarbrough v. Montoya"Paez, 214 Ariz. 1, " 1, 147 P.3d 755, 756 (App.2006), quoting Floyd v. Superior Court, 125 Ariz. 445, 445, 610 P.2d 79, 79 (App.1980); see also Ariz. R.P. Spec. Actions 1(a) (special-action review appropriate when no equally plain, speedy and adequate remedy by appeal exists). | Court of Appeals would accept special action jurisdiction with respect to petitioners' challenge to trial court's denial of their change of venue in underlying wrongful death suit, as an appeal could not adequately cure an erroneous venue ruling, case required interpretation of venue statute and rule, which was particularly appropriate for review by special action, and such interpretation and correct application of statute were matters of statewide importance. A.R.S. S 12-404; 16 A.R.S. Rules Civ.Proc., Rule 15(a). | Are venue rulings reviewable by special action? | 008144.docx | LEGALEASE-00121647-LEGALEASE-00121648 | Condensed, SA, Sub | 0.22 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15277 | Thompson v. Nagle, 118 F.3d 1442 | 352H+32 | The sufficiency of the evidence claim advanced by Thompson in this appeal is based on the Due Process Clause of the Fourteenth Amendment, which requires the State to prove beyond a reasonable doubt each element of the offense charged. Jackson v. Virginia, 443 U.S. 307, 314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072"73, 25 L.Ed.2d 368 (1970); Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir.1987). Under Alabama law, a conviction for rape requires evidence that the victim was alive at the time of intercourse. Padgett v. State, 668 So.2d 78, 84 (Ala.Crim.App.1995). In this case, the medical evidence produced at trial was inconclusive as to whether the act of intercourse occurred before or after Balarzs' death. Therefore, this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State. See Machin v. Wainwright,758 F.2d 1431, 1435 (11th Cir.1985). The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of rape beyond a reasonable doubt. See Felker v. Thomas,52 F.3d 907, 909 (11th Cir.) (citing Jackson, 443 U.S. at 319, 99 S.Ct. at 2789), opinion supplemented on denial of rehearing by 62 F.3d 342 (11th Cir.1995), cert. denied, 516 U.S. 1133, 116 S.Ct. 956, 133 L.Ed.2d 879 (1996). A rational jury could conclude, based on Thompson's own statements, thatBalarzs was alive at the time intercourse occurred. Thus, the evidence supports Thompson's conviction for rape, and the district court correctly denied Thompson's claim on this ground. | Under Alabama law, conviction for rape requires evidence that victim was alive at time of intercourse. Ala.Code 1975, S 13A-6-61(a). | Does a conviction for rape require the victim to be alive when it was committed? | Sex Offence - Memo 11 - BP.docx | LEGALEASE-00011126-LEGALEASE-00011128 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |
| 15278 | Johnson v. Beane, 541 Pa. 449 | 366+1 | The goal of subrogation is to place the burden of the debt upon the person who should bear it. The equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights he is subrogated. Allstate Insurance Company v. Clarke, 364 Pa.Super. 196, 201, 527 A.2d 1021, 1024 (1987). As subrogee, Erie now stands in the shoes of Appellant and may pursue an action to recover the amount it paid to Appellant. It is of no moment to Appellant if Erie decides not to pursue its right of recovery. | Goal of subrogation is to place burden of debt upon person who should bear it. | Does subrogation place the burden on the debt upon the person who should bear it? | Subrogation - Memo # 455 - C - NO.docx | ROSS-003283225-ROSS-003283226 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |
| 15279 | Trogub v. Robinson, 366 Ill. App. 3d 838 | 366+1 | The following principles are generally relevant to this appeal. "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." D. Dobbs, Law of Remedies .3(4), at 604 (2d ed.1993). "Factually, the case arises because, for some justifiable reason, [a party] has paid a debt owed by the defendant." D. Dobbs, Law of Remedies 3(4), at 604 (2d ed.1993). "Having paid the defendant's creditor, the [party] stands in the creditor's shoes and "is entitled to exercise all the remedies which the creditor possessed" against the defendant." D. Dobbs, Law of Remedies " 4.3(4), at 604 (2d ed.1993), quoting American Surety Co. of New York v. Bethlehem National Bank of Bethlehem, 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241, 244 (1941). "Thus, a subrogee merely succeeds to the legal rights or claims of a subrogor." Am.Jur.2d Subrogation 1, at 542 (2001). Subrogation rights originated in common law to prevent unjust or unearned enrichment of one party at the expense of another, but may also be created by statute or contract. Aames Capital Corp. v. Interstate Bank of Oak Forest, 315 Ill.App.3d 700, 706"07, 248 Ill.Dec. 565, 734 N.E.2d 493 (2000). In the case of an insurance contract, subrogation rights arise where (1) a third party has caused a loss and is primarily liable to the insured for the loss, (2) the insurer is secondarily liable to the insured due to an insurance policy, and (3) the insurer pays the insured under that policy, thereby extinguishing the debt owed by the third party. State Farm General Insurance Co. v. Stewart, 288 Ill.App.3d 678, 686, 224 Ill.Dec. 310, 681 N.E.2d 625 (1997). When an insurance contract gives the insurer the right to subrogate to the extent of its payment, the contract will be enforced as written and the insurer will receive full subrogation, even if the insured's losses exceed the amount it recovers from the | "Subrogation" is the substitution of one person for another; one person stands in the shoes of another and asserts that person's rights against the defendant. | Is subrogation the substitution of one person for another? | 043719.docx | LEGALEASE-00121426-LEGALEASE-00121428 | Condensed, SA, Sub | 0.93 | 0 | 1 | 1 | 1 | 1 |
| 15280 | McShaffry v. Amegy Bank Nat. Ass'n, 332 S.W.3d 493 | 366+7(1) | Brinsden, however, is not without a remedy for a recovery on the note. Rather, he has a statutory right of subrogation against his co-sureties "for the amount his payment exceeded his proportionate share of the judgment plus interests and costs." Chapter 34.04 of the Texas Business and Commerce Code provides, (a) A judgment is not discharged by a surety's payment of it in whole or part if the payment is compelled or, if voluntarily made, is applied to the judgment because of the suretyship relation. (b) A surety who pays on a judgment as described in Subsection (a) of this section is subrogated to all of the judgment creditor's rights under the judgment. A subrogation surety is entitled (2) if there is more than one surety, to execution on the judgment against both the principal's property and the property of his cosurety or cosureties for the amount his payment exceeded his proportionate share of the judgment, plus interest and costs. See Tex. Bus. & Com.Code Ann. " 34.04(a), (b) (Vernon 2002). Section 34.01 defines "surety" to include a guarantor of a contract. See id. " 34.01 (Vernon 2002). Thus, Section 34.04 provides subrogation rights for guarantors who have paid a judgment. Brinsden became the holder of the note, thus raising the issue of whether the judgment was extinguished. On, remand, if Amegy's earlier judgment was, in fact, extinguished by Brinsden's payment of it, Brinsden then may assert his rights against his co-guarantors in a statutory claim for contribution for their proportionate share of the payment. | Statute that provides subrogation rights for sureties includes guarantors who have paid a judgment. V.T.C.A., Bus. & C. S 34.04. | Does subrogation rights are provided to guarantors who have paid a judgment? | 043995.docx | LEGALEASE-00121352-LEGALEASE-00121353 | Condensed, SA, Sub | 0.92 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15281 | In re Steve's Furniture Warehouse, 46 B.R. 80 | 366+7(1) | Under California law, a guarantor who has assumed responsibility for payment to a creditor is liable immediately upon default of the principal. Cal.Civ.Code " 2807. A creditor may proceed directly against the guarantor unless the guarantor requires the creditor to first proceed against the principal. Cal.Civ.Code " 2845. Once a guarantor has paid the principal's obligation, the guarantor is subrogated to the creditor's rights. Cal.Civ.Code " 2848. In effect, the guarantor acquires any right against the principal that the creditor previously had, which is why subrogation is often referred to as an assignment by operation of equity. Meyers v. Bank of America National Trust & Savings Association, 11 Cal.2d 92, 95, 77 P.2d 1084 (1938). Here, when Herring made the $73,000.00 payment to TGF, Herring was subrogated to TGF's rights against Steve's to the extent of his payment. | Once guarantor has paid principal's obligation, guarantor is subrogated to creditor's rights. West's Ann.Cal.Civ.Code, S 2848. | Is a guarantor subrogated to creditor's rights once the guarantor has paid principal's obligation? | Subrogation - Memo # 684 - C - SA.docx | ROSS-003312638-ROSS-003312639 | Condensed, SA, Sub | 0.86 | 0 | 1 | 1 | 1 | 1 |
| 15282 | Leahy v. Haworth, 141 F. 850 | 83E+374 | In Davidson v. Powell, 114 N.C. 575, 19 S.E. 601, it was held that the indorsement of a negotiable note in these words, "I assign over the within note to S. M. Powell," "does not limit the indorser's liability. In Sears v. Lantz, 47 Iowa, 658, it is held that where the payee of a note wrote on the back thereof the following words: "I hereby assign all my right and title to Louis Meckley," and signed his name thereto, he thereby subjected himself to all the liabilities of an indorser. In Merrill v. Hurley, 6 S.D. 593, 62 N.W. 958, 55 Am.St.Rep. 859, it is held that when the president of a corporation to which negotiable interest bearing bonds are payable, places upon the back thereof the words, "For value received I hereby assign the within bond, together with all out interest in and all our right under the mortgage securing the same to Mary E. Merrill without recourse," and assigns the same as such president, the same constitutes a contract of indorsement and is not a mere assignment of the instrument. Bisbing v. Graham, 14 Pa. 14, 53 Am.Dec. 510, was a suit on a note by the endorsee against the maker. The note was payable to the order of David Paynter. He indorsed it as follows: "For value received I assign to William Graham, or order, all my right, title and interest in the within note, without recourse"- and signed his name thereto. The court held this to be an indorsement, protecting the indorsee from equities existing between the maker and payee, making use of these words:"Nor is the fact that the transfer of the note assumes the form of an ordinary assignment, such a departure from the usual course of business as to put the indorsee on his guard against the indorser. Although a blank indorsement in our commercial towns is the usual mode, yet in the country it is so frequently otherwise that it seldom, if ever, provokes inquiry or observation." | A written assignment on the back of a promissory note payable to the order of the payee, signed by such payee, is the equivalent of a blank indorsement to transfer title to the note free from equities, either under the law merchant or Comp.St.Neb.1901, S 3380, which provides that "all bonds, promissory notes, bills of exchange, foreign and inland, drawn for any sum or sums of money certain, and made payable to any person or order, or to any person or assigns, shall be negotiable by indorsement thereon so as absolutely to transfer and vest the property thereof in each and every indorsee successfully," and under such section a written guaranty, signed by the payee on the back of a note payable to his order, constitutes an indorsement with an enlarged liability, and transfers the legal title free from equities existing between the maker and payee. | Does a payee's assignment on the back of the note of all my right and title bind him as an indorser? | 009550.docx | LEGALEASE-00122328-LEGALEASE-00122329 | Condensed, SA, Sub | 0.54 | 0 | 1 | 1 | 1 | 1 |
| 15283 | Bronco Wine Co. v. Jolly, 129 Cal. App. 4th 988 | 148+81.1 | The takings clause protects real property (Lucas v. S.C. Coastal Council (1992) 505 U.S. 1003, 1019, 112 S.Ct. 2886, 2895, 120 L.Ed.2d 798, 815), tangible personal property (Andrus v. Allard (1979) 444 U.S. 51, 65, 100 S.Ct. 318, 326, 62 L.Ed.2d 210, 222 (Andrus )) and intangible property. (Ruckelshaus v. Monsanto Co., supra, 467 U.S. at pp. 1003"1004, 104 S.Ct. at p. 2873, 81 L.Ed.2d at pp. 832"833(trade secrets).) Whether something is protected property turns on the " "existing rules and understandings' and "background principles' derived from an independent source, such as state, federal, or common law, [which] define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." (Conti, supra, 291 F.3d at p. 1340, quoting Lucas, supra, 505 U.S. at p. 1030, 112 S.Ct. at p. 2901, 120 L.Ed.2d at p. 822.) Such property interests may derive from federal law (Conti, supra, 291 F.3d at pp. 1340"1341, and fn. 4) or state law. (Lucas, supra, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798.) | The takings clause protects real property, tangible personal property, and intangible property. U.S.C.A. Const.Amend. 5. | "Are real, tangible and personal property protected by taking clause?" | Eminent Domain - Memo 197 - GP.docx | ROSS-003288636-ROSS-003288637 | Condensed, SA, Sub | 0.88 | 0 | 1 | 1 | 1 | 1 |
| 15284 | Echtenkamp v. Loudon Cty. Pub. Sch., 263 F. Supp. 2d 1043 | 237+6(1) | Oates did not appear on the Sixty Minutes program. Underwager's claims against Oates Alongside plaintiff's " 1983 constitutional tort claims, she also asserts a claim of defamation under Virginia state law. Under Virginia law, to state a claim for defamation, plaintiff must show (1) publication, (2) of an actionable statement with (3) the requisite intent. Chapin v. Knight"Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir.1993). To be "actionable," the statement must not only be false, but defamatory, that is, it must "tend[ ] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. In other words, "[m]erely offensive or unpleasant statements" are not defamatory; rather, defamatory statements "are those that make the plaintiff appear odious, infamous, or ridiculous."Id. (citation omitted). Furthermore, "speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action." Yeagle v. Collegiate Times, 255 Va. 293, 295, 497 S.E.2d 136 (1998). Such speech is sometimes referred to as "pure expressions of opinion." Id. at 295 n. 1, 497 S.E.2d 136. A statement is defamatory per se if it (i) imputes the commission of a crime of moral turpitude for which a party may be convicted, (ii) imputes that the person is infected with a contagious disease which would exclude the person from society, (iii) imputes an unfitness to perform the duties of a job or lack of integrity in the performance of duties, or (iv) prejudices the party in her profession or trade. Id. at 297 n. 2, 497 S.E.2d 136, citing Fleming v. Moore, 221 Va. 884, 889, 275 S.E.2d 632 (1981). And significantly, under Virginia law, whether a statement is actionable as defamatory and whether it is defamatory per se are matters of law for the trial judge to determine. Id. | Under Virginia law, merely offensive or unpleasant statements are not defamatory, rather, defamatory statements are those that make plaintiff appear odious, infamous, or ridiculous. | Are unpleasant and offensive statements defamatory? | 021072.docx | LEGALEASE-00122282-LEGALEASE-00122284 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15285 | Redwing Carriers v. Saraland Apartments, 94 F.3d 1489 | 289+1175(6) | That the Hutton partners are not owners of the Site under CERCLA does not end our analysis. This only means the limited partners are not directly liable under the Act for cleaning up the Site. The question remains whether the Hutton partners, by virtue of their being limited partners in the Partnership, are accountable indirectly for the Partnership's CERCLA liability under applicable partnership law. As a general rule, a limited partner is not liable for the obligations of the partnership. See, e.g., Ala.Code " 10"9A"42(a); Cal.Corp.Code " 15632 (West 1996); Fla.Stat.Ann. " 620.129(1) (West 1993). An exception arises when a limited partner acts like a general partner in controlling the partnership's business. In those circumstances, the limited partner may lose its limited liability status and be held to account for the partnership's liability. See, e.g., Ala.Code " 10"9A"42(a); Cal.Corp.Code " 15632; Fla.Stat.Ann. " 620.129(1). The Hutton partners' liability for the Partnership's CERCLA obligations therefore depends on whether they crossed this line in controlling the business of Saraland Limited. | Limited partner is not generally liable for obligations of partnership, although exception arises when limited partner acts like general partner in controlling partnership's business. | When does a limited partner become liable like a general partner? | 021819.docx | LEGALEASE-00122483-LEGALEASE-00122484 | Condensed, SA, Sub | 0.84 | 0 | 1 | 1 | 1 | 1 |
| 15286 | McCrary v. Butler, 540 So.2d 736 | 289+429 | There is no arbitrary test as to whether a partnership exists, but such a determination will be made upon all of the attendant circumstances. Adderhold v. Adderhold, supra. A partnership arises only from an express or implied agreement among the parties and is never established by implication or by operation of law. Waters v. Union Bank of Repton, 370 So.2d 957 (Ala.1979); Adderhold v. Adderhold, supra; see also Ala.Code 1975, " 10"8"20. This Court, in Waters v. Union Bank of Repton, supra, held that "[t]he surrounding circumstances as well as any express agreement between the parties may evidence the intention of the parties necessary to establish such a [partnership] relationship. Hair v. Beall, 274 Ala. 699, 151 So.2d 613 (1963)." Id. at 960. The right to manage and control a business is one circumstance to be considered in determining the existence of a partnership relationship. " 10"8"20; Adderhold v. Adderhold, supra. | There is no arbitrary test as to whether partnership exists, but such determination will be made upon all attendant circumstances, including right to manage and control business. Code 1975, S 10-8-20. | Is there an arbitrary test used to determine the existence of a partnership? | 021861.docx | LEGALEASE-00122515-LEGALEASE-00122516 | Condensed, SA, Sub | 0.79 | 0 | 1 | 1 | 1 | 1 |
| 15287 | Fed. Mgt. Co. v. Coopers & Lybrand, 137 Ohio App. 3d 366 | 307A+3 | We further note that the defendants properly brought the issue of preclusion of damages by way of a motion in limine. A motion in limine may be properly brought on the basis of collateral estoppel. See New Winchester Gardens, Ltd. v. Franklin Cty. Bd. of Revision (1997), 80 Ohio St.3d 36, 684 N.E.2d 312; Cunningham v. Goodyear Tire & Rubber Co. (1995), 104 Ohio App.3d 385, 392"393, 662 N.E.2d 73, 77"80. Here, the motion in limine sought to exclude evidence, specifically, the testimony of appellants' damages expert. The motion was not based upon insufficiency of evidence on a particular issue. Hence, the defendants properly brought this motion in limine. | A motion in limine may be properly brought on the basis of collateral estoppel. | Can a motion in limine be properly brought on the basis of collateral estoppel? | Pretrial Procedure - Memo # 174 - C - CRB.docx | ROSS-003324618-ROSS-003324619 | Condensed, SA | 0.88 | 0 | 1 | 0 | 1 | |
| 15288 | Benson v. Shuler Drilling Co., 316 Ark. 101 | 307A+3 | It follows, then, that one who offers evidence has the burden of showing its admissibility. See Arkansas State Highway Comm. v. Roberts, 246 Ark. 1216, 441 S.W.2d 808 (1969). When a party asks for a motion in limine to exclude evidence because it is hearsay, the burden is on the "offering party to prove the admissibility of the evidence." See Robin L. Lafferty, Comment, Motion in Limine, 29 Ark.L.Rev. 215, 226 (1975) (citing Aetna Casualty and Surety Co. v. Finney, 346 S.W.2d 917 (Tex.Civ.App.1961)). This burden was not met in this case. | When party files motion in limine to exclude evidence as hearsay, burden is on offering party to prove admissibility of evidence. | "When a motion in limine is made, does the proponent of the evidence have the burden of showing that the evidence is admissible?" | 024240.docx | LEGALEASE-00121878-LEGALEASE-00121879 | Condensed, SA, Sub | 0.76 | 0 | 1 | 1 | 1 | 1 |
| 15289 | Three Way v. Burton Enterprises, 177 P.3d 219 | 307A+3 | The purpose of a motion in limine is to obtain the court's pretrial ruling on the admissibility of evidence." Reichert v. Phipps, 2004 WY 7, n.1, 84 P.3d 353, 355 n.1 (Wyo.2004). As with other evidentiary decisions, the question of whether or not to grant a motion in limine is left to the sound discretion of the district court. Capshaw v. WERCS, 2001 WY 68, 28 P.3d 855, 857 (Wyo.2001). Evidence that is not relevant may be found inadmissible via a motion in limine. | Evidence that is not relevant may be found inadmissible via a motion in limine. | Can evidence that is not relevant be found inadmissible via a motion in limine? | 024248.docx | LEGALEASE-00121896-LEGALEASE-00121897 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 15290 | Certain Underwriters at Lloyd's, London v. S. Nat. Gas Co., 142 So. 3d 436 | 307A+3 | During Phase III of the trial, the trial court granted a motion in limine to exclude any reference to mercury sites that had not been disclosed or documents that had not been produced. The trial court also concluded that Sonat should not be allowed to present aggregate costs of its mercury remediation. A trial court has broad discretion in determining whether to grant a motion in limine. Jefferson Cnty. v. Southern Natural Gas Co., 621 So.2d 1282 (Ala.1993). | A trial court has broad discretion in determining whether to grant a motion in limine. | Do trial courts have broad discretion when ruling on a motion in limine? | Pretrial Procedure - Memo # 21 - C - KA.docx | ROSS-003298235-ROSS-003298236 | Condensed, SA | 0.81 | 0 | 1 | 0 | 1 | |
| 15291 | Chubb/Home Ins. Companies v. Outboard Marine Corp., 238 Ill. App. 3d 558 | 307A+3 | Courts have consistently held that orders in limine are interlocutory in nature and are subject to reconsideration by the trial court throughout the trial. (Cunningham, 227 Ill.App.3d at 205, 169 Ill.Dec. 200, 591 N.E.2d 80; Romanek-Golub & Co. v. Anvan Hotel Corp. (1988), 168 Ill.App.3d 1031, 119 Ill.Dec. 482, 522 N.E.2d 1341.)This flexibility allows the court to interpret and make any necessary corrections to its order in limine during trial. (Cunningham, 227 Ill.App.3d at 205, 169 Ill.Dec. 200, 591 N.E.2d 80; Crawford County State Bank v. Grady (1987), 161 Ill.App.3d 332, 112 Ill.Dec. 869, 514 N.E.2d 532.) Furthermore, proper and timely objections allow a reviewing court to benefit from a trial court's interpretation of its order. (Beasley v. Huffman Manufacturing Co. (1981), 97 Ill.App.3d 1, 5, 52 Ill.Dec. 560, 422 N.E.2d 241.) As Chubb failed to follow this | Orders in limine are interlocutory in nature and are subject to reconsideration by trial court throughout trial; this flexibility allows court to interpret and make any necessary corrections to its order in limine during trial. | Are rulings on motions in limine considered interlocutory in nature subject to reconsideration at trial? | Pretrial Procedure - Memo # 250 - C - PB.docx | LEGALEASE-00012239-LEGALEASE-00012240 | Condensed, SA, Sub | 0.74 | 0 | 1 | 1 | 1 | 1 |
| 15292 | Lowder v. All Star Mills, 60 N.C. App. 699 | 307A+1 | Judge Mills' decision to hear the motion only on affidavits is in keeping with our Rules of Civil Procedure and is fully supported in the cases. Abuse of judicial discretion is not revealed. For pretrial motion hearings it is affidavits and not oral testimony that is the preferred form of evidence. Pearce Young Angel Co. v. Enterprises, Inc., 43 N.C.App. 690, 260 S.E.2d 104 (1979). See also, Insurance Co. v. Chantos, 21 N.C.App. 129, 203 S.E.2d 421 (1974); Morgan, Attorney General v. Dare To Be Great, 15 N.C.App. 275, 189 S.E.2d 802 (1972). In a hearing on motion for relief from default judgment where judge limited evidence to oral testimony, compare Webb v. James, 46 N.C.App. 551, 265 S.E.2d 642 (1980). | For pretrial motion hearings it is affidavits and not oral testimony that is preferred form of evidence. | What is the preferred form of evidence for pretrial motion hearings? | Pretrial Procedure - Memo # 463 - C - SN.docx | ROSS-003284326-ROSS-003284327 | Condensed, SA | 0.85 | 0 | 1 | 0 | 1 | |

| ROW | Judicial Opinion | WKNS Topic + Key Number | Judicial Opinion Text | Copied Headnote | Memo Question | Memo Filename | Bates Number | Headnote Category | Length Differential between Judicial Opinion Text and Headnote | Order | Condensed | Substantive Additions | Selection & Arrangement | Multiple Differences |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 839 | 15,344 | 14,873 | 21,876 | 9,029 |
| 15293 | Rosebrock v. E. Shore Emergency Physicians, 221 Md. App. 1 | 308+43(1) | "[Under well-established principles of agency law, an agent's authority terminates upon the death of the principal." An attorney does not have authority to note an appeal on behalf of a client who has died.In Brantley, the Court of Appeals noted the importance of having the appropriate party file an appeal, stating:We hold in this case that counsel's authority to file an appeal terminated upon the death of his client. At the time he noted the appeal, no personal representative had been appointed, and no other real party in interest had been substituted in the action. Thus, when counsel filed the appeal, he purported to be acting on behalf of a non-existing client.333 Md. at 512, 636 A.2d 444 (footnote omitted). The Court of Appeals also has held that, when an attorney files an appeal on behalf of a client who has died, it is "not a mere irregularity, but a complete and radical defect, requiring dismissal of the appeal." Chmurny v. State, 392 Md. 159, 896 A.2d 354 (2006) (citation and internal quotation marks omitted). | Under well-established principles of agency law, an agent's authority terminates upon the death of the principal. | Can agent terminate agency on principals death? | 041310.docx | LEGALEASE-00122287-LEGALEASE-00122288 | Condensed, SA | 0.89 | 0 | 1 | 0 | 1 | |
| 15294 | Harter v. Missouri Pub. Serv. Comm'n, 361 S.W.3d 52 | 317A+167 | The PSC held an evidentiary hearing on Harter's underlying complaint before entering its Report and Order. Section 386.490's purpose is to allow affected parties the opportunity to request rehearing and review of the PSC's orders in accordance with the provisions of section 386.500 (Rehearing before commission) and section 386.510 (Review by circuit court). State ex rel. City of Springfield v. Pub. Serv. Comm'n, 812 S.W.2d 827, 834 (Mo.App. W.D.1991). "As we have pointed out, the statute provides for a review of the [PSC's] order or decision by the circuit court, requiring first the filing before the [PSC], within a limited time, of a motion for rehearing, then, again within a limited time, for the suing out of a writ of review, prescribing the court by which such writ may be issued." State ex rel. Anderson Motor Serv. Co. v. Pub. Serv. Comm'n, 339 Mo. 469, 97 S.W.2d 116, 119 (Mo. banc 1936). We find that the constitutional requirements of due process are satisfied by the statutory framework. It was Harter's failure to meet the deadline for requesting rehearing with the PSC and not any insufficiency in the statutory procedure that resulted in his inability to obtain administrative rehearing or judicial review of the PSC's decision.7 | Rule of Civil Procedure that provided when computing any time period prescribed by statute, the day of the event after which the designated period of time begins to run is not included, and the last day of the period so computed is to be included, unless it is a Saturday, Sunday, or legal holiday, did not apply to the time limit for attorney to file an application for a rehearing before the Public Service Commission (PSC); Rules of Civil Procedure did not apply to proceedings in administrative agencies, and statute that required application for a rehearing to be made to the PSC before the effective date of the order did not require the computation of any period of time. V.A.M.R. 44.01(a). | Does the circuit court review the proceedings of the Public Service Commission (PSC)? | 042204.docx | LEGALEASE-00122137-LEGALEASE-00122138 | Condensed, SA, Sub | 0.44 | 0 | 1 | 1 | 1 | 1 |
| 15295 | Chicago Rys. Co. v. Commerce Comm'n, 336 Ill. 51 | 317A+102 | The commission derives its power only from the statute and has no authority except such as is expressly conferred upon it. State Public Utilities Comm. ex rel. v. Illinois Central Railroad Co., 274 Ill. 36, 113 N. E. 162. The appellants were interested parties and were affected by the order. Each extension of motorbus service into territory occupied or served by the appellants is a new attack upon the appellants, to be justified only upon the theory that the appellants are not meeting, and cannot reasonably be required to meet, the public need. Egyptian Transportation System v. Louisville & Nashville Railroad Co., 321 Ill. 580, 152 N. E. 510. One of the purposes to be served by legislation concerning public utilities is to protect an established public utility in its field from destructive competition. The essence of this proceeding, so far as the appellants were concerned, was to determine the question whether public convenience and necessity required that they be subjected to the competition of the coach company over particular streets in Chicago. They were entitled to notice before the amendment was made, and since none was given, the order making the amendment was void. | One purpose of public utility legislation is to protect established utility from destructive competition. | Does the legislation concerning public utilities protect them from destructive competition? | Public Utilities - Memo 110 - AM.docx | ROSS-003297670-ROSS-003297672 | Condensed, SA, Sub | 0.91 | 0 | 1 | 1 | 1 | 1 |
| 15296 | Wisconsin Tel. Co. v. Pub. Serv. Comm'n of Wisconsin, 206 Wis. 589 | 92+2426 | Attention is called to the fact that the law first requires the commission to impose upon the individual utility investigated the cost of such investigation, "provided, however, that the commission may exempt and relieve such public utility, power district, or railroad from the duty of paying such expenses, or a portion thereof, but only upon a finding that the public interest requires that such public utility, power district, or railroad be thus exempted and relieved, in which event such expenses shall not be chargeable as a part of the remainder described in subsection (2) of this section." It is claimed that this proviso delegates to the commission the exercise of purely legislative power, in that it authorizes the commission to exempt a particular utility from the expenses of the investigation "when the public interest requires" that such public utility be exempt and relieved from such expense. | Statute imposing on public utilities cost of their regulation, held not invalid as delegating legislative power to Public Service Commission in authorizing commission to exempt utility from expense of investigation when public interest requires. St.1931, SS 196.02(4), 196.41, 196.85, 198.55 (W.S.A.). | Should the public utility investigation bear the cost of investigation? | 042618.docx | LEGALEASE-00122193-LEGALEASE-00122195 | Condensed, SA, Sub | 0.67 | 0 | 1 | 1 | 1 | 1 |
| 15297 | Cline v. Yamaga, 97 Cal. App. 3d 239 | 13+61 | A cause of action arises when the liability or obligation is established and suit may be brought. (See 2 Witkin, Cal. Procedure (2d ed.) Actions, s 263, pp. 1116-1117.) A broker's action for a commission arises when the commission becomes due and payable, and accordingly plaintiff's alleged cause of action on the commission agreement arose in 1973 when all of the additional six acres were put under lease by defendants. As plaintiff admittedly was not duly licensed in 1973, a literal application of section 10136 bars the action. | A cause of action arises when liability or obligation is established and suit may be brought. | Does a cause of action arise when a liability or obligation is established? | Action - Memo # 137 - C CS.docx | ROSS-003282974-ROSS-003282975 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |
| 15298 | Am. Gen. Life & Acc. Ins. Co. v. Edwards, 76 So. 3d 183 | 13+61 | The Mississippi Supreme Court and this Court have long recognized that "a cause of action "accrues' when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested." Forman v. Miss. Publishers Corp., 195 Miss. 90, 14 So.2d 344, 346 (1943). In order to become an enforceable tort claim, proof of the following four elements must be present: duty, breach of duty, causation, and actual damage. Bullard v. Guardian Life Ins. Co. of America, 941 So.2d 812, 815 ( 11) (Miss.2006). It is not vested until all four elements are present. Further, "[i]n the absence of damage, no litigable event arose." Fletcher v. Lyles, 999 So.2d 1271, 1277 ( 23) (Miss.2009) (quoting Bullard, 941 So.2d at 815 ( 9)). | A cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. | Does cause of action arise when party has right to sue? | Action - Memo # 167 - C CS.docx | ROSS-003323057-ROSS-003323058 | Condensed, SA | 0.83 | 0 | 1 | 0 | 1 | |